**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

**Prevention and Mitigation:**
- Prevention and mitigation goals target a reduction in unauthorized wildland fire ignitions. Goals include coordination with partners and affected groups and individuals, and a wide range of prevention and mitigation activities such as personal contacts, mass media, signing, and defensible space education.
- Implementation of fire prevention activities would be prioritized using the following criteria:
  · WUI areas.
  · Major travel corridors.
  · Recreation sites.
  · Public lands as a whole.

**Emergency Stabilization and Rehabilitation (ESR):**
A Normal Year Fire Stabilization and Rehabilitation Plan (NFRP) is in place to meet emergency stabilization and rehabilitation (ESR) needs and to comply with up-to-date ESR policy and guidance. The NFRP is a programmatic implementation plan authorizing treatment options specific to vegetative communities and dependent upon post-wildland fire conditions and other site-specific considerations. Treatment actions are designed according to the type and severity of wildfire impacts and priorities include, but are not limited to, areas where the following criteria apply:
- It is necessary to protect human life and safety as well as property.
- Unique or critical cultural and/or historical resources are at risk.
- It is determined soils are highly susceptible to accelerated erosion.
- Perennial grasses and forbs (fire-tolerant plants) are not expected to provide soil and watershed protection within two years.
- There is a need to establish a vegetative fuel break of less flammable species (greenstrips).
- Unacceptable vegetation, such as noxious weeds, may readily invade and become established.
- Shrubs and forbs are a crucial habitat component for wintering mule deer, pronghorn, sage-grouse, or other special status species.
- Stabilization and rehabilitation are necessary to meet RMP resource objectives, including rangeland seedings.
- It is necessary to protect water quality.
- It is necessary to quickly restore threatened, endangered, or special species habitat populations to prevent adverse impacts.

## HEALTH AND SAFETY

**Goals and Objectives:**

BLM would strive to ensure that human health and safety concerns on public lands remain a major priority.

**Management Common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

Comply with all applicable Abandoned Mine Lands (AML) policies.

In conformance with BLM's long-term strategies and national policies regarding Abandoned Mine Lands (AML), this RMP recognizes the need to work with our partners toward identifying and addressing physical safety and environmental hazards at all AML sites on public lands. In order to achieve this goal, a State strategy has been written. National program criteria for determining site priorities were used to develop the work plan. This State strategy is entitled "Utah's Abandoned Mine Land Multi Year Work Plan."

The criteria that would be used to establish physical safety hazard program priorities are:
- The AML physical safety program's highest priority would be the cleaning up of those AML sites where (a) a death or injury has occurred, (b) the site is situated on or in immediate proximity to developed recreation sites and areas with high visitor use, and (c) upon formal risk assessment, a high or extremely high risk level is indicated.
- AML would be factored into future recreation management area designations, land-use planning assessments, and all applicable use authorizations.
- The site is presently listed or is eligible for listing in the Abandoned Mines Module of Protection and Response Information System.
- AML hazards should be, to the extent practicable, mitigated or remediated on the ground during site development.

The criteria used to establish water quality-based AML program priorities are:
- The State has identified the watershed as a priority based on (a) one or more water laws or regulations; (b) threat to public health or safety; and (c) threat to the environment.
- The project reflects a collaborative effort with other land managing agencies.
- The site is presently listed or is eligible for listing in the Abandoned Mines Site Cleanup Module of Protection and Response Information System.
- The project would be funded by contributions from collaborating agencies.

Identify and clean up unauthorized dumping sites and hazardous materials spills in the MPA as required to comply with applicable State, local, and Federal regulations.

The State Multi Year Work Plan will be maintained and updated as needed to reflect current policy for identifying program physical safety and water quality AML sites priorities for reclamation and remediation.

BLM_0009874

18

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

### LANDS AND REALTY

**Goals and Objectives:**
- Retain lands within its administration except where necessary to accomplish resource goals and objectives outlined in the Plan. BLM would transfer lands out of Federal ownership or acquire non-Federal lands where needed to accomplish resource goals and objectives, improve administration of public lands, or meet essential community needs.
- Meet public needs for use authorizations such as rights-of-way (ROWs), alternative energy sources, and permits while minimizing adverse impacts to resource values.
- Using the Visual Resource Management (VRM) system, maintain generally undeveloped landscapes in the backgrounds of popular fishing locations.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**
- Under IMP and Congressional action, Wilderness Study Areas and Wilderness Areas would be exclusion areas for any ROWs (Section 501(a) FLPMA).
- Continue the withdrawal of lands along the Colorado, Dolores and Green Rivers (totaling 65,037 acres within the MPA) from mineral entry (Three Rivers Withdrawal, October 6, 2004). In addition, continue the Westwater (8,096 acres) and Black Ridge Wilderness (5,200 acres) withdrawals (see Map 2-1).
- Give land exchanges with the State of Utah priority consideration to resolve inholding issues.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**
- Areas of Critical Environmental Concern (ACECs) would be avoidance areas for any new ROWs (including communication sites and wind and solar sites).
- Decisions on LTAs and withdrawals would be made in accordance with the criteria contained in Appendix A.
- Determinations on authorizing commercial filming in the MPA would be made in accordance with the criteria outlined in Appendix B.
- Right-of-way (ROW) avoidance and exclusion areas would be consistent with the stipulations identified in Appendix C for oil and gas leasing and other surface-disturbing activities. These stipulations have been developed to protect important resource values.
- As per the State of Utah v. Andrus, Oct. 1, 1979 (Cotter Decision). BLM would grant the State of Utah reasonable access to State lands for economic purposes, on a case-by-case basis.
- To reduce surface use conflicts along the U.S. Highway 191 utility corridor within Moab Canyon, apply a no surface occupancy stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C), except those associated with utility ROWs.
- Authorization of any ROW for wind or solar energy development would incorporate best management practices including the USFWS's "Guidelines for Wind Power" and provisions contained in the Final Wind Energy Programmatic EIS (June 24, 2005, BLM 2005d).
- Both wind and solar energy development (renewable energy) can be considered wherever ROWs could be authorized.
- To be consistent with the existing withdrawals from mineral entry, apply a no surface occupancy stipulation for oil and gas leasing and other surface-disturbing activities within the area of the Three Rivers and Westwater Mineral Withdrawals. This action would further protect the riparian, wildlife, scenic, and recreation values addressed in these withdrawals. Applying a no surface occupancy stipulation for oil and gas leasing to lands within the Three Rivers Withdrawal, in combination with other areas where a no surface occupancy stipulation is applied, results in tracts of land that are physically inaccessible to oil and gas operations. For this reason, portions of the lands within the Three Rivers Withdrawal (e.g., along the Colorado River near the Richardson Amphitheater and along the Dolores River near Beaver Creek) would be closed to oil and gas leasing. These areas would be managed as no surface occupancy for other surface-disturbing activities (see Appendix C).
- Lands and/or interest in lands (such as minerals and conservation easements) acquired through future LTA would take on the management of the surrounding area. Land acquisitions would be pursued if they meet the criteria in Appendix A.

### Utility Corridors

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| All utility corridors would be 1 mile wide, except the existing Moab Canyon utility corridor, which is constrained by the topography of Moab Canyon. This physical corridor is only 1/4 mile wide at its narrowest point. | Designate an I-70 utility corridor that includes all major existing ROWs as identified in the RMP with a 100-foot width on each side of the widest ROW corridor (Map 2-2-B). Designate the existing Moab Canyon utility corridor (Map 2-2-B). | Designate an I-70 utility corridor that includes all major existing ROWs as identified in the RMP with a 1/2-mile width on each side of the widest ROW corridor ( 2-2-C). Designate the existing Moab Canyon utility corridor (Map 2-2-C). | Designate an I-70 utility corridor that includes all major existing ROWs as identified in the RMP with a 1-mile width on each side of the widest ROW corridor (Map 2-2-D). Designate the existing Moab Canyon utility corridor (Map 2-2-D). |
| | Split the utility corridor south of Spanish Valley into two corridors, identical to existing corridors (Map 2-2-B). | Combine the two corridors south of Spanish Valley into a single corridor (Map 2-2-C). The corridor would include the approximately 2 to 3 miles separating the two segments. | Combine the corridors south of Spanish Valley into a single corridor (Map 2-2-D). This corridor would include the approximately 2 to 3 miles separating the two segments. |

### Avoidance/Exclusion Areas for Rights-of-way (ROWs)

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| About 354,015 acres would be exclusion areas for ROWs. | About 672,724 acres would be exclusion areas for ROWs. | About 370,250 acres would be exclusion areas for ROWs. | About 355,146 acres would be exclusion areas for ROWs. |
| About 48,245 acres would be avoidance areas for ROWs. | About 341,919 acres would be avoidance areas for ROWs. | About 217,480 acres would be avoidance areas for ROWs. | About 84,772 acres would be avoidance areas for ROWs. |

### Disposal Land List

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| The list of parcels identified for disposal totals 12,415 acres. | Parcels identified for disposal total 14,961 acres and are shown on Map 2-3 and in Appendix D. | Parcels identified for disposal total 14,961 acres and are shown on Map 2-3 and in Appendix D. | Parcels identified for disposal total 14,961 acres and are shown on Map 2-3 and in Appendix D. |

BLM_0009875

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| LIVESTOCK GRAZING |
|---|

**Goals and Objectives:**

- Achieve the attainment of Standards for Rangeland Health and other desired resource conditions by maintaining appropriate utilization levels of the range through management prescriptions and administrative adjustments of grazing permits.
- Achieve healthy, sustainable rangeland ecosystems that support the livestock industry while providing for other resource values such as wildlife habitat, recreation opportunities, clean water, and functional watersheds.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

- Grazing would be managed according to the Guidelines for Livestock Grazing Management to meet the Standards for Rangeland Health, including adjustment in seasons of use.
- On all allotments, allow allotment boundaries adjustments, joining and splitting, and modification of grazing season subject to appropriate NEPA review and analysis (see Map 2-4 for a map of grazing allotments).
- Continue to authorize grazing at the current preference levels (as per ten-year grazing permits) and adjust, if necessary to meet Standards for Rangeland Health.
- As amended in previous planning documents (the 1985 Grand RMP and a Plan Amendment analyzed in EA#068-94-047), grazing use would continue to not be authorized on the following allotments/areas (or portions of allotments/areas):
  - Between The Creeks with 3,960 acres and 221 AUMs, to protect municipal watersheds, improve mule deer winter range, improve riparian habitat, and reduce recreation conflict.
  - North Sand Flats with 18,246 acres and 798 AUMs, to reduce recreation conflict, improve mule deer winter range, and improve riparian habitat.
  - South Sand Flats with 10,209 acres and 592 AUMs, to reduce recreation conflict, improve mule deer winter range, and improve riparian habitat.
  - A portion of Arth's Pasture Allotment (Poison Spider area) with approximately 7,634 acres and 425 AUMs, to improve desert bighorn sheep habitat and reduce recreation conflict.
  - Castle Valley with 6,074 acres and 190 AUMs, to protect the Castle Valley sole source aquifer, to improve mule deer winter range, and to reduce recreation conflict.
  - Along Highway 128 from U.S. 191 to the Castle Valley Road, along U.S. 191 from Highway 313 to Moab, and along Highway 279 with 1,139 acres, to reduce recreation traffic conflict (no reduction in AUMs).
  - A portion of the Kane Spring Allotment (that portion in Kane Spring Canyon between the open valley and the river; 558 acres and no reduction in AUMs), to reduce recreation traffic conflict and to enhance riparian species' habitat.
  - An area along the Colorado River between Hittle and north of Dewey Bridge (400 acres and no reduction in AUMs), to reduce recreation traffic conflict and to enhance riparian species' habitat.
- Develop AMPs on seven allotments (Agate, Cisco, Cisco Mesa, Harley Dome, Highlands, Monument Wash, and San Arroyo) and on any additional allotments if resource issues are identified to benefit vegetation, wildlife, livestock grazing and soils.
- Identify appropriate utilization levels based on allotment or site-specific management practices, such as season-of-use, grazing intensity and duration, and utilization patterns, as well as vegetative conditions, the presence or absence of range improvements, and resource issues or concerns. Use utilization levels as an indicator to evaluate if current grazing use is appropriate to meet resource objectives for the area. Generally moderate utilization levels (40–60%) would be used to indicate if general management objectives can be met. Utilization levels above those identified as appropriate would be used to adjust livestock use on a yearly basis through pasture and possible early removal from allotments as needed. Utilization levels may be especially important during periods of drought. Long-term adjustments to livestock use (term permits adjustments) require the evaluation of monitoring data including climate, actual grazing use, current or historic impacts, utilization mapping, and long-term trend data, as well as utilization levels.
- Follow the recommendations of the National Sage-grouse Habitat Conservation Strategy (BLM 2004c) and the Strategic Management Plan for Sage-grouse (UDWR 2002) where applicable.
- Conversion of allotments from cattle to domestic sheep would not be considered in recognized bighorn sheep habitat (see Maps 2-25 and 2-28).
- Collect monitoring data, including trend, utilization, actual use, and climate data to determine if existing livestock management practices are meeting land-use planning and resource objectives.
- Change class of livestock from sheep to cattle on the Hatch Point Allotment (96,951 acres) to benefit wildlife.
- Rangelands that have been burned, reseeded, or otherwise treated to alter vegetative composition would have livestock grazing use temporarily suspended as follows: (1) burned rangelands, whether by wildfire or prescribed burning, would be ungrazed for a minimum of one complete growing season following the burn; (2) rangelands that have been reseeded, or otherwise mechanically treated would be ungrazed for a minimum of two complete growing seasons following treatment.

**Relinquishment of Preference:**

- Voluntary relinquishments of grazing permits and preference, in whole or in part, submitted by a permittee in writing to the BLM, would be handled on a case-by-case basis. BLM would not recognize as valid, relinquishments which are conditional on specific BLM actions and BLM would not be bound by them. Relinquished permits and the associated preference would remain available for application by qualified applicants after BLM considers if such action would meet rangeland health standards and is compatible with achieving land-use plan goals and objectives. Prior to re-issuance of the relinquished permit, the terms and conditions may be modified to meet RMP goals and objectives and/or site-specific resource objectives. However, upon relinquishment, BLM may determine through a site-specific evaluation and associated NEPA analysis that the public lands involved are better used for other purposes. Grazing may then be discontinued on the allotment through an amendment to the existing RMP or a new RMP effort. Any decision issued concerning discontinuance of livestock grazing is not permanent and may be reconsidered and changed through future LUP Amendments and updates.

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| AUMs allotted to livestock: 107,071 | AUMs allotted to livestock: 106,574 | AUMs allotted to livestock: 106,479 | AUMs allotted to livestock: 108,876 |
| Acres available for grazing: 1,695,621 | Acres available for grazing: 1,668,732 | Acres available for grazing: 1,690,481 | Acres available for grazing: 1,770,314 |
| Acres not available for grazing: 126,907 | Acres not available for grazing: 153,797 | Acres not available for grazing: 132,047 | Acres not available for grazing: 52,214 |
| Note: Please see Map 2-4-A for areas not available for livestock grazing under this alternative. | Note: Please see Map 2-4-B for areas not available for livestock grazing under this alternative. | Note: Please see Map 2-4-C for areas not available for livestock grazing under this alternative. | Note: Please see Map 2-4-D for areas not available for livestock grazing under this alternative. |
| **Allotments Not Available for Grazing:** | **Allotments Not Available for Grazing:** | **Allotments Not Available for Grazing:** | **Allotments Not Available for Grazing:** |
| • Bogart with 14,744 acres and 209 AUMs (to benefit wildlife, especially mule deer and/or elk habitat, riparian habitat, watershed health and erosive soils). | • Bogart with 14,744 acres and 209 AUMs (to benefit wildlife especially mule deer and/or elk habitat, riparian habitat, watershed health and erosive soils). | • Bogart with 14,744 acres and 209 AUMs (to benefit wildlife especially mule deer and/or elk habitat, riparian habitat, watershed health and erosive soils). | • Mill Creek with 3,921 acres and 137 AUMs (to reduce recreation and cultural conflict and to protect municipal watershed). |
| • Cottonwood with 27,193 acres and 900 AUMs (to benefit wildlife, especially mule deer and/or elk habitat, riparian habitat, watershed health and erosive soils). | • Cottonwood with 27,193 acres and 900 AUMs (to benefit wildlife especially mule deer and/or elk habitat, riparian habitat, watershed health and erosive soils). | • Cottonwood with 27,193 acres and 900 AUMs (to benefit wildlife especially mule deer and/or elk habitat, riparian habitat, watershed health and erosive soils). | |
| • Diamond with 18,620 acres and 588 AUMs (to benefit wildlife, especially mule deer and/or elk habitat, riparian habitat, watershed health | • Diamond with 18,620 acres and 588 AUMs (to benefit wildlife especially mule deer and/or elk habitat, riparian habitat, watershed health and | • Diamond with 18,620 acres and 588 AUMs (to benefit wildlife especially mule deer and/or elk habitat, riparian habitat, | |

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| and erosive soils). | erosive soils). | watershed health and erosive soils).<br><br>• Pear Park, with 14,201 acres and 200 AUMs (to benefit wildlife especially mule deer and/or elk habitat, riparian habitat, watershed health and erosive soils).<br>• Ida Gulch, with 3,612 acres and 112 AUMs (to reduce recreation conflict and enhance riparian habitat). | |
| • Pear Park, with 14,201 acres and 200 AUMs (to benefit wildlife, especially mule deer and/or elk habitat, riparian habitat, watershed health and erosive soils).<br>• Spring Creek, with 1,550 acres and 45 AUMs (to benefit wildlife, especially mule deer and/or elk winter range).<br>• Beaver Creek with 2,304 acres and 0 AUMs (to benefit wildlife, especially riparian species and Colorado cutthroat trout). | • Pear Park, with 14,201 acres and 200 AUMs (to benefit wildlife especially mule deer and/or elk habitat, riparian habitat, watershed health and erosive soils).<br>• Spring Creek, Buckhorn, approx. 600 acres and 45 AUMs (to benefit wildlife especially mule deer and/or elk winter range).<br>• Beaver Creek with 2,304 acres and 0 AUMs (to benefit wildlife especially riparian species and Colorado cutthroat trout).<br>• Professor Valley, with 18,966 acres and 378 AUMs (to reduce recreation conflict and enhance riparian habitat).<br>• Ida Gulch, with 3,612 acres and 112 AUMs (to reduce recreation conflict and enhance riparian habitat).<br>• River, with 386 acres and 7 AUMs (to reduce recreation and enhance riparian habitat).<br>• Mill Creek, with 3,921 acres and 137 AUMs (to reduce recreation and cultural conflict and to protect municipal watershed). | • Portions of Professor Valley, Ida Gulch, and the River along Highway 128**, with 1,467 acres and 0 AUMs (to reduce recreation conflict and enhance riparian habitat).<br>• Mill Creek with 3,921 acres and 137 AUMs (to reduce recreation and cultural conflict and to protect municipal watershed).<br><br>**A fence would be constructed along the southeast side of Highway 128 (set back to protect the scenic resources of the National Scenic Highway). This would result in all BLM lands between the Colorado River and Highway 128 being unavailable for grazing. This would reduce acreage in the allotments, but it would not reduce the AUMs, because the quality of the forage is low due to heavy use by motorists and other recreationists. | |
| **Allotments Currently Not Available for Grazing that would be Available for Grazing:**<br>None | **Allotments Currently Not Available for Grazing that would be Available for Grazing:**<br>None | **Allotments Currently Not Available for Grazing that would be Available for Grazing:**<br>After allotment specific evaluation to assure resource objectives are met, the following areas would be available for livestock grazing:<br><br>Spring Creek. | **Allotments Currently Not Available for Grazing that would be Available for Grazing:**<br>After allotment specific evaluation to assure resource objectives are met, the following areas would be available for livestock grazing:<br><br>• Pear Park (no domestic sheep would be allowed).<br>• Spring Creek.<br>• Bogart (no domestic sheep would be allowed).<br>• Cottonwood (no domestic sheep would be allowed).<br>• Diamond Canyon (no domestic sheep would be allowed). |
| **Allotments Currently Not Available for Grazing that are to be Reconsidered for Allocation:**<br>None | **Allotments Currently Not Available for Grazing that are to be Reconsidered for Allocation:**<br>None | **Allotments Currently Not Available for Grazing that are to be Reconsidered for Allocation:**<br>Beaver Creek with 1,351 acres and 0 AUMs. | **Allotments Currently Not Available for Grazing that are to be Reconsidered for Allocation:**<br>Beaver Creek with 1,351 acres and 0 AUMs. |
| **Grazing in Saline Soils:**<br>Manage livestock grazing on portions of the following allotments to stabilize impacts on highly saline soils and reduce salinity in the Colorado River drainage. This includes the following allotments: Athena, Cisco, Cisco Mesa, Crescent Canyon, Highland, Monument Wash, and Thompson Canyon (1985 Grand RMP). | **Grazing in Saline Soils:**<br>Use grazing systems and develop AMPs to minimize impacts to saline soils and reduce salinity in the Colorado River drainage in the following allotments: Agate, Big Flat-Ten Mile, Cisco Mesa, Crescent Canyon, Floy Creek, Harley Dome, Highlands, and San Arroyo.<br><br>If Rangeland Health Standards indicate that soil compaction is an issue on the following allotments, assess all available data and determine if a change in the livestock season of use would correct the problem: Athena, Cisco, Coal Canyon, Horse Canyon, Little Grand, Lone Cone, and Monument. | **Grazing in Saline Soils:**<br>Use grazing systems and develop AMPs to minimize impacts to saline soils and reduce salinity in the Colorado River drainage in the following allotments: Agate, Athena, Big Flat-Ten Mile, Cisco, Cisco Mesa, Coal Canyon, Crescent Canyon, Floy Creek, Harley Dome, Highlands, Horse Canyon, Little Grand, Lone Cone, Monument, and San Arroyo. | **Grazing in Saline Soils:**<br>Same as Alternative A. |
| **Grazing in Riparian Areas:**<br>Continue no grazing in South Sand Flats, North Sand Flats, Between the Creeks, Cottonwood, and Diamond, to benefit riparian areas. | **Grazing in Riparian Areas:**<br>Evaluate non-functioning and functioning-at-risk riparian areas using Standards for Rangeland Health and Guidelines for Livestock Grazing Management to determine if exclusion from grazing would improve riparian functioning condition.<br><br>The following riparian areas would be given priority for evaluation: Lower Gray Canyon of the Green River from Rattlesnake Canyon to Swasey's Beach, Ten Mile from Dripping Spring to the Green River, Day Canyon, Mill Creek, Seven Mile Canyon, East Coyote, Kane Springs, and Hatch Wash (totaling | **Grazing in Riparian Areas:**<br>Evaluate non-functioning and functioning-at-risk riparian areas using Standards for Rangeland Health and Guidelines for Livestock Grazing Management to determine if restriction from grazing would improve riparian functioning condition.<br><br>The following riparian areas would be given priority for evaluation: Ten Mile from Dripping Spring to the Green River, Mill Creek, Day Canyon, Seven Mile Canyon, and East Coyote (totaling 1,169 acres). | **Grazing in Riparian Areas:**<br>Continue present grazing management. |

BLM_0009877

### Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

| | | | |
|---|---|---|---|
| | 4,422 acres). | | |
| **Vegetation Treatments:** Areas treated prior to 1985 are considered existing treatments. Land treatments on 11 allotments would be implemented to increase available forage by 8,514 AUMs to allow for increased use by livestock and wildlife. The increase in AUMs would be split evenly between livestock and wildlife where both are present. Land treatments include plowing and seeding, chaining and seeding, drill seeding.<br><br>The following allotments are included in the land treatments: Bar X, Black Ridge, Buckhorn, Corral Wash, Hatch Point, Lisbon, Lower Lisbon, San Arroyo, Sand Flats, Taylor and Winter Camp.<br><br>Initiate prescribed fire and seeding on approximately 14,149 acres (in 10 allotments), as currently proposed in existing LUP Amendments, thereby increasing AUMs by approximately 1,700 for livestock and wildlife. The allotments include Showerbath Spring, Floy Canyon, Cottonwood, Diamond, Middle Canyon, Little Hole, Buckhorn, Adobe Mesa, Hatch Point, and Lisbon.<br><br>**Total Acres: 67,125.** | **Vegetation Treatments:** Maintain the existing vegetation treatments (46,307 acres) to increase available forage within the following allotments. These areas have been treated over the past 50 years and consist primarily of pinyon-juniper woodlands. These areas would be treated by prescribed fire, chemical or mechanical or other means in accordance with BLM sagebrush conservation guidance and other applicable resource goals. The improved forage would benefit wildlife.<br><br>Allotments: Adobe Mesa, Big Triangle, Black Ridge, Buckhorn; Cisco;East Coyote, Fisher Valley, Granite Creek, Hatch Point, Lisbon, Lower Lisbon, Mountain Island, Rattlesnake South, Scharf Mesa, Spring Creek, Steamboat Mesa, Taylor, Windwhistle.<br><br>**Total Acres: 46,307.**<br><br>Conduct no new vegetation treatments except those beneficial to other resource values such as wildlife or watershed. | **Vegetation Treatments:** Maintain the existing vegetation treatments (46,307 acres) to increase available forage within the following allotments. These areas have been treated over the past 50 years and consist primarily of pinyon-juniper woodlands. These areas would be treated by prescribed fire, chemical or mechanical or other means in accordance with BLM sagebrush conservation guidance and other applicable resource goals. The improved forage would benefit multiple use objectives including livestock and wildlife use.<br><br>Allotments: Adobe Mesa, Big Triangle, Black Ridge, Buckhorn, Cisco, East Coyote, Fisher Valley, Granite Creek, Hatch Point, Lisbon, Lower Lisbon, Mountain Island, Rattlesnake South, Scharf Mesa, Spring Creek, Steamboat Mesa, Taylor, Windwhistle.<br><br>**Total Acres: 46,307.**<br><br>Conduct new vegetation treatments (6,900 acres) for increased forage in the following allotments with prescribed fire, chemical, mechanical or other means: Floy Canyon, Hatch Point, Lisbon, and Showerbath. Other vegetation treatments would be considered to benefit other resource values such as wildlife or watershed. | **Vegetation Treatments:** Same as the Proposed Plan, but other vegetation treatments would be considered specifically to benefit livestock. |
| **Implement Range Projects to meet or exceed Rangeland Health Standards:** Implement livestock manipulation techniques (fences and water development) to benefit wildlife and livestock. | **Implement Range Projects to meet or exceed Rangeland Health Standards:** Implement range projects that would benefit resource values such as habitat for wildlife, reducing soil compaction and erosion, and improving the health of riparian areas. | **Implement Range Projects to help maintain Rangeland Health Standards:** Implement range projects that would equally benefit livestock grazing and other resource values. | **Implement Range Projects to help maintain Rangeland Health Standards:** Implement range projects that would emphasize livestock production. |

| MINERALS |
|---|

**Goals and Objectives:**
- Provide opportunities for environmentally responsible exploration and development of mineral and energy resources subject to appropriate BLM policies, laws and regulations.
- Establish conditions of use through land-use planning to protect other resource values.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**
- Continue the withdrawal of lands along the Colorado, Dolores, and Green Rivers, totaling 65,037 acres within the MPA, from mineral entry (Three Rivers Withdrawal, October 6, 2004). In addition, continue the Westwater (8,096 acres) withdrawal. Black Ridge Wilderness (5,200 acres) will remain closed, by law, to entry under the mining law.
- Wilderness Study Areas and designated Wilderness (358,806 acres) would remain closed, by law, to mineral leasing and development.
- Where public lands are sold or exchanged under 43 U.S.C. 682(B)(Small Tracts Act), 43 U.S.C. 869 (Recreation and Public Purposes Act), 43 U.S.C. 1718 (Sales) or 43 U.S.C. 1716 (Exchanges), the minerals reserved to the United States would continue to be removed from the operation of the mining laws unless a subsequent land-use planning decision expressly recommends restoring the land to mineral entry.

**Leasable Minerals:**
Split-estate lands (private surface/Federal minerals) and lands administered by other Federal agencies are not managed by the BLM. The lands include about 29,678 acres of split-estate lands and the lands administered by the Manti-LaSal National Forest (141,241 acres). The surface owner or surface management agency (SMA) manages the surface. BLM administers the operational aspects of mineral leases. On lands administered by other Federal agencies, lease stipulations would include those required by the SMA. On 20,061 acres of split-estate lands, the BLM would apply the same lease stipulations as those applied to surrounding lands with Federal surface. BLM would close or impose a no surface occupancy stipulation on 9,617 acres of split-estate lands (see Appendix C). Mitigation measures to protect other resource values would be developed during the appropriate site-specific environmental analysis and would be attached as conditions of approval to permits in consultation with the surface owner or SMA.

*Coal:*
The coal resources within the MPA include the Sego and the La Sal coal fields. Approximately 80% of the Sego coal field is within Wilderness Study Areas and is not available for development. For the remaining coal resources, no interest has been expressed for coal leasing and the potential for development of coal resources is low (see Mineral Potential Report). At such time as interest is expressed in coal leasing, the RMP would be amended as appropriate and mining unsuitability criteria (43 CFR 3461) would be applied by the MFO before any coal leases are issued. If coal leases are issued, they would be subject to special conditions developed in the RMP and the unsuitability assessment. This may restrict all or certain types of mining techniques. Before any coal could be removed, MFO would have to approve the mining permit application package, incorporating stipulations developed in the RMP.

**Locatable Minerals:**
Existing operations would continue to be subject to the stipulations developed for the notice or the plan of operations. The BLM would evaluate all operations authorized by the mining laws in the context of its requirement to prevent unnecessary and undue degradation of Federal lands and resources. Consistent with the rights afforded claimants under the mining laws, operations conducted after this RMP would be required to conform to the surface disturbing stipulations developed in this RMP.

