## Hiatt, Nina, Commenter ID No. E91

From: Nina Hiatt
To: mail_ulpeis
Subject: Clean Up and Clean Energy!
Date: Saturday, June 01, 2013 4:12:46 PM

Dear

Dear Mr. Pikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to issue a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Nina Hiatt

E91-1

E91-2

E91-3

E91-4

E91-5

E91-1    DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E91-2    Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E91-3    DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E91-4    DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Hiatt, Nina, Commenter ID No. E91 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E91-5    See responses to E91-1 and E91-2.

BLM_0043583

**Hills, Penny, Commenter ID No. T14**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

46

1  radiation contamination?

2          Can uranium or any radioactive material in

3  medical machines or scanning machines become another

4  element, still radioactive and unstable, that could

5  explode those radioactive particles?  In other words,

6  can uranium become another natural radioactive

7  element?

8          These are questions that might be answered,

9  however, without provable records with the public

10  directly involved in those records established.  The

11  records or answers are not believable, at least to me.

12          If there is a group or individual that would

13  like to talk to me afterwards for solutions to

14  radioactive material and to assist the Government, we

15  can do that.

16          MR. CAMERON:  Thank you, Mark.

17          And now we're going to hear from Penny ⟵

18  Hills.

19          PENNY HILLS:  I don't have a prepared

20  statement.

21          MR. CAMERON:  You don't need to have a

22  prepared statement.  If you want to offer your

23  thoughts and feelings, that's fine too.

24          PENNY HILLS:  I would like to say that at

25  the moment I don't have a job.  I used to have a job

(866) 448 - DEPO     www.CapitalReportingCompany.com     © 2013

BLM_0043584

**Hills, Penny, Commenter ID No. T14 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

47

1  in this place here, a pretty good job and I liked it a

2  lot.  But I'm retired, so I'm sympathetic to the

3  people who want jobs. When you need a job, you need a

4  job, and there's no question about that.  Problem is

5  what job, and what are the outcomes of that job?  And

6  do you have time to think about it?

7        When you're looking for a job, can you look

8  at something like when I first came here, I was taken

9  to the races.  It was a horse race.  It was great.

10 Everybody was very excited, and the horses were

11 running around.

12        And uranium was a big deal, and everybody

13 loved it.  And there was a boom in uranium; there was

14 lots of singing and dancing, and people had jobs.

15        But even today, you can see in the newspaper

16 the ads for the uranium miners that are entitled to

17 care because they got sick.  Mining is a tough job,

18 and uranium is especially tough because of everything

19 that goes with it. So it's not only what will get into

20 the water, God forbid, I mean, we've got Parachute

21 Creek, that's enough -- but uranium is going to get

22 into the water.

23        But what about the legacy?  Legacy is

24 supposed to be a good thing.  Like there should be

25 more singing and dancing.  More horse races.  Yes.

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T14-1

T14-2

T14-1    Comment noted. The PEIS evaluated potential impacts to water quality and determined that potential impacts to surface water and groundwater from uranium mining activities at the ULP lease tracts would be moderate. DOE considered all comments received on the Draft PEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period.

T14-2    Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

BLM_0043585

**Hills, Penny, Commenter ID No. T14 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

48

1  But not necessarily poison.  What good is that doing

2  us?  Why don't we clean up the poison first and then

3  have a big party?

4        MR. CAMERON:  Thank you, Penny.  And next

5  we're going to hear from, is it Pier?

6        AUDIENCE MEMBER:  I'm not going to...

7        MR. CAMERON:  No?  Okay.

8        Is there anybody else that wants to comment

9  that had not signed up yet?  Anybody out here that

10 wants to make a comment to us?

11       Yes.  Can you come up?

12       AUDIENCE MEMBER:  Yeah.

13       MR. CAMERON:  And just introduce yourself to

14 us, please.

15       CHOI WONG:  Hi, my name is Choi Wong, I'm a

16 nursing student from Colorado Mesa University.  I am

17 not prepared for this speech.  I am from China.  I

18 moved here seven years ago, because I think Colorado

19 is a real pretty place, and all the residents here are

20 really nice.

21       And recently my classmate and I have done

22 research, a project on the uranium mining in Paradox,

23 Colorado.  And I researched Energy Fuels as my

24 company, and I want to understand how the company

25 impacts the environment.

T14-2
(Cont.)

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

BLM_0043586

## Hoffmann, John, Commenter ID No. W5

Thank you for your comment, John Hoffmann.

The comment tracking number that has been assigned to your comment is ULPD50005.

Comment Date: April 20, 2013   09:50:55AM
Uranium Leasing Program PEIS
Comment ID: ULPD50005

First Name: John
Middle Initial: N
Last Name: Hoffmann
Organization:
Address:
Address 2:
Address 3:
City:
State: CO
Zip: 816230816
Country: USA
Privacy Preference: Don't withhold name or address from public record
Attachment:

Comment Submitted:

Until the US has a method or system for safely disposing of radio active waste, further mining or refining of nuclear products must be halted. That includes the leasing of public property to mine uranium. | W5-1

W5-1    Comment noted. DOE considered all comments received on the Draft PEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

### Hoodwin, Marcia, Commenter ID No. E111

From:      marcia@accentuneen.com
To:        mail idhere
Subject:   uranium mining
Date:      Friday, June 28, 2013 3:37:05 PM

Allowing the DOE to reopen the uranium leasing program in San Miguel, Montrose and Mesa Counties will greatly impact the regional tourism and recreation economy, further contaminate the Dolores River Watershed, threaten endangered species, and compound the radioactive legacy abandoned multiple times by the uranium industry. This program is not only bad for the environment and the economy, it makes no sense for the United States to allow the mining and sale of these domestic natural resources to foreign countries, which is where this supply would go.

Please either cancel the program and allow clean energy production on the sites or send the PEIS back for a more thorough review.

Sincerely,
Marcia Hoodwin

E111-1

E111-1   Comment noted. DOE considered all comments received on the Draft PEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

The evaluation of the use of the ULP land for development of solar energy or renewable energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for such purposes is not excluded by the ULP Program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies, including many based on renewable sources.

**Final ULP PEIS**

*Appendix I: Comment Response Document*

## Hornback, Emily, Commenter ID No. E26

From:     Emily Hornback
To:       mail_upers
Subject:  Clean Up and Clean Energy!
Date:     Friday, May 24, 2013 11:26:46 AM

Dear

Dear Mr. Pikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher in a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.  **E26-1**

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential.  **E26-2**

In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.  **E26-3**

Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination.  The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP lessees.  **E26-4**

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.  **E26-5**

Sincerely,

Emily Hornback

---

**E26-1**  DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP land tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

**E26-2**  Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

**E26-3**  DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

**E26-4**  DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Hornback, Emily, Commenter ID No. E26 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E26-5    See responses to E26-1 and E26-2.

BLM_0043590

**Hutcheson, Lorraine, Commenter ID No. L28**

May 1 2013

Ray Plieness, PEIS Manager
Office of Legacy Management
US DOE
11025 Dover St. Suite 1000
Westminster, CO 80021



RECEIVED
MAY – 6 2013

Dear Sir,

I am concerned about re-introduction of Uranium Leasing Program in the Mesa, Montrose and San Miguel Counties. I live in Grand Junction on the western slope. This region includes 31 mining tracts covering 25,000 acres of public land and much land close to surrounding rivers. 10 new uranium mines could begin operation as well as existing leases.

This area is still trying to clean up the radioactive waste left from older uranium mines which should be cleaned before new sites are opened. 1,200 uranium mines have been abandoned in Colorado. The Dept. of Energy should investigate and disclose the current conditions of the mines and use the latest techniques to restore the health of the water and soil in theses areas. The Uravan Mineral District has seen many uranium companies go bankrupt but has left a costly mess behind, leaving communities and the environment worse off than before. This area is one where many people visit to enjoy the outdoors and our future depends on cleaner jobs and more sustainable economic development based on renewable energies.

Many uranium sites are in violation of the Clean Water Act and continue to pollute both the Dolores and San Miguel Rivers. This affects not only humans, but a myriad of wildlife in this region.

The draft Programmatic Environment Impact Statement needs to be re-issued as a more transparent, in depth investigation of uranium mining and its effects in this area. We need better, cleaner choices with regard to management of our public lands.

Sincerely,

*Lorraine J. Hutcheson*

Lorraine Hutcheson

Lorraine_hutcheson@hotmail.com

| | | |
|---|---|---|
| L28-1 | L28-1 | Comment noted. DOE considered all comments received on the Draft PEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative. |
| | | Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS. |
| L28-2 | L28-2 | DOE believes it has adequately evaluated the range of reasonable alternatives and that the information and analysis in the PEIS are adequate to support any of the alternatives (see discussion in Section I.3.2 for a summary of potential impacts discussed in the PEIS). |

**Johnson, Janet, Commenter ID No. T8**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

33

1  you want to know?  But in fact, they really don't know
2  it all yet. Don't assume that you know it all yet
3  either, please.  Thank you.
4          MR. CAMERON:  Thank you very much.
5          Janet Johnson?
6          JANET JOHNSON:  I think it's important for
7  us to remember this evening that our area has
8  suffered, for 50 years, a disproportionality in the
9  cost of what happens when you are the front end and
10 the back end of the uranium industry.
11         The costs have been to us, so far, on the
12 DOE minds, to remediate, 1.25 million.  The mills in
13 Colorado, in our Uravan mineral belt area, $1 billion
14 to the tax payers.  The rate of compensation that we
15 pay out to people who have died or their families of
16 the people who have died or gotten sick, that's in the
17 millions of dollars already. And we'll just continue
18 growing, because we continue -- we have to continue
19 with the people who are the nuclear workers.
20         The Legacy Management Program itself is paid
21 for by taxpayer dollars.  These are initial costs,
22 these aren't costs that will be going on in
23 perpetuity.
24         The costs to us have also been our health,
25 our economies, our environment, our waters.

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T8-1

T8-1   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

**Johnson, Janet, Commenter ID No. T8 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

34

T8-1
(Cont.)

1        Our goal here is really to ask for clean-up
2    this evening.  And I will explain that to you.
3        Also I would like to state to you that I'm
4    asking tonight for a new PEIS to be released, a PEIS
5    that would actually have a substantial analysis of
6    what we know of the people who live here in the area
7    and not someone who is (inaudible) in numbers that are
8    inconsequential to our reality today.
9        I would say that I'm asking for that,
10    because we have no present evidence of best practices
11    being used on these lease tracts at this time, at this
12    point in time.
13        The lease -- the PEIS is actually to me, a
14    group in Grand Junction.  It's very dismissive.  I've
15    always lived in a uranium town, a uranium mill town.
16    It's dismissive after 40 years that have gone into
17    what we are today, and we are not what we could be
18    today.  We're still depressed because of the uranium
19    industry.
20        We still live under the stigma of it, and we
21    still -- I feel that this -- the PEIS is insensitive
22    to the economic realities of what we face on the
23    western slope today when it comes to the uranium
24    industry.
25        I think also the reason I would ask for a

T8-2

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T8-2    DOE believes it has adequately evaluated the range of reasonable alternatives and that the information and analysis in the PEIS are adequate to support any of the alternatives (see discussion in Section I.3.2 for a summary of potential impacts discussed in the PEIS), and therefore, the PEIS does not need to be re-issued. DOE considered all comments received on the Draft PEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

BLM_0043593

**Johnson, Janet, Commenter ID No. T8 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

35

1  renewed PEIS, building upon what they have done now,

2  but actually being in the field, is that we when we're

3  examining the options, even the two options that --

4  the first that say they will do reclamation, there is

5  no standard of reclamation suggested.  There is no

6  procedure that these mines and these lease tracts will

7  be monitored completely.

8           And we have seen at this time there's been

9  no active monitoring; there's been no active or

10  substantive evidence that there's any standard at all.

11          The legacy that we leave is critical to us

12  too.  And how we manage the legacy that we have of the

13  uranium industry is very important.  We feel that each

14  generation should endeavor to preserve and protect the

15  foundations of life and well being for those who come

16  after.

17          To produce mismanaged and abandoned

18  substances that damage following generations is

19  unacceptable.  We must accept responsibility for the

20  nuclear materials left to us and those produced in our

21  lifetime.

22          As we study the Draft PEIS, we need to keep

23  in mind we do not want our nuclear past and present to

24  become the future.

25          We do have to leave an ethical legacy.  And

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T8-2
(Cont.)

T8-3

T8-3    The text being quoted was intended to provide the perspective that regardless of the ULP, uranium processing elsewhere would continue and the issue of radioactive waste management and disposal would remain; and the waste disposal issue from processing of uranium ore generated at the ULP lease tracts would be small relative to the overall radioactive waste disposal issue in the U.S. Management of waste generated from the proposed uranium mining operations on the ULP lease tracts is discussed in the PEIS (see Sections 3.13 and 4.1.13, 4.2.13, 4.3.13, 4.4.13, and 4.5.13).

BLM_0043594

**Johnson, Janet, Commenter ID No. T8 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

36

```
1   the Draft PEIS contains some information that helps us
2   see our present situation.  The DOE developed the
3   proposed alternatives by considering the need for
4   uranium reserves to support energy development.  And
5   yet, in another portion of the PEIS, we see that the
6   DOE uranium mining, as a quote, on the DOE ULP lease
7   tracts would have little or no impact on the nuclear
8   fuel cycle, because a small percentage of uranium
9   would not dictate whether or not uranium ore
10  processing would continue.
11
12         This tells us that the ores on the Uravan
13  mineral belt are inconsequential to you as the DOE,
14  but they are consequential to us.  The ores -- the
15  wastes are very consequential to us.
16         What we want is we want reclamation and we
17  want it to a standard.  The Draft PEIS also states
18  that our role of -- that one role of DOE is to monitor
19  and track market prices, spot and long-term, for
20  uranium oxide and vanadium oxide and keep abreast of
21  activities occurring within the uranium and vanadium
22  industries.
23         Later in the document we see in the comments
24  that they couldn't analyze the PEIS -- or the original
25  commenting period concerning that the instability of
```

T8-3
(Cont.)

T8-4

(866) 448 - DEPO   www.CapitalReportingCompany.com   © 2013

T8-4

The purpose and need for the proposed action does not require expansion of the scope of the PEIS. As explained in PEIS Section 1.4, "Purpose and Need for Agency Action," the underlying purpose and need for agency action was established by the U.S. Congress in two provisions of the Atomic Energy Act (AEA): 42 U.S.C. § 2096, which authorized and directed DOE to develop a supply of domestic uranium; and 42 U.S.C. § 2097, which authorized DOE, among other things, "to issue leases or permits for prospecting for, exploration for, mining of, or removal of deposits of source material [including uranium ore] in lands belonging to the United States."

The Purpose and Need for agency action, as described in ULP PEIS Section 1.4, is to support the implementation of those two AEA provisions. Section 1.4 recognizes that in order to support these provisions "DOE needs to determine the future course of the ULP, including whether to continue leasing some or all of DOE's withdrawn lands and other claims . . . for the exploration and production of uranium ores for the remainder of the ten-year period that was covered by the July 2007 PEA." PEIS Section 1.6, "Scope of the ULP PEIS," therefore describes the scope of its analysis as the evaluation of the five alternatives for managing the ULP, and the evaluation of "the three mining phases associated with the underground and surface open-pit mining methods," which "are the exploration phase, mine development and operations phase, and reclamation phases." Therefore, the AEA provisions are consistent with the present scope of the ULP PEIS, and do not require that the scope be expanded beyond the ULP to analyze the entire nuclear fuel cycle. Further, no DOE decision to be based on this PEIS would change the nation's use of nuclear fuels, including use of nuclear power reactors and management of associated radioactive materials. These and other aspects of the back end of the nuclear fuel cycle are the subject of numerous other NEPA reviews, including many EISs prepared by the Nuclear Regulatory Commission.

