**Parker, Jennifer, Commenter ID No. T36 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

35

We have a stockpile of uranium that I understand -- and I could be misinformed -- that will last us 100 years. We also know that the uranium in the ground is the safest possible place for it to be. I would agree with my husband, which doesn't happen very often, and that is that we should reclaim the mining sites that we have, putting people to work to do so, and then using those areas, since they are already set aside, for renewable energy. There is no question we have plenty of sun in Colorado and plenty of wind.

Thank you.

MR. CAMERON: Thank you, Jennifer.

We are going to go to Catherine Peterson next and then to Paul Szilagyi.

CATHERINE PETERSON: I'm actually thinking of moving closer, over to Norwood, to this area, so I guess I should go to the other hearing also in Naturita.

But it seems like in talking to you, it feels like you are being held hostage, that when you talk about your options, that you're like, oh, well, we have to settle on something in the middle. And when we talk about Option 2, it's like, okay, well, if we don't do Option 1, Option 2 is going to

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T36-2

T36-3

T36-2 With regard to concerns that there is already a stockpile of uranium in the U.S. for domestic use, the development of a domestic uranium supply, as authorized and directed by Congress in the AEA, enables DOE to support future demand that is uncertain at the present time, whatever its exact level may turn out to be in the future.

T36-3 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

The evaluation of the use of the ULP land for development of solar energy or renewable energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for such purposes is not excluded by the ULP Program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies, including many based on renewable sources.

**Parker, Jennifer, Commenter ID No. L13**

Thank you for your comment, Jennifer Parker.

The comment tracking number that has been assigned to your comment is ULPD50008.

Comment Date: April 23, 2013 09:46:48AM
Uranium Leasing Program PEIS
Comment ID: ULPD50008

First Name: Jennifer
Middle Initial:
Last Name: Parker
Organization:
Address: 810a tabernash lane
Address 2:
Address 3:
City: Ridgway
State: CO
Zip: 81432
Country: USA
Privacy Preference: Don't withhold name or address from public record
Attachment:

Comment Submitted:

[L13-1] The possibility of the DOE granting uranium leases is of great concern to me. I strongly believe that these tracts MUST be cleaned up and reclaimed for the purposes of sustainable and renewable energy. The jobs that would be created in the clean up would be extensive. Additionally the jobs that would be created in a sustainable and renewable energy effort would be significant and [L13-2] without the inherent health risks. There appears to be a HUGE stockpile of uranium and a weak market for same. Why would we put uranium miners at further risk together with citizens in the nearby communities. I believe that to do so is incredibly negligent. The health risks and risks to an economy which relies on tourism and second homes to thrive would be irresponsible. Therefore, I would ask (and strongly urge) you to cancel this lease program and to reevaluate the previous lease program for uranium mining.

L13-1 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

The evaluation of the use of the ULP land for development of solar energy or renewable energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for such purposes is not excluded by the ULP Program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies, including many based on renewable sources.

L13-2 With regard to concerns that there is already a stockpile of uranium in the U.S. for domestic use, the development of a domestic uranium supply, as authorized and directed by Congress in the AEA, enables DOE to support future demand that is uncertain at the present time, whatever its exact level may turn out to be in the future.

## Parker, Randy, Commenter ID No. T35

those comments. We are going to go next to Randy Parker and Jennifer Parker.

RANDY PARKER: As a year-round resident of Ridgway, Colorado, I'm very concerned about the Department of Energy's proposed leasing of public lands for uranium exploration and mining. There are better choices that will not adversely affect the citizens of Western Colorado, their health, their water, their air, their economy, than increased uranium development.

T35-1: The inherent boom/bust cycle of the uranium industry has failed to provide any long-term economic gain to our region. In fact, the history of uranium mining in this region has been a legacy of waste and radioactive contamination that continues to burden the taxpayers of this region and the state of Colorado.

I noted the 65-million-dollar figure that was generated as revenue from these leases. That pales in comparison to the $1 billion the taxpayers of the state of Colorado have paid to clean up the nuclear industry.

T35-2: The future of Western Colorado and the Telluride and Ridgway region, in particular, is based on agriculture, conservation, recreation, and

T35-1 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

Lease tract operations are currently covered by reclamation bonds, calculated by DOE based on site-specific conditions and deemed sufficient to reclaim those conditions in coordination with CDRMS.

T35-2 The cumulative impacts analysis for a 50-mile buffer area is adequate as it emcompasses the largest region of influence (ROI) for any of the resource areas evaluated in the PEIS (see Chapter 3 for ROI descriptions for each resource area evaluated in the PEIS). Past, present, and foreseeable future projects (regardless of ownership) within the 50 mile buffer area are addressed in the cumulative impacts analysis in Section 4.7 of the PEIS.

The range of reasonable alternatives evaluated in the PEIS includes reclamation. Reclamation standards for uranium mines at the ULP lease tracts are consistent with DOE's lease agreements, BLM's, and state (CDRMS) requirements.

**Parker, Randy, Commenter ID No. T35 (Cont.)**

tourism, all of which will be threatened by increased uranium exploration and development.

The PEIS, by limiting its scope to a 50-mile buffer region surrounding the lease tracts, fails to adequately analyze the cumulative effect of increased uranium mining on this region. The potential impacts of radioactive releases in environmental contamination were not thoroughly studied and were not considered in conjunction with the impacts from mining on non-leased public land in the region.

The PEIS also failed to adequately consider the cumulative effects of increased uranium mining on the region's roads, bridges, and rivers. Given the history of incomplete and inconsistent uranium mining cleanup in this region and in the industry as a whole, I urge the Department of Energy to adopt a transparent process that leads to a uniform, modern standard of reclamation that returns all uranium mining areas to their original condition.

T35-2 (Cont.)

Before any more public land is offered to be leased for uranium mining, the Department of Energy should put people to work reclaiming old sites and cleaning up the past uranium legacy that

T35-3

T35-3 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.



**Parker, Randy, Commenter ID No. T35 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

34

continues to haunt the region. It is totally irresponsible to propose additional leasing of public land for uranium development and mining before the previously leased parcels are reclaimed.

Cleaning up old uranium mine sites will create permanent jobs in the region which will strengthen our economy and create jobs in our rural communities. Once these disturbed areas are clean, the Department of Energy can take advantage of the recognized potential for solar energy in the leased areas by developing renewable energy projects on these sites.

Thank you for considering my comments.

MR. CAMERON: Thank you. Now we will have Jennifer Parker.

JENNIFER PARKER: So many of the people that have spoken before me have hit upon a lot of my points, so I won't belabor them. But I do have to say that my impression, and it is an impression, of the uranium industry is that it's dirty, dangerous, and deadly. We have so many people in this area who are receiving help with diseases that they have, with conditions that they have and, like some of the people before me have said, it seems insane to be even considering this.

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T35-3 (Cont.)

**Parker, Tehri, Commenter ID No. E25**

**From:** Tehri Parker
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, May 24, 2013 10:26:33 AM

Dear

Dear Mr. Plieness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E25-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential. E25-2

In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E25-3

Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP Lessees. E25-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E25-5

Sincerely,

Tehri Parker

E25-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E25-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E25-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E25-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Parker, Tehri, Commenter ID No. E25 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E25-5 See responses to E25-1 and E25-2.

Final ULP PEIS

**Peterson, Catherine, Commenter ID No. T37**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

35

We have a stockpile of uranium that I understand -- and I could be misinformed -- that will last us 100 years. We also know that the uranium in the ground is the safest possible place for it to be. I would agree with my husband, which doesn't happen very often, and that is that we should reclaim the mining sites that we have, putting people to work to do so, and then using those areas, since they are already set aside, for renewable energy. There is no question we have plenty of sun in Colorado and plenty of wind. Thank you.

MR. CAMERON: Thank you, Jennifer. We are going to go to Catherine Peterson next and then to Paul Szilagyi.

CATHERINE PETERSON: I'm actually thinking of moving closer, over to Norwood, to this area, so I guess I should go to the other hearing also in Naturita.

But it seems like in talking to you, it feels like you are being held hostage, that when you talk about your options, that you're like, oh, well, we have to settle on something in the middle. And when we talk about Option 2, it's like, okay, well, if we don't do Option 1, Option 2 is going to

T37-1

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T37-1 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

I-469

March 2014

Appendix I: Comment Response Document

BLM_0043707

**Peterson, Catherine, Commenter ID No. T37 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

36

give us back to the BLM and who knows what they will do. And that has an implicit threat to it, like we can't choose that one.

So when we have 3 or 4, which, you know, I don't know why we have to bargain when there are like all these -- everything that everybody already said. It's like we -- I mean, I don't know. Do we have to bargain and do we have to support this industry?

T37-1 (Cont.)

When we did the -- the environmental impact statement talks about endangered species animals, but it really doesn't talk about our microclimate. And we -- when we talk about biodiversity, we are not really going to know about a bee or a butterfly or, you know, something that's really being affected. So I don't think an Endangered Species Act is really enough to say that, you know, we looked at the impacts to the animals.

T37-2

So we can't have those trucks. In those two alternatives, whether it's 80 trucks or 90 trucks or 60 trucks, you know, obviously our roads can't do that. We can't have an accident on any Colorado roads. I mean, that would be tragic. I mean, we are dealing with environmental accidents

T37-3

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T37-2 The PEIS addresses all aspects of ecological resources; in addition to threatened and endangered species, potential impacts to vegetation, wildlife, and aquatic biota are also addressed. See Sections 4.1.6, 4.2.6, 4.3.6, 4.4.6, and 4.5.6.

T37-3 For Alternatives 3, 4, and 5, the transport of uranium ore would result in some impacts as provided in the PEIS. As discussed in Sections 4.3.10.2.1, 4.4.10.1.1, and 4.5.10.1.1, the potential truck traffic on Colorado's highways could increase by less than 2% to about 74% of current conditions depending on location and implementation of alternatives as analyzed for a peak year. However, environmental impacts from any accidental release of uranium ore during transportation are anticipated to be minimal and short-term as described in Section 4.3.10.4 because of the low-grade nature of the ore, the immobile nature of the hazardous constituents, and prompt cleanup.

**Peterson, Catherine, Commenter ID No. T37 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

37

everywhere. And we have, you know, Colorado to think about and these -- it's an archaic industry. So we don't want 3 or 4 because it doesn't really deal with all the impacts of uranium mining, and it seems like we shouldn't have to deal that way.

T37-3 (Cont.)

No. 5, fast and dirty. That's also a real threat, you know, that we don't -- you know, boy, they are going to come in there and just do whatever, so...

T37-4

The social impacts, I agree. That's the first thing I turn to. Okay. What do they talk about the social impacts of mining. We know that it's not art and culture and teachers and doctors. It's a boom/bust economy. It's not going to bring what we've -- it's not going to enhance our economy here. So the social impacts really aren't covered in that statement. I mean, it's like vague and nonspecific and doesn't really talk about anything.

T37-5

I agree mining uranium could affect our national security. We really need to be thinking about climate change and moving into the future. I agree with everybody else that said that. I find it hard that any -- you know, if Indian tribes have any input, I hope for sure that they were saying, listen, we've suffered enough and we're

T37-6

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T37-4 See response to T37-1.

T37-5 Section 3.8 of the PEIS discusses the current and historic economic environment in the ROI. An overview of periods of boom and bust economic conditions in the ROI has been added.

Socioeconomic impacts of each of the alternatives are evaluated in terms of employment and income. Direct impacts include wages and salaries as well as the purchase of goods and services required for uranium mining and reclamation. Indirect and induced impacts include the purchase of goods and services that would subsequently circulate through the economy, creating additional employment and income to ROI residents.

T37-6 Climate change was evaluated in the PEIS (see Sections 4.1.1, 4.2.1, 4.3.1, 4.4.1, and 4.5.1) in terms of greenhouse gas (GHG) generated by the ULP proposed action for the five alternatives, respectively. The results indicate that the ULP proposed action contributes a very small percentage to both Colorado, and U.S. GHG generated (up to 0.03% and 0.0005%, respectively). U.S. GHG emissions account for about one-fifth of global GHG emissions, and GHG emissions from ULP proposed action are up to about 0.0001%. The amount of GHG generated is generally used as a measure of the potential impacts on climate change. In contrast, ULP operations (followed by power generations at nuclear power plants) would displace considerable amounts of criteria and toxic air pollutants, and GHG emissions that would otherwise be released from fossil power plants. Accordingly, ULP operations would contribute to more positive impacts than adverse impacts on climate change. The text in the PEIS has been revised (see the same sections mentioned previously) to explain further how potential impacts from climate change were analyzed for the PEIS and what the results mean.



**Peterson, Catherine, Commenter ID No. T37 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

38

recommending that you don't go any further with uranium mines.

T37-6 (Cont.)

MR. CAMERON: And, Catherine, could you sum up for us.

CATHERINE PETERSON: And that was my last thing, the Indian tribes.

T37-6 (Cont.)

MR. CAMERON: Perfect.

CATHERINE PETERSON: Anyway, thank you very, very much for coming here, and obviously we need -- for our health and economic and everything, we need Option 1. We need to like squelch this whole thing.

T37-6 (Cont.)

MR. CAMERON: Thank you, Catherine. Now to Paul Szilagyi, and I hope that I'm pronouncing that sort of correctly, and then we have Mike Rozycki.

PAUL SZILAGYI: It's Szilagyi. It's Hungarian. And I don't expect any claps when I'm done, but I do thank you for welcome miners to your territory. It's very nice that you put that up.

