c. **NO STORAGE WITHIN SETBACKS**. In no case shall machinery, over burden or extracted material be stored within 140 feet of the centerline of the public road, except for roadside crushing purposes.

d. **WATER BODY**. Construction materials processing operations shall set back at least 100 feet from any water body. No construction materials processing shall take place in the bed of any water body.

TABLE 4: SETBACKS FOR CONSTRUCTION MATERIALS OPERATIONS

| | GENERAL CONSTRUCTION MATERIALS PROCESSING OPERATIONS | TEMPORARY GRAVEL OPERATION FOR PUBLIC ROAD PROJECT |
|---|---|---|
| **PUBLIC ROADS** | 500 feet from centerline, unless visual screening blocks impacts, then may be reduced to 50 feet from edge of right-of-way. No storage of equipment or materials within 140 feet of centerline. | 65 feet of centerline of roads that are not federal or state highways |
| **NATURAL WATER BODY** | 100 feet; no activity within bed of water body | 100 feet; no activity within bed of water body |
| **FEDERALLY-DESIGNATED WILDERNESS, PARKS OR RECREATION AREAS, OR FEDERAL CAMPGROUND** | 1,000 feet | 1,000 feet |
| **DEDICATED OPEN SPACE OR PUBLIC PARK** | 1,000 feet | 1,000 feet |
| **RESIDENTIAL STRUCTURES** | 125 feet or less if property owner consents to smaller setback; no asphalt/batch plant or crusher shall be located closer than 250 feet. | 125 feet or less if property owner consents to smaller setback; no asphalt/batch plant, or crusher shall be located closer than 250 feet. |
| **PUBLIC AND CIVIC BUILDINGS** | 1,000 feet, unless materials are to be used on-site | 1,000 feet, unless materials are to be used on-site |
| **PUBLIC CEMETERY** | 125 feet | 300 feet |
| **ADJACENT PROPERTY, RIGHT-OF-WAY OR IRRIGATION DITCH** | 30 feet | 30 feet |
| **SENSITIVE WILDLIFE HABITAT** | As required by Section 11-106: *Protection of Wildlife Habitat Areas* | As required by Section 11-206: *Protection of Wildlife Habitat Areas* |

e. **FEDERALLY DESIGNATED WILDERNESS AREAS, NATIONAL PARKS OR RECREATION AREAS, PUBLIC PARKS, FEDERAL LANDS CAMPGROUNDS** Construction materials processing operations shall be set back at least 1,000 feet from any federally designated wilderness area, national park or recreation area, public park, or from any campground located on federal lands to ensure that there is no significant net adverse effect to the purposes for which the designation was made. These setbacks shall not apply when the materials are to be used only on-site, and the impacted owner consents to the application by notarized written form.

f. **FEDERALLY, STATE, OR LOCALLY DEDICATED OPEN SPACE OR CONSERVATION AREAS**. Construction materials processing operations shall be set back a sufficient distance from a permanently dedicated federal, state, or local open space or conservation area to assure that there is no significant net adverse effect to the purposes for which the open space was dedicated. However, these setbacks shall not apply if the materials are to be used only on-site, and the owner of the dedicated open space consents to the application by notarized written form.

g. **RESIDENTIAL STRUCTURES**. Construction materials processing operations shall be set back at least 125 feet of an existing residential structure, legally permitted at the time the processing application is filed, unless the notarized written consent of the owners of the residence has been obtained in advance

BLM_0053372

of submittal of the application for a Land Use Change Permit, the consent is recorded in the Office of the Gunnison County Clerk and Recorder, and is binding upon future owners.

    1. **CRUSHER, ASPHALT/BATCH PLANT FURTHER LIMITED**. No crusher, asphalt or batch plant shall be located within 250 feet of a residential structure.

**h.** **PUBLIC AND CIVIC BUILDINGS**. Construction materials operations shall be set back at least 1,000 feet of any public or civic building, including churches, schools, and community structures, unless the materials are to be used on-site.

**i.** **CEMETERY**. Construction materials processing operations shall be set back at least 300 feet of the property boundary of a public cemetery.

**j.** **SENSITIVE WILDLIFE HABITAT**. Construction materials processing operations shall be located pursuant to the setback requirements of Section 11-106: *Protection of Wildlife Habitat Areas*.

**k.** **ADJACENT PROPERTY, IRRIGATION DITCH OR ROAD RIGHT OF WAY**. No construction materials processing shall be permitted within 30 feet of the boundary of adjacent property, irrigation ditch or right of way.

**l.** **SETBACKS FOR MINING OPERATIONS OTHER THAN CONSTRUCTION MATERIALS PROCESSING**. The mining operations that are not construction materials operations shall comply with the following setback requirements Table 5: *Setbacks for Mining That Is Not a Construction Materials Processing Operation.*

TABLE 5: SETBACKS FOR MINING THAT IS NOT A CONSTRUCTION MATERIALS PROCESSING OPERATION

| LAND USE | SETBACK |
|---|---|
| PUBLIC ROADS | 500 feet of centerline, except for transport of minerals |
| NATURAL WATER BODY | 500 feet; no activity within the water body bed |
| FEDERALLY-DESIGNATED WILDERNESS, PARKS OR RECREATION AREAS | 1,000 feet, unless materials are used onsite, or property owner consents |
| DEDICATED OPEN SPACE OR PUBLIC PARK | 1,000 feet |
| RESIDENTIAL STRUCTURES | 500 feet of residential structure legally permitted when mining application filed, or with consent of residence owner |
| PUBLIC AND CIVIC buildings | 1,000 feet |
| PUBLIC CEMETERY | 30 feet |
| ADJACENT PROPERTY, RIGHT-OF-WAY OR IRRIGATION DITCH | 30 feet |
| SENSITIVE WILDLIFE HABITAT | As required by Section 11-106: *Protection of Wildlife Habitat Areas* |

**m.** **PUBLIC ROADS.** Mining operations shall be conducted no closer than 500 feet of the centerline of a public road, except that the motorized transportation of minerals may occur within that setback. Any project that is classified as a Special Development Project as defined in the *Gunnison County Special Development Projects Regulations* may be subject to either more, or less restrictive requirements, based upon the impacts of the proposed land use.

**n.** **WATER BODY.** Mining operations shall be conducted no closer than 500 feet of any water body. No mining operation shall take place in the bed of any water body.

    1. **WAIVER ALLOWED.** A waiver from this setback may be recommended by the recommending body and approved by the decision-making body as part of the overall Land Use Change Permit review process, requiring no separate submittal of an application or form, and no separate review process. The process for    requesting and granting a waiver shall include:

BLM_0053373

**(a.) SUBMITTAL OF A LETTER OF REQUEST.** The applicant may submit a letter requesting the waiver from this Section, stating the reason for the request, and factual documentation that supports a position that approval of the waiver will not result in degradation of water quality of the water body present at the time of submittal of the Land Use Change Permit application.

**(b.) DETERMINATION OF APPROPRIATENESS BY THE RECOMMENDING BODY**. The recommending body shall consider the request, and based on a finding that the submitted documentation is adequate to support the request, recommend denial or approval of the request. Approval of the waiver shall include the following conditions:

**(1.) BEST MANAGEMENT PRACTICES UTILIZED.** Best management practices as described in Section 11-102: *Voluntary Best Management Practices* shall be incorporated into the plan for location and operation of the mining operation in the location allowed by the waiver.

**(2.) MONITORING PLAN REQUIRED.** A monitoring plan, utilizing wells, instream devices, or other standard measuring devices acceptable to the Colorado Department of Public Health and Environment or the U.S. Geological Survey, shall be submitted to the County as part of the Final Plan for the operation. Guarantee of its use, and provision of related measures to insure immediate cessation of the operation upon indication of degradation, and for reclamation of the water body, shall be included within the Development Improvement Agreement for the project.

**(3.) NO DEGRADATION OF EXISTING WATER QUALITY**. Language shall be included within the approval of a Final Plan that indication of degradation of the quality of water within the affected water body(ies) shall result in revocation or suspension of the permit, pursuant to Article 16: *Enforcement.*

**o. FEDERALLY DESIGNATED WILDERNESS AREAS, NATIONAL PARKS OR RECREATION AREAS, PUBLIC PARKS, FEDERAL LANDS CAMPGROUNDS.** Mining operations shall be set back at least 1,000 feet from any federally designated wilderness area, national recreation area, national park, public park, or from any campground located on federal lands, to ensure that there is no significant net adverse effect to the purposes for which the dedication was made. These setbacks shall not apply when the materials are to be used only on-site, and the impacted owner consents to the application by notarized written form.

**p. FEDERALLY, STATE, OR LOCALLY DEDICATED OPEN SPACE OR CONSERVATION AREAS**. Mining operations shall be set back a sufficient distance from a permanently dedicated federal, state, or local open space or conservation area to assure that there is no significant net adverse effect to the purposes for which the open space was dedicated. However, these setbacks shall not apply if the materials are to be used on-site only, and the owner of the dedicated open space consents by notarized written form to the application.

**q. RESIDENTIAL STRUCTURES**. Mining operations shall be conducted no closer than 500 feet of a residential structure, legally permitted at the time the application is filed, unless the recorded consent of the owner of the residential structure has been obtained in advance of submittal of the application for a Land Use Change Permit, and the consent is recorded in the Office of the Gunnison County Clerk and Recorder after final approval, and is binding upon future owners.

**r. PUBLIC AND CIVIC BUILDINGS**. No closer than 1,000 feet of any public or civic building including churches, schools, and community buildings.

**s. CEMETERY**. No closer than 300 feet of any public cemetery.

**t. ADJACENT PROPERTY, IRRIGATION DITCH OR ROAD RIGHT OF WAY**. No excavation, deposit of overburden, or stockpiling or other mining operations shall be permitted within 100 feet of the boundary of adjacent property, irrigation ditch or right of way. If natural vegetative screening is provided, the setback shall be 30 feet.

**2. WAIVER TO REDUCE SETBACK REQUIREMENTS**. A waiver from these requirements may be recommended by the recommending body and approved by the decision-making body may reduce overall Land Use Change Permit review process, subject to the following findings by the decision-making body,

BLM_0053374

requiring no separate submittal of an application or form, and no separate review process. The process for requesting and granting a waiver shall include:

**a.** **SUBMITTAL OF A LETTER OF REQUEST**. The applicant may submit a letter requesting the waiver from this Section, stating the reason for the request, and factual documentation that supports a position that approval of the waiver will not result in degradation of water quality of the water body present at the time of submittal of the Land Use Change Permit application.

**b.** **DETERMINATION OF APPROPRIATENESS BY THE RECOMMENDING BODY**. The recommending body shall consider the request, and based on a finding that the submitted documentation is adequate to support the request, shall recommend denial or approval of the request. Approval of the waiver shall include the following conditions:

    **1.** **NO SIGNIFICANT NET ADVERSE IMPACT**. There is no significant net adverse impact that results from the reduction.

    **2.** **PROJECT IMPACT IS LIMITED OR MITIGATION OF IMPACT IS SUFFICIENT**. The impact of the proposed use has been identified and analyzed, sufficient to determine that its impacts are insubstantial and therefore a reduction is warranted, or the proposed mitigation of the setback-related impacts have been effectively mitigated. Included in this finding shall be a description, or reference to, the setback-related impacts and their mitigation.

**3.** **NOTICE TO AFFECTED LAND OWNERS CONCERNING LAND USE CHANGES INVOLVING MINERAL EXPLORATION OR EXTRACTION OR CONSTRUCTION MATERIALS PROCESSING.** When a land use change involving mineral exploration or extraction or construction materials processing has been requested, Gunnison County shall make reasonable efforts to provide a written advisory notice of the application to all landowners within the required setbacks. Applicants for other land use changes within 1000 feet of an approved mineral exploration or extraction activity or construction materials processing operation shall be apprise of those existing uses. Failure of Gunnison County to provide such notice shall not affect the processing or validity of any land use change process or permit or be the basis of any liability whatsoever of Gunnison County.

## SECTION 9-405: GENERAL DEVELOPMENT STANDARDS FOR MINING OPERATIONS

The following standards in addition to the other standards of this *Resolution* shall be applied in reviewing all proposed mining operations:

**A.** **ACCESS AND TRANSPORTATION PLAN**. If there are conflicts between this Section and other sections of this *Resolution*, this Section shall apply. All applications shall comply with all applicable requirements of Section 12-103: *Road System*, including an Access and Transportation Plan pursuant to Section 9-403: C. 10: *Access and Transportation Plan*, and shall be required to comply with the following:

    **1.** **ROAD DAMAGE AND MAINTENANCE**.

        **a.** **VEHICLE WEIGHT**. The weight of trucks shall not exceed federal, state or local government imposed road or bridge weight capacity on approved haulage routes.

        **b.** **APPLICANT BEARS COST**. The applicant shall bear the proportionate cost of all road and bridge improvements, repairs, and maintenance necessitated by the proposed mining activity.

        **c.** **SEASONAL TRAFFIC LIMITATION**. Truck traffic may be limited on public roads during seasons when heavy vehicle use, weather conditions or water saturation may result in significant damage.

    **2.** **ROUTING**. Designation of construction and haul routes for a specific mining operation application shall comply with the following:

        **a.** **AVOIDANCE OF DEVELOPED AREAS**. Truck haulage and traffic routes shall be designed to the maximum extent feasible to avoid residential areas, commercial areas, environmentally and visually sensitive areas, schools and other civic buildings, municipalities and already congested locations. Alternative routes shall be identified.

            **1.** **REVIEW BY AFFECTED AGENCY OR ASSOCIATION**. When a proposed route includes streets within a municipality or developed residential area, the applicable municipal government or property owners' association shall be included as a review agency during the review process.

BLM_0053375

2. **CONSIDERATION OF PUBLIC BENEFIT**. When a proposed haul route is located near a developed area. The County shall determine the public benefit to be gained by a shorter haul route with decreased haulage trips against other potential impacts to residences and other developed areas.

b. **TIMING OF HAUL TRAFFIC**. Timing of truck traffic may be controlled to prevent congestion or adverse noise impacts or safety risks.

3. **MITIGATION TO PROVIDE DUST CONTROL AND EFFECTS OF LOAD LOSS.** Applicant shall be held reasonably responsible to prevent loss of loads and fugitive dust emissions during transit by using mitigation methods described in required dust control plan, such as using tarps and tight tailgates, and shall be responsible to ensure that haul routes are maintained reasonably free of dust from the operation as required by the applicable state or federal agency. Measures may include EPA approved dust suppressants, watering, oiling, paving. These mitigations shall not be required of haulers using one-ton or smaller pick-up trucks.

a. **AIR QUALITY MONITORING**. Operation shall provide a program for initial air quality measurements and an ongoing monitoring program, including monitoring of dust from equipment and stockpiles, to ensure that during operation dust leaving the subject property does not substantially exceed initial air quality levels.

4. **TRUCK AND CRUSHER NOISE.** The County may impose measures to control on-site noise generated by truck traffic and crushers used by the operation including restrictions on the use of jake brakes on- or off-site except in emergencies, banging of tailgates or use of horns on site, and regulation of truck speeds. Such measures shall be imposed pursuant to noise standards indicated in Table 6: *Maximum Permissible Noise Levels for Mining Operations* but shall not contradict state or federal regulations.

5. **POST-OPERATIONAL ACCESS TO MINE SITE**. Access to the mine site and processing site during post-mining operations shall be restricted by fencing or other means if there are impoundments retaining water contaminated with harmful or hazardous materials or hazardous conditions remain present on the site.

B. **ROCK CRUSHER, ASPHALT PLANT, CEMENT BATCH PLANT**. No rock crusher, asphalt plant, or cement batch plant shall be used unless specifically identified in the application and approved as part of the Land Use Change Permit.

C. **IMPACTS ON ENVIRONMENTAL AND CULTURAL RESOURCES.**

1. **WATER.** All operations shall comply with the standards of Section 11-107: *Protection of Water Quality*, and shall comply with the following:

a. **WATER QUALITY.** The quality of surface or ground water discharged from the mine or mining operation shall meet the standards set by the U.S. Environmental Protection Agency and the Colorado Department of Public Health and Environment, Water Quality Control Commission.

b. **WATER QUANTITY.** The operator shall insure that the mining operations shall not cause injury to existing water rights decreed by the Colorado Division of Water Resources.

c. **HYDROLOGIC BALANCE**. The operator shall ensure that mining operations avoid disturbances to the prevailing hydrologic balance of the mining site and surrounding areas to the maximum extent feasible. Stream flows shall not be significantly increased or decreased because of the proposed mining operations.

d. **AUGMENTATION PLAN**. Compliance with any augmentation plan approved for the project by the Colorado Division of Water Resources. Replacement water shall be subject to the applicable requirements of the Colorado Division of Water Resources, but not necessarily limited to augmentation of evaporative loss.

e. **WELLS.** To the extent permission can be obtained by the applicant as a result of a good faith effort, wells both on- and off-site shall be measured and logged for quantity and quality of water by the applicant before approval to establish a baseline from which the impacts of the mining operation can be measured. The operator shall ensure that the quantity and quality of the water in such wells reasonably anticipated to be affected by the operation shall not be adversely impacted by the mine or mining operations.

f. **RECYCLING**. To conserve water supplies, water used in mining operations shall be recycled to the maximum extent feasible.

BLM_0053376

    **g.** **HAZARDOUS MATERIALS**. All fuel, chemicals, oil, grease, and blasting agents shall be stored, used and maintained in such a manner as to prevent accidental discharge into any surface or ground water, and, at a minimum, shall comply with the requirements of the EPA.

**2.** **AVOIDANCE OF SENSITIVE AREAS.** Mining shall be prohibited in sensitive areas.

**3.** **AIR QUALITY**. All mining operations shall comply with the Colorado Department of Health Air Quality Control Commission's Regulation 2 and all other state and federal regulations controlling dust and odor.

    **a.** **MONITORING.** To ensure that air quality is fully monitored, in addition to monitoring requirements imposed by the Colorado Department of Public Health and Environment, and based on site-specific conditions, the County may impose reasonable additional requirements as a condition of approval.

    **b.** **ODOR AND DUST CONTROL.** Odor and dust from on- and off-site activities, including dust from truck traffic, stockpiles, and processing, shall be mitigated to the greatest extent feasible. Dust mitigation measures shall be employed, including paving, treating of road surfaces, cleaning of vehicles, covering of truck loads, and revegetation of disturbed areas.

**4.** **SIGNIFICANT CULTURAL, HISTORICAL AND ARCHEOLOGICAL RESOURCES**.

    **a.** **RESOURCES TO BE PRESERVED TO MAXIMUM EXTENT FEASIBLE.** To the maximum extent feasible, significant cultural, historical and archeological resources identified on the site shall be maintained and preserved. Where preservation is not feasible, adequate opportunity shall be provided to the state, county, or other appropriate agencies to document and salvage the resources.

    **b.** **RESOURCES IDENTIFIED DURING OPERATIONS**. Any cultural, historical or archeological resource identified or discovered during the mining operation shall be expeditiously and properly reported to the appropriate agencies, investigated, and preserved to the maximum extent feasible as provided above. Any County permit deadlines shall be extended to compensate for lost operating time due to recovery efforts.

**D.** **MINE WASTES AND HAZARDOUS MATERIALS**.

**1.** **CYANIDE HEAP LEACHING PROHIBITED**. Open mining for gold and silver, when ore processing methods that utilize cyanide to heap leach the gold and silver from ore, is prohibited.

**2.** **MINE WASTE PILES**. Mine waste piles or impoundments shall be located to the maximum extent feasible to prevent surface water runoff from entering the mines, waste piles or other structures. Any structures to be established shall divert surface water runoff from mine waste piles or impoundments containing water that has been contaminated during mining operations. Seepage of leachate from mine wastes into ground water shall be prevented with liners or other specific technologies or siting and design measures as determined in the review process.

**3.** **HAZARDOUS WASTE TREATMENT.** Mine wastes that may retain hazardous chemical or heavy metal residues shall be detoxified to the greatest extent feasible or disposed of pursuant to applicable state or federal regulations. For purposes of this Section, "detoxified" shall mean that wastes are not hazardous as defined by local, state, and federal regulations, stabilized or treated such that potential for groundwater contamination cannot occur, and capable of supporting natural vegetation and animal life. Hazardous mine wastes shall not be used for backfilling.

**4.** **NON-HAZARDOUS WASTE TREATMENT.** Non-hazardous mine wastes shall be treated, stored, disposed of in accordance with local, state, and federal requirements and shall be covered and graded to allow surface drainage and ensure long-term stability. Non-hazardous waste by-products may be used on-site as backfill.

**5.** **HAZARDOUS MATERIALS**. If the applicant proposes to use hazardous materials or a chemical mining process, the applicant must demonstrate that the use of such materials or chemical mining process is essential and will not have an adverse impact upon the public health, safety, or welfare, or the environment. To the maximum extent feasible, transportation of such materials shall be avoided.

**E.** **VISUAL IMPACTS**. All mining operations shall comply with the standards of Section 11-108: *Standards for Development on Ridgelines*, and shall also comply with the following:

**1.** **MITIGATION.** Mining shall mitigate visual impacts as mitigation priorities are defined in the definition of "mitigation," in Article 2: *Definitions* of this *Resolution*. Potential adverse visual impacts of the mining operation shall be avoided primarily or minimized secondarily to the maximum extent feasible by:

BLM_0053377

a. **MINIMIZE DISTURBED AREA**. Minimizing the total area of disturbance;

b. **MINIMIZE OFF-SITE IMPACT**. Minimizing the view from off-site of the disturbance;

c. **PHASING.** Phasing the disturbance;

d. **EXPEDITING RECLAMATION**. Expediting reclamation.

e. **SCREENING AND VISIBILITY**. Natural topography, preservation of existing vegetation, berms, landscaping, and other buffers shall be reasonably used to screen mining operations and stockpiles from off site visibility. The visibility of highwalls, equipment, and mining faces shall be reduced through backfilling, acid-etching, painting, or other appropriate techniques.

f. **ROADS**. Access roads shall be constructed and sited in ways that minimize potential visual impacts from off-site.

g. **BLASTING.** Blasting shall be conducted pursuant to this Division and the blasting explosive license as filed with the Gunnison County Sheriff's Office or other applicable agency and issued to the applicant or to the contractor who will be conducting blasting activity.

**F. GENERAL OPERATIONS**.

1. **COMPLIANCE WITH MSHA**. At a minimum, mining operations shall comply with the current requirements of the U.S. Mine Safety Health Administration (MSHA). The following shall also apply; when there is a question of whether the MSHA or Gunnison County requirements apply, the more restrictive shall prevail.

2. **HOURS OF OPERATION**. Hours of operation normally shall be no longer than 6:00 a.m. to 7:00 p.m.; the County may approve extended hours for a specific number of days per year or season for a specific operation or its component, only upon a finding that there will be no significant net adverse impacts on human activity, surrounding properties or the community in general. The operator shall keep current written logs of the days and hours of operation identifying by components the operations conducted. Such logs shall be available to County personnel during normal hours of operation for inspection and copying.

   a. **TEMPORARY OPERATIONS OUTSIDE THE APPROVED HOURS OF OPERATIONS.** Operations necessary for the emergency conduct of repair of equipment, preservation of public health, safety and welfare, or response to unique and unexpected demands on the operation may be permitted upon notification by telephone, e-mail letter or fax to the County Manager's Office.

3. **PHASING OF MINING OPERATIONS**. The County may require phasing of mining projects and impose limitations on the duration of such phases to reduce the potential adverse impacts of mining operations.

4. **FIRE PROTECTION**. All mining operations shall comply with Section 11-105: *Development in Areas Subject to Wildfire Hazards,* and Section 12-107: *Fire Protection.* Water supply, fire fighting machinery, trained personnel, and a fire suppression plan may be required for fire suppression purposes adequate to meet safety requirements as specified by the applicable fire protection district and approved by Gunnison County.

5. **FENCING**. All mining operations shall comply with Section 11-106: F.8.: *Fences* and Section 11-109: F. *Fences*, and shall also comply with the following:

   a. **SAFETY**. Based on the location, fencing may be required to be installed around the site to prevent access to potentially hazardous or unsafe areas by non-employees, livestock, and wildlife. Areas to be fenced include shafts, mine entrances, stockpile areas, roads, detention and retention impoundments, steep slopes, and active mining areas.

   b. **VISIBILITY**. When the operation is adjacent to a residential or commercial land use, fencing, buffering or screening may be required to minimize visibility of the mining operation.

6. **NOISE.** The following shall apply to noise generation:

   a. **NOISE MITIGATION MEASURES**. All operations shall reduce noise impacts from the site to the maximum extent feasible. Noise mitigation measures may include restrictions on hours of operation, enclosure of equipment and operations, buffering and screening, limitations on hours of truck traffic, and siting of operations away from sensitive uses and activities including hospitals, schools, and residential areas.

BLM_0053378

b. **MONITORING**. Before mining operations begin, the applicant and County shall measure existing noise levels on the site and at locations both on and off-site that may be affected by operations. A program for periodic noise monitoring shall also be included in any noise mitigation plan.

c. **MAXIMUM PERMISSIBLE NOISE LEVELS**. Under normal conditions noise from, and attributed to (as indicated by standard decibel measurement), mining operations at the boundary of any impacted property that is nearest the operation shall not exceed the levels indicated in Table 6: *Maximum Permissible Noise Levels for Mining Operations*. If noise levels of a use existing as of the effective date of this *Resolution* exceed these levels, the mining operation for which a Land Use Change Permit is being reviewed may operate at the existing higher level.

1. **WARNING DEVICES EXEMPTED**. Devices required by MSHA, or the U.S. Department of Labor, are exempt from this standard.

2. **SAGE GROUSE BREEDING AREA NOISE LIMITS**. In addition to the above requirements, all mining operations shall avoid disturbance of sage grouse breeding areas that may impair the acoustic component of the breeding display within one mile of known lek sites between the dates of March 20 and May 15 and between the hours of 4:30 a.m. and 8:30 a.m.

TABLE 6: MAXIMUM PERMISSIBLE NOISE LEVELS FOR MINING OPERATIONS

| IMPACTED LAND USE | ALLOWABLE DECIBEL LEVELS BY TIME OF DAY | |
|---|---|---|
| | 6:00 A.M. TO 7:00 P.M. | 7:00 P.M. TO 6 A.M. |
| NATIONAL PARKS OR RECREATION AREAS, PUBLIC PARKS, FEDERAL LANDS CAMPGROUNDS, AND FEDERALLY, STATE, OR LOCALLY DEDICATED OPEN SPACE OR CONSERVATION AREAS. | 50 db (A)* | 45 db (A)* |
| RESIDENTIAL | 50 db (A)* | 40 db (A)* |
| COMMERCIAL | 60 db (A)* | 55 db (A)* |
| INDUSTRIAL | 80 db (A)* | 75 db (A)* |
| WILDERNESS AREAS | 40 db (A)* | 40 db (A)* |

*db (A): Decibels measured on the "A" scale of a standard sound level meter having characteristics defined by the American National Standards Institute

**G. POST-OPERATIONAL LAND USE**. Once completed, phases and the entire site of the mining operation shall meet the following standards:

1. **STATE AND FEDERAL RECLAMATION REQUIREMENTS**. The applicant shall comply with all state and federal site reclamation requirements.

2. **COUNTY PRIORITIES.** In addition to state and federal regulations, it shall be the first priority for a project to restore the site before the mining operation begins, secondly to rehabilitate to the maximum extent feasible, and thirdly, to reclaim the site.

3. **RECLAMATION TO BE COMPLETED PURSUANT TO MLRD RECLAMATION PLAN.** Reclamation shall be completed as required by the Reclamation Plan approved by the MLRD, including, as applicable, any phases within the project.

4. **REVEGETATION.** There shall be a revegetation plan that meets the requirements of Section 13-115: *Reclamation and Noxious Weed Control*.

a. **THREE YEAR MAINTENANCE REQUIRED**. After revegetation of an area, the vegetation must be maintained by the applicant for a minimum of three years.

BLM_0053379

## SECTION 9-406: ADDITIONAL FINANCIAL SECURITY

In addition to the financial security required by Article 16: *Enforcement*, the County shall require adequate financial security to ensure that any off-site damage caused by blasting is remedied.

## SECTION 9-407: NO EXERCISE OF PRE-EMPTED AUTHORITY REGARDING RECLAMATION

Nothing in this Division or in Article 16: *Enforcement* is or shall be construed to be a requirement of reclamation, or financial security for reclamation, different than that established by the Colorado Mined Land Reclamation Division.

BLM_0053380

# DIVISION 9-500:
# MISCELLANEOUS USES AND ACTIVITIES

## SECTION 9-501: SPECIAL EVENTS

**A.   PURPOSE.** This Section provides for the regulation and permitting of temporary special events, to ensure the orderly, compatible and safe use of property by requiring adequate provision of parking, sanitary facilities, and structural strength of facilities, utilities and safety services.

**B.   PERMIT REQUIRED.** Operation of a special event shall require a Special Event Permit, which may be obtained from the Planning Department.

**C.   EXEMPTIONS.** The following are exempted from the requirements of this Section:

    **1.   SITE THAT HAS RECEIVED LAND USE CHANGE PERMIT.** If an event is to be conducted in a permanent facility, and/or on a site for which a Land Use Change Permit has been granted specifically allowing the special events activity, and the operation of the event complies with the conditions of the permit approval, no separate Special Event Permit is required.

    **2.   ACTIVITY CONDUCTED AT A PRIVATE RESIDENCE.** An event conducted at a private residence, that is reasonably determined to be a private event, including graduation parties, holiday family gatherings, and picnics shall not require a Special Event Permit.

    **3.   WEDDINGS AND FUNERALS.** Weddings and funerals not to exceed 24 hours duration shall not require a Special Event Permit.

**D.   DURATION OF PERMIT.** A Special Event Permit shall be valid for the duration of the function, but in no case shall the permit be valid for more than 10 days unless specifically approved in advance of the event by the Board.

    **1.   PERMIT EXTENSION.** An applicant may request that the duration of the permit be extended, by submitting a letter of request to the Planning Department, who shall forward a copy of the request, and the original application and Department approval to the Board. The request shall be placed on the Board's next available agenda.

    **2.   BOARD ACTION.** The Board shall consider the request in light of potential impacts of the extended activity to County infrastructure, emergency service providers, and to adjacent lands, and shall either approve, approve with conditions, or deny the request.

    **3.   IMMEDIATE CESSATION ALLOWED TO PROTECT PUBLIC HEALTH, SAFETY AND WELFARE.** The County shall have the right to require immediate cessation of the temporary use without prior hearing if the County determines it is appropriate for the protection of public health, safety and welfare. Such right may be exercised by the Board, the County Manager, Assistant County Manager, County Attorney or other designee of the Board.

**E.   FEES.** The cost of a Special Event Permit shall be as delineated in a schedule of fees charged for permits issued by the Planning Department, and as adopted, and amended from time to time by the Board. Additional compensation may be required from the applicant to cover additional costs, if the operation of the event causes the County or another public service provider to incur expenditures for personnel, materials or other needs.

**F.   APPLICANT'S CONTACT WITH SERVICE PROVIDERS.** Before submitting the application, the applicant is encouraged to contact each of the potentially affected service providers referred to in Section 9-501: H. *Standards of Operation*, to determine the services that may required for the applicant's special event.

**G.   APPLICATION.** The applicant shall complete and submit an application, which, at a minimum, shall include the following:

    **1.   APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and stating the same information for the agent.

    **2.   PROPERTY OWNER.** Name of the owner of the property; if different than the applicant, a notarized letter from the owner consenting to the application, must be submitted.

BLM_0053381

3. **PROPERTY LOCATION**. The legal description (referencing lot and block or tract numbers, homesteads, metes and bounds), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property.

4. **PRESENT LAND USE.** Identify present land uses, locations, and sizes of structures that exist on the property.

5. **IDENTIFICATION OF PREVIOUSLY-APPROVED USES**. If Land Use Change Permits or subdivision approvals were previously issued by the County on the parcel on which the special event is proposed, they shall be identified.

6. **CHARACTERISTICS AND CURRENT CONDITION OF THE LAND.** Identification of physical characteristics, natural characteristics and current conditions of the parcel on which the special event is proposed to occur, including streams, irrigation ditches, ponds, soils, roads, vegetation, geologic hazards. Indications if trees or other vegetation, have been removed, or changes caused either by weather-related or human activity.

7. **LIST OF ADJACENT LANDOWNERS**. As applicable, a listing of all landowners and land uses that are adjacent to the boundaries of the entire parcel on which the project is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the property except for the existence of the roadway. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel shall be included in the listing. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

8. **TYPE OF EVENT**. A description of the type of proposed event.

9. **ESTIMATED NUMBER OF PEOPLE ATTENDING**. The estimated number of participants.

10. **SALES OF FOOD AND BEVERAGES.** If food and or beverages, including liquor, will be sold or given to participants, food service licenses and liquor licenses shall be obtained as required by the Colorado Department of Public Health and Environment, Consumer Protection Division, and by the Office of the Gunnison County Clerk and Recorder, respectively, and a copy of the licenses, or of the license applications, shall be submitted with the Special Event Permit application.

11. **TEMPORARY STRUCTURES.** A list of temporary structures, including camping shelters and vendor stands that are anticipated. If there are to be vendors as part of the event, a copy shall be submitted of each individual vendor's food service license, liquor license, business license, or of the "blanket license" covering all such activities as may be required by other applicable County or state agencies.

12. **AREA PLANNED FOR PARKED VEHICLES**. Location of the area where parking will be located, and the estimated number of participant vehicles.

13. **DURATION OF EVENT**. Identification of hours, and days during which the proposed event is to occur. If applicable, identification of beginning and ending dates.

14. **HOURS WHEN EVENT WILL TAKE PLACE**. A listing of the hours of the day the proposed event is to occur. If planned to include activities during nighttime hours.

15. **EXTERIOR LIGHTING**. An identification of proposed lighting fixtures and their locations, pursuant to the requirements of Section 13-114: *Exterior Lighting*.

16. **UTILITIES.** Information about utilities shall be addressed as follows:

    a. **SOURCE OF POTABLE WATER**. If potable water is required, the source for it shall be identified.

    b. **SEWAGE DISPOSAL FACILITIES.** The details of sewage disposal and toilet facilities shall be provided.

    c. **MINIMUM FACILITIES.** A minimum of one toilet facility shall be provided to serve an anticipated attendance of each 25 people. Public or common use toilets shall comply with the federal Americans with Disabilities Act accessibility guidelines, which require that five percent of the total number, no less than one toilet facility per each cluster of toilet facilities, must be accessible to guests with disabilities.

    d. **TRASH.** Identification of how trash generated by the event will be confined, collected, and disposed of. The applicant should contact the Gunnison County Public Works Department to notify them of the

BLM_0053382

proposed event, and the projected amount of trash, and the proposed means and timing of deposit at the County Landfill.

**e. EMERGENCY SERVICES.** Identification of how emergency services will be provided based on the projected number of participants, the location of the event, access to the event, and the nature of the event.

**f. PET AND OTHER DOMESTIC ANIMAL CONTROL.** A description of how pets or other domestic animals will be confined to the parcel on which the proposed event is to occur, if applicable.

**g. FEES.** To compensate the County for the cost of reviewing and processing applications for Land Use Change Permits, each applicant shall pay the Final Plan fee as shown in a schedule of fees charged for permits issued by the Planning Department, adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

**H. PLANNING DEPARTMENT REVIEW.** The Planning Department will review the application for completeness, determine if additional information is needed, or if specific agencies shall be contacted to review the application.

**I. STANDARDS OF OPERATION.** An applicant for a Special Event Permit shall demonstrate that the event will operate so that the following concerns are satisfactorily addressed, and that the event will comply with all applicable County and State regulations. Requirements shall be based on the extent and duration of the proposed event:

**1. SERVICES TO PROTECT PUBLIC SAFETY AND TO ADDRESS EMERGENCIES.** First aid and other emergency services shall be provided. In consultation with the Gunnison County Sheriff, the applicable fire protection district, and the applicable Emergency Services agency, the applicant may be required to develop and submit a plan for traffic circulation and control, including requirements for parking and for emergency service vehicle access before, during and after the event. The adequacy of the plan shall be determined by the consulted agencies.

**2. SHERIFF'S DETERMINATION OF NEED FOR PERSONNEL.** The Sheriff's Department shall have the authority to estimate the anticipated number of persons in attendance, and determine if law enforcement personnel will be needed to regulate traffic associated with the event. The Sheriff shall have the authority to require that law enforcement be provided at the applicant's expense to monitor crowd control during the event and shall provide an estimated cost figure to the Planning Department. The estimated cost of such traffic control or other activity shall be paid by the applicant at the time the permit is issued and shall not be refundable in whole or in part.

**3. PARKING PLAN.** Parking space and signs for parking shall adequately address anticipated parking demands, pursuant to Section 13-110: *Off-Road Parking and Loading* and the minimum distances listed in Appendix Table 3: *Off-Road Parking Requirements.* In no case shall parking be allowed along any shoulder of any road, and vehicles shall not be parked in any manner that would create a traffic hazard as determined either by the Sheriff's Department or the Public Works Department.

**4. TEMPORARY STRUCTURES SHALL MEET FIRE PROTECTION DISTRICT REQUIREMENTS.** Use of tents or other camping shelters or other temporary structures shall meet the requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards. Location of temporary structures shall be required to meet setback requirements, pursuant to Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way.*

**5. ELECTRICAL HOOKUPS.** Any electrical hookups shall comply with the requirements of the applicable municipality or rural electric association provider.

**6. FOOD AND LIQUOR.** Food service licenses and liquor licenses shall be obtained as required by the Colorado Department of Public Health and Environment, Consumer Protection Division, and by the Office of the Gunnison County Clerk and Recorder, respectively.

**7. TOILET FACILITIES.** A minimum of one toilet facility shall be provided to serve an anticipated attendance of each 25 people.

**a. TOILETS SHALL BE ADA ACCESSIBLE.** Public or common use toilet facilities shall comply with the federal Americans with Disabilities Act accessibility guidelines, which require that five percent of the total number, no less than one toilet facility per each cluster of toilet facilities, must be accessible to guests with disabilities.

BLM_0053383

8. **TRASH DISPOSAL**. The applicant shall provide for the collection of trash and litter. All solid waste shall be deposited as required by the Gunnison County Public Works Department.

9. **CONTAINERS SHALL BE PROVIDED**. Separate containers shall be provided for the collection of recyclable materials.

10. **REMOVAL OF LITTER FROM THE PROPERTY**. All solid waste, litter and recyclable materials shall be removed from the site within 24 hours following the event.

11. **DAILY CLEANUP**. For multiple-day events, the grounds shall be maintained during each day of the event with no accumulations on- or offsite that would create a nuisance or pose a health hazard.

12. **CONSTRUCTION OF TEMPORARY SEATING**. All grandstands, bleachers, scaffolding and platforms shall be constructed pursuant to requirements of the Gunnison County Building Office in the Planning Department. When determined necessary by the Building Inspector, plans showing structural details shall be submitted for review before construction begins.

13. **AMUSEMENT RIDES**. All mechanical equipment associated with amusement rides shall conform to the applicable requirements of U.S. Consumer Product Safety Commission. All applicable licenses or certifications shall be provided to the Planning Department as a condition of permit issuance. The County reserves the right to require an inspection by a qualified professional engineer licensed in the State of Colorado at the applicant's expense in addition to any inspections required by the Safety Commission.

14. **NOISE THAT BECOMES A NUISANCE IS PROHIBITED.** Unreasonably loud and disturbing noise that the County reasonably determines to be a public or private nuisance is prohibited.

15. **HOURS OF OPERATION**. Hours during which the normal activity of a special event may take place shall be between 7 a.m. and 11 p:m: unless otherwise specified in the Special Event Permit.

16. **CONFINEMENT OF ANIMALS**. All domestic and exotic animals shall be confined to the parcel on which the special event is permitted.

17. **LOCATION.** The special event shall only be permitted to occur in a location where the County reasonably determines it will not be detrimental to the public health, safety and welfare, improvements of the surrounding area or to the environment, including impacts on air and water resources, agricultural operations, wildlife habitats, and visual resources.

J. **COORDINATION WITH MUNICIPALITIES**. When the application is for a special event to be located within a municipal Three Mile Plan area, the County shall consider how the application has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the Three Mile Plan area. Where there is a conflict between the objectives or policies of a Three Mile Plan or the intergovernmental agreement, and County standards, County standards shall apply.

K. **INSURANCE**. The applicant shall be required to demonstrate that a general liability insurance policy in an amount to be reasonably determined by the County Attorney will be in effect for the duration of the special event. The County, its officials, employees and agents, and owners of adjacent property as reasonably determined by the County shall be named as additional insured parties in the policy.

L. **INDEMNIFICATION AGREEMENT**. The applicant shall be required to submit a fully executed written agreement, acceptable to the County Attorney, to defend, indemnify and hold harmless Gunnison County, its officials, employees and agents, from and against all causes of action, claims and expenses, including reasonable attorneys' fees that might arise, indirectly or directly, because of the particular activity. This requirement is not, and shall not be construed to be, a waiver by Gunnison County of governmental immunity.

M. **CONDITIONS OF PERMIT APPROVAL.** In its approval, the County shall apply such conditions as it reasonably deems to be necessary to provide that the special event shall comply with the standards of operation and does not result in significant on-site or offsite impacts to lands, County infrastructure, or public health, safety and welfare, including the following:

1. **BOND AND CLEAN-UP DEPOSIT**. Provision for a bond and damage or clean-up deposit, or other financial guarantee to provide that the site is restored to its former condition and any damages are repaired.

2. **OPERATIONAL LIMITATIONS.** Operational limitations, including limits on the maximum daily attendance and the event's hours of operation, and limitations on exterior lighting, noise and parking.

BLM_0053384

# SECTION 9-502: TEMPORARY STRUCTURES

**A.  PURPOSE.** This Section provides for the regulation of temporary structures including a temporary residence or temporary construction office and the operation of a temporary vendor's stand not including a farm or ranch stand.

**B.  NO VESTING OF TEMPORARY STRUCTURES.** Approval of a temporary structure as allowed by this Section shall not constitute approval of a site-specific development plan entitled to statutory or other vested right.

**C.  TEMPORARY BUILDINGS NOT REQUIRING A PERMIT.** In conjunction with the issuance of a Building Permit or a Land Use Change Permit for a development site, the County may authorize an applicant to install one or more temporary buildings reasonably needed for the following and similar purposes. The temporary shelter shall not be placed for more than 18 months from the date of issuance of the Building Permit. One six-month extension may be permitted by the Planning Department, upon a demonstration of hardship.

    **1.  CONTRACTOR'S OFFICE.** A contractor's office located in a development that is under construction; or,

    **2.  TEMPORARY SHELTER.** A temporary shelter for the owner of the property, located on the same site as a residence that is under construction and has a valid Building Permit.

**D.  REMOVAL.** The applicant shall provide positive assurance that the temporary building will be removed by the time established in the Land Use Change Permit. The County may remove the temporary building at the applicant's expense if, at any time, the building is reasonably determined to be out of compliance with this *Resolution*. A deposit may be required from the applicant to defray the County's costs to remove a temporary building.

**E.  OUTDOOR VENDING REQUIRES PERMIT.** The sale of goods other than from a farm or ranch stand pursuant to Section 9-302: *Farm or Ranch Stand*, from an open stand, push cart, vehicle or an outdoor site, but not from a permanent building, is permitted as an accessory use. An applicant shall obtain an Outdoor Vending Permit from the Planning Department, and shall comply with the following requirements; the permit shall be issued for a period of 150 consecutive days for each one-year period.

    **1.  PURPOSE OF VENDING LIMITED TO FOOD AND BEVERAGES.** Outdoor vending shall provide no service or product other than the sale of food or beverages for immediate consumption. No food or drink may be sold except as allowed by the Colorado Department of Public Health and Environmental Consumer Protection Division.

    **2.  STANDARDS FOR OUTDOOR VENDING OPERATION.** An outdoor vending operation shall:

        **a.  HAVE OWNER'S PERMISSION.** Locate on property owned or leased by the vendor or at a location for which notarized written permission to operate the business has been obtained from the property owner. A copy of the permission shall be submitted to the Planning Department.

        **b.  NOT LOCATE IN ROADWAY OR RIGHT-OF-WAY.** Not locate within any road or highway right- of-way, driveway or aisleway, within 35 feet of a residential property boundary, within a required setback, or in any parking spaces. An outdoor vendor shall not obstruct pedestrian or vehicular traffic, or obstruct motorists' vision.

        **c.  ADVERTISING.** Any signs advertising an outdoor vending operation shall comply with Section 13-109: *Signs*.

        **d.  ADEQUATE PARKING.** If necessary because the vending requires parking of vehicles, and the proposed site has no existing parking, the applicant shall be responsible for providing an area of the site that complies with the requirements of Section 13-110: *Off-Road Parking and Loading* and the minimum distances listed in Appendix Table 3: *Off-Road Parking Requirements.* Customers shall be provided space to safely pull off the road and park without causing congestion or hazards either to themselves or to traffic. Parking spaces shall not be located so vehicles can back directly onto a public road other than an alley.

        **e.  TRASH CONTROL.** Where an outdoor vendor is distributing products that may result in trash, such as food in disposable containers, the outdoor vendor shall provide trash containers and make adequate provision for trash control and removal. The outdoor vending site shall be maintained by the vendor in a clean and sanitary condition.

        **f.  SEWAGE DISPOSAL.** Use of any facilities for sewage collection and gray water disposal shall comply with the *Gunnison County Individual Sewage Disposal System Regulations.*

BLM_0053385

g. **BUSINESS LICENSE**. The applicant shall secure any necessary licenses, and pay any fees required by the Gunnison County Officer of Clerk and Recorder to operate the business.

3. **FEES.** The fee for an Outdoor Vending Permit shall be as shown in a schedule of fees charged for permits issued by the Planning Department, and as adopted and amended from time to time by the Board.

## SECTION 9-503: SATELLITE DISH DEVICES

A. **LAND USE CHANGE PERMIT NOT REQUIRED.** No Land Use Change Permit is required for the following:

1. **SATELLITE DISH 36" OR SMALLER.** A satellite dish reception or transmission device that is 36 inches in diameter or equivalent size or smaller may be installed as an accessory use without a Land Use Change Permit.

2. **SATELLITE DISH LARGER THAN 36".** A satellite dish reception or transmission device that is in excess of 36 inches in diameter or equivalent size or smaller may be installed without a Land Use Change Permit as an accessory use, provided it complies with the following standards:

   a. **LOCATION.** The satellite dish device shall not be located in any required setback, in any public right-of-way, or on a roof; and

   b. **VISIBILITY.** The satellite dish device shall be located to minimize its visibility from neighbors and from public roads. When the antenna can only be located such that it is visible from neighbors or public roads, the County may reasonably require the satellite dish device to be screened with landscaping or fencing, or to be painted with colors that to the maximum extent feasible, camouflage its appearance.

## SECTION 9-504: ATTACHED WIRELESS TELECOMMUNICATIONS DEVICES

A. **LAND USE CHANGE PERMIT NOT REQUIRED**. A wireless telecommunications device that is attached to or mounted on a building or other structure may be installed as an accessory use without a Land Use Change Permit. The device shall be mounted to be as flush to the wall as technically feasible and shall not project above the wall on which it is mounted. It shall be painted to match the color and texture of the wall, building, or surrounding environment, using muted or subdued colors or earth tones. A design that masks or camouflages the device, so it blends with the surrounding environment, is required.

## SECTION 9-505: FREESTANDING WIRELESS TELECOMMUNICATION STRUCTURES

A. **LAND USE CHANGE PERMIT REQUIRED.** The construction and siting of a freestanding structure, building, pole, tower or antenna that provides wireless telecommunications services requires a Land Use Change Permit, and shall  meet these standards:

B. **GENERAL STANDARDS**. A freestanding structure, building, pole, tower, or antenna that provides wireless telecommunications services shall be subject to the following requirements:

1. **SAFETY SETBACK.** To ensure the safety of surrounding properties in the event of collapse, and to protect against the accumulation of snow and ice, it shall be set back from all property lines by one foot for every one foot of its height, and shall comply with the applicable setback requirements from Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way,* whichever is greater.

2. **DESIGN**. It shall be designed and sited to be compatible with the surroundings in terms of materials, roof form, scale, mass, color, texture and character. A design that masks or camouflages the structure, so it blends with the surrounding or built environment, is required to the maximum extent feasible.

3. **HEIGHT.** Towers and antennae shall be sited to minimize their height.

4. **BUFFERING**. In addition to any buffering required by Section 13-111: *Landscaping and Buffering*, landscaping and screening shall be required to achieve a total screening effect at the base of the structure and to screen any associated support buildings. Screening shall use trees (unless a source of water necessary for the survival of the trees is not available, in which case other vegetation appropriate for the site shall be installed) and may also secondarily use fences (wood, masonry, stucco, or similar opaque materials) or berms.

BLM_0053386

5. **EXTERIOR LIGHTING.** Security or other lighting shall feature down-directional, sharp cutoff luminaires that comply with the requirements of Section 13-114: *Exterior Lighting.* Safety lighting of telecommunication structures that is required by the Federal Aviation Administration shall be exempt from this standard.

6. **ACCESS ROADS**. Access roads to the structure shall be minimal and capable of supporting equipment necessary to maintain the structure.

7. **DESIGN SAFETY**. The structure's design shall be certified by a qualified professional structural engineer as structurally sound and presenting no risk to public safety. When applicable, the applicant shall also demonstrate that the location, height, and operation of the structure have been determined not to be an aviation hazard by the Federal Aviation Administration.

8. **UTILITIES SHALL BE LOCATED UNDERGROUND**. To the maximum extent feasible, all utilities shall be installed underground.

## SECTION 9-506: CHILD CARE CENTER

A. **LAND USE CHANGE PERMIT REQUIRED**. The operation of a child care center requires a Land Use Change Permit and in addition to complying with all applicable requirements of this *Resolution*, shall comply with all applicable requirements of Colorado law, the Colorado Department of Human Services, and the Gunnison County Department of Human Services, and shall comply with the requirements of this Section.

B. **COMPLIANCE WITH APPLICABLE BUILDING CODE, ADOPTED AND AMENDED BY GUNNISON COUNTY.** Construction and operation of a child care center shall comply with the applicable requirements of the applicable building code, adopted and amended by Gunnison County.

C. **COMPLIANCE WITH FIRE PROTECTION DISTRICT REQUIREMENTS**. All structures used as part of a child care center shall comply with requirements of the applicable fire protection district. All such uses, whether pre-existing  this *Resolution*, or approved by new Land Use Change Permits after the effective date of this *Resolution*, shall comply with the standards of Section 12-107: *Fire Protection.*

D. **ADEQUATE PARKING.** A child care center shall provide one off-road parking space per non-resident employee. These spaces shall be in addition to any other parking required for the property (including if the center is operated within a residence), pursuant to Section 13-110: *Off-Road Parking and Loading* and the minimum distances listed in Appendix Table 3: *Off-Road Parking Requirements.*

E. **DROP-OFF/PICK-UP AREA**. A child care center shall have one designated on- or off-road drop-off/pick-up space for every six children. The space shall:

   1. **AVAILABLE DURING OPERATING HOURS**. Be available during operating hours to provide for the loading and unloading of children; and

   2. **LOCATED ON SAME SIDE OF ROAD**. Be located on the same side of the road as and adjacent to the child care facility.

F. **OUTDOOR PLAYGROUND.** A child care center shall have an on-site outdoor play area that meets the State standard for facilities of its size, as specified in Minimum Rules and Regulations for Child Care Centers, issued by the Colorado Department of Human Services. The outdoor play area shall be fenced or screened to prevent children from exiting on their own and shall not be located in the property's front yard.

G. **IN-HOME BABY-SITTING DOES NOT REQUIRE PERMIT**. In-home baby sitting, for the purposes of this *Resolution*, does not constitute a child care center, and does not require a Land Use Change Permit

## SECTION 9-507: GROUP HOME

A. **LAND USE CHANGE PERMIT REQUIRED**. The operation of a group home for developmentally-disabled persons, aged persons, and persons with mental illness or juvenile offenders requires a Land Use Change Permit and shall comply with all applicable requirements of Colorado law, the Colorado Department of Human Services, and the Gunnison County Department of Human Services, and shall meet the following standards:

B. **COMPLIANCE WITH APPLICABLE BUILDING CODE ADOPTED AND AMENDED BY GUNNISON COUNTY**. Construction and operation of a group home shall comply with the applicable requirements of the applicable building code, adopted and amended by Gunnison County.

BLM_0053387

**C. COMPLIANCE WITH FIRE PROTECTION DISTRICT REQUIREMENTS.** All structures used as part of a group home shall comply with requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards. All such uses, whether pre-existing this *Resolution*, or approved by new Land Use Change Permits after the effective date of this *Resolution*, shall comply with the standards of Section 12-107: *Fire Protection*.

**D. AVAILABILITY OF SERVICE AND FACILITIES.** A group home must be located so that services and facilities, including convenience stores, commercial services, transportation and public recreation facilities are readily accessible to the residents.

## SECTION 9-508: KEEPING OF LIVESTOCK NOT ON AN AGRICULTURAL OPERATION

**A. LIVESTOCK AND SMALL ANIMALS ALLOWED WITH NO LAND USE CHANGE PERMIT.** The keeping of livestock and domestic animals on property other than an agricultural operation is permitted without a Land Use Change Permit subject to the following:

   **1. CONFINEMENT TO THE SITE.** Animals shall be confined to the parcel on which the primary use is located unless with the owner.

   **2. DISPOSAL OF MANURE.** Manure may be composted, used as fertilizer on meadows, or removed at least every six months from the property.

   **3. DISTANCE FROM LOT LINES AND WATER.** Manure piles shall be located a minimum of 40 feet from any lot line and 150 feet from any well, stream or water body. Manure shall be stored so as to protect surface and groundwater

   **4. ODOR CONTROL.** Animals shall not be allowed to create excessive odor problems or present a health hazard to neighbors or surrounding lands.

   **5. DRAINAGE FACILITIES.** Adequate drainage facilities or improvements shall be provided by the landowner and constructed to prevent any adjacent land or natural drainages from receiving runoff containing contaminants including sediment or organic wastes.

   **6. VEGETATION STANDARDS.** The following vegetation requirements shall apply only to land uses other than agricultural operations.

      **a. NATURAL RESOURCES CONSERVATION SERVICE GUIDELINES.** Recommendations of the Natural Resource Conservation Service may be utilized in determining the maximum devegetation per lot area.

      **b. MAINTENANCE OF VEGETATION.** The site, excluding the area that is allowed to be devegetated, must be maintained with vegetative groundcover. Vegetative groundcover includes native plants or introduced grasses and forbs, but does not include weeds on bare dirt. The minimum amount of vegetative groundcover required shall comply with the Section 13-115: *Reclamation and Noxious Weed Control.* Natural rock outcroppings shall not count towards the maximum area that may be devegetated.

   **7. NONDOMESTIC/EXOTIC ANIMALS.** The keeping of nondomestic or exotic animals for breeding or commercial viewing purposes is subject to all other standards of this *Resolution* and applicable Colorado regulations.

## SECTION 9-509: CAMPING ON INDIVIDUAL PARCELS

**A. PURPOSE.** The purpose of this Section is to provide regulations for the use of an individual recreational vehicle or other camping shelter (such as a tent) on an individual parcel, and to provide minimum requirements for the protection of health and safety of occupants of commercial campgrounds, and of the general public.

**B. LONG-TERM CAMPING IN A RECREATIONAL VEHICLE OR OTHER CAMPING SHELTER REQUIRES PERMIT.** Use of a recreational vehicle or other camping shelter for longer than a total of 14 days during any consecutive three months on the same parcel shall require a Long-term Camping Permit, which may be obtained from the Planning Department.

   **1. EXCEPTIONS.** Long-term camping in approved campgrounds on federal or state lands, or on lots or parcels that are located in subdivisions that have been approved as platted subdivisions by the County, with protective covenants approved by the County, and in which camping is allowed by those protective

BLM_0053388

covenants, shall not be required to obtain either a Land Use Change Permit or a Long-Term Camping Permit.

**C. NO LAND USE CHANGE PERMIT REQUIRED FOR CAMPING IN A RECREATIONAL VEHICLE OR OTHER CAMPING SHELTER ON AN INDIVIDUAL PARCEL.** A recreational vehicle or other camping shelter may be parked on an individual parcel and may be occupied by the landowner or by his/ her guests, and shall comply with these requirements:

1. **PROTECTIVE COVENANTS ALLOW CAMPING.** If any applicable protective covenants or deed restrictions are recorded against the property in the Office of the Gunnison County Clerk and Recorder, they do not prohibit this use.

2. **NO PARKING ON PUBLIC RIGHT-OF-WAY.** No recreational vehicle or other camping shelter shall be parked on any public right-of-way or road for camping, storage or residential use.

3. **THERE IS NO COMPENSATION.** There is no compensation to the owner of the parcel involved.

4. **CAMPING LIMITED TO 14 DAYS.** The travel trailer, recreational vehicle, camper or other camping shelter may only be used for camping for a period that does not exceed a total of 14 days during any consecutive three months on the same parcel without obtaining a Long-Term Camping Permit. The vehicle or other camping shelter shall be removed from the parcel after that time

5. **MAINTENANCE.** The lot or parcel on which camping occurs shall be maintained in a safe, clean and sanitary manner, and shall not be a nuisance or create adverse impacts to surrounding property, land or land uses.

6. **DISPOSAL OF WASTE.** Septage and other sewage or wastewater shall be disposed of only pursuant to a permit obtained in full compliance with the *Gunnison County Individual Sewage Disposal System Regulations*, and any other applicable County, state or federal standard or regulation. Compliance with those Regulations may require that a long-term individual sewage disposal system be installed and maintained on the parcel.

**D. PROHIBITED ACTIONS.** The following shall be prohibited:

1. **LEAVING REFUSE.** Storage of refuse, debris or litter in an exposed or unsanitary condition.

2. **DUMPING OF POLLUTANTS NEAR WATER BODY.** Placing any substance that pollutes, or may pollute the water body within 150 feet of a stream, lake or other water body.

**E. APPLICATION.** The Planning Department shall provide an application form that the applicant shall complete and which, at a minimum, shall include the following:

1. **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and stating the same information for the agent.

2. **PROPERTY OWNER.** Name of the owner of the property; if different than the applicant, a notarized letter from the owner consenting to the application, must be submitted.

3. **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, metes and bounds), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property.

4. **TYPE OF RECREATIONAL VEHICLE OR CAMPING SHELTER TO BE USED.** The type of recreational vehicle or other camping shelter to be used.

5. **PRESENT LAND USE.** Identify present land uses, locations, and sizes of structures that exist on the property.

6. **LIST OF ADJACENT LANDOWNERS.** As applicable, a listing of all landowners and land uses that are adjacent to the boundaries of the entire parcel on which the project is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the property except for the existence of the roadway. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel shall be included in the listing. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

BLM_0053389

7. **TRASH.** An indication of how trash will be removed from the site and taken to the appropriate landfill.

8. **SEWAGE DISPOSAL**. An indication of how sewage will be disposed of pursuant to the *Gunnison County Individual Sewage Disposal System Regulations.*

F. **FEES.** The fee for a Long-Term Camping Permit shall be as shown in a schedule of fees charged for permits issued by the Planning Department, and adopted and amended from time to time by the Board.

BLM_0053390

# ARTICLE 10:
# LOCATIONAL STANDARDS

## SECTION 10-101: PURPOSE

This Article establishes improvement standards that are intended to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights, to encourage development in areas closest to existing population centers, to foster growth that is orderly and reasonable in its rate and location, and is compatible with existing uses, and to promote the use of existing infrastructure.

## SECTION 10-102: LOCATIONAL STANDARDS FOR RESIDENTIAL DEVELOPMENT

**A. PRIMARY LOCATIONAL STANDARD**. An application for a new subdivision or multiple family development proposing more than two residential lots or two residences shall initially be reviewed for its location relative to existing development. In order of priority, this new development shall be located:

    **1. ADJACENT TO EXISTING POPULATION CENTER**. Adjacent to the established population centers of Somerset, Ohio City, Almont or Crested Butte South or the incorporated municipalities of Gunnison, Crested Butte, Mt. Crested Butte, Pitkin or Marble, or to a subdivision that is served by a central wastewater treatment system that was platted and approved pursuant to the requirements of the former *Gunnison County Land Use Resolution*; or, as the next priority,

    **2. WITHIN A MUNICIPAL THREE MILE PLAN AREA**. Within a municipal Three Mile Plan area.

**B. ALTERNATIVE LOCATIONAL STANDARDS**. When the applicant has demonstrated that a proposed residential development cannot satisfy the primary locational standard, the location may be approved if the Board finds that in addition to meeting all of the applicable requirements of this *Resolution*, the cumulative impacts of the proposed development and existing development will result in no significant net adverse impact to adjacent lands or land uses, wildlife, visual quality, air or water quality, including impacts caused by a proliferation of individual sewage disposal systems and/or individual water wells.

## SECTION 10-103: RESIDENTIAL DENSITY

**A. PRIMARY RESIDENTIAL LOT SIZE AND DENSITY STANDARDS**. A land use change involving more than two residential lots or two residences shall be approved if in addition to meeting all of the applicable requirements of this *Resolution* it complies with the following:

    **1. COMPLIES WITH MUNICIPAL THREE MILE PLAN AREA**.  When the proposal is for development located within a municipal three-mile plan area, the development proposal shall address how it comports with the objectives and policies of the applicable municipal three-mile plan.  the County shall consider how the proposed development has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the three-mile plan area. Where there is a conflict between the objectives or policies of a three-mile plan or the intergovernmental agreement, and County standards, County standards shall apply; and

    **2. PROVIDES OPEN SPACE**. The amount of open space included in the development shall comply with the requirements of Section 13-108: *Open Space and Recreation Areas*; and

    **3. DETERMINATION OF DENSITY CONSIDERS SEWAGE DISPOSAL REQUIREMENTS**. Location, configuration, and the final maximum density of lots one acre or larger in a proposed development shall be determined subject to feasibility of use of individual sewage disposal systems pursuant to the *Gunnison County Individual Sewage Disposal System Regulations*. In no case shall any lots smaller than an acre be allowed in a new subdivision unless served by a central or regional wastewater treatment system.

    **4. LOT SIZE AND LOT DENSITY CONSIDERATIONS.** Lot size and lot density shall be substantially similar to the adjacent parcels unless:

BLM_0053391

   **a.** **CONDITIONS ARE APPROPRIATE FOR SMALLER LOTS OR GREATER DENSITY**. Conditions are appropriate for smaller lots or greater density because:

      **1.** **SITE SERVED BY PUBLIC FACILITIES**. The site can and will be served by public services and facilities, including public water supply and wastewater treatment systems to the maximum extent feasible, or, if required by Section 12-106: *Sewage Disposal/Wastewater Treatment*; and

      **2.** **LOTS ARE CLUSTERED**. All the proposed lots have been clustered; and

      **3.** **OPEN SPACE EXCEEDS REQUIRED AMOUNT**. The amount of open space included in the proposed development exceeds by ten percent that is required by Section 13-108: *Open Space and Recreation Areas;* and

      **4.** **COMPATIBLE WITH ADJACENT USES.** The development is compatible with current adjacent land uses and densities, and, as a condition of approval, will be subject to permanent protective covenants to ensure that it remains compatible with the adjacent uses and densities as of the date of approval of the Land Use Change Permit.

   **b.** **CONDITIONS ARE APPROPRIATE FOR LARGER LOT SIZE OR LESSER DENSITY**. If the decision-making body finds that one or more of the following conditions cause the requirements of the primary density standard to be inappropriate for a proposed residential development involving two or more residential lots or residences, lot sizes shall be increased from the minimum size and/or density decreased from the maximum allowed by this Section 10-103: A. 4. *Lot Size and Lot Density Considerations* to the extent necessary to reasonably mitigate the condition:

      **1.** **LAND CHARACTERISTICS**. The density of the proposed development does not comply with the standards of Article 11: *Resource Protection Standards;* or

      **2.** **PUBLIC WATER SUPPLY AND WASTEWATER TREATMENT ARE NOT AVAILABLE**. Public water supply and wastewater treatment systems are not available or the service providers are unwilling or unable to serve the proposed development; or

      **3.** **EMERGENCY SERVICES ACCESS IS DIFFICULT**. Emergency services including fire, medical and law enforcement are not sufficiently close to the location of the development to provide timely response year-round, response is reasonably expected to be difficult because of access, terrain or weather conditions and require more than currently available equipment or personnel or response time to provide those services, or personnel would be exposed to undue risk; or

      **4.** **SIGNIFICANT NET ADVERSE EFFECT WILL RESULT.** All impacts, including cumulative impacts when there is a reasonable probability that there are cumulative impacts, of the proposed and existing developments will have a significant net adverse effect on adjacent land, adjacent land uses, County or other infrastructure, public health, safety or welfare, or on the environment.

## SECTION 10-104: LOCATIONAL STANDARDS FOR COMMERCIAL, INDUSTRIAL AND OTHER NON-RESIDENTIAL DEVELOPMENT

**A.** **APPLICABILITY.** This Section shall apply to all proposed commercial, industrial and other non-residential land use changes except for the following:

   **1.** **AGRICULTURAL OPERATIONS.** Agricultural operations, including farm or ranch stands.

   **2.** **PUBLIC FACILITIES OR UTILITIES**. Essential public facilities including fire protection, emergency medical service or law enforcement facilities and utilities shall be exempt, if the decision-making body finds:

      **a.** **ESSENTIAL TO PUBLIC WELFARE**. That the proposed facilities or utilities are essential to public health, safety and welfare; and

      **b.** **ALTERNATIVE SITE UNAVAILABLE OR NOT SATISFACTORY**. That suitable alternative sites that meet the standards of this Section are not available, or would not provide a location adequate to provide the necessary services.

**B.** **PRIMARY LOCATIONAL STANDARD**. Proposed commercial, industrial and other non-residential development shall be reviewed for its location relative to existing development. In order of priority, this new growth should be located:

BLM_0053392

1. **ADJACENT TO INCORPORATED MUNICIPALITY.** A proposed commercial, industrial, or other non-residential development should be located adjacent to a municipal boundary on land that qualifies for annexation into the municipality by meeting the criteria of the *Colorado Municipal Annexation Act,* C.R.S. 31-12-101.

2. **CONSISTENT WITH A MUNICIPAL THREE MILE PLAN AREA.** When the proposal is for development located within a municipal three-mile plan area, the development proposal shall address how it comports with the objectives and policies of the applicable municipal three-mile plan. the County shall consider how the proposed development has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the three-mile plan area. Where there is a conflict between the objectives or policies of a three-mile plan or the intergovernmental agreement, and County standards, County standards shall apply.

C. **ALTERNATIVE LOCATIONAL STANDARDS.** When the applicant has demonstrated that a proposed commercial, industrial or other non-residential development cannot satisfy the primary locational standard, the location may be approved if the Board finds that in addition to meeting all of the other applicable requirements of this *Resolution,* the cumulative impacts of the proposed development and existing development will result in no significant net adverse impact to adjacent lands or land uses, wildlife, visual quality, air or water quality, and the proposed use complies with the following:

1. **LOCATIONAL CONSIDERATIONS.**

    a. **NECESSARY LOCATION.** The location is necessary because of specific circumstances including location of minerals, unique transportation needs or geologic conditions; or

    b. **NO SITE IS REASONABLY ATTAINABLE IN OR ADJACENT TO THE NEAREST MUNICIPALITY OR EXISTING PERMITTED BUSINESS OR INDUSTRIAL PARK.** There is no site reasonably attainable within or adjacent to the municipality or existing permitted businesses or industrial park nearest the proposed development site, in an area that qualifies for annexation, or is consistent with a municipal Three Mile Plan area. Evaluation of suitability shall consider size of parcel needed, reasonable availability of necessary utilities and other infrastructure, and the applicant shall provide documentation of comparable sites. Economic feasibility or practicality of comparable sites may be considered, but shall not be the deciding factor in determining suitability; or

    c. **LOCATION WELL-SUITED TO SPECIFIC USE.** The proposed location is particularly well-suited for the specific use (recreational facilities, including dude ranches or resorts); provided, however, that location in a high traffic area or on a highway artery shall not, in and of itself, qualify a proposed commercial development for approval; and

    d. **NO SIGNIFICANT NET ADVERSE EFFECT.** There will be no significant net adverse effect, including cumulative impacts when there is a reasonable probability that there are cumulative impacts, of the proposed and existing developments on adjacent land uses, County or other infrastructure, or public health, safety or welfare, or the environment.

    e. **NEED OR USE IS WELL-SUITED IN A PARTICULAR AREA.** There is a documented need for the specific use in the proposed location.

    f. **COMPATIBLE WITH EXISTING USES ESTABLISHED IN IMPACT AREA.** The proposed use is compatible with uses established in the impact area.

2. **USE IS DESIGNED TO SERVE A SPECIFIC RESIDENTIAL AREA.** The development will be located and designed primarily to serve an integral part of a specific residential area or development, and shall provide services that are reasonably likely to reduce vehicle trips between the residential area and population centers.

BLM_0053393

# ARTICLE 11:
# RESOURCE PROTECTION STANDARDS

## SECTION 11-101: PURPOSES

This Article establishes standards to protect the natural resources, wildlife habitat, and agricultural lands of Gunnison County, and to ensure that proposed land use changes avoid, or mitigate the hazards from natural areas that could pose threats to persons and to property. It is designed to achieve the maximum protection of areas that are environmentally sensitive or that provide sensitive wildlife habitat, whether because of the nature, quality, or location of certain natural features. It is also designed to preserve the natural landscape and unique and visually significant land forms (including mountain peaks, ridgelines, hillsides, buttes, and foreground areas including irrigated meadows), and to protect significant or unusual areas of water-land interface (scenic or sensitive stretches of shore, river, and streams, natural springs, wetlands, or other riparian areas), and aquifer recharge areas. The protection of these areas may be achieved by avoiding development in these areas whenever possible, minimizing unavoidable adverse development, and mitigating the impacts of development to the maximum extent feasible.

## SECTION 11-102: VOLUNTARY BEST MANAGEMENT PRACTICES

Unless otherwise expressly required by this *Resolution*, applicants are encouraged to utilize best management practices voluntarily.

**A. PURPOSES.** By utilizing best management practices in its own projects, and recommending their use in addition to specifying standards and requirements for land use changes, Gunnison County seeks to achieve the following:

1. **IMPROVE WATER QUALITY.** Improve water quality by preventing excessive soil and water loss; prevent sediment and soil-borne pollutants from entering surface water.

2. **PRODUCE OPTIMUM VEGETATION.** Produce plant species appropriate for the ecological site and land use for grazing and browsing animals on grazing land or land converted to grazing land from other uses.

3. **REDUCE SEDIMENT LOADS**. Reduce sediment loads causing downstream damages and pollution.

4. **IMPROVE STREAM QUALITY**. Improve streams for recreation or as a habitat for fish and/or wildlife.

5. **CONTROL UNNATURAL CHANNEL MEANDER**. Control unnatural channel meander that may adversely affect the channel, on-site, upstream, and downstream facilities.

6. **PREVENT LOSS AND DAMAGE**. Prevent the loss of land or damage to utilities, roads, structures, or other facilities adjacent to the channel banks.

7. **MINIMIZE HUMAN IMPACT**. Minimize impacts of human activities in riparian, sensitive and wet areas.

8. **MINIMIZE SOIL EROSION.** Minimize soil erosion and loss of plant nutrients. Maintain mulch and other materials necessary to reduce erosion and sedimentation; rehabilitate areas where an unacceptable level of erosion and/or stream/lake sedimentation is already occurring.

9. **CONTROL WATER LOSS.** Control undesirable water loss either through runoff or leaching, and improve water use efficiency.

10. **IMPROVE WILDLIFE HABITAT.** Maintain or improve habitat conditions for fish and wildlife; restore and maintain fisheries that have been damaged or destroyed by sedimentation.

11. **IMPROVE SOIL QUALITY.** Improve or maintain good physical, chemical and biological conditions of the soil.

12. **MAINTAIN QUALITY OF SENSITIVE AREAS.** Maintain or improve the quality and integrity of sensitive areas including research, natural, scenic, and unstable geologic areas.

**B. TECHNIQUES AND GUIDELINES.** Practices that can help to achieve these purposes and shall be considered by the County to contribute to the mitigation of impacts may include:

BLM_0053394

1. **BUFFER STRIPS**. The inclusion and maintenance of buffer strips is desirable between water bodies and residential, commercial or industrial development and livestock grazing, for wildlife migration corridors and water quality.

2. **STREAM PROTECTION.** Stream bank protection and stream channel stabilization and stabilization of critically eroding areas.

3. **NUTRIENT APPLICATION.** Application of nutrients based on vegetation needs, and considering cumulatively the impacts of sources of nutrients (including commercial fertilizer, manure or sludge, irrigation water, composted products), and the areas to which they are applied. Limit potential impacts by:

   a. **ELIMINATING OVER-APPLICATION.** Minimize availability of nutrients for transport by eliminating over-application.

   b. **REDUCE NUTRIENT LOADING.** Reduce nutrient loading to surface and ground water.

   c. **MINIMIZING IMPACTS OF ANIMAL WASTE**. Handling animal waste in a manner that minimizes impacts or potential impacts to surface or ground water, including issues including collection, storage and land application.

4. **USE OF PESTICIDES.** Using a chemical whose intended effect is no greater than that necessary to eliminate pests on a project site, using the minimum effective rate, and timing the application for the targeted pest.

C. **RESOURCES.** Gunnison County encourages applicants for Land Use Change Permits to seek assistance and specific information about how to integrate BMP's into project design from the following:

1. **USDA.** USDA Natural Resources Conservation Service Field Office's *Technical Guide.*

2. **CSU.** Colorado State University Cooperative Extension, including the guide, *Best Management Practices for Colorado Agriculture.*

3. **TIMBER INDUSTRY.** Colorado Timber Industry Association's *Silviculture BMPs.*

4. **COLORADO STATE FOREST SERVICE**. Colorado State Forest Service technical references.

5. **USFS.** U.S. Forest Service's *Watershed Conservation Practices Handbook* and other technical references.

6. **USDI.** USDI Bureau of Land Management technical references.

7. **MOUNTAIN DRIVEWAY BEST MANAGEMENT PRACTICES.** The Colorado Nonpoint Source Council's *Mountain Driveway Best Management Practices Manual.*

8. **WESTERN STATE COLLEGE OF COLORADO**. Western State College of Colorado in Gunnison.

9. **U.S. ARMY CORPS OF ENGINEERS**. The U.S. Army Corps of Engineers.

10. **GUNNISON COUNTY PLANNING DEPARTMENT**. The Gunnison County Planning Department.

# SECTION 11-103: DEVELOPMENT IN AREAS SUBJECT TO FLOOD HAZARDS

A. **PURPOSES**. This Section establishes regulations to prevent the imprudent use and occupation of flood hazard areas and to minimize the threat of flooding to human life and property. This Section addresses development within areas subject to flood hazards that are depicted on the most recent Federal Emergency Management Agency (FEMA) Flood Insurance Rate Maps, National Flood Insurance Program and areas that are identified by survey, documented  site specific observation, or engineering study as being areas subject to flood hazards, within the 100-year floodplain. Specifically, this Section establishes development standards that are intended:

1. **TO REDUCE FLOOD HAZARDS**. To reduce the hazard of floods to life and property by:

   a. **PROHIBITING USES HAZARDOUS TO LIFE.** Prohibiting certain uses that are hazardous to life or property in time of flood from locating in the floodplain;

   b. **RESTRICTING USES HAZARDOUS TO HEALTH.** Restricting the development of certain uses in the floodplain that are hazardous to public health in time of flood;

   c. **RESTRICTING USES SUSCEPTIBLE TO FLOOD DAMAGE.** Restricting the development of certain uses in the floodplain that are especially susceptible to flood damage, so as to alleviate hardship and eliminate demands for public expenditures for relief and protection;

BLM_0053395

    **d. REQUIRING PERMITTED USES TO BE FLOOD PROOFED.** Require permitted floodplain uses, including public facilities that serve such uses, to be protected against floods by requiring flood proofing and general flood protection at the time of initial construction.

**2. TO PROTECT RESIDENTS IN FLOODPLAIN AREAS.** To protect those who may occupy areas of the floodplain by:

    **a. REGULATING CONSTRUCTION.** Regulating the manner in which structures and developments designed for human occupancy may be constructed and developed to minimize danger to human life within them;

    **b. REGULATING WATER SUPPLY AND WASTEWATER TREATMENT SYSTEMS.** Regulating the method of constructing water supply and wastewater treatment systems to prevent disease, contamination and unsanitary conditions resulting from flood inundation;

    **c. REGULATING ROADS AND BRIDGES.** Regulating the location and method of constructing roads and bridges so as to prevent damage during flooding;

    **d. REQUIRING INFORMATION TO BE MADE AVAILABLE TO THE PUBLIC.** Requiring the requirements of this Section and maps delineating floodplain areas to be available to the public to protect people from purchasing floodplain lands for purposes that are not suitable.

**3. TO AVOID UNNECESSARY EXPENDITURE.** To protect the public from the burden of avoidable financial expenditures for flood control and relief by:

    **a. MINIMIZING DAMAGE.** Regulating uses and construction methods within floodplain areas. Providing for patterns of development and methods of construction that will minimize the probability of damage to property and loss of life or injury to the occupants of flood hazard areas.

**4. TO PROTECT FLOODPLAIN STORAGE CAPACITY.** To protect the storage capacity of floodplains and to assure retention of sufficient area to convey flood flows that can reasonably be expected to occur by:

    **a. REGULATING ACTIVITY IN DRAINAGE CHANNELS.** Regulating filling, dumping, dredging, and alteration of drainage channels;

    **b. PROHIBITING ENCROACHMENTS.** Prohibiting excessive encroachments.

**B. REPEAL OF THE *GUNNISON COUNTY FLOOD DAMAGE PREVENTION RESOLUTION*.** This Section repeals and replaces the requirements adopted in the *Gunnison County Flood Damage Prevention Resolution*. All rights and liabilities that accrued by actions taken pursuant to that resolution are preserved and may be enforced.

**C. STRUCTURES AND USES THAT ARE SPECIFICALLY NOT IN CONFORMANCE WITH THIS SECTION.**

**1. LEGAL BEFORE THE EFFECTIVE DATE OF THIS *RESOLUTION*.** The use of any structure or land within the 100-year floodplain that was legal before the application of the requirements of the *Gunnison County Flood Damage Prevention Resolution*, or as it was amended, but that does not conform to the requirements of this Section may be continued subject to the following conditions:

    **a. EXPANSION SHALL COMPLY.** No such structure or use may be expanded or enlarged unless the expansion or enlargement complies with the requirements of this Section. When a structure, including a manufactured home, has been damaged so that the market value of repair or replacement does not exceed 50 percent of the market value before the damage occurred, the structure may be restored to its size before the damage occurred. Such reconstruction shall be constructed pursuant to this Section, and shall not be deemed to be a substantial expansion or enlargement. Any restoration or replacement of a structure, including a manufactured home, damaged to an extent exceeding 50 percent of its market value before the damage occurred shall be deemed a substantial expansion or enlargement, and the entire structure shall be protected pursuant to this Section.

    **b. REPLACEMENT MANUFACTURED HOME SHALL COMPLY.** Whenever an existing manufactured home, that is nonconforming or is located in a nonconforming manufactured home park or subdivision, in the 100-year floodplain, is replaced by a new manufactured home, regardless of the reason for the replacement, the new manufactured home shall comply with the requirements of this Section.

    **c. SUBSTANTIAL IMPROVEMENTS SHALL COMPLY.** If any person makes substantial improvement to any nonconforming structure or use, that person shall permanently change the structure or use to conform to the requirements of this Section.

BLM_0053396

**D. ADOPTED FLOOD INSURANCE STUDY.** The Board hereby affirms Gunnison County's adoption of the Flood Insurance Study of Gunnison County, Colorado, Unincorporated Areas, September 29, 1989, published by FEMA for purposes of designating flood hazard areas within the unincorporated areas of Gunnison County and implementing floodplain regulations, and adopted by reference in the *Gunnison County Flood Damage Prevention Resolution*, approved by the Board in Resolution No. 31 Series 1989. This adoption includes all Flood Insurance Rate Maps (FIRM) and flood profiles included or referenced in the Flood Insurance Study.

**E. OFFICIAL MAPS.**

    **1. DESIGNATION OF OFFICIAL MAPS.** The Flood Insurance Rate Maps and Flood Insurance Study prepared and published by FEMA for the unincorporated areas of Gunnison County are hereby designated as official flood maps, with the following qualifications:

        **a. LETTERS OF MAP AMENDMENT OR MAP REVISION.** Property owners who believe that their land is not located within a flood hazard area or that their land or structures will not be affected by a flood hazard, as shown of the National Flood Insurance Program Maps, may submit a request to the Federal Emergency Management Agency for a Letter of Map Amendment or a Letter of Map Revision. Specific technical requirements regarding the flood hazard are required for the application, which is available in the Planning Department.

        **b. REVISIONS AND AMENDMENTS SHALL BE NOTED.** If FEMA issues a Letter of Map Amendment or a Letter of Map Revision, and this amendment or revision has not yet been depicted on the most recent edition of the Flood Insurance Rate Maps or Flood Insurance Study, approval of those changes shall be noted on the official map at the approximate map locations where the affected sites are located.

        **c. NEW EDITION OF FLOOD INSURANCE RATE MAPS SUPERSEDES EXISTING MAPS.** Whenever FEMA issues a new edition of the Flood Insurance Rate Maps or a Flood Insurance Study, the maps in the new edition shall constitute the official maps. No additional adoption of those maps shall be required by the Board.

        **d. AVAILABILITY OF OFFICIAL MAPS AND APPROVED CHANGES.** The Planning Department shall keep the Flood Insurance Rate Maps on file in the Planning Department, and shall make them available for public inspection. In addition, the Planning Department shall make available copies of any Letters of Map Amendment or Letters of Map Revision issued by FEMA but not depicted on the Flood Insurance Rate Maps. When a Flood Insurance Rate Map has been modified by a Letter of Map Amendment or a Letter of Map Revision, and this amendment or revision is not yet depicted on the map, no copy of the map shall be distributed by the Planning Department to the public without a copy of the Letter of Map Amendment or of the Letter of Map Revision.

        **e. RESPONSIBILITY FOR INTERPRETATION OF OFFICIAL MAPS.** When interpretation of floodplain boundaries is needed to determine whether an applicant is required to comply with the requirements of this Section, the Planning Director shall be responsible for making those interpretations.

        **f. AREAS NOT MAPPED.** Lands located in areas subject to flood hazards, but not identified on the FEMA Flood Insurance Rate Maps, may be subject to the requirements of this Section.

**F. WARNING AND DISCLAIMER.** The degree of flood protection intended to be provided by this Section has been determined to be reasonable for regulatory purposes and is based on engineering and scientific methods of study. Floods of greater magnitude may occur and flood heights may be increased by man-made or natural causes, including ice jams and bridge or culvert openings restricted by debris. This Section does not imply that areas outside the floodplain area boundaries or land uses permitted within such areas will be free from flooding or flood damages or that compliance with this Section will prevent any or all damages from flooding.

    **1. DEVELOPMENT IN FLOODPLAIN REQUIRES LANDOWNER ACKNOWLEDGEMENT.** As a condition of approval of a proposed land use change in the floodplain, the landowner shall sign the following warning and disclaimer, which shall be included on the Final Plat for a subdivision, and/or within the applicable recorded document that approves the Land Use Change Permit:

WARNING AND DISCLAIMER OF FLOODPLAIN HAZARDS
AFFECTING USE AND OCCUPANCY OF THIS PROPERTY

    "I/We, _____ (owner(s) of property) on behalf of myself/ourselves and all successors, heirs and assigns, hereby acknowledge having been informed by Gunnison County of the existence of floodplain hazard areas that may affect the use and occupancy of this property, and any improvements

BLM_0053397

*thereto. I/We acknowledge that the County's approval of this land use change does not guarantee the safety of the property, or in any way imply that areas outside of the designated hazard areas will be free from hazards and hereby agree to indemnify, defend and save harmless the County, its agents, officers and employees from and against any and all liability, expense including defense costs and legal fees, and claims for damages of any nature whatsoever, including, bodily injury, death, personal injury, or property damage arising from or connected with any activity related to these hazards, including any suits, liability, or expense."*

2. **OWNERS SHALL BE RESPONSIBLE.** Property owners who develop in, or have access through, flood hazard areas shall be required to construct, implement, maintain, improve and bear the cost of their development's proportionate share of all reasonable measures necessary to mitigate any flood-related hazard created by such development.



FIGURE 1: AREAS OF THE FLOODPLAIN

G. **APPLICABILITY.** The requirements and regulations of this Section shall apply to all lands within the unincorporated area of Gunnison County that are located:

1. **WITHIN AREAS MAPPED AS 100-YEAR FLOODPLAIN.** Within the 100-year floodplain, Zone A (Area of Special Flood Hazard) on the most recent Flood Insurance Rate Maps or Flood Insurance Study prepared and published by FEMA.

2. **WITHIN AREAS SHOWN BY AMENDMENT OR REVISION TO BE WITHIN THE 100-YEAR FLOODPLAIN.** Within the 100-year floodplain as a result of a Letter of Map Revision or Letter of Map Amendment approved by FEMA, but not yet depicted on the Flood Insurance Rate Maps or Flood Insurance Study published by FEMA.

3. **WITHIN AREAS THAT ARE DETERMINED TO BE "FLOOD PRONE".** Within areas that are determined to be "flood prone" on the basis of reliable historical information, topography, vegetation, or other naturally occurring indicators. Flood prone areas may require a detailed hydrologic engineering study in order to define and map the actual 100-year floodplain, to determine site-specific flood elevations and ground elevations, and to distinguish between the floodway and the flood fringe. Such maps shall include at a minimum the requirements of Section 11-103: L.1. e: *Maps and Plans.*

H. **PLAN REQUIRED TO BE SUBMITTED SHOWING DESIGNATED FLOODPLAIN AND IDENTIFYING AVOIDANCE OR MITIGATION MEASURES.** When a Land Use Change Permit is sought in areas that have been identified on the Flood Insurance Rate Maps or Flood Insurance Study prepared and published by FEMA for the unincorporated areas of Gunnison County as being in a designated floodplain, a copy of the mapped area, and a narrative indicating how the hazard will be avoided or mitigated pursuant to the general and specific standards of this Section is required to be included as part of the submittal.

BLM_0053398

**I.   USES WITHIN THE 100-YEAR FLOODPLAIN.** The floodplain is divided into three areas: the stream channel, the floodway and the flood fringe (Figure 1: *Areas of the Floodplain*). A site-specific engineering analysis considering flood elevations and ground elevations may be necessary to establish the location of these distinct areas.

**1.   USES PERMITTED IN THE FLOODWAY.** The following uses shall be permitted within the floodway, provided they do not result in obstruction of the floodway or impair its ability to carry and discharge a 100-year flood, subject to compliance with the applicable requirements this *Resolution*:

**a.   AGRICULTURAL USES.** Agricultural uses, including grazing of livestock, production of hay, diversion structures and irrigation ditches;

**b.   ACCESSORY RESIDENTIAL USES.** Uses accessory to residential uses but not involving structures, including lawns, gardens, play areas, open yard areas and driveways;

**c.   RECREATIONAL USES.** Recreational uses not requiring permanent or temporary structures designed for human habitation including parks, public trails, wildlife and natural preserves, and areas for fishing and hiking;

**d.   UTILITY FACILITIES.** Utility facilities including dams, spillways, power plants, transmission lines, and pipelines;

**e.   ROADS.** Roads, highways and bridges;

**f.   FLOOD MITIGATION STRUCTURES.** Flood mitigation structures and stream bank stabilization projects. No device to be constructed as a barrier against flooding shall be designed in a manner or location that would increase the risk of flood damage to the property or personal safety of others, or would shift the hazard onto another owner's property.

**g.   CONSTRUCTION MATERIALS EXTRACTION.** For each permit for extraction of construction materials issued before the effective date of this *Resolution*, extraction of construction materials shall be permitted no closer than five feet from the nearest ordinary high water mark in average hydrologic years on each side of a water body, but not in the stream channel.

**2.   USES PROHIBITED WITHIN THE FLOODWAY.** The following uses shall be prohibited within the floodway, even if the use would otherwise be permitted by this *Resolution*:

**a.   STRUCTURES.** Human occupation of permanent or temporary structures (including manufactured homes) and other structures, subject to compliance with the applicable requirements of this *Resolution*.

**b.   OVERNIGHT CAMPGROUNDS.** Development or use of overnight campgrounds;

**c.   STORAGE OF MATERIALS THAT MAY CREATE A HAZARD DURING A FLOOD.** Storing or processing of materials that are buoyant, flammable, explosive, or have potential for injuring human, animal or plant life;

**d.   SOLID WASTE DISPOSAL SITES AND WASTEWATER TREATMENT FACILITIES.** Development or operation of solid waste disposal sites and central water or wastewater treatment facilities.

**e.   OTHER USES.** Uses that may jeopardize human life and property by their location within the Floodway.

**3.   USES PERMITTED IN THE FLOOD FRINGE.** The following uses shall be permitted in the flood fringe, subject to compliance with the applicable requirements this *Resolution*:

**a.   AGRICULTURAL USES.** Agricultural uses, including grazing of livestock and production of hay;

**b.   RESIDENTIAL ACCESSORY USES.** Residential accessory uses, not involving structures, including lawns, gardens, play areas, open yard areas and driveways;

**c.   RECREATIONAL USES.** Recreational uses not requiring permanent or temporary structures designed for human habitation, including parks, public trails, golf courses, driving ranges, wildlife and natural preserves, and areas for fishing and hiking;

**d.   UTILITIES.** Utility facilities, including dams, spillways, power plants, transmission lines, and pipelines;

**e.   ROADWAYS.** Roads, highways and bridges;

BLM_0053399

    **f.**   **CONSTRUCTION MATERIALS PROCESSING**. Sand and construction materials processing operations;

    **g.**   **FLOOD MITIGATION STRUCTURES**. Flood mitigation structures and stream bank stabilization;

    **h.**   **RESIDENTIAL STRUCTURES**. Residential structures, provided that the lowest floor of the structure, including the basement, is one foot above the base flood elevation;

    **i.**   **NON-RESIDENTIAL STRUCTURES**. Non-residential structures, provided that the lowest floor of the structure is one foot above the base flood elevation; or together with attendant utility and sanitary facilities, complies with requirements of Section 11-103: J. 2: *Construction Materials and Methods.*

**4.**   **USES PROHIBITED WITHIN THE FLOOD FRINGE**. The following uses shall be prohibited within the flood fringe, even if the use would otherwise be permitted by this *Resolution*:

    **a.**   **LOWEST FLOOR**. Any residential structure in which the lowest floor, including the basement, is lower than one foot above the base flood elevation of the 100-year flood.

    **b.**   **SANITARY LANDFILL**. A sanitary landfill or other site used for the storage or disposal of garbage, trash, debris, or similar materials, regardless of whether such storage or disposal is for commercial, governmental, or private purposes.

    **c.**   **LUMBER STORAGE**. Any use involving the storage of lumber, trees, logs, or similar materials that, if flooded, could result in substantial solid debris being carried downstream by floodwaters.

    **d.**   **STORAGE OF MATERIALS THAT MAY CREATE A HAZARD DURING A FLOOD**. The commercial or private storage or processing of materials that are flammable, explosive, or otherwise potentially injurious to human, animal, or plant life during floods. However, this limitation shall not prohibit private storage of motor fuel in containers that are anchored to protect and prevent flotation during flooding, nor shall motor fuel or heating fuel be prohibited from being stored underground, provided the storage tank is constructed to prevent floodwater contamination by the fuel, regardless of the damage done to above-ground structures.

    **e.**   **STORAGE OR STOCKPILING OF MANURE**. Storage or stockpiling of manure that could result in the inundation of manure piles or manure piles being carried downstream by floodwaters.

**J.**   **GENERAL STANDARDS FOR FLOOD HAZARD REDUCTION**. In all areas of flood hazards, the following standards apply:

    **1.**   **ANCHORING.**

       **a.**   **NEW CONSTRUCTION**. All new construction and substantial improvement shall be anchored to prevent flotation, collapse, or lateral movement of the structure and capable of resisting the hydrostatic and hydrodynamic loads.

       **b.**   **MANUFACTURED HOMES AND MOBILE HOMES**. All manufactured and mobile homes must be elevated and anchored to resist flotation, collapse or lateral movement and capable of resisting the hydrostatic and hydrodynamic loads. In addition to applicable State and County anchoring requirements for resisting wind forces, anchoring must be accomplished as follows:

          **1.**   **OVER-THE-TOP TIES**. Over-the-top ties at each of the four corners of the manufactured home, with two additional ties per side at intermediate locations, with manufactured homes less than 50 feet long requiring one additional tie per side; or

          **2.**   **FRAME TIES**. Frame ties at each corner of the home with five additional ties per side at intermediate points, with manufactured homes less than 50 feet long requiring four additional ties per side;

          **3.**   **MINIMUM FORCE CAPACITY**. All components of the anchoring system capable of carrying a force of 4,800 pounds; and shall ensure 15 psi lateral immobility of the home.

          **4.**   **ADDITIONS MUST BE ANCHORED**. Similar anchoring of any additions to the manufactured home.

    **2.**   **CONSTRUCTION MATERIALS AND METHODS.**

       **a.**   **FLOOD RESISTANT MATERIALS**. All new construction and substantial improvements shall be constructed with materials and utility equipment resistant to flood damage.

BLM_0053400

    **b. FLOOD DAMAGE REDUCING METHODS.** All new construction and substantial improvements shall be constructed using methods and practices that minimize flood damage.

    **c. FLOOD-RESISTANT ELEMENTS.** All new construction and substantial improvements shall be constructed with electrical, heating, ventilation, plumbing, and air conditioning equipment and other service facilities that are designed and/or located to prevent water from entering or accumulating within the components during conditions of flooding.

**3. UTILITIES.**

    **a. WATER SUPPLY SYSTEMS.** All new and replacement water supply systems shall be designed to minimize or eliminate infiltration of flood waters into the system.

    **b. WASTEWATER TREATMENT SYSTEMS.** New and replacement wastewater treatment systems shall be designed to minimize or eliminate infiltration of flood waters into the systems and discharge from the systems into flood waters; and,

    **c. INDIVIDUAL SEWAGE DISPOSAL SYSTEMS.** On-site individual sewage disposal systems shall be located to avoid impairment to them or contamination from them during flooding.

**4. SUBDIVISION DESIGN.** Designs for land use change applications that propose the subdivision of land shall include the following:

    **a. MINIMIZING FLOOD DAMAGE.** All subdivision proposals shall be designed to minimize flood damage;

    **b. UTILITIES LOCATIONS.** All subdivision proposals that have public utilities and facilities including sewer, gas, electrical, and water systems shall locate and construct such systems to minimize flood damage;

    **c. DRAINAGE FACILITIES.** All subdivision proposals shall have adequate drainage provided to reduce exposure to flood damage;

    **d. BASE FLOOD ELEVATION DATA.** Base flood elevation data shall be provided for subdivision proposals and other proposed developments that contain at least 50 lots or five acres (whichever is less). The cumulative effect of any proposed development, when combined with all other existing and anticipated development, shall not increase the water surface elevation of the base flood more than one foot at any point.

**K. SPECIFIC STANDARDS FOR FLOOD HAZARD REDUCTION.** In all areas of flood hazards where base flood elevation data has been provided, the following shall apply:

**1. RESIDENTIAL CONSTRUCTION.** New construction and substantial improvement of any residential structure shall have the lowest floor (including basement) elevated to one foot above the base flood elevation.

**2. COMMERCIAL, INDUSTRIAL OR OTHER NONRESIDENTIAL CONSTRUCTION.** New construction and substantial improvement of any commercial, industrial or other nonresidential structure shall either have the lowest floor (including basement) elevated to one foot above the base flood elevation; or, together with attendant utility and sanitary facilities, shall:

    **a. IS FLOOD PROOFED.** Be flood proofed so that below the base flood elevation the structure is watertight with walls substantially impermeable to the passage of water;

    **b. HAVE RESISTIVE STRUCTURAL COMPONENTS.** Have structural components capable of resisting hydrostatic and hydrodynamic loads and the effects of buoyancy; and,

    **c. HAVE ENGINEER'S CERTIFICATION.** Be certified by a qualified professional engineer licensed in the State of Colorado that the design and methods of construction are in accordance with accepted standards of practice for meeting the requirements of this paragraph. Such certifications shall be provided to the Planning Department as set forth in this Section.

**3. OPENINGS IN ENCLOSURES BELOW THE LOWEST FLOOR.** For all new construction and substantial improvements, fully enclosed areas below the lowest floor that are subject to flooding shall be designed to automatically equalize hydrostatic flood forces on exterior walls by allowing for the entry  and exit of floodwaters. Designs for meeting this requirement must either be certified by a qualified professional

BLM_0053401

engineer licensed in the State of Colorado or architect or must meet or exceed the following minimum criteria:

    **a.** **MINIMUM NUMBER.** A minimum of two openings having a total net area of not less than one square inch for every square foot of enclosed area subject to flooding shall be provided;

    **b.** **MINIMUM ELEVATION ABOVE GRADE.** The bottom of all openings shall be no higher than one foot above grade;

    **c.** **FLOODWATER ENTRY AND EXIT.** Openings may be equipped with screens, louvers, or other coverings or devices provided that they permit the automatic entry and exit of floodwaters.

**4.** **RECREATIONAL VEHICLES.** All recreational vehicles shall be fully licensed and ready for highway use; or meet the floodplain development permit requirements and elevation and anchoring requirements for manufactured/ mobile homes.

**5.** **BRIDGES.** All bridges shall include a minimum one foot clearance, between the lowest horizontal member and the base flood elevation.

**6.** **NO INCREASED RISK.** No structures shall be erected and no activity take place in a manner or location that would increase the risk of flood damage to the property or personal safety of others, or would shift the hazard onto another owner's property.

**L.** **FLOODPLAIN DEVELOPMENT PERMIT REQUIRED.** A Floodplain Development Permit shall be obtained from the Planning Department before any development begins within the 100-year floodplain.

    **1.** **FLOODPLAIN DEVELOPMENT PERMIT APPLICATION.** The Planning Department shall provide and the applicant shall complete an application form for floodplain development that at a minimum shall include:

        **a.** **ELEVATION CERTIFICATE.** A copy of an Elevation Certificate, in a form prescribed by FEMA, with applicable sections completed, including certification by a qualified professional engineer licensed in the State of Colorado, is required for any proposed structure. Colorado Professional Engineers should use methodology acceptable to the Federal Emergency Management Agency, including methods noted in *Managing Development in Floodplains in Approximate A Zone Areas - A Guide For Obtaining and Determining Base (100-year) Flood Elevations,* FEMA publication 265, April 1995.

        **b.** **BUFFER AREA COMPLIANCE.** Evidence of compliance with Section 11-107: *Protection of Water Quality,* if applicable;

        **c.** **WETLANDS PROTECTION COMPLIANCE**. Evidence of compliance with Section 404 of the *Federal Clean Water Act* concerning protection of wetlands, if applicable;

        **d.** **ISDS COMPLIANCE.** Evidence of compliance with the *Gunnison County Individual Sewage Disposal System Regulations,* if applicable;

        **e.** **MAPS AND PLANS.** Maps and plans stamped by a qualified professional engineer licensed in the State of Colorado showing:

            **1.** **SITE LOCATION;**

            **2.** **LEGAL DESCRIPTION.** Legal description of parcel;

            **3.** **BOUNDARIES.** Boundaries of 100-year floodplain;

            **4.** **WATERCOURSES.** Names and locations of all watercourses, ponds, lakes, and other bodies of water;

            **5.** **ELEVATION**. Elevation in relation to mean sea level of the lowest floor (including basement) of all new or substantially improved structures, and a statement whether or not they structures contain basements;

            **6.** **PROPOSED FLOOD PROOFING.** Proposed elevations in relation to mean sea level that structures will be, or have been flood proofed, if applicable;

            **7.** **ROADWAYS.** Location of existing roads and utilities;

            **8.** **WATER SUPPLY.** Existing water supply ditches, irrigation ditches and laterals;

            **9.** **CROSS-SECTIONS**. Typical valley cross-section (where required) showing:

BLM_0053402

     **(a.) WATERCOURSE CHANNELS**. Channels of any watercourses;

     **(b.) FLOODPLAIN LIMITS**. Limits of floodplain adjoining each side of channel;

     **(c.) FLOODWAY DELINEATION**. Delineation of floodway, if applicable;

     **(d.) DEVELOPMENT SITE.** Area to be occupied by the proposed development;

10. **ALTERATION OF WATERCOURSE**. A description of the extent to that any watercourse is proposed to be altered or relocated as a result of the proposed development;

11. **DRAINAGE FACILITIES.** A description of proposed drainage system including, if appropriate, design drawings and construction specifications showing typical sections and noting standards to be applied;

12. **CONSTRUCTION SPECIFICATIONS.** Design and construction specifications for structures, flood proofing, bridges, filling, dredging, grading, channel improvements, storage of materials and utilities, as applicable;

13. **INDIVIDUAL SEWAGE DISPOSAL SYSTEMS LOCATIONS.** Location of individual sewage disposal systems, if applicable;

14. **ADDITIONAL APPLICABLE INFORMATION.** Such additional information as may be required by the Planning Department, to determine if the requirements of this Section have been or will be fulfilled.

2. **ACTION ON FLOODPLAIN DEVELOPMENT PERMIT APPLICATIONS.**

    a. **PLANNING DEPARTMENT REVIEW.** The Planning Department shall review all submitted information, shall evaluate the suitability of the proposed use in relation to the flood hazard, and may forward any application to the appropriate Colorado agency, or to an engineering firm of the County's choice, to review the application and provide technical expertise in evaluating the flood potential of a given site.

    b. **PLANNING DEPARTMENT APPROVAL OR DENIAL.** If the Planning Director determines that the application for a Floodplain Development Permit meets the requirements of this Section, he shall sign and issue the permit and may attach any conditions as deemed necessary to ensure compliance with this Section. If the Director determines that the requirements cannot reasonably be met, the application shall be denied.

3. **APPEAL OF ACTION ON FLOODPLAIN DEVELOPMENT PERMITS.** The applicant, or any affected person aggrieved by a decision on an application for a Floodplain Development Permit, may appeal such decision by filing a written appeal. The appeal shall follow the process outlined in Section 8-103: *Appeals,* and shall be limited solely to the question of the action taken on the Floodplain Development Permit application. The Board's decision on such appeal shall be final and subject only to judicial review.

4. **EXPIRATION OF FLOODPLAIN DEVELOPMENT PERMIT**. A Floodplain Development Permit shall expire two years after the date of issuance if the permit holder has not begun construction pursuant to the permit.

M. **REQUIREMENT FOR BASE FLOOD ELEVATION CERTIFICATE.** A Base Flood Elevation Certificate shall be provided to the Planning Department before any Building Permit is issued for construction within the 100-year floodplain.

1. **PRE-CONSTRUCTION**. A base flood elevation certificate, completed as required by FEMA, shall be submitted for each structure to be constructed within the 100-year floodplain, and is subject to review and approval by the Planning Department before any grading or Building Permit is issued for the structure.

2. **POST-CONSTRUCTION**. After completion of each structure constructed within the 100-year floodplain, the remaining applicable Sections of the elevation certificate shall be completed by the applicant and is subject to review and approval by the Planning Department before a Certificate of Occupancy is issued.

N. **VARIANCES FROM THIS SECTION**. Any property owner seeking relief from the requirements of this, other than Section 11-103.: H. 1. *Uses Permitted in the Floodway* and Section 11-103: H.2. *Uses Prohibited in the Floodway* may file a variance request to the Board.

BLM_0053403

1. **USES FOR WHICH VARIANCES MAY BE GRANTED**. Variances may be issued for new construction and substantial improvements and for other development necessary for the conduct of a functionally dependent use, provided that the requirements for a Floodplain Development Permit and Federal 404 permit are met.

2. **APPLICATION FORM FOR VARIANCE**. The Planning Department shall provide an application form for variance from this Section. At a minimum, the form shall include:

   a. **APPLICANT**. The applicant's name, address, telephone and fax numbers, and e-mail address, if applicable. If the applicant is to be represented by an agent, a notarized letter signed by the applicant shall be submitted, authorizing the agent to represent the applicant and stating the representative's name, address, and telephone number.

   b. **PROPERTY OWNER**. Name of the owner of the property; if different than the applicant, submit a notarized letter from the owner consenting to the application, must be submitted.

   c. **PRIMARY CONTACT PERSON/AUTHORIZED REPRESENTATIVE**. Name of the primary person and/or authorized representative with whom the Planning Office should be communicating.

   d. **PROPERTY LOCATION**. The legal description (referencing lot and block or tract numbers, homesteads), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property, and/or a metes and bounds description should be included.

   e. **PRESENT LAND USE**. Identify present land uses and locations and sized of structures that exist on the property.

   f. **DESCRIPTION OF VARIANCE REQUESTED**. A description of the requested variance, citing this Section and the specific section from which the variance is requested and why the variance is requested. The applicant shall also address how the request meets the standards of Section 11-103: N. 6: *Criteria for Evaluating Variance Requests.*

3. **PLANNING DEPARTMENT REVIEW AND REPORT**. The Planning department shall review the application, and prepare a report that, at a minimum, describes the proposed application for variance, its compliance with Section 11-103: N. 6.: *Criteria for Evaluating Variance Requests*, and that includes copies of, or reference to, engineering reports or similar data that address the application.

4. **MEETING WITH BOARD**. Once a completed application is received, a meeting will be scheduled on the next available Board agenda. No public hearing is required.

   a. **PLANNING DEPARTMENT REPORT**. The Planning Department shall present its report.

   b. **APPLICANT PRESENTATION**. The applicant shall, at his/her choice, present the application for variance, and the reasons for requesting it.

5. **BOARD DECISION**. The Board shall make a decision to deny, approve, or approve with conditions, having considered Section 11-103: N. 6: *Criteria for Evaluating Variance Requests*, and having made relevant findings based on Section 11-103: N. 7: *Findings for Approval of Variance Requests.*

6. **CRITERIA FOR EVALUATING VARIANCE REQUESTS**. In reviewing variance requests, the Board shall consider all technical evaluations, all relevant factors, the requirements and standards in this Section, and the following:

   a. **POTENTIAL FOR DEBRIS TRANSPORT**. The danger that materials may be carried by flood waters onto other lands to the injury of others;

   b. **HAZARD TO LIFE AND PROPERTY**. The danger to life and property due to flooding or erosion damage;

   c. **SUSCEPTIBILITY TO FLOOD DAMAGE**. The susceptibility of the proposed facility and its contents to flood damage and the effect of such damage on the individual owner;

   d. **VALUE OF FACILITY TO THE COMMUNITY.** The importance of the services provided by the proposed facility to the community;

   e. **IMPORTANCE OF LOCATION**. The necessity of a waterfront location, where applicable;

   f. **COMPATIBILITY**. The compatibility of the proposed use with existing development;

BLM_0053404

**g.** **RELATIONSHIP WITH OTHER PLANS AND PROGRAMS**. The relationship of the proposed use to any adopted area plan, and floodplain management program for that area;

**h.** **ACCESS SAFETY**. The safety of access to the property in times of flood for ordinary emergency vehicles;

**i.** **CHARACTERISTICS OF FLOODING**. The expected heights, velocity, duration, rate of rise and sediment transport of the flood waters and the effects of wave action, if applicable, expected at the site;

**j.** **PUBLIC COSTS**. The costs of providing governmental services during and after flood conditions, including maintenance and repair of roads, bridges and utilities; and

**k.** **AVAILABILITY OF ALTERNATIVE LOCATIONS**. The availability of alternative locations not subject to flooding or erosion damage.

**7.** **FINDINGS FOR APPROVAL OF VARIANCE REQUESTS**. Variances shall be approved by the Board, only upon the following Findings:

**a.** **THE USE IS A REGISTERED HISTORIC PLACE**. The use is the reconstruction, rehabilitation or restoration of structures listed on the National Register of Historic Places or the Colorado Inventory of Historic Places; or

**b.** **GOOD CAUSE**. There is good and sufficient cause; and

**c.** **EXCEPTIONAL HARDSHIP**. A determination that failure to grant the variance would result in exceptional hardship to the applicant; and

**d.** **NO ADDITIONAL THREATS TO PUBLIC SAFETY**. A determination that the granting of the variance will not result in increased flood heights, additional threats to public safety, or extraordinary public expense; and

**e.** **COMPLIANCE WITH OTHER REGULATIONS**. There is no conflict with other codes or regulations adopted and administered by Gunnison County; and

**f.** **ONLY METHOD TO AFFORD RELIEF**. A determination that the variance is the minimum necessary, considering the flood hazard, to afford relief; and

**g.** **REQUEST IS NOT A SELF-IMPOSED HARDSHIP**. A determination that the special circumstances and conditions have not resulted from any act of the applicant, or his/her predecessor.

**8.** **NOTICE TO APPLICANT**. Any applicant to whom a variance is granted shall be given written notice that the structure will not be permitted to be built with a lowest floor below the base flood elevation and that the cost of flood insurance will be commensurate with the increased risk resulting from the reduced lowest floor elevation.

**9.** **EFFECTIVE DATE FOR VARIANCES**. The variance shall become effective as of the approval date.

**10.** **EXPIRATION OF VARIANCES**. Variances from the requirements of this Section shall expire two years after the date of approval if the permit holder has not begun construction as permitted by the variance.

**O.** **RECORD KEEPING REQUIREMENTS**.

**1.** **ELEVATION CERTIFICATES**. The Planning Department shall keep on file an elevation certificate for each building constructed or flood proofed, and for which a Building Permit was issued in the 100-year floodplain after the effective date of this *Resolution*.

**2.** **REPORTING VARIANCES**. The Planning Department shall report any variances granted in an annual report to FEMA.

**3.** **LETTERS OF MAP AMENDMENT OR MAP REVISION**. The Planning Department shall keep on file any Letters of Map Amendment or Map Revision approved by FEMA and not yet depicted on the Flood Insurance Rate Maps or Flood Insurance Study published by FEMA for Gunnison County.

**4.** **FLOOD STUDIES**. The Planning Department shall keep on file flood studies for use in implementing the requirements of this Section or as the basis for issuance of a Floodplain Development Permit.

**5.** **APPEALS AND VARIANCES**. The Planning Department shall keep on file a record of all actions of appeals and variances from the requirements of this Section, including technical information used as justification for their issuance.

BLM_0053405

6. **NOTIFICATION OF CHANGES TO WATERCOURSES.** The Planning Department shall notify adjacent communities, adjacent property owners who may be affected, and the Colorado Water Conservation Board before any alteration or relocation of a watercourse by publishing a notice once in a newspaper of general circulation in Gunnison County and shall submit evidence of such notification to FEMA.

P. **ENFORCEMENT OF FLOODPLAIN REGULATIONS.** It shall be illegal to erect, construct, reconstruct, alter, maintain or use any structure, or use any land in violation of this Section. Any person, firm or corporation violating any portion of these regulations may be subject to enforcement requirements pursuant to Article 16: *Enforcement*.

## SECTION 11-104: DEVELOPMENT IN AREAS SUBJECT TO GEOLOGIC HAZARDS

A. **PURPOSE.** There are certain lands in Gunnison County that have the potential to pose hazards to human life and safety and to property due to their geologic characteristics. Geologic hazard areas include avalanche areas, landslide areas, rockfall areas, alluvial fans, talus slopes, steep or potentially unstable slopes, Mancos shale, mudflow hazard areas, and faults.

This Section is intended to ensure that development avoids geologic hazard areas whenever possible. Where it is not possible for development to avoid these areas, standards are provided to reduce or minimize the potential impacts of these hazards on the occupants of the property and the occupants of adjacent properties, and to reduce or minimize the environmental impacts of development in these areas.

B. **MAPS INCORPORATED.** The Gunnison County Geologic Hazard Maps, prepared by the Colorado Geologic Survey, are incorporated into this *Resolution* by Section 1-112: *Use of Maps*. Copies of the maps are available for review by the public in the Planning Department during normal business hours.

C. **APPLICABILITY.** The requirements of this Section shall apply to land use changes in the following areas:

1. **AREAS DESIGNATED ON THE GEOLOGIC HAZARD MAPS.** Land use changes on lands that are designated on the Gunnison County Geologic Hazards Maps as avalanche areas, landslide areas, rockfall areas, alluvial fans, talus slopes, steep or potentially unstable slopes, Mancos shale, mudflow hazard areas, and faults.

2. **AREAS NOT INCLUDED, OR NOT DESIGNATED ON THE GEOLOGIC HAZARD MAPS.** Proposed land use changes in areas of the County not mapped on the County's Geologic Hazard Maps and proposed land use changes on lands shown on the maps, but that are not designated as being located in one of the above-listed geologic hazards, and have been identified by Planning Department onsite observation, or by an evaluation by a qualified professional engineer licensed in the State of Colorado, or other similarly qualified source as potentially being in a geologic hazard area may be reviewed as at least an Administrative Review project, and to mitigate any applicable geologic hazard pursuant to this Section, before receiving a Building Permit.

D. **PLAN REQUIRED TO BE SUBMITTED SHOWING HAZARDS AND IDENTIFYING AVOIDANCE OR MITIGATION.** When a Land Use Change Permit is sought in areas that have been identified on the Gunnison County Geologic Hazard Maps as being in a geologic hazard area, a copy of the mapped area, or in areas identified in Section 11-104: C. 2: *Areas Not Included, or Not Designated on the Geologic Hazard Maps*; and a narrative indicating how the hazard will be avoided or mitigated pursuant to this Section is required to be included as part of the submittal.

E. **REFERRAL TO COLORADO GEOLOGIC SURVEY.** When a Land Use Change Permit is sought in areas that have been identified on the Gunnison County Geologic Hazard Maps as being in a geologic hazard area, the Planning Department shall submit the application to the Colorado Geological Survey (CGS), for review and comment. The application will be subject to that agency's standard process and fee schedule.

1. **REVIEW BY CGS.** As statutorily required by the State, CGS will review the application and provide comments to the Planning Department. The purpose of this review is to make use of the expertise and judgment of CGS to evaluate the potential impacts of these hazards on development, and to determine the appropriate avoidance or mitigation techniques that should apply to the proposed development.

2. **DETERMINATION BY CGS.** If CGS determines there are geologic hazards on the property that have not been adequately addressed by the applicant, or that the application is otherwise incomplete or inadequate, the County shall require the applicant to revise the application to address those hazards.

BLM_0053406

**F. STANDARDS APPLICABLE TO LAND USE CHANGES IN ALL GEOLOGIC HAZARD AREAS**. The following standards shall apply to land use changes in all geologic hazard areas:

1. **RESIDENTIAL BUILDING IN AVALANCHE RED ZONE IS PROHIBITED**. Residential building shall be prohibited in the Red Zone areas of avalanche.

2. **USES CAUSING UNDUE DANGER OR SUBSTANTIAL PUBLIC EXPENSE ARE PROHIBITED**. Any land use change proposed in geologic hazard areas that subject people (including emergency service personnel and residents of neighboring properties) to undue dangers, or that will possibly result in substantial public expenses required to mitigate hazardous conditions, respond to emergencies created by such conditions, or rehabilitate infrastructure or lands, or that cannot otherwise be accomplished in a manner that the applicant demonstrates will be safe, shall be prohibited.

3. **DEVELOPMENT IN AVALANCHE BLUE ZONES, ROCKFALL, LANDSLIDE, ALLUVIAL FANS AND MUDFLOW HAZARD AREAS, FAULTS AND TALUS SLOPES**. A land use change may be permitted in the Blue Zone of an avalanche hazard area, or in a rockfall, or landslide hazard area, alluvial fan, mudflow hazard areas, faults or talus slope, when the applicant demonstrates that:

   a. **HAZARD CANNOT BE AVOIDED**. The land use change cannot avoid the hazard area because there are no hazard-free areas on the property, or no hazard-free routes to provide access to the development; and

   b. **RESTRICTED TO LEAST HAZARDOUS AREAS**. The land use change has been restricted to those areas on the property that are subject to the least degree of potential hazard and has been located as far away as possible from avalanche paths, landslide paths, rockfall paths, mudflow or alluvial fans, or faults.

4. **LIMITATIONS ON USES AND DENSITY**. When there are no hazard-free areas on a property or no hazard-free routes to provide access, then to prevent or minimize potential dangers, the land uses shall be subject to the following mitigation standards:

   a. **HAZARDS WILL BE MITIGATED**. Site planning and engineering techniques will substantially mitigate any potential hazards to public health, safety and welfare;

   b. **NOT INITIATE OR INTENSIFY ADVERSE NATURAL CONDITIONS**. The proposed development activities will not cause or intensify adverse natural conditions in a geologic hazard area;

   c. **COMPLY WITH GENERALLY APPLICABLE STANDARDS**. The land use change will comply with this Section; and

   d. **COMPLY WITH STANDARDS FOR PARTICULAR HAZARD**. The land use change will comply with the applicable standards for the particular type of hazard, in Section 11-104: G: *Standards Applicable to Development in Particular Geologic Hazard Areas.*

5. **WARNING AND DISCLAIMER**. As a condition of approval of the proposed land use change, the following language shall be included on the Final Plat for a subdivision, and within the applicable recorded document that approves the Land Use Change Permit, the applicant shall sign the following warning and disclaimer:

   WARNING AND DISCLAIMER OF GEOLOGIC HAZARDS
   AFFECTING USE AND OCCUPANCY OF THIS PROPERTY

   *"I/We, _____ (owner(s) of property) on behalf of myself/ourselves and all successors, heirs and assigns, hereby acknowledge having been informed by Gunnison County of the existence of geologic hazard areas that may affect the use and occupancy of this property, and any improvements thereto. I/We acknowledge that the County's approval of this land use change does not guarantee the safety of the property, or in any way imply that areas outside of the designated hazard areas will be free from hazards and hereby agree to indemnify, defend and save harmless the County, its agents, officers and employees from and against any and all liability, expense including defense costs and legal fees, and claims for damages of any nature whatsoever, including, bodily injury, death, personal injury, or property damage arising from or connected with any activity related to these hazards, including any suits, liability, or expense."*

6. **DESIGN BY A QUALIFIED PROFESSIONAL ENGINEER LICENSED IN THE STATE OF COLORADO OR OTHER QUALIFIED PROFESSIONAL**. When the collection and submittal of data, and design of structural or mechanical elements are required by this Section, the data and design shall be shall be based

BLM_0053407

on site-specific geo-technical analysis and recommendations certified by a qualified professional engineer licensed in the State of Colorado, or by a qualified professional geologist.

**7. MEASURES REQUIRED BEFORE OR DURING INITIAL CONSTRUCTION**. When an applicant is permitted to develop in an area that is subject to geologic hazards, the applicant shall construct, install, or otherwise provide all required measures to mitigate the geologic hazards to the maximum extent feasible before or at the time of initial construction. This requirement shall also apply to the roads and utilities that serve permitted uses.

**G. STANDARDS APPLICABLE TO DEVELOPMENT IN PARTICULAR GEOLOGIC HAZARD AREAS.** All land use changes in areas identified as geologic hazards in 11-104: C: *Applicability*, or in areas determined to be geologic hazards, pursuant to Section 11-104: E. 2: *Determination by CGS*, shall comply with Section 11-104: F: *Standards Applicable to Land Use Changes in All Geologic Hazard Areas*, and with the following hazard-specific requirements and standards:

**1. DEVELOPMENT IN AVALANCHE HAZARD AREAS**. Development shall permitted to occur in avalanche hazard areas only when the applicant demonstrates that the development cannot avoid such areas, pursuant to Section 11-104: F. 3.: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and that it complies with the following minimum requirements and standards, as certified by a qualified professional engineer licensed in the State of Colorado or qualified professional geologist specializing in avalanche hazard area identification and analysis, and approved by the County:

    **a. AVALANCHE PATH DELINEATION AND HAZARD DESIGNATION**. When development is proposed in or adjacent to potential avalanche paths, as determined by Gunnison County, the magnitude and frequency of the avalanche path affecting the development shall be defined as follows:

        **1. RED (HIGH HAZARD) ZONE**. The Red Zone is an area affected by avalanches with return periods of 30 years or less and/or by avalanches producing impact pressures on flat surfaces normal to the flow direction of 600 lbs./ft.$^2$ or more. Residential building construction shall be prohibited in Red Zones; driveways and subdivision roads shall avoid areas where avalanches have return periods of fewer than 10 years; utilities shall be buried or otherwise designed to minimize avalanche exposure.

        **2. BLUE (SPECIAL ENGINEERING) ZONE.** The Blue Zone is an area affected by avalanches with return periods of more than 30 but fewer than 300 years and by avalanches capable of producing impact pressures on flat surfaces normal to the flow direction of less than 600 lbs./ft.$^2$. Residential building construction shall be permitted in the Blue Zone only if that construction has been certified by a qualified professional engineer licensed in the State of Colorado to withstand avalanche impact and static loads and that the structure has been otherwise protected by external avalanche-defense structures that have been similarly certified by that engineer, and the following standards have been met:

            **(a.) DESIGN LOADING AND OTHER DESIGN CRITERIA**. Design-loading criteria and other criteria used to design avalanche defense structures shall be developed on a site-specific basis by the engineer, who must explicitly identify the methods used to develop those criteria.

            **(b.) STRUCTURAL BARRIERS**. When the proposed location of development alone will not provide adequate protection for people and structures from avalanche hazards, then structural barriers shall be placed in the avalanche starting zone, track or runout zone (including, but not limited to excavations, berms, dams, retaining structural walls, direct protection structures and similar devices), or accepted avalanche diversion or control practices shall be used.

                **(1.) DESIGN**. All proposed structural barriers shall be designed to withstand snow creep and vertical forces, avalanche impact and deposition forces, and air pressures. The proposed locations, dimensions, and specifications of those structural barriers shall be included in the application. The dynamic characteristics of the design avalanche upon which the structural design is based shall be specified, including avalanche runout distance, velocity, flow depth, density and impact pressure potential.

            **(c.) DIVERTED PATH**. If an application proposes to divert potential avalanches from the proposed development or in any manner alter an existing avalanche path, the plans shall clearly show the anticipated path the diverted avalanche is expected to follow.

BLM_0053408

b. **RISK OF HAZARD SHALL NOT BE INCREASED.** No device to be constructed as a barrier against potential avalanches or alteration of an existing avalanche path shall be designed in a manner or location that would increase the risk of avalanche damage to the property or personal safety of others, or would shift the hazard onto another owner's property.

c. **ROADS SHALL AVOID AREAS OF RETURN FEWER THAN TEN YEARS.** Roads intended for winter use shall avoid areas where avalanches with return periods of fewer than 10 years cross roads. If it is not possible to design the road to avoid avalanche hazard areas, then the road shall be designed to limit the exposure of users to the hazard and to use avalanche control practices to reduce the danger along exposed road segments. Where the main access road (whether public or private) to a proposed land use change is crossed by an avalanche path, then a secondary access way may be required, or the road may be subject to periodic or seasonal closures in order to avoid unnecessary exposure to the danger.

d. **UTILITIES.** All utilities shall be located and constructed to minimize or eliminate the possibility of damage to them by an avalanche. This shall include burying utility lines that cross avalanche hazard areas and protecting above-ground utility facilities located in moderate or high avalanche hazard areas by the use of avalanche barriers or diversion techniques.

e. **VEGETATION REMOVAL.** Clear-cutting, or other large-scale removal of vegetation in avalanche path starting zones or in other locations that can increase the potential avalanche hazard on the property, shall be prohibited.

f. **NOTICE OF HAZARD.** In the application, the applicant shall describe the methods to be employed to give notice to the public and to prospective purchasers of the subject property that an avalanche hazard exists, including the following:

   1. **WARNING SIGNS.** Placement of warning signs on any road or trail that crosses an avalanche path; and

   2. **DEED RESTRICTIONS, PROTECTIVE COVENANTS AND PLAT NOTES.** Proposed deed restrictions, protective covenants, and plat notes identifying special structural requirements to be imposed upon structures built in the development or any seasonal use limitations designed to protect them and their inhabitants from avalanche damage.

g. **OWNERS SHALL BE RESPONSIBLE.** Property owners who develop in, construct, implement, maintain, improve and bear the cost of their development's proportionate share of all reasonable measures necessary to mitigate any avalanche related hazard created by such development.

h. **EXTRACTIVE OPERATIONS.** Extractive operations in avalanche hazard areas shall be prohibited when snow is on the ground in the proximity of the operation, unless a program of avalanche control and defense measures has been approved by the County to protect the operation.

2. **DEVELOPMENT IN LANDSLIDE HAZARD AREAS.** Development shall be permitted to occur in landslide hazard areas only if the applicant demonstrates that the development cannot avoid such areas, pursuant to Section 11-104: F. 3.: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and the development complies with the following minimum requirements and standards, as certified by a qualified professional engineer licensed in the State of Colorado or qualified professional geologist.

   a. **CONSTRUCTION PRACTICES.** When the proposed location of development alone will not provide adequate protection for people and structures from landslide hazards, then the applicant shall also comply with construction practices recommended by a qualified professional engineer licensed in the State of Colorado, or by a qualified professional geologist, and approved by the County to artificially stabilize, support, buttress or retain the potential slide area and to control surface and subsurface drainage that affects the slide area. The proposed locations, dimensions, and specifications of such mitigation measures shall be included in the application.

   b. **PROHIBITED ACTIVITIES.** The following development activities shall be prohibited in landslide hazard areas:

      1. **ADD WATER OR WEIGHT.** Activities that add water or weight to the top of the slope, or along the length of the slope, or otherwise decrease the stability of the hazard area. Measures and structural improvements to permanently control surface and subsurface drainage from the development shall be required.

BLM_0053409

2. **REMOVE SUPPORT MATERIAL**. Activities that remove vegetation or other natural support material that contributes to its stability.

3. **INCREASE STEEPNESS OF SLOPE**. Activities that increase the steepness of a potentially unstable slope.

4. **REMOVE TOE OF LANDSLIDE**. Activities that remove the toe of the landslide, unless adequate mechanical support is provided.

3. **DEVELOPMENT IN ROCKFALL HAZARD AREAS**. Development shall be permitted to occur in rockfall hazard areas only if the applicant demonstrates that the development cannot avoid such areas, pursuant to Section 11-104: F. 3: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and the development complies with the following minimum requirements and standards, as certified by a qualified professional engineer licensed in the State of Colorado or qualified professional geologist:

   a. **CONSTRUCTION PRACTICES**. When the proposed location of development alone will not provide adequate protection for people and structures from rockfall hazards, then the applicant shall comply with construction practices recommended by a qualified professional engineer licensed in the State of Colorado, or by a qualified professional geologist, and approved by the County, designed to minimize the degree of hazard. The proposed locations, dimensions and specifications of such practices shall be included in the application, along with requirements for periodic maintenance of any measures that are installed. Construction practices may include:

      1. **STABILIZATION**. Stabilizing rocks by bolting, gunite application (cementing), removal of unstable rocks (scaling), cribbing, or installation of retaining walls;

      2. **CATCHING, SLOWING OR DIVERTING ROCKS**. Slowing or diverting moving rocks with rock fences, screening, and channeling, damming, or constructing concrete barriers or covered galleries. If an applicant proposes to divert a potential rockfall from the development or to alter an existing rockfall path in any manner, the plans shall clearly specify the dynamics of the design rockfall event upon which the proposed mitigation is based, including rock source area, mass, velocity, bounce height, and energy. When rocks are to be diverted, the plans shall clearly show the anticipated path the diverted rockfall is expected to follow; and

      3. **BARRIERS**. Installation of physical barriers around vulnerable structures to prevent rock impact.

   b. **RISK OF HAZARD SHALL NOT BE INCREASED**. No device to be constructed as a barrier against potential rockfall or alteration of an existing rockfall path shall be designed in a manner or location that would increase the risk of rockfall or other damage to the property or personal safety of others, or create an increased hazard, or would shift the hazard onto another owner's property.

   c. **PROHIBITED ACTIVITIES**. The following development activities shall be prohibited in rockfall hazard areas:

      1. **ADD WATER OR WEIGHT**. Activities that add water or weight to, or otherwise decrease the stability of, cliffs or overhanging strata.

      2. **REMOVE SUPPORT MATERIAL**. Activities that remove vegetation or other natural support material, or that make excavations or cause erosion that will reduce the stability of, or remove underlying support to, a rockfall hazard.

4. **DEVELOPMENT IN ALLUVIAL FAN HAZARD AREA**. Development shall only be permitted to occur in an alluvial fan only if the applicant demonstrates that the development cannot avoid such areas, pursuant to Section 11-104: F. 3.: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and the development complies with the following minimum requirements and standards, as certified by a qualified professional engineer licensed in the State of Colorado or qualified professional geologist and approved by the County:

   a. **PROTECTIVE MEASURES**. The proposed development shall be protected, using structures or other measures on the uphill side of the proposed land use change that channelize, dam, or divert the potential mud or debris flow. The dynamics of the alluvial-fan process, including velocity, flow height, discharge, and impact-pressure potential upon which the protective measures are based shall be clearly specified.

   b. **DISTURBANCE ABOVE ALLUVIAL FAN**. Disturbance shall be prohibited in the drainage basin above an alluvial fan, unless an evaluation of the effect on runoff and stability of the fan and on the

BLM_0053410

ground water recharge area conducted by a qualified professional engineer licensed in the State of Colorado, or a qualified professional geologist shows that disturbance is not substantial or can be successfully mitigated.

**5.    DEVELOPMENT ON TALUS SLOPES**. Development shall be permitted to occur on a talus slope only if the applicant demonstrates that the development cannot avoid such areas, pursuant to Section 11-104: F.3: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and the development complies with the following minimum requirements and standards, as certified by a qualified professional engineer licensed in the State of Colorado or qualified professional geologist and approved by the County:

   **a.    WITHSTAND DOWN SLOPE MOVEMENT**. The development shall be designed to withstand down slope movement.

   **b.    BURIED FOUNDATION AND UTILITIES.** The design shall include buried foundations and utilities below the active talus slope surface.

   **c.    MINIMIZE SITE DISTURBANCE**. Site disturbance shall be minimized, to avoid inducing slope instability.

   **d.    REMOVAL OF TOE OF SLOPE.** The toe of a talus slope shall not be removed, unless adequate mechanical support is provided.

**6.    DEVELOPMENT ON SLOPES GREATER THAN 30 PERCENT**. Development shall be permitted to occur on slopes greater than 30 percent only if the applicant demonstrates that the development cannot avoid such areas, pursuant to Section 11-104: F. 3.: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and the development complies with the following minimum requirements and standards, as certified by a qualified professional engineer licensed in the State of Colorado or qualified professional geologist:

   **a.    CUTTING AND FILLING**. Cutting, filling, and other grading activities shall be confined to the minimum area necessary for construction and shall comply with the requirements of Section 13-116: *Grading and Erosion Control*, and Section 13-117: *Drainage, Construction and Post-Construction Storm Water Runoff.*

   **b.    DESIGN SHALL FIT SITE**. Development shall be located and designed to follow natural grade, rather than adjusting the site to fit the structure. For example, instead of creating a single flat bench or terrace for a building platform, the structure should instead be stepped up or down the hillside. Roads and driveways built to serve the development shall follow the contours of the natural terrain and, if feasible, shall be located behind existing landforms. When applicable possible, driveways that serve more than one lot are encouraged required, to minimize necessary grading, paving and site disturbance.

   **c.    RECLAMATION OF DISTURBED AREAS**. Areas disturbed during development shall be restored as natural-appearing landforms that blend in with adjacent undisturbed slopes. Abrupt angular transitions and linear slopes shall be avoided. Areas disturbed by grading shall be contoured so they can be re-vegetated, and shall be planted and shall have vegetation established and growing within two growing seasons, using species with a diversity of native and/or desirable non-native vegetation capable of supporting the post-disturbance land use. Species planted shall include those that will provide for quick soil stabilization, provide litter and nutrients for soil building and are self-renewing. Top soil shall be stockpiled and placed on disturbed areas. Retaining walls made of wood, stone, vegetation or other materials that blend with the natural landscape should be used to reduce the steepness of cut slopes and to provide planting pockets conducive to revegetation. Where such materials cannot be used, masonry that conveys a scale and texture similar to that of traditional surrounding rock walls shall be used.

   **d.    UTILITIES.** Utilities serving the development shall be placed underground, in existing or proposed road rights-of-way, to the maximum extent feasible, unless such placement would cause significant disturbance to a sensitive natural area or feature. Underground utility easements shall have vegetation established and growing within two growing seasons.

   **e.    DEVELOPMENT PROHIBITED**. Development shall be prohibited on any slope in excess of 30 percent that is also located in an area that is determined to be a severe wildfire hazard area, pursuant to Section 11-104: C: *Applicability.*

**7.    UNSTABLE OR POTENTIALLY UNSTABLE SLOPES**. If a site is designated on the Gunnison County Geologic Hazard Maps, or are otherwise identified in Section 11-104: C.2.: *Areas Not Included or Not*

BLM_0053411

*Designated on the Geologic Hazard Maps* as having moderate or extremely unstable slopes, then development shall be permitted only if the applicant demonstrates that the development cannot avoid such areas pursuant to Section 11-104: F. 3.: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and the development complies with geotechnical design and construction stabilization and maintenance measures as certified by a qualified professional engineer licensed in the State of Colorado or qualified professional geologist and approved by the County. Practices that shall be avoided on unstable slopes include:

    **a.** **CUTTING INTO A SLOPE.** Cutting into the slope without providing adequate mechanical support;

    **b.** **ADDING WATER OR WEIGHT.** Decreasing slope stability by adding water or weight to the top of the slope, or along the length of the slope;

    **c.** **REMOVING VEGETATION.** Removing vegetation from the slope without timely replacement and ensured viability of similar vegetation; and

    **d.** **OVER-STEEPENING.** Activities that over-steepen the existing grade of an unstable slope.

**8.** **DEVELOPMENT ON MANCOS SHALE.** Development in a Mancos shale area shall be designed based upon an evaluation of the development's effect on slope stability and shrink-swell characteristics. Development shall be permitted only if the applicant demonstrates that the development cannot avoid such areas pursuant to Section 11-104: F. 3.: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and the development complies with design, construction stabilization, and maintenance measures as certified by a qualified  professional engineer licensed in the State of Colorado or qualified professional geologist and approved by the County. At a minimum, development design shall:

    **a.** **DRAIN AWAY FROM FOUNDATIONS.** Provide positive surface drainage away from foundations and other such facilities; and

    **b.** **CONCENTRATE RUNOFF INTO NATURAL DRAINAGES.** Concentrate runoff from impervious surfaces into natural drainages, or onto another owner's property, so that no adverse impacts result, either to the development site, or to another owner's property.

**9.** **DEVELOPMENT IN MUDFLOW HAZARD AREAS.** Development shall be permitted in a mudflow hazard area only if the applicant demonstrates that the development cannot avoid such areas pursuant to Section 11-104: F.3.: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and the development complies with mitigating design, construction stabilization, and maintenance measures are used, as certified by a qualified professional engineer licensed in the State of Colorado or qualified professional geologist and approval by the County. Such measures may include channelization, diversion dikes, special foundations, and debris catchment basins.

**10.** **DEVELOPMENT OVER FAULTS.** Development shall be permitted over faults only if the applicant demonstrates that the development cannot avoid such areas pursuant to Section 11-104: F.3.: *Development in Avalanche Blue Zones, Alluvial Fans and Mudflow Hazard Areas* and the development complies with the design incorporates mitigation measures based on geotechnical analysis and recommendations conducted by a qualified professional engineer licensed in the State of Colorado, or by a qualified professional geologist and approved by Gunnison County.

## SECTION 11-105: DEVELOPMENT IN AREAS SUBJECT TO WILDFIRE HAZARDS

**A.** **PURPOSE.** There are certain types of lands in Gunnison County that may be hazardous to human life and safety and to property due to their potential for wildfire. The purpose of this Section is to ensure that development avoids these hazard areas whenever possible. When avoidance is not possible, to provide standards to reduce or minimize the potential threats that wildfire may pose to the safety of occupants, their property, and emergency service personnel.

**B.** **APPLICABILITY.** The requirements of this Section shall apply to any development in areas designated as wildfire hazard areas on the Wildfire Hazard Maps, and in areas where the Colorado State Forest Service determines that there is the potential for a proposed development to be threatened by a wildfire hazard.

**C.** **MAPS INCORPORATED.** The Gunnison County Wildfire Hazard Maps, prepared by the Colorado State Forest Service, shall be used as references for determining when parcels are located within wildfire hazard areas, pursuant to Section 1-112: *Use of Maps.* Where areas have not been mapped, review and analysis by the

BLM_0053412

Colorado Forest Service shall determine the status of wildfire hazards. Copies of the maps are available for public review in the Planning Department during normal business hours.

**D.   REFERRAL TO AND REVIEW BY COLORADO STATE FOREST SERVICE.** The Planning Department may submit any application to the Colorado State Forest Service for review and comment, to use the expertise and judgment of that agency to evaluate the severity of potential wildfire hazards related to the proposed land use change, and to determine the appropriate avoidance or mitigation.

**E.   REFERRAL TO AND REVIEW BY APPLICABLE FIRE PROTECTION DISTRICT.** When a Land Use Change Permit is sought in an area located within a specific fire protection district the Planning Department may submit the application to that District for review and comment to use the District's expertise and judgment to evaluate whether the development has included design elements compatible with adopted District standards, and to recommend how the development can best provide fire prevention and suppression.

**F.   STANDARDS.** The following standards shall apply to land use changes in all wildfire hazard areas:

  **1.   GENERAL STANDARD.** All new construction, substantial improvement, use, fill, encroachments, alteration, fuel modification or treatment, except utility lines, on or over any portion of a wildfire hazard area, shall be designed so it does not increase the potential intensity or duration of a wildfire, or adversely affect wildfire behavior or fuel composition. Development that subjects persons (including emergency service personnel and residents of neighboring properties) to undue dangers, or that will result in substantial public expenses required to mitigate hazardous conditions, respond to emergencies created by such conditions, or rehabilitate infrastructure or lands, or that cannot otherwise be accomplished in a manner that the applicant demonstrates will be safe, shall be prohibited.

  **2.   PROHIBITED LOCATIONS FOR DEVELOPMENT.** Development shall not be located in any area designated as having severe wildfire hazard that also has slopes greater than 30 percent. Development shall also not be located in a fire chimney, as identified by the Colorado State Forest Service.

  **3.   WILDFIRE MITIGATION PLAN.** A wildfire mitigation plan addressing wildland urban interface design and land maintenance shall be required when a parcel is located within any wildfire hazard area as mapped by the Colorado State Forest Service (CSFS), and shall incorporate applicable methods of fire prevention as recommended within publications of the CSFS. The plan shall, at a minimum, include:

     **a.   CREATION OF DEFENSIBLE SPACE.** The inclusion of language in protective covenants enforceable by Gunnison County, or other similar recordable document, that refers property owners to publications of the CSFS, the Gunnison County Weed Specialist, the Gunnison County Public Works Department, or by Colorado State University regarding creating defensible space, using methods including but not limited to thinning around homes or other structures.

     **b.   NOT CAUSE ADVERSE IMPACTS.** When mitigating a wildfire hazard pursuant to this Section, applicants shall not cause soil erosion, remove existing vegetation, thin trees or create adverse impacts to wildlife to an extent beyond that which is necessary to mitigate the hazard effectively.

  **4.   LOCATION IN A FIRE PROTECTION DISTRICT.** All developments located in a specific fire protection district shall comply with the fire suppression requirements of that District, when those requirements are recommended by the District, and when determined by the County to be appropriate. When the District's standards conflict with County standards, the County shall only enforce the County standards.

  **5.   WILDFIRE PREVENTION STANDARDS TO BE ADDRESSED IN PROTECTIVE COVENANTS.** Development shall comply with the following standards. Assurances as to compliance with these standards shall be addressed in a recorded, permanent protective covenant enforceable by the County.

     **a.   FUEL MODIFICATIONS.** If the proposed development includes areas that have medium to severe fire hazard ratings, as determined by the Colorado State Forest Service, that can be reduced to lower hazard ratings through thinning, clumping, reduction of "ladder" fuels (vegetation that may allow a fire to burn from ground level to lower tree branches), removal of hanging limbs near chimneys, creation of defensible space around structures, or other such modifications, then such modifications shall be accomplished by the applicant.

     **b.   FUEL BREAKS.** Practical fuel break systems shall be installed as needed in locations that are approved by the Colorado State Forest Service.

     **c.   ROOF MATERIALS AND DESIGN.** Roof materials shall be made of noncombustible "Class A" materials and roofs shall employ a design that is pitched.

BLM_0053413

6. **SAFETY AREAS IN RESIDENTIAL DEVELOPMENT**. Areas designated by the applicable fire protection district as temporary public evacuation areas during fires shall be indicated by permanent signs along roads in developments. These areas shall also be designated on a final subdivision plat or final development plan for any development that is classified as a Major Impact project.

7. **CUL-DE-SACS**. Cul-de-sacs shall not cross major draws, canyons, or gullies conducive to fire spread, nor shall cul-de-sacs terminate in such draws, canyons or gullies. Cul-de-sacs shall have a turn-around pad at the end with a minimum radius of 45 feet and an all-weather gravel or paved surface of a minimum of 45 feet. Dead end roads without turn-around areas shall be prohibited.

8. **ROAD RIGHT-OF-WAY CLEARING**. All roads shall be cleared and maintained four feet from each edge of the road surface in the right-of-way,  so they are free from all living or dead flammable materials.

9. **ROAD GRADE**. All dedicated roads shall meet the minimum and maximum grade standards pursuant to the *Gunnison County Standards and Specifications for Road and Bridge Construction.*

10. **CLEAN-UP OF SLASH**. To minimize wildfire hazards and to avoid insects and diseases, the following actions shall be accomplished:

    a. **ROAD SLASH**. All cut combustible materials, vegetative residues, including fallen or cut trees and shrubs, pulled stumps, or other such flammable debris shall be disposed of by either chipping or removal from development roadside strips. These strips shall be 100-foot wide areas that parallel each side of the road, measured outward from the edge of the road right-of-way.

    b. **SLASH AROUND HOMES**. All vegetative residue, slashing, branches, limbs, stumps, roots, or other flammable debris shall be disposed of from around the home site areas by either chipping or removal before final building inspection approval. Home site areas shall include all areas of the lot in which the materials are generated or deposited.

    c. **FILLS**. Compacting slash and debris into roadbed fill areas shall be prohibited, but such materials may be buried in the road right-of-way outside the roadbed provided that the burial is done to minimize the potential for erosion.

11. **COMPLY WITH FIRE PROTECTION STANDARDS.** Developments in wildfire hazard areas shall also comply with the standards of Section 12-107: *Fire Protection.*

G. **WARNING AND DISCLAIMER**. As a condition of approval of the proposed land use change, the applicant shall sign the following warning and disclaimer that shall be included on the Final Plat of a subdivision, or within the applicable recorded document that approves the Land Use Change Permit:

**WARNING AND DISCLAIMER OF WILDFIRE HAZARDS**
**AFFECTING USE AND OCCUPANCY OF THIS PROPERTY**

"I/We_____ (owner(s) of property) on behalf of myself/ourselves and all successors, heirs and assigns, hereby acknowledge having been informed by Gunnison County of the existence of wildfire hazard areas that may affect the use and occupancy of the property, and any improvements thereto. I/We acknowledge that the County's approval of this land use change does not guarantee the safety of the property, or in any way imply that areas outside of the designated hazard areas will be free from hazards and hereby agrees to indemnify, defend and save harmless the County, its agents, officers and employees from and against any and all liability, expense including defense costs and legal fees, and claims for damages of any nature whatsoever, including bodily injury, death, personal injury, or property damage arising from or connected with any activity related to these hazards, including any suits, liability, or expense."

H. **OWNERS SHALL BE RESPONSIBLE**. Property owners who develop in, or have access through, areas subject to wildfire hazards shall be required to construct, implement, maintain, monitor, improve and bear the cost of their development's proportionate share of all reasonable measures necessary to mitigate any wildfire-related hazard created by such development.

## SECTION 11-106: PROTECTION OF WILDLIFE HABITAT AREAS

A. **PURPOSE.** The natural and scenic resources in Gunnison County, including wildlife, are essential components of the County's economic base and help to establish the rural character of the County. Tourists visit and recreate in Gunnison County because of the quality of these natural resources, including the abundance of wildlife species found in the area. These resources are also a basic element of the quality of life for residents of Gunnison County. The standards in this Section are intended to protect sensitive wildlife habitat areas, to

BLM_0053414

protect biological field research, and to ensure that wildlife remains a part of Gunnison County's natural environment for generations to come.

**B. APPLICABILITY.** The requirements of this Section shall apply to all lands designated as sensitive wildlife habitat The Wildlife Resource Information System (WRIS) and National Diversity Information Source (NDIS) maps available from the Colorado Division of Wildlife, and the Gunnison Basin Sage Grouse Habitat Maps (in the *Gunnison Sage Grouse Conservation Plan*) or their successors, and to lands designated pursuant to Section 11-106: C. 2: *Designation of Lands Not Designated on Maps.*

**C. MAPS IDENTIFIED.** The Wildlife Resource Information System (WRIS) and National Diversity Information Source (NDIS) maps available from the Colorado Division of Wildlife, and the Gunnison Basin Sage Grouse Habitat Maps (in the *Gunnison Sage Grouse Conservation Plan*) or their successors are the general reference maps that depict the locations of certain known sensitive wildlife habitat areas within Gunnison County. The purpose of these maps is to place a landowner on notice that land may contain sensitive wildlife habitat areas.

    **1. MAPS ARE GENERAL.** Because maps depicting wildlife habitat are general maps, and because animal distribution is fluid and animal populations are dynamic, the maps shall be used as "guides" or "red-flags." All areas mapped as sensitive wildlife habitat shall be verified on a site-specific basis by the applicant, in consultation with the Colorado Division of Wildlife, pursuant to Section 11-106: E: *Wildlife Habitat Analysis.*

        **a. SITE-SPECIFIC VERIFICATION PREVAILS.** If a site-specific review determines that the mapped areas do not provide sensitive wildlife habitat, then the requirements of this Section shall not apply to the proposed land use change.

    **2. DESIGNATION OF LANDS NOT DESIGNATED ON MAPS.** There may also be lands that provide sensitive wildlife habitat, but are not so designated on the Wildlife Habitat Maps. The County, in consultation with the Colorado Division of Wildlife or other qualified experts, may determine during review of the application that those lands provide sensitive wildlife habitat, and that land use changes proposed on those lands will be subject to the requirements of this Section. The Planning Commission may also determine that a Major Impact project proposed in areas that are adjacent to lands determined to be sensitive wildlife habitat could have an impact on the sensitive wildlife habitat and will be subject to the requirements of this Section.

**D. REFERRAL TO COLORADO DIVISION OF WILDLIFE.** The Planning Department shall refer Land Use Change Permit applications for Minor and Major Impact projects to the Colorado Division of Wildlife for that agency's review and comments to make use of the expertise and judgment of that agency in the protection of sensitive wildlife habitat, and its recommendations, if any, to reduce or eliminate adverse impacts to sensitive wildlife habitat and species that may result from proposed development.

    **1. MINOR IMPACT PROJECTS.** The Department shall submit a copy of the Minor Impact project application to the Division, with a written request that the Division review the application and identify in a written response whether or not the parcel on which the land use change is proposed is located within sensitive wildlife habitat, and issues that it believes appropriate to be addressed during the permitting process. Based upon the Division's knowledge of a specific site, the Division may also recommend that a wildlife habitat analysis be conducted, pursuant to Section 11-106: E: *Wildlife Habitat Analysis,* which shall be required to be submitted by the applicant before a public hearing is conducted on the application.

    **2. MAJOR IMPACT PROJECTS.** The Department shall submit a copy of the Sketch Plan for a Major Impact project application to the Division, with a written request that the Division review the application and identify in a written response whether or not the parcel on which the land use change is proposed is located within sensitive wildlife habitat and issues that it believes appropriate to be addressed during the permitting process. If the parcel is located within sensitive wildlife habitat, a wildlife habitat analysis conducted pursuant to Section 11-106: E: *Wildlife Habitat Analysis* shall be submitted by the applicant as part of the Preliminary Plan application. The Department shall also submit the Preliminary Plan to the Division with a written request for comment, pursuant to Section 7-302: C: *Review and Comment by Review Agencies.*

**E. WILDLIFE HABITAT ANALYSIS.** If Colorado Department of Wildlife comments indicate that the proposed land use change is within sensitive wildlife habitat, the applicant shall be required to submit a site-specific wildlife habitat analysis. The analysis shall evaluate the relevant physical features of the property, shall make a site-specific determination of the locations of wildlife habitat on the property, and shall describe how the proposed development will comply with Section 11-106: F: *Standards for Development in Wildlife Habitat Areas.* The analysis shall be prepared by a wildlife biologist/ecologist or similar qualified expert in consultation with the

Colorado Division of Wildlife. It shall be submitted with the Preliminary Plan application for a Major Impact project, or before the public hearing is conducted on a Minor Impact project, and shall contain the following:

1. **MAP.** A map of the property shall be submitted, depicting the activity patterns of the wildlife using the sensitive wildlife habitat, identifying, where relevant, migration routes, travel corridors or patterns, nesting, feeding, watering and production areas, and any critical connections or relationships with habitat adjoining, but outside of, the project site. The map shall also identify whether the land immediately surrounding the proposed land use change is privately owned or is public land owned by the U.S. Forest Service, U.S. Bureau of Land Management, Colorado Division of Wildlife, or other similar agency.

2. **REPORT.** A report shall be submitted that describes the activity patterns of the wildlife using the habitat, using a scientifically valid time period. It will also identify any species that use the property that are listed by the U.S. Department of the Interior or the State of Colorado as endangered, threatened, or are species of special concern.

   a. **EVALUATE IMPACTS.** The report shall evaluate the potential impacts of the proposed land use change on the sensitive wildlife habitat and the species using that habitat, including whether it could be a threat to the viability of the species, cause a reduction in the diversity of wildlife species in the county, or change the status of its federal or state listing. The report shall identify the types of potential impacts that are anticipated (including stress due to human presence, interference with reproduction, change of migration routes, etc.) and the time periods (spring, summer, fall, winter, year-round, etc.) during which wildlife are expected to be affected by the proposed land use change.

   b. **CUMULATIVE IMPACTS.** The report addressing any Major Impact project (and any proposed land use change classified as a Minor Impact project that the Planning Commission determines requires such evaluation) shall also evaluate the cumulative impacts on wildlife habitat beyond the project site. The report shall also address whether the cumulative impacts of the proposed land use change when added to the past and present impacts of other land use changes, will eliminate, reduce, or fragment wildlife habitat in the county to the extent that the viability of an individual species is threatened or the diversity of species found in the county is reduced, or the population of a species in the impact area will be significantly reduced.

   c. **MITIGATION PLAN.** The report shall include a wildlife habitat mitigation plan that describes how the proposed development will comply with Section 11-106: F: *Standards for Development in Wildlife Habitat Areas,* providing detail regarding the avoidance, mitigation, and enhancement techniques, monitoring and performance criteria that will be employed.

F. **STANDARDS FOR DEVELOPMENT IN WILDLIFE HABITAT AREAS**. All development located on lands designated as sensitive wildlife habitat and all lands determined to be sensitive wildlife habitat pursuant to Section 11-106: B: *Applicability,* shall comply with the following standards.

   1. **GENERAL**. A proposed land use change must mitigate adverse impacts it causes to lands determined to be sensitive wildlife habitat. Proposed land use changes that are found to have a significant net adverse impact upon sensitive wildlife habitat that cannot be mitigated shall be denied.

      a. **COMPENSATION.** Upon receipt of an application for development within lands mapped as, or determined to be sensitive wildlife habitat, designated state and local agencies shall be requested to explore methods for mitigating the potential loss of all reasonable economic use of such areas. Methods may include conservation easements, purchase for wildlife sanctuary, tax relief, and similar approaches.

      b. **MITIGATION TECHNIQUES**. Mitigation techniques to protect wildlife species that may be required for land use changes proposed on any lands identified in Section 11-106: C: *Applicability,* include:

         1. **LIMITATIONS.** Requirements to avoid sensitive wildlife habitat during seasons the wildlife species use the habitat. When appropriate, the proposal shall include techniques to minimize human intrusion, including:

            (a.) **BUFFERS**. Visual and sound buffers to screen structures and activity areas from habitat areas through effective use of topography, vegetation, and similar measures; and

            (b.) **LIMITATIONS OF HUMAN ACTIVITIES DURING SENSITIVE TIME PERIODS**. Seasonal limitations on, or stoppages of, intrusive human activities during sensitive time periods, including when elk migration or elk calving is occurring, or when sage grouse are mating and raising chicks; and

BLM_0053416

**(c.) LIMITATIONS OF RECREATIONAL USE DURING WILDLIFE CONCENTRATION.** Limitation on the recreational use of wildlife concentration areas during times of the year when wildlife concentration is occurring.

2. **LOCATIONAL CONTROLS.** Controls on the location of development, so it does not force wildlife to use new migration corridors, or expose wildlife to significantly increased predation, interaction with vehicles, intense human activity, or more severe topography or climate, or encircle wildlife habitat with development.

3. **VEGETATION.** Proposed land use changes shall be designed to comply with the recommendations of the Colorado Division of Wildlife regarding vegetation, and to preserve large areas of vegetation utilized by wildlife for food and cover. Roads shall be located on the edge of wildlife habitat areas, to prevent fragmentation of wildlife habitat. When native vegetation must be removed within habitat areas, it shall be replaced with native and/or desirable non-native vegetation capable of supporting post-disturbance land use. Individuals planting vegetation away from the homesite should consider using vegetation suitable for wildlife cover and food. Vegetation removed to control noxious weeds shall not be required to be replaced, unless the site requires revegetation to prevent other noxious weeds from becoming established.

   a. **TIME ALLOTTED FOR REVEGETATION.** Vegetation required pursuant to Section 13-115: *Reclamation and Noxious Weed Control* shall be established and growing within two growing seasons (730 days) of the issue date of the applicable Gunnison County Reclamation Permit.

4. **WATERING AREAS.** Requirements to avoid disturbance of waterholes, springs, seepages, marshes, stream beds, stream banks, and streamside vegetation, ponds, and watering areas to the maximum extent feasible. Catchment basins may be required to prevent stream siltation.

5. **HABITAT COMPENSATION.** Requirements to develop additional habitat, or to acquire and permanently protect existing habitat to compensate for habitat that is lost to development, in the form of ongoing on-site or off-site wildlife habitat enhancement. Enhancement is the process of increasing wildlife carrying capacity on undisturbed habitat to replace the lost wildlife carrying capacity on habitats impacted, disturbed and/or destroyed by development. Enhancement may include prescribed burns, seeding, brush cutting, and fertilization, as determined to be appropriate by the County, based on the advice of the Colorado Division of Wildlife or other technical experts.

6. **DOMESTIC ANIMAL CONTROLS.** Controls on dogs and cats in areas adjacent to sensitive wildlife habitat. Dogs may be prohibited within one-half mile of elk, deer, and bighorn sheep critical winter ranges and winter concentration areas, and sage grouse leks. The number of cats allowed in a development may also be limited, to protect birds.

7. **CONTROL OF NUISANCES.** Controls on lighting, noise, excess use of fertilizers or pesticides, and similar nuisances that could have a significant net adverse effect on sage grouse leks and the continued use of the area by other wildlife.

8. **FENCES.** Design of fences to ensure they do not become a barrier to the movement of wildlife. Design standards for fences are as follows:

   a. **MAXIMUM HEIGHT.** Fences shall not be higher than 42 inches.

   b. **MATERIALS.** Fences shall be limited to a maximum of three strands or rails. Rail fences should only use rounded rails. Wire fences should not be made of woven wire, unless they are used to enclose sheep or goats. Wire and rail fences shall have a kick-space (distance between the top two wires or rails) of not less than 18 inches that uses wire or rail that has a smooth surface. The top rail should be made of a solid material in heavy use areas, to make it more visible to wildlife.

   c. **REMOVABLE SECTIONS.** Fences in migration corridors should have removable sections or openings to allow for seasonal passage of wildlife. The applicant shall be responsible for removing fence sections when migration is occurring and replacing  those sections when the season of migration has ceased.

   d. **UPGRADING EXISTING FENCES.** As a condition of development approval, applicants proposing land use changes within sensitive wildlife habitat areas should agree to remove or to alter any existing fences on the property to comply with the above requirements.

   e. **FENCES AROUND RESIDENCES EXEMPT.** Fences located in the immediate vicinity of a residence shall be exempt from these limitations.

9. **DENSITY RELOCATION.** Residential development may be clustered to avoid sensitive wildlife habitat.

BLM_0053417

10. **ROAD CONSTRUCTION**. Requirements to avoid new road construction through sensitive wildlife habitat.

11. **STREAM ALTERATIONS OR DIVERSIONS**. Controls on alterations or diversions of streams to retain the character and productivity of the streams. Such alterations will be subject to constraints of regulations of the Colorado Division of Water Resources, with the agreement of the Colorado Division of Wildlife.

12. **STRUCTURES TO MINIMIZE HAZARDS**. Requirements to design, locate, construct and maintain game-proof fencing, one-way gates, game underpasses, or other structures to minimize hazards to wildlife, such as requiring a minimum distance between high-power electric wires to avoid electrocution of eagles.

13. **UNDERGROUND UTILITIES REQUIRED NEAR LEKS**. Requirements that utility lines be placed underground in the vicinity of leks, to discourage avian predators.

G. **SAGE GROUSE CONSERVATION PLAN**. Land use changes shall be designed to be consistent with the terms of the *Memorandum of Agreement for the Gunnison Basin Population of the Gunnison Sage Grouse*, dated March 9, 1998.

H. **CDOW ACCESS**. Where applicable, the applicant shall continue to provide historical access or agreed-upon new access other than the historical access, for the Colorado Division of Wildlife to manage wildlife and to monitor wildlife activities.

## SECTION 11-107: PROTECTION OF WATER QUALITY

A. **PURPOSE**. The purpose of this Section is to protect the quantity, quality and dependability of water resources in Gunnison County by avoiding development in and adjacent to water bodies and mudflow hazard areas whenever possible, by minimizing adverse impacts of development, including siltation, sedimentation, salinization, runoff, loss of decreed minimum in-stream flows, stream bank erosion and change to existing drainage patterns.

B. **RELATIONSHIP TO OTHER SECTIONS**. As applicable, of the standards imposed by this Section, and Section 11-103: *Development in Areas Subject to Flood Hazards*, Section 13-116: *Grading and Erosion Control*, and Section 13-117: *Drainage, Construction and Post-Construction Storm Water Runoff*, the more restrictive shall apply.

C. **APPLICABILITY**. Unless otherwise exempted, this Section shall apply to all Land Use Change Permit applications that involve uses within 125 feet of water bodies and mudflow hazard areas in unincorporated areas of Gunnison County, except as exempted in Section 11-107: C. 1.: *Exempt,* and Section 11-107: C. 2.: *Partially Exempt.*

1. **EXEMPT**. The following structures, improvements, activities, or areas shall be exempt from all of the requirements of this Section:

   a. **STRUCTURES USED FOR DECREED WATER RIGHT**. Structures or improvements used for the exercise of a decreed water right, including headgates and measuring devices; and

   b. **WETLANDS RESULTING FROM AGRICULTURAL OPERATIONS**.  Wetlands and riparian areas created solely by normal and customary agricultural activities; and

   c. **PROJECTS PRIMARILY FOR WATER PROTECTION THAT HAVE RECEIVED REQUIRED STATE OR FEDERAL PERMITS**. Projects that have received all applicable permits required by state and/or federal agencies, such as those designed primarily for the enhancement, protection and/or restoration of water body banks or channels, wetlands, riparian areas and/or piscatorial wildlife habitat; and

   d. **WATER IMPOUNDMENTS**. Water impoundments that are a component of an approved mineral exploration or extraction project or construction materials processing project, and comply with Section 13-118: *Water Impoundments,* and with all applicable federal codes and regulations; and

   e. **EMERGENCY FLOOD CONTROL MEASURES.** A structure or other land use change necessary, in an emergency declared by the County Manager to eliminate or reduce potential flood hazards or damage. If it is to be removed, it shall be removed as soon as possible; and

   f. **ROADS AND BRIDGES**. Maintenance, repair or replacement of roads, roads that approach bridges, and bridges, existing as of the effective date of this *Resolution*, or constructed thereafter pursuant to this *Resolution* and all other County, state and federal regulations.

BLM_0053418

**2.  PARTIALLY EXEMPT.** The following projects, classified as Administrative Review projects pursuant to Section 3-111: *Classification of Impact*, approved pursuant to this *Resolution* are exempt from Section 11-107: D: *Submittal Requirements* but are required to comply with all other requirements of this Section:

**a.  A PRIMARY RESIDENCE SMALLER THAN 9,000 SQ. FT. IN AN APPROVED SUBDIVISION.** The development of a primary residence smaller than 9,000 sq. ft. (which does not include in the calculation of square footage a maximum of 1,000 sq. ft. of an attached garage), pursuant to Section 13-105: *Residential Building Sizes and Lot Coverage*, in a subdivision approved by Gunnison County and platted as of the effective date of this *Resolution*; and

**b.  LIMITED MINERAL EXPLORATION.** Limited mineral exploration (activities related to proving up a patented mining claim pursuant to federal law), as addressed in Division 9-400: *Exploration, Extraction and Processing of Minerals and Construction Materials,* and limited construction materials exploration, pursuant to Section 9-402: C: *Activities Exempted from Submittal and Review Requirements*; and

**c.  UNDERGROUND MINERAL EXPLORATION.** Underground mineral exploration as identified in Division 9-400: *Exploration, Extraction and Processing of Minerals and Construction Materials*; and

**d.  BOUNDARY LINE ADJUSTMENTS.** An application to adjust the lot line between adjacent parcels or lots that are separately owned; and

**e.  LOT CLUSTERS.** An application to eliminate the lot lines separating adjacent lots that are commonly owned; and

**f.  CORRECTION OF PLAT.** An application to correct a technical error in a subdivision plat that has been approved and recorded; and

**g.  TECHNICAL MODIFICATION.** An application to allow a minor deviation of not more than ten percent from any minimum or maximum numerical standard of this *Resolution*, and that is identified as a category in Section 8-101: *Technical Modifications.*

**D.  SUBMITTAL REQUIREMENTS.** In addition to the submittal requirements included in the applicable Land Use Change Permit application, all applications for projects that are not exempted by Section 11-107: C. 2.: *Exempt* and Section 11-107: C. 3.: *Partially Exempt* shall include the following:

**1.  SITE PLAN.** The site plan submitted as part of the application shall include locations of any existing structures, water bodies, hydrologic features or mudflow hazard areas on the site, and including the following items; the Planning Department may require a field verification of the locations.

**2.  PLAN FOR WATER QUALITY PROTECTION.** A site-specific plan for protection of water quality, including:

**a.  TOPOGRAPHIC FEATURES, DEVELOPMENT AND PROPERTY LINES.** A map showing existing topography at no greater than 20-foot contour intervals. The map shall highlight existing and proposed slopes greater than 15 percent but less than 30 percent grade and existing and proposed slopes equal to or greater than 30 percent grade, and shall extend a minimum of 100 feet beyond the development site line and show the location of all property lines; and

**b.  GRADING PLAN.** A grading plan, addressing the requirements of Section 13-116: *Grading and Erosion Control.* The map shall show elevations, dimensions, locations, extent and slope of all clearing, grading and fills at no greater than 20-foot contour intervals proposed for the development site, including any building sites and driveway grades; and

**c.  SOIL AND SOIL STOCKPILES.** Proposed locations of any stockpiles of soil, gravel, snow or other materials; and

**d.  EQUIPMENT AND WASTE MATERIAL STORAGE.** Location(s) of storage areas designated for equipment, fuel, lubricants, chemical and waste storage with an explanation of spill containment structures to be used on-site; and

**e.  DRAINAGE FACILITIES.** Proposed drainage plan, pursuant to Section 13-117: *Drainage, Construction and Post-Construction Storm Water Runoff,* including locations of existing and proposed drainage structures, and natural drainage features on land adjacent to the site and within a minimum of 300 feet from the development site line, including, as applicable, road gutters, storm sewers, drainage channels, other water conveyance structures, water bodies, highly erodible soils, unstable stream banks, and mudflow hazard areas; and

BLM_0053419

    **f.**  **WATER QUALITY DATA**. Water quality data, including designation, classification, and numeric standards as established by the Colorado Water Quality Control Commission, for all water bodies located on the site; and

    **g.**  **LOCATION OF PROPOSED PERMANENT AND TEMPORARY ROADS**. The location of proposed permanent and temporary roads including roads proposed to be used only during construction.

**E. BUFFER STANDARDS.**

  **1.**  **GENERAL.** Activities within the Restrictive Inner Buffer and the outer variable buffer shall comply with Section 13-116: *Grading and Erosion Control.*

  **2.**  **RESTRICTIVE INNER BUFFER SETBACKS.** In addition to each other setback, requirement or prohibition for land use in this *Resolution*, a setback of 25 feet measured horizontally from the ordinary high water mark in average hydrologic years on each side of a water body or mudflow is required (Figure 2: *Restrictive Inner Buffer Setback)*; this setback is referred to as the "Restrictive Inner Buffer." The following activities are not allowed within the Restrictive Inner Buffer:

    **a.**  **OBSTRUCTION OR STRUCTURE.** Construction, installation or placement of any obstruction or the erection of a structure;



FIGURE 2: RESTRICTIVE INNER BUFFER SETBACK

Restrictive Inner Buffer 25' setback from edge of wetlands

Wetlands

Stream

Restrictive Inner Buffer 25' setback from ordinary high water mark of stream

    **b.**  **PLACEMENT OF MATERIAL.** Placement of material, including any soil, sand, gravel, mineral, aggregate, organic material or snow plowed from roadways and parking areas;

    **c.**  **DREDGING.** Removal, excavation or dredging of solid material, including soil, sand, gravel, mineral, aggregate, or organic material;

    **d.**  **REMOVAL OF LIVE VEGETATION.** Removal of any existing live vegetation or conduct of any activity that will cause any loss of vegetation, unless it involves the permitted and/or required removal of noxious weeds, non-native species, dead or diseased trees;

    **e.**  **LOWERING OF WATER LEVEL.** Lowering of the water level or water table by any means, including draining, ditching, trenching, impounding, pumping or comparable means, except as allowed by the Colorado Division of Water Resources; and

    **f.**  **DISTURBANCE OF NATURAL DRAINAGE.** Disturbance of existing natural surface drainage characteristics, sedimentation patterns, flow patterns, or flood retention characteristics by any means including grading and alteration of existing topography. Measures taken to restore existing topography to improve drainage, flow patterns or flood control must be approved.

    **g.**  **USE OF EQUIPMENT.** Use of construction equipment within the buffer except as exempted by Section 11-107: C. 1. f: *Roads and Bridges.*

  **3.**  **EXCEPTIONS TO PROHIBITION OF LAND USE CHANGES IN THE RESTRICTIVE INNER BUFFER.**

    **a.**  **PRE-EXISTING CONSTRUCTION MATERIALS EXTRACTION.** Construction materials extraction approved before the effective date of this *Resolution* shall be permitted no closer than five feet from the nearest ordinary high water mark in average hydrologic years on each side of a water body, but not in the stream channel.

BLM_0053420

**b. SHOWING OF UNAVOIDABILITY**. The following exceptions to prohibition of land use changes in the Restrictive Inner Buffer shall be permitted as a Minor Impact project only upon a demonstration by the applicant of clear and convincing evidence that the proposed land use change in the Restrictive Inner Buffer is unavoidable, that the land use change in the Restrictive Inner Buffer shall be designed, constructed and used to minimize encroachment into the Restrictive Inner Buffer, and that after mitigation, adverse impact shall be minimized to the Restrictive Inner Buffer, to the water body, and to water quality, including but not limited to minimizing the deposit of sedimentation in the water body, the clearing of vegetation, the pollution of return water flows, and channelization.



**Figure 3: Application of Variable Outer Buffer Setback**

1. **LAND USE CHANGE IS WATER DEPENDENT AND AUTHORIZED**. The proposed land use change in the Restrictive Inner Buffer is water dependent (including docks, piers, watercraft launches and ramps, flood control structures, water diversion facilities, and streambank stabilization structures ); and is authorized by each appropriate regulatory authority (including but not limited to the U.S. Army Corps of Engineers); or

2. **DENIAL WOULD DENY ALL ECONOMICALLY VIABLE USE OF THE PARCEL**. Denial of the proposed Land Use Change Permit in the Restrictive Inner Buffer would result in denying the land owner all economically viable use of the subject parcel; or

3. **CONSTRUCTION OUTSIDE RESTRICTIVE INNER BUFFER SUBSTANTIALLY CONTRIBUTES TO HAZARDOUS CONDITIONS**. Because of the physical features, other restrictions and conditions of the parcel, construction or use of the proposed land use change outside of the Restrictive Inner Buffer would substantially create or contribute to a hazardous condition; or

4. **LOCATION IS NECESSARY FOR AN ESSENTIAL SERVICE**. In the case of a road, bridge approach, public utility or essential service, the proposed land use change in the Restrictive Inner Buffer is necessary to provide access or service to the parcel; or

5. **IS A FLOOD CONTROL MEASURE**. The proposed land use change consists of a structure or other improvement to eliminate or reduce potential flood hazards or damage. If such structure or improvement is necessary because of an emergency, it may be approved by the Planning Director after an Administrative Review, pursuant to Article 4: *Administrative Review Projects That Do Not Require Land Use Change Permits*. If a flood control measure is to be removed, it shall be removed as soon as possible.

4. **VARIABLE OUTER BUFFER.** In addition to a Restrictive Inner Buffer, a Variable Outer Buffer shall be defined and indicated on the plan. In addition to each other setback requirement or prohibition for land use in this *Resolution*, a proposed land use change within a Variable Outer Buffer, including disturbance of earth or vegetation shall be prohibited, limited, or specific mitigation required on a site-specific basis, to the

BLM_0053421

maximum extent feasible to protect the integrity of the water body, to minimize the deposit of sediment in the water body, the pollution of return water flows, channelization, and adverse impact on water quality.

**a.** **MAXIMUM WIDTH OF VARIABLE OUTER BUFFER**. In no circumstance shall a Variable Outer Buffer be required to extend more than 100 feet beyond the outer boundary of the Restrictive Inner Buffer.

**b.** **NON-UNIFORMITY OF VARIABLE OUTER BUFFER**. The width of the Variable Outer Buffer need not be uniform across a parcel. Specific features within 100 feet of the outer boundary of the Restrictive Inner Buffer shall define the width of the Variable Outer Buffer on a site-specific basis and shall be defined, as is reasonable, by the presence of these characteristics:

**1.** **SLOPES STEEPER THAN 15 PERCENT**. Slopes steeper than 15 percent draining into the water body or mudflow hazard area; in such a case, the setback shall be 25 feet back from the edge of the slope above the closest border of the delineated wetland (Figure 3: *Application of Variable Outer Buffer Setback* ); or

**2.** **PRESENCE OF HIGHLY ERODIBLE SOILS**. The presence of highly erodible soils; in such a case, the setback shall be 25 feet from the edge  of the highly erodible soils farthest from the closest border of the delineated wetland; or

**3.** **PRESENCE OF FEATURES THAT PROVIDE BANK STABILITY OR RIPARIAN AREA PROTECTION**. The presence of trees, shrubs, vegetation or other natural features that provide for bank stability or riparian area protection; in such a case, the setback shall be 25 feet from the edge of such features farthest back from the closest border of the delineated wetland.

**4.** **AREAS OF RECORDED OR KNOWN FLOOD OR MUDFLOW**. An area of recorded or known flood or mudflow; in such a case, the setback shall be the full 100-foot Variable Outer Buffer.

**5.** **MANAGEMENT OF HAZARDOUS MATERIALS AND POLLUTANTS**. All land use changes shall meet the following requirements for management of hazardous materials and pollutants:

**a.** **COMPLIANCE WITH STATE AND FEDERAL REGULATIONS**. At a minimum, all hazardous materials shall be stored and used pursuant to applicable state and federal hazardous materials regulations.

**b.** **STORAGE NEAR WATER BODIES RESTRICTED**. Hazardous materials, pollutants, sand and salt for road traction shall not be stored within 100 horizontal feet of any water body or mudflow. When no practical alternative exists, site-specific best management practices must be used.

**c.** **SPILL PREVENTION**. Measures shall be designed and implemented to prevent spilled fuels, lubricants or other hazardous materials from entering a water body, including ground water, during construction or operation of equipment and/or a facility. If a spill occurs, it shall be cleaned up immediately and disposed of properly.

**d.** **MACHINE MAINTENANCE.** Routine field maintenance of vehicles or mobile machinery shall not be performed within 100 feet of any water body or mudflow. Emergency maintenance can only be conducted until the vehicle or machinery can be moved. Routine equipment maintenance should be performed in a designated area and measures such as drip pans used to contain petroleum-based hazardous products.

**e.** **FUEL STORAGE AREAS**. Containment measures shall be provided for all fuel storage areas to prevent release to any water body. Inventory management or leak detection may be required.

## SECTION 11-108: STANDARDS FOR DEVELOPMENT ON RIDGELINES

**A.** **PURPOSE**. The purpose of this Section is to establish regulations to preserve and maintain the scenic resources in Gunnison County as viewed from specifically identified vantages including municipalities and certain public road corridors that are particularly important to the character and economy of Gunnison County. This shall be accomplished by the establishment of ridgeline vantages from which the siting and construction of buildings will be reviewed to maintain the natural appearance of the mountain skyline and to avoid penetration or interruption of the natural skyline by buildings.

**B.** **APPLICABILITY**. This Section is applicable to all buildings that would be visible from any municipality in Gunnison County or from any of the following State, County or public roads that are individually and collectively referred to as a "ridgeline vantage":

BLM_0053422

- U.S. Highway 50;
- Road 3 (Marble);
- Road 4 (Peanut Lake);
- Road 10 (Cranor Hill Road);
- Road 12 (Kebler Pass);
- Road 17 (Antelope Creek Road);

- Road 20 (Steuben Creek);
- Road 25 (Pine Creek)
- Road 26 (Sapinero Mesa Lake City Cutoff);
- Road 27 (Powderhorn);
- Road 38 (Gold Basin Road);
- Road 76 (Quartz Creek Road);
- State Highway 114;

- State Highway 133;
- State Highway 135;
- State Highway 149;
- Road 209 (Cottonwood Pass);
- Road 265 (Buzzard Divide);
- Road 314 (Marble to Schofield);
- Road 317 (Gothic Road);
- Road 727 (Mill Creek);
- Road 730 (Ohio Creek Road);
- Road 734 (Slate River);
- Road 737 (Carbon Creek);
- Road 738 (Brush Creek);
- Road 740 (Cement Creek);
- Road 742 (Taylor River Road);
- Road 811 (Washington Gulch);

- Road 813 (Jack's Cabin Cutoff);
- Road 858 (Big Cimarron);
- Road 860 (Big Cimarron);
- Road 861 (Big Cimarron);
- Road 864 (Little Cimarron);
- Road 864.99 (High Mesa);
- Road 867 (Alpine Plateau);
- Road 887 (Waunita Road);
- Road 888 (Whitepine).

C.  **RIDGELINE VISIBILITY**. When viewed from any ridgeline vantage, no building shall be visible on a ridgeline that is more than 150 feet vertically higher from the closest point on a ridgeline vantage from which such building would be visible.

D.  **INITIAL ANALYSIS OF VISIBILITY OF PROPOSED SITE**. If the Planning Director determines that a building is proposed to be sited on a ridgeline that potentially is visible from a ridgeline vantage as described in Section 11-108: E: *Detailed Analysis Required If Location Is Determined To Be Visible*, the applicant shall submit an initial visual analysis of potential ridgeline visibility that shall contain:

1.  **MAP**. A map of the proposed site that depicts the proposed location of the building footprint including distances and elevations from the two closest ridgeline vantages.

2.  **WRITTEN STATEMENT**. A brief written statement describing, in a general manner, the location, size, height and potential visibility of the proposed building from any ridgeline vantage.

E.  **DETAILED ANALYSIS REQUIRED IF LOCATION IS DETERMINED TO BE VISIBLE**.  If the Planning Director determines, after a review of the initial submittal pursuant to Section 11-108: D: *Initial Analysis of Visibility of Proposed Site*, and any other relevant material that the building is proposed to be so sited on a ridgeline that it would be visible from a ridgeline vantage, the applicant shall submit a detailed visual analysis illustrating the existing features of the site, depicting the location, mass and form of the proposed buildings and illustrating all potential visibility that would be prohibited by this Section. This analysis may be provided as photographs of the property on which the development is proposed to be sited, a computer simulation, an architectural site section or other similar display technique. The applicant will provide such further information as the Planning Director reasonably requires.

F.  **IMPACT CLASSIFICATION**. Each building for which the Planning Director has required a detailed analysis shall be reviewed at least as a Minor Impact project, pursuant to Article 6: *Minor Impact Projects* unless a higher impact classification is otherwise required by this *Resolution*.

G.  **SCREENING IS NOT ACCEPTABLE MITIGATION UNLESS NO OTHER FEASIBLE SITE EXISTS**. Screening, including earth berming, of a structure otherwise in violation of this Section is not acceptable mitigation, unless allowed per Section 11-108: I. 1. b: *No Feasible Alternative Site Exists on the Parcel*.

H.  **NO MODIFICATIONS, ADDITIONS OR ALTERATIONS**. No building shall be modified, added to or altered so as to be in violation of this Section.

I.  **EXCEPTIONS**. A building on a ridgeline that is sited, designed, shaped, oriented, screened, lighted and constructed to avoid visibility from ridgeline vantages to the maximum extent feasible otherwise prohibited by this Section shall be permitted only if:

1.  **PLANNING COMMISSION FINDINGS**. The Planning Commission finds by clear and convincing evidence that the building meets or exceeds the following standards:

a.  **PUBLIC UTILITY FACILITY.** It is a public utility and no other feasible and prudent alternative site exists for the facility; or

b.  **NO FEASIBLE ALTERNATIVE SITE EXISTS ON THE PARCEL.** No feasible non-ridgeline site for the building exists on the parcel which, considering existing natural vegetation, would be less visibly obtrusive than the ridgeline site; or

BLM_0053423

c. **FULL SCREENING EXISTS AND IS PROTECTED**. Any building on the ridgeline shall be fully screened by existing (as opposed to new) natural vegetation on the applicant's property, of such volume, density and species of tree cover, after provision of defensible space for wildfire hazard, so that no part of the building shall be visible from any ridgeline vantage, at any time of the year. A recorded mechanism (e.g. protective covenant, conservation easement, bonding agreement) acceptable to the County must be provided to ensure, in perpetuity, the existence and replacement of the natural vegetation on the applicant's property used for screening; or

d. **IF SIGNIFICANT SCREENING EXISTS AND IS PROTECTED, DECISION SHALL BE MADE BY THE BOARD..** If the Planning Commission finds that the project does meet the first three requirements of this section, but that any building on the ridgeline shall be significantly screened by existing (as opposed to new) natural vegetation on the applicant's property, of such volume, density and species of tree cover, after provision of defensible space for wildfire hazard, so that no part of the building that is partially visible shall be visibly obtrusive from any ridgeline vantage, at any time of the year, the Commission shall so note in a recommendation to the Board, and the Board shall be the decision-making body.  If approved, the approval shall include:

1. **RECORDED COVENANT, EASEMENT OR AGREEMENT.** A recorded mechanism (e.g. protective covenant, conservation easement, bonding agreement) acceptable to the County must be provided to ensure, in perpetuity, the existence and replacement of the natural vegetation on the applicant's property used for screening; and

2. **MINIMAL VISUAL IMPACT.** When significant screening exists and is protected, the building on the ridgeline shall have minimal visual impact and:

   (a.) **IS NOT OBTRUSIVE OR VISIBLE FROM A MUNICIPAL RIDGELINE VANTAGE.** Must comply with both of the following standards:

      (1.) **OBTRUSIVENESS**. The building will blend in with its surroundings and will not stand out in the context of its surroundings nor draw attention to itself; and

      (2.) **MUNICIPAL RIDGELINE VANTAGE**. The building will not be visible with the naked eye from a municipal ridgeline vantage; and

   (b.) **MUST NOT BE VISIBLE FROM RIDGELINE VANTAGE OR VISIBILITY IS ONLY MOMENTARY.** Must comply with and with one of the following standards:

      (1.) **DISTANCE FROM RIDGELINE VANTAGE(S).** The building will not be visible with the naked eye from near or distant ridgeline vantages; or

      (2.) **NUMBER AND LENGTH OR DURATION OF RIDGELINE VANTAGES**. The number and length or duration of public road ridgeline vantages from which the building will be visible are so small that the building will be visible only momentarily to passersby.

e. **DESTRUCTION OF BUILDING AND/OR NATURAL VEGETATION**. In the event the building and/or the natural vegetation providing screening is substantially damaged or destroyed the owner shall, prior to construction of the building and within two years, plant and maintain new vegetation and ensure its survival to provide screening for the building in the least amount of time so that the building complies with the standards of this Section, and the recorded protective covenant, conservation easement, or bonding agreement).

# SECTION 11-109: DEVELOPMENT THAT AFFECTS AGRICULTURAL LANDS

A. **PURPOSE.** The agricultural resources of Gunnison County are essential to the County's economic base and are the primary element of the County's rural heritage. Both year-round residents and visitors enjoy the expanses of irrigated green meadows and the sense of history and community that ranching operations offer to the overall quality of life in Gunnison County. The standards in this Section are intended to ensure that new development impacts existing ranching operations as little as possible, and that development and ranching can exist together compatibly.

B. **APPLICABILITY.** This Section shall apply to all land use changes on land adjacent to or directly affecting agricultural operations. The County shall assure that adequate requirements are included in the approval of a Land Use Change Permit that minimize or eliminate impact of any land use change on agricultural lands. Those land use changes shall comply with this Section and all other applicable requirements of this *Resolution*.

BLM_0053424

**C. GENERAL STANDARD.** Land use changes are encouraged that will retain the agricultural use and productivity of the land. Land use changes should not adversely affect, or have the potential for limiting the viability of existing agricultural operations, including the use of irrigation ditches, irrigated hay meadows, and historic stock drives. However, it is not the County's policy to prevent land use change on land because such land is now was once used for agricultural purposes.

**D. DOMESTIC ANIMAL CONTROLS.** Dogs and other domestic animals that are not being used to assist with the herding or the care of livestock shall not be permitted to interfere with livestock or the care of livestock that occurs as part of an agricultural operation. Enforceable protective covenants or deed restrictions shall be provided for land use changes that are required to confine pets by kenneling, leashing, fencing or other physical constraint, and allow enforcement by the County at the expense of a responsible homeowners or property owners' association.

**E. ROADS.** Development roads shall be located a sufficient distance back from the property boundaries so that normal maintenance of such roads, including snow removal, will not damage boundary fences. Dust control shall be required both during and after construction pursuant to Section 13-119: *Standards to Ensure Compatible Uses* to minimize adverse impacts to livestock and crops.

**F. FENCES.** Construction and maintenance of fencing are subject to the rights and obligations defined by C.R.S. 35-46-101 et seq. Language shall be included in protective covenants or in the approval of a Final Plan and on the recorded plat of a subdivision, putting lot owners on notice that maintenance of any applicable fence for the purposes of fencing out livestock is the responsibility of the lot owner or the homeowners' association. Fences shall be constructed that separate the development from adjoining agricultural lands or stock drives. Those newly constructed fences, and existing fences serving the same purpose shall be maintained and any breaks in such fences shall be at properly maintained metal or wood gates or cattle guards.

**G. IRRIGATION DITCHES.** Land use changes shall not interfere with ditch rights-of-way. Where irrigation ditches cross or adjoin the land proposed to be developed, a condition of a Land Use Change Permit shall include requirements to insure that the use of those ditches, including their maintenance, can continue uninterrupted.

    **1. EMERGENCY CONTACT PERSON.** If the land will not be occupied full-time by the applicant, provision shall be made for a person or institution (who shall be identified by name, address, and telephone number) to represent the owner and act on behalf of that owner in case of a ditch washout or similar emergency.

    **2. IRRIGATION DITCH EASEMENTS.** A maintenance easement of at least 25 feet from the edges of the ditch banks shall be preserved and indicated on any Final Plat for subdivision, or in the Final Plan for any non-subdivision use. For parcels that are the subject of Land Use Change Permits, Building Permits or Individual Sewage Disposal System Permits, access for maintenance of an irrigation ditch is required to be 25 feet from each ditch bank. When approved in notarized written form by the ditch owner(s), that distance may be decreased and existing historical easements used to gain access to ditches, headgates, and fences for maintenance or operational purposes shall be preserved or replaced with reasonable alternate easements suitable for continuation of the historic use.

**H. PROTECTIVE COVENANTS OR DEED RESTRICTIONS AND PLAT LANGUAGE.** Suitable and enforceable protective covenants or deed restrictions shall be required as a condition of approval of new Land Use Change Permits that include the following language that shall also be required to be included on the Final Plat of a subdivision.

    **1. CONFINEMENT OF DOMESTIC ANIMALS.** Language directing that domestic animals must be controlled by kenneling, leash, fencing or other physical constraint. Language shall be also be included within those protective covenants or restrictions stating that any expense of enforcement of the domestic animal control restrictions by the County shall be at the expense of the responsible association or the individual.

    **2. AWARENESS OF COLORADO "FENCE-OUT" REQUIREMENTS.** Language referencing C.R.S. 35-46-101 et seq: and clearly stating that a property owner is required to construct and maintain fencing in order to keep livestock off his/her property.

    **3. IRRIGATION DITCH MAINTENANCE.** Language notifying individual lot owners within a subdivision, or future owners of a parcel on which a development that is not a subdivision has been granted a Land Use Change Permit, that an irrigation ditch owner has the right to enter the designated irrigation ditch maintenance easement, maintain the ditch, and leave natural debris on the bank.

BLM_0053425

## SECTION 11-110: DEVELOPMENT OF LAND BEYOND SNOWPLOWED ACCESS

**A. PURPOSE.** The purpose of this Section is to establish regulations to limit the impacts of development on land beyond snowplowed road access in Gunnison County. Development of land beyond snowplowed road access, or expansion or extension of snowplowed road access, poses issues that land use by non-snowplowed over-the-snow road access do not pose, including road damage, creation or expectation about the availability of public and emergency services, creation or increased risk(s) to emergency services personnel who may be called upon to respond to the land, disruption of significant, existing land uses of modes or travel, and creation or increased detrimental, environmental impact to road(s) and/or land(s).

**B. NO COUNTY OBLIGATION TO MAINTAIN OR SNOWPLOW.** Nothing in this *Resolution* or in any permit granted pursuant to it, or in any permit granted before the effective date of this *Resolution*, creates or shall be construed to create, any obligation of Gunnison County to maintain, snowplow, open or improve any road or to allow private maintenance or snowplowing of any section of federal, state, County or public road.

    **1. EXCEPTIONS.** Exceptions shall be limited to:

        **a. AT PRIVATE COST, CONTINUED PLOWING AS PREVIOUSLY PROVIDED BY COUNTY.** Upon request to Gunnison County at the time that Gunnison County ceases to snowplow all or a section of road it then plows throughout the winter, the owner of real property directly accessed by the road shall be granted permission by Gunnison County to privately snowplow the same section of the road, to the same extent and for the same time period it had previously been plowed, at private cost and subject to any conditions that Gunnison County and other applicable government entities may impose.

        **b. AT PRIVATE COST, CONTINUED PLOWING BY PRIVATE PARTY.** Upon request to Gunnison County at the time that a private party ceases to snowplow throughout the winter with the permission of Gunnison County all or a section of a road accessing a property, the owner of real property directly accessed by the road shall be granted permission by Gunnison County to privately snowplow the same section of the road to the same extent and for the same time period it had previously been plowed, at private cost and subject to any conditions that Gunnison County and other relevant government entities may impose.

**C. NO RESTRICTION ON CLOSURES.** Nothing in this *Resolution* or in any permit granted pursuant to it, or granted before the effective date of this *Resolution*, limits or shall be construed to limit the authority of Gunnison County to close or regulate roads or use of roads.

**D. CONDITIONS OF APPROVAL.** Approval of any Land Use Change Permit for a parcel of land beyond snowplowed road access shall require the following:

    **1. WRITTEN ACKNOWLEDGEMENT.** The landowner shall execute the following written statement acknowledging the following; the statement shall be recorded as an exhibit to the County's approval document:

LAND OWNER'S ACKNOWLEDGEMENT OF NO SNOWPLOWING,
NO COUNTY LIABILITY AND NO RESTRICTION ON ROAD CLOSURES

*I/We _____ (Owner(s) of Property) _____, on behalf of myself/ ourselves and all successors, heirs and assigns, do hereby acknowledge that _____ (name, number of access road) _____ is not snowplowed throughout the winter, and might never have that service. Year-round, over-the-road access by emergency services (including fire, ambulance, law enforcement, etc.) does not exist for _____ (legal description of subject property) _____.*

*I acknowledge that nothing in the Gunnison County Land Use Resolution, or in any permit granted pursuant to it, or granted before the effective date of the Resolution, limits or shall be construed to limit the authority of Gunnison County to temporarily, periodically, seasonally or otherwise close or further regulate this road, or its use.*

*I further acknowledge that nothing in the Gunnison County Land Use Resolution, or in any permit granted pursuant to it, or granted before the effective date of the Resolution, creates or shall be construed to create, any obligation of Gunnison County to maintain, snowplow, open or improve any road or to allow private maintenance or snowplowing of any section of federal, state, County or public road.*

*/s/ _____*
*(Owner of Property)*
*Date: _____*

BLM_0053426

Attest:

_____

Gunnison County Clerk and Recorder

**E.   TEMPORARY PRIVATE PLOWING PERMIT.**

1.   **COSTS AND CONDITIONS.** Upon formal, written request to Gunnison County, a temporary permit not to exceed one year may be issued by Gunnison County pursuant to the *Gunnison County Standards and Specifications for Road and Bridge Construction*, to privately plow a County or public road under the jurisdiction of Gunnison County on an annual basis, at private cost, and subject to any conditions that Gunnison County and any other applicable government entities may impose.

2.   **REQUIRED FINDINGS.** No temporary plowing permit shall be issued unless, after a public hearing, the Board determines by clear and convincing evidence, that private plowing of the requested section of federal, state, County or public road:

   a.   **NO SUBSTANTIAL CONFLICT WITH ARTICLE 1.** Does not substantially conflict with the requirements of Article 1: *General Requirements.*

   b.   **MEETS ROAD AND BRIDGE CONSTRUCTION SPECIFICATIONS.** Meets or exceeds the requirements of the *Gunnison County Standards and Specifications for Road and Bridge Construction.*

   c.   **NO INCREASED RISK TO EMERGENCY SERVICES PERSONNEL.** Does not create or substantially increase the risk to emergency services personnel who may be called upon to travel over the subject section of road;

   d.   **NOT DISRUPTIVE TO EXISTING TRAVEL MODES.** Does not disrupt significant, existing modes of travel;

   e.   **DOES NOT CREATE OR SIGNIFICANTLY INCREASE ENVIRONMENTAL DETRIMENT.** Does not create or significantly increase detrimental environmental impact to road(s) and/or land(s); and

   f.   **BENEFITS OUTWEIGH DETRIMENTS.** Considering the existing use, and the proposed use, of the areas accessed by the proposed expansion or extension of snowplowing, presents benefits that clearly outweigh its detriments.

**F.   EXPANSION OR EXTENSION OF SNOWPLOWING.** Except for an emergency declared by the Board or County Manager, which emergency shall not exceed one month, each proposal for expansion or extension of snowplowing of a County or public road to be performed either by Gunnison County or a different public entity, or privately, shall be considered a land use change classified as a Minor Impact project, and shall be reviewed pursuant to Article 6: *Minor Impact Projects.* The application shall not be approved unless, in addition to compliance with all other standards and requirements of this *Resolution*, the Board determines by clear and convincing evidence that:

1.   **NO CONFLICT WITH ARTICLE 1.** Such expansion or extension does not substantially conflict with the requirements of Article 1: *General Requirements;*

2.   **MEETS ROAD AND BRIDGE CONSTRUCTION SPECIFICATIONS.** Meets or exceeds the requirements of the *Gunnison County Standards and Specifications for Road and Bridge Construction;*

3.   **NO INCREASED RISK TO EMERGENCY SERVICES PERSONNEL.** Does not create or substantially increase the risk to emergency services personnel who may be called upon to travel over the subject section of road;

4.   **NOT DISRUPTIVE TO EXISTING TRAVEL MODES.** Does not disrupt significant, existing modes of travel;

5.   **NO INCREASED ENVIRONMENTAL DETRIMENT.** Does not create or significantly increase detrimental environmental impact to road(s) and/or land(s); and

6.   **BENEFITS OUTWEIGH DETRIMENTS.** Considering the existing use and the proposed use of the areas accessed by the proposed expansion or extension of snowplowing, presents benefits that clearly outweigh its detriments.

7.   **CLEAR PUBLIC BENEFIT.** In case of a proposed expansion or extension of snowplowing to be performed or paid for by Gunnison County, that there is a clear public benefit of such expansion or extension.

BLM_0053427

**G. SNOWPLOWING REQUIREMENTS.** Any snowplowing permit approved and issued pursuant to this *Resolution* shall comply with the following:

1. **CLEARING OF TRAVELED WAY.** Removal of snow from all of the traveled way, including turnouts sufficient for the safe and efficient use by all users;

2. **MAINTENANCE OF DRAINAGE FACILITIES.** Leaving culvert inlets in a natural condition, without snow or other material plowed into them, so that the drainage system will function normally; and

3. **ADDITIONAL CONDITIONS.** The Board shall impose additional conditions based on the section of road to be snowplowed, including:

   a. **RANGE OF PLOWING.** The frequency, duration and extent of snowplowing; and

   b. **EQUIPMENT.** Identification of the type of equipment to be used; and

   c. **PLOWER'S QUALIFICATIONS.** Identification of the qualifications of the people who will perform the snowplowing; and,

   d. **ROAD MAINTENANCE AND IMPROVEMENTS.** Preparation, improvements and maintenance of the section of road to ensure public safety, to protect and preserve the road section, and to ensure that the road section is suitable for snowplowing.

**H. FEDERAL ACTION.** Nothing in this Section supersedes or shall be construed to supersede a requirement by the federal government to abandon, close, or reclaim a federal road.

## SECTION 11-111: DEVELOPMENT ON INHOLDINGS IN THE NATIONAL WILDERNESS

**A. PURPOSE.** Gunnison County includes a number of individual parcels that are effectively surrounded by lands designated as part of the National Wilderness Preservation System, in some cases including subsurface rights underlying those lands. This Section establishes regulations to limit the impacts of development on inholdings in the National Wilderness Preservation System.

**B. DIMENSIONAL RESTRICTIONS.** The following dimensional requirements shall apply to permitted uses on inholdings in the National Wilderness Preservation System, and supersede general standards of Section 13-105: *Residential Building Sizes and Lot Coverages*:

1. **MAXIMUM INDIVIDUAL STRUCTURE SIZE.** The maximum size for an individual structure shall not exceed 800 sq. ft., measured pursuant to Section 13-105: *Residential Building Sizes and Lot Coverages.*

2. **MAXIMUM AGGREGATE SIZE OF ALL STRUCTURES.** The maximum size for the aggregate measurement of all structures shall not exceed 1,200 sq. ft. measured pursuant to Section 13-105: *Residential Building Sizes and Lot Coverages.*

3. **MAXIMUM STRUCTURE HEIGHT.** The maximum height of any structure on an inholding shall not exceed 20 feet to the highest roof or parapet surface of a flat roof as measured pursuant to Section 13-103: *General Site Plan Standards and Lot Measurements.*

**C. NO HELICOPTER OR AIRCRAFT ACCESS.** Except for bona fide emergency medical purposes, there shall be no helicopter or aircraft access to, or use on, any private inholding in the National Wilderness Preservation System.

## SECTION 11-112: DEVELOPMENT ON PROPERTY ABOVE TIMBERLINE

**A. PURPOSE.** Gunnison County includes a number of individual parcels that are located above timberline. This Section establishes regulations to limit the impacts of development on land and the environment above timberline.

**B. DIMENSIONAL RESTRICTIONS.** The following dimensional requirements shall apply to each permitted use above timberline and supersede general standards of Section 13-105: *Residential Building Sizes and Lot Coverages:*

1. **MAXIMUM AGGREGATE SIZE OF ALL STRUCTURES.** The maximum size for the aggregate measurement of all structures shall not exceed 1000 sq. ft. as measured pursuant to Section 13-105: *Residential Building Sizes and Lot Coverages* and may be further restricted to a smaller square footage by *Section 11-111: Development on Inholdings in the National Wilderness.*

BLM_0053428

2. **MAXIMUM STRUCTURE HEIGHT.** The maximum height of any structure on an inholding shall not exceed 20 feet to the highest roof or parapet surface of a flat roof as measured pursuant to Section 13-103: *General Site Plan Standards and Lot Measurements.*

C. **NO HELICOPTER OR AIRCRAFT ACCESS.** Except for bona fide emergency medical purposes, there shall be no helicopter or aircraft access to, or use on, any property above timberline.

1. **EXCEPTION ALLOWED AFTER ADMINISTRATIVE REVIEW.** Helicopter or aircraft access may be allowed by the Planning Director after an application has been submitted and reviewed pursuant to Article 5: *Projects Classified as Administrative Review Projects That Require Land Use Change Permit* and the Planning Director has determined by clear and convincing evidence that the benefits of such access outweigh the detriments.

BLM_0053429

# ARTICLE 12:
# DEVELOPMENT INFRASTRUCTURE STANDARDS

## SECTION 12-101: PURPOSE

This Article establishes the minimum standards for the design of infrastructure and similar improvements necessary to serve developments that are classified as Minor or Major Impact projects in unincorporated Gunnison County. These standards are intended to further the orderly layout and use of land and to protect and promote the public health, safety and welfare of residents and visitors in Gunnison County. Additional information or analysis beyond the minimums set forth in this Section may reasonably be required by the Planning Director or the Planning Commission, if issues are raised during the review process that so warrant.

## SECTION 12-102: APPLICABILITY AND OVERVIEW

A. **APPLICABILITY TO LAND USE CHANGE PERMITS.** These improvement standards shall apply to all applications submitted for Land Use Change Permit that are classified as Minor or Major Impact projects, except as exempted by Section 1-106: *Partially Exempted Land Use Changes*, or as otherwise exempted by specific sections of this Article.

B. **STANDARDS ARE MINIMUM.** These improvements standards are intended to ensure a minimum level of performance. If an alternate design, process, or material can be shown to provide performance equal to or better than that established by these standards, or where it can be shown that strict compliance with these standards would cause unacceptable environmental impacts, or would result in adverse conditions on- or off-site because of unusual topography, size  or shape of the property, existing vegetation, or other exceptional situation or condition, then the Planning Director may recommend that the decision-making body accept the alternative. The evaluation shall consider whether the alternative will provide for an equivalent level of public safety and whether the alternative will be equally durable, so that normally anticipated maintenance costs will not be increased.

C. **PLANS SHALL BE PREPARED BY A QUALIFIED PROFESSIONAL ENGINEER LICENSED IN THE STATE OF COLORADO.** All plans, reports, and specifications for development of improvements required in this Article shall be prepared by, or under the direct supervision of, a qualified professional engineer licensed in the State of Colorado. Final public improvement plans, reports and specifications shall bear the seal and signature of the qualified professional engineer licensed in the State of Colorado responsible for their preparation.

## SECTION 12-103: ROAD SYSTEM

The road system shall be designed and constructed to permit safe, efficient and orderly movement of pedestrian, motorized and non motorized vehicular traffic; to meet, but not exceed the needs of the present and future population served; to have a simple and logical pattern; to respect natural features and topography; and to present a reasonably attractive appearance.

A. **COMPLIANCE WITH ROAD AND BRIDGE CONSTRUCTION STANDARDS**. All applicants for Land Use Change Permits that have a component of driveways, roads and/or bridges shall comply with the requirements of the *Gunnison County Standards and Specifications for Road and Bridge Construction*, and this Section.

B. **COMPLIANCE WITH MUNICIPAL STANDARDS.** When the proposal is for development located within a municipal three-mile plan area, the development proposal shall address how it comports with the objectives and policies of the applicable municipal Three-Mile Plan.  The County shall consider how the proposed development has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the Three-Mile Plan area. Where there is a conflict between the objectives or policies of a Three-Mile Plan or the intergovernmental agreement, and County standards, County standards shall apply.

BLM_0053430

1. **STANDARDS WITHIN INTERGOVERNMENTAL AGREEMENT.** When an adopted intergovernmental agreement exists between the County and a municipality, proposed roadways for any land use change located within three miles of that municipality shall be designed to comply with the standards referenced or imposed by that agreement.

2. **COUNTY STANDARDS APPLY IF NO INTERGOVERNMENTAL AGREEMENT**. If no intergovernmental agreement exists, and the proposed development is within three miles of a municipality, the County shall consider comments submitted by the municipality and require that the roads comply with the County's standards, but be designed so that they are capable of being upgraded to comply with municipal standards if the development were to be annexed to the municipality. This may require, at a minimum, that adequate right-of-way be granted by the applicant to ensure that such upgrading can be accomplished.

3. **COUNTY'S STANDARDS APPLY WHEN STANDARDS CONFLICT**. Where there is a conflict between the objectives or policies of a Three Mile Plan or the intergovernmental agreement, and County standards, County standards shall apply.

C. **MEETING WITH PUBLIC WORKS DEPARTMENT**. Before an applicant submits engineered plans for a proposed road system as part of a Preliminary Plan for any Major Impact project, or for a subdivision that is a Minor Impact project, the applicant shall initiate and schedule a meeting with the Gunnison County Public Works Department to discuss the scope of the project, identify transportation issues specific to the proposed project that are to be addressed, and to provide the Department with the name, telephone number and address of the engineer or engineering firm that will be drafting the proposed road plans.

D. **RECOMMENDATION OF PUBLIC WORKS DEPARTMENT.** The Public Works Department shall review and evaluate the general design, engineering submittals, and as appropriate, traffic study recommendations submitted by the applicant, and shall, as appropriate, report to the appropriate review body whether the submitted plans comply with the requirements of this Section and with the applicable sections of the *Gunnison County Standards and Specifications for Road and Bridge Construction*, and, if applicable, those mitigations that may reasonably be required related to impacts of the proposed project.

E. **TRAFFIC STUDY.** The applicant for a proposed development that is projected to generate more than 100 vehicle trips per day shall be required to conduct a detailed traffic study to adequately assess the impacts of the proposed development on the existing and/or planned transportation system. The standard for projecting trip or traffic generation is ten trips per day per residence or guest house, or as otherwise adopted by the Institute of Traffic Engineers. In addressing the traffic impacts of a proposed development, it shall be assumed that there will be full build out, maximum use, and full time occupancy of each residence and guest house. A traffic study may also be required for any proposed development, at the discretion of the Public Works Director, in the case where a localized transportation safety or capacity deficiency exists or is projected. The traffic study shall be prepared by or under the supervision of a qualified professional engineer licensed in the State of Colorado who has demonstrated experience in transportation planning and traffic engineering.

1. **ISSUES TO BE ADDRESSED.** The submitted traffic study shall include supporting tabulations, figures and technical appendices, and shall, at a minimum, address the following traffic impact study elements:

   a. **PURPOSE.** Study purpose and objective.

      1. **AREA AND SITE.** Study area and site description.

      2. **EXISTING TRANSPORTATION SYSTEM.** Existing transportation system and operational and safety conditions, including:

         (a.) **COUNTS**. Traffic counts.

         (b.) **PEAK LEVEL OF SERVICE**. Peak hour level of service.

         (c.) **DEFICIENCIES**. Existing deficiencies.

         (d.) **ACCIDENT ANALYSIS**. Traffic accident evaluations.

         (e.) **ALTERNATIVE MODES**. Alternative mode systems.

      3. **LAND USES.** Existing and proposed land uses.

      4. **TRANSPORTATION AND ACCESS**. Proposed transportation system and access plan.

      5. **PHASING**. Anticipated project phasing and timing.

BLM_0053431

6. **TRAFFIC PROJECTIONS**. Background traffic projections (not related to the proposed development) and operations.

7. **SITE-GENERATED TRAFFIC**. Anticipated site-generated traffic, including:

   (a.) **TRIP GENERATION RATES**. Trip generation rates (Institute of Traffic Engineers (ITE)) rates and supporting documentation.

   (b.) **TRIP GENERATION ADJUSTMENTS**. Trip generation adjustments (including pass-by trips, multi-purpose trips, alternative mode adjustments) and supporting documentation.

b. **TRIP GENERATION FOR CONSTRUCTION**. Anticipated trip generation for the construction of infrastructure and construction of each component of the development.

c. **TRIP DISTRIBUTION**. Assumed trip distribution.

d. **TRAFFIC ASSIGNMENT**. Traffic assignment (by development phase and planning horizon as appropriate).

e. **PROJECTED DEVELOPMENT IMPACTS**. Identification and evaluation of development impacts (by development phase and planning horizon), including:

   1. **CAPACITY**. Capacity and level of service evaluation.

   2. **ACCIDENT EVALUATION**. Accident and safety evaluation.

   3. **INTERSECTION GEOMETRY**. Roadway and intersection geometry.

   4. **TRAFFIC SIGNALS**. Traffic signal warrants (based on warrants contained in the Federal; Highway Administration's Manual on Uniform Traffic Control Devices).

   5. **STATE HIGHWAY ISSUES**. State highway access issues (as appropriate).

f. **ALTERNATIVE MODES.** Alternative transportation modes (internal system, access to adjacent systems, and connections to off-site facilities).

g. **CONCLUSIONS**. Conclusions and improvement recommendations (onsite and off-site as appropriate), including percent contribution of development to the need for the improvements.

F. **MITIGATION OF IMPACTS TO ROAD SYSTEM.** Based upon the results of the traffic study, applicants for a Land Use Change Permit shall be required to mitigate their proportionate share of the impacts of the proposed activity upon the County's road system. This may require construction of improvements to existing roads and bridges, the construction of new roads and bridges on and off-site, or payment to the County of sufficient funds to be used exclusively to improve existing roads or construct new roads off-site, in accordance with the conclusions of the study and pursuant to the requirements and definitions of the *Gunnison County Standards and Specifications for Road and Bridge Construction*.

1. **DESIGN OBJECTIVES.** Any road improvements that are provided shall be designed to meet the following objectives:

   a. **PROPER FUNCTIONING OF ROADS AND INTERSECTION.** To permit the safe, efficient and orderly movement of traffic, by ensuring that roadways and intersections function at acceptable levels of service. To address intersection peak hour operations, intersection design shall meet Level of Service (LOS) D, using evaluation procedures described in the Federal Highway Administration's Highway Capacity Manual.

   b. **MEET POPULATION NEEDS.** To meet, but not exceed, the needs of the present and future population served;

   c. **LOGICAL PATTERN**. To have a simple and logical road pattern;

   d. **PRESERVE NATURAL LAND FORMS** . To preserve the natural land forms found on the property, to minimize use of cut or fill, and to minimize visibility of the road system from off site; and

   e. **PRACTICALITY OF PLOWING AND MAINTENANCE.** To provide roadways and related snow storage areas that are sufficient to ensure reasonable access and maneuverability for required plowing and maintenance equipment.

BLM_0053432

2. **IMPROVEMENTS THAT MAY BE REQUIRED**. Improvements that may be required to mitigate the proportionate share of impacts on the road system caused by the proposed land use change, during both construction and operational phases, include:

   a. **GRANTING OF RIGHTS-OF-WAY OR EASEMENTS.** Granting rights-of-way to the County, public, or other appropriate entity, including easements for existing or future roads, parking and snow storage areas, public trails, expansion of roads or other travel-related areas, utilities (including electric, telephone, oil or gas), water and/or sewage, drainage, irrigation and similar services, or for construction of frontage roads to minimize the number of driveways or side roads accessing a collector.

      1. **WIDTH OF EASEMENT.** The width of any required easement shall satisfy the reasonable requirements of the applicable utility provider and the County, pursuant to the design standards of the utility provider or the County, as applicable.

      2. **DEDICATION TO PUBLIC.** Rights-of-way intended for any public use shall be dedicated to public use; that dedication shall appear on any plat. Acceptance by the Board of a dedication to the County or public does not create an obligation for the County to maintain, snowplow or improve the right-of-way; any such obligation shall be created only by written resolution of the Board.

   b. **ADDITION OF LANES AND OTHER WAYS.** Addition of travel and/or turn lanes and other ways, including bikeways and pedestrian walkways;

   c. **INTERSECTION AND BRIDGES.** Re-design and construction of intersections, enlargement of bridges, and other road surface improvements;

   d. **SIGNAGE.** Signs such as those regulating speed, providing warning of certain physical characteristics of the road or of heavy vehicles accessing the roads, or otherwise providing direction to drivers. Signs and markings designed and installed pursuant to the Federal Highway Administration's *Manual on Uniform Traffic Control Devices;*

   e. **BICYCLE AND PEDESTRIAN FACILITIES.** The provision of safe walkways for pedestrians, either separate from or adjacent to roadways, depending on site-specific and project-specific conditions; on-road bicycle lanes, and off-road bicycle paths (designed pursuant to AASHTO *Facilities Design Guide*);

   f. **TRAFFIC CONTROL DEVICES.** Traffic control devices;

   g. **TRAFFIC SEPARATION FACILITIES.** Traffic separation facilities including underpasses or bridges; and

   h. **TRAFFIC CALMING DEVICES.** Traffic calming devices.

G. **STANDARDS FOR ACCESS TO PROPERTIES**. The following shall apply to any proposed land use change:

   1. **NO INTERFERENCE WITH OR OBSTRUCTION OF PUBLIC ROAD**. No land use change proposed for land over which there is a public road shall interfere with or obstruct such road without written authority from the government entity that has jurisdiction over the road. Approval by the County of the Land Use Change Permit is not a vacation of such a public road.

   2. **LEGAL ACCESS SHALL BE PROVIDED.** Design and construction of any land use change shall ensure that all residential lots have legal access to a public road.

      a. **ACCESS EASEMENTS SHALL BE MADE OF RECORD**. If access is provided to lots or tracts through private rights-of-way, then access easements benefiting all properties having such access shall be made of record in conjunction with approval of the land use change.

      b. **LIMITED SNOWPLOWED ACCESS.** Every development shall comply with the requirements of Section 11-110: *Development of Land Beyond Snowplowed Access.*

   3. **ACCESS PERMITS.**

      a. **ACCESS ONTO STATE AND FEDERAL HIGHWAYS.** Access onto state and federal highways is under the jurisdiction of the Colorado Department of Transportation (CDOT). A Highway Access Permit is required from CDOT for any new access, change of existing access, or change of use of a property that accesses onto a state or federal highway. Access design shall meet the requirements of the *Colorado State Highway Access Code*. The County shall not give final approval to a Land Use Change Permit until the County has received a copy and commented on the Highway Access Permit application.

BLM_0053433

b. **ACCESS ONTO A COUNTY ROAD OR A PUBLIC ROAD THAT DOES NOT REQUIRE A CDOT ACCESS PERMIT.** Driveway access onto a County road or a public road that does not require a CDOT Access Permit shall require an Access Permit from the Gunnison County Public Works Department, and shall meet the standards of the *Gunnison County Standards and Specifications for Road and Bridge Construction.*

1. **LAND USE CHANGE PERMIT PRECEDES ACCESS PERMIT.** No Access Permit shall be issued by the Public Works Department before approval of a Land Use Change Permit, when the proposed activity requires a Land Use Change Permit.

2. **FIRE PROTECTION DISTRICT REVIEW.** All applications for driveway access may be submitted by the Gunnison County Public Works Department to the applicable fire protection district for review and recommendation.

H. **ROAD PATTERN.** The road pattern in the proposed development shall generally conform to any adopted County plan for future development of the areas that the roads proposed for a land use change are intended to serve.

1. **CONTINUITY OF ALIGNMENT.** Where appropriate to the design, roads shall be continuous and in alignment with existing platted roads with which they are to connect.

2. **STUB ROADS.** All stub roads shall have a turnaround pad constructed at their end until the road becomes a through road. Pad requirements for a stub road shall comply with the *Gunnison County Standards and Specifications for Road and Bridge Construction.*

3. **PRESERVE NATURAL LAND FORMS.** The road pattern shall be designed to preserve natural land forms found on the property, to minimize use of cut or fill, and to minimize visibility of the roads from off-site.

4. **SHARED ACCESS ROAD OR ACCESS POINT.** More than one lot may be required to share an access road or access point to minimize access roads or points or to maximize safety.

I. **ROAD NAMES AND SIGNS.** Proposed road names assigned to internal roads of a proposed land use change shall not duplicate other existing or proposed road names in the county. Light-reflective road signs of durable and permanent materials shall be installed at all intersections in the development and other appropriate locations, and shall be addressed in a Development Improvement Agreement. House or lot numbering systems should be plainly visible year around from the public and/or subdivision road.

J. **LOT ADDRESS SIGNS.** Each lot shall be identified by a lot sign that identifies by number, and in reflective materials, the numerical address of the lot.

K. **PEDESTRIAN AND NON-MOTORIZED WAYS.** Each land use change that includes residential or other uses (such as schools) or amenities that will generate pedestrian or other non-mechanized traffic and meets one of the following criteria must provide a pattern of pedestrian or non-mechanized-use ways, each at least six feet wide, to accommodate the pedestrian traffic to be generated by the proposed development. Those pedestrian ways can be used as utility corridors, can be counted towards acreage required by the *Gunnison County Individual Sewage Disposal System Regulations,* and will not preclude the land over which they cross from being characterized as open space. Impacts that require the integration of pedestrian ways include:

1. **LOCATION WITHIN THREE-MILES OF POPULATION CENTER.** Is within three miles of a population center; or

2. **MORE THAN TEN RESIDENCES.** Will contain more than ten residences; or

3. **ROAD PATTERN IS MORE THAN DRIVEWAYS.** Will create a road pattern other than driveways.

## SECTION 12-104: TRAILS

A. **MITIGATION OF IMPACT TO PUBLIC TRAILS.** Except when an application is for an Administrative Review project, an applicant for a Land Use Change Permit shall mitigate the proportionate share of the impact caused by the proposed development on public trails.

B. **NO INTERFERENCE WITH OR OBSTRUCTION OF PUBLIC TRAIL.** No land use change proposed for land over which there is a public trail shall interfere with or obstruct that trail without written authority from the government entity that has jurisdiction over the trail. Approval by the County of the Land Use Change Permit is not a vacation of such a public trail.

BLM_0053434

C. **INCLUSION OF PUBLIC TRAILS**. Applicants are encouraged to include public trails and other amenities for non-motorized travel in an application for a Land Use Change Permit to link existing adjacent public trails or trails easements and to provide an alternative routing of pedestrian and generally non motorized vehicles (use of trails by golf carts, or motorized vehicles for the disabled may be appropriate to specific developments).

D. **REVIEW OF CONTESTED, OR NEWLY PROPOSED, PUBLIC TRAIL ACCESS.** When there is an issue of a contested, or newly proposed, public trail, the applicant and County shall review the issue, including the history of use, impact on the proposal, public concerns, existing and proposed public trails in the *Gunnison County Trails Master Plan*, and whether access over the subject land is advisable. This review does not preclude any other legal proceeding available to the applicant or County.

E. **DEDICATION WITHOUT COMPENSATION IS LIMITED.** Dedication of new public trail access without compensation shall be required only:

1. **RATIONAL NEXUS.** If there is a rational connection between impacts caused by the proposed project and the need for a new public trail; and

2. **MITIGATION OF PROPORTIONATE SHARE OF IMPACT**. To the degree necessary to mitigate the proportionate share of the impact caused by the proposed development on public trails; and

3. **PUBLIC INTEREST**. When such a new trail is in the public interest.

4. **COUNTY AND APPLICANT TO EXPLORE ALTERNATIVES**. When dedication without compensation is required, the County and the applicant shall explore recreation easements and irrevocable license agreements in addition to any other lawful way to establish a public trail.

F. **EXEMPTION FOR AGRICULTURAL LANDS**. The County shall not require a new trail easement to be granted through that portion of a development that is proposed to continue to be used for agricultural purposes.

G. **TRAIL DESIGN STANDARDS**. The *Gunnison County Trails Master Plan* contains recommendations to guide the planning, design, alignment and implementation of trail construction and use. Proposed trail easements shall be of sufficient dimension and appropriate alignment to accommodate the type of trail use that is depicted on the Plan, and to accommodate any other proposed trail planned to cross the property.

H. **CONSTRUCTION AND MAINTENANCE**. The costs of trail maintenance, construction and signage shall be performed as stated provided for in the Development Improvement Agreement.

I. **RECORDATION**. Location of the approved route for public trails and any restrictions on their uses shall be set forth as elements identified on recorded plats, and referenced in recorded declarations of protective covenants. Any significant change to the approved route or approved use shall require approval by the Board. A supplemental plat shall be provided by the applicant if the route of the trail as it is built is significantly different than the approved route.

## SECTION 12-105: WATER SUPPLY

A. **GENERAL STANDARD.** All land use changes for Minor or Major Impact projects, for which water is a required and necessary element of the development, shall provide a water supply that is legally and physically adequate in terms of quality, quantity, dependability, and pressure for the proposed development. In making its determination as to whether the proposed water supply will be adequate for the proposed use, the decision-making body shall consider the recommendations of the Colorado Division of Water Resources, the Gunnison County Environmental Health Official and other County staff, or consultants engaged by the County and the applicant.

B. **CONNECTION TO EXISTING SYSTEMS.** It is the policy of Gunnison County to encourage land use changes to use existing water supply systems, especially those paid for in whole or in part by the sale of municipal, county, special district, or other political subdivision bonds. When an existing water supply system can provide a documented legal and physically sufficient source of water for a proposed use pursuant to this *Resolution*, an applicant for a Land Use Change Permit shall be required to connect to the existing system and to install those water lines and other appurtenances necessary to make the water supply available at the property line of each lot in the development in the following circumstances:

1. **LOCATED WITHIN 400'.** The proposed land use change is located within 400 feet of a component of an available existing water supply system; or

2. **LOCATED WITHIN AN URBAN SERVICE AREA**. The proposed land use change is located in a designated urban service area and it is determined that it is feasible, logical, and consistent with applicable

BLM_0053435

municipal, district and county plans, to connect the development to the water supply system serving the area. If it is determined that it is premature to connect the development to the system at the time of the Land Use Change Permit approval, the County may require, as a condition of approval, that assurances be given, including granting of easements, and/or commitments to pay for or construct specified improvements, to ensure that when it is timely to connect the development to the water supply system, this can feasibly occur.

C.  **EXISTING SYSTEM NOT ACCESSIBLE**. Where an existing water supply system approved by the Colorado Department of Public Health and Environment is not reasonably accessible or connection to it is not feasible, the applicant shall implement one of the following options:

1.  **INSTALL WATER SUPPLY SYSTEM**. Install a water supply system, with water   lines to each lot, the design, construction, maintenance and operation of which complies with the County's regulations and with the standards of the Colorado Department of Public Health and Environmental Resources; or

2.  **SUBMIT EVIDENCE OF ADEQUACY OF INDIVIDUAL SUPPLIES**. Submit evidence satisfactory to the County that adequate individual water supplies that comply with the standards of the Colorado Department of Public Health and Environment and Gunnison County will be available to each lot in the proposed development. The County may refer the application to the Colorado Division of Water Resources for comments on the adequacy of the proposed supply.

D.  **CALCULATION OF ADEQUACY OF SUPPLY.** The legal and physical adequacy of the water supply for a proposed water supply for a proposed land use change proposed as a Major Impact shall be calculated based on the total planned development at full buildout, and for year-round use, using standard engineering practices. Fire flow requirements shall be related to the location and character of the development, and shall comply with the standards of Section 12-107: *Fire Protection*. Calculation shall be based on the following:

1.  **ESTIMATED AVERAGE DAILY DEMAND**. Estimated average daily demand of the entire service area and the proposed development. Demand calculations are to be based on 350 gallons per day (gpd) per residence.

2.  **ESTIMATED MAXIMUM DAILY DEMAND.** Estimated maximum daily demand based on using three times the average daily demand.

3.  **ESTIMATED PEAK HOUR DEMAND**. Estimated peak hour demand based on using six times the average daily demand.

4.  **ESTIMATED AVERAGE DAILY DEMAND FOR COMMERCIAL / INDUSTRIAL USES.** The estimated average daily demand for commercial and industrial uses will be reviewed based on the anticipated demand of the proposed development. Appropriate multipliers may be used in calculating the amount, based on standards as may be required for a specific use by the Colorado Department of Public Health and Environment, or other applicable agency or industry standard.

5.  **WATER SUFFICIENT FOR LANDSCAPING.** As may be required by Section 13-111: *Landscaping and Buffering* each use shall have adequate water to supply required landscaping. Amounts shall be calculated using the irrigation water criteria in Section 12-105: D. 5. a. 1: *Estimated Demand*.

    a.  **IRRIGATION WATER CRITERIA**. The following shall be considered in calculating requirements for the use of irrigation in new development, and shall not apply to agricultural operations in existence as of the effective date of this *Resolution*.

        1.  **ESTIMATED DEMAND**. Estimated irrigation demand based on information supplied by the Natural Resources Conservation Service. The information shall take into account the type of vegetation to be maintained, the soil characteristics, the historic yield, and the available water rights.

        2.  **ESTIMATED ACREAGE**. Estimated acreage to be irrigated.

6.  **ADEQUATE AND RELIABLE WATER SUPPLY**. A water supply that is sufficient and accessible year-round to control and extinguish anticipated fires in the development. This standard shall identify minimum requirements for water supplies for structural and wildland fire-fighting purposes in rural and suburban areas of the county.

    a.  **NFPA CLASSIFICATIONS MAY BE REFERENCED**. To determine the requirements for an adequate and reliable water supply specific to the development, the County may refer to current standards as published by the National Fire Protection Association including the *Occupancy Hazard Classification*

BLM_0053436

*and Construction Classification Tables* within the *Standard on Water Supplies for Suburban and Rural Fire Fighting*.

**b.** **COMPLIANCE WITH FIRE PROTECTION DISTRICT REQUIREMENTS**. The applicant shall provide evidence that the distribution system and storage system are capable of meeting the requirements of the applicable fire protection district, and shall be located on the same site for which development is proposed. When the District's standards conflict with County standards, the County shall only enforce the County standards.

**c.** **MINIMUM REQUIREMENTS MAY BE INCREASED IF CONDITIONS ARE UNIQUE**. The County may determine during the permit application review that additional water supplies are required for fire suppression purposes, considering particular conditions such as the following:

**1.** **LIMITED FIRE DEPARTMENT RESOURCES**. Available equipment is not sufficient to provide suppression for proposed heights of buildings, or there are similar limitations.

**2.** **EXTENDED FIRE DEPARTMENT RESPONSE TIME**. The time reasonably expected for response from the closest fire protection district facility will likely exceed the amount of time in which a structure may be saved.

**3.** **LIMITED ACCESS**. Existing roadways are narrow, of particularly steep grade, existing bridges are not constructed to accommodate emergency vehicles, or no traversable roadways exist from collector roads.

**4.** **HAZARDOUS VEGETATION**. Vegetation that because of its physical characteristics is likely to contribute to the intensity or quick travel of fire.

**5.** **UNUSUAL TERRAIN**. Slope, aspect and elevation create chimneys or similar configurations such that fire is likely to travel quickly.

**6.** **SPECIAL USES**. Uses proposed within the Land Use Change Permit application involve hazardous products, or processes.

**d.** **IDENTIFYING WATER SOURCES**. An indicator, reasonably visible in winter and approved by the applicable fire protection district, shall be located at each location where water may be extracted, and identifying the site for fire protection district emergency use.

**e.** **SECONDARY WATER SUPPLY**. Determination that a secondary water supply is necessary for purposes of fire suppression may be requested from the applicable fire protection district; the County will decide whether that secondary supply shall be required.

**E.** **COMPLIANCE WITH COLORADO DRINKING WATER STANDARDS**. Representative samples of the water source shall be analyzed by a reputable, qualified laboratory to determine compliance with Colorado drinking water standards. When the proposed land use will require potable water for human consumption, the quality of the water shall meet the Primary Drinking Water Standards of the Colorado Department of Public Health and Environment.

**F.** **WATER RIGHTS**. The applicant shall demonstrate ownership, or the right of acquisition, of sufficient water rights to serve the proposed land use change.

**G.** **WELL TESTING**. When a central well or wells are proposed for the water supply, a well shall be constructed on the proposed development site and tested for its capability to provide a consistent and dependable water source in quantity and quality sufficient to serve the proposed use(s). The well shall be installed, tested and monitored as follows:

**1.** **CONTINUOUS PUMPING REQUIRED FOR 24 HOURS**. The well shall be continuously pumped using an electric submersible or top-drive turbine pump for a minimum of 24 hours. The discharge rate shall be measured using a calibrated in-line flow meter or frequent bucket-and-stopwatch measurements. The discharge rate shall be controlled using a control valve on the pump discharge pipe.

**2.** **MONITORING OF RECOVERY**. The well shall be monitored for a minimum of 24 hours following the cessation of pumping to affirm the ability of the aquifer to recover. The monitoring report shall include data concerning the rate and volume of the recovery process.

**3.** **CRITERIA FOR FIRST HOUR OF TESTING**. During the first hour of testing, the flow rate can be adjusted so that the water level drawdown inside the well is about 50 percent of the available drawdown. After the first hour, all attempts should be made to hold the discharge flow rate constant for the remainder of the test.

BLM_0053437

If, during the test, the pumping water level reaches the pump intake, it is permissible to decrease the discharge rate. However, decreasing the discharge rate should occur as a discrete step, rather then a series of small flow rate adjustments.

4. **REQUIRED MONITORING DEVICES**. During testing, water levels in the well shall be monitored using an electric water level probe or pressure transducer.

5. **FREQUENCY OF LEVEL MEASUREMENTS**. The frequency of water level measurements should be commensurate with the rate at which water levels are changing inside the well. As a rule, water levels should be measured once every two minutes during the start of the test, and the time between measurements can be increased as the water level stabilizes or establishes a long-term trend.

6. **WATER SAMPLE TO BE TESTED FOR COMPLIANCE WITH DRINKING WATER STANDARDS**. After a minimum of 24 hours of pumping, a water sample shall be obtained from the pump discharge pipe using appropriate sampling protocol. The water sample shall be analyzed by a State-certified laboratory to evaluate whether or not the well water complies with the Primary Drinking Water Regulations of the Colorado Department of Public Health and Environment.

7. **TESTING REQUIRES QUALIFIED PROFESSIONAL**. Well testing and sampling shall be performed by a Colorado-licensed water well contractor, a certified professional geologist, or a qualified professional engineer licensed  in the State of Colorado or a person who has a current State of Colorado certification granting a license for well-testing and installation of pumping equipment.

8. **UNIQUE SEASONAL REQUIREMENTS.** Because natural water bodies in Gunnison County are affected by cyclical seasonal conditions, the County may require that tests be conducted during the winter months of January and February to ensure testing that most realistically can ensure that a year-round consistent supply will be available to new development. If that requirement is imposed, the applicant may elect also to conduct additional tests during other months of the year.

H. **CONSTRUCTION STANDARDS**. The water supply system shall be built to conform to the standards of the Colorado Department of Public Health and Environment and the well drilling standards of the Colorado Division of Water Resources. The system, to the maximum extent feasible, shall be built also to be consistent with the standards of the nearest public entity that supplies water, to facilitate the possibility of future connection to the system.

I. **ADMINISTRATION.** Where a water supply system is to be installed, an organization shall be set up to administer the operation of the system. Administration shall be by a municipality, water district, or an approved corporation.

## SECTION 12-106: SEWAGE DISPOSAL/WASTEWATER TREATMENT

A. **SANITARY SEWAGE DISPOSAL SYSTEM REQUIRED.** No land use change shall be permitted unless a method of sewage disposal is available to that lot or development that complies with all applicable standards of this *Resolution*, the *Gunnison County Individual Sewage Disposal System Regulations*, and of the Colorado Department of Public Health and Environment.

B. **CONNECTION TO EXISTING SYSTEMS.** An applicant for a Land Use Change Permit shall be required to connect to an existing wastewater treatment system approved by the Colorado Department of Public Health and Environment and to install those connection lines and other appurtenances necessary to make the system available at the property line of each lot in the development in the following circumstances:

1. **LOCATED WITHIN 400 FEET.** The proposed land use change is located in 400 feet of an existing available wastewater treatment system approved by the Colorado Department of Public Health and Environment; or

2. **LOCATED IN URBAN SERVICE AREA.** The proposed land use change is located in a designated urban service area and it is determined that it is feasible, logical, and consistent with municipal, district and County plans, to connect the development to the wastewater treatment system serving the area and approved by the Colorado Department of Public Health and Environment. If it is determined that it is premature to connect the development to the wastewater treatment system at the time of the Land Use Change Permit approval, the County may require, as a condition of approval, that assurances are given, including granting of easements, or commitments to pay for or construct specified improvements, to ensure that when it is timely to connect the development to the system, that this can feasibly occur.

BLM_0053438

**C. DEVELOPMENTS SHALL COMPLY WITH SPECIFIC STUDIES, PLANS OR AGREEMENTS.** New development shall comply with requirements of any applicable "201" *Wastewater Treatment Facilities Studies* (pursuant to the federal *Clean Water Act*) and agreements adopted by Gunnison County.

**D. EXISTING SYSTEM NOT ACCESSIBLE.** Where an existing wastewater treatment system approved by the Colorado Department of Public Health and Environment is not reasonably accessible or connection to it is not feasible, the applicant shall, at the discretion of the decision-making body, implement either of the following options:

1. **INSTALL WASTEWATER TREATMENT SYSTEM.** Install a wastewater treatment system, with sewage collection lines to each lot, the design, construction, maintenance and operation of which complies with the County's regulations and with the standards of the Colorado Department of Public Health and Environment; or

2. **SUBMIT EVIDENCE OF ADEQUACY OF INDIVIDUAL SYSTEMS.** Submit evidence satisfactory to Gunnison County that it will be feasible to install an individual sewage disposal system on each lot in the proposed development that will comply with the requirements of the *Gunnison County Individual Sewage Disposal System Regulations*. The area in the lot where the system is to be located shall be identified.

   a. **REFERRAL TO COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT.** The County may refer the development plans to the Colorado Department of Public Health and Environment for comment and approval, if necessary to make use of the expertise and judgment of that agency to evaluate the potential impacts of individual systems, and determine if a permit from that agency will be required.

**E. EVALUATION REQUIRED.** Any application for a Land Use Change Permit for a Major Impact project that is proposed for development at a density of more than one unit per acre, or as a cluster type of development, or where soil conditions indicate potential problems with individual sewage disposal systems, shall  include as part of the Preliminary Plan application an engineering and economic evaluation of the feasibility of providing a central wastewater treatment system  for that development or tying onto an existing central wastewater treatment system. The evaluation shall include, at a minimum, the following:

1. **ASSESSMENT OF CUMULATIVE IMPACTS.** An assessment of the cumulative environmental impacts of individual sewage disposal systems versus a wastewater treatment system and an assessment of the economic feasibility of implementing a wastewater treatment system.

2. **TOTAL CONSTRUCTION COST.** Total construction cost of the system, including the collection system necessary to serve each lot. Cost to serve each lot, based on estimated tap fees, service fees and operation, replacement and maintenance costs, shall be provided.

3. **IMPACTS ON LOT COSTS.** The estimated impacts on the costs of each lot from the total construction costs of the proposed system.

4. **OPERATING COSTS.** The estimated annual operating and maintenance costs of the system.

5. **SOILS TYPES.** The types of soils and water resources, and hydrologic characteristics present in the area and an evaluation of soil suitability for individual sewage disposal systems, and projected impacts on soils and aquifers.

6. **SURROUNDING USES.** Location of property in relation to other developments in a one-mile radius, including a reasonable calculation of the density of development in the foreseeable future in that area, if known by the applicant. Location of any other existing or proposed wastewater treatment systems, individual sewage disposal systems, domestic water wells, streams, creeks, flat bodies of water, irrigation ditches, and wetlands in this area. Information may also be required on the history of any individual sewage disposal systems failures in this area, as may be available from the Gunnison County Environmental Health Office, or as may otherwise be provided by the applicant.

**F. COUNTY REVIEW.** The Board of Commissioners, as part of its review of the Preliminary Plan application for a Major Impact project, will make a determination as to the viability of a wastewater treatment system, considering the information provided in the evaluation, and the recommendation of the Planning Commission.

1. **DELAY OF DECISION.** The County shall not approve any application for site approval of a new wastewater treatment plant until it has given approval to the Preliminary Plan for the development to be served by such plant.

BLM_0053439

**G. DEVELOPER RESPONSIBILITIES**. If a determination is made by the Board that there is sufficient evidence that the proposed density, intensity of use, or characteristics of soils and hydrology of an area of a proposed land use change are such that a wastewater treatment system should be installed in the development, then the applicant, in addition to any other obligations imposed by this or other County regulations, shall:

1. **SUBMIT DESIGN**. Submit the proposed design to the Colorado Department of Public Health and Environment for review and approval of the proposed treatment plant and collection system.

2. **CHOOSE INSPECTOR**. Allow the Board to choose an inspector of its choice who will work with the developer during construction and represent the County on-site to ensure construction and installation complies with the approved design plans. All change orders or modifications to the approved design shall only be allowed if they are approved by the County's inspector.

3. **PAY COSTS**. Pay all reasonable costs associated with the design and construction of the system and with the employment of the inspector.

**H. STANDARDS FOR WASTEWATER TREATMENT SYSTEM**. Whenever a wastewater treatment system is to be constructed, it shall meet the following standards:

1. **TREATMENT FACILITIES**. Wastewater treatment facilities shall be designed, constructed, maintained an operated pursuant to the requirements of the Colorado Department of Public Health and Environment.

2. **COLLECTION LINES.** Collection lines shall be designed, installed, and maintained to service each lot.

3. **CONSTRUCTION STANDARDS.** The wastewater treatment system shall be built and arrangements made to provide ongoing operation and maintenance to conform to the standards of the Colorado Department of Public Health and Environment. The system shall, to the maximum extent feasible, be built also to be consistent with the standards of the nearest public entity that treats wastewater, to facilitate the possibility of future connection to the system. The construction of the system shall also take into account any recommendations in the applicable "201" Wastewater Treatment Facilities Study with regard to that connection.

4. **DEVELOPER RESPONSIBILITIES FOLLOWING CONSTRUCTION**. Upon completion of system construction, the developer shall provide the County with the following:

   a. **AS-BUILT DRAWINGS**. As-built drawings of the system.

   b. **OPERATIONS MANUAL.** An operations and maintenance manual of the system.

   c. **DEEDING OF FACILITIES TO HOMEOWNERS' ASSOCIATION OR COUNTY.** The developer shall deed the facility, collection system, and all easements and rights-of-way associated with the system to the homeowners' association or the County, if approved by the County upon conditions, including sufficient guaranty of maintenance, performance, operation, and replacement, acceptable to the County, and shall warrant the system for a period of two years, or until at least 50 percent buildout of the development occurs, whichever is greater. Depending upon the projected build out rate, the County may require the developer to provide operating funds (including labor, materials, utilities, and contracted services) for the system, until sufficient users have connected to the system to cover its operating costs.

   d. **SECURITY AGAINST LIENS.** The developer shall verify for the County that no liens exist against the system, or shall provide the County a labor and materials bond.

   e. **MONITORING.** The plan for monitoring, and provision of monitoring records, acceptable to Gunnison County.

5. **COUNTY TO PROVIDE CERTIFIED OPERATOR.** The Board of Commissioners will provide a certified operator who will manage the system. The Board will determine the rate structure and tap fees associated with operation of the system. The rate structure will reflect all reasonable operating costs (including labor, materials, utilities and contracted services) and a capital reserve for repairs and replacement. All costs associated with the rate structure shall be paid by the system users.

## SECTION 12-107: FIRE PROTECTION

**A. APPLICANT SHALL CONTACT FIRE PROTECTION DISTRICT.** It is required that an applicant for a land use change classified as a Major or Minor Impact project that is located in a specific fire protection district contact the

BLM_0053440

district before submitting the application, for the purpose of being informed of the District's design and construction standards that will apply to the application.

1. **PROTECTIVE COVENANTS**. When a land use change that is a subdivision is proposed within a specific fire protection district, subdivision protective covenants shall include language ensuring compliance with the requirements of the applicable fire protection district and giving the applicable district the authority to enforce those provisions.

2. **COUNTY STANDARDS APPLY**. When the District's standards conflict with County standards, the County shall only enforce the County standards.

3. **PROPOSED LAND USE CHANGE OUTSIDE OF ANY DISTRICT**. When a proposed land use change lies outside of any District boundaries, then the applicant shall contact the nearest such District.

   a. **MAJOR IMPACT PROJECT**. As a condition of approval of a proposed Major Impact project outside of District boundaries, the County may require the applicant to provide evidence that the property will be annexed to the applicable District, or that a service agreement has been entered into between the applicant and the District.

   b. **MINOR IMPACT PROJECT**. As a condition of approval of a proposed Minor Impact project outside of District boundaries, the County may require the applicant to provide evidence that the property will be annexed to the applicable District, or that a service agreement has been entered into between the applicant and the District, or the applicant shall meet one of the following requirements:

      1. **INSTALL SPRINKLER SYSTEM**. The applicant shall install a sprinkler system in any structure proposed for habitation, subject to standards of and approval by the applicable fire protection district; or

      2. **SUBMIT WAIVER OF LIABILITY**. The applicant shall submit a signed Warning and Waiver of Liability releasing the County and the applicable fire protection district as part of the application.

B. **STANDARDS FOR VEHICLE ACCESS**. All sites proposed for land use changes shall provide access that is sufficient for emergency vehicles, and for service and other vehicles that need access to the property, except when the site is a patented mining claim, is an inholding within state or federal lands, or it was created before the effective date of this *Resolution*;

   1. **SEPARATED TWO POINTS OF ACCESS ON PRIMARY ROADS**. All subdivision filings shall provide two or more points of dedicated access on primary roads that permit adequately separated ingress/egress, unless an alternative design for a single access point can afford similarly safe access.

   2. **CULVERTS AND BRIDGES**. Any culverts or bridges that are installed or built as part of a development shall be capable of supporting the maximum legal load allowed by Colorado Department of Transportation load factor ratings.

   3. **TURNAROUNDS**. A turn-around of 45' radius shall be included if determined by the applicable fire protection district to be necessary to accommodate emergency vehicles.

C. **FIRE HYDRANTS**. Any residential development that is a Major Impact project, or a LPIP subdivision of more than four residences, and that uses a central water supply system may be required to install a fire hydrant system that meets the current standards of the applicable fire protection district. Commercial and industrial development may also be required to install a hydrant system, based upon the nature of the proposed use, and subject to approval by the County.

   1. **INSTALLATION OF HYDRANTS**. Hydrants shall be installed no more than 1,000 feet apart and shall be fully charged with water and tested before issuance of a Building Permit within a new subdivision. Fire hydrants shall be located as specified by the applicable fire protection district. Generally, fire hydrants shall be located in the public right-of-way, at road intersections.

D. **CISTERNS AND DRY HYDRANTS**. In those developments where a fire hydrant system is not required, water cisterns that meet current standards of the applicable fire protection district may be used and shall be shown on the Final Plan or plat. Dry hydrants that meet current standards of the applicable fire protection district may be installed in lieu of cisterns where available fire suppression water supplies can meet or exceed those of proposed cisterns. The installer of the dry hydrant shall comply with specifications established by the applicable fire protection district.

   1. **MINIMUM CAPACITY**. Capacity shall comply with the requirements of the applicable fire protection district.

BLM_0053441

2.   **LOCATION AND ACCESS**. The location and design of the cisterns or dry hydrants shall be subject to the requirements of the applicable fire protection district; the Colorado State Forest Service can assist in the determination of such locations. The location of the fire protection facilities shall be easily accessible to fire protection personnel and vehicles and shall be identified with a visible sign. Access to the facilities shall be dedicated to Gunnison County for use by the applicable fire protection district, subject to such interagency agreements as may affect such facilities.

3.   **CONSTRUCTION AND MAINTENANCE WITHIN A SUBDIVISION**. The developer of a subdivision shall construct and maintain the cisterns until responsibilities for their maintenance is assumed by the homeowners or property owners association as provided by the declaration of protective covenants. Thereafter, the property or homeowners association for the development shall provide care and maintenance, and shall be charged with such responsibility consistent with protective covenants governing the association. Specific language shall be included in the protective covenants assigning that responsibility to the association.

E.   **OTHER FIRE SUPPRESSION SYSTEMS**. Other fire suppression systems may be required as necessary, after consultation with the applicable fire protection district.

F.   **FITTINGS AND CONNECTIONS.** All fittings and connections for the components of the fire protection system shall be provided at the cost of the developer and shall be compatible with specifications established by the applicable fire protection district. All such equipment shall be required to be tested in accordance with the Development Improvement Agreement and in cooperation with the applicable fire protection district.

G.   **WILDFIRE HAZARD AREAS**. Developments proposed in areas that may be subject to wildfire hazards shall also comply with the applicable standards of Section 11-105: *Development in Areas Subject to Wildfire Hazards.*

BLM_0053442

# ARTICLE 13:
# PROJECT DESIGN STANDARDS

## SECTION 13-101: PURPOSE

This Article establishes the standards by which proposals will be reviewed and approved to regulate development and improvements. Overall, these standards address site details, including structures, roads, utilities, and plantings in order to promote high quality design. These standards are intended to be uniformly applied, to be flexible based on the function of each development, to be sensitive to the unique character of a specific development site, and to local needs and objectives as listed in this Article.

## SECTION 13-102: APPLICABILITY

**A. GENERAL.** Unless otherwise exempted, these standards apply to all applications for Land Use Change Permits and to Building Permit applications on legal lots in Gunnison County for which no Land Use Change Permit has been issued, regardless of impact classification. These standards are to be used by the applicant and the County in designing, reviewing, evaluating, constructing, and operating uses and development activities in Gunnison County. In designated planning areas, more specific guidelines and specifications may apply. Unless specifically exempted within this *Resolution*, all applications for Land Use Change Permits shall also comply with all other applicable standards and requirements of this *Resolution.*

**B. DEVELOPMENT SHALL CONSIDER MUNICIPAL THREE MILE PLANS**. When the proposal is for development located within a municipal three-mile plan area, the development proposal shall address how it comports with the objectives and policies of the applicable municipal Three-Mile Plan.  The County shall consider how the proposed development has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the Three-Mile Plan area. Where there is a conflict between the objectives or policies of a Three-Mile Plan or the intergovernmental agreement, and County standards, County standards shall apply.

   **1. MUNICIPAL THREE MILE PLAN AREAS MAY HAVE DIFFERENT OR ADDITIONAL REVIEW STANDARDS**. Parcels that are located within an area designated within a three-mile area of a municipality, for which an intergovernmental agreement has been adopted between the County and the municipality, may be subject to different or additional review standards, based upon the specific requirements of that agreement and plan.

   **2. COUNTY STANDARDS APPLY WHEN STANDARDS CONFLICT.** Where there is a conflict between the objectives or policies of a Three Mile Plan or the intergovernmental agreement, and County standards, County standards shall apply.

**C. STANDARDS ARE MINIMUM**. These improvements standards are intended to ensure a minimum level of performance. If an alternate design, process, or material can be shown to provide performance equal to or better than that established by these standards, or where it can be shown that strict compliance with these standards would cause unacceptable environmental impacts, or would result in adverse conditions on- or off-site because of unusual topography, size  or shape of the property, existing vegetation, or other exceptional situations or condition, then the Planning Director may recommend that the decision-making body accept the alternative. The evaluation shall consider whether the alternative will provide for an equivalent level of public safety and whether the alternative will be equally durable, so that normally anticipated maintenance costs will not be increased.

## SECTION 13-103: GENERAL SITE PLAN STANDARDS AND LOT MEASUREMENTS

**A. PURPOSE.** This Section establishes standards for site design.

**B. GENERAL SITE PLAN STANDARDS.** Development of any site requires a comprehensive analysis of the site. A proposed site plan shall design and locate roads, driveways, lot lines, building sites and utility corridors to preserve, to the maximum extent feasible the natural features of the site, avoid areas of environmental sensitivity, minimize visual impacts and eliminate adverse impacts to and alteration of, natural features.

BLM_0053443

1. **DESIGN OF BUILDING LOTS.** To carry out the general site plan standards, individual lot lines shall be designed to follow existing features of the site, such as tree lines and natural contours. Location and orientation of lots should complement the natural topography, and maximize the use of existing vegetation and solar exposure.

2. **STRUCTURAL LOCATION STANDARDS.** The location of structures shall complement the natural topography and use existing vegetation.

C. **SITE-SPECIFIC BUILDING ENVELOPES.** To assure compliance with the standards of Article 11: *Resource Protection Standards* and this Article, designation of site-specific building envelopes on site plans shall be required for all Land Use Change Permit applications, including those for Building Permits.

1. **EXCEPTION.** Site-specific building envelopes shall not be required if the subdivision lots were approved by the County before the effective date of this *Resolution.*

2. **ALTERATIONS ALLOWED FOR FLEXIBILITY.** The designation of a building envelope is not intended to be inflexible; alterations may be allowed for the following:

   a. **ENVELOPES ON LEGAL LOTS NOT IN PLATTED, RECORDED SUBDIVISIONS.** A building envelope location approved as part of a Building Permit, or other Land Use Change Permit may be altered by review and approval pursuant to Article 4: *Administrative Review Projects That Do Not Require Land Use Change Permits.*

   b. **ENVELOPES IN PLATTED, RECORDED SUBDIVISIONS.** Except as otherwise regulated pursuant to the requirements of Section 1-106: *Partially Exempted Land Use Changes*, building envelope locations on subdivision lots approved by the County and recorded in the Office of the Gunnison County Clerk and Recorder may be altered as an Administrative Review project, pursuant to Article 5: *Administrative Review Projects That Require Land Use Change Permits.* The relocation shall not substantively conflict with the siting criteria used as part of the original subdivision approval.

3. **SETBACK REQUIREMENTS NOT RELAXED.** A designated building envelope does not alter setback requirements pursuant to Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way* except when permitted by a variance.

D. **GENERAL LOT SIZE.** Except as otherwise required by Section 13-105: *Residential Building Sizes and Lot Coverages* the following shall apply:

1. **MEASUREMENT.** Lot size refers to the amount of horizontal land area contained inside the lot lines of a lot or site. Public rights-of-way shall not be included in calculating lot size.

2. **MINIMUM LOT SIZE.** The minimum permitted lot size is 35 acres, unless a smaller lot size has been authorized pursuant to:

   a. **CONDITIONS OF A LAND USE CHANGE PERMIT.** Conditions of an approved Land Use Change Permit, or a subdivision plat approved and recorded in the Office of the Gunnison County Clerk and Recorder before the effective date of this *Resolution*;

   b. **COMPLIANCE WITH MUNICIPAL THREE MILE PLAN.** When the proposal is for development located within a municipal three-mile plan area, the development proposal shall address how it comports with the objectives and policies of the applicable municipal Three-Mile Plan. The County shall consider how the proposed development has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the Three-Mile Plan area. Where there is a conflict between the objectives or policies of a Three-Mile Plan or the intergovernmental agreement, and County standards, County standards shall apply.

   c. **PERMIT ISSUED BEFORE MAY 6, 1977.** Is a parcel created by a Gunnison County zoning permit issued before May 6, 1977; or

   d. **EXEMPT PARCEL.** Is an "exempt" parcel created pursuant to C.R.S. 30-28-101.

3. **LOT SIZE IN NEW SUBDIVISIONS.** In residential subdivisions created after the effective date of this *Resolution*, the minimum lot size shall be no smaller than one acre unless served by a public waste-water treatment system. Determination of lot size for a proposed development in a certain location shall be evaluated by its compliance with Article 10: *Locational Standards.*

BLM_0053444

**E. MEASUREMENT OF BUILDING SIZE.** The measurement of the size of a building shall be by the definition of "floor area" in the applicable building code, adopted and amended by Gunnison County, and which includes the size of the basement in the overall measurement.



FIGURE 4: HEIGHT MEASUREMENT BY TYPES OF BUILDINGS

**F. MINIMUM RESIDENCE FLOOR AREA.** The minimum floor area of residences shall be 600 sq. ft. for each residence, except as allowed by Section 9-101: *Uses Secondary to a Primary Residence*.

**G. HEIGHT MEASUREMENT.** Height shall be measured as the vertical distance from grade plane to the average height of the highest roof surface, which may include the highest point of the coping of a flat roof or to the deck line of a mansard roof or to the average height of the highest gable of a pitched or hipped roof (Figure 4: *Height Measurement by Types of Buildings*). Where the finished ground level slopes away from the exterior walls, the reference plane shall be established by the lowest points within the area between the building and the lot line or, where the lot line is more than six feet from the building between the structure and a point six feet from the building (Figure 5: *Measurement of Building Height*.)

**Figure 5: Measurement of Building Height**



**H. ALLOWED STRUCTURE HEIGHTS.** Height of structures shall be as follows:

1. **RESIDENTIAL STRUCTURES.**

   a. **FLAT ROOFS.** Structures with flat roofs shall not exceed 30 feet in height.

   b. **PITCHED ROOFS.** All structures with pitched roofs shall not exceed 30 feet in height. The minimum roof pitch shall be as required by the applicable building code, adopted and amended by Gunnison County.

2. **STEEPLES, CHIMNEY AND SPIRES.** Steeples, chimneys and spires may extend ten feet higher than the roof peak.

3. **COMMERCIAL OR INDUSTRIAL STRUCTURES.** Unless otherwise exempted or regulated by this *Resolution*, commercial and industrial structures shall not exceed 30 feet in height, except that the allowable height may be increased to a maximum of 45 feet upon findings by the applicable decision-making body that:

   a. **ADEQUATE FIRE PROTECTION AVAILABLE.** Adequate fire protection shall be available, pursuant to Section 11-105: *Development in Areas Subject to Wildfire Hazards*; and Section 12-107: *Fire Protection*;

   b. **VIEWS AND SOLAR ACCESS NOT OBSTRUCTED.** Views and solar access shall not be significantly obstructed by the increased height; and

BLM_0053445

    **c.** **USE AND ENJOYMENT OF ADJACENT LAND USE NOT DIMINISHED.** Use and enjoyment of adjacent lands shall not be diminished.

    **d.** **NO INTERFERENCE WITH AIRPORT PATHS OR ZONES.** There shall be no interference with established airport flight paths or structural height restrictions within airport influence zones.

**4.** **HEIGHTS OF ACCESSORY STRUCTURES.** Unless otherwise exempted or regulated by this *Resolution*, no accessory structure that has a flat or pitched roof shall exceed 30 feet in height, except that agricultural structures constructed as part of an agricultural operation may exceed the height of the residence.

## SECTION 13-104: SETBACKS FROM PROPERTY LINES AND ROAD RIGHTS-OF-WAY

**A.** **APPLICABILITY.** Unless otherwise exempted by this *Resolution*, the following shall apply, all land use changes and approved Building Permit site plans shall meet property line setback requirements indicated in Table 7: *Setbacks from Property Lines and Road Rights-of-Way.* Other setback requirements, not directly related to property lines or road rights-of-way, are addressed in Table 3: *Recreational Vehicle Park Property Line Setbacks,* Table 4: *Setbacks for Construction Materials Operations,* and Table 5: *Setbacks for Mining That Is Not a Construction Materials Operation.*

**B.** **MEASUREMENT**. Front, rear and side setbacks shall be measured as the distance between the nearest lot line and the foundation of a structure, along a line at right angles to the lot line. Where no minimum front, side or rear yards are specified for large parcels, a setback line shall parallel the corresponding lot line.

**C.** **ZERO LOT LINE DEVELOPMENTS**. To allow an alternative to standard single-family home development, and encourage an efficient use of land and maximization of centralized wastewater treatment systems, zero lot line developments are allowed. They are considered compatible with other residential uses and may be used to create a transition from lower or medium to higher density residential development.

**1.** **GENERAL SITING REQUIREMENTS**. Zero lot line houses may be sited on one side lot line, and sometimes also on the rear or front lot line to maximize the available yard space, or on a common lot line so that they resemble duplexes. They may also be sited on alternating lot lines, to give the appearance of housing in a more conventional subdivision. (Figure 6: *Zero Lot Line Siting*)

    **a.** **NO ZERO LOT LINE ON BOUNDARY OF UNRELATED PARCEL.** No zero lot line construction shall be allowed on the exterior boundary line of a parcel or lot that is adjacent to an unrelated parcel; all structures proposed to be located along that line shall be required to meet the standard setbacks required by this Section.

**2.** **REQUIRED TO TIE ON TO EXISTING WASTEWATER TREATMENT SYSTEMS**. Zero lot line developments shall be permitted only if served by wastewater treatment systems that have the capacity to provide service, and the providers are willing to provide service.

**3.** **MINIMUM LOT WIDTHS**. Minimum lot width shall be 40 feet. Lot widths may be alternated, combining narrow and wide lots to provide visual variety.



FIGURE 6: ZERO LOT LINE SITING

**4.** **MINIMUM SEPARATION BETWEEN RESIDENCES**. There shall be a minimum of 16 feet between residences, unless a greater distance is required by the applicable fire protection district.

**5.** **USES LIMITED ON LOT LINE WALL.** The wall of the residence located on the zero lot line shall have no windows, doors, air conditioning units or any other type of opening except that the following alternatives may be used:

    **a.** **AMENITIES ON THE ZERO LOT LINE**. Enclosed atriums, patios or similar amenities are permitted on

BLM_0053446

the zero lot line side when they are enclosed by three walls of the residence and a solid wall on the zero lot line at least eight feet in height and constructed of material that complements the color and texture of the residence exterior.

    **b.** **ALTERNATE ORIENTATION OF LOTS**. When lots are angled at a 45 degree angle to the roadway, windows may be added on the zero lot line wall.

**6.** **EASEMENT REQUIRED**. A minimum five foot easement shall be required on a zero lot line development

TABLE 7: SETBACKS FROM PROPERTY LINES AND ROAD RIGHTS-OF-WAY

| SETBACK TYPE | MINIMUM PROPERTY LINE SETBACK |
|---|---|
| **RESIDENTIAL SETBACKS** | |
| **Single family** | Front: 25<br>Side/Rear: 15 |
| **Townhomes, condominiums and other multiple family buildings** | Front: 25 feet<br>Side/Rear: 15 feet<br>Separate multiple-family buildings within a single project may be constructed a minimum of ten feet from other buildings within the single project. |
| **Zero Lot Line developments** | Residences may be constructed on the property line, pursuant to Section 13-104: C: *Zero Lot Line Developments* |
| **BUSINESS AND COMMERCIAL SETBACKS** | |
| **Adjoining all other non-residential** | 15 feet |
| **Adjoining residential** | 50 feet |
| **Outdoor Vending Operation** | 35 feet from a residential property boundary |
| **INDUSTRIAL SETBACKS** | |
| **Adjoining other industrial** | 15 feet |
| **Adjoining business or commercial** | 100 feet |
| **Adjoining residential areas, agricultural areas or public lands** | 300 feet |
| **SETBACKS FROM ROADS:** | |
| **When width of right-of-way is known, measurement shall be from edge of right-of-way; when unknown, measurement shall be from the road center line, and an additional 40 feet added to the requirements for setbacks from roads.** | |
| **Federal highways** | 40 feet |
| **State highways** | 40 feet•<br>Land uses that access onto either federal or state highways shall comply with the Colorado Highway Access Code |
| **County and other public roads** | 40 feet |
| **Platted subdivision development roads** | 25 feet |

- Unless adjoining uses enter into party-wall or similar agreements permitting the construction of adjoining buildings to the common lot line and construction meets requirements of applicable building code.

- If compliance with setbacks from roads results in an inability to build, the applicant may request a variance, pursuant to Section 13-104: E: *Variance from This Section.*

- Other setback requirements, not directly related to property lines or road rights-of-way, are addressed in Section 11-109: G. 2: *Irrigation Ditch Easements;* Section 15-103: A. 6. a: *Irrigation Ditch Easements;* Section 11-107: *Protection of Water Quality* relative to the Restrictive Inner Buffer and Outer Variable Buffer; Table 3: *Recreational Vehicle Park Property Line Setbacks;* Table 4: *Setbacks for Construction Materials Operations;* and Table 5: *Setbacks for Mining That Is Not a Construction Materials Operation.*

plat, and referenced within protective covenants for the development, providing access to the zero lot line wall from the adjoining lot for purposes of maintenance of the zero lot line wall.

**7.** **DRAINAGE SHALL BE CONTAINED ON-SITE**. In addition to meeting the requirements of Section 13-117: *Drainage, Construction and Post Construction Storm Water Runoff,* runoff from the residence located on the zero lot line shall be contained within the zero lot line easement of the adjacent lot. Roofs pitched in the direction of the zero lot line shall be guttered.

BLM_0053447

**D.   LAND USE PERMIT APPLICATION DESIGN PLAN THAT DOES NOT COMPLY WITH THIS SECTION.** When a Land Use Change Permit application is being reviewed by the Planning Commission in which the plans propose a design layout that includes setbacks that do not comply with the standards of this Section, the applicant shall submit the information required by Section 13-104: E: *Variance From This Section.* The Planning Department shall review of the application, pursuant to Section 3-110: *Planning Department Review of Application*, and shall submit copies of the application and the Department report to members of both the Planning Commission and Board of Adjustments.

1.   **JOINT PUBLIC HEARING.** The Board of Adjustments and Planning Commission shall jointly conduct the public hearing, and the notice shall so indicate. The chairperson of the Planning Commission shall preside by the board of Adjustments shall be the body that determines the variance.

2.   **SCHEDULING OF VARIANCE REVIEW DURING LAND USE CHANGE PERMIT APPLICATION REVIEW.**

   a.   **MINOR IMPACT.** When the proposed land use change is classified as a Minor Impact project, the joint hearing shall be conducted during, and shall meet the requirements of the Minor Impact project review process, pursuant to Article 6: *Minor Impact Projects.*

   b.   **MAJOR IMPACT.** When the proposed land use change is classified as a Major Impact project, the joint hearing shall be conducted during, and shall meet the requirements of the Preliminary Plan review process, pursuant to Section 7-302: *Preliminary Plan Review Process for Major Impact Projects.*

**E.   VARIANCE FROM THIS SECTION.**   A variance from the requirements of this Section may be requested. An applicant for variance from property line setback requirements shall submit:

1.   **AGREEMENT FROM ADJACENT LAND OWNER.** Notarized letters of consent from the landowners whose properties are immediately adjacent to the property line affected by the reduced setback.

2.   **APPLICATION FORM.** The Planning Department shall provide an application form, which shall be completed by the applicant and returned to the Planning Department. The form shall, at a minimum, include the following:

   a.   **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and stating the same information for the agent.

   b.   **PROPERTY OWNER.** Name of the owner of the property; if different than the applicant, a notarized letter from the owner consenting to the application, must be submitted.

   c.   **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property, and/or a metes and bounds description should be included.

3.   **ACTION ON VARIANCE APPLICATION.** It is the goal but not the requirement (as scheduling may be affected by limited access, inclement weather, or other unforeseen circumstances) of this *Resolution* that within 15 days following the closure of the public hearing, the Board of Adjustments shall complete its review of the application, approve or deny the application, and forward that decision to the Planning Commission.

   a.   **DENIAL REQUIRES REDESIGN OF SITE PLAN.** If the Board of adjustments denies the application for variance from setback, the applicant shall be required to submit a new design to the Planning Commission that complies with this Section. No additional public hearing on the redesign shall be required, unless the change significantly alters the numbers of units or types or intensity of uses.

   b.   **VARIANCE REVIEW EXTENDS LAND USE CHANGE PERMIT APPLICATION REVIEW TIMELINE.** The Planning Commission period of review shall be extended by the length of time necessary for the Board of Adjustments to complete its action, but shall otherwise meet the time restrictions imposed by the respective impact classification review process.

4.   **BOARD OF ADJUSTMENTS REVIEW, HEARING AND ACTION.** A complete copy of the application shall be forwarded to the Board of adjustments, together with a copy of any comments by the Building Inspector.

5.   **PUBLIC NOTICE.** Public notice that the Board of Adjustments will consider the application shall be given by publication, posting, and mailing of notice, pursuant to Section 3-112: *Notice of Public Hearing.*

BLM_0053448

    **a.** **COST FOR PUBLIC HEARING NOTICE(S)**. The applicant shall be billed and shall be responsible for paying for the actual cost of publication of all applicable public hearing notices as required pursuant to Section 3-112: *Notice of Public Hearing.*

**6.** **HEARING**. The Board of Adjustments shall conduct a public hearing to consider the application, that shall be conducted pursuant to Section 3-113: *Conduct of Public Hearing*, and shall include the following:

    **a.** **PLANNING DEPARTMENT REPORT**. The Planning Department shall present its report.

    **b.** **APPLICANT PRESENTATION**. The applicant shall, at his/her choice, present the application for variance, and the reasons for requesting it.

**7.** **ACTION BASED ON FINDINGS**. The Board of Adjustments shall consider all relevant materials and testimony and the standards of this Section and shall approve, approve with conditions, or deny the application, and shall, as part of that action, include specific findings that the application does or does not comply with Section 13-104: F: *Standards for Approval of Variance from Property Line Setbacks.*

**F.** **STANDARDS FOR APPROVAL OF VARIANCE FROM PROPERTY LINE SETBACKS**. An application for a variance for setback from property line requirements shall comply with all of the following standards:

**1.** **SPECIAL CIRCUMSTANCES EXIST**. There are special circumstances or conditions, including exceptional topography, or the narrowness, shallowness, or shape of the property, that are peculiar to the land or structure for which the variance is sought, and do not apply generally to land or structures in the neighborhood; and

**2.** **SITUATION DOES NOT RESULT FROM ACTION BY APPLICANT.** The special circumstances and conditions have not resulted from any act by the applicant or land owner; and

**3.** **STRICT APPLICATION CAUSES PRACTICAL DIFFICULTIES**. The special circumstances and conditions are such that the strict application of the requirements of this *Resolution* would result in peculiar and exceptional practical difficulties for, or an exceptional and undue hardship on, the owner of the land if the requirements of this *Resolution* were to be strictly applied; and

**4.** **NECESSARY TO RELIEVE PRACTICAL DIFFICULTIES**. The granting of the variance is necessary to relieve the applicant of the peculiar and exceptional practical difficulties or the exceptional and undue hardship, and is the minimum variance that could be granted to achieve that relief; and

**5.** **DOES NOT ADVERSELY AFFECT NEIGHBORHOOD**. The granting of the variance will not change the character or otherwise adversely affect the neighborhood surrounding the land where the Variance is proposed, will not have a substantially adverse impact on the enjoyment of land abutting on or across the road from the property in question, will not impair an adequate supply of light or air to adjacent property, and will not increase the danger of fire, or otherwise endanger public safety or the public interest.

**G.** **APPROVAL SHALL BE RECORDED.** An approval action by the Board of Adjustment shall be memorialized by a Certificate of Variance Approval, with which shall be included a copy of the site plan that illustrates the variance from property line setback requirement. The Certificate shall be recorded, at the cost of the applicant, by the Planning Department in the Office of the Gunnison County Clerk and Recorder. An action of denial shall be filed in the records of the Planning Department.

# SECTION 13-105: RESIDENTIAL BUILDING SIZES AND LOT COVERAGES

**A.** **PURPOSES.** This Section establishes standards for structure sizes and building envelopes to achieve the purposes stated in Section 1-103: *Purposes* and in addition, to preserve the historic and architectural scale of structures and building envelopes in the county, to provide for innovation and flexibility in the use of individual parcels, and to recognize that a variety of appropriately sized, sited and scaled buildings are an amenity to Gunnison County.

**B.** **APPLICABILITY.**

**1.** **RESIDENTIAL AND RESIDENTIAL/MIXED USES**. The requirements of this Section shall apply to all residential and residential/mixed land uses, including multiple-family housing developments.

**2.** **RESIDENCES ASSOCIATED WITH AGRICULTURAL, COMMERCIAL OR INDUSTRIAL OPERATIONS.** Residences associated with agricultural, commercial or industrial operations shall be subject to maximum structure size requirements of this Section. However, the size of accessory structures,

BLM_0053449

the aggregate size of residences and accessory structures, the constraints on coverage and  on building envelopes shall not apply to agricultural,  commercial or industrial operations.

**C. PARCELS SMALLER THAN 6,500 SQ. FT.** The aggregate square footage of all structures on a parcel that is smaller than 6,500 sq. ft. shall not exceed 45 percent of the square footage of the parcel unless approved pursuant to Section 13-105: G: *Impact Classification And Required Findings For Coverage   Exceeding Standard.*

**D. PARCELS EQUAL TO OR LARGER THAN 6,500 SQ. FT.** The following shall apply to residential structures on parcels equal to or larger than 6,500 sq. ft:

**1. PERCENT OF COVERAGE**. In no event shall the aggregate square footage of coverage by structures on a parcel 6,500 sq. ft. or larger exceed 45 percent of the total area of the parcel, or 4,100 sq. ft. whichever is greater, unless approved pursuant to Section 13-105: G: *Impact Classification And Required Findings For Coverage Exceeding Standard.*

**2. MAXIMUM BUILDING SIZE AND MAXIMUM AGGREGATE OF ALL STRUCTURES**. No building on a parcel equal to or larger than 6,500 sq. ft. shall exceed 10,000 sq. ft. (including a primary residence no larger than 9,000 sq. ft., an attached garage no larger than 1,000 sq. ft., and a secondary residence no larger than 2,500 sq. ft.) and the aggregate of all structures shall not exceed 12,500 sq. ft. unless:

**a. PARCEL 40 ACRES OR APPROVED BY LPIP**. The parcel is 40 acres or larger in size, excepting parcels approved either pursuant to Section 14-102: *Large Parcel Incentive Process* or for a single residence on a parcel that is an integral component of a "conservation development"; and

**b. LAND USE CHANGE PERMIT APPROVES GREATER SIZE.** Approved pursuant to Section 13-105: G: *Impact Classification and Required Findings for Coverage Exceeding Standard.*

**E. ADDITIONAL FEE FOR RESIDENCES LARGER THAN 1,000 SQ. FT.** A fee shall be included within the overall Land Use Change Permit fee for those residences larger than 1,000 sq. ft., subject to a schedule of fees adopted by the Board, available in the Planning Department.

**F. BUILDING ENVELOPE**. The following standards shall apply in the location and use of a residential building envelope:

**1. BUILDINGS SHALL BE CONFINED IN ENVELOPE.** Except as approved pursuant to Section 13-105: G: *Impact Classification And Required Findings For Coverage Exceeding Standard,* all structures on a parcel equal to or larger than 6,500 sq. ft. must be confined in a compact building envelope.

**2. BUILDINGS SHALL SHARE SAME SERVICES.** Except when not practicable or efficient, or as may be modified or prohibited by County, state or federal regulation, all buildings on a parcel that is 6,500 sq. ft. or larger shall:

**a. SHARE SEWAGE DISPOSAL.** Share the same individual sewage disposal system;

**b. SHARE WATER SUPPLY**. Utilize the same water supply;

**c. BE LOCATED IN SAME DRAINAGE BASIN**. Be located in the same drainage basin; and

**d. SHARE ROAD AND DRIVEWAY**. Be accessed by the same road and driveway.

**G. IMPACT CLASSIFICATION AND REQUIRED FINDINGS FOR COVERAGE EXCEEDING STANDARD.** An application for a primary residence larger than 9,000 sq. ft. or for an aggregate of structures larger than 12,500 sq. ft. shall be classified and reviewed as a Minor Impact project. No approval shall be given to a project that exceeds the maximum coverage, building size, or the aggregate size of buildings allowed by this Section unless, in addition to the proposal's having complied with Article 10: *Locational Standards*, Article 11: *Resource Protection Standards*, Article 12: *Development Infrastructure Standards*, and Article 13: *Project Design Standards*,  the Planning Commission finds by clear and convincing evidence that the project shall meet or exceed the following standards:

**1. FINDING OF NO OBTRUSIVE VISIBILITY REQUIRED FOR APPROVAL.** The structure(s) is found not to be obtrusively visible. Elements to minimize such visibility shall include:

**a. MINIMIZE VISIBILITY OF STRUCTURE BY SITING.** The proposed project and structures have been sited and shall be constructed using existing topography and natural vegetation for screening to the maximum extent feasible, to minimize the visibility of each structure from outside of the parcel on which it is to be built. During construction and use, disturbance and removal of existing vegetation outside of

BLM_0053450

the permanent footprint of the structures shall be constrained to the maximum extent feasible, and restored substantially to its preconstruction state, to the maximum extent feasible; and

**b.  MINIMIZE VISIBILITY OF STRUCTURE BY SCREENING.** After such siting, any structure that would be obtrusively visible from outside of the parcel on which it is to be built shall be screened to the maximum extent feasible from such visibility to preserve the natural characteristics of the site by natural vegetation, landscaping and architectural techniques (including colors that blend with the natural background, forms, and textures of the site, non-reflectability and clustering). Natural land forms are acceptable as screening; earth berming is acceptable only if it replicates the natural forms, scale and characteristics of the site. Deciduous vegetation of adequate density in its non-foliage season to provide effective screening is acceptable in combination with other screening techniques.

**c.  LOCATION OF UTILITIES UNDERGROUND.** Utilities shall be located and installed, to the maximum extent feasible, to not be visible. If installed underground, the natural environment disturbed by installation shall be restored to the maximum extent feasible to its condition before the utilities were installed.

**2.  OBTRUSIVE VISIBILITY SHALL CAUSE DENIAL.** If, after such siting and screening, any portion of a structure is obtrusively visible from outside of the parcel on which it is to be built, that portion of the project shall be denied. In order to meet this standard, the entire structure need not be invisible from outside of the parcel on which it is to be built. This standard requiring denial shall not be applicable to structures that are part of a Large Parcel Incentive Process project, pursuant to Section 14-102: B: 5. *Incentive Provided by Flexibility for Larger Residences and Lot Size.*

**H.  FURTHER SUBDIVISION.** Nothing in this Section forbids, or shall be construed to forbid, subdivision of a parcel on which there exists a residential structure larger than 9,000 sq. ft. or an aggregate of structures larger than 12,500 sq. ft., except that no subdivision shall be permitted unless the resulting parcel that contains the structure that exceeds 9,000 sq. ft., and/or all of the buildings that total an aggregate of 12,500 sq. ft. is at least 40 acres in size.

# SECTION 13-106: ENERGY AND RESOURCE CONSERVATION

**A.  PURPOSE.** The purpose of this Section is to ensure that residential development contains features to minimize the consumption of energy and to conserve resources

**B.  APPLICABILITY.** Applications for residential construction, including manufactured homes, must earn points according to requirements of the *Energy Resource Conservation Worksheet*, separately adopted and amended from time to time by the Board.

**C.  INSPECTION AND COMPLIANCE.**

**1.  COMPLIANCE FORM MUST BE SUBMITTED WITH BUILDING PERMIT APPLICATION.** A completed form identifying proposed compliance with the *Energy Resource Conservation Worksheet* must be submitted with the applicable residential building permit application; no residential building permit application will be processed without the completed form.

**2.  COMPLIANCE SATISFACTION.** Compliance with the *Energy Resource Conservation Worksheet* requires at least 50 percent of the surface or total application for that measure to be fulfilled.

**3.  DEMONSTRATION OF COMPLIANCE.** Compliance with the *Energy Resource Conservation Worksheet* will generally be demonstrated by one of two methods:

**a.  COMPLIANCE IS INDICATED AS "COUNTY."** If compliance is indicated as "County," County staff may conduct actual on-site inspections, or require the submittal of appropriate engineering reports or calculations to establish compliance.

**b.  COMPLIANCE IS INDICATED AS "SELF."** If compliance is indicated as "Self," the Applicant will be required to sign the form and certify that a measure has been complied with. Gunnison County reserves the right to conduct follow-up inspections or compliance audits of self-certified measures.

# SECTION 13-107: INSTALLATION OF SOLID-FUEL-BURNING DEVICES

**A.  PURPOSE.** The purpose of this Section is to minimize air pollution caused by solid-fuel-burning devices emissions by regulating their use, and to encourage the use of other heating alternatives that achieve better

BLM_0053451

emission performance and heating efficiency and that comply with the emissions performance standards as adopted by the Colorado Department of Public Health and Environment Air Quality Control Commission. It is further the policy of the Board to encourage the replacement of non-approved devices with cleaner sources of heat.

**B. APPLICABILITY.**

1. **NEW STRUCTURES REQUIRING BUILDING PERMITS.** Any structure for which a Building Permit is requested or required after the effective date of this *Resolution* shall be required to comply with this Section. When a new portion of a structure requires a Building Permit, and a solid-fuel-burning device is to be located in that new portion, that solid-fuel-burning device shall comply with this Section.

2. **NEW STRUCTURES THAT DO NOT REQUIRE BUILDING PERMITS.** Any new structure for which no Building Permit is required, as defined by this *Resolution*, by the applicable building code, adopted and amended by Gunnison County, or by any other code or regulation adopted by Gunnison County, shall be required to comply with this Section.

3. **EXISTING DEVICES IN EXISTING STRUCTURES**. Any solid-fuel-burning device, including coal-fired furnaces, existing in an existing structure as of the effective date of this *Resolution* is not required to be replaced, except that any non-approved solid-fuel-burning device, when replaced or relocated, shall comply with Section 13-107: H: *Replacement or Modification of Solid Fuel- Burning Devices.*

**C. COMPLIANCE WITH STANDARDS IN AREAS AROUND TOWNS OF CRESTED BUTTE, MT. CRESTED BUTTE AND CITY OF GUNNISON**. When the proposed project is located within the boundaries of a municipal three mile plan area defined within a Three-Mile Plan of the Towns of Crested Butte, Mt. Crested Butte or the City of Gunnison, the following standards shall apply in addition to the general standards of this Section, whether or not the County has adopted the Three-Mile Plan. When the area of an existing or proposed development overlaps the mapped three-mile area within the Three-Mile Plan, the entire development shall comply with these standards.

1. **IN A SINGLE FAMILY RESIDENCE.** Any single-family residential structure, including detached condominiums and townhouses not in multiple-family buildings, and manufactured/mobile homes for which a Building or Manufactured Home Permit is issued after the effective date of this *Resolution* shall be allowed to install one fireplace, and one approved solid-fuel-burning device, or two approved solid-fuel-burning devices per single family residence. Except, an integrated secondary residence does not qualify for devices in addition to those identified above for the primary residence; a duplex does not qualify for devices in addition to those identified above for a single-family residence.

2. **IN MULTIPLE-FAMILY RESIDENCES, HOTELS, COMMERCIAL AND INDUSTRIAL BUILDINGS.** No solid-fuel-burning device shall be allowed in individual units of multiple-family buildings, hotel/motel units, commercial or industrial buildings, except that one fireplace and one solid-fuel-burning device, or two approved solid-fuel-burning devices may be installed per building in the building's common public area, per the first 50,000 sq. ft., and an additional fireplace and one approved solid-fuel-burning device, or two approved solid-fuel-burning devices per any square footage above 50,000 sq. ft.

**D. MAXIMUM NUMBER OF DEVICES ALLOWED OUTSIDE MUNICIPAL THREE MILE PLAN AREAS.** When the project is located outside the boundaries of a municipal three mile plan area defined within a Three-Mile Plan of the Towns of Crested Butte, Mt. Crested Butte or the City of Gunnison**,** the number of fireplaces and devices is limited to the following:

1. **IN A SINGLE FAMILY RESIDENCE.** Any single family residential structure, including detached condominiums and townhouses not in multiple-family buildings, and manufactured/mobile homes for which a Building or Manufactured Home Permit is issued after the effective date of this *Resolution* shall be allowed to install two fireplaces, or two approved solid-fuel-burning devices, or one fireplace and one approved solid-fuel-burning device. Except, an integrated secondary residence does not qualify for devices in addition to those identified above for the primary residence; a duplex does not qualify for devices in addition to those identified above for a single-family residence.

2. **IN MULTIPLE-FAMILY RESIDENCES, HOTELS,  COMMERCIAL AND INDUSTRIAL BUILDINGS.** No solid-fuel-burning device shall be allowed in individual units of multiple-family buildings, hotel/motel units, commercial or industrial buildings, except that one fireplace and one approved solid-fuel-burning device, or two approved solid-fuel-burning devices may be installed per building in the building's common public area, per the first 50,000 sq. ft., and an additional fireplace and one approved solid-fuel-burning device, or two approved solid-fuel-burning devices per any square footage above 50,000 sq. ft.

BLM_0053452

E. **ADDITIONAL FEE FOR A FIREPLACE.** The County shall charge a fee specifically for the installation of a fireplace, separate from a Building Permit or Land Use Change Permit fee. The amount of the fee shall be included in a schedule of fees adopted by the Board, available in the Planning Department, and the County shall hold the fees, for the purpose of subsidizing the retrofitting and/or replacement of existing non-approved solid-fuel-burning devices and/or monitoring of air quality.

F. **NO NEW COAL-BURNING DEVICES.** No new coal-burning devices shall be allowed to be installed after the effective date of this *Resolution*.

G. **NO ADDITIONAL DEVICES.** In existing structures that have two or more solid-fuel-burning devices as of the effective date of this *Resolution*, an additional one shall not be installed.

H. **ACCESSORY STRUCTURES.** One solid-fuel-burning device (whether compliant or non-compliant) is allowed per non-residential structure that is accessory to a residence, for temporary or sporadic use, whether the structure is attached or detached.

I. **NO LIMIT TO NUMBER OF NON-SOLID-FUEL-BURNING DEVICES.** There is no limitation on the number of approved non-solid-fuel-burning devices that may be installed in any structure, so long as they all comply with all applicable federal, state and County codes and regulations.

J. **INSTALLATION.** Devices shall be installed as follows:

1. **SOLID-FUEL-BURNING DEVICE.** Any solid-fuel-burning device shall be installed pursuant to the standards and specifications defined by the manufacturer of that device, or shall meet the clearances specified in the *Uniform Mechanical Code*.

2. **NON-SOLID-FUEL-BURNING DEVICE**. Any non-solid-fuel-burning device shall be installed pursuant to the standards and specifications of its manufacturer and the *Uniform Mechanical Code*.

K. **INSPECTION.** The installation of any solid-fuel-burning device or non-solid-fuel-burning device shall be subject to inspection and approval by the Gunnison County Building Inspector and, as applicable, by the applicable fire protection district in which the device is located. Only the affected unit will be inspected.

L. **FEES.** Inspection fees shall be as delineated in a schedule of fees charged for permits issued by the Planning Department, adopted and amended from time to time by the Board of Commissioners.

M. **SPARK ARRESTORS.** Spark arrestors shall be required in al solid-fuel-burning device systems to which this Section applies pursuant to Section 13-107: B.1.: *New Structures Requiring Building Permits,* Section 13-107: B. 2.: *New Structures That Do Not Require Building Permits*, and Section 13-107: B. 3.: *Existing Devices in Existing Structures.*

## SECTION 13-108: OPEN SPACE AND RECREATION AREAS

A. **GENERAL.** This Section intends to insure that new development provides for or contributes to park and recreation facilities for the community and residents of new developments, to provide passive and active recreation opportunities, and to preserve open space for the purpose to protect sensitive natural areas, agricultural forage areas and view corridors.

B. **EXEMPTIONS.** This Section shall not apply to agricultural operations. Unless specifically required by this Section, projects that are classified as Administrative Review projects and Minor Impact projects are exempt.

C. **PROPOSED DEVELOPMENT LOCATED WITHIN MUNICIPAL THREE MILE PLAN AREA.** When a development is proposed within a municipal Three-Mile Plan area, the development design shall address the objectives and policies of the applicable Three Mile Plan, as follows:

1. **STANDARDS WITHIN INTERGOVERNMENTAL AGREEMENT.** When an adopted intergovernmental agreement exists between the County and a municipality, proposed open spaces, including parks and other recreational amenities for any land use change located within the applicable municipal Three-Mile Plan area shall be designed to comply with the standards referenced or imposed by that agreement.

2. **COUNTY STANDARDS APPLY IF NO INTERGOVERNMENTAL AGREEMENT**. If no intergovernmental agreement exists, or there are no open space standards within the intergovernmental agreement, the County shall consider, but not necessarily be bound by, comments submitted by the municipality.

D. **MOBILE HOME COMMUNITIES.** Whether classified as a Minor or Major Impact project, a mobile home community shall include open space pursuant to Section 9-203: *Mobile Home Communities.*

BLM_0053453

**E.   MINOR IMPACT PROJECTS.** Except as exempted by Section 13-108: B: *Exemptions*, the requirements of this Section shall apply to specific Minor Impact projects as follows:

1.   **CHILD CARE CENTER.** A child care center shall provide an outdoor play area, as required within Section 9-506: *Child Care Center.*

2.   **GROUP HOME.** A group home shall comply with the standards required by Section 9-507: *Group Home.*

3.   **MINOR IMPACT COMMERCIAL AND INDUSTRIAL USES.** Unless otherwise required by this *Resolution* or other adopted policy or regulation of Gunnison County to contribute a prorated share to the purchase and maintenance of open space, and/or developed recreation areas, commercial and industrial uses that are classified as Minor Impact projects pursuant to Section 6-102: *Projects Classified as Minor Impact* shall provide open space by including landscaping elements pursuant to Section 13-111: *Landscaping and Buffering*, and setbacks from property lines pursuant to Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way.*

**F.   MAJOR IMPACT PROJECTS.** Except as exempted by Section 13-108: B: *Exemptions*, the requirements of this Section shall apply to specific Major Impact projects as follows:

1.   **MAJOR IMPACT COMMERCIAL AND INDUSTRIAL USES.** Unless otherwise required by this *Resolution* or other adopted policy or regulation of Gunnison County to contribute a prorated share to the purchase and maintenance of open space, and/or developed recreation areas, commercial and industrial uses that are classified as Major Impact projects pursuant to Section 7-101: *Projects Classified as Major Impact* shall provide open space by including landscaping elements pursuant to Section 13-111: *Landscaping and Buffering*, and setbacks from property lines pursuant to Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way.*

2.   **MAJOR IMPACT RESIDENTIAL USES.** A minimum of 30 percent of any proposed residential subdivision, or multiple-family development shall be permanently set aside for public, private, or common developed and/or undeveloped open space, except that the amount of open space may be proposed to be decreased by the applicant, and approved or conditionally approved by the Board when the proposed project complies with Section 10-102: *Locational Standards for Residential Development* and Section 10-103: *Residential Density,* and when:

a.   **PAYMENT IN LIEU.** Payment is made by the applicant pursuant to any adopted County policy or regulation, to a fund whose purpose is to purchase or maintain dedicated open space areas or other public benefit; or

b.   **DEVELOPMENT IS LOCATED WITHIN A MUNICIPAL THREE MILE PLAN AREA OR CONNECTED TO A CENTRAL WASTEWATER TREATMENT FACILITY.** The development is located within a municipal Three Mile Plan area, or is connected to a central wastewater treatment facility; or

c.   **PUBLIC LANDS SURROUND THE PROPOSED DEVELOPMENT.** Public lands significantly surround the proposed development, and any significant impacts of the proposed development on those lands are mitigated by the applicant, In determining whether impacts require mitigation, the County shall consider, but shall not necessarily be bound by, the comments of the agency in whose jurisdiction the public lands are located; and

d.   **PROPOSED OPEN SPACE IS COMPATIBLE WITH EXISTING AREA DEVELOPMENT.** The open space of the proposed development is compatible with that of existing development within the impact area.

**G.   CALCULATION OF OPEN SPACE.** Calculation of open space shall not include the footprints of buildings or structures, roadbeds or parking areas, except when those buildings, structures, roadbeds or parking areas are required by the County as part of a recreational area to serve a residential development, or when such buildings or structures are designated on federal, state or local lists of historically significant buildings or sites; and shall not include land within the building envelopes of residential lots, except that:.

1.   **LOTS ARE LARGER THAN ONE ACRE.** Lots within a proposed residential development shall be one acre or larger, and

2.   **INCLUDING LAND BETWEEN BUILDING ENVELOPES NO MORE THAN TEN PERCENT.** The land between designated building envelopes shall comprise no more than ten percent of the total amount of the calculated open space.

BLM_0053454

**H. USES ALLOWED AND AREAS TO BE PROTECTED.** The following are areas that should be protected to the maximum extent feasible within designated open space, listed in no particular order of priority:

**1. HABITAT AND ENVIRONMENTALLY SENSITIVE AREAS.** Areas of environmental sensitivity and those that are sensitive wildlife habitat shall be included in the undeveloped open space to the maximum extent feasible.

**2. UNIQUE AND/OR FRAGILE AREAS.** Unique or fragile areas, including geological formations, forested areas, critical view sheds or water bodies.

**3. FLOODPLAINS.** Lands in the floodplain, as identified by mapping, pursuant to Section 11-103: *Development in Areas Subject to Flood Hazards*.

**4. HISTORIC SITES.** Historically significant structures and sites, as listed on federal, state, or local lists of historic places.

**5. PUBLIC LANDS ACCESS.** Areas that have historically provided, or are identified as desirable for public access to public lands.

**6. AGRICULTURAL LANDS.** Irrigated agricultural lands, including valley bottoms, hay meadows, and pasturelands.

**7. NATURAL CONDITION.** Land designated as undeveloped open space shall be left in its natural condition, except as may be recommended by the Colorado Forest Service for maintenance to discourage fire. A developer or owner may make certain improvements, including constructing walking and bicycle trails, providing picnic areas, or similar amenities, as approved by the County.

**8. PASSIVE OR ACTIVE RECREATIONAL AREAS MAY BE REQUIRED.** Gunnison County may require or allow the designation of a passive or active recreational area within the designated open space of a development, and the installation of recreational facilities for use by its residents and/or the general public, based upon the following criteria. Standards of the National Recreation and Park Association and the American Academy for Park and Recreation Administration's *Park, Recreation, Open Space and Greenway Guidelines*, or standards obtained from another credible source shall be used to determine the exact spatial and dimensional requirements needed for a specific type of recreation area or facility.

**a. CHARACTERISTICS**. The characteristics of the open space land;

**b. POPULATION NEEDS.** The estimated age and the projected recreational needs of persons likely to live in the development;

**c. EXISTING FACILITIES.** The proximity, nature, availability and capacity of existing public or private facilities, and/or the close proximity of public lands.

**d. COST.** The estimated cost of the recreational facilities; and

**e. COMPATIBILITY.** Compatibility with adjacent land uses.

**I. DESIGN REQUIREMENTS.** Design of open space areas shall address the following:

**1. CONTIGUOUS BLOCKS.** Open space for non-recreational or passive recreational uses shall be in relatively large contiguous blocks and shall not be fragmented into small, unconnected areas, to the maximum extent feasible. This shall not preclude open space that protects wetlands or sensitive wildlife habitat area.

**2. LINKAGE.** To the maximum extent feasible, sites shall be designed so that designated open space areas and conservation easements are linked to other open spaces, particularly stream corridors and contiguous wetlands, including such open lands or spaces that are located on adjacent properties.

**J. PRESERVATION AND MAINTENANCE OF OPEN SPACE**. Open space areas shall be physically maintained so that the historic natural condition or use and enjoyment as open space is not diminished or destroyed. Open space areas shall be owned, preserved, and maintained pursuant to this Section, by any of the following methods, alone or in combination:

**1. CONSERVATION EASEMENTS.** The dedication of perpetual conservation easements or their equivalent is encouraged, particularly when uses of those easements shall be restricted to ranching or undeveloped recreation, or when those easements are to be dedicated for public use and enjoyment, and where appropriate, incorporate public trails.

BLM_0053455

2. **DEDICATION.** Open space areas shall be designated to a municipality or any other appropriate public or private non-profit entity acceptable to the County that is also willing to accept the obligation for monitoring and preservation.

3. **COMMERCIAL USE ON COMMONLY-OWNED OPEN SPACE.** In the case of private open space in a subdivision, ownership in common and held by a homeowners' or property owners' association that assumes full responsibility for its maintenance, common undeveloped open space may not be used as a commercial enterprise that charges the general public a fee for its use, unless approved by the County.

K. **DEED RESTRICTIONS.** Any lands deeded in private, public, or common ownership and dedicated for open space purposes shall have protective covenants and deed restrictions ensuring perpetual compliance with the following requirements:

1. **FUTURE SUBDIVISION OR NON-OPEN SPACE USES.** The open space shall not be subdivided or used for non-open space purposes in the future.

2. **PERPETUITY.** The use of the open space shall continue in perpetuity, subject to state statutory limitations for the purposes specified;

3. **MAINTENANCE.** Appropriate requirements, including funding, shall be made for the maintenance of the open space. Such requirements shall include requirements for removal of litter, dead and diseased trees, noxious weeds and other vegetation, pursuant to Section 13-115: *Reclamation and Noxious Weed Control*, when appropriate. Removal of plant material may not be required where the vegetation provides important wildlife habitat or assists in the maintenance of free-flowing natural or artificial watercourses or stream channels so that floodplain levels are not altered. Maintenance of open spaces used for recreational activities may be limited to insuring that there are no hazards, nuisances, or unhealthy conditions; and

L. **DESIGNATION ON PLAN.** The Preliminary and Final Plans/Plat of a Major Impact project and the Final Plan/Plat of a Minor Impact project shall show the dedications of any open space lands and recreation areas.

## SECTION 13-109: SIGNS

A. **GENERAL.** This Section is designed to permit signs that facilitate communication, promote the safety of motorists and pedestrians, and encourage economic development by identifying businesses and other lands uses in ways that complement and enhance the environment. This provides a permitting system to govern the placement of outdoor advertising and other informational signs in the unincorporated areas of Gunnison County.

B. **REPEAL OF GUNNISON COUNTY SIGN CODE.** This Section repeals and replaces the requirements in the *Gunnison County Sign Code*.

C. **RELATIONSHIP TO OTHER REGULATIONS.** Nothing in this Section shall be construed as exempting an applicant from any other applicable county, state, or federal regulations, including but not limited to those in Gunnison County Resolution Series 1989 No. 42: *Concerning Placement of Tourist-Oriented Directional Signs*, pursuant to C.R.S. 43-1-420 (3).

D. **PERMIT REQUIRED.** Before any sign is erected, constructed, structurally altered or moved, it shall comply with the requirements in this Section and shall have received a permit from the Planning Department, unless the sign is expressly exempted from the provisions of this *Resolution*.

1. **APPLICATION FORM.** The Planning Department shall provide the appropriate application form, which, at a minimum, shall include the following:

    a. **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and stating the same information for the agent.

    b. **PROPERTY OWNER.** Name of the owner of the property; if other than the applicant, notarized letter from the owner consenting to the application, must be submitted.

    c. **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, or metes and bounds), property address and common description of the parcel on which the sign is proposed to be located. A copy of the recorded deed to the property should be included.

    d. **ILLUSTRATION OF SIGN.** A rendering, to scale and dated by the person who prepared it, of the dimensions and appearance of the proposed sign.

E. **SIGNS ALLOWED WITHOUT PERMITS.** The following signs do not require a Sign Permit:

BLM_0053456

1.  **PUBLIC DIRECTIONAL SIGNS.** Signs required or authorized for a public purpose by law or statute, including traffic control signs, and excluding those defined by Gunnison County Resolution Series 1989 No. 42: *Concerning Placement of Tourist-Oriented Directional Signs*, pursuant to C.R.S. 43-1-420 (3).

2.  **PUBLIC UTILITY LOCATION SIGNS.** Signs placed by a public utility showing the location of underground facilities.

3.  **SIGNS LOCATED WITHIN A BUILDING,** so long as such signs are not oriented to and are not viewed from a public right-of-way, private road, parking area or public space outside the building

4.  **TEMPORARY SIGNS.** Pennants or banners advertising a special event. Notice of such signs shall be required to be filed by the sponsoring organization with the Planning Department before display. Such signs may be erected no sooner than two weeks before the event, and shall be removed in one week after the event; but in no event shall a banner be erected more than 30 days.

5.  **LIVESTOCK DRIVES.** Signs necessary for the safe movement of livestock on public roads.

6.  **OCCUPANT AND HOME OCCUPATION SIGNS.** One residential identification sign per residence, containing the name(s) of occupant(s), address of the premises, and/or identifying any home occupation as defined and regulated in this *Resolution.* These signs shall be limited to wall and ground signs that are no more than six sq. ft. in area, and may be illuminated by a concealed, non-flashing light source. Wall signs may be attached to any structure and/or fence.

7.  **REAL ESTATE SIGN.** A temporary wall or ground sign not more than six sq. ft. advertising the sale, rental, or lease of a designated structure or land area for a permitted use on which the sign is located. One sign shall be allowed per lot, shall not be illuminated, except that when the subject property abuts two public roadways, there may be one sign facing each roadway. The sign(s) shall be removed immediately after the property is sold, rented or leased.

8.  **CONSTRUCTION SIGN.** A temporary wall or ground sign not more than 32 sq. ft. advertising the construction, remodeling or rebuilding of a certain structure for a permitted use on which the signs are located. One sign shall be allowed per project, shall not be illuminated and shall be removed immediately on completion of construction.

9.  **MEMORIAL AND HISTORICAL SIGNS.** Cornerstones, monuments, commemorative tablets and historical signs of not more than ten sq. ft.

10. **HOLIDAY AND SEASONAL DECORATIONS.** Decorative, customary signs commonly associated with designated national, local or religious holidays or season.

11. **ADVISORY SIGNS.** Signs warning of prohibited activities including trespassing, hunting, fishing, or swimming may be posted without limitation as to numbers, but are limited to two sq. ft. or less per sign.

12. **BUSINESS HOURS SIGNS.** "Open/closed" and related hours-of-operation signs that do not exceed two sq. ft.

13. **POLITICAL CAMPAIGN SIGNS.** Political signs that do not exceed 32 sq. ft. in area are permitted. The signs shall be removed no later than one week following the date of the subject election.

F.  **SIGNS INTEGRAL TO LAND USE CHANGE PERMITS. A** sign to be located in, or as an integral part of a development shall conform to the requirements of this Section except when differing sign requirements are incorporated into, and approved as a part of the Land Use Change Permit by the applicable decision-making body.

G.  **COMMERCIAL, INDUSTRIAL AND BUSINESS CLUSTER SIGNS.** Multiple businesses, commercial, or industrial establishments that are part of an industrial or business park may construct one cluster sign at each approved access to the development that includes the name of the development and/or listings of individual businesses in the development. Within the development, one sign per establishment is allowed, and each shall comply with the requirements of this Section.

H.  **NONCONFORMING SIGNS.** All signs that existed as of the effective date of the *Gunnison County Sign Code,* or were permitted pursuant to its requirements, may be retained so long as they are kept in a state of good repair as specified in Section 13-109: J.3. *Repair or Removal,* and so long as they are not relocated, replaced, structurally altered, or damaged by wind, fire or other cause to the extent that 50 percent or more of their replacement value has been destroyed.

I.  **GENERAL STANDARDS.**

BLM_0053457

1. **ON-SITE LOCATION.** All signs shall identify or advertise only the business or establishment upon which the sign is located.

2. **ONE SIGN PER USE.** There shall be one sign per primary use, except that when the subject property abuts two public roadways, there may be one sign facing each roadway.

3. **NO SIGN IN ROAD RIGHT-OF-WAY.** No signs shall be allowed on any County or development road right-of-way, and existing signs in either of these rights-of-way shall be removed immediately upon request of the governing body.

4. **EXTERNAL LIGHT SHALL BE MINIMIZED.** Externally lit signs shall be designed, installed and maintained to eliminate or minimize upward directed light and glare and so that lights illuminate only the sign and not property that adjoins or is nearby. Such light shall not interfere with the vision of motorists.

5. **INTERNALLY LIT SIGNS PROHIBITED.** There shall be no internally lit signs.

6. **NO MISLEADING INFORMATION.** Information presented on a sign shall not be misleading, erroneous or patently untrue.

7. **NO SETBACK LIMITATION SPECIFIC TO SIGNAGE.** There shall be no setback limitation except that sign placement shall not interfere with snow removal, or vision of motorists, and shall not significantly detract from the environmental or aesthetic character of the County.

**J. CONSTRUCTION AND MAINTENANCE.**

1. **STURDY CONSTRUCTION.** All signs and sign structures shall be constructed of materials of sufficient strength and quality to withstand weathering or deterioration by wind, moisture and other natural elements, and shall be maintained in a state of good repair with all braces, bolts, supporting framework, fastenings, lettering and design work free from deterioration.

2. **WIND LOAD.** Wind load requirements shall be equal to, or greater than 26 pounds per sq. ft. of sign area.

3. **REPAIR OR REMOVAL.** The County Building Inspector shall have the authority to order the repair, alteration or removal of any sign or structure that constitutes a hazard to public health and safety, or which is otherwise not pursuant to this Section. In the event that such a sign has not been removed, altered or repaired within 60 days after written notification by the Inspector, the Board may, after due public notice and hearing, require that sign or structure to be removed at the expense of the owner of the sign.

**K. SIGN AREA MEASUREMENT.**

1. **MAXIMUM INDIVIDUAL SIGN AREA.** The maximum permitted area of individual signs shall be 50 sq. ft.

2. **MAXIMUM AGGREGATE SIGN AREA.** The maximum permitted aggregate area for cluster signs shall be 70 sq. ft.

3. **MAXIMUM HEIGHT.** The maximum height of a sign shall be no greater than 16 feet above the natural grade of the ground on which it is placed, except that a sign located over a property's entranceway or exit way may be 20 feet above the road over which it is placed.

4. **MEASUREMENT OF SINGLE SURFACE.** To determine the surface area of a sign, the County Building Inspector shall measure the perimeter enclosing the extreme limits of the display surface(s) of the sign, including all graphic elements, borders and riders, but excluding the sign's structure or bracing unless those elements are part of the message or face of the sign. Where there are two faces back to back, the total area of the largest face shall determine the area of the sign.

5. **MEASUREMENT OF MULTI-FACETED SIGN.** Where two faces are placed at greater than 45-degree angles to one another, the sign area shall mean the total area of both faces.

**L. SIGNS ALLOWED ONLY BY VARIANCE BY THE BOARD.** The following signs are not permitted, except by variance issued by the Board, pursuant to Section 13-109: M: *Variances from the Requirements of this Section*:

1. **NON-COMPLIANT SIGNS.** Any sign not in compliance with the provision of these regulations.

2. **OFF-PREMISE SIGNS.** Off-premise signs except public directional signs, and those signs permitted pursuant to Gunnison County Resolution Series 1989 No. 42: *Concerning Placement of Tourist-Oriented Directional Signs*, which are allowed without a variance.

3. **PROJECTING ROOF-MOUNTED SIGNS.** Roof-mounted signs that project above the highest point of a roofline or fascia of a building.

BLM_0053458

4. **SIGNS ADVERTISING LOTS IN PROPOSED DEVELOPMENTS.** Signs promoting lots or units for sale in a proposed development after approval of Preliminary Plan, but before approval of the Final Plan. A variance for this type of sign may be granted for up to one year. The sign shall include language that the development is pending approval.

5. **SIGNS ADVERTISING CONDOMINIUM AND TOWNHOMES.** Signs advertising condominium and townhouse construction may be posted after approval of Preliminary Plan, but before approval of the Final Plan. A variance for this type of sign may be granted for up to one year.

6. **OVERSIZE HOME OCCUPATION SIGN SIGNS**. Signs of more than six sq. ft. identifying a home occupation.

M. **VARIANCES FROM THE REQUIREMENTS OF THIS SECTION.** The Board may authorize a variance from this Section, in accordance with the following process:

1. **SUBMITTAL OF REQUEST BY APPLICANT.** The Planning Department shall provide the appropriate application form that shall, at a minimum, include the following:

   a. **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and stating the same information for the agent.

   b. **PROPERTY OWNER**. Name of the owner of the property; if other than the applicant, notarized letter from the owner consenting to the application, must be submitted.

   c. **PROPERTY LOCATION**. The legal description (referencing lot and block or tract numbers, homesteads, or metes and bounds), property address and common description of the parcel on which the sign is proposed to be located. A copy of the recorded deed to the property should be included.

   d. **COMPLIANCE WITH CRITERIA OF DECISION**. An explanation of how the variance meets the requirements of Section 13-109: M. 4: *Criteria for Board Decision*.

2. **BUILDING INSPECTOR REVIEW.** The Building Inspector shall prepare a written report that includes:

   a. **SIGN PERMIT APPLICATION.** A copy of the Sign Permit application as submitted by the applicant.

   b. **DETERMINATION OF NON-COMPLIANCE**. Reference to the specific subsections of this Section with which the application does not comply.

3. **BOARD MEETING**. The request for variance shall be scheduled on the next available agenda of the Board.

   a. **BUILDING INSPECTOR'S REPORT.** The Building Inspector shall explain the sign application's noncompliance with the applicable standards of this Section.

   b. **APPLICANT'S PRESENTATION.** The applicant may present his request, including the reasons that the request complies with Section 13-109: M.4: *Criteria for Board Decision*.

4. **CRITERIA FOR BOARD DECISION**. The Board shall consider the Building Inspector's report, the information included in the request for variance, and the presentation of the applicant. A variance shall be granted only upon a demonstration by the applicant by a preponderance of the evidence that the literal enforcement of this Section would cause unnecessary or undue hardship to the applicant, and that there will be no adverse impact to adjacent land uses or the general public; and upon written finding by the Board that all of the following criteria have been met:

   a. **HARDSHIP NOT SELF-IMPOSED.** That the hardship has not been created by the applicant, or his/her predecessor;

   b. **NO HARM TO PUBLIC SAFETY.** That there is no detriment to the public health, safety and welfare;

   c. **DEMONSTRATION OF NEED.** That there exists a clear and reasonable need for the sign at the proposed location;

   d. **CONSISTENCY WITH NEIGHBORHOOD**. That the type, style, size and other characteristics of the proposed sign are consistent with the character of the proposed location;

   e. **COMPLIANCE WITH ALL OTHER STANDARDS**. That the location, character and format of the proposed sign are not in conflict with the purposes of this Section, or of this *Resolution*.

BLM_0053459

    **f.**  **PUBLIC BENEFIT OUTWEIGHS IMPACTS.** That the benefits that the sign would provide to the public and county visitors would outweigh any adverse aesthetic or other impacts caused by the proposed sign.

**N.**  **RECORD OF DECISION.** The record of the Board's decision shall be included within the Board's meeting minutes.

**O.**  **VIOLATIONS AND ENFORCEMENT OF THIS SECTION**.

    **1.**  **TYPES OF VIOLATIONS.** Any sign or sign structure erected, constructed, reconstructed, altered, maintained or used in a manner not in compliance with this Section shall be considered in violation.

    **2.**  **ENFORCEMENT**. Enforcement of this Section shall comply with the requirements of Article 16: *Enforcement*. To initiate enforcement, the Building Inspector shall notify the sign owner of the violation by certified mail at their last known address, citing portions of this Section that the sign specifically violates.

**P.**  **FEES.** The cost of Sign Permits shall be as delineated in a schedule of fees charged for permits available in the Planning Department, and adopted and amended by the Board.

## SECTION 13-110: OFF-ROAD PARKING AND LOADING

**A.**  **PARKING FACILITIES REQUIRED.** There shall be provided for any structure that is constructed, expanded, or structurally altered, or for which the use is proposed to be changed, permanent off-road parking facilities sufficient to minimize traffic congestion and provide safe vehicular access, pursuant to all of the requirements of this Section and with snow storage requirements in Section 13-112: *Snow Storage*.

**B.**  **CONTINUING OBLIGATION**. The provision and maintenance of off-road parking and loading spaces that comply with the standards of this Section shall be a continuing year-round obligation of the property owner.

**C.**  **BUILDING PERMIT SITE PLANS**. The site plan for a Building Permit application shall indicate the number and location of parking loading spaces to be provided for the proposed structure (s). Location of the parking shall comply with Section 13-112: *Snow Storage*. As applicable, the number of spaces shall comply with requirements of the protective covenants for individual subdivisions, or shall otherwise meet the requirements of this Section, whichever number is larger.

**D.**  **CHANGE OF USE.** Should the use to which a lot or building is put, so that the need for off-road parking and loading requirements is increased, the required Land Use Change Permit application shall include the additional required spaces or loading facilities.

**E.**  **STANDARDS FOR OFF-ROAD PARKING.** Unless otherwise required by this *Resolution*, off-road parking facilities shall meet the minimum distances listed in Appendix Table 3: *Off-Road Parking Requirements.* Staff shall determine the appropriate classification for any use or facility not listed based on the impacts and traffic generation characteristics of the proposed use or facility.

    **1.**  **MULTIPLE USES.** Unless otherwise permitted, a land use change that includes more than one use shall provide parking and loading in an amount equal to the total of the requirements for all uses.

    **2.**  **OCCUPANCY- OR CAPACITY-BASED STANDARDS**. For the purpose of computing parking requirements based on employees, students, residents, or occupants, calculations shall be based on the largest number of persons working on any single shift, the maximum enrollment, or the maximum fire-rated capacity of a structure, whichever is applicable and whichever results in the greater number of spaces.

TABLE 8: OFF-ROAD LOADING SPACES FOR NON-RESIDENTIAL USES

| GROSS FLOOR AREA | NUMBER OF SPACES REQUIRED |
|---|---|
| • 1-15,000 sq. ft. | 1 |
| • 15,001-50,000 sq. ft. | 2 |
| • 50,001-001 sq. ft. | 3 |

**F.**  **OFF-ROAD LOADING.** Non-residential uses shall, at a minimum, provide the number of off-road loading spaces as listed in Table 8: *Off-Road Loading Spaces for Non-Residential Uses.*

BLM_0053460

G. **LOCATION OF OFF-ROAD PARKING SPACES.** Required off-road parking spaces shall be located on the same lot as the primary use, unless otherwise provided in this Section. In all cases, the nearest parking shall be provided within 100 feet of, and to the maximum extent feasible, the farthest parking shall be no more than 300 feet from the primary use for which parking is required, unless adequate ground transportation is provided.

1. **LOCATION IN NON-RESIDENTIAL AREAS.** Required off-road parking spaces may occupy any part of the property, except in required landscape areas, or sight distance triangles (Figure 7: *Sight Distance Triangle*), or in locations disconnected from the primary use.

2. **PROHIBITED USES OF REQUIRED PARKING SPACES.** Required parking spaces shall be available only for the parking of operable passenger vehicles of residents, guests, customers, patrons, and employees of the use for which the parking spaces are required. Prohibited uses of the required parking spaces shall be as follows:

   a. **MATERIALS OR INOPERABLE VEHICLES.** Materials or inoperable vehicles shall not be stored in required parking spaces.

   b. **DELIVERY VEHICLES.** Delivery vehicles or trucks used in conducting the business or use shall not be parked in required parking spaces during business hours, but may be parked in those spaces for overnight storage.

   c. **COMMERCIAL VEHICLES ON RESIDENTIAL PROPERTY.** Commercial vehicles or heavy equipment used in a business operation shall not be parked in the parking spaces that are required for a residential use, unless the commercial vehicle is used for a permitted home occupation or is a company vehicle used for commuting.

H. **ACCESSIBLE PARKING FOR PHYSICALLY DISABLED PERSONS.** A portion of the total number of required parking spaces in each off-road parking area shall be specifically designated, located, and reserved for use by persons with physical disabilities.



FIGURE 7: SIGHT DISTANCE TRIANGLE

1. **Number of Spaces.** The minimum number of accessible spaces shall be a portion of the total number of off-road parking spaces required, as determined from Table 9: *Minimum Number of Accessible Parking Spaces Required for Disabled Persons.* Parking spaces reserved for persons with disabilities shall be counted toward fulfilling off-road parking requirements.

2. **MINIMUM DIMENSIONS.** All parking spaces reserved for persons with disabilities shall comply with the parking space dimension standards of this Section. Access aisles shall immediately abut the spaces, and:

. **TABLE 9: MINIMUM ACCESSIBLE PARKING SPACES FOR DISABLED PERSONS**

| TOTAL PARKING SPACES PROVIDED PER LAND USE | NUMBER OF VAN-ACCESSIBLE SPACES REQUIRED | NUMBER OF CAR-ACCESSIBLE SPACES REQUIRED |
|---|---|---|
| 1-25 | 1 | 0 |
| 26-50 | 1 | 1 |
| 51-75 | 1 | 2 |
| 76-100 | 1 | 3 |
| 101-150 | 1 | 4 |
| 151-200 | 1 | 5 |
| 201-300 | 1 | 6 |
| 301-400 | 1 | 7 |
| 401-500 | 2 | 7 |
| 501-1,000 | 1 of every 8 accessible spaces | 7 of every 8 accessible spaces |
| 1,000 or more | | |
| These numbers may be superseded by current regulations pursuant to the federal *American With Disabilities Act.* | | |

   a. **CAR-ACCESSIBLE SPACES.** Car-accessible spaces shall have at least a five foot wide access aisle located next to the designated parking space.

BLM_0053461

    **b.** **VAN-ACCESSIBLE SPACES**. Van-accessible spaces shall have at least an eight foot wide access aisle located next to the designated parking spaces.

**3.** **LOCATION OF SPACES.** Required spaces for persons with disabilities shall be located in close proximity to building entrances and shall be designed to permit occupants of vehicles to reach the building entrance along an unobstructed path.

**4.** **SIGNS AND MARKING.** Required spaces for persons with disabilities shall be identified with signs and pavement markings identifying them as reserved for persons with disabilities. Signs shall be posted directly in front of the parking space at a height of no less than 42 inches and no more than 72 inches above pavement level.

**I.** **PARKING AREA DESIGN STANDARDS.**

**1.** **SURFACING AND MAINTENANCE**. All permanent off-road parking areas shall be constructed with a dust-free, all-weather surface and shall be compacted and graded with a minimum grade of one-half percent to permit drainage of surface water without damage to adjacent land or improvements and will not adversely alter natural drainage patterns.

    **a.** **SPECIAL EVENTS PARKING SURFACES.** Parking areas for special events and similar temporary uses may be treated with water for dust control during the time the special event is to occur.

**2.** **MARKING FOR PAVED LOTS.**

    **a.** **IDENTIFICATION.** Each required off-road parking space and off-road parking facility that is paved shall be identified by surface markings and shall be maintained to be easily visible and accessible, unless infeasible due to snowfall. Markings shall provide for orderly and safe loading, unloading, parking, and movement of vehicles, and maintained in a highly visible condition include striping, directional arrows, lettering on signs, and in handicapped-designated areas.

    **b.** **ACCESS.** One-way and two-way accesses into required parking facilities shall be identified by directional arrows. Any two-way access located at any angle other than 90 degrees to a road shall be marked with a traffic separation stripe the length of the access. This requirement does not apply to drive aisles.

**3.** **DIMENSIONS OF PARKING SPACES.**

    **a.** **GENERAL.** Each off-road parking space shall measure at least nine feet by 20 feet.

    **b.** **COMPACT SPACES.** The applicable review body shall be authorized to approve the use of compact parking spaces for up to 30 percent of employee parking, if a parking study, prepared by the applicant, indicates that demand use by smaller vehicles. Compact parking spaces shall have minimum dimensions of eight and one-half feet by 18 feet. Compact parking spaces shall be designated by signs or other pavement markings.

    **c.** **VERTICAL CLEARANCE.** Vertical clearance for off-road parking spaces shall be a minimum of eight feet.

    **d.** **REDUCTION FOR PLANTER OVERHANGS.** When a parking space abuts a landscape island or planter, the front two feet of the required parking space length may overhang the planter.

    **e.** **SPACES NEAR OBSTRUCTIONS.** The width of each parking space that abuts a wall, column, or other obstruction higher than six inches tall shall be increased by two feet on the obstructed side.

TABLE 10: MINIMUM AISLE WIDTHS FOR PARKING SPACES

| INCREASE IN PARKING SPACE WIDTH IN FEET | MINIMUM AISLE WIDTH FOR SPECIFIED PARKING ANGLE IN FEET | | | |
|---|---|---|---|---|
| | **90 DEGREES** | **75 DEGREES** | **60 DEGREES** | **45 DEGREES OR LESS** |
| 0.00 | 24 | 22.5 | 18 | 13 |
| 0.50 | 23 | 20.5 | - | - |
| 1.00+ | 22 | - | - | - |
| • Required fire lanes shall have a minimum width of 24 feet with a vertical clearance of 13.5 feet. | | | | |

**4.** **AISLE WIDTHS.** Aisle widths adjoining off-road parking spaces shall comply with the following dimensional standards (Table 10: *Minimum Aisle Widths for Parking Spaces*).

BLM_0053462

5. **PARKING SPACES BACKING ONTO PUBLIC RIGHTS-OF-WAY PROHIBITED.** Parking spaces shall be designed so that vehicles will not back directly into a public right-of-way.

6. **ACCESS DRIVEWAYS.** Access driveways into required off-road parking areas shall be designed and constructed to facilitate flow of traffic and provide the maximum safety of access and egress for vehicles and pedestrians. Driveways shall not be used to meet off-road parking requirements.

   a. **MINIMUM SURFACE WIDTH**. The minimum width of the access driveway shall be 12 feet for a one-way drive and 24 feet for a two-way drive.

**J. SCREENING, LIGHTING AND LANDSCAPING OF PARKING AREAS.**

1. **COMPLIANCE WITH LANDSCAPING REQUIREMENTS.** The design of all parking areas shall comply with the requirements of Section 13-111: *Landscaping and Buffering.*

2. **COMMERCIAL OR INDUSTRIAL USES.** All off-road parking areas serving commercial or industrial uses and containing five or more spaces shall be screened from view of all adjacent residential uses by sufficient vegetation, or by a solid, decorative concrete, wood, or masonry wall, which shall comply with the requirements of Section 13-113: *Fencing.*

3. **PARKING LOT LIGHTING.** Lighting provided for a parking area shall be designed pursuant to Section 13-114: *Exterior Lighting.*

## SECTION 13-111: LANDSCAPING AND BUFFERING

**A. APPLICABILITY.** This Section shall apply to all Land Use Change Permits except for mining operations.

**B. GENERAL.** Proposed land use changes shall integrate the elements of the site plan and design, so that the land use change preserves and enhances the unique identity of the site. Landscaping may include plant materials including trees, shrubs, ground covers, perennials and annuals, and other materials including rocks, walls, fences, planters, and paving materials.

**C. NEW RESIDENTIAL LAND USE CHANGES.** Plant materials or landscaping elements shall be required throughout any new residential subdivision where desirable or necessary for privacy or buffering from other land uses.

**D. NON-RESIDENTIAL LAND USE CHANGES.** To the maximum extent feasible, areas of the site that are not occupied by buildings and required improvements shall be landscaped by retaining, maintaining, or planting native grasses, ground cover, shrubs, and trees.

**E. LANDSCAPING PLAN.** Applicants for a land use change shall prepare a landscaping plan if the land use change is a residential development that is classified as a Major Impact project, or any multiple-family residential development, mobile home community or recreational vehicle park, or commercial, industrial or other non-residential use that is classified as either a Minor or Major Impact project, pursuant to Section 3-111: *Classification of Impact.* Information is available from the Colorado State Forest Service to assist in designing a landscaping plan that minimizes the potential for wildfire hazard. The plan shall indicate the type and location of vegetation to be included on the site. The plan shall also contain a planting schedule and a plan for maintenance of all landscaping to be installed.

1. **AMOUNT OF LANDSCAPING REQUIRED**. At least one tree and three shrubs shall be provided per each 500 sq. ft. of the area that is shown as being landscaped on the landscaping plan. All landscape planting areas that are not dedicated to trees or shrubs shall be landscaped with grass, ground cover, or other appropriate landscape treatment.

2. **PROTECTION OF EXISTING VEGETATION.** No material or temporary soil stockpiling shall be placed within four feet of existing shrubs or in the drip line of trees. During construction, temporary protective barriers or tree wells shall be installed around each plant and/or group of plants that are to remain onsite. Protective barriers should be of a durable material that will last until construction is completed. Snow fences and silt fences are examples of acceptable barriers.

3. **RESTORATION WITH NATIVE PLANT MATERIAL.** The County requires native plant materials in the portion of the East River Corridor to the Gothic Townsite, as delineated within a map that can be obtained from the Public Works Department, but otherwise may require planting native trees or other native plant material where natural trees or vegetation are destroyed by grading or other construction work, or where existing vegetation is inadequate to mitigate visual impacts of a land use change. Substantial disturbances

BLM_0053463

of the land created by construction of structures, roads, water, or wastewater treatment facilities, drainage control systems, installation of utilities, or other improvements shall be restored, pursuant to Section 13-115: *Reclamation and Noxious Weed Control.*

4. **VISIBILITY.** To avoid landscape materials from blocking driver sight distances at intersections, no material greater than 30 inches in height shall be located within 15 feet of a driveway or road edge.

5. **ALLOWANCE FOR SNOW STORAGE AND PLOWING.** All landscaping design shall provide adequate space for snow plowing and areas for snow storage, that shall be indicated on the landscaping plan.

**F. SITE PROTECTION.**

1. **TOPSOIL PRESERVATION.** Topsoil moved during construction shall be stockpiled and redistributed on all re-graded surfaces in order to provide an even cover to all disturbed areas of the land use change. Such surfaces shall be stabilized by seeding or planting.

2. **REMOVAL OF DEBRIS.** All stumps, other tree parts, litter, brush, weeds, excess or scrap construction materials, or other debris should be removed from the site within six months of substantial completion of construction and disposed of pursuant to requirements of the Gunnison County Landfill, or by other means pursuant to any applicable regulation.

   a. **RETAINING DEADWOOD FOR WILDLIFE HABITAT.** All dead or dying trees should be removed from the site, unless those trees are to be retained for wildlife habitat, upon the recommendation of the Colorado Division of Wildlife or the Colorado State Forest Service. If trees and limbs are reduced to chips, they may be used as mulch in landscaped areas.

3. **SLOPE PLANTINGS.** Landscaping of all cuts and fills and/or terraces shall be sufficient to prevent erosion. All roadway slopes steeper than one foot vertical to three feet horizontal (1': 3') shall be planted with ground cover appropriate for soil conditions, water availability, and environment, and pursuant to Section 13-115: *Reclamation and Noxious Weed Control.*

**G. PLANTING SPECIFICATIONS.**

1. **MINIMUM TREE/SHRUB SIZES.** When landscaping is included as an element of site design, and/or required by the County in the approval of a Land Use Change Permit, deciduous trees shall have at least a two inch caliper at planting. Sizes of evergreens and shrubs shall be allowed to vary depending upon the characteristics of the land use change and its location and the types of shrubs proposed. Trees shall be staked upon planting and provision made by the developer for regular watering and maintenance until they are established. Dead and dying plants shall be replaced by the developer no later than the following planting season.

2. **PLANT SPECIES.** A mixture of plants, evergreen, and deciduous shrubs may be planted. Evergreen trees should be located on the perimeter of the lot for screening.

**H. TIMING.** All landscaping shall be installed no later than one growing season after substantial completion of the development or land use change.

**I. SITE-SPECIFIC SELECTION.** The type and amount of landscaping shall be allowed to vary with the type, size and impact classification of land use change proposed. Plants or other landscaping material(s) that best serve the intended function of the land use should be selected, in consideration of site-specific environment, soil conditions, and the legal and physical availability of water. Appropriateness of any proposed phasing, as well as short and long-term impacts of the landscaping plan, should be considered.

**J. WATER CONSERVING LANDSCAPING.** Use of xeriscape plantings is recommended when suitable to the altitude and location of the proposed land use change.

**K. USE OF NON-TREATED WATER.** Use of water that has not been processed through a water treatment plant is encouraged.

BLM_0053464

**L. LANDSCAPING ADJACENT TO BUILDINGS.** Landscape elements may be located adjacent to buildings except that when sites that are designated as wildfire hazard areas, landscaping must be designed considering the need for defensible space, as recommended by the Colorado Forest Service.

**FIGURE 8: LANDSCAPING AS BUFFERING**



**M. BUFFERING.**

1. **APPLICABILITY.** Every land use change that is classified as Minor or Major Impact project, pursuant to Section 3-111: *Classification of Impact* shall provide landscaped buffering between adjacent uses when topographical or other natural barriers do not provide reasonable screening and when the County finds that:

   a. **NEIGHBORING PROPERTIES.** There is a need to shield neighboring properties from any adverse external effects of a proposed land use change; or

   b. **ADVERSE IMPACTS.** There is a need to shield the land use change from negative impacts or adjacent land uses in high-density land use changes, and/or when building design and siting do not provide privacy.

2. **BUFFER MATERIALS.** Buffering may consist of fencing and plant materials pursuant to this Section, but may also include berms, rocks, boulders, mounds, or combinations of those materials, to achieve the same objective.

3. **BUFFER DIMENSIONS.**

   a. **DIFFERENT ABUTTING USES.** When more intensive land uses abut less intensive uses, a buffer strip of at least 15 feet in width shall be required, except that when industrial, or light industrial, or commercial or business uses are to be located adjacent to residential uses, then a 50 foot buffer strip is required.

   b. **DUMPSTER AND UTILITY SCREENING.** Trash dumpsters and other waste/recycling containers serving multiple-family or non-residential uses shall be completely screened from view off-site.

4. **ARTERIAL OR COLLECTOR ROADS.** Where residential subdivisions abut arterial or collector roads, a landscaped buffer area shall be provided along the property line abutting the road that shall be a minimum of 25 feet wide.

5. **DRIVEWAYS.** Required landscaped buffer areas shall not include driveways.

6. **MINIMUM PLANTING REQUIREMENTS IN LANDSCAPE BUFFERS.**

   a. **15-FOOT LANDSCAPE BUFFER.** A landscape buffer that is required to be a minimum of 15 feet wide shall be planted with a minimum of one shade tree, two understory trees, and two shrubs per 100 linear feet.

   b. **A 25-FOOT LANDSCAPE BUFFER.** A landscape buffer that is required to be a minimum of 25 feet wide shall be planted with a minimum of one shade tree, one understory tree, and one shrub per 100 linear feet.

   c. **A 50-FOOT LANDSCAPE BUFFER.** A landscape buffer that is required to be a minimum of 50 feet wide shall be planted with a minimum of two shade trees, two understory trees, and two shrubs per 100 linear feet.

7. **DESIGN OF LANDSCAPE BUFFER.** Arrangement of plantings and other landscaping elements in buffers shall, to the maximum extent feasible, provide protection to adjacent properties without from obstructing

BLM_0053465

views and access to solar exposure. If berms are used, the minimum top width shall be four feet, and the maximum side slope shall be two feet vertical to one foot horizontal (2':1').

8. **MAINTENANCE OF LANDSCAPING WITHIN BUFFERS.** Plantings shall be watered regularly, in a manner appropriate to the specific plant species. Dead and dying plants shall be replaced by the developer no later than the next planting season. The applicant shall make provisions to ensure that landscaped buffer areas shall be maintained and kept free of all debris, rubbish, and noxious weeds.

9. **MATERIALS USED IN BUFFERS.** Existing and supplementary native vegetation should be used to the maximum extent feasible and planted in random patterns (not rows). Plant materials of a scale capable of screening and softening structural mass shall be used to reduce visual impacts of development. A list of recommended plant materials is available from the Gunnison Office of the U.S.D.A. Natural Resources Conservation Service.

10. **SCREENING WITH VEGETATION AND EARTH BERMS.** If total screening is impractical or undesirable, partial screening should be used to break horizontal lines of structures and minimize apparent height of taller structures. Screening development with vegetation is preferable to screening with berms or other significant earth moving. If berms or recontouring of soil are used for screening, the features should complement natural land forms.

11. **REVIEW BY PUBLIC WORKS DEPARTMENT.** If landscaped buffers are proposed along roadways or parking areas within the project, the plan may be submitted for review to the Gunnison County Public Works Department, for their compliance with snow removal and traffic-related sight-distance requirements.

N. **PARKING AREAS.**

1. **APPLICABILITY.** The interior parking lot landscaping standards of this Section shall apply to all off-road parking lots for land use changes classified as Major Impact projects pursuant to Section 3-111: *Classification of Impact.* They shall not apply to vehicle or equipment storage or sales lots.

2. **PLANTING AREA.** At least ten percent of the interior area of off-road parking lots shall be devoted to landscape planting areas.

3. **DIVIDER MEDIANS.** Divider medians that form a continuous landscaped strip may be installed between abutting rows of parking spaces. The minimum width of divider medians shall be five feet if wheel stops or raised curbs prevent vehicle overhang of the median. If vehicle overhang is allowed, the minimum width shall be eight feet. All tree planting areas shall have a minimum width of seven feet.

4. **PERIMETER LANDSCAPE BUFFER.** Parking lots, loading, and unloading areas that are not part of a parking lot shall have perimeter screening with a buffer strip at least five feet wide. No landscaping shall be required on the side of the parking lot that is adjacent to the entry of the primary building served by the lot.

# SECTION 13-112: SNOW STORAGE

A. **PURPOSE.** The purpose of this Section is to minimize the potential impacts of snow storage, particularly on water quality.

B. **SNOW DISPOSAL INTO WATER BODIES PROHIBITED**. Plowing, dumping, or storage of snow into any water body is prohibited.

C. **PREFERRED SNOW STORAGE AREAS.** Areas that are preferred for snow storage include gently sloping ground, existing meadows and gentle, south-facing slopes, concave surfaces, and unpaved surfaces free of trees.

D. **STORAGE EASEMENTS.** Designated snow storage easements shall be provided in perpetuity by dedication on a Final Plat or nonrevocable license.

E. **SITE DESIGN.** In development that will require snow removal from roadways and/ or parking areas, site design shall incorporate the following elements:

1. **MINIMUM AREA.** In addition to the standard right-of-way width required by the *Gunnison County Standards and Specifications for Road and Bridge Construction* and as appropriate to a specific area when historic snowfalls require increased snow storage area, the Gunnison County Public Works Department may require a greater right-of-way on either side of a roadway to ensure adequate area for snow storage.

2. **MINIMUM WIDTH, ADJACENT TO PLOWED AREA.** Designated snow storage areas shall not be less than six feet wide and, to the maximum extent feasible, shall be located adjacent to the area of the project

BLM_0053466

site from which snow is to be removed. The storage area shall not be included in any parking area pursuant to Section 13-110: *Off-Road Parking and Loading*, and the minimum distances listed in Appendix Table 3: *Off-Road Parking Requirements.*

3. **SNOW STORAGE OBSTRUCTIONS.** Snow storage areas shall be free of fences, landscaping (except for ground cover), retaining walls, and other obstructions of similar nature.

4. **SNOW PLOWING OBSTRUCTIONS.** Pathways, signage, vegetation, fencing, and lighting shall be configured to cause the least obstruction to snow plowing. Locations of trash dumpsters relative to snow storage shall allow access and maintenance of the dumpsters, but shall not impede the free movement of trash removal vehicles.

5. **FORMAL APPROVAL BY PUBLIC WORKS DEPARTMENT.** All designs for snow storage shall be subject to review and approval by the Gunnison County Public Works Department.

6. **DRAINAGE AND STORM WATER FACILITIES.** Snow storage areas shall be designed, constructed and maintained to comply with the requirements of Section 13-117: *Drainage, Construction and Post-Construction Storm Water Runoff.*

7. **SNOW ON PAVED SURFACES.** If snow must be piled on a paved surface, the surface be designed so that the snowmelt shall drain away from the pile and the plowed surface. Snowmelt from storage areas shall not cross pedestrian and recreational pathways.

# SECTION 13-113: FENCING

Unless otherwise expressly provided in this *Resolution*, fences and walls used for screening shall comply with the following general standards:

A. **GENERAL.**

1. **WALLS AND FENCES.** Walls and fences may be erected as part of a buffer in a land use change when required by the applicable review body for privacy, screening, separation, security, erosion control, or to serve other necessary and reasonable functions specific to a particular land use.

2. **TRAFFIC HAZARDS OR PUBLIC SAFETY**. No fence or screening wall shall be a hazard to traffic or public safety.

B. **STANDARDS FOR FENCING.**

1. **FENCING MAY BE REQUIRED BETWEEN DIFFERENT TYPES OF LAND USES.** Fencing and landscaping may be required between residential and other land uses, to buffer between the two. When a residential use is proposed adjacent to an existing commercial or industrial use, and fencing is required, it shall be the responsibility of the developer, and subsequently the homeowners or property owners' association or individual lot owners, to construct, maintain and repair the fence.

   a. **FENCING REQUIRED BETWEEN A LAND USE CHANGE AND AGRICULTURAL USES.** Fences may be required between a land use change and private grazing or other agricultural uses and shall be designed on a site-specific basis to minimize impacts to agricultural operations. All fence wire on barbed wire and combination fences shall be placed on the side of the fence that faces the livestock.

      1. **EXISTING AGRICULTURAL ACCESS PROTECTED.** Fencing shall not be allowed that in any way constricts the operation or maintenance of any existing or historic agricultural access, including to historic ditches.

   b. **FENCING REQUIRED BETWEEN A LAND USE CHANGE AND PUBLIC LANDS**. Fencing may be required between a land use change and public lands on which livestock are grazed. Fences may further be required to prevent use by unauthorized motorized vehicles, according to applicable standards of the controlling public agency.

   c. **FENCING BETWEEN RESIDENTIAL AND NON-RESIDENTIAL AREAS**. The fence or screening wall in a non-residential development shall be determined on a site specific basis, depending up on the type of use proposed, and the established adjacent development, and the projected visual impact of the proposed use.

BLM_0053467

    **d. FENCES FOR WILDLIFE HABITAT AREAS**. The design, materials, and height of fences in wildlife habitat areas shall be subject to the requirements of Section 11-106: *Protection of Wildlife Habitat Areas.*

    **2. MAXIMUM HEIGHT AND MEASUREMENT**. The maximum height of a fence or screening wall in a residential development shall be six feet. Fence or screening wall height shall be measured from finished grade.

    **3. AGREEMENTS TO DEFINE MAINTENANCE RESPONSIBILITY.** Maintenance agreements, protective covenants and similar documents defining maintenance responsibilities shall describe a process for notifying owners adjacent to agricultural operations that the State of Colorado has adopted statutory requirements for "fencing out" livestock. Those agreements shall place responsibility for fence maintenance on the developer, or the appropriate association or individual, so long as the agricultural operation continues.

# SECTION 13-114: EXTERIOR LIGHTING

**A. PURPOSE.** The purpose of this Section is to provide standards for exterior lighting that assure the safety, utility and security appropriate to development and that prevent night lighting that adversely impacts adjacent properties and neighborhoods or unduly illuminates the night sky enjoyed by residents and visitors of Gunnison County. A secondary purpose is to avoid exterior night lighting that distracts and interferes with safe, quick and accurate vision of drivers and pedestrians. (Illustrations in this Section are courtesy of Dark Sky, International, and the New England Light Pollution Advisory Group (NELPAG).)



**FIGURE 9: SHIELDED AND PARTIALLY-SHIELDED FIXTURES**

Fully- or partially-shielded

Fully-shielded bulbs may be greater than 60 watts

60 watts or less frosted bulb

Unshielded bulbs are allowed, so long as they are frosted, and 60 watts or less.

**B. APPLICABILITY.**

    **1. GENERAL.** Except as otherwise exempted by this Section, the requirements of this Section shall apply to all land uses in Gunnison County, subject to Section 1-106: *Partially Exempted Land Use Changes*, and Section 1-108: *Nonconforming Uses.*

    **2. EXEMPTIONS.** The following uses are exempted from the requirements and review standards of this Section:

        **a. AGRICULTURAL OPERATIONS**. Exterior lighting whose primary purpose is essential to the efficient functioning or security of an agricultural operation shall be exempted from the standards of this Section, though agricultural operations are encouraged to comply.

    **b. FEDERAL, STATE AND COUNTY CONSTRUCTION PROJECTS.** Federal, state and County construction projects, during the course of construction.

    **c. SPECIAL EVENTS.** Lighting that is temporarily installed or operated as part of a special event, pursuant to Section 9-501: *Special Events.*

    **d. EMERGENCY LIGHTING.** Lighting fixtures used temporarily for emergency purposes.

BLM_0053468

    **e.  SPECIALIZED LIGHTING.** Lighting necessary for public safety, such as runway lighting of airports, and traffic control signals.

**C.  NONCONFORMING FIXTURES.** Fixtures that were nonconforming as of July 1, 2004, shall be replaced when:

    **1.  LIGHT IS DAMAGED BEYOND REPAIR.** When the light fixture is damaged beyond repair and must be replaced, it shall comply with the standards of this Section.

    **2.  STRUCTURE IS EXPANDED OR REPLACED.** When a structure is replaced, or expanded by 50 percent or more of square footage as calculated by the applicable building code adopted by Gunnison County, all light fixtures shall be replaced and shall comply with the standards of this Section.

**D.  STANDARDS.** Exterior lighting shall meet the following standards:

    **1.  EXTERIOR LIGHTING FIXTURES.** Except as otherwise restricted in this Section, all exterior lighting fixtures, including those used to illuminate roadways, parking lots, walkways and buildings, used for residential, commercial, or industrial purposes shall be :

        **a.  UNSHIELDED.** A fixture may be unshielded so long as it is mounted so that the maximum center height of the fixture is no higher than ten feet from finished grade, and the bulb or bulbs are frosted, and, in the aggregate, total no greater than 60 watts; or,

        **b.  PARTIALLY-SHIELDED.** A fixture may be partially-shielded, so long as it is mounted no higher than ten feet above the floor level of a doorway, deck, walkway, driveway or the highest finished grade point immediately adjacent to the fixture, except that recessed luminaries are permitted in roof overhangs if located directly over walkways or decks. A partially-shielded fixture shall have a bulb or bulbs that are frosted and shall, in the aggregate, total no greater than 60 watts (Figure 9: *Shielded and Partially Shielded Fixtures*); or

        **c.  FULL CUTOFF/ FULLY SHIELDED, OR SHIELDED BY ROOF ELEMENT, WHEN BULB IS GREATER THAN 60 WATTS.** A fixture that is a full cutoff/fully-shielded type or is shielded by a roof element in such a way that produces the full effect of a full cutoff/ fully shielded light fixture may have a bulb that is greater than 60 watts. All fixtures shall be installed in a recessed manner that maintains this full-cutoff characteristic.

    **2.  EXTERIOR LIGHTING LIMITED TO FUNCTIONAL USES.** Exterior lighting shall be limited to functional applications such as illumination of doorways, garage doors, decks, terraced levels, walkways or hot tubs and recreational areas when in use.

    **3.  MOTION SENSOR LIGHTS ALLOWED FOR COMMERCIAL, INDUSTRIAL OR RESIDENTIAL ACCESS FOR SECURITY PURPOSES.** A maximum of two motion sensor fixtures is allowed as reasonably required to provide lighting for access security. These are permitted where the sensor will be triggered by activity only within the owner's property lines.

    **4.  FLOOD LIGHTING LIMITED.** Floodlighting is only permitted when it is down-directed (45 degrees or less from vertical as illustrated in Figure 10: *Examples of Floodlighting*) so that the light source is not visible from adjacent and/or neighboring properties, and shall be full cutoff/fully shielded. Ground-mounted floodlighting of a structure is prohibited.

    **5.  HEIGHT LIMITATION FOR POLE-MOUNTED FIXTURES.** Pole-mounted fixtures (as measured from grade to the bottom face of a fixture) shall be no higher than 35 feet and the fixture shall be a full cutoff/fully shielded, non-adjustable and directed down.

    **6.  ILLUMINATION OF BUILDING FAÇADE AND LANDSCAPING PROHIBITED.** Lights that are used for the primary purpose of illuminating a building façade or landscaping are prohibited except for illuminating a building entrance, or for other purposes required by the *National Electrical Code*.

    **7.  BLINKING, FLASHING AND LIGHTS OF CHANGING INTENSITY PROHIBITED.** Blinking, flashing or exterior lights that change in intensity are prohibited, except for temporary holiday displays, traffic control devices authorized by a federal, state or local government, or lights required by regulations of the Federal Aviation Administration for air traffic control and warning purposes.

    **8.  INTERFERENCE WITH SAFE MOVEMENT OF MOTOR VEHICLES PROHIBITED.** No exterior lighting shall be installed or used in any way that interferes with the safe movement of motor vehicles. The following are prohibited:

BLM_0053469

    **a.  LIGHTING NOT DESIGNED FOR ROADWAY OR PEDESTRIAN WAY.** Any exterior lighting not designed for roadway or pedestrian way illumination that produces incident or reflected light that could be disturbing to the operator of a motor vehicle; and

    **b.  LIGHTING THAT MAY BE CONFUSED WITH TRAFFIC CONTROL DEVICES.** Any exterior lighting that may be confused with, or may be construed to be a traffic control device, except as authorized by a state, federal or local government.

**9.  MERCURY VAPOR LIGHT FIXTURES.** Installation of new mercury vapor light fixtures is prohibited, and replacement of mercury vapor light fixtures existing as of July 1, 2004 with fixtures that comply with the standards of this Section is encouraged.

**10.  TEMPORARY HOLIDAY DISPLAYS.** Winter holiday lighting shall be allowed between November 15 and March 30. All other lighting associated with any national, local or religious holiday or celebration shall be



**FIGURE 10: EXAMPLES OF FLOODLIGHTING**

allowed two weeks before the holiday, and extinguished within two weeks after the holiday. A waiver from these time restrictions may be requested from the Board, which may elect to conduct a public hearing on the request before making its decision. The applicant shall be billed and shall be responsible for paying for he actual cost of publication of all applicable public hearing notices as required pursuant to Section 3-112: *Notice of Public Hearing.*

**E.  SUBMITTAL REQUIREMENTS.** Applications for Building Permits and other Land Use Change Permits shall submit information about exterior lighting as follows:

    **1.  APPLICATIONS FOR BUILDING PERMITS AND OTHER ADMINISTRATIVE REVIEW PROJECTS.** Activities and uses that are classified as Administrative Review projects pursuant to Article 4: *Administrative Review Projects That Do Not Require Land Use Change Permits,* including projects that require only a

BLM_0053470

Building Permit, and Article 5: *Administrative Review Projects That Require Land Use Change Permits*, when such projects involve uses that reasonably would include lighting shall include:

    **a.** **LOCATIONS OF LIGHTING FIXTURES.** The locations of exterior lights on the building(s) and/or other activity or use on the property for which the application is submitted.

    **b.** **DESCRIPTION OF TYPES OF LIGHTING FIXTURES**. Description(s) of the lighting fixtures, demonstrating how lighting fixtures will comply with this Section.

**2.** **MINOR AND MAJOR IMPACT PROJECTS**. Each application for a Land Use Change Permit classified as a Minor or Major Impact project pursuant to Article 6: *Minor Impact Projects* and Article 7: *Major Impact Projects* shall submit a plan for exterior lighting as follows:

    **a.** **MINOR IMPACT PROJECTS**. When a proposed land use change is classified as a Minor Impact project, its application shall include a proposed plan for exterior lighting when any of the following is proposed as part of the development:

        **1.** **RESIDENTIAL USES**. Residential development.

        **2.** **NON-RESIDENTIAL USES.** Non-residential uses intended to serve people or otherwise operate during non-daylight hours. Flat glass lens, eliminates or minimizes direct glare, has no upward throw of light.

        **3.** **MIXED USES.** A development that mixes residential and non-residential uses.

    **b.** **MAJOR IMPACT PROJECTS.** Any proposed Land Use Change Permit application that is classified as a Major Impact project shall include an exterior lighting plan.

    **c.** **ELEMENTS OF EXTERIOR LIGHTING PLAN.** The following elements shall be included within an exterior lighting plan:

        **1.** **COMPLIANCE WITH REQUIREMENTS OF APPLICABLE ELECTRICAL PROVIDER.** The exterior lighting plan shall be designed pursuant to the requirements of the electric association or municipality that will serve the development. The standards in the IES Lighting Handbook may also be used as guidelines. The plan shall address the following:

        **2.** **LOCATION AND TYPE.** The locations of exterior lights within the development, and the type of lighting devices, fixtures, lamps, supports, reflectors and other devices;

        **3.** **DESCRIPTION.** A description of the lighting devices, fixtures, lamps, supports, reflectors and other devices; the description may include photographs or illustrations by manufacturers; and

        **4.** **METHOD OF SHIELDING.** Photographs or other illustrations by manufacturers of the fixtures demonstrating how lighting fixtures will be shielded to comply with this Section.

# SECTION 13-115: RECLAMATION AND NOXIOUS WEED CONTROL

**A.** **PURPOSE.** The purpose of this Section is to establish standards to control the growth and proliferation of noxious weeds in Gunnison County, in conformance with Colorado Revised Statutes 35-5.5, et seq: the *Colorado Noxious Weed Act*, by requiring site reclamation after earth moving and/or construction has occurred.

**B.** **APPLICABILITY**. This Section shall apply to all earth moving sites including road and driveway cutting and construction, clearing of land, and berm construction. This Section shall not conflict with the requirements of Division 9-400: *Exploration, Extraction and Processing of Minerals and Construction Materials* or with reclamation within the jurisdiction of the Colorado Mined Land Reclamation Division and applied to mining operations. Nothing in this Section is or shall be construed to be a limit on the County's authority regarding noxious weeds.

    **1.** **EXEMPTIONS.** The following uses are exempt from having to obtain a Reclamation Permit:

        **a.** **AGRICULTURAL OPERATIONS.** Agricultural operations, as defined within this *Resolution*.

        **b.** **AREAS OF DISTURBANCE SMALLER THAN 2,000 SQ. FT.** Areas of disturbance that are smaller than 2,000 sq. ft.

        **c.** **POLE BARNS 2,000 SQ. FT. OR LESS.** Construction of pole barns of 2,000 sq. ft. or less.

BLM_0053471

    **d.**  **RECORDED SUBDIVISIONS WITH APPLICABLE PROTECTIVE COVENANTS.** In platted, recorded subdivisions approved by the County for which there are recorded protective covenants that require reclamation that meets or exceeds the standards of this Section. Determination of that compliance shall be made by the Gunnison County Public Works Department.

    **e.**  **AREAS RECOMMENDED BY WEED SPECIALIST.** Areas that are defined and recommended by the Gunnison Weed Specialist, as may be designated from time to time by the Board.

**C.**  **RECLAMATION PERMIT REQUIRED FOR DEVELOPMENT REQUIRING A LAND USE CHANGE PERMIT THAT DISTURBS 500 OR MORE SQ. FT.** Except as otherwise exempted, a development which results in road cutting and/or construction, homesite clearing and berm construction that is required to obtain a Land Use Change Permit pursuant to this *Resolution*, and that involves 500 or more sq. ft. of disturbance, shall also be required to obtain a Reclamation Permit from the Gunnison County Public Works Department, including the following:

    **1.**  **BUILDING A STRUCTURE.** Construction of a structure that is required to obtain a Gunnison County Building Permit.

    **2.**  **INSTALLATION OF AN ISDS.** Installation of a new or replacement individual sewage disposal system that is required to obtain an Individual Sewage Disposal System Permit.

    **3.**  **DRIVEWAY CONSTRUCTION.** Any driveway construction that requires a Gunnison County Access Permit, or a Colorado Division of Highways Access Permit.

    **4.**  **CUTS AND FILLS GREATER THAN EIGHT FEET.** If cuts and fills that measure eight feet or greater from the finished grade are to be used as part of a construction project that is not otherwise required by this Section to obtain a permit, a Reclamation Permit shall be required.

**D.**  **SITE REVEGETATION AND NOXIOUS WEED CONTROL PLAN.** Within two calendar years of the date of the substantial completion of soil disturbance, the applicant shall revegetate the affected site pursuant to an *Earthmoving Site Revegetation and Noxious Weed Control Plan*, as designed and/or approved by the Gunnison Basin Weed Specialist. Such plan shall, at a minimum, comply with the requirements of Section 13-116: *Grading and Erosion* and with Section 11-105: *Development in Areas Subject to Wildfire Hazards* and be required, if applicable, to address the following:

    **1.**  **NATIVE PLANTS REQUIRED IN EAST RIVER CORRIDOR.** Native plant materials are required to be used in the portion of the East River Corridor to the Gothic Townsite as delineated a map that can be obtained from the Public Works Department.

    **2.**  **SLASH AROUND HOMES.** To avoid insects, diseases, and wildfire hazards, all vegetative residue, slushiness, branches, limbs, stumps, roots, or other such flammable lot-clearing debris shall be disposed of from around homesite areas by either chipping or removal prior to final building inspection approval. Homesite areas shall include all areas of the lot in which such materials are generated or deposited; and

    **3.**  **REMOVAL OF DEBRIS.** Within six months of substantial completion of soil disturbance, all stumps, and other tree parts, and brush should be removed from the site and disposed of in compliance with requirements of any applicable municipal tree disposal site or the Gunnison County Landfill, or by other means pursuant to applicable regulation. Excess or scrap building material, weeds, or other debris should be removed from the site and disposed of pursuant to requirements of the Gunnison County Landfill, or by other means pursuant to applicable regulation.

       **a.**  **RETAINING DEADWOOD FOR WILDLIFE HABITAT.** All dead or dying trees should be removed from the site, unless those trees are to be used for fire wood or retained for wildlife habitat, upon recommendation of the Colorado Division of Wildlife or the Colorado State Forest Service. If trees and limbs are reduced to chips, they may be used as mulch in landscaped areas.

**E.**  **SURETY.**

    **1.**  **DISTURBANCE OF 10,000 OR MORE SQ. FT.** When activities of development or a land use change results in road cutting and/or construction, homesite clearing and berm construction and disturbs 10,000 sq. ft. or more, surety in the form of a bond, letter of credit, interest-bearing account, or as may be addressed within a Development Improvement Agreement, shall be required by the County to assure satisfactory implementation of the plan. Such surety shall be subject to the approval of the Gunnison County Attorney.

BLM_0053472

2. **DISTURBANCE OF LESS THAN 10,000 SQ. FT.** When development or land use change causes disturbance of fewer than 10,000 sq. ft., no surety shall be required, but shall be subject to civil procedure if the project is found by the County not to have complied with the requirements of this *Resolution*.

# SECTION 13-116: GRADING AND EROSION CONTROL

A. **PURPOSE.** The purpose of this Section is to minimize the potential erosion and sedimentation impacts of development.

B. **APPLICABILITY.**

   1. **AGRICULTURAL OPERATIONS EXEMPT.** Agricultural operations shall be exempt from the requirements of this Section.

   2. **GRADING ACTIVITIES REQUIRED TO OBTAIN RECLAMATION PERMIT.** Activity which disrupts the earth, including grading conducted independent of, or before obtaining a Building Permit or an Individual Sewage Disposal System Permit, Access Permit, or any Land Use Change Permit shall be required to obtain a Reclamation Permit from the Public Works Department, pursuant to Section 13-115: *Reclamation and Noxious Weed Control.*

C. **NO EARTHWORK UNTIL ALL REQUIRED PERMITS ARE OBTAINED.** No activity that disrupts the earth shall be allowed until all required permits are obtained.

D. **GENERAL STANDARDS.** All land use changes shall comply with the following standards:

   1. **MINIMIZE ON-SITE EROSION.** Development shall minimize erosion on-site by:

      a. **PHASING CONSTRUCTION.** Stage and schedule timing of earth disturbing construction activities, including clearing, grading, and utilities installation to minimize soil disruption and exposure.

      b. **INSTALLATION OF EROSION AND SEDIMENTATION CONTROL MEASURES.** Erosion and sedimentation control measures shall be installed, to the maximum extent feasible.

         1. **STABILIZING SOIL.** Disturbed areas and soil stockpiles shall be stabilized or protected to control erosion effectively. Those areas shall be surface-roughened, mulched or seeded and mulched, or otherwise protected from erosive forces if they will remain exposed and inactive for longer than 14 days, or are otherwise expected to be exposed during winter to minimize erosion from occurring during spring snowmelt. The soil surface of cut and fill slope shall not remain exposed without an approved method of soil stabilization.

         2. **STABILIZATION ON STEEPER SLOPES.** On slopes steeper than 3:1, or within 100 feet of any water body, exposed soils shall be stabilized within 14 days of final disturbance, weather permitting, using appropriate techniques such as hydro mulching, erosion control blankets, bonded fiber matrices or other equally protective measures. Grass or straw mulch should be crimped, traced or tacked in place to promote surface anchoring.

      c. **TEMPORARY AND PERMANENT REVEGETATION.** Disturbed areas that will not be built upon for one year shall incorporate a temporary cover crop to promote soil stability. Areas that will likely remain exposed for two or more years must be revegetated with a perennial, native grass mix (or other grass mixtures as recommended by the local Natural Resources Conservation Service Office).

      d. **AVOIDANCE OF CUT AND FILL SLOPES.** Cut and fill slopes shall be avoided to the greatest extent feasible.

         1. **AVOIDANCE ON STEEPER SLOPES.** Except for mining extraction activities cut and fill shall be avoided on slopes greater than 3:1, unless avoidance would result in loss of all economic benefit of the parcel; then stabilization shall be attained by using a combination of retaining walls, rock walls, up-slope runoff diversions, terracing, slope drains, soil nailing, mulch binders, erosion control blankets, vegetation or other measures appropriate for the specific situation. Revegetation, or other methods of soil stabilization, is required.

         2. **PERMANENT VEGETATION ON SLOPES 3:1 OR LESS.** Where cut and fill cannot be avoided, slopes shall be designed, constructed and maintained for long-term stability. Permanent vegetation shall be used to stabilize cut and fill where slopes are less than or equal to 3:1.

BLM_0053473

    **e.** **CONSTRUCTION IN OR DIRECTLY ADJACENT TO ANY WATER BODY, OR MUDFLOW.** Construction, including culvert or bridge installation, shall require measures to protect water quality in or directly adjacent to any water body or mudflow to protect water quality and channel stability, and shall address the following:

        **1.** **COMPLIANCE WITH 404 PERMITTING REQUIREMENTS.** All construction shall conform to applicable U.S. Army Corps of Engineers 404 permitting requirements.

        **2.** **CONTAINMENT AND LIMITED TIMES OF IN-STREAM WORK.** Construction shall protect water quality by measures including, but not limited to stream isolation using coffer dams, complete containment of the stream in the area of the disturbance, stream-crossing structures, and limitations on the dates when in-stream work can be performed.

    **f.** **DRAINAGE STRUCTURES AND OTHER ELEMENTS.** All drainage structures and other elements designed to avoid or mitigate erosion or sedimentation shall comply with the requirements of Section 13-117: *Drainage, Construction and Post-construction Storm Water Runoff.*

    **g.** **PROTECTION FROM ACCELERATED EROSION.** New or rerouted swales, receiving channels and streams shall be protected from erosion until vegetation is established and is stable during flows for which the feature was designed.

    **h.** **PROTECTION OF CULVERT OUTLETS.** Culvert outlets shall be protected from erosive flows by installing velocity reducers.

    **i.** **DIVERSION OF RUNOFF.** Runoff from offsite shall be diverted around the construction site to the maximum extent feasible.

  **2.** **MINIMIZE SEDIMENT LEAVING A SITE.** Development shall minimize sediment leaving a site by:

    **a.** **DIVERSION OF CONCENTRATED STORM WATER FLOWS.** Concentrated Storm Water runoff flows shall be diverted away from disturbed slopes. The length and steepness of the areas of disturbed slopes shall be minimal; slope drains may be used to provide control.

    **b.** **PROTECTION OF ACCESS WITH ROAD BASE OR BY WASHING.** Disbursement of sediment and mud from a construction site shall be minimized by protecting access routes by either immediate placement of road base materials, or construction of mud pads, which shall be at least 50 feet long and comprised of angular rock and/or a wheel-washing facility.

    **c.** **PROTECTION OF ADJACENT PROPERTIES BY FENCING OR TRAPPING.** Adjacent properties shall be protected from sediment-laden runoff by use of sediment fences, sediment or silt traps, or other appropriate controls.

    **d.** **PROTECTION OF STORM SEWER INLETS.** Storm sewer inlets shall be protected from entry of sediment-laden water, by placement of straw bales, supported silt fence structure, dumped rock or other barriers.

  **3.** **REQUIREMENTS FOR CONSTRUCTION DEWATERING.** All land use changes shall meet the following construction dewatering requirements:

    **a.** **COMPLIANCE WITH STATE PERMITTING REQUIREMENTS.** Construction dewatering activities shall comply with the Colorado Water Quality Control Division Discharge Permit System for Construction Dewatering Wastewater Discharge.

    **b.** **USE OF BEST MANAGEMENT PRACTICES.** Discharges from construction dewatering operations shall be done to minimize erosion and use best management practices, including velocity reducers, sediment basins, and straw bales.

# SECTION 13-117: DRAINAGE, CONSTRUCTION AND POST-CONSTRUCTION STORM WATER RUNOFF

**A.** **PURPOSE.** The purpose of this Section is to minimize the potential adverse impacts to water quality and on- and off-site drainage, construction and post-construction storm water runoff.

**B.** **LIMITED APPLICABILITY.** The requirements of this Section shall apply only to those projects that are either commercial or industrial uses, any subdivision classified as a Major Impact project or any other development

BLM_0053474

proposed after the effective date of this *Resolution* that is within 100 feet of a water body or a mudflow, or development that creates 10,000 sq. ft. or more of impervious surface area.

**C.** **STORM WATER DISCHARGE.** Projects that are required to do so shall obtain a Storm Water Discharge Permit from the Colorado Department of Public Health and Environment.

**D.** **GENERAL STANDARDS.** Certification that a proposed land use change project meets the standards of this Section shall be required from a qualified professional engineer licensed in the State of Colorado. Each applicable land use change project shall meet the following requirements for drainage, construction or post-construction storm water runoff:

**1.** **METHOD TO DETERMINE RATE OF RUNOFF.** Runoff from a project site after construction shall not exceed the level of runoff that occurred before construction. The entire drainage area upstream from a project site shall be defined. Runoff identified from stream flow records may be used in identifying historical runoff patterns. The following methods may be used for estimating peak runoff flows:

    **a.** **TABULAR METHODS.** Tabular methods as defined by the Engineering Division of the U.S. Department of Agriculture.

    **b.** **HEC PROGRAM.** The most current HEC-HMS computer program used by the U.S. Army Corps of Engineers.

    **c.** **COLORADO WATER CONSERVATION BOARD MANUAL.** Technical manual for estimating flood characteristics from the Colorado Water Conservation Board.

    **d.** **NATURAL RESOURCES CONSERVATION SERVICE.** The method used by the Natural Resources Conservation Service (Soil Conservation Service).

    **e.** **RATIONAL METHOD.** The Rational Method, relating runoff to rainfall intensity, surface area and surface characteristics should be used only for estimating runoff from small simple watershed areas. Where the watershed area is relatively small but complicated by a mainstream fed by one or more significant tributaries, the Rational Method should be applied separately to each tributary stream and the tributary flows then routed down the main channel.

**2.** **DETAINING AND TREATING RUNOFF.** Permanent post-construction storm water detention facilities are required to be multipurpose to not only detain flows to historic peak discharge rates, and to avoid impact to adjacent properties, but also to protect water quality. Detention elements may be either on-site or "regional," and shall be installed concurrent with construction of development. Detention facilities shall be designed to:

    **a.** **STORE INCREASED VOLUME AFTER DEVELOPMENT.** Storm drainage facilities shall prevent storm waters in excess of historic runoff caused by the proposed development from entering, damaging or being carried by existing conduits, water supply ditches and appurtenant structures. Detention devices shall be designed, at a minimum, to store the difference between the historic volume and the volume after development, figuring the peak discharge rate for the two-year, and 25-year return frequency, 24-hour duration storm. Discharge from the detention system will be at 25-year historic rates. Retention systems will be designed to store the entire 25-year 24-hour event from the developed site. In areas subject to runoff from snow storage, the determination shall include a melt rate from the snow stock pile of two inches in 24 hours. In determining runoff rates, the entire area contributing runoff shall be addressed, including any contribution from offsite into the detention or retention facility. No system design shall be allowed to contribute to soil instability.

    **b.** **ALLOW PASSAGE OF 100-YEAR STORM EVENT.** Minimize the threat of major property damage or loss of life, all permanent storm water detention facilities shall be designed to allow clear passage of the 100-year storm event without causing property damage on- or off-site.

    **c.** **PROTECT DOWNSTREAM CHANNELS.** Channels downstream from the storm water detention pond discharge shall be protected from increased channel scour, bank instability, erosion, and sedimentation from the 25-year return frequency, 24-hour duration storm.

**3.** **REMOVAL OF POLLUTANTS.** Removal of pollutants shall be accomplished by sizing dry detention basins to incorporate a 40-hour emptying time for a design precipitation event of 0.5 inches in 24 hours, with no more than 50 percent of the stored water being released during a 12-hour period. If retention ponds ("wet ponds") are used, a 24-hour emptying period is required.

BLM_0053475

a. **DRAINAGE OF VEHICLE REPAIR AND STORAGE SITES**. Sand and oil grease traps, extended wetlands with no initial release, or similar devices, shall be required to accommodate drainage from parking lots, vehicle maintenance facilities, or other areas with extensive vehicular use.

b. **MAXIMUM EFFICIENCY OF STRUCTURES**. To promote pollutant removal, detention basins length-to-width shall be not less than two, with a ratio of four recommended where site constraints allow. A sedimentation forebay is recommended to promote long-term functioning of the structure. Access to both the forebay and pond by maintenance equipment is required.

c. **WASTE STORAGE**. Areas used for the collection and temporary storage of solid or liquid waste shall be designed to prevent discharge of these materials in runoff from the site and shall be no closer than 100 horizontal feet from a water body and no closer at least than four feet above natural grade. Collection sites shall be located at least 100 feet from any component of a storm drainage system.

4. **AVOIDANCE OF DIRECT DISCHARGE TO WATER BODIES.** Storm water runoff shall be managed in a manner that provides for at least one of the following:

a. **DIRECT RUNOFF TO VEGETATED AREAS**. Direct runoff to stable, vegetated areas capable of maintaining sheet flow for infiltration. Vegetated receiving areas should be resistant to erosion from a design storm of 0.5 inches in 24 hours.

b. **ON-SITE MANAGEMENT**. On-site management of storm water by use of best management practices designed to detain or infiltrate the runoff before discharge to any natural water body.

c. **DISCHARGE TO CONVEYANCE STRUCTURE**. Discharge to a storm water conveyance structure, designed to accommodate the projected additional flows from the proposed project, with treatment by a regional or other storm water facility before discharge into any natural water body.

5. **MINIMIZE DIRECTLY-CONNECTED IMPERVIOUS AREAS**. Landscape features including grass buffer strips can be used to minimize directly-connected impervious areas; site design shall include such elements as necessary to minimize the extent of directly-connected impervious areas.

a. **INITIAL IMPERVIOUS RUNOFF AREAS**. Runoff from 50 percent of all developed impervious surfaces (including rooftops, parking lots, and sidewalks) shall drain over stable, vegetated pervious areas before reaching impervious storm water conveyance systems.

1. **REDUCTION OF SURFACE COVERAGE ALLOWED**. The 50 percent requirement may be reduced if the outflow from the vegetated pervious buffer strip is directed to other storm water treatment structures or elements, including infiltration devices, grass swales, constructed wetlands, sand filters or dry ponds.

2. **MAXIMUM GRASS BUFFER STRIP SLOPE OF 5 PERCENT.** When impervious surfaces drain onto grass buffer strips (or similar areas with equivalent ground cover), the maximum slope of the grass buffer strips should be five percent, and the gradient should be uniform to foster evenly-distributed sheet flows. Retaining walls or check dams may be used to maintain the maximum five percent slopes.

3. **DESIGN WIDTH OF PERVIOUS VEGETATED BUFFER STRIPS**. The recommended design width of the distance along the direction of sheet flow for pervious vegetated buffer strips shall be eight feet or 0.2 times the length of the flow path of the sheet flow over upstream impervious surface, whichever is greater.

E. **AGREEMENT TO MAINTAIN.** Any applicable application for a Land Use Change Permit shall include a description of the method(s) by which the proposed detention and retention facilities shall be regularly inspected and maintained. Assurance of regular inspections and maintenance of those facilities shall be addressed in the Development Improvement Agreement for the land use change.

## SECTION 13-118: WATER IMPOUNDMENTS

A. **PURPOSES.** This Section is implemented in accordance with the Board's *Gunnison County Position Statement: Protection and Development of Water Resources in Gunnison County and the Gunnison River Basin.*

1. **SUPPORT PROTECTION AND DEVELOPMENT OF WATER RESOURCES FOR USE IN THE GUNNISON RIVER BASIN**. It is the intent of this Section to support the protection and development of

water resources, particularly smaller, off-channel impoundments for multiple purposes, for use in the Gunnison River basin in Gunnison County in a manner that:

**a.** **IS ENVIRONMENTALLY SOUND.** Is environmentally sound;

**b.** **FOSTERS LOCAL BASIN USES.** Fosters uses in the Gunnison River basin including retaining or enhancing the productivity of agricultural lands, meeting municipal and domestic needs, and providing beneficial instream flows and levels for fisheries and recreation within the basin;

**c.** **HAS NO SIGNIFICANT NET ADVERSE EFFECT.** Insures that, after mitigation, the impoundment does not create a significant adverse net effect; and

**d.** **ENCOURAGES USES THAT WILL RETAIN AGRICULTURAL USE AND PRODUCTIVITY OF LAND.** Encourages uses that will retain the agricultural use and productivity of the land.

**e.** **RECOGNIZES THAT COUNTY LAND USE REGULATION IS APPROPRIATE.** Recognizes that, while the right to store water of a natural stream for later application to beneficial use is a right of appropriation in order of priority under the Colorado Constitution, land use regulation of the impoundment construction, impacts of operation and the offsite impacts related to it may appropriately affect that legitimate property interest.

**2.** **NO COUNTY REVIEW, DETERMINATION OR REGULATION OF POTENTIAL INJURY TO DECREED WATER RIGHTS.** It is not the purpose of this Section to review, determine or regulate potential injury to decreed water rights by the construction, operation or use of a proposed impoundment.

**B.** **APPLICABILITY.** The requirements of this Section shall apply to projects that involve the construction and operation of new reservoirs or dams, major modifications, additions or expansions to existing reservoirs or dams, and/or their attendant system of pipes, structures and facilities, that are wholly or partially in Gunnison County. Projects shall be classified pursuant to Section 3-111: *Classification of Impact,* unless it also meets the criteria of a "Special Development Project" as defined by the *Gunnison County Regulations for Special Development Projects,* in which case it shall be reviewed within the requirements of those *Regulations*.

**C.** **APPLICATION.** The Planning Department shall provide the appropriate application form for a proposed water impoundment that complies with the criteria for Minor or Major Impact projects as described in this Section. Proposed water impoundment projects that are not required to secure a Land Use Change Permit pursuant to this Section shall not be required to submit a Land Use Change Permit application. The owner or developer of any proposed water impoundment shall provide the Planning Department with a copy of any completed application required by and submitted to the Colorado Division of Water Resources for the impoundment, and documentation of the Division's classification of the proposed dam.

**D.** **CLASSIFICATION OF IMPACT.** The Board, rather than the Planning Department, shall make the initial impact classification for a proposed water impoundment project.

**1.** **PROCESS OF DETERMINATION OF IMPACT CLASSIFICATION.** The following process of determining impact classifications for water impoundment projects shall be accomplished as follows:

**a.** **RECEIPT OF APPLICATION AND SCHEDULING OF PUBLIC HEARING TO DETERMINE IMPACT CLASSIFICATION.** Upon receipt of a copy of the completed application required by and submitted to the Colorado Division of Water Resources for the impoundment and documentation of the Division's classification of the proposed dam, the Planning Department shall schedule a public hearing on the Board's next available meeting agenda, for the purposes of determining the project's impact classification. The hearing shall be noticed and the applicant shall be billed and shall be responsible for paying for the actual cost of publication of all applicable public hearing notices as required pursuant to Section 3-112: *Notice of Public Hearing.* , Section 3-112: *Notice of Public Hearing,* and the hearing shall be conducted pursuant to Section 3-113: *Conduct of Public Hearing.*

**b.** **BOARD DECISION.** The Board shall, within 15 days of the public hearing, determine the impact classification, and shall take such action by motion. The Board shall consider the criteria of this Section and Section 3-111: B. 1: *Additional Criteria* and their determination shall be recorded in the Board minutes.

**2.** **PROJECTS EXEMPT FROM LAND USE CHANGE PERMIT REQUIREMENTS.** No Land Use Change Permit is required for construction of a water impoundment that:

**a.** **IS 99-ACRE FEET OR SMALLER.** Is 99 acre feet or smaller; or

BLM_0053477

    **b.** **IS CLASSIFIED AS A CLASS III OR CLASS IV DAM AND MEETS CERTAIN CRITERIA.** Is classified as a Class III or Class IV dam by the Colorado Division of Water Resources and meets all of the following criteria:

        **1.** **USE IS LIMITED TO THE GUNNISON RIVER BASIN.** The water contained in the impoundment will be used only within the Gunnison River Basin in Gunnison County; and

        **2.** **IS LOCATED ON PRIVATE LAND.** The impoundment will be constructed on land that is wholly privately owned; and

        **3.** **CONSTRUCTION IMPACT IS LIMITED.** Construction impact will be wholly contained on the parcel on which the impoundment will be located, and shall not extend to adjacent properties or public roads; and

        **4.** **FOSTERS SPECIFIC LOCAL BASIN USES.** The impoundment will help retain or enhance the productivity of agricultural lands or provide beneficial instream flows and levels for fisheries and recreation.

  **3.** **PROJECTS CLASSIFIED AS CLASS II DAMS ARE MINOR IMPACT PROJECTS.** New projects or facilities, or expansion of existing projects or facilities, that involve the design, construction and operation of a water impoundment that includes a dam classified by the Colorado Division of Water Resources as a Class II dam shall be classified as Minor Impact projects and be reviewed pursuant to Article 6: *Minor Impact Projects*, except that the Board, not the Planning Commission, shall be the decision-making body.

  **4.** **PROJECTS CLASSIFIED AS CLASS I DAMS ARE MAJOR IMPACT PROJECTS.** New projects, or facilities, or expansion of existing projects or facilities, that involve the design, construction and operation of a water impoundment that includes a dam classified by the Colorado Division of Water Resources as a Class I dam shall be classified as a Major Impact projects, and be reviewed pursuant to Article 7: *Major Impact Projects*.

  **5.** **GUNNISON COUNTY REGULATIONS FOR SPECIAL DEVELOPMENT PROJECTS.** Any proposal that meets the criteria of a Special Development Project as defined by the Gunnison County Regulations for Special Development Projects, as it may be amended, shall be reviewed and regulated pursuant to those *Regulations*.

  **6.** **EXCEPTIONS.** The requirements of this Section expressly shall not apply to water diversion structures or ditches that are unrelated to water storage or water impoundment, or the collection of water(s) for those purposes, or that are unrelated to the construction and operation of a new, or the modification or expansion of an existing, reservoir or dam.

**E.** **PRIORITY REVIEW FOR GUNNISON RIVER BASIN PROJECTS.** A complete Land Use Change Permit application for water impoundment whose waters would be used exclusively in the Gunnison River basin generally shall be given priority over other applications pursuant to this *Resolution* or the Gunnison County Regulations for Special Development Projects that are being reviewed by staff, the Planning Commission or the Board. At each phase of its review, each application shall be placed on the first scheduled Commission or Board agenda for which it can be properly noticed. When such application is submitted and is being reviewed at the same time the County is reviewing an application pursuant to Article 14: *Large Parcel Incentive Process*, those applications shall share equal priority over other applications.

**F.** **RELATIONSHIP OF THIS SECTION WITH FEDERAL AND STATE REQUIREMENTS.**

  **1.** **DIVISION OF WATER RESOURCES AND OTHER AGENCY APPLICATION CONTENTS ACCEPTED.** To the maximum extent feasible, information supplied by the applicant within a permit application submitted to the Colorado Division of Water Resources and any other state or federal agency, shall be accepted by Gunnison County to meet submittal requirements required by this Section.

  **2.** **CONCURRENT PROCESSING.** Gunnison County seeks to avoid duplicative regulatory controls or unnecessary delays. Therefore, processing of an application for a permit normally will proceed concurrently with the processing of other required federal, state and/or local authorizations or certifications.

    **a.** **IDENTIFICATION OF ISSUES OF CONCERN.** In order to facilitate the processes of each other federal, state or local entity with applicable regulatory authority, when an application for a Land Use Change Permit for an impoundment of water is received by Gunnison County, the Planning Director shall review the application and inform each other entity with regulatory authority and the applicant of the preliminary and known primary issues of concern to Gunnison County. The applicant has the opportunity to request, or may be required to participate in, a Pre-Application conference for the

BLM_0053478

purpose of discussing various processes, standards and submittal requirements of this *Resolution*, and/or any intergovernmental agreement, and for the Planning Department to provide and explain to the  applicant the required application form, pursuant  to Section 3-108: *Pre-Application Conference,* and  Appendix Table 2: *Summary of Review Process.*

**b.** **COUNTY ACTION INDEPENDENT OF FEDERAL OR STATE AGENCIES. T**he County shall not be bound to wait until permitting and/or other federal or state review processes are complete in order to take action pursuant to this *Resolution*, nor shall the County be required to follow the determinations by applicable state or federal agencies in making decisions pursuant to this *Resolution.*

**c.** **SCHEDULING WHEN PROJECT REQUIRES ENVIRONMENTAL ASSESSMENT OR ENVIRONMENTAL IMPACT STATEMENT.** The County's schedule of review for projects pursuant to this Section for which a state or federally Environmental Assessment or Environmental Impact State is required shall include the following:

**1.** **SCHEDULING OF HEARING AFTER ENVIRONMENTAL ASSESSMENT OR ENVIRONMENTAL IMPACT STATEMENT.** Whenever reasonably feasible, the County shall conduct its required hearing(s) within 60 days after the date of issuance of a Draft Environmental Assessment of Environmental Impact Statement.

**2.** **FINAL ACTION.** Final action by the County on a Land Use Change Permit application may be delayed until 30 days after the Final Environmental Assessment (EA), Environmental Impact Statement (EIS) permit by a state or federal agency are issued unless otherwise agreed upon by the applicant and the decision-making body, and only if the applicant has applied for the required Land Use Change Permit within 60 days after applying for the required state or federal permit.

**d.** **RELATIONSHIP TO REGULATION BY THE U.S. ARMY CORPS OF ENGINEERS**. While the primary responsibility for determining land use matters rests with local government, Gunnison County recognizes that, the U.S. Army Corps of Engineers ("Corps") also regulates the discharge of dredged or fill materials in the waters of the United States. The Corps' regulatory process includes consideration of the "public interest" (including conservation, economics, aesthetics, environmental concerns, wetlands, fish, wildlife, historic, cultural, scenic and recreational values, flood hazards, floodplain values and water quality). Gunnison County shall participate in relevant Corps' processes, and shall seek appropriate resolution of land use issues through those processes, but shall neither be bound to wait until the Corps' process is complete to take action pursuant to this *Resolution* nor to follow determinations by the Corps in making decisions pursuant to this *Resolution.*

**e.** **RELATIONSHIP TO RULES AND REGULATIONS OF THE COLORADO STATE ENGINEER, DIVISION OF WATER RESOURCES**. The primary responsibility to promulgate and enforce regulations for dam safety and dam construction rests with the Colorado State Engineer. Gunnison County will normally accept decisions by the State Engineer on dam safety and dam construction unless there are significant issues of overriding County importance. Such issues include the impact of a potential failure of an impoundment on neighboring lands and land uses.

**G. STANDARDS.** Land Use Change Permit applications for water impoundments subject to this Section shall comply with all applicable federal, state and local requirements and shall be approved unless any of the following standards is not met:

**1.** **NO SIGNIFICANT NET ADVERSE EFFECT.** The proposed impoundment, its construction and operation shall not, after mitigation, cause a significant net adverse effect to the following; there is not a presumption that inundation alone, except for inundation of critical habitat, is a significant net adverse effect:

**a.** **SURFACE OR GROUND WATER QUALITY.** Surface or ground water quality within the impact area. The determination of the effects of the project shall include:

**1.** **CHANGES TO EXISTING WATER QUALITY**. Changes to existing water quality, as certified by the Colorado Water Quality Control Commission;

**2.** **WATER TO BE IMPOUNDED WITHIN LOCAL BASINS**. There is a rebuttable presumption that, unless the primary use of the water to be impounded shall be in Gunnison County or downstream of Gunnison County in the Gunnison and/or Colorado River basins, there will be significant net adverse effect to surface or ground water quality within the impact area;

**3.** **CROSS-BASIN OR OUT-OF-BASIN IMPOUNDMENT.** There is a rebuttable presumption that, unless the primary use of the water to be impounded shall be in the same basin as the water body

BLM_0053479

from which it flows, there will be significant net adverse effect to surface or ground water quality within the impact area; and

**b.** **HYDROLOGIC FUNCTION AND CAPACITY**. The hydrologic capacities or functioning of streams, floodplains, wetlands and riparian areas, lakes and reservoirs in the impact area;

**c.** **AIR QUALITY**. Air quality in the impact area;

**d.** **VEGETATION**. Vegetation in the impact area except that which is actually inundated;

**e.** **ANIMALS.** Terrestrial and aquatic animals and their habitat in the impact area;

**f.** **THREATENED OR ENDANGERED SPECIES**. Threatened or endangered species as defined in C.R.S. 33-1-102 as it may be amended, within the impact area;

**g.** **SOILS AND GEOLOGIC CONDITIONS**. Soils and geologic conditions within the impact area;

**h.** **EXISTING LAND USES**. Existing land uses (except those owned by the applicant), public services and facilities, and government revenues and expenditures;

**i.** **UNIQUE AREAS OF INTEREST**. Areas of geological, paleontological, ecological, historic or archaeological importance within the impact area;

**j.** **PUBLIC ROADS**. Public roads and their uses, including hours during which vehicles related to the project will be operating;

**k.** **HISTORIC PUBLIC ACCESS**. Historic public access;

**l.** **ADJOINING OR OTHER LANDS.** Impacts on adjoining or other affected lands in the impact area; or,

**m.** **VISUAL IMPACTS.** Visual impacts in the impact area shall require mitigation. However, a project shall not be denied solely on its inability to mitigate visual impacts totally.

**n.** **ACREAGE AND LOCATION INUNDATED.** The amount of surface acreage inundated and its location.

**2.** **TECHNICAL FEASIBILITY OF THE PROJECT**. The proposed development is technically feasible.

**3.** **ABILITY TO DEVELOP THE PROJECT**. The applicant has the technical and financial ability to develop and operate the proposed development in a manner that is consistent with the permit conditions and public health, safety and welfare.

**4.** **OTHER APPLICABLE COUNTY PERMIT REQUIREMENTS HAVE BEEN MET.** The project for which the impounded water is intended currently to be used has received each applicable approval or permit from Gunnison County.

**5.** **COMPLIANCE WITH APPLICABLE DESIGN STANDARDS**. All projects shall comply with the requirements of Section 13-114: *Exterior Lighting*. Requirements for mitigation of impacts may also be imposed, pursuant to Article 10: *Locational Standards*, Article 11: *Resource Protection Standards*, Article 12: *Development Infrastructure Standards*, and Article 13: *Project Design Standards*, if they are applicable to elements specific to individual projects.

**H.** **STANDARDS OF APPROVAL**. Any Land Use Change Permit approved for a water impoundment that requires a Land Use Change Permit pursuant to this Section shall include the condition that the applicant shall provide the County a copy of any maintenance and operations report as prepared for the Colorado Division of Water Resources. The County shall also, upon approval of the Permit, submit a request to the Colorado Division of Water Resources that the County be notified when the agency notifies the owner that there has been an error in the maintenance or operation of the approved facility.

**I.** **APPROVAL FOR LAND USE CHANGE PERMITS ONLY**. Approval by Gunnison County of a Land Use Change Permit for a new, modified or expanded water impoundment structure and its operation in no manner implies approval of the design, concept, construction or maintenance program of the dam structure.

## SECTION 13-119: STANDARDS TO ENSURE COMPATIBLE USES

**A.** **GENERAL.** Proposed land use changes shall be designed, constructed, and maintained in a manner that will not adversely affect the character and tranquility of nearby residential or public use areas, as well as the following:

BLM_0053480

1. **HAZARDS OR NUISANCES**. Land use changes shall not subject other uses to undue noise, dust, fumes, odor, explosion, aircraft flight patterns, or other hazards or nuisances, whether the result of design, location, basic character, or of planned or reasonably expected growth.

2. **ADVERSE IMPACTS TO ADJOINING LAND**. Land use changes shall eliminate or minimize or mitigate conflicts between adjoining land uses and to the maximum extent feasible, avoid changes that will result in significant net adverse impact to adjoining land.

B. **ADDITIONAL COMPATIBILITY REQUIREMENTS**. As a condition of approval for Land Use Change Permits and in addition to any other requirements of this *Resolution*, the applicable review body may recommend and the decision-making body shall be authorized to impose conditions that are necessary to minimize any potentially adverse impacts. Such conditions may include the following:

1. **HOURS.** Limitation on hours of operation and deliveries;

2. **NOISE AND GLARE.** Relocation on a site of activities that generate potential adverse impacts on adjacent uses including noises and glare;

3. **TRASH.** Appropriate placement of trash receptacles;

4. **LOADING AND DELIVERY**. Appropriate location of loading and delivery areas;

5. **ILLUMINATION**. Appropriate lighting location, intensity, and hours of illumination;

6. **OUTDOOR SERVICES**. Appropriate placement and illumination of outdoor vending machines, telephones, and similar outdoor services and activities;

7. **LANDSCAPING.** The requirement of additional landscaping and buffering;

8. **HEIGHT AND SIZE RESTRICTIONS**. The imposition of height and size restrictions to preserve light, privacy, views of significant features from public property and rights-of-way, and to ensure reasonable compatibility of structure sizes;

9. **NATURAL LIGHTING**. Preservation of natural lighting;

10. **SOLAR ACCESS**. Preservation of solar access;

11. **ODORS AND FUMES**. Ventilation and control of odors and fumes; and

12. **DUST CONTROL**. The imposition of paving or other means as a dust control measure.

BLM_0053481

# ARTICLE 14:
# LARGE PARCEL INCENTIVE PROCESS

## SECTION 14-101: PURPOSE

The purpose of this Article is to provide incentives to Land Use Change Permit applicants to go beyond the minimum requirements of this *Resolution*, to preserve and enhance open space, and to protect and promote agricultural uses.

**LARGE PARCELS SUBJECT TO DEVELOPMENT PRESSURE.** There are in Gunnison County large tracts of private land, including productive agricultural land, that are subject to increasing pressures to be divided and sold for development. County regulation and incentives that encourage appropriate development of that land as a whole will foster orderly planning and will provide significant public benefits, including maintenance of the open character of rural Gunnison County, continuation of agriculture in Gunnison County, and preservation of wildlife habitat, wetlands and watersheds in Gunnison County.

**EXPEDITED ALTERNATIVE TO 35-ACRE TRACT EXEMPT SUBDIVISION APPROPRIATE.** The County is precluded by C.R.S. 30-28-101 (10) (c) (1) from regulating the subdivision of land into parcels all of which are 35 acres or greater in size. It is appropriate and in the public interest that the developers and owners of those large tracts of private land be given reasonable incentives to submit to County review and regulation an application for the division and development of large tracts as an alternative to the statutory 35-acre exemption described in C.R.S. 30-28-101 (c)(1).

## SECTION 14-102: INCENTIVES FOR SELECTING LPIP REVIEW

**A. LPIP IS VOLUNTARY ALTERNATIVE.** Gunnison County's Large Parcel Incentive Process ("LPIP") is a voluntary process that provides incentives to encourage landowners to submit proposed subdivision and development of large tracts of land voluntarily to County review and regulation. The incentives include:

1. **EXPEDITED REVIEW PROCESS.** Expedited review process for LPIP applications; and

2. **STANDARDS.** Standards that provide more certainty to the review process and that promote more expedient high quality and environmentally sound proposals; and

3. **DENSITY BONUS.** Development density bonuses; and

4. **STATUTORY BENEFITS REGARDING WELLS**. Statutory benefits regarding wells; and

5. **LOT SIZE FLEXIBILITY**. Lot size flexibility for large residences; and

6. **EXTENSION OF VESTED PROPERTY RIGHTS**. Extensions of vested property rights.

**B. BENEFITS OF LPIP PROJECT REVIEW**. The following benefits apply to a LPIP project review:

1. **MINOR IMPACT CLASSIFICATION.** Applications submitted pursuant to the LPIP shall be classified and reviewed as Minor Impact projects and shall be processed expeditiously as described in this Section.

2. **PRIORITY REVIEW.** Conforming and complete applications submitted pursuant to the LPIP generally shall be given priority over other applications pursuant to this *Resolution* that are being reviewed by staff, the Planning Commission or the Board. At each phase of its review, each application shall be placed on the first scheduled Commission or Board agenda for which it can be properly noticed.

3. **CRITICAL PATH FOR REVIEW**. Upon acceptance for filing of a LPIP application, the Planning Director will establish a critical path and schedule for review and processing of the application. That schedule shall include a date certain, no later than nine months from the date a complete application is filed, for the County to make a final decision approving, approving with conditions, or denying the application. If no final decision is made by the County on or before that final decision date, the application shall be deemed approved. The date of that final decision shall automatically be extended by the number of days an applicant's submittal(s) are incomplete or late. In addition, extensions of that final decision date are permissible with the prior written

BLM_0053482

approval of the applicant, or for extenuating circumstances as determined by the Board (including the desirability of a site visit during a certain season, the desirability of conducting tests and analyzing results, that require a longer period).

4.  **INCENTIVE PROVIDED BY STATUTORY BENEFITS.** The LPIP formally implements the requirements of C.R.S. 30-28-401 et seq: and the exceptions and presumptions identified in C.R.S. 37-92-602, concerning cluster developments and domestic water permits for those developments; the LPIP is intended to make available the benefits provided by those statutes.

TABLE 11: NUMBER OF BONUS RESIDENCES ALLOWED IN LPIP SUBDIVISION

| TOTAL ACREAGE | NUMBER OF RESIDENCES ALLOWED BY RIGHT AS AN EXEMPT SUBDIVISION | TOTAL NUMBER OF RESIDENCES ALLOWED BY RIGHT AS LPIP SUBDIVISION, W/ LESS THAN 85% PRESERVED LAND | TOTAL NUMBER OF RESIDENCES ALLOWED BY RIGHT AS LPIP SUBDIVISION W/ 85% PRESERVED LAND (140 ACRES MINIMUM REQUIRED) |
|---|---|---|---|
| 70 | 2 | 3 | N/A |
| 140 | 4 | 6 | 7 |
| 280 | 8 | 12 | 14 |
| 560 | 16 | 24 | 28 |
| 1,000 | 28 | 42 | 49 |

5.  **INCENTIVE PROVIDED BY FLEXIBILITY FOR LARGER RESIDENCES AND LOT SIZE.** The standards required by Section 13-105: *Residential Building Sizes and Lot Coverages*, is waived for LPIP projects, except that the following sections shall apply: Section 13-105: G.1.: *Buildings Shall Be Confined in Envelope;* Section 13-105: G. 2. d: *Share Road and Driveway;* Section 13-105: G. 1. a: *Minimize Visibility of Structure by Siting;* Section 13-105: G. 1. b: *Minimize Visibility of Structure By Screening,* and Section 13-105: G.1. c: *Location of Utilities Underground.*

6.  **INCENTIVE OF INCREASED DENSITY.** Pursuant to Section 1-107: *One Residence Per Legal Lot Subject to Compliance With This Resolution*, a legal lot is permitted as of right to have one residence per lot, with an integrated secondary residence, whether or not that parcel is greater than 35 acres in size. No additional residences are allowed by right, unless a parcel has been subdivided and platted pursuant to this LPIP (Table 11: *Number of Bonus Residences Allowed in LPIP Subdivision*).

    a.  **THREE RESIDENCES PER 70 ACRES BY RIGHT PLUS BONUS ON LARGER ACREAGE.** A parcel of land that is subdivided with the approval of the County pursuant to this LPIP is permitted as of right to contain three residences per 70 acres, rounded down to the nearest whole multiple of 35. In addition, for tracts 140 acres and larger, if the preserved land is 85 percent of the area of the tract, rather than the 75 percent required in Section 14-103: B. 1. e: *Clustering of Building Envelopes,* one secondary residence (in addition to an integrated secondary residence) or one additional lot shall be permitted as of right for each whole increment of 140 acres.

7.  **INCENTIVE REGARDING POTENTIAL CLAIMS FOR PUBLIC ROADS.** If there is credible evidence that a public trail exists across the subject land, the applicant shall deed to Gunnison County a permanent easement in that location for a limited, nonmotorized public trail. If there is no credible evidence that a public trail exists across the subject land, the Board and the applicant may agree on a limited, permanently deeded nonmotorized public trail across the subject land, and the Board shall execute a quit claim deed extinguishing County claims to other historically used public access across the subject land.

8.  **VESTED PROPERTY RIGHT.** As a legislative act, the Board shall enter into a development agreement regarding each Land Use Change Permit approved pursuant to the LPIP to extend in perpetuity the vested property right to build the residences permitted as of right, subject to the provisions of Section 1-105: *Sections Necessary for the Immediate Preservation of Public Health and Safety*, and any other ordinance or regulation that is general in nature, is applicable to all property subject to land use regulation by Gunnison County, and that is found necessary by the Board for the immediate preservation of public health and safety.

BLM_0053483

## SECTION 14-103: LPIP STANDARDS

**A.  LOCATION OF LPIP PROJECT.** A LPIP subdivision may be located anywhere in Gunnison County, subject to the following requirements:

    **1.  MUNICIPAL THREE MILE PLAN AREAS.** When the proposal is for development located within a municipal three-mile plan area, the development proposal shall address how it comports with the objectives and policies of the applicable municipal Three-Mile Plan.  The County shall consider how the proposed development has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the Three-Mile Plan area. Where there is a conflict between the objectives or policies of a Three-Mile Plan or the intergovernmental agreement, and County standards, County standards shall apply.

**B.  APPROVAL REQUIRED IF STANDARDS ARE MET.** Land Use Change Permit applications submitted pursuant to LPIP shall be approved if the following standards are met:

    **1.  GENERAL.**

        **a.  SIZE REQUIREMENT**. The application must involve a single tract of land of at least 70 acres, or two more contiguous tracts of land with an aggregate size of at least 70 acres.

        **b.  USES LIMITED**. The proposed uses of the subject land under the LPIP shall be limited to single family residences, agricultural use, open space, and noncommercial recreation. No other uses shall be approved, with or without conditions.

        **c.  SUBDIVISION.** The tract may be subdivided into developable parcels, the number of which shall not exceed three per 70 acres; and preserved land that may be under separate ownership. No resultant, subdivided parcel shall be further subdivided.

        **d.  DENSITY.** The sum of primary residences shall not exceed three per 70 acres of the tract.

        **e.  CLUSTERING OF BUILDING ENVELOPES**. All of the building envelopes shall be clustered into one or more compact areas that are in the aggregate no more than 25 percent of the total area of the tract. Such clustering shall be reasonably flexible to promote site design pursuant to Section 14-102: B. 1. f: *Residential Lot Size and Siting.*

        **f.  RESIDENTIAL LOT SIZE AND SITING.** Location, size, and contiguity of lots, the separation of lots, and the location of building envelopes shall take into consideration the unique physical characteristics of a specific parcel. Flexibility in lot size is encouraged to promote a site design that is sensitive to the natural environment, adapts to natural topography of the site, accommodates the mix of residential land uses and housing types proposed within the development, and is compatible with agricultural, and other existing and permitted uses.

        **g.  PRESERVED LAND MUST BE COMPACT**. The preserved land must be located in a compact area unless the preservation of wildlife habitat, scenic features or historic agricultural uses requires otherwise.

        **h.  ROADS**. Roads and driveways on the tract shall be:

            **1.  MINIMUM NECESSARY**. Kept to the minimum necessary for access; and,

            **2.  UNOBTRUSIVE VISIBILITY**. To the greatest extent feasible, sited to be not visible from any city, town, or public road listed in Section 11-108: *Standards for Development on Ridgeline*.

        **i.  OTHER REQUIREMENTS SATISFIED**. A LPIP subdivision shall comply with the other standards and requirements of this *Resolution* that do not conflict with the standards and requirements of this Section.

    **2.  PRESERVED LAND**. A minimum of 75 percent of the subject land must be preserved, and include the following:

        **a.  RECORDED PROTECTION**. Preserved land shall be permanently precluded from additional development in perpetuity and preserved in its state at the time the Land Use Change Permit application is submitted. If the land is degraded, the County and the applicant will agree on measures to improve the land. Preservation shall be accomplished by an appropriate recorded conservation easement, acceptable to the County, or by a recorded deed with conservation covenants acceptable to the County, to which the County is a party and that the County has authority to enforce. A recorded deed with conservation covenants shall be acceptable only if the County determines that the preserved

BLM_0053484

land will be preserved essentially in its natural or agreed upon improved state. In the event that the preserved land is subject to a conservation easement, a qualifying organization (as defined by the *Internal Revenue Code*) acceptable to Gunnison County must be designated as the grantee of the easement. The grantee or its designee will be responsible for monitoring the easement.

**b. CHARACTERISTICS.** Preserved land shall:

**1. MAXIMIZE NATURAL RESOURCE AREAS.** Include, to the greatest extent feasible, the productive agricultural land, wetlands, riparian areas and wildlife habitat on the parcel; and

**2. MAXIMIZE OPEN SPACE.** Achieve the maximum contiguous amount of open space feasible on the parcel; and

**3. BE CONTIGUOUS WITH OPEN SPACES.** To the maximum extent feasible, be located contiguous to and be connected with other open space areas adjacent to the LPIP boundaries; and

**4. PROVIDE FOR WILDLIFE MIGRATION.** Provide, where applicable, physical connections for wildlife movement; and

**5. BE MANAGED AS SINGLE UNIT.** To the maximum extent feasible, be managed as a single agricultural unit, if it is devoted to agricultural use; and

**6. HAVE MINIMAL FENCING.** Be fenced no more than the minimum necessary for responsible conservation and pasture rotation with low visibility fencing materials (including wire, or electric fencing).

**c. EXISTING CONSERVATION EASEMENTS.** Land encumbered by a conservation easement that exists before issuance of a Land Use Change Permit for an LPIP application may, in the County's discretion, satisfy the preserved land requirement of this Section under the following conditions:

**1. TERMS OF EASEMENT ARE SATISFACTORY TO COUNTY.** The terms of the existing easement are acceptable to the County.

**2. PRESERVED LANDS MEETS STANDARDS.** The preserved land meets the following standards:

**(a.) SUFFICIENT VALUES.** The preserved land has sufficient natural, scenic, open space, wildlife habitat, agricultural, horticultural, recreational, forest or other value to justify the applicant receiving the LPIP benefits;

**(b.) SIGNIFICANT PUBLIC BENEFIT.** Significant public benefit has occurred by preservation of the land subject to the conservation easement;

**(c.) SUFFICIENT ACREAGE.** Sufficient acreage has been preserved pursuant to this Section;

**(d.) PRESERVATION QUALIFIES UNDER INTERNAL REVENUE CODE.** Preservation of the land qualifies as a conservation contribution under Section 170 (h), as amended, of the *Internal Revenue Code;*

**(e.) PRESERVED LAND HAS REQUIRED CHARACTERISTICS.** The preserved land has the characteristics set forth in Section 14-103: B. 2. b: *Characteristics;*

**(f.) PUBLIC WELFARE IS ENHANCED.** The public health, safety and welfare have been enhanced.

**3. PREVIOUS DONATION MAY NOT MEET REQUIREMENTS.** The previous donation of a conservation easement does not create a right to apply the preserved land to satisfy the preserved land requirements of this Section. Each case will be subject to the discretion of the County and will be reviewed on an individual basis to determine if it satisfies the standards set forth in this Section 14-103: *LPIP Standards.*

**d. MANAGEMENT PLAN.** Each LPIP shall include as part of its Final Plan submittal a written management plan subject to approval by the County. The management plan shall include a baseline report identifying the condition of the preserved land at the time the Final Plan application is submitted. The management plan shall define the roles and responsibilities of administration, monitoring and enforcement pertinent to the specific open space. The management plans shall disclose, quantify and ensure that to the greatest degree feasible all existing and decreed ditch and other water right(s) associated with the preserved land continue to be put to their historic use(s) in their historic amounts

BLM_0053485

and are not abandoned, or conveyed off the subject land. Performance, monitoring and enforcement of the management plan shall be financially ensured by a permanent endowment fund in an amount and type approved by the County and funded by the applicant at the time the application is approved.

3. **SUBMITTAL FOR FINAL APPROVAL AND EXECUTION OF LPIP GUARANTEES**. The submittal for final approval of any Land Use Change Permit application pursuant to the LPIP, shall include all applicable information required by Section 6-104: B: *Submittal for Final Action for Minor Impact Project,* and all proposed covenants, deed restrictions, easements, management plans, improvements agreements, or other documents ("LPIP guarantees") necessary to implement the proposal. Approval of a Land Use Change Permit application pursuant to the LPIP shall be conditioned upon execution of all LPIP guarantees reasonably deemed necessary and appropriate by the Board.

# ARTICLE 15:
# RIGHT-TO-RANCH POLICY

**COLORADO STATUTE PROTECTS AGRICULTURAL ACTIVITIES**. It is the declared policy of the State of Colorado, pursuant to C.R.S. 35-3.5-101 et seq: to conserve, protect and encourage the development and improvement of its agricultural land for the production of food and other agricultural products.

**GUNNISON COUNTY IS CHANGING**. Population increases affect many elements of the community that is Gunnison County, including development in areas that have been rural for decades. When non-agricultural residents move into traditionally agricultural areas, conflict may occur. Gunnison County has a viable economic and cultural agricultural history. When agricultural operators and residents, and non-agricultural residents and visitors collide, the economic viability of agricultural operations, and the rural heritage that enriches the quality of life in the County, may be threatened.

**CONFLICTS BETWEEN AGRICULTURAL USES AND DEVELOPMENT**. Conflicts between agricultural operations and developed areas can arise from harassment of livestock, free roaming dogs threatening livestock and/or wildlife, trespass by humans and livestock, livestock on roadways, gates left open, fence construction and maintenance, maintenance of ditches across private property, storm water management, burning of ditches, complaints about noise, dust and odor, disposal of dead animals, noxious weeds, pest control, and chemical application issues.

## SECTION 15-101: PURPOSES

**A. INTENT TO ENCOURAGE AGRICULTURE AND PRESERVE RANCHERS' RIGHTS**. It is the purpose of this Section to conserve, protect, and encourage the continued use and improvement of traditional ranching lands in Gunnison County for the production of agricultural products. Additionally, the *Right-to-Ranch Policy* is designed to preserve the right of ranchers to produce, without unnecessary interference, agricultural products using generally accepted agricultural practices and to discourage the encroachment of non agricultural land uses into rural areas. Gunnison County in adopting this Policy intends:

1. **TO ENCOURAGE RESPONSIBLE RANCHING**. To conserve, enhance, and encourage responsible ranching and farming, and lawful agricultural activities and operations within and throughout the county where appropriate.

2. **TO PROTECT AGRICULTURAL ACTIVITIES FROM COMPLAINTS.** To protect agricultural operators from complaints concerning agricultural activities that are legal and responsible.

3. **TO EDUCATE THE PUBLIC.** To educate the public and visitors and nonagricultural residents of the County about the existence, validity, and importance of the county's agricultural operations and activities.

4. **TO ASSIST IN DISPUTE RESOLUTION.** To provide a forum for the informal and non-binding resolution of disputes between agricultural operators and nonagricultural residents and visitors to the county.

5. **TO MINIMIZE CONFLICT BETWEEN AGRICULTURAL AND OTHER USES.** To minimize potential conflicts between agricultural and non-agricultural users of land in the county. To educate new rural residents and long-time agricultural operators alike to their rights, responsibilities, and obligations relating to agricultural activities.

## SECTION 15-102: APPLICABILITY

**APPLICABILITY.** The requirements of this Section shall apply to all Land Use Change Permit applications in Gunnison County. This Right-to-Ranch policy is not intended to apply to general agricultural operations not related to ranching or to small-scale hobby farms or ranches. The protections of this Section, including the limitations on actions for private or public nuisance, are applicable only to agricultural operations as defined by this *Resolution*.

BLM_0053487

**A. LANDOWNER'S RIGHT TO PUT LAND INTO ALTERNATIVE USE.** The requirements of this Section shall not prevent an owner from selling his/her land or prevent or hinder the owner in seeking approval to put the land into alternative use.

# SECTION 15-103: EFFECTS OF ADOPTION OF RIGHT-TO-RANCH POLICY

**A. ADOPTION OF THE RIGHT-TO-RANCH POLICY.** Upon the effective date of this *Resolution*, and therefore the adoption of this Right-to-Ranch Policy, the Board establishes that:

1. **RANCHING IS INTEGRAL TO GUNNISON COUNTY.** It is the policy of the Board that continued ranching and farming within Gunnison County are integral elements of and necessary for the continued vitality of the county's history, tourism, economy, landscape, open space, lifestyle, and culture.

2. **AGRICULTURAL OPERATIONS WARRANT PROTECTION.** Given their importance to the county, the Western Slope of Colorado, and to the State, agricultural lands and operations are worthy of recognition and protection. Because, by law, Colorado is a "Right-to-Farm" State, residents and visitors must be prepared to accept the activities, sights, sounds, and smells of Gunnison County's agricultural operations as a normal and necessary aspect of living in a County with a strong rural character and a healthy agricultural sector.

3. **LAWFUL RANCHING IS NOT A NUISANCE.** People with urban expectations may perceive agricultural activities, sights, sounds, and smells as inconvenient, an eyesore, or unpleasant; however, state law and County policy provide that ranching, farming, or other agricultural activities and operations within the county shall not be considered to be nuisances so long as operated in conformance with the law and in a non-negligent manner.

4. **OTHER LAND USERS ON NOTICE.** Residents and visitors must be prepared to encounter noises, odors, lights, mud, dust, smoke, chemicals, machinery and livestock on public roads, storage and disposal of manure, and the application of chemical and organic fertilizers, soil amendments, herbicides, and pesticides, by spraying and other mechanisms, pursuant to applicable local, state and federal laws.

5. **FENCING RESPONSIBILITIES.** All landowners, whether agricultural operators or residential owners, have obligations under state law and County regulation, to maintain fences and adhere to Colorado laws that require livestock to be fenced out, rather than in.

6. **IRRIGATORS' RIGHT TO MAINTAIN DITCHES.** Pursuant to Colorado law and Section 11-109: *Development That Affects Agricultural Lands* irrigators have the right to maintain irrigation ditches, head-gates and other diversion structures. Irrigation ditches are not to be used for the dumping of refuse.

   a. **IRRIGATION DITCH EASEMENTS.** Pursuant to Section 11-109: G. 2.: *Irrigation Ditch Easements*, a maintenance easement of at least 25 feet from the edges of the ditch banks shall be preserved and indicated on a Final Plat for subdivision. For parcels that are the subject of Land Use Change Permits, Building Permits or Individual Sewage Disposal System Permits, access for maintenance of an irrigation ditch is required to be 25 feet from each ditch bank. When approved in notarized written form by the ditch owner(s), that distance may be decreased and existing historical easements used to gain access to ditches, headgates, and fences for maintenance or operational purposes shall be preserved or replaced with reasonable alternate easements suitable for continuation of the historic use.

7. **LANDOWNERS' RESPONSIBILITIES.** All landowners are responsible for controlling noxious weeds, keeping pets under control, using property in accordance with this *Resolution* and all other applicable codes and regulations adopted by the County, and maintaining the environmental resources of their property wisely.

**B. LIMITATION ON PRIVATE ACTION.** An agricultural operation shall not be found to be a public or private nuisance if the agricultural operation alleged to be a nuisance employs methods or practices that are commonly or reasonably associated with agricultural production. An agricultural operation that employs methods or practices that are commonly or reasonably associated with agricultural production shall not be found to be a public or private nuisance as a result of any of the following activities or conditions:

1. **CHANGE IN OWNERSHIP.** Change in ownership; or

2. **NONPERMANENT INTERRUPTION.** Nonpermanent cessation or interruption of farming or ranching; or

3. **PARTICIPATION IN GOVERNMENT PROGRAM.** Participation in a government-sponsored agricultural program; or

BLM_0053488

4. **NEW TECHNOLOGY**. Employment of new technology; or

5. **PRECEDED NON-AGRICULTURAL ACTIVITIES IN THE AREA.** The agricultural operation was established before non-agricultural activities began in the area around the agricultural operation; or

6. **IS NOT OPERATING NEGLIGENTLY.** Is not operating negligently.

   a. **REBUTTABLE PRESUMPTION OF NON-NEGLIGENT OPERATION**. Employment of methods or practices that are commonly or reasonably associated with agricultural production shall create a rebuttable presumption that an agricultural operation is not operating negligently.

C. **INCORPORATING THIS POLICY INTO GUNNISON COUNTY PERMIT APPROVALS**. In reviewing any application for a Land Use Change Permit, the applicable review body shall, to the maximum extent feasible, ensure that such change does not adversely affect any existing agricultural operation on land not a part of the land use change, including maintenance of historic irrigation ditches and access to active agricultural operations The following shall be included in the County's approval of permits:

1. **INFORMATION TO BE PROVIDED TO BUILDERS ADJACENT TO AGRICULTURAL OPERATIONS**. When a Building Permit is issued for new construction in unincorporated areas of the county that are adjacent to agricultural operations, Building Permit applicants shall be provided with a copy of this *Policy*, and a copy of Gunnison County's *Code of the West*

2. **NOTIFICATION REQUIRED FOR LAND USE CHANGE PERMITS**. As of the effective date of this *Resolution*, pursuant to this Policy, notification of existence of this Policy and of Gunnison County's *Code of the West* shall be required to be included in the recorded resolution approving any Land Use Change Permit, and, as applicable, on the recorded plat of any subdivision that is located adjacent to an agricultural operation.

# SECTION 15-104: CONFLICT RESOLUTION PROGRAM

A. **AGRICULTURAL LAND USE CONFLICT RESOLUTION PROGRAM**. There is hereby created an Agricultural Land Use Conflict Resolution Program for providing a forum for the resolution of conflicts between or among landowners and/or residents regarding agricultural operations or practices referenced in this Section and occurring within Gunnison County.

1. **MEDIATION PANEL TO RESOLVE CONFLICTS**. A mediation panel shall be appointed for hearing grievances regarding agricultural land use conflicts between Gunnison County agricultural operations and other residents. The mediation panel shall have the responsibility for making recommendations for the resolution of those conflicts.

   a. **APPOINTED MEMBERS**. The panel shall be made up of a pool of four year-round residents of Gunnison County, appointed by the Board of Commissioners. Each member shall serve a term of two years, except that one member of the initial panel shall be appointed for a one year term in order to stagger the terms of the panel.

   b. **QUALIFICATIONS TO SERVE**. Priority in appointment shall be given to individuals with mediation, arbitration, and other dispute resolution skills; however, experience in ranching or farming shall be mandatory for at least one member of the panel.

   c. **COMPENSATION**. Members of the panel shall receive no compensation, but may receive reasonable expenses incurred in the carrying out of their duties, and the County shall make reasonable staff time and other in-kind resources available to the panel, as needed.

2. **PROCESS AND RULES**. The initial mediation panel shall draft and recommend rules or process for the hearing of grievances by the panel. Once drafted, such rules or process shall be presented to the Board for its approval and adoption. Any amendments to such rules and process shall be made in the same manner. The rules or process recommended by the panel and adopted by the Board shall conform in the minimum to the following:

   a. **INFORMAL HEARINGS**. Hearing of grievances shall be informal and appearances before the panel shall be by the parties themselves or their official representative. A party may be represented by legal counsel to receive general advice on how to proceed or whether to accept a resolution recommended by the panel, but such legal counsel may not make an appearance in person, in writing, or otherwise, before the panel.

BLM_0053489

    **b.**  **ACCEPTANCE OF RECOMMENDATIONS.** Hearing of grievances and acceptance of any recommendation of the panel shall be voluntary; the process is not mandatory and the results are not binding on either party, unless the parties by mutual written agreement agree that they shall be bound by the decision of the mediation panel.

    **c.**  **CONFIDENTIALITY.** All proceedings shall be confidential and no panel member or other county staff shall disclose any information discovered or made known in the course of any grievance proceeding, without consent by the parties.

BLM_0053490

# ARTICLE 16: ENFORCEMENT

## SECTION 16-101: GENERAL

This *Resolution* shall be enforced in accordance with the requirements of Colorado law and as provided in this Article. Each enforcement remedy can be invoked by Gunnison County independently or in conjunction with any or all of the other enforcement remedies.

## SECTION 16-102: AUTHORIZATION TO ENFORCE

The Board, County Manager, County Planning Director, the Planning Director's designees, County Attorney, County Building Inspector, County Environmental Health Official, County Public Works Director and such other persons as the Board may designate are charged with and authorized to enforce all the requirements of this *Resolution*.

## SECTION 16-103: RIGHT OF ENTRY AND INSPECTION

When a person charged with enforcement of this *Resolution* has reasonable cause to believe that any activity is being conducted or any condition exists on a tract of land or in any building or other structure which is contrary to or in violation of this *Resolution* or any permit issued pursuant to this *Resolution*, any person charged with enforcement of this *Resolution* may enter and inspect or cause to be entered and inspected, the tract, building or other structure at reasonable times to determine compliance with this *Resolution* or that permit, provided that if that tract, building or other structure is occupied that credentials be presented to the occupant and entry requested. If the building or premises are unoccupied, such person shall first make a reasonable effort to locate the owner or other person having charge or control of the tract, building or other structure and request entry. If entry is refused, or the owner or person having charge or control cannot be located after reasonable effort, the Board or its designee shall apply to the District Court, Gunnison County, for an order to permit entry. Nothing in this Section precludes or constrains any entry upon or into, or inspection of, any land or into a building otherwise permitted by law.

## SECTION 16-104: NOTIFICATION TO CORRECT VIOLATION

When a person charged with enforcement of this *Resolution* has reasonable cause to believe that any activity is being conducted or any condition exists on any tract of land or in any building or other structure which is contrary to or in violation of this *Resolution* or any permit issued pursuant to this *Resolution* or the former *Gunnison County Land Use Resolution*, the Planning Director shall give written notice to the owner or other person having charge or control of such tract, building or other structure, by certified mail, return receipt requested at the last known address. The notification shall state which requirements of this *Resolution* or the former *Gunnison County Land Use Resolution*, or of a permit are being violated, shall state the conditions that are to be satisfied for compliance, and shall state that the violator shall correct the violation within 30 days of receipt of the notification. Such written notification is cumulative to, and not a prerequisite to, any other enforcement remedies available to Gunnison County. The Planning Director shall issue a written compliance letter only if the activity or condition that is the basis of the notice has been remedied.

## SECTION 16-105: STOP ORDER; IMMEDIATE COMPLIANCE

**A.** **PLANNING DIRECTOR MAY ISSUE ORDER.** When a person charged with enforcement of this *Resolution* has reasonable cause to believe that any activity is being conducted or any condition exists on any tract of land or in any building or other structure which is contrary to or in violation of this *Resolution* or any permit issued pursuant to this *Resolution* or the former *Gunnison County Land Use Resolution*, the Planning Director may, by written notice ("stop order"), order the activity or use stopped immediately or by a time certain. The stop order shall state the conditions that shall be satisfied for compliance. The stop order shall be served by delivering it to any person engaged in that activity or use, or to any person owning, leasing, or controlling the land, building or other structure, or by posting the order in a conspicuous location on the land, building or other structure.

BLM_0053491

**B.   IMMEDIATE COMPLIANCE REQUIRED.** All persons shall comply immediately with the stop order upon its service or posting, as set forth above.

**C.   STOP ORDER LIFTED ONLY BY COMPLIANCE ORDER.** The stop order shall remain in effect until the Planning Director determines that the activity or condition that is the basis for the stop order has been remedied, and the Planning Director issues a written compliance order that is served by Gunnison County.

**D.   DISCRETIONARY BOARD REVIEW.** At its discretion, the Board may review and amend the stop order.

**E.   STOP ORDER NOT A PREREQUISITE TO OTHER REMEDIES.** The issuance of a stop order is cumulative to, and not a prerequisite to any other enforcement remedies available to Gunnison County.

## SECTION 16-106: SUSPENSION OR REVOCATION OF PERMIT

**A.   HEARING SCHEDULED.** When the Planning Director determines that reasonable cause exists to believe that a permit was issued under this *Resolution* or the former *Gunnison County Land Use Resolution*, in substantial reliance on erroneous or misleading information or representation from the applicant or his/her representative, or that any activity is being conducted or any condition exists on any tract of land or in any building or other structure which is contrary to or in violation of this *Resolution* or any permit issued pursuant to this *Resolution* or the former *Gunnison County Land Use Resolution*, the Board shall schedule a hearing to determine whether that permit shall be suspended or revoked.

**B.   NOTICE OF HEARING.** The Board shall give written notice of the hearing to the owner of the subject land by mailing notice, certified, return receipt requested at the last known address, postmarked at least 14 days before the hearing. The notice shall contain a summary of the grounds for the potential suspension or revocation.

**C.   HEARING DATE MAY BE ADVANCED.** The owner of the subject land may request in writing that the hearing be scheduled sooner than the scheduled hearing date. If the Board receives the request more than two working days before a regularly scheduled Board meeting, the hearing must be advanced to that Board meeting or the next regularly scheduled Board meeting.

**D.   DEMONSTRATION BY CREDIBLE EVIDENCE.** At the hearing, the Planning Director shall have the burden to demonstrate, by credible evidence, that the permit should be suspended or revoked.

**E.   GENERAL STANDARDS.** The permit shall be suspended or revoked if, after the close of the hearing, and based on credible evidence, any one of the following findings is made by the Board:

    **1.   BASED ON MISLEADING INFORMATION OR MISREPRESENTATION.** The permit was issued in reliance on materially erroneous or misleading information from the applicant or his/her representative; or

    **2.   VIOLATION OF CONDITIONS OF PERMIT OR RESOLUTION.** Activity is being conducted or a condition exists on the tract of land or in the building or other structure that is a violation of this *Resolution* or any permit issued pursuant to this *Resolution* or the former *Gunnison County Land Use Resolution*.

**F.   DECISION OF BOARD.** Within five days after the close of the hearing, the Board shall render its decision on the suspension or revocation of the permit.

**G.   NOTIFICATION.** Notification of the Board's decision shall be provided by the Planning Director to the landowner, by certified mail postmarked within seven days of the Board's decision.

**H.   SUSPENSION OR REVOCATION LIFTED ONLY BY COMPLIANCE ORDER.** The suspension or revocation order shall remain in effect until the Board determines that the activity or condition that is the basis for the suspension or revocation order has been remedied, and the Board issues a written compliance order.

**I.   CUMULATIVE REMEDY.** The Board's right to suspend or revoke a permit as provided in this Section shall be cumulative to, and not a prerequisite to, any other enforcement remedies available to the Board.

## SECTION 16-107: ABATEMENT OF VIOLATION

**A.   GENERAL.** Any violation of this *Resolution* or of a permit issued pursuant to this *Resolution* or the former *Gunnison County Land Use Resolution* may be abated under the process and standards of this Section.

**B.   PROCESS.**

    **1.   NOTIFICATION OF VIOLATION.** If, after investigation by any person charged with enforcement of this *Resolution*, or the Board determines that reasonable cause exists to believe that any activity is being

BLM_0053492

conducted or any condition exists on any tract of land or in any building or other structure which is contrary to or in violation of this *Resolution* or any permit issued pursuant to this *Resolution* or the former *Gunnison County Land Use Resolution*, the Board may serve the owner of the subject land, by certified mail, return receipt requested, with a Notice to Abate, stating the grounds of the violation, and setting forth a reasonable time for the landowner to abate and correct the violation.

2.  **HEARING TO CORRECT VIOLATION.** If the landowner fails to comply with the Notice to Abate, a Hearing Officer appointed by the Board shall conduct a Hearing on Abatement to ascertain whether abatement should be required.

3.  **NOTICE OF HEARING.** The Board shall provide notice of the Hearing on Abatement to the landowner and any complainant by certified mail, return receipt requested at the last known address, a minimum of 14 days before the date established for the hearing. Notice shall be substantially in this format:

    NOTICE OF HEARING ON ABATEMENT OF VIOLATION OF
    GUNNISON COUNTY LAND USE RESOLUTION

    *This is a notice of hearing before a Hearing Office of Gunnison County, Colorado, to    ascertain whether certain activity being conducted on, or condition existing on, a tract of land or in a structure situated in unincorporated Gunnison County, Colorado, known and designated as _____(address)_____, in said County, and more particularly described as _____(legal description)_____ with Tax Parcel No. _____, constitutes a violation of the Gunnison County Land Use Resolution and is subject to abatement pursuant to this Resolution. If the violation is not promptly abated by the landowner, such violated may be abated by Gunnison County, in which case the cost of that abatement will be assessed on such land, and the costs, together with interest thereon, shall constitute a lien on such until paid.*

    *Said alleged violation does not comply with Section _____ of the Gunnison County Land Use Resolution, and / or Section _____ of the former Gunnison County Land Use Resolution, and consists of the following: _____.*

    *The method(s) of abatement are: _____.*

    *All persons having an interest in said matters may attend the hearing and their testimony and evidence will be heard and given due consideration.*

    *Dated this _____ day of _____, 20\_\_\_.*

    *Time and Date of Hearing: _____.*

4.  **RECOMMENDATION BY HEARING OFFICER.**

    a.  **GENERAL.** At the time stated in the Notice of the Hearing on Abatement, the Hearing Officer shall conduct a hearing pursuant to the requirements of this Section, and shall hear and consider all relevant evidence, objections or protests, and shall hear testimony under oath of the alleged violator, if desiring to testify, and all other persons having an interest in the hearing.

    b.  **CONTINUANCE.** The Hearing Officer may continue the hearing from time to time for good cause.

    c.  **RECOMMENDED ORDER.** If, after the conclusion of the hearing, the Hearing Officer finds that a violation of the this *Resolution* or the former *Gunnison County Land Use Resolution* does exist and there is sufficient cause to abate the violation, within five days after the close of the hearing the Hearing Officer shall prepare a recommended *Order to Abate* outlining findings and specifying the nature of the violation, the method of abatement and the time within which the work shall be commenced and completed. The recommended *Order to Abate* shall then be forwarded to the Board for final action at a hearing.

    d.  **NOTIFICATION OF RECOMMENDED ORDER.** The Hearing Officer shall provide the landowner a copy of the recommended *Order to Abate* by certified mail, return receipt requested at the last known address, postmarked the day the recommended Order is forwarded to the Board for a final decision.

    e.  **BOARD HEARING.**

        1.  **SCHEDULING HEARING.** The Board shall schedule a hearing on the recommended *Order to Abate* within 30 days from the date the recommended Order is forwarded to the Board by the Hearing Officer.

2. **NOTICE OF HEARING.** The Board shall provide the landowner notice of the hearing by certified mail, return receipt requested at the last known address, a minimum of 14 days before the date of the hearing.

3. **CONTINUANCES.** Continuances of the hearing may be granted by the Board on request of the landowner or the Planning Director for good cause shown.

4. **CONDUCT OF HEARING**. At the hearing, the Board shall provide the landowner or the landowner's representative and the County Attorney an opportunity to make statements about the record established in the hearing held by the Hearing Officer and in the recommended *Order to Abate*. The Board shall then review the record and recommended Order.

 **f.** **BOARD DECISION.** The recommended *Order to Abate*, or a modified version of it, shall be approved if there is competent evidence in the record that a violation of this *Resolution* or the former *Gunnison County Land Use Resolution* does exist and there is sufficient cause to evict or relocate an illegal use or rehabilitate, demolish, remove or repair an illegal structure.

 **g.** **NOTICE OF DECISION.** The County shall provide a copy of the decision of the Board to the landowner by certified mail, return receipt requested.

**C.** **EFFECT OF ORDER TO ABATE.** If an *Order to Abate* is issued it shall mean that the land or structure is in violation of this *Resolution* or the former *Gunnison County Land Use Resolution*, and the illegal activity shall be discontinued and rehabilitated, repaired, removed, or demolished in the manner and means specifically set forth in the *Order to Abate*. The costs of any County investigation of the violation and the costs of the hearing and Board action, including incidental expenses of abating the violation, shall be the responsibility of the landowner. The term "incidental expenses" shall include personnel costs, both direct and indirect; costs incurred in documenting the violation; the actual expenses and costs to the County in the preparation of notices, specifications and contracts, and in inspecting the work; and the costs of printing and mailing required. The County shall provide written notice of those costs to the landowner by first class mail at the last known address. If the landowner fails to pay those costs within 30 days of the County mailing, the costs shall become a lien against the subject land.

**D.** **ABATEMENT BY COUNTY**. If the violation is not abated pursuant to the *Order to Abate* within the prescribed abatement period, the County Manager shall cause the violation to be abated by County employees or by private contract, or by any other means provided by Colorado law. The County Manager is authorized to enter upon land for those purposes. In addition to the costs regarding the *Order to Abate*, the landowner shall be responsible to pay all costs, including incidental expenses, of the abatement by the County. The County shall provide written notice of those costs to the landowner by first class mail at the last known address. If the landowner fails to pay those costs within 30 days of the County mailing, the costs shall become a lien against the subject land.

**E.** **CUMULATIVE REMEDY.** The Board's right to abate a violation of this *Resolution* or of any permit issued pursuant to this *Resolution* or the former *Gunnison County Land Use Resolution*, as provided in this Section, shall be cumulative to, and not a prerequisite to, any other enforcement remedy provided by this *Resolution*.

## SECTION 16-108: NO PROCESSING OR APPROVAL FOR LAND SUBJECT TO ENFORCEMENT ORDERS

No permit application shall be processed or approved pursuant to this *Resolution*, and no Building Permit shall be issued by Gunnison County, for property that is the subject of an existing Stop Order, Suspension Order, or Order of Abatement. The enforcement remedy provided by this Section shall be cumulative to, and not a prerequisite to, any other enforcement remedy provided by this *Resolution*.

## SECTION 16-109: NO ACTION FOR PERSONS SUBJECT TO ENFORCEMENT ORDERS

No application shall be processed or approved pursuant to this *Resolution*, and no Building Permit shall be issued by Gunnison County, for or to any person who is responsible for a violation that is the subject of an existing Stop Order, Suspension Order or Order of Abatement. The enforcement remedy provided by this Section shall be cumulative to, and not a prerequisite to, any other enforcement remedy provided by this *Resolution*.

BLM_0053494

## SECTION 16-110: REVIEW BEFORE PERMIT APPLICATION ACCEPTED

A.  **PLANNING DEPARTMENT REVIEW.** When any activity has begun or any condition exists on a tract of land or in any building or other structure without the necessary permit having been obtained pursuant to this *Resolution* or the former *Gunnison County Land Use Resolution*, the Planning Director shall conduct a review to determine what remediation must occur before a permit application to approve that activity or condition will be accepted.

B.  **REVIEW FEE.** A review fee, in addition to the application fee, shall be collected whether or not a permit is issued based on the application. The review fee shall be equal to three times the amount of the application fee.

C.  **FEE PAYMENT OR FILING OF APPLICATION DOES NOT PROVIDE EXEMPTION FROM OTHER REQUIREMENTS.** Neither the payment of the review fee nor the filing of an application shall exempt any person from compliance with all other requirements of this *Resolution* or relieve any person from any other enforcement remedies available to Gunnison County.

D.  **CUMULATIVE REMEDY.** The requirement of a review pursuant to this Section shall be cumulative to, and not a prerequisite to, any other enforcement remedy provided by this *Resolution*.

## SECTION 16-111: REQUIREMENTS REGARDING SUBDIVISION OF LAND

In addition to the enforcement remedies provided in this *Resolution*, but not as a pre requisite to any of them:

A.  **FINE FOR TRANSFERRING TITLE BEFORE FINAL PLAN APPROVAL AND FILING OF WARRANTS.** Pursuant to C.R.S. 30-28-110(4)(a) as it may be amended, any subdivider or agent of a subdivider, who transfers legal or equitable title or sells any subdivided land before a Final Plat for subdivided land has been approved by the Board and recorded or filed in the Office of the County Clerk and Recorder, is guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than $1,000 nor less than $500 for each parcel of, or interest in, subdivided land which is sold. All fines collected under this Section shall be credited to the General Fund of Gunnison County.

B.  **LOTS MAY NOT BE SOLD BEFORE FINAL APPROVAL.** Pursuant to C.R.S. 30-28-110(4)(b) as it may be amended, the Board has the power to bring an action to enjoin any subdivider from selling subdivided land before a Final Plat for such subdivided land has been approved by the Board and properly recorded.

C.  **TAXES TO BE PAID.** An application for any land use change, any subdivision of land or the subsequent phasing of an approved subdivision of land or issuance of any related County permits shall be placed on inactive status pursuant to Section 3-105: B: *Withdrawn and Inactive Applications* if the real property taxes for the subject parcel are determined by the Gunnison County Treasurer's Office to be delinquent in whole or in part. No plat for subdivided land shall be approved by the Board unless at the time of the approval of platting the applicant provides the certification of the County Treasurer's office that all real property taxes applicable to that subdivided land, up to the year in which approval is granted, have been paid.

## SECTION 16-112: OTHER REMEDIES

A.  **CIVIL REMEDIES.** Any person violating any provision of this *Resolution* shall be subject to all civil sanctions and penalties authorized by law, including C.R.S. 30-28-124 and 124.5 as they may be amended. For purposes of civil sanctions the County may seek, this *Resolution* shall be considered to be a zoning resolution. A civil sanction and penalty may be assessed for each day the violation exists.

B.  **CRIMINAL REMEDIES.** Any person violating any provision of this *Resolution* shall be subject to all criminal sanctions and penalties authorized by law, including but not limited to C.R.S. 30-28-124 and 124.5 and C.R.S. 16-13-301 et seq: as they may be amended. For purposes of criminal sanctions the County may seek, this *Resolution* shall be considered to be a zoning resolution. A sanction and penalty may be assessed for each day the violation exists.

C.  **CUMULATIVE REMEDY.** The Board's right to seek civil and/or criminal remedies shall be exercised only by the Board and shall be cumulative to, and not a prerequisite to, any other enforcement remedies provided by this *Resolution*.

D.  **FEES.** The Board shall be entitled to recover from any person violating any provision of this *Resolution* all reasonable attorneys' fees as well as all reasonable costs incurred in enforcing requirements of this *Resolution*.

BLM_0053495

## SECTION 16-113: NO PERSONAL LIABILITY

Any County official, employee or agent charged with the enforcement of this *Resolution* who acts in good faith in the discharge of the duties required by this *Resolution* or other pertinent law, ordinance, regulation or resolution shall not thereby be rendered personally liable for any damages that may accrue to any person or property as a result of an act or omission to act in the discharge of those duties.

## SECTION 16-114: NO COUNTY LIABILITY

This *Resolution* does not make, and shall not be construed to make, Gunnison County, or any of its officials, employees or agents responsible or liable for any injury to persons or property resulting from any action pursuant to this *Resolution*.

## SECTION 16-115: RESPONSIBILITY NOT LESSENED

This *Resolution* does not and shall not be construed to relieve from or lessen the responsibility of any person owning or controlling any land for any damages to persons or property caused by use of such land for which a permit was issued pursuant to this *Resolution*.

## SECTION 16-116: NO WAIVER BY GUNNISON COUNTY OF GOVERNMENTAL IMMUNITY

Nothing in this *Resolution*, and no act performed pursuant to this *Resolution*, is or shall be construed to be a waiver by the Board of governmental immunity.

## SECTION 16-117: DEVELOPMENT IMPROVEMENT AGREEMENT REQUIRED

A. **DEVELOPMENT IMPROVEMENT AGREEMENT SHALL BE REQUIRED.** When public or private improvements are a required component of a Land Use Change Permit, the Board shall require as a condition of permit approval, in addition to the guarantees identified in C.R.S. 30-28-137 as it may be amended, that the applicant execute and fund with Gunnison County a Development Improvement Agreement acceptable to Gunnison County in form and substance, and amount and type of security. The Development Improvement Agreement shall constitute the applicant's agreement to construct the public improvements and private improvements identified as requirements of project approval. The Development Improvement Agreement shall specifically identify such requirements including plans, drawings and schedules for completion and shall be substantially in the form referenced in Section 16-117: E: *Form of Agreement*.

B. **FINANCIAL SECURITY.** The Development Improvement Agreement shall require the applicant to provide to the County a guarantee of financial security, acceptable to the County, in an amount established by the Board based on no less than 125 percent of the estimated cost of the project, and payable on demand to the County. The purpose of the guarantee of financial security is to assure that the public improvements and private improvements identified as requirements of project approval are timely and fully completed, that all mitigation requirements and permit conditions are timely and fully performed, and that the development area is timely and fully reclaimed.

C. **ENSURED COMPLETION OF IMPROVEMENTS.** The Development Improvement Agreement shall provide that if the Board determines that any of the required improvements are not timely and fully constructed or if any of the requirements of approval are not performed as provided in the Agreement, including reasonable requirements for the correction of deficiencies upon notice thereof, the Board may draw upon the financial security as may be necessary to complete the improvements in accordance with the specifications included in the Agreement and the Board may exercise any or all of the other remedies available to it pursuant to the Agreement and this *Resolution*.

D. **CERTIFICATION OF COMPLETION AND RELEASE OF SECURITY.** The Development Improvement Agreement may include requirements for certification of completion, partial releases of the security, hold-over of security to ensure repairs or replacement, demonstrated performance of required facilities, substitution of security, and other requirements deemed appropriate by the Board.

E. **FORM OF AGREEMENT.** A general form of the Development Improvement Agreement is available in the County Attorney's office. This form of agreement may be modified from time to time by the County in its discretion without formal amendment to this *Resolution*.

BLM_0053496

# APPENDIX

## Tables in the Appendix:

Appendix Table 1: *Impact Classifications*
Appendix Table 2: *Summary of Review Processes*
Appendix Table 3: *Off-Road Parking Requirements*

## Figures in the Appendix:

Appendix Figure 1: *Site Plan Example*
Appendix Figure 2: *Vicinity Map Example*
Appendix Figure 3: *General Review Process for Land Use Change Permits*
Appendix Figure 4: *General Review Process for Administrative Review Projects That Require Land Use Change Permits*
Appendix Figure 5: *General Review Process for Minor Impact Projects*
Appendix Figure 6: *Sketch Plan Review Process for Major Impact Projects*
Appendix Figure 7: *Preliminary Plan Review Process for Major Impact Projects*
Appendix Figure 8: *Final Plan Review Process for Major Impact Projects*

BLM_0053497

APPENDIX

**APPENDIX TABLE 1: IMPACT CLASSIFICATIONS**

| ADMINISTRATIVE REVIEW PROJECTS THAT DO NOT REQUIRE A LAND USE CHANGE PERMIT | ADMINISTRATIVE REVIEW PROJECTS THAT REQUIRE A LAND USE CHANGE PERMIT | MINOR IMPACT PROJECT | MAJOR IMPACT PROJECT |
|---|---|---|---|
| • **EXEMPT PRIMARY RESIDENCE SMALLER THAN 9,000 SQ. FT.** A primary residence smaller than 9,000 sq. ft. that is exempted by Section 1-106: *Partially Exempted Land Use Changes.* The residence may include an attached garage no larger than 1,000 sq. ft., which shall not be calculated in the total square footage allowed for the residence. | • **PRIMARY RESIDENCE 9,000 SQ. FT. OR LESS, IN EXISTING PLATTED SUBDIVISION.** A primary residence smaller than 9,000 sq. ft., located within an existing platted subdivision. The residence may include an attached garage no larger than 1,000 sq. ft., which shall not be calculated in the total square footage allowed for the residence. | • **PRIMARY RESIDENCE 9,000 SQ. FT. OR LARGER.** A primary residence 9,000 sq. ft. or larger. The residence may include an attached garage no larger than 1,000 sq. ft., which shall not be calculated in the total square footage allowed for the residence, pursuant to Section 13-105: *Residential Building Sizes and Lot Coverages.* | • **MORE THAN FOUR UNITS.** More than four units that are subdivision lots, duplex units, or multiple-family residences. |
| • **BARNS AND OTHER AGRICULTURAL BUILDINGS ON AN AGRICULTURAL OPERATION.** A barn or other agricultural building used in conjunction with an agricultural operation. | • **AGGREGATE RESIDENTIAL SQUARE FOOTAGE LESS THAN 12,500 SQ. FT.** On one parcel The aggregate square footage of structures less than 12,500 sq. ft., (excluding from the calculation horse/hay sheds less than 500 sq. ft., one 120 sq/ft. storage shed, and a private greenhouse), that may include: | • **AGGREGATE SQUARE FOOTAGE OF 12,500 OR MORE SQ. FT.** An aggregate of 12,500 or more sq. ft. of residential living area (one single-family residence, or any combination of a primary single-family residence, an integrated secondary residence, and/or a detached secondary residence allowed by Division 9-100: *Secondary Uses and Activities* on one parcel, pursuant to Section 13-105: *Residential Building Sizes and Lot Coverages.* | • **AGGREGATE SQUARE FOOTAGE GREATER THAN 45 PERCENT OF AREA.** An aggregate square footage of structures that exceeds 45 percent of the total area of one parcel, pursuant to *Section 13-105: Residential Building Sizes and Lot Coverages.* |
| • **FENCES.** Fences, which shall comply with Section 13-113: *Fencing.* | | | • **NEW COMMERCIAL, INDUSTRIAL LARGER THAN 5,000 SQ. FT. OR FIVE ACRES.** A new commercial or industrial use of more than 5,000 sq. ft. of structure, or on a parcel of more than five acres, or which, because of projected traffic, hours of operation, or type of use, may be classified as a Major Impact project, or would be the first instance of a commercial or industrial land use in an area in which no other commercial or industrial land use currently exists. |
| • **GARDENS AND GREENHOUSES.** Private non-commercial gardens and greenhouses. | • **RESIDENTIAL LIVING AREA 9,000 SQ. FT. OR LESS.** 9,000 or less sq. ft. of residential living area (one single-family residence, or any combination of a primary single-family residence, an integrated secondary residence, and/or a detached secondary residence allowed by Section 9-101: *Uses Secondary to a Primary Residence*); and | | |
| • **ONE 120 SQ. FT. STORAGE SHED ON ONE-ACRE OR LARGER PARCEL.** One storage shed 120 sq. ft. or smaller, on a parcel an acre or larger. | • **ATTACHED GARAGE(S).** A garage or garages that together are no larger than 1,000 sq. ft., and that are attached to the primary residence. | • **INTEGRATED SECONDARY RESIDENCE 1,200 OR MORE SQ. FT.** An integrated secondary residence 1,200 sq. ft. or larger within a primary residence located on a legal lot smaller than 35 acres, or on any 35-acre or larger tract. If an applicant elects to include this size integrated secondary residence within a primary residence, no detached secondary residence is allowed. | • **EXPANSION OF COMMERCIAL OR INDUSTRIAL USE OF 10,000 SQ. FT. OR MORE.** Expansion of a commercial or industrial use, existing as of the effective date of this *Resolution*, of 10,000 sq. ft. or more. |
| • **HORSE/HAY SHED 500 SQ. FT. OR SMALLER ON ANY SIZE PARCEL.** A horse/hay shed 500 sq. ft. or smaller for sheltering horses or other livestock, or for storing hay, that is not part of an agricultural operation. | • **INTEGRATED SECONDARY RESIDENCE 851-1,200 SQ. FT. ON 35-ACRE TRACT CREATED AFTER EFFECTIVE DATE OF THIS *RESOLUTION.*** An integrated secondary residence 1,200 sq. ft. or smaller in a primary residence on a 35-acre tract created after the effective date of this *Resolution.* | • **DETACHED SECONDARY RESIDENCE LARGER THAN 2,500 SQ. FT. ON LEGAL LOT SMALLER THAN 35 ACRES.** A detached secondary residence, larger than 2,500 sq. ft., on a legal lot smaller than 35 acres. | • **LARGE NEW OR EXPANDED MINING OPERATIONS.** New or expanded mining operations that operate for more than 180 days per year, produces more than 10,000 tons of ore/waste per year, or affects more than two surface |
| • **BARNS IN APPROVED SUBDIVISIONS.** Barns located in approved subdivisions in which there are adopted protective covenants that allow barns and that have been approved by Gunnison County. | • **DETACHED SECONDARY RESIDENCE 2,500 SQ. FT. OR SMALLER ON LEGAL LOT.** A detached secondary residence of 2,500 sq. ft. or less, located on a legal lot | • **DETACHED SECONDARY RESIDENCE LARGER THAN 3,500 SQ. FT. ON 35-ACRE OR LARGER TRACT CREATED AFTER THIS** | |
| • **DETACHED GARAGE AND/OR SHOP** | | | |

17-2

BLM_0053498

**APPENDIX TABLE 1: IMPACT CLASSIFICATIONS**

| ADMINISTRATIVE REVIEW PROJECTS THAT DO NOT REQUIRE A LAND USE CHANGE PERMIT | ADMINISTRATIVE REVIEW PROJECTS THAT REQUIRE A LAND USE CHANGE PERMIT | MINOR IMPACT PROJECT | MAJOR IMPACT PROJECT |
|---|---|---|---|
| **750 SQ. FT. OR SMALLER**. A detached garage or shop, or combination of those uses in one structure, 750 sq. ft. or smaller.<br><br>• **ONE STORAGE SHED 120 SQ. FT. OR SMALLER ON PARCEL SMALLER THAN ONE ACRE**. One storage shed, 120 sq. ft. or smaller, on a parcel smaller than one acre<br><br>• **TWO STORAGE SHEDS 120 SQ. FT. ON ONE-ACRE OR LARGER PARCEL**. Two storage sheds, each no larger than 120 sq. ft., on a parcel an acre or larger.<br><br>• **GARDENS AND GREENHOUSES THAT ARE HOME OCCUPATIONS**. Gardens and greenhouses that are home occupations, created and operated pursuant to Section 9-102: *Home Occupations.*<br><br>• **POOLS AND RECREATION FACILITIES**. Private swimming pools and private recreation facilities associated with a primary residence, and not part of a private club or membership group.<br><br>• **INTEGRATED SECONDARY RESIDENCE 600-850 SQ. FT. ON ANY LEGAL LOT**. An integrated secondary residence 600-850 sq. ft. in a primary residence on any legal lot that meets the standards pursuant to Section 9-101. 7.: *Standards for Integrated Secondary Residence.*<br><br>• **ONE HOME OCCUPATION**. One home occupation, pursuant to Section 9-102: *Home Occupations.*<br><br>• **CAMPING**. Camping in a recreational vehicle or other camping shelter on an | smaller than 35 acres.<br><br>• **DETACHED SECONDARY RESIDENCE 3,500 SQ. FT. ON 35-ACRE OR LARGER TRACT**. A detached secondary residence of 3,500 sq. ft. or less, located on a tract of land 35-acres or larger.<br><br>• **SECONDARY STRUCTURE INTENDED ONLY FOR SLEEPING AND HAS NO KITCHEN**. A secondary structure without a kitchen that is to be used only for sleeping facilities. It shall comply with the requirements of the *Gunnison County Individual Sewage Disposal System Regulations.*<br><br>• **MORE THAN ONE HOME OCCUPATION**. More than one home occupation, pursuant to Section 9-102: *Home Occupations.*<br><br>• **HORSE/HAY SHED LARGER THAN 500 SQ. FT. ON PARCEL ONE-ACRE OR LARGER**. A horse/hay shed larger than 500 sq. ft., for sheltering horses or other livestock or for storing hay, on a parcel one acre or larger, that is not part of an agricultural operation.<br><br>• **MOBILE HOME NOT IN A MOBILE HOME COMMUNITY**. A mobile home proposed to be located on an individual parcel of land not in a mobile home community, but adjacent to a subdivision whose protective covenants do not address, or expressly prohibit mobile homes within the subdivision, pursuant to Section 9-202: *Individual Manufactured and Mobile Homes.*<br><br>• **BOUNDARY LINE ADJUSTMENT**.. An application to adjust the lot line between adjacent parcels or lots not in platted approved subdivisions, when the adjustment is in compliance with Section 5-103: *Standards for Approval of Administrative Review Projects.*<br><br>• **LOT CLUSTERS**. An application to eliminate | **RESOLUTION**. A detached secondary residence larger than 3,500 sq. ft. on a 35-acre or larger tract created after the effective date of this *Resolution.*<br><br>• **MORE THAN ONE SECONDARY RESIDENCE ON A LEGAL LOT OR TRACT**. More than one secondary residence on a legal lot or tract, except as allowed pursuant to Section 9-101: *Uses Secondary to a Primary Residence.*<br><br>• **2-4 UNITS.** 2-4 units that are subdivision lots, duplexes, or multiple-family residences, except as allowed pursuant to Section 9-101: G: *Secondary Structures and Uses Classified as Minor Impact Projects.*<br><br>• **LARGE PARCEL INCENTIVE PROCESS (LPIP) PROJECT**. Large Parcel Incentive Process developments, pursuant to *Section 14-102: Large Parcel Incentive Process.*<br><br>• **DEVELOPMENT REQUIRING DETAILED RIDGELINE VANTAGE VISIBILITY ANALYSIS**. Any development other than a project classified as a Major Impact project, and for which a detailed ridgeline vantage visibility analysis is required, pursuant to *Section 11-108: E: Impact Classification.*<br><br>• **CLEARING OF MORE THAN 7500 SQ. FT. OF LAND**. Clearing of more than 7,500 sq. ft. of land not related to activities permitted by a Building Permit, an ISDS Permit, or Access Permit, or an agricultural operation.<br><br>• **NEW COMMERCIAL, INDUSTRIAL 5,000 SQ. FT., OR FIVE ACRES OR LESS**. A new commercial or industrial | acres of land, pursuant to Division 9-400: *Exploration, Extraction and Processing of Minerals and Construction Materials.*<br><br>• **LARGE CONSTRUCTION MATERIALS OPERATIONS**. Any sand, gravel or quarry operation providing material that will operate for more than two years, pursuant to *Division 9-400: Exploration, Extraction and Processing of Minerals and Construction Materials.* Larger operations may require review under the *Gunnison County Special Development Projects Regulations.*<br><br>• **WATER IMPOUNDMENT PROJECTS CLASSIFIED AS CLASS I DAMS**. New projects, or facilities, or expansion of existing projects or facilities, that involve the design, construction and operation of a water impoundment that includes a dam classified by the Colorado Division of Water Resources as a Class I dam, pursuant to Section 13-118: *Water Impoundments.*<br><br>• **TRANSMISSION LINES**. Construction of a new transmission line(s) in an area in which no line(s) currently exists, but not including a project for which a Land Use Change Permit has been granted in which the design, construction, location and impacts of the utility line(s) were reviewed and approved.<br><br>• **PRECEDENT FOR FUTURE LAND USE THAT IS DIFFERENT THAN EXISTING USE**. Any proposal that sets a precedent for fu- |

APPENDIX

| Appendix Table 1: Impact Classifications | | | |
|---|---|---|---|
| **Administrative Review Projects That do NOT Require A Land Use Change Permit** | **Administrative Review Projects That Require A Land Use Change Permit** | **Minor Impact Project** | **Major Impact Project** |
| individual parcel pursuant to Section 9-509: C. *No Land Use Change Permit Required For Camping in a Recreational Vehicle or other Camping Shelter on an Individual Parcel.* • **SPECIAL EVENTS.** A special event, pursuant to Section 9-501: *Special Events.* • **TEMPORARY STRUCTURES.** Temporary structures, pursuant to Section 9-502: *Temporary Structures.* • **SATELLITE DISHES.** Satellite dishes, pursuant to Section 9-503: *Satellite Dish Devices.* • **ATTACHED WIRELESS TELECOMMUNICATIONS DEVICE.** Attached wireless telecommunications device, pursuant to Section 9-504: *Attached Wireless Telecommunications Devices.* • **KEEPING OF LIVESTOCK NOT ON AN AGRICULTURAL OPERATION.** Keeping of livestock not on an agricultural operation, pursuant to Section 9-508: *Keeping of Livestock Not on an Agricultural Operation.* • **SITE APPROVAL APPLICATION FOR WATER SUPPLY OR WASTEWATER TREATMENT SYSTEM.** The Colorado Department of Public Health and Environment's site approval application for a proposed expansion or alteration of an existing wastewater treatment system. • **DISTRIBUTION OR SERVICE LINE TO PRIMARY RESIDENCE.** A distribution or service line providing service to a single primary residence, multiple family residences, or other residence | the lot lines separating adjacent lots that are commonly owned. • **CORRECTION PLAT.** An application to correct a technical error in a subdivision plat that has been approved and recorded. • **REPAIR OF EXISTING DISTRIBUTION LINES.** Repair of existing distribution lines located substantially within an existing utility easement. • **ALTERATION OF APPROVED BUILDING ENVELOPES.** Alterations of building envelopes on lots that were approved as an element of a Land Use Change Permit. • **SUBDIVISION EXEMPTION TO "VALIDATE" AN EXISTING LOT.** Pursuant to C.R.S. 30-28-101 (10) (d)., the "validation" of a lot that existed prior to the effective date of this *Resolution*, but did not exist before September 27, 1972 and has not been reviewed and approved by the County as a legally subdivided lot "legal lot"). • **EXPANSION OR CHANGE OF COMMERCIAL OR INDUSTRIAL USE TO TOTAL SIZE OF 5,000 SQ. FT. OR ONE ACRE OR LESS.** Expansion or change of a commercial or industrial use existing as of the effective date of this *Resolution*, when the expansion will result in the use having a total size of less than 5,000 sq. ft. of a structure, or one acre of land. • **PLAT FOR APPROVED CONDOMINIUMS/TOWNHOME PROJECT.** A constructed condominium or townhome project for which a Land Use Change Permit has been approved for the overall development. • **LIMITED MINERAL EXPLORATION.** Limited mineral exploration (activities related to proving up a patented mining claim pursuant to | structure equal to or less than 5,000 sq. ft. or a commercial or industrial use developed on five acres or less. • **5,000-9,999 SQ. FT. EXPANSION OF COMMERCIAL OR INDUSTRIAL USE.** Expansion of a commercial or industrial use, existing as of the effective date of this *Resolution*, of 5,000 – 9,999 sq. ft. • **FREESTANDING WIRELESS TELECOMMUNICATION STRUCTURE.** Construction and siting of a freestanding wireless communication structure, building, pole, tower or antenna that provides wireless telecommunications services, pursuant to *Section 9-505: Freestanding Wireless Telecommunication Structures.* • **SMALL NEW OR EXPANDED MINING OPERATIONS.** New or expanded mining operation that operates for no more than 180 days per year, produces fewer than 10,000 tons of ore/waste per year and affects no more than two surface acres of land, pursuant to *Division 9-400: Exploration, Extraction and Processing of Minerals and Construction Materials.* • **CONSTRUCTION MATERIALS OPERATION RELATED TO CONSTRUCTION OF PUBLIC ROAD.** Any sand, gravel, or quarry operation providing material for public road construction that will operate for less than two years. • **GENERAL ROAD CUTTING OR CONSTRUCTION.** Road cutting or construction, except that cutting or construction and maintenance of a road that provides access solely for an agricultural operation shall not be classified as | ture land use that is significantly different than existing land uses in the impact area. |

*Gunnison County, Colorado Land Use Resolution: 2/15/06*

BLM_0053500

| APPENDIX TABLE 1: IMPACT CLASSIFICATIONS | | | |
|---|---|---|---|
| **ADMINISTRATIVE REVIEW PROJECTS THAT DO NOT REQUIRE A LAND USE CHANGE PERMIT** | **ADMINISTRATIVE REVIEW PROJECTS THAT REQUIRE A LAND USE CHANGE PERMIT** | **MINOR IMPACT PROJECT** | **MAJOR IMPACT PROJECT** |
| that would not otherwise require a Land Use Permit under the requirements of this *Resolution*.<br><br>• **ALTERATION AND REPAIR OF EXISTING SERVICE LINES OR DISTRIBUTION LINES**. Conversion of above-ground distribution lines or service lines to underground distribution or service lines located substantially within an existing utility easement. | federal law), as addressed in Section 9-402: C.3: *Limited Mineral Exploration*.<br><br>• **UNDERGROUND MINERAL EXPLORATION**. An application for underground mineral exploration for operations existing as of the effective date of this *Resolution*, as addressed in Section 9-402: D: *Extension and Expansion of Current Underground Mineral Exploration Required to File Notice of Activity*.<br><br>• **EXTRACTION OF CONSTRUCTION MATERIALS**. Extraction of construction materials that generates more than 300 cubic yards, per Section 9-402: C. 1: *Limited Construction Material Extraction*. | a Minor Impact project, and shall not require review.<br><br>• **TRANSMISSION LINES**. Upgrade of an existing utility transmission line(s) within an existing easement(s), but not including a project for which a Land Use Change Permit has been granted in which the design, construction and impacts of the utility line were reviewed and approved.<br><br>• **BED AND BREAKFAST.** Bed and breakfast business, pursuant to *Section 4-103: Bed and Breakfast*.<br><br>• **CHILD CARE CENTER**. A child care center, pursuant to Section 9-506: *Child Care Center*.<br><br>• **GROUP HOME**. A group home, pursuant to *Section 9-507: Group Home*.<br><br>• **FREESTANDING WIRELESS COMMUNICATION STRUCTURES**. Freestanding wireless communication structures, pursuant to *Section 9-505: Freestanding Wireless Communication Structures*.<br><br>• **WATER IMPOUNDMENT PROJECTS CLASSIFIED AS CLASS II DAMS**. New projects or facilities, or expansion of existing projects or facilities, that involve the design, construction and operation of a water impoundment that includes a dam classified by the Colorado Division of Water Resources as a Class II dam, pursuant to *Section 13-118: Water Impoundments*.<br><br>• **EXPANSION OR EXTENSION OF SNOWPLOWING**. Expansion or extension of snowplowing, pursuant to *Section 11-110: F: Expansion or Exten-* | |

BLM_0053501

*APPENDIX*

| Appendix Table 1: Impact Classifications | | | |
|---|---|---|---|
| **Administrative Review Projects That do NOT Require A Land Use Change Permit** | **Administrative Review Projects That Require A Land Use Change Permit** | **Minor Impact Project** | **Major Impact Project** |
| | | *sion of Snowplowing.*<br><br>• **COMMERCIAL WEDDING SITE.** The site on which weddings are regularly or frequently conducted as a commercial operation, irrespective of the number of people or vehicles generated by the wedding event. | |

BLM_0053502

**APPENDIX TABLE 2: SUMMARY OF REVIEW PROCESSES**

| APPLICATION TYPE | PRE-APPLICATION CONFERENCE | PLANNING DEPARTMENT | PLANNING COMMISSION | BOARD OF COMMISSIONERS | BOARD OF ADJUSTMENTS | PUBLIC HEARING |
|---|---|---|---|---|---|---|
| **ADMINISTRATIVE REVIEW PROJECTS** | | | | | | |
| ALL ADMINISTRATIVE REVIEW PROJECTS | Optional | Planning Director makes decision | N/A | Decisions may be appealed to the Board | N/A | None |
| **MINOR IMPACT PROJECTS** | | | | | | |
| MINOR IMPACT SUBDIVISION | Optional | Provides analysis of project to Planning Commission | Makes recommendation to Board | Makes decision; subdivision plat requires Board Signature | N/A | Planning Commission and Board jointly conduct one hearing |
| MINOR IMPACT NOT A SUBDIVISION | Optional | Provides analysis of project to Planning Commission | Makes decision | Decisions may be appealed to the Board | N/A | Planning Commission conducts one hearing |
| MINOR IMPACT, EXTENSION OF SNOWPLOWING | Optional | N/A | N/A | Makes decision | N/A | Board conducts one hearing |
| **MAJOR IMPACT PROJECTS** | | | | | | |
| SKETCH PLAN | Mandatory | Provides analysis of Sketch Plan to Planning Commission | Makes recommendation to Board | Makes decision | N/A | One jointly conducted hearing required by Commission; and Board; Board has option to separately conduct one additional |
| PRELIMINARY PLAN | Mandatory | Provides analysis of Preliminary Plan to Planning Commission | Makes recommendation to Board | Makes decision | N/A | One jointly conducted hearing by Commission and Board; Board has option to separately conduct one additional |

BLM_0053503

APPENDIX TABLE 2: SUMMARY OF REVIEW PROCESSES

| APPLICATION TYPE | PRE- APPLICATION CONFERENCE | PLANNING DEPARTMENT | PLANNING COMMISSION | BOARD OF COMMISSIONERS | BOARD OF ADJUSTMENTS | PUBLIC HEARING |
|---|---|---|---|---|---|---|
| FINAL PLAN | Optional | Provides analysis of Final Plan to Board | If included as a specific condition of Preliminary Plan Approval, Commission reviews and makes recommendation to board | Makes decision | N/A | None |
| MISCELLANEOUS PROCESSES | | | | | | |
| VARIANCE FROM SETBACKS FROM PROPERTY LINES AND ROAD RIGHTS-OF-WAY | N/A | Building Inspector presents report and analysis to Board of Adjustments | N/A | N/A | Makes decision | Board of Adjustment has one hearing |
| VARIANCE FROM SIGN REQUIREMENTS | N/A | Building Inspector presents report and analysis to Board | N/A | Makes decision | N/A | None |
| VARIANCE FROM FLOODPLAIN DEVELOPMENT REQUIREMENTS | N/A | Presents report and analysis to Board | N/A | Makes decision | N/A | None |
| EXTENSION OF VESTED RIGHT DURING TERM OF PERMIT | N/A | N/A | N/A | Makes decision | N/A | Board conducts one hearing |
| DESIGNATION OF SPECIAL GEOGRAPHIC AREAS | N/A | Prepares maps and provides analysis for Planning Commission on this *Resolution* language | Makes recommendation to Board | Makes decision | N/A | Planning Commission and Board jointly conduct one hearing |
| AMENDING THIS *RESOLUTION* | N/A | Makes analysis to Planning Commission | Makes recommendation to Board | Makes decision | N/A | Board required to conduct one hearing |

BLM_0053504



APPENDIX FIGURE 1: SITE PLAN EXAMPLE



APPENDIX FIGURE 2: VICINITY MAP EXAMPLE

BLM_0053505

*APPENDIX*

APPENDIX FIGURE 3: GENERAL REVIEW PROCESS FOR LAND USE CHANGE PERMITS



Both the Planning Commission and Board may conduct work sessions and site visits in addition to the described meetings and hearings.

BLM_0053506

APPENDIX FIGURE 4: GENERAL REVIEW PROCESS FOR ADMINISTRATIVE REVIEW PROJECTS THAT REQUIRE LAND USE CHANGE PERMITS



Estimated **MINIMUM** timeline for Administrative Review project review is 2-6 weeks. The number of applications being reviewed by the County, and schedules of the applicant's surveyors, attorneys and engineers will affect actual length of review.

BLM_0053507

*APPENDIX*

**APPENDIX FIGURE 5: GENERAL REVIEW PROCESS FOR MINOR IMPACT PROJECT**



Estimated **MINIMUM** timeline for Minor Impact project review is six weeks to two months. The number of applications being reviewed by the County, scheduling with the Board and Planning Commission, limited availability of publication dates within weekly newspapers, and schedules of the applicant's surveyors, attorneys and engineers will affect actual length of review. Both the Planning Commission and Board may conduct **work sessions** and **site visits** in addition to the described meetings and hearings. The Board also has the option of conducting its own separate additional public hearing.

BLM_0053508

APPENDIX FIGURE 6: SKETCH PLAN REVIEW PROCESS FOR MAJOR IMPACT PROJECTS



Estimated **MINIMUM** timeline for Sketch Plan review: 140 days (4.6 months). the number of days shown between review steps is an estimated minimum. The number of applications being reviewed by the County, scheduling with the Board and Planning Commission, limited publication dates within weekly newspapers, and schedules of the applicant's surveyors, attorneys and engineers will affect actual length of review. Both the Planning Commission and Board may conduct work sessions and site visits in addition to the described meetings and hearings.

BLM_0053509

*APPENDIX*

**APPENDIX FIGURE 7: PRELIMINARY PLAN REVIEW PROCESS FOR MAJOR IMPACT PROJECTS**



Estimated **MINIMUM** timeline for Preliminary Plan review: 140 days (4.6 months). the number of days shown between review steps is an estimated minimum. The number of applications being reviewed by the County, scheduling with the Board and Planning Commission, limited availability of publication dates within weekly newspapers, and schedules of the applicant's surveyors, attorneys and engineers will affect actual length of review. Both the Planning Commission and Board may conduct work sessions and site visits in addition to the described meetings and hearings.

BLM_0053510

APPENDIX FIGURE 8: FINAL PLAN REVIEW PROCESS FOR MAJOR IMPACT PROJECTS



Estimated timeline for Final Plan review: Two months. The number of days shown between review steps is an estimated minimum. The number of applications being reviewed by the County, scheduling with the Board and Planning Commission, limited availability of publication dates within weekly newspapers, and schedules of the applicant's surveyors, attorneys and engineers will affect actual length of review. Both the Planning Commission and Board may conduct work sessions and site visits in addition to the described meetings and hearings.

BLM_0053511

APPENDIX TABLE 3: OFF-ROAD PARKING REQUIREMENTS

| TYPE OF USE OR FACILITY | NUMBER OF OFF-ROAD SPACES | PER UNIT |
|---|---|---|
| RESIDENTIAL (MAY BE A GARAGE, CARPORT OR PARKING AREA) | | |
| MANUFACTURED HOUSING SUBDIVISION OR MOBILE HOME PARK | 2 parking spaces/ | Residence |
| MULTIPLE FAMILY, INCLUDING CONDOMINIUMS AND TOWNHOMES | 2 parking spaces per residence for up to 3 bedroom residence; one additional space for each additional bedroom in the residence | Residence |
| SINGLE-FAMILY AND DUPLEX | 2 parking spaces per residence for up to 3 bedroom residence; one additional space for each additional bedroom in the residence | Residence |
| INSTITUTIONAL, PUBLIC, SEMI-PRIVATE | | |
| SPECIAL EVENTS, AUDITORIUMS, ARENAS | 1 parking space/ | Four persons or spaces of seating capacity |
| CLUBS | 1 parking space/ | 100 sq. ft. of assembly area |
| GOVERNMENT OFFICE | 1 parking space/ | 300 sq. ft. |
| HOSPITAL | 1 parking space/ | Bed, and for every three employees |
| CHURCH | 1 parking space/ | 50 sq. ft. of seating/ meeting area |
| SCHOOLS, PUBLIC OR PRIVATE: ELEMENTARY OR MIDDLE SCHOOL | 1 parking space/ 1 drop-off space | Teacher or employee School |
| SCHOOL, PUBLIC OR PRIVATE: HIGH SCHOOL | 1 parking space/ 1 parking space/ 1 drop-off space | Teacher or employee 5 students School |
| GENERAL COMMERCIAL USES | | |
| ANIMAL SALES (UNRELATED TO AN AGRICULTURAL OPERATION) | 1 parking space/ | 250 sq. ft. |
| DOMESTIC ANIMAL BOARDING | 1 parking space/ | 400 sq. ft. |
| DOMESTIC ANIMAL GROOMING | 1 parking space/ | 400 sq. ft. |
| STABLE | 1 parking space/ | 5 stalls |
| RIDING SCHOOL | 1 parking space/ | 4 stalls |
| VETERINARY OFFICE OR HOSPITAL | 1 parking space/ | 400 sq. ft. |

(*Remainder of table on following page*)

BLM_0053512

| COMMERCIAL RECREATION AND ENTERTAINMENT FACILITIES | | |
|---|---|---|
| GOLF COURSE (PUBLIC OR PRIVATE) | 4 parking spaces/<br>1 parking space/ | Hole<br>Employee |
| SKATING RINK | 1 parking space/<br>1 parking space/ | Five fixed spaces or 60 sq. ft. of seating<br>250 sq. ft. of non-seating area |
| TENNIS AND RACQUETBALL COURTS | 3 parking spaces/ | Court |
| EATING AND/OR DRINKING FACILITIES | 1 parking space/<br>1 parking space/ | Four persons of seating capacity<br>Three employees |
| FINANCIAL INSTITUTION | 1 parking space/<br>based on site design | 300 sq. ft.<br>Space sufficient for vehicle stacking<br>area |
| COMMERCIAL NURSERIES | 1 parking space/ | Two acres |
| HOTELS, MOTELS, LODGES, BED AND BREAKFAST FACILITY | 1 parking space/<br>1 parking space/ | Sleeping room<br>Three employees |
| RETAIL SALES FACILITIES AND OFFICES | | |
| MEDICAL AND DENTAL | 1 parking space/ | 200 sq. ft. |
| ALL OTHER OFFICES | 1 parking space/ | 300 sq. ft. |
| FURNITURE, APPLIANCE OR LARGE STORE | 1 parking space/ | 500 sq. ft. |
| CONVENIENCE STORE WITH GAS PUMPS | 1 parking space<br>1 vehicle stacking area | 200 sq. ft. |
| VEHICLE OR EQUIPMENT SALES AND SERVICE, REPAIR, OR RENTAL | 1 parking space/ | 400 sq. ft. |
| CAR WASH | 1 parking space/ | 200 sq. ft. of sales/office area<br>Space sufficient for vehicle stacking<br>area |
| SERVICE STATION | 1 parking space/ | 200 sq. ft. of sales/ office area<br>Space sufficient for vehicle stacking<br>area |
| MINI-STORAGE RENTAL UNITS | 1 parking space/ | 100 lockers inside and at least 5 spaces<br>outside fenced area |
| WAREHOUSING AND STORAGE | 1 parking space/ | 500 sq. ft. |
| INDUSTRIAL USES | | |
| MANUFACTURING & PROCESSING FACILITIES | 1 parking space/ | 350 sq. ft. of gross floor area |

BLM_0053513

# INDEX

Page numbers reflect an Article number followed by a page number, i.e. "13-11" is page 11 in Article 13.

**35-ACRE TRACTS**
Detached secondary residence on...........5-1, 6-1, 9-2, 9-3, 17-3
Development alternative for, LPIP subdivision as................ 14-1
Development on, subject to regulations................................. 1-10
Exemption of, from subdivision definition............................... 2-21
Integrated secondary residence on ................. 5-1, 9-2, 9-3, 17-2
Listing of partially exempt .................................................1-9, 1-11
Pre-existing, with building envelopes and protective covenants
................................................................................................ 1-9
Pre-existing, with maximum size restrictions......................... 1-10
Required to comply with *Resolution* ............................. 1-10, 1-11
Subject to fire protection district fees ...................................... 1-24

**404 PERMIT**
Required for construction near water body or mudflow...... 13-32
Required for development in floodplain................................ 11-11
Required for protection of floodplain wetlands .................... 11-9

**ACCESS**
Definitions of..................................................................2-1, 2-12
Development of land beyond snowplowed ........................ 11-33
Emergency services, required for special events ............... 9-35
For emergency services in determining density.................. 10-2
Historical, required for Colorado Division of Wildlife ...... 11-25
Owners' responsibility in flood hazard area .......................... 11-5
Owners' responsibility in wildfire hazard area..................... 11-21
Shared, to minimize impact to......................................... 12-5
Standards for ..................................................................... 12-4
Through  avalanche return areas ....................................... 11-16

**ACCESS PERMIT**
Land Use Change Permit required before............................. 12-5
Required by Colorado Department of Transportation ...1-7, 12-4
Required by Gunnison County ........................................1-7, 12-5

**ACCESSORY STRUCTURE**
Aggregate size requirements exempt on agricultural,
commercial, or industrial operations ..................................... 13-7
Definition of...................................................................... 2-1
Farm or ranch stand as...................................................... 9-16
Height limitation of ............................................................. 13-4
Solid-fuel-burning devices in ............................................. 13-11

**ADDRESSES**
Required in mobile home community ..................................... 9-13
Subdivision plat, as assigned by Building Official ....... 6-12, 7-33
Subdivision plat, required for emergency services ..... 6-11, 7-33

**ADMINISTRATIVE REVIEW PROJECT................ 4-1, 5-1**
Appeal of decision on....................................................... 5-14
Application form for............................................................. 5-3
Approval standards for....................................................... 5-2
Definition of ...................................................................... 2-1
Extension of permit for ...................................................... 1-5
Land Use Change Permit required for................................. 5-1
Requiring no Land Use Change Permit.................................. 4-1
Review process for............................................................ 5-13
Summary of review process for .......................................... 17-7
Technical Modification of .................................................... 8-1
Timeline for review of ....................................................... 17-11
Vested right for.................................................................. 1-15

**ADULT-ORIENTED USE ............................................9-17**
Definition of ...................................................................... 2-1
Land Use Change Permit required for .................................. 9-17

Minimum distance of, from child care center ........................ 9-17

**AFFORDABLE HOUSING**
Definition of .................................................................... 2-2
Waiver of standards for ..................................................... 1-23

**AGGREGATE SQUARE FOOTAGE**
Above timberline, maximum allowed.................................11-35
Agricultural exemption from standards of............................. 13-7
Classified as Major Impact project ................................ 6-1, 17-2
Maximum allowed in Wilderness inholding.........................11-35

**AGRICULTURAL EXEMPTION**
From  mining operation definition .........................................2-13
From aggregate square footage standards ......................... 13-7
From Building Permit requirements .............................. 4-1, 17-2
From exterior lighting requirements .....................................13-26
From grading requirements .................................................13-31
From irrigation water calculation requirements....................7-21
From Reclamation Permit requirements ...............................13-29
From road construction definition ........................................2-12
From road construction standards .................................6-2, 17-5
From trail easement requirement.........................................12-6
From water quality requirements.........................................11-25

**AGRICULTURAL OPERATION**
Barns, building of, on ............................................................9-1
Code of the West for neighbors of .......................................15-3
Definition of......................................................................2-2
Employee housing for .........................................................9-7
Fencing required between development and .....................13-25
Mobile homes allowed on ...................................................9-10
Right-to-Ranch policy to protect ...........................................15-1
Standards for development that affects...............................11-31

**AGRICULTURAL STRUCTURE**
Building Permit not required for ..................................... 4-1, 17-2
Definition of......................................................................2-2
Exemption of, from building height requirements ................. 13-4

**AGRICULTURE**
Definition of......................................................................2-2
Policy to protect ...................................................................1-3

**AIRCRAFT**
Access for, prohibited above timberline..............................11-36
Access for, prohibited within Wilderness ............................11-35

**ALLUVIAL FAN**
Definition of......................................................................2-9
Standards for development in ...................................11-14, 11-17

**AMENDMENT**
Of County maps ..................................................................1-19
Of covenants, County approval required for...... 6-9, 7-23, 7-31
Of FEMA maps ...................................................................11-4
Of Land Use Resolution......................................................1-19
Of Major Impact project .......................................................7-38
Of Minor Impact project........................................................6-18

**ANIMAL**
Confinement of, during special events ................................9-36
Confinement of, to protect agricultural operations ....5-8, 6-12, 7-
34, 11-32
Control of, required by protective covenants...6-9, 7-10, 7-24, 7-
31
Definitions of exotic and domestic............................................2-3
Exotic, keeping of.................................................................9-40

Numbers of, allowed in mobile home community.................9-13
Odor control required for.................................................9-40
**APPEAL.................................................................. 8-4**
Of action on Floodplain Development Permit......................11-10
Of action on Technical Modification................................. 8-2
Of Administrative Review decision ..................................5-14
Of impact classification...................................................3-6
Of Land Use Resolution interpretation ............................1-21
Of Planning Commission Decision on Minor Impact..........6-16
Of setback determination................................................1-22
**APPLICATION**
Administrative Review Project............................................5-3
Boundary Line Adjustment..............................................5-10
Consolidation with other applications ...............................3-3
Construction of water impoundment ................................13-35
Correction of plat............................................................5-12
Emergency Exception.......................................................8-6
Exterior lighting information required in ............................13-28
Floodplain Development Permit.........................................11-9
General requirements for..................................................3-3
Inactive Land Use Change................................................3-2
Land Use Change Permit..................................................3-4
Long-term Camping Permit..............................................9-41
Lot Cluster.....................................................................5-11
Mobile Home Permit.........................................................9-9
Preliminary Plan, for Major Impact project .......................7-15
Sign Permit....................................................................13-14
Sketch Plan, for Major Impact project...............................7-10
Special Event Permit.......................................................9-33
Subdivision Exemption....................................................5-12
Variance from floodplain development requirements ..........11-11
Variance from property line setback standards ...................13-6
**ARCHEOLOGICAL RESOURCE**
Definition of....................................................................2-3
Preservation of, during mining..........................................9-29
**AUTHORITY**
Board, to grant Emergency Exception ...............................8-5
County employee, to enforce Resolution............................16-1
County, to regulate land use.............................................1-1
Planning Commission .....................................................1-21
Planning Director, to interpret *Resolution*.........................1-21
To initiate designations of Special Areas ..........................1-16
**AVALANCHE HAZARD AREA**
Definition of....................................................................2-3
Development allowed in Blue Zone of ...............................11-15
Development of roads in...................................................11-16
Geotechnical information required for development in .........7-17
Residential development prohibited in Red Zone of..........11-15
**BABY-SITTING**
No permit required for in-home ........................................9-39
**BARN**
Definition of, as agricultural structure...............................2-2
Exemption of,  from sign requirements ..............................2-19
In approved subdivision.............................................4-1, 9-1, 17-2
No permit required for, on agricultural operation ....4-1, 9-1, 17-2
Polebarn, exempt of from Reclamation Permit ..................13-29
**BASE FLOOD ELEVATION**
Certificate required for building........................................11-10
Data required for new subdivisions...................................11-8
Definition of....................................................................2-8
**BED AND BREAKFAST .......................................... 9-5**
Classification of, as Minor Impact project................... 6-2, 17-5
Compliance of, with Fire Protection District standards ......... 9-5
Definition of....................................................................2-3
Land Use Change Permit required for ...............................9-5

Standards for operation of.................................................9-5
**BEST MANAGEMENT PRACTICES ......................... 11-1**
Definition of....................................................................2-3
Use of, in construction dewatering discharge ....................13-32
Use of, in mining operations ............................................9-23
**BOARD OF ADJUSTMENTS**
Members' terms..............................................................1-22
Powers and duties of.......................................................1-22
**BOUNDARY LINE ADJUSTMENT**
Application form for.........................................................5-10
Definition of....................................................................2-3
Land Use Change Permit required for...........................5-2, 17-3
Standards for approval of.................................................5-3
**BUILDING**
Definition of....................................................................2-3
Footprint, definition of.....................................................2-4
Height, definition of.........................................................2-4
Height, how to measure ...................................................13-3
Prohibition of, in avalanche Red Zone............................. 11-14
Reclamation Permit required for.......................................13-30
Residential sizes and lot coverages..................................13-7
Size limitations of, in Wilderness inholding .......................11-35
Size, definition of............................................................2-4
Size, how to measure......................................................13-3
Temporary, that requires no permit...................................9-37
**BUILDING ENVELOPE**
Alteration of, as Administrative Review project.... 5-2, 13-2, 17-4
And setback requirements................................................13-2
Clustering of, in LPIP subdivision ....................................14-3
Definition of....................................................................2-4
Required for secondary structures....................................9-3
Site-specific, required .....................................................13-2
Standards for location and uses in ...................................13-8
**BUILDING PERMIT**
Agricultural building exemption from............................4-1, 17-2
Building envelope designation required for ........................13-2
Compliance of, with Energy Resource Conservation Worksheet
required ...................................................................13-9
Definition of....................................................................2-4
Exterior lighting information required for ............................ 13-28
Fire hydrant function required before issuance of ............. 12-12
Flood Elevation Certification required before issuance of.. 11-10
For parcel adjacent to agricultural operation .....................15-3
Geologic hazards mitigation required as part  of ............... 11-13
Issuance of, when protective covenants and *Resolution* conflict
..............................................................................1-10
On lot approved before January 8, 2001...........................1-9
Parking spaces on site plan for....................................... 13-18
Reason for higher level of review for.................................4-1
Reclamation Permit required with .....................................13-30
Required in Gunnison County ..........................................1-7
Site plan compliance with setbacks required for................13-4
Standards for issuance of ................................................13-1
That requires higher level of review .............................5-1, 6-1
Withholding of, when property has been stop-ordered.........16-4
Woodstove standards related to .......................................13-10
**CAMPGROUND**
Definition of....................................................................2-4
Land Use Change Permit required for................................9-17
Noise protection for.........................................................9-31
Prohibited use of, in floodway..........................................11-6
**CAMPING .............................................................. 9-40**
14-day limit for ...............................................................9-40
No Land Use Change Permit required for short-term... 4-2, 17-3
On private parcel.............................................................9-41

Permit required for long-term ............................................. 9-40
**CAMPING SHELTER**
14-day camping limit for................................................ 9-41
Definition of................................................................... 2-4
In recreational vehicle parks........................................ 9-17
Long-term Camping Permit required for ...................... 9-40
Temporary use of, during special events..................... 9-34
**CHILD CARE CENTER ..............................................9-39**
Definition of................................................................... 2-4
Land Use Change Permit required for ..................6-2, 17-5
Minimum distance of, from adult-oriented use ............ 9-17
Standards for operating ................................................ 9-39
**CLUSTER DEVELOPMENT**
Definition of................................................................... 2-4
Exemption of, from subdivision definition.................... 2-22
Statutory benefits of, for water well permits ................. 14-2
Within LPIP subdivision ................................................ 14-3
**CLUSTER SIGN**
Definition of................................................................. 2-19
For multiple businesses ............................................. 13-15
**CODE OF THE WEST**
Definition of................................................................... 2-4
Required distribution of, to applicants for Land Use Change
Permits .....................................................3-4, 6-15
Required distribution of, to neighbors building next to ranching
............................................................................15-3
**COMMERCIAL USE ...................................................9-15**
Abandonment of nonconforming .................................. 1-13
Classification of, as Minor Impact project...... 6-2, 7-1, 17-4, 17-2
Exemption of, from aggregate square footage standards ... 13-7
Expansion of, as Administrative Review  project ....5-2, 17-4
Expansion of, as Major Impact project.................7-1, 17-2
Expansion of, as Minor Impact project.................6-2, 17-4
Fencing of..................................................................... 13-25
Fireplaces and woodstoves in.................................... 13-10
Height limitation of ........................................................ 13-3
Lighting standards for................................................. 13-27
Locational standards for .............................................. 10-2
Noise limitations in ....................................................... 9-16
Open space required for ............................................. 13-12
Parking lot screening required for ............................. 13-21
Parking spaces requirements for ................... 17-16, 17-17
Public notice requirement for Administrative Review project. 3-7
Security lighting allowed for ...................................... 13-27
Setbacks for ................................................................. 13-5
Standards for ................................................................ 9-15
Storm Water Discharge Permit required for ............... 13-32
**COMPATIBILITY**
As standard for approval..5-2, 6-2, 7-2, 9-17, 9-23, 11-11, 13-13
Definition of................................................................... 2-5
Standards to ensure, between land uses ............................. 13-38
**CONDOMINIUM**
Definition of................................................................... 2-5
Development, Final Plan approval for layout of............6-8, 7-29
Development, parking spaces required for.......................... 17-16
Development, signs allowed to advertise ................... 13-17
Homeowners' association required for development of 6-9, 7-31
Plat, required language on .......................................... 5-7
Setbacks required for development of ........................ 13-5
**CONSERVATION EASEMENTS**
As compensation to private property owner ...................... 11-23
Existing, as element of LPIP subdivision ..................... 14-4
In designated open space ........................................... 13-13
Statutory authority addressing ....................................... 1-1
**CONSTRUCTION MATERIALS OPERATIONS..........9-19**

Classification of, as Administrative Review project ....... 5-2, 17-5
Classification of, as Major Impact project .................. 7-1, 17-3
Classification of, as Minor Impact project.................. 6-2, 17-4
Definition of................................................................... 2-5
Exemption of, from water quality buffer standards ...... 1-12, 11-6
In flood fringe ............................................................... 11-7
Reduced water quality buffer standards for existing ..........11-27
Setback of, from centerline of public road ................... 9-23
Setback of, from high water mark ..............................11-27
Setbacks required of..................................................... 9-23
Setbacks, table of......................................................... 9-24
Standards of operation in floodplain areas................... 11-7
**CORRECTION PLAT**
Classification of, as Administrative Review project ....... 5-2, 17-4
Definition of................................................................... 2-5
Plat language for ........................................................... 5-12
Standards for ................................................................. 5-3
**COST ESTIMATES**
Required for Emergency Exception submittal ................. 8-7
Required for Final Plan submittal for Major Impact project..6-10, 7-32
Required for Preliminary Plan submittal for Major Impact project
..........................................................................7-24
**COVENANTS**
County approval required to amend ..............6-9, 7-9, 7-23, 7-31
Draft of, required for Preliminary Plan of Major Impact project. 7-23
Draft of, required for Sketch Plan of Major Impact project...... 7-9
Required for Final Plan of Major Impact project ........... 6-9, 7-30
To address wildfire prevention.................................... 11-20
To confine animals ........................................ 5-8, 6-12, 7-34
To ensure fire district standards ................................ 12-12
To ensure irrigation ditch maintenance easement ................ 5-8
To ensure perpetual open space ................................ 13-14
To inform of "fence-out" requirements.............................. 5-8
To protect agricultural operation ................................ 11-32
**CRITICAL PATH**
Definition of................................................................... 2-5
For expedited for LPIP subdivision process........................... 14-1
**CULTURAL RESOURCE**
Definition of................................................................... 2-3
Protection of, during mining ......................................... 9-29
**CUMULATIVE IMPACTS**
Definition of................................................................... 2-5
Effects of, on density calculations ............................... 10-2
Evaluation of, in sequential projects............................. 3-6
Evaluation of, in wastewater treatment....................... 12-10
In locating new commercial development....................... 10-3
In locating new residential development ...................... 10-1
In wildlife habitat analysis ..........................................11-23
**DAM SAFETY**
Authority of Colorado State Engineer concerning ............. 13-37
**DEBRIS FLOW ....................................See "Alluvial fan''**
Definition of................................................................... 2-9
**DEED RESTRICTIONS**
Required for condominium/townhome development.... 6-9, 7-30
To ensure perpetual open space ................................ 13-14
**DEFINITIONS ..............................................................2-1**
**DENSITY**
Bonus, for Large Parcel Incentive Process (LPIP)
developments ..................................................14-2
Bonus, for LPIP subdivision developments ........................... 14-1
Definitions of.................................................................. 2-5
Employee housing exempt from calculation of....................... 9-7
Evaluation of, in wastewater treatment....................... 12-10

Limits on, in geologic hazard areas ........................................11-14
Maximum allowed in LPIP subdivision.....................................14-3
Maximum allowed in mobile home community ...................9-11
Related to individual sewage disposal systems..................10-1
Relocating, to protect wildlife habitat...................................11-24
Residential, standards for.........................................................10-1
**DESIGN STANDARDS ..............................................13-1**
**DEVELOPMENT AGREEMENT**
Definition of................................................................................2-6
For vested right for LPIP subdivision .....................................14-2
**DEVELOPMENT IMPROVEMENT AGREEMENT**
Completion of development related to ......................................1-4
Definition of................................................................................2-6
Draft of, required in Final Plan......................................6-16, 7-32
Financial security required by................................................16-6
Fire-protection testing required to be addressed in............12-13
Related to granting of vested rights ......................................1-15
Release of security for...............................................................16-6
Required for mining operations.............................................9-22
Road signs required to be funded by ....................................12-5
Trails construction required to be funded by ........................12-6
**DISTRIBUTION LINE**
Administrative review required for................................5-2, 17-4
Alteration and repair of......................................4-2, 5-2, 17-5, 17-4
Definition of................................................................................2-6
No Land Use Change Permit required for primary residence . 4-2, 17-4
**DOGS**
Control of, on agricultural lands..............................................11-32
Protecting wildlife from............................................................11-24
**DRAINAGE ...............................................................13-32**
And snow storage areas...........................................................13-25
Controlling flooding by regulating............................................11-3
In protection of water quality..................................................11-26
Of foundations in geologic hazard areas ...............................11-19
Of vehicle repair and storage sites ........................................13-34
On-site required for zero line line developments..................13-5
Plan required in Preliminary Plan...........................................7-22
Plan required in Sketch Plan .....................................................7-8
Protection of, natural, in stream buffer...................................11-27
Protection of, during snowplowing.........................................11-35
Required in subdivisions to reduce flood damage ...............11-8
System, definition of...................................................................2-6
**DRIVEWAY**
Access Permit required for .............................................1-7, 12-5
Construction of, in avalanche Red Zone..............................11-15
Construction of, on 30% slopes.............................................11-18
Definition of, as land use change..........................................2-12
Design of in grading plan.......................................................11-26
Design of, in parking areas.....................................................13-21
Design of, using best management practices .......................11-2
Engineer's certification required for.........................................7-19
Reclamation Permit required for .............................................13-30
Required compliance of, with Road and Bridge Standards . 12-1
Required to comply with noxious weed management .......13-29
Shared, required for structures in building envelope ..........13-8
**DUDE RANCHES .......................................................9-16**
Definition of................................................................................2-17
Standards for................................................................................9-16
**DUST CONTROL**
Plan required for road construction.........................................7-20
Required for mining operations...........................9-21, 9-28, 9-29
Required for special events......................................................13-20
Required to ensure compatibility between uses..................13-39
Required to protect agricultural operations ..........................11-32

**EASEMENT**
Access, required to be recorded .............................................12-4
Conservation, in open space .................................................13-13
Conservation, required in LPIP subdivision ........................14-3
Conservation, statutory authority addressing.........................1-1
Credit for existing conservation, in LPIP subdivision..........14-4
Definition of................................................................................2-6
Ensuring historical agricultural access............5-5, 6-6, 7-7, 7-18
For mobile home in zero lot line development.....................9-14
For public trails ..........................................................................12-6
For zero lot line walls ...............................................................13-5
Irrigation ditch maintenance, required covenant language for. 5-8, 6-12, 7-34, 11-32, 15-2
Permanent, required for existing trail in LPIP subdivision.....14-2
Required for snow storage ......................................................13-24
Required in Minor Impact project .........................5-6, 6-6, 7-5
Required on Final Plat ..................................................6-11, 7-33
Road, required of new development.......................................12-4
To public lands, for dude ranches, resorts ...........................9-16
Trail, agricultural land exempt from .....................................12-6
Width of, for utilities ................................................................12-4
**EMERGENCY EXCEPTION .........................................8-5**
Extension of approval for..........................................................8-8
Public hearing notice requirements.........................................3-7
Standards of approval for..........................................................8-6
**EMERGENCY SERVICES**
Required for special events.....................................................9-35
Risk to personnel, related to density .....................................10-2
Risk to personnel, related to snowplowing ..........................11-34
Standards for vehicle access to provide...............................12-12
**EMPLOYEE HOUSING................................................9-7**
Definition of................................................................................2-6
For ski areas...............................................................................9-7
Incentives for providing............................................................9-7
On agricultural operations........................................................9-7
**ENERGY CONSERVATION .......................................13-9**
In efficient appliances, definition of.........................................2-6
Required of residential construction.......................................13-9
**ENFORCEMENT.........................................................16-1**
Against Illegal subdivision......................................................16-5
Civil remedies as ......................................................................16-5
County as enforcer, in protective covenants.................7-9, 7-23
County employee liability related to......................................16-6
County option of, in private agreements.................................1-18
County's right to enter property for purposes of...................16-1
Criminal penalties in................................................................16-5
Gunnison County immunity related to...................................16-6
Of violation of floodplain regulations ...................................11-13
Of violation of sign requirements ..........................................13-18
Revocation of permits in.........................................................16-2
Stop order process in................................................................16-1
**ENVIRONMENTAL IMPACT STATEMENT**
Applicant required to provide notice of.....3-1, 5-3, 6-3, 7-3, 7-10
County's coordination of review process with .........................3-2
Delay of County decision related to ..............................3-2, 13-37
Review of water impoundments related to ..........................13-37
Timing of County permit approval related to ..........................3-1
**EX PARTÉ COMMUNICATION**
Definition of................................................................................2-7
Prohibited after closure of public hearing...............................3-10
Record of, in application review................................................3-9
**EXOTIC ANIMAL**
Confinement of, during special events..................................9-36
Definition of................................................................................2-3
Keeping of, on non-agricultural property...............................9-40

**EXTENSION**
Of inactive Land Use Change Permit application ................... 3-2
Of lifetime for Land Use Change Permit ................................. 1-5
Of review agency review period for Administrative Review
    project ........................................................................... 3-5
Of submittal deadline for Final Plan for Major Impact project ...7-
    27
Of submittal deadline for Preliminary Plan for Major Impact
    project ......................................................................... 7-13
Of time to reconstruct damaged nonconforming use .......... 1-14
Of vested right .............................................................1-6, 1-15

**EXTENSION OF PERMIT**
For Administrative Review project ......................................... 1-5
For Major Impact project ...................................................... 1-5
For Minor Impact project ...................................................... 1-5

**EXTERIOR LIGHTING.................................................13-26**
Agricultural operation exemption from requirements for .... 13-26
Definitions of types of ......................................................... 2-12
During special events ......................................................... 9-34
Fixtures allowed ................................................................ 13-27
Floodlighting standards ..................................................... 13-27
For commercial and industrial uses ..................................... 9-15
Mercury vapor, prohibition of ............................................ 13-28
Motion sensor allowed for residential access .................... 13-27
Of signs, required to be minimized ................................... 13-16
Of telecommunication structures ......................................... 9-39
Plan required for mobile home communities ........................ 9-11
Required in protective covenants .................................6-9, 7-31
Standards for ..................................................................... 13-26

**FARM OR RANCH STAND .........................................9-16**
Definition of .......................................................................... 2-7
Exemption of, from locational standards ........................... 10-2
No Land Use Change Permit required for ............................ 9-16
Sign requirements for ........................................................... 9-16

**FAULT**
Definition of .......................................................................... 2-9
Standards for development in ............................................ 11-14

**FEDERAL PERMITS**
Coordination of County review process with ......................... 3-1
Required for Land Use Change Permit approval ................... 1-8

**FEES**
Added, for residences larger than 1,000 sq. ft. .................. 13-8
Business license ................................................................. 9-38
Final Plan submittal for Major Impact project .......... 6-8, 8-7, 9-35
For additional technical expertise ........................................ 3-4
For costs of public hearings .. 5-7, 6-7, 7-3, 7-13, 7-15, 7-27, 8-3,
    8-5, 8-7, 13-7, 13-28, 13-35
For enforcement costs ........................................................ 16-5
For inspection of solid-fuel-burning devices ...................... 13-11
For Minor Impact project application ...........................5-3, 6-3
For resubmitting Land Use Change Permit application ......... 3-2
Impact ........................................................6-8, 7-29, 9-22
Land Use Change Permit general application ....................... 3-4
Long-term Camping Permit ................................................. 9-42
Outdoor Vending Permit ...................................................... 9-38
Preliminary Plan submittal .........................................7-15, 7-29
Sign Permit ....................................................................... 13-18
Sketch Plan submittal .......................................................... 7-3
Special Event Permit .......................................................... 9-33
To amend Land Use Resolution ......................................... 1-21
Waiver of, for Land Use Change Permit ............................... 3-4

**FENCING.................................................................13-25**
"Fence-out" requirement, in protective covenants ... 6-9, 6-12, 7-
    10, 7-24, 7-31, 7-34, 11-32, 13-25, 15-2
As sediment control ........................................................... 13-32

Covenant for, to protect agricultural operation .................. 11-32
Design of, to avoid impact to wildlife ................................ 11-24
Maximum height allowed for .............................................. 13-26
No Land Use Change Permit required for ............4-1, 9-1, 17-2
Of mining operations .......................................................... 9-30
Of wildlife habitat areas ..................................................... 13-26
Required between public lands and other land uses .......... 13-25
Standards for ..................................................................... 13-25

**FIGURES**
Administrative Review project review timeline .................... 17-11
Areas of the floodplain ....................................................... 11-5
Examples of floodlighting ................................................... 13-28
General review process flowchart ...................................... 17-10
Height measurement by types of buildings ........................ 13-3
Landscaping as buffering ................................................... 13-23
Measurement of building height .......................................... 13-3
Restrictive Inner Buffer Setback ....................................... 11-27
Shielded and partially-shielded light fixtures ..................... 13-26
Sight distance triangle ...................................................... 13-19
Site Plan example ................................................................. 17-9
Timeline for Final Plan for Major Impact project ................ 17-15
Timeline for Minor Impact project ...................................... 17-12
Timeline for Preliminary Plan for Major Impact project ....... 17-14
Timeline for Sketch Plan for Major Impact project ............. 17-13
Variable Outer Buffer setback ........................................... 11-29
Vicinity Map example ........................................................... 17-9
Zero lot line siting .............................................................. 13-5

**FINAL PLAN**
Application, Major Impact project ...................................... 7-29
Definition of .......................................................................... 2-7
Protective covenants required in ................................. 6-9, 7-30
Review process timeline, Major Impact project ................. 17-15
Review process, Major Impact project ................................ 7-36

**FIRE PROTECTION .................................................12-11**
And height restrictions of commercial structures ................ 13-3
And setbacks between buildings .......................................... 13-4
Annexation to district to ensure ........................................ 12-12
District review to ensure adequate .................................... 11-20
For child care centers ......................................................... 9-39
For commercial and industrial uses ..................................... 9-15
For group homes ................................................................. 9-40
For special events ............................................................... 9-35
Plan required for mining operations ............................ 9-22, 9-30
Water supply requirements to ensure ................................ 12-7

**FIRE PROTECTION DISTRICT**
Dude ranches required to meet standards of ...................... 9-16
Fees collected by County for Crested Butte ........................ 1-24
Mobile home community's compliance with standards of .... 9-12
Required reference in protective covenants to standards of .. 12-
    12
Requirements to mitigate wildfire hazards ......................... 11-20
Review of driveway access ................................................. 12-5
Water adequacy related to standards of ............................. 12-8

**FIREPLACE**
Definition of .......................................................................... 2-7
Use of, in commercial buildings outside municipal three mile
    plan area ..................................................................... 13-10
Use of, outside municipal three mile plan area .................. 13-10

**FLOODLIGHTING**
Illustration of permitted ..................................................... 13-27

**FLOODPLAIN**
Amending FEMA maps of .................................................... 11-4
Base flood elevation of ........................................................ 2-8
Definition of 100-Year .......................................................... 2-7
Development Permit required in ........................................... 11-9

Elevation Certificate required to build in ................................... 11-9
Flood Insurance Rate Maps (FIRM), affecting development
    locations in ............................................................................. 1-19
Flood Insurance Rate Maps (FIRM), delineating .................... 2-8
Grandfathered structures in ..................................................... 11-3
Illustration of areas within .......................................................... 11-4
Protection of, in designated open space ............................. 13-14
Standards for development in ................................................. 11-2
Uses allowed in flood fringe ..................................................... 11-6
Uses allowed in floodway .......................................................... 11-6
Variance from requirements affecting development in ....... 11-10
Warning language for, required on Final Plat .......................... 5-7

**FLOOR AREA**
For caretaker's apartment ......................................................... 9-4
For home occupation .................................................................. 9-4
For integrated secondary residence ........................................ 9-4
Maximum, for sleeping quarters ............................................... 9-3
Minimum residential allowed .................................................... 13-3
Required for commercial loading areas ................................. 13-18

**FOOD SERVICE**
License, required for special event ........................................ 9-34
Outdoor Vending Permit for providing ................................... 9-37
Requirements for ....................................................................... 9-15

**FULL CUTOFF**
Lighting fixture, definition of .................................................... 2-12
Lighting fixture, illustration of ................................................ 13-27

**FUNERALS**
Exempt from Special Event Permitting ................................. 2-20

**GANG OF NINE**
Definition of ................................................................................. 2-9
Development in flood hazard areas .......................................... 11-2
Development in geologic hazard areas .................................. 11-13
Domestic animal controls ....................................... 11-24, 11-32
Exterior Lighting ...................................................................... 13-26
Fire protection ......................................................................... 12-11
Partially exempted land uses' compliance with ...................... 1-8
Protection of water quality ....................................................... 11-25
Road system ................................................................................ 12-1
Sewage and wastewater treatment .......................................... 12-9
Solid-fuel-burning devices ......................................................... 13-9
Water supply ................................................................................ 12-6

**GARAGE**
Attached, requiring Administrative Review .................... 5-1, 17-2
Definition of ................................................................................. 2-9
Detached, 750 square feet or smaller, no Land Use Change
    Permit required for ........................................................ 4-1, 17-2
Detached, requiring Administrative Review ............................. 9-2
Home occupation conducted in detached ............................... 9-4
Small, requiring no Land Use Change Permit ......................... 9-1

**GEOLOGIC HAZARD AREAS** ................................................ 11-13
Building Permit review requirements in ................................. 11-13
Definitions of ............................................................................... 2-9
Geotechnical report required in protective covenants 6-10, 7-24,
    7-31
Geotechnical report required to evaluate ............... 5-5, 6-5, 7-17
Maps of, used by County .......................................................... 1-19
Review of, by Colorado Geologic Survey ............................. 11-13
Warning language required on Final Plat ................... 5-7, 11-14

**GRADE**
Finished, definition of ............................................................... 2-10
Natural, definition of ................................................................. 2-10
Related to building height measurement ................................ 13-3

**GRADING** ................................................................................ 13-31
Definition of ............................................................................... 2-10
Plan required for water quality protection ............................. 11-26

Prohibited before all required permits obtained ................. 13-31
Reclamation Permit required for ............................................ 13-31

**GRAVEL**
Definition of, as "construction materials" ................................ 2-5
Land Use Change Permit required for mining of .. 6-2, 7-1, 17-4,
    17-3
Processing of, defined .............................................................. 2-10
Setback for public road project requiring ............................... 9-24
Standards for temporary removal of ........................................ 9-23
Stockpiling of, prohibited in Restrictive Inner Buffer ........... 11-27

**GROUP HOME** ......................................................................... 9-39
Classification of, as Minor Impact project ...................... 6-2, 17-5
Definition of ............................................................................... 2-10
Land Use Change Permit required for .............................. 6-2, 17-5

**HEIGHT**
Commercial structure maximum .............................................. 13-3
Industrial structure maximum ................................................. 13-3
Maximum allowed for sign ...................................................... 13-16
Maximum structure, on parcel above timberline ................. 11-36
Maximum structure, on Wilderness inholding ..................... 11-35
Measuring of building, illustration of ...................................... 13-3
Of fences in wildlife habitat areas ........................................ 13-26
Residential structure maximum ............................................... 13-3

**HELICOPTER**
Access for, prohibited above timberline ............................... 11-36
Access for, prohibited within Wilderness ............................. 11-35

**HISTORICAL RESOURCE**
Definition of ................................................................................. 2-3
Preservation of, during mining ................................................. 9-29

**HOME OCCUPATION** ............................................................... 9-4
Allowed without Land Use Change Permit .................... 4-2, 17-3
Definition of ............................................................................... 2-10
Exemption of, from general standards for commercial uses 9-15
Gardens and greenhouses as ................................................... 9-2
General standards of operation ............................................... 9-4
Larger sign allowed by variance for ...................................... 13-17
Limited to indoor activities ........................................................ 9-4
Parking of commercial vehicles used in ............................... 13-19
Prohibited from creating nuisances ......................................... 9-5
Residential access for ................................................................ 2-1
Secondary to primary residence ............................................. 9-2
Signs for, allowed without Sign Permit ................................. 13-15
Standards for more than one, in one home ............................ 5-3
Two, requiring Land Use Change Permit .................... 5-2, 17-3

**HOMEOWNERS' ASSOCIATION**
As owner of wastewater treatment system ........................... 12-11
Definition of ............................................................................... 2-10
Required for condominium/townhome developments .. 6-9, 7-31
Responsibilities of, required by protective covenants 6-9, 7-9,
    23, 7-31
Responsibility of, for maintaining water supply for fire
    suppression ........................................................................ 12-13
Responsibility of, to "fence out" livestock ........... 7-10, 7-24, 11-32
Responsibility of, to remove snow in subdivisions ....... 7-24, 7-31
Responsibilty of, to maintain parks in subdivisions ........ 7-9, 7-23

**HORSE/HAY SHED**
Definition of ............................................................................... 2-10
Large, Land Use Change required for ................... 5-2, 9-3, 17-3
Small, no Land Use Change Permit required for ... 4-1, 9-1, 17-2

**HOURS OF OPERATION**
For mining operations ............................................................. 9-30
For special events ................................................................... 9-36
To mitigate impacts to neighbors ......................................... 13-39

**HOUSING**
Affordable, definition of ............................................................ 2-2

County policy to encourage diversity of ................................. 1-2
County policy to ensure development meets need for .......... 1-3
Employee, definition of ........................................................ 2-6
Employee, requirements for ................................................. 9-7
Factory-built, definition of ................................................... 2-7
Long-term rental, definition of ........................................... 2-12
Waiver of standards for affordable ..................................... 1-23

**IMPACT**
Definition of ........................................................................ 2-11
Methods to mitigate ........................................................... 2-14

**IMPACT CLASSIFICATION ........................................ 3-6**
Affected by sequential applications ..................................... 3-6
Appeal of ...................................................................... 3-6, 8-5
Criteria for .......................................................................... 3-6
Expansion of existing uses and ............................................ 3-6
Higher level of review caused by ................................... 3-1, 4-1
Of Administrative Review projects requiring permit ............... 5-1
Of Adminstrative Review Projects NOT requiring permit ....... 4-1
Of Major Impact project ....................................................... 7-1
Of Minor Impact project ...................................................... 6-1
Of Technical Modifications of applications ............................ 8-2
Table of ............................................................................. 17-2
When land use change is modified ....................................... 8-2

**IMPACT FEES ........................................................... 1-24**
For Crested Butte Fire Protection District .......................... 1-24
For road damage caused by mining operations ................... 9-22

**INCENTIVES**
For providing employee housing ........................................... 9-7
For subdividing via LPIP subdivision .................................. 14-1
Of LPIP subdivision related to building sizes ..................... 13-8
Perpetual Permit for LPIP subdivision .................................. 1-4
Statutory, of cluster development ....................................... 14-2

**INDIVIDUAL SEWAGE DISPOSAL SYSTEM**
Location of, in floodplain area ........................................... 11-8
Permit required for ............................................................... 1-7
Reclamation Permit required for ...................................... 13-30
Related to residential density ............................................. 10-1
Required for long-term camping ........................................ 9-18
Required for long-term recreational vehicle use ................ 9-41
Required for temporary structure ...................................... 9-37

**INDUSTRIAL USE ....................................................... 9-15**
Abandonment of nonconforming ........................................ 1-13
Classification of, as Major Impact project ................... 7-1, 17-2
Classification of, as Minor Impact project ................... 6-2, 17-4
Exemption of, from aggregate square footage standards ... 13-7
Expansion of, as Major Impact project ....................... 7-1, 17-2
Expansion of, as Minor Impact project ............... 5-2, 6-2, 17-4
Fencing of ....................................................................... 13-25
Fireplaces and woodstoves in ......................................... 13-10
Height limitation of ............................................................ 13-3
Lighting standards for ...................................................... 13-27
Locational standards for .................................................... 10-2
Open space required for .................................................. 13-12
Parking lot screening required for .................................... 13-21
Parking space requirements for ....................................... 17-17
Security lighting allowed for ............................................. 13-27
Setbacks for ...................................................................... 13-5
Standards for ..................................................................... 9-15
Storm Water Discharge Permit required for ..................... 13-32

**INFRASTRUCTURE ..................................................... 12-1**
Definition of ........................................................................ 2-11
Standards for development of ............................................. 12-1

**INHOLDING**
Definition of ........................................................................ 2-11
Development on, in Wilderness ......................................... 11-35

Exemption of, from vehicle access requirements .............. 12-12
Maximum square footage of structures allowed on Wilderness
........................................................................................ 11-35
Maximum structure height allowed on Wilderness ........... 11-35

**INTEGRATED SECONDARY RESIDENCE**
Definition of ........................................................................ 2-17
On 35-acre tract created after January 8, 2001 ........... 5-1, 17-2
Standards for ....................................................................... 9-4
That requires no Land Use Change Permit ................. 4-2, 17-3

**INTERPRETATION**
Of County's maps ............................................................. 11-4
Of Land Use Resolution ............................... 1-21, 8-4, 8-5
Of Land Use Resolution, appeal of ................................... 1-21
When codes conflict .......................................................... 1-17

**IRRIGATION**
Calculations for, included in water supply plan .................. 12-7

**IRRIGATION DITCHES**
Definition of ........................................................................ 2-11
Exemption of, from "water body" definition ....................... 2-23
Required easement for .................................................... 11-32
Right to maintain ............................................................... 15-2
Right-to-maintain language on Final Plat ............................ 5-8
Setback of construction materials operations from ............. 9-25

**LAND USE CHANGE PERMIT**
Definition of ........................................................................ 2-12
Extension of, Administrative Review project ......................... 1-5
Extension of, Major Impact project ...................................... 1-5
Extension of, Minor Impact project ...................................... 1-5
Grounds for denial of ........................................................... 1-6
Pending application for ......................................................... 1-8
Relationship with other permits ........................................... 1-7
Required for commercial and industrial uses ..................... 9-15
Required for secondary uses ............................................... 9-2
Required of all governments ................................................ 1-7

**LANDSCAPING ......................................................... 13-21**
Minimum planting required for .......................................... 13-23
Plan required in Preliminary Plan ...................................... 7-22
Plan required in Sketch Plan ............................................... 7-8
Required by protective covenants ..................................... 7-31
Required in mobile home community ................................. 9-12
Standards for ................................................................... 13-21
Water conservation in ...................................................... 13-22
Water required for .................................................... 7-21, 12-7

**LANDSLIDE HAZARD AREA**
Definition of ......................................................................... 2-9
Development permitted in ................................................. 11-16
Prohibited development in ................................................ 11-16
Standards for development in ........................................... 11-14
Submittal requirements related to ...................................... 7-17

**LARGE PARCEL INCENTIVE PROCESS (LPIP) ....... 14-1**
Classification of, as Minor Impact ................................ 6-1, 17-3
Exemption of, from maximum building size standards ....... 13-8
Exemption of, from visibility standards ............................. 13-9
Expedited review for ........................................................ 14-1
Impact classification incentive in ...................................... 14-1
Increased density incentive in .......................................... 14-2
Larger residences incentive in ......................................... 14-2
Perpetual Permit as incentive in ........................................ 1-4
Preserved land in ............................................................. 14-3
Protection against public road claim in ............................. 14-2
Streamlined review incentive in ........................................ 14-1
Vested right for ................................................................. 14-2

**LEAPFROG DEVELOPMENT**
Compact development pattern promoted to discourage ........ 1-2
Definition of ........................................................................ 2-21

**LEGAL LOT**
Definition of...........................................................2-12
One residence allowed by right on ........................1-12

**LIGHTING**
Agricultural operation exempt from requirements..............13-26
Definition of...........................................................2-12
During special events.............................................9-34
Exterior fixtures allowed.......................................13-27
Floodlighting standards.........................................13-27
For commercial and industrial uses.........................9-15
Mercury vapor, prohibition of...............................13-28
Motion sensors allowed for residential access ..................13-27
Of signs, required to be minimized ........................13-16
Of telecommunication structures ...........................9-39
Plan required for mobile home communities..............9-11
Required to be regulated in protective covenants.6-9, 7-9, 7-24, 7-31
Standards for.......................................................13-26

**LIQUOR**
License required for special event ...............9-34, 9-35

**LIVESTOCK**
Allowed without Land Use Change Permit..........4-2, 9-40, 17-4
Definition of............................................................2-3
Dog controls to protect ............................11-24, 11-32
Drive route, definition of ..........................................2-21
Drive route, historic easement for ...........5-5, 6-6, 7-7, 7-18
Drives, signs for, allowed without permit.........................13-15
Fencing required to protect...5-8, 6-12, 7-34, 11-32, 13-25, 15-2

**LOCATIONAL STANDARDS ...........................10-1, 10-2**
For commercial/industrial development ....................10-2
For residential development .....................................10-1
Mining operations exempt from ...............................9-23
To minimize impacts to wildlife................................11-24

**LONG-TERM CAMPING PERMIT**
Application form for..................................................9-41
Fees for...................................................................9-42

**LOT CLUSTER**
Administrative Review required for ...................5-2, 17-4
Application form for................................................5-11
Definition of...........................................................2-13
In LPIP subdivision ................................................14-3

**LOT SIZE**
Density standards related to...................................10-1
Flexibility of, provided in LPIP subdivision.............14-1
For mobile home space ..........................................9-14
Minimum allowed in new subdivisions .....................13-2
Minimum of 35-acres .............................................13-2
Requirement for LPIP subdivision project................14-3

**MAJOR IMPACT PROJECT**
Definition of...........................................................2-13
Environmental Impact Statement review process for ... 3-2, 7-11
Extension of permit for ............................................1-6
Extension of Preliminary Plan approval for ............7-27
Extension of Sketch Plan approval for ..................7-13
Final Plan review process for ...............................7-36
Final Plan submittal for ........................................7-29
General Review Process for ....................................7-2
Landscaping requirements for ...................13-21, 13-23
Lighting plan required for ......................................13-29
Open space requirement for ..................................13-12
Phasing of ...............................................................3-2
Preliminary Plan fees for..............................7-15, 7-29
Preliminary Plan review process for ......................7-25
Preliminary Plan submittal for ...............................7-15
Sketch Plan fees for................................................7-3

Sketch Plan review process for .............................7-10
Sketch Plan submittal for .......................................7-3
Standards of approval for ........................................7-1
Summary of review process for ..............................17-7
Technical Modification of ........................................8-1
Timeline for Final Plan review............................ 17-15
Timeline for Preliminary Plan review......................17-14
Timeline for Sketch Plan review ...........................17-13
Uses classified as .................................................7-1
Vested right for ......................................................1-35
Water quality requirements for................................13-32

**MANCOS SHALE**
Definition of.............................................................2-9
Development on................................................... 11-19

**MANUFACTURED HOME**
Definition of...........................................................2-13
Location of, in floodplain hazard areas ..................11-7
Mobile home as....................................................2-14
Permit required for .......................................1-7, 9-8
Requirements for locating individual ........................9-8
Site preparation required for ...................................9-8
Subdivision, requirements for ..................................9-8

**MANURE**
Required disposal of................................................9-40
Setback from, required for water quality protection ............9-40
Stockpiling of, in floodplain hazard areas ...............11-7

**MAPS**
Floodplain, used by County .....................1-19, 11-4, 11-9
Geologic hazard, used by County.................1-19, 11-13
Gunnison County road maintenance and snowplowing.......1-19
Revising and amending floodplain, process for..................11-12
Soils survey, used by County ..................................1-19
Wetlands identification around Crested Butte.................1-19
Wildfire hazard, used by County ...................1-19, 11-18
Wildlife habitat, used by County ...................1-19, 11-22

**MINING**
Definition of, as land use change ...........................2-12
Exploration, definition of .......................................2-13

**MINING OPERATIONS**
Definition of...........................................................2-13
Exempt uses related to...........................................9-19
Exemption of, from landscaping requirements.................13-21
Exemption of, from cut and fill requirements on steep slopes 13-31
Financial security required for reclamation of...........9-32
Impact fee for road damage caused by.....................9-22
Mitigation of visual impacts of...............................9-29
Permit application for .............................................9-20
Phasing of...............................................................9-30
Setback of machinery for, from centerline of public road...9-24
Standards for .........................................................9-27
Table of setbacks for ............................................9-25

**MINOR IMPACT PROJECT..........................................6-1**
Application form for.................................................6-3
Dams/water impoundments classified as.................13-36
Definition of...........................................................2-14
Environmental Impact Statement review process for ..........3-2
Extension of permit for ............................................1-5
Fees for application for .....................................5-3, 6-3
Final action submittal requirements for ...................6-8
Lighting plan required for .....................................13-29
Open space requirement for ..................................13-12
Phasing of...............................................................3-3
Review process for ................................................6-15
Standards of approval for .......................................6-2

Summary of review process for ................................................. 17-7
Technical Modification of ........................................................ 8-1
Timeline for review of .......................................................... 17-12
Timeline for review of .......................................................... 17-12
Uses classified as ................................................................. 6-1
Vested right for ................................................................... 1-15

**MITIGATION**

Best management practices as ............................................. 11-1
Definitions of ...................................................................... 2-14
Of development in flood hazard areas ....................... 11-5, 11-6
Of development in geologic hazard areas ............. 11-13, 11-14
Of development in landslide hazard areas ......................... 11-16
Of development in rockfall hazard areas ........................... 11-17
Of development in wildfire hazard area ............................. 11-20
Of development on Restrictive Inner Buffer ...................... 11-28
Of dust, in mining operations ............................. 9-28, 9-29
Of environmental impacts in mining ................................. 9-22
Of impacts on wildlife habitat ........................................... 11-23
Of impacts to allow waiver of setback for mining ............... 9-27
Of impacts to public trails .................................................. 12-5
Of noise, in mining operations .......................................... 9-30
Of traffic impacts ........................................... 9-22, 12-2, 12-3
Of visual impacts related to mining ...................... 9-22, 9-29
Radon, definition of ............................................................ 2-16
Role of, in determining net impact of development ..... 2-14, 2-19
Techniques to protect wildlife ........................................... 11-23

**MOBILE HOME**

Colorado Division of Housing/HUD certification of ............... 9-10
Community, definition of ..................................................... 2-14
Definition of ........................................................................ 2-14
Individual manufactured and .............................................. 9-8
Located on legal lot, requirements for ................................. 9-9
Location of,  in floodplain hazard areas ............................. 11-7
Mobile Home Permit required for .......................... 9-9, 9-13
On agricultural operation .................................................... 9-10
Permit required when adjacent to subdivision ...................... 9-9
Snowload requirements for ................................................. 9-10
Subdivision .......................................................................... 9-8
Temporary 200-day Permit for ............................................ 9-9

**MOBILE HOME COMMUNITY** ..................................... 9-11

Definition of ........................................................................ 9-10
Density allowed in ............................................................... 9-11
Design and maintenance of ................................................ 9-11
Domestic animals allowed ................................................... 9-13
Land Use Change Permit required for ................................. 9-11
Rules for operation of ......................................................... 9-13
Space requirements ............................................................. 9-13

**MUDFLOW HAZARD AREA**

Definition of ........................................................................ 2-9
Ordinary high water line or mark, defining ......................... 2-15
Standards for development in ............................................. 11-14
Submittal requirements related to ...................................... 7-18

**MULTIPLE-FAMILY**

Buildings, setbacks allowed between ................................. 13-5
Development, open space required in ................................. 13-12
Parking spaces required for residential development ........ 17-16
Residence, definition of ...................................................... 2-17
Residence, fireplaces and woodstoves in ......................... 13-10
Residence, setbacks required for development of .............. 13-5

**NOISE**

Control of, to protect wildlife .............................................. 11-24
Limited mining haul hours to minimize impact of ................ 9-28
Limits of, in commercial uses ............................................. 9-16
Limits of, near sage grouse breeding areas ....................... 9-31
Limits of, to mitigate impacts to neighbors ...................... 13-39
Limits on trucks and crusher in mining operations .............. 9-28

Permissible levels in mining operations ............................. 9-30
Prohibited levels in special events .................................... 9-36
State statute regulating ....................................................... 1-1
Table of allowed levels of, in commercial  and industrial uses . 9-16
Table of allowed levels of, in mining operations ............... 9-31

**NONCONFORMING USES** ......................................... 1-13

Abandonment of commercial .............................................. 1-13
Damage or destruction of .................................................... 1-13
Definition of ........................................................................ 2-14
Expansion of ....................................................................... 1-13
Legal existing ...................................................................... 1-13
Mobile homes as ................................................................. 9-10
Relocation of ....................................................................... 1-13
Repairs and maintenance of .............................................. 1-13
Signs as .............................................................................. 13-15

**NOXIOUS WEEDS** ..................................................... 13-29

And maintenance of livestock areas .................................. 9-40
And maintenance of open space ....................................... 13-14
Control of, required by protective covenants in Final Plan 6-9, 7-31
Control of, required by protective covenants in Preliminary Plan ...................................................................... 7-22, 7-24
Control of, required by protective covenants in Sketch Plan .. 7-8
Control of, required in mobile home community ................... 9-11
Definition of ........................................................................ 2-14
Exemption of individual residences from plan to control .... 13-29
General standards for controlling ...................................... 13-31
Landowners' responsibility to control ................................ 15-2

**NUISANCE**

Definition of ........................................................................ 2-14
Failure to maintain camping site as .................................... 9-41
Noise as, prohibited during special events ........................ 9-36
Of noncompliant home occupation ...................................... 9-5
Required control of, to protect wildlife .............................. 11-24
Undue, prohibited, to protect other uses ......................... 13-39
What lawful ranching is not ................................................ 15-2

**OBTRUSIVE VISIBILITY** ........................................... 11-31

Definition of ........................................................................ 2-15
Not allowed for structures in LPIP subdivision .................. 14-3
Reason for denial of oversize house .................................. 13-9

**OPEN SPACE** ............................................................ 13-11

Calculation of ..................................................................... 13-12
Commercial or industrial uses, amount of, required in ....... 13-12
Commercial uses on commonly-owned ............................. 13-14
Definition of ........................................................................ 2-15
Maximizing, as reason for LPIP subdivision ...................... 14-4
Required in municipal Three Mile Plan areas .................... 13-11
Required in residential development .................................. 13-12

**OUTDOOR VENDING PERMIT**

Business license fees related to ........................................ 9-38
Required in Gunnison County .............................. 1-8, 9-37

**PARKING**

Aisle, definition of .............................................................. 2-15
Area, design standards for ................................................ 13-20
Area, landscaping design for ................................ 13-21, 13-24
Bed and Breakfast, requirement for on-site ........................ 9-5
Child care center, requirements for .................................... 9-39
Farm or ranch stand, requirements for off-road ................. 9-16
For home occupation .......................................................... 9-5
General standards for off-road .......................................... 13-18
Outdoor vendor requirements for ....................................... 9-37
Prohibited for RV's, in public right-of-way ......................... 9-41
Sleeping structure, requirements for .................................. 9-3
Spaces required for disabled persons .............................. 13-19

Special event plan required for...................................9-35
Table of commercial loading requirements.....................13-19
Table of requirements for.......................................17-16

**PARTIALLY EXEMPTED LAND USE CHANGES ....... 1-8**
Common law vested right of.....................................1-11
Sections of Resolution that apply to .....................1-8, 1-9
Three-year vested right of.....................................1-12

**PENDING APPLICATION**
Regulation governing ...........................................1-8

**PERMIT............................................................. 1-3**
404, required for wetlands activity.......................11-9, 13-32
Access, Gunnison County.......................................12-4
Access, onto state and federal highways......................12-4
Consolidation of applications for .............................3-3
Definition of..................................................2-15
Discharge, required by state for water quality protection.... 13-32
Floodplain Development.........................................11-9
For wireless, freestanding telecommunications structure .... 9-38
Land Use Change, required for most uses........................1-4
Life (term) of Land Use Change .................................1-4
Long-term Camping..............................................9-40
Mobile Home and Temporary Mobile Home..........................9-9
Outdoor Vending ...............................................9-37
Reclamation ..................................................13-29
Revocation of, causes for .....................................16-2
Sign ........................................................13-14
Snowplowing, private and temporary ...........................11-34
Special Event .................................................9-33

**PHASING ..........................................................3-2**
Amenities required at "front end" of development...............7-2
Final Plan of Major Impact project............................7-29
Land Use Change applications...................................3-2
Mining operations.............................................9-30
Preliminary Plan in Major Impact project......................7-15
Required schedule of completion for ...........................3-3
Sketch Plan of Major Impact project............................7-3
Timing of, in Major Impact project.............................3-2

**PLANNING COMMISSION**
Members' terms................................................1-21
Powers and duties of..........................................1-21

**PLAT**
Addresses required on, for emergency services........6-11, 7-33
Correction of, application form for ...........................5-12
Required language on .....................................5-7, 6-12, 7-33
Standards for correction of ...................................5-3
Survey, required for correction of subdivision plat...........5-12
Vacation of, application form for.............................5-12

**Plat vacation**
STANDARDS FOR APPROVAL OF .....................................6-3

**POPULATION CENTERS**
Definition and list of........................................2-15

**PRE-APPLICATION CONFERENCE .............................. 3-3**
For interpretation of Land Use Resolution .....................1-21
For water impoundment project................................13-36
Mandatory for Technical Modification request...................8-1
Mandatory, for Preliminary Plan of Major Impact project .... 7-25
Mandatory, for Sketch Plan of Major Impact project...........7-11
Optional, for Administrative Review project ...................5-13
Optional, for Final Plan of Major Impact project..............7-37
Optional, for Minor Impact project............................6-15

**PRELIMINARY PLAN ........................................... 7-15**
Application, for Major Impact project .........................7-15
Approval, significance of .....................................7-27
Cause for denial of ...........................................7-13
Combining of, with Final Plan for Major Impact project .........7-2

Cost estimates required for..................................7-25
Detailed engineering required in..............................7-2
Expiration of approval of....................................7-27
Extension of approval of.....................................7-27
Fees for review of......................................7-15, 7-29
Incomplete, consequences of..................................7-13
Phasing of, in Major Impact project..........................7-15
Protective covenant language required in.....................7-23
Public hearing required, for Major Impact project............7-25
Review process for...........................................7-25
Review process timeline, Major Impact project ..............17-14

**PRIMARY RESIDENCE**
Larger than 9,000 sq. ft., classification of, as Minor Impact
   project..............................................6-1, 17-2

**PROTECTIVE COVENANTS**
County approval required to amend .......6-9, 7-9, 7-23, 7-31
Draft of, required for Preliminary Plan of Major Impact project.7-23
Required for Final Plan of Major Impact project...........6-9, 7-30
To address wildfire prevention..............................11-20
To confine animals...........................................5-8
To ensure fire district standards...........................12-12
To ensure irrigation ditch maintenance easement ..............5-8
To ensure perpetual open space .............................13-14
To inform of "fence-out" requirements ........................5-8
To protect agricultural operation...........................11-32

**PUBLIC HEARING**
Adjacent property owners, identifying for.....................2-1
Administrative takings process, optional, additional, for.........8-4
Affordable housing waiver of standards, required for...........1-23
Amending Land Use Resolution, required for...................1-20
Conduct of ...................................................3-9
Continuing ..................................................3-10
Costs of publication to be paid by applicant.6-3, 7-3, 7-13, 7-15,
   7-27, 8-3, 8-5, 8-7, 13-7, 13-35
Definition of ...............................................2-16
Environmental Impact Statement scoping, coordination of
   timing with .............................................3-2
Ex parte communication related to ..........................3-10
Extension of Land Use Change Permit, required for .... 1-6, 1-16
For Minor Impact project.....................................6-16
For setback variance in Land Use Change Permit review ...13-6
Minor Impact subdivision, additional, optional for .........6-17
Notice required for ..........................................3-6
Posting of notice for ........................................3-8
Preliminary Plan of Major Impact project.....................7-25
Preliminary Plan of Major Impact project, optional, additional,.7-26
Required for administrative takings process .................8-3
Sketch Plan of Major Impact project, optional, additional, t ..7-12
Sketch Plan, for Major Impact project........................7-11
Special area designation, required for ......................1-17
To determine impact classification of water impoundment 13-35
To extend seasonal lighting, optional.......................13-28

**PUBLIC MEETING**
Definition of ...............................................2-16

**PUBLIC ROAD**
Corridors, list of, as "ridgeline vantages" .................11-29
County Access Permit required to access ....................12-5
Definitions of...............................................2-16
Legal access to, required of new land use change.............12-4
Seasonal truck traffic limitation on ........................9-27
Setback of construction materials operation from centerline of.9-23, 9-24
Setback of mining machinery from centerline of.........9-24, 9-25
Setbacks required from.......................................9-18

Snowplowing not a guaranteed service on .......................... 11-33
Uses of, by ranchers ................................................. 15-2
**RADON**
Mitigation of ........................................................... 2-16
**RANCHING**
As essential element of County economy ........................... 11-31
County's intent to encourage and conserve .................. 1-2, 15-1
Definition of ............................................................ 2-16
Irrigation in, not defined as wetlands ..................................... 2-24
Right-to-Ranch Policy ................................................. 15-1
**REAL ESTATE SIGN**
Type of, allowed without Sign Permit ................................. 13-15
**RECLAMATION**
Definition of ............................................................ 2-16
Of mining operation .................................................... 9-21
Of mining operations in compliance with Mined Land
    Reclamation Division ............................................. 9-31
Of vegetation, East River to Gothic ................................. 13-21
On disturbed 30% slopes ............................................. 11-18
Permit required for .................................................... 13-29
Plan for, required in Preliminary Plan ......................... 7-20, 7-22
Plan for, required in Sketch Plan .......................................... 7-8
Required by protective covenants ................................ 6-9, 7-31
Required by protective covenants in Preliminary Plan 7-22, 7-24
Required by protective covenants in Sketch Plan ......... 7-8, 7-10
Required, on disturbed slopes ....................................... 11-18
Requirements same as Colorado MLRD ................................. 9-32
Standards for .......................................................... 13-29
**RECLAMATION PERMIT**
Exemption of small pole barns from .................................. 13-29
Required for cuts and fills ........................................... 13-30
Required for driveway construction .................................. 13-30
Required for grading activities ...................................... 13-31
Required for individual sewage disposal system ............... 13-30
Required for road cuts ............................................... 13-30
Required to construct building ....................................... 13-30
**RECREATION**
Active and passive, definitions of .................................... 2-17
Areas, included in required open space ............................. 13-13
**RECREATIONAL VEHICLE**
14-day camping limit .................................................. 9-40
Definition of ............................................................ 2-17
Individual sewage disposal system required for .................... 9-18
Long-term Camping Permit allowed for ................................ 9-41
**RECREATIONAL VEHICLE PARK ........................... 9-17**
Definition of ............................................................ 2-17
Land Use Change Permit required for ................................. 9-17
Regulation of, by State of Colorado ................................... 9-17
Standards for construction and operation of .......................... 9-17
**REPEAL OF REGULATIONS**
Flood Damage Prevention Resolution ................................... 1-23
Land Use Resolution ................................................... 1-23
Mobile Home Regulations .............................................. 1-23
Resolution restricting camping on private property ............... 1-23
Sign Code ............................................................... 1-23
Special Events Resolution ............................................. 1-23
Temporary structures on construction sites ........................... 1-23
**RESIDENCE**
Definitions of ........................................................... 2-17
Integrated secondary, definition of .................................... 2-17
**RESIDENTIAL LIVING AREA**
Classification of, as Administrative Review project ........ 5-1, 17-2
**RESORT**
Definition of ............................................................ 2-17

Occupancy limit for .................................................... 9-16
Standards for ........................................................... 9-16
**RESTRICTIVE INNER BUFFER**
Illustration of ........................................................... 11-27
Prohibited activities in ................................................ 11-27
Setback for ............................................................. 11-27
Unavoidability, allowing land use change in ....................... 11-28
**REVEGETATION**
And noxious weed control ............................................ 13-30
Plan required, in mining ............................................... 9-31
Required after grading activities .................................... 13-31
Required for disturbance within wildlife habitat areas ........ 11-24
Required in reclamation of geologic hazard areas ............. 11-18
Required in Reclamation Permit ......................................... 1-7
**REVIEW AGENCIES**
List of .................................................................. 2-18
Referral of Administrative Review project application to ....... 5-13
Referral of Land Use Change Permit application to .............. 3-5
Referral of Minor Impact project application to .................. 6-15
Referral of Preliminary Plan for Major Impact project to ...... 7-25
Referral of Sketch Plan for Major Impact project to ........... 7-11
**RIDGELINE ........................................................ 11-29**
And mining operations ............................................ 9-22, 9-29
Definition of ........................................................... 2-18
Land Use Change Permit required for building on ........ 6-1, 11-3
List of .................................................................. 11-30
List of specific viewpoints related to development on ........ 11-30
Standards for development on ........................................ 11-29
Visibility of buildings on .............................................. 11-30
**RIGHT-TO-RANCH POLICY ...................................... 15-1**
As element of Administrative Review project .................. 5-5, 6-6
As element of Preliminary Plan for Major Impact project ....... 7-18
As element of Sketch Plan of Major Impact project ............... 7-6
Conflict resolution program provided by ............................ 15-3
Required distribution of, to applicants for Land Use Change
    Permits ........................................................ 3-4, 6-15
To reduce conflicts between agricultural operations and growth
    ...................................................................... 15-1
**ROAD CONSTRUCTION**
Agricultural exemption for .......................................... 6-2, 17-5
Classification of, as Minor Impact project ................... 6-2, 17-5
County standards for ................................................... 2-18
Definition of ........................................................... 2-18
Definition of, as land use change .................................... 2-12
Reclamation Permit required for ........................................ 1-7
Reclamation Permit required for ...................................... 13-30
Road Cut Permit required for ........................................... 1-7
**ROAD SYSTEM .................................................... 12-1**
For mobile home community ............................................. 9-11
Plan required in Sketch Plan for Major Impact project ........... 7-6
Plan, required in Preliminary Plan for Major Impact project .. 7-19
**ROADS**
Corridors, list of, as "ridgeline vantages" ....................... 11-29
Definition of ........................................................... 2-18
Developer required to mitigate share of impact to County's . 12-3
Development of, in avalanche hazard area ........................ 11-16
Functional classifications of .......................................... 7-19
Maintenance and snowplowing of, County maps of ............... 1-19
Names, duplication of prohibited ................................ 6-11, 7-33
Public, definition of ................................................... 2-16
Seasonal truck traffic limitation on ................................. 9-27
Setback of construction materials operation from centerline of
    public ......................................................... 9-23, 9-24
Setback of mining machinery from centerline of ................... 9-25
Setbacks from .......................................................... 13-5

Setbacks required from............................................... 9-18
Standards for construction of, on 30% slopes................... 11-18
ROCKFALL HAZARD AREA
Definition of............................................................ 2-9
Development allowed in ........................................ 11-17
Mitigation of development in.................................. 11-17
Standards for development in ................................. 11-14
Submittal requirements related to............................. 7-17
Uses prohibited in ................................................ 11-17
SAGE GROUSE CONSERVATION PLAN
Land use changes required to comply with ................ 11-25
Mitigation of mining noise advised by....................... 9-31
SATELLITE DISH ...................................................... 9-38
Definition of......................................................... 2-19
Larger than 36 inches ........................................... 9-38
No Land Use Change Permit required for ............ 4-2, 17-4
Standards for mitigating visibility of.......................... 9-38
SCREENING
For ridgeline development..........................11-30, 11-31
To mitigate visibility of mining operations.................. 9-30
SEASONAL USE
Deed restrictions required for, in avalanche areas........... 11-16
Definition of......................................................... 2-19
Plat language required for ........................ 5-10, 6-14, 7-36
SECONDARY RESIDENCE
Detached, 2,500 sq.ft. on legal lot................... 5-1, 17-3
Detached, definition of........................................... 2-17
Detached, on any 35-acre tract........................ 5-1, 17-3
Integrated, definition of.......................................... 2-17
Sewage treatment system required for ....................... 9-4
SECONDARY USES
Allowed after primary residence................................ 9-1
Definition of........................................................... 2-1
Land Use Change Permit required for ......................... 9-2
SEDIMENTATION CONTROL
Required during grading......................................... 13-31
SENSITIVE WILDLIFE HABITAT
Definition of......................................................... 2-25
SERVICE LINE
Definition of......................................................... 2-19
SETBACKS ............................................................. 13-4
Between asphalt plants and residences ..................... 9-25
Between mining operations and residences ................ 9-26
Between mobile homes ........................................... 9-13
Between zero lot line residences ............................. 13-4
Definition of......................................................... 2-19
For construction materials operations ................. 9-23, 9-24
For mining operations from other uses ...................... 9-23
For recreational vehicle park ................................... 9-18
For Restrictive Inner Buffer.................................... 11-27
For telecommunication towers.................................. 9-38
From property lines............................................... 13-4
From roads.......................................................... 13-5
From water body, waiver for.................................... 9-25
Of adult uses from property lines............................. 9-17
Of construction materials from high water mark........... 11-6
Of construction materials operations from high water mark... 11-27
Of machinery, materials from centerline of public road ...... 9-24
Of manure piles from water body.............................. 9-40
Of outdoor vendor from residential boundary............... 9-37
Of soil disturbance from water body ........................ 13-31
Of Variable Outer Buffer....................................... 11-29
Of vehicle maintenance area from water body............. 11-29
Requirements, table of............................................ 13-5

Table of, for mining operations ................................. 9-25
Table of, for recreational vehicle park ....................... 9-18
Variance application form for property line ................. 13-6
Variance from standards for.......................... 13-5, 13-6
Waivers from, for mining operations ......................... 9-26
SEWAGE TREATMENT SYSTEM............................. 12-9
Central, related to increased residential density ......... 10-1, 10-2
Definition of......................................................... 2-23
Feasibility analysis required in Preliminary Plan of Major Impact
    project......................................................7-22, 12-10
For mobile home community.................................... 9-12
For secondary residences........................................ 9-4
Homeowners' association responsibility to maintain ..6-9, 7-9, 7-23, 7-31
Prohibited in floodplain hazard area.......................... 11-6
Requirement of zero lot line development to tie onto, ....... 13-4
Requirement to tie onto, if within 400' ...................... 12-9
Standards for construction of................................. 12-11
SIGNS ................................................................... 13-14
Advertising condominiums or townhomes before development
    approval...................................................... 13-17
Cluster, for commercial/industrial parks.................... 13-15
Definitions of....................................................... 2-19
For lot sales before development approval................... 13-17
Home occupation.................................................... 9-5
Nonconforming.................................................... 13-15
Off-premise, variance required for........................... 13-16
Real estate, size allowed without Sign Permit ............ 13-15
Road name.......................................................... 12-5
SITE PLAN
Definition of......................................................... 2-20
Example of........................................................... 17-9
For Administrative Review project............................ 5-11
For Building Permit ............................................. 13-18
For Minor Impact project .................................... 5-6, 6-7
For water quality protection................................... 11-26
Standards and measurements for ............................. 13-1
SITE-SPECIFIC DEVELOPMENT PLAN
As vested right trigger .......................................... 1-15
Definition of......................................................... 2-20
SKETCH PLAN........................................................ 7-3
Application for Major Impact Projects ........................ 7-3
Approval, significance of.......................................... 7-13
Engineered designs not required for........................... 7-2
Evolution of, during review process ........................... 7-2
Expiration of approval of, in Major Impact project.......... 7-13
Extension of approval of.......................................... 7-13
Fees for review of................................................. 7-3
Timeline for review process, Major Impact project ........... 17-13
SLEEPING STRUCTURE
Land Use Change Permit required for.............. 5-1, 9-2, 17-3
Standards for ....................................................... 9-3
SLOPE
30 %, limited development on ................................ 11-18
And water quality protection................................... 11-29
Avoidance of cut and fill on ................................. 13-31
Definition of......................................................... 2-20
Landscaping on.................................................... 13-22
Stabilizing steep, for weed control............................ 13-31
Unstable, development limited on ........................... 11-19
SNOW STORAGE .................................................. 13-24
And landscaping design requirements ....................... 13-22
And protection of water bodies .............................. 13-24
Parking area design, related to............................... 13-18
SNOWPLOWING..................................................... 11-33

And risk to emergency services............................. 11-34
County not obligated to provide ........................... 11-33
Design requirements for ...................................... 13-24
Land Use Change Permit required for ..............6-2, 17-6
Landowner's acknowledgement of no snowplowing service. 11-33
On roads where no service exists ....................... 11-33
Private temporary permit for ............................... 11-34
Required by protective covenants ......................... 7-24
Temporary Private Permit required for..................... 1-7

SOLAR
Active space heating, definition of ......................... 2-1
Heating systems, definitions of ........................... 2-20

SOLAR ACCESS
Definition of......................................................... 2-6
Design of landscape buffer to protect.................... 13-24
Protected from adjacent heights ............................ 13-3

SOLID-FUEL-BURNING DEVICE ...............13-9
Approved non-solid, definition of ......................... 2-20
Approved, definition of ........................................ 2-20
Definition of....................................................... 2-20
Fees for inspection of.......................................... 13-11
Installation of..................................................... 13-9
Installation of, around municipalities .................... 13-10
Regulation of, required in protective covenants ......... 6-10, 7-31

SPECIAL AREA ...........................................1-16
Definition of....................................................... 2-20
Designation of ..................................................... 1-16
Standards for designation of ................................ 1-17

SPECIAL DEVELOPMENT PROJECT REGULATIONS
Definition of....................................................... 2-20

SPECIAL EVENT...........................................9-33
Classification of, as Administrative Review project........4-2, 17-4
Coordination of, with municipality ........................ 9-36
Definition of....................................................... 2-20
Exemptions of, from requirements ........................ 9-33
Fees for ............................................................. 9-33
Hours of operation limited for .............................. 9-36
Indemnification of County required for ................... 9-36
Insurance required for.......................................... 9-36
Parking spaces required for ................................. 17-16
Parking surface requirements for........................... 13-20
Permit application for........................................... 9-33
Permit requirements FOR ..................................... 9-33
Sign requirements for........................................... 13-15
Standards of operation for ................................... 9-35
Weddings and funerals as ................................... 9-33

SPECIAL GEOGRAPHIC AREA
Definition of....................................................... 2-20
Designation of..................................................... 1-16
Standards for designation of ................................ 1-17

SPRAWL
And strip development.......................................... 2-21
Compact development pattern promoted to discourage........ 1-2
Definition of....................................................... 2-21

STANDARDS
Access ................................................... 12-4, 12-12
Drainage and storm water control ........................ 13-33
Drinking Water.................................................... 12-9
Exterior lighting .................................................. 13-27
For fencing ........................................................ 13-25
For Administrative Review Project.......................... 5-2
For altering building envelopes ............................ 5-3
For approval of variance from setback requirements......... 13-7
For bed and breakfast operation............................ 9-5

For boundary line adjustment...............................5-3
For commercial and industrial uses .......................9-15
For constructing water supply system ....................12-9
For construction of water impoundments.............13-37
For correction of plat..........................................5-3
For designation of Special Area ............................1-17
For detached secondary residence ........................9-3
For determining residential density ........................10-1
For development in alluvial fan..............................11-14
For development in avalanche Blue Zone .................11-14
For development in avalanche hazard areas ..............11-15
For development in geologic hazard area..................11-14
For development in mudflow hazard area ..................11-14
For development in rockfall hazard area ...................11-14
For development in Variable Outer Buffer..................11-29
For development in wildfire hazard area ...................11-20
For development in wildlife habitat areas ..................11-23
For development on ridgelines ...............................11-29
For development on talus slopes ............................11-14
For development over a fault..................................11-14
For Emergency Exceptions ...................................8-6
For home occupation ...........................................9-4
For integrated secondary structure (caretaker's apartment)..9-4
For keeping livestock on non-agricultural parcel .................9-40
For lighting ........................................................13-26
For LPIP subdivision projects ...............................14-3
For Major Impact projects ....................................7-1
For mining operations..........................................9-27
For Minor Impact projects ....................................6-2
For mobile home communities ..............................9-11
For mobile home installation.................................9-10
For more than one home occupation in one home...............5-3
For noxious weed control ....................................13-31
For off-road parking ............................................13-18
For outdoor vending operation ..............................9-37
For parking area design .......................................13-20
For reclamation and noxious weed control ...............13-29
For recreational vehicle parks................................9-17
For Site Plan ......................................................13-1
For Special events ..............................................9-35
For structure intended for sleeping ........................9-3
For Technical Modifications ..................................8-1
For wastewater/sewage  treatment system construction ...12-11
For wireless telecommunication structure..................9-38
Infrastructure.....................................................12-1
Lighting.............................................................13-27
Location, for structures.........................................13-2
Locational, for commercial and industrial development.........10-2
Locational, for residential development .....................10-1
Sign..................................................................13-15
Site Plan............................................................13-1
To amend Land Use Resolution .............................1-20
To ensure compatibility between land uses ...............13-38
To protect natural resources.................................11-1
To reduce flood hazard ............................... 11-7, 11-8
To revoke a permit...............................................16-2
Trail design ........................................................12-6
Waiver of, for affordable housing ...........................1-23
Water quality buffer..............................................11-27

STATE INTEREST
Matter of, definition of .........................................2-13

STORAGE SHED
120 sq. ft. allowed on one-acre parcel.....................9-1
Allowed on parcel smaller than one-acre ..................9-2
Definition of.......................................................2-21
In mobile home community ...................................9-14

Larger than 120 on one-acre.................................................... 9-3
No Land Use Change Permit required for .................... 4-1, 17-3
Two allowed on one-acre .......................................................... 9-2
Two allowed on parcel smaller than one-acre........................ 9-2
Two, no Land Use Change Permit required for ........... 4-1, 17-3
**STORM WATER ................................................ 13-32**
Colorado permit required for discharge of .......................... 13-33
Definition of............................................................................. 2-21
Management of, in mining operations ................................... 9-21
Regulation for discharge of................................................. 13-32
**STRUCTURE**
Accessory, definition of ........................................................... 2-1
Agricultural, definition of ......................................................... 2-2
Definition of............................................................................. 2-21
Height restriction of................................................................ 13-3
Intended for sleeping only, Land Use Change Permit required
    for.............................................................................. 5-1, 17-3
Maximum size of, on wilderness inholding .......................... 11-35
Nonconforming legal................................................................ 1-13
Obtrusively visible, definition of ........................................... 2-15
Secondary, not requiring Land Use Change Permit............... 4-1
Secondary, requiring Land Use Change Permit..................... 9-2
Size limitations of residential................................................. 13-7
**SUBDIVISION**
Approved, definition of........................................................... 2-22
Cemetery lots exempt as....................................................... 2-21
Correction of plat for............................................................. 5-12
Creation of "legal lots" by process of ................................. 2-12
Defined as land use change.................................................. 2-12
Definitions of........................................................................... 2-21
Exemption to validate existing lot.................................. 5-2, 17-4
Fire district's authority in .................................................... 12-12
Flood hazard warning required in ......................................... 11-4
Floodplain design standards for............................................ 11-8
Geologic hazard warning in................................................. 11-14
Landscaping required in ...................................................... 13-21
Large Parcel Incentive Process alternative to .................... 14-1
Locational standards for........................................................ 10-1
Lot size required in new........................................................ 13-2
Manufactured home, requirements for.................................... 9-8
Open space required in ........................................................ 13-12
Plat requirements for................................................ 6-11, 7-33
Recording final plat for Major Impact ................................... 7-36
Setbacks required in............................................................... 13-5
Storm Water Discharge Permit required for ....................... 13-32
Transfer of title before approval of ...................................... 16-5
What a 35-acre tract development is not ............................ 2-21
Wildfire hazard warning in ................................................... 11-21
**SUBDIVISION EXEMPTION**
Application form for................................................................ 5-12
Standards for approval of ...................................................... 5-3
**SURVEY**
For correction or vacation of plat ........................................ 5-12
For subdivision exemption..................................................... 5-12
Plat, required for Administrative Review project.................. 5-10
Plat, required for boundary line adjustment......................... 5-10
**TABLES**
Bonus residences in LPIP subdivision ................................. *14-2*
Impact classification of land use changes........................... *17-2*
Minimimum aisle widths for parking spaces ....................... *13-20*
Noise levels for commercial and industrial uses ................. *9-16*
Noise levels for mining operations...................................... *9-31*
Off-road loading spaces for non-residential use................ *13-18*
Parking space requirements ............................................... *17-16*
Parking spaces for disabled persons ................................. *13-19*
RV park setback requirements ............................................. *9-18*

Setbacks for construction materials operations.................... 9-24
Setbacks for mining operations ........................................... *9-25*
Setbacks from property lines and rights-of-way.................. *13-5*
Summary of review processes ............................................. *17-7*
**TAKINGS**
Process to resolve claim of .................................................... 8-2
**TALUS SLOPES**
Definition of............................................................................. 2-9
Development on .................................................................... 11-18
Standards for development in.............................................. 11-14
**TAX CERTIFICATE**
Required for Minor Impact project application........................ 5-7
Required to reactivate Land Use Change Permit application 3-2
Required to submit Final Plan for Major Impact project . 6-10, 7-
    32
Required to submit Preliminary Plan application .................. 7-15
Required to submit, in Sketch Plan application....................... 7-3
**TECHNICAL MODIFICATION**
Appeal of decision on............................................................. 8-4
Definition of........................................................................... 2-22
Standards for approval of........................................................ 8-1
To allow minor changes to Permits and applications............. 8-1
**TELECOMMUNICATIONS ................................ 9-38**
Safety lighting for.................................................................. 9-39
Wireless, attached, standards for......................................... 9-38
Wireless, definition of........................................................... 2-25
Wireless, freestanding, standards for .................................. 9-38
**TEMPORARY**
Gravel operations for road project........................................ 9-23
Holiday displays ................................................................... 13-28
Mobile Home Permit ............................................................... 9-9
Private Plowing Permit ......................................................... 11-34
Reclamation for emergency exception ................................... 8-6
Shelter, definition of............................................................. 2-22
Signs .................................................................................... 13-15
Structures, required to comply with fire district................... 9-35
Use, definition of................................................................... 2-22
**TEMPORARY STRUCTURE ............................ 9-37**
Contractor's office as .......................................................... 9-37
Exempt from vested right ...................................................... 9-37
Farm and ranch stand as ...................................................... 9-16
Living in during construction.................................................. 9-37
Outdoor Vending Permit for ................................................. 9-37
Use of, during special event....................................... 9-34, 9-35
**THREE MILE PLAN**
Definition of................................................................. 2-14, 2-22
**THREE MILE PLAN AREA**
Coordination of special events in......................................... 9-36
Grounds for denial of development in..................................... 1-6
Locational standards for commercial development in.......... 10-3
Locational standards for residential development in ........... 10-1
Open space standards in ..................................................... 13-11
Residential density in ........................................................... 10-1
Woodstoves and fireplaces allowed in .............................. 13-10
**TIMBERLINE ................................................... 11-35**
Aggregate square footage of structures on parcel above . 11-35
Definition of........................................................................... 2-22
Height maximum of structure on parcel above .................. 11-36
Helicopter access prohibited above ................................... 11-36
Standards for development above........................................ 11-35
**TIMELINE**
For Final Plan of Major Impact project ............................... 17-15
For Minor Impact project review ......................................... 17-12
For Preliminary Plan of Major Impact project..................... 17-14
For Sketch Plan of Major Impact project ............................ 17-13

BLM_0053527

**TOWNHOME (TOWNHOUSE)**
Definition of..........................................................2-5, 2-22
Development, Final Plan approval for layout of.............6-8, 7-29
Homeowners' association required for development of 6-9, 7-31
Parking spaces required for development of.....................17-16
Plat, definition of........................................................ 2-7
Plat, required language on ........................................... 5-7
Setbacks required for development of .......................... 13-5
Signs allowed to advertise........................................ 13-17

**TRAFFIC STUDY**
Required for development creating 100+ trips per day ....... 12-2
Required for mining operations.................................... 9-22

**TRAILS ........................................................................12-5**
"Rational nexus" required for new ................................ 12-6
Allowed within dedicated open space ......................... 13-13
Definition of...................................................... 2-18, 2-22
Design standards for................................................. 12-6
Existing public, required to be deeded to County.............. 14-2
Mitigation not required for, in Administrative Review project 12-5
Pedestrian ways required as...................................... 12-5
Public, encouraged within dedicated open space ............. 13-13

**TRANSMISSION LINE**
Classified as Major Impact project.......................7-1, 17-3
Definition of............................................................ 2-22
Land Use Change Permit required for.........................6-2, 17-5

**UNSTABLE SLOPE**
Definition of............................................................. 2-9
Development on ...................................................... 11-18
Potentially, definition of.............................................. 2-9
Submittal requirements related to ............................... 7-18

**URBAN SERVICE AREA**
And provision of wastewater treatment.......................... 12-9
And provision of water supply .................................... 12-6
Definition of............................................................ 2-22

**UTILITIES**
Installation of,  on 30% slopes.................................. 11-18
Location of, in avalanche hazard areas ...................... 11-16
Repair of lines for, requiring no Land Use Change Permit ... 4-2, 17-5
Required for special event.......................................... 9-34
Required to be underground in mobile home community.... 9-12
Required to be underground near sage grouse leks.......... 11-25

**VACATION**
Of lot lines for lot cluster ......................................... 2-13

**Vacation of subdivision plats**
STANDARDS FOR APPROVAL OF ............................. 6-3

**VARIABLE OUTER BUFFER**
Illustration of ......................................................... 11-28
Standards for land use change in .............................. 11-28

**VARIANCE**
From floodplain requirements ................................... 11-10
From property line setbacks ...................................... 13-6
Required for off-premise signs .................................. 13-16

**VESTED RIGHT...........................................................1-14**
Common law, for partially-exempted land use changes...... 1-11
Extension of, in initial permit approval .......................... 1-16
Extension of, when Land Use Change Permit extended....... 1-6
Extension of, within 18 months of permit approval ........... 1-16
For Administrative Review project ............................... 1-15
For LPIP subdivision projects................................... 14-2
For Major Impact project........................................... 1-15
For Minor Impact project........................................... 1-15
Not granted for temporary structure ........................... 9-37
Site-specific Development Plan creating ...................... 1-15

**VICINITY MAP**
Example of............................................................ 17-9
Required for Administrative Review project ..................... 5-6
Required for mining application ................................. 9-20
Required for Minor Impact project................................. 6-6
Required for Sketch Plan in Major Impact project.............. 7-4

**VIEW CORRIDOR**
Definition of........................................................... 2-23
Provision of open space to protect............................ 13-11

**VIOLATION**
Criminal penalties related to ..................................... 16-5
Of subdivision statutes .............................................. 16-5
Permit approval halted by ........................................... 16-4
Process of abatement of............................................ 16-2
Revocation of permit because of.................................. 16-2
Right of County to enter property related to ................... 16-1
Stop order process related to ..................................... 16-1

**VISIBILITY**
Analysis required for ridgeline development ...... 6-1, 11-30, 17-3
Minimizing, of road construction............................. 12-3, 13-22
Mitigation of, in locating satellite dishes ...................... 9-38
Mitigation of, in mining operations .............................. 9-30
Obtrusive, definition of.............................................. 2-15
Of drivers, related to landscaping.............................. 13-22
Of homes in LPIP subdivision ..................................... 14-3
Of larger houses, standards for.................................. 13-8
Ridgeline, and required standards .............................. 11-30

**WAIVER**
For seasonal exterior lighting.................................... 13-28
From water body setback standard .............................. 9-25
Of fees.................................................................... 3-4
Of governmental immunity........................................ 16-6
Of liability outside fire protection district ..................... 12-12
Of setback for mining operations ............................... 9-26
Of standards for affordable housing project..................... 1-23
Of submittal requirements ................................... 3-3, 8-3

**WARNING**
Devices, exempt from noise standards ......................... 9-31
Signs, required for development in avalanche hazard area... 11-16
To buyers in floodplain hazard areas.............................. 5-7, 11-4
To buyers in geologic hazard areas.......... 5-7, 6-12, 7-33, 11-14
To buyers in wildfire hazard areas ........... 5-7, 6-12, 7-33, 11-21
To buyers outside fire protection district .....................12-12

**WASTEWATER TREATMENT SYSTEM ....................12-9**
Central, related to increased residential density................ 10-1
Definition of........................................................... 2-23
Feasibility analysis required in Preliminary Plan of Major Impact project.......................................................... 12-10
For mobile home community.......................................9-12
For secondary residences ........................................... 9-4
Homeowners' association responsibility to maintain..6-9, 7-9, 7-23, 7-31
Information required in Preliminary Plan ........................7-22
Prohibited in floodplain hazard area...........................11-6
Related to residential density.....................................10-2
Requirement of zero lot line development to tie onto........13-4
Requirement to tie onto, if within 400' ...........................12-9
Standards for construction of...................................12-11

**WATER BODIES**
Avoidance of direct discharge to ...............................13-34
Definition of...........................................................2-23
Listing of in Gunnison County....................................2-23
Ordinary high water line or mark, defining.....................2-15
Prohibition of snow storage in...................................13-24

Protection of, during grading activities ................................. 13-32
Protection of, from vehicle maintenance activities ............. 11-29
Restrictive Inner Buffer for ................................................... 11-27
Setback from, for construction materials operations........... 9-24
Setback from, of mining operations from ............................. 9-25
Setback from, of pollutant-dumping  from ............................ 9-41
Setback from, required during soil disturbance .................. 13-31
Setback of manure piles from ............................................... 9-40
Snow disposal prohibited in ................................................ 13-24

**WATER IMPOUNDMENTS....................................... 13-34**
Classification of, as Major Impact project ........... 7-1, 13-36, 17-3
Classification of, as Minor Impact project.6-2, 6-16, 6-17, 13-36,
    17-5
Classification of, by dam size ............................................. 13-35
Diversion structure exempt from requirements for........... 13-36
Exemption of, from water quality requirements................. 11-25
Expedited review for Gunnison basin.................................. 13-36
Impact classification of, by Board....................................... 13-35
Regulation of, related to decreed rights............................. 13-35
Standards for construction of .............................................. 13-37
That require no Land Use Change Permit........................... 13-35

**WATER SUPPLY ....................................................... 12-6**
Adequacy of, calculating........................................................ 12-7
Central, required for mobile home community ...................... 9-12
Construction standards for .................................................... 12-9
Definition of .......................................................................... 2-23
Drinking standards related to................................................ 12-8
Evidence of, for Minor Impact project.................................... 6-4
Final Plan submittal for Major Impact project............... 6-11, 7-32
Fire hydrants as part of ........................................................ 12-12
Fire suppression needs in calculating adequacy of ............. 12-7
For mining operations ............................................................ 9-23
Homeowners' association responsibility to maintain . 6-9, 7-9, 7-
    23, 7-31
Irrigation as part of ................................................................ 12-7
Preliminary Plan submittal for Major Impact project............ 7-20
Requirement to tie on to existing........................................... 12-6
Shared, required for secondary residences............................ 9-4
Shared, required for structures in building envelope ........... 13-8
Sketch Plan submittal for Major Impact project ...................... 7-7
State site approval application required for................... 4-2, 17-4
Well test required for ............................................................. 12-8

**WEDDINGS**
Exempt from Special Event Permitting ...................... 2-20, 9-33
Land Use Change Permit on commercial site......2-20, 6-2, 17-6

**WEEDS ..................................................................... 13-29**
And maintenance of livestock areas...................................... 9-40
And maintenance of open space.......................................... 13-14
Control of, required by protective covenants in Final Plan 6-9, 7-
    31
Control of, required by protective covenants in Preliminary Plan
    .................................................................................. 7-22, 7-24
Control of, required by protective covenants in Sketch Plan.. 7-8
Control of, required in mobile home community................... 9-11
General standards for controlling........................................ 13-31
Landowners' responsibility to control................................... 15-2
Noxious, definition of ........................................................... 2-14

**WELLS**
Permit benefits of, in LPIP project....................................... 14-2
Potability test required for...................................................... 7-7
Testing required to prove adequacy of................................. 7-21
Testing requirements for ........................................................ 12-8

**WETLANDS**
404 Permit required for protection of .................................. 11-9
Agricultural, exempt as water body........................................ 2-23

Agricultural, exempt from water quality requirements ....... 11-25
Constructed, for storm water management ......................... 13-34
Crested Butte, maps of............................................................ 1-19
Definition of .......................................................................... 2-24
Delineation required.................................................................. 7-5
Functions, definition of ......................................................... 2-24
Intermittent, definition of ...................................................... 2-23
Maps of, used by County ......................................................... 1-19
Perennial, definition of ......................................................... 2-23
Setback of construction materials operations from ............ 9-24
Setback of mining operations from .....................................9-25
Setback of Restrictive Inner Buffer in................................. 11-27
Setback of Variable Outer Buffer in..................................... 11-29

**WILDERNESS ......................................................... 11-35**
Development on inholdings in ............................................. 11-35
Helicopter and aircraft prohibited in ................................... 11-35
Maximum square footage on property in............................ 11-35
Maximum structure height on inholding within................... 11-35
Noise protection for.................................................................. 9-31
Setback of construction materials operations from ............ 9-24

**WILDFIRE HAZARD AREA....................................... 11-19**
Covenants required to address development in................. 11-20
Defensible space and screening of ridgeline development11-31
Definitions of ........................................................................ 2-24
Development in .................................................................... 11-19
Development prohibited in ................................................... 11-20
Landscaping and defensible space in ................................ 13-23
Maps of, used by County ......................................................... 1-19
Mitigation of development in ............................................... 11-20
Property owners' responsibility in ....................................... 11-21
Standards for development in .............................................. 11-20
Warning to buyers about ........................... 5-7, 6-12, 7-33, 11-21

**WILDLIFE**
And secondary residences ...................................................... 9-3
And trash containers.............................................................. 9-18
Fencing to protect in mining areas ....................................... 9-30
Mitigation techniques to minimize impacts to..................... 11-23
Preserves, allowed in flood fringe......................................... 11-6
Preserves, allowed in floodplain........................................... 11-6
Required continuance of historical access for..................... 11-25
Sage grouse conservation plan............................................ 11-25

**WILDLIFE HABITAT................................................. 11-21**
Analysis of, required for land use changes ........ 7-6, 7-18, 11-22
Best management practices to improve............................... 11-1
Critical, definition of .............................................................. 2-24
Fencing to protect ................................................................ 13-26
Maps of, used by County .............................................. 1-19, 11-22
Policy to discourage winter recreation in ............................... 1-3
Policy to preserve.................................................................... 1-3
Protection of, in LPIP subdivisions ...................................... 14-1
Retaining dead wood for ............................................ 13-22, 13-30
Sensitive, definition of .......................................................... 2-25
Setback of construction materials operations from ............ 9-25
Standards for development in............................................... 11-23
Use of open space to protect ............................................... 13-13

**XERISCAPE**
Definition of .......................................................................... 2-25
Recommended for land use changes .................................. 13-22

**ZERO LOT LINE DEVELOPMENT**
Definition of .......................................................................... 2-25
Illustration of......................................................................... 13-4
In mobile home community....................................................9-14
Maintenance easements required for.................................. 13-5
Reduced setbacks in ........................................................... 13-4

S Dominguez  Gunnison County, CO      595051
11/10/2009 02:20 PM            Pg: 1 of 6
447                    R:  $0.00    D: $

**BOARD OF COUNTY COMMISSIONERS OF GUNNISON COUNTY**
**RESOLUTION NO. 47 SERIES 2009**

**A RESOLUTION AMENDING THE GUNNISON COUNTY LAND USE RESOLUTION**
**CONCERNING THE ADDITION OF A**
**VOLUNTARY RESIDENTIAL DENSITY TRANSFER SECTION TO THE RESOLUTION**

**WHEREAS,** the *Gunnison County Land Use Resolution* ("the Resolution"), Section 1-113, details a process for initiation, review and Board of County Commissioners' action on proposed amendments to the *Resolution*; and

**WHEREAS,** pursuant to the *Resolution*, Section 1-113, the Geographic Information Services Department initiated and the Gunnison County Planning Commission has completed review of certain proposed amendments regarding residential density transfer, which amendments are proposed to be in the *Resolution*, Section 1-104F., Section 13-108F.1 and 2, Section 14-101, section 14-200, Section 14-201, and Section 14-202 (the "Proposed Amendments") as required by the *Resolution*, and

**WHEREAS,** on July 10, 2009, the Gunnison County Planning Commission recommended approval of the Proposed Amendments as reflected in the Planning Commission's written Recommendation forwarded to the Board of Commissioners on July 24, 2009 (the "Recommendation"); and

**WHEREAS,** the Gunnison County Attorney and Geographic Information Services Department (GIS) Manager subsequently reviewed the Recommendation and submitted further recommended changes to the Board in a memorandum dated August 11, 2009, which has also been reviewed and considered by the Board; and

**WHEREAS,** on September 22, 2009, the Board of County Commissioners conducted a duly-noticed public hearing on the Proposed Amendments, the Recommendation, and the further recommendations of the Gunnison County Attorney and GIS Manager; and

**WHEREAS,** pursuant to Section 1-113 of the *Resolution* the Board of County Commissioners have evaluated the Proposed Amendments, the Recommendation, and the further recommendations of the Gunnison County Attorney and GIS Manager using the following criteria:

- Consistency of the proposed amendment with any applicable comprehensive plan adopted by Gunnison County;
- Changed conditions, including the economy of Gunnison County;
- Effect of the proposed amendment on the natural environment;
- Community needs;
- Development pattern;
- Changes in applicable law;
- Public health, safety and welfare;
- Compliance with any applicable intergovernmental agreements adopted by Gunnison County.

**NOW, THEREFORE, BE IT RESOLVED** by the Board of County Commissioners of Gunnison County, Colorado, that the Board hereby adopts the amendments to the *Gunnison County Land Use Resolution* as included in the attached "Exhibit A."

**THIS RESOLUTION AND THE APPROVAL GRANTED HEREBY** shall not be effective unless and until a copy is recorded in the Office of the Clerk and Recorder of Gunnison County.

BLM_0053530

**INTRODUCED** by Commissioner _____*Starr*_____, seconded by Commissioner _____*Channell*_____, and passed on this 3rd day of November, 2009.

**BOARD OF COUNTY COMMISSIONERS**

Paula Swenson,
Chairperson

Jim Starr,
Commissioner

Hap Channell,
Commissioner

**ATTEST:**

Gunnison County Clerk and Recorder

*Deputy*

SEAL
GUNNISON COUNTY
COLORADO

```
S Dominguez  Gunnison County, CO        595051
11/10/2009 02:20 PM              Pg: 2 of 6
447                    R: $0.00   D: $
```

BLM_0053531

# EXHIBIT A

Note: <u>Underline</u> language is new to the *Resolution*; ~~struck through~~ language is deleted from the *Resolution*.

## CHANGES TO SECTION 1-104: F.:

**F.      TERM OF PERMIT.**

    **1.   TERM IS THREE YEARS FOR MOST LAND USE CHANGE PERMITS.** Unless expressly extended pursuant to Section 1-104: G: *Requirements for Extension of Term of Permit*, the term of a Land Use Change Permit shall be three years from its effective date.

    **2.   LARGE PARCEL INCENTIVE PROCESS (LPIP) IS PERPETUAL.** The term shall extend in perpetuity for permits that have been granted pursuant to <u>Division 14-100:</u> ~~Section 14-102:~~ *Large Parcel Incentive Process.*

*****

**CHANGES TO SECTION 13-108: F. 1. and  2. (Open space requirements)**

~~**F.      MAJOR IMPACT PROJECTS.  Except as exempted by Section 13-108: B: *Exemptions*, the requirements of this Section shall apply to specific Major Impact projects as follows:**~~

**F.      MAJOR IMPACT COMMERCIAL AND INDUSTRIAL USES.(Formerly 13-108: F. 1)** Unless otherwise required by this *Resolution* or other adopted policy or regulation of Gunnison County to contribute a prorated share to the purchase and maintenance of open space, and/or developed recreation areas, commercial and industrial uses that are classified as Major Impact projects pursuant to Section 7-101: *Projects Classified as Major Impact* shall provide open space by including landscaping elements pursuant to Section 13-111:  *Landscaping and Buffering*, and setbacks from property lines pursuant to Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way.*

**G.      ~~MAJOR IMPACT~~ RESIDENTIAL USES. (Formerly 13-108: F.2.)** A minimum of 30 percent of any proposed residential subdivision or multiple-family development <u>consisting of five or more lots or residences</u> shall be permanently set aside for public, private, or common developed and/or undeveloped open space, except that the amount of open space ~~may be proposed to be decreased by the applicant, and approved or conditionally approved by the Board when the proposed project complies with Section 10-102: *Locational Standards for Residential Development* and Section 10-103: *Residential Density*, and when:~~ <u>shall be reduced to 15 percent when the proposed project conforms to the requirements of Division 14-200:  *Residential Density Transfer Program.*</u>

    **1.)** ~~a.      PAYMENT IN LIEU. Payment is made by the applicant pursuant to any adopted County policy or regulation, to a fund whose purpose is to purchase or maintain dedicated open space areas or other public benefit; or~~

    **2.)** ~~b.      DEVELOPMENT IS LOCATED WITHIN A MUNICIPAL THREE-MILE PLAN AREA OR CONNECTED TO A CENTRAL WASTEWATER TREATMENT FACILITY. The~~

S Dominguez  Gunnison County, CO        595051
11/10/2009 02:20 PM          Pg: 3 of 6
447                    R:  $0.00   D: $

BLM_0053532

~~development is located within a municipal Three Mile Plan area, or is connected to a central wastewater treatment facility; or~~

3.) ~~c.      PUBLIC LANDS SURROUND THE PROPOSED DEVELOPMENT. Public lands significantly surround the proposed development, and any significant impacts of the proposed development on those lands are mitigated by the applicant. In determining whether impacts require mitigation, the County shall consider, but shall not necessarily be bound by, the comments of the agency in whose jurisdiction the public lands are located; and~~

4.) ~~d.      PROPOSED OPEN SPACE IS COMPATIBLE WITH EXISTING AREA DEVELOPMENT. The open space of the proposed development is compatible with that of existing development within the impact area.~~

**[All remaining paragraphs will be appropriately renumbered.]**

*****

## CHANGES TO ARTICLE 14:

# ARTICLE 14:
## ~~LARGE PARCEL~~ INCENTIVES ~~PROCESS~~

### SECTION 14-101: PURPOSES

The purposes of this Article ~~is~~ <u>are</u> to provide <u>alternatives to the minimum subdivision open space requirements</u> ~~incentives to Land Use Change Permit applicants to go beyond the minimum requirements~~ of this *Resolution* ~~and~~ to <u>permanently conserve private lands that have value in open space, agriculture, wildlife habitat, wetlands or watershed protection by significantly limiting development</u> ~~preserve and enhance open space, and to protect and promote agricultural uses.~~

**LARGE PARCELS SUBJECT TO DEVELOPMENT PRESSURE.** There are in Gunnison County large tracts of private land, including productive agricultural land, that are subject to increasing pressures to be divided and sold for development. County regulation and incentives that encourage appropriate development of that land as a whole will foster orderly planning and will provide significant public benefits, including maintenance of the open character of rural Gunnison County, continuation of agriculture in Gunnison County, and preservation of wildlife habitat, wetlands and watersheds in Gunnison County.

~~EXPEDITED~~ **ALTERNATIVE<u>S</u> TO 35-ACRE TRACT EXEMPT SUBDIVISION APPROPRIATE.** The County is precluded by C.R.S. 30-28-101 (10) (c) (1) from regulating the subdivision of land into parcels all of which are 35 acres or greater in size. It is appropriate and in the public interest that the developers and owners of those large tracts of private land be given reasonable incentives to submit to County review and regulation an application for the division and development of large tracts as an alternative to the statutory 35-acre exemption described in C.R.S. 30-28-101 (c)(1).

*****

**[The Large Parcel Development Process is renumbered to become Division 14-100, but otherwise remains unchanged.]**

S Dominguez  Gunnison County, CO        595051
11/10/2009 02:20 PM           Pg: 4 of 6
447                    R:  $0.00   D: $

BLM_0053533

**\*\*\*\*\***

**[The following Division is new and added in its entirety.]**

# DIVISION 14-200:
# RESIDENTIAL DENSITY TRANSFER PROGRAM

**A. PURPOSE.** The purpose of this Division is to provide an effective and equitable tool to conserve ranchlands used in agricultural operations and other valuable natural lands, and to help protect those lands from development impacts.

**B. METHOD.** The Residential Density Transfer (RDT) program transfers units by providing the option of increased density through reduced open space in a new subdivision in exchange for cash payment to Gunnison County for the purchase of undeveloped land and/or conservation easements in areas where lower density development is desirable.

**C. APPLICABILITY.** Any Land Use Change Permit application involving residential subdivision or multiple-family subdivision consisting of five or more residential lots or residences ("Qualifying Development") may include a RDT pursuant to this Division.

**D. REDUCTION OF OPEN SPACE REQUIREMENTS FOR QUALIFYING DEVELOPMENT.** The amount of open space required of a Qualifying Development pursuant to Section 13-108: G: *Residential Uses* may be reduced from 30 percent to 15 percent when the proposed project conforms to the standards of this Division.

### SECTION 14-201: CALCULATING RESIDENTIAL DENSITY TRANSFER AMOUNT AND PAYMENT OF FEES

The calculation of RDT amount and payment of fees shall be as follows:

**A. VALUE ACQUISITION.** The RDT requirement is determined by calculating a percentage of the value increase given to land when a Qualifying Development is approved. Values used in this calculation shall be based on the non-agricultural land market value, as determined by the Gunnison County Assessor using mass appraisal techniques ("Mass Appraisal Value"). Specifically, the RDT amount equals 10 percent of the sum of the Mass Appraisal Value for all residential lots in the subdivision (A) minus the Mass Appraisal Value that existed for the subject property before the subdivision approval (B).

$$\text{RDT CALCULATION} = 10\% \times \left( \begin{array}{c} \textbf{A} \\ \text{SUM OF MASS} \\ \text{APPRAISAL VALUE} \\ \text{FOR ALL RESIDENTIAL} \\ \text{LOTS IN QUALIFYING} \\ \text{DEVELOPMENT} \end{array} - \begin{array}{c} \textbf{B} \\ \text{MASS APPRAISAL VALUE} \\ \text{OF PROPERTY BEFORE} \\ \text{THE QUALIFYING} \\ \text{DEVELOPMENT WAS} \\ \text{APPROVED} \end{array} \right)$$

**B. EXCLUDED LOTS.** Lots used exclusively for essential housing pursuant to Division 9-600: *Essential Housing* or mobile home units pursuant to Section 9-203: *Mobile Home Communities* shall be excluded from the RDT requirement calculation.

S Dominguez  Gunnison County, CO        595051
11/10/2009 02:20 PM              Pg: 5 of 5
447                      R:  $0.00   D: $

BLM_0053534

**C. MIXED DEVELOPMENT.** When residential and non-residential uses are located on the same lot, the calculation of (B) shall be accomplished by multiplying the Mass Appraisal Value of the property before the subdivision approval by the percentage of the lot containing or attributable only to residential use.

**D. TIMING.** The RDT amount shall be calculated by the County and be secured via an agreement acceptable to the County Attorney's Office prior to recording the final plat. When the Assessor value is unavailable before the final plat is ready for recording, the Board of County Commissioners shall establish a preliminary lot value to calculate an initial RDT amount that will serve until the Assessor values are available. Lot value estimates shall be calculated by averaging the current Mass Appraisal Values of the most similar lots available, as recommended by the Assessor and subject to approval by the County Attorney.

**E. FINAL CALCULATION.** When an initial RDT amount is used, the County shall notify the applicant when the final Mass Appraisal Values become available. At that time and in accordance with the County-approved agreement, adjustments to the RDT amount, RDT compliance method, and security shall be made, subject to approval by the County Attorney, to ensure the RDT requirements are fully met. The final calculation shall only be used when it decreases the RDT amount and the difference shall be reimbursed or recalculated.

**F. RDT PAYMENT.** At the discretion of the applicant, either all or a portion of the RDT amount shall be paid before the final subdivision plat is recorded, or incrementally with the sale of individual lots. Cash received before the plat is recorded shall qualify for a 10 percent early payment discount. When the incremental payment method is chosen, the amount apportioned to lots shall be relative to lot value and shall be paid at the close of sale on the lot.

## SECTION 14-202: STANDARDS FOR USE OF TDR FUNDS

**A. RDT REQUIREMENT COMPLIANCE.** Monies collected by Gunnison County pursuant to the RDT program shall be placed into a segregated interest bearing account. Gunnison County shall use funds received pursuant to this Division solely for the purchase of a qualifying conservation easements, restrictive covenants, or fee simple lands located in Gunnison County that permanently conserves private lands that have value in open space, agriculture, wildlife habitat, wetlands, or watershed protection by significantly limiting development; and

**B. RDT FUNDS EXPENDITURE APPROVAL.** Funds acquired by the County through the RDT program shall not be expended without prior written approval of the Board of County Commissioners.



S Dominguez  Gunnison County, CO    595051
11/10/2009 02:20 PM            Pg: 6 of 6
447                      R: $0.00   D: $

BLM_0053535



# Gunnison County Energy Action Plan

Adopted by the Gunnison County Board of County
Commissioners on August 4, 2009

BLM_0053536

## Table of Contents

Table of Contents ................................................................................................................ 2

Introduction .......................................................................................................................... 3

ACTIONS FOR CURRENT CONSIDERATION .................................................................. 4

    Buildings .......................................................................................................................... 4

    Transportation .................................................................................................................. 5

    Waste ............................................................................................................................... 5

    Policy, Finance and Education ........................................................................................ 6

ACTIONS NOT FOR CURRENT CONSIDERATION .......................................................... 7

    Buildings .......................................................................................................................... 7

    Transportation .................................................................................................................. 7

    Waste ............................................................................................................................... 7

    Policy, Finance and Education ........................................................................................ 8

BLM_0053537

## Introduction

GREEN TEAM

The Gunnison County Green Team was established in March 2009 to advance and implement a County-wide "Green Plan" to ensure unified, coordinated and efficient action in meeting Gunnison County's environmental goals.

This Green Team is currently comprised of the following members:

> Rich Corbett, Facilities Supervisor
> Ben Cowan, Assistant Finance Director
> Katherine Haase, Administrative Services Manager
> Mike Lee, IT Director
> Eric McPhail, CSU Extension
> Debbie Moore, Personnel Director
> Jon Mugglestone, CSU Extension
> Cathie Pagano, Planner
> Lee Partch, Fleet Manager
> Mike Pelletier, GIS Manager

GUNNISON COUNTY ENERGY ACTION PLAN ADVISORY GROUP

In April 2008, Gunnison County received a grant for $12,850 from the State of Colorado Department of Local Affairs and partnered with the Office of Resource Efficiency to create a county-wide Energy Action Plan for presentation to the County and the municipalities within Gunnison County.

On April 28, 2009, the Gunnison County contingent of the Energy Action Plan Advisory Group presented their summary of recommendations to the Board of County Commissioners. The Green Team would like to acknowledge the time and dedication of the Energy Action Plan Advisory Group for the last few months that culminated in this list of recommendations.

The active members of that group were as follows:

> Chris Behan
> Hap Channell
> Nic Easley
> Nathaniel Gallion
> Rob Hicks
> Richard Karas (Chair)
> Bart Laemmel
> Donald McLeod
> Jeremy Johndrow

BLM_0053538

Jon Mugglestone
Cathie Pagano
Mike Pelletier
John Scott
Maya Silver
Bruce Van Buskirk
Andris Zobs

Other members contributed on an occasional basis or observed the process via email.

IMPLEMENTATION PROPOSAL

On May 11, 2009, the Green Team received a directive from County Manager Matthew Birnie to analyze the recommendations and come back with specific recommendations for implementation within the County organization.

The implementation proposal contained within this document is the result of individual considerations and group discussions among the members of the Gunnison County Green Team that occurred between May 11, 2009 and July 15, 2009.

For clarity's sake, the categories of recommendations from the Green Team are in the same order as those from the Energy Action Plan Advisory Group, except that the Residential and Commercial actions have been combined to avoid redundancy.

## ACTIONS FOR CURRENT CONSIDERATION

In general, the Green Team supports all voluntary installations of energy and water efficient improvements and appliances and distributed power production equipment. The focus of this document's recommendations are for specific actions and new regulations that the County government may have a direct, effective role in addressing.

### Buildings

1) Energy Audits and Weatherization Retrofits
   a) Recommend directing staff to investigate the use of 2008 State of Colorado House Bill 1350 or otherwise to offer low cost loans to fund upfront audits and weatherization retrofits by creating a guaranteed loan fund repaid via property tax bills.
   b) This program could be set up to mirror other successful programs such as ClimateSmart in Boulder County.
   c) Explore revolving fund establishment from any of the following sources, among others:
      i)   Bond issuance using 2008 HB 1350
      ii)  Grants
      iii) Fund balance appropriations
   d) Explore possibilities to create a regional Weatherization Program in order to gain the economies of scale needed to avoid an administrative burden to the County.

BLM_0053539

     e) Use the Geographic Information System, Assessor and utility databases to help target residences that are least efficient in order to focus the use of resources.

2) Building Codes
    a) Explore possibilities of adopting the 2009 International Energy Conservation Code.
       i) The Governor's Energy Office is very interested in accelerating adoption of the 2009 International Energy Conservation Code and has offered to assist with this transition by offering:
          (1) Free trainings for Planning Offices.
          (2) Free classes for contractors and builders to adjust their bids and refrain from using older, less energy efficient building techniques.
       ii) By 2030, the Governor's Energy Office reports that half of all buildings in the United States will be built after 2000, so this is an area that can have a tremendous impact on overall efficiency.
    b) Consider increasing the points required for new residential construction on the Planning Department's Energy Conservation Worksheet.
    c) Consider requiring commercial construction projects to attain a set amount of points on the Energy Conservation Worksheet.
    d) Consider the use of various disincentives to discourage the use of:
       i) Outdoor heated hot tubs
       ii) Heated eaves
       iii) Heated driveways

3) Explore possibilities of amending other County regulatory documents to help achieve County energy conservation and efficiency goals.

## Transportation

1) Public Transit
    a) Continue to assist the Rural Transportation Authority with placement of Park n' Rides by:
       i) Identifying possible Park n' Ride locations
       ii) Helping to determine necessary right-of-way

2) Fuel Efficiency
    a) Continue working on increasing the efficiency of County fleet vehicle and heavy equipment by:
       i) Replacing old, inefficient vehicles and equipment with vehicles and equipment that reduce fuel consumption and/or emissions
       ii) Assessing the appropriateness of current vehicle applications
    b) Continuous assessment of use of alternative fuels.

## Waste

1) Paper Waste
    a) Require all future printer purchases to include capability to double-side print jobs.
    b) Assess the benefit of having dual monitors for those departments that regularly print documents to transfer information to other software applications.

BLM_0053540

c) Amend or enforce the current adopted resolution for the use of recycled paper in County Departments.
d) Aggressively appropriate funds for the expansion of the county-wide Document Management System to move toward paperless government.
e) Consider adoption of a purchasing policy that encourages or requires the purchase of environmentally friendly products.
f) Analyze the most advantageous forms of recycling to determine which new forms should be implemented or switch to more effective forms.

## Policy, Finance and Education

1) Financing
   a) Actively apply for grant opportunities for County projects or program establishment as they become available.  Numerous grant opportunities will be available to non-entitled governments like Gunnison County from the American Recovery and Reinvestment Act later this year.
   b) Explore opportunities for establishment of a revolving loan fund as detailed above in the Buildings section.
2) Education
   a) Lead by Example
      i) Utilize press releases to publicize energy related accomplishments and initiatives of Gunnison County.  This is not an area that Gunnison County has actively addressed in the past on the many important achievements to date.
      ii) Establish a designated section of the Gunnison County website to publicize current energy/resource efficiency measures including:
         (1) Major past accomplishments.
         (2) Planned initiatives including strategic results related to energy and steps that will be taken to reach those results.
         (3) Regulations and services currently in use that encourage efficient use of energy and resources.
         (4) Contributions to and partnerships with non-profits related to energy/resource efficiency.
         (5) Consider cost effective distributed power production technologies on County properties in order to save money, reduce emissions and provide leadership to our community.  A proposed project is a large heat collector on the Doyleville Shop.
      iii) Continue working toward attainment of the 10% efficiency increase in county buildings via performance contracting and modification of employee behavior.
      iv) Consider using a performance contract for planned facility construction (such as the Jail and Public Works facilities) to install advanced efficiency measures such as woody biomass boilers or other emerging, but proven, technologies.  Utilizing an Energy Service Company would provide the expertise to install proven technologies that Gunnison County taxpayers expect.
   b) Other
      i) Coordinate dissemination of information to create a cohesive outreach program from the following sources:
         (1) Office of Resource Efficiency

6 of 8

    (2) County Extension Office
    (3) Gunnison County

ii) Work with County and State organizations to relay information detailing the advantages (including long-term financial advantages) of using advanced construction techniques, installing energy efficient appliances and small scale power production equipment when constituents are applying for building permits.

iii) Work with the Curriculum Director at the Gunnison County School District to determine whether Gunnison County can assist with furthering energy efficiency and conservation curriculum.

## ACTIONS NOT FOR CURRENT CONSIDERATION

The following recommendations are not suggested by the Green Team for consideration by the Board of County Commissioners, at least in the immediate future. Many of the recommendations are prohibitively expensive or not feasible at this time. It is also important to note that, in general on any project that requires prioritization, focusing time and resources in a few areas initially is more beneficial than attempting to do everything at once.

### Buildings

1) Although encouragement of recycling and education of recycling availability can be distributed during the building process, the County should not require the use of recycled or the recycling of scrap waste from building sites. This would be very difficult to enforce.

2) Currently, beyond the distribution of information about various tax rebates and other grants or financing methods, the County should not begin providing funding for power production equipment.

### Transportation

1) Requiring siting of bus stops within proposed new development would be very difficult. Ease of transit to existing bus stops is already required in the current Land Use Regulations. We feel that the current development of north-south mass transit modes along the Gunnison-Crested Butte corridor with ease of walking, biking or driving to the north-south artery at bus stops and park n' rides is the best option for successful use of mass transit.

### Waste

1) The County should not pursue methane harvesting due to the lack of water at the landfill site, which is required to create an aerobic environment to generate quantities of methane required in order to make this feasible. The current "dry tomb" style landfill is not conducive to harvesting. In fact, according to Marlene Crosby, Public Works Director, methane levels are currently barely measurable even without venting.

BLM_0053542

2) Do not add more types of recyclables (i.e. #5 and #7 plastics) to the list of acceptable products at the Recycling Center, unless more storage space is acquired first and market conditions improve.

3) Do not consider regulation of commercial construction waste. This would be extremely difficult to enforce.

## Policy, Finance and Education

1) Hiring an Energy Coordinator for only Gunnison County is probably not in the best interest of Gunnison County taxpayers at this time. The Governor's Energy Office recommends that these positions should serve an area with a population no more than 80,000 and no less than 25,000. The GEO will be using its share of Energy Efficiency and Conservation Block Grants to help fund and or establish these positions and the County should work with the municipalities and a neighboring County to utilize such position in a more regional manner, along with continuing to collaborate with the Office of Resource Efficiency. A regional model would allow the Energy Manager to obtain more grants due to intergovernmental collaboration and a greater scope, which are both very attractive to prospective grantors. The Gunnison County Green Team can continue to help with the implementation of a County specific energy program.

2) Impact fees could be an important financing method at some point, but the Green Team does not recommend consideration of these or carbon taxes of any kind at this time (however, the recommendations do include looking into possible bond funding for a weatherization program, which would be repaid by those that received weatherization benefits). Although these methods have been successful in more affluent areas, we believe that Gunnison County residents will be more resistant to these steps until some smaller, less wealthy jurisdictions around the country begin looking for financial support from their residents.

BLM_0053543

GUNNISON BASIN WEED DISTRICT
MANAGEMENT PLAN

## I.  **INTRODUCTION**

By enacting The Colorado Weed Management Act, the Colorado General Assembly defines and declares that all the lands of the state of Colorado, whether in private or public ownership, are protected by and subject to the jurisdiction of a local government empowered to manage undesirable plants as designated by the state of Colorado and the local governing body.

The Gunnison Basin Weed District (hereinafter known as the "district") was organized according to C.R.S. 35-5.5, et. seq, the "Colorado Weed Management Act", as set forth on Exhibit "A", attached hereto and incorporated herein, which took effect on July 1, 1990.

The District covers parts of Gunnison, Hinsdale and Saguache Counties, as well as the cities and towns of Gunnison, Crested Butte, Mt. Crested Butte and Pitkin in accordance with the Intergovernmental Agreement which is attached hereto as Exhibit "B" and incorporated herein. The majority of this District encompasses an entire watershed as a single basin unit due to the unique aspects and needs of noxious weed control within the District.

The District advisory commission is a 6 member commission composed of qualified representatives appointed by Gunnison, Hinsdale and Saguache Counties.  The District is prepared to exercise within its boundaries public power as authorized by the law, as amended and supplemented.

Control of undesirable weeds is the responsibility of all landowners (Federal, State, County, Municipal and Private).  The advisory commission will work with these landowners to help them with the control of the noxious weeds as outlined in this management plan.

## II.  **DESCRIPTION OF COUNTY**

The District encompasses most of Gunnison County, the northern one-third of Hinsdale County and the northwestern one-third of Saguache County, comprising of approximately 2,585,464 acres including public and private land.  The majority of the public lands are administered by the U.S. Forest Service, Bureau of Land Management, U.S. Department of Water and Power Resources, U.S. National Park Service and the Colorado Division of Wildlife.

The District includes large acreages of relatively dry, middle elevation sagebrush rangelands; more moist, upper elevation

BLM_0053544

rangelands and grazeable woodland; and irrigated pasture and hayland (predominantly cool-season, native and introduced grasses) adjacent to major streams and drainages. Overall elevation within the District ranges from approximately 7500 feet to over 13,500 feet. Average annual precipitation ranges from approximately 10 inches at Gunnison to over 40 inches at or above timberline elevations. The growing season is relatively short (40-90 days), normally extending from early June through mid-October, with winters being extremely cold.

The diversity of environments and landscapes within this area has led to a cultural diversity of land based economics, including logging, ranching, home ownership, and recreational businesses.

III. **LAND OWNERSHIP**

Land Ownership within the District is distributed as follows (in acres):

| Acres | Gunnison County | Saguache County | Hinsdale County | Total |
|---|---|---|---|---|
| Privately owned 382,148 | 327,520 | 44,257 | 10,371 | |
| National Park Service & Dept. of Water & Power Resources 63,056 | 63,056 | -0- | -0- | |
| U.S.F.S. 1,585,495 | 1,118,109 | 312,481 | 154,905 | |
| BLM 520,847 | 273,807 | 110,720 | 136,320 | |
| State ownership 27,924 | 22,621 | 3,660 | 1,643 | |
| County ownership 791 | 600 | 183 | | 8 |
| Municipal ownership 5,203 | 4,847 | -0- | 356 | |
| Totals 2,585,464 | 1,810,560 | 471,301 | 303,603 | |

IV. **STATEMENT OF WEED PROBLEM**

The weed problem within the District is considered small. All four (leafy spurge, Russian knapweed, diffuse knapweed and spotted knapweed) weeds designated as noxious, undesirable plants

BLM_0053545

have been located within the District boundaries with major areas of infestation being county and state road right-of-ways.

Gunnison County started with funding and "spot" roadside spraying in 1988. There has not been a need for band spraying in isolated road right-of-ways.

The Gunnison Basin Weed District targets the following noxious weeds for control within the District: leafy spurge, Russian knapweed, diffuse knapweed and spotted knapweed. The Gunnison Basin Weed District Commission strongly recommends that **Canada thistle** be managed with the intent of impact reduction.

Mapping of these targeted undesirable plants has been accomplished as a base line for management techniques. Updates of said mapping should be continued as funds are available. Immediate attention to early infestations of problem noxious weeds will increase the District's chance for total successful control. These infestations have the potential of reducing the economic value of land in all areas of the District. The current baseline map is attached hereto as Exhibit 'C' and incorporated herein.

Problem areas include roadsides, drainage areas, municipal areas, housing subdivisions, private property, national forests, state parks as well as other County, State and federal lands within the District. Control of undesirable plants within problem areas shall be the responsibility of these land owners.

V.  **GOAL STATEMENT**

The goal of this District is to aggressively control the known infestations of the named undesirable plants, to identify any new infestations that affect the economic and aesthetic value of lands within the District, to prevent the introduction, spread, and reproduction of undesirable plant species through integrated weed management techniques and to educate the community of these noxious weed problems.

    A.  Itemized Long Term Goals

        1.  Education- promote District wide awareness of problem.
        2.  To control known existing infestations and to help prevent future spread of undesirable weeds along District roadways, parks and open spaces through integrated plant management techniques.
        3.  Update, continue with the mapping process.
        4.  To annually review management plan.

VI.  **PLAN OF WORK**

    A.  Public Education

        1.  Provide the public with information concerning the

Colorado Weed Management Act.
2. Create an awareness regarding the origin of noxious weeds.
3. Provide information on various ways of management of noxious weeds.
4. Provide information on natural biology of targeted weeds.
5. Provide plant identification of targeted weeds.

B. Control of Noxious Weeds

1. Integrated Weed Management Techniques - the planning and implementation of a coordinated program utilizing a variety of methods for management of undesirable plants.

   a. Prevention: through education and sound management practices.
   b. Cultural Control: those management practices conducted to favor the growth of desirable plants over undesirable plants.
   c. Mechanical: those management practices that physically disrupt plant growth.
   d. Biological: the use of an organism to disrupt the growth of undesirable plants.
   e. Chemical: the use of herbicides or plant growth regulators to disrupt the growth of undesirable plants.

C. Mapping

1. Utilize the County Extension Office, when available.
2. Utilize the Soil Conservation Service, when available.
3. Utilize the road and bridge crew, as available.
4. Through county-wide questionnaires.
5. Utilizing existing mapping systems.

D. Review

1. Take public input into consideration and to internally review management plan accordingly.
   a. Establish record keeping system
   b. Monitor progress of weeding management/control efforts
   c. Evaluate effectiveness of management/control methods used
2. Determine future needs.

E. Development and Recognition of Special Management Areas

1. Delineate areas requiring intensive management.
2. Delineate areas requiring unique levels of

management.
a.   Public water supplies
b.   Specialty crop areas
   c.   Community project areas
   d.   Water ways
   e.   Wilderness areas

## VII.   **ENFORCEMENT**

It is an objective of the District that through a thorough understanding of the detrimental affects of noxious weeds that the public will control such weeds and not cause the District to enforce the law by the means as provided for in Sections 35-5.5-109 & 110 of the Colorado Weed Management Act.

## VIII.   **FUNDING**

Funding has been established through the Intergovernmental Agreement process to meet and carry out the goals and plans of the District to the best of its ability.   This is a continuation of the County budget established in 1988 for weed control.

**APPROVED AND ADOPTED   this _____ day of _____, 1992**

BOARD OF COUNTY COMMISSIONERS
GUNNISON COUNTY, COLORADO


Fred R. Field, Chairman                          _____


Mario V. Petri, Vice Chairman                    _____


ATTEST:                   R.A. Santarelli, Commissioner     _____


_____
Joanne M. Reitinger
County Clerk and Recorder

GUNNISON BASIN WEED DISTRICT ADVISORY COMMISSION


_____
Ted Bemis, Chairman


_____
Lucinda K.C. Lull, Secretary

Gunnison County Noxious Weed List

The following noxious weeds are mandated for control within the
Gunnison River Watershed:

| | |
|---|---|
| Absinth wormwood | (Artemisia absinthium) |
| Black henbane | (Hyoscyamus niger) |
| Dalmatian toadflax | (Linaria dalmatica) |
| Dame's rocket | (Hesperis matronalis) |
| Diffuse knapweed | (Centaurea diffusa) |
| Field bindweed | (Convolvulus arvensis) |
| Hoary cress | (Cardaria draba) |
| Leafy spurge | (Euphorbia esula) |
| Musk thistle | (Carduus nutans) |
| Oxeye daisy | (Chrysanthemum leucanthemum) |
| Plumeless thistle | (Carduus acanthoides) |
| Purple loosestrife | (Lythrum salicaria) |
| Russian knapweed | (Centaurea repens) |
| Saltcedar (Tamarisk) | (Tamarix ramosissima) |
| Scotch thistle | (Onopordum acanthium) |
| Spotted knapweed | (Centaurea maculosa) |
| Yellow toadflax | (Linaria vulgaris) |

All species on the Colorado State List A are mandated for control.
Please look at the Colorado Department of Agriculture's web site
at www.ag.state.co.us/cpi/weeds.html for the States List A
species.

BLM_0053549



S Dominguez  Gunnison County, CO
9/5/2012 3:09:05 PM
447

615250
Page 1 of 333
R 0.00 D 0.00

## BOARD OF COUNTY COMMISSIONERS
## OF GUNNISON COUNTY
## RESOLUTION NO. 2012-25

## A RESOLUTION AMENDING THE GUNNISON COUNTY, COLORADO TEMPORARY REGULATIONS FOR OIL AND GAS OPERATIONS

WHEREAS, the goal of the Board of County Commissioners of Gunnison County, Colorado in adopting these Regulations for Oil and Gas Operations is to provide a framework for the responsible exploration and production of oil and gas resources in Gunnison County in a manner that conserves other natural resources, that is sensitive to surrounding land uses, and that mitigates adverse impacts to and protects the public health, safety, welfare and the environment of Gunnison County; and

WHEREAS, the Board is authorized by, *inter alia*, Section 30-28-101, et. seq.; Section 30-28-201, et. seq.; and Section 29-20-101, et. seq., C.R.S. to adopt and amend such regulations, and

WHEREAS, the Board adopted the Gunnison County, Colorado Temporary Regulations for Oil And Gas Operations by Resolution No. 2003-50 adopted on May 9, 2003; and

WHEREAS, the Board amended the Gunnison County, Colorado Temporary Regulations for Oil And Gas Operations ("Temporary Regulations for Oil and Gas Operations") by Resolution No. 2004-27 adopted on May 18, 2004, Resolution No. 2007-04 adopted on January 23, 2007, and Resolution 2010-43 adopted on October 5, 2010; and

WHEREAS, the Board determined that revisions to the Temporary Regulations for Oil and Gas Operations should be considered based on the County's experience in applying those regulations since they were enacted; and

WHEREAS, the Gunnison County Planning Commission held a series of work sessions and public meetings on June 18, 2010, July 30, 2010, September 3, 2010, October 1, 2010, November 5, 2010, December 3, 2010, December 17, 2010, February 2, 2011, February 11, 2011, March 11, 2011, April 15, 2011, May 6, 2011, June 3, 2011 to consider proposed amendments to the Temporary Regulations for Oil and Gas Operations; and

WHEREAS, the Gunnison County Planning Commission transmitted to the Board the Proposed Amendments to Gunnison County, Colorado Temporary Regulations for Oil and Gas Operations, dated June 3, 2011 ("Proposed Amendments to Oil and Gas Regulations"); and

1

BLM_0053550

BLM_0053551

S Dominguez   Gunnison County, CO
9/5/2012 3:09:05 PM
447

615250
Page 2 of 333
R 0.00 D 0.00

WHEREAS, after the Board received the Proposed Amendments to Oil and Gas Regulations, the Board held work sessions on September 27, 2011, February 28, 2012, March 27, 2012, May 8, 2012, June 12, 2012 and July 10, 2012; and conducted a public hearing on June 14, 2011, continued to August 2, 2011, continued to January 10, 2012, and continued to August 28, 2012; and received input from the public, the industry, the environmental community, landowners, and other interested parties on the Proposed Amendments to Oil and Gas Regulations; and

WHEREAS, based upon input received during the work sessions and from the public and interested parties, the Board identified issues and directed County staff to prepare revisions to the Proposed Amendments to Oil and Gas Regulations to address these issues; and

WHEREAS, a properly noticed public hearing was conducted by the Board on June 14, 2011; and

WHEREAS, notice of the continued public hearing by the Board was published in the Crested Butte News on July 27, 2012 and in the Gunnison County Times on July 26, 2012; and

WHEREAS, the Board conducted a public hearing on August 28, 2012 to consider revisions to the Proposed Amendments to the Temporary Regulations for Oil and Gas Operations;

NOW THEREFORE BE IT RESOLVED by the Board of County Commissioners of Gunnison County, Colorado that:

1.      The Board hereby amends the Temporary Regulations for Oil and Gas Operations by adopting the Gunnison County, Colorado Regulations for Oil and Gas Operations, dated August 28, 2012, attached hereto as Exhibit A, effective immediately.

2.      In the event that any term or provision of the Regulations for Oil and Gas Operations shall be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the Regulations for Oil and Gas Operations shall not be affected thereby and shall remain valid and enforceable.

3.      In the event that the entirety of the Regulations for Oil and Gas Operations shall be determined by a court of competent jurisdiction to be invalid or unenforceable, then oil and gas operations in Gunnison County shall be subject to the Gunnison County Land Use Resolution.

4.      Gunnison County shall have the right to recover, from each person or entity who violates the Oil and Gas Operations, all reasonable attorney's fees and costs to the

BLM_0053552

BLM_0053553

S Dominguez   Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 3 of 333
R 0.00 D 0.00

County to enforce the Oil and Gas Regulations.

INTRODUCED   by   Commissioner   _Swenson_,   seconded   by Commissioner _Chamberland_ and adopted this 28th day of August, 2012.

BOARD OF COUNTY COMMISSIONERS
OF GUNNISON COUNTY, COLORADO

By _____
Hap Channell, Chairperson

By _____
Paula Swenson, Vice Chairperson

By _____
Phil Chamberland, Commissioner

ATTEST:

_____
Deputy Clerk

GUNNISON COUNTY
SEAL
COLORADO

3

BLM_0053554

BLM_0053555

# EXHIBIT A

# GUNNISON COUNTY COLORADO

# REGULATIONS FOR OIL AND GAS OPERATIONS

Adopted by the Gunnison County Board of County Commissioners – May 9, 2003
BOCC Resolution No. 2003-50

Amended – May 18, 2004   BOCC Resolution No. 2004-27
Amended - October 5, 2010   BOCC Resolution No. 2010-43
Amended - August 28, 2012   BOCC Resolution No. 2012-25

S Dominguez   Gunnison County,  CO
9/5/2012  3:09:05 PM
447

615250
Page 4 of 333
R 0.00 D 0.00

BLM_0053556

S Dominguez   Gunnison County, CO
9/5/2012 3:09:05 PM
447

615250
Page 5 of 333
R 0.00 D 0.00



# TABLE OF CONTENTS

SECTION 1-101:  PURPOSE ....................................................................1

SECTION 1-102:  AUTHORITY ................................................................1

SECTION 1-103:  APPLICABILITY............................................................2

SECTION 1-104:  APPLICATION SUBMITAL REQUIREMENTS
FOR OIL AND GAS PERMITS  .................................5

SECTION 1-105:  COORDINATION WITH STATE OR FEDERAL ACTIONS AND
COUNTY PERMIT PROCESS......................................14

SECTION 1-106:  PERMIT REVIEW PROCEDURES
FOR OIL AND GAS PERMITS ...................................15

SECTION 1-107:  COMPREHENSIVE OPERATIONS PLAN (C0P) .....................33

SECTION 1-108:  OIL AND GAS OPERATION STANDARDS ...................................33

SECTION 1-109:  CONDUCT OF PUBLIC HEARING............................................44

SECTION 1-110:  ENFORCEMENT AND PENALTIES...........................................47

SECTION 1-111:  COMMENCEMENT OF OPERATION ...................................49

SECTION 1-112:  GUARANTY OF CONDITIONS OF APPROVAL .......................49

SECTION 1-113:  AMENDING THESE REGULATIONS........................................49

SECTION 1-114:  DEFINITIONS ..........................................................51

BLM_0053557

S Dominguez  Gunnison County, CO          615250
9/5/2012  3:09:05 PM                      Page 6 of 333
447                                        R 0.00 D 0.00



## GUNNISON COUNTY, COLORADO
## REGULATIONS FOR OIL AND GAS OPERATIONS

### SECTION 1-101:   PURPOSE.

**A.**  **GENERAL PURPOSE.**  The purpose of these Regulations is to establish regulations that provide reasonable limitations and safeguards for the exploration and production of oil and gas resources in the County.  The goal is to provide a framework for the responsible exploration and production of oil and gas resources in a manner that conserves other natural resources, that is sensitive to surrounding land uses, and that mitigates adverse impacts to and protects the public health, safety, welfare and the environment of the County.

**B.**  **INTENT TO NOT DUPLICATE OTHER PERMIT PROCESSES OR REQUIREMENTS.**  The County intends to avoid duplicative permit processes or requirements.   The County will review permit applications concurrently with other required state or federal agency permitting processes whenever possible.

**C.**  **RELATIONSHIP TO THE GUNNISON COUNTY LAND USE RESOLUTION.**  These Regulations are intended to be a stand-alone document and are not an amendment to or a Section of the *Gunnison County Land Use Resolution*.  These Regulations, in lieu of the *Land Use Resolution*, shall apply to Oil and Gas Operations.

**D.**  **RELATIONSHIP TO OTHER GUNNISON COUNTY REQUIREMENTS.**  Any and all Oil and Gas Operations and any and all maintenance to or on an Oil or Gas Well, production facility, or pipeline shall require compliance with all applicable Gunnison County Regulations and requirements including but not limited to the Gunnison County Standards and Specifications for Road and Bridge Construction and the Gunnison County Overweight Vehicle Permit requirements.

### SECTION 1-102:   AUTHORITY.

These Regulations are authorized by, *inter alia*, Section 30-28-101, et seq.; Section 30-28-201, et seq.; and Section 29-20-101, et seq., C.R.S.

BLM_0053558

**SECTION 1-103:   APPLICABILITY.**

**A.     ALL OIL AND GAS OPERATIONS SHALL COMPLY WITH THIS REGULATION.** All Oil and Gas Operations in the unincorporated areas on public and private land within the County shall comply with these Regulations.

**B.     OIL AND GAS PERMIT REQUIRED.** No person shall engage in, cause, allow or conduct any Oil and Gas Operations prior to obtaining an Oil and Gas Permit unless the Operations fall within the exemption in Section 1-103C.

**C.     OIL AND GAS OPERATIONS EXEMPTED FROM SUBMITTAL AND REVIEW REQUIREMENTS.** The following Oil and Gas Operations are exempt from these Regulations:

**1.     MAPPING ACTIVITIES.** Mapping activities that do not result in any surface disturbance.

**2.     EXISTING OIL AND GAS OPERATIONS.** Operation and maintenance of well sites, wells and pipelines, that are legal nonconforming uses under Section 1-103 D. Any expansion of a nonconforming Oil and Gas Operation shall comply with Section 1-103 D.

**3.     COAL MINE METHANE VENTING INTEGRAL AND ESSENTIAL TO EXISTING COAL MINING OPERATION.** Coal mine methane venting from a permitted coal mine, that does not produce or distribute methane off-site, and that is an integral and essential component of the existing coal mine, shall not be subject to these Regulations.

**D.     NONCONFORMITIES.** Within unincorporated Gunnison County, there are Oil and Gas Operations that were legally established before the effective date of these Regulations that do not conform to the legal requirements of these Regulations. The purpose of this Section is to regulate those nonconforming Operations.

**1.     NON-ABATEMENT PROVISION.** Unless otherwise stated herein, nonconforming Oil and Gas Operations that were legally established before the effective date of these Regulations are permitted to continue.

**2.     CONTINUED OPERATION OF LEGALLY ESTABLISHED NONCONFORMING OIL AND GAS OPERATIONS SHALL**

S Dominguez   Gunnison County,  CO
9/5/2012  3:09:05 PM
447
615250
Page 7 of 333
R 0.00 D 0.00

BLM_0053559

BE ALLOWED.  Legally established non-conforming Oil and Gas Operations, including ordinary repairs and maintenance thereto, shall be allowed to continue, so long as they remain otherwise legal and comply with the requirements of these Regulations.

3. **LIMITED EXTENSION OR EXPANSION.**  A legal nonconforming Oil and Gas Operation shall only be extended, expanded, or altered in a manner that decreases or does not expand the nonconforming use

4. **EXTENSION OR EXPANSION ONTO LAND OUTSIDE OF PERMITTED AREA.**  Any extension or expansion of a legal nonconforming Oil and Gas Operation onto land outside of a specified area used prior to the adoption of these Regulations shall comply with the requirements of these Regulations.

5. **RELOCATION.**  A legal nonconforming Oil and Gas Operation shall not be moved, in whole or in part, unless the relocation brings the Oil and Gas Operation into compliance with the requirements of these Regulations.

6. **ABANDONMENT OF NONCONFORMING OIL AND GAS OPERATION.**  If any legal nonconforming Oil and Gas Operation is abandoned for a period of one year, renewal of that use or the use of that structure shall not be initiated until after a review by the Community Development Department has determined that the renewed use will not pose a threat to public health, safety, welfare or the environment.  For the purpose of this subsection, "abandonment" means the intent to not continue the legally established nonconforming Oil and Gas Operation, coupled with the discontinuance of the nonconforming Oil and Gas Operation.

7. **DAMAGE OR DESTRUCTION.**  A legal nonconforming Oil and Gas Operation that is demolished or destroyed by an act of God or through any manner not willfully accomplished by or for the owner may be restored within one year of the damage or destruction as of right, regardless of the extent of demolition or destruction, conditioned upon issuance of each required permit, pursuant to these Regulations.  A one time, two-year extension of the initial year may be granted by the Community Development Director upon findings that:

S Dominguez   Gunnison County,  CO          615250
9/5/2012  3:09:05 PM                         Page 8 of 333
447                                          R 0.00 D 0.00

BLM_0053560

a.   **HARDSHIP.**  There would be a substantial hardship to the owner without the extension; and

b.   **SUBSTANTIAL EFFORT TO RESTORE**.  Within the first eight months after the destruction, the owner has substantially cleaned up and removed, if unusable, the damaged Operation.

E.   **CLASSIFICATION OF OIL AND GAS OPERATION.**   Unless specifically exempt pursuant to Section 1-103 C, Oil and Gas Operations shall be classified, for purposes of review as either a Limited Impact Operation or a Potentially Significant Impact Operation.  The initial classification determination shall be made as part of the completeness determination.

1.   **LIMITED IMPACT OPERATION.**   Unless site specific considerations indicate to the Community Development Department that the Operation should be classified as a Potentially Significant Impact Operation, the Community Development Department may, at its discretion, choose to initially classify Oil and Gas Operations with one or more of the following features as Limited Impact Operations.  An Oil and Gas Operation that has been classified as a Limited Impact Operation shall be reviewed administratively by the Community Development Department under Section 1-106C.

a    The Oil and Gas Operation will consist solely of the installation or construction by one Operator of storage yards and construction staging areas disturbing one acre or less, during the same calendar year; or

b.   Co-location of wells on an existing pad for which a permit was previously issued by the County; or

c.   Installation of flowlines and gathering lines for a well or pit for which a permit was previously issued by the County; or

d.   No pits will be used for produced water, flowback water, or other waste generated by any phases of the Oil and Gas Operation; or

e.   Drilling and hydraulic fracturing fluids, including additives, anticipated to be used during the life of the

S Dominguez   Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 9 of 333
R 0.00 D 0.00



BLM_0053561

Oil and Gas Operation will not contain constituents listed on the US EPA Priority Pollutants and National Primary Drinking Water Contaminants List; or

**f.** The Oil and Gas Operation is downgradient or separated by a geological barrier from the potentially affected water bodies; or

**g.** The Oil and Gas Operation is a phase of and consistent with a master development plan previously approved by the County; or

**h.** All features other than linear features will be located outside of the variable buffers set forth in Section 1-108 I; or

**i.** The Oil and Gas Operation is of such limited scope and duration that the impacts of the Operation are likely to be insignificant.

**2.** **POTENTIALLY SIGNIFICANT IMPACT OPERATION.** An Oil and Gas Operation that is not classified as a Limited Impact Operation shall be classified as a Potentially Significant Impact Operation. A Potentially Significant Impact Operation shall be reviewed by the Community Development Department under Section 1-106D, and shall require review, public hearing, and decision by the Planning Commission.

**3.** **CHANGE IN LEVEL OF REVIEW.** At any time prior to the Administrative Decision on a Limited Impact Operation, the Community Development Department may determine that the proposed Oil and Gas Operation should be reviewed as a Potentially Significant Impact Operation.

**SECTION 1-104: APPLICATION SUBMITTAL REQUIREMENTS FOR OIL AND GAS PERMITS**

**A.** **APPLICABILITY.** This Section shall apply to those Oil and Gas Operations not exempt under 1-103. C.

**B.** **PERMIT SUBMITTAL REQUIREMENTS FOR OIL AND GAS OPERATIONS.** An applicant for a permit to conduct Oil and Gas Operations shall submit the following information to the Community

S Dominguez   Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 10 of 333
R 0.00 D 0.00

BLM_0053562

## SECTION 1-104: APPLICATION SUBMITTAL REQUIREMENTS
## FOR OIL AND GAS PERMITS

Development Department.  The applicant may provide a copy of an Application for Permit to Drill (APD) or other application submitted to COGCC and/or federal Environmental Assessment (EA) or Environmental Impact Statement (EIS) as documentation for one or more of the submittal requirements in this Section 1-104 if it contains information sufficient to demonstrate compliance with these Regulations and that information is highlighted.

1. **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant.  If the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and also stating the same information for the agent.

2. **SURFACE OWNERSHIP.**  Documentation of surface ownership and evidence of surface owner authorization. Name, address, telephone and fax numbers, and e-mail address of the owner of the property.

3. **MINERAL OWNER.**  Documentation of mineral ownership, including name, address, telephone and fax numbers, and e-mail address of the owner of the mineral rights.

4. **PARCEL LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, or metes and bounds), property address and common description of the parcel on which the Operation is proposed to be located. A copy of the recorded deed or lease to the parcel should be included.

5. **IDENTIFICATION OF PREVIOUSLY APPROVED USES.** List of any permits which have been previously approved for the parcel on which the Operation is proposed.

6. **CHARACTERISTICS AND CURRENT CONDITION OF THE OPERATION LOCATION.** Identification of physical characteristics and current conditions of the site where the Operation is proposed to occur, including streams, irrigation ditches, ponds, soils, roads, vegetation, geologic hazards, and any other characteristics requested by the Community Development Department to determine potential impacts. Indications if trees or other vegetation have been removed and changes caused either by weather-related or human activity within the past five years.

S Dominguez   Gunnison County, CO          615250
9/5/2012  3:09:05 PM                       Page 11 of 333
447                                        R 0.00 D 0.00

BLM_0053563

## SECTION 1-104: APPLICATION SUBMITTAL REQUIREMENTS
## FOR OIL AND GAS PERMITS

7. **LIST OF ADJACENT LANDOWNERS.** List of all landowners and land uses that are adjacent to the boundaries of the parcel on which the Oil and Gas Operation is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the parcels except for the existence of the roadway. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

8. **VICINITY MAP.** A vicinity map which shall, at a minimum, include the following:

    a. **OPERATION LOCATION.** Location of the Operation on a United States Geological Survey quadrangle map or on a recorded plat if the proposed Oil and Gas Operation is within an approved subdivision, with the location highlighted so that it is easy to see.

    b. **TOPOGRAPHIC FEATURES.** Water bodies, contour lines and elevations, within one mile of the proposed well pad.

    c. **ROADS.** All public and private roads that traverse and/or provide access to the proposed Oil and Gas Operation, and identification of the public or private entity having jurisdiction over each road(s).

    d. **EASEMENTS.** Easements recorded or historically used that provide access to or across, or other use of, the parcel.

    e. **BOUNDARIES OF DISTRICTS, MUNICIPALITIES OR SUBDIVISIONS.** Locations of special district boundaries, municipalities or subdivisions within one mile of the site.

    f. **PROXIMITY OF OTHER WELLS AND OTHER OIL AND GAS OPERATIONS.** Location of other wells and other Oil and Gas Operations within one mile of the site.

9. **SITE PLAN MAP.** A map with north arrow and appropriate scale for the parcel where the Oil and Gas Operation will occur, indicating the following:

S Dominguez   Gunnison County, CO          615250
9/5/2012  3:09:05 PM                        Page 12 of 333
447                                         R 0.00 D 0.00

BLM_0053564

## SECTION 1-104:  APPLICATION SUBMITTAL REQUIREMENTS
## FOR OIL AND GAS PERMITS

     a.     **EASEMENTS AND RIGHTS-OF-WAY**.  Utility easements and rights-of-way.

     b.     **IMPROVEMENTS**.  Existing improvements.

     c.     **PROPOSED FACILITIES**.  Proposed facilities such as structures, pipelines, tanks, wells, pits, flow lines, impoundment facilities, staging and storage areas and equipment.

     d.     **SITE FEATURES**.  Site features such as floodplains, water bodies, drainage patterns, aquatic habitat, vegetative cover, wildlife migration routes and significant wildlife habitat.

     e.     **TOPOGRAPHY**.  Existing and proposed topography at five-foot intervals or some other interval established by the Community Development Department as necessary to portray the direction and slope of the area affected by the Oil and Gas Operation.

     f.     **LEASE BOUNDARY**.  All boundaries of the lease(s) upon which the Oil and Gas Operation will take place.

**10.**     **APPLICATIONS AND PERMITS**.  Copies of all local, state and federal applications authorizing or required for the Operation, and permits, when issued.

**11.**     **OPERATION PLAN**.  A plan including the method and schedule for drilling, completion, transporting, production and post-operation.

**12.**     **LINEAR FEATURES.**

     a.     Identification of all water bodies crossed by linear features or linear features that are located within 150 feet of a water body required for the proposed Oil and Gas Operation.

     b.     Description of and specifications for the linear element and identification of mitigation measures and/or best management practices for installation of linear features that cross or that are located within 150 feet of a water body.

S Dominguez   Gunnison County,  CO
9/5/2012  3:09:05 PM
447
615250
Page 13 of 333
R 0.00 D 0.00

BLM_0053565

## SECTION 1-104:  APPLICATION SUBMITTAL REQUIREMENTS
## FOR OIL AND GAS PERMITS

13. **WEED MANAGEMENT PLAN.** A plan for the management and prevention of noxious weeds on the site.

14. **ACCESS AND TRANSPORTATION ROUTES.**  A map that identifies the access route to, and within the parcel, and a narrative estimating the number and types of vehicles anticipated per day, including weights, that will travel over the route.

15. **IDENTIFICATION OF WATER STRUCTURES.** Identification of irrigation ditches and other water structures, ownership of water rights appurtenant thereto where the ownership information is available through the local water commissioner for the Colorado Division of Water Resources, and evaluation of any impacts to the structures or water rights.

16. **ROADWAY IMPACT ANALYSIS.**  An analysis of the impacts of the Operation to the public roadway system within the County.

17. **WILDLIFE AND WILDLIFE HABITAT ANALYSIS.** An analysis of existing wildlife and sensitive wildlife habitat, an evaluation of the impacts of the Operation on wildlife and sensitive wildlife habitat, and proposed mitigation.

18. **VEGETATION.** A written description of the type, character, and density of existing and proposed vegetation on the parcel, a summary of the impacts of the Operation on vegetation, and proposed mitigation.

19. **EMERGENCY RESPONSE PLAN.**  An Emergency Response Plan that addresses events including, but not limited to explosions, fires, gas or water pipeline leaks or ruptures, leaks from well casings, pits, tank leaks or ruptures, hydrogen sulfide or other toxic gas emissions, transportation of hazardous material, vehicle accidents or spills, and including the name and contact information for the applicant's incident commander, proposed signage, access/evacuation routes, and health care facilities anticipated to be used.  The plan shall include a provision for the Oil and Gas Operator to reimburse the appropriate emergency response service providers for costs incurred in connection with the emergency.  The Operator shall provide

S Dominguez  Gunnison County, CO          615250
9/5/2012  3:09:05 PM                      Page 14 of 333
447                                       R 0.00 D 0.00

BLM_0053566

## SECTION 1-104: APPLICATION SUBMITTAL REQUIREMENTS
## FOR OIL AND GAS PERMITS

proof of adequate personnel, supplies, and funding to implement the emergency response plan immediately at all times during construction and operations.

20. **WATER BODIES AND DRINKING WATER SUPPLIES.**

a. **IDENTIFICATION OF ALL WATER BODIES AND DOMESTIC WATER WELLS.** An inventory and location of all water bodies and domestic water wells within one mile of the proposed Oil and Gas Operation.

b. **IDENTIFICATION OF INTAKE FOR A MUNICIPAL WATER SUPPLY.** Identification of all intakes for any municipal water supplies in Gunnison County downstream from the proposed Oil and Gas Operation.

c. **IDENTIFICATION OF CLOSEST MUNICIPAL WATERSHED BOUNDARY.** Identification of all municipal watershed boundaries in Gunnison County within which the Oil and Gas Operation is located or downstream of the Oil and Gas Operation.

d. **DESCRIPTION OF EXISTING WATER QUALITY.**

(1) **WATER BODIES.** A description of existing water quality of all water bodies, within one mile of the proposed Oil and Gas Operation.

(2) **DOMESTIC WATER WELL BASELINE AND MONITORING.** A description of water quality of domestic water wells within one mile of the proposed Oil and Gas Operation and a proposed domestic well water sampling and monitoring plan.

e. **IMPACTS TO WATER QUALITY.** A description of potential impacts to water quality associated with the proposed Oil and Gas Operation and proposed mitigation.

21. **WATER QUALITY MONITORING PLAN.** A Water Quality Monitoring Plan that establishes a baseline and a process for monitoring, including identification of equipment, personnel,

S Dominguez   Gunnison County, CO                    615250
9/5/2012  3:09:05 PM                                 Page 15 of 333
447                                                  R 0.00 D 0.00

BLM_0053567

## SECTION 1-104:  APPLICATION SUBMITTAL REQUIREMENTS
## FOR OIL AND GAS PERMITS

scheduling and estimated costs, to measure changes to the aquatic environment and effectiveness of mitigation.  The plan shall comply with the Colorado Oil & Gas Association Voluntary Baseline Groundwater Quality Sampling Program,[1] as it may be amended, and be complementary to any monitoring required by state and federal agencies.  The plan shall, at a minimum, include the following elements:

- Key stream segments, other water bodies, and groundwater to monitor.

- Locations for and frequency of sampling and monitoring to establish baseline of existing conditions prior to the Oil and Gas Operation including existing fishery, water quality, aquatic macroinvertebrate, and groundwater data.

- Key indicators of water quality and stream health, and threshold levels that will be monitored to detect changes in water quality and health of the aquatic environment.

- Locations for and frequency of sampling and monitoring for key indicators of water quality and stream health, including but not limited to constituents regulated by the Colorado Water Quality Control Commission, and constituents associated with the Oil and Gas Operation.

- Locations for and frequency of sampling and monitoring to measure effectiveness of water quality mitigation during the life of the Oil and Gas Operation and five years after final reclamation of all disturbed areas is complete.

- Mitigation steps that will be implemented to avoid degradation of water bodies if monitoring of key indicators reveals degradation.

22.  **WASTE MANAGEMENT PLAN.**  A Waste Management Plan that describes the handling and storage, transportation, treatment, recycling and disposal of waste generated by the Operation, including exploration and production (E & P) waste.  The COGCC Rule 910 Plan may be submitted to satisfy this requirement.

---

[1] http://www.coga.org/index.php/BaselineWaterSampling

Gunnison County Regulations for Oil and Gas Operations                    11

BLM_0053568

## SECTION 1-104: APPLICATION SUBMITTAL REQUIREMENTS
## FOR OIL AND GAS PERMITS

23. **HYDRAULIC FRACTURING FLUIDS DISPOSAL AND REPORTING PLAN.**

   a. The plan shall identify the method and procedure for the disposal of all fluids used in Hydraulic Fracturing.

   b. The plan shall include a provision for reporting to the County the chemicals, other than those protected as Trade Secret, actually used during any Hydraulic Fracturing event.

24. **CULTURAL SURVEY.** A cultural, historical, and archeological survey of the parcel prepared by a qualified professional if permission of the surface owner is obtained.

25. **DRAINAGE AND EROSION CONTROL PLAN.** A Drainage and Erosion Control Plan that identifies existing and proposed drainage patterns and the methods for controlling erosion during construction and operation phases of the Operation.

26. **WILDFIRE HAZARDS.** An assessment of wildfire hazards within one mile of the site, and a plan for mitigating wildfire hazards.

27. **GEOLOGIC HAZARDS.** An assessment of the geologic hazards within one mile of the site, and a plan for mitigating geologic hazards.

28. **EXISTING AND FUTURE LAND USES**. A written summary of the existing uses of the parcel and the proposed future land uses of the parcel after completion of the Operation.

29. **OPERATIONAL CONFLICT.** Documentation of the basis for any waiver of Oil and Gas Operation Standards based on operational conflict that the applicant may request pursuant to Section 1-108S of these Regulations.

30. **TECHNICAL INFEASIBILITY OR ENVIRONMENTAL PROTECTION WAIVERS.** Documentation of the basis for any waiver of Oil and Gas Operation Standards based on technical infeasibility or environmental protection that the applicant may request pursuant to Section 1-108T. of these Regulations.

S Dominguez   Gunnison County,  CO                 615250
9/5/2012  3:09:05 PM                              Page 17 of 333
447                                              R 0.00 D 0.00



BLM_0053569

## SECTION 1-104: APPLICATION SUBMITTAL REQUIREMENTS
## FOR OIL AND GAS PERMITS

31. **CHEMICALS USED IN OIL AND GAS OPERATION.**

    a.    An inventory of all chemicals anticipated to be used for the Oil and Gas Operation. The inventory of Chemical Products shall include:

        **(1)**    The material safety data sheets for the chemicals, if any; and

        **(2)**    Chemical Abstract Service Registry Numbers for every chemical used in the Operation, if available, other than those protected as a Trade Secret.

32. **FUTURE OPERATIONS.** A map showing the location of existing facilities and the general location of facilities anticipated to be constructed by the applicant in the County over the next three years associated with Oil and Gas Operations.

33. **MISREPRESENTATION.** Any misrepresentation by the applicant may result in suspension or revocation of the Oil and Gas Permit.

C.    **FEES.** Any application for an Oil and Gas Permit must be accompanied by appropriate fees. A schedule of fees is available through the Community Development Department.

    1.    **APPLICATION FEE SET BY BOARD.** The initial application fee is set by the Board of County Commissioners as identified on the Fee Schedule, now in effect and as may be amended in the future, attached hereto as Attachment A.

        a.    **APPLICANT RESPONSIBLE FOR REFERRAL AGENCY REVIEW AND CONSULTANT FEES.** The costs of referral agency and consultant review of the application for the proposed Oil and Gas Operation, including reviews associated with the preapplication meeting and completeness determination, are the responsibility of the applicant.

        b.    **DEPOSIT.** An application for a Potentially Significant Impact Operation shall be accompanied by a deposit set forth on the Fee Schedule now in effect and as

Gunnison County Regulations for Oil and Gas Operations      13

S Dominguez   Gunnison County, CO    615250
9/5/2012  3:09:05 PM    Page 18 of 333
447    R 0.00 D 0.00

BLM_0053570

## SECTION 1-104: APPLICATION SUBMITTAL REQUIREMENTS
## FOR OIL AND GAS PERMITS

may be amended in the future, attached hereto as Attachment A. The deposit shall be applied toward the costs of the preapplication meeting, referral agency review, and consultant fees. The County shall initially pay the costs of referral agency review and outside consultants retained by the County to review the application from this fund.

(1) **BALANCE**. Throughout the application process, a minimum fee deposit balance established by the Board shall be maintained by the applicant. The amount of the initial deposit and the minimum balance required may be reduced upon a finding by the Community Development Department that the application processing and review costs are likely to be less than the minimum amount set herein.

(2) **SUSPEND PROCESSING**. The County may suspend processing the application pending receipt of additional installments required to bring the fee deposit balance to at least the minimum balance. Suspension shall toll all deadlines imposed on the County by this Section.

(3) **REFUND**. Within thirty (30) calendar days after the decision on the permit is made, the County shall refund any balance of the deposit not expended.

## SECTION 1-105: COORDINATION OF COUNTY PERMIT PROCESS WITH STATE OR FEDERAL ACTIONS.

Final action by the County on an Oil or Gas Permit application may be delayed until any required Environmental Assessment (EA), Environmental Impact Statement (EIS) or other permit by a state or federal agency is issued, so that the County will have the benefit of the analysis and determinations made by other entities in reaching its own decision.

S Dominguez   Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 19 of 333
R 0.00 D 0.00

BLM_0053571

SECTION 1-106:   **PERMIT REVIEW PROCEDURES FOR OIL AND GAS OPERATIONS.**

A.   **PRE-APPLICATION MEETING**

1.   **PREAPPLICATION MEETING AND PREAPPLICATION SUBMITTAL.**   Before submitting an application to the County, any person applying for an Oil and Gas Permit shall request a meeting with the Community Development Department.   The meeting will be held within ten (10) working days of the request.

a.   **PURPOSE**.   The purposes of the pre-application meeting include, without limitation:

(1)   To discuss the location and nature of the proposed Oil and Gas Operation;

(2)   To explain the application submittal requirements and the nature of materials that will be responsive to those requirements;

(3)   To identify materials which have been submitted to the COGCC, BLM, Forest Service, or other regulatory agencies that the applicant proposes to use in the County application review process;

(4)   To discuss federal and state terms and conditions that may have been imposed on the proposed Oil and Gas Operation;

(5)   To identify site-specific concerns and issues that bear on the proposed Oil and Gas Operation;

(6)   To discuss projected impacts and potential mitigation;

(7)   To discuss the Oil and Gas Operation Standards that must be satisfied for permit approval;

(8)   To consider the County permit process and level of permit review; and




615250
Page 20 of 333
R 0.00 D 0.00

S Dominguez  Gunnison County, CO
9/5/2012  3:09:05 PM
447

BLM_0053572

## SECTION 1-106:  PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

**(9)** To identify potential operational conflicts, or waivers of Oil and Gas Operation Standards based on technical infeasibility or environmental protection that the applicant intends to raise.

**b.** **PREAPPLICATION SUBMITTAL REQUIREMENTS**. At or before the preapplication meeting, the applicant shall submit a brief explanation of the proposed Oil and Gas Operation including, without limitation:

**(1)** **APPLICANT INFORMATION.** Applicant's name, address and phone number.

**(2)** **DESCRIPTION OF PROPOSED OIL AND GAS OPERATION**. Detailed written description of the proposed Oil and Gas Operation that is sufficient to accurately convey the character and magnitude of the proposed Operation.

**(3)** **MAP(s)**. Map(s) prepared at an easily readable scale showing the boundaries of the proposed Oil and Gas Operation; relationship of the proposed Operation to surrounding topographic features, water bodies, and hydrologic features; domestic water wells; existing and proposed roads, structures, and infrastructure; and gas wells and buried pipelines.

**c.** **PARTICIPATION BY COUNTY STAFF AND CONSULTANTS**. The Community Development Department may include staff from other departments and agencies, and outside consultants in the preapplication meeting. The Community Development Department shall invite the Local Government Designee to participate in the meeting.

**d.** **COMMENTS ARE PRELIMINARY**. Any comments made by County staff and consultants during the preapplication meeting are preliminary in nature and not binding.

**B.** **APPLICATION SUBMITTAL, DETERMINATION OF COMPLETENESS, AND DETERMINATION OF LEVEL OF REVIEW**

S Dominguez   Gunnison County,  CO                615250
9/5/2012  3:09:05 PM                              Page 21 of 333
447                                              R 0.00 D 0.00

BLM_0053573

## SECTION 1-106:  PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

1.     **APPLICATION SUBMITTAL**.  Following a pre-application meeting with the Community Development Department, an applicant seeking an Oil and Gas Permit shall submit an application to the Community Development Department containing the information in Section 1-104.

2     **DETERMINATION OF COMPLETENESS OF APPLICATION.**  Not more than ten (10) working days after receipt of the application materials, or twenty (20) working days if outside consultants or staff other than Community Development Department assist the County with completeness determination, the Community Development Department shall determine whether the application is complete.

   a.     **APPLICATION IS NOT COMPLETE.**  If the Community Development Department determines that the application is not complete, the Community Development Department shall inform the applicant in writing of the deficiencies and shall take no further action on the application until the deficiencies are remedied.   If the applicant fails to correct the deficiencies within thirty (30) working days after the notice that the application is incomplete, the application shall be considered withdrawn unless the applicant requests more time to ensure that the materials are as complete as possible.

   b.     **APPLICATION IS COMPLETE.**  If the Community Development Department determines that the application is complete, the Community Development Department shall date the application and notify the applicant in writing.

   c.     **COMPLETENESS IS NOT A DETERMINATION OF COMPLIANCE.** A determination that an application is complete shall not constitute a determination that it complies with the applicable standards of these Regulations.

3.     **DETERMINATION OF LEVEL OF REVIEW.**  As part of the completeness determination, the Community Development Department shall determine the level of review for the proposed Oil and Gas Operation.

S Dominguez   Gunnison County,  CO
9/5/2012  3:09:05 PM
447

615250
Page 22 of 333
R 0.00 D 0.00

BLM_0053574

## SECTION 1-106: PERMIT REVIEW PROCEDURES FOR OIL AND GAS OPERATIONS.

4. **CHANGE IN LEVEL OF REVIEW.** At any time prior to the Administrative Decision on a Limited Impact Operation, the Community Development Department may determine that the proposed Oil and Gas Operation requires review as a Potentially Significant Impact Operation due to an evaluation of the foreseeable impacts. If the Community Development Department determines that a change in the level of review is required, the Community Development Department shall immediately provide written notice to the applicant and the Planning Commission that includes the reason for the change.

C. **LIMITED IMPACT OPERATION PERMIT REVIEW**

1. **REVIEW OF APPLICATION BY COMMUNITY DEVELOPMENT DEPARTMENT.** Upon determination that the application is complete and that the Operation has been classified as a Limited Impact Operation, the Community Development Department shall review the application for compliance with County regulatory requirements.

2. **REVIEW BY COUNTY CONSULTANT.** The Community Development Department may submit the application for review and recommendation by consultants retained by the County with the necessary expertise to review the application.

3 **REVIEW BY REFERRAL AGENCIES.** The Community Development Department may submit the application for review and recommendation to referral agencies and organizations including other County offices and departments, and municipal, state, or federal agencies having an interest in or authority over all or part of the proposed Oil and Gas Operation. The referral review and comment period shall be twenty (20) working days from the date that the application is determined to be complete. Comments not received from referral agencies within the comment period may, but need not be considered by the Community Development Department.

4. **CONSULTATION WITH LOCAL GOVERNMENT DESIGNEE.** The Community Development Department shall consult with the Local Government Designee.

S Dominguez   Gunnison County, CO                615250
9/5/2012  3:09:05 PM                             Page 23 of 333
447                                              R 0.00 D 0.00

BLM_0053575

## SECTION 1-106:  PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

5.  **PUBLIC NOTICE AND COMMENT PERIOD.**  Upon determination that the application is complete, the Community Development Department shall prepare a notice that includes a description of the proposed Oil and Gas Operation and the deadline for public comments.

    a.  **PUBLICATION OF NOTICE.**  The Community Development Department shall be responsible for publishing the notice in the County's official newspaper(s).  The applicant shall be responsible for the cost of publication.

    b.  **NOTICE TO ADJACENT PROPERTY OWNERS.**  The applicant shall mail written notice to owners of real property within 1500 feet of the subject parcel when the Oil and Gas Operation is located on private land, and within 1500 feet of the Section (640 acres) in which the Oil and Gas Operation is located when the Oil and Gas Operation is located on public land.  The list of property owners to be notified shall be compiled by the applicant using the most current list of property owners on file with the Office of the Gunnison County Assessor.

    c.  **NOTICE TO OWNERS OF WATER RIGHTS.**  Where the ownership information is available through the local water commissioner for the Colorado Division of Water Resources, the applicant shall mail written notice to owners of water rights in any ditches or in other water bodies within one mile of the proposed Oil and Gas Operation.  The list of owners of water rights to be notified shall be compiled by the applicant.

    d.  **NOTICE TO OWNERS OF NON-ADJACENT PROPERTY WITHIN AN EXISTING SUBDIVISION, OR 35-ACRE TRACT DEVELOPMENT.**  The applicant shall mail written notice to all of the surface landowners within any existing subdivision or 35-acre tract development that is located within 1500 feet of the subject parcel when the Oil and Gas Operation is located on private land, or within 1500 feet of the Section (640 acres) in which the Oil and Gas Operation is located when the Operation is located on public land.  The list of property owners to be notified shall be compiled by the applicant using the most

**S Dominguez   Gunnison County,  CO**        615250
9/5/2012 3:09:05 PM                          Page 24 of 333
447                                          R 0.00 D 0.00

BLM_0053576

## SECTION 1-106:  PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

current list of property owners on file with the Office of the Gunnison County Assessor.

e.  **CERTIFIED MAIL.**  The applicant shall mail the written notice by certified mail, return receipt requested.  The applicant shall submit a list of the property owners and owners of water rights and proof of mailing to the Community Development Department prior to the decision on the application.

f.  **VALIDITY OF NOTICE.**  The applicant is responsible for the accuracy of lists of property owners and water rights owners to whom notice is provided.  If the applicant makes reasonable good faith efforts to accomplish the notice responsibilities identified above, then the failure of any property owner to receive notice shall not affect the validity of the decision.

g.  **COMMENT PERIOD.**  The comment period shall be fourteen (14) calendar days from the latter of the date of publication or of certified mailing of the notice.

6.  **ADMINISTRATIVE DECISION ON LIMITED IMPACT OPERATION.**  Not more than thirty (30) calendar days after the completeness determination, the Community Development Department may approve, approve with conditions, or deny the application based upon the Oil and Gas Operation Standards.  The Community Development Department shall provide a written decision that includes the following:

a.  **DESCRIPTION OF OIL AND GAS OPERATION.**  Brief discussion of the Oil and Gas Operation;

b.  **ISSUES.**  Description of issues raised by referral agencies and consultants, the Community Development Department, the Local Government Designee, other County staff, and the public;

c.  **CONDITIONS IMPOSED BY COGCC AND FEDERAL AGENCIES.**  Description of the terms, conditions and requirements imposed on the Oil and Gas Operation by COGCC and federal agencies;

S Dominguez   Gunnison County, CO          615250
9/5/2012  3:09:05 PM                       Page 25 of 333
447                                        R 0.00 D 0.00

BLM_0053577

## SECTION 1-106:  PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

**d.**  **IMPACTS AND MITIGATION.**  Description of impacts of the Oil and Gas Operation, proposed mitigation, and whether each Oil and Gas Operation Standard has been satisfied; and

**e.**  **CONDITIONS OF APPROVAL.**  Conditions of approval, if any, necessary to ensure compliance with all Oil and Gas Operation Standards.

**7.**  **FAILURE TO MEET APPLICATION REVIEW DEADLINES**. If the Community Development Department is not meeting application review deadlines set forth in these Regulations, the applicant may make a written request to the County Manager that the Board consider the matter at a regular meeting.

**a.**  **CONSIDERATION AT BOARD MEETING.**  The Board shall consider the matter at its first regularly scheduled meeting following receipt of the request, provided that the request is received at least five (5) working days prior to the meeting. If the request is not received within five (5) working days, the Board shall consider the matter at the next subsequent meeting.

**b.**  **BOARD DECISION**. If the Board determines that an application review deadline has not been met, the Board, at its sole discretion, may direct the County Manager to direct the staff to perform the required action by a time certain, or fashion such other relief as is necessary to ensure that the application is reviewed in a timely manner.

**8.**  **NOTICE OF ADMINISTRATIVE DECISION ON LIMITED IMPACT OPERATION.**  Within five (5) working days of the Administrative decision on the permit application for a Limited Impact Operation, the Community Development Department shall provide written notice of the decision to the applicant and the Board.

**9.**  **ADMINISTRATIVE DECISION BECOMES EFFECTIVE AFTER PERIOD FOR RECONSIDERATION OR APPEAL.** The Administrative Decision shall not become effective until fifteen (15) calendar days after the date of the notice of decision.  If the Board decides to reconsider the Administrative Decision or to hear an appeal, the

S Dominguez  Gunnison County, CO
9/5/2012 3:09:05 PM
447

615250
Page 26 of 333
R 0.00 D 0.00

BLM_0053578

Administrative Decision is stayed pending the outcome of the reconsideration or appeal.

10. **BOARD RECONSIDERATION OF ADMINISTRATIVE DECISION ON LIMITED IMPACT OPERATION.** At the next regularly scheduled meeting for which proper notice can be accomplished following the notice of decision, the Board may, at its discretion, decide to reconsider the Administrative Decision.

    a. **WRITTEN NOTICE OF BOARD RECONSIDERATION OF ADMINISTRATIVE DECISION.** Not less than fourteen (14) calendar days prior to the meeting, the Community Development Department shall provide written notice of possible reconsideration, by first-class mail, to the applicant and everyone who submitted written comments on the application.

    b. **BOARD RECONSIDERATION OF ADMINISTRATIVE DECISION.** If the Board decides to reconsider the Administrative Decision, the Board shall limit its consideration to review of the record of the Administrative Decision. No new evidence shall be accepted or considered by the Board. The Board may affirm, affirm with modifications, or reverse the decision. The Board shall provide a written decision that sets forth its findings.

11. **APPEAL OF ADMINISTRATIVE DECISION ON LIMITED IMPACT OPERATION TO BOARD.** Not more than fourteen (14) calendar days after the date of the notice of decision, any person aggrieved by the Administrative Decision on a Limited Impact Operation may appeal that decision to the Board in accordance with the process in Section 1-106 E.

D. **POTENTIALLY SIGNIFICANT IMPACT OPERATION PERMIT REVIEW.**

1. **REVIEW BY COMMUNITY DEVELOPMENT DEPARTMENT AND TRANSMITTAL TO PLANNING COMMISSION.** Upon determination that the application is complete and the Operation has been classified as a Potentially Significant Impact Operation, the Community Development Department shall transmit the application to

S Dominguez   Gunnison County, CO                615250
9/5/2012  3:09:05 PM                             Page 27 of 333
447                                              R 0.00 D 0.00

BLM_0053579

## SECTION 1-106:  PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

the Planning Commission and begin review of the application for compliance with County regulatory requirements.

2. **PLANNING COMMISSION WORK SESSION(S) AND SITE VISIT**.  The Planning Commission may hold work sessions and/or visit the location of the proposed Operation between the time that the application is determined to be complete and the date of the public hearing on the application.  Staff and consultants may also conduct site visits.

   a. The purpose of the work session and site visit is for the Planning Commission to initially familiarize itself with the proposed Operation.

   b. The Planning Commission shall not take any official action or make any decision with respect to the application at a work session or site visit.

   c. The Planning Commission shall hold work sessions at properly noticed and recorded meetings.

3. **REVIEW BY COUNTY CONSULTANT.**  The Community Development Department may submit the application for review and recommendation by consultants retained by the County with the necessary expertise to review the application.

4. **REVIEW BY REFERRAL AGENCIES.**  The Community Development Department may submit the application for review and recommendation to referral agencies and organizations including other County offices and departments, and municipal, state, or federal agencies having an interest in or authority over all or part of the proposed Oil and Gas Operation.  The referral review and comment period shall be twenty working days from the date that the application is determined to be complete. Comments not received from referral agencies within the comment period may be included in the staff report at the discretion of the Community Development Department.

5. **CONSULTATION WITH LOCAL GOVERNMENT DESIGNEE**.  The Community Development Department shall consult with the Local Government Designee.

S Dominguez  Gunnison County, CO          615250
9/5/2012 3:09:05 PM                      Page 28 of 333
447                                       R 0.00 D 0.00

BLM_0053580

## SECTION 1-106: PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

6. **COMMUNITY DEVELOPMENT DEPARTMENT STAFF REPORT.** The Community Development Department shall prepare a report based on review of the application, consideration of issues raised by referral agencies and consultants, terms and conditions imposed by COGCC and federal agencies, and any other available information on the record. The sufficiency of the staff report shall not give rise to the right of appeal or other cause of action.

    a. **CONTENTS OF STAFF REPORT.** The report shall:

        **(1)** Briefly describe the proposed Oil and Gas Operation and highlight issues raised by consultants and referral agencies.

        **(2)** Discuss issues, if any, identified by the Local Government Designee during any federal or COGCC review process for the proposed Oil and Gas Operation and how those issues were or may be resolved.

        **(3)** Discuss COGCC terms and conditions and other state or federal requirements that may have been imposed on the Oil and Gas Operation and the extent to which any of the terms, conditions, and requirements satisfy County Oil and Gas Operation Standards.

        **(4)** Discuss the impacts of the Oil and Gas Operation, the proposed mitigation, and whether it appears that each Oil and Gas Operation Standard has been satisfied.

        **(5)** Recommend conditions of approval for any Oil and Gas Operation Standard that appears not to have been fully satisfied, or recommend denial.

        **(6)** Include additional information that would be relevant to the decision of the Planning Commission.

    b. **DISTRIBUTION OF STAFF REPORT.** At least five (5) working days prior to the Planning Commission hearing, the Community Development Department

S Dominguez   Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 29 of 333
R 0.00 D 0.00

BLM_0053581

**SECTION 1-106: PERMIT REVIEW PROCEDURES
FOR OIL AND GAS OPERATIONS.**

shall submit the report to the applicant and to the Planning Commission, and a copy of the report shall be available for public review.

7. **SCHEDULE PUBLIC HEARING BY PLANNING COMMISSION.** Not more than forty-five (45) calendar days after the completeness determination, the Planning Commission shall conduct a hearing to consider the application. The notice of public hearing shall be prepared by the Community Development Department and shall include a description of the proposed Oil and Gas Operation and the date, time and location of the hearing.

   a. **PUBLICATION OF NOTICE OF HEARING.** Not less than fourteen (14) calendar days prior to the hearing, the Community Development Department shall publish the notice of public hearing in the County's official newspaper(s). The applicant shall be responsible for the cost of publication.

   b. **NOTICE OF HEARING TO ADJACENT PROPERTY OWNERS.** Not less than fourteen (14) calendar days prior to the hearing the applicant shall mail written notice of hearing to owners of real property within 1500 feet of the subject parcel when the Oil and Gas Operation is located on private land, and within 1500 feet of the Section (640 acres) in which the Oil and Gas Operation is located when the Oil and Gas Operation is located on public land. The list of property owners to be notified shall be compiled by the applicant using the most current list of property owners on file with the Office of the Gunnison County Assessor.

   c. **NOTICE OF HEARING TO OWNERS OF WATER RIGHTS.** Where the ownership information is available through the local water commissioner for the Colorado Division of Water Resources, not less than fourteen (14) calendar days prior to the hearing the applicant shall mail written notice of hearing to any owners of water rights in any ditches or other water structures likely to be affected by the proposed Oil and Gas Operation. The list of owners of such water rights shall be compiled by the applicant.

S Dominguez   Gunnison County, CO                615250
9/5/2012  3:09:05 PM                             Page 30 of 333
447                                              R 0.00 D 0.00

BLM_0053582

## SECTION 1-106: PERMIT REVIEW PROCEDURES FOR OIL AND GAS OPERATIONS.

      **d.**      **NOTICE OF HEARING TO OWNERS OF NON-ADJACENT PROPERTY WITHIN AN EXISTING SUBDIVISION, OR 35-ACRE TRACT DEVELOPMENT.** Not less than fourteen (14) calendar days prior to the hearing the applicant shall mail written notice of hearing to all of the surface landowners within any existing subdivision or 35-acre tract development that is located within 1500 feet of the subject parcel when the Oil and Gas Operation is located on private land, or within 1500 feet of the Section (640 acres) in which the Oil and Gas Operation is located when the Operation is located on public land. The list of property owners to be notified shall be compiled by the applicant using the most current list of property owners on file with the Office of the Gunnison County Assessor.

      **e.**      **CERTIFIED MAIL.** The applicant shall mail the written notice by certified mail, return receipt requested. The applicant shall submit a list of the property owners and owners of water rights and proof of mailing to the Community Development Department one week prior to the hearing.

      **f.**      **VALIDITY OF NOTICE.** The applicant is responsible for the accuracy of lists of property owners and water rights owners to whom notice is provided. If the applicant makes reasonable good faith efforts to accomplish the notice responsibilities identified above, then the failure of any property owner to receive notice shall not affect the validity of hearing or other conduct of the Commission.

**8.**      **PLANNING COMMISSION REVIEW AND PUBLIC HEARING ON POTENTIALLY SIGNIFICANT IMPACT OPERATION.**

      **a.**      **CONDUCT OF PUBLIC HEARING.** The Planning Commission shall conduct the public hearing in conformance with Section 1-109.

      **b.**      **DECISION BY PLANNING COMMISSION ON POTENTIALLY SIGNIFICANT IMPACT OPERATION.** The Planning Commission shall approve, approve with conditions, or deny the

S Dominguez   Gunnison County, CO      615250
9/5/2012  3:09:05 PM      Page 31 of 333
447      R 0.00 D 0.00



BLM_0053583

## SECTION 1-106: PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

application based upon the Oil and Gas Operation Standards. The Planning Commission decision shall include the following:

(1) **DESCRIPTION OF OIL AND GAS OPERATION.** Brief discussion of the Oil and Gas Operation;

(2) **ISSUES.** Description of issues raised by referral agencies and consultants;

(3) **CONDITIONS IMPOSED BY COGCC AND FEDERAL AGENCIES.** Description of terms, conditions and requirements imposed on the Oil and Gas Operation by COGCC and federal agencies;

(4) **IMPACTS AND MITIGATION.** Description of impacts of the Oil and Gas Operation, proposed mitigation, and whether each Oil and Gas Operation Standard has been satisfied; and

(5) **CONDITIONS OF APPROVAL.** Conditions of approval, if any, necessary to ensure compliance with all Oil and Gas Operation Standards.

9. **FAILURE TO MEET REVIEW AND DECISION DEADLINES.** If the Planning Commission is not meeting the application review and decision deadlines set forth in these Regulations, the applicant may make a written request to the County Manager that the hearing and decision process be removed to the Board.

a. **CONSIDER REQUEST FOR REMOVAL.** If the County Manager determines that the Planning Commission has failed to comply with deadline(s), the County Manager shall poll the Board as soon as possible after the removal request to determine whether the Board wishes to remove and hear the application.

b. **BOARD DECISION ON REQUEST TO REMOVE APPLICATION.**

S Dominguez   Gunnison County, CO                615250
9/5/2012  3:09:05 PM                             Page 32 of 333
447                                              R 0.00 D 0.00

BLM_0053584

## SECTION 1-106:  PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

**(1)** If the Board decides to remove and hear the application, the Planning Commission shall have no further jurisdiction over the application, and the County Manager shall schedule a hearing with the Board at the first meeting for which proper notice can be accomplished.

**(2)** If the Board decides not to remove and hear the application, the Planning Commission process will continue.

c. **BOARD HEARING AND DECISION ON APPLICATION.** If the Board decides to remove the application and make a decision on the application, the hearing shall be held in conformance Section 1-109 and notice shall be provided as follows:

**(1)** **PUBLICATION OF NOTICE OF HEARING.** Not less than fourteen (14) calendar days prior to the Board hearing, the Community Development Department shall publish the notice of public hearing in the County's official newspaper(s). The applicant shall be responsible for the cost of publication.

**(2)** **NOTICE OF HEARING TO ADJACENT PROPERTY OWNERS, WATER RIGHTS OWNERS, AND NON-ADJACENT OWNERS.** Not less than fourteen (14) calendar days prior to the Board hearing, the applicant shall mail written notice by certified mail, return receipt requested, of the Board hearing to all property owners and water rights owners who initially were notified of the planning commission hearing on the application.

**10.** **NOTICE OF PLANNING COMMISSION DECISION ON POTENTIALLY SIGNIFICANT IMPACT OPERATION.** Not more than ten (10) working days after the Planning Commission decision on the application for a Potentially Significant Impact Operation, the Community Development Department shall provide written notice of the decision to the applicant and the Board.

S Dominguez   Gunnison County, CO                615250
9/5/2012  3:09:05 PM                           Page 33 of 333
447                                            R 0.00 D 0.00

BLM_0053585

**SECTION 1-106: PERMIT REVIEW PROCEDURES
FOR OIL AND GAS OPERATIONS.**

11. **PLANNING COMMISSION DECISION BECOMES EFFECTIVE AFTER PERIOD FOR APPEAL.** The Planning Commission decision shall not become effective until fifteen (15) calendar days after the date of the decision. If the Board decides to hear an appeal of the Planning Commission decision, the Planning Commission decision is stayed pending the outcome of the appeal.

12. **APPEAL OF PLANNING COMMISSION DECISION ON POTENTIALLY SIGNIFICANT IMPACT OPERATION TO BOARD.** Not more than fourteen (14) calendar days after the date of the notice of decision, any person aggrieved by the Planning Commission decision on a Potentially Significant Impact Operation may appeal that decision to the Board in accordance with the process in Section 1-106 E.

E. **APPEAL PROCESS FOR DECISION ON OIL AND GAS OPERATIONS.** Any person aggrieved by the decision on a Limited Impact Operation or Potentially Significant Impact Operation may appeal that decision to the Board.

1. **WRITTEN NOTICE OF APPEAL.** Not more than fourteen (14) calendar days after the date of the notice of decision, the aggrieved party shall submit to the Community Development Department a written notice of appeal setting forth the reasons why the Board should affirm, affirm with modifications, or reverse the decision and the relief that is requested.

   a. **PAYMENT OF FEE FOR APPEAL SUBMITTAL.** The appellant(s) shall be responsible for all costs associated with the appeal process, including the cost of preparing the record of the initial decision-maker. Upon submittal of appeal, the appellant(s) shall deposit funds with the County, in an amount estimated to cover the costs of the appeal, to be adjusted as necessary upon completion of the appeal process. A schedule of fees is available through the Community Development Department.

   b. **PREPARATION OF RECORD.** Upon receipt of payment of the required fee, the Community Development Department shall prepare the record of the initial decision-maker.

S Dominguez   Gunnison County, CO          615250
9/5/2012  3:09:05 PM                       Page 34 of 333
447                                        R 0.00 D 0.00

BLM_0053586

2. **BOARD RESPONSE TO NOTICE OF APPEAL**

a **NOTICE OF BOARD MEETING TO CONSIDER APPEAL.**  Not less than fourteen (14) calendar days prior to the meeting, the Community Development Department shall provide written notice that the Board may consider the appeal, by first-class mail, to the applicant, the appellant, anyone who submitted written comments on the application, and anyone who testified if a public hearing was held by the Planning Commission.

b. **BOARD DECISION WHETHER TO HEAR APPEAL**. At the noticed meeting, the Board shall decide whether or not to hear the appeal.

c. **BOARD DECISION TO HEAR APPEAL ON RECORD OR TO ACCEPT ADDITIONAL EVIDENCE.**  If the Board decides to hear the appeal, the Board shall decide whether to hear the appeal on the existing record or to hear additional evidence. The Board's decision to accept additional evidence shall be based on the following considerations:

(1) **AVAILABILITY OF NEW TESTIMONY OR EVIDENCE AT TIME OF REVIEW BY THE DECISION-MAKING BODY.**  The anticipated additional testimony or evidence could not reasonably have been presented to the decision-maker at the time of the permit application review.

(2) **POTENTIAL EFFECT OF ADDITIONAL TESTIMONY OR EVIDENCE.**  The additional testimony or evidence would have a significant effect on the Board's decision on the appeal.

d. **RECORD REVIEW OF APPEAL AT NOTICED MEETING.**  If the Board decides to hear the appeal on the record, it may do so at the noticed meeting, without additional public notice, and shall limit its consideration to review of the existing record of the initial decision-maker and the written notice of appeal by the appellant.  No new evidence, argument, or testimony shall be accepted or considered.

S Dominguez   Gunnison County, CO          615250
9/5/2012  3:09:05 PM                        Page 35 of 333
447                                         R 0.00 D 0.00

BLM_0053587

**SECTION 1-106: PERMIT REVIEW PROCEDURES FOR OIL AND GAS OPERATIONS.**

e. **REVIEW OF APPEAL WITH ADDITIONAL EVIDENCE.** If the Board decides to hear the appeal with additional evidence, the Board shall conduct a public hearing on the appeal not more than twenty-one (21) calendar days after the Board's decision to hear the appeal with additional evidence. The Board shall make its decision on the appeal based on consideration of the record of the initial decision-maker and any evidence presented at the public hearing.

(1) **NOTICE OF PUBLIC HEARING ON APPEAL.** The notice of public hearing on the appeal shall be prepared by the Community Development Department and shall include a description of the proposed Oil and Gas Operation and the date, time and location of the hearing.

(a) **PUBLICATION OF NOTICE OF HEARING.** Not less than fourteen (14) calendar days prior to the hearing, the Community Development Department shall publish the notice of public hearing in the County's official newspaper(s). The appellant shall be responsible for the cost of publication.

(b) **NOTICE OF HEARING TO ADJACENT PROPERTY OWNERS.** Not less than fourteen (14) calendar days prior to the hearing the appellant shall mail written notice of hearing to owners of real property within 1500 feet of the subject parcel when the Oil and Gas Operation is located on private land, and within 1500 feet of the Section (640 acres) in which the Oil and Gas Operation is located when the Oil and Gas Operation is located on public land. The list of property owners to be notified shall be compiled by the appellant using the most current list of property owners on file with the Office of the Gunnison County Assessor.

S Dominguez   Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 36 of 333
R 0.00 D 0.00



BLM_0053588

## SECTION 1-106: PERMIT REVIEW PROCEDURES
## FOR OIL AND GAS OPERATIONS.

(c) **NOTICE OF HEARING TO OWNERS OF WATER RIGHTS.** Where the ownership information is available through the local water commissioner for the Colorado Division of Water Resources, not less than fourteen (14) calendar days prior to the hearing the appellant shall mail written notice of hearing to any owners of water rights in any ditches or other water structures likely to be affected by the proposed Oil and Gas Operation. The list of owners of such water rights shall be compiled by the appellant.

(d) **NOTICE OF HEARING TO OWNERS OF NON-ADJACENT PROPERTY WITHIN AN EXISTING SUBDIVISION, OR 35-ACRE TRACT DEVELOPMENT.** Not less than fourteen (14) calendar days prior to the hearing the appellant shall mail written notice of hearing to all of the surface landowners within any existing subdivision or 35-acre tract development that is located within 1500 feet of the subject parcel when the Oil and Gas Operation is located on private land, or within 1500 feet of the Section (640 acres) in which the Oil and Gas Operation is located when the Operation is located on public land. The list of property owners to be notified shall be compiled by the appellant using the most current list of property owners on file with the Office of the Gunnison County Assessor.

(e) **CERTIFIED MAIL.** The appellant shall mail the written notice by certified mail, return receipt requested. The appellant shall submit a list of the property owners and owners of water rights and proof of mailing to the Community Development Department one week prior to the

S Dominguez   Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 37 of 333
R 0.00 D 0.00

BLM_0053589

## SECTION 1-106:  PERMIT REVIEW PROCEDURES FOR OIL AND GAS OPERATIONS.

hearing.

    **(f)**    **VALIDITY OF NOTICE.**  The appellant is responsible for the accuracy of lists of property owners and water rights owners to whom notice is provided.  If the applicant makes reasonable good faith efforts to accomplish the notice responsibilities identified above, then the failure of any property owner to receive notice shall not affect the validity of hearing or other conduct of the Board

**3.**    **BOARD DECISION ON APPEAL.**  The Board may affirm, affirm with modifications, or reverse the appealed decision. The Board shall provide a written decision that sets forth its findings.  The original action shall be modified or reversed only if the appellant establishes that:

    **a.**    **THE BALANCE OF EVIDENCE DOES NOT SUPPORT THE ORIGINAL DECISION.**  Weighing all of the evidence presented, the balance of evidence in the record and additional evidence accepted by the Board, if any, does not support the original decision; or

    **b.**    **ACTION BY DECISION-MAKER WAS INAPPROPRIATE.**  The decision-maker exceeded its jurisdiction or abused its discretion.

## SECTION 1-107     COMPREHENSIVE OPERATIONAL PLAN (COPS)

[reserved]

## SECTION 1-108:    OIL AND GAS OPERATION STANDARDS.

For purposes of determining if an Oil and Gas Operation satisfies these standards, all proposed activities of the Operator within unincorporated Gunnison County shall be taken into consideration.  An Oil and Gas Operation shall comply with the following standards and criteria unless a waiver of standards for technical infeasibility or environmental protection is granted under Section 1-108T, or an Operational Conflict is determined pursuant to Section 1-108S.

S Dominguez  Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 38 of 333
R 0.00 D 0.00



BLM_0053590

## SECTION 1-108:  OIL AND GAS OPERATION STANDARDS.

615250
Page 39 of 333
R 0.00 D 0.00

S Dominguez  Gunnison County, CO
9/5/2012  3:09:05 PM
447

A.    **DRAINAGE AND EROSION CONTROL.**  The Oil and Gas Operation shall not cause significant erosion or sedimentation and shall be conducted in accordance with the drainage and erosion control plan.

B.    **ACCESS ROADS.**  All public access roads under the jurisdiction of Gunnison County shall be constructed and maintained in compliance with the *Gunnison County Standard Specifications for Road and Bridge Construction*, as necessary to accommodate the traffic and equipment related to the Oil and Gas Operation and emergency vehicles.  All other access roads shall be constructed in accordance with the guidelines in Attachment B, *Low-Volume Roads Engineering Best Management Practices Field Guide* and *Surface Operating Standards for Oil and Gas Development: Gold Book,* to be applied on a case by case basis as appropriate.

C.    **PUBLIC ROADWAY AND TRAFFIC IMPACTS**.

   1.    **INGRESS AND EGRESS.**  Ingress and egress points to public roads shall be located, maintained and improved to assure adequate capacity for efficient movement of existing and projected traffic volumes and to minimize traffic hazards.

   2.    **MAINTENANCE AGREEMENT OR FINANCIAL ASSURANCE.**  If the projected use of the public roads resulting from the Oil and Gas Operation will result in a need for an increase in roadway maintenance or snow removal, the County shall require the Operator to:  i) enter into an agreement whereby the Operator provides for private maintenance and snow removal, or reimburses the County for such increased costs; and/or ii) provide a bond or other financial assurance in an amount acceptable to the County to cover the costs of impacts to the roads.

D.    **WILDLIFE AND WILDLIFE HABITAT.**  The Oil and Gas Operation shall not cause significant degradation of wildlife or sensitive wildlife habitat.

E.    **LIVESTOCK AND LIVESTOCK GRAZING**.  The Oil and Gas Operation shall not cause significant impact to livestock, grazing permits, or grazing permittees.  Fencing or other agreements between private grazing operations and the Oil and Gas Operator may be used to satisfy this requirement.

F.    **RECREATION IMPACTS.**  The Oil and Gas Operation shall not

BLM_0053591

cause a significant degradation in the quality or quantity of recreational activities in the County such as hunting, hiking, skiing or related activities.

**G.**   **WATER BODY QUALITY.**  The Oil and Gas Operation shall not cause significant degradation of water quality  of affected water bodies.  Determination of effects of the Operation on water quality may include, but is not limited to the following considerations:

   **1.**   Applicable narrative and numeric water quality standards.

   **2.**   Changes in point and nonpoint source pollution loads.

   **3.**   Increase in erosion and sediment loads.

   **4.**   Changes in stream channel or shoreline stability.

   **5.**   Changes in stormwater runoff flows.

   **6.**   Changes in quality of ground water.

**H.**   **WELLS AND PUBLIC WATER SUPPLY WATER QUALITY.**

   **1.**   **WATER WELLS.**  The Oil and Gas Operation shall not cause significant degradation of the water quality or water pressure of any public or private water wells.

   **2.**   **PUBLIC WATER SUPPLY.**  The Oil and Gas Operation shall not cause significant degradation of the water quality of

**I.**   **WATER BODY BUFFERS.**  There are two water body buffers, an inner buffer and outer buffer.  An Oil and Gas Operation shall be in its entirety in compliance with the following water body buffer standards.

   **1.**   **INNER BUFFER.**  The inner buffer shall extend 150 feet, measured horizontally, from the nearest high water mark of any down-gradient surface water body to the edge of any disturbed area

      **a.**   No feature of an Oil and Gas Operation shall be located within the inner buffer except linear features, or a new well on an existing pad.  This prohibition cannot be waived on the basis of technical infeasibility or environmental protection.

S Dominguez   Gunnison County,  CO
9/5/2012  3:09:05 PM
447

615250
Page 40 of 333
R 0.00 D 0.00

BLM_0053592

<u>SECTION 1-108:  OIL AND GAS OPERATION STANDARDS</u>.

    **b.**    To the maximum extent feasible, linear features shall be installed to avoid crossing water bodies or being located within the inner buffer.  Leak detection, secondary containment, or other mitigation, as appropriate, shall be incorporated into pipelines that are located within the inner buffer.

**2.**    **OUTER BUFFER.**  The outer buffer shall extend from 150 to 500 feet, measured horizontally, from  the high water mark of any downgradient surface water body to the edge of any disturbed area.   The following conditions shall apply to features of an Oil and Gas Operation located in the Outer Buffer.  These conditions are not subject to a waiver on the basis of technical infeasibility or environmental protection.

    **a.**    Pad design to include most current accepted land use and environmental best management practices including berms on the downgradient side of the well pad, treatment of run-off during construction using a perimeter control such as a silt fence or sediment control log, providing a sediment trap or series of check dams, and protecting existing vegetation;

    **b.**    "Run-on diversion" clear water ditch on the upgradient perimeters;

    **c.**    Twenty-four (24) inch berm along the well pad edge nearest the affected water body and extending no less than 1/3 of the perimeter of the well pad upslope;

    **d.**    Well pad sloped toward the cut side of the construction;

    **e.**    Cut and fill slopes matted and seeded with native seed when construction is complete;

    **f.**    Double row of silt fences between edge of pad and each affected water body;

    **g.**    Daily inspection and  update of inspection log by Operator during construction, drilling and recompletion of a well and well sites;

S Dominguez  Gunnison County, CO
9/5/2012 3:09:05 PM
447

615250
Page 41 of 333
R 0.00 D 0.00

BLM_0053593

## SECTION 1-108:  OIL AND GAS OPERATION STANDARDS.

h.   Conventional Reserve Drilling Pit allowed only with a Closed Loop System with dry fines cutting pit.  The Conventional Reserve Drilling Pit, including its liner and contents, shall be removed within ninety (90) days of well completion;

i.   Cuttings shall be stored in steel run off containers or placed in a lined dry fines cuttings pit;

j.   Liners and drill cuttings shall be buried in a permitted facility;

k.   Produced water pits are prohibited;

l.   Fracturing flowback pits are prohibited;

m.   Secondary containment shall be provided for hazardous materials;

n.   Spill response apparatus must be at the well pad at all times;

o.   No features shall be located on a slope that, on the average, is greater than forty percent (40%);

p.   All features shall be set back as far as practicable from any water body;

q.   Post drilling, all lighting associated with the Operation will be shielded to prevent direct visibility of the source of light from off-site; and

r.   Additional site-specific requirements may be imposed by the County as necessary to protect water bodies.

J.   **PITS.** All pits shall be lined with an impermeable membrane.  Once the pit has been closed, the liner and its contents shall be removed and disposed of at a facility authorized to accept the material.

K.   **MANAGEMENT OF HAZARDOUS MATERIALS.** All Oil and Gas Operations shall meet the following requirements for management of hazardous materials:

1.   **COMPLIANCE WITH STATE AND FEDERAL REGULATIONS.** At a minimum, all hazardous materials

S Dominguez   Gunnison County,  CO
9/5/2012  3:09:05 PM
447

615250
Page 42 of 333
R 0.00 D 0.00

BLM_0053594

shall be stored and used pursuant to applicable state and federal hazardous materials regulations.

2. **STORAGE NEAR WATER BODIES RESTRICTED.** Except for hazardous materials currently being used as an integral component of drilling or operation of a well, hazardous materials shall not be stored within 300 feet of any water body.

3. **SPILL PREVENTION.** Measures shall be designed and implemented to prevent spilled fuels, lubricants or other hazardous materials from entering a water body, including ground water, during construction or operation of equipment and/or a facility.

4. **MACHINE MAINTENANCE.** Routine field maintenance of vehicles or mobile machinery shall not be performed within 300 feet of any water body.

5. **FUEL STORAGE AREAS.** Containment measures shall be provided for all fuel storage areas to prevent release to any water body. Inventory management or leak detection may be required.

6. **HAZARDOUS MATERIALS STORAGE AREAS.** Containment measures shall be provided for all hazardous materials storage areas to prevent release to any water body. Inventory management or leak detection may be required.

7. **DISPOSAL OF HYDRAULIC FRACTURING FLUIDS.** The Operator shall demonstrate the ability to and shall dispose of all hydraulic fracturing fluids in accordance with the Hydraulic Fluid Fracturing Disposal Plan.

L. **RESPONSE AND REPORTING OF SPILLS AND RELEASES.** The Operator shall demonstrate the capacity to and agree to comply with the following spill and release response and reporting requirements during the life of the permit:

1. **SPILL AND RELEASE RESPONSE.** The Operator shall demonstrate the ability to control and contain all spills and releases of E&P waste, including produced fluids, immediately upon discovery. Impacts resulting from spills and releases shall be investigated and cleaned up as soon

S Dominguez  Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 43 of 333
R 0.00 D 0.00

BLM_0053595

## SECTION 1-108: OIL AND GAS OPERATION STANDARDS.

as practicable.

2. **SPILL AND RELEASE REPORTING REQUIREMENTS.**

    a. **SPILL/RELEASE REPORT REQUIRED.** For all spills and releases reportable under COGCC Rule 906, within ten (10) days after discovery Operator shall submit to the County Manager a copy of the spill and release report (COGCC Form 19), including the topographic map showing location of the spill and any information relating to initial mitigation, site investigation, and remediation that accompany the report.

    b. **SPILLS AND RELEASES EXCEEDING TWENTY (20) BARRELS.** For spills and releases which exceed twenty (20) barrels of an E&P, the spill and release shall be verbally reported to the County Manager and/or the Local Government Designee as soon as practicable, but not more than twenty-four (24) hours after discovery.

    c. **SPILLS AND RELEASES IMPACTING STATE WATERS, RESIDENTIAL OR OCCUPIED STRUCTURES, AND LIVESTOCK.** Spills and releases of any size which impact or threaten to impact any waters of the state, residence or occupied structure, livestock, or public byway shall be verbally reported to the County Manager as soon as practicable, but nor more than twenty-four (24) hours after discovery.

    d. **SPILLS AND RELEASES IMPACTING WATER SUPPLY.** Spills and releases of any size which impact or threaten to impact any water supply area shall be verbally reported to the County Manager immediately after discovery.

    e. **SPILLS AND RELEASES IMPACTING SURFACE WATER INTAKE.** Spills and releases that impact or threaten a surface water intake shall be verbally reported to the County Manager immediately after discovery.

    f. **CHEMICAL SPILLS AND RELEASES.** Chemical

S Dominguez   Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 44 of 333
R 0.00 D 0.00

BLM_0053596

spills and releases shall be reported in accordance with applicable state and federal laws, including the Emergency Planning and Community Right To Know Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Oil and Pollution Act, and the Clean Water Act, as applicable.

3. **SURFACE OWNER NOTIFICATION AND CONSULTATION.**  The Operator shall notify the affected surface owner or the surface owner's tenant of spills and releases in conformance with COGCC Rule 906 c.

4. **REMEDIATION OF SPILLS AND RELEASES.**  When threatened or actual significant adverse environmental impacts on any air, water, soil or other environmental resources from a spill and release exists, or when necessary to ensure compliance with state water quality standards and classifications, a copy of any COGCC approved Site Investigation and Remediation Work Plan (COGCC Form 27), shall be submitted to the County Manager and/or Local Government Designee.

M. **CULTURAL AND HISTORIC RESOURCES.**  The Oil and Gas Operation shall not cause significant degradation of cultural or historic resources.

N. **WILDFIRE HAZARD.**  The Oil and Gas Operation shall not cause a significant risk of wildfire hazard.

O. **GEOLOGIC HAZARDS.**  The Oil and Gas Operation shall not cause a significant risk of geologic hazards.

P. **PIPELINE STANDARDS.**  [reserved]

Q. **IMPACT MITIGATION COSTS.**  The Operator shall bear the proportionate cost of mitigating the impacts caused by the Oil and Gas Operation.

R. **EMERGENCY RESPONSE.**  The Oil and Gas Operations shall not cause an unreasonable risk of emergency situations such as explosions, fires, gas or water pipeline leaks or ruptures, hydrogen sulfide or other toxic gas emissions, and hazardous material vehicle accidents or spills.

S. **OPERATIONAL CONFLICT WAIVER.**  The County may waive one

S Dominguez   Gunnison County, CO          615250
9/5/2012  3:09:05 PM                Page 45 of 333
447                                R 0.00 D 0.00

BLM_0053597

or more of the Oil and Gas Operation Standards set forth in this Section 1-108 in accordance with the following procedure:

1. **STATE AND FEDERAL OPERATIONAL CONFLICT DEFINED.**

   a. **STATE OPERATIONAL CONFLICT.** A state operational conflict exists if the application of the County standard(s) to the conduct of the Oil and Gas Operation would:

      **(1)** Conflict with a state oil and gas statute, regulation or other requirement; and

      **(2)** Materially impede or destroy the state's interest in the responsible, balanced development, production and utilization of oil and gas consistent with protection of public health, safety and welfare, including protection of the environment and wildlife resources.

   b. **FEDERAL OPERATIONAL CONFLICT.** A federal operational conflict exists if compliance with both the federal statute, regulation or other requirement and the County standard(s) is a physical impossibility, or when the application of the County standard(s) to the Oil and Gas Operation would stand as an obstacle to the accomplishment of the full purposes and objectives of Congress expressed in the federal statute, regulation or other requirement.

2. **REQUEST FOR OPERATIONAL CONFLICT WAIVER.** The applicant may make a written request to the Community Development Department for an Operational Conflict Waiver hearing with the Board of County Commissioners at any time during the Oil and Gas Permit application review process, but no later than fourteen (14) calendar days following a final decision on the Oil and Gas Operation.

   a. **SCHEDULE PUBLIC HEARING BY BOARD.** The Community Development Department shall schedule a public hearing by the Board at the next regularly scheduled meeting for which proper notice can be accomplished following receipt of the Request for Operational Conflict Waiver.

S Dominguez  Gunnison County, CO                615250
9/5/2012 3:09:05 PM                        Page 46 of 333
447                                         R 0.00 D 0.00

BLM_0053598

SECTION 1-108:  OIL AND GAS OPERATION STANDARDS.

b. **NOTICE OF PUBLIC HEARING ON REQUEST FOR OPERATIONAL CONFLICT HEARING.**  The notice of public hearing on Request for Operational Conflict Waiver shall be prepared by the Community Development Department and shall include a description of the proposed Oil and Gas Operation, description of the operational conflict waiver that has been requested, and the date, time and location of the hearing.

    (1) **PUBLICATION OF NOTICE OF HEARING.** Not less than fourteen (14) calendar days prior to the hearing, the Community Development Department shall publish the notice of public hearing in the County's official newspaper(s). The applicant shall be responsible for the cost of publication.

    (2) **NOTICE OF HEARING TO ADJACENT PROPERTY OWNERS.** Not less than fourteen (14) calendar days prior to the hearing the applicant shall mail written notice of hearing to owners of real property within 1500 feet of the subject parcel when the Oil and Gas Operation is located on private land, and within 1500 feet of the Section (640 acres) in which the Oil and Gas Operation is located when the Oil and Gas Operation is located on public land.  The list of property owners to be notified shall be compiled by the applicant using the most current list of property owners on file with the Office of the Gunnison County Assessor.

    (3) **NOTICE OF HEARING TO OWNERS OF WATER RIGHTS.**  Where the ownership information is available through the local water commissioner for the Colorado Division of Water Resources, not less than fourteen (14) calendar days prior to the hearing the applicant shall mail written notice of hearing to any owners of water rights in any ditches or other water structures likely to be affected by the proposed Oil and Gas Operation.  The list of owners of such water rights shall be compiled

S Dominguez   Gunnison County, CO    615250
9/5/2012  3:09:05 PM    Page 47 of 333
447    R 0.00 D 0.00

BLM_0053599

## SECTION 1-108: OIL AND GAS OPERATION STANDARDS.

by the applicant.

**(4)** **NOTICE OF HEARING TO OWNERS OF NON-ADJACENT PROPERTY WITHIN AN EXISTING SUBDIVISION, OR 35-ACRE TRACT DEVELOPMENT.** Not less than fourteen (14) calendar days prior to the hearing the applicant shall mail written notice of hearing to all of the surface landowners within any existing subdivision or 35-acre tract development that is located within 1500 feet of the subject parcel when the Oil and Gas Operation is located on private land, or within 1500 feet of the Section (640 acres) in which the Oil and Gas Operation is located when the Operation is located on public land. The list of property owners to be notified shall be compiled by the applicant using the most current list of property owners on file with the Office of the Gunnison County Assessor.

**(5)** **CERTIFIED MAIL.** The applicant shall mail the written notice by certified mail, return receipt requested. The applicant shall submit a list of the property owners and owners of water rights and proof of mailing to the Community Development Department one week prior to the hearing.

**(6)** **VALIDITY OF NOTICE.** The applicant is responsible for the accuracy of lists of property owners and water rights owners to whom notice is provided. If the applicant makes reasonable good faith efforts to accomplish the notice responsibilities identified above, then the failure of any property owner to receive notice shall not affect the validity of hearing or other conduct of the Board.

**c.** **DETERMINATION ON OPERATIONAL CONFLICT BY BOARD.** If the Board determines that the applicant has met its burden of proof with a preponderance of evidence that application of the standard(s) to the Oil and Gas Operation will result in an operational conflict with a state or federal statute,

Gunnison County Regulations for Oil and Gas Operations                    43

BLM_0053600

SECTION 1-108:  OIL AND GAS OPERATION STANDARDS.

regulation, or other requirement, the Board may waive the standard(s) to the extent necessary to avoid the operational conflict.  The Board may impose conditions that are necessary to minimize any negative impacts of the waiver.

T.     **WAIVER OF STANDARDS FOR TECHNICAL INFEASIBILITY OR ENVIRONMENTAL PROTECTION.**  At any time during the application process the County may waive one or more of the Oil and Gas Operation Standards set forth in this Section 1-108 in accordance with the following procedures, if the Operator demonstrates to the satisfaction of the County the following:

1.     **TECHNICAL INFEASIBILITY.**

   a.     **NO ECONOMICAL TECHNOLOGY.**  There is no economical technology commercially available to conduct the Oil and Gas Operation in compliance with the standard(s); and

   b.     **PROTECTION OF PUBLIC HEALTH, SAFETY, WELFARE AND THE ENVIRONMENT.**  The conduct of the Oil and Gas Operation if the standard(s) is waived will be protective of public health, safety, welfare and the environment

2.     **ENVIRONMENTAL PROTECTION.**  Protection of public health, safety welfare and the environment will be enhanced by an alternate approach not contemplated by the standard.

3.     **DETERMINATION ON REQUEST FOR WAIVER.**  The decision-maker shall consider a request for waiver during its review and final decision on the Oil and Gas Operation.  The decision-maker may impose conditions on the waiver that are necessary to minimize any negative impacts.

**SECTION 1-109    CONDUCT OF PUBLIC HEARING.**

A.     **HEARING PROCESS.**  A public hearing shall be conducted in accordance with the following process:

1.     **RIGHTS OF ALL PERSONS.** Any person may appear at a public hearing and submit evidence, including oral testimony, either individually or as a representative of an organization.

S Dominguez   Gunnison County,  CO            615250
9/5/2012  3:09:05 PM                       Page 49 of 333
447                                          R 0.00 D 0.00

BLM_0053601

615250
Page 50 of 333
R 0.00 D 0.00



S Dominguez  Gunnison County, CO
9/5/2012  3:09:05 PM
447

Comment may also be submitted in written form before or during the hearing, or within a period of time after the hearing has closed as designated by the review body chairperson.

2.      **ORDER OF PROCEEDINGS.** The order of the proceedings shall be as follows:

   a.      **INTRODUCTION BY STAFF AND CONFIRMATION OF ADEQUATE PUBLIC NOTICE.**  The Community Development Department shall introduce the matter before the decision-making body and report whether or not the required notice has been accomplished.

   b.      **PROPONENT'S PRESENTATION.** The proponent shall make an oral presentation.

   c.      **STAFF PRESENTATION.**  The staff shall present the staff report.

   d.      **QUESTIONS BY DECISION-MAKING BODY.** The decision-making body may ask questions of the staff, or the proponent.

   e.      **PUBLIC COMMENTS.**     The public may make comments regarding the matter under consideration. The chairperson conducting the public hearing shall set reasonable time limits for comments.   If any comment is so limited, the person offering that comment shall have an opportunity to enter it into the record in writing at the public hearing.

   f.      **PROPONENT RESPONSE.** The proponent may respond to any comments made by the public or Community Development Department, or questions raised by the decision-making body.

   g.      **COMMUNITY DEVELOPMENT DEPARTMENT RESPONSE.**     The Community Development Department may respond to any statement made by the proponent, the public, or the decision-making body.

3.      **CLOSE OF PUBLIC TESTIMONY PORTION OF HEARING**.

   a.      Once the public testimony portion of the hearing has

BLM_0053602

been closed, no additional comments or testimony may be considered by the decision-making body, other than answers from the staff to questions by the decision-making body.

**b.** If at any time after the close of public testimony, but before the final decision, the decision-making body wishes to consider additional information or testimony from the applicant, staff, or any other person, the decision-making body shall reopen the public testimony portion of the hearing to such information or testimony.

**4.** **DELIBERATION.** After the public testimony portion of the hearing has been closed, the decision-making body shall consider whether or not the applicable criteria have been satisfied. The decision-making body may direct the staff to prepare a draft decision document memorializing its decision for consideration at its next meeting.

**5.** **CONTINUANCE OF PUBLIC HEARING.** The decision-making body may continue the public hearing if it determines that additional time is necessary to consider new information and to allow interested parties to address that information, or to respond to concerns raised during the hearing.

**a.** The decision-making body shall continue the hearing to a fixed date and time, and for a specific purpose.

**b.** Except for purposes of completing the Order of Proceedings set forth in Section 1-109 A. 2. or to complete its deliberations under Section 1-109 A.4., the decision-making body shall not continue the hearing more than one time without the proponents consent.

**c.** The limit on continuance of a hearing shall not apply to the deliberative phase. The decision-making body may continue the hearing as many times as reasonably necessary to give complete and full consideration to its decision on the request.

**6.** **RECORD OF PUBLIC HEARING.** The decision-making body shall record the public hearing by any appropriate means, including audiotape or videotape, and written

S Dominguez   Gunnison County, CO
9/5/2012  3:09:05 PM
447

615250
Page 51 of 333
R 0.00 D 0.00

BLM_0053603