provided by overnight express mail, pursuant to Section 8-104: *Emergency Exceptions*), to the following persons:

1. **OWNERS OF ADJACENT PROPERTIES**. All owners of surface property rights immediately adjacent to each boundary of the entire parcel, including owners of adjacent agricultural operations. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel.

TABLE 1: TIMING OF NOTICE

| | COMMUNITY DEVELOPMENT DIRECTOR | HEARING OFFICER | BOARD | PLANNING COMMISSION | BOARD OF ADJUSTMENTS |
|---|---|---|---|---|---|
| PUBLICATION OF NOTICE IN NEWSPAPER** | N/A | 30 days | 30 days (15 days for Emergency Exception) | 15 days | 15 days |
| MAILING OF NOTICE TO ADJACENT LANDOWNERS* | 15 days*** | 30 days | 30 days (15 days for Emergency Exception) | 15 days | 15 days |
| POSTING OF SIGN ON PROPERTY | 15 days*** | 30 days | 30 days (15 days for an Emergency Exception) | 15 days | 15 days |

\*   Responsibility of the applicant.
\** Responsibility of the Community Development Department
\***Administrative Review Project that is a commercial or industrial use

2. **OWNERS OF NON-ADJACENT PROPERTY WITHIN AN EXISTING SUBDIVISION, OR 35-ACRE TRACT DEVELOPMENT.** Owners of surface property rights within a subdivision or within a 35-acre tract development in which the land use change is proposed shall be notified as follows:

   a. **PERSONS AFFECTED BY ALTERATIONS OF RECORDED PLAT, OR CHANGE IN CHARACTER OF ALL OR PART OF AN EXISTING DEVELOPMENT.** When the proposed land use change will alter a recorded plat, or affect the character of all or a portion of the existing development (such as a commercial use proposed in a residential area of a subdivision), all surface property owners within the existing development within which the proposed land use change is located shall be notified.

   b. **HOMEOWNERS OR PROPERTY OWNERS ASSOCIATION.** When the land use change is proposed on a parcel within an existing development, and a homeowners or property owners association exists for that development, the association shall be notified.

   c. **OWNERS OF MINERAL RIGHTS.** As applicable, all owners and lessees of mineral rights within the property proposed for the land use change (excluding the applicant), pursuant to C.R.S. 31-23-215. Records of the Gunnison Assessor's office may not include the listings of these owners.

   d. **OWNERS OF WATER RIGHTS**. As available in records of the Colorado Division of Water Resources, the owners of water rights in any ditches that would be impacted by the proposed land use change.

   e. **OWNERS WITHIN AN AREA PROPOSED AS A PARTICULAR GEOGRAPHIC AREA SUBJECT TO SPECIALIZED LAND USE REGULATIONS.** When the hearing is for the purpose of obtaining public input regarding the potential creation of a particular geographic area subject to specialized land use regulations, pursuant to Section 1-110: *Process for Designating Special Areas*, all property owners within the proposed boundaries of that proposed geographic area shall be notified.

   f. **PERSONS EXPRESSING INTEREST IN THE APPLICATION.** When persons have submitted their names to the Community Development Department because they are interested in an

BLM_0053951

application for which a hearing has been conducted, the Community Development Department shall send them notice of any additional hearings by first class, postage-paid mail to the address they have provided. This notice is a courtesy to the public and the failure of anyone to receive it does not invalidate any hearing. Each of those persons is responsible for updating their address to the Department.

**c. SOURCE OF NAMES OF PROPERTY OWNERS RECEIVING NOTICE.** The list of property owners to whom notice is mailed shall be compiled by the applicant by using the most current list of property owners on file with the Office of the Gunnison County Tax Assessor. The list of owners of water rights in ditches that would be affected by the development shall be compiled by the applicant by contacting the local water commissioner who represents the Colorado Division of Water Resources. Owners of mineral rights may not be listed in the Gunnison County Assessor's Office; the burden is on the applicant to obtain complete, accurate and current names and addresses for property owners to whom notice shall be given.

**d. POSTING OF NOTICE.** The applicant shall be responsible for posting the public hearing notice on the Project property. The applicant shall obtain a copy of the notice and a posting board from the Community Development Department, attach the notice to the posting board and cover it with a waterproof material through which the notice is clearly visible.

   **1. SIGN LOCATION.** The applicant shall post the sign in a conspicuous location on the Project property that is readily visible from a road adjoining or serving the area of the proposed development. Where the property does not have frontage on a public or private road, the sign shall be erected on the nearest road right-of-way, with a notation stating the direction and distance to the land on which the Project is proposed, or another location approved by the Community Development Department so it is visible to the greatest number of people.

   **2. POSTING BOARD.** The dimensions of the posting board shall be no smaller than 24 inches wide by 36 inches high.

   **3. PLACE OF POSTING.** The post, fence, structure or other location to which the public hearing notice is posted shall be sturdy and visible.

**3. VALIDITY OF NOTICE.** If the applicant and the Community Development Department accomplish the responsibilities listed above in good faith, then the failure of any property owner to receive notice shall not affect the validity of the hearing. By way of example, notice shall not be considered invalid because of unrecorded or subsequent transfers of title, an uncertainty concerning ownership information that is not discernible from the tax assessment rolls, or due to the failure of a sign to remain in place after the notice was properly posted.

**4. PROOF OF NOTICE.** A week before the public hearing, the applicant is required to provide the Community Development Department with an affidavit certifying that notice was accomplished pursuant to this Section. A photograph of the posted sign and a copy of the return receipts demonstrating to whom notice was mailed shall be attached to the affidavit.

**5. CONTENTS OF NOTICE.** The notice for the hearing shall clearly state information sufficient to give adequate notice to people whose rights could be affected by the proposed land use. The wording used in the notice shall be reasonably understandable by a person who is not a lawyer or planning professional, and shall contain at least the following information:

**a. REVIEW OR DECISION-MAKING BODY CONDUCTING THE HEARING.** The name of the review or decision-making body who will conduct the hearing.

**b. LOCATION OF HEARING.** The location of the public hearing, by name of building, if appropriate, and address.

**c. DATE AND TIME OF HEARING.** The date and time of day when the hearing will be conducted.

**d. TYPE OF APPLICATION.** A statement specifying the type of application being reviewed.

**e. INVITATION TO INTERESTED PERSONS TO ATTEND.** An invitation to interested persons to attend the hearing.

**f. DESCRIPTION OF PROJECT.** A brief description of the proposed Project that reflects the description submitted in the application.

**g. PROPERTY LOCATION.** A description of the location of the subject property by reference to known landmarks, road intersections, existing towns or developments, addresses or other similar methods; lot, block and filing number if in an approved subdivision; or quarter-section, township and range descriptions.

BLM_0053952

    **h.**   **LOCATION OF ADDITIONAL INFORMATION CONTACT PERSON.** The address and telephone number of the Community Development Department, stating that this is where the full details of the application may be obtained and is where written comments can be directed before the public hearing.

    **i.**   **CONTACT FOR ACCESSIBILITY.** A request for notification to the County of special accessibility needs of persons attending the hearing, pursuant to the requirements of the *American Disabilities Act*.

# SECTION 3-113: CONDUCT OF PUBLIC HEARING

**A.**  **HEARING PROCESS.** A public hearing shall be conducted in accordance with the following process:

    **1.**  **RIGHTS OF ALL PERSONS.** Any person may appear at a public hearing and submit evidence, including oral testimony, either individually or as a representative of an organization. Comment may also be submitted in written form before or during the hearing, or within a period of time after the hearing has closed, which shall be announced by the review body chairperson.

    **2.**  **ORDER OF PROCEEDINGS.** The order of the proceedings shall be as follows:

        **a.**   **CONFIRMATION OF ADEQUATE PUBLIC NOTICE.** The Community Development Department shall report whether or not adequate notice has been accomplished, pursuant to Section 3-112: *Notice of Public Hearing.*

        **b.**   **APPLICANT'S PRESENTATION.** At his/her option, the applicant may make an oral or a written presentation that informs persons at the hearing of the nature, location, and scope of the proposed land use change, including planned or proposed future phases where applicable. This presentation shall not be made by County staff or consultants, and may be waived by the Chairperson if there are no members of the public at the hearing, and the proponent has previously explained the proposed development to the review body conducting the hearing.

        **c.**   **COMMUNITY DEVELOPMENT DEPARTMENT COMMENTS.** The Community Development Department may discuss specific standards of this *Resolution* that apply to the proposed Project; describe the required process of review; iterate public comments that have been received by the Department on the application, cite specific submittals, plans or actions that are required in order for the application to comply with the applicable standards and provide any other relevant information concerning the application.

        **d.**   **QUESTIONS BY REVIEW BODY.** The review body may ask questions of the Community Development Department, or the applicant, or anyone else who is present.

        **e.**   **PUBLIC COMMENTS.** Public comments shall be heard. Written comments that have been received before the hearing shall be reported by the Community Development Department and acknowledged to be part of the hearing record.

            **1.**  **EX PARTÉ COMMUNICATIONS.** Members of decision-making bodies, and applicants and their agents shall not engage in ex parté communication about applications under review or reasonably anticipated to come under review. If an ex parté communication is attempted by telephone, in person, by FAX or other means outside of a regularly scheduled meeting, the member of the decision-making body involved shall first attempt to stop the party from the prohibited behavior, then document the communication and notify the Community Development Director by telephone or in written form. The Community Development Director shall then enter that documentation into the public record. The member or the Community Development Director shall report that documentation at the next meeting or hearing on the subject application. No ex parté communication shall be considered by a decision-making body, or any of its members, in making a decision on a Land Use Change Permit matter.

        **f.**   **APPLICANT RESPONSE.** The applicant may respond to any comments made by the public, or the Community Development Department, or the review body.

        **g.**   **COMMUNITY DEVELOPMENT DEPARTMENT RESPONSE.** The Community Development Department may respond to any statement made by the applicant, the public, or the review body.

    **3.**  **TIME LIMITS FOR TESTIMONY.** The chairperson conducting the public hearing shall set reasonable time limits for testimony or presentation of evidence. If any testimony or evidence is so limited, the person offering that testimony or evidence shall have an opportunity to enter it into the record in writing at the public hearing.

BLM_0053953

4. **CONTINUANCE OF PUBLIC HEARING.** At the conclusion of the hearing, the body conducting it may continue the public hearing to a fixed date and time. An applicant shall have the right to request, and be granted on a showing of good cause, one continuance of each required hearing. All subsequent continuances shall be granted at the discretion of the body conducting the public hearing and upon a finding that good cause has been shown for the continuance.

5. **CLOSURE OF PUBLIC HEARING AND ACCEPTANCE OF WRITTEN TESTIMONY AFTER CLOSURE.** If the hearing is not continued, it shall be closed. At the close of the hearing, the chairperson of the body conducting the hearing may leave the record open for a defined period of time during which only written comment will continue to be accepted. If no such time period is defined and announced by the chairperson, no further written comment shall be accepted beyond the time the hearing is closed.

   a. **NO EX PARTÉ COMMENTS ACCEPTED.** The chairperson shall announce that there shall be no ex parté comments accepted by members of the review or decision-making body after closure of the hearing.

   b. **ALL WRITTEN COMMENTS RECEIVED BECOME PART OF RECORD.** All written comments, along with supporting data and references, received within the specified comment period shall be made a part of the record and shall be available for public inspection at the Community Development Department when the hearing was conducted by the Planning Commission or the Board of Adjustments. When the hearing was conducted by the Board, copies of all such comments shall be available at the Administration Office. All timely written submittals shall be made a part of the record of the proceeding.

6. **RECORD OF PUBLIC HEARING.** The body conducting the public hearing shall record the public hearing by any appropriate means, including audiotape or videotape, and written minutes. The written and taped record of oral proceedings, including testimony and statements of personal opinions, the minutes of the hearing and other meetings of the review body, all applications, exhibits, and papers submitted in any proceeding before the decision-making, administrative, or review body, the Community Development Department's report, and the decisions of the review and decision-making bodies, shall constitute the record. Those materials, on presentation to the County, shall become the public property of the County and shall not be removed without proper authorization.

   a. **MATERIALS ARE PART OF PUBLIC RECORD, AVAILABLE TO PUBLIC.** Said materials shall be public information, available to the public at the Community Development Department during regular business hours. The Department, as official custodian of those records, may make such rules with reference to the inspection of such records as are reasonably necessary for the protection of such records and the prevention of unnecessary interference with the regular discharge of the duties of the Community Development Department.

## SECTION 3-114: ACTIONS BY RECOMMENDING AND DECISION-MAKING BODIES

An application shall receive a recommendation and/or decision pursuant to the applicable level of Project impact classification, pursuant to Article 4: *Administrative Review Projects That Do Not Require Land Use Change Permits*; Article 5: *Administrative Review Projects That Require Land Use Change Permits*; Article 6: *Minor Impact Projects*, and Article 7: *Major Impact Projects*.  The record of action shall be finalized and recorded pursuant to each of those Articles. The role of recommending and decision-making bodies in each process is illustrated in Appendix Table 2: *Summary of Review Processes*.

BLM_0053954

# ARTICLE 4:
# ADMINISTRATIVE REVIEW PROJECTS THAT DO NOT REQUIRE LAND USE CHANGE PERMITS

## SECTION 4-101: PURPOSE

The purpose of this Article is to identify Administrative Review Projects that do not require Land Use Change Permits.

**A.  INITIAL CLASSIFICATION OF IMPACT AND REASONS FOR A HIGHER LEVEL OF REVIEW.** If the Community Development Department determines during review of a proposed use, including an application for a Building Permit, that the proposed use exceeds the classification criteria of Administrative Review Project listed within this Section, the criteria detailed in Section 3-111: B. 1: *Additional Criteria* shall be considered and the appropriate review process and submittals for an Administrative Review Project that requires a Land Use Change Permit, or a Minor or Major Impact Project shall be required.

## SECTION 4-102: PROJECTS CLASSIFIED AS ADMINISTRATIVE REVIEW PROJECTS THAT DO NOT REQUIRE LAND USE CHANGE PERMITS

The following Administrative Review Projects require a Building Permit, an Individual Sewage Disposal System Permit, an Access Permit, Reclamation Permit, or other County permit, but shall not require an additional Land Use Change Permit; such Projects shall comply with all the other requirements of this *Resolution*:

**A.  EXEMPT PRIMARY RESIDENCE SMALLER THAN 10,000 SQ. FT.** A primary residence smaller than 10,000 sq. ft. that is exempted by Section 1-106: *Partially Exempted Land Use Changes*. The residence may include an attached garage, which shall be calculated in the total square footage allowed for the residence.

**B.  SECONDARY STRUCTURES AND USES.** The following secondary structures and uses, pursuant to Section 9-101: C: *Secondary Structures and Uses That Do Not Require a Land Use Change Permit:*

  **1.  BARNS AND OTHER AGRICULTURAL BUILDINGS ON AN AGRICULTURAL OPERATION.** A barn or other agricultural building used in conjunction with an agricultural operation.

  **2.  FENCES.** Fences, which shall comply with Section 13-113: *Fencing*.

  **3.  GARDENS AND GREENHOUSES.** Private non-commercial gardens and greenhouses.

  **4.  ONE 120 SQ. FT. STORAGE SHED.** One storage shed 120 sq. ft. or smaller.

  **5.  BARNS IN APPROVED SUBDIVISIONS.** Barns located in approved subdivisions in which there are adopted protective covenants that allow barns and that have been approved by Gunnison County.

  **6.  GARDENS AND GREENHOUSES THAT ARE HOME OCCUPATIONS.** Gardens and greenhouses that are home occupations created and operated pursuant to Section 9-102: *Home Occupations*.

  **7.  POOLS AND RECREATION FACILITIES.** Private swimming pools and private recreation facilities associated with a primary residence, and not part of a private club or membership group.

  **8.  INTEGRATED SECONDARY RESIDENCE SMALLER THAN 1,200 SQ. FT. ON ANY LEGAL LOT.** An integrated secondary residence smaller than 1,200 sq. ft. in a primary residence on any legal lot that meets the standards pursuant to Section 9- 101: F: *Standards for Integrated Secondary Residence*.

  **9.  ONE HOME OCCUPATION.** One home occupation, pursuant to Section 9-102: *Home Occupations*.

**C.  CAMPING.** Camping in a recreational vehicle or other camping shelter on an individual parcel pursuant to Section 9-509: C: *No Land Use Change Permit Required For Camping in a Recreational Vehicle or other Camping Shelter on an Individual Parcel.*

**D.  SPECIAL EVENTS.** A special event, pursuant to Section 9-501: *Special Events.*

BLM_0053955

*SECTION 4-102: PROJECTS CLASSIFIED AS ADMINISTRATIVE REVIEW PROJECTS THAT DO NOT REQUIRE LAND USE CHANGE PERMITS*

E.   **TEMPORARY STRUCTURES.** Temporary structures, pursuant to Section 9-502: *Temporary Structures.*

F.   **SATELLITE DISHES.** Satellite dishes, pursuant to Section 9-503: *Satellite Dish Devices.*

G.   **ATTACHED WIRELESS TELECOMMUNICATIONS DEVICE**. Attached wireless telecommunications device, pursuant to Section 9-504: *Attached Wireless Telecommunications Devices.*

H.   **KEEPING OF LIVESTOCK NOT ON AN AGRICULTURAL OPERATION.** Keeping of livestock not on an agricultural operation, pursuant to Section 9-508: *Keeping of Livestock Not on an Agricultural Operation.*

I.   **SITE APPROVAL APPLICATION FOR WATER SUPPLY OR WASTEWATER TREATMENT SYSTEM**. The Colorado Department of Public Health and Environment's site approval application for a proposed expansion or alteration of an existing wastewater treatment system.

J.   **DISTRIBUTION OR SERVICE LINE TO PRIMARY RESIDENCE**. A distribution or service line providing service to a single primary residence, multiple family residences, or other residence that would not otherwise require a Land Use Permit under the requirements of this *Resolution.*

K.   **ALTERATION AND REPAIR OF EXISTING SERVICE LINES OR DISTRIBUTION LINES**. Conversion of above-ground distribution lines or service lines to underground distribution or service lines located substantially within an existing utility easement.

BLM_0053956

# ARTICLE 5:
# ADMINISTRATIVE REVIEW PROJECTS
# THAT REQUIRE LAND USE CHANGE PERMITS

## SECTION 5-101: PURPOSE

The purpose of this Article is to establish the review process, application submittal requirements and review standards that apply to the review of applications classified as Administrative Review Projects that require Land Use Change Permits.

**A. INITIAL CLASSIFICATION OF IMPACT AND REASONS FOR A HIGHER LEVEL OF REVIEW**. If the Community Development Department determines during review of an application, including a Building Permit, that the proposed use exceeds the classification criteria of an Administrative Review Project, the criteria detailed in Section 3-111: B. 1: *Additional Criteria* shall be considered and the appropriate review process and submittals for an Administrative Review Project, a Minor or Major Impact Project shall be required and an application for a Land Use Change Permit shall be required to be submitted.

## SECTION 5-102: PROJECTS CLASSIFIED AS ADMINISTRATIVE REVIEW PROJECTS THAT REQUIRE LAND USE CHANGE PERMITS

The following types of Projects are classified as Administrative Review Projects that require Land Use Change Permits:

**A. PRIMARY RESIDENCE 10,000 SQ. FT. OR LESS, IN EXISTING PLATTED SUBDIVISION.** A primary residence smaller than 10,000 sq. ft., located within an existing platted subdivision. The residence may include an attached garage, which shall be calculated in the total square footage allowed for the residence.

**B. AGGREGATE RESIDENTIAL SQUARE FOOTAGE LESS THAN 12,500 SQ. FT.** On one parcel, the aggregate square footage of structures less than 12,500 sq. ft., (excluding from the calculation horse/hay sheds less than 500 sq. ft., one 120 sq. ft. storage shed, and a private greenhouse), that may include:

    **1. RESIDENTIAL LIVING AREA AND ATTACHED GARAGES 10,000 SQ. FT. OR LESS.** 10,000 or less sq. ft. of residential living area (one single-family residence, or any combination of a primary single-family residence, an integrated secondary residence, and/or a detached secondary residence allowed by Section 9-101: *Uses Secondary to a Primary Residence*) and a garage attached to a residence.

**C. SECONDARY STRUCTURES AND USES.** The following secondary structures and uses, pursuant to Section 9-101: D: *Secondary Structures and Uses That Require a Land Use Change Permit:*

    **1. SECONDARY STRUCTURE INTENDED ONLY FOR SLEEPING AND HAS NO KITCHEN**. A secondary structure without a kitchen that is to be used only for sleeping facilities. It shall comply with the requirements of the *Gunnison County On-Site Wastewater Treatment System Regulations*.

    **2. MORE THAN ONE HOME OCCUPATION.** More than one home occupation, pursuant to Section 9-102: *Home Occupations.*

**D. MOBILE HOME NOT IN A MOBILE HOME COMMUNITY.** A mobile home proposed to be located on an individual parcel of land not in a mobile home community, but adjacent to a subdivision whose protective covenants do not address, or expressly prohibit mobile homes within the subdivision, pursuant to Section 9-201: *Individual Manufactured and Mobile Homes.*

**E. BOUNDARY LINE ADJUSTMENT**. An application to adjust the lot line between adjacent parcels or lots in platted approved subdivisions when the adjustment is in compliance with Section 5-103: *Standards for Approval of Administrative Review Projects.*

**F. LOT CLUSTERS.** An application to eliminate the lot lines separating adjacent lots that are commonly owned.

**G. CORRECTION PLAT.** An application to correct a technical error in a subdivision plat that has been approved and recorded.

BLM_0053957

**H.   REPAIR OF EXISTING DISTRIBUTION LINES.** Repair of existing distribution lines located substantially within an existing utility easement.

**I.   ALTERATION OF APPROVED BUILDING ENVELOPES.** Alterations of building envelopes on lots that were approved as an element of a Land Use Change Permit.

**J.   SUBDIVISION EXEMPTION TO "VALIDATE" AN EXISTING LOT.** Pursuant to C.R.S. 30-28-101 (10) (d)., the "validation" of a lot that existed prior to the effective date of this *Resolution*, but did not exist before September 27, 1972 and has not been reviewed and approved by the County as a legally subdivided lot "legal lot").

**K.   EXPANSION OR CHANGE OF COMMERCIAL OR INDUSTRIAL USE TO TOTAL SIZE OF 5,000 SQ. FT. OR ONE ACRE OR LESS.** Expansion or change of a commercial or industrial use existing as of the effective date of this *Resolution,* when the expansion will result in the use having a total size of less than 5,000 sq. ft. of a structure, or one acre of land.

**L.   PLAT FOR APPROVED CONDOMINIUMS/TOWNHOME PROJECT.** A constructed condominium or townhome Project, or individual phase of a condominium or townhome Project, for which a Land Use Change Permit has been approved for the overall development.

**M.   LIMITED MINERAL EXPLORATION.** Limited mineral exploration (activities related to proving up a patented mining claim pursuant to federal law), as addressed in Section 9-402: C.3: *Limited Mineral Exploration.*

**N.   UNDERGROUND MINERAL EXPLORATION.** An application for underground mineral exploration for operations existing as of the effective date of this *Resolution*, as addressed in Section 9-402: D: *Extension and Expansion of Current Underground Mineral Exploration Required to File Notice of Activity.*

**O.   EXTRACTION OF CONSTRUCTION MATERIALS.** Extraction of construction materials that generates more than 300 cubic yards, per Section 9-402: C. 1: *Limited Construction Material Extraction.*

**P.   CONSTRUCTION OF A DRIVEWAY ON A VACANT PARCEL OF LAND PRIOR TO ISSUANCE OF A BUILDING OR ON-SITE WASTEWATER TREATMENT SYSTEM PERMIT.** The construction of a driveway on vacant land prior to the issuance of a building or on-site wastewater treatment system permit., excluding agricultural or temporary access permits.

## SECTION 5-103: STANDARDS FOR APPROVAL OF ADMINISTRATIVE REVIEW PROJECTS

**A.   GENERAL STANDARDS.** An application for a Land Use Change Permit for an Administrative Review Project shall comply with the following standards:

   **1.   COMPLY WITH APPLICABLE STANDARDS.** The land use change shall comply with all applicable standards and other provisions of this *Resolution.*

   **2.   COMPATIBILITY WITH COMMUNITY CHARACTER.** The proposed land use change shall be compatible with, or an enhancement of, the character of existing land uses in the area, and shall not adversely impact the future development of the surrounding area.

   **3.   COMPLIANCE WITH SPECIFIC STANDARDS.** In addition, the following standards shall apply to individual types of Administrative Review Projects:

      **a.   ADDITIONAL STANDARDS APPLICABLE TO BOUNDARY LINE ADJUSTMENTS..** The Community Development Director may approve an application for a boundary line adjustment if the following additional standards are met:

         **1.   INSUBSTANTIAL CHANGE.** The purpose of the adjustment shall be to make an insubstantial boundary change between adjacent parcels; and

         **2.   NOT CREATE ADDITIONAL LOTS.** The adjustment shall not create more than the original number of lots or parcels, nor provide the opportunity to create a new or additional lot for resale or development purposes, nor be used to increase the maximum allowable floor area for a parcel; and,

         **3.   MINIMUM LOT SIZE.** Following the adjustment, the lots shall continue to meet any applicable minimum lot size standards of this *Resolution*, except in the case of a nonconforming lot, in which case the adjustment shall not increase the degree to which it is nonconforming.

BLM_0053958

b. **ADDITIONAL STANDARDS APPLICABLE TO CORRECTION OF PLATS.** The Board may approve an Administrative Review Project application to correct any plat of record if the following additional standards are met:

1. **ORIGINAL PLAT APPROVED AFTER MAY 7, 1972.** The original subdivision plat was approved and recorded subsequent to May 7, 1972; and

2. **PURPOSE IS TO CORRECT TECHNICAL ERRORS.** The sole purpose of a subdivision correction plat is to correct one or more technical errors in the plat.

c. **ADDITIONAL STANDARDS APPLICABLE TO MORE THAN ONE HOME OCCUPATION IN A PRIMARY RESIDENCE.** The Community Development Director may approve an Administrative Review Project to allow the establishment of more than one home occupation so long as the aggregate levels of activity (such as numbers of employees) and aggregate sizes of the home occupations do not exceed the standards included in Section 9-102: *Home Occupations*.

d. **ADDITIONAL STANDARDS APPLICABLE TO ALTERATIONS OF APPROVED BUILDING ENVELOPES.** The Community Development Director may approve an Administrative Review Project application to alter building envelopes on lots approved as an element of a Land Use Change Permit if the following additional standards are met:

1. **NO CONFLICT WITH ORIGINAL LAND USE CHANGE PERMIT.** The alteration does not substantively conflict with any conditions of approval of the original Land Use Change Permit or subdivision; and

2. **COMPLIES WITH DEED RESTRICTIONS OR PROTECTIVE COVENANTS.** The alteration does not result in noncompliance with any deed restrictions or protective covenants, if such restrictions or protective covenants exist; and

3. **DOES NOT CAUSE NONCOMPLIANCE WITH STANDARDS.** The alteration will not cause the envelope to be in nonconformance with any of the standards of this *Resolution*.

e. **ADDITIONAL STANDARDS APPLICABLE TO SUBDIVISION EXEMPTIONS.** The Board may approve an application for a subdivision exemption if the proposed use of the land complies with Section 1-105: *Sections Necessary for Immediate Preservation of Public Health and Safety,* and all other applicable codes and regulations, including the applicable building code, adopted and amended by Gunnison County, and the *Gunnison County On-Site Wastewater Treatment System Regulations.*

## SECTION 5-104: ADMINISTRATIVE REVIEW PROJECT APPLICATION

A. **NOTIFICATION TO COUNTY IF FEDERAL PERMITS ARE REQUIRED FOR PROJECT.** When an EA or EIS or other state or federal action or permit is required, and that requirement is known by the applicant, the applicant shall notify the County of that requirement when the application is first submitted for review.

B. **APPLICATION AND REVIEW FEES.** In order to compensate the County for the cost of reviewing and processing the submittals, each applicant shall pay the required fee, as shown in a schedule of fees issued by the Community Development Department that is adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

C. **GENERAL APPLICATION FORM FOR ADMINISTRATIVE REVIEW PROJECTS.** The Community Development Department shall provide and the applicant shall complete an application form appropriate for the specific Administrative Review Project for which the applicant seeks approval. The Department will review the application form with the applicant to determine which information must be submitted, depending upon the proposed use. At a minimum, the application shall include:

1. **APPLICANT.** The name, address, telephone and fax numbers, and email address for the applicant and the applicant's representative, if applicable,

a. **APPLICANT IS NOT THE OWNER.** If the applicant is not the owner of the land, or is a contract purchaser of the land, the applicant shall submit a notarized letter signed by the owner consenting to the submittal. Consent of the owner for submittal shall imply consent by the owner for the County to complete the review process pursuant to this *Resolution.*

BLM_0053959

    **b.** **APPLICANT IS NOT THE SOLE OWNER.** If the applicant is not the sole owner of the land, the applicant shall submit a notarized letter(s) signed by all other owners, and/or by an association or corporation representing the owners, consenting to, or joining in, the application.

