treatment of wastewater and/or water, and to oversee the maintenance of the general appearance of the development.

**c.** **COUNTY IS PARTY TO ENFORCEMENT OF PROTECTIVE COVENANTS IN A SUBDIVISION**. If the proposed development is a subdivision, language that allows and requires enforcement of the protective covenants by property owners if the development and that names Gunnison County as a party to enforcement.

**d.** **COUNTY IS PARTY TO AMENDMENT OR TERMINATION**. Language that requires that amendment or termination of the protective covenants or restriction is subject to approval by Gunnison County.

    **1.** **DESIGN CRITERIA**. Design criteria that will govern development within the subdivision, including:

        **a.** **BUILDING SCALE AND LOCATION.** Language defining building heights, compatibility with terrain, and sizes of all structures that will be allowed by the protective covenants. The requirements of Section 11-108: *Standards for Development on Ridgelines*, Section 13-103: *General Site Plan Standards and Lot Measurements,* Section 13-105: *Residential Building Sizes and Lot Coverages* shall guide the drafting of the covenant language.

        **b.** **ARCHITECTURAL STYLE AND EXTERIOR APPEARANCE.** Language describing the architectural style that will be required of all structures in the proposed development, and the types and colors of exterior materials to be used, including siding, roofing.

**e.** **DOMESTIC ANIMAL CONTROL.** Language limiting the maximum number of domestic animals allowed on a lot or within the development, and requiring that they be confined on site by kenneling, leashing or other similar means. Language that includes requirements that comply with those specified by Section 11-106: F.6: *Domestic Animal Controls,* Section 11-109: D: *Domestic Animal Controls*, and Section 9-508: *Keeping of Livestock Not On an Agricultural Operation.*

**f.** **EXTERIOR LIGHTING.** Language that includes requirements that comply with those specified by Section 13-114: *Exterior Lighting.*

**g.** **FENCING.** Language that includes requirements that comply with those specified by Section 13-113: *Fencing.* If there is proposed to be a fence separating the proposed development from lands on which there are agricultural operations or are public lands, language shall be required acknowledging Colorado's "fence out" requirements, and placing responsibility for construction and maintenance of the fence with the property owners or homeowners' association.

**h.** **LANDSCAPING AND BUFFERING**. Language addressing installation and maintenance of landscaping pursuant to Section 13-111: *Landscaping and Buffering.*

**i.** **RECLAMATION AND NOXIOUS WEED CONTROL.** Language that includes requirements that comply with those specified by Section 13-115: *Reclamation and Noxious Weed Control.*

**j.** **PROVISION FOR SNOW REMOVAL.** Identification of responsibility of a property owners' or homeowners' association to remove snow from interior roads and parking areas.

**k.** **SOLID-FUEL-BURNING DEVICES.** If solid-fuel-burning devices are to be used in the proposed development, restrictions shall be listed ensuring compliance with Section 13-107: *Installation of Solid-Fuel-Burning Devices.*

**l.** **GEOTECHNICAL SITE-SPECIFIC STUDIES.** When a parcel is proposed for subdivision and analysis has indicated it is located within a geologic hazard area, language shall be included that identifies the specific hazard in which the development, or identified portions of the development, are located, and refers by title, name of preparer, and date of preparation to the geotechnical analysis of the site.

    **1.** **COPY OF GEOTECHNICAL STUDY TO BE ATTACHED**. A copy of the geotechnical study(ies) shall be required to be attached as an exhibit to the protective covenants or deed restriction.

**7.** **DOCUMENTATION ESTABLISHING AUTHORITY TO ADMINISTER COVENANTS, DECLARATIONS OR DEED RESTRICTIONS**. If the development is a subdivision, condominium or townhome development, proof of the establishment of any applicable homeowners' or property owners' association, district, architectural control committee or other group that will administer or enforce protective covenants, declarations or deed restrictions. If proof of establishment is not submitted with the Final Plan application, establishment shall be guaranteed through provisions in the Development Improvement Agreement, and all relevant documentation creating the organization shall be submitted to the Community Development Department.

BLM_0054019

8. **FINAL COST ESTIMATES.** Documentation from contractors, materials providers, engineers or other professionals, certifying final estimates for roads, bridges, drainage facilities, water supply and wastewater treatment systems, landscaping and other improvements required by the County for final approval.

9. **COPY OF PROPERTY TAX CERTIFICATE.** Copy of certification from the Gunnison County Treasurer's Office indicating that all real property taxes applicable to the subject parcel on which the land use change is proposed have been paid up to the year in which approval is under consideration.

10. **DRAFT DEVELOPMENT IMPROVEMENT AGREEMENT** Pursuant to Section 16-118: *Development Improvement Agreement Required*, when public or private improvements are a required component of a Land Use Change Permit, the applicant shall provide a copy of documentation of the certified final cost estimates to the County Attorney's office which will draft a Development Improvement Agreement that references specific amenities of the Project that were required by the Preliminary Plan approval, and the method of funding to ensure their completion. The Development Improvement Agreement shall specifically identify such requirements referencing plans, drawings and schedules for completion and shall be substantially in the form referenced in Section 16-118: *Development Improvement Agreement Required.*

11. **INFORMATION TO ASSESSOR'S OFFICE.** If the development is a subdivision, condominium or townhome development, a copy of a notarized signed statement from the developer agreeing to provide the Gunnison County Assessor's Office with the following information before November 30 of each year shall be submitted:

    a. **PARCELS SOLD.** A description of all lots or parcels sold within the development.

    b. **PURCHASER INFORMATION.** Name and address of each purchaser.

    c. **PURCHASE PRICE.** Purchase price of each parcel sold.

H. **LAYOUT AND DESIGN.** The application shall include a rendering of the final layout and design plan of the Project that shall include:

1. **SURVEY.** A scale survey of the boundaries of the land parcel, showing all planned, recorded and apparent rights-of-way and all easements including ditches, utility lines, roads, and paths or trails; a description of all monuments found and set marking the boundaries of the property; and a description of all control monuments used and all dimensions necessary to establish the boundaries in the field. All section, quarter-section, township and range lines that cross the development shall be identified.

2. **SCALE.** Scale shall be 100 feet to the inch, except building plans and townhome or condominium plans may be at a larger scale if appropriate.

3. **SHEET SIZE.** Sheet size shall be 24 inches by 36 inches. When a large development requires more than two sheets at the required scale, the applicant shall also submit a total area plan showing the entire development at a scale that is clearly legible.

4. **LOCATIONAL INFORMATION.** Each sheet shall contain a scale (written and graphic), north arrow and a heading containing the name and location of the development by reference to a quarter-section, township and range, and a reference to a U.S. Mineral survey where applicable.

5. **SUBDIVISION PLAT.** If the development is a subdivision, the final layout shall be presented as a recordable Plat, and include the required language pursuant to Section 7-401: M: *Specifications for Subdivision Plats.*

I. **ENGINEERED PLANS.** Final engineering design plans and descriptions for roads, bridges, drainage facilities, water supply and wastewater treatment systems, landscaping and other improvements proposed to be installed by the developer, or required by the County; such plans shall be designed and stamped by a qualified professional engineer licensed in the State of Colorado. Engineering plans may be bound separately when size or bulk makes it advisable. Two folded copies of each of the plans shall be provided that can be stored in legal-sized folders, and shall not be submitted in rolled form.

J. **UTILITY LOCATION PLANS.** Final utility location plans approved by all utility companies that were identified in Preliminary Plan as providing service to the development.

K. **WATER SUPPLY.** Documentation of a final court decree, deed or other written evidence demonstrating ownership and/or right to use water in the amounts, manner and location(s) for the uses and activities addressed in the Preliminary Plan.

1. **WATER AUGMENTATION PLAN.** If the Division of Water Resources required that a plan of water augmentation be designed, submitted and approved, a copy of the decree(s) for the plan shall be submitted. The plan shall

BLM_0054020

accurately portray the number and types of uses described in the applicant's Final Plan application submittal, including phases, if applicable.

**L.   RURAL ADDRESSING SYSTEM PLATS.** If the development is a subdivision, condominium or townhome development, three copies of the Final Plat, 14 inches by 17 inches, for inclusion in the rural addressing system, one of which the Community Development Department will provide to the applicable County department for emergency services purposes.

**M.   SPECIFICATIONS FOR SUBDIVISION PLATS**. Subdivision plats intended for recording shall be prepared by a surveyor registered in the State of Colorado, clearly and legibly drawn on indelible material so that legible prints can be made from it. The final plat recorded in the Office of the Clerk and Recorder of Gunnison County shall be a non-erasable copy of the original. Sheet size shall be 24" x 36". The scale of the final plat shall be sufficiently large to show clearly the details of the plan (preferably 1" = 100').

1.   **PUBLIC AREAS.** All public or common areas shall be identified.

2.   **NON-DUPLICATING ROAD NAMES.** All roads shall be named. Road names shall not duplicate those of any existing named road within the unincorporated county or any incorporated municipality, to avoid confusion and duplication.

3.   **ACCESS AND OTHER EASEMENTS.** Planned and existing, recorded or apparent easements shall be shown, including 25-foot easements from each irrigation ditch bank pursuant to Section 11-109: G. 2.: *Irrigation Ditch Easements*, watercourses, public utilities, drains, sewers, snow storage areas, roads and paths or trails crossing the property, the closing or changing of which might affect the rights of others or result in damage to the property of the owner.

4.   **BLOCKS AND LOTS.** All blocks and lots or spaces shall be consecutively numbered.

5.   **LOT ADDRESSES.** The applicant shall provide a copy of the Final Plat to the Gunnison County Building Inspector who shall assign the appropriate addresses, which shall be shown on the recordable Final Plat.

6.   **REFERENCE TO PROTECTIVE COVENANTS**. If protective covenants are included as an element of the development, they shall be filed with the plat and the plat shall contain the correct recording references.

7.   **CURVE DATA.** All curve data, in a chart that includes radii, internal angles, and lengths of all arcs and points of curvature.

8.   **REQUIRED PLAT LANGUAGE.** The following plat language:

a.   **FLOODPLAIN WARNING AND DISCLAIMER.** If the subject property is located within an identified floodplain, language shall be included on the plat pursuant to Section 11-103: F. 1. *Warning and Disclaimer of Floodplain Hazards Affecting Use and Occupancy of This Property.*

b.   **GEOLOGIC HAZARDS WARNING AND DISCLAIMER.** If the subject property is located within an identified geologic hazard area, language shall be included on the plat pursuant to Section 11-104: F. 5: *Warning and Disclaimer of Geologic Hazards Affecting Use and Occupancy of This Property.*

c.   **WILDFIRE HAZARD AREA WARNING AND DISCLAIMER**. If the subject property is located within an area designated as a wildfire hazard area, language shall be included on the plat pursuant to Section 11-106: G: *Warning and Disclaimer of Wildfire Hazards Affecting Use and Occupancy of This Property.*

d.   **COMPLIANCE WITH COUNTY APPROVAL DOCUMENTS**. A Final Plat presented for approval shall contain one of the following statements, as applicable:

1.   **COMPLIANCE WITH BOARD RESOLUTION.**

COMPLIANCE WITH BOARD OF COUNTY COMMISSIONERS' RESOLUTION
*The property described on this plat is subject to all the requirements, terms and conditions of the Board of County Commissioners' Resolution No. _____, recorded at Reception No._____ of the Records of the Clerk and Recorder of Gunnison County.*

2.   **COMPLIANCE WITH APPLICABLE CERTIFICATE OF APPROVAL.**

COMPLIANCE WITH CERTIFICATE OF APPROVAL
*The property described on this plat is subject to all the requirements, terms and conditions of Certificate of Approval No. _____, recorded at Reception No._____ of the Records of the Clerk and Recorder of Gunnison County.*

BLM_0054021

*SECTION 7-401: FINAL PLAN APPLICATION FOR MAJOR IMPACT PROJECTS*

**e.** **GENERAL NOTES.** Pursuant to Section 11-110: H: *Protective Covenants or Deed Restrictions and Plat Language*, the following paragraphs shall be included within a section of General Notes on a Final Plat:

**1.** **CONFINEMENT OF DOMESTIC ANIMALS.** Language directing that domestic animals must be controlled by kenneling, leash, fencing or other physical constraint and that any expense of enforcement of the domestic animal control restrictions by the County shall be at the expense of the responsible association or individual.

**2.** **AWARENESS OF COLORADO "FENCE-OUT" REQUIREMENTS**. Language referencing C.R.S. 35-46-101 *et seq* clearly stating that a property owner is required to construct and maintain fencing in order to keep livestock off his/her property.

**3**. **IRRIGATION DITCH MAINTENANCE**. Language notifying individual lot owners that an irrigation ditch owner has the right to enter the designated irrigation ditch maintenance easement, maintain the ditch, and leave natural debris on the bank.

**f.** **ATTORNEY'S OPINION.** The following opinion by the applicant's attorney:

ATTORNEY'S OPINION

*I, (printed name of attorney), an attorney at law duly licensed to practice in the State of Colorado, hereby certify that I have examined title to all lands herein dedicated and subdivided. Such title is vested in_____ and is free and clear of all liens, defects, encumbrances, restrictions and reservations except as follows :_____( list same or indicate none). Dated this _____ day of _____, A.D. 20___.*

_____
*Attorney-at-Law*

**g.** **DEDICATION.** A Final Plat presented for approval shall contain one of the following statements concerning dedication, which shall be followed by the Notary Statement set forth in (3) below:

**1.** **DEDICATION LANGUAGE.**

DEDICATION

*(I, We), _____(printed name of owner(s), mortgagee(s) and lien holder(s))_____being the owner(s), mortgagee(s) and lien holder(s) of the land described as follows: (insert legal description of land being platted and/or subdivided and include area in acres to two (2) decimal places) in Gunnison County, Colorado, under the name of (complete name of development in capital letters), have laid out, platted and/or subdivided the same as shown on this plat do hereby permanently dedicate to the public at large the streets, alleys, roads and other public areas as shown hereon and hereby permanently dedicate those portions of land labeled as easements for the installation and maintenance of public utilities as shown hereon.*

*In witness whereof (printed name of the owner) has (have) subscribed (his, her, their) name(s) this _____ day of _____, A.D. 20___.*
*By _____*
*Owner(s), Mortgagee(s) and Lien holder(s)*

**2.** **DEDICATION/ALTERNATIVE LANGUAGE**.

DEDICATION

*(I, We), _____(printed name of owner(s), mortgagee(s) and lien holder(s))_____, being the owner(s), mortgagee(s) and lien holder(s) of the land described as follows: (insert legal description of land being platted and/or subdivided and include area in acres to two (2) decimal places) in Gunnison County, Colorado, under the name of (complete name of development in capital letters), have laid out, platted and/or subdivided the same as shown on this plat and do hereby permanently dedicate and convey to the owners of lots, tracts or parcels within this subdivision and their guests, but not to the public at large, the common right to use streets, alleys, roads and other areas as shown hereon and hereby permanently dedicate those portions of land labeled as easements for the installation and maintenance of public utilities as shown hereon.*

*In witness whereof (printed name of the owner(s)) has (have) subscribed his, her, their name(s) this _____day of _____, A.D. 20_____.*
*By _____*
*Owner(s), Mortgagee(s) and Lien holder(s)*

BLM_0054022

**3.  NOTARIAL.**

*State of Colorado)*
*) ss.*
*County of Gunnison)*

*The foregoing instrument was acknowledged before me this _____ day of _____, A.D. 20_____, by (printed name of owner(s): if by natural persons here, insert name; if by person acting in a representative official capacity, insert capacity; if by officers of a corporation, then insert the title of said officers and the name of the corporation).*

*My commission expires: _____*
*My address is: _____*
*Witness my hand and official seal:*
*_____ (seal)*
*Notary Public*

**h.  PLANNING COMMISSION APPROVAL.** If the Board in its approval of Preliminary Plan required review and approval of the Final Plan by the Planning Commission, the following language shall be included on the Plat:

GUNNISON COUNTY PLANNING COMMISSION APPROVAL
*The Planning Commission of Gunnison County, Colorado, hereby recommends _____ approval of this plat of the above subdivision, such recommendation being made at a meeting of said Commission held on this _____ day of _____, A.D. 20_____.*

*_____*
*Chairperson, Gunnison County Planning Commission*

**i.  BOARD OF COUNTY COMMISSIONERS' APPROVAL.** As is consistent with the selected paragraph of dedication, any Final Plat submitted for approval shall contain one of the following statements of approval as appropriate:

**1.  BOARD APPROVAL LANGUAGE:**

BOARD OF COUNTY COMMISSIONERS' APPROVAL
*The within plat of (name of development in capital letters) is approved this _____ day of _____, A.D. 20_____, and the roads and other public areas are hereby accepted provided, however, that such acceptance shall not in any way be considered as an acceptance for maintenance or snow removal purposes. Maintenance of, or snow removal from, the subject roads shall be only upon a separate resolution of the Board of County Commissioners passed in accordance with such policies, resolutions or ordinances in effect at that time.*

*_____*
*Chairperson, Gunnison County Board of Commissioners*
*Attest:*
*_____*
*Gunnison County Clerk and Recorder*

**2.  BOARD APPROVAL: FIRST ALTERNATIVE LANGUAGE:**

BOARD OF COUNTY COMMISSIONERS' APPROVAL
*The within plat of (name of development in capital letters) is approved this _____ day of _____, A.D. 20_____, and the private dedication of roads and common areas is approved on the condition that such roads and common areas shall be maintained and snowplowed, by and at the expense of the lot owners and not by Gunnison County or any other public agency.*

*_____*
*Chairperson, Gunnison County Board of Commissioners*

*Attest:*
*_____*
*Gunnison County Clerk and Recorder*

**3.  BOARD APPROVAL: SECOND ALTERNATIVE LANGUAGE:**

BLM_0054023

**BOARD OF COUNTY COMMISSIONERS' APPROVAL**

*The within plat of (name of development in capital letters) Is approved this _____ day of _____, A.D. 20_____, as a seasonal use development only and not as a development served by a road opened or to be opened on a year-round basis. The roads and other public areas are hereby accepted provided, however, that such acceptance shall not in any way be considered as an acceptance for maintenance purposes. Maintenance of, or snow removal from the subject roads shall be only upon a separate resolution of the Board of County Commissioners passed in accordance with such policies, resolutions or ordinances in effect at that time.*

_____
*Chairperson, Gunnison County Board of Commissioners*

*Attest:*

_____
*Gunnison County Clerk and Recorder*

4. **BOARD APPROVAL: THIRD ALTERNATIVE LANGUAGE:**

**BOARD OF COUNTY COMMISSIONERS' APPROVAL**

*The within plat of (name of development in capital letters) is approved this _____ day of _____, A.D. 20_____ as a seasonal use development only and not as a development served by a road opened or to be opened on a year-round basis. The private dedication of roads and common areas is approved on the condition that such roads and common areas shall be maintained and snowplowed, by and at the expense of the lot owners and not by Gunnison County or any other public agency.*

_____
*Chairperson, Gunnison County Board of Commissioners*

*Attest:*

_____
*Gunnison County Clerk and Recorder*

5. **GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE.** (To be placed in the lower right-hand corner of cover sheet.)

**GUNNISON COUNTY CLERK AND RECORDER'S ACCEPTANCE**

*This plat was accepted for filing in the office of the Clerk and Recorder of Gunnison County, Colorado, on this _____ day of _____, A.D. 20_____, Reception Number _____, Time _____, Date _____.*

_____
*Gunnison County Clerk and Recorder*

6. **SURVEYOR'S STATEMENT.** A statement, followed by the land surveyor's signature and seal, certifying that the survey was performed by him or under his direct responsibility and supervision and explaining how bearings, if used, were determined.

N. **RECORDING OF PLAT FOR A SUBDIVISION.** If the development is a subdivision plat, then within 120 days of the date of approval of the Final Plan by the Board, the Community Development Director shall file or oversee the filing of the plat in the Office of the County Clerk and Recorder. Approved protective covenants or declarations shall be recorded at the same time the plat to which they relate is filed in that office. The expense of the filing shall be borne by the applicant.

M. **ESSENTIAL HOUSING PROJECT OR ESSENTIAL HOUSING DESIGNATION.** When the development is an Essential Housing Project, or otherwise includes Essential Housing Residences, the Final Plat and Final Plan shall identify each lot that is designated as an Essential Housing lot and shall identify the number of Essential Houses on each Essential Housing lot.

# SECTION 7-402: FINAL PLAN REVIEW PROCESS FOR MAJOR IMPACT PROJECTS

The following process (illustrated in the flowchart in Appendix Figure 8: *Final Plan Review Process for Major Impact Projects*) shall apply to the review of a Final Plan application for a Major Impact Project.

A. **PRE-APPLICATION CONFERENCE**. Attendance at a Pre-Application Conference is optional before submittal of the Final Plan application, pursuant to Section 3-108: *Pre-Application Conference.*

BLM_0054024

**B. SUBMITTAL OF DRAFT COPY.** The applicant shall submit one draft copy of the Final Plan application to the Community Development Department pursuant to Section 7-401: *Final Plan Application for Major Impact Projects.*

  **1. COMMUNITY DEVELOPMENT DEPARTMENT REVIEW.** The Community Development Department shall review the application for completeness, for its compliance with the conditions of the Board's approval of the Preliminary Plan

  **2. TOTAL NUMBER OF COPIES REQUIRED.** The Community Development Department shall determine the number of copies of the Final Plan application that are necessary for review and final action by the Planning Commission and/or Board, other review agencies or County departments, and shall notify the applicant of the number of copies required to be submitted. The Department shall, as applicable, forward the application and any relevant comments to the Planning Commission or Board.

**C. REFERRAL TO PLANNING COMMISSION.** The application shall be referred to the Planning Commission for further consideration and recommendation if at least one of the following circumstances is present:

  **1. BOARD REQUIRED PLANNING COMMISSION REVIEW OF FINAL PLAN.** The Board in its approval of the Preliminary Plan required that the Final Plan be reviewed by the Planning Commission; or

  **2. NEW INFORMATION IS SUBMITTED**. There has been significant information submitted that was not included in the approved Preliminary Plan; or

  **3. SUBSTANTIVE ALTERATION FOLLOWING PRELIMINARY PLAN APPROVAL**. There has been a substantive alteration to the plan subsequent to the Board's approval of the Preliminary Plan.

**D. PLANNING COMMISSION REVIEW.** If, as a condition of its Preliminary Plan approval, the Board required that the Final Plan be reviewed by the Planning Commission, or pursuant to Section 7-402: C. 1.: *New Information Submitted* or Section 7-402: C. 2.: *Substantive Alteration Following Preliminary Plan Approval*, then a complete copy of the application shall be forwarded to the Planning Commission, together with a copy of the Community Development Department's applicable comments. It is the goal, but not the requirement, of this *Resolution*, that within 60 days of the receipt of the application by the Community Development Department, the Planning Commission shall consider all relevant materials and testimony; and forward a recommendation to the Board.

  **1. PLANNING COMMISSION RECOMMENDATION**. If the Board required the Planning Commission to review and forward a recommendation on the Final Plan, the Commission shall provide its written recommendation as to whether the Board should approve or deny the Final Plan. A conditional Recommendation of approval of a Final Plan is not preferred, but the Planning Commission may specify certain requirements to be met before presentation of the Final Plan to the Board. The recommendation shall be in written form, and shall, at a minimum, include the following:

    **a. COMPLIANCE WITH PRELIMINARY PLAN APPROVAL CONDITIONS.** Whether the Final Plan application has complied with the conditions imposed by the Board in the Preliminary Plan approval.

    **b. CONSISTENCY WITH MAJOR IMPACT PROJECT REVIEW STANDARDS.** Whether the application complies with Section 7-102: *Standards of Approval for Major Impact Projects.*

    **c. FINDINGS.** Findings based on conclusions reached by the Planning Commission in its review of the submitted plan.

    **d. RECOMMENDATION OF BOARD ACTION.** A recommendation that the Board should approve, approve with conditions, or deny the Final Plan application.

**E. BOARD ACTION.** Within 35 days of the Planning Commission recommendation, a complete copy of the application and the Planning Commission's recommendation shall be forwarded to the Board. The Board shall consider all relevant materials and testimony; shall assess whether the Final Plan complies with the conditions of Preliminary Plan approval and with Section 7-102: *Standards of Approval for Major Impact Projects;* and shall approve or deny the application. If the Project is a commercial or industrial use, the Board action shall also state when the Project shall be considered completed, pursuant to Section 1-104: F. 4. c: *Commercial or Industrial Project.*

  **1. ADDITIONAL PLANNING COMMISSION REVIEW MAY BE REQUIRED.** Before it takes action on the application, the Board may refer the application back to the Planning Commission for further consideration and recommendations if at least one of the following circumstances is present:

    **a. NEW INFORMATION SUBMITTED**. There has been information submitted that was not available for consideration by the Commission before its recommendation; or

BLM_0054025

    **b.**  **INSUFFICIENT EVALUATION**. There are substantive issues or requirements of this *Resolution* that were not sufficiently evaluated in the Commission's recommendations; or

    **c.**  **SUBSTANTIVE ALTERATION**. There has been a substantive alteration to the plan subsequent to the Commission's recommendation; or

    **d.**  **NEED FOR CLARIFICATION**. There is an element of the Planning Commission's recommendation that requires clarification.

  **2.**  **BOARD ACTION AFTER IF REFERRED TO PLANNING COMMISSION**. If the application is referred to the Planning Commission for additional review, the Board shall, within 35 days after receipt of the Planning Commission's additional recommendation, approve, approve with conditions, or deny the application.

**F.**  **RECORDATION OF CERTIFICATE OF APPROVAL.** Within 30 days following approval of the Final Plan, the Community Development Director shall record a Certificate of Major Impact Project Approval in the Office of the Gunnison County Clerk and Recorder's Office. The Certificate shall summarize the specific Project, the legal description of the subject property, include reference to the approval by the relevant decision body, the date on which the approval occurred, and shall include, as applicable, an attached exhibit a copy of any resolution, or other decision document memorializing the approval.

  **1.**  **APPROVAL DOES NOT CONSTITUTE ACCEPTANCE OF MAINTENANCE OR DEDICATION**. Approval of the Final Plan by the Board does not constitute acceptance of maintenance responsibility for any dedicated roads, alleys or other public lands or an agreement to remove snow from those areas, nor does approval constitute acceptance of any dedication of any public areas including roads or alleys without explicit Board acceptance of such dedication.

**G.**  **INSUBSTANTIAL CHANGES AND AMENDMENTS**. Insubstantial changes to an approved Major Impact Project may be authorized by the Community Development Director without additional public hearing.

  **1.**  **LIMITS ON INSUBSTANTIAL CHANGES.** Insubstantial changes shall be limited to technical or engineering considerations that arise during final design or during actual construction, or similar minor modifications to features of the Project that are necessary to address technical constraints or unanticipated consequences.

  **2.**  **ACTIVITIES NOT CONSIDERED INSUBSTANTIAL**. Activities that shall not be considered insubstantial and that may not be authorized by the Community Development Director include changes to the overall character of the Project, changes that substantially increase the Project's trip generation or demand for public facilities, and changes that are inconsistent with a condition or representation of the Project's original approval. Such activities shall be considered amendments of the plan and may only be authorized by the applicant's submitting a new application and repeating the review process for a Major Impact Project.

BLM_0054026

# ARTICLE 8:
# TECHNICAL MODIFICATIONS, TAKINGS, APPEALS AND EXCEPTIONS

## SECTION 8-101: TECHNICAL MODIFICATIONS

**A. PURPOSE.** This Section sets forth the process and standards for obtaining a Technical Modification, which is a minor deviation of not more than ten percent from any minimum or maximum numerical standard required by this *Resolution*.

**B. APPLICABILITY.** A Technical Modification may be granted by the decision-making body that has final authority to approve or deny the permit application for which a Technical Modification is requested. If the circumstances requiring the Technical Modification become apparent only after a Land Use Change Permit has been approved, the Technical Modification may be approved by the decision-making body that originally approved the permit.

    **1. ADMINISTRATIVE REVIEW OR MINOR IMPACT PROJECT.** The Community Development Director or the Planning Commission may grant a Technical Modification concurrent with the approval of a Land Use Change Permit for an Administrative Review Project or Minor Impact Project, or

    **2. MAJOR IMPACT PROJECT.** The Board may grant a Technical Modification concurrent with the approval of the Preliminary or Final Plan of a Major Impact Project.

**C. PROCESS.** The following process shall apply to an application for a Technical Modification.

    **1. PRE-APPLICATION CONFERENCE.** Attendance at a Pre-Application Conference is mandatory before submittal of a Technical Modification application, pursuant to Section 3-108: *Pre-Application Conference*.

