| BLM CODES | San Miguel EEAs Alt B | San Miguel EEAs Alt D | WSR San Miguel River Segment 1 Alt A | WSR Alt B | WSR Alt C | WSR Alt D | San Miguel SMRA Segment (Zone 1) Alt B | SMRA Alt D | San Miguel EXISTING ACEC Alt A | EXISTING ACEC Alt C | EXISTING ACEC Alt D | EXPANSION (big) ACEC Alt B | EXPANSION (river parts) ACEC Alt B | EXPANSION (3 sliver parts) ACEC Alt B | Fluid Minerals Alt A | Fluid Alt B | Fluid Alt C | Fluid Alt D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | 7 | | | | | | 7 | 7 | 14 | | 7 | 7 | 7 | 7 | | | | |
| AVOID | | AVOID | AVOID | AVOID | AVOID | | AVOID | | | | | AVOID | | | | | | |
| BSC | | | | | | | | | | | | | | | | | | |
| CAMPFIRE | | | | | | | | | | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | | | | |
| CAMPSITE | | | | | | | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | | | | |
| COAL | | | | | | COAL | COAL | COAL | | | COAL | COAL | COAL | COAL | | | | |
| COMPETE1 | | | | | | | | | | | | | | | | | | |
| COMPETE2 | | | | | | | COMPETE2 | | | | | | | | | | | |
| COMPETE3 | | | | | | | | COMPETE3 | | | | | | | | | | |
| CSU | | CSU | CSU | CSU | CSU | CSU | | | | CSU | | | | | CSU | | CSU | |
| CWOD | | | | | | | | | | | CWOD | CWOD | CWOD | CWOD | | | | |
| DAY | | | | | | | | | | | | | | | | | | |
| DES | | | | | | | DES | DES | DES | DES | DES | DES | DES | DES | | | | |
| DR_TIMING | DR_TIMING | | | | | | | | | | | | | | | | | |
| EXCL | | | | | | | | | EXCL | | | EXCL | | | | | | |
| FAC | | | | | | | | | | | | | | | | | | |
| FORAGE | | | | | | | | | | FORAGE | | | | | | | | |
| HYDROA | | HYDROA | | | | | | | | HYDROA | | | | | | | | |
| HYDROE | HYDROE | | HYDROE* | HYDROE* | HYDROE* | HYDROE* | | | | | HYDROE | HYDROE | HYDROE | HYDROE | | | | |
| LOCATE | | | | | | | LOCATE | | | | LOCATE | LOCATE | LOCATE | LOCATE | | | | |
| MM | | | | | | | | | | | | | | | | | | |
| MOT | | | | | | | | | | | | | | | | | | |
| NGD | | | | | | | | | | | | | | | | | | |
| NL | | | | | | | NL | | | | | NL | NL | NL | NL | | | |
| NSO | NSO | ** | | | | ** | | NSO | | | NSO | | | | | | | NSO |
| OPEN | | | | | | | | | | | | | | | | | | |
| RANGE | | | | | | | | | | | | RANGE | RANGE | RANGE | | | | |
| RECMINE | | | | | | | | | | | | RECMINE | RECMINE | RECMINE | | | | |
| RIVER | | | | | | | | | | | | | | | | | | |
| ROCK | | | | | | | | | | | | | | | | | | |
| SALABLE | | | | | | SALABLE | SALABLE | | SALABLE | | SALABLE | SALABLE | SALABLE | SALABLE | | | | |
| SEED | | | | | | | | | | | SEED | SEED | SEED | SEED | | | | |
| SHEEP | | | | | | | | | | | | | | | | | | |
| SOLARA | | SOLARA | | | | | | | | SOLARA | | | | | | | | |
| SOLARE | SOLARE | | SOLARE* | SOLARE* | SOLARE* | SOLARE* | | | | | SOLARE | SOLARE | SOLARE | SOLARE | | | | |
| SOLID | | | | | | SOLID | SOLID | SOLID | | | SOLID | SOLID | SOLID | SOLID | | | | |
| SRPs | | | | | | | | | | | | | | | | | | |
| SSR | SSR | SSR | SSR | SSR | SSR | SSR | | | | | | SSR | SSR | SSR | | | | |
| TAR | | | | | | | TAR | TAR | | | TAR | TAR | TAR | TAR | | | | |
| TL | | | | | | | | | | | | | | | | | | |
| V-1 | | | | | | | | | | | | | | | | | | |
| V-2 | | | | | | V-2 | | | V-2 | | | | | | | | | |
| V-3 | | | V-3 | V-3 | V-3 | | V-3 | V-3 | | V-3 | V-3 | V-3 | V-3 | V-3 | | | | |
| V-4 | | | | | | | | | | | | | | | | | | |
| WINDA | | | | | | | | | | WINDA | | | | | | | | |
| WINDE | WINDE | | WINDE* | WINDE* | WINDE* | WINDE* | | | | | WINDE | WINDE | WINDE | WINDE | | | | |
| WOOD | WOOD | | | | | | WOOD | WOOD | WOOD | | WOOD | WOOD | WOOD | WOOD | | | | |

\* occurs for BLM surface but not private/USFS surface

\*\* mapped as NSO in fluid minerals Alt D shapefile

BLM_0076701

| BLM CODES | WSR Beaver Creek Stipulations [BLM surface portion overlaps existing San Miguel River ACEC] — Alt B | Alt D | San Miguel SMRA Stipulations Beaver Creek River Segment (Zone 2) (includes BLM lands within... — Alt B | Alt D | San Miguel Enhanced Ecological Areas (EEAs) [overlaps some of existing San Miguel River ACEC and some of... — Alt B | Alt D | San Miguel SMRA Stipulations San Miguel River Segment (Zone 1) (includes BLM lands within existingSan... — Alt B | Alt D | San Miguel EXISTING ACEC Stipulations — Alt A | Alt C | Alt D | NSION(big) A... — Alt B | San Miguel EXPANSION (river parts) ACEC Stipulation — Alt B | San Miguel EXPANSION (3 sliver parts) ACEC Stipulation — Alt B | Fluid Minerals — Alt A | Alt B | Alt C | Alt D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 |  |  | 7 | 7 |  |  | 7 | 7 | 14 |  | 7 | 7 | 7 | 7 |  |  |  |  |
| AVOID | AVOID |  | AVOID | AVOID |  | AVOID | AVOID |  |  |  |  |  |  |  |  |  |  |  |
| BSC |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| CAMPFIRE |  |  |  |  |  |  |  |  |  | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE |  |  |  |  |
| CAMPSITE |  |  | CAMPSITE | CAMPSITE |  |  | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE |  |  |  |  |
| COAL |  | COAL | COAL | COAL |  |  | COAL | COAL |  |  | COAL | COAL | COAL | COAL |  |  |  |  |
| COMPETE1 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| COMPETE2 |  |  | COMPETE2 | COMPETE2 |  |  | COMPETE2 |  |  |  |  |  |  |  |  |  |  |  |
| COMPETE3 |  |  |  |  |  |  |  | COMPETE3 |  |  |  |  |  |  |  |  |  |  |
| CSU | CSU | CSU |  |  |  | CSU |  |  |  | CSU |  |  |  |  | CSU |  | CSU |  |
| CWOD |  |  |  |  |  |  |  |  |  |  | CWOD | CWOD | CWOD | CWOD |  |  |  |  |
| DAY |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| DES |  | DES |  |  |  |  | DES | DES | DES | DES | DES | DES | DES | DES |  |  |  |  |
| DR_TIMING |  |  |  |  | DR_TIMING |  |  |  |  |  |  |  |  |  |  |  |  |  |
| EXCL |  |  |  |  |  |  |  |  | EXCL |  |  | EXCL |  |  |  |  |  |  |
| FAC |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| FORAGE |  |  |  |  |  |  |  |  |  | FORAGE |  |  |  |  |  |  |  |  |
| HYDROA |  |  |  |  |  | HYDROA |  |  |  | HYDROA |  |  |  |  |  |  |  |  |
| HYDROE |  | HYDROE* |  |  | HYDROE |  |  |  |  |  | HYDROE | HYDROE | HYDROE | HYDROE |  |  |  |  |
| LOCATE |  |  | LOCATE |  |  |  | LOCATE |  |  |  | LOCATE | LOCATE | LOCATE | LOCATE |  |  |  |  |
| MM |  |  | MM |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| MOT |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| NGD |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| NL |  |  | NL |  |  |  | NL |  |  |  |  | NL | NL | NL |  | NL |  |  |
| NSO |  | ** |  | NSO | NSO |  |  | NSO |  |  | NSO |  |  |  |  |  |  | NSO |
| OPEN |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| RANGE |  |  |  |  |  |  |  |  |  |  |  | RANGE | RANGE | RANGE |  |  |  |  |
| RECMINE |  |  |  |  |  |  |  |  |  |  |  | RECMINE | RECMINE | RECMINE |  |  |  |  |
| RIVER |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| ROCK |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| SALABLE |  | SALABLE | SALABLE | SALABLE |  |  | SALABLE |  | SALABLE |  | SALABLE | SALABLE | SALABLE | SALABLE |  |  |  |  |
| SEED |  |  |  |  |  |  |  |  |  |  | SEED | SEED | SEED | SEED |  |  |  |  |
| SHEEP |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| SOLARA |  |  |  |  |  | SOLARA |  |  |  | SOLARA |  |  |  |  |  |  |  |  |
| SOLARE |  | SOLARE* |  |  | SOLARE |  |  |  |  |  | SOLARE | SOLARE | SOLARE | SOLARE |  |  |  |  |
| SOLID |  | SOLID | SOLID |  |  |  | SOLID | SOLID |  |  | SOLID | SOLID | SOLID | SOLID |  |  |  |  |
| SRPs |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| SSR | SSR | SSR |  |  | SSR | SSR |  |  |  |  |  | SSR | SSR | SSR |  |  |  |  |
| TAR |  |  | TAR | TAR |  |  | TAR | TAR |  |  | TAR | TAR | TAR | TAR |  |  |  |  |
| TL |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| V-1 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| V-2 | V-2 | *** | V-2 |  |  |  |  |  | V-2 |  |  |  |  |  |  |  |  |  |
| V-3 |  |  |  | V-3 |  |  | V-3 | V-3 |  | V-3 | V-3 | V-3 | V-3 | V-3 |  |  |  |  |
| V-4 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| WINDA |  |  |  |  |  | WINDA |  |  |  | WINDA |  |  |  |  |  |  |  |  |
| WINDE |  | WINDE* |  |  | WINDE |  |  |  |  |  | WINDE | WINDE | WINDE | WINDE |  |  |  |  |
| WOOD |  |  | WOOD | WOOD | WOOD |  | WOOD | WOOD | WOOD |  | WOOD | WOOD | WOOD | WOOD |  |  |  |  |

* occurs for BLM surface but not private/USFS surface

** mapped as NSO in fluid minerals Alt D shapefile

| BLM CODES | WSR Saltado Creek Stipulations [BLM surface portion overlaps existing San Miguel River ACEC] | | | | San Miguel SMRA Stipulations Saltado Creek River Segment (Zone 2) (includes BLM lands within existing San Miguel ACEC and Expansion of... | | San Miguel Enhanced Ecological Areas (EEAs) [overlaps some of existing San Miguel River ACEC and some of WSR but not all] | | San Miguel EXISTING ACEC Stipulations | | | ...NSION(big) A | San Miguel EXPANSION (river parts) ACEC Stipulation | San Miguel EXPANSION (3 sliver parts) ACEC Stipulation | Fluid Minerals | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Alt A | Alt B | Alt C | Alt D | Alt A | Alt D | Alt B | Alt D | Alt A | Alt C | Alt D | Alt B | Alt B | Alt B | Alt A | Alt B | Alt C | Alt D |
| 7 | | | | | 7 | 7 | | | 14 | | 7 | 7 | 7 | 7 | | | | |
| AVOID | | | | | AVOID | AVOID | | AVOID | | | | | | | | | | |
| BSC | | | | | | | | | | | | | | | | | | |
| CAMPFIRE | | | | | | | | | | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | | | | |
| CAMPSITE | | | | | CAMPSITE | CAMPSITE | | | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | | | | |
| COAL | COAL | COAL | COAL | COAL | COAL | | | | | | COAL | COAL | COAL | COAL | | | | |
| COMPETE1 | | | | | | | | | | | | | | | | | | |
| COMPETE2 | | | | | COMPETE2 | COMPETE2 | | | | | | | | | | | | |
| COMPETE3 | | | | | | | | | | | | | | | | | | |
| CSU | | | | | | | | CSU | CSU | | | | | | CSU | | CSU | |
| CWOD | | | | | | | | | | | CWOD | CWOD | CWOD | CWOD | | | | |
| DAY | | | | | | | | | | | | | | | | | | |
| DES | | | | | | | | | DES | DES | DES | DES | DES | DES | | | | |
| DR_TIMING | | | | | | | DR_TIMING | | | | | | | | | | | |
| EXCL | EXCEL | EXCEL | EXCEL | EXCEL | | | | | EXCL | | | EXCL | | | | | | |
| FAC | | | | | | | | | | | | | | | | | | |
| FORAGE | | | | | | | | | | FORAGE | | | | | | | | |
| HYDROA | | | | | | | | HYDROA | | HYDROA | | | | | | | | |
| HYDROE | HYDROE* | HYDROE* | HYDROE* | HYDROE* | | | HYDROE | | | | HYDROE | HYDROE | HYDROE | HYDROE | | | | |
| LOCATE | LOCATE | LOCATE | LOCATE | LOCATE* | LOCATE | | | | | | LOCATE | LOCATE | LOCATE | LOCATE | | | | |
| MM | | | | | MM | MM | | | | | | | | | | | | |
| MOT | | | | | | | | | | | | | | | | | | |
| NGD | NGD | NGD | NGD | | | | | | | | | | | | | | | |
| NL | | | | | NL | | | | | | | NL | NL | NL | | NL | | |
| NSO | NSO | NSO | NSO | NSO | | NSO | NSO | | | NSO | | | | | | | | NSO |
| OPEN | | | | | | | | | | | | | | | | | | |
| RANGE | | | | | | | | | | | | RANGE | RANGE | RANGE | | | | |
| RECMINE | | | | | | | | | | | | RECMINE | RECMINE | RECMINE | | | | |
| RIVER | | | | | | | | | | | | | | | | | | |
| ROCK | | | | | | | | | | | | | | | | | | |
| SALABLE | SALABLE | SALABLE | SALABLE | SALABLE | SALABLE | | | | SALABLE | | SALABLE | SALABLE | SALABLE | SALABLE | | | | |
| SEED | | | | | | | | | | | SEED | SEED | SEED | SEED | | | | |
| SHEEP | | | | | | | | | | | | | | | | | | |
| SOLARA | | | | | | | | SOLARA | | SOLARA | | | | | | | | |
| SOLARE | SOLARE* | SOLARE* | SOLARE* | SOLARE* | | | SOLARE | | | | SOLARE | SOLARE | SOLARE | SOLARE | | | | |
| SOLID | SOLID | SOLID | SOLID | SOLID | SOLID | SOLID | | | | | SOLID | SOLID | SOLID | SOLID | | | | |
| SRPs | | | | | | | | | | | | | | | | | | |
| SSR | | | | SSR | | | SSR | SSR | | | | SSR | SSR | SSR | | | | |
| TAR | | | | | TAR | TAR | | | | | TAR | TAR | TAR | TAR | | | | |
| TL | | | | | | | | | | | | | | | | | | |
| V-1 | V-1 | V-1 | V-1 | | | | | | | | | | | | | | | |
| V-2 | | | | V-2 | V-2 | | | | V-2 | | | | | | | | | |
| V-3 | | | | | | | | | | V-3 | V-3 | V-3 | V-3 | V-3 | | | | |
| V-4 | | | | | | | | | | | | | | | | | | |
| WINDA | | | | | | | | WINDA | | WINDA | | | | | | | | |
| WINDE | WINDE* | WINDE* | WINDE* | WINDE* | | | WINDE | | | | WINDE | WINDE | WINDE | WINDE | | | | |
| WOOD | | | | | WOOD | WOOD | WOOD | | WOOD | | WOOD | WOOD | WOOD | WOOD | | | | |

* occurs for BLM surf* occurs for BLM surface but not private surface

** mapped as NSO In fluid minerals Alt D shapefile

BLM_0076703

# SAN MIGUEL COUNTY
## BOARD OF COMMISSIONERS

ART GOODTIMES          AMY LEVEK          JOAN MAY

January 9, 2017

**VIA EMAIL:  gusg_amend@blm.gov**

Gunnison Sage-grouse EIS
Colorado State Office
BLM
2850 Youngfield St.
Lakewood, CO 80215

**Re: Comments by the San Miguel County, Colorado Board of County Commissioners regarding the Gunnison Sage-Grouse Rangewide Draft Resource Management Amendment/Draft EIS ("GuSG DRMPa"); 81 Fed. Reg. 53503 (August 12, 2016)**

Dear Responsible Officials,

The Board of County Commissioners (hereafter, "BOCC") of San Miguel County, Colorado (hereafter, "SMC") appreciates the opportunity to provide comments on the Gunnison Sage-Grouse Rangewide Draft Resource Management Plan Amendment/Draft EIS ("GuSG DRMPa")[1], which is an important document that could amend 11 existing Resource Management Plans that guide management of lands and minerals by the Bureau of Land Management (BLM) within 10 Colorado counties and 2 Utah counties.

This comment document will utilize the common abbreviations and acronyms contained in the GuSG DRMPa[2] unless otherwise stated in this document.  We have attached this portion of the GuSG DRMPa to this document as Attachment A.

San Miguel County has the responsibility of ensuring health, safety, and welfare, including environmental health within the County.  Watershed health, soil health, and protection of wildlife habitat are very important to San Miguel County.  SMC BOCC has collaborated, cooperated, and coordinated with federal land agencies on federal land planning and projects.  Sixty percent of the land in San Miguel County is federal public land, with another 4% being owned by the State of Colorado.  Only 36% of San Miguel County consists of private land.  70.6 % of San Miguel County is a federal mineral estate.  Public lands administered by the Bureau of Land Management (BLM) in San Miguel County are administered by two different field offices:  Tres Rios Field Office (TRFO) and Uncompahgre Field Office (UFO).

---

[1] https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf

[2] https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf ; pages 31-33

1

BLM_0076704

In November 2014, the U.S. Fish and Wildlife Service (FWS) published in the Federal Register[3], the final rule of the listing of the Gunnison Sage-grouse (GuSG) as a Threatened species. This final listing rule states that of the 7 Gunnison Sage-grouse populations, the San Miguel Basin and Pinon Mesa are the largest, with approximately 206 birds and 182 birds respectively, counted in 2014. It also states, "The Population estimates from 1996 to 2014 are less than 50 percent of the population target of 450 Gunnison sage-grouse (based on a 10-year average) for the San Miguel Basin, as set forth by the RCP (CPW 2013a, p. 12; GSRSC 2005, p. 296)." Six subpopulations within the San Miguel Basin are described along with their general habitat conditions.

**Federal Register** / Vol. 79, No. 224 / Thursday, November 20, 2014 / Rules and Regulations   **69195**

TABLE 1—PERCENT SURFACE OWNERSHIP OF GUNNISON SAGE-GROUSE OCCUPIED [a] HABITAT

[GSRSC [b] 2005, pp. D–3–D–6; CDOW [c] 2009a, p. 1; CPW 2013e, spatial data]

| Population | Hectares | Acres | Gunnison sage-grouse occupied habitat management and ownership | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | BLM [d] | NPS [e] | USFS [f] | CPW | CO SLB [g] | State of UT | Private |
| | | | % | % | % | % | % | % | % |
| Gunnison Basin | 239,641 | 592,168 | 51 | 2 | 14 | 2 | <1 | 0 | [i]30 |
| San Miguel Basin | 41,177 | 101,750 | 9 35 | 0 | 1 | 11 | 9 3 | 0 | [h]49 |
| Monticello-Dove Creek (Combined) | 45,544 | 112,543 | 7 | 0 | 0 | 3 | 0 | <1 | 90 |
| Dove Creek | 16,949 | 41,881 | 13 | 0 | 0 | 6 | 0 | 0 | 82 |
| Monticello | 28,595 | 70,661 | 5 | 0 | 0 | 0 | 0 | 1 | 94 |
| Pinon Mesa | 18,080 | 44,678 | 28 | 0 | 2 | 0 | 0 | 0 | 70 |
| Cerro Summit-Cimarron-Sims Mesa | 15,039 | 37,161 | 13 | <1 | 0 | 11 | 0 | 0 | 76 |
| Crawford | 14,170 | 35,015 | 63 | 12 | 0 | 0 | 0 | 0 | 24 |
| Poncha Pass | 11,229 | 27,747 | 48 | 0 | 20 | 0 | 4 | 0 | 28 |
| Rangewide | 384,880 | 951,061 | 42 | 2 | 10 | 3 | <1 | <1 | 43 |

[a] Occupied Gunnison sage-grouse habitat is defined as areas of suitable habitat known to be used by Gunnison sage-grouse within the last 10 years from the date of mapping, and areas of suitable habitat contiguous with areas of known use, which have no barriers to grouse movement from known use areas (GSRSC 2005, p. 54; CPW 2013e, spatial data).
[b] Gunnison Sage-grouse Rangewide Steering Committee.
[c] Colorado Parks and Wildlife.
[d] Bureau of Land Management.
[e] National Park Service.
[f] United States Forest Service.
[g] State Land Board.
[h] Estimates reported in San Miguel Basin Gunnison Sage-grouse Conservation Plan (San Miguel Basin Gunnison Sage-grouse Working Group (SMBGSWG) 2009, p. 28) vary by 2 percent in these categories from those reported here. We consider these differences insignificant.
[i] Includes approximately 12,000 ac of land on Pinecrest Ranch, west of Gunnison, Colorado. This is restricted fee status land held in private ownership by the Ute Mountain Ute Tribe.

Figure 1: USFWS listing rule table, above, published in the Federal Register[4], showing that 35% of the San Miguel Basin population occupied habitat is within surface estate managed by the BLM, 1% by the USFS, 11% by Colorado Parks and Wildlife (CPW), 3% by Colorado State Land Board (SLB) and 49% is private surface estate. Color added.

In comparison, the GuSG DRMPa states that the 2015 San Miguel Basin population was estimated at 289 birds. [5]

Approximately 92% of all of the occupied habitat for the San Miguel Basin population is within San Miguel County, along with all of the San Miguel Basin population leks. San Miguel County contains

[3] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GUSGFinalListingRule_11202014.pdf
[4] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GUSGFinalListingRule_11202014.pdf
[5] https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf ; page 3-29

BLM_0076705

approximately 1,250 acres of occupied habitat and 51,400 acres of unoccupied habitat for the Monticello-Dove Creek population and 94,000 acres of occupied habitat and 22,000 acres of unoccupied habitat for the San Miguel Basin population.

San Miguel County Land Heritage Program has helped procure conservation easements on over 12,000 acres of private land in San Miguel County, as referenced within the Gunnison Sage-grouse Permanent Conservation Easements on Private Lands report, attached to this document as Attachment B (pages 21-26).  Over 6,900 of these conserved acres are in occupied GuSG habitat, which is approximately 25% of the GuSG occupied habitat occurring on private land within the San Miguel Basin.  Nearly 1,500 acres of these conservation easements are on unoccupied habitat, which is approximately 7% of the private land having unoccupied habitat within the San Miguel Basin.

The BLM manages approximately 68 acres of occupied and 24,500 acres of the unoccupied habitat of the Monticello-Dove Creek population within San Miguel County.  The BLM manages about 28,570 acres of occupied habitat and no unoccupied habitat of the San Miguel Basin population in San Miguel County.  Of the occupied and unoccupied habitat for the Monticello-Dove Creek population within San Miguel County, 79% of the occupied habitat and 62% of the unoccupied habitat has federal mineral estate administered by the BLM.  Of the occupied habitat and unoccupied habitat for the San Miguel Basin population within San Miguel County, 63% of the occupied habitat and 76% of the unoccupied habit has federal mineral estate managed by the BLM.

The amount of critical habitat, which includes occupied habitat, unoccupied habitat, and lands providing lek-buffers, under BLM surface and/or subsurface management, illustrates that the BLM GuSG DRMPa is vital to achieving appropriate habitat protection.  Improvements to habitat quality and connectivity by BLM and other partners is critical to the conservation and protection of this species within the San Miguel Basin subpopulation.  While it may not be vital to amend all existing RMPs (perhaps, such as the Gunnison RMP which follows the Candidate Conservation Agreement (CCA)), San Miguel County strongly believes that the two RMPs that guide the management of the San Miguel Basin population and the northern portion of the Dove Creek-Monticello population habitat that extends into southwestern San Miguel County should be aligned.  This is complicated by the fact that the Uncompahgre Field Office (UFO) draft Resource Management Plan may not be finalized prior to this GuSG DRMPa and thus would not be amended by the final version of this document.  The BLM should ensure consistent goals, objectives, and actions affecting GuSG habitat and within San Miguel County regardless of the dates of RMP decisions.

San Miguel County is very concerned about the future health and protection of the Gunnison Sage-grouse and its habitat.  San Miguel County has assisted in the protection of thousands of acres of private lands with important wildlife habitat values, especially Gunnison Sage-grouse (GuSG) critical habitat, during the last few decades by participating in the acquisition of conservation easements intended to preserve and protect GuSG habitat.  San Miguel County has financially contributed between $1.4 and $1.6 million during this period for GuSG habitat conservation and improvements through the County's Land Heritage Program, co-funding of the San Miguel Basin Gunnison Sage-grouse Working Group and funding of other actions intended to provide direct benefits to GuSG recovery and resilience.  SMC continues to actively participate with the stakeholder group that developed the Gunnison Sage-grouse Rangewide Conservation Plan.

San Miguel County commissioned "A Natural Heritage Assessment San Miguel and Western Montrose Counties, Colorado," prepared by the Colorado Natural Heritage Program in 2000, which

BLM_0076706

identified several areas having high biodiversity as Potential Conservation Areas (PCAs). [6] Citizens of San Miguel County have long recognized the need to plan for the conservation of plants and animals that are native to the San Miguel And Dolores River Basins and have demonstrated their desire to protect their significant natural heritage and natural resources by organizing the San Miguel Watershed Coalition, San Miguel Conservation Foundation, San Miguel County Open Space Commission, San Miguel County Land Heritage Program, and providing co-funding of collaborative groups such as prior mentioned Gunnison Sage-grouse Working Group, as well as Public Lands Partnership.

In addition, San Miguel County elected officials, staff, and liaisons regularly and vigorously participates in public lands planning processes, including the Spruce Beetle Epidemic and Aspen Decline Management Response (SBEADMR) project; BLM Gunnison Sage-grouse Resource Management Plan Amendment process; Uncompahgre Collaborative Forest Restoration project; Alpine Ranger coalition; and others.

San Miguel County also participated in the Tres Rios Field Office (TRFO) Resource Management Plan process, including the ACEC nominating process, and is awaiting the correction of the Tres Rios RMP oversight that failed to analyze 15 areas that met both relevance and importance criteria for designation as ACECs. [7,8] Similar to the Gunnison Sage-grouse Resource Management Plan Amendment process, the decision process on these potential ACECs within the Tres Rios Field Office area is on-going.  San Miguel County has vigorously participated in the ongoing Uncompahgre Field Office (UFO) planning process.

On November 12, 2014, the U.S. Fish and Wildlife Service (USFWS) announced that it determined that the Gunnison Sage-grouse, a ground-dwelling bird found only in southwestern Colorado and southeastern Utah, required the protection of the Endangered Species Act (ESA) as a threatened species.  The USFWS originally proposed to list the species as 'endangered' under the ESA in January 2013, but efforts by the two states, tribes, local communities, private landowners and other stakeholders to conserve the species and its habitat were found to have helped reduce the threats to the bird sufficiently to give it the more flexibly protected status of 'threatened.' [9]

The supporting EIS for the Threatened Status designation of the Gunnison Sage-grouse[10] and for the Designation of Critical Habitat for the Gunnison Sage-grouse[11] is dated November 9, 2014.

These designations prompted a process for the BLM to prepare a draft Gunnison Rangewide Plan Amendment that would potentially result in multiple resource plan amendments (GuSG DRMPa) and a companion draft environmental impact statement (GuSG DEIS) which more closely analyzes planning issues, including energy and minerals actions, in order "to analyze the addition of GuSG conservation measures to several existing RMPs", including the Tres Rios RMP and existing RMPs guiding the UFO.  Because of the timing of the draft Uncompahgre RMP, it is unclear if this GuSG DRMPa would amend the much older RMPs that guide the UFO or the newer one.  Both the UFO

---

[6] http://www.cnhp.colostate.edu/download/documents/2000/San_Miguel_and_Western_Montrose.pdf

[7] Pages U-3 & U-4;
https://www.blm.gov/style/medialib/blm/co/field_offices/san_juan_public_lands/land_use_planning/approved_lrmp.Par.83225.File.dat/App_U_ACEC.pdf

[8] https://www.blm.gov/co/st/en/BLM_Information/nepa/TRFO_NEPA/acecs.html

[9] https://www.fws.gov/mountain-prairie/pressrel/2014/11122014_ServiceProtectsGunnisonSageGrouseAsThreatenedUnderESA.php

[10] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GUSGFinalListingRule_11202014.pdf

[11] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GuSGCriticalHabitat_11202014.pdf

4

BLM_0076707

DRMP and the GuSG DRMPa were released as drafts in August 2016. The BLM states, "The BLM manages approximately 40 percent of GUSG habitat across twelve counties in southwestern Colorado and southeastern Utah…The inadequacy of regulatory mechanisms in land use plans was identified as a major threat in the FWS listing decision."[12]

San Miguel County believes that amendments are needed for all of the existing and draft Resource Management Plans guiding the TRFO and UFO with respect to the San Miguel Basin subpopulations of Gunnison Sage-grouse to provide consistency in the management goals, objectives, actions and outcomes throughout San Miguel Basin. For example, the Dry Creek Basin subpopulation is within the territory of the TRFO while Hamilton Mesa and Miramonte Reservoir subpopulations are within the territory of the UFO.

Currently, the philosophy, data, vintage, and actions are very different between the TRFO and UFO existing and proposed RMPs. Actions and stipulations should be specific to the climate, topography, habitat conditions, threat management, and connectivity needs for each basin subpopulation, and where multiple RMPs affect a single basin population or subpopulation, they should be consistent. For example, if there is a No Surface Occupancy buffer around leks for the San Miguel Basin populations, they should be consistent for the lands within this basin population and subpopulations, with no difference whether they are managed by the TRFO or the UFO. While an RMP amendment may not be necessary for the successful Gunnison Basin population, we believe that RMP amendments are needed for the existing TRFO RMP and UFO RMPs, and the proposed UFO DRMP.

The Purpose section of the GuSG DRMPa states, *"This RMP amendment provides a framework for conserving and assisting with the recovery of the GuSG and for conserving and restoring habitat upon which the species depends on BLM-administered public lands across the range of the bird."* The Need section of this document states, *"The BLM conducted land use plan evaluations in accordance with its planning regulations, which require that RMPs 'shall be revised as necessary based on …, new data, new or revised policy…(43 CFR 1610.5-6)."*[13]

San Miguel County finds that the NEPA documents used for existing RMPs and the draft UFO RMP that intersect San Miguel County are of a vintage that pre-dates the listing and most recent information regarding the Gunnison Sage-grouse. Even the UFO DRMP/DEIS[14] was developed using information primarily dated from 2006 to 2013. We find that these ***existing analyses are not adequate in because of the new information or circumstances of the 2014 endangered species listing and that the BLM cannot reasonably conclude that new information and new circumstances would not substantially change the analysis of the new proposed actions.***

In other words, San Miguel County believes that the listing of the GuSG and designation of critical habitat is a new circumstance that requires modification of the TRFO RMP/FEIS and the UFO DRMP/EIS, as well as the older RMPs the UFO is currently guided by. The fact that the BLM is conducting the GuSG DRMPa/DEIS process and recommending a preferred alternative that would amend existing RMPs seems to point to that need.

---

[12]Page I; https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf
[13]Page iii; https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf
[14]https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=86004

BLM_0076708

The range of alternatives considered in the GuSG DRMP/DEIS includes having the stipulation of No Surface Occupancy being applied to all BLM lands within 4-miles of a lek, which was not considered in the existing TRFO and UFO RMPs or proposed UFO RMPs.  The GuSG DRMPa analyzes all BLM lands within occupied habitat, unoccupied habitat or a 4-mile buffer of a lek as its Decision Area, which is different from the TRFO RMP and the existing and draft UFO RMPs.

**General Comments:**

**San Miguel County's comments are intended to be specific to the San Miguel Basin population and its 6 subpopulations, as they are concentrated within San Miguel County.  They are also intended to be specific to the unoccupied and occupied Monticello-Dove Creek population habitat that occurs within western San Miguel County.  Our comments are not intended to global and applicable to habitat or populations that do not occur within San Miguel County (SMC).  SMC desires a hybrid alternative that is tailored to the conditions and needs of the San Miguel Basin Gunnison Sage-grouse population so that are viable opportunities to conserve and restore habitat and allow for increases in the satellite populations so that eventually targets contained in the 2005 Gunnison Sage-grouse Rangewide Conservation Plan (RCP)[15] are met.**

1.  San Miguel County finds that overall, the preferred alternative for satellite (non-Gunnison Basin) populations, Alternative D2, would not protect GuSG at the same level as the Greater Sage-grouse (GrSG), which was not listed by the U.S. Fish and Wildlife Service (USFWS) as threatened or endangered.  The final alternative should offer the San Miguel Basin population the same or greater protection as is provided for in the Bi-State Nevada-California Greater Sage-Grouse Distinct Population Segment Land Use Plan Amendment[16], which adds goals, objectives, action, and best management practices specifically designed to conserve, enhance, and/or restore habitats to support BSSG population management objectives and to provide for the long -term viability of the Greater Sage Grouse Bi-State Distinct Population Segment (BSSG).  As one example, this decision includes a 4-mile lek buffer for tall structures.

