

# Uncompahgre Resource Mana<span>IN</span>



We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to:  BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO  81401.

First Name__**Art**_____ Last Name__**Etter**____ Date__**02-25-10**__

Mailing Address____**POB 44**_____

City_____**Paonia**_____ State_____**CO** Zip_____**81428**_____

E-mail Address_____**aetter@bowieresources.com**_____

Would you like to be added to the RMP mailing list to receive future project-related information?  (Your name will not be shared.)  Yes:  _**Please e-mail materials**_

Please indicate your affiliation by checking the following boxes (check all that apply):

**X** Individual (no affiliation)   ❑ Citizen's Group   ❑ Regulatory Agency
❑ Non-profit Organization   ❑ Elected Representative   ❑ Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? **X** Unit 1  ❑ Unit 2  ❑ Unit 3  ❑ Unit 4  ❑ Unit 5  ❑ No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live:  ❑ Colorado (west slope)  ❑ Colorado (front range or plains) ❑ Other State - Which?_____  ❑ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years____**2**____ Months_____

4. Why do you live here? 2nd Occupation  1st Family  3rd Proximity to public lands  3rd Recreational Opportunities ❑ Other_____

> *The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?

This comment is regarding how energy and mineral development, including pipelines and other infrastructure, will be managed to protect the environment and wildlife.

When weighing the impacts of energy and mineral development on the environment and wildlife the impacts should be viewed as temporary.  Development usually includes construction of native surface roads & pads and occasionally small structures.  When Best Management Practices are followed, the impact to the environment and wildlife is minimal and after reclamation is complete the surface disturbances can result in habitat improvement (ex. clearing of dense oak brush).  A clear definition of the term temporary for energy and mineral development should be defined as; use for a length of time up to 10 years.  Energy and mineral development is temporary in nature because the resources in a local area will not last forever. With a defined temporary designation the unnecessary burden on BLM staff and the energy and mineral leasees from an extended NEPA process may be avoided with the use of well defined Best Management Practices and Categorical Exclusion designations.

1 A-PI ED

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

There would be no long term changes to the landscape after disturbances have been reclaimed.

2 A-PI ED

3 A-PI ED

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

By defining development uses as temporary and establishing a set of Best Management Practices to be incorporated into development projects you would be able to reduce the work load and permitting time required for both the BLM and Leasees of the resource.

Also, by looking at the long term disturbance when performing a Biologic Assessment or Opinion the assessor should be allowed to determine the outcome of the assessment based on what the effects will be in future after the sites are reclaimed. Yes, there will be initial disturbance but with adequate Best Management Practices in place, the long term impacts after reclamation are typically negligible.

4 A-PI ED

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

The number of users should not be affected by energy and mineral development.

5 A-PI ED

**Please provide any additional comments that you have regarding this project.**

 **Uncompahgre Resource Management Plan** 

We encourage you to provide your comments by filling out and submitting this comment form by February 26, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name___**Art**_____   Last Name___**Etter**_____   Date__**02-25-10**___

Mailing Address_____**POB 44**_____

City_____**Paonia**_____   State_____**CO**   Zip_____**81428**_____

E-mail Address_____**aetter@bowieresources.com**_____

Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.) **Yes:** *Please e-mail materials*

Please indicate your affiliation by checking the following boxes (check all that apply):

**X** Individual (no affiliation)      ❏Citizen's Group           ❏Regulatory Agency
❏Non-profit Organization            ❏Elected Representative     ❏Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? **X Unit 1** ❏Unit 2 ❏Unit 3 ❏Unit 4 ❏Unit 5 ❏No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ❏Colorado (west slope) ❏Colorado (front range or plains) ❏Other State - Which?_____ ❏ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years_____**2**_____Months_____

4. Why do you live here? 2nd Occupation  1st Family  3rd Proximity to public lands  3rd Recreational Opportunities ❏Other_____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

**What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?**

This comment pertains to how recreation should be managed.

Access and use of public lands should remain free. Fees for use and access to public lands should not be increased without public input. Enjoyment of our local public lands should remain available to people with the most limited of financial means, especially during our current tough economic times. Every effort should be made to keep areas managed as Extensive Recreation Management Areas allowing users the freedom to use the land with good judgment and common sense.

6 B-GE

7 A-PI REC

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

**Please provide any additional comments that you have regarding this project.**

 **Uncompahgre Resource Management Plan** 

We encourage you to provide your comments by filling out and submitting this comment form by February 26, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name__**Art**_____    Last Name__**Etter**_____    Date__**02-25-10**__

Mailing Address____**POB 44**_____

City_____**Paonia**_____    State_____**CO**__    Zip_____**81428**_____

E-mail Address_____**aetter@bowieresources.com**_____

Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.) **Yes:** *Please e-mail materials*

Please indicate your affiliation by checking the following boxes (check all that apply):

**X** Individual (no affiliation)          ❑Citizen's Group          ❑Regulatory Agency
❑Non-profit Organization          ❑Elected Representative          ❑Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? **X** Unit 1  ❑Unit 2  ❑Unit 3  ❑Unit 4  ❑Unit 5  ❑No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ❑Colorado (west slope) ❑Colorado (front range or plains) ❑Other State - Which?_____  ❑ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years_____**2**_____Months_____

4. Why do you live here? 2nd Occupation  1st Family  3rd Proximity to public lands  3rd Recreational Opportunities  ❑Other_____

> *The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?

This comment pertains to the management of sensitive viewsheds and corridors.

Sensitive viewsheds and corridors should not affect energy or mineral development. Energy and mineral development is temporary in nature. When the resource is gone so will the development. Visual considerations imposed on energy and mineral development should not create a significant economic impact or restrict the development of the resource.

Existing mechanized or motorized use, dispersed camping and other recreational uses should not be restricted due to sensitive viewsheds and corridors.

8 A-PI VRM

9 A-PI VRM

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

**Please provide any additional comments that you have regarding this project.**

 **Uncompahgre Resource Management Plan** 

We encourage you to provide your comments by filling out and submitting this comment form by February 26, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name __Art__                          Last Name __Etter__                          Date __02-25-10__

Mailing Address _____ __POB 44__

City _____ __Paonia__                          State _____ __CO__   Zip _____ __81428__

E-mail Address _____ __aetter@bowieresources.com__

Would you like to be added to the RMP mailing list to receive future project-related information?  (Your name will not be shared.)  **Yes:** *Please e-mail materials*

Please indicate your affiliation by checking the following boxes (check all that apply):

**X** Individual (no affiliation)          ❑ Citizen's Group          ❑ Regulatory Agency
❑ Non-profit Organization          ❑ Elected Representative          ❑ Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? **X** Unit 1  ❑ Unit 2  ❑ Unit 3  ❑ Unit 4  ❑ Unit 5  ❑ No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ❑ Colorado (west slope) ❑ Colorado (front range or plains) ❑ Other State - Which? _____  ❑ Other Country - Which? _____

3. If you live in the planning area, how long have you lived here? Years _____ __2__ _____ Months _____

4. Why do you live here? 2nd Occupation  1st Family  3rd Proximity to public lands  3rd Recreational Opportunities  ❑ Other _____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?

This comment is referring to the economic effect of energy and mineral development on local communities.

Energy and mineral development has an economic benefit to local communities.  Development typically provides well paying jobs and pays local and federal taxes, royalties, and fees.  Dollars spent locally stay within the community helping to build up local businesses not directly associated with the development companies.  Employees of the development companies and the associated contractors and consultants enjoy local restaurants, buy groceries, shop in local stores, buy or rent homes, which all helps to keep money within the community.

10 A-PI SE

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

**Please provide any additional comments that you have regarding this project.**

 **Uncompahgre Resource Management Plan** 

We encourage you to provide your comments by filling out and submitting this comment form by February 26, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name___**Art**_____ Last Name___**Etter**_____ Date___**02-25-10**___

Mailing Address_____**POB 44**_____

City_____**Paonia**_____ State_____**CO**___ Zip_____**81428**_____

E-mail Address_____**aetter@bowieresources.com**_____

**Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.) Yes: _Please e-mail materials_**

**Please indicate your affiliation by checking the following boxes (check all that apply):**

**X Individual (no affiliation)**　　❑Citizen's Group　　❑Regulatory Agency
❑Non-profit Organization　　❑Elected Representative　　❑Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

**1. Do you live within the planning area? X Unit 1　❑Unit 2　❑Unit 3　❑Unit 4　❑Unit 5　❑No**
*(Refer to map for unit numbers)*

**2. If you do not live in the planning area, where do you live: ❑Colorado (west slope) ❑Colorado (front range or plains) ❑Other State - Which?_____ ❑ Other Country - Which?_____**

**3. If you live in the planning area, how long have you lived here? Years_____2_____Months_____**

**4. Why do you live here? 2nd Occupation 1st Family 3rd Proximity to public lands 3rd Recreational Opportunities ❑Other_____**

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

**What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?**

This comment is regarding the implications of Wild and Scenic River designations.

I have concern with Wild and Scenic River designations impacting existing and future water uses in the upstream watersheds. Wild and Scenic Rivers require minimum water quality and quantity standards. It should be clearly defined that a Wild and Scenic River designation can not impact upstream water users. If minimums water flows are established this could force municipalities, farmers, and mineral and energy development users to restrict their uses, which would result in drastic economic hardships especially within the communities of the North Fork of Gunnison River.

11 A-P1 WSR

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

**Please provide any additional comments that you have regarding this project.**

 **Uncompahgre Resource Management Plan** 

We encourage you to provide your comments by filling out and submitting this comment form by February 26, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name___Art_____     Last Name___Etter_____     Date__02-25-10____

Mailing Address_____POB 44_____

City_____Paonia_____     State_____CO___ Zip_____81428_____

E-mail Address_____aetter@bowieresources.com_____

Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.) Yes: *Please e-mail materials*

Please indicate your affiliation by checking the following boxes (check all that apply):

X Individual (no affiliation)          ❏ Citizen's Group                    ❏ Regulatory Agency
❏ Non-profit Organization             ❏ Elected Representative             ❏ Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? X Unit 1  ❏ Unit 2  ❏ Unit 3  ❏ Unit 4  ❏ Unit 5  ❏ No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ❏ Colorado (west slope) ❏ Colorado (front range or plains) ❏ Other State - Which?_____  ❏ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years_____2_____Months_____

4. Why do you live here? 2nd Occupation  1st Family  3rd Proximity to public lands  3rd Recreational Opportunities ❏ Other_____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?

This comment is regarding economic implications associated with both the permitting process for energy or mineral development and the selection criteria for Wilderness and Wilderness Study Areas.

**12 A-PI SE**

When reviewing the impacts of energy and minerals development on the environment the economic benefit to the local and federal economies should be weighted in the decision to allow or restrict the development. There is a great economic benefit to local communities and government from taxes, royalties, and employment whether it is from employees of the development company or the numerous associated suppliers, contractors, or consultants.

The economic value of lands selected as Wilderness Study Areas or Wilderness should also be considered and weighted as part of the selection criteria for Wilderness designation. The economic value should consider, but not be limited to the minerals, energy (coal, gas, oil, solar, biomass, wind, etc.), merchantable timber, guided tours (jeep, hiking, fishing, hunting, etc), and livestock grazing. Both the current and future economic values should be considered.

**13 A-PI SE**

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

Physical changes to the landscapes do not apply.

14 A-GE

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

By defining development uses as temporary and establishing a set of Best Management Practices to be incorporated into development projects you would be able to reduce the work load and permitting time required for both the BLM and Leasees of the resource.

15 A-PI ED

16 A-PI REC

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

The number of users should not be affected by energy and mineral development.  The number of users should never be restricted by a Wilderness designation.  If mechanized or motorized equipment has been historically used and significant off-road damage to the resource has not occurred existing forms of access should not be restricted.

17 A-PI TM

**Please provide any additional comments that you have regarding this project.**



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because, at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas leasing twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Scott Fairbank
Print Name

9852 3100 Rd
Address

Hotchkiss, Co.    81419
City              State    Zip Code

BLM_0081159

IN

Received

FEB 2 6 2010



Uncompahgre Field Office



# Uncompahgre
# Resource Management Plan

We ... you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name **DEAN**   Last Name **NASLUND**   Date **2-25-10**

Mailing Address **PO Box 154**

City **Nucla**   State **Co**   Zip **81424**

E-mail Address: _____

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?   Yes: ☐ e-mail materials only ☐ e-mail and hard-copy materials   ☒ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)   ☐ Non-profit Organization   ☐ Citizen's Group

☐ Federal, State, or Local Government   ☐ Elected Representative   ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:*

Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☐ Unit 5 ☐ No
*(Refer to map for unit numbers)*

If you do not live in the planning area, do you live in: ☐ Colorado (west slope) ☐ Colorado (front range or plains)
☐ Another State (which): _____   ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here? Months: **8**   Years: **46**

Why do you live here? ☒ Occupation ☒ Family ☒ Proximity to public lands ☒ Recreational Opportunities
☐ Other _____

---

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled **Uncompahgre RMP Planning Units**. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

---

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

We do not need WSR Act, in Colorado. The Sam Miguel River does not need the WSR Act, designations. All of the Regulations, Rules, Management. are in place to date to manage our public lands for multiple use. And the well being and health of our public lands. Theirs no need for over regulations. of our public lands.

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be ... by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or ... for public inspection in their entirety.

1 A-PI WSR

OVER --- ►

**2 A-GE**

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

Same as it looks Today, and has look for many years. If you make modicications to a landscope physically it is no longer what it was.

**3 A-PI SE** the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

Administration should work more with the local Comunities : Towns , Counties , State. To help suschain local needs and multiple use.

**4 A-GE** the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

Same as it is today and has been for generations These are public lands shouldn't the people be able to enjoy them.

Please provide any additional comments that you have regarding this project.

We do not need any WSR designation in Colorado. public lands should remain Multiple use. Management is in place Today , it works well now , it will work well into the future.

**5 A-PI WSR**                    *(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

Received

FEB 2 6 2010



**Uncompahgre Resource Management Plan**



Uncompahgre Field Office

We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name LARS Ø          Last Name NASland          Date 2-25-10

Mailing Address P.O. Box 41

City Nucla Co          State Colorado          Zip 81424

E-mail Address: _____

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?          Yes: ☐ e-mail materials only  ☐ e-mail and hard-copy materials          ☒ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)          ☐ Non-profit Organization          ☐ Citizen's Group

☐ Federal, State, or Local Government          ☐ Elected Representative          ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:
Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☐ Unit 5 ☐ No (Nucla Colorado)
(Refer to map for unit numbers)

If you do not live in the planning area, do you live in: ☒ Colorado (west slope)  ☐ Colorado (front range or plains)
☐ Another State (which): _____  ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here? Months: _____ Years: _____

Why do you live here? ☒ Occupation ☒ Family ☒ Proximity to public lands ☒ Recreational Opportunities
☐ Other *the Right to Live Free & uncontroled through out my Grandkids Life + Yrs*

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

We do not need the WSR Act in the United States. The San miguel River does not need the WSR Act. All of the Regulations, Rules, Management are in place to date to ~~management~~ our Public Land for multiple use

[ 1 A-PI WSR ]

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

OVER ▶

BLM_0081162

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

I would not Change any of the Landscape cause its Already wild & Scenic in mother nATures WAY

**2 A-PI WSR**

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

. administration should work more with the Family's & People that live in the areas

**3 A-PI SE**

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

SAme as it is today & hAs Being for Generatsions

**4 A-GE**

Please provide any additional comments that you have regarding this project.

Public lAnds should Be public & should Remain multi use for our & People a heads Future.

**5 A-GE**

---

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

Received

FEB 2 6 2010

Uncompahgre Field Office



IN

**Uncompahgre**
**Resource Management Plan**



NATIONAL
SYSTEM OF
PUBLIC LANDS

We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name _Monte_    Last Name _Naslund_    Date _2-24-10_

Mailing Address _Pox 154_

City _Nucla_    State _CO_    Zip _81424_

E-mail Address: _____

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?    Yes: ☐ e-mail materials only  ☐ e-mail and hard-copy materials    ☒ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)    ☐ Non-profit Organization    ☐ Citizen's Group

☐ Federal, State, or Local Government    ☐ Elected Representative    ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:*

Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☐ Unit 5 ☐ No
*(Refer to map for unit numbers)*

If you do not live in the planning area, do you live in: ☐ Colorado (west slope)  ☐ Colorado (front range or plains)

☐ Another State (which): _____    ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here?  Months: _10_  Years: _74_

Why do you live here? ☒ Occupation ☒ Family ☒ Proximity to public lands  ☒ Recreational Opportunities
☐ Other _____

---

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

---

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

We do not need W SR act, in toto. The San Miguel River does not need the W S R act designations. all of the Regulations Rules managments are in Place to Date to Manage our Public lands for Multiple use and the well being and health of our Public lands,

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

OVER ▶

1 A-PI WSR

**2 A-GE** the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

Same as it look . and have look for Years

**3 A-PI SE** Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

administration with the local communities counties State for local needs and multiple Use

**4 A-GE** the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

Same as it is Today and has been for generations these are public lands people be able to use and enjoy them

Please provide any additional comments that you have regarding this project.

We do not Need any WSR desigation in colo Public land Should Remain (multiple) Use Management in Place Today it works well Now and will work well into The Future

**5 A-PI WSR**

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

BLM_0081165

**Received**

FEB 2 6 2010



Uncompahgre Field Office

IN

**Uncompahgre**
**Resource Management Plan**



We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.**
Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be
submitted via e-mail to uformp@blm.gov.

First Name Venna          Last Name Naslund          Date 2-26-10

Mailing Address Box 42

City Nucla          State Co          Zip 81424

E-mail Address: _____

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be
shared)?          Yes: ☐ e-mail materials only ☐ e-mail and hard-copy materials          ☒ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)     ☐ Non-profit Organization     ☐ Citizen's Group

☐ Federal, State, or Local Government     ☐ Elected Representative     ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:* Nucla
Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☐ Unit 5 ☐ No
*(Refer to map for unit numbers)*

If you do not live in the planning area, do you live in: ☐ Colorado (west slope) ☐ Colorado (front range or plains)
☐ Another State (which): _____ ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here? Months: _____ Years: _____

Why do you live here? ☒ Occupation ☒ Family ☒ Proximity to public lands ☒ Recreational Opportunities
☐ Other _____

---

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors,*
*friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are*
*any other comments. When answering the following questions, reference as appropriate the planning units on the map titled*
**Uncompahgre RMP Planning Units.** *You may attach additional sheets of paper for long comments. Thank you for taking the time*
*to provide your input.*

---

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

We don't need WSR Act in Colo. There is no need
to add more rules, regulations etc, when it it greeat
the way things are now. Why change things when
there is no need to.

1 A-PI WSR

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to
4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street
address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be
honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or
businesses, will be available for public inspection in their entirety.

MER ——— ▶

BLM_0081166

2 A-GE

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like/modifications, etc.)?

None, I don't see any reason to change the landscape when it is perfect the way it is.

3 A-PI SE

[Keeping in mind] the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

The administration should try to work with the public who live in the area. Some of the public have been here for more then hundred years.

4 A-GE

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

None, it should stay the same as it is today so the public can use the public lands. The public should be able to enjoy the land

Please provide any additional comments that you have regarding this project.

The more rules, changes, etc that there are the more it ruins the land in my view. The public land should stay the way it is. It should remain multiple use.

5 A-GE

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

 **Uncompahgre Resource Management Plan** 

We encourage you to provide your comments by filling out and submitting this comment form by February 26, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name__**Craig**_____ Last Name__**Grother**_____ Date__**2/25/10**_____

Mailing Address_____**PO Box 156**_____

City__**Norwood**_____ State_**CO**_____ Zip___**81423**_____

E-mail Address_____**craiggrother@yahoo.com**_____

**Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.) Yes: x Email materials ❑Hard-copy materials ❑No**
Please note that planning materials are also available at our website: www.UFORMP.com

**Please indicate your affiliation by checking the following boxes (check all that apply):**

**X** Individual (no affiliation)   ❑Citizen's Group   ❑Regulatory Agency
❑Non-profit Organization   ❑Elected Representative   ❑Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? ❑Unit 1 ❑Unit 2 ❑Unit 3 x Unit 4 ❑Unit 5 ❑No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ❑Colorado (west slope) ❑Colorado (front range or plains) ❑Other State - Which?_____ ❑ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years_____**20**____Months_____**6**_____

4. Why do you live here? ❑Occupation ❑Family ❑Proximity to public lands ❑Recreational Opportunities x Other___**All of the above**_____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

**What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?**

Please refer to the attached letter for my responses to your request for comments.

BLM_0081168

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

**Please provide any additional comments that you have regarding this project.**

Craig Grother                                                          March 7, 2010

Attachment
Public Scoping Comments

Uncompahgre Field Office
Resource Management Plan

Thank you for the opportunity to comment on the Resource Management Plan for the
Uncompahgre Field Office.  My primary interests on lands managed by the UFO are in
the areas of wildlife habitat management, wilderness & WSA's, backcountry recreation,
and travel management.  I am also interested in the BLM's designation and management
of Areas of Critical Environmental Concern.

As you may know, I am a Wildlife Biologist that has recently retired from the US Forest
Service after 33 years of service.  Twenty of those years were spent on the Norwood and
Ouray Ranger Districts of the GMUG National Forest.  I have worked with many of your
staff and the Colorado Division of Wildlife on various interagency plans and projects
during those years, and strived to achieve boundryless management of our resources
whenever possible.

**1 A-PI TM**

While we have done excellent work to improve habitat conditions and productivity of our
public lands, I feel there is a great need to reduce the impact of indiscriminate OHV use
on BLM lands.  The GMUG National Forest spent 6 years conducting travel management
planning for the Uncompahgre NF.  Since the 2002 travel plan decision was signed I have
spent much of my time implementing that decision for the benefit of our big game
species.  I would really like to see the UFO implement similar actions on your public
lands that will further enhance wildlife habitat and provide non-motorized opportunities
for the public.

There are legions of scientific studies that demonstrate the adverse effects of human
activities on big game.  As one example, exhaustive studies have been conducted on the
US Forest Service's Sharkey Experimental Forest and Range in Oregon that clearly
demonstrate the impact of various human activities on elk and mule deer.  Spanning 40
square miles of prime elk habitat in the Blue Mountains of Oregon, Starkey has enabled
ecologists to study wildlife and range on a landscape scale for the past 20 years.  During
the Starkey project, Michael Wisdom (2002-2004) researched the effects of ATV's,
mountain bikes, horses, and hikers on collared elk.  The results of the study were telling.
Elk ran faster and farther when encountering humans on ATV's or mountain bikes than
on horses or afoot.  And the elk stayed gone.  The study also showed that elk kept on the
move even when ATV's or mountain bikes had left.

