

# United States Department of the Interior
### BUREAU OF LAND MANAGEMENT
**Uncompahgre Field Office**
**2465 South Townsend Avenue**
**Montrose, Colorado 81401**
**www.co.blm.gov**



IN REPLY REFER TO:
1610 (CO-S05)

March 12, 2010

Levi Broyles, Paonia District Ranger
U.S. Forest Service, Grand Mesa, Uncompahgre and Gunnison NF
2250 Highway 50
Delta, CO  81416

Dear Mr. Boyles,

The BLM Uncompahgre Field Office has begun its Resource Management Plan (RMP) revision. You are receiving this letter because your agency has designated you at its representative for Cooperating Agency meetings and associated work.

We have scheduled our first Cooperating Agency meeting for Thursday, May 27 at 1:00 p.m. at the BLM office in Montrose.  This is a change from the April date.  The meeting will last about four hours.  It is important to attend the first meeting.  Meetings will be held monthly through September 2010, and less frequently after that.   The meeting list through September is attached.

The goals of the first meeting are to inform Cooperating Agencies about what an RMP is; the RMP process including alternative development, impact analysis, reviews and public comment; discuss and agree on the role of Cooperating Agencies; establish ground rules; and discuss expectations.

You can view information regarding the RMP planning process on the Uncompahgre planning web site at:  http://www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp.html.  Please contact my RMP Project Manager, Bruce Krickbaum, at 970-240-5300, email: bruce_krickbaum@blm.gov, if you need further information.

Sincerely,

Barbara Sharrow
Field Office Manager

Attachment:  Meeting Schedule

BLM_0081518

Bureau of Land Management
Uncompahgre Field Office
Resource Management Plan Revision

# Schedule for Cooperating Agency Meetings

Thursday, May 27, 2010, 1pm – 4pm

Thursday, June 24, 2010, 1pm – 4pm

Thursday, July 22, 2010, 1pm – 4pm

Thursday, August 19, 2010, 1pm – 4pm

Friday, September 30, 2010, 1pm – 4pm

All meetings will take place at the BLM office in Montrose

BLM_0081519



**United States Department of the Interior**
BUREAU OF LAND MANAGEMENT
Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401
www.co.blm.gov



IN REPLY REFER TO:
1610 (CO-S05)

March 12, 2010

Collin Ewing,
Fish and Wildlife Biologist
U.S. Fish and Wildlife Service, Western Colorado Ecological Services Field Office
764 Horizon Drive
South Annex A - Bldg. B
Grand Junction, CO  81506-3946

Dear Mr. Ewing,

The BLM Uncompahgre Field Office has begun its Resource Management Plan (RMP) revision. You are receiving this letter because your agency has designated you at its representative for Cooperating Agency meetings and associated work.

We have scheduled our first Cooperating Agency meeting for Thursday, May 27 at 1:00 p.m. at the BLM office in Montrose.  This is a change from the April date.  The meeting will last about four hours.  It is important to attend the first meeting.  Meetings will be held monthly through September 2010, and less frequently after that.   The meeting list through September is attached.

The goals of the first meeting are to inform Cooperating Agencies about what an RMP is; the RMP process including alternative development, impact analysis, reviews and public comment; discuss and agree on the role of Cooperating Agencies; establish ground rules; and discuss expectations.

You can view information regarding the RMP planning process on the Uncompahgre planning web site at:  http://www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp.html.  Please contact my RMP Project Manager, Bruce Krickbaum, at 970-240-5300, email: bruce_krickbaum@blm.gov, if you need further information.

Sincerely,

Barbara Sharrow
Field Office Manager

Attachment:  Meeting Schedule

Bureau of Land Management
Uncompahgre Field Office
Resource Management Plan Revision

# Schedule for Cooperating Agency Meetings

Thursday, May 27, 2010, 1pm – 4pm

Thursday, June 24, 2010, 1pm – 4pm

Thursday, July 22, 2010, 1pm – 4pm

Thursday, August 19, 2010, 1pm – 4pm

Friday, September 30, 2010, 1pm – 4pm

All meetings will take place at the BLM office in Montrose



# United States Department of the Interior
### BUREAU OF LAND MANAGEMENT
**Uncompahgre Field Office**
**2465 South Townsend Avenue**
**Montrose, Colorado 81401**
**www.co.blm.gov**



IN REPLY REFER TO:
1610 (CO-S05)

March 12, 2010

Greg Clifton, Town Manager; Jen Coats, Town Planner
Town of Ridgway
PO Box 10
Ridgway, CO 81432

Dear Mr. Clifton and Ms. Coats,

The BLM Uncompahgre Field Office has begun its Resource Management Plan (RMP) revision. You are receiving this letter because your agency has designated you at its representative for Cooperating Agency meetings and associated work.

We have scheduled our first Cooperating Agency meeting for Thursday, May 27 at 1:00 p.m. at the BLM office in Montrose. This is a change from the April date. The meeting will last about four hours. It is important to attend the first meeting. Meetings will be held monthly through September 2010, and less frequently after that. The meeting list through September is attached.

The goals of the first meeting are to inform Cooperating Agencies about what an RMP is; the RMP process including alternative development, impact analysis, reviews and public comment; discuss and agree on the role of Cooperating Agencies; establish ground rules; and discuss expectations.

You can view information regarding the RMP planning process on the Uncompahgre planning web site at: http://www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp.html. Please contact my RMP Project Manager, Bruce Krickbaum, at 970-240-5300, email: bruce_krickbaum@blm.gov, if you need further information.

Sincerely,

Barbara Sharrow
Field Office Manager

Attachment: Meeting Schedule

BLM_0081522

Bureau of Land Management
Uncompahgre Field Office
Resource Management Plan Revision

# Schedule for Cooperating Agency Meetings

Thursday, May 27, 2010, 1pm – 4pm

Thursday, June 24, 2010, 1pm – 4pm

Thursday, July 22, 2010, 1pm – 4pm

Thursday, August 19, 2010, 1pm – 4pm

Friday, September 30, 2010, 1pm – 4pm

All meetings will take place at the BLM office in Montrose



# United States Department of the Interior
## BUREAU OF LAND MANAGEMENT
### Uncompahgre Field Office
### 2465 South Townsend Avenue
### Montrose, Colorado 81401
### www.co.blm.gov



IN REPLY REFER TO:
1610 (CO-S05)

March 12, 2010

Renzo DelPiccolo
Area Wildlife Manager
Colorado Department of Natural Resources, Southwest Region
2300 South Townsend Ave
Montrose, CO  81401

Dear Mr. DelPiccolo,

The BLM Uncompahgre Field Office has begun its Resource Management Plan (RMP) revision. You are receiving this letter because your agency has designated you at its representative for Cooperating Agency meetings and associated work.

We have scheduled our first Cooperating Agency meeting for Thursday, May 27 at 1:00 p.m. at the BLM office in Montrose.  This is a change from the April date.  The meeting will last about four hours.  It is important to attend the first meeting.  Meetings will be held monthly through September 2010, and less frequently after that.   The meeting list through September is attached.

The goals of the first meeting are to inform Cooperating Agencies about what an RMP is; the RMP process including alternative development, impact analysis, reviews and public comment; discuss and agree on the role of Cooperating Agencies; establish ground rules; and discuss expectations.

You can view information regarding the RMP planning process on the Uncompahgre planning web site at:  http://www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp.html.  Please contact my RMP Project Manager, Bruce Krickbaum, at 970-240-5300, email: bruce_krickbaum@blm.gov, if you need further information.

Sincerely,

Barbara Sharrow
Field Office Manager

Attachment:  Meeting Schedule

BLM_0081524

Bureau of Land Management
Uncompahgre Field Office
Resource Management Plan Revision

# Schedule for Cooperating Agency Meetings

Thursday, May 27, 2010, 1pm – 4pm

Thursday, June 24, 2010, 1pm – 4pm

Thursday, July 22, 2010, 1pm – 4pm

Thursday, August 19, 2010, 1pm – 4pm

Friday, September 30, 2010, 1pm – 4pm

All meetings will take place at the BLM office in Montrose

BLM_0081525



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
**Uncompahgre Field Office**
**2465 South Townsend Avenue**
**Montrose, Colorado 81401**
**www.co.blm.gov**



IN REPLY REFER TO:
1610 (CO-S05)

March 12, 2010

Jeff Sonnenberg
County Administrator
Town of Nucla
PO Box 219
Nucla, CO  81424

Dear Mr. Sonnenberg,

The BLM Uncompahgre Field Office has begun its Resource Management Plan (RMP) revision. You are receiving this letter because your agency has designated you at its representative for Cooperating Agency meetings and associated work.

We have scheduled our first Cooperating Agency meeting for Thursday, May 27 at 1:00 p.m. at the BLM office in Montrose.  This is a change from the April date.  The meeting will last about four hours.  It is important to attend the first meeting.  Meetings will be held monthly through September 2010, and less frequently after that.   The meeting list through September is attached.

The goals of the first meeting are to inform Cooperating Agencies about what an RMP is; the RMP process including alternative development, impact analysis, reviews and public comment; discuss and agree on the role of Cooperating Agencies; establish ground rules; and discuss expectations.

You can view information regarding the RMP planning process on the Uncompahgre planning web site at:  http://www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp.html.  Please contact my RMP Project Manager, Bruce Krickbaum, at 970-240-5300, email: bruce_krickbaum@blm.gov, if you need further information.

Sincerely,

Barbara Sharrow
Field Office Manager

Attachment:  Meeting Schedule

BLM_0081526

Bureau of Land Management
Uncompahgre Field Office
Resource Management Plan Revision

# Schedule for Cooperating Agency Meetings

Thursday, May 27, 2010, 1pm – 4pm

Thursday, June 24, 2010, 1pm – 4pm

Thursday, July 22, 2010, 1pm – 4pm

Thursday, August 19, 2010, 1pm – 4pm

Friday, September 30, 2010, 1pm – 4pm

All meetings will take place at the BLM office in Montrose



**IN**

## Uncompahgre Resource Management Plan

NATIONAL SYSTEM OF PUBLIC LANDS

*Received MAR 9 2010 BLM UFO. Montrose Field Office*

We encourage you to provide your comments by filling out and submitting this comment form by March 29, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name **Linda**                    Last Name **Van der Veer**        Date **March 13, 2010**

Mailing Address **Bjork Lindley Little 1600 Stout Street Suite 1400**

City **Denver**            State **Colorado**                Zip **80202**

E-mail Address **lvanderveer@bjorklindley.com**

Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.) Yes: ☐Email materials  ☒Hard-copy materials  ☐No
Please note that planning materials are also available at our website: www.UFORMP.com

**Please indicate your affiliation by checking the following boxes (check all that apply):**

☒Individual (no affiliation)       ☐Citizen's Group         ☐Regulatory Agency
☐Non-profit Organization        ☐Elected Representative      ☐Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? ☐Unit 1  ☐Unit 2  ☐Unit 3  ☐Unit 4  ☐Unit 5  ☒No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ☐Colorado (west slope) ☒Colorado (front range or plains) ☐Other State - Which?_____  ☐ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years_____ Months_____

4. Why do you live here? ☐Occupation ☐Family ☐Proximity to public lands ☐Recreational Opportunities ☐Other_____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

**1 A-GE**

**What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?**

When preparing the Uncompahgre RMP the BLM must clearly understand the role and purpose of a land use plan. Pursuant to the Federal Land Policy and Management Act of 1976 ("FLPMA"), the BLM is required to develop land use plans to guide the agency's management of federal lands under its administration.

**2 A-GE**

When preparing the Uncompahgre RMP the BLM should not attempt to make site-specific decisions, but should develop only broad management goals and objectives. Further, the BLM should not expend unnecessary resources attempting to analyze the potential impacts of oil and gas development on a site-specific basis. Individual development projects will be analyzed on a case-by-case basis if and when operations are actually proposed. Based on the BLM's own policies and binding legal precedent, the BLM should ensure that the agency does not utilize the land use planning process to impose site-specific conditions of approval or unreasonably limit future management actions.

**3 A-PI NRED**

**4 A-GE**

BLM_0081528

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

**Please provide any additional comments that you have regarding this project.**

Please add me to your mailing list.



# Uncompahgre Resource Management Plan



We encourage you to provide your comments by filling out and submitting this comment form by March 29, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name_____Susan_____ Last Name_____Hickle_____ Date 3/15/2010

Mailing Address_____9922 Bostwick Park Rd_____

City__Montrose_____ State____CO____ Zip_____81401_____

E-mail Address_____hicklesg@yahoo.com_____

**Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.) Yes: X**Email materials ❑**Hard-copy materials** ❑**No**
Please note that planning materials are also available at our website: www.UFORMP.com

**Please indicate your affiliation by checking the following boxes (check all that apply):**

**X**Individual (no affiliation) ❑Citizen's Group ❑Regulatory Agency
❑Non-profit Organization ❑Elected Representative ❑Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

**1. Do you live within the planning area?** ❑Unit 1 ❑Unit 2 ❑Unit 3 ❑Unit 4 ❑Unit 5 **X**No
*(Refer to map for unit numbers)*

**2. If you do not live in the planning area, where do you live: X**Colorado (west slope) ❑Colorado (front range or plains) ❑Other State - Which?_____ ❑ Other Country - Which?_____

**3. If you live in the planning area, how long have you lived here? Years__12__ Months_____**

**4. Why do you live here?** ❑Occupation ❑Family **X**Proximity to public lands **X**Recreational Opportunities ❑Other_____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

**What are your concerns or suggestions regarding public land uses or resources within the Uncompahgre RMP planning area?**

I live in the Gunnison Gorge NCA Planning area. My interests are mainly recreational. I would like to see existing routes for equestrians, hikers, campers, sight-seers and Nordic skiers maintained.

The improvements made in the Peach Valley area of the Gunnison Gorge NCA Planning Area are wonderful – specifically the updated maps, trail markers, picnic & sanitary facilities. I would like to see this done in the Uncompahgre Planning area. There may be specific areas that are more appropriate for certain activities and SRMAs should be considered in those areas to encourage the right kinds of activities in the right places. Ecologically or wildlife sensitive areas may not be appropriate for motorized vehicles or target shooting.

Signage to designate what activities are suitable in specific areas would be desirable, including where target shooting can occur. A safe environment for all users is desirable.

Disturbance to wildlife should be minimized. View sheds should be protected. Non-recreational uses should also be managed to minimize impact to the environment. Reclamation should be required. BLM should be able to collect sufficient fees/income from non-recreational users to cover administration costs and impact to the land. I am not opposed to fees for recreational users if they are also needed.

I would like to see areas made available for horse trailer parking.

Formal sights for viewing rock art, fossil exposures, etc. should be developed in order to enhance public involvement and sight-seeing.

**13 A-PI VEG**

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

The BLM should attempt to improve the condition of lands within the planning area that do not meet standards. Since it is generally less costly to prevent problems, "lands that meet standards, but with problems" should also be considered for improvement to problem areas. Where there is a large amount of public impact, areas shouldn't be left to function "naturally" because they will be degraded over time. Public usage in these areas may need to be restricted.

**14 A-PI WD**

Weed management is important.

Keeping land in optimum condition can also minimize wildfire risk.

**15 A-PI VEG**

**16 A-PI TM**

**Keeping in mind the issues above, what changes would you make to administration (such as management regulations, etc.)?**

Restrict target shooting and motorized travel to specific areas.

**17 B-NP**

Provide information via signage and brochures as to who has the right of way on trails when there are multiple uses (i.e., hikers, bikers, equestrians, OHV riders). Most people are very courteous, but some people create hazardous conditions for other users.

Reclamation of natural resource areas (coal, gas, oil, uranium) is important after the mining is complete. BLM revenue from mining/grazing activities should be increased if needed so that government isn't subsidizing mining/grazing activities in any way.

**18 A-PI ED**

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

In areas where there are soil erosion concerns or other environmental concerns, activities may need to be restricted.

Users need to respect other users and other uses. Public education such as signage at trailheads can help.

**19 A-PI GS**          **20 B-NP**

**22 A-PI REC**          **23 A-PI SE**

**21 A-PI SE**          any additional comments that you have regarding this project.

The Uncompahgre RMP Planning should be coordinated with Montrose County in order to be compatible with the Montrose County Master plan revision currently underway.

Recreation in the wildland-urban interface areas should be allowed, but perhaps access to BLM land should be restricted or channeled to less environmentally sensitive, healthier land areas.

Fees for business uses (mining, grazing) should more than compensate BLM for administrative and land maintenance costs involved. I am not opposed to fees for recreational users, but believe fees/costs to businesses should be increased first because private profit is being made off of public land. BLM should be treated as a "shareholder" by collecting some additional dollar amount on the resources consumed or extracted from public land.

BLM_0081531

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **To:** | tkrandallparker@fs.fed.us |
| **Subject:** | Follow-up to BLM Economic Workshop |
| **Date:** | Tuesday, March 16, 2010 11:00:54 AM |

Ms. Randall-Parker:

The BLM Uncompahgre Field Office staff appreciates your attendance at last Tuesday's Social-Economic workshop. We value your time and truly regret that we did not achieve all the stated workshop objectives.

I am soliciting information on two important agenda items/objectives that we missed in order to obtain a complete picture of socio-economics in the Montrose vicinity of the planning area. Would you please take a few minutes to reply to this message with your input on the following questions?

1) How does the BLM fit in with your community/county?
   --How does the use of public land fit into community/
     county objectives?  What is the value of
     having BLM lands?
   --What can BLM do to partner with your community/
     county to reach its potential?

2) Do you know of any important sources of information regarding social and economic issues that BLM should consider?

Economic information and social aspects of the area are an important part of planning, developing alternatives, impact analysis, and decision making as we progress through our Resource Management Plan. I, and the rest of the Uncompahgre Field Office staff, sincerely hope that you remain an interested and active participant throughout the planning process, as your involvement is critical to a successful Resource Management Plan.

Thank you again for your time. Please contact me at 240-5300 or e-mail bruce_krickbaum@blm.gov with any questions or to further discuss these topics.

Thank you, Bruce

<><><><><><><><><><><><><><><><><><><><>
Bruce Krickbaum
Planner, Environmental Coordinator
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
970.240.5384

Mr. Bruce Krickbaum

I appose the uncompahgre management change.

Received

MAR 16 2010

Uncompahgre Field Office

Address:
N/A

BLM_0081533

Mr. Bruce Krickbaum

Received

MAR 16 2010

Uncompahgre Field Office

    I appose the uncompahgre  management change.

Address:
N/A

BLM_0081534

Mr. Bruce Krickbaum

I appose the uncompahgre  management change.

Received

MAR 18 2010

Uncompahgre Field Office

*Judy Forbes*

Address:
N/A

BLM_0081535



AF

# United States Department of the Interior

BUREAU OF RECLAMATION
Upper Colorado Region
Western Colorado Area Office
2764 Compass Drive, Suite 106
Grand Junction, CO 81506-8785



IN REPLY REFER TO:

WCG- ASchroeder
LND- 8.00

MAR 1 6 2010

MEMORANDUM

To:     Bruce Krickbaum
        Project Manager
        Bureau of Land Management
        2465 South Townsend Avenue
        Montrose, CO  81401

From:   Kathleen Ozga, Lands and Recreation Resources Group Chief

**1 A-GE**

Subject: Issues and Concerns, Uncompahgre Field Office, Bureau of Land Management, Resource
         Management Plan Revision

We would like to document some of our issues and concerns regarding the Uncompahgre Field Office
(UFO) Resource Management Plan (RMP) Revision.

We would remind you of the current 1983 National Interagency Agreement (IA) between the Bureau of
Reclamation (Reclamation) and the Bureau of Land Management (BLM).  The 1983 IA spells out the
roles and responsibilities of Reclamation and BLM on Reclamation's acquired and withdrawn lands.  The
RMP should identify and help enforce those roles and responsibilities through all alternatives.  A copy of
the IA is attached for your information.

**2 A-PI LR**

All or portions of eleven (11) Reclamation projects are within the planning area and could be affected by
decisions made during this RMP or could affect your decisions.  These are all valid existing rights
pursuant to the Reclamation Act of 1902, as amended and supplemented.  The following projects have
been constructed and are in operation: the Uncompahgre Project; the Lower Gunnison Salinity Unit
(Gunnison Unit) of the Colorado River Basin Salinity Control Project (CRBSCP); the Aspinall Unit of the
Colorado River Storage Project (CRSP); the Smith Fork Project; the Bostwick Park Project; the Paonia
Project; the Dallas Creek Project; the Fruitgrowers Dam Project; and the Paradox Valley Unit (CRBSCP).
Two projects, the Fruitland Mesa Project (authorized for construction) and the Dominguez Project (not
authorized for construction), were never constructed but have outstanding land withdrawals associated
with them.  Reclamation's management goal for the nine active projects is the continued operation,
management, and protection of those projects and their associated features and resources.  We will
continue to periodically review the current withdrawals for our authorized projects and assess the
potential need for those lands.  We would like to revoke the withdrawals associated with the Dominguez
and Fruitland Mesa projects and return those lands to the public domain.

We would also remind you that Reclamation's land management focus is not the same as BLM's.   Our
main focus is management of lands and resources for Reclamation project purposes pursuant to
Reclamation law and policies, plus other nationwide laws such as the National Environmental Policy Act,

**3 A-GE**

1

BLM_0081536

and the Endangered Species Act.  Non-project uses of Reclamation lands must be compatible with the authorized Reclamation project purposes and be approved by Reclamation.

**4 A-GE**

The preliminary planning criteria identified in the Preparation Plan help identify and explain the respective roles and responsibilities of Reclamation and BLM with regard to the RMP and the respective management of their lands within the planning area.  Planning criteria related to Reclamation lands and resources include, but are not necessarily limited to:

- Compliance with the Federal Land Policy and Management Act (FLPMA) and all other applicable laws, regulations, and policies.
- Lands covered in the RMP include public land, and split estates managed by BLM.  No decisions will be made relative to non-BLM administered lands.
- Working cooperatively with the State of Colorado, tribal governments, county and municipal governments, other federal agencies, the Southwest RAC, cooperating agencies and all other interested groups, agencies, and individuals.

**5 A-PI LR**

- Striving for compatibility with existing plans and policies of adjacent federal agencies as long as decisions are consistent with the purposes, policies, and programs of federal law, and regulations applicable to public lands.
- Recognizing valid existing rights.
- Including adaptive management criteria and protocol to deal with future issues.
- Development of a reasonable foreseeable development scenario for fluid minerals, uranium, and coal to aid in the environmental consequences analysis.

**6 A-GE**

**7 A-PI ED**

**8 A-PI LR**

We share many of the preliminary planning issues and management concerns identified in the preparation plan, but also have some of our own.  Some of the issues and concerns that we have are as follows:

- **Identification of Reclamation lands**- The table on page 3 of the Preparation Plan did not list any Reclamation lands within the planning area.  However, a portion of the listed BLM, Forest Service, National Park Service, and State lands are, in fact, Reclamation lands.

**9 A-GE**

- **Effects on or by Reclamation projects**- The above listed projects and their associated withdrawals, facilities and resources are valid existing rights pursuant to Reclamation law.  The potential effects of BLM decisions on the operation, maintenance, and protection of Reclamation projects, and associated lands, facilities and resources need to be recognized and addressed.  Also, the effects of these projects and their associated withdrawals, facilities, and resources on your decisions should be considered.

**10 A-GE**

- **Coordination and cooperation**
  - Whenever possible, Reclamation and BLM should coordinate and cooperate in resource management across administrative and jurisdictional lines.  Supplemental agreements and Memorandums of Understanding (MOU) may be appropriate documents to foster such cooperation.  The following areas of general resource management could benefit from such coordination and cooperation:
    - Wildland fire management
    - Noxious weeds and invasive species management
    - Soil management
    - Riparian and wetland areas
    - Wildlife habitat
    - Sensitive species habitat
    - Recreation
    - Selenium management

2

**11 A-GE**

- Reclamation's Managing Entities- Reclamation has several managing entities that manage our projects and/or various aspects of land or resource use on our lands. These entities should be included in the coordination/cooperation aspects of the RMP.
  - Project Management
    - Uncompahgre Project- Uncompahgre Valley Water Users Association
    - Dallas Creek Project- Tri-County Water Conservancy District
    - Paonia Project- North Fork Water Conservancy District and Fire Mountain Canal and Reservoir Company
    - Lower Gunnison Salinity Unit (CRBSCP)- Uncompahgre Valley Water Users Association
    - Smith Fork Project- Crawford Water Conservancy District
    - Aspinall Unit, CRSP- Reclamation, Curecanti Field Office Division (Montrose) and Western Colorado Area Office (Grand Junction)
    - Paradox Unit (CRBSCP)- Reclamation, Western Colorado Area Office (Durango)
    - Bostwick Park- Bostwick Park Water Conservancy District
    - Fruitgrowers Reservoir- Orchard City Irrigation District
  - Recreation Management
    - Curecanti National Recreation Area- National Park Service
    - Crawford Reservoir, Smith Fork Project- Colorado State Parks
    - Paonia Reservoir, Paonia Project- Colorado State Parks
    - Ridgway Reservoir, Dallas Creek Project- Colorado State Parks
  - Mitigation Land Management
    - Aspinall Unit- BLM and Colorado Division of Wildlife

**12 A-PI WR**

- **Water Issues**
  - *Water quality*- As a minimum, current water quality should be maintained and, where feasible, it should be improved. Reclamation, other Interior agencies and the Department of Agriculture are currently working to reduce selenium and salinity loads within the Colorado River Basin.

**13 A-PI WR**

  - *Water availability*- The RMP should reflect that available water is limited and may not be sufficient for all desired uses; even more so during droughts or as a result of climate change. Recommendations and decisions should recognize water rights, agreements, allocations, and allotments.

