**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

| ADMINISTRATION |
| --- |

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
| --- |

BLM needs to coordinate with the Forest Service for prescriptions to protect wildlife habitat. In addition, the upper segment of the river needs to be managed in coordination with the Forest Service. Consideration needs to be given to extending the segment into the adjacent Forest Service lands.

NAME:                                              SEGMENT:

## 17 - SALTADO CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed                **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0107984

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

| ADMINISTRATION |
|:---:|

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
|:---:|

We recommend that this segment be designated as suitable.

**NAME:**                                         **SEGMENT:**

BLM_0107985

## 18 - SAN MIGUEL RIVER, SEGMENT 1 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                    *ORVs:* Vegetation

**Your Name:** S. Matt Reed                    **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

**GENERAL**

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

**LAND OWNERSHIP AND USES**

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

| ADMINISTRATION |
|---|

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
|---|

Management of this segment could be difficult because of the diverse private landowner interests surrounding the river. However, we recommend suitability because of the number and quality of ORVs.

**NAME:**                                    **SEGMENT:**

## 19 - SAN MIGUEL RIVER, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                    *ORVs:* **Vegetation**

**Your Name:** _S. Matt Reed_                    **Telephone:** _970.349.7104_

**Address:** _PO Box 1066, Crested Butte, CO 81224_   **E-mail:** _matt@hccaonline.org_

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

Because the segment of the San Miguel River extends partly into National Forest lands, BLM needs to coordinate with the Forest Service and make that section of the river eligible for inclusion. We recommend that this entire segment be designated suitable.

**NAME:**                                      **SEGMENT:**

## 20 - SAN MIGUEL RIVER, SEGMENT 3 WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed                    **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1.  Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2.  Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3.  Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4.  Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5.  Compatibility or incompatibility of designation with current land and water uses and development.**

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9.  Issues that might make administering this segment difficult.**

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

We ask that the BLM analyze this segment again and readjust its boundaries, because the upper waters are mainly private, and this would avoid lengthy private/public disputes. We recommend that this segment be designated as suitable.

NAME:                                    SEGMENT:

## 22 - SAN MIGUEL RIVER, SEGMENT 6 WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed          **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

Rather than a Wild and Scenic designation, we recommend strong prescriptive management to protect the endangered fish species and their habitats, as well as the hanging flume. The BLM also needs to coordinate with the Colorado Water Conservation Board to protect native fish and to continue to protect flows.

NAME:                                    SEGMENT:

## 23 - TABEGUACHE CREEK, SEGMENT 1 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                    *ORVs:* Vegetation

**Your Name:** S. Matt Reed                          **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0107994

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

BLM should coordinate with the Forest Service to determine if the possible Wild and Scenic designation should be extended into the adjacent National Forest. We recommend that this segment be designated suitable.

**NAME:**                                              **SEGMENT:**

## 24 - TABEGUACHE CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                    *ORVs:* Vegetation

**Your Name:** __S. Matt Reed__                    **Telephone:** __970.349.7104__

**Address:** __PO Box 1066, Crested Butte, CO 81224__   **E-mail:** __matt@hccaonline.org__

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9.  Issues that might make administering this segment difficult.**

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

```
We do not advocate for suitability for this segment, but do insist that any
management plan contain strong prescriptions to protect the archaeological and
cultural resources in the immediate area.
```

**NAME:**                                              **SEGMENT:**

BLM_0107997

## 25 - LOWER DOLORES RIVER WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                              *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed                              **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

BLM needs to coordinate with the Grand Junction Field Office because the lower terminus is the boundary between the two field offices. We ask that the agency consider a strict permit system for river recreation to prevent over-use, especially during Spring high-water. In addition, consider finding suitability only for the southern portion of the segment, as the north segment is a patchwork of private lands.

NAME:                                        SEGMENT:

## 27 - DOLORES RIVER, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed                         **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108000

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

| ADMINISTRATION |
| --- |

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
| --- |

```
BLM should continue its dialogue with stakeholders concerning management of
the river. BLM's responsibility for this segment should be mainly to protect
riparian habitat. Because of past mining in and around this area, BLM should
focus on restoring and protecting water quality for this segment.
```

NAME:                                              SEGMENT:

## 31 - LA SAL CREEK, SEGMENT 3 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                        *ORVs:* Vegetation

Your Name: _S. Matt Reed_                    Telephone: _970.349.7104_

Address: _PO Box 1066, Crested Butte, CO 81224_   E-mail: _matt@hccaonline.org_

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**I. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

```
We strongly support suitability for this segment because its numerous,
important ORVs. It is essential that future management prescriptions protect
the exemplary populations of flannelmouth suckers, bluehead suckers and
roundtail chubs.
```

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

**NAME:**                                          **SEGMENT:**

## 35 - BIG DOMINGUEZ CREEK, SEGMENT 1 WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed                    **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

| ADMINISTRATION |
|---|

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9.  Issues that might make administering this segment difficult.**

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
|---|

The Colorado Water Conservation Board is filing for all of the unappropriated flows in the creek, minus a de minimus "carve out" for upstream wells on inholdings. We recommend that this segment be designated as suitable, but request that the agency manage segments 1 and 2 as one segment rather than as two.

NAME:                                              SEGMENT:

## 36 - BIG DOMINGUEZ CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed                    **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108006

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

The Colorado Water Conservation Board is filing for all of the unappropriated flows in the creek, minus a de minimus "carve out" for upstream wells on inholdings. We recommend that this segment be designated as suitable, but request that the agency manage segments 1 and 2 as one segment rather than as two.

NAME:                                          SEGMENT:

## 37 - LITTLE DOMINGUEZ CREEK, SEGMENT 1 WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                              *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed                                **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9.  Issues that might make administering this segment difficult.**

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

The Colorado Water Conservation Board is filing for all of the unappropriated flows in the creek, minus a de minimus "carve out" for upstream wells on inholdings. We recommend that this segment be designated as suitable, but request that the agency manage segments 1 and 2 as one segment rather than as two.

**NAME:**                                   **SEGMENT:**

BLM_0108009

## 38 - LITTLE DOMINGUEZ CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed          **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1.  Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2.  Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3.  Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4.  Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5.  Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108010

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

| ADMINISTRATION |
|---|

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
|---|

The Colorado Water Conservation Board is filing for all of the unappropriated flows in the creek, minus a de minimus "carve out" for upstream wells on inholdings. We recommend that this segment be designated as suitable, but request that the agency manage segments 1 and 2 as one segment rather than two.

NAME:                                              SEGMENT:

BLM_0108011

## 39 - GUNNISON RIVER, SEGMENT I WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed                          **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**I. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

| | |
|---|---|
| **ADMINISTRATION** | |

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

```
BLM must coordinate with the Bureau of Reclamation to provide the flows needed
to protect and recover the endangered fish found in this segment.
```

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

```
We encourage BLM coordination with other agencies, including the Bureau of
Reclamation and FWS, to ensure protection of the extended riparian ecosystem. A
guideline for inter-agency coordination is presented in the "Unified Federal
Policy for a Watershed Approach to Federal Land and Resource Management".
Effective since October 2000, this policy is intended to provide a framework to
enhance watershed management for the protection and health of ecosystems on
Federal lands.
```

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| | |
|---|---|
| **ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY** | |

```
Because of the railroad track running along this segment we ask that the agency
consider a classification of recreational. We support a suitability finding for
this segment.
```

**NAME:**                                             **SEGMENT:**

August 10, 2010

Received

AUG 1 2 2010

Uncompahgre Field Office

US Bureau of Land Management
Uncompahgre Field Office
Attn: Bruce Krickbaum, RMP Project Manager
2465 S. Townsend Ave.
Montrose, CO 81401
uformp@blm.gov

## Re: Uncompahgre Field Office Wild and Scenic River Suitability

Dear Bruce,

Please accept these comments on behalf of High Country Citizens' Alliance (HCCA) regarding the revision of the Uncompahgre Field Office Resource Management Plan (RMP), and in particular the suitability of river segments under the National Wild and Scenic Rivers Act. We would like to thank you for the opportunity to comment on the RMP and on potential suitability of river segments found in the *Final Wild and Scenic River Eligibility Report*. HCCA is a non-profit conservation organization in Gunnison County whose members live, work and recreate in the Gunnison River watershed and across western Colorado. Our mission is to champion the protection, conservation and preservation of the natural ecosystems within the Upper Gunnison River Basin. We promote water conservation, water quality protection and collaborative initiatives to improve the benefits of water for everyone, and feel strongly that appropriate riparian management decisions are a critical part of the land management planning process.

Thank you for the opportunity to provide input on this component of the management plan. HCCA has a long and collegial relationship with many other potential interested stakeholders, and we anticipate a robust discussion of everyone's concerns. We look forward to working with the BLM and stakeholders on these stream segments to find innovative and exciting approaches to protecting this unique landscape.

Sincerely,

*Matt Reed*

Matt Reed
Public Lands Director
High Country Citizens' Alliance
Crested Butte, CO 81224
(970) 349-7104
matt@hccaonline.org

BLM_0108015

## I - COTTONWOOD CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                                       *ORVs:* Vegetation

**Your Name:** S. Matt Reed                                    **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224 **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108016

6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.

---

**ADMINISTRATION**

7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

9. Issues that might make administering this segment difficult.

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

---

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

Because the upper terminus of this segment is the BLM boundary with the Uncompahgre National Forest, we urge BLM to work with the Forest Service to see whether the eligible/suitable segment could be extended into the National Forest. Choosing a terminus at an administrative boundary is arbitrary. Hydrological and topographical features should determine boundary lines for Wild and Scenic designation. We recommend that this segment be designated suitable.

NAME:                                    SEGMENT:

BLM_0108017

## 3 - ESCALANTE CREEK, SEGMENT I WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

ORVs: Vegetation

**Your Name:** S. Matt Reed          **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224     **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108018

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

8. **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

9. **Issues that might make administering this segment difficult.**

10. **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

Scenic suitability should not affect historic water uses. Any historic water uses should be grandfathered. We recommend that this segment be designated as suitable.

**NAME:**                                    **SEGMENT:**

## 4 - ESCALANTE CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

**ORVs:** Vegetation

Your Name: S. Matt Reed      Telephone: 970.349.7104

Address: PO Box 1066, Crested Butte, CO 81224    E-mail: matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108020

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

BLM needs to coordinate management strategies for this segment with the Colorado Division of Wildlife. In addition, the upper portion of this segment should be merged with Escalante Creek Segment 1 until it hits private interests. We recommend a suitability designation for this segment.

**NAME:**                                   **SEGMENT:**

## 6 - GUNNISON RIVER, SEGMENT 3 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                    ORVs: Vegetation

**Your Name:** S. Matt Reed                    **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224    **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

Because of this segment's outstanding critical habitat and recreational opportunities it should be managed as a recreational Wild and Scenic River, but emphasizing riparian corridor management to protect habitat and stream flows.

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108022

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

BLM needs to coordinate with the Grand Junction Field Office and make sure any management is compatible with that office's Dominguez management plan. We recommend that this segment be designated suitable.

**NAME:**                                    **SEGMENT:**

BLM_0108023

## 7 - MONITOR CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                             *ORVs:* Vegetation

**Your Name:** S. Matt Reed                          **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224    **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

**GENERAL**

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

**LAND OWNERSHIP AND USES**

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108024

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

---

**ADMINISTRATION**

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

---

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

BLM should coordinate with the Forest Service because the upper terminus of this segment is the boundary with the Uncompahgre National Forest. We encourage the BLM to analyze the possibility of extending the segment onto National Forest lands. We recommend that this segment be designated as suitable.

**NAME:**                    **SEGMENT:**

## 8 - POTTER CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                                          **ORVs:** Vegetation

**Your Name:** S. Matt Reed                              **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

---

**ADMINISTRATION**

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

---

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

BLM should coordinate with the Forest Service because the upper terminus of this segment is the boundary with the Uncompahgre National Forest. We recommend that this segment be designated as suitable.

**NAME:**                                        **SEGMENT:**

## 9 - ROSE CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recidential**     *Recreational*                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed _____     **Telephone:** 970.349.7104 _____

**Address:** PO Box 1066, Crested Butte, CO 81224     **E-mail:** matt@hccaonline.org ____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108028

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

Because there is a carve-out for 100 acre feet for wells, BLM must acknowledge this with a management strategy that incorporates the future diminution of flows for this segment. We recommend that this segment be designated as suitable.

NAME:                                         SEGMENT:

### 10 - ROUBIDEAU CREEK, SEGMENT I WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                    *ORVs:* **Vegetation**

**Your Name:** S. Matt Reed                         **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224     **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

**GENERAL**

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

**LAND OWNERSHIP AND USES**

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108030

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

8. **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

9. **Issues that might make administering this segment difficult.**

10. **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

BLM should coordinate with the Forest Service and consider extending the southern reaches of this segment into the adjacent Forest Service lands. We recommend that this segment be designated suitable.

**NAME:**                                                       **SEGMENT:**

BLM_0108031

## 12 - DEEP CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                    *ORVs:* Vegetation

**Your Name:** S. Matt Reed                          **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224    **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108032

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**
BLM must coordinate with the Forest Service and Colorado Division of Wildlife to protect the Greenback cutthroat trout and their habitat.

**NAME:**                                    **SEGMENT:**

BLM_0108033

## 13 - WEST FORK TERROR CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                           *ORVs:* Vegetation

Your Name:  S. Matt Reed _____  Telephone:  970.349.7104 _____

Address:  PO Box 1066, Crested Butte, CO 81224 _  E-mail:  matt@hccaonline.org _____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108034

6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.

## ADMINISTRATION

7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9. Issues that might make administering this segment difficult.

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

We do not recommend suitability for this segment. However, because of the presence of Greenback cutthroat trout, there must be strong management prescriptions that protect the fish and their riparian habitat.

NAME:                                      SEGMENT:

## 14 - BEAVER CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational          **ORVs:** Vegetation

**Your Name:** S. Matt Reed                   **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

BLM should coordinate with the Forest Service because of the shared boundary. We recommend that this segment be designated suitable. BLM should consider extending the segment into the Forest Service lands rather than making the terminus an arbitrary administrative boundary. We also recommend downgrading the designation from scenic to recreational because of trail crossings, roads, power lines and other obtrusive man-made structures that run across and adjacent to the segment.

**NAME:**                                         **SEGMENT:**

BLM_0108037

## 15 - DRY CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

*ORVs:* Vegetation

**Your Name:** S. Matt Reed

**Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108038

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

---

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

8. **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

9. **Issues that might make administering this segment difficult.**

10. **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

We recommend that this segment be designated suitable. BLM should consider extending the upper extent of the segment beyond the administrative boundary of the the Uncompahgre Field Office.

NAME:                                    SEGMENT:

## 16 - NATURITA CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                          *ORVs:* Vegetation

**Your Name:** S. Matt Reed                              **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108040

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

8. **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

9. **Issues that might make administering this segment difficult.**

10. **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

BLM needs to coordinate with the Forest Service for prescriptions to protect wildlife habitat. In addition, the upper segment of the river needs to be managed in coordination with the Forest Service. Consideration needs to be given to extending the segment into the adjacent Forest Service lands.

**NAME:**                              **SEGMENT:**

BLM_0108041

## 17 - SALTADO CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                    *ORVs:* Vegetation

**Your Name:** S. Matt Reed _____ **Telephone:** 970.349.7104 _____

**Address:** PO Box 1066, Crested Butte, CO 81224 __ **E-mail:** matt@hccaonline.org _____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108042

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

**ADMINISTRATION**

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

We recommend that this segment be designated as suitable.

**NAME:**                                          **SEGMENT:**

## 18 - SAN MIGUEL RIVER, SEGMENT 1 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

*ORVs:* Vegetation

**Your Name:** S. Matt Reed    **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224    **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108044

6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.

## ADMINISTRATION

7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9. Issues that might make administering this segment difficult.

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

Management of this segment could be difficult because of the diverse private landowner interests surrounding the river. However, we recommend suitability because of the number and quality of ORVs.

NAME:                                    SEGMENT:

BLM_0108045

## 19 - SAN MIGUEL RIVER, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

*ORVs:* Vegetation

**Your Name:** S. Matt Reed     **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224     **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108046

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

8. **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

9. **Issues that might make administering this segment difficult.**

10. **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

Because the segment of the San Miguel River extends partly into National Forest lands, BLM needs to coordinate with the Forest Service and make that section of the river eligible for inclusion. We recommend that this entire segment be designated suitable.

NAME:                                    SEGMENT:

BLM_0108047

## 20 - SAN MIGUEL RIVER, SEGMENT 3 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

*ORVs:* Vegetation

Your Name: S. Matt Reed

Telephone: 970.349.7104

Address: PO Box 1066, Crested Butte, CO 81224   E-mail: matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.

2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.

3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.

### LAND OWNERSHIP AND USES

4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.

5. Compatibility or incompatibility of designation with current land and water uses and development.

BLM_0108048

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

8. **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

9. **Issues that might make administering this segment difficult.**

10. **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

We ask that the BLM analyze this segment again and readjust its boundaries, because the upper waters are mainly private, and this would avoid lengthy private/public disputes. We recommend that this segment be designated as suitable.

NAME:                                    SEGMENT:

## 22 - SAN MIGUEL RIVER, SEGMENT 6 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                          *ORVs:* Vegetation

Your Name:  S. Matt Reed _____   Telephone:  970.349.7104 _____

Address: PO Box 1066, Crested Butte, CO 81224   E-mail:  matt@hccaonline.org _____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108050

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

Rather than a Wild and Scenic designation, we recommend strong prescriptive management to protect the endangered fish species and their habitats, as well as the hanging flume. The BLM also needs to coordinate with the Colorado Water Conservation Board to protect native fish and to continue to protect flows.

**NAME:**                                   **SEGMENT:**

## 23 - TABEGUACHE CREEK, SEGMENT I WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                    *ORVs:* Vegetation

**Your Name:** S. Matt Reed                          **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108052

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY
BLM should coordinate with the Forest Service to determine if the possible Wild and Scenic designation should be extended into the adjacent National Forest. We recommend that this segment be designated suitable.

**NAME:**                                    **SEGMENT:**

BLM_0108053

**24 - TABEGUACHE CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS**

*Preliminary Classification:* **Recreational**                                                    ***ORVs:* Vegetation**

**Your Name:** S. Matt Reed                          **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

**GENERAL**

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

**LAND OWNERSHIP AND USES**

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

8. **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

9. **Issues that might make administering this segment difficult.**

10. **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

We do not advocate for suitability for this segment, but do insist that any management plan contain strong prescriptions to protect the archaeological and cultural resources in the immediate area.

NAME:                                              SEGMENT:

## 25 - LOWER DOLORES RIVER WSR SUITABILITY COMMENTS

**Preliminary Classification:** Recreational

**ORVs:** Vegetation

**Your Name:** S. Matt Reed                    **Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224   **E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

**6.** Reasonably foreseeable potential land and water development and uses that could be affected by designation.

## ADMINISTRATION

**7.** Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

**8.** Consistency of designation with other BLM plans, programs, and policies and regional objectives.

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9.** Issues that might make administering this segment difficult.

**10.** Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

BLM needs to coordinate with the Grand Junction Field Office because the lower terminus is the boundary between the two field offices. We ask that the agency consider a strict permit system for river recreation to prevent over-use, especially during Spring high-water. In addition, consider finding suitability only for the southern portion of the segment, as the north segment is a patchwork of private lands.

**NAME:**                                      **SEGMENT:**

## 27 - DOLORES RIVER, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                      *ORVs:* Vegetation

Your Name: S. Matt Reed                          Telephone: 970.349.7104
Address: PO Box 1066, Crested Butte, CO 81224    E-mail: matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.

## ADMINISTRATION

7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9. Issues that might make administering this segment difficult.

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

BLM should continue its dialogue with stakeholders concerning management of the river. BLM's responsibility for this segment should be mainly to protect riparian habitat. Because of past mining in and around this area, BLM should focus on restoring and protecting water quality for this segment.

NAME:                                               SEGMENT:

## 31 - LA SAL CREEK, SEGMENT 3 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational        *ORVs:* Vegetation

Your Name: S. Matt Reed      Telephone: 970.349.7104

Address: PO Box 1066, Crested Butte, CO 81224    E-mail: matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

We strongly support suitability for this segment because its numerous, important ORVs. It is essential that future management prescriptions protect the exemplary populations of flannelmouth suckers, bluehead suckers and roundtail chubs.

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.

## ADMINISTRATION

7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9. Issues that might make administering this segment difficult.

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                        SEGMENT:

BLM_0108061

## 35 - BIG DOMINGUEZ CREEK, SEGMENT I WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

*ORVs:* Vegetation

Your Name: S. Matt Reed

Telephone: 970.349.7104

Address: PO Box 1066, Crested Butte, CO 81224

E-mail: matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.

2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.

3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.

### LAND OWNERSHIP AND USES

4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.

5. Compatibility or incompatibility of designation with current land and water uses and development.

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

The Colorado Water Conservation Board is filing for all of the unappropriated flows in the creek, minus a de minimus "carve out" for upstream wells on inholdings. We recommend that this segment be designated as suitable, but request that the agency manage segments 1 and 2 as one segment rather than as two.

**NAME:**                                            **SEGMENT:**

BLM_0108063

## 36 - BIG DOMINGUEZ CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

**Preliminary Classification:** Recreational                                    **ORVs:** Vegetation

Your Name: S. Matt Reed                                     Telephone: 970.349.7104

Address: PO Box 1066, Crested Butte, CO 81224     E-mail: matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108064

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

The Colorado Water Conservation Board is filing for all of the unappropriated flows in the creek, minus a de minimus "carve out" for upstream wells on inholdings. We recommend that this segment be designated as suitable, but request that the agency manage segments 1 and 2 as one segment rather than as two.

**NAME:**                                         **SEGMENT:**

BLM_0108065

**37 - LITTLE DOMINGUEZ CREEK, SEGMENT 1 WSR SUITABILITY COMMENTS**

*Preliminary Classification:* Recreational                                          ORVs: Vegetation

Your Name: S. Matt Reed                                   Telephone: 970.349.7104

Address: PO Box 1066, Crested Butte, CO 81224        E-mail: matt@hccaonline.org

Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.

**GENERAL**

1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.

2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.

3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.

**LAND OWNERSHIP AND USES**

4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.

5. Compatibility or incompatibility of designation with current land and water uses and development.

BLM_0108066

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

The Colorado Water Conservation Board is filing for all of the unappropriated flows in the creek, minus a de minimus "carve out" for upstream wells on inholdings. We recommend that this segment be designated as suitable, but request that the agency manage segments 1 and 2 as one segment rather than as two.