Operations on BLM-administered lands open to mineral entry must be conducted in compliance with BLM's surface management regulations (43 CFR 3715, 3802, 3809, and 3814). BLM surface management regulations do not apply to operations on other Federal lands but do apply to split-estate lands.

BLM_0009878

### Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

**Management Common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**

- To be consistent with the existing withdrawals from mineral entry, apply a no surface occupancy stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) within the area of the Three Rivers and Westwater Mineral Withdrawals. This action would further protect the riparian, wildlife, scenic, and recreation values addressed in these withdrawals.
- To the extent possible, the stipulations developed for oil and gas leasing are applicable to all mineral activities (leasable, locatable, and salable). These stipulations are found in Appendix C. Leasable minerals include oil and gas, coal, and potash. Locatable minerals include gold, copper, and uranium. Salable minerals include sand and gravel, clay, and building stone.
- In areas where mineral activities would be incompatible with existing surface use, apply a no surface occupancy stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C). These areas are as follows: Moab and Spanish Valley, Castle Valley (including Mayberry Orchard), Thompson Springs, Moab Landfill, Moab Airport, and Dead Horse Point State Park.
- The Federal minerals within the incorporated city of Moab and town of Castle Valley are closed to oil and gas leasing by Federal regulation at 43 CFR 3100.0-3 (a)(2)(iii).

**Leasable Minerals:**

*Oil and Gas:*

The plan would recognize and be consistent with the National Energy Policy Act and related BLM policy by adopting the following objectives:

- Recognizing the need for diversity in obtaining energy supplies.
- Encouraging conservation of sensitive resource values.
- Improving energy distribution opportunities.

In accordance with an UDEQ-DAQ letter dated June 6, 2008, (see Appendix V) requesting implementation of interim nitrogen oxide control measures for compressor engines; BLM will require the following as a Lease Stipulation and a Condition of Approval for Applications for Permit to Drill:
- All new and replacement internal combustion gas field engines of less than or equal to 300 design-rated horsepower must not emit more than 2 gms of NOx per horsepower-hour. This requirement does not apply to gas field engines of less than or equal to 40 design-rated horsepower.
- All new and replacement internal combustion gas field engines of greater than 300 design rated horsepower must not emit more than 1.0 gms of NOx per horsepower-hour.

Lease stipulations would be developed to mitigate the impacts of oil and gas activity (see Appendix C and Maps 2-5-A through 2-5-D). The stipulations would adhere to the Uniform Format prepared by the Rocky Mountain Regional Coordinating Committee in March 1989. Stipulations reflect the minimum requirements necessary to accomplish the desired resource protection and would contain provisions/criteria to allow for exception, waiver and modification if warranted. Stipulations would be determined unnecessary if duplicative of Section 6 of the Standard Lease Terms. The BLM has identified Land-use Plan leasing allocations for all lands within the Moab Field Office. In addition, the Proposed RMP describes specific lease stipulations and program-related Best Management Practices (both found in Appendix C. Stipulations and Environmental Best Practices Applicable to Oil and Gas Leasing and Other Surface Disturbing Activities) that apply to a variety of different resources.

Oil and gas leases issued prior to the RMP would continue to be managed under the stipulations in effect when issued. Those issued subsequent to the plan would be subject to the stipulations developed in the plan. Environmental best management practices would be incorporated into subsequent permits and authorizations to mitigate impacts and conflicts with other uses and resource values (see Appendix C).

*Potash and Salt (Non-energy Leasable):*

Within the MPA, three areas fall within known potash leasing areas (KPLAs). KPLA designations, based on known geologic data, would remain in place until potash resources are depleted. In KPLAs, potash leases are acquired through competitive bidding. In areas where potash values are not known, MFO could issue prospecting permits, which could lead to issuance of a preference right lease. There are currently 8 leases and 13 pending prospecting permit applications within the MPA (Map 2-6). Additional KPLAs could be designated, based on geologic data, if interest warranted. Potash leasing and prospecting permits issued prior to the RMP would continue to be managed under the stipulations in effect when issued. Those leases issued subsequent to the RMP would be consistent with the oil and gas leasing stipulations developed in the RMP (see Appendix C).

**Locatable Minerals:**

A no surface occupancy stipulation cannot be applied to locatable minerals without a withdrawal. All public lands overlying Federal minerals are open to mining claim location unless specifically withdrawn from mineral entry by Secretarial order or by a public land law. Therefore, other than the existing withdrawals (Three Rivers, Westwater, and Black Ridge Wilderness), all public lands with the MPA remain open under the mining laws. Future withdrawals may be recommended in areas identified as closed or with a no surface occupancy stipulation if it becomes necessary to prevent unacceptable resource impacts.

**Salable Minerals:**

There are currently 12 community pits totaling about 2,693 acres designated in the MPA (Map 2-7). Existing mineral material sale contracts, free use permits, and material sites, including community pits, would continue to be subject to the permit stipulation conditions. Sales, permits, community pits or common use areas issued or designated after the RMP would be subject to permit stipulations developed in the RMP. These stipulations would be the same as those stipulations for oil and gas leasing except that areas with a no surface occupancy stipulation and closed would be closed to the disposal of salable minerals.

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| **Oil and Gas Leasing (see Map 2-5-A):** | **Oil and Gas Leasing (see Map 2-5-B):** | **Oil and Gas Leasing (see Map 2-5-C):** | **Oil and Gas Leasing (see Map 2-5-D):** |
| • Approximately 1,038,344 acres would be open to oil and gas leasing, subject to standard lease terms (Category 1).<br><br>• Approximately 389,605 acres would be open to oil and gas leasing subject to special conditions (controlled surface use/timing limitation stipulations [CSU/TL], or Category 2).<br><br>• Approximately 38,912 acres would be open to oil and gas leasing with no surface occupancy (NSO; Category 3).<br><br>• Approximately 353,293 acres would be closed to oil and gas leasing. (Category 4). | • Approximately 264,344 acres would be open to oil and gas leasing, subject to standard terms and conditions.<br><br>• Approximately 543,751 acres would be open to oil and gas leasing subject to CSU and TL stipulations.<br><br>• Approximately 342,931 acres would be open to oil and gas leasing subject to an NSO stipulation.<br><br>• Approximately 671,444 acres would be closed to oil and gas leasing, of which 318,709 acres are outside Wilderness or Wilderness Study Areas. Of these 318,709 acres, 20,288 acres are within the Castle Valley and Moab-Spanish Valley watersheds, and 266,455 are within lands with wilderness characteristics. The remaining 31,966 acres are closed to oil and gas leasing because it is not reasonable to apply an NSO stipulation. This includes areas where the oil and gas resources are physically inaccessible by current directional drilling technology from outside the boundaries of the NSO areas. (These lands closed to oil and gas leasing | • Approximately 427,273 acres would be open to oil and gas leasing, subject to standard terms and conditions.<br><br>• Approximately 806,994 acres would be open to oil and gas leasing subject to CSU and TL stipulations.<br><br>• Approximately 217,480 acres would be open to oil and gas leasing subject to an NSO stipulation.<br><br>• Approximately 370,250 acres would be closed to oil and gas leasing, of which 25,306 acres are outside Wilderness or Wilderness Study Areas. About 25,306 acres are closed to oil and gas leasing because it is not reasonable to apply an NSO stipulation. This includes areas where the oil and gas resources are physically inaccessible by current directional drilling technology from outside the boundaries of the NSO areas. (These lands closed to oil and gas leasing would be managed to preclude all other surface-disturbing activities.) Should technology change, a Plan Amendment would be initiated to place these 25,306 acres under an NSO | • Approximately 797,031 acres would be open to oil and gas leasing, subject to standard terms and conditions.<br><br>• Approximately 590,442 acres would be open to oil and gas leasing subject to CSU and TL stipulations.<br><br>• Approximately 84,772 acres would be open to oil and gas leasing subject to an NSO stipulation.<br><br>• Approximately 350,219 acres would be closed to oil and gas leasing. In addition, 8,078 acres of Federal minerals (split-estate lands) would be managed as open to oil and gas leasing with an NSO stipulation, and 1,539 acres of Federal minerals (split-estate lands) would be closed to oil and gas leasing (see Appendix C). |

BLM_0009879

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| | would be managed to preclude all other surface-disturbing activities.) Should technology change, a Plan Amendment would be initiated to place these 31,966 acres under an NSO stipulation for oil and gas leasing. In addition, 7,259 acres of Federal minerals (split-estate lands) would be managed as open to oil and gas leasing with an NSO stipulation, and 2,358 acres of Federal minerals (split-estate lands) would be closed to oil and gas leasing (see Appendix C). | stipulation for oil and gas leasing. In addition, 8,078 acres of Federal minerals (split-estate lands) would be managed as open to oil and gas leasing with an NSO stipulation, and 1,539 acres of Federal minerals (split-estate lands) would be closed to oil and gas leasing (see Appendix C). | |
| **Salable Minerals:** Allow the disposal of salable minerals on 1,466,861 acres. | **Salable Minerals (see Map 2-5-B):** <ul><li>Approximately 264,344 acres would be open to the disposal of salable minerals subject to standard terms and conditions.</li><li>Approximately 543,751 acres would be open to the disposal of salable minerals subject to CSU and TL stipulations.</li><li>Approximately 342,931 acres would not be open to the disposal of salable minerals (in those areas subject to an NSO stipulation for oil and gas leasing).</li><li>Approximately 671,444 acres would be closed to the disposal of salable minerals.</li></ul> In addition, 7,259 acres of Federal minerals (split-estate lands) would not be open to the disposal of salable minerals in those lands subject to an NSO stipulation for oil and gas, and 2,358 acres of Federal minerals (split-estate lands) would be closed to the disposal of salable minerals (see Appendix C). | **Salable Minerals (see Map 2-5-C):** <ul><li>Approximately 427,273 acres would be open to the disposal of salable minerals subject to standard terms and conditions.</li><li>Approximately 806,994 acres would be open to the disposal of salable minerals subject to CSU and TL stipulations.</li><li>Approximately 217,480 acres would not be open to the disposal of salable minerals (in those areas subject to an NSO stipulation for oil and gas leasing).</li><li>Approximately 370,250 acres would be closed to the disposal of salable minerals.</li></ul> In addition, 8,078 acres of Federal minerals (split-estate lands) would not be open to the disposal of salable minerals in those lands subject to an NSO stipulation for oil and gas, and 1,539 acres of Federal minerals (split-estate lands) would be closed to the disposal of salable minerals (see Appendix C). | **Salable Minerals (see Map 2-5-D):** <ul><li>Approximately 797,031 acres would be open to the disposal of salable minerals subject to standard terms and conditions.</li><li>Approximately 590,442 acres would be open to the disposal of salable minerals subject to CSU and TL stipulations.</li><li>Approximately 84,772 acres would not be open to the disposal of salable minerals (in those areas subject to an NSO stipulation for oil and gas leasing).</li><li>Approximately 350,219 acres would be closed to the disposal of salable minerals.</li></ul> In addition, 8,078 acres of Federal minerals (split-estate lands) would not be open to the disposal of salable minerals in those lands subject to an NSO stipulation for oil and gas, and 1,539 acres of Federal minerals (split-estate lands) would be closed to the disposal of salable minerals (see Appendix C). |
| **Locatable Minerals:** <ul><li>Approximately 1,389,531 acres are open to operations for locatable minerals.</li><li>Approximately 78,333 acres are withdrawn from operations to locatable minerals.</li><li>Approximately 353,510 acres within WSAs are open to operations for locatable minerals subject to the *Interim Management Policy for Lands Under Wilderness Review* (IMP; 1650-1).</li></ul> | **Locatable Minerals:** <ul><li>Approximately 268,873 acres are open to operations for locatable minerals subject to standard terms and conditions.</li><li>Approximately 1,120,658 acres are open to operations for locatable minerals subject to CSU and TL stipulations.</li><li>Approximately 78,333 acres are withdrawn from operations to locatable minerals.</li><li>Approximately 353,510 acres within WSAs are open to operations for locatable minerals subject to the IMP (1650-1).</li></ul> | **Locatable Minerals:** <ul><li>Approximately 427,273 acres are open to operations for locatable minerals subject to standard terms and conditions.</li><li>Approximately 962,258 acres are open to operations for locatable minerals subject to CSU and TL stipulations.</li><li>Approximately 78,333 acres are withdrawn from operations to locatable minerals.</li><li>Approximately 353,510 acres within WSAs are open to operations for locatable minerals subject to the IMP (1650-1).</li></ul> | **Locatable Minerals:** <ul><li>Approximately 797,031 acres are open to operations for locatable minerals subject to standard terms and conditions.</li><li>Approximately 592,500 acres are open to operations for locatable minerals subject to CSU and TL stipulations.</li><li>Approximately 78,333 acres are withdrawn from operations to locatable minerals.</li><li>Approximately 353,510 acres within WSAs are open to operations for locatable minerals subject to the IMP (1650-1).</li></ul> |

## NON-WSA LANDS WITH WILDERNESS CHARACTERISTICS

BLM has identified non-WSA lands with wilderness characteristics for management consideration in this planning effort. Wilderness characteristics include the appearance of naturalness and outstanding opportunities for solitude or primitive and unconfined recreation (see Appendix P for more information).

**Goals and Objectives:**
- Protect, preserve and maintain wilderness characteristics (appearance of naturalness, outstanding opportunities for primitive and unconfined recreation or solitude) of non-WSA lands with wilderness characteristics as appropriate, considering manageability and the context of competing resource demands. Manage these primitive lands and backcountry landscapes for their undeveloped character, and to provide opportunities for primitive recreational activities and experiences of solitude, as appropriate.

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Non-WSA lands with wilderness characteristics were not addressed in the 1985 Grand RMP, as amended. These lands are managed according to the 1985 RMP prescriptions. | Manage 266,485 acres of non-WSA lands (see Map 2-24-B) to protect, preserve and maintain wilderness characteristics by applying the following prescriptions: <ul><li>Closed to oil and gas leasing (see Appendix C).</li><li>Preclude other surface-disturbing activities, including mineral material sales (see Appendix C).</li><li>Retain public lands in Federal ownership.</li><li>Prohibit woodland harvest.</li><li>Manage vehicle use as limited to designated roads.</li><li>Designate as VRM Class II.</li><li>Manage as exclusion areas for ROWs.</li></ul> **Non-WSA lands to be managed for wilderness characteristics:** Arches Adjacent (6,396 acres) Beaver Creek (25,722 acres), Behind the Rocks (3,643 acres), Big Triangle (5,200 acres), Coal Canyon (22,135 acres), Dead Horse | Manage 47,761 acres of non-WSA lands (see Map 2-24-C) to protect, preserve and maintain wilderness characteristics by applying the following prescriptions: <ul><li>Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C). Applying a no surface occupancy stipulation for oil and gas leasing to non-WSA lands with wilderness characteristics, in combination with the no surface occupancy applied because of the Three Rivers Withdrawal, results in tracts of land which are physically inaccessible to oil and gas operations within the Fisher Towers, Mary Jane, and Beaver Creek areas. For this reason, portions of non-WSA lands in these areas with wilderness characteristics would be closed to oil and gas leasing.</li><li>These areas would be managed to preclude other surface-disturbing activities (see Appendix C) including mineral material sales (see Appendix C).</li></ul> | No non-WSA lands would be managed to maintain wilderness characteristics. |

### Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

| | | |
|---|---|---|
| | Cliffs (797 acres), Desolation Canyon (10,498 acres), Dome Plateau (14,207 acres), Fisher Towers (17,235 acres), Floy Canyon (9,983 acres), Flume Canyon (3,520 acres), Goldbar (6,437 acres), Gooseneck (843 acres). Granite Creek (4,528 acres), Harts Point (1,465 acres), Hatch Wash (10,983 acres), Hatch/Lockhart (2,670 acres), Hells Hole (2,538 acres), Hideout Canyon (11,607 acres), Horsethief Point ( 8,382 acres), Hunter Canyon (4,465 acres), Labyrinth Canyon (25,361 acres), Lost Spring Canyon (11,456 acres), Mary Jane Canyon (24,779 acres), Mexico Point (12,837 acres), Mill Creek Canyon (3,388 acres), Negro Bill Canyon (2,333 acres), Shafer Canyon (1,842 acres), Spruce Canyon (1,131 acres), Westwater Canyon (3,086 acres), Westwater Creek (7,188 acres), and Yellow Bird (357 acres). | ◆ Retain public lands in Federal ownership.<br>◆ Prohibit woodland harvest.<br>◆ Manage vehicle use as limited to designated roads.<br>◆ Designate as VRM Class II.<br>◆ Manage as avoidance areas for ROWs.<br>**Non-WSA lands to be managed for wilderness characteristics:** Beaver Creek (25,722 acres), Fisher Towers (5,540 acres within the Richardson Amphitheater), and Mary Jane Canyon (16,499 acres within the Richardson Amphitheater). | |

### PALEONTOLOGY

#### Goals and Objectives:

◆ Protect paleontological resources from surface-disturbing activities. Promote the scientific, educational, and recreational uses of fossils.
◆ Foster public awareness and appreciation of the MPA's paleontological heritage.
◆ Promote and facilitate scientific investigation of fossil resources.

#### Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:

◆ Vertebrate fossils may be collected only by qualified individuals under a permit issued by the BLM Utah State Office. Vertebrate fossils include bones, teeth, eggs, and other body parts of animals with backbones such as dinosaurs, fish, turtles, and mammals. Vertebrate fossils also include trace fossils, such as footprints, burrows, gizzard stones, and dung.
◆ Fossils collected under a permit remain the property of the Federal government and must be placed in an approved repository (such as a museum or university) identified at the time of permit issuance.

#### Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:

◆ Locate, evaluate, and protect significant paleontological resources. Provide for public visitation and education opportunities while simultaneously protecting and supporting the scientific and research value of paleontological resources in the MPA.
◆ Recreational collectors may collect and retain reasonable amounts of common invertebrate and plant fossils for personal, non-commercial use. Surface disturbance must be negligible, and collectors may only use non-power hand tools.
◆ Casting of vertebrate fossils, including dinosaur tracks, is prohibited unless allowed under a scientific/research permit issued by the BLM Utah State Office.
◆ Lands identified for disposal would be evaluated to determine whether such actions would result in significant fossils (see Appendix D) from Federal ownership.
◆ Recognize and protect paleontological resources identified as part of the Dinosaur Diamond National Prehistoric Byway.
◆ Prohibit petrified wood gathering within the Colorado Riverway Special Recreation Management Area (SRMA) to protect these paleontological resources for future public enjoyment. Prohibit private petrified wood collection only near high visitation sites within the Labyrinth Rims/Gemini Bridges SRMA. Manage petrified wood gathering outside these two SRMAs to allow for private collection of petrified wood (43 CFR 3620).
◆ Prohibit commercial sales of petrified wood products due to limited availability of such resources.
◆ Attach lease notices, stipulations, and other requirements to permitted activities to prevent damage to paleontological resources.
◆ Manage Mill Canyon Dinosaur Trail, Copper Ridge Sauropod Trackway, and Poison Spider Track Site as important scientific and public education resources as guided by future SRMA activity-level plans.
◆ Personal collection of a reasonable amount of invertebrate and plant fossils would be allowed throughout the MPA. Where areas with rare and significant invertebrate and plant fossils are identified, these areas would be closed to personal collection.

### RECREATION

#### Goals and Objectives:

To provide for multiple recreational uses of the public lands and sustain a wide-range of recreation opportunities and potential experiences for visitors and residents, while supporting local economic stability and sustaining the recreation resource base and sensitive resource values.

#### Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:

Management of recreation would be generally guided by the Utah Standards for Public Land Health and Guidelines for Recreation Management. The guidelines describe in a broad sense the conditions to be maintained or achieved for rangeland health within the recreation program.

#### Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:

● Where unacceptable damage to natural or cultural resources by recreational use is anticipated or observed, BLM would seek to limit or control activities by managing the nature and extent of the activity or by providing site improvements that make the activity more sustainable or by a combination of management controls and facility development. Such management actions would seek to reduce or eliminate the adverse impact while maintaining the economic benefits associated with a wide range of recreation uses.
● BLM would consider and, where appropriate, implement management methods to protect riparian resources, special status species, and wildlife habitat while enhancing recreation opportunities. Management methods may include limitation of visitor numbers, camping and travel controls, implementation of fees, alteration of when use takes place, and other similar actions to be approved through normal BLM procedures.
● BLM would coordinate management of recreation use with other agencies, State and local government and tribal units to provide public benefits.
● Recreational off-highway vehicle (OHV) and mechanized travel would be consistent with area and route designations described in the travel management plan. BLM would work with agency and government officials and permit holders to develop procedures, protocols, permits or other types of authorization, as appropriate, to provide reasonable access for non-recreational use of OHVs for military, search and rescue, emergency, administrative, and permitted uses.
● Dispersed camping is allowed where not specifically restricted. Dispersed camping may be closed seasonally or as impacts or environmental conditions warrant. All vehicle use associated with dispersed camping activities is required to stay on designated routes.
● Management actions limiting camping, wood gathering, firewood cutting, and requiring use of fire pans and portable toilets implemented through published closures limitations, restrictions, or special rules applicable to specific land areas within the MPA are carried forward in all alternatives (see Consolidation of

BLM_0009881

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

- Moab Field Office Rules, Closures, and Restrictions in Appendix E).
- Lands acquired within a management area through future land tenure adjustment would take on the management of the surrounding area.
- Provide visitor information and outreach programs that emphasize the value of public land resources and low impact recreation techniques while also providing information about recreation activities, experiences and benefits.
- Provide public information concerning the prevention of the spread of invasive and exotic weeds, and about wildlife species and their habitat especially in riparian areas.
- Continue to manage the Slickrock Bike Trail and Fisher Towers Trail as a National Recreation Trails consistent with their current secretarial designation. National Trails designation would be consistent with this plan.
- Continue supporting public use and enjoyment of the Prehistoric Highway National Scenic Byway. Assist with the development and implementation of a management plan.
- Support Grand County's efforts to obtain approval of corridor management plans for Utah Scenic Byways (Utah Highways 128, 313 and 279) and provide assistance, where feasible, in the development of byway facilities consistent with other decisions of the RMP.
- Continue to manage Kane Creek Road to Hurrah Pass and the roads to Needles, Anticline, and Minor overlooks as Utah Scenic Backways.
- BLM Back Country Byways and National Recreation Trails may be designated in the future as deemed appropriate with site-specific environmental analysis.
- Continue managing Kokopelli's Trail to facilitate its use as a potential segment of the American Discovery Trail. Seek to acquire public access along the entire route to facilitate potential designation as a National Recreation Trail.

### Special Recreation Management Areas (SRMAs)

**Management Common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D (see SRMA Maps 2-8-A through 2-8-D; see Appendix F for details on SRMAs):**

- Criteria for establishment of SRMAs, or adding or revising SRMA boundaries (using the Plan Amendment process, where appropriate) include:
  - Recreation use requires intensive management strategies to provide recreation opportunities or maintain resource values.
  - A recreation area management plan or interdisciplinary plan with intensive and specific recreation management actions is approved.
  - BLM announces the management plan and plan approval through media.
- Generally, where SRMA boundaries are revised, management actions applicable to the original SRMA would also apply to the revised area.
- Manage all public lands within SRMAs for retention in Federal ownership consistent with the MFO exchange criteria and acquire high value non-Federal lands from willing sellers where such acquisition would further the purposes of each SRMA.
- Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) within 0.5 miles of developed recreation sites (current and planned as Potential Future Facilities; see each SRMA).
- Manage all SRMAs for sustainable camping opportunities. Camping may be restricted to designated sites if use and conditions warrant.
- Manage all SRMAs according to Visual Resource Management Class for each respective alternative to protect scenic values and settings important to recreation.
- Approved recreation facilities supporting recreation area management objectives would be planned and designed to reduce visual impacts where feasible (see Visual Resource Management).
- Replace The Colorado River SRMA (24,124 acres) with the Two Rivers, Colorado Riverway and Dolores River Canyons SRMAs (Maps 2-8-A through 2-8-D) to provide for more focused management.
- Provide general recreation management guidance and subsequent implementation of management actions for activity plan level actions for SRMAs through continuation and modification of approved recreation area management plans (RAMPs) and development of new RAMPs for all SRMAs.
- A River Management Plan for the Colorado River from the Colorado State Line to Castle Creek, and for the Dolores River, would be completed.
- De-signate SRMAs as either Destination SRMAs (majority of visitation from outside the area), Community SRMAs (the majority of visitation is from the local community), or Undeveloped SRMAs (the focus of the SRMA is to maintain the backcountry setting).

**Facilities:**

- Build and maintain additional recreation facilities consistent with the guidance provided in RAMPs and in the various focus areas as established in the RMP. In the absence of a RAMP, facilities may be considered through the NEPA process where they support the objectives of the SRMA.
- Campground facilities may be constructed; however, they would be located to avoid wetland, riparian, cultural resources, floodplains, and special status plant and animal species habitats. If avoidance is not possible, mitigation would be implemented to augment the values affected by the construction (MCA and Executive Orders).
- Continue to manage and maintain for recreation use all existing developed recreation sites. Follow site management guidance contained in RAMPs.
- Continue existing ROWs issued to BLM for all existing developed recreation sites and facilities. Issue similar protective ROWs for all new recreation facilities.
- Manage developed sites as necessary under the authority of 43 CFR Part 8360, inclusive of published closures, restrictions, and supplemental rules developed for the public lands within the MPA (see above), to protect visitor health and safety, reduce visitor conflicts, and provide for the protection of government property and resources.

**Focus Areas or Recreation Management Zones (see Maps 2-9-A through 2-9-D; see Appendix F for more detail on SRMAs)**

- Focus areas are Recreation Management Zones (RMZ) for emphasizing particular types of recreation activities while still allowing for other uses in accordance with the Travel Plan. As RMZs, Focus Areas are established as a mechanism for enhancing specific recreation opportunities through facilities and education such as route marking, parking, camping, and information. Where a single focus SRMA or a specific RMZ (Focus Area) is not identified, the default focus of that area is motorized, backcountry touring on designated roads. The roads are those identified in the Travel Plan accompanying this RMP.
- The following types of Focus Areas are considered under the alternatives: Non-mechanized Recreation, Mountain Bike Backcountry Touring, Motorized Backcountry Touring, Scenic Driving Corridors, Specialized Sport Venue Non-motorized, Specialized Sport Venue Motorized, and Managed Open OHV Area.