Final ULP PEIS

Appendix I: Comment Response Document



**Johnson, Janet, Commenter ID No. T8 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

37

1  uranium market has been depressed since 2007.  There
2  was a blip. It's been depressed -- it's been depressed
3  since the 1980s.

4       And we see that it will not be considered,
5  because it's outside of the scope of their
6  administration. That wouldn't seem to ring true.

7       MR. CAMERON:  Janet, I'm going to have to
8  ask you to sum up for us.

9       MS. JOHNSON:  Okay, I'll sum up what I want.
10  I want a new PEIS; we want it with the standard of
11  reclamation, and not speculative, but market demand
12  based leasing.  Thank you.

13       MR. CAMERON:  Thank you.

14       Is it Dave?  Dave Cak?

15       AUDIENCE MEMBER:  Cale?

16       MR. CAMERON:  Dave Cak?

17       DAVE CALE:  Hi, my name is Dave Cale.  I
18  speak as a little guy, small citizen of the community
19  who believes still in the right to the availability
20  and the purity of our air, our water, our soil, or
21  ecological balance.

22       I don't see -- and maybe I overlooked it,
23  but I don't see anything addressing in the PEIS
24  talking about agriculture in the Uravan belt, which
25  probably has changed over the years since the original

T8-4
(Cont.)

T8-5     T8-5     See responses to T8-1 to T8-4.

(866) 448 - DEPO     www.CapitalReportingCompany.com     © 2013

**Jones, David, Commenter ID No. W11**

Thank you for your comment, David Jones.

The comment tracking number that has been assigned to your comment is ULPD50011.

Comment Date: April 28, 2013   15:08:05PM
Uranium Leasing Program PEIS
Comment ID: ULPD50011

First Name: David
Middle Initial: L
Last Name: Jones
Organization:
Address: 700 Sabeta Drive
Address 2:
Address 3:
City: Ridgway
State: CO
Zip: 81432
Country: USA
Privacy Preference: Don't withhold name or address from public record
Attachment:

Comment Submitted:

I am very concerned about the health and environmental impacts of more Uranium mining in the western slope counties of Colorado. Although there may be potential short term job creation, there are other safer, more environmentally responsible methods for creating jobs. Uranium based economies are unstable; it is a boom and bust industry that has historically failed to bring long term economic gain to our region.

Please do not endorse this proposed uranium mine.
Sincerely, David L. Jones

W11-1

W11-1    Comment noted. DOE considered all comments received on the Draft PEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative. See also discussion in Section I.3.2 for concerns regarding a "boom and bust" economy in the region as a result of uranium mining on the ULP lease tracts.

BLM_0043597

**Joy, Jay, Commenter ID No. E44**

From: Jay Joy
To: mail_ulpeis
Subject: Clean Up and Clean Energy!
Date: Wednesday, May 29, 2013 12:43:12 PM

Dear

Dear Mr. Pikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to ensure a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Jay Joy

E44-1

E44-2

E44-3

E44-4

E44-5

E44-1    DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E44-2    Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E44-3    DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E44-4    DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043598

**Joy, Jay, Commenter ID No. E44 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E44-5   See responses to E44-1 and E44-2.

BLM_0043599

Final ULP PEIS

Appendix I: Comment Response Document

**Justice, Susan, Commenter ID No. E89**

From:     Susan Justice
To:       mail_ulpeis
Subject:  Clean Up and Clean Energy!
Date:     Thursday, June 27, 2013 3:39:09 PM

Dear

Dear Mr. Pikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher in a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health.  The PEIS states only "minor'" environmental justice concerns are associated with increased uranium mining in this area.  Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Introduce alternative ways of making a clean healthy living where threats to contaminate anything no longer happens....Colorado has many fine opportunities available to profit from . Keep Colorado Beautiful,  Thank you!
Sincerely,

Susan Justice

E89-1

E89-2

E89-3

E89-4

E89-5

E89-1  DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E89-2  Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E89-3  DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E89-4  DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043600

**Justice, Susan, Commenter ID No. E89 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E89-5    See responses to E89-1 and E89-2.

BLM_0043601

**Kanter, Holly, Commenter ID No. L17**

April 23, 2013

Ray Flieness, PEIS Document Manager
Office of Legacy Management
U.S. Department of Energy
11025 Dover Street, Suite 1000
Westminster, CO 80021
*E-mail:* ulpeis@anl.gov

Re: Draft ULP PEIS

Dear Sir,

Thank you for extending this opportunity to the public to express our opinions and views concerning the Department of Energy's Uranium Leasing Program. Like most western Colorado residents, I greatly appreciate the natural beauty of the region, as well as the tremendous opportunities for outdoor activities that this part of the world offers. I also recognize the economic concerns facing our local communities and out nation. We are blessed to have a great wealth of natural resources, including uranium, right here in our own back yard.

These resources can be managed in such a way as to not compete with one another – uranium can be mined, for example, without adversely impacting the outdoor recreational industry. It can be done so in a responsible, safe, and conscientious manner, as experience and this PEIS show us.

The payoff for this development is increased local employment, growth, and revenue. These are good, skilled, high paying jobs that modern mining offers. The spin-off effects create opportunities for many small businesses in the region, from companies providing supplies and services in direct support of the mines, to the gas stations, restaurants, barbers, tire shops, and many, many others.

The revenue generated from mining and from this economic growth eases strain on local budgets, and provides the money for modern fire, police and ambulance services, road maintenance, schools, and other amenities.

The economic benefits of uranium mining extend beyond the local region, of course, as it undergoes processing for eventual use in nuclear power generation, providing reliable, inexpensive energy for the nation, and a greater measure of national energy independence.

Alternative 4 best recognizes these benefits, and is based on a more realistic and objective analysis than the other alternatives, which would terminate some or even all of the lease tracts. Given the importance of uranium to the nations' energy future, the economic benefits to the region in developing it, the limited environmental impacts of that development, and the environmental benefits of nuclear energy, I see no reason not to proceed with the leasing plan.

I wish to again thank the DoE and reiterate my support for your preferred alternative.

Respectfully,

Holly Kanter
1712 Pioneer Circle
Delta, CO 81416

RECEIVED
APR 3 0 2013

L17-1

L17-1   Comment noted. DOE considered all comments received on the Draft PEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period.

BLM_0043602

## Keller, JR, Commenter ID No. L18

TO: Ray Plieness
U.S. Department of Energy
11025 Dover Street, Suite 1000
Westminster, CO 80021



April 23, 2013

Dear Mr. Plieness,

I support Alternative 4 in the uranium leasing PEIS, which would continue the leasing program with all 31 tracts, and that is the DOE's preferred alternative.

I do so because this alternative recognizes the crucial economic importance of the uranium leasing program. On the local level, the program creates the potential for hundreds of direct and indirect jobs throughout the region. The income earned from those jobs will help revitalize a stricken regional economy, and improve the quality of life of the people who live here. This activity will also produce more government revenues, adding to funding for schools and essential services, and allowing tax rates to remain low for working families and small business owners.

On the national level, the economic benefits of this program include the recovery of a strategically important resource that we currently obtain largely from other nations.

Uranium will become increasingly more valuable – and expensive – in coming years as nuclear energy is brought online to replace carbon-based fuels, and provide more consistent, reliable electrical power than other alternative sources such as wind and solar can provide. Of course, these benefits could even be realized within our own borders, and should America wisely turn more to nuclear power herself, these tracts will provide a secure, steady supply of the uranium needed to fuel it.

No good reason has been presented to terminate the leases. This extensive and thorough Environmental Impact Statement clearly demonstrates that the risk to water, air, wildlife, vegetation, soil, and other components of the natural environment, of developing these leases is very low.

Modern technology, procedures, and attitudes ensure that our mining operations are the safest and greenest in the world. More than that, these mines are operated and serviced by people who live here, and care for the environment, water, and air as much or more than anyone.

We have been successfully balancing conservation and mining for many, many years, before it was fashionable.

I am more than satisfied that NEPA requirements have been met with this EIS, and that the ULP presents, on balance, more rewards than risks. For these reasons, I support the preferred Alternative, Alternative 4.

Cordially,

JR Keller
1221 Frontier Road
Delta, CO 81416

| | | |
|---|---|---|
| L18-1 | L18-1 | Comment noted. DOE considered all comments received on the Draft PEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period. |
| L18-2 | L18-2 | See response to L18-1. |
| L18-3 | L18-3 | See response to L18-1. |

BLM_0043603

**Kemper, Katie, Commenter ID No. E50**

From: Katie Kemper
To: mail_ulpeis
Subject: Clean Up and Clean Energy!
Date: Thursday, May 30, 2013 8:05:25 PM

Dear

Dear Mr. Pikeness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Katie Kemper

E50-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E50-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E50-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E50-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043604

**Kemper, Katie, Commenter ID No. E50 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E50-5    See responses to E50-1 and E50-2.

BLM_0043605

## Kendall, Don, Commenter ID No. L19

Ray Plieness, PEIS Document Manager
Office of Legacy Management
U.S. Department of Energy
11025 Dover Street, Suite 1000
Westminster, CO 80021



4/18/13

Dear Mr. Plieness,

Thank you extending this opportunity for the public to weigh in on the Uranium Leasing Programmatic Environmental Impact Statement.

I believe that your agency has done a remarkable job in analyzing all aspects of the environment concerning this lease program, and I am impressed with the amount of detail and effort that has gone in to preparing it. It seems as though there is little or no environmental risk in allowing these leases to stand and be developed. The documentation shows that there would be minimal impacts to air quality, water, endangered plant and animal species, hydrologic features, habitat, or any other concern. It also shows that there would not be significant cumulative impacts over time.

While there would not be much in the way of environmental effects, there would be considerable socioeconomic impact. The mines that the ULP would allow will provide a great many job opportunities for local residents, and offer an incentive to further investment and growth. This is critical in an area so dependent on mining for its economic and social survival. Were the plan to be scrapped, and the leases vacated, the real and psychological impacts to the local mining communities would be as devastating as those seen in other parts of the country when mining stops.

It is becoming increasingly clearer that nuclear power is the way of the future. As people look to move away from fossil fuels, and seeing as how renewables can, at present, only manage to contribute approximately 20% of the electricity demanded by society, more reliance will be placed on nuclear power to fill the gap. The vast quantities of uranium that we are literally sitting on top of in the western United States puts us in a very competitive position globally. It seems frankly foolish not to proceed with a uranium mining program.

I realize that there are a few groups out there who simply refuse to see the larger picture and acknowledge the many benefits of nuclear energy; but the short-sightedness and aggressiveness of these fringe elements should not dissuade you from doing the right thing for the people of this nation, and permit uranium leasing, especially given the low environmental risk as described by this study.

For these reasons, I would like to recommend Alternative 4.

Thank you again for your dedication to American energy security,

Regards,

Don Kendall
360 Teegan Ct
GJ, CO 81507

| | | |
|---|---|---|
| L19-1 | L19-1 | Comment noted. DOE considered all comments received on the Draft PEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period. |
| L19-2 | L19-2 | See response to L19-1. |
| L19-3 | L19-3 | See response to L19-1. |

BLM_0043606

## Kllanxhja, Piera, Commenter ID No. W6

| | |
|---|---|
| **From:** | Piera Kllanxhja |
| **To:** | mail_uleps |
| **Subject:** | Uranium Mines & our land, water and air! |
| **Date:** | Saturday, June 29, 2013 1:57:34 PM |

Dear  Sirs & Ladies,

I am writing you to voice my concerns about the recently released Programmatic Environmental Impact Statement(PEIS) that governs uranium mines in Mesa, Montrose and San Miguel counties. I believe opening up more land for Uranium development is wrong for Western Colorado and ask that the Department of Energy provide us with a localized, in  depth analysis of the Uranium Leasing Program and offer an alternative that does not leave public lands open to speculative mining activities.
The proposed Piñon Ridge Uranium Mill has the potential to impact not only the region immediately surrounding the Paradox Valley, but also all of the communities downwind and downstream. The application for the proposed mill does not meet the basic requirements to protect the environment and public health and safety.

Pino Ridge Uranium Mill -It's dangers
•    I am concerned about radioactive air pollution from the mill traveling downwind across most of Colorado and contaminating drinking water supplies.
•    Where will the water come from to both operate the mill and keep the radioactive tailings from blowing into the airstream? I am concerned about the impacts on the Colorado River Basin, already experiencing severe drought conditions.
•    I am concerned that any ground water contamination from the proposed tailings piles will eventually flow to the Dolores and Colorado River, contaminating drinking water supplies downstream. The state has ignored ground-water contamination from the Cotter Mill in Canyon City, CO. Man-made tailings piles eventually leak. Why repeat the mistakes of our past and create a new toxic legacy in SW Colorado.
•    As we see the impacts from the boom and bust cycles of the extractive industries impact communities across Colorado, I am concerned about the socioeconomic impacts on the rural communities of SW Colorado and the potential impacts on the tourist dependent communities directly downwind.
•    The Colorado Plateau and specifically the Dolores River Basin is one of the most treasured landscapes of the west. We do not want to destroy the land, for false dreams of mineral wealth!
•    I am concerned about the impacts on our roads from increased heavy truck traffic and the transport of radioactive materials to processing plants outside the U.S.
•    The proposed $11M bond is woefully inadequate to pay the actual remediation costs and if history repeats itself, the owners will walk away leaving the responsibility to our children the taxpayers.
I appreciate your thorough consideration of the proposed mill. State regulators have fallen well short of their mission to protect the environment and public health of Colorado to date in this process. We ask that you carefully consider the first uranium mill proposed in 30 years in our state and either deny this application or impose strong conditions to ensure the protection of both public health and environment.
Sincerely,

Piera Kllanxhja

W6-1

W6-1    Alternative 1 evaluated in the Draft PEIS does provide such an analysis - this alternative involved the termination of the leases with reclamation at any areas requiring such.

W6-2

W6-2    The cumulative impacts analyzed in this PEIS include the potential impacts of the proposed Piñon Ridge Mill. See Section 4.7.1.1.

## Kllanxhja, Piera, Commenter ID No. E35

| | |
|---|---|
| From: | Piera Kllanxhja |
| To: | mail_ulpeis |
| Subject: | Clean Up and Clean Energy! |
| Date: | Saturday, June 29, 2013 1:51:26 PM |

Dear

Dear Mr. Plieness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Piera Kllanxhja

E35-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E35-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E35-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E35-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043608

**Kllanxhja, Piera, Commenter ID No. E35 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E35-5   See responses to E35-1 and E35-2.

BLM_0043609

**Kllanxhja, Piera, Commenter ID No. E118**

| From: | Piera Kllanxhja |
|---|---|
| To: | mail_ulpeis |
| Subject: | Clean Up and Clean Energy! |
| Date: | Saturday, May 25, 2013 5:42:48 PM |

Dear

Dear Mr. Pikeness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher in a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.   **E118-1**

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.   **E118-2**

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.   **E118-3**

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.   **E118-4**

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.   **E118-5**

Sincerely,

Piera Kllanxhja

---

**E118-1**  DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

**E118-2**  Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

**E118-3**  DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

**E118-4**  DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Kllanxhja, Piera, Commenter ID No. E118 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E118-5   See responses to E118-1 and E118-2.

BLM_0043611

## Kllanxhja, Piera, Commenter ID No. E119

Thank you for your comment, Piera Kllanxhja.

The comment tracking number that has been assigned to your comment is ULPD50006.