I'm here for three hats today. I'm here for myself, and most of my comments will be about myself. I will also talk an investor in a mining company, a mining company that has no interest in any of the leases that are under

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

**Pfaff, Kristin, Commenter ID No. T2**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

26

management of the site.

Thank you.

MR. CAMERON: Okay. Thank you. Thank you very much.

Our next commenter is Kristin Pfaff.

KRISTIN PFAFF: Hi, I'm Kristin Pfaff, I'm a nursing student at Colorado Mesa; I'm here with my fellow students.

One of my fellow students, Choi, and I just completed a report on the mine and its potential impacts, and I wanted to echo what Beverly said and just encourage a thorough investigation of all the lingering potential human health threats that could remain long after the mine is gone.

And I guess personally, I would bring up that in my observations over the past 10 years, I've noticed an increase in the intensity of the spring dust storms that we have, and I'm hoping the Environmental Impact Statement will focus some research on the impacts of what is being carried in the surrounding valleys during those storms. Thank you.

MR. CAMERON: Thank you, Kristin.

And Thomas Acker?

THOMAS ACKER: I am interested in the aspect

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T2-1

T2-1 The potential human health impacts from uranium mining are evaluated thoroughly in the PEIS addressing exploration, mine development and operation, and reclamation aspects of the proposed action and consideration of all possible exposure scenarios. See Section 4.1.5, 4.2.5, 4.3.5, 4.4.5, and 4.5.5; and 4.7 for potential cumulative human health impacts.

## Phillips, Benita, Commenter ID No. E121

**From:** Benita Phillips
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Sunday, June 30, 2013 11:46:38 AM

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

E121-1 As the DOE is keenly aware, due to the Rocky Flats "clean-up", radioactive materials are a bane to the future. There is no scenario that logically supports the continued use of radioactive material as we have in the past. Despite years of studies showing the morbid and lethal effects after both short and long term exposure depending on the source and its strength, reinitializing an industry such as this is pure folly. As an RN of more then 35 years, working with Uranium workers, growing up downwind from Hanford and watching victim after victim slowly decay and waste away, I ask you to remember, these elements were buried deep into the Earth for a reason. As defined by the "Precautionary Principle" this industry is a pariah and far to dangerous at every level of development to continue ANY serious consideration.

E121-2 The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E121-3 Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

E121-4 In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E121-5 The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

E121-6 I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,
Benita Phillips RN, BSN

E121-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E121-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E121-3 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E121-4 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

**Phillips, Benita, Commenter ID No. E121 (Cont.)**

President of Western Colorado Congress of Mesa County

Benita Phillips

E121-5   DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E121-6   See responses to E121-1 and E121-2.

**Phillips, Benita, Commenter ID No. T12**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

43

Claudette.

Benita Phillips?

BENITA PHILLIPS: Hi, my name is Benita Phillips. I'm also an RN, and I'm President of Western Colorado Congress in Mesa County.

Not to be redundant, I think a lot of what has been said has been said very well. I'm in favor of alternative 6, which is the one that Janet brought up; a whole new PEIS needs to be done. And I just -- it was the first time I really looked at the table that talks about definition of impact levels, and under Human Health, it says not applicable, not applicable, not applicable, not applicable at every level.

And then it says human health potential impacts are discussed relative to regulatory limits. And Claudette just got through saying the regulatory limits can be changed.

So what we need to look at in terms of human health here, long-term human health, we're not talking just this generation, we're talking multigenerational human health, because we know these things linger for a few thousand years.

And I just happened to, before I left home, pull out a study out of NIOSH that was talking about a

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T12-1

T12-2

T12-1 The evaluation of the use of the ULP land for development of solar energy or renewable energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for such purposes is not excluded by the ULP Program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies, including many based on renewable sources.

T12-2 The term "not applicable" was used and intended to mean that human health impacts are more appropriately compared to regulatory requirements and the terms used in this table "negligible," "minor," "moderate," and "major" do not apply in that sense. This table has been revised for the human health presentation to denote the comparison of the potential impact estimates to regulatory requirements, as regulatory requirements exist.

**Phillips, Benita, Commenter ID No. T12 (Cont.)**

study that was done that was finished back in around mid 1975, I think it was. And they were talking about lung cancers.

And this is just in wide uranium miners: They found that lung cancers were -- it was expected at 64 deaths, they found 371; that means six times more lung cancers than what was expected. Pneumoconiosis, expected two deaths but found 41. That's 21 times the deaths that were expected.

Tuberculosis, three and a half times the number of deaths; emphysema, 22 times the number of deaths.

And that's just the beginning of this study. And this was published by the U.S. Government in the NIOSH.

So basically what I see here is a lack of follow-through on process. In nursing, when you go in and you evaluate a patient; they come in and they're sick, you evaluate them, you make a care plan, you follow up the care plan, you evaluate your care plan and you discharge a patient and you do follow-up.

This study does not have any follow-up. There's nothing that's been done in the uranium business that supports follow-up.

T12-2 (Cont.)

I would suggest that Energy Fuels is nothing

T12-3

T12-3 Comment noted.



**Phillips, Benita, Commenter ID No. T12 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

45

but a boondoggle, that uranium business is nothing but the taxpayer boondoggle, because all of these companies are getting subsidized either by the Canadian government or our government. And I, as a taxpayer, am tired of paying for these companies to exist. They need to be standalones, support themselves.

And I think Eric made a mistake when he said it should be a $2 million bond. I think he meant to say $2 billion bond.

MR. CAMERON: Thanks, Benita.

And Mark Collins?

MARK COLLINS: I have six questions for everybody to consider and not to be answered now.

Does radioactive material cause DNA in people to mutate? Can radioactive material become a lot more dangerous than radioactive from carbon monoxide gas, similar to volcanic elements originally?

If there is a natural disaster at a large nuclear waste dump, such as a volcanic eruption, could all life on the planet be gone?

If one tiny radioactive particle becomes attached to a person or is inside of a person, will that particle remain radioactive and cause cancer?

Why does a nuclear plant scan employees for

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T12-3 (Cont.)

**Pierce, Carol, Commenter ID No. W3**

Thank you for your comment, Carol Pierce.

The comment tracking number that has been assigned to your comment is ULPD50003.

Comment Date: April 5, 2013 08:21:18AM
Uranium Leasing Program PEIS
Comment ID: ULPD50003

First Name: Carol
Middle Initial: R
Last Name: Pierce
Organization:
Address: [Withheld by requestor]
Address 2:
Address 3:
City: [Withheld by requestor]
State: [Withheld by requestor]
Zip: [Withheld by requestor]
Country: [Withheld by requestor]
Privacy Preference: Withhold address from public record
Attachment:

Comment Submitted:

Please do not move forward on leasing land for Uranium mining until the mess is cleaned up that already exists from past mining. I continue to be confused by how we can approve uranium mining anywhere at all until the answer to how and where to store the waste is resolved in a way that won't effect the environment or citizens' health in the present or future. It's unacceptable to pretend that there is an answer to that problem. We could be moving towards using clean renewable energy (from production to end use), instead of continuing in the vein of destroy and destroy some more. I knew 2 brothers working in the Uranium mines in Uravan, they both got a similar cancer an died from it. Insanity at its best: all this choosing of dirty toxic energy. W3-1

W3-1 Comment noted.

## Prendergast, Jim, Commenter ID No. E7

**From:** Jim Prendergast
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Thursday, May 23, 2013 8:19:38 PM

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. [E7-1]

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential. [E7-2]

In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. [E7-3]

Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP Lessees. [E7-4]

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. [E7-5]

Sincerely,

Jim Prendergast

---

**E7-1** DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

**E7-2** Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

**E7-3** DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

**E7-4** DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Prendergast, Jim, Commenter ID No. E7 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E7-5 See responses to E7-1 and E7-2.

**Quade, Wayne, Commenter ID No. T28**

When I was on the board with the environmentalists, I believed it was a really good idea. I see environmental (inaudible) the political sector, and has nothing to do with the sweet little animal we've got to protect or whatever it is they come up with. It's moot. It's now political.

We went from peace movement and antiwar movement to antiadministration movement to the antigovernment movement to the antimilitary movement to the antiAmerican movement. That's where we are, and the environmental movement is part of it. Trust me, I was one of them. Thank you.

Wayne?

WAYNE QUADE: Thank you. Well, good evening everybody. I'm a resident of Montrose, and I've worked with environmentalists in my past job. Two things that I'd just like to bring out and discuss, or have discussed, basically involve the costs and remediation.

As far as the cost, I'm talking about the fact that these leases are far too cheap. They do not consider the environmental cost to both the community and the environment. And we're not recouping what we could recoup through the -- really the fire sale prices that they're offering these leases.

T28-1

T28-1 Lease tract operations are currently covered by reclamation bonds, calculated by DOE based on site-specific conditions and deemed sufficient to reclaim those conditions in coordination with CDRMS.

**Quade, Wayne, Commenter ID No. T28 (Cont.)**

And then the other thing is remediation. And as far as remediation goes, we need to worry about more than just filling in the hole and bringing in the topsoil, we need to adequately have -- utilize standards of reclamation, including the improper soil profiles, and of course we need to independently monitor to make sure that it is monitored to come back to its native state.

And as far as the monitoring goes, we need to have benchmarks of acceptability. In other words, they're not released from the -- from their -- they're not released from the lease requirements until they meet these benchmarks. They're independently verified as to having the native vegetation come back into its natural state.

So those are two things that I think we need to -- that I'd like to identify.

MR. CAMERON: All right. Thank you, Wayne. Is there anybody else who wants to speak to the Department and to the community? Anybody want to make any comments?

Yes, sir. Want to come up? And just please introduce yourself.

DAVID WHITE: Okay. I'm David White, I'm a Montrose County Commissioner. And we've already

T28-2

T28-3

T28-2 The effectiveness of reclamation is based on meeting DOE requirements that are consistent with those established by BLM and CDRMS.

T28-3 The re-vegetation efforts conducted on the ULP lease tracts have to meet requirements in accordance with CDRMS and lease agreements.

**Radley, Rad, Commenter ID No. E46**

From: mail_ulpeis
To: ________
Subject: FW: Clean Up and Clean Energy!
Date: Thursday, May 30, 2013 1:19:08 PM

-----Original Message-----
From: Rad Radley [] ________
Sent: Thursday, May 30, 2013 12:35 PM
To: mail_ulpeis
Subject: Clean Up and Clean Energy!

Dear

Dear Mr. Pleness:

Millions of dollars have already been spent cleaning up from the "boom" of the 50's & 60's. Please do not trash out our state again! We need CLEAN energy!
I live in Montrose County, just over the hill from the proposed mill! I do not want this in our state much less just over the hill! There is little need for uranium production in this country, we have plenty! E46-1

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E46-2

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E46-3

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E46-4

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E46-5

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E46-6

E46-1 Reclamation of mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E46-2 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E46-3 See response to E46-1.)

E46-4 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E46-5 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur

**Radley, Rad, Commenter ID No. E46 (Cont.)**

Sincerely,

Rad Radley

given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E46-6 See responses to E46-1 and E46-2.

**Rahmann, Susan, Commenter ID No. L35**

**DRAFT URANIUM LEASING PROGRAM PROGRAMMATIC ENVIRONMENTAL IMPACT STATEMENT (DOE/EIS-0472-D)**
U.S. Department of Energy

RECEIVED MAY 28 2013

**WRITTEN COMMENT FORM**
*Public comment period closes on May 31, 2013*

Mr. ___ Mrs. ___ Ms. ✓ Mr. & Mrs. ___ Dr. ___

Name: Susan Rahmann
Title: Business Owner / Citizen
Organization: Colorado 3D, LLC
Address: PO Box 3737
City: Telluride State: CO Zip Code: 81435
Phone: 970 728 3042 E-Mail Address: srahmann@mac.com

*Comment:*
The mines that are being reclaimed to mine uranium or even clean up are dangerous and have no purpose other than remaining as they are or may be better as land fills for surrounding areas garbage.

L35-1

*Please use other side if more space is needed.*

**WITHHOLDING OF PERSONAL INFORMATION:** Information you provide on this form may be published as part of the public record for this project, including publication on the Internet. Individual respondents may request confidentiality by checking one of the two boxes below. The DOE will honor such requests to the extent allowed by law. All submission from organizations and businesses, or from individuals identifying themselves as representatives or officials of organizations or businesses, will be available to the public in their entirety.

☐ Withhold my name and address from the public record.
☒ Withhold only my address from the public record

Comment form may be mailed to:
Mr. Ray Plieness
DOE ULP PEIS Document Manager
Office of Legacy Management
U.S. Department of Energy
11025 Dover Street, Suite 1000
Westminster, CO 80021

Comment form may be sent by electronic mail to:
ulpeis@anl.gov

L35-1 Comment noted.

**Ramey, James, Commenter ID No. E109**

**From:** James Ramey
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, June 28, 2013 12:35:34 PM

Dear

Dear Mr. Pliceness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

E109-1 The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E109-2 Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

E109-3 In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E109-4 The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

E109-5 I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

James Ramey

E109-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E109-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E109-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E109-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Ramey, James, Commenter ID No. E109 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E109-5 See responses to E109-1 and E109-2.

**Reams, John, Commenter ID No. T54**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-25-2013

18

has done all the drilling on the Uravan Mineral Belt, not just what they have got reserved. Thank you.

MR. CAMERON: Thank you for your comment. We are going to go to John Reams.