**2.** **PROPERTY OWNER.** Name, address, telephone and fax numbers and email address of the owner of the property and, if other than the applicant, a notarized letter from the owner consenting to the application must be submitted.

    **a.** **NOTARIZED LETTER OF CONSENT.** If the property owner is a person or entity other than the applicant, a notarized letter from the owner consenting to the application must be submitted.

**3.** **STATUS OF PARCEL AS A LEGAL LOT.** If the parcel on which the land use change is proposed is smaller than 35 acres, the Department may also request the applicant to supply information sufficient to document that the subject was legally created.

**4.** **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, or metes and bounds), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property should be included.

**5.** **PRESENT LAND USE.** Identify present land uses, and locations and sizes of structures that exist on the property.

**6.** **PROPOSED PROJECT DESCRIPTION.** A description of the proposed Project, including all uses, structures, roads, utilities, parking areas, amount and kinds of traffic to be generated.

**7.** **CHARACTERISTICS and CURRENT CONDITION OF LAND.** List physical characteristics and conditions of the land, including streams, irrigation ditches, ponds, soils, roads, vegetation, any work that has been done to clear the property, etc.)

**8.** **PROJECT DESIGN.** As applicable, all elements of the Project design, pursuant to the individual sections of Article 13: *Project Design Standards*; the staff will advise the applicant which of these requirements apply to a specific application:

    **a.** **SECTION 13-103:** *General Site Plan Standards and Lot Measurements.*
    **b.** **SECTION 13-104:** *Setbacks from Property Lines and Road Rights-of-Way.*
    **c.** **SECTION 13-105:** *Residential Building Sizes and Lot Coverages.*
    **d.** **SECTION 13-107:** *Installation of Solid-Fuel-Burning Devices.*
    **e.** **SECTION 13-108:** *Open Space and Recreation Areas.*
    **f.** **SECTION 13-109:** *Signs.*
    **g.** **SECTION 13-110:** *Off-Road Parking and Loading.*
    **h.** **SECTION 13-111:** *Landscaping and Buffering.*
    **i.** **SECTION 13-112:** *Snow Storage.*
    **j.** **SECTION 13-113:** *Fencing.*
    **k.** **SECTION 13-114:** *Exterior Lighting.*
    **l.** **SECTION 13-115:** *Reclamation and Noxious Weed Control.*
    **m.** **SECTION 13-116:** *Grading and Erosion Control.*
    **n.** **SECTION 13-117:** *Drainage, Construction and Post-Construction Storm Water Runoff.*
    **o.** **SECTION 13-118:** *Water Impoundments.*
    **p.** **SECTION 13-119:** *Standards to Ensure Compatible Uses.*

**D.** **LIST OF ADJACENT LANDOWNERS.** As applicable, a listing of all landowners and land uses that are adjacent to the boundaries of the entire parcel on which the Project is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the property except for the existence of the roadway. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel shall be included in the listing. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

**E.** **ADDITIONAL SUBMITTALS BASED UPON INFORMATION AVAILABLE ON MAPS USED BY THE COUNTY.** If a land use change is proposed on a parcel located within any of the following areas delineated pursuant to Section 1-112: *Use of Maps* or in areas otherwise addressed by the following, additional submittals may be required to be submitted; the Community Development Department will provide assistance to the applicant to determine the specific information that  must be submitted:

**1.** **LOCATION OF SITE WITHIN FLOODPLAIN HAZARD AREA.** As applicable, an application proposing a land use change on a parcel located within a floodplain hazard area, pursuant to Section 11-103: *Development in Areas Subject to Flood Hazards.*

2. **LOCATION OF SITE WITHIN GEOLOGIC HAZARD AREA.** As applicable, an application proposing a land use change on a parcel located in a geologic hazard area may be required to submit a geotechnical report that evaluates and predicts the impact of specific geologic conditions on the proposed land use change and measures to mitigate these hazards, pursuant to Section 11-104: *Development in Areas Subject to Geologic Hazards.*

3. **LOCATION OF SITE WITHIN WILDFIRE HAZARD AREA.** As applicable, an application proposing a land use change on a parcel located within a wildfire hazard area, pursuant to Section 11-105: *Development in Areas Subject to Wildfire Hazards.*

4. **LOCATION OF SITE WITHIN AREA POTENTIALLY AFFECTED BY WETLANDS AND WETLANDS PERMITTING.** As applicable, an application proposing a land use change on a parcel located in an area in which there are wetlands, pursuant to Section 11-107: *Protection of Water Quality.*

5. **LOCATION OF SITE VISIBLE FROM RIDGELINE VANTAGE.** As applicable, an application proposing a land use change that is visible from a ridgeline vantage, pursuant to Section 11-108: *Standards for Development on Ridgelines.*

6. **DEVELOPMENTS IMPACTING AGRICULTURAL LANDS.** If a proposed Project adjoins agricultural lands, involves land through which irrigation ditches flow, or over which there are general or exclusive easements for stock drives, the application shall address the requirements of Section 11-109: *Development That Affects Agricultural Lands*, and Section 15-103: *Right-to-Ranch Policy* which shall identify, in written and/or graphic form, the following:

   a. **AGRICULTURAL LAND OWNER.** The location(s) and name(s) of owner(s) of any agricultural land(s) adjoining or possibly impacted by the proposed land use change.

   b. **AGRICULTURAL DITCHES.** The location(s), name(s), name(s) of owner(s), size(s), and decreed capacity(ies) of any agricultural ditch crossing or adjoining the development property, as available from the Colorado Division of Water Resources, or ditch commissioner's records.

   c. **EASEMENTS**. The location of historical easements used to gain access to headgates, ditches, and fences for maintenance or operations.

   d. **LIVESTOCK DRIVES AND FENCELINES.** Historic or recorded stock drive easements crossing or adjoining the development property, including the location of any existing fences along property lines, and the location of new fences or other obstacles proposed to be built across any such stock drive.

7. **DEVELOPMENT ON LAND BEYOND SNOWPLOWED ACCESS.** As applicable, an application that proposes development at a location that currently receives no snowplowing services for access, pursuant to Section 11-110: *Development of Land Beyond Snowplowed Access.*

8. **DEVELOPMENT ON LAND ON AN INHOLDING WITHIN NATIONAL WILDERNESS.** As applicable, an application that proposes development on an inholding within a National Wilderness Area, pursuant to Section 11-111: *Development on Inholdings in the National Wilderness.*

9. **DEVELOPMENT ON PROPERTY ABOVE TIMBERLINE.** As applicable, an application that proposes development on a parcel located above timberline, pursuant to Section 11-112: *Development on Property Above Timberline.*

F. **MAPS AND SITE PLANS.** Maps and site plans submitted with any application shall be at a scale and sheet size that can be easily viewed. A minimum scale of 1" = 100' is preferred. Sheet size shall not exceed 24 inches by 36 inches.

1. **VICINITY MAP.** A vicinity map, which at a minimum includes the following (as illustrated in Appendix Figure 2: *Vicinity Map Example*); applications for plats of constructed condominium or townhome Projects that have been approved by the County shall not be required to submit a site plan:

   a. **PROPERTY LOCATION AND NEARBY PARCEL SIZES AND LAND USES.** Location of the property on a United States Geological Survey quadrangle map or on a recorded plat if the proposed development is within an approved subdivision, with the location highlighted so that it is easy to see, and that clearly shows sizes of parcels and land uses within a half-mile of the proposed Project.

   b. **ROADS.** All U.S. and state highways and nearest County or Forest Service, Bureau of Land Management, and/or subdivision/private roads that provide access to the proposed Project.

   c. **EASEMENTS.** Easements recorded or historically used that provide access to across, or other use of, the property.

BLM_0053961

    **d.**  **BOUNDARIES OF DISTRICTS, MUNICIPALITIES OR SUBDIVISIONS.** Locations of special district boundaries, municipalities or residential subdivisions within a half mile of the property.

    **e.**  **PROXIMITY OF MINING OR PROCESSING ACTIVITY.** Any parcel located within 1,000 feet of the property proposed for land use change on which there exists an operation involving mineral exploration or extraction or construction materials processing.

**2.**  **SITE PLAN.** A site plan, which at a minimum, includes the following (as illustrated in Appendix Figure 1: *Site Plan Example.*); applications for plats of constructed condominium or townhome Projects that have been approved by the County shall not be required to submit a site plan:

    **a.**  **ALL PROPERTY PROPOSED FOR DEVELOPMENT.** Include all land proposed for immediate and anticipated for future development. This can be a simple, hand-drawn layout, but it must be legible, clearly marked, drawn to scale, and signed and dated by the person who drew it.

    **b.**  **PHASING.** Any proposed phases of the development, and their timing.

    **c.**  **TOTAL ACREAGE OF CONTIGUOUS PROPERTY OWNED BY THE APPLICANT.** Total acreage and location of all contiguous property owned by the applicant.

    **d.**  **TOTAL ACREAGE IN PROPOSED LAND USE CHANGE PERMIT AREA**. Total acreage of the site on which the applicant wants to obtain approval for the Land Use Change Permit.

    **e.**  **ADJACENT LOT SIZES.** Lot size(s) of properties adjacent to and in the impact area of the site proposed for the land use change.

    **f.**  **ADJACENT LAND OWNERS.** Names and actual land uses of adjacent landowners (including federal, State of Colorado and other publicly owned lands), to the site (in addition to the separate narrative listing). This includes properties that may be across a road, stream or river from the applicant's property.

    **g.**  **UTILITY LOCATIONS IN AREA**. Location of all existing utilities on the property (septic tanks, wells, electric, gas, telephone or cable lines) that will serve the property.

    **h.**  **TOPOGRAPHIC FEATURES**. Streams, lakes, ponds, wetlands, contour lines and elevations, any prominent ridgelines, and any other significant visual resource areas on the property.

    **i.**  **LIVESTOCK DRIVES AND FENCELINES**. Historic or recorded stock drive easements crossing or adjoining the development property, including the location of any existing fences along property lines, and the location of new fences or other obstacles proposed to be built across any such stock drive.

    **j.**  **IRRIGATION DITCHES**. The location(s), and name(s), of any irrigation ditch crossing or adjoining the development property, as available from the Colorado Division of Water Resources, or ditch commissioner's records.

    **k.**  **DRAINAGE**. Drainage patterns, on and adjacent to the Project property.

    **l.**  **DRIVEWAYS AND PARKING**. Driveways/parking areas, both existing and proposed.

    **m.**  **EXISTING STRUCTURES**. Locations and sizes of existing structures.

    **n.**  **PROPOSED STRUCTURES**. Locations and sizes of proposed structures.

    **o.**  **BOUNDARIES.** Boundaries and related measurements.

**G.**  **PROTECTIVE COVENANTS, CONDOMINIUM OR TOWNHOME DECLARATIONS, OR DEED RESTRICTIONS.** Any existing, or a draft of proposed, protective covenants, a condominium declaration or deed restrictions that will be imposed on the development..

**H.**  **ADDITIONAL SUBMITTALS BASED ON EVIDENCE OF REASONABLE PROBABILITY OF CUMULATIVE IMPACTS.** If, in the course of the Administrative Project review, evidence is submitted or gathered indicating that there is a reasonable probability that the proposed land use change will contribute to cumulative impacts within the impact area, the Community Development Department or the Planning Commission shall require that additional information, including but not limited to studies of specific issues, be submitted.

**I.**  **LOCATION OF SITE WITHIN SPECIAL GEOGRAPHIC AREA OR DISTRICT.** As applicable, an application proposing a land use change on a parcel located within a designated Special Area or special district may be required to comply with regulations of that Area or district.

**J.  COPY OF PROPERTY TAX CERTIFICATE. COPY OF PROPERTY TAX CERTIFICATE.** Copy of certification from the Gunnison County Treasurer's Office indicating that all real property taxes applicable to the subject parcel on which the land use change is proposed have been paid up to the year in which approval is under consideration. Copy of certification from the Gunnison County Treasurer's Office indicating that all real property taxes applicable to the subject parcel on which the land use change is proposed have been paid up to the year in which approval is under consideration.

**K.  SPECIFICATIONS FOR CONDOMINIUM/TOWNHOME PLATS.** For a constructed condominium or townhome Project for which a Land Use Change Permit has been approved for the overall development, copies of the condominium declarations, and a plat or plats that meet(s) the applicable requirements of this Section, that is suitable for recording, and:

1.  **IS SIGNED.** Is signed by the developer/owner.

2.  **DEPICTS BOUNDARIES AND LEGAL DESCRIPTION.** Depicts the perimeter boundaries and sets forth the legal description of the parcel of land submitted to condominium ownership.

3.  **SHOWS LOCATION OF IMPROVEMENTS.** Shows the location of all improvements situated on the parcel.

4.  **IDENTIFIES AIR SPACE UNITS FOR CONDOMINIUMS.** If the plat is for a condominium development, sufficient vertical horizontal cross-section drawings of improvements to allow individual air spaces to be separately identified in three-dimensional space. Those individual spaces shall be identified by number or other appropriate designation.

5.  **SHOWS FLOOR ELEVATIONS.** Shows the elevations of the floors of the residences in relation to a United States Geological Survey benchmark.

6.  **IDENTIFIES GENERAL COMMON ELEMENTS.** Identifies the general common elements and limited common elements in reasonably sufficient detail and in a manner that does not conflict with the description or definition of those elements in the condominium declarations.

7.  **REQUIRED PLAT LANGUAGE.** The following plat language:

    a.  **FLOODPLAIN WARNING AND DISCLAIMER.**  If the subject property is located within an identified floodplain, language shall be included on the plat pursuant to Section 11-103: F. 1: *Warning and Disclaimer of Floodplain Hazards Affecting Use and Occupancy of This Property*.

    b.  **GEOLOGIC HAZARDS WARNING AND DISCLAIMER.** If the subject property is located within an identified geologic hazard area, language shall be included on the plat pursuant to Section 11-104: F. 5: *Warning and Disclaimer of Geologic Hazards Affecting Use and Occupancy of This Property*.

    c.  **WILDFIRE HAZARD AREA WARNING AND DISCLAIMER.**  If the subject property is located within an area designated as a wildfire hazard area, language shall be included on the plat pursuant to Section 11-106: G: *Warning and Disclaimer of Wildfire Hazards Affecting Use and Occupancy of This Property*.

    d.  **COMPLIANCE WITH COUNTY APPROVAL DOCUMENTS.** A Final Plat presented for approval shall contain one of the following statements, as applicable:

        1.  **COMPLIANCE WITH BOARD RESOLUTION.**

            COMPLIANCE WITH BOARD OF COUNTY COMMISSIONERS' RESOLUTION
            *The property described on this plat is subject to all the requirements, terms and conditions of the Board of County Commissioners' Resolution No. _____, recorded at Reception No._____ of the Records of the Clerk and Recorder of Gunnison County.*

        2.  **COMPLIANCE WITH APPLICABLE CERTIFICATE OF APPROVAL.**

            COMPLIANCE WITH CERTIFICATE OF APPROVAL
            *The property described on this plat is subject to all the requirements, terms and conditions of Certificate of Approval No. _____, recorded at Reception No._____ of the Records of the Clerk and Recorder of Gunnison County.*

    e.  **GENERAL NOTES.** Pursuant to Section 11-110: H: *Protective Covenants or Deed Restrictions and Plat Language*, the following paragraphs shall be included within a section of "General Notes" on a Final Plat:

        1.  **CONFINEMENT OF DOMESTIC ANIMALS.** Language directing that domestic animals must be controlled by kenneling, leashing, fencing or other physical constraint and that any expense of enforcement of the domestic animal control restrictions by the County shall be at the expense of the

BLM_0053963

responsible association or individual.

2. **AWARENESS OF COLORADO "FENCE-OUT" REQUIREMENTS**. Language referencing C.R.S. 35-46-101 *et seq*: clearly stating that a property owner is required to construct and maintain fencing in order to keep livestock off his/her property.

3. **IRRIGATORS' RIGHT TO MAINTAIN IRRIGATION DITCH**. Language notifying individual lot owners that an irrigation ditch owner has the right to enter the designated irrigation ditch maintenance easement, maintain the ditch, and may leave natural debris on the bank.

f. **ATTORNEY'S OPINION.** The following opinion by the applicant's attorney:

ATTORNEY'S OPINION

*I, (printed name of attorney), an attorney at law duly licensed to practice in the State of Colorado, hereby certify that I have examined title to all lands herein dedicated and subdivided. Such title is vested in_____ and is free and clear of all liens, defects, encumbrances, restrictions and reservations except as follows :_____( list same or indicate none). Dated this _____ day of _____, A.D. 20\_\_\_.*

_____
*Attorney-at-Law*

g. **DEDICATION.** A Final Plat presented for approval shall contain one of the following statements concerning dedication, which shall be followed by the Notary Statement set forth in (c.) below:

1. **DEDICATION LANGUAGE.**

DEDICATION

*(I, We), _____(printed name of owner(s), mortgagee(s) and lien holder(s))_____being the owner(s), mortgagee(s) and lien holder(s) of the land described as follows: (insert legal description of land being platted and/or subdivided and include area in acres to two (2) decimal places) in Gunnison County, Colorado, under the name of (complete name of development in capital letters), have laid out, platted and/or subdivided the same as shown on this plat and do hereby permanently dedicate to the public at large the streets, alleys, roads and other public areas as shown hereon and hereby permanently dedicate those portions of land labeled as easements for the installation and maintenance of public utilities as shown hereon.*
*In witness whereof (printed name of the owner) has (have) subscribed (his, her, their) name(s) this \_\_\_\_\_ day of _____, A.D. 20\_\_\_.*
*By _____*
*Owner(s), Mortgagee(s) and Lien holder(s)*

2. **DEDICATION/ALTERNATIVE LANGUAGE**.

DEDICATION

*(I, We), _____(printed name of owner(s), mortgagee(s) and lien holder(s))_____, being the owner(s), mortgagee(s) and lien holder(s) of the land described as follows: (insert legal description of land being platted and/or subdivided and include area in acres to two (2) decimal places) in Gunnison County, Colorado, under the name of (complete name of development in capital letters), have laid out, platted and/or subdivided the same as shown on this plat and do hereby permanently dedicate and convey to the owners of lots, tracts or parcels within this subdivision and their guests, but not to the public at large, the common right to use streets, alleys, roads and other areas as shown hereon and hereby permanently dedicate those portions of land labeled as easements for the installation and maintenance of public utilities as shown hereon.*
*In witness whereof (printed name of the owner(s)) has (have) subscribed his, her, their name(s) this \_\_\_\_\_day of \_\_\_\_\_, A.D. 20\_\_\_\_\_.*
*By _____*
*Owner(s), Mortgagee(s) and Lien holder(s)*

3. **NOTARIAL.**

*State of Colorado)*
*) ss.*
*County of Gunnison)*
*The foregoing instrument was acknowledged before me this \_\_\_\_\_ day of \_\_\_\_\_, A.D. 20\_\_\_\_\_, by (printed name of owner(s): if by natural persons here, insert name; if by person acting in a representative*

BLM_0053964

*official capacity, insert capacity; if by officers of a corporation, then insert the title of said officers and the name of the corporation).*
*My commission expires: _____*
*My address is: _____*
*Witness my hand and official seal:*
*_____ (seal)*
*Notary Public*

h.  **BOARD OF COUNTY COMMISSIONERS' APPROVAL.** As is consistent with the selected paragraph of dedication, any Final Plat submitted for approval shall contain one of the following statements of approval as appropriate:

1.  **BOARD APPROVAL LANGUAGE:**

    *Board of County Commissioners' Approval*
    *The within plat of (name of development in capital letters) is approved this _____ day of _____, A.D. 20_____, and the roads and other public areas are hereby accepted provided, however, that such acceptance shall not in any way be considered as an acceptance for maintenance or snow removal purposes. Maintenance of, or snow removal from, the subject roads shall be only upon a separate resolution of the Board of County Commissioners passed in accordance with such policies, resolutions or ordinances in effect at that time.*

    *_____*
    *Chairperson, Gunnison County Board of Commissioners*
    *Attest:*

    *_____*
    *Gunnison County Clerk and Recorder*

2.  **BOARD APPROVAL: FIRST ALTERNATIVE LANGUAGE:**

    *BOARD OF COUNTY COMMISSIONERS' APPROVAL*
    *The within plat of (name of development in capital letters) is approved this _____ day of _____, A.D. 20_____, and the private dedication of roads and common areas is approved on the condition that such roads and common areas shall be maintained and snowplowed, by and at the expense of the lot owners and not by Gunnison County or any other public agency.*

    *_____*
    *Chairperson, Gunnison County Board of Commissioners*
    *Attest:*

    *_____*
    *Gunnison County Clerk and Recorder*

3.  **BOARD APPROVAL: SECOND ALTERNATIVE LANGUAGE:**

    *BOARD OF COUNTY COMMISSIONERS' APPROVAL*
    *The within plat of (name of development in capital letters) Is approved this _____ day of _____, A.D. 20_____, as a seasonal use development only and not as a development served by a road opened or to be opened on a year-round basis. The roads and other public areas are hereby accepted provided, however, that such acceptance shall not in any way be considered as an acceptance for maintenance purposes. Maintenance of, or snow removal from the subject roads shall be only upon a separate resolution of the Board of County Commissioners passed in accordance with such policies, resolutions or ordinances in effect at that time.*

    *_____*
    *Chairperson, Gunnison County Board of Commissioners*
    *Attest:*

    *_____*
    *Gunnison County Clerk and Recorder*

4.  **BOARD APPROVAL: THIRD ALTERNATIVE LANGUAGE:**

    *BOARD OF COUNTY COMMISSIONERS' APPROVAL*
    *The within plat of (name of development in capital letters) is approved this _____ day of _____, A.D. 20._____ as a seasonal use development only and not as a development served by a road opened or to be opened on a year-round basis. The private dedication of roads and common areas is approved on*

BLM_0053965

*the condition that such roads and common areas shall be maintained and snowplowed, by and at the expense of the lot owners and not by Gunnison County or any other public agency.*

_____
*Chairperson, Gunnison County Board of Commissioners*
*Attest:*

_____
*Gunnison County Clerk and Recorder*

**5.  GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE.** (To be placed in the lower right-hand corner of cover sheet.)

GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE

*This plat was accepted for filing in the office of the Clerk and Recorder of Gunnison County, Colorado, on this _____ day of _____, A.D. 20_____, Reception Number _____, Time _____, Date _____.*

_____
*Gunnison County Clerk and Recorder*

**6.  SURVEYOR'S STATEMENT.** A statement, followed by the land surveyor's signature and seal, certifying that the survey was performed by him or under his direct responsibility and supervision and explaining how bearings, if used, were determined.

**L.  APPLICATION FORM FOR BOUNDARY LINE ADJUSTMENTS.** In addition to completing the application form as specified in Section 5-104: *Administrative Review Project Application* applications for boundary line adjustments shall also include:

**1.  CONSENT OF ALL LANDOWNERS.** If the application is for a boundary line adjustment, the application shall include notarized written consent from all landowners whose lot lines are being adjusted.

**2.  SURVEY PLAT.** A survey shall be submitted that includes the following:

**a.  TITLE AND DESCRIPTION.** It shall include the title, "Boundary Line Adjustment," and reference the property description by township and range, or by lot, parcel or tract number, as appropriate.

**b.  LEGEND.** A legend shall be included on the survey, clearly indicating the original boundaries, and the adjusted boundaries.

**c.  ATTORNEY'S OPINION.** Any survey plat for a boundary line adjustment presented for approval shall contain this statement:

ATTORNEY'S OPINION

*I, (printed name of attorney), an attorney at law duly  licensed to practice in the State of Colorado, hereby certify that I have examined title to all lands herein dedicated and subdivided. Such title is vested in _____ and is free and clear of all liens, defects, encumbrances, restrictions and reservations except as follows: (list same or indicate none). Dated this _____ day of _____, 20 ____.*

*/s/ _____*
*Attorney-at-Law*

**d.  SURVEYOR'S STATEMENT.** A statement, followed by the land surveyor's signature and seal, certifying that the survey was performed by him/her or under his/her direct responsibility, supervision and checking and explaining how bearings, if used, were determined.

**e.  COUNTY APPROVAL SIGNATURES.** Any survey plat for a boundary line adjustment presented for approval shall contain the following statements:

**1.  BOARD OF COUNTY COMMISSIONERS' APPROVAL.** Any Commissioner of the Board is authorized to sign the plat without formal Board review.

BOARD OF COUNTY COMMISSIONERS' APPROVAL

*The within plat of the boundary line adjustment (name of plat title in capital letters) is approved this _____ day of _____, A.D. 20_____, _____.*

_____
*Chairperson, Gunnison County Board of Commissioners*
*Attest:*

BLM_0053966

*Gunnison County Clerk and Recorder*

**2. GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE.** (To be placed in the lower right-hand corner of cover sheet.)

GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE

*This survey was accepted for deposit in the office of the Clerk and Recorder of Gunnison County, Colorado, on this _____ day of _____, 20 _____, Deposit Number _____.*

*Time _____, Date _____.*

*Gunnison County Clerk and Recorder*

**M. APPLICATION FORM FOR LOT CLUSTER.** In addition to completing the application form as specified in Section 5-104: *Administrative Review Project Application* applications for lot clusters shall also include:

**1. SITE PLAN.** The site plan shall include the following (as illustrated in Appendix Figure 1: *Site Plan Example.*):

**a. LOTS TO BE CLUSTERED.** The lots whose shared boundaries will be vacated by the Lot Cluster Agreement, the name of subdivision in which the lots are located, if applicable, and the numbers of the lots.

**b. ADJACENT LOTS.** The lots immediately adjacent to all boundaries of the lots that will be clustered.

**c. ROADWAYS.** Platted development, County or other public, state or federal roadways adjacent to the proposed clustered lots.

**d. EASEMENTS.** Location of legal easements, including trails, adjacent to and across the proposed clustered lots.

**e. CONSENT BY UTILITIES.** As applicable, notarized letters of consent to the lot cluster from utility companies whose facilities are located in legal easements on or adjacent to the proposed clustered lots and a copy of the easement agreements, if such agreements exist.

**f. CONSENT OR SUBORDINATION BY LIEN HOLDERS.** As applicable, notarized letters of consent or a signed and notarized subordination to the lot cluster from lien or mortgage holders of the individual pre-clustered lots.

**N. APPLICATION FORM FOR CORRECTION OF PLAT.** In addition to completing the application form as specified in Section 5-104: *Administrative Review Project Application*, applications for corrections of plats shall also include:

**1. SURVEY PLAT.** A survey that includes the following:

**a. TITLE AND DESCRIPTION**. It shall include the title, "Corrected Plat," and reference the property description by township and range, or by subdivision lot, parcel or tract number, as appropriate.

**b. STATEMENT OF CORRECTION.** A statement clearly explaining the correction to the plat.

**c. LEGEND.** A legend shall be included on the survey, the original boundaries, and the adjusted boundaries.

**d. SURVEYOR'S STATEMENT**. A statement, followed by the land surveyor's signature and seal, certifying that the survey was performed by him/her or under his/her direct responsibility, supervision and checking and explaining how bearings, if used, were determined.

**e. COUNTY APPROVAL SIGNATURES.** Any corrected plat presented for approval shall contain the following:

**1. BOARD OF COUNTY COMMISSIONERS' APPROVAL**. Any Commissioner of the Board is authorized to sign the plat without formal Board review.

BOARD OF COUNTY COMMISSIONERS' APPROVAL

*The within corrected plat of (name of plat title in capital letters) is approved this _____ day of _____, A.D. 20_____. _____.*

*Chairperson, Board of County Commissioners*
*Attest:*

*Gunnison County Clerk and Recorder*

BLM_0053967

**2. GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE**. (To be placed in the lower right-hand corner of cover sheet.)

GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE

*This survey was accepted for deposit in the office of the Clerk and Recorder of Gunnison County, Colorado, on this _____ day of_____, 20 _____, Deposit Number _____.*

*Time _____, Date _____.*

_____
*Gunnison County Clerk and Recorder*

**O. APPLICATION FORM FOR SUBDIVISION EXEMPTIONS.** In addition to completing the application form as specified in Section 5-104: *Administrative Review Project Application*, applications for subdivision exemption shall include:

**1. SURVEY PLAT.** A survey shall be submitted that includes the following:

**a. TITLE AND DESCRIPTION.** It shall include the title, "Subdivision Exemption," and reference the property description by township and range, or by lot, parcel or tract number, as appropriate.

**b. LEGEND.** A legend shall be included on the survey, clearly indicating the original boundaries, and the adjusted boundaries.

**c. SURVEYOR'S STATEMENT.** A statement, followed by the land surveyor's signature and seal, certifying that the survey was performed by him/her or under his/her direct responsibility, supervision and check, and explaining how bearings, if used, were determined.

**d. ATTORNEY'S OPINION.** Any survey plat for a subdivision exemption presented for approval shall contain this statement:

ATTORNEY'S OPINION

*I, (printed name of attorney), an attorney at law duly licensed to practice in the State of Colorado, hereby certify that I have examined title to all lands herein dedicated and subdivided. Such title is vested in _____ and is free and clear of all liens, defects, encumbrances, restrictions and reservations except as follows: (list same or indicate none). Dated this _____ day of_____, 20 ___.*

_____
*Attorney-at-Law*

**e. BOARD OF COUNTY COMMISSIONERS.** Any survey plat for a subdivision exemption presented for approval shall contain the following statements:

BOARD OF COUNTY COMMISSIONERS' APPROVAL

*The within plat of the subdivision exemption (name of plat title in capital letters) is approved this _____ day of _____, A.D. 20_____,*

_____
*Chairperson, Board of Gunnison County Commissioners*

*Attest:*

_____
*Gunnison County Clerk and Recorder*

**f. GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE.** (To be placed in the lower right-hand corner of cover sheet.)

GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE

*This survey was accepted for deposit in the office of the Clerk and Recorder of Gunnison County, Colorado, on this _____ day of_____, 20 _____, Deposit Number _____.*

*Time _____, Date _____.*

_____
*Gunnison County Clerk and Recorder*

**P. ADDITIONAL INFORMATION.** Such additional information reasonably required by the Community Development Department as necessary to determine the impact classification, or to otherwise aid in the evaluation of the development pursuant to the applicable requirements of this *Resolution*.

BLM_0053968

## SECTION 5-105: ADMINISTRATIVE REVIEW PROJECT REVIEW PROCESS

A. **GENERAL REVIEW PROCESS.** The following review process (illustrated in the flowchart in Appendix Figure 5: *General Review Process for Administrative Review Projects That Require Land Use Change Permit)* shall apply to applications for Administrative Review Projects:

1. **PRE-APPLICATION CONFERENCE.** Attendance at a Pre-Application Conference is optional before submittal of an application for an Administrative Review Project.

2. **SUBMITTAL OF APPLICATION.** The applicant shall submit a complete application pursuant to this Article.

3. **COMMUNITY DEVELOPMENT DEPARTMENT REVIEW.** The Community Development Director shall review the application, pursuant to Section 3-110: *Community Development Department Application Review,* including:

   a. **REQUEST FOR REVIEW BY OTHER AGENCIES OR DEPARTMENTS.** The Community Development Department may request the professional analysis and recommendations of other review agencies, organizations, or technical consultants deemed appropriate and necessary to complete the review, including other County offices and departments; municipal, state, or federal agencies having an interest in or authority over all or part of the proposal; utility companies; the applicable school district and special service districts serving the proposed development; and engineers, designers, and legal consultants.

      1. **REVIEW AND COMMENT BY REVIEW AGENCIES.** The review agencies that are sent a copy of the application shall be requested to make comments within 21 days of mailing by the Community Development Department, unless an extension of not more than 30 days has been requested by the agency before the 21st day. The Department may grant such a reasonable extension if it determines that good cause for the delay has been shown. The failure of any agency to respond within 21 days or within the period of extension shall not be deemed an approval of the application by the agency.

      2. **REVIEW OF AGENCY/DEPARTMENT COMMENTS BY APPLICANT.** The applicant shall have the right to review the comments and recommendations received from the review agencies. The applicant may submit additional information and make changes in the development proposal to respond to the comments of the review agencies; provided, however, that if those changes are substantial or if they significantly alter the nature, character or extent of the application, the Community Development Department may, after the changes, refer the application again to some or all review agencies, to obtain additional comments, and may reasonably extend the period of their review accordingly.

4. **NOTICE TO PUBLIC OF PROPOSED COMMERCIAL OR INDUSTRIAL USE.** When the application is for an Administrative Review Project that is a commercial or industrial use, notice shall be given to the public pursuant to Section 3-112: *Notice of Public Hearing,* except that notice by publication in a newspaper shall not be required. The notice shall identify a 15-day public comment period, during which comments may be submitted to the Community Development Director. The Community Development Director shall act on the application within 15 days after the close of the comment period.

   a. **NOTICE TO MUNICIPALITY.** When the proposed commercial or industrial use is located within a municipal three-mile area, notice shall be provided to the municipality.

5. **ACTION BY COMMUNITY DEVELOPMENT DIRECTOR.** Within 30 days of having certified that the application is complete, or after having received comment from review agencies pursuant to Section 3-110: B. *Request for Review by Other Agencies or Departments,* whichever is later, the Community Development Director shall approve, approve with conditions, or deny the application, based upon the compliance of the application with the applicable standards and requirements of this *Resolution.* Conditions of approval shall include the applicant's timely and fully obtaining and complying with all applicable federal, state, municipal and other permits required for the Project.

6. **APPROVAL AND SIGNATURE OF PLAT BY BOARD.** When an Administrative Review Project requires the submittal of a survey plat, the Community Development Director shall schedule the item on the Board agenda for signature.

7. **RECORDATION OF CERTIFICATE.** Within 30 days following approval of the Administrative Review application, the Community Development Director shall record a Certificate of Administrative Review in the Office of the Gunnison County Clerk and Recorder's Office. The Certificate shall describe the specific Project, the legal description of the subject property, any relevant Findings related to the Project's compliance with this *Resolution,*

BLM_0053969

or conditions of approval, and include the Community Development Director's signature line, and the date of approval.

**B**.   **APPEAL.** A decision by the Community Development Director on an application for an Administrative Review Project may be appealed by referral to the Board, pursuant to Section 8-103: *Appeals*.

BLM_0053970

# ARTICLE 6:
# MINOR IMPACT PROJECTS

## SECTION 6-101: PURPOSE

The purpose of this Article is to establish the review process, application submittal requirements, and review standards that apply to the review of Land Use Change Permit applications for developments classified as Minor Impact Projects.

**A. INITIAL CLASSIFICATION OF IMPACT AND REASONS FOR A HIGHER LEVEL OF REVIEW.** If the Community Development Department determines during review of an application, including a Building Permit, that the proposed use exceeds the classification criteria of a Minor Impact Project as listed within this Article, the criteria detailed in Section 3-111: B. 1: *Additional Criteria* shall be considered, the appropriate submittals shall be required, and the appropriate review process initiated.

## SECTION 6-102: PROJECTS CLASSIFIED AS MINOR IMPACT PROJECTS

The following uses shall be classified and reviewed as Minor Impact Projects:

**A. 2-4 UNITS.** 2-4 units that are subdivision lots, duplex units, or multiple-family residences, except as allowed pursuant to Section 9-101: D. 2.: *Secondary Structures and Uses Classified as Minor Impact Projects.*

**B. PRIMARY RESIDENCE 10,000 SQ. FT. OR LARGER.** A primary residence 10,000 sq. ft. or larger. The residence may include an attached garage, which shall be calculated in the total square footage allowed for the residence, pursuant to Section 13-105: *Residential Building Sizes and Lot Coverages.*

**C. AGGREGATE SQUARE FOOTAGE OF 12,500 OR MORE SQ. FT.** An aggregate of 12,500 or more sq. ft. of residential living area (one single-family residence, or any combination of a primary single-family residence, an integrated secondary residence, and/or a detached secondary residence allowed by Division 9-100: *Secondary Uses and Activities* on one parcel, pursuant to Section 13-105: *Residential Building Sizes and Lot Coverages.*

**D. AGGREGATE SQUARE FOOTAGE GREATER THAN 45 PERCENT OF AREA.** An aggregate square footage of structures that exceeds 45 percent of the total area of one parcel, pursuant to *Section 13-105: Residential Building Sizes and Lot Coverages.*

**E. MORE THAN ONE SECONDARY RESIDENCE ON A LEGAL LOT OR TRACT.** More than one secondary residence on a legal lot or tract, except as allowed pursuant to Section 9-101: *Uses Secondary to a Primary Residence.*

**F. DEVELOPMENT REQUIRING DETAILED RIDGELINE VANTAGE VISIBILITY ANALYSIS.** Any development other than a Project classified as a Major Impact Project, and for which a detailed ridgeline vantage visibility analysis is required, pursuant to Section 11-108: F: *Impact Classification.*

**G. CLEARING OF MORE THAN 7500 SQ. FT. OF LAND.** Clearing of more than 7,500 sq. ft. of land not related to activities permitted by a Building Permit, an ISDS Permit, or Access Permit, or an agricultural operation.

**H. NEW COMMERCIAL, INDUSTRIAL 5,000 SQ. FT., OR FIVE ACRES OR LESS.** A new commercial or industrial structure equal to or less than 5,000 sq. ft: or a new commercial or industrial use developed on five acres or less.

**I. 5.000-9,999 SQ. FT. EXPANSION OF COMMERCIAL OR INDUSTRIAL USE.** A 5,000–9,999 sq. ft. expansion of a commercial or industrial use, existing as of the effective date of this *Resolution.*

**J. FREESTANDING WIRELESS TELECOMMUNICATION STRUCTURE.** Construction and siting of a freestanding wireless communication structure, building, pole, tower or antenna that provides wireless telecommunications services, pursuant to Section 9-505: *Freestanding Wireless Telecommunication Structures.*

**K. SMALL NEW OR EXPANDED MINING OPERATION.** A new, or expansion of a mining operation that operates for no more than 180 days per year, produces fewer than 10,000 tons of ore/waste per year and affects no more than two surface acres of land, pursuant to Division 9-400: *Exploration, Extraction and Processing of Minerals and Construction Materials.*

**L. CONSTRUCTION MATERIALS OPERATION RELATED TO CONSTRUCTION OF PUBLIC ROAD.** Any sand, gravel, or quarry operation providing material for public road construction that will operate for less than two years.

BLM_0053971

**M.** **GENERAL ROAD CUTTING OR CONSTRUCTION.** Road cutting or construction, except that cutting or construction and maintenance of a road that provides access solely for an agricultural operation shall not be classified as a Minor Impact Project, and shall not require review.

**N.** **SUBDIVISION PLAT VACATION, AMENDMENT OR REPLAT.** Vacation, amendment or replat of a recorded subdivision plat.

**O.** **TRANSMISSION LINES.** Upgrade of an existing utility transmission line(s) within an existing easement(s), but not including a Project for which a Land Use Change Permit has been granted in which the design, construction and impacts of the utility line were reviewed and approved.

**P.** **BED AND BREAKFAST.** Bed and breakfast business, pursuant to Section 4-103: *Bed and Breakfast*.

**Q.** **CHILD CARE CENTER**. A child care center, pursuant to Section 9-506: *Child Care Center*.

**U.** **GROUP HOME.** A group home, pursuant to Section 9-507: *Group Home.*

**R.** **WATER IMPOUNDMENT PROJECTS CLASSIFIED AS CLASS II DAMS.** New Projects or facilities, or expansion of existing Projects or facilities, that involve the design, construction and operation of a water impoundment that includes a dam classified by the Colorado Division of Water Resources as a Class II dam, pursuant to Section 13-118: *Water Impoundments.*

**S.** **EXPANSION OR EXTENSION OF SNOWPLOWING.** Expansion or extension of snowplowing, pursuant to Section 11-110: F: *Expansion or Extension of Snowplowing.*

**T.** **COMMERCIAL WEDDING SITE.** The site on which weddings are regularly or frequently conducted as a commercial operation, irrespective of the number of people or vehicles generated by the wedding event.

## SECTION 6-103: STANDARDS FOR APPROVAL OF MINOR IMPACT PROJECTS

A Land Use Change Permit for a Minor Impact Project shall comply with the following:

**A.** **ALL APPLICABLE STANDARDS**. The proposed land use change shall comply with, and the burden shall be on the applicant to demonstrate through competent evidence that the proposed land use change complies with all applicable requirements of this *Resolution*; and

**B.** **COMPATIBILITY WITH COMMUNITY CHARACTER**. The proposed land use change shall be compatible with, or an enhancement of, the character of existing land uses in the area, and shall not adversely impact the future development of the surrounding area; and

**C.** **COMPLIANCE WITH SPECIFIC STANDARDS.** In addition, the following standards shall apply to individual types of Minor Impact Projects:

    **1.** **ADDITIONAL STANDARDS APPLICABLE TO VACATION, AMENDMENT OR REPLAT OF SUBDIVISION PLATS.** The Board may approve a Minor Impact application to vacate, amend or replat any recorded subdivision plat if all of the following additional standards are met:

        **a.** **LEGAL PLAT OF RECORD.** The plat to be vacated, amended or replatted shall be a legal plat of record; when the plat is proposed to be vacated the applicant(s) shall be the owner of all the lands identified on the plat to be vacated.

        **b.** **VACATION SHALL NOT DENY ACCESS.** Vacation, amendment or replatting of all or part of the plat shall not interfere with the use of, nor deny access by public thoroughfare to public land, adjoining properties, utility service, or other improvements. In granting a vacation, the Board may reserve easements for access, and for the installation or maintenance of utilities, ditches, and similar improvements.

        **c.** **NOT DAMAGE ANY LOT OWNER.** The plat vacation, amendment or replat shall not result in damage to any individual lot owner.

## SECTION 6-104: MINOR IMPACT APPLICATION

**A.** **NOTIFICATION TO COUNTY IF FEDERAL PERMITS REQUIRED FOR PROJECT**. When an EA or EIS or other state or federal action or permit is required, and that requirement is known by the applicant, the applicant shall notify the County of that requirement when the application is first submitted for review.

**B.** **AREA AND PHASING OF DEVELOPMENT**. The Minor Impact Project application shall relate to all of the area proposed for immediate or future development, including all contiguous land under ownership by the applicant. If

BLM_0053972

phasing is proposed by the applicant or determined by the County to be appropriate, the general concept of that phasing shall be addressed.

C. **APPLICATION AND REVIEW FEES.** In order to compensate the County for the cost of reviewing and processing the submittals, each applicant shall pay the required fee, as shown in a schedule of fees issued by the Community Development Department that is adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

1. **COST FOR PUBLIC HEARING NOTICE(S).** In addition to the application fee, the applicant shall be billed and shall be responsible for paying for the actual cost of publication of all applicable public hearing notices as required pursuant to Section 3-112: *Notice of Public Hearing.*

D. **COPY OF PROPERTY TAX CERTIFICATE.** One copy of certification from the Gunnison County Treasurer's Office indicating that all real property taxes applicable to the subject parcel on which the land use change is proposed have been paid up to the year in which approval is under consideration.

E. **GENERAL APPLICATION FORM FOR MINOR IMPACT PROJECTS.** The Community Development Department shall provide and the applicant shall complete an application form appropriate for the specific Minor Impact Project. The Application includes both a narrative describing elements of the proposed project, and maps and layout plans than illustrate it. Unless waived by the Community Development Department, at a minimum, the application shall include:

1. **APPLICANT.** The name, address, telephone and fax numbers, and email address for the applicant and the applicant's representative, if applicable,

   a. **APPLICANT IS NOT THE OWNER.** If the applicant is not the owner of the land, or is a contract purchaser of the land, the applicant shall submit a notarized letter signed by the owner consenting to the submittal. Consent of the owner for submittal shall imply consent by the owner for the County to complete the review process pursuant to this *Resolution.*

   b. **APPLICANT IS NOT THE SOLE OWNER.** If the applicant is not the sole owner of the land, the applicant shall submit a notarized letter(s) signed by all other owners, and/or by an association or corporation representing the owners, consenting to, or joining in, the application.

2. **PROPERTY OWNER.** Name, address, telephone and fax numbers and email address of the owner of the property and, if other than the applicant, a notarized letter from the owner consenting to the application must be submitted.

   a. **STATUS OF PARCEL AS A LEGAL LOT.** If the parcel on which the land use change is proposed is smaller than 35 acres, the Department may also request the applicant to supply information sufficient to document that the subject was legally created..

   b. **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, or metes and bounds), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property should be included.

   c. **DATE OF APPLICATION.** The date on which the application was prepared.

3. **IDENTIFICATION OF PRESENT LAND USE AND PREVIOUSLY-APPROVED USES.** Identification of present land use, locations, and sizes of structures that exist on the subject property, Land Use Change Permits or other permitted activities that were previously approved for the parcel on which this land use change is proposed.

4. **CHARACTERISTICS and CURRENT CONDITION OF LAND.** List physical characteristics and conditions of the land, including streams, irrigation ditches, ponds, soils, roads, vegetation, any work that has been done to clear the property, etc.

5. **LIST OF ADJACENT LANDOWNERS.** As applicable, a listing of all landowners and land uses that are adjacent to the boundaries of the entire parcel on which the Project is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the property except for the existence of the roadway. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel shall be included in the listing. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

BLM_0053973

6. **MINERAL RESOURCES.** Indication of mineral resources that are known, or reasonably believed to be located in the property proposed for the land use change, whether the area has been the site of underground or surface mining activity, and whether an original patent has been issued to the property under federal mining law. If reasonably available, a list of the owners or lessees of underlying mineral estates is to be included.

7. **PROPOSED PROJECT DESCRIPTION.** A description of what the applicant wants to do on or to the property, including the following:

   a. **USES AND ACTIVITIES, NUMBERS OF UNITS, OR SIZES OF USES.** Proposed uses or activities, division of land, adjustment of boundaries, expansion of existing uses, construction, materials to be stockpiled, indoor and outdoor storage areas. Numbers of units or lots. Estimated square footage or acreage of commercial, industrial or other uses. The proposed number of residential and/or other units and estimated square footage of structures may be expressed as a range, provided the top end of the range is no more than 20 percent higher than the bottom end of the range.

   b. **DESCRIPTION OF OFF-SITE RESOURCES.** Description of off-site resources such as gravel and haul routes as may be necessary to accomplish the project.

   c. **SEASONS AND HOURS OF OPERATION.** As applicable, the seasons of the year in which the activity is proposed to be conducted, and the intended hours of operation.

   d. **PHASES.** Any phases that may be proposed within a Final Plan for the development.

8. **INFRASTRUCTURE ELEMENTS.** As applicable, the elements of all infrastructure that will be required as part of the development, pursuant to the individual sections of Article 12: *Development Infrastructure Standards* including:

   a. **ROAD SYSTEM.** If the development is to include a road or roads, location and design, pursuant to Section 12-103: *Road System* and the *Gunnison County Specifications for Road and Bridge Construction Standards.*

   b. **TRAILS.** If the parcel on which the development is proposed is land over which there is a public trail, the application must comply with Section 12-104: *Trails.* Applicants also are encouraged to include public trails and other amenities for non-motorized travel in an application to link existing adjacent public trails or trails easements, and should provide information pursuant to that section if they are interested in providing such trails.

   c. **SEWAGE DISPOSAL/WASTEWATER TREATMENT.** If applicable, how wastewater will be disposed of, pursuant to the requirements of Section 12-106: *Sewage Disposal/Wastewater Treatment.*

   d. **WATER SUPPLY.** Adequate evidence, which may be a final court decree, deed or other written document demonstrating ownership and/or right to use water in the amounts, manner and location(s) proposed to supply the development, pursuant to Section 12-105: *Water Supply.*

      1. **TIE ON TO EXISTING CENTRAL SYSTEM.** If the Project will tie onto an existing central water supply system, the name of the municipality, district or other existing system that will provide the service. A copy of a notarized letter of intent to provide, signed agreement or contract be-tween the applicant and the supplier indicating that it has the capacity and is willing to provide the amount of water that will be provided by the service provider, and any conditions of provid-ing tap-on and service.

      2. **PROVISION OF NEW CENTRAL SYSTEM.** If the Project includes the construction and oper-ation of a new central water supply system, copies of approved current well permits, court decrees, decreed plan of water augmentation, or other deeded water rights. A description of the proposed system, including treatment options, proposed plans for operation and mainte-nance, and information about how water will be provided for fire suppression.

      3. **INDIVIDUAL WELL OR SPRING SYSTEM.** If an individual well or piped spring is proposed as the supply, a list of, and provision of copies of approved current well permits, court decrees, plans of water augmentation, or other deeded water rights. If the source of the supply is not located on the property proposed for development, the site of the source shall be indicated on the submitted vicinity map, and as applicable, copies of existing easements for location, access to and maintenance of pipelines and related facilities.

BLM_0053974

    **4. WATER AUGMENTATION PLAN**. If the Colorado Division of Water Resources requires that a plan of water augmentation be approved for the Project, a copy of the application for the augmentation, as submitted to the Division.

    **9. FIRE PROTECTION.** An applicant for a land use change classified as a Minor Impact Project that is located in a specific fire protection district must contact the district before submitting the application, for the purpose of being informed of the District's design and construction standards that will apply to the application. Section 12-107: *Fire Protection.*

    **10. MINING AND CONSTRUCTION ACTIVITIES.** As applicable, information pursuant to the individual sections of Division 9-400: *Exploration, Extraction and Processing of Minerals and Construction Materials.*

    **11. COMMERCIAL AND INDUSTRIAL USES.** As applicable, information pursuant to the individual sections of Division 9-300: *Commercial and Industrial Uses.*

**E. PROJECT DESIGN.** As applicable, all elements of the Project design, pursuant to the individual sections of Article 13: *Project Design Standards*; the staff will advise the applicant which of these requirements apply to a specific application:

1. **SECTION 13-103:** *General Site Plan Standards and Lot Measurements.*
2. **SECTION 13-104:** *Setbacks from Property Lines and Road Rights-of-Way.*
3. **SECTION 13-105:** *Residential Building Sizes and Lot Coverages.*
4. **SECTION 13-107:** *Installation of Solid-Fuel-Burning Devices.*
5. **SECTION 13-108:** *Open Space and Recreation Areas.*
6. **SECTION 13-109:** *Signs.*
7. **SECTION 13-110:** *Off-Road Parking and Loading.*
8. **SECTION 13-111:** *Landscaping and Buffering.*
9. **SECTION 13-112:** *Snow Storage.*
10. **SECTION 13-113:** *Fencing.*
11. **SECTION 13-114:** *Exterior Lighting.*
12. **SECTION 13-115:** *Reclamation and Noxious Weed Control.*
13. **SECTION 13-116:** *Grading and Erosion Control.*
14. **SECTION 13-117:** *Drainage, Construction and Post-Construction Storm Water Runoff.*
15. **SECTION 13-118:** *Water Impoundments.*
16. **SECTION 13-119:** *Standards to Ensure Compatible Uses.*

**F. ADDITIONAL SUBMITTALS BASED UPON INFORMATION AVAILABLE ON MAPS USED BY THE COUNTY.** If a land use change is proposed on a parcel located within any of the following areas delineated pursuant to Section 1-112: *Use of Maps* or in areas otherwise addressed by the following, additional submittals may be required to be submitted; the Community Development Department will provide assistance to the applicant to determine the specific information that  must be submitted:

1. **LOCATION OF SITE WITHIN FLOODPLAIN HAZARD AREA.** As applicable, an application proposing a land use change on a parcel located within a floodplain hazard area, pursuant to Section 11-103: *Development in Areas Subject to Flood Hazards.*

2. **LOCATION OF SITE WITHIN GEOLOGIC HAZARD AREA.** As applicable, an application proposing a land use change on a parcel located in a geologic hazard area may be required to submit a geotechnical report that evaluates and predicts the impact of specific geologic conditions on the proposed land use change and measures to mitigate these hazards, pursuant to Section 11-104: *Development in Areas Subject to Geologic Hazards.*

3. **LOCATION OF SITE WITHIN WILDFIRE HAZARD AREA.** As applicable, an application proposing a land use change on a parcel located within a wildfire hazard area, pursuant to Section 11-105: *Development in Areas Subject to Wildfire Hazards.*

4. **LOCATION OF SITE WITHIN AREA POTENTIALLY AFFECTED BY WETLANDS AND WETLANDS PERMITTING.** As applicable, an application proposing a land use change on a parcel located in an area in which there are wetlands, pursuant to Section 11-107: *Protection of Water Quality.*

5. **LOCATION OF SITE VISIBLE FROM RIDGELINE VANTAGE.** As applicable, an application proposing a land use change that is visible from a ridgeline vantage, pursuant to Section 11-108: *Standards for Development on Ridgelines.*

6. **DEVELOPMENTS IMPACTING AGRICULTURAL LANDS.** If a proposed Project adjoins agricultural lands, involves land through which irrigation ditches flow, or over which there are general or exclusive easements for

BLM_0053975

stock drives, the application shall address the requirements of Section 11-109: *Development That Affects Agricultural Lands*, and Section 15-103: *Right-to-Ranch Policy* which shall identify, in written and/or graphic form, the following:

    **a.** **AGRICULTURAL LAND OWNER**. The location(s) and name(s) of owner(s) of any agricultural land(s) adjoining or possibly impacted by the proposed land use change.

    **b.** **AGRICULTURAL DITCHES**. The location(s), name(s), name(s) of owner(s), size(s), and decreed capacity(ies) of any agricultural ditch crossing or adjoining the development property, as available from the Colorado Division of Water Resources, or ditch commissioner's records.

    **c.** **EASEMENTS**. The location of historical easements used to gain access to headgates, ditches, and fences for maintenance or operations.

    **d.** **LIVESTOCK DRIVES AND FENCELINES.** Historic or recorded stock drive easements crossing or adjoining the development property, including the location of any existing fences along property lines, and the location of new fences or other obstacles proposed to be built across any such stock drive.

**7.** **DEVELOPMENT ON LAND BEYOND SNOWPLOWED ACCESS.** As applicable, an application that proposes development at a location that currently receives no snowplowing services for access, pursuant to Section 11-110: *Development of Land Beyond Snowplowed Access.*

**8.** **DEVELOPMENT ON LAND ON AN INHOLDING WITHIN NATIONAL WILDERNESS.** As applicable, an application that proposes development on an inholding within a National Wilderness Area, pursuant to Section 11-111: *Development on Inholdings in the National Wilderness*.

**9.** **DEVELOPMENT ON PROPERTY ABOVE TIMBERLINE.** As applicable, an application that proposes development on a parcel located above timberline, pursuant to Section 11-112: *Development on Property Above Timberline.*

**G.** **MAPS AND SITE PLANS.** Maps and site plans submitted with any application shall be at a scale and sheet size that can be easily viewed. A minimum scale of 1" = 100' is preferred. Sheet size shall not exceed 24 inches by 36 inches. In the case of map sets containing multiple sheets, there shall be an index sheet stating the contents of each sheet. In the case of a large development site that requires more than two sheets to depict the entire land area at an appropriate scale, the applicant shall also submit a total area plan showing the entire development on a single sheet at an appropriate scale.

**1.** **VICINITY MAP**. A vicinity map, at a minimum, shall include the following (as illustrated in Appendix Figure 2: *Vicinity Map Example*):

    **a.** **PROPERTY LOCATION AND NEARBY PARCEL SIZES AND LAND USES**. Location of the property on a United States Geological Survey quadrangle map or on a recorded plat if the proposed development is within an approved subdivision, with the location highlighted so that it is easy to see, and that clearly shows sizes of parcels and land uses within a half-mile of the proposed Project.

    **b.** **ROADS**. All U.S. and state highways and nearest County or Forest Service, Bureau of Land Management, and/or subdivision/private roads that traverse and/or provide access to this proposed Project.

    **c.** **EASEMENTS.** Easements recorded or historically used that provide access to or across, or other use of, the property.

    **d.** **BOUNDARIES OF DISTRICTS, MUNICIPALITIES OR SUBDIVISIONS**. Locations of special district boundaries, municipalities or residential subdivisions within a half mile of the property.

    **e.** **PROXIMITY OF MINING OR PROCESSING ACTIVITY**. Any parcel located within 1,000 feet of the property proposed for land use change on which there exists an operation involving mineral exploration or extraction or construction materials processing.

**2.** **SITE PLAN**. A site plan, which at a minimum shall include the following (as illustrated in Appendix Figure 1: *Site Plan Example*.):

    **a.** **ALL PROPERTY PROPOSED FOR DEVELOPMENT**. Include all land proposed for immediate and anticipated for future development. This can be a simple, hand-drawn layout, but it must be legible, clearly marked, drawn to scale, and signed and dated by the person who drew it.