    **2. APPLICATION.** The applicant shall submit an application that includes the following materials:

        **a. SITE PLAN.** A site plan of the subject property, showing existing improvements and proposed development features that are relevant to the review of the proposed Technical Modification (illustrated in Appendix Figure 1: *Site Plan Example*.).

        **b. DESCRIPTION OF REQUESTED MODIFICATION.** A description of the requested modification, including how the request complies with 8-101: D: *Review Standards for Technical Modifications*.

        **c. OTHER MATERIALS.** As necessary, the applicant shall also submit written or graphic information necessary to describe the proposal and to explain its compliance with the standards of this Section.

    **3. COMMUNITY DEVELOPMENT DEPARTMENT REVIEW.** The Community Development Department shall review the application for completeness, determine whether it meets the requirements of this Section, and shall so indicate to the applicable decision-making body.

    **4. ACTION BY DECISION-MAKING BODY.** A complete copy of the application shall be forwarded to the applicable decision-making body, together with a copy of the Community Development Department Review and recommendation. The review body shall review the application, consider the standards of Section 8-101: F: *Review Standards for Technical Modifications*, and may approve, approve with conditions, or deny the application.

**D. STANDARDS OF APPROVAL FOR TECHNICAL MODIFICATION'S.** An application for a Technical Modification shall comply with all of the following standards:

    **1. TECHNICAL OR INSUBSTANTIAL.** The proposed modification shall be of a technical or insubstantial nature, and necessary to compensate for an unusual aspect or feature of the property or of the land use change that is not shared by properties in general, or is necessary to address an unusual hardship associated with the application of the particular standard on the property.

    **2. TEN PER CENT LIMIT.** The request shall be to increase a maximum numerical standard or to decrease a minimum numerical standard by 10 per cent or less.

    **3. ADVERSE IMPACTS SHALL BE MITIGATED.** Any adverse impacts caused by the proposed modification shall be mitigated to the maximum extent practical, so the resulting effects on those properties are insubstantial.

BLM_0054027

4. **COMPLIANCE WITH PURPOSES OF STANDARD TO BE MODIFIED.** The applicant shall demonstrate that if the requested modification is granted, the proposed land use change will still comply with the purposes of the standard for which the modification is requested, and will advance or protect the public interests as well or better than strict compliance with the standard.

5. **NO ADVERSE IMPACT ON PUBLIC HEALTH, SAFETY AND WELFARE, OR ON THE ENVIRONMENT.** The proposed modification shall cause no adverse impact on public health, safety and welfare, or on the environment.

6. **NO CHANGE IN IMPACT CLASSIFICATION.** Approval of the proposed modification will result in no change to the impact classification of the proposed land use change.

7. **SUBSTANTIALLY SAME OR LESS IMPACT.** Approval of the proposed modification will result in the same or less actual impact due to unique site features, the nature of the equipment that will be used, the nature of the operations and activities proposed, or proposed mitigation measures, including buffering and screening.

E. **APPEALS.** An appeal of an action on a Technical Modification may be made pursuant to Section 8-103: *Appeals.*

## SECTION 8-102: ADMINISTRATIVE TAKINGS PROCESS FOR LAND USE CHANGE PERMITS

A. **PURPOSE.** It is the intent of this *Resolution* that no private landowner be deprived of all reasonable economic use of real property. However, it is possible that certain regulatory decisions made pursuant to this *Resolution* may, in limited unique circumstances, potentially result in claims that all reasonable economic use of a parcel has been denied. This Section establishes an administrative appeal to attempt to resolve such claims, and to reduce the potential for litigation.

B. **APPLICABILITY.** Any landowner who believes that a final decision made or final action taken by a decision-making body pursuant to this *Resolution* results in a denial of all reasonable economic use of all of a parcel of real property, must initiate and complete an appeal pursuant to this Section before initiating litigation against Gunnison County for such decision or action. This requirement is not a prerequisite to a landowner's filing a petition in the district court pursuant to *Colorado Rules of Civil Procedure*, Rule 106, or C.R.S. 29-20-201 *et seq.*

C. **DEADLINES FOR PETITION.** No later than 30 days after the final decision or final action has been made, the applicant shall file a written notice with the Community Development Department that a Takings Relief Petition will be submitted. Within 30 days after filing that notice, the petitioner shall submit the Takings Relief Petition to the Community Development Department.

D. **CONTENTS OF TAKINGS RELIEF PETITION.** The Takings Relief Petition shall, at a minimum, include the following:

1. **IDENTIFICATION OF PETITIONER.** Name, address, telephone number of petitioner.

2. **IDENTIFICATION OF LANDOWNER.** Name, address, telephone number of current owner of the property, with notarized written approval of the current owner of the property to file the petition.

3. **TERMS OF PURCHASE.** Price paid, and all other terms of sale, of the current owner's purchase of the subject property; the date of purchase; the name of the party from whom purchased; and the relationship, if any, between the current owner and the party from whom the property was purchased.

4. **APPRAISALS.** Any appraisals of the property, prepared for any purpose, including financing, offers for sale, or ad valorem taxation, during the five years immediately preceding the date of the decision or action that is the subject of the petition.

5. **FORM OF OWNERSHIP.** The form of ownership of the property (sole proprietorship, for profit or not-for-profit corporation, partnership, or joint venture), and the nature of the property interest (including fee simple, leasehold).

6. **VALUE AND TAXES.** The assessed value of the property, and all real property taxes paid for the five years immediately preceding the date of the decision or action that is the subject of the petition.

7. **MORTGAGES OR LOANS.** A full description of current mortgages, loans, or other encumbrances on the property, including the name of the mortgagee or lender, the current interest rate, remaining loan balance, term of the loan, and other significant requirements, including the right of purchasers to assume the loan.

8. **LISTINGS.** All listings of the property for sale or rent, the price asked, and any written offers received during the five years immediately preceding the date of the decision or action that is the subject of the petition.

9. **STUDIES.** Any studies undertaken by the petitioner or agents of the petitioner within the five years immediately preceding the date of the decision or action that is the subject of the petition concerning the feasibility of development or use of the property.

BLM_0054028

10. **INCOME AND EXPENSE STATEMENTS**. For income-producing property, itemized income and expense statements for the prior three years.

11. **IMPROVEMENTS AND EXPENSES.** Documentation of any improvements and investments made to the property, and any expenditures for professional and other services related to the property made during the prior three years.

12. **STATEMENT.** A statement identifying the regulations that are alleged to result in the elimination of all reasonable economic use of the land and describing the use the landowner believes represents the minimum legally required reasonable economic use of the land, accompanied by any documentation, studies, or other supporting evidence.

E. **ADDITIONAL INFORMATION.** The Community Development Director or the Hearing Officer may request additional information that is reasonably necessary, in his/her opinion, to conclude that there has or has not been a denial of all reasonable economic use causing a substantial economic hardship.

F. **WAIVER OF INFORMATION**. The Community Development Director or the Hearing Officer may waive the submittal of information if in his/her opinion it is unnecessary or not applicable to the subject petition.

G. **INFORMATION NOT AVAILABLE**. In the event that any of the information required to be submitted by the petitioner is not reasonably available, the petitioner shall file a statement identifying the information that could not be provided, explaining why the information is not available and, if it will become available, when it will become available.

H. **APPOINTMENT OF HEARING OFFICER.** Within 30 days of receipt of the completed petition, the Board shall appoint a hearing officer to review the petition and conduct a hearing pursuant to this Section.

1. **QUALIFICATIONS OF HEARING OFFICER**. The Hearing Officer shall have demonstrated experience in land use law, land development, real estate finance and appraisal, and in other disciplines related to land use or real estate development sufficient to perform the duties required by this Section. Before appointment, the Hearing Officer shall submit a statement to the parties of no actual or potential conflict of interest regarding the subject petition.

2. **COMPENSATION FOR COSTS.** The Hearing Officer shall be compensated at his/her normal rate for professional services of a similar type, and any reimbursable expenses, including staff support if necessary. The petitioner shall deposit a fee in advance with the County to cover the reasonable cost of preparing and copying the record, the cost of the services of the hearing officer, the cost of the hearing, and the costs incurred for publication of public notice, as estimated by the Community Development Director. At the conclusion of the hearing, the Hearing Officer shall award to the prevailing party all reasonable costs but not any attorney fees except if the Hearing Officer determines that the claim or defense is frivolous, groundless or vexatious.

I. **HEARING PROCESS**. The process for conducting the hearing shall be as follows:

1. **RECORD.** Gunnison County shall expeditiously prepare the record and deliver a copy of the record to the petitioner and to the Hearing Officer.

2. **NOTICE.** Notice of the hearing shall be given pursuant to Section 3-112: *Notice of Public Hearing*.

3. **TESTIMONY.** The Hearing Officer shall review the record and shall allow an opportunity during the hearing for the petitioner, and Gunnison County, and any witness called by either party to offer written or oral testimony regarding the Takings Relief Petition. The burden of proof shall be on the petitioner to demonstrate, by the preponderance of the evidence, that the decision or action appealed from has denied all reasonable economic use of all of the subject property.

J. **DECISION AND FINDINGS.** Within 30 days after the close of the hearing, the Hearing Officer shall prepare and present to the Board and petitioner a decision on the merits of the appeal, based on the record and testimony. The decision shall be based on the evidence submitted and shall include the following findings and determinations:

1. **ADEQUATE INFORMATION.** Whether the petitioner has fully presented the information required by this Section.

2. **MARKET VALUE**. The fair market value of the property considering the decision or action appealed from, and the fair market value if the proposed Land Use Change Permit were to be granted.

3. **FEASIBLE DEVELOPMENT ALTERNATIVE.** Whether there exists a feasible alternative that could provide a reasonable economic use of the property.

4. **FAIR MARKET VALUE OR REASONABLE ECONOMIC BENEFIT OF ALTERNATIVE DEVELOPMENT**. The fair market value or reasonable economic benefit available to the landowner from alternative development of the subject property including any opportunity to develop the property together with any other contiguous property owned by the landowner, or to use any other incentives available within this *Resolution*.

BLM_0054029

5. **DEVELOPMENT FEASIBILITY**. Whether it was feasible to develop the property as of the date of the application, or shortly thereafter.

6. **DEMONSTRATION OF TAKINGS.** Whether the petitioner has met its burden to prove that the decision appealed from has denied all reasonable economic use of all of the subject property.

K. **RECOMMENDATION FOR RELIEF.** If the Hearing Officer finds that the petitioner has been denied all reasonable economic use of all of the subject property, then the Hearing Officer shall recommend relief to remedy the denial of all reasonable economic use. The Hearing Officer shall recommend the minimum reasonable increase in use, density, intensity, or other possible chance to the decision or action that would permit a reasonable economic use of the subject property. The highest and best use, or even an average or generally reasonable expectation of use, is not required or intended as the appropriate remedy.

L. **BOARD ACTION.** Within 60 days, following receipt of the Hearing Officer's decision, the Board shall review it and shall approve, approve with modifications, or disapprove the decision of the Hearing Officer. The Board may, in its sole discretion, conduct a public hearing before taking action. If the Board chooses to conduct a public hearing, it shall be conducted pursuant to Section 3-113: *Conduct of Public Hearing*. The decision of the Board upon review of the Hearing Officer's decision shall be the final action necessary to complete an appeal pursuant to this Section.

1. **IMPLEMENTATION OF RELIEF MEASURES.** The Board in its discretion may adopt any measure that is within the Board's authority to implement the Hearing Officer's recommendations, with or without further review by the Planning Commission.

## SECTION 8-103: APPEALS

A. **ACTIONS THAT MAY BE APPEALED TO THE BOARD.** The following actions may be appealed to the Board:

1. **CLASSIFICATION OF IMPACT.** Community Development Department classification of impact pursuant to Section 3-111: *Classification of Impact.*

2. **ADMINISTRATIVE REVIEW.** Community Development Director actions on an Administrative Review application, pursuant to Section 5-102: *Administrative Review Projects That Require a Land Use Change Permit.*

3. **PLANNING COMMISSION DECISION ON MINOR IMPACT PROJECT.** Planning Commission actions on a Minor Impact application pursuant to Article 6: *Minor Impact Projects*.

4. **INTERPRETATION.** Community Development Director interpretations of this *Resolution*, pursuant to Section 1-114: *Interpretations.*

5. **TECHNICAL MODIFICATION.** Decision-making body's action on a Technical Modification, pursuant to Section 8-101: *Technical Modifications.*

B. **STANDING TO APPEAL.** The following persons shall have standing to submit an appeal:

1. **APPLICANT.** The applicant or the owner of the subject property affected by a decision.

2. **MEMBER OF THE PUBLIC.** Any member of the public.

3. **PERSON WHO HAS REQUESTED AN INTERPRETATION**. A person who has requested an interpretation of this *Resolution* pursuant to Section 1-114 *Interpretations.*

4. **PERSON WHO HAS APPEALED AN IMPACT CLASSIFICATION**. A person who requests consideration of an impact classification determined pursuant to Section 3-111: *Classification of Impact.*

C. **PROCESS.** The process for submittal and review of an appeal is as follows:

1. **WRITTEN APPEAL.** An appeal may be submitted to the Community Development Director no more than 15 days after the date on which the decision-making body issues its final decision on the application, not including the day on which the decision was made. The appeal shall be submitted in writing, stating the basis of the appeal and the relief that is requested. The appeal shall become part of the record.

a. **FEE FOR APPEAL SUBMITTAL.** In order to compensate the County for the cost of reviewing and processing the petition, the appellant(s) shall bear the full cost of preparation of the record of the initial decision-making body. The appellant(s) shall pay a required appeal fee, as shown in a schedule of fees that is adopted and amended from time to time by the Board. The fee schedule shall be calculated to make the amount of the fee generally equivalent to the expense reasonably to be incurred by the County in reviewing and processing the appeal. The appeal fee shall be adjusted when the record is complete and at a minimum

BLM_0054030

shall include costs of record transcription, document reproduction, and provision of notice(s) required for the public meeting and, if conducted, the public hearing.

    **b. COUNTY SHALL PREPARE RECORD.** Upon receipt of payment of the appeal fee, the County shall prepare the record of the initial decision-making body.

**2. BOARD CONSIDERATION OF APPEAL.** The appeal shall be considered by the Board at a regularly scheduled meeting within 30 days after the date the written appeal was filed and appeal fee paid.

    **a. NOTICE OF MEETING.** The Community Development Department shall, by first-class mail, inform the applicant, the appellant and if a public hearing was part of the review process on the application for which an appeal of action has been filed, anyone who testified at the public hearing or submitted written comments on the application. That information shall include the date, time, and place of the meeting.

    **b. BOARD DETERMINATION WHETHER TO CONDUCT PUBLIC HEARING**. At the meeting, the Board may determine that a public hearing should be conducted on the appeal. If the Board so determines, notice shall be given pursuant to Section 3-112: *Notice of Public Hearing*. The public hearing shall be conducted pursuant to Section 3-113: *Conduct of Public Hearing.*

        **1. CRITERIA FOR CONDUCTING PUBLIC HEARING.** The Board shall conduct a public hearing if the Board is satisfied that the anticipated, additional testimony or documents could not reasonably have been presented to the initial decision-making body. The Board shall consider all of the following in making such a decision:

            **a. AVAILABILITY AT TIME OF REVIEW BY INITIAL DECISION-MAKING BODY**. Availability of the anticipated, additional testimony or documents at the time of review of the application by the initial decision-making body.

            **b. ADDITIONAL TESTIMONY OR EVIDENCE WOULD BE SIGNIFICANT.** Whether the additional testimony or evidence would be significant; that is, whether it would have a major effect on the Board's decision on the appeal.

    **c. BOARD CONSIDERATION ONLY OF RECORD; NO PUBLIC HEARING CONDUCTED**. If the Board determines that a public hearing shall not be conducted on the appeal, the Board shall limit its consideration to review of the record of the initial decision-making body, and argument by the appellant and applicant regarding that record. No new evidence shall be accepted or considered, and the Board chairperson may limit statements made to the Board.

    **d. BOARD CONSIDERATION OF RECORD AND NEW EVIDENCE; PUBLIC HEARING CONDUCTED.** If the Board determines that a public hearing shall be conducted on the appeal, the Board shall make its decision de novo based on consideration of the record of the initial decision-making body and any evidence presented at the public hearing.

**3. BOARD DECISION.** The Board shall affirm, reverse, modify or remand, in whole or part the appealed action. When the Board reverses or modifies a decision, the Board shall set forth its findings and state its reasons. When the Board elects to remand the matter back to the initial decision-making body, the Board shall include a statement explaining the reasons for the remand and the action to be taken.

    **a. MODIFICATION, REVERSAL OR REMAND OF ORIGINAL ACTION.** The original action shall only be modified, reversed or remanded if the appellant establishes, that:

        **1. NO CREDIBLE EVIDENCE.** There is no credible evidence in the record to support the original decision;

        **2. ORIGINAL ACTION INCONSISTENT WITH THIS *RESOLUTION*.** The original action was inconsistent with the applicable requirements of this *Resolution*; or

        **3. REVIEW BODY ACTION INAPPROPRIATE.** The initial decision-making body exceeded its jurisdiction or abused its discretion.

    **b. BOARD DECISION SHALL BE FINAL.** The Board's decision to affirm, reverse or modify a decision shall be final and shall not be further appealed, but may be subject to judicial review..

## SECTION 8-104: EMERGENCY EXCEPTIONS

**A. PURPOSE.** Gunnison County recognizes that occasionally an existing legal nonconforming land use, or a land use that has been permitted and complies with the conditions of that permit, may be subject to unexpected situations that

BLM_0054031

require immediate and temporary relocation of the land use to another site to avoid serious detriment to an individual or business entity. This Section allows the Board to evaluate such situations on a case-by-case basis to provide temporary relief from certain requirements of this *Resolution* to allow reasonable time and opportunity for an individual or business entity to obtain a Land Use Change Permit for that land use.

**B. AUTHORITY.** An Emergency Exception may be granted solely by the Board. Unless specifically exempted within the conditions of the Land Use Change Permit, all sections of this *Resolution* shall apply. Under no circumstances, however, shall the use be exempted from the following sections: Section 1-105: *Sections Necessary for Immediate Preservation of Public Health and Safety,* Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way,* Section 13-109: *Signs,* Section 13-113: *Fencing,* Section 13-119: *Standards to Ensure Compatibility* and 9-300: *Commercial and Industrial Uses.* Such Exception shall also be required to obtain any applicable Building Permit and Individual Sewage Disposal System Permit.

**C. STANDARDS OF APPROVAL FOR AN EMERGENCY EXCEPTION.** An application for a Land Use Change Permit for an Emergency Exception shall comply with the following standards:

1. **IS A LEGAL USE CONDUCTED IN GUNNISON COUNTY.** The applicant currently conducts the land use within Gunnison County, including any of its incorporated municipalities, and is a legal nonconforming use or a land use that has been permitted and complies with the conditions of that Permit.

2. **EXCEPTIONAL HARDSHIP.** Exceptional hardship to the applicant will result if the Board does not grant emergency relief.

   a. **HARDSHIP IS NOT SELF-IMPOSED.** The special circumstances and conditions resulting in the emergency have not been caused by either the action or inaction of the applicant.

3. **NO REASONABLE ALTERNATIVE.** The applicant has documented and thoroughly pursued the alternative solutions, and no timely, feasible alternative to the Emergency Exception is available.

4. **RELIEF IS MINIMUM NECESSARY.** Approval of the Emergency Exception does not exceed the minimum action necessary to achieve the objective of allowing the temporary location of a land use and reasonable time and opportunity for an individual or business entity to obtain a permanent Land Use Change Permit if required.

5. **PUBLIC COST SHALL BE LIMITED.** Approval of the Emergency Exception shall not result in undue public costs.

6. **PUBLIC SAFETY SHALL NOT BE JEOPARDIZED.** Location of the land use in the site applied for within the Emergency Exception application shall not jeopardize the public health, safety or welfare.

7. **DOES NOT ADVERSELY AFFECT LAND USES IN THE AREA.** The granting of the Emergency Exception will not change the character or otherwise adversely affect other land uses in the area where the Emergency Exception is proposed,

8. **SIZE OF AFFECTED WORK FORCE.** The size of the affected workforce of a business shall be considered, but shall not be the deciding factor in determining the legitimacy of an emergency.

9. **ALL STRUCTURES TEMPORARY; RECLAMATION TO ORIGINAL CONDITION REQUIRED.** All structures approved by the Exception shall be temporary, and the site approved for the Exception shall be returned, to the maximum extent feasible, to the condition in which it was before the temporary land use approved by the Exception was initiated.

**D. PROCESS.** The following process shall apply to an application for an Emergency Exception.

1. **APPLICATION FORM.** The Community Development Department shall provide the applicant with an application form appropriate for the Emergency Exception. At a minimum, the application shall include:

   a. **APPLICANT.** The name, address, telephone and fax numbers, and email address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and also stating the same information for the agent.

   b. **PROPERTY OWNER.** Name, address, telephone and fax numbers and email address of the owner of the property and, if other than the applicant, a notarized letter from the owner consenting to the application must be submitted.

   c. **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, or metes and bounds), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property should be included.

BLM_0054032

**d.   PRESENT LAND USE.** Identify present land uses, and locations and sizes of structures that exist on the property.

**e.   LIST OF ADJACENT LANDOWNERS**. As applicable, a listing of all landowners and land uses that are adjacent to the boundaries of the entire parcel on which the Project is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the property except for the existence of the roadway. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel shall be included in the listing. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

**f.   PROJECT DESCRIPTION AND SITE PLAN.** A narrative description and site plan (illustrated in Appendix Figure 1: *Site Plan Example.*) of the proposed Project, including all uses, structures, roads, utilities, parking areas, amount and kinds of traffic to be generated.

**g.   DESCRIPTION OF EMERGENCY**. A statement of fact(s) that describes the situation that constitutes an emergency, an explanation of how the hardship was not self-imposed by an action or inaction of the applicant, and why the Emergency Exception is necessary.

**h.   DESCRIPTION OF ALTERNATIVE SOLUTIONS.** Documentation that the applicant has pursued alternative solutions other than an Emergency Exception and documentation of when the applicant became aware of the emergency.

**i.   APPLICATION FOR PERMANENT LAND USE CHANGE PERMIT.** The applicant shall submit an application for a permanent Land Use Change Permit simultaneously with the submittal of the application for the Emergency Exception, and shall reference the location proposed for the permanent location.

**j.   ESTIMATED COSTS.** Documentation from contractors, materials providers, engineers or other professionals, indicating the final estimates for costs for installation of roads, drainage facilities, water supply and wastewater treatment systems, landscaping and other improvements required by the County for approval, and for the reclamation of the site once the use is completed, including the removal of temporary structures, vehicles, and reclamation of the property pursuant to Section 13-115: *Reclamation and Noxious Weed Control.*

**k.   APPLICATION AND REVIEW FEES**. To compensate the County for the cost of reviewing and processing applications for Land Use Change Permits, each applicant shall pay the required fee as shown in a schedule of fees issued by the Community Development Department, adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

**2.   COMMUNITY DEVELOPMENT DEPARTMENT REVIEW.** The Community Development Director shall request to schedule a public hearing for the application on the Board's next available agenda and within seven days of receiving the application and certifying it as complete, shall prepare a Department report that describes the proposed Project, the requirements of this section, and, as applicable, recommends any specific conditions to ensure compliance with this *Resolution*, and shall forward the report to the Board.

**3.   HEARING NOTICE.** Public notice that the Board will conduct a public hearing to consider the Emergency Exception application shall be accomplished pursuant to Section 3-112: *Notice of Public Hearing*; minimum public notice, including publication, posting of property and mailing of notice to adjacent landowners shall be 15 days, and shall be required to be sent by overnight express mail by the applicant.

**a.   COST FOR PUBLIC HEARING NOTICE(S)**. The applicant shall be billed and shall be responsible for paying for the actual cost of publication of all applicable public hearing notices as required pursuant to Section 3-112: *Notice of Public Hearing.*

**4.   BOARD HEARING**. The Board hearing shall be conducted pursuant to Section 3-113: *Conduct of a Public Hearing*. The applicant shall present the application and explain the immediate need for emergency relief.

**5.   BOARD DECISION.** Within seven days after the close of the public hearing, the Board shall approve, approve with conditions or deny the application. The Board shall be required to base its decision on findings that specifically address each Section 8-104: C: *Standards of Approval for Emergency Exception*, and shall, as applicable, include the following:

**a.   SURETY.** The Board decision shall include a determination that surety pursuant to Section 16-117: B: *Financial Security* shall be provided by the applicant sufficient to reasonably reclaim the site to its original condition.

BLM_0054033

    **b.** **"PRE-ACTION" CONDITIONS.** Those conditions that shall be required to be completed before the Certificate of Approval is recorded, such as the completion of a Development Improvement Agreement and/or provision of surety.

    **c.** **ADDITIONAL CONDITIONS.** Those conditions that are ongoing after the Certificate of Approval is recorded and which are related to operation of the approved land use, and or the reclamation of the property once the term of the Emergency Exception Permit has ended.

**6.** **DURATION OF APPROVAL.** An Emergency Exception shall expire six months after the date the Board approves it.

    **a.** **EXTENSION OF EMERGENCY EXCEPTION.** The applicant may request extension of the Exception for good cause shown, including the time necessary to obtain a Land Use Change Permit for the permanent location of the land use. In no case, however, shall the Emergency Exception be permitted to continue more than two years beyond the date of the Board's approval.

        **1.** **MAJOR IMPACT PROJECT.** If the Land Use Change Permit is classified as a Major Impact Project, pursuant to Section 3-111: *Classification of Impact*, the Project shall be required to have submitted a complete application for Sketch Plan in order for the Exception to be extended.

**7.** **RECORDATION OF CERTIFICATE.** Within five days following the submittal by the applicant of documentation showing compliance with any Pre-Action Conditions included in the Board's approval of the Emergency Exception application, the Community Development Director shall record a *Certificate of Emergency Exception* in the Office of the Gunnison County Clerk and Recorder's Office. The Certificate shall describe the specific Project, the legal description of the subject property, the Findings of the Decision, any conditions of approval, and include the Community Development Director's signature line, and the date of approval.

**8.** **EXCEPTION REVOCABLE.** Failure of the applicant to comply with the Pre-Action Conditions and to submit and diligently pursue an application for a permanent Land Use Change Permit within 45 days of the Board's approval of the Emergency Exception, or failure of the applicant to comply with all additional conditions of the approval shall cause the Emergency Exception to be revoked.

BLM_0054034

# ARTICLE 9:
# SPECIAL USES

This Article governs land uses that have individualized standards in addition to the other standards of this *Resolution*, and identifies and establishes those standards. Unless otherwise exempted, all uses and structures referred to in this Article are also subject to all other generally applicable standards of this *Resolution*.

# DIVISION 9-100:
# SECONDARY USES AND ACTIVITIES

## SECTION 9-101: USES SECONDARY TO A PRIMARY RESIDENCE

A. **GENERAL.** Certain secondary uses are a use by right on any parcel where there is a legal, permitted primary residential use. They require no separate Land Use Change Permit. Any use that has received a Land Use Change Permit shall also be permitted to include those secondary uses, structures, and activities that are necessarily and customarily associated with, and incidental and subordinate to the primary residence.

B. **SUBJECT TO SAME STANDARDS AND REQUIREMENTS.** Unless otherwise exempted or required by this Section, secondary uses and activities shall comply with all standards and requirements that apply to the primary residence.

    1. **STRUCTURES AND USES ALLOWED AFTER A BUILDING PERMIT IS ISSUED FOR A PRIMARY RESIDENCE.** The following secondary structures or uses do not require a separate Land Use Change Permit, but may be initiated only after a Building Permit is issued for the primary residence to which these uses are accessory. These shall not apply to the construction of barns or other agricultural buildings used in conjunction with an agricultural operation.

        a. **GARDENS AND GREENHOUSES, INCLUDING HOME OCCUPATIONS.** Private gardens and private greenhouses, including those that are home occupations, constructed and operated pursuant to Section 9-102: *Home Occupations*.

        b. **POOLS AND RECREATION FACILITIES.** Private swimming pools and private recreation facilities associated with a primary residence, and not part of a private club or membership group.

        c. **INTEGRATED SECONDARY RESIDENCE 1,250 SQ. FT. OR SMALLER ON A LEGAL LOT.** An integrated secondary residence 1.250 sq. ft. or smaller in a primary residence on a legal lot.

        d. **ONE HOME OCCUPATION.** One home occupation, pursuant to Section 9-102: *Home Occupations*.