2.  The final alternative for the San Miguel Basin populations absolutely should adhere to the BLM's IM 2014-100[17], *Gunnison Sage-grouse Habitat Management Policy on BLM-Administered Lands in Colorado and Utah*, which states that "The BLM's policy is to manage GuSG seasonal habitats and maintain habitat connectivity to support sustainable GuSG populations and/or GuSG population objectives as determined in coordination with the FWS and State fish and wildlife agencies."

IM 2014-100[18] further states "Habitat protection is crucial for the conservation and protection of this species.  The BLM will focus any type of development in non-habitat areas.  A disturbance will be focused outside of a 4-mile buffer around leks.  The BLM intends that little or no disturbance occurs within the 4-mile buffer, except for valid existing rights, and except where benefits to the GuSG are greater compared to other available alternatives."  SMC does not find

---

[15] http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx
[16] https://eplanning.blm.gov/epl-front-office/projects/lup/60909/74562/82120/BSSG_ROD_Final.05272016.Final.pdf
[17] https://www.blm.gov/wo/st/en/info/regulations/Instruction_Memos_and_Bulletins/national_instruction/2014/IM_2014-100.html
[18] https://www.blm.gov/wo/st/en/info/regulations/Instruction_Memos_and_Bulletins/national_instruction/2014/IM_2014-100.html

BLM_0076709

that any alternative proposed in the GuSG DRMPa provides "little or no disturbance" within the 4-mile lek buffer.

3.  San Miguel County finds that occupied habitat extends more than 4-miles from leks and a 6.25-mile lek buffer should be accommodated for the San Miguel Basin, especially in the Nelson Creek and Miramonte leks area.  The 2005 Gunnison Sage-grouse Rangewide Conservation Plan (RCP)[19] and the presence of occupied critical habitat more than 4 miles from leks within the San Miguel Basin show that GuSG is found occupying habitat and using seasonal habitat 6 or more miles away from leks.[20]  Appendix J of the RCP contains GuSG habitat use data for the San Miguel Basin.

The GuSG DRMPa should allow for additional review of appropriate protections for Gunnison Sage-grouse habitat *within the San Miguel Basin,* from oil and gas development, tall structures, and other human disturbances shown to be harmful to GuSG within at least a 6.25-mile buffer of leks within the San Miguel Basin and San Miguel County.  Appropriate protections include buffers around leks where disturbances on non-habitat can cause impacts to lekking.

For example, in the Northwest Colorado Greater Sage-Grouse Approved Resource Management Plan Amendment (2015), there are lek buffers for linear features, energy infrastructure, tall structures, low structures, surface disturbance, and noise and disruptive activities that appear to exceed such buffers in this GuSG RMPa where they are contemplated. Protections for the San Miguel Basin GuSG should be similar or exceed those for the GrSG, which was not listed as Threatened.

*Note: San Miguel County is not suggesting that this is appropriate for all basin populations, just the San Miguel Basin populations.*  Alternatively, implementing the 6.25-mile buffer around the Nelson Creek and Miramonte leks, while retaining the 4-mile buffer around the other San Miguel Basin leks for limiting surface disturbance and disruptive activities per IM 2014-100 (see below) would increase the options for habitat improvements and connectivity between the Hamilton Mesa, Dry Creek Basin and Miramonte subpopulations.  The Decision Area for the San Miguel Basin population should be increased to a 6.25-mile buffer in order to appropriately manage all potential habitat being used by the San Miguel Basin population.

4.  **The terminology "non-habitat" used in the GuSG DRMPa for the land within 4-miles of a lek that is not designated as occupied or unoccupied is misleading and should be altered.**  They could simply be referred to as lek-buffer areas.  As described in the RCP, these areas do include non-lek breeding habitat and summer-fall habitat and non-habitat.  Most importantly, human-caused disturbances within 4 to 6 miles of a lek have been shown to increase abandonment and have other negative consequences on Greater Sage-grouse.

According to the GuSG DRMPa introduction, the Planning Area consists of "2.1 million acres of federal, state, city, county, and private lands in Colorado and Utah (including just over 740,000

---

[19] http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx
[20] Page J-5;
http://cpw.state.co.us/Documents/WildlifeSpecies/SpeciesOfConcern/GunnisonSageGrouse/ConsPlan/AppendixJSGHabitatUse03.pdf

BLM_0076710

acres of BLM-administered lands), along with an estimated 1.3 million acres of BLM-administered federal mineral estate."

The Decision Area described on pages ii and iii of the GuSG DRMPa, contains "approximately 620,000 acres of BLM-administered public land, as well as approximately 1,000,000 acres of subsurface federal mineral estate." On page ii, this document states, "The decision area is defined as BLM-administered lands and federal mineral estate <u>within 3 categories of GuSG habitat</u>:" (underline emphasis added).

The GuSG DRMPa goes on to describe the 3 categories of habitat as Occupied Habitat, Unoccupied Habitat, and "Non-Habitat Areas within 4 Miles of a Lek". This terminology is contradictory. In the USGS 2013 report, "Summary of Science, Activities, Programs, and Policies That Influence the Rangewide Conservation of Greater Sage-Grouse (*Centrocercus urophasianus*)" by Manier et al.[21] Tables A-1 and A-4 describe areas (buffers) of direct and indirect influences on GrSG and leks, some of which are solely distance based where the disturbance source can be in non-habitat but if close enough to a lek, has a measurable negative effect. There is no evidence these influences are different for GuSG.

5. San Miguel County appreciates that Occupied Habitat for the GuSG DRMPa included both the "Occupied critical habitat, as designated by the FWS under the ESA," plus supplemental Occupied Habitat including "…specific properties coinciding with BLM-administered federal minerals that the FWS excluded from the critical habitat designation." For example, FWS excluded certain private land encumbered by perpetual conservation easements within San Miguel County. These lands should absolutely be treated as occupied habitat for the purpose of fluid mineral leasing where they have split estate and federal minerals managed by the BLM. Private land conserved with the primary conservation easement value of GuSG habitat should have a No Surface Occupancy (NSO) stipulation for fluid minerals leasing and should be treated as GuSG occupied habitat with respect to other human disturbance activities.

6. IM 2014-100 instructs the BLM field offices to incorporate conservation measures as part of the GuSG DRMPa process:

> **"Land Use Planning**
>
> *The BLM proposes to incorporate objectives and conservation measures for the protection of GUSG and its habitat into approved Resource Management Plans (RMP) through a GUSG range-wide plan amendment process.*
>
> *As part of this GUSG range-wide planning process, the BLM will consider alternative(s) that:*
>
> - *Close fluid mineral (oil and gas or geothermal) leasing, and consider land allocations following expiration of oil and gas and geothermal leases with a full range of alternatives, including a scenario where the lands will not be re-offered for lease in occupied GUSG areas;*
> - *Exclude new energy development and rights-of-way (ROW);*

---

[21] https://pubs.usgs.gov/of/2013/1098/OF13-1098.pdf

8

- *Reduce or make lands unavailable to livestock grazing (consistent with WO-IM-2012-169) in GUSG occupied habitat;*
- *Include consideration of regional mitigation strategies and appropriate mitigation measures (avoid, minimize, and/or compensate) to reduce or eliminate impacts to GUSG populations;*
- *Address other factors that may pose a threat to GUSG populations, including recreation management, vegetation treatments, and invasive plant management; and*
- *Consider citizen-based alternatives, as appropriate.*

> *Through this range-wide plan amendment process, BLM Colorado and Utah FOs should consider and evaluate GUSG habitat conservation measures related to timing restrictions, buffer distances, percentages of allowable surface-disturbing activities, noise and desired density levels or other development constraints consistent with the GUSG RCP (including subsequent updates), current peer reviewed sage-grouse research, conservation summaries based on research or as developed in conjunction with State fish and wildlife agencies and the FWS to meet local population objectives. At a minimum, FOs will analyze and implement conservation measures that prohibit or limit energy and discretionary mineral development within four miles of active leks, and minimize surface disturbance and disruptive activities in all occupied habitat, where appropriate.  "*

IM 2014-100 also states that the BLM field offices will:

*"BLM FOs will:*

- *Work within multiple programs including recreation, hazardous fuels, fire management, Public Domain forestry, range management, and wildlife to accomplish GUSG habitat conservation.  When permitting or authorizing activities, FOs will consider, analyze and incorporate appropriate GUSG management strategies, best management practices (BMPs), and mitigation actions (avoid, minimize, and compensate) through NEPA analysis or other regulatory processes.  FOs will continue to implement appropriate BMPs through the permitting process in all program areas.  BMPs could include those identified at the local, state or national level for oil and gas development in GUSG habitat (see also RCP (Appendix L), fire (WO-IM 2013-128), and grazing guidelines (RCP 2005)).*

- *Continue coordination with the FWS and State fish and wildlife agencies on appropriate site-specific habitat or population-level management strategies (RCP 2005).  This will include but is not limited to, considering, prioritizing and implementing management prescriptions and strategies outlined in the RCP and local GUSG conservation plans, as well as all subsequent updates as appropriate. The BLM will work with FWS and State fish and wildlife agencies to determine the best available science for implementation of this IM and, if appropriate, will revise the IM accordingly.*

BLM_0076712

- *Implement a 0.6-mile no surface disturbance/no surface occupancy buffer radius (RCP 2005) around all active leks for project-level implementation such as fences or sagebrush habitat treatments. Any sagebrush removal or treatment should be prohibited within this buffer unless implemented to maintain or enhance the lek (RCP, Appendix I).*

- *Per the RCP (Appendix I), the BLM should manage all sagebrush habitat within a 4-mile radius of an active lek as GUSG breeding habitat (lekking, nesting, early brood rearing). To complement protections within the 0.6-mile buffer (described above), breeding habitat should be managed to minimize disturbance to GUSG during critical seasonal time periods and minimize the footprint of any project, habitat fragmentation across the landscape, and cumulative effects on the associated population (see RCP, Appendix L).  The following specific disturbance guidelines (see RCP, Appendix I) should be analyzed and applied to all ongoing program authorizations where appropriate:*

  - *Prohibit surface disturbing activities and disruptive activities within four miles of active leks from March 1 through June 30 (RCP 2005), subject to valid existing rights and emergency repairs of ROWs.*
  - *Avoid surface disturbance within mapped winter habitat for GUSG (if not mapped, within four miles of active leks); if surface disturbance cannot be avoided, prohibit said activity from December 1 through March 15 (RCP 2005).*

- *Include requirements to new Special Recreation Permits (SRP) to avoid disturbing leks during the breeding season. SRPs for hunting (other wildlife species), bird watching, and other activities should include appropriate timing restrictions to minimize disturbance to GUSG during critical seasonal periods such as the breeding, late brood-rearing and winter-use periods.*

- *Evaluate the need, and implement where appropriate, seasonal or permanent road or trail closures in occupied habitat through travel management planning and associated NEPA analysis for BLM authorized routes.  Avoid construction of new roads or ROWs within four miles of active leks."*

- *Analyze the impacts to GUSG when renewable energy (e.g., wind, solar, biomass) development and associated infrastructure (e.g., transmission lines) is proposed in or adjacent to sagebrush habitat, and avoid occupied habitat where warranted.  Manage areas within four miles of active leks as ROW avoidance areas.*

- *Avoid routing above-ground transmission or distribution lines within the occupied habitat.*

- *In response to a Plan of Operations, evaluate the impacts of non-discretionary activities managed under 43 CFR 3809 (those actions authorized under the 1872 mining law) on local GUSG populations, and clearly describe those effects that cannot be mitigated through the regulatory process.  Through the NEPA process, analyze potential impacts of discretionary mining activities and mitigation*

10

*approved under 43 CFR 3400 (such as coal management), 43 CFR 3500 (non-energy leasable materials), and exploration or extraction of other solid minerals wherever possible.*

- *Incorporate adequate reclamation standards designed to re-establish suitable GUSG seasonal habitats (RCP 2005, Appendix H) for all surface-disturbing activities within occupied GUSG habitat. Incorporate native seed mixtures in restoration efforts. Wherever possible, native seed mixtures should include a minimum of three native grasses, two native forbs, and one native sagebrush species. Use desired non-persistent, non-native vegetation in rehabilitation only where other options have been proven unsuccessful.*

- *Monitor all restoration activities for success in meeting short- and long-term vegetation objectives and reclamation standards, including potential weed infestations following the principles outlined in the BLM Assessment, Inventory, and Monitoring Strategy. Conduct follow-up treatments to eliminate weeds as identified through monitoring. If vegetation objectives are not being met, adjust restoration actions accordingly to improve the success of achieving desired GUSG habitat objectives.*

**SMC recommends final San Miguel Basin-specific alternative be developed and incorporated into the ROD, that accommodates the topography, climate, conditions, threats, and population goals of the San Miguel Basin subpopulations, and the Best Management Practices (BMPs) described in the GuSG DRMPa Appendix I.**

7. SMC recommends that there be an additional buffer for all occupied habitat within the San Miguel Basin, where planning decisions apply the same as if it were occupied habitat. Based on our recent experience with the TRFO February 2017 Oil and Gas Lease Sale, where lands intersecting occupied habitat were proposed for sale, if there were an approximately 0.3-mile buffer around all Occupied GuSG habitat, this would ensure that future sales are not actually offering Occupied Habitat. The issue may be based on the map scale at which screening of potential sale parcels occurs within the various BLM offices. Encroaching right up to the edge and cutting into Occupied Habitat is against the spirit and intent of this RMPa and IM 2014-100. Buffering Occupied Habitat so that an NSO that applies to Occupied Habitat is extended out to a 0.3-mile buffer of Occupied Habitat would remedy a human error that results in performing actions on the margins of Occupied Habitat, which would then cause additional habitat degradation and loss.

8. The GuSG DRMPa does not have a mechanism to limit cumulative habitat loss or surface disturbance to an acceptable level at a landscape scale. There is no net habitat loss standard or cumulative disturbance cap. The BLM RMPa for GrSG includes such cumulative surface disturbance caps. For example, there are stipulations that apply to a limit of 1 facility per 640 acres, and a cap of cumulative habitat loss of 3%.

9. Lek buffers for activities should be based on the class or type of activity and the level of disturbance, for example, the buffer for tall structures would be greater than for low structures.

BLM_0076714

See Manier et al.[22] Tables A-1 and A-4, and the Bi-State RMP[23] as finalized after protest resolution.

10.  Lek buffers and corresponding planning decisions being applied to lek buffers should be applied to active and inactive leks in the San Miguel Basin populations, so that there remains an opportunity for reactivation or re-colonization of the lek in the future, as other actions have intended positive effects on GuSG subpopulations and habitat quality and quantity increases.

11.  Timing limitations for the San Miguel Basin population should be consistent, and match recommendations from CPW, data for GrSG, and the Range-wide Conservation Plan incorporating best management practices and the best available information.

12.  The GuSG DRMPa seems to have omitted land disposals from consideration and analysis in all of the alternatives.  BLM lands having occupied, unoccupied, or land within 4 to 6.25-miles of San Miguel Basin leks should be retained by the BLM and not disposed of unless it can be proven that disposal is going to have direct positive benefits on GrSG population and habitat.  On page 6-199 of the GuSG DRMPa, Chapter 6, Appendix I, GuSG Best Management Practices, lists "Do not approve withdrawal proposals not associated with mineral activity unless that land management is consistent with GUSG conservation measures."  SMC cautions that there needs to be a perpetual guarantee that a land withdrawal or disposal would improve habitat conditions for GuSG in order to occur.  In general, disposal further complicates land management as it increases the complexity of land ownership and potential for habitat fragmentation.

13.  Travel Management Plans (TMPs) should be completed by BLM Field Offices as soon as possible after the GuSG ROD is signed.  TRFO is in progress with its TMP and ACEC RMPa.  UFO is in progress with its RMP.  With overlapping planning processes, BLM should ensure that no matter which documents affecting the San Miguel Basin population area are finalized first, that all incorporate the GuSG actions of this final GuSG DRMPa.

14.  BLM should incorporate certain stipulations and restrictions that were incorporated in the Northwest Colorado (NWCO) GrSG RMPa[24] (Appendix G) for fluid and non-fluid leasable minerals within the San Miguel Basin population area.  It does not make scientific sense that where the satellite populations may not have reached their population RCP population goals, and the Gunnison Basin population has, that there is a 1-mile lek buffer proposed for the Gunnison Basin population and a smaller 0.6-mile no surface disturbance buffer for the satellite populations.
- Where NWCO GrSG RMPa applies NSO to PHMA, this should apply to Occupied Habitat and a 0.3-mile buffer of Occupied Habitat in the San Miguel Basin population.  There should be no leasing within 1 mile of a lek.  The language that prohibits waivers or modifications to the NSO stipulation should also be incorporated into the GuSG DRMPa for San Miguel Basin.
- NWCO GrSG RMPa applies NSO within 2 miles of active leks in GHMA.  Grand Junction RMP applies an NSO stipulation within 4-miles of a lek.  There should be at least as much protection as occurs within the Grand Junction RMP for

[22] https://pubs.usgs.gov/of/2013/1098/OF13-1098.pdf
[23] https://eplanning.blm.gov/epl-front-office/projects/lup/60909/74562/82120/BSSG_ROD_Final.05272016.Final.pdf
[24] https://eplanning.blm.gov/epl-front-office/projects/lup/36511/63221/68470/Northwest_Colorado_ARMPA_508.pdf

BLM_0076715

providing an NSO for active and inactive leks within the San Miguel Basin.  SMC believes a 6.25-mile buffer is justified in the Dry Creek Basin/Miramonte subpopulation areas.

- NWCO GrSG RMPa limits or caps surface disturbance to a certain percentage of habitat and also caps density of infrastructure to 1 per 640 acres.  This should be done for the San Miguel Basin, at least for Occupied Habitat.
- NWCO GrSG RMPa uses the timing limitation of March 1 to July 15, for disallowing activity associated with construction, drilling, or completions within 4-miles of leks during lekking, nesting and early brood-rearing.  Timing limitations of March 1 to July 15 should be applied within the San Miguel Basin.
- Incorporate NWCO GrSG RMPa Management Action #47, Condition of Approval into the final alternative for San Miguel Basin population.
- Manage Occupied and Unoccupied habitat as avoidance areas for ROWs.
- NWCO GrSG RMPa allows for evaluation of the proposed lease activities in relation to site-specific terrain and habitat features.  This appears to allow for some site specificity where local topographical features like ridges or ravines that act as shields can be evaluated.

15.  There should be adaptive considerations built into the RMPa for the San Miguel Basin population to adapt to changing landscapes, best management practices, habitat prioritization, and mapping, etc.  If Colorado Parks and Wildlife (CPW) agrees, the adaptive management content of Appendix H of the NWCO GrSG RMPa should be incorporated into the GuSG DRMPa.

16.  Hunting of GuSG should not be allowed on public lands managed by the BLM within the San Miguel Basin population.  It appears that the GuSG DRMPa prohibits this.

17.  Lek information obtained by SMC counts 10 active leks and 1 inactive lek within SMC, all within the San Miguel Basin population.  The GuSG DRMPa states that there are 13 leks for the San Miguel Basin population with only 6 of these being active.  The GuSG DRMPa appears to be using out of date lek data for the San Miguel Basin.  According to the CPW (personal communication), the number of leks for 2015 and 2016 in the San Miguel Basin is 14 leks (7 active, 5 inactive, and 2 historical).  Lek buffers should be applied to all leks, regardless of their status, to facilitate increasing distribution and abundance of the San Miguel Basin population.  SMC is aware that there are historic/inactive GrSG leks that are now becoming reactivated after more than a decade of inactivity.

18.  In Chapter 3, the Affected Environment description for the San Miguel Basin population (pages 3-29 to 3-30) notes that the Dry Creek Basin subpopulation has the majority of the GuSG San Miguel Basin population habitat (64%).  It has the highest percentage of BLM land - - 57% of the Dry Creek Basin subpopulation habitat is on BLM land.  However, this area and subpopulation has the smallest individual numbers and has been characterized as having some of the poorest habitat conditions.  Other subpopulations having better habitat conditions, such as Hamilton Mesa and Miramonte are mostly private land.  Page 3-163 states that there are currently 25 gas wells within San Miguel Basin Occupied Habitat consisting of 4,994 acres of leases under production, with an additional 18 active wells "immediately adjacent to Occupied Habitat."  "All of these wells are near the Dry Creek subpopulation."

BLM_0076716

San Miguel County is currently protesting the lease sale of additional oil/gas parcels in the Dry Creek Basin area.  The leases intersected and were immediately adjacent to Dry Creek Basin occupied habitat, the 4-mile lek buffer, and private lands conserved for GuSG habitat.  Many of the leases were within or adjacent to the Decision Area of this GuSG DRMPa.  The GuSG DRMPa Alternative $D_2$ often offers less protection for GuSG than that alternative $D_1$, where the Gunnison Basin population is stable to increasing and well above target population size.  The San Miguel Basin population, including the Dry Creek Basin subpopulation, should have the strongest protections and conservation measures, exceeding those of the Gunnison Basin.

19.  Socioeconomic description of San Miguel County within Area 3:  SMC wishes to express that much of the GuSG habitat area is reliant on agriculture, with some oil/gas and mineral development as well as outdoor recreational opportunities.

On page 3-220, the GuSG DRMPa reports that San Miguel County has had a 15% population growth, but later on, page 3-222 says that "Telluride is physically separate from the decision area and will not be affected by the proposed habitat conservation measures."  While it is true that the Telluride, Mountain Village and down valley areas might be physically separate, they are not separate when it comes to outdoor recreational opportunities or guiding/outfitting.  The population analysis should be broken out to reflect the population centers of Telluride/Mountain Village and the San Miguel River corridor vs. the unincorporated portion of the county where GuSG habitat and lek buffers occur.  There has been little significant residential development near GuSG habitat, except for possibly where the 2005 RCP indicated that there was development in the vicinity of the Gurley Reservoir and Iron Springs Mesa areas at that time.

20.  On page 4-19, the GuSG DRMPa states that the TRFO identifies all "winter concentration areas" as NSO.  CPW in 2016 updated GIS files and has published them online. [25] CPW maps "severe winter range" and "winter range" for GuSG.  All winter range should be NSO.

21.  Non-motorized Recreation:  Outdoor recreation is very important to the county's economy and resident's quality of life.  SMC does not want to outright prohibit recreational opportunities and desires that they continue unless there is demonstrable evidence that the activity is detrimental to GuSG.  Therefore, Alternative A should be implemented where recreation uses and activities are generally not adverse to GuSG or GuSG habitat.

22.  Fluid minerals should only be open to leasing where there is Occupied or Unoccupied habitat, or within 6.25 miles of a lek, where there is a "high" mineral potential.

23.  Motorized Recreation:  San Miguel County requests that the final GuSG RMP incorporate a hybrid of alternatives from this document and GrSG RMPs –
- Complete activity level Travel Management Plans (TMPs) as soon as possible, subject to funding.  Where appropriate, designate routes with current administrative/agency purpose or need to administrative access only.  L
- Limit route construction to routes that will not adversely affect GuSG populations due to habitat loss or disruptive activities.
- In the Decision Area, evaluate for potential reductions in route density where they are demonstrated to improve habitat conditions or outcomes for GuSG.

---

[25] http://www.arcgis.com/home/item.html?id=1bab23cd9f274742ae1e38afa6e6c44f

BLM_0076717

- Areas in Occupied and Unoccupied Habitat designated as closed to motorized travel will remain so and not be changed by the GuSG DRMPa.
- Designate GuSG habitat as OHV Limited Area, prohibiting new surface disturbance unless authorized through a separate implementation-level decision.
- Allow for upgrades to existing routes after documenting that the action would not adversely affect GuSG through disruptive activities or habitat degradation/loss.
- Require mitigation as provided for in GuSG DRMPa Appendix J.
- Adhere to an overall habitat disturbance cap, such as 3%, unless there is an immediate health and safety need or to support valid existing rights which cannot be avoided. Evaluate and implement additional, effective mitigation necessary to offset the resulting loss of the GuSG habitat.

24.  Fuels Treatments:  Some fuels treatments have the potential to benefit GuSG and/or habitat or create habitat.  Fuels treatments and fire should occur when they are shown to be beneficial to GuSG.

25.  The GuSG DRMPa statement on page 4-25, contending that extending management actions beyond Occupied and Unoccupied Habitat is contradictory to this document, the GrSG RMPs, and an overwhelming number of citations contained in this RMPa.  The statement on page 4-44 that 96% of all surface disturbances are on private land is completely unsubstantiated.  This is an impossible statement, as each basin population and subpopulation has different conditions.  It should be deleted.

26.  SRPs should be allowed where no adverse impacts or potential adverse impacts to GuSG exists.

27. Grazing allotments should not be automatically closed within the GuSG Decision Area or habitat.  SMC does not agree that the provisions in the current GuSG DRMPa Alternative B are in the best interest of the GuSG.  For example, outright prohibiting new water developments (row 46, Table 2.7) might disallow improvements that would actually benefit GuSG brood rearing.

Within the Occupied and Unoccupied Habitat, as new and renewed grazing permits are implemented, include best management practices, and address potential disruptive activities such as structures, fences, roads, etc.  Terms and conditions of permits and leases could specify requirements for residual forage cover, and should also take into consideration that wildlife may reduce such cover through no fault of the permittee.  As necessary, permits could specify:

- Season/timing of use
- Livestock numbers
- Livestock distribution
- Use intensity
- Livestock species
- Livestock class
- Location of routes, bed grounds, etc.
- Structure limitations

15

BLM_0076718

Incorporating the objective of maintaining the cover of herbaceous vegetation to reduce predation during the breeding/nesting season from March 1 to July 15 would also be beneficial, in collaboration with other state and federal agencies.

Alternative B would have a negative effect on the San Miguel County economy, without ensuring any positive benefits for GuSG.

28.  Appendix J of the GuSG DRMPa, which is the Mitigation Strategy section, simply states that there will be a strategy developed and is inadequate for providing specific comments other than elements from the Northwest Colorado Greater Sage-Grouse Approved Resource Management Plan Amendment (NWCO GrSG FRMP) should be incorporated into this GuSG RMPa include Appendices F, G, and H of the NWCO GrSG FRMP, which include a robust Mitigation Strategy (Appendix F), Stipulations Applicable to Fluid Mineral Leasing and Land Use Authorizations (Appendix G), and Guidelines for Implementation and Adaptive Management (Appendix H).

Where the NWCO GrSG FRMP defines buffers, NSO, CSU, and TL stipulations for Priority Habitat (PHMA) or General Habitat (GHMA), these same buffers, NSO, CSU, and TL stipulations should be given to the San Miguel Basin area at a minimum where Occupied Habitat could correspond to PHMA and Unoccupied Habitat to GHMA considerations.

The NWCO active lekking, nesting and early brood-rearing TL is from March 1-July 15, and no activity is allowed with 4-miles of leks during this period.  This should be the TL for the San Miguel Basin.

There should be no waivers allowed for NSO, CSU, and TL stipulations.  Any exemptions should require authorization not just from the FO but also from the State Director.

29.  The GuSG RMPa considers an ACEC for all occupied and unoccupied GuSG habitat in either or both the Gunnison Basin population and satellite populations in Alternative B.  No details of what the stipulations or management would be if this were to be approved as part of the final decision seem to have been provided.  SMC desires for the TRFO ACEC RMP amendment process (DOI-BLM-CO-S010-2016-0018-EA) to be completed and fully consider the Northdale and Dry Creek Basin ACECs.  This document does not give an adequate explanation as to why BLM feels that the possible ACECs for occupied and unoccupied habitat do not meet ACEC relevance and importance criteria, but yet the proposed Dry Creek Basin and Northdale ACECs do for GuSG conservation.

30.  It appears that the BLM is trying to minimize the importance of its planning and management decisions on the GuSG.  Tables 1.1, 1.2, 3.13, 3.14, and 3.64 should include both totals and percentages of occupied habitat, unoccupied habitat, and acreages within the decision area that intersect BLM surface or BLM-managed mineral estate.

San Miguel County appreciates the opportunity to comment on this important document and is committed to working collaboratively with the BLM, and our other state, federal and local partners to ensure that the Gunnison Sage-grouse within San Miguel County can be conserved and to increase viable habitat for recovery efforts to be effective.  The GuSG will not be successful within the San Miguel Basin and San Miguel County without appropriate planning decisions from the BLM.

16

BLM_0076719

Sincerely,

SAN MIGUEL COUNTY, COLORADO
BOARD OF COUNTY COMMISSIONERS


Joan May, Chair

17

BLM_0076720

# ABBREVIATIONS AND ACRONYMS

The following abbreviations and acronyms are used throughout this document.

| COMMON ABBREVIATIONS/ ACRONYMS | COMPLETE PHRASE |
| --- | --- |
| ACEC | Area of Critical Environmental Concern |
| AMP | Allotment Management Plan |
| APD | Application for Permit to Drill |
| ATV | all-terrain vehicle |
| AUM | animal unit month |
| BA | Biological Assessment |
| BLM | Bureau of Land Management |
| BMP | best management practice |
| BO | Biological Opinion |
| BOR | Bureau of Reclamation |
| BRCW | Black Ridge Canyons Wilderness (designated Wilderness within McInnis Canyons NCA) |
| CCA | Candidate Conservation Agreement |
| CCAA | Candidate Conservation Agreement with Assurances |
| CCNCA | Colorado Canyons NCA (former title for McInnis Canyons NCA) |
| CCR | Colorado Code of Regulations |
| CEQ | Council on Environmental Quality |
| CFR | Code of Federal Regulations |
| COA | Conditions of Approval |
| CPW | Colorado Parks and Wildlife (previously Colorado Division of Wildlife) |
| CSU | Controlled Surface Use |
| dBA | A-Weighted Decibel |
| DEIS | Draft Environmental Impact Statement |
| DOE | U.S. Department of Energy |
| DOI | U.S. Department of the Interior |
| DRMP Amendment | Draft Resource Management Plan Amendment |

BLM_0076721

ABBREVIATIONS AND ACRONYMS

| COMMON ABBREVIATIONS/ ACRONYMS | COMPLETE PHRASE |
|---|---|
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| EPA | U.S. Environmental Protection Agency |
| ERMA | Extensive Recreation Management Area |
| ESA | Endangered Species Act of 1973 |
| FAR | Functional at Risk |
| FLPMA | Federal Land Policy and Management Act of 1976 |
| FO | Field Office |
| FRCC | Fire Regime Condition Class |
| FRN | Federal Register Notice |
| FWS | U.S. Fish and Wildlife Service |
| GIS | Geographic Information Systems |
| GUSG | Gunnison Sage-Grouse |
| IM | Instruction Memorandum |
| LN | Lease Notice |
| LUP | land use plan |
| MOU | Memorandum of Understanding |
| MS | BLM Manual Section |
| NCA | National Conservation Area |
| NEPA | National Environmental Policy Act of 1969 |
| NF | Non Functional |
| NM | National Monument |
| NPS | U.S. National Park Service |
| NRCS | National Resources Conservation Service |
| NSO | No Surface Occupancy |
| OHV | Off-Highway Vehicle |
| PCE | Primary Constituent Element |
| PFC | proper functioning condition |
| RAC | Resource Advisory Council |
| RCP | Rangewide Conservation Plan |

BLM_0076722

ABBREVIATIONS AND ACRONYMS

| COMMON ABBREVIATIONS/ ACRONYMS | COMPLETE PHRASE |
| --- | --- |
| RMP | Resource Management Plan |
| RMP Amendment | Resource Management Plan Amendment |
| ROD | Record of Decision |
| ROW | right-of-way |
| SRMA | Special Recreation Management Area |
| SRP | Special Recreation Permit |
| SSR | Site-Specific Relocation |
| SSS | Special Status Species |
| TL | timing limitation |
| TMP | travel management plan |
| UDWR | Utah Division of Wildlife Resources |
| U.S. | United States |
| USC | United States Code |
| USFS | U.S. Forest Service |
| VCC | vegetation condition class |
| WEM | waiver, exception, or modification |
| WO | Washington Office |
| WSA | Wilderness Study Area |
| WSR | Wild and Scenic Rivers |

BLM_0076723

ATTACHMENT B



Gunnison Sage-grouse:
Permanent Conservation Easements
on Private Lands

*-by Susan Lohr and Nomi Gray*

28 August 2013

*Gunnison Ranchland Conservation Legacy*

*and*

*Conservation Assistance Program*

BLM_0076724

Gunnison Sage-grouse:
Permanent Conservation Easements on Private Lands

-by Susan Lohr and Nomi Gray
31 August 2013

*Executive Summary*

Evaluation of the protection status of the Gunnison Sage-grouse (GUSG) by the United States Fish and Wildlife Service (USFWS) is not possible without accurate information about the percentage of private land within critical habitat that is permanently protected by conservation easements.  This report provides charts and maps of conservation easements within the USFWS designated critical habitat areas.  Previous USFWS statements have underestimated the extent of permanently conserved private lands.  Private lands with permanent conservation easements cannot ever be fragmented or subdivided, and are not available for future population growth.