The results of the other studies are very similar.  The experiences I and other public land
and wildlife managers have had in our careers further support the findings of these
studies.  It is clear that motorized vehicles affect big game populations, security,

**2 A-PI REC**

**2 A-PI REC continued**

1

distribution, and reduce habitat effectiveness.  The BLM needs to utilize this science and the experience of professionals in making travel management decisions.

The following is a brief narrative of the issues, concerns, and comments I have on the RMP by the categories listed in the scoping documents and maps provided:

### 3.2 Travel Management

**3 A-PI TM**

In general, I recognize the need for BLM to provide a spectrum of motorized and non-motorized recreational opportunities on public lands but the BLM needs to demonstrate that those uses are compatible with each other and the resource values of the lands upon which those uses occur.  I sincerely hope the BLM recognizes the values of unroaded, primitive backcountry areas with no motorized use and that you will provide areas within the UFO that are managed for wildlife habitat effectiveness and security, backcountry hunting and recreation opportunities, and solitude for people.  These areas should include, but not be limited to the five WSA's within the UFO.

**4 A-PI TM**

Apparently your regulations require you to "designate all public lands as open, closed, or limited to OHV use".  In addition, Colorado BLM policy is to "restrict all OHV use within limited areas to designated routes rather than designate areas as limited to existing routes".

**5 A-PI TM**

I strongly support the continued designation of closed to all lands currently included in the five WSA's and portions of the San Miguel River and Adobe Badlands ACEC within the planning area.  Additional closures should be designated for proposed ACEC,s, T&E plant or animal habitats, or environmentally sensitive areas included in the RMP.

**6 A-PI TM**

I would like to see the UFO conduct an inventory of BLM lands that will identify areas of roadless or low road-density (< 1 mile per section) within the UFO and manage them as primitive backcountry areas with no motorized uses.  The lands identified would be designated as closed to OHV's.  The BLM should also carefully evaluate the use of mountain bikes within these areas.  Mountain biking is not a benign use free of any impacts.  Just because they do not have a motor that does not mean they are entirely compatible with the land, wildlife, or people hiking or riding horses in the area.

**7 A-PI REC**

One area that should be closed to motorized uses includes the upper Little Dominguez, Rose Creek, and Open Draw drainages, and the Camp Ridge and Sowbelly Ridge areas adjacent to the Dominguez Canyon WSA.  Closing the entire Gunnison Trail and McCarty Trail systems to all motorized vehicles would provide an excellent horse and foot trail system that would compliment the Big Dominguez/Little Dominguez Canyon trails.  Closing the area to all motorized vehicles and mountain bikes would provide solitude for people and wildlife, security for big game animals, and a large enough area for people to enjoy peace, quiet, and backcountry hunting opportunities.

**8 A-PI TM**

Another area that should be closed to OHV's for non-motorized uses is the Monitor Creek, Potter Creek, and Criswell Creek Canyons adjacent to the Camel Back WSA.

2

Closing the existing trails and old roads within this area to all motorized vehicles would provide an excellent backcountry area for non-motorized recreation and hunting. It would also compliment roadless values of the Roubideau Canyon Special Management Area on the adjacent Uncompahgre National Forest.

9 A-PI TM (include first part of paragraph on preceding page)

Another area I would strongly recommend for closure to OHV's are the BLM lands north of the Tabeguache Creek WSA/Special Management Area which include the Shavano, Campbell, and Burro Creek drainages. This area has very high wildlife values as well as excellent opportunities for non-motorized recreation and hunting.

10 A-PI TM

The UFO has experienced several large wildfires in the last 20 years in the west end of Montrose and San Miguel Counties. You have done an excellent job of seeding and revegetating these fires. There were also several roller chops done in burned areas, old P/J chainings, and other sites to improve vegetation condition, induce mosaics for wildlife habitat, increase forage, and to reduce the risk of large-scale wildfires. Many of these projects have created or reestablished roads and OHV trails into areas that were previously inaccessible by motorized vehicles. During the time I have lived and worked here I have watched a steady progression of user-developed OHV trails become established in these areas that have opened up large areas that were previously inaccessible with four-wheel-drives and ATV's.

The UFO needs to implement an active program of road closures to eliminate these routes and restore the benefits of the vegetation treatments as well as the hunting experience in these areas. The primary areas I know of are associated with the Burn Canyon fire, including Hamilton Creek, Hamilton Mesa, Callan Draw, Burn Canyon, and McKee Draw. Also the Campbell Creek fire opened up portions of Campbell Creek and Shavano Creek to motorized vehicles. The Bramiers Draw and Wickson Draw areas are additional examples. Another area that has been greatly altered is Mailbox Park.

11 A-PI TM

The RMP should include management policy to immediately close fire lines and roads used to suppress wildfires, implement vegetation treatments such as roller chopping and prescribed burns, or for mineral exploration activities. When closing these roads and trails the BLM should leave a small parking area for pickup trucks and horse trailers to facilitate horse and foot access to the backcountry.

12 A-PI TM

The BLM's travel management planning process should achieve a management designation of restricting all OHV use to designated routes within the remainder of the UFO. There is no reason to have any areas within the UFO designated as open to indiscriminate OHV use.

13 A-PI TM

In addition I would like to see the BLM institute seasonal restrictions on lands classified as big game winter range. The seasonal closures need to be coordinated with the areas currently restricted on adjacent National Forest lands as depicted on the 2008 visitor map for the Uncompahgre National Forest. The seasonal closures apply to all motorized vehicles including snowmobiles. Big game winter ranges on the National Forest are closed from December 1 through April 15 each year, regardless of snow conditions. This

14 A-PI FW (entire paragraph)

3

BLM_0081172

seasonal restriction, in combination with vegetation treatments and proper livestock grazing use, is primarily intended to encourage elk and deer to remain on public lands.

Specific areas within the UFO that should be seasonally restricted to protect big game winter ranges include the area associated with the Burn Canyon wildfire – Hamilton Creek, Callan Draw, Burn Canyon, McKee Draw and the Flatiron. Another significant big game winter range area is Dry Park and Little Bucktail Creek outside of Nucla. On the other side of the Plateau, seasonal restrictions need to be implemented on the Roat Cap, Monitor Mesa, and Dry Mesa portions of the UFO. These areas all provide big game winter range habitat that needs to be managed in coordination with the adjacent National Forest lands to reduce disturbance and stress to wintering big game animals and to enable them to utilize preferred winter range areas located on public lands.

**15 A-PI TM**

Open public meetings and a systematic NEPA process should be initiated to determine which existing routes are clearly needed for resource management, private land access, utility corridors, irrigation ditches, etc. Recreational OHV trails should not be the focus of the subsequent travel plan nor dominate the use of the UFO. Unroaded areas, seasonal restrictions for management and protection of wildlife and to provide areas of solitude, backcountry hunting, and non-motorized recreational opportunities must also be included in the final decision.

The Preliminary Planning Criteria include that the BLM will utilize an adaptive management strategy to adjust to changing conditions in the future. Hopefully those adjustments in travel management will be evaluated through an open public process that considers all interests before anything is approved. In addition, one criteria that I would like to see the BLM utilize for travel management is that if monitoring or public input indicates repeated or chronic violations of authorized motorized use occur, those areas or trails will be closed and/or further restricted by the BLM. There is no reason to reward bad behavior or abuse of our public lands.

**16 A-PI TM**

**17 A-PI WSA**

**4.1 Wilderness and WSA's**

All existing wilderness and WSA's within the UFO provide extraordinary places for various wildlife species to thrive in the absence of intense human activities. They also provide us with wild places to explore on foot or on horseback. The BLM needs to retain all of the existing WSA's and to enhance them wherever possible by retaining adjacent unroaded lands in a roadless condition. There should be an effort to reduce and eliminate OHV use within or adjacent to the WSA's to preserve the wilderness and backcountry character and values. In addition, I would like to see the BLM prevent the establishment of mountain bike trails within the WSA's and adjacent backcountry areas. I do not believe that mountain bikes are compatible with this primitive setting and use.

**18 A-PI TM**

Even though FLPMA grandfather's in existing livestock grazing, mining, and mineral leasing in these areas, I would like to see the BLM make it a priority to retire these uses whenever the opportunity arises. If permits or leases expire, it would seem right not to

**19 A-PI WSA (entire paragraph)**

4

reauthorize these uses again. In my opinion, mining and mineral leasing are particularly incompatible with wilderness values.

### 5.1 Managing Special Status Plant & Animal Species

**20 A-PI SSS**

The BLM should have an active habitat management program that is focused on landscapes that provide healthy, diverse, native vegetation and protection of key/critical plant/wildlife habitats from the impacts of vehicles, OHV's, mineral exploration and development, recreation activities, or livestock grazing.

**21 A-PI SSW**

The BLM needs to utilize the best available science in developing management standards and guidelines for TES species. In the case of the Gunnison sage grouse, I would like to see the UFO adopt the management guidelines in the Statewide GSG conservation plan in to the RMP so that subsequent grazing, minerals, and OHV decisions will further incorporate and implement these comprehensive management practices. The RMP should include policy to resolve cases of conflict with TES species in favor of special status species. Uncertain impacts should conserve TES species and their habitats rather than cause irretrievable losses.

**22 A-PI VEG**

The UFO has done an excellent job of actively managing vegetation diversity and production through wildfire rehab, prescribed burning, and mechanical treatments such as roller chopping, mowing, and harrowing. The RMP should include policy to continue these vegetation treatments on big game winter ranges to maintain carrying capacity on public lands. As I mentioned before, this program needs to include closing the project area roads and firelines to OHV's to maintain habitat effectiveness of these treatments. The UFO also needs to institute seasonal restrictions on all motorized vehicles on big game winter ranges in coordination with the US Forest Service to fully achieve the benefits of these vegetation treatments.

**23 A-PI FM**

I commend the UFO on their use of fire use on BLM lands. This policy has greatly benefited big game in the UFO. The RMP should include policy to continue fire use where it meets all resource objectives. The RMP should also specify that all wildfires and prescribed burns that occur in areas that lack a sufficient natural seed source should be reseeded with a mix of native grass, forb, and shrub seed. The reseeded areas must then be rested from livestock grazing for a minimum of two years following the fire to ensure successful seedling establishment. Areas with known infestations of aggressive invasive species should not be treated with fire or mechanically treated until pretreatments have been successfully done to prevent further infestations. Any projects that create or aggravate infestations of invasive species should be aggressively treated to control those infestations.

The UFO also supports populations of both Rocky Mountain and Desert bighorn sheep. Rocky Mountain bighorn are present on and adjacent to BLM lands near Sawpit and Deep Creek. Desert bighorn occupy portions of the Uncompahgre Plateau from Big Dominguez Creek to the Roubideau. Science and research demonstrate that wild sheep can acquire various diseases through contact with domestic sheep. The most damaging is

5



**24 A-PI FW (entire paragraph)**

pasturella which can lead to massive die offs of bighorn. There are presently active domestic sheep allotments that overlap with both Rocky Mountain and Desert bighorn herds within the UFO. The RMP should include policy and direction to complete risk assessments for these sheep allotments that determine the potential of contact between wild and domestic sheep. Any risk of contact should be eliminated by removing the domestic sheep from the allotments or implementing management actions that will prevent or minimize contact between wild and domestic sheep. Primary ranges for wild sheep should be identified and managed for these native species. Any active or inactive domestic sheep allotments that overlap these wild sheep habitats should be closed to sheep grazing or trailing. Placing a time limit of five years to complete this action should be included in the RMP to resolve any conflicts before we loose the wild sheep.

**4.3 Areas of Critical Environmental Concern**

25 A-PI ACEC

All existing ACECs should be kept. Additional ACEC's are recommended by the Colorado Natural Heritage Program within the UFO to protect rare and imperiled plants. I support the designation of all ACEC;s recommended by the CNHP. The Fairview area should be enlarged to whatever size is required to protect the buckwheat. Other rare plants such as the Paradox Valley lupine deserve their own ACEC. In addition, I would like to see the BLM designate known Gunnison sage grouse Lek sites and concentrated nesting/brood rearing habitat as an ACEC. Specific sites are displayed in the Gunnison Sage Grouse plan for the San Miguel Basin.

26 A-PI ACEC        27 A-PI ACEC

To protect the significant values present within the ACEC's I would like to see the BLM withdraw all mineral leases from these areas. The development of gravel mines in the San Miguel River occurred in the past and should now be prohibited in order to protect the unique riparian vegetation communities, wildlife, and recreation/scenic values. Similarly, oil and gas leases should be withdrawn from all of the ACEC's to prevent irreparable damage to existing resource values from these activities.

28 A-PI ACEC

6

**Drew Vankat**

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **Sent:** | Thursday, February 25, 2010 11:13 AM |
| **To:** | uformp@blm.gov |
| **Subject:** | Fw: Scoping comments for RMP |

Scoping comment below.   --Bruce

----- Forwarded by Bruce Krickbaum/MOFO/CO/BLM/DOI on 02/25/2010 11:11 AM -----

```
        Julie M
        Jackson/MOFO/CO/B
        LM/DOI                                          To
                            Bruce Krickbaum/MOFO/CO/BLM/DOI@BLM
        02/25/2010 10:28                                cc
        AM                  jamescooper@bresnan.net
                                                     Subject
                            Fw: Scoping comments for RMP
```

Here is another scoping comment that was received for the RMP revision plan.

Julie Jackson
Outdoor Recreation Planner
2465 S. Townsend Ave
Montrose, CO  81401
(970) 240-5310
Julie_Jackson@blm.gov

"To the world you might be one person, but to one person, you just might be the world."
"The happiest people don't have the best of everything. They just make the best of everything."
----- Forwarded by Julie M Jackson/MOFO/CO/BLM/DOI on 02/25/2010 10:24 AM -----

```
        "cooper"
        <jamescooper@bres
        nan.net>                                        To
                            <julie_jackson@blm.gov>
        02/25/2010 09:48                                cc
        AM
                                                     Subject
                            Scoping comments for RMP
```

1

Motorcycle Trail Riding Association
P.O. Box 3204
Grand Junction Colorado 81502


February 25 2010
Bureau of Land Management
Umcompaghre Field Office
2465  S. Townsend Ave.
Montrose CO 81401

Planning Team:

This letter constitutes the Scoping Comment of the Motorcycle Trail Riding Assoc. for the
Field Office RMP.  The goal of citizen scoping comments is to work with the BLM to
establish the scope of the analysis to be used to formulate alternatives and ultimately a
Record of Decision.

MTRA is a club of 120 member families.  Most of our members live in Mesa, Delta, and
Montrose counties.  Our sport is recreational trail riding on off road motorcycles.

The geographic scope of the RMP in the recreation section must include many recreation
opportunities not located in the FO.  For example:  Those wishing a non motorized
experience have many opportunities within a short distance from the towns and villages
near the BLM lands.  Black Canyon of the Gunnison National Monument, The Gunnison Gorge
NCA,  Dominguez Escalante NCA and Wilderness, McInnis Canyons Wilderness, and the
numerous Wilderness areas in the neighboring National Forests.  All existing, previously
designated recreation zones for each type of experience must be taken into account during
the analysis.
In the same way, the economic and social benefits must be quantified and weighed by the
I.D. team and the deciding officer in order to reach a quality Record of Decision.  We
feel that the team must look at the recreation portion of the plan with a scope of all of
western Colorado.
The Umcompaghre FO surely is a regional recreation resource.

A well executed EIS must rely on a complete and accurate inventory of recreation
opportunities and routes. A through description of the activities and the benefits to the
participants and the community is essential for a meaningful analysis .  Real visitor
numbers of participants in the activities and the seasons of use are essential data
needed to make statistically relevant decisions and determine the scale of effects by
alternative.

An accurate representation of the current management situation is essential.  The scale
of effects can only be analyzed if an accurate no action alternative is presented.

In addition, an accurate analysis of climate, precipitation and land health must be
considered for a meaningful analysis.

We suggest that due to the seasonal availability of land within the FO boundaries and the
broad spectrum of recreational activities combined with the low visitor counts: the
segregation of visitors and the zoning of activities is not an appropriate scheme for
recreation management in the FO.  Rather the FO can rely on the good sense of the public
to decide which locations and seasons are best suited to their chosen activity.

  On another note, the BLM must confine the analysis to issues and standards of conduct
that BLM has clear authority to regulate.  As an example, BLM clearly has authority to
define locations suitable for the collection of gravel.  BLM does not have authority to
determine the season of use for hunting.

Of particular interest to us is the south western portion of the FO.
Beginning at Blue Mesa and continuing south west to the intersection of highways 141 and
145.and east to the Utah border. The area north of 141 is open to cross country travel.
It contains many miles of low grade roads that are very high value recreation resources
to our members.  Similarly, the area south of 141 has many miles of high value recreation
roads as well as beautiful slick rock formations.  We hope to continue to be able to
access these routes and slick rock  formations that are important for scenic value and

2

BLM_0081177

high skill riding opportunity.

We recommend that these areas be managed as dispersed recreation areas with an emphasis on motorized recreation.

The Dry Creek area just west of Montrose works well as an urban interface multiple use recreation area.  We hope it will retain  the present character.

The Tabeguache Trail is a valuable corridor.  By connecting Montrose to Grand Junction on a historic route the trail is a centerpiece of the backcountry in south west Colorado. It is used by all means of backcountry visitors.  It should remain open to all.

We are confident that when the NEPA process is done well, the results will be fair to the many public interests and compliant with all applicable laws and regulations.

We wish you the best of luck in your very difficult task.



Sincerely:
Jim Cooper
Secretary

BLM_0081178

Bruce Krickbaum

IN

Uncompahgre Field Office

FEB 2 6 2010

Received

1 A-PI WSR

I Went To School In Uravan Many Years Ago. Lived In Colorado On The Western Slope All My Life. What Is Wrong With The Uncompahgre As It Is Now. This Has Been A Great Place For Local People, Along With The Wild Life And Purity Of The Water Shed. Why Change This With A Study Being Done By Non-Locals.

If This Takes Effect. I Believe That A Video Camera To Show The Infractions On Abuse of Wild Life And Purity of Trash. Recreational By Several Groups And Limited To A Few. This Seems Like Discrimination. Leave This Area Alone Leave As Is For All.

3 A-PI WSR

If There Is Have A Area Protected Maybe You Should Find A More Populated Place For Protection. Not This Area Where There Has Been No Changes In 50 Thus Years. This Is Blaton Discrimination Against The Locals That Use This Area.

Calvin Ashby

BLM_0081179

The plat, in four sheets, representing the dependent resurvey and survey in Township 5 South, Range 13 West, of the Indian Meridian, accepted September 24, 2009, for Group 80 OK.

The plat, in three sheets, representing the dependent resurvey and survey, in Township 5 South, Range 15 West, of the Indian Meridian, accepted September 24, 2009, for Group 82 OK.

The plat, in two sheets, representing the dependent resurvey and survey, in Township 24 North, Range 2 East, of the Indian Meridian, accepted November 19, 2009, for Group 159 OK.

If a protest against a survey, as shown on any of the above plats is received prior to the date of official filing, the filing will be stayed pending consideration of the protest. A plat will not be officially filed until the day after all protests have been dismissed and become final or appeals from the dismissal affirmed.

A person or party who wishes to protest against any of these surveys must file a written protest with the New Mexico State Director, Bureau of Land Management, stating that they wish to protest.

A statement of reasons for a protest may be filed with the notice of protest to the State Director, or the statement of reasons must be filed with the State Director within thirty (30) days after the protest is filed.

**FOR FURTHER INFORMATION CONTACT:** These plats will be available for inspection in the New Mexico State Office, Bureau of Land Management, P.O. Box 27115, Santa Fe, New Mexico 87502–0115. Copies may be obtained from this office upon payment. Contact Marcella Montoya at 505–438–7537, or *Marcella_Montoya@nm.blm.gov,* for assistance.

**Stephen W. Beyerlein,**

*Acting, Chief, Branch of Cadastral, Survey/ GeoSciences.*

[FR Doc. 2010–3828 Filed 2–24–10; 8:45 am]

**BILLING CODE 4310–FB–P**

---

# DEPARTMENT OF THE INTERIOR

## Bureau of Land Management

[LLCOS05000 2009]

**Notice of Intent To Prepare a Resource Management Plan for the Uncompahgre Field Office and Associated Environmental Impact Statement**

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Notice of Intent.

**SUMMARY:** In compliance with the National Environmental Policy Act (NEPA) of 1969, as amended, and the Federal Land Policy and Management Act (FLPMA) of 1976, as amended, the Bureau of Land Management (BLM) Uncompahgre Field Office (UFO), Montrose, Colorado intends to prepare a Resource Management Plan (RMP) with an associated Environmental Impact Statement (EIS) for the UFO and by this notice is announcing the beginning of the scoping process to solicit public comments and identify issues. The RMP will replace the existing 1985 San Juan/ San Miguel RMP and the 1989 Uncompahgre Basin RMP.

**DATES:** This notice initiates the public scoping process for the RMP and the associated EIS. Comments on issues and planning criteria may be submitted in writing until March 29, 2010

Scoping meetings were held recently in the following locations: Hotchkiss, CO, January 12, 2010. Delta, CO, January 13, 2010. Montrose, CO, January 14, 2010. Ridgway, CO, January 19, 2010. Norwood, CO, January 20, 2010. Naturita, CO, January 21, 2010. Telluride, CO, February 3, 2010. The dates and locations of all scoping meetings were announced 15 days in advance through local media, a newsletter and the BLM Web site at: *http://www.blm.gov/co/st/en/fo/ufo/ uncompahgre_rmp.html.* Comments received during scoping meetings held in January and February, 2010 will be incorporated in the record and considered by the BLM. In order to be included in the Draft EIS, all comments must be received prior to the close of the 30-day scoping period. The BLM will provide additional opportunities for public participation upon publication of the Draft EIS.