**14 A PI-LR**

- **Lands and Realty-**
  - *Authorized and constructed projects*- In general, Reclamation will retain sufficient withdrawals and rights-of-way for our authorized and constructed project purposes and features. Reclamation may need to obtain some additional rights-of-way or withdrawals to properly cover its facilities. BLM should help ensure that Reclamation lands, both acquired and withdrawn, are properly identified with the respective agency roles and responsibilities pursuant to the 1983 IA.

**15 A-PI LR**

  - *Authorized, but not constructed projects*- The Fruitland Mesa Project was authorized but not constructed and has about 22,780 acres of associated withdrawn public domain lands. Pursuant to the 1983 IA, these lands are under Reclamation's administrative jurisdiction, however, BLM has been managing these lands since their withdrawal. Reclamation continues to recommended revocation of these withdrawals. Pending the revocation of the withdrawals, we would like to provide for continued BLM management of these lands without the need to consult with Reclamation.

**16 A-PI LR**

  - *Not-authorized projects*- Reclamation continues to recommended revocation of the approximately 12,220 acres of withdrawals for the Dominguez Project within the planning area and the return of those lands to the public domain.
  - *Withdrawals*- The RMP should address how Reclamation withdrawn lands will be managed upon their return to the public domain. Reclamation will continue to conduct periodic reviews of its

**17 A-PI LR**

3



**18 A-PI LR**

withdrawals and assess the potential need for those lands. Currently within the field office area, there are about 45,790 acres of land withdrawn for Reclamation purposes.

- ▪ *Disposals*- Some of the proposed disposal tracts from the current RMP are withdrawn for Reclamation purposes. Disposal of Reclamation withdrawn land is subject to a Reclamation determination that the lands are no longer necessary for its purposes and subsequent action to make the land available for disposal. The effects of any disposals on potential selenium loading to area waterways should be a primary consideration.

**19 A-PI LR**

- ▪ *Rights-of-way*- Reclamation has several rights-of-way on BLM administered lands and needs to acquire additional rights-of-way. Non-project use of these rights-of way should be compatible with Reclamation project purposes and have Reclamation concurrence for such use.

**20 A-GE**

- ▪ **Community Growth and Expansion**- Some of BLM's and Reclamation's lands are at the wildland urban interface. Community growth and expansion is putting more pressure on both Reclamation and BLM to provide lands for open space, recreation, and community infrastructure.

**21 A-PI REC**

- ▪ **Recreation**- Decisions regarding recreation on public lands may affect Reclamation lands and resources, and could affect public safety. BLM should work cooperatively with Reclamation and its managing entities regarding recreation in close proximity to Reclamation lands and facilities. Areas of particular concern, though not necessarily limited to those listed, include:
  - ▪ Areas adjacent to active Reclamation facilities and Reclamation/BLM boundaries adjacent to our active projects.

**22 A-PI TM**

- ▪ **Travel management**- Reclamation's operations and maintenance roads and interior park roads should not be included as public travel routes without Reclamation's concurrence. Also, Reclamation lands are closed to off-highway vehicle (OHV) use until special areas or trails are specifically opened for OHV use by Reclamation through a public involvement process.

**23 A-PI SSF**

- ▪ **Special status species**-
  - ▪ Threatened or endangered Colorado River fish- Reclamation is actively involved in the recovery of endemic fishes in the Colorado River Basin. A programmatic biological opinion has been prepared by the Fish and Wildlife Service that addresses operations of the Wayne N. Aspinall Unit as well as all water depletions in the Gunnison Basin, including depletions of BLM projects and BLM permitted projects. This opinion calls for a selenium management program to reduce selenium concentrations in the Gunnison and Colorado rivers. BLM actions, including land disposals and changes in land use, can have significant effects on selenium loading and this must be addressed in the RMP planning.

**24 A-PI SSP**

  - ▪ Rare Plants- Some of the known rare plant areas coincide with Reclamation lands and/or facilities.

**25 A-PI MI**

- ▪ **Mineral/Energy development**-
  - Locatable minerals- Reclamation lands are generally closed to location of minerals, but there may be some valid existing rights related to locatable minerals that should be addressed.
  - Leasable minerals- Where Reclamation lands are underlain by federal leasable minerals or resources, Reclamation determines whether or not leasing is permissible. Also, BLM will not issue permits, leases, or licenses on lands under Reclamation management without Reclamation's consent and concurrence on all conditions and stipulations.

**26 A-PI MI**

**27 A-PI MI**

  - Mineral materials- The sale of mineral materials on Reclamation lands falls within the responsibility of Reclamation.
  - Energy transmission corridors- Reclamation and BLM should coordinate routing of energy transmission rights-of-way in a manner that minimizes effects to Reclamation facilities and resources.

**28 A-PI LR**

4

BLM_0081539

**29 A-PI CC**

**Drought Management/Climate Change-** Drought and climate change and management actions dealing with those situations may have an adverse effect on our ability to provide water for our projects.

**30 A-PI WSR**

- **Special Designation areas**
  - Wild and Scenic River Designation- Wild and scenic river suitability, designation and subsequent management actions should consider potential effects on water uses in the basin and cannot affect operation and maintenance of our water projects without Reclamation's concurrence.

**31 A-PI SDA**

  - Areas of Critical Environmental Concern (ACEC), Research Natural Areas (RNA), etc.- Depending on their locations, the management focus, and their associated terms and conditions, such designations may have an adverse effect on our ability to effectively manage our projects and facilities. However, they may also complement some of our wildlife mitigation areas.

We will be glad to provide more specific information related to our projects and lands as necessary.

For more information or if you have questions please contact Alan Schroeder 970-248-0692; aschroeder@usbr.gov).

Attachment

cc: Curecanti Field Division
Bureau of Reclamation
1820 S. Rio Grande Ave.
Montrose, CO 81401

Uncompahgre Valley Water Users Association
601 N. Park
Montrose, CO 81402

Crawford Water Conservancy District
183 Hwy 92
Crawford, CO 81415

Fire Mountain Canal and Reservoir Co.
PO Box 414
Paonia, CO 81428

North Fork Water Conservancy District
PO Box 217
Hotchkiss, CO 81419

Orchard City Irrigation District
PO Box 402
Corey, CO 81414

Colorado Division of Parks and Outdoor Recreation
Crawford and Paonia State Parks
PO Box 147
Crawford, CO 81415

5

BLM_0081540

Mr. Kurt Mill
Colorado Division of Parks and Outdoor Recreation
Rocky Mountain Region
PO Box 700
Clifton, CO 81520

Colorado Division of Parks and Outdoor Recreation
Ridgway State Park
28555 Hwy 550
Ridgway, CO 81432

Bostwick Park Water Conservancy District
400 S. 3rd Street
Montrose, CO 81402

National Park Service
Curecanti National Recreation Area
102 Elk Creek
Gunnison, CO 81230

Tri-County Water Conservancy District
PO Box 347
Montrose, CO 81402

Mr. Andy Nicholas
Bureau of Reclamation
Paradox Valley Field Office
PO Box 49
Bedrock, CO 81411

WCD-BDodd,WCD-MChiarito (Each w/o Attachment)

6

BLM_0081541

INTERAGENCY AGREEMENT


BETWEEN


THE BUREAU OF RECLAMATION


AND


THE BUREAU OF LAND MANAGEMENT


December 1982

BLM_0081542

Case No. 1:20-cv-02484-MSK   Document 54-10   filed 04/28/21   USDC Colorado   pg 26 of 178

Reclamation Instructions

CHAPTER 1  TABLE OF CONTENTS

Section 1.    Purpose

Section 2.    Authority to Enter into an Agreement

Section 3.    Exchange of Services

Section 4.    Reimbursement for Services Rendered

Section 5.    Management of Reclamation Withdrawn and Acquired Lands

Section 6.    Specific Services Applicable to this Agreement

A.    Withdrawals
B.    Withdrawal Review
C.    Land Sales
D.    Exchanges
E.    Reservation of Rights-of-way
F.    Granting Rights-of-way
G.    Making of Planning Studies and Engineering Investigation
        on Public Lands
H.    Mineral and Geothermal Leases
I.    Cadastral Survey
J.    Fire Protection During Project Construction
K.    Forestry
L.    Grazing and Beekeeping
M.    Mining Claims
N.    Recreation
O.    Fish and Wildlife Mitigation and Enhancement
P.    Environmental Impact Analyses and Statements
Q.    Planning Program
R.    Engineering and Technical Services
S.    Wild and Free-Roaming Horses and Burros
T.    Salinity Control on Public Land
U.    Computer Service
V.    Discrepancies in Policy
W.    Hydrometeorological Data
X.    Road Maintenance
Y.    Other Specific Services

Section 7.    Supplemental Agreements

215-30 - 5/3/83

BLM_0081543

Case No. 1:20-cv-02484-MSK   Document 54-10   filed 04/28/21   USDC Colorado   pg 27 of 178

Reclamation Instructions

Appendix I
Sheet 3 of 17                    CHAPTER 1  TABLE OF CONTENTS (Continued)

Section 8.     Implementation

Section 9.     Renegotiation

Section 10.    Termination of Agreement

215-30 - 5/3/83

BLM_0081544

Reclamation Instructions

| Series 210   Land | Part 215   Land Management |
|---|---|

Section 1.  Purpose:  This agreement sets forth the basic principles of the Bureau of Reclamation (Reclamation) and the Bureau of Land Management (BLM) for coordinating land use planning, land resource management, land conveyance and exchange, and cooperative services.  It brings coordinated efforts into compliance with recent laws and policies.  Reclamation will, when requested, provide expertise in the area of water resources conservation, development, and management, to be utilized by BLM in preparing its resource management plans. BLM will, when requested, provide expertise in the areas of land resource, forest, range, oil, gas, and mineral management, to be utilized by Reclamation when preparing its land management plans, and in managing Reclamation administered, acquired, or withdrawn public lands.

This agreement supersedes the March 8, 1972, agreement.  All agreements made supplemental to the 1972 agreement will be reviewed within 5 years, and those that are inconsistent with this agreement will be revised to conform in accordance with section 6 of this agreement or will be cancelled.

Section 2.  Authority to Enter into an Agreement:  Through delegation of authority from the Secretary of the Interior to the Director of BLM and to the Commissioner of Reclamation, agreements may be executed between Reclamation and BLM to provide for mutually beneficial land and water use planning and management activities.  Statutory authority for such agreements includes: section 307, Federal Land Policy and Management Act (FLPMA), 43 U.S.C. 1737; Economy Act, 31 U.S.C. 686; and the Reclamation Act of 1902, 43 U.S.C. Chapter 12, as amended and supplemented.

Section 3.  Exchange of Services:  Either Reclamation or BLM may request services of and perform services for the other, consistent with law, Executive Orders, the Code of Federal Regulations (CFR), each Bureau's instructions, and this agreement.

Section 4.  Reimbursement for Services Rendered:  The cost of work performed shall be reimbursable providing such work is not normally performed by the Bureau doing the work, or adequate funding for such work is not provided to that Bureau through the normal appropriation process.  The requesting Bureau will transfer funds to the other Bureau to cover the estimated cost of work to be performed.  The requesting Bureau will furnish a detailed estimate of the work to be performed.  The transfer of funds from one Bureau to the other will be accomplished by the State Director, BLM, and the Regional Director, Reclamation, by means of a journal voucher and effected on the SF-224 by the billed agency in accordance with a specific executed agreement supplemental to this agreement.  Except under emergency conditions, no work will be performed which cannot be reimbursed from funds available in the current fiscal year's appropriation.  Prior to entering into any supplemental agreements that would require the transfer of funds from BLM to Reclamation, an Economy Act Determination must be prepared and approved by BLM.

BLM_0081545

Reclamation Instructions

Part 215   Land Management                                    Series 210   Land

Appendix I
Sheet 5 of 17              CHAPTER 1   LAND USE PLANNING AND ADMINISTRATION

Where either Reclamation or BLM has agreed to furnish reimbursable service to
the other, the agency requesting the service will supply the other with esti-
mates of the cost of such service, the work to be undertaken, work schedules,
and budgetary information necessary for the agency receiving the service re-
quest to prepare and support its budget requests for the work involved.  Either
bureau will assist the other as requested in supporting budget presentations
for reimbursable work.  Such budgetary information will be provided, whenever
possible, 18 months prior to the budget year plus one.

Section 5.   Management of Reclamation Withdrawn and Acquired Lands:

     A.   Reclamation withdrawn and acquired lands on which there are author-
ized for construction or constructed Reclamation projects.

Reclamation has full management jurisdiction until the withdrawal is revoked
or modified, and over acquired lands until the administration is transferred
to another Federal or non-Federal agency by agreement or law.

At the request of Reclamation, the responsibility for management of Reclamation
withdrawn and acquired lands actively in use for project purposes may be trans-
ferred to BLM through the execution of a supplemental agreement.  In exercis-
ing its management responsibility, BLM will regularly coordinate with Recla-
mation and undertake only those management activities which would not preclude
or adversely affect use of the land for Reclamation project purposes.

     B.   Reclamation withdrawn lands on which there are no authorized for con-
struction or constructed Reclamation projects.

On Reclamation lands which are not within the boundaries of national forests
or under another agency administration and there are no authorized for con-
struction or constructed Reclamation projects, BLM has full administrative
responsibility.

In exercising its statutory responsibilities on Reclamation land (such as those
relating to the U.S. mining and mineral leasing laws, rights-of-way, and cadas-
tral surveys other than farm-unit surveys, and the Recreation and Public Pur-
poses Act, FLPMA, etc.), BLM, in consultation with Reclamation, shall develop
special stipulations, consistent with statutory authority, and terms and con-
ditions, as may be determined necessary by Reclamation, to protect the Recla-
mation withdrawn and acquired land for Reclamation purposes.

Rights-of-way grants issued for lands to be occupied by Reclamation for project
purposes in lieu of a withdrawal will contain a provision for a future agree-
ment specifying management responsibilities.

215-30 - 5/3/83

BLM_0081546

Reclamation Instructions

Series 210  Land                                          Part 215  Land Management

CHAPTER 1  LAND USE PLANNING AND ADMINISTRATION          Appendix I
                                                         Sheet 6 of 17

Section 6.  Specific Services Applicable to this Agreement:

   A.  Withdrawals.  All withdrawals will be made, modified, extended, or
revoked in accordance with section 204 of FLPMA, and implementing rules and
regulations, 43 CFR Part 2300, unless otherwise directed by specific statutes.

Reclamation will file a petition and application for a withdrawal as a method
of reserving public lands for project uses when Reclamation: (1) requires
administrative and/or management jurisdiction; (2) requires protection for its
facilities and project uses against nondiscretionary entries; or (3) intends
to transfer administrative and/or management jurisdiction to a third party.
Reclamation will apply for a right-of-way for all other uses.  In either case,
the application will cover no more land than is needed to construct, operate,
maintain, and protect Reclamation project uses and will restrict use and entry
only to the minimum necessary to protect project interests.  When possible,
an application will be submitted well in advance of need for the land.  Block-
ing out will be accomplished in accordance with sound real estate and land
management practices whenever possible and practical.

A withdrawal to reserve an area for a particular public purpose and/or trans-
fer jurisdiction over surface management and close the lands to nondiscretion-
ary mineral entry and disposal will usually be required for: (1) lands nec-
essary for permanent structures such as dams, reservoirs, large capacity or
lined canals, laterals or drains, and powerplants; (2) critical watershed
lands on which nondiscretionary mineral entry would likely result in the deg-
radation of water quality; and (3) lands needed for project operation, main-
tenance, and dam safety.

A withdrawal only granting the transfer of surface management jurisdiction
and/or reserving the land for a particular public purpose will usually be re-
quired for: (1) lands needed to meet present and future fish and wildlife
requirements pursuant to the Fish and Wildlife Coordination Act and/or for
outdoor recreation as may be authorized by Congress; (2) lands on which sedi-
mentation, and/or wave action may occur; and (3) lands necessary for the re-
location of roads, railroads, highways, and utilities required as a result of
project construction or operations.

Rights-of-way will be used where the jurisdiction and protection afforded by
a withdrawal is not necessary.  Possible examples could include: (1) lands
necessary for project works and facilities such as smaller, unlined laterals,
drains, and pipelines; (2) transmission lines, telephone lines, and roads; (3)
lands necessary for operation and maintenance buffers; (4) lands required for
scenic areas, open space, greenbelts; etc.; and (5) lands needed for flood-
plain management.

215-30 - 5/3/83

BLM_0081547

Case No. 1:20-cv-02484-MSK   Document 54-10   filed 04/28/21   USDC Colorado   pg 31 of 178

Within 2 years, or when possible, less, from receipt of a perfected petition
or application for a withdrawal or 1 year or less from the receipt of a per-
fected right-of-way request, BLM will complete the withdrawal or right-of-way
grant process.  If the occupancy and use of the land are mandated by law prior
to these time limits, or a substantial financial savings will result, BLM and
Reclamation will facilitate an accelerated schedule, including an emergency
withdrawal or other methods of authorizing Reclamation's entry onto such land.

   B.  Withdrawal Review.  Under the provisions of sections 204(f) and
204(l) of FLPMA, BLM is required to review, near the date of expiration, all
withdrawals having a definite expiration date, or in the case of withdrawals
made prior to October 1976 having no definite expiration date, the mandated
review will be completed prior to October 1991.  Reclamation and BLM have
established schedules for the review of all Reclamation withdrawn lands by
1991.

Reclamation will propose to convert withdrawals, where appropriate, to rights-
of-way in accordance with Section 6.A. herein.  The withdrawal will be retained
where a right-of-way does not provide Reclamation with:  (1) the necessary ad-
ministrative and/or management jurisdiction to perform all current, planned,
and known future project uses; (2) sufficient protection for its facilities
and project uses against nondiscretionary entries; or (3) the ability to read-
ily transfer administrative or management jurisdiction to a third party, or
to maintain such third party jurisdiction.  In any event, the reservation of
public land by either a withdrawal or right-of-way shall cover no more land
than is needed to permit Reclamation the freedom of use and discretionary
action necessary to meet all of its stated and implied statutory requirements
to construct, operate, maintain, and protect all Reclamation project uses,
and will restrict use and entry only to the minimum degree necessary to protect
project interests.

Rejustification of withdrawals will be made according to the guidelines con-
tained in the BLM Manual Part 2355.3.

In addition to the scheduled review of Reclamation's withdrawals, Reclamation
will review, according to schedules mutually agreed to at the field level, all
of its pending withdrawal applications to determine if Reclamation's purposes
could be served as well by a right-of-way.  If a right-of-way will serve as
well, Reclamation will request the withdrawal application be terminated and
replaced with a right-of-way application, or if the withdrawal of lands is
still needed, Reclamation will act to perfect the withdrawal application.
Reclamation will provice BLM a yearly inventory update of its withdrawn and
acquired lands.  This updated report will be provided to BLM by November 15 of
each year to coincide with Public Land Statistics requirements.

BLM_0081548

Reclamation Instructions

Series 210  Land                                    Part 215  Land Management

CHAPTER 1  LAND USE PLANNING AND ADMINISTRATION          Appendix I
                                                          Sheet 8 of 17

    C.  _Land Sales_.  When Reclamation requests relinquishment of withdrawn
lands, it may recommend sale of those lands to a specific entity or sale on
the open market.  If BLM determines that the lands are appropriate for sale
under provisions of section 203 of FLPMA or any other authority, BLM will,
within legal constraints, honor Reclamation's recommendation.

In accordance with Departmental Manual delegation, at the request of Reclama-
tion, Reclamation and BLM may enter into a supplemental agreement at the field
level providing that Reclamation perform a specific land sale under provisions
of section 203 of FLPMA.  Such a supplemental agreement may additionally pro-
vide that Reclamation perform requisite land use planning prior to land sale,
subject to BLM approval of Reclamation prepared plans.

    D.  _Exchanges_.  When Reclamation determines that an exchange of Federal
land, either withdrawn or acquired by Reclamation for private land, would be
in the best interest of the Federal Government, and Reclamation does not have
authority under section 14 of the Act of August 4, 1939 (43 U.S.C. 389), or
other direct authority to make such exchange, BLM will, when requested, effect
the exchange through its authorities.  A supplemental agreement under section 7
of this agreement will be entered into at the field level for each exchange.
When Reclamation land to be exchanged is acquired land, Reclamation will prepare
a public notice for signature of the Secretary of the Interior and for publica-
tion in the _Federal Register_, which transfers the jurisdiction of the acquired
land to BLM, specifically to effect the exchange.  Simultaneously with the
transfer of jurisdiction over the land to BLM, BLM will publish a notice of
realty action as prescribed in 43 CFR 2200.1 and 2200.2 for the proposed ex-
change segregating the lands involved from operation of the public land laws
including the mineral laws.  The exhange will be consummated by BLM within 2
years.  Reclamation will be responsible for all land appraisals and preparation
of legal description and transfer documents.  Lands received by BLM in any
such exchange will be transferred to Reclamation's jurisdiction in a mutually
agreed to form utilizing a right-of-way or withdrawal.

    E.  _Reservation of Rights-of-Way_.  When Reclamation proposes to relinquish
a withdrawal, or to otherwise dispose of withdrawn land under Reclamation's
direct jurisdiction and management on which Reclamation needs or anticipates
a need for a right-of-way, Reclamation will, when available, provide to BLM
field reports, drawings, and descriptions of any rights-of-way reserved across
this land under subsection 4-P of the Factfinders Act of 1924 (43 U.S.C. 417).
When mineral entry is requested on Reclamation's withdrawn land, an opening
may be granted under the Act of April 23, 1932 (43 U.S.C. 154), and necessary
rights-of-way may be reserved, with any conditions or terms of use necessary
to protect Reclamation's interests in the land or which have resulted from
interagency consultation.  Rights-of-way not meeting the criteria of the above
laws will be reserved under section 507 of FLPMA.

215-30 - 5/3/83

Case No. 1:20-cv-02484-MSK   Document 54-10   filed 04/28/21   USDC Colorado   pg 33 of 178

F.  Granting Rights-of-Way.  Reclamation will, within its discretion, authority, and rules (section 10 of the Act of August 4, 1939, 43 U.S.C. 387 and section 28 of the Mineral Leasing Act of 1920, as amended), be responsible for reviewing requests and granting rights-of-way across its withdrawn and acquired land and facilities (see section 5.A.).  Reclamation will furnish BLM's respective State Director with a copy of all grants on withdrawn lands, including maps, which it issues, to be recorded on BLM's Master Title Plats.

When land under this or any other agreement is managed by a third party, Reclamation will coordinate with that party before issuing rights-of-way that would interfere with the activities of the managing party.  On all rights-of-way for which Reclamation lacks authority to make a grant, BLM will issue the grant on all withdrawn or acquired lands, after consultation with Reclamation.  Such consultation shall include:  (1) questions of whether grant should or should not be granted; (2) modification of location of grant from the location applied for; and (3) terms and conditions and stipulations of the grant.

G.  Making of Planning Studies and Engineering Investigation on Public Lands.  Under the provisions of section 307(a) or other legal authority, Reclamation may enter onto the public lands to make studies and investigations necessary for project purposes, as required or authorized by Congress.  Such studies and investigations will be fully coordinated with the BLM to ensure minimum disruption of ongoing programs.

H.  Mineral and Geothermal Leases.  Except for those minerals and conditions meeting the provisions of section 10 of the Reclamation Projects Act of 1939 (43 U.S.C. 387), leases for mineral, and geothermal resources on all land acquired or withdrawn by Reclamation will be issued by BLM.  Applicants for mineral and geothermal leases on such land should be directed to file their applications with BLM's State offices.  BLM will, in all issues involving mineral, and geothermal leases on or under Reclamation lands, request that Reclamation determine whether leasing is permissible and if so to provide any stipulations required to protect the interest of the United States.  Reclamation will respond to this request for mineral leasing clearance within 60 days when adequate records are readily available.  When adequate records are not available, Reclamation will provide an interm progress report within 30 days.  BLM will not issue permits, leases, or licenses on acquired or withdrawn lands under Reclamation's management without Reclamation's consent and concurrence on all conditions and stipulations.  Reclamation's recommendations on withdrawn lands under BLM management responsibility are advisory only insofar as Reclamation planned or current project uses are not adversely affected.

BLM_0081550

Case No. 1:20-cv-02484-MSK   Document 54-10   filed 04/28/21   USDC Colorado   pg 34 of 178

I.  Cadastral Survey.  BLM will conduct, on a reimbursable basis, cadas-
tral surveys, resurveys, and investigations on existing and future projects
in accordance with: (1) jointly agreed to schedule, provided that Reclamation
will notify BLM of needs in sufficient time for it to incorporate the work
into its authorized work programs; and (2) Reclamation provides the funds.
If BLM is unable to accomplish a cadastral survey within Reclamation's time
limits, BLM will perform the work on a reimbursable basis by contract, or in
lieu of private sector contractors, may contract with Reclamation to conduct
the surveys with qualified Reclamation surveyors, according to BLM standards
and procedures.  The assigned Reclamation surveyors must conduct the field
work and the survey plats and field notes are to be certified by a Reclamation
GS-1373 Surveyor on the Surveyor's Certificate.  The survey plat and field
notes will be reviewed and, if adequate, be officially accepted by the appro-
priate BLM State office.  The Reclamation cadastral surveyors will be in ac-
cordance with 43 CFR 9185.3-1(c).

BLM public land survey corner monuments, which may be destroyed or rendered
useless by reason of Reclamation project construction activities, will be
referenced and removed and then replaced, if possible, by Reclamation.  The
monuments will be at least equivalent to those existing prior to project
construction.