**NAME:**                                    **SEGMENT:**

BLM_0108067

### 38 - LITTLE DOMINGUEZ CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

*ORVs:* Vegetation

Your Name: S. Matt Reed

Telephone: 970.349.7104

Address: PO Box 1066, Crested Butte, CO 81224

E-mail: matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

## GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

## LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
We encourage BLM coordination with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

The Colorado Water Conservation Board is filing for all of the unappropriated flows in the creek, minus a de minimus "carve out" for upstream wells on inholdings. We recommend that this segment be designated as suitable, but request that the agency manage segments 1 and 2 as one segment rather than as two.

**NAME:**                                        **SEGMENT:**

## 39 - GUNNISON RIVER, SEGMENT 1 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

**ORVs:** Vegetation

**Your Name:** S. Matt Reed

**Telephone:** 970.349.7104

**Address:** PO Box 1066, Crested Butte, CO 81224

**E-mail:** matt@hccaonline.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

BLM_0108070

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

BLM must coordinate with the Bureau of Reclamation to provide the flows needed to protect and recover the endangered fish found in this segment.

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

We encourage BLM coordination with other agencies, including the Bureau of Reclamation and FWS, to ensure protection of the extended riparian ecosystem. A guideline for inter-agency coordination is presented in the "Unified Federal Policy for a Watershed Approach to Federal Land and Resource Management". Effective since October 2000, this policy is intended to provide a framework to enhance watershed management for the protection and health of ecosystems on Federal lands.

**9.  Issues that might make administering this segment difficult.**

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

Because of the railroad track running along this segment we ask that the agency consider a classification of recreational. We support a suitability finding for this segment.

**NAME:**                                    **SEGMENT:**

**Kate Wynant**

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **Sent:** | Wednesday, August 11, 2010 10:28 AM |
| **To:** | sbear@dmea.com; Steve.weist@oxbow.com; John@reams-construction.com; billday@paonia.com; rich@richdurnanphoto.com; Robbie.levalley@colostate.edu; Wblack8709@msn.com; pmueller@tnc.org; silvers1@tds.net; tkctew@yahoo.com; Barbara_Sharrow@blm.gov; dave_kauffman@blm.gov; Deborah_Magee@blm.gov; Bruce_Krickbaum@co.blm.gov; Angie Adams; Kate Wynant; bbott68@gmail.com; UFO AR |
| **Subject:** | Final Minutes: RMP RAC Subgroup Meeting #3 |
| **Attachments:** | FinalMinutes_UFO-SG_2010-07-23.pdf |

Hello RAC Subgroup,

I have attached the minutes (finalized) of the last RAC Subgroup meeting.

As a reminder, our next meeting will be August 20 (9:00 - noon) at the Holiday Inn Express Jordan Room A.
Please let me know if you will not be there.

Have a great day, Bruce

<><><><><><><><><><><><><><><><><><><>
Bruce Krickbaum
Planner, Environmental Coordinator
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
970.240.5384


 (See attached file: FinalMinutes_UFO-SG_2010-07-23.pdf)

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.

BLM_0108072



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Uncompahgre Field Office
2465 S. Townsend Avenue
Montrose, CO  81401



# RESOURCE ADVISORY COUNCIL SUBGROUP MEETING #3
## Friday, July 23, 2010 (9:00 AM – 12:00 PM)

### Meeting Location:
### Holiday Inn Express (Jordan Room)
### 1391 South Townsend Avenue, Montrose, CO

# Meeting Minutes

**Attendees:** Angie Adams (EMPSi), Shelby Bear, Robbie Baird-LeValley, Bill Day, Richard Durnan, William Ela, Glade Hadden (BLM Uncompahgre Field Office), Bruce Krickbaum (BLM Uncompahgre Field Office), Jeff Litteral (BLM Uncompahgre Field Office), John Reams, Charlie Sharp (BLM Uncompahgre Field Office), Barb Sharrow (BLM Uncompahgre Field Office), Steven Weist, Kathy Welt, Kate Wynant (EMPSi)

**Handouts:** Agenda, Highlights of the Resource Management Planning Process to Date, RMP Planning Area Fact Sheet 3.4 (Cultural and Paleontological Resources), Archaeology PowerPoint slides, RMP Planning Area Fact Sheet 5.1 (Managing Special Status Plant & Wildlife Species), Threatened, Endangered, and Sensitive Species of the Uncompahgre Field Office PowerPoint slides, RMP Planning Area Fact Sheet 4.2, Wild and Scenic Rivers, Wild and Scenic Rivers PowerPoint slides, Potential Impacts of Wild and Scenic River Suitability Determination or Designation by Congress on Existing and Potential Uses Within River Corridors, Letter to Interested Parties Soliciting Comments on Suitability Criteria for Eligible Segments, Appendix C (Program/Resource-specific Decision Guidance) of BLM Handbook H-1601-1 (Land Use Planning), Uncompahgre RMP Internal Working Draft Goals, Example of Resource Management Plan Alternative Themes, Draft Uncompahgre RMP Action Alternatives Themes

1. **Welcome** (Angie Adams)

2. **Introductions** (All present)

3. **Planning Process to Date** (Angie Adams)
   - Handout: Highlights of the Resource Management Planning Process to Date.
   - The Draft Areas of Critical Environmental Concern evaluation report is on BLM Web site (www.uformp.com). We're accepting comments on the report through August 20. The report is an evaluation of all the special areas that the public nominated or BLM knows about that has a special value (cultural, biological scenic, etc) that warrants protection. The report evaluates whether the areas meet certain criteria. The summary is that there are a handful of areas that do meet the criteria and those areas have to be considered in at least one alternative of the RMP. It doesn't make any decisions, just tells us what met the criteria. It doesn't mean that they'll be designated or not.

---

BLM_0108073

- The Final Wild and Scenic River (WSR) Eligibility report is available on the RMP Web site (www.uformp.com). Also on the Web is a solicitation for feedback on the suitability criteria, which is the next phase.
- This week we met with the BLM Interdisciplinary Team to talk about alternatives.

## 4. Resource/Resource Use Discussions

- Cultural and Paleontological Resources (Glade Hadden)
  - o Refer to handouts: RMP Planning Area Fact Sheet 3.4 (Cultural and Paleontological Resources) and Archaeology PowerPoint slides.
  - o BLM land in the UFO has over 8,000 archaeological sites.
  - o Paradox Valley Rock Art site will likely be evaluated as an Area of Critical Environmental Concern or a National Register Historic District.
- Special Status Species (Charlie Sharp)
  - o Refer to handouts: RMP Planning Area Fact Sheet 5.1 (Managing Special Status Plant & Wildlife Species) and Threatened, Endangered, and Sensitive Species of the UFO PowerPoint slides.
  - o There are about 400 threatened, endangered, candidate, and proposed species.
  - o *Question*: Is this US Fish and Wildlife Service looking at these? *Answer*: Yes, the US Fish and Wildlife Service is the agency in charge of categorizing the species and planning for their recovery.
  - o *Question*: Can you end up with a "no affect" by mitigation? *Answer*: Yes, or we might have adverse impacts and can mitigate them to "not likely to adversely affect." That might be the most important thing and a lot of project proponents are informed enough to know how to mitigate or locate projects to avoid adverse impacts to sensitive species.
  - o *Question*: Where do you find black-footed ferret? *Answer*: There are none in this area but there is potential habitat and fossil evidence that they were here and you find that mostly South of Paonia and Hotchkiss. You find black-footed ferret mostly in places you find prairie dogs, but in this area we don't have dense enough populations of prairie dogs to support the black-footed ferrets. There is a population in Craig but populations are stronger in Utah.
  - o *Question*: Has there been any discussion about the cessation of tamarisk removal because of the threat to southwestern willow flycatcher? *Answer*: The background is that we've been removing tamarisk (weed) from riparian areas. Flycatchers rely on mostly willow riparian habitat, which have been overtaken by tamarisk. Entities are looking at putting a halt on removing tamarisk not to threaten the flycatcher.
    - ▪ *Comment*: I think most of the concern is south in St. George where there is tamarisk and nothing else. Flycatchers nest a few miles where they are hatched so if they come back and there is only tamarisk, then they'll nest there. Here in the Uncompahgre Field Office we don't have that problem so tamarisk removal is probably not an issue for the flycatcher here.
    - ▪ *Question*: Do flycatchers eat beetles? *Answer*: Maybe but they're not going to impact the number of beetles. The beetles are a Chinese species from the same area as the tamarisk that only feed on tamarisk. They've been brought here to try to control the tamarisk since there is so much of it.
    - ▪ Overall, studies suggest that the flycatchers in the area are not the southwestern willow flycatcher in this area.
    - ▪ *Question*: Where does that come from? I've tried to get them to analyze the DNA of the flycatchers but they won't do it. It's nearly impossible to tell the difference between a southwestern willow flycatcher and other subspecies. *Answer*: I don't think they know for sure. They've done some DNA testing and determined that it's the regular flycatcher in the area, but I have not seen the data, only read the outcomes. The US Fish and

Wildlife Service is on the fence about whether this species needs to be on the list for this area. It's on the list as a way for us to keep an eye on it. If we need to start consulting with US Fish and Wildlife Service for removal of tamarisk, impacts to the southwestern willow flycatcher could be a hurdle.

- *Answer*: If we remove tamarisk are we going to have knapweed instead? *Answer*: There are other things that can grow there. When we treat tamarisk we treat all invasive species, not just the tamarisk.

- Wild and Scenic River Studies (Jeff Litteral)
  o Refer to handouts: RMP Planning Area Fact Sheet 4.2, Wild and Scenic Rivers, Wild and Scenic Rivers PowerPoint slides, Potential Impacts of Wild and Scenic River Suitability Determination or Designation by Congress on Existing and Potential Uses Within River Corridors, Letter to Interested Parties Soliciting Comments on Suitability Criteria for Eligible Segments.
  o Information related to suitability criteria is due on Friday, August 16.
  o *Question*: Regarding Deep Creek and West Fork Terror Creek, you're going to portion out a small segment and manage for the small segment? *Answer*: They met the eligibility criteria. Now we'll move forward and see if it meets the suitability criteria.
    - *Question*: I mean how will you manage such a small segment? It seems like a large effort for a small area. *Answer*: That is one of the suitability criteria that will be considered and any segment could drop out of suitability because of manageability.
  o In the alternatives for the RMP, we have to consider all of the eligible segments as suitable in one alternative, all of the eligible segments as not suitable in another alternative, and then something in between. The in-between alternative(s) will be based on the suitability criteria and input from the public, stakeholder groups, Cooperating Agencies, and the RAC Subgroup.
  o The first meeting for the Gunnison River Basin stakeholder group will be sometime towards the end of August or beginning of September.
  o Regarding water rights, there are already some instream flows in segments that are designated and they are sufficient to protect the outstandingly remarkable value(s), we would not go for additional water rights.
  o Regarding the comment form, folks can fill out information only for segments that they're interested in and only for criteria that they have information for. You don't have to fill out every criterion for every segment. The only requirement is that you fill out your name and contact information so that we can contact folks if we have follow-up questions.
  o *Question*: We can make comments just like anyone else? *Answer*: Yes.
  o The comment period for this is going to end before the stakeholder groups start so the group leads will have all of the comments before the meetings start.
  o The due date for input from the stakeholder groups is the beginning of December.
  o Because other field offices are further along in the process, the public is very sensitive to the issue.
  o *Question*: How do you determine the stakeholders? *Answer*: The stakeholders determine themselves. We'll advertise via the mailing list, folks who commented during scoping for the RMP on WSR issues, notices, etc.
  o *Question*: Where will the stakeholder meetings be? *Answer*: We have not had a chance to figure it all out, but Barb is thinking a minimum of three meetings: Placerville area, Norwood, and Naturita. That is still up for discussion, though.
  o We received comments on eligibility that were more related to suitability and we will carry those over and apply them to suitability. The information on comments received on eligibility is in Appendix D of the final eligibility report.

BLM_0108075

o The final report also contains a summary of changes from the draft report to the final report.

o *Question*: As far as designated segments, what are the impacts to private landowners adjacent to segments? *Answer*: The BLM cannot tell the landowner what to do but the BLM would try to work with the landowner to encourage stewardship. More information is in the handout *Potential Impacts of Wild and Scenic River Suitability Determination or Designation by Congress on Existing and Potential Uses Within River Corridors*.

o *Question*: From my perspective for utilities, if there is a future need to cross a river, what are the restrictions? *Answer*: It would be based on the outstandingly remarkable value(s) (ORVs) and classification of the segment. If there are impacts to the ORV or classification, it might not be permitted. But if there are no impacts, there wouldn't be a reason from a WSR perspective that the action could not be permitted.

o *Question*: If a segment is designated, does it affect private property? *Answer*: Most designated rivers go through private property, but federal agencies do not have the authority to dictate actions on private lands. The intent of the WSR Act is to keep the most special rivers as free-flowing rivers. Unlike Wilderness, there can be quite a bit of leeway in WSR segments. Wild segments you can't do as much, scenic and recreational classifications you can have more development along the river corridor. For example if the ORV is fish and someone wanted to build a campground, we would evaluate whether building a campground would harm the fish. The answer could be that it doesn't harm the fish and we could go ahead and build the campground if it is also consistent with the classification. This also applies to a project proposed by entities outside of the BLM.

o All existing rights, including existing water rights and existing dams, would continue to exist and be senior to any appropriated rights resulting from designation.

o *Question*: Why designate on private land? *Answer*: Rivers don't stop at the boundary. BLM cannot dictate what goes on on private land, even within the 0.25-mile river corridor. In a power line right-of-way situation, the power line could cross private land and the BLM could not stop it. Only at the point where the power line crosses back onto BLM, then the BLM would have to look at the proposal and see if it meets the classification and would not inhibit the ORVs.

o *Comment*: The public is going to want things black-and-white and know the specific answers to specific questions. *Response*: Maybe what we (BLM) needs to do is put together a more black-and-white list of answers.

o *Comment*: In Moab we were told that we could not build a diversion structure for livestock because of the WSR classification. *Response*: It could have been because of the ORVs or classification.

o *Question*: Does the US Army Corps of Engineers have any authority? *Answer*: They have their own set of regulations. They have a regulatory role.

o An important to remember that there are a lot of things that go into suitability, including manageability.

o *Action*: RAC Subgroup members should send questions to Bruce so that we can start compiling answers to these questions for the public.

o *Comment*: In Grand Junction, there was a different opinion on what would happen for water rights from BLM and the Colorado River District. This needs to be ironed out.

o What is classified as wild now could go to scenic in the alternatives based on suitability criteria and desired future condition of that alternative.

o An appendix to the scoping report also has the actual comments on each resource, including WSRs.

o *Question*: Is much of this water unallocated? *Answer*: We are going to find out for suitability. We have people researching water rights.

BLM_0108076

- ▪ *Comment*: All of the streams are over appropriated.
- ▪ *Comment*: That was my question. Will this make any difference with a junior water right if all of the rivers are over appropriated anyway?

## 5. Internal Draft Chapters 1 (Introduction) and 3 (Affected Environment)

- Internal Draft Chapters 1 and 3 were finished last week and they're ready for review by the BLM Interdisciplinary Team, Cooperating Agencies, and the RAC Subgroup. Chapter 1 is the introduction, a general why the BLM is doing the plan revision. Chapter 3 is the Affected Environment, or existing conditions. It's the baseline of what's on the ground right now for each resource. Neither of these chapters makes any decisions. You are welcome to review. This isn't a perfect document; you'll see highlights and questions for the BLM to review.
- *Action*: We will send you an email on Monday with the site to access the document for you to download and review. Use the comment form (attached in e-mail on Monday) to comment. We are looking for other baseline data, studies, assessments that we might have missed in our baseline. If you're a specialist in a particular topic, you might want to focus your review on that topic. The minerals piece of draft Chapter 3 is blank because the BLM is still working on the Reasonably Foreseeable Development Scenario for energy and minerals so we didn't want to duplicate effort.
- To prioritize your input for various topics, this is number three on the list after WSR suitability and the alternatives information discussed below. Comments are due on August 20.

## 6. Alternatives Development

- Handout: Appendix C of the BLM Land Use Planning Handbook. This is the how-to manual that tells us what decisions that we have to include in the RMP revision. There are two types of decisions, land use planning decisions and implementation-level decisions. The RMP will focus on the land use plan-level decisions and not implementation-level decisions. These can also be thought of as allocations, areas open and closed to leasing, open and closed to grazing, right-of-way exclusion or avoidance areas, areas of critical environmental concern, etc.
- Handout: Uncompahgre RMP Internal Working Draft Goals. These are what the BLM Interdisciplinary Team has come up with to date. Goals are desired future conditions and apply to all alternatives. Please review and provide feedback to Kate Wynant via e-mail by Friday, August 13.
- Handout: Example of Resource Management Plan Alternative Themes. These are themes from other RMPs. We wanted to show you them so you can compare to what the BLM is thinking for the Uncompahgre RMP. Most of the other RMPs around here have looked at an alternative with an emphasis on conservation, an alternative with an emphasis on resource use or development, and an alternative that is a combination of the two. The No Action (Current Management) alternative falls somewhere between the conservation and development alternatives range.
- Handout: Draft Uncompahgre RMP Action Alternatives Themes. The BLM Interdisciplinary Team worked this week on the themes for their alternatives so they can write objectives and actions to fit the themes. The objectives and actions must be a reasonable range of alternatives. We are no where near choosing a preferred alternative, we're thinking about the range. In this case we've come up with four alternatives with preservation and development in high- and low-intensity degrees. The BLM Interdisciplinary Team is still not sure if this is the way to go or if there is another way to look at the alternatives, such as the conservation, development, and something in the middle.
- For example, the Grand Mesa, Uncompahgre, and Gunnison National Forests had a lot of alternatives which means a lot of work for the staff and the public. Do we need a lot of alternatives or can we do fewer and still get to the same place?

BLM_0108077

- *Question*: Where does current management fall right now? *Answer*: It's different for each resource program, really.
- *Question*: Doesn't that need to be brought into it, especially when you have to think about budget constraints? *Answer*: That is a good point, but the National Environmental Policy Act tells us that we have to look at a reasonable range, which doesn't include finances. We can't exclude something from reasonableness just because the BLM can't afford it.
  - *Comment*: But you can consider that when National Environmental Policy Act documents are being litigated because a preferred alternative isn't reasonable in terms of it could never happen because of funding. *Response*: Sure, but instead of the BLM excluding alternatives based on what can and cannot happen we are considering a reasonable range of alternatives that could be implementable. Once we get to the preferred alternative, we can think about budget constraints. The RMP is potentially one way to get money, although just because it's in the plan doesn't mean the field office will get money, but it provides justification for budget requests.
- Our staff is struggling where some resources don't have a lot of decision space because of laws and regulations (for example, special status species, cultural resources, and minerals), but others do (for example, recreation and vegetation). The specialists with room are wanting four alternatives because they can come up with four alternatives. Other specialists don't want four alternatives because they can't come up with four distinct reasonable alternatives. All alternatives must follow the law. It is our prediction right now that none of the four alternatives themes will be the preferred alternative itself. The preferred will probably a blend of each of the four alternatives.
- *Action*: Send Kate an e-mail with your feedback on the themes by Friday, August 13. Do you think we can analyze three action alternatives, plus the preferred, or do we need more action alternatives, plus the preferred? What is the reasonable range?
- *Question*: Is part of this a question of how many alternatives the public will get? The public doesn't like it when they see three choices and they know which one is going to get chosen already. If it has to be that way, the BLM should emphasize that it could be a blend of any of the alternatives. *Response*: That is what we tried to avoid. We wanted to see a range of alternatives and then pick the preferred. That said, the BLM must, in the Draft RMP, identify their preferred alternative. So by the time all of the public sees the alternatives, the BLM will have to stamp one of the alternatives as their preferred. However, that preferred will probably be a blend of the four alternatives instead of two poles and one in the middle. Hopefully we'll be able to relay to the public how we arrived at that by looking at a range first, and then deciding, instead of being pre-decisional.
- *Action*: We will provide an acronyms list and an abbreviated glossary. Documents for the public will be low on acronyms.

## 7. Other Items Not on the Agenda
- None.

## 8. Public Comments / Questions
- No public present.

## 9. Action Items / Next Meeting
- All meetings are at 9:00am at the Holiday Inn Express (1391 South Townsend Avenue), Jordan Room:
  - Friday, August 20, 2010: Recreation, Soils, and Land Health Assessments
  - Friday, October 1, 2010: Visual Resources, Lands and Realty, Minerals

☐ *Action* (RAC Subgroup): Review draft ACECs report and provide comments as appropriate by August 20.

☐ *Action* (RAC Subgroup): Provide BLM information pertaining to the WSR suitability criteria by August 16.

☐ *Action* (Bruce Krickbaum): E-mail group the location of Chapters 1 and 3 files on file transfer protocol site, an electronic comment form, and some instructions.

☐ *Action* (RAC Subgroup): Review internal draft Chapters 1 and 3 and provide comments to Kate Wynant by Friday, August 20.

☐ *Action* (RAC Subgroup): Review the draft goals and e-mail feedback to Kate Wynant by Friday, August 13.

☐ *Action* (RAC Subgroup): Review the draft alternatives themes and e-mail feedback to Kate Wynant by Friday, August 13.

☐ *Action* (BLM): Provide an acronyms list and an abbreviated glossary.

**Kate Wynant**

| | |
|---|---|
| **From:** | bruce_krickbaum@blm.gov |
| **Sent:** | Wednesday, August 11, 2010 10:24 AM |
| **To:** | Barbara_Sharrow@blm.gov; dave_kauffman@blm.gov; Deborah_Magee@blm.gov; Angie Adams; Kate Wynant; bbott68@gmail.com; Aschroeder@usbr.gov; kjensen@ci.montrose.co.us; renzo.delpiccolo@state.co.us; shansen@deltacounty.com; MPelletier@gunnisoncounty.org; swhite@montrosecounty.net; lpadgett@ouraycountyco.gov; lynn@mtngeogeek.com; joanm@sanmiguelcounty.org; pat@cedaredgecolorado.com; MSe1047096@aol.com; gsparks@mtnvillage.org; mjreagan@fone.net; norwoodparker@centurytel.net; sharold@ci.olathe.co.us; davidvarley@kaycee.net; townofpaonia@tds.net; jcoates@town.ridgway.co.us; Dan_Reinkensmeyer@fws.gov; tkrandallparker@fs.fed.us; lbroyles@fs.fed.us; segfahlt@gmail.com; Bruce_Krickbaum@co.blm.gov; UFO AR |
| **Subject:** | Final Notes: Uncompahgre RMP Cooperating Agency Meeting #3 |
| **Attachments:** | FinalNotes_UFO-CA_2010-07-22.pdf |

Hello Cooperating Agencies,

I have attached the minutes (finalized) of the last Cooperating Agency meeting.