### Bookcliffs SRMA

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Continue to manage the Bookcliffs for general recreation use. | The Bookcliffs SRMA (Map 2-8) would be established as an Undeveloped SRMA at 348,140 acres for non-mechanized recreation, especially equestrian use, hiking, backpacking, and big game hunting. It would be managed for low frequency of visitor interaction by not establishing new motorized, mechanized routes; no commercial motorized permits would be issued and competitive events would not be allowed. | The Bookcliffs SRMA would not be established. | The Bookcliffs SRMA would not be established. |

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| Cameo Cliffs SRMA | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| BLM authorization of the ROW to San Juan County for the Hook and Ladder OHV trailhead and several sections of connector route would continue.<br><br>In June 2005, the Cameo Cliffs Special Recreation Area (Map 2-8) was designated under a Plan Amendment to the Grand RMP. OHV designation for the area is Limited to Designated Routes. The focus activity in the Cameo Cliffs SRMA is motorized route use. | Same as the Proposed Plan. | Manage the Cameo Cliffs area as a Destination SRMA (15,597 acres) under the Cameo Cliffs Recreation Area Management Plan. The Cameo Cliffs SRMA would provide sustainable opportunities for road-related motorized and mechanized outdoor recreation on a marked route system, and provide a non-mechanized hiking and equestrian area in Hook and Ladder Gulch and along the route of the Old Spanish Trail, while protecting and maintaining resource values including range, wildlife habitat, scenic, cultural, historical, recreational, and riparian values in current or improved condition. To facilitate use of the area for touring purposes, no motorized competitive events would be authorized.<br><br>Work with San Juan County to further implement the Cameo Cliffs portion of the San Juan County All-terrain Vehicle Plan, and to protect and manage wildlife, vegetation, and cultural resources.<br><br>Implement camping management rules as use levels and resource impacts warrant.<br><br>**Potential Future Facilities:**<br>Install Cameo Cliffs OHV Trailhead toilet. | Same as the Proposed Plan. |

| Canyon Rims SRMA | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Manage the Canyon Rims SRMA (101,531 acres) (Map 2-8) to protect, manage and improve the natural resources of the area while allowing for recreation activities such as developed camping, visiting scenic overlooks, auto touring on the primary road system, touring the secondary road system by motorized vehicle and mountain bike, and hiking and backpacking the canyons (in accordance with the ROS classes) utilizing interpretive and educational opportunities to realize the potential of the area.<br><br>Major management actions include:<br><br>1. Manage the area as open to mineral leasing with controlled surface occupancy except for developed recreation sites, which would be managed as open to leasing with no surface occupancy.<br>2. Manage the area to maintain ROS classes as inventoried.<br>3. Acquire or exchange private and State lands from willing landowners.<br>4. Manage the entire area as OHV travel limited to existing roads (mapped as part of the planning process).<br>5. Manage the western rim land areas of Hatch Point as VRM Class II and the remainder of the area as VRM Class III.<br>6. Maintain and/or improve all existing developed recreation sites as specified in the Canyon Rims Recreation Area Management Plan.<br>7. Restrict camping near developed recreation sites.<br>8. Close the entire recreation area to wood cutting and gathering.<br>9. Manage Hatch Wash and the lower section of West Coyote Creek for primitive, non-motorized recreation.<br>10. Restrict backcountry motorized events to commercial and non-race special events on the Flat Iron Mesa Jeep Safari route only.<br>11. Consider development of additional trails and recreation facilities only as necessary. | Same as the Proposed Plan. | Same as Alternative A except:<br><br>• Manage the Canyon Rims SRMA as a Destination SRMA (101,531 acres).<br>• Motorized travel would be limited to designated roads and trails.<br>• Manage the Windmill Nature Trail, Anticline Overlook Trail, Needles Overlook Trail, and Trough Spring Canyon Trail for hiking use only. | Same as the Proposed Plan. |

BLM_0009883

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| **Focus Area: Non-mechanized Recreation:** | **Focus Area: Non-mechanized Recreation:** | **Focus Area: Non-mechanized Recreation (3,642 acres):** | **Focus Area: Non-mechanized Recreation:** |
|---|---|---|---|
| N/A | Same as the Proposed Plan. | Hatch Wash Hiking and Backpacking Focus Area inclusive of the area from Goodman Canyon to the confluence of Hatch Wash with Kane Creek Canyon including the lower section of West Coyote Creek (from private land west to confluence with Hatch Wash) and the lower section of Troutwater Canyon.<br><br>New motorized routes would not be considered. | The focus area would not be established. |
| **Focus Area: Scenic Driving Corridors:** | **Focus Area: Scenic Driving Corridors:** | **Focus Area: Scenic Driving Corridors:** | **Focus Area: Scenic Driving Corridors:** |
| N/A | Needles and Anticline Roads – Utah Scenic Backways. Manage for scenic driving enjoyment. The corridor is defined as having a width of 1 mile from centerline (or to border of adjoining focus area). | Needles and Anticline Roads – Utah Scenic Backways. Manage for scenic driving enjoyment. The corridor is defined as having a width of 1/2 mile from centerline (or to border of adjoining focus area). | Needles and Anticline Roads – Utah Scenic Backways. Manage for scenic driving enjoyment. The corridor is defined as having a width of 1/4 mile from centerline (or to border of adjoining focus area). |

| Colorado Riverway SRMA | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| The Colorado Riverway (Map 2-8) was established as a recreation management area in 1992 and extended in 2001. Management has focused upon providing improvements to sites to facilitate recreation use and protection of scenic and other resource values. Subsequent recreation plan amendments have addressed camping in the Onion Creek area, the construction of a bike lane along SR 128 from the Porcupine Rim Trail to Lion's Park, the construction of a non-motorized bridge on non-Federal land at Lion's Park, and the establishment of a non-mechanized route system in the area between Onion and Professor Creeks.<br><br>Major management actions include:<br>1. Acquiring specific tracts of State land.<br>2. Acquiring private lands or scenic easements from willing sellers.<br>3. Restricting motorized and mechanized travel to designated routes.<br>4. Developing and managing recreation facilities and uses.<br>5. Limiting camping and camp fires to designated sites.<br>6. Closing the area to firewood cutting and limiting firewood gathering to riverside driftwood.<br>7. Recommending withdrawal of the area from mineral entry.<br>8. Limiting use of the Fisher Towers, Negro Bill Canyon, Hunter Canyon, and Corona Arch trails to foot travel.*<br><br>Lands along the Colorado River within the riverway are withdrawn from mineral entry through the Three Rivers Withdrawal. | Same as the Proposed Plan, except:<br>• Expand boundary to include the entire Top of the World area and lands along the Entrada Bluffs Road up to the boundary of the Colorado River SRMA (103,467 acres).<br>• Prohibit camping on the north side of the river along Highway 128.<br>• Prohibit camping at the Kane Creek Crossing Area. | Colorado Riverway SRMA would be established as a Destination SRMA at 89,936 acres. Management would be the same as Alternative A with the following exceptions and additions:<br>• Expand the boundary of the Colorado Riverway to include the lands north of the Entrada Bluffs Road to the boundary of the Two Rivers SRMA, as well as lands south of the Entrada Bluffs Road (one mile corridor).<br>• Manage the Colorado Riverway as a Destination SRMA to manage camping, boating, river access, trail, and interpretive facilities in popular areas along or near the Colorado River and to protect the outstanding resource values of the area. Guidance for management is included in the Colorado Riverway Recreation Area Management Plan.<br>• Manage the Dewey Bridge to Castle Creek portion of the Colorado River to provide opportunities for high use boating in a scenic setting (see Boating Management below).<br>• Manage south shore recreation sites (from Dewey Bridge to Lion's Park) under the Colorado Riverway RAMP.<br>• Manage the north shore to provide quality undeveloped designated camping and hiking opportunities while assuring protection of high quality habitat for bighorn sheep as well as for other resource values.<br>• Manage the Kane Creek Crossing area to emphasize responsible designated camping and scenic touring.<br>• Manage the Entrada Bluffs Road area to emphasize designated camping opportunities, and scenic touring.<br>• Manage the Shafer Basin addition to emphasize scenic backcountry driving opportunities (no camping allowed in this area).<br>• Manage the Amphitheater Loop, Fisher Towers, Negro Bill Canyon, Hunter Canyon, and Corona Arch trails and Professor Creek to provide high quality hiking-only opportunities while preserving ecological resources.<br>• Provide for parking and manage the Kings Bench route (above the Kane Creek Road near the Kings Bottom camping area) as a hiking route. Obtain public access from a willing seller across the short section of private land that is located along the route.<br>• Manage the seldom-used 1.5-mile long route (that spurs left from the Poison Spider Mesa Road) on the intermediate bench between the Colorado River and Poison Spider Mesa for hiking use. If future use levels warrant, develop a return hiking trail loop on the river side of the road bed.<br>• Manage the Kane Creek Road to Amasa Back Jeep Road section of the Historic Jackson's Ladder trail as hiking and biking only. | Colorado Riverway SRMA would be established at 79,126 acres (this acreage excludes the Entrada Bluffs area). Management prescriptions would be the same as the Proposed Plan. |

BLM_0009884

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| | | <ul><li>Establish the proposed Pothole Arch and Rockstacker trails on Amasa Back (Kane Creek) as mountain bike routes. Work with Monticello Field Office to designate the Jackson's Ladder historic horse trail as a mountain bike trail from Jackson's Hole to the Amasa Back Jeep Road. Work with private land owners to secure non-motorized access to the bottom of this route.</li><li>Manage the Portal Trail to provide both hiking and mountain bike opportunities.</li></ul> | |
| **Potential Future Facilities:**<br>N/A | **Potential Future Facilities:**<br><ul><li>Entrada Bluffs Camping Area; camping in this area would be limited to this campground.</li><li>Hittle Bottom Group Campsites; camping in this area would be limited to this campground.</li><li>Kane Creek Crossing Camping Area; camping in this area would be limited to this campground.</li><li>Kane Creek Road Riverway Information Area.</li><li>Utah Highway 279 Riverway Information Area.</li><li>Wall Street climbing area toilet.</li><li>Lower Castle Creek Trail head and parking area.</li><li>Utah Highway 128 Bike Lane.</li></ul> | **Potential Future Facilities (in addition to those already in the Colorado Riverway Plan):**<br><ul><li>Castle Valley Interpretive Site.</li><li>Entrada Bluffs Camping Area; camping in this area would be limited to this campground.</li><li>Hittle Bottom Group Campsites.</li><li>Kane Creek Crossing Camping Area. Work with SITLA to implement joint camping management in this area.</li><li>Kane Creek Road Riverway Information Area.</li><li>Lower Castle Creek Trail Access.</li><li>Poison Spider Dinosaur Track Trail.</li><li>Utah Highway 128 Bike Lane.</li><li>Utah Highway 279 Riverway Information Area.</li><li>Wall Street climbing area toilet.</li></ul> | **Potential Future Facilities:**<br>Same as the Proposed Plan except:<br><ul><li>Do not designate Entrada Bluffs Camping Area or limit camping.</li><li>Do not designate Hittle Bottom Group Campsites or limit camping.</li><li>Do not designate Kane Creek Crossing Camping Area or limit camping.</li><li>Do not construct Wall Street climbing area toilet.</li></ul> |
| **Focus Areas: Non-mechanized Recreation:**<br>N/A | **Focus Areas: Non-mechanized Recreation:**<br>Negro Bill Hiking and Ecological Study Focus Area (12,510 acres) inclusive of Negro Bill Canyon from the Sand Flats Recreation Area boundary to the eastern rim of Mat Martin Point with allowance for recreational mechanized use of the Porcupine Rim Trail from the junction approximately 1.55 miles east of Little Spring (upper exit to Sand Flats Road) to Highway 128.<br><ul><li>Negro Bill Canyon would be restricted to day use only. Equestrian use of Negro Bill Canyon would be prohibited.</li><li>Manage the Porcupine Rim Trail to provide only hiking and mountain biking opportunities. Management of this trail may change pending resolution of wilderness designation for the Negro Bill Canyon WSA.</li><li>No new motorized routes would be considered.</li><li>Temporal zoning, permitting and vehicle type restrictions would be used to mitigate user conflicts on the Porcupine Rim Jeep Safari Route.</li></ul>Richardson Amphitheater/Castle Rock, Hiking, Climbing and Equestrian Focus Area:<br><ul><li>Same as the Proposed Plan.</li><li>Up to 15 miles of equestrian trails would be marked within this focus area.</li></ul> | **Focus Areas: Non-mechanized Recreation:**<br>Negro Bill Hiking and Ecological Study Focus Area (8,684 acres) inclusive of Negro Bill Canyon between the Sand Flats Recreation Area and the Porcupine Rim Trail. Manage for recreational mechanized use on the main portion of the Porcupine Rim Trail from the junction approximately 1.55 miles east of Little Spring (upper exit to Sand Flats Road) to Highway 128 (with the exception of the Porcupine Rim Trail to Coffeepot Rock which would be managed for motorized use.)<br><ul><li>Manage the Negro Bill Canyon Trail for hiking use only. Equestrian use of Negro Bill Canon would be prohibited.</li><li>Manage the Porcupine Rim Trail to provide only hiking and mountain biking opportunities. Management of this trail may change pending resolution of wilderness designation for the Negro Bill Canyon WSA.</li><li>No new motorized routes would be considered.</li></ul>Richardson Amphitheater/Castle Rock, Hiking, Climbing and Equestrian Focus Area (24,767 acres) bounded by Fisher Valley, the rim of "Top of the World" escarpment, Highway 128, and non-Federal lands along the east side of the Castle Valley Road. Motorized use allowed on the Fisher Towers Road, the Onion Creek Road, roads serving private ranches and water developments in the Professor Valley area, and the motorized access route to the viewpoint of Professor Valley (the saddle between Adobe Mesa and Castle Rock) and the road to designated undeveloped campsites below Castle Rock. Work with Utah Open Lands (a private land conservation organization) to establish a semi-developed camping area to serve rock climbers.<br><ul><li>The Onion Creek Benches equestrian trail system between Onion and Professor Creeks would be managed to provide opportunities for equestrian trail riding. An equestrian-oriented reservable camping area would be managed in Onion Creek upstream from Highway 128. Up to 30 miles of equestrian trails would be marked within this focus area.</li><li>Manage the Amphitheater Loop and Fisher Tower Trails for hiking only.</li><li>Consider connecting hiking trails between Onion Creek and the</li></ul> | **Focus Areas: Non-mechanized Recreation:**<br>Negro Bill Hiking and Ecological Study Focus Area (1,287 acres) inclusive of the core of Negro Bill Canyon as identified in the 1985 RMP as the Negro Bill Canyon Outstanding Natural Area.<br><ul><li>Equestrian use of Negro Bill Canyon would be prohibited.</li></ul>Richardson Amphitheater/Castle Rock, Hiking, Climbing and Equestrian Focus Area:<br><ul><li>The Richardson Amphitheater/Castle Rock, Hiking, Climbing and Equestrian focus area would not be established.</li></ul> |

BLM_0009885

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| | | Amphitheater Loop Trail. | |
| **Focus Area: Scenic Driving Corridors:**<br>N/A | **Focus Area: Scenic Driving Corridors:**<br>Same as the Proposed Plan, except increase scenic corridor average width to 1 mile from centerline or line of sight (whichever is shorter) or to border of adjoining focus area (see VRM for management prescriptions). | **Focus Areas: Scenic Driving Corridors:**<br>These corridors include Highways 128 and 279 (which are both designated Utah Scenic Byways), as well as the Kane Creek/Hurrah Pass portion of the Lockhart Basin Scenic Backway and the BLM portion of the LaSal Mountain Loop Road Scenic Backway. Manage for scenic driving enjoyment. The corridor is defined as having a width of 1/2 mile from centerline, or line of sight or to border of adjoining focus area (whichever is shorter; see VRM for management prescriptions). | **Focus Area: Scenic Driving Corridors:**<br>Same as the Proposed Plan, except reduce scenic corridor average width to 1/4 mile from centerline (or to border of adjoining focus area; see VRM for management prescriptions). |
| **Focus Areas: Specialized Sport Venue, Non-motorized:**<br>N/A | **Focus Areas: Specialized Sport Venue, Non-motorized:**<br>• No specialized sport venue-non motorized would be established.<br>• BASE jumping would not be allowed in developed recreation sites. | **Focus Areas: Specialized Sport Venue, Non-motorized:**<br>• Tombstone Competitive BASE Jumping Focus Area (42 acres):<br>Manage Tombstone area to provide BASE jumping opportunities along the Kane Creek Road.<br>BASE jumping would not be allowed in developed recreation sites.<br>• Wall Street Sport Climbing Focus Area (44 acres) (with special protective measures taken for rock art):<br>Manage Wall Street area to provide rock climbing opportunities along the Potash Road. | **Focus Areas: Specialized Sport Venue, Non-motorized:**<br>Same as the Proposed Plan, except BASE-jumping would be allowed in all areas. |
| **Boating Management:**<br>Dewey to Castle Creek: Continue the existing river management program on the Colorado and Dolores Rivers (24,000 passenger days per year: 30 commercial outfitters) to provide for the safe and enjoyable long-term use of the rivers. | **Boating Management:**<br>Same as the Proposed Plan, except:<br>• Dewey to Castle Creek: No restrictions on amount of private use would be established unless unacceptable resource impacts occur. Permit 20 unallocated and 2 allocated (100 user days each) commercial permits. Establish additional restrictions on amount of commercial use if conditions warrant based on desired resources objectives.<br>• Camping would be restricted to existing campgrounds along the Colorado River from Dewey to Castle Creek. There would be no camping along the north side of the Colorado River. | **Boating Management:**<br>• Dewey to Castle Creek: Manage to provide an opportunity for scenic, mild whitewater boating. No restrictions on amount of private use would be established unless unacceptable resource impacts occur. Permit 22 unallocated commercial permits. No further restrictions on amount of commercial use would be established.<br>• Camping would be restricted to designated campsites along the north side of the Colorado River and existing campgrounds on the south side of the Colorado River. | **Boating Management:**<br>Same as the Proposed Plan, except:<br>• Dewey to Castle Creek: Permit 25 unallocated commercial permits.<br>• River access camping by boaters would be allowed on the north side of the Colorado River and limited to existing campgrounds on the south side of the Colorado River.<br>• Camping on the south side of the river: same as the Proposed Plan. |
| **Dolores River Canyons SRMA** | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Continue to manage the Dolores River Canyons area for general recreation use. BLM presently has no recreation management plan in place for the area except for private and commercial boating management.<br><br>The Dolores River and its floodplain is an existing SRMA (Colorado River SRMA). | Same as the Proposed Plan. | Manage the Dolores River Canyons (Map 2-8) as an Undeveloped SRMA (31,661 acres).<br>• Maintain high quality opportunities for non-motorized boating and day hiking or backpacking in a remote setting supported by basic trailheads, trails, and car camping facilities that support primitive, non-motorized use of the canyon system.<br>• Major management actions would include prohibition of motorized and mechanized recreation use within the Dolores River's tributary canyons consistent with the Travel Plan.<br>• No new motorized routes would be considered. | Dolores River Canyons SRMA would not be established. |
| **Boating Management:**<br>Colorado State Line to Bridge Canyon: Continue the existing river management program on the Colorado and Dolores Rivers (24,000 passenger days per year: 30 commercial outfitters) to provide for the safe and enjoyable long-term use of the rivers. | **Boating Management:**<br>Same as the Proposed Plan, except:<br>• Colorado State Line to Bridge Canyon: establish maximum group size of 16 (including guides on commercial trips). | **Boating Management:**<br>Colorado State Line to Bridge Canyon: Manage to provide opportunities for scenic whitewater boating trips. Permits required for private and commercial use. Establish maximum group size of 25 (excluding guides on commercial trips). Do not establish daily launch limits. Permit 14 unallocated commercial outfitters. | **Boating Management:**<br>Dolores River Canyons SRMA would not be established. |
| **Labyrinth Rims/Gemini Bridges SRMA** | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| No specific recreation decisions were made under the Grand RMP for this area. | Same as the Proposed Plan, except: | Manage the Labyrinth Rims/Gemini Bridges area (Map 2-8) as a Destination | Establish Dee Pass SRMA (60,939 acres), consisting of the Dee Pass |

BLM_0009886

**Table 2.1.  MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| BLM manages private boating use in Labyrinth Canyon in conjunction with the Utah Divisions of State Parks and Recreation and Fire, Forestry and State Lands under the terms of a cooperative agreement. The agreement establishes an interagency river permit system and coordinates implementation of common river protection rules including group size and use of fire pans and portable toilets. BLM also issues permits for shoreline use related commercial river trips.<br><br>Lands along the Green River in Labyrinth Canyon were withdrawn from new entry under the mining laws through the Three Rivers Withdrawal.<br><br>Front country type use takes place along SR 313 and the Island in the Sky Road. This highway was designated the Dead Horse Mesa Scenic Byway by the State of Utah in the early 2000s. To manage dispersed camping and protect scenic values, BLM established a 1-mile-wide corridor along SR 313 and the Island in the Sky Entrance Road where camping is limited to designated sites, wood cutting and firewood gathering are prohibited, and portable toilets are required. BLM currently limits camping in the corridor to the Horsethief Campground, the Big Mesa, and Cowboy Camp camping areas. BLM also limits camping and prohibits woodcutting and firewood gathering in a one-mile-wide corridor along the Gemini Bridges Road. Manage the small Cowboy Camp for tent camping and manage the Big Mesa area for group use.<br><br>OHV and mountain bike travel are limited to existing roads and trails in the portion of the area south of the Ten mile Point Road (except for the Bartlett/Tusher Slickrock area which was left open for 2 wheel riding).<br><br>The area around the White Wash Sand Dunes is Open to OHV travel.<br><br>In addition to the Mineral Bottom Takeout, BLM manages several additional facilities in the area including the Mill Canyon Dinosaur Interpretive Trail, the Halfway Stage Station Interpretive Site, and the Copper Ridge Sauropod Trackway Interpretive site. BLM also manages and maintains route markings (with user group assistance) on the Monitor and Merrimac, Seven Mile Rim, Poison Spider Mesa, Golden Spike, Goldbar Rim, Gemini Bridges, Lower Monitor and Merrimac, Bar M, and Klondike Bluffs routes which are used by both motorized and non-motorized visitors. The 3-D, Crystal Geyser, Hellroaring Rim, Secret Spire, and Wipeout Hill routes are authorized for Jeep Safari and other uses.<br><br>**Potential Future Facilities:**<br>N/A | • The White Wash Sand Dunes and surrounding uplands would be managed to restore their ecological and scenic values and provide an opportunity for ecological interpretation and study. Emphasis would be placed upon protection of the cottonwood trees found in the open dune fields, water source protection, stream bank stabilization, and bighorn sheep habitat protection. Motorized travel in the White Wash area (like the rest of the SRMA) would be limited to designated routes.<br>• Close the Bartlett/Tusher/Courthouse/Ten Mile area to camping.<br><br><br>**Potential Future Facilities:**<br>Same as the Proposed Plan, except:<br>• There would be no campground constructed in Bartlett Wash. Camping would not be allowed in Bartlett Wash.<br>• There would be no campground constructed at Courthouse Rock. Camping would not be allowed in the Courthouse Rock area. | SRMA (300,650 acres). General management guidance includes building upon current management as outlined in Alternative A with the following additions:<br>• Continue issuing permits, for both private and commercial users, with common river protection rules for Labyrinth Rims/Gemini Bridges SRMA and consider extending the BLM/State cooperative agreement for management of non-commercial use to include management of commercial river use. If future use levels warrant, relocate the Mineral Bottom Takeout or initiate cooperative site operations with the National Park Service.<br>• Limit camping to designated sites in high-use areas including the Scenic Driving Corridors and all areas east of the Dubinky Well Road as well as along Ten Mile Wash.<br>• Manage backcountry areas to facilitate scenic motorized touring on designated routes with special emphasis upon establishment of low-development, end of route parking areas and route signing.<br>• Improve road to the Mill Canyon Dinosaur Trailhead to accommodate passenger car traffic.<br>• Consider development of an alternative single-track mountain bike route on Poison Spider Mesa across the mesa top to the top of the Portal Trail.<br><br><br>**Potential Future Facilities:**<br>• Bartlett Campground: camping in this area would be restricted to this campground.<br>• Big Mesa Campground: camping in this area would be restricted to this campground.<br>• Blue Hills Road OHV Trailhead.<br>• Courthouse Rock Campground, camping in this area would be restricted to this campground.<br>• Cowboy Camp Campground, camping in this area would be restricted to this campground.<br>• Monitor and Merrimac Bicycle and OHV Trailhead relocation.<br>• White Wash Sand Dunes OHV Parking and Camping Area.<br>• Gemini Bridges Parking Area and Trailhead. | motorized route system and the White Wash open OHV area. This area constitutes a subset of the Labyrinth Rims/Gemini Bridges area.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**Potential Future Facilities:**<br>Same as the Proposed Plan, except:<br>• Bartlett Campground would not be built; dispersed camping would be allowed in Bartlett.<br>• Expand White Wash Sand Dunes OHV Base Area, including campground. |
| **Focus Areas: Scenic Driving Corridors:**<br>N/A | **Focus Areas: Scenic Driving Corridors:**<br>Highway 313 and the Island in the Sky Road (Dead Horse Mesa Utah Scenic Byway): Manage for scenic driving enjoyment. The corridor is defined as having a width of 1 mile from centerline (or to border of adjoining focus area; see Appendix C). | **Focus Areas: Scenic Driving Corridors:**<br>Highway 313 and the Island in the Sky Road (Utah Scenic Byway): Manage for scenic driving enjoyment. The corridor is defined as having a width of 1/2 mile from centerline (or to border of adjoining focus area; see Appendix C). | **Focus Areas: Scenic Driving Corridors:**<br>No scenic driving focus areas would be established. |
| **Focus Areas: Non-mechanized Recreation:** | **Focus Areas: Non-mechanized Recreation:** | **Focus Areas: Non-mechanized Recreation:** | **Focus Areas: Non-mechanized Recreation:** |

BLM_0009887

## Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

| | | | |
|---|---|---|---|
| N/A | ● Goldbar/Corona Arch Hiking Focus Area (4,787 acres) covers the lands below the Golden Spike OHV route inclusive of the Culvert Canyon drainage to the southern rim of Long Canyon. Manage the Corona Arch Trail for hiking only. Develop a hiking loop route in Culvert Canyon from the canyon bottom up to Jeep Arch and back on the western bench of Culvert Canyon. Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) to protect primitive hiking opportunities and scenic values. <br> ● White Wash Sand Dunes Ecological Study and Hiking Focus Area (9,708 acres) would be established. <br> ● Ten Mile Canyon Hiking and Equestrian Focus Area (1,871 acres) inclusive of Ten Mile Wash from Dripping Spring to the Green River with equestrian use limited to the main canyon. <br> ● Spring Canyon Hiking Focus Area (457 acres) would be established upstream from the Spring Canyon Bottom Road. No new motorized routes would be considered. <br> ● Labyrinth Canyon Canoe Focus Area (8,182 acres) inclusive of the rims along the east side of Labyrinth Canyon from Placer Bottom to Canyonlands National Park excluding the Hey Joe Mine OHV and mountain bike route and the route downstream from Spring Canyon. Temporal zoning, permitting and vehicle type restrictions would be used to mitigate user conflicts on the Hey Joe Mine Route. <br> ● Seven Mile Canyons Equestrian Focus Area same as the Proposed Plan. | ● Goldbar/Corona Arch Hiking Focus Area (4,191 acres) covers the lands below the Golden Spike OHV route inclusive of the Culvert Canyon drainage to the northern rim of Long Canyon exclusive of the main stem of the Day Point Road. Manage the Corona Arch Trail for hiking only. Develop a hiking loop route in Culvert Canyon from the canyon bottom up to Jeep Arch and back on the western bench of Culvert Canyon to the canyon to just up canyon from the railroad spur. Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) to protect primitive hiking opportunities and scenic values. No new motorized route would be considered. <br> ● White Wash Sand Dunes Ecological Study and Hiking Focus Area would not be established. <br> ● Ten Mile Canyon Hiking and Equestrian Focus area would not be established. <br> ● Spring Canyon Hiking Focus Area (457 acres) would be established upstream from the Spring Canyon Bottom Road. No new motorized routes would be considered. <br> ● Labyrinth Canyon Canoe Focus Area (7,709 acres) inclusive of the rims along the east side of Labyrinth Canyon from Placer Bottom to Mineral Bottom exclusive of the Hey Joe Mine OHV and mountain bike route. No new motorized routes would be considered. <br> ● Seven Mile Canyons Equestrian Focus Area (1,026 acres) inclusive of the north and south forks of Seven Mile Canyon westward from the junction of the two canyons. Equestrian use in this area would be restricted to private (non-commercial) horse use. No new motorized routes would be considered. | No non-mechanized focus areas would be established. |
| **Focus Areas: Mountain Bike Backcountry Touring:** | **Focus Areas: Mountain Bike Backcountry Touring:** | **Focus Areas: Mountain Bike Backcountry Touring:** | **Focus Areas: Mountain Bike Backcountry Touring:** |
| N/A | ● Klondike Bluffs Mountain Biking Focus Area (14,626 acres) between Arches National Park and U.S. 191. Roads would be restricted to non-motorized access with the exception of Class B roads and the Copper Ridge Jeep Safari Route. Management same as the Proposed Plan (42 miles of road designated for motorized travel; 40 miles of route managed for mechanized use only). <br> ● Bar M Mountain Biking Focus Area (2,904 acres) between Arches National Park, U.S. Highway 191 and the Bar M area state lands, exclusive of motorized access for the Copper Ridge Jeep Safari Route and the 191 rock quarry access road. Convert selected existing routes to mechanized routes. Recommend that the old highway route in Moab Canyon be managed for non-motorized use to facilitate use of the route as part of the 191 bike lane (12 miles of road designated for motorized travel; 10 miles of route managed for mechanized use only). <br> ● Tusher Slickrock Mountain Biking Focus Area would not be established and would not be available for slick rock mountain biking (there are no designated routes in this area). <br> ● Mill Canyon/Upper Courthouse Mountain Biking Focus Area would not be established. Manage the Mill Canyon Dinosaur Trail for hiking only. | ● Klondike Bluffs Mountain Biking Focus Area (14,626 acres) between Arches National Park and U.S. 191. Work with Grand County and SITLA to establish mountain-bike only opportunities in the Klondike area. Manage the Copper Ridge Sauropod Trackway Interpretive Trail for hiking only. <br> ● Bar M Mountain Biking Focus Area (2,904 acres) between Arches National Park, U.S. Highway 191, and the Bar M area state lands, exclusive of motorized access for the Copper Ridge Jeep Safari Route and the 191 rock quarry access road. Convert existing routes to mechanized use and provide for a limited number of new and connecting routes to support use of area as the foundation for the 191 bike lane. Recommend that the old highway route in Moab Canyon be managed for non-motorized use to facilitate use of the route as part of the 191 bike lane. <br> ● Tusher Slickrock Mountain Biking Focus Area (428 acres) on slickrock between Bartlett and Tusher Washes with main access from Bartlett Wash to reduce traffic in Tusher Canyon.  Manage the Tusher Canyon slickrock and Bartlett slickrock areas for mountain bike and hiking use only. [Cross-country mountain biking across slick rock would be allowed throughout this area. | No mountain bike backcountry touring focus areas would be established. |
| | | ● Mill Canyon/Upper Courthouse Mountain Biking Focus Area (5,744 acres) inclusive of areas within the Mill Canyon and upper Courthouse drainages with continued use of the Seven Mile Rim Jeep Safari route for motorized use, with non-motorized trailheads near the Mill Canyon Dinosaur Trail and the Halfway Stage Station. Manage the Mill Canyon Dinosaur Trail for hiking only (35 miles of road designated for motorized use; 23 miles of route managed for mechanized use only). | |
| **Focus Area: Motorized Backcountry Touring:** | **Focus Area: Motorized Backcountry Touring:** | **Focus Area: Motorized Backcountry Touring:** | **Focus Area: Motorized Backcountry Touring:** |