Comment Date: April 20, 2013   10:44:50AM
Uranium Leasing Program PEIS
Comment ID: ULPD50006

First Name: Piera
Middle Initial: P
Last Name: Kllanxhja
Organization:
Address:
Address 2:
Address 3:
City:
State: CO
Zip: 81501
Country: USA
Privacy Preference: Don't withhold name or address from public record
Attachment: Pino Mill uranium protest.rtf

Comment Submitted:

BLM_0043612

Final ULP PEIS

## Kllanxhja, Piera, Commenter ID No. E119 (Cont.)

From:        Piera Kllanxhja
To:          rmpl_uranium
Subject:     Uranium Mines & our land, water and air*
Date:        Saturday, June 29, 2013 3:57:34 PM

Dear Sirs & Ladies,

I am writing you to voice my concerns about the recently released Programmatic Environmental Impact Statement(PEIS) that governs uranium leasing in Mesa, Montrose and San Miguel counties. I believe opening up more land for Uranium development is wrong for Western Colorado and ask that the Department of Energy provide us with a localized, in-depth analysis of the Uranium Leasing Program and offer an alternative that does not leave public lands open to speculative mining activities. The proposed Piñon Ridge Uranium Mill has the potential to impact not only the region immediately surrounding the Paradox Valley, but also all of the communities downwind and downstream. The application for the proposed will does not meet the basic requirements to protect the environment and public health and safety.

Pino Ridge Uranium Mill - It's dangers
• I am concerned about radioactive air pollution from the mill traveling downwind across most of Colorado and contaminating drinking water supplies.
• Where will the water come from to both operate the mill and keep the radioactive tailings from blowing into the airstream? I am concerned about the impacts on the Colorado River Basin, already experiencing severe drought conditions.
• I am concerned that any ground water contamination from the proposed tailings piles will eventually flow to the Dolores and Colorado River, contaminating drinking water supplies downstream. The state has ignored ground-water contamination from the Cotter Mill in Canyon City, CO. Man-made tailings piles eventually leak. Why repeat the mistakes of our past and create a new toxic legacy in SW Colorado.
• As we see the impacts from the boom and bust cycles of the extractive industries impact communities across Colorado, I am concerned about the socioeconomic impacts on the rural communities of SW Colorado and the potential impacts on the tourist dependent communities directly downwind.
• The Colorado Plateau and specifically the Dolores River Basin is one of the most treasured landscapes of the west. We do not want to destroy the land, for false dreams of mineral wealth!
• I am concerned about the impacts on our roads from increased heavy truck traffic and the transport of radioactive materials to processing plants outside the U.S.
• The proposed $11M bond is woefully inadequate to pay the actual remediation costs and if history repeats itself, the owners will walk away leaving the responsibility to our children the taxpayers.
I appreciate your thorough consideration of the proposed mill. State regulators have fallen well short of their mission to protect the environment and public health of Colorado to date in this process. We ask that you carefully consider the first uranium mill proposed in 30 years in our state and either deny this application or impose strong conditions to ensure the protection of both public health and environment. Sincerely,

Piera Kllanxhja

| E119-1 | E119-1 | Alternative 1 evaluated in the Draft PEIS does provide such an analysis - this alternative involved the termination of the leases with reclamation at any areas requiring such. |
|---|---|---|
| E119-2 | E119-2 | The cumulative impacts analyzed in this PEIS include the potential impacts of the proposed Piñon Ridge Mill. See Section 4.7.1.1. |

Appendix I: Comment Response Document

BLM_0043613

**Kolachov, Nick, Commenter ID No. T50**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

80

```
 1              NICK KOLACHOV:  I just want to thank
 2  everyone for everything they've said that has been
 3  contributed, and I just wanted to come from a
 4  different point.  I live on the road that a lot of
 5  these trucks are going to be going on.  I've lived
 6  on this road for eight years, and you can tell time
 7  by the sounds of the different trucks that are the
 8  different buses that go on this road.  I don't
 9  know -- I think a lot of people that drive it will
10  be driving it and will be seeing, well, there's a
11  lot of traffic right now when I'm on the road.
12              But in actuality, living next to this
13  road, you really understand our whole community,
14  and you see that, you know, wow, there goes the UPS
15  truck.  It must be that time.  You can really see
16  that there aren't many people that live here.  We
17  don't have many people driving on this road.  And
18  so when you start to look at the numbers of the
19  trucks and the kind of traffic that's going to be
20  generated, I mean, even six or eight trucks would
21  be noticeable a day.
22              The road between the hours of, say, 9:00
23  and 10:00 in the morning goes silent.  There is
24  almost no traffic.  I mean, it's -- most people who
25  drive it wouldn't understand this.  But I
```

(866) 448 - DEPO     www.CapitalReportingCompany.com     © 2013

T50-1

T50-1   During a peak year, six to eight uranium ore haul trucks per day could pass along a local road that services a uranium mine as analyzed in Sections 4.3.10.2.1, 4.4.10.1.1, and 4.5.10.1.1. At the rate of about 1 truck an hour, the trucks may be noticed, but traffic is not expected to be impacted.

BLM_0043614

**Kolachov, Nick, Commenter ID No. T50 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

81

1  understand this just by virtue of living right next
2  to the road.
3          And so I took a moment today thinking
4  about the hearing, and I thought, you know, it's
5  really interesting to look at it and say, right now
6  in this moment, it's as good as it's ever going to
7  get.  Now, isn't that a sad commentary?  That we
8  have to say that here it is.  We are going into a
9  time period when we should be thinking about less
10 driving and, you know, less CO2, and it's only
11 going to get more.  And then it's going to be
12 happening through industry in this environment
13 where most of the people that have moved here and
14 live here and inhabit this area now, who weren't
15 born here, moved here for the quality of life.  And
16 yet, that's being directly impacted, especially by
17 ambient noise of trucks and the dust that they give
18 off, and here we are on a road that is quiet today
19 in 2013.
20          So as a steward of the road that these
21 trucks are going to be on, and not to mention there
22 are families who live all around me who have
23 children, and we all live right on this road, and
24 it's a pretty quiet road and we're okay with it the
25 way it is right now.

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T50-1
(Cont.)

T50-2

T50-2    DOE recognizes the quality of life provided by a number of areas in which the lease tracts are situated, and it is not expected to change much with DOE's proposed action. It should also be recognized that the Atomic Energy Commission uranium leasing programs were begun in this area in 1948 and continue to this day as discussed in Section 1.1.

BLM_0043615

**Kolachov, Nick, Commenter ID No. T50 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

82

1        And so I would say as a resident, that I

2   entirely disagree with the options here, the

3   alternatives.  I'm more an Alternative 1 than 2.

4   So I do not agree with the way things are going and

5   I just wanted to make sure that that was heard

6   here.  Thank you.

7            MR. CAMERON:  Thank you.  Thank you,

8   Nick.  And I just want to thank all of you for

9   coming out tonight.

10           Did you want to make a comment?

11           SCOTT CLOW:  Yes.

12           MR. CAMERON:  Come on down.  And we

13  have one other person, so we have two more

14  commenters.

15           Go ahead.  Please introduce yourself,

16  sir.

17           SCOTT CLOW:  Sure.  I'll be brief

18  because I know it's late.  My name is Scott Clow.

19  I live in Dolores, Colorado.

20           I just wanted to -- I wasn't going to say

21  anything tonight, but one of the gentlemen who

22  spoke earlier made a comment about the other 49

23  states.  Currently the uranium that's mined in

24  Southwest Colorado is transported over to Utah

25  where there is a milling facility for uranium and

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T50-3

T50-3   Comment noted. DOE has carefully considered all public comments and the results of the PEIS
        evaluation and has identified Alternative 4 as DOE's preferred alternative in this PEIS.
        Alternative 4 provides for the continuation of the ULP (with exploration and mine
        development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year
        period or for another reasonable period.

**Konola, Claudette, Commenter ID No. T11**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

40

1  was that we look at this list of aspects that was put

2  on the board.  And one was the socioeconomic aspect.

3  I demand that in the alternative there's like a $2

4  million bond of Energy Fuels to do what?  To help the

5  economy and communities survive when they go bust.

6  Because they will go bust.  And they'll be stuck out

7  there with all this stuff out there and all the

8  economic travesty when they go bust.

9          Why?  It happens all the time.  We need a $2

10  million bond to help this be able to survive and it

11  doesn't go bust.

12          Next I wish the whole community would have a

13  bigger vision of nuclear power, like Germany and

14  Japan, where we don't need nuclear power to survive.

15  We have other alternatives to do it.

16          We should do the same; we just need a bigger

17  vision.

18          And last I would say that Union of Concerned

19  Scientists in this country has stated there is no safe

20  level of radiation.  Thank you.

21          MR. CAMERON:  Thank you, Eric, for those

22  comments.

23          And our next commenter is Claudette,

24  Claudette Konola.

25          CLAUDETTE KONOLA:  I will probably end up

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

BLM_0043617

Final ULP PEIS

### Konola, Claudette, Commenter ID No. T11 (Cont.)

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

41

1 providing written comments. I didn't actually come
2 here with prepared comments, although I have been
3 thinking about this a lot.
4         I would support -- to the extent that I
5 support any of the proposals, I would support
6 alternative number 1, which basically reclaims the
7 land and manages it.
8         My problem is I don't know who I trust; I
9 don't know if I trust the BLM or if I trust the DOE.
10 And let me explain to you why I say that. I've just
11 recently read a book that I highly recommend to
12 everybody -- I've been telling the story to everybody
13 -- called Full Body Burden, Living in the Shadow of
14 Nuclear Rocky Flats.
15         It was a very frightening book for me,
16 because I grew up in the shadow of Rocky Flats. I
17 grew up in Arvada, Colorado, which is where the author
18 of this particular book lived and where she grew up.
19         And what I learned from reading that book is
20 that the DOE isn't always very trustworthy. And in
21 fact, when they started talking about the clean-up of
22 Rocky Flats, and when they saw how polluted it was,
23 not with uranium but with plutonium, they decided they
24 couldn't afford to clean it up.
25         And so instead of trying to figure out how

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

| | | |
|---|---|---|
| T11-1 | T11-1 | Comment noted. DOE has carefully considered all public comments and the results of the PEIS evaluation and has identified Alternative 4 as DOE's preferred alternative in this PEIS. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period. |
| T11-2 | T11-2 | Comment noted. |

Appendix I: Comment Response Document

BLM_0043618

**Konola, Claudette, Commenter ID No. T11 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

42

1  to afford to clean it up, they simply raised the

2  standard of acceptable radiation.

3         My fear is that your idea of remediation may

4  not be remediation that is safe for people who

5  recreate and live around uranium mills and uranium

6  tailings.

7         I'm particularly concerned because I am a

8  cancer survivor, and I would like to know that future

9  generations are not exposed to the kinds of radiation

10 levels that are going to give them a higher risk of

11 suffering from this disease.

12        I have other problems.  The Colorado River

13 has recently been reported to be the most endangered

14 river in the U.S.  And mostly that has to do with the

15 amount of water that is going down the river based on

16 droughts and those kinds of things.

17        But we live in a very arid area.  Everything

18 about uranium takes water, and I cannot imagine why we

19 would want to continue, in this area, sacrificing our

20 water that we need.  I mean, humans cannot live

21 without water.  Farmers cannot farm without water.  I

22 cannot understand why we would even consider

23 sacrificing it to continue mining low-grade uranium in

24 the Uravan belt.  Thank you.

25        MR. CAMERON:  Okay, thanks.  Thanks,

T11-2
(Cont.)

T11-3

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T11-3    The potential impacts to water depletion in the Upper Colorado watershed are evaluated in this PEIS, and DOE has consulted with the USFWS with regards to how this water depletion would potentially impact the Colorado four endangered fish species. PEIS text has been revised to be consistent with the BA and BO (see Appendix E and Section 4.3.6.4).

**Krute, Robert, Commenter ID No. E39**

From:     Robert Krute
To:       mail_uows
Subject:  Clean Up and Clean Energy!
Date:     Monday, May 27, 2013 3:41:38 PM

Dear

Dear Mr. Pikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health.  The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area.  Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Robert Krute

E39-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E39-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E39-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E39-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Krute, Robert, Commenter ID No. E39 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E39-5    See responses to E39-1 and E39-2.

BLM_0043621

**Krute, Robert, Commenter ID No. E77**

From: Robert Krute
To: mail_users
Subject: Clean Up and Clean Energy!
Date: Monday, June 03, 2013 5:37:17 PM

Dear

Dear Mr. Plikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Robert Krute

E77-1

E77-2

E77-3

E77-4

E77-5

E77-1    DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E77-2    Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E77-3    DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E77-4    DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043622

**Krute, Robert, Commenter ID No. E77 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E77-5    See responses to E77-1 and E77-2.

BLM_0043623

## Leas, Rebecca, Commenter ID No. E81

| | |
|---|---|
| **From:** | Rebecca Leas |
| **To:** | mail_wipes |
| **Subject:** | Clean Up and Clean Energy! |
| **Date:** | Tuesday, June 04, 2013 9:52:57 PM |

Dear

Dear Mr. Pikeness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor'" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Rebecca Leas

**E81-1**

**E81-2**

**E81-3**

**E81-4**

**E81-5**

E81-1  DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E81-2  Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E81-3  DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E81-4  DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043624

**Leas, Rebecca, Commenter ID No. E81 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E81-5    See responses to E81-1 and E81-2.

BLM_0043625

**Lee, Carol, Commenter ID No. E85**

From:        mail_ulpeis
To:
Subject:     FW: uranium leasing in San Miguel County
Date:        Wednesday, June 19, 2013 4:12:35 PM

-----Original Message-----
From: Carol Lee []
Sent: Wednesday, June 19, 2013 4:08 PM
To: mail_ulpeis
Subject: uranium leasing in San Miguel County

Dear Sirs,

I am opposed to anymore uranium mining in San Miguel or Montrose counties for the following reasons:

1. The U.S has enough uranium stockpiled to fuel our current and projected reactors for over 100 years.

2. If the current uranium leasing program is approved it will sell our uranium to other countries. We do not need to sell to other countries. The stated purpose and need of the program proposed is for domestic supply.

3. 47% of the existing mines in the PEIS area exist within San Miguel county. The majority of our citizens have spoken out against mining uranium.

4. San Miguel county is uranium rich. Our citizens are still dealing with poorly run past uranium leasing programs. These old mines have not been cleaned up properly. This is where the money should be going!!

5. Uranim will never be a popular as gas, coal or renewables. No more money should be put into uranium but put into renewables.

6. I believe in the public hearings. I hope the DOE take the public comments seriously in the communities of Telluride, Grand Junction and Montrose.

Thank you for your time.
Carol Lee
Telluride

---

**E85-1**
 

**E85-2**
 

**E85-3**
 

**E85-4**

---

E85-1    The possibility that uranium or uranium ore from the ULP may be subject to being exported does not undermine the PEIS's stated purpose and need, and does not require that the PEIS's scope be expanded to analyze the export of uranium or uranium ore. Any export of domestic uranium or uranium ore from any source within the United States, including the ULP lease tracts, is strictly regulated by Nuclear Regulatory Commission (NRC) under the terms of the AEA and the NRC regulations, which impose requirements that must be satisfied before the NRC will grant a license to export any domestic uranium or uranium ore. See AEA, 42 U.S.C. §§ 2099, 2151-2160d; NRC regulations, 10 C.F.R. §§ 110.19-110.46. For example, 42 U.S.C. § 2099 forbids the NRC from licensing any person to export from the United States any uranium ore, or other source material, if the issuance of such a license "would be inimical to the common defense and security" or the health and safety of the public; 42 U.S.C. § 2155 gives the Executive Branch the authority to veto any export of uranium ore. Many more specific requirements are imposed in the other above-cited provisions of the AEA and the NRC regulations.