JOHN REAMS: My name is John Reams. I live in Naturita. And on behalf of the Western Small Miners Association, which I'm the president of, we really support Alternative 4. That makes the most sense to us. So we will probably put a written comment together with the other stuff later for you.

As an owner of a construction company, Reams Construction Company, we have worked on the reclamation of a lot of these original leases where they were shut down and reclaimed, and they were done very well. So we've worked for the DOE on that through different contractors to do the reclamation. The reclamation was done well, so I don't have any problem with the way these things will get reclaimed in the end.

And then also with the other hat on, as the owner of Tomcat Mining Corporation, we actually worked for Cotter Corporation in contract mining. And we know how Cotter did with the mines they had

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T54-1

T54-2

T54-3

T54-1 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

T54-2 See response to T54-1.

T54-3 See response to T54-1.

**Reams, John, Commenter ID No. T54 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-25-2013

19

and how well they were taken care of.

So with that, I support Alternative 4 with all these others. Thank you.

T54-3 (Cont.)

MR. CAMERON: Thank you, John. We're going to go to Glen Miller next and then Troy Wallace.

GLEN WILLIAMS: My name is Glen Williams with Cotter Corporation out of Nucla. I'm a big proponent of responsible natural resource development. And I believe that all these lease tracts that the DOE has, we should try to develop them and produce the ores we can responsibly produce from them as much as we can.

The program has been in place for a long time. I believe it's effective. I believe it's employed quite a few people, paid a lot of royalties to DOE, and I just feel that with the way the mine permitting is going these days, bonds are substantial and they cover everything I have seen that needs to be covered with any of the reclamation activities that are required on these mines these days. And I feel that it's a good way to go. It will help the area.

The one alternative that I would not recommend is the Alternative 1. It seems to me

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

**Rechel, Eric, Commenter ID No. T10**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

39

MR. CAMERON: Thank you, Dave.

Next we're going go to Eric Rechel.

ERIC RECHEL: Thank you all for coming out this evening. This is just great.

[T10-1] One of the first slides that was presented up here -- I guess "slides" is an old term -- was that this process is for domestic use. I would like to know what kind of enforcement authority the DOE has to make sure that Energy Fuels doesn't sell to the highest bidder in China or India. And if it finds its way to China or India, what kind of (inaudible) does it take on Energy Fuels? Because I'm sure China will pay a lot more for uranium than the U.S. will.

So what kind of enforcement authority do we have to make sure this is domestic use?

[T10-2] I'm in favor of alternative 2, which is to give the land back to the BLM. They've had a lot of experience in reclamation and multiple use, and so I favor alternative 2.

[T10-3] I'm also in favor of a new PEIS, as stated by Janet to look over some of the critical aspects that I think were ignored.

One of the aspects, I think, that is ignored

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T10-1 The possibility that uranium or uranium ore from the ULP may be subject to being exported does not undermine the PEIS's stated purpose and need, and does not require that the PEIS's scope be expanded to analyze the export of uranium or uranium ore. Any export of domestic uranium or uranium ore from any source within the United States, including the ULP lease tracts, is strictly regulated by Nuclear Regulatory Commission (NRC) under the terms of the AEA and the NRC regulations, which impose requirements that must be satisfied before the NRC will grant a license to export any domestic uranium or uranium ore. See AEA, 42 U.S.C. §§ 2099, 2151-2160d; NRC regulations, 10 C.F.R. §§ 110.19-110.46. For example, 42 U.S.C. § 2099 forbids the NRC from licensing any person to export from the United States any uranium ore, or other source material, if the issuance of such a license "would be inimical to the common defense and security" or the health and safety of the public; 42 U.S.C. § 2155 gives the Executive Branch the authority to veto any export of uranium ore. Many more specific requirements are imposed in the other above-cited provisions of the AEA and the NRC regulations.

Therefore, DOE's proposed action in the PEIS does not address uranium ore exports, over which the NRC, not DOE, has authority; and the scope of analysis in the PEIS does not analyze the possibility that uranium ore from the ULP may be subject to export.

In addition, the possibility that uranium ore from the ULP may be subject to export, after a prospective exporter goes through the process of applying for and receiving the necessary permission from the NRC, does not undermine the stated purpose and need for agency action: to support the AEA provisions which authorized and directed DOE to develop a supply of domestic uranium, and to issue leases or permits for prospecting, exploration, mining, or removal of deposits of uranium ore in lands belonging to the United States to the extent DOE deems necessary to effectuate the provisions of the AEA (42 U.S.C. §§ 2096-2097). An active ULP program will be more successful in meeting that need than would an inactive program. See also discussion in Section I.3.6 in this appendix.

T10-2 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

T10-3 ULP lease tract operations are currently covered by reclamation bonds, calculated by DOE based on site-specific conditions and deemed sufficient to reclaim those conditions in coordination with CDRMS.



**Rechel, Eric, Commenter ID No. T10 (Cont.)**

Capital Reporting Company
In Re: UUP PEIS Public Hearings 04-22-2013

40

was that we look at this list of aspects that was put on the board. And one was the socioeconomic aspect. I demand that in the alternative there's like a $2 million bond of Energy Fuels to do what? To help the economy and communities survive when they go bust. Because they will go bust. And they'll be stuck out there with all this stuff out there and all the economic travesty when they go bust.

Why? It happens all the time. We need a $2 million bond to help this be able to survive and it doesn't go bust.

Next I wish the whole community would have a bigger vision of nuclear power, like Germany and Japan, where we don't need nuclear power to survive. We have other alternatives to do it.

We should do the same; we just need a bigger vision.

And last I would say that Union of Concerned Scientists in this country has stated there is no safe level of radiation. Thank you.

MR. CAMERON: Thank you, Eric, for those comments.

And our next commenter is Claudette, Claudette Konola.

CLAUDETTE KONOLA: I will probably end up

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T10-3 (Cont.)

T10-4

T10-4 Comment noted.

**Redmond, Mary, Commenter ID No. E53**

**From:** Mary Redmond
**To:** mail_ulpeis
**Subject:** Re. Draft ULP PEIS Comments
**Date:** Friday, May 31, 2013 5:32:47 PM

---

On Fri, May 31, 2013 at 3:57 PM, Mary Redmond <> wrote:

> Mining uranium is INSANE! It is radioactive for EVER. (4 billion years) Exposure to it causes cancer, birth defects and disease. It is a deadly, toxic substance and its only purpose is to destroy life. The people who want a uranium mill are only thinking of jobs for a few people for a few decades. The owners of the mill have only one interest: MONEY. WAKE UP!!! YOUR DECISION HAS CONSEQUENCES FOR THE LIFE OF PLANET EARTH ! There will be spills and other accidents because humans are imperfect.
> The costs are infinitely greater than any monetary benefit to a few people.
>
> Mary Redmond
> Montrose, CO

E53-1

E53-1 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

## Rensenbrink, Willy, Commenter ID No. E92

**From:** Willy Rensenbrink
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Thursday, June 27, 2013 5:54:31 PM

Dear

Dear Mr. Plieness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

E92-1: The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E92-2: Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

E92-3: In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E92-4: The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

E92-5: I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Willy Rensenbrink

E92-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E92-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E92-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E92-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Rensenbrink, Willy, Commenter ID No. E92 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E92-5 See responses to E92-1 and E92-2.

**Rice King, Karen, Commenter ID No. E42**

**From:** Karen Rice King
**To:** mail_ulpeis
**Subject:** Please do not
**Date:** Wednesday, May 29, 2013 11:43:01 AM

Mine for uranium, especially on public lands. I am a geobiologist and see how the mining has desiccated our lands. Even if the industry could come up with a non-invasive way to extract minerals, it is still very dangerous and we are not measuring the damages to our environment and atmosphere in an educated way for long term effects on the public. Karen
*Karen Rice King, BA*
*Certified Healing Arts Practitioner, Master Dowser and Ordained Minister*

E42-1

E42-1 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

**Riddell, Jim, Commenter ID No. T26**

what's there to a healthy standard. And that would provide lots of jobs. And they can start right now; you don't have to wait for the price of uranium to go from $45 a pound to 75 or more, which I don't think is going to happen. Thank you very much.

MR. CAMERON: Thank you, Marvin. And this is Jim Riddell. Then we're going to go to Dave Crawford.

Jim?

JIM RIDDELL: Thanks. I'm Jim Riddell, and I'm a member of the Uncompahgre Valley Association, which is part of the Western Colorado Congress. But as Marvin said, I'm not speaking on behalf of the organization, just as an individual.

Most of you probably have been into this area we're describing here. And if you drive through that area, you come across a really remarkable feature of engineering that I suspect most of you have seen. If you haven't, I encourage you to see it.

It's a thing that was built about a hundred years ago called the hanging flume. And how many of you have ever rafted or floated under the hanging flume? Okay, several other people. I appreciate that.

It's really a spectacular feature there.

T26-1

T26-1 Comment noted.

**Riddell, Jim, Commenter ID No. T26 (Cont.)**

And it was a part of a mining project almost a hundred years ago that turned out not to find what they were looking for and not turn out to be economically viable, and turned out not to get cleaned up in the sense that there's still about six miles of cliff with posts sticking out from the side of the wall.

Now, in the case of gold mining that they were hoping to do there, it might be a better thing that they never found it, for our sake, because it probably would still have clean-up issues left today whether it be water leeching into the rivers or things like that. And instead we're just left with something rather amazing and wonderful to look at and speculate about.

I don't really want to think that my daughter a hundred years from now is going to be looking back at what was being done tonight and think, Oh, that wasn't such a good thing that we ended up leaving this legacy behind.

I know that we say that the industry has changed a lot and there isn't contamination and nearly the problems that there used to be, but I think that we need to watch that really, really carefully.

There have been an awful lot of industries -- I was just seeing a show about the deep water

T26-1 (Cont.)

**Riddell, Jim, Commenter ID No. T26 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

35

horizon explosion, last night even, of an industry that said how safe it was, what wonderful procedures they have nowadays. There still are plenty of risks.

And meanwhile, there still is an awful lot left over from before that needs to be cleaned up.

T26-2

Now, I'm not proposing that we take down the remnants of the hanging flume, we'll leave those for the historical interest. But there's a lot of mining activity, particularly from the uranium mining that still persists in that area. And I'd like to see that stuff be fully cleaned up before we get start digging new ore out of the ground.

T26-3

In that light, one of the things we certainly need to look at is making sure that there is a definable standard for what constitutes "cleaned up." I've been informed there is currently no standard that we can reliably say, Oh, there won't be any impact after these things are reclaimed because we don't even know what the standard will be for what reclamation will be.

T26-4

As Marv said, this is a boom-and-bust industry, and as most mining tends to be, there was an unusual spike in the price of uranium about four or five years ago that suddenly made a lot of these things that otherwise wouldn't have been worth doing

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T26-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

T26-3 Reclamation standards for uranium mines at the ULP lease tracts are consistent with DOE's lease agreements, BLM's, and state (CDRMS) requirements.

T26-4 DOE considered the results of the evaluation presented in the PEIS in addition to public comments received in its identification of DOE's preferred alternative for the PEIS. Alternative 4 which provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period is DOE's preferred alternative identified in this PEIS. Under DOE's preferred alternative, uranium mining would occur within the time period of the lease agreements based on approved mine plans.

**Riddell, Jim, Commenter ID No. T26 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

36

seem financially viable.

I'd like to see that the leasing, if it happens, is not just open ended but is tied in so that it has to wait for the market price to come up before activity can really commence on new mining.

The Environmental Impact Statement, one of the deficiencies that we see in that statement is the level to which the information was gathered at long distance. We need to have really good efforts that we've seen that people have looked at it, gotten on the ground, and seen the conditions that are reported are actually what's there.

Maybe they are, probably they are, but we really want to see more evidence of that.

Along the lines of whether the market price is high enough to sustain mining operations, part of that would be dependent on whether or not there are mills available to take the ore. If the ore is not going to go to the mills that are being proposed, then we shouldn't be doing leasing. So I'd like to see that that be tied together in the leasing permitting, if there is to be lease permitting.

And finally, I think it's just been briefly mentioned, but I think there are plenty of opportunities in addition to jobs coming from

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T26-4 (Cont.)

T26-5

T26-5 Site-specific information available on the lease tracts has been incorporated into the evaluation in the PEIS. The information is summarized in Section 1.3. This information includes that incorporated in the Environmental Protection Plan (EPPs) prepared for some of the lease tracts (i.e., EPPs prepared by Cotter Corporation for their ULP lease tracts).

The evaluation of the use of the ULP land for development of solar energy or renewable energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for such purposes is not excluded by the ULP Program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies, including many based on renewable sources.

**Riddell, Jim, Commenter ID No. T26 (Cont.)**

recreation and the potential with cleaning the environment, there also is a potential for jobs coming from clean energy development, which would nicely coexist with the conditions of the legacy of the previous mining operations. Thank you.

T26-5 (Cont.)

MR. CAMERON: Thank you for those remarks. Okay. Dave? Dave Crawford?

DAVE CRAWFORD: My nave is Dave Crawford; I'm a resident of Montrose. I come to these meetings frequently; I hear people coming up with some interesting ideas. No one mines uranium because of the pleasure of going underground and extracting minerals. They go there because there's an economic viability. That's the only conceivable reason why anybody would go underground.

And the processes that are taking place are extraordinary. People who are mining right now are trying to stay ahead of it, because they know there are new regulations heading their way.

The mine up here that mines coal has got two shelves, six feet long; two shelves with six feet each. Coal. Imagine what uranium has got. Okay. Yeah.