    **b.** **PHASING.** Any proposed phases of the development, and their timing.

    **c.** **TOTAL ACREAGE OWNED.** Total acreage and location of all contiguous property owned by the applicant.

BLM_0053976

    **d.  TOTAL ACREAGE IN PROPOSED LAND USE CHANGE PERMIT AREA**. Total acreage of the site on which the applicant wants to obtain approval for the Land Use Change Permit.

    **e.  ADJACENT LOT SIZES.** Lot size(s) of properties adjacent to and in the impact area of the site proposed for the land use change.

    **f.  ADJACENT LAND OWNERS.** Names and actual land uses of adjacent landowners (including federal, State of Colorado and other publicly owned lands), to the site (in addition to the separate narrative listing). This includes properties that may be across a road, stream or river from the applicant's property.

    **g.  UTILITY LOCATIONS IN AREA**. Location of all existing utilities on the property (septic tanks, wells, electric, gas, telephone or cable lines) that will serve the property.

    **h.  TOPOGRAPHIC FEATURES**. Streams, lakes, ponds, wetlands, contour lines and elevations, any prominent ridgelines, and any other significant visual resource areas on the property.

    **i.  LIVESTOCK DRIVES AND FENCELINES**. Historic or recorded stock drive easements crossing or adjoining the development property, including the location of any existing fences along property lines, and the location of new fences or other obstacles proposed to be built across any such stock drive.

    **j.  IRRIGATION DITCHES**. The location(s), name(s), name(s) of owner(s), size(s), and decreed capacity(ies) of any irrigation ditch crossing or adjoining the development property, as available from the Colorado Division of Water Resources, or ditch commissioner's records.

    **k.  DRAINAGE**. Drainage patterns, on and adjacent to the Project property.

    **l.  TRAILS.** Pursuant to Section  12-104: *Public Trails*, as applicable, the application shall show existing public trails that cross the subject property, and any trails the applicant may be proposing to include as an element of the proposed land use change.

    **m.  ROADS, DRIVEWAYS AND PARKING**. Roads, driveways and parking areas, both existing and proposed. Driveway access locations are subject to review and approval by the Public Works Department. If roads are an element of the Project design, they shall be designed pursuant to, and Section 12-103: *Road System*.

    **n.  EXISTING STRUCTURES**. Locations and sizes of existing structures.

    **o.  PROPOSED STRUCTURES**. Locations and sizes of proposed structures.

    **p.  BOUNDARIES.** Boundaries and related measurements.

**H.  PROTECTIVE COVENANTS, CONDOMINIUM OR TOWNHOME DECLARATIONS, OR DEED RESTRICTIONS.** Any existing, or a draft of proposed, protective covenants, a condominium declaration or deed restrictions that will be imposed on the development..

**I.  ADDITIONAL SUBMITTALS BASED ON EVIDENCE OF REASONABLE PROBABILITY OF CUMULATIVE IMPACTS.** If, in the course of the Minor Impact Project review, evidence is submitted or gathered indicating that there is a reasonable probability that the proposed land use change will contribute to cumulative impacts within the impact area, the Community Development Department or the Planning Commission shall require that additional information, including but not limited to studies of specific issues, be submitted.

**J.  LOCATION OF SITE WITHIN SPECIAL GEOGRAPHIC AREA OR DISTRICT.** As applicable, an application proposing a land use change on a parcel located within a designated Special Area or special district may be required to comply with regulations of that Area or district.

**K.  ADDITIONAL INFORMATION.** Such additional information reasonably required by the Community Development Department as necessary to determine the impact classification, or to otherwise aid in the evaluation of the development pursuant to the applicable requirements of this *Resolution*.

## SECTION 6-105: SUBMITTAL FOR FINAL ACTION FOR MINOR IMPACT PROJECT

**A.  COPIES OF INFORMATION NECESSARY FOR ACTION BY RECOMMENDING AND DECISION-MAKING BODIES.** If the Planning Commission, after a work session(s) and the applicable required public hearing, directs the staff to prepare a Recommendation or Decision document for approval of a Minor Impact Project, the Community Development Department shall determine the number of copies of a plan submitted for final action (including protective covenants, blue line copies of a plat, or final plan layout as applicable) necessary for review and action by the County, and advise the applicant of that number.

BLM_0053977

**B.** **CONDOMINIUM AND TOWNHOME DEVELOPMENTS.** A Minor Impact Project that is a plan for condominium or townhome development shall require a Final Plan approval for the layout, infrastructure and amenities for the Project. Building Permits may then be issued for construction of individual buildings. A Final Plat shall be submitted after the buildings are constructed, that is reviewed and recorded pursuant to Article 5: *Administrative Review Projects That Require Land Use Change Permits*.

**C.** **FEES.** To compensate the County for the cost of reviewing and processing applications for Land Use Change Permits, each applicant shall pay the Final Plan fee as shown in a schedule of fees charged for permits issued by the Community Development Department, adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

    **1.** **IMPACT FEES**. As applicable, payment in full of any impact fees.

**D.** **SUBMITTAL OF DRAFT COPY**. The applicant shall submit one draft copy of the plan for final action to the Community Development Department.

**E.** **TOTAL NUMBER OF COPIES REQUIRED.** Once the Community Development Department has determined the submittal to be complete, it shall determine the number of copies of the plan for final action that are necessary for review and action by the Planning Commission and/or Board, and other review agencies or County departments, and shall notify the applicant of the number required to be submitted. The Department shall, as applicable, forward the plan for final action and any relevant comments to the Planning Commission and/or Board.

**F.** **NARRATIVE.** The plan for final action  shall include the following, presented in the same order as it is listed here, in a stapled or otherwise bound document, on consecutively-numbered pages:

    **1.** **APPLICANT OTHER THAN APPLICANT WHEN APPLICATION ORIGINALLY SUBMITTED**. If the applicant is not the same as the applicant who submitted the initial application, that fact shall be noted, and a notarized letter of consent from the current property owner for the current applicant to proceed with the review shall be submitted.

    **2.** **PROPERTY OWNER OTHER THAN OWNER WHEN APPLICATION ORIGINALLY SUBMITTED..** If the property owner is not the same as the owner who submitted the initial application, that fact shall be noted, and a notarized letter of consent from the current property owner for the current applicant to proceed with the review shall be submitted.

        **a.** **APPLICANT IS NOT THE SOLE OWNER.** If the applicant is not the sole owner of the land, and the ownership of the property has changed since the initial application, the applicant shall submit a notarized letter(s) signed by all other owners, and/or by an association or corporation representing the owners, consenting to, or joining in, the application.

    **3.** **PROJECT DESCRIPTION.** A detailed description of the uses and activities for which final approval  is requested, including:

        **a.** **USES AND ACTIVITIES.** Proposed uses or activities, division of land, adjustment of boundaries, expansion of existing uses, and construction, stockpiled materials, indoor and outdoor storage areas.

        **b.** **NUMBERS OF UNITS OR OTHER SIZES OF USES**. Numbers of units or lots. The square footage or acreage of commercial, industrial or other uses.

        **c.** **DESCRIPTION OF STRUCTURES**. Description of structures to be constructed, their estimated size(s) and appearance.

        **d.** **DESCRIPTION OF OFF-SITE RESOURCES**. Description of off-site resources, hazardous activities and haul routes.

        **e.** **IDENTIFICATION OF LOT USE WITHIN SUBDIVISION**. If subdivision of the property is proposed, the uses proposed for all resulting lots.

        **f.** **SEASONS AND HOURS OF OPERATION.** As applicable, the seasons of the year in which the activity is proposed to be conducted, and the intended hours of operation.

        **g.** **PHASES.** Phases of the plan,  if applicable.

    **4.** **DOCUMENTATION OF CONVEYANCE OF LAND OR EASEMENT**. As applicable, a copy of warranty deed(s) to, or easement agreement(s) with, the appropriate entity conveying or providing easement to the County or other entity, for any land set aside for road rights-of-way, public trails, or other public use.

BLM_0053978

5. **PROTECTIVE COVENANTS AND DESIGN GUIDELINES, CONDOMINIUM OR TOWNHOME DECLARATIONS, OR DEED RESTRICTIONS.** Protective covenants, design guidelines, condominium or townhome declaration or similar restrictions that will be imposed on the development.. The protective covenants shall be the final recordable form and, at a minimum, shall address:

   a. **CONDITIONS OF LAND USE CHANGE PERMIT.** As applicable, those items required as conditions of the Land Use Change Permit approval to be included within protective covenants, design guidelines, condominium or townhome declarations or deed restrictions.

   b. **RESPONSIBILITIES OF HOMEOWNERS' ASSOCIATION.** As applicable, responsibilities of property owners or homeowners' association to collect dues, maintain common areas, improve infrastructure common to the development, maintenance of a decreed water augmentation plan and the augmented water supply, treatment of wastewater and/or water, and to oversee the maintenance of the general appearance of the development.

   c. **COUNTY IS PARTY TO AMENDMENT OR TERMINATION.** Language that requires that amendment or termination of the protective covenants or restriction is subject to approval by Gunnison County.

   d. **DESIGN CRITERIA.** Design criteria that will govern development within the subdivision, including:

      1. **BUILDING SCALE AND LOCATION.** Language defining building heights, compatibility with terrain, and sizes of all structures that will be allowed by the protective covenants. The requirements of Section 11-108: *Standards for Development on Ridgelines*, Section 13-103: *General Site Plan Standards and Lot Measurements,* Section 13-105: *Residential Building Sizes and Lot Coverages* shall guide the drafting of the covenant language.

      2. **ARCHITECTURAL STYLE AND EXTERIOR APPEARANCE.** Language describing the architectural style that will be required of all structures in the proposed development, and the types and colors of exterior materials to be used, including siding, roofing.

   e. **DOMESTIC ANIMAL CONTROL.** Language limiting the maximum number of domestic animals allowed on a lot or within the development, and requiring that they be confined on site by kenneling, leashing or other similar means. Language that includes requirements that comply with those specified by Section 11-106: F.6: *Domestic Animal Controls,* Section 11-109: D: *Domestic Animal Controls*, and Section 9-508: *Keeping of Livestock Not On an Agricultural Operation.*

   f. **EXTERIOR LIGHTING.** Language that includes requirements that comply with those specified by Section 13-114: *Exterior Lighting.*

   g. **FENCING.** Language that includes requirements that comply with those specified by Section 13-113: *Fencing.* If there is proposed to be a fence separating the proposed development from lands on which there are agricultural operations or are public lands, language shall be required acknowledging Colorado's "fence out" requirements, and placing responsibility for construction and maintenance of the fence with the property owners or homeowners' association.

   h. **RECLAMATION AND NOXIOUS WEED CONTROL.** Language that includes requirements that comply with those specified by Section 13-115: *Reclamation and Noxious Weed Control.*

   i. **USE AND MAINTENANCE OF OPEN SPACE AREAS.** As applicable, language shall be included that lists uses allowed on, and requires maintenance of common open space areas by the homeowners association, or other appropriate entity. Pursuant to Section 13-108: *Open Space and Recreation* Areas.

   j. **SIGNS.** Language shall be included that informs property owners or other land users within the proposed development that installation of signs requires compliance with the Gunnison County regulations and may require a Gunnison County Sign Permit.

   k. **RULES CONCERNING PARKING.** Language concerning limitations on parking pursuant to Section 13-110: *Off-road Parking and Loading.*

   l. **LANDSCAPING AND BUFFERING.** Language addressing installation and maintenance of landscaping on individual lots and common areas pursuant to Section 13-111: *Landscaping and Buffering.*

   m. **PROVISION FOR SNOW REMOVAL AND SNOW STORAGE.** Language identifying responsibility of a property owners' or homeowners' association or other entity to remove snow from interior roads and parking areas, and other applicable requirements pursuant to Section 13-112: *Snow Storage.*

BLM_0053979

**n. STANDARDS TO ENSURE COMPATIBLE USES.** As applicable, specific covenants or other restrictions designed to mitigate impacts to nearby residential or public use areas or neighborhood land uses, pursuant to Section 13-119: *Standards to Ensure Compatible Uses.*

**o. SOLID-FUEL-BURNING DEVICES.** If solid-fuel-burning devices are to be used in the proposed development, restrictions shall be listed ensuring compliance with Section 13-107: *Installation of Solid-fuel-burning Devices.*

**p. GEOTECHNICAL SITE-SPECIFIC STUDIES.** When a parcel is proposed for subdivision and analysis has indicated it is located within a geologic hazard area, language shall be included that identifies the specific hazard in which the development, or identified portions of the development, are located, and  refers by title, name of preparer, and date of preparation to the geotechnical analysis of the site.

    **1. COPY OF GEOTECHNICAL STUDY TO BE ATTACHED.** A copy of the geotechnical study(ies) shall be required to be attached as an exhibit to the protective covenants or deed restriction.

**q. DOCUMENTATION ESTABLISHING ADMINISTRATIVE ASSOCIATION.** If the development is a subdivision, condominium or townhome development, proof of the establishment of any applicable homeowners' or property owners' association, district, architectural control committee or other group that will administer or enforce protective covenants, declarations or deed restrictions. If proof of establishment is not submitted with the plan for final action, establishment shall be guaranteed through provisions in the Development Improvement Agreement, and all relevant documentation creating the organization shall be submitted to the Community Development Department.

**r. FINAL COST ESTIMATES**. As applicable, documentation from contractors, materials providers, engineers or other professionals, certifying final estimates for roads, bridges, drainage facilities, water supply and wastewater treatment systems, landscaping and other improvements required by the County for final approval.

**s. COPY OF PROPERTY TAX CERTIFICATE.** Copy of certification from the Gunnison County Treasurer's Office indicating that all real property taxes applicable to the subject parcel on which the land use change is proposed have been paid up to the year in which approval is under consideration. If the copy provided in the Minor Impact application is current, no additional copy need be provided.

**t. INFORMATION TO ASSESSOR'S OFFICE.** If the development is a subdivision, condominium or townhome development, a copy of a notarized signed statement from the developer agreeing to provide the Gunnison County Assessor's Office with the following information before November 30 of each year shall be submitted:

    **1. PARCELS SOLD.** A description of all lots or parcels sold within the development.

    **2. PURCHASER INFORMATION.** Name and address of each purchaser.

    **3. PURCHASE PRICE.** Purchase price of each parcel sold.

**G. LAYOUT AND DESIGN.** The application shall include a rendering of the final layout and design plan of the Project that shall include:

    **1. SURVEY.** A scale survey of the boundaries of the land parcel, showing all planned, recorded and apparent rights-of-way and all easements including ditches, utility lines, roads, and paths or trails; a description of all monuments found and set marking the boundaries of the property; and a description of all control monuments used and all dimensions necessary to establish the boundaries in the field. All section, quarter-section, township and range lines that cross the development shall be identified.

    **2. SCALE.** Scale shall be 100 feet to the inch, except building plans and townhome or condominium plans may be at a larger scale if appropriate.

    **3. SHEET SIZE.** Sheet size shall be 24 inches by 36 inches. When a large development requires more than two sheets at the required scale, the applicant shall also submit a total area plan showing the entire development at a scale that is clearly legible.

    **4. LOCATIONAL INFORMATION.** Each sheet shall contain a scale (written and graphic), north arrow and a heading containing the name and location of the development by reference to a quarter-section, township and range, and a reference to a U.S. Mineral survey where applicable.

    **5. SUBDIVISION PLAT.** If the development is a subdivision, the final layout shall be presented as a recordable Plat, and include the required language pursuant to Section 6-105: L: *Specifications for Subdivision Plats.*

**H. ENGINEERED PLANS**. Final engineering design plans and descriptions for roads, bridges, drainage facilities, water supply and wastewater treatment systems, landscaping and other improvements proposed to be installed by the

developer, or required by the County; such plans shall be designed and stamped by a qualified professional engineer licensed in the State of Colorado. Engineering plans may be bound separately when size or bulk makes it advisable. Two folded copies of each of the plans shall be provided that can be stored in legal-sized folders, and shall not be submitted in rolled form.

I. **UTILITY LOCATION PLANS.** As applicable, final utility location plans approved by all utility companies identified as providing service to the development.

J. **WATER SUPPLY.** Documentation of a final court decree, deed or other written evidence demonstrating ownership and/or right to use water in the amounts, manner and location(s) for the uses and activities included in the development.

   1. **WATER AUGMENTATION PLAN**. If the Division of Water Resources required that a plan of water augmentation be designed, submitted and approved, a copy of the decree(s) for the plan shall be submitted. The plan shall accurately portray the number and types of uses described in the applicant's Final Plan application submittal, including phases, if applicable.

K. **RURAL ADDRESSING SYSTEM PLATS.** If the development is a subdivision, condominium or townhome development, three copies of the Final Plat, 14 inches by 17 inches, for inclusion in the rural addressing system, one of which the Community Development Department will provide to the applicable County department for emergency services purposes.

L. **SPECIFICATIONS FOR SUBDIVISION PLATS**. Subdivision plats intended for recording shall be prepared by a surveyor registered in the State of Colorado, clearly and legibly drawn on indelible material so that legible prints can be made from it. The Plat recorded in the Office of the Clerk and Recorder of Gunnison County shall be a nonerasable copy of the original. Sheet size shall be 24" x 36". The scale of the final plat shall be sufficiently large to show clearly the details of the plan (preferably 1" = 100').

   1. **PUBLIC AREAS.** All public or common areas shall be identified.

   2. **NON-DUPLICATING ROAD NAMES.** All roads shall be named. Road names shall not duplicate those of any existing named road within the unincorporated county or any incorporated municipality, to avoid confusion and duplication.

   3. **ACCESS AND OTHER EASEMENTS.** Planned and existing, recorded or apparent easements shall be shown, including 25-foot easements from each irrigation ditch bank pursuant to Section 11-109: G. 2.: *Irrigation Ditch Easements*, watercourses, public utilities, drains, sewers, snow storage areas, roads and paths or trails crossing the property, the closing or changing of which might affect the rights of others or result in damage to the property of the owner.

   4. **BLOCKS AND LOTS.** All blocks and lots or spaces shall be consecutively numbered.

   5. **LOT ADDRESSES.** The applicant shall provide a copy of the Plat to the Gunnison County Building Inspector who shall assign the appropriate addresses, which shall be shown on the recordable Plat.

   6. **REFERENCE TO PROTECTIVE COVENANTS**. If protective covenants are included as an element of the development, they shall be filed with the plat and the plat shall contain the correct recording references.

   7. **CURVE DATA.** All curve data, in a chart that includes radii, internal angles, and lengths of all arcs and points of curvature.

   8. **REQUIRED PLAT LANGUAGE.** The following plat language:

      a. **FLOODPLAIN WARNING AND DISCLAIMER.** If the subject property is located within an identified floodplain, language shall be included on the plat pursuant to Section 11-103: F. 1. *Warning and Disclaimer of Floodplain Hazards Affecting Use and Occupancy of This Property*.

      b. **GEOLOGIC HAZARDS WARNING AND DISCLAIMER.** If the subject property is located within an identified geologic hazard area, language shall be included on the plat pursuant to Section 11-104: F. 5: *Warning and Disclaimer of Geologic Hazards Affecting Use and Occupancy of This Property*.

      c. **WILDFIRE HAZARD AREA WARNING AND DISCLAIMER**. If the subject property is located within an area designated as a wildfire hazard area, language shall be included on the plat pursuant to Section 11-106: G: *Warning and Disclaimer of Wildfire Hazards Affecting Use and Occupancy of This Property*.

      d. **COMPLIANCE WITH COUNTY APPROVAL DOCUMENTS**. A Plat presented for approval shall contain one of the following statements, as applicable:

BLM_0053981

*SECTION 6-105: SUBMITTAL FOR FINAL ACTION FOR MINOR IMPACT PROJECT*

**1. COMPLIANCE WITH BOARD RESOLUTION.**

COMPLIANCE WITH BOARD OF COUNTY COMMISSIONERS' RESOLUTION

*The property described on this plat is subject to all the requirements, terms and conditions of the Board of County Commissioners' Resolution No. _____, recorded at Reception No._____ of the Records of the Clerk and Recorder of Gunnison County.*

**2. COMPLIANCE WITH APPLICABLE CERTIFICATE OF APPROVAL.**

COMPLIANCE WITH CERTIFICATE OF APPROVAL

*The property described on this plat is subject to all the requirements, terms and conditions of Certificate of Approval No. _____, recorded at Reception No._____ of the Records of the Clerk and Recorder of Gunnison County.*

**e. GENERAL NOTES.** Pursuant to Section 11-110: H: *Protective Covenants or Deed Restrictions and Plat Language*, the following paragraphs shall be included within a section of General Notes on a Final Plat:

**1. CONFINEMENT OF DOMESTIC ANIMALS.** Language directing that domestic animals must be controlled by kenneling, leash, fencing or other physical constraint and that any expense of enforcement of the domestic animal control restrictions by the County shall be at the expense of the responsible association or individual.

**2. AWARENESS OF COLORADO "FENCE-OUT" REQUIREMENTS**. Language referencing C.R.S. 35-46-101 *et seq*: clearly stating that a property owner is required to construct and maintain fencing in order to keep livestock off his/her property.

**3. IRRIGATION DITCH MAINTENANCE**. Language notifying individual lot owners that an irrigation ditch owner has the right to enter the designated irrigation ditch maintenance easement, maintain the ditch, and leave natural debris on the bank.

**f. ATTORNEY'S OPINION.** The following opinion by the applicant's attorney:

ATTORNEY'S OPINION

*I, (printed name of attorney), an attorney at law duly licensed to practice in the State of Colorado, hereby certify that I have examined title to all lands herein dedicated and subdivided. Such title is vested in_____ and is free and clear of all liens, defects, encumbrances, restrictions and reservations except as follows :_____( list same or indicate none). Dated this _____ day of _____, A.D. 20___.*

_____
*Attorney-at-Law*

**g. DEDICATION.** A Final Plat presented for approval shall contain one of the following statements concerning dedication, which shall be followed by the Notary Statement set forth in (3) below:

**1. DEDICATION LANGUAGE.**

DEDICATION

*(I, We), _____(printed name of owner(s), mortgagee(s) and lien holder(s))_____ being the owner(s), mortgagee(s) and lien holder of the land described as follows: (insert legal description of land being platted and/or subdivided and include area in acres to two (2) decimal places) in Gunnison County, Colorado, under the name of (complete name of development in capital letters), have laid out, platted and/or subdivided the same as shown on this plat and do hereby permanently dedicate to the public at large the streets, alleys, roads and other public areas as shown hereon and hereby permanently dedicate those portions of land labeled as easements for the installation and maintenance of public utilities as shown hereon.*

*In witness whereof (printed name of the owner) has (have) subscribed (his, her, their) name(s) this _____ day of _____, A.D. 20___.*
*By _____*
*Owner(s), Mortgagee(s) and Lien holder(s)*

**2. DEDICATION/ALTERNATIVE LANGUAGE.**

DEDICATION

*(I, We), _____(printed name of owner(s), mortgagee(s) and lien holder(s))_____, being the owner(s), mortgagee(s) and lien holder(s) of the land described as follows: (insert legal description of*

BLM_0053982

*land being platted and/or subdivided and include area in acres to two (2) decimal places) in Gunnison County, Colorado, under the name of (complete name of development in capital letters), have laid out, platted and/or subdivided the same as shown on this plat and do hereby permanently dedicate and convey to the owners of lots, tracts or parcels within this subdivision and their guests, but not to the public at large, the common right to use streets, alleys, roads and other areas as shown hereon and hereby permanently dedicate those portions of land labeled as easements for the installation and maintenance of public utilities as shown hereon.*

*In witness whereof (printed name of the owner(s)) has (have) subscribed his, her, their name(s) this _____day of _____, A.D. 20_____.*
*By _____*
*Owner(s), Mortgagee(s) and Lien holder(s)*

3. **NOTARIAL.**

   *State of Colorado)*
   *) ss.*
   *County of Gunnison)*

   *The foregoing instrument was acknowledged before me this _____ day of _____, A.D. 20_____, by (printed name of owner(s): if by natural persons here, insert name; if by person acting in a representative official capacity, insert capacity; if by officers of a corporation, then insert the title of said officers and the name of the corporation).*

   *My commission expires: _____*
   *My address is: _____*
   *Witness my hand and official seal:*
   *_____ (seal)*
   *Notary Public*

h. **PLANNING COMMISSION APPROVAL**

   GUNNISON COUNTY PLANNING COMMISSION APPROVAL
   *The Planning Commission of Gunnison County, Colorado, hereby recommends _____ approval of this plat of the above subdivision, such recommendation being made at a meeting of said Commission held on this _____ day of _____, A.D. 20_____.*

   *_____*
   *Chairperson, Gunnison County Planning Commission*

i. **BOARD OF COUNTY COMMISSIONERS' APPROVAL.** As is consistent with the selected paragraph of dedication, any Final Plat submitted for approval shall contain one of the following statements of approval as appropriate:

   1. **BOARD APPROVAL LANGUAGE:**

      BOARD OF COUNTY COMMISSIONERS' APPROVAL
      *The within plat of (name of development in capital letters) is approved this _____ day of _____, A.D. 20_____, and the roads and other public areas are hereby accepted provided, however, that such acceptance shall not in any way be considered as an acceptance for maintenance or snow removal purposes. Maintenance of, or snow removal from, the subject roads shall be only upon a separate resolution of the Board of County Commissioners passed in accordance with such policies, resolutions or ordinances in effect at that time.*

      *_____*
      *Chairperson, Gunnison County Board of Commissioners*
      *Attest:*

      *_____*
      *Gunnison County Clerk and Recorder*

   2. **BOARD APPROVAL: FIRST ALTERNATIVE LANGUAGE:**

      BOARD OF COUNTY COMMISSIONERS' APPROVAL
      *The within plat of (name of development in capital letters) is approved this _____ day of _____, A.D. 20_____, and the private dedication of roads and common areas is approved on the condition that such*

BLM_0053983

*roads and common areas shall be maintained and snowplowed, by and at the expense of the lot owners and not by Gunnison County or any other public agency.*

_____

*Chairperson, Gunnison County Board of Commissioners*

*Attest:*

_____

*Gunnison County Clerk and Recorder*

3.   **BOARD APPROVAL: SECOND ALTERNATIVE LANGUAGE**:

BOARD OF COUNTY COMMISSIONERS' APPROVAL

*The within plat of (name of development in capital letters) Is approved this _____ day of _____, A.D. 20_____, as a seasonal use development only and not as a development served by a road opened or to be opened on a year-round basis. The roads and other public areas are hereby accepted provided, however, such acceptance shall not in any way be considered as an acceptance for maintenance purposes. Maintenance of, or snow removal from the subject roads shall be only upon a separate resolution of the Board of County Commissioners passed in accordance with such policies, resolutions or ordinances in effect at that time.*

_____

*Chairperson, Gunnison County Board of Commissioners*

*Attest:*

_____

*Gunnison County Clerk and Recorder*

4.   **BOARD APPROVAL: THIRD ALTERNATIVE LANGUAGE:**

BOARD OF COUNTY COMMISSIONERS' APPROVAL

*The within plat of (name of development in capital letters) is approved this _____ day of _____, A.D. 20,_____ as a seasonal use development only and not as a development served by a road opened or to be opened on a year-round basis. The private dedication of roads and common areas is approved on the condition that such roads and common areas shall be maintained and snowplowed, by and at the expense of the lot owners and not by Gunnison County or any other public agency.*

_____

*Chairperson, Gunnison County Board of Commissioners*

*Attest:*

_____

*Gunnison County Clerk and Recorder*

5.   **GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE.** (To be placed in the lower right-hand corner of cover sheet.)

GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE

*This plat was accepted for filing in the office of the Clerk and Recorder of Gunnison County, Colorado, on this _____ day of _____, A.D. 20_____, Reception Number _____, Time _____, Date _____.*

_____

*Gunnison County Clerk and Recorder*

6.   **SURVEYOR'S STATEMENT.** A statement, followed by the land surveyor's signature and seal, certifying that the survey was performed by him or under his direct responsibility and supervision and explaining how bearings, if used, were determined.

## SECTION 6-106: MINOR IMPACT REVIEW PROCESS

The following review process (illustrated in the flowchart in Appendix Figure 5: *General Review Process for Minor Impact Projects*) shall apply to applications for Minor Impact Projects:

A.   **PRE-APPLICATION CONFERENCE**. The applicant may choose to participate in a Pre-Application Conference before submitting a permit application for a land use change classified as a Minor Impact Project, pursuant to Section 3-108: *Pre-Application Conference*.