D. **SECONDARY STRUCTURES AND USES THAT REQUIRE A LAND USE CHANGE PERMIT.** The following structures and uses that are secondary to a primary residence shall be reviewed pursuant to Section 5-105: *Administrative Review Project Review Process*.

    1. **SECONDARY STRUCTURES AND USES CLASSIFIED AS ADMINISTRATIVE REVIEW PROJECTS.** The following are classified as Administrative Review Projects pursuant to Article 4: *Administrative Review Projects That Do Not Require Land Use Change Permits* and Article 5: *Administrative Review Projects That Require Land Use Change Permits*:

        a. **INTEGRATED SECONDARY RESIDENCE LARGER THAN 1,200 SQ. FT. ON A LEGAL LOT.** An integrated secondary residence smaller than 1,200 sq. ft. on a legal lot..

        b. **DETACHED SECONDARY RESIDENCE ON A LEGAL LOT.** A detached secondary residence on a legal lot.

        c. **SECONDARY STRUCTURE INTENDED ONLY FOR SLEEPING.** A secondary structure that is to be used only for sleeping facilities, shall not include a kitchen and shall meet the requirements of Section 9-101: E: *Standards for Development of a Secondary Detached Residence or Secondary Structure Intended for Sleeping.*

BLM_0054035

2. **SECONDARY STRUCTURES OR USES CLASSIFIED AS MINOR IMPACT PROJECTS**. A separate Land Use Change Permit is required before obtaining a Building Permit for any of the following structures, which shall be reviewed pursuant to Article 6: *Minor Impact Projects:*

   a. **MORE THAN ONE SECONDARY RESIDENCE ON ONE LEGAL LOT**. More than one secondary residence on one legal lot.

   b. **TOTAL AGGREGATE 12,500 SQ. FT. OR LARGER.** An aggregate square footage of 12,500 sq. ft. or larger of all structures that may include a combination of residential living area (one single-family residence, or any combination of a primary single-family residence, an integrated secondary residence, and/or a detached secondary residence allowed by this Section), attached and/or detached garages.

   c. **TOTAL AGGREGATE RESIDENTIAL LIVING AREA AND ATTACHED GARAGE 10,000 SQ. FT. OR LARGER**. An aggregate square footage including residential living area 10,000 sq. ft. or larger (one single-family residence, or any combination of a primary single-family residence, an integrated secondary residence, and/or a detached secondary residence allowed by this Section and any attached garage).

E. **STANDARDS FOR DEVELOPMENT OF A DETACHED SECONDARY RESIDENCE OR SECONDARY STRUCTURE INTENDED FOR SLEEPING.** A secondary detached residence or secondary structure intended for sleeping shall meet these standards:

   1. **SECONDARY SMALLER THAN PRIMARY RESIDENCE.** The secondary residence or structure intended for sleeping shall be smaller than the primary residence, and the total floor area of the two buildings shall not exceed any floor area limitations applicable to the parcel pursuant to Section 13-105: *Building Sizes and Lot Coverages*.

   2. **LOCATION.** The secondary residence or structure intended for sleeping shall be located in close proximity to the primary residence, so that it will not be more visually obtrusive and will not increase land use impacts, including the building of additional roads or upgrading existing roads, removing additional trees, or disturbing additional irrigated meadows or sensitive wildlife habitat.

   3. **DESIGNATION OF BUILDING ENVELOPE.** A building envelope designated on the site plan in which all structures, wastewater treatment system(s) and well are to be located.

   4. **ADEQUATE PARKING.** At least that number of parking spaces required for both the primary residence and the secondary residence or structure intended for sleeping shall be provided, pursuant to Section 13-110: *Off-Road Parking and Loading.*

   5. **SHARED WATER SUPPLY AND WASTEWATER TREATMENT SYSTEM**. To the maximum extent feasible, the second residence or structure intended for sleeping shall be legally and physically served by the same water and wastewater treatment systems that serve the primary residence.

   6. **COMPLIES WITH DEED RESTRICTIONS OR PROTECTIVE COVENANTS**. The second residence or structure intended for sleeping shall comply with deed restrictions and/or declarations of protective covenants applicable to the parcel.

F. **STANDARDS FOR INTEGRATED SECONDARY RESIDENCE.** An integrated secondary residence shall meet these standards:

   1. **SUBORDINATE TO PRIMARY RESIDENCE.** It is subordinate by area, extent and purpose to the primary residence.

   2. **LIMITED TO 1,200 SQ. FT.** The floor area of the integrated secondary residence shall be no larger than 1,200 sq. ft., and may be as small as allowed by the applicable building code, adopted and amended by Gunnison County.

   3. **ADEQUATE PARKING**. There shall be parking adequate to serve both the primary and secondary residences, pursuant to Section 13-110: *Off- Road Parking and Loading.*

   4. **ADEQUATE WATER SUPPLY AND WASTEWATER TREATMENT SYSTEM.** It shall be legally and physically served by the same water and wastewater treatment systems that serve the primary residence.

   5. **STRUCTURALLY INTEGRATED.** It shall be structurally integrated within the primary residence, share common roof lines and utility systems, and there shall be an internal access between the primary residence and the secondary residence.

   6. **COMPLIES WITH DEED RESTRICTIONS OR PROTECTIVE COVENANTS.** It shall comply with deed restrictions and/or declarations of protective covenants applicable to the parcel on which the primary residence is located.

BLM_0054036

7.  **KITCHEN AND SEWAGE DISPOSAL FACILITIES.** It shall contain a full kitchen, and sanitation facilities.

8.  **COMPLIES WITH APPLICABLE CODES.** It shall comply with the applicable building code, adopted and amended by Gunnison County, and the requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards.

## SECTION 9-102: HOME OCCUPATIONS

A.  **APPLICABILITY.** This Section shall apply to the operation of a home occupation on a parcel also occupied by a primary residence.

   1.  **ONE HOME OCCUPATION.** One home occupation may be operated as an accessory use to a primary residence, and requires no Land Use Change Permit, provided the use meets the standards of this Section.

   2.  **MORE THAN ONE HOME OCCUPATION.** More than one home occupation shall be classified and reviewed as an Administrative Review Project, pursuant to Article 5: *Administrative Review Projects That Require Land Use Change Permits.*

B.  **STANDARDS FOR OPERATING A HOME OCCUPATION**: The following standards shall apply to the operation of a home occupation:

   1.  **HOME OCCUPATION IS SUBORDINATE.** The home occupation shall be incidental and secondary to the use of the property for residential purposes, and shall not change the residential character of the property.

   2.  **SIZE OF AREA LIMITED.** To ensure it remains subordinate, the size of the area used for the home occupation shall be limited to one-half of the floor area of the primary residence or 1,500 sq. ft., whichever is smaller.

   3.  **ACTIVITIES TO BE CONDUCTED INDOORS.** All activities associated with the home occupation shall be conducted indoors. These activities may be conducted within the residence, or may be conducted within another structure on the property, including a detached garage or a shed. There shall be no outside storage of goods, materials, or equipment associated with the home occupation.

   4.  **EMPLOYEES.** The home occupation shall be conducted entirely by the residents living on the premises, and by no more than the equivalent of one full-time employee who lives off-premises.

   5.  **CUSTOMERS.** The home occupation shall serve no more than 12 customers or clients on-site during a single day.

   6.  **ADEQUATE PARKING.** In addition to the parking required for the primary residence, there shall be provided one off-road parking space for any employee who lives off the premises, and one off-road parking space for customers or clients. As applicable, the use shall also comply with Section 13-110: *Off-Road Parking and Loading,* and the minimum distances listed in Appendix Table 2: *Off-Road Parking Requirements.*

   7.  **TRUCKS OR VANS.** A truck or van having a payload rating of more than one and a-half tons may only be parked on-site if it is kept within a garage or other enclosed or semi-enclosed, permitted structure. Trucks or vans making deliveries to the home occupation shall be limited to a payload rating which shall not exceed the road and bridge weight capacities on applicable haulage routes.

   8.  **NUISANCE.** The home occupation shall not operate during such hours or in manner that will create a public or private nuisance or disturb neighbors. It shall not produce any offensive noise, vibrations, electrical or magnetic interference, glare, fumes, odors, smoke, dust, heat, or waste noticeable at or beyond the property line. All waste products generated by the home occupation shall be disposed of pursuant to all applicable federal, state and County regulations.

   9.  **SIGNS.** The only allowed exterior advertising shall be one sign identifying the home occupation, which shall not be larger than four sq. ft., and as applicable, shall otherwise comply with Section 13-109: *Signs.*

   10. **OTHER REGULATIONS.** The structure in which the home occupation is located shall comply with all other applicable regulations and codes for the type of home occupation proposed.

## SECTION 9-103: BED AND BREAKFAST

A.  **LAND USE CHANGE PERMIT REQUIRED.** The operation of a bed and breakfast in a primary residence requires a Land Use Change Permit, and in addition to complying with all other applicable requirements of this *Resolution* shall comply with the requirements of this Section.

BLM_0054037

**B. STANDARDS FOR OPENING AND OPERATING BED AND BREAKFAST.** The following standards shall apply to operations of a bed and breakfast:

1. **MAINTAINING RESIDENTIAL APPEARANCE.** A structure used as a bed and breakfast shall not be altered in a way that changes its residential appearance or character.

2. **MAXIMUM NUMBER OF UNITS.** The bed and breakfast shall not contain more than five separate sleeping rooms available to be rented to guests.

3. **OWNER SHALL LIVE ON PREMISES.** The owner or on-site manager shall live on the premises when the bed and breakfast is in operation.

4. **RECEPTIONS AND MEALS NOT ALLOWED.** There shall not be receptions, private parties, or similar activities for compensation, and no meals shall be served to the general public, unless expressly approved as part of the Land Use Change Permit.

5. **LONG-TERM RENTAL OF GUEST ROOMS.** Long term rental of guest rooms shall not be permitted. The maximum length of any stay shall be 30 consecutive days. No cooking facilities, other than a microwave oven, shall be allowed in guest rooms.

6. **ON-SITE PARKING.** Parking spaces shall be provided pursuant to Section 13-110: *Off-Road Parking and Loading,* and the minimum distances listed in Appendix Table 2: *Off-Road Parking Requirements.*

7. **COMPLY WITH OTHER REGULATIONS.** The bed and breakfast shall comply with all applicable regulations and codes, including those of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce County standards.

## SECTION 9-104: MARIJUANA CULTIVATION, MANUFACTURING OR TESTING FACILITY.

**A. GENERAL.** The purpose of this Section to protect the health, safety, and welfare of the residents of Gunnison County by regulating marijuana cultivation, manufacturing and/or testing facilities in unincorporated Gunnison County.

**B. NO INTENT TO PROMOTE.** Gunnison County does not intend to encourage or promote the establishment of any business or operation, or the commitment of any act, that constitutes or may constitute a violation of state or federal law. As of the date of the enactment of these regulations, the use, possession, distribution, and sale of marijuana is illegal under Federal law and those who engage in such activities do so at their own risk of criminal prosecution.

**C. PROHIBITED USE.** The following are prohibited in unincorporated Gunnison County.

1. **Retail Marijuana Store Prohibited**:   Retail marijuana stores that sell marijuana shall be prohibited in unincorporated Gunnison County.

2. **Medical Marijuana Centers Prohibited**:   Medical Marijuana Centers that sell marijuana shall be prohibited in unincorporated Gunnison County.

**D.   MARIJUANA MANUFACTURING AND TESTING FACILITIES ARE ALLOWED ONLY IN GOLD BASIN, RIVERLAND, OR SIGNAL PEAK INDUSTRIAL PARKS.** Medical and Retail Manufacturing and Testing Facilities are only allowed in the Gold Basin, Riverland, and/or Signal Peak Industrial Parks. Medical and Retail Manufacturing and Testing Facilities shall not be located anywhere in Gunnison County other than the Gold Basin, Riverland, or Signal Peak Industrial Areas.

**E. LAND USE CHANGE PERMIT AND LICENSE REQUIRED.** To lawfully engage in the business of cultivating, manufacturing, and/or testing marijuana in unincorporated Gunnison County, all persons must obtain a land use change permit, all applicable licenses, and in addition to being required to comply with all other applicable standards and requirements of this *Resolution*, shall comply with the standards identified in 9-104. H. *Additional Standards for Marijuana Cultivation, Manufacturing and/or Testing Facility.*

**F. GOLD BASIN INDUSTRIAL PARK.** A marijuana cultivation, manufacturing or testing facility is a permitted use in the Gold Basin Industrial Park and shall be reviewed pursuant to the *Gold Basin Industrial Park Special Area Regulations* and shall be in compliance with Section 9-104.H of the Land Use Resolution.

**G. REQUIRE A LAND USE CHANGE PERMIT.** The following uses require a land use change permit and shall be reviewed pursuant to Section 5-105: *Administrative Review Project Review Process and in all circumstances must comply with Section 9-104.H.*

BLM_0054038

1. **MARIJUANA CULTIVATION, MANUFACTURING OR TESTING FACILITY CLASSIFIED AS ADMINISTRATIVE REVIEW PROJECTS.** The following are classified as Administrative Review Projects pursuant to Article 5: *Administrative Review Projects That Require Land Use Change Permits:*

   a. **MARIJUANA CULTIVATION, MANUFACTURING OR TESTING FACILITY.** Marijuana, cultivation, manufacturing, or testing facility located within an existing, permitted structure, in the Signal Peak Industrial Park or Riverland Industrial Park.

   b. **EXPANSION OF MARIJUANA CULTIVATION, MANUFACTURING OR TESTING FACILITY.** Expansion of a permitted marijuana cultivation, manufacturing or testing facility, where the total square footage of the expansion is less than 5,000 square feet.

2. **MARIJUANA CULTIVATION, MANUFACTURING OR TESTING FACILITY CLASSIFIED AS MINOR IMPACT REVIEW PROJECTS.** A Marijuana Facility which is not subject to an administrative review under 9-104 G.1 shall be reviewed pursuant to Section 6-106: *Minor Impact Review Project Review Process. Marijuana Cultivation Facilities may be considered through a Minor Impact Review process in locations other than Signal Peak, Riverland, and Gold Basin Industrial Parks. All* Marijuana Cultivation, Manufacturing and Testing Facilities shall comply with Section 10-104. C2: Compatible With Existing Uses Established In Impact Area and 10-104.C3: No Significant Net Adverse Impact.

H. **ADDITIONAL STANDARDS FOR MARIJUANA CULTIVATION, MANUFACTURING AND/OR TESTING FACILITY.** The establishment or operation of a marijuana cultivation, manufacturing or testing facility is required to comply with the following:

   1. **LICENSE REQUIRED.** An applicant shall obtain a state and local license pursuant to and in compliance with the *Gunnison County Licensing Regulations for Marijuana Cultivation, Manufacturing and Testing.*

   2. **NO RESIDENTIAL USE WITHIN THE STRUCTURE.** Marijuana Facilities and residential facilities cannot be collocated in the same structure.

   3. **NO SIGNIFICANT DEGRADATION:** A Marijuana Facility shall not cause significant degradation to either the natural or man-made environment of the site or the adjacent properties.  The applicant shall demonstrate that there will not be a significant degradation or impact in the following areas:

      a. **ODOR.**  Noticeable odors shall not occur at the boundary to adjacent properties.  Facilities shall be equipped with proper ventilation systems so that odors are filtered and do not materially interfere with adjoining land uses.

      b. **ADEQUATE WATER SUPPLY.** The applicant shall demonstrate that the premise is legally and physically served by a water supply pursuant to Section 12-105: *Water Supply* and.

      c. **ADEQUATE WASTEWATER TREATMENT SYSTEM.**  The applicant shall demonstrate compliance to State and County regulations for waste water treatment including Section 12-106: *Sewage Disposal/Wastewater Treatment.*

      d. **ADEQUATE PARKING.** The applicant shall demonstrate that there will be adequate parking to serve the facility, pursuant to Section 13-110: *Off- Road Parking and Loading.*

      e. **ADEQUATE PUBLIC INFRASTRUCTURE**: The applicant shall demonstrate that there is adequate road and utility infrastructure to support the use and its proposed operation.

      f. **SECURITY:** The applicant shall demonstrate that there is adequate premises, product, personnel, and consumer security.

      g. **FIRE SAFETY**.  The applicant shall demonstrated that based on its proposed use and operation that there is not a significant fire or criminal safety risk created by the use.

      h. **WASTE DISPOSAL.**  The applicant shall demonstrate that waste can be securely and safely disposed

      i. **ENVIRONMENTAL IMPACTS:**  The applicant shall demonstrate that there are no significant environmental or human health impacts associated with the construction and operation of proposed facilities.

      j. **VISUAL RESOURCES:**  The applicant shall demonstrate that the proposed operation will not be identifiable as a marijuana facility and shall be designed so that it is architecturally compatible with the surrounding natural and built environment.  The applicant shall demonstrate that the ambient lighting of a proposed facility does not impact adjacent uses.

BLM_0054039

*SECTION 9-104: MARIJUANA CULTIVATION, MANUFACTURING OR TESTING FACILITY.*

4.   **OPERATION CONDUCTED WITHIN BUILDING.** All activities associated with the operation of the facility must conducted within the building and not be visible from the exterior of the business.

5.   **COMPLIANCE WITH STATE AND COUNTY REGULATIONS.** The facility must operate in compliance with County and State regulations related to marijuana facilities.

6.   **COMPLIES WITH DEED RESTRICTIONS OR PROTECTIVE COVENANTS.** The facility shall comply with deed restrictions and/or declarations of protective covenants applicable to the parcel on which the facility is located.

7.   **COMPLIES WITH APPLICABLE CODES**. The facility shall comply with the applicable building codes, adopted and amended by Gunnison County, State of Colorado Licensing requirements, and Colorado Department of Public Health & Environment codes, and the requirements of the applicable fire protection district.

BLM_0054040

# DIVISION 9-200:
# SPECIAL RESIDENTIAL USES

## SECTION 9-201: INDIVIDUAL MANUFACTURED AND MOBILE HOMES

A. **PURPOSES**. The purposes of this Section are:

1. **TO REGULATE MANUFACTURED HOMES.** To regulate the permanent installation of manufactured homes on foundations for occupancy as single-family dwellings. All such manufactured homes shall be designed and located to be compatible with neighboring conventionally-built residences. The specifications provided by this Section are designed to ensure the compatibility of manufactured homes with the aesthetic and architectural character of the surrounding neighborhood, in the same manner as that used by the County to approve other residential Building Permits.

2. **TO REGULATE INDIVIDUAL MOBILE HOMES.** To regulate the placement of individual mobile homes outside mobile home communities.

B. **SUBDIVISIONS CREATED FOR MANUFACTURED AND MOBILE HOMES**. Except as provided in this Section, a Land Use Change Permit application for subdivision of property to provide lots for manufactured and mobile homes shall be subject to all the requirements of this *Resolution* that regulate subdivision of property.

C. **NO SEPARATE LAND USE CHANGE PERMIT REQUIRED FOR COMPLIANT INDIVIDUAL MANUFACTURED AND MOBILE HOMES**. No separate Land Use Change Permit is required for a manufactured home or a mobile home placed on a legal lot subject to the following:

1. **COMPLIANCE WITH PROTECTIVE COVENANTS OR DEED RESTRICTION.** The applicable protective covenants or deed restrictions do not prohibit such use.

2. **ROOFING SHALL BE SIMILAR**. Roofing shall be similar in color, material and appearance to the roofing material commonly used on residences on adjacent parcels. The roof pitch shall be a minimum of a nominal 2/12; and

3. **EXTERIOR SIDING SHALL BE SIMILAR**. Exterior siding shall be similar in color, material and appearance to the exterior siding material commonly used on residences on adjacent parcels; and

4. **GARAGE OR CARPORT**. If a garage is constructed it shall be in materials and color similar to those of the attached residence where garages are predominant on adjacent parcels. A carport may be constructed if residences on adjacent parcels have carports, or there is a mixture of residences with and without garages or carport; and

5. **ALL CONVENTIONAL STANDARDS APPLY.** All building setbacks, parking, coverage, height, width and size requirements required of conventional homes by the applicable building code adopted and amended by Gunnison County, and by all applicable sections of this *Resolution*, shall apply to manufactured and mobile homes.

D. **INDIVIDUAL MANUFACTURED HOMES**. Manufactured homes shall comply with all applicable requirements of this *Resolution*, and with the following:

1. **CERTIFICATION**. A manufactured home shall be certified pursuant to all requirements of the *National Manufactured Housing Construction and Safety Standards Act of 1974* (42 U.S.C. 5401 *et seq*: as amended).

2. **SIZE AND DESIGN.** At a minimum, a manufactured home shall:

   a. **DIMENSIONS.** Be at least 24 feet in width by 36 feet in length; and

   b. **EXTERIOR MATERIALS AND ROOF PITCH.** Have an exterior of brick, wood or cosmetically equivalent siding and a pitched roof.

3. **SITE PREPARATION, DELIVERY, AND INSTALLATION**. Before delivery to the site, the home shall meet, on an equivalent performance engineering basis, all public safety requirements of the applicable building code adopted and amended by Gunnison County, including snow load, wind shear and energy conservation factors. The home shall be installed:

   a. **IN COMPLIANCE WITH BUILDING AND SEWAGE DISPOSAL SYSTEM PERMIT REQUIREMENTS**. Each manufactured home shall obtain the required building and Individual Sewage Disposal System permits, as applicable, required by Gunnison County.

BLM_0054041

    **b.** **IN COMPLIANCE WITH THE APPLICABLE BUILDING CODE ADOPTED AND AMENDED BY GUNNISON COUNTY.** In accordance with the requirements of the applicable building code adopted and amended by Gunnison County, if the home was manufactured pursuant to that code; or

    **c.** **IN COMPLIANCE WITH COLORADO DIVISION OF HOUSING REQUIREMENTS.** In accordance with the manufactured housing installation standards set forth in Colorado Division of Housing *Rule 20* as it may be amended, if the home was manufactured to the HUD code; and

    **d.** **PLACEMENT ON PERMANENT ENGINEERED FOUNDATION.** On a permanent engineered foundation certified by a qualified professional engineer licensed in the State of Colorado as structurally sound, permitted and approved by the Building Inspector, and constructed before delivery of the home to the site.

**4.** **ALL SYSTEMS COMPLETE.** Be complete, including sanitary, heating and electrical systems and be ready for occupancy when delivered to the site except for minor assembly.

**E.** **INDIVIDUAL MOBILE HOMES.** A mobile home may be permitted on a legal lot that is not in a mobile home community. It shall comply with all other applicable requirements of this *Resolution* and the following:

**1.** **PLACEMENT OFF PUBLIC RIGHTS-OF-WAY.** No mobile home shall be parked or permitted to remain on any public highway, road, alley or other such right-of-way for more than a 24-hour period. If so parked for less than a 24-hour period, it shall be parallel to the edge of the right-of-way, safely out of the flow of moving traffic.

**2.** **REQUIRED TO BE USED AS RESIDENCE.** No mobile home shall be parked on a parcel unless it is permitted to be used as a residence, pursuant to all applicable codes and regulations, and sections of this *Resolution.* All applicable permits, pursuant to Section 1-104: R: *Relationship of Land Use Change Permits to Other Permits,* shall be obtained before a mobile home is located on a parcel.

**3.** **MOBILE HOME OR TEMPORARY MOBILE HOME PERMIT.** The Community Development Department may issue either a Mobile Home Permit or a Temporary Mobile Home Permit:

    **a.** **MOBILE HOME PERMIT.** Mobile Home Permit to park, occupy and use a mobile home on a parcel not in a mobile home community.

    **b.** **TEMPORARY MOBILE HOME PERMIT.** Temporary Mobile Home Permit for the temporary parking, occupation and use of a mobile home not in a mobile home community, if all applicable requirements of this *Resolution* and of the *Gunnison County Individual Sewage Disposal System Regulations* have been met. The Temporary Mobile Home Permit shall be issued for a period not to exceed 180 days, and may be renewed not more than once for no more than an additional 60 days, without approval by the Board.

**4.** **APPLICATION FORM.** The Community Development Department shall provide the appropriate application form for either of the Permits that, at a minimum, shall include the following:

    **a.** **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and stating the same information for the agent.

    **b.** **PROPERTY OWNER.** Name of the owner of the property; if other than the applicant, a notarized letter from the owner consenting to the application, must also be submitted.

    **c.** **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, or metes and bounds), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property should be included.

    **d.** **PRESENT LAND USE.** Identify present land uses, locations, and sizes of existing and proposed structures that exist on the property.

**5.** **COMMUNITY DEVELOPMENT DEPARTMENT REVIEW.** The Community Development Department will review the application, determine its compliance with the requirements of this Section and all other applicable requirements of this *Resolution.* If it is in compliance, the applicable Mobile Home Permit or Temporary Mobile Home Permit shall be granted.

    **a.** **HIGHER LEVEL OF REVIEW MAY BE REQUIRED IF LOCATED NEXT TO SUBDIVISION.** If a mobile home is proposed to be located on an individual parcel of land not in a mobile home community, but adjacent to a platted subdivision whose protective covenants either do not address, or do not allow, the location of mobile homes within the subdivision, the application for a Mobile Home Permit shall require a higher level of review, pursuant to Section 3-111: *Classification of Impact.*

BLM_0054042

    **b.   SUBJECT TO SUBDIVISION PROTECTIVE COVENANTS**. No permit may be issued under this Section for placement of a mobile home on any lot within a platted subdivision unless there have been recorded in the office of the Clerk and Recorder of Gunnison County protective covenants relating to the subdivision that specifically permit the placement of mobile homes within the subdivision on other than a temporary basis. Any such protective covenants or amendments to protective covenants adopted after May 16, 1977, must have been approved by Gunnison County.

**F.   STANDARDS FOR INSTALLATION OF A MOBILE HOME**. Location of an individual mobile home shall comply with the following:

    **1.   PERIMETER ENCLOSURE**. The mobile home shall be enclosed continuously at the perimeter at ground level with material comparable in composition and appearance to the predominant materials used in foundations of residences on adjacent parcels.

    **2.   ADDITIONS SHALL MEET BUILDING CODE REQUIREMENTS.** Any additions, extensions, or enlargements will be allowed so long as they meet the requirements of the applicable building code, adopted and amended by Gunnison County, and proof of compliance to any applicable protective covenants has been submitted. If the mobile home is to be modified with a roof structure, the new supporting walls (stud walls) must be completely sided in. No open studs or posts will be allowed.

    **3.   MORE THAN ONE MOBILE HOME CONSTITUTES A COMMUNITY.** The placement of more than one mobile home on any parcel shall create a mobile home community, except as located according to Section 9-201: F.5: *Agricultural Operations*.

    **4.   NONCONFORMING MOBILE HOME.** Any parcel on which more than one mobile home was in existence before June 20, 1979 will not be considered a mobile home community and shall be allowed to remain as a nonconforming use. If a nonconforming mobile home is removed and replaced with a mobile home that complies with the current HUD code, the replacement shall not create a mobile home community. All applicable requirements of this *Resolution* shall apply.

    **5.   AGRICULTURAL OPERATIONS**. An agricultural operation may place no more than two mobile homes on the agricultural operation property, for use by family members or employees of the operation, subject to all other applicable requirements of this *Resolution*.

    **6.   SHALL NOT HAVE BEEN MANUFACTURED BEFORE 1972.** The mobile home shall not have been manufactured before May 1972.

    **7.   COLORADO DIVISION OF HOUSING OR HUD SEAL REQUIRED**. If the mobile home was manufactured between 1972 and 1976, it shall be required to bear the seal of the Colorado Division of Housing. Any mobile home manufactured during or after 1976 shall be required to bear the HUD seal. If the mobile home does not bear either of those seals, the following shall be required:

        **a.   CERTIFIED ELECTRICAL SYSTEM**. The electrical system must be inspected by the Colorado state electrical inspector and certified that it meets the state electrical code for mobile homes.

        **b.   APPROVED PLUMBING SYSTEM.** The plumbing shall comply, with the current edition of the *Colorado Technical Plumbing Code*, and the applicant shall submit a copy of the inspection report as approved by the Colorado State Plumbing Inspector.

    **8.   GENERAL STRUCTURAL AND SNOWLOAD REQUIREMENTS**. If the mobile home is required to meet the applicable snowload requirements applied to structures throughout the County and does not have the manufacturer's certification or an independent certification by a qualified professional engineer licensed in the State of Colorado demonstrating that it meets that requirement, the home shall be modified with a roof structure, designed and constructed pursuant to the requirements of the applicable building code adopted and amended by Gunnison County.

        **a.   NO OPEN STUDS OR POSTS.** If the mobile home is to be modified with a roof structure, the new supporting walls (stud walls) must be completely sided in. No open studs or posts will be allowed.