The authors have been assisting landowners to place conservation easements for more than 20 years.  The conservation easements listed in this report are public documents, available at the records office of the appropriate county.  Charts in this report cite the recorded document numbers and county parcel numbers.  Maps depict the general location of easement parcels and are intended to give an overall visual impression of the extent of habitat protection on private lands.

Please use this information freely and distribute it widely.

*This effort was funded jointly by the Gunnison Ranchland Conservation Legacy and the Conservation Assistance Program of the North Fork Valley.  Contact Susan Lohr (970/ 314-7280, susan@paonia.com) for more information, or for pdf files of the recorded conservation easement documents.*

================================================================================

**Contents:**

Conservation Easements:  A Summary                                          2

Overall GUSG Habitat Map from USFWS                                          3

Conservation Easements in Unit 1:  Monticello-Dove Creek                     4

Conservation Easements in Unit 2:  Piñon Mesa                               10

Conservation Easements in Unit 3:  San Miguel Basin                         21

Conservation Easements in Unit 4:  Cerro Summit-Cimarron-Sims Mesa          27

Conservation Easements in Unit 5:  Crawford                                 34

Conservation Easements in Unit 6:  Gunnison Basin                           42

Conservation Easements in Unit 7:  Poncha Pass                              57

BLM_0076725

## Conservation Easements:  A Summary

A "**conservation easement**" is a voluntary legal agreement between a landowner and a land trust or government agency that permanently limits uses of the land in order to protect its conservation purposes.

"**Conservation purposes**" are defined by federal statute.  Pursuant to I.R.C. § 170(h)(4)(A) and Treasury Regulation § 1.170A-14(d), the conservation purposes of a qualified conservation contribution must include one or more of the following: (1) to preserve land for outdoor recreation by or education of the general public; (2) to protect relatively natural habitat of fish, wildlife or plants; (3) to preserve open space; and (4) to preserve historically important land or structures.

**Colorado statutes support conservation easements**:
- Colorado C.R.S. § 38-30.5-102 provides for the creation of conservation easements to maintain land "in a natural, scenic, or open condition, or for wildlife habitat, or for agricultural, horticultural, wetlands, recreational, forest or other use or condition consistent with the protection of open land . . ."
- C.R.S. § 33-1-101, provides in relevant part that "it is the policy of the state of Colorado that the wildlife and their environment are to be protected, preserved, enhanced, and managed for the use, benefit, and enjoyment of the people of this state and its visitors."
- C.R.S. § 35-3.5-101 states in part "it is the declared policy of the state of Colorado to conserve, protect, and encourage the development and improvement of its agricultural land for the production of food and other agricultural products."

**Conservation easements are recorded in the public records** of the county of the conserved property.  They are attached in perpetuity to that land.  Each conservation easement cites the conservation purposes (also called "**conservation values**") for that particular property.

**Conservation easements place permanent restrictions on division of land** in order to perpetuate the conservation values.  This means the land covered by the easement will forever be a single parcel, with very few exceptions.  If the conservation easement includes more than one legal parcel of land, those parcels must be owned and conveyed as a single unit in perpetuity.   Easements define specific areas for residential or agricultural structures.  Roads and driveways are restricted.

**Conservation easements contain language that defines acceptable land management practices** for sustaining the conservation values in perpetuity.  Although landowners donate many conservation easements, some are funded by state or federal agencies for specific purposes.  These funded easements usually contain additional management goals or restrictions.

**Conservation easements have been in use for more than 100 years**, but the past 50 years have seen exponential growth in this form of voluntary private land preservation.  Many court cases have upheld the validity of conservation easements and the restrictions they place on landowners in perpetuity.

**The preservation of intact landscapes** that results from conservation easements provides significant and wide-ranging benefits, among which are:

- wildlife habitat is protected from fragmentation and degradation,
- water rights as historically used are attached to the land,
- agricultural lands are available in perpetuity for producing the nation's food supply, and
- local governments have certainty regarding the location of population growth and the need to deliver public services.

BLM_0076726

Map of Overall Critical Habitat for Gunnison Sage-grouse



Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules    2563

(6) Unit 1: Monticello—Dove Creek: San Juan County, Utah, and Montrose, San Miguel, and Dolores Counties, Colorado.

(i) *General Description*: 140,975 ha (348,353 ac); 20.4 percent of all critical habitat.

(ii) Map of Unit 1, Monticello—Dove Creek: San Juan County, Utah, and Montrose, San Miguel, and Dolores Counties, Colorado, follows:

BLM_0076727

**Unit 1:**
**Monticello -**
**Dove Creek**



BLM_0076728

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 1:  Monticello - Dove Creek

| Current Owner | Total CE Acres | Acres in Occupied Habitat | Acres in Unocc. Habitat | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity (HQ = headquarters) |
|---|---|---|---|---|---|---|---|---|---|---|
| Adams | 642 | 642 | 0 | San Juan, UT | 11/9/01 | #064951 | UDWR | 33S25E030000 | 1, 2, 3 | One 642-ac parcel with no building areas. |
| Adams | 1602 | 1602 | 0 | San Juan, UT | 11/9/01 | #064953 | UDWR | 32S25E335400 32S25E345400 32S25E355400 33S25E040000 | 1, 2, 3 | This 1620-ac parcel may be divided into five parcels of at least 300 acres each. No building areas.  No residences. |
| Dicken | 320 | 320 | 0 | Dolores | 12/20/01 9/1/04 | #144346 #158384 | LPC MLC | 5063-194-00-050 5063-301-00-072 | 1, 3 | One 320-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Fernandez | 1180 | 1180 | 0 | Dolores | 12/14/12 | #162504 | MLC | 4805-173-00-047 4805-174-00-048 4805-202-00-258 4803-134-00-055 | 1, 2, 3 | This 1180-ac property may be divided once into two parcels.  One building area includes two residences and ag structures. |
| Pehrson | 320 | 320 | 0 | San Juan, UT | 11/18/03 | #070766 | BLM | 32S24E346600 32S24E355400 | 1, 2, 3 | One 320-ac parcel with no building areas.  No residences.  Ag structures only. |
| Reed | 240 | 240 | 0 | Dolores | 12/28/01 7/20/10 | #144345 #159766 | LPC MLC | 5063-191-00-124 | 1, 3 | One 240-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| RM & ML, LLC | 733 | 733 | 0 | Dolores | 1/16/13 | #162626 | MLC and CPW | 4807-054-00-008 4807-054-00-009 4807-043-00-010 4807-033-00-026 4807-033-00-027 4807-091-00-049 4807-094-00-053 4807-094-00-054 | 1, 2, 3 | Four parcels of 176, 71, 245 and 121 acres, each with a 1.5-ac building area that includes one residence and accessory structures. |

BLM_0076729

| | | | | | | | | 4807-091-00-055<br>4807-091-00-056<br>4807-091-00-057<br>4807-163-00-067<br>4807-164-00-068<br>4807-164-00-069<br>4807-213-00-070 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| The Nature Conservancy | 1080 | *1080* | *0* | San Juan, UT | 10/12/12 | #116959 | TNC | 33S24E222400<br>33S24E162400<br>33S24E153600<br>33S24E154200<br>33S24E156600<br>33S24E151200 | 1, 2, 3 | One 1080-ac parcel owned by TNC and managed solely for habitat improvement for Gunnison Sage-grouse.  Not a conservation easement but protected by TNC exclusively for grouse. |
| **Total CE Acres:** | **6117** | ***6117*** | ***0*** | | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | ***100,702*** | ***200,318*** | | | | | | | |
| **CE Percent:** | | ***5%*** | ***0%*** | | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements:  The conservation values must be sustained in perpetuity.  Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover.  Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property.  Surface mining is prohibited.  Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted.  Noxious weeds and invasive plant species must be controlled.  Water rights are permanently attached to the property.  Surface disturbance is prohibited.  Industrial uses are prohibited.  Commercial uses must be consistent with the conservation values.  Trash accumulation is prohibited.  Motor vehicle use is restricted.  Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies.  A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

6

BLM_0076730

Holders of Conservation Easements:

| | | |
|---|---|---|
| BLM | = | U.S. Department of the Interior, Bureau of Land Management |
| CPW | = | State of Colorado, Department of Natural Resources, Division of Parks and Wildlife |
| LPC | = | La Plata Open Space Conservancy |
| MLC | = | Montezuma Land Conservancy |
| UDWR | = | Utah Department of Natural Resources, Division of Wildlife Resources |
| TNC | = | The Nature Conservancy |

BLM_0076731

Conservation Easements on Private Land in the Dove Creek Area



BLM_0076732

Critical Habitat in Unit 1, Monticello-Dove Creek

2564        Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules



Gunnison Sage-grouse Critical Habitat
Unit 1: Monticello-Dove Creek
San Juan County, Utah; Montrose, San Miguel, and Dolores Counties, Colorado

(7) Unit 2: Piñon Mesa: Grand County, Utah, and Mesa County, Colorado.

(i) *General Description:* 99,220 ha (245,179 ac): 14.4 percent of all critical habitat.

(ii) Map of Unit 2, Piñon Mesa: Grand County, Utah, and Mesa County, Colorado, follows:

BLM_0076733

**Unit 2:**
**Piñon Mesa**



10

BLM_0076734

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 2:  Piñon Mesa

| Current Owner | Total CE Acres | Acres in Occupied Habitat | Acres in Unocc. Habitat | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity (HQ = headquarters) |
|---|---|---|---|---|---|---|---|---|---|---|
| Bagg | 829 | 0 | 829 | Mesa | 12/24/96 12/30/03 6/28/04 | #1783031 #2169931 #2199262 | MLT MLT MLT | 2959-173-00-152 | 1 | One 829-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Bagg | 226 | 0 | 226 | Mesa | 12/24/96 12/30/03 6/28/04 | #1783031 #2169931 #2199262 | MLT MLT MLT | 2959-083-00-273 | 1 | One 226-ac parcel with no building areas. |
| Beach | 184 | 184 | 0 | Mesa | 8/20/12 | #2622282 | MLT | 3221-182-00-099 3221-182-00-096 3221-181-00-094 3221-181-00-095 3221-182-00-097 | 1, 2, 3 | One 184-ac parcel with one 5-ac building area that includes one residence and ag structures. |
| Bear Run | 408 | 0 | 408 | Mesa | 12/31/01 | #2033408 | MLT | 3209-164-00-105 3209-162-00-140 3209-162-00-139 | 1, 2 | One 408-ac parcel with three 5-ac building areas that each include one residence and ag structures. |
| Bedford | 1280 | 1280 | 0 | Mesa | 12/30/11 | #2595859 | CDOW | 3221-192-00-056 3219-243-00-062 | 1, 2, 3 | One 1280-ac parcel with a building area for ag structures.  No residences. |
| Branham | 80 | 0 | 80 | Mesa | 12/6/07 | #2415104 | MLT | 2957-332-00-069 | 1 | One 80-ac parcel with a 5-ac building area that includes one residence and ag structures. |
| Carns | 334 | 0 | 334 | Mesa | 12/18/09 | #2516935 | MLT | 3215-023-00-043 3215-112-00-055 3215-112-00-056 3215-113-00-025 3215-114-00-022 | 1 | One 334-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Carns, Reigles | 200 | 200 | 0 | Mesa | 12/22/10 | #2557738 | MLT | 3211-193-00-009 3213-251-00-027 | 1 | One 200-ac parcel with a 20-ac building area that |

BLM_0076735

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | includes one residence and ag structures.  One cabin may be built elsewhere on the parcel. |
| Chesnick | 1185 | *0* | *1185* | Mesa | 12/19/97 12/23/03 | #1825980 #2169932 | MLT MLT | 2959-194-00-151 | 1 | This 1185-ac parcel may be divided into three parcels, each not less than 200 acres.  Two may have a 5-ac building area that includes one residence and ag structures. |
| Gleason | 920 | *920* | *0* | Mesa | 12/29/10 10/28/11 12/19/12 | #2557819 #2589643 #2637627 | CCALT CCALT CCALT | 3221-292-00-078 3221-281-00-009 | 1 | This 920-ac parcel may be divided into two parcels, each larger than 280 acres.  One may have a 5-ac building area for ag structures only.  Each parcel may have one cabin for seasonal use.  No residences. |
| Gleason | 1500 | *750* | *750* | Mesa | 12/31/09 7/31/12 | #2517722 #2619883 | CCALT CCALT | 3213-131-00-139 3213-224-00-036 | 1, 3 | One 1500-ac parcel with two 10-ac building areas that include ag structures only.  Two cabins for seasonal use are allowed on the property.  No residences. |
| Gore | 4443 | *3000* | *1443* | Mesa | 4/18/05 | #2249429 | CDOW | 3211-171-00-172 | 1, 2, 3 | One 4443-ac parcel with no building areas.  No residences. |
| Gore | 1600 | *0* | *1600* | Mesa | 12/20/07 12/20/07 12/30/10 2/7/11 7/7/11 7/7/11 | #2417044 #2417045 #2557901 #2562327 #2577742 #2577743 | MLT MLT MLT MLT MLT MLT | 3211-233-00-033 3211-223-00-012 | 1, 3 | One 900-ac parcel and one 700-ac parcel, each with a 5-ac building area that includes one residence and ag structures. |
| Gore | 1213 | *0* | *1213* | Mesa | 12/24/96 12/30/03 | #1783031 #2169931 | MLT MLT | 2959-181-00-537 | 1 | One 1213-ac parcel that may be divided into two |

BLM_0076736

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 6/28/04 | #2199262 | MLT | | | parcels of no less than 35 acres, each with a 5-ac building area that includes one residence and ag structures. |
| Granite Springs | 1630 | *0* | *1630* | Mesa | 6/28/02 | #2064135 | MLT | 3213-173-00-023 3213-173-00-026 3213-161-00-019 3213-211-00-025 3213-083-00-021 3213-084-00-018 3213-084-00-016 | 1, 2, 3 | This 1630-ac parcel may be divided once by separating a parcel of from five to 40 acres. Each resulting parcel may have a 2-ac HQ area that includes one residence and ag structures. |
| Harris | 320 | *0* | *320* | Mesa | 12/28/06 12/29/09 | #2356207 #2517407 | MLT MLT | 2961-304-00-024 2961-301-00-021 | 1 | This 320-ac parcel may be divided once into two parcels of 160 acres, each with a 5-ac building area that includes one residence and ag structures.  An additional 5-ac farm operations center may be located on one of the parcels. |
| JDT | 219 | *0* | *219* | Mesa | 4/22/99 | #1899190 | MLT | 2957-272-00-071 | 1, 2 | One 353-ac parcel with a 12-ac HQ area that includes one residence and ag structures. |

13

BLM_0076737

| JDT | 1841 | *1841* | *0* | Mesa | 8/1/06 | #2331034 | MLT | 3215-333-00-032 3215-342-00-031 3215-043-00-053 3215-092-00-054 3215-092-00-066 3215-093-00-067 3215-051-00-060 3215-051-00-057 3215-052-00-058 3215-052-00-059 3215-064-00-153 3215-082-00-070 3215-071-00-151 3215-082-00-070 | 1, 2, 3 | This 1841-ac parcel may be divided into five parcels of 740 acres, 560 acres, 160 acres, 238 acres and 143 acres, each with a 5-ac HQ area with one residence and ag structures. |
|---|---|---|---|---|---|---|---|---|---|---|
| Lawson | 320 | *320* | *0* | Mesa | 12/18/09 | #2516530 | MLT | 3219-051-00-008 | 1, 3 | One 320-ac parcel with a 5-ac HQ area that includes a seasonal cabin and ag structures.  No residences. |
| Lawson | 337 | *0* | *337* | Mesa | 12/28/10 | #2557900 | MLT | 2957-323-00-009 3213-052-00-001 3213-052-00-046 3213-052-01-001 3213-061-00-138 3213-064-00-125 | 1 | One 337-ac parcel with a 10-ac HQ area that includes five residences and ag structures. |
| Lawson | 160 | *0* | *160* | Mesa | 12/22/05 | #2293572 | MLT | 3213-113-00-121 | 1 | One 160-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Mayo | 138 | *0* | *138* | Mesa | 8/15/12 | #2621964 | MLT | 3211-182-00-171 | 1 | One 138-ac parcel with a 3-ac building area that includes one residence and a 2-ac building area that includes ag structures only. |
| Miller | 308 | *0* | *308* | Mesa | 12/20/07 4/7/08 12/23/08 | #2417046 #2439282 #2469714 | MLT MLT MLT | 3223-141-00-185 | 1 | One 308-ac parcel with one residence and ag structures. |
| Monument | 160 | *0* | *160* | Mesa | 10/29/0 | #2222492 | MLT | 3209-171-00-252 | 1 | One 280-ac parcel with |

BLM_0076738

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Springs | | | | | 12/1/05 | #2290301 | MLT | 3209-171-00-253<br>3209-172-00-312 | | one 5-ac HQ area that includes one residence and ag structures. |
| Mountain Island | 9792 | *6500* | *0* | Mesa | 12/29/78<br>12/31/79<br>12/24/80<br>7/31/86<br>10/17/86<br>10/17/86<br>12/31/02<br>11/21/08 | #1180100<br>#1211941<br>#1244390<br>#1430331<br>#1434948<br>#1434949<br>#2096065<br>#2466160 | TPL<br>COLF<br>TPL<br>TPL<br>CDOW<br>CDOW<br>MLT<br>CDOW | 3215-354-00-035<br>3217-013-00-007<br>3217-014-00-008<br>3217-131-00-009<br>3217-133-00-010<br>3219-171-00-053 | 1 | One 9792-ac parcel with one 5-ac building area that includes one residence and ag structures. |
| Mountain Island | 1660 | *1000* | *0* | Mesa | 12/31/81<br>2/24/82<br>10/17/86<br>10/17/86<br>12/31/02<br>4/25/11 | #1279008<br>#1283706<br>#1434948<br>#1434949<br>#2096064<br>#2570156 | TPL<br>TPL<br>CDOW<br>CDOW<br>MLT<br>MLT | 3219-171-00-053 | 1 | One 1660-ac parcel with a 5-ac building area that includes one residence and ag structures. |
| Mountain Island | 1130 | *0* | *1130* | Mesa | 12/23/99<br>6/3/02<br>12/30/03 | #1933576<br>#2062444<br>#2169930 | MLT<br>MLT<br>MLT | 2957-282-00-078 | 1 | This 1130-ac parcel may be divided into two parcels, one with a 5-ac building area that includes one residence and ag structures. |
| Mountain Island | 574 | *0* | *574* | Mesa | 12/28/99<br>1/15/13 | #1933575<br>#2662786 | MLT<br>MLT | 2957-072-00-037<br>2957-072-00-002 | 1 | One 585-ac parcel with a two building areas that each include one residence and ag structures. |
| Mountain Island | 2061 | *2061* | *0* | Mesa | 12/26/95 | #1741026 | TNC | 3219-054-00-039<br>3219-061-00-006<br>3219-052-00-007<br>3219-063-00-009<br>3213-313-00-033<br>3219-062-00-038<br>3213-314-00-034<br>3213-311-00-031<br>3213-311-00-032<br>3215-364-00-034<br>3217-011-00-006 | 1, 2 | One 2061-ac parcel with one residence and ag structures. |

15

| | | | | | | | | 3219-071-00-040 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Mountain Island | 1775 | 0 | 1775 | Mesa | 12/26/95 | #1741026 | TNC | 3215-241-00-028 3215-243-00-029 3215-252-00-030 3213-183-00-029 3213-184-00-024 3213-183-00-013 | 1, 2 | One 1775-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Mountain Island | 790 | 0 | 790 | Mesa | 12/24/96 12/30/03 6/28/04 | #1783031 #2169931 #2199262 | MLT MLT MLT | 2957-243-00-081 | 1 | One 790-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Mountain Island | 888 | 200 | 688 | Mesa | 12/23/99 | #1933574 | MLT | 2955-173-00-003 2955-152-00-002 | 1 | One 888-ac parcel with no building areas. One airstrip and adjacent hanger allowed. |
| Mountain Island | 361 | 0 | 361 | Mesa | 12/6/07 | #2415104 | MLT | 2957-321-00-070 2957-321-00-033 2957-324-00-026 | 1 | One 223-ac parcel and one 58-ac parcel, each with a 5-ac building area that includes one residence and ag structures. |
| Mountain Island | 314 | 0 | 150 | Grand, UT | 12/11/98 | #446562 | MLT | T20S R26E SLM, S32: Lots 2, 3, SW4NW4, N2SW4, NW4SE4, SE4NW4,SW4NE4 | 1 | One 314-ac parcel with two 3-ac building areas that each include two residences and ag structures. |
| Mountain Island | 848 | 0 | 848 | Grand, UT | 12/11/98 | #446568 | MLT | T21S, R26E, SLM, S17: E2SW4, SW4SE4; S20: NE4NW4, W2NE4, S2SE4, Lots 3,4; S29: NW4NE4, NE4NW4, NW4SW4, Lot 1; S30:E2SE4, SW4SE4 | 1 | One 848-ac parcel with a 5-ac HQ area that includes one residence and ag structures; one cabin allowed elsewhere on the property. |
| Smith | 560 | 200 | 360 | Mesa | 12/19/97 | #1825979 | MLT | 3215-053-00-012 | 1 | This 560-ac parcel may be divided into a 200-ac |

BLM_0076740

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | parcel and a 360-ac parcel, each with a 5-ac HQ area with one residence and ag structures.  An airstrip is allowed. |
| Snyder Hole | 300 | *0* | *300* | Mesa | 12/23/08 | #2469716 | MLT | 3223-151-00-207 3223-152-00-208 | 1 | One 200-ac parcel and one 100-ac parcel.  No building areas. |
| Tipping, Power, Patterson | 680 | *0* | *680* | Mesa | 12/7/10 | #2555647 | CDOW | 3225-172-00-003 | 1, 2, 3 | One 675-ac parcel with no building areas and one 5-ac parcel with one residence and ag structures. |
| Tipping, Power, Patterson | 1620 | *1620* | *0* | Mesa | 10/15/08 | #2461806 | CDOW | 3219-241-00-024 3219-134-00-056 3219-133-00-021 3219-132-00-055 3219-132-00-019 3219-131-00-057 3219-123-00-016 3219-114-00-058 3219-154-00-061 3221-191-00-089 3221-183-00-052 | 1, 2, 3 | This 1620-ac parcel may be divided into three parcels, none smaller than 320 acres.  No building areas. |
| Van Loan | 109 | *0* | *109* | Mesa | 4/22/99 | #1899190 | MLT | 2957-233-00-062 | 1, 2 | One 109-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Wise, Treece | 381 | *0* | *381* | Mesa | 9/10/99 12/15/00 8/16/05 12/15/06 | #1919841 #1977028 #2292694 #2354334 | MLT MLT MLT MLT | 2957-273-00-079 | 1 | One 381-ac parcel with a 12-ac HQ area that includes one residence and ag structures. |
| Wise & Treece Petroleum | 760 | *0* | *760* | Mesa | 12/18/01 8/16/05 | #2033406 #2292694 | MLT MLT | 2957-341-00-080 | 1 | One 760-ac parcel with a 5-ac building area that includes one residence and ag structures.  An 80-ac parcel may be divided from this parcel and |

BLM_0076741

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | added to the adjacent north property. The easement would remain in place. |
| **Total CE Acres:** | 44,438 | *20,076* | *20,246* | | | | | | | |
| **Total Private Land Acres** (*per* USFWS): | | *27,283* | *64,275* | | | | | | | |
| **CE Percent:** | | *74%* | *31%* | | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements: The conservation values must be sustained in perpetuity. Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover. Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property. Surface mining is prohibited. Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted. Noxious weeds and invasive plant species must be controlled. Water rights are permanently attached to the property. Surface disturbance is prohibited. Industrial uses are prohibited. Commercial uses must be consistent with the conservation values. Trash accumulation is prohibited. Motor vehicle use is restricted. Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies. A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:

| | | |
|---|---|---|
| CCALT | = | Colorado Cattlemen's Agricultural Land Trust |
| CDOW | = | State of Colorado, Department of Natural Resources, *formerly* Colorado Division of Wildlife, *now* Colorado Parks and Wildlife |
| COLF | = | Colorado Open Land Foundation |
| MLT | = | Mesa County Land Conservancy *dba* Mesa Land Trust |
| TNC | = | The Nature Conservancy |
| TPL | = | Trust for Public Lands |

BLM_0076742

## Conservation Easements on Private Land in the Piñon Mesa Area



BLM_0076743

Critical Habitat in Unit 2, Piñon Mesa

Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules    2565



Gunnison Sage-grouse Critical Habitat
Unit 2: Piñon Mesa
Grand County, Utah, Mesa County, Colorado

(8) Unit 3: San Miguel Basin: Montrose, San Miguel, and Ouray Counties, Colorado.

(i) *General Description:* 67,084 ha (165,769 ac); 9.7 percent of all critical habitat.

(ii) Map of Unit 3, San Miguel Basin: Montrose, San Miguel, and Ouray Counties, Colorado, follows:

BLM_0076744



**Unit 3:**
**San Miguel Basin**

BLM_0076745

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 3:  San Miguel Basin

| Current Owner | Total CE Acres | *Acres in Occupied Habitat* | *Acres in Unocc. Habitat* | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity *(HQ = headquarters)* |
|---|---|---|---|---|---|---|---|---|---|---|
| ALC | 459 | *421* | *0* | San Miguel | 6/10/11 | #418468 | CDOW | 4557-071-00-070 4557-073-00-001 | 1, 2, 3 | One 459-ac parcel with a 1-ac building area that includes one residence and ag structures. |
| Barrett | 1200 | *619* | *0* | San Miguel | 9/11/03 5/18/05 | #360135 #374901 | CCALT CCALT | 4555-101-00-005 4555-112-00-006 | 1, 2, 3 | One 1200-ac parcel with two 5-ac building areas that each include one residence and ag structures. |
| Bray | 1928 | *862* | *0* | San Miguel | 11/20/06 11/29/06 11/26/07 12/24/08 12/31/09 | #388559 #388660 #399059 #405178 #410566 | CCALT CCALT CCALT CCALT CCALT | 4555-212-00-014 4555-212-00-015 4555-212-00-016 4555-152-00-017 | 1, 2, 3 | One 1928-ac parcel with ag structures and one hunting cabin.  No residences. |
| Cabrera | 321 | *280* | *0* | | 5/26/00 | #334479 | SMCF | 4523-024-06-001 | 1, 3 | One 321-ac parcel with a 5-ac building area that includes one residence and ag structures. |
| CD Conservation | 1249 | *1167* | *0* | | 12/31/03 12/30/05 12/28/06 12/21/07 12/21/07 | #363144 #380645 #389248 #398986 #398987 | TLR and CDOW | 4523-221-07-002 4523-154-07-001 4523-153-00-080 4523-152-06-001 | 1, 2, 3 | One 760-ac parcel and one 486-ac parcel.  No building areas.  No residences. |
| Dallas Divide | 520 | *0* | *520* | San Miguel Ouray | 10/10/06 10/10/06 | #387558 #193134 | TNC TNC | San Miguel: 4303-311-00-007 Ouray: 4303-321-00-148 4303-291-00-149 | 1, 3 | One 520-ac parcel with a 6-ac HQ area and a 3-ac building area that each include one residence and ag structures. |
| Dallas Divide | 549 | *0* | *549* | San Miguel Ouray | 12/20/07 12/20/07 | #398969 #196793 | TNC TNC | San Miguel: 4303-312-04-004 Ouray: 4303-303-16-001 | 1, 3 | One 549-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |

BLM_0076746

| Name | Acres | CE1 | CE2 | County | Date | Reception # | Holder | Parcel # | Notes | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| Dallas Divide | 409 | *0* | *300* | San Miguel Ouray | 12/21/07 12/21/07 | #398968 #196794 | TNC TNC | San Miguel: 4519-062-00-006 Ouray: 4303-323-00-001 | 1, 3 | This 409-ac parcel may be divided into two parcels of at least 35 acres. Each may have a 5-ac building area that includes one residence and ag structures. |
| Double E Bar | 35 | *0* | *35* | San Miguel | 12/21/07 | #398968 | TNC | 4519-062-00-007 | 1, 3 | One 35-ac parcel with a 5-ac building area that includes one residence. |
| Herndon | 1240 | *369* | *0* | San Miguel | 12/28/00 12/28/00 | #338869 #338871 | SMCF SMCF | 4559-302-00-021 | 1, 2, 3 | One 1240-ac parcel with a 10-ac HQ area that includes one residence and ag structures. |
| Hughes, Beaver Mesa | 2082 | *2060* | *0* | San Miguel | 12/27/07 12/4/08 8/14/09 11/17/11 | #399060 #404920 #408346 #420621 | CCALT CCALT CCALT CCALT | 4559-233-00-152 4559-144-00-054 4559-224-00-055 4559-141-01-007 | 1, 3 | This 2082-ac parcel may be divided into two parcels of at least 500 acres. Four building areas each include one residence and ag structures. |
| Kelly | 1034 | *940* | *0* | San Miguel | 12/19/06 12/20/06 11/25/08 12/10/08 | #389097 #389116 #404810 #404998 | SMCF SMCF SMCF SMCF | 4529-311-00-017 4529-311-00-018 | 1, 2, 3 | One 1034-ac parcel with a 5-ac building area that includes one residence and ag structures. |
| O2B29 | 770 | *220* | *0* | San Miguel | 6/25/01 6/27/03 7/29/04 | #342219 #358323 #368117 | CCALT CCALT CCALT | 4555-262-00-018 | 1, 2, 3 | One 770-ac parcel from which a 35 acre parcel may be divided that includes one residence. |
| PEMF | 82 | *0* | *82* | | 5/26/00 | #334479 | SMCF | 4523-012-06-006 | 1, 3 | One 82-ac parcel that includes one residence and ag structures. |
| Young* | 365 | *0* | *0* | San Miguel | 6/23/03 7/12/01 7/12/01 | #358375 #342692 #342693 | CCALT CCALT CCALT | 4525-183-00-091 | 1, 2, 3 | One 365-ac parcel with no building areas. No residences. |
| **Total CE Acres:** | **12,243** | **6,938** | **1,486** | | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | **28,218** | **20,117** | | | | | | | |
| **CE Percent:** | | **25%** | **7%** | | | | | | | |

23

BLM_0076747

*Young:  Not within USFWS mapped habitat, but the conservation easement states that Gunnison sage-grouse are on the property.

Management Requirements:

1. Standard management requirements for conservation easements:  The conservation values must be sustained in perpetuity.  Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover.  Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property.  Surface mining is prohibited.  Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted.  Noxious weeds and invasive plant species must be controlled.  Water rights are permanently attached to the property.  Surface disturbance is prohibited.  Industrial uses are prohibited.  Commercial uses must be consistent with the conservation values.  Trash accumulation is prohibited.  Motor vehicle use is restricted.  Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies.  A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.


Holders of Conservation Easements:

| | | |
|---|---|---|
| CCALT | = | Colorado Cattlemen's Agricultural Land Trust |
| CDOW | = | State of Colorado, Department of Natural Resources, *formerly* Colorado Division of Wildlife, *now* Colorado Parks and Wildlife |
| COL | = | Colorado Open Lands |
| SMCF | = | San Miguel Conservation Foundation |
| TLR | = | Trust for Land Restoration |

24

BLM_0076748

Conservation Easements on Private Land in the San Miguel Basin

BLM_0076749

## Critical Habitat in Unit 3, San Miguel Basin



(9) Unit 4: Cerro Summit-Cimarron-Sims Mesa: Montrose, Ouray, and Gunnison Counties, Colorado.

(i) *General Description*: 25,377 ha (62,708 ac); 3.7 percent of all critical habitat.