**ADDRESSES:** You may submit comments on issues and planning criteria by any of the following methods:

• *Web site: http://www.blm.gov/co/st/ en/fo/ufo/uncompahgre_rmp.html.*

• *E-mail: uformp@blm.gov.*

• *Fax:* (970) 240–5367.

• *Mail:* BLM Uncompahgre Field Office, RMP Project Manager, 2465 S. Townsend Ave., Montrose, Colorado 81401.

Documents pertinent to this proposal may be examined at the UFO during regular business hours (from 8 a.m. to 4:30 p.m. Monday through Friday, except holidays).

**FOR FURTHER INFORMATION CONTACT:** For further information and/or to have your name added to our mailing list, contact Bruce Krickbaum, RMP Project Manager, telephone (970) 240–5300;

address BLM Uncompahgre Field Office 2465 South Townsend Ave, Montrose, Colorado 81401; e-mail *uformp@blm.gov.*

**SUPPLEMENTARY INFORMATION:** This document: provides notice that the BLM UFO, Montrose, Colorado, intends to prepare an RMP with an associated EIS for the UFO; announces the beginning of the scoping process; and seeks public input on issues and planning criteria. The planning area is located in Delta, Gunnison, Mesa, Montrose, Ouray and San Miguel counties, Colorado, encompasses approximately 675,677 acres of public land, and excludes the Gunnison Gorge National Conservation Area and the Dominguez-Escalante National Conservation Area, which are managed under separate RMPs.

The purpose of the public scoping process is to determine relevant issues that will influence the scope of the environmental analysis, including alternatives, and guide the planning process. Preliminary issues for the planning area have been identified by BLM personnel, Federal, State, and local agencies, and other stakeholders. The issues include:

• Managing vegetative and water resources, terrestrial and aquatic habitat and special management areas, while sustaining biological diversity and native species populations;

• Managing mineral, renewable and nonrenewable energy resources;

• Managing increasing numbers and types of human activities and uses;

• Managing land tenure adjustments, withdrawals and utility/energy corridors;

• Managing and protecting cultural, historical and paleontological resources and Native American religious concerns; and

• Managing public lands and resources, including authorized and permitted land uses, for a growing population and expanding urban interface, with consideration for community values and needs.

Preliminary planning criteria include:

• Compliance with the FLPMA, the NEPA and other applicable laws and regulations.

• Incorporation of the Colorado BLM Standards for Public Land Health.

• Continued management of Wilderness Study Areas under the Interim Management Policy for Lands under Wilderness Review until Congress acts on a designation or releases lands from consideration.

• Decisions will be made that affect all BLM lands, including the subsurface mineral estate, within the planning area.

• Recognition of valid existing rights.

• Inclusion of adaptive management criteria to deal with future issues.

Public participation will be encouraged throughout the process. The BLM will collaborate and build relationships with tribes, State and local governments, Federal agencies, local stakeholders and others within the community of interest for the RMP.

You may submit comments on issues and planning criteria in writing to the BLM at any public scoping meeting, or you may submit them to the BLM using one of the methods listed in the **ADDRESSES** section above. To be most helpful, you should submit comments within the 30-day scoping period. Before including your address, phone number, e-mail address, or other personal identifying information in your comment, you should be aware that your entire comment—including your personal identifying information—may be made publicly available at any time. While you can ask us in your comment to withhold your personal identifying information from public review, we cannot guarantee that we will be able to do so. The BLM will evaluate identified issues to be addressed in the plan and place them into one of three categories:

1. Issues to be resolved in the plan;

2. Issues to be resolved through policy or administrative action; or

3. Issues beyond the scope of this plan.

The BLM will provide an explanation in the Draft RMP/EIS regarding why an issue was placed in category two or three. The public is also encouraged to help identify any management questions and concerns that should be addressed in the plan. The BLM will work collaboratively with the interested parties to identify the management decisions that are best suited to local, regional, and national needs and concerns.

The BLM will use an interdisciplinary approach to develop the plan in order to consider the variety of resource issues and concerns identified. Specialists with expertise in the following disciplines will be involved in the planning process: Wildlife; Threatened and Endangered Species; Vegetation; Riparian and Wetlands; Soils; Invasive and Noxious Weeds; Rangeland Management; Fire Ecology and Management; Cultural Resources and Native American Concerns; Hydrology; Geology and Minerals; Lands and Realty; Recreation; Visual Resource Management; Public Safety; Law Enforcement; and Geographic Information Systems.

**Authority:** 40 CFR 1501.7 and 43 CFR 1610.2.

**Dave Hunsaker,**
*Acting State Director.*
[FR Doc. 2010–3846 Filed 2–24–10; 8:45 am]
**BILLING CODE P**

---

# DEPARTMENT OF THE INTERIOR

## National Park Service

### Notice of Intent to Repatriate a Cultural Item: Peabody Museum of Archaeology and Ethnology, Harvard University, Cambridge, MA

**AGENCY:** National Park Service, Interior.

**ACTION:** Notice.

---

Notice is here given in accordance with the Native American Graves Protection and Repatriation Act (NAGPRA), 25 U.S.C. 3005, of the intent to repatriate a cultural item in the possession of the Peabody Museum of Archaeology and Ethnology, Harvard University, Cambridge, MA, that meets the definition of "unassociated funerary object" under 25 U.S.C. 3001.

This notice is published as part of the National Park Service's administrative responsibilities under NAGPRA, 25 U.S.C. 3003 (d)(3). The determinations in this notice are the sole responsibility of the museum, institution, or Federal agency that has control of the cultural items. The National Park Service is not responsible for the determinations in this notice.

The item is a coiled, cylindrical basket with black linear designs.

At an unknown date, this basket was collected by Grace Nicholson at an unknown locality, but likely in California. It was donated to the Peabody Museum by Lewis Farlow in 1905. Museum documentation states that this item was "rescued from pyral fire." The description of "pyral fire" indicates that this item was intended to be burned as part of a funeral rite. The Peabody Museum is not in possession of the human remains.

Museum documentation describes this item as "probably Moquelumnan stock." The term "Moquelumnan" was used to describe Miwok people. Consultation evidence indicates that present-day groups which represent Miwok people are the Buena Vista Rancheria of Me-Wuk Indians of California; California Valley Miwok Tribe, California; Chicken Ranch Rancheria of Me-Wuk Indians of California; Federated Indians of Graton Rancheria, California; Ione Band of Miwok Indians of California; Jackson Rancheria of Me-Wuk Indians of

California; Shingle Springs Band of Miwok Indians, Shingle Springs Rancheria (Verona Tract), California; Tuolumne Band of Me-Wuk Indians of the Tuolumne Rancheria of California; United Auburn Indian Community of the Auburn Rancheria of California; and Wilton Rancheria, California.

Officials of the Peabody Museum of Archaeology and Ethnology have determined that, pursuant to 25 U.S.C. 3001 (3)(B), the one cultural item described above is reasonably believed to have been placed with or near individual human remains at the time of death or later as part of the death rite or ceremony and is believed, by a preponderance of the evidence, to have been removed from a specific burial site of an Native American individual. Officials of the Peabody Museum of Archaeology and Ethnology also have determined that, pursuant to 25 U.S.C. 3001 (2), there is a relationship of shared group identity that can be reasonably traced between the unassociated funerary object and the Buena Vista Rancheria of Me-Wuk Indians of California; California Valley Miwok Tribe, California; Chicken Ranch Rancheria of Me-Wuk Indians of California; Federated Indians of Graton Rancheria, California; Ione Band of Miwok Indians of California; Jackson Rancheria of Me-Wuk Indians of California; Shingle Springs Band of Miwok Indians, Shingle Springs Rancheria (Verona Tract), California; Tuolumne Band of Me-Wuk Indians of the Tuolumne Rancheria of California; United Auburn Indian Community of the Auburn Rancheria of California; and Wilton Rancheria, California.

Representatives of any other Indian tribe that believes itself to be culturally affiliated with the unassociated funerary object should contact Patricia Capone, Repatriation Coordinator, Peabody Museum of Archaeology and Ethnology, 11 Divinity Ave., Cambridge, MA 02138, telephone (617) 496–3702, before March 29, 2010. Repatriation of the unassociated funerary object to the Buena Vista Rancheria of Me-Wuk Indians of California; California Valley Miwok Tribe, California; Chicken Ranch Rancheria of Me-Wuk Indians of California; Federated Indians of Graton Rancheria, California; Ione Band of Miwok Indians of California; Jackson Rancheria of Me-Wuk Indians of California; Shingle Springs Band of Miwok Indians, Shingle Springs Rancheria (Verona Tract), California; Tuolumne Band of Me-Wuk Indians of the Tuolumne Rancheria of California; United Auburn Indian Community of the Auburn Rancheria of California; and Wilton Rancheria, California may

IN



# Uncompahgre
# Resource Management Plan

We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name  **Josh**     Last Name  **Roberts**     Date  **2/25/10**

Mailing Address  **P.O. 73**

City  **Crawford**     State  **CO**     Zip  **81415**

E-mail Address: ——

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?     Yes: ☐ e-mail materials only   ☒ ~~e-mail and~~ hard-copy materials     ☐ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)     ☐ Non-profit Organization     ☐ Citizen's Group

☐ Federal, State, or Local Government     ☐ Elected Representative     ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:*

Do you live within the planning area? ☐ Unit 1  ☒ Unit 2  ☐ Unit 3  ☐ Unit 4  ☐ Unit 5  ☐ No
*(Refer to map for unit numbers)*

If you do not live in the planning area, do you live in: ☐ Colorado (west slope)   ☐ Colorado (front range or plains)
☐ Another State (which): _____   ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here? Months: _____   Years: **10**

Why do you live here? ☒ Occupation  ☒ Family  ☒ Proximity to public lands  ☒ Recreational Opportunities
☐ Other _____

> **The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on page 1 of the Uncompahgre RMP Newsletter (December 2009) or refer to the project Web site to download the map. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.**

**1 A-PI NRED**

_____ concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

My primary concerns revolve around the pollution of our air + water by methane ("natural") gas drilling operations. I am concerned that the supreme courts ruling: declaring corporations as people with the same rights to "contribute" to certain public officials and campaigns as they choose, seriously endangers our health, through the self interests of high rollers such as exxon. Do unto other generations as you would have them do unto you (ours).

**2 B-GE**

..........., including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 5:00pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

check out splitestate.com to observe the real life consequences + two face lies of certain gas companies.

**3 A-PI NRED**

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

First of all ask: is it necessary to physically change the landscape; for who's benefit, – and why. why make it easier for nearly unregulated industry to abuse our lands.

**4 A-PI NRED**

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules,

~~There must be a policing~~
The oil + gas industry (in my opinion) presents the greatest danger to the health of our environment and community & yet have used legislation to manipulate the regulations.

**5 A-PI NRED**

the issues above, what changes would you make to social characteristics (such as number of users, size of users, etc.)?

regulate those parties, who may be bringing in tankerfulls of fractray fluids to inject, who may pollute surface + ground water through drilling, who pollute the air with gases which are only visible with infra-red (Benzene, etc.) I could go on & on & on

**6 A-PI NRED**

additional comments that you have regarding this project.

Stand up for what is right, stand up for future generations, take a precautionary approach (an ounce of prevention is worth a pound of cure) protect the land, air, water from the potential destruction by huge multi-national methane gas companies

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401




US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401



RECEIVED
MAR 1 2 2010
BY:

Ä140185436 C003

BLM_0081183

2010-02-25 09:03          >>    970 240 5367                                        P 1/3

Received

FEB 2 5 2010

... Field Office

# TRAILS PRESERVATION ALLIANCE

w w w . C o l o r a d o T P A . o r g

Bureau of Land Management                                    2-24-2010

Umcompaghre Field Office

2465 S. Townsend Ave.

Montrose CO 81401

Planning Team:

This letter constitutes the Scoping Comment of the Trails Preservation Alliance (TPA) and the Colorado off Highway Vehicle Coalition (COHVCO), for the Field Office RMP. The goal of citizen scoping comments is to work with the BLM to establish the scope of the analysis to be used to formulate alternatives and ultimately a Record of Decision.

The TPA and COHVCO represent a significant portion of the off road recreation users in Colorado. Both organizations have a long history of working with federal agencies in the issues of public access to public lands.

The geographic scope of the RMP in the recreation section must include many recreation opportunities not located in the FO. For example: Those wishing a non motorized experience have many opportunities within a short distance from the towns and villages near the BLM lands. Black Canyon of the Gunnison National Monument, The Gunnison Gorge NCA, Dominguez Escalante NCA and Wilderness, McInnis Canyons Wilderness, and the numerous Wilderness areas in the neighboring National Forests. All existing, previously designated recreation zones for each type of experience must be taken into account during the analysis.

BLM_0081184

2010-02-25 09.04                    >>    9702405367                                                      P 2/3



An accurate representation of the current management situation is essential. The scale of effects can only be analyzed if an accurate no action alternative is presented

In addition, an accurate analysis of climate, precipitation and land health must be considered for a meaningful analysis.

In the same way, the economic and social benefits must be quantified and weighed by the I.D. team and the deciding officer in order to reach a quality Record of Decision. We feel that the team must look at the recreation portion of the plan with a scope of all of western Colorado. The Umcompaghre FO surely is a regional recreation resource.

A well executed EIS must rely on a complete and accurate inventory of recreation opportunities and routes. A through description of the activities and the benefits to the participants and the community is essential for a meaningful analysis. Real visitor numbers of participants in the activities and the seasons of use are essential data needed to make statistically relevant decisions and determine the scale of effects by alternative.

We suggest that due to the seasonal availability of land within the FO boundaries and the broad spectrum of recreational activities combined with the low visitor counts: the segregation of visitors and the zoning of activities is not an appropriate scheme for recreation management in the FO. Rather the FO can rely on the good sense of the public to decide which locations and seasons are best suited to their chosen activity.

On another note, the BLM must confine the analysis to issues and standards of conduct that BLM has clear authority to regulate. As an example, BLM clearly has authority to define locations suitable for the collection of gravel. BLM does not have authority to determine the season of use for hunting.

Of particular interest to us is the south western portion of the FO. Beginning at Blue Mesa and continuing south west to the intersection of highways 141 and 145.and east to the Utah border. The area north of 141 is open to cross country travel. It contains many miles of low grade roads that are very high value recreation resources to our members. Similarly, the area south of 141 has many miles of high value recreation roads as well as beautiful slick rock formations. We hope to continue to be able to access these routes and slick rock formations that are important for scenic value and high skill riding opportunity.

BLM_0081185

2010-02-25 09:04 >> 970 240 5367 P 3/3



www.ColoradoTPA.org

We recommend that these areas be managed as dispersed recreation areas with an emphasis on motorized recreation.

The Dry Creek area just west of Montrose works well as an urban interface multiple use recreation area.  We hope it will retain the present character.

The Tabeguache Trail is a valuable corridor.  By connecting Montrose to Grand Junction on a historic route the trail is a centerpiece of the backcountry in south west Colorado.  It is used by all means of backcountry visitors.  It should remain open to all.

We are confident that when the NEPA process is done well, the results will be fair to the many public interests and compliant with all applicable laws and regulations.

The TPA and COHVCO both area ready to work with the BLM FO as the RMP is developed.  Thank you.

Sincerely

Don Riggle

*Salutation here*

BLM_0081186



RECEIVED

MAR  1 2010

BY:_____

Bureau of Land Management                                    2-24-2010

Umcompaghre Field Office

2465  S. Townsend Ave.

Montrose CO 81401


Planning Team:


This letter constitutes the Scoping Comment of the Trails Preservation Alliance (TPA) and the Colorado off Highway Vehicle Coalition (COHVCO), for the Field Office RMP. The goal of citizen scoping comments is to work with the BLM to establish the scope of the analysis to be used to formulate alternatives and ultimately a Record of Decision.

The TPA and COHVCO represent a significant portion of the off road recreation users in Colorado.  Both organizations have a long history of working with federal agencies in the issues of public access to public lands.

The geographic scope of the RMP in the recreation section must include many recreation opportunities not located in the FO.  For example:  Those wishing a non motorized experience have many opportunities within a short distance from the towns and villages near the BLM lands.  Black Canyon of the Gunnison National Monument, The Gunnison Gorge NCA, Dominguez Escalante NCA and Wilderness, McInnis Canyons Wilderness, and the numerous Wilderness areas in the neighboring National Forests.  All existing, previously designated recreation zones for each type of experience must be taken into account during the analysis.

BLM_0081187



RECEIV
MAR 1 201
BY:
www.ColoradoTPA.org

An accurate representation of the current management situation is essential. The scale of effects can only be analyzed if an accurate no action alternative is presented

In addition, an accurate analysis of climate, precipitation and land health must be considered for a meaningful analysis.

In the same way, the economic and social benefits must be quantified and weighed by the I.D. team and the deciding officer in order to reach a quality Record of Decision. We feel that the team must look at the recreation portion of the plan with a scope of all of western Colorado. The Umcompaghre FO surely is a regional recreation resource.

A well executed EIS must rely on a complete and accurate inventory of recreation opportunities and routes. A through description of the activities and the benefits to the participants and the community is essential for a meaningful analysis. Real visitor numbers of participants in the activities and the seasons of use are essential data needed to make statistically relevant decisions and determine the scale of effects by alternative.

We suggest that due to the seasonal availability of land within the FO boundaries and the broad spectrum of recreational activities combined with the low visitor counts: the segregation of visitors and the zoning of activities is not an appropriate scheme for recreation management in the FO. Rather the FO can rely on the good sense of the public to decide which locations and seasons are best suited to their chosen activity.

On another note, the BLM must confine the analysis to issues and standards of conduct that BLM has clear authority to regulate. As an example, BLM clearly has authority to define locations suitable for the collection of gravel. BLM does not have authority to determine the season of use for hunting.

Of particular interest to us is the south western portion of the FO. Beginning at Blue Mesa and continuing south west to the intersection of highways 141 and 145.and east to the Utah border. The area north of 141 is open to cross country travel. It contains many miles of low grade roads that are very high value recreation resources to our members. Similarly, the area south of 141 has many miles of high value recreation roads as well as beautiful slick rock formations. We hope to continue to be able to access these routes and slick rock formations that are important for scenic value and high skill riding opportunity.

BLM_0081188



We recommend that these areas be managed as dispersed recreation areas with an emphasis on motorized recreation.

The Dry Creek area just west of Montrose works well as an urban interface multiple use recreation area. We hope it will retain the present character.

The Tabeguache Trail is a valuable corridor. By connecting Montrose to Grand Junction on a historic route the trail is a centerpiece of the backcountry in south west Colorado. It is used by all means of backcountry visitors. It should remain open to all.

We are confident that when the NEPA process is done well, the results will be fair to the many public interests and compliant with all applicable laws and regulations.

The TPA and COHVCO both area ready to work with the BLM FO as the RMP is developed. Thank you.

Sincerely

Don Riggle

BLM_0081189

IN

Received

FEB 2 6 2010

Uncompahgre Field Office



# Uncompahgre
# Resource Management Plan



We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.**
Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be
submitted via e-mail to uformrmp@blm.gov.

First Name _Lowell_  Last Name _WATSON_  Date _2-25-10_

Mailing Address _PO Box 661_

City _Nucla_  State _CO_  Zip _81424_

E-mail Address: _None_

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be
shared)?  ☑ Yes  ☐ e-mail materials only  ☐ e-mail and hard-copy materials  ☐ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)  ☐ Non-profit Organization  ☐ Citizen's Group

☐ Federal, State, or Local Government  ☐ Elected Representative  ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:*
Do you live within the planning area?  ☐ Unit 1  ☐ Unit 2  ☐ Unit 3  ☐ Unit 4  ☐ Unit 5  ☐ No
*(Refer to map for unit numbers)*

If you do not live in the planning area, do you live in:  ☒ Colorado (west slope)  ☐ Colorado (front range or plains)
☐ Another State (which): _____  ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here?  Months: _____  Years: _49_

Why do you live here?  ☒ Occupation  ☐ Family  ☐ Proximity to public lands  ☐ Recreational Opportunities
☐ Other _____

---

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors,
friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are
any other comments. When answering the following questions, reference as appropriate the planning units on the map titled
Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time
to provide your input.*

---

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

Do Not fence the river. It is not wide enough, + any time
there is Disturbance — weeds will come; u,

1 B-NP

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

No Modification are Needed.

2 A-GE

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

The fewer rules & regulations, The better off the river will be.

3 A-GE

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

Carry Trash iN — Carry Trash out!

4 B-NP

Please provide any additional comments that you have regarding this project.

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

BLM_0081191

IN

RECEIVED

MAR 1 2010

BY:_____

February 25, 2010

To: Ms. Barb Sharrow

I understand the National Wild and Scenic River Act, and its purpose to protect and preserve our natural resources. Being a United States citizen and a resident of the state of Colorado, I am also aware of the BLM intention to include the Mesa County and Delta County (Segments 1 & 2 of the Gunnison River, plus Segments 1, 2, 3, & 4 of the Big and Little Dominguez Canyons) portions of the Gunnison River, Dominguez Creek, and Escalante Creek in this study.

1 A-PI WSR

As stated in the WSRA, designated waterways of specific value are to be protected and enhanced "without… limiting other uses that do not substantially interfere with the public use and enjoyment of these values (WSRA, Section 10a)." Current landowners and land use do not interfere with public use and enjoyment of these water systems, as we personally witness hundreds of people every year partaking in recreational activities in and around these areas.

2 A-PI WSR

It must be recognized that a substantial number of hard working American citizens will lose their jobs and their homes as a direct result of this pursuit. Furthermore, adjacent land, landowners, and land use which will be affected, currently support our nation's agricultural production and food supply. Be it known that I believe it is wrong to hinder and intrude upon tax-paying citizens, causing them to uproot their children who are settled in local school systems and communities, forcing these families into unemployment and out of their homes. The area of contention is not a wilderness area, but an area of residents and livelihood. Including the above named waterways in the WSRA, will rob 11 families, just of whom we know personally, of their incomes and homes; notwithstanding, numerous others who also reside and earn a living along these waterways. I strongly oppose any such threat, now or in the future, to these US citizens.

I request this commentary be read aloud and presented in any and all pertinent meetings, public and private.