J.  Fire Protection During Project Construction.  On lands described in
section 5.A., Reclamation is responsible for fire protection.  This respon-
sibility may, at Reclamation discretion, be contracted out to other agencies.
If Reclamation elects to contract with BLM, then prior to BLM accepting fire
protection responsibility over Reclamation lands, Reclamation and BLM will
cooperatively develop a mutually acceptable fire plan.  Prior to commencing
project construction, Reclamation will coordinate with BLM and will formulate
fire prevention and control plans and programs, and will provide for fire
protection.  During project construction, Reclamation will take reasonable
precautions and ensure all contractors take precautions to prevent and suppress
forest and range fires.  When a fire starts on land of either party and spreads
to the lands of the other party, the administrator of the land at the point
of ignition is responsible for rehabilitating the land of the other party to
the degree necessary that previous management objectives can be carried out.
This includes, but is not limited to, construction of temporary erosion struc-
tures, seeding, reforestation, restoration of improvements, and fencing.

K.  Forestry.  Forest/woodland resources present on Reclamation acquired
or withdrawn lands, as described in section 5.A., are the responsibility of
Reclamation, and when such lands are not located within or adjacent to National
Forest lands, they may be managed by BLM in accordance with supplemental
agreements entered into between BLM State Directors and Reclamation Regional
Directors.

215-30 - 5/3/83

BLM_0081551

Reclamation Instructions

| Part 215  Land Management | Series 210  Land |
|---|---|

Prudent forest management actions will be conducted on these lands to the maximum extent consistent with future use of the land for Reclamation project purposes. When BLM is managing the forest or woodland resources, BLM foresters will coordinate with Reclamation personnel in developing and executing needed management actions.

Sales will be the preferred method of disposing of wood products. All revenues shall be deposited into a treasury account as directed by Reclamation in accordance with applicable statutes.

L. Grazing and/or Beekeeping. On lands under the jurisdiction of Reclamation not located within or adjacent to a National Forest on which grazing and/or beekeeping is compatible with Reclamation's current or planned use of any land area, BLM may, at Reclamation's request, manage grazing and/or beekeeping on those lands, subject to a supplemental agreement made in accordance with this general agreement and under such provisions as Reclamation may deem necessary. On Reclamation withdrawn or acquired land where the management under supplemental agreement is with BLM, all grazing and/or beekeeping leases or permits issued by BLM shall be issued for BLM's normal permit or lease period, but shall include such special stipulations as determined necessary for Reclamation to protect the land or facilities for Reclamation project purposes. When Reclamation determines that within 2 years its needs and uses will no longer be compatible with grazing and/or beekeeping, Reclamation will so notify BLM enabling it to notify the lessees and permittees and terminate the leases and/or permits in accordance with section 402 of FLPMA. Under emergency conditions leases and permits may be terminated with shorter notice.

Grazing and/or beekeeping fees collected by BLM from Reclamation land managed by BLM shall be deposited into a treasury account as directed by Reclamation in accordance with applicable statutes. BLM will furnish, concurrent with the deposit by BLM, a copy of the certificate of deposit showing the date of deposit, fund symbol, amount, and Reclamation project number. When authorized by Reclamation, revenues or fees collected may remain with BLM to serve as Reclamation's reimbursement for work performed.

M. Mining Claims. Where the construction of a Reclamation water resource project requires the clearance of title to public land encumbered by unpatented mining claims, BLM will conduct, on a reimbursable basis, the examination of all unpatented mining claims. If construction is imminent, the agencies will work together to expedite clearance. The validity investigations of mining claims will, whenever possible, be in accordance with jointly agreed to schedules, wherever construction contractual schedules are not the driving force, and time will permit. Whenever possible, Reclamation will notify BLM of its needs in sufficient time for BLM to incorporate the work into its work program.

215-30 - 5/3/83

BLM_0081552

Reclamation Instructions

| Series 210  Land | Part 215  Land Management |
|---|---|

Reclamation will notify BLM at least 30 months before the beginning of the fiscal year in which the work is needed; except when Reclamation finds it cannot give this lengthy notice with respect to clearance of a small area, such as a damsite, pumping plant, substation, or radio communication site, then Reclamation and BLM will negotiate a suitable schedule sufficient to protect Reclamation's facilities.

As soon as Reclamation identifies a need for clearance of title work, Reclamation will supply BLM with a statement of the work it needs done, including necessary maps and other pertinent information. BLM will supply Reclamation with estimates of cost, manpower, time required, and other information. The State Director and the Regional Director will make necessary arrangements for incorporating the work into BLM's program.

Upon completion of the validity examination, BLM will notify Reclamation of the findings and recommendations. Where BLM believes mining claims are not supported by discovery, BLM will initiate a contest action and will report to Reclamation on the results of such actions.

N. Recreation. When the management of Reclamation withdrawn or acquired land not located within or adjacent to a National Forest is with Reclamation in accordance with section 5 of this agreement, unless otherwise authorized by Congress, Reclamation's recreation planning, development, and management will be in accordance with Public Law 89-72 (79 Stat. 213). Reclamation will encourage non-Federal public bodies to manage recreation associated with Reclamation's land and water areas. When a non-Federal recreation manager cannot be found, Reclamation will discuss with BLM the option of BLM managing recreation on Reclamation project lands. Supplemental agreements will, if necessary, be utilized to determine the management responsibility and funding reimbursement. The two agencies will assure coordination and cooperation to promote compatibility of recreation development and operation (including compatible recreation fee structure) on adjacent Reclamation/BLM lands. When Reclamation plans recreation development on project lands, it will consider recreation use and recreation potential of BLM administered lands that are adjacent to Reclamation project lands. When BLM plans recreation development on lands adjacent to Reclamation project lands, it will consider recreation use, recreation potential, and previously developed Reclamation recreation plans for authorized or constructed Reclamation projects. If BLM prepares plans or management actions that could alter recreation potential of a Reclamation project that is not yet constructed, BLM will consult with Reclamation.

O. Fish and Wildlife Mitigation and Enhancement. Each agency will coordinate with the other when its plans and activities involve fish and wildlife resources and values related to lands administered by the other. Where

215-30 - 5/3/83

Reclamation Instructions

water-related projects of either agency involve meeting the requirement of the Fish and Wildlife Coordination Act (FWCA), the agency initiating the action will ensure that the coordination and other requirements of the FWCA are met. Plans for the management of wildlife resources on lands of interest/concern to both agencies shall be developed jointly with the State under authority of the Sikes Act (16 U.S.C. 670 a-f). Management of the lands will be specified in a habitat management plan (HMP) developed for the area. The HMP will become part of Reclamation's land resources management plan for the area. Where a supplemental agreement executed for the specific Reclamation project provides for BLM's implementation of the approved mitigation plans, Reclamation will transfer the funds necessary to enable BLM to carry out its agreed to efforts. State funding and participation will be as specified in supplemental agreements between the agencies cooperating on the specific project, and in accordance with BLM's existing memorandum of understanding with the concerned State wildlife agency. Cooperative programs of both agencies shall be implemented by the State Director and the Regional Director in accordance with the management plan for the project. BLM will be responsible for funding such projects on its lands or on Reclamation lands where no Reclamation project is planned, and on which withdrawals have not bee revoked. Reclamation will provide funding for wildlife management related plans/activities/projects on the withdrawn public lands whenever such plans/activities/projects are for the purpose of mitigating the impacts of Reclamation projects.

     P.  Environmental Impact Analyses and Statements. All actions taken pursuant to this agreement concerning environmental matters will conform to the requirements of the Council on Environmental Quality regulations, 40 CFR Parts 1500-1508, 516 DM-1-7, the Bureau of Reclamation National Environmental Policy Act (NEPA) Handbook, and BLM Guidebooks 1791 and 1792. The agency (BLM or Reclamation) initiating the action which requires NEPA compliance will be the lead agency.

Where BLM or Reclamation proposes an action in an area where both Bureaus have responsibility or interest, the two Bureaus will cooperate in the preparation of the appropriate environmental analysis and, where necessary, the lead agency as defined above will prepare the categorical exclusion checklist, environmental assessment, FONSI, or EIS.

Cultural resource protection and managment matters will conform to applicable sections of 36 CFR 60, 63, and 800; Reclamation Instructions Part 376.11 and BLM Manuals 8100, 8110, and 8111.

     Q.  Planning Program. If either agency proposes to prepare a plan or undertake a study involving lands administered by or affecting the interests of the other agency, the agency proposing to conduct the study will provide

BLM_0081554

Reclamation Instructions

Series 210  Land                                    Part 215  Land Management

CHAPTER 1  LAND USE PLANNING AND ADMINISTRATION          Appendix I
                                                         Sheet 14 of 17

notice to the affected agency at the time when it is proposed.  The agencies
shall fully coordinate their plans and studies allowing ample time for budget
considerations.  When appropriate, the planning agency's plans may be adopted
by the other agency as an amendment to its own land use or resource management
planning document.  Provisions of 43 CFR 1600 and other appropriate authority
will be utilized in revising, amending, or preparing planning or study
documents.

Inconsistencies between the plans of the two agencies will be addressed as
prescribed by the planning authority of each agency.  Differences unresolved
through negotiation will be referred to the Assistant Secretary - Land and
Water Resources for action as deemed appropriate.

In the preparation of all planning documents, BLM will serve where practicable
and legal as the primary supplemental source of expertise for various areas
of multiple use land management when so requested by Reclamation.  Reclamation
will serve where practicable and as requested by BLM as the primary source of
expertise in the planning, management, and development of water resources.
This does not replace or supplement earlier agreements which either agency
has with third parties.

    R.  Engineering and Technical Services.  BLM State Directors may, at any
time, request Reclamation Regional Directors for service in connection with
the planning, investigation, design, inspection, construction, repair, or re-
habilitation of engineering works, including activities under emergency con-
ditions.  There is one exception to this procedure.  In accordance with DM
753 1.3c., requests for services related to dam safety will be initiated by
BLM's Dam Safety Officer, Denver Services Center, or Chief, Division of Engi-
neering, Washington, and submitted to the Reclamation Dam Safety Officer, En-
gineering and Research Center, Denver, or to the Commissioner, Washington.
Requests may be for inspection, site investigations, and other exploratory
work necessary to provide projects of a reconnaissance grade, or feasibility
grade, with sufficient technical details and costs estimates to support BLM's
budget requests.

Requests for engineering services will be made by letter from the State Di-
rector to that Regional Director responsible for the area in which BLM's works
needing services are located.  To the extent practical, such requests shall be
made 18 months prior to the budget year plus one, or as early as possible to
permit coordination with Reclamation work programs.  The requests shall specify
the following:

    a.  Job requirements;
    b.  Nature of the work to be done;

215-30 - 5/3/83

Reclamation Instructions

| Part 215 Land Management | Series 210 Land |
|---|---|

    c.   Extent of engineering and other services to be performed;
    d.   Schedules to be met; and
    e.   Budgetary information.

Where construction work which will cost over $1,000,000 and will extend over more than one fiscal year includes the issuance of invitations to bids and specifications for construction is to be undertaken by Reclamation for BLM, a separate supplemental agreement covering such work, and the record of its financing, shall be executed between the State Director of BLM and the Regional Director of Reclamation.  Reimbursement shall be made promptly upon receipt of information or a detailed statement of cost.  Such budgetary information will be supplied, whenever possible, 18 months prior to the budget year plus one.  The indirect costs charged for work performed by Reclamation or BLM shall include supportable overhead costs associated with work performed under this agreement and based on the guidelines established in part 346, DM 3.4 of the Departmental Manual.  These costs shall not be calculated by using arbitrary factors.

    S.  <u>Wild and Free-Roaming Horses and Burros</u>.  When wild and free-roaming horses or burros inhabit areas crossing administrative boundaries between BLM and Reclamation, their management and protection will be the responsibility of BLM, under its regulations.  Upon request from Reclamation, BLM will cooperate in the removal, and relocation or disposal, of such animals from Reclamation lands (see section 5.A.).

    T.  <u>Salinity Control on Public Land</u>.  Each agency will coordinate with the other when its plans and activities involve salinity control efforts in the Colorado River Basin which relate to or affect the other's management responsibilities or the lands administered by the other.  Coordination at the field administrative/technical level will be accomplished through Federal interagency Salinity Control Coordinating Committee, and supplemental agreements as needed, by the appropriate State Directors and Regional Directors.

    U.  <u>Computer Service</u>.  Whenever either agency has computer programming, time, or other service, which would be of use to the other agency, and such service is requested, the agency having the desirable program, time, or other service, will, within its time and personnel constraints, provide, on a reimbursable basis, the program, time, or service to the requesting agency. Whenever computer stored information of either agency is compatible with the other agency's computer, and would be of use to the other agency, arrangements will be made for automatic, compatible transfer of such information.

    V.  <u>Discrepancies in Policy</u>.  Where agency differences in policy exist, as described in policy documents and papers of the BLM or Reclamation, the policy of the agency having primary jurisdiction over the lands will prevail.

BLM_0081556

Reclamation Instructions

Series 210  Land                                Part 215  Land Management

CHAPTER 1  LAND USE PLANNING AND ADMINISTRATION        Appendix I
                                                        Sheet 16 of 17

W.  Hydrometeorological Data Collection.  Requirements for the collection of hydrometeorological data on BLM lands, including wilderness areas, or wilderness study areas, will be determined mutually in order to establish correlation networks with gages outside such areas to enhance scientific study, or weather modification, to improve water supply forecasting, and for public safety in flood forecasting and flood control operations.  Agreement for installation of hydrometeorological data collect on devices will be accomplished through the BLM consultation and permit process.  Hydromet stations may be placed and maintained within primitive areas, wilderness areas, or wilderness study areas administered by BLM only where approved by BLM, and will be placed and maintained in a manner prescribed by BLM.

X.  Road Maintenance.  When administratively controlled roads extend across boundary lines between BLM and Reclamation lands, then the agency offices are encouraged to develop local supplemental agreements for exchange of maintenance activities.  The purpose of this is to improve efficiency by combining similar or like work across administrative boundaries.  All maintenance activities should be accomplished in such a manner so as to protect the environment and performed to a standard that places user safety at the forefront.

Y.  Other Specific Services.  This agreement may be amended or modified at any time, upon mutual concurrence, to cover any service or requirement overlooked, or developing in the post-signing period.  Amendments must be initialed by both agency heads or their designees to become effective.

Section 7.  Supplemental Agreements:  Supplemental agreements may be entered into by a BLM State Director and a Reclamation Regional Director to implement this master agreement.  Those supplemental agreement needs identified within this master agreement that directly affect project authorization will be completed during the planning stage for the project.

Section 8.  Implementation:  This agreement is effective upon signature of the heads of both agencies.  A copy of this agreement will be distributed by each agency to each State and Regional Director.

Section 9.  Renegotiation:  This agreement is renegotiable at the option of either party.

215-30 - 5/3/83

BLM_0081557

Reclamation Instructions

| Part 215  Land Management | Series 210  Land |
|---|---|

Appendix I
Sheet 17 of 17          CHAPTER 1  LAND USE PLANNING AND ADMINISTRATION

Section 10.  Termination of Agreement:  This agreement may be terminated upon mutual agreement or upon 90 days written notice of either party.


Commissioner, Bureau of Reclamation

March 25, 1983
Date


Director, Bureau of Land Management

March 25, 1983
Date

215-30 - 5/3/83

3-16-2010
2-5 pm

**United States Department of the Interior**

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE

TAKE PRIDE IN AMERICA

**Uncompahgre Resource Management Plan Revision and EIS**

### ECONOMIC WORKSHOPS

Date:  March ____ 2010

Location:  RIDGWAY

| NAME / AFFILIATION | PHONE NUMBER | EMAIL |
|---|---|---|
| 1  Bill Steele | | |
| Public Lands Partnership | | |
| 2  Keith Meinert - Ouray Co. | | |
| 3  Paul Szkloty | | |
| 4  Bob Risch | | |
| 5  Kelly Crane | 970-209-2369 | kelly.crane@state.co.us |
| 6  Lee Stephensen | | |
| 7  Joan May | 970-728-3844 | joanm@san miguelcounty.org |
| 8  Greg Clifton | 970 626 5308 | gclifton@town.ridgway.co.us |
| 9  Pat Willits | | |

BLM_0081559

| NAME / AFFILIATION | PHONE NUMBER | EMAIL |
| --- | --- | --- |
| | | |



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
## UNCOMPAHGRE FIELD OFFICE



### Uncompahgre Resource Management Plan Revision and EIS
### ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes_____ No __✓__

If yes, what was it? _____

_____

_____

2. Did we miss anything we should know about your community? _____
_____ *You have put the recreational component at the*
*bottom of the list. This is probably the*
*most important issue to this community*

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes_____ No __✓__

If yes or no, how so? ____ *THERE WAS No meaningful*
*Statistics regarding the importance/Payback*
*of each potential activity.*

4. Did you consider the workshop a productive use of your time today? Yes_____ No __✓__

If no, why not? *Failed to see how this creates a*
*balance of management of public lands. —*

5. What could we have done to make the workshop better? *Focus on how*
*this would relate to the RMP*

_____

BLM_0081562



# United States Department of the Interior

### BUREAU OF LAND MANAGEMENT
### UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes ✓ No _____

If yes, what was it? _Economic data and perspectives of residents on future development_

2. Did we miss anything we should know about your community? _____

_____

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes ✓ No _____

If yes or no, how so? _how demographics shift across the mid-west counties → UFO area._

4. Did you consider the workshop a productive use of your time today? Yes ✓ No _____

If no, why not? _____

_____

5. What could we have done to make the workshop better? _Beer break! Craft brew preferred._

BLM_0081563

BLM_0081564



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes ✓ No _____
If yes, what was it? *Relative Income levels + employment statistics.*
_____

2. Did we miss anything we should know about your community? *Not really.*
_____
_____
_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes _____ No _____

If yes or no, how so? _____
_____
_____

4. Did you consider the workshop a productive use of your time today? Yes ✓ No _____
If no, why not? *Brainstorming with others.*
_____

5. What could we have done to make the workshop better? *Add Recreation, to the category list?*
_____

BLM_0081565

BLM_0081566



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes ✓ No _____

If yes, what was it? _New perspective on economic opportunities._

2. Did we miss anything we should know about your community? _____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes ✓ No _____

If yes or no, how so? _Diverse conversation is good,_

4. Did you consider the workshop a productive use of your time today? Yes ✓ No _____

If no, why not? _____

5. What could we have done to make the workshop better? _____
_More direct relationship + BLM_

BLM_0081568



# United States Department of the Interior

### BUREAU OF LAND MANAGEMENT
### UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes_____ No___✓___

If yes, what was it? _____

_____

_____

2. Did we miss anything we should know about your community? _QUALITY of LIFE_

_____

_____

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes_✓__ No_____

If yes or no, how so? _IT TAKES A "DIVERSITY" TO HAVE A HEALTHY COMMUNITY_

_____

4. Did you consider the workshop a productive use of your time today? Yes__✓__ No_____

If no, why not? _____

_____

_____

5. What could we have done to make the workshop better? _JUST RIGHT ꝺꝺꝺ_

_____

_____

BLM_0081569

BLM_0081570



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes ✗ No_____

If yes, what was it? _____ *met new concerned of citizens* _____

_____

_____

2. Did we miss anything we should know about your community? _____

_____ *not really* _____

_____

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes_____ No ✗

If yes or no, how so? _____

_____

_____

4. Did you consider the workshop a productive use of your time today? Yes ✗ No_____.

If no, why not? _____

_____

_____

5. What could we have done to make the workshop better? _____

_____ *role of BLM overall a bit lost on*
_____ *"wish list" approach to economic development*

– *no realistic choices – all silver bullets*
*were options*

BLM_0081571

BLM_0081572



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
## UNCOMPAHGRE FIELD OFFICE



**Uncompahgre Resource Management Plan Revision and EIS**
**ECONOMIC WORKSHOPS – March 2010**

EVALUATION

1. Did you hear anything new about your community?   Yes_____   No___✓___

If yes, what was it?   _Some good reminders_ _____

_____

2. Did we miss anything we should know about your community?   _Strong tourism_
_contribution to our economy was not mentioned/quantified_ _____

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health?   Yes_____   No___✓___

If yes or no, how so?   _not new – but glad to help the process_ _____

_____

4. Did you consider the workshop a productive use of your time today?   Yes_____   No_____

If no, why not?   _A little bit too basic for the level of involvement of_
_these participants. The rating/evaluation results won't be_
_indicitive – confusion on definitions, skewed to a few participating attendees_

5. What could we have done to make the workshop better?   _More current data_ _____

_____

_____

BLM_0081574



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes ✓ No ____

If yes, what was it? _Some of the economic data – Non-labor income; median age graph, unemployment stats_

2. Did we miss anything we should know about your community? _Our focus in on being a year around Destination resort._

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes ____ No ✓

If yes or no, how so? _I have spent 30 years working on Community/economic Development – I understand the basic dynamics_

4. Did you consider the workshop a productive use of your time today? Yes ✓ No ____

If no, why not? _Good interaction with participants_

5. What could we have done to make the workshop better? _I am still trying to understand what a relationship with BLM looks like. I have a better understanding of USFS – because we work with them on a regular basis_

BLM_0081576



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes ✓ No _____

If yes, what was it? _HIGH PERCENTAGE OF WORKFORCE EARNING INCOME OUT OF COUNTY. HIGH PERCENTAGE OF TRANFER/NON-LABOR INCOME INTO COUNTY_

2. Did we miss anything we should know about your community? _____

_BE HELPFUL TO QUANTIFY VALUE OF TOURISM TO LOCAL ECONOMY. . . VALUE OF HUNTING + FISHING?_

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes _____ No _____

If yes or no, how so? _____

_____

_____

4. Did you consider the workshop a productive use of your time today? Yes ✓ No _____

If no, why not? _____

_____

_____

5. What could we have done to make the workshop better? _____

_HOW DO YOU CORRELATE ECONOMIC DEVELOPMENT/ HEALTH/VIABILITY TO QUANTITY/QUALITY/ HEALTH OF BLM PUBLIC LANDS_

BLM_0081578



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes_____ No ✓

If yes, what was it? _____

_____

_____

2. Did we miss anything we should know about your community? _Out door activities_
_drive our local economy from a BLM perspective._
_ie, thats where the BLM can help our econ_
_grow_

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes ✓ No_____

If yes or no, how so? _To a limited degree. Would like to_
_see better statistics ie ROI for different_
_activites / Bucns on the local econ_

4. Did you consider the workshop a productive use of your time today? Yes_____ No_____

If no, why not? _I don't think the initial stats were_
_informative. Brainstorming was more productive_

5. What could we have done to make the workshop better? _ROI's (Return on_
_investment) for different economics opportunities_

_____

BLM_0081579

BLM_0081580

**3-16-2010**



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
## UNCOMPAHGRE FIELD OFFICE

**2-5 PM**



### Uncompahgre Resource Management Plan Revision and EIS

## ECONOMIC WORKSHOPS

Date: March ____, 2010

Location: **RIDGWAY**



| NAME / AFFILIATION | PHONE NUMBER | EMAIL |
|---|---|---|
| 1 | Greg Sparks, Tavel Mtn. Village | ▉▉▉▉▉ |
| 2 | Ed Page | 249-3935 @SUE | epage @ montrose county. net. |
| 3 | Sue McIntosh FORU | ▉▉▉▉▉ | |
| 4 | Al Weller | ▉▉▉▉▉ | |
| 5 | Lynn Padgett owns Wind | ▉▉▉▉▉ | |
| 6 | Gordon Reichard/TRED/RTG Boce | 596.1282 | gordon @ fellmed.org |

BLM_0081581

BLM 0081582

| NAME / AFFILIATION | PHONE NUMBER | EMAIL |
|--------------------|--------------|-------|
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |
|                    |              |       |



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT

UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS

Ridgway, Colorado – Tuesday, March 16, 2010 (2:00 – 5:00 PM)

Workshop Objectives:
- Identify local economic and social issues, conditions, and trends, including relationships between communities and BLM lands
- Identify desired local economic and social conditions
- Identify opportunities to advance local economies and social goals through planning decisions, within the authority of BLM or other partners
- Identify partnerships with local communities, organizations, and cooperating agencies
- Identify important sources of information regarding social and economic issues

1.  Welcome

2.  Introductions and Logistics

    Attendees:

    Bruce Krickbaum – BLM Uncompahgre Field Office (UFO), Planning & Environmental Coordinator and RMP project lead

    Bill Bottomly – West Slope Mediation and Facilitation, LLC

    John Martin – Martin Economics

    Zoe Ghali – EMPSi

    Other attendee's name – Affiliation
    Other attendee's name – Affiliation

3.  Community Economic Profile
    - How communities function
    - Snapshot of the data and identification of data sources
    - Review of the data
    - Community feedback on the data

4.  Overview of Community Assessment Results

5.  Group Discussions
    - How do you perceive your community?
    - What do you want your community to be?
    - Break into groups and complete community potential evaluation

6. Summary of Group Discussions and Community Potential Evaluation

7. How does the BLM fit in with your community?
   - How does the use of public land fit into community objectives?
   - What can BLM do to partner with your community (county, etc.) to reach its potential?

8. Summary of Workshop and Questions of BLM Representative(s)

9. Complete Workshop Evaluation

10. What Is Next and Project Contacts
    - Project website: www.uformp.com
    - Contact: Bruce Krickbaum, BLM, Montrose, CO; (970)240-5300; bruce_krickbaum@blm.gov

11. Adjourn

BLM_0081584

Mr. Bruce Krickbaum

I appose the uncompahgre management change.

Received

MAR 1 6 2010

~hgre Field Office

Address:
N/A

BLM_0081585

IN

| | |
|---|---|
| **From:** | Allison Elliot |
| **To:** | UFORMP@BLM.GOV; |
| **cc:** | Barbara Silverman; |
| **Subject:** | Resource Mngt Plan for the Uncompahgre |
| **Date:** | Wednesday, March 17, 2010 2:35:36 PM |

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Ave.
Montrose, CO 81401

Re: Scoping Comments on the Resource Management Plan
(RMP) Revision

Dear Mr. Krickbaum,

As a citizen living in Paonia and a landowner who owns one of
the few public access points to the BLM in this area, I would like
to contribute my thoughts and experiences of the recreational
use in our area to the public comments.