As a reminder, our next meeting will be August 19 (1:00 - 4:00) at the Holiday Inn Express Jordan Room A.

Have a great day, Bruce

<><><><><><><><><><><><><><><><><><><><>
Bruce Krickbaum
Planner, Environmental Coordinator
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
970.240.5384

 (See attached file: FinalNotes_UFO-CA_2010-07-22.pdf)


PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.

BLM_0108080



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Uncompahgre Field Office
2465 S. Townsend Avenue
Montrose, CO 81401



# COOPERATING AGENCY MEETING #3

## Thursday, July 22, 2010 (1:00 – 4:00 PM)

## Meeting Location:
### Holiday Inn Express (Jordan Room)
### 1391 South Townsend Avenue, Montrose, CO

# Meeting Notes

**Attendees:** Angie Adams (EMPSi), Jen Coates (Town of Ridgway), Renzo DelPiccolo (Colorado Department of Natural Resources, Southwest Region), Collin Ewing (US Fish and Wildlife Service), Patti Grafmyer (Town of Norwood), Glade Hadden (BLM Uncompahgre Field Office), Susan Hansen (Delta County BOCC), Scott Harold (Town of Olathe), Kerwin Jensen (City of Montrose), Bruce Krickbaum (BLM Uncompahgre Field Office), Jeff Litteral (BLM Uncompahgre Field Office), William Long (Town of Nucla), Joan May (San Miguel County BOCC), Patricia Means (Town of Cedaredge), Lynn Padgett (Ouray County BOCC), Mike Pelletier (Gunnison County), Barbara Peterson (Town of Paonia), Joe Reagan (Town of Norwood), Dan Reinkensmeyer (US Fish and Wildlife Service), Alan Schroeder (Bureau of Reclamation, Western Colorado Area Office), Charlie Sharp (BLM Uncompahgre Field Office), Barb Sharrow (BLM Uncompahgre Field Office), Roy Smith (via conference call) (BLM Colorado State Office), David Varley (Town of Orchard City), Steve White (Montrose County BOCC), Kate Wynant (EMPSi)

**Handouts:** Agenda, Highlights of the Resource Management Planning Process to Date, RMP Planning Area Fact Sheet 3.4 (Cultural and Paleontological Resources), Archaeology PowerPoint slides, RMP Planning Area Fact Sheet 5.1 (Managing Special Status Plant & Wildlife Species), Threatened, Endangered, and Sensitive Species of the UFO PowerPoint slides, RMP Planning Area Fact Sheet 4.2, Wild and Scenic Rivers, Wild and Scenic Rivers PowerPoint slides, Potential Impacts of Wild and Scenic River Suitability Determination or Designation by Congress on Existing and Potential Uses Within River Corridors, Letter to Interested Parties Soliciting Comments on Suitability Criteria for Eligible Segments, Appendix C (Program/Resource-specific Decision Guidance) of BLM Handbook H-1601-1 (Land Use Planning), Uncompahgre RMP Internal Working Draft Goals, Example of Resource Management Plan Alternative Themes, Draft Uncompahgre RMP Action Alternatives Themes

1. **Welcome** (Angie Adams)

2. **Introductions** (All present)

3. **Planning Process to Date** (Angie Adams)
   - Handout: Highlights of the Resource Management Planning Process to Date

BLM_0108081

- The draft Areas of Critical Environmental Concern (ACEC) Report is available online. The deadline to submit comments on the draft report is August 20.
- The final Wild and Scenic River (WSR) Eligibility Report is available online.
- The BLM is soliciting comments on the *suitability* criteria for eligible segments. The deadline to submit information related to suitability is August 16.

## 4. Resource/Resource Use Discussions

- Special Status Species (Charlie Sharp)
  - Refer to handouts: RMP Planning Area Fact Sheet 5.1 (Managing Special Status Plant & Wildlife Species) and Threatened, Endangered, and Sensitive Species of the UFO PowerPoint slides.
  - The BLM looks to the US Fish and Wildlife Service for guidance on how to protect threatened and endangered species.
  - Some of the species are not known to occur in the Uncompahgre Field Office; they occur in adjacent areas, but there might be potential for them to occur in the Uncompahgre Field Office.
  - Decisions in the RMP must meet the laws and guidance.
- Cultural and Paleontological Resources (Glade Hadden)
  - Refer to handouts: RMP Planning Area Fact Sheet 3.4 (Cultural and Paleontological Resources) and Archaeology PowerPoint slides.
  - BLM land in the UFO has over 8,000 archaeological sites.
  - Paradox Valley Rock Art site will likely be evaluated as an ACEC or a National Register Historic District.
  - *Question:* How do we keep digging down [in the earth] for different time frames? *Answer:* Because of natural processes, dirt just comes down. In some sites dirt comes down a hill and settles in a certain area. Everything moves; there is no such thing as a stable surface.
  - *Question:* What is site sensitivity and how do you model that? *Answer:* We look at how much survey has been done in a certain area, how many sites are in that area, how many sites are eligible [for listing on the National Register of Historic Places], and that gives you an idea of site density. Then you look at the sensitivity in terms of if they meet certain criteria. Both of these things go into determining the sensitivity model. The site sensitivity model makes sense with instinct.
- Wild and Scenic River Studies (Jeff Litteral)
  - Refer to handouts: RMP Planning Area Fact Sheet 4.2, Wild and Scenic Rivers, Wild and Scenic Rivers PowerPoint slides, Potential Impacts of Wild and Scenic River Suitability Determination or Designation by Congress on Existing and Potential Uses Within River Corridors, Letter to Interested Parties Soliciting Comments on Suitability Criteria for Eligible Segments.
  - The eligibility phase of the process is finished. The BLM is now soliciting comments on the suitability criteria as they relate to the eligible segments. The comment period ends on August 16. We received comments during the eligibility phase that are more related to suitability and they will be carried forward to this phase of the analysis.
  - We are soliciting comments on eligible segments within the Dominguez-Escalante National Conservation Area, including segments studied for eligibility by the Grand Junction Field Office.
  - Stakeholder group meetings will be announced via the project Web site and via e-mail to stakeholders. For the Gunnison River Basin, the first meeting is targeting for August 13 in Delta at the Bill Heddles Recreation Center from 2:00-4:30pm. Meetings for the San Miguel and Dolores Rivers and their tributaries have not yet been determined.

BLM_0108082

- o If the BLM determines any segments are suitable, they must implement interim protective management until Congress either designates or dismisses the recommendation. Suitability doesn't mean designation, only Congress can do that.
- o *Question*: If a segment is deemed suitable but is not designated, it doesn't lose the status of being suitable so there could be management practices imposed to protect those qualities? *Answer*: Yes, through administrative decisions. If Congress designates a river, any portions not included in the designation are dropped from interim protective management.
- o *Question*: So if it's suitable, does that elevate management? *Answer*: We must protect the outstandingly remarkable values (ORVs) for that segment.
- o *Question*: So if two years pass and a segment is not designated, that segment is dropped? *Answer*: No. A suitable segment must be protected, within the BLM's authority, until Congress acts on a recommendation or until the BLM revises the RMP again, at which time the segment is reevaluated. Right now there are 34 eligible segments so we are mandated as of this time to protect those ORVs. When you get to suitability a lot more issues come up and some segments drop off.
- o *Question*: How are the stakeholder groups identified or chosen? *Answer*: We put together a list, coordinated with Chris Treece [of the Colorado River District] and Katie Stevens, the interim manager of the Dominguez-Escalante National Conservation Area, sending letters, and posting on the Web site. Anyone is welcome to be involved in the stakeholder process.
- o *Question*: Are you going to try to get consensus on at the meetings or just whoever shows up? *Answer*: Some questions can be answered better by a stakeholder group and others by Cooperating Agencies because you have that information. Each basin may have different processes because each group will decide what their process is for giving information to the BLM.
- o *Comment*: Some of these suitability questions seem very objective like what other things can the river be used for. It seems like segments that are determined suitable stay suitable or get designated. It's pretty permanent. *Response*: The Dolores Field Office has been talking about legislation and they are a lot further along in the RMP process. They are at the point that in their 1980s RMP they did a WSR evaluation and are going through it for the second time and deciding it's time for action. We are going through this for the first time; it's the first time we've done the inventory.
- o *Roy Smith*: Stakeholder group involvement is a lot of commitment and time. The groups have decided on their own what issues they want to pursue and what issues they want to take on. Groups throughout the state have come to very different places at the end of the process. In the Upper Colorado River Basin, the group focused only on the Colorado River from Kremmling to Glenwood Springs and the group involved several water providers. They focused on flow management issues and what they could do cooperatively to ensure flows to protect the ORVs. They left the land management issues to BLM. In Grand Junction, the stakeholder group went a different way recognizing that they were at the bottom of the streams and didn't control flows so they made recommendations to BLM on ways to promote or enhance the ORVs.
- o *Question*: You had mentioned a meeting for the Gunnison River Basin in August. Is there a set meeting for the other group? *Answer*: No not yet.
  - ▪ *Question*: But we'll be notified of those meetings? *Answer*: Yes.
- o *Question*: Are the water rights holders contacted for each of the specific stakeholder groups? *Answer*: I can't say that that's the case because we don't always know exactly who those are but we will try to advertise so that the water rights holders can be informed and come.
- o *Question*: Has the US Forest Service done something like this? *Answer*: Yes, in the final eligibility report you can see what adjacent BLM field offices and agencies have done and what the results are.

o The comment form, which is available on the web site, can be filled out electronically and submitted via e-mail, printed and mailed, faxed, or hand-delivered. Each segment has its own form in the document. We understand that you might not have comments on each of the criteria so you don't have to fill out everything.

o *Question*: What has been the experience with how the Cache la Poudre River has been accepted or regulated in the area? The experience for property owners or residences in the area? *Answer*: I'm not familiar with the property owners so I can't speak for them. There isn't a lot of BLM in the area. Chris Treece has talked about getting some representatives from that area to come to the stakeholder meetings here. The river was designated in 1986.

o *Question*: You mentioned that we are going to help draft an alternative? Two are already set so that only leaves one more? *Answer*: Yes, you can help by providing input on the suitability criteria so the BLM can fill in an alternative between all suitable and none suitable.

o *Question*: Does someone have to fill out all 80 pages of the suitability criteria comment form or can they just pick a page? *Answer*: No, you can fill out pages for the segments you're interested in and only for the questions that you're interested in. Whatever segments that you do make comments on, please make sure that you tell us who you are so if we have questions we can ask you.

o *Question*: Why weren't WSRs looked at the last time the RMP was done? *Answer*: The reason is the history of analyzing WSRs in the Department of the Interior. When the first plan was done for this field office, the Department of the Interior thought that WSR analysis was the responsibility of the National Park Service that should only be done on larger rivers. In the late 80s, it was determined that no, this is part of land use planning and this must be done during RMP revision.

o *Question*: Why did the Grand Junction Field Office eliminate the lands that had private land adjacent to them? Was that for eligibility or suitability? *Answer*: I can't speak for Grand Junction Field Office but for our field office, we looked at the whole river because the ORVs are on the whole river.

o *Question*: When congress designates a river, is it only the part on public lands? *Answer*: No, congress will usually look at a whole stretch regardless of landownership. In the 80s, a lot of segments were designated in Oregon without having done any preliminary studies. Those went through state lands, federal, private lands. It really varies depending on state. Jeff L: In Kentucky there is a state program called the Wild Rivers Program and there were issues where rivers went through private land and it's manageable. Some people are against it but some people recognize the value of it.

o The web site www.rivers.gov has lots of information and answers questions you might have or your constituents might have.

o One of the things that gets confusing is that there is a misconception that once the BLM determines suitability, a federal water right is created which is not true. Only when Congress designates a river is a federal right appropriated. A lot of the segments already have instream flows appropriated.

o *Question*: Do you have a map of where those water rights are? *Answer*: We will have them in the RMP and will have them at the stakeholder group meetings.

o *Question*: If there is a wild and scenic designation and it comes with a water right, but some already have instream flows, does the federal right compliment or supersede that instream flow? *Answer*: In the past, a designation has always included a water right even if there is already an instream flow for the stream. The federal right may be the same amount or timing as the state right if the state right meets all of the needs. If there is an instance that the flow doesn't provide enough, say for recreation, the right needed would be quantified and the federal right would include enough for the recreation ORV.

- o *Question*: Congress designates a segment and applies for a water right, so the water right is junior to the other rights? *Answer*: Correct.
- o *Question*: So if there is an act of Congress and there is a water right with it, I would think that the Colorado Water Conservation Board would have to grant that right? *Answer*: Yes but we work closely with the Colorado Water Conservation Board so if there are flows already in place that are sufficient, we might just go with the instream flow without asking for any additional appropriations.
- o There is a difference here to between WSR and Wilderness. We have to consider the reason the WSR Act exists. When the WSR Act was passed, we were damming rivers in the West so the bill was passed to keep some of our rivers as rivers instead of damming them. These classifications (wild, scenic, and recreational) are levels of development. If a river is recreational, you can have roads, developments, etc. There are designated rivers that flow through towns. It's different than wilderness. The wild classification is more like wilderness. If a project is proposed along a recreational segment within the 0.25-mile buffer, we would look at the ORVs. For example if the ORV is fish and someone wanted to build a campground, we would evaluate whether building a campground would harm the fish. The answer could be that it doesn't harm the fish and we could go ahead and build the campground if it is also consistent with the classification. This also applies to a project proposed by entities outside of the BLM.
- o *Question*: If an action is proposed on private land, does it go through BLM? *Answer*: During eligibility and suitability, the BLM can't do anything. BLM doesn't have a say for private lands. (Refer to handout, *Potential Impacts of Wild and Scenic River Suitability Determination or Designation by Congress on Existing and Potential Uses Within River Corridors*.)

## 5. Internal Draft Chapters 1 (Introduction) and 3 (Affected Environment) (Angie Adams)

- This is your opportunity to review the internal draft of Chapters 1 and 3. There are no decisions in these chapters, they just document the baseline for all of the resources.
- Because there are no decisions, it isn't a critical piece for Cooperating Agencies to review. However, as Cooperating Agencies, you might have good information that may have been missed. If there are particular topics of interest or in which you have expertise, focus your efforts on those.
- *Action*: We will email you the location of the files on a file transfer protocol site, an electronic comment form, and some instructions. Your comments will be due on August 20. The RAC Subgroup is also reviewing, as well as the BLM, so you're seeing it as they're seeing it. It's an internal draft so we'd ask that you don't distribute it but please provide feedback on sections that are of interest to you or that you have expertise in.
- We are particularly looking for information, studies, trends, etc. that you know of that we might not be aware of and didn't include.

## 6. Alternatives Development (Angie Adams)

- Handout: Appendix C of the BLM Land Use Planning Handbook. This is the "how to do planning for BLM." The handbook is available online, but Appendix C tells us what we have to address for each resource in the alternatives.
- Appendix C identifies land use plan decisions and implementation decisions. The RMP will focus on the land use plan decisions but doesn't get into the implementation decisions.
- *Question*: Looking at livestock grazing, are we going to see a map of what this would look like? *Answer*: Yes, we are not asking you to make the maps, but the BLM will do that as part of the development process and you will review to make sure the BLM has done the right thing in their range of alternatives.

BLM_0108085

- Handout: Internal Draft Working Goals. These are the draft goals that the BLM Interdisciplinary Team came up with this week. Goals are going to apply for all alternatives. Under each alternative we'll have varying objectives and actions. Please review the goals and e-mail feedback to Kate Wynant by Friday, August 13. Bruce will add a reminder to do this in his e-mail on Monday.
- Handout: Example RMP Alternatives Themes. These are examples of alternatives themes from other plans around the area so you can compare with the draft themes for this plan.
- Handout: Internal Working Draft Themes for the Uncompahgre RMP. The key for you to focus on are the quick descriptors of the themes and not necessarily the examples in each column. This is a result of a brainstorm with the BLM. We need your help with these themes, whether or not these seem reasonable, if there is a good range. Please review the themes and e-mail feedback to Kate Wynant by Friday, August 13. Bruce will add a reminder to do this in his e-mail on Monday.
  - o Alternative A is current management (not captured in the handout).
  - o Alternatives B through E are different ways to fix or change Alternative A.
  - o *Question*: Does BLM get a bigger budget by choosing a high-intensity management option? Does the budget you might get factor in? *Answer*: No, but when we go to the analysis, we might think about that. Another point to make is that none of these are our preferred alternative at this point. This was hard this week because most people find themselves in one of these columns but we have to come up with a range of activities. Between all of the people involved in this plan we should come up with a good range. We'll be looking for the preferred after we've created the alternatives.
  - o *Question*: Then it goes out for scoping? *Answer*: Then the Draft RMP/Draft Environmental Impact Statement goes out for public review.
  - o Alternatives have to meet laws, standards, policy, etc. Within those sideboards there are lots of things we can do. The preferred action will fall within the range. Think about things that matter to you and would it fit somewhere in this range.
  - o As a Field Manager, I would like your input as to whether or not this is a good way to go.
  - o *Comment*: It seems like this is somewhat similar to what the Grand Mesa, Uncompahgre, and Gunnison National Forests did. *Response*: Yes. The National Environmental Policy Act tells us that we have to address a reasonable range of alternatives. Going back to the budget, the National Environmental Policy Act doesn't tell us to look at the budget.
  - o *Question*: Are you looking for comments from this group on the philosophy of these themes? *Answer*: Yes.
  - o *Comment*: I don't understand all of the acronyms.
    - ROW: right-of-way
    - NSO: no surface occupancy. A stipulation that says you can't have a drill rig on that parcel the NSO stipulation applies to.
    - VRM: visual resource management. The way BLM classifies its land on a scale of I (unmodified landscape) to IV (manmade intrusions).
    - T&E: threatened and endangered
    - SSS: special status species (includes threatened and endangered and BLM sensitive species)
    - ACECs: areas of critical environmental concern
    - AUM: animal unit month; livestock forage
    - BMP: best management practice
    - SRMA: special recreation management area, areas focused on recreation of some type, could be motorized or nonmotorized; quiet use, intensive motorized use, etc.

BLM_0108086

- ▪ ERMA: extensive recreation management area. Anything not designated as a special recreation management area is part of the extensive recreation management area; leftover BLM land.
  - ▪ WSR: wild and scenic river
  - ▪ *Action:* We will provide an acronym list at the next meeting, as well as a glossary.
- o *Question:* Where does Alternative A fall in this spectrum? Where would grazing be, for example? Would it be possible to get a schematic that summarizes that? *Answer:* We can't consolidate where Alternative A is in the spectrum. We could send you alternative A in a very draft form.
  - ▪ The old RMPs are available electronically: http://www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp.html#RMPs
- o *Comment:* If Alternative A is considered high-intensity and it's not good enough, then you have to do more. So we have to know what Alternative A is.
- o *Comment:* I think the point is not to compare Alternative A with this because Alternative A wasn't developed using this so isn't the point to give feedback on the approach? *Answer:* Yes.
- o *Question:* What you have in these columns isn't set in stone yet, these are just examples, right? *Answer:* Yes, that's correct.
- o *Comment:* Grand Junction Field Office's reasonable range had a conservation alternative, a preservation alternative, and a preferred in between. This seems the same but with an intensity component. *Response:* Yes, and we struggled with going with that approach or looking at other options.
- o We have to look at a reasonable range, though, not just anything. "Utopia" is arguably not reasonable in a country that has a lot of people recreating on and utilizing public lands.

## 7. Other Items Not on the Agenda
- • None.

## 8. Action Items / Next Meeting
- • All meetings are at 1:00pm at the Holiday Inn Express (1391 South Townsend Avenue), Jordan Room:
  - o Thursday, August 19, 2010: Recreation, Soils, and Land Health Assessments
  - o Thursday, September 30, 2010: Visual Resources, Lands and Realty, Minerals
- ☐ *Action* (Cooperating Agencies): Review draft ACECs report and provide comments as appropriate by August 20.
- ☐ *Action* (Cooperating Agencies): Provide BLM information pertaining to the WSR suitability criteria by August 16.
- ☐ *Action* (Bruce Krickbaum): E-mail group the location of Chapters 1 and 3 files on file transfer protocol site, an electronic comment form, and some instructions.
- ☐ *Action* (Cooperating Agencies): Review internal draft Chapters 1 and 3 and provide comments to Kate Wynant by Friday, August 20.
- ☐ *Action* (Cooperating Agencies): Review the draft goals and e-mail feedback to Kate Wynant by Friday, August 13.
- ☐ *Action* (Cooperating Agencies): Review the draft alternatives themes and e-mail feedback to Kate Wynant by Friday, August 13.
- ☐ *Action* (BLM): We will provide an acronym list at the next meeting, as well as a glossary.
- ☐ *Action* (Bruce Krickbaum): Send Cooperating Agencies Alternative A in a very draft form.

BLM_0108087

 U.S. DEPARTMENT OF THE INTERIOR   **BUREAU OF LAND MANAGEMENT NEWS RELEASE**

**Release Date:** 08/12/10
**Contacts:** Deanna Masterson BLM 303-239-3671
Bruce Krickbaum BLM 970-240-5384

### BLM Uncompahgre Resource Management Plan Advisory Group to Meet (08-11-10)

MONTROSE, CO — A public advisory group that will provide recommendations to the Bureau of Land Management Uncompahgre Field Office as it revises its Resource Management Plan will meet for the fourth time on Aug. 20.

The subgroup of the BLM's Southwest Colorado Resource Advisory Council will meet on Friday, Aug. 20, at the Holiday Inn Express Jordan Room in Montrose at 1391 South Townsend Avenue.

The meeting will begin at 9 a.m. and is scheduled to adjourn at noon. The meeting is open to the public, with a public comment period scheduled for 11 a.m. Presentations on recreation, soils, and land health assessments are currently on the schedule.

The Southwest Colorado RAC subgroup is composed of area residents representing diverse interests within the Uncompahgre Field Office. The seven-member subgroup will provide recommendations to the BLM Southwest Colorado RAC regarding development and implementation of the public lands within the field office.

The Southwest Colorado RAC is one of three advisory councils to BLM Colorado. Composed of 15 members appointed by the Secretary of the Interior, individuals serving in each RAC represent a broad range of public land interests, ranging from environmental to local government to commercial activity. For more information on Colorado RACs, go to www.blm.gov/co and select Resources, then Resource Advisory Councils.

The BLM manages more land - more than 245 million acres - than any other Federal agency. This land, known as the National System of Public Lands, is primarily located in 12 Western states, including Alaska. The Bureau, with a budget of about $1 billion, also administers 700 million acres of sub-surface mineral estate throughout the nation. The BLM's multiple-use mission is to sustain the health and productivity of the public lands for the use and enjoyment of present and future generations. The Bureau accomplishes this by managing such activities as outdoor recreation, livestock grazing, mineral development, and energy production, and by conserving natural, historical, cultural, and other resources on public lands.