BLM_0009888

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| N/A | Gemini Bridges/Poison Spider Mesa Focus Area would not be established. | Gemini Bridges/Poison Spider Mesa Focus Area (16,299 acres) for multiple use, including full-size OHV, ATV, and motorcycle use with consideration given to managing routes suitable for each vehicle type. Travel would be intensively managed on designated routes only. Close the spur route to Gemini Bridges to facilitate public use and help restore damaged lands along the spur route. Construct a parking area near the bridges. | • No motorized backcountry touring focus areas would be established. |
| **Focus Areas: Specialized Sport Venues (Non-motorized):** | **Focus Areas: Specialized Sport Venues (Non-motorized):** | **Focus Areas: Specialized Sport Venues (Non-motorized):** | **Focus Areas: Specialized Sport Venues (Non-motorized):** |
| N/A | • Mineral Canyon/Horsethief Point Competitive BASE Jumping Focus Area would not be established.<br>• Bartlett Slickrock Freeride Focus Area would not be established. | • Mineral Canyon/Horsethief Point Competitive BASE Jumping Focus Area (762 acres) would be established.<br>• Bartlett Slickrock Freeride Focus Area (166 acres) would be established. No man-made structures would be added to facilitate "stunt riding." | • No specialized sport venues (non-motorized) would be established. |
| **Focus Areas: Specialized Sport Venue (Motorized):** | **Focus Areas: Specialized Sport Venue (Motorized):** | **Focus Areas: Specialized Sport Venue (Motorized):** | **Focus Areas: Specialized Sport Venue (Motorized):** |
| N/A | • Dee Pass Motorized Trail Focus Area would not be established.<br>• Airport Hills Motocross Focus Area would not be established. | • Dee Pass Motorized Trail Focus Area (35,290 acres) for motorcycle and ATV use. This is the area for competitive motorized events. Competitive routes within this area would be identified based on site-specific NEPA analysis. All routes designated for motorized use in the accompanying Travel Plan would remain open while Section 106 cultural resource inventories are conducted. If these inventories indicate the presence of eligible sites within the travel corridor, the route would be altered or closed. All new routes would require Section 106 cultural resource inventory prior to designation. Establish a managed OHV route system with provision for ongoing management of existing single-track routes to maintain their single-track character.<br>• Airport Hills Motocross Focus Area (285 acres): Manage the focus area for motocross use in partnership with local government under the Recreation and Public Purposes Act. A patent would be issued to local government. | • Dee Pass Motorized Trail Focus Area (57,875 acres) for motorcycle and ATV use. This is the area for competitive motorized events. Competitive routes within this area would be identified based on site-specific NEPA analysis. All routes designated for motorized use in the accompanying Travel Plan would remain open while Section 106 cultural resource inventories are conducted. If these inventories indicate the present of eligible sites, the route would be altered or closed. All new routes would require Section 106 cultural resource inventory prior to designation. Establish a managed OHV route system with provision for on-going management of existing single-track routes to maintain their single-track character. |
| **Focus Areas: Managed Open OHV Areas (cross country travel allowed):** | **Focus Areas: Managed Open OHV Areas (cross country travel allowed):** | **Focus Areas: Managed Open OHV area (cross country travel allowed):** | **Focus Areas: Managed Open OHV Areas (cross country travel allowed):** |
| N/A | • No open areas for OHV use would be designated on public lands in the MPA.<br>• Open OHV use areas would not be considered for lease or patent under the Recreation and Public Purposes Act. | • White Wash Sand Dunes Open OHV Focus Area, (1,866 acres) encompassing the area round the dunes themselves. Manage the central portion of the White Wash Sand Dunes for motorized sand play with exception of the dune field cottonwood trees and White Wash water sources which would be closed to motorized travel and fenced.<br>• Limit camping use in the White Wash Sand Dunes area to designated sites and establish basic camping facilities on the bench on the north side of White Wash.<br>• Implement a fee system, under the guidelines of the Federal Land Recreation Enhancement Act, to help fund cost of intensive management of the White Wash Sand Dunes area. | • Greater White Wash Sand Dunes Open OHV Focus Area (3,064 acres) bounded by the Duma Point Road, the Red Wash/Ruby Ranch Road, and portion of the Crystal Geyser Jeep route between the Ruby Ranch Road and the Duma Point Road. Manage the entire Greater White Wash Sand Dune area as Open to OHV use for motorized sand play except for the dune field cottonwood trees and White Wash water sources which would be closed to motorized travel and fenced.<br>• Limit camping use in the White Wash Sand Dunes area to designated sites and establish basic camping facilities on the bench on the north side of White Wash.<br>• Implement a fee system to help fund cost of intensive management of the White Wash Sand Dunes area. |

| Lower Gray Canyon SRMA | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Continue existing management as described in the 1979 Desolation-Gray Canyons Management Plan prepared by the BLM Price Field Office. | Same as the Proposed Plan. | • Manage the Lower Gray Canyon SRMA (3,759 acres within the MPA; see Map 2-8) as a Destination SRMA in coordination with the Price Field Office.<br>• Manage river recreation in accordance with the Desolation-Gray Canyons Management Plan.<br>• Manage the existing riverside and the parallel bench route loop trails from Nefertiti Rapid to Rattlesnake Canyon for hiking and equestrian use.<br>• Vehicle camping limited to designated sites. | Lower Gray Canyon SRMA would not be established. |

BLM_0009889

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| Sand Flats SRMA | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| The Sand Flats RAMP was approved in August of 1994. Management of the Sand Flats Recreation Area is also supported by the June 1994 Cooperative Agreement with Grand County, which authorizes the county to collect fees for the benefit of the recreation area and participate in the operational management of the area to help implement the recreation area management plan.<br><br>The plan includes:<br>1. Acquisition of State lands through exchange.<br>2. OHV travel limited to designated roads and trails.<br>3. Provision for entrance and use fees.<br>4. Development of campgrounds.<br>5. Potential development of a drinking water source.<br>6. Provision for parking lots at the Slickrock and Little Spring trailheads.<br>7. Installation of toilets.<br>8. Development of an entrance station.<br>9. Provision for visitor protection.<br>10. Information and various services.<br>11. Limit camping to designated sites.<br>12. Limit OHV and mountain bike travel to designated routes.<br>13. Prohibit wood collecting and gathering. | Same as the Proposed Plan, except:<br>• Close the Moab Slickrock Bike Trail to all motorized vehicles. | Same as Alternative A, plus:<br>• Manage the Sand Flats Area (Map 2-8) as a Destination SRMA (6,246 acres). Guidance for management is included in the Sand Flats RAMP.<br>• Close the Moab Slickrock Bike Trail to four-wheeled vehicles and ATV use for safety purposes.<br>• The Slickrock Bike Trail would be open to motorcycles and mountain bikes only.<br>• Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) to protect recreation and scenic values. | Same as the Proposed Plan, except:<br>• Establish a Slickrock mountain bike free-ride area.<br>• Apply a controlled surface use stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) to protect scenic values (VRM Class II). |

| South Moab SRMA | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Continue to manage the Mill Creek Power Dam hiking trailhead, the Ken's Lake Recreation Site, the Hidden Valley hiking trailhead and the Blue Hill multi-use trailhead and undeveloped camping area as recreation sites. Continue to manage the Mill Creek Canyon hiking trails, the Ken's Lake hiking trail system, the Hidden Valley Hiking trail, the Steelbender/Flat Pass OHV/mountain bike route, the Behind the Rocks OHV route, the Strike Ravine OHV route, and the Kane Creek Canyon Rim OHV/mountain bike route as recreation routes.<br>Continue to limit camping to designated sites and prohibit wood gathering and cutting along the Black Ridge Road, the Pack Creek Road, the LaSal Mountain Loop Road and the Kane Creek Canyon Rim Road out to the Picture Frame Arch area. Prohibit camping on the west side of Spanish Valley, and in Mill Creek. | Same as the Proposed Plan. | Manage the South Moab SRMA (Map 2-8) as a Destination SRMA (63,999 acres).<br>• Same as Alternative A, except provide additional emphasis upon development of non-motorized trails through agreements with neighboring land owners through preparation of management guidance covering the Ken's Lake area.<br>• Work with Grand and San Juan counties to establish the New Spanish Trail Bicycle Lane to provide safe bicycle access from Canyonlands Field to the Pack Creek Picnic Area.<br>• Work with Moab City and Grand County to extend the Mill Creek Parkway to the Power Dam trailhead to provide safe access for cyclists and hikers.<br>• Formalize and continue the existing partnership with the water district to share management expenses at Ken's Lake. | South Moab would not be established as an SRMA. |
| Continue to manage Ken's Lake as a developed recreation site in partnership with the holders of the ROW for Ken's Lake (Spanish Valley Water and Sewer District).<br>Continue to manage the Mill Creek Canyon planning area in accordance with the approved interdisciplinary Mill Creek Canyon Management Plan. | | • Manage the Mill Creek Canyon planning area in accordance with the approved interdisciplinary management plan (as in Alternative A).<br>• Work with Grand County, SITLA, and private land owners to establish the "Power line" trail along the west side of Moab and Spanish Valleys from Kane Creek Road near the river portal south via the Hidden Valley Trailhead to the southern end of Behind the Rocks area.<br>• Work with San Juan and Grand Counties, SITLA, and private land owners to establish the Red Rock Horse Trail along the east side of Spanish Valley via Ken's Lake from the Johnson's Up-on-Top Road to the Loop Road/Pack Creek junction area.<br>• Work with the Backcountry Horsemen, SITLA and San Juan County to establish *equestrian riding loop routes south from the Ken's Lake Trailhead.* | |

BLM_0009890

## Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

| Focus Areas: Scenic Driving Corridors: | Focus Areas: Scenic Driving Corridors: | Focus Areas: Scenic Driving Corridors: | Focus Areas: Scenic Driving Corridors: |
|---|---|---|---|
| N/A | LaSal Mountain Loop Road Scenic Backway: Manage for scenic driving enjoyment. The corridor is defined as: having a width of 1 mile from centerline (or to border of adjoining focus area; see Appendix C). | LaSal Mountain Loop Road Scenic Backway. Manage for scenic driving enjoyment. The corridor is defined as: having a width of 1/2 mile from centerline (or to border of adjoining focus area) (see Appendix C). | South Moab would not be established as an SRMA. |
| **Focus Areas: Non-mechanized Recreation:** | **Focus Areas: Non-mechanized Recreation:** | **Focus Areas: Non-mechanized Recreation:** | **Focus Areas: Non-mechanized Recreation:** |
| N/A | • Mill Creek Canyon Hiking Focus Area: Same as the Proposed Plan, except motorized routes identified in the Travel Plan for this alternative. Temporal zoning, permitting and vehicle type restrictions would be used to mitigate user conflicts on the Steel Bender Routes.<br>• Behind the Rocks Hiking Focus Area: Same as the Proposed Plan. Temporal zoning, permitting, and vehicle type restrictions would be used to mitigate user conflicts on the Pritchett Canyon and Moab Rims. Hunter Canyon Rim Road at the end of the Jeep Safari route is available for mountain bike travel.<br>• Manage Hidden Valley Trail as non-mechanized only. | • Mill Creek Canyon Hiking Focus Area (16,950 acres) inclusive of the north and south forks of Mill Creek, Rill Creek, and Burkholder Draw south to the LaSal Mountain Loop Road with motorized use limited to the Steelbender OHV route and routes identified in the Travel Plan for this alternative. Emphasize management of the core area of Mill Creek to provide primitive hiking opportunities. Commercial equestrian use of Mill Creek Canyon and its tributaries would be prohibited except for use along the Steelbender/Flat Pass OHV/mountain bike route. No new motorized routes would be considered.<br>• Behind the Rocks Hiking Focus Area (17,536 acres) inclusive of the area currently closed to motorized use in the 1985 RMP and the Hunter Canyon area between Pritchett Canyon and the eastern rim of Kane Creek Canyon exclusive of the Pritchett Canyon and Behind the Rocks OHV route. Manage the Hunter Canyon trail for hiking only. Emphasize the management of the core area of Behind the Rocks to provide primitive hiking opportunities. No new motorized routes would be considered. | South Moab would not be established as an SRMA. |
| **Focus Area: Mountain Bike Backcountry Touring:** | **Focus Area: Mountain Bike Backcountry Touring:** | **Focus Area: Mountain Bike Backcountry Touring:** | **Focus Area: Mountain Bike Backcountry Touring:** |
| N/A | Same as the Proposed Plan | Upper Spanish Valley Mountain Biking Focus Area (2,255 acres; Mud Spring Area) for development of a beginner to intermediate skill level mountain bike trail system through conversion of existing routes and development of new routes. Work with SITLA to expand route system on adjacent state lands. | South Moab would not be established as an SRMA. |
| **Focus Area: Specialized Sport Venue (Non-motorized):** | **Focus Area: Specialized Sport Venue (Non-motorized):** | **Focus Area: Specialized Sport Venue (Non-motorized):** | **Focus Area: Specialized Sport Venue (Non-motorized):** |
| N/A | Same as the Proposed Plan | 24 Hours of Moab Focus Area (2,905 acres) would be established to facilitate mountain bike speed-related events. | South Moab would not be established as an SRMA. |
| **Focus Area: Specialized Sport Venue (Motorized):** | **Focus Area: Specialized Sport Venue (Motorized):** | **Focus Area: Specialized Sport Venue (Motorized):** | **Focus Area: Specialized Sport Venue (Motorized):** |
| N/A | Potato Salad Hill spur route would be closed to motorized travel. | Potato Salad Hill Climbing Focus Area (41 acres) would be established within the boundary of the fenced areas emphasizing hill climbing events. Parking limitations would be established to limit vehicle group size.* | South Moab would not be established as an SRMA. |

| Two Rivers SRMA | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| The 1985 RMP provided for continuation of the river management program, which was initiated in early 1970s in response to increased demand for recreational boating. Existing management of the Colorado River focuses upon providing facilities and management to support and regulate commercial and private river use of the Colorado and Lower Dolores Rivers. Management activities are described in the annual Colorado and Dolores Rivers operating plan. | Same as the Proposed Plan. | Manage the Two Rivers SRMA (29,839 acres) as a Destination SRMA (Map 2-8) with the objective of continuing to provide distinct, high quality opportunities for recreational boating and camping, and to protect the outstanding resource values. Use launch systems and campsite assignments to reduce inter-party contacts. | Manage the Two Rivers SRMA (14,056 acres) as a Destination SRMA with the objective of continuing to provide distinct, high quality opportunities for recreational boating and camping. Use launch systems and campsite assignments to reduce inter-party contacts. |
| **Boating Management:** | **Boating Management:** | **Boating Management:** | **Boating Management:** |
| Continue the existing river management programs on the Colorado and Dolores Rivers (24,000 passenger days per year; 30 commercial outfitters) to provide for the safe and enjoyable long-term use of the rivers. | Same as the Proposed Plan except:<br>• State Line to Westwater Ranger Station: Seek to manage for moderate use flat water boating in conjunction with the Ruby/Horsethief Canyons section in Colorado.<br>• Westwater Canyon: Manage to provide an opportunity for whitewater boating in a highly primitive and very remote setting. Establish maximum group size of 16 (including guides on commercial trips). Establish daily launch limit of 48 people for each sector. | • State Line to Westwater Ranger Station: Manage for relatively high use flat water boating in conjunction with the Ruby/Horsethief Canyons section in Colorado. Co-administer a private boating or parking permit system and user limitations and fees in conjunction with Colorado BLM as a means of providing for adequate take-out.<br>• Westwater Canyon: Manage to provide an opportunity for whitewater boating in a primitive and remote setting. Permits required for private and commercial use. Distribute potential use levels equally from May 1 to | Same as the Proposed Plan, except:<br>• State Line to Westwater Ranger Station: Seek to manage for of high use flat water boating in conjunction with the Ruby/Horsethief Canyons section in Colorado.<br>• Westwater Canyon: Manage to provide an opportunity for whitewater boating in a semi-primitive (social only) and remote setting. Establish maximum group size of 32 (including guides on commercial trips). Establish daily launch limit of 128 people for each sector. |

BLM_0009891

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| | • Cisco Landing to Dewey Bridge: For private use, no restrictions on amount of private use would be established unless warranted by future use levels. Permit 20 unallocated and 2 allocated (100 user days each) commercial permits. Establish additional restrictions on amount of commercial use if conditions warrant based on desired resource objectives.<br>• Dolores River from Bridge Canyon to its confluence with the Colorado River: Establish maximum group size of 16 (including guides on commercial trips). | September 30 (allocation season) between private and commercial sectors (including guides). Establish maximum private group size of 25 people and a daily launch limit of 75 people. For commercial use, establish a maximum trip size of 25 passengers, plus one crew member per passenger carrying craft, plus two additional crew. Establish a commercial daily launch limit of 75 passengers. Permit 18 commercial outfitters.<br>• Cisco Landing to Dewey Bridge: Manage to provide an opportunity for scenic flat water boating or as an extension of Westwater Canyon trips. For private use, no restrictions on amount of use would be established. Permit 22 unallocated commercial permits. No further restrictions on amount of commercial use would be established. Manage the Dewey Bridge Recreation Site under the Colorado Riverway RAMP.<br>• Dolores River from Bridge Canyon to its confluence with the Colorado River: Manage to provide opportunity for scenic whitewater boating trips. Permits required for private and commercial use. Establish maximum group size of 25 (excluding guides on commercial trips). Do not establish daily launch limits. Permit 14 unallocated commercial outfitters. | • Cisco Landing to Dewey Bridge: Permit 25 unallocated commercial permits.<br>• Dolores River from Colorado State Line to its confluence with the Colorado River: Establish maximum group size of 32 (excluding guides on commercial trips. |
| **Potential Future Facilities:**<br>N/A | **Potential Future Facilities:**<br>Same as the Proposed Plan, except do not seek to develop a take-out facility separate from the Westwater Ranger Station launch ramp. | **Potential Future Facilities:**<br>Acquire additional lands at the Westwater Ranger Station to include additional camping, parking and launch facilities. Seek to develop a take-out facility separate from the Westwater Ranger Station launch ramp to reduce congestion at the ranger station. Seek opportunities to expand legal and physical access to facilitate camping at the Ranger Station. | **Potential Future Facilities:**<br>Same as the Proposed Plan. |
| **Focus Area: Non-mechanized Recreation:**<br>N/A | **Focus Area: Non-mechanized Recreation:**<br>Same as the Proposed Plan. | **Focus Area: Non-mechanized Recreation:**<br>• Establish the Westwater Canyon River Use and Hiking Focus Area (23,479 acres) inclusive of Westwater Canyon along the Colorado River between Westwater Ranch and Rose Ranch and the surrounding uplands.<br>• New motorized routes would not be considered. | **Focus Area: Non-mechanized Recreation:**<br>The focus areas would not be established. |

| Utah Rims SRMA | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Continue to manage the Utah Rims area for general recreation use. BLM presently has a limited management program in place for the area included in the proposed Utah Rims SRMA.<br><br>Manage the Kokopelli's Trail for recreation use.<br><br>Manage Bitter Creek Campsite for camping.<br><br>Continue limiting travel to existing routes. | Same as the Proposed Plan, except:<br>• No new recreational routes would be established. | Manage the Utah Rims area (Map 2-8) as a Community SRMA (15,424 acres) to provide sustainable opportunities for motorized, mechanized and non-motorized route related recreation while protecting and maintaining resource values including range, wildlife habitat, scenic, cultural, recreational, and riparian values in current or improved condition. Work with Colorado BLM to coordinate management of the Utah Rims and Rabbit Valley Colorado areas.<br><br>Management actions would include:<br>1. Limiting motorized and mechanized travel to a designated road and route system, including where feasible, the establishment and management of a network of single-track routes.<br>2. Acquisition of public access across non-Federal lands for the route system.<br>3. Development of a staging area.<br>4. Potential separation of types of single-track route use by time period.<br>5. Limited provision of camping facilities.<br>6. Prohibition of competitive, motorized events on the single-track route system to maintain its single-track nature.<br>Add single-track routes to the route system on a case-by-case basis pending resolution of resource concerns. | Utah Rims SRMA would not be established. |

BLM_0009892

### Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

| Moab Extensive Recreation Management Area (ERMA) Establishment |
|---|

**Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**

- Manage all lands within the MPA not within an SRMA as the Moab Extensive Recreation Management Area (ERMA; see Maps 2-8-A through 2-8-D and Appendix F).
- ERMA lands may be designated as SRMAs in the future based on intensity of use and would be analyzed through the plan amendment process.
- Minimal facilities may be constructed in the ERMA as needed to insure visitor health and safety, reduce user conflict, and protect resources.
- Provide general recreation management guidance and subsequent implementation of management actions for activity plan level actions for the Moab ERMA through development of a Recreation Area Management Plan (RAMP). Address both site-related issues (development and management in response to user demand and changing conditions) and backcountry management issues (the retention of backcountry characteristics, e.g., low level of development, relative lack of crowding, and feeling of remoteness).
- Amend the RMP, as necessary, for RMP level recreation and non-recreation actions proposed through the RAMP developed subsequent to RMP approval.
- Manage OHV travel as limited to designated routes or closed, depending on the specific area (see Travel Management section, beginning on page 2-47).
- Monitor recreation activity in the Moab ERMA to maintain recreation opportunities and protect resource values.

| Moab ERMA Management Guidance |
|---|

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Continue making improvements to sites and areas as necessary and supported by activity and project level planning to balance demand for recreation opportunities and protection of the recreation resource base.<br><br>Continue to manage the Utah portion of the Kokopelli's Trail as a multi-day mountain bike and vehicle route (in part) with associated camping areas. | Same as the Proposed Plan, except:<br><br>• Upper Fisher Mesa would not be managed to emphasize mountain biking use. | • Continue making improvements to sites and areas as necessary and supported by activity and project level planning to balance demand for recreation opportunities and protection of the recreation resource base.<br>• Continue to manage the Utah portion of the Kokopelli's Trail as a multi-day mountain bike and vehicle route (in part) with associated camping areas.<br>• Develop basic camping and trailhead facilities to serve the Lost Spring Canyon area should use levels and impacts warrant.<br>• Construct information boards at the main exits along I-70 to inform visitors about recreation opportunities, travel management, low impact recreation techniques, and visitor safety issues.<br>• Upper Fisher Mesa (1,365 acres) would be managed to emphasize mountain biking. BLM would convert existing roads and provide new connecting routes for bicycle use in conjunction with the existing bike route within the Manti-LaSal National Forest. Motorized access would be retained along the main existing Fisher Mesa access road.<br>• Manage the Bookcliffs area (335,457 acres) for non-mechanized recreation, especially equestrian use, hiking, backpacking and big game hunting. It would be managed for low frequency of visitor interaction by not establishing new motorized or mechanized recreation routes, no commercial motorized permits would be issued, and competitive events would not be allowed.<br>• Manage the Sego Canyon Rock Art Site as a day use recreation area. Consider acquisition of the adjacent private rock art area north of the interpretive site to expand interpretive opportunities. | Same as the Proposed Plan, except:<br><br>• Manage the Bookcliffs area (141,679 acres) for non-mechanized recreation, especially equestrian use, hiking, backpacking and big game hunting. It would be managed for low frequency of visitor interaction by not establishing new motorized or mechanized recreation routes, no commercial motorized permits would be issued, and competitive events would not be allowed. |

| General Policy for Issuance and Management of Special Recreation Permits (SRPs) |
|---|

**Management Common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

- SRPs would be issued as a discretionary action as a means to: help meet management objectives, provide opportunities for economic activity, facilitate recreational use of the public lands, control visitor use, protect recreational and natural resources, and provide for the health and safety of visitors. Cost recovery procedures for issuing SRPs would be applied where appropriate.
- Priority for authorization of new SRPs for events would be given to applicants proposing uses that: do not duplicate existing events; take place outside of March, April, May, and October; make use of less-crowded weekdays; utilize facilities off public lands for overnight accommodation of guests; display and communicate the Canyon Country Minimum Impact Practices; and focus visitation on sites and areas capable of withstanding repeated use.
- All SRPs would contain standard stipulations appropriate for the type of activity and may include additional stipulations necessary to protect lands or resources, reduce user conflicts, or minimize health and safety concerns.
- There would be no competitive mechanized or motorized events in Wilderness Study Areas while these areas are managed under the IMP.

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Continue to issue and manage special recreation permits (e.g., four-wheel drive vehicle tours, horseback trips, bear hunting camps, survival school) to enhance outdoor recreational opportunities and provide business opportunities for | Same as the Proposed Plan, except:<br><br>• Increased emphasis would be placed upon mitigating the impacts of new | • Issue and manage special recreation permits for a wide variety of uses to enhance outdoor recreational opportunities, provide opportunities for private enterprise, manage user-group interaction, and limit the impacts of | Same as the Proposed Plan, except that increased emphasis would be placed upon realizing positive economic and community benefits through SRP management. |

BLM_0009893

### Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

| | | | |
|---|---|---|---|
| private enterprise.<br>Continue to permit competitive and noncompetitive OHV events. | uses in support of conservation of natural and cultural resource values.<br>• Organized group permits required for groups with 15 or more vehicles (one driver/vehicle.) | such uses upon natural and cultural resources.<br>• Organized group permits required for groups with 25 or more vehicles (one driver/vehicle.) | • Organized group permits required for groups with 50 or more vehicles (one driver/vehicle.) |

### RIPARIAN

**Goals and Objectives:**
- Manage riparian areas for properly functioning condition (PFC) and ensure stream channel morphology and functions are appropriate for local soil type, climate, and landform.
- Avoid or minimize the disturbance, loss, or degradation of riparian, wetland, and associated floodplains; preserve and enhance natural and beneficial values; and provide for fish, wildlife and special status species habitats.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**
- Manage riparian resources for PFC, which is described as the presence of adequate vegetation, landforms, or large woody debris, in accordance with the Utah Standards for Public Rangeland Health and Guidelines for Recreation Management for BLM Lands in Utah and with the Grazing Guidelines for Grazing Management.
- Retain the Between the Creeks, North Sand Flats, and South Sand Flats Allotments as not available for grazing to benefit riparian resources. These allotments include the following streams: Negro Bill Canyon, portions of Mill Creek, and Rill Creek.
- Mitigation to reduce impacts to floodplains and riparian areas include (from Standards for Public Land Health and Guidelines for Recreation Management for BLM Lands in Utah and BLM Riparian Manual 1737):
  1. Where feasible and consistent with user safety, developed travel routes would be located/relocated away from sensitive riparian/wetland areas.
  2. Camping in riparian areas would be avoided and must be managed, monitored, and modified as conditions dictate to reduce vegetation disturbance and sedimentation.
  3. Stream crossings would be limited in number dictated by the topography, geology, and soil type. Design any necessary stream crossings to minimize sedimentation, soil erosion and compaction (minimize longitudinal routes along stream banks, design crossings perpendicular to the stream).
  4. Where necessary, control recreational use by changing location or kind of activity, season, intensity, distribution and/or duration.
  5. Grazing actions to meet riparian objectives include vegetation use limits, fencing, herding, change of livestock class, temporary closures, change of season, and/or alternate development or relocation of water sources.
  6. Any water diversions from riparian areas by BLM or non-BLM entities would be designed and constructed to protect ecological processes and functions.
  7. Implement weed management stipulations and education to reduce spread of noxious weeds along stream corridors.
  8. To the extent possible, mineral removal and lease development (including placer mining) must be located away from water's edge and outside of riparian/wetland zones.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**
- Limit activities in riparian areas, as necessary, to achieve and maintain PFC.
- Grazing actions to meet riparian objectives can include fencing, herding, change of livestock class, temporary closures, and/or change of livestock season of use.
- Preclude surface-disturbing activities within 100-year floodplains, 100 m of riparian areas, public water reserves, and 100 m of springs.
- Prioritize restoration activities in riparian systems that are Functioning at Risk or Non-functioning.
- Continue to apply integrated species management to accomplish riparian restoration through biological, chemical, mechanical, and manual methods (e.g., tamarisk control, willow plantings).
- Acquire riparian lands and water resources (from willing sellers) to preserve and maintain riparian habitat and instream flow.
- Do not dispose of riparian or wetland resources unless resource loss is mitigated.
- Develop watershed management plans for impaired systems as identified in current TMDL reports (e.g., Onion Creek, Mill Creek, and Castle Creek).
- Close riparian areas to woodcutting, except where permitted for traditional cultural practices identified for Native Americans or for restoration to benefit riparian values.
- Establish Lower South Fork of Seven Mile Canyon as a Riparian/Wetland Demonstration Area for the improvement and restoration of riparian, wetland and wildlife resources.
- Grazing would not be authorized on portions of the following streams (listed with affected allotments): the Colorado River from Dewey Bridge to Hittle Bottom (Professor Valley), and Lower Kane Creek (Kane Creek Springs).
- Management strategies would be implemented to restore degraded riparian communities, protect natural flow requirements, protect water quality, and manage for year-round flow.

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| **Grazing Actions:**<br>• Retain the Between the Creeks, North Sand Flats, South Sand Flats, Spring Creek, Castle Valley, Pear Park, Bogart, Cottonwood and Diamond Allotments as not available to grazing to benefit riparian resources.<br>• Maintain the reduction of AUMs in the Cisco Allotment (1,819 AUMs allocated to livestock). | **Grazing Actions:**<br>• Evaluate non-functioning and functioning at risk riparian areas using Standards for Rangeland Health and Guidelines for Livestock Grazing Management to determine if exclusion from grazing would improve riparian functioning condition.<br>• The following riparian areas would be given priority for evaluation: Lower Gray Canyon of the Green River from Rattlesnake Canyon to Swasey's Beach, Ten Mile from Dripping Spring to the Green River, Mill Creek, Seven Mile Canyon, East Coyote, Kane Springs, and Hatch Wash (totaling 4,673 acres).<br>• BLM would be required to build and maintain fences and provide access to water in Seven Mile Wash, and East Coyote wetland areas.<br>• Cottonwood, Bogart and Diamond Allotments (which include Cottonwood and Diamond Canyons) would continue to not be available | **Grazing Actions:**<br>• Evaluate non-functioning and functioning at risk riparian areas using Standards for Rangeland Health and Guidelines for Livestock Grazing Management to determine if restriction from grazing would improve riparian functioning condition. The following riparian areas would be given priority for evaluation: Ten Mile from Dripping Spring to the Green River, Mill Creek, Seven Mile Canyon, and East Coyote (totaling 1,420 acres).<br>• Cottonwood, Bogart, Pear Park and Diamond Allotments (which include Cottonwood and Diamond Canyons) would continue to be not available to grazing to benefit riparian resources. Castle Valley would also not be available for grazing. Spring Creek would be available for grazing. | **Grazing Actions:**<br>• Grazing management in riparian areas would be identical as described in Alternative A, except that Spring Creek, Pear Park, Castle Valley, Cottonwood, Diamond and Bogart Allotments would be available for grazing. |

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| | to grazing to benefit riparian resources. Castle Valley, Spring Creek and Pear Park would also be not available for grazing. | | |
| **Season-of-Use:**<br>N/A | **Season-of-Use:**<br>Season of use adjustments would be made on a case-by-case basis to achieve PFC. | **Season-of-Use:**<br>Season of use adjustments would be made on a case-by-case basis to achieve PFC. | **Season-of-Use:**<br>Season of use adjustments would be made on a case-by-case basis to achieve PFC. |
| **Watershed Management Plans:**<br>Not specified. | **Watershed Management Plans:**<br>Prioritize development and implementation of the Watershed Management Plans and riparian studies for the following areas: Mill Creek (including North Fork, Rill, and Burkholder), Ten Mile Wash, Kane Springs, White Wash, Bartlett Wash, Tusher Wash, Mill Canyon, Courthouse Wash, Professor Creek, Negro Bill Canyon, Cottonwood/Diamond, Spring Canyon, Red Wash, Green River, Colorado River, Onion Creek and Westwater Creek. | **Watershed Management Plans:**<br>Prioritize development and implementation of the Watershed Management Plans and riparian studies for the following areas: Ten Mile Wash, Kane Springs, Bartlett Wash, Tusher Wash, Mill Canyon, Courthouse Wash, Cottonwood-Diamond, and Onion Creek. | **Watershed Management Plans:**<br>Do not prioritize Watershed Management Plans. |

## SOIL AND WATER

**Goals and Objectives:**

- Manage watersheds to enhance ecosystem health and provide for public uses.
- Maintain and improve existing water quality by ensuring that all authorized uses on public lands comply with State water quality standards and with the Colorado River Basin Salinity Control Act.
- Manage watersheds to maintain or improve soil quality and long-term productivity.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

- Comply with all State, Federal and local laws to protect municipal watersheds (Thompson, Moab, and Castle Valley), and watersheds of any public or private water supply such as Windwhistle Campground, Westwater Ranger Station, La Sal Creek, and Browns Hole.
- Coordinate with Utah Division of Oil, Gas, and Mining to remediate existing Abandoned Mine Lands sites.
- Comply with Floodplain Executive Order 11988.
- BLM would work with partners to implement Best Management Practices (BMPs) and continue BLM's cooperative work with the Utah Divisions of Water Rights and Water Quality in accordance with the administrative memorandum of understanding (MOU) and the cooperative agreement addressing water quality monitoring.