Therefore, DOE's proposed action in the PEIS does not address uranium ore exports, over which the NRC, not DOE, has authority; and the scope of analysis in the PEIS does not analyze the possibility that uranium ore from the ULP may be subject to export.

In addition, the possibility that uranium ore from the ULP may be subject to export, after a prospective exporter goes through the process of applying for and receiving the necessary permission from the NRC, does not undermine the stated purpose and need for agency action: to support the AEA provisions which authorized and directed DOE to develop a supply of domestic uranium, and to issue leases or permits for prospecting, exploration, mining, or removal of deposits of uranium ore in lands belonging to the United States to the extent DOE deems necessary to effectuate the provisions of the AEA (42 U.S.C. §§ 2096-2097). An active ULP program will be more successful in meeting that need than would an inactive program.

E85-2    Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

E85-3    The development of renewable energy on the ULP lease tracts is outside the scope of the PEIS and does not meet the "purpose and need" described in Section 1.4.

E85-4    Comment noted. DOE has carefully considered all public comments and the results of the PEIS evaluation and has identified Alternative 4 as DOE's preferred alternative in this PEIS.

BLM_0043626

## Leeds, Frank, Commenter ID No. E127

| | |
|---|---|
| From: | Frank Leeds |
| Sent: | Sunday, November 10, 2013 5:47 PM |
| To: | mail_ulpeis |
| Subject: | Clean Up and Clean Energy! |

Dear

Dear Mr. Plieness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Frank Leeds

1

BLM_0043627

**Final ULP PEIS**

*Appendix I: Comment Response Document*

## Leonard, Betsy, Commenter ID No. E10

| | |
|---|---|
| From: | Betsy Leonard |
| To: | mail_ulpeis |
| Subject: | Clean Up and Clean Energy! |
| Date: | Thursday, May 23, 2013 9:08:31 PM |

Dear

Dear Mr. Pikeness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher in a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential.

In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS states only "minor'" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP lessees.

I believe DOE can offer a program that supports sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Betsy Leonard

E10-1

E10-2

E10-3

E10-4

E10-5

---

E10-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E10-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E10-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E10-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043628

**Leonard, Betsy, Commenter ID No. E10 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E10-5    See responses to E10-1 and E10-2.

BLM_0043629

**Final ULP PEIS**

*Appendix I: Comment Response Document*

**Leonard, Betsy, Commenter ID No. E62**

| | |
|---|---|
| From: | Betsy Leonard |
| To: | mail_ulpeis |
| Subject: | Clean Up and Clean Energy! |
| Date: | Friday, May 31, 2013 11:44:33 PM |

Dear

Dear Mr. Plainess:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.   `E62-1`

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.   `E62-2`

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.   `E62-3`

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area.  Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.   `E62-4`

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.   `E62-5`

Sincerely,

Betsy Leonard

E62-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E62-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E62-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E62-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043630

**Leonard, Betsy, Commenter ID No. E62 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E62-5    See responses to E62-1 and E62-2.

BLM_0043631

**Light, Paul, Commenter ID No. E55**

From:     Paul Light
To:       mail_ulpeis
Subject:  Clean Up and Clean Energy!
Date:     Friday, May 31, 2013 8:02:43 PM

Dear

Dear Mr. Pikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health.  The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area.  Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy.  Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Paul Light

---

E55-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in PEIS (see Table 4.6-1).

E55-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy renewables" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E55-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E55-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Light, Paul, Commenter ID No. E55 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E55-5   See responses to E55-1 and E55-2.

**Livingston, Catherine, Commenter ID No. E51**

From: Catherine Livingston
To: mell_upeis
Subject: Clean Up and Clean Energy!
Date: Thursday, May 30, 2013 11:08:03 PM

Dear

Dear Mr. Pikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Catherine Livingston

E51-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E51-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E51-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E51-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043634

**Livingston, Catherine, Commenter ID No. E51 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E51-5     See responses to E51-1 and E51-2.

**Lobato, Tony, Commenter ID No. T53**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-25-2013

17

1  meetings.

2          Chip, please.

3          MR. CAMERON:  Thank you, Ray.  It's

4  time now to listen to your perspectives on this,

5  and we are going to go first to Tony Lobato, then

6  Jane Thompson and John Reams.

7          TONY LOBATO:  My name is Tony

8  Lobato.  I have got a couple observations from this

9  program, which I support, by the way.  Since the

10  conception of the DOE and the drilling of all the

11  lands around here, not only the ones that are

12  currently withdrawn, since the DOE basically

13  outlined the Uravan Mineral Belt and the vast

14  amount of that is currently held by private

15  companies and individuals, such as me -- I

16  currently have 50 mining claims in my name and as

17  an agent for 425 more, is there any way we could

18  possibly curtail this environmental impact

19  statement in part or all in the future when they

20  required us to do it --

21          THE COURT REPORTER:  I can't hear

22  you, sir.

23          TONY LOBATO:  I would really

24  appreciate it if there is some way we can

25  re-implement it because in the beginning, the DOE

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T53-1

T53-1 (Cont.)

T53-1  The ULP PEIS is intended to address the purpose and need for DOE's action at the ULP lease tracts, and other uranium mining projects not within the lease tracts are outside the scope. It does, however, address other projects within the region of cumulative influence (within a 50-mile radius from the ULP lease tracts) in the cumulative impacts evaluation.

**Lobato, Tony, Commenter ID No. T53 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-25-2013

18

1  has done all the drilling on the Uravan Mineral

2  Belt, not just what they have got reserved.  Thank

3  you.

4            MR. CAMERON:  Thank you for your

5  comment.  We are going to go to John Reams.

6            JOHN REAMS:  My name is John Reams.

7  I live in Naturita.  And on behalf of the Western

8  Small Miners Association, which I'm the president

9  of, we really support Alternative 4.  That makes

10  the most sense to us.  So we will probably put a

11  written comment together with the other stuff later

12  for you.

13            As an owner of a construction company,

14  Reams Construction Company, we have worked on the

15  reclamation of a lot of these original leases where

16  they were shut down and reclaimed, and they were

17  done very well.  So we've worked for the DOE on

18  that through different contractors to do the

19  reclamation.  The reclamation was done well, so I

20  don't have any problem with the way these things

21  will get reclaimed in the end.

22            And then also with the other hat on, as

23  the owner of Tomcat Mining Corporation, we actually

24  worked for Cotter Corporation in contract mining.

25  And we know how Cotter did with the mines they had

T53-1
(Cont.)

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

BLM_0043638

**L4-1**   Comment noted.



Lohmiller, Bruce, Commenter ID No. L4

safe_image.php.jpg - Gmail                                            Page 1 of 1

L4-1

Are Compression (taxi /
bruce.lohmiller@gmail.com
445 Chipeta Avenue #5

Bruce Lohmiller

Bruce Lohmiller
Mesa County Sheriff 2014

https://mail-attachment.googleusercontent.com/attachment/v/0/?ui=2&ik=52dc6aa851&vie...      4/2/2013

### Lyne, Beverly, Commenter ID No. T1

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

24

1  Beverly Lyne.

2       BEVERLY LYNE:  I'm Beverly Lyne, and I'm a

3  community health nurse.  I teach community health

4  nursing in the BSN program.  And I'd like to

5  acknowledge seven of my students -- eight of my

6  students who are here.  Don't give them the answers to

7  the extra credit questions, please. That's a little

8  joke.  Sorry.

9       I also wanted to acknowledge that I served

10  as one of the original members of the Rocky Flats

11  Citizens Advisory Board starting in 1993, so I was

12  part of that clean-up process there.  So my area of

13  expertise is more plutonium than uranium.

14       Also as an area of expertise in

15  participatory research in doing community assessment

16  and analysis, particularly working with vulnerable

17  communities and hearing and coming to consensus about

18  community needs.  Just as a little groundwork.

19       So I think basically I came here to learn

20  tonight and thank the DOE for holding the hearing here

21  -- it's convenient for me -- and also to give you a

22  perspective of a community health nurse, which

23  everyone is also happy to hear.

24       And also I would like to strongly encourage

25  that the process continue to include the following,

(866) 448 - DEPO   www.CapitalReportingCompany.com   © 2013

T1-1

T1-1   DOE welcomes and appreciates public participation on the NEPA process such as the one being conducted for the ULP PEIS. This process will continue.

The leases on the ULP lease tracts require detailed plans that include descriptions of monitoring and other activities that would be conducted.

All documents cited in the PEIS are available to the public via the project web site at http://ulpeis.anl.gov/

BLM_0043639

**Lyne, Beverly, Commenter ID No. T1 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

25

1   and that is the full involvement of communities'

2   public health professionals as well as the scientific

3   community to follow NEPA to the fullest extent in the

4   fullest intention of NEPA and including communities

5   and doing that analysis and decision making process.

6          Community assessment should provide a

7   complete assessment of the environmental issues around

8   the mines and the proposed mill to include the

9   community concerns in a way that is capturing

10  qualitative data in a way that can really inform our

11  decisions.

12          We need to have a current and explicitly

13  detailed characterization to monitor the situation and

14  the health risks that are currently posed by other

15  mediated sites as well as health risks associated with

16  each alternative and the phases of the alternatives in

17  a way that is based on our best knowledge of exposure

18  to uranium.

19          Finally, I would just refer you to the 1998

20  community assessment from the former Rocky Flats site.

21  The study utilized public health professionals to

22  produce a report that was highly useful to the DOE in

23  establishing clean-up.

24          So not the standards of the clean-up, but

25  the process around doing the clean-up and continued

T1-1
(Cont.)

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

BLM_0043640

**Lyne, Beverly, Commenter ID No. T1 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

26

T1-1
(Cont.)

1  management of the site.

2          Thank you.

3          MR. CAMERON:  Okay.  Thank you.  Thank you

4  very much.

5          Our next commenter is Kristin Pfaff.

6          KRISTIN PFAFF:  Hi, I'm Kristin Pfaff, I'm a

7  nursing student at Colorado Mesa; I'm here with my

8  fellow students.

9          One of my fellow students, Choi, and I just

10 completed a report on the mine and its potential

11 impacts, and I wanted to echo what Beverly said and

12 just encourage a thorough investigation of all the

13 lingering potential human health threats that could

14 remain long after the mine is gone.

15         And I guess personally, I would bring up

16 that in my observations over the past 10 years, I've

17 noticed an increase in the intensity of the spring

18 dust storms that we have, and I'm hoping the

19 Environmental Impact Statement will focus some

20 research on the impacts of what is being carried in

21 the surrounding valleys during those storms.  Thank

22 you.

23         MR. CAMERON:  Thank you, Kristin.

24         And Thomas Acker?

25         THOMAS ACKER:  I am interested in the aspect

(866) 448 - DEPO     www.CapitalReportingCompany.com     © 2013

BLM_0043641

**Magoon, Janet, Commenter ID No. E64**

From: Janet Magoon
To: mgl_uipeis
Subject: Clean Up and Clean Energy!
Date: Saturday, June 01, 2013 9:54:45 AM

Dear

Dear Mr. Pikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E64-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

E64-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E64-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

E64-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

E64-5

Sincerely,

Janet Magoon

---

E64-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E64-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E64-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E64-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043642

**Magoon, Janet, Commenter ID No. E64 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E64-5    See responses to E64-1 and E64-2.

## Magtutu, Gabe, Commenter ID No. E103

**From:** Gabe Magtutu
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, June 28, 2013 12:20:23 AM

Dear

Dear Mr. Pikeness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. | E103-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. | E103-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. | E103-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health.  The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area.  Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. | E103-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. | E103-5

Sincerely,

Gabe Magtutu

---

**E103-1**   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

**E103-2**   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

**E103-3**   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

**E103-4**   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043644

**Magtutu, Gabe, Commenter ID No. E103 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E103-5    See responses to E103-1 and E103-2.

BLM_0043645

**Mallard, Angela, Commenter ID No. L52**



L52-1

L52-2

L52-1    The PEIS evaluates the potential impacts to the Dolores, San Miguel, and Colorado Rivers and the aquatic biota inhabiting those rivers. Measures to minimize potential impacts from uranium mining in the ULP lease tracts are provided in Table 4.6-1. These measures include measures to avoid and minimize impacts to waterbodies and aquatic habitats for aquatic biota (see measures M-4 and M-7). A Biological Assessment (BA) has been prepared for consultation with the the U.S. Fish and Wildlife Service (USFWS)) regarding potential impacts of the ULP on species listed under the ESA (including the Colorado River endangered fish species and the Gunnison sage-grouse). PEIS text has been revised consistent with the BA and BO; see Appendix E and Section 4.3.6.4. Information on the desert bighorn sheep is provided in Section 3.6.2.3 of the PEIS. As evident from Table 3.6-15 in that section, the ULP lease tracts encompass only a small portion of the desert bighorn sheep activity areas within the three-county ULP study area. Potential impacts on bighorn sheep are addressed in Section 4.3.6.2 of the PEIS. DOE did consult with Colorado Parks and Wildlife (CPW) regarding the desert bighorn sheep during the preparation of the PEIS. Exclusion buffers from the Dolores River and sage grouse habitats, as well as desert bighorn sheep habitat protection or offsite habitat enhancement, may also be conditions of permits and lease requirements for mine sites. The Service, CPW, and BLM will have input on mitigation actions required under the ULP during their review of the EPPs.

L52-2    The evaluations presented in the PEIS are based on site-specific information available (see Section 1.3 for a summary of the site-specific information).

DOE believes that the PEIS evaluation is adequate in addressing the range of reasonable alternatives consistent with the purpose and need described in Section 1.4 of the PEIS. Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

BLM_0043646

**Maragon, Lisa, Commenter ID No. E41**

From: mail_ulpeis
To:
Subject: FW: Clean Up and Clean Energy!
Date: Wednesday, May 29, 2013 1:55:49 PM

-----Original Message-----
From: Lisa Maragon []
Sent: Tuesday, May 28, 2013 5:24 PM
To: mail_ulpeis
Subject: Clean Up and Clean Energy!

Dear

Dear Mr. Plileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"' environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation from private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Lisa Maragon

E41-1

E41-2

E41-3

E41-4

E41-5

---

E41-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E41-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E41-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E41-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Maragon, Lisa, Commenter ID No. E41 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E41-5    See responses to E41-1 and E41-2.

BLM_0043648

**Maragon, Lisa, Commenter ID No. E76**

From: Lisa Maragon
To: mail_ulpeis
Subject: Clean Up and Clean Energy!
Date: Monday, June 03, 2013 4:37:02 PM

Dear

Dear Mr. Pikeness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health.  The PEIS states only "minor"' environmental justice concerns are associated with increased uranium mining in this area.  Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy.  Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Lisa Maragon

E76-1

E76-2

E76-3

E76-4

E76-5

---

E76-1    DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E76-2    Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E76-3    DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E76-4    DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043649

**Maragon, Lisa, Commenter ID No. E76 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E76-5   See responses to E76-1 and E76-2.

BLM_0043650

**Marquardt, Michael, Commenter ID No. E34**

| | |
|---|---|
| From: | Michael Marquardt |
| To: | mail_ubeis |
| Subject: | Clean Up and Clean Energy! |
| Date: | Saturday, May 25, 2013 11:53:43 AM |

Dear

Dear Mr. Plieness:

I believe I have written before to ask, "why do we need a uranium mine?" I am writing again to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, support impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.  `E34-1`

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.  `E34-2`

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.  `E34-3`

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.  `E34-4`

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.  `E34-5`

Sincerely,

Michael Marquardt

---

E34-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E34-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E34-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E34-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In any case, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043651

**Marquardt, Michael, Commenter ID No. E34 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E34-5     See responses to E34-1 and E34-2.