I just can't imagine why we're still speaking as though we're back in the '60s or the '70s.

**Ries, Erin, Commenter ID No. L7**

**DRAFT URANIUM LEASING PROGRAM PROGRAMMATIC ENVIRONMENTAL IMPACT STATEMENT (DOE/EIS-0472-D)**
U.S. Department of Energy

**WRITTEN COMMENT FORM**
*Public comment period closes on May 31, 2013*

Mr. ___ Mrs. ___ Ms. X Mr. & Mrs. ___ Dr. ___

Name: Erin Ries

Title:

Organization:

Address: PO Box 2525

City: Telluride State: Co Zip Code: 81435

Phone: 970 708 1059 E-Mail Address: erin@dianariesdesigns.com

*Comment:*

The peis does not adequately address the potential impact and risk to the water supply in the san miguel county. It does not appear that any oversight will be in place to ensure all is done properly. [L7-1] The affects (negatively) to recreation / tourism due to increased traffic have not been properly addressed — [L7-2]

*Please use other side if more space is needed.*

**WITHHOLDING OF PERSONAL INFORMATION:** Information you provide on this form may be published as part of the public record for this project, including publication on the Internet. Individual respondents may request confidentiality by checking one of the two boxes below. The DOE will honor such requests to the extent allowed by law. All submission from organizations and businesses, or from individuals identifying themselves as representatives or officials of organizations or businesses, will be available to the public in their entirety.

☐ Withhold my name and address from the public record.

☐ Withhold only my address from the public record

Comment form may be mailed to:
Mr. Ray Plieness
DOE ULP PEIS Document Manager
Office of Legacy Management
U.S. Department of Energy
11025 Dover Street, Suite 1000
Westminster, CO 80021

Comment form may be sent by electronic mail to:
ulpeis@anl.gov

L7-1 Water depletion and water quality potential impacts are analyzed in the PEIS (see Sections 4.1.4, 4.2.4, 4.3.4, 4.4.4, and 4.5.4). The implementation of DOE's preferred alternative at the ULP lease tracts will be under DOE's oversight in conjunction with the other Federal, state, and local agencies.

L7-2 Sections 4.1.8.1, 4.2.8, 4.3.8.1, 4.4.8.1, and 4.5.8.1 of the PEIS examine how a reduction in the recreation economy in the ROI could impact the local economy. Text has been added to the recreation impacts sections to identify a variety of reasons that could impact recreation spending, including increased traffic. In addition, text has been added to reflect non-economic impacts to recreation in the ROI.

**Ries, Erin, Commenter ID No. L7 (Cont.)**

this affects the economy of the region. | L7-2 (Cont.)

We must consider alternatives for energy that do not contribute to climate change | L7-3

I am requesting Alternative #1 and Permanent withdrawal of parcels on or near the Dolores | L7-4

Thank you

Erin

L7-3 DOE identified the range of reasonable alternatives evaluated in the PEIS based on the purpose and need described in Section 1.4. The analysis of potential impacts to air quality includes analyses of climate change.

L7-4 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

**Roberts, Gary, Commenter ID No. E73**

**From:** Barbara Parish
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Monday, June 03, 2013 9:53:10 AM

Dear

Dear Mr. Pleness:

Before the DOE considers further uranium leasing on public and federal lands, I think a priority would be to clean up and restore some of the mess that earlier miners have created. Mining is important for the future of our country; but, it must be done in a way that does not endanger our citizens.

Things have changed from my early days in Cripple Creek where my family worked the mines. We can no longer just dump our tailings and spoils in the creeks and valleys. And as always, mining is a boom - bust industry. We need stable and long term jobs.

Sincerely,

Gary Roberts

Barbara Parish

E73-1

E73-1 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

See discussion in Section I.3.2 regarding concerns for a boom and bust industry from uranium mining.

**Robinson, Rita, Commenter ID No. E21**

**From:** Rita Robinson
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, May 24, 2013 9:18:11 AM

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

E21-1: The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E21-2: Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential.

E21-3: In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E21-4: Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP Lessees.

E21-5: I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Rita Robinson

E21-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E21-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E21-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E21-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Robinson, Rita, Commenter ID No. E21 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E21-5 See responses to E21-1 and E21-2.

## Rogers, Don, Commenter ID No. E22

**From:** Don Rogers
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, May 24, 2013 9:33:04 AM

---

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

E22-1

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E22-2

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential.

E22-3

In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E22-4

Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP Lessees.

E22-5

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Don Rogers

---

**E22-1** DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

**E22-2** Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

**E22-3** DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

**E22-4** DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Rogers, Don, Commenter ID No. E22 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E22-5 See responses to E22-1 and E22-2.

**Rogers, Don, Commenter ID No. E75**

From: mail_ulpeis
To: ________
Subject: FW: Clean Up and Clean Energy!
Date: Monday, June 03, 2013 12:31:50 PM

-----Original Message-----
From: Don Rogers [________________]
Sent: Monday, June 03, 2013 12:05 PM
To: mail_ulpeis
Subject: Clean Up and Clean Energy!

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E75-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E75-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E75-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E75-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E75-5

Sincerely,

Don Rogers

E75-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E75-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E75-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E75-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Rogers, Don, Commenter ID No. E75 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E75-5    See responses to E75-1 and E75-2.

**Rogers, Missy, Commenter ID No. E126**

**From:** mail_ulpeis
**To:**
**Subject:** FW: Clean Up and Clean Energy!
**Date:** Friday, July 12, 2013 9:47:25 AM

-----Original Message-----
From: Missy Rogers []
Sent: Thursday, July 11, 2013 3:32 PM
To: mail_ulpeis
Subject: Clean Up and Clean Energy!

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E126-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E126-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E126-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E126-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E126-5

Sincerely,

Missy Rogers

E126-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E126-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E126-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E126-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large scale-development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Rogers, Missy, Commenter ID No. E126 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E126-5 See responses to E126-1 and E126-2.

**Rozycki, Mike, Commenter ID No. T39**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

41

with it. They're charged with it because we get 20 percent of our power, electrical power, from nuclear. We need uranium. We import over 90 percent of what we use. That's not something that's a good position for our country. If we want to move away from it, that's fine. But remember that you are going to increase your carbon footprint, so think about it and decide what you really want to do.

MR. CAMERON: If you could finish up for us, Paul.

PAUL SZILAGYI: I will. I could go on for a long time. But I'm an environmentalist. I took my first environmental class in 1977. If this group -- I would ask you to go home and challenge. If you're truly an environmentalist and if this is truly going to be part of the world -- and by the way, nuclear power is on the upswing. If you are truly an environmentalist, there is no better place on the planet where there's better worker protections and there's better environmental protections than right here.

MR. CAMERON: Okay. Thank you. Thank you very much. Mike Rozycki.

MIKE ROZYCKI: Good evening. My

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

**Rozycki, Mike, Commenter ID No. T39 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

42

name is Mike Rozycki. I'm the County planner for San Miguel County. The County has provided a couple letters already on the PEIS in 2007 and then scoping comments in 2011. And I think, generally, I wanted to come tonight and listen and hear, as the staff makes recommendations to the County Commissioners for the comments prior to the May 31st deadline.

But I think it's very clear that the County has expressed we have grave concerns with the environmental impacts associated with potential leasing of the uranium leases on the west end of the county. I think 11 or 12 of the mines or lease parcels are in San Miguel County.

T39-1

I think the other thing that we pointed out, and I would want to reiterate, is at this time, there's a lack of a clear and comprehensive cradle-to-grave strategy necessary for safe use of nuclear energy. And I think until there is a better system or strategy for dealing with waste and other impacts, there's a real concern with the nuclear energy industry in proceeding.

T39-2

I think as far as the alternatives, you know, we stated in earlier letters -- and I think it comes closest to what you have as Alternative

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T39-1 The PEIS evaluated potential impacts for 13 resource areas and human health from the range of reasonable alternatives considered to meet the purpose and need described in Section 1.4 of the PEIS. The evaluation included that of potential impacts from managing waste that could be generated. Under waste management, waste generated in addition to waste rock (which is mostly retained at the mine site location and graded to a preferred slope, provided with a protective top-cover material, and seeded during reclamation) is either taken to a local landfill or to the mill or a low-level radioactive waste disposal facility. See also discussion in Section I.3.2.

T39-2 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

## Rozycki, Mike, Commenter ID No. T39 (Cont.)

1 -- that would continue to treat uranium lease tracts as reserves held by the Department of Energy for future energy needs and for our country's security, if and when there is safer, nuclear technology for generation and waste disposal that's evolved. Until such time, I think it's appropriate to keep these tracts as reserves rather than offering for lease at this time and selling the material in the open market. I don't see that that relates to this country's security.

T39-2 (Cont.)

The other comment that I wanted to make was a personal comment, and as a planner in trying to understand the Programmatic EIS, it seems that there isn't a specific plan. There are a lot of big variety in parcels. I think they range from 25 acres to 4,000 acres, some are close to the Dolores River. And it seems that the PEIS sort of just makes some general assumptions and treats them all the same without ranking them in priority, trying to evaluate their impacts. And there really isn't a site-specific plan there and site-specific proposals, so I think there's a lot of really kind of gross assumptions that are made as to impacts, and I'm having a hard time understanding the importance or the validity of the PEIS.

T39-3

T39-3 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives.

**Rozycki, Mike, Commenter ID No. T39 (Cont.)**

Those are my comments. Thank you.

MR. CAMERON: Thank you, Mike. Angela Dye.

ANGELA DYE: Angela Dye, local resident of Telluride.

I do not support Alternative 4 as your preferred alternative, neither do I support the leasing or mining of uranium for all the previous reasons that folks have said. It's an onerous resource and we don't know how to handle it. So I think it needs to be left in the ground until we know how to handle the waste. We obviously have not figured that out yet.

I would like to add to some of the comments as well as endorse some of the things that have been said. Basically to clean up the spills, the remaining tailings of the uranium that has been excavated so far, especially along our rivers and streams.

I would like to also point out that we have 12 pages of mitigation measures that are in ten point type in landscape format. That is an incredible number of mitigation measures to try to, in fact, deal with. They are way too extensive. They are vague and without measurable outcomes or a

## Rupp, Marjorie, Commenter ID No. E52

**From:** Marjorie Rupp
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, May 31, 2013 5:09:58 PM

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E52-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E52-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E52-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E52-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E52-5

Sincerely,

Marjorie Rupp

E52-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E52-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E52-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E52-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Rupp, Marjorie, Commenter ID No. E52 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E52-5 See responses to E52-1 and E52-2.

**Sadowski, Vicki, Commenter ID No. T31**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

43

the record, because I want to make sure I do due diligence and consideration of your comments.

And those will be identified and addressed, specifically in the Final EIS as a response -- comment response document.

So with that, again, personally I know you took your time to come out here and comment, and it's not without appreciation by the Department, because our document will be better because of the comments we receive tonight.

I did see a hand, and if you would like to speak -- or if you have a question for me?

VICKI SADOWSKI: Actually, I travel a lot and I just got home and I heard about this on the television news very quickly, so I rushed up here. I feel like I'm not, you know, I don't have enough preparation.

But I feel this is extremely, extremely important. I was going to ask where the next meeting is so that, you know, I can prepare and know my schedule. And how do you find out about these meetings? And I would like to make a comment. I'll say something.

T31-1

I just don't feel like I had time to really think about this. But I would like to say I was born

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T31-1 Comment noted.

**Sadowski, Vicki, Commenter ID No. T31 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

44

in Ouray, Colorado, and raised here on a ranch. And I have family and friends and know people all over Colorado, Utah, New Mexico, and Arizona. And the four corners are just absolutely incredible.

One of the things, being raised the way I was, we had consideration for all of our neighbors, and anything that we ever did, we came together with our neighbors before we made a decision. Because everything we did in our area affected all others. We're connected. Life is connected. It's so important. This is an issue that's extremely important, so I wanted to begin with that, that we need to really think of the highest good for all life.

Each of us have our feelings and our understanding, and my heart goes to everyone, because everyone cares. The economics -- all of it is important.

But I think the greater thing is to put certain things into priority; economics, yes, we need that. But at what cost? So we really have to look at all of the levels in the areas of what we're working at. And we do, you know, to work with things to balance it out so that it works for a win/win situation for all, I think is very important.

Educating the public, I feel a lot of people

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T31-1 (Cont.)

T31-2

T31-2 Information regarding the PEIS and the NEPA process undertaken by DOE can be found on the project web site.

**Sadowski, Vicki, Commenter ID No. T31 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

45

I've spoken to, they look at information up here -- and I thank you for having this time where we can educate ourselves, ask questions, look at what we're dealing with. But many people in the public feel like they really even don't understand after they come and look at something like this.

So I wish there was a little more research and education that can be done for the public so they have a greater way of looking at these and the new compliances, all these compliances.

T31-2 (Cont.)

Right now what I'm looking at is there's an old age moving out and a new age moving in, meaning incredible technology, biology, astrophysics; we have a whole new science. Incredible things are happening.

So as an old age, you might say is moving out and new age coming in, we're the balancers. We're a part of the old age, the new age, and everything in between. So every one of us has a deep responsibility for this world. It's a living organism.

Life is important for water, animals, each other. So life -- I hope to be speaking for life. The one thing that I've seen -- there are three major things: Competition, acquisition, and consumption is a downfall, it's not win/win, it's not for everyone. We need competition, we need certain things, but

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

**Sadowski, Vicki, Commenter ID No. T31 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

46

everything within a balance.