BLM_0053984

B. **SUBMITTAL OF DRAFT COPY**. The Community Development Department shall provide and the applicant shall complete an application that contains those materials specified in Section 6-104: *Minor Impact Application*. The applicant shall submit one draft copy of the application to the Community Development Department.

C. **COMMUNITY DEVELOPMENT DEPARTMENT REVIEW**. Review of the application shall be accomplished as specified in Section 3-110: *Community Development Department Application Review* and shall identify additional submittals that must be submitted by the applicant. If the property is located adjacent to agricultural operations, the Department shall provide a copy of the Right-to-Ranch policy, and a copy of the County's *Code of the West*, pursuant to Article 15: *Right-to-Ranch Policy*.

D. **TOTAL NUMBER OF COPIES REQUIRED.** Once the Community Development Department has determined that the application is complete, the Department shall notify the applicant of the required number of the complete application that must be submitted to provide a copy to each Planning Commission and/or Board member, to applicable review agencies, and for the Department file. A minimum of 15 copies is required. The Department shall, as applicable, forward the application and any relevant comments to the Planning Commission or Board.

E. **REQUEST FOR REVIEW BY OTHER AGENCIES OR DEPARTMENTS**. The Community Development Department may request the professional analysis and recommendations of review agencies, organizations, or technical consultants deemed appropriate and necessary to complete the review, including other County offices and departments; municipal, state, or federal agencies having an interest in or authority over all or part of the proposal; utility companies; the applicable school district and special service districts serving the proposed development; and engineers, designers, and legal consultants.

   1. **REVIEW AND COMMENT BY REVIEW AGENCIES**. The review agencies that are sent a copy of the application shall be requested to make comments within 21 days of mailing by the Community Development Department, unless an extension of not more than 30 days has been requested by the agency before the 21st day. The Department may grant such a reasonable extension if it determines that good cause for the delay has been shown. The failure of any agency to respond within 21 days or within the period of extension shall not be deemed an approval of the application by the agency.

   2. **REVIEW OF AGENCY/DEPARTMENT COMMENTS BY APPLICANT**. The applicant shall have the right to review the comments and recommendations received from the review agencies. The applicant may submit additional information and make changes in the development proposal to respond to the comments of the review agencies; provided, however, that if those changes are substantial or if they significantly alter the nature, character or extent of the application, the Community Development Department may, after the changes, refer the application again to some or all review agencies, to obtain additional comments, and may reasonably extend the period of their review accordingly.

F. **WORK SESSION(S)**. After the Community Development Department has determined the application to be complete, the Planning Commission shall conduct a work session or sessions to identify and consider any issues related to the application.

G. **SITE VISIT(S).** The Board and/or Planning Commission may conduct site visits of the proposed Project site if either body determines that the visit will provide information useful to its review of the proposal. Review of the application may be delayed for a reasonable period if inclement weather, or snow or mud conditions delay or prohibit a site visit.

H. **PUBLIC HEARING.** The Planning Commission shall conduct a public hearing to consider the application. The public hearing shall be conducted pursuant to Section 3-113: *Conduct of Public Hearing.*

   1. **JOINT PUBLIC HEARING FOR SUBDIVISION.** If the Minor Impact application involves an activity that meets the definition of a subdivision, the Board and Planning Commission shall jointly conduct the public hearing, and the notice shall so indicate; the timing of public notice shall comply with the notice required for Board hearings pursuant to Section 3-112: *Notice of Public Hearing.*

I. **SUBMITTAL OF INFORMATION NECESSARY FOR FINAL ACTION.** If the Planning Commission, after the public hearing, directs the staff to prepare a recommendation of approval or a decision document, the applicant shall submit the required information pursuant to Section 6-105: *Submittal for Final Action for a Minor Impact Project.*

J. **PLANNING COMMISSION ACTION.** It is the goal but not the requirement (as scheduling may be affected by limited access, inclement weather, or other unforeseen circumstances) of this *Resolution,* that within 60 days following the close of the public hearing, the Planning Commission shall endeavor to complete its review of the application, considering the relevant materials, testimony and compliance of the application with the applicable standards of this *Resolution,* and shall render either a Recommendation if the application is for a subdivision, or a Decision if the

BLM_0053985

application is a Minor Impact Project that is not a subdivision, condominium or townhome, or water impoundment Project classified as a Class II dam.

1. **DECISION ON APPLICATION THAT IS NOT FOR A SUBDIVISION, CONDOMINIUM OR TOWNHOME DEVELOPMENT, OR** WATER IMPOUNDMENT PROJECT CLASSIFIED AS A CLASS II DAM. If the application is not for approval of a subdivision, condominium or townhome development or a water impoundment that includes a dam classified by the Colorado Division of Water Resources as a Class II dam, pursuant to Section 13-118: *Water Impoundments*, the Commission shall render a decision, to approve, approve with conditions, or to deny the application. The Decision shall include a summarized description of the Project, the Commission's findings and if the decision is to approve the application, a determination that a development improvement agreement is appropriate and improvements for which surety should be required.

   a. **APPEAL.** A decision by the Planning Commission on an application for a Minor Impact Project may be appealed by referral to the Board, pursuant to Section 8-103: *Appeals.*

2. **RECOMMENDATION ON SUBDIVISION, CONDOMINIUM OR TOWNHOME DEVELOPMENT, OR WATER IMPOUNDMENT PROJECT CLASSIFIED AS A CLASS II DAM.** If the application is for approval of a subdivision, or condominium or townhome Project for which a plat is required or a water impoundment  that includes a dam classified by the Colorado Division of Water Resources as a Class II dam, the Commission shall complete a recommendation to the Board of Commissioners, recommending approval, approval with conditions, or denial, and include a summarized description of the Project, the Commission's findings and if for approval, a determination that a Development Improvement Agreement is appropriate and the improvements for which surety should be required.

K. **DRAFT DEVELOPMENT IMPROVEMENT AGREEMENT** Pursuant to Section 16-118: *Development Improvement Agreement Required*, when public or private improvements are a required component of a Land Use Change Permit, the applicant shall provide a copy of documentation of the certified final cost estimates to the County Attorney's office which will draft a Development Improvement Agreement that references specific amenities of the Project that were required  by the Preliminary Plan approval, and the method of funding to ensure their completion. The Development Improvement Agreement shall specifically identify such requirements referencing plans, drawings and schedules for completion and shall be substantially in the form referenced in Section 16-118: *Development Improvement Agreement Required.*

L. **BOARD DECISION ON OPTIONAL BOARD PUBLIC HEARING ON SUBDIVISION, CONDOMINIUM OR TOWNHOME DEVELOPMENT, OR WATER IMPOUNDMENT PROJECT CLASSIFIED AS CLASS II DAM.** If the application is for a subdivision or condominium or townhome development or a water impoundment that includes a dam classified by the Colorado Division of Water Resources as a Class II dam, the Board shall have the option of conducting a public hearing to consider the application and the Planning Commission's recommendation. Within 20 days of receipt of the Planning Commission's recommendation, the Board shall determine whether or not to conduct a public hearing. A decision to conduct or not to conduct such a hearing shall be based on the Board's determination of whether it is in the public interest to do so, considering among other factors the following:

1. **LEVEL OF PUBLIC INTEREST**. There has or has not been substantial public interest in the proposal; or

2. **IDENTIFICATION OF NEW ISSUES.** Whether it is reasonably probable that new issues related to the application of the proposed land use change will be identified; or

3. **IDENTIFICATION OF NEW INFORMATION.** Whether it is probable that new information related to the application will be provided.

4. **BOARD PUBLIC HEARING.** If the Board chooses to conduct a public hearing, the following shall apply:

   a. **HEARING NOTICE.** Public notice that the Board will conduct a public hearing to consider the Preliminary Plan shall be pursuant to Section 3-112: *Notice of Public Hearing.*

   b. **CONDUCT OF HEARING.** The Board hearing shall be conducted pursuant to Section 3-113: *Conduct of a Public Hearing.*

M. **BOARD ACTION.** Within 35 days after receipt of the Planning Commission recommendation if the Board did not conduct another public hearing, or within 35 days after closure of the hearing if the Board conducted another public hearing, the Board shall act within approve, approve with conditions, refer the application back to the Planning Commission for additional review, or deny the application. The Board's decision shall be entered into the official minutes of the meeting and shall contain the necessary findings of fact and reasons to support the decision. If the Board does not make separate findings of fact, it shall be presumed to have adopted the findings and recommendations of the Planning Commission. If the application is referred back to the Planning Commission for

BLM_0053986

additional review, the Board shall, within 60 days after receipt of the Planning Commission's additional recommendation, approve, approve with conditions, or deny the application.

1.  **ADDITIONAL PLANNING COMMISSION REVIEW.** Before it takes action on the application, the Board may refer the application back to the Planning Commission for further consideration and recommendations if at least one of the following circumstances is present:

    a.  **NEW INFORMATION SUBMITTED.** There has been information submitted that was not available for consideration by the Commission before its recommendation; or

    b.  **INSUFFICIENT EVALUATION.** There are substantive issues or requirements of this *Resolution* that were not sufficiently evaluated in the Commission's recommendations; or

    c.  **SUBSTANTIVE ALTERATION.** There has been a substantive alteration to the plan subsequent to the Commission's recommendation; or

    d.  **NEED FOR CLARIFICATION.** There is an element of the Planning Commission's recommendation that requires clarification.

N.  **RECORDATION OF CERTIFICATE.** Within 30 days following approval of the Minor Impact Project application, the Community Development Director shall record a *Certificate of Minor Impact Project Approval* in the Office of the Gunnison County Clerk and Recorder's Office. The Certificate shall summarize the specific Project, the legal description of the subject property, include reference to the approval by the relevant decision-making body, the date on which the approval occurred, and shall include as an attached exhibit a copy of any resolution or other decision document memorializing the approval.

O.  **RECORDATION OF SUBDIVISION PLAT.** If the Land Use Change Permit approval is for a subdivision plat, within 120 days of the date of approval of the application by the Board the County shall file, or shall oversee the filing of, the plat in the Office of the County Clerk and Recorder. Approved protective covenants shall be recorded in the Office of the Clerk and Recorder at the same time the plat to which they relate are filed in that office.

P.  **INSUBSTANTIAL CHANGES AND AMENDMENTS.** Insubstantial changes to an approved Minor Impact Project may be authorized by the Community Development Director without an additional public hearing.

1.  **LIMITS ON INSUBSTANTIAL CHANGES.** Insubstantial changes shall be limited to technical or engineering considerations that arise during final design or during actual construction, or similar minor modifications to features of the Project that are necessary to address technical constraints or unanticipated consequences.

2.  **ACTIVITIES NOT CONSIDERED INSUBSTANTIAL CHANGES.** Activities that shall not be considered insubstantial changes and may not be authorized by the Community Development Director include changes to the overall character of the Project, changes that substantially increase the Project's trip generation or the demand for public facilities, and changes that are inconsistent with a condition or representation of the Project's original approval. Such activities shall be considered amendments of the plan and may only be authorized by the applicant's submitting a new application and repeating the review process for a Minor Impact Project.

BLM_0053987

BLM_0053988

# ARTICLE 7:
# MAJOR IMPACT PROJECTS

This Article establishes the review process, application submittal requirements, and review standards that apply to the review of Land Use Change Permit applications for development classified as Major Impact Projects.

## DIVISION 7-100:
## CLASSIFICATION, STANDARDS AND GENERAL REVIEW STEPS FOR MAJOR IMPACT PROJECTS

## SECTION 7-101: PROJECTS CLASSIFIED AS MAJOR IMPACT

The following uses shall be classified and reviewed as Major Impact Projects:

A. **MORE THAN FOUR UNITS.** More than four units that are subdivision lots, duplex units, or multiple-family residences.

B. **NEW COMMERCIAL, INDUSTRIAL LARGER THAN 5,000 SQ. FT. OR FIVE ACRES.** A new commercial or industrial use of more than 5,000 sq. ft. of structure, or on a parcel of more than five acres, or which, because of Projected traffic, hours of operation, or type of use, may be classified as a Major Impact Project, or would be the first instance of a commercial or industrial land use in an area in which no other commercial or industrial land use currently exists.

C. **EXPANSION OF COMMERCIAL OR INDUSTRIAL USE OF 10,000 SQ. FT. OR MORE.** Expansion of a commercial or industrial use, existing as of the effective date of this *Resolution*, of 10,000 sq. ft. or more.

D. **LARGE NEW OR EXPANDED MINING OPERATIONS.** New or expanded mining operations that operate for more than 180 days per year, produces more than 10,000 tons of ore/waste per year, or affects more than two surface acres of land, pursuant to Division 9-400: *Exploration, Extraction and Processing of Minerals and Construction Materials.*

E. **LARGE CONSTRUCTION MATERIALS OPERATIONS.** Any sand, gravel or quarry operation providing material that will operate for more than two years, pursuant to *Division 9-400: Exploration, Extraction and Processing of Minerals and Construction Materials.* Larger operations may require review under the *Gunnison County Special Development Projects Regulations*.

F. **WATER IMPOUNDMENT PROJECTS CLASSIFIED AS CLASS I DAMS**. New Projects, or facilities, or expansion of existing Projects or facilities, that involve the design, construction and operation of a water impoundment that includes a dam classified by the Colorado Division of Water Resources as a Class I dam, pursuant to Section 13-118: *Water Impoundments*.

G. **TRANSMISSION LINES.** Construction of a new transmission line(s) in an area in which no line(s) currently exists, but not including a Project for which a Land Use Change Permit has been granted in which the design, construction, location and impacts of the utility line(s) were reviewed and approved.

H. **PRECEDENT FOR FUTURE LAND USE THAT IS DIFFERENT THAN EXISTING USE.** Any proposal that sets a precedent for future land use that is significantly different than existing land uses in the impact area.

## SECTION 7-102: STANDARDS OF APPROVAL FOR MAJOR IMPACT PROJECTS

An application for a Land Use Change Permit for a Major Impact Project shall comply with the standards of this section. Compliance of the proposed land use change with these standards shall be determined broadly and conceptually during Sketch Plan review, in detail during Preliminary Plan review, and definitively during Final Plan review.

BLM_0053989

*SECTION 7-103: GENERAL REVIEW STEPS FOR MAJOR IMPACT PROJECTS*

**A.  COMPLIANCE WITH ALL APPLICABLE STANDARDS.** The proposed land use change shall comply with, and the burden shall be on the applicant to demonstrate through competent evidence, that the proposed land use change complies with all applicable requirements of this *Resolution*.

**B.  COMPATIBILITY WITH COMMUNITY CHARACTER.** The proposed land use change shall be compatible with, or an enhancement of, the character of existing land uses in the development area, and shall not adversely impact the future development of the development area.

**C.  PHASES REQUIRED TO "STAND ALONE" IN PROVIDING SERVICES.** If the land use change is to be developed in phases, then each phase shall contain the required roads, bridges, utilities, landscaping, and other improvements that are necessary and desirable for residents of the Project. If the land use change incorporates any amenities for the benefit of the County, such  as trail connections, these shall be constructed within the first phase of the  Project, or, if this is not possible, then at a time defined and agreed upon as part of the Development Improvement Agreement at Final Plan approval.

**D.  USES SHALL BE IDENTIFIED.** The Board shall not approve any subdivision that creates any new lot for which no uses have been identified.

## SECTION 7-103: GENERAL REVIEW STEPS FOR MAJOR IMPACT PROJECTS

**A.  PURPOSE.** Major Impact Projects require the consideration by the County of a Sketch Plan, Preliminary Plan, and Final Plan, in that order. This Section provides an overview of what is expected to occur during reviews of each of those plans. Each step is a distinct process involving the submittal of an application, an application fee, required plans and reports, referrals of the proposal to other agencies, staff analysis, work sessions and public hearings. At each step of the process the design and engineering detail increases in order to relieve the applicant from major and potentially unnecessary expenses in situations that may require a redesign and a revision of expensive engineering or planning reports. Approval at any step in the process does not ensure approval at the next step.

**B.  SKETCH PLAN IS EXPLORATORY.** Sketch Plan review provides an opportunity for the County, the applicant, and the public to engage in an exploratory discussion of a proposed land use change, to examine alternative approaches to development of the property, to participate in a process of joint planning and negotiation between the County and the applicant to promote development and land use change which is consistent with the intent and purposes of this *Resolution*.

    **1.  SKETCH PLAN EXPECTED TO EVOLVE.** Requirements of Sketch Plan direct the applicant to review specific sections of this *Resolution* and submit a plan that has addressed issues important to the County. It is expected that the proposal will evolve during Sketch Plan review.

    **2**.  **ENGINEERED DESIGNS AND DETAILED PLANS NOT REQUIRED NOR ACCEPTED AT SKETCH PLAN.** To encourage the consideration of alternatives and to allow the Sketch Plan to evolve, detailed engineering plans and other overly detailed information shall not be required nor accepted by the County.

**C.  PRELIMINARY PLAN PROVIDES DETAILED SOLUTIONS AND DESIGN.** Preliminary Plan review requires the applicant to formulate detailed, designed/engineered solutions to the issues and concerns identified during Sketch Plan review, and to address, in a site-specific manner, all other issues that are relevant to the Preliminary Plan. The burden in the Preliminary Plan review is on the applicant to provide detailed information and mitigation proposals for evaluation.

    **1.  PRELIMINARY AND FINAL PLANS MAY BE COMBINED**. The Preliminary Plan and Final Plan may be combined and processed together based upon consideration of the following factors: design, size, public concern, public facilities and services.

**D.  FINAL PLAN FORMALIZES PROJECT.** The purpose of the Final Plan review procedure is to provide a permanent and accurate public record of the development plan: exact size, shape and location of all approved activities and uses, and, as applicable, lots, blocks, streets, easements and other parcels of land within the development, together with all applicable protective covenants, conditions, use restrictions and design and development criteria. A Final Plan or plat shall conform in all respects to the Preliminary Plan previously reviewed and approved by the Board and shall incorporate all modifications and special conditions required by the Board.

BLM_0053990

# DIVISION 7-200:
# SKETCH PLAN FOR MAJOR IMPACT PROJECTS

## SECTION 7-201: SKETCH PLAN APPLICATION FOR MAJOR IMPACT PROJECTS

**A.** **NOTIFICATION TO COUNTY IF FEDERAL PERMITS REQUIRED FOR PROJECT**. When an EA or EIS or other state or federal action or permit is required, and that requirement is known by the applicant, the applicant shall notify the County of that requirement when the application is first submitted for review.

**B.** **LOCATION OF SITE WITHIN SPECIAL GEOGRAPHIC AREA OR DISTRICT.** As applicable, an application proposing a land use change on a parcel located within a designated Special Area or special district may be required to comply with regulations of that Area or district.

**C.** **AREA AND PHASING OF DEVELOPMENT**. The Sketch Plan application shall relate to all of the area proposed for immediate or future development, including all contiguous land under ownership by the applicant. If phasing is proposed by the applicant or determined by the County to be appropriate, the general concept of that phasing shall be addressed.

**D.** **APPLICATION AND REVIEW FEES.** In order to compensate the County for the cost of reviewing and processing the Sketch Plan, each applicant shall pay the required fee, as shown in a schedule of fees issued by the Community Development Department that is adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

  **1.** **COST FOR PUBLIC HEARING NOTICE(S)**. In addition to the Sketch Plan submittal fee, the applicant shall be billed and shall be responsible for paying for the actual cost of publication of all applicable public hearing notices as required pursuant to Section 3-112: *Notice of Public Hearing*.

**E.** **COPY OF PROPERTY TAX CERTIFICATE.** One copy of certification from the Gunnison County Treasurer's Office indicating that all real property taxes applicable to the subject parcel on which the land use change is proposed have been paid up to the year in which approval is under consideration.

**F.** **SUBMITTAL OF DRAFT COPY OF NARRATIVE AND MAP SUBMITTALS**. The applicant shall submit one draft copy of the Sketch Plan application to the Community Development Department.   The Sketch Plan includes both a narrative describing elements of the proposed Project, and maps and layout plans to illustrate it.

**G.** **TOTAL NUMBER OF COPIES REQUIRED.** Once the Community Development Department has determined the submittal to be complete, it shall determine the number of copies of the Sketch Plan application that are necessary for review and action by the Planning Commission and/or Board, and other review agencies or County departments, and shall notify the applicant of the number of copies of the complete plan that are required to be submitted.

**H.** **GENERAL INFORMATION IN NARRATIVE.** The narrative is required to include at least the following information, presented in the same order as it is listed in this Section, in a stapled or otherwise bound document, on consecutively numbered pages and including a *Table of Contents*.

  **1.** **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant. If the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and also stating the same information for the agent.

   **a.** **APPLICANT IS NOT THE OWNER**. If the applicant is not the owner of the land, or is a contract purchaser of the land, the applicant shall submit a notarized letter signed by the owner consenting to the submittal. Consent of the owner for submittal shall imply consent by the owner for the County to complete the review process pursuant to this *Resolution*.

   **b.** **APPLICANT IS NOT THE SOLE OWNER.** If the applicant is not the sole owner of the land, the applicant shall submit a notarized letter(s) signed by all other owners, and/or by an association or corporation representing the owners, consenting to, or joining in, the application.

  **2.** **PROPERTY OWNER.** Name, address, telephone and fax numbers and email address of the owner of the property and, if other than the applicant, a notarized letter from the owner consenting to the application.

  **3.** **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, or metes and bounds), property address and common description of the parcel ( such as mileage from highway or County

BLM_0053991

road, or other recognized landmarks) on which the land use change is proposed to be located. A copy of the recorded deed to the property should be included.

4. **DATE OF APPLICATION.** The date the application was prepared.

5. **STATUS OF PARCEL AS A LEGAL LOT.** If the parcel on which the land use change is proposed is smaller than 35 acres, the Department may also request the applicant to supply information sufficient to document that the subject was legally created.

6. **LIST OF ADJACENT LANDOWNERS.** As applicable, a listing of all landowners and land uses that are adjacent to the boundaries of the entire parcel on which the Project is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the property except for the existence of the roadway. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel shall be included in the listing. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

7. **IDENTIFICATION OF PRESENT LAND USE AND PREVIOUSLY-APPROVED USES.** Identification of present land use, locations, and sizes of structures that exist on the subject property. Land Use Change Permits or other permitted activities that were previously approved for the parcel on which this land use change is proposed.

8. **MINERAL RESOURCES.** Indication of mineral resources that are known, or reasonably believed to be located in the property proposed for the land use change, whether the area has been the site of underground or surface mining activity, and whether an original patent has been issued to the property under federal mining law. If reasonably available, a list of the owners or lessees of underlying mineral estates is to be included.

9. **PROJECT DESCRIPTION.** A description of what the applicant wants to do on or to the property, including the following:

   a. **USES AND ACTIVITIES, NUMBERS OF UNITS, OR SIZES OF USES.** Proposed uses or activities, division of land, adjustment of boundaries, expansion of existing uses, construction, materials to be stockpiled, indoor and outdoor storage areas. Numbers of units or lots. Estimated square footage or acreage of commercial, industrial or other uses. The proposed number of residential and/or other units and estimated square footage of structures may be expressed as a range, provided the top end of the range is no more than 20 percent higher than the bottom end of the range.

   b. **DESCRIPTION OF OFF-SITE RESOURCES.** Description of off-site resources such as gravel and haul routes as may be necessary to accomplish the Project.

   c. **SEASONS AND HOURS OF OPERATION.** As applicable, the seasons of the year in which the activity is proposed to be conducted, and the intended hours of operation.

   d. **PHASES.** Any phases that may be proposed within a Final Plan for the development.

I. **MAPS AND SITE PLAN SHEETS.** Maps shall be at a scale and sheet size to permit adequate review, but sheet size shall not exceed 24 inches by 36 inches. Each map or layout of the site plan shall be separate, and folded to a size to allow mailing or storage within a standard legal-sized folder; maps shall not be submitted in a rolled form. Elements required to be submitted in map or layout form may be combined on one or more sheets of the submittal, so long as all elements are legible. The following elements shall be included on the map submittals:

   1. **VICINITY MAP (illustrated in Appendix Figure 2:** *Vicinity Map Example*). **VICINITY MAP.** A vicinity map, which at a minimum includes the following (as illustrated in Appendix Figure 2: *Vicinity Map Example*):

      a. **PROPERTY LOCATION AND NEARBY PARCEL SIZES AND LAND USES.** Location of the property on a United States Geological Survey quadrangle map or on a recorded plat if the proposed development is within an approved subdivision, with the location highlighted so that it is easy to see, and that clearly shows sizes of parcels and land uses within a half-mile of the proposed Project.

      b. **ROADS.** All U.S. and state highways and nearest County or Forest Service, Bureau of Land Management, and/or subdivision/private roads that provide access to this proposed Project.

      c. **BOUNDARIES OF DISTRICTS, MUNICIPALITIES OR SUBDIVISIONS.** Locations of special district boundaries, municipalities or residential subdivisions within a half mile of the property.

      d. **PROXIMITY OF MINING OR PROCESSING ACTIVITY.** Any parcel located within 1,000 feet of the property proposed for land use change on which there exists an operation involving mineral exploration or extraction or construction materials processing.

BLM_0053992

2. **NATURAL FEATURES**. A map or maps identifying the general locations of the following elements, and any other significant visual or other resource areas on the property:

   a. **MAPS AND TABLES OF SOILS TYPES**. Maps and tables, describing the suitability of the existing soil types for the proposed development, using standard soil classifications and process; information available from the U.S.D.A. Natural Resources Conservation Service is suitable for this submittal. .

   b. **TOPOGRAPHY/CONTOURS.** Topography, as depicted on a United States Geologic Survey map, or its equivalent.

   c. **SLOPE ANALYSIS MAP.** Topography shall be classified into areas having a slope of 0-15 percent, 15-30 percent, and greater than 30 percent.

   d. **WILDFIRE HAZARD MAPS.** Wildfire Area Hazard Maps prepared by the Colorado State Forest Service.

   e. **GEOLOGIC HAZARD MAPS.** Geologic Hazard Maps prepared by the Colorado Geologic Survey, or their equivalent, as prepared by a professional geologist.

   f. **WILDLIFE HABITAT MAPS.** Wildlife Habitat Maps, prepared by the Colorado Division of Parks and Wildlife including the Wildlife Resource Information System (WRIS) and/or the National Natural Diversity Information Source (NDIS) maps available from the Colorado Division of Parks and Wildlife; and the Gunnison County *Gunnison Sage-grouse Habitat Map*. Maps may also be submitted  that are prepared by the applicant's wildlife consultant to provide site-specific detail using the Colorado Division of Parks and Wildlife and Gunnison County habitat maps as baseline data.

   g. **WETLANDS MAPS.** Existing wetlands identification maps; if no existing identification maps exist, that mapping will be required, conducted by a wetlands delineator and submitted as part of the Preliminary Plan.

   h. **FLOODPLAINS**. Floodplain maps provided pursuant to the Federal Emergency Management Act, and available in the Community Development Department, or site-specific maps prepared by a qualified professional engineer, licensed in the state of Colorado. That mapping will be required, conducted and submitted as part of the Preliminary Plan, pursuant to Section 11-103: *Development in Areas Subject to Flood Hazards.*

   i. **PROMINENT RIDGELINES**. Prominent ridgelines, pursuant to the list of "ridgeline vantages" in Section 11-108: *Standards for Development on Ridgelines*, and/or other significant visual resources on the property.

   j. **VEGETATION**. Existing groves of trees and other major types of vegetation.

3. **SITE PLAN.** A map including the area within a half mile of the boundaries of the parcel on which the Project is proposed, and including the following:

   a. **PROXIMITY OF MINING OR PROCESSING ACTIVITY.** Any parcel located within 1,000 feet of the property proposed for land use change on which there exists an operation involving mineral exploration or extraction or construction materials processing.

   b. **ROADS.** All U.S. and state highways and nearest County or Forest Service, Bureau of Land Management, and/or subdivision/private roads that traverse and/or provide access to this proposed Project..

   c. **EASEMENTS.** Easements recorded or historically used that provide access to or across, or other use of, the property.

   d. **TRAILS, PARKS OR ACCESS TO PUBLIC LANDS.** Any physically existing and/or dedicated trails, parks, or access points to public lands.

   e. **EXISTING LAND USES**. Existing land uses within a half mile of the proposed site, and those along any access road serving the proposed development.

4. **DEVELOPMENT LAYOUT MAP**. The development layout map shall include the following:

   1. **ALL PROPERTY PROPOSED FOR DEVELOPMENT**. All land proposed for immediate or future development.

   2. **PHASES**. Locations of any contemplated phases of the proposed development.