    **9.   PERMIT ISSUED TO OWNER**. Other than on agricultural operations or within a mobile home community the permit shall be issued only to the owner of the land on which the mobile home is to be placed.

## SECTION 9-202: MOBILE HOME COMMUNITIES

**A.   PURPOSES.** Mobile home communities offer an opportunity to live in a detached residence but often on a much smaller lot and at higher densities than more conventional single family neighborhoods. These communities are also

BLM_0054043

unique in that residents usually own their home, but rent the space it occupies so they have only partial control over the quality of their living environment. Mobile home communities provide a source of lower cost housing in the County. For these reasons, mobile home communities are viewed as an important and unique land use that requires particular standards for design and development. This Section is intended:

1. **TO ESTABLISH MINIMUM STANDARDS FOR MOBILE HOME COMMUNITIES.** To establish minimum standards to regulate the design, construction and maintenance of mobile home communities, govern utilities and other physical facilities and conditions, to make mobile home communities safe, sanitary and pleasant for human habitation, and to establish the responsibilities and duties of owners and operators of mobile home communities.

2. **TO PROMOTE HEALTH AND SAFETY**. To promote the health and safety of the mobile home community tenants.

3. **TO PROMOTE AMENITIES.** To provide for adequate open space, space for storage, landscaping and screening to serve the needs of the residents, and to create an aesthetic appearance when the community is viewed from off-site.

4. **TO PROMOTE A QUALITY LIVING ENVIRONMENT**. To create a high quality living environment in mobile home communities through encouraging varied layouts, layouts which reflect the natural terrain, and provision of landscaping and recreational facilities. Except as provided in this Section, mobile home communities shall also meet all other applicable development regulations and standards in this *Resolution*.

B. **LAND USE CHANGE PERMIT REQUIRED.** Except as otherwise allowed by Section 9-201: F.5.: *Agricultural Operation*s, when two or more mobile homes are to be located on a parcel, a Land Use Change Permit for a mobile home community shall be required.

C. **GENERAL COMMUNITY DESIGN AND MAINTENANCE.** Where sites are flat and with few distinguishing features, every effort shall be made to create curvilinear or clustered patterns of mobile home spaces rather than regimented rows. Interspersing open spaces is also encouraged.

1. **HUD-CERTIFIED HOMES ONLY.** Only HUD certified mobile homes may be installed in a mobile home community. The homes shall be supported according to the manufacturer's recommended method.

2. **DENSITY.** A mobile home community shall have a gross density of no more than ten mobile homes per acre, providing that the terrain, lot configuration, size of the community, and other factors permit such density and still permit compliance with all other applicable requirements of this *Resolution*.

3. **ADMINISTRATIVE OFFICE.** Within a mobile home community, one mobile home may be used as an administrative office related to the operations of the community.

4. **DRAINAGE FACILITIES.** Mobile home communities shall be designed, constructed and maintained pursuant to Section 13-116: *Grading and Erosion Control*, and Section 13-117: *Drainage, Construction and Post-Construction Storm Water Runoff*, and shall be drained, graded and surfaced when necessary to facilitate drainage and prevent earth movement, and shall be free from depressions in which water collects and stagnates.

5. **WEED CONTROL**. Mobile home communities shall be maintained in a clean, sanitary condition. Grasses, weeds and other such vegetation not considered as part of any ornamental landscape, shall not exceed 12 inches in height, or be allowed to accumulate in a dry or dead condition so as to constitute a fire hazard. Design, construction and maintenance of the community shall comply with Section 13-115: *Reclamation and Noxious Weed Control.*

6. **EXTERIOR LIGHTING.** Mobile home communities shall include exterior lighting plans designed pursuant to Section 13-114: *Exterior Lighting.*

7. **ROAD SYSTEM.** Safe and convenient access shall be provided at all times for pedestrian and vehicular traffic and emergency vehicles at all times. Interior roadways shall be named and clearly identified, and shall be designed, constructed and maintained pursuant to Section 12-103: *Road System* and Section 12-104: *Public Trails,* and pursuant to the *Gunnison County Standards and Specifications for Road and Bridge Construction.*

8. **UTILITIES.** Each mobile home space shall be connected to central water supply and wastewater systems, and shall be provided with adequate hookups to water, wastewater treatment, electric power, and telephone and fuel supplies. All utility lines, including service lines, shall be underground.

   a. **ELECTRICITY.** An electrical outlet supplying at least 100 amp service and 110/220 volts shall be provided for each mobile home space. The installation shall comply with the requirements of the applicable municipality or rural electric association.

BLM_0054044

**b.   WATER SUPPLY.** All mobile homes shall be served by a central water supply system, designed, constructed and operated pursuant to the *Colorado Department of Public Health and Environment's Colorado Primary Drinking Water Regulations*. The system shall comply with the requirements of Section 12-105: *Water Supply* and water shall be supplied to all mobile homes at a minimum pressure of 40 pounds per square inch.

**c.   WASTEWATER TREATMENT.** Wastewater treatment shall be designed, constructed and operated pursuant to the Colorado Department of Public Health and Environment requirements, and pursuant to the requirements of Section 12-106: *Sewage Disposal/Wastewater Treatment*.

**d.   UTILITY RISER:** Each mobile home space shall have provided a utility riser located and installed so as not to be damaged during placement of a mobile home, or by snow or ice.

**9.   FIRE PROTECTION.** Fire protection shall comply with the requirements of Section 12-107: *Fire Protection*, including the requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards.

**10.   DEVELOPER SHALL PROVIDE LANDSCAPING.** Landscaping for the mobile home community shall be designed, installed and maintained pursuant to Section 13-111: *Landscaping and Buffering.* The developer or operator shall be responsible for installation and maintenance of landscaping the community in accordance with the County-approved landscaping plan.

**a.   ADDITIONAL SCREENING.** Additional landscaping may be required to provide screening and buffering and to soften the visual appearance of a mobile home community. Such requirements shall be established at the time of the Land Use Change Permit review, and shall be made a condition of approval.

**11.   AVAILABILITY OF OWNER OR MANAGER.** The owner of the community shall be responsible for the supervision, operation and maintenance of the community. The owner or his authorized representative shall be available or on call at all times in event of an emergency.

**12.   RECREATION AREA.** In complying with the requirements of Section 13-108: *Open Space and Recreation Areas* each mobile home community shall provide a central area that may or may not contain recreational equipment, but shall be available and maintained by the community owner/manager for the recreational use of community residents.

**a.   EIGHT PERCENT OPEN AREA REQUIRED.** A minimum of eight percent of the gross mobile home community area shall be designated for this central area.

**13.   OUTDOOR STORAGE AREA.** An outdoor storage area equal to 50 sq. ft. per mobile home space, surfaced with gravel, asphalt, concrete or similar material for boats, boat trailers, recreational vehicles, and horse trailers shall be provided. (The size of the required storage area may be increased or decreased upon recommendation by the Planning Commission and approval by the Board, based on the actual number of spaces, and whether or not such storage uses are allowed by the community rules for operation.)

**a.   DESIGN OF STORAGE AREA.** The storage area shall be graveled or paved, and shall be enclosed by an opaque wall or fence six feet in height. Where the wall or fence includes a gate, the gate shall be constructed of solid materials so as to be opaque.

**14.   TRASH DISPOSAL.** The storage, collection and disposal of refuse shall be so conducted as to control odors, rodents, insects, accidents, fire hazards, air pollution or other nuisance conditions.

**REQUIRED TRASH CONTAINERS.** Refuse containers shall be provided at central screened areas no more than 200 feet from any mobile home space. At least two 30-gallon (8 cu. ft.) containers shall be provided for each mobile home space, or an equivalent storage capacity.

**15.   RULES FOR COMMUNITY OPERATION.** Rules and regulations for operation of the community shall be submitted as part of the Preliminary Plan for a proposed mobile home community that is classified as a Major Impact Project, and as part of the submittal for final action for a mobile home community that is classified as a Minor Impact. A condition of approval of a Land Use Change for any mobile home community shall be that a copy of these rules shall be made available to each new resident and posted in a central area. Required rules shall address:

a.   **DOMESTIC ANIMALS**. Language allowing a maximum number of domestic animals allowed per mobile home, and the requirement that they shall be confined on the mobile home lot by fencing, leashing or whatever other means is reasonable to ensure that pets stay on-site.

**b.   STORAGE.** Requirement that outside storage is limited to individual storage units and/or the common storage area.

BLM_0054045

    **c.** **PARKING**. Requirement that parking be limited to the areas allowed by approval of the Land Use Change Permit.

    **d.** **SIZES OF HOMES**. Size limitations for mobile homes.

    **e.** **ABILITY TO RENT OR SELL HOMES**. Limitations, if applicable, of mobile home owners to rent or sell mobile homes while they are on rented spaces within the community.

    **f.** **UTILITIES PAYMENTS**. Description of assignment of responsibility for paying utilities.

    **g.** **SPEED LIMITS**. Speed limit within the community.

    **h.** **CENTRAL FACILITIES**. Use of central facilities, if any, by residents.

    **i.** **SKIRTING**. Type of skirting required and the requirement that skirting be installed within 60 days of location of a mobile home on a lot.

    **j.** **FENCING AND ACCESSORY STRUCTURES**. Construction of fencing and other accessory structures on mobile home lots.

    **k.** **CONSTRUCTION OF ADDITIONS**. Requirement that all permanent or temporary additions (such as porches, carports), must be approved by park management and shall conform to Gunnison County regulations.

    **l.** **MAINTENANCE RESPONSIBILITIES**. Requirement that tenants have the responsibility to maintain their mobile home space, and its landscaping.

    **m.** **VISIBLE ADDRESSES**. Requirement that mobile home numbers must be easily visible from the street or road on which the home is located.

**D. INDIVIDUAL SPACE REQUIREMENTS**.

  **1.** **MOBILE HOME PERMIT AND ELECTRICAL PERMITS REQUIRED**. Two permits are required to locate a mobile home within a mobile home community: a County Mobile Home Permit, and an electrical permit from the applicable municipality or rural electric provider. The Mobile Home Permit should be obtained by the person setting the home, or the homeowner.

  **2.** **INDIVIDUAL SPACES REQUIRED**. A mobile home shall not be occupied as a residence in a mobile home community unless it is properly placed on a conforming mobile home space and connected to all utility services, including water, sewage, electrical and gas lines. Additionally, the following standards shall apply:

    **a.** **SEQUENTIAL NUMBERING OF SPACES REQUIRED**. Mobile home spaces shall be numbered clearly and sequentially.

    **b.** **VISIBLE ADDRESSES**. Each mobile home lot shall be clearly identified by a permanent marker in front of the mobile home, separate from the mobile home, readily discernible from the nearest road, displaying properly sequenced numbers or letters that give each lot a unique address within the community. The numbers used to identify each lot shall be at least four inches high and two inches wide.

  **3.** **MINIMUM SPACE BETWEEN HOMES**. All mobile homes shall be parked in spaces so that there will be a minimum of 25 feet between mobile homes. Measurement shall be from the side wall of one mobile home to another, and not from the edges of accessory additions, provided that the minimum spacing between structures meets the requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards.

    **a.** **ZERO LOT LINE DEVELOPMENT**. Mobile home communities may be designed to balance a maximized use of the land while affording a modicum of privacy for residents, pursuant to Section 13-104: C: *Zero Lot Line Developments*, except that instead of providing a five-foot easement on each inside lot line for maintenance, language shall be included in the community rules that, as necessary, access for maintenance of an adjacent mobile home may occur from a tenant's lot.

    **b.** **END TO END MEASUREMENT**. Mobile homes parked end-to-end shall have an end-to-end clearance of not less than 15 feet. Enclosed additions to the mobile home structure shall be considered a part of the mobile home in measuring required yard distance and setbacks.

  **4.** **MINIMUM SQUARE FOOTAGE OF LOT**. The minimum area of a mobile home space shall be 5,000 sq. ft., with a minimum depth of 100 feet. If the 15-foot setback and minimum separation of 25 feet can be met in a space of less than 5,000 sq. ft., the space size may be reduced to a minimum of 3,200 sq. ft..

BLM_0054046

5. **FOUNDATION AND ANCHORS**: Each mobile home space shall be improved to include an adequate foundation for the placement and anchoring of a mobile home, thereby securing the mobile home against uplift, sliding, rotation and overturning. Each space shall be provided with ground anchors and tie downs placed at least at each corner of the mobile home foundation, and able to sustain a minimum tensile strength of 2,800 pounds.

6. **AREA BELOW MOBILE HOME**. The space below each mobile home shall be kept clean and free from refuse. The space may be used for storage provided the ground is covered with an impervious material and the area is maintained to prevent harboring of rodents. No flammable materials shall be stored beneath a mobile home.

7. **OUTDOOR STORAGE OF FLAMMABLE MATERIALS**. No firewood, propane tanks or other such materials shall encroach into the distance required to be maintained between mobile homes to protect against fire hazards. Liquid propane tanks shall be stored in accordance with the requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards.

8. **ACCESSORY INDIVIDUAL STORAGE SHEDS.** An accessory storage shed may be constructed or erected in the rear yard, and may be required as a condition of a Land Use Change Permit for a mobile home community. It shall be no larger than 120 sq. ft., no closer than five feet from any adjoining property line, and are located pursuant to the requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards. Individual storage buildings shall be designed to enhance the appearance of the mobile home and shall be constructed from durable materials.

9. **MAINTENANCE OF INDIVIDUAL SPACES.** Mobile home community residents shall be responsible for keeping their individual spaces free from debris and refuse, and shall keep landscaping trimmed, mowed and in a thriving condition.

10. **ALL MOBILE HOMES SHALL BE SKIRTED WITH A RIGID MATERIAL.** Such skirting must be in place within 60 days after the mobile home is set on the mobile home space. Skirting shall be provided with doors to permit convenient access to sewer, water and gas connections. Skirting material shall be weatherproof, fire-resistant and durable.

E. **TAXING INFORMATION.** The Gunnison County Assessor's Office annually will contact the community owner to request the following information; it is the responsibility of the community owner or operator to maintain this information and provide it to the Assessor's Office:

1. **NAME OF HOME OWNER.** The name and address of the owner of each mobile home within the mobile home community.

2. **DATA ABOUT EACH HOME.** The make, model, size and year of each mobile home.

BLM_0054047

BLM_0054048

# DIVISION 9-300:
# COMMERCIAL AND INDUSTRIAL USES

## SECTION 9-301: APPLICABILITY AND GENERAL STANDARDS

**A.  APPLICABILITY.** Commercial and industrial developments, including buildings, shall be designed according to the same principles governing the design of residential developments, and shall be sited to complement the topography, avoiding environmentally sensitive areas to the maximum extent feasible. Factors including drainage, noise, and odor and surrounding land uses shall be considered in siting buildings; sufficient access shall be provided, and impacts mitigated. Unless specifically exempted by this *Resolution*, commercial and industrial uses are subject to all applicable requirements of this *Resolution*.

**B.  LAND USE CHANGE PERMIT REQUIRED.** Unless otherwise exempted by this *Resolution*, commercial and industrial uses shall be required to obtain a Land Use Change Permit.

**C.  LOCATION.** Location of commercial and industrial uses shall be directed pursuant to Section 10-104: *Locational Standards for Commercial, Industrial and Other Non-Residential Development.*

**D.  GENERAL STANDARDS**. The following standards apply to commercial and industrial uses with the exception of mining and associated activities, that are regulated by Division 9-400: *Exploration, Extraction and Processing of Minerals and Construction Materials* and to home occupations, that are regulated by Section 9-102: *Home Occupations.*

    **1.  NON-RESIDENTIAL ACCESSORY USES.** Uses that shall be considered accessory to a non-residential use include an office to run the business, a cafeteria, and similar support areas.

    **2.  FOOD SERVICE REQUIREMENTS.** Food service activities, requiring a license or certificate of inspection pursuant to C.R.S. 12-44-201 through 12-44-213 and the production, storage and dispensing of ice shall be conducted pursuant with the physical and operational requirements of the edition of the *Rules and Regulations Governing the Sanitation of Food Service Establishments* in the State of Colorado in effect at the time the Land Use Change Permit application is submitted.

    **3.  ELECTRICAL DISTURBANCES.** No use or activity shall be permitted which creates electrical disturbances (electromagnetic radiation) that have a detrimental effect, including radio and television interference, on the operation of any equipment beyond the boundaries of the site. Electrical disturbances affecting operation of equipment beyond the boundaries of a site will require investigation and satisfactory resolution of the disturbance.

    **4.  FIRE AND EXPLOSIVE HAZARDS.** Materials or products which decompose by detonation shall be handled, sorted and utilized in accord with the *National Fire Protection Association* (NFPA) *Standards* and pursuant to standards and requirements of the applicable fire protection district. Design shall comply with the standards of Section 12-107: *Fire Protection.*

    **5.  GLARE AND HEAT.** Any commercial or industrial operation producing intense glare or heat shall be conducted within an enclosed building or with other effective screening in such a manner as to make glare or heat imperceptible from any point along the property line.

    **6.  EXTERIOR LIGHTING.** Whenever exterior lighting is installed in a commercial or industrial development, it shall be designed and installed so that all direct rays are confined to the site and adjacent properties are protected from glare, and shall comply with the applicable standards of Section 13-114: *Exterior Lighting.*

    **7.  ODORS**. No industrial or commercial use shall cause or allow the emission of odors from any single source so as to result in detectable and unreasonable odors.

    **8.  RADIOACTIVITY**. Releases and use of radioactive materials shall be as follows:

        **a.  RELEASES.** Release of radioactivity shall be subject to state and federal regulations, and any other agency having jurisdiction over such releases. Where conflicts between regulations exist, the most restrictive requirements shall apply.

        **b.  USE OF RADIOACTIVE MATERIALS**. Medical, dental and veterinary sources of radiation residues, including x-ray machines, gamma and neutron sources, and pharmaceutical isotopes which are used for diagnostic and therapeutic purposes, shall be permitted when located within a hospital, clinic, medical, dental or veterinary office, or medical research facility, whether mobile or fixed.

BLM_0054049

*SECTION 9-301: APPLICABILITY AND GENERAL STANDARDS*

9. **VIBRATION.** No industrial or commercial use shall result in vibration perceptible to a person without instruments at any point along the property boundaries.

10. **NOISE.** Every use to which this Section applies shall be conducted so that any noise produced is not objectionable because of intermittence, beat frequency, or shrillness regardless of db(A) measurement. Sound levels of noise radiating 25 or more feet beyond the subject property boundary in excess of the db(A) established for the following time periods and uses may be considered a public nuisance as listed in Table 2: *Maximum Permissible Noise Levels for Commercial and Industrial Uses.*

TABLE 2: MAXIMUM PERMISSIBLE NOISE LEVELS FOR COMMERCIAL AND INDUSTRIAL USES

| IMPACTED PROPERTY | 6 A.M. TO 7 P.M. | 7 P.M. TO 6 A.M. |
|---|---|---|
| NATIONAL PARKS OR RECREATION AREAS, PUBLIC PARKS, CAMPGROUNDS ON FEDERAL LANDS, AND FEDERALLY, STATE OR LOCALLY-DEDICATED OPEN SPACE OR CONSERVATION AREAS | 50 db(A)* | 45 db(A)* |
| RESIDENTIAL | 50 db(A* | 40 db(A)* |
| COMMERCIAL | 60 db(A)* | 55 db(A)* |
| INDUSTRIAL | 80 db(A)* | 75 db(A)* |
| WILDERNESS AREAS | 40 db(A)* | 40 db(A)* |

*db (A): Decibels measured on the "A" scale of a standard sound level meter having characteristics defined by the American National Standards Institute

E. **DESIGN STANDARDS FOR LIGHT INDUSTRIAL USES.** In addition to complying with Section 9-301: D.: *General Standards*, light industrial uses shall comply with all the following:

1. **MAXIMUM AGGREGATE BUILDING SIZE.** Maximum aggregate building size shall be no greater than 5,000 square feet, except that when an employee or owner residence is included, the maximum may increase to 5,850 square feet. Such employee or owner residence shall meet all these standards:

   a. **SUBORDINATE TO THE LIGHT INDUSTRIAL USE BUILDING.** It is subordinate by area, extent and purpose to the light industrial use building.

   b. **LIMITED TO 850 SQ. FT.** The floor area of the integrated residence shall be no larger than 850 sq. ft., and may be as small as 400 sq. ft., or as otherwise allowed by the applicable building code, adopted and amended by Gunnison County.

   c. **ADEQUATE PARKING.** There shall be parking adequate to serve both the light industrial use and the residence, pursuant to Section 13-110: *Off- Road Parking and Loading.*

   d. **ADEQUATE WATER SUPPLY AND WASTEWATER TREATMENT SYSTEM.** It shall be legally and physically served by the same water and wastewater treatment systems that serve the light industrial use.

   e. **STRUCTURALLY INTEGRATED.** It shall be structurally integrated within the building in which the light industrial use is located, share common roof lines and utility systems, and there shall be an internal access between the light industrial use and the residence.

   f. **COMPLIES WITH DEED RESTRICTIONS OR PROTECTIVE COVENANTS.** It shall comply with deed restrictions and/or declarations of protective covenants applicable to the parcel on which the light industrial use is located.

   g. **KITCHEN AND SEWAGE DISPOSAL FACILITIES.** It shall contain a full kitchen, and sanitation facilities.

   h. **COMPLIES WITH APPLICABLE CODES.** It shall comply with the applicable building code, adopted and amended by Gunnison County, and the requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards.

2. **OPERATION CONTAINED WITHIN BUILDINGS.** The operation shall be wholly contained within buildings.

3. **OPERATION IMPACTS TO BE CONTAINED WITHIN PROPERTY BOUNDARIES.** The light industrial use shall not produce any offensive noise, vibration, electrical or magnetic interference, glare, fumes, odors, smoke, dust, heat or waste noticeable at, or beyond, the property boundaries of the parcel on which the light industrial use is located.

4. **TRAFFIC.** An individual light industrial use shall be allowed to generate no more than an average of ten additional trips per day, including those of employees, deliveries to and from the business, and customers. However, factors such as the character of the neighborhood, traffic generated by uses existing in the impact area at the time the

BLM_0054050

Land Use Change Permit application is submitted, and the road classification may be taken into consideration in setting a maximum allowed average trips per day.

5. **HOURS OF OPERATION.** Hours of operation may be restricted, depending upon the character of the neighborhood, including hours of operation of other business or light industrial uses existing in the impact area at the time the Land Use Change Permit application is submitted.

6. **LIMITATION ON RETAIL SALES.** Retail sales shall be incidental and subordinate to a permitted use.

7. **MITIGATION OF VISUAL IMPACTS.** Landscaping, architectural design features, or other screening may be required to minimize visual impacts from the access road and to adjacent land uses.

8. **PARKING SHALL BE INDOORS, OR SCREENED FOR LIGHT INDUSTRIAL USE VEHICLES.** Vehicles used as part of the light industrial use shall be parked inside buildings or within screened parking areas.

9. **EMPLOYEE AND CUSTOMER PARKING.** Parking for employees and customers shall meet the requirements of Section 13-110: *Off- Road Parking and Loading.*

10. **OUTSIDE STORAGE.** Outside storage is permitted, but shall be fully-screened from the access road and from neighborhood land uses.

## SECTION 9-302: FARM OR RANCH STAND

A. **NO LAND USE CHANGE PERMIT REQUIRED.** One farm or ranch stand at which primarily raw agricultural products are sold may be erected as an accessory structure on the same property on which the product was grown or produced, or it is the only such stand on property on which the product was not grown or produced, and it is erected as a temporary use, pursuant to the requirements of Section 9-502: Temporary Structures.

B. **ADEQUATE PARKING.** An off-road parking area that is sufficient in size to accommodate the anticipated number of customers shall be provided.

C. **TRAFFIC SAFETY.** The sales area shall be adequately set back from the adjacent road and shall be so situated so that it does not block any required access to or exit from the site, does not disrupt vehicular or pedestrian circulation in the surrounding area, and does not cause a traffic hazard or safety problem.

D. **SIGNS.** Any identification signs used for the operation shall comply with Section 13-109: *Signs.*

## SECTION 9-303: DUDE RANCHES AND RESORTS

In addition to complying with all other applicable standards and requirements of this *Resolution*, dude ranches and resorts shall meet the following:

A. **ACCESS TO PUBLIC LAND.** Where activities require use of public lands, the dude ranch or resort shall have the applicable Special Use Permit or its equivalent from the appropriate public lands agency, and shall abut these lands or have access to them by either:

1. **EASEMENT OR AGREEMENT.** A written access agreement or easement across any intervening private land; or

2. **PUBLIC ROAD.** A public road.

B. **COOKING AND DINING FACILITIES.** Full service cooking or dining facilities may be provided but shall not be required. Individual cabins may be served by kitchens in the cabins, or by a central dining hall.

C. **LIMITATIONS ON OCCUPANCY.** Lodging rooms or individual cabins shall not be used for long term rentals. Full-time residents shall be limited to the dude ranch or resort owner or manager and their family, employees, and family guests.

D. **COMPLIANCE WITH BUILDING CODE AND APPLICABLE FIRE PROTECTION DISTRICT REQUIREMENTS.** When an applicant requests a Land Use Change Permit for a dude ranch or resort, and the buildings proposed to be used were in existence as of the effective date of this *Resolution*, the building shall be inspected and shall comply with applicable requirements of the applicable building code, adopted and amended by Gunnison County, and the applicable fire protection district requirements as a condition of issuance of the Land Use Change Permit. All such uses, whether preexisting this *Resolution*, or approved as new Land Use Change Permits, shall comply with the standards of Section 12-107: *Fire Protection.*

BLM_0054051

E.   **COMPATIBILITY WITH NEIGHBORHOOD USES.** Approval of a conditional Land Use Change Permit for a dude ranch or resort may include conditions as to the location, layout and operation of facilities necessary to ensure compatibility with and to mitigate adverse impacts on neighborhood properties.

## SECTION 9-304: ADULT-ORIENTED USES

A.   **LAND USE CHANGE PERMIT REQUIRED.** The establishment or operation of an adult-oriented use requires a Land Use Change Permit and in addition to being required to comply with all other applicable standards and requirements of this *Resolution*, shall comply with the following:

1.   **LOCATION SHALL COMPLY AS COMMERCIAL USE..** The location of any building proposed for an adult-oriented use shall comply with the standards of Section 10-104: *Locational Standards for Commercial, Industrial and other Non-Residential Development.*

2.   **SUBSEQUENT ESTABLISHMENT OF OTHER USES.** An adult-oriented use legally operating pursuant to this Section and all other applicable standards of this *Resolution* shall not become illegal by the subsequent establishment of a residence, public park or playground, recreational facility, child care center, place of worship or assembly, or school within 1,000 feet of that adult-oriented use.

3.   **SETBACKS FROM OTHER USES.** Adult-oriented uses shall not be established or operated within 1,000 feet of any of the following: a residence; a public park or playground; an outdoor or indoor recreational facility; a child care center; a place of worship or assembly; a public or private school; or another adult-oriented use.

   a.   **SETBACK MEASUREMENT.** Measurements of setback distance shall be made from the nearest property line of the property from which spacing is required to the nearest portion of the building in which the adult use is to occur, using a straight line, without regard to intervening structures or objects.

4.   **DISPLAYS.** Advertisements, displays, live displays or other promotional materials or showing or depicting sexual activities, or specified anatomical areas shall not be shown or exhibited so as to be visible or audible outside of the establishment. All building entries, windows, and doorways for adult-oriented uses shall be located, covered, or screened in such a manner as to prevent the interior of such the premises from being viewed from outside of the establishment.

## SECTION 9-305: SEASONAL RECREATIONAL VEHICLE PARKS AND CAMPGROUNDS

A.   **PURPOSE.** The purpose of this Section is to provide regulations and minimum requirements for the protection of health and safety of occupants of commercial campgrounds and of the general public.

B.   **LAND USE CHANGE PERMIT REQUIRED.** Construction, alteration, or expansion of a recreational vehicle park or campground requires a Land Use Change Permit, which shall be classified pursuant to Section 3-111: *Classification of Impact*. In addition to complying with all other applicable requirements of this *Resolution*, any such park or campground shall comply with the requirements of this Section.

C.   **GENERAL STANDARDS.** In addition to the other applicable standards and requirements of this *Resolution*, recreational vehicle parks shall comply with the following:

1.   **COMPLIANCE WITH COLORADO DEPARTMENT OF HEALTH STANDARDS.** Seasonal recreational vehicle parks shall comply with the requirements of the Colorado Department of Public Health and Environment's *Standards and Regulations for Campgrounds and Recreation Areas*, a copy of which is available in the Community Development Department.