(ii) Map of Unit 4, Cerro Summit-Cimarron-Sims Mesa: Montrose, Ouray, and Gunnison Counties, Colorado, follows:

BLM_0076750



**Unit 4:**
**Cerro Summit -**
**Cimarron - Sims Mesa**

BLM_0076751

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 4:  Cerro Summit-Cimarron-Sims Mesa

| Current Owner | Total CE Acres | Acres in Occupied Habitat | Acres in Unocc. Habitat | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity (HQ = headquarters) |
|---|---|---|---|---|---|---|---|---|---|---|
| Allison | 80 | 0 | 80 | Montrose | 12/31/02 | #682438 | BCRLT | 3771-074-00-012 | 1 | One 80-ac parcel with no building areas.  No structures. |
| Collins | 324 | 0 | 325 | Gunnison | 9/12/07 | #578716 | BCRLT | 3987-000-00-006 | 1 | One 324-ac parcel with a 3-ac HQ area that includes three residences and ag structures. |
| Collins | 155 | 155 | 0 | Gunnison | 12/21/06 | #571843 | BCRLT | 3987-000-00-018 | 1, 3 | One 155-ac parcel with a 3-ac building area that includes two residences and ag structures, and a 5-ac building area that includes one residence. |
| Deming Kinikin | 140 | 0 | 140 | Montrose | 12/13/04 | #729991 | BCRLT | 3991-123-00-001 | 1 | One 70-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Denham Kinikin | 149 | 0 | 149 | Montrose | 12/13/07 | #784420 | BCRLT | 3991-104-00-023 | 1 | One 149-ac parcel with two 3-ac building areas that each include one residence and ag structures. |
| EGR | 1394 | 1394 | 0 | Montrose | 12/26/03 | #714148 | RMEF | 3987-071-00-003 | 1 | One 1394-ac parcel with ag structures only.  No residences. |
| Farnsworth | 41 | 41 | 0 | Montrose | 9/13/06 | #761261 | BCRLT | 3987-262-00-003 | 1 | One 41-ac parcel with a 3-ac HQ area that includes one residence and ag |

BLM_0076752

| | | | | | | | | | | structures, and one 0.5-ac historic homestead area that includes a seasonal use only residence. |
|---|---|---|---|---|---|---|---|---|---|---|
| Hale | 110 | *0* | *110* | Montrose | 11/28/05 12/29/06 | #747350 #765676 | BCRLT BCRLT | 3771-292-00-042 | 1 | One 110-ac parcel with a 3-ac building area that includes one residence and ag structures. |
| Hale | 170 | *0* | *170* | Montrose | 10/14/10 | #818545 | BCRLT | 3769-244-00-064 | 1 | One 170-ac parcel with no building areas. No structures. |
| Howell | 1164 | *1164* | *0* | Montrose | 6/11/99 | #652864 | BCRLT | 3989-111-00-020 3989-111-00-023 | 1 | One 1124-ac parcel with two 5-ac building areas that each include one residence. One area may include ag structures. Also one 40-ac parcel with a 5-ac building area that includes on residence. |
| Mazzia | 333 | *0* | *333* | Montrose | 12/30/96 | #624155 | BCRLT | 3771-204-00-017 3771-291-00-039 | 1 | One 333-ac parcel that may be divided into two parcels, each with a 4-ac building area that includes one residence and ag structures. |
| Mazzia | 200 | *0* | *200* | Montrose | 7/2/01 | #675709 | BCRLT | 3771-201-00-011 | 1 | One 200-ac parcel with a 2-ac building area that includes one residence and ag structures. |
| Muhr | 75 | *0* | *75* | Montrose | 8/23/99 9/16/99 8/15/00 12/4/01 | #655357 #656119 #665785 #681562 | TCF to NPS to NPS NPS | 3771-092-00-009 3771-093-00-012 | 1, 2 | One 37-ac parcel and one 38-ac parcel, each with a building area that includes one |

BLM_0076753

| | | | | | 9/15/06 6/21/07 12/13/11 | #763494 #776025 #830514 | TCF TCF TCF | | | residence. |
|---|---|---|---|---|---|---|---|---|---|---|
| Perrin | 120 | *120* | *0* | Montrose | 12/26/07 | #784949 | BCRLT | 3987-224-00-025 | 1 | One 120-ac parcel with a 3-ac building area that includes two residences and ag structures, and a 1-ac building area that includes one residence. |
| Sanburg | 46 | *0* | *46* | Montrose | 12/4/01 | #681562 | NPS | 3719-294-00-001 | 1 | One 46-ac parcel with no building areas. No structures. |
| Sanburg | 2146 | *0* | *2146* | Montrose | 8/23/99 9/16/99 8/15/00 12/4/01 9/15/06 6/21/07 12/13/11 | #655357 #656119 #665785 #681562 #763494 #776025 #830514 | TCF to NPS to NPS NPS TCF TCF TCF | 3771-081-00-008 3719-251-00-006 3719-264-00-001 | 1, 2 | One 2119-ac parcel with no building areas, no structures and one gravel pit. Also one 27-ac parcel with a building area that includes one residence and ag structures. |
| Simmons | 400 | *400* | *0* | Gunnison | 12/16/02 11/17/03 | #526476 #536743 | CCALT CCALT | 3987-000-00-023 3985-000-00-042 | 1 | One 400-ac parcel with a HQ area that includes residences and ag structures. |
| Sitts, King, Woodland | 39 | *39* | *0* | Montrose | 11/15/04 | #728470 | BCRLT | 3993-181-00-025 3993-181-00-026 3993-181-00-027 | 1 | Three parcels of 16, 11 and 11 acres, separately owned, each with a 1-ac building area that includes one residence and ag structures. |
| Stoney Point | 680 | *682* | *0* | Montrose | 12/24/03 | #714198 | BCRLT | 3989-084-00-011 3989-053-00-007 | 1, 3 | One 680-ac parcel with two 3-ac building areas that each include one residence |

BLM_0076754

| | | | | | | | | | and ag structures. |
|---|---|---|---|---|---|---|---|---|---|
| **Total CE Acres:** | 7766 | *3995* | *3774* | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | *28,218* | *20,117* | | | | | | |
| **CE Percent:** | | *14%* | *19%* | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements: The conservation values must be sustained in perpetuity. Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover. Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property. Surface mining is prohibited. Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted. Noxious weeds and invasive plant species must be controlled. Water rights are permanently attached to the property. Surface disturbance is prohibited. Industrial uses are prohibited. Commercial uses must be consistent with the conservation values. Trash accumulation is prohibited. Motor vehicle use is restricted. Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies. A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.


Holders of Conservation Easements:
| | | |
|---|---|---|
| BCRLT | = | Valley Land Conservancy *dba* Black Canyon Regional Land Trust |
| CCALT | = | Colorado Cattlemen's Agricultural Land Trust |
| NPS | = | National Park Service |
| RMEF | = | Rocky Mountain Elk Foundation |
| TCF | = | The Conservation Fund |

BLM_0076755

Conservation Easements on Private Land in the Cerro Summit-Cimarron-Sims Mesa Area



BLM_0076756

Critical Habitat in Unit 4, Cerro Summit-Cimarron-Sims Mesa



Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules    2567

Gunnison Sage-grouse Critical Habitat
Unit 4:  Cerro Summit-Cimarron-Sims Mesa
Montrose, Ouray, and Gunnison Counties, Colorado

(10) Unit 5: Crawford: Delta, Montrose, and Gunnison Counties, Colorado.

(i) *General Description*: 39,304 ha (97,123 ac); 5.7 percent of all critical habitat.

(ii) Map of Unit 5, Crawford: Delta, Montrose, and Gunnison Counties, Colorado, follows:

33

BLM_0076757



Unit 5:
Crawford

BLM_0076758

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 5:  Crawford

| Current Owner | Total CE Acres | Acres in Occupied Habitat | Acres in Unocc. Habitat | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity (HQ = headquarters) |
|---|---|---|---|---|---|---|---|---|---|---|
| Adam | 313 | 0 | 313 | Delta | 9/20/05 12/28/06 12/17/07 | #595715 #610883 #621565 | BCRLT BCRLT BCRLT | 3501-173-00-006 3501-173-00-006 3501-173-00-006 | 1 | One 313-ac parcel with a 3-ac HQ area that includes two residences and ag structures. |
| Ayer | 525 | 0 | 525 | Montrose | 12/24/08 | #797911 | COL | 3717-013-00-012 | 1, 3 | One 525-ac parcel with no building areas.  Three hunting cabins allowed. |
| Ayer | 640 | 640 | 0 | Montrose | 12/27/10 | #820821 | COL | 3717-132-00-005 | 1, 3 | One 640-ac parcel with two 7-ac building areas that each include one residence and ag structures. |
| Bendele | 65 | 0 | 65 | Montrose | 11/10/04 | #728496 | BCRLT | 3503-302-00-012 | 1 | One 65-ac parcel with a 2-ac HQ area that includes two residences and ag structures. |
| Burke | 50 | 0 | 50 | Delta | 7/25/08 | #627555 | COL | 3503-202-01-001 3503-202-01-003 3503-202-01-002 3503-201-00-010 | 1 | One 50-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Canyon Ranch | 694 | 0 | 694 | Delta | 12/31/96 | #501409 | BCRLT | 3451-253-00-004 3451-252-00-003 3451-252-00-002 3449-303-00-004 3449-301-00-008 3449-311-00-008 | 1 | One 659-ac parcel with a 10-ac HQ area that includes two residences and ag structures, and one 35-ac parcel that includes one residence. |
| Canyon Ranch | 1032 | 0 | 1032 | Delta | 12/28/01 | #550675 | COL | 3451-261-00-002 3451-202-00-003 3451-201-00-001 | 1 | One 1032-ac parcel with a HQ area and a second building area that each include one residence and ag structures. |
| Clagett | 155 | 0 | 155 | Delta | 8/16/04 11/17/06 | #582665 #609837 | BCRLT BCRLT | 3501-154-00-020 3501-154-00029 | 1 | One 115-ac parcel and one 40-ac parcel, each |

BLM_0076759

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 3501-154-00-028<br>3501-154-00-006 | | with a 2-ac HQ area that includes one residence and ag structures. |
| Gallob | 142 | 0 | 142 | Delta | 12/16/05 | #598756 | BCRLT | 3503-201-01-003<br>3503-201-01-002<br>3503-212-01-006<br>3503-212-01-007 | 1 | Four 35-ac parcels, each with a 2-ac HQ area that includes one residence and ag structures. |
| Gates Camp | 324 | 0 | 324 | Montrose | 10/19/10 | #818657 | BCRLT | 3715-353-00-019<br>3773-022-00-003 | 1 | One 324-ac parcel with a 3-ac HQ area that includes two seasonal residences and ag structures. |
| Groome | 100 | 0 | 100 | Delta | 12/20/05 | #598878 | BCRLT | 3501-174-00-004 | 1 | This 100-ac parcel may be split into two parcels. Each parcel may have a 3-ac HQ area that includes one residence and ag structures. |
| Groome | 159 | 0 | 159 | Delta | 12/21/06<br>12/20/07 | #610721<br>#621605 | BCRLT<br>BCRLT | 3501-171-00-001 | 1 | One 159-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Hart | 1912 | 0 | 1912 | Montrose | 12/17/07<br>12/19/08<br>12/09/09<br>4/7/10<br>3/2/11<br>6/11/12 | #784506<br>#797807<br>#809144<br>#812702<br>#822640<br>#835906 | CCALT<br>CCALT<br>CCALT<br>CCALT<br>CCALT<br>CCALT | 3503-301-00-031 | 1 | One 1912-ac parcel with a 1-ac area and a 3.5-ac area for ag structures only. No residences. |
| Hart | 66 | 66 | 0 | Montrose | 11/24/04<br>12/2/04 | #729250<br>#729550 | BCRLT<br>BCRLT | 3715-332-00-010<br>3715-283-00-019 | 1 | One 66-ac parcel with a 2-ac HQ area that includes one residence and ag structures. |
| Jackson | 109 | 0 | 109 | Montrose | 12/30/09 | #809786 | BCRLT | 3501-291-00-033 | 1 | One 109-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Klaseen | 400 | 0 | 400 | Delta | 12/3/09<br>10/15/10 | #639460<br>#646084 | COL<br>COL | 3449-314-00-011<br>3499-124-00-002<br>3499-122-00-001 | 1 | One 400-ac parcel with a 3-ac HQ area and a 3-ac building area that each |

BLM_0076760

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | include one residence and ag structures. |
| Klaseen | 970 | *430* | *540* | Montrose | 12/30/09 12/27/10 6/6/11 | #809822 #820797 #825405 | COL COL COL | 3717-023-00-002 | 1, 3 | One 970-ac parcel with a 10-ac HQ area that includes one residence and ag structures. |
| LeValley | 420 | *420* | *0* | Montrose | 3/21/13 | #844656 | BCRLT | 3717-221-01-005 | 1, 3 | One 420-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| LeValley | 310 | *310* | *0* | Montrose | 9/29/06 | #762028 | CDOW | 3717-221-01-005 | 1, 2, 3 | One 310-ac parcel with no building areas. |
| LeValley | 583 | *583* | *0* | Montrose | 5/11/04 | #719731 | CDOW | 3717-073-00-002 | 1, 2, 3 | One 583-ac parcel with no building areas. |
| McLaughlin | 180 | *0* | *180* | Montrose Gunnison | 3/28/12 | #833685 #612071 | CCALT CCALT | 3715-000-00-012 3715-351-10-002 | 1 | One 180-ac parcel with a 5-ac HQ area that includes two residences and ag structures, and a 2-ac building area that includes one residence. |
| McLaughlin | 80 | *0* | *80* | Montrose | 12/31/07 | #784948 | BCRLT | 3773-021-00-010 3715-354-00-001 | 1 | One 80-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Mesa Ranch | 739 | *739* | *0* | Delta | 12/31/96 | #501406 #630079 | BCRLT BCRLT | 3451-362-00-003 3499-101-00-001 | 1 | One 739-ac parcel with existing ag structures. Residences not specified. |
| Mugford | 123 | *0* | *123* | Delta | 11/16/04 9/30/05 | #585498 #596117 | BCRLT BCRLT | 3501-143-00-019 3501-232-00-015 | 1 | One 123-ac parcel with two 2-ac areas that each include one residence and ag structures. |
| Murray | 67 | *0* | *67* | Montrose | 12/26/06 | #765541 | BCRLT | 3501-223-00-031 | 1 | One 67-ac parcel with a 2-ac HQ area that includes two residences and ag structures. |
| Nelson | 130 | *0* | *130* | Delta Montrose | Fall 2013 | Pending | COL | 3503-203-00-006 | 1 | One 130-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |

37

BLM_0076761

| Pipher | 81 | *0* | *81* | Montrose | 12/27/05 | #748704 | BCRLT | 3715-211-01-002 | 1 | One 81-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
|---|---|---|---|---|---|---|---|---|---|---|
| Pipher | 142 | *0* | *142* | Montrose | 12/18/06 12/18/06 9/21/04 | #765299 #765298 #583599 | BCRLT BCRLT BCRLT | 3773-043-00-012 3773-081-00-015 | 1 | One 142-ac parcel with a 5-ac HQ area that includes one residence, two seasonal cabins and ag structures, and a 3-ac building area that includes one residence and ag structures. |
| Pipher | 133 | *0* | *133* | Montrose | 12/27/07 | #784836 | BCRLT | 3715-201-00-028 | 1 | One 133-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Ritschard | 85 | *0* | *85* | Montrose | 12/27/07 | #784835 | BCRLT | 3773-042-00-014 | 1 | One 85-ac parcel with a 1-ac HQ area that includes one residence and ag structures. |
| Smith | 85 | *0* | *85* | Montrose | 12/27/06 | #765548 | COL | 3501-282-00-030 | 1 | One 85-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Smith Fork | 159 | *0* | *159* | Delta | 12/29/08 | #631062 | BCRLT | 3447-313-00-003 | 1 | One 159-ac parcel with a 5-ac HQ area that includes one residence and ag structures and a 3-ac area that includes two residences. |
| Stahl | 41 | *0* | *41* | Delta | 11/17/06 | #609836 | BCRLT | 3501-153-00-005 | 1 | One 40-ac parcel with a 2-ac HQ area that includes one residence and ag structures. |
| Tabuteau | 232 | *0* | *232* | Montrose | 12/19/07 | #784625 | COL | 3501-272-00-002 | 1 | One 232-ac parcel with a 5-ac HQ area and a 3-ac area that each include one residence and ag structures. |

BLM_0076762

| Todd | 809 | 282 | 527 | Delta Montrose Delta Montrose Delta | 12/23/08 12/29/08 12/30/09 12/30/09 12/29/10 | #630996 #797977 #639994 #809814 #647861 | COL COL COL COL COL | 3499-244-00-005 3501-193-00-011 3501-193-00-010 3501-192-00-005 3499-244-00-008 3499-241-00-007 3501-182-00-014 | 1 | One 809-ac parcel with a 7-ac HQ area that includes two residences and ag structures. This parcel may be divided into two parcels no smaller than 150 acres. |
| Zeldenthuis | 80 | 0 | 80 | Delta | 12/29/05 | #599098 | BCRLT | 3501-202-00-010 | 1 | One 80-ac parcel with no building areas and no structures. |
| **Total CE Acres:** | **12,135** | **3,470** | **8,665** | | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | **8,481** | **44,552** | | | | | | | |
| **CE Percent:** | | **41%** | **20%** | | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements: The conservation values must be sustained in perpetuity. Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover. Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property. Surface mining is prohibited. Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted. Noxious weeds and invasive plant species must be controlled. Water rights are permanently attached to the property. Surface disturbance is prohibited. Industrial uses are prohibited. Commercial uses must be consistent with the conservation values. Trash accumulation is prohibited. Motor vehicle use is restricted. Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies. A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:
| | | |
|---|---|---|
| BCRLT | = | Valley Land Conservancy *dba* Black Canyon Regional Land Trust |
| CCALT | = | Colorado Cattlemen's Agricultural Land Trust |
| CDOW | = | State of Colorado, Department of Natural Resources, *formerly* Colorado Division of Wildlife, *now* Colorado Parks and Wildlife |
| COL | = | Colorado Open Lands |

39

BLM_0076763

## Conservation Easements on Private Land in the Crawford Area



BLM_0076764

Critical Habitat in Unit 5, Crawford

2568 Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules

(11) Unit 6: Gunnison Basin: Gunnison, Saguache, Montrose, and Hinsdale Counties, Colorado.

(i) *General Description:* 298,173 ha (736,802 ac); 43.2 percent of all critical habitat.

(ii) Map of Unit 6, Gunnison Basin: Gunnison, Saguache, Montrose, and Hinsdale Counties, Colorado, follows:



**Unit 6:**
**Gunnison Basin**

BLM_0076766

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 6:  Gunnison Basin

| Current Owner | Total CE Acres | *Acres in Occupied Habitat* | *Acres in Unocc. Habitat* | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity *(HQ = headquarters)* |
|---|---|---|---|---|---|---|---|---|---|---|
| Alexander | 590 | *590* | *0* | Gunnison | 12/19/03<br>12/30/09<br>12/30/09 | #537905<br>#596113<br>#596114 | RMEF<br>RMEF<br>RMEF | 3983-000-00-086 | 1 | One 590-ac parcel with no building areas. |
| Allen | 1190 | *1190* | *0* | Gunnison | 11/14/03<br>11/14/03<br>11/14/03 | #536700<br>#536701<br>#546702 | COL<br>COL<br>COL | 3515-000-00-040<br>3517-000-00-016<br>3517-000-00-018<br>3701-000-00-202<br>3699-000-00-123 | 1, 2, 3 | One 1070-ac parcel, one 40-ac parcel, one 40-ac parcel added to an adjacent parcel, and one 80-ac parcel added to another adjacent parcel. No building areas.  No residences. |
| Altman | 36 | *0* | *36* | Gunnison | 12/29/06 | #571973 | BCRLT | 3779-000-01-003 | 1 | One 36-ac parcel with no building areas. |
| Anders | 874 | *874* | *0* | Gunnison | 10/24/00 | #507021 | CBLT | 3435-000-00-027 | 1 | One 874-ac parcel with a HQ area that includes two residences and ag structures. |
| Ballantyne | 560 | *560* | *0* | Gunnison | 6/30/06 | #566574 | CDOW | 3789-000-00-035<br>3973-000-00-004 | 1, 2, 3 | One 560-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Bear Ranch | 910 | *910* | *0* | Gunnison | 12/21/07<br>12/21/07<br>12/21/07<br>12/21/07<br>12/21/07 | #581193<br>#581194<br>#581195<br>#581196<br>#581197 | TNC<br>TNC<br>TNC<br>TNC<br>TNC | 3781-000-00-022 | 1, 3 | Five 182-ac parcels, each with a 5-ac HQ area that includes one residence and ag structures. |
| Black Mesa Land | 1687 | *0* | *1687* | Montrose<br><br><br><br><br><br><br>Gunnison | 11/11/03<br>8/11/04<br>11/9/05<br>12/14/07<br>12/31/08<br>12/13/10<br>11/9/05<br>11/22/06<br>12/14/07 | #712528<br>#725499<br>#746491<br>#784493<br>#798038<br>#820354<br>#560557<br>#571155<br>#581049 | BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT | 3773-351-00-025<br><br><br><br><br><br><br>3777-000-00-008 | 1 | One 1687-ac parcel with no building areas. |

BLM_0076767

| | | | | | 12/30/08 | #588351 | BCRLT | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 12/14/09 | #595993 | BCRLT | | | |
| | | | | | 12/14/10 | #602553 | BCRLT | | | |
| | | | | | 11/4/11 | #609307 | BCRLT | | | |
| Callihan | 254 | *254* | *0* | Saguache | 4/8/11 | #369176 | CCALT | 3969-201-00-040 | 1, 2, 3 | One 254-ac parcel with a 10-ac HQ area that includes one residence and ag structures. |
| Cochetopa Creek | 1100 | *1100* | *0* | Saguache | 12/14/07 | #360693 | CCALT | 4325-153-00-009 | 1 | One 1100-ac parcel with a 20-ac HQ area that includes up to five residences, four cabins and ag structures, and a 15-ac HQ that includes three residences and ag structures.  This parcel may be divided into either a 940-ac parcel and a 160-ac parcel, or two parcels of at least 500 acres. |
| | | | | | 12/27/10 | #368381 | CCALT | | | |
| Cole | 307 | *307* | *0* | Gunnison | 12/21/99 | #498780 | CCALT | 3969-000-00-022 | 1, 2, 3 | One 307-ac parcel with a HQ area that includes one residence and ag structures. |
| | | | | Saguache | 12/21/99 | #328878 | CCALT | 3969-161-00-016 | | |
| Cross Bar | 643 | *0* | *643* | Saguache | 12/20/10 | #368328 | COL | 3963-154-00-008 | 1, 2 | One 643-ac parcel with a 2-ac area and a 5-ac area, each with one residence and ag structures. |
| | | | | | | | | 3963-224-00-018 | | |
| Curecanti | 8884 | *0* | *8884* | Gunnison | 3/10/98 | #482312 | RMEF | 3779-000-00-026 | 1 | One 8884-ac parcel with a HQ area that includes one residence and ag structures, a 10-ac area with one residence and ag structures, and a defined development area for up to four residences or three residences and a lodge. Also one remote |
| | | | | | 12/14/00 | #507686 | RMEF | | | |

BLM_0076768

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | seasonal cabin. |
| Double Heart | 872 | *872* | *0* | Gunnison | 6/23/98 | #484625 | TNC | 3969-000-00-009 3793-000-00-028 3793-000-00-042 | 1, 2, 3 | One 872-ac parcel with a HQ area that includes one residence and ag structures. |
| Double Heart | 360 | *360* | *0* | Gunnison Saguache | 12/18/03 12/18/03 | #537679 #343697 | RMEF RMEF | 3967-000-00-011 3967-171-00-006 | 1 | One 360-ac parcel with a 5-ac HQ area that includes three residences and ag structures. |
| Eagle Ridge | 4351 | *4351* | *0* | Gunnison | 3/16/94 1/27/00 1/27/00 | #450091 #499356 #499359 | (none) | 3513-000-00-002 3515-000-00-024 3515-000-02-001 3515-000-03-001 3515-000-01-001 | 1 | One 4351-ac parcel with two residences, two cabins and ag structures. Although not a traditional CE, the recorded "Conservation Covenants" restrict subdivision and development in perpetuity. |
| Elze | 184 | *184* | *0* | Gunnison | 11/14/03 | #536700 | COL | 3515-000-00-034 | 1, 2, 3 | One 184-ac parcel with a 5-ac HQ area that includes one residence and ag structures, and a 6-ac area for ag structures only. The 5-ac area may be separated. |
| Elze | 113 | *113* | *0* | Gunnison | 11/14/03 | #536700 | COL | 3701-000-00-162 | 1, 2, 3 | One 113-ac parcel with a 10-ac HQ area and a 5-building area that each include one residence and ag structures.  The 5-ac area may separated. |
| Field | 594 | *594* | *0* | Gunnison | 10/20/98 | #489010 | CCALT | 3791-000-00-049 | 1, 2, 3 | One 594-ac parcel with a HQ area that includes two residences and ag structures. |
| Field | 160 | *160* | *0* | Gunnison | 3/28/00 | #500587 | CCALT | 3791-000-00-006 | 1, 2, 3 | One 160-ac parcel with a HQ area that includes one residence and ag structures. |

BLM_0076769

| Flying W | 2433 | 2433 | 0 | Gunnison | 12/20/02 | #526681 | TNC | 4053-000-00-109 | 1, 3 | One 2433-ac parcel with a 10-ac HQ area and two 5-ac building areas, each including one residence and ag structures. |
|---|---|---|---|---|---|---|---|---|---|---|
| Fulton | 397 | 0 | 397 | Gunnison | 5/15/07 8/21/08 | #575310 #585961 | CCALT CCALT | 3781-000-00-015 3781-000-00-012 | 1, 2 | One 397-ac parcel with a HQ area that includes one residence, ag structures and one small seasonal cabin. |
| Fuyu Farms | 97 | 97 | 0 | Gunnison | 12/22/00 | #489010 | CCALT | 3791-000-00-006 | 1 | Two parcels of 36 ac and 61 ac, each with a building area that includes one residence and ag structures. |
| Fuyu Farms | 759 | 759 | 0 | Gunnison | 12/29/97 | #480732 | CCALT | 3791-000-00-055 | 1 | One 759-ac parcel with a HQ area that includes one residence and ag structures; up to three residences elsewhere. |
| Gateview | 265 | 0 | 265 | Gunnison | 12/17/97 | #480577 | BLM | 4245-000-00-037 4245-000-00-033 4245-000-00-011 | 1, 2 | One 265-ac parcel with a HQ area that includes three residences and ag structures. |
| Graham | 184 | 184 | 0 | Gunnison | 12/4/12 | #617208 | CBLT | 3787-000-00-104 | 1, 3 | One 184-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Guerrieri | 160 | 160 | 0 | Gunnison | 10/25/99 | #497480 | CCALT | 3439-000-00-012 | 1, 2 | One 160-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Guerrieri Land and Cattle | 115 | 115 | 0 | Gunnison | 12/13/05 | #559345 | COL | 3701-000-00-149 | 1, 2 | One 115-ac parcel with a HQ area that includes ag structures. No residences. |
| Guerrieri Land and Cattle | 112 | 112 | 0 | Gunnison | 11/14/03 | #536700 | COL | 3701-000-00-193 | 1, 2, 3 | One 112-ac parcel with two areas for ag structures only. No residences. |
| Guerrieri | 320 | 320 | 0 | Gunnison | 11/14/03 | #536700 | COL | 3701-000-00-012 | 1, 2, 3 | One 320-ac parcel with |

BLM_0076770

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Ranches | | | | | 11/13/03 | #536707 | COL | | no building areas. |
| Guerrieri Ranches | 293 | *293* | *0* | Gunnison | 11/14/03 11/14/03 | #536700 #536708 | COL COL | 3701-000-00-041 3701-000-00-192 | 1, 2, 3 | One 293-ac parcel with a 27-ac HQ area that includes two residences and ag structures. |
| Gunnison Riverbanks | 384 | *384* | *0* | Gunnison | 12/22/03 3/26/04 | #537873 #540185 | CBLT CBLT | 3699-040-01-001 | 1 | One 384-ac parcel with no building areas. |
| Gunnison Valley | 160 | *160* | *0* | Gunnison | 6/10/13 | #620623 | CPW | 3699-000-00-127 | 1, 2, 3 | One 160-ac parcel with no building areas. |
| Hinkle | 300 | *300* | *0* | Gunnison | 11/14/03 11/14/03 | #536705 #536706 | COL COL | 3437-000-00-017 | 1 | One 300-ac parcel with no building areas. |
| Hollenbeck | 282 | *282* | *0* | Gunnison | 4/23/04 | #541247 | CCALT | 3789-000-00-026 | 1, 2 | One 282-ac parcel with no building areas. |
| Howell | 623 | *623* | *0* | Gunnison | 6/11/99 | #493735 | BCRLT | 4047-000-00-009 | 1 | One 623-ac parcel with three 5-ac building areas that each include one residence and ag structures. |
| Irby | 197 | *197* | *0* | Gunnison | 12/10/03 | #537437 | COL | 3969-000-00-045 | 1, 2 | One 197-ac parcel with a 7-ac HQ area that includes one residence and ag structures. |
| Irby | 456 | *456* | *0* | Gunnison | 6/14/04 9/14/06 | #543071 #569021 | COL COL | 3967-000-00-012 | 1, 2 | One 456-ac parcel with an 8-ac HQ area that includes one residence and ag structures, and a 7-ac area for ag structures only. |
| Irby | 321 | *321* | *0* | Saguache | 6/16/09 | #364476 | COL | 3967-232-00-016 | 1, 2 | One 321-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Kaichen | 243 | *243* | *0* | Gunnison | 5/13/05 9/5/06 | #561376 #569518 | CDOW CDOW | 3979-000-00-003 | 1, 3 | This 243-ac parcel may be divided into two parcels, each with a building area that includes one residence; one also includes four cabins. |
| Knott | 420 | *0* | *420* | Gunnison | 10/29/03 7/21/04 | #536206 #544288 | BCRLT BCRLT | 3777-000-00-004 3779-000-00-009 | 1 | One 420-ac parcel with a 2-ac HQ area that |

47

BLM_0076771

| | | | | | 8/18/05 | #557054 | BCRLT | | | includes one residence and ag structures. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 10/10/06 | #570291 | BCRLT | | | |
| Knott | 120 | *0* | *120* | Gunnison | 10/23/09 | #594746 | BCRLT | 3779-000-00-009 | 1 | One 120-ac parcel with a 1-ac HQ area that includes one seasonal cabin and ag structures. |
| Kruthaupt | 470 | *470* | *0* | Gunnison | 9/19/99 | #496498 | CCALT | 3793-000-00-025 3793-000-00-068 3969-000-00-012 | 1, 2, 3 | One 470-ac parcel with a 5-ac HQ area that includes two residences and ag structures. |
| Lone Oak, 5 Lazy K | 358 | *358* | *0* | Gunnison | 9/15/00 | #505162 | CCALT | 3789-000-00-069 3789-000-00-068 | 1, 2, 3 | One 200-ac parcel and one 158-ac parcel, each with a HQ area that includes a residence and ag structures. |
| Lypps | 1584 | *1584* | *0* | Gunnison | 6/30/06 | #566576 | CDOW | 3789-000-00-043 3973-000-00-002 | 1, 2, 3 | This 1584-ac parcel may be divided into one 1374-ac parcel and six 35-ac parcels. Each 35-ac parcel may have one 5-ac building area with one residence and ag structures; one of these building areas may be 12 acres. |
| Maldarella | 199 | *199* | *0* | Gunnison | 9/29/98 | #487412 | TNC | 3791-230-00-010 | 1, 2, 3 | One 199-ac parcel with a 5-ac HQ area that includes one residence and ag structures; this 5-ac area may be owned separately. |
| | | | | | 4/14/06 | #564389 | TNC | | | |
| Mathews | 53 | *0* | *53* | Gunnison | 12/26/06 | #571971 | BCRLT | 3779-000-00-012 | 1 | One 53-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Mesa Creek | 400 | *0* | *400* | Montrose | 12/8/10 | #820254 | BCRLT | 3773-331-00-020 | 1 | One 400-ac parcel with no building areas. |
| Mesa Valley | 470 | *470* | *0* | Gunnison | 12/7/99 | #498583 | TNC | 3981-000-00-058 3981-000-00-060 | 1, 3 | One 470-ac parcel with a 2-ac HQ area that includes one residence and ag structures. |

BLM_0076772

| Mill Creek | 320 | *320* | *0* | Gunnison | 11/14/03 11/14/03 | #536710 #536711 | COL COL | 3437-000-00-088 | 1, 2, 3 | One 320-ac parcel with a 5-ac HQ area that includes one residence and ag structures. This parcel may be divided into two 160-ac parcels, as long as one is adjacent to other ranchland under the same ownership. |
|---|---|---|---|---|---|---|---|---|---|---|
| Miller | 280 | *280* | *0* | Gunnison | 11/14/03 | #536700 | COL | 3515-000-00-046 | 1, 2, 3 | One 280-ac parcel with a 35-ac HQ area that includes two residences and ag structures. |
| Nelson | 150 | *150* | *0* | Gunnison | 3/21/00 | #500432 | CCALT | 3969-000-00-031 3967-000-00-014 3969-000-00-036 | 1, 2, 3 | One 150-ac parcel with a HQ area that includes two residences and ag structures. |
| Pesnell | 465 | *465* | *0* | Gunnison | 9/26/02 4/24/08 | #524120 #583502 | COL COL | 3969-000-00-043 | 1, 2, 3 | One 465-ac parcel with a HQ area that includes two cabins and ag structures, and a second area that includes one residence. |
| Peterson | 520 | *520* | *0* | Gunnison | 1/6/99 | #490030 | CCALT | 3791-000-00-028 3793-000-00-020 3793-000-00-044 3793-000-00-019 3791-000-00-025 | 1, 2 | One 520-ac parcel with a HQ area that includes ag structures. No residences. |
| Phelps | 248 | *248* | *0* | Gunnison | 9/18/00 10/29/07 | #505161 #579926 | CCALT CCALT | 3791-000-00-065 3791-000-00-067 | 1, 2, 3 | One 147-ac parcel with no building areas, and one 101-ac parcel with a 9-ac HQ area that includes one residence and ag structures. |
| Pinnacles | 705 | *705* | *0* | Gunnison | 12/12/00 12/11/03 12/12/03 11/22/04 5/19/11 5/19/11 | #507594 #537449 #537765 #548599 #605689 #605694 | TNC TNC TNC TNC TNC TNC | 3981-000-01-001 3981-000-01-002 3981-000-01-003 3981-000-01-004 3981-000-01-005 3981-000-01-006 3981-000-01-009 | 1, 3 | One 705-ac wildlife habitat parcel aggregated from 20 separate ownerships. Eleven 2-ac building envelopes are clustered within a small area. |