Sincerely,

John J. Wool

_John J. Wool and Family_
_( Escalante Cattle CO, Mesa- Agg_
_Cowboy )_

BLM_0081193

**Drew Vankat**

| | |
|---|---|
| **From:** | Anne Karfakis Sievers [x7rranch@tds.net] |
| **Sent:** | Friday, February 26, 2010 10:53 AM |
| **To:** | uformp@blm.gov |
| **Subject:** | RMP Mailing List |
| **Attachments:** | Scoping Comment Form 012710.doc |

Dear BLM,

Please keep me apprised of all information concerning Land Disposal Parcels included in the new RMP. I am an adjacent private landowner of an isolated parcel which was identified in the previous RMP for disposal. It is identified in Appendix B, Category I Disposal Tracts #26, a total of 240 acres identified as difficult and uneconomic to manage. More specificially:

T. 14 S., R 93 W., Sec 17: SW1/4SW1/4: Sec 19: E1/2NE1/4; Sec 20: NE1/4NW1/4 and W1/2NW1/4.

Below is personal information:
Landowner Name:   Barney & Co., LLC
                              Anne K. Sievers, manager
Address:   29504 Redlands Mesa Road
                   Hotchkiss, CO 81419
Telephone #:   (970)872-3438
Email Address:   x7rranch@tds.net
Email is acceptable format for corresponding with me concerning this.

I'm sending my comments in an attachment and separately on your Public Comment Form.

Thanks,
Anne K. Sievers

3/11/2010

BLM_0081194

 **Uncompahgre Resource Management Plan** 

We encourage you to provide your comments by filling out and submitting this comment form by February 26, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name __Barney & Co., LLC__        Last Name __c/o Anne K. Sievers__        Date __2/26/10__

Mailing Address __29504 Redlands Mesa Road__

City __Hotchkiss__                     State __CO__              Zip __81419__

E-mail Address __x7rranch@tds.net__

Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.) Yes: ☒Email materials    ☐Hard-copy materials    ☐No
*Please note that planning materials are also available at our website: www.UFORMP.com*

Please indicate your affiliation by checking the following boxes (check all that apply):

☒Individual (no affiliation)        ☐Citizen's Group              ☐Regulatory Agency
☐Non-profit Organization          ☐Elected Representative       ☐Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? ☐Unit 1 ☒Unit 2 ☐Unit 3 ☐Unit 4 ☐Unit 5 ☐No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ☐Colorado (west slope) ☐Colorado (front range or plains) ☐Other State - Which?_____ ☐ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years____34____ Months_____

4. Why do you live here? ☒Occupation ☐Family ☐Proximity to public lands ☐Recreational Opportunities ☐Other_____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?

Land Disposal Tracts

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

2
A-PI
LR

3
A-GE

4
A·GE

If possible, BLM inholdings, specifically tracts which are isolated and surrounded by private property should be sold. Adjacent landowners to these parcels should have first priority in purchase. Personally, I would make no changes to the landscape. Open space, agriculture, grazing, and wildlife is important to me and to the Colorado's future.

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

2
A-PI
LT
(contin.)

This would eliminate BLM cost in administering these isolated small parcels.
As stated above, adjacent landowners should have priority for purchase.

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

2
A-PI
LT
(contin.)

This action would remove the public access to the isolated parcels. This would eliminate conflict between private and public lands, such as trespassing and fencing.

**Please provide any additional comments that you have regarding this project.**

**Drew Vankat**

| | |
|---|---|
| **From:** | Bill Day [billday@paonia.com] |
| **Sent:** | Friday, March 05, 2010 1:58 PM |
| **To:** | uformp@blm.gov |
| **Subject:** | RMP scoping comments |

**Attachments:** ufo rmp scoping comments bday.doc



ufo rmp scoping
comments bday....

      I am attaching and pasting below Black Canyon Audubon's comments on UFO RMP
scoping.

Thanks,

Bill Day

February 26, 2010

RE: UFO RMP

RMP Planning Team,

      Thanks for the opportunity to comment on the RMP. Most of our comments below are in
response to the Preparation Plan or the Planning Handbook 1601. Many of these questions
and concerns relate to our belief- which is supported by the Prep Plan and H-1601- that
the RMP should consider landscape scale planning of conservation of wildlife habitat and
non damaging uses much more strongly than has been done in the past. This should mean
considering core areas of natural habitat and corridors connecting them, especially when
planning for travel management and extractive resource development, such as oil and gas
development with surface occupancy.

*A-P1*
*FW*

The following comments pertain to the Prep Plan, beginning on page 8 of the plan:

ACECs/WSRs:

    *

*2*
*A-P1*

    All existing ACECs should be kept. The Fairview area should be
enlarged to whatever size is required to protect the buckwheat.

    *

*3*
*A-P1*
*ACEC*

Other rare plants such as the Paradox Valley lupine, deserve their
own ACEC.

    *

*4*
*A-P1*
*ACEC*
*FW*

The most obvious need for ACECs to protect wildlife habitat is the
best remaining large areas of semi desert/salt desert habitat for
the two prairie dog species and their associated species. The most
obvious place for this is the east side of Highway 50, across from
the Escalante Canyon turn off. This would fit the CDOW plan to

1

"Work with public land agencies and other affected stakeholders to identify management emphasis areas (MEAs) (within the GUPD and WTPD IPAs) where intensive management can focus on landscape scale conservation for the entire prairie dog ecosystem." from their /Grand Valley and Uncompahgre Valley Action Plan/ for white-tailed prairie dogs. If there is a similar area of Gunnison's prairie dogs in the UFO's west end, it could be considered as an ACEC, too. Management of these would be mainly travel management and weed control.

*

5
A·Pl
WSR

All of the 35 segments in UFO's WSR eligibility report appear to be deserving of WSR status, especially those with unusually good understory or buffaloberry, /Forestiera// New Mexico privet, or box elder, or stands of cottonwoods.

Vegetation:

*

6
A·Pl
VEG
J
A·Pl
VEG

Desired outcomes for vegetation would be to have a pre-settlement variety of age classes. Late seral/old growth should not be disturbed, since it is almost always underrepresented and is required for most obligate bird species in all habitat types]

*

8
A·Pl
WD
9
A·Pl
WD

No reasonable expense should be spared in combating non-native weeds. Priority should be given to those which totally transform landscapes and habitat, such as cheatgrass and tamarisks. Weed control should use the best available science, and is a good place to mention adaptive management, rather than detail how to do it in the RMP.

*

10
A·Pl
VEG

Natural fire regimes and protection from motorized travel and oil and gas surface occupancy should be considered in landscape scale planning for natural vegetation.

Special Status Species:

11
A·Pl
SSS
12
A·Pl
SSS
13
A·Pl
SSS

The Prep Plan choices of Gunnison Sage-Grouse, Gunnison's and white-tailed prairie dogs, and clay- loving buckwheat are good choices. If one more were added, Yellow-Billed Cuckoo would be a good choice, especially since it represents a different, important habitat]. Burrowing Owl, (wintering) Feruginous Hawk, Golden Eagle, long-nosed leopard lizard, and kit fox could be preserved by good conservation of the two prairie dog species' habitats.]

Desired outcomes, strategies, restrictions and management actions for these species would be as follows:

*

Both prairie dog species and their associated species:

14
A·Pl
SS(ω)

DO would be increase in area occupied by large PD towns and in numbers of prairie dogs and their associated species. An increase in Burrowing Owls is especially desirable. Actions could include motorized travel restrictions, O&G surface occupancy stipulations, shooting restrictions in prairie dog habitat, and veg management

2

actions, especially weed (cheatgrass) control, and occasionally, large shrub removal. The BLM should realize that they must assume responsibility for the survival of all of the PD dependent species.

*

Gunnison Sage-Grouse:

15
A-PI
SSS

DO would be increase in occupied habitat area and quality of habitat, increase in population of GUSG, increase in connectivity between populations (between the San Miguel Basin population and the Pinon Mesa, Cerro, and Monticello populations, for example) and increased potential for use by GSUG of historic habitat areas that may not be used now. Strategies include reversing permanent loss of habitat trends on private land through conservation easements or fee acquisitions, reducing fragmentation of occupied, potential, and historically used sage habitat by strict travel management policies and by not allowing O&G development, and reducing or eliminating antler hunting in occupied habitat. Quality of habitat should be improved using best science regarding increase of forbs, reduction of PJs, and protecting wet areas. (Recommendations on connectivity using historic habitat, oil and gas development, and habitat vegetation are addressed in the /San Miguel Basin GUSG Working Group Conservation Plan/ from 2010.) New transmission or other utility lines should not be allowed in Priority Habitats or Special Status Species habitats, but GUSG are probably the most sensitive of any species to them.

*

16
A PI
SSP

'All clay-loving buckwheat populations should have total protection from any damaging uses, especially travel.

*

17
A-PI
SSS

DO for Yellow-Billed Cuckoo would be protection of all riparian areas that are capable of supporting any cottonwood species, and increasing the low population of cuckoos. This would require eliminating tamarisks and Russian knapweed, (and replacing them with native species), encouraging regeneration of cottonwoods, and maintaining large areas of large shrubs beneath and adjacent to the cottonwoods. This would also benefit countless other species of birds, bats and other wildlife . Willows may not affect cuckoos but are critical for other species.

Fish, Wildlife and Migratory Birds:

18
A-PI
FW

Management of remaining wildlife on public lands has become more important with the inevitable fragmentation of adjoining private land. This has to be considered by land management agencies and they must take a larger scale approach to planning. Any possible action to help plan, encourage or fund conservation easements on adjoining land is now worth it.

Priority species and habitats (in addition to SSS):

19
A-PI
FW

20
A-PI
FW

21
A-PI
FW

22
A-PI
FW

Priority species could include the remaining predators (mountain lion, bear, raptors), migratory big game (deer, elk), and some obligates (Pinyon Jay) of the habitat for which UFO is primarily responsible] [All of the bats from the State BLM Sensitive list that are in the UFO area should be protected by protecting caves, shafts and structures and by improving and protecting riparian areas. Current or historic Peregrine Falcon nests should be undisturbed. [In the case of obligate species for each habitat type, it might be easier to focus on the habitat. In either case, all of the UFO habitat types are important. In addition to

3

riparian, sage, and semi-desert mentioned above, PJ and mountain shrub
are very important for a variety of wildlife.]

**23**
**A·Pl**
**VEG**

Desired conditions of all of these habitats are more late seral stages
than usually exists now, less fragmentation / better connectivity, and
much fewer weeds. The shrubs/understory are very important to wildlife

**24**
**A·M**
**VEG**

in PJs and riparian areas. Non-native weeds are especially important in
riparian areas and semi-desert shrub habitat. Rocky Mountain Bird
Observatory studies being done for the Tamarisk Coalition on the
Colorado Plateau Rivers show that /all/ bird species are less common

**25**
**A·Pl**
**WD**

when tamarisk make up most of the understory. Literature that indicates
tamarisk may not be quite as bad may be comparing them to no understory,
rather than to native shrubs. Any management activity that affects
native vegetation seems to affect some wildlife species.]

**26**
**A·Pl**
**TW**

It is the responsibility of all land management agencies to monitor bird
populations.

Most of our replies to UFO Scoping questions and issues can be summed up
with the following few points:

*

**27**
**A·Pl**
**TW**

Planning for wildlife habitat and less damaging human uses, and
preserving BLM land for future generations should be as high or
higher priority as extractive uses and motorized recreation.

*

**28**
**A·Pl**
**FW**

This planning should consider core areas of important habitat, and
how to connect them, not just shunting wildlife onto what is left
over from other uses. Not all uses can occur in all areas.

*

**29**
**A·Pl**
**WD**

Non-native weeds have transformed important habitat to much less
productive habitat. This serious problem deserves more attention.

*

**30**
**A·Pl**
**VEG**

All of the UFO's habitat types are important for some species, and
most of those species need more larger, older vegetation. Both the
overstory and understory should be in the historic range of
variability of age classes.


Sincerely,


Bill Day

Conservation Chair, Black Canyon Audubon

28478 Hwy 92

Hotchkiss, CO 81419

billday@paonia.com <mailto:billday@paonia.com>

4

BLM_0081200

# *Budd-Falen Law Offices, L.L.C.*

Karen Budd-Falen [1]
Franklin J. Falen [1]
Brandon L. Jensen [1 2]
Kathryn Brack Morrow [1 2 3]
Laura C. Rowe [1]
Abigail M. Jones [4 5]

300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003-0346
Telephone 307/632-5105
Telefax 307/637-3891
main@buddfalen.com
www.buddfalen.com

[1] admitted in Wyoming
[2] admitted in Colorado
[3] admitted in New Mexico
[4] admitted in New Jersey
[5] admitted in New York

Received

MAR 2 2010

Uncompahgre Field Office

February 26, 2010

**VIA FEDERAL EXPRESS**
**&**
**E-MAIL**
uformp@blm.gov

970/240-5300
Bureau of Land Management
Uncompahgre Field Office
2465 S. Townsend Avenue
Montrose, CO 81401

Re:    Comments Regarding Draft Wild and Scenic Rivers Eligibility Report

Dear Sirs:

A- PI
UFR

On behalf of Mika Ag Corporation d/b/a the Escalante Ranch, the purpose of this letter is to provide comments related to certain proposed river segments included in the Uncompahgre Field Office Draft Wild and Scenic Rivers study. This Draft report is being completed based upon the Wild and Scenic Rivers Act.

The Wild and Scenic Rivers Act ("WSRA"), 16 U.S.C. § 1273(b) defines wild, scenic and recreational river areas. The statute requires that "[e]very wild, scenic or recreational river[1] in its free-flowing[2] condition, or upon restoration to this condition, shall be considered eligible for inclusion in the National Wild and Scenic Rivers system and, if included, shall be classified, designated, and administered as [either a wild, scenic, or recreational river area]."

---

[1]       "River" is defined in 16 U.S.C. § 1286(a) as "a flowing body of water or estuary or a section, portion, or tributary thereof, including rivers, streams, creeks, runs, kills, rills, and small lakes."

[2]       "Free-flowing" is defined in 16 U.S.C. § 1286(b) as the "existing or flowing in natural condition without impoundment, diversion, straightening, rip-rapping, or other modification of the waterway. * * *"

BLM_0081201

February 26, 2010
Page 2

The definitions of each are as follows:

(1)     <u>Wild river areas</u>--Those rivers or sections of rivers that are free of impoundments and generally inaccessible except by trail, with watersheds or shorelines essentially primitive and waters unpolluted.  These represent vestiges of primitive America.

(2)     <u>Scenic river areas</u>--Those rivers or sections of rivers that are free of impoundments, with shorelines or watersheds still largely primitive and shorelines largely undeveloped, but accessible in places by roads.

(3)     <u>Recreational river areas</u>--Those rivers or sections of rivers that are readily accessible by road or railroad, that may have some development along their shorelines, and that may have undergone some impoundment or diversion in the past.

16 U.S.C. § 1273(b).  The river segments described below do not meet the above definitions and should not be withdrawn from further consideration under the WSRA.

### 1.    Free-Flowing Requirement

In considering whether a river segment is "free-flowing" and eligible for inclusion in the Wild and Scenic River System, the statute states:

> existing or flowing in natural condition without impoundment, diversion, straightening, rip-rapping, or other modification of the waterway.  The existence, however, of low dams, diversion works, and other minor structures at the time any river is proposed for inclusion in the national wild and scenic rivers system shall not automatically bar its consideration for such inclusion.

16 U.S.C. § 1286(b).

The BLM manual further explains that with respect to the "free-flowing" requirement:

> Congress did not intend to require rivers to be "naturally flowing," i.e., flowing without any upstream manipulation except by nature.  The presence of impoundments above and/or below the segment (including those that may regulate the flow regime through the segment), existing minor dams, and diversion structures within the [area] shall not by themselves render a river ineligible. . . . A river need not be "boatable or floatable" in order to be eligible.  For purposes of eligibility determination, the volume of flow is sufficient if it is enough to maintain the outstandingly remarkable values identified within the segment.

February 26, 2010
Page 3

2004 - 196 Memorandum at 16. In addition there is no length requirements in order for a river or river segment to be eligible. Draft report at 8.

### C. "Outstandingly Remarkable Values"

The second requirement for eligibility within the System is the presence of "outstandingly remarkable values." The Wild and Scenic River Act does not define any of the "outstandingly remarkable values" in section in section 1273. Nor does it appear that there is a minimum number of ORVs that have to be present. If there is one found within the river corridor and the river is considered "free-flowing" that river may be eligible for inclusion.

Any qualifying ORV "should be located in the river or on its immediate shorelands, contribute substantially to the functioning of the river ecosystem, and/or owe their location or existence to the presence of the river." 2004-196 Memorandum at 2.

The Draft report explained that the ORVs have to be river related and to be "outstandingly remarkable" the value "must be unique, rare, or exemplary, as well as significant within a defined 'region of comparison.'" Draft report at 9. This definition was created by the National Park Service and has been upheld. Friends of Yosemite Valley v. Norton, 194 F.Supp.2d 1066, 1086 (E.D. Cal. 2002).

The Draft report explained that a "region of comparison:"

is used to compare the special values for which a river is being considered against comparable elements within a defined geographic area. The area, region, or scale used for comparison is not fixed, and should be that which best serves as a basis for meaningful analysis—it might vary, depending on the value being considered.

Id. The "regions of comparison" used in evaluating the ORVs relating to the Uncompahgre Planning Area are described in the Draft report.

The 8351 manual provides explanations and descriptions of the "outstandingly remarkable values." Those are:

**1. Scenic:** The landscape elements of land form, vegetation, water, color, and related factors must result in notable or exemplary visual features and/or attractions within the geographic region. The exemplary visual features and/or attractions within the geographic region. . . . When analyzing scenic values, additional factors such as seasonal variations in vegetation, scale of cultural modifications, and length of time negative intrusions are viewed may be considered. Scenery and visual attractions may

February 26, 2010
Page 4

be highly diverse over the majority of the river segment length and not common to other rivers in the geographic region.

**2. Recreational:** Recreational opportunities are or have the potential to be unusual enough to attract visitors to the geographic region. Visitors are willing to travel long distances to use the river resources for recreational purposes. Recreation—related opportunities could include, but not be limited to, sightseeing, wildlife observation, camping, photography, hiking, fishing, hunting and boating. Interpretive opportunities may be exceptional and attract or have the potential to attract visitors from outside the geographic area. The river may provide or have the potential to provide settings for national or regional commercial usage or competitive events. In addition, the river may be eligible if it is determined to provide a critically important regional recreation opportunity, or be a significant component of a regional recreation opportunity spectrum setting.

**3. Geologic**: The river or the area within the river corridor contains example(s) of a geologic feature, process, or phenomenon that is rare, unusual, or unique to the geographic region. The feature(s) may be in an unusually active stage of development, represent a textbook example and/or represent a unique or rare combination of geologic features (erosional, volcanic, glacial, and other geologic structures).

**4. Fish**: Fish values may be judged on the relative merits of either fish populations or habitat, or a combination of these river related conditions.

> **a. Populations.** The river is nationally or regionally one of the top producers of resident, indigenous, and/or anadromous fish species. Of particular significance may be the presence of wild or unique stocks, or populations of State, federally listed, or candidate threatened and endangered species.

> **b. Habitat.** The river provides exceptionally high quality habitat for fish species indigenous to the region. Of particular significance is habitat for State, federally listed, or candidate threatened and endangered species.

**5. Wildlife**: Wildlife values may be judged on the relative merits of either wildlife populations or habitat, or a combination of these conditions.

> **a. Populations.** The river or area within the river corridor contains nationally or regionally important populations of resident or indigenous wildlife species dependent on the river environment. Of particular significance may be species considered to be unique or populations of State, federally listed, or candidate threatened and endangered species.

February 26, 2010
Page 5

    **b. Habitat.** The river or area within the river corridor provides exceptionally high quality habitat for wildlife of national or regional significance, or may provide unique habitat or a critical link in habitat conditions for State, federally listed, or candidate threatened and endangered species. Contiguous habitat conditions are such that the biological needs of the species are met.

    **6. Cultural**: The river or area within the river corridor contains a site(s) where there is evidence of occupation or use by Native Americans. Sites must be rare, have unusual characteristics, or exceptional human-interest value(s). Sites may have national or regional importance for interpreting prehistory; may be rare; may represent an area where culture or cultural period was first identified and described; may have been used concurrently by two or more cultural groups; or may have been used by cultural groups for rare or sacred purposes.

    **7. Historic**: The river or area within the corridor contains a site(s) or feature(s) associated with a significant event, an important person, or a cultural activity of the past that was rare, or unusual in the region. A historic site(s) and/or feature(s) in most cases is 50 years old or older. Sites or features listed in, or eligible for inclusion in, the National Register of Historic Places, may be of particular significance.

    **8. Other Similar Values**: While no specific evaluation guidelines have been developed for the "other similar values" category, additional values deemed relevant to the eligibility of the river segment should be considered in a manner consistent with the foregoing guidance -- including, but not limited to, hydrologic, ecologic/biologic diversity, paleontologic, botanic, and scientific study opportunities.

    The Draft Eligibility Report for the Uncompahgre Planning Area included a ninth ORV called "vegetation" which explains that the "segment supports a riparian vegetation community that is a superior occurrence or is rare on a global basis." Draft report at 12.

    In applying these criteria to portions of the rivers included in the Uncompahgre Draft Eligibility Report, certain river segments do not meet the above requirements and should be withdrawn from further consideration. These segments are as follows:

1.   Dry Fork Escalante Creek Segment 2:

    The Dry Fork Escalante Creek Segment 2, particularly the lower portion which flows through the Escalante Ranch private property, does not meet the eligibility requirements under the WSRA. Although the draft plan notes the ORV for this section as "vegetation," the portion of the creek that flows through the Escalante Ranch private

February 26, 2010
Page 6

property is actually part of a hay meadow and orchard[3]. The Ranch's private property is located on both sides of the creek. The creek physically flows less than 10 days per year. There are water rights and man-made diversions in this segment of the creek and livestock pasture fencing across the creek. There is a system of culverts that carry water that span the creek bed. A significant amount of brush has been removed from the private land and pushed up against the creek as rip-rap or berms to keep the creek from flowing into the orchard. Although the BLM draft plan claims that the ORV vegetation is "globally imperiled," there are thousands of acres of this same vegetation in this local area, including a significant portion on acreage that is not included in this draft report.