1 A-PI LR

In recent years there has been increased activity through our
access point. It is the only one that people can walk or ride their
bikes to directly from town. There are other entrances across
private land but they do not have formal easements. Ours is
limited in what is allowed to cross. The previous owner limited
the access to pedestrians and bike riders only. We have no
problem with limiting motorized access and hunting access
through this gate. We are sorry that dogs are limited, though.

2 A-PI REC

In an over all way, our experience tells us that separating
different uses by creating different access points for different
activities is needed. We feel that motorized activities should not
be allowed near town because of concerns for pedestrian, bike
and horse rider safety as well as noise considerations for the
near by homes. We would recommend that motorized vehicle
access and hunting only be allowed at a much further distance

3 A-PI REC

4 A-PI REC

away from town. Such as near Minnesota Reservoir where there are existing roads and the oak brush will discourage vehicles from driving across the landscape. Also, because of terrain, it is less likely that hunters will make there way toward town. There is a "power line road" that is near town. ATVs and other vehicles use this access, which is across private property, and is too close to town for safe hunting. Access to motorized vehicles at this point should be stopped.

5 A-PI REC

Safe hunting is a growing concern. There have been some rather close calls here recently. I have encouraged those involved to write to you directly. When people look at a map, they can see that a public road comes right up to the BLM, so they head out there not realizing that they cannot drive onto BLM. They get up-set and we look bad for limiting their access.

6 A-PI TM

As you know, there is a growing network of social trails that are being created by hikers and bikers in on the south slope of Jumbo Mt. near town. Ideally, those trails will get formalized with proper signage, easements and liability covered. We also need to develop some trails appropriate for hiking/walking that are separate from the bike trails. Currently, many people walk on our road (a private road) because it is of a gentler grade and is an all weather access. We also need consideration for horseback riders.

7 A-PI TM

To summarize:

8 A-PI REC

9 A-PI REC

The public needs more access and better access.
There needs to be different access for different activities. Those access points should be separated by distance and topography so that the activities do not conflict.

We need signage, parking and staging areas as appropriate for each entrance.

10 A-PI TM

11 B-NP

Thank you for conducting a scoping process that involves public input. We look forward to results that enhance the access and

BLM_0081587

experience of our public lands a positive one.

Sincerely,
Allison Elliot

BLM_0081588

## Zoe Ghali

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **Sent:** | Wednesday, March 17, 2010 7:48 PM |
| **To:** | Angie Adams; Ecnjohn@aol.com; Zoe Ghali; bbott@montrose.net; David Batts; Kate Wynant; Barbara_Sharrow@blm.gov |
| **Subject:** | Follow-up to Socio Economic Workshop |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Comments from Commissioner Henderson, regarding social economics.

----- Forwarded by Bruce Krickbaum/MOFO/CO/BLM/DOI on 03/17/2010 07:45 PM -----

```
        "Ron Henderson"
        <rhenderson@montr
        osecounty.net>                                      To
                           <bruce_krickbaum@blm.gov>
        03/17/2010 08:44                                    cc
        AM                 "'Sandy Head'"
                           <sandyh@montroseedc.org>
                                                      Subject
```

Hope this is a better read
Dear Bruce,
Thank you for including Montrose County Government in your considerations for Montrose
County Socio-Economic impacts of Montrose County on the BLM, and the BLM on Montrose
County. The two are deeply intertwined and in fact, inseparable both as to the lifestyle
we enjoy as well has several business ramifications using the resources of the BLM on the
West and East flanks of the Uncompahgre National Forest. In these contemporary times, it
is increasingly clear that Montrose County has not fully arrived at Montrose County's
practical potential as a legitimate recreational playground for the local population.
Montrose County can be a destination recreational site for the traveling USA, World,
public, seeking that which they cannot find anywhere but in Montrose County BLM Lands. You
and the Uncompahgre Forest account for 74+% of the land mass in Montrose County. The BLM
and Montrose County have, for example:

+Mineral sources
+Various biomass sources (timber->chips) Remarkable variety of
+recreational uses (motorized->bicycle->foot) &
Hunting
+Ecological preservation & continuance of flora and fauna Scenic Vista's
+Grazing for domestic and wild creatures Water Management Montrose
+County's transportation plan (connectivity of the East and West
+portions
of Montrose County)
+Catastrophe mitigation on BLM, National Forest, and the East and West
portions of Montrose County proper.
+AND much more

1

BLM holds sway over the use of all by the citizens who have a say in the BLM's use of these lands and resources through a ponderous and lengthy process evoked from time to time.

This being said, the BLM Lands are an integral part of Montrose County becoming a destination vacation area as well as our trademark lifestyle.
Using that which is given and made available on the BLM and the National Forest connected by a all season road from the West of Montrose County to the East thoroughly enhances recreational and commercial ventures in all of the BLM and Private Lands in Montrose County. The BLM Lands in Montrose County will contribute to a strong national, state, and local economy through the holistic use of the resources available now and soon to be in the future. Our security as a nation is also tied to these very concepts.
To put a price on these values is not possible, their value is immeasurable for obvious reasons. To create jobs that originate in Montrose County have a much larger multiplier impact than those that don't, but secondary jobs are an essential contributor.

Mission critical communications is key to our partnership. Mutual recognition of the value of what can be gained from a closely communicated relationship would and is a powerful tool. The possible designation of Wild And Scenic Rivers on the San Miguel as it flows through Montrose County would be a huge blow to maintaining the agricultural/ranching flavor found there as well as impairing municipal and commercial growth and/or maintenance in that area of Montrose County. Working together, we can mutually promote and direct the activity that takes place on the BLM Lands in Montrose County to the benefit of the largest portion of potential participants. Montrose County can be most especially helpful to the BLM by working in and with the private sector promoting communication and information.

Montrose County is completing our own socio-economic study which will be available soon which Montrose County will gladly provide a copy of said. I want to again thank the BLM for reviewing your economic data at your public workshop. Even with the changes you want to make to your presentation, it is clear that Montrose County is definitely different from Ouray and San Miguel Counties in what we have to offer geologically as well as the socio-economic differences. How Montrose County, BLM, and the National Forest work with these differences will make ALL THE DIFFERNCE to the Nation and the County Residents in enjoying the lifestyle available here.

Thanks again for asking for my comment. If I have created more confusion, please indicate where, and I will reply gladly. We are on the cusp of very important changes in our Country and County.

Best

Ron Henderson


 I originally wrote this email on a multiple tasking key board that created many phrasing errors that I didn't catch until I reread it this Morning.

Pardon the several incoherent lines that were created by some of my key strokes which made the email really unreadable. Please excuse the mistake.

Hopefully this is a better read.

2

IN

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **To:** | Angie Adams; Ecnjohn@aol.com; Zoe Ghali; bbott@montrose.net; David Batts; Kate Wynant; Barbara_Sharrow@blm.gov |
| **Subject:** | Follow-up to Socio Economic Workshop |
| **Date:** | Wednesday, March 17, 2010 6:47:46 PM |

Comments from Commissioner Henderson, regarding social economics.

----- Forwarded by Bruce Krickbaum/MOFO/CO/BLM/DOI on 03/17/2010 07:45 PM
-----

    "Ron Henderson"
    <rhenderson@montr
    osecounty.net>                              To
                        <bruce_krickbaum@blm.gov>
    03/17/2010 08:44                            cc
    AM                  "'Sandy Head'"
                        <sandyh@montroseedc.org>
                                Subject

1 A-PI SE

Hope this is a better read
Dear Bruce,
Thank you for including Montrose County Government in your considerations
for Montrose County Socio-Economic impacts of Montrose County on the BLM,
and the BLM on Montrose County. The two are deeply intertwined and in fact,
inseparable both as to the lifestyle we enjoy as well has several business
ramifications using the resources of the BLM on the West and East flanks of
the Uncompahgre National Forest. In these contemporary times, it is
increasingly clear that Montrose County has not fully arrived at Montrose
County's practical potential as a legitimate recreational playground for
the local population. Montrose County can be a destination recreational
site for the traveling USA, World, public, seeking that which they cannot
find anywhere but in Montrose County BLM Lands. You and the Uncompahgre
Forest account for 74+% of the land mass in Montrose County. The BLM and
Montrose County have, for example:

+Mineral sources
+Various biomass sources (timber->chips)
+Remarkable variety of recreational uses (motorized->bicycle->foot) &
Hunting
+Ecological preservation & continuance of flora and fauna
+Scenic Vista's
+Grazing for domestic and wild creatures Water Management Montrose
+County's transportation plan (connectivity of the East and West portions
of Montrose County)
+Catastrophe mitigation on BLM, National Forest, and the East and West

portions of Montrose County proper.
+AND much more

BLM holds sway over the use of all by the citizens who have a say in the BLM's use of these lands and resources through a ponderous and lengthy process evoked from time to time.

**2 A-PI SE**

This being said, the BLM Lands are an integral part of Montrose County becoming a destination vacation area as well as our trademark lifestyle. Using that which is given and made available on the BLM and the National Forest connected by a all season road from the West of Montrose County to the East thoroughly enhances recreational and commercial ventures in all of the BLM and Private Lands in Montrose County. The BLM Lands in Montrose County will contribute to a strong national, state, and local economy through the holistic use of the resources available now and soon to be in the future. Our security as a nation is also tied to these very concepts. To put a price on these values is not possible, their value is immeasurable for obvious reasons. To create jobs that originate in Montrose County have a much larger multiplier impact than those that don't, but secondary jobs are an essential contributor.

**3 A-GE**

Mission critical communications is key to our partnership. Mutual recognition of the value of what can be gained from a closely communicated relationship would and is a powerful tool. The possible designation of Wild And Scenic Rivers on the San Miguel as it flows through Montrose County would be a huge blow to maintaining the agricultural/ranching flavor found there as well as impairing municipal and commercial growth and/or maintenance in that area of Montrose County. Working together, we can mutually promote and direct the activity that takes place on the BLM Lands in Montrose County to the benefit of the largest portion of potential participants. Montrose County can be most especially helpful to the BLM by working in and with the private sector promoting communication and information.

**4 A-PI WSR**

**5 A-GE**

**6 A-PI SE**

Montrose County is completing our own socio-economic study which will be available soon which Montrose County will gladly provide a copy of said. I want to again thank the BLM for reviewing your economic data at your public workshop. Even with the changes you want to make to your presentation, it is clear that Montrose County is definitely different from Ouray and San Miguel Counties in what we have to offer geologically as well as the socio-economic differences. How Montrose County, BLM, and the National Forest work with these differences will make ALL THE DIFFERNCE to the Nation and the County Residents in enjoying the lifestyle available here.

Thanks again for asking for my comment. If I have created more confusion, please indicate where, and I will reply gladly. We are on the cusp of very important changes in our Country and County.

Best

Ron Henderson


I originally wrote this email on a multiple tasking key board that created many phrasing errors that I didn't catch until I reread it this Morning.

Pardon the several incoherent lines that were created by some of my key strokes which made the email really unreadable. Please excuse the mistake.

Hopefully this is a better read.

BLM_0081593

IN



Bureau of Land Management
Uncompahgre Field Office RMP
To: RMP planning team
March 17, 2010

**1 A-PI VEG**

Dear team members:
Thank you for the opportunity to comment on the upcoming plan. As the Western Slope Botanist of Colorado Natural Heritage Program (CNHP), and a resident of Ridgway, this plan is personally important to me.  My major interest is management of vegetation and rare plants.  I would suggest that the following be considered in the plan:

**2 API ACEC**

**Clay-loving wild buckwheat (*Eriogonum pelinophilum*):**  Expand the Fairview South ACEC to the south to encompass all populations on BLM land.  Also add other areas of the UFO that support the buckwheat, even if they are not contiguous with existing ACECs.

**3 A-PI SDA**

**Payson's lupine (*Lupinus crassus*):** Designate an ACEC or initiate other special management to protect the populations of Payson's lupine in Paradox Valley.  Refer to CNHP's Potential Conservation Areas and surveys to be conducted in 2010 for plants' distribution.

**4 A-PI VEG**

**Continue to survey** for rare plants and update existing records.  Require private contractors who conduct rare plant surveys to submit element occurrence records to CNHP as part of their contract.

**5 A-PI WSR**

**Rivers:**  Pursue Wild and Scenic River designation, or failing national designation take steps locally to protect the high quality riparian areas that were deemed eligible by the study group that met in March, 2009.

**6 A-PI VEG**

**Vegetation management:**  Recognize the value and scarcity of old growth pinyon-juniper woodlands, and refrain from treatments to set them back to an earlier seral stage.  Proceed cautiously with vegetation treatments, and require pre-and post-treatment monitoring to measure the success of treatments.

**7 A-PI VEG**

**Off-road vehicle use:** Require all vehicles to stay on designated roads and trails, and close excess roads and trails in the Escalante-Dominguez NCA.  Arrange to have better enforcement of travel regulations.

**8 B-GE**

**9 B-NP**

**Non-native species:** Aggressively control weeds, especially Russian knapweed, cheatgrass and tamarisk.  Make every effort to require re-seeding with only native species.  Continue efforts to collect native seed in situ.

Yours truly,
Peggy Lyon

**9 A-PI WD**

**10 A-PI VEG**

**11 A-PI VEG**

BLM_0081595

PJ 1 of 2



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
## UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS

### ECONOMIC WORKSHOPS

Date: March 17, 2010

Location: Naturita , Colorado

| NAME / AFFILIATION | PHONE NUMBER | EMAIL |
|---|---|---|
| Chris Daniel  NNACC | | |
| Jeff Sonnenberg | | |
| Richard Craig | | |
| Christine Pierce | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

BLM_0081596

BLM_0081597

Pg 2 of 2



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
## UNCOMPAHGRE FIELD OFFICE



**Uncompahgre Resource Management Plan Revision and EIS**

## ECONOMIC WORKSHOPS

Date: March 17, 2010

Location: ___Naturita___, Colorado

| NAME / AFFILIATION | PHONE NUMBER | EMAIL |
|---|---|---|
| Yvette Henson/CSU Extension | 9703279393 | yvette.henson@colostate.edu |
| PAUL SZILAGYI | ███████ | ███████ |
| Debra Leaf/Town of Naturita | 970-865-2286 | twnclerknaturita@aol.com |
| Marty Warner | ███████ | ███████ |
| DIANNA KEAMS | ███████ | ███████ |

BLM_0081599



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
## UNCOMPAHGRE FIELD OFFICE



**Uncompahgre Resource Management Plan Revision and EIS**
**ECONOMIC WORKSHOPS – March 2010**

### EVALUATION

1. Did you hear anything new about your community? Yes_____ No _X___

If yes, what was it? _____

_____

_____

2. Did we miss anything we should know about your community? ___ *No* _____

_____

_____

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes __X__ No_____

If yes or no, how so? ___ *yes, many ways* _____

_____

_____

4. Did you consider the workshop a productive use of your time today? Yes __X__ No_____

If no, why not? _____

_____

_____

5. What could we have done to make the workshop better? ___ *MORE COOKIES* _____

_____

_____

BLM_0081601



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community?  Yes ✗  No _____

If yes, what was it? _Our community being 10 mons. behind State statistics - How closely related everything our community does is tied to BLM._

2. Did we miss anything we should know about your community? _____

_____

_____

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health?  Yes ✗  No _____

If yes or no, how so? _____

_____

_____

4. Did you consider the workshop a productive use of your time today?  Yes ✗  No _____

If no, why not? _____

_____

_____

5. What could we have done to make the workshop better? _____

_____

_____

BLM_0081603



# United States Department of the Interior

### BUREAU OF LAND MANAGEMENT
### UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes~~✗~~ No ✗

If yes, what was it? _____

_____

_____

2. Did we miss anything we should know about your community? _____

_____ NO _____

_____

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes ✗ No____

If yes or no, how so? _____

_____

_____

4. Did you consider the workshop a productive use of your time today? Yes ✗ No____

If no, why not? _____

_____

_____

5. What could we have done to make the workshop better? _____

_____

_____

BLM_0081605



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



**Uncompahgre Resource Management Plan Revision and EIS
ECONOMIC WORKSHOPS – March 2010**

EVALUATION

1. Did you hear anything new about your community? Yes _X_ No _____

If yes, what was it? DIFFERENT  PERSPECTIVES  REGARDING

WHATS IMPORTANT

2. Did we miss anything we should know about your community? WE  WANT

INDUSTRY  TO  BE  ENABLED  IN  OUR  AREA

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes _X_ No _____

If yes or no, how so? _____

4. Did you consider the workshop a productive use of your time today? Yes _X_ No _____

If no, why not? _____

5. What could we have done to make the workshop better? I  WOULD  LIKE

THESE  WORKSHOPS  TO  FOLLOW  THROUGH  TO

DECISION. RUN  DRAFT  IDEAS  BY  RESIDENTS(?)

BLM_0081606

BLM_0081607



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
### ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community?  Yes __✓__  No _____

If yes, what was it? _How much land is actually BLM + how much that impacts everything._

2. Did we miss anything we should know about your community? _____

_____

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health?  Yes __✗__  No _____

If yes or no, how so? _____

_____

_____

4. Did you consider the workshop a productive use of your time today?  Yes __✗__  No _____

If no, why not? _____

_____

_____

5. What could we have done to make the workshop better? _____

_____

_____

BLM_0081608

BLM_0081609

3-17



# United States Department of the Interior
## BUREAU OF LAND MANAGEMENT
## UNCOMPAHGRE FIELD OFFICE



TAKE PRIDE
IN AMERICA

### Uncompahgre Resource Management Plan Revision and EIS

## ECONOMIC WORKSHOPS

Date: Mar~~ch~~   2016                    9-12

Location: ~~NORWOOD~~, Colorado

| NAME / AFFILIATION | PHONE NUMBER | EMAIL |
|---|---|---|
| Joe Reagan – Town of Norwood | | |
| | | |



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
### UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS

### ECONOMIC WORKSHOPS

Date: March _____, 2010

Location: _____, Colorado

| NAME / AFFILIATION | | PHONE NUMBER | EMAIL |
|---|---|---|---|
| Lance Bray | BRAY RANCHES | 327-4933 | ████████████ |
| Zandon Bray | Bray Ranches | 327-0165 | zandon@brayranches.com |



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



**Uncompahgre Resource Management Plan Revision and EIS**
**ECONOMIC WORKSHOPS – March 2010**

### EVALUATION

1. Did you hear anything new about your community? Yes_____ No __✓__

If yes, what was it? _____

_____

_____

2. Did we miss anything we should know about your community? ___Strong___ __in__
_agriculture_ — ~~the lot of~~ I think you really
need to look @ what the true community
is instead of just counties

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes __x__ No_____

If yes or no, how so? ___going back to the rain barrel, keeping___
_funds & involvement in the community_

_____

4. Did you consider the workshop a productive use of your time today? Yes _✓_ No_____

If no, why not? _____

_____

_____

5. What could we have done to make the workshop better? ___I thought it___
_was pretty good, but maybe more information_
_on what the BLM is thinking in doing ε_
_their stand point on these issues._



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
### ECONOMIC WORKSHOPS – March 2010

### EVALUATION

1. Did you hear anything new about your community? Yes _____ No _X_

If yes, what was it? _____

_____

_____

2. Did we miss anything we should know about your community? *I think it's important to look @ the Norwood/Nuck/Naturita area as separate from Telluride & Montrose.*

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes _X_ No _____

If yes or no, how so? *The dialogue within the group was good to hear in regards to how this area fits into both Montrose & San Miguel Counties.*

4. Did you consider the workshop a productive use of your time today? Yes _X_ No _____

If no, why not? _____

_____

5. What could we have done to make the workshop better? *Attendance was low but probably not in s/our control.*

_____



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



### Uncompahgre Resource Management Plan Revision and EIS
### ECONOMIC WORKSHOPS – March 2010

## EVALUATION

1. Did you hear anything new about your community? Yes_____ No ✓

If yes, what was it? _____

_____

_____

2. Did we miss anything we should know about your community? _____

_____ *the importance of water* _____

_____

_____

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes_____ No ✓

If yes or no, how so? _____ *I had a pretty good*

_____ *understanding* _____

_____

4. Did you consider the workshop a productive use of your time today? Yes ✓ No_____

If no, why not? _____

_____

_____

5. What could we have done to make the workshop better? _____

_____ *can't think of anything* _____

_____

BLM_0081614



## United States Department of the Interior

### BUREAU OF LAND MANAGEMENT
### UNCOMPAHGRE FIELD OFFICE



**Uncompahgre Resource Management Plan Revision and EIS**
**ECONOMIC WORKSHOPS**

Naturita, Colorado – Wednesday, March 17, 2010 (2:30 – 5:30 PM)

Workshop Objectives:
- Identify local economic and social issues, conditions, and trends, including relationships between communities and BLM lands
- Identify desired local economic and social conditions
- Identify opportunities to advance local economies and social goals through planning decisions, within the authority of BLM or other partners
- Identify partnerships with local communities, organizations, and cooperating agencies
- Identify important sources of information regarding social and economic issues

1. Welcome

2. Introductions and Logistics

    Attendees:

    Bruce Krickbaum – BLM Uncompahgre Field Office (UFO), Planning & Environmental Coordinator and RMP project lead

    Bill Bottomly – West Slope Mediation and Facilitation, LLC

    John Martin – Martin Economics

    Zoe Ghali – EMPSi

    Other attendee's name – Affiliation
    Other attendee's name – Affiliation

3. Community Economic Profile
    - How communities function
    - Snapshot of the data and identification of data sources
    - Review of the data
    - Community feedback on the data

4. Overview of Community Assessment Results

5. Group Discussions
    - How do you perceive your community?
    - What do you want your community to be?
    - Break into groups and complete community potential evaluation

BLM_0081615

6. Summary of Group Discussions and Community Potential Evaluation

7. How does the BLM fit in with your community?
   - How does the use of public land fit into community objectives?
   - What can BLM do to partner with your community (county, etc.) to reach its potential?

8. Summary of Workshop and Questions of BLM Representative(s)

9. Complete Workshop Evaluation

10. What Is Next and Project Contacts
    - Project website: www.uformp.com
    - Contact: Bruce Krickbaum, BLM, Montrose, CO; (970)240-5300; bruce_krickbaum@blm.gov

11. Adjourn



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
## UNCOMPAHGRE FIELD OFFICE



### Uncompahgre Resource Management Plan Revision and EIS
### ECONOMIC WORKSHOPS

Norwood, Colorado – Wednesday, March 17, 2010 (9:00 AM – 12:00 PM)

Workshop Objectives:
- Identify local economic and social issues, conditions, and trends, including relationships between communities and BLM lands
- Identify desired local economic and social conditions
- Identify opportunities to advance local economies and social goals through planning decisions, within the authority of BLM or other partners
- Identify partnerships with local communities, organizations, and cooperating agencies
- Identify important sources of information regarding social and economic issues

1. Welcome

2. Introductions and Logistics

   Attendees:

   Bruce Krickbaum – BLM Uncompahgre Field Office (UFO), Planning & Environmental Coordinator and RMP project lead

   Bill Bottomly – West Slope Mediation and Facilitation, LLC

   John Martin – Martin Economics

   Zoe Ghali – EMPSi

   Other attendee's name – Affiliation
   Other attendee's name – Affiliation

3. Community Economic Profile
   - How communities function
   - Snapshot of the data and identification of data sources
   - Review of the data
   - Community feedback on the data

4. Overview of Community Assessment Results

5. Group Discussions
   - How do you perceive your community?
   - What do you want your community to be?
   - Break into groups and complete community potential evaluation

---

BLM_0081617

6.  Summary of Group Discussions and Community Potential Evaluation

7.  How does the BLM fit in with your community?
    - How does the use of public land fit into community objectives?
    - What can BLM do to partner with your community (county, etc.) to reach its potential?

8.  Summary of Workshop and Questions of BLM Representative(s)

9.  Complete Workshop Evaluation

10. What Is Next and Project Contacts
    - Project website: [www.uformp.com](www.uformp.com)
    - Contact: Bruce Krickbaum, BLM, Montrose, CO; (970)240-5300; bruce_krickbaum@blm.gov

11. Adjourn

BLM_0081618

**Drew Vankat**

| | |
|---|---|
| **From:** | Angie Adams |
| **Sent:** | Thursday, March 18, 2010 10:38 AM |
| **To:** | UFO AR |
| **Subject:** | FW: Follow-up to BLM Economic Workshop |


```
-----Original Message-----
From: bruce_krickbaum@blm.gov [mailto:bruce_krickbaum@blm.gov]
Sent: Tuesday, March 16, 2010 11:52 AM
To: Angie Adams; Ecnjohn@aol.com; Zoe Ghali; bbott@montrose.net; David Batts; Kate Wynant
Subject: Fw: Follow-up to BLM Economic Workshop


Please use this information.

--Bruce


----- Forwarded by Bruce Krickbaum/MOFO/CO/BLM/DOI on 03/16/2010 11:48 AM
-----

        "Garry Baker"
        <gbaker@ci.montro
        se.co.us>                                        To
                      <bruce_krickbaum@blm.gov>          cc
        03/16/2010 11:02
        AM
                                                    Subject
                      RE: Follow-up to BLM Economic
                      Workshop
```

```
Bruce:

Thanks for the email. I'm sure you have noted that the economics presentation at the
Montrose meeting was too long, and took away from the most important part of the
meeting--participant feedback.

Below is my own response to the general questions.

1) The City of Montrose is committed to the economic development of this community.
People often think that public land recreation helps attract tourists. That may be, but I
believe the main benefit of nearby public land recreation is attracting and retaining
companies and employees.
Many of the people I know would not live here if public land weren't available for
hiking, biking, and motorized recreation. The Peach Valley area, Spring Creek Canyon, Dry
Creek Canyon, etc. give people a quick dose of solitude and fun just outside the city
limits.

2) The BLM should initiate communications with the City and other economic development
organizations to discuss the options and look into the feasibility of these options. It
seems to me that most local officials (including me) aren't aware of the possibilities.
I've noticed other communities have extensively developed nearby BLM lands for trails and
```

1

other recreation pursuits, and have marketed these lands effectively. Frankly, I don't know how this was achieved. Information describing the experiences of successful communities would be very helpful.