--BLM--

2465 South Townsend Avenue     Montrose, CO 81401

Last updated: 08-12-2010

http://www.blm.gov/co/st/en/BLM_Information/newsroom/2010/blm_uncompahgre_resource1.html[8/12/2010 12:58:51 PM]

BLM_0108088

## MONTROSE COUNTY
### COLORADO
## BOARD OF COUNTY COMMISSIONERS

August 11, 2010

Ms. Barb Sharrow
BLM Uncompahgre Field Office
2505 South Townsend Avenue
Montrose CO 81401

Dear Ms. Sharrow:

The Department of Interior, through Federal Bureau of Land Management ("BLM"), has determined that certain portions of the San Miguel and Dolores Rivers, and their tributaries located in Montrose County Colorado, are eligible for designation as wild and scenic rivers under the Federal Wild and Scenic Rivers Act, 16 USC 1271-1287 *as amended* (the "Act"). The eligibility was made following a study carried out this year by the BLM Uncompahgre Field Office of whether or not the rivers qualified as eligible for designation. The final study report was published in June of this year.

The process is now in the "suitability" phase, with public comment due to the Bureau of Land Management Uncompahgre Field Office on August 16, 2010. Under the Act, rivers can be designated as wild, scenic or recreational if the waterways are determined to have scenic, recreational, fish and wildlife, geologic, historic or cultural values, among others. The proposed designation for these rivers and their tributaries is mostly for recreational purposes. A map is included showing the portions of the rivers and their tributaries determined to be eligible for designation.

On behalf of the citizens of Montrose County, the Board of County Commissioners for Montrose County stand in opposition to the Department of Interior Bureau of Land Management ("BLM") inclusion for designation of portions of the San Miguel and Dolores Rivers, and some of their tributaries located in Montrose County under the Federal Wild and Scenic Rivers Act, 16 USC 1271-1287 *as amended* (the "Act"). On August 11, 2010, the County, acting through its Commissioners adopted Resolution #45-2010 opposing these designations. A copy of the Resolution is included.

These waterways flow through private land holdings, as well as those of the BLM, and land in the unincorporated areas of Montrose County. Many of the private land owners have owned and protected their land for many years. The waterways, and adjacent land, are already being used for recreational purposes where appropriate. The adjacent land that is a part of the BLM holdings, as well and the County land, is also being used for recreational purposes, where and

BLM_0108089

when appropriate. As is obvious, there is no need to designate them for recreational purposes, since they are being used as such.

The citizens of Montrose County, in collaboration with their County government, are in the best position to protect the future of the County and determine its course and direction. They have a vested interest in protecting these waterways for both current and future generations to use.

The need to consider responsible energy and mineral development is of prime importance to the nation. We simply must look to every resource available and keep all potential avenues open for that development to prevent being totally dependent on foreign energy sources from unstable governments that do not have our nation's best interest in view. Areas of land close to these eligible waterways contain the potential to contribute greatly to future energy and mineral development for the country. To close the door to that potential by designating the selected portions of these rivers and their tributaries under the Act is not in the best interest of country as a whole.

In addition to those already mentioned, there are multiple other reasons for not placing these waterways under the Act. These rivers and their tributaries are in the FEMA flood plain. To designate them under the Act would be to compromise needed health, safety and welfare protections for control of water flow to prevent flooding. It would also compromise the ability to control wildfires in the area and to properly route county traffic flow. The designation could also have a negative economic impact on the County. It stands to limit private landowners from utilizing their land to their determination of highest and best potential. In this time of economic hardship for many, to compromise the economic health of Montrose County by imposing limitations on the agricultural community, as well as land use ability, would create additional economic burdens.

These rivers and their tributaries have adequate protection under the current system of state and federal laws, including BLM regulations, as well as Montrose County land use regulations. To add another layer of government regulation and barriers would create a very fragmented system of regulations.

For these reasons, as well as others, we, the Montrose County Board of County Commissioners, on behalf of the people of Montrose County Colorado oppose the designation of portions of the San Miguel and Dolores Rivers and their tributaries located in Montrose County as Wild and Scenic Rivers under the Wild and Scenic Rivers Act. We respectfully request that you deny this designation.

Sincerely,                          Sincerely,                          Sincerely,

Ron Henderson,                  David White,                     Gary Ellis,
Chairman                          Vice Chairman                  Commissioner

Enclosures

2

RECEPTION#: 816518, 08/13/2010 at 12:34:04 PM, 1 OF 2, RES      FRANCINE
TIPTON-LONG, MONTROSE COUNTY, CO CLERK AND RECORDER

Resolution No. 16 45-2010

### RESOLUTION
### MONTROSE COUNTY COLORADO
### BOARD OF COUNTY COMMISSIONERS

### IN OPPOSITION TO
### DESIGNATION OF PORTIONS OF CERTAIN RIVERS IN MONTROSE COUNTY
### UNDER THE FEDERAL WILD AND SCENIC RIVERS ACT

**WHEREAS**, Montrose County Colorado has numerous rivers and their tributaries flowing through it, including the San Miguel and Dolores Rivers; and

**WHEREAS**, the Federal Bureau of Land Management ("BLM") under the Department of the Interior has declared certain portions of the San Miguel and Dolores Rivers, and some of their tributaries as eligible for inclusion under the Federal Wild and Scenic Rivers Act, 16 USC 1271-1287 as amended (the "Act"); and

**WHEREAS**, the Montrose County Board of Commissioners has reviewed the report produced by the BLM regarding inclusion of those river portions as suitable for designation under the Act; and

**WHEREAS**, after consideration of the advantages and disadvantages of such designation, the Montrose County Board of County Commissioners is of the opinion that it is not in the best interests of the citizens of Montrose County for the portions of these rivers and their tributaries to be designated for inclusion under the Act for the reasons set forth below in this Resolution; and

**WHEREAS**, the Board of County Commissioners does not consider the protections set forth the under the Act needed for these rivers and their tributaries because, among other reasons:

The rivers and their tributaries have adequate protection under state and federal laws already implemented, including BLM regulations, as well as Montrose County land use regulations.

The inclusion of the designated portions of these rivers and their tributaries would result in a fragmented system of multiple layers and levels of government agency regulation, which would make it difficult for the land owners under private ownership in the area.

The private land owners in the area of proposed designation have a vested interest in being good environmental stewards of the rivers and their banks and borders, and many have a long history as owners of the land.

1

BLM_0108091

RECEPTION#: 816518, 08/13/2010 at 12:34:04 PM, 2 OF 2, RES FRANCINE
TIPTON-LONG, MONTROSE COUNTY, CO CLERK AND RECORDER

The County Commissioners, on behalf of the residents of Montrose County and those traveling through it, have a vested interest in being good environmental stewards of the rivers, their tributaries and the banks and boarders of those rivers and tributaries.

The need to consider responsible energy and mineral development in the area is important, not only to the citizens of Montrose County, but to the United States as a whole.

The health, safety and welfare of the citizens of Montrose County may be negatively impacted for numerous reasons, including the need to control water flow to prevent flooding; the need to control wildfires in the area and the inability to properly route county traffic flow that would occur as a result of such designations. The entire river corridor in considered the flood plain.

The economic health of Montrose County contributed to by, among others, agriculture and land use, stands to be negatively impacted at a time when many of the citizens of Montrose County are struggling economically.

**NOW THEFORE, BE IT HEREBY RESOLVED,** that the Montrose County Board of County Commissioners, for reasons set forth above, does oppose the designation and inclusion under the federal Wild and Scenic Rivers Act, of certain portions of the San Miguel and Dolores Rivers and certain tributaries of those rivers, all as located in Montrose County Colorado, as specified in the Final Wild and Scenic River Eligibility Report for the BLM Uncompahgre Planning Area published June 2010.

This Resolution No. 10 45 - 2010 shall be effective upon signature done the 11th day of August , 2010.

**ADOPTED THIS** 11th **DAY OF** August , 2010 BY MAJORITY VOTE OF THE MONTROSE COUNTY BOARD OF COUNTY COMMISSIONERS.

ATTEST:

Marie Simons, Deputy Clerk of the Board

MONTROSE COUNTY
BOARD OF COUNTY COMMISSIONERS

Ron Henderson, Chair

David White, Vice-Chair

Gary Ellis, Commissioner

2

BLM_0108092

**James Bode**

| | |
|---|---|
| **From:** | SULLYRANCH@aol.com |
| **Sent:** | Thursday, August 12, 2010 2:57 PM |
| **To:** | uformp@blm.gov |
| **Subject:** | comments to RMP Revision |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Your policy is to lock up more lands with restrictions is unacceptable.

Multiple use means open to everyone!

More "treasured lands" means less management -- less employees. We can not afford more managers to oversea more categories of exclusion.

The only department that could use more employees would be enforcement.

Please keep the land open and useable by all.

Dan Sullivan
8301 Crawford Road
Hotchkiss, Co. 81419

BLM_0108093

**James Bode**

| | |
|---|---|
| **From:** | Joyce Scroggins <JScroggins@bowieresources.com> |
| **Sent:** | Thursday, August 12, 2010 12:44 PM |
| **To:** | uformp@blm.gov |
| **Subject:** | Wild and Scenic river designation comments |
| **Attachments:** | Commenting on Wild and Scenic River Suitability.doc |

*To Whom It May Concern:*

*Attached are my comments regarding the Wild and Scenic river designation.*

*Sincerely,*

**Joyce Scroggins**
**970-527-7780**

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

1

BLM_0108094

FROM:  jscroggins@bowieresources.com

## I3 - WEST FORK TERROR CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:*  **Recreational**                                                   *ORVs:*  **Fish**

**Your Name:** __Joyce Scroggins_____        **Telephone:** __970-527-7780_____

**Address:** _____7677 Dover Rd., Delta, CO  81416_____        **E-mail:** _____jscroggins@bowieresources.com__

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1.  Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

I do not believe that the West Fork of Terror Creek has what could be considered as "outstanding remarkable value" fish species that would warrant this reach of stream to be classified as having ORVs.

**2.  Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3.  Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

Same as above answer for #1.  The West Fork of Terror Creek should not be designated has having ORVs.

| LAND OWNERSHIP AND USES |
|---|

**4.  Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**
Because this river corridor runs through an area associated with mining rights, the Wild and Scenic designation of this area **WILL** adversely affect the mining rights (not COULD adversely affect these rights).

**5.  Compatibility or incompatibility of designation with current land and water uses and development.**
Same as #4 – the current land that is associated with underground mining **WILL** be adversely affected by the Wild and Scenic designation of the area.

FROM:  jscroggins@bowieresources.com

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

The reasonably foreseeable potential land use associated with underground mining **WILL** be adversely affected by the Wild and Scenic designation of the area.

| ADMINISTRATION |
|:---:|

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9.  Issues that might make administering this segment difficult.**

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
|:---:|

Not all streams on BLM land can, or should, be categorized as being truly wild and scenic.  The West Fork Terror Creek does not fall into this category as it does not have fish species that would warrant being considered ORVs  and therefore should not be listed as such.

Received

AUG 1 3 2010

Uncompahgre Field Office

August 12, 2010


Bureau of Land Management
Attention: RMP Revision
2465 S. Townsend Avenue
Montrose, CO   81401

Comments regarding 1610(COSO50)
Wild and Scenic River Eligibility

My family and I not only recommend but demand that **NONE** of the 34 River Segments
identified by the BLM UFO be considered eligible or suitable as National Wild and
Scenic Rivers. When congress enacted the WSR Act in 1968, it was another egregious
mandate to control, lock-up and dictate a resource in the name of a fish or plant or
perceived scenic value that have and will continue to do just fine without government
intervention.

Why does the Federal Bureaucracy of Land Management (BLM) think they can protect
anything? Take a look at the beetle infestation, generations of fire mismanagement, flood
control, lack of understanding the need for dams, lakes, and water development in the
west. No, let's lock it up, shut it down and take it over and call it Wilderness or Wild and
Scenic.

Some of these river segments, such as Tabeguache are intermittent streams – meaning
they often dry up completely during the summer months. Many attempts to plant fish
have been unsuccessful because of drought. Any sucker fish that might be found in the
lower segment migrate from the San Miguel River when there is water.

The only reason for Wild and Scenic is to stop development and end private property
rights. All of these streams and rivers have been filed on and pass through private
property. There are water diversion, cattle permits, irrigation systems and ranching
endeavors along these river segments. What regulations and restrictions will be put on
them?


Shawn Mock  (Richards & Richards)
P. O. Box 556
Nucla, CO   81424

-2-

Following is a list of reasons for non inclusion that we have specific knowledge about pertaining to San Miguel River Segment 5, Tabeguache Creek, Ice Lake Creek, LaSal Creek Segment 1, Lion Creek Segment 2 and Dry Creek Segment 1.

We live and run cattle along these creeks and rivers.

We operate BLM permits in these areas.

We own water rights out of these segments.

We own property these streams and rivers pass through.

Major highways run alongside or near these segments.

We don't consider them wild or scenic for these reasons, but necessary for our survival and life. This designation would restrict and impede future use of our land and water. The government needs to drop this Wild and Scenic idea and stop this dictatorship mentality. We are fearful of the Federal water filings that will come with the designations and their idea of "appropriate" use and manageability.

There is one major threat coming to these waterways that does need to be dealt with. The Russian Olives are taking over the Nucla area and soon will choke out the river ways. They are very invasive and will be 10 times worse than the Tamarak problem.

Sincerely,

Shawn Mock

Shawn Mock
Richards & Richards
P. O. Box 556
Nucla, CO  81424

BLM_0108098

**28 - ICE LAKE CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS**

Preliminary Classification: Recreational
ORVs: Scenic

Your Name: _Shawn Mock_

Address: _Box 608   Nucla   Co   81424_   Telephone: _____

E-mail: _____

Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.

## GENERAL

1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.

2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.

State Highway 90 runs along the mouth of this stream.

3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.

When an area is designated on a map as "wild" or "Wilderness" it may draw like a magnet over use and the destructive, trashy nature of man. It brings too much attention to it. So why threaten it?

## LAND OWNERSHIP AND USES

4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.

We own Private property here. Also includes water ownership and cattle grazing.

5. Compatibility or incompatibility of designation with current land and water uses and development.

Incompatible with private property, and trespass issues

BLM_0108099

6. Reasonably foreseeable potential land and water development and uses that could be affected by

designation.   *Value of private property may be affected.*

---

## ADMINISTRATION

7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9. Issues that might make administering this segment difficult.

*private property*

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

## 29 - LA SAL CREEK, SEGMENT 1 WSR SUITABILITY COMMENTS

Preliminary Classification: Recreational
Vegetation                                                    ORVs: Fish,

Your Name: _Shawn Meek_                    Telephone: _____
Address: _P.O. Box 608        Nucla_       E-mail: _____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.

This stream can be intermittant. Water too low and warm in summer for good long term fish viability. Private property

2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.

Co State Highway 90 here. State of Colo in process of acquiring in-stream flows.

3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.

### LAND OWNERSHIP AND USES

4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.

We own Private property in this segment along with water rights and diversions and cattle allotment on the public land. Irrigated land for grazing purposes and fruit trees.

NAME:                              SEGMENT:

BLM_0108101

5. Compatibility or incompatibility of designation with current land and water uses and development.

6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.

*uranium/Vanadium exploration and mining*
*drilling . oil and gas . Private water rights and*

---

## ADMINISTRATION

7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

*Major highway along this area inhibits "wildness"*
*by brights accessible*

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

*BLM plans promote "multiple uses"*

9. Issues that might make administering this segment difficult.

*PRivate property and trespass issues*

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage

and protect this segment's ORVs on nonfederal lands.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

*Too much Government intervention. Back off.*

### 30 - LA SAL CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

*ORVs:* Fish, Vegetation

Your Name: *Shawn Mock*   Telephone: _____

Address: *P.O. Box 608   Nucla*   E-mail: _____

Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.

### GENERAL

1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.

2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.

*BLM grazing allotment*
*Copper mine*
*private water rights above this segment*

NAME: *Shawn Mock*   SEGMENT:

## 23 - TABEGUACHE CREEK, SEGMENT 1 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

Vegetation                                                                    ORVs:

Your Name: _____*Shawn Mork*_____          Telephone: _____

Address: _____*Box 608 Nucla*_____          E-mail: _____

Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.

### GENERAL

1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.

*STREAM is intermittant*

2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.

3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.

### LAND OWNERSHIP AND USES

4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.

*Water rights above this segment*

NAME:                                              SEGMENT:

5. Compatibility or incompatibility of designation with current land and water uses and development.

6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.

*Private property above this segment.*

---

## ADMINISTRATION

7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

*Some private property*

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9. Issues that might make administering this segment difficult.

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage

and protect this segment's ORVs on nonfederal lands.

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

---

## 24 - TABEGUACHE CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                           *ORVs:* Cultural,
Vegetation

Your Name: _____Shawn Mock_____          Telephone: _____
Address: ___Box 608 Nucla___          E-mail: _____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

stream is intermittent

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

NAME:                                                     SEGMENT:

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

---

## LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

*Water rights that exist above this segment.*

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

*Incompatable*

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

*WSR - Squashes all potentials*

---

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms**

for protecting this segment's ORVs other than WSR designation.

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9. Issues that might make administering this segment difficult.

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

---

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

Designation is not needed to protect it.
Save your money and man time
Designation may ruin the very thing you are trying
to protect.

## 21 - SAN MIGUEL RIVER, SEGMENT 5 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational        *ORVs:* Recreational, Fish, Historic, Vegetation

Your Name: _Shawn Mock_                          Telephone: _____

Address: _P.O. Box 608 Nucla, Co 81424_          E-mail: _____

Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.

### GENERAL

1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.

Water can be very low in summer and too warm for good
fish survival
no recreation allowed because of private property
Poor fishing, if any at all. I Do not consider it scenic.

2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.

STATE Highway 141 run along the length of this
river segment. Also, gas line within 1/4 mile.

BLM_0108109

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

---

## LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

We own private property here. Also water/rights from river. Cattle allotment and permits on the public land. Farming and ranching along the river

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

Not Compatible. Blessing ditch right of way Water diversions for irrigation purposes.

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

oil or gas production
coal mining
uranium / vanadium possible
private property right to sell may be affected

---

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms**

---

NAME:   Shawn Mock          SEGMENT:   San Miguel Seg. 5

for protecting this segment's ORVs other than WSR designation.

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9. Issues that might make administering this segment difficult.

*Trespass issues because of PRIVATE PROPERTY!*

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

---

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

# 15 - DRY CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

Geological                                                          *ORVs:* Scenic,

Your Name: _Shawn mock_                          Telephone: _____

Address: _P. O Box 608   NUCLA. CO 81424_ E-mail: _____

Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.

## GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

STATE HIGHWAY 90 runs through this canyon

3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.

---

### LAND OWNERSHIP AND USES

4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.

5. Compatibility or incompatibility of designation with current land and water uses and development.

Incompatible with cattle grazing permit.
Housing and commercial development on private land
at the mouth of this stream.

6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.

oil and gas
uranium / vanadium mining
coal
Private land has commercial possibilities at intersection with
State Highway 141 along with water rights.

---

### ADMINISTRATION

7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms

---

NAME:                                    SEGMENT:

BLM_0108113

for protecting this segment's ORVs other than WSR designation.

*Limited*

8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9. Issues that might make administering this segment difficult.

10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

**James Bode**

| | |
|---|---|
| **From:** | Art Etter <AEtter@bowieresources.com> |
| **Sent:** | Friday, August 13, 2010 7:42 AM |
| **To:** | UFORMP@BLM.GOV |
| **Subject:** | Terror Creek WSR Comments |
| **Attachments:** | West Terror Creek WSR Suitability Comments.pdf |

Attached are my comments on the eligibility of West Terror Creek as a WSR.  Thanks.

*Art Etter, Engineer*
*Bowie Resources, LLC*
*(970) 929-5367*

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

BLM_0108115

## 13 - WEST FORK TERROR CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                              *ORVs:* **Fish**

**Your Name:** __Art Etter__                          **Telephone:** __970-929-5367__

**Address:** __POB 44, Paonia, CO 81428__          **E-mail:** __aetter@bowieresources.com__

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment does not have the characteristics to qualify for WSR designation.  The 1/2 mile wide corridor of the West Terror Creek is heavily used for recreation, agriculture, mining industry, and both national and local utility infrastructure.  BLM has determined the segment as eligible for the WSR designation solely based on the stream containing Greenback Cutthroat Trout.  The Greenback Cutthroat Trout were not originally native the Terror Creek Drainage.  They were stocked 10-20 years ago by CO Division of Wildlife.  The Greenback Cutthroat Trout is an introduced species and should not qualify for additional special protections through WSR designation.  The fish is already adequately protected by the Threatened and Endangered Species Act.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

The designation will effect  the following groups:

<u>Federal:</u>  Western Area Power Administration (Rifle-Curecanti Transmission Lines)

<u>Local:</u>  Bowie Resources LLC (federal coal reserves), Delta County Cattleman's Association (livestock grazing), Pitkin Mesa Water Company (commercial and domestic water utility), numerous irrigation share owners (Overland, Hole Terror, and Rex Reservoirs), and private property owners within the 1/2 mile wide corridor of West Terror Creek.

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

The BLM states that the ORV is the Greenback Cutthroat Trout.  The fish will not be affected either way because it is already protected under the Threatened and Endangered Species Act.

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

Within the immediate segment corridor the designation will adversely affect future coal mining activities and cattle grazing.  Additionally, if the segment were to be approved by Congress the entire stream corridor would be adversely affected, potentially limiting water rights for local irrigation and utility companies, limiting access to grazing, limiting the ability to administer commercial timber sales on private and public property, reducing historic vehicle access, and limiting the ability to maintain national infrastructure.

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

The designation is not compatible with current or historic land and water uses and development.  The segment and associated corridor currently contain 0.46 miles of unsurfaced road.  The segment contains a future coal exploration drillholes and water monitoring wells.  There are minable coal reserves located within the corridor boundaries.  The segment is also actively managed for livestock grazing.

Within the entire stream corridor the above mentioned development will occur but there are other existing surface uses and disturbances.  These disturbances are 0.62 miles of the Overland Irrigation Ditch, 0.60 miles of Western Area Power Administration's transmission lines, 1.15 miles of surfaced two-lane county road (Steven's Gulch Road), 0.90 of single-lane county road (Terror Creek Road), and 5.35 miles of native unsurfaced roads.  The stream is crossed several times with a small bridge, culvert, and unimproved stream/road crossings.  Historically there have been commercial timber sales within the corridor and annual clearing is required to maintain the existing transmission and aqueduct easements.