**Management Common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

- Allow no surface occupancy and preclude surface-disturbing activities (see Appendix C) within 100-year floodplains, within 100 m of a natural spring, or within public water reserves.
- In cooperation with Grand and San Juan Counties, develop BMPs for road maintenance and construction in high risk areas (e.g., floodplains, riparian zones, and areas with sensitive soils).
- Continue management of the Mill Creek planning area in accordance with the Mill Creek Management Plan (2001).
- Develop watershed management plans for municipal watersheds to ensure water sources are protected adequately. Monitor municipal water quality/watershed conditions.
- To protect sensitive soils on slopes, apply a timing limitation stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) prohibiting surface-disturbing activities on slopes in the Bookcliffs (see Map 2-12) greater than 30% from November 1 to April 30. This restriction includes road construction and traffic on existing roads associated with initial drilling operations. In addition, apply a controlled surface use stipulation for oil and gas and other surface-disturbing activities (see Appendix C) on slopes greater than 30% throughout the MPA.
- Follow Total Maximum Daily Load (TMDL) recommendations on 303(d) listed streams, currently Mill, Castle, and Onion Creeks.
- Minimize surface disturbance in areas identified as having "sensitive soils" (see Chapter 3, Soil and Water) unless long-term impacts can be mitigated.
- Maintain vegetation based on desired future condition to provide adequate ground cover to prevent accelerated erosion in wind erodible soils.
- Apply environmental BMPs to all oil and gas authorizations in accordance to WO IM 2007-021 and the most current version of the "Goldbook."
- Develop BMPs to address health and safety concerns associated with blowing dust along U.S. 191 and I-70.
- Maintain or improve soil quality and soil productivity through the implementation of Standards for Rangeland Health and other soil protection measures.
- Manage uses to minimize and mitigate damage to soils.
- Maintain and/or restore overall watershed health and reduce erosion, stream sedimentation, and salinization of water.
- Coordinate with Grand Water and Sewer Service Agency to ensure required minimum instream flow of 3 cfs in Mill Creek below the Sheley diversion.
- Implement portions of Greater Sagers Wash Watershed Management Plan that pertain to surface disturbance.
- No additional OHV routes would be allowed in saline soils other than those already designated in the Travel Plan accompanying this RMP (see Appendix G). An exception would be considered on a case-by-case basis for proposed routes in the Dee Pass Motorized Focus Area and in the Utah Rim SRMA. Exceptions could also be considered on a case-by-case basis outside these two areas if potential impacts could be mitigated and if the action would benefit other natural and cultural resources.
- Develop BMPs for activities on saline and other sensitive soils.
- Specific recommendations regarding surface and subsurface pipeline crossings found in Guidance for Pipeline Crossings (see Appendix H) would be implemented to prevent breakage and subsequent contamination.
- Implement guidelines from Technical Reference 1730-2, where feasible, to protect or restore the functions of biological soil crusts.
- Manage public lands in a manner consistent with the Colorado River Salinity Control Program, implementing BMPs and watershed restoration projects to reduce salinity contributions to the Colorado River system.

BLM_0009895

## Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| **Aquifers/Watersheds:**<br>The Castle Valley aquifer was not addressed.<br>The Mill Creek-Spanish Valley aquifer was not addressed. | **Aquifers/Watersheds:**<br>Close the Castle Valley watershed to oil and gas leasing and other surface-disturbing activities to protect the Castle Valley sole source, unconfined, surficial aquifer.<br>Close the Mill Creek-Spanish Valley watershed to oil and gas leasing and other surface-disturbing activities to protect the aquifer for the Moab area. | **Aquifers/Watersheds:**<br>Apply a no surface occupancy stipulation to oil and gas leasing and preclude other surface-disturbing activities in the Castle Valley watershed in order to protect the sole source, unconfined, surficial aquifer.<br>Apply a no surface occupancy stipulation to oil and gas leasing and preclude other surface-disturbing activities in the Mill Creek-Spanish Valley watershed in order to protect the aquifer for the Moab area. | **Aquifers/Watersheds:**<br>Do not apply a stipulation to protect the Castle Valley aquifer.<br>Do not apply a stipulation to protect the Mill Creek-Spanish Valley aquifer. |
| **Saline Soils in Mancos Shale:**<br>Apply a timing limitation on 313,800 acres of Mancos Shale prohibiting surface-disturbing activities from November 1 to April 30. | **Saline Soils in Mancos Shale:**<br>To minimize watershed damage on saline soils in the Mancos Shale, apply a timing limitation stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) prohibiting surface-disturbing activities on 330,142 acres of moderately to highly saline soils in the Mancos Shale (see Map 2-13) from December 1 to May 31. This restriction includes road construction and traffic on existing roads associated with drilling operations. | **Saline Soils in Mancos Shale:**<br>Same as Alternative B. | **Saline Soils in Mancos Shale:**<br>Do not apply a timing limitation to saline soils in the Mancos Shale. |
| **Grazing:**<br>Manipulate livestock grazing on portions of ten allotments to lessen impacts on saline soils and reduce salinity in the Colorado River Drainage. | **Grazing:**<br>Use Standards for Rangeland Health and Guidelines for Grazing Management to consider adjusting season of use on allotments with saline soils to minimize soils compaction. | **Grazing:**<br>Use grazing systems and develop AMPs to minimize impacts to saline soils. | **Grazing:**<br>Same as Alternative A. |
| **Watershed Management Plans:**<br>Not specified. | **Watershed Management Plans:**<br>Prioritize development and implementation of the Watershed Management Plans for the following areas: Mill Creek (including North Fork, Rill, and Burkholder), Ten Mile Wash, Kane Springs, White Wash, Bartlett Wash, Tusher Wash, Mill Canyon, Courthouse Wash, Professor Creek, Negro Bill Canyon, Cottonwood/Diamond, Spring Canyon, Red Wash, Green River, Colorado River, Onion Creek and Westwater Creek. | **Watershed Management Plans:**<br>Prioritize development and implementation of the Watershed Management Plans for the following areas: Ten Mile Wash, Kane Springs, Bartlett Wash, Tusher Wash, Mill Canyon, Courthouse Wash, Cottonwood-Diamond, and Onion Creek. | **Watershed Management Plans:**<br>Do not prioritize Watershed Management Plans. |

### SPECIAL DESIGNATIONS – AREAS OF CRITICAL ENVIRONMENTAL CONCERN (ACECs)

The term "Area of Critical Environmental Concern" means areas within the public lands where special management attention is required (when such areas are developed or used or where no development is required) to protect and prevent irreparable damage to important historic, cultural, or scenic values, fish and wildlife resources, or other natural systems or processes, or to protect life and safety from natural hazards (FLPMA, 43 U.S.C. 1702(a)).

**Goals and Objectives:**

Designate, modify and manage areas as ACECs where special management attention is required to protect and prevent irreparable damage to important historic, cultural, or scenic values, fish and wildlife resources, or other natural systems or processes, or to protect life and safety from natural hazards.

**Management Common to the PROPOSED PLAN and Draft RMP Alternative B (see Maps 2-14-A through 2-14-D for ACECs by alternative; see Appendix I for the Relevance and Importance Evaluations of Area of Critical Environmental Concern Nominations)**

- In those areas where ACECs overlap with WSAs, the WSA management prescriptions, as stipulated in the Interim Management Policy for Lands Under Wilderness Review (IMP), would take precedence.
- ACECs would be avoidance areas for all ROWs, including wind, solar energy and communication sites.

### Behind the Rocks Potential ACEC

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| The area is not designated as an ACEC.<br>Behind the Rocks WSA would be managed according to the IMP to protect wilderness values (12,635 acres).<br>Manage 694 acres as open to oil and gas leasing, 1,958 acres as no surface occupancy, and 15,196 acres as closed. | Behind the Rocks Potential ACEC (17,836 acres) would be designated as an ACEC. This area includes the Behind the Rocks WSA (12,635 acres) in its entirety.<br>**Special Management:** To protect the relevant and important values of natural systems (threatened, sensitive, and endangered plants), cultural resources and scenery, the following management prescriptions would apply:<br>• Designate as VRM Class I.<br>• No vegetation treatments except for noxious weeds and exotics.<br>• Cultural resources would be prioritized for Class III inventory.<br>• Vehicle-based camping only in campgrounds. No campfires outside of | Behind the Rocks Potential ACEC (5,201 acres) would be designated as an ACEC. This area excludes the Behind the Rocks WSA, which would be managed according to the IMP to protect wilderness values.<br>**Special Management:** To protect the relevant and important values of natural systems (threatened, sensitive, and endangered plants), cultural resources and scenery, the following management prescriptions would apply:<br>• Designate as VRM Class II.<br>• No vegetation treatments (except for exotic/noxious weeds).<br>• Cultural resources in Behind the Rocks ACEC would be prioritized for Class III inventory. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• The Behind the Rocks WSA would be managed according to the IMP to protect wilderness values (12,635 acres).<br>• The remaining 5,201 acres will be managed as follows:<br>Designate as VRM Class III.<br>Allow vegetation treatments.<br>Open to oil and gas leasing with standard terms and conditions. |

BLM_0009896

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| | campgrounds.<br>• No new motorized or mechanized routes, motorized/mechanized travel limited to designated routes.<br>• Manage the WSA as closed to oil and gas leasing and other surface-disturbing activities (12,635 acres). Manage the non-WSA lands with wilderness characteristics as closed to oil and gas leasing (4,231 acres). In the remaining 970 acres, apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities.<br>• No commercial or private use of woodland products. | • Vehicle-based camping only in campgrounds. No campfires outside of campgrounds.<br>• No new motorized or mechanized routes, motorized/mechanized travel limited to designated routes.<br>• Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C).<br>• No commercial or private use of woodland products.<br>• There are approximately 12,635 acres of this potential ACEC proposed for designation under another statutory authority (Wilderness Study Area) and no further management attention is required. | |

| **Bookcliffs Potential ACEC** | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| This area is not designated as an ACEC.<br><br>Desolation, Flume, Floy, Coal and Spruce WSAs would be managed according to the IMP to protect wilderness values (250,207 acres).<br><br>Manage 15,757 acres as open to oil and gas leasing, 38,415 acres with timing limitations and controlled surface use, and 250,207 acres as closed.<br><br>OHV designations include open and limited to existing routes. | Bookcliffs Potential ACEC (304,252 acres) would be designated as an ACEC. This area includes Desolation, Flume, Floy, Coal, and Spruce WSAs (250,207 acres).<br><br>**Special Management:** To protect the relevant and important values of wildlife and cultural resources, the following management prescriptions would apply:<br>• All WSAs would be managed according to the IMP.<br>• Work with UDWR and other agencies to create and implement a Habitat Management Plan for the Bookcliffs.<br>• No new motorized or mechanized routes. Motorized and mechanized travel is limited to designated routes outside the WSA and closed in the WSA.<br>• Manage WSAs as closed to oil and gas leasing and other surface-disturbing activities (249,988 acres). Manage the non-WSA lands with wilderness characteristics as closed to oil and gas leasing (19,901 acres). In the remaining 34,363 acres, apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C).<br>• No commercial or private use of woodland products.<br>• Prioritize Bookcliffs for Class III cultural inventory. | Proposed area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• The WSAs (Desolation, Flume, Floy, Coal, and Spruce) would be managed according to the IMP.<br>• Areas outside of the WSAs (54,174 acres) would be managed according to the following prescriptions:<br>  • Apply standard and controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities (see Appendix C). | Same as the Proposed Plan. |

| **Canyon Rims Potential ACEC** | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Not designated as an ACEC.<br><br>Manage as part of the Canyon Rims SRMA (see SRMA prescriptions).<br><br>Designate as VRM Class II.<br><br>Manage with timing limitations and controlled surface use for oil and gas leasing. | Canyon Rims Potential ACEC (23,400 acres) would be designated as an ACEC. **Special Management:** To protect the relevant and important value of scenery, the following management prescriptions would apply:<br>• Designate as VRM Class II.<br>• No new motorized or mechanized routes. Motorized and mechanized travel limited to designated routes. Manage consistently with the Canyon Rims Recreation Area Plan.<br>• Manage the non-WSA lands with wilderness characteristics as closed to oil and gas leasing (3,417 acres). Apply a no surface occupancy stipulation for oil and gas leasing, and preclude other surface-disturbing activities (see Appendix C) on the remaining 19,983 acres. | Proposed area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• Manage as part of the Canyon Rims SRMA (see SRMA prescriptions).<br>• Designate as VRM Class II.<br>• Avoid permitting new ROWs.<br>• Apply controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities on 15,422 acres. The Scenic Byway corridor (7,035 acres) would be managed as controlled surface use for oil and gas leasing and other surface-disturbing activities (see Appendix C). The remainder of the area (943 acres) would be managed as open with standard stipulations. | Proposed area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• Manage as part of the Canyon Rims SRMA (see SRMA prescriptions).<br>• Designate as VRM Class II and III.<br>• Avoid permitting new ROWs.<br>• The area would be managed with the following stipulations for oil and gas: 2,226 acres are open to leasing subject to standard terms and conditions, and apply controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities to 17,420 acres. The Scenic Byway corridor (3,754 acres) would be managed as controlled surface use for oil and gas leasing and other surface-disturbing activities (see Appendix C). |

| **Cisco White-tailed Prairie Dog Complex Potential ACEC** | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| This area is not designated as an ACEC. | Cisco White-tailed Prairie Dog Complex Potential ACEC (117,481 acres) | Proposed area would not be designated as an ACEC. Management of the | The area would not be designated as an ACEC. Management of the acreage |

BLM_0009897

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| Currently implemented Seasons of Use for livestock grazing: Agate - 3/15, Cisco - 5/10, Cisco Mesa - 5/15, Corral Wash - 5/10, Harley - 5/12, Highlands - 5/15, Monument Wash - 5/15, Pipeline - 5/15, San Arroyo - 5/25, and Sulphur Canyon - 4/12.<br><br>Manage 97,089 acres as open to oil and gas leasing, 19,240 acres with timing limitations and controlled surface use, and 1,152 acres as no surface occupancy. | would be designated as an ACEC.<br><br>**Special Management:** To protect the relevant and important value of wildlife, the following management prescriptions would apply:<br><br>• Using grazing systems and develop AMPs to protect prairie dog habitat in the following allotments or portions of allotments: Agate, Cisco, Cisco Mesa, Harley Dome, Highlands, Monument Wash, Pipeline, San Arroyo. Establish rest-rotation system to allow adequate recovery for seed dispersal and establishment.<br>• Work with UDWR to prohibit shooting of prairie dogs year-round and ban prairie dog poisoning on public lands.<br>• Develop cooperative agreements with UDWR and USFWS to inventory prairie dog densities and to manage habitat for prairie dogs, ground squirrels and raptors.<br>• Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C).<br>• No new motorized or mechanized routes. Motorized and mechanized travel is limited to designated routes. | acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br><br>• Maintain current season of use, and manage grazing to allow for adequate seed production.<br>• Apply a controlled surface use stipulation for oil and gas leasing and surface-disturbing activities (see Appendix C) within 660 feet of active prairie dog colonies. No permanent above-ground facilities would be allowed within the 660-foot buffer. | would default to prescriptions applicable to the general area. |

| Colorado River Corridor Potential ACEC | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Negro Bill Canyon would be designated as Outstanding Natural Area (1,375 acres).<br><br>Continue the Three Rivers Withdrawal for locatable minerals (18,519 acres).<br><br>Manage the river corridor as part of the Colorado River Recreation Area and the Colorado River SRMA.<br><br>Manage 34,342 acres as open to oil and gas leasing, 10,864 acres with timing limitations and controlled surface use, 1,189 acres as no surface occupancy, and 3,613 acres as closed. | Colorado River Corridor Potential ACEC (50,483 acres) would be designated as an ACEC.<br><br>• Negro Bill Canyon would no longer be designated as an Outstanding Natural Area, but would be included within the Colorado River Corridor ACEC. Negro Bill Canyon WSA would be managed according to the IMP to protect wilderness values.<br>• Manage recreation use according to the Colorado Riverway SRMA (see SRMA prescriptions) with the exception of the Dry Mesa/Cache Valley area north of the Colorado River.<br>• **Special Management:** To protect the relevant and important values of natural systems (threatened, sensitive and endangered plants), fish and wildlife, and scenery, the Colorado River Corridor would be designated as an ACEC with the following management prescriptions:<br>Designate as VRM Class I.<br>No permitted activities north of the river (excluding immediate river corridor) during crucial bighorn lambing and rutting periods, April 1 through June 15 and October 1 to December 15, respectively.<br>Motorized and mechanized travel limited to designated routes.<br>No competitive OHV events.<br>Vehicle-based camping only in designated campsites on south side of the Colorado River.<br>Campfires for vehicle-based camping would be allowed only within designated campsites on the south side of the Colorado River.<br>No Special Recreation Permits would be issued north of the river (except for immediate river corridor used by river runners).<br>No vegetation treatments except for noxious weeds and exotics.<br>Season of use adjustments for livestock grazing in crucial bighorn lambing and rearing habitat (see Wildlife).<br>Retain ACEC in public ownership except lands involved in the existing Professor Valley land exchange.<br>Prioritize acquisition of inholdings as opportunity presents itself.<br>Apply a no surface occupancy stipulation on 9,196 acres for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C). Close | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br><br>• Negro Bill Canyon would no longer be designated as an Outstanding Natural Area. The Negro Bill Canyon WSA would be managed according to the IMP to protect wilderness values.<br>• Designate as VRM Class II (see VRM section starting on page 2-50) except for Negro Bill WSA, which would be managed as VRM Class I.<br>• Manage recreation use according to the Colorado Riverway SRMA (see SRMA prescriptions) with the exception of the Dry Mesa/Cache Valley area north of the Colorado River, which would be managed according to the following prescriptions: No permitted activities north of the river (except in the immediate river corridor) during crucial bighorn lambing and at rutting seasons, April 1 through June 15 and October 1 to December 15, respectively.<br>• Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) in VRM Class II areas, areas within the Three Rivers Withdrawal (see Map 2-1) and in crucial bighorn lambing and rearing areas. Within these areas, prohibit geophysical exploration for oil and gas, and close to minerals material disposal. Close areas unreachable by directional drilling to oil and gas leasing. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br><br>• Negro Bill Canyon would no longer be designated as an Outstanding Natural Area. The Negro Bill Canyon WSA would be managed according to the IMP to protect wilderness values.<br>• Manage recreation use according to the Colorado Riverway SRMA (see SRMA prescriptions).<br>• Area would be managed the same as the Proposed Plan, with the following exceptions:<br>Permitted activities would be allowed year-round.<br>Apply controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities (see Appendix C).<br>Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) within the Three Rivers Withdrawal (see Map 2-1).<br>Open to minerals material disposal.<br>Open to geophysical exploration for oil and gas.<br>No commercial or private collection of woodland products on the south side of the river. |

BLM_0009898

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| | 33,548 acres of non-WSA lands with wilderness characteristics to oil and gas leasing. Close 8,008 acres, which are unreachable by directional drilling to oil and gas leasing.<br>No commercial or private collection of woodland products. | | |

| Cottonwood-Diamond Watershed Potential ACEC | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| This area is not designated as an ACEC.<br><br>Manage the portions of the Cottonwood-Diamond Watershed Potential ACEC (34,004 acres) within the Flume, the Coal Canyon and the Spruce WSAs according to the IMP to protect the wilderness values.<br><br>Manage areas outside the WSAs with timing limitations and controlled surface use for oil and gas leasing (1,825 acres). | Cottonwood-Diamond Watershed Potential ACEC (35,830 acres) would be designated as an ACEC.<br><br>**Special Management: NOTE: ACEC would only be designated until hazard is no longer present. At that point, management would revert to the IMP.** To protect the relevant and important values of natural systems, and to mitigate the natural hazards due to fire, the following management prescriptions would apply:<br><br>• Continue to keep area not available to livestock grazing.<br>• Close to vehicle use at the end of the Class B-road system, except for administrative access.<br>• No new mechanized or motorized routes. Motorized and mechanized travel limited to designated routes outside the WSA, and closed in the WSA.<br>• No competitive events.<br>• Suspend commercial permits (guiding or special groups).<br>• Manage the acreage within the WSAs (34,027 acres) as closed to oil and gas leasing and other surface-disturbing activities. Manage the remaining acreage within non-WSA lands with wilderness characteristics as closed to oil and gas leasing (1,690 acres). Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities on the remaining acreage (113 acres; see Appendix C). | Cottonwood Diamond Watershed would be designated as an ACEC with the same prescriptions as in Alternative B, except that 34,027 acres within the WSA are closed to oil and gas leasing, and the remaining 1,804 acres would be managed as no surface occupancy for oil and gas leasing. Other surface-disturbing activities would be precluded (see Appendix C). | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br><br>• Manage portions of the area that are in the Flume, Spruce or Coal WSA according to IMP. |

| Highway 279/Shafer Basin/Long Canyon Potential ACEC | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **Proposed Plan** | **Alternative D** |
| This area is not designated as an ACEC.<br><br>Manage 6,425 acres as open to oil and gas leasing, 4,606 acres with timing limitations and controlled surface use, 2,094 acres as no surface occupancy, and 362 acres as closed.<br><br>Continue the Three Rivers Withdrawal for locatable minerals (2,034 acres).<br><br>Avoid permitting new ROWs. | Highway 279/Shafer Basin/Long Canyon Potential ACEC (13,500 acres) would be designated as an ACEC.<br><br>**Special Management:** To protect the relevant and important values of scenery, wildlife, natural systems (threatened, sensitive, and endangered plants), and cultural resources, the following management prescriptions would apply:<br><br>• Designate as VRM Class I.<br>• Permitted activities would be confined to main roads within crucial bighorn lambing habitat from April 1 through June 15. This restriction would not apply to filming if the filming meets the minimum impact criteria (see Appendix B).<br>• Wall Street rock art sites would be managed for public use with the emphasis on interpretation.<br>• Motorized and mechanized travel limited to designated routes.<br>• Vehicle-based camping only in designated campgrounds.<br>• No campfires except in campgrounds.<br>• Retain ACEC in public ownership except for the previously initiated Moab Salt Exchange Parcel (635 acres).<br>• Manage non-WSA lands with wilderness characteristics as closed to oil and gas leasing (3,502 acres). Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) to the remaining acreage (9,998 acres). | Highway 279/Shafer Basin/Long Canyon would be designated as an ACEC with the same prescriptions as in Alternative B, except:<br><br>• Designate Highway 279 and Long Canyon as VRM Class II; manage the remainder of the ACEC as VRM I.<br>• Manage the entire area as no surface occupancy for oil and gas leasing and preclude other surface-disturbing activities. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br><br>• Designate as VRM Class III.<br>• The area would be managed with the following stipulations for oil and gas: 5,741 acres would be open to leasing subject to standard terms and conditions, and apply a timing limitation stipulation for oil and gas leasing and other surface-disturbing activities on 5,370 acres. In addition, 2,389 acres along the Colorado River would be managed as no surface occupancy (see Appendix C). |

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

### Labyrinth Canyon Potential ACEC

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| This area is not designated as an ACEC. Manage as open to oil and gas leasing subject to standard terms and conditions and as open with controlled surface use stipulations for oil and gas. Continue the Three Rivers Withdrawal for locatable minerals. No commercial or private use of woodland products. | Labyrinth Canyon Potential ACEC (8,528 acres) would be designated as an ACFC. **Special Management:** To protect the relevant and important values of scenery and fish, the following management prescriptions would apply: • Designate as VRM Class I. • No new mechanized or motorized routes. Motorized and mechanized travel limited to designated routes. • Manage non-WSA lands with wilderness characteristics as closed to oil and gas leasing (5,492 acres). Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) on the remaining lands (3,036 acres). • No commercial or private use of woodland products. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to: • Designate as VRM Class II. • No new mechanized or motorized routes. Motorized and mechanized travel limited to designated routes. • Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C). • No commercial or private use of woodland products. | Same as the Proposed Plan. |

### Mill Creek Canyon Potential ACEC

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| This area is not designated as an ACEC. Manage Mill Creek Canyon WSA (9,780 acres) according to the IMP to protect wilderness values. Manage the WSA as closed to oil and gas leasing and other surface-disturbing activities. Manage remainder of the area as open with standard stipulations. Livestock grazing would be available in the Mill Creek Allotment. | Mill Creek Canyon Potential ACEC (13,501 acres) would be designated as an ACEC. This area includes the Mill Creek Canyon WSA (9,780 acres) in its entirety. **Special Management:** To protect the relevant and important values of cultural resources, scenery, and natural systems (cold water fishery/riparian/watershed and wildlife), the following management prescriptions would apply: • Recreation activities would be managed according to the South Moab SRMA. • Prioritize Mill Creek for Class III cultural inventory. • Protect Native American traditional cultural places. • Designate as VRM Class I. • Livestock grazing would not be available. • No vehicle-based camping. • No campfires in riparian areas. • Motorized competitive events would be prohibited. • No new mechanized or motorized routes. Motorized and mechanized travel limited to designated routes. • All recreational events would be confined to the designated roads in the ACEC. • Limit recreation facility development to day-use only. • Acquire state land within ACEC as the opportunity arises. • Maintain 3 cfs in the South Fork of Mill Creek below the Sheley diversion. • Manage the area as closed to oil and gas leasing. No recreational mining would be allowed. • No fuel wood harvesting permits would be issued. • Private wood gathering for backpacking campfires would be allowed in the uplands only. | Mill Creek Canyon Potential ACEC (3,721 acres) would be designated as an ACEC. This area excludes the Mill Creek Canyon WSA. The Mill Creek Canyon WSA (9,780 acres) would be managed according to the IMP to protect wilderness values. **Special Management:** To protect the relevant and important values of cultural resources, scenery, natural systems (cold water fishery/riparian/watershed and wildlife), the following management prescriptions would apply to 3,721 acres in the ACEC: • Recreation activities would be managed according to the South Moab SRMA. • Prioritize Mill Creek for Class III cultural inventory. • Protect Native American traditional cultural places. • Designate as VRM Class II. • Livestock grazing would not be available. • No vehicle-based camping. • No campfires in riparian areas. • Motorized competitive events would be prohibited. • No new mechanized or motorized routes. Motorized and mechanized travel limited to designated routes. • All recreational events would be confined to the designated roads in the ACEC. • Limit recreation facility development to day-use only. • Acquire state land within ACEC as the opportunity arises. • Maintain 3 cfs in the South Fork of Mill Creek below the Sheley diversion. • Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C). • No recreational mining would be allowed. • No fuel wood harvesting permits would be issued. • Private wood gathering for backpacking campfires would be allowed in the uplands only. | The proposed area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to: • The Mill Creek Canyon WSA would be managed according to the IMP to protect wilderness values (9,780 acres). • The remaining 3,721 acres would be managed as follows: Recreation activities would be managed according to the South Moab SRMA in that portion within the SRMA. Designate as VRM Class II. Livestock grazing would not be available. Apply controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities (see Appendix C). |