BLM_0043652

**Marvel, Gail, Commenter ID No. W4**

Thank you for your comment, Gail Marvel.

The comment tracking number that has been assigned to your comment is ULPD50004.

Comment Date: April 18, 2013  07:42:26AM
Uranium Leasing Program PEIS
Comment ID: ULPD50004

First Name: Gail
Middle Initial:
Last Name: Marvel
Organization:
Address: 735 South Park Ave
Address 2:
Address 3:
City: Montrose
State: CO
Zip: 81401
Country: USA
Privacy Preference: Don't withhold name or address from public record
Attachment:

Comment Submitted:

RE: uranium program Montrose County
Please include me as a constituent who supports the fourth alternative listed in the draft PEIS, which would continue the program for at least the next ten years.

Failure to keep the program will have a negative effect on economic development for the West End of Montrose County.

W4-1

W4-1   Comment noted. DOE considered the results of the evaluation presented in the PEIS in addition to public comments received in its identification of DOE's preferred alternative in the PEIS. Alternative 4 which provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period is DOE's preferred alternative identified in this PEIS.

BLM_0043653

**May, Joan, Commenter ID No. T49**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

78

1  Welcome to Telluride, by the way.

2           MR. CAMERON:  Thank you very much.

3  We are going to go to our final two speakers, and

4  one is Joan May and Nick Kolachov.  This is Joan.

5           JOAN MAY:  Hi.  I'm Joan May, and

6  I'm a San Miguel County Commissioner, and San

7  Miguel County is one of the cooperating agencies so

8  we have been quite involved with this process.  And

9  you have received comments from us in the past and

10 you will receive comments this time.  Something

11 happens when you speak.  It seems like the clock

12 goes faster, so I'm going to try and be respectful

13 of the time frame and everybody has been here for a

14 long time.

15          My comments that I will make outside of

16 our written comments are:  I think you know that

17 this is Telluride's off season, and there are a lot

18 of people who are very concerned about this issue

19 who aren't here tonight.  You came here I think it

20 was about a year and a half ago in the summer.  We

21 had a meeting at the opera house and there were a

22 lot of comments.  Tonight we heard the same

23 comments really.  Very passionate, very

24 knowledgeable people who understand the issue and

25 understand the impacts to our region.  I hope you

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T49-1

T49-1   The evaluations presented in the PEIS for the various resources do address the potential impacts to San Miguel County. Based on the results of the PEIS evaluation and with implementation of mitigation measures, DOE believes that DOE's preferred alternative (Alternative 4) can be conducted in a manner that would be protective of human health and the environment.

**May, Joan, Commenter ID No. T49 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

79

```
 1  will listen to the comments and read the comments
 2  again from the previous meeting because they
 3  haven't changed.  They were just more plentiful
 4  then, even though it's pretty plentiful now.
 5          The only other comment I really have is
 6  that if you look at the map -- and thank you for
 7  providing that in the beginning -- San Miguel
 8  County really is where this lease program has a
 9  great effect.  If you look across the Western
10  Slope, we have more leased parcels than the
11  counties around us, and we feel that we deserve a
12  say in how our land is used here because it affects
13  us directly.
14          It's been mentioned many times that the
15  purpose and need for this program is stated.  It's
16  for energy, but we hope that you will consider that
17  domestic use of the uranium that's mined should be
18  the only use of it, and there really isn't demand
19  for that at this point.  Let's not squander what we
20  have and our resources that we have in our ground
21  here.  Let's keep those for when we have a purpose
22  and need for them that we know how to deal with
23  effectively, if that time ever comes.  Thank you,
24          MR. CAMERON:  Thank you, Joan, and
25  please come down, Nick.
```

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T49-1
(Cont.)

T49-2

T49-2    The possibility that uranium or uranium ore from the ULP may be subject to being exported does not undermine the PEIS's stated purpose and need, and does not require that the PEIS's scope be expanded to analyze the export of uranium or uranium ore. Any export of domestic uranium or uranium ore from any source within the United States, including the ULP lease tracts, is strictly regulated by Nuclear Regulatory Commission (NRC) under the terms of the AEA and the NRC regulations, which impose requirements that must be satisfied before the NRC will grant a license to export any domestic uranium or uranium ore. See AEA, 42 U.S.C. §§ 2099, 2151-2160d; NRC regulations, 10 C.F.R. §§ 110.19-110.46. For example, 42 U.S.C. § 2099 forbids the NRC from licensing any person to export from the United States any uranium ore, or other source material, if the issuance of such a license "would be inimical to the common defense and security" or the health and safety of the public; 42 U.S.C. § 2155 gives the Executive Branch the authority to veto any export of uranium ore. Many more specific requirements are imposed in the other above-cited provisions of the AEA and the NRC regulations.

Therefore, DOE's proposed action in the PEIS does not address uranium ore exports, over which the NRC, not DOE, has authority; and the scope of analysis in the PEIS does not analyze the possibility that uranium ore from the ULP may be subject to export.

In addition, the possibility that uranium ore from the ULP may be subject to export, after a prospective exporter goes through the process of applying for and receiving the necessary permission from the NRC, does not undermine the stated purpose and need for agency action: to support the AEA provisions which authorized and directed DOE to develop a supply of domestic uranium, and to issue leases or permits for prospecting, exploration, mining, or removal of deposits of uranium ore in lands belonging to the United States to the extent DOE deems necessary to effectuate the provisions of the AEA (42 U.S.C. §§ 2096-2097). An active ULP program will be more successful in meeting that need than would an inactive program.

BLM_0043655

## McKenney, Tom, Commenter ID No. E88

| | |
|---|---|
| **From:** | Tom McKenney |
| **To:** | mail_ulpeis |
| **Cc:** | |
| **Subject:** | PEIS - Comment on Reopening Uranium Mines |
| **Date:** | Wednesday, June 26, 2013 7:06:01 PM |

Please consider the actual need here in the United States for this specific resource.  This may well be better saved for a "rainy day" as opposed to selling this resource all over the world.
I do not believe that enough study was done to determine which of these mines are in more sensitive areas (on edge of Dolores River, sensitive micro environments, etc., .......) and therefor should be taken off the list thereby reducing the arc of devastation.

I thank you in advance for your consideration.

Tom McKenney


Tom McKenney

E88-1

E88-1   The possibility that uranium or uranium ore from the ULP may be subject to being exported does not undermine the PEIS's stated purpose and need, and does not require that the PEIS's scope be expanded to analyze the export of uranium or uranium ore. Any export of domestic uranium or uranium ore from any source within the United States, including the ULP lease tracts, is strictly regulated by Nuclear Regulatory Commission (NRC) under the terms of the AEA and the NRC regulations, which impose requirements that must be satisfied before the NRC will grant a license to export any domestic uranium or uranium ore. See AEA, 42 U.S.C. §§ 2099, 2151-2160d; NRC regulations, 10 C.F.R. §§ 110.19-110.46. For example, 42 U.S.C. § 2099 forbids the NRC from licensing any person to export from the United States any uranium ore, or other source material, if the issuance of such a license "would be inimical to the common defense and security" or the health and safety of the public; 42 U.S.C. § 2155 gives the Executive Branch the authority to veto any export of uranium ore. Many more specific requirements are imposed in the other above-cited provisions of the AEA and the NRC regulations.

Therefore, DOE's proposed action in the PEIS does not address uranium ore exports, over which the NRC, not DOE, has authority; and the scope of analysis in the PEIS does not analyze the possibility that uranium ore from the ULP may be subject to export.

In addition, the possibility that uranium ore from the ULP may be subject to export, after a prospective exporter goes through the process of applying for and receiving the necessary permission from the NRC, does not undermine the stated purpose and need for agency action: to support the AEA provisions which authorized and directed DOE to develop a supply of domestic uranium, and to issue leases or permits for prospecting, exploration, mining, or removal of deposits of uranium ore in lands belonging to the United States to the extent DOE deems necessary to effectuate the provisions of the AEA (42 U.S.C. §§ 2096-2097). An active ULP program will be more successful in meeting that need than would an inactive program.

Final ULP PEIS

Appendix I: Comment Response Document

**McTavish, Jodie, Commenter ID No. T16**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

49

1    And after looking at the Energy Fuels home

2 page, I understand that they will bring jobs to

3 Colorado. And I really appreciate that, because they

4 want to help us out when economy is really bad.

5    But at the same time, it's really important

6 for us to keep in mind the long-term effect of the

7 uranium mining.

8    The jobs will bring money to the economy for

9 a short term, but it's really important for us to

10 think about will this money help the residents of

11 Colorado to pay for their healthcare causes when they

12 are diagnosed with cancer or anything related to the

13 mining.

14    And I just thought that is important for us

15 to think about the short-term economy impact compared

16 to a long-term healthcare impact.

17    MR. CAMERON:  Okay.  Thank you.

18    Does anybody else want to make a comment?

19 And let's go to you first; come up and introduce

20 yourself, please.

21    And then we'll go to you.

22    JODIE MCTAVISH:  My name is Jodie McTavish,

23 and I worked at the Department of Energy as support

24 services in the Laboratory.  And we spent years

25 analyzing the samples and dealing with the remediation

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T16-1

T16-1    Comment noted. DOE has carefully considered all public comments and the results of the PEIS evaluation and has identified Alternative 4 as DOE's preferred alternative in this PEIS. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period.

BLM_0043657

**McTavish, Jodie, Commenter ID No. T16 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

50

1   and clean-up, and it's still not all cleaned up.

2          So we're spending -- or we have spent

3   millions and millions of dollars trying to clean up

4   this mess.

5          I do want to make a couple of comments about

6   previous comments that were made.  One was about being

7   open to other technologies.  I believe what the

8   gentleman is referring to is thorium powered generated

9   plants.  But we're not talking about thorium here,

10  we're talking about uranium.

11         Yes, it's worth pursuing the thorium issue,

12  but that's not the topic this evening.

13         I also want to make a comment that was made

14  to me years ago by a gentleman from a Canadian company

15  who was here.  His comment was, is that one of the

16  reasons they like to do business in the United States

17  is that our regulations are much less rigorous than

18  they are in Canada, so they were more than willing to

19  want to come here and develop our resources rather

20  than doing business in their own country.

21         And I think that the health issues and the

22  long-term impacts are not being addressed.  I think

23  the gentleman came up and spoke about comments, and he

24  was making statistics about safety issues.  Those are

25  only safety issues in the processing.  This isn't the

T16-1
(Cont.)

T16-1
(Cont.)

(866) 448 - DEPO     www.CapitalReportingCompany.com     © 2013

BLM_0043658

**McTavish, Jodie, Commenter ID No. T16 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

51

1  long-term health effects that affect people and create

2  cancer and all the other health issues that are

3  related to this industry.

4          MR. CAMERON:  Thank you, Jodie.

5          And yes, ma'am, would you join us up here?

6          JOAN WOODWARD:  Good evening.  I hadn't

7  planned to speak tonight, partly because I don't have

8  much of a voice.  So I'll make this very brief.

9          The individual who's sitting with the

10  environmental engineer, Energy Fuels, I believe was

11  the name, he said there were two reasons, as I recall,

12  why the project should go forward:  One was the need

13  for jobs and the other was a need for more energy

14  production.

15          In terms of the need for energy production

16  domestically, my understanding is we don't need

17  uranium; we have more than enough other resources.

18  The natural gas industry is doing very well.  We don't

19  need uranium here with all of the consequences.

20          In terms of the jobs, I don't think there

21  are that many jobs that would actually be generated at

22  this point in opening up some of these leases.  I also

23  think we could put those people to work much better in

24  terms of alternative energy rather than uranium.

25          I am concerned as well about water -- other

T16-1
(Cont.)

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

**Mercer, Karen, Commenter ID No. E66**

From: Karen Mercer
To: mail_ulpeis
Subject: Clean Up and Clean Energy!
Date: Saturday, June 01, 2013 11:20:55 AM

Dear

Dear Mr. Pikeness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Dr. Karen Mercer
Montrose CO 81401

PS: You can't undo a uranium mess. It is permanent for many many generations to come.

Karen Mercer

E66-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E66-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E66-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E66-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043660

**Mercer, Karen, Commenter ID No. E66 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E66-5    See responses to E66-1 and E66-2.

BLM_0043661

## Michaelis, Karen, Commenter ID No. E14

**From:** Karen Michaelis
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Thursday, May 23, 2013 10:34:36 PM

Dear

Dear Mr. Pikeness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher in a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.  **E14-1**

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential.  **E14-2**

In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.  **E14-3**

Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP lessees.  **E14-4**

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.  **E14-5**

Sincerely,

Karen Michaelis

**E14-1** DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

**E14-2** Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

**E14-3** DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

**E14-4** DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043662

**Michaelis, Karen, Commenter ID No. E14 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E14-5    See responses to E14-1 and E14-2.

BLM_0043663

**Miller, Glen, Commenter ID No. T6**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

30

1  I'm an environmental engineer for Energy Fuels.  And
2  Energy Fuels has eight of the lease blocks that are
3  included in this program.  I just want to state my
4  comment that these eight lease blocks provide a big
5  portion of our resources, and they're important to us
6  to help supply domestic uranium and provide jobs in
7  the community.  Thank you.
8         MR. CAMERON:  Thank you, Ryan.
9         Glen Miller, do you want to speak to us?
10        This is Glen Miller.
11        GLEN MILLER:  I'm Glen Miller.  I live in
12  Grand Junction.  What was that radio show?  "I use to
13  work in that town."  I worked with the USGS Map and
14  Geology and whatnot in that area back a half century
15  ago.  And I'll be brief.
16        I think we need to continue to allow DOE to
17  manage those leases, not BLM.  A lot of people don't
18  agree with me, but I have some facts -- well, they
19  seem to be facts -- they're not from the federal
20  government, but the National Science Foundation that
21  energy from nuclear sources is our safest form of a
22  great volume amount of energy.
23        I'll give you some numbers:  Mortality
24  rates. If nuclear is 1 in terms of mortality rate,
25  rooftop fatality, manufacturing, the whole thing --

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T6-1

T6-1    Comment noted. DOE has carefully considered all public comments and the results of the PEIS evaluation and has identified Alternative 4 as DOE's preferred alternative in this PEIS. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period.

Final ULP PEIS

**Miller, Glen, Commenter ID No. T6 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

31

1   people fall off roofs -- is five times as dangerous.

2        Wind is six times more dangerous; hydro is

3   15 times more dangerous.  And I'll just mention coal,

4   and we've got a lot of coal.  But coal is, in the

5   United States -- this is per megawatt produced --

6   1,600 times more dangerous in terms of fatalities.

7        We have a lot of uranium, and as far as I

8   can tell, some sort of nuclear power and solar power

9   is the future.  We're not going to run out of it.  If

10  we had (inaudible), I'm sure they're going to be

11  developed.  That would increase uranium in the ground.

12  We have the factor -- the utility of it, a factor of

13  15.

14        So those are some things to think about in

15  the long term.  It's safe and there's an awful lot of

16  it. Thank you.

17        MR. CAMERON:  Okay.  Than you, Glen.

18        Virgil Fenn?

19        VIRGIL FENN:  That would be me.  I'm up here

20  to appeal -- mainly I want to pitch a book.  I'd like

21  you to open your mind, both sides of it there, and do

22  some research.

23        There is more misinformation --

24        AUDIENCE MEMBERS:  Use the mic, Virgil.  We

25  can't hear you.

T6-1
(Cont.)

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

Appendix I: Comment Response Document

BLM_0043665

**Miller, Linda, Commenter ID No. T41**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

45

1   time frame.