So speaking for humanity, for life, for the new children that are raised in this world, we need to really consider what we're doing.

We need to research and not just talk about money but do deep research into what we're about to do. Life is very -- it needs a lot of nurturing. When we go into taking from life, you need to make sure we're giving back to life. So thank you so very much.

T31-3

MR. CAMERON: And could you just introduce yourself?

VICKI SADOWSKI: I'm sorry, my name is Vicki Sadowski.

MR. CAMERON: Thank you very much, Vicki.

MR. PLIENESS: I will have no more to say, other than please take the time, look over the posters, spend some time, because I can't agree more with most people that want to learn. It doesn't matter what side of this issue you're on, if you want to talk with us and work with us, that is the greatest opportunity we have to make changes in our PEIS as we go forward.

So please take the opportunity. Thank you very much for coming.

(No further public comment; hearing concluded at 9:00 p.m.)

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T31-3 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

## Safken, Melody, Commenter ID No. E83

**From:** Melody Safken
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, June 14, 2013 12:41:11 PM

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

E83-1

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E83-2

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

E83-3

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E83-4

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

E83-5

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Melody Safken

E83-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E83-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E83-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E83-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Safken, Melody, Commenter ID No. E83 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E83-5 See responses to E83-1 and E83-2.

**Safken, Melody, Commenter ID No. E128**

**From:** Melody Safken
**Sent:** Friday, November 22, 2013 5:02 AM
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!

Dear

Dear Mr. Plieness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Melody Safken

1

**Saftler, Michael, Commenter ID No. T44**

Michael Saftler, and then we're going to go to David Glynn and Glen Williams.

MICHAEL SAFTLER: Hi. My name is Michael Saftler. I've been a resident of this region for 39 years, and this is the first time I have considered leaving because of what is being proposed.

Despite irrational claims to the contrary, uranium has proven itself to be uncontainable. There is no way to mine it in a vacuum. Once it's dug up, it emits harmful radiation. When a person is exposed to radiation, it accumulates in the body. Once it accumulates in your body, it can and often does kill. When it is concentrated by mining, milling, and processing, the lethal toxicity rises exponentially. That should be enough to stop this procedure in its tracks, but for some mystifying reason, it continues. Therefore, please accept my comments as heartfelt.

My concern is for the health and welfare of millions of people, and no amount of jobs or energy generation or, heaven forbid, nuclear weapons will offset the harm that will befall our great nation if these mines are allowed to continue

T44-1

T44-1 The human health evaluation performed for this PEIS is discussed in Sections 4.1.5, 4.2.5, 4.3.5, 4.4.5, and 4.5.5, for Alternatives 1 to 5, respectively. The evaluation considers the potential for latent cancer fatalities from the exploration, mine development/mine operations, and reclamation for the five alternatives. The estimates for the alternatives indicate that potential impacts to off-site residents and on-site recreationists would be within regulatory requirements.

**Saftler, Michael, Commenter ID No. T44 (Cont.)**

to be developed. No new report will persuade me that prolonging this industry is a good idea or that it is viable or safe.

T44-1 (Cont.)

I would first like to address your acronyms. FONSI, finding of no significant impact. According to your scientific studies, you have concluded that mining of uranium and its aftereffects will result in no impact of significance. Tell that to all the people who have died because of exposure -- I'm sorry, I get emotional about this -- because of exposure to uranium and radiation. Tell that to the people who are sick and in the process of dying today because of their exposure to uranium.

We are told that there are new procedures and new regulations and, therefore, finding of no significant impact. No only are the procedures unproven, but the regulations currently in place are not enforced and are currently resulting in significant impacts. What you call FONSI is nothing more than a FONSI scheme, like a Ponzi scheme that sells people a false bill of goods and ultimately results in individuals losing everything. This FONSI scheme that you are proposing to foist upon us is a false bill of

T44-2

T44-2 See response to T44-1.

**Saftler, Michael, Commenter ID No. T44 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

60

goods. There is no safe way to mine, mill, process and transport uranium, none. Ultimately, people will lose everything, including their lives, in your proposed FONSI scheme.

T44-2 (Cont.)

Then we have your PEIS, Programmatic Environmental Impact Statement. Environmental impacts are not conjecture. They are supposed to be based on science and historic facts. The science and historic facts show that uranium and its attendant radiation pollutes the environment and kills living kind. There is no way of covering that up. That is the history of this industry. Look at the Navajo Nation, look at Uravan, look at Naturita, look at Nucla, look at Grand Junction.

That is our immediate neighborhood and those are our neighbors and many of those people are dead from exposure to radiation from uranium. How can anyone conclude that, therefore, there's a finding of no significant impact. If that is not significant, what is? How many deaths do you need before you cross your significant threshold?

T44-3

I have another acronym for you to consider: CAWS, C-A-W-S, clean air, water, and soil. Those are the building blocks of life. Without clean air to breathe, a human being will

T44-4

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T44-3 The term "finding of no significant impact" has not been used in the PEIS for making any conclusions. See response to T44-1.

T44-4 Sections 4.1.1, 4.2.1, 4.3.1, 4.4.1, and 4.5.1 evaluate potential impacts to air quality for the five alternatives.

**Saftler, Michael, Commenter ID No. T44 (Cont.)**

die in a matter of minutes. Without clean water, a human being will die in a matter of days. Without clean soil to grow our food and feed our livestock, a human being will die in a matter of a few seasons. These are the basis of human and all life on this planet.

T44-4 (Cont.)

MR. CAMERON: And --

MICHAEL SAFTLER: I will wrap it up.

MR. CAMERON: Thank you.

MICHAEL SAFTLER: Downriver from here, there are tens of millions of people who are drinking and irrigating out of the Colorado River, which is fed by the Dolores. These mines will be interacting with the Dolores River. Any environmental assessment needs to include an analysis of those impacts to those millions of downriver life forms.

T44-5

Energy, jobs. We have many other options besides mining, milling, processing, transporting, and further processing uranium in order to set in motion a chain reaction that attempts to contain massive amounts of concentrated energy that, when uncontained, can annihilate millions of people just to boil water or to turn a turbine. Fukushima and Chernobyl and Three Mile Island and Uravan and

T44-6

T44-5 Sections 4.1.4, 4.2.4, 4.3.4, 4.4.4, and 4.5.4 evaluate potential impacts to water resources for the five alternatives.

T44-6 Comment noted.

**Saftler, Michael, Commenter ID No. T44 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

62

Cañon City and endless other locations where leaks and explosions have occurred scientifically prove this industry is significantly uncontainable and unsustainable.

T44-6 (Cont.)

MR. CAMERON: Thank you. We are going to hear from David Glynn, then Glen Williams.

DAVID GLYNN: My name is David Glynn. I'm a resident of Ophir, Colorado. I'm for Alternative 1.

I would like to speak to the end game of uranium. We are really looking at the beginning, and the beginning is not connected so far with the end game. There's no need for the beginning of this process, if we are not for the end. Now, the end game of uranium is nuclear weapons and nuclear power plants. Nuclear weapons are an abomination. I can't say it any clearer. The nuclear industry produces all kinds of waste that we have no solution for in its storage and to make it and keep it safe.

Then there's always the chance of nuclear disaster. Chernobyl, Three Mile Island, Fukushima, and then a disaster waiting to happen like the one that this country avoided two months after Fukushima. Now, this was a near disaster that went

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

**Sandberg, Nick, Commenter ID No. W12**

Thank you for your comment, Nick Sandberg.

The comment tracking number that has been assigned to your comment is ULPD50012.

Comment Date: May 7, 2013 12:28:05PM
Uranium Leasing Program PEIS
Comment ID: ULPD50012

First Name: Nick
Middle Initial:
Last Name: Sandberg
Organization: San Juan County, Utah
Address: PO Box 9
Address 2:
Address 3:
City: Monticello
State: UT
Zip: 84535
Country: USA
Privacy Preference: Don't withhold name or address from public record
Attachment:

Comment Submitted:

San Juan County, Utah, has reviewed the Draft ULP EIS dated March 2013 and finds that it has adequately identified and considered the effects of the various alternatives on socioeconomics, transportation and human health as these resource concerns pertain to San Juan County. We also find that the analysis has adequately identified potential mitigation measures to minimize expected impacts from the alternatives. We have no recommendations for changes to this document. We appreciate this opportunity to comment and participate in this process as a cooperating agency. W12-1

W12-1 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

**Sands, Ed, Commenter ID No. E29**

**From:** Ed Sands
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, May 24, 2013 3:52:52 PM

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

E29-1 The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E29-2 Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

E29-3 In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E29-4 The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

E29-5 I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Ed Sands

E29-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E29-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E29-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E29-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Sands, Ed, Commenter ID No. E29 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E29-5 See responses to E29-1 and E29-2.

**Saunders, Bob, Commenter ID No. T32**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

18

Chip, anything else I should bring to attention?

MR. CAMERON: No. I think we are ready to go to public comment.

We have two representatives from the Telluride Town Council with us tonight, and I'm going to start with them, with Chris Myers and Bob Saunders, and then we are going to go to Shauna Palmer, Randy Parker, and Jennifer Parker.

And, Chris, if wouldn't mind coming up here.

CHRIS MYERS: Can we start with Bob?

MR. CAMERON: Are we starting with Bob? Okay. All right.

BOB SAUNDERS: First of all, I would like to say I'm for Alternative 1. And also I have a couple of photographs here. Is there a way to enter those into the record or...

MR. PLIENESS: Yes.

BOB SAUNDERS: I'll get to those in a second.

There's so much wrong with the nuclear industry and uranium, in general, it's hard to know where to start. Uranium, when processed, is one of the most toxic substances on the planet. We have

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T32-1

T32-1 (Cont.)

T32-1 Uranium is a natural radioactive element as discussed in Section 3.5.1.1 of the PEIS. All isotopes of uranium eventually decay to form radioactive isotopes of other elements.

**Saunders, Bob, Commenter ID No. T32 (Cont.)**

so many substances on the planet that are polluting our environment already, and yet we continue to mine and process uranium which has the potential of polluting our planet for a much longer time than most other substances.

T32-1 (Cont.)

A couple of examples: Since 1946, the U.S. Navy dumped 55-gallon drums of nuclear waste near the Farallon Islands, some 30 miles off the California coast near San Francisco. They simply threw the 55-gallon steel drums over the side of the ships. When the drums failed to sink, which was most of the time, they used the drums for target practice and shot them full of holes, letting water in and nuclear waste out.

This went on until the 1990s. It was estimated that almost 50,000 drums were dumped near the Farallons alone and many hundreds of thousands of drums in about 50 sites in the oceans. The U.S. was not alone in this. Russia, China, Japan, New Zealand, and most of the European countries are also culprits.

In Fallujah, there has been a huge increase in birth defects, infant mortality, childhood cancers, and all cancers. It has been reported there has been a fourfold increase in all

**Saunders, Bob, Commenter ID No. T32 (Cont.)**

cancers since Fallujah was attacked in 2004. There's been a twelvefold increase in childhood cancers. Infant mortality is four times higher than in Jordan and eight times higher than in Kuwait. There has been a thirty-eight-fold increase in leukemia, ten times the normal rate for breast cancer, significant increase in lymphoma and brain tumors as well.

There has also been a noticeable drop in the male birthrate since 2004, suggesting that genetic damage from radiation exposure is more prevalent in male than female fetuses. There was a similar drop in the male birthrate after the bombing of Hiroshima.

In Fallujah, this has been attributed to the use of depleted uranium and ammunition used by the U.S. military. There have been many people exposed to radiation, both from the attacks and the aftermath when scavengers went into the battle fields to retrieve any metal that might be of value.

Here in this country, there are many examples of cancer and other illnesses related to exposure to uranium and other radioactive substances. There was a huge toxic spill on the

T32-1 (Cont.)

**Saunders, Bob, Commenter ID No. T32 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

21

T32-1 (Cont.)

Navajo reservation near Church Rock which dumped huge amounts of radioactive waste into the Rio Puerco. The Navajo nation is still feeling the effects of that exposure and higher cancer rates and other associated diseases.

T32-2

The one photograph there is a billboard seen outside of Tomb City alerting uranium workers that home nursing was available at no cost. The other photo is a glass top table on my deck. It is a clear glass top table. It is covered with dust from a storm the likes of which we get here in the San Juans. The dust is picked up west of here and deposited in the mountains. There are already uranium mines in the west end of our county that could be contributing to the dust you see in this photo. We are right downwind from the source.

Is it possible to tell if the dust comes from the mines? Maybe not. Is it worth the risk to open up more mines in the west end? Absolutely not.

The uranium industry, by and large, has been a terrible polluter in the past and the present. The Cotter Mill in Cañon City is a perfect example of the industry's lack of conscience when it comes to the pollution they

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T32-2 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation (including potential air quality and water resources and quality impacts) in identifying Alternative 4 as DOE's preferred alternative.

The lessees are required to be in compliance with Federal, state, and local requirements.

**Saunders, Bob, Commenter ID No. T32 (Cont.)**

create. The Schwartzwalder mine in Jefferson County, Colorado is an example of a mine that is polluting the groundwater which runs into Ralston Creek and then Ralston Reservoir, a source of drinking water for Denver and Arvada. The CDPHE and the EPA seem either unwilling or unable to hold the owners of the mine and the mill accountable for the ongoing health hazard they are creating.

T32-2 (Cont.)