   3. **LOCATIONS OF LOTS AND STRUCTURES.** Locations of existing and proposed lots and/or structures, and, as applicable, the anticipated locations of residential, commercial, industrial, or other structures, or non-structural areas of activity.

BLM_0053993

4.  **OPEN SPACE.** The general locations and dimensions of proposed open space. The requirements of Section 13-108: *Open Space and Recreation Areas* shall guide the design of the Sketch Plan.

5.  **PARKING AREAS.** The general locations of all proposed parking areas and the approximate number of spaces each will contain. The requirements of Section 13-110: *Off-Road Parking and Loading* and the minimum distances listed in Appendix Table 2: *Off-Road Parking Requirements* shall guide the design of the Sketch Plan.

J.  **ROADS AND TRAILS SYSTEM PLAN.** The general locations and alignment of entry roads to the property from off-site and primary roads and proposed driveway locations, trails or sidewalks on-site. Identification of federal, state and County roadways that will provide access to the proposed Project. The requirements of Section 12-103: *Road System* and Section 12-104: *Public Trails* shall guide the design of the Sketch Plan.

K.  **ACCESS AND OTHER EASEMENTS.** All known easements, recorded or historically used, that provide access to or across, or other use of, the property, including but not limited to, those for utilities, irrigation and drainage ditches, drainage swales, headgates, roads and trails, egress/ingress, or other access affecting the property shall be shown on the Sketch Plan.

L.  **FLOOD HAZARD AREAS.** When a land use change is proposed on a parcel located within a floodplain hazard area as delineated on maps described in Section 11-103: D: *Official Maps* or the National Flood Insurance Rate Maps (FIRM) prepared by the Federal Emergency Management Agency May 16, 2013 the narrative, map and design layout of the Sketch Plan shall be guided by the requirements of Section 11-103: *Development in Areas Subject to Flood Hazards*.

M.  **GEOLOGIC HAZARD AREAS.** When a land use change is proposed on a parcel located in a geologic hazard area as delineated on Geologic Hazard Maps prepared by the Colorado Geologic Survey the narrative, map and design layout of the Sketch Plan shall address and be guided by the requirements of Section 11-104: *Development in Areas Subject to Geologic Hazards*.

N.  **LOCATION OF SITE WITHIN WILDFIRE HAZARD AREA AND FIRE PROTECTION.** The narrative, map and layout design of the Sketch  Plan shall be guided by the requirements of Section 11-105: *Development in Areas Subject to Wildfire Hazard* and Section 12-107: *Fire Protection*, and include measures to minimize the potential that the proposed uses will generate or increase wildfire

O.  **WILDLIFE HABITAT.** When a land use change is proposed on a parcel located in a wildlife habitat area as delineated on Wildlife Habitat Maps referenced by the County, the narrative, map and design layout of the Sketch Plan shall be guided by the requirements of Section 11-106: *Protection of Wildlife Habitat Areas.*

P.  **LOCATION OF SITE WITHIN AREA POTENTIALLY AFFECTED BY WETLANDS AND WETLANDS PERMITTING.** The narrative, map and layout design of the Sketch Plan shall be guided by the requirements of Section 11-107: *Protection of Water Quality*, depict locations of water bodies, and acknowledge that the property may be subject to design constraints of Restrictive Inner Buffers, and Variable Outer Buffers as regulated by that Section.

Q.  **DEVELOPMENT ON RIDGELINES.** If the proposed land use change is on property in which there are land formations visible from any ridgeline vantage as defined by this *Resolution*, and described pursuant to Section 11-108: *Standards for Development on Ridgelines,* the narrative, map and layout design of the Sketch Plan shall be guided by the requirements of that Section.

R.  **DEVELOPMENTS IMPACTING AGRICULTURAL LANDS.** If the proposed land use change adjoins agricultural lands, involves land through which irrigation ditches flow, or over which there are general or exclusive easements for stock drives, the narrative, map and design layout of the Sketch Plan shall be guided by the requirements of Section 11-109: *Development That Affects Agricultural Lands*, and  Section 15-103: *Right-to-Ranch Policy* and shall identify the following:

1.  **AGRICULTURAL LAND OWNER.** The location(s) and name(s) of owner(s) of any agricultural land(s) adjoining or possibly impacted by the proposed land use change.

2.  **AGRICULTURAL DITCH.** The location(s), name(s), name(s) of owner(s), size(s), and decreed capacity(ies) of any agricultural ditch crossing or adjoining the development property, as available from the Colorado Division of Water Resources, or ditch commissioner's records.

3.  **EASEMENTS**. The location of historical easements used to gain access to headgates, ditches, and fences for maintenance or operations.

BLM_0053994

4. **LIVESTOCK DRIVES AND FENCELINES.** Historic or recorded stock drive easements crossing or adjoining the development property, including the location of any existing fences along property lines, and the location of new fences or other obstacles proposed to be built across any such stock drive.

**S.** **LANDS BEYOND SNOWPLOWED ACCESS.** If the proposed land use change is on property located where there previously has been no snowplowed access, narrative, map and layout design of the Sketch Plan shall be guided by Section 11-110: *Development of Land Beyond Snowplowed Access.*

**T.** **DEVELOPMENT ON INHOLDINGS IN NATIONAL WILDERNESS.** If the proposed land use change is on property located on an inholding within a national Wilderness Area, the narrative, map and design layout of the Sketch Plan shall be guided by Section 11-111: *Development on Inholdings in the National Wilderness.*

**U.** **DEVELOPMENT ON PROPERTY ABOVE TIMBERLINE.** If the proposed land use change is on property located above timberline the narrative, map and design layout shall be guided by Section 11-112: *Development on Property Above Timberline.*

**V.** **WATER SUPPLY PLAN.** A report addressing the requirements of Section 12-105: *Water Supply*, to demonstrate that, for the type of development proposed, the water supply is sufficient in terms of quality, quantity and dependability. Documentation shall include the following:

1. **QUALITY.** Evidence shall be submitted concerning the potability of the proposed water supply.

2. **TESTS FOR POTABILITY.** If the water is intended for human consumption, the applicant shall find the closest existing well that lies within the same aquifer as well(s) proposed to provide a source of water for the proposed land use change, and shall make a good faith effort to obtain and submit water quality testing results from that well that demonstrate the potability of the proposed water supply.

3. **QUANTITY.** Evidence shall be submitted that the proposed water source will actually supply an adequate quantity of water to the proposed development, including, but not limited to:

   a. **HISTORIC USE.** Evidence of the historic use and yield of the claimed water rights; or

   b. **HYDROLOGIST'S REPORT.** A report of a qualified hydrologist; or

   c. **PUMPING TEST RESULTS.** Pumping test results on nearby existing well or wells, located within the same aquifer as the proposed well(s); or

   d. **EVIDENCE OF CENTRAL WATER SUPPLY.** If applicable, evidence that a public or private water provider can and will supply water adequate to serve the proposed development, stating the amount of water available for use within the development, and the feasibility of extending service to that area. In determining the amount of water available, the water provider shall consider, and provide documentation of, existing commitments to provide water at a future date to users in other than the applicant.

   e. **IRRIGATION NEEDS.** The estimated amount of irrigated acreage required for the proposed use.

   f. **FIREFLOW.** The estimated amount of water required to provide adequate fire flow, pursuant to Section 12-107: *Fire Protection.*

   g. **POTABLE WATER DEMAND.** A statement as to whether or not some of the water must be potable and is intended for human consumption. If potable water is to be provided, the following are to be addressed:

      1. **ESTIMATED AVERAGE DAILY DEMAND.** Estimated average daily demand of the entire service area and the proposed development. Demand calculations are to be based upon 350 gallons per day (gpd) per residence, year-round. Estimated average daily demand for commercial and industrial users will be reviewed based on the proposed uses and levels of use.

      2. **ESTIMATED MAXIMUM DAILY DEMAND.** Estimated maximum daily demand based on a figure of three times the average daily demand.

      3. **ESTIMATED PEAK HOUR DEMAND.** Estimated peak hour demand based on a figure of six times the average daily demand.

   h. **WATER RIGHTS.** Evidence of ownership or right of acquisition or use of existing water rights shall be submitted, including, but not limited to:

      1. **DEEDS OR COURT DECREES.** Copies of deeds or court decrees giving the applicant the absolute right to use an existing water right for the proposed use; or

BLM_0053995

    **2. EXECUTED AGREEMENTS**. Copies of executed agreements or conditional court decrees giving the applicant the right to use water for the proposed use at some future time under specified conditions; or

    **4. ATTORNEY'S LETTER ABOUT FEASIBILITY**. If further court action in the nature of an application for change in use of a water source, or change in point of diversion and/or plan of augmentation will ultimately be required, a letter from a licensed Colorado attorney briefly describing that court action and expressing an opinion as to the feasibility of the success of that action and the feasibility that existing rights can be changed.

**W. SEWAGE DISPOSAL**. A report that identifies whether sewage disposal/wastewater treatment will be accomplished by individual sewage disposal systems or by a central wastewater treatment system.

    **1. NEW CENTRAL WASTEWATER TREATMENT SYSTEM**. If a new central wastewater treatment system is planned, then the estimated daily number of gallons of sewage generated by the proposed development shall be provided, along with a general description or discussion of the proposed method of treatment or disposal including the estimated capacity and general location of the proposed system.

    **2. USE OF EXISTING CENTRAL WASTEWATER TREATMENT SYSTEM**. If use of an existing central wastewater treatment system is proposed, the following shall be submitted:

        **a. COMPLIANCE WITH CDPHE REQUIREMENTS**. Documentation from the system operator that the system is in compliance with the applicable permitting and operation requirements of Colorado Department of Public Health and Environment.

        **b. CONFIRMATION OF WILLINGNESS TO SERVE**. Documentation attested by the proposed provider indicating that there is sufficient capacity and willingness to provide the service.

    **3. USE OF INDIVIDUAL SEWAGE DISPOSAL SYSTEMS REQUIRES INITIAL COUNTY EVALUATION.** If individual sewage disposal systems are proposed, the applicant shall contact the Gunnison County Environmental Health Official to schedule an on-site visit. The on-site evaluation shall be conducted at the expense of the applicant, and is intended to provide only an initial and cursory observation of the feasibility of individual systems on the proposed development site. The Official will provide a report of the evaluation to the applicant and to the Planning Commission.

**X. GENERAL SITE PLAN STANDARDS AND LOT MEASUREMENTS.** The narrative, map and design layout shall address and comply with the requirements of Section 13-103: *General Site Plan Standards and Lot Measurements*.

**Y. SETBACKS FROM PROPERTY LINES AND ROAD RIGHTS-OF-WAY.** The narrative, map and design layout shall address and comply with the setback requirements of Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way*.

**Z. LANDSCAPING PLAN.** A conceptual landscaping plan shall be submitted, pursuant to Section 13-111: *Landscaping and Buffering*.

**AA. RECLAMATION AND NOXIOUS WEED CONTROL**. A Sketch Plan application shall acknowledge that an *Earthmoving Site Revegetation and Noxious Weed Control Plan*, as designed and/or approved by the Gunnison Basin Weed Specialist pursuant to Section 13-115: *Reclamation and Noxious Weed Control* will be required to b prepared for the Preliminary Plan submittal, if the Sketch Plan is approved.

**BB. GRADING AND DRAINAGE PLANS.** The Sketch Plan application narrative, map and design layout shall be guided by the requirements of Section 13-116: *Grading and Erosion Control* and Section 13-117: *Drainage, Construction and Post-Construction Storm water Runoff*.

**CC. WATER IMPOUNDMENTS**. If water impoundments are proposed as part of the proposed development, the Sketch Plan application narrative, map and design layout shall indicate that  impoundments are to be part of the plan the submittal shall be guided by the requirements of Section 13-118: *Water Impoundments*.

**DD. SCHOOLS, PARKS, AND COMMON AREAS.** The Sketch Plan application shall identify those areas that are proposed to be set aside for schools, parks, or common areas, as applicable.

    **1. SCHOOL LAND REQUIREMENTS SHALL COMPLY WITH AGREEMENT**. When a separate intergovernmental agreement exists between Gunnison County and the school district within whose boundaries the development is located, the dedication of land, payment-in-lieu, or a combination of dedication and payment, shall comply with that agreement.

**EE. SOLID AND HAZARDOUS WASTES**. The Sketch Plan application shall describe:

    **1. DISPOSAL METHOD.** The method to be used by the development for the disposal of solid wastes; and

100

2. **HAZARDOUS SUBSTANCES.** Whether the development can reasonably be expected to produce hazardous substances or hazardous waste materials, as defined by Colorado law.

FF. **PROTECTIVE COVENANTS OR RESTRICTIONS.** If the proposed land use change is for a subdivision or condominium/townhome development, the applicant shall submit a narrative outline of the protective covenants and/or a general listing of design criteria that will be applied in the development of the subdivision and a provision for the enforcement of the covenants by property owners in the subdivision, and by Gunnison County. The criteria shall create a consistent design theme for the development and shall address, at a minimum, the following items:

1. **RESPONSIBILITIES OF HOMEOWNERS' ASSOCIATION** Responsibilities of property owners or homeowners' association to collect dues, maintain common areas, improve infrastructure common to the development, maintenance of a decreed water augmentation plan and the augmented water supply, treatment of wastewater and/or water, and to oversee the maintenance of the general appearance of the development.

2. **COUNTY IS PARTY TO ENFORCEMENT OF PROTECTIVE COVENANTS IN A SUBDIVISION**. Language that allows and requires enforcement of the protective covenants by property owners of the development and that names Gunnison County as a party to enforcement.

3. **COUNTY IS PARTY TO AMENDMENT OR TERMINATION**. Language that requires that amendment or termination of the protective covenants is subject to approval by Gunnison County.

4. **DESIGN CRITERIA.** Design criteria that will govern construction within the proposed development. The applicant should become familiar with and comply with the requirements of the following listed sections of this *Resolution*, in drafting covenants for the Sketch Plan level of review, and address the following:

5. **BUILDING SCALE AND LOCATION.** Language defining building heights, compatibility with terrain, and sizes of all structures that will be allowed by the protective covenants. Section 11-108: *Standards for Development on Ridgelines*, Section 13-103: *General Site Plan Standards and Lot Measurements,* Section 13-105: *Residential Building Sizes and Lot Coverages*

6. **ARCHITECTURAL STYLE AND EXTERIOR APPEARANCE.** Language describing the architectural style that will be required of all structures in the proposed development, and the types and colors of exterior materials to be used, including siding and roofing.

7. **ENERGY AND RESOURCE CONSERVATION.** Language advising lot owners that an application to Gunnison County for a residential Building Permit must comply with all applicable building codes adopted and amended by Gunnison County, and with any applicable energy and resource conservation standards currently required by the County.

8. **SOLID-FUEL-BURNING DEVICES.** If solid-fuel-burning devices are proposed to be used in the development, restrictions shall be listed ensuring compliance with Section 13-107: *Installation of Solid-fuel-burning Devices.*

9. **EXTERIOR LIGHTING.** Language that includes requirements that comply with those specified by Section 13-114: *Exterior Lighting.*

10. **USE AND MAINTENANCE OF OPEN SPACE AREAS**. As applicable, language shall be included that lists uses allowed on, and requires maintenance of common open space areas by the homeowners association, or other appropriate entity. The applicant should become familiar with and comply with the requirements of Section 13-108: *Open Space and Recreation* Areas in drafting covenants for the Sketch Plan level of review.

11. **SIGNS.** Language shall be included that informs property owners or other land users within the proposed development that installation of signs requires compliance with the Gunnison County regulations and may require a Gunnison County Sign Permit.

12. **RULES CONCERNING PARKING**. Language concerning limitations on parking within the development and/or outside the development by users of the development. The applicant should become familiar with and comply with the requirements of Section 13-110: *Off-Road Parking and Loading* in drafting covenants for the Sketch Plan level of review.

13. **LANDSCAPING AND BUFFERING**. Language addressing installation and maintenance of landscaping on individual lots and common areas. The applicant should become familiar with and comply with the requirements of Section 13-111: *Landscaping and Buffering* in drafting covenants for the Sketch Plan level of review.

14. **PROVISION FOR SNOW REMOVAL AND SNOW STORAGE.** Language identifying responsibility of a property owners' or homeowners' association or other entity to remove snow from interior roads and parking areas, and

BLM_0053997

other applicable requirements. The applicant should become familiar with and comply with the requirements of Section 13-112: *Snow Storage* in drafting covenants for the Sketch Plan level of review.

15. **STANDARDS TO ENSURE COMPATIBLE USES.** As applicable, specific covenants or other restrictions designed to mitigate impacts to nearby residential or public use areas or neighborhood land uses, pursuant to Section 13-119: *Standards to Ensure Compatible Uses.*

16. **DOMESTIC ANIMAL CONTROL.** Language limiting the maximum number of domestic animals allowed on a lot or within the development, and requiring that they be confined on site by kenneling, leashing or other similar means. Language that includes requirements that comply with those specified by Section 11-106: F.6: *Domestic Animal Controls,* Section 11-109: D: *Domestic Animal Controls*, and Section 9-508: *Keeping of Livestock Not On an Agricultural Operation.*

17. **FENCING.** The applicant should become familiar with and comply with the requirements of Section 13-113: Fencing in drafting covenants for the Sketch Plan level of review. If there is to be a fence separating the proposed development from lands on which there are agricultural operations or are public lands, language shall be included acknowledging Colorado's "fence out" requirements, and placing responsibility for construction and maintenance of the fence with the property owners' or homeowners' association.

GG. **STRUCTURAL DESIGN.** If the applicant is the developer of any structure in the proposed Project, then simple sketches, massing diagrams or models (without architectural details) shall be submitted. These shall be intended to show building mass, scale, and height in a conceptual manner in relation to natural site features, and in relation to surrounding structures. The applicant should become familiar with, and comply with the requirements of Section 13-103: *General Site Plan Standards and Lot Measurements* and Section 13-105: *Residential Building Sizes and Lot Coverages* shall guide the design of the Sketch Plan.

HH. **ADDITIONAL SUBMITTALS BASED ON EVIDENCE OF CUMULATIVE IMPACTS.** If, in the course of the Sketch Plan application review, evidence is submitted or obtained indicating that there is a reasonable probability that the proposed land use change will contribute to cumulative impacts within the impact area, the Community Development Department or the Planning Commission shall require that additional information, including but not limited to studies of specific issues, be submitted.

II. **ADDITIONAL INFORMATION.** Such additional information reasonably required by the Community Development Department as necessary to determine the impact classification, or to otherwise aid in the evaluation of the development pursuant to the applicable requirements of this *Resolution.*

## SECTION 7-202: SKETCH PLAN REVIEW PROCESS FOR MAJOR IMPACT PROJECTS

The following process (illustrated in the flowchart in Appendix Figure 6: *Sketch Plan Review Process for Major Impact Projects*) shall apply to an application for review of a Sketch Plan application for a Major Impact Project. In addition to these required meetings and public hearings, the Planning Commission and the Board may conduct work sessions, as either deems necessary.

A. **NOTIFICATION TO COUNTY IF FEDERAL PERMITS REQUIRED FOR PROJECT.** When an Environmental Assessment or Environmental Impact Statement, or other state or federal action or permit is required and that requirement is known by the applicant, the applicant shall notify the County of that requirement when the Sketch Plan application is first submitted for review.

B. **PRE-APPLICATION CONFERENCE.** Attendance by the applicant at a Pre-Application Conference is mandatory before submittal of the Sketch Plan application, pursuant to Section 3-108: *Pre-Application Conference.*

C. **SUBMITTAL OF DRAFT COPY.** The applicant shall submit one draft copy of the Final Plan application to the Community Development Department pursuant to Section 7-301: *Sketch Plan Application for Major Impact Projects.*

1. **COMMUNITY DEVELOPMENT DEPARTMENT REVIEW.** Review of the application shall be accomplished as specified in Section 3-110: *Community Development Department Application Review.*

2. **TOTAL NUMBER OF COPIES REQUIRED.** Once the Community Development Department has determined that the Sketch Plan application is complete, the Department shall notify the applicant of the required number of Sketch Plans sufficient to provide a copy to each Planning Commission member, to applicable review agencies, and for the file. A minimum of 15 copies is required. The Department shall, as applicable, forward the application and any relevant comments to the Planning Commission or Board.

D. **REQUEST FOR REVIEW BY OTHER AGENCIES OR DEPARTMENTS.** The Community Development Department may request the professional analysis and recommendations of other review agencies, organizations, or

BLM_0053998

technical consultants deemed appropriate and necessary to complete the Sketch Plan review, including other County offices and departments; municipal, state, or federal agencies having an interest in or authority over all or part of the proposal; utility   companies; the applicable school district and special service districts serving the proposed development; and engineers, designers, and legal consultants.

1. **REVIEW AND COMMENT BY REVIEW AGENCIES**. The review agencies that are sent a copy of the application shall be requested to make comments within 21 days of mailing by the Community Development Department, unless an extension of not more than 30 days has been requested by the agency before the 21st day. The Department may grant such a reasonable extension if it determines that good cause for the delay has been shown. The failure of any agency to respond within 21 days or within the period of extension shall not be deemed an approval of the application by the agency.

E. **REVIEW OF AGENCY/DEPARTMENT COMMENTS BY APPLICANT**. The applicant shall have the right to review the comments and recommendations received from the review agencies. The applicant may submit additional information and make changes in the development proposal to respond to the comments of the review agencies; provided, however, that if those changes are substantial or if they significantly alter the nature, character or extent of the application, the Community Development Department may, after the changes, refer the application again to some or all review agencies, to obtain additional comments, and may reasonably extend the period of their review accordingly.

F. **WORK SESSIONS.** After the Community Development Department has determined the application to be complete, the Planning Commission shall conduct a work session to identify and consider issues related to the application. Both the Board and the Planning Commission may conduct additional work sessions as it or they deem necessary to afford sufficient time to review the application materials and to identify and consider any issues related to the application.

G. **SITE VISIT**. The Board and/or Planning Commission respectively shall conduct a site visit of the proposed Project site if either body determines that such a site visit will provide information useful to its review of the proposal. If the Planning Commission chooses to conduct a site visit, it shall do so before taking action on a recommendation to the Board on the Sketch Plan application. Review of the application may be delayed for a reasonable period if inclement weather, or snow or mud conditions prohibit a productive site visit.

H. **DETERMINATION OF READINESS FOR HEARING**. The Planning Commission shall determine whether the Sketch Plan application is sufficient to conduct a public hearing, and if it is, shall so notify the Board.

I. **PUBLIC HEARING**. The Planning Commission and Board shall jointly conduct a public hearing to consider the Sketch Plan application.

1. **RELATED EA OR EIS PROCESS.** Pursuant to Section 3-104. B. 2: *Major Impact Projects That Require EA or EIS*, the process of scoping shall occur concurrently with this Sketch Plan hearing.

2. **SCHEDULING OF HEARING.** The Planning Commission shall identify a hearing date and time at which a public hearing, jointly conducted by the Board and the Planning Commission shall be scheduled. Notice of the date of the hearing and a complete copy of the Sketch Plan application shall be forwarded to the Board at least 20 days before the date of the hearing, together with a copy of the Community Development Department's report.

3. **HEARING NOTICE.** Public notice that the Board and Planning Commission will jointly conduct a public hearing to consider the Sketch Plan application shall be accomplished pursuant to Section 3-112: *Notice of Public Hearing*, and shall meet the required period of notice for a Board public hearing, pursuant to Table 1: *Timing of Notice*.

4. **CONDUCT OF HEARING.** The chairperson of the Planning Commission will preside over the hearing, which will be conducted pursuant to Section 3-113: *Conduct of a Public Hearing*.

J. **PLANNING COMMISSION RECOMMENDATION.** It is the goal but not the requirement (as scheduling may be affected by limited access, inclement weather, or other unforeseen circumstances) of this *Resolution*, that within 60 days following the closure of the public hearing, the Planning Commission shall consider the relevant materials and testimony and the compliance of the Sketch Plan application with the applicable standards of this *Resolution*, and recommend approval, approval with conditions, or denial of the application. The recommendation shall be in written form, and shall, at a minimum, address the following:

1. **DETERMINATION OF THE SKETCH PLAN'S COMPLIANCE WITH STANDARDS OF THIS** *RESOLUTION*. Whether the application is generally consistent with the standards and requirements of this *Resolution*.

2. **STATEMENT OF IMPACT CLASSIFICATION.** A statement classifying the impact of the proposed Project, citing the specific applicable sections of Section 3-111: *Classification of Impact*.

BLM_0053999

3. **PHASING.** If the applicant has proposed phases for the Project, a recommendation on whether the proposed phasing complies with the requirements of this *Resolution*. The Commission may also recommend that the Project be designed to occur in phases, if phasing is necessary or appropriate for it to comply with the requirements of this *Resolution*.

4. **FINDINGS.** Findings based on consideration of the submitted plan, site observations, the Community Development Director's report, and testimony received.

5. **RECOMMENDATION OF BOARD ACTION.** A recommendation that the Board should approve, approve with conditions, or deny the Sketch Plan application.

    a. **CONDITIONS OF A RECOMMENDATION OF APPROVAL.** If the recommendation is for approval, or approval with conditions, the following shall also be addressed:

        1. **IDENTIFICATION OF PLAN ELEMENTS THAT REQUIRE MODIFICATION.** Identification of elements of the Sketch Plan application that do not comply with this *Resolution*, and, as applicable, recommendations of modifications that must be included in a Preliminary Plan application submittal so that the proposed Project will comply with the standards of this *Resolution*.

        2. **SPECIFIC INFORMATION AND/OR STUDIES TO BE SUBMITTED.** Any materials the applicant is required to submit, and any technical studies the applicant is required to conduct and to provide any resulting information as part of the Preliminary Plan submittal.

        3. **CITING OF REQUIRED COMPLIANCE WITH OTHER PERMIT CONDITIONS.** Conditions that shall include the applicant's timely and fully obtaining and complying with all applicable federal, state, municipal and other permits and terms and conditions of any municipal, state, federal permits required for the Project.

K. **RECOMMENDATION FORWARDED TO BOARD.** Within 20 days of the Planning Commission's action on the recommendation, the Community Development Department shall forward the recommendation to the Board.

L. **BOARD DECISION ON OPTIONAL BOARD PUBLIC HEARING.** The Board shall have the option of conducting another public hearing to consider the Sketch Plan application and the Planning Commission's recommendation. Within 20 days of receipt of the Planning Commission's recommendation, the Board shall determine whether to conduct a public hearing. A decision to conduct or not to conduct such a hearing shall be based on the Board's determination of whether it is in the public interest to do so, considering among other factors the following:

1. **LEVEL OF PUBLIC INTEREST.** There has or has not been substantial public interest in the proposal, as reasonably shown by attendance at, and testimony submitted for, the joint public hearing; or

2. **IDENTIFICATION OF NEW ISSUES.** Whether it is reasonably probable that new issues related to the Sketch Plan application of the proposed land use change will be identified; or

3. **IDENTIFICATION OF NEW INFORMATION.** Whether it is reasonably probable that new information related to the Sketch Plan application of the proposed land use change will be provided.

M. **BOARD PUBLIC HEARING.** If the Board chooses to conduct a public hearing, the following shall apply:

1. **HEARING NOTICE.** Public notice that the Board will conduct a public hearing to consider the Sketch Plan application shall be accomplished pursuant to Section 3-112: *Notice of Public Hearing.*

2. **CONDUCT OF HEARING.** The Board hearing shall be conducted pursuant to Section 3-113: *Conduct of a Public Hearing.*

3. **COST FOR PUBLIC HEARING NOTICE(S).** The applicant shall be billed and shall be responsible for paying for the actual cost of publication of all applicable public hearing notices as required pursuant to Section 3-112: *Notice of Public Hearing.*

N. **BOARD ACTION.** Within 35 days after receipt of the Planning Commission recommendation, if the Board did not conduct another public hearing, or within 35 days after closure of the hearing if the Board conducted another public hearing, the Board shall approve, approve with conditions, or deny the Sketch Plan. The Board's decision shall be entered into the official minutes of the meeting and shall contain the necessary findings of fact and reasons to support the decision. If the Board does not make separate findings of fact, it shall be presumed to have adopted the findings and recommendations of the Planning Commission.

1. **ADDITIONAL PLANNING COMMISSION REVIEW MAY BE REQUIRED.** Before it takes action on the application, the Board may refer the application back to the Planning Commission for further consideration and recommendations if at least one of the following circumstances is present:

BLM_0054000

**a.** **NEW INFORMATION SUBMITTED.** There has been information submitted that was not available for consideration by the Commission before its recommendation; or

**b.** **INSUFFICIENT EVALUATION.** There are substantive issues or requirements of this *Resolution* that were not sufficiently evaluated in the Commission's recommendations; or

**c.** **SUBSTANTIVE ALTERATION.** There has been a substantive alteration to the plan subsequent to the Commission's recommendation; or

**d.** **NEED FOR CLARIFICATION.** There is an element of the Planning Commission's recommendation that requires clarification.