2.   **VEHICLES, TENTS, TENT TRAILERS, OTHER CAMPING SHELTERS ALLOWED.** All types of recreational vehicles as defined in this *Resolution*, and other camping shelters, may be located in a seasonal recreational vehicle park permitted by Gunnison County so long as each individual camping shelter is accommodated on its own site.

3.   **SEASONAL OPERATION ONLY.** Recreational vehicle parks shall be designed and constructed for seasonal operation only, and shall not accommodate year around residency, except for permanent constructed primary residences or other similar residences intended to house the property owner or park caretaker.

4.   **PROPERTY LINE SETBACKS.** Sites in a recreational vehicle park shall meet the following minimum setbacks from property lines (Table 3: *Recreational Vehicle Park Property Line Setbacks*):

   TABLE 3: RECREATIONAL VEHICLE PARK PROPERTY LINE SETBACKS

BLM_0054052

| DESCRIPTION | SETBACK |
|---|---|
| FROM THE PERIMETER OF THE RECREATIONAL VEHICLE PARK | 75 feet |
| FROM EXISTING PRIMARY RESIDENCES, UNLESS THEY ARE SECONDARY USES WITHIN THE PARK | 250 feet |
| FROM THE EDGE OF A PUBLIC ROAD RIGHT-OF-WAY | 100 feet |

5. **REFUSE DISPOSAL.** Animal-proofed refuse containers shall be supplied and maintained pursuant to recommendations by the Colorado Division of Wildlife.

6. **DISPOSAL OF WASTE.** Septage and other sewage or wastewater shall be disposed of only pursuant to a permit obtained in full compliance with the *Gunnison County On-Site Wastewater Treatment System Regulations*, and any other applicable County, state or federal standard or regulation. Compliance with those *Regulations* may require that a long-term individual sewage disposal system be installed and maintained on the parcel.

D. **PROHIBITED ACTIONS.** The following shall be prohibited:

1. **LEAVING REFUSE.** Storage of refuse, debris or litter in an exposed or unsanitary condition.

2. **DUMPING OF POLLUTANTS NEAR WATER BODY**. Placing any substance that pollutes, or may pollute the water body within 150 feet of a stream, lake or other water body

BLM_0054053

BLM_0054054

# DIVISION 9-400:
# EXPLORATION, EXTRACTION AND PROCESSING OF MINERALS AND CONSTRUCTION MATERIALS

## SECTION 9-401: PURPOSE

The purpose of this Division is to establish reasonable and uniform limitations, safeguards and controls for exploration, extraction and processing of minerals and construction materials (referred to collectively as "mining operations") in the County that allow wise utilization of natural resources, eliminate or mitigate to the maximum extent feasible both on and off-site environmental and visual impacts, manages the extraction of mineral resources in a responsible manner while conserving other natural resources, ensure compatibility with surrounding land uses, protect the safety of the community, promote beneficial post-mining land uses, and protect the tax base of the County.

## SECTION 9-402: APPLICABILITY

A.  **ALL OPERATIONS REQUIRED TO COMPLY WITH STANDARDS OF THIS *RESOLUTION*.** Unless otherwise regulated by the County, the standards in this Division shall be used by the applicant and the County in designing, reviewing, evaluating, permitting, constructing, and conducting mining operations in the County, including Special Development Projects as defined in the *Gunnison County Special Development Projects Regulations*. Unless expressly exempted by Section 1-106: *Partially Exempted Land Use Changes*, all mining operations, including the extension or expansion of a permitted mining operation onto land outside the area permitted by the County, shall also comply with all other standards and requirements of this *Resolution*.

B.  **LAND USE CHANGE PERMITS REQUIRED.** All applicants for exploration, mining operations or processing of construction materials shall obtain a permit for a Minor or Major Impact Project as provided in Article 6: *Minor Impact Projects* and Article 7: *Major Impact Projects* unless specifically exempted, or unless such activities are regulated pursuant to the *Gunnison County Special Development Projects Regulations*.

C.  **ACTIVITIES EXEMPTED FROM SUBMITTAL AND REVIEW REQUIREMENTS.** The following mining operations shall be exempt from the submittal and review requirements of this Division and this *Resolution*:

   1.  **LIMITED CONSTRUCTION MATERIAL EXTRACTION.** Extraction of construction materials without any additional processing by a property owner of 300 cubic yards per year or less without any compensation for use on the owner's property or agricultural operation.

   2.  **MAPPING ACTIVITIES.** Mapping activities that do not require use of explosives, motor vehicles, or other surface disturbance.

   3.  **LIMITED MINERAL EXPLORATION.** Mineral exploration limited to non-motorized hand tools including picks and hammers with no new or improved access for motorized vehicles and less than five cubic yards of excavation or fill per site.

   4.  **LIMITED CONSTRUCTION MATERIALS EXPLORATION.** Construction materials exploration shall be limited to 25 cubic yards per exploratory hole, with a maximum of three holes open at the same time.

D.  **EXTENSION OR EXPANSION OF CURRENT UNDERGROUND MINERAL EXPLORATION REQUIRED TO FILE NOTICE OF ACTIVITY.** The following is presumed not to require a Land Use Change Permit; however, a Notice of Activity shall be required to be submitted to the Community Development Department before the activity is initiated: Extension or expansion of underground mineral exploration existing as of the effective date of this *Resolution* that results in no surface transportation of materials, no surface disturbance, either visual or aural, or adverse subsurface or surface hydrological impacts. This includes underground drilling, excavation, or maintenance undertaken as part of an existing underground operation.

   1.  **ANNUAL FILING REQUIRED.** A Notice of Activity is required to be filed annually, for either a single, or multiple operations conducted by the same person.

   2.  **ONE NOTICE FOR MULTIPLE OPERATIONS.** When one person or entity wants to conduct activities that are described in Section 9-402: D: *Extension or Expansion of Current Underground Mineral Exploration Required to File Notice of Activity,* on more than one site, only one Notice of Activity shall be required to be filed for all those activities.

BLM_0054055

## SECTION 9-403: PERMIT SUBMITTAL REQUIREMENTS FOR MINING OPERATIONS

**A.  APPLICATION FORM.** The Community Development Department shall provide the appropriate application form based on the applicable initial impact classification of the Project. The applicant shall include within the submittal a description of the construction applicant intends to complete within three years after the date the Land Use Change Permit receives approval.

**B.  DRMS AND OTHER AGENCY APPLICATION CONTENTS SHALL BE ACCEPTED**. To the maximum extent feasible, information supplied by the applicant within an application submitted to the Colorado Division of Reclamation Mining and Safety (DRMS), and any other state or federal agency, shall be accepted by Gunnison County to meet submittal requirements required by this Section.

**C.  REVIEW BY GUNNISON COUNTY PUBLIC WORKS**. A copy of the applicant's application to the Division of Minerals and Geology shall be submitted to the Gunnison County Public Works Department at the time of receipt of the Land Use Change Permit application. The Public Works Department shall have 21 days from the date of receipt to review and return comments to the Community Development Department.

**D.  NOTICE OF ACTIVITY**. Operators of activities described in Section 9-402: D: *Extension or Expansion of Current Underground Mineral Exploration Required to File Notice of Activity* shall submit a completed Notice of Activity form to the Community Development Department a minimum of 15 days before any intended activity is initiated. When multiple operations are conducted by one person or entity, all information required by the Notice of Activity form shall be supplied for each separate site. The Community Development Department shall provide, and the operator shall complete the form, that, at a minimum, shall include the following:

   **1.  NAME AND ADDRESS.** Name and address of the property owner, and, if applicable, the name of the operator or other representative of the operation.

   **2.  SITE DESCRIPTION**. Legal description of the site on which the activity will occur.

   **3.  INTENDED ACTIVITIES**. Identify the underground drilling, excavation, or maintenance to be undertaken as part of the existing underground operation.

   **4.  DURATION OF ACTIVITIES**. Define the length of time during which the activities will occur.

   **5.  VICINITY MAP. VICINITY MAP.** A vicinity map, which at a minimum includes the following (as illustrated in Appendix Figure 2: *Vicinity Map Example*):

   **a.  PROPERTY LOCATION AND NEARBY PARCEL SIZES AND LAND USES**. Location of the property on a United States Geological Survey quadrangle map with the location highlighted so that it is easy to see, and that clearly shows sizes of parcels and land uses within a half-mile of the proposed Project.

   **b.  TOPOGRAPHIC FEATURES**. Streams, lakes, ponds, wetlands, contour lines and elevations.

   **c.  ROADS**. All U.S. and state highways and nearest County or Forest Service, Bureau of Land Management, and/or subdivision/private roads that traverse and/or provide access to this proposed Project.

   **d.  EASEMENTS**. Easements recorded or historically used that provide access to or across, or other use of, the property.

   **e.  BOUNDARIES OF DISTRICTS, MUNICIPALITIES OR SUBDIVISIONS**. Locations of special district boundaries, municipalities or residential subdivisions within a half mile of the property.

   **f.  PROXIMITY OF MINING OR PROCESSING ACTIVITY**. Any parcel located within 1,000 feet of the property proposed for land use change on which there exists an operation involving mineral exploration or extraction or construction materials processing.

   **6.  PERSONNEL.** The estimated number of employees who will perform the work.

   **7.  DISTURBANCE**. The amount of surface and underground disturbance likely to occur.

   **8.  EQUIPMENT**. Equipment to be used in the operation. .

**E.  INFORMATION SUBMITTALS FOR MINOR AND MAJOR IMPACT PROJECTS.** An applicant for a Minor or Major Impact Project that involves extraction of minerals or construction materials shall at a minimum submit a copy of the application submitted to the DRMS, the items specified in Section 3-107: *General Application Requirements,* and the following, if not included in the application submitted to the DRMS:

BLM_0054056

1. **IDENTIFICATION OF MINERAL OR CONSTRUCTION MATERIAL.** Identification of the mineral or construction material proposed to be extracted, including estimated amount, depth and boundaries of mineral deposit, estimated amount of overburden, and estimated amount of proposed surface and subsurface disturbance.

2. **MINING OPERATIONS PLAN.** A detailed description of the method of operation of extraction, restoration and rehabilitation to be employed, including any proposed uses including rock crusher, asphalt plant or cement batch plant. An extraction plan showing the areas to be mined, maximum height and location(s) of stockpile area(s), locations of structures, general location of processing equipment, location of any rock crusher, asphalt plant or cement batch plant, time schedules, fencing if applicable, general depth of deposit, general tons in the deposit, length of operation, proposed phases of activity and operation, power supply, location and size of tailings ponds, hazardous materials, potential pollutants or contaminates, and other pertinent factors.

3. **RESTORATION AND RECLAMATION PLAN.** A detailed reclamation plan showing proposed reclamation with time schedules including finish contours, grading, sloping, types, placement, and amount of vegetation, after use plans, and any other proposed factors. The plan shall include a copy of each relevant applicable section submitted to the DRMS, and shall be designed pursuant to Section 13-115: *Reclamation and Noxious Weed Control*. Approval of the Land Use Change Permit shall be conditioned on subsequent submittal of a copy of the approved DRMS Reclamation Permit to the County. The County may, at its discretion require additional information on reclamation plans.

4. **TOPOGRAPHY.** Topography of the area with contour lines of sufficient detail and at a scale that shows all elements of the land use change, and to portray the direction and rate of slope of the land included in the Project. The map shall include a map scale, appropriate legend, map title, and a north arrow, the date and the name of the person who drafted the map.

5. **VEGETATION.** Type, character, and density of existing and proposed vegetation, and identification of how the existing vegetation will be impacted, restored and rehabilitated.

6. **ESTIMATED COSTS.** The operator's estimated cost at each of the following segments of the rehabilitation process, including where applicable, backfilling, grading, re-establishing topsoil, planting, revegetation management, and protection before vegetation establishment and administrative cost.

7. **STORM WATER MANAGEMENT PLAN.** A copy of the application's Storm Water Management Plan submitted to the Colorado Department of Public Health and Environment shall be submitted.

8. **EMISSION CONTROL PLAN.** If required by the Colorado Department of Public Health and Environment, an emission control plan proposed to be submitted to, or approved by the Colorado Department of Public Health and Environment. Approval of the Land Use Change Permit shall be conditioned upon subsequent submittal of a copy of the plan to the Count as approved by the CDPHE.

9. **DUST CONTROL PLAN.** A dust control plan.

10. **ACCESS AND TRANSPORTATION PLAN.** An access and transportation plan that shall address the following:

    a. **IDENTIFICATION OF PROPOSED HAUL ROUTE(S).** Traffic analysis that identifies traffic impacts of the proposal, including the numbers of trips per day to be generated by employees during construction, operation and restoration/reclamation; road and safety conditions in the pit area, in the vicinity of the pit area, and the haul route (if any). This shall include ingress/egress, parking and loading areas, on site circulation, estimate of number of trucks per day on the average and maximum number of trucks per day (ranges are acceptable).

    b. **ALTERNATIVE TRANSPORTATION MODES.** All applications for mining operations other than construction materials processing that are classified as Major Impact Projects shall include an assessment of the feasibility of alternative modes of transportation for employees and hauling of materials to and from the extraction and processing sites, including rail transportation, conveyor belts,  buses, and vans.

    c. **EMPLOYEE TRANSPORTATION.** When a Project is classified as a Major Impact, and when the County determines that, due to road capacity and/or increases in traffic hazards, the traffic generated by the operation will adversely affect public infrastructure and current levels of services the operation may be required to provide and use pool transportation plans for employee shuttles to and from the mining operation to residential areas and designated pick-up points.

    d. **TRAFFIC STUDY.** A traffic study conducted pursuant to the applicable requirements of Section 12-103: *Road System* and that includes current data and an assessment of existing road capacity and levels of service, road condition before and after the operation has been approved, and cumulative effects of existing traffic and traffic generated by the mining operation. Improvements necessitated by, and directly attributable to the mining operation including paving, lane widening, entry lanes, acceleration/deceleration lanes, runaway truck

BLM_0054057

ramps, passing lanes, and special stop or crossing areas at high-risk locations shall be itemized and proposed mitigation addressed in one or more of the following ways:

1. **IMPROVEMENTS COMPLETED BY APPLICANT.** The applicant shall first have the option to provide the personnel, materials, equipment and identified period in which to construct the improvements, subject to approval by the County.

2. **IMPROVEMENTS ENSURED BY DEVELOPMENT IMPROVEMENT AGREEMENT.** The applicant shall provide collateral sufficient to ensure construction of improvements, pursuant to a Development Improvements Agreement whether the applicant intends to complete the improvements, or contract the work out.

3. **IMPACT FEES FOR DETERIORATION CAUSED BY MINING OPERATIONS.** If the mining operation will significantly deteriorate existing roads, impact fees sufficient to compensate for the eventual cost of mitigating the deterioration shall be paid by the applicant before development is initiated, unless a payment schedule is approved by the County.

11. **HOURS OF OPERATION.** Proposed operation schedule, including the range of hours, days and months during which the Project will operate, and likely or temporary closures.

12. **ENVIRONMENTAL IMPACT MITIGATIONS.** Mitigation, including avoidance, of noise, dust, air quality impairment, odor, and vibration, including siting, buffering and processing.

13. **IMPACTS TO WATER QUALITY.** The application shall include identification of potential impacts of the operation to on-site and off-site water quality, and proposed avoidance and mitigation measures; at a minimum, the application shall comply with the requirements of Section 11-107: *Protection of Water Quality.* The applicant shall provide sufficient water quality data before a Project is initiated, including a copy of water quality data submitted to the Division of Minerals and Geology. As required during and after operation, the applicant periodically and at least during spring snowmelts, shall provide data to ensure that such standards are being met.

14. **FIRE PROTECTION PLAN.** The applicant shall submit a fire protection plan designed pursuant to Section 12-107: *Fire Protection* that shall be reviewed and approved by the County in consultation with the applicable fire protection district. Fire protection plans shall include documentation of types of construction for all structures on the site and full disclosure of all types of chemicals to be used or stored on site, their locations, and information regarding safe exposure levels, fire risks, and treatment and suppression techniques.

15. **CULTURAL SURVEY.** A cultural, historical and archeological survey of the site prepared by a qualified professional. Upon receipt, the survey shall be submitted by the Community Development Department to the State Historic Preservation Officer and the Gunnison County Historic Preservation Committee for comments and recommendations.

16. **VISUAL IMPACT ASSESSMENT.** A written visual impact assessment that considers the impact of the proposed operation on scenic qualities of the site and on significant visual resources. Inventories of existing natural features and the impacts of the proposed land use change on them, the assessment shall include information required by Section 11-108: *No Development on*   If significant impacts are reasonably likely to result from the operation, proposed mitigation measures shall be included in the assessment.

17. **BLASTING LICENSE.** Before blasting, a copy of a current blasting explosive license as filed with the Gunnison County Sheriff's Office or other applicable agency and issued to the applicant or to the contractor who will be conducting blasting activity shall be submitted to the County.

    a. **ESTIMATED SCHEDULE BLASTING TIMES.** A schedule for blasting above ground, near population centers, shall be provided a minimum of 10 days before the blasting is to occur.

18. **WATER SUPPLY.** Proposed water supply, including identification of water rights and impacts on water quality and quantity. An analysis of any hydrologic connection that shall identify any hydrologic connection between the proposed mining activity and wells or water bodies, and, as applicable, proposed impacts and avoidance or mitigations of impacts. A copy of a plan of water augmentation or other plans or permits required of the operation by any state or federal agency shall be included; if none is required by any such agency, none shall be required by the County.

19. **FUTURE LAND USES.** The application shall include a written summary of proposed future land uses of the site after completion of the mining operations.

BLM_0054058

## SECTION 9-404: SITE LOCATION AND SETBACKS FOR MINING OPERATIONS

**A. SUPERSEDES LOCATIONAL STANDARDS**. This Section shall supersede the requirements of the locational standards of Section 10-104: *Locational Standards for Commercial, Industrial and Other Non-Residential Development.*

**B. COMPATIBILITY.** To the maximum extent feasible, mining operations shall be located and conducted in such a manner as to be compatible with existing surrounding land uses and shall not unduly interfere with other economic development efforts in the County. Mining operations shall not cause a significant net adverse impact upon existing developed dedicated conservation easement or other areas identified for residential, commercial, institutional, or industrial development by either the County or its constituent municipalities.

**C. USE OF BEST MANAGEMENT PRACTICES.** To the maximum extent feasible, mining operations shall be designed, constructed, operated, maintained and reclaimed using best management practices, pursuant to Section 11-102: *Voluntary Best Management Practices.*

    **1. NO INTERFERENCE WITH LATERAL SUPPORT.** There shall be no interference with lateral support on adjacent property, regardless of the setback required.

**D. SETBACKS.** Other than in industrial parks that existed as of the effective date of this *Resolution*, construction materials processing and other mining operations as defined within this *Resolution,* at a minimum, shall meet the following standards:

    **1. SETBACKS FOR CONSTRUCTION MATERIALS PROCESSING OPERATIONS**. Mining operations that are construction materials processing operations shall comply with the following setback requirements, as summarized in Table 4: *Setbacks for Construction Materials Operations.*

        **a. CENTERLINE OF PUBLIC ROAD**. Unless all of the conditions of Section 9-404: D. 1. b: *Standards for Temporary Gravel Operations for a Specific Road Project*, are met, all components of a construction materials processing operation, except cuts and fills, office buildings, scales and screening shall be located no closer than 500 feet of the centerline of a public road, unless visual screening of natural vegetation is placed to block visual impacts to those using the adjacent road, in which case the setback may be as little as 50 feet from the edge of the right-of- way.

        **b. STANDARDS FOR TEMPORARY GRAVEL OPERATIONS FOR A SPECIFIC ROAD PROJECT.** The boundary of gravel extraction or processing may be located as close as 65 feet of the centerline of a public road other than federal or state highways or within 65 feet of the edge of the right-of-way of a federal or state highway, if all four of the following requirements are satisfied; cuts and fills may occur as needed within the road improvement Project.

            **1. PROJECT ADJACENT TO IMPROVEMENT PROJECT.** The Project phase for which the construction materials are to be extracted and processed is to improve the road to which it is adjacent and it is within the Project boundary; Gunnison County can use the site if another source of materials is not reasonably available; and

            **2. TEMPORARY.** The extraction, processing and reclamation will be active only for the length of a specific Project or Project phase, but no longer than one year, and reclamation activities will take no longer than one year and eight months, if delays are caused by weather; and

            **3. WRITTEN AGREEMENT WITH ROAD JURISDICTION.** There is written agreement between the applicant and the agency that holds jurisdiction of the road that the location is satisfactory to that agency.

            **4. LANDSCAPING.** Compliance with Section 13-111: *Landscaping and Buffering.*

        **c. NO STORAGE WITHIN SETBACKS.** In no case shall machinery, over burden or extracted material be stored within 140 feet of the centerline of the public road, except for roadside crushing purposes.

        **d. WATER BODY**. Construction materials processing operations shall set back at least 100 feet from any water body. No construction materials processing shall take place in the bed of any water body.

BLM_0054059

*SECTION 9-404: SITE LOCATION AND SETBACKS FOR MINING OPERATIONS*

TABLE 4: SETBACKS FOR CONSTRUCTION MATERIALS OPERATIONS

|  | GENERAL CONSTRUCTION MATERIALS PROCESSING OPERATIONS | TEMPORARY GRAVEL OPERATION FOR PUBLIC ROAD PROJECT |
|---|---|---|
| PUBLIC ROADS | 500 feet from centerline, unless visual screening blocks impacts, then may be reduced to 50 feet from edge of right-of-way. No storage of equipment or materials within 140 feet of centerline. | 65 feet of centerline of roads that are not federal or state highways |
| NATURAL WATER BODY | 100 feet; no activity within bed of water body | 100 feet; no activity within bed of water body |
| FEDERALLY-DESIGNATED WILDERNESS, PARKS OR RECREATION AREAS, OR FEDERAL CAMPGROUND | 1,000 feet | 1,000 feet |
| DEDICATED OPEN SPACE OR PUBLIC PARK | 1,000 feet | 1,000 feet |
| RESIDENTIAL STRUCTURES | 125 feet or less if property owner consents to smaller setback; no asphalt/batch plant or crusher shall be located closer than 250 feet. | 125 feet or less if property owner consents to smaller setback; no asphalt/batch plant, or crusher shall be located closer than 250 feet. |
| PUBLIC AND CIVIC BUILDINGS | 1,000 feet, unless materials are to be used on-site | 1,000 feet, unless materials are to be used on-site |
| PUBLIC CEMETERY | 125 feet | 300 feet |
| ADJACENT PROPERTY, RIGHT-OF-WAY OR IRRIGATION DITCH | 30 feet | 30 feet |
| SENSITIVE WILDLIFE HABITAT | As required by Section 11-106: *Protection of Wildlife Habitat Areas* | As required by Section 11-206: *Protection of Wildlife Habitat Areas* |

e. **FEDERALLY DESIGNATED WILDERNESS AREAS, NATIONAL PARKS OR RECREATION AREAS, PUBLIC PARKS, FEDERAL LANDS CAMPGROUNDS** Construction materials processing operations shall be set back at least 1,000 feet from any federally designated wilderness area, national park or recreation area, public park, or from any campground located on federal lands to ensure that there is no significant net adverse effect to the purposes for which the designation was made. These setbacks shall not apply when the materials are to be used only on-site, and the impacted owner consents to the application by notarized written form.

f. **DEDICATED OPEN SPACE OR CONSERVATION EASEMENTS**. Construction materials processing operations shall be set back a sufficient distance from a permanently dedicated open space or conservation easement to assure that there is no significant net adverse effect to the purposes for which the open space or conservation easements were dedicated. However, these setbacks shall not apply if the materials are to be used only on-site, and the owner of the dedicated open space consents to the application by notarized written form.

g. **RESIDENTIAL STRUCTURES**. Construction materials processing operations shall be set back at least 125 feet of an existing residential structure, legally permitted at the time the processing application is filed, unless the notarized written consent of the owners of the residence has been obtained in advance of submittal of the application for a Land Use Change Permit, the consent is recorded in the Office of the Gunnison County Clerk and Recorder, and is binding upon future owners.

1. **CRUSHER, ASPHALT/BATCH PLANT FURTHER LIMITED**. No crusher, asphalt or batch plant shall be located within 250 feet of a residential structure.

BLM_0054060

h. **PUBLIC AND CIVIC BUILDINGS.** Construction materials operations shall be set back at least 1,000 feet of any public or civic building, including churches, schools, and community structures, unless the materials are to be used on-site.

i. **CEMETERY.** Construction materials processing operations shall be set back at least 300 feet of the property boundary of a public cemetery.

j. **SENSITIVE WILDLIFE HABITAT.** Construction materials processing operations shall be located pursuant to the setback requirements of Section 11-106: *Protection of Wildlife Habitat Areas*.

k. **ADJACENT PROPERTY, IRRIGATION DITCH OR ROAD RIGHT OF WAY.** No construction materials processing shall be permitted within 30 feet of the boundary of adjacent property, irrigation ditch or right of way.

2. **SETBACKS FOR MINING OPERATIONS OTHER THAN CONSTRUCTION MATERIALS PROCESSING.** The mining operations that are not construction materials operations shall comply with the following setback requirements Table 5: *Setbacks for Mining That Is Not a Construction Materials Processing Operation.*

TABLE 5: SETBACKS FOR MINING THAT IS NOT A CONSTRUCTION MATERIALS PROCESSING OPERATION

| LAND USE | SETBACK |
|---|---|
| PUBLIC ROADS | 500 feet of centerline, except for transport of minerals |
| NATURAL WATER BODY | 500 feet; no activity within the water body bed |
| FEDERALLY-DESIGNATED WILDERNESS, PARKS OR RECREATION AREAS | 1,000 feet, unless materials are used onsite, or property owner consents |
| DEDICATED OPEN SPACE OR PUBLIC PARK | 1,000 feet |
| RESIDENTIAL STRUCTURES | 500 feet of residential structure legally permitted when mining application filed, or with consent of residence owner |
| PUBLIC AND CIVIC BUILDINGS | 1,000 feet |
| PUBLIC CEMETERY | 30 feet |
| ADJACENT PROPERTY, RIGHT-OF-WAY OR IRRIGATION DITCH | 30 feet |
| SENSITIVE WILDLIFE HABITAT | As required by Section 11-106: *Protection of Wildlife Habitat Areas* |

a. **PUBLIC ROADS.** Mining operations shall be conducted no closer than 500 feet of the centerline of a public road, except that the motorized transportation of minerals may occur within that setback. Any Project that is classified as a Special Development Project as defined in the *Gunnison County Special Development Projects Regulations* may be subject to either more, or less restrictive requirements, based upon the impacts of the proposed land use.

b. **WATER BODY.** Mining operations shall be conducted no closer than 500 feet of any water body. No mining operation shall take place in the bed of any water body.

1. **WAIVER ALLOWED.** A waiver from this setback may be recommended by the recommending body and approved by the decision-making body as part of the overall Land Use Change Permit review process, requiring no separate submittal of an application or form, and no separate review process. The process for requesting and granting a waiver shall include:

a. **SUBMITTAL OF A LETTER OF REQUEST.** The applicant may submit a letter requesting the waiver from this Section, stating the reason for the request, and factual documentation that supports a position that approval of the waiver will not result in degradation of water quality of the water body present at the time of submittal of the Land Use Change Permit application.

BLM_0054061

**b. DETERMINATION OF APPROPRIATENESS BY THE RECOMMENDING BODY**. The recommending body shall consider the request, and based on a finding that the submitted documentation is adequate to support the request, recommend denial or approval of the request. Approval of the waiver shall include the following conditions:

1. **BEST MANAGEMENT PRACTICES UTILIZED.** Best management practices as described in Section 11-102: *Voluntary Best Management Practices* shall be incorporated into the plan for location and operation of the mining operation in the location allowed by the waiver.

2. **MONITORING PLAN REQUIRED.** A monitoring plan, utilizing wells, instream devices, or other standard measuring devices acceptable to the Colorado Department of Public Health and Environment or the U.S. Geological Survey, shall be submitted to the County as part of the Final Plan for the operation. Guarantee of its use, and provision of related measures to insure immediate cessation of the operation upon indication of degradation, and for reclamation of the water body, shall be included within the Development Improvement Agreement for the Project.

3. **NO DEGRADATION OF EXISTING WATER QUALITY**. Language shall be included within the approval of a Final Plan that indication of degradation of the quality of water within the affected water body(ies) shall result in revocation or suspension of the permit, pursuant to Article 16: *Enforcement.*

**c. FEDERALLY DESIGNATED WILDERNESS AREAS, NATIONAL PARKS OR RECREATION AREAS, PUBLIC PARKS, FEDERAL LANDS CAMPGROUNDS**. Mining operations shall be set back at least 1,000 feet from any federally designated wilderness area, national recreation area, national park, public park, or from any campground located on federal lands, to ensure that there is no significant net adverse effect to the purposes for which the dedication was made. These setbacks shall not apply when the materials are to be used only on-site, and the impacted owner consents to the application by notarized written form.