49

BLM_0076773

| | | | | | | | | 3981-000-01-010 | | |
| | | | | | | | | 3981-000-01-011 | | |
| | | | | | | | | 3981-000-01-012 | | |
| | | | | | | | | 3981-000-01-013 | | |
| | | | | | | | | 3981-000-01-014 | | |
| | | | | | | | | 3981-000-01-015 | | |
| | | | | | | | | 3981-000-01-016 | | |
| | | | | | | | | 3981-000-01-017 | | |
| | | | | | | | | 3981-000-01-018 | | |
| | | | | | | | | 3981-000-01-020 | | |
| | | | | | | | | 3981-000-01-021 | | |
| | | | | | | | | 3981-000-02-001 | | |
| | | | | | | | | 3981-000-02-002 | | |
| | | | | | | | | 3981-000-02-003 | | |
| Ranch Properties | 3590 | *3590* | *0* | Gunnison | 12/28/09 | #596062 | TNC | 3437-000-00-089 | 1, 3 | One 3590-ac parcel with a 15-ac HQ area that includes two residences and ag structures, a shooting-structures area for target sports, and two 1-ac areas that include one cabin each. |
| Razor Creek | 117 | *117* | *0* | Gunnison | 12/11/98 12/11/98 | #489414 #489591 | CCALT CCALT | 3793-000-00-022 | 1, 2, 3 | One 117-ac parcel with a HQ area that includes one residence. |
| Razor Creek | 680 | *680* | *0* | Gunnison | 2/16/89 12/6/89 10/30/90 | #412579 #417641 #423522 | CDOW CDOW CDOW | 3969-000-00-039 | 1, 2, 3 | One 680-ac parcel with no building areas. |
| Razor Creek | 150 | *150* | *0* | Saguache | 1/9/01 | #333650 | CCALT | 3969-163-00-012 3969-171-00-007 | 1, 2 | One 150-ac parcel with no building areas. |
| Razor Creek | 300 | *300* | *0* | Gunnison | 11/10/05 | #560509 | COL | 3969-000-00-049 | 1, 2, 3 | One 300-ac parcel with a HQ area that includes ag structures only.  No residences. |
| Razor Creek | 430 | *430* | *0* | Gunnison Saguache | 6/13/06 6/13/06 | #565966 #355484 | COL COL | 3969-000-00-049 | 1, 2, 3 | One 430-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Razor Creek | 760 | *760* | *0* | Saguache Gunnison Saguache | 12/16/08 1/24/12 1/24/12 | #363293 #610907 #370969 | COL COL COL | 3969-201-00-040 3969-000-00-049 3969-201-00-040 | 1, 2, 3 | One 600-ac parcel with a 5-ac and a 7-ac area for ag structures only; no |

BLM_0076774

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | residences. Also one 160-ac parcel with a 10-ac HQ area that includes two residences and ag structures. |
| Redden | 1273 | *1273* | *0* | Gunnison | 7/21/98<br>11/14/03<br>11/14/03<br>11/14/03<br>1/23/07<br>1/1/07 | #485799<br>#536700<br>#536703<br>#536704<br>#572457<br>#572691 | CCALT<br>COL<br>COL<br>COL<br>COL<br>COL | 3515-000-00-008<br>3515-000-00-039 | 1, 2, 3 | One 1273-ac parcel with a HQ area that includes two residences and ag structures, five 5-ac areas each with one residence, and a 20-ac area that includes only ag structures. |
| Reserve on the East River | 643 | *643* | *0* | Gunnison | 12/29/06 | #571977 | CBLT | 3435-000-00-068<br>3435-000-00-050 | 1 | One 640-ac parcel with a 2-ac HQ area that includes ag structures only. No residences. |
| Rivergate, Gorsuch | 1170 | *0* | *1170* | Gunnison | 12/23/97 | #480780 | CF to CCALT | 4051-000-00-079<br>4051-000-02-004<br>4051-000-02-011<br>4051-000-02-012<br>4051-000-02-013<br>4051-000-02-014<br>4051-000-02-015<br>4051-000-02-016<br>4245-000-00-036<br>4245-000-01-001<br>4245-000-01-002<br>4245-000-01-003<br>4245-000-01-004 | 1, 2 | This 1170-ac parcel may be divided into four parcels, each with a building area: a 7-ac area with four residences, two cabins and ag structures; a 7-ac area with 3 residences and ag structures; and two 5-ac areas, each with two residences and ag structures. Also 40 acres may be separated from the larger parcel to be acquired by the adjoining landowner. The CE would still apply. |
| Robbins | 500 | *500* | *0* | Gunnison | 3/31/05 | #552252 | COL | 3785-000-00-004 | 1, 2, 3 | One 500-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Robbins | 487 | *487* | *0* | Gunnison | 11/8/06 | #570730 | COL | 3785-000-00-004 | 1, 2, 3 | One 487-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |

BLM_0076775

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Smith | 105 | 0 | 105 | Gunnison | 12/26/06 | #571970 | BCRLT | 3779-000-00-025 | 1 | One 105-ac parcel with two 2-ac areas that each include one residence and ag structures. |
| Snyder | 6698 | 6698 | 0 | Saguache | 12/19/08 | #363242 | CDOW | 4235-116-10-015 | 1, 2, 3 | One 6698-ac parcel with no building areas. |
| Soap Creek | 800 | 0 | 800 | Gunnison | 12/29/98 3/1/00 3/1/00 12/31/08 | #489932 #499974 #499975 #588365 | COL COL COL COL | 3781-000-00-026 3781-000-01-001 3781-000-01-002 3781-000-02-001 3781-000-03-001 | 1 | One 640-ac parcel and four 40-ac parcels, each with a HQ area that includes one residence and ag structures. |
| Taramarcaz | 650 | 650 | 0 | Gunnison | 3/30/00 | #500970 | CCALT | 3793-000-00-049 | 1, 2 | One 650-ac parcel with no building areas. This parcel may be divided into thirds within the immediate family. This right retires with the passing of the senior owner. |
| TEM | 339 | 339 | 0 | Gunnison | 9/24/02 7/17/09 7/17/09 | #524119 #592257 #592258 | COL COL COL | 3969-000-00-054 | 1, 2 | One 339-ac parcel with a HQ area that includes one residence and ag structures. |
| Templeton | 99 | 99 | 0 | Saguache | 9/19/05 | #352214 | COL | 3963-193-00-024 | 1, 2 | One 99-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Tomichi Creek Wetlands | 80 | 0 | 80 | Gunnison | 12/18/03 | #537841 | NRCS | 3787-110-01-005 | 1, 2 | One 80-ac parcel with no building areas. |
| Trampe | 978 | 978 | 0 | Gunnison | 12/19/03 | #537704 | COL | 3517-000-00-037 3435-000-00-041 3435-000-00-058 | 1 | One 978-ac parcel with a 6-ac HQ area that includes one residence and ag structures. |
| Vader | 299 | 299 | 0 | Gunnison | 12/15/03 | #537593 | COL | 3793-000-00-054 | 1, 2, 3 | One 299-ac parcel with an 8-ac HQ area that includes two residences and ag structures. |
| Van Dyke | 88 | 0 | 88 | Gunnison | 12/27/02 | #526804 | CNLT | 4053-000-00-118 | 1 | One 88-ac parcel. No specified building area. Existing residences may be enlarged. Ag |

52

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | structures allowed. |
| Whinnery, Helen | 280 | *280* | *0* | Gunnison | 12/16/02 | #516561 | COL | 3981-000-00-050 | 1, 3 | One 280-ac parcel with no building areas. |
| Whinnery, Helen | 200 | *200* | *0* | Gunnison | 12/28/04 | #549647 | COL | 4049-000-00-146 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Helen | 150 | *150* | *0* | Gunnison | 12/23/05 | #561721 | COL | 3983-000-00-091 | 1, 3 | One 150-ac parcel with no building areas. |
| Whinnery, Helen | 120 | *120* | *0* | Gunnison | 12/28/06 2/27/07 | #571990 #573230 | COL COL | 4051-000-00-088 | 1, 3 | One 120-ac parcel with no building areas. |
| Whinnery, Helen | 160 | *0* | *160* | Gunnison | 4/10/13 | #619481 | COL | 4313-000-00-005 | 1 | One 160-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Whinnery, Helen | 680 | *0* | *680* | Gunnison | 12/27/07 12/23/08 | #581261 #588265 | COL COL | 4245-000-00-025 4245-000-00-025 | 1 | One 680-ac parcel with no building areas and minor ag structures. |
| Whinnery, Helen | 160 | *0* | *160* | Gunnison | 6/27/12 | #613807 | COL | 4313-000-00-003 | 1 | One 160-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Whinnery, Stanley | 200 | *200* | *0* | Gunnison | 12/22/03 | #535805 | COL | 3983-000-00-089 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Stanley | 200 | *200* | *0* | Gunnison | 12/27/04 | #549630 | COL | 3983-000-00-095 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Stanley | 150 | *150* | *0* | Gunnison | 12/23/05 | #561722 | COL | 4051-000-00-084 | 1, 3 | One 150-ac parcel with no building areas. |
| Whinnery, Stanley | 101 | *101* | *0* | Gunnison | 12/28/06 2/27/07 | #571989 #573231 | COL COL | 4051-000-00-089 | 1, 3 | One 101-ac parcel with no building areas. |
| Whinnery, Steven | 200 | *200* | *0* | Gunnison | 12/22/03 | #537748 | COL | 3983-000-00-090 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Steven | 200 | *200* | *0* | Gunnison | 12/27/04 | #549629 | COL | 3983-000-00-096 4049-000-00-156 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Steven | 154 | *154* | *0* | Gunnison | 12/23/05 | #561723 | COL | 4049-000-00-156 | 1, 3 | One 154-ac parcel with no building areas. |
| Whinnery, Steven | 149 | *149* | *0* | Gunnison | 12/28/06 2/27/07 | #571988 #573232 | COL COL | 4049-000-00-156 | 1, 3 | One 149-ac parcel with no building areas. |
| Whinnery, Steven | 88 | *88* | *0* | Gunnison | 12/27/07 | #581259 | COL | 4051-000-00-087 | 1, 3 | One 88-ac parcel with no building areas. |
| Whinnery, Steven | 200 | *0* | *200* | Gunnison | Fall 2013 | pending | COL | 4245-000-00-044 | 1, 3 | One 200-ac parcel with no building areas. |
| Wilderson | 560 | *560* | *0* | Gunnison | 6/26/02 | #521506 | CDOW | 3979-000-00-042 | 1, 2, 3 | One 560-ac parcel with |

BLM_0076777

| | | | | | 10/14/03 1/22/13 | #535719 #618078 | CDOW CDOW | 4053-000-00-006 | two 18-ac building areas that each include one residence and ag structures. Two 35-ac parcels may be divided from the larger parcel, each with one of the building areas. |
|---|---|---|---|---|---|---|---|---|---|
| **Total CE Acres:** | 62,720 | *46,372* | *16,348* | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | *178,531* | *56,614* | | | | | | |
| **CE Percent:** | | *26%* | *29%* | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements:  The conservation values must be sustained in perpetuity.  Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover.  Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property.  Surface mining is prohibited.  Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted.  Noxious weeds and invasive plant species must be controlled.  Water rights are permanently attached to the property.  Surface disturbance is prohibited.  Industrial uses are prohibited.  Commercial uses must be consistent with the conservation values.  Trash accumulation is prohibited.  Motor vehicle use is restricted.  Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies.  A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:

| | | |
|---|---|---|
| BCRLT | = | Valley Land Conservancy *dba* Black Canyon Regional Land Trust |
| BLM | = | U.S. Dept. of the Interior, Bureau of Land Management |
| CBLT | = | Crested Butte Land Trust |
| CCALT | = | Colorado Cattlemen's Agricultural Land Trust |
| CDOW | = | State of Colorado, Department of Natural Resources, *formerly* Colorado Division of Wildlife, *now* Colorado Parks and Wildlife |
| CF | = | Conservation Fund |
| CNLT | = | Colorado Natural Land Trust |
| COL | = | Colorado Open Lands |
| NRCS | = | U.S. Dept. of Agriculture, Natural Resources Conservation Service |
| RMEF | = | Rocky Mountain Elk Foundation |
| TNC | = | The Nature Conservancy |

BLM_0076778

Conservation Easements on Private Land in the Gunnison Basin



BLM_0076779

Critical Habitat in Unit 6, Gunnison Basin

Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules    2569



[12] Unit 7: Poncha Pass: Saguache and Chaffee Counties, Colorado.

(i) *General Description:* 19,543 ha [48,292 ac]; 2.8 percent of all critical habitat.

(ii) Map of Unit 7, Poncha Pass: Saguache and Chaffee Counties, Colorado, follows:

56



**Unit 7:
Poncha Pass**

BLM_0076781

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 7: Poncha Pass

| Current Owner | Total CE Acres | *Acres in Occupied Habitat* | *Acres in Unocc. Habitat* | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity *(HQ = headquarters)* |
|---|---|---|---|---|---|---|---|---|---|---|
| Dragos | 521 | *0* | *521* | Saguache | 12/23/00 12/11/01 | #332238 #336197 | COL RiGHT | 4221-171-00-108 | 1 | One 654-ac parcel with a 15-ac building area that includes two residences and ag structures, and a 5-ac building area that includes one residence and ag structures. May be divided in half. |
| **Total CE Acres:** | **521** | *0* | *521* | | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | *4,792* | *11,128* | | | | | | | |
| **CE Percent:** | | *0%* | *5%* | | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements: The conservation values must be sustained in perpetuity. Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover. Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property. Surface mining is prohibited. Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted. Noxious weeds and invasive plant species must be controlled. Water rights are permanently attached to the property. Surface disturbance is prohibited. Industrial uses are prohibited. Commercial uses must be consistent with the conservation values. Trash accumulation is prohibited. Motor vehicle use is restricted. Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies. A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:
COL   =   Colorado Open Lands
RiGHT   =   Rio Grande Headwaters Trust

BLM_0076782

Conservation Easements on Private Land in the Poncha Pass Area



BLM_0076783

Critical Habitat in Unit 7, Poncha Pass



BLM_0076784



# BOARD OF COMMISSIONERS

KRIS HOLSTROM          HILARY COOPER          JOAN MAY

February 28, 2018

Tim Spisak, Acting Assistant Director
Energy, Minerals, and Realty Management
Bureau of Land Management (BLM)

Reggie Woodruff, Energy Program Manager
Washington Office Lands & Realty Management
U.S. Forest Service (USFS)

Georgeann Smale, WO-301 Realty Specialist
Bureau of Land Management (BLM)

Jeremy Bluma
National Project Manager
Section 368 West-Wide Energy Corridors Regional Review Project
Bureau of Land Management (BLM)

Brian Mills, Senior Planning Advisor
U.S. Department of Energy (DOE)

Via upload to http://corridoreis.anl.gov/involve/stakeholder-input/ and email to
blm_wo_368corridors@blm.gov

RE: Section 368 West-Wide Energy Corridors Region 2 Review

Dear Mr. Spisak, Mr. Woodruff, Ms. Smale, Mr. Bluma, and Mr. Mills,

Thank you for the opportunity to comment on the energy corridor abstract for Region 2, Corridor
130-274/130-274(E) of the Section 368 West-wide Energy Corridors (WWEC).  San Miguel
County has been engaged in the Section 368 Corridor process as co-plaintiffs in the 2012
Settlement Agreement[1].

San Miguel County has the responsibility of ensuring the health, safety, and welfare within the
County.  Our responsibility extends to environmental health, which includes watershed health,
soil health, and protection of wildlife habitat.  Environmental quality is very important to San
Miguel County.  San Miguel County through its Board of County Commissioners and designated
officials collaborates, cooperates, and coordinates with federal land agencies on federal land
planning and projects.  Sixty percent of the land in San Miguel County is federal public land,

---

[1] http://corridoreis.anl.gov/documents/docs/Settlement_Agreement_Package.pdf

P.O. BOX 1170  •  Telluride, Colorado  81435  •  (970) 728-3844  •  FAX (970) 728-3718

with another 4% being owned by the State of Colorado; 70.6 % of San Miguel County is a federal mineral estate.  Only 36% of San Miguel County consists of private land.

San Miguel County has assisted in the protection of thousands of acres of private lands with important wildlife habitat values, especially Gunnison Sage-grouse (GuSG) critical habitat, during the last few decades by participating in the acquisition of conservation easements intended to preserve and protect GuSG habitat.  San Miguel County has financially contributed over $2.25 million of local taxpayer dollars during this period for GuSG habitat conservation and improvements through the County's Land Heritage Program, co-funding of the Gunnison Sage-grouse Working Group and funding of other actions intended to provide direct benefits to GuSG recovery and resilience.  SMC continues to actively participate with the stakeholder group that developed the Gunnison Sage-grouse Rangewide Conservation Plan.[2]  San Miguel County is a Cooperating Agency for the ongoing BLM Gunnison Sage-Grouse (GuSG) Rangewide Resource Management Plan (RMP) Amendments and Environmental Impact Statement (EIS).[3]

San Miguel County appreciates the coordination and efforts of the Bureau of Land Management (BLM), Department of Energy (DOE) and United States Forest Service (USFS), hereafter, "*Agencies*", on working toward meeting the terms of the 2012 Settlement Agreement with co-plaintiffs through reevaluation of energy corridor designations and recommendations and undertaking periodic reviews of these corridors.  San Miguel County supports the comments submitted by The Wilderness Society, et al., on February 23, 2018.  We are also in support of the comments submitted by Defenders of Wildlife, the Center for Biological Diversity, and the National Audubon Society on February 23, 2018, and comments submitted by National Trust *for* Historic Preservation on February 24, 2018.  We strongly support comments provided by Colorado Parks and Wildlife (CPW) on February 23, 2018.

---

[2] http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx
[3] https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=39681

BLM_0076786

SAN MIGUEL COUNTY

**Summary of San Miguel County Requests and Findings from a review of the portion of Corridor 130-274/130-274(E) and Abstracts intersecting San Miguel County.**

San Miguel County (hereafter, "*SMC*") reviewed the portion of Corridor 130-274/130-274(E) that intersects SMC, shown in Figure 1 below.  We referred to the Section 368 Energy Corridor Mapping Tool[4], January 2018 Corridor 130-274/130-274 (E) Abstract[5]  and West-Wide Energy Corridor (WWEC) Conflict Assessment Table[6] during our review, as well as our in-house GIS reference layers.  We are happy to provide the non-proprietary layers to the Agencies upon request.



Figure 1:  Screen-capture of the Section 368 Energy Corridor Mapping Tool showing the portion of Corridor 130-274/130-274(E) intersecting San Miguel County, Colorado, (within the red oval) which is the focus of our analysis and comments.

1.  **Agreement with CPW on treating GuSG Critical Habitat in the San Miguel Basin satellite population of GuSG and treating private lands encumbered with conservation easements as Exclusion Areas.**

With respect to the February 23, 2018, CPW comments that are specific to Corridor 130-274, SMC believes they should be applied to both 130-274/130-274(E). We strongly agree that these corridors should be rerouted to avoid GuSG Critical Habitat.  We agree that GuSG Critical Habitat should be designated a ROW Exclusion Area.  Any impacts to GuSG Critical Habitat should require compensatory mitigation.  We agree that the corridors should avoid CPW-owned land and private lands encumbered by conservation easements.

---

[4] https://bogi.evs.anl.gov/section368/portal/ (Accessed February 2018)
[5] https://bogi.evs.anl.gov/section368/abstracts/corridor-130-274.pdf
[6] http://corridoreis.anl.gov/documents/docs/conflict_assessment_table.pdf

3

**Our SMC Section 368 Corridor 130-274/130-274(E) Screen Tool (Attachment A)** shows where private land conservation easements have been achieved through the assistance of our County Land Heritage Program.  The Regional Review team should obtain current data on the locations, extents, and primary conservation values of conserved lands within San Miguel County.

We agree with CPW that existing overhead transmission lines having impacts to GuSG Critical Habitat should not have their ROW expanded and should be buried with compensatory mitigation required.

Furthermore, transmission lines intersecting areas with scenic qualities/visual resources important to San Miguel County should be buried and sited to ensure retention of Wilderness/Roadless/wildland characteristics.   If a corridor to accommodate overhead transmission lines is needed, preference should be given to locating it within the footprint of an existing ROW having overhead transmission lines, such as the Tri-State Nucla-Cahone expansion which has just completed an EIS process.

2. **Achieve primary objectives and Agency Guidance provided by the Settlement Agreement.**

It is our understanding that the primary objectives of the Settlement Agreement[7] include ensuring that future revisions, deletions, or additions to the Section 368 energy corridors comply with the Federal Land Policy and Management Act (FLPMA), the National Environmental Policy Act (NEPA), and Section 368 of the Energy Policy Act of 2005 (EPAct) and consider the following:

1. Location of corridors in favorable landscapes;
2. Facilitation of renewable energy projects where feasible;
3. Avoidance of environmentally sensitive areas to the maximum extent practicable;
4. Diminution of the proliferation of dispersed rights-of-way ("ROWs") crossing the landscape; and
5. Improvement of the long-term benefits of reliable and safe energy transmission.

We expect that the Agency Guidance will adhere to the principles within the Settlement Agreement and will address the need for site-specific NEPA analysis for individual projects and that as stated on the Settlement Overview web page[8] Agency Guidance will include:

- *Encourage project proponents to locate projects within designated corridors or adjacent to existing ROWs, notify project proponents of any Section 368 energy corridor segments that are corridors of concern, and consider alternative locations if a proposed project would be located within a Section 368 energy corridor of concern segment.*
- *Corridors of concern are corridors that would have environmental impacts, extensive mitigation measures or would require preparation of EIS, alternative corridor considerations or LUP amendments. Corridors of concern are identified in Exhibit A of the Settlement Agreement.*
- *Site-specific projects will require individual NEPA analysis. To reduce redundant studies, encourage individual projects to 'incorporate by reference' data and studies in the Final PEIS. Tiering is not a substitute for site-specific analyses.*

---

[7] http://corridoreis.anl.gov/documents/docs/Settlement_Agreement_Package.pdf
[8] http://corridoreis.anl.gov/regional-reviews/settlement/

BLM_0076788

- *Procedures for periodic review and update of IOPs; use of IOPs outside designated corridors on federal land; and adoption of IOPs approved by the agencies.*
- *Revisions, deletions, and additions to corridors must meet the requirements specified in Section 368 of the EPAct and must consider the siting principles.*

We appreciate the Section 368 Corridor Study prepared by Argonne National Laboratory, dated May 2016[9] with the stated goal of evaluating "whether the Section 368 corridors are achieving their purpose to promote environmentally responsible corridor-siting decisions and to reduce the proliferation of dispersed ROWs crossing Federal lands." [10]  It also establishes a "baseline of current conditions and identifies considerations and areas which should be explored in more detail during future Regional Periodic Reviews of energy corridors conducted in the future by BLM and [US]FS." [11]

### 3.   New conditions require updated analysis and rerouting of Corridors 130-274/130-274(E).

SMC notes that the Corridor Study evaluated information during the period from January 2009 and October 2014.[12]  As will be discussed in more detail below, there are a number of new conditions that have developed that increase the significance of the impacts that the proposed Corridor 130-274/130-274(E) will have in environmentally sensitive areas in San Miguel County in order to access the federal lands where it is currently sited.

This period is prior to the listing of the Gunnison Sage-grouse as a threatened species protected by the Endangered Species Act (ESA) and prior to designation of critical habitat and several other important new conditions.  It is also prior to the initiation and/or decision of several major federal land agency planning processes that are currently in-progress:  BLM Tres Rios Resource Management Plan (RMP) – Areas of Critical Environmental Concern (ACEC) Amendment[13] contemplating designation or modification to numerous ACECs within western San Miguel County for Gunnison Sage-grouse, rare plants, and other sensitive ecosystems; BLM Gunnison Sage-Grouse (GuSG) Rangewide Resource Management Plan (RMP) Amendments and Environmental Impact Statement (EIS) [14] which has a decision area comprised of critical habitat and areas within 4-miles of GuSG leks and which could amend both the Tres Rios RMP and Uncompahgre RMP; Uncompahgre Field Office Resource Management Plan[15] which includes nominated Wild and Scenic River segments and nominated ACECs; and the Grand Mesa, Uncompahgre, and Gunnison National Forests (GMUG) Forest Plan revision[16] which is analyzing designation of Wilderness and other special lands.

---

[9]http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf
[10]http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf Page ES-1.
[11]http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf Page ES-2.
[12]http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf Page ES-2.
[13]https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=63796
[14]https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=39681
[15]https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=86003
[16]https://www.fs.usda.gov/main/gmug/landmanagement/planning

BLM_0076789

The BLM has issued Instructional Memorandum (IM) 2014-100,[17] which is in effect until rescinded and presents some of the best available interim guidance until the GuSG RMPa is finalized. The GMUG National Forest LRMP ROD was signed in 2013, prior to the listing of the GuSG and designation of critical habitat. The Agency Review and Analysis should recognize BLM IM 2014-100 and adhere to the guidance requiring focusing any type of development in non-habitat areas. This is a new condition, and SMC believes the Agencies should consider a revision to corridors such as 130-274/130-274(E) to adhere to this guidance.

BLM IM 2014-100[18], provides, *"The BLM will focus any type of development in non-habitat areas. Disturbance will be focused outside of a 4-mile buffer around leks. The BLM intends that little, or no disturbance occurs within the 4-mile buffer, except for valid existing rights, and except where benefits to the GUSG are greater compared to other available alternatives. This guidance:*

- *Recognizes the FWS Proposed Listing of the GUSG as endangered (78 FR 2486) under the Endangered Species Act (ESA) (January 11, 2013) posted at http://www.fws.gov/policy/library/2013/2012-31667.pdf.*
- *Provides updated direction regarding management and ongoing planning actions in GUSG occupied habitat.*
- *Recognizes that the BLM proposes to incorporate objectives and conservation measures for the protection of GUSG and its habitat into relevant Resource Management Plans (RMP) through a GUSG range-wide plan amendment process.*
- *Ensures continued coordination with the FWS, State fish and wildlife agencies, and other partners regarding implementation, updates and project prioritization for GUSG conservation and strategies identified in the Range-wide GUSG Conservation Plan (RCP) and local GUSG population conservation plans.*
- *Does not preclude developing or using additional conservation measures or strategies deemed necessary to maintain or enhance local GUSG habitat and populations."*

SMC believes the provisions of the MOU and Settlement Agreement require consideration of "avoidance of environmentally sensitive areas to the maximum extent possible" and "minimum impact on the environment." Therefore, the Agencies have an obligation in this review process to make "recommendations for revisions, deletions, and additions to the section 368 corridor network" and have an obligation to re-evaluate the corridor routes to determine whether avoidance of environmentally sensitive areas is practicable and whether alternative routes could provide similar utility with less environmental impact.

An additional new condition since October 2014 is the revised agreement between Colorado Department of Public Health and Environment, U.S. Environmental Protection Agency, WildEarth Guardians and the National Parks Conservation Association as part of revisions to the Colorado regional haze State Implementation Plan (SIP) in December 2016.[19] This agreement causes the retirement of multiple coal-fired electrical generation plants in western Colorado:  the 427-MW Unit, 1 at Craig Station, will be retired by Dec. 31, 2025, and the Tri-State 100-MW Nucla coal-fired generation plant will be retired by 2020 and decommissioned by 2022.

---

[17] https://www.blm.gov/POLICY/IM-2014-100.
[18] https://www.blm.gov/POLICY/IM-2014-100.
[19] https://www.colorado.gov/pacific/cdphe/regional-haze-plan

BLM_0076790

SMC believes that the Agencies should incorporate an updated evaluation of the purpose and need of the Section 368 Corridor with respect to coal to demonstrate need and adequacy of the existing Programmatic Environmental Impact Statement (PEIS) in light of new information and circumstances that have developed over the last ten years . For example, the updated evaluation should factor in the plant retirements and the fact that Tri-State is currently replacing its existing 115-kV transmission line which is described by Tri-State as "a major conduit for electric power from Tri-State's Nucla Generating Station and is a backbone of the transmission grid on the western slope of Colorado," with a 230-kV upgrade over the 80-mile long Montrose-Nucla-Cahone overhead Transmission Line following the existing ROW.[20] It is our understanding that Corridor 130-274/130-274(E) has been cited in part due to proximity and benefit to coal-fired generation stations.

In 2008, SMC indicated it was reluctantly supportive at the time and in the absence of better alternatives of a proposal by Teresa Pfifer of the BLM Uncompahgre Field Office (UFO) to move the 130-274 Corridor slightly west to follow San Miguel County Road 39N for multimodal use and to use 130-274(E) for underground use only. This position, taken in February – June 2008 was ten years ago.

Based on recent developments such as the listing of the Gunnison Sage-grouse and designation of critical habitat in November 2014, the implementation of the Tri-State Nucla-Cahone upgraded overhead transmission line in 2018 and 2019, the retirement of the Nucla coal-fired generation plant in 2020, and our review of the Corridor Map and Abstract, we have revised our previous tentative indication of support for Corridors 130-274/130-274(E). SMC now believes both of these corridors must be rerouted to avoid repeated disturbances to GuSG Critical Habitat, State lands managed for wildlife including GuSG, and private lands encumbered with conservation easements between MPs 7-17/4.6-17. New infrastructure and ROWs should be excluded from Critical Habitat and avoided within 4-miles of leks and the BLM Gunnison Sage-grouse Resource Management Plan Amendment/EIS Decision Area.

4. **Request for one of the Regional public meetings to be held in Norwood, Colorado and for Agencies to meet with SMC officials in person.**

It is our understanding that regional meetings are anticipated to occur in May or June 2018 potentially. San Miguel County strongly encourages the Agencies and the Regional Review team to meet with SMC officials and stakeholders, including Colorado Parks and Wildlife, U.S. Fish and Wildlife, and hold a public meeting in Norwood, Colorado. We strongly encourage the Agencies to visit Corridor 130-274/130-274(E) in person at the same time.

Agencies should meet in person with SMC officials and stakeholders such as Colorado Parks and Wildlife (CPW) and U.S. Fish and Wildlife Service (USFWS). The goal of meeting together will be to identify if there is possibly a suitable alternative corridor siting that would have less impact to environmentally sensitive areas and have less impact on non-federal lands. With more time and a robust discussion with stakeholders, we may be able to identify an alternative corridor sited for underground infrastructure located within 100-feet of an existing County Road.

---

[20]First Amended Complaint for Declaratory and Injunctive Relief filed by the Wilderness Society in *The Wilderness Society, et al. v. United States Department of the Interior, et al., No. 3:09-cv-03048-JW (N.D. Cal)* Especially paragraphs 21-25 on Pages 14-17.

BLM_0076791

The need for an additional corridor for overhead transmission lines should be carefully studied, especially with the planned retirement and decommissioning of multiple coal-fired power plants in western Colorado in the next two to seven years and the Tri-State upgrade to the existing line.  If a corridor to accommodate overhead transmission lines is still warranted, it should examine the potential to be located within the footprint of an existing ROW having overhead transmission lines, such as the Tri-State Nucla-Cahone expansion which has just completed an EIS process and seventeen years of study.

SMC believes by providing adequate time and having direct consultation with stakeholders such as San Miguel County government, CPW, USFWS, private landowners, and federal land managers together, there is potential for identifying a different corridor alignment that could lead to a greater extent of avoidance of environmentally sensitive areas on both federal and non-federal lands.

5. **Deficiencies present in the review process.**

While the Corridor Abstract and Section 368 Energy Corridor Mapping Tool are helpful and appreciated, this process does not fully appear to remedy the original concerns of SMC outlined in our letters to Argonne National Laboratory dated February 14, 2008, and June 11, 2008, as well as in the original and First Amended Complaint for Declaratory and Injunctive Relief filed by the Wilderness Society in *The Wilderness Society, et al. v. United States Department of the Interior, et al., No. 3:09-cv-03048-JW (N.D. Cal)* [21].

In 2008 some of our most significant concerns were potential impacts to Naturita Canyon, interruption of critical occupied Gunnison Sage-grouse habitat, and large segments of the Corridor passing through private lands that were not analyzed by the PEIS.  SMC remains concerned with public and private lands located within the County being negatively impacted by the Corridor's location on federal land, including degradation of scenic character and property values.  The impacted non-federal public and private lands have exceptional habitat for Gunnison Sage-grouse, (now listed and protected by the ESA as a threatened species since November 2014); conservation easements acquired with county taxpayer dollars having the primary conservation values of Gunnison Sage-grouse habitat and scenic character; scenic qualities; and recreation qualities.  SMC remains concerned that there has been an inadequate consultation of local and state government agencies, interested parties, and the public.  The County remains concerned that there is an inadequate NEPA process which requires analysis and disclosure of environmental impacts and development of environmentally-superior alternatives.

In 2008, SMC communicated that it was disappointed that the rapid timeframe of the process prevented a thorough evaluation of lands to identify an energy corridor in the western portion of the county.  Commissioner Art Goodtimes eloquently pointed out that the "fatal flaw" in the PEIS is that it "is limited to identifying corridors on public lands without working with local governments on how best to 'connect the dots' through private lands." [22]  This has not been remedied with the current conflict assessment, mapping tool, or Corridor abstract.