2.    Escalante Creek Segment 1:

Escalante Creek Segment 1 also flows through the private property of the Escalante Ranch, as well as through BLM grazing allotments permitted to the Escalante Ranch. As with the Dry Fork Escalante Creek Segment 2, there are water rights and man-made diversions in this section of Escalante Creek as well as livestock pasture fencing and cattle water gaps across the creek. There is a privately owned cabin located directly on the bank of the creek, and a county road fords the creek bed. This creek also is not free-flowing year around and in fact completely dries during certain periods of the year. Although the draft plan claims that the ORV vegetation is "globally rare," there are thousands of acres of this same vegetation in this local area, including a significant portion on lands that are not included in this draft report. With regard to the recreation ORV, kayaking already occurs on the BLM managed portions of the creek segment.

3.    Escalante Creek Segment 2:

Escalante Creek Segment 2 flows through approximately 8 ½ miles of Escalante Ranch's private property with less than 1 mile of this proposed segment flowing through BLM managed lands. This segment does not meet the eligibility criteria for a wild and scenic river as it contains eight dams and water diversions which cross the creek, most

---

[3]    According to the Act, if a river or river segment is found eligible and is added to the System a "scenic easement" will result over the private property owner's lands. A scenic easement is:

the right to control the use of land (including the air space above such land) within the authorized boundaries of a component of the wild and scenic rivers system, for the purpose of protecting the natural qualities of a designated wild, scenic or recreational river area

16 U.S.C. § 1286 (c). However, with respect to private property owners, the Act goes on to state that, "but such control shall not affect, without the owner's consent, any regular use exercised prior to the acquisition of the easement. Id. The Escalante Ranch opposes the acquisition of its private property or any interest therein under the WSRA.

February 26, 2010
Page 7

of which are 4 to 6 feet tall. During certain times of the year, no water flows in the creek after the last diversion. There is a system of culverts that carry water that also span the creek bed. There are dozens of fences and water gaps across the creek used as pasture fences for the Ranch's livestock grazing operation. There are five homesteads on the creek bank. There are also cattle working facilities located on the creek bank and a significant amount of rip-rap and other berm materials have been placed in and along the bank to keep these corrals, scales and other working facilities from washing out. A significant amount of work has been done on the creek to keep the water from cutting into the fields and orchard. This work includes man-made brush berms. There is no public recreation access to this part of the creek on the Ranch's private property.[4] There is one diversion constructed by the county as a pool to get water for the county's use. Irrigation ditches parallel the creek for between one to two miles to get irrigation water to the Ranch's irrigated meadows and pasture land. County roads cross the creek in numerous places, and private ranch roads ford the creek in four additional places. There are basically no fish in this segment.

With regard to the ORVs, there are no Colorado hookless cactus or Eastwood's monkeyflowers in this section of Escalante Creek, although there is an ACEC to protect the monkeyflower in Segment 1. As with Dry Fork Escalante Creek Segment 2, although the draft plan claims that the ORV vegetation is "globally imperiled," there are thousands of acres of this same vegetation in this local area, including a significant portion on lands that are not included in this draft report. The owners of the Escalante Ranch have never viewed a falcon in this area in 20 years and the small band of Big Horn sheep that have recently moved into the area are located on the Ranch's alfalfa fields, and are not using the creek.

4.   Gunnison River Segment 3:

The Gunnison River Segment 3 also flows through portions of the Escalante Ranch's private lands. There is a bridge that crosses the River and the railroad right-of-way parallels a significant length of the proposed segment. The railroad has done a significant amount of man-made work in the river and on its banks to keep the river from washing out the right-of-way. There are several homes on the river bank. A large number of people camp within the railroad right-of-way and "calling attention" to this area by designating a wild and scenic river will simply compound this problem.

Although the map shows this proposed segment stopping at the state land boundary, there is no explanation as to why. The lands owned by the state contain exactly the same components as those proposed by the eligibility report.

---

[4]       Additionally at no time has the Ranch given BLM permission to access its private lands to determine the eligibility of this segment of Escalante Creek for inclusion under the Wild and Scenic Rivers Act.

February 26, 2010
Page 8

11
A PI
WSR

Although the draft plan notes the petroglyphs in the area, two of those are located on private land and there is no public access to these lands. There are 10 homesteads along this segment, two gravel quarries, many significant water diversions including at least four water pumping stations one of which is mounted on a man-made pier which extends into the river. The private land impacted by the proposed segment includes several orchards, irrigated pasture and cropland.

12
A PI
WSR

There is also a question about how the percent ownership of this segment was calculated in the draft plan. These percentage ownership calculations are misleading in favor of the BLM and must be corrected.

13
A PI
WSR

The Escalante Ranch appreciates the ability to comment on this proposal and requests notification of all other documents related to this proposal. Again, because the four segments listed above do not meet the criteria for inclusion under the WSRA and because any inclusion of these lands may have a detrimental impact on the current survey work and proposed land exchange relating to the recent wilderness designation, the four segments listed above should be withdrawn from further consideration. Should you have any questions please do not hesitate to contact me.

Sincerely,

Karen Budd-Falen
BUDD-FALEN LAW OFFICES, LLC

KBF:vld

xc:     Colorado Cattlemen's Association
        Senator Michael F. Bennet
        Senator Mark Udall
        Congressman John Salazar (Grand Junction office)
        Club 20 c/o Reese Brown
        Dick Miller via e-mail



**Uncompahgre
Resource Management Plan**



We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail at uformp@blm.gov.

First Name __Danell__   Last Name __Carter__   Date __2/26/10__

Mailing Address __P.O. Box 386__

City __Nucla__   State __Co__   Zip __81424__

E-mail Address: __Cartermom89@yahoo.com__

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?   Yes: ☐ e-mail materials only  ☒ e-mail and hard-copy materials   ☐ No

Please indicate your affiliation by checking the following boxes (check all that apply):
☒ Individual (no affiliation)   ☐ Non-profit Organization   ☐ Citizen's Group
☐ Federal, State, or Local Government   ☐ Elected Representative   ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:*
Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☐ Unit 5 ☐ No   __West Montrose County / Nucla area__
(Refer to map for unit numbers) (Yes)

If you do not live in the planning area, do you live in: ☐ Colorado (west slope)   ☐ Colorado (front range or plains)
☐ Another State (which): _____   ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here?  Months: __6__   Years: __41__

Why do you live here? ☐ Occupation ☐ Family ☐ Proximity to public lands ☐ Recreational Opportunities
☒ Other __Life time__

---

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

---

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

I feel that you are limiting the Farmers, Ranchers, and landowners. By this proposed limitation you are impacting the economy in a _negative_ way. This is a depressed area any way, and your proposals would make it worse.

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

OVER ▶

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

None

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

Less government regulations.

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

None.

Please provide any additional comments that you have regarding this project.

Please listen to the locals, and use Common Sence when making your decesion.

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

BLM_0081210



Mary & Mike Clarke
4846 Cedar Road
Delta, Colorado  81416


February 26, 2010


Barbara Sharrow,
Field Manager,
BLM Uncompahgre Field Office
2505 South Townsend
Montrose, CO  81401

            RE:  Wild & Scenic River Eligibility Report

Dear Ms. Sharrow,

The Wild and Scenic River Act of 1968 was enacted during a time that dam-building was rampant.  The act called for rivers with "outstandingly remarkable" characteristics to be preserved in their "free-flowing condition" for the enjoyment of present and future generations.  According to Maggie Kelsey, Wild and Scenic Rivers coordinator for the BLM, "The purpose of the act was to have vestiges of rivers that weren't going to be totally industrialized, so that some rivers could just be rivers."

**1 A-PI WSR**     **1 A-PI WSR continued**

Times and laws have changed dramatically in the 42 years since the act's enactment.  Lands currently held by Federal agencies through which these waters flow are protected by proven existing laws and acts already in place.  Development cannot take place, dams cannot be constructed without Federal approval, roads, trails, paths, and basically any improvement cannot be constructed nor used without Federal agency approval. The State owned land that these waters flow through should be under the jurisdiction of the State.  States' interests' need to be protected.  This act could thwart Colorado's effort to develop its water supplies.  This then, leaves only the private properties through which the waters flow.  This act usurps the property owner's rights in regard to

**2 A-PI WSR**

their livelihood..be it ranching, mining or just someone who wants to live without

**3 A-PI WSR**

neighbors a stone's throw from their porches.

Our area is very arid; water is scarce and has been a major point of contention since man walked upright.  The interpretation of this act may jeopardize water rights in areas that every drop of water is accounted for and used.  Water

**4 A-PI WSR**

utilization in the last 42 years has grown and is realized as an extremely valuable asset.  An asset that human, livestock, bird, mammals, fish essentially every breathing thing depends on. There are no guarantees through time and administrations on how these acts will be interpreted or used.  This designation in other states has led to restriction in grazing and agricultural uses.

          It is my fear that awaiting Congressional approval our public lands agencies will manage these rivers as if they were wild and scenic, restricting water development, grazing, mining as well as promoting the recreational uses.

**5 A-PI WSR**

6 A-PI WSR

Your Eligibility Report has wonderful graphics, flowing language, tugging at heartstrings, envisioning a wonderful panoramic view ---BUT it does not address the people, the pioneers that have carved out their homes and ranches along these corridors.  Your act will have far reaching economic impacts and personal hardships on these families.  By using the ¼ mile each side of the water channel as your base, the percentage of federally owned lands versus private looks wonderful, appearing as if this act will not affect but a tiny percentage of small family lands.  This report does not in fact address the fact that the private land is enormously affected as being the closest to the channel, affected the most.   I think a good example would be like a large park in an inner city…beautiful, used by the multitudes, then a new act; lets' call it the Scenic and Wild Park act goes into effect: all of houses abutting the park will now be under park authority; types of lawns, how you mow them, fertilize or take care of those pesky grubs, if you drive your car down the street, can park by your house, maybe your dog will be too large or your children too loud, what your roof can look like and on and on.  Wait a minute…aren't those little items already covered in building and municipal codes as well as covenants?

7 A-PI WSR

A great many of these river segments in the inventory flow through an area well documented holding a tremendous amount of uranium.  In the years to come this uranium and the nuclear power plants may very well be our main source of energy.  How will this act affect that industry?  The Clean Air Act, Mining Act and a multitude of laws and acts already protect our environment.  As

8 A-PI WSR

an aside, in your report, the old mining buildings are used as an example of cultural and historic remarkable values, are these same buildings that in other reports are considered an eye sore, unsafe and need to be torn down and the sites returned to "native"?  The wild and scenic designation will not protect, it will only harm in the long term.  I ask you to look at the laws and acts already in place and to utilize those tools.  Use the federal resources in a positive way to

9 A-PI WSR

make our environment better; not by more legislation, but by actual work, cleaning up trashed areas, building trails and improvements to lead the public where their use makes less of an impact.  Education on the areas to "Leave no Trace", weed and invasive species eradication and patrolling will all do more to help our environment than another piece of unnecessary legislation that sure resembles a "takings" type legislation.

I am opposed to the utilization of this act on our rivers.  I do not believe that this landscape has any more "outstandingly remarkable values" than any other part of the area.  I am against designation of the Wild and Scenic designation of any of the river segments listed in appendix C Uncompahgre Rivers Inventory.

Respectfully Submitted:
Mary Clarke (Western Colorado Native)
Mike Clarke  Colorado Native

10 A-PI WSR

AS

# TE OF COLORADO

## Colorado Water Conservation Board

**Department of Natural Resources**
1313 Sherman Street, Room 721
Denver, Colorado 80203
Phone: (303) 866-3441
FAX: (303) 866-4474
www.cwcb.state.co.us

Bureau of Land Management
Uncompahgre Field Office, Colorado
Attn: RMP Revision
2645 S. Townsend Ave.
Montrose, CO 81401

February 26, 2010

Bill Ritter, Jr.
Governor

Jim Martin
Executive Director

Jennifer Gimbel
CWCB Director

Dan McAuliffe
Deputy Director

Re:     CWCB Comments on *Draft Wild and Scenic Eligibility Report for the Bureau of Land Management Uncompahgre Planning Area.*

The Colorado Water Conservation Board (CWCB or Board) appreciates this opportunity to comment on the *Draft Wild and Scenic Eligibility Report for the Bureau of Land Management Uncompahgre Planning Area* (Draft Report) released by the Bureau of Land Management ("BLM") in December 2009.

The Draft Report details the inventory and evaluation of waters within the Uncompahgre Planning Area and portions of the Dominguez-Escalante National Conservation Area for potential eligibility in the National Wild and Scenic Rivers System. The analysis considers the condition of river segments along the Lower and North Fork of the Gunnison, the San Miguel, and the Upper and Lower Dolores Rivers, each of which comprises part of the Colorado River c system within Colorado.

1 A-PI WSR

The CWCB has a substantial interest in the efficient management and wise administration of the river segments inventoried and evaluated in the Draft Report. The CWCB is authorized to, among other things, "cooperate with the United States and the agencies thereof . . . for the purpose of bringing about the greater utilization of the water of the state of Colorado . . .," and "to confer with and appear before the officers, representatives, boards, bureaus, committees, commissions, or other agencies of . . . the federal government, for the purpose of protecting and asserting the authority, interests, and rights of the state of Colorado and its citizens with respect to the waters of the interstate streams in this state."[1]

Furthermore, the CWCB has the exclusive authority to appropriate instream flow water rights,[2] and its Instream Flow Program has proven to be very successful, protecting over 8,500 miles of streams and 480 natural lake levels in Colorado. The BLM has successfully relied on this program in dozens of situations to protect water resources located within or adjacent to BLM lands. It is under this authority and in the interest of protecting the rights and needs of its citizens that Colorado submits the following comments:

- The CWCB appreciates the Draft Report's express acknowledgement that the eligibility analysis is an initial phase of the Wild and Scenic River investigation, intended to identify the BLM's opinion regarding the free-flowing nature and outstanding and remarkable values of the inventoried river segments. Although the CWCB may dispute or disagree with some of the BLM's findings in the Draft Eligibility Report if it

2 A-PI WSR

---

[1] Section 37-60-106, subsections (e) and (i), C.R.S. (2009).
[2] Section 37-92-102(3), C.R.S. (2009).

Flood Protection • Water Supply Planning and Finance • Stream and Lake Protection
Water Supply Protection • Conservation and Drought Planning

BLM_0081213

conducted its own field investigation and review, the CWCB recognizes the Draft Report is the result of a federal administrative inventory and evaluation that will undergo further impact analysis, consultation and coordination with interested stakeholders during the suitability phase.

- The CWCB appreciates the Draft Report's commitment to collaborating with non-federal stakeholders during the suitability phase of Wild and Scenic River analysis for the Uncompahgre Planning Area and portions of the Dominguez-Escalante National Conservation Area. The CWCB has been and continues to be actively involved in a number of non-federal stakeholder groups coordinating with the BLM and US Forest Service as appropriate during the suitability analysis for stretches of the Upper and Lower Colorado River, the Dolores River, and the San Juan River basins. These stakeholder efforts are attempting to develop management plans to protect the values associated with the various segments, as identified by the federal agencies as being eligible for wild and scenic rivers designation, while allowing Colorado to fully use its entitlements under the Colorado River and Upper Colorado River Basin Compacts. Between 2007 and 2009, the CWCB was also able to provide resources and funds to explore reasonable and acceptable alternatives to wild and scenic designation by federal agencies. The CWCB looks forward to a similar collaboration, to the extent resources are available, during the suitability phase of the Wild and Scenic River investigation for the Uncompahgre Planning Area to further evaluate the eligibility classifications of the inventoried river segments and identify whether and to what extent there are plausible alternatives to designation of eligible segments as suitable.

3 A-PI WSR

- The Draft Report notes that the San Juan Public Lands Draft Land Management Plan recognizes a segment of the upper Dolores River as eligible. It further provides that the northernmost 11.8 miles of this segment is within the UFO's jurisdiction and will be evaluated by the UFO during the suitability phase.

4 A-PI WSR

The CWCB recommends the UFO coordinate with the San Juan Public Lands Center, the Dolores River Dialogue stakeholder group and Lower Dolores Plan Working Group when conducting the suitability analysis for the Dolores river segment within the UFO's jurisdiction. These entities have been working together for the past 24 months to identify potential methods for securing needed protections of the outstandingly remarkable values without limiting reasonable water development along the Dolores River segment between McPhee Dam and Bedrock, Colorado. The UFO should incorporate and build upon these past and ongoing consultations to develop consistent management strategies for the contiguous stretch of the Dolores River.

- The Comments provided herein focus on the primary interests of the CWCB with regard to the Draft Report. Lack of additional comments should not be construed as agreement with or an admission of all factual and legal assertions made therein. Nor should silence on factual and legal characterizations in the Report be deemed a waiver of any of rights for the purposes of any future legal, administrative, or other proceeding.

5 A-PI WSR

Flood Protection • Water Project Planning and Finance • Stream and Lake Protection
Water Supply Protection • Conservation Planning

BLM_0081214

- 3 -

6 A-PI WSR

Finally, the CWCB would like to thank the BLM for its efforts in developing the Draft Eligibility Report and willingness to consult the public before finalizing it. This has not occurred with all other Eligibility Reports issued by different BLM field offices, and we appreciate this opportunity to comment. We look forward to continuing our excellent relationship with the BLM on water rights issues during the next phases of the Wild and Scenic investigation for the Uncompahgre Planning Area and portions of the Dominguez-Escalante National Conservation Area.

Jennifer Gimbel
Director
Colorado Water Conservation Board

cc:    Alex Davis, Colorado Department of Natural Resources

**Drew Vankat**

IN

| | |
|---|---|
| **From:** | Sherry Craig [sherry@fruitacoop.com] |
| **Sent:** | Friday, February 26, 2010 1:03 PM |
| **To:** | uformp@blm.gov |
| **Subject:** | Resource Managment Plan |

1 A-PI WSR

In my opinion we do not need any more wild or scenic designations in this area.  The local economy really needs to use this land.  I do not believe there is damage being done so much that we need to not use the land at all.  What good is the land to anyone if it can not be used for anything?  God made the earth for man to use, he did not make it just to just look at.  This area around Nucla needs to use this land!!

I am using the Free version of SPAMfighter.
We are a community of 6 million users fighting spam.
SPAMfighter has removed 561 of my spam emails to date.
The Professional version does not have this message.

3/11/2010



IN

# Uncompangre
## Resource Management Plan


NATIONAL SYSTEM OF PUBLIC LANDS

We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name _Harold_     Last Name _Cressler_     Date _Feb 26-10_

Mailing Address _PO Box 593_

City _Nucla_     State _CO._     Zip _81424_

E-mail Address: _None_

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?   (Yes) ☐ e-mail materials only  ☐ e-mail and hard-copy materials          ☐ No

Please indicate your affiliation by checking the following boxes (check all that apply):
☒ Individual (no affiliation)        ☐ Non-profit Organization        ☐ Citizen's Group
☐ Federal, State, or Local Government   ☐ Elected Representative      ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _American Citizen - Born here_

_Please answer the following four questions about your relationship to the Uncompangre RMP Planning Area:_
Do you live within the planning area? ☒ Unit 1 ☒ Unit 2 ☒ Unit 3 ☒ Unit 4 ☒ Unit 5 ☐ No
_(Refer to map for unit numbers)_

If you do not live in the planning area, do you live in: ☒ Colorado (west slope) ☐ Colorado (front range or plains)
☐ Another State (which): _____     ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here? Months: _____ Years: _50_

Why do you live here? ☐ Occupation ☐ Family ☐ Proximity to public lands ☐ Recreational Opportunities
_I Don't Know_ 😊 ☐ Other _____

---

**The BLM wants to hear from you! The Uncompangre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will assist at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompangre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.**

---

What issues or concerns do you have regarding public land resources or uses within the Uncompangre RMP planning area?

_Since The 1980's I Bot Green sheet, Commercial fire wood Permits and pole permits, Furnishing all my own expenses until I got Too old to worke Now The Government is going pay other people to Do what I paid Them to Do. If Beetle Kill is not Harvested within 2 or 3 years it will be Too rotten, even for wood, esp. if IT goes to the Ground. In Summary I would suggest you Give IT To People, instead of Destroying it W/ Fire Thanks_

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompangre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

OVER ➡
Over

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

Clear cut any where old or Bug infested trees, including Piñon by Giving People the Wood to cut it! FREE, No expense To Government. Also Clear out all cedars or junipers Infected with Mistletoe that is spreading fast, Killing Trees.

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

Get rid of The office Drones in The BLM and Forest Service + Put the rest in The field instead of pushing papers. Men AND Women!

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

Put The timber + Trees To sawmills or Timber Cutters To utilize The products by subsidizing The sawmills - Wood processing plants etc./ Give to any One - individual or group, whatever They Could Cut + Haul

Please provide any additional comments that you have regarding this project.



Stop Burning up natural recourses as it has NOT Stopped the Beetles./ Program of Trimming out every old, Diseased or Too Thick vegatation, and The Gov. Buy The Lumber and ship it to Haiti for Foreign Aid

---

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401



RECEIVED
MAR 1 2010
BY:

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

81401$5436 C003

BLM_0081218

BLM 0081219

To Whom it may concern:

February 26, 2010

RECEIVED
MAR 1 2010
BY:

This is a letter of opposition regarding the Wild and Scenic eligibility of the Gunnison River including Escalante Creek, Roubideau Creek and their tributaries. Our family and friends have worked and enjoyed these areas for generations and we don't want the Gunnison River and its segments to be eligible for Wild and Scenic.

Thank you for your time and consideration.

Sincerely,

Davis Ranch

Clark Davis
Theresa Davis
Edith Davis

10933 25 Mesa Rd
Delta, CO 81416

MSR
161
1

RECEIVED
MAR 1 2010
BY:_____

February 26, 2010

**1 A-GE**

This letter is in regards to the WSR eligibility for the Gunnison River Segments and the Escalante Creek Segment.

I am born and raised in the country and/or on ranches my entire life. I have always had a deep respect for the outdoors, wildlife, the ranching heritage I come from, and the enjoyment of the areas I have lived in being available for the public to utilize and appreciate as well. I have always had a deep respect for the BLM and Forest Service agencies that my family has worked closely with over the years as they are official stewards of the land as we as the public and livelihoods are as well. There was a time that these Government entities worked closely with all who are involved in these public lands and waterways, having respect for the economy boosting ranchers and farmers that make their modest living from these lands as well as genuine respect for the land in question for reasons of benefit to the land, and a genuine desire to allow all involved fair and just consideration in any decisions made on the lands.