Thanks for all of your help.

Sincerely,

Garry Baker, AICP
Senior Planner, City of Montrose
107 S. Cascade Ave.
Montrose, CO 81401
(970) 240-1475 (voice)
(970) 252-4775 (fax)
gbaker@cityofmontrose.org


-----Original Message-----
From: bruce_krickbaum@blm.gov [mailto:bruce_krickbaum@blm.gov]
Sent: Tuesday, March 16, 2010 10:22 AM
To: Garry Baker
Subject: Follow-up to BLM Economic Workshop


Mr. Baker,

The BLM Uncompahgre Field Office staff appreciates your attendance at last Tuesday's Social-Economic workshop.
We value your time and truly regret that we did not achieve all the stated workshop objectives.

I am soliciting information on two important agenda items/objectives that we missed in order to obtain a complete picture of socio-economics in the Montrose vicinity of the planning area. Would you please take a few minutes to reply to this message with your input on the following questions?

1) How does the BLM fit in with your community?
   --How does the use of public land fit into community
     objectives?  What is the value of
     having BLM lands?
   --What can BLM do to partner with your community
     to reach its potential?

2) Do you know of any important sources of information regarding social and economic issues that BLM should consider?

Economic information and social aspects of the area are an important part of planning, developing alternatives, impact analysis, and decision making as we progress through our Resource Management Plan. I, and the rest of the Uncompahgre Field Office staff, sincerely hope that you remain an interested and active participant throughout the planning process, as your involvement is critical to a successful Resource Management Plan.

Thank you again for your time. Please contact me at 240-5300 or e-mail bruce_krickbaum@blm.gov with any questions or to further discuss these topics.

Thank you, Bruce

<><><><><><><><><><><><><><><><><><><><>
Bruce Krickbaum
Planner, Environmental Coordinator
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
970.240.5384

BLM_0081620

3

BLM_0081621

IN

| | |
|---|---|
| **From:** | Site Administrator on behalf of Karl Hanzel |
| **To:** | uformp@blm.gov |
| **Subject:** | the Dolores |
| **Date:** | Thursday, March 18, 2010 11:49:58 AM |

1 A-PI WSA

Mar 18, 2010

Bureau of Land Management Uncompahgre Field Office

Dear Uncompahgre Field Office,

Please pursue wilderness designation for the Dolores River Basin.

Uranium should be left in the ground... it's a non-renewable resource and mining it can't go on forever anyway.

*----->

2 A-PI MI

Best

Mr. Karl Hanzel
736 Wagonwheel Gap Rd
NO Mailing Lists PLEASE!
Boulder, CO 80302-9402
(303) 443-6602

Attn. Bruce Krickbaum
RMP Project Manager
2465 S. Townsend Avenue
Montrose,  Colorado
              81401

Received
MAR 1 8 2010
Uncompahgre Field Office

    I oppose the Uncompahue Resource Management Plan.  Do not change the Uncompaghre management policy.

Address:
N/A

BLM_0081623



Attn. Bruce Krickbaum
RMP Project Manager
2465 S. Townsend Avenue
Montrose, Colorado
                81401

    I oppose the Uncompahue Resource Management Plan.  Do not change the Uncompaghre management policy.

Address:
Vicki Chandler (?)
1359 Chipeta
Grand Junction, CO 81501

BLM_0081624

03/29/2010 MON 23:53  FAX 970 865 2880 Reams Const Naturita, CO                                    001/000



# Uncompahgre Resource Management Plan

We encourage you to provide your comments by filling out and submitting this comment form by March 19, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name __Earl__                    Last Name __Reams__                    Date __3/19/2010__

Mailing Address          __PO Box 2__

City          __Naturita__                    State __CO__          Zip __81422__

E-mail Address          __reamsconst@aol.com__

Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.) Yes: ☐Email materials     ☒Hard-copy materials     ☐No
Please note that planning materials are also available at our website: www.UFORMP.com

Please indicate your affiliation by checking the following boxes (check all that apply):

☒Individual (no affiliation)          ☐Citizen's Group          ☐Regulatory Agency
☐Non-profit Organization          ☐Elected Representative          ☐Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? ☐Unit 1  ☐Unit 2  ☐Unit 3  ☐Unit 4  ☒Unit 5  ☐No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ☐Colorado (west slope) ☐Colorado (front range or plains) ☐Other State - Which?_____  ☐ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years __55?__ Months_____

4. Why do you live here? ☒Occupation ☐Family ☐Proximity to public lands ☐Recreational Opportunities ☐Other_____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?

Re: Naturita Creek Wild & Scenic River Eligibility Criteria, Hydrologic Unit San Miguel – 24.97 miles,

BLM_0081625

/.

March 29, 2010

Uncompahgre Resource Management Plan

Attn: Bruce Krickbaum
RMP Project Manager
2465 S. Townsend Avenue
Montrose, Co. 81401

RE: Wild and Scenic River Designation — Naturita
Creek — Comments of H. Neil Reams Family
LLLP dba Reams Ranch

Dear Mr. Krickbaum:

These comments are submitted concerning the
proposed draft eligibility determination of Naturita
Creek under the Draft Wild and Scenic River
Eligibility Report.

The Reams Ranch is located in Montrose and
San Miguel Countys, Colorado, and encompasses
a significant portion of Naturita Creek including the
confluence with the San Miguel River. Reams
Ranch therefore has a compelling interest in the

03/29/2010 MON 23:53  FAX 970 865 2880  Reams Const.  Naturita,Co                    ⓐ003/005

**1 A-PI WSR**

2.

proposed recommendation for designation as
wild and scenic Rivers of Naturita Creek. Reams
Ranch is opposed to such designation, because of
but not limited to reasons herein, including that
Naturita Creek should not be considered eligible
or suitable for W.S.R designation.

**2 A-PI WSR**

The Draft Wild and Scenic River Eligibility
Report finds Naturita Creek to be a perennially
flowing tributary of the lower San Miguel River,
with no roads running parallel to it, two county
road bridge crossings, two state hiway bridge
crossings, and one unimproved road crossing.
The report also mentions water diversions along
its reach, but no impoundments.

Research finds adjudicated water and ditch rights
dating back to 1897 (Maverick Draw Ditch) and
water calls on Naturita Creek 11 times in the last
19 years. Evaluation of flows should focus on
normal water years with consideration of drought
or wet years during the inventory. Naturita
Creek drys up at least every other year. This
segment does not contain regular and predictable
flows their for should render it unsuitable for
designation under perennially flow.

Although no information about easements in the
Draft Report their are 4 powerlines crossing

03/29/2010 MON 23:53 FAX 970 865 2880 Reams Const. Naturita,Co                    @004/000

3

Naturita Creek and 2 crossings permitted, and
one Natural gas line. Naturita Creek is considered
to be eligible for designation with a "Scenic"
classification. Criteria for scenic classification:
Largely primitive and undeveloped, no substantial
evidence of human activity. Power line easements
and natural gas line easement should be considered
a disqualification for "scenic Classification"

**3 A-PI WSR**

This Draft Report finds "Fish" as a Outstanding
Remarkable Value. Three fish are named in the
draft report, Flannelmouth Sucker, Bluehead Sucker
and Roundtail Chub; all on colorado BLM state
Director's Sensitive Species list (2000). Only
one, Roundtail Chub is on CDOWs list and
not as a statutory Category (updated 6-12-2009).
CDOW Fish studys were requested from
          Harry Vermillion, IT Pro II
          Governor's office of Information Technology
          Aquatics Database Manager
          Colorado Division of Wildlife
it appears occurrences are too irregular,
transitory, and/or dispersed to be reliably
identified, mapped, and be considered for
ORV eligibility.
          Approximately 60% of the 24.97 mile

**4 A-PI WSR**

BLM_0081628

4.

length considered remains in private ownership.
The Act requires that the agency consider, among
other factors, in determining suitability (1)
the current status of land ownership; (2)
characteristics which would not make the area
a worthy addition to the National System;
(3) the reasonably foreseeable potential uses
of the land and water that would be enhanced,
foreclosed or curtailed if designated; (4) the
estimated cost to the United States of
acquiring necessary interests from private
landowners and of administering the area if
designated. In this instance, the extensive
private ownership, water diversions that dry
up the stream channel, power and natural gas
easements, irregular and unreliable fish occurrences,
and the substantial cost of acquiring interest
to foreclose such privately maintained uses if
designated, justify the conclusion that
Naturita Creek is not suitable for designation
as a W.S.R.

Summary and Conclusion

> 5 A-PI WSR

    Reams Ranch is opposed to inclusion of
recommendations for designation as WSR of

03/29/2010 MON 23:53  FAX 970 865 2880 Reams Const  Naturita,Co                    ⊠006/006

5

Naturita Creek.  Reams Ranch opposition can
be summarized as follows:

• Perennially Flow - Naturita Creek has gone
  dry 11 of the last 19 years as a result
  of the 1897 water right "Call."

• Power lines and Natural gas easements - Identified
  easements existing within this reach disqualify
  this segment for scenic classification.

• Fish - Lack of reliable and regular occurrences
  to be considered for ORV eligibility, along
  with the fact that only one (roundtail chub)
  is on CDOW's list and not as a statutory
  category. Taking all factual data presented
  at face value, there may not be an ORV
  to protect.

• Ownership - Naturita Creek is predominately
  privately owned. Sixty percent of the 24.97
  mile river segment identified is owned
  privately. Designation as part of NWSRS
  would affect area use, including incompatible
  uses for the public on private lands. This
  designation would potentially create serious

BLM_0081630

6

socioeconomic impact to the private
land owner. It could curtail reasonably
foreseeable potential uses of the land
and related waters if the area were included
in the NWSRS. Historical existing rights
such as adjucated water rights, mineral
extraction rights such as gravel pits,
stone, oil, gas and coal, rights of the
private land owner could be adversely
affected. Scenic easements through
private property would encumber the
existing regular use of the private
land owners such as grazing, irrigating,
farming and hunting. Significant
potential for jurisdictional disputes
over administrative roles and/or presence
in an area predominately privately owned
exist.

6 A-PI WSR

In addition after careful review and consideration
of such designation which has no specific
management tools to be utilized, such as condemnation,
unfairly acts to cloud the title of private
land owners within the designated area, and
negatruely impacts Reams Ranch property
rights. As such Reams Ranch suggests that

BLM_0081631

03/29/2010 MON 23:54 FAX 970 865 2880 Reams Const.,Naturita,Co                    @008/008

7

the BLM should find Naturita Creek
to be ineligible and/or unsuitable for
designation as Wild and Scenic Rivers, and
remove recommendations for the same
from all pending or future Draft land
Management Plans. Thank you for your
consideration of these comments.

Sincerely,

H. Neil Reams Family LLLP

Earl Reams II

BLM_0081632



**Uncompahgre Resource Management Plan**



We encourage you to provide your comments by filling out and submitting this comment form by March 29, 2010. Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to:  BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO  81401.

First Name_____**Dan**_____ Last Name__**Auerbach**_____ Date__**3/22/10**_____

Mailing Address_____**425 E. ElizabethSt.**_____

City_____**Fort Collins**_____State_**Colorado**_____Zip___**80524**_____

E-mail Address_____**auerbach.dan@gmail.com**_____

Would you like to be added to the RMP mailing list to receive future project-related information?  (Your name will not be shared.) Yes: **XX** Email materials    ❑Hard-copy materials      ❑No
Please note that planning materials are also available at our website:  www.UFORMP.com

Please indicate your affiliation by checking the following boxes (check all that apply):

**X** Individual (no affiliation)       ❑Citizen's Group            ❑Regulatory Agency
❑Non-profit Organization        ❑Elected Representative      ❑Federal, State or Local Governmen

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

I. Do you live within the planning area? ❑Unit 1  ❑Unit 2  ❑Unit 3  ❑Unit 4  ❑Unit 5  **X** No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ❑Colorado (west slope)  **X** Colorado (front range or plains) ❑Other State - Which?_____  ❑ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years_____Months_____

4. Why do you live here? ❑Occupation  ❑Family  ❑Proximity to public lands  ❑Recreational Opportunities  ❑Other_____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

**1 A-GE**

r concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?

As a former San Miguel County resident and frequent Western Slope visitor who has hiked and climbed on BLM land and floated much of the proposed Wild and Scenic sections of the river, I am very pleased that the agency is making the effort to include non-consumptive use values.  While I am aware of the mandate associated with the agency's enabling legislature, it is exciting to see the Bureau considering the long-term benefits provided by lands managed principally for ecosystem services and mixed recreation. Given the unique recent and ancient history of human habitation in the area and the hardy and vibrant native flora and fauna, I strongly support RMP directives that encourage sustainable use of this landscape over extraction or exploitation of its resources.  While the latter tends to produce immediate and lasting degradation of scenic beauty and ecosystem function, the stewardship of the former can support both healthy local economies and future generations' enjoyment of the Uncompahgre Plateau.

**2 A-GE**
**3 A-PI SE**

BLM_0081633

4 A-PI TT
5 A-PI TM
6 A-PI ED
7 B-GE (picnic maintenance comment)

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what ... etc.)?**

The area included in the RMP boundaries contains some fantastic "wild places". In a West that continues to urbanize and develop rapidly, these places (especially those outside of the rocky mountain ridges that often fall under USFS jurisdiction) are increasingly valuable. I would like to see an end to further road construction; better designation of OHV use and non-use areas; the elimination of non-renewable energy development and careful consideration of the footprint associated with any renewable energy projects such as solar or wind installations; and continued maintenance of facilities such as the (very much appreciated) picnic/camp areas on the San Miguel.

8 A-PI WSR

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

I wholeheartedly support Wild & Scenic designation for the San Miguel within the RMP boundaries. I would like to see further expansion of an adaptive management paradigm that seeks to balance stakeholder input with the scientific and technical expertise of agency staff (botanists, hydrologists, archaeologists and range managers). This could include: adjusting stocking rates to buffer against projected increases in mean air temperature and evapotranspiration; restricting or eliminating non-renewable energy and mineral extraction that threatens ground and surface water with contamination; and controlling invasive species where they directly threaten native ecosystem integrity.

9 A-PI CC
10 A-PI ED
11 A-PI VEG

**Keeping in mind the issues above, what changes would you make to social characteristics (such as ...rs, size of groups, behavior of users, etc.)?**

12 A-GE

I have never had an unpleasant encounter on BLM land in the RMP area, and I would love to keep it that way. On the relatively few occasions when I have engaged with other people, interactions have been courteous and emphasized mutual concern for well-being. To a significant extent this is outside of the agency's control, but I believe that in many respects the status quo – with regard to visitation – is working. The remoteness and isolation of the area are part of its appeal, and ensuring that access remains challenging will do a great deal to preserve this appeal and the self-reliant atmosphere of the area.

13 A-PI REC

**Please provide any additional comments that you have regarding this project.**

I look forward to seeing the results of your hard work in the form of a draft RMP and appreciate your continued courageous efforts to determine the best strategies for the long-term health of the area.



# SAN MIGUEL COUNTY
## OPEN SPACE AND RECREATION PROGRAM
Land Conservation  Parks  Trails  Historic Preservation  Fairgrounds



March 22, 201
Barbara Sharrow
BLM Field Manager, Montrose Public Lands
2505 S. Townsend
Montrose, CO 81401

**RE: Comment on the Draft Wild and Scenic River Eligibility Report for the BLM Uncompahgre Planning Area**

Dear Ms Sharrow:

The San Miguel County Open Space Commission has reviewed with interest the Draft Wild and Scenic River Eligibility Report for the San Miguel River. Please note that we are commenting only on segments of the river that are wholly or partially in San Miguel County.

We agree with the preliminary classifications as stated in the draft report and think the report accurately represents the values found along the river and its tributaries, as follows:   1 A-PI WSR

- Beaver Creek: 14.25 miles: Classification – Scenic: Outstandingly Remarkable Values – Vegetation.
- Dry Creek: 10.49 miles: Classification – Wild: Outstandingly Remarkable Values – Scenic, Geologic, Wildlife.
- Fall Creek: 5.56 miles: Classification – Recreational: Outstandingly Remarkable Values – Wildlife.
- Naturita Creek: 24.97 miles: Classification – Scenic: Outstandingly Remarkable Values – Fish.
- Saltado Creek: 5.56 miles: Classification – Wild: Outstandingly Remarkable Values – Vegetation.
- San Miguel River, Segment 1: 27.23 miles: Classification – Recreational: Outstandingly Remarkable Values – Scenic, Recreational, Wildlife, Historic, Vegetation, Paleontology.

2 A-PI WSR

We are pleasantly surprised to have this opportunity to support the possibility of wild and scenic status for portions of our home river. We believe that such designations support the economy of San Miguel County which depends largely on the natural beauty and natural values of the area for tourism and recreation-based business. The designations also support a culture of outdoor recreation and conservation awareness.   3 A-PI REC

The County Open Space Commission works to protect and conserve open space for people, natural habitat for flora and fauna, and agricultural lands for the farming and ranching communities throughout San Miguel County for this and future generations. To date, we have facilitated conservation easements on 10,520 acres of high quality open space, habitat and agricultural lands.

We are very grateful to BLM personnel who have for many years championed protection of the San Miguel and its many resource values.   4 A-GE

Yours Truly

*Peter Mueller*

Peter Mueller, Chair

P.O. BOX 1170 • TELLURIDE, CO 81435 PHONE (970) 369-5469 • FAX (970) 728-3718
E-MAIL: lindai@sanmiguelcounty.org

BLM_0081635



### SAN MIGUEL COUNTY
## OPEN SPACE AND RECREATION PROGRAM
Land Conservation   Parks   Trails   Historic Preservation   Fairgrounds



RECEIVED
MAR 2 3 2010
BY:

March 22, 2010
Barbara Sharrow
BLM Field Manager, Montrose Public Lands
2505 S.Townsend
Montrose, CO 81401

RE: Comment on the Areas Identified for Disposal in the San Juan/San Miguel Planning Area RMP 1985

Dear Ms Sharrow:

The San Miguel County Open Space staff has reviewed the BLM map entitled Areas Identified for Disposal in the San Juan/San Miguel Planning Area RMP 1985. We find some discrepancy between the parcels shown on the BLM map and the county mapping system.

It would be helpful to meet with BLM personnel on this matter. However, in the meantime, we have two recommendations based on the BLM disposal properties shown on the county mapping system.

5 A-PI SSW

1. This parcel appears to be mapped Gunnison sage grouse habitat. Our recommendation would be to discuss this parcel with CDOW biologist Jim Garner. The parcel could be conveyed to CDOW or the Forest Service for Gunnison sage-grouse habitat or as a buffer to habitat.

2. This parcel on Oak Hill is surrounded on three sides by a purchased conservation easement on Jim Young's property. This was the first conservation easement in the county's Land Heritage Program. The county open space program would appreciate an opportunity to work with the adjacent land owner and BLM to try to protect this parcel. If it were developed it could have an impact on the surrounding easement.

6 A-PI CR

Thank you very much for the opportunity to comment.

Sincerely Yours,

*Linda Luther Broderick*

Linda Luther-Broderick
San Miguel County
Open Space & Recreation Coordinator

P.O. BOX 1170 • TELLURIDE, CO 81435 PHONE (970) 369-5469 • FAX (970) 728-3718
E-MAIL: lindal@sanmiguelcounty.org



W ◆ S

This information is a product of the San Miguel County
Open Space and Recreation Department and is intended
for the display of relative positions and locations only.
Users of this information agree that no assertion or warranty of
any kind has been made by San Miguel County as to its accuracy.

Scale

- BLM Property
- USFS Property
- State of Colorado Property
- State of Colorado Wildlife Preserves
- Other Conservation Easements - 10,558 Acres
- San Miguel County Land Heritage Projects - 10,520 Acres
- Gunnison Sage Grouse Habitat

- Streams
- Highways
- Roads

| # | Property | Org | Acres | # | Property | Org | Acres | # | Property | Org | Acres |
|---|----------|-----|-------|---|----------|-----|-------|---|----------|-----|-------|
| 1 | Foley Property | TNC | 240 Acres | 17 | Irwin Property | SMCF | 1531 Acres | 33 | Ilium Preserve | TNC | 37 Acres |
| 2 | Dallas Divide Ranch | TNC | 264 Acres | 18 | Idaho, Montana, Kansas and Channel Placers | TNC | 277 Acres | 34 | Skyline Ranch | TNC | 109 Acres |
| 3 | Double E Bar Ranch | TNC | 160 Acres | 19 | Homestead Placer | SMCF | 1 Acre | 35 | Valley Floor | SMCF | 560 Acres |
| 4 | Leopard Creek Ranch | VLC | 70 Acres | 20 | Down Valley Park | TLR | 4 Acres | 36 | Silver King Lode | SMCF | 8 Acres |
| 5 | Amphitheater Property | SMCF | 375 Acres | 21 | Mystic Valley Ranch | TLR | 319 Acres | 37 | Boomerang Lode | SMCF | 10 Acres |
| 6 | Cicero Property | TNC | 574 Acres | 22 | British Lion and Hidden Treasure Mining Claims | VLC | 20 Acres | 38 | Gold King Holdings | TNC | 36 Acres |
| 7 | CD Conservation Property | TLR | 1250 Acres | 23 | Berman Ranch | TLR | 493 Acres | 39 | River Park Trail | SMCF | 14 Acres |
| 8 | Dietrich Property | TNC | 114 Acres | 24 | Deborado Property | RMEF | 2384 Acres | 40 | North and East Investments Property | TOT | 4 Acres |
| 9 | Oak Hill Ranch | CC | 365 Acres | 25 | Elk Creek Reserve | SMCF | 386 Acres | 41 | Bear Creek Preserve | SMCF | 430 Acres |
| 10 | Wire Pasture Ranch | SMCF | 1254 Acres | 26 | Schmid Ranch | SMCF | 800 Acres | 42 | Kentucky Placer | SMCF | 101 Acres |
| 11 | Hamilton Land Partnership | SMCF | 1034 Acres | 27 | Wilson Peak Mining Claims | TPL | 194 Acres | 43 | Ferric Oxide Placer | SMCF | 21 Acres |
| 12 | Barrett Brothers Ranch | CC | 1190 Acres | 28 | Price Property | TNC | 108 Acres | 44 | Honduras Lode | SMCF | 10 Acres |
| 13 | Bray Property | CC | 1928 Acres | 29 | Silver Mountain Industries Property | TNC | 242 Acres | 45 | Cluster of Mining Claims | SMCF | 173 Acres |
| 14 | O2B29 Ranch | CC | 770 Acres | 30 | Keystone Gorge | TNC | 37 Acres | 46 | Game Bird Claims | SMCF | 26 Acres |
| 15 | Wire Pasture Ranch | SMCF | 830 Acres | 31 | Zoline Property | TNC | 250 Acres | 47 | Eldorado Claims | TPL | 165 Acres |
| 16 | Beaver Mesa Ranch | CC | 1790 Acres | 32 | Hajas Property | TNC | 128 Acres | | | | |

TNC - The Nature Conservancy

VLC - Valley Land Conservation

SMCF - San Miguel Conservation Foundation

TLR - Trust for Land Restoration

CC - Colorado Cattlemen's

TPL - Trust for Public Lands

TOT - Town of Telluride

BLM_0081638

IN

March 22, 2010

1 A-PI LG

      Krickbaum
KMI Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

Re: Scoping Comments on the Uncompahgre Field Office Resource Management Plan
Revision.

One of the purposes of a Resource Management Plan revision is to evaluate uses of BLM
lands and make modifications to improve management and adjust management
objectives. In this context, I request BLM consider the retirement of a vacant grazing
allotment.

The allotment for which this request is being made is the San Miguel Rim allotment
located about six miles north of Norwood along the San Miguel Canyon Rim within the
portion of the BLM currently designated as an Area of Critical Environmental Concern
(see attached map). The allotment was last active in 1986, so there would be no impact
on any current operations. As the map indicates, at the time the allotment was active the
permitee owned the adjacent land and had an ongoing livestock operation. These lands
were subdivided in about 1985 by the permitee and sold off as 35-acre residential parcels
and one larger 300 plus acre parcel, which is used as a residential parcel as well. About
10 of these parcels have an unfenced boundary with the BLM lands in this allotment.

There are 709 acres of BLM lands included in the allotment, most of which are on very
steep slopes that are not really suitable for grazing. It is likely that this allotment was
created not because the lands within it were suitable for grazing, but as a matter of
convenience for BLM and the permitee. The canyon rim created a natural boundary for
the private land used in the livestock operation, but there was a narrow strip of BLM land
between the private and the rim. In order to not have ongoing trespass issues between
BLM and the permitee, this allotment was probably created. This was a reasonable
management decision at the time.