BLM_0108116

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**
See line item 5.

The designation will affect future coal mining within the WSR corridor.  There will be a significant economic impact to the local community if the coal reserves are not able to be mined.  Bowie Resources LLC directly employs 280 people.  That does not include all of the consultants, contractors, and material suppliers that benefit economically from the local coal mining industry. It is estimated that for every person directly employed another seven indirectly benefit by providing local services such as hotels, restaurants, grocery stores, etc.

The designation will also affect the local ranchers, timber operators, irrigation users, and utilities.

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**
Threatened and Endangered Species Act adequately protects the ORV.  A WSR designation will not provide additional protection.  It will only serve to elevate the level of frustration from local users and land owners and increase the inefficiency of federal land managers.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
The designation is not consistent with regional objective and policies in regards to extraction of minable coal reserves.  It is also not consist with existing water rights for irrigation and water utility use.  The designation is not consistent with the BLM's livestock range policies.

**9. Issues that might make administering this segment difficult.**
The number of users and complexity of their uses will make administering the segment difficult.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**
A significant portion of the West Terror Creek drainage is on private property.  These areas have historically seen heavy use from the local community.  Efforts from the federal government to restrict these historic uses will see resistance from the local government, private land owners, and historic users.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

The drainage has historically seen and continues to see heavy surface disturbance from coal mine activities, ranching, timber harvests, utility corridors, and irrigation users.  Even with the all of these surface disturbances the fish has appeared to be unaffected.

The designation of the section as a WSR will place unnecessary restrictions on adjacent property owners.  It will also create a process seen as a federal 'land grab' used to control the uses of adjacent private properties under the guise of protecting a fish that is already protected in federal law.

**See the attached map for the locations of existing surface uses.**

BLM_0108117



BLM_0108118

**James Bode**

| | |
|---|---|
| **From:** | Art Etter <artetter@hotmail.com> |
| **Sent:** | Friday, August 13, 2010 3:18 PM |
| **To:** | uformp@blm.gov |
| **Subject:** | Terror Creek WSR Comment Form |
| **Attachments:** | WSR Segment Suitability Public Comment Form - Jo.pdf |

Attached is my comment form for the segment of West Terror Creek considered eligible for WSR designation.

Thanks.
Johanna Etter

1

## 13 - WEST FORK TERROR CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                              *ORVs:* **Fish**

**Your Name:** __Johanna Etter__                    **Telephone:** __970-527-4276__

**Address:** __POB 44, Paonia, CO 81428__        **E-mail:** __artetter@hotmail.com__

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment does not have the characteristics to qualify for WSR designation. The Greenback Cuttroat Trout is not indigenous to the West Fork Terror Creek. The trout was stocked by CO Division of Wildlife. The segment of stream doesn't meet the Wild, Scenic, or Recreation classification criteria. Wild and Scenic criteria are not met because the stream is not free of impoundments do to Holy Terror and Rex Reservoirs, which divert water in the Leroux Creek drainage. The stream segment does not meet the Recreational criteria because there is no public access by road or railroad.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9.  Issues that might make administering this segment difficult.**

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

## WILD AND SCENIC RIVER DESIGNATION

Public input is critical for developing a thorough draft suitability analysis. At this time, the BLM is soliciting data from the public regarding each of the eligible river segments. The most helpful data to the BLM is information that directly addresses each of the suitability criteria. The BLM will then use this data in making draft suitability determinations during the draft alternatives analysis process. Please send us your data regarding the eligible stream segments of interest to you by August 16, 2010. While the BLM will accept opinions on whether specific segments are suitable, information regarding each of the suitability criteria will be relied upon most heavily in making the draft suitability determinations. When the Draft RMP/Draft EIS is published (tentatively scheduled for spring of 2012), the public will have 90 days to comment on the draft suitability determinations.

Due to the dams, diversions and water resource development projects which occurred from the 1930s to the 1960s, the need for a national system of river protection was recognized by conservationists (notably Frank and John Craighead), congressional representatives such as Frank Church, and federal agencies. The Act was an outgrowth of a national conservation agenda of the 1950s and 1960s, captured in the 1962 recommendations of the Outdoor Recreation Resources Review Commission. The Act concluded that selected rivers be preserved in a free-flowing condition and be protected for the benefit and enjoyment of present and future generations.

### Q. When was the Act passed?

**A.** The Act (Public Law 90-542; 16 U.S.C. 1271-1287) was enacted on October 2, 1968. It has been amended many times, primarily to designate additional rivers and authorize additional rivers for study for possible inclusion.

### Q. What is the purpose of the Act and of designating rivers? How should these rivers be managed?

**A.** The Act provides a national policy and program to preserve and protect selected rivers, or segments of rivers, in their free-flowing condition in the National System. Section 1(b) of the Act states:

*It is hereby declared to be the policy of the United States that certain selected rivers of the Nation which, with their immediate environments possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, or other similar values, shall be preserved in free-flowing condition, and that they and their immediate environments shall be protected for the benefit and enjoyment of present and future generations.*

Section 10(a) of the Act states:

*Each component of the National Wild and Scenic Rivers System shall be administered in such manner as to protect and enhance the values which caused it to be included without . . . limiting other uses that do not substantially interfere with public use and enjoyment of these values. In such administration primary emphasis shall be given to protecting its aesthetic, scenic, historic, archaeologic, and scientific features. Management plans for any such component may establish varying degrees of intensity for its protection and development, based on the special attributes of the area.*

**Q. How many miles of river have been protected under the National System?**

**A.** As of September 30, 2004, some 163 river segments comprising 11,341 miles have been afforded protection in the National System. These nationally recognized rivers comprise some of the nation's greatest diversity of recreational, natural and cultural resources, offering great scientific study value and scenic beauty. By contrast, approximately 600,000 miles of once free-flowing rivers have been inundated by about 60,000 dams.

## Jurisdiction

Section 13(b) stipulates that jurisdiction over waters of any designated stream shall be determined by established principles of law. It further requires the United States (through the administering agency) to compensate owners for any taking of "vested" water rights. However, designation in and of itself does not create an exemption from state water law: "Nothing is this act shall constitute an express or implied claim or denial on the part of the Federal Government as to exemption from State water laws."

Sections 13(c) and (d) further address water resources jurisdictional issues. These subsections recognize the jurisdiction of the states over water management and also declare an overriding federal interest in, and authority over, designated rivers.

Designation in and of itself does not necessarily imply a reservation of waters, nor does it affect the jurisdiction of the states over water resources of designated streams. However, Section 13(c) qualifies recognition of state jurisdiction by stating that designation "shall not be construed as a reservation of the waters of such streams for purposes other than those specified in this Act, or in quantities greater than necessary to accomplish these purposes." Section 13(d) further limits states' rights and recognizes federal interest by stating: "The jurisdiction of the States over waters of any stream . . . shall be unaffected by this Act to the extent that such jurisdiction may be exercised without impairing the purposes of this Act or its administration."

The Act, through Section 13(e), also declares that designation will not affect interstate compacts made by the states.

**James Bode**

| | |
|---|---|
| **From:** | Ray Marvel <RMarvel@bowieresources.com> |
| **Sent:** | Saturday, August 14, 2010 2:25 PM |
| **To:** | UFORMP@BLM.GOV |
| **Subject:** | WSR Segment Suitability Public Comment Form - BLANK |

## COMMENTING ON WILD AND SCENIC RIVER SUITABILITY

Thank you for your interest in providing comments regarding Wild and Scenic River suitability for the BLM Uncompahgre planning effort.

## COMPLETING THE RIVER SEGMENT COMMENT FORM

Comments may be typed or handwritten. Please use the segment comment form available at: www.blm.gov/co/st/en/fo/ufo/wild_and_scenic_river.html

**Submit written comments by August 16, 2010:**

- Email completed forms to:  UFORMP@BLM.GOV
- Or mail completed forms to:  BLM UFO, Attention: RMP Revision, 2465 South Townsend Avenue, Montrose, Colorado  81401

If using the Word version, print the form for mailing or save it as a new document in your local directory before completing.

If using the Adobe Pdf form, print the form for mailing.

For all forms, please:

- Print your name and phone number or email address on each page you complete.
- Address only those eligible river segments about which you have specific knowledge or concerns.
- For each segment, address only those Wild and Scenic suitability criteria about which you have specific knowledge or concerns.
- Be factual and as specific as possible regarding issues, locations, dates, and times.

## PROVIDING EFFECTIVE COMMENTS

**Substantive comments do one or more of the following:**

- Raise issues the BLM has not considered and reinforce issues the BLM has already identified
- Present reasonable alternatives
- Present information that can be used when developing alternatives or considering the impacts of alternatives

## TYPES OF COMMENTS TO AVOID

**Comments that are not substantive include:**

- Comments in favor of or against an action without providing a rationale (such as "I don't like...").
- Comments that simply agree or disagree with BLM policy.
- Comments without justification or supporting data (such as "allow more grazing").
- Comments in the form of vague, open-ended questions.

BLM_0108124

## 13 - WEST FORK TERROR CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:*  Recreational                                                    *ORVs:*  Fish

Your Name:  __KEN SMITH__                                   Telephone:  __970-527-3890_____

Address:  _____14729 BETHLEHEM ROAD, PAONIA, CO 81428__

_E-mail:  _____KENSFP@YAHOO.COM_____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1.  Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This area does not qualify for WSR designation.  The ½ mile corridor of the West Terror Creek is heavily used by Recreation, Agriculture, Mining, Timber and Utilities.  The only common factor is Green Back Trout.  Green Back Trout is not native to this country and is already incorrectly protected by the Endangered Species Act.

**2.  Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

There are many other users that will be effected.  Western Area Power Administration, U.S. Forest Service, BLM.  Local users are Bowie Resources, LLC, Delta County Cattlemen's Association, Pitkin Mesa Pipeline, Overland Ditch and Reservoir, Holy Terror Ditch and Rex Ditch.

**3.  Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

There are none.

The Green Back trout should be disqualified because it is not native to this area.  Also the fish are already protected.

| LAND OWNERSHIP AND USES |
|---|

**4.  Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

This area is currently used by all parties, recreation, industry, agriculture, water companies.  Any change in status will negatively Effect all parties, present and future.  History shows no evidence of a need for change.

**5.  Compatibility or incompatibility of designation with current land and water uses and development.**

Any designation change will not be compatible with current land and water use.  This area provides mineral reserves, grazing land, recreation use and water currently and historic evidence shows sustainable capability.

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

The Designation will effect all users adversely.  Mining jobs, economic structure, tax base and property values.  There is no

BLM_0108125

need for this Designation.    WSR is a Federal land Grab.  We don't want or need any more government involvements.

## ADMINISTRATION

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**
The Threatened and Endangered Act overly protects the ORV.  The WSR Designation will not add any additional protection.  It will cause more frustration between Government and local users.

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
The WSR is not consistent with other BLM plans.  It is not objective in the policies in regards to mining, existing water rights and utility use.  It is also not consistent with Livestock Range policies.

**9.  Issues that might make administering this segment difficult.**
Number of players involved past, present and future.

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**
What gives the BLM or any other Government agency the right to impose on tax paying private land owners where there are no zoning regulations being violated.  This is a land grab by default, government restriction will only cause frustration.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

The more information I find about this WSR Designation the more convinced I become that our Government is out of control.  And sleeping with special interest groups.

We have lost the sight of fact that we develop Natural Resources to provide food, shelter and economic security.  We have no intention of destroying the Resources.

Ken Smith
Smith Forest Products
14729 Bethlehem Road
Paonia, CO 81428
970-527-3890
417-229-1922

BLM_0108126

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

BLM_0108127

## James Bode

| | |
|---|---|
| **From:** | catherine bonde <catbonde@yahoo.com> |
| **Sent:** | Sunday, August 15, 2010 6:49 PM |
| **To:** | uformp@blm.gov |
| **Cc:** | Cathy Bonde |
| **Subject:** | WSR Suitability Comments |
| **Attachments:** | La Sal Creek, Segment 1 WSR Suitability Comments.doc; Lion Creek, Segment 2 WSR Suitability Comments2.doc |

Please find attached comments on the proposed WSR designation for La Sal Creek, Segment 1 and Lion Creek, Segment 2. Any comments or questions can be addressed to us at the address, phone or e-mail information listed below. We would appreciate being informed of each step as the process continues.

Thank you for your attention to these comments.

Cathy Bonde, Jim Butler, Lekumberry Family Trust
435-259-0968
catbonde@yahoo.com
1610 Murphy Lane
Moab, UT 84532

BLM_0108128

## 29 - LA SAL CREEK, SEGMENT I WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational
*ORVs:* Fish, Vegetation

**Your Name:** Jim Butler, Cathy Bonde, Lekumberry Family Trust  Telephone: 435-259-0968
**Address:** 2775 Highway 90/2773 Highway 90 Paradox, CO   E-mail: catbonde@yahoo.com
1610 Murphy Lane, Moab, UT 84532

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or <u>might not</u> qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**
*Segment I of La Sal Creek is a continuous grid of ranch and residential land and is a non-navigable creek. state highway parallels the creek.  The existence of this highway seems to negate the "wild" part of the designation.   Since the canyon is land locked, there is no recreation other than the highway itself.  At least 3 head gates already exist on the creek.  In addition, an active uranium mine operates on the south rim of the canyon.  The integrity of the Dolores River system certainly rests with the control of the dam on McPhee Reservoir.*

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**
*Isolated Federal land tracts adding up to about 2/3 of an acre.  State Highway 90 parallels creek.  State Division of Natural Resources, Montrose County and local property owners all have interests.*

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**
*As local stewards of the land, we understand the value of diverse vegetation, natural resources, proper conservation, and beauty of the area.  The reason this fairly pristine and undisturbed bottomland of La Sal Creek Canyon has endured is the fact that it has been continuously managed and naturally protected for the last 100 years by the sparse population of private land owners.  In contrast, the immediate surrounding area of watershed ( publicly managed lands) has seen the last 50 years ravaged by grids of seismic exploration cuts, numerous drill holes, littering of  old uranium mine tailings, and large tracts of chained*

BLM_0108129

*pinion-juniper.*

## LAND OWNERSHIP AND USES

**4.  Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**
*Nearly the entire creek corridor is bordered by private land on both sides of the highway.  Historical water and mineral rights exist throughout the canyon.*

**5.  Compatibility or incompatibility of designation with current land and water uses and development.**
*Quoting from the BLM website:  "River segments with adjacent private lands may not be appropriate for WSR designation.*

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**
*The La Sal Creek segment from Stateline to Sharp Canyon consists of three large connecting private land tracts with two private five acre lots near Sharp Canyon.  Residents agree on maintaining the current rural*

*character of the area and neighbors are compatible with existing water rights.*

| ADMINISTRATION |
| --- |

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**
*Local landowners are already managing their land in a way that is consistent and condusive to BLM's intent of conservation; preserving wetlands, responsible grazing, elimination of noxious weeds, etc.  As stated previously, the Canyon's sparse population and large private tracts of land naturally provide protection and conservation of the area.*

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
*Classification of this waterway as "recreational" is inappropriate due to the fact that it is non-navigable with no public access, and the designation isn't compatible with private land ownership.  The highway is the only means of recreation.  The creek, itself, is not.*

**9. Issues that might make administering this segment difficult.**
*How can the BLM effectively manage this land with virtually no public access?*

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.    *Landowners work closely with County and State government entities to ensure protection and proper management of the canyon corridor.  Once again, the***

*large tracts of private land and sparse population ensure conservation of the area.*

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
|---|

*Please look at this segment thoroughly and carefully.  Landowners seem to be in solidarity on preventing this designation.  It seems logical to start designation below the "Cash In" Mine.  What does BLM really have to gain from this designation?   Integrity of the Dolores River System is most affected by the releases of McPhee Reservoir, not the minimal C.F.S. flows of La Sal Creek and the historical water rights of small, private ranchers.*

BLM_0108132

## 32 - LION CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational
*ORVs:* Vegetation

**Your Name:** Jim Butler, Cathy Bonde, Lekumberry Family Trust  **Telephone:** 435-259-0968

**Address:** 2775 Highway 90/ 2773 Highway 90 Paradox, CO **E-**mail: catbonde@yahoo.com
1610 Murphy Lane, Moab, UT 84532

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or <u>might not</u> qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**
*Lion Creek's perennial water runs for about one mile out of a box canyon, through culverts, under State Highway 90, and terminates at La Sal Creek. It is non-navigable. No recreation exists on the waterway, and the area is currently designated and held as a Federal grazing lease in its entirety. The adjacent landowner possesses historical water rights to the creek.*

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**
*Bureau of Land Management, Landowner with water rights*

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**
*Primary landowner and lease holder understands the dynamics and fragility of the riparian zone and manages it accordingly.*

| LAND OWNERSHIP AND USES |
|---|

**4.  Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**
*Land and mineral ownership traverses the entire mouth of Lion Creek Canyon.  Land owner has spent much time and energy proving up historical water rights.*

**5.  Compatibility or incompatibility of designation with current land and water uses and development.**
*Incompatibility exists due to private land issues, Federal grazing lease, and senior water rights, historical water diversion exists on Lion Creek.  There is no development at the Canyon mouth and no planned future development.*

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**         *No foreseeable land development.  Always improving on water supply.*

| ADMINISTRATION |
|:---:|

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**
*"Recreational" classification management seems difficult based on lack of public access.  Lion Creek is naturally protected due to the nature of the terrain (box canyon).  The dynamics of this creek and canyon insure its conservation.  Its "scenic" value is not at risk and will not be at risk in the future.  There is no need for special designation.*

BLM_0108134

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
*Primary Landowner possesses Federal grazing allotment of entire canyon (Rawlings Allotment #17021).*

**9.  Issues that might make administering this segment difficult.**
*There is no public access from the mouth Lion Creek Canyon Canyon.  No motorized access exists into Lion Creek Canyon.  Its "scenic" qualities are not at risk and are not in need of preservation.*

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**
*Lion Creek Canyon consists of Federal and private land only.  Private land owner is steward of the Canyon. This land is already protected.*

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

*In conclusion, by referencing the above comments, it is clear this area does not need special designation to be protected.  The dynamics of this canyon and waterway naturally provide protection and insure a continuation of the qualities deemed valuable.*

BLM_0108135

**James Bode**

| | |
|---|---|
| **From:** | John L <teamplayer11@sbcglobal.net> |
| **Sent:** | Sunday, August 15, 2010 6:00 PM |
| **To:** | UFORMP@BLM.GOV |
| **Subject:** | Emailing: WSR Segment Suitability Public Comment Form 072610 Web |
| **Attachments:** | WSR Segment Suitability Public Comment Form 072610 Web.doc |

Comments from John Lagorio.  847-816-9173

The message is ready to be sent with the following file or link attachments:
WSR Segment Suitability Public Comment Form 072610 Web

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

BLM_0108136

## 33 - SPRING CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                        *ORVs:* **Vegetation**

**Your Name:** __John Lagorio__                    **Telephone:** __847-816-9173__

**Address:** __P O Box 357, Paradox, CO 81429 / (4600 HWY 90, Paradox)__  **E-mail:** _teamplayer11@sbcglobal.net

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

   **Spring Creek is not free-flowing, as defined in the WSRA, due to two existing diversions historically in place for agricultural and domestic purposes. Therefore Spring Creek does not qualify for WSR designation. Any characterization of Spring Creek as free-flowing in accordance with the WSRA is arbitrary and capricious. Additionally, Spring Creek is dry or nearly dry for the majority of the year, due to the historical diversions.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.** 3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.** **Nearly on half (44%) of the segment is on private property. There are historical and existing water rights that could be adversely affected by designation.**

**John Lagorio**          **RE: Spring Creek**

**5.  Compatibility or incompatibility of designation with current land and water uses and development.**
Current land and water uses are for agricultural and domestic purposes.  Designation is incompatible with these current uses because of the possibility of the taking of vested water rights.  In the event that water rights were taken, current land and water uses would no longer be possible.

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

| ADMINISTRATION |
|:---:|

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**
The ability to manage this segment as a WSR is compromised.   Private property owners like me do not recognize any BLM jurisdiction on our private property.  Efforts by BLM to coordinate with and seek additional support from landowners will be deterred.

**NAME:**                              **SEGMENT:**

BLM_0108138

John Lagorio        RE: Spring Creek

8.  **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**    **This is a short segment with a high percentage of private property involved.  Difficulty in managing the portions on private property makes designation inconsistent with BLM objectives.**

9.  **Issues that might make administering this segment difficult.**
**Uncooperative owners of private property.  Management will not be affected through voluntary partnership with landowners.**

10.  **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**
**Historic and current agricultural zoning and use has historically been adequate to protect the segment's OVR's on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

BLM_0108139

## 13 - WEST FORK TERROR CREEK WSR SUITABILITY COMMENTS

*Received*

*Preliminary Classification:* **Recreational**

AUG 10 2010

WSR Vs. Fish

Your Name: _Gary Harding_   Telephone: (970) 527-6668

Uncompahgre Field Office

Address: _16279 Stevens Gulch Rd. Paonia Co 8428_ E-mail: _____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

## GENERAL

**I. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment does not have the characteristics to qualify for WSR designation. The 1/2 mile wide corridor of the West Terror Creek is heavily used for recreation, agriculture, mining industry, and both national and local utility infrastructure. BLM has determined the segment as eligible for the WSR designation solely based on the stream containing Greenback Cutthroat Trout. The Greenback Cutthroat Trout were not originally native the Terror Creek Drainage. They were stocked 10-20 years ago by CO Division of Wildlife. The Greenback Cutthroat Trout is an introduced species and should not qualify for additional special protections through WSR designation. The fish is already adequately protected by the Threatened and Endangered Species Act.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

The designation will effect the following groups:

Federal: Western Area Power Administration (Rifle-Curecanti Transmission Lines)

Local: Bowie Resources LLC (federal coal reserves), Delta County Cattleman's Association (livestock grazing), Pitkin Mesa Water Company (commercial and domestic water utility), numerous irrigation share owners (Overland, Hole Terror, and Rex Reservoirs), and private property owners within the 1/2 mile wide corridor of West Terror Creek.

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

The BLM states that the ORV is the Greenback Cutthroat Trout. The fish will not be affected either way because it is already protected under the Threatened and Endangered Species Act.

## LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

Within the immediate segment corridor the designation will adversely affect future coal mining activities and cattle grazing. Additionally, if the segment were to be approved by Congress the entire stream corridor would be adversely affected, potentially limiting water rights for local irrigation and utility companies, limiting access to grazing, limiting the ability to administer commercial timber sales on private and public property, reducing historic vehicle access, and limiting the ability to maintain national infrastructure.