BLM_0009900

**Table 2.1.** MOAB PROPOSED PLAN and Draft RMP Alternatives

| Ten Mile Wash Potential ACEC | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| This area is not designated as an ACEC.<br><br>Manage as controlled surface use for oil and gas use.<br><br>Open to competitive motorized events. | Ten Mile Wash Potential ACEC (4,980 acres) would be designated as an ACEC.<br><br>**Special Management:** To protect the relevant and important values of natural systems (riparian/wetlands), wildlife, cultural resources and natural hazards, the following management prescriptions would apply:<br>• Prioritize Ten Mile for Class III cultural inventory.<br>• Prioritize Ten Mile as a scientific research area.<br>• No grazing in Ten Mile Canyon downstream from Dripping Springs.<br>• Prioritize area for riparian restoration.<br>• No vehicular travel in Ten Mile Wash from Dripping Springs to the Green River.<br>• Restrict camping and campfires to designated sites at Dripping Spring.<br>• Manage non-WSA lands with wilderness characteristics as closed to oil and gas leasing (232 acres). Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) to the remaining acreage (4,748 acres).<br>• No commercial or private collection of woodland products.<br>NOTE: In Alternative B, Ten Mile does not have a designated road in it; therefore, all the road-related prescriptions have been removed from Alternative B. | Ten Mile Wash Potential ACEC (4,980 acres) would be designated as an ACEC with the following management prescriptions:<br>• Prioritize Ten Mile for Class III cultural inventory.<br>• Prioritize Ten Mile as a scientific research area.<br>• No grazing in Ten Mile Canyon downstream from Dripping Springs.<br>• Prioritize area for riparian restoration.<br>• Restrict camping and campfires to designated sites at Dripping Spring.<br>• Motorized and mechanized travel limited to designated routes.<br>• No competitive events.<br>• Establish speed limits.<br>• Reroute designated road around the wetlands south of the cattle guard near Dripping Springs.<br>• Restrict vehicle access at the Green River; designate a parking area at the Green River.<br>• Permits for motorized recreational use may be required if monitoring indicates long-term damage.<br>• Require permits for groups greater than 25 vehicles.<br>• Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C).<br>• No commercial or private collection of woodland products. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• Continue present grazing management in Ten Mile Canyon.<br>• No campfires outside of designated sites.<br>• Motorized travel on designated routes only (see Map 2-11-D).<br>• Require permits for groups greater than 50 vehicles.<br>• Apply a timing limitation stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) to 2,558 acres. |

| Upper Courthouse Potential ACEC | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| This area is not designated as an ACEC.<br><br>Managed as open to oil and gas leasing with standard terms and conditions.<br><br>No commercial or private use of woodland products. | Upper Courthouse Potential ACEC (11,529 acres) would be designated as an ACEC.<br>• Recreation use would be managed in accordance with the Labyrinth Rims/Gemini Bridges SRMA.<br>• **Special Management:** To protect the relevant and important values of historic/cultural/paleontological resources and natural systems (threatened, sensitive, endangered, and relict plants), the following management prescriptions would apply:<br>Prioritize Upper Courthouse for a Class III cultural inventory.<br>No collection of petrified wood.<br>No new range improvements except for fencing.<br>No vegetation treatments except for noxious weeds and exotics, and to restore riparian environments.<br>Active protection of archeological sites from grazing.<br>Limit OHVs to designated routes (no sandhill climbing routes would be designated).<br>No new mechanized or motorized routes. Motorized and mechanized travel limited to designated routes.<br>Vehicle-based camping only in designated sites.<br>No campfires outside of campgrounds.<br>No competitive OHV events.<br>Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C).<br>No commercial or private use of woodland products. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• Recreation use would be managed in accordance with the Labyrinth Rims/ Gemini Bridges SRMA.<br>• Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) to mesa-top relict plant communities.<br>• Avoid permitting new ROWs on the mesa-top relict plant communities.<br>• No commercial or private use of woodland products.<br>• Recommend the mesa-top relict plant communities for the withdrawal of locatable minerals. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• Manage as open for oil and gas leasing (see Map 2-5-D).<br>• Open to locatable mineral development.<br>• No commercial or private use of woodland products. |

BLM_0009901

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| Westwater Canyon Potential ACEC | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| This area is not designated as an ACEC.<br>Manage the Westwater WSA according to the IMP to protect wilderness values.<br>Manage as closed to oil and gas leasing and other surface-disturbing activities.<br>Continue with the existing withdrawal for locatable minerals.<br>Avoid permitting new ROWs. | Westwater Canyon Potential ACEC (5,069 acres) would be designated as an ACFC. This area is within the Westwater Canyon WSA.<br>**Special Management:** To protect the relevant and important values of scenery and fish, the following management prescriptions would apply:<br>• Manage the Westwater Canyon WSA according to the IMP to protect wilderness values.<br>• Designate as VRM Class I.<br>• Closed to motorized and mechanized travel.<br>• Acquire inholdings within ACEC.<br>• Manage as closed for oil and gas leasing and other surface-disturbing activities.<br>• No commercial or private use of woodland products. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• Manage the Westwater Canyon WSA according to the IMP to protect wilderness values. | Same as the Proposed Plan |

| White Wash Potential ACEC | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| This area is not designated as an ACEC.<br>Competitive motorized events would be allowed.<br>Open to cross country OHV travel.<br>Manage as no surface occupancy for oil and gas leasing.<br>Open to locatable mineral development. | White Wash Potential ACEC (2,988 acres) would be designated as an ACEC.<br>**Special Management:** To protect the relevant and important value of natural systems (riparian dune systems), the following management prescriptions would apply:<br>• Limit OHVs to designated routes.<br>• Competitive motorized events would not be allowed.<br>• Vehicle-based camping in campgrounds only.<br>• No fires or wood gathering allowed.<br>• Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C).<br>• No commercial or private use of woodland products. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• Recreational use in this area would be managed according to the White Wash Sand Dunes Open OHV Focus Area (1,866 acres) within the Labyrinth Rims/ Gemini Bridges SRMA. The remaining 1,122 acres would be managed according to the Dee Pass Motorized Trail Focus Area in the same SRMA.<br>• About 1,866 acres are open to OHV, and 1,122 acres are limited to designated routes.<br>• Competitive motorized events would be allowed.<br>• Manage as open to oil and gas leasing (see Map 2-5-C).<br>• Open to locatable mineral development.<br>• No commercial or private use of woodland products. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• Recreational use in this area would be managed according to the White Wash Sand Dunes Open OHV Focus Area within the Dee Pass SRMA for this alternative.<br>• The entire area would be open to OHV use.<br>• Competitive motorized events would be allowed. |

| Wilson Arch Potential ACEC | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| The area is not designated as an ACEC.<br>Managed as open to oil and gas leasing. | Wilson Arch Potential ACEC (3,700 acres) would be designated as an ACEC.<br>**Special Management:** To protect the relevant and important value of scenery, Wilson Arch would be designated as an ACEC with the following management prescriptions:<br>• Designate as VRM Class I.<br>• Build one trail up to Wilson Arch for hiking use only.<br>• Motorized and mechanized travel limited to designated routes.<br>• Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C).<br>• No commercial or private use of woodland products. | The area would not be designated as an ACEC. Management of the acreage would default to prescriptions applicable to the general area, which include, but are not limited to:<br>• Designate as VRM Class II.<br>• Apply a controlled surface use stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C). | Same as the Proposed Plan, except designate as VRM Class III. |

| SPECIAL DESIGNATIONS – NATIONAL HISTORIC TRAIL – OLD SPANISH TRAIL |
|---|

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

• Segments of the Old Spanish Trail would be identified and classified for historic integrity and condition. These segments would then be designated for appropriate types of management and travel.
• Landmarks along the Old Spanish Trail would be identified for historic integrity and interpreted only if the action would not impact the values at the site. All interpretation projects would be done in consultation with Native Americans and other interested parties including the Old Spanish Trail Association and

BLM_0009902

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

National Park Service.
- Consider plan amendment, as necessary, to incorporate provisions of the forthcoming Old Spanish Trail Comprehensive Management Plan.
- Participate in the development of the management plan for the Old Spanish Trail and assist with its implementation as opportunities arise, consistent with other decisions of the RMP.
- Support protective management, interpretation, and public enjoyment and understanding of the National Historic Old Spanish Trail, consistent with the Old Spanish Trail Comprehensive Management Plan.
- Seek to acquire public access to the site of the Old Spanish Trail ford of the Green River, upstream from the town of Green River, Utah, for the purpose of developing an interpretive site.
- Consistent with the Cameo Cliffs and Canyon Rims Recreation Area Management Plans (RAMPs), consider developing and managing a section of the Old Spanish Trail for equestrian use.

## SPECIAL DESIGNATIONS – WILD AND SCENIC RIVERS (WSRs)

**Goals and Objectives:**
- Review all eligible rivers to determine suitability for Congressional designation into the National Wild and Scenic River System (NWSRS).
- To the extent of the BLM's authority (limited to BLM lands within the river corridor), maintain and enhance the free flowing character, preserve and enhance the outstandingly remarkable values, and allow no activities within the river corridor that would alter the tentative classification of those river segments determined suitable for congressional designation in the NWSRS until Congress acts.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**
- River segments found suitable and recommended for designation would be managed to protect their free-flowing condition and to protect the outstandingly remarkable values and maintain the tentative classification within line-of-sight up to 1/4 mile (1/3 miles on the Colorado and Dolores Rivers) from the high water mark on each bank of the river (not to exceed 320 acres per mile). Management that would apply should any rivers be designated by Congress is identified in BLM Manual 8351.51 (see Appendix J and Maps 2-15-B and 2-15-C for river segments found suitable for WSR designation, by alternative).
- BLM would not seek water rights as part of a suitability decision made in the Record of Decision for this RMP.
- WSR segments recommended as suitable for Wild would be designate as VRM Class I; Scenic and Recreational segments would be designated as VRM Class II.
- OHV travel would be limited to designated routes or closed, depending on the river segment.
- The stipulations that would be applied to oil and gas leasing and other surface-disturbing activities within suitable river segments have been developed based on other resource values such as scenery, wildlife and fisheries, riparian, and recreation. In all cases, these stipulations are sufficient to protect the outstandingly remarkable values. All suitable segments would be managed with a no surface occupancy stipulation for oil and gas leasing as well as all other surface-disturbing activities, or as closed to oil and gas leasing (see Appendix C and Maps 2-5-B and 2-5-C for the surface stipulations application to oil and gas leasing and other surface-disturbing activities, by alternative).
- BLM would work with the State of Utah, local and tribal governments, and other federal agencies, in a state-wide study, to reach consensus regarding recommendations to Congress for the inclusion of rivers in the National Wild and Scenic Rivers System. Besides applying consistent criteria across agency jurisdictions, the joint study would avoid piece-mealing of river segments in logical watershed units in the state. The study would evaluate, in detail, the possible benefits and effects of designation on the local and state economies, agricultural and industrial operations and interests, outdoor recreation, natural resources (including the outstandingly remarkable values for which the river was deemed suitable), water rights, water quality, water resource planning, and so across river corridors within, and upstream and downstream from the proposed segments(s). Actual designation of river segments would only occur through congressional action or as a result of Secretarial decision at the request of the Governor in accordance with provisions of the Wild and Scenic Rivers Act (the Act). BLM will work with the State, local and tribal governments, and the agencies involved to coordinate its decision making on wild and scenic river issues and to achieve consistency wherever possible.
- BLM recognizes that water resources on most river and stream segments within the State of Utah are already fully allocated. Before stream segments that have been recommended as suitable under this Proposed Plan are recommended to Congress for designation, BLM will continue to work with affected local, state, federal, and tribal partners to identify in-stream flows necessary to meet critical resource needs, including values related to the subject segment(s). Such quantifications would be included in any recommendation for designation. BLM would then seek to jointly promote innovative strategies, community-based planning, and voluntary agreements with water users, under State law, to address those needs.
- Should designations occur on any river segment as a result of Secretarial or congressional action, existing rights, privileges, and contracts would be protected. Under Section 12 of the Act, termination of such rights, privileges, and contracts may happen only with the consent of the affected non-federal party. A determination by the BLM of eligibility and suitability for the inclusion of rivers on public lands to the Wild and Scenic Rivers System does not create new water rights for the BLM. Federal reserved water rights for new components of the Wild and Scenic Rivers System are established at the discretion of Congress. If water is reserved by Congress when a river component is added to the Wild and Scenic Rivers System, it would come from water that is not appropriated at the time of designation, in the amount necessary to protect features which led to the river's inclusion into the system. BLM's intent would be to leave existing water rights undisturbed and to recognize the lawful rights of private, municipal, and state entities to manage water resources under state law to meet the needs of the community. Federal law, including Section 13 of the Act and the McCarren Amendment (43 U.S.C. 666), recognizes state jurisdiction over water allocation in designated streams. Thus, it is BLM's position that existing water rights, including flows apportioned to the State of Utah interstate agreements and compacts, including the Upper Colorado River Compact, and developments of such rights would not be affected by designation or the creation of the possible federal reserved water right. BLM will seek to work with upstream and downstream water users and applicable agencies to ensure that water flows are maintained at a level sufficient to sustain the values for which affected river segments were designated.

### Beaver Creek (7.7 miles)
- Segment 1 – Forest Service boundary to one mile from Dolores River
- Segment 2 – One mile to Dolores River

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Suitability determination would not be made for either of the eligible river segments. They would remain eligible and would be managed to protect their outstandingly remarkable values, free-flowing nature, and tentative classification. | Segment 1 – Suitable--Wild<br>Oil and gas leasing: Closed<br>OHV category: Limited to designated routes<br>VRM designation: Class I<br>Segment 2 – Suitable-Scenic<br>Oil and gas leasing: Closed<br>OHV category: Limited to designated routes<br>VRM designation: Class II | Segment 1 – Not suitable<br>Segment 2 – Not suitable | Segment 1 – Not suitable<br>Segment 2 – Not suitable |

BLM_0009903

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | | |
|---|---|---|---|---|
|  | **Colorado River (66.5 miles)** | | | |

- Segment 1 – Colorado-Utah state line to Westwater Canyon
- Segment 2 – Westwater Canyon (Mile 125) to River Mile 112
- Segment 3 – River Mile 112 to confluence with the Dolores River
- Segment 3(a) – River Mile 112 to Cisco Wash
- Segment 3(b) – Cisco Wash to confluence with the Dolores River
- Segment 4 – Confluence with the Dolores River to River Mile 49 near Potash
- Segment 4 (portion for Alternative D only) – Hittle Bottom to Take Out Beach
- Segment 5 – River Mile 44.5 to Mile 38.5 state land boundary
- Segment 6 – River Mile 37.5 below state land to Mile 34 Canyonlands National Park

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Suitability determination would not be made for any of the eligible river segments. They would remain eligible and would be managed to protect their outstandingly remarkable values, free-flowing nature, and tentative classification. | Segment 1 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 2 – Suitable–Wild<br>Oil and gas leasing: Closed<br>OHV category: Closed<br>VRM designation: Class I<br>Segment 3 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 4 – Suitable–Recreation<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 5 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 6 – Suitable–Wild<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II | Segment 1 – Not suitable<br>Segment 2 – Suitable–Wild<br>Oil and gas leasing: Closed<br>OHV category: Closed<br>VRM designation: Class I<br>Segment 3(a) – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 3(b) – Suitable–Recreational<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 4 – Suitable–Recreational<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 5 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 6 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II | Segment 1 – Not suitable<br>Segment 2 – Not suitable<br>Segment 3 – Not suitable<br>Segment 4 – Not suitable<br>Segment 5 – Not suitable<br>Segment 6 – Not suitable |

BLM_0009904

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| **Cottonwood Canyon (10.4 miles)** | | | |
| • Source near Cottonwood Point to private land (includes the first 1/2 mile of Horse Canyon) | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for this eligible river segment. It would remain eligible and would be managed to protect its outstandingly remarkable values, free-flowing nature, and tentative classification. | Suitable–Scenic<br>Oil and gas leasing: Closed<br>OHV category: Closed<br>VRM designation: Class I | Not suitable | Not suitable |

| | | | |
|---|---|---|---|
| **Dolores River (22.0 miles)** | | | |
| • Segment 1 – Colorado-Utah state line to Fisher Creek<br>• Segment 2 – Fisher Creek to Bridge Canyon<br>• Segment 3 – Bridge Canyon to Colorado River | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for any of the eligible river segments. They would remain eligible and would be managed to protect their outstandingly remarkable values, free-flowing nature, and tentative classification. | Segment 1 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 2 – Suitable--Wild<br>Oil and gas leasing: Closed<br>OHV category: Limited to designated routes<br>VRM designation: Class I<br>Segment 3 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II | Segment 1 – Suitable–Recreational<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 2 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 3 – Suitable–Recreational<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II | Segment 1 – Not suitable<br>Segment 2 – Not suitable<br>Segment 3 – Not suitable |

| | | | |
|---|---|---|---|
| **Green River (99.0 miles)** | | | |
| • Segment 1 – Coal Creek to Nefertiti Boat Ramp<br>• Segment 2 – Nefertiti Boat Ramp to Swasey's Boat Ramp<br>• Segment 3 – Swasey's Boat Ramp to I-70 Bridge<br>• Segment 3(a) – Swasey's Boat Ramp to River Mile 97 (confluence with the San Rafael River; combination of Segment 3 and part of Segment 4)<br>• Segment 4 – I-70 Bridge to River Mile 91 below Ruby Ranch<br>• Segment 4(a) – Mile 97 (confluence with the San Rafael River) to Canyonlands National Park boundary (part of Segment 4 and all of Segments 5 and 6)<br>• Segment 5 – Mile 91 below Ruby Ranch to Hey Joe Canyon<br>• Segment 6 – Hey Joe Canyon to Canyonlands National Park Boundary | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for any of the eligible river segments. They would remain eligible and would be managed to protect their outstandingly remarkable values, free-flowing nature, and tentative classification | Segment 1 – Suitable–Wild<br>Oil and gas leasing: Closed<br>OHV category: Closed | Segment 1 – Suitable – Wild<br>Oil and gas leasing: Closed<br>OHV category: Closed | Segment 1 – Not suitable<br>Segment 2 – Not suitable<br>Segment 3 – Not suitable |

BLM_0009905

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| | VRM designation: Class I<br>Segment 2 – Suitable–Recreational<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 3 – Suitable–Recreational<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 4 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 5 – Suitable–Wild<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class I<br>Segment 6 – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II | VRM designation: Class I<br>Segment 2 – Suitable – Recreational<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 3 – Not suitable<br>Segment 3(a) – Not suitable<br>Segment 4 – Not suitable<br>Segment 4(a) – Suitable–Scenic<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II<br>Segment 5 – Not suitable<br>Segment 6 – Not suitable | Segment 4 – Not suitable<br>Segment 5 – Not suitable<br>Segment 6 – Not suitable |

| Mill Creek (6.0 miles) |
|---|
| • Segment 1 – National Forest boundary to private property below diversion |
| • Segment 2 – T26S, R23E, Section 19 to Power Dam |

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Suitability determination would not be made for either of the eligible river segments. They would remain eligible and would be managed to protect their outstandingly remarkable values, free-flowing nature, and tentative classification. | Segment 1 – Suitable–Recreational<br>Oil and gas leasing: Closed<br>OHV category: Closed<br>VRM designation: Class I<br><br>Segment 2 – Suitable–Scenic<br>Oil and gas leasing: Closed<br>OHV category: Closed<br>VRM designation: Class I | Segment 1 – Not suitable<br>Segment 2 – Not suitable | Segment 1 – Not suitable<br>Segment 2 – Not suitable |

BLM_0009906

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | | |
|---|---|---|---|
| **Negro Bill Canyon (7.4 miles)** | | | |
| • Segment 1 – From state land below rim to 1/4 mile from Colorado River<br>• Segment 2 – Last 1/4 mile to Colorado River | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for either of the eligible river segments. They would remain eligible and would be managed to protect their outstandingly remarkable values, free-flowing nature, and tentative classification. | Segment 1 – Suitable–Wild<br>Oil and gas leasing: Closed<br>OHV category: Closed<br>VRM designation: Class I<br>Segment 2 – Suitable–Recreational<br>Oil and gas leasing: NSO<br>OHV category: Limited to designated routes<br>VRM designation: Class II | Segment 1 – Not suitable<br>Segment 2 – Not suitable | Segment 1 – Not suitable<br>Segment 2 – Not suitable |
| **North Fork Mill Creek (11.2 miles)** | | | |
| • National Forest boundary near Wilson Mesa to Mill Creek | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for this eligible river segment. It would remain eligible and would be managed to protect its outstandingly remarkable values, free-flowing nature, and tentative classification. | Suitable–Wild<br>Oil and gas leasing: Closed<br>OHV category: Closed<br>VRM designation: Class I | Not suitable | Not suitable |
| **Onion Creek (12.5 miles)** | | | |
| • Segment 1 – Source to Onion Creek Road<br>• Segment 2 – Beginning of Onion Creek Road to Colorado River | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for either of the eligible river segments. They would remain eligible and would be managed to protect their outstandingly remarkable values, free-flowing nature, and tentative classification. | Segment 1 – Suitable–Wild<br>Oil and gas leasing: Closed<br>OHV category: Limited to designated routes<br>VRM designation: Class I<br>Segment 2 – Suitable–Recreational<br>Oil and gas leasing: Closed<br>OHV category: Limited to designated routes<br>VRM designation: Class II | Segment 1 – Not suitable<br>Segment 2 – Not suitable | Segment 1 – Not suitable<br>Segment 2 – Not suitable |
| **Professor Creek (7.4 miles)** | | | |
| • National Forest and state land boundary to diversion near private land | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for this eligible river segment. It would remain eligible and would be managed to protect its outstandingly remarkable values, free-flowing nature, and tentative classification. | Suitable–Wild<br>Oil and gas leasing: Closed | Not suitable | Not suitable |

BLM_0009907

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | OHV category: Limited to designated routes<br>VRM designation: Class I | | |
|---|---|---|---|
| **Rattlesnake Canyon (31.6 miles)**<br>• Source to Green River (including Flat Nose George Tributary) | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for this eligible river segment. It would remain eligible and would be managed to protect its outstandingly remarkable values, free-flowing nature, and tentative classification. | Suitable–Wild<br>Oil and gas leasing: Closed<br>OHV category: Closed<br>VRM designation: Class I | Not suitable | Not suitable |
| **Salt Wash (0.3 miles)**<br>• Arches National Park boundary to Colorado River | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for this eligible river segment. It would remain eligible and would be managed to protect its outstandingly remarkable values, free-flowing nature, and tentative classification. | Salt Wash to be deferred until NPS does suitability on portion within Arches National Park. It would remain eligible and would be managed to protect its outstandingly remarkable values, free-flowing nature, and tentative classification.<br><br>By default, the lower 0.25 miles of this 0.3-mile segment is within Segment 4 of the Colorado River. Consequently, it would be managed as suitable with a recreation classification. | Salt Wash to be deferred until NPS does suitability on portion within Arches National Park. It would remain eligible and would be managed to protect its outstandingly remarkable values, free-flowing nature, and tentative classification.<br><br>By default, the lower 0.25 miles of this 0.3-mile segment is within Segment 4 of the Colorado River. Consequently, it would be managed as suitable with a recreation classification. | Salt Wash to be deferred until NPS does suitability on portion within Arches National Park. It would remain eligible and would be managed to protect its outstandingly remarkable values, free-flowing nature, and tentative classification. |
| **Thompson Canyon (5.5 miles)**<br>• Source of Thompson to Fisher Creek (Cottonwood Canyon; tributary of Dolores River) | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Suitability determination would not be made for this eligible river segment. It would remain eligible and would be managed to protect its outstandingly remarkable values, free-flowing nature, and tentative classification. | Suitable–Wild<br>Oil and gas leasing: Closed<br>OHV category: Limited to designated routes<br>VRM designation: Class I | Not suitable | Not suitable |

BLM_0009908

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

## SPECIAL DESIGNATIONS – WILDERNESS AND WILDERNESS STUDY AREAS (WSAs)

**Goals and Objectives:**
- Preserve the wilderness character of Wilderness Study Areas (WSAs) until Congress designates them wilderness or releases them.
- Manage the Black Ridge Wilderness Area to provide for the protection of wilderness character and for the use and enjoyment of visitors in a manner that leaves it unimpaired for future use (43 CFR 8560).

**Management Common to PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**
- Manage WSAs under the Interim Management Policy for Lands Under Wilderness Review (IMP; USDI-BLM 1995; see Map 2-16). Manage for the continued preservation of each WSA's wilderness character.
- Manage Black Ridge Wilderness Area (5,200 acres; part of the McInnis Canyon National Conservation Area) in accordance with applicable law, regulation, policy, and management for the area (see Maps 2-16-A through 2-16-D).
- For WSAs, no surface disturbance, permanent new development, or ROWs are allowed, and the lands are closed to oil and gas leasing (see Appendix C).
- For designated Wilderness, any new development or surface disturbance is for wilderness purposes, and the lands are closed to mineral leasing and location. These are non-discretionary, non-planning decisions.
- Only Congress can release a WSA from wilderness consideration. Should any WSA, in part or in whole, be released from wilderness consideration, proposals in the released area would be examined on a case-by-case basis. All proposals inconsistent with Interim Management Policy (IMP) would be deferred until completion of requisite plan amendments. Because a plan amendment would be required, there is no separate analysis in this Land-use Plan to address resource impacts if any WSAs are released.
- Fire activities and projects in WSAs would follow the IMP.
- Designate WSAs and Wilderness as VRM Class I.
- Under the Proposed Plan and under Alternatives A and D, where routes would remain available for motorized use within WSAs, such use could continue on a conditional basis. Use of the existing routes in the WSAs ("ways" when located within WSAs – see Glossary) could continue as long as use of these routes does not impair wilderness suitability, as provided by the Interim Management Policy for Lands Under Wilderness Review (BLM 7/5/95). The miles of motorized routes in WSAs (see below for miles of route per WSA) are only conditionally open to vehicle use. If Congress designates the area as wilderness, the routes will be closed. In the interim, if use and/or non-compliance are found through monitoring efforts to impair the area's suitability for wilderness designation, BLM would take further action to limit use of the routes, or close them. The continued use of these routes, therefore, is based on user compliance and non-impairment of wilderness values.

### Behind the Rocks WSA (12,635 acres)

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Designate the majority of the Behind the Rocks WSA as closed to OHV use. About 3.55 miles of inventoried way are designated. | Designate the Behind the Rocks WSA as closed to OHV use. No miles of route are designated. | Designate a portion of the Behind the Rocks WSA as closed to OHV use (11,822 acres). Designate OHV use in the remainder of the WSA as limited to designated routes (813 acres, with 0.9 miles of designated route). | Designate the Behind the Rocks WSA as limited to designated routes (with 0.9 miles of designated routes). |

### Black Ridge (52 acres) and Lost Spring Canyon (1,624 acres) WSAs
**Note: Most of the original Black Ridge WSA was designated Wilderness with the creation of the McInnis Canyon NCA. Most of the original Lost Spring Canyon WSA has been incorporated into Arches National Park.**

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Designate Black Ridge and Lost Spring Canyon WSAs as limited to inventoried routes, with 0.25 miles of route designated in Lost Spring Canyon WSA and 0 miles of route designated in Black Ridge WSA. | Designate Black Ridge and Lost Spring Canyon WSAs as closed to OHV use, with 0.25 miles of route designated in Lost Spring Canyon WSA and 0 miles of route designated in Black Ridge WSA. | Designate Black Ridge and Lost Spring Canyon WSAs as limited to designated routes, with 0.25 miles of route designated in Lost Spring Canyon WSA and 0 miles of route designated in Black Ridge WSA. | Same as the Proposed Plan. |

### Desolation Canyon (81,603 acres), Floy Canyon (72,605 acres), Flume Canyon (50,800 acres), Coal Canyon (60,755 acres), Mill Creek Canyon (9,780 acres), Negro Bill Canyon (7,820 acres), and Spruce Canyon (20,990 acres) WSAs
**Note: Acreage of Desolation Canyon WSA is for the MPA portion only. Remainder of this WSA is managed by the Price Field Office. Acreage of Flume Canyon WSA includes 2,750 acres in areas administered by the Vernal Field Office.**

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Designate these WSAs as limited to inventoried routes, with: <br>• 8.2 miles of inventoried way designated in Desolation Canyon WSA. <br>• 23.5 miles of inventoried way designated in Floy Canyon WSA. <br>• 10.1 miles of inventoried way designated in Flume Canyon WSA. <br>• 8.0 miles of inventoried way designated in Coal Canyon WSA. <br>• 1.8 miles of inventoried way designated in Mill Creek Canyon WSA. <br>• 3.5 miles of inventoried way designated in Negro Bill Canyon WSA. <br>• 1.0 mile of inventoried way designated in Spruce Canyon WSA. | Designate these WSAs as closed to OHV. No miles of route would be designated. | Same as Alternative B. | Designate these WSAs as limited to designated routes, with <br>• 1.5 miles of inventoried way designated in Floy Canyon WSA. <br>• 1.5 miles of inventoried way designated in Coal Canyon WSA. <br>• 1.4 miles of inventoried way designated in Mill Creek Canyon WSA. <br>• 1.1 miles of inventoried way designated in Negro Bill Canyon WSA. |

### Westwater Canyon WSA (31,160 acres)

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Designate the Westwater Canyon WSA as limited to inventoried routes, with 22.5 miles of inventoried way designated. | Designate the Westwater Canyon WSA as closed to OHV, with no miles of route designated. | Designate a portion of the Westwater Canyon WSA as closed to OHV (23,690 acres). Designate the remainder of the WSA as limited to designated routes, | Designate the Westwater Canyon WSA as limited to designated routes, with 8.4 miles of route designated. |

BLM_0009909

**Table 2.1.  MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | with zero miles designated (7,470 acres). | |
|---|---|---|

| SPECIAL STATUS SPECIES |
|---|

**Goals and Objectives:**

- Maintain, protect, and enhance habitats (including but not limited to designated critical habitat) of Federally listed threatened, endangered, or candidate plant or animal species to actively promote recovery to the point that they no longer need protection under the Endangered Species Act.
- Maintain, protect, and enhance habitats of BLM (State) Sensitive plant and animal species to prevent the listing of these species under the Endangered Species Act.
- Implement management strategies that restore degraded riparian communities; protect natural flow requirements; protect water quality; manage for stable, non-eroding banks; and manage for year-round flows where applicable.
- Allow or participate in research of threatened and endangered (T&E) and Sensitive species and their habitats.
- Avoid practices that permanently convert sagebrush shrubland to invasive species.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

As required by the Endangered Species Act:

- Implement recovery actions identified in Recovery Plans and in Conservation Agreements, Plans and Strategies in coordination with U.S. Fish and Wildlife Service (USFWS), Utah Division of Wildlife Resources (UDWR), and other interested entities. The BLM would be an active participant in all recovery implementation teams.
- The protection of habitat for listed and non-listed plant and animal species would be considered prior to authorizing any actions that could alter or disturb such habitat.
- No management action would be permitted on public lands that would jeopardize the continued existence of plant or animal species that are listed or are officially proposed or are candidates for listing as T&E.
- Surveys of habitat or potential habitat for special status species (including any sensitive species under consideration for formal designation as T&E) would be made prior to taking any action that could affect these species. Surveys would be conducted using protocols established for potentially affected species.
- BLM would conduct or cooperate in surveys to determine the extent of listed and non-listed plant and animal species and their habitat or potential habitat. Any listed or non-listed special status species survey must be conducted by qualified biologists, botanists, or ecologists that have been approved by the BLM.
- Monitoring, using approval protocol, would be required on listed and non-listed special status species habitat that may be affected by BLM authorization of any activities within that habitat.
- Follow current and future recovery plans and manage habitat for T&E and BLM Sensitive species:
  - Colorado Squawfish Recovery Plan.
  - Colorado Pikeminnow Recovery Goals: amendment and supplement to the Colorado Squawfish Recovery Plan.
  - Humpback Recovery Plan.
  - Humpback Chub Recovery Goals: amendment and supplement to the Humpback Recovery Plan.
  - Bonytail Recovery Plan.
  - Bonytail Recovery Goals: amendment and supplement to the Bonytail Recovery Plan.
  - Razorback Sucker Recovery Plan.
  - Razorback Recovery Goals: amendment and supplement to the Razorback Sucker Recovery Plan.
  - Black-footed Ferret Recovery Plan.
  - Northern States Bald Eagle Recovery Plan.
  - Recovery Plan for the Mexican Spotted Owl.
  - Recovery Plan Southwestern Willow Flycatcher.
- Support and implement special status plant and animal Species Management Plans. Coordinate actions with UDWR and other involved entities. Support population and habitat monitoring.
- Support and implement current and future special status plant and animal species Conservation Plans, Strategies, and Agreements. Coordinate actions with USFWS and other involved entities. Support population and habitat monitoring. As of 2005, Conservation Plans Strategies and Agreements include:
  - Colorado River Cutthroat Trout Conservation Agreement and Strategy Conservation Agreement for the Roundtail Chub, Bluehead Sucker and Flannelmouth Sucker (see Map 2-17).
  - Follow current and future Conservation Measures and Best Management Practices (BMP) for Federally Listed Species (see Appendix K). Species include but are not limited to: Jones Cycladenia, Mexican Spotted Owl, Southwestern Willow Flycatcher, Bald Eagle, and the Endangered Fish of the Colorado River.
- Work with UDWR to implement the Utah Wildlife Action Plan (UDWR 2005a) to coordinate management actions that will conserve native species and prevent the need for additional listings.
- Mitigate all unavoidable habitat losses for special status species as required by policy or law.
- Avoid construction of new roads within listed and non-listed special status plant and animal species habitats.
- Apply lease notices for listed plant and animal species as determined by Section 7 consultation between BLM and USFWS. Apply appropriate lease notices for any non-listed special status plant and animal species that occur or could potential occur applicable proposed lease areas.
- Develop cooperative agreements with other agencies or entities to inventory and/or monitor existing or potential habitat for listed and non-listed special status plant and animal species.
- Plan and implement assessment and monitoring plans for T&E and BLM Sensitive species.
- Participate in the Colorado River Fishes Recovery and Implementation Program.
- Coordinate with USFWS and UDWR to allow for the reintroduction of T&E and BLM Sensitive species into historic or suitable range. These reintroductions would be analyzed with site-specific NEPA.
- Allow translocations and population augmentation of special status species to aid in conservation and recovery efforts. Implement necessary habitat manipulations and monitoring to ensure successful translocation efforts.
- Apply environmental best management practices (BMPs) to all oil and gas operations in accordance with WO IM 2007-021 and the latest version of the "Goldbook" (see Appendix C).