2         And specifically under three areas --

3   under visual resources, for instance, that's the

4   longest list under Alternative 4 of effects to

5   landmarks and significant landscapes in our region.

6   And that is related part and parcel to our

7   livelihood here.

8         Under transportation, the increase in the

9   amount of truck traffic is on a scenic byway;

10  again, part of our livelihood, and it also affects

11  bicycle tourism.  And, in general, I do not see

12  where recreation has been adequately evaluated.

13        Under socioeconomics, I don't believe

14  that they account at all for our current

15  activities, which include agriculture, grazing and

16  organic farming, as well as recreation.

17        So in summary, I do not support your

18  alternative.  I appreciate the opportunity to

19  comment.  I think we should focus on renewables and

20  conservation and add provisions for climate change

21  and our weather events.  Thank you.

22              MR. CAMERON:  Thank you.  This is

23  Linda Miller, then we'll go to Ashley Boling.

24              LINDA MILLER:  Linda Miller of

25  Telluride.  Thank you for this opportunity.

T41-1

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T41-1    Reclamation of all legacy mines under DOE's oversight within the ULP has been completed.
There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed
under the ULP. Other mines in the region are not under the ULP and not under DOE's
oversight or authority to reclaim. DOE analyzed this alternative as part of its range of
reasonable alternatives in the PEIS.

BLM_0043666

**Miller, Linda, Commenter ID No. T41 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

46

1    I consider myself a citizen of this area,

2  and part of my responsibility is to be a steward of

3  this land and our resources.  I don't think we've

4  been doing a very good job taking care of the

5  messes that we have created.  San Miguel and

6  Telluride have a really good history of knowing

7  what it means not to reclamate what we have done.

8    And I base it on a history of an area

9  that you probably drove through coming here, and

10  that was the Newmir vanadium -- where's the

11  vanadium man? -- mill site on Highway 145, six

12  miles west of Telluride.  The mill was originally

13  developed in 1908, encompassing approximately 15

14  acres consisting of the former mill area, tailing

15  disposal area, and other facilities used to support

16  the milling operation.  It operated from 1920 until

17  the 1950s when the ore was depleted.

18    Not until 1998 when it was sold to Cyprus

19  Amax was there an agreement mandating remedial

20  activities.  At that time, the EPA and the Colorado

21  Department of Public Health and Environment

22  conducted a site assessment and determined that

23  subsurface residual radioactivity existed on both

24  sides of Highway 145.  Historical photos confirm

25  that the highway that was built went right through

T41-1
(Cont.)

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

BLM_0043667

**Miller, Linda, Commenter ID No. T41 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

47

1  the mill site.  More important, the lower side was

2  in the San Miguel river floodplain.  The cleanup

3  was 60 years in the making.  So we know about how

4  long it takes.

5          Today the public is told operations are

6  vastly improved.  The state of the art, best

7  operating procedures are in place, all kinds of

8  technology.  The industry is well prepared.

9  However, the BP's Deepwater Horizon blowout gave

10  lie to the state of the advances and our reliance

11  upon them.  There will be accidents.

12          On October 1, 2012, a rollover involving

13  a tanker illustrated the vulnerability in the

14  systems now in place.  The accident occurred at

15  Mile 24, Highway 141.  The truck was carrying

16  liquid asphalt.  The trucking company was

17  responsible and contacted a company called Storage

18  Tank Technologies.  Cleanup operations require a

19  permit from the Colorado transportation department,

20  as it was in their right-of-way.  The Colorado

21  State Patrol responded to the scene, but it

22  oversees the cleanup; it's not responsible for the

23  cleanup.  CDOT issued a permit October 9th but was

24  not aware it was an emergency.  Perhaps they were

25  not told it was liquid asphalt.

(866) 448 - DEPO     www.CapitalReportingCompany.com     © 2013

T41-2

T41-2  However infrequent, the uranium ore trucking companies have response contractors responsible for initial spill cleanup should an accident occur. CDOT and other agencies such as BLM may be required to provide permits for cleanup dependent on location. It is not expected that cleanup operations would involve an extended cleanup period due to cooperation among any state and federal agencies involved. As an example, an ore truck spilled its load over an embankment on U.S. 50, seven miles south of Salida, CO, on Thursday, February, 16, 2006. The highway was reopened the night of the accident after the initial spill cleanup. The area down the embankment where the majority of the ore spilled was stabilized the following morning. Despite the upcoming holiday (President's Day was the coming Monday), permits were obtained over the weekend from CDOT and BLM for cleanup activities. Through cooperation among the trucking company, its cleanup contractors, the milling facility that was the original destination for the ore shipment, CDOT, BLM, and CDPHE, the spill was cleaned up and the site remediated by the following Thursday, February 23.

BLM_0043668

**Miller, Linda, Commenter ID No. T41 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

48

1        To complicate matters further, the spill

2   site was archeologically rich and teams from the

3   Bureau of Land Management had to do an assessment

4   before they could bring in a bulldozer to clean it

5   up so no artifacts would be destroyed.

6        The spill only came to the attention of

7   authorities when the San Miguel County sheriff was

8   out riding on his motorcycle on his day off.  Over

9   two weeks has passed before the cleanup began.

10  Granted, the casualties were birds caught in the

11  sticky stuff and not humans.

12       I describe this sequence of errors just

13  to illustrate that the emergency procedures are not

14  there and there are all kinds of bureaucratic

15  blocks to getting things done quickly.  So you can

16  only imagine what kind of conditions we'll have

17  when there are uranium trucks going up and down

18  those roads.

19       These leases that are especially on the

20  river, on the Dolores and on our waterways, it's

21  our lifeblood, and they have to be protected.

22  Before more mining takes place -- and I'm for

23  Alternative 1, no mining taking place -- please

24  clean up the old sites, examine the potential for

25  highway accidents, and assess the availability of

(866) 448 - DEPO     www.CapitalReportingCompany.com     © 2013

T41-2
(Cont.)

T41-3

T41-4

T41-3   Mitigation measures have been identified in the PEIS to provide a 1/4 mile buffer and minimize any potential impacts to the Dolores River and the waterways (see Section 4.6 and Table 4.6-1).

T41-4   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

**Miller, Linda, Commenter ID No. T41 (Cont.)**



Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

49

1  emergency response for those events.

2        Remediation must be timely and complete.

3  Citizens cannot settle for less and the private

4  endeavors must post adequate bonds so the taxpayer

5  is not left with the bill.  It's interesting to

6  note at the headwaters of the San Miguel, we have a

7  Superfund site.  Right up there, and so far, it's

8  not complying with the consent decree.  At the end

9  of the San Miguel, we have another Superfund site.

10        MR. CAMERON:  Okay.  Linda, can --

11        LINDA MILLER:  I'm done.  I don't

12  want the San Miguel to be a sacrifice area.  Thank

13  you.

14        MR. CAMERON:  Thank you very much,

15  Linda.  Ashley Boling and then Linda Thurston.

16        ASHLEY BOLING:  Hi.  My name is

17  Ashley Boling.  I live in San Miguel County.  I'm a

18  father.  I'm a resident for the last 23 years here.

19        Just to be clear with everyone in this

20  room, I'm against any further uranium mining, any

21  current or proposed in the future uranium mining

22  and/or milling.

23        I recognize a lot of people in the crowd

24  here.  Could you raise your hand if anyone is here

25  from Energy Fuels Corporation.  Anyone here?

T41-4
(Cont.)

T41-4
(Cont.)

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

BLM_0043670

## Mitchell, Dennis, Commenter ID No. T19

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

21

1       PATRICK SIGLIN:  Evening, everyone.  My name

2  is Patrick Siglin, I'm a geologist for Black Range

3  Minerals; we're a uranium mining company and have an

4  office located in Golden, Colorado, and Canon City.

5       And I support the Department of Energy's

6  recommendation on this PEIS.  I support it because I

7  believe that the mining of uranium through the

8  generation of power by using uranium can be done

9  safely and efficiently.  And therefore, I believe that

10  it is in the best interest of Montrose County, Mesa

11  County, San Miguel County, the directly surrounding

12  areas, the state of Colorado and the United States of

13  America to follow the recommendation of the Department

14  of Energy at this point.  Thank you.

15       MR. CAMERON:  Thank you very much, Patrick.

16       Dennis?

17       DENNIS MITCHELL:  My name is Dennis

18  Mitchell; I've lived in Montrose for 36 years.  I

19  support the biggest amount of leases that you can

20  open.  For the simple reason that we don't mine our

21  resources in this country; we mine from somewhere

22  else, and they pollute a lot worse than us. If you

23  want to go look and see what they do in China, look on

24  the Internet and see the mining there.

25       I've been involved in mining and minerals my

{866} 448 - DEPO     www.CapitalReportingCompany.com     © 2013

T19-1

T19-2

T19-1   Comment noted. DOE has carefully considered all public comments and the results of the PEIS evaluation and has identified Alternative 4 as DOE's preferred alternative in this PEIS. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period.

T19-2   See response to T19-1.

**Mitchell, Dennis, Commenter ID No. T19 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

22

1  whole life, and this is important, because we don't

2  have this resource too much in this country.  Uranium

3  is hard to find, and we have to buy it from countries

4  we are not friends with.  They will cut us off one

5  day.

6          This stuff does not kill you.  It's in my

7  pocket.

8          There is another problem, too.  We have a

9  small group of people in this country that fight

10 everything over and over again.  A lot of them in

11 Telluride, who brought the last lawsuit, they used

12 more energy, they used more gas in their cars, and

13 they used more heat in their homes.  Yet they fight

14 everything.

15         They would close our coal plant down, they

16 will close this down, they'll close our oil and gas

17 down. And this has got to stop, because it's costing

18 all of us a fortune to live.

19         That's my comment.  Thank you.

20         MR. CAMERON:  Thank you, Dennis.

21         And Susie, can you come up?

22         SUSIE ADAMSON:  Okay.  Maybe you guys can

23 understand me.  I hope so.  My name is Susie Adamson;

24 I'm a Colorado native; I was born here.

25         MR. CAMERON:  Susie, can I can interrupt

T19-2
(Cont.)

T19-3

T19-3      See response to T19-1.

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

BLM_0043672

## Moreng, Joseph, Commenter ID No. E33

| | |
|---|---|
| From: | Joe Moreng |
| To: | mail_users |
| Subject: | Clean Up First |
| Date: | Saturday, May 25, 2013 11:16:31 AM |

Dear

Dear Mr. Plikeness:

I know that we need sources of uranium in the US, but believe that a program to clean up the old sites needs to be in place before any new mining is permitted.

Sincerely,

Joseph Moreng

Joe Moreng

E33-1

E33-1   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

BLM_0043673

**Myers, Chris, Commenter ID No. T33**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

23

1  starts with the DOE.  It starts with you.

2        Sorry.  I forgot to introduce myself.

3  I'm Bob Saunders, Mayor Pro Tem of Telluride,

4  although I'm speaking for myself.  Thank you for

5  your time.

6        MR. CAMERON:  Thank you.  Now we

7  will go to Chris.  This is Chris Myers.

8        CHRIS MYERS:  My name is Chris

9  Myers.  I serve on the Telluride Town Council and I

10  have for three years, but I'm here tonight speaking

11  as a citizen.  Given that the comment period for

12  written comments has until May 31st, it's likely

13  that the Telluride Town Council will issue formal

14  written comments and send those along shortly.

15        First, I would like to address some

16  broader issues, which I think Bob touched on.

17  First and foremost is that in 60 years of nuclear

18  industry in this country, we have failed as a

19  country politically and as citizens to ever come up

20  with a place for disposal of radioactive waste.

21  I'm absolutely flabbergasted that we are

22  considering increasing the supply of uranium in the

23  marketplace when we have failed miserably.  Nobody

24  wants it in any of their communities, in their

25  backyard, so why are we even considering the

(866) 448 - DEPO   www.CapitalReportingCompany.com   © 2013

T33-1 | T33-1 | Waste generated in addition to waste rock (which is mostly rock material removed to get to the ore deposits and is stockpiled and retained at the mine site location and then subsequently graded to a preferred slope, provided with a protective top-cover material, and seeded during reclamation) is either taken to a local landfill with a small amount of low-level radioactive waste, taken to the mill for processing along with the ore produced, or taken to a low-level radioactive waste disposal facility.

## Myers, Chris, Commenter ID No. T33 (Cont.)

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

24

1   possibility of expanding supply in this country.

2          Two, in 2008, there was a general

3   accounting office report that basically looked at

4   the revenues generated by the oil and gas industry

5   by leases and royalties and also looked at those

6   royalties and leases, lease income, generated by

7   the hardrock mining industry and found them

8   woefully inadequate based on the 1872 mining law.

9          There was a Congressional initiative that

10  has still failed to try and change that situation,

11  but there's potentially hundreds of millions of

12  dollars of royalties that are not secured by the

13  mining of uranium and other hardrock minerals,

14  which is basically taking away the legacy and

15  royalties from future generations in this country.

16  So I don't think that we should be even exploring

17  more extraction of hardrock minerals until we

18  figure out how we can better sustain income for the

19  public.

20          Three, on national security, there's no

21  guarantee that this uranium that is mined is going

22  to serve the United States. Quite likely, it could

23  be mined by foreign countries and exported to other

24  nations. How does that benefit the national

25  security? The Atomic Energy Act and the DOE

(866) 448 - DEPO   www.CapitalReportingCompany.com   © 2013

T33-1 (Cont.)

T33-2

T33-3

T33-2   The evaluation of the generation of revenues from mining is outside the scope of the PEIS and does not meet the purpose and need described in Section 1.4 of the PEIS.

T33-3   The possibility that uranium or uranium ore from the ULP may be subject to being exported does not undermine the PEIS's stated purpose and need, and does not require that the PEIS's scope be expanded to analyze the export of uranium or uranium ore. Any export of domestic uranium or uranium ore from any source within the United States, including the ULP lease tracts, is strictly regulated by Nuclear Regulatory Commission (NRC) under the terms of the AEA and the NRC regulations, which impose requirements that must be satisfied before the NRC will grant a license to export any domestic uranium or uranium ore. See AEA, 42 U.S.C. §§ 2099, 2151-2160d; NRC regulations, 10 C.F.R. §§ 110.19-110.46. For example, 42 U.S.C. § 2099 forbids the NRC from licensing any person to export from the United States any uranium ore, or other source material, if the issuance of such a license "would be inimical to the common defense and security" or the health and safety of the public; 42 U.S.C. § 2155 gives the Executive Branch the authority to veto any export of uranium ore. Many more specific requirements are imposed in the other above-cited provisions of the AEA and the NRC regulations.

Therefore, DOE's proposed action in the PEIS does not address uranium ore exports, over which the NRC, not DOE, has authority; and the scope of analysis in the PEIS does not analyze the possibility that uranium ore from the ULP may be subject to export.

In addition, the possibility that uranium ore from the ULP may be subject to export, after a prospective exporter goes through the process of applying for and receiving the necessary permission from the NRC, does not undermine the stated purpose and need for agency action: to support the AEA provisions which authorized and directed DOE to develop a supply of domestic uranium, and to issue leases or permits for prospecting, exploration, mining, or removal of deposits of uranium ore in lands belonging to the United States to the extent DOE deems necessary to effectuate the provisions of the AEA (42 U.S.C. §§ 2096-2097). An active ULP program will be more successful in meeting that need than would an inactive program.