Why am I bringing these statistics to you? Because it starts here. It starts with the DOE. It starts with you. Any further development of the uranium industry starts with you. The permits you issue allow the pollution of our environment to continue. The permits you issue allow more of the kind of disease that I have described to continue.

There are many new and developing sources of green and renewable energy that are coming online that will allow us to continue to live the lifestyle we are accustomed to without the cost to life and environment that the nuclear industry brings along with it. It's time to stop mining and milling uranium now while we still have a chance to save the environment that supports us and all the people who will follow us. It starts here. It

T32-3

T32-3 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

**Saunders, Bob, Commenter ID No. T32 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

23

starts with the DOE. It starts with you.

Sorry. I forgot to introduce myself. I'm Bob Saunders, Mayor Pro Tem of Telluride, although I'm speaking for myself. Thank you for your time.

MR. CAMERON: Thank you. Now we will go to Chris. This is Chris Myers.

CHRIS MYERS: My name is Chris Myers. I serve on the Telluride Town Council and I have for three years, but I'm here tonight speaking as a citizen. Given that the comment period for written comments has until May 31st, it's likely that the Telluride Town Council will issue formal written comments and send those along shortly.

First, I would like to address some broader issues, which I think Bob touched on. First and foremost is that in 60 years of nuclear industry in this country, we have failed as a country politically and as citizens to ever come up with a place for disposal of radioactive waste. I'm absolutely flabbergasted that we are considering increasing the supply of uranium in the marketplace when we have failed miserably. Nobody wants it in any of their communities, in their backyard, so why are we even considering the

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T32-3 (Cont.)

**Savant, Sam, Commenter ID No. W13**

Thank you for your comment, Sam Savant.

The comment tracking number that has been assigned to your comment is ULPD50013.

Comment Date: May 19, 2013 09:14:42AM
Uranium Leasing Program PEIS
Comment ID: ULPD50013

First Name: Sam
Middle Initial:
Last Name: Savant
Organization:
Address:
Address 2:
Address 3:
City:
State:
Zip:
Country: USA
Privacy Preference: Don't withhold name or address from public record
Attachment:

Comment Submitted:

Dear Department of Energy,

Please reissue the PEIS for comment as it is lacking in some important areas. For example, it does not address how to protect endangered or threatened species; how to maintain satisfactory water quality in the Dolores River; or how the immense amount of water needed for mining will impact the already drought-stricken area. W13-1

As a Colorado native, I know that there are enough old mines that turned into Superfund sites. We must prevent this from happening again. At a minimum, the companies profiting from mining operations should put a substantial amount of money into a fund for future cleanup of pollution caused by mining. This should be done before they are granted permission to mine. I must put money into an escrow account to ensure that I will make my house insurance and tax payments. Mining companies should do the same to ensure that they fulfill their obligations to clean up the waste from their operations. It?s not fair that the (often foreign) mining companies take the benefits, while USA citizens must shoulder the burden of the toxic waste. W13-2

W13-1 The evaluations in the PEIS do address the endangered or threatened species and water quality/water depletion issues. DOE has consulted with the USFWS. The Biological Assessment (BA) prepared for consultation with the U.S. Fish and Wildlife Service (USFWS) regarding potential impacts of the ULP on species listed under the ESA and the Biological Opinion (BO) issued by the USFWS in August 2013, are presented in Appendix E of this PEIS. PEIS text has been revised consistent with the BA and BO, see Appendix E and Section 4.3.6.4.

W13-2 Lease tract operations are currently covered by reclamation bonds, calculated by DOE based on site-specific conditions and deemed sufficient to reclaim those conditions in coordination with CDRMS.

**Schoettler, Joanne, Commenter ID No. E82**

**From:** Joanne Schoettler
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Wednesday, June 05, 2013 3:02:03 PM

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E82-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E82-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E82-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E82-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E82-5

Sincerely,

Joanne Schoettler

E82-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E82-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E82-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E82-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Schoettler, Joanne, Commenter ID No. E82 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E82-5 See responses to E82-1 and E82-2.

## Schofield, Mark, Commenter ID No. E15

**From:** Mark Schofield
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, May 24, 2013 12:48:50 AM

Dear

Dear Mr. Plieness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E15-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential. E15-2

In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E15-3

Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP Lessees. E15-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E15-5

Sincerely,

Mark Schofield

E15-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E15-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E15-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E15-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Schofield, Mark, Commenter ID No. E15 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E15-5    See responses to E15-1 and E15-2.

**Sharp, Rod, Commenter ID No. L20**

Ray Plieness, PEIS Document Manager
Office of Legacy Management
U.S. Department of Energy
11025 Dover Street, Suite 1000
Westminster, CO 80021

April 16th, 2013

Dear Mr. Plieness,

L20-1

This letter is regarding the draft Programmatic Environmental Impact Statement (PEIS) issued by your agency for the Uranium Leasing Program (ULP). After reviewing the documents, I am in favor of adopting Alternative 4, which is also your agency's preferred alternative. This approach would continue to allow development on the 31 leases contained in the ULP. My support is based predominantly on the tremendous economic benefits that uranium mining brings to the local regions.

Uranium mining can support hundreds of jobs directly, and many more tangentially. The local businesses that grow in and around the communities that are supported by the mines also provide employment opportunities, as demand for mining inputs grows, as well as a full range of support services – restaurants, grocery stores, service stations, retail shops and so on. This kind of economic growth and local prosperity is only provided by a healthy base industry, such as mining. We have a wealth of uranium located right here in our region, and it makes a great deal of sense to put our economy to work in recovering it.

While the job growth alone would be enough of a reason to support the ULP, there are other economic advantages as well; more people employed, and more businesses open, means a larger tax base, both in terms of income tax and property taxes. This, in conjunction with the royalties and other direct payments made from the mines themselves, supports the growth of necessary local services – everything from police, fire, and emergency medical, to road and bridge maintenance, to local school facilities. All of this would be put to risk if the leases are terminated or reduced.

L20-2

There is no doubt that you will receive comments from a few individuals and outside groups asking that the leases be withdrawn for environmental reasons. The fact is that the environmental impacts are minimal, and that uranium mining can take place without the type of risks that these lobbyists will try and claim. The evidence is in the draft EIS itself, and backed up by our long and proud history of responsible mining in the region.

Please let our communities continue to reap the economic benefits of uranium mining, by adopting your preferred alternative for this PEIS.

Sincerely,

Rod Sharp

Rod Sharp
2659 Hemlock Ct.
Grand Junction, CO 81506

L20-1 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

L20-2 See response to L20-1.

**Siglin, Patrick, Commenter ID No. T18**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

21

PATRICK SIGLIN: Evening, everyone. My name is Patrick Siglin, I'm a geologist for Black Range Minerals; we're a uranium mining company and have an office located in Golden, Colorado, and Canon City.

And I support the Department of Energy's recommendation on this PEIS. I support it because I believe that the mining of uranium through the generation of power by using uranium can be done safely and efficiently. And therefore, I believe that it is in the best interest of Montrose County, Mesa County, San Miguel County, the directly surrounding areas, the state of Colorado and the United States of America to follow the recommendation of the Department of Energy at this point. Thank you.

MR. CAMERON: Thank you very much, Patrick.

Dennis?

DENNIS MITCHELL: My name is Dennis Mitchell; I've lived in Montrose for 36 years. I support the biggest amount of leases that you can open. For the simple reason that we don't mine our resources in this country; we mine from somewhere else, and they pollute a lot worse than us. If you want to go look and see what they do in China, look on the Internet and see the mining there.

I've been involved in mining and minerals my

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T18-1

T18-1 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative.

**Smith, Wally, Commenter ID No. T24**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-23-2013

that river or bedrock either. So I know we had scenic river impact studies going about a year ago; I worked on the studies in the Delta area and worked with some of the people in San Miguel County doing those. So I do not think there is an impact. Thank you.

MR. CAMERON: Thank you very much, Betty. We're going to go to Wally Smith and then Marvin Ballantyne and Jim Riddell.

WALLY SMITH: I'm Wally Smith. I live in Montrose. I've lived in the west almost all my life, except a couple years. I am a downwinder. And mining is not like it used to be, let me tell you. It is a total different picture.

Everybody throws up all the problems we've had in the past; yes, we had to win World War II, but we won it. And a lot of the west end was opened up (inaudible) was after the war. And the canyon had no road down through there, and it was paved and done by the Department of Energy, I think, in the '40s.

And that was to get uranium out of there. I'd just like to say that I've been in the Caribbean quite a bit and in South America, and the Chinese are buying up a lot of the minerals and the gas. And this should scare you to death.

We have two mines in Ouray County. I think

T24-1

T24-1 The possibility that uranium or uranium ore from the ULP may be subject to being exported does not undermine the PEIS's stated purpose and need, and does not require that the PEIS's scope be expanded to analyze the export of uranium or uranium ore. Any export of domestic uranium or uranium ore from any source within the United States, including the ULP lease tracts, is strictly regulated by Nuclear Regulatory Commission (NRC) under the terms of the AEA and the NRC regulations, which impose requirements that must be satisfied before the NRC will grant a license to export any domestic uranium or uranium ore. See AEA, 42 U.S.C. §§ 2099, 2151-2160d; NRC regulations, 10 C.F.R. §§ 110.19-110.46. For example, 42 U.S.C. § 2099 forbids the NRC from licensing any person to export from the United States any uranium ore, or other source material, if the issuance of such a license "would be inimical to the common defense and security" or the health and safety of the public; 42 U.S.C. § 2155 gives the Executive Branch the authority to veto any export of uranium ore. Many more specific requirements are imposed in the other above-cited provisions of the AEA and the NRC regulations.

Therefore, DOE's proposed action in the PEIS does not address uranium ore exports, over which the NRC, not DOE, has authority; and the scope of analysis in the PEIS does not analyze the possibility that uranium ore from the ULP may be subject to export.

In addition, the possibility that uranium ore from the ULP may be subject to export, after a prospective exporter goes through the process of applying for and receiving the necessary permission from the NRC, does not undermine the stated purpose and need for agency action: to support the AEA provisions which authorized and directed DOE to develop a supply of domestic uranium, and to issue leases or permits for prospecting, exploration, mining, or removal of deposits of uranium ore in lands belonging to the United States to the extent DOE deems necessary to effectuate the provisions of the AEA (42 U.S.C. §§ 2096-2097). An active ULP program will be more successful in meeting that need than would an inactive program.

**Smith, Wally, Commenter ID No. T24 (Cont.)**

both of those mines are Chinese mines. And I think this is domestic, we need to hold on to our own and not ship it out. I think that's really important.

I was in the manufacturing business for 30 years. And I know without the trace metals and these things, I wouldn't have been in business. And if we run out of these, China is going to run it.

And if you think that's wrong, we wouldn't have any of those solar problems -- solar projects, because it takes certain metals to make those bearings work. And without those, we are dead.

And I think we need to make sure that we do it domestic, though. I think that's important. Because China is buying up our destiny, and we're selling it to them. And we have to watch out for this. Thank you.

T24-1 (Cont.)

MR. CAMERON: Thank you very much, Wally. And Marvin Ballantyne is coming up to speak to us.

Marvin?

MARVIN BALLANTYNE: Thank you. Good evening, my name is Marvin Ballantyne, I'm a member of Western Colorado Congress, but I'm just speaking on my own here tonight.

You know, whatever alternative is approved here does not make mining happen. Mining is a

**Stettner, Paul, Commenter ID No. E11**

**From:** Paul Stettner
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Thursday, May 23, 2013 9:33:43 PM

Dear

Dear Mr. Pleness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

E11-1: The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E11-2: Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential.

E11-3: In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E11-4: Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP Lessees.

E11-5: I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Paul Stettner

E11-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E11-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E11-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E11-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Stettner, Paul, Commenter ID No. E11 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E11-5 See responses to E11-1 and E11-2.

**Stettner, Paul, Commenter ID No. E63**

**From:** Paul Stettner
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Saturday, June 01, 2013 12:00:19 AM

Dear

Dear Mr. Pilenes:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E63-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E63-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E63-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E63-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E63-5

Sincerely,

Paul Stettner

E63-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E63-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E63-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E63-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Stettner, Paul, Commenter ID No. E63 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E63-5 See responses to E63-1 and E63-2.

**Stucklen, Deborah, Commenter ID No. W1**

Thank you for your comment, Deborah Stucklen.

The comment tracking number that has been assigned to your comment is ULPD50001.

Comment Date: April 3, 2013 16:20:28PM
Uranium Leasing Program PEIS
Comment ID: ULPD50001

First Name: Deborah
Middle Initial:
Last Name: Stucklen
Organization:
Address: 3349 N. Chestnut Ave.
Address 2:
Address 3:
City: Loveland
State: CO
Zip: 805382527
Country: USA
Privacy Preference: Don't withhold name or address from public record
Attachment:

Comment Submitted:

I lived in Montrose, CO 22 years and on jeep trips in the mountains saw the terrible contamination left from the uranium mining that has never been cleaned up. Now, I feel strongly that before any more uranium gets mined, the company or companies that made this mess in the first place need to clean up. Uranium has an extremely long half life that causes radiation sickness for hundreds of thousands of years. W1-1

W1-1 The evaluation for potential impacts on human health including impacts from potential exposure to uranium and radon are discussed in Sections 4.1.5, 4.2.5, 4.3.5, 4.4.5, and 4.5.5 for Alternatives 1 to 5, respectively. Human health cumulative impacts are discussed in Section 4.7. The results indicate that with adherence to regulatory requirements and implementation of mitigation measures, the uranium mining activities can be conducted in a manner protective of the human health and the environment.

Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

## Syldona, Maria, Commenter ID No. E6

**From:** Maria Syldona
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Thursday, May 23, 2013 8:04:06 PM

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program and its recent Programmatic Environmental Impact Statement (PEIS).

E6-1 The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interests. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E6-2 Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a Clean Alternative, one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines, so create jobs by cleaning-up old sites before making new legacies of pollution. Also, DOE should elevate solar energy above dangerous uranium within the scope of its ULP. Solar is a viable energy alternative that does not risk public health or environmental quality, and western Colorado is renowned for its potential.

E6-3 In order for future DOE uranium development to be done safely, impact analyses must include thorough programmatic review alongside in-depth, localized information. The Uranium Leasing Program runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on economy, environment and public health. The PEIS lacks a detailed analysis of water quality, wildlife and water supplies. The cumulative impact analysis is also weak, excluding a comprehensive study of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E6-4 Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet our communities would again become dependent on a boom & bust market; we would also face unavoidable environmental and land use degradation for private companies to profit. To help curtail these issues, DOE should create bonding and royalty requirements for ULP Lessees.

E6-5 I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Maria Syldona

E6-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E6-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E6-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E6-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Syldona, Maria, Commenter ID No. E6 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E6-5 See responses to E6-1 and E6-2.

**Szilagyi, Paul, Commenter ID No. T38**

recommending that you don't go any further with uranium mines.

MR. CAMERON: And, Catherine, could you sum up for us.

CATHERINE PETERSON: And that was my last thing, the Indian tribes.

MR. CAMERON: Perfect.

CATHERINE PETERSON: Anyway, thank you very, very much for coming here, and obviously we need -- for our health and economic and everything, we need Option 1. We need to like squelch this whole thing.

MR. CAMERON: Thank you, Catherine. Now to Paul Szilagyi, and I hope that I'm pronouncing that sort of correctly, and then we have Mike Rozycki.

PAUL SZILAGYI: It's Szilagyi. It's Hungarian. And I don't expect any claps when I'm done, but I do thank you for welcome miners to your territory. It's very nice that you put that up.

T38-1 I'm here for three hats today. I'm here for myself, and most of my comments will be about myself. I will also talk as an investor in a mining company, a mining company that has no interest in any of the leases that are under

T38-1 Comment noted. DOE considered all comments received on the DPEIS and the results of the PEIS evaluation in identifying Alternative 4 as DOE's preferred alternative. Alternative 4 provides for the continuation of the ULP (with exploration and mine development /mine operation, and reclamation) at the 31 lease tracts for the next 10-year period or for another reasonable period.

**Szilagyi, Paul, Commenter ID No. T38 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

39

discussion here today under the ULP, so I have no dog in the hunt. And, thirdly, I come to you as a board member of the Western Small Miners Association.

And all of my hats wish to recommend the DOE go forward with their preferred Alternative No. 4. The Western Small Miners will likely issue a formal comment in support of this. For those of you who don't know the organization, it was formed a few years ago. It's to foster, you know, to enhance and to promote mining and agriculture in this area. It's to foster economic development, which is probably number one and should be listed that way. And it's also to ensure and promote public health and safety.

T38-1 (Cont.)

The majority of people that you are talking about that are economically impacted, bread and butter wise, providing for their family, live here. They want it done safe. There's many comments about the history and the legacy of uranium mining. That would be like me saying I'm going to go out and prepare a business plan with multiple years of financial statements. I'm not going to use a calculator, I'm not going to use a computer, I'm going to use pens and pencils and

T38-2

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T38-2 See response to T38-1.

**Szilagyi, Paul, Commenter ID No. T38 (Cont.)**

adding machines.

It's not the same world. Trust me. And you need to look at the standards that we have to meet at a uranium mine to even get a permit. I would love to take any of you, if you really wanted to know. That said, I'm not known for uranium mining.

T38-2 (Cont.)

I'm known for hybrid electric vehicle technology development, part of a group we financed with our own money, and built the vehicles that run on 16th Street Mall in Denver. It was the world's largest, and still is, series hybrid vehicles. They carry 116 people. They have an engine smaller than a Toyota Prius. They pollute less. In those are batteries. In those are generators. You are going to need those for any kind of energy that's advanced.

And no one's talked about vanadium here. Vanadium is really an important mineral. It's part of these lease tracts. And this is one of the few areas in the world where uranium and vanadium has been deposited together. Vanadium is -- has great promise for standby and facility level, grid level energy storage.

T38-3

Why do we need uranium? They're charged

T38-3 See response to T38-1.

**Szilagyi, Paul, Commenter ID No. T38 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

41

with it. They're charged with it because we get 20 percent of our power, electrical power, from nuclear. We need uranium. We import over 90 percent of what we use. That's not something that's a good position for our country. If we want to move away from it, that's fine. But remember that you are going to increase your carbon footprint, so think about it and decide what you really want to do.

MR. CAMERON: If you could finish up for us, Paul.

PAUL SZILAGYI: I will. I could go on for a long time. But I'm an environmentalist. I took my first environmental class in 1977. If this group -- I would ask you to go home and challenge. If you're truly an environmentalist and if this is truly going to be part of the world -- and by the way, nuclear power is on the upswing. If you are truly an environmentalist, there is no better place on the planet where there's better worker protections and there's better environmental protections than right here.

MR. CAMERON: Okay. Thank you. Thank you very much. Mike Rozycki.

MIKE ROZYCKI: Good evening. My

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T38-3 (Cont.)

T38-4

T38-4 Comment noted.

**Taylor, Kristin, Commenter ID No. L9**

DRAFT URANIUM LEASING PROGRAM PROGRAMMATIC ENVIRONMENTAL IMPACT STATEMENT (DOE/EIS-0472-D)
U.S. Department of Energy

WRITTEN COMMENT FORM
*Public comment period closes on May 31, 2013*

Mr. ____ Mrs. ____ Ms. ✓ Mr. & Mrs. ____ Dr. ____

Name: Kristin Taylor

Title: US Citizen

Organization:

Address:

City: State: Zip Code:

Phone: 970 728 3306 E-Mail Address: kt@raydiant.com

Comment:

* Reserve * the uranium in the ground for future domestic needs. Do not extract it for China now! (L9-1)
* Remediate the public lands already destroyed by the uranium industry to prevent further contamination of the Dolores Watershed & create jobs now. (L9-2) We want to use OUR public lands for Renewables - to generate jobs & CLEAN energy for the U.S. (L9-3)

*Please use other side if more space is needed.*

**WITHHOLDING OF PERSONAL INFORMATION:** Information you provide on this form may be published as part of the public record for this project, including publication on the Internet. Individual respondents may request confidentiality by checking one of the two boxes below. The DOE will honor such requests to the extent allowed by law. All submission from organizations and businesses, or from individuals identifying themselves as representatives or officials of organizations or businesses, will be available to the public in their entirety.

☐ Withhold my name and address from the public record.
☒ Withhold only my address from the public record

Comment form may be mailed to:
Mr. Ray Plieness
DOE ULP PEIS Document Manager
Office of Legacy Management
U.S. Department of Energy
11025 Dover Street, Suite 1000
Westminster, CO 80021

Comment form may be sent by electronic mail to:
ulpeis@anl.gov

L9-1 The possibility that uranium or uranium ore from the ULP may be subject to being exported does not undermine the PEIS's stated purpose and need, and does not require that the PEIS's scope be expanded to analyze the export of uranium or uranium ore. Any export of domestic uranium or uranium ore from any source within the United States, including the ULP lease tracts, is strictly regulated by Nuclear Regulatory Commission (NRC) under the terms of the AEA and the NRC regulations, which impose requirements that must be satisfied before the NRC will grant a license to export any domestic uranium or uranium ore. See AEA, 42 U.S.C. §§ 2099, 2151-2160d; NRC regulations, 10 C.F.R. §§ 110.19-110.46. For example, 42 U.S.C. § 2099 forbids the NRC from licensing any person to export from the United States any uranium ore, or other source material, if the issuance of such a license "would be inimical to the common defense and security" or the health and safety of the public; 42 U.S.C. § 2155 gives the Executive Branch the authority to veto any export of uranium ore. Many more specific requirements are imposed in the other above-cited provisions of the AEA and the NRC regulations.

Therefore, DOE's proposed action in the PEIS does not address uranium ore exports, over which the NRC, not DOE, has authority; and the scope of analysis in the PEIS does not analyze the possibility that uranium ore from the ULP may be subject to export.

In addition, the possibility that uranium ore from the ULP may be subject to export, after a prospective exporter goes through the process of applying for and receiving the necessary permission from the NRC, does not undermine the stated purpose and need for agency action: to support the AEA provisions which authorized and directed DOE to develop a supply of domestic uranium, and to issue leases or permits for prospecting, exploration, mining, or removal of deposits of uranium ore in lands belonging to the United States to the extent DOE deems necessary to effectuate the provisions of the AEA (42 U.S.C. §§ 2096-2097). An active ULP program will be more successful in meeting that need than would an inactive program.

L9-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

L9-3 The evaluation of the use of the ULP land for development of solar energy or renewable energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for such purposes is not excluded by the ULP Program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies, including many based on renewable sources.

**Taylor, Linda, Commenter ID No. E124**

**From:** Linda Taylor
**To:** mail_ulpeis
**Subject:** Concern for those most at risk
**Date:** Monday, July 01, 2013 11:35:05 AM

Dear

Dear Mr. Pliness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

As the leader of an Independent Living Center serving 12 counties on the Western Slope of Colorado, I am extremely concerned about the long term effects of environmental pollution on the health of our citizens. People with disabilities at every age show disproportionate high poverty, unemployment, use of public benefits, isolation and public health risks. Thus I urge restraint in development of such a dangerous and toxic resource as uranium.

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E124-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E124-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E124-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E124-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E124-5

Sincerely,

Linda Taylor

E124-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E124-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E124-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E124-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Taylor, Linda, Commenter ID No. E124 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E124-5 See responses to E124-1 and E124-2.

## Terrill, Nancy, Commenter ID No. E27

**From:** mail_ulpeis
**To:** ________
**Subject:** FW: Clean Up and Clean Energy!
**Date:** Friday, May 24, 2013 1:51:30 PM

-----Original Message-----
From: Nancy Terrill [] ________________
Sent: Friday, May 24, 2013 12:12 PM
To: mail_ulpeis
Subject: Clean Up and Clean Energy!

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E27-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E27-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E27-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E27-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E27-5

Sincerely,

Nancy Terrill

E27-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E27-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E27-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E27-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Terrill, Nancy, Commenter ID No. E27 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E27-5 See responses to E27-1 and E27-2.

**Terry, Noalani, Commenter ID No. E72**

**From:** Noalani Terry
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, June 28, 2013 7:46:54 AM

Dear

Dear Mr. Pilness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

E72-1
The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E72-2
Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

E72-3
In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E72-4
The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

E72-5
I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Noalani Terry

E72-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E72-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E72-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E72-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Terry, Noalani, Commenter ID No. E72 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E72-5    See responses to E72-1 and E72-2.

**Terry, Noalani, Commenter ID No. E106**

**From:** Noalani Terry
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Monday, June 03, 2013 8:58:17 AM

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

E106-1: The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions.

E106-2: Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies.

E106-3: In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region.

E106-4: The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit.

E106-5: I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community.

Sincerely,

Noalani Terry

E106-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E106-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E106-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E106-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Terry, Noalani, Commenter ID No. E106 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E106-5 See responses to E106-1 and E106-2.

## Thompson, Donald, Commenter ID No. E110

**From:** Donald Thompson
**To:** mail_ulpeis
**Subject:** Clean Up and Clean Energy!
**Date:** Friday, June 28, 2013 2:42:32 PM

Dear

Dear Mr. Plieness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E110-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E110-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E110-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E110-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E110-5

Sincerely,

Donald Thompson

E110-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E110-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E110-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E110-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.

**Thompson, Donald, Commenter ID No. E110 (Cont.)**

The socioeconomic evaluation for the alternatives indicates that as many as 253 direct jobs and 152 indirect jobs could be created (for Alternative 5 which would create the most number of the five alternatives). This additional employment constitutes a 0.6 percent increase in total employment in the three-county ROI.

Average unemployment for Mesa, Montrose, and San Miguel counties for 2011 was reported to be about 10.3%, 11%, and 7.6%, respectively (see Section 3.8.1.1).

E110-5   See responses to E110-1 and E110-2.

**Thompson, Jane, Commenter ID No. T57**

And as far as I know, I'm not a mutant and she lived in Uravan before I was born. I think there's a lot of junk science that has influenced all these impact statements and everything else.

Basically that's what I have to say, is just we need to go by science and not by emotions from other areas.

MR. CAMERON: Thanks, Troy. Is there anybody else who wants to come up and talk to us?

Jane, do you want to reconsider?

JANE THOMPSON: My name is Jane Thompson, and I'm the president of the Rimrock Historical Society. We are working very hard right now to preserve the history of the Uravan Mineral Belt, the town of Uravan, and the uranium mining industry, which we are all very proud of.

I would also like to say that I'm third generation to live in Uravan. My grandparents moved there when there were no houses. They lived in a tent town. The Rimrockers just leased from the County 17 acres in Uravan that the County just had acquired from Dow Chemical, and we plan to build a museum and an RV park to sustain the museum. And we would appreciate the support and we

T57-1

T57-1 Comment noted.

**Thompson, Jane, Commenter ID No. T57 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-25-2013

22

are very, very proud of our uranium history.