**O.** **SIGNIFICANCE OF SKETCH PLAN APPROVAL**. Approval of the Sketch Plan application shall constitute a final decision of approval for the general development concept only, but shall not constitute approval of any detailed design or engineering submittals or proposed solutions to specific problems revealed during the Sketch Plan review or later in the review process. Sketch Plan approval by the Board shall not constitute approval of the Major Impact Project, or permission to proceed with construction of any aspect of the proposed land use change. Approval at this stage only authorizes the applicant to submit a Preliminary Plan application. If, during the Preliminary and Final Plan reviews, the applicant is unable to fulfill all of the requirements of this *Resolution*, then the application shall be denied at the Preliminary or Final Plan review stage.

**P.** **EXPIRATION.** The applicant shall be required to submit the Preliminary Plan application within 12 months after the date of approval of the Sketch Plan. Failure to submit a complete Preliminary Plan application within this time period shall render the Sketch Plan approval null and void, and require the applicant to begin the Sketch Plan review process again.

**Q.** **EXTENSION OF SUBMITTAL DEADLINE.** The Board may extend the deadline to submit a Preliminary Plan application for good cause shown, provided the applicant requests the extension in writing no less than 30 days before the deadline, and provided the Board finds that there has been no substantial change in circumstances of neighborhood land uses, in the capability or willingness to serve the development of proposed service providers, or to the site on which it is proposed since Sketch Plan approval. Should the Board determine that such findings are not supportable, the review process shall be required to begin anew with the submittal of a Sketch Plan.

**1.** **REFERRAL TO PLANNING COMMISSION FOR RECOMMENDATION**. The Board may request a recommendation from the Planning Commission on the request for extension before taking action.

**2.** **MAXIMUM PERIOD OF EXTENSION**. In no case shall the deadline for submittal of a Preliminary Plan application be extended for more than 12 months beyond the date of the 12-month expiration, and only one extension may be granted.

**3.** **FEE FOR REQUEST FOR EXTENSION**. In order to compensate the County for the cost of reviewing and processing the requested extension, each applicant shall pay the required fee, as shown in a schedule of fees issued by the Community Development Department that is adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

BLM_0054001

BLM_0054002

# DIVISION 7-300:
# PRELIMINARY PLAN FOR MAJOR IMPACT PROJECTS

## SECTION 7-301: PRELIMINARY PLAN APPLICATION FOR MAJOR IMPACT PROJECTS

After the Board has approved a Sketch Plan application for a Major Impact Project, the applicant may submit a Preliminary Plan application consistent with the requirements of this Section. The Preliminary Plan includes both a narrative describing elements of the proposed Project, and the maps and layout plans that illustrate it.

**A. PHASING AND RELATIONSHIP TO APPROVED SKETCH PLAN.** A Preliminary Plan shall address all of the area presented in the approved Sketch Plan, shall be consistent with the approved Sketch Plan and shall specifically address and comply with the conditions stated in the Board's approval. If the Preliminary Plan represents a significant variation from the approved Sketch Plan, that variation shall be clearly and completely identified or described. The Preliminary Plan may address phases that are Projected to be phases of the Final Plan, though all studies and engineering design shall address the entirety of the Project.

    **1. SIGNIFICANT CHANGE REQUIRES REFILING.** If the variation consists of a significant change in types of land use, design or location of uses, or is a significant increase in numbers of lots, structures, or types or intensity of land uses, from the approved Sketch Plan, the applicant may be required to file an amended Sketch Plan application that shall be reviewed anew, pursuant to Section 7-201: *Sketch Plan Application for Major Impact Projects,* and Section 7-202: *Sketch Plan Review Process for Major Impact Projects.*

**B. APPLICATION AND REVIEW FEES.** In order to compensate the County for the cost of reviewing and processing the Preliminary Plan, each applicant shall pay the required fee, as shown in a schedule of fees issued by the Community Development Department that is adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

    **1. COST FOR PUBLIC HEARING NOTICE(S).** In addition to the Preliminary Plan submittal fee, the applicant shall be billed and shall be responsible for paying for the actual cost of publication of all applicable public hearing notices as required pursuant to Section 3-112: *Notice of Public Hearing.*

**C. COPY OF PROPERTY TAX CERTIFICATE.** One copy of certification from the Gunnison County Treasurer's Office indicating that all real property taxes applicable to the subject parcel on which the land use change is proposed have been paid up to the year in which approval is under consideration.

**D. SUBMITTAL OF DRAFT COPY.** The applicant shall submit one draft copy of the Preliminary Plan application to the Community Development Department.

**E. TOTAL NUMBER OF COPIES REQUIRED.** Once the Community Development Department has determined the submittal to be complete, it shall determine the number of copies of the Preliminary Plan application that are necessary for review and action by the Planning Commission and/or Board, and other review agencies or County departments, and shall notify the applicant of the number of copies of the complete plan that are required to be submitted.

**F. MAPS AND SITE PLAN SHEETS.** Maps shall be at a scale and sheet size to permit adequate review, but sheet size shall not exceed 24 inches by 36 inches. Each map or layout of the site plan shall be separate, and folded to a size to allow mailing or storage within a standard legal-sized folder; maps shall not be submitted in a rolled form. Elements required to be submitted in map or layout form may be combined on one or more sheets of the submittal, so long as all elements are legible. Maps and drawings shall identify the location of the proposed land use change by reference to permanent survey monuments with a tie to a section corner or quarter-section corner and shall include the following information:

    **1. MAP SCALE.** The Preliminary Plan shall include maps that shall be at a scale of 100 feet equal one inch or as otherwise approved by the Community Development Department, or required by this Section.

    **2. TOTAL AREA PLAN ON ONE SHEET**. In the case of large development requiring more than two sheets at the required scale, the applicant shall also submit a total area plan showing the entire development on a single sheet at an appropriate scale.

**G. GENERAL INFORMATION IN NARRATIVE.** The Plan is required to include at least the following information, presented in the same order as it is listed in this Section, in a stapled or otherwise bound document, on consecutively-numbered pages and including a *Table of Contents*.

BLM_0054003

1. **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and also stating the same information for the agent.

    a. **APPLICANT OTHER THAN APPLICANT AT SKETCH PLAN APPROVAL.** If the applicant is not the same as the applicant who submitted the Sketch Plan, that fact shall be noted, and a notarized letter of consent from the current property owner for the current applicant to proceed with the review shall be required to be submitted.

2. **PROPERTY OWNER.** Name, address, telephone and fax numbers and e-mail address of the owner of the property and, if other than the applicant, a notarized letter from the owner consenting to the application.

    a. **OWNER OTHER THAN OWNER AT SKETCH PLAN APPROVAL.** If the property ownership has changed, either by fee simple sale or organization since the Sketch Plan was approved, that shall be noted and relevant documentation submitted.

3. **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, or metes and bounds), property address and common description of the parcel (such as mileage from highway or County road, or other recognized landmarks) on which the land use change is proposed to be located. A copy of the recorded deed to the property should be included.

4. **DATE OF APPLICATION.** The date the application was prepared.

5. **LIST OF ADJACENT LANDOWNERS**. As applicable, a listing of all landowners and land uses that are adjacent to the boundaries of the entire parcel on which the Project is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the property except for the existence of the roadway. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel shall be included in the listing. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

6. **PROJECT DESCRIPTION**. A detailed description of what the applicant wants to do on or to the property, including:

    a. **USES AND ACTIVITIES.** Proposed uses or activities, division of land, adjustment of boundaries, expansion of existing uses, and construction, stockpiled materials, indoor and outdoor storage areas.

    b. **NUMBERS OF UNITS OR OTHER SIZES OF USES**. Numbers of units or lots. Estimated square footage or acreage of commercial, industrial or other uses.

    c. **DESCRIPTION OF STRUCTURES**. Description of structures to be constructed, their estimated size(s) and appearance.

    d. **DESCRIPTION OF OFF-SITE RESOURCES**. Description of off-site resources, hazardous activities and haul routes as may be necessary to accomplish the Project.

    e. **IDENTIFICATION OF LOT USE IF PROJECT IS A SUBDIVISION**. If subdivision of the property is proposed, the uses proposed for all resulting lots.

    f. **SEASONS AND HOURS OF OPERATION.** As applicable, the seasons of the year in which the activity is proposed to be conducted, and the intended hours of operation.

    g. **PHASES.** Any phases that are proposed as part of the Preliminary Plan, or are Projected to be proposed within a Final Plan for the development. If the Preliminary Plan is presented as separate phases, each phase may be separately reviewed and approved. Submittals for each phase of a Preliminary Plan and Plat, as applicable, and references within applicable protective covenants and Development Improvement Agreements, shall include the name of the development, and the applicable phase number.

7. **COMPLIANCE WITH EACH CONDITION OF SKETCH PLAN APPROVAL**. The Preliminary Plan shall list, and include complete responses to the conditions of the Board's approval of Sketch Plan. The language of each of the conditions shall be included, with reference to relevant submittals in the Preliminary Plan, including studies, maps, reports, engineering plans, architectural or other designs, agreements, and court actions that demonstrate the manner in which the conditions have been met.

H. **ENGINEERED PLANS**. Detailed engineering design plans and descriptions for roads, bridges, drainage facilities, water supply and wastewater treatment systems, landscaping and other improvements proposed to be installed by the developer, or required by the County; such plans shall be designed and stamped by a qualified professional engineer licensed in the State of Colorado. Engineering plans may be bound separately when size or bulk makes it

BLM_0054004

advisable. Two folded copies of each of the plans shall be provided that can be stored in legal-sized folders, and shall not be submitted in rolled form.

**I.   FLOOD HAZARD AREAS.** When a land use change is proposed on a parcel located within a floodplain hazard area as delineated on maps described in Section 11-103: D: *Official Maps* or the National Flood Insurance Rate Maps (FIRM) prepared by the Federal Emergency Management Agency May 16, 2013 the narrative, map and design layout of the Preliminary Plan shall address and comply with the requirements of Section 11-103: *Development in Areas Subject to Flood Hazards.*

**J.   GEOLOGIC HAZARD AREAS**. When a land use change is proposed on a parcel located in a geologic hazard area as delineated on Geologic Hazard Maps prepared by the Colorado Geologic Survey the narrative, map and design layout of the Preliminary Plan shall address and comply with the requirements of Section 11-104: *Development in Areas Subject to Geologic Hazards* and at a minimum shall submit the following information:

    **1.   MAPS.** A map or maps having a scale of one inch equaling 50 feet or larger, with accurate topographic details, that portrays the geologic conditions of the area, with particular attention given to the applicable geologic hazard. As appropriate, subsurface geologic cross-sections shall also be used to portray specific physical characteristics, including depth.

    **2.   GEOTECHNICAL REPORT.** A geotechnical report referencing maps and cross-sections that identify if the proposed development site is within a geologic hazard area, and if so, evaluates and predicts the impact of specific geologic conditions on the proposed land use change. The report shall also specify the measures that will be employed to mitigate these hazards, pursuant to Section 11-104: *Development in Areas Subject to Geologic Hazards.*

        **a.   AVALANCHE HAZARD AREAS.** A Preliminary Plan application for development proposed in an avalanche hazard area shall also include the following information:

            **1.   STRUCTURE CONFIGURATIONS.** Location of structures, type of structures, and structure configurations.

            **2.   STRUCTURAL STABILITY.** Structural stability and strength.

            **3.   RUNOUT ZONE.** The extent of the runout zone, and the estimated maximum impact pressure distribution within the runout zone.

            **4.   AVALANCHE DATA.** Type of avalanche reaching various parts of the runout zone, the estimated avalanche frequency, the avalanche discharge, and the avalanche flow depth.

        **b.   LANDSLIDE HAZARD AREAS.** A Preliminary Plan application for development proposed in a landslide hazard area shall also include the following information:

            **1.   LANDSLIDE ANALYSIS.** Type of landslide and rate of movement; volume of material involved in the landslide; the mechanism(s) responsible for its initiation; and slope gradient.

            **2.   STRUCTURE CONFIGURATIONS.** Location of structures, type of structures, and structure configurations.

        **c.   ROCKFALL HAZARD AREAS.** A Preliminary Plan application for development proposed in a rockfall hazard area shall also include the following information:

            **1.   DESCRIPTION OF ROCKFALL.** Detailed description of type of rockfall and specific rock types involved.

            **2.   SLOPE AND ASPECT**. Slope, gradient, and aspect on-site, and adjacent to the site.

            **3.   FREEZE/THAW**. Climate data regarding the freeze/thaw cycle.

            **4.   JOINTING DATA**. Jointing data, with special consideration given to water percolation.

            **5.   TALUS SLOPES.** Talus or colluvial slopes adjacent to the rockfall hazard zone.

        **d.   ALLUVIAL FAN/MUDFLOW HAZARD AREAS**. A Preliminary Plan application for development proposed in an alluvial fan or mudflow hazard area shall also include the following information or data:

            **1.   DRAINAGE BASIN STUDY.** Drainage basin study, including all stream channels upstream from the site.

BLM_0054005

2. **SEDIMENT YIELD STUDY.** Sediment yield study, with data regarding surficial materials, vegetative cover, and topography, erosion potential of area upstream from the site, and volume and mass of potential mudflows on site.

3. **STORM DATA.** Climate data, including precipitation data for the 10, 25, 100-year storms, and snowmelt runoff characteristics.

4. **GEOLOGIC MAP.** Geologic map, with topographic overlay showing mudflow deposits.

e. **POTENTIALLY UNSTABLE SLOPES**. A Preliminary Plan application for development proposed on a potentially unstable slope shall also include the following information:

1. **PAST OCCURRENCES.** Past occurrences of landslides, mudflows, rockfalls, and surficial creep on the site and adjacent areas.

2. **RATE OF MOVEMENT.** Rate of movement of the surficial materials.

3. **WILDFIRE HAZARD AND FIRE PROTECTION.** The narrative, map and layout design of the Preliminary Plan shall address and comply with the requirements of Section 11-105: *Development in Areas Subject to Wildfire Hazard* and Section 12-107: *Fire Protection*, and include measures to minimize the potential that the proposed uses will generate or increase wildfire

4. **WILDLIFE HABITAT.** The narrative, map and layout design of a Preliminary Plan application for development proposed on those lands described in Section 11-106: *Protection of Wildlife Habitat Areas* shall submit a Wildlife Habitat Analysis pursuant to that Section.

5. **WATER QUALITY INFORMATION.** The narrative, map and layout design of the Preliminary Plan shall address and comply with the requirements of Section 11-107: *Protection of Water Quality*, and shall, as applicable, depict locations of water bodies, and related widths of Restrictive Inner Buffers, and Variable Outer Buffers.

6. **DEVELOPMENT ON RIDGELINES**. If the proposed land use change is on property in which there are land formations visible from any ridgeline vantage as defined by this *Resolution*, and described pursuant to Section 11-108: *Standards for Development on Ridgelines.* The narrative, map and layout design of the Preliminary Plan shall address and comply with the requirements of that Section.

7. **DEVELOPMENTS IMPACTING AGRICULTURAL LANDS**. If the proposed land use change adjoins agricultural lands, involves land through which irrigation ditches flow, or over which there are general or exclusive easements for stock drives, the narrative, map and design layout of the Preliminary Plan shall address and comply with the requirements of Section 11-109: *Development That Affects Agricultural Lands*, and  Section 15-103: *Right-to-Ranch Policy* and shall identify the following:

a. **AGRICULTURAL LAND OWNER**. The location(s) and name(s) of owner(s) of any agricultural land(s) adjoining or possibly impacted by the proposed land use change.

b. **AGRICULTURAL DITCH.** The location(s), name(s), name(s) of owner(s), size(s), and decreed capacity(ies) of any agricultural ditch crossing or adjoining the development property, as available from the Colorado Division of Water Resources, or ditch commissioner's records.

c. **EASEMENTS**. The location of historical easements used to gain access to headgates, ditches, and fences for maintenance or operations.

d. **LIVESTOCK DRIVES AND FENCELINES.** Historic or recorded stock drive easements crossing or adjoining the development property, including the location of any existing fences along property lines, and the location of new fences or other obstacles proposed to be built across any such stock drive.

8. **LANDS BEYOND SNOWPLOWED ACCESS.** If the proposed land use change is on property located where there previously has been no snowplowed access, the narrative, map and layout design of the Preliminary Plan shall address and comply with Section 11-110: *Development of Land Beyond Snowplowed Access*.

9. **DEVELOPMENT ON INHOLDINGS IN NATIONAL WILDERNESS**. If the proposed land use change is on property located on an inholding within a national Wilderness Area, the narrative, map and design layout of the Preliminary Plan shall address and comply with Section 11-111: *Development on Inholdings in the National Wilderness*.

10. **DEVELOPMENT ON PROPERTY ABOVE TIMBERLINE**. If the proposed land use change is on property located above timberline the narrative, map and design layout shall address and comply with Section 11-112: *Development on Property Above Timberline*.

BLM_0054006

**11. ROAD AND TRAILS SYSTEM PLAN.** An applicant for a Land Use Change Permit that involves road construction shall submit an engineered design and construction plan for the road system, prepared by a qualified professional engineer licensed in the State of Colorado and shall address and comply with Section 12-103: *Road System* and Section 12-104: *Public Trails,* and the *Gunnison County Standard Specifications for Road and Bridge Construction*. Pursuant to that Section and those *Specifications*, a Traffic Impact Study may also be required to be submitted. The plan shall include the following information:

   **a. ROAD LAYOUTS.** Road layouts with road names, widths, curves, radii, and other dimensions. Current and Projected road and driveway locations shall be shown, including major access, small arterials, and driveway locations, as applicable. Horizontal and vertical ties to County roads shall be provided. Preliminary centerline locations of roads shall be staked on the ground.

   **b. ENGINEER'S CERTIFICATION OF DRIVEWAY AVAILABILITY.** If driveways are required for the development, certification by a qualified professional engineer licensed in the State of Colorado (including design detail, where appropriate) that there is a driveway access for all lots and building areas within the development.

   **c. ROAD CONSTRUCTION DETAIL.** Construction detail, including typical cross-sections, showing base, drainage structures, type of surface, slope of cuts and fills, and similar information sufficient to show the proposed roads will meet the standards of the *Gunnison County Standard Specifications for Road and Bridge Construction*, and will meet the needs of the development, including:

      **1. LOCATIONS AND DIMENSIONS OF ALL ELEMENTS.** The location and dimensions of all culverts, bridges, drainage ditches, channels, and drainage easements shall be shown.

      **2. CROSSINGS TO AVOID WETLANDS, IRRIGATION DITCHES DISRUPTION.** All crossings shall be engineered to avoid drainage of existing wetlands and not to impede the historic flows of irrigation ditches.

      **3. TRAIL CONSTRUCTION DETAILS.** Construction details shall also be provided for any proposed trails.

      **4. CENTERLINE PROFILES.** Centerline profiles of roads plotted with sufficient accuracy to demonstrate that road design will meet the applicable standards. All centerline profiles shall be drawn at a scale of 10 feet vertical and 100 feet horizontal to the inch, or five feet vertical and 50 feet horizontal to the inch.

      **5. PROPOSED FUNCTIONAL CLASSIFICATIONS.** Proposed functional classifications of all roads contemplated in the development, as defined in with the *Gunnison County Standard Specifications for Road and Bridge Construction*. Road surface and rights-of-way widths, grades, cul-de-sacs and turn-around, turnouts, anticipated traffic levels, and types of use shall be included.

      **6. PARKING.** The total number of proposed off-road parking spaces shall be indicated, and their locations shall be shown, except that parking spaces associated with single-family residential lots need not be identified. The plan shall comply with the requirements of Section 13-110: *Off-Road Parking and Loading* and the minimum distances listed in Appendix Table 2*: Off-Road Parking Requirements.*

      **7. ACCESS AND OTHER EASEMENTS.** All known easements, recorded or historically used, including those for utilities, irrigation and drainage ditches, drainage swales, head-gates, roads and trails, egress/ingress, or other access affecting the property shall be shown on the plan.

      **8. VISUAL IMPACTS.** An analysis of potential visual impacts arising from road location, alignment and construction of the road, and how mitigation of those impacts will comply with the applicable requirements of Article 13: *Project Design Standards.*

      **9. SAFETY FACTORS.** A list of the safety factors that were considered as part of the road system design shall be provided.

      **10. DUST CONTROL PLAN.** A plan for dust abatement during and, as applicable, after construction.

      **11. ROAD CONSTRUCTION INSPECTION AND TESTING PLAN.** A plan for onsite inspections and testing by a qualified professional engineer licensed in the State of Colorado at appropriate checkpoints during construction, including provision of those reports to the Gunnison County Public Works Department to ensure compliance with the *Gunnison County Standard Specifications for Road and Bridge Construction.*

BLM_0054007

**12. SOURCE OF MATERIAL/RECLAMATION PLAN.** Identification of a source of and estimates of cubic yards of material necessary for road (and, as applicable, driveway) construction, and routes of haulage. If the source is to be on-site, the applicant shall notify the Colorado Division of Minerals and Geology and request confirmation that no separate permit is required by that agency, and a copy of that notification shall be included in the Preliminary Plan submittal.

**12. WATER SUPPLY PLAN.** The Preliminary Plan application shall contain evidence that provisions have been made for a water supply that is sufficient in terms of quantity, quality, and dependability to provide an adequate supply of water for the development proposed, and shall provide information necessary to meet the requirements of Section 12-105: *Water Supply*. The requirements of that Section, and of the State Engineer and the Colorado Department of Public Health and Environment, shall be used to evaluate the adequacy of the water source intended to serve the proposed development, including the following:

**a. CENTRAL WATER SYSTEM REPORT.** When a central water system is proposed, the Preliminary Plan application shall address the feasibility of central water service to the entire area as planned for inclusion in the proposed development, and shall be prepared by a qualified professional engineer licensed in the State of Colorado. If a central water system is to be provided, the following information shall be submitted in written form:

**1. ESTIMATED GALLONS PER DAY.** The estimated total number of gallons of water per day necessary to supply the development, based on the design criteria specified in Section 12-105: *Water Supply*, and including but not limited to the following:

**a. ESTIMATED AVERAGE DAILY DEMAND.** Estimated average daily demand of the entire service area and the proposed development. Demand calculations are to be based on 350 gallons per day (gpd), year-round, per residence.

**b. ESTIMATED MAXIMUM DAILY DEMAND.** Estimate maximum daily demand based on using three times the average daily demand.

**c. ESTIMATED PEAK HOUR DEMAND.** Estimate peak hour demand based on using six times the average daily demand.

**d. ESTIMATED AVERAGE DAILY DEMAND FOR COMMERCIAL/INDUSTRIAL USES.** The estimated average daily demand for commercial and industrial uses will be reviewed based on the anticipated demand of the proposed development. Appropriate multipliers may be used in calculating the amount, based on standards as may be required for a specific use by the Colorado Department of Public Health and Environment, or other applicable agency or industry standard.

**2. HYDRAULIC ANALYSIS.** A hydraulic analysis to verify that distribution system pressures maintain a minimum working pressure of 40 pounds per square inch (psi), and a minimum 20 psi residual pressure during fire flow demands.

**3. CAPACITY FOR COLLECTION, PURIFICATION AND DISTRIBUTION.** A detailed description, including plans, design features and specifications, including but not limited to piping size, necessary to show the ability of such system to collect, purify and distribute the required amount of water to the development in a manner that is consistent with the requirements and requirements of the *Colorado Primary Drinking Water Regulations* currently enforced by the Colorado Department of Public Health and Environment.

**4. WATER STORAGE.** When water storage is required to maintain a consistent and dependable source of potable water, the applicant shall provide evidence that storage capacity is capable of providing the specified peak hour demands for periods of six hours or a maximum day demand plus the required fire flow demands.

**b. POTABLE WATER DEMAND CRITERIA.** If the water is intended for human consumption, documentation of chemical and bacteriological tests demonstrating the potability of the water and its suitability for the proposed use.

**c. WATER SUFFICIENT FOR LANDSCAPING.** As may be required by Section 13-111: *Landscaping and Buffering*, or additionally as may be proposed in the application, each use shall have adequate water to sustain required landscaping and shall include:

BLM_0054008

1. **IRRIGATION WATER CRITERIA.** The following shall be considered in calculating requirements for the use of irrigation in new development, and shall not apply to agricultural operations in existence as of the effective date of this *Resolution*:

   a. **ESTIMATED ACREAGE.** Estimated acreage to be irrigated.

   b. **ESTIMATED DEMAND.** Estimated irrigation demand based on information supplied by the Natural Resources Conservation Service. The information shall take into account the type of vegetation to be maintained, the soil characteristics, the historic yield, and the available water rights.

d. **FIRE PREVENTION AND FIRE SUPPRESSION.** Evidence that a water distribution system and storage system are capable of meeting fire flow requirements required by Section 12-105: *Water Supply*, and shall comply with the requirements of Section 11-105: *Development in Areas Subject to Wildfire Hazard*, and Section 12-107: *Fire Protection.*

e. **EVIDENCE FOR SURFACE WATER RIGHT.** If the supply of water is a surface water right, evidence shall include:

   1. **DIVERSION RECORDS**. The appropriate diversion records, if any, of the Division of Water Resources; and

   2. **ENGINEER'S REPORT**. A report by a qualified professional engineer licensed in the State of Colorado, geologist or hydrologist discussing the amount, reliability and seasonal variations in the source of water intended for use in the development; and.

   3. **ATTORNEY'S LETTER.** A letter signed by an attorney licensed in Colorado identifying the surface water right intended for use within the proposed development and certifying that the water right is owned by the applicant and, where appropriate, is subject to transfer and sale from the applicant to owners of lots within the proposed development; and

   4. **COURT DECREES.** Copies of court decrees permitting the water right to be used for the purposes intended and required by the proposed development; or

   5. **BINDING AGREEMENTS.** Copies of binding agreements requiring a public or private water owner to supply water to the proposed development and evidence that the owner has uncommitted water supplies with which to comply with the agreements; or

   6. **APPLICATION FOR CHANGE IN WATER RIGHTS.** A copy of the application for a change in water rights and the plans of augmentation that have been filed in a court of competent jurisdiction and that, if granted, will give the applicant the legal right to use the intended source of water for the purposes required by the development.

f. **WELL TESTING RESULTS.** When a central well or wells are proposed for the water supply, a well shall be constructed on the proposed development site, and tested for its capability to provide a consistent and dependable source of water, pursuant to the requirements of Section 12-105: *Water Supply*. Results of the test shall be submitted as part of the Preliminary Plan.

13. **SEWAGE DISPOSAL/WASTEWATER TREATMENT.** The Preliminary Plan application shall contain evidence that provisions have been made for wastewater treatment that will treat all effluent to be generated by all uses of the proposed land use change, and shall provide information necessary to meet the requirements of Section 12-106: *Sewage Disposal/Wastewater Treatment.* The requirements of that Section, and of the Colorado Department of Public Health and Environment, shall be used to evaluate the proposed sewage disposal/wastewater treatment system intended to serve the proposed development, including the following:

   a. **WASTEWATER TREATMENT SYSTEM.** If a wastewater treatment system is to be provided the following information shall be submitted:

      1. **ESTIMATED DEMAND.** A detailed estimate of the total number of gallons of sewage per day to be treated.

      2. **SYSTEM DESCRIPTION.** A detailed description of the proposed wastewater treatment system prepared in a form adequate to fully inform the County of the ability of the system to collect, treat, and dispose of the sewage that would be generated by the development. The description shall include the location of the wastewater treatment plant and sewage collection lines; or

BLM_0054009

3. **AGREEMENT WITH EXISTING SYSTEM PROVIDER.** The applicant may submit an agreement with the system provider of an existing wastewater treatment system authorizing service to the proposed development, accompanied by certification of a qualified professional engineer licensed in the State of Colorado that the existing service has the capacity to treat the sewage generated by the proposed development.

4. **CONFIRMATION OF CAPACITY AND COMPLIANCE FROM CDPHE.** A statement from the Division Engineer of the Colorado Department of Public Health and Environment (CDPHE) that the system proposed to be used by the applicant is pursuant to permit requirements of that agency, and that CDPHE affirms as of the time of submittal of the Preliminary Plan that there is sufficient capacity for the system to serve the proposed development.