**d. FEDERALLY, STATE, OR LOCALLY DEDICATED OPEN SPACE OR CONSERVATION AREAS**. Mining operations shall be set back a sufficient distance from a permanently dedicated federal, state, or local open space or conservation area to assure that there is no significant net adverse effect to the purposes for which the open space was dedicated. However, these setbacks shall not apply if the materials are to be used on-site only, and the owner of the dedicated open space consents by notarized written form to the application.

**e. RESIDENTIAL STRUCTURES**. Mining operations shall be conducted no closer than 500 feet of a residential structure, legally permitted at the time the application is filed, unless the recorded consent of the owner of the residential structure has been obtained in advance of submittal of the application for a Land Use Change Permit, and the consent is recorded in the Office of the Gunnison County Clerk and Recorder after final approval, and is binding upon future owners.

**f. PUBLIC AND CIVIC BUILDINGS**. No closer than 1,000 feet of any public or civic building including churches, schools, and community buildings.

**g. CEMETERY**. No closer than 300 feet of any public cemetery.

**h. ADJACENT PROPERTY, IRRIGATION DITCH OR ROAD RIGHT OF WAY**. No excavation, deposit of overburden, or stockpiling or other mining operations shall be permitted within 100 feet of the boundary of adjacent property, irrigation ditch or right of way. If natural vegetative screening is provided, the setback shall be 30 feet.

3. **WAIVER TO REDUCE SETBACK REQUIREMENTS**. A waiver from this setback may be recommended by the recommending body and approved by the decision-making body as part of the overall Land Use Change Permit review process, requiring no separate submittal of an application or form, and no separate review process. The process for requesting and granting a waiver shall include:

**a. SUBMITTAL OF A LETTER OF REQUEST**. The applicant may submit a letter requesting the waiver from this Section, stating the reason for the request, and factual documentation that supports a position that approval of the waiver will not result in degradation of water quality of the water body present at the time of submittal of the Land Use Change Permit application.

**b. DETERMINATION OF APPROPRIATENESS BY THE RECOMMENDING BODY**. The recommending body shall consider the request, and based on a finding that the submitted documentation is adequate to support the request, shall recommend denial or approval of the request. Approval of the waiver shall include the following conditions:

BLM_0054062

1. **NO SIGNIFICANT NET ADVERSE IMPACT**. There is no significant net adverse impact that results from the reduction.

2. **PROJECT IMPACT IS LIMITED OR MITIGATION OF IMPACT IS SUFFICIENT**. The impact of the proposed use has been identified and analyzed, sufficient to determine that its impacts are insubstantial and therefore a reduction is warranted, or the proposed mitigation of the setback-related impacts have been effectively mitigated. Included in this finding shall be a description, or reference to, the setback-related impacts and their mitigation.

3. **NOTICE TO AFFECTED LAND OWNERS CONCERNING LAND USE CHANGES INVOLVING MINERAL EXPLORATION OR EXTRACTION OR CONSTRUCTION MATERIALS PROCESSING.** When a land use change involving mineral exploration or extraction or construction materials processing has been requested, Gunnison County shall make reasonable efforts to provide a written advisory notice of the application to all landowners within the required setbacks. Applicants for other land use changes within 1000 feet of an approved mineral exploration or extraction activity or construction materials processing operation shall be apprised of those existing uses. Failure of Gunnison County to provide such notice shall not affect the processing or validity of any land use change process or permit or be the basis of any liability whatsoever of Gunnison County.

## SECTION 9-405: GENERAL DEVELOPMENT STANDARDS FOR MINING OPERATIONS

The following standards in addition to the other standards of this *Resolution* shall be applied in reviewing all proposed mining operations:

A. **ACCESS AND TRANSPORTATION PLAN**. If there are conflicts between this Section and other sections of this *Resolution*, this Section shall apply. All applications shall comply with all applicable requirements of Section 12-103: *Road System*, including an Access and Transportation Plan pursuant to Section 9-403: C. 10: *Access and Transportation Plan*, and shall be required to comply with the following:

1. **ROAD DAMAGE AND MAINTENANCE**.

   a. **VEHICLE WEIGHT**. The weight of trucks shall not exceed federal, state or local government imposed road or bridge weight capacity on approved haulage routes.

   b. **APPLICANT BEARS COST**. The applicant shall bear the proportionate cost of all road and bridge improvements, repairs, and maintenance necessitated by the proposed mining activity.

   c. **SEASONAL TRAFFIC LIMITATION**. Truck traffic may be limited on public roads during seasons when heavy vehicle use, weather conditions or water saturation may result in significant damage.

2. **ROUTING**. Designation of construction and haul routes for a specific mining operation application shall comply with the following:

   a. **AVOIDANCE OF DEVELOPED AREAS**. Truck haulage and traffic routes shall be designed to the maximum extent feasible to avoid residential areas, commercial areas, environmentally and visually sensitive areas, schools and other civic buildings, municipalities and already congested locations. Alternative routes shall be identified.

      1. **REVIEW BY AFFECTED AGENCY OR ASSOCIATION**. When a proposed route includes streets within a municipality or developed residential area, the applicable municipal government or property owners' association shall be included as a review agency during the review process.

      2. **CONSIDERATION OF PUBLIC BENEFIT**. When a proposed haul route is located near a developed area. The County shall determine the public benefit to be gained by a shorter haul route with decreased haulage trips against other potential impacts to residences and other developed areas.

   b. **TIMING OF HAUL TRAFFIC**. Timing of truck traffic may be controlled to prevent congestion or adverse noise impacts or safety risks.

3. **MITIGATION TO PROVIDE DUST CONTROL AND EFFECTS OF LOAD LOSS.** Applicant shall be held reasonably responsible to prevent loss of loads and fugitive dust emissions during transit by using mitigation methods described in required dust control plan, such as using tarps and tight tailgates, and shall be responsible to ensure that haul routes are maintained reasonably free of dust from the operation as required by the applicable state or federal agency. Measures may include EPA approved dust suppressants, watering, oiling, paving. These mitigations shall not be required of haulers using one-ton or smaller pick-up trucks.

BLM_0054063

    **a.**  **AIR QUALITY MONITORING.** Operation shall provide a program for initial air quality measurements and an ongoing monitoring program, including monitoring of dust from equipment and stockpiles, to ensure that during operation dust leaving the subject property does not substantially exceed initial air quality levels.

**4.**  **TRUCK AND CRUSHER NOISE.** The County may impose measures to control on-site noise generated by truck traffic and crushers used by the operation including restrictions on the use of jake brakes on- or off-site except in emergencies, banging of tailgates or use of horns on site, and regulation of truck speeds. Such measures shall be imposed pursuant to noise standards indicated in Table 6: *Maximum Permissible Noise Levels for Mining Operations* but shall not contradict state or federal regulations.

**5.**  **POST-OPERATIONAL ACCESS TO MINE SITE.** Access to the mine site and processing site during post-mining operations shall be restricted by fencing or other means if there are impoundments retaining water contaminated with harmful or hazardous materials or hazardous conditions remain present on the site.

**B.**  **ROCK CRUSHER, ASPHALT PLANT, CEMENT BATCH PLANT**. No rock crusher, asphalt plant, or cement batch plant shall be used unless specifically identified in the application and approved as part of the Land Use Change Permit.

**C.**  **IMPACTS ON ENVIRONMENTAL AND CULTURAL RESOURCES.**

**1.**  **WATER.** All operations shall comply with the standards of Section 11-107: *Protection of Water Quality*, and shall comply with the following:

    **a.**  **WATER QUALITY.** The quality of surface or ground water discharged from the mine or mining operation shall meet the standards set by the U.S. Environmental Protection Agency and the Colorado Department of Public Health and Environment, Water Quality Control Commission.

    **b.**  **WATER QUANTITY.** The operator shall insure that the mining operations shall not cause injury to existing water rights decreed by the Colorado Division of Water Resources.

    **c.**  **HYDROLOGIC BALANCE**. The operator shall ensure that mining operations avoid disturbances to the prevailing hydrologic balance of the mining site and surrounding areas to the maximum extent feasible. Stream flows shall not be significantly increased or decreased because of the proposed mining operations.

    **d.**  **AUGMENTATION PLAN**. Compliance with any augmentation plan approved for the Project by the Colorado Division of Water Resources. Replacement water shall be subject to the applicable requirements of the Colorado Division of Water Resources, but not necessarily limited to augmentation of evaporative loss.

    **e.**  **WELLS.** To the extent permission can be obtained by the applicant as a result of a good faith effort, wells both on- and off-site shall be measured and logged for quantity and quality of water by the applicant before approval to establish a baseline from which the impacts of the mining operation can be measured. The operator shall ensure that the quantity and quality of the water in such wells reasonably anticipated to be affected by the operation shall not be adversely impacted by the mine or mining operations.

    **f.**  **RECYCLING**. To conserve water supplies, water used in mining operations shall be recycled to the maximum extent feasible.

    **g.**  **HAZARDOUS MATERIALS**. All fuel, chemicals, oil, grease, and blasting agents shall be stored, used and maintained in such a manner as to prevent accidental discharge into any surface or ground water, and, at a 2.minimum, shall comply with the requirements of the EPA.

**2.**  **AVOIDANCE OF SENSITIVE AREAS.** Mining shall be prohibited in sensitive areas.

**3.**  **AIR QUALITY**. All mining operations shall comply with the Colorado Department of Health Air Quality Control Commission's Regulation 2 and all other state and federal regulations controlling dust and odor.

    **a.**  **MONITORING.** To ensure that air quality is fully monitored, in addition to monitoring requirements imposed by the Colorado Department of Public Health and Environment, and based on site-specific conditions, the County may impose reasonable additional requirements as a condition of approval.

    **b.**  **ODOR AND DUST CONTROL.** Odor and dust from on- and off-site activities, including dust from truck traffic, stockpiles, and processing, shall be mitigated to the greatest extent feasible. Dust mitigation measures shall be employed, including paving, treating of road surfaces, cleaning of vehicles, covering of truck loads, and revegetation of disturbed areas.

**4.**  **SIGNIFICANT CULTURAL, HISTORICAL AND ARCHEOLOGICAL RESOURCES**.

BLM_0054064

    **a**. **RESOURCES TO BE PRESERVED TO MAXIMUM EXTENT FEASIBLE.** To the maximum extent feasible, significant cultural, historical and archeological resources identified on the site shall be maintained and preserved. Where preservation is not feasible, adequate opportunity shall be provided to the state, county, or other appropriate agencies to document and salvage the resources.

    **b**. **RESOURCES IDENTIFIED DURING OPERATIONS.** Any cultural, historical or archeological resource identified or discovered during the mining operation shall be expeditiously and properly reported to the appropriate agencies, investigated, and preserved to the maximum extent feasible as provided above. Any County permit deadlines shall be extended to compensate for lost operating time due to recovery efforts.

**D.** **MINE WASTES AND HAZARDOUS MATERIALS.**

    **1.** **CYANIDE HEAP LEACHING PROHIBITED.** Open mining for gold and silver, when ore processing methods that utilize cyanide to heap leach the gold and silver from ore, is prohibited.

    **2.** **MINE WASTE PILES.** Mine waste piles or impoundments shall be located to the maximum extent feasible to prevent surface water runoff from entering the mines, waste piles or other structures. Any structures to be established shall divert surface water runoff from mine waste piles or impoundments containing water that has been contaminated during mining operations. Seepage of leachate from mine wastes into ground water shall be prevented with liners or other specific technologies or siting and design measures as determined in the review process.

    **3.** **HAZARDOUS WASTE TREATMENT.** Mine wastes that may retain hazardous chemical or heavy metal residues shall be detoxified to the greatest extent feasible or disposed of pursuant to applicable state or federal regulations. For purposes of this Section, "detoxified" shall mean that wastes are not hazardous as defined by local, state, and federal regulations, stabilized or treated such that potential for groundwater contamination cannot occur, and capable of supporting natural vegetation and animal life. Hazardous mine wastes shall not be used for backfilling.

    **4.** **NON-HAZARDOUS WASTE TREATMENT.** Non-hazardous mine wastes shall be treated, stored, disposed of in accordance with local, state, and federal requirements and shall be covered and graded to allow surface drainage and ensure long-term stability. Non-hazardous waste by-products may be used on-site as backfill.

    **5.** **HAZARDOUS MATERIALS.** If the applicant proposes to use hazardous materials or a chemical mining process, the applicant must demonstrate that the use of such materials or chemical mining process is essential and will not have an adverse impact upon the public health, safety, or welfare, or the environment. To the maximum extent feasible, transportation of such materials shall be avoided.

**E.** **VISUAL IMPACTS.** All mining operations shall comply with the standards of Section 11-108: *Standards for Development on Ridgelines*, and shall also comply with the following:

    1. **MITIGATION.** Mining shall mitigate visual impacts as mitigation priorities are defined in the definition of "mitigation," in Article 2: *Definitions* of this *Resolution*. Potential adverse visual impacts of the mining operation shall be avoided primarily or minimized secondarily to the maximum extent feasible by:

        **a.** **MINIMIZE DISTURBED AREA.** Minimizing the total area of disturbance;

        **b.** **MINIMIZE OFF-SITE IMPACT.** Minimizing the view from off-site of the disturbance;

        **c.** **PHASING.** Phasing the disturbance;

        **d.** **EXPEDITING RECLAMATION.** Expediting reclamation.

        **e.** **SCREENING AND VISIBILITY.** Natural topography, preservation of existing vegetation, berms, landscaping, and other buffers shall be reasonably used to screen mining operations and stockpiles from off site visibility. The visibility of highwalls, equipment, and mining faces shall be reduced through backfilling, acid-etching, painting, or other appropriate techniques.

        **f.** **ROADS.** Access roads shall be constructed and sited in ways that minimize potential visual impacts from off-site.

        **g.** **BLASTING.** Blasting shall be conducted pursuant to this Division and the blasting explosive license as filed with the Gunnison County Sheriff's Office or other applicable agency and issued to the applicant or to the contractor who will be conducting blasting activity.

**F.** **GENERAL OPERATIONS.**

BLM_0054065

*SECTION 9-405: GENERAL DEVELOPMENT STANDARDS FOR MINING OPERATIONS*

1. **COMPLIANCE WITH MSHA.** At a minimum, mining operations shall comply with the current requirements of the U.S. Mine Safety Health Administration (MSHA). The following shall also apply; when there is a question of whether the MSHA or Gunnison County requirements apply, the more restrictive shall prevail.

2. **HOURS OF OPERATION.** Hours of operation normally shall be no longer than 6:00 a.m. to 7:00 p.m.; the County may approve extended hours for a specific number of days per year or season for a specific operation or its component, only upon a finding that there will be no significant net adverse impacts on human activity, surrounding properties or the community in general. The operator shall keep current written logs of the days and hours of operation identifying by components the operations conducted. Such logs shall be available to County personnel during normal hours of operation for inspection and copying.

    a. **TEMPORARY OPERATIONS OUTSIDE THE APPROVED HOURS OF OPERATIONS.** Operations necessary for the emergency conduct of repair of equipment, preservation of public health, safety and welfare, or response to unique and unexpected demands on the operation may be permitted upon notification by telephone, e-mail letter or fax to the County Manager's Office.

3. **PHASING OF MINING OPERATIONS.** The County may require phasing of mining Projects and impose limitations on the duration of such phases to reduce the potential adverse impacts of mining operations.

4. **FIRE PROTECTION.** All mining operations shall comply with Section 11-105: *Development in Areas Subject to Wildfire Hazards,* and Section 12-107: *Fire Protection.* Water supply, firefighting machinery, trained personnel, and a fire suppression plan may be required for fire suppression purposes adequate to meet safety requirements as specified by the applicable fire protection district and approved by Gunnison County.

5. **FENCING.** All mining operations shall comply with Section 11-106: F.8.: *Fences* and Section 11-109: F. *Fences*, and shall also comply with the following:

    a. **SAFETY**. Based on the location, fencing may be required to be installed around the site to prevent access to potentially hazardous or unsafe areas by non-employees, livestock, and wildlife. Areas to be fenced include shafts, mine entrances, stockpile areas, roads, detention and retention impoundments, steep slopes, and active mining areas.

    b. **VISIBILITY**. When the operation is adjacent to a residential or commercial land use, fencing, buffering or screening may be required to minimize visibility of the mining operation.

TABLE 6: MAXIMUM PERMISSIBLE NOISE LEVELS FOR MINING OPERATIONS

| IMPACTED LAND USE | ALLOWABLE DECIBEL LEVELS BY TIME OF DAY | |
|---|---|---|
| | 6:00 A.M. TO 7:00 P.M. | 7:00 P.M. TO 6 A.M. |
| NATIONAL PARKS OR RECREATION AREAS, PUBLIC PARKS, FEDERAL LANDS CAMPGROUNDS, AND FEDERALLY, STATE, OR LOCALLY DEDICATED OPEN SPACE OR CONSERVATION AREAS. | 50 db (A)* | 45 db (A)* |
| RESIDENTIAL | 50 db (A)* | 40 db (A)* |
| COMMERCIAL | 60 db (A)* | 55 db (A)* |
| INDUSTRIAL | 80 db (A)* | 75 db (A)* |
| WILDERNESS AREAS | 40 db (A)* | 40 db (A)* |

*db (A): Decibels measured on the "A" scale of a standard sound level meter having characteristics defined by the American National Standards Institute

6. **NOISE.** The following shall apply to noise generation:

    a. **NOISE MITIGATION MEASURES**. All operations shall reduce noise impacts from the site to the maximum extent feasible. Noise mitigation measures may include restrictions on hours of operation, enclosure of

BLM_0054066

equipment and operations, buffering and screening, limitations on hours of truck traffic, and siting of operations away from sensitive uses and activities including hospitals, schools, and residential areas.

**b.  MONITORING.** Before mining operations begin, the applicant and County shall measure existing noise levels on the site and at locations both on and off-site that may be affected by operations. A program for periodic noise monitoring shall also be included in any noise mitigation plan.

**c.  MAXIMUM PERMISSIBLE NOISE LEVELS.** Under normal conditions noise from, and attributed to (as indicated by standard decibel measurement), mining operations at the boundary of any impacted property that is nearest the operation shall not exceed the levels indicated in Table 6: *Maximum Permissible Noise Levels for Mining Operations.* If noise levels of a use existing as of the effective date of this *Resolution* exceed these levels, the mining operation for which a Land Use Change Permit is being reviewed may operate at the existing higher level.

    **1.  WARNING DEVICES EXEMPTED.** Devices required by MSHA, or the U.S. Department of Labor, are exempt from this standard.

    **2**.  **SAGE GROUSE BREEDING AREA NOISE LIMITS.** In addition to the above requirements, all mining operations shall avoid disturbance of sage grouse breeding areas that may impair the acoustic component of the breeding display within one mile of known lek sites between the dates of March 20 and May 15 and between the hours of 4:30 a.m. and 8:30 a.m.

**G.  POST-OPERATIONAL LAND USE.** Once completed, phases and the entire site of the mining operation shall meet the following standards:

**1.  STATE AND FEDERAL RECLAMATION REQUIREMENTS.** The applicant shall comply with all state and federal site reclamation requirements.

**2.  COUNTY PRIORITIES.** In addition to state and federal regulations, it shall be the first priority for a Project to restore the site before the mining operation begins, secondly to rehabilitate to the maximum extent feasible, and thirdly, to reclaim the site.

**3.  RECLAMATION TO BE COMPLETED PURSUANT TO DRMS RECLAMATION PLAN.** Reclamation shall be completed as required by the Reclamation Plan approved by the DRMS, including, as applicable, any phases within the Project.

**4.  REVEGETATION.** There shall be a revegetation plan that meets the requirements of *Section 13-115: Reclamation and Noxious Weed Control.*

    **a.  THREE YEAR MAINTENANCE REQUIRED.** After revegetation of an area, the vegetation must be maintained by the applicant for a minimum of three years.

## SECTION 9-406: ADDITIONAL FINANCIAL SECURITY

In addition to the financial security required by Article 16: *Enforcement*, the County shall require adequate financial security to ensure that any off-site damage caused by blasting is remedied.

## SECTION 9-407: NO EXERCISE OF PRE-EMPTED AUTHORITY REGARDING RECLAMATION

Nothing in this Division or in Article 16: *Enforcement* is or shall be construed to be a requirement of reclamation, or financial security for reclamation, different than that established by the Colorado Division of Reclamation Mining and Safety.

BLM_0054067

BLM_0054068

# DIVISION 9-500:
# MISCELLANEOUS USES AND ACTIVITIES

## SECTION 9-501: SPECIAL EVENTS

**A. PURPOSE.** This Section provides for the regulation and permitting of temporary special events, to ensure the orderly, compatible and safe use of property by requiring adequate provision of parking, sanitary facilities, and structural strength of facilities, utilities and safety services.

**B. PERMIT REQUIRED.** Operation of a special event shall require a Special Event Permit, which may be obtained from the Community Development Department.

**C. EXEMPTIONS.** The following are exempted from the requirements of this Section:

1. **SITE THAT HAS RECEIVED LAND USE CHANGE PERMIT**. If an event is to be conducted in a permanent facility, and/or on a site for which a Land Use Change Permit has been granted specifically allowing the special events activity, and the operation of the event complies with the conditions of the permit approval, no separate Special Event Permit is required.

2. **ACTIVITY CONDUCTED AT A PRIVATE RESIDENCE.** An event conducted at a private residence, that is reasonably determined to be a private event, including graduation parties, holiday family gatherings, and picnics shall not require a Special Event Permit.

3. **WEDDINGS AND FUNERALS**. Weddings and funerals not to exceed 24 hours duration shall not require a Special Event Permit.

**D. DURATION OF PERMIT.** A Special Event Permit shall be valid for the duration of the function, but in no case shall the permit be valid for more than 10 days unless specifically approved in advance of the event by the Board.

1. **PERMIT EXTENSION.** An applicant may request that the duration of the permit be extended, by submitting a letter of request to the Community Development Department, who shall forward a copy of the request, and the original application and Department approval to the Board. The request shall be placed on the Board's next available agenda.

2. **BOARD ACTION.** The Board shall consider the request in light of potential impacts of the extended activity to County infrastructure, emergency service providers, and to neighborhood  lands, and shall either approve, approve with conditions, or deny the request.

3. **IMMEDIATE CESSATION ALLOWED TO PROTECT PUBLIC HEALTH, SAFETY AND WELFARE**. The County shall have the right to require immediate cessation of the temporary use without prior hearing if the County determines it is appropriate for the protection of public health, safety and welfare. Such right may be exercised by the board, the County Manager, Assistant County Manager, County Attorney or other designee of the Board.

**E. FEES.** The cost of a Special Event Permit shall be as delineated in a schedule of fees charged for permits issued by the Community Development Department, and as adopted, and amended from time to time by the Board. Additional compensation may be required from the applicant to cover additional costs, if the operation of the event causes the County or another public service provider to incur expenditures for personnel, materials or other needs.

**F. APPLICANT'S CONTACT WITH SERVICE PROVIDERS**. Before submitting the application, the applicant is encouraged to contact each of the potentially affected service providers referred to in Section 9-501: H. *Standards of Operation*, to determine the services that may required for the applicant's special event.

**G. APPLICATION**. The applicant shall complete and submit an application, which, at a minimum, shall include the following:

1. **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and stating the same information for the agent.

2. **PROPERTY OWNER**. Name of the owner of the property; if different than the applicant, a notarized letter from the owner consenting to the application, must be submitted.

BLM_0054069

3. **PROPERTY LOCATION.** The legal description (referencing lot and block or tract numbers, homesteads, metes and bounds), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property.

4. **PRESENT LAND USE.** Identify present land uses, locations, and sizes of structures that exist on the property.

5. **IDENTIFICATION OF PREVIOUSLY-APPROVED USES.** If Land Use Change Permits or subdivision approvals were previously issued by the County on the parcel on which the special event is proposed, they shall be identified.

6. **CHARACTERISTICS AND CURRENT CONDITION OF THE LAND.** Identification of physical characteristics, natural characteristics and current conditions of the parcel on which the special event is proposed to occur, including streams, irrigation ditches, ponds, soils, roads, vegetation, geologic hazards. Indications if trees or other vegetation, have been removed, or changes caused either by weather-related or human activity.

7. **LIST OF ADJACENT LANDOWNERS.** As applicable, a listing of all landowners and land uses that are adjacent to the boundaries of the entire parcel on which the Project is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the property except for the existence of the roadway. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel shall be included in the listing. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

8. **TYPE OF EVENT.** A description of the type of proposed event.

9. **ESTIMATED NUMBER OF PEOPLE ATTENDING.** The estimated number of participants.

10. **SALES OF FOOD AND BEVERAGES.** If food and or beverages, including liquor, will be sold or given to participants, food service licenses and liquor licenses shall be obtained as required by the Colorado Department of Public Health and Environment, Consumer Protection Division, and by the Office of the Gunnison County Clerk and Recorder, respectively, and a copy of the licenses, or of the license applications, shall be submitted with the Special Event Permit application.

11. **TEMPORARY STRUCTURES.** A list of temporary structures, including camping shelters and vendor stands that are anticipated. If there are to be vendors as part of the event, a copy shall be submitted of each individual vendor's food service license, liquor license, business license, or of the "blanket license" covering all such activities as may be required by other applicable County or state agencies.

12. **AREA PLANNED FOR PARKED VEHICLES.** Location of the area where parking will be located, and the estimated number of participant vehicles.

13. **DURATION OF EVENT.** Identification of hours, and days during which the proposed event is to occur. If applicable, identification of beginning and ending dates.

14. **HOURS WHEN EVENT WILL TAKE PLACE.** A listing of the hours of the day the proposed event is to occur. If planned to include activities during nighttime hours.

15. **EXTERIOR LIGHTING.** An identification of proposed lighting fixtures and their locations, pursuant to the requirements of Section 13-114: *Exterior Lighting.*

16. **UTILITIES.** Information about utilities shall be addressed as follows:

    a. **SOURCE OF POTABLE WATER.** If potable water is required, the source for it shall be identified.

    b. **SEWAGE DISPOSAL FACILITIES.** The details of sewage disposal and toilet facilities shall be provided.

    c. **MINIMUM FACILITIES.** A minimum of one toilet facility shall be provided to serve an anticipated attendance of each 25 people. Public or common use toilets shall comply with the federal Americans with Disabilities Act accessibility guidelines, which require that five percent of the total number, no less than one toilet facility per each cluster of toilet facilities, must be accessible to guests with disabilities.

    d. **TRASH.** Identification of how trash generated by the event will be confined, collected, and disposed of. The applicant should contact the Gunnison County Public Works Department to notify them of the proposed event, and the Projected amount of trash, and the proposed means and timing of deposit at the County Landfill.

    e. **EMERGENCY SERVICES.** Identification of how emergency services will be provided based on the Projected number of participants, the location of the event, access to the event, and the nature of the event.

    f. **PET AND OTHER DOMESTIC ANIMAL CONTROL.** A description of how pets or other domestic animals will be confined to the parcel on which the proposed event is to occur, if applicable.

BLM_0054070

g. **FEES**. To compensate the County for the cost of reviewing and processing applications for Land Use Change Permits, each applicant shall pay the Final Plan fee as shown in a schedule of fees charged for permits issued by the Community Development Department, adopted and amended from time to time by the Board. The fee schedule is designed to make the amount of the fee proportional to the amount of expense likely to be incurred by the County in reviewing and processing the application.

**H. COMMUNITY DEVELOPMENT DEPARTMENT REVIEW**. The Community Development Department will review the application for completeness, determine if additional information is needed, or if specific agencies shall be contacted to review the application.

**I. STANDARDS OF OPERATION**. An applicant for a Special Event Permit shall demonstrate that the event will operate so that the following concerns are satisfactorily addressed, and that the event will comply with all applicable County and State regulations. Requirements shall be based on the extent and duration of the proposed event:

1. **SERVICES TO PROTECT PUBLIC SAFETY AND TO ADDRESS EMERGENCIES**. First aid and other emergency services shall be provided. In consultation with the Gunnison County Sheriff, the applicable fire protection district, and the applicable Emergency Services agency, the applicant may be required to develop and submit a plan for traffic circulation and control, including requirements for parking and for emergency service vehicle access before, during and after the event. The adequacy of the plan shall be determined by the consulted agencies.