---

[21] https://eplanning.blm.gov/epl-front-office/projects/nepa/66455/81165/94671/Tri-State_MNC_Draft_POD.pdf Page 1.

[22] Letter to Subcommittee on National Parks, Forests and Public Lands Subcommittee on Energy and Mineral Resources Joint Oversight Hearing, April 15, 2008 "The West-Wide Energy Corridor Process: State and Community Majority Questions for the Record Art Goodtimes, County Commissioner, San Miguel County, Colorado; "My Response to Questions Asked", May 6, 2008.  Page 2, Question 2.

BLM_0076792

SAN MIGUEL COUNTY

During our review and preparation of these comments, SMC finds that there are still several deficiencies in the review process which will guide the Agencies in recommending corridors for designation.  These issues include:

- Inadequate NEPA and range of alternatives available given new information and circumstances that exist with respect to the listing of the Gunnison Sage-grouse as threatened[23] and designation of critical habitat in November 2014[24];
- Changes needed to consider certain areas as "high potential conflict areas" vs. "medium potential conflict areas" (see discussion below);
- Out of date land status layers that do not account for State lands around Miramonte Reservoir;
- Land status layers do not consider conserved private lands that would be intersected by a ROWs to reach the federal lands included in Corridor 130-274/130-274(E);
- Inadequate time and lack of direct consultation with stakeholders including San Miguel County government, Colorado Parks and Wildlife, U.S. Fish and Wildlife, private landowners, and federal land managers, to identify if a different alignment would lead to a greater extent of avoidance of environmentally sensitive areas on both federal and non-federal lands;
- On-the-ground field inspections and verifications were not conducted but yet are strongly recommended to be conducted as part of the Regional Reviews in the Corridor Study. [25]
- Possible out of date lek layer for GuSG used for conflict analysis – it appears at least one lek near Miramonte Reservoir may not be accounted for in certain layers of the Section 368 Energy Corridor Mapping Tool.

6. **Specific Comments on Abstract and Corridor 130-274/130-274(E).**
   a. **Corridor 130-274/130-274 (E) Abstract, January 2018[26]**
      - <u>Figure 2a</u> – does not show all State lands around Miramonte Reservoir, generally located near MP 10-14.
      - <u>Corridor Rationale and Existing Infrastructure</u> – please provide a reference for a determination that MPs other than 0 to MP 8.5 are a "locally designated corridor." MPs 0-17 are located in San Miguel County, and we are unsure if you are specifically stating that MPs 9.5 to 17 are already a locally designated corridor. We have no evidence that they are and believe the abstract is incorrect.  It would be helpful if the abstract could be more specific and cite references.

        The Section 368 Energy Corridor Mapping Tool did not show any ROW when we turned on the "ROW Corridors – Locally Designated" Area or Line layers. The Trans Colorado gas pipeline, within the Infrastructure-Pipeline, Pipelines Natura Gas – Operation layer provided in the Section 368 Energy Corridor Mapping Tool, is located 1.2 miles east of the MP points provided. There is no existing infrastructure under MPs 0-17 of Corridor 130-274 within San Miguel County. The existing Trans Colorado pipeline is located under MPs 0-4.6 of Corridor 130-

---

[23]https://www.fws.gov/mountain-prairie/es/species/birds/gunnisonsagegrouse/GUSGFinalListingRule_11202014.pdf
[24]https://www.fws.gov/mountain-prairie/es/species/birds/gunnisonsagegrouse/GuSGCriticalHabitat_11202014.pdf
[25]http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf Page ES-2, Footnote 1.
[26]https://bogi.evs.anl.gov/section368/abstracts/corridor-130-274.pdf

BLM_0076793

SAN MIGUEL COUNTY

274(E).  However, the cumulative impacts to Gunnison Sage-grouse habitat and leks are unacceptable to access 130-274(E).



Figure 2a. Corridor 130-274/130-274(E), Including Existing Energy Infrastructure

Corridor 130-274/130-274 (E) Abstract, January 2018, Figure 2a—red shapes highlight areas that are missing lands owned by the State of Colorado.  The purple line in the figure matches the Trans Colorado gas pipeline, within the Infrastructure-Pipeline, Pipelines Natura Gas – Operation layer provided in the Section 368 Energy Corridor Mapping Tool.

- Potential for Future Development: The statement provided, "It is possible that the corridor will be affected by the Gunnison Sage-grouse Range-wide Draft RMP Amendment/Draft EIS" [27] is appreciated but is out of date for January 2018. The GuSG RMPa/EIS was released in August of 2016[28].  This statement is not current for January 2018.  MPs 4.5/6/5 to MP 16.25 is entirely within the GuSG RMPa Decision Area (see Attachment A), which is comprised of critical habitat and a 4-mile buffer of leks.  Only the most southern 1,200 feet of the Trans Colorado gas pipeline is out of the GuSG RMPa Decision Area.  The Decision Area GIS layer[29] is publicly available from the BLM and additional GIS files

---

[27] https://bogi.evs.anl.gov/section368/abstracts/corridor-130-274.pdf Page 5
[28] https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=53486
[29] https://eplanning.blm.gov/epl-front-office/eplanning/mapset_view.do?projectId=39681&currentPageId=53493&documentId=81491

10

BLM_0076794

should be incorporated into the Corridor Abstract figures, conflict analysis, and Section 368 Energy Corridor Mapping Tool.

- <u>Conflict Map Analysis</u>: The Conflict Map Analysis relies on the criteria contained in the West-Wide Energy Corridor (WWEC) Conflict Assessment Table. [30] SMC recommends changes to the assessment classifications to recognize environmentally sensitive areas better:
  - o ACECs designated to protect rare plants, soils, and scenic resources may have varying degrees incompatibility with ROWs.  Above-ground structures vs. underground infrastructure development may have different impacts. ACECs designated or nominated to protect ESA listed species and/or critical habitat should be automatically classified as "high potential conflict areas" and avoided.  ACECs designated or nominated to protect S1 or S2 species should also be automatically classified as "high potential conflict areas" and avoided.  There are ten nominated ACECs that intersect SMC and that are being evaluated as part of the ongoing TRFO ACEC RMP amendment. [31] These should all be classified as "high potential conflict areas."  Areas that are nominated for ACEC designation under one or more alternatives of the GuSG RMPa/EIS should also be classified as "high potential conflict areas." [32]
  - o Lands Inventoried and Managed for Wilderness Character should be all classified as "high potential conflict areas," as any impact from man-made infrastructure will forever change the wilderness character and potential for wilderness designation in the future.
  - o Similar to river segments deemed suitable for Wild and Scenic River status, lands pending legislative designation as Wilderness or other special designations should be considered "high potential conflict areas" and avoided so as not to pre-judge and void any potential designation.
  - o Lands acquired with federal funds for conservation purposes should be designated as "high potential conflict areas" if their purpose is to protect or conserve ESA listed species and/or critical habitat or to conserve significant viewsheds and lands with wilderness characteristics.   This should be a provided GIS layer in the Section 368 Energy Corridor Mapping Tool.
  - o Lands acquired with taxpayer funds for conservation purposes should also be designated as "high potential conflict areas."  As noted above San Miguel County has financially contributed over $2.25 million of local taxpayer dollars during this period for GuSG habitat conservation and improvements through the County's Land Heritage Program.  This program has helped protect over 25% of the occupied GuSG habitat on private land within San Miguel County through conservation easements.  Over 14,000 acres of habitat has been conserved at the cost of $6.8 million and a donation value of over $11.7 million.  These investments toward protection and recovery of GuSG must not be jeopardized or diminished by direct or cumulative indirect impacts of a

---

[30] http://corridoreis.anl.gov/documents/docs/conflict_assessment_table.pdf

[31] https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=63796

[32] https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=53486

BLM_0076795

corridor designation.  These lands should be included in the conflict analysis as "high potential conflict areas" and avoided.
- The Corridor Abstract states that "Corridor 130-274 is entirely within a medium potential conflict area and contains existing infrastructure." [33]  This seems to be contradicted by Figures 3a and 3b which mostly depict Corridor 130-274/130-274(E) to be in "No Conflict Identified" areas.  Figure 3a shows that the lands south, east, west, and intersecting the southern portion of Corridor 130-274/130-274(E) to be in High Conflict areas.  The Corridor Abstract figures and text need revisions for accuracy.

- Corridor Abstract Analysis Table:
  - Row 2:  discussion notes that Corridor 130-274/130-274(E) is a Corridor of Concern and that the Tri-State coal-fired power plant is to be retired in 2022.  It notes that no realistic wind power generation opportunities have been identified in the region.  Is the logical conclusion that a corridor to accommodate high voltage electricity transmission is not warranted?
  - Rows 3-4: discussion notes that BLM and USFS can only authorize projects on Federally-administered lands and that development in corridor "gaps" on State or private lands require coordination outside of the Agencies.  Corridors, where the "gaps" have high-conflict areas and environmentally sensitive areas such as ESA listed species and critical habitat, or conserved lands, should not be designated, as they are not leading to the location of corridors in favorable landscapes or maximizing avoidance of environmentally sensitive areas.  Corridors should not be sited where there will be impacts as great or greater than those that led to avoided siting in similar areas on federal lands.
  - Row 8: discussion notes that per the Settlement Agreement, MP 4.2-4.6 of Corridor 130-274(E) and MP 6.2-13.2 of Corridor 130-274 should be re-routed to avoid critical GuSG habitat.  The mile markers are not quite accurate.  Both Corridors should be eliminated where they intersect GuSG critical habitat and conserved private lands.  "The Agency Review and Analysis state that they should consider opportunities for corridor revision to avoid most areas of critical habitat and still encompass existing infrastructure." [34] The Agencies have not analyzed cumulative impacts from repeated disturbance of the ROW of the existing pipeline for its own maintenance as well as if there were to be other infrastructure co-located with it.  This corridor creates impacts within critical occupied habitat and habitat located within 0.5 miles of multiple leks of the Miramonte subpopulation of the San Miguel Basin population of GuSG.  This is the most viable subpopulation of the GuSG.
  - Row 8 should recognize BLM IM 2014-100[35] is in effect until rescinded and presents some of the best available interim guidance until the GuSG RMPa is finalized.  The Agency Review and Analysis should recognize BLM IM 2014-100 and adhere to the guidance requiring focusing any type of development

---

[33] https://bogi.evs.anl.gov/section368/abstracts/corridor-130-274.pdf Page 5
[34] http://corridoreis.anl.gov/documents/docs/conflict_assessment_table.pdf Row 8, Page 10.
[35] https://www.blm.gov/POLICY/IM-2014-100.

BLM_0076796

in non-habitat areas.  At a minimum, areas within 4-miles of a lek should be considered "high potential conflict areas."



Figure 3: Showing a portion of the SMC-created screen tool for examining GuSG and other conflicts of concern to SMC.  (The full-screen tool is provided as a layers-enabled pdf in Appendix A.)  MPs of Corridor 130-274 from southern San Miguel County line/MP 17 at bottom center of figure, and private lands encumbered with conservation easements for the purpose of conserving GuSG and critical habitat (green hatching); lands within 4-mile lek buffers and the BLM GuSG RMPa/EIS Decision Area in light gray shading; GuSG critical habitat in striped hatching and purple.  While the Corridors 130-274/130-274(E) in red outline at the top center intersect GuSG habitat and are discussed as needing re-routing in Row 8, the same reasons for re-routing on federal lands exist and should require re-routing on the State, private, and private conserved lands to the south.  The proximity of MPs 15-17 to the McKenna Peak WSA in red should be mentioned in the Assessment Table and Abstract.

      ○  Row 9: discussion claims that GuSG conservation areas "have not been identified and are not a consideration for the review at this time."  Currently, the BLM GuSG Draft RMPa/EIS has an alternative that contemplates designation of an ACEC for all GuSG critical habitat on BLM-administered

BLM_0076797

SAN MIGUEL COUNTY

lands within 4-miles of a lek.  Private land conservation easements that have the primary conservation value of GuSG habitat conservation should be considered active conservation areas as should State Wildlife Areas (SWA) like the Dan Noble SWA.  The 2005 Rangewide Conservation Plan contains rangewide and local conservation strategies and best management practices that should be considered as de-facto GuSG conservation areas.[36]

- o   Rows 17, 19:  The Corridor must continue to avoid impacts and intersections to lands that are subject to the Proposed San Juan Mountains Wilderness designations, Naturita Canyon Colorado Roadless Area, and Menefee Mountain WSA. Proximity to McKenna Peak WSA should be mentioned, as it is as close as 1-mile to MPs 18-20.

- o   Row 21:  Scenic quality is extremely important to San Miguel County's economy, as mentioned in the original and First Amended Complaint about Declaratory and Injunctive Relief filed by the Wilderness Society in *The Wilderness Society, et al. v. United States Department of the Interior, et al., No. 3:09-cv-03048-JW (N.D. Cal)*. [37] The analysis table does not take into consideration the protection of visual resources desired by SMC and its citizens.

Thank you for the opportunity to provide our comments on the Region 2 Review Abstract and analysis of Corridor 130-274/130-274(E) and the need for these segments within SMC to be rerouted.

We encourage the Agencies to require that any Corridor is providing a ROW for fiber or broadband infrastructure, be required to make such broadband infrastructure open access and available for any purpose, including commercial use, to avoid any need in the future to have to go back and "perfect" easements.

We look forward to personally working with the Agencies and stakeholders to determine if a suitable corridor can be identified within San Miguel County that mitigates the concerns outlined in the Settlement Agreement and goals of the Agencies.  We are happy to provide any assistance or data we might have to inform the Corridor mapping tool better, abstract and analysis.

Sincerely,
SAN MIGUEL COUNTY, COLORADO
BOARD OF COUNTY COMMISSIONERS

Kris Holstrom, Chair

---

[36] http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx
[37] https://eplanning.blm.gov/epl-front-office/projects/nepa/66455/81165/94671/Tri-State_MNC_Draft_POD.pdf
Page 1.

BLM_0076798

SAN MIGUEL COUNTY

**Attachment A: SMC Section 368 Corridor 130-274/130-274 (E) Screen Tool**

This is a layered .pdf file.  To make layers visible/invisible please open the layers contents, click on the layers list menu and click "Expand All."  The legend is on the bottom of the document.

BLM_0076799

# SMC Section 368 Corridor 130-274/130-274 (E) Screen Tool

Dolores R (MCGIS)
STREAMS (CDOT 2017)
TRFO RMPa Nominated ACECs (BLM 2017)

GUSG Functional Critical Habitat (CPW 083011)
- Occupied
- Potential
- Vacant/Unknown

USFWS Designated GuSG Designated Critical Habitat (CPW 081314)
- Occupied

Potential
Vacant
TRFO BLM Dolores River SRMA

Roads (SMCGIS SANMCO_911)
- ARTERIAL
- LOCAL; MAJOR COLLECTOR; MINOR COLLECTOR
- PRIMITIVE

TRFO BLM Draft Route Inventory (TRFO BLM TMP 2017)
- 2WD - Road
- Primitive Road - 4WD high clearance
- Primitive Road - 4WD low clearance
- Trail - ATV
- Trail - Non Mechanized
- Trail - Non Motorized
- Trail - UTV

STATE HIGHWAYS (CDOT 2017)
PARCELS_UTM (SMC Geodata 2018)
SMC COUNTY BOUNDARY
BLM WSAs NEAR SMC
LAKES (CDOT 2017)
SMC PRIVATE CONSERVED LANDS

SMC LAND STATUS
OWNER
- BLM
- CDOW
- PRIVATE OR OTHER EXEMPT
- STATE LAND BOARD
- USFS

Sec368_Corridor_of_Concern
Sec368_Energy_Corridor
Sec368_Energy_Corridor_Centerline
Sec368_Energy_Corridor_Centerline_MP
Sec368_Energy_Corridor_Milepost
Transmission_Line_TST

**Draft, San Miguel County**
**Section 368 Corridor Screen Tool**
**2/23/2018**

0 0.33 0.65 1.3 1.95 2.6 Miles

1: 60,000

SAN MIGUEL COUNTY

**Attachment B:** *Section 368 Energy Corridor Regional Reviews – Region 2* **Corridor 130-274/130-274(E)** *San Juan/San Miguel Corridor* **(January 2018)**

Energy Corridor Abstract provided by Agencies for review, downloaded February 2018 at
http://bogi.evs.anl.gov/section368/abstracts/corridor-130-274.pdf.

16

BLM_0076801

# Corridor 130-274/130-274(E)
*San Juan/San Miguel Corridor*

## Introduction

Corridor 130-274/130-174(E) (Figures 1 and 2a,b) begins just south of the Montrose/San Miguel county line and extends generally southward terminating just south of State Route 160 at the Montezuma/La Plata county line. Corridor 130-274(E) is an additional braided segment extending east of Corridor 130-274 from MP 2 to MP 7. Federally designated portions of this corridor are 3,500 feet in width on BLM- and USFS-administered land. The Corridor 130-274(E) segment is designated as underground use only. The corridor is designated multi-modal for future electrical transmission and pipeline projects. Corridor 130-274 has 37.1 miles of designated corridor on BLM- and USFS-administered lands; the overall route including gaps is 65.5 miles. The designated area is 14,823.3 acres or 23.2 square miles. Corridor 130-274(E) has 4.4 miles of designated corridor on BLM- and USFS-administered lands; the overall route including gaps is 4.6 miles. The designated area is 1,760.9 acres or 2.7 square miles. Corridor 130-274 is in San Miguel, Dolores, and Montezuma counties in Colorado, and Corridor 130-274(E) is in San Miguel County; they are under the jurisdictions of the BLM Tres Rios and Uncompahgre Field Offices. Portions of the corridor also occur on the San Juan National Forest and Grand Mesa, Uncompahgre, Gunnison (GMUG) National Forests in Colorado. Corridor 130-274/130-274(E) is entirely in Region 2.



**Figure 1. Corridor 130-274/130-274(E)**

1

- **•** Populated Place
- **■** Substation *
- **▲** Renewable Energy Power Plant
- **▲** Non-Renewable Energy Power Plant
- **20** Subject Section 368 Energy Corridor Milepost
- ▬ Subject Section 368 Energy Corridor Centerline
- Subject Section 368 Energy Corridor
- Other Section 368 Energy Corridor
- Section 368 Energy Corridor Listed in WWEC ROD but Not Designated
- Section 368 Energy Corridor Revised in RMP Amendment
- Transmission Line *
- Pipeline *

**Major Road**

- Interstate
- U.S. Route
- State Route
- County Boundary
- State Boundary
- BLM Administrative Unit Boundary
- USFS Administrative Unit Boundary

**Regional Review Boundary**

- Subject Region
- Other Regions
- Solar Energy Zone
- National Conservation Area
- National Monument

**Surface Management Agency**

- Bureau of Land Management
- Bureau of Reclamation
- Department of Defense
- Department of Energy
- Fish and Wildlife Service
- Local
- National Park Service
- Other
- State
- Tribal
- U.S. Forest Service

* Data source: © 2017 S&P
Global Platts. All rights reserved.

CS078d

**Key for All Figures**

2

BLM_0076803



**Figure 2a. Corridor 130-274/130-274(E), Including Existing Energy Infrastructure**

BLM_0076804



**Figure 2b. Corridor 130-274, Including Existing Energy Infrastructure**

BLM_0076805

## Corridor Rationale

During scoping for the WWEC PEIS, routes generally following this corridor were suggested by the National Grid and the Western Utility Group. The initial portion of Corridor 130-274 from MP 0 to MP 8.5 was not previously designated, but the remainder of the corridor was previously identified as a locally designated corridor.

*Existing Infrastructure:* Corridor 13-274(E) is an existing management prescription 1D Utility Corridor occupied by a natural gas pipeline operated by TransColorado Gas Transmission Company, LLC. The portion of Corridor 130-274 on the GMUG National Forest is not occupied by any utility transmission, but the remainder of the corridor contains the TransColorado natural gas pipeline, a 230-kV transmission line operated by Western Area Power Administration from MP 30.1 to MP 36.6, and generally follows a 345-kV transmission line operated by Tri-State G & T Association, Inc. from MP 30.1 to MP 63.2. Also included along the corridor is the Nucla-Naturita Tel Co FLPMA Telephone-Telegraph line, the Tri-State 115-kV power transmission line, and the CDOT Federal Aid Highway.

*Potential for Future Development:* The Platts data do not show any planned projects near this corridor. Results from the Corridor Study indicate that there had been some interest by a transcontinental pipeline company for the San Juan National Forest segment, but there was no follow-up and no application was submitted. BLM analysis indicates that there are no pending projects within corridor and no pending utility-scale renewable projects in the area. It is possible that the corridor will be affected by the Gunnison Sage-Grouse Range-wide Draft RMP Amendment/Draft EIS.

## Corridor of Concern Status

Corridor 130-274/130-274(E) is a corridor of concern. Concerns regarding access to coal, direct or indirect impacts to Gunnison Sage-grouse conservation areas, occupied Gunnison Sage-grouse critical habitat, Colorado-proposed Wilderness, and USFS Inventoried Roadless Area were identified in Exhibit A of the Settlement Agreement. These corridor of concern issues are highlighted in yellow in the Corridor Analysis table.

## Conflict Map Analysis

Figures 3a and 3b reflect a comprehensive resource conflict assessment to help the Agencies identify a corridor's proximity to environmentally sensitive areas. The potential conflict assessment (low, medium, high) shown in the figures are based on criteria found on the WWEC Information Center at www.corridoreis.anl.gov. The conflict assessment criteria table was used to identify if the corridor meets the Settlement Agreement siting principles to provide maximum utility and minimum impact on the environment. This facilitates balance between resource protection and potential development. Where feasible, corridors should be sited in the areas of low conflict; however, to meet the requirements in the Energy Policy Act and the siting principles in the Settlement Agreement, corridors may be located in high potential conflict areas. Many energy corridors were designated in land use plans prior to being carried forward into Section 368 designation. In almost all instances, these existing corridors (pre-Section 368) contained existing infrastructure. Corridor 130-274 is entirely within a medium potential conflict area and contains existing infrastructure.

BLM_0076806



**Figure 3a. Mapping of Conflict Areas in Vicinity of Corridor 130-274/130-274(E)**

BLM_0076807



**Figure 3b. Mapping of Conflict Areas in Vicinity of Corridor 130-274**

7

BLM_0076808

## Corridor Analysis

The corridor analysis table below identifies issues potentially affecting Corridor 130-274/130-274(E), locations of resources within the corridor, and the results of the analysis by the Agencies. Issues are checked if they are known to apply to the corridor. Corridor of concern issues are highlighted in yellow.

☒ **Energy Planning Opportunities**

☒ **Energy Planning Issues**
  ☐ Physical barrier
  ☒ Jurisdiction
  ☒ Existing infrastructure/available space

☒ **Land Management Responsibilities and Environmental Resource Issues**
  ☐ Air quality
  ☒ Cultural resources
  ☒ Ecological resources
  ☒ Hydrological resources
  ☒ Lands and realty
  ☒ Lands with wilderness characteristics

☐ Livestock grazing
☐ Paleontology
☐ Public access and recreation
☐ Soils/erosion
☒ Specially designated areas
☐ Tribal concerns
☒ Visual resources

☐ **Interagency Operating Procedures**

| REGION 2 – CORRIDOR 130-274/130-274 (E) – ANALYSIS TABLE | | | | | | | |
|---|---|---|---|---|---|---|---|
| ID | Agency | Agency Jurisdiction | County | Primary Issue | Corridor Location (by Milepost [MP]) | Source | Agency Review and Analysis[1] |
| **ENERGY PLANNING OPPORTUNITIES** | | | | | | | |
| 130-274/ 130-274(E) .001 | USFS | San Juan National Forest | Montezuma and La Plata, CO | Substations | Corridor 130-274: MP 61.2 and MP 64.2 | GIS Analysis: two substations within 5 mi of corridor | Nearby substations provide an opportunity for the corridor to accommodate additional transmission. |
| 130-274/ 130-274(E) .002 | | | | Access to coal-fired generation | Not specified. | Settlement Agreement; RFI: re-route corridor to a location that can accommodate transmission tied to renewable energy development. | Currently there is a Tri-State coal-fired power plant near Nucla. It is connected to transmission lines that do not go through either corridor. Tri-State recently announced they would be decommissioning this power plant by the end of 2022. In 2013, BLM evaluated the Four Corners terrain for potential wind power generation and determined there were no realistic opportunities to justify huge investments into this type of renewable energy prospects/ development by private industry. |

BLM_0076809

| | | | | | | | |
|---|---|---|---|---|---|---|---|
|  | **REGION 2 – CORRIDOR 130-274/130-274 (E) – ANALYSIS TABLE** |
| **ID** | **Agency** | **Agency Jurisdiction** | **County** | **Primary Issue** | **Corridor Location (by Milepost [MP])** | **Source** | **Agency Review and Analysis[1]** |
|  | **ENERGY PLANNING ISSUES** |
|  | *Jurisdiction* |
| 130-274/ 130-274(E) .003 | State | State | San Miguel and Dolores, CO | Discontinuous section of corridor | MP 15.5 to MP 18 | GIS Analysis: State lands in corridor gap. | BLM and USFS can only authorize projects on Federally-administered lands. Development in corridor gaps would require coordination outside of the Agencies. |
| 130-274/ 130-274(E) .004 | NA | Private and State | San Miguel and Dolores, CO | Private and state lands within corridor gap | MP 8.5 to 31.5 | RFI: impact that development within the corridor could have on state or privately owned parcels (jurisdictional corridor gaps –) that are located between designated corridor segments on Federal lands. Recommend that the Agencies extend assessment of existing corridors to non-federal lands, including private and state trust lands. | BLM and USFS can only authorize projects on Federally-administered lands. Development in corridor gap would require coordination outside of the Agencies. |
|  | *Existing Infrastructure/Available Space* |
| 130-274/ 130-274(E) .005 | BLM and USFS | Tres Rios FO and San Juan National Forest | La Plata and Montezuma, CO | Existing infrastructure | MP 53.3 to MP 65.5 | GIS Analysis: several transmission lines, pipelines and the corridor both follow each other and intersect at angles. | Generally does not affect use of the corridor. Proposed project siting and colocation alternatives to address impacts would be analyzed during the ROW application process. |
| 130-274/ 130-274(E) .006 | BLM | San Juan National Forest | Montezuma and La Plata, CO | State Highway 145 and U.S. Highway 160 | MP 40.9 to MP 41 and MP 64.6 to MP 65 | GIS Analysis: roads and corridor intersect. | Generally does not affect use of the corridor. Consistent with BLM ROW regulations, notification to adjacent ROW holders would be provided. |
|  | **LAND MANAGEMENT RESPONSIBILITIES AND ENVIRONMENTAL RESOURCE ISSUES** |
|  | *Cultural Resources* |
| 130-274/ 130-274(E) .007 | BLM | Tres Rios FO | | Cultural sites | Not specified. | Agency Input: large known cultural sites with associated surveys. | Not a consideration for corridor-level planning. Section 106 process would be followed to identify possible impact of development during the ROW application process. |

BLM_0076810

| ID | Agency | Agency Jurisdiction | County | Primary Issue | Corridor Location (by Milepost [MP]) | Source | Agency Review and Analysis[1] |
|---|---|---|---|---|---|---|---|
| | | | | | | | The Tres Rios FO RMP has no ROW exclusion or avoidance prescriptions for cultural resources, but the RMP does state that important cultural areas and traditional cultural properties need protection. |
| **Ecology: Special Status Animal Species** | | | | | | | |
| 130-274/ 130-274(E) .008 | USFS | GMUG National Forests | San Miguel, CO | Gunnison Sage-grouse critical habitat (ESA-listed: threatened) | MP 4.2 to MP 4.6 within Corridor 130- 274(E) and MP 6.2 to MP 13.2 | Settlement Agreement; RFI: reroute to avoid concern. GIS Analysis: corridor intersects critical habitat in southernmost portion of the corridor on the GMUG National Forest. . | GMUG National Forest LRMP has no ROW exclusion or avoidance prescriptions for Gunnison Sage-grouse critical habitat. However, the LRMP does acknowledge the need to protect federally listed species and their habitats. The Agencies should consider opportunities for corridor revision to avoid most areas of critical habitat and still encompass existing infrastructure. |
| 130-274/ 130-274(E) .009 | USFS | GMUG National Forests | San Miguel, CO | Gunnison Sage-grouse conservation areas | Not specified. | Settlement Agreement; RFI: reroute to avoid concern. | Gunnison Sage-grouse conservation areas have not been identified and are not a consideration for the review at this time. |
| **Hydrology: Surface Water** | | | | | | | |
| 130-274/ 130-274(E) .010 | BLM and USFS | Uncompahgre FO and San Juan National Forest | Dolores and Montezuma, CO | Stream crossings: Disappointment Creek, Beaver Creek, Dolores River, Lost Canyon Creek, Chicken Creek, West Mancos River, Middle Mancos River, East Mancos River, and unidentified intermittent streams | MP 19.8, MP 32.9 to MP 33.5, MP 38.5 to MP 39.1, MP 41, MP 48.8 to MP 49.2, MP 55.4 to MP 56, MP 56.3 to MP 57, MP 60 to MP 60.9, and MP 62.2 to MP 63.7 | GIS Analysis: streams and corridor intersect. | Not a consideration for corridor-level planning. Linear ROWs can either span streams or be buried underneath them. |
| **Lands and Realty: Rights-of-Way and General Land Use** | | | | | | | |
| 130-274/ 130-274(E) .012 | BLM and USFS | Tres Rios FO and San Juan | Montezuma and La Plata, CO | NSO Area | MP 64.9 to MP 65.3 | GIS Analysis: NSO Area intersects corridor. | Pipeline must accommodate directional underground drilling only within two extremely steep river/canyon corridors |

BLM_0076811

| ID | Agency | Agency Jurisdiction | County | Primary Issue | Corridor Location (by Milepost [MP]) | Source | Agency Review and Analysis[1] |
|---|---|---|---|---|---|---|---|
| | | National Forest | | | | Agency Input: NSO for riparian habitat exists in a small area of Corridor 130-274(E). | that are subject to landslides, including the Dolores River Canyon and Lost Canyon within the San Juan National Forest.  Substantial investments in mitigation efforts/bonding are likely in these canyon corridors, if surface disturbance is warranted. |
| 130-274/130-274(E) .013 | USFS | GMUG National Forests | San Miguel, CO | Oil and gas leases | Not specified. | Agency Input: in the GMUG, the corridor is in an area available for oil and gas leasing per 1993 leading decision. | Controlled surface use stipulations would apply mostly in corridor areas. There are no existing leases on the GMUG, however there are existing leases to the west and northwest. |
| **Lands with Wilderness Characteristics** | | | | | | | |
| 130-274/ 130-274(E) .014 | | | | Citizens' proposed wilderness | Not specified. | Settlement Agreement; RFI: reroute to avoid concern. | This citizens' proposed wilderness is not in the RMP management prescriptions and is therefore not a consideration at the time of this review.<br><br>There are no wilderness proposals on the GMUG National Forests. The San Juan Mountain Wilderness Proposal currently identifies the Naturita Canyon, approximately 2 miles east of 130-274(E) as an area to be withdrawn from mineral leasing to prevent oil and gas leasing from occurring.  Naturita Canyon is a Colorado Roadless Area and is not affected by the existing Transcolorado pipeline in Corridor 130-274(E). |
| **Public Access and Recreation** | | | | | | | |
| 130-274/ 130-274(E) .015 | State | Colorado Parks and Wildlife | Montezuma, CO | Mancos State Park | MP 57.1 to MP 59.9 | GIS Analysis: park is as close as 1.8 mi west of corridor. | The park does not intersect the corridor and is therefore not a consideration for use of the corridor at corridor-level planning. |

The table title row: **REGION 2 – CORRIDOR 130-274/130-274 (E) – ANALYSIS TABLE**

BLM_0076812

| REGION 2 – CORRIDOR 130-274/130-274 (E) – ANALYSIS TABLE | | | | | | | |
|---|---|---|---|---|---|---|---|
| ID | Agency | Agency Jurisdiction | County | Primary Issue | Corridor Location (by Milepost [MP]) | Source | Agency Review and Analysis[1] |
| *Specially Designated Areas* | | | | | | | |
| 130-274/ 130-274(E) .016 | USFS | San Juan National Forest | La Plata and Montezuma, CO | San Juan Skyway Scenic Byway | MP 40.9 to MP 41.1 and MP 64.6 to MP 64.9 | GIS Analysis: the San Juan Skyway Scenic Byway and the corridor intersect. | The San Juan National Forest LRMP has no ROW exclusion or avoidance prescriptions for the San Juan Skyway Scenic Byway. The corridor intersects the Scenic Byway only at its intersection (a relatively small portion of the Byway). Coordination with CDOT would be required to identify any management prescriptions related to the scenic highway, including methods to reduce visual impacts on the byway. |
| 130-274/ 130-274(E) .017 | BLM and USFS | San Juan National Forest and Uncompahgre FO | Montezuma and San Miguel, CO | Naturita Canyon and Storm Peak Colorado Roadless Areas | MP 8.5 (near), MP 38.4 to MP 45.6 (near) | Settlement Agreement; RFI: reroute to avoid concern; GIS Analysis: Storm Peak Colorado Roadless Area as close as 1.2 mi to corridor, Naturita Canyon Colorado Roadless Area as close as 1.5 mi to corridor. | The corridor is outside of the Colorado Storm Peak and Naturita Canyon Colorado Roadless Areas. The Colorado Roadless Areas would not influence development and management inside of the corridor. |

BLM_0076813

| ID | Agency | Agency Jurisdiction | County | Primary Issue | Corridor Location (by Milepost [MP]) | Source | Agency Review and Analysis[1] |
|---|---|---|---|---|---|---|---|
| **REGION 2 – CORRIDOR 130-274/130-274 (E) – ANALYSIS TABLE** | | | | | | | |
| 130-274/ 130-274(E) .018 | BLM and USFS | Tres Rios FO and San Juan National Forest | La Plata and Montezuma, CO | Old Spanish National Historic Trail | MP 64.8 to MP 64.9 | GIS Analysis: the OSNHT and the corridor intersect.<br><br>Agency Input: San Juan National Forest Plan guidelines for development of the corridor include:<br><br>-Other resource activities should be designed in order to meet scenic quality objectives for these special designation trails (generally, a foreground and middle-ground of very high to high scenic integrity or VRM Class II).<br><br>-A literature search and/or Class III cultural resources survey should be conducted within 0.5 mile of either side of the centerline of the congressionally designated OSNHT in high potential segments, prior to authorization of ground-disturbing activities or activities that could substantially interfere with the nature and purposes of the trail. | The OSNHT is a Congressionally designated trail. Adherence to IOPs would be required. Through project-specific environmental reviews, impacts would be analyzed in relation to any other alternatives that would be identified.<br><br>The Agencies have identified the need for a new IOP to address development in Section 368 energy corridors while protecting values in Congressionally designated NHTs. |
| 130-274/ 130-274(E) .019 | BLM | Tres Rios FO | Montezuma, CO | Menefee Mountain WSA | MP 65.1 (near) | GIS Analysis: WSA as close as 1.2 mi southwest of corridor. | The corridor does not cross the WSA and therefore is not a consideration for corridor-level planning. |

BLM_0076814

| ID | Agency | Agency Jurisdiction | County | Primary Issue | Corridor Location (by Milepost [MP]) | Source | Agency Review and Analysis[1] |
|---|---|---|---|---|---|---|---|
| **REGION 2 – CORRIDOR 130-274/130-274 (E) – ANALYSIS TABLE** ||||||||
| *Visual Resources* ||||||||
| 130-274/ 130-274(E) .020 | BLM | Tres Rios FO | Montezuma, CO | VRM Class I | MP 65.5 | GIS Analysis: VRM Class I areas are as close as 1.2 mi west of corridor. | There are no Class I areas within the corridor. |
| 130-274/ 130-274(E) .021 | BLM | Tres Rios FO | San Miguel and Dolores, CO | VRM Class II | MP 13.9 to MP 14.4 and MP 18 to MP 19.5 | GIS Analysis: VRM Class II areas in corridor gap. | Future development within the corridor could be limited as VRM Class II allows for low level of change to the characteristic landscape. Management activities may be seen, but should not attract the attention of the casual observer. |
| 130-274/ 130-274(E) .022 | BLM | Uncompahgre FO | San Miguel | VRI Class III | MP 0 to MP 4.5 MP 0 to MP 0.5 | GIS Analysis: VRI Class III areas and the corridor intersect. No VRM indicated in the San Juan/San Miguel RMP, 1985, so VRI data used. | The BLM utilizes the VRM system to manage and protect visual/scenic resources. VRM cannot occur in a systematic and objective manner without a proper inventory of visual resources. An accurate inventory of visual resources creates the needed baseline data to conduct VRM. The VRI is a methodical process intended to evaluate and determine the quality of visual resources and the value of those resources in a given area. A VRI was completed for the Uncompahgre FO in September of 2009. While not yet incorporated into the current RMP, this data is the most recent and comprehensive data available for visual resources within the Uncompahgre FO. |
| 130-274/ 130-274(E) .023 | BLM | Tres Rios FO | San Miguel, Montezuma, and La Plata, CO | VRM Class III | MP 0 and MP 64.6 to MP 65.5 MP 64.9 | GIS Analysis: VRM Class III areas and corridor intersect. Agency Input: The Old Spanish National Historic Trail and Road 109 transect a VRM Class III area of the corridor. A gas pipeline is currently located in the corridor | VRM Class III allows for moderate change to the characteristic landscape, although minimizing visual contrast remains a requirement. Management activities may attract the attention of the casual observer, but shall not dominate the view. |

BLM_0076815

| ID | Agency | Agency Jurisdiction | County | Primary Issue | Corridor Location (by Milepost [MP]) | Source | Agency Review and Analysis[1] |
|---|---|---|---|---|---|---|---|
| **REGION 2 – CORRIDOR 130-274/130-274 (E) – ANALYSIS TABLE** | | | | | | | |
| 130-274/ 130-274(E) .024 | USFS | San Juan National Forest | Montezuma, Dolores, CO | SIO classes | Not specified. | Agency Input: no Very High SIO but a few places of High SIO. | Future development within the corridor could be limited. Landscape character appears intact. Deviations may be present but must repeat the form, line, color, texture, and pattern common to the landscape. |

[1] Projects proposed in the corridor would be reviewed during the ROW application review process and would adhere to federal laws, regulations, and policy.