It seems however that these days, the BLM has shifted to making their proposals geared towards tourism and recreational purposes solely and leaving behind realistic beneficial proposals for the wildlife, the local economy, local ranching heritage and local history. It seems that particular interests are being catered to, and the rest of all of our interests are no longer acknowledged.

**2 A-PI WSR**

I have seen firsthand the effects of tourism pushing, as I watch the pristine archeological sites along our private areas and on the public areas along the Gunnison River and the Escalante Canyon, as they are falling victim at an alarming rate to vandalism and the need for all the tourists to leave their initials over the top of the sites. I have seen the trash scattered all around, cigarette butts lying amongst dry grasses, dirty diapers strung out on the road, our historical sites being vandalized and irreplaceable historical equipment and antiques stolen, Historical buildings have been burned to the ground. Along the Gunnison River, I am no longer comfortable with taking my children for walks along the river paths along the private property we live on due to the increasing run ins with rafters in the nude on our sides of the river banks, stepping in their defecation, picking up their beer bottles and trash, and the general lack of landowner respect whereas they camp wherever they like on the property leaving their trash for us to clean. Our cattle have had glass in their hooves, our property has been defaced and our livelihoods are interrupted by the influx of those who seem to think we need to relinquish our rights as property owners for the mere sake of an "aesthetic" experience.

Speaking of aesthetic experience, we put a lot of sweat and blood in to making that happen, as it is due to our toils on the lands that the deer, elk, desert bighorn, and countless other wild species flourish along this river and creek presenting magnificent "aesthetic" viewing opportunities to the tourists. We are the ones with the true, genuine love and respect for this land as we live in it, make our livings from it and work year round without paid vacations, sick leave, holidays, 401K plans, etc to steward it. We do not make decisions for it from our computer desks thousands of miles away in a Government office based on "studies" conducted by highly paid book educated environmentalists. We are in it and on it every day of the year, with no reimbursement for our contributions to it other than the enormous attorney fees out of our pocket to protect

**3 A-PI WSR**

it. We do not have government or tax funded contributions for our efforts, and we are the ones watching it being taken away from us. The public is being given less and less opportunity to aid in the stewardship and decisions concerning these lands, and the entities promoting these proposals are bullying their way into the passing of such proposals.

I feel that to cater to special interests only is wrong and un fair, and I feel that should this proposal be allowed to pass, the history of this area, the pristine of this area, the wildlife, the families and economy of this area are jeopardized strongly. I have seen first hand the crooked ways used to accomplish agendas by the BLM in the last couple of years (i.e. bold faced lying and the willingness to leave out important information regarding agendas) which has resulted in the growing lack of respect and desire to work with the BLM from local interests of all types, namely those being affected the most.

I strongly oppose the WSR proposals for these areas, and will do my best to educate the public on what I have had the opportunity to witness during this process and other related processes in the recent last couple of years, so that they (public) have the right to know what all these kind of proposals actually entail. I do not support governmental land grabbing.

Holly Davis
Delta Colorado

4 A-PI WSR

BLM_0081221

RECEIVED
MAR 1 2010
BY:

IN

Barb Sharrow
Uncompahgre Field Manager
US BLM
Montrose Field Office

February 26, 2010

Attn: Barbara Sharrow,

To: Barb Sharrow

**1 A-PI WSR**

This letter is to express my concern and opposition to the eligibility report for the Wild and Scenic River Act. Namely, the Gunnison River Segment(s) between Escalante Canyon and the Mesa/Delta county line, and the entire stretches of Escalante Creek and its tributaries. More importantly, the private property stretches involved.

I believe these segments should be excluded completely from the inventory; the majority of these segments are along private property owned and operated by Dick Miller/ Escalante Ranch. The BLM grazing permits also belong to Dick Miller and Escalante Ranch. I do not believe that the entire segments that have been evaluated by the BLM without trespassing on the private property. Being manager of Escalante Ranch, I know permission was not given to the BLM to trespass on these private segments.

The majority of the water rights along these segments also belong to Dick Miller/Escalante Ranch. When the water is being diverted to irrigate, the Escalante Creek can and/or is completely dried up, leaving no water for the in-stream flows being proposed by the BLM for WSR's.

**2 A-PI WSR**

There is also wording in the BLM manual that gives the BLM rights to acquire land along the segments in the WSR. The ability to acquire land also describes condemnation of water rights and private property as a BLM option should it deem necessary. That makes the WSR act on these segments un acceptable to me and likely the majority of the public.

**3 A-PI WSR**

If the eligibility passes, it could potentially jeopardize the well being of this ranch(s) along Escalante Creek and the Gunnison River. The Escalante Ranch employs as many as a dozen people along with their families that live and help out on the ranch. It would not be beneficial to the community to have these families displaced because the ranch could no longer sustain itself due to the restrictions of the BLM and the WSR.

**4 A-PI WSR**

When the NCA was designated, it was supposed to protect whatever was inside its boundaries, if protection is what the BLM was seeking, then why include these segments in the inventory? It is my understanding that if protective measures are already in place along these segments then there is no further need for these segments to be in the WSR inventory.

In conclusion, I am completely opposed to any WSR designations along the Gunnison River segments from the Escalante Creek to the Mesa/Delta county line, and also Escalante Creek and all it's tributaries in their entirety. I am also opposed to these segments being in the eligibility inventory. I would hope these segments be released from consideration before the suitability stage.

**5 A-PI WSR**

Thank you,

Kent Davis
Ranch Manager, Escalante Ranch
7105 Escalante Canyon Rd
Delta CO 81416

BLM_0081223

IN

## Drew Vankat

| | |
|---|---|
| **From:** | Pat Enstrom [penstrom@fone.net] |
| **Sent:** | Friday, February 26, 2010 9:37 AM |
| **To:** | uformp@blm.gov |
| **Subject:** | San Miguel River Wild and Scenic Proposal |
| **Attachments:** | Uncompahgre Resource management comment.pdf |

1 A-PI WSR

Attached is a comment form:

I am not in favor of wild and scenic classifications for rivers anywhere ... this is public land ... leave it as it is!

-Pat Enstrom
26156 rd bb
Nucla,Colo. 81424

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 9.0.733 / Virus Database: 271.1.1/2710 - Release Date: 02/25/10 12:57:00

3/11/2010

BLM_0081224



# Uncompahgre
# Resource Management Plan



We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name _Patrick_   Last Name _Enstrom_   Date _2-25-10_

Mailing Address _26656 Rd BB_

City _Nucla_   State _Colo._   Zip _81424_

E-mail Address: _Penstrom @ fone.net_

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?   Yes: [✓] e-mail materials only  [ ] e-mail and hard-copy materials    [ ] No

Please indicate your affiliation by checking the following boxes (check all that apply):
[ ] Individual (no affiliation)   [✓] Non-profit Organization   [ ] Citizen's Group
[ ] Federal, State, or Local Government   [✓] Elected Representative   [ ] Regulatory Agency

Name of organization, government, group, or agency (if applicable) _Director CC Ditch Company_

Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:

Do you live within the planning area? [ ] Unit 1 [ ] Unit 2 [ ] Unit 3 [ ] Unit 4 [ ] Unit 5 [ ] No
(Refer to map for unit numbers)

If you do not live in the planning area, do you live in: [✓] Colorado (west slope)  [ ] Colorado (front range or plains)
[ ] Another State (which): _____  [ ] Another Country (which): _____

If you do live in the planning area, how long have you lived here?  Months: _____  Years: _____

Why do you live here? [✓] Occupation [ ] Family [ ] Proximity to public lands [ ] Recreational Opportunities
[ ] Other _____

---

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

---

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

I am not in favor of converting the San Miguel River into a wild & scenic River.

_Patrick W Enstrom_

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00 am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.



IN

# Uncompahgre
## Resource Management Plan



We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name **Daniel**   Last Name **Hunt**   Date **2/26/10**

Mailing Address **PO Box 248**

City **Naturita**   State **Co**   Zip **81422**

E-mail Address: **DBH248 @ peoplepc.com**

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?   Yes: ☐ e-mail materials only   ☒ e-mail and hard-copy materials   ☐ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)   ☐ Non-profit Organization   ☐ Citizen's Group

☐ Federal, State, or Local Government   ☐ Elected Representative   ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:*
Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☐ Unit 5 ☐ No   *(West Montrose County Naturita)*
*(Refer to map for unit numbers)* **(Yes)**

If you do not live in the planning area, do you live in: ☐ Colorado (west slope)   ☐ Colorado (front range or plains)
☐ Another State (which): _____   ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here?   Months: **4**   Years: **58**

Why do you live here? ☒ Occupation ☒ Family ☒ Proximity to public lands ☒ Recreational Opportunities
☒ Other **Life time resident**

---

**The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.**

---

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

I don't like the idea of you regulating or Changing my Property.

1 A-PI LR

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

OVER ►

BLM_0081226

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

None

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

None

Please provide any additional comments that you have regarding this project.

I don't think you should change anything. It works well now.

2 A-GE

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

 U.S. DEPARTMENT OF THE INTERIOR    **BUREAU OF LAND MANAGEMENT NEWS RELEASE**

**Release Date:** 02/26/10
**Contacts:** Erin Curtis, Public Information Officer, (970) 244-3097

### BLM Uncompahgre Extends Public Scoping for Resource Management Plan Revision

Montrose, CO -- The Bureau of Land Management Uncompahgre Field Office has extended a public scoping period for the revision of its Resource Management Plans (RMP).

The new RMP will provide overall management direction for the next two decades for the almost 700,000 surface acres of public lands and 2 million subsurface acres of federal mineral estate in Mesa, Montrose, Ouray, San Miguel, Gunnison and Delta counties managed by the BLM.

A scoping period that began in January has now been extended through March 29, 2010.

During this first opportunity for public comment, the BLM is asking the public to help identify issues to be addressed in the plan revisions, as well as offer potential solutions. The BLM will use the information it receives during scoping as it prepares the Draft RMP revisions and associated Draft EIS.

"Public involvement is critical to crafting a land use plan that reflects local, regional and national values," said Uncompahgre Field Manager Barb Sharrow. "Scoping is only the first of many instances that we'll seek public input as part of this planning effort."

BLM held six open house meetings in January in local communities to gather comments. The comments received at the open house meetings will also be incorporated into the RMP revision process.

For further information about the planning process, visit the Uncompahgre Field Office Land Use Planning webpage at www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp.html, or contact the project manager, Bruce Krickbaum, at (970) 240-5300.

Comments may be: Mailed to BLM Uncompahgre RMP, 2465 S Townsend Ave, Montrose, CO 81401
Faxed to 1-970-240-5367
Emailed to uformp@blm.gov

The BLM manages more land - 253 million acres - than any other Federal agency. This land, known as the National System of Public Lands, is primarily located in 12 Western states, including Alaska. The Bureau, with a budget of about $1 billion, also administers 700 million acres of sub-surface mineral estate throughout the nation. The BLM's multiple-use mission is to sustain the health and productivity of the public lands for the use and enjoyment of present and future generations. The Bureau accomplishes this by managing such activities as outdoor recreation, livestock grazing, mineral development, and energy production, and by conserving natural, historical, cultural, and other resources on public lands.

--BLM--

2465 South Townsend Avenue    Montrose, CO 81401
Last updated: 02-26-2010

BLM_0081228

Received

FEB 2 6 2010

Uncompahgre Field Office



IN

## Uncompahgre
## Resource Management Plan


NATIONAL SYSTEM OF PUBLIC LANDS

We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name _Jody_     Last Name _Weimer_     Date _____

Mailing Address _Box 630_

City _Nucla_     State _Co_     Zip _81424_

E-mail Address: _____

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?     Yes: ☐ e-mail materials only ☐ e-mail and hard-copy materials     ☐ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☑ Individual (no affiliation)     ☐ Non-profit Organization     ☐ Citizen's Group

☐ Federal, State, or Local Government     ☐ Elected Representative     ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _Weimer Ranches LLLC_

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:*

Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☐ Unit 5 ☐ No
*(Refer to map for unit numbers)*

If you do not live in the planning area, do you live in: ☐ Colorado (west slope) ☐ Colorado (front range or plains)
☐ Another State (which): _____ ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here? Months: _____ Years: _Ranch Life_

Why do you live here? ☐ Occupation ☐ Family ☐ Proximity to public lands ☐ Recreational Opportunities
☐ Other _Ranch Life 1897 History_

> *The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

1 A-PI WSR

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

Weimer Ranches (5 generations) living a quality life by the operation of cattle grazing!! The Wild River committment is rediculous! Leave this the way it has been done historically why all the changes now! Forget this thought now!) I object to this Wild River plan.

Jody C Weimer

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

OVER ▶

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

Please provide any additional comments that you have regarding this project.

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

BLM_0081230

IN

## Drew Vankat

**From:** ernieetch@aol.com
**Sent:** Saturday, February 27, 2010 1:57 AM
**To:** UFORMP@blm.gov
**Subject:** Comments on RMP Revision

**1 A-PI LG**

My name is Ernie Etchart, I'm a rancher from 58751 Loesch Rd. in Montrose, County CO. and thank you for the opportunity to comment.

My family has a ranch within the planning area Unit 3 in which we also have grazing allotments for sheep. We have lived and worked in this area for more than 50 years. The allotments we operate or graze are as follows:

Dave Wood, Shavano Mesa, Cushman, Big Sandy Wash and Canal allotments

I would like to be involved in the RMP process to make certain that livestock grazing continues in the same manner within the Planning Area with no net loss of AUM's or livestock numbers. I also want to encourage that the use of grazing allotments continue to have the main emphasis for the units within the planning area. My family uses the grazing allotments to augment for a forage base. Without these grazing permits we would not have enough forage for our livestock and would be forced to sell our private ranch property, probably to development for homes. Grazing allotments help maintain our lands for not only for our own operational needs but also open spaces for wildlife and open space that people seem to have high esteem for. Livestock are also a very important economic base for Montrose/Delta/San Miguel counties.

**2 A-PI LG**   **3 A-PI LG**   **4 A-PI LG**

The overall land health standards of grazing allotments within the Planning Area are of an upward trend. I believe that ranchers and range technicians have worked well together over the years to maintain these lands. Grazing has many benefits to rangelands by providing anything from better seed germination to increase plant vigor.

**5 A-PI LG**

Again, I ask that grazing remains as the major emphasis for the Plan. Area, with no net loss of AUMs. I also don't want to see any more improved recreation outside the existing NCA areas. Special land designations lower the quality of habitat not only for livestock, but wildlife as well. It also takes away flexibility of management for any lands. We also have 2 NCA areas that provide that improved recreational opportunity for people that desire such.

**6 A-PI LG**   **7 A-PI SDA**

I would encourage the use of land treatments for management of wildfires and to increase habitat for wildlife and livestock. There are many areas within the Plan. Area that could benefit from Pinyon/Juniper control ect. Of course any treatment would have to be evaluated upon individual merits of each treatment.

**8 A-PI FM**

I have concerns with gas pipeline and powerline right of ways and the surface disturbance that it causes. Many of these right of ways are not properly rehabilitated and need further work done on them as far as reseeding and weed control is concerned.

**9 A-PI LR**

Many of the lands within the Plan. Area were County dumps and have not been properly cleaned up and rehabilitated. I would like to see these areas get addressed. Some people continue to dump trash, animal carcasses ect. on these lands that I would like to address through the revision process.

**10 A-PI PH**

I would like to further participate in the Plan. Revision. Please keep me imformed on the process.

Thank You
Sincerely,

Ernie Etchart
58751 Loesch Road
Montrose, Colorado 81403

970-249-0686

3/11/2010

BLM_0081231

IN

Randolph and Jennifer Parker
810A Tabernash Lane
Ridgway, Colorado 81432
March 28, 2010

*Received*
*MAR 3 0 2010*
*...ngre Field Office*

BLM Uncompahgre RMP
2465 S. Townsend Avenue
Montrose, Colorado 81401

Dear RMP Planning Team:

1 A-PI REC

We have lived in Ridgway for 4 years and have owned property in San Miguel County for 20 years. Our preferred form of recreation is hiking. What we care most about on Uncompahgre BLM lands is the quiet and undisturbed enjoyment of these lands. It is our hope that you intend to protect the backcountry silence and solitude, large blocks of undisturbed natural habitat together with the integrity of the ecosystems and wildlife habitat.

We are confident that you will have as you highest priority these values over the high impact and damaging effects of motorized recreation, new road and motorized trail development together with extractive uses of uranium, coal mining and logging. Regarding motorized recreation, we hope that you will restrict or close ORV use in sensitive habitat, sensitive watersheds, big game winter range, remote areas that cannot easily be enforced.

We believe that we can count on you to protect these precious areas and experiences and resist the temptation to extend the use of the wilderness to ORV use. We thank you for your sincere consideration of our concerns.

2 A-PI REC

Sincerely,

Randolph Parker

Jennifer Parker

BLM_0081233

BARBARA SHARROW, U.F.M.   [IN]                    FEB. 24, 2010

U.S.B.L.M,

MONTROSE FIELD OFFICE

2465 SOUTH TOWNSEND AVE.

MONTROSE, CO. 81401

RECEIVED
MAR 1 2010
BY:_____

Ms, SHARROW,

    With much difficulty, I obtained a copy of the Draft [1 A-PI DE-WSR]
for the W.S.R. Eligibility report for the BLM. U.P.A.
I am quite surprised to find Escalante Creek as one
of the proposed segments [Escalante Creek Segment 1; Segment
2; and the Dry Fork of the Escalante] segment 2].
    As a private land owner and rancher/farmer with property
on both sides of the creek in Segment 1 (one), I feel I need
to comment on the Report. Having read the report
thoroughly, I am dismayed by the ambiguous language which
gives the BLM/Dept. of Interior the say over management,
use and development of ½ mile corridor of land through
privately owned sections of the Creek. [2 A-PI WSR]
I have also read comments regarding the Draft W.S.R.
Eligibility Report submitted by Marc Stimpert, on behalf
of Richard Miller and The Escalante Ranch. I find

his comments and reservations to be sound reasons for removing Escalante Creek for eligibility status

Further, I have a real tangible problem with the

**3 A-PI WSR**

encouragement of kayakers through private land sections (particularily mine!). I have no problem with people running the creek down through the public land sections, including the Potholes. However, for the past 8 years, I have had an increasing problem each Spring (high CFMS) with kayakers who show no regard or respect for private property or conservation consciousness. They have driven around my posted gates; cut fences and destroyed pristine areas on and around my private land. They cut ugly tire marks through the cryptogamic soil that do not come back readily as they do when grazed on & tracked by cattle, sheep & wildlife. The kayakers who "put in" between my southern boundary and the Escalante forks consistently defecate & leave toilet paper along my portion of the creek. There is no management of this recreational use, even in the Public land portions.

**4 A-PI WSR**

For these reasons and due to private land and water owner-ship, I (and the other private land owners) would like to see at least the private sections of Escalante Creek removed from Eligibility status for the WSR

sincerely

Dave ABBOTT
P.O. BOX 912
DELTA, CO. 81416

(2)

BLM_0081235

IN

RECEIVED
MAR 1 2010
BY:

To Whom it may concern

1 A-PI DE-WSR

My name is Nick McCracken and
I work for the Escalante Ranch. I Strongly
oppose any wild and scenic river along the
Escalante Creek and the Gunnison River. I also
am very curios what kind of Idiot thinks of
this kind of stuff. I come from a entire Coloraden
family. As far as I am cornscerned who ever
came up with this Idea needs to go back to
wherever they came from and let Colorado be
Colorado.

Sincerly,

Nicholas McCracken

BLM_0081236

IN

To Whom it may concern

RECEIVED
MAR 1 2010
BY:

1 A-PI WSR

My name is Tomas Torres and I've worked at Escalante ranch for long time. I live at the Bridgeport house near the river. I'm writing today because I'm concerned about the law passing that would make the Gunnison river wild. This would negatively impact Escalante ranch and everyone who works there. Several homes would have to be removed and several jobs would be lost. All so people floating down the river don't have to look at the homes of people who work for the ranch. That doesn't sound right to me. Some places along the river are used for agriculture and ranching and have been for a long time. And to try to change that is not very realistic. In my opinion, the Gunnison river is wild enough.

Respectfully yours

*Thomas S Torres*

BLM_0081237

# MEMORANDUM OF UNDERSTANDING
# BETWEEN
# THE TOWN OF NUCLA, COLORADO
# AND THE
# BUREAU OF LAND MANAGEMENT
# UNCOMPAHGRE FIELD OFFICE

## I.  INTRODUCTION

The Bureau of Land Management (BLM), Uncompahgre Field Office is undertaking a major revision of their Resource Management Plan (RMP), a process that began in the spring of 2009. The BLM anticipates that the RMP revision and associated environmental impact statement (EIS) will take approximately four years to complete.

The Town of Nucla is eligible to become a Cooperating Agency for the duration of the RMP/EIS process.  Cooperating Agency status provides an opportunity for the BLM, the Town of Nucla and other Cooperating Agencies to work together to enhance the BLM's planning efforts.

This Memorandum of Understanding (MOU) sets forth roles and responsibilities for the Cooperating Agencies as agreed upon between the Town of Nucla and the Uncompahgre Field Office (UFO) for the purposes of collaborative planning and production of the RMP and EIS.

## II.  PURPOSE

In carrying forth its responsibilities and mandates under the National Environmental Policy Act and Council of Environmental Quality regulations at 40 Code of Federal Regulations (CFR), Part 1500 and the Federal Land Policy and Management Act (as amended) CFR Part 1600, the BLM recognizes a compelling need to ensure that the interests of the Town of Nucla are accounted for, and that they are meaningfully engaged in the above stated resource management planning effort and associated EIS.

As such, the Town of Nucla has requested, and the BLM has agreed to grant, Cooperating Agency Status pursuant to 40CFR 1501.6, 1501.2, and 1501.8.  Under the regulations, the BLM recognizes that the Town of Nucla has special expertise as it relates to various aspects of the planning effort described above.

BLM_0081238

## III. AGENCY DESIGNATIONS

Appendix A specifies Agency Representatives. Each participating entity will designate one primary representative to attend meetings and to act as a point of contact to ensure coordination and exchange information between the Town of Nucla and the BLM during the planning process. An entity may change its representative at any time by providing written notice to the other party. Cooperating Agencies may also involve "in-house" specialists in discussions, when a specific topic warrants such expertise.