There are only about 130 acres of relatively flat land contained in the allotment. Most of
this land has mature Pinion Juniper forest or sagebrush cover. Only about 40 acres has
predominantly grassland cover. The rest has patchy and cool season bunch grasses
intermixed in the sage and PJ, which is heavily used by wintering mule deer and elk. The
useable forage accessible to livestock is probably about 10 AUMs. The forage in these
areas and on the hillsides is annually cropped close to the ground by deer and elk during
the spring green-up. This, along with inevitable trespass conflicts with residential
property owners, probably explains why there has been little interest expressed in this
allotment since it was vacated 24 years ago and none in the last 15 years in which most of
the residential development has occurred.
The Norwood Land Health Assessment contains additional support for the retirement of
this allotment. Although there were apparently no survey points located within this

BLM_0081639

1 A-PI LG
CONTINUED

allotment during the LHA to characterize its current condition, some of the conditions noted in areas nearby upstream, may also apply. These include low perennial cool season grass cover (P. 63), low forb cover (P. 66), and cheatgrass (P. 70). It is not known if these situations occur on The San Miguel Rim allotment or if livestock were the causal factor in the adjacent areas, but I think the allotment in question could be valuable to BLM as a comparative to evaluate the impacts on allotments that are in use. As it has been largely vacant of livestock for 24 years, it could be used in evaluating differences in soil stability, plant density and diversity, and wildlife use in an area not used by livestock. Its value as a reference area exceeds its value as a livestock production area.

In the ongoing RMP analysis, this area of BLM lands has been found to be eligible for Wild and Scenic designation with the most high quality "Wild" designation. One of the ORVs found in this segment is wildlife. The eligibility analysis states " The area in and around this section has been identified as an Important Bird Area by the Audubon Society, supporting a diversity of birds and containing regionally outstanding habitat for the Yellow-billed Cuckoo (Coccyzus americanus), a federal candidate species". This finding directs BLM to manage to protect this ORV to the extent possible. On the Norwood LHA (pg. 39) Biodiversity Focal Areas map, CNHP has also identified this area as a Biodiversity Conservation Area.

The Norwood LHA (pg. 75) notes "winter range quality and quantity is declining in some key winter concentration areas…" The area in this allotment is identified in the LHA figure 1.10 depicting crucial deer and elk winter range and bighorn sheep range as both Deer and elk severe winter range. In addition to not being cost effective for BLM to provide the staff resources to administer this allotment given it minimal utility for grazing, reactivation of this allotment would result in adjacent private property having to install miles of fencing in this important winter range to control trespass to the detriment of wildlife and at a cost to property owners of tens of thousand of dollars. Livestock also competes with wildlife for available forage. The combined use by livestock with the existing heavy use by wildlife risks overuse of the plant community leading to a decline in its value as wildlife habitat. Also, the allotment has significant amounts of weeds present, particularly in the dryland pasture area historically most used by livestock. The allotment has patches of Musk Thistle, Canada Thistle, Whitetop, and cheatgrass. Use of the allotment by livestock will increase the opportunity for weedy species to be spread along the canyon rim and potentially move from the rim down into the canyon.

Another complicating factor is there is no access to this allotment except through another allotment or private lands, which further limits its utility.

For the reasons elaborated above, I believe the use of this area, as an allotment should be re-evaluated. I believe it is no longer suitable as a grazing allotment and it would be more cost effective and better meet BLM management goals if it were retired.

Sincerely,

David Schneck, Cindy Chapin
P.g. Box 59
Norwood, Co
81423

BLM_0081640

Page 2 of 3



Schneck / Chapin Parcels

BLM_0081641



BS

Received

MAR 24 2010

Uncompahgre Field Office

March 22, 2010

United States Department of Interior
Bureau of Land Management
Uncompahgre RMP
Attn.: Bruce Krickbaum
2465 South Townsend Avenue
Montrose, Co. 81401

Western Fuels-Colorado
P.O. Box 628
Nucla, Colorado 81424

Telephone 970/864-2165
Fax 970/864-2168

Dear Mr. Krickbaum:

This letter submits comments to the US Bureau of Land Management concerning the revision of the Uncompahgre Resource Management Plan. These comments are being submitted on behalf of Western Fuels-Colorado, LLC., the owner and operator of the New Horizon Mine located at Nucla Colorado, in Montrose County. As background, the New Horizon Mine is a surface coal mine producing about 400,000 tons of bituminous coal per year. The coal is trucked to Tri-State Generation & Transmission Association's Nucla Station, also at Nucla, Colorado, as the sole source of fuel for the station. The Nucla Station is a 90 megawatt electricity generating station capable of providing electricity for about 78,000 homes. The New Horizon Mine and Nucla Station power plant have a combined direct workforce of about 108 people. The mine and power plant provide jobs and low cost electricity for the region, a situation with the potential for continuing far into the future.

Western Fuels-Colorado's comments relative to the revision of the Uncompahgre RMP include:



1 A-GE

2 A-PI MI

- That public lands administered by BLM within the RMP be managed for multiple uses.
- That public lands, containing potential coal resources of the Dakota Formation, be recognized, made available for potential leasing, and delineated on the revised RMP maps.

BLM_0081642



3 A-PI MI

- That coal exploration drilling be recognized and spelled out as an allowable and expected activity on public lands containing potential coal resources.

4 A-PI MI

- Coal exploration drilling could be conducted under the purview and stipulations of such authorizations as the old "special land use permit" (SLUP), the Federal "Coal Exploration License", or Colorado DRMS's Notice of Intent (NOI) to Conduct Coal Exploration.

5 A-PI MI

- The desire to explore for potential coal resources on public land, be it one hole or dozens, should not trigger a full blown Environmental Assessment.

Western Fuels-Colorado appreciates this opportunity to provide input for BLM's consideration in the revision of the Uncompahgre RMP.


Sincerely,

R. Lance Wade

Mine Manager

BLM_0081643

IN

March 22, 2010

RECEIVED
MAR 2 4 2010
BY:

Bureau of Land Management
2465 South Townsend Avenue
Montrose, CO 81401

Attention: Barb Sharrow, Manager

Dear Barb:

I have heard that in the Montrose BLM Travel Planning process, it has been mentioned that snowmobiles would be required to stay on roads and trails. This would mean no cross country travel.

I would ask that you give this matter your utmost consideration and attention. As a long-time snowmobile rider, I would submit that this requirement would effectively eliminate snowmobiles on BLM Lands. A majority of riding time is spent on wide open meadows and other kinds of terrain that are a challenge to ride. There is no challenge in riding along on a road, like you would in a car or pickup. Roads and a few trails are used to get to the riding areas—they are not a destination.

Snowmobiles travel on snow--Rarely do they ever touch soil or waterways. In all the snowmobile rides we've participated in, there has never been any harassment of wildlife nor abuse of terrain.

Such a regulation would eliminate 90% or more of snowmobile riding on BLM Public Lands. I would encourage you to keep Public Lands open to the Public.

Sincerely,

Roy Johnson
1805 Otter Pond Dr.
Montrose, CO 81401

1 A-PI TM

**Zoe Ghali**

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **Sent:** | Tuesday, March 23, 2010 5:41 PM |
| **To:** | Zoe Ghali; Kate Wynant |
| **Cc:** | UFO AR |
| **Subject:** | Fw: Follow-up to BLM Economic Workshop |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Additional follow-up comment for Montrose workshop.


----- Forwarded by Bruce Krickbaum/MOFO/CO/BLM/DOI on 03/23/2010 05:37 PM -----

```
            Kristine Manlove
            Bagnara
            <manlovebagnara@y                                    To
            ahoo.com>              bruce_krickbaum@blm.gov
                                                               cc
            03/23/2010 04:12
            PM                                           Subject
                                  Re: Follow-up to BLM Economic
                                  Workshop
```

My apologies for the slowness of my response.  And let me preface my answers to your question by stating that I am far from expert on BLM (e.g. how it differs from national parks, etc.) and that I am a resident of 10 years (having lived all over this country and a few others prior to 2000). So, again, not a local expert.

1)  How does BLM fit?
Two key impacts occur to me:
The first is that Montrose County has a large amount of BLM, which limits land available for residential or commercial development (pros and cons; frankly, my opinion is that some of these limits are good).
The second is that many people are here for the open space views and the outdoor actiivities.  The more that the BLM can work with the local municipalities to foster and support income-producing work (whether guided fly-fishing, gold-panning, hiking, unique eco-tourism, gem stone mining...), the more people will value BLM.
What can BLM do to partner....  My experience (both related to the planning commission and to a prevention -- underage drinking and drugs -- office I just closed) has been that it's very difficult to get significant numbers of people engaged in meetings, discussion groups, etc.  People do get engaged if they see a direct impact to them.  Yet many are cynical of the politicians.  It's important that key leaders and stakeholders participate, yet they need to demonstrate that they listen.

2)...any important sources of information...?  You had the county.  Another source is the school districts.  They can tell you that over 50% of school children are on free and reduced lunch and that Olathe loses ___% of their population during winter months.  School district information is current (the gap is that it doesn't cover the retiree population).

1

BLM_0081645

And a caution regarding economic development -- you probably know this better than I do: a lot of political gaming going on regarding who is/is not the right organization to provide leadership in this area (e.g. MEDC vs. Region 10).
Having spent a career in an international corporate environment, I am not seeing anyone who is setting clear, measurable goals and objectives and being held accountable to delivering on them.  What some people say and what they do are not always in alignment.  And the thing is, there are some amazing opportunities.  They "just" need aligned support rather  than the current division of segments competing with each other for scarce resources in a sparsely populated region.

You certainly are addressing important opportunities.  My hat off to you.  I hope my participation was helpful.
Kristine Manlove Bagnara
City of Montrose Planning Commissioner
970-275-3035

----- Original Message ----
From: "bruce_krickbaum@blm.gov" <bruce_krickbaum@blm.gov>
To: manlovebagnara@yahoo.com
Sent: Tue, March 16, 2010 10:10:09 AM
Subject: Follow-up to BLM Economic Workshop


Ms. Bagnara,

The BLM Uncompahgre Field Office staff appreciates your attendance at last Tuesday's Social-Economic workshop.
We value your time and truly regret that we did not achieve all the stated workshop objectives.

I am soliciting information on two important agenda items/objectives that we missed in order to obtain a complete picture of socio-economics in the Montrose vicinity of the planning area. Would you please take a few minutes to reply to this message with your input on the following questions?

1) How does the BLM fit in with your community?    --How does the use of public land fit into community    objectives?  What is the value of having BLM lands?    --What can BLM do to partner with your community to reach its potential?

2) Do you know of any important sources of information regarding social and economic issues that BLM should consider?

Economic information and social aspects of the area are an important part of planning, developing alternatives, impact analysis, and decision making as we progress through our Resource Management Plan. I, and the rest of the Uncompahgre Field Office staff, sincerely hope that you remain an interested and active participant throughout the planning process, as your involvement is critical to a successful Resource Management Plan.

Thank you again for your time. Please contact me at 240-5300 or e-mail bruce_krickbaum@blm.gov with any questions or to further discuss these topics.

Thank you, Bruce

<><><><><><><><><><><><><><><><><><><><>
Bruce Krickbaum
Planner, Environmental Coordinator
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
970.240.5384

BLM_0081646

BLM_0081647

BS

LAW OFFICES OF
**BROWN, SCHOTTELKOTTE, STIMPERT & VAUGHN, LLC**
550 PALMER ST., SUITE 201
P.O. BOX 43
**DELTA, COLORADO 81416-0043**

James D. Brown
Michael R. Schottelkotte
Marc Stimpert †
Michael Vaughn

†Also Admitted in Wyoming
and Oklahoma

*A. Allen Brown (1904-1983)*

Telephone 970-874-4451
Fax 970-874-7433

Received

FEB 2 5 2010

Uncompahgre Field Office

February 23, 2010

Barbara Sharrow, Uncompahgre Field Manager
United States Bureau of Land Management
Montrose Field Office
2465 South Townsend Avenue
Montrose, CO 81401

RE:   Comments Regarding Draft Wild and Scenic River Eligibility Report

Dear Ms. Sharrow:

I am writing on behalf of Richard Miller and the Escalante Ranch, to comment upon your
September 2009 Draft Wild and Scenic River Eligibility Report for the BLM Uncompahgre
Planning Area ("Report"). The BLM is now in the process of determining which, if any, of the
river and stream segments identified therein are eligible and therefore potentially suitable for
designation as a Wild and Scenic River ("WSR") pursuant to the criteria set forth in the Wild and
[1 A-PI DE-WSR] Rivers Act ("WSRA"). Specifically, the BLM is interested in information related to
eligibility criteria for specific stream segments. In response thereto, please consider the following
information:

The following stream segments are of concern to Mr. Miller:

- Dry Fork Escalante Creek, Segment 2. Report at 25-26.

- Escalante Creek, Segments 1 and 2. Report at 27-33.

- Gunnison River, Segment 3. Report at 36-38.

[2 A-PI DE-WSR]   As specifically noted herein, due to private land and water ownership and use, and various
man-made physical structures, these segments are not eligible for Wild and Scenic River status.

**Dry Fork Escalante Creek, Segment 2** The BLM classifies this 2.89 mile stream segment
as eligible, with a preliminary "recreational" classification. Report at 26. Of the 2.89 stream
miles, an uninterrupted 0.46 mile stretch lies solely on land owned by Mr. Miller. The Report

Page 1 of 5

BLM_0081648

February 23, 2010
Page 2

correctly notes that the stream channel is bisected by an unimproved road and by several fences to delineate livestock grazing. The Report incorrectly states that there are no water diversions within this segment. The Report fails to mention that there are also several culverts and pipes which convey water across the creek, the presence of hayfields on private land, and the presence of annual livestock grazing. The Report also fails to mention that the stream is highly intermittent, flowing for, on average, only one to two weeks per year. The Report lists the outstandingly remarkable value ("ORV") of this segment at "vegetation," noting that the area contains Fremont cottonwood/skunkbrush sumac riparian vegetation.

**3 A-PI DE-WSR**

Mr. Miller's private land does not meet the criteria for eligibility as a WSR. The stream segment which crosses his private land is subject to heavy agricultural use, including grazing and haying, and is repeatedly bisected by pipes and fences, inconsistent with the WSRA's requirement that qualifying values be "outstanding" and that shoreline development be minimal. 16 U.S.C. §§ 1271, 1273.

**4 A-PI WSR**

More importantly, the WSRA does not list "vegetation" as an ORV. Id. While the WSRA does permit ORVs which are "similar" to the ORVs expressly listed in the WSRA, nowhere does the BLM's report specifically link the presence of the particular vegetation found within this creek segment, or more particularly found on Mr. Miller's private land, with an expressly stated ORV. 16 U.S.C. § 1271; Report at 26. The BLM cannot arbitrarily create new ORVs which are not found within the WSRA. At a minimum, the BLM must explain how the presence of the particular vegetative community in question, which must be present specifically on Mr. Miller's private property, is "similar" to an expressly permitted ORV category, and why such vegetation qualifies as "outstanding."

Moreover, even if the specific vegetative community at issue could qualify as an ORV, then the fact that Mr. Miller's half mile of stream segment is wholly in private ownership and control would make it impossible for the BLM to manage said vegetation, thereby precluding the land from suitability as a WSR. BLM guidance states that the:

> Status of land ownership . . . including the amount of private land involved . . . must be taken into account to the extent that management would be affected. In situations where there is limited public lands (shoreline and adjacent lands) administered by the BLM within an identified river study area, it may be difficult to ensure those identified outstanding remarkable values could be properly maintained and afforded adequate management protection over time. Accordingly, for those situations where the BLM is unable to protect or maintain any identified outstanding remarkable values, or through other mechanisms (existing or potential), river segments may be determined suitable only if the entity with land use planning responsibility supports the finding and commits to assisting the BLM in protecting the identified river values.

BLM_0081649

February 23, 2010
Page 3

BLM Manual 8351 – Wild and Scenic Rivers at § 0.33(A)(2). In this case, there is no legal mechanism whereby the BLM could manage or control vegetation use on Mr. Miller's private land. Mr. Miller could, for example, cut for firewood any of the commonly found Fremont cottonwood trees found thereon.

**5 A-PI DE-WSR**

Given Mr. Miller's heavy agricultural use, his many agricultural improvements, his exclusive management and control of vegetation located upon his private land, and the fact that "vegetation," in and of itself, does not legally qualify as an ORV, then Mr. Miller's nearly half mile of stream segment should be excluded from the BLM's list of stream segments which are eligible for WSR designation.

**6 A-PI DE-WSR**

**Escalante Creek, Segment 1** The BLM classifies this 8.45 mile stream segment as eligible, with a preliminary "scenic" classification. Report at 28-30. Of the 8.45 stream miles, 2.69 miles lie solely on private land, much of which is owned by Mr. Miller. The Report correctly notes that water diversions are present in the segment, but fails to mention that 1) grazing occurs along this segment; 2) there are multiple water diversions present; 3) that the public does not have access to the private property sections which are adjacent to the creek; 4) that private property is fenced out from public land with barbed wire fences, which intersect with the creek. The Report also fails to mention that the in most years, the majority of the water which flows down the creek is fully appropriated by Mr. Miller for diversion and irrigation use, and is often heavily supplemented with appropriated water from the Beaver Dam Reservoir located upstream of the creek. In addition, there is a cabin and corrals located directly adjacent to the segment, located on private land at Escalante Forks.

**7 A-PI DE-WSR**

To qualify as a WSR, this segment must be "free flowing," meaning "flowing in a natural condition without . . . diversion." 16 U.S.C. §§ 1273(b) & 1286(b). While the presence of "low dams, diversion works, and other minor structures" does not necessarily preclude "free flowing" status, the actual "diversion" of water does. In this case, the majority if not entire flow of the creek is, in fact, privately owned and diverted for irrigation use. As such, the creek does not qualify as "free flowing" and is therefore not eligible for WSR status.

**8 A-PI DE-WSR**

Moreover, to be eligible as a "scenic" WSR, this river segment must be "free of impoundments, with shorelines or watersheds still largely primitive and shorelines largely undeveloped . . . ." 16 U.S.C. § 1273(b)(2). Considering the numerous agricultural improvements and uses on the creek, this segment is not eligible as a "scenic" river segment.

**9 A-PI DE-WSR**

Given its fully appropriated status and numerous water diversions, combined with numerous agricultural improvements and uses, this stream segment is not eligible for WSR status, or as a "scenic" river. At a minimum, considering these factors, plus the fact that the BLM is precluded from managing and the public is precluded from using private lands, then private land segments should be excluded from eligibility designation.

Page 3 of 5

February 23, 2010
Page 4

10 A-PI DE-WSR

**Escalante Creek, Segment 2** The BLM classifies this 8.48 mile stream segment as eligible, with a preliminary "recreational" classification. Report at 32-33. Of the 8.48 stream miles, 5.07 miles lie solely on private land, much of which is owned by Mr. Miller, and 2.51 miles lie on State controlled land, much of which is leased for grazing use by Mr. Miller. There are several water diversions and dams along this segment, and water is appropriated and diverted by Mr. Miller for irrigation use. At least a dozen fences cross the creek within this section. Man-made brush berms are located adjacent to the creek to control erosion. The creek has been channelized in several places. Livestock grazing occurs along the creek, and livestock drink directly from the creek. There is no public recreational access. The road often parallels or crosses the creek. The county built a staging area for road building. Irrigation ditches parallel the creek in places. Grain bins and corrals are found adjacent to the creek. Rip rap is found on the bank in various locations. A number of power lines cross the creek. Irrigation use in the summer utilizes all or nearly all flows, minimizing habitat for fish, desert bighorn sheep and other wildlife. There are a total of five farmsteads directly adjacent to the creek. In addition to the foregoing, Mr. Miller believes that the BLM is mistaken in reporting that monkey flowers and hookless cactus currently exist in this stream segment.

For the reasons noted above, including the numerous water diversions, agricultural improvements and uses, and nearly exclusive private and State control of these lands, this stream segment is not eligible for WSR status.

11 A-PI DE-WSR

Moreover, BLM guidance precludes the BLM from designating stream segments which are predominately non-federal in ownership:

> In cases where a particular river segment is predominately non-federal in ownership, and contains interspersed BLM-administered lands, BLM shall evaluate only its segment as to eligibility and defer to the State or to the private landowners' discretion as to their determination of eligibility.

BLM Manual 8351 – Wild and Scenic Rivers at § 0.06(B). In the case of this particular segment, nearly 90% of the creek is in State and private ownership. In such circumstances, the BLM cannot designate a stream segment as eligible without the landowner's permission. Mr. Miller, in his discretion, deems this stream segment to be ineligible for designation as a WSR.

12 A-PI DE-WSR

**Gunnison River, Segment 3** The BLM classifies this 17.48 mile stream segment as eligible, with a preliminary "recreational" classification. Report at 37-38. Of the 17.48 stream miles, the BLM claims that only 2.59 miles lie on private land, most of which is owned by Mr. Miller, and 0.87 miles lie on State controlled land.

The BLM's river segment ownership is inaccurate, in that the majority of what the BLM claims to "own," and therefore control, is only owned and controlled on one side of the river, with ownership and control on the opposite bank being private. The BLM only acknowledged private

BLM_0081651

February 23, 2010
Page 5

ownership when both banks of the river were private land. A total of ten private residences lie adjacent to the river. A privately owned abandoned gravel quarry lies adjacent to the river. Moreover, the BLM failed to recognize that the railroad corridor is private property. Given these facts, the majority of the segment, from the County line to its confluence with Escalante creek, is partially or wholly privately owned and controlled. As noted above, in such circumstances, the BLM cannot designate a stream segment as eligible without the landowner's permission. Mr. Miller, in his discretion, deems this stream segment to be ineligible for designation as a WSR. BLM Manual 8351 – Wild and Scenic Rivers at § 0.06(B).

**13 A-PI DE-WSR**

Moreover, the river segment does not qualify as "free flowing," given the many diversions of water (a total of four pumping plants located on private land along this segment) divert water from the river, and the presence of rip-rap on the banks in various locations. 16 U.S.C. § 1286(b)(precluding from the definition of "free-flowing" any river section subject to "diversion" or which includes "rip-rap"). The segment is also subject to livestock grazing, a lack of public access, includes a low water dam, includes an orchard, and includes a railroad adjacent to the entire river segment. Given the diversions of water, rip-rap, many agricultural improvements and uses, and predominate private access and of these lands, then this segment does not qualify for WSR status.

**14 A-PI DE-WSR**

**Summary** Given the nature of the above noted stream segments, they should not be listed as eligible for WSR designation. Disqualifying characteristics may include: 1) "vegetation," in and of itself, does not qualify as an ORV; 2) lands which are predominately owned and controlled by private parties are generally not eligible or suitable for designation; 3) river segments which are subject to "diversion," or which include "rip-rapping" are not eligible for designation; and 4) lands which include numerous agricultural improvements and uses may not qualify for "scenic" or even "recreational" status. Each of the above noted stream segments include one or more of these disqualifying characteristics. At a minimum, the private lands located within the above noted stream segments should not be designated as eligible for WSR status. Please contact me at this office with any questions, and keep me updated as to the status of the BLM's WSR status review. Thank you for your consideration in this matter.

Sincerely,

BROWN, SCHOTTELKOTTE,
STIMPERT & VAUGHN, LLC

By: _____

Marc. R. Stimpert

Page 5 of 5

BLM_0081652

IN

Attn. Bruce Krickbaum
RMP Project Manager
2465 S. Townsend Avenue
Montrose, Colorado
81401

Received

MAR 2 3 2010

Uncompahgre Field Office

1 A-GE

I oppose the Uncompahue Resource Management Plan. Do not change the Uncompaghre management policy.

Linda Hamil

BLM_0081653

03/29/2010 MON 14:34 FAX 970 865 2880 Reams Const. Naturita,Co                    ☐0017002

IN



# Uncompahgre
# Resource Management Plan



We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.**
Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name _Melissa_          Last Name _Lampshire_          Date _3/28/10_

Mailing Address _P.O. Box 704_

City _Nucla_                    State _CO_        Zip _81424_

E-mail Address: _mlampshire@aol.com_

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?          Yes: ☐ e-mail materials only  ☐ e-mail and hard-copy materials        ☒No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)        ☐ Non-profit Organization        ☐ Citizen's Group

☐ Federal, State, or Local Government    ☐ Elected Representative        ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:

Do you live within the planning area?  ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☒ Unit 5 ☐ No
(Refer to map for unit numbers)

If you do not live in the planning area, do you live in:  ☐ Colorado (west slope)  ☐ Colorado (front range or plains)
☐ Another State (which): _____    ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here?  Months: _5_  Years: _17_

Why do you live here? ☒ Occupation ☐ Family ☒ Proximity to public lands ☒ Recreational Opportunities
☐ Other _____

---

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors,*
1 A-PI TM  *...keholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

---

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

The closing of roads for Public Use, mining use
and agricultural purposes, keep them open and available.
The San Miguel River should remain
the way it is and has been - open for
Public use and for agricultural
purposes.

---

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00 am to 4:30 pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

2 A-PI WSR                                                                          WSR

03/29/2010 MON 14:34  FAX 970 865 2880 Reams Const Naturita,Co                    @002/002

**3 A-PI TM**

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

I think the BLM should leave the roads that were open & used open, there would be less travel off the roads if there were more roads.

**4 B-NP**

...the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

Management should enforce rules & laws already in place instead of trying to implement new ones that prohibit public use & access.

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

I think the public should be able to use the land, roads etc. openly, ~~under~~ under the rules & laws already in place

Please provide any additional comments that you have regarding this project.

**5 A-GE**

*(Please tri-fold this sheet & tape shut before mailing -- Do not staple)*

BLM. Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

BLM_0081655

03/29/2010 MON 12:13 FAX 970 865 2880 Reams Const Naturita,Co @001/002

IN



# Uncompahgre
# Resource Management Plan


NATIONAL SYSTEM OF PUBLIC LANDS

We encourage you to provide your comments by filling out and submitting this comment form by **February 26, 2010.** Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name _Tran_    Last Name _Lampshire_    Date _3/23/10_

Mailing Address _P.O.Box 704_

City _Nucla_    State _CO_    Zip _81424_

E-mail Address: _Wentraj@aol.com_

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?    Yes: ☐ e-mail materials only  ☐ e-mail and hard-copy materials    ☒No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)    ☐ Non-profit Organization    ☐ Citizen's Group
☐ Federal, State, or Local Government    ☐ Elected Representative    ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:*

Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☒ Unit 5 ☐ No
*(Refer to map for unit numbers)*

If you do not live in the planning area, do you live in: ☐ Colorado (west slope)  ☐ Colorado (front range or plains)
☐ Another State (which): _____    ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here? Months: _5_  Years: _17_

Why do you live here? ☒ Occupation ☐ Family ☒ Proximity to public lands ☒ Recreational Opportunities
☐ Other

---

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

---

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

The closing of roads for Public use, mining use and agricultural purposes, these should remain open The San Miguel River should remain the way it is and has been - open for Public use and for agricultural purposes.

Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

OVER

BLM_0081656

03/29/2010 MON 12:14  FAX 970 865 2880 Reams Const. Naturita,Co                    ☑002/002

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

I think the BLM should leave the roads that are open & used open, there would be less travel off the roads if there were more roads.

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

Management should enforce rules & laws already in place instead of implementing new ones that don't allow the public to equally access.

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

I think the public should be able to use the land, roads etc. openly, ~~access~~ under the rules & laws already in place

Please provide any additional comments that you have regarding this project.

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401



**Submit by E-Mail**

**IN**

Received

# Uncompahgre
## Resource Management Plan

NATIONAL SYSTEM OF PUBLIC LANDS

MAR 2 4 2010

Uncompahgre Field Office

We encourage you to provide your comments by filling out and submitting this comment form by February 25, 2010. You may submit your completed form by clicking the button *Submit by E-Mail* in the top left corner of this page. Alternately, you may print your completed form and fax it to 1-970-240-5367 or mail it to US Bureau of Land Management, Uncompahgre Field Office, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name  James          Last Name  Harden          Date  3-23-10

Mailing Address  Box 972 C

City  Cedaredge          State  Co.          Zip  81413

E-mail Address:  V_M_Harden @ Hotmail. Com

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?          Yes: ☐ e-mail materials only  ☒ e-mail and hard-copy materials          ☐ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☒ Individual (no affiliation)          ☐ Non-profit Organization          ☐ Citizen's Group

☐ Federal, State, or Local Government          ☐ Elected Representative          ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) _____

*Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:*

Do you live within the planning area? ☐ Unit 1 ☒ Unit 2 ☐ Unit 3 ☐ Unit 4 ☐ Unit 5 ☐ No
*(Refer to map for unit numbers)*

If you do not live in the planning area, do you live in: ☒ Colorado (west slope)  ☐ Colorado (front range or plains)

☐ Another State (which): _____          ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here? Months: _____ Years: 13

Why do you live here? ☒ Occupation ☒ Family ☒ Proximity to public lands ☒ Recreational Opportunities
☐ Other _____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the map available for download by clicking here. Please note that if your comments exceed 11 lines and begin scrolling, you will not be able to print all of your comments. Thank you for taking the time to provide your input.*

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

Closing off roads and ending construction of new roads in the proposed areas would evently Kill off all Natural gas development, Coal mineing and logging in western Colorado. Resulting in the loss of around 3000 jobs in the mineing industry alone. It is nessary for these industrys to build primitave roads on B.L.M. land just like thay have ben doing for many years to drill small bore, exploitory test wells to tell them which way to procede. To block the use of B.L.M. land for these things would eventuly turn Western Colorado into an economic wasteland.   yes I do object to this plan

*James Harden*

**3 A-PI SE**

*Respondents' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the environmental impact statement. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.*

**2 A-PI TM**

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

Obliterate old or unauthorized roads.
Clearly mark usable motorized trails and fine those going off of them.

**3 A-PI TM**

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

Inact regulations that would make it impossible for anti human organizations like Western Slope environmental or Green peice to economicly attack the good people of western Colorado. Useing the rise or fall of ATV sales as an excuse.

**4 B-GE**

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

Proper use and stuardship of the land is vital to us all.
Groups should be made to clean up after themselves.

**5 A-PI REC**

**6 A-GE**

Please provide any additional comments that you have regarding this project.

It is Clear that the groups pushing this plan are more interested in hurting people than Careing for the land.
Mr. Krickbaum could you live with yourself Knowing of the suffering of thousands of people if this thing passes.

Sincerely

BLM_0081659

Attn. Bruce Krickbaum
RMP Project Manager
2465 S. Townsend Avenue
Montrose, Colorado
      81401

Received

MAR 2 3 2010

Uncompahgre Field Office

     I oppose the Uncompahue Resource Management Plan. Do not change the Uncompaghre management policy.

Attn. Bruce Krickbaum
RMP Project Manager
2465 S. Townsend Avenue
Montrose, Colorado
      81401

Received

MAR 2 3 2010

Uncompahgre Field Office

    I oppose the Uncompahue Resource Management Plan.  Do not change the Uncompaghre management policy.

*Linda Horn*

BLM_0081661

Attn. Bruce Krickbaum
RMP Project Manager
2465 S. Townsend Avenue
Montrose, Colorado
                    81401

Received

MAR 2 4 2010

Uncompahgre Field Office

I oppose the Uncompahue Resource Management Plan.  Do not change the Uncompaghre management policy.

Address:
Jason Harris
2821 Newport Cir.
Grand Junction, CO 81503

BLM_0081662

Received

MAR 2 4 2010

Uncompahgre Field Office

Attn. Bruce Krickbaum
RMP Project Manager
2465 S. Townsend Avenue
Montrose, Colorado
       81401

    I oppose the Uncompahre Resource Management Plan.  Do not change the Uncompaghre management policy.

Address:
Paul Harris
2821 Newport Cir.
Grand Junction, CO 81503

BLM_0081663

IN

MARCH 24th, 10

DEAR MR. KRICKBAUM

Received

MAR 2 6 2010

Uncompahgre Field Office

1 B-GE

TODAY WITH THE SPEED THE WORLD IS CHANGING
GLOBAL WARMING, EARTH CHANGES, CONTAMINATIONS
OF OUR WATERSOURCES, OVER POPULATION ECT.
VALUES HAVE TO CHANGE!

2 A-PI NRED

TO LIVE IN A VALLEY LIKE THE NORTH FORK VALLEY
THAT IS PRISTINE AND COULD POTENTIALLY GROW
HEALTY & NUTRIGOUST FOOD FOR THE BIGGER PART
OF COLORADO, IS A PRIVELAGE.

IT SHOULD BE THE BIGGEST PRIORITY TO PROTECT IT
SPECIFICALLY IT'S WATERSHED.

IT IS A LACK OF RESPONSIBILITY TO LEASE ANY LAND
CLOSE TO OR ABOVE THE WATERSHED OF THIS VALLEY TO
THE GAS INDUSTRY.

3 A-PI NRED

THINK ABOUT THE RISK AND HOW ANY CONTAMINATIONS
OR ACCIDENTS CAN IMPACT THE WHOLE COMMUNITY
THE EVIDENCE OF GARFIELD COUNTY SHOWS THAT THERE
IS NO GARANTIE. ONCE THE DAMAGE & DONE,
NOT EVEN MONEY COULD MAKE IT REVERSIBLE.

IT IS MY HOPE THAT YOU WOULD READ THIS AND
CONTEMPLATE IT BEFORE YOU MAKE ANY FURTHER
DECISION.

SINCERLY

INDRA        & CO

> Address:
> Indra
> PO Box 986
> Paonia, CO 81428

BLM_0081664

# Officials in Three States Pin Water Woes on Gas Drilling ProPublica - April 26, 2009 7:00 am EDT

http://www.propublica.org/feature/officials-in-three-states-pin-water-woes-on-gas-drilling-426

This is an excerpt from the above article

".........The industry also defends its construction technology, saying it keeps gas and drilling fluids -- including any chemicals used for hydraulic fracturing -- safely trapped in layers of steel and concrete. Even if some escapes, they say, thousands of feet of rock make it almost impossible for it to migrate into drinking water aquifers. When an accident happens, the blame can usually be traced to a lone bad apple -- some contractor who didn't follow regulations, they say. Those arguments helped the gas drilling industry win rare exemptions from the Safe Drinking Water Act and the Clean Water Act when Congress enacted the 2005 **Energy Policy Act.**

But now an exhaustive examination of the methane problem in western Colorado is offering a strong scientific repudiation of that argument. Released in December by Garfield County, one of the most intensely drilled areas in the nation, the report concludes that **gas drilling has degraded water in dozens of water wells (PDF).**

The three-year study used sophisticated scientific techniques to match methane from water to the same rock layer where gas companies are drilling -- a mile and a half underground. The scientists didn't determine which gas wells caused the problem or say exactly how the gas reached the water, but they indicated with more clarity than ever before that a system of interconnected natural fractures and faults could stretch from deep underground gas layers to the surface. They called for more research into how the industry's practice of forcefully fracturing those deep layers might increase the risk of contaminants making their way up

BLM_0081665

into an aquifer.

"It challenges the view that natural gas, and the suite of hydrocarbons that exist around it, is isolated from water supplies by its extreme depth," said Judith Jordan, the oil and gas liaison for Garfield County, who has worked as a hydrogeologist with DuPont and as a lawyer with Pennsylvania's Department of Environmental Protection. "It is highly unlikely that methane would have migrated through natural faults and fractures and coincidentally arrived in domestic wells at the same time oil and gas development started, after having been down there ... for over 65 million years."

BLM_0081666

IN

Received
MAR 2.4 2010
Uncompahgre Field Office

Mr. Bruce Krickbaum
RMP Project Manager
Bureau of Land Management
2465 S. Townsend Avenue
Montrose, CO  81401

1 A-PI WSR

Dear Mr. Krickbaum,

I am very much against anyone or anything that would cause undue hardship on any of the people of the United States of America by not being able to use the great wonderful areas under the guardianship of the BLM.

Please do not do anything that would cause the people to lose some more of their great heritage such as being able to use and enjoy our lands.  This includes fishing, camping, floating the rivers, or the pursuit of finding a small amount of gold or a bigger amount if able.

Sincerely,


Ed Neil

BLM_0081667

03  24  2010        14:33/ST. 14:33                    P001

IN

Marty Warner
PO Box 425
Paradox, CO  81429
redrockmoon@frontiernet.net or mlwarner@dow.com

*Received*
*MAR 2 4 2010*
*Field Office*

Representing:  West End Planning and Advisory Committee
Rimrocker Historical Society
Unaweep-Tabeguache Scenic and Historic Byway
West End Economic and Community Development

The following is taken from several conversations with people from this area, but most of the input is from our monthly Scenic Byways meeting held February 17, 2010.  Your Planning Units 4 and 5 encompass a good portion of our Scenic Byway.  The suggestions from these groups are as follows:



**1 B-NP**
- A restroom and trash can on Y-11 at the confluence of the Little Dolores and San Miguel Rivers. This is frequently used by many people to fish and camp, and increases annually.  As I personally pick up a lot of trash from this area, it would be nice to encourage people to use a container.  A toilet facility would probably be a good idea as well.

**2 B-NP**
- Trash cans at East Creek day use area.

**3 B-NP**
- Rest rooms at Hanging Flume Overlook with trash cans.

**4 B-NP**
- A pull out by the coke oven to providing tourist viewing without trodding on the private land that surrounds the site.

**5 B-GE**
- Environmental Assessment conducted at Windy Point (confluence overlook) for a trail to the upper and lower overlook, with interpretive signage, parking, turnaround, safety railing, etc.

**6 B-NP**
- Rock climb trail signs out by Uravan

**7 B-GE**
- Trail Feasibility Assessment along Unaweep-Tabeguache Scenic and Historic Byway

**8 B-NP**
- Camping facility around Naturita/Nucla similar to between Placerville and Norwood

**9 B-NP**
- Boat put in/take out in Naturita

**10 B-NP**
- River clean up to make rafting possible and safer from Uravan to Confluence *of San Miguel + Dolores Rivers*

**11 B-NP**
- Widen Y-11 to make the road safer, pullouts, room for interpretation. Best up close views of Hanging Flume are from Y-11.

**12 B-NP**
- We would also like BLM to consider preservation of the old highways and make bike and hiking trails from them.  This would allow for industrial trucking to occur, and keep the biking/hiking people out of danger, as well as preserve "what used to be" for generations to come.

Thank you for the opportunity to make known these tourism upgrades, as this is essential for encouraging more tourists, and will make the experience more enhanced and enjoyable.

FROM                                        03/08 2010      14:34/ST. 14:33        P002

*page 2*

12 A-PI NRED

I personally understand the economic needs of milling and mining, but am working hard to develop other possibilities for the West End of Montrose County. I for one, do not wish to see forests of oil rigs and hope that consideration will be made in the permitting process to avoid degradation of the scenic beauty of the area.

Thank you for all the time you have put into this effort to include the public in this extremely important endeavor.

Sincerely,

*Marty Warner*

Marty Warner

BLM_0081669

FROM                                                03 2478 2010        14:34/ST. 14:33                        P003



# Uncompahgre
# Resource Management Plan



We encourage you to provide your comments by filling out and submitting this comment form by February 26, 2010. Please mail your completed form to the address on the opposite side or fax it to 1-970-240-5367. Comments may also be submitted via e-mail to uformp@blm.gov.

First Name **Marty**          Last Name **Warner**          Date **2/15/2010**

Mailing Address **PO Box 425**

City **Paradox**          State **CO**          Zip **81429**

E-mail Address: **redrockmoon @ frontiernet.net**

Would you like to be added to this project's mailing list to receive future project-related information (your name will not be shared)?          Yes: ☑ e-mail materials only  ☐ e-mail materials and hard-copy materials          ☐ No

Please indicate your affiliation by checking the following boxes (check all that apply):

☑ Individual (no affiliation)          ☑ Non-profit Organization          ☑ Citizen's Group

☑ Federal, State, or Local Government          ☐ Elected Representative          ☐ Regulatory Agency

Name of organization, government, group, or agency (if applicable) *WEST End Planning + Advisory Committee; Unaweep-Tabeguache Scenic Byways; RimRocker Historical Society; WEST End Economic Development*

Please answer the following four questions about your relationship to the Uncompahgre RMP Planning Area:

Do you live within the planning area? ☐ Unit 1 ☐ Unit 2 ☐ Unit 3 ☐ Unit 4 ☑ Unit 5 ☐ No
(Refer to map for unit numbers)

If you do not live in the planning area, do you live in: ☐ Colorado (west slope)  ☐ Colorado (front range or plains)
          ☐ Another State (which): _____          ☐ Another Country (which): _____

If you do live in the planning area, how long have you lived here?  Months: **3**  Years: **10**

Why do you live here? ☑ Occupation ☑ Family ☑ Proximity to public lands ☑ Recreational Opportunities
          ☐ Other

> *The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, reference as appropriate the planning units on the map titled Uncompahgre RMP Planning Units. You may attach additional sheets of paper for long comments. Thank you for taking the time to provide your input.*

What issues or concerns do you have regarding public land resources or uses within the Uncompahgre RMP planning area?

*please see the attached list of suggestions*

Responses' comments, including their names and street addresses, will be available for public review at the Uncompahgre Field Office during regular business hours from 8:00am to 4:30pm, Monday through Friday, except holidays, and may be published as part of the EIS. Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety.

OVER --- ▶

BLM_0081670

FROM                                      03/18 2010    14:34/ST. 14:33                    P004

Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?

*Maintain open space and promote and protect the scenic beauty which is our greatest resource*

Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?

*Allowing for the energy uses without letting it dominate this area.*

Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?

*As tourism develops more frequent Ranger patrols will be necessary*

Please provide any additional comments that you have regarding this project.

*(Please tri-fold this sheet & tape shut before mailing – Do not staple)*

BLM, Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Place First
Class Stamp
Here

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401

BLM_0081671

FROM                                  03/24/2010      14:34/ST. 14:33        P005

*page 5*



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
UNCOMPAHGRE FIELD OFFICE



## Uncompahgre Resource Management Plan Revision and EIS
## ECONOMIC WORKSHOPS – March 2010

*Naturita*                    EVALUATION

1. Did you hear anything new about your community? Yes_____ No __✓__

If yes, what was it? _____

_____

2. Did we miss anything we should know about your community? *I believe we should have it all; to offset "boom & bust syndrome" all the items on the list of priorities need to be considered for the West End of Montrose and your help with this is essential*

3. Did the information presented today help you get a better understanding of how community economic dynamics play a role in community economic health? Yes _✓_ No ____

If yes or no, how so? *It's a major time consumption for me right now*

4. Did you consider the workshop a productive use of your time today? Yes _✓_ No_____

If no, why not? _____

_____

5. What could we have done to make the workshop better? *I was somewhat inconvenienced by the time it was held because I work and had to leave before it was over.*
*@ 4:30*

1 A-PI REC
2 A-PI WSA (third sentence only)

IN

**To:** william Berry
UFORMP@blm.gov
**Subject:** comment on management plan
**Date:** Thursday, March 25, 2010 10:06:01 AM

I would like to express my opinion regarding ERMA designated land. I don't wish to see more areas that are managed as dispersed use areas changed to SRMA designation. I am in favor of WSA lands becoming wilderness, but dispersed use areas which allow dispersed camping are important to me. Please resist the urge to improve facilities, access, ect. and manage every recreational experience on every piece of BLM land. I would also like to see more law enforcement funds allocated, or a plan that allows for more law enforcement out and about. The people that abuse the dispersed use areas should be confronted. Over all, I think the BLM is doing a good job managing our public lands.
Thanks, Randy Berry
713 Hastings St.
Delta, Co

3 B-GE

4 A-GE

BLM_0081673

 Uncompahgre R IN ment Plan 

We encourage you to provide your comments by filling out and submitting this comment form by MARCH 26, 2010.  Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to:  BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO  81401.

First Name __**GREGORY**__          Last Name __**CRAIG**__               Date __**March 25, 2010**__

Mailing Address _____**PO BOX 3972**_____

City _____**TELLURIDE**_____ State _____**CO**_____ Zip ____**81435**_____

E-mail Address _____**GREG  CRAIG@MSN.COM**_____

**Would you like to be added to the RMP mailing list to receive future project-related information?  (Your name will not be shared.)  Yes: __X__ Email materials      ❑Hard-copy materials      ❑No**
Please note that planning materials are also available at our website:  www.UFORMP.com

**Please indicate your affiliation by checking the following boxes (check all that apply):**

X Individual (no affiliation)          X Citizen's Group               ❑Regulatory Agency
❑Non-profit Organization            ❑Elected Representative       ❑Federal, State or Local Government

*(citizens group: Peninsula Owners Association, Inc.)*

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

**1. Do you live within the planning area?** ❑Unit 1   ❑Unit 2   ❑Unit 3  __X__ Unit 4   ❑Unit 5  ❑No
*(Refer to map for unit numbers)*

**2. If you do not live in the planning area, where do you live:** ❑Colorado (west slope) ❑Colorado (front range or plains) ❑Other State - Which?_____   ❑ Other Country - Which?_____

**3. If you live in the planning area, how long have you lived here? Years_____19_____Months_____**

**4. Why do you live here?** ❑Occupation  ❑Family __X__ Proximity to public lands  __X__ Recreational Opportunities  ❑Other_____

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank you for taking the time to provide your input.*

BLM_0081674

1 A-PI FW
2 A-PI WSR
3 A-PI TM
4 A-PI LG

...u have regarding public land uses or resources within the Uncompahgre

Saltado Creek Canyon Comments:

Saltado Creek Canyon is a spectacular steep sided, deep and wild canyon adjoining the San Miguel River canyon. It is the only major tributary canyon/stream to SMR that has no roads or bridges. It is a key wildlife corridor connecting Uncompahgre Plateau to the Delores Mountains and wilderness areas to south. The current level of access should be maintained and no further development of access should occur. It should be designated a "wild" river section as proposed in the WSR Eligibility Report. Hunting and grazing should be maintained with the possible exception of better protection for riparian habitat from cattle. No motorized access, other than emergency vehicles or maintenance, should be allowed. This area should be managed with wildlife being the predominant management goal. It is also prime Lynx habitat.

San Miguel River Canyon:

5 A-PI ACEC

6 A-PI WSR

The entire ACEC and adjacent areas of the San Miguel River Canyon is a scenic and natural treasure and its scenic, natural, wildlife, habitat, species and recreational value should all be protected as the highest and best use of the area. Surface energy development of any sort including oil and gas, solar and geothermal should be minimized, tightly restricted or eliminated. The current level of access and facilities for recreation in this area is very good and should be maintained at current levels. The San Miguel River corridor should be designated "scenic" as proposed.

7 A-PI RED

General concerns:

- Geothermal and solar power generation need close examination and strict rules before being allowed. Similar to o&g development this form of energy development should be strictly controlled in areas of outstanding scenic, natural or recreation value. Similar "no surface occupancy" and other stipulations should be developed for these energy activities.

- Wolves: some serious thought should be given to management of wolf populations now that there is evidence that wolves are likely beginning to penetrate the state from the northwest. While a future issue it is likely that within the life span of the RMP this issue will crop up. It would also be a very positive development as it might naturally and positively impact many issues in our region such as destruction of riparian areas, over population of elk, etc.

- 

8 A-PI FW

BLM_0081675

**9 A-PI LG**

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

- Protection of riparian areas from grazing impacts in Saltado Canyon to protect willow and other species. Continue grazing but fence or otherwise protect Saltado Creek riparian areas. Note the following for ACEC Record of Decision:

  There is no indication that current livestock grazing levels and methods are detrimental to the majority of the riparian systems in the amendment area.  One known exception occurs on Saltado Creek, where livestock are concentrating to the detriment of the riparian system.

- Restrict any further development of access to Saltado Canyon. Eliminate the following, as found in San Miguel ACEC Record of Decision:

  Trails in Saltado and Beaver Creek Canyons may be constructed as well as a boat ramp on the San Miguel at Beaver Creek.  If feasible, a bicycle and foot trail

- Wildfire risk mitigation work in Specie Creek Road area on BLM lands adjacent to road to create egress. This is the only egress from Specie Mesa should a wildfire occur in the Saltado/Specie Creeks/Specie Mesa region. Also some invasive species in this are including mistletoe

- Specie Creek Canyon/Creek would benefit from habitat restoration.

**10 A-PI ACEC**
**11 B-GE (second sentence)**

**12 A-PI FM**

**13 A-PI FW**

**14 A-PI LR**

**Keeping in mind the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

- Small, non-contiguous parcels of sub-surface mineral estate owned by the federal government should be examined for disposal in the region. For instance, just west of Saltado Canyon in the Specie Mesa area there are numerous fractured parcels that are not large enough to allow creation of a oil/gas unit and access issues will also prevent development. Further, most recent lease prices have been very very low for these parcels with few bidders. This is all before the onset of massive development of unconventional shales in Marcellus, Barnett and elsewhere. In summary these subsurface parcels are essentially useless to the federal government. They should be identified for disposal to the highest bidder, or exchange, and the revenue used for much higher value BLM uses.

**15 A-PI ACEC**
**16 A-PI ED**

- The entire San Miguel River ACEC and the entire BLM holdings in Saltado and Specie Creek Canyons should be "No Surface Occupancy" stipulations for o&g and other energy development to protect scenic values and natural values. Given the low low probability of any o&g development ever occurring there is little or no cost to such actions. Geothermal leasing should NOT be allowed in this area until very tight regulations are developed, if at all.

**17 A-PI ED**

- All mesa top and mesa rim o&g leasing should include No Surface Occupancy restrictions to protect scenic values.
- Similarly the same region should be either closed to or extremely restrictive on the sale/disposal of saleable materials.
- If the following withdrawals have not been examined and eliminated they should be (this is from ACEC Record of Decision):

**18 B-GE**

   Most of the lands in the canyon bottom, between Placerville and the town of Piñon were withdrawn under Powersite Classification in 1925. An estimated 12,040 acres remain withdrawn. Withdrawals within the proposed ACEC total 8,600 acres, and an additional 3,440 acres in the remainder of the proposed SRMA. These withdrawals have not yet been reviewed or modified.

- Maintain the following policies on OHV restrictions:

**19 A-PI TM**

| OHV Use | Designations of OHV areas is primarily directed at maintenance or restoration or riparian areas and scenic values. Roads will be designated at the time the activity plan for the SRMA is developed. | Beaver Creek Canyon, Saltado Creek, and the San Miguel River Canyon from the Sanborn Park road to Horsefly Creek, would be closed to off-highway vehicles. The access road in lower Beaver Canyon must remain usable for utility line maintenance, but would be closed to public vehicle use. Within the remainder of the ACEC, vehicle use would be limited to designated roads or trails. Designation of the roads to remain open will occur in the Recreation Area Management Plan (Integrated Resource Management Plan). |

-

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

None

20 A-GE

**Please provide any additional comments that you have regarding this project.**

In the 1991UFO RMP it was unclear what map/data sources were used for energy potential ratings. Later on (see David Burgess et al v. BLM IBLA No. 2006-117) it was not clear where BLM was drawing its rating of oil and gas potential for the area from. Several different conflicting and inappropriate scale data sources were cited. All data sources used as underlying significant data for the RMP should be clearly documented, readily available to the public and such documentation should include caveats on the data or its use.

21 A-PI ED

The BLM should include in the RMP the exact energy potential maps and data source citations that underlie BLM maps and will be used for decision making for the RMP. If this is not possible an appendix should list all caveats , notes and specific citations for underlying data to document what was used and to avoid confusion. The following specific information should be included in the RMP to allow readers to understand what data was used for energy potential, also ALL disclaimers from underlying data should be included:

1. Source map used to create any energy potential mapping of any type or that will be relied on for leasing or mineral disposition related decisions. Example; oil and gas potential maps, geothermal potential maps, etc.
2. In appendix include accompanying .XML source data for any maps include citation, restrictions, limitations of data (eg, Colorado GoethermalGradiant Map for CO State Geology Service, caveats like "data points are often clustered with wide areas of sparse data')

See the attached example confusing map cited by BLM in David Burgess et al v. BLM.