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

The designation is not compatible with current or historic land and water uses and development. The segment and associated corridor currently contain 0.46 miles of unsurfaced road. The segment contains a future coal exploration drillholes and water monitoring wells. There are minable coal reserves located within the corridor boundaries. The segment is also actively managed for livestock grazing.

Within the entire stream corridor the above mentioned development will occur but there are other existing surface uses and disturbances. These disturbances are 0.62 miles of the Overland Irrigation Ditch, 0.60 miles of Western Area Power Administration's transmission lines, 1.15 miles of surfaced two-lane county road (Steven's Gulch Road), 0.90 of single-lane county road (Terror Creek Road), and 5.35 miles of native unsurfaced roads. The stream is crossed several times with a small bridge, culvert, and unimproved stream/road crossings. Historically there have been commercial timber sales within the corridor and annual clearing is required to maintain the existing transmission and aqueduct easements.

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**
See line item 5.

The designation will affect future coal mining within the WSR corridor. There will be a significant economic impact to the local community if the coal reserves are not able to be mined. Bowie Resources LLC directly employs 280 people. That does not include all of the consultants, contractors, and material suppliers that benefit economically from the local coal mining industry. It is estimated that for every person directly employed another seven indirectly benefit by providing local services such as hotels, restaurants, grocery stores, etc.

The designation will also affect the local ranchers, timber operators, irrigation users, and utilities.

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**
Threatened and Endangered Species Act adequately protects the ORV. A WSR designation will not provide additional protection. It will only serve to elevate the level of frustration from local users and land owners and increase the inefficiency of federal land managers.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
The designation is not consistent with regional objective and policies in regards to extraction of minable coal reserves. It is also not consist with existing water rights for irrigation and water utility use. The designation is not consistent with the BLM's livestock range policies.

**9. Issues that might make administering this segment difficult.**
The number of users and complexity of their uses will make administering the segment difficult.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**
A significant portion of the West Terror Creek drainage is on private property. These areas have historically seen heavy use from the local community. Efforts from the federal government to restrict these historic uses will see resistance from the local government, private land owners, and historic users.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

The drainage has historically seen and continues to see heavy surface disturbance from coal mine activities, ranching, timber harvests, utility corridors, and irrigation users. Even with the all of these surface disturbances the fish has appeared to be unaffected.

The designation of the section as a WSR will place unnecessary restrictions on adjacent property owners. It will also create a process seen as a federal 'land grab' used to control the uses of adjacent private properties under the guise of protecting a fish that is already protected in federal law.

**See the attached map for the locations existing surface uses.**



BLM_0108142

## 13 - WEST FORK TERROR CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                    **ORVs:** Fish

Your Name: _____ Telephone: _____

Address: _____ E-mail: _____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1. **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

2. **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3. **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4. **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

BLM_0108143

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

BLM_0108144

**James Bode**

| | |
|---|---|
| **From:** | James Rosenthal <canyon@olympus.net> |
| **Sent:** | Monday, August 16, 2010 11:08 PM |
| **To:** | uformp@blm.gov |
| **Cc:** | pmueller@tnc.orc; Robbie.levalley@colostate.edu |
| **Subject:** | Comments re; Wild & Scenic eligibility Uncompahgre Planning Area  Area |

I wish to comment on 2 areas with which I am familiar:

1. San Miguel Hydrological Unit - Naturita Creek
     I am very familiar with this area and consider myself to be a stakeholder because my
home is on Naturita Creek and I own slightly more than .25 mile of the creek. I believe
the area from the BLM boundary UPSTREAM for at least one mile is NOT eligible since that
area is rural residential/agricultural. There are at least 4 resdences ( permanent and/or
seasonal) within that reach of the creek, as well as several irrigation allocations.
Hence, it certainly is not wild. The downstream reach whih passes through BLM lands is,
in my opinion, both wild and scenic and eligible.

2. Lower Gunnison Hydrological Unit - Big Dominguez Creek, both segments, Little Dominguez Creek,
Segment 2

    I am familiar with these areas having hiked and camped there several times. They are
eminently wild and scenic and should be considered prime candidates for W&S
River  status.

Jim Rosenthal
P. O. Box 676
Norwood, Colorado 81423

BLM_0108145

Received

AUG 1 6 2010

**13 - WEST FORK TERROR CREEK WSR SUITABILITY COMMENTS**

ORVs: Fish

Preliminary Classification: Recreational
Your Name/Field Office: _JOHN GRAHT_
Uncompahgre Address: _637 GRAND VIEW St. G. J. CO_
_84636_

Telephone: _970-527-7808_
E-mail: _jgraht@brurresources.com_

Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.

## GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

As listed above, the ORVs for this reach of stream are "fish". I have spent a lot of time in and around this creek, and I have never found any "outstanding" fish. For something to be classified as an "outstanding remarkable value", that value should be outstanding and remarkable. This is not the case for the West Fork of Terror Creek.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

As mentioned above, there are no "outstanding" or "remarkable" fish species that would warrant this reach of stream to be classified as having ORVs. It should be NOT be designated.

## LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

There are mining rights associated with this river corridor that could be adversely affected by Wild and Scenic designation. It is more realistic to say that these rights "will be" adversely affected, rather than "could be".

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

The current land use associated with underground mining will be adversely affected by Wild and Scenic designation of this river corridor.

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

The reasonably foreseeable potential land use (those associated with underground mining) will be adversely affected by this designation.

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

Attempting to designate the 0.47 miles of this creek appears to be nothing more than an estuarine version of a "land grab". Justifying the ORV as "fish" lacks all credibility. Please reserve the Wild and Scenic designation to those rivers that are truly wild and scenic, not just any stream on BLM land.

**NAME:**                                     **SEGMENT:** West Fork of Terror Creek

**James Bode**

| | |
|---|---|
| **From:** | Ruth.Christensen@lpnt.net |
| **Sent:** | Monday, August 16, 2010 5:04 PM |
| **To:** | UFORMP@BLM.GOV |
| **Cc:** | reamsconst@aol.com |
| **Subject:** | Emailing: Naturita Creek WSR Suitability Comments |
| **Attachments:** | Naturita Creek WSR Suitability Comments.xps |

The message is ready to be sent with the following file or link attachments:

Naturita Creek WSR Suitability Comments

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

1

## 16 - NATURITA CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                    *ORVs:* **Fish**

**Your Name:**   Ruth Christensen                **Telephone:**              435-790-8829

**Address:**   51 E. 1500 N. Vernal, UT 84078        **E-mail:**      nrc@ubtanet.com

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

1.  **Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

*NOTE: Preliminary Classification previously listed as : Scenic.  Now noted as: Recreational. No data to support change of classification has been listed.  (See Preliminary Classification as noted above).*

2.  **Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

3.  **Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

4.  **Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

*Naturita Creek is predominately privately owned.  Sixty percent of the 24.97 mile river segment identified is owned privately.  Designation as part of NWSR would affect area use, including incompatible uses for the public on private lands.  This designation would potentially create serious socioeconomic impact to the private land owner.  It could curtail reasonably foreseeable potential uses of the land and related waters if the area were included in the NWSRS.  Historical existing rights such as adjucated water rights, mineral extraction rights such as gravel pits, oil, gas and coal, rights of the private land owner could be adversely affected.*

5.  **Compatibility or incompatibility of designation with current land and water uses and development.**

*Scenic easements through private property would encumber the existing regular use of the private land owners such as grazing, irrigating, farming and hunting.*

**NAME:** RUTH CHRISTENSEN                **SEGMENT:  NATURITA CREEK**

6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.

| ADMINISTRATION |
| --- |

7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.

*The majority of Naturita Creek has been managed privately by the existing land owners for many many years and has been found to be in good condition with the stated quality of Scenic and the value of Fish well maintained by the private land owner.  Government management and oversight through WSR designation is not necessary to protect the stated values as has been demonstrated historically by its present condition.  Ongoing management and protection by the private land owner is preferable to intervening agencies with potentially conflicting agendas.*

8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.

9.  Issues that might make administering this segment difficult.

*Significant potential for jurisdictional disputes over administrative roles and or presence in an area predominately privately owned exist.*

10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY - None |
| --- |

NAME: RUTH CHRISTENSEN                 SEGMENT:  NATURITA CREEK

BLM_0108150

## James Bode

| | |
|---|---|
| **From:** | Reams Construction Co. <reamsconst@aol.com> |
| **Sent:** | Monday, August 16, 2010 4:54 PM |
| **To:** | UFORMP@blm.gov |
| **Subject:** | Naturita Creek Segment Comments |
| **Attachments:** | WSR Segment Suitability Public Comment Form 072610 Web.doc |

Earl Reams Reams Ranch

Reams Construction Co.
970.865.2886
Fax 970.865.2880

**PLEASE NOTE:**

We are discontinuing use of this email account.  Please contact us via the following:
john@reams-construction.com
jnelson@reams-construction.com
melissa@reams-construction.com
mnarramore@reams-construction.com
dsmuin@reams-construction.com
dianna@reams-construction.com

1

protect this segment's **ORVs** on nonfederal lands.

---

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

---

## 16 - NATURITA CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:*  Scenic                                                                           *ORVs:*  Fish

**Your Name:** __Earl Reams Reams Ranch_____**Telephone:** __(970) 865-2886__

**Address:** _____P.O. Box 2 Naturita, CO 81422_____**Email:** _reamsconst@aol.com_____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

**GENERAL**

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**  Power lines, natural gas lines & road easements. Industrial water rights and agricultural water rights

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**NAME:**        **EARL REAMS**                                                    **SEGMENT:  NATURITA CREEK**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.** Reams Ranch disagrees with the BLM findings and doesn't think any ORV's exist

| LAND OWNERSHIP AND USES |
|:---:|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.** 60% private, unsure of percent of mineral ownership. hunting rights if property is condemned for public access.  Also gates left open livestock let out of pastures.

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.** Potential mineral development such as oil, gas gravel, coal ect would be affected by designation

NAME:  Earl Reams                                    SEGMENT:  Naturita Creek

## ADMINISTRATION

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**   Little to no access to BLM lands on this segment except through private lands therefore very difficult and costly to manage.

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9.  Issues that might make administering this segment difficult.**   Predominately privately owned.  Easy access only on private property, all BLM lands are hard to access.  Total length is 60% private.  Condemnation to acquire scenic easement to give the public access would open up the potential of trespass and require law enforcement action.

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

**Mistakes such as this comment form (classification and ORV) requested hard copy materials on draft**

**NAME:**        **EARL REAMS**                                        **SEGMENT:  NATURITA CREEK**

BLM_0108154

**James Bode**

| | |
|---|---|
| **From:** | Susan Starcevich <Starcevi@wapa.gov> |
| **Sent:** | Monday, August 16, 2010 1:31 PM |
| **To:** | uformp@blm.gov |
| **Subject:** | Uncompahgre Resource Management Plan |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Western Area Power Administration has provided comments on the subject planning effort by the BLM Uncompahgre Field Office.  According to the latest "Dear Interested Party" letter dated July 13, 2010, BLM is now soliciting comments on river designations within the area addressed by the RMP.

Western has no comments concerning the waterways that travel across public lands within the Uncompahgre planning area and the portion of the Dominguez-Escalante National Conservation Area within the UFO boundary.

Thank you for the opportunity to review the current proposal.

Sincerely,

Susan Starcevich
Realty/Land Management
Western Area Power Administration
12155 W. Alameda Pkwy
Lakewood, CO 80228
P: 720-962-7275
F: 720-962-7269
starcevi@wapa.gov

BLM_0108155

Received

AUG 1 6 2010

Uncompahgre Field Office

# COMMENTING ON WILD AND SCENIC RIVER SUITABILITY

Thank you for your interest in providing comments regarding Wild and Scenic River suitability for the BLM Uncompahgre planning effort.

## COMPLETING THE RIVER SEGMENT COMMENT FORM

Comments may be typed or handwritten. Please use the segment comment form available at: www.blm.gov/co/st/en/fo/ufo/wild_and_scenic_river.html

### Submit written comments by August 16, 2010:

- Email completed forms to: UFORMP@BLM.GOV
- Or mail completed forms to: BLM UFO, Attention: RMP Revision, 2465 South Townsend Avenue, Montrose, Colorado 81401

If using the Microsoft Word version, print the form for mailing or save it as a new document in your local directory before completing.

If using the Adobe PDF form, print the form for mailing.

For all forms, please:

- Print your name and phone number or email address on each page you complete.
- Address only those eligible river segments about which you have specific knowledge or concerns.
- For each segment, address only those Wild and Scenic suitability criteria about which you have specific knowledge or concerns.
- Be factual and as specific as possible regarding issues, locations, dates, and times.
- Be thorough but concise. Use additional space if necessary to adequately state your point.

## PROVIDING EFFECTIVE COMMENTS

### Substantive comments do one or more of the following:

- Raise issues the BLM has not considered and reinforce issues the BLM has already identified
- Present reasonable alternatives
- Present information that can be used when developing alternatives or considering the impacts of alternatives

## TYPES OF COMMENTS TO AVOID

### Comments that are not substantive include:

- Comments in favor of or against an action without providing a rationale (such as "I don't like...").
- Comments that simply agree or disagree with BLM policy.
- Comments without justification or supporting data (such as "allow more grazing").
- Comments in the form of vague, open-ended questions.

BLM_0108156

# TABLE OF CONTENTS

Completing the River Segment Comment Form

Providing Effective Comments

Types of Comments to Avoid

1 - Cottonwood Creek WSR Suitability

2 - Dry Fork Escalante Creek, Segment 2 WSR Suitability

3 - Escalante Creek, Segment 1 WSR Suitability

4 - Escalante Creek, Segment 2 WSR Suitability

5 - Gunnison River, Segment 2 WSR Suitability

6 - Gunnison River, Segment 3 WSR Suitability

7 - Monitor Creek WSR Suitability

8 - Potter Creek WSR Suitability

9 - Rose Creek WSR Suitability

10 - Roubideau Creek, Segment 1 WSR Suitability

11 - Roubideau Creek, Segment 2 WSR Suitability

12 - Deep Creek WSR Suitability

13 - West Fork Terror Creek WSR Suitability

14 - Beaver Creek WSR Suitability

15 - Dry Creek WSR Suitability

16 - Naturita Creek WSR Suitability

17 - Saltado Creek WSR Suitability

18 - San Miguel River, Segment 1 WSR Suitability

19 - San Miguel River, Segment 2 WSR Suitability Comments

20 - San Miguel River, Segment 3 WSR Suitability

21 - San Miguel River, Segment 5 WSR Suitability

22 - San Miguel River, Segment 6 WSR Suitability

23 - Tabeguache Creek, Segment 1 WSR Suitability

24 - Tabeguache Creek, Segment 2 WSR Suitability

25 - Lower Dolores River WSR Suitability

26 - North Fork Mesa Creek WSR Suitability

27 - Dolores River, Segment 2 WSR Suitability

28 - Ice Lake Creek, Segment 2 WSR Suitability

29 - La Sal Creek, Segment 1 WSR Suitability

30 - La Sal Creek, Segment 2 WSR Suitability

31 - La Sal Creek, Segment 3 WSR Suitability

32 - Lion Creek, Segment 2 WSR Suitability

33 - Spring Creek WSR Suitability

*34 - Dolores River, Segment 1 WSR Suitability

**35 - Big Dominguez Creek, Segment 1 WSR Suitability

**36 - Big Dominguez Creek, Segment 2 WSR Suitability

**37 - Little Dominguez Creek, Segment 1 WSR Suitability

**38 - Little Dominguez Creek, Segment 2 WSR Suitability

**39 - Gunnison River, Segment 1 WSR Suitability

*Evaluated for eligibility by the San Juan Public Lands Center

**Evaluated for eligibility by the Grand Junction Field Office

BLM_0108157

## 15 - DRY CREEK WSR SUITABILITY COMMENTS

**Preliminary Classification:** Recreational

**ORVs:** Vegetation

**Your Name:** __Steve White, for Montrose County BOCC__ **Telephone:** ___970-252-4550___

**Address:** ___317 S. 2nd Street, Montrose, CO, 81401___ **E-mail:** swhite@montrosecounty.net_

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment may not qualify for designation because the river area has been historically used for numerous commercial activities including grazing, fishing and agricultural uses.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

---

## ADMINISTRATION
---

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations.  This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult.  This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY
---

NAME:                                    SEGMENT:

## 16 - NATURITA CREEK WSR SUITABILITY COMMENTS

**Preliminary Classification:** Recreational

**ORVs:** Vegetation

**Your Name:** Steve White, for Montrose County BOCC

**Telephone:** 970-252-4550

**Address:** 317 S. 2nd Street, Montrose, CO 81401

**E-mail:** swhite@montrosecounty.net

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment might not qualify because the river area has been historically used for numerous commercial activities including grazing, fishing and agricultural uses.

There are a number of water diversions within this segment

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

Designation would not be necessary in this area because this area is not subject to intense development.

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

Designation of this area would not be compatible because there are numerous private land holdings in this segment, which fragments the jurisdictions.

BLM_0108160

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

There are areas in this segment that have potential for off stream water storage that would be diminished through designation.

---

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

---

**NAME:**                                    **SEGMENT:**

BLM_0108161

## 17 - SALTADO CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                    ORVs: Vegetation

Your Name: __Steve White, for Montrose County BOCC__        Telephone: __970-252-4550__

Address: ___317 S. 2nd Street, Montrose, CO 81401___        E-mail: swhite@montrosecounty.net_

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

There are a number of water rights that have been secured in this segmented that should not qualify this segment for designation, including the "San Miguel River Project".

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

The County has very little concerns regarding this segment above Saltado Creek. There should be another segment created at the confluence of Saltado Creek and the San Miguel River.

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

This area would be better managed if the division of this segment were at the Saltado Creek confluence.

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                    SEGMENT:

# 18 - SAN MIGUEL RIVER, SEGMENT I WSR SUITABILITY COMMENTS

**ORVs:** Vegetation

*Preliminary Classification:* **Recreational**

Your Name: __Steve White for Montrose County BOCC__       Telephone: __970-252-4550__

Address: _____317 S. 2nd Street, Montrose, CO 81401_____       E-mail: swhite@montrosecounty.net_____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

## GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment might not qualify because the river area has been historically used for numerous commercial activities including grazing, fishing, kayaking and rafting.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

## LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

---

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                    SEGMENT:

## 19 - SAN MIGUEL RIVER, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                    ORVs: Vegetation

Your Name: __Steve White, for Montrose County BOCC__      Telephone: __970-252-4550__

Address: _____317 S. 2nd Street, Montrose, CO 81401_____ E-mail: swhite@montrosecounty.net_____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

## GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment might not qualify because the river area has been historically used for numerous commercial activities including grazing, fishing, kayaking and rafting.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Upstream, off channel storage may be necessary, and designation would restrict local management of the river water.

Designation may also denigrate the river area because of added public awareness of the area which would increase the use of human activities.

Designation may reduce the ability to mitigate vegetative diseases.

Designation would restrict the ability to access the area with equipment to fight wildfire.  This would be a detriment to the public health and safety.

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

The scenic narrative in this section indicates that this river segment is rare is in the region of comparison.  This type of river environment is not rare and is similar to numerous areas in the region and Colorado.

## LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

Designation may limit future development of the mining activities in the area, including access to these natural resources which are a benefit to the future of our energy economy.

Water rights may be negatively affected, including specific conditional use rights.

BLM_0108166

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

Designation of this segment may reduce possible growth in the West End of Montrose County.

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

Designation would limit the opportunity of off-river water storage, and existing uses and benefits, including grazing.

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

Local Land Use Regulations are adequate to maintain and protect the area, with limited development potential due to a lack of a public water system and public roadways.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                              SEGMENT:

BLM_0108167

There is a discrepancy on the form. The form indicates that the Preliminary Classification is Recreational, but the plan shows the area as wild. This issue needs to be clarified on this section as well as others.

## 20 - SAN MIGUEL RIVER, SEGMENT 3 WSR SUITABILITY COMMENTS

*ORVs:* **Vegetation**

*Preliminary Classification:* **Recreational**

Your Name: __Steve White, for Montrose County BOCC__          Telephone: __970-252-4550__

Address: _____317 S. 2nd Street, Montrose, CO 81401_____    E-mail: swhite@montrosecounty.net_____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

Designation may affect current and future use and possible expansion of the existing CC Ditch.

Designation would also restrict the opportunity to add a diversion to serve the future development needs of the mailbox park area.

This area has been historically used for grazing livestock and similar agricultural uses.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Upstream, off channel storage may be necessary, and designation would restrict local management of the river water.

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

Designation may limit future development of the mining activities in the area, including access to these natural resources which are a benefit to the future of our energy economy.

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

Designation would limit the opportunity of off-river water storage, and existing uses and benefits, including grazing.

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

Local Land Use Regulations are adequate to maintain and protect the area, with limited development potential due to a lack of a public water system and public roadways.

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                          SEGMENT:

BLM_0108169

## 21 - SAN MIGUEL RIVER, SEGMENT 5 WSR SUITABILITY COMMENTS

*ORVs:* Vegetation

*Preliminary Classification:* Recreational

**Your Name:** Steve White for Montrose County BOCC     **Telephone:** 970-252-4550

**Address:** 317 S 2nd Street, Montrose, CO 81401     **E-mail:** swhite@montrosecounty.net

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

Designation may affect current and future use and existing water rights including the "Club Rights".

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

The designation may have a negative effect on current and future use of the historic activities in the area. The county water rights including the "Club Rights" need to be protected, as well as existing in-stream flows in this segment.

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

Designation may limit future development of the mining activities in the area, including access to these natural resources which are a benefit to the future of our energy economy.

BLM_0108170

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

Designation would limit the opportunity of off-river water storage, and existing uses and benefits, including grazing.

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

8. **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

9. **Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

10. **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                          SEGMENT:

The BLM should consider creating a segment that encompasses the area in which the Hanging Flume is located to allow better management this item of historic significance.

## 22 - SAN MIGUEL RIVER, SEGMENT 6 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                    *ORVs:* Vegetation

Your Name: __Steve White for Montrose County BOCC__        Telephone: __970-252-4550_____

Address: _____317 S. 2nd Street, Montrose, CO 81401_____        E-mail: swhite@montrosecounty.net_____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment might not qualify because the river area has been historically used for numerous commercial activities including grazing, fishing, and mining.

The report did not address the historic issues associated with the Uravan clean-up due to mining.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Designation may have a negative effect on mining and recreational opportunities.

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

Need to maintain public access to area, specifically for emergency connections to Paradox Area.

The County may need to widen roadway in this area for above noted public access.

The management of this segment would be better served with a segment break at Tabeguach Creek. Management above Tabehuach is more consistent hydrologicaly. After the confluence, different management tools would be used along the Uravan clean-up site.