**Mexican Spotted Owl (MSO):**

- If BLM determines that a proposed action may affect MSO or its habitat, consultation with the USFWS would be initiated (see Map 2-18).

BLM_0009910

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

- Monitor and protect known Protected Activity Center (PAC) sites according to USFWS recommendations and MSO Recovery Plan.
- Manage habitat for MSO according to USFWS and UDWR recommendations and recovery plans.
- Develop cooperative agreements with other agencies and entities to inventory and monitor existing potential habitat and annually schedule assessment plans of MSO habitat to determine quality of habitat and presence of species.
- Protect occupied and potential habitat, including designated critical habitat for the MSO, by applying the standard terms and conditions developed in consultation with the USFWS for oil and gas leasing and other surface-disturbing activities (see Standard Terms and Conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C). These stipulations would preclude temporary activities within designated critical habitat from March 1 through August 31. Permanent actions are prohibited year-round within 0.5 miles of a PAC.

**Southwestern Willow Flycatcher (SWFL):**

- If BLM determines that a proposed action may affect SWFL or its habitat, consultation with the USFWS would be initiated.
- Monitor and protect known nesting sites according to USFWS recommendations and SWFL Recovery Plan.
- Manage habitat for SWFL according to USFWS and UDWR recommendations and recovery plans; avoid loss or disturbance of suitable riparian habitat.
- Develop cooperative agreements with other agencies and entities to inventory and monitor existing potential habitat and annually schedule assessment plans of SWFL habitat to determine quality of habitat and presence of species.
- Protect SWFL and their habitat by applying the standard terms and conditions developed in consultation with the USFWS for oil and gas leasing and other surface-disturbing activities (see Standard Terms and Conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C) within suitable habitat. These stipulations would preclude activities within a 100-m buffer of suitable habitat year long. Activities within 0.25 miles of occupied breeding habitat would not occur during the breeding season, May 1 through August 15.

**Bald Eagle:**

- If BLM determines that a proposed action may affect bald eagles or its habitat, consultation with the USFWS would be initiated.
- Acquire lands with roost and nest sites through land exchange, purchase or donation.
- Conduct assessments of wintering bald eagle habitat to delineate essential winter habitat and to develop necessary protective measures.
- Monitor nesting territories annually during breeding season (generally January 1 through August 31).
- Protect bald eagle nest sites by applying the standard terms and conditions developed in consultation with the USFWS for oil and gas leasing and other surface-disturbing activities (see Standard Terms and Conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C) within 1.0 mile of documented nest sites (2,439 acres). These stipulations would preclude surface-disturbing activities within a 1.0 mile radius of nest sites from January 1 through August 31 (see Map 2-19). No permanent structures would be allowed within 0.5 miles of known bald eagle nest sites year-round. Deviations may be allowed only after appropriate levels of consultation and coordination with the USFWS.
- Protect bald eagle winter habitat by applying the standard terms and conditions developed in consultation with the USFWS for oil and gas leasing and other surface-disturbing activities (see Standard Terms and Conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C) within 0.5 mile of winter roost areas. These stipulations would preclude activities and permanent structures within a 0.5 mile radius of winter roost sites from November 1through March 31 (see Map 2-19). No permanent structures would be allowed within 0.5 mile of winter roost sites, if the structure would result in the habitat becoming unsuitable for future winter roosting by bald eagles.

**Sage-grouse:**

- Advance the conservation of Greater sage-grouse as well its habitat in accordance with the BLM National Sage-grouse Habitat Conservation Strategy to avoid contributing to its listing under the Endangered Species Act (see Map 2-20).
- Consistent with RMP goals and objectives, utilize and apply, as needed, the following plans as part of implementing the BLM's National Sage-grouse Habitat Conservation Strategy, Strategic Management Plan for Sage-grouse (UDWR 2002), Western Association of Fish and Wildlife Agencies, Conservation Assessment of Greater Sage-grouse and Sagebrush Habitats (Connelly et al. 2004), Greater Sage-grouse Comprehensive Conservation Strategy (WAFWA 2006), and the Gunnison Sage-grouse Range-wide Conservation Plan. Follow The Gunnison Sage-grouse Range-wide Conservation Plan (GSRSC 2005) for suggested management practices within 4 miles of active Gunnison sage-grouse leks.
- Work cooperatively with UDWR; universities; State, county, and local agencies; and private organizations to develop expanded data; assist with analysis; identify important habitat and potential restoration areas and treatments; and form cooperative agreements with other agencies and organizations to inventory sage-grouse densities and identify suitable habitat for expansion.
- Develop and implement suitable sage-grouse habitat restoration projects.
- Allow for translocation of sage-grouse in suitable unoccupied habitat.

**White-tailed and Gunnison Prairie Dogs:**

- The White-tailed prairie dog and the Gunnison prairie dog are BLM and State sensitive species; translocations of these species would be considered in suitable unoccupied habitats (see Map 2-21).
- Manage both prairie dog species and their habitats in coordination with the UDWR. Apply habitat management guidance and population monitoring strategies as recommended in the newly developed multi-agency White-tailed and Gunnison's Prairie Dog Management Plan.
- Develop cooperative agreements with other agencies to inventory prairie dog densities and identify suitable habitat for expansion.

**Colorado River Endangered Fish:**

- No surface-disturbing activities within the 100-year floodplain of the Colorado River, Green River, and at the confluence of the Dolores and Colorado Rivers would be allowed. Any exceptions to this requirement would require consultation with the USFWS. Restrictions on surface disturbance within this critical habitat would be developed through this consultation process (see Map 2-17).

**Golden Eagle:**

- Known golden eagle nest sites would be protected according to the Bald and Golden Eagle Protection Act amended in 1978.
- Acquire lands with nest and roost sites through land exchange or acquisition.
- Conduct assessments of wintering golden eagle habitat.
- Protect golden eagle nest sites and habitat (12,902 acres) by applying the standard terms and conditions developed in consultation with the USFWS for oil and gas leasing and other surface-disturbing activities (see Standard Terms and Conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C). These stipulations would preclude surface-disturbing activities within 0.5 miles of documented nest sites from February 1 to July 15 (see Map 2-19).

**Burrowing Owl:**

- Protect burrowing owls by applying the standard terms and conditions developed in consultation with the USFWS (see Appendix O) for oil and gas leasing and other surface-disturbing activities (see Standard Terms and Conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C) by precluding surface-disturbing activities within 0.25 miles of known nests from March 1 through August 31 (see Map 2-22).
- Domestic sheep camps, temporary watering sites, and salt and mineral blocks would not be located within 0.25 miles of occupied burrowing owl nests from March 1 through August 31.

BLM_0009911

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

- Maintain ground squirrel and prairie dog colonies to provide habitat and nesting burrows for burrowing owls.
- The species would be managed under the guidance provided by the Raptor Best Management Practices (BMPs; see Appendix O), which includes implementation of spatial and seasonal buffers to protect nesting raptors and their habitats.

**Kit Fox:**
- Protect kit fox by precluding surface-disturbing activities within 200 m of a kit fox den.

**Ferruginous Hawk:**
- Manage ferruginous hawk nesting and foraging habitat by applying the standard terms and conditions developed in consultation with the USFWS (see Appendix O) for oil and gas leasing and other surface-disturbing activities (see Standard Terms and Conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C) precluding surface-disturbing activities within 0.5 miles of active nests from March 1 through August 1 (see Map 2-22).
- Domestic sheep camps, temporary watering sites, and salt and mineral blocks would not be located within 0.5 miles of occupied ferruginous hawk nests from March 1 through August 1.
- The species would be managed under the guidance provided by the Raptor BMPs (see Appendix O), which includes implementation of spatial and seasonal buffers to protect nesting raptors and their habitats.

**Yellow-billed Cuckoo:**
- Avoid loss or disturbance of yellow-billed cuckoo nesting and manage yellow-billed cuckoo nesting and foraging habitat by applying the standard terms and conditions developed in consultation with the USFWS for oil and gas leasing and other surface-disturbing activities (see Standard Terms and Conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C). These stipulations preclude surface-disturbing activities within 100 m of yellow-billed cuckoo habitat within riparian areas from May 15 through July 20.
- Compliance with BLM Riparian Policy would restrict surface disturbance within 100 m of riparian habitat and would therefore protect nesting habitat for yellow-billed cuckoo.

**Jones Cycladenia (Cycladenia humilis var. jonesii):**
- Require specific site inventories for all surface disturbing projects in areas with suitable *Cycladenia humilis* var. *jonesii*.
- BLM would restrict activities, in suitable *Cycladenia humilis* var. *jonesii* habitat. Restrictions include limiting motorized travel to designated routes, precluding surface disturbing activities within 300 feet of plants and suitable habitat, and precluding construction activities from May 15th through June 30th within occupied habitat (see Standard Terms and conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C). Other restrictions include avoiding road construction, land disposal, and utilities in this habitat, as well as avoiding grazing activities such as trailing, salting, watering and herding.

**California Condor**
- Within potential habitat for the California Condor, surveys will be required prior to operations unless species occupancy and distribution information is complete and available.
- Surface disturbing activities will not occur within 1.0 mile of nest sites during the breeding season of August 1 to November 30 or within 0.5 mile of established roosting sites (see Standard Terms and Conditions [Lease Notices] which are Required to Protect Special Status Species and to Comply with the Endangered Species Act, Appendix C).
- No permanent infrastructure will be placed within 1.0 mile of nest sites and within 0.5 miles of established roosting sites.

| | | **Greater Sage-grouse Habitats** | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Not specified. | About 12,850 acres of pre-settlement habitat (see Map 2-20) would be subject to controlled surface use and timing limitation stipulations (if sage-grouse occupation is identified by BLM in cooperation with UDWR) as follows: | About 3,068 acres of potential habitat would be subject to controlled surface use and timing limitation stipulations (if sage-grouse occupation is identified by BLM in cooperation with UDWR) as follows: | About 1,986 acres of potential brooding habitat would be subject to controlled surface use and timing stipulations (if sage-grouse occupation is identified by BLM in cooperation with UDWR) as follows: |
| | - **Leks (within 2 miles of active strutting grounds):** apply controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities (see Appendix C). These stipulations would preclude surface-disturbing activities from March 1 to May 15. Allow no permanent above-ground facilities within the 2 mile buffer year-round. | - **Leks (within 2 miles of active strutting grounds):** apply controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities (see Appendix C). These stipulations would preclude surface-disturbing activities from March 1 to May 15. Allow no surface-disturbing activities year-round within 0.5 mile buffer of active leks. Allow no permanent above-ground facilities within the two mile buffer. | - **Leks (within 0.25 miles of active strutting grounds):** apply controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities (see Appendix C). These stipulations would preclude surface-disturbing activities from March 1 to May 15. Allow no permanent above-ground facilities within the 0.25 mile buffer year-round. |
| | - **Nesting and Brood-Rearing Habitat:** apply a timing limitation stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C). This stipulation would preclude activities from March 15 to July 15. | - **Nesting and Brood-Rearing Habitat:** apply a timing limitation stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C). This stipulation would preclude surface-disturbing activities from March 15 to July 15. | - **Nesting and Brood-Rearing Habitat:** apply a timing limitation stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C). This stipulation would preclude activities from March 15 to July 15. |
| | - **Winter Habitat:** apply a timing limitation stipulation to oil and gas leasing and other surface-disturbing activities (see Appendix C). This stipulation would preclude surface-disturbing activities from November 15 to March 14 on 12,850 acres. | - **Winter Habitat:** apply a timing limitation stipulation to oil and gas leasing and other surface-disturbing activiies (see Appendix C). This stipulation would preclude surface-disturbing activities from November 15 to March 14 on 3,068 acres. | - **Winter Habitat:** apply a timing limitation stipulation to oil and gas leasing and other surface-disturbing activities (see Appendix C). This stipulation would preclude surface-disturbing activities from November 15 to March 14 on 1,986 acres. |
| | Any surface occupancy that would require or result in loss or fragmentation of 12,850 acres of habitat would be avoided or minimized. If surface occupancy cannot be avoided, BLM would recommend that sagebrush habitat be reclaimed. BLM would require onsite mitigation measures that prevent unnecessary or undue degradation to protect surface resources in accordance | Any surface occupancy that would require or result in loss or fragmentation of 3,068 acres of habitat would be avoided or minimized. If surface occupancy cannot be avoided, BLM would recommend that sagebrush habitat be reclaimed. BLM would require onsite mitigation measures that prevent unnecessary or undue degradation to protect surface resources in accordance | Any surface occupancy that would require or result in loss or fragmentation of 1,986 acres of habitat would be avoided or minimized. If surface occupancy cannot be avoided, BLM would recommend that sagebrush habitat be reclaimed. BLM would require onsite mitigation measures that prevent unnecessary or undue degradation to protect surface resources in accordance |

BLM_0009912

### Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

| | with 40 CFR 1508.20. | with 40 CFR 1508.20. | with 40 CFR 1508.20. |
|---|---|---|---|
| **Gunnison Sage-grouse Habitat** | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Not specified. | About 246,107 acres of pre-settlement habitat (See Map 2-20) would be subject to controlled surface use and timing limitation stipulations (if sage-grouse occupation is identified by BLM in cooperation with UDWR) as follows: <br><br> • **Lek habitat (within 2.0 miles of active strutting ground):** <br> Apply controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities (see Appendix C). This stipulation would preclude permanent surface occupancy within 2.0 miles of an active lek. No surface-disturbing activities would be allowed from March 20 to May 15. <br> Allow no permanent above-ground facilities within the buffer. <br> Prohibit or limit year-round construction of fences. Where opportunity exists, remove existing fences. <br> Prohibit construction of power lines or other structures. <br> Avoid issuing ROWs that would result in permanent above-ground facilities within 2.0 miles of a lek. <br> Human caused disturbances would be avoided from March 20 to May 15. <br> • **In year-round habitat (within 6.0 miles of active lek):** avoid construction of fences, power lines, and tall structures. | About 175,727 acres of current potential habitat would be subject to controlled surface use and timing limitation stipulations (if sage-grouse occupation is identified by BLM in cooperation with UDWR) as follows: <br><br> • **Leks (within 2 miles of active strutting grounds):** apply controlled surface use and timing limitation stipulations for oil and gas leasing and other surface-disturbing activities (see Appendix C). These stipulations would preclude surface-disturbing activities from March 20 to May 15. Allow no surface-disturbing activities year-round within 0.5 mile buffer of active leks. <br> Allow no permanent above-ground facilities within the two mile buffer. <br> Prohibit or limit year-round construction of fences. Where opportunity exists, remove existing fences. <br> Prohibit construction of power lines or other structures. <br> Avoid issuing ROWs that would result in permanent above-ground facilities within 0.5 miles of a lek. <br> Human caused disturbances would be avoided from March 20 to May 15. <br> • **In year-round habitat (within 4.0 miles of active lek):** minimize fence construction and avoid overhead power line construction where it would provide new raptor hunting perches and the possibility of collision for sage-grouse. Fences deemed necessary to construct should be built with materials that maximize visibility for sage-grouse to avoid collision. | About 41,620 acres of potential brooding habitat would be subject to controlled surface use and timing limitation stipulations (if sage-grouse occupation is identified by BLM in cooperation with UDWR) as follows: <br><br> • **Lek habitat (within 0.25 miles of active strutting ground):** <br> Apply controlled surface use and timing limitation stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C). These stipulations would preclude permanent surface occupancy within 0.25 miles of an active lek. No surface-disturbing activities would be allowed from March 20 to May 15. <br> Allow no permanent above-ground facilities within the buffer. <br> Prohibit or limit year-round construction of fences. Where opportunity exists, remove existing fences. <br> Prohibit construction of power lines or other structures. <br> Avoid issuing ROWs that would result in permanent above-ground facilities within 0.25 miles of a lek. <br> Human caused disturbances would be avoided from March 20 to May 15. |
| Not specified. | Any surface occupancy that would require or result in loss or fragmentation of 246,107 acres of habitat would be avoided or minimized. If surface occupancy cannot be avoided sagebrush habitat would be reclaimed. BLM would require onsite mitigation measures that prevent unnecessary or undue degradation to protect surface resources in accordance with 40 CFR 1508.20. | Any surface occupancy that would require or result in loss or fragmentation of any of the 175,727 acres of identified Gunnison sage-grouse habitat would be avoided or minimized. If surface occupancy cannot be avoided sagebrush habitat would be reclaimed. BLM would require onsite mitigation measures that prevent unnecessary or undue degradation to protect surface resources in accordance with 40 CFR 1508.20. | Any surface occupancy that would require or result in loss or fragmentation of 41,620 acres of habitat would be avoided or minimized. If surface occupancy cannot be avoided sagebrush habitat would be reclaimed. BLM would require onsite mitigation measures that prevent unnecessary or undue degradation to protect surface resources in accordance with 40 CFR 1508.20. |
| **White-tailed Prairie Dog Habitat** | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Not specified. | Manage 199,505 acres of historic habitat (see Map 2-21) designated by UDWR. Manage 117,481 acres of this habitat as the Cisco White-tailed Prairie Dog Complex ACEC; apply no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) within the ACEC. <br><br> Manage the remaining 82,024 acres of habitat to protect active prairie dog colonies by applying a controlled surface use stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C). This stipulation would preclude surface-disturbing activities within 1,300 feet of these colonies. No permanent above-ground facilities would be allowed within the 1,300-foot buffer. | Manage the contiguous 117,481 acres of historic habitat designated by UDWR. Apply a controlled surface use stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) within 660 feet of active prairie dog colonies. This stipulation would preclude surface-disturbing activities within 660 feet of these colonies. No permanent above-ground facilities would be allowed within the 660-foot buffer. | Manage 31,186 acres of occupied habitat designated by UDWR. Apply a controlled surface use stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) within 660 feet of active prairie dog colonies. This stipulation would preclude surface-disturbing activities within 660 feet of these colonies. No permanent above-ground facilities would be allowed within the 660-foot buffer. |
| **Gunnison Prairie Dog Habitat** | | | |
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| Not specified. | Manage 10,700 acres of habitat designated by UDWR for Gunnison prairie dogs (see Map 2-21). Apply a controlled surface use stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) within 1,300 feet of active prairie dog colonies. This stipulation would preclude surface- | Manage 10,700 acres of habitat designated by UDWR for Gunnison prairie dogs. Apply a controlled surface use stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) within 660 feet of active prairie dog colonies. This stipulation would preclude surface-disturbing | Manage Gunnison prairie dog habitat using standards terms and conditions. |

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | | |
|---|---|---|
| | disturbing activities within 1,300 feet of these colonies. | activities within 660 feet of these colonies. | |
| | No permanent above-ground facilities would be allowed within 1,300 feet of prairie dog colonies. | No permanent above-ground facilities would be allowed within 660 feet of prairie dog colonies. | |
| | Construction of new power lines would be prohibited within 1,300 feet of prairie dog colonies. | Power lines would be avoided within prairie dog colonies; however in the event that power lines are required within colonies, raptor anti-perch devices would be required. | |

<table>
<tr><td colspan="4" align="center"><b>TRAVEL MANAGEMENT</b></td></tr>
<tr><td colspan="4" align="center"><b>Motorized Travel</b></td></tr>
</table>

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

Under the Proposed Plan and under Alternatives A and D, where routes would remain available for motorized use within WSAs, such use could continue on a conditional basis. Use of the existing routes in the WSAs ("ways" when located within WSAs – see Glossary) could continue as long as use of these routes does not impair wilderness suitability, as provided by the Interim Management Policy for Lands Under Wilderness Review (BLM 7/5/95). The miles of motorized routes in WSAs (see page 2-42 and 2-43 for miles of route per WSA) are only conditionally open to vehicle use. If Congress designates the area as wilderness, the routes will be closed. In the interim, if use and/or non-compliance are found through monitoring efforts to impair the area's suitability for wilderness designation, BLM would take further action to limit use of the routes, or close them. The continued use of these routes, therefore, is based on user compliance and non-impairment of wilderness values.*

**Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**

- BLM, in preparing its RMP designations and its implementation-level travel management plans, is following policy and regulation authority found at 43 C.F.R. Part 8340; 43 C.F.R. Subpart 8364; and 43 C.F.R. Subpart 9268.
- Provide opportunities for a range of motorized recreation experiences on public lands while protecting sensitive resources and minimizing conflicts among various users. Identification of specific designated routes would be initially established through the chosen Travel Plan accompanying this RMP (see Appendix G) and may be modified through subsequent implementation planning and project planning on a case-by-case basis. These identified routes would be available regardless of other management actions. These adjustments would occur only in areas with limited route designations and would be analyzed at the implementation planning level. These adjustments would be done through a collaborative process with local government and which would include public review of proposed route changes. Site-specific NEPA documentation would be required for changes to the route designation system.
- All areas would be limited, open, or closed to motorized travel. Limit travel by motorized vehicle on all lands administered by the MFO to designated routes, except for Managed Open Areas, and for areas that are closed to motorized travel (see Maps 2-10-A through 2-10-D; see Appendix G for Travel Plan development).
- BLM could impose limitations on types of vehicle allowed on specific designated routes if monitoring indicates that a particular type of vehicle is causing disturbance to the soil, wildlife, wildlife habitat, cultural or vegetative resources, especially by off-road travel in an area that is limited to designated roads.
- OHV access for game retrieval, antler collection and dispersed camping would only be allowed on designated routes (designated routes/spurs have been identified specifically for dispersed camping). Adherence to the Travel Plan is required for all activities, except where otherwise explicitly permitted.
- Only designated roads and managed open areas are available for motorized commercial and organized group use (see Maps 2-11-B through 2-11-D for route designations by alternatives).
- Where the authorized officer determines that off-road vehicles are causing or would cause considerable adverse impacts, the authorized officer shall close or restrict such areas. The public would be notified as to these closures and restrictions.
- Any routes that are not baseline routes would be signed "Closed" on the ground. Such routes would be considered as impacts to the area's natural character, and use of such routes would be considered cross country use and not allowed. Non-inventoried routes should be rehabilitated.
- Under the Proposed Plan and under Alternatives A and D, where routes would remain available for motorized use within WSAs, such use could continue on a conditional basis. Use of the existing routes in the WSAs ("ways" when located within WSAs – see Glossary) could continue as long as use of these routes does not impair wilderness suitability, as provided by the Interim Management Policy for Lands Under Wilderness Review (BLM 7/5/95). The miles of motorized routes in WSAs (see below for miles of route per WSA) are only conditionally open to vehicle use. If Congress designates the area as wilderness, the routes will be closed. In the interim, if use and/or non-compliance are found through monitoring efforts to impair the area's suitability for wilderness designation, BLM would take further action to limit use of the routes, or close them. The continued use of these routes, therefore, is based on user compliance and non-impairment of wilderness values.

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Continue to manage motorized vehicle travel under the travel designations established in the 1985 Grand RMP as modified by subsequent Federal Register notices published under the authority of 43 CFR 8340 (see Map 2-10-A). Manage 620,212 acres as open to off-road vehicle travel, 1,196,920 acres as OHV travel limited to existing roads and trails (of which 48,169 acres would be OHV travel limited to designated roads and trails and 309,749 acres within WSAs would be limited to inventoried routes) and 5,062 acres as closed to OHV travel. | • 437,424 acres would be closed to OHV travel.<br>• 1,475,074 acres would be limited to designated routes.<br>• 0 acres would be open to cross country travel (see Map 2-10-B). | • 339,298 acres would be closed to OHV travel.<br>• 1,481,334 acres would be limited to designated routes.<br>• Approx. 2,000 acres (White Wash Sand Dunes) would be open to cross country travel (see Map 2-10-C). | • 57,351 acres would be closed to OHV travel.<br>• 1,762,083 acres would be limited to designated routes and/or inventoried routes within WSAs.<br>• 3,064 acres (White Wash Sand Dunes and the Airport Hills) would be open to cross country travel (see Map 2-10-D). |
| Miles of Route: | Designated Routes: | Designated Routes: | Designated Routes: |
| 6,199 miles motorized routes. | 3,328 miles motorized routes. | 3,693 miles motorized routes.[†] | 3,855 miles motorized routes. |
| 199 miles inventoried verified motorized single-track. | 122 miles of full-sized motorized routes converted to motorcycle-only use. | 313 miles for motorcycles (163 miles on inventoried routes and 130 miles on inventoried single-track).[†] | 347 miles for motorcycles (151 miles on inventoried routes and 196 miles on inventoried single-track). |

This is an implementation decision that cannot be protested under the planning regulations. Please see the cover letter for further information.