**Myers, Chris, Commenter ID No. T33 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

25

1  policies before to manage the Uranium Leasing
2  Program was for national security.  These lands
3  were isolated and maintained after World War II for
4  the benefit of the U.S. people and the government.
5  That seems to be missing from this discussion.
6          Four, recently the Town of Telluride was
7  trying to appeal to the Colorado Department of
8  Public Health and Environment to protect the
9  Telluride environment and San Miguel County.  They
10  were looking at permitting -- which is still in the
11  permitting process -- the first uranium mill to be
12  approved in 25 years 55 miles upwind from
13  Telluride.
14          In order for Telluride to protect its
15  environment and the health of our community, we are
16  having to spend our own dollars to conduct a
17  baseline study to establish a baseline for
18  radionuclide presence in fugitive dust or in our
19  water supplies here in this part of our county.
20  Why are we doing that, and the CDPHE, our state
21  government, is not doing that?  Is the federal
22  government prepared to help us protect our
23  environment, should this program go forward with
24  the leasing of these public lands?  I don't believe
25  so, and I don't have the confidence in what's been

T33-3
(Cont.)

T33-4

T33-4  The region of influence or ROI analyzed for potential cumulative impacts included the Telluride area. See discussion in Section 4.7 and Figure 4.7-1 for a map showing the areas covered in the analysis.

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

*Final ULP PEIS*

*Appendix I: Comment Response Document*

*1-438*

*March 2014*

**Myers, Chris, Commenter ID No. T33 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

26

T33-4 (Cont.)

```
 1  demonstrated to me by our state government.
 2          Addressing the PEIS specifically:  A,
 3  water.  Water is the new gold in the wild west.
 4  Civilizations rise and fall based on water
 5  supplies.  When I was reading outside -- and I need
 6  to read more deeply into the PEIS -- I saw a figure
 7  of 8 million gallons per year used for Alternative
 8  5.  There was no such figure for Alternative 4, but
 9  it was said to be similar.  I would love to know
10  where that number is coming from; where that water
11  is coming from.  It's a critical issue.  That is
12  the mineral we should be preserving for the
13  economies and the people of this region.  I will
14  come back to some other issues with water as it
15  relates to climate change.
16          It doesn't appear that the PEIS addresses
17  the changing climate issues.  Though there are some
18  parcels which I completely object to that are
19  immediately adjacent to the shores of the Dolores
20  River, meaning that there's virtually an
21  impossibility of protecting our watershed from
22  contamination, but when you have lease parcels that
23  appear in an arid environment and we're getting
24  more and more violent events that create
25  flash-flooding -- the 100-year events seem to be
```

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T33-5

T33-5    The volume of water that is assumed to be needed for implementing the alternatives is based on historical or past mining conducted at the ULP lease tracts as discussed in Section 2.2. The volume of water assumed for Alternative 4 is presented in Table 2.2-5 and totals 6.3 million gallons per year for all the mines assumed to operate during a peak year.

The water would most likely be purchased from Nucla or Naturita as has been the case in the past.

T33-6

T33-6    Climate change was evaluated in the PEIS (see Sections 4.1.1, 4.2.1, 4.3.1, 4.4.1, and 4.5.1) in terms of greenhouse gas (GHG) generated by the ULP proposed action for the five alternatives, respectively. The results indicate that the ULP proposed action contributes a very small percentage to both Colorado, and U.S. GHG generated (up to 0.03% and 0.0005%, respectively). U.S. GHG emissions account for about one-fifth of global GHG emissions, and GHG emissions from ULP proposed action are up to about 0.0001%. The amount of GHG generated is generally used as a measure of the potential impacts on climate change . In contrast, ULP operations (followed by power generations at nuclear power plants) would displace considerable amounts of criteria and toxic air pollutants, and GHG emissions that would otherwise be released from fossil power plants. Accordingly, ULP operations would contribute to more positive impacts than adverse impacts on climate change. The text in the PEIS has been revised (see the same sections mentioned previously) to explain further how potential impacts from climate change were analyzed for the PEIS and what the results mean.

**Myers, Chris, Commenter ID No. T33 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

27

```
 1  more like 25-year events now.  I think we are
 2  basing data on the effect in terms of weather
 3  impacts and rainfall patterns -- it's old.  We need
 4  to be revising that and looking at what is
 5  currently affecting our weather patterns.
 6          Third, in terms of the reclamation of
 7  Alternatives 1 or 2, it seems to sound pretty awful
 8  that there is going to be dust disturbance and
 9  invasive weeds, and I'd like to see that if we are
10  going to be looking at reclaiming in Alternatives 1
11  and 2, which are the two that I would favor at this
12  point, is that I would like to see a thorough study
13  done because maybe some sites don't need to be
14  touched, if there aren't issues there.
15              MR. CAMERON:  Chris, I'm going to
16  have to ask you to sum up for us now.
17              CHRIS MYERS:  Terrific.  I have two
18  last points.
19          On endangered species, just in brief, in
20  hearing -- I heard in informal consultation with
21  the Fish and Wildlife that there's not likely to be
22  adverse effects, I support that you are revising
23  your BA, and I hope we get new data on the
24  endangered species.
25          E, I was frustrated to read about the
```

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T33-6
(Cont.)

T33-7

T33-7    The implementation of any alternative would be conducted with careful examination and determination of actual conditions at the time of implementation, and areas that need to be addressed or specific activities that would be conducted would be optimized and carried out in comformance of applicable regulatory requirements and best management practices.

T33-8

T33-8    PEIS text has been revised consistent with the BA and BO, see Appendix E and Section 4.3.6.4.

T33-9

T33-9    Sections 4.1.8.1, 4.2.8, 4.3.8.1, 4.4.8.1, and 4.5.8.1 of the PEIS examine how a reduction in the recreation economy in the ROI could impact the local economy. In addition, text has been added to reflect non-economic impacts to recreation in the ROI. In addition, an overview of periods of boom and bust economic conditions in the ROI has been added to Section 3.8.



**Myers, Chris, Commenter ID No. T33 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

28

1  socioeconomic impacts.  They seem to have been

2  written in a vacuum.  It says refer to the land use

3  impacts.  They don't reflect a geographic study and

4  examination of our region.  I think that's

5  sufficient to say, but given the billion-dollar

6  impact of our economy in this region that's based

7  on recreation and a state that has one of the

8  strongest renewable energy economies in the

9  country, I think we need to be looking at this

10  very, very differently.

11          Thank you.

12              MR. CAMERON:  Thank you very much

13  for your specific comments, and we are going to

14  hear from Shauna.  This is Shauna Palmer coming up.

15              SHAUNA PALMER:  Shauna Palmer, area

16  resident, property owner, and taxpayer.  Thank you

17  for this opportunity to comment.

18          Some quick questions that I jotted down.

19  I'm not asking for answers right now, but when I

20  heard your presentation, I'm just curious to hear

21  why the County prefers Alternative 1 to Alternative

22  2.  Not that I'm questioning it; I just -- it would

23  be great to hear.

24          The two lease tracts that will remain

25  inactive indefinitely, I'm curious on what basis

T33-9
(Cont.)

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

BLM_0043679

## Name Withheld, Commenter ID No. W2

Thank you for your comment

The comment tracking number that has been assigned to your comment is ULPD50002.

Comment Date: April 3, 2013  18:09:44PM
Uranium Leasing Program PEIS
Comment ID: ULPD50002

First Name: [Withheld by requestor]
Middle Initial: [Withheld by requestor]
Last Name: [Withheld by requestor]
Organization:
Address:
Address 2:
Address 3:
City: [Withheld by requestor]
State: [Withheld by requestor]
Zip: [Withheld by requestor]
Country: [Withheld by requestor]
Privacy Preference: Withhold name and address from public record
Attachment:

Comment Submitted:

The proposed Piñon Ridge Uranium Mill has the potential to impact not only the region immediately surrounding the Paradox Valley, but also all of the communities downwind and downstream. The application for the proposed mill does not meet the basic requirements to protect the environment and public health and safety.
I
Pino Ridge Uranium Mill -It's dangers and lack of $ producing!
• I am concerned about radioactive air pollution from the mill traveling downwind across most of Colorado and contaminating drinking water supplies.
• Where will the water come from to both operate the mill and keep the radioactive tailings from blowing into the airstream? I am concerned about the impacts on the Colorado River Basin, already experiencing severe drought conditions.
• I am concerned that any ground water contamination from the proposed tailings piles will eventually flow to the Dolores and Colorado River, contaminating drinking water supplies downstream. The state has ignored ground-water contamination from the Coter Mill in Canyon City, CO. Man-made tailings piles eventually leak. Why repeat the mistakes of our past and create a new toxic legacy in SW Colorado.
• As we see the impacts from the boom and bust cycles of the extractive industries impact communities across Colorado, I am concerned about the socioeconomic impacts on the rural communities of SW Colorado and the potential impacts on the tourist dependent communities directly downwind.
• The Colorado Plateau and specifically the Dolores River Basin is one of the most treasured landscapes of the west. We do not want to destroy the land, for false dreams of mineral wealth!
• I am concerned about the impacts on our roads from increased heavy truck traffic and the transport of radioactive materials to processing plants outside the U.S.
• The proposed $11M bond is woefully inadequate to pay the actual remediation costs and if history repeats itself, the owners will walk away leaving the responsibility to our children the taxpayers.
I appreciate your thorough consideration of the proposed mill. State regulators have fallen well short of their mission to protect the environment and public health of Colorado to date in this process. We ask that you carefully consider the first uranium mill proposed in 30 years in our state and either deny this application or impose strong conditions to ensure the protection of both public health and environment.
Sincerely,

W2-1

W2-1  The cumulative impacts analyzed in this PEIS include the potential impacts of the proposed Piñon Ridge Mill. See Section 4.7.1.1.

BLM_0043680

## Name Withheld, Commenter ID No. W9

Thank you for your comment

The comment tracking number that has been assigned to your comment is ULPD50009.

Comment Date: April 25, 2013   18:24:31PM
Uranium Leasing Program PEIS
Comment ID: ULPD50009

First Name: [Withheld by requestor]
Middle Initial:
Last Name: [Withheld by requestor]
Organization: Self
Address: [Withheld by requestor]
Address 2:
Address 3:
City: [Withheld by requestor]
State: [Withheld by requestor]
Zip: [Withheld by requestor]
Country: [Withheld by requestor]
Privacy Preference: Withhold name and address from public record
Attachment:

Comment Submitted:

I have watched with great concern as the Western Colorado Congress and Sierra Club have advocated in recent days for a complete re-analysis of the leasing procedure in the Uravan Uranium Belt.

Please do not be swayed and a well organized and well funded minority that are seeking to completely eliminate Uranium development from western Colorado.

Please proceed with the expanded program alternative in a deliberate and EXPEDIENT manner.

Western Colorado is depending on the continued recovery of it's Uranium Industry and the majority of it's citizens are depending on DOE to complete the EIS and finalize the leasing process.

Existing leases should not be reconsidered or rescinded for any reason.

W9-1

W9-1   Comment noted. Alternative 4 which provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period is DOE's preferred alternative identified in this PEIS.

BLM_0043681

## Name Withheld, Commenter ID No. L27



**DRAFT URANIUM LEASING PROGRAM PROGRAMMATIC ENVIRONMENTAL IMPACT STATEMENT (DOE/EIS-0472-D)**
U.S. Department of Energy

### WRITTEN COMMENT FORM
*Public comment period closes on May 31, 2013*

Mr. _____ Mrs. _____ Ms. _____ Mr. & Mrs. _____ Dr. _____

Name: _____

Title: _____

Organization: _____

Address: _____

City: _____ State: _____ Zip Code: _____

Phone: _____ E-Mail Address: _____

*Comment:* I want to see uranium being mined in Western Colorado. It can be done safely and we need uranium production for the benefit of our County.

_____

_____

_____

Sincerely,

_____

*Please use other side if more space is needed.*

**WITHHOLDING OF PERSONAL INFORMATION:** Information you provide on this form may be published as part of the public record for this project, including publication on the Internet. Individual respondents may request confidentiality by checking one of the two boxes below. The DOE will honor such requests to the extent allowed by law. All information from organizations and businesses, or from individuals identifying themselves as representatives or officials of organizations or businesses, will be available to the public in their entirety.

☒ Withhold my name and address from the public record.

☐ Withhold only my address from the public record

Comment form may be mailed to:
Mr. Ray Plieness
DOE ULP PEIS Document Manager
Office of Legacy Management
U.S. Department of Energy
11025 Dover Street, Suite 1000
Westminster, CO 80021

Comment form may be sent by electronic mail to: ulpeis@lm.doe.gov

| L27-1 | L27-1 | Comment noted. Alternative 4 which provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period is DOE's preferred alternative identified in this PEIS. |

BLM_0043682

## Niederkruger, Eric, Commenter ID No. T4

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

28

1  preferred process, which is number 4.  I have to ask

2  myself, the Department of Energy, if they've made up

3  their minds and there's a preferred process, I really

4  am curious to know how much impact any of our

5  statements will have on the decision making process.

6  It's a concern of mine as a small-d democrat.  Thank

7  you.

8       MR. CAMERON:  Thank you, Thomas.  And I know

9  that the DOE staff and other experts will, when we

10  finish the meeting -- not only are you going to be

11  able to ask them questions about the information, but

12  they might want to explore some of the comments that

13  they've heard tonight such as that one.  So thank you

14  very much for those comments.

15       We're going to go to Eric Niederkruger.

16       If you could come up to the podium?

17       ERIC NIEDERKRUGER:  Good evening.  I

18  submitted written comments, and I have just a few

19  brief comments now in person I'd like to say.

20       First off, I'd like to thank everybody who

21  came here tonight, despite the billions of dollars

22  that have been spent to keep you at home watching

23  television.

24       I get melancholy when I look around my

25  virtual neighborhood and I hear such bittersweet terms

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T4-1

T4-1  Comment noted. Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

**Niederkruger, Eric, Commenter ID No. T4 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

29

1 bandied about such as "legacy." I've been very

2 blessed in my life and I very much want to implicate a

3 sense in my descendants of honor. Several generations

4 from now, may all our natives be remembered with honor

5 and joy.

6          Unfortunately, long before then, the true

7 scope of the Fukushima reactor meltdown from Japan has

8 begun to be felt in our Pacific Northwest and, indeed,

9 much of the world. It's a current event issue that is

10 being suppressed by the mainstream media that we

11 should all be very concerned about in addition to this

12 issue.

13          I'm not suggesting that uranium is fuel

14 incarnate; I am suggesting it is our biggest challenge

15 to fully remediate.

16          In sum, I'm not a big fan of big federal

17 government, and no energy source is more intertwined

18 with the big federal government than nuclear power.

19          This alone is enough for me, but there's so

20 much more. Remember the word "legacy." In this case,

21 it is a euphemism for toxic radioactive waste.

22          Thank you.

23          MR. CAMERON: Thank you, Eric.

24          We're going to go to Ryan Ellis next.

25          RYAN ELLIS: Hello, my name is Ryan Ellis.

T4-1
(Cont.)

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

BLM_0043684

## Oakes, Meagan, Commenter ID No. W17

Thank you for your comment, Meagan Oakes.

The comment tracking number that has been assigned to your comment is ULPD50017.

Comment Date: June 4, 2013  22:01:41PM
Uranium Leasing Program PEIS
Comment ID: ULPD50017

First Name: Meagan
Middle Initial: W
Last Name: Oakes
Organization:
Address: 329 Wayne Robertson Rd
Address 2:
Address 3:
City: Chatham
State: VA
Zip: 24531
Country: USA
Privacy Preference: Don't withhold name or address from public record
Attachment:

Comment Submitted:

HELL NO WE WONT GLOW!!! HELL NO WE WON'T GLOW!!!    | W17-1

W17-1    Comment noted.