MR. CAMERON: Thanks, Jane.

We still have time for anybody else who might want to come up and talk. If we don't have anybody else now, Ray is going to come up and close this part of the meeting out for us, and then we are going to adjourn to the posters and just talk about whatever you want to talk about with Ray and the DOE experts. Ray.

MR. PLIENESS: Thank you. What will happen from here is comments that we receive will become a part of the record, as well as all written comments that we get by May 31st. In addition, any comments that we receive after May 31st that we can still utilize in our evaluation, we'll do so. From that, we will develop a response-to-comments document and make any changes and recommendations that we need to in the final EIS. So from these comments -- without a doubt, there will be changes to the final EIS. What those will be will still be determined by the comments. So each and every one of your comments will be considered and ultimately be provided to the decision-makers before they make their final record of decision sometime early next year.

T57-1 (Cont.)

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

**Thurston, Jennifer, Commenter ID No. T43**

Show me an example where it's safe and I'm willing to listen. I've done some research. I haven't been able to find one on our planet. We can't contain or dispose of or effectively use this very dangerous, highly toxic substance. It's a gamble to me, and I'm not willing to take the gamble. I'm very conservative.

So that's my charge, my question, to the Department of Energy and others. Show me an example where it's safe and we can control it, and there's never a truck that turns over and no one's water ever gets polluted and I will believe you.

I will conclude with this before you tell me my time's up. Albert Einstein said of uranium and its use in producing electricity: What an absurdly ridiculous way to boil water.

MR. CAMERON: Okay. Thank you. Linda Thurston.

JENNIFER THURSTON: Did you call me Linda?

MR. CAMERON: I did. Is that wrong?

JENNIFER THURSTON: For the record, my name is Jennifer Thurston. I live in Norwood, Colorado and I'm from San Miguel County, the heart of the Uranium Leasing Program, the most wonderful

**Thurston, Jennifer, Commenter ID No. T43 (Cont.)**

Capital Reporting Company
In Re: ULP PEIS Public Hearings 04-24-2013

53

county in the most wonderful state.

And I grew up down the road in sort of the place that I refer to as the cusp between gold country and uranium country, so I understand the landscape. I'm also the director of INFORM, the Information Network for Responsible Mining, and I'm preparing some very detailed comments to submit to you before the end of the deadline. So I'm just going to be as brief as four minutes will allow me to be.

INFORM, in 2008, sued the Department of Energy, along with the Colorado Environmental Coalition and Center for Biological Diversity and, a couple years later, the wonderful conservation group Sheep Mountain Alliance. And the reason why we have this PEIS is because of that lawsuit. And I can tell you, I have been rather frustrated. We had these hearings in late summer 2011, and the last time I tried to give comments to the Department of Energy, Laura Kilpatrick, who is the realty officer, spent most of my three-minute hearing rolling her eyes at me.

I know it doesn't go into the official transcript about how DOE representatives typically sit in the back of the room with their hands

(866) 448 - DEPO www.CapitalReportingCompany.com © 2013

T43-1

T43-1 Comment noted. DOE appreciates and welcomes public participation (and comments) on the PEIS process.

**Thurston, Jennifer, Commenter ID No. T43 (Cont.)**

crossed when environmentalists get up and talk. However, last week on the front page of the Telluride Daily Planet, I read a quote from Mr. Plieness about how sincere he is in listening, and I want to be sincere back because I want you to know what I know about this program and about what's happening on our landscape. So I'm going to be very detailed about that in written comments.

T43-1 (Cot.)

I want to focus a little bit on San Miguel county. And, actually, just to sort of run through my general feelings about the whole Uranium Leasing Program. You've divided these areas into four tracts: Gateway and Outlaw, Mesa, and the Gateway tracts. There's a higher purpose to those tracts than uranium mining, and it's about recreation and how actively they are used by people who love to ride around on those roads on the ATVs or ride around on their horses. That's a real conflict with uranium mining. And Gateway has such a tremendous potential for recreation and tourism development. It would be a shame not to see those tracts pulled from the program.

T43-2

One of the big concerns that I have has to do with cumulative impacts. I think that the flaws in the studies -- most have to do with you

T43-3

T43-2 DOE included all 31 lease tracts in the PEIS evaluation as they are all part of the ULP withdrawn lands. DOE will consider mitigation measures on a case-by-case or lease-by-lease basis to assure that potential impacts are minimized to the extent possible including the use of the land for recreational purposes as pointed out by the commenter.

T43-3 Cumulative impacts evaluation as defined by CEQ guidelines involves the consideration of past, present, and reasonably foreseeable future actions as was done in Section 4.7 of the PEIS.

**Thurston, Jennifer, Commenter ID No. T43 (Cont.)**

have a very incomplete picture of cumulative impacts.

Let's talk about the Paradox tracts for a minute; perhaps the most disturbed, unsettled, scarred area in the entire program. I don't think you understand the concept of cumulative impacts when it comes to uranium mining, that once it's a uranium mine, it's really not good for anything else. And there's a lot of space in between all of those lease tract boundaries where there's also uranium mines going on.

We talked a little bit before this meeting started, Mr. Plieness and I, about the congressionally ordered study of the DOE that's basically going to be multiple years in development. It's going to take a long time to truly paint the picture and have an accurate inventory of what's already existing. Somehow when we lack a cumulative notion and a defined idea of what's actually in existence, it does seem a little bit absurd to talk about new mining.

The Uravan tracts, also heavily impacted, even though there's been some reclamation work up there. You know, it's really difficult to think about how the tailings graveyards from the various

T43-3 (Cont.)

**Thurston, Jennifer, Commenter ID No. T43 (Cont.)**

mill sites that have been cleaned up over the years are really out there and that's permanent.

T43-3 (Cont.)

I know that the Department of Energy is very proud of the $65 million in royalties that it's collected in this program, but that's just a drop in the bucket. That's about how much it cost to clean up one mill in Slickrock. And Slickrock is the most important place in the Uranium Leasing Program. It's just a marvelous, marvelous area, and it's San Miguel County and, therefore, I care the most about Slickrock. Those tracts are not suitable for mining. They are directly endangering the health of the Dolores River.

T43-4

I wanted to briefly talk to you -- I don't know how much time I have left.

MR. CAMERON: Just a little bit, Jennifer.

JENNIFER THURSTON: Not enough.

MR. CAMERON: If you could just wrap it up, please. Thank you.

JENNIFER THURSTON: I would like to say that the 14-day extension for the comment period is really not sufficient to prove that you are listening. Give us more time.

T43-5

I understand last night at the meeting in

T43-4 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are not under the ULP and not under DOE's oversight or authority to reclaim. DOE analyzed this alternative as part of its range of reasonable alternatives in the PEIS.

The PEIS identifies a mitigation measure that prohibits new mining development within 1/4 mile of the Dolores River (see Section 4.6 and Table 4.6-1).

T43-5 The public comment period that was to close May 31, 2013 (a 14-day extension from the original end date) was subsequently extended to July 1, 2013.

**Thurston, Jennifer, Commenter ID No. T43 (Cont.)**

Montrose a discussion came up, a mention of the story that ran in the New York Times last week and this photograph. And I would just like to put it into the record because this is not an old file photograph, as was stated. I escorted the photographer to the site, and the photo was taken on March 22, 2013. There you go.

MR. PLIENESS: Okay. Thank you.

JENNIFER THURSTON: No, I'm not done. I have another document where we kind of outlined the specific violations that are in effect on Tract 13. I also want to point out -- I've got another document. It's dated October 24, 2012. It's from the Department of Energy. This is from you guys to the lessee warning them that he must come into compliance with the law. Since then you've had no response from him, and here's an inspection report. I would just like to read it, just an excerpt. It's short. I promise.

MR. CAMERON: Well, Jennifer, we have to give other people time.

JENNIFER THURSTON: All right. You will find it's a violation of the law and you are not enforcing it.

MR. CAMERON: Thank you very much.

T43-6

T43-6 State permits and inspection reports to date reflect the activities of the lessee in addressing existing concerns with Lease Tract 13.

**Townsend, Carl, Commenter ID No. E48**

From: mail_ulpeis
To:
Subject: FW: Clean Up and Clean Energy!
Date: Thursday, May 30, 2013 3:34:56 PM

-----Original Message-----
From: Carl Townsend []
Sent: Thursday, May 30, 2013 3:28 PM
To: mail_ulpeis
Subject: Clean Up and Clean Energy!

Dear

Dear Mr. Pileness:

I am writing to voice my concerns regarding the Department of Energy's (DOE) Uranium Leasing Program (ULP) and its recent Programmatic Environmental Impact Statement (PEIS).

The ULP covers roughly 25,000 acres of public lands across western Colorado, and future uranium development should only be done in a manner that protects public health, safety and welfare. The current PEIS is inadequate and it needs to expand its alternatives, bolster impact analyses, support renewable energy, and protect long-term public interest. For DOE to usher a process that results in the best choice, any analysis should also address bonding, royalty rates, uniform and holistic standards for mine reclamation, and uranium market conditions. E48-1

Under DOE's preferred alternative, scores of existing leases could operate alongside 19 new mines during peak operations. Instead, DOE should substantively consider a "Clean Alternative", one that prioritizes mine reclamation and safer energy alternatives. Western Colorado has thousands of un-reclaimed uranium mines and at the same time is renowned for its solar energy potential. DOE should put people back to work cleaning-up old mines and developing sustainable, renewable energy economies. E48-2

In order for future DOE uranium development to be done safely, impact analyses must include a thorough programmatic review alongside in-depth, localized information. Western Colorado has already carried the disproportionate burdens of an industry that left behind a legacy of waste and radioactive contamination. The PEIS lacks a detailed cumulative impacts study, excluding investigation of long-term economic development, transportation corridors, and public health; in general failing to consider the combined impacts of all past and present uranium activities in this region. E48-3

The ULP runs across Mesa, Montrose and San Miguel Counties; it will inherently have regional implications on our economy, environment and public health. The PEIS states only "minor"" environmental justice concerns are associated with increased uranium mining in this area. Yet, our communities would again become dependent on a boom & bust market and face unavoidable environmental and land use degradation for private companies to profit. E48-4

I believe DOE can offer a program that supports promising sustainable jobs without increased uranium mining. The DOE should contribute to our local economies by putting people back to work reclaiming old mines and developing renewable energy. Every Coloradan has the right to a clean environment, a strong economy and a healthy community. E48-5

Sincerely,

Carl Townsend

E48-1 DOE believes it has adequately evaluated the range of reasonable alternatives (including reclamation) and that the information and analysis in the PEIS are adequate to support any of the alternatives. Use of ULP lease tracts to develop renewable energy is outside the scope of the PEIS and the authorization of the public land orders. DOE requires all mining activities conducted on the lease tracts to be compliant with lease terms and Federal, state, and local regulations that address protection of the public and the environment.

Royalty rates are established in the lease at the time of solicitation. DOE establishes bonding to be the amount adequate to reclaim the lessee's proposed activities as identified in the PEIS in Section 1.2.1. Royalties are based on uranium ore production tonnage and would be applicable to only Alternatives 3, 4, and 5.

The reclamation provisions would be consistent with lease requirements, BLM's reclamation closures guidelines, and CDRMS's regulations as stated in Section 2.1.3 in the PEIS and included in Appendix C. As a cooperating agency, U.S. EPA Region 8 has provided guidance on reclamation requirements that was included in the mitigation measures discussed in the PEIS (see Table 4.6-1).

E48-2 Reclamation of all legacy mines under DOE's oversight within the ULP has been completed. There are currently 12 existing mines on eight lease tracts that will ultimately be reclaimed under the ULP. Other mines in the region are outside of the ULP and are not under DOE's oversight or authority to reclaim.

The evaluation of the use of the ULP land for development of "clean energy that prioritizes mine reclamation and safer energy alternatives" (except for renewable energy) is encompassed by Alternatives 1 and 2 of the ULP PEIS. The evaluation of the use of the land for development of solar energy is outside the scope of the PEIS and is not consistent with the "Purpose and Need" discussed in Section 1.4 of the PEIS. However, surface use of a majority of the ULP land for purposes such as development of renewable energy is not excluded by the ULP program. Although out of scope in this PEIS, DOE oversees numerous programs that are investigating and supporting a wide variety of energy production technologies including many based on renewable sources.

E48-3 DOE has conducted a thorough analysis of cumulative impacts. Cumulative impacts Section 4.7 did analyze all past and present uranium activities within the 50-mile region of influence. The cumulative impacts analyses addressed all of the 13 resource areas (including those mentioned in this comment) and are evaluated in the PEIS in Section 4.7.2.

E48-4 DOE has studied the demographics within the regions of influence of the proposed action in accordance with the Council of Environmental Quality guidance on environmental justice and did not identify any minority or low-income populations. While there are a small number of minority and low-income individuals in the 50-mile region of influence for cumulative impacts evaluated in the PEIS, they account for less than 50% of the population, and do not exceed 20 percentage points above the state average, in any census block group. In addition, the impacts in most environmental resource areas and human health analyzed in this PEIS are minor. There would be no high or adverse impacts on the minority or low-income population groups or the general population.

Large-scale development of uranium resources in the three-county area could mean the in-migration of workers and their families from outside the region. However, it is likely that all workers required for the mining and reclamation activities analyzed in the PEIS would come from within the three-county area. With no demographic impacts therefore likely to occur given the relatively small-scale of development under each of the alternatives, no boom and bust scenario is likely to affect either low-income and minority populations or the general population.