5. **INDIVIDUAL SEWAGE DISPOSAL SYSTEMS.** If lots within a development are proposed to use individual sewage disposal systems, the following information shall be submitted:

   a. **SOIL PERCOLATION TESTS.** The results of soil percolation tests performed and signed by a qualified professional engineer licensed in the State of Colorado, or qualified professional geologist. The number of tests shall be as necessary to produce reliable results for the entire area proposed to be developed.

   b. **GROUNDWATER LEVEL.** The maximum seasonal groundwater level, whether that level is caused by irrigation or natural causes.

14. **GENERAL SITE PLAN STANDARDS AND LOT MEASUREMENTS.** The narrative, map and design layout shall address and comply with the requirements of Section 13-103: *General Site Plan Standards and Lot Measurements*.

15. **SETBACKS FROM PROPERTY LINES AND ROAD RIGHTS-OF-WAY.** The narrative, map and design layout shall address and comply with the setback requirements of Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way*.

16. **STRUCTURAL DESIGN AND ELEVATIONS.** As applicable, renderings of preliminary architectural elevations of significant facades of proposed structures shall be submitted, and structural elevations shall be sufficiently detailed to illustrate architectural features of facades, roofs, decks, and other primary elements of the structures, pursuant to Section 13-105: *Residential Building Sizes and Lot Coverages*.

    a. **EXCEPTION.** Elevations shall not be required for developments that propose single-family residences when the applicant will not be the developer of the residences.

17. **LANDSCAPING PLAN.** A detailed landscaping plan shall be submitted, pursuant to Section 13-111: *Landscaping and Buffering*.

18. **RECLAMATION AND NOXIOUS WEED CONTROL.** A Preliminary Plan application shall include an *Earthmoving Site Revegetation and Noxious Weed Control Plan*, as designed and/or approved by the Gunnison Basin Weed Specialist pursuant to Section 13-115: *Reclamation and Noxious Weed Control*. The Gunnison Basin Weed Specialist is an employee of the Gunnison County Public Works Department.

19. **GRADING AND DRAINAGE PLANS.** The Preliminary Plan application narrative, map and design layout shall address proposed grading activity and on- and off-site drainage and comply with the requirements of Section 13-116: *Grading and Erosion Control*, and Section 13-117: *Drainage, Construction and Post-Construction Storm water Runoff*.

20. **WATER IMPOUNDMENTS.** If water impoundments are proposed as part of the proposed development, the Preliminary Plan application narrative, map and design layout shall address locations and sizes of the impoundments, and the plans for water augmentation shall address such storage, pursuant to the requirements of the Colorado State Engineer, and relative to the land uses proposed in the Preliminary Plan that the stored water is intended to serve. As applicable, the submittal shall address and comply with the requirements of Section 13-118: *Water Impoundments*.

21. **SCHOOLS, PARKS, AND COMMON AREAS.** The Preliminary Plan application shall identify those areas that will be set aside for schools, parks, or common areas and shall include a plan for the construction of parks and common areas. Maintenance shall be assured on a continual basis and costs shall be borne by the applicant or the property owners, or the homeowners' association. A statement shall be included if money will be paid in-lieu of, or in combination with, dedication of land for school purposes, and shall include the amount of money and description of how the amount is calculated.

BLM_0054010

    **a. SCHOOL LAND REQUIREMENTS SHALL COMPLY WITH AGREEMENT.** When a separate intergovernmental agreement exists between Gunnison County and the school district within whose boundaries the development is located, the dedication of land, payment-in-lieu, or a combination of dedication and payment, shall comply with that agreement.

**22. SOLID AND HAZARDOUS WASTES.** The Preliminary Plan application shall describe:

    **a. DISPOSAL METHOD.** The method to be used by the development for the disposal of solid wastes; and

    **b. HAZARDOUS SUBSTANCES.** Whether the development can reasonably be expected to produce hazardous substances or hazardous waste materials, as defined by Colorado law. Where applicable, a description and design detail shall be provided of methods to be used to eliminate any off-site health and safety hazards that could be caused by these substances and materials.

**K. PROTECTIVE COVENANTS OR RESTRICTIONS.** The Preliminary Plan application shall include a preliminary draft of protective covenants or deed restrictions that shall, at a minimum, address the following, as applicable to the specific Project: and including:

**1. CONDITIONS OF SKETCH PLAN APPROVAL.** As applicable, those items required by the conditions of Sketch Plan approval to be included within protective covenants, design guidelines, condominium or townhome declarations or deed restrictions.

**2. RESPONSIBILITIES OF HOMEOWNERS' ASSOCIATION** Responsibilities of property owners or homeowners' association to collect dues, maintain common areas, improve infrastructure common to the development, maintenance of a decreed water augmentation plan and the augmented water supply, treatment of wastewater and/or water, and to oversee the maintenance of the general appearance of the development.

**3. COUNTY IS PARTY TO ENFORCEMENT OF PROTECTIVE COVENANTS IN A SUBDIVISION.** If the proposed development is a subdivision, language that allows and requires enforcement of the protective covenants by property owners if the development and that names Gunnison County as a party to enforcement.

**4. COUNTY IS PARTY TO AMENDMENT OR TERMINATION.** If the proposed development is a subdivision, language that requires that amendment or termination of the protective covenants is subject to approval by Gunnison County.

**5. DESIGN CRITERIA.** Design criteria that will govern construction within the proposed development, including:

    **a. BUILDING SCALE AND LOCATION.** Language defining building heights, compatibility with terrain, and sizes of all structures that will be allowed by the protective covenants. The requirements of Section 11-108: *Standards for Development on Ridgelines*, Section 13-103: *General Site Plan Standards and Lot Measurements,* Section 13-105: *Residential Building Sizes and Lot Coverages* shall guide the drafting of the covenant language.

    **b. ARCHITECTURAL STYLE AND EXTERIOR APPEARANCE.** Language describing the architectural style that will be required of all structures in the proposed development, and the types and colors of exterior materials to be used, including siding, roofing.

    **c. ENERGY AND RESOURCE CONSERVATION.** Language advising lot owners that an application to Gunnison Count for a residential Building Permit must comply with all applicable building codes adopted and amended by Gunnison County, and with any applicable energy and resource conservation standards currently required by the County.

**6. SOLID-FUEL-BURNING DEVICES.** If solid-fuel-burning devices are proposed to be used in the development, restrictions shall be listed ensuring compliance with Section 13-107: *Installation of Solid-fuel-burning Devices.*

**7. USE AND MAINTENANCE OF OPEN SPACE AREAS.** As applicable, language shall be included that lists uses allowed on, and requires maintenance of common open space areas by the homeowners association, or other appropriate entity, pursuant to Section 13-108: *Open Space and Recreation Areas.*

**8. SIGNS.** Language shall be included that informs property owners or other land users within the proposed development that installation of signs requires compliance with the *Gunnison County Land Use Resolution*, and may require a Gunnison County Sign Permit, pursuant to Section 13-109: *Signs.*

**9. RULES CONCERNING PARKING.** Language concerning limitations on parking within the development and/or outside the development by users of the development, pursuant to Section 13-110: *Off-Road Parking and Loading.*

BLM_0054011

10. **LANDSCAPING AND BUFFERING.** Language addressing installation and maintenance of landscaping pursuant to Section 13-111: *Landscaping and Buffering.*

11. **PROVISION FOR SNOW REMOVAL AND SNOW STORAGE.** Language Identifying responsibility of a property owners' or homeowners' association or other entity to remove snow from interior roads and parking areas, and other applicable requirements pursuant to Section 13-112: *Snow Storage.*

12. **FENCING.** Language that includes requirements that comply with those specified by Section 13-113: *Fencing.* If there is to be a fence separating the proposed development from lands on which there are agricultural operations or are public lands, language shall be included acknowledging Colorado's "fence out" requirements, and placing responsibility for construction and maintenance of the fence with the property owners' or homeowners' association.

13. **EXTERIOR LIGHTING.** Language that includes requirements that comply with those specified by Section 13-114: *Exterior Lighting.*

14. **RECLAMATION AND NOXIOUS WEED CONTROL.** Language that includes requirements that comply with those specified by Section 13-115: *Reclamation and Noxious Weed Control,* particularly that any construction must secure a Gunnison County Reclamation Permit, which may involve control of noxious weeds, subject to approval by the Gunnison County Public Works Department, and/or approval by the Gunnison Basin Weed Specialist.

15. **GRADING AND EROSION CONTROL.** Language that includes requirements that comply with those specified by Section 13-116: *Grading and Erosion Control.*

16. **STANDARDS TO ENSURE COMPATIBLE USES.** As applicable, specific covenants or other restrictions designed to mitigate impacts to nearby residential or public use areas or neighborhood land uses, pursuant to Section 13-119: *Standards to Ensure Compatible Uses.*

17. **DOMESTIC ANIMAL CONTROL.** Language limiting the maximum number of domestic animals allowed on a lot or within the development, and requiring that they be confined on site by kenneling, leashing or other similar means. Language that includes requirements that comply with those specified by Section 11-106: F.6: *Domestic Animal Controls,* Section 11-109: D: *Domestic Animal Controls,* and Section 9-508: *Keeping of Livestock Not On an Agricultural Operation.*

18. **GEOTECHNICAL SITE-SPECIFIC STUDIES.** When a parcel is proposed for subdivision and analysis indicates it is located within a geologic hazard area, language shall be included that identifies the specific hazard in which the development, or identified portions of the development, are located, and refers by title, name of preparer, and date of preparation to the geotechnical analysis of the site.

   a. **COPY OF GEOTECHNICAL STUDY TO BE ATTACHED.** A copy of the geotechnical study(ies) shall be required to be attached as an exhibit to the protective covenants or deed restriction.

L. **COST ESTIMATES AND METHOD OF FINANCING.** The Preliminary Plan application shall include estimates by a qualified professional engineer licensed in the State of Colorado and/or contractors and suppliers of road construction costs and period of construction, materials, equipment, and labor costs, and proposed method of financing of roads and related facilities, the water supply and wastewater treatment systems, storm drainage facilities, and other improvements as may be required of the developer by the County. The proposed method of financing these facilities shall be identified, with documentation attesting that financing will be available for the proposed development.

M. **ADDITIONAL INFORMATION.** Such additional information reasonably required by the Community Development Department as necessary to determine the impact classification, or to otherwise aid in the evaluation of the development pursuant to the applicable requirements of this *Resolution.*

## SECTION 7-302: PRELIMINARY PLAN REVIEW PROCESS FOR MAJOR IMPACT PROJECTS

The following process (illustrated in the flowchart in Appendix Figure 7: *Preliminary Plan Review Process for Major Impact Projects*) shall apply to an application for review of a Preliminary Plan application for a Major Impact Project.

A. **PRE-APPLICATION CONFERENCE.** Attendance at a Pre-Application Conference is mandatory before submittal of the Preliminary Plan application, pursuant to Section 3-108: *Pre-Application Conference.*

B. **SUBMITTAL OF DRAFT COPY.** The applicant shall submit one draft copy of the Preliminary Plan application to the Community Development Department pursuant to Section 7-301: *Preliminary Plan Application for Major Impact Projects*

BLM_0054012

1.  **COMMUNITY DEVELOPMENT DEPARTMENT REVIEW.** The Community Development Department shall review the application pursuant to Section 3-110: *Community Development Department Review* and for its compliance with the conditions of the Board's approval of the Sketch Plan.

C.  **TOTAL NUMBER OF COPIES REQUIRED.** Once the Community Development Department has determined the submittal to be complete, it shall determine the number of copies of the Preliminary Plan application that are necessary for review and action by the Planning Commission and/or Board, and other review agencies or County departments, and shall notify the applicant of the number of copies of the complete plan that are required to be submitted. The Department shall, as applicable, forward the application and any relevant comments to the Planning Commission and/or Board.

D.  **REVIEW AND COMMENT BY REVIEW AGENCIES.** The Community Development Department shall forward copies of the Preliminary Plan to the Planning Commission and to review agencies, organizations, or technical consultants deemed appropriate and necessary to complete the Preliminary Plan review, including other County offices and departments; municipal, state, or federal agencies having an interest in or authority over all or part of the proposal; utility companies; the applicable school district and special service districts serving the proposed development; and engineers, designers, and legal consultants.

1.  **REVIEW AND COMMENT BY REVIEW AGENCIES.** The review agencies that are sent copies of the Preliminary Plan application shall be requested to make recommendations within 21 days of mailing by the Community Development Department, unless an extension of not more than 30 days has been consented to by the applicant and the Board. The failure of any agency to respond within 21 days or within the period of extension shall not be deemed an approval of such plan by the agency.

E.  **APPLICANT'S REVIEW OF AND RESPONSE TO AGENCY COMMENTS.** The applicant shall have the right to review the comments and recommendations received, and to submit additional information and to make changes in the development proposal to meet the objections or comments of the review agencies; provided, however, that if such a change is substantial or if it significantly alters the nature, character or extent of the development, such change shall be considered to be an amendment of the Preliminary Plan application and shall require another agency review period.

F.  **WORK SESSIONS.** The Planning Commission shall conduct one or more work sessions to identify and consider any issues related to the Preliminary Plan. Both the Board and the Planning Commission may conduct additional work sessions during the Preliminary Plan review as they deem necessary to afford sufficient time to review the application materials and to identify and consider any issues related to the application.

G.  **SITE VISIT.** The Board and/or Planning Commission shall conduct site visits of the proposed Project site if they determine that such a site visit will provide information useful to their review of the proposal. If the Planning Commission chooses to conduct a site visit, it shall do so before taking action on a recommendation to the Board on the Preliminary Plan application. Review of the application may be delayed for a reasonable period if inclement weather or snow or mud conditions prohibit a productive site visit.

H.  **DETERMINATION OF READINESS FOR HEARING.** The Planning Commission shall determine whether the Preliminary Plan application is complete, and sufficient to provide information for public review, and if it is, shall so notify the Board.

1.  **PUBLIC HEARING.** The Planning Commission and Board shall jointly conduct a public hearing to consider the Preliminary Plan application.

2.  **SCHEDULING OF HEARING.** The Planning Commission shall identify a hearing date and time at which a public hearing, jointly conducted by the Board and the Planning Commission shall be scheduled. Notice of the date of the hearing and a complete copy of the Preliminary Plan application shall be forwarded to the Board, together with a copy of the Community Development Department's report.

3.  **HEARING NOTICE.** Public notice that the Board and Planning Commission will jointly conduct a public hearing to consider the Preliminary Plan application shall be accomplished pursuant to Section 3-112: *Notice of Public Hearing*, and shall meet the required period of notice for a Board public hearing, pursuant to Table 1: *Timing of Notice*.

4.  **CONDUCT OF HEARING.** The chairperson of the Planning Commission will preside over the hearing, which will be conducted pursuant to Section 3-113: *Conduct of a Public Hearing.*

I.  **PLANNING COMMISSION RECOMMENDATION.** It is the goal but not the requirement (as scheduling may be affected by limited access, inclement weather, or other unforeseen circumstances) of this *Resolution,* that within 60 days following the closure of the public hearing, the Planning Commission shall consider the relevant materials and testimony and the compliance of the Preliminary Plan application with the applicable standards of this *Resolution*, and

BLM_0054013

recommend approval, approval with conditions, or denial of the application. The recommendation shall be in written form, and shall, at a minimum, include the following:

1. **COMPLIANCE WITH SKETCH PLAN APPROVAL CONDITIONS.** Whether the Preliminary Plan application has complied with the conditions imposed by the Board in the Sketch Plan approval. If the Planning Commission finds that the Preliminary Plan is not consistent with the approved Sketch Plan, then the applicant may be required to file an amended Sketch Plan application for reconsideration, pursuant to Section 7-202: *Sketch Plan Review Process for Major Impact Projects.*

2. **CONSISTENCY WITH MAJOR IMPACT PROJECT REVIEW STANDARDS.** Whether the application is consistent with Section 7-102: *Standards of Approval for Major Impact Projects.*

3. **PHASING.** If the applicant has proposed, or the County has recommended that the Project be developed in phases, a statement about the compliance of the proposed phasing with the requirements of this *Resolution.*

4. **FINDINGS.** Findings based on consideration of the submitted plan, site observations, the Community Development Director's analysis, and testimony received.

5. **RECOMMENDATION OF BOARD ACTION.** A recommendation that the Board should approve, approve with conditions, or deny the Preliminary Plan application.

6. **CONDITIONS OF A RECOMMENDATION OF APPROVAL.** If the recommendation is for approval, or approval with conditions, the following shall also be addressed:

   a. **IDENTIFICATION OF PLAN ELEMENTS THAT REQUIRE MODIFICATION.** Identification of elements that do not comply with this *Resolution*, and, as applicable, recommendations of modifications that must be included in a Final Plan submittal so that the proposed Project will comply with the standards of this *Resolution.*

   b. **CITING OF REQUIRED COMPLIANCE WITH OTHER PERMIT CONDITIONS.** Conditions shall include the applicant's timely and fully obtaining and complying with all applicable federal, state, municipal and other permits required for the Project, and the conditions of those permits.

J. **RECOMMENDATION FORWARDED TO BOARD.** Within 15 days of the Planning Commission's action on the recommendation, the Community Development Department shall forward the recommendation to the Board.

K. **BOARD DECISION ON OPTIONAL BOARD PUBLIC HEARING.** The Board shall have the option of conducting another public hearing to consider the Preliminary Plan application and the Planning Commission's recommendation. Within 20 days of receipt of the Planning Commission's recommendation, the Board shall determine whether to conduct a public hearing. A decision to conduct or not to conduct such a hearing shall be based on the Board's determination of whether it is in the public interest to do so, and considering among other factors the following:

1. **LEVEL OF PUBLIC INTEREST.** There has or has not been substantial public interest in the proposal; or

2. **IDENTIFICATION OF NEW ISSUES.** Whether it is reasonably probable that new issues related to the Preliminary Plan application of the proposed land use change will be identified; or

3. **IDENTIFICATION OF NEW INFORMATION.** Whether it is reasonably probable that new information related to the Preliminary Plan of the proposed land use change will be provided.

L. **BOARD PUBLIC HEARING.** If the Board chooses to conduct a public hearing, public notice shall be provided pursuant to Section 3-112: *Notice of Public Hearing,* and the hearing shall be conducted pursuant to Section 3-113: *Conduct of a Public Hearing.*

1. **COST FOR PUBLIC HEARING NOTICE(S).** The applicant shall be billed and shall be responsible for paying for the actual cost of publication of all applicable public hearing notices as required pursuant to Section 3-112: *Notice of Public Hearing.*

M. **BOARD ACTION.** Within 35 days after receipt of the Planning Commission recommendation, if the Board did not conduct another public hearing, or within 35 days after closure of the hearing if the Board conducted another public hearing, the Board shall approve, approve with conditions, or deny the Preliminary Plan. The Board's decision shall be entered into the official minutes of the meeting and shall contain the necessary findings of fact and reasons to support the decision. If the Board does not make separate findings of fact, it shall be presumed to have adopted the findings and recommendations of the Planning Commission.

1. **DELAY OF ACTION.** Before it takes action on the application, the Board may refer the Preliminary Plan back to the Planning Commission for further consideration and recommendations if at least one of the following circumstances is present:

BLM_0054014

    **a. NEW INFORMATION SUBMITTED**. There has been information submitted that was not available for consideration by the Commission before its recommendation; or

    **b. INSUFFICIENT EVALUATION**. There are substantive issues or requirements of this *Resolution* that were not sufficiently evaluated in the Commission's recommendations; or

    **c. SUBSTANTIVE ALTERATION**. There has been a substantive alteration to the plan subsequent to the Commission's recommendation; or

    **d. NEED FOR CLARIFICATION**. There is an element of the Planning Commission's recommendation that requires clarification.

    **2. OFFICIAL RECORD**. The Board's decision shall be entered into the official minutes of the meeting.

**N. SIGNIFICANCE OF PRELIMINARY PLAN APPLICATION APPROVAL**. Approval of the Preliminary Plan application shall not constitute approval of the Major Impact Project, or permission to proceed with construction of any aspect of the land use change. Approval shall only constitute authorization for the applicant to submit a Final Plan, in accordance with the representations made by the applicant and in response to any conditions placed on the Preliminary Plan by the Board.

**O. EXPIRATION**. The applicant shall be required to submit the Final Plan application within 12 months after the date of the approval of the Preliminary Plan. Failure to submit a complete Final Plan application within this time period shall render the Preliminary Plan approval null and void, and require the applicant to begin the Preliminary Plan review process again.

**P. EXTENSION OF SUBMITTAL DEADLINE**. The Board may extend the deadline to submit a Final Plan application for good cause shown, provided the applicant requests the extension in writing no less than 30 days before the deadline, and provided the Board finds that since approval of the Preliminary Plan there have been no substantial changes in circumstances of neighborhood land uses, in the capability or willingness of proposed service providers to serve the development, and no substantial change in the proposed land use change, or to the site on which it is proposed. Should the Board determine that such findings are not supportable, the review process shall be required to begin anew with the submittal of a Sketch Plan.

    **1. REFERRAL TO PLANNING COMMISSION FOR RECOMMENDATION.** The Board may request a recommendation from the Planning Commission on the request for extension before taking action.

    **2. MAXIMUM PERIOD OF EXTENSION** In no case shall the deadline for submittal of a Final Plan application be extended for more than 12 months beyond the date of the 12-month expiration.

    **3. FEE FOR REQUEST FOR EXTENSION**. In order to compensate the County for the cost of reviewing and processing the requested extension, each applicant shall pay the required fee, as shown in a schedule of fees issued by the Community Development Department that is adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

BLM_0054015

BLM_0054016

# DIVISION 7-400:
# FINAL PLAN FOR MAJOR IMPACT PROJECTS

## SECTION 7-401: FINAL PLAN APPLICATION FOR MAJOR IMPACT PROJECTS

After the Board has approved the Preliminary Plan application for a Major Impact Project, the applicant may submit a Final Plan application consistent with this Section. The Final Plan includes both a narrative describing elements of the proposed Project, and layout plans and/or plats that illustrate it.

**A.  FINAL PLAN APPLICATION SHALL CONFORM TO THE APPROVED PRELIMINARY PLAN.** The Final Plan application shall conform to the approved Preliminary Plan, and shall specifically address and comply with the conditions stated in the Board's approval of the Preliminary Plan.

    **1.  CHANGES BETWEEN PRELIMINARY PLAN APPROVAL AND FINAL PLAN SUBMITTAL.** The Final Plan application shall identify any changes between the previously-approved Preliminary Plan and the submitted Final Plan. The application shall be referred to the Planning Commission for further consideration and recommendation if at least one of the following circumstances is present:

        **a.  NEW INFORMATION IS SUBMITTED.** There has been significant information submitted that was not included in any approved Preliminary Plan; or

        **b.  SUBSTANTIVE ALTERATION.** There has been a substantive alteration to the plan subsequent to the Board's approval of the Preliminary Plan.

**B.  PHASING.** The Final Plan may include separate phases. Each phase may be separately reviewed and approved. Submittals for each phase of a Final Plan and Plat, as applicable, and references within applicable protective covenants and Development Improvement Agreements, shall include the name of the development, and the appropriate phase number.

**C.  CONDOMINIUM AND TOWNHOME DEVELOPMENTS.** A Major Impact Project that is a plan for condominium or townhome development shall require a Final Plan approval for the layout, infrastructure and amenities that corresponds to the approved Preliminary Plan for the Project. Building Permits may then be issued for construction of individual buildings. A  Final Plat shall be submitted after the buildings are constructed, that is reviewed and recorded pursuant to Article 5: *Administrative Review Projects That Require Land Use Change Permits.*

**D.  APPLICATION AND REVIEW FEES.** In order to compensate the County for the cost of reviewing and processing the Preliminary Plan, each applicant shall pay the required fee, as shown in a schedule of fees issued by the Community Development Department that is adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

    **1.  IMPACT FEES.** As applicable, payment in full of any impact fees.

**E.  SUBMITTAL OF DRAFT COPY.** The applicant shall submit one draft copy of the Final Plan application to the Community Development Department.

    **1.  COMMUNITY DEVELOPMENT DEPARTMENT REVIEW.** The Community Development Department shall review the application pursuant to Section 3-110:  *Community Development Department Review* and for its compliance with the conditions of the Board's approval of the Preliminary Plan.

**F.  TOTAL NUMBER OF COPIES REQUIRED.** Once the Community Development Department has determined the submittal to be complete, it shall determine the number of copies of the Final Plan application that are necessary for review and action by the Planning Commission and/or Board, and other review agencies or County departments, and shall notify the applicant of the number of copies of the complete plan that are required to be submitted. The Department shall, as applicable, forward the application and any relevant comments to the Planning Commission and/or Board.

**G.  NARRATIVE.** The Final Plan shall include the following, presented in the same order as it is listed here, in a stapled or otherwise bound document, on consecutively-numbered pages:

    **1.  APPLICANT.** The applicant's name, address, telephone and fax numbers, and e-mail address. If the applicant is to be represented by an agent, a notarized letter signed by the applicant shall be submitted authorizing the agent

BLM_0054017

to represent the applicant and stating the representative's name, address, telephone and fax numbers and e-mail address.

   **a. APPLICANT OTHER THAN APPLICANT AT PRELIMINARY PLAN APPROVAL.** If the applicant is not the same as the applicant who submitted the Preliminary Plan, that fact shall be noted, and a notarized letter of consent from the current property owner for the current applicant to proceed with the review shall be submitted.

   **b. APPLICANT IS NOT THE OWNER.** If the applicant is not the owner of the land, or is a contract purchaser of the land, the applicant shall submit a notarized letter signed by the owner consenting to the submittal. Consent of the owner for submittal shall imply consent by the owner for the County to complete the review process pursuant to this *Resolution.*

   **c. APPLICANT IS NOT THE SOLE OWNER.** If the applicant is not the sole owner of the land, the applicant shall submit a notarized letter(s) signed by all other owners, and/or by an association or corporation representing the owners, consenting to, or joining in, the application.

**2. PROPERTY OWNER.** The property owner's name, address, telephone and fax numbers and e-mail address and, if other than the applicant, a notarized letter from the owner consenting to the application.

   **a. OWNER OTHER THAN OWNER AT PRELIMINARY PLAN APPROVAL.** If the property ownership has changed, either by fee simple sale or organization since the Preliminary Plan was approved, that shall be noted and relevant documentation submitted.

**3. TABLE OF CONTENTS.** A table of contents that lists sections of information by page number, and the exhibits, plats and plans and other documents.

**4. PROJECT DESCRIPTION.** A detailed description of uses and activities that shall conform to those approved in the Preliminary Plan approval:

   **a. USES AND ACTIVITIES.** Proposed uses or activities, division of land, adjustment of boundaries, expansion of existing uses, and construction, stockpiled materials, indoor and outdoor storage areas.

   **b. NUMBERS OF UNITS OR OTHER SIZES OF USES.** Numbers of units or lots. The square footage or acreage of commercial, industrial or other uses.

   **c. DESCRIPTION OF STRUCTURES.** Description of structures to be constructed, their estimated size(s) and appearance.

   **d. DESCRIPTION OF OFF-SITE RESOURCES.** Description of off-site resources, hazardous activities and haul routes.

   **e. IDENTIFICATION OF LOT USE WITHIN SUBDIVISION.** If subdivision of the property is proposed, the uses proposed for all resulting lots.

   **f. SEASONS AND HOURS OF OPERATION.** As applicable, the seasons of the year in which the activity is proposed to be conducted, and the intended hours of operation.

   **g. PHASES.** Phases of the Final Plan, if applicable.

**5. DOCUMENTATION OF CONVEYANCE OF LAND OR EASEMENT.** As applicable a copy of warranty deed s to, or easement agreements with, the appropriate entity conveying or providing easement to the County or other entity, for any land set aside for road rights-of-way, public trails, or other public use.

**6. PROTECTIVE COVENANTS AND DESIGN GUIDELINES, CONDOMINIUM OR TOWNHOME DECLARATIONS, OR DEED RESTRICTIONS.** Protective covenants, design guidelines, condominium or townhome declaration or similar restrictions that will be imposed on the development, and, if applicable, recorded with a Final Plat. The protective covenants submittal shall be the final, recordable form of the protective covenants presented in draft form and reviewed as part of the Preliminary Plan and, at a minimum, shall address:

   **a. CONDITIONS OF PRELIMINARY PLAN APPROVAL.** As applicable, those items required by the Preliminary Plan approval to be included within protective covenants, design guidelines, condominium or townhome declarations or deed restrictions.

   **b. RESPONSIBILITIES OF HOMEOWNERS' ASSOCIATION.** As applicable, responsibilities of property owners or homeowners' association to collect dues, maintain common areas, improve infrastructure common to the development, maintenance of a decreed water augmentation plan and the augmented water supply,

BLM_0054018