2. **SHERIFF'S DETERMINATION OF NEED FOR PERSONNEL**. The Sheriff's Department shall have the authority to estimate the anticipated number of persons in attendance, and determine if law enforcement personnel will be needed to regulate traffic associated with the event. The Sheriff shall have the authority to require that law enforcement be provided at the applicant's expense to monitor crowd control during the event and shall provide an estimated cost figure to the Community Development Department. The estimated cost of such traffic control or other activity shall be paid by the applicant at the time the permit is issued and shall not be refundable in whole or in part.

3. **PARKING PLAN**. Parking space and signs for parking shall adequately address anticipated parking demands, pursuant to Section 13-110: *Off-Road Parking and Loading* and the minimum distances listed in Appendix Table 2: *Off-Road Parking Requirements*. In no case shall parking be allowed along any shoulder of any road, and vehicles shall not be parked in any manner that would create a traffic hazard as determined either by the Sheriff's Department or the Public Works Department.

4. **TEMPORARY STRUCTURES SHALL MEET FIRE PROTECTION DISTRICT REQUIREMENTS**. Use of tents or other camping shelters or other temporary structures shall meet the requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards. Location of temporary structures shall be required to meet setback requirements, pursuant to Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way.*

5. **ELECTRICAL HOOKUPS**. Any electrical hookups shall comply with the requirements of the applicable municipality or rural electric association provider.

6. **FOOD AND LIQUOR**. Food service licenses and liquor licenses shall be obtained as required by the Colorado Department of Public Health and Environment, Consumer Protection Division, and by the Office of the Gunnison County Clerk and Recorder, respectively.

7. **TOILET FACILITIES**. A minimum of one toilet facility shall be provided to serve an anticipated attendance of each 25 people.

   a. **TOILETS SHALL BE ADA ACCESSIBLE**. Public or common use toilet facilities shall comply with the federal Americans with Disabilities Act accessibility guidelines, which require that five percent of the total number, no less than one toilet facility per each cluster of toilet facilities, must be accessible to guests with disabilities.

8. **TRASH DISPOSAL**. The applicant shall provide for the collection of trash and litter. All solid waste shall be deposited as required by the Gunnison County Public Works Department.

9. **CONTAINERS SHALL BE PROVIDED**. Separate containers shall be provided for the collection of recyclable materials.

10. **REMOVAL OF LITTER FROM THE PROPERTY**. All solid waste, litter and recyclable materials shall be removed from the site within 24 hours following the event.

11. **DAILY CLEANUP**. For multiple-day events, the grounds shall be maintained during each day of the event with no accumulations on- or offsite that would create a nuisance or pose a health hazard.

BLM_0054071

12. **CONSTRUCTION OF TEMPORARY SEATING**. All grandstands, bleachers, scaffolding and platforms shall be constructed pursuant to requirements of the Gunnison County Building Office in the Community Development Department. When determined necessary by the Building Inspector, plans showing structural details shall be submitted for review before construction begins.

13. **AMUSEMENT RIDES**. All mechanical equipment associated with amusement rides shall conform to the applicable requirements of U.S. Consumer Product Safety Commission. All applicable licenses or certifications shall be provided to the Community Development Department as a condition of permit issuance. The County reserves the right to require an inspection by a qualified professional engineer licensed in the State of Colorado at the applicant's expense in addition to any inspections required by the Safety Commission.

14. **NOISE THAT BECOMES A NUISANCE IS PROHIBITED.** Unreasonably loud and disturbing noise that the County reasonably determines to be a public or private nuisance is prohibited.

15. **HOURS OF OPERATION**. Hours during which the normal activity of a special event may take place shall be between 7 a.m. and 11 p.m., unless otherwise specified in the Special Event Permit.

16. **CONFINEMENT OF ANIMALS**. All domestic and exotic animals shall be confined to the parcel on which the special event is permitted.

17. **LOCATION.** The special event shall only be permitted to occur in a location where the County reasonably determines it will not be detrimental to the public health, safety and welfare, improvements of the surrounding area or to the environment, including impacts on air and water resources, agricultural operations, wildlife habitats, and visual resources.

J. **COORDINATION WITH MUNICIPALITIES**. When the application is for a special event to be located within a municipal Three Mile Plan area, the County shall consider how the application has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the Three Mile Plan area. Where there is a conflict between the objectives or policies of a Three Mile Plan or the intergovernmental agreement, and County standards, County standards shall apply.

K. **INSURANCE**. The applicant shall be required to demonstrate that a general liability insurance policy in an amount to be reasonably determined by the County Attorney will be in effect for the duration of the special event. The County, its officials, employees and agents, and owners of adjacent property as reasonably determined by the County shall be named as additional insured parties in the policy.

L. **INDEMNIFICATION AGREEMENT**. The applicant shall be required to submit a fully executed written agreement, acceptable to the County Attorney, to defend, indemnify and hold harmless Gunnison County, its officials, employees and agents, from and against all causes of action, claims and expenses, including reasonable attorneys' fees that might arise, indirectly or directly, because of the particular activity. This requirement is not, and shall not be construed to be, a waiver by Gunnison County of governmental immunity.

M. **CONDITIONS OF PERMIT APPROVAL.** In its approval, the County shall apply such conditions as it reasonably deems to be necessary to provide that the special event shall comply with the standards of operation and does not result in significant on-site or offsite impacts to lands, County infrastructure, or public health, safety and welfare, including the following:

1. **BOND AND CLEAN-UP DEPOSIT**. Provision for a bond and damage or clean-up deposit, or other financial guarantee to provide that the site is restored to its former condition and any damages are repaired.

2. **OPERATIONAL LIMITATIONS.** Operational limitations, including limits on the maximum daily attendance and the event's hours of operation, and limitations on exterior lighting, noise and parking.

## SECTION 9-502: TEMPORARY STRUCTURES

A. **PURPOSE.** This Section provides for the regulation of temporary structures including a temporary residence or temporary construction office and the operation of a temporary vendor's stand not including a farm or ranch stand.

B. **NO VESTING OF TEMPORARY STRUCTURES.** Approval of a temporary structure as allowed by this Section shall not constitute approval of a site-specific development plan entitled to statutory or other vested right.

C. **TEMPORARY BUILDINGS NOT REQUIRING A PERMIT**. In conjunction with the issuance of a Building Permit or a Land Use Change Permit for a development site, the County may authorize an applicant to install one or more temporary buildings reasonably needed for the following and similar purposes. The temporary shelter shall not be placed for more than 18 months from the date of issuance of the Building Permit. One six-month extension may be permitted by the Community Development Department, upon a demonstration of hardship.

BLM_0054072

1. **CONTRACTOR'S OFFICE.** A contractor's office located in a development that is under construction; or,

2. **TEMPORARY SHELTER.** A temporary shelter for the owner of the property, located on the same site as a residence that is under construction and has a valid Building Permit.

D. **REMOVAL.** The applicant shall provide positive assurance that the temporary building will be removed by the time established in the Land Use Change Permit. The County may remove the temporary building at the applicant's expense if, at any time, the building is reasonably determined to be out of compliance with this *Resolution*. A deposit may be required from the applicant to defray the County's costs to remove a temporary building.

E. **OUTDOOR VENDING REQUIRES PERMIT.** The sale of goods other than from a farm or ranch stand pursuant to Section 9-302: *Farm or Ranch Stand*, from an open stand, push cart, vehicle or an outdoor site, but not from a permanent building, is permitted as an accessory use. An applicant shall obtain an Outdoor Vending Permit from the Community Development Department, and shall comply with the following requirements; the permit shall be issued for a period of 150 consecutive days for each one-year period.

1. **PURPOSE OF VENDING LIMITED TO FOOD AND BEVERAGES.** Outdoor vending shall provide no service or product other than the sale of food or beverages for immediate consumption. No food or drink may be sold except as allowed by the Colorado Department of Public Health and Environmental Consumer Protection Division.

2. **STANDARDS FOR OUTDOOR VENDING OPERATION.** An outdoor vending operation shall:

   a. **HAVE OWNER'S PERMISSION.** Locate on property owned or leased by the vendor or at a location for which notarized written permission to operate the business has been obtained from the property owner. A copy of the permission shall be submitted to the Community Development Department.

   b. **NOT LOCATE IN ROADWAY OR RIGHT-OF-WAY.** Not locate within any road or highway right- of-way, driveway or aisle way, within 35 feet of a residential property boundary, within a required setback, or in any parking spaces. An outdoor vendor shall not obstruct pedestrian or vehicular traffic, or obstruct motorists' vision.

   c. **ADVERTISING.** Any signs advertising an outdoor vending operation shall comply with Section 13-109: *Signs*.

   d. **ADEQUATE PARKING.** If necessary because the vending requires parking of vehicles, and the proposed site has no existing parking, the applicant shall be responsible for providing an area of the site that complies with the requirements of Section 13-110: *Off-Road Parking and Loading* and the minimum distances listed in Appendix Table 2: *Off-Road Parking Requirements.* Customers shall be provided space to safely pull off the road and park without causing congestion or hazards either to themselves or to traffic. Parking spaces shall not be located so vehicles can back directly onto a public road other than an alley.

   e. **TRASH CONTROL.** Where an outdoor vendor is distributing products that may result in trash, such as food in disposable containers, the outdoor vendor shall provide trash containers and make adequate provision for trash control and removal. The outdoor vending site shall be maintained by the vendor in a clean and sanitary condition.

   f. **SEWAGE DISPOSAL.** Use of any facilities for sewage collection and gray water disposal shall comply with the *Gunnison County On-Site Wastewater Treatment System Regulations.*

   g. **BUSINESS LICENSE.** The applicant shall secure any necessary licenses, and pay any fees required by the Gunnison County Officer of Clerk and Recorder to operate the business.

F. **FEES.** The fee for an Outdoor Vending Permit shall be as shown in a schedule of fees charged for permits issued by the Community Development Department, and as adopted and amended from time to time by the Board.

## SECTION 9-503: SATELLITE DISH DEVICES

A. **LAND USE CHANGE PERMIT NOT REQUIRED.** No Land Use Change Permit is required for the following:

1. **SATELLITE DISH 36" OR SMALLER.** A satellite dish reception or transmission device that is 36 inches in diameter or equivalent size or smaller may be installed as an accessory use without a Land Use Change Permit.

2. **SATELLITE DISH LARGER THAN 36".** A satellite dish reception or transmission device that is in excess of 36 inches in diameter or equivalent size or smaller may be installed without a Land Use Change Permit as an accessory use, provided it complies with the following standards:

   a. **LOCATION.** The satellite dish device shall not be located in any required setback, in any public right-of way, or on a roof; and

BLM_0054073

    **b.** **VISIBILITY.** The satellite dish device shall be located to minimize its visibility from neighbors and from public roads. When the antenna can only be located such that it is visible from neighbors or public roads, the County may reasonably require the satellite dish device to be screened with landscaping or fencing, or to be painted with colors that to the maximum extent feasible, camouflage its appearance.

## SECTION 9-504: ATTACHED WIRELESS TELECOMMUNICATIONS DEVICES

**A.** **LAND USE CHANGE PERMIT NOT REQUIRED.** A wireless telecommunications device that is attached to or mounted on a building or other structure may be installed as an accessory use without a Land Use Change Permit. The device shall be mounted to be as flush to the wall as technically feasible and shall not Project above the wall on which it is mounted. It shall be painted to match the color and texture of the wall, building, or surrounding environment, using muted or subdued colors or earth tones. A design that masks or camouflages the device, so it blends with the surrounding environment, is required.

## SECTION 9-505: FREESTANDING WIRELESS TELECOMMUNICATION STRUCTURES

**A.** **LAND USE CHANGE PERMIT REQUIRED.** The construction and siting of a freestanding structure, building, pole, tower or antenna that provides wireless telecommunications services requires a Land Use Change Permit, and shall meet these standards:

**B.** **GENERAL STANDARDS.** A freestanding structure, building, pole, tower, or antenna that provides wireless telecommunications services shall be subject to the following requirements:

    **1.** **SAFETY SETBACK.** To ensure the safety of surrounding properties in the event of collapse, and to protect against the accumulation of snow and ice, it shall be set back from all property lines by one foot for every one foot of its height, or shall comply with the applicable setback requirements from Section 13-104: *Setbacks from Property Lines and Road Rights-of-Way,* whichever is greater.

    **2.** **DESIGN.** It shall be designed and sited to be compatible with the surroundings in terms of materials, roof form, scale, mass, color, texture and character. A design that masks or camouflages the structure, so it blends with the surrounding or built environment, is required to the maximum extent feasible.

    **3.** **HEIGHT.** Towers and antennae shall be sited to minimize their height.

    **4.** **BUFFERING.** In addition to any buffering required by Section 13-111: *Landscaping and Buffering*, landscaping and screening shall be required to achieve a total screening effect at the base of the structure and to screen any associated support buildings. Screening shall use trees (unless a source of water necessary for the survival of the trees is not available, in which case other vegetation appropriate for the site shall be installed) and may also secondarily use fences (wood, masonry, stucco, or similar opaque materials) or berms.

    **5.** **EXTERIOR LIGHTING.** Security or other lighting shall feature down-directional, sharp cutoff luminaires that comply with the requirements of Section 13-114: *Exterior Lighting.* Safety lighting of telecommunication structures that is required by the Federal Aviation Administration shall be exempt from this standard.

    **6.** **ACCESS ROADS.** Access roads to the structure shall be minimal and capable of supporting equipment necessary to maintain the structure.

    **7.** **DESIGN SAFETY.** The structure's design shall be certified by a qualified professional structural engineer as structurally sound and presenting no risk to public safety. When applicable, the applicant shall also demonstrate that the location, height, and operation of the structure have been determined not to be an aviation hazard by the Federal Aviation Administration.

    **8.** **UTILITIES SHALL BE LOCATED UNDERGROUND.** To the maximum extent feasible, all utilities shall be installed underground.

## SECTION 9-506: CHILD CARE CENTER

**A.** **LAND USE CHANGE PERMIT REQUIRED.** The operation of a child care center requires a Land Use Change Permit and in addition to complying with all applicable requirements of this *Resolution*, shall comply with all applicable requirements of Colorado law, the Colorado Department of Human Services, and the Gunnison County Department of Human Services, and shall comply with the requirements of this Section.

**B.** **COMPLIANCE WITH APPLICABLE BUILDING CODE, ADOPTED AND AMENDED BY GUNNISON COUNTY.** Construction and operation of a child care center shall comply with the applicable requirements of the applicable building code, adopted and amended by Gunnison County.

BLM_0054074

**C.   COMPLIANCE WITH FIRE PROTECTION DISTRICT REQUIREMENTS**. All structures used as part of a child care center shall comply with requirements of the applicable fire protection district. All such uses, whether pre-existing this *Resolution*, or approved by new Land Use Change Permits after the effective date of this *Resolution*, shall comply with the standards of Section 12-107: *Fire Protection*.

**D.   ADEQUATE PARKING.** A child care center shall provide one off-road parking space per non-resident employee. These spaces shall be in addition to any other parking required for the property (including if the center is operated within a residence), pursuant to Section 13-110: *Off-Road Parking and Loading* and the minimum distances listed in Appendix Table 2: *Off-Road Parking Requirements*.

**E.   DROP-OFF/PICK-UP AREA.** A child care center shall have one designated on- or off-road drop-off/pick-up space for every six children. The space shall:

    **1.   AVAILABLE DURING OPERATING HOURS**. Be available during operating hours to provide for the loading and unloading of children; and

    **2.   LOCATED ON SAME SIDE OF ROAD**. Be located on the same side of the road as and adjacent to the child care facility.

**F.   OUTDOOR PLAYGROUND.** A child care center shall have an on-site outdoor play area that meets the State standard for facilities of its size, as specified in Minimum Rules and Regulations for Child Care Centers, issued by the Colorado Department of Human Services. The outdoor play area shall be fenced or screened to prevent children from exiting on their own and shall not be located in the property's front yard.

**G.   IN-HOME BABY-SITTING DOES NOT REQUIRE PERMIT**. In-home babysitting, for the purposes of this *Resolution*, does not constitute a child care center, and does not require a Land Use Change Permit

## SECTION 9-507: GROUP HOME

**A.   LAND USE CHANGE PERMIT REQUIRED**. The operation of a group home for developmentally-disabled persons, aged persons, and persons with mental illness or juvenile offenders requires a Land Use Change Permit and shall comply with all applicable requirements of Colorado law, the Colorado Department of Human Services, and the Gunnison County Department of Human Services, and shall meet the following standards:

**B.   COMPLIANCE WITH APPLICABLE BUILDING CODE ADOPTED AND AMENDED BY GUNNISON COUNTY**. Construction and operation of a group home shall comply with the applicable requirements of the applicable building code, adopted and amended by Gunnison County.

**C.   COMPLIANCE WITH FIRE PROTECTION DISTRICT REQUIREMENTS**. All structures used as part of a group home shall comply with requirements of the applicable fire protection district. When the district's standards conflict with County standards, the County shall only enforce the County standards. All such uses, whether pre-existing this *Resolution*, or approved by new Land Use Change Permits after the effective date of this *Resolution*, shall comply with the standards of Section 12-107: *Fire Protection*.

**D.   AVAILABILITY OF SERVICE AND FACILITIES**. A group home must be located so that services and facilities, including convenience stores, commercial services, transportation and public recreation facilities are readily accessible to the residents.

## SECTION 9-508: KEEPING OF LIVESTOCK NOT ON AN AGRICULTURAL OPERATION

**A.   LIVESTOCK AND SMALL ANIMALS ALLOWED WITH NO LAND USE CHANGE PERMIT**. The keeping of livestock and domestic animals on property other than an agricultural operation is permitted without a Land Use Change Permit subject to the following:

    **1.   CONFINEMENT TO THE SITE.** Animals shall be confined to the parcel on which the primary use is located unless with the owner.

    **2.   DISPOSAL OF MANURE.** Manure may be composted, used as fertilizer on meadows, or removed at least every six months from the property.

    **3.   DISTANCE FROM LOT LINES AND WATER.** Manure piles shall be located a minimum of 40 feet from any lot line and 150 feet from any well, stream or water body. Manure shall be stored so as to protect surface and groundwater

    **4.   ODOR CONTROL**. Animals shall not be allowed to create excessive odor problems or present a health hazard to neighbors or surrounding lands.

BLM_0054075

5. **DRAINAGE FACILITIES**. Adequate drainage facilities or improvements shall be provided by the landowner and constructed to prevent any adjacent land or natural drainages from receiving runoff containing contaminants including sediment or organic wastes.

6. **VEGETATION STANDARDS**. The following vegetation requirements shall apply only to land uses other than agricultural operations.

   a. **NATURAL RESOURCES CONSERVATION SERVICE GUIDELINES**. Recommendations of the Natural Resource Conservation Service may be utilized in determining the maximum devegetation per lot area.

   b. **MAINTENANCE OF VEGETATION**. The site, excluding the area that is allowed to be devegetated, must be maintained with vegetative groundcover. Vegetative groundcover includes native plants or introduced grasses and forbs, but does not include weeds on bare dirt. The minimum amount of vegetative groundcover required shall comply with the Section 13-115: *Reclamation and Noxious Weed Control.* Natural rock outcroppings shall not count towards the maximum area that may be devegetated.

7. **NONDOMESTIC/EXOTIC ANIMALS**. The keeping of nondomestic or exotic animals for breeding or commercial viewing purposes is subject to all other standards of this *Resolution* and applicable Colorado regulations.

## SECTION 9-509: CAMPING ON INDIVIDUAL PARCELS

A. **PURPOSE.** The purpose of this Section is to provide regulations for the use of an individual recreational vehicle or other camping shelter (such as a tent) on an individual parcel, and to provide minimum requirements for the protection of health and safety of occupants of commercial campgrounds, and of the general public.

B. **LONG-TERM CAMPING IN A RECREATIONAL VEHICLE OR OTHER CAMPING SHELTER REQUIRES PERMIT**. Use of a recreational vehicle or other camping shelter for longer than a total of 14 days during any consecutive three months on the same parcel shall require a Long-term Camping Permit, which may be obtained from the Community Development Department.

   1. **EXCEPTIONS**. Long-term camping in approved campgrounds on federal or state lands, or on lots or parcels that are located in subdivisions that have been approved as platted subdivisions by the County, with protective covenants approved by the County, and in which camping is allowed by those protective covenants, shall not be required to obtain either a Land Use Change Permit or a Long-Term Camping Permit.

C. **NO LAND USE CHANGE PERMIT REQUIRED FOR CAMPING IN A RECREATIONAL VEHICLE OR OTHER CAMPING SHELTER ON AN INDIVIDUAL PARCEL.** A recreational vehicle or other camping shelter may be parked on an individual parcel and may be occupied by the landowner or by his/ her guests, and shall comply with these requirements:

   1. **PROTECTIVE COVENANTS ALLOW CAMPING.** If any applicable protective covenants or deed restrictions are recorded against the property in the Office of the Gunnison County Clerk and Recorder, they do not prohibit this use.

   2. **NO PARKING ON PUBLIC RIGHT-OF-WAY.** No recreational vehicle or other camping shelter shall be parked on any public right-of-way or road for camping, storage or residential use.

   3. **THERE IS NO COMPENSATION.** There is no compensation to the owner of the parcel involved.

   4. **CAMPING LIMITED TO 14 DAYS.** The travel trailer, recreational vehicle, camper or other camping shelter may only be used for camping for a period that does not exceed a total of 14 days during any consecutive three months on the same parcel without obtaining a Long-Term Camping Permit. The vehicle or other camping shelter shall be removed from the parcel after that time

   5. **MAINTENANCE.** The lot or parcel on which camping occurs shall be maintained in a safe, clean and sanitary manner, and shall not be a nuisance or create adverse impacts to surrounding property, land or land uses.

   6. **DISPOSAL OF WASTE.** Septage and other sewage or wastewater shall be disposed of only pursuant to a permit obtained in full compliance with the *Gunnison County On-Site Wastewater Treatment System Regulations*, and any other applicable County, state or federal standard or regulation. Compliance with those Regulations may require that a long-term individual sewage disposal system be installed and maintained on the parcel.

D. **PROHIBITED ACTIONS.** The following shall be prohibited:

   1. **LEAVING REFUSE.** Storage of refuse, debris or litter in an exposed or unsanitary condition.

BLM_0054076

2. **DUMPING OF POLLUTANTS NEAR WATER BODY**. Placing any substance that pollutes, or may pollute the water body within 150 feet of a stream, lake or other water body.

E. **APPLICATION.** The Community Development Department shall provide an application form that the applicant shall complete and which, at a minimum, shall include the following:

1. **APPLICANT.** The name, address, telephone and fax numbers, and e-mail address for the applicant, or if the applicant is to be represented by an agent, a notarized letter signed by the applicant authorizing the agent to represent the applicant and stating the same information for the agent.

2. **PROPERTY OWNER**. Name of the owner of the property; if different than the applicant, a notarized letter from the owner consenting to the application, must be submitted.

3. **PROPERTY LOCATION**. The legal description (referencing lot and block or tract numbers, homesteads, metes and bounds), property address and common description of the parcel on which the land use change is proposed to be located. A copy of the recorded deed to the property.

4. **TYPE OF RECREATIONAL VEHICLE OR CAMPING SHELTER TO BE USED.** The type of recreational vehicle or other camping shelter to be used.

5. **PRESENT LAND USE**. Identify present land uses, locations, and sizes of structures that exist on the property.

6. **LIST OF ADJACENT LANDOWNERS**. As applicable, a listing of all landowners and land uses that are adjacent to the boundaries of the entire parcel on which the Project is proposed, including all properties that are separated from the parcel by a roadway or would be adjacent to the property except for the existence of the roadway. When the parcel is located adjacent to a municipality, a platted townsite or platted recorded subdivision, all owners of surface property rights within 500 feet of each boundary of the entire parcel shall be included in the listing. The source for the best-available information to identify those landowners is the Gunnison County Assessor's Office.

7. **TRASH.** An indication of how trash will be removed from the site and taken to the appropriate landfill.

8. **SEWAGE DISPOSAL**. An indication of how sewage will be disposed of pursuant to the *Gunnison County On-Site Wastewater Treatment System Regulations.*

F. **FEES.** The fee for a Long-Term Camping Permit shall be as shown in a schedule of fees charged for permits issued by the Community Development Department, and adopted and amended from time to time by the Board.

BLM_0054077

BLM_0054078

# DIVISION 9-600:
# ESSENTIAL HOUSING

## SECTION 9-601: PURPOSES.

Future demand for Essential Housing that is affordable for Gunnison County's workforce and residents is impacted by a myriad of variables including population growth, housing market trends, and employment trends. While these variables cannot be accurately predicted, it is unlikely, given current conditions and funding availability, that future demand for Essential Housing in Gunnison County will decrease. It is probable, given rapidly increasing housing prices, that demand will increase.

The wellbeing of the residents and visitors in Gunnison County is dependent upon a supply of affordable workforce housing being available for including emergency services personnel, medical practitioners, teachers and other employees crucial to our economy and community so they can live within reasonable proximity to their worksites and provide necessary public- and private-sector services. The documented trend of increasing housing and land prices in Gunnison County has resulted in an inadequate supply of Essential Housing for county residents. This jeopardizes the ability of local employers to hire and retain employees, thus negatively impacting business operations.

Employees are not the only residents whose health, safety and welfare are negatively impacted by the insufficient supply of affordable housing. Seniors, persons with disabilities and other residents who may be unemployed, living on low to moderate incomes are not provided adequate, affordable housing opportunities by the free market.

A. **TO ENCOURAGE AFFORDABLE/ESSENTIAL HOUSING.** To encourage and ensure the development and availability of safe, affordable housing for low-income and moderate-income households within Gunnison County.

B. **TO ACHIEVE AND MAINTAIN VARIED HOUSING SUPPLY.** To achieve and maintain a housing stock which meets County-defined targets for income groups and owner/renter ratios.

C. **TO ADD ESSENTIAL HOUSING PROPORTIONAL TO NEW DEVELOPMENT.** To promote the County's goal to add essential residences in proportion to the housing impacts generated by new residences and commercial and industrial uses to provide a basis for economic development and job growth.

D. **TO ENSURE GROWTH PAYS ITS PROPORTIONATE SHARE.** To ensure that growth contributes a proportionate share of funding, land and/or construction to increase and maintain a sufficient supply of essential housing residences.

E. **TO MITIGATE IMPACTS BY PROMOTING BALANCE OF JOBS AND HOUSING.** To mitigate impacts that accompany new residential and non-residential development by protecting diversity of the County's housing stock, promoting a balance between jobs and housing, and reducing the demands placed on transportation infrastructure.

F. **TO ENCOURAGE LOCATION OF ESSENTIAL HOUSING NEAR WORK SITES.** To encourage essential housing to be located near central work sites and public transportation.

G. **TO ENSURE DEVELOPMENT THAT ENHANCES THE EXISTING SENSE OF "COMMUNITY" IN GUNNISON COUNTY.** To ensure that development of Essential Housing Projects and residences integrates new and current residents and does not isolate Essential Housing Residences from free-market residential development.

## SECTION 9-602: RELATIONSHIP OF DEVELOPMENT AND ESSENTIAL HOUSING NEED

A. **BASIS FOR REQUIREMENTS.** Multiple sources of data indicate a need for Essential Housing in response to escalating free-market housing prices and rents that are not affordable to essential employees who are crucial to the economic well-being of Gunnison County but who earn low to moderate incomes and others, including seniors, who live on fixed incomes. These sources include the 2000 U.S. Census for Gunnison County; *Gunnison County Housing Needs Assessments* completed in 1992 and 1999; the *Gunnison County Residential Job Generation Study* completed in 2000 by Rees Consulting, Inc and the Housing Collaborative, and the *Nexus/Proportionality Analysis for Commercial and Residential Linkage Programs* 2006 Rees Consulting, Inc. Based on this information, and as further identified by *Board of County Commissioners' Resolution 2006-44,* there is a demonstrable nexus between the impact of new non-residential and residential developments, the jobs generated by those developments, and the need for Essential Housing in Gunnison County, and an accurate mechanism to establish an appropriate and proportional workforce housing fee for new commercial, industrial and residential development.

1. **HOUSING OPPORTUNITIES LIMITED TO QUALIFIED HOUSEHOLDS.** Analyses of the housing situation in the County, particularly in the corridor that encompasses the area between the City of Gunnison and Towns of

Crested Butte and Mt. Crested, reveal that with the exception of housing developed in partnership with the assistance of public or non-profit entities, residential development does not provide adequate housing opportunities for low- and moderate-income households. There is a demonstrated market price gap between free-market housing prices and what households within those income categories can afford.