## Abstract Acronyms and Abbreviations

BLM = Bureau of Land Management; CDOT = Colorado Department of Transportation; FO = Field Office; EIS = Environmental Impact Statement; GIS = geographic information system; GMUG = Grand Mesa, Uncompahgre, Gunnison National Forests; IOP = Interagency Operating Procedure; IRA = Inventoried Roadless Area; LRMP = Land and Resources Management Plan; MP = milepost; NEPA = National Environmental Policy Act; NHT – National Historic Trail; MS = Manual Section; NSO = no surface occupancy; OSNHT = Old Spanish National Historic Trail; PEIS = Programmatic Environmental Impact Statement; RFI = Request for Information; RMP = Resource Management Plan; ROW = right-of-way; SIO = Scenic Integrity Objective;  USFS = U.S. Forest Service; VRI = Visual Resource Inventory; VRM = Visual Resource Management; WSA = Wilderness Study Area; WWEC = West-wide Energy Corridor.

BLM_0076816

SAN MIGUEL COUNTY

**Attachment C:  Conflict Assessment Criteria Table for Section 368 Energy Corridor Reviews**

Energy Corridor Conflict Assessment Criteria Table document provided by Agencies for review, downloaded February 2018 at http://www.corridoreis.anl.gov/documents/docs/conflict_assessment_table.pdf

17

BLM_0076817

*Corridor reviews use a comprehensive resource conflict assessment to help the Agencies identify a corridor's proximity to environmentally sensitive areas. The potential conflict assessment (low, medium, high) is generated using the criteria from BLM's new regulations for prioritizing applications for solar and wind energy projects (43 CFR 2804.35(a)-(c)). The Agencies incorporated the criteria into the conflict assessment criteria table, shown below. The matrix was applied to each corridor to generate conflict maps to aid in reviewing whether the corridor's current location best meets the Settlement Agreement siting principles to provide maximum utility and minimum impact to the environment.*

*Where feasible, corridors should be sited in the areas of low conflict; however, to meet the requirements in the Energy Policy Act and the siting principles in the Settlement Agreement, corridors may be located in medium and high potential conflict areas. In those instances, it's important to note many energy corridors were already designated in land use plans prior to being carried forward into Section 368 designation. In almost all instances, these existing corridors (pre-Section 368) contained existing infrastructure. Retaining corridors through these areas may be the best option available for providing long-distance pathways for electrical transmission and pipelines while avoiding disperse development across Federal lands.*

**Table 2-5 Conflict Assessment Criteria Table for Section 368 Energy Corridor Reviews**

The blue rows indicate the conflict criteria, while the white rows underneath are individual GIS data layers associated with the criteria.

| Low Potential Conflict Areas |
| --- |
| **Lands designated as Visual Resource Management Class IV** |
| *VRM Class IV* |
| |
| **Previously disturbed sites or areas adjacent to previously disturbed or developed sites** BLM data were not available for inclusion in the figures in individual abstracts, but existing infrastructure can be viewed on the Section 368 Mapper. |
| *Existing transmission lines* |
| *Existing pipelines* |
| *Existing roadways and railways* |
| *Existing telecommunication lines, communication sites* |
| *Existing agricultural uses* |
| *Other energy development (e.g. adjacent windfarms, solar farms, power generation facilities, substations)* |
| **Lands identified in BLM land use plans as suitable for disposal** No BLM data are available for inclusion in the graphical display |
| **Lands specifically identified as appropriate for solar or wind energy development, other than designated leasing areas** |
| *Solar Energy Zones* |
| *BLM AZ Renewable Energy Development Areas* |
| *DRECP Development Focus Areas Restricted to Solar and/or Geothermal Energy* |

| Medium Potential Conflict Areas |
|---|
| **BLM special management areas that provide for limited development, including recreation sites and facilities** |
| *Areas of Critical Environmental Concern* |
| *DRECP Extensive Recreation Management Areas* |
| *Other recreation sites and facilities, as data are available* |
| **Lands with wilderness characteristics outside Wilderness and Wilderness Study Areas that have been identified in an updated wilderness characteristics inventory** |
| *Lands Inventoried and Managed for Wilderness Character* |
| **ROW avoidance areas** |
| *ROW Avoidance Areas* |
| **Areas where project development may adversely affect resources and properties listed in a national register, such as in the National Register of Historic Places, National Natural Landmarks, or National Historic Landmarks** |
| *Properties Listed in the National Register of Historic Places* |
| *National Natural Landmarks* |
| *National Historic Landmarks* |
| *National Historic Parks* |
| **Sensitive habitat areas, including important species use areas, riparian areas, or areas of importance for Federal or State sensitive species** |
| *Greater Sage-grouse General Habitat Management Areas* |
| *Greater Sage-grouse Priority Habitat Management Areas* |
| *Desert Tortoise Designated Critical Habitat* |
| *DRECP Wildlife Allocations* |
| *Important Bird Areas* |
| *Sagebrush Focal Areas* |
| *USFWS-identified Desert Tortoise Connectivity Areas* |
| *Least Cost Corridors for Tortoise Population Connectivity* |
| *DRECP Tortoise Conservation Areas and Linkages* |
| **Lands designated as Visual Resource Management Class III** |
| *VRM Class III* |
| **DoD operating areas with land use or operational mission conflicts** |
| Military Training Route: Instrument Route Corridors |
| Military Training Route: Slow Route Corridors |
| Military Training Route: Visual Route Corridors |
| Special Use Airspace - Low Altitude |
| *DoD High Risk of Adverse Impact Areas* |
| **Areas where project development may adversely affect lands acquired for conservation purposes** |
| *Lands Acquired with Federal Funds for Conservation Purposes* |
| *Boulder City Conservation Easement* |
| **Projects with proposed groundwater uses within groundwater basins that have been allocated by State water resource agencies** No data are available for inclusion in the graphical display |

| High Potential Conflict Areas |
|---|
| ■ **Lands designated by Congress, the President, or the Secretary for the protection of sensitive viewsheds, resources, and values (e.g., units of the National Park System, Fish and Wildlife Service Refuge System, some National Forest System units, and the BLM National Landscape Conservation System), which could be adversely affected by development** |
| *Units of the National Park System* |
| *Units of the Fish and Wildlife Refuge System* |
| *National Monuments* |
| *Wilderness Areas* |
| *Wilderness Study Areas* |
| *National Conservation Areas (except CDNCA)* |
| *Other Lands in the NLCS* |
| *EPA Class I Air Quality Areas* |
| *DRECP California Desert National Conservation Lands* |
| *DRECP National Scenic Cooperative Management Areas* |
| *USFS Roadless Areas* |
| *National Historic Trails* |
| *National Scenic Trails* |
| *National Recreation Trails\** |
| |
| ■ **Wild and Scenic Rivers and Recreational Rivers and river segments deemed suitable for Wild and Scenic River status, if project development could have significant adverse effects on sensitive viewsheds, resources, and values** |
| *Wild and Scenic Rivers* |
| *Recreational Rivers\** |
| *River segments deemed suitable for Wild and Scenic River status\** |
| |
| ■ **Designated critical habitat for federally threatened or endangered species, if project development could result in the destruction or adverse modification of that critical habitat** |
| *Critical Habitat Areas* |
| *Critical Habitat Lines* |
| |
| ■ **Lands designated as Visual Resource Management Class I or Class II** |
| *Visual Resource Management Class I* |
| *Visual Resource Management Class II* |
| |
| ■ **ROW exclusion areas** |
| *ROW exclusion areas* |
| |
| ■ **Lands designated as no surface occupancy for oil and gas development in BLM land use plans** |
| *No Surface Occupancy* |
| *No data are currently available for inclusion in the graphical display |

BLM_0076820

JUN 1 0 2009

# MEMORANDUM OF UNDERSTANDING

## BETWEEN

## SAN MIGUEL COUNTY, COLORADO

## AND THE

## BUREAU OF LAND MANAGEMENT

## UNCOMPAHGRE FIELD OFFICE

## I.   INTRODUCTION

The Bureau of Land Management (BLM), Uncompahgre Field Office, is undertaking a major revision of their Resource Management Plan (RMP) beginning in the spring of 2009. The BLM anticipates that the RMP revision and associated environmental impact statement (EIS) will take approximately four years to complete.

San Miguel County is eligible to become a Cooperating Agency for the duration of the RMP/EIS process. Cooperating Agency status provides an opportunity for the BLM, San Miguel County and other Cooperating Agencies to work together to enhance the BLM's planning efforts.

This Memorandum of Understanding (MOU) sets forth roles and responsibilities for the Cooperating Agencies as agreed upon between San Miguel County and the Uncompahgre Field Office (UFO) for the purposes of collaborative planning and production of the RMP and EIS.

## II.   PURPOSE

In carrying forth its responsibilities and mandates under the National Environmental Policy Act and Council of Environmental Quality regulations at 40 Code of Federal Regulations (CFR), Part 1500 and the Federal Land Policy and Management Act (as amended) CFR Part 1600, the BLM recognizes a compelling need to ensure that the interests of San Miguel County are accounted for, and that they are meaningfully engaged in the above stated resource management planning effort and associated EIS.

As such, San Miguel County has requested, and the BLM has agreed to grant, Cooperating Agency Status pursuant to 40CFR 1501.6, 1501.2, and 1501.8. Under the regulations, the BLM recognizes that San Miguel County has special expertise as it relates to various aspects of the planning effort described above.

## III.  AGENCY DESIGNATIONS

Appendix A specifies Agency Representatives.  Each participating entity will designate one primary representative to attend meetings and to act as a point of contact to ensure coordination and exchange information between San Miguel County and the BLM during the planning process.  An entity may change its representative at any time by providing written notice to the other party.  Cooperating Agencies may also involve "in-house" specialists in discussions, when a specific topic warrants such expertise.

## IV.  AUTHORITIES FOR AGREEMENT

Authority for the BLM and San Miguel County to participate in this agreement is provided by the National Environmental Policy Act, 42 USC 4321 et seq. and 40 CFR 1501.6 – Cooperating Agencies, 1506.2 – Elimination of Duplication with State and Local Procedures, and 1508.5 – Cooperating Agency (CA).

Additional authority comes from the Federal Land Policy Management Act, 43 USC 1712 et seq., which mandates coordination of BLM planning and management efforts with the programs of state and local governments which may be affected by those planning actions.

## V.   ROLES AND RESPONSIBILITIES

### A.  RESPONSIBILITIES OF THE BUREAU OF LAND MANAGEMENT, UFO

The BLM UFO is responsible for the following:

i.   To prepare and ensure the content and quality of the Draft RMP/Draft EIS, the Proposed RMP/Final EIS, and the Record of Decision/Approved RMP.

ii.  To provide San Miguel County with meaningful opportunities for participation, including involvement in:

- identifying issues and concerns of relevance to the planning effort,

- identifying or providing data that is suitable, available and relevant to the planning effort,

- reviewing and commenting on draft sections of the EIS for which San Miguel County provided input due to its special expertise.

iii. To consider and incorporate information and comments provided by San Miguel County into EIS documents to the extent possible and where appropriate.

iv.  To make all final determinations regarding the content of the EIS document.

BLM_0076822

B. RESPONSIBILITIES OF SAN MIGUEL COUNTY

San Miguel County has special expertise in a number of areas related to planning, and as such, is responsible for the following:

i. Along with other involved Cooperating Agencies, to participate in the planning process to the fullest extent possible.

ii. To assist the BLM with the identification of issues and concerns to be addressed through the planning effort.

iii. To provide data of potential relevance and value to the RMP revision/EIS effort. This data may include but is not limited to the following:

- approved San Miguel County programs, plans and policies potentially affected by the RMP,

- information regarding planning area resources and current and proposed uses and management actions,

- environmental analyses on issues for which San Miguel County has special expertise,

- socio-economic data such as demographics, activities and values.

iv. To review and provide comments during specified review periods on preliminary baseline and other technical reports for which San Miguel County has contributed data or other pertinent information.

v. To review and provide comments during specified review periods concerning the following sections of the preliminary Draft EIS:

- preliminary range of alternatives to be considered in detail,

- relevant portions of the "Affected Environment" section (including the socio-economic portion),

- relevant portions of the "Environmental Consequences" section,

- relevant portions of the "Consultation and Coordination" section, including information on consistency reviews.

vi. During public review periods for the Draft EIS, to provide the BLM with a consolidated comprehensive review of the Draft EIS.

vii. To assist the BLM with analyzing and reviewing public comments and data, and with the development of the Proposed RMP/Final EIS.

BLM_0076823

## VI.    FUNDING

Each entity agrees to fund its own expenses associated with this planning process.

## VII.   JOINT RESPONSIBILITIES

The parties agree to use their best efforts to meet the timeframes established in the agreement, to work cooperatively, and to resolve differences as quickly as possible.

## VIII.  IMPLEMENTATION, AMENDMENT AND TERMINATION

This agreement becomes effective upon signature by all parties, and may be subsequently amended through written agreement of all signatories.  The parties agree to jointly develop a framework for information exchange and feedback within 60 days of the signing of this agreement.

San Miguel County or the BLM may terminate this agreement by providing written notice of termination to the other party.  If not terminated sooner, this agreement will end when the Notice of Availability for the Final EIS is published in the Federal Register.

Nothing in this agreement will abridge or amend the authorities and responsibilities of San Miguel County or the BLM or any other party on any matter under their respective jurisdictions.

Nothing in this agreement may be construed to require either San Miguel County or the BLM to obligate or pay funds or in any other way take action in violation of the Anti-Deficiency Act (31 USC 1341) or any State or County law or ordinance.

## IX.   SOVEREIGN IMMUNITY

Neither signatory waives their sovereign immunity by entering into this Memorandum of Understanding.  Each fully retains all immunities and defenses provided by law with respect to any actions based on or occurring as a result of this agreement.

BLM_0076824

## X.   SIGNATURES

The parties hereto have executed this Memorandum of Understanding as of the dates shown below.

BUREAU OF LAND MANAGEMENT

*Barbara L. Sharrow*           6-8-09

Barbara L. Sharrow, Field Manager      Date
Uncompahgre Field Office, BLM

SAN MIGUEL COUNTY, COLORADO

*Elaine Fischer*           6/3/09

Elaine Fischer, Chair       Date
San Miguel County Board of Commissioners

BLM_0076825

## APPENDIX A – AGENCY REPRESENTATIVE

REPRESENTING:       **SAN MIGUEL COUNTY, COLORADO**

Dave Schneck
County Administrator
San Miguel County
PO Box 1170
Telluride, CO  81435
Phone: (970) 728-0447
Fax: (970) 728-3718
Email: daves@sanmiguelcounty.org

REPRESENTING:       **BUREAU OF LAND MANAGEMENT**
**UNCOMPAHGRE FIELD OFFICE**

Bruce Krickbaum
RMP Project Manager
Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
Phone: (970) 240-5384
Fax: (970) 240-5367
Email: bruce_krickbaum@blm.gov

BLM_0076826

# MEMORANDUM OF UNDERSTANDING

## BETWEEN

## SAN MIGUEL COUNTY

THE UNITED STATES DEPARTMENT OF THE INTERIOR

## BUREAU OF LAND MANAGEMENT

*BY AND THROUGH THE COLORADO STATE DIRECTOR*

REGARDING

DEVELOPMENT OF THE GUNNISON SAGE-GROUSE

ENVIRONMENTAL IMPACT STATEMENT

1

## Memorandum of Understanding
### Between San Miguel County, Colorado and the Bureau of Land Management

### 1. Parties to and Purpose for this Document:

This Memorandum of Understanding (MOU) is entered into between San Miguel County, Colorado and the United States Department of the Interior, Bureau of Land Management (BLM), by and through the Colorado State Director (BLM), for the purpose of coordinating and cooperating in conducting an environmental analysis and preparing the Environmental Impact Statement (EIS) for the BLM Gunnison Sage-Grouse EIS Plan Amendment (Project). This MOU establishes San Miguel County as a "cooperating agency" in the EIS and documentation process and establishes procedures through which San Miguel County and the BLM will participate on the BLM interdisciplinary team (IDT) to conduct the analyses and develop the EIS.

San Miguel County has designated County Commissioner Joan May, as primary representative, and County Environmental Health Director Dave Schneck, as alternate representative, to represent San Miguel County as its members on the IDT. The alternate representative may represent San Miguel County, if Commissioner May is unavailable.

### 2. Background:

The BLM is writing an Environmental Impact Statement to analyze incorporating new sage-grouse habitat conservation measures into its Resource Management Plans for the eleven planning units within the range of the Gunnison Sage-Grouse: the Monticello Field Office and the Moab Field Office in Utah, the Grand Junction Field Office, the Uncompahgre Field Office, the Tres Rios Field Office, the Gunnison Field Office, the San Luis Valley Field Office, the Dominguez-Escalante National Conservation Area, the McInnis Canyons National Conservation Area, the Gunnison Gorge National Conservation Area, and the Canyons of the Ancients National Monument in Colorado.

More than 625,000 surface acres of Gunnison Sage-Grouse habitat are on BLM lands across this range.

The EIS is to comply with National Environmental Policy Act of 1969, 42 U.S.C. 4321 et. seq., as amended (NEPA) and provide support for the Record of Decision (ROD), if applicable.

Consistent with NEPA, and pursuant to the Code of Federal Regulations (40 CFR 1501.6 and 1508.5), State or local governments may participate in the development of environmental documentation for projects where they have jurisdiction by law or special expertise.

The BLM has offered and San Miguel County has accepted cooperating agency status in the development of the EIS for the Project.

### 3. Term of MOU:

2

This MOU shall commence upon the day and date last signed and executed by the duly authorized representatives of the parties to this MOU, and shall remain in full force and effect until terminated. This MOU may be terminated, without cause, by either party upon thirty (30) days written notice to the other party, which notice shall be delivered by hand or by certified mail.

**4.   Responsibilities of San Miguel County:**

- San Miguel County will participate in the EIS and documentation process by providing information regarding environmental issues in which or where San Miguel County has jurisdiction by law or special expertise.

- San Miguel County will have one member appointed to the IDT, as identified in Paragraph 1 above. The San Miguel County member may attend and participate in IDT meetings, will provide supporting documentation, and will provide input as necessary, according to IDT protocol.

- San Miguel County will provide information from its records to the IDT, as needed.

- San Miguel County will submit information at its discretion or upon request by any IDT members or the BLM project manager, within the specified time frames.

- Through San Miguel County's IDT member, San Miguel County will have the opportunity for input to preliminary draft documents prepared during the EIS process. The IDT members may, at any time during the effective term of this MOU, request records by contacting San Miguel County point of contact identified in Section 8i.

- San Miguel County will provide public records, and other records deemed appropriate, and consistent with the provisions specified in Section 8g.

**5.   Responsibilities of the BLM:**

In accordance with 40 CFR 1501.5, the BLM is the Project lead agency.

- The BLM Project Manager is Leigh D. Espy.

- The BLM Project IDT Leader is Travis Haby.

- The BLM will keep all IDT members apprised of current events in relation to the development of the EIS.

- The BLM will consider San Miguel County input and proposals to the maximum extent possible, consistent with legal requirements and its responsibility as lead agency.

- Beyond including San Miguel County in all IDT meetings, the BLM will appropriately involve other cooperating agencies (including but not limited to other County

3

governments, Colorado and Utah State Governments, and federal agencies) in meetings where such involvement would be necessary or of benefit to the process.

- The BLM will ensure that input from San Miguel County is appropriately considered and incorporated into the EIS.

- Any final decisions on BLM-administered lands and federal mineral estate under BLM jurisdiction will be made by the BLM.

6. **Mutual Responsibilities of San Miguel County and the BLM:**

- San Miguel County and the BLM will cooperate in apprising each other, as far in advance as possible, of any related actions or issues that may affect the EIS and documentation process or that may affect either party.

- The parties will cooperate in the development and review of any operating guidelines or agreements between San Miguel County or the BLM and other entities involved in the preparation of the EIS.

- The BLM and San Miguel County agree to meet on issues concerning the EIS at the request of either party.

The San Miguel County representative, the Project IDT Leader, and the Project Manager will serve as the MOU core team. The purpose of the MOU core team will be to coordinate communication among the parties to the MOU throughout the EIS process. MOU core team members will be responsible for relaying information to and from their constituents on a timely basis.

7. **Payment:**

No payment shall be made to either party by the other as a result of this MOU, including but not limited to, payment for any cost incurred as a result of carrying out any responsibility identified above. Each party shall pay its own costs. During the course of the project, should it become necessary for one party to purchase from or make payment or reimbursement to the other party, such arrangements will be covered in a separate cooperative agreement.

8. **General Provisions:**

a. **Amendments.**

Either party may request changes in this MOU. Any changes, modifications, revisions, or amendments to this MOU, which are mutually agreed upon by and between the parties to this MOU, shall be incorporated by written instrument, executed and signed by all parties to this MOU and are effective in accordance with the terms of paragraph 3 above.

b. **Applicable Law.**

4

BLM_0076830

The construction, interpretation and enforcement of this MOU shall be governed by the applicable laws of the United States.

**c. Entirety of Agreement.**

This MOU, consisting of seven (7) pages, represents the entire and integrated agreement between the parties and supersedes all prior negotiations, representations and agreements concerning the EIS, whether written or oral.

**d. Severability.**

Should any portion of this MOU be determined to be illegal or unenforceable, the remainder of the MOU shall continue in full force and effect, and either party may renegotiate the terms affected by the severance.

**e. Sovereign Immunity.**

San Miguel County and the BLM do not waive their sovereign immunity by entering into this MOU, and each fully retains all immunities and defenses provided by law with respect to any action based on or occurring as a result of this MOU.

**f. Third Party Beneficiary Rights.**

The parties do not intend to create in any other individual or entity the status of third party beneficiary, and this MOU shall not be construed so as to create such status. The rights, duties and obligations contained in this MOU shall operate only between the parties to this MOU, and shall inure solely to the benefit of the parties to this MOU. The provisions of this MOU are intended only to assist the parties in determining and performing their obligations under this MOU. The parties to this MOU intend and expressly agree that only parties signatory to this MOU shall have any legal or equitable right to seek to enforce this MOU, to seek any remedy arising out of a party's performance or failure to perform any term or condition of this MOU, or to bring an action for the breach of this MOU.

**g. Exchange of Information.**

Parties to this MOU will have access to all information relevant to the fulfillment of their responsibilities under this agreement. Data provided pursuant to this agreement may contain confidential or proprietary BLM or San Miguel County information. All records or information requested of either party by the other will be reviewed by the releasing party prior to release. To the extent permissible under applicable law, any recipient of proprietary information agrees not to disclose, transmit, or otherwise divulge this information without prior approval from the releasing party. Any breach of this provision may result in termination of this MOU.

BLM_0076831

**h.  Administrative Considerations.**

Pursuant to 204(b) of the Unfunded Mandates Reform Act of 1995, responsible Federal Agency officials may meet or enter into project level MOUs with officials of State and local Governments or their designees.  During such meetings and development, implementation and monitoring of such MOUs, views, information and advice are exchanged, or input relative to the implementation of Federal programs is obtained.  Such meetings and MOUs will further the administration of intergovernmental coordination.  The meetings or MOUs referred to include, but are not limited to, meetings called for the purpose of exchanging views, information, advice or recommendations, or for facilitating any other interaction relating to intergovernmental responsibilities or administration.

Nothing in this MOU will be construed as limiting or affecting in any way the authority or legal responsibility of San Miguel County or the BLM, or as binding either San Miguel County or the BLM to perform beyond the respective authority of each, or to require either assuming or expending any sum in excess of appropriations available.  It is understood that all the provisions herein must be within financial, legal, and personnel limitations, as determined practical by San Miguel County and the BLM for their respective responsibilities. This MOU is neither a fiscal nor a funds obligation document.

Nothing in this MOU will be construed to extend jurisdiction or decision-making authority to the BLM for planning and management of land and resource uses for any non-Federal lands or resources in the Project area.  Similarly, nothing in this MOU will be construed to extend jurisdiction or decision-making authority to San Miguel County for planning and management of land or resource uses on the Federal lands or mineral estates administered by the BLM.  Both San Miguel County and the BLM will work together cooperatively and will communicate about issues of mutual concern.

**i.   Contacts:**

The primary points of contact for carrying out the provisions of this MOU are:

| **San Miguel County** | **BLM** |
|---|---|
| Joan May | Leigh D. Espy |
| County Commissioner | Project Manager |
| 333 W. Colorado Ave, 3rd Floor | 2850 Youngfield St. |
| PO Box 1170 | Lakewood, CO 80215 |
| Telluride, CO 81435 | |
| | |
| Dave Schneck | Travis Haby |
| County Environmental Health Director | Project IDT Leader |
| 333 W. Colorado Ave, 3rd Floor | 2850 Youngfield St |
| PO Box 1170 | Lakewood, CO 80215 |
| Telluride, CO 81435 | |

6

BLM_0076832

## 9. Signature:

In witness whereof, the parties to this MOU through their duly authorized representatives have executed this MOU on the days and dates set out below, and certify that they have read, understood, and agreed to the terms and conditions, of this MOU as set forth herein.

The effective date of this MOU is the date of the signature last affixed to this page.

ATTEST:

BOARD OF COUNTY COMMISSIONERS
OF SAN MIGUEL COUNTY, COLORADO

By _____
   Art Goodtimes, Chair

San Miguel County Clerk & Recorder
Chief Dpty/Clerk – BOCC

Date   8/27/14

U. S. DEPARTMENT OF THE INTERIOR,
BUREAU OF LAND MANAGEMENT,
by and through:

Ruth Welch
Colorado State Director

Date   9/4/14

7

BLM_0076833

To: Jamie Connell, BLM State Director   From: Bonnie Inouye on July 29th, 2019
RE: Protest FEIS and Proposed RMP for Uncompahgre Field Office

Dear Director Connell,

As a resident of the North Fork Valley who has previously submitted comments of the Draft RMP, I respectfully submit the following protest. My contact information is: Bonnie Inouye, 38213 Highway 133, Hotchkiss, CO 81419. Telephone: (970) 260-7324. Our house is between Paonia and Hotchkiss. I hope we will still be able to turn onto Highway 133 from our driveway in future years!

The recent decision by the BLM does not follow Colorado's laws to respect property owners, public lands, wildlife and the safety and health of the citizens. Public safety and our ability to grow food and raise families in the North Fork Valley should come before the profits of big gas and oil companies! We grow apricots and apples and grapes on our 34 acres. We also have two nice vegetable gardens. We eat elk and deer that my husband hunts on public lands and we eat the fish he catches in the rivers here. I fear all of this will be lost because of fracking.

There is not enough water to complete all the proposed wells. We rely on the Fire Mountain Canal water for our crops. This water comes from the Paonia Reservoir. I am horrified by the prospect of drilling and oil pipelines next to our reservoir. We do not even know all the chemicals used for fracking but we will need to test for them diligently, all the time, because the BLM has forgotten about the citizens and agriculture. I believe the BLM has erred in adopting the Proposed RMP because Alternative E was improperly adopted and was not subject to public comments.

Colorado enacted recent statutory changes to put people, the environment, and climate first. This is more important than rich CEOs getting richer. Also the BLM needs to remember that Colorado has a Water Plan. Our water is basic to our lives. Please do not allow contamination of our water!

The North Fork Valley is a very special place. It is well-known throughout the state for the high quality of the food, which is now featured in many restaurants that value our locally produced fruits and cheeses and meat and eggs and wine and beer and hard cider. City people come from Denver and Colorado Springs to unwind in the peaceful area around Paonia, taste the wines and enjoy the cherry festival, our amazing apricots, flavorful peaches, nectarines, pears and apples. Perhaps you have tasted our fruit? If you have not been here in a while, please come visit out peaceful valley! And please consider helping us protect this wonderful place.

Sincerely, Bonnie Inouye   *Bonnie Inouye*   July 29, 2019

BLM_0076834

State Representative
JULIE McLUSKIE
Colorado State Capitol
200 East Colfax Avenue, Room 307
Denver, Colorado 80203
Office: 303-866-2952
Cell: 970-977-0021
E-mail: julie.mcluskie.house@state.co.us



Member:
 Appropriations Committee
 Education Committee
 Rural Affairs & Agriculture
  Committee

# COLORADO
## HOUSE OF REPRESENTATIVES
State Capitol
Denver
80203

July 23, 2019

Ms. Jamie Connell, Colorado State Director
Bureau of Land Management
2580 Youngfield St.
Lakewood, CO 80215

**RE: Protest of Proposed RMP and Final EIS for the BLM's Uncompahgre Field Office – Representative Julie McCluskie, 303-866-2952, 200 E. Colfax, Rm. 307, Denver, CO 80203**

Dear Director Connell:

As the duly elected Representative for the Colorado House of Representatives, House District 61, I am respectfully filing this protest of the Bureau of Land Management's (BLM) Resource Management Plan and Final Environmental Impact Statement (RMP/EIS) for the BLM's Uncompahgre Field Office.