## IV. AUTHORITIES FOR AGREEMENT

Authority for the BLM and the Town of Nucla to participate in this agreement is provided by the National Environmental Policy Act, 42 USC 4321 et seq. and 40 CFR 1501.6 – Cooperating Agencies, 1506.2 – Elimination of Duplication with State and Local Procedures, and 1508.5 – Cooperating Agency (CA).

Additional authority comes from the Federal Land Policy Management Act, 43 USC 1712 et seq., which mandates coordination of BLM planning and management efforts with the programs of state and local governments which may be affected by those planning actions.

## V. ROLES AND RESPONSIBILITIES

### A. RESPONSIBILITIES OF THE BUREAU OF LAND MANAGEMENT, UFO

The BLM UFO is responsible for the following:

i. To prepare and ensure the content and quality of the Draft RMP/Draft EIS, the Proposed RMP/Final EIS, and the Record of Decision/Approved RMP.

ii. To provide the Town of Nucla with meaningful opportunities for participation, including involvement in:

- identifying issues and concerns of relevance to the planning effort,

- identifying or providing data that is suitable, available and relevant to the planning effort,

- reviewing and commenting on draft sections of the EIS for which the Town of Nucla provided input due to its special expertise.

iii. To consider and incorporate information and comments provided by the Town of Nucla into EIS documents to the extent possible and where appropriate.

iv. To make all final determinations regarding the content of the EIS document.

BLM_0081239

B. RESPONSIBILITIES OF THE TOWN OF NUCLA

The Town of Nucla has special expertise in a number of areas related to planning, and as such, is responsible for the following:

i. Along with other involved Cooperating Agencies, to participate in the planning process to the fullest extent possible.

ii. To assist the BLM with the identification of issues and concerns to be addressed through the planning effort.

iii. To provide data of potential relevance and value to the RMP revision/EIS effort. This data may include but is not limited to the following:

- approved the Town of Nucla programs, plans and policies potentially affected by the RMP,

- information regarding planning area resources and current and proposed uses and management actions,

- environmental analyses on issues for which the Town of Nucla has special expertise,

- socio-economic data such as demographics, activities and values.

iv. To review and provide comments during specified review periods on preliminary baseline and other technical reports for which the Town of Nucla has contributed data or other pertinent information.

v. To review and provide comments during specified review periods concerning the following sections of the preliminary Draft EIS:

- preliminary range of alternatives to be considered in detail,

- relevant portions of the "Affected Environment" section (including the socio-economic portion),

- relevant portions of the "Environmental Consequences" section,

- relevant portions of the "Consultation and Coordination" section, including information on consistency reviews.

vi. During public review periods for the Draft EIS, to provide the BLM with a consolidated comprehensive review of the Draft EIS.

vii. To assist the BLM with analyzing and reviewing public comments and data, and with the development of the Proposed RMP/Final EIS.

BLM_0081240

## VI.   FUNDING

Each entity agrees to fund its own expenses associated with this planning process.

## VII.   JOINT RESPONSIBILITIES

The parties agree to use their best efforts to meet the timeframes established in the agreement, to work cooperatively, and to resolve differences as quickly as possible.

## VIII.   IMPLEMENTATION, AMENDMENT AND TERMINATION

This agreement becomes effective upon signature by all parties, and may be subsequently amended through written agreement of all signatories.  The parties agree to jointly develop a framework for information exchange and feedback within 60 days of the signing of this agreement.

The Town of Nucla or the BLM may terminate this agreement by providing written notice of termination to the other party.  If not terminated sooner, this agreement will end when the Notice of Availability for the Final EIS is published in the Federal Register.

Nothing in this agreement will abridge or amend the authorities and responsibilities of the Town of Nucla or the BLM or any other party on any matter under their respective jurisdictions.

Nothing in this agreement may be construed to require either the Town of Nucla or the BLM to obligate or pay funds or in any other way take action in violation of the Anti-Deficiency Act (31 USC 1341) or any State or County law or ordinance.

## IX.   SOVEREIGN IMMUNITY

Neither signatory waives their sovereign immunity by entering into this Memorandum of Understanding.  Each fully retains all immunities and defenses provided by law with respect to any actions based on or occurring as a result of this agreement.

BLM_0081241

## X.   SIGNATURES

The parties hereto have executed this Memorandum of Understanding as of the dates shown below.

BUREAU OF LAND MANAGEMENT

_Barbara L. Sharrow_                     3-1-10

Barbara L. Sharrow, Field Manager        Date
Uncompahgre Field Office, BLM

TOWN OF NUCLA, COLORADO

_Dawna M. Morris_                     2/24/2010

Dawna Morris, Mayor                   Date
Town of Nucla

BLM_0081242

## APPENDIX A – AGENCY REPRESENTATIVE

REPRESENTING:          **TOWN OF NUCLA, COLORADO**

Jeff Sonnenberg
County Administrator
Town of Nucla
Post Office Box 219
Nucla, Colorado  81424
Phone: (970) 864-7351
Fax:
Email: nucla1@fone.net

REPRESENTING:          **BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE**

Bruce Krickbaum
RMP Project Manager
Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
Phone: (970) 240-5384
Fax: (970) 240-5367
Email: bruce_krickbaum@blm.gov

BLM_0081243



# United States Department of the Interior
### BUREAU OF LAND MANAGEMENT
**Uncompahgre Field Office**
**2465 S. Townsend Avenue**
**Montrose, Colorado 81401**
**www.blm.gov**



IN REPLY REFER TO:
1610 (CO-150)

FEB 2 6 2010

February 17, 2010

Dawna Morris, Mayor
Town of Nucla
Post Office Box 219
Nucla, Colorado 81424

Dear Ms. Morris:

The Bureau of Land Management (BLM), Uncompahgre Field Office (UFO) is in the beginning stages of revising the Uncompahgre Resource Management Plan (RMP) and associated environmental impact statement. We anticipate that this effort will take approximately four years to complete.

In the spirit of agency consultation and cooperation, the BLM extended, and the Town of Nucla accepted, an invitation to serve as a Cooperating Agency for the duration of the land use planning process. The attached Memorandum of Understanding (MOU) outlines the relationship and respective roles of our organizations during the RMP effort.

The role of the Town of Nucla will include attending public meetings, as well as reviewing and commenting on plan documents. There is a time requirement associated with these reviews. In addition, the Town of Nucla will have an obligation to contribute staff time to an estimated twelve to twenty meetings, assist with analysis for which you have particular expertise, and fund your own participation.

Please read over the MOU, sign page 5, and return the original signed document to the UFO for my signature. We will then mail you a signed copy for your records. If you have not already designated an Agency Representative to attend meetings and serve as a point of contact for the Town of Nucla during the planning effort, please provide the name and contact information for this key individual on page 6.

2

If you have questions regarding cooperating agency status or would like more information regarding the land use planning process, do not hesitate to call RMP Project Manager Bruce Krickbaum at (970) 240-5384 or email him at bruce_krickbaum@blm.gov.

Thank you for your interest in the Uncompahgre planning effort and the administration of our public lands. We look forward to working with the Town of Nucla and to your contributions toward producing an RMP that will effectively guide management of BLM lands within the Uncompahgre planning area for the next twenty to thirty years.

Sincerely,

Barbara L. Sharrow
Field Manager

Enclosure
    1 – Memorandum of Understanding (6 pp)



**IN**

# Uncompahgre
## Resource Management Plan

We encourage you to provide your comments by filling out and submitting this comment form by March 29 2010. Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name _Sally & Henry_     Last Name _Kichelmann_     Date _3-2-2010_

Mailing Address _PO Box 656_

City _Nucla_     State _CO_     Zip _81424_

E-mail Address: _woodsy8888@yahoo.com & Kichelmann007@yahoo.com_

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?     Yes: ☐ e-mail materials only  ☒ e-mail and hard-copy materials     ☐ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)     ☐ Non-profit Organization     ☐ Citizen's Group

☐ Federal, State, or Local Government     ☐ Elected Representative     ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _Citizens' for Small Government_

Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:

Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☒ Unit 5 ☐ No
(Refer to map for unit numbers)

If you do not live in the planning area, do you live in: ☐ Colorado (west slope) ☐ Colorado (front range or plains)
     ☐ Another State (which): _____     ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here? Months: _____ Years: _70_

Why do you live here? ☐ Occupation ☐ Family ☐ Proximity to public lands ☐ Recreational Opportunities
     ☐ Other _I was born here_

---

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

---



1 A-PI LG
2 A-PI WR
3 A-PI REC

...s do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

_We want to keep all our grazing rights, water rights, hunting rights and any other rights we were born with in this great Country known as "The Land of the Free"_

_Please leave our Rivers as they are._

...ents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be ... submissions from organizations, and businesses, and from individuals identifying themselves as representatives or officials of organizations or ... that in their entirety.

4 A-PI WSR

OVER ▶

keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

*Exactly as the Good Lord meant it to look like.*

5 A-GE

keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

*As few as possible*

6 A-GE

7 A-PI WSR

keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

*River rafters & hunters are fine along with grazing & farming.*

Please provide any additional comments that you have regarding this project.

*we all need to be able to use the rivers as intended. Drinking, flushing and irrigation*

8 A-PI WSR

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

GRAND JUNCTION CO
PM
05 MAR
2010

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

RECEIVED
MAR 8 2010
BY:

RECEIVED
MAR 8 2010
BY:

U.S. DEPARTMENT OF THE INTERIOR **BUREAU OF LAND MANAGEMENT NEWS RELEASE**

**Release Date:** 03/02/10
**Contacts:** Erin Curtis, Public Information Officer, (970) 244-3097

### BLM Uncompahgre Extends Public Scoping for Resource Management Plan Revision

Montrose, CO -- The Bureau of Land Management Uncompahgre Field Office has extended a public scoping period for the revision of its Resource Management Plans (RMP).

The new RMP will provide overall management direction for the next two decades for the almost 700,000 surface acres of public lands and 2 million subsurface acres of federal mineral estate in Mesa, Montrose, Ouray, San Miguel, Gunnison and Delta counties managed by the BLM.

A scoping period that began in January has now been extended through March 29, 2010.

During this first opportunity for public comment, the BLM is asking the public to help identify issues to be addressed in the plan revisions, as well as offer potential solutions. The BLM will use the information it receives during scoping as it prepares the Draft RMP revisions and associated Draft EIS.

"Public involvement is critical to crafting a land use plan that reflects local, regional and national values," said Uncompahgre Field Manager Barb Sharrow. "Scoping is only the first of many instances that we'll seek public input as part of this planning effort."

BLM held six open house meetings in January in local communities to gather comments. The comments received at the open house meetings will also be incorporated into the RMP revision process.

For further information about the planning process, visit the Uncompahgre Field Office Land Use Planning webpage at www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp.html, or contact the project manager, Bruce Krickbaum, at (970) 240-5300.

Comments may be: Mailed to BLM Uncompahgre RMP, 2465 S Townsend Ave, Montrose, CO 81401
Faxed to 1-970-240-5367
Emailed to uformp@blm.gov

The BLM manages more land - 253 million acres - than any other Federal agency. This land, known as the National System of Public Lands, is primarily located in 12 Western states, including Alaska. The Bureau, with a budget of about $1 billion, also administers 700 million acres of sub-surface mineral estate throughout the nation. The BLM's multiple-use mission is to sustain the health and productivity of the public lands for the use and enjoyment of present and future generations. The Bureau accomplishes this by managing such activities as outdoor recreation, livestock grazing, mineral development, and energy production, and by conserving natural, historical, cultural, and other resources on public lands.

--BLM--

2465 South Townsend Avenue    Montrose, CO 81401

USA.GOV | No Fear Act | DOI | Disclaimer | About BLM | Notices | Get Adobe Reader®
Privacy Policy | FOIA | Kids Policy | Contact Us | Accessibility | Site Map | Home

**Drew Vankat**

| | |
|---|---|
| **From:** | Gordon Reichard [greichard@tellmed.org] |
| **Sent:** | Tuesday, March 02, 2010 1:31 PM |
| **To:** | uformp@blm.gov |
| **Cc:** | bill harris; Rodney Fitzhugh; Rich Durnan; Dan Rider; Randy C Peak to Peak shop |
| **Subject:** | RE: BLM Uncompahgre RMP; Extension to Comment Period |

Bruce,
Is it possible to have a link to the Federal Registry so we can easily find and review
the RMP?

Thank you,
gordon

-----Original Message-----
From: bruce_krickbaum@blm.gov [mailto:bruce_krickbaum@blm.gov] On Behalf Of
uformp@blm.gov
Sent: Tuesday, March 02, 2010 12:47 PM
Subject: BLM Uncompahgre RMP; Extension to Comment Period


Dear Interested Party:

The deadline to submit comments during the scoping period for the BLM, Uncompahgre
Resource Management Plan (RMP) Revision has been extended. All comments must now be
received by the end of Monday, March 29, 2010.

The Notice of Intent, which officially kicks of a formal 30-day scoping comment  period,
was published in the Federal Register on Thursday,
February 25, 2010.  All comments received before February 25, 2010,
will
still be considered.

The new RMP will provide overall management direction for the next two decades for the
almost 700,000 surface acres of public lands and two million subsurface acres of federal
mineral estate in Delta, Gunnison, Mesa, Montrose, Ouray, and San Miguel counties managed
by the BLM.
During this first opportunity for public comment, the BLM is asking the public to help
identify issues to be addressed in the plan revisions, as well as offer potential
solutions. The BLM will use the information it receives during scoping as it prepares the
Draft RMP revision and associated Draft Environmental Impact Statement.

Comments may be:

1.      Mailed to: BLM Uncompahgre RMP, Attn: Bruce Krickbaum,
         2465 South Townsend Avenue, Montrose, CO 81401

2.      Faxed to 1-970-240-5367

3.      Emailed to uformp@blm.gov

For further information about the planning process, visit the Uncompahgre Field Office
Land Use Planning webpage at www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp.html, or contact
the projectmanager, Bruce Krickbaum, at (970) 240-5300.



_____   Information from ESET NOD32 Antivirus, version of virus signature database
4910 (20100302) _____

BLM_0081249

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

_____  Information from ESET NOD32 Antivirus, version of virus signature database 4910 (20100302)  _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

2

BLM_0081250

## Drew Vankat

**From:** Tom Cavanaugh [geocav@comcast.net]
**Sent:** Wednesday, March 03, 2010 1:30 PM
**To:** uformp@blm.gov
**Subject:** please inform me of all UFO-RMP meetings, doc releases, etc.

UFORMP,

Please keep me informed about activities via my email address below.  As a full service consulting firm, BCI is interested in all aspects of the RMP process as it may relate to our participation or impacts to our clients.

Thank you,

Tom
*E. Thomas Cavanaugh, P.G., C.P.G.*
Rocky Mountain Regional Manager
**BCI Engineers & Scientists, Inc.**
#466, Unit E
12650 W. 64th Avenue
Arvada, CO  80004
Phone:  303-726-1511
Fax:  720-379-4083
tcavanaugh@bcieng.com
www.bcieng.com

- Name (and/or organization)
- Address
- Phone number
- Email address
- Specific area(s) of interest (such as rangeland health, recreation, hydrology, etc.)
- Type(s) of notifications (such as news of upcoming meetings, release of planning documents, etc.)
- Acceptable formats for corresponding with you. (Email is the preferred format in order to control costs and conserve paper.)

3/11/2010

BLM_0081251

IN

## Drew Vankat

**From:**   Brian Hoefling [behoefling@gmail.com]
**Sent:**   Wednesday, March 03, 2010 9:25 AM
**To:**   uformp@blm.gov; behoefling@gmail.com
**Subject:** RMP for the Uncompahgre Field Office

Greetings,

I was informed that you have extended the comment period for the RMP revision you are working on. I also understand that this first step is more visionary in scope than specific. If I am wrong could you let me know prior to the deadline so that I can include specific comments that include cause and effect.

**1 A-PI WSR**

This correspondence is being sent for my comment for the RMP revision. This area regards the Doloras river its tributaries and riparian zones and the San Miguel river its tributaries and riparian zones. I live in Norwood Colorado and am an avid outdoorsman. I am a member of an unofficial organization called the Norwood Navy. There are about 100 or so of us around. For me specifically I kayak both the San Miguel and Doloras rivers many times a year. The San Miguel river from Norwood bridge to just above Pinyon bridge is currently being petitioned for a new wilderness area. As you know the area is mostly roadless and the experience is of isolation and seclusion. I hope you consider this proposal in the RMP revision process. I also understand that Congress designates wilderness solely but it may be a good idea to include in the new RMP as a study area for wilderness. The second area is the Doloras river. This river may qualify as a wild and scenic river. I hope you consider this as a possibility.

**2 A-PI WSR**

To me, oil and gas surface occupancy does not fit the character of these river systems. Oil and gas surface operations are industrial in nature and these rivers currently do not exhibit those traits. New exploration would likely reduce the current character of the river and thus likely change the experience one would have on both rivers.

**3 A-PI REC**

Recreation around Norwood Colorado is increasing very quickly. I think that when the U.S. census comes out you will find that there has been a demographic shift in the population. It has become much younger and what they do for recreation has changed somewhat in the last ten years, this population trend should be a consideration to help guide the overall vision of the RMP. Both winter and summer recreation is extensive and growing. As for the rivers they are very special attributes to the area and draw traffic through the area on the West End of San Miguel and Montrose Counties. Change is inevitable but should be managed. Do you have specific data on recreational uses along each river systems i.e. trends, types, and quantities of uses? Do they incude rafting, kayaking, hiking, mt. biking, rock climbing, motorized use, swimming, camping, or fishing? These are the uses I see everytime I go out to the rivers.

I personally want to see the RMP area on the West End stay a more recreational destination. Any opportunities that would expand this recreational character would be beneficial to the local towns.

**4 A-PI REC**

Also, there are some organizations you may want to include in your scoping list if you already do not.

They are the local whitewater association: I believe Cari is the president.

Cari Mackey

3/11/2010

BLM_0081252

Jagged Edge Telluride

Store Manager

ph: (970) 728-9307

cell: (970) 596-0662

fax: (970) 728-9072

223 E. Colorado Ave / PO Box 2256

Telluride, CO 81435

Norwood Nordic Association.  I do not know the address.  Perhaps the town of Norwood knows.

Copmoba:

**COPMOBA**
**P.O. Box 4602**
**Grand Junction, CO 81502**

(970) 244-8877

Thank you for the opportunity to comment.

Sincerely,

Brian Hoefling

3/11/2010

BLM_0081253

IN

## Drew Vankat

**From:** constantine37 tds.net [constantine37@tds.net]
**Sent:** Thursday, March 04, 2010 9:23 AM
**To:** uformp@blm.gov
**Subject:** Planning

To the BLM office.I think that we as western americans would like to keep open the lands that are open for us and everybody that wants to visit our lands and kept open to all people.No more wilderness.Thank you Con Hirschfeld Paonia Co. 81428  Constantine37@ tds.net

1 A-PI WSA

3/11/2010

BLM_0081254

## Zoe Ghali

| | |
|---|---|
| **From:** | Drew Vankat |
| **Sent:** | Friday, March 05, 2010 4:12 PM |
| **To:** | Zoe Ghali |
| **Subject:** | FW: Economics summary |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Purple |

**Drew Vankat**
EMPSi Environmental Management and Planning Solutions, Inc.
3775 Iris Avenue, Suite 1A
Boulder, CO 80301
tel: 303-447-7160    fax: 866-625-0707

**www.EMPSi.com**    *Bringing clarity to the complex* ™

*GSA Contract GS10F-0412S*    *HUBZone-certified*

Denver     Reno     San Francisco     Washington, DC

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.

**From:** Rosalind B McClellan [mailto:Mcclelr@Colorado.EDU]
**Sent:** Friday, March 05, 2010 1:26 PM
**To:** Drew Vankat
**Subject:** Economics summary

Hello Drew,
In case this helpful, here is a summary of studies about the economic benefits that Wilderness/conservation designations on BLM lands can have for local communities:

3/26/2010

BLM_0081255

<u>Economic benefits</u> – The recreation opportunities provided by wilderness quality lands yield direct economic benefits to local communities. According to the U.S. Fish & Wildlife Service, in 2006 State residents and non-residents spent $3 billion on wildlife recreation in Colorado. (USFWS 2006, <u>*National Survey of Hunting, Fishing and Wildlife-associated Recreation*</u> - http://www.census.gov/prod/2008pubs/fhw06-co.pdf). In addition, local communities that protect wildlands reap measurable benefits in terms of employment and personal income. For instance, a report by the Sonoran Institute (Sonoran Institute 2004, <u>*Prosperity in the 21st Century West -The Role of Protected Public Lands*</u>) found that:

> Protected lands have the greatest influence on economic growth in rural isolated counties that lack easy access to larger markets. From 1970 to 2000, real per capita income in isolated rural counties with protected land grew more than 60 percent faster than isolated counties without any protected lands.

These findings confirm earlier research, showing that wilderness is in fact beneficial for local economies. Residents of counties with wilderness cite wilderness as an important reason why they moved to the county, and long-term residents cite it as a reason they stay. Recent survey results also indicate that many firms decide to locate or stay in the West because of scenic amenities and wildlife-based recreation, both of which are strongly supported by wilderness areas. (Morton 2000, <u>*Wilderness: The Silent Engine of the West's Economy*</u>). Other "non-market" economic values arise from the ability of wildlands to contribute to recreation and recreation-related jobs, scientific research, scenic viewsheds, biodiversity conservation, and watershed protection. (Morton 1999, <u>*The Economic Benefits of Wilderness: Theory and Practice*</u>; Loomis 2000, <u>*Economic Values of Wilderness Recreation and Passive Use: What We Think We Know at the Turn of the 21st Century*</u>). All of these economic benefits are dependent upon adequate protection of the wilderness characteristics of the lands.


Just as a personal observation, it seems that all user-groups, motorized as well as nonmotorized, express a preference for "uncrowded" solitude and remote backcountry experience, the kind of experience referred to in the studies above.

The UFO BLM's dilemma is how to retain this in the face of rising demand. More crowding could diminish the economic attraction of its lands, and the related economic benefits to the community.

Some BLM field offices, such as Glenwood Springs, are tackling this dilemma face on, with creative management solutions, including targeting local recreationists rather than the statewide or national recreational community as the user-group being managed for.