22 A-PI ED

Particu energy related data/mapping the BLM should make sure that use of such data in the RMP follows its own data quality guidelines:

"*2. Ensuring and Maximizing Information Quality*

*Quality defined*

*BLM is issuing these guidelines to ensure and maximize the quality, including objectivity, utility and integrity, of disseminated information. Objectivity, integrity, and utility are defined here, consistent with the OMB guidelines. "Utility" refers to the usefulness of the information to the intended users. "Objectivity" focuses on whether the disseminated information is being presented in an accurate, clear, complete, and unbiased manner, and as a matter of substance, is accurate, reliable, and unbiased. "Integrity" refers to the protection of information from unauthorized access or revision, to ensure that the information is not compromised through corruption or falsification.*

*Transparency and Reproducibility*

*BLM recognizes that influential information should be subject to a high degree of transparency about data and methods to facilitate the reproducibility of such information by qualified third parties, to an acceptable degree of precision. It is important that analytic results have a high degree of transparency regarding (1) the source of the data used, (2) the various assumptions employed, (3) the analytic methods applied, and (4) the statistical procedures employed. It is also important that the degree of rigor with which each of these factors is presented and discussed be scaled as appropriate, and that all factors be presented and discussed. In addition, if access to data and methods cannot occur due to compelling interests such as*

BLM_0081678

## Zoe Ghali

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **Sent:** | Friday, March 26, 2010 11:53 AM |
| **To:** | Zoe Ghali; Kate Wynant |
| **Cc:** | Angie Adams; bbott@montrose.net |
| **Subject:** | Fw: Follow-up to BLM Economic Workshop |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Hello,

--Supplemental information from the Uncompahgre Plateau Project (UPP) regarding Socio-economics.

I am also wondering if paragraph 2 should be forwarded to Andrew Gentile for his consideration.

--Bruce


----- Forwarded by Bruce Krickbaum/MOFO/CO/BLM/DOI on 03/26/2010 09:28 AM -----

```
              "Jim Free"
              <jcfree2@msn.com>
                                                                To
              03/25/2010 07:02         <bruce_krickbaum@blm.gov>
              AM                                                cc

                                                           Subject
                                        RE: Follow-up to BLM Economic
                                        Workshop
```


Bruce, Sorry for the delayed response.  It has been a busy spring.

1. All the communities enjoy the open space that the public lands provided out their backdoor. The more the BLM can work with the counties and communities in providing access to these close in parcels the higher lifestyle values can be achieved.  This means that some of these parcels are no longer multiple use. The open space will need to be withdrawn from minerals other commodity type outputs.  Working with the local recreation districts or communities to adopt these parcels for outdoor classrooms.

The BLM lands are very important to the UPP in looking at landscape restoration objectives.  Health native plant communities provide for multi outputs.  We have and continue to loss the carrying capacity of the land.
The heavy woody overstory vegetation continues to reduce the carrying capacity for wildlife, livestock and water yield. etc. Much of the mountain shrub/PJ country is so thick one can't ride thru it on a horse or crawl thru on foot.  BLM needs to be more aggressive in creating the mosaic serial stages across the landscape.  Invasive species management is a given.

BLM_0081679

The synergy between the BLM and UPP is excellent.  We just need to continue to make it happen.

2. Woody Biomass should be higher on the BLMs economic radar screen.  If the Nucla plant coverts to using some woody biomass (it is closer than you think) the opportunity to accomplish resource objectives will be right out your back door.  Need to jump on board with our biomass assessment study.
The need for Native Plants to follow treatments will come next and then comes the need for good seed storage.  The UPP has a project under way to bring all the agencys together to accomplish a seed warehouse facility.
Can
the BLM become a partner?

Thanks for the opportunity to comment. Jim

Jim Free
UP Project Coordinator
14920 6000 Road
Montrose, CO 81403
(970) 275-0752



Jim,

The BLM Uncompahgre Field Office staff appreciates your attendance at last Tuesday's Social-Economic workshop.
We value your time and truly regret that we did not achieve all the stated workshop objectives.

I am soliciting information on two important agenda items/objectives that we missed in order to obtain a complete picture of socio-economics in the Montrose vicinity of the planning area. Would you please take a few minutes to reply to this message with your input on the following questions?

1) How does the BLM fit in with your community/county?
    --How does the use of public land fit into community,
      county and UP objectives?  What is the value of
      having BLM lands?
    --What can BLM do to partner with your community,
      county or UP to reach its potential?

2) Do you know of any important sources of information regarding social and economic issues that BLM should consider?

Economic information and social aspects of the area are an important part of planning, developing alternatives, impact analysis, and decision making as we progress through our Resource Management Plan. I, and the rest of the Uncompahgre Field Office staff, sincerely hope that you remain an interested and active participant throughout the planning process, as your involvement is critical to a successful Resource Management Plan.

Thank you again for your time. Please contact me at 240-5300 or e-mail bruce_krickbaum@blm.gov with any questions or to further discuss these topics.

Thank you, Bruce

<><><><><><><><><><><><><><><><><><><><>
Bruce Krickbaum
Planner, Environmental Coordinator
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
970.240.5384

BLM_0081680

3

BLM_0081681

**Zoe Ghali**

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **Sent:** | Friday, March 26, 2010 9:25 AM |
| **To:** | Zoe Ghali; Kate Wynant |
| **Cc:** | Angie Adams; bbott@montrose.net |
| **Subject:** | Fw: Follow-up to BLM Economic Workshop |

Supplemental information from Olathe regarding socio-economics.

----- Forwarded by Bruce Krickbaum/MOFO/CO/BLM/DOI on 03/26/2010 09:23 AM -----

|  |  |  |
|---|---|---|
| "Scott Harold" <sharold@ci.olathe.co.us> | | **To** <bruce_krickbaum@blm.gov> |
| 03/25/2010 11:05 AM | | **cc** |
| | | **Subject** RE: Follow-up to BLM Economic Workshop |
| Please respond to <sharold@ci.olathe.co.us> | | |

Bruce,
Sorry about me delay in response.
My days all seem to be going way too fast for me to get everything done!
I'm sure you understand. Your plate seems to be full also!
I was a bit disappointed with the meeting. Not with any of the information that we worked on with the Prof. from Idaho or the exercise we completed.
It
was just that that work was already accomplished through the County's Master Plan work done over the last couple of years.
I was hoping for a lot more of what you are asking for in this memo.
I will be as brief as possible because I am the one typing, but welcome a chance to sit down and discuss in greater detail if you ever have a few minutes...
As you know, Olathe's main economy is agricultural related. We pride ourselves on being the place for those types of jobs. We also feel our small town is affordable to those in related industries that do not require college degrees and thus higher annual salaries.
That being said, most of our citizens both in town and in the surrounding area don't have the economic status to take large out of state and out of country vacations or trips. They rely on our local activities and destinations for their leisure time. BLM and National Forests are a very large part of this activity.
I have heard from many locals that use trails and areas for their personal "getaways".
This includes ATV, horse and foot traffic. As you know from other meetings and public input, often these different uses have different viewpoints on "how" to use these public lands.
I do not want to be in the middle of any of these "discussions", but would like to make certain the discussion continues to happen and that your agency continues to provide options for all parties. I think you have done a great job with this. I was told years ago that if someone is not angry with you, you are not doing your job! I think this is especially true in your position concerning public lands usage. Continue to develop those resources and let the Town know when their is going to be public meetings about changes

1

and we will get the word out!
I would appreciate keeping Olathe on your list as an interested party as I think we have a lot of traffic that comes through Olathe to get to Public lands. Going both east and west from Olathe to get to those public lands.
We want to make sure the traveling public knows that Olathe has gas stations, convenience stores, a great hardware store with needed camping, fishing and RVing supplies, a grocery store for all their needs and some excellent restaurants. If we can help in any way with signage or displays or anything along that line, we welcome your input.
Thanks for listening and I hope this quick note at least lets you know we want to be a partner with BLM and will work in anyway to help you.


Scott A. Harold
Town Administrator
Town of Olathe
419 Horton Avenue
Olathe, Colorado 81425
970-323-5601
Fax – 970-323-5149
E mail address: sharold@ci.olathe.co.us

NOTICE:  CONFIDENTIAL AND PRIVILEGED MATERIAL

The information contained in this electronic mail transmission (including any accompanying attachments) is intended solely for its authorized recipient(s), and may be confidential and/or legally privileged.  If you are not an intended recipient, or responsible for delivering some or all of this transmission to an intended recipient, you have received this transmission in error and are hereby notified that you are strictly prohibited from reading, copying, printing, distributing or disclosing any of the information contained in it.  In that event, please contact the Town of Olathe immediately by phone at (970) 323-5601 or by electronic mail(tfoechterle@ci.olathe.co.us) and delete the original and all copies of this transmission (including all attachments) without reading or saving in any manner.

-----Original Message-----
From: bruce_krickbaum@blm.gov [mailto:bruce_krickbaum@blm.gov]
Sent: Tuesday, March 16, 2010 10:33 AM
To: sharold@ci.olathe.co.us
Subject: Follow-up to BLM Economic Workshop


Mr. Harold,

The BLM Uncompahgre Field Office staff appreciates your attendance at last Tuesday's Social-Economic workshop.
We value your time and truly regret that we did not achieve all the stated workshop objectives.

I am soliciting information on two important agenda items/objectives that we missed in order to obtain a complete picture of socio-economics in the Montrose vicinity of the planning area. Would you please take a few minutes to reply to this message with your input on the following questions?

1) How does the BLM fit in with the community of Olathe?
    --How does the use of public land fit into your
      community's or the county objectives?  What is the
      value of having BLM lands?
    --What can BLM do to partner with Olathe or the
      county to reach its potential?

2) Do you know of any important sources of information regarding social and economic

BLM_0081683

issues that BLM should consider?

Economic information and social aspects of the area are an important part of planning, developing alternatives, impact analysis, and decision making as we progress through our Resource Management Plan. I, and the rest of the Uncompahgre Field Office staff, sincerely hope that you remain an interested and active participant throughout the planning process, as your involvement is critical to a successful Resource Management Plan.

Thank you again for your time. Please contact me at 240-5300 or e-mail bruce_krickbaum@blm.gov with any questions or to further discuss these topics.

Thank you, Bruce

<><><><><><><><><><><><><><><><><><><><>
Bruce Krickbaum
Planner, Environmental Coordinator
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
970.240.5384

BLM_0081684

IN

1 A-GE

**Ali Lightfoot**
**To:** UFORMP@blm.gov
**Subject:** Comments on BLM
**Date:** Thursday, March 25, 2010 2:32:26 PM

2 A-PI REC

My name is Ali Lightfoot and I live on the edge of the BLM in Paonia at 65 Cedar Drive. The BLM is basically our backyard.  For the most part I think the land  is perfect and how it's managed is fine.  I have some concerns about multi use-  the fact that people can hunt out there is very strange to me.  I don't like hearing gunshots so close to our kids and pets and house. I have nothing against hunting at all,  but why would you combine shooting guns with children and joggers and hikers on the same land?  I'm not a huge fan of the ATVs either.  Again -I'm not against ATVs,  but I don't like being around them when I'm hiking with my kids.   And I don't like it when they crash into my neighbor's house by accident (which one did).   Dogs are fine.  I don't care if there are dogs running around out there as long they are on a leash.  My husband and I love the fact that we live on the edge of this great public land.  We love hearing the coyotes howling out there.  The ditch paths are so perfect for cross country skiing in the winter.  We spend time out there  every week of the year.  We would like to organize a clean up day and have a big party at our house at the end.

3 A-PI REC

4 A-PI REC

5 A-PI FW

6 A-PI REC

7 B-GE

Thank you,
Ali Lightfoot

IN

**From:** Mary Pfalzgraff
**To:** UFORMP@blm.gov
**Subject:** public comment
**Date:** Thursday, March 25, 2010 7:59:17 PM
**Attachments:** image003.png
image004.png
image005.png
image006.png

# Uncompahgre Resource Management Plan

**We encourage you to provide your comments by filling out and submitting this comment form by February 26, 2010.  Email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to:  BLM UFO, Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.**

First Name___**Mary**_____ Last Name___**Pfalzgraff**____Date_____**March 25, 2010**_____

Mailing Address_____**847 Garnet Ave.**_____

City___**Delta**_____ State___**CO**_____ Zip_____**81416**_____

E-mail Address_____**mary@montrose.net**_____
_____

**Would you like to be added to the RMP mailing list to receive future project-related information? (Your name will not be shared.)  Yes:  ☐Email materials  ☐Hard-copy materials     X No**
Please note that planning materials are also available at our website:  www.UFORMP.com

**Please indicate your affiliation by checking the following boxes (check all that apply):**

**X ☐Individual (no affiliation)**
**☐Non-profit Organization**

**☐Citizen's Group**
**☐Elected Representative**

**☐Regulatory Agency**
**☐Federal, State or Local Government**

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

**1. Do you live within the planning area? ☐Unit 1  ☐Unit 2  ☐Unit 3  ☐Unit 4  ☐Unit 5  ☐No** *(Refer to map for unit numbers)* Gunnison Gorge

**2. If you do not live in the planning area, where do you live:  X Colorado (west slope)  ☐Colorado (front range or plains) ☐Other State - Which?_____  ☐ Other Country - Which?_____**

**3. If you live in the planning area, how long have you lived here? Years_____39_____ Months_____8**

**4. Why do you live here? ☐Occupation  ☐Family  ☐Proximity to public lands  X Recreational Opportunities  ☐Other___Truly, all of the above_____**

*The BLM wants to hear from you! The Uncompahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units or the planning issues on our Planning webpage. Thank you for taking the time to provide your input.*

**What issues or concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?**

My primary concern is that of protecting wilderness areas. *In wilderness is the preservation of the world.*

Secondly, I am concerned about limiting and regulating gas and mining…..including uranium.  How typical that my husband returned to his favorite hunting area last year only to find a noisy gas rig and certainly no

1 A-PI WSA

2 A-PI ED

animals.  Not only do they destroy our recreational areas I am concerned about their effects on public health, water quality and safety.

**Please provide any additional comments that you have regarding this project.**

Thank you for the opportunity to comment.

Thirdly, I am concerned about additional trails for motorized vehicles in remote areas........ATVs and dirt bikes!!!!  They are rampant, destructive, and their damage is irreparable.  Their access needs to be severely limited.

Mary Halligan

3 A-PI REC

IN

25 Mar '10

1 A-PI TM

Dear Barb,

Several times I have hiked in Roubideau Canyon area. I sincerely believe it would be a big mistake to open that area of Potter & Monitor Canyons to Motorized Vehicles.

For sake of today and future hikers, I urge you protect this great resource from the damage Motor traffic Causes.

Sincerely,
Dale Reed

Address is:
Dale Reed
2044 A Winston Way
Montrose, CO 81401

BLM_0081688

## Uncompahgre Resource Management Plan

**IN**

We encourage you to provide your comments by filling out and submitting this comment form by March 29, 2010 by email your completed form to UFORMP@blm.gov, or print your completed form and fax it to 1-970-240-5367 or mail it to: BLM Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager, 2465 S. Townsend Avenue, Montrose, CO 81401.

First Name ___Joel___ Last Name __Sorensen__ Date __3/25/10__

Mailing Address __2503 S Ouray Street__

City ___Aurora___ State _CO_ Zip ___80013___

E-mail Address ___jvogel1032@aol.com___

Would you like to be added to the RMP mailing list to receive future project-related information?
(Your name will not be shared.) Yes: x☒Email materials ☐Hard-copy materials ☐No
Please note that planning materials are also available at our website: www.UFORMP.com

Please indicate your affiliation by checking the following boxes (check all that apply):

x☒Individual (no affiliation)   ☐Citizen's Group   ☐Regulatory Agency
☐Non-profit Organization   ☐Elected Representative   ☐Federal, State or Local Government

*Please answer the following four questions about your relationship to the Uncompahgre Planning Area:*

1. Do you live within the planning area? ☐Unit 1 ☐Unit 2 ☐Unit 3 ☐Unit 4 ☐Unit 5 x☒No
*(Refer to map for unit numbers)*

2. If you do not live in the planning area, where do you live: ☐Colorado (west slope) x☒Colorado (front range or plains) ☐Other State - Which?_____ ☐ Other Country - Which?_____

3. If you live in the planning area, how long have you lived here? Years_____ Months_____

4. Why do you live here? ☐Occupation ☐Family ☐Proximity to public lands ☐Recreational Opportunities ☐Other_____

*The BLM wants to hear from you! The Uncampahgre Field Office is committed to listening to and learning from our neighbors, friends, and stakeholders. Your answers to the following questions will be helpful at this point in the planning process, as are any other comments. When answering the following questions, where applicable please reference the planning units in the Planning Unit Map on our Planning webpage. Thank*

**1 A-PI WSR** concerns do you have regarding public land uses or resources within the Uncompahgre RMP planning area?

It is my understanding that the San Miguel River provides irrigation for farmers and ranchers in the area. Having grown up on a farm near Cortez, CO, I can understand how disruption of a water supply is lethal to agriculture, especially here in the arid West. Agriculture is a marginal enterprise at best, but BLM has historically worked closely with farmers and ranchers in any manner they can. I would like to see this support and cooperation continue. I think the question needs to be asked as to whether destroying dams and ditches, thereby depriving farmers and ranchers of an asset (water rights) is moral or legal. Does it conflict with Colorado Water law, since water laws in Colorado are not riparian?

If this area is designated in the WSR, it will narrow multiple use of the area by the people. i.e., gold mining hobbyists would be prohibited from filing claims for their various clubs. The public lands should be for the use and enjoyment of all people, not just a few chosen groups.

BLM_0081689

**Keeping in mind the issues above, what changes would you make physically to the landscape (such as what should it look like, modifications, etc.)?**

There shouldn't be any changes made physically to the landscape. One reason it is even being considered to be part of the WSR is because of its beauty. Why would we want to modify it? If it is included in WSR, the dam and ditch that provides water to farmers and ranchers would have to be destroyed. Along with it, their livelihood would be destroyed. It should be left as it is.

2 A-PI WSR

3 A-PI WSR **nd the issues above, what changes would you make to administration (such as management actions, rules, regulations, etc.)?**

BLM 's resources are already strained without adding this additional administrative and management responsibility. At a time when the national economy is in shambles, additional personnel and money may not be available to BLM field offices. To put it bluntly, the local field offices do not need to have more duties piled on. Although it is the responsibility of BLM to care for and safeguard our public lands, it would be better to keep it manageable than to add more and more until all of it becomes unmanageable. Plus this — let's be honest. Don't we already have enough rules, laws, regulations and restrictions?

**Keeping in mind the issues above, what changes would you make to social characteristics (such as number of users, size of groups, behavior of users, etc.)?**

Public lands are just that. Public lands, and use should be available to the largest number of people possible without compromising the integrity of the areas. Rafters, fishermen, boaters, farmers, ranchers, gold miners, should all be allowed to use it as long as they are not doing undue harm to the resources. Although not all users are "greenies," I think most people are very cognizant of the importance of keeping our public areas as pristine as possible without over-regulating them.

4 A-PI WSR

5 A-PI WSR

**Please provide any additional comments that you have regarding this project.**

Presently the ACEC & SRMA management plan protects the habitat, the river, and the public land users. Due to the nature of Colorado Water law, putting the river under WSRA may open a contingency of problems not foreseen. While there may be tributaries that should be placed under WSRA, this section of the San Miguel does not need to be included in it.

In closing, I want to thank you for the ease that you have afforded the public for making comments. I appreciate it.

IN

Received

MAR 2 9 2010

Uncompahgre Field Office

**MAXWELL ALEY**
Attorney and Counselor at Law

39713 Panorama Road
Paonia, CO 81428
Tel./fax: (970)527-5555
E-mail: mpa@tds.net

March 26, 20101

Bruce Krickbaum
BLM –Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO 81401

Re: Oil and Gas Drilling in
    The North Fork of the Gunnison River

Dear Sir:

1 A-PI NRED

I am writing as a citizen of the North Fork in Delta County in connection with your Resource Management Plan Revision in our home area here.

I oppose any further drilling without tightening up the regulations for safety and adverse environmental impacts in connection with further drilling for oil and gas in our area.

In particular, I mention the recent action by the EPA to re-examine the negative impacts of hydro-fracking after the study by the City of New York showing the adverse impacts. I would urge the BLM to restudy the problem, as well, in the light of the of the New York Study. That study was directed in particular to impacts on the NYC watershed of gas drilling in the Marcellus Shale. Please refer to the article published in the March 26, 2010 issue of Yale Environment at page 360. The conclusions of the study are applicable anywhere else.

2 A-PI NRED

I also direct your attention to the studies by Theo Colburn, PhD. on dangerous effects of the fracking chemicals on animal bio-systems, namely endocrine disruption.

The BLM needs to suspend approval of drilling until it has made a further study in light of this new information.

3 A-PI NRED

Very truly yours,

Maxwell Aley

Maxwell Aley



AL

# DELTA COUNTY, COLORADO
## BOARD OF COUNTY COMMISSIONERS

COUNTY COURTHOUSE • 501 PALMER STREET • SUITE 227 • DELTA • COLORADO • 81416-1796
PHONE: (970) 874-2100     FAX: (970) 874-2114
www.deltacounty.com

Dist. 1: Lela J. "Jan" McCracken - Dist. 2: C. Bruce Hovde - Dist. 3: R. Olen Lund

March 26, 2010

Bureau of Land Management
Uncompahgre Field Office
RMP Project Manager
2465 S. Townsend Avenue
Montrose, CO 81401

RE: Uncompahgre Field Office
Resource Management Plan Revision -
Delta County Comments

**1 A-GE (first two paragraphs)**

Attention: **Bruce Krickbaum**
RMP Project Manager (e-mail: UFORMP@blm.gov)

Delta County appreciates the opportunity to submit general comments in response to the Uncompahgre Field Office's (UFO) request as part of its scoping for the Resource Management Plan (RMP) revision process. The County's comments address the importance of continuing to manage resources on the BLM lands in our County and neighboring counties for multiple use opportunities. The public lands are an integral part of Delta County's social fabric, local economy and healthy environment.

**2 A-PI ED (this sentence only)**

BLM lands comprise a significant portion of Delta County's open space and resource area, a fact that places a need for a greater awareness of the potential impacts any revisions may have on current uses as they impact our local economy and quality of life. Revisions which may in one way or another permanently restrict or change the available usage and access to BLM lands or mineral interests should be carefully considered.

**3 A-PI SE**

Historically, the County's economy and way of life have been very dependent on the extractive resources available on public lands. This historic economic dependency continues in the areas of mineral extraction, agriculture and timber harvesting. More recently, natural gas development, tourism and recreation have increased and contributed to a more diverse local economy.

**3 A-PI SE continued**

The degree and manner of public and working access to the BLM lands and mineral resources will undoubtedly be changed through revisions to the BLM management plan. The County would like the BLM to respect the economic dependency on the current level of these diverse uses and access to BLM property and minerals. The County would request that a comprehensive cost benefit analysis be conducted as part of the RMP revision process to address the impacts of various resource management policies and practices on the local economy and surrounding areas. The multiple use of BLM lands and development of BLM minerals is important to Delta County residents to insure continued support of the basic economic foundation of Delta County.

**4 A-PI WSR**

The same principles of historic multiple use apply to private property rights along the segments of stream identified as eligible for Wild and Scenic River designation. In Colorado, water rights are private property rights according to the Doctrine of Prior Appropriation. Ranches efficiently use and reuse water many times for irrigating crops and watering livestock along private stretches of streams and rivers.

**5 A-GE**

Increasingly we hear of potential conflicts among the various uses on public lands; however it is critical to the well being of our constituents and our local economy that the concept of multiple use is protected and a balance in the management of resources is sought as the UFO commences its RMP revision process.

In closing, the Board of Delta County Commissioners appreciates the opportunity to submit comments. As a Cooperating Agency in this revision process, please feel free to call upon the County to provide information that may be helpful to this revision process.

Sincerely,

BOARD OF DELTA COUNTY COMMISSIONERS

By: _Lela J. McCracken_

Lela J. McCracken, Chair

BLM_0081693

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **To:** | fishman2@montrose.net |
| **Cc:** | uformp@blm.gov |
| **Subject:** | Re: Scoping comments for the UFORMP |
| **Date:** | Friday, March 26, 2010 8:46:12 AM |

IN

Andy,

I have received your comments -- thank you.

-Bruce

<><><><><><><><><><><><><><><><><><><><>
Bruce Krickbaum
Planner, Environmental Coordinator
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
970.240.5384


            <fishman2@montros
            e.net>
                                            To
            03/24/2010 10:05        <bruce_krickbaum@blm.gov>
            PM                                cc
                        <uformp@blm.gov>
                                        Subject
                    Scoping comments for the UFORMP




Please let me know if you receive these comments.

Thanks,

Andy

58657 Meadow Lane

Montrose, Colorado 81403

Bruce Krickbaum

RMP Project Manager

BLM Uncompaghre Field Office

2465 South Townsend Ave

Montrose, Colorado 81401

Dear Mr Krickbaum

As a 37 year resident of Montrose County, I have had the good fortune of hiking biking and horseback riding on various parts of land in the juristiction of the Uncompaghre Field Office (UFO) of the BLM.  I wish to submit the following scoping comments regarding the Resource Management Plan (RMP) that you are considering.

1 B-GE

Regarding the already existing Dry Creek Travel Management Plan (TMP):

The BLM is to be commended on its adoption of the Dry Creek TMP. It should not reconsider its decision to close  Monitor Creek Canyon to motorized use by creating a connector for motorized travel from 25 Mesa Road going into the canyon system.  Its proximity to the Camel Back WSA and the Forest Service Roubideau WSA demands its management as a primitive backcountry area for wildlife and quiet use.