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

---

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

County owns land in area (former ball park) upstream from Uravan site that will be developed for recreation and tourism use.

This area has been historically used for mineral extraction, with numerous mining claims in the area.

Designation may negatively affect the ability to mine unique minerals available in this area that have been of great economic and energy needs for the County, State and Nation.

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

The historic Uravan site will be managed by the Department of Energy for perpetuity.

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                                     SEGMENT:

## 23 - TABEGUACHE CREEK, SEGMENT I WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational

*ORVs:* Vegetation

**Your Name:** Steven White for Montrose BOCC    **Telephone:** 970-252-4550

**Address:** 317 S. 2ⁿᵈ Street, Montrose, CO 81401    **E-mail:** swhite@montrosecounty.net

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment might not qualify because the river area has been historically used for numerous commercial activities including mining and natural gas extraction.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Designation would restrict the ability to access the area with equipment to fight wildfire. This would be a detriment to the public health and safety.

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

BLM_0108174

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                        SEGMENT:

## 24 - TABEGUACHE CREEK, SEGMENT 2 WSR SUITABILITY COMMENTS

*ORVs:* Vegetation

*Preliminary Classification:* Recreational

Your Name: __Steve White for Montrose County BOCC__          Telephone: __970-252-4550__

Address: _____317 S. 2nd Street, Montrose, CO_____          E-mail: swhite@montrosecounty.net_____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**I. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment might not qualify because the river area has been historically used for numerous commercial activities including grazing, fishing.

There many privately held lands in this segment and County roads that may need to be improved in the future.

This segment has high potential for mining/gas development that would be restricted through designation.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

There is a number of domestic water well in the area that could be used in the future for development that may be negatively affected by designation.

Grazing has been an historic use in this segment that may be restricted through designation.

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                          SEGMENT:

## 25 - LOWER DOLORES RIVER WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                                  *ORVs:* Vegetation

**Your Name:** __Steve White for Montrose County BOCC__        **Telephone:** __970-252-4550_____

**Address:** _____317 S. 2ⁿᵈ Street, Montrose, CO 81401_____ **E-mail:** swhite@montrosecounty.net_

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment might not qualify because the river area has been historically used for numerous commercial activities including grazing, fishing, kayaking and rafting.

There are water diversions along this segment that may be affected by designation.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Designation may reduce the ability to mitigate vegetative diseases, and non-native plants. No comments were made in the report regarding the Tamarisk issues.

Designation would restrict the ability to access the area with equipment to fight wildfire. This would be a detriment to the public health and safety.

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

Many of the outstanding values in the area are associated with recreational opportunities that may be negatively affected by designation.

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

5. **Compatibility or incompatibility of designation with current land and water uses and development.**

6. **Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

---

## ADMINISTRATION

7. **Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

8. **Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

9. **Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

10. **Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                    SEGMENT:

## 26 - NORTH FORK MESA CREEK WSR SUITABILITY COMMENTS

ORVs: Vegetation

*Preliminary Classification:* **Recreational**

**Your Name:** Steve White for Montrose County BOCC _____ **Telephone:** 970-252-4550 _____

**Address:** _____ 317 S. 2ⁿᵈ Street, Montrose CO 81410 _____ **E-mail:** swhite@montrosecounty.net _____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

BLM_0108180

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

---

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

Local Land Use Regulations are adequate to maintain and protect the area, with limited development potential due to a lack of a public water system and public roadways.

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                    SEGMENT:

## 27 - DOLORES RIVER, SEGMENT 2 WSR SUITABILITY COMMENTS

**ORVs:** Vegetation

*Preliminary Classification:* Recreational

**Your Name:** __Steve White for Montrose County BOCC_____   **Telephone:** __970-252-4550_____

**Address:** _____317 S. 2nd Street, Montrose, CO 81401_____   **E-mail:** swhite@montrosecounty.net_____

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment might not qualify because the river area has been historically used for numerous commercial activities including grazing, fishing, kayaking and rafting.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Designation may reduce the ability to mitigate vegetative diseases.

Designation would restrict the ability to access the area with equipment to fight wildfire. This would be a detriment to the public health and safety.

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

BLM_0108182

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

NAME:                                                    SEGMENT:

## 34 - DOLORES RIVER, SEGMENT I WSR SUITABILITY COMMENTS

**ORVs:** Vegetation

*Preliminary Classification:* Recreational

Your Name:   Steve White for Montrose County BOCC          Telephone:   970-252-4550

Address:        317 S. 2nd Street, Montrose, CO 81401          E-mail: swhite@montrosecounty.net

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

### GENERAL

**I. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

Designation may reduce the ability to mitigate vegetative diseases.

Designation would restrict the ability to access the area with equipment to fight wildfire. This would be a detriment to the public health and safety.

Montrose County is of the opinion that designation of this segment is not in the best interest of the citizens of Montrose County.

The Montrose County Board of County Commissioner's has adopted a resolution opposing the Wild and Scenic Designation (attached).

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

### LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

BLM_0108184

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

---

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**

This segment has adequate protection and ability to manage the area through existing Federal, State, and Local regulations. This would include the BLM Resource Management Plan including the ACEC designation, and County Land Use Codes.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

Designation would create fragmented management systems, which will make administering the area more difficult. This fragmentation may also increase the funding needed to implement the designation.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

---

## ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

**NAME:**                                   **SEGMENT:**

Resolution No. 10-_____

### RESOLUTION
### MONTROSE COUNTY COLORADO
### BOARD OF COUNTY COMMISSIONERS

### IN OPPOSITION TO
### DESIGNATION OF PORTIONS OF CERTAIN RIVERS IN MONTROSE COUNTY
### UNDER THE FEDERAL WILD AND SCENIC RIVERS ACT

**WHEREAS**, Montrose County Colorado has numerous rivers and their tributaries flowing through it, including the San Miguel and Dolores Rivers; and

**WHEREAS,** the Federal Bureau of Land Management ("BLM") under the Department of the Interior has declared certain portions of the San Miguel and Dolores Rivers, and some of their tributaries as eligible for inclusion under the Federal Wild and Scenic Rivers Act, 16 USC 1271-1287 as amended (the "Act"); and

**WHEREAS,** the Montrose County Board of Commissioners has reviewed the report produced by the BLM regarding inclusion of those river portions as suitable for designation under the Act; and

**WHEREAS,** after consideration of the advantages and disadvantages of such designation, the Montrose County Board of County Commissioners is of the opinion that it is not in the best interests of the citizens of Montrose County for the portions of these rivers and their tributaries to be designated for inclusion under the Act for the reasons set forth below in this Resolution; and

**WHEREAS,** the Board of County Commissioners do not consider the protections set forth the under the Act needed for these rivers and their tributaries because, among other reasons:

The rivers and their tributaries have adequate protection under state and federal laws already implemented, including BLM regulations, as well as Montrose County land use regulations.

The inclusion of the designated portions of these rivers and their tributaries would result in a fragmented system of multiple layers and levels of government agency regulation, which would make it difficult for the land owners under private ownership in the area.

The private land owners in the area of proposed designation have a vested interest in being good environmental stewards of the rivers and their banks and borders, and many have a long history as owners of the land.

1

BLM_0108186

The County Commissioners, on behalf of the residents of Montrose County and those traveling through it, have a vested interest in being good environmental stewards of the rivers, their tributaries and the banks and boarders of those rivers and tributaries.

The need to consider responsible energy and mineral development in the area is important, not only to the citizens of Montrose County, but to the United States as a whole.

The health, safety and welfare of the citizens of Montrose County may be negatively impacted for numerous reasons, including the need to control water flow to prevent flooding; the need to control wildfires in the area and the inability to properly route county traffic flow that would occur as a result of such designations. The entire river corridor in considered the flood plain.

The economic health of Montrose County contributed to by, among others, agriculture and land use, stands to be negatively impacted at a time when many of the citizens of Montrose County are struggling economically.

**NOW THEFORE, BE IT HEREBY RESOLVED,** that the Montrose County Board of County Commissioners, for reasons set forth above, does oppose the designation and inclusion under the federal Wild and Scenic Rivers Act, of certain portions of the San Miguel and Dolores Rivers and certain tributaries of those rivers, all as located in Montrose County Colorado, as specified in the Final Wild and Scenic River Eligibility Report for the BLM Uncompahgre Planning Area published June 2010.

This Resolution No. 10_____ shall be effective upon signature done the _____ day of _____, 2010.

**ADOPTED THIS _____ DAY OF _____, 2010 BY MAJORITY VOTE OF THE MONTROSE COUNTY BOARD OF COUNTY COMMISSIONERS.**

ATTEST:                                    **MONTROSE COUNTY**
                                           **BOARD OF COUNTY COMMISSIONERS**

_____          _____
Marie Simons, Deputy Clerk of the Board   Ron Henderson, Chair

                                          _____
                                          David White, Vice Chair

                                          _____
                                          Gary Ellis, Commissioner

2

**AUG 1 6 2010**   **13 - WEST FORK TERROR CREEK WSR SUITABILITY COMMENTS**

Preliminary Classification: Recreational

ORVs: Fish

Uncompahgre Field Office   William Bear          Telephone:   970-929-5257

Address:   40 Cedar Drive  Paonia, Colorado  81428          E-mail:          bbear@bowieresources.com

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**I.   Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.**

This segment does not have the characteristics to qualify for WSR designation.  The 1/2 mile wide corridor of the West Terror Creek is heavily used for recreation, agriculture, mining industry, and both national and local utility infrastructure. BLM has determined the segment as eligible for the WSR designation solely based on the stream containing Greenback Cutthroat Trout.

The Greenback Cutthroat Trout were not originally native the Terror Creek Drainage.  They were stocked 10-20 years ago by CO Division of Wildlife.  The Greenback Cutthroat Trout is an introduced species and should not qualify for additional special protections through WSR designation.  The fish is already adequately protected by the Threatened and Endangered Species Act.   This water way is not a national or regional producer of these fish.  If not for stocking they would not be present.

The habitat for the Greenback trout is sufficient to maintain the species but given the very low seasonal flows the fish have not propagated outside the very specific portion of the creek and the fish fail to reach any significant size.

Further the West Fork of Terror Creek does not offer any recreational value that is unique or exemplary which provide recreational opportunities or have the potential to provide recreational opportunities throughout or beyond the region.  The creek is bounded by very brushy shores.  As one that has fished this creek I have found the brush is so thick fishing is miserable.  And the only place fishing is possible is on private land.

There are no trails along side the creek to enjoy hiking.  In short there this stream offers no river related recreational opportunities.

The creek also transects valid existing mineral leases.  These leases include both coal and oil and gas.  To manage this creek as WSR could and would impede development of these valid existing rights.

Significant portions of the creek cross private property where public access is precluded.  These private property owners would not be partners in preserving the WSR value of the creek.

The West Fork of Terror Creek does not qualify as a river.  The definition of a river contains the phrase "significant flow" This creek has very little flow in the summer and fall and does not qualify as a river.

**2.  Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**
The designation will effect  the following groups:
Federal:  Western Area Power Administration (Rifle-Curecanti Transmission Lines)
Local:  Bowie Resources LLC (federal coal reserves), Delta County Cattleman's Association (livestock grazing), Pitkin Mesa Water Company (commercial and domestic water utility), numerous irrigation share owners (Overland, Holy Terror, and Rex Reservoirs), and private property owners within the 1/2 mile wide corridor of West Terror Creek.   Gunnison Energy

**3.  Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**
The BLM states that the ORV is the Greenback Cutthroat Trout.  The fish will not be affected either way because it is already protected under the Threatened and Endangered Species Act.

BLM_0108188

## LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

Within the immediate segment corridor the designation will adversely affect future coal mining activities and cattle grazing. Additionally, if the segment were to be approved by Congress the entire stream corridor would be adversely affected, potentially limiting water rights for local irrigation and utility companies, limiting access to grazing, limiting the ability to administer commercial timber sales on private and public property, reducing historic vehicle access, and limiting the ability to maintain national infrastructure.

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

The designation is not compatible with current or historic land and water uses and development. The segment and associated corridor currently contain 0.46 miles of unsurfaced road. The segment contains a future coal exploration drillholes and water monitoring wells. There are minable coal reserves located within the corridor boundaries. The segment is also actively managed for livestock grazing.

Within the entire stream corridor the above mentioned development will occur but there are other existing surface uses and disturbances. These disturbances are 0.62 miles of the Overland Irrigation Ditch, 0.60 miles of Western Area Power Administration's transmission lines, 1.15 miles of surfaced two-lane county road (Steven's Gulch Road), 0.90 of single-lane county road (Terror Creek Road), and 5.35 miles of native unsurfaced roads. The stream is crossed several times with a small bridge, culvert, and unimproved stream/road crossings. Historically there have been commercial timber sales within the corridor and annual clearing is required to maintain the existing transmission and aqueduct easements.

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

See line item 5.

The designation will affect future coal mining within the WSR corridor. There will be a significant economic impact to the local community if the coal reserves are not able to be mined. Bowie Resources LLC directly employs 280 people. That does not Include all of the consultants, contractors, and material suppliers that benefit economically from the local coal mining industry. It is estimated that for every person directly employed another seven indirectly benefit by providing local services such as hotels, restaurants, grocery stores, etc.

The designation will also affect the local ranchers, timber operators, irrigation users, and utilities.

## ADMINISTRATION

BLM_0108189

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.**
Threatened and Endangered Species Act adequately protects the ORV. A WSR designation will not provide additional protection. It will only serve to elevate the level of frustration from local users and land owners and increase the inefficiency of federal land managers.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**
The designation is not consistent with regional objective and policies in regards to extraction of minable coal reserves. It is also not consist with existing water rights for irrigation and water utility use. The designation is not consistent with the BLM's livestock range policies.

**9. Issues that might make administering this segment difficult.**
The number of users and complexity of their uses will make administering the segment difficult.

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**
A significant portion of the West Terror Creek drainage is on private property. These areas have historically seen heavy use from the local community. Efforts from the federal government to restrict these historic uses will see resistance from the local government, private land owners, and historic users.

---

### ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY

The drainage has historically seen and continues to see heavy surface disturbance from coal mine activities, ranching, timber harvests, utility corridors, and irrigation users. Even with the all of these surface disturbances the fish has appeared to be unaffected.

The designation of the section as a WSR will place unnecessary restrictions on adjacent property owners. It will also create a process seen as a federal 'land grab' used to control the uses of adjacent private properties under the guise of protecting a fish that is already protected in federal law.

To designate this creek as WSR has the potential to do harm to an already struggling economy in Delta county. The designation of WSR will in no way add to the economy.

**See the attached map for the locations existing surface uses.**



BLM_0108191

**James Bode**

| | |
|---|---|
| **From:** | Barbara Hawke <barbara_hawke@tws.org> |
| **Sent:** | Tuesday, August 17, 2010 10:27 PM |
| **To:** | UFORMP@BLM.GOV |
| **Cc:** | Barbara_Sharrow@blm.gov; bruce_krickbaum@blm.gov; Steve Smith; Amber Kelley; Aaron Kimple; Amy Montano; hilary@sheepmountainalliance.org; kate@cecenviro.org |
| **Subject:** | Comments regarding Wild and Scenic Suitability |
| **Attachments:** | ufo ws suitability comments Dolores Coalition final.doc; WSR Segment Suitability Public Comment Form Dolores Coalition.doc |

On behalf of the Dolores River Coalition, San Juan Citizens' Alliance, Sheep Mountain Alliance, Western Colorado Congress, The Wilderness Society and Colorado Environmental Coalition, please accept our comments regarding Wild and Scenic Suitability for the Dolores River Basin, including San Miguel River and tributaries. Thank you for your consideration.

Barbara Hawke
Dolores River Basin Wildlands Coordinator
The Wilderness Society
Montrose, Colorado
970-596-6697 (cell)

BLM_0108192

**Dolores River Coalition**
**San Juan Citizens Alliance**
**The Wilderness Society**
**Colorado Environmental Coalition**
**Sheep Mountain Alliance**
**Western Colorado Congress**

**August 17, 2010**

Bureau of Land Management
Uncompahgre Field Office
Attention: RMP Revision
 2465 South Townsend Avenue
Montrose, Colorado  81401

Sent via electronic mail to:

UFORMP@BLM.GOV

**Re: Wild and Scenic Rivers Suitability Determination – Dolores River Basin,
including San Miguel and tributaries**

To Whom It May Concern:

The Dolores River Coalition is a broad coalition of twenty conservation and recreation
organizations working to preserve the precious resources and values of the Dolores River
Basin. We appreciate the efforts of the Bureau of Land Management (BLM)
Uncompahgre Field Office (UFO) to carefully assess the irreplaceable values of the
Dolores and San Miguel Rivers and to identify administrative protections that can
preserve these values for future generations. The Field Office's helpful efforts are evident
in the draft report's detailed background data, maps, and initial analyses of values in the
streams considered.

We provide the following recommendations regarding Wild and Scenic Suitability, and
comments regarding the Final Wild and Scenic Eligibility Report:

Scope of our Comments
We have considered the issues and alternatives relevant to the Dolores and San Miguel
river basins and tributaries, the planning area of concern to our coalition. We did not
consider issues and alternatives related to the Lower Gunnison watershed.

Broad Support for Preservation
One of the considerations for determinations of Suitability is the presence of community
support for long-term preservation and careful management of special stream segments.
The Dolores River Coalition represents twenty organizations, represented by individuals

BLM_0108193

that live and work on the western slope, within or near to the Dolores River Basin. In addition, our coalition has worked extensively to cooperate with private landowners, recreation groups, water users and others in the planning area to develop a cooperative vision for preservation of the Dolores River Basin. This extensive involvement in Dolores River preservation efforts reflects both the importance of the Dolores River Basin, and the breadth of support for preservation of river resources.

Significance of the Dolores River Basin
The Dolores River and its tributaries are the evocative, awe-inspiring lifeblood for many human and wildlife communities in far western Colorado. In the face of accelerating change in the west, we must preserve the Dolores River Basin's unique geology, profoundly moving scenery, diverse recreational opportunities, and precious water resources for people, wildlife, and healthy natural systems. Please reference our scoping comments of March 29, 2010 (attached) for additional information regarding the importance of the Dolores River Basin and need to protect these resources through findings of Suitability.

Coordinated review, planning, and protection
Eligibility determinations for streams flowing through the Uncompahgre Field Office (UFO) Planning Area *and* through adjacent federal land planning areas should provide protective status equal to or stronger than that provided in adjacent planning areas. That is, any UFO streams with segments found suitable in adjacent areas should also be found suitable in the UFO area. Any stream segments not found suitable in adjacent areas should still be considered for suitability in the UFO area.

This is especially important in the protection and enhancement of riparian ecosystems that span the federal land management areas and offices, as decisions in one portion of a stream can have significant impacts on downsteam portions of the same stream. As the Dolores River travels primarily through three BLM Field Offices, and then enters the critically important Colorado River, it is essential to lay a foundation of maximum administrative protections for stream segments within the UFO.

Correspondingly, all tributaries to the Dolores River contributing significant volumes of streamflow or seasonally unique or important streamflow should be determined suitable and managed to protect the tributaries' outstandingly remarkable values and the streamflows related to ORVs, both in the tributaries themselves and in the Dolores River downstream.

San Miguel River
The San Miguel River is not only a profoundly important component of the Dolores River Basin and of Dolores River streamflows, it is also uniquely important in its own right. In addition to the San Miguel's inherent stream-related outstandingly remarkable features, the river also provides an important contribution to stream flows in the Dolores River downstream of the confluence of the two rivers. With imperiled native fish populations identified as surviving just below the confluence, San Miguel flows reflecting a natural hydrograph (to the greatest extent possible in the context of existing

water rights) need to be protected. Suitability determination for the full length of the San Miguel through the UFO planning area, and for significant tributaries to the river, is a key component of protection for the river itself and for unique natural features downstream.

The San Miguel provides a multitude of recreation opportunities, and holds great potential for local economic development centering around intact natural systems, beautiful scenery, and a panoply of historic and cultural resources whose enhanced interpretation could increase heritage tourism. We will retain these tourism and recreation opportunities for local economies only if we preserve the unique ecosystems, natural stream function and flows, and unimpaired scenery of the San Miguel and key tributaries.

The ecological significance of the San Miguel is reflected in its status within other highly-regarded conservation plans. For example, The Nature Conservancy identified the San Miguel River area as a Portfolio Conservation Area with a large number – 32 – of conservation targets. The conservation targets include six aquatic systems, three birds, one fish, one mammal, eight plants, three plant communities, and ten terrestrial systems. [1] The extent and diversity of these conservation targets reflects the significant biodiversity and Outstandingly Remarkable Values supported by the San Miguel River system. The significance of the San Miguel is further reflected in the considerable investment made by conservation organizations and corporations to create preserves and trails along the San Miguel, and to eradicate tamarisk and other nonnative vegetation in the basin. This considerable private investment in the health of the San Miguel river system should be preserved through the protections afforded by findings of Suitability for the San Miguel and key tributaries.

**<u>Comments on individual stream segments:</u>**

<u>Roc Creek</u>
Roc Creek is an important tributary to the Dolores, harboring significant ecological and cultural resources. This stream segment should be found Eligible and Suitable.

Current eligibility status for Roc Creek segments in the Manti-La Sal National Forest management plan warrant equal or stronger status and protection for segments in the UFO planning area, where Roc Creek traverses unique and sensitive areas with wilderness characteristics (both as identified by citizen inventory and by the BLM's own wilderness characteristics review) and other unique stream-related features.

The Manti-La Sal National Forest determined that its portion of Roc Creek is eligible, with Wild classification and with Scenic and Geologic/Hydrologic Outstandingly Remarkable Values identified.  The UFO's omission of Roc Creek in the Eligibility report should be corrected with UFO affirmation of Roc Creek's eligibility, plus determination that it is suitable.

---

[1] *Southern Rocky Mountains: An Ecoregional Assessment and Conservation Blueprint*. Neely, et al. 2001. Prepared by The Nature Conservancy with support from the U.S. Forest Service, Colorado Division of Wildlife, and Bureau of Land Management.

*San Miguel Unit*
<u>Beaver Creek</u>
*14.25 miles; Scenic; Vegetation (rare cottonwood-spruce-alder community)*
Traversing a narrow corridor of public land, this stream holds important potential for preserving and enhancing stream-related natural values for a broad, otherwise private-land, geography. The creek is also an important contributing tributary to the San Miguel River.

Federal land ownership of nearly 100% will simplify effective implementation of protective management.

<u>We recommend that the full length of Beaver Creek be found suitable.</u>

<u>Dry Creek</u>
*10.49 miles; Wild; Scenic, Geologic*
This stream traverses a uniquely un-roaded landscape, providing important wildlife support and general ecological vibrancy. It is also a seasonally large streamflow contributor to the San Miguel River.