BLM_0009914

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| Dirt Bike Trail/Route: | Dirt Bike Trail/Route: | Dirt Bike Trail/Route: | Dirt Bike Trail/Route: |
|---|---|---|---|
| Dirt bike route from Colorado State Line to Thompson not designated. | Do not designate dirt bike routes from the Colorado State Line to Thompson, Utah. | *Designate dirt bike route from Colorado State Line to Thompson (see Map 2-11), utilizing 9 miles of single-track and 22 miles of inventoried Grand County roads. These totals are reflected in the mileage under "designated routes."* [1] | Designate 58.3 miles of dirt bike route from the Colorado State Line to Thompson. Portions of this route (48 miles) are considered new and will require site-specific NEPA analysis prior to possible designation and use. The remaining 10 miles of the route would be considered "designated." These totals are reflected in the mileage under "designated routes." |

| Mechanized Recreational Travel (e.g., mountain bikes) | | | |
|---|---|---|---|

**Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**

- Provide opportunities for mechanized travel on all routes open to motorized use.
- Prohibit new bike routes within non-WSA lands managed for wilderness characteristics or within hiking focus areas.
- Limit mechanized travel to designated trails and managed routes for resource protection purposes. Routes that are no longer available for motorized travel may be converted to bike routes upon application of site-specific NEPA analysis.
- Manage approximately 11.2 miles of routes on the following trails for non-motorized use only: Jackson Trail, "Baby Steps," Hunter Canyon Rim, Portal Trail, Hidden Valley, and Porcupine Rim single-track section. (Hidden Valley and Porcupine Rim Trails are subject to IMP.)
- *Identification of specific designated routes would be initially established through the RMP process and may be modified through subsequent planning at the activity plan and project plan levels on a case-by-case basis. These modifications would be analyzed through site-specific NEPA.*

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Continue to manage mechanized travel under closure and restriction notices published in the Federal Register under the authority of 43 CFR 8364.<br><br>Manage 4 miles of route on the following trails for mechanized use:<br>- Jackson Trail.<br>- Portal Trail. | Design and implement up to 75 additional miles of managed mechanized trails. Implement these new system routes solely by converting inventoried routes not designated for motorized travel to non-motorized use, where appropriate, and installing support facilities such as trailheads and route signage. No new single track trails would be considered (see Map 2-11-F(B)). | *Design and implement up to 150 new miles of managed mechanized trails. In addition, convert existing inventoried routes not designated for motorized travel to non-motorized use, where appropriate, and install appropriate support facilities such as trailheads and route signage.[1]*<br><br>*Initially designate the following existing trails for mechanized use (totaling 11.3 miles; see Map 2-11-F(C)):*<br>- *Fisher Mesa (in conjunction with USFS; 5.8 miles).*<br>- *Pothole (on Amasa Back; 1.2 miles).*<br>- *Rockstacker (on Amasa Back; 0.9 miles).*<br>- *Lower Porcupine Singletrack (LPS; 1.4 miles).*<br>- *"Power line" Trail (0.07 miles on public land).*<br>- *Mill Creek Parkway Extension (0.16 miles on public land).* | Design and implement up to 300 new miles of managed mechanized trails. In addition, convert inventoried routes not designated for motorized travel to non-motorized use, where appropriate, and install appropriate support facilities such as trailheads and route signage.<br><br>Same as the Proposed Plan, except also initially designate the following additional trails for mechanized use (totaling 15.5 miles; see Map 2-11-F(D)):<br>- Goldbar Singletrack (4.4 miles)<br><br>This new proposed trail would be analyzed with site-specific NEPA before implementation. |

| Non-mechanized Recreational Travel (e.g., hiking, backpacking, and equestrian) | | | |
|---|---|---|---|

**Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**

- Non-mechanized travel is not restricted on public lands except where limited or prohibited to protect specific resource values, provide for public safety or maintain an identified opportunity.
- Provide opportunities for non-mechanized travel on all routes open to mechanized use and manage routes identified in each alternative to exclude motorized and mechanized use and provide opportunities for non-mechanized travel independent of motorized and mechanized routes.
- Limit non-mechanized travel on specific lands to designated trails and managed routes for resource protection purposes.
- Manage 17 miles of routes on the following trails for non-mechanized use: Amphitheater Loop, Fisher Towers, Negro Bill, Corona Arch, Trough Spring Canyon, Anticline Overlook, Needles Overlook, Windwhistle Nature Trail, Mill Canyon Dinosaur Interpretive Trail, Copper Ridge Sauropod Interpretive Trail, and Sego Canyon Interpretive Trail.
- Identify specific routes through the RMP process. These routes may be modified through subsequent planning at the RMP, activity plan, and project plan levels on a case-by-case basis.
- Work with equestrian groups to identify additional trails for equestrian and hiker use only. These trails would be designated based on site-specific NEPA analysis.

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Not addressed. | - Design and implement up to 25 additional miles of managed non-mechanized trail system consistent with the Travel Plan. Implement these new system routes largely by converting roads to non-mechanized use and installing appropriate support facilities such as trailheads and route signage.<br>- Manage the Hidden Valley Trail as non-mechanized only.<br>- Mark the following existing trails: Castleton, Culvert-Goldbar Loop. Mark a new trail from Onion Creek to Amphitheater Loop. | - Design and implement up to 50 miles of managed non-mechanized trail system consistent with the Travel Plan. Implement these new system routes largely by converting existing, low utilization roads to non-mechanized use and installing appropriate support facilities such as trailheads and route signage.<br>- Mark the following existing trails: Castleton, Culvert-Goldbar Loop. Mark a new trail from Onion Creek to Amphitheater Loop. | - Design and implement up to 100 additional miles of managed non-mechanized trail system consistent with the Travel Plan. Implement these new system routes largely by converting existing, low utilization roads to non-mechanized use and the installation of appropriate support facilities such as trailheads and route signage.<br>- In addition to the trails proposed in the Proposed Plan, work to gain public access to the Heavenly Stairway Trail. |

| Equestrian Use: | Equestrian Use: | Equestrian Use: | Equestrian Use: |
|---|---|---|---|

BLM_0009915

### Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives

| | | | |
|---|---|---|---|
| All public lands within the field office are presently available for equestrian use. Equestrian use in Negro Bill Canyon has been discouraged because the sandy hiking trail is easily damaged by equestrian use.<br><br>The Mill Creek Canyon Plan specifies that commercial equestrian use would not be renewed. | Same as the Proposed Plan, except the following additional equestrian trails would be developed. Hikers would also be allowed on this trail, but there would be no motorized or mechanized vehicles allowed:<br><br>• Ten Mile from Dripping Springs to Green River. | The following trails would be managed for equestrian use. Hikers would also be allowed on these trails, but there would be no motorized or mechanized vehicles allowed:<br><br>• Onion Creek Benches (Colorado Riverway SRMA).<br>• Ida/Stearns Gulch Equestrian Trail System.<br>• Castle Creek Equestrian Trail.<br>• Rattlesnake Trail above Nefertiti Boat Launch.<br>• Seven Mile Canyons.<br>• Red Rock Horse Trail (Ken's Lake to Johnson's Up-on-Top). | Same as the Proposed Plan. |

| **VEGETATION** |
|---|

**Goals and Objectives:**

• Manage vegetation resources for desired future conditions (DFC) ensuring ecological diversity, stability, and sustainability, including the desired mix of vegetation types, structural stages, and landscape/riparian function and provide for livestock grazing and for native plant, fish, and wildlife habitats (see Appendix L for Desired Future Conditions for Vegetation).
• Maintain existing vegetation treatment areas as appropriate.
• Control invasive and non-native weed species and prevent the introduction of new invasive species by implementing a comprehensive weed program (as per national guidance and local weed management plans in cooperation with state, federal, and affected counties), including: coordination with partners; prevention and early detection; education; inventory and monitoring; and using principles of integrated weed management.
• Manage for vegetation restoration, including control of weed infestations and control of invasive and undesirable nonnative species.
• Maintain, protect and enhance special status plant and animal habitats in such manner that the potential need to consider any of these species for listing as threatened or endangered under the Endangered Species Act does not arise.
• Develop management prescriptions for all surface-disturbing resource uses during times of extended drought (see Adaptive Drought Management, below).
• Maintain or enhance the integrity of current sagebrush and sage steppe communities and identify areas in need of restoration. Initiate restoration or rehabilitation efforts to ensure sustainable populations of sage-grouse, mule deer and other sagebrush obligate species.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

• Utilize the BLM National Sage-grouse Conservation Strategy – Guidance for Management of Sagebrush Plant Communities for Sage-Grouse Conservation, when applicable, in the development and implementation of vegetation and land treatments, livestock manipulation techniques, fire projects, energy exploration and development and any surface-disturbing activity within sagebrush and sage steppe communities.
• Sagebrush/steppe communities would be a high priority for wildfire suppression, emergency stabilization and fuel reduction to avoid catastrophic fires in these communities.
• Reclaim and restore up to 257,809 acres of sagebrush habitat and shrub-steppe ecosystems where appropriate in accordance with the BLM sagebrush conservation guidance. Reclamation/restoration would be undertaken in cooperation with the Utah Partners for Conservation and Development (UPCD) and may include removing surface material, re-contouring, spreading topsoil, seeding or planting seedlings, and/or changing livestock grazing strategies, such as, changing season of use, type of use, removing or reducing spring grazing, reducing livestock numbers, reducing grazing intensity, improving distribution, requiring rest rotation practices, or exclusion. Work in coordination with UDWR to reduce wildlife numbers, as necessary, to restore sagebrush habitat.
• Provide opportunities for seed gathering of various vegetation types while protecting other resources.
• Restoration and rehabilitation would use native seed-mixes wherever possible. Non-native species may be used as necessary for stabilization or to prevent invasion of noxious or invasive weed species.
• Gather necessary vegetation information and continue monitoring to assess if planning objectives are being met.
• Utilize the techniques and methods for vegetation treatments identified in the Utah ROD for Vegetation Treatments using Herbicides on Bureau of Land Management Lands in Seventeen Western States (2007).
• Control noxious weed species and prevent the infestation and spread of invasive species. Develop cooperating agreements with other Federal, State, local and private organizations to control invasive and noxious weed species.
• Reduce tamarisk and Russian olive where appropriate using allowable vegetation treatments. Restore riparian habitat to native willow and cottonwood communities.
• Where appropriate, replant cottonwoods and willow subsequent to wildland fire or other disturbance in riparian areas.
• Promote science and research opportunities in the San Arroyo Area/Exclosures, Sagers Watershed Area/Exclosures and Big Flat Area/Exclosures (approximately 300 acres each).
• Establish Lower South Fork of Seven Mile Canyon as a Riparian/Wetland Demonstration Area for the improvement and restoration of the riparian area.
• Insect pests would be treated in coordination with the State of Utah, other Federal agencies, affected counties, adjoining private land owners and other directly affected interests.
• See Livestock Grazing for other vegetation treatments.

**Adaptive Drought Management:**

Establish criteria for restricting activities during drought (see Appendix M for Drought Classification System) based on the following measures/parameters:

*Severe (D2):*

• Send drought letters.
• UDWR coordination for big game herd control.
• Prepare local seasonal precipitation graphs.
• Suspend or limit seed collecting activities.

BLM_0009916

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

*Extreme (D3):*
- No new surface-disturbing activities in areas with sensitive soils (subject to valid existing rights or actions associated with other valid permitted activities; see oil and gas Appendix C for definition of surface-disturbing activities).
- Changes in livestock use would be based on site-specific data on those allotments that are affected by drought.
- OHV use and competitive motorized events would be confined to designated roads and routes within the open OHV area.
- Require additional erosion-control techniques/BMPs for surface-disturbing activities (e.g., hydromulching).
- Limit prescribed burns and vegetation treatments.

*Exceptional (D4):*
- Changes in livestock use will be based on site-specific data on those allotments that are affected by drought.
- No new surface-disturbing activities (subject to valid existing rights or actions associated with other valid permitted activities).
- Consider closing areas to public entry.

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| Not specified. | Avoid or minimize to the extent possible the loss of sagebrush/steppe habitat from BLM-initiated or authorized actions. The BLM recommends that loss of sagebrush/steppe habitat essential to wildlife (e.g., sage-grouse, mule deer, and sagebrush obligate species) be reclaimed or mitigated off-site. | Avoid or minimize to the extent possible the loss of sagebrush/steppe habitat from BLM-initiated or authorized actions. The BLM recommends that loss of sagebrush/steppe habitat essential to wildlife (e.g., sage-grouse, mule deer, and sagebrush obligate species) be reclaimed or mitigated off-site. | Same as the Proposed Plan |

| VISUAL RESOURCE MANAGEMENT (VRM) |
|---|

**Goals and Objectives:**
- Manage public lands in a manner that protects the quality of scenic values.
- Recognize and manage visual resources for overall multiple use, filming, and recreational opportunities for visitors to public lands.
- Manage BLM actions to preserve those scenic vistas that are most important.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

WSAs and designated wilderness would be designated as VRM Class I.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**
- Wild and Scenic River (WSR) segments recommended as suitable for Wild would be designated as VRM Class I, Scenic would be designated as VRM Class II, and Recreational would be managed the same as the underlying VRM management class.
- For all VRM classes, all resource uses and management activities would be required to meet VRM objectives. However, recreation developments in the immediate foreground of Key Observation Points (KOPs) in VRM Class I and II areas would require special consideration to meet both recreational and VRM objectives. These facilities often create more contrast than would be acceptable; however this contrast would be allowed if the facilities are part of the expected image of the public being served. The contrast should be allowed only to the extent needed for the function of the facility, which should reflect design excellence and be a positive element of the built environment. Structures should blend into the landscape while retaining functionality.
- Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) to all areas designated as VRM Class I.
- Apply a controlled surface use stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) to all areas designated as VRM Class II. This would require surface-disturbing activities to meet the objectives of VRM Class II.
- Designated utility corridors within VRM Class II areas would be designated as VRM Class III only for utility projects.
- Necessary road maintenance could occur regardless of VRM class.
- Public lands within the viewshed of Arches National Park would be designated as VRM Class II.
- See Maps 2-23-A through 2-23-D for VRM Management Classes, by alternative.

| Alternative A (No Action) | Alternative B | PROPOSED PLAN | Alternative D |
|---|---|---|---|
| VRM management classes identified only for Canyon Rims (33,037 acres designated as VRM Class II; 67,236 acres designated as VRM Class III). Interim management classes would be assigned through site-specific analysis based on the current VRM inventory. | Areas with high potential for oil and gas development (Big Flat/Hatch Point/Lisbon Valley and Eastern Bookcliffs/Greater Cisco) would be designated according to the underlying VRM inventory (VRM Classes II and III). | Areas with high potential for development of oil and gas (Big Flat/Hatch Point/Lisbon Valley, and Eastern Bookcliffs/Greater Cisco) would be designated as VRM Class III with the exception of those portions of SRMAs and ACECs that have more stringent VRM classifications. | Areas with high potential for oil and gas (Big Flat/Hatch Point/Lisbon Valley, and Eastern Bookcliffs/Greater Cisco) development would be designated as VRM Class III or IV with the exception of the more stringent VRM classification established for the rims of the Canyon Rims Recreation Area. |
| Wilderness, WSAs, and Negro Bill Outstanding Natural Area would be designated as VRM Class I. | The following ACECs would be designated as VRM Class I: Behind the Rocks, Canyon Rims, Colorado River, Highway 279/Shafer Basin/Long Canyon, Mill Creek Canyon, Upper Courthouse, Westwater and Wilson Arch. Manage the remaining ACECs according to the underlying VRM inventory class.

Scenic driving corridors would be designated as VRM Class II within a specified viewshed not to exceed 1 mile from centerline. Apply a no surface occupancy stipulation for oil and gas leasing and preclude other surface-disturbing activities (see Appendix C) within 1 mile of scenic driving corridors. | Manage the Shafer Basin portion of the Highway 279/Shafer Basin/Long Canyon ACEC as VRM Class I.

Scenic driving corridors would be designated as VRM Class II within a specified viewshed not to exceed 0.5 mile from centerline. Apply a controlled surface use stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) within 0.5 mile of scenic driving corridors.

Manage the following areas with high-quality visual resources as VRM Class II: Sand Flats, Gemini Bridges/Monitor and Merrimac/Poison Spider/Goldbar/Corona Arch area, the Colorado, Dolores and Green River corridors, Tusher | Scenic driving corridors would be designated as VRM Class II within a specified viewshed not to exceed 0.25 mile from centerline. Apply a controlled surface use stipulation for oil and gas leasing and other surface-disturbing activities (see Appendix C) within 0.25 mile of scenic driving corridors.

Manage the following areas with high quality visual resources as VRM Class II: Sand Flats, the Colorado, Dolores and Green River corridors, Tusher Canyon (Bookcliffs), the Colorado Riverway, Matt Martin Point, areas bordering Arches National Park, Hatch Wash, the rims of Canyon Rims, the Mill Creek area, and Beaver Creek (see Map 2-23-D). |

BLM_0009917

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

| | Manage the following areas with high quality visual resources as VRM Class II: Sand Flats, Gemini Bridges/Monitor and Merrimac/Poison Spider/Goldbar/ Corona Arch area, the Colorado, Dolores and Green River corridors, Tusher Canyon (Bookcliffs), areas of the Colorado Riverway not within the Colorado River ACEC, Matt Martin Point, areas bordering Arches National Park, Kane Creek, Hatch Wash, the rims of Canyon Rims and the eastern Book Cliffs (see Map 2-23-B). | Canyon (Bookcliffs), the Colorado Riverway, Matt Martin Point, areas bordering Arches National Park, Kane Creek, Hatch Wash, the rims of Canyon Rims, the Mill Creek and Behind the Rocks ACECs, Beaver Creek, and Long Canyon (see Map 2-23-C). | |
|---|---|---|---|
| 349,110 acres would be designated as VRM Class I. | 453,462 acres would be designated as VRM Class I. | 358,911 acres would be designated as VRM Class I. | 349,617 acres would be designated as VRM Class I. |
| 401,015 acres inventoried as VRM Class II, of which 33,037 acres would be designated as VRM II. | 373,647 acres would be designated as VRM Class II. | 365,566 acres would be designated as VRM Class II. | 245,773 acres would be designated as VRM Class II. |
| 800,782 acres inventoried as VRM Class III, of which 67,236 would be designated as VRM III. | 784,246 acres would be designated as VRM Class III. | 829,158 acres would be designated as VRM Class III. | 956,724 acres would be designated as VRM Class III. |
| 271,356 acres inventoried as VRM Class IV. | 210,532 acres would be designated as VRM Class IV. | 268,133 acres would be designated as VRM Class IV. | 269,641 acres would be designated as VRM Class IV. |

## WILDLIFE AND FISHERIES

**Goals and Objectives:**

- Maintain, protect, and enhance habitats to support natural wildlife diversity, reproductive capability, and a healthy, self-sustaining population of wildlife and fish species.
- Manage crucial, high-value, and unfragmented habitats as management priorities.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives A, B, and D:**

- Continue to implement and modify three Habitat Management Plans (HMPs) summarized in Appendix N: Hatch Point HMP, Dolores Triangle HMP, and the Potash-Confluence HMP.
  - The Hatch Point HMP: Manage to benefit pronghorn and improve sagebrush habitat for sage-grouse and other wildlife species. Emphasize habitat management, change in livestock class from sheep to cattle, and maintenance of land treatments.
  - Potash-Confluence HMP: Manage to benefit desert bighorn sheep, but also include guidance for chukar partridge, bald eagle, and peregrine falcon. Water developments to benefit desert bighorn are to be maintained; under this HMP, 278,000 acres of land administered by the BLM are to be maintained in good condition and habitat is to be improved where needed. Eight specific management objectives were established (see Appendix N for details).
  - The Dolores Triangle HMP: Manage to benefit deer, elk, and bighorn sheep. Improve bald eagle, riparian and native and naturalized fish habitat through the installation of fencing and enclosures in Granite, Coates, Ryan, and Renegade Creeks by installing six in-stream structures (see Appendix N for details).
- Livestock grazing would not be authorized on the following allotments/areas (or portions of allotments/areas) in order to benefit wildlife resources:
  - A portion of the Kane Spring Allotment (that portion in Kane Spring Canyon between the open valley and the river; 558 acres and 0 AUMs).
  - An area along the Colorado River between Hittle and north of Dewey Bridge (400 acres, AUMs would remain the same).
  - Between The Creeks with 3,960 acres and 221 AUMs.
  - North Sand Flats with 5,860 acres and 798 AUMs.
  - South Sand Flats with 10,209 acres and 592 AUMs.
  - A portion of Arth's Pasture Allotment (Poison Spider area; approximately 6,200 acres and 425 AUMs).
- Support and implement current and future animal species Conservation Plans, Strategies and Agreements. Coordinate actions with UDWR and other involved entities. Support population and habitat monitoring.

**Migratory Birds:**

- Executive Order 13186, "Responsibilities of Federal Agencies to Protect Migratory Birds," would be integrated into all activities with potential adverse impacts, wildlife management programs, and other resources including but not limited to riparian-wetland habitat, rangeland health standards and guidelines raptor protection, fire, special status species, off-site mitigation and habitat enhancement. Management actions would emphasize birds listed on the current USFWS "Birds of Conservation Concern" (2002f or as updated) and Utah Partners-in-Flight priority species. Habitats that would be emphasized are the Cisco Desert Bird Habitat Conservation Area, Colorado and Dolores River Bird Habitat Conservation Area, Green River Bird Habitat Conservation Area, and the Cottonwood and Willow Creek Bird Habitat Conservation Area (see Appendix N). As a supplement to complying with Executive Order 13186, the Bird Habitat Conservation Areas identified in the Coordinated Implementation Plan for Bird Conservation in Utah (Martinsen et al. 2005 or as updated), would receive priority for conducting bird habitat conservation projects, through cooperative funding initiatives such as the Intermountain West Joint Venture.
- Implement Executive Order 13186, "Responsibilities of Federal Agencies to Protect Migratory Birds" during all activities to protect habitat for migratory birds. Management would emphasize birds listed on the current USFWS "Birds of Conservation Concern" (2002 or as updated) and Partners-in-Flight priority species (as updated).
- As specific habitat needs and population distribution to "Birds of Conservation Concern" and Partners-in-Flight priority species are identified, BLM would use adaptive management strategies to further conserve habitat and avoid impacts to these species.
- Prioritize the maintenance and/or improvement of lowland riparian, wetlands, and low and high desert scrub communities which are the four most important and used habitat types by migratory birds in MPA.
- Prevent the spread of invasive and non-native plants, especially cheatgrass, tamarisk, and Russian olive. Strive for a dense under story of native species in riparian areas with a reduction in tamarisk and improvement of cottonwood and willow regeneration.
- During nesting season for migratory birds (May 1 – July 31), avoid surface-disturbing activities and vegetative-altering projects and broad-scale use of pesticides in identified occupied migratory bird habitat.

**Management common to the PROPOSED PLAN and Draft RMP Alternatives B and D:**

- Coordinate with UDWR and other partners to help accomplish the population and habitat goals and objectives of big game Herd Management Plans that are consistent with and meet the goals and objectives of this land-use plan.
- The BLM will approach compensatory mitigation on an "as appropriate" basis where it can be performed onsite, and on a voluntary basis where it is performed offsite, or, in accordance with current guidance.
- Restrict dispersed camping in riparian areas to protect riparian wildlife habitat. Restrictions could include limiting camping to designated sites or prohibiting camping.
- Implement a limited fire suppression policy and initiate prescribed fires where treatment by fire would increase vegetation productivity and increase forage for wildlife.
- Modify the grazing season of use or change class of livestock for individual allotments as necessary to accommodate forage needs for wildlife.

**Table 2.1. MOAB PROPOSED PLAN and Draft RMP Alternatives**

- Predator management would continue to be coordinated with Animal and Plant Health Inspection Service (APHIS)-Wildlife Services and UDWR and would be conducted utilizing the guidance provided by the existing MOU with APHIS-Wildlife Services.
- BLM would continue to coordinate with, and provide support to UDWR for introduction/reintroduction of native or naturalized fish or wildlife species into historic or suitable habitats as determined appropriate.
- Introduction, transplantation, augmentation and re-establishment of both naturalized and native species would be considered and would include, but may not be limited to, pronghorn, desert bighorn sheep, wild turkey, bison, beaver, chukar, otter, and Colorado River cutthroat trout and other native and naturalized fish species, pursuant to guidance and direction provided in BLM's 1745 Manual.
- Raptors would be managed under the auspices of Best Management Practices (BMPs; see Appendix O), which would include implementation of spatial and seasonal buffers. These BMPs implement the USFWS's Guidelines for Raptor Protection From Human and Land-use Disturbances, with modifications allowed as long as protection of nests is ensured. Seasonal and spatial buffers are also listed in Appendix O. Cooperate with utility companies to prevent electrocution of raptors. Temporarily close areas (amount of time depends on the species) near raptor nest to rock climbers or other activities if the activity could result in nest abandonment.
- Support and implement where possible the Northern River Otter Management Plan; coordinate with UDWR to determine potential release sites; support population monitoring.
- Manage riparian areas to ensure a multi-aged, multi-layered structure, allowing for retention of snags and diseased trees. Provide multiple layers of vegetation (vertical structure) within 10 feet of the ground.
- Minor adjustments to crucial wildlife habitat boundaries periodically made by the Utah Division of Wildlife Resources (UDWR) would be accommodated through plan maintenance.

**Pronghorn Habitat:**
- Manage 78,476 acres of current pronghorn habitat that UDWR has designated in the La Sal (Hatch Point Herd) Wildlife Management Unit. Implement the Hatch HMP. Manage 743,524 acres of pronghorn habitat that UDWR has designated in the Cisco Desert and on the following allotments: Cisco, Cisco Mesa, Harley Dome, San Arroyo, Horse Canyon, Pipeline, Floy Creek, Athena, Little Grand, Corral Wash Canyon, Agate, Little Hole, Monument Wash, Highlands, 10-Mile Point, Big Flat, Ruby Ranch, Bar-X, Crescent Canyon, Squaw Park, and San Arroyo (see Map 2-24).
- Management of pronghorn sheep habitat (see Map 2-25) would be done in coordination with UDWR and may include (but would not be limited to) the following actions:
  · Installing and improving year-round water resources within the La Sal Management Unit and the Cisco Desert Herd unit.
  · Supporting a change in class of livestock from sheep to cattle on the Hatch Point area. Changing class of livestock from cattle to sheep would not be allowed within pronghorn habitat.
  · Installing water developments every 2 square miles on summer and fawning areas.
  · Constructing fences that allow for pronghorn passage.
  · Dismantling un-needed fences.
  · Installing restrictive fencing to stop pronghorn passage onto highways.
  · Increasing forage through vegetation treatments on approximately 4,400 acres.

**Bighorn Sheep Habitat:**
- Film permits would comply with minimum impact criteria (see Appendix B) from April 1 through June 15 and from October 15 through December 15 within 123,490 acres of crucial bighorn sheep habitat (see Maps 2-25-B through 2-25-D).
- No change in class of livestock from cattle to sheep conversions would be considered in recognized bighorn habitat. (see Maps 2-26 and 2-28).
- Follow the recommendations found in the BLM Bighorn Sheep Rangeland Management Plan, as revised (1993b); the Utah BLM Statewide Desert Bighorn Sheep Management Plan, as revised (1986a); and the Revised Guidelines for the Management of Domestic Sheep and Goats in Native Wild Sheep Habitats (BLM 1998a).
- Support the current bighorn sheep population and manage to increase desert bighorn population (prior stable numbers) on 330,892 acres. Population goals would be reached by releases, by reestablishment, and through change of livestock class and installation of new water facilities (see Appendix N for details).
- Management of bighorn sheep habitat in coordination with UDWR would include: installing water developments every 5 square miles in within 2 miles of escape terrain, precluding exotic ungulate, wild horses or burros within 10 miles of habitat, and constructing fences that allow for bighorn sheep passage (3 strands with bottom wire smooth) and dismantling un-needed fences.
- Manage 9,278 acres along the rim of Hatch Point as part of the Lockhart Bighorn Sheep habitat areas. Apply a timing limitation stipulation to oil and gas leases and other permitted uses, which would restrict surface-disturbing activities from April 1 through June 15 for lambing and from October 15 through December 15 for rutting (see Appendix C).
- Manage 317,523 acres of total desert bighorn sheep habitat on the following grazing allotments: Buckhorn, North River, Little Grand, Taylor, Ten Mile Point, Arth's Pasture, Spring Canyon Bottom, Big Flat, Kane Springs, Potash, Horsethief, Behind the Rocks, and Ruby Ranch.
- Support conversion of sheep AUMs to cattle on Hatch Point Allotment.*
- Improve desert bighorn habitat by installing and improving year-round water resources within all desert bighorn habitat and provide additional water sources at a minimum spacing of one water development in each 2 square mile area on lambing grounds.

**Deer and/or elk:**
- Manage UDWR current deer habitat of 534,329 acres in the Bookcliffs and 313,551 acres on the La Sal Mountains as mule deer habitat by improving or maintaining vegetative conditions to benefit both livestock and wildlife and by maintaining or improving the ecological condition of rangelands.
- Increase elk forage through vegetation treatments such as chemical, mechanical, and prescribed fire on approximately 40,000 acres of elk winter range (see Livestock Grazing).
- Manage crucial and high value deer and/or elk summer range (105,636 acres) within the Bookcliffs and La Sal Wildlife Management Unit by applying a timing limitation stipulation that would preclude surface-disturbing activities from May 15 to June 30 (see Appendix C; see Maps 2-27-B and Map 2-27-C/D).
- All forage on acquired state lands in upper Castle Valley within crucial deer winter range would be allocated to deer.

| Pronghorn Habitat | | | |
|---|---|---|---|
| **Alternative A (No Action)** | **Alternative B** | **PROPOSED PLAN** | **Alternative D** |
| For pronghorn fawning habitat, exploration, drilling, and other development is prohibited from May 15 through June 15. | Protect current pronghorn habitat (822,001 acres) within Cisco Desert (743,524 acres) and Hatch Point (78,477 acres; the La Sal Wildlife Management Units: see Map 2-24) by applying a timing limitation stipulation that would preclude surface-disturbing activities from May 1 to June 15 (see Appendix C). | Protect pronghorn fawning habitat (293,741 acres) within Cisco Desert and on Hatch Point (the La Sal Wildlife Management Units) by applying a timing limitation stipulation that would preclude surface-disturbing activities from May 1 to June 15 (see Appendix C). | Protect pronghorn fawning habitat on Hatch Point (78,477 acres) by applying a timing limitation stipulation that would preclude surface-disturbing activities from May 1 to June 15 (see Appendix C). |
| **Cisco Desert HMP:** Improve pronghorn habitat by excluding livestock grazing activities from May 15 through June 20 or during extreme snow conditions. Change season of use on fawning grounds to reduce disturbance. | Spring grazing would be adjusted on 188,975 acres on allotments within crucial pronghorn habitat in the Cisco Desert to encourage forb production. These allotments include: Athena, Cisco, Cisco Mesa, Crescent, Harley Dome, San Arroyo, Pipeline, and Bar X. | Spring grazing would be adjusted on a case-by-case basis on 188,975 acres on allotments within crucial pronghorn habitat in the Cisco Desert to encourage forb production. These allotments include Athena, Cisco, Cisco Mesa, Harley Dome, and San Arroyo. | No adjustments to season of use would be made. |
| **Hatch Point HMP:** Pronghorn fawning areas would exclude livestock grazing | | | |

BLM_0009919