## Odav, Ky, Commenter ID No. L12



April 17, 2013

ATTN: Ray Plieness, PEIS Document Manager
Office of Legacy Management
U.S. Department of Energy
11025 Dover Street, Suite 1000
Westminster, CO 80021

RE: Draft Uranium Leasing Programmatic Environmental Impact Statement

Dear Mr. Plieness and DOE staff members:

There appears to be a concerted effort in this country, and in this part of the west in particular, to bring any and all mining activity to a halt. This is irrational and irresponsible.

L12-1

There is expected to be a uranium shortage in the coming years, as the benefits of nuclear power become more widely realized and nuclear-powered plants become more widespread around the world.

If the goal is environmental conservation, it needs to be noted that if we do not mine for that uranium–some other country will, and chances are very good that that country's environmental standards fall well short of ours.

Our environmental standards are sufficiently high that we can have mining projects such as the one this PEIS was drafted for, without incurring any significant environmental impacts on the land, water, air or habitat.

L12-2

I highly doubt that any other country on earth, with the quantity of uranium that we have, would so thoroughly examine each and every aspect of the natural environment that potentially could be in some way impacted, as has been done with this PEIS.

As the document makes clear, the Uranium Leasing Program would be carried out in a fashion that maintains the health and sustainability of the surrounding natural areas. Could any other country make the same statement with as much earned confidence?

The economic benefits of the program are as great as the environmental impacts are small.

L12-3

The recovery of this uranium will provide much needed job growth in a part of the country that is still reeling from the downturn in our economy. Those jobs will spur even more economic activity, and trigger regional prosperity.

**L12-1** Comment noted. DOE has carefully considered all public comments and the results of the PEIS evaluation and has identified Alternative 4 as DOE's preferred alternative in this PEIS. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period.

**L12-2** See response to L12-1.

**L12-3** See response to L12-1.

## Oday, Ky, Commenter ID No. L12 (Cont.)

This potentially means newer schools, more services, repaired roads, and more of our young people staying in the area. The alternative, one which the opponents of this program seem to want, is further decline, more families moving away, and increasing hardship for those who remain.

L12-3 (Cont.)

You have a stark choice to make – selecting an alternative like No. 4 that will help protect the planet's health while expanding economic opportunity at home, or one like the opponents want, which will drive those jobs overseas to countries with much lower environmental standards.

L12-4    L12-4    See response to L12-1.

It should be an easy decision to move forward with Alternative 4.

Thank you for accepting my comments,

Ky Oday
P.O. Box 3028
Grand Junction,
CO 81502

BLM_0043687

**Oglesby, Betty, Commenter ID No. T23**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

27

1    And I do have an issue with just one of the
2    things I saw up there about the four species of fish
3    that potentially will be impacted.  I believe there's
4    only four lease tracts, probably, right above the San
5    Miguel in Uravan that might have potential to impact
6    those fish.
7    But again, with the criteria we have to deal
8    with with the State just to get that mine permit,
9    surface water quality and ground water quality are big
10   issues for them.  And I really don't expect that there
11   will be any problem with any of those fish that you
12   guys have listed in there that you're thinking about.
13   So again, I'm all for the alternative 4, 5
14   or 3.  So thank you.
15   MR. CAMERON:  Thank you, Glen.
16   And Betty?
17   BETTY OGLESBY:  Thank you.  I'm Betty
18   Oglesby, and I lived in this area from '70 to '92.
19   Actually, I worked for Glen Williams back in the late
20   '70s and early '80s.  So I do approve this, I support
21   it.  I don't think there's a negative impact here; I
22   don't think there is a negative air quality impact.
23   I lived there, I raised my kids there, I
24   worked for the mine, I've been there.  I've lived it.
25   And I do not believe there's an impact to the fish in

(866) 448 - DEPO   www.CapitalReportingCompany.com   © 2013

T23-1

T23-1   Comment noted. DOE has carefully considered all public comments and the results of the PEIS evaluation and has identified Alternative 4 as DOE's preferred alternative in this PEIS. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period.

BLM_0043688

**Oglesby, Betty, Commenter ID No. T23 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

28

1  that river or bedrock either.  So I know we had scenic
2  river impact studies going about a year ago; I worked
3  on the studies in the Delta area and worked with some
4  of the people in San Miguel County doing those.  So I
5  do not think there is an impact.  Thank you.
6          MR. CAMERON:  Thank you very much, Betty.
7  We're going to go to Wally Smith and then Marvin
8  Ballantyne and Jim Riddell.
9          WALLY SMITH:  I'm Wally Smith.  I live in
10  Montrose.  I've lived in the west almost all my life,
11  except a couple years.  I am a downwinder.  And mining
12  is not like it used to be, let me tell you.  It is a
13  total different picture.
14          Everybody throws up all the problems we've
15  had in the past; yes, we had to win World War II, but
16  we won it.  And a lot of the west end was opened up
17  (inaudible) was after the war.  And the canyon had no
18  road down through there, and it was paved and done by
19  the Department of Energy, I think, in the '40s.
20          And that was to get uranium out of there.
21  I'd just like to say that I've been in the Caribbean
22  quite a bit and in South America, and the Chinese are
23  buying up a lot of the minerals and the gas.  And this
24  should scare you to death.
25          We have two mines in Ouray County.  I think

T23-1
(Cont.)

(866) 448 - DEPO     www.CapitalReportingCompany.com     © 2013

BLM_0043689

## Olmstead, Dennis, Commenter ID No. E104

From: Dennis Olmstead
To: mail_ulpeis
Subject: Clean Up and Clean Energy!
Date: Friday, June 28, 2013 6:26:17 AM

Dear

Dear Mr. Pikness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative," one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health.  The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area.  Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Dennis Olmstead

E104-1

E104-2

E104-3

E104-4

E104-5

E104-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E104-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E104-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E104-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

BLM_0043690

**Olmstead, Dennis, Commenter ID No. E104 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E104-5   See responses to E104-1 and E104-2.

BLM_0043691

**Palmer, Shauna, Commenter ID No. T34**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

28

1 socioeconomic impacts.  They seem to have been
2 written in a vacuum.  It says refer to the land use
3 impacts.  They don't reflect a geographic study and
4 examination of our region.  I think that's
5 sufficient to say, but given the billion-dollar
6 impact of our economy in this region that's based
7 on recreation and a state that has one of the
8 strongest renewable energy economies in the
9 country, I think we need to be looking at this
10 very, very differently.
11        Thank you.
12            MR. CAMERON:  Thank you very much
13 for your specific comments, and we are going to
14 hear from Shauna.  This is Shauna Palmer coming up.
15            SHAUNA PALMER:  Shauna Palmer, area
16 resident, property owner, and taxpayer.  Thank you
17 for this opportunity to comment.
18        Some quick questions that I jotted down.
19 I'm not asking for answers right now, but when I
20 heard your presentation, I'm just curious to hear
21 why the County prefers Alternative 1 to Alternative
22 2.  Not that I'm questioning it; I just -- it would
23 be great to hear.
24        The two lease tracts that will remain
25 inactive indefinitely, I'm curious on what basis

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T34-1

T34-1    While two lease tracts are currently not leased, the PEIS evaluation included those tracts for completeness, and DOE may consider leasing them in the future if warranted.

**Palmer, Shauna, Commenter ID No. T34 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

29

1  you say that.  How do we know we can count on that.

2          Another question, 1 acre-foot versus 19

3  acre-foot, if I heard that right.  You decided that

4  it actually would impact.  That's quite a

5  significant oversight.  And I have a feeling that

6  that's an example of one of the reasons that the

7  Department earns some scepticism from the public

8  that you serve, those of us that you work for.

9  Just to make a point about that.

10         The cumulative impacts are considered --

11  they are considered in this and I'm wondering,

12  really, because even if the State Health Department

13  doesn't -- and I realize there's jurisdictional

14  issues there, but that's another issue I'm

15  skeptical about.

16         Negligible cumulative impacts, that some

17  of them were considered negligible?  Uranium mining

18  impacts are negligible compared to other impacts

19  like recreation?  To me, that's a Twilight Zone

20  kind of thing.  I'm showing my age here with that

21  older TV show.  But just some of the things you

22  guys say, I just do not understand how it could

23  possibly be true.

24         But mostly I wanted to just say that I

25  would echo that the uranium/nuclear industry is

(866) 448 - DEPO   www.CapitalReportingCompany.com   © 2013

T34-1
(Cont.)

T34-2

T34-3

T34-4

T34-2    The threshold number where a biological assessment is required is if potential water depletion impacts could be 0.1 acre-foot or more. The evaluation of Alternative 4 (DOE's preferred alternative) indicates that the amount of water depleted from the Colorado River watershed is about 19 acre-feet for the assumed 10 years of mining operation at the peak year scenario. Because of this estimate, DOE prepared a Biological Assessment (BA) to submit to the USFWS for their consideration. The USFWS has issued a biological opinion. PEIS text has been revised to be consistent with the BA and BO (see Appendix E for the BA and the BO, and Section 4.3.6.4 for the revised text).

T34-3    The cumulative impacts analysis in Section 4.7 of the PEIS was done consistent with CEQ guidelines and analyzed past, present and foreseeable future actions within the region of cumulative influence determined as a 50-mile radius for this PEIS.

T34-4    The evaluation of the use of the ULP land for development of solar energy or renewable energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for such purposes is not excluded by the ULP Program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies, including many based on renewable sources.

See discussion in Section L.3.6 regarding concerns for export of uranium.

**Palmer, Shauna, Commenter ID No. T34 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

30

1   like a dinosaur, and the United States is behind
2   even the major economies and countries, even of
3   Europe, in switching.  We say we want to switch,
4   but we have not paid attention; we are not living
5   our words.  The federal government could be leading
6   that, including the Department of Energy.  You guys
7   could be heros in leading us; instead, we are being
8   dinosaurs.
9           The huge risks -- I think this sums it
10  up.  I mean, there are numerous things.  It
11  undermines the alleged goal of switching to
12  sustainable energy.  It hurts national security
13  because, like Chris said, it can go to foreign
14  countries.  It could be used against us, including
15  the barium mill permit that was given.  His
16  contacts are mostly, from what I've read, with
17  other countries.
18          It also could be used against us, even if
19  it goes into just nuclear power, because our
20  nuclear power plants are not even adequately
21  protected for security reasons, either from
22  terrorism or even from natural events.  They tend
23  to be, it seems like, built on earthquake faults.
24          We also used to hear that nuclear power
25  was cheap.  That's only true if you do not include

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T34-4
(Cont.)

T34-5

T34-5     Comment noted.

**Palmer, Shauna, Commenter ID No. T34 (Cont.)**

Final ULP PEIS

Appendix I: Comment Response Document



Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

31

1  adequate, cost-effective analysis of true security
2  and cleanup, which the industry knows it has not
3  done.  Nuclear power is clean.  That's even a bogus
4  argument.
5          But when you really look at the bottom
6  line, the huge risks, dangers, and costs of the
7  uranium/nuclear industries are well known by the
8  informed.  They are so well known that the industry
9  would have collapsed -- this is what I have read
10  extensively -- would have collapsed if not for its
11  success at lobbying for taxpayer moneys, low-cost
12  government loans, if not outright investments, and
13  programs like the Superfund site and the programs
14  that take care of uranium miners after they have
15  lost their health.
16          MR. CAMERON:  And, Shauna, could you
17  wrap it up.
18          SHAUNA PALMER:  Okay.  So in other
19  words, taxpayer subsidies are necessary to prop up
20  this industry because the private sector does not
21  adequately invest or even insure the nuclear
22  industry and the toxic sites that are left behind,
23  and you don't have a plan to do that yet.  I think
24  it's insanity, frankly, to continue.
25          MR. CAMERON:  Thank you, Shauna, for

(866) 448 - DEPO    www.CapitalReportingCompany.com    © 2013

T34-5
(Cont.)

T34-6     T34-6     Comment noted.

T34-6
(Cont.)

**Parish, Barbara, Commenter ID No. E71**

From: mail_ulpeis
To:
Subject: FW: Clean Up and Clean Energy!
Date: Friday, June 28, 2013 11:15:54 AM

-----Original Message-----
From: Barbara Parish []
Sent: Friday, June 28, 2013 10:34 AM
To: mail_ulpeis
Subject: Clean Up and Clean Energy!

Dear

Dear Mr. Plieness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to allow a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Barbara Parish

E71-1

E71-2

E71-3

E71-4

E71-5

E71-1   DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E71-2   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E71-3   DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E71-4   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Parish, Barbara, Commenter ID No. E71 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E71-5    See responses to E71-1 and E71-2.

BLM_0043697

### Parker, Jennifer, Commenter ID No. W8



810A Tabernash Lane
Ridgway, Colorado 81432
April 23, 2013

Ray Plieness, PEIS Document Manager
Office of Legacy Management
US Department of Energy
11025 Dover Street, Suite 1000
Westminster, Colorado 80021

RE: Uranium Leases

Dear Mr. Plieness:

The possibility of the Department of Energy granting uranium leases in southwest Colorado is of great concern to me. I strongly believe that these tracts MUST be cleaned up and reclaimed for the purposes of sustainable and renewable energy. The jobs that would be created in the clean up would be extensive. Additionally the jobs that would be created in a sustainable and renewable energy effort would be significant and without the inherent health risks. There appears to be a HUGE stockpile of uranium and a weak market for same. Why would we put uranium miners at further risk together with citizens in the nearby communities? I believe that to do so is incredibly negligent. The health risks and risks to an economy which relies on tourism and second homes to thrive would be irresponsible. Therefore, I would ask (and strongly urge) you to cancel this lease program and to reevaluate the previous lease program for uranium mining.

I thank you for your careful and thoughtful consideration of my requests.

Sincerely,

Jennifer Park

Jennifer Parker

W8-1

W8-2

W8-1   Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

The evaluation of the use of the ULP land for development of solar energy or renewable energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for such purposes is not excluded by the ULP Program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies, including many based on renewable sources.

W8-2   DOE considered the results of the evaluation presented in the PEIS in addition to public comments received in its identification of DOE's preferred alternative for the PEIS. Alternative 4 which provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period is DOE's preferred alternative identified in this PEIS.

With regard to concerns that there is already a stockpile of uranium in the U.S. for domestic use, the development of a domestic uranium supply, as authorized and directed by Congress in the AEA, enables DOE to support future demand that is uncertain at the present time, whatever its exact level may turn out to be in the future.

BLM_0043698

**Parker, Jennifer, Commenter ID No. T36**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

34

1   continues to haunt the region.  It is totally

2   irresponsible to propose additional leasing of

3   public land for uranium development and mining

4   before the previously leased parcels are reclaimed.

5          Cleaning up old uranium mine sites will

6   create permanent jobs in the region which will

7   strengthen our economy and create jobs in our rural

8   communities.  Once these disturbed areas are clean,

9   the Department of Energy can take advantage of the

10  recognized potential for solar energy in the leased

11  areas by developing renewable energy projects on

12  these sites.

13         Thank you for considering my comments.

14         MR. CAMERON:  Thank you.  Now we

15  will have Jennifer Parker.

16         JENNIFER PARKER:  So many of the

17  people that have spoken before me have hit upon a

18  lot of my points, so I won't belabor them.  But I

19  do have to say that my impression, and it is an

20  impression, of the uranium industry is that it's

21  dirty, dangerous, and deadly.  We have so many

22  people in this area who are receiving help with

23  diseases that they have, with conditions that they

24  have and, like some of the people before me have

25  said, it seems insane to be even considering this.

T36-1

(866) 448 - DEPO     www.CapitalReportingCompany.com     © 2013

T36-1     Comment noted. DOE has carefully considered all public comments and the results of the PEIS evaluation and has identified Alternative 4 as DOE's preferred alternative in this PEIS.

BLM_0043699