2. **DATA IS BASIS FOR ESSENTIAL HOUSING REQUIREMENTS.** This Division uses data which includes the average number of employees per household; the target income levels for workforce housing development; the estimated multiple jobs held by workers; the estimated affordable rents and sales prices for workforce housing-- and other such data necessary to construct reasonable methodologies to provide for workforce housing.

3. **ECONOMIC DEVELOPMENT BENEFITS.** A permanent supply of Essential Housing is a necessary component of an economic development strategy that seeks to retain employers and employees and bring new jobs to Gunnison County.

## SECTION 9-603: WORKFORCE HOUSING LINKAGE

A. **PURPOSE.** New construction or expansion of residential, commercial and industrial buildings or uses in the unincorporated areas of Gunnison County will result in new workers employed by or within those buildings or uses. This Section is intended to ensure that commercial and industrial development and construction of individual free market residences provide constructed residences and installed infrastructure, or contribute to the construction of a reasonable and appropriate percentage of Essential Housing to mitigate impacts to the county's housing supply as growth occurs.

B. **APPLICABILITY.** Unless otherwise exempted, this Section shall apply to all proposed residential, commercial, and industrial development that is subject to the requirements of this *Resolution,* and for which an application is submitted for a Building Permit after June 13, 2006.

C. **EXEMPTIONS.** The following shall be exempt from the Workforce Housing Fee:

1. **SAME-SIZE RECONSTRUCTION OF PRE-EXISTING STRUCTURE**. The reconstruction of any pre-existing structure pursuant to *Section 1-108: Non-conforming Uses* if the reconstruction does not increase the size more than 500 square feet, or as applicable, the number of residences within it, except when the structure was not a legally habitable residence before the reconstruction; or

2. **ADDITION OF 500 SQ. FT. OR LESS TO PRE-EXISTING STRUCTURE.** The addition of 500 square feet or less to a structure, whether it is a residential, commercial or industrial use; or

3. **INTEGRATED SECONDARY RESIDENCE.** An integrated secondary residence as allowed pursuant to *Section 9-102: F.: Standards for Integrated Secondary Residence*, provided that it is deed-restricted for occupancy by Qualified Households with incomes as defined in *Section 9-601: C. 6.: Exemption for Income-Qualified Households.*

4. **MOBILE HOMES**.  Individual mobile homes and mobile home communities as defined by this *Resolution*, provided that the homes are deed-restricted for occupancy by Qualified Households with incomes as defined in *Section 9-601: C. 6.: Exemption for Income-Qualified Households*.

5. **ESSENTIAL RESIDENCES**. Residences that are constructed and deed-restricted as Essential Housing.

6. **EXEMPTION FOR INCOME-QUALIFIED HOUSEHOLDS.**  Households earning less than 120 percent of AMI, as qualified by the Gunnison County Housing Authority Executive Director, are building homes for their own occupancy and which are a household's primary residence. Primary residency shall be determined  by the Gunnison County Housing Authority Executive Director, who may consider the following factors:

   a. **EMPLOYMENT ADDRESS.** Employment address.

   b. **UTILITY BILLS**. Utilities bills.

   c. **DRIVER'S LICENSE, CAR REGISTRATION**. Driver's license and car registration address.

   d. **TAX RETURN ADDRESS**. Address on federal and state tax returns.

   e. **FAMILY MAIN ADDRESS**. Family members' main residence location.

   f. **FINANCIAL INSTITUTION ADDRESS**. The address of a financial institution used by the household.

   g. **VOTER REGISTRATION ADDRESS**. Voter registration card addresses.

BLM_0054080

**D. WORKFORCE HOUSING FORMULA AND FEES.** Unless exempted by this Division, additions or remodels to existing residences of more than 500 square feet, and all residential, commercial and industrial construction for which a Building Permit is required to pay after June 13, 2006, the Workforce Housing Fee schedule, adopted and amended from time to time by the Board, shall apply as follows:

   **1. RESIDENTIAL DEVELOPMENT.** Workforce Housing Fees for single-family residences, multiple-family residences, manufactured homes, secondary residences that are not integrated secondary residences, and sleeping quarters, are identified in the adopted fee schedule.

   **2. COMMERCIAL AND INDUSTRIAL.** Workforce Housing Fees for commercial and industrial construction are identified in the adopted fee schedule.

## SECTION 9-604: INCENTIVES TO PROVIDE ESSENTIAL HOUSING

**A. REQUIRED INCENTIVES.** Notwithstanding any other requirements of this *Resolution*, the decision-making body shall provide one or more of the following incentives for an Essential Housing Project or a residential or mixed-use development in which a minimum of 40 percent of the residences are Essential Housing, and, because of deed restriction, will remain Essential Housing:

   **1. EXPEDITED REVIEW PROCESS FOR ESSENTIAL HOUSING PROJECTS.** Conforming and complete applications submitted pursuant to this Division generally shall be given priority over other applications that are being reviewed by staff, the Planning Commission or the Board. At each phase of its review, each application shall be placed on the first scheduled Commission or Board agenda for which it can be properly noticed.

   **2. INCREASE IN ALLOWABLE RESIDENTIAL LIVING AREA.** An increase of 15 percent in maximum residential living area allowed pursuant to *Section 13-105: C.: Parcels Smaller Than 6,500 Sq. Ft.*, and *Section 13-105: D.: Parcels Equal To or Larger Than 6,500 Sq. Ft.* when a secondary residence is included that is deed-restricted as an Essential Housing residence.

   **3. INCREASE IN BUILDING HEIGHT.** An increase of 25 percent in the maximum structure height allowed pursuant to *Section 13-103: G.: Allowed Structure Heights,* when such increase is found to not interfere with solar access or potential solar access of existing adjacent structures, and the County determines the increase to be in the public benefit in its allowance for additional and/or larger residences and that are deed-restricted pursuant to this Division.

   **4. REDUCED SETBACK REQUIREMENTS.** An exception pursuant to *Section 13-104: Setbacks from Property Lines and Rights-of-Way* shall be allowed by reducing front setbacks to 15 feet, and side/rear setbacks to 10 feet, subject to approval by the applicable fire protection district.

   **5. DEFERRED FEES.** Fees for Essential Housing residences may be deferred as follows:

   **a. PROJECTS THAT INCLUDE CONSTRUCTED ESSENTIAL HOUSING RESIDENCES.** A proposed land use change includes the construction of Essential Housing Residences, and the installation of infrastructure to service them. The applicable decision-making body may defer all related County fees, such as Building Permit Fees, ISDS Permit fees, Access Permit fees, and Reclamation Permit fees for Essential Housing that is to be constructed by the Land Use Change Permit applicant, until the applicant receives a Certificate of Occupancy for each of the constructed residences. Payment of fees may be in whole for all the residences in the development when a Certificate of Occupancy is obtained for the first residence, or in part for each residence at the time each residence receives a Certificate of Occupancy thereafter.

   **b. PROJECTS IN WHICH UNIMPROVED LOTS WILL BE SOLD FOR FUTURE CONSTRUCTION.** In Essential Housing Projects in which construction of individual single-family or multiple-family residences will be accomplished by persons who purchase lots within the Project, fees for each Building Permit may be deferred until each Essential Housing residence receives a Certificate of Occupancy.

   **6. MODIFIED DEVELOPMENT STANDARDS.** The decision-making body shall approve modifications to the design requirements of Article 10: *Locational Standards*, Article 11: *Resource Protection Standards*, Article 12: *Development Infrastructure Standards*, and Article 13: *Project Design Standards* for Essential Housing, provided that the requested modification will result in residences that will be more energy-efficient, will provide more amenities, or improved design, and will not jeopardize public health, safety or welfare.

   **a. STANDARDS THAT CANNOT BE MODIFIED.** The following standards shall not be waived:

   **1. *SECTION 11-103*:** Development in Areas subject to Flood Hazards.
   **2. *SECTION 11-104*:** Development in Areas subject to Geologic Hazards.

BLM_0054081

3.  ***SECTION 11-107****: Protection of Water Quality.*
4.  ***SECTION 12-105****: Water Supply.*
5.  ***SECTION 12-106****: Sewage Disposal/Wastewater Treatment.*
6.  ***SECTION 12-107****: Fire Protection.*
7.  ***SECTION 11-109****: D: Domestic Animal Controls*; and *Section 11-106:* F. 6.: *Domestic Animal Controls.*
8.  ***SECTION 13-107****: Installation of Solid Fuel-Burning Devices.*
9.  ***SECTION 13-114****: Exterior Lighting.*
10. *SECTION* ***13-106****: Energy and Resource Conservation.*

B.  **POSSIBLE ADDITIONAL INCENTIVES.** Notwithstanding any other requirements of this *Resolution,* the decision-making body may provide one or more of the following incentives for an Essential Housing Project or a residential or mixed-use development in which a minimum of 40 percent of the residences are Essential Housing, and, because of deed restriction, will remain Essential Housing:

1.  **REDUCED PARKING SPACE REQUIREMENTS**.  A reduction in the number of parking spaces required pursuant to *Section 13-110: Off-Road Parking and Loading,* depending upon location, bedroom mix, the availability of public transit and other pertinent factors.

2.  **REDUCTION  IN REQUIRED AMOUNT OF OPEN SPACE.** A reduction in the amount of open space required pursuant to *Section 13-108: Open Space and Recreation Areas*.

BLM_0054082

# ARTICLE 10:
# LOCATIONAL STANDARDS

## SECTION 10-101: PURPOSE

This Article establishes improvement standards that are intended to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights, to encourage development in areas closest to existing population centers, to foster growth that is orderly and reasonable in its rate and location, and is compatible with existing uses, and to promote the use of existing infrastructure.

## SECTION 10-102: LOCATIONAL STANDARDS FOR RESIDENTIAL DEVELOPMENT

A. **APPLICABILITY.** Any application for a new subdivision shall be subject to the requirements of this Section.

   1. **EXEMPTION FOR PARCELS PART OF AGRICULTURAL OPERATION**. A new subdivision on a parcel on which an agricultural operation is conducted  and that creates one new lot in addition to the existing parcel shall be exempt from the requirements of this Section except that subdivisions may not be obtained sequentially to avoid compliance with this Section. One such exemption per parcel shall be allowed every five years.

B. **LOCATIONAL STANDARDS.** In addition to all applicable standards of this *Resolution*, An application for a new subdivision shall initially be reviewed for its location relative to existing development and shall be located:

   1. **ADJACENT TO EXISTING POPULATION CENTER**. Adjacent to the established population centers of Somerset, Ohio City, Almont or Crested Butte South or the incorporated municipalities of Gunnison, Crested Butte, Mt. Crested Butte, Pitkin or Marble, or to a subdivision that is served by a central wastewater treatment system that was platted and approved pursuant to the requirements of the former *Gunnison County Land Use Resolution*.

   2. **WITHIN A MUNICIPAL THREE MILE PLAN AREA.** Within a municipal Three Mile Plan area.

3. **LOCATION  RESULTS IN NO SIGNIFICANT NET ADVERSE IMPACT TO THE NEIGHBORHOOD.** When the applicant has demonstrated that a proposed residential development cannot satisfy the locational standard, the location may be approved if the Board finds that in addition to meeting all of the applicable requirements of this *Resolution*, the cumulative impacts of the proposed development and existing development will result in no significant net adverse impact to neighborhood lands or land uses, wildlife, visual quality, air or water quality, including impacts caused by a proliferation of individual sewage disposal systems and/or individual water wells.

## SECTION 10-103: RESIDENTIAL DENSITY

A. **PURPOSE**. The purpose of this Section is to prevent sprawl and leapfrog development and to allow for flexibility in residential subdivision design.

B. **APPLICABILITY**. Any application for a proposed subdivision shall be subject to the requirements of this Section.

   1. **EXEMPTION FOR PARCELS PART OF AGRICULTURAL OPERATION**. A new subdivision on a parcel on which an agricultural operation is conducted  and that creates one new lot in addition to the existing parcel shall be exempt from the requirements of this Section except that subdivisions may not be obtained sequentially to avoid compliance with this Section. One such exemption per parcel shall be allowed every five years.

C. **PRIMARY RESIDENTIAL LOT SIZE AND DENSITY STANDARDS**. Residential lot sizes and density of a land use shall change shall initially be reviewed relative to existing development.

   1. **COMPLIANCE WITH MUNICIPAL THREE MILE PLAN AREA**.  When the proposal is for development located within a municipal three-mile plan area, the development proposal shall address how it comports with the objectives and policies of the applicable municipal three-mile plan.  The County shall consider how the proposed development has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the three-mile plan area. Where there is a conflict between the objectives or policies of a three-mile plan or the intergovernmental agreement, and County standards, County standards shall apply; and

BLM_0054083

2. **DETERMINATION OF DENSITY CONSIDERS SEWAGE DISPOSAL REQUIREMENTS**. Location, configuration, and the final maximum density of lots one acre or larger in a proposed development shall be determined subject to feasibility of use of individual sewage disposal systems pursuant to the *Gunnison County On-Site Wastewater Treatment System Regulations*. In no case shall any lots smaller than an acre be allowed in a new subdivision unless served by a central or regional wastewater treatment system, and

3. **LOT SIZE AND LOT DENSITY CONSIDERATIONS**. Unless exempted pursuant to *Section 10-103: B.1.: Exemption for Parcels on Agricultural Operation,* lot size and lot density shall be substantially similar to neighborhood parcels unless the standards of either (a) or (b) are met:

   a. **CONDITIONS ARE APPROPRIATE FOR SMALLER LOTS OR GREATER DENSITY**. The project shall be considered for smaller lots or greater density when all of the following four requirements are met:

      1. **DEVELOPMENT SERVED BY PUBLIC WASTEWATER TREATMENT SYSTEM.** The development is or will be served by a public wastewater treatment system, by approval of the subject application pursuant to *Section 12-106: Sewage Disposal/Wastewater Treatment.*

      2. **DEVELOPMENT SERVED BY OTHER SERVICES AND FACILITIES.** To the maximum extent feasible, the development is or will be served by a public water supply, public transportation and other public services and facilities by approval of the subject application.

      3. **COMPATIBLE WITH NEIGHBORHOOD**. The development is compatible with the neighborhood existing when the Land Use Change Permit application is submitted. Methods of ensuring compatibility may include, but are not limited to:

         a. **PERMANENT COVENANTS TO ENSURE CONTINUED COMPATIBILITY WITH NEIGHBORHOOD USES AND DENSITIES.** The proposed development includes permanent protective covenants that, at a minimum, address the following, to ensure that, if approved, it remains compatible with the neighborhood uses and densities that exist as of the date of approval of the Land Use Change Permit:

            1. **DESIGN STANDARDS**. Building exterior design standards.

            2. **LANDSCAPING**. Landscaping requirements.

            3. **OUTSIDE PARKING AND STORAGE**. Standards and limitations on outside parking and storage.

            4. **COMPATIBILITY OF USES**. Conditions pursuant to *Section 13-119: Standards to Ensure Compatible Uses.*

            5. **BUILDING SIZE**. Building size.

         b. **SITE LAYOUT AND DESIGN.** The proposed development shall locate buildings and lots to minimize to minimize visual impact.

      4. **IMPACT OF INCREASED DENSITY IS MITIGATED**. The decision-making body finds that impacts of the increased density have been reasonably mitigated; methods of mitigation may include, but are not limited to:

         a. **ADDITIONAL OPEN SPACE.** The amount of open space included in the proposed development exceeds the amount required by *Section 13-108: Open Space and Recreation Areas* by at least ten percent of the total land designated for residential uses within the development.

         b. **PROVISION OF ESSENTIAL RESIDENCES.** Provision of Essential Residences that equal at least ten percent of the total number of residences, in addition to any other applicable requirements of this *Resolution*.

         c. **CLUSTERING OF RESIDENCES**. Residences are clustered to minimize visual impact and impacts on wildlife habitats as depicted on Wildlife Habitat Maps.

         d. **PARTICIPATION IN PUBLIC TRANSPORTATION SYSTEM**. As applicable, provision of a bus stop or similar facility for use with an existing public transportation system.

   b. **CONDITIONS ARE APPROPRIATE FOR LARGER LOT SIZE OR LESSER DENSITY**. The decision-making body may deny a subdivision proposal that involves lot sizes that are substantially similar to the parcels in the neighborhood if one or more of the following conditions are met:

BLM_0054084

1. **LAND CHARACTERISTICS.** The density of the proposed development does not comply with the standards of Article 11: *Resource Protection Standards;* or

2. **PUBLIC WATER SUPPLY AND WASTEWATER TREATMENT ARE NOT AVAILABLE.** Public water supply and wastewater treatment systems are not available or the service providers are unwilling or unable to serve the proposed development; or

3. **EMERGENCY SERVICES ACCESS IS DIFFICULT.** Emergency services including fire, medical and law enforcement are not sufficiently close to the location of the development to provide timely response year-round, response is reasonably expected to be difficult because of access, terrain or weather conditions and require more than currently available equipment or personnel or response time to provide those services, or personnel would be exposed to undue risk; or

4. **SIGNIFICANT NET ADVERSE EFFECT WILL RESULT.** All impacts, including cumulative impacts when there is a reasonable probability that cumulative impacts of the proposed and existing developments will have a significant net adverse effect on neighborhood land and land uses, County or other infrastructure, public health, safety or welfare, or on the environment.

## SECTION 10-104: LOCATIONAL STANDARDS FOR COMMERCIAL, INDUSTRIAL AND OTHER NON-RESIDENTIAL DEVELOPMENT

A. **APPLICABILITY.** This Section shall apply to all proposed commercial, industrial and other non-residential land use changes except for the following:

1. **AGRICULTURAL OPERATIONS.** Agricultural operations, including farm or ranch stands.

2. **PUBLIC FACILITIES OR UTILITIES.** Essential public facilities including fire protection, emergency medical service or law enforcement facilities and utilities shall be exempt, if the decision-making body finds:

   a. **ESSENTIAL TO PUBLIC WELFARE.** That the proposed facilities or utilities are essential to public health, safety and welfare; and

   b. **ALTERNATIVE SITE UNAVAILABLE OR NOT SATISFACTORY.** That suitable alternative sites that meet the standards of this Section are not available, or would not provide a location adequate to provide the necessary services.

B. **PRIMARY LOCATIONAL STANDARD.** Proposed commercial, industrial and other non-residential development shall be reviewed for its location relative to existing development. In order of priority, this new growth should be located:

1. **ADJACENT TO INCORPORATED MUNICIPALITY.** A proposed commercial, industrial, or other non-residential development should be located adjacent to a municipal boundary on land that qualifies for annexation into the municipality by meeting the criteria of the *Colorado Municipal Annexation Act,* C.R.S. 31-12-101.

2. **CONSISTENT WITH A MUNICIPAL THREE MILE PLAN AREA.** When the proposal is for development located within a municipal three-mile plan area, the development proposal shall address how it comports with the objectives and policies of the applicable municipal three-mile plan. The County shall consider how the proposed development has addressed those objectives and policies, and any further intergovernmental agreement between the County and the municipal government regarding the three-mile plan area. Where there is a conflict between the objectives or policies of a three-mile plan or the intergovernmental agreement, and County standards, County standards shall apply.

C. **ALTERNATIVE LOCATIONAL STANDARDS.** When the applicant has demonstrated that a proposed commercial, light industrial, industrial or other non-residential development cannot satisfy the primary locational standard, the location may be approved if the Board finds that in addition to meeting all of the other applicable requirements of this *Resolution*, the cumulative impacts of the proposed development and existing development will result in no significant net adverse impact to neighborhood uses, wildlife, visual quality, air or water quality, and the proposed use complies with the following:

1. **LOCATIONAL CONSIDERATIONS.**

   a. **NECESSARY LOCATION.** The location is necessary because of specific circumstances including location of minerals, unique transportation needs or geologic conditions; or

   b. **NO SITE IS REASONABLY ATTAINABLE IN OR ADJACENT TO THE NEAREST MUNICIPALITY OR EXISTING PERMITTED BUSINESS OR INDUSTRIAL PARK.** There is no site reasonably attainable within or adjacent to the municipality or existing permitted businesses or industrial park nearest the proposed

BLM_0054085

development site, in an area that qualifies for annexation, or is consistent with a municipal Three Mile Plan area. Evaluation of suitability shall consider size of parcel needed, reasonable availability of necessary utilities and other infrastructure, and the applicant shall provide documentation of comparable sites. Economic feasibility or practicality of comparable sites may be considered, but shall not be the deciding factor in determining suitability; or

    **c.** **LOCATION WELL-SUITED TO SPECIFIC USE**. The proposed location is particularly well-suited for the specific use (recreational facilities, including dude ranches or resorts); provided, however, that location in a high traffic area or on a highway artery shall not, in and of itself, qualify a proposed commercial development for approval; or

    **d.** **NEED OR USE IS WELL-SUITED IN A PARTICULAR AREA.** There is a documented need for the specific use in the proposed location; or

    **e.** **USE IS DESIGNED TO SERVE A SPECIFIC RESIDENTIAL AREA.** The development will be located and designed primarily to serve an integral part of a specific residential area or development, and shall provide services that are reasonably likely to reduce vehicle trips between the residential area and population centers.

**2.** **COMPATIBLE WITH EXISTING USES ESTABLISHED IN IMPACT AREA.** The proposed use is compatible with uses established in the impact area.

**3.** **NO SIGNIFICANT NET ADVERSE EFFECT**. There will be no significant net adverse effect, including cumulative impacts when there is a reasonable probability that there are cumulative impacts, of the proposed and existing developments on adjacent land uses, County or other infrastructure, or public health, safety or welfare, or the environment.

BLM_0054086

# ARTICLE 11:
# RESOURCE PROTECTION STANDARDS

## SECTION 11-101: PURPOSES

This Article establishes standards to protect the natural resources, wildlife habitat, and agricultural lands of Gunnison County, and to ensure that proposed land use changes avoid, or mitigate the hazards from natural areas that could pose threats to persons and to property. It is designed to achieve the maximum protection of areas that are environmentally sensitive or that provide sensitive wildlife habitat, whether because of the nature, quality, or location of certain natural features. It is also designed to preserve the natural landscape and unique and visually significant land forms (including mountain peaks, ridgelines, hillsides, buttes, and foreground areas including irrigated meadows), and to protect significant or unusual areas of water-land interface (scenic or sensitive stretches of shore, river, and streams, natural springs, wetlands, or other riparian areas), and aquifer recharge areas. The protection of these areas may be achieved by avoiding development in these areas whenever possible, minimizing unavoidable adverse development, and mitigating the impacts of development to the maximum extent feasible.

## SECTION 11-102: VOLUNTARY BEST MANAGEMENT PRACTICES

Unless otherwise expressly required by this *Resolution*, applicants are encouraged to utilize best management practices voluntarily.

**A. PURPOSES.** By utilizing best management practices in its own Projects, and recommending their use in addition to specifying standards and requirements for land use changes, Gunnison County seeks to achieve the following:

1. **IMPROVE WATER QUALITY.** Improve water quality by preventing excessive soil and water loss; prevent sediment and soil-borne pollutants from entering surface water.

2. **PRODUCE OPTIMUM VEGETATION.** Produce plant species appropriate for the ecological site and land use for grazing and browsing animals on grazing land or land converted to grazing land from other uses.

3. **REDUCE SEDIMENT LOADS.** Reduce sediment loads causing downstream damages and pollution.

4. **IMPROVE STREAM QUALITY.** Improve streams for recreation or as a habitat for fish and/or wildlife.

5. **CONTROL UNNATURAL CHANNEL MEANDER.** Control unnatural channel meander that may adversely affect the channel, on-site, upstream, and downstream facilities.

6. **PREVENT LOSS AND DAMAGE.** Prevent the loss of land or damage to utilities, roads, structures, or other facilities adjacent to the channel banks.

7. **MINIMIZE HUMAN IMPACT.** Minimize impacts of human activities in riparian, sensitive and wet areas.

8. **MINIMIZE SOIL EROSION.** Minimize soil erosion and loss of plant nutrients. Maintain mulch and other materials necessary to reduce erosion and sedimentation; rehabilitate areas where an unacceptable level of erosion and/or stream/lake sedimentation is already occurring.

9. **CONTROL WATER LOSS.** Control undesirable water loss either through runoff or leaching, and improve water use efficiency.

10. **IMPROVE WILDLIFE HABITAT.** Maintain or improve habitat conditions for fish and wildlife; restore and maintain fisheries that have been damaged or destroyed by sedimentation.

11. **IMPROVE SOIL QUALITY.** Improve or maintain good physical, chemical and biological conditions of the soil.

12. **MAINTAIN QUALITY OF SENSITIVE AREAS.** Maintain or improve the quality and integrity of sensitive areas including research, natural, scenic, and unstable geologic areas.

**B. TECHNIQUES AND GUIDELINES.** Practices that can help to achieve these purposes and shall be considered by the County to contribute to the mitigation of impacts may include:

1. **BUFFER STRIPS.** The inclusion and maintenance of buffer strips is desirable between water bodies and residential, commercial or industrial development and livestock grazing, for wildlife migration corridors and water quality.

BLM_0054087

2. **STREAM PROTECTION.** Stream bank protection and stream channel stabilization and stabilization of critically eroding areas.

3. **NUTRIENT APPLICATION.** Application of nutrients based on vegetation needs, and considering cumulatively the impacts of sources of nutrients (including commercial fertilizer, manure or sludge, irrigation water, composted products), and the areas to which they are applied. Limit potential impacts by:

    a. **ELIMINATING OVER-APPLICATION.** Minimize availability of nutrients for transport by eliminating over-application.

    b. **REDUCE NUTRIENT LOADING.** Reduce nutrient loading to surface and ground water.

    c. **MINIMIZING IMPACTS OF ANIMAL WASTE.** Handling animal waste in a manner that minimizes impacts or potential impacts to surface or ground water, including issues including collection, storage and land application.

4. **USE OF PESTICIDES.** Using a chemical whose intended effect is no greater than that necessary to eliminate pests on a Project site, using the minimum effective rate, and timing the application for the targeted pest.

C. **RESOURCES.** Gunnison County encourages applicants for Land Use Change Permits to seek assistance and specific information about how to integrate BMP's into Project design from the following:

1. **USDA.** USDA Natural Resources Conservation Service Field Office's *Technical Guide.*

2. **CSU.** Colorado State University Cooperative Extension, including the guide, *Best Management Practices for Colorado Agriculture.*

3. **TIMBER INDUSTRY.** Colorado Timber Industry Association's *Silviculture BMP's.*

4. **COLORADO STATE FOREST SERVICE**. Colorado State Forest Service technical references.

5. **USFS.** U.S. Forest Service's *Watershed Conservation Practices Handbook* and other technical references.

6. **USDI.** USDI Bureau of Land Management technical references.

7. **MOUNTAIN DRIVEWAY BEST MANAGEMENT PRACTICES.** The Colorado Nonpoint Source Council's *Mountain Driveway Best Management Practices Manual.*

8. **WESTERN STATE COLLEGE OF COLORADO**. Western State College of Colorado in Gunnison.

9. **U.S. ARMY CORPS OF ENGINEERS.** The U.S. Army Corps of Engineers.

10. **GUNNISON COUNTY COMMUNITY DEVELOPMENT DEPARTMENT**. The Gunnison County Community Development Department.

## SECTION 11-103: DEVELOPMENT IN AREAS SUBJECT TO FLOOD HAZARDS

A. **PURPOSES**. This Section establishes regulations to prevent the imprudent use and occupation of flood hazard areas and to minimize the threat of flooding to human life and property. This Section addresses development within areas subject to flood hazards that are depicted on the most recent Federal Emergency Management Agency (FEMA) Flood Insurance Rate Maps, National Flood Insurance Program and areas that are identified by survey, documented site specific observation, or engineering study as being areas subject to flood hazards, within the 100-year floodplain. Specifically, this Section establishes development standards that are intended:

1. **TO REDUCE FLOOD HAZARDS.** To reduce the hazard of floods to life and property by:

    a. **PROHIBITING USES HAZARDOUS TO LIFE.** Prohibiting certain uses that are hazardous to life or property in time of flood from locating in the floodplain;

    b. **RESTRICTING USES HAZARDOUS TO HEALTH.** Restricting the development of certain uses in the floodplain that are hazardous to public health in time of flood;

    c. **RESTRICTING USES SUSCEPTIBLE TO FLOOD DAMAGE.** Restricting the development of certain uses in the floodplain that are especially susceptible to flood damage, so as to alleviate hardship and eliminate demands for public expenditures for relief and protection;

    d. **REQUIRING PERMITTED USES TO BE FLOOD PROOFED.** Require permitted floodplain uses, including public facilities that serve such uses, to be protected against floods by requiring flood proofing and general flood protection at the time of initial construction.

BLM_0054088