**AUTHORITY TO PROTEST/STANDING**
While I have not previously commented on the Proposed RMP/EIS, I am not protesting here as an individual. My interest in protesting is as the elected Representative for Colorado House District 61. This office *has* previously engaged in this process, most recently in a letter signed by my predecessor Representative Millie Hamner submitted on October 27, 2016 (attached). It is my intention to continue representing my constituents in this process and specifically protest the failure to follow the National Environmental Policy Act (NEPA) process for public input.

**PROCEDURE & NEPA COMPLIANCE WITH ALTERNATIVE E**
When Representative Hamner submitted comments on the Draft RMP/EIS in 2016, the BLM had presented four alternatives, and a sub-alternative for managing a planning area of approximately 3.1 million acres in southwestern Colorado throughout six counties, including Delta and Gunnison counties in House District 61. I understand that over 42,000 comments asking for the BLM to consider a "no-leasing" alternative were submitted in addition to those alternatives presented in that Draft RMP/EIS.

The BLM's decision to create a wholly new and dramatically different "Alternative E", and to offer that new Alternative as the Proposed Alternative is extremely disappointing in light of those 42,000 no-leasing comments, and a clear violation of the intent of the National Environmental Policy Act (NEPA). NEPA guarantees that the public will have "meaningful opportunities" to comment on the entire range of proposed alternatives. My constituents have the right to comment on all reasonable alternatives, and the BLM's decision here violates that right. Presenting Alternative E to the public without an opportunity for public input during this final protest period is unacceptable.

For those reasons, I formally protest the Proposed RMP and Final EIS for the BLM's Uncompahgre Field Office and respectfully request an opportunity for public input through a formal comment period as outlined in NEPA.

Sincerely,

Julie McCluskie
State Representative
House District 61

BLM_0076835

cc:

Gov. Jared Polis
State of Colorado
Colorado State Capitol
200 E. Colfax Ave.
Denver, CO 80203

Dan Gibbs
Executive Director
Colorado Department of Natural Resources
1313 Sherman St., Room 718
Denver, CO 80203

John Messner
Gunnison County Commissioner
200 E. Virginia
Gunnison, CO 81230

Robbie LeValley
Delta County Administrator
501 Palmer St # 227
Delta, CO 81416

William Perry Pendley
Deputy Director, Policy and Programs, Bureau of Land Management
1849 C Street NW
Rm. 5665
Washington, DC 20240

Greg Larson
Field Manager, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

BLM_0076836

State Representative
MILLIE HAMNER
Colorado State Capitol
200 East Colfax Avenue, Room 307
Denver, Colorado 80203
Capitol: 303-866-2952
Email: millie.hamner.house@state.co.us



## COLORADO

### HOUSE OF REPRESENTATIVES

STATE CAPITOL

DENVER

80203

October 27th, 2016

Dear Director Kornze,

I represent citizens in the North Fork Valley of Southwest Colorado and support the work that Citizens for a Healthy Community (CHC) has done to protect them from the potential impacts of oil and gas development in the Delta County water, air and foodshed. I respectfully request that the Bureau of Land Management (BLM) Uncompahgre Field Office adopt the most protective possible management measures when considering oil and gas leasing in its revised Resource Management Plan for public lands and federal minerals in the North Fork Valley area.

CHC along with six other community organizations representing diverse interests in the North Fork Valley, including ranching, farming, wine making, real estate, and business submitted a community alternative called the North Fork Alternative for BLM's consideration in revising the Uncompahgre Field Office Resource Management Plan. I want to thank BLM for including it as a sub-alternative among the four alternatives BLM is considering. I understand that this alternative, which would close 75% of public lands in a sensitive watershed to oil and gas leasing was not included in the preferred alternative. I also understand that BLM did not consider a reasonable no-leasing alternative for the sensitive area, which if contaminated would potentially destroy the State of Colorado's largest concentration of organic farms, and a significant foodshed.

Throughout my six years as the State Representative for HD61, I have fought to conserve our district's clean air and fresh water, and have worked hard to protect my constituents from potential deleterious impacts from oil and gas development in residential areas. As part of my efforts, I have promoted the use of sound science in decision-making, and advocated for regulations that put the health and safety of my constituents first. Activities on public lands should not have the potential to destroy clean air, abundant fresh water and foodsheds, which the public depends on. The North Fork economy, the recreational opportunities it provides, and the hundreds of thousands of people who depend on the food produced here rely on clean air and water. Gold Medal fishing, prized big-game hunting, and award-winning fruits, vegetables, and wines could be seriously impacted by air pollution or surface, ground, and/or water contamination that have been linked with oil and gas extraction.

To my knowledge, BLM has not conducted a human health impact assessment, analyzed new hydraulic fracturing and multi-stage drilling technologies, taken a hard look at the implications of climate change on the region, the local economy and other resources BLM is obligated to manage, nor considered the impact of the rural gas gathering lines exemption from Federal pipeline integrity regulations.

I have seen overwhelming opposition from my constituents to oil and gas leasing proposals in the North Fork Valley area. I share their belief that the North Fork Valley is a special place that must be protected from oil and gas development. Thank you for your consideration.

Sincerely/Respectfully,

State Representative Millie Hamner,
Colorado House of Representatives - District 61

Cc:

Sally Jewell
Secretary
US Department of the Interior
1849 C Street, N.W.
Washington DC 20240

Janice Schneider
Assistant Secretary for Land and Minerals Management
US Department of the Interior
1849 C Street, N.W.
Washington DC 20240

Mike Tupper
Acting Assistant Director, Resources and Planning
Bureau of Land Management
1849 C Street NW, Rm. 5644
Washington DC 20240
mtupper@blm.gov

Mike Nedd
Assistant Director - Energy, Minerals, and Realty Management
Bureau of Land Management
1849 C Street NW, Rm. 5625
Washington DC 20240
E-mail: mnedd@blm.gov

Ruth Welch
State Director
Bureau of Land Management
2850 Youngfield Street
Lakewood, Colorado 80215-7093

Barb Sharrow
District Manager (Acting)
Bureau of Land Management
2465 South Townsend Avenue
Montrose, Colorado 81401

Dana Wilson
Uncompahgre Field Office Manager (Acting)
Bureau of Land Management
2465 South Townsend Avenue
Montrose, Colorado 81401

# Proposed RMP/Final EIS

## Submission Successful
## Your Submission ID is: PRMP-1-500000195

## Names & Addresses

Mr. Ralph D'Alessandro
36291 Sunshine Mesa Road
Hotchkiss, Colorado 81419, United States
Email Address:        rdinca@yahoo.com
Day Phone:            1970-527-4626
Other Phone:          970-314-5355
Agency:               Public Web Page

## Comments

Comment ID: 1

Comment Title: PROTEST RE: BLM Uncompahgre Field Office Resource Management Plan

Comment: To: Jamie Connell,
BLM State Director
: RE: Protest FEIS and Proposed RMP for Uncompahgre Field Office
Date:
July 29, 2019
Dear Director Connell,

PROTEST RE: BLM Uncompahgre Field Office Resource Management Plan

This protest letter is submitted by Ralph D'Alessandro, 36291 Sunshine Mesa Road, Hotchkiss, CO 81419, Telephone 970-527-4626.   I previously submitted comment letters, the last dated November 1, 2016 (000548_DAlessandro_20161101).  I submit this as a former 8 year publicly elected member of the Board of Supervisors of the Delta Conservation District, a member of the Western Slope Conservation Center and a resident of Colorado and the North Fork Valley of the Gunnison River (NFV) concerned with the preservation and conservation of the area's natural resources, wildlife, economy, water supply and NFV characteristics that provide a sustainable economy for the area while not significantly exacerbating the air/water pollution or human caused or other factors of weather change.  This protest addresses the following RMP Plan sections:
•Alternative E in its entirety
Section 3.4.2 Public Health & Safety
•Section 4.3.1 Air Quality & Climate •
Section 4.3.2 Soils & Geology•
Section 4.3.5 Water Resources •
Section 4.4.3 Fish & Wildlife
The decision of the BLM State Director is incorrect for the following reasons with respect to the above identified sections:
Alternative E :  This alternative has not examined the impact of methane emissions to global warming and greenhouse gases in opening up lands for extensive oil and gas extraction.  This alternative in the plan has afforded no opportunity for public input as is the first time it has been publicly presented.  The Proposed RMP opens more of the federal mineral estate to oil and gas development without giving adequate consideration to the impact this will have on infrastructure maintained by the State and other local governments.  It does not adequately evaluate the impact of such development on the local economy that has developed since the closure of two coal mines and the downsizing of the remaining operating one in the NFV.  This economy includes wineries, agri-tourism, farm to table events utilizing the organically grown crops and raised livestock.  The West Elk Viticultural Region, wineries, B&B's, agri-tourism rely on the view shed in the NFV to welcome people from across the state and the country to the area.  The NFV reportedly has the largest concentration of organic farms in the state which supply produce to the neighboring tourist towns of Crested Butte, Aspen and Telluride, among others.  Industrial development such as accompanies the oil and gas industries in the NFV will seriously negatively affect, and in some instances, destroy portions of this economy.  The lifeblood of the NFV is the North Fork of the Gunnison River which supplies the water for its ranches and farms.

The Proposed RMP Plan includes none of the recommendations from the citizen presented alternative dealing with recommended leasing stipulations such as Controlled Surface Use (CSU) and No Surface Occupancy (NSO). The Proposed RMP drastically decreases the stipulations in Alternative B1 even the Preferred Alternative D that were designed to protect resources of value from oil and gas development.  It increases lands available for oil & gas lease with "standard stipulations from 0% to 12%.  The proposed plan drastically reduces NSO designated lands from 26% to 11% compared to Preferred Alternative D and does not sufficiently protect lands on steep slopes and geologically unstable soils.  It weakens CSU stipulations & reduces Timing Limitations (TL) near critical wildlife habitat.  The

1/3

8/9/2019

Proposed RMP eliminates Ecological Emphasis Areas entirely, reduces Areas of Critical Environmental Concern, and significantly weakens the proposed protections for the Jumbo Mountain Special Recreation Management Area, and does not include any "No Surface Occupancy" stipulations in that area, effectively opening Jumbo Mountain to oil and gas development.

The Proposed RMP opens more of the federal mineral estate to oil and gas development without giving adequate consideration to the impact this will have on infrastructure maintained by the State and other local governments.

Lastly, the Proposed RMP Plan had not consulted with the Colorado Governor via a Governors Consistency Review. The Governor's Consistency Review is required by the NEPA process "to identify inconsistencies with state and local plans.

Section 3.4.2 Public Health and Safety : This section downplays public health risks, and ignores significant evidence that has been provided that shows increased oil and gas development can have serious adverse impacts on public health. A most recent CU Anschutz pee reviewed study released on July 19, 2019 from the Colorado School of Public Health in the Environmental International Journal found that mothers living in areas near oil and gas activity had a 40-70% higher chance of birthing children with congenital heart defects, a condition otherwise relatively rare, but in which in Colorado occurs a more than twice the national rate. The second month of pregnancy and thereafter was deemed to be critical since that is when it is believed congenital heart defects start to form. The Proposed RMP Plan provides no analysis of the impact of oil and gas activities in the narrow NFV which traps emissions in the valley because of the bordering land masses and wind patterns. The aforementioned study analyzed 3,324 infants born in Colorado between 2005 and 2011 in arriving at its conclusion. See Dr. Lisa McKenzie, assistant research professor at Colorado School of Public Health and lead study lead author. This study added to an earlier 2014 study by the same author that found a 30% increase of risk of congenital heart defects in infants utilizing different parameters sic as not accounting for the intensity of development and production around the mothers' homes and where the mother lived during the second month of pregnancy.

•Section 4.3.1 Air Quality & Climate: Ozone in the NFV is at an elevated level, being trapped between the Grand Mesa in the west and the West Elk and Ragged Mountains to the east as documented in a TEDX study. Ozone levels already exceed EPA thresholds in specific areas but the RMP Plan ignores this fact.

•Section 4.3.2 Soils & Geology:  The RMP Plan drastically reduces NSO designated lands and does not sufficiently protect lands on steep slopes and geologically unstable soils.
•
Section 4.3.5 Water Resources : The RMP Plan does no analysis of the impact of permanently withdrawing water from hydrological cycle that occurs when water is used for oil and gas exploration and production. Water is a limited resource in the NFV and the areas opened for exploration and production are either in the NFV or are in the watershed that provides water for the 33.7 mile long valley where organic agriculture, traditional ranching and other farming relies on such for its existence. The Proposed RMP reduces setbacks from water supplies and waterways. The BLM has failed to acknowledge that there is not enough water in the North Fork to sustain the level of oil and gas development anticipated in the Proposed RMP. The Proposed RMP anticipates over 1,000 new hydraulically fractured wells in the UFO, yet does not address the Programmatic Biological Opinion from the US Fish and Wildlife Service that caps surface water withdrawals on the North Fork of the Gunnison River at ~600 acre-feet per year for energy development purposes. Current oil and gas development in the area is already pushing that threshold. Lastly there are a number of private water companies in the NFV that rely on springs for their water to supply domestic water to the residents. With the increasing years of below normal precipitation some are experiencing under supplied spring water replenishment. The Sunshine Domestic Water Company, with 33 taps, has twice this summer had to curtail water use entirely until its cisterns refilled.

•Section 4.4.3 Fish & Wildlife :  Oil and gas exploration and production in the proposed BLM lands will disrupt wildlife migration patterns. The Colorado Department of Parks and Wildlife has already stated that elk populations are in decline and migration pattern disruption will increase such decline. A game processor (Lizzy's in Paonia) reports that elk processed in the last 3-4 years has decreased from an average of about 750 per season to just 250 last year, reflecting the changed migration and count reduction. Guiding is a significant source of income in the NFV and oil and gas exploration and production will only further negatively affect this source. In area E-05 including Delta and Gunnison Counties the elk population has experienced a deline in calf ratios (calves per 100 cows) since the 1980's from 47 to 38 calves:100 cows.

For the above reasons I respectfully oppose the Proposed RMP Plan.
Respectfully submitted;

Ralph D'Alessandro

Cc: Governor's Office
Senators Bennett and Gardner

## Submission Classification

Response Type:                                Front Office Submission Form

BLM_0076840

8/9/2019

| | |
|---|---|
| Delivery Type: | Front Office Submission Form |
| Receipt Date: | 07/29/2019 |
| Status: | ACTIVE |

## Agreements

Yes -   Please include me on the mailing list for this project?

No -   Withhold personally identifying information from future publications on this project?

Yes -   Protesting the Proposed RMP/Final EIS

## Original Submission Files

BLM_0076841



**COLORADO**

**Department of Natural Resources**

Executive Director's Office
1313 Sherman Street, Room 718
Denver, CO 80203

July 29, 2019

*Filed electronically through BLM e-Planning project website protest section*

Director (210)
Bureau of Land Management
Attention: Protest Coordinator

Re:     Protest of the Uncompahgre Field Office Proposed Resource Management Plan (PRMP) and
         Final Environmental Impact Statement (FEIS) for the Bureau of Land Management (BLM)
         Uncompahgre Field Office (UFO), released June 2019

Please accept this protest of the BLM's UFO Proposed RMP and FEIS, submitted by the State of Colorado acting by and through its Department of Natural Resources and Division of Parks and Wildlife (Colorado). Colorado participated in the planning process as a cooperating agency on behalf of the Colorado Department of Natural Resources and two of its divisions – the Colorado Water Conservation Board (CWCB) and Colorado Parks and Wildlife (CPW) – submitting comments on the administrative draft plan in 2011 and 2012, and on the public Draft RMP and EIS in 2016. Colorado also participated in all official cooperating agency meetings and numerous additional unofficial meetings with BLM biologists and NEPA planners. CPW volunteered to assist with writing and reviewing sections of the RMP and EIS where particular expertise in wildlife, wildlife habitat, and wildlife management was needed, and in areas where other resources may have impacts on wildlife.

CPW's meetings with and comments submitted to BLM prior to 2016 did not result in substantive changes being made to the administrative drafts or to the 2016 public draft. However, the current UFO Field Office Manager and District Manager have made significant efforts to address Colorado's concerns with the 2016 Draft RMP/DEIS, and to foster a stronger, more productive relationship between CPW and the BLM. Additionally, Colorado appreciates BLM's efforts to address comments submitted by CWCB on the public Draft RMP and EIS in 2016.

CPW's concerns outlined in this protest remain despite these efforts.

This protest is filed in accordance with the requirements in 43 C.F.R. § 1610.5-2.

List of Attachments

   A. Southwick Associates. "Economic Contributions of Outdoor Recreation in Colorado:  A regional
      and county-level analysis," Feb. 24, 2014.

B. Department of Interior Secretarial Order No. 3362, Improving Habitat Quality in Western Big-Game Winter Range and Migration Corridors, Feb. 9, 2018.

C. Comments on the 2016 Uncompahgre Field Office Draft Resource Management Plan/Environmental Impact Statement from Colorado Department of Natural Resources, Colorado Parks and Wildlife, and Colorado Water Conservation Board, Nov. 1, 2016.

D. Letter from Former Colorado Governor John Hickenlooper to Acting BLM State Director Gregory Shoop regarding the December 2018 oil and Gas Lease Sale, July 17, 2018.

E. Letter from Former Colorado Governor John Hickenlooper to Acting BLM State Director Gregory Shoop regarding the December 2018 Oil and Gas Lease Sale, Sept. 11, 2018.

F. Letter from DNR Executive Director Dan Gibbs to BLM State Director Jamie Connell regarding the September 2019 Oil and Gas Lease Sale, Apr. 16, 2019.

G. Letter from DNR Executive Director Dan Gibbs to BLM State Director Jamie Connell regarding the September 2019 Oil and Gas Lease Sale, June 12, 2019.

H. U.S. Fish and Wildlife Service Biological Opinion – Revision of the Resource Management Plan for the Uncompahgre Field Office, Dec. 17, 2018.

I. Memorandum from U.S. Fish and Wildlife Western Colorado Supervisor to BLM Uncompahgre Field Office, Gunnison Sage-grouse Project Manager, Feb. 3, 2016.

J. E-mail from BLM to Cooperating Agencies for Gunnison Sage-grouse Rangewide RMP Amendment, June 7, 2018.

## Colorado's interest in the UFO RMP

Colorado has an interest in protecting and preserving the natural resources of the State, including its land, air, water, and wildlife. CPW is charged with protecting, preserving, enhancing, and managing Colorado's wildlife and their environment. C.R.S. § 33-1-101. As BLM noted in the PRMP, the State has primary jurisdiction and authority to manage fish and wildlife throughout Colorado, including in the UFO planning area.[1]

Colorado also has an interest in fostering a healthy, stable, and resilient economy. The planning area encompasses a vast stretch of southwestern Colorado where public land uses range from mineral development to outdoor recreation to grazing to habitat protection. Big game hunting plays a critical role in our state's economy, in particular providing essential income for the rural communities that host big game hunters, outfitters, and guides. The counties within the UFO planning area include Delta, Gunnison, Montrose, and San Miguel. The total economic contribution of big game hunting within those counties is over $41 million annually and represents over 186,000 big game hunter user days alone.[2] This is a sustainable source of economic contribution only if the lands can support big game populations and quality hunting opportunities. Fishing, wildlife watching, and other forms of outdoor recreation also attract both residents and non-residents to the planning area. Conservation of the State's wildlife, including protection and recovery of threatened and endangered species, is also a priority for Colorado.

---

[1] PRMP/FEIS, pp. 1-5.

[2] Attachment A, pp. 6, 27.

These interests may be adversely affected by the UFO RMP, particularly with respect to two specific issues raised in this protest: protection of big game migration corridors and winter range; and conservation and recovery of the federally-listed Gunnison sage-grouse.

## Issues being protested

I.    **Wildlife:** Lack of Protection for Winter Range and Migration Corridors Necessary for CPW to Sustain Big Game Population Objectives

II.   **Special Status Species:** Inadequate Protection for Gunnison Sage-grouse

### I.    Protection and Habitat Improvement in Winter Range and Migration Corridors

Throughout the planning process and in Colorado's 2016 comments on the Draft RMP, CPW recommended specific goals, objectives, standards, and guidelines to maintain and enhance big game winter ranges and migration corridors. This included recommending that BLM adopt limits on road and trail densities in these habitats in order to maintain habitat effectiveness, meet CPW's big game population objectives outlined in Data Analysis Unit (DAU) plans, and maintain and enhance recreational hunting opportunities. To facilitate adopting this recommendation, CPW supplied polygons of the highest wintering densities of mule deer and elk within the UFO for consideration of additional protections from incompatible uses (such as high-intensity recreation or high-density oil and gas development) that could severely impact the habitat function of these areas. CPW also provided a map of "winter range emphasis areas" with its 2016 comments.

Along the same lines, Secretarial Order (SO) 3362, signed by Secretary Zinke on February 9, 2018, sought to improve habitat quality and protect western big game winter range and migration corridors for antelope, elk, and mule deer. The Order seeks to improve wildlife management and conservation and expand opportunities for big game hunting by improving priority habitats within important migration corridors in Colorado, as well as other western states. The Order specifically directs BLM to apply site-specific management activities to sustain local and regional big-game populations through measures such as minimizing development that would fragment winter range and primary migration corridors.[3]

SO 3362 was signed after the 2016 Draft RMP/DEIS for the UFO was issued, but almost a year and a half prior to the PRMP/FEIS issuance in June 2019. However, the PRMP does not reference SO 3362, specify or provide additional protections for any big game winter range or migration corridors consistent with SO 3362 and CPW's previous comments, or provide other management guidelines for minimizing development that would fragment winter range and primary migration corridors.

As reflected in Colorado's comments, the best available science demonstrates that seasonal timing limitations are not adequate to maintain big game populations in high density development areas; hence our request for stipulations limiting development density for both roads and oil and gas development to minimize development that would fragment winter range and priority habitats.[4] Pursuant to recent conversations between CPW and BLM's Colorado State Office regarding SO 3362

---

[3] Attachment B, p.5.

[4] Attachment C, p.11.

BLM_0076844

implementation, BLM staff have indicated that they lack the appropriate authorization to address Colorado's desire to adopt a stipulation to address route and facility densities, but that they could address Colorado's recommendation *when RMPs are being revised or amended.* Yet, notwithstanding Colorado's repeated requests and the Secretarial Order, BLM has failed to take advantage of the UFO RMP planning process to include these stipulations.

The UFO PRMP indicates that BLM prefers to consider travel route density limitations during travel management planning.[5] But route density limitations are integrally tied to other resource uses (such as oil and gas development and well pad densities), and at least for purposes of protection of winter range and migration corridors, should be considered as a package during the land allocation decisions adopted during the RMP revision process. The UFO PRMP currently includes Special Recreation Management Areas (SRMAs) and other land allocation decisions that overlap with important winter range and migration corridors identified by CPW without consideration how the functionality of these important habitats will be maintained.

Since 2008, and in comments on proposed oil and gas lease sales as recently as 2018 and 2019, Colorado has requested that BLM incorporate a stipulation that limits the density of surface facilities to no greater than one well pad per square mile (640 acres) or one linear mile of road/travel route per square mile (640 acres) for specific parcels that contain the highest priority big game winter habitats and migratory corridors.[6] Incorporating this stipulation in the PRMP would help satisfy the intent and specific requirements outlined in SO 3362. During post-RMP project development, BLM has repeatedly indicated that density limitations on development cannot be applied when a stipulation is not included in the governing RMP. As a result, Colorado has frequently resorted to asking that relevant parcels be deferred altogether from lease sales until BLM is able to apply a stipulation that limits the density of surface facilities to no more than one well pad or travel route per mile.

At least one BLM Colorado Field Office, the Tres Rios Field Office, has recognized the need for a stipulation to limit the density of surface facilities by incorporating a Controlled Surface Use (CSU) Stipulation in their 2015 RMP revision. Even prior to SO 3362, this stipulation was added to the Tres Rios RMP to address the lack of existing mechanisms to limit the density of surface facilities post-lease when faced with development proposals and individual drilling permits.[7]

The UFO and Colorado State Director's decision not to include similar stipulations in the UFO PRMP may simply be an oversight. Regardless, Colorado protests this decision and requests that the UFO follow in the TRFO's footsteps and, in accordance with SO 3362, take advantage of this planning process to include in the PRMP CSU stipulations to limit the density of surface facilities in critical big game winter range and migration corridors.

**Recommendation for resolution:**

---

[5] UFO PRMP Draft EIS, Chapter 3, p.3-109.

[6] Attachments D – G.

[7] BLM Tres Rios Field Office Approved Resource Management Plan and Record of Decision (2015), Appendix H, Stipulation 3.10.2 *Controlled Surface Use – Severe Winter Range, Winter Concentration and Mule Deer Critical Winter Range and Big Game Production Areas*, p.H-27.

BLM_0076845

**Controlled Surface Use (CSU)/Site-Specific Relocation (SSR) – Big Game Severe Winter Range, Winter Concentration Areas, Production Areas and Migration Corridors**

*Surface occupancy or use is subject to the following special operating constraints:* In order to provide for healthy ungulate populations capable of meeting state population objectives, anthropogenic activity and permanently constructed facilities shall be designed to maintain habitat function, permeability, and landscape connectivity between seasonal habitats. This includes limiting the density of permanently constructed facilities requiring daily access to one facility per square mile (640 acres) or less and limiting the density of open roads and trails designed for daily access to one linear mile per square mile (640 acres).

*For the purposes of:* Protecting and improving priority big game winter range and migratory habitats consistent with SO 3362, and in order to maintain reproductive success and recruitment necessary to sustain healthy big game populations capable of meeting state population objectives.

*Rationale:* There is an established body of evidence that timing limitation stipulations on oil and gas and other development activities are not adequate to maintain the functionality of big game habitats. Managing the concentration and intensity of development is necessary to maintain big game populations in areas subject to landscape-scale anthropogenic development. This may include requiring collocation of facilities to minimize traffic and road/trail densities.

II.    **Gunnison sage-grouse**

Gunnison sage-grouse (*Centrocercus minimus*), a species listed as threatened under the Endangered Species Act (ESA), is present in the UFO. Portions of the Crawford, San Miguel, and Cerro Summit-Simms satellite populations of this species are included in the planning area.[8] In addition, portions of both occupied and unoccupied critical habitat for Gunnison sage-grouse are located in the planning area.

Colorado appreciates BLM's decision to prohibit surface occupancy or disturbance in all Gunnison sage-grouse occupied critical habitat, and similarly to restrict surface occupancy where appropriate in unoccupied critical habitat with Controlled Surface Use (CSU) stipulations.[9] These stipulations will provide important protections for critical habitat that, in the satellite population areas, is essentially irreplaceable once destroyed.

Colorado is concerned, however, that BLM has not provided further protections to these fragile populations through other resource allocations and management decisions. When the species was listed in 2014, the U.S. Fish and Wildlife Service (Service) identified the inadequacy of federal regulatory mechanisms, including BLM's RMPs, as a primary threat to the species. 79 Fed. Reg. 69192, 69282 (Nov. 20, 2014). The Service noted that if an RMP contains specific direction regarding Gunnison sage-grouse habitat, conservation, or management, that specific direction "is an enforceable regulatory mechanism" applicable to permitting and other decision making for activities within the RMP planning area. *Id.* (noting that the UFO is one of the six RMPs under which BLM manages Gunnison sage-grouse habitat in Colorado). The Service also noted that all of these RMPs, when undergoing revisions, should include

---

[8] UFO PRMP, Chapter 3, p.3-62.

[9] UFO PRMP, Appendix B, NSO 31, p. B-32, and CSU-29, p.B-73.

6

various measures "such as spatial buffers, seasonal limitations, and other site-specific restrictions on land use activities in important Gunnison sage-grouse habitat." *Id.* at 69283.

Similar to a process successfully undertaken for greater sage-grouse, BLM announced in May 2014 that it would embark upon development of a landscape-level RMP amendment specifically targeted at conservation of Gunnison sage-grouse on BLM-administered public lands. *Id.* Pending the outcome of that rangewide process, however, the Service found that the BLM RMPs in existence at the time of listing "generally lack[ed] specific land use allocation decisions, stipulations, and enforceable measures" to ensure adequate conservation of the species on public lands. *Id.* The stipulations in the PRMP prohibiting or limiting surface occupancy in critical habitat do much to improve the previous UFO RMP. But in order for the species to recover and be de-listed, BLM can and should do more. Indeed, the RMPs governing Gunnison sage-grouse and habitat should provide for a higher level of protection than the ones ultimately adopted for the un-listed greater sage-grouse.

Additional action to protect Gunnison sage-grouse is required because of BLM's duty under § 7(a)(2)-(3) of the ESA to ensure that its actions do not jeopardize the continued existence of the species or destroy or adversely modify critical habitat, and also under § 7(a)(1), which requires federal agencies to utilize their authorities in furtherance of the purposes of the ESA by "carrying out programs for the conservation of endangered species and threatened species." 16 U.S.C. § 1536(a). This duty is reflected in the Biological Opinion prepared by the Service in consultation with BLM on the PRMP.[10] Under the section entitled "Conservation Recommendations," the Service notes that § 7(a)(1) "directs Federal agencies to utilize their authorities to further the purposes of the ESA" by carrying out discretionary agency activities that ensure conservation of listed species.[11]

BLM has now abandoned the effort to develop a rangewide RMP amendment for Gunnison sage-grouse conservation.[12] Accordingly, the Field Offices must take on BLM's duty to conserve Gunnison sage-grouse. The Endangered Species Act defines the terms conserve, conserving, and conservation as "to use and the use of all methods and procedures which are necessary to bring any federally listed species to the point where the measures provided pursuant to the Act are no longer necessary." 16 U.S.C. § 1532(3). As noted above, all federal agencies are directed to conserve threatened and endangered species under the ESA.

In accordance with this direction (and while a Rangewide Gunnison Sage-grouse Plan was still on the table), the Service sent a memo to BLM/UFO stating that, "because Gunnison sage-grouse satellite populations are small, generally declining, and highly imperiled, BLM's management direction should explicitly prohibit any additional impacts to the bird and its habitat in these satellite populations."[13] Prevention of further impacts is not enough, however: in addition, "the satellite populations will require habitat restoration to increase the amount of available habitat." *Id.* Thus, Colorado urges the UFO to include clearly described and prioritized targets for sage-grouse habitat restoration in the PRMP.

The Service also recommended, and we agree, that

---

[10] Attachment H; Colorado requests that the Biological Opinion be included as an Appendix to the PRMP/FEIS.
[11] Attachment H, p.25.
[12] Attachment J.
[13] Attachment I.

- Noise impacts should be limited across all sage-grouse habitats from March 1-July 15, to 10 dBA above ambient with maximum noise levels at approximately 30 dBA, (based on recommendations from Patricelli *et al.* 2013); and
- Across all program areas, BLM should reserve the ability to implement additional area closures to prohibit activities that may conflict with the conservation of Gunnison sage-grouse. This would have particular relevance for authorizing or amending any rights-of-way (ROW) within occupied or unoccupied habitat where a more restrictive measure should be applied when and where population levels drop below a certain point or if habitat impacts exceed a certain threshold.

Finally, and critically, Colorado requests that, consistent with the recommendation in the Service's Biological Opinion, BLM include in the PRMP the criteria developed for the Northwest Colorado Greater Sage-grouse RMPA with respect to waivers, exceptions and modifications within NSO-designated areas. These criteria require, among other things, agreement between BLM's District Manager and CPW and written justification for granting any exceptions or modifications.[14] As mentioned above, land use restrictions for Gunnison sage-grouse habitat should be at least as strong or stronger than those for an unlisted species like the greater sage-grouse.

Colorado did not include these recommendations during the comment period on the Draft RMP because we were not alerted until June 2018 that the planning process for a rangewide RMP for Gunnison sage-grouse conservation had been postponed indefinitely.[15] But now that it is up to the Field Offices to amend their RMPs to conserve Gunnison sage-grouse, Colorado respectfully requests that these measures, recommended by the agency with jurisdiction over management of listed species, be adopted by the UFO, and protests their absence from the PRMP.

*Recommendations for resolution:*

Replace the standard Exceptions, Modifications, and Waivers in NSO-31 with criteria similar to those cited in the Biological Opinion at p. 28, mirroring the standards in the Northwest Colorado Greater Sage-grouse RMPA (as amended in 2019).

Work with CPW to establish and include clearly described and prioritized targets for sage-grouse habitat restoration in the UFO.

Limit noise impacts across all Gunnison sage-grouse habitats from March 1-July 15, to 10 dBA above ambient with maximum noise levels at approximately 30 dBA.

Reserve the ability to implement additional area closures to prohibit activities that may conflict with the conservation of Gunnison sage-grouse. This would have particular relevance for authorizing or amending any rights-of-way (ROW) within occupied or unoccupied habitat where a more restrictive measure should be applied when and where population levels drop below a certain point or if habitat impacts exceed a certain threshold.

**The Cooperating Agencies' Role**

---

[14] Attachment H, p.28.

[15] Attachment J.