Hope you find the materials cited above useful.

I will send you one more thing next.

Roz

3/26/2010

BLM_0081256

IN

March 1, 2010

Dear Bruce & fellow BLM employees,

My guess is that most of the correspondence you receive is not handwritten, but I wanted to communicate with you simply — from my heart and personal experience.

I understand the far-reaching implications of the upcoming Resource Management Plan, not only for the residents who live in the affected counties, but for the land & water & all that all life shares. I was born on the plains of eastern Colorado and grew up watching my grandfather & others who worked with the land. Then I moved to the western slope at age 25 because of the health & beauty of the environment, and also because of the strong tradition of community. I believe that the simple, healthy lifestyle we enjoy on the western slope is precious, and I notice that our children grow up with a sense of trust and an understanding of their role in the web of life that is quickly disappearing in many parts of our country & our world.

Several years ago this community in Delta County stood together to protest the threat of gas well development, and ultimately all our voices were ignored when the Colorado Oil & Gas Commission threatened to sue Delta County's Commissioners.

I am deeply concerned about the procedures and chemicals that are being used in methane gas extraction. The negative impacts on land, air, and water under current regulations are irresponsible and unacceptable. Before further drilling leases are issued, it is vital for us — specifically, our government — to address the well-documented damages that continue to accumulate as a result of corporate indifference and dominance.

I'm also concerned about the vulnerability of roadless areas, and encourage you to limit expansion of trails for off-road vehicles, and any additional roads in public lands.

In general, I support designations of "wild and scenic" to those stretches of water that warrant it and would hope that the few cases of private ownership of adjacent land that would be negatively affected could be dealt with individually.

In general, I feel that our public lands are a precious resource, to be stewarded with the goal to maintain healthy natural environments for the plants and animals (including humans) who live and visit there.

Thank you for your efforts and consideration.

Sincerely,

Nancy Franklin

Uncompahgre Field Office

MAR 5 2010

Received

IN

## Drew Vankat

**From:** Brandon Siegfried [brandons@bresnan.net]
**Sent:** Friday, March 05, 2010 8:41 AM
**To:** uformp@blm.gov
**Subject:** New RMP for Western Colorado

1 A-PI TM

DEAR BLM, I would like to see more ATV access and trails versus the current assault on motorized access on public lands.  In the past 10 years you have only closed accessed during a time when more and more people are starting to enjoy the use of ATV's on our PUBLIC lands.  It is my opinion that the only groups that enjoy more access to our public lands are Cattle and Gas Rigs.  I've see the damage that is done by both and it far out ways anything I've seen by ATV riders.

2 A-PI TM

**I can't believe you actually want to limit pedal bikes to designated trails as well.**  Where will this madness end. Here is a question- How many new trails have been opened in the past 10 years vs how many (undesignated and designated) have been closed.

3 A-PI TM

I rarely use my 4 wheeler while hunting anymore, most of the trails in my area have been closed because they were not "designated".  The trails had been there for 20-30 years but they did not have the magic number on someone's map.

4 A-PI TM

In my opinion any established trails should be given a "designated" number -- not closed because it does not have a number.  Give it  number, give us more access, give us more access just like you give cattle and gas rigs. My favorite is when I watch gas rigs drive down perfectly good gravel roads on public land and the sign says that I have to walk or ride a horse on that very same gravel road.  That scenario shows me the BLM's and National Forests true attitude toward the average American.

5 A-PI TM

I always like to end my emails to the BLM with the friendly reminder that  removing cattle from public lands will not affect the price of cattle by 1 cent in our grocery stores and that the noxious weeds are spreading at a rate of 5,000 acres per day.

Regards

6 A-PI LG
7 A-PI WD

Brandon Siegfried
Grand Junction, CO

3/11/2010

BLM_0081259

**Drew Vankat**

| | |
|---|---|
| **From:** | Todd [todd.preston@gmail.com] |
| **Sent:** | Saturday, March 06, 2010 11:38 PM |
| **To:** | uformp@blm.gov |
| **Subject:** | Questions regarding some BLM land |

I was trying to figure out what office I needed but I'm not sure I have the right one or not.   I have questions regrading some BLM along Highway 90 near Naturia?  Can you let me know if I have the right one if not can you let me know what office I need to contact.

Thank you,
Todd Preston

3/11/2010

IN

Received
MAR - 9 2010
Uncompahgre Field Office

P.O. Box 2040
Ridgway, CO 81432
March 7, 2010

BLM Uncompahgre RMP
Attention: Bruce Krickbaum
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Mr. Krickbaum,

We are residents of Ridgway and make extensive use of surrounding BLM lands, primarily for recreational purposes.

We have the following concerns that we feel should be addressed:

**1 A-PI TM**

Off-road vehicle access should be more closely controlled. We have witnessed significant destruction of terrain due to irresponsible ATV travel. The principle of no access to an area unless specifically designated as open should be applied. Areas should be clearly designated and rules enforced as much as possible. This would also prevent intrusion of vehicles into existing roadless regions and reduce the negative effect on wildlife.

**2 A-PI CR**

Because of the numerous archeological sites on the slopes of the Uncompahgre Plateau, care should be taken to preserve these areas. It has been demonstrated that development of trailheads to major points of interest as well as interpretive signage serve to protect them from vandalism. Greater use of the volunteer adoption program already in place would be of considerable advantage.

**3 A-PI ED**

Controls on mineral exploitation, especially pertaining to oil and gas should be rigidly enforced. There should be no possibility of aquifer contamination and sufficient bonding should be mandatory to insure adequate cleanup at the site when it is abandoned. Leases should not be granted in environmentally sensitive regions and the utmost concern should be given to nearby residents.

**4 A-PI LR**

Energy corridors should be planned as narrow as feasible and, when possible, should coincide with existing routes to minimize environmental damage.

Finally, wildlife corridors should be maintained whenever new development of any kind is contemplated. The barriers resulting from new roads and structures can be devastating to migrating animals.

Thank you for considering the above concerns.

**5 A-PI FW**

Sincerely,

Robert and Donna Green

Uncompahgre Field Office
Resource Management Plan Revision
RAC Sub-group Contact List

Shelby Bear
DMEA
PO Box 910
Montrose, CO  81402
(w) 970-240-1238
(h) 970-874-1364
e-mail: sbear@dmea.com

Richard Durnan



Steven D. Weist
Oxbow Mining
3737 Hwy 133
PO Box 535
Somerset, CO  81434
(w) 970-929-6461
(h) 970-856-3777
email: Steve.weist@oxbow.com

Robbie Baird LeValley
Colorado State University Extension
525 Dodge Street
Delta, CO 81416
(w)970-874-2195
(h) 970-872-3280
e-mail: Robbie.levalley@colostate.edu

John Reams
Western Small Miner's Assoc.
31527 Hwy 141
PO Box 644
Naturita, CO  81422
(w) 970-865-2886
(h) 970-865-2397
e-mail: John@reams-construction.com

Walt Blackburn



Bill Day



1/13/2021

IN

**Drew Vankat**

1 A-PI TM

| | |
|---|---|
| **From:** | KENT SUNDGREN [pkswork@yahoo.com] |
| **Sent:** | Monday, March 08, 2010 6:07 PM |
| **To:** | uformp@blm.gov |
| **Subject:** | Comments |

More access for ALL users, not less.
Expand trails, disperse users, improve relations with all users and among all users.
Cutting down on the miles and number of trails is WRONG.

Respectfully,
Kent Sundgren
Citizen/taxpayer/voter.

2 A-PI TM

3/11/2010

BLM_0081263

IN

## Drew Vankat

**From:** Rosemary [rosemary@paonia.com]
**Sent:** Tuesday, March 09, 2010 1:33 PM
**To:** uformp@blm.gov
**Subject:** Comment for BLM UFO RMP

1 A-PI NRED
1 A-PI NRED continued
1 A-PI NRED Continued

**The Issue:** The BLM needs to stiffen its criteria for deciding whether a natural gas operator has successfully drilled a test well on soon to be expiring lease acreage which exhibits "potential production" if hooked up to a gathering line.  If the operator succeeds in passing that test, the BLM will categorize the acreage as "held by production" and will not allow it to expire.

**The Problem: As far as we know, there is no adequate economic dimension to this test.**  A well must be economically productive when tested to be a valid indicator of whether the well would ever be actually hooked up to a pipeline, and therefore allow the acreage to be meaningfully "held by production." This question has serious bite today: A wellhead test volume that was economic two years ago when gas sold for $13/Mcf  is meaningless today when gas is going for $5/Mcf.

**The Answer:** So the BLM must hire in-house personnel qualified of judging whether a given wellhead test volume is meaningfully economic at prevailing gas prices, including the dimension of how quickly the well's initial output would decline. Or at least outsource that task to qualified consultants.

**The Danger from rampant attempts to prove acreage:** Otherwise, opportunistic operators will start to drill great numbers of wells--on leases that are either close to expiration or even where that is far off--to hold acreage because they know they will have an irrelevant, easy test to pass.  They will do that now because drilling costs are very low--the flip side of low sales prices for the product.  They will not have to run the risk of putting the gas on production and wasting it by selling into a cheap market because they have no need to do that. All they need to do is to hold acreage for the future--five, ten years or more down the road-- when hopefully gas prices will be higher.

1 A-PI NRED continued

**The tragedy for forest users and wildlife** is that in this case national forest and wild and scenic BLM land will start to be littered with roads and pads for wells the leaseholder does not intend to use because, realizing the production won't be economic for the forseeable future, he only wants to hold the leases from expiring. Examples: The two Petrox Resources APDs on the Springhouse Park IRA in the Gunnison NF, and the Gunnison Energy proposal for a well on BLM lands on Oak Mesa near Paonia. The operators would have hesitated to ask to drill those wells if they knew they would have to show enough production to make the well(s) economic at prevailing low prices.

Sincerely,
Rosemary Bilchak
Hotchkiss, CO  81419

2 A-PI NRED

3/11/2010

BLM_0081264

ORG

March 9, 2010



Bruce Krickbaum, RMP Project Manager
U.S. Bureau of Land Management
Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Dear Mr. Krickbaum,

Enclosed are our scoping comments on the Uncompaghre Resource Management Plan revision.
Please keep us informed as you progress through all phases of the plan revision.

Sincerely,
Board of Directors
*Citizens For A Healthy Community*

_____
Brad Burritt

_____
Danielle Carré

_____
Daniel Feldman

_____
Mitch Gershten

_____
Ashley Krest

_____
Robyn Morrison

_____
Robin Smith

*Citizens For A Health Community, P.O. Box 291, Hotchkiss, Colorado 81419*
*citizenshealthycommunity@gmail.com*

1 A-GE

*CITIZENS FOR A HEALTHY COMMUNITY*
SCOPING COMMENTS

## Comment 1

*Citizens For A Healthy Community* was informed by Bureau of Land Management (BLM) staff at the January 12 Open House on the Resource Management Plan (RMP) revision, and again in a meeting with BLM staff at the Uncompaghre Field Office (UFO) in Montrose on January 19 that comments made during a public comment period are not considered a vote.

*Citizens For A Healthy Community* can't help but ask why BLM has gone out of its way to make this statement on two occasions? What message are we to take from this statement?

While we understand that public comments are not weighed strictly by a vote tally, this statement raises a red flag to all Americans who have a right to participate in the National Environmental Policy Act (NEPA) process and feel their voices are not only heard, but also reflected in the Record of Decision (ROD).

A particularly egregious example of ignoring the voices of the American public occurred in 2003, when the National Park Service (NPS) prepared an Environmental Impact Statement (EIS) on winter use in Yellowstone National Park. In one of the largest turnouts of public comment in NEPA history, approximately 360,000 people submitted comments on the draft EIS. More than 80 percent of the comments supported an alternative calling for the phase-out of snowmobile use in the park. In the ROD, the NPS ignored public comment and selected an alternative that continued snowmobile use in the park.

This practice of federal agencies seeking public comment and then ignoring the will of the American people makes a mockery of public involvement and violates both the spirit and letter of the law. While marking the 40th anniversary of NEPA on January 4 of this year, President Obama said:

> Today, my Administration will recognize NEPA's enactment by recommitting to environmental quality through open, accountable, and responsible decision making that involves the American public. Our Nation's long-term prosperity depends upon our faithful stewardship of the air we breathe, the water we drink, and the land we sow. With smart, sustainable policies like those established under NEPA, we can meet our responsibility to future generations of Americans, so they may hope to enjoy the beauty and utility of a clean, healthy planet.

The President went on to say:

> I call upon all executive branch agencies to promote public involvement and transparency in their implementation of the National Environmental Policy Act.

Rather than promoting public involvement, BLM's statement that public comments are not considered a vote has just the opposite effect. This remark has the potential for reducing the

1

number of pubic comments because it encourages apathy. After all, why should citizens submit comments if they are not going to be counted? In particular, this statement appears to be aimed at citizens' groups that urge their members to submit similar or identical comments on form letters, postcards, or via email. BLM apparently wants these groups to know in advance that these types of comments do not have any influence on the agency. The message to citizens' groups is loud and clear, "Don't bother inspiring your supporters to participate in the public comment period because the BLM isn't listening."

*Citizens For A Healthy Community* calls on BLM to cease telling the public their comments are not considered a vote and instead ensure the public's voices are not only heard, but also reflected in its decisions.

2 A-PI NRED

## Comment 2

The BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. With regards to oil and gas leasing and permitting, this means the revised RMP should state that BLM is fully committed to ensuring that no domestic, irrigation, surface, or ground water within the UFO shall become contaminated as a result of any leasing, permitting, or unitization decision.

While we are cognizant of the fact that the risk of water contamination from natural gas production is low due to the depth of drilling, any risk to our water supply is unacceptable. Contrary to the claims made by industry, contamination of water supplies by benzene or related chemicals associated with drilling is not just a theoretical risk. According to *Drilling Around the Law*, a recent report published by the Environmental Working Group:

> In the summer of 2008, in one of the few government tests ever conducted on water contamination near natural gas fields, the Bureau of Land Management found benzene in drinking water wells in Sublette County, Wyoming. The researchers did not identify where the contamination came from, but the only likely source in the otherwise rural area is intensive natural gas drilling involving hydraulic fracturing.

The report also states that in 2008:

> Garfield County, Colorado officials released a study that linked methane contamination in local water wells to methane in the same rock layer a mile and a half underground, where gas companies are drilling. The scientists who conducted the study did not determine how the gas reached the wells, but their results provide evidence that gas or other contaminants from drilling can work their way to the surface from deep underground.

If all lands in the Delta County region that are open to federal leasing were developed for natural gas production, the water sources of most private wells and the 25 domestic water suppliers in Delta, Cedaredge, Crawford, Hotchkiss, Paonia, and the county's rural areas would be at risk of contamination.

BLM_0081267

3 A-PI NRED

*Citizens For A Healthy Community* is also concerned that drilling may contaminate irrigation water in our county. For example, leases on Bull Mountain and surrounding Paonia Reservoir run the risk of contaminating the Reservoir, which feeds the Fire Mountain Canal. This Canal is the largest agricultural irrigation canal in the North Fork Valley.

Delta County's ranchers and their 37,000 head of cattle rely on irrigation as do the county's produce farmers. Delta County has 281,000 acres dedicated to agriculture and produces $45 million in agricultural products annually while employing approximately 1,109 people, or 13 percent of the County's workforce. As a fruit growing region alone, Delta County produces:

- 77 percent of the apples in grown in Colorado;

- 71 percent of the cherry's grown in Colorado (nearly half of these orchards are organic);

- 53 percent of the state's pears;

- 21 percent of the peaches grown in Colorado; and

- the second-largest grape crop in Colorado.

Contamination of our irrigation water in any of the dozens of canals in the County would have a devastating affect on the local economy. If BLM is fully committed to ensuring the health of the land and the people who live in Delta County, then it will make protection of our communities' water supply a top priority.

4 A-PI NRED

**Comment 3**

*Citizens for a Healthy Community* believes the best way for BLM to demonstrate it is taking care of the health of the land and the people is to include a statement that the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground on any federally leased, permitted, or unitized area will be prohibited throughout the 20-year implementation period of the revised RMP.

5 A-PI NRED

**Comment 4**

BLM should place a moratorium on all leasing and permits for the development of any oil and gas facility (e.g., well pad, compressor station, pipeline, etc.) until the completion of the revised RMP.

6 A-PI NRED

**Comment 5**

All areas that are open to oil and gas leasing in the current RMP should be closed to oil and gas leasing in the revised RMP.

3

BLM_0081268

This is the wise and prudent course of action to take given the problems that are surfacing around the country regarding the hydraulic fracturing process. The issue of oil and gas leasing can be revisited in 20 years when the next plan revision is written. Hopefully, during the intervening years the industry will have sufficient time to development new technology for extracting natural gas in a manner that no longer threatens human health and the environment. This 20-year period will also provide Congress the opportunity to get up to speed on the issues and pass legislation to protect the community from the irresponsible natural gas development that is taking place.

7 A-PI NRED

### Comment 6

*Citizens for a Healthy Community* requests BLM make a commitment not to renew any leases that expire during the life of the revised RMP.

8 A-pi NRED

### Comment 7

The revised RMP should include language stating that prior to approving any permit for an oil or gas facility (e.g., well pad, compressor station, pipeline, etc.), BLM will conduct a NEPA EA or EIS.

While this comment may seem unnecessary since the 2007 *Surface Operating Standards and Guidelines for Oil and Gas Development* already requires this, it should be noted that there have been times in the past when the UFO has failed to conduct a NEPA review prior to approving drilling permits.

9 A-PI NRED

### Comment 8

*Citizens For A Healthy Community* would like to remind BLM that all future NEPA analyses for proposed oil and gas facilities shall follow the U.S. EPA's recent aggregation policy.

On September 22, 2009, Gina McCarthy, U.S. EPA Assistant Administrator of the Office of Air and Radiation, sent a Memorandum to all EPA Regional Administrators. This memorandum, with the subject heading *Withdrawal of Source Determinations for Oil and Gas Industries,* reversed a 2007 EPA memo that discouraged states from aggregating emissions. By doing so, U.S. EPA recognized that focusing on only one of the three regulatory criteria (adjacent or contiguous) for source determinations was insufficient. The memorandum states:

> Permitting authorities should therefore rely foremost on the three regulatory criteria for identifying emissions activities that belong to the same "building," "structure," "facility," or "installation." These are (1) whether the activities are under the control of the same person (or person under common control); (2) whether the activities are located on one or more contiguous or adjacent properties; and (3) whether the activities belong to the same industrial grouping 40 C.F.R. 52.21(b)(6).

On October 27, 2009, WildEarth Guardians and twenty-two public health and environmental organizations sent a letter to Paul Tourangeau Director, Colorado Air Pollution Control

4

BLM_0081269

expressing their concerns regarding EPA's aggregation policy. While this letter was not addressed to BLM, the concepts expressed apply to the UFO when considering permitting of natural gas drilling, compressor stations, evaporation ponds, etc. This letter stated:

> The issue of aggregation is extremely important to ensuring long-term protection and restoration of air quality, public health, and the environment across the United States. Many of you have seen the impact that increased oil and gas development has had on both rural and urban air quality. Rising ozone levels, regional haze, and air toxics are but a few. Many of these observed impacts are linked to the fact that oil and gas operations are individually small, yet collectively large, sources of air pollution.

> Aggregation provides an important opportunity to more accurately recognize integrated source operations under the Clean Air Act and ensure that oil and gas operations are regulated on a cumulative basis under PSD and Title V. In particular, it provides an opportunity to determine whether individually small sources of air pollution should be aggregated together as larger sources. To this end, the EPA's recent guidance and Title V petition ruling provide an important opportunity to immediately begin assessing whether and to what extent pollutant emitting activities related to oil and gas development should be aggregated as single sources in accordance with the "fundamental criteria for making source determinations."

> While we recognize that the question of whether to aggregate two or more pollutant emitting activities into a single major stationary source under PSD and Title V is a case-by-case determination, we urge you to conduct a full analysis for oil and gas operations that considers:

> - An evaluation of system maps for oil and gas operations, which shows all emission sources owned or operated by individual companies in producing oil and gas fields;

> - A determination as to whether and to what extent the various pollution emitting activities are contiguous or adjacent to, and under common control with, permitted or proposed to be permitted facilities;

> - An assessment of flow diagrams that show movement of oil and gas from the well sites to processing facilities so that you may determine the nature of the sources' emissions and determine the interdependency of operations; and

> - An analysis of business information regarding the nature of control of operations to determine whether various pollution emitting activity should be considered under common control for purposes of making the source determination.

5

10 A-PI NRED

### Comment 9

All NEPA analyses conducted under the revised RMP should require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

11 A-PI NRED

### Comment 10

All oil and gas leases offered under the revised RMP should contain a provision reserving the right of the federal government to impose any additional stipulations necessary to protect human health and the environment, including, but not limited to, no surface occupancy stipulations.

12 A-PI ED

### Comment 11

All unit agreements approved by BLM's Authorized Officer during the life of the revised plan should contain a provision requiring energy companies to adhere to federal regulations for all activities within the unit regardless of ownership of the surface property and subsurface mineral rights.

Unit agreements contain language that require BLM to extend federal leases within a unitized area if an energy company drills a successful well anywhere within the unit, including on land in which both the surface property and subsurface mineral rights are privately owned. In return for the benefit of receiving an extension of federal leases based on activity on privately owned subsurface minerals, this provision should require energy companies to comply with federal regulations on all properties within a unitized area.

13 A-PI NRED

### Comment 12

The revised RMP should protect private property rights by prohibiting oil and gas development on private land within a unitized area without the express written permission of the surface property owner.

The natural gas industry has a history of abusing private property rights. Currently, surface property owners have few rights to protect their homes or land from damage when the federal government leases the subsurface mineral rights. In fact, the law places the rights of the subsurface mineral owner above those of the surface landowner. No surface owner should be forced to accept an oil or gas well on their property without their permission.

14 A-PI NRED

### Comment 13

The revised RMP should require all oil and gas leases and permits to contain provisions to protect wildlife habitat from fragmentation.

15 A-PI NRED

### Comment 14

The revised RMP should require energy companies to pay financial assurance with sufficient funds to pay to restore the land to its original condition when wells are no longer producing.

BLM_0081271