The very distinctive scenery and geology of the area—formed in large part by the creek itself—warrant strong protective management for the stream and corridor.

Nearly 100% federal ownership of land along the stream corridor, and extensive federal land beyond the corridor, simplify effective implementation of protective management.

<u>We recommend that the full length of Dry Creek segment be found suitable.</u>

<u>Naturita Creek</u>
*24.97 miles; Scenic; Fish*
This rare habitat for exemplary populations of potentially endangered native fish warrants the strongest possible protection, for both streamflows, related corridor vegetation, and water quality.

While the low percentage of federal ownership along the corridor might preclude a finding of suitability or wild & scenic designation, other immediate, effective, and enduring administrative protections—including cooperative measures with landowners and with other government agencies—should be included in the resource management plan and its implementation.

<u>Saltado Creek</u>
*5.56 miles; Wild; Vegetation (rare cottonwood-spruce-alder community)*
Traversing a relatively narrow corridor of public land, this stream holds important potential for preserving and enhancing stream-related natural values for a broad

BLM_0108196

otherwise private-land geography. The creek is also an important and reliable streamflow-contributing tributary to the San Miguel River.

The healthy and remarkably undisturbed nature of this segments riparian vegetation and soils, worthy of strong protection itself, helps ensure clean streamflow in the San Miguel River.

100% federal land ownership along the lower four miles of the segment simplifies effective implementation of protective management.

We recommend that the full length—certainly the federally owned portion—of Saltado Creek segment be found suitable.


San Miguel River, segment 1
*27.23 miles; Recreational; Scenic, Recreational, Wildlife, Historic, Vegetation, Paleontology*
This large, regionally iconic river is inherently significant, and it provides important streamflow contribution to the Dolores River, itself severely diminished above its confluence with the San Miguel. This flow contribution is particularly important for the surviving population of endangered native fish inhabiting the portion of the Dolores River just below that confluence. With flows from the upper reaches of the Dolores still highly variable and generally low, the San Miguel flow contribution is critical and must be protected.

This segment includes unparalleled scenery and attendant natural and cultural features.

The patchwork of federal-private land ownership along the segment may complicate protective management, but the segment's features warrant the extra effort that might be necessary to secure a finding of suitability and to implement cooperative measures to protect those features.

We recommend that all of San Miguel River segment 1 be found suitable.


San Miguel River, segment 2
*4.01 miles; Wild; Scenic, Recreational, Wildlife, Vegetation*
This relatively short segment of the San Miguel river contains unusually undisturbed stream and corridor features, warranting the strongest possible protection. The corridor includes stunning geological and landform scenery, much of it formed by the river itself, along with a uniquely undisturbed and vibrant riparian ecosystem.

Federal land ownership along the segment is 100%, simplifying effective implementation of protective management.

We recommend that the full length of San Miguel River segment 2 be found suitable.

BLM_0108197

<u>San Miguel River, segment 3</u>
*7.31 miles; Scenic; Recreational, Fish, Wildlife, Vegetation*
This segments uniquely wild condition affords recreational experiences important to local economy and to local sense of place. The segment also provides critical habitat for potentially endangered native fish, which must be protected in order to ensure continued local use of the river's flows.

While federal land ownership along the segment is only 72.5%, the bulk of private land is found at one location, facilitating the cooperative measures important for implementing protective measures essential for this segment.

<u>We recommend that the full length of San Miguel River segment 3 be found suitable.</u>


<u>San Miguel River, segment 5</u>
In addition to ensuring strong and enduring protection for the public lands segments of the river traversing primarily federal public lands, the BLM should engage landowners and other land managers in Segment 5 to ensure cooperative measures to a) protect a continuous healthy stream corridor and b) to ensure natural-hydrograph flow contributions to the Dolores River. These and other measures should be undertaken to, among other things, enhance and preserve important habitat for imperiled native fish noted in the BLM's Final Eligibility Report.


<u>San Miguel River, segment 6</u>
*3.23 miles; Recreational, Fish, Historic, Vegetation*
This final segment to the San Miguel River's confluence with the Dolores River is of critical importance to a) preserve the beauty and natural dynamics of the confluence, to ensure a final, reliable, and healthy contribution to streamflows important for native fish uniquely flourishing in the segment and just downstream from the confluence, and c) to protect and enhance the healthy native riparian vegetation along the segment.

While less than 70% of the land along segment is federally owned, 100% of the final two miles above the confluence is federally owned, facilitating effective implementation of protective management.

<u>We recommend that the full length of San Miguel River segment 6—or at least the federal portion—be found suitable.</u>

BLM_0108198

<u>Tabeguache Creek, segment 1</u>
*3.61 miles; Wild; Vegetation*
This stream traverses a uniquely un-roaded, wild landscape on public lands, providing important wildlife support and general ecological vibrancy along the stream itself, and complementing congressionally designated national forest lands protected upstream.

Reliable protection is also needed for the segment's uniquely and flourishing riparian vegetation communities, and noted in the BLM's Final Eligibility Report.

Federal land ownership along the segment is 100%, simplifying effective implementation of protective management.

<u>We recommend that the full length of Tabeguache segment 1 be found suitable.</u>


<u>Tabeguache Creek, segment 2</u>
*11.57 miles; Recreational, Cultural, Vegetation*
This segment contributes reliable and significant volume of streamflow to the San Miguel River, and the health of segment should be protected in order to maintain and enhance the quality of the contributed streamflows.

The segment's superior examples of unique stream-dependent riparian vegetation communities should themselves be preserved and enhanced.

Although less than 70% of the land along the segment is federally owned, 100% of the land immediately above the stream's confluence with the San Miguel River is federally owned. This facilitates effective implementation of protective management.

<u>We recommend that the full length of Tabeguache Creek segment 2—or at least the federally owned portion—be found suitable.</u>


*Lower Dolores Unit*
<u>Lower Dolores River</u>
*10.53 miles; Scenic; Scenic, Recreational, Geologic, Fish, Wildlife*
Few rivers in the southwestern United States boast the stunning scenery, distinctive and colorful geology, and outstanding recreation opportunities as those found along the Dolores River. The heart of a broader landscape of ecologically rich public lands (well beyond a one-quarter-mile-each-side wild and scenic study corridor), the Dolores River is an essential element of larger land values and of management decisions affecting those values. Because this iconic river is already significantly diminished and threatened by river impoundment upstream of the UFO study area, every possible protection must be applied to the river and to its corridor. A decisive finding of suitability is essential to, and appropriate for, that protection.

The esthetically and economically important recreation opportunities provided by the Lower Dolores River segment present sufficient justification for protecting the natural appearance and health of that segment. The existence of healthy populations of regionally imperiled native fish, as noted in the BLM's Final Eligibility Report, make that protection even more important.

In conjunction with a finding of suitability, and protective management, for the San Miguel River segments upstream, corresponding protections for this segment complete an important recognition of the two rivers' importance, locally and nationally.

While just over 65% of the land along the segment is federally owned, 100% of the upper portion of the segment is federally owned. This facilitates effective implementation of protective management for that federal portion; it also facilitates—and warrants—cooperative agreements and actions in the lower portions, lined primarily by private land, to help complete that protective management.

<u>We recommend that that full length of Lower Dolores River segment—or at least the upper federally owned portion—be found suitable.</u>


<u>North Fork Mesa Creek</u>
*8.53 miles; Scenic; Vegetation*
This segment warrants the strongest of protective measures for two basic reasons. First is the BLM-recognized presence of globally imperiled narrowleaf cottonwood/strapleaf willow/silver buffaloberry riparian woodlands along the segment. Second, and related, the segment contributes perennial, high quality streamflows to Mesa Creek, and thus to the severely depleted Dolores River itself.

A finding of suitability for this segment corresponds to the BLM's separate finding of eligibility for the upstream segment of the North Fork (and, hopefully, finding of suitability for that upper segment). In any case, the Uncompahgre and Grand Junction field offices should confer and provide effective coordinated protective management for both segments.

While just over 68% of the land along the segment is federally owned, 100% of the upper portion of the segment is federal. This facilitates effective implementation of protective management, and facilitates the implementation of cooperative agreements and actions for portions of the segment lined with private land.

<u>We recommend that the full length of North Fork Mesa Creek—or at least the federally owned upper portion—be found suitable.</u>

BLM_0108200

*Upper Dolores Unit*
Dolores River, segment 1
Identified as eligible in the San Juan Public Lands Draft Resource Management Plan, this segment complements and is essentially a component of Dolores River segment 2. As such, its extensive and diverse outstandingly remarkable values and values-related flows, warrant the highest possible protection.

Such protections are described in our comments related to Dolores River segment 2, and we advocate those protections for Dolores River segment 1 as well.

We recommend that the full length of Dolores River segment 1 be found suitable.

Dolores River, segment 2
*11.5 miles; Recreational; Scenic, Recreational, Geologic, Fish, Wildlife, Vegetation*
Few rivers in the southwestern United States boast the stunning scenery, distinctive and colorful geology, and outstanding recreation opportunities as those found along the Dolores River. The heart of a broader landscape of ecologically rich public lands (well beyond a one-quarter-mile-each-side wild and scenic study corridor), the Dolores River is an essential element of larger land values and of management decisions affecting those values. Because this iconic river is already significantly diminished and threatened by river impoundment upstream of the UFO study area, every possible protection must be applied to the river and to its corridor. A decisive finding of suitability is key to that protection.

With the longest and most diverse list of outstandingly remarkable values (seven) recognized in this segment, the segment is eminently qualified for the highest possible protective status and measures.

The healthy presence of regionally imperiled native fish in this segment and downstream, as recognized in the BLM's Final Eligibility Report, the importance of protecting the stream and supportive corridor in this segment is greatly magnified.

Only 47% of land along the segment is federally owned, but 100% of the corridor land in the upper half of the segment is federal. This facilitates the effective implementation of protective measures in that federal portion and facilitates cooperative agreements and measures for providing similar protections to the rest of the segment.

We recommend that the full length of Dolores River segment 2—or at least the federally owned upper portion—be found suitable.

La Sal Creek, segment 2
*4.52 miles; Scenic; Fish, Vegetation*
This stream traverses a distinctive canyon corridor, affording a stunning backdrop to outstanding recreation opportunities. The stream itself provides important streamflow

source for the Dolores River, and it includes essential and healthy riparian environment in an otherwise arid area.

The presence of healthy populations of regionally imperiled native fish, and the presence of globally rare riparian ecosystem, provide complete justification for the strongest possible protective status and measures in this segment. In addition, the segment provides essential streamflows and healthy continuity for riparian habitats in the Dolores River Canyon Wilderness Study Area immediately downstream, and to the Dolores River itself.

Federal land ownership along the segment is 84.5%, facilitating effective implementation of protective management, particularly in the upper portion, which is 100% federal.

<u>We recommend that the full length of La Sal Creek segment 2 be found suitable.</u>

<u>La Sal Creek, segment 3</u>
*3.37 miles; Wild; Scenic, Recreational, Fish, Cultural, Vegetation*
If ever a stream segment were suitable under that definition of the Wild and Scenic Rivers Act, this is one. The segment lies wholly within the Dolores River Canyon Wilderness Study Area, supporting regionally rare riparian and scenic vibrancy. That habitat health is reflected in the presence of healthy populations of regionally imperiled native fish.

In addition, La Sal creek is among the more significant streamflow contributors to the severely depleted Dolores River.

Federal ownership of land along the segment is 100%, facilitating—and requiring—the strongest possible form of protective management.

<u>We recommend that the full length of La Sal Creek segment 3 be found suitable.</u>

<u>Lion Creek</u>
This stream traverses important un-roaded geography, including distinctive canyon features on both sides. It also contributes seasonal streamflows to La Sal Creek, which itself is so important to surround wilderness-quality lands and to the Dolores River.

While the length, location and federal ownership percentage of Lion Creek may not warrant a finding of suitability, the segment—and its streamflows—should be protected in other manners to ensure its continuing contribution to the health of the watershed.

<u>Spring Creek</u>
This stream traverses important un-roaded geography, including distinctive canyon features on both sides. It also contributes seasonal streamflows to La Sal Creek, which itself is so important to surround wilderness-quality lands and to the Dolores River.

While the length, location and federal ownership percentage of Lion Creek may not warrant a finding of suitability, the segment—and its streamflows—should be protected in other manners to ensure its continuing contribution to the health of the watershed.

Thank you for your serious consideration of our comments.

Sincerely,


Aaron Kimple
Dolores River Campaign Coordinator for the Dolores River Coalition
San Juan Citizens Alliance
PO Box 2461
Durango, CO 81321

Barbara Hawke
Dolores River Basin Wildlands Coordinator
The Wilderness Society
1617 American Way
Montrose, Colorado 81401

Amber Kelly
Lower Dolores River Organizer
 San Juan Citizens Alliance
PO Box 1513
Cortez, CO 81321

Kate Graham
Public Lands Organizer
Colorado Environmental Coalition
546 Main Street, #404
Grand Junction, CO 81501

Hillary White
Executive Director
Sheep Mountain Alliance
PO Box 389
Telluride, CO 8143

Amy Montano
Public Lands Organizer
Western Colorado Congress
128 North Sixth Street
Grand Junction, CO 81502

## COMMENTING ON WILD AND SCENIC RIVER SUITABILITY

Thank you for your interest in providing comments regarding Wild and Scenic River suitability for the BLM Uncompahgre planning effort.

## COMPLETING THE RIVER SEGMENT COMMENT FORM

Comments may be typed or handwritten. Please use the segment comment form available at: www.blm.gov/co/st/en/fo/ufo/wild_and_scenic_river.html

**Submit written comments by August 16, 2010:**
- Email completed forms to:  UFORMP@BLM.GOV
- Or mail completed forms to:  BLM UFO, Attention: RMP Revision, 2465 South Townsend Avenue, Montrose, Colorado  81401

If using the Word version, print the form for mailing or save it as a new document in your local directory before completing.

If using the Adobe Pdf form, print the form for mailing.

For all forms, please:
- Print your name and phone number or email address on each page you complete.
- Address only those eligible river segments about which you have specific knowledge or concerns.
- For each segment, address only those Wild and Scenic suitability criteria about which you have specific knowledge or concerns.

## 14 - BEAVER CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                          *ORVs:* **Vegetation**

**Your Name: __Dolores River Coalition, San Juan Citizens Alliance, The Wilderness Society, Colorado Environmental Coalition, Sheep Mountain Alliance, Western Colorado Congress**
_____**Telephone:** __970.565.7191
**Address:** _____Amber Kelly: Lower Dolores River Organizer,  San Juan Citizens Alliance PO Box 1513 Cortez, CO 81321 **E-mail:** amber@sanjuancitizens.org
**PLease address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
| --- |

**1.  Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.** Traversing a narrow corridor of public land, this stream holds important potential for preserving and enhancing stream-related natural values for a broad, otherwise private-land, geography. The creek is also an important contributing tributary to the San Miguel River.

**2.  Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3.  Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

## LAND OWNERSHIP AND USES

**4.  Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5.  Compatibility or incompatibility of designation with current land and water uses and development.**

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by**

NAME:                                           SEGMENT:

designation.

| ADMINISTRATION |
|---|

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.** Federal land ownership of nearly 100% will simplify effective implementation of protective management.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
|---|

We recommend that the full length of Beaver Creek be found suitable.

## 15 - DRY CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                    **ORVs: Scenic, Geological**

**Your Name:** __**Dolores River Coalition, San Juan Citizens Alliance, The Wilderness Society, Colorado Environmental Coalition, Sheep Mountain Alliance, Western Colorado Congress**

_____**Telephone:** ___970.565.7191

**Address:** _____Amber Kelly: Lower Dolores River Organizer,  San Juan Citizens Alliance PO Box 1513

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.** This stream traverses a uniquely un-roaded landscape, providing important wildlife support and general ecological vibrancy. It is also a seasonally large streamflow contributor to the San Miguel River.

The very distinctive scenery and geology of the area—formed in large part by the creek itself—warrant strong protective management for the stream and corridor.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

**NAME:**                                              **SEGMENT:**

BLM_0108207

## LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.** Nearly 100% federal ownership of land along the stream corridor, and extensive federal land beyond the corridor, simplify effective implementation of protective management.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

**ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY**

We recommend that the full length of Dry Creek segment be found suitable.

## 16 - NATURITA CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**                                                          *ORVs:* **Fish**

**Your Name:** __**Dolores River Coalition, San Juan Citizens Alliance, The Wilderness Society, Colorado Environmental Coalition, Sheep Mountain Alliance, Western Colorado Congress**

_____**Telephone:** ___970.565.7191

**Address:** _____Amber Kelly: Lower Dolores River Organizer,  San Juan Citizens Alliance PO Box 1513 Cortez, CO 81321_**E-mail:** amber@sanjuancitizens.org

**PLease address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

**GENERAL**

**NAME:**                                                        **SEGMENT:**

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.** This rare habitat for exemplary populations of endangered native fish and/or fish species of concern warrants the strongest possible protection, for both streamflows, related corridor vegetation, and water quality.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by**

designation.

| ADMINISTRATION |
| --- |

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.** While the low percentage of federal ownership along the corridor might preclude a finding of suitability or wild & scenic designation, other immediate, effective, and enduring administrative protections—including cooperative measures with landowners and with other government agencies—should be included in the resource management plan and its implementation.

**8. Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9. Issues that might make administering this segment difficult.**

**10. Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
| --- |

**NAME:**                                              **SEGMENT:**

## 17 - SALTADO CREEK WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational                                                  *ORVs:* Vegetation

**Your Name:** __Dolores River Coalition, San Juan Citizens Alliance, The Wilderness Society, Colorado Environmental Coalition, Sheep Mountain Alliance, Western Colorado Congress
_____**Telephone:** ___970.565.7191
**Address:** _____Amber Kelly: Lower Dolores River Organizer,  San Juan Citizens Alliance PO Box 1513 Cortez, CO 81321**,E-mail:** amber@sanjuancitizens.org
.

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|:---:|

**1. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.** Traversing a relatively narrow corridor of public land, this stream holds important potential for preserving and enhancing stream-related natural values for a broad otherwise private-land geography. The creek is also an important and reliable streamflow-contributing tributary to the San Miguel River.

The healthy and remarkably undisturbed nature of this segments riparian vegetation and soils, worthy of strong protection itself, helps ensure clean streamflow in the San Miguel River.

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

BLM_0108212

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

## LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.** 100% federal land ownership along the lower four miles of the segment simplifies effective implementation of protective management.

**NAME:**                                                    **SEGMENT:**

BLM_0108213

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9.  Issues that might make administering this segment difficult.**

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
|---|

We recommend that the full length—certainly the federally owned portion—of Saltado Creek segment be found suitable.

### 18 - SAN MIGUEL RIVER, SEGMENT 1 WSR SUITABILITY COMMENTS

*Preliminary Classification:* Recreational       *ORVs:* Scenic, Recreational, Wildlife, Historic, Vegetation, Paleontology

**Your Name:** __Dolores River Coalition, San Juan Citizens Alliance, The Wilderness Society, Colorado Environmental Coalition, Sheep Mountain Alliance, Western Colorado Congress
_____**Telephone:** ___970.565.7191

BLM_0108214

**Address:** _____ Amber Kelly: Lower Dolores River Organizer, San Juan Citizens Alliance PO Box 1513 Cortez, CO 81321 **E-mail:** amber@sanjuancitizens.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**1.  Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.** This large, regionally iconic river is inherently significant, and it provides important streamflow contribution to the Dolores River, itself severely diminished above its confluence with the San Miguel. This flow contribution is particularly important for the surviving population of endangered native fish, and/or fish species of concern, inhabiting the portion of the Dolores River just below that confluence. With flows from the upper reaches of the Dolores still highly variable and generally low, the San Miguel flow contribution is critical and must be protected.

This segment includes unparalleled scenery and attendant natural and cultural features.

**2.  Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3.  Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

| LAND OWNERSHIP AND USES |
|---|

**4.  Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**NAME:**                                                    **SEGMENT:**

BLM_0108215

**5.  Compatibility or incompatibility of designation with current land and water uses and development.**

**6.  Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

| ADMINISTRATION |
|:---:|

**7.  Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.** The patchwork of federal-private land ownership along the segment may complicate protective management, but the segment's features warrant the extra effort that might be necessary to secure a finding of suitability and to implement cooperative measures to protect those features.

**8.  Consistency of designation with other BLM plans, programs, and policies and regional objectives.**

**9.  Issues that might make administering this segment difficult.**

**10.  Adequacy of local zoning and other land use controls and ability of state/local government to manage and**

BLM_0108216

**protect this segment's ORVs on nonfederal lands.**

| ADDITIONAL COMMENTS REGARDING JURISDICTION AND MANAGEABILITY |
|---|

<u>We recommend that all of San Miguel River segment 1 be found suitable.</u>

## 19 - SAN MIGUEL RIVER, SEGMENT 2 WSR SUITABILITY COMMENTS

*Preliminary Classification:* **Recreational**          *ORVs:* **Scenic, Recreational, Wildlife, Vegetation**

**Your Name: __Dolores River Coalition, San Juan Citizens Alliance, The Wilderness Society, Colorado Environmental Coalition, Sheep Mountain Alliance, Western Colorado Congress**
_____**Telephone:** ___970.565.7191

**Address:** _____Amber Kelly: Lower Dolores River Organizer,  San Juan Citizens Alliance PO Box 1513
Cortez, CO 81321_**E-mail:** amber@sanjuancitizens.org

**Please address only the characteristics (below) regarding this segment about which you have specific knowledge, concerns, or comments.**

| GENERAL |
|---|

**I. Characteristics which might or might not qualify this segment for WSR designation, including this segment's contribution to the integrity of a river system or basin.** This relatively short segment of the San Miguel River contains unusually undisturbed stream and corridor features, warranting the strongest possible protection. The corridor includes stunning geological and landform scenery, much of it formed by the river itself, along with a uniquely undisturbed and vibrant riparian ecosystem.

**NAME:**                                    **SEGMENT:**

**2. Known federal, state, regional, tribal, local, or other public interests in designation or non-designation.**

**3. Outstandingly remarkable values (ORVs) that could be affected by designation or non-designation.**

## LAND OWNERSHIP AND USES

**4. Status of land and mineral ownership for this segment and the associated river corridor, including historical or existing rights that could be adversely affected by designation or lack of designation.**

**5. Compatibility or incompatibility of designation with current land and water uses and development.**

**6. Reasonably foreseeable potential land and water development and uses that could be affected by designation.**

## ADMINISTRATION

**7. Ability to manage and protect this segment as a WSR, including any existing and potential mechanisms for protecting this segment's ORVs other than WSR designation.** Federal land ownership along the segment is 100%, simplifying effective implementation of protective management.