Dominguez-Escalante National Conservation Areas are excluded from this plan. Every map is the same color scheme.

- o Alternative A is current management and what is happening now. Remember that Alternative A is included in the range of alternatives. Sometimes Alternative A forms one of the "edges" of the range.
- o Alternative F is blank because that will be the Agency Preferred alternative which we have not gotten to. The Interdisciplinary Team has just thought of the four action alternative scenarios (Alternatives B, C, D, and E) without focusing on what they want to do (preferred alternative). We want to ensure that we have an adequate range of alternatives before moving to the preferred alternative. In March, the Interdisciplinary Team will get together to develop the preferred alternative.
- o *Question*: When we're looking to see if there is an adequate range of alternatives, is there another set of sideboards like what the BLM can legally do? *Answer*: Yes. At one of the first meetings we discussed automatic sideboards or planning criteria. These include the BLM following the law. If it's illegal, we can't consider it so it shouldn't be in the alternatives. Because cultural resources have such strict regulations, the decision space is not very large.
  - – *Action*: EMPSi will send planning criteria to the group.
- o *Question*: For high-intensity management, can that include written rules, more fences, etc.? *Answer*: It could be more fences, it could be more rules, more police enforcement, more structure to competitive events. It doesn't necessarily mean the BLM has to put more resources on the ground on an on-going basis. In one form or another it means more management inputs.
- We are not near the preferred alternative. The BLM will meet in mid-March to talk about that. The RAC Subgroup and Cooperating Agencies will have an opportunity to review Chapter 2, including the preferred alternative, in May when the Field Office is reviewing Chapter 2. You'll also see it when it goes for public review as the Draft RMP/Draft EIS.
- Note that some sections have acreages and maps made and some sections do not. We know that without acres or maps it will be hard to tell us whether or not there is a good range or a bad range, but we did the best we could for today.
- Areas of Critical Environmental Concern (ACECs): Just because a certain alternative does not list an ACEC for protection as an ACEC doesn't mean that those values won't be protected. It might be inadvertently protected by other actions in that Alternative. For example, ACEC overlapping lands managed to protect wilderness characteristics. Each of the alternatives has to agree with itself. They each need to be implementable as a stand-alone RMP. If you see any inconsistencies within an alternative, let us know. The management for ACECs is divided by each ACEC (there is a row for each ACEC). For some resources, there is a row that shows management common to all (for example, ACECs), and then gets more specific by area or species (in the case of wildlife).
  - o *Question*: Is there any way to get a map that would have all the designations that exist or proposed? *Answer*: No, you wouldn't be able to see everything. Perhaps in a future meeting we can do live GIS and we can add layers so you can see what overlaps are. As you go through the alternatives, keep a list of what you'd like to look at. Just be aware you might come across inconsistencies. We just want you to be aware that just because something isn't an ACEC, for example, doesn't mean the area isn't receiving protection. A lot of that analysis will come out in the impacts analysis.
    - – *Question*: What about clickable PDFs so we can look at all the layers? *Answer*: We can ask the GIS folks but they have a lot of work to do on the alternatives that is very much a priority.
  - o *Question*: On the top of page 213, it says closed to fluid mineral leasing for the Adobes? *Answer*: That is an example where actions don't all fit on one page for a topic, so that action belongs with Needle Rock ACEC on the previous page.

- o There are certain ACECs where management does really vary by alternative. For example, the Fairview ACEC (page 216) not only do the management prescriptions change, but the size of the ACEC also changes.
  - – *Question:* So Fairview is currently there and you can't get rid of it but you can expand it. *Answer:* Actually, under Alternative D, it goes away. The acreages change across the alternatives and we also consider not managing it as an ACEC. This range looks at everything from zero to 4,250 acres and everything in between.
- "No similar action" means zero or we're not doing anything similar in the other alternatives. Another example on page 48, line 135. Sometimes action alternatives say "no similar action" and it's addressed somewhere else. Perhaps areas are not directly called out but discussed more generally. Also line 137 on page 48, Alternatives C and D say "no similar action" which means we're not specifically managing for river otters under those alternatives.
- A row is a concept and the alternatives vary how to do that concept. A column is an alternative or an implementable RMP. If you're working within a column looking up and down, stay within that column.
- *Comment:* Talking about mixing and matching, it seems like if you look at a geographic area there might be a synergistic way to combine some alternatives. *Answer:* Yes, we'll talk about that in a moment.
- *Question:* Do you want one of our filters to be this is a potential place for litigation? You have it written down here but will you actually be able to do it, that opens you up for litigation. *Answer:* Everything in here needs to be implementable. There might be things that seem really difficult to implement but they are still within the realm of possibility.
- *Question:* Can you look at an option, say it takes too much money for BLM to implement, can you look at an option to work with an environmental group to meet that objective? *Answer:* Yes, most resources talk about coordination. So there will be a piece that talks about coordination and cooperation. You won't see that here, but in the full Chapter 2 you will.
- *Question:* Will any of the other agencies sign a Record of Decision? *Answer:* No, not for any of the decisions in this plan. The Field Office reviews and approves, the State Office reviews and approves, Washington Office reviews and approves, etc. We are not getting specific in this management plan as to who will implement what piece, that is implementation. The BLM can coordinate with other agencies and groups without an RMP decision. That is something else to keep in mind as you're reviewing this.
- When groups come in the door and what to do a project, the first thing we do is look at our land use plan to see what it says about that piece of land. There is usually always further NEPA analysis involved in every project besides what's in the RMP.
- *Question:* What about line 238 on page 87? How do you interpret no similar action? *Answer:* This is an example where probably the resource author didn't do a very good job of cross-referencing where concepts in Alternative A are covered in other actions or objectives in Alternatives B, C, D, and E. Also, this is specific to Emphasis Area D, which under Alternative A is a specific polygon on the map and we have not put that information on a map yet.
- *Question:* Is there anything else that we don't have while we're reviewing this? *Answer:* There is a lot. You'll see a lot of places that just have "xx acres" and no map. We know it'll be hard for you to provide feedback on those places but do the best you can. If you don't have enough information to give us feedback, then don't give us feedback. In the original plans from the 80s there were a lot of decisions made that we don't really need a decision to do those actions. So sometimes where it says no similar action it's because we don't need a decision to do the things from the old RMPs.
  - o If you can't find something and you think it's important, comment on it and then it's incumbent on the Interdisciplinary Team to make sure it's there. If you have any questions, call us!

- *Comment*: I read the Secretary Salazar memo to mean that lands with wilderness characteristics would be managed as wilderness unless determined otherwise. *Response*: That's why I said the way we manage might be different than what we're proposing but I don't think it changes what we decide as far as areas to be managed. *Comment*: It sounds like all areas with characteristics have to be managed as wilderness. *Response*: Well we are in a position where we can react to how to implement the Salazar direction.
- Alternative A is the current RMPs as amendments.
- Special Recreation Management Areas. There has been new direction on how to address Special Recreation Management Areas so the "decisions to be made" section of the alternatives matrix has been updated to reflect that new direction.
- *Action*: EMPSi will e-mail group Alternative A OHV map from Chapter 3 maps.
- Off-highway Vehicles (OHVs). Under current management, there are two areas open to OHV use. Open means open to cross-country OHV use (for example, the Flat Tops and North Delta). Closed means closed to OHV use. The rest is limited to existing routes, except in Dry Creek, which is limited to designated routes. In Alternatives B through E, routes in the limited area will be limited to designated routes. All acres will fall into the open, limited, or closed category. After the Record of Decision for the RMP is signed, the BLM will go to the limited areas and do route designation. We will not do that in this plan. This plan just sets up the polygons for route designation.
- Remember that if you have any questions about a program and what's going on now, you can refer to Chapter 3 which gives some background information.
- Visual Resource Management (VRM): The classes don't prohibit development, they just set up requirements for protecting the scenic quality of the area. VRM Class I areas are the most restrictive and include wilderness. VRM Class IV is the least restrictive. In the action alternatives, you'll see purple strips (VRM Class IV), which are mostly designated utility corridors from the West-wide Energy Corridor PEIS.
  - *Action*: EMPSi will send FTP site with Chapter 3 and maps.
  - *Comment*: The colors are very close. Can these be changed? *Answer*: Yes.
- Oil and Gas Leasing. No leasing means no future leasing; it doesn't apply to current leases (valid existing rights). This rule also applies across resources throughout the RMP. Geothermal resources are also a fluid mineral and are treated the same as oil and gas, so the oil and gas map also includes geothermal resources. No surface occupancy (NSO) is a fluid mineral stipulation that says you can't occupy the surface of the land on that lease (or portion of lease). You can get to the resource (oil, gas, geothermal) but you have to get to it from outside of the NSO restriction, which means directional drilling. Controlled surface use is a softer version where you can occupy the surface but you might have to move your operation to avoid a sensitive area. Timing limitation is like an NSO but for a specific time of the year. For example a mating season for a bat.
- Rights-of-way (ROWs). This is part of the Lands and Realty program. The maps show avoidance and exclusion areas. ROWs are pipelines, powerlines, roads, etc. In an oil and gas operation, the lease (polygon) where the drilling occurs is leased through the fluid minerals program. The pipeline to move the oil and gas would require a ROW to get it from the lease to the destination. ROW avoidance means move the ROW if you can. Exclusion has essentially no exceptions, more absolute.
- *Question*: Are our comments public record? *Answer*: Yes. If someone requested them, they would be part of the public record, but we won't publish them.
- *Action*: Your comments are due on February 28th to Kate (kate.wynant@empsi.com). The ID Team is meeting the week of March 14 to discuss the preferred so we will compile your comments and distribute them to the Interdisciplinary Team to incorporate as appropriate. Be specific and direct with your comments. If the range isn't wide enough, tell us why and what needs to be included.

BLM_0109574

- *Question*: Knowing that the sections in a column all interrelate, do you want comments on a section? *Answer*: Do whatever is easiest for you. If your comment applies to several rows, include all the rows to which your comment applies. We'll take all your comments at one time, you don't have to piecemeal them.
- Preferred alternative. There are different ways to pick the preferred. 1) Pick something from Alternative A, B, C, D, or E directly; 2) Pick a combination (something in the middle or range) of A, B, C, D, or E; or 3) Pick something outside of today's range. Options 1 or 2 are optimal. We want to get the range right now so that we can do either 1 or 2. It is possible that option 3 could happen but the later that we find out we missed something, the harder the process becomes.
- *Question*: Will there be any cases where the range seems too wide? Are you interested in us telling you that one end of the range is too extreme for consideration? *Answer*: Yes, you can let us know that you think one edge is too extreme and tell us why and where the edge should be.
- *Question*: I'm still confused where you overlap with the US Forest Service. The US Forest Service is a Cooperating Agency and it is incumbent upon the US Forest Service to review the alternatives and let us know if there are any inconsistencies. *Comment*: Maybe we could comment on areas where we would like to see consistency and coordination with the US Forest Service.
- *Question*: Do you anticipate major changes to the alternatives? For example if we spend a lot of time on something and you've already caught it can you let us know so we don't spend a lot of time on it? *Answer*: I don't think there will be major changes such that your comments would not be applicable when we receive them.

## 5. Other Items Not on the Agenda

- WSR Update (Barb Sharrow) (see handout: Dolores-San Miguel River Basins Supplemental Comment Period). Thank you to everyone for your help in the process. On February 7th the RAC Subgroup will meet and the Dolores/San Miguel leads will give their recommendation to the RAC Subgroup on what the recommendations to the BLM should be. The RAC Subgroup will decide on the final recommendations for the BLM. We decided early on how we would come to consensus, which has been written down and we can review that on February 7th. Barb handed out materials for the group to review and bring with them on February 7th.
  - o Keep in mind the classifications for each segment from the final eligibility report. The classifications can be changed from eligibility to suitability.
  - o The suitability criteria are also in the final eligibility report.
  - o The meeting is scheduled on February 7th from 9:00am-2:00pm at the Holiday Inn Express in the Apex Room.
  - o The meeting is public and they can speak during the allotted public comment time, just like the RAC and RAC Subgroup meetings. We may have to limit the time they can speak depending up on the number of public present. It's critical to have as many RAC Subgroup members present as possible.
  - o WSR alternatives are in the alternatives and we are currently considering all suitable and none suitable, per BLM Manual direction.
  - o If there is time after the WSR discussion is over, the group can ask the BLM any questions that they've come across in their review of the alternatives to that point.
- If there are other issues that you want to meet on specifically, let Barb know. For example, domestic versus wild sheep grazing. We might have meetings with the ranchers about that issue.

## 6. Public Comments: Two members of the public present. No public comments.

BLM_0109575

## 7. Action Items / Next Meeting

- For the RAC Subgroup we have a meeting scheduled for February 7th to discuss WSR. **The meeting will be in the Apex Room at the Holiday Inn Express from 9:00am – 2:00pm.**
- Next RAC Subgroup meeting for the RMP is scheduled for Friday, April 1. We won't have a preferred for you but can talk about your comments, the next steps, WSR, etc. Richard Durnan may not be able to make it (Spring Break).
- If you have questions throughout, don't hesitate to contact Bruce, Angie, or Kate.
- *Action* (RAC Subgroup): Your comments are due on February 28th to Kate (kate.wynant@empsi.com). Be specific and direct with your comments. If the range isn't wide enough, tell us why and what needs to be included.
- *Action* (EMPSi): Send planning criteria to the group.
- *Action* (EMPSi): E-mail group Alternative A OHV map from Chapter 3 maps.
- *Action* (EMPSi): Send FTP site with Chapter 3 and maps to group.

BLM_0109576



United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Uncompahgre Field Office
2465 S. Townsend Avenue
Montrose, CO 81401



# RESOURCE ADVISORY COUNCIL SUBGROUP MEETING #6
## Friday, January 28, 2011 (9:00 AM – 12:00 PM)

### Meeting Location:
### Holiday Inn Express (Jordan Room)
### 1391 South Townsend Avenue, Montrose, CO

# AGENDA

1. **Welcome**
2. **Introductions**
3. **Planning Process to Date**
4. **Internal Draft Alternatives**
5. **Other Items Not on the Agenda**
6. **Action Items / Next Meeting**
   - Next meeting: to be determined

BLM_0109578



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Uncompahgre Field Office
2465 S. Townsend Avenue
Montrose, CO  81401



## Highlights of the Resource Management Planning Process to Date
### *January 27, 2011*

- Notice of Intent (NOI) – 2/25/2010

- Scoping period – 12/23/2009 to 3/29/2010

- Scoping report – final report completed 7/7/2010 (on website)

- Tribal consultation – initiated 2009 (ongoing)

- Community Assessment – report completed 2/2009 (on website)

- Visual Resource Inventory – report completed 9/2009

- Migratory bird status literature review – report completed 10/2009

- Analysis of Management Situation (AMS) – report completed 6/10/2010 (on website)

- Economic workshops (6 communities) – held 3/2010

- Socioeconomic baseline assessment – final report completed 7/21/2010

- Class I paleontological resources – report completed 2/2010

- Oil & Gas Reasonable Foreseeable Development (RFD) Scenario – internal draft report completed 7/2010

- Mineral potential report (excluding coal) – internal draft report completed 8/2010

- Coal potential report – final report completed 4/26/2010

- Renewable energy potential report – final report completed 5/31/2010

- Class I cultural resources overview – draft report completed 4/2010; final report completed

- Coordination with Cooperating Agencies – invitations sent 1/23/2009; meetings planned from 5/27/2010 forward

- ACEC evaluation report – draft report completed 7/15/2010 (on website) – final report underway

- Wilderness characteristics report – draft report anticipated 3/2011

- Air quality report – anticipated Winter 2010-2011

- Wild and scenic rivers – draft eligibility report 12/2009; final eligibility report completed 7/12/2010 (on website); suitability underway

- Recreation focus groups – completed 3/2010; report completed 6/2010 (on website)

- Alternatives development – anticipated 6/2010 through approximately 3/2011

BLM_0109579

BLM_0109580

**Uncompahgre RMP/EIS**                                                                **January 27, 2011**

> ### *Internal Rough Draft Alternatives*
> ### *for Cooperating Agency and RAC Subgroup Review*

**To Cooperating Agencies and RAC Subgroup Members:**

The Internal Rough Draft Alternatives are intended for internal review by the Cooperating Agencies and RAC Subgroup for the Uncompahgre RMP Revision and EIS. The review period for Cooperating Agencies and the RAC Subgroup is from Thursday, January 27 to Monday, February 28, 2011. Please complete the MSWord comment matrix (provided at the end of these instructions) and e-mail all comments to Kate Wynant (kate.wynant@empsi.com) by **Monday, February 258, 2011**:

**Internal Rough Draft Alternatives**. The internal rough draft alternatives is available for review in paper copy. Please contact Bruce Krickbaum (970-240-5384) to request an electronic copy of the document.

**Comment Matrix** (provided at the end of these instructions). This is the comment matrix you should use to capture your comments on the draft document. Please save the file with a new file name including your last name (e.g., InternalRoughDraftAlts_CA-SG-Cmts_012711_Adams.doc), and then fill out your comments on the document.

Contact Bruce Krickbaum (970-240-5384) with questions. After receiving your feedback, the alternatives will be modified as appropriate.

> ### *How to Provide Valuable Feedback*

**Commenting:**
For each comment, please fill in the following information under the appropriate column heading in the comment matrix (an example has been provided below):

✓ Page number, alternative, and row number on which you are commenting. **The page number is in the bottom corner of each page.**

✓ **Your comments must be specific and provide exact changes to the text.** Please be unambiguous, clear, and directive, with exact wording changes stated. Ambiguous comments, such as "What?," "Poor," or "Is this right?," are not helpful and will not be considered.

✓ If you have the same comment more than once, <u>do not refer back to a previous comment number</u>. Instead, please copy and paste your comment to a new row in the matrix and provide the specific page number, etc.

**The most helpful comments at this point are regarding the range of alternative. Is the range adequate? Should something else be considered?**



BLM_0109581

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Rough Draft Alternatives for Cooperating Agency and RAC Subgroup Review (January 27, 2011)

| Cmt # | Page # | Line #, Figure #, or Table # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| 1. | 3-3 | 14 | B. Krickbaum | Please replace "…below measurable limits …" with "below ambient standards …" | A. Adams: Change made. |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |
| 21. | | | | | |
| 22. | | | | | |
| 23. | | | | | |
| 24. | | | | | |
| 25. | | | | | |
| 26. | | | | | |
| 27. | | | | | |
| 28. | | | | | |
| 29. | | | | | |
| 30. | | | | | |
| 31. | | | | | |
| 32. | | | | | |
| 33. | | | | | |



Internal Rough Draft Alternatives for Cooperating Agency and RAC Subgroup Review: January 27, 2011

BLM_0109582

**James Bode**

| | |
|---|---|
| **From:** | Site Administrator <info@cecenviro.org> on behalf of Lora Roode <roodegirl@yahoo.com> |
| **Sent:** | Tuesday, February 01, 2011 9:40 PM |
| **To:** | uformp@blm.gov |
| **Subject:** | Conservation |

Feb 1, 2011

Bureau of Land Management Uncompahgre Field Office

Dear Uncompahgre Field Office,

Please prioritize protecting the wilderness characteristics of the Dolores River Basin when developing the new resources management plan for the Uncompahgre Field Office (UFO).

At the heart of the Dolores corridor, the Dolores River Canyon Wilderness Study Area and citizen recommended additions -- with towering colorful sandstone cliffs, river otter, peregrine falcon, and outstanding opportunities for remote wilderness experience -- must be managed for the protection of the area's vast wilderness characteristics.

In addition, please make sure to consider the following:
* The Sewemup Mesa Citizens' Wilderness Proposal (CWP) areas within the Uncompahgre field office, including Carpenter Flats and Beehive Canyon, help to define a cohesive landscape of diverse canyon ecosystems, and should be managed for their wilderness characteristics.

* The Dolores Corridor, including the Paradox Valley and its rich wildlife and cultural resources, should be managed in close cooperation with adjacent BLM Field Offices and private land owners. It is important that the river ecosystem be considered as a whole in order to institute management that maintains its unique qualities.
* The Dolores river and all its eligible tributaries should receive immediate, thorough, and enduring protection.  Previous findings of wild and scenic suitability for the Dolores River should be reaffirmed in the plan update.  Few streams boast the unique natural values--and extent of threats to those values--as are found along the Dolores River.
* Oil and gas leasing should be prohibited in the Dolores River Corridor, or should at a minimum maintain No Surface Occupancy Stipulations. Impacts of development within the corridor are not consistent with protection of outstandingly remarkable values or the existing Special Recreation Management Area Designation.

Finally, the revised management plan needs to address how uranium mining in the area will occur to ensure proper protections and prohibit leasing within the river corridor.  BLM must ensure that all state and federal laws are applied to any permitted mines. The BLM must also ensure that a viable long-term plan for dealing with any radioactive or contaminated materials as well as any other waste products is securely in place. All permitted mines must:
*prove that there will be no harm to both surface and ground water quality and quantity; *prove that the long-term ecological health of the area will not be jeopardized; *have viable reclamation plans in place before permits can be granted; and *have an adequate bonding mechanism in place sufficient enough to cover the entire cost of reclamation.

Thank you for this opportunity to participate!

Best

Ms. Lora Roode

1

BLM_0109583

4161 Buffalo Mountain Dr
Loveland, CO 80538-8778

BLM_0109584

| | |
|---|---|
| **From:** | Barbara Hawke |
| **To:** | Kate Wynant; Angie Adams; Edd_Franz@blm.gov |
| **Subject:** | 2 Questions on LWCs |
| **Date:** | Wednesday, February 02, 2011 11:53:50 AM |

I have a couple follow-up questions to some questions I had earlier for Edd on the Lands with Wilderness Characteristics information.

Is the LWC inventory available for review as a companion piece to the draft alternatives? It would certainly help me assess the summary information contained in the draft alternatives document.

On the technical side, were roads that kept several areas (Nyswonger & Davis Mesa, for example) out of LWCs RS 2477 roads, or what were the definitions or criteria used in evaluation of the "roadedness" of an area? How were 2-track routes viewed?

Thanks so much for any clarification you can provide.

Barbara Hawke
Dolores River Basin Wildlands Coordinator
The Wilderness Society
Montrose, Colorado
970-596-6697 (cell)

| | |
|---|---|
| **From:** | bkrickba@blm.gov |
| **To:** | sbear@dmea.com; Steve.weist@oxbow.com; John@reams-construction.com; billday@paonia.com; rich@richdurnanphoto.com; Robbie.levalley@colostate.edu; Wblack8709@msn.com; pmueller@tnc.org; silvers1@tds.net; tkctew@yahoo.com; barbara_hawke@tws.org; bsharrow@blm.gov; dkauffma@blm.gov; Bruce_Krickbaum@co.blm.gov; Angie Adams; Kate Wynant; UFO AR |
| **Subject:** | Fw: Draft Minutes: Uncompahgre RMP RAC Subgroup Meeting #6 |
| **Date:** | Thursday, February 03, 2011 5:24:55 PM |
| **Attachments:** | UFO-SG 2011-01-28 DraftMinutes.doc |

Hello RAC Subgroup members,

I have attached draft minutes of the Uncompahgre RMP RAC Subgroup meeting held on January 28.  Please review the draft minutes and let me know of any errors or omissions by Friday, February 11, after which they will be revised and submitted to all group members and the administrative record.

Thank you, Bruce

<><><><><><><><><><><><><><><><><><><><>
Bruce Krickbaum
Planner, Environmental Coordinator
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401
970.240.5384


 (See attached file: UFO-SG_2011-01-28_DraftMinutes.doc)


PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.

BLM_0109586



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Uncompahgre Field Office
2465 S. Townsend Avenue
Montrose, CO  81401



# RESOURCE ADVISORY COUNCIL SUBGROUP MEETING #6
## Friday, January 28, 2011 (9:00 AM – 12:00 PM)

### Meeting Location:
### Holiday Inn Express (Jordan Room)
### 1391 South Townsend Avenue, Montrose, CO

# Meeting Minutes

**Attendees:** Angie Adams (EMPSi), Robbie Baird-LeValley, Shelby Bear, Walt Blackburn, Bill Day, Richard Durnan, William Ela, Barbara Hawke, Bruce Krickbaum (BLM Uncompahgre Field Office), Peter Mueller, John Reams, Barb Sharrow (BLM Uncompahgre Field Office), Steven Weist, Kate Wynant (EMPSi)

**Handouts:** Agenda; Highlights of the Resource Management Planning Process to Date; Comment Form for Internal Rough Draft Alternatives for Cooperating Agency and RAC Subgroup Review; Internal Rough Draft Alternatives for Cooperating Agency and RAC Subgroup Review; Maps for Internal Rough Draft Alternatives for Cooperating Agency and RAC Subgroup Review

1. **Welcome** (Bruce Krickbaum)

2. **Introductions** (All present)

3. **Planning Process to Date** (Angie Adams)
   - See handout: Highlights of the Resource Management Planning Process to Date.
   - Gray highlighting indicate changes from last meeting.
   - The Class I cultural resources overview has been completed. It's an inventory of cultural resources known on BLM land. It documents the sites and their quality. It's an inventory and will get rolled into the RMP in the alternatives.
   - The wilderness characteristics inventory report is underway and a draft is expected in the spring. In the 1990s the BLM inventoried lands for wilderness characteristics and those lands became wilderness study areas. BLM's authority to do that ended around 1993. Since then, the BLM's authority to inventory and protect wilderness characteristics has changed over time and may continue to do so. Right now, the BLM inventories lands outside of wilderness study areas (WSAs) to see if they have wilderness characteristics. That is what the report is. The alternatives can look at different ways to manage those wilderness characteristics. There is no mandate for BLM to protect lands with wilderness characteristics, unlike WSAs that the BLM must protect until Congress acts on their recommendation. The alternatives will lay out different scenarios for protecting or not protecting the wilderness characteristics. Secretary [of the Interior] Salazar issued a Secretarial Order regarding Wild Lands. As an agency we do not know what that means. It will take time to figure out how to implement Salazar's order. Direction is how we know it today but things may change.

BLM_0109587

- *Question*: Have you gotten any clarification if decision making comes down to the Field Office level? *Answer*: Yes, we would still make the decisions in the land use plan. We have always been required to inventory. Our office has done what we were supposed to do so I think we can react if things should change.
- *Question*: Do you have a sense of timing on when you'll get written instruction? *Answer*: Generally it takes at least six months for things to trickle down.
- *Question*: Is it in writing? *Answer*: The Secretarial Order is in writing but the interpretation will take some time. Our draft plan is not due to come out until fall of 2012 so we have time to react to whatever the policy will be. The inventory is the biggest piece of the puzzle and we are doing that. Now the question will be whether or not we have to make certain decisions in the plan that we have not yet included.
- *Question*: With the government having concerns over budget, how will that affect the BLM's ability to manage lands as a certain classification? *Answer*: The same as it always has. We didn't know what the budget would be like in the last 20 years and we can't predict the future.
  - *Question*: But what if you determine a stream segment is wild and you can't manage for that? *Answer*: Part of suitability does include manageability and cost, so that will be considered for wild and scenic river (WSR) determinations.

## 4. Internal Draft Alternatives (Angie Adams)

- See handouts: Comment Form for Internal Rough Draft Alternatives for Cooperating Agency and RAC Subgroup Review; Internal Rough Draft Alternatives for Cooperating Agency and RAC Subgroup Review; Maps for Internal Rough Draft Alternatives for Cooperating Agency and RAC Subgroup Review.
- Please note that these are ROUGH DRAFT alternatives. The BLM Interdisciplinary Team has not even seen these all put together. We know there are errors and inconsistencies and we will be working through those things. This is a content review and not an editorial review.
- What we are asking you to do is review these rough draft alternatives for two things. We'll take any feedback but focus on two things.
  - Ensure that we've captured a reasonable range of alternatives. It's not to identify what you like and what is the best decision. Right now we just want to make sure we have the correct range of alternatives. You should be thinking about whether or not what you want to see is somewhere in the range. If it's not, we need to know that.
  - If you think there are concepts or actions among alternatives that seem very similar, you can give us feedback on where alternatives can be combined. It might vary by row (action) or resource, not necessarily whole alternatives being combined.
- Layout:
  - The first page of the Alternatives handout states your mission.
  - Second page of the matrix is the Table of Contents and shows you what page all of the resources start on.
  - The top of each page shows the different alternatives the BLM is considering for resource management. In your notebook you should have a two-page handout that describes the alternatives and a few words. If you don't have that or can't find it, e-mail Kate to get a copy (kate.wynant@empsi.com).
  - At the top of each resource section, it shows us the minimum decisions that should be made per the BLM Land Use Planning Handbook (H-1601-1). The next line for every resource will have the goal for that resource. As we talked about previously, the goals are the same for all alternatives. Objectives and actions are ways to reach that goal.
  - The first map in the map packet shows land status (yellow=BLM; green=US Forest Service; purple=Park Service; white=private; blue=state). Note that the Gunnison Gorge and Dominguez-Escalante National Conservation Areas are excluded from this plan. Every map is the same color scheme.

- o   Alternative A is current management and what is happening now. Remember that Alternative A is included in the range of alternatives. Sometimes Alternative A forms one of the "edges" of the range.
- o   Alternative F is blank because that will be the Agency Preferred alternative which we have not gotten to. The Interdisciplinary Team has just thought of the four action alternative scenarios (Alternatives B, C, D, and E) without focusing on what they want to do (preferred alternative). We want to ensure that we have an adequate range of alternatives before moving to the preferred alternative. In March, the Interdisciplinary Team will get together to develop the preferred alternative.
- o   *Question*: When we're looking to see if there is an adequate range of alternatives, is there another set of sideboards like what the BLM can legally do? *Answer*: Yes. At one of the first meetings we discussed automatic sideboards or planning criteria. These include the BLM following the law. If it's illegal, we can't consider it so it shouldn't be in the alternatives. Because cultural resources have such strict regulations, the decision space is not very large.
  - –   *Action*: EMPSi will send planning criteria to the group.
- o   *Question*: For high-intensity management, can that include written rules, more fences, etc.? *Answer*: It could be more fences, it could be more rules, more police enforcement, more structure to competitive events. It doesn't necessarily mean the BLM has to put more resources on the ground on an on-going basis. In one form or another it means more management inputs.
- •   We are not near the preferred alternative. The BLM will meet in mid-March to talk about that. The RAC Subgroup and Cooperating Agencies will have an opportunity to review Chapter 2, including the preferred alternative, in May when the Field Office is reviewing Chapter 2. You'll also see it when it goes for public review as the Draft RMP/Draft EIS.
- •   Note that some sections have acreages and maps made and some sections do not. We know that without acres or maps it will be hard to tell us whether or not there is a good range or a bad range, but we did the best we could for today.
- •   Areas of Critical Environmental Concern (ACECs): Just because a certain alternative does not list an ACEC for protection as an ACEC doesn't mean that those values won't be protected. It might be inadvertently protected by other actions in that Alternative. For example, ACEC overlapping lands managed to protect wilderness characteristics. Each of the alternatives has to agree with itself. They each need to be implementable as a stand-alone RMP. If you see any inconsistencies within an alternative, let us know. The management for ACECs is divided by each ACEC (there is a row for each ACEC). For some resources, there is a row that shows management common to all (for example, ACECs), and then gets more specific by area or species (in the case of wildlife).
  - o   *Question*: Is there any way to get a map that would have all the designations that exist or proposed? *Answer*: No, you wouldn't be able to see everything. Perhaps in a future meeting we can do live GIS and we can add layers so you can see what overlaps are. As you go through the alternatives, keep a list of what you'd like to look at. Just be aware you might come across inconsistencies. We just want you to be aware that just because something isn't an ACEC, for example, doesn't mean the area isn't receiving protection. A lot of that analysis will come out in the impacts analysis.
    - –   *Question*: What about clickable PDFs so we can look at all the layers? *Answer*: We can ask the GIS folks but they have a lot of work to do on the alternatives that is very much a priority.
  - o   *Question*: On the top of page 213, it says closed to fluid mineral leasing for the Adobes? *Answer*: That is an example where actions don't all fit on one page for a topic, so that action belongs with Needle Rock ACEC on the previous page.
  - o   There are certain ACECs where management does really vary by alternative. For example, the Fairview ACEC (page 216) not only do the management prescriptions change, but the size of the ACEC also changes.

BLM_0109589

- – *Question*: So Fairview is currently there and you can't get rid of it but you can expand it. *Answer*: Actually, under Alternative D, it goes away. The acreages change across the alternatives and we also consider not managing it as an ACEC. This range looks at everything from zero to 4,250 acres and everything in between.
- "No similar action" means zero or we're not doing anything similar in the other alternatives. Another example on page 48, line 135. Sometimes action alternatives say "no similar action" and it's addressed somewhere else. Perhaps areas are not directly called out but discussed more generally. Also line 137 on page 48, Alternatives C and D say "no similar action" which means we're not specifically managing for river otters under those alternatives.
- A row is a concept and the alternatives vary how to do that concept. A column is an alternative or an implementable RMP. If you're working within a column looking up and down, stay within that column.
- *Comment*: Talking about mixing and matching, it seems like if you look at a geographic area there might be a synergistic way to combine some alternatives. *Answer*: Yes, we'll talk about that in a moment.
- *Question*: Do you want one of our filters to be this is a potential place for litigation? You have it written down here but will you actually be able to do it, that opens you up for litigation. *Answer*: Everything in here needs to be implementable. There might be things that seem really difficult to implement but they are still within the realm of possibility.
- *Question*: Can you look at an option, say it takes too much money for BLM to implement, can you look at an option to work with an environmental group to meet that objective? *Answer*: Yes, most resources talk about coordination. So there will be a piece that talks about coordination and cooperation. You won't see that here, but in the full Chapter 2 you will.
- *Question*: Will any of the other agencies sign a Record of Decision? *Answer*: No, not for any of the decisions in this plan. The Field Office reviews and approves, the State Office reviews and approves, Washington Office reviews and approves, etc. We are not getting specific in this management plan as to who will implement what piece, that is implementation. The BLM can coordinate with other agencies and groups without an RMP decision. That is something else to keep in mind as you're reviewing this.
- When groups come in the door and what to do a project, the first thing we do is look at our land use plan to see what it says about that piece of land. There is usually always further NEPA analysis involved in every project besides what's in the RMP.
- *Question*: What about line 238 on page 87? How do you interpret no similar action? *Answer*: This is an example where probably the resource author didn't do a very good job of cross-referencing where concepts in Alternative A are covered in other actions or objectives in Alternatives B, C, D, and E. Also, this is specific to Emphasis Area D, which under Alternative A is a specific polygon on the map and we have not put that information on a map yet.
- *Question*: Is there anything else that we don't have while we're reviewing this? *Answer*: There is a lot. You'll see a lot of places that just have "xx acres" and no map. We know it'll be hard for you to provide feedback on those places but do the best you can. If you don't have enough information to give us feedback, then don't give us feedback. In the original plans from the 80s there were a lot of decisions made that we don't really need a decision to do those actions. So sometimes where it says no similar action it's because we don't need a decision to do the things from the old RMPs.
  - ○ If you can't find something and you think it's important, comment on it and then it's incumbent on the Interdisciplinary Team to make sure it's there. If you have any questions, call us!
- *Comment*: I read the Secretary Salazar memo to mean that lands with wilderness characteristics would be managed as wilderness unless determined otherwise. *Response*: That's why I said the way we manage might be different than what we're proposing but I don't think it changes what we decide as far as areas to be managed. *Comment*: It sounds like all areas with characteristics

BLM_0109590

have to be managed as wilderness. *Response*: Well we are in a position where we can react to how to implement the Salazar direction.

- Alternative A is the current RMPs as amendments.
- Special Recreation Management Areas. There has been new direction on how to address Special Recreation Management Areas so the "decisions to be made" section of the alternatives matrix has been updated to reflect that new direction.
- *Action*: EMPSi will e-mail group Alternative A OHV map from Chapter 3 maps.
- Off-highway Vehicles (OHVs). Under current management, there are two areas open to OHV use. Open means open to cross-country OHV use (for example, the Flat Tops and North Delta). Closed means closed to OHV use. The rest is limited to existing routes, except in Dry Creek, which is limited to designated routes. In Alternatives B through E, routes in the limited area will be limited to designated routes. All acres will fall into the open, limited, or closed category. After the Record of Decision for the RMP is signed, the BLM will go to the limited areas and do route designation. We will not do that in this plan. This plan just sets up the polygons for route designation.
- Remember that if you have any questions about a program and what's going on now, you can refer to Chapter 3 which gives some background information.
- Visual Resource Management (VRM): The classes don't prohibit development, they just set up requirements for protecting the scenic quality of the area. VRM Class I areas are the most restrictive and include wilderness. VRM Class IV is the least restrictive. In the action alternatives, you'll see purple strips (VRM Class IV), which are mostly designated utility corridors from the West-wide Energy Corridor PEIS.
  - o *Action*: EMPSi will send FTP site with Chapter 3 and maps.
  - o *Comment*: The colors are very close. Can these be changed? *Answer*: Yes.
- Oil and Gas Leasing. No leasing means no future leasing; it doesn't apply to current leases (valid existing rights). This rule also applies across resources throughout the RMP. Geothermal resources are also a fluid mineral and are treated the same as oil and gas, so the oil and gas map also includes geothermal resources. No surface occupancy (NSO) is a fluid mineral stipulation that says you can't occupy the surface of the land on that lease (or portion of lease). You can get to the resource (oil, gas, geothermal) but you have to get to it from outside of the NSO restriction, which means directional drilling. Controlled surface use is a softer version where you can occupy the surface but you might have to move your operation to avoid a sensitive area. Timing limitation is like an NSO but for a specific time of the year. For example a mating season for a bat.
- Rights-of-way (ROWs). This is part of the Lands and Realty program. The maps show avoidance and exclusion areas. ROWs are pipelines, powerlines, roads, etc. In an oil and gas operation, the lease (polygon) where the drilling occurs is leased through the fluid minerals program. The pipeline to move the oil and gas would require a ROW to get it from the lease to the destination. ROW avoidance means move the ROW if you can. Exclusion has essentially no exceptions, more absolute.
- *Question*: Are our comments public record? *Answer*: Yes. If someone requested them, they would be part of the public record, but we won't publish them.
- *Action*: Your comments are due on February 28th to Kate (kate.wynant@empsi.com). The ID Team is meeting the week of March 14 to discuss the preferred so we will compile your comments and distribute them to the Interdisciplinary Team to incorporate as appropriate. Be specific and direct with your comments. If the range isn't wide enough, tell us why and what needs to be included.
- *Question*: Knowing that the sections in a column all interrelate, do you want comments on a section? *Answer*: Do whatever is easiest for you. If your comment applies to several rows, include all the rows to which your comment applies. We'll take all your comments at one time, you don't have to piecemeal them.

- Preferred alternative. There are different ways to pick the preferred. 1) Pick something from Alternative A, B, C, D, or E directly; 2) Pick a combination (something in the middle or range) of A, B, C, D, or E; or 3) Pick something outside of today's range. Options 1 or 2 are optimal. We want to get the range right now so that we can do either 1 or 2. It is possible that option 3 could happen but the later that we find out we missed something, the harder the process becomes.
- *Question*: Will there be any cases where the range seems too wide? Are you interested in us telling you that one end of the range is too extreme for consideration? *Answer*: Yes, you can let us know that you think one edge is too extreme and tell us why and where the edge should be.
- *Question*: I'm still confused where you overlap with the US Forest Service. The US Forest Service is a Cooperating Agency and it is incumbent upon the US Forest Service to review the alternatives and let us know if there are any inconsistencies. *Comment*: Maybe we could comment on areas where we would like to see consistency and coordination with the US Forest Service.
- *Question*: Do you anticipate major changes to the alternatives? For example if we spend a lot of time on something and you've already caught it can you let us know so we don't spend a lot of time on it? *Answer*: I don't think there will be major changes such that your comments would not be applicable when we receive them.

## 5. Other Items Not on the Agenda

- WSR Update (Barb Sharrow). Thank you to everyone for your help in the process. On February 7th the RAC Subgroup will meet and the Dolores/San Miguel leads will give their recommendation to the RAC Subgroup on what the recommendations to the BLM should be. The RAC Subgroup will decide on the final recommendations for the BLM. We decided early on how we would come to consensus, which has been written down and we can review that on February 7th. Barb handed out materials for the group to review and bring with them on February 7th.
  - o Keep in mind the classifications for each segment from the final eligibility report. The classifications can be changed from eligibility to suitability.
  - o The suitability criteria are also in the final eligibility report.
  - o The meeting is scheduled on February 7th from 9:00am-2:00pm at the Holiday Inn Express in the Apex Room.
  - o The meeting is public and they can speak during the allotted public comment time, just like the RAC and RAC Subgroup meetings. We may have to limit the time they can speak depending up on the number of public present. It's critical to have as many RAC Subgroup members present as possible.
  - o WSR alternatives are in the alternatives and we are currently considering all suitable and none suitable, per BLM Manual direction.
- If there are other issues that you want to meet on specifically, let Barb know. For example, domestic versus wild sheep grazing. We might have meetings with the ranchers about that issue.

## 6. Public Comments: Two members of the public present. No public comments.

## 7. Action Items / Next Meeting

- For the RAC Subgroup we have a meeting scheduled for February 7th to discuss WSR. **The meeting will be in the Apex Room at the Holiday Inn Express from 9:00am – 2:00pm.**
- Next RAC Subgroup meeting for the RMP is scheduled for Friday, April 1. We won't have a preferred for you but can talk about your comments, the next steps, WSR, etc. Richard Durnan may not be able to make it (Spring Break).
- If you have questions throughout, don't hesitate to contact Bruce, Angie, or Kate.

BLM_0109592

- *Action* (RAC Subgroup): Your comments are due on February 28th to Kate (kate.wynant@empsi.com). Be specific and direct with your comments. If the range isn't wide enough, tell us why and what needs to be included.
- *Action* (EMPSi): Send planning criteria to the group.
- *Action* (EMPSi): E-mail group Alternative A OHV map from Chapter 3 maps.
- *Action* (EMPSi): Send FTP site with Chapter 3 and maps to group.

BLM_0109593

# 14 - BEAVER CREEK

***Preliminary Classification:*** **Scenic**

***ORVs:*** **Vegetation**

***Key Points:***

- A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community for this segment might only be achieved through WSR designation.
- The primary private landowner within the corridor has expressed support for WSR designation.
- Beaver Creek provides value-added flow for the proper hydrologic function of the San Miguel River system and river-dependent resource values (including aquatic and riparian plant and animal species).

***River Segment Ownership (in Miles):***

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|-----|------|-------|---------|--------------|-----------|
| 14.19 | | | 0.06 | 14.25 | 99.5% |

***Land Ownership within One-Half Mile Wide Corridor (in Acres):***

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|-----|------|-------|---------|-------------|-----------|
| 3,707.4 | 2.7 | | 583.1 | 4,293.2 | 86.4% |

## PUBLIC COMMENT SUMMARY

***Supporting Suitability:***

- The primary private landowner (Heritage Partnership) within the corridor has expressed support for WSR designation.
- San Miguel County expresses support for a finding of suitable based upon the segment's riparian vegetation and primarily federal land.
- Three comments note that flow through the segment is essential for sustaining the riparian community within Beaver Canyon and the health of the San Miguel River.
- Two comments express general support for WSR designation.
- Two comments recommend that the BLM coordinate with the USFS to consider extending the segment into national forest lands in order to protect additional stream-related resources, rather than making the terminus an arbitrary administrative boundary.
- One comment notes that the segment consists almost entirely of federally-managed land, simplifying the effective implementation of protective management if designated.

BLM_0109594

*Opposing Suitability:*

- No comments were received specifically opposing WSR designation for Beaver Creek.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Beaver Creek provides value-added flow for the proper hydrologic function of the San Miguel River system and river-dependent resource values (including aquatic and riparian plant and animal species).

There are no absolute or conditional water rights or impoundments within the segment.  Ditch diversions totaling 28 cfs and storage rights totaling 203 acre-feet of decreed water rights upstream of the segment and on tributaries diminish flow through the segment primarily during irrigation season.  Conditional water rights totaling 10 cfs for direct flow rights and 6,043 acre-feet of storage rights occur upstream of the segment and on tributaries.  If developed, these water rights would be senior to the instream flow water right. The Norwood Water Commission has a conditional water right on the San Miguel River.

The Naturita Canal presently diverts water from Beaver Creek upstream of the segment.  The diversion is presently limited to a portion (approximately 60%) of the full decree due to water conveyance limitations of the canal system.  As the infrastructure is improved to increase the water carrying capacity of the canal, more of the decree will be diverted, further depleting flows through the segment (based upon personal communication with Colorado Division of Water Resources Water Commissioner Aaron Todd).  This water right is senior to both the existing state instream flow and any federal water right associated with designation.  In the Statewide Water Supply Initiative (SWSI 2004), the CWCB identified upper Beaver Creek as a potential dam site to help supply future water needs in the San Miguel Basin.

A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community within the segment might only be achieved through federal designation.  The CWCB holds an instream flow water right along a portion of the segment decreed for 5 cfs (from May 1 to June 30) and 2.5 cfs (from July 1 to April 30), which is structured to protect the natural environment to a reasonable extent.  The instream flow provides some protection to sustain the Vegetation ORV.  A 2.7-mile portion of the segment from the upper terminus to the confluence with Goat Creek is not protected by a water right.

### LAND OWNERSHIP AND USES

Land ownership is primarily federal within an approximately one quarter-mile buffer of the creek. Within San Miguel County, over 13% of land in the corridor is private.  Private lands on the east side of Beaver Creek are in the Forestry, Agriculture, and Open Zone, which is intended to preserve large, relatively remote areas of the county for resource, agricultural, open space, and recreational proposes.  These areas currently have minimum public facilities and services and are

considered inappropriate for substantial development.  Development and/or special uses are encouraged to be located away from environmentally sensitive land.

Private lands on the west side of the corridor are within the Wright's Mesa Zone District.  The district is intended to preserve the rural and agricultural character of Wright's Mesa while encouraging compatible, diverse economic opportunities that complement the rural landscape. Wright's Mesa has a history of co-existing agricultural, ranching, residential, and small business uses that comprise its rural character.  The district discourages sprawl patterns typically created by 35-acre lots by offering reasonable alternatives and incentives to cluster buildings, retain open lands, and keep large parcels intact.

The Beaver Creek corridor is closed to OHV use.  If developed, a conditional water right on the San Miguel River could require an ROW along portions of Beaver Creek.

### ROWs
Numerous BLM ROW authorizations cross or run adjacent to the creek, including distribution and WAPA/Tri-State transmission powerlines, a gas pipeline, a CDOT highway, and a county road. These ROWs are primarily concentrated near the confluence with the San Miguel River.

### Energy and Mineral Resources
There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

## ADMINISTRATION

Although compatible with WSR designation, neither the existing Area of Critical Environmental Concern nor the Special Recreation Management Area designation (nor the state instream flow water right) secure sufficient instream flow to sustain the Vegetation ORV.

Few existing roads and trails in the segment somewhat restrict access.  WSR designation would complement the BLM Colorado Public Land Health standard for riparian vegetation.

### Potential Costs Associated with WSR Designation
Upon finding a segment suitable, the stream and corridor would be managed to protect the ORV, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

The costs for administering and managing this segment for the riparian Vegetation ORV would not likely increase much above current funding levels.  The segment is remote, has limited trail access, and the riparian zone is primarily federal land managed as an ACEC for riparian protection, factors that assist in protecting the ORV.  It is therefore unlikely that additional facilities would be required.

BLM_0109596

### Alternative Protective Measures Considered

WSR designation would provide the highest level of protection for the riparian Vegetation ORV by necessitating acquisition of a federal water right that produces a flow rate mimicking natural, seasonal variation.  Several existing authorities and segment features provide a lesser level of ORV protection, including an ACEC designation that protects riparian values, an existing state-based instream flow water right, environmentally supportive San Miguel County land use codes, and a high percentage of federally managed land within the corridor.

BLM_0109597

## 15 - DRY CREEK

*Preliminary Classification:* **Wild**

*ORVs:* **Scenic, Geologic**

*Key Points:*

- The segment is within a potential Area of Critical Environmental Concern being considered during development of the Uncompahgre RMP and an area undergoing travel management planning, both of which would provide significant protection for the ORVs.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 10.42 | | 0.07 | | 10.49 | 99.3% |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 2,760.4 | | 80.7 | 2.8 | 2,843.9 | 97.1% |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- San Miguel County expresses support for a finding of suitable based upon the segment's exceptional visual character.
- Two comments note that Dry Creek traverses a uniquely un-roaded landscape, providing important wildlife support and general ecological vibrancy.
- Two comments state that Dry Creek contributes seasonally significant streamflow to the San Miguel River.
- Two general comments recommend extending the segment upstream of the UFO administrative boundary.
- One comment states that the distinctive scenery and geology of the area—formed in large part by the creek—warrant strong protective management for the stream and corridor.
- One comment states that the nearly 100% federally-managed land along the corridor and extensive federal land beyond the corridor, simplify protective management of the segment.

*Opposing Suitability:*

- Montrose County Board of County Commissioners has adopted a resolution opposing WSR designation, stating that it would not be in the best interest of Montrose County citizens.
- One comment notes that the scenic and geological features will not be changed or harmed by not designating the segment.
- One comment opposes designation due to the potential effects on historic uses of the area.

- One comment opposes designation due to the possible negative effects to the local economy.
- One comment states that the segment receives adequate protection through existing federal, state, and local regulations.
- One comment states that designation would create fragmented management systems, making the area more difficult and costly to administer.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

There is no instream flow water right protection for the segment. An absolute water right diversion of 5 cfs for irrigation near the lower terminus has seniority over any future instream flow water right associated with designation. Upstream of the segment, absolute water rights include ditch diversions totaling 97 cfs and reservoir storage totaling 170 acre-feet. These rights are also senior to any instream flow associated with WSR designation.

In addition, conditional water rights upstream of the segment include ditch diversions totaling 135 cfs and reservoir storage totaling 136,400 acre-feet. If developed, these water rights would be senior to any instream flow water right associated with WSR designation.

### LAND OWNERSHIP AND USES

#### ROWs and Withdrawals
Hecla Mining has ROWs for earthen berm water diversion structures and a tank site within the corridor.

#### Energy and Mineral Leasing
There are existing oil and gas leases within the segment. According to the State of Colorado Oil and Gas Commission electronic well records database, an abandoned oil and gas well remains within the corridor. Current lode mining claims have a prior existing right to lode mineral deposits. No BLM authorizations exist for these claims.

### ADMINISTRATION

#### Potential Costs Associated with WSR Designation
Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed. Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

The costs for administering and managing this segment for the Scenic and Geologic ORVs would not likely increase much above current funding levels. The segment is remote, has limited trail access, and the stream corridor is nearly all (greater than 99%) federal or state managed lands, factors that assist in protection of the ORVs and support the Wild classification. It is therefore

BLM_0109599

unlikely that additional facilities would be needed if the segment was designated.  While just under 0.1% of the stream corridor contains private land, there is no known benefit in acquiring this land to support the ORVs.

### Alternative Protective Measures Considered

The segment is within a potential Area of Critical Environmental Concern being considered during development of the Uncompahgre RMP and an area undergoing travel management planning. Implementing travel restrictions would help to protect the area from surface-disturbing activities.

BLM_0109600

WSR SUITABILITY ANALYSIS

# 16 - NATURITA CREEK

*Preliminary Classification:* **Scenic**

*ORVs:* **Fish**

*Key Points:*

- Numerous conditional water rights in the Naturita Creek drainage are senior to any federal water right associated with WSR designation.
- The Fish ORV is concentrated in the lower reaches of the segment.
- During suitability analysis, BLM staff determined that CWCB appropriation of a state instream flow water right would provide significant protection for the Fish ORV.
- A substantial amount of private land is distributed in a diffuse pattern throughout the corridor.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 9.99 | | | 14.98 | 24.97 | 40% |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 3,238.5 | 2.3 | | 3,176.6 | 6,417.4 | 50.5% |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- San Miguel County expresses support for a finding of suitable based upon the segment's primitive nature and the Fish ORV.
- Two comments state that the rare habitat supports exemplary populations of endangered native fish and species of concern, warranting the strongest possible protection for streamflow, water quality, and riparian vegetation.
- Two comments state that the BLM should coordinate with the USFS to consider extending the segment onto national forest lands in order to protect additional stream-related resources, rather than assigning an arbitrary administrative boundary.
- Two landowners in the upper portion of the segment express support for a finding of suitable.
- One comment notes that Naturita Creek contributes significantly to the flow and health of the San Miguel River and provides essential riparian habitat.

BLM_0109601

*Opposing Suitability:*

- Montrose County Board of County Commissioners has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- Six comments express concern regarding the negative influence that WSR designation would have on existing land and water uses.
- Four comments express concern over the negative effect that WSR designation would have on the socioeconomic future of the area, including impacts to private landowners.
- Three comments state that the large amount of scattered private land would make the segment difficult to manage.
- Three comments note that there would be high potential for jurisdictional disputes over administrative roles and presence in an area with significant amounts of private land.
- Two comments state that ongoing management and protection by the private landowner is preferable to intervention by agencies with potentially conflicting agendas.
- One comment states that WSR designation is unnecessary because the area is not subject to intense development.
- One comment states that WSR designation would fragment the area, making it more difficult and costly to manage.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Naturita Creek provides value-added flow for the proper hydrologic function of the San Miguel River system and river-dependent resource values (including aquatic and riparian plant and animal species).

Five diversion ditches decreed for 2.73 cfs are scattered between the lower and upper terminus and would be senior to any instream flow water right associated with WSR designation. Absolute water right decrees upstream of the segment on the mainstem and tributaries (including Maverick Draw) consist of ditch diversions totaling 1,623 cfs and storage rights totaling 43,000 acre-feet. These water rights cause significant depletion of stream flow through the segment. Changing points of diversion on existing water rights within the segment could be limited by any instream flow right associated with WSR designation.

Development of conditional water rights would be senior to any instream flow water right established as part of WSR designation and would further diminish flow through the segment. Conditional water rights on the mainstem and tributaries upstream of the segment include ditch diversions totaling 8.4 cfs and storage rights totaling 19,434 acre-feet.

The CWCB holds an instream flow water right decreed for 3 cfs year-round from above the upper terminus (at the Uncompahgre National Forest boundary) to a county road crossing just upstream of the confluence with McKee Draw (4.81 miles) structured to protect the natural environment to

BLM_0109602

a reasonable extent, including the Fish ORV.  Due to the many surface water diversions in the creek, this instream flow progressively loses value downstream of the confluence with McKee Draw.

## LAND OWNERSHIP AND USES

Almost 50% of the corridor consists of private land encompassing parts of San Miguel and Montrose counties.  Portions of the corridor within Montrose County are zoned as General Agriculture in the Montrose County Master Plan.  As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit.  Many of the uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

Portions of the corridor within San Miguel County and to the east and north of Naturita Creek are within the Wright's Mesa Zone District.  The district is intended to preserve the rural and agricultural character of Wright's Mesa, while encouraging diverse economic opportunities compatible with the rural landscape.  A history of co-existing agriculture, ranching, residential, and small business uses comprise the rural character of the area.  The district discourages the sprawl pattern typically created by 35-acre lots by offering alternatives and incentives to cluster buildings, retain open lands, and keep large parcels intact.

Portions of the corridor within San Miguel County and to the south and west of Naturita Creek are within the West End Zoning District.  The district is intended to preserve large, relatively remote areas of western San Miguel County for resource, agricultural, open space, and recreational purposes, while protecting private property rights.  These areas currently have minimal public facilities and services and are considered premature for substantial development.  Development in these areas preserves historical, archeological, and natural resources and landmarks, while allowing individuals to farm, ranch, and use necessary resources with limited intrusion on property rights.

### ROWs
Numerous ROWs exist within the corridor, including Highways 145 and 141, county roads, powerlines, telephone lines, a water pipeline, and an access road to private property.

### Energy and Mineral Resources
There are existing oil and gas leases within the segment.  While portions of the segment are within an area identified by the USGS as having coal potential, the classification does not preclude WSR designation.  There are no mining claims within the corridor.

## ADMINISTRATION

The diffuse and scattered pattern of private land within the corridor could make this segment difficult to administer.  Given the current level of water depletion in Naturita Creek, sufficient flow needed to protect the fish population might need to be acquired from existing decree owners.  WSR designation would be consistent with the BLM Colorado Public Land Health standard for special status species.

Proposed management actions include designating the area as a Special Recreation Management Area, as well as conducting travel management planning for Burn Canyon (part of the Norwood Recreation District in Montrose and San Miguel counties).

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORV, with little additional funding needed. Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

The costs for administering and managing this segment for the Fish ORV would be substantially higher than current funding levels.

Approximately half (3,177 acres) of the stream corridor is composed of private land with a fragmented pattern throughout most of the reach that could restrict access and limit available management options within the stream corridor. Significant land acquisition from willing sellers would be necessary in order to effectively and proactively manage for the ORV. Some stream channel modification projects might be needed to facilitate fish propagation.

### Alternative Protective Measures Considered

Apart from WSR designation, options for protecting the Fish ORV include actions implemented in accordance with the Range-wide Conservation Agreement and Strategy for Roundtail Chub *(Gila robusta)*, Bluehead Sucker *(Catostomus discobolus)*, and Flannelmouth Sucker *(Catostomus latipinnis)*.

BLM staff determined that appropriation of an instream flow water right below McKee Draw by the Colorado Water Conservation Board would provide significant protection for the Fish ORV.

# 17 - SALTADO CREEK

*Preliminary Classification:* **Wild**

*ORVs:* **Vegetation**

*Key Points:*

- A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community might only be achieved through WSR designation.
- Saltado Creek provides value-added flow for the proper hydrologic function of the San Miguel River system and river-dependent resource values (including aquatic and riparian plant and animal species).
- San Miguel County and a local homeowners association support WSR designation.
- The majority of the segment is comprised of contiguous BLM-administered lands, allowing for efficient and cost-effective management if designated.
- There are no roads or water right diversions within the segment.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 4.14 | | | 1.42 | 5.56 | 74.6% |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 1,448.4 | | | 313.0 | 1,761.4 | 82.2% |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- San Miguel County and a local homeowners association have expressed support for WSR designation.
- Four comments note that Saltado Creek contributes significantly to the flow and health of the San Miguel River and supports stream-related values worth protecting.
- Three comments encourage the BLM to coordinate with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem.
- Two comments express general support for WSR designation.
- One comment notes that extensive federally-managed land along the lower four miles of the segment would facilitate effective management.

*Opposing Suitability:*

- One comment states that this segment receives adequate protection through existing federal, state, and local regulations.
- One comment states that WSR designation of Saltado Creek would fragment the area, making it more difficult and costly to manage.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community might only be achieved through federal designation.  The CWCB holds an instream flow water right along the entire segment decreed for 2 cfs (from May 1 to June 30) and 1 cfs (from July 1 to April 30) and structured to protect the natural environment (including the Vegetation ORV) to a reasonable extent.  Water yield through the segment contributes significantly to the proper hydrologic function of the San Miguel River.

There are no water diversions or impoundments within the segment.  Absolute water rights upstream of the segment include ditch diversions totaling 39 cfs and storage rights totaling 11.4 acre-feet.  These water rights cause some depletion of stream flow through the segment, especially during the irrigation season.

Conditional water rights above the upper terminus include flow diversions totaling 5 cfs and storage rights totaling 15 acre-feet.  If developed, these water rights would have seniority over the existing instream flow and any water right established as part of WSR designation, and could further diminish flow through the segment.

### LAND OWNERSHIP AND USES

Approximately 18% of the corridor consists of private land within the Forestry, Agriculture, and Open Zone District of San Miguel County.  The district is intended to preserve large, relatively remote areas of the county for resource, agricultural, open space, and recreational proposes.  These areas currently have minimal public facilities and services and are considered inappropriate for substantial development.  Development and special uses are encouraged to be located outside of environmentally sensitive areas.

#### Special Designations
The segment is within the San Miguel Special Recreation Management Area and Area of Critical Environmental Concern.  The area is closed to OHV use.

#### ROWs and Withdrawals
Numerous BLM ROW authorizations cross or briefly run adjacent to the creek, including distribution and telephone lines, a CDOT highway, two WAPA transmission lines, and the Tri-State Nucla-Sunshine 115 kV transmission project.

While portions of the segment are within an area identified as a federal Power Site, the classification does not preclude WSR designation.  The federal government acquired public access easement across private lands adjacent to the creek in the southern upper reach of the segment.

*Energy and Mineral Leasing*
There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

## ADMINISTRATION

The northern lower reach of the segment has contiguous public land and lack of development, while along the southern upper reach, land ownership is split.  WSR designation would be consistent with the BLM Colorado Public Land Health standard for riparian vegetation.

*Potential Costs Associated with WSR Designation*
Upon finding a segment suitable, the stream and corridor would be managed to protect the ORV, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the riparian Vegetation ORV would require a moderate increase over current funding levels.  The segment is remote, has no developed access, and 82% of the corridor is federal land managed as an ACEC for riparian protection, factors that assist in protecting the ORV.

It is unlikely that additional facilities would be necessary as a result of WSR designation.  If available for purchase from willing sellers, private land parcels within the corridor would have added value for ORV protection.

*Alternative Protective Measures Considered*
WSR designation would provide the highest level of protection for the riparian Vegetation ORV by necessitating acquisition of a federal water right that produces flow rates mimicking natural, seasonal variation.  However, several existing authorities and segment features provide a lesser level of ORV protection, including: an ACEC designation intended to protect riparian values, an existing state-based instream flow water right, environmentally supportive San Miguel County land use codes, and a high percentage of federally managed land within the corridor.

WSR SUITABILITY ANALYSIS

## 18 - SAN MIGUEL RIVER, SEGMENT 1

***Preliminary Classification:*** **Recreational**

***ORVs:*** **Scenic, Recreational, Wildlife, Historic, Vegetation, Paleontology**

***Key Points:***

- The segment contains a wide array of ORVs.
- A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community for this segment might only be achieved through WSR designation.
- Over 80% of land within the segment is public.  Most of the segment is within San Miguel County, which has expressed support for WSR designation.  A small portion of the segment is within Montrose County, which opposes designation.

***River Segment Ownership (in Miles):***

| *BLM* | *USFS* | *State* | *Private* | **TOTAL LENGTH** | **% FEDERAL** |
|---|---|---|---|---|---|
| 17.34 | 0.08 | | 9.81 | **27.23** | **64%** |

***Land Ownership within One-Half Mile Wide Corridor (in Acres):***

| *BLM* | *USFS* | *State* | *Private* | **TOTAL ACRES** | **% FEDERAL** |
|---|---|---|---|---|---|
| 6,679.2 | 136.0 | | 1,628.8 | **8,444.0** | **80.7%** |

## PUBLIC COMMENT SUMMARY

***Supporting Suitability:***

- San Miguel County has expressed support for WSR designation.
- Five comments note that the river contributes valuable flow to support downstream river-related values (such as fish and riparian vegetation).
- Four general comments recommend that all San Miguel River segments be found suitable.
- Two comments support WSR designation and recommend that all mineral development be excluded from the corridor.
- One comment states that this segment has unparalleled scenery and attendant natural and cultural features.
- One comment recommends suitability based upon the number and quality of ORVs.
- One comment expresses support for WSR designation, but recognizes the complexities of administering the area due to the patchwork of federal and private land.
- One comment notes that WSR designation would provide recreational opportunities that benefit local economies.

BLM_0109608

- One comment supports WSR designation to protect the outstanding river canyon setting and one of the last undammed rivers in Colorado.

*Opposing Suitability:*

- Montrose County Board of County Commissioners has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- Eleven comments express concern that WSR designation may limit future mining activities within the corridor.
- Nine comments state that existing area designations are sufficient to protect the ORVs.
- Four comments express opposition because of the potential negative impact WSR designation could have on water rights.
- Two comments express opposition because of potential negative impact that WSR designation could have on historic uses in the area.
- Two comments remark that WSR designation would hamper future economic development in the local area.
- Two comments express general opposition to WSR designation.
- One comment expresses concern that WSR designation would fragment the area, making it more difficult and costly to manage.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of the Lower San Miguel River and Dolores River downstream.  The CWCB holds two instream flow water rights structured to protect the natural environment to a reasonable extent.  The instream flow provides some protection to sustain the ORVs.  Instream flow from Deep Creek to Fall Creek provides for a year-round flow of 20 cfs, while the flow from Fall Creek to the lower terminus calls for 93 cfs from May 1 to October 14 and 61 cfs for the remainder of the year.  Flow needed to support some recreational boating activities and riparian protection might only be secured through water rights associated with WSR designation.

Approximately six water diversions scattered along the segment are not prominent features in the corridor and do not detract from the natural character of the river.  Impoundments upstream of the segment include Trout Lake and Hope Lake on the Lake Fork tributary.  There are a few off-channel impoundments within the segment associated with Cascabel Ranch near the lower terminus.

According to a draft BLM San Miguel Instream Flow Assessment, senior water rights on the main stem of the San Miguel River between Horsefly Creek and Naturita Creek divert water downstream of the segment.  Much of this water demand is conveyed through the segment, but is limited primarily to the irrigation season.

BLM_0109609

Estimates from the HydroBase Colorado Decision Support System indicate that there are more than 160,000 acre-feet of conditional storage water rights on either the main stem or tributaries within and upstream of the segment.  If developed, these rights could influence flow through the segment.

Much of the water needed to meet future demands would come from conservation practices and development of existing water rights, including some conditional water rights in the San Miguel Basin.  Most of these rights are senior to existing instream flow water rights or any instream flow created through WSR designation.

According to a draft BLM San Miguel instream flow assessment, dam sites identified on the main stem are unlikely to be developed given current costs and concern over environmental impacts.

Any new water right or change to existing water rights is limited by the instream flow water right and would contain BLM conditions to ensure compliance with the WSR Act.

## LAND OWNERSHIP AND USES

### Zoning

A portion of the segment within Montrose County is zoned as General Agriculture in the Montrose County Master Plan.  As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit.  Many of these uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

Portions of the corridor downstream of Beaver Creek and on the southwest side of the San Miguel River are within the Wright's Mesa Zone District in San Miguel County.  The district is intended to preserve the rural and agricultural character of Wright's Mesa while encouraging diverse economic opportunities compatible with the rural landscape.  Wright's Mesa has a history of coexisting agriculture, ranching, residential, and small business uses that comprise its rural character.  The district discourages large-lot patterns of sprawl (typically created through 35-acre developments) by offering alternatives and incentives to cluster buildings, retain open lands, and keep large parcels intact.

The remaining portions of the corridor within San Miguel County are primarily in the Forestry, Agriculture, and Open Zone District.  The district is intended to preserve large, relatively remote areas of the county for resource, agricultural, open space, and recreational purposes.  These areas currently have minimal public facilities and services and are considered inappropriate for substantial development.  Development and/or special uses are encouraged to be located away from environmentally sensitive land.

The incorporated town of Placerville is zoned into two districts: The Placerville Residential Zone District provides areas and design standards for single-family residences surrounding the Placerville Commercial Zone District.  The Placerville Commercial Zone District provides standards for commercial establishments located on Front Street in Placerville and at the southwest corner of the

intersection of State Highways 62 and 145 west of Placerville.  The size of the district cannot be increased.

There are a few planned unit developments along the San Miguel River in the vicinity of the incorporated town of Sawpit.  The allowed uses within the planned unit developments are primarily single family housing on large lots (with a minimum of 35 acres).  Other uses, such as multi-family housing and neighborhood commercial development, are allowed upon approval from the Board of County Commissioners.

### ROWs and Withdrawals
ROWs within the segment include four power and nine telephone lines, gas pipelines, private access roads, county roads, a highway, an historic ditch, two WAPA 345-kilovolt power lines, the McKeever drift fence to the USFS boundary, and C-64335 river diversion weirs.

While portions of the segment are within an area identified by the Federal Energy Regulatory Commission as having potential for hydropower development, the Power Site classification does not preclude WSR designation.

### Energy and Mineral Leasing

There are existing oil and gas leases within the segment.  According to the State of Colorado Oil and Gas Commission electronic well records database, there is an abandoned oil and gas well within the corridor.

Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

### ADMINISTRATION

Several private land parcels are scattered throughout the corridor.  A small portion of the segment is within Montrose County, which has adopted a resolution opposing WSR designation.

WSR designation would complement BLM Colorado Public Land Health standards for riparian vegetation and wildlife.

### Special Designations
Most of the segment is within a Special Recreation Management Area and an Area of Critical Environmental Concern.

### Potential Costs Associated with WSR Designation
Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

The costs for managing this segment for the Scenic, Recreational, Wildlife, Historic, riparian Vegetation, and Paleontologic ORVs would be moderately higher than current funding levels.  The

segment is within an existing SRMA and an ACEC from Placerville downstream, both of which have resulted in additional funding and resource protection actions along the river corridor.

A state highway parallels most of this reach, providing for easy access and use of the river and riparian area.

The segment includes several scattered parcels of private land. The BLM would pursue land acquisition from willing sellers as funding and opportunities arose, which would add value toward management and protection of the ORVs.

### Alternative Protective Measures Considered

While WSR designation would provide the most comprehensive protection for the ORVs, several existing authorities and segment features provide some lesser level of ORV protection:

- ACEC and SRMA designations emphasize management for riparian and recreation values.
- An existing state-based instream flow water right in the San Miguel River helps to sustain the water-dependent ORVs.
- Development objectives on private lands in most of the segment are within the San Miguel County Land Use Code, which promotes preserving large remote areas for resource, agricultural, open space, and recreational purposes.
- A large portion of private land within the corridor is managed by The Nature Conservancy, which supports a finding of suitability.

In addition, conservation easements could be pursued on select private portions of the corridor, which would be value added in providing protection for the ORVs.

WSR SUITABILITY ANALYSIS

## 19 - SAN MIGUEL RIVER, SEGMENT 2

*Preliminary Classification:* **W**ild

*ORVs:* **S**cenic, **R**ecreational, **W**ildlife, **V**egetation

*Key Points:*

- The segment contains a wide array of ORVs.
- The segment is comprised entirely of public lands.
- A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community for this segment might only be achieved through WSR designation.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|------|------|-------|---------|--------------|-----------|
| 3.64 | 0.37 |       |         | 4.01         | 100%      |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|--------|-------|-------|---------|-------------|-----------|
| 1,112.0 | 122.7 |       | 21.3    | 1,256.0     | 98.3%     |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- Five comments offer support for finding the entire segment suitable.
- Four comments note the significant contribution of the river's flow to river-related values (such as fish and riparian vegetation) downstream.
- Two comments encourage the BLM to coordinate with other agencies, including the USFS and FWS, to ensure protection of the extended riparian ecosystem.
- Two comments recommend that all mineral development be excluded from the corridor.
- One comment states that this relatively short segment contains unusually undisturbed stream and corridor features, warranting the strongest possible protection.
- One comment notes that land within the segment is 100% federally managed, simplifying the implementation of effective protective management.
- One comment states that WSR designation would provide recreational opportunities that benefit local economies.
- One comment expresses support for WSR designation in order to protect the outstanding river canyon setting and one of the last undammed rivers in Colorado.

*Opposing Suitability:*

- Montrose County Board of County Commissioners has adopted a resolution opposing WSR designation, as it is thought not to be in the best interest of Montrose County citizens.
- Twelve comments express concern that WSR designation may limit future mining activities in the corridor.
- Nine comments indicate that the segment receives adequate protection through existing federal, state, and local regulations.
- Five comments express concern that WSR designation could negatively impact water rights.
- Three comments state that WSR designation could negatively impact historic uses of the area.
- Two comments state that upstream, off channel storage may be necessary and WSR designation would restrict local management of the river water.
- Two comments express general opposition to WSR designation.
- Two comments state that WSR designation would hamper future economic development in the local area.
- One comment states that WSR designation would create fragmented management systems, making the area more difficult and costly to manage.
- One comment expresses concern that WSR designation of this segment could restrict future growth in the West End of Montrose County.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment significantly contributes to the proper hydrologic function of the lower San Miguel River and Dolores River downstream.

The CWCB holds an instream flow water right along the entire segment decreed for 93 cfs from May 1 to October 14 and 61 cfs the remainder of the year structured to protect the natural environment to a reasonable extent. The instream flow provides some protection to sustain the ORVs.

There are no absolute or conditional water rights or impoundments within the segment.

If developed, conditional water rights upstream of the segment could influence flow through the segment. Estimates from the HydroBase Colorado Decision Support System indicate that there are more than 160,000 acre-feet of conditional storage water rights upstream of the segment, on either the mainstem or tributaries.

There are a few impoundments upstream of the segment, including Trout Lake and Hope Lake (on the Lake Fork tributary), and a few off-channel impoundments associated with Cascabel Ranch near the lower terminus.

New water rights or changes to existing water rights are limited by the existing instream flow right. If designated, the BLM could add terms and conditions to ensure compliance with the WSR Act.

Senior rights on the main stem of the San Miguel River divert water in the reach between Horsefly Creek and Naturita Creek downstream of this segment (based upon San Miguel legal and institutional analysis). Much of the water demanded by these diversions is conveyed through the segment, primarily limited to the irrigation season.

Much of the water needed to meet future demand in the San Miguel River Basin would come from conservation practices and development of existing water rights, including some of the existing conditional water rights in the San Miguel Basin. Most of these rights are senior to both the existing instream flow water rights and any instream flow created through WSR designation.

According to San Miguel legal and institutional analysis, potential dam sites on the San Miguel River (downstream of Leopard Creek near the confluence with Beaver Creek and above Horsefly Creek) and major tributaries (including Horsefly Creek and Maverick Draw) identified in the 2004 SWSI are unlikely to be developed given current costs and concern over environmental impacts. Saltado Reservoir (with a conditional fill and refill right totaling over 140,000 acre-feet on the San Miguel River downstream of Specie Creek) is included in this assessment.

## LAND OWNERSHIP AND USES

Approximately 1.7% of the corridor consists of private land zoned as General Agriculture in the Montrose County Master Plan. As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a fee or special use permit. Many of the uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

### Special Designations

The segment is within an ACEC, as well as a Special Recreation Management Area. WSR designation is compatible with these existing designations.

### Withdrawals

While portions of the segment are within an area classified as having potential for hydropower, the federal Power Site classification does not preclude WSR designation.

### Energy and Mineral Resources

There are existing oil and gas leases within the segment. Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

## ADMINISTRATION

There is no road access within the segment.

River flow needed to support some recreational boating activities and provide ample protection for the riparian vegetation might only be secured through water rights associated with WSR designation. Designation would complement BLM Colorado Public Land Health standards for riparian vegetation and wildlife.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Estimated costs for administering and managing this segment for the Scenic, Recreational, Wildlife, and riparian Vegetation ORVs would be slightly higher than current funding levels.  The river corridor is remote, has limited trail access, and is entirely comprised of federal land, most of which is managed as both an ACEC (for riparian protection) and an SRMA.  These designations provide some additional funding necessary for managing and protecting the ORVs.

### Alternative Protective Measures Considered

The area is identified in the Colorado Citizens Wilderness Proposal and the Colorado Wilderness Act of 2009 (H.R. 4289) introduced by Congresswoman Diana DeGette.  WSR designation would be compatible with wilderness designation and wilderness characteristics.

The segment is within an ACEC, as well as a Special Recreation Management Area.

BLM_0109616

# 20 - SAN MIGUEL RIVER, SEGMENT 3

**Preliminary Classification:** **Scenic**

**ORVs:** **Recreational, Fish, Wildlife, Vegetation**

**Key Points:**

- The segment contains a wide array of ORVs.
- A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community within the segment might only be achieved through WSR designation.
- Sufficient flow for certain recreational boating activities might only be secured with water rights acquired through WSR designation.

**River Segment Ownership (in Miles):**

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 5.30 | | | 2.01 | 7.31 | 72.5% |

**Land Ownership within One-Half Mile Wide Corridor (in Acres):**

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 1,880.7 | | | 407.6 | 2,288.3 | 82.2% |

## PUBLIC COMMENT SUMMARY

**Supporting Suitability:**

- Five comments recommend finding the entire segment suitable.
- Four comments note the critical contribution of San Miguel River flows to support downstream river-related values (such as fish and riparian vegetation).
- Two comments stress the need to designate this segment to protect recreational uses and aquatic habitat.
- Two comments express support for WSR designation and recommend that all mineral development be excluded from the corridor.
- One comment notes that private land within the segment is consolidated in one location and would not significantly affect implementing essential protective measures.
- One comment expresses support for suitability without the private lands near the upper terminus of the segment.
- One comment states that WSR designation would provide recreational opportunities that benefit local economies.

BLM_0109617

- One comment expresses support for WSR designation in order to protect the outstanding river canyon setting and one of the last undammed rivers in Colorado.

***Opposing Suitability:***

- Montrose County has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- Eleven comments express concern that WSR designation might restrict future mining activities in the corridor.
- Eleven comments indicate that this segment receives adequate protection through existing federal, state, and local regulations.
- Nine comments express concern that WSR designation may affect current and future water use.
- Five comments state that WSR designation could negatively impact historic uses of the area.
- Two comments express general opposition to WSR designation.
- Two comments state that WSR designation could hamper future economic development in the local area.
- One comment states that WSR designation would fragment the area, making it more difficult and costly to administer.
- One comment states that the segment should not be designated due to the number of ROWs within the corridor.
- One landowner requests that private land at the lower terminus of the segment not be included.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of the lower San Miguel River and Dolores River downstream.  There is no instream flow water right on the segment, so changes or enlargements to existing water rights or new water rights on private property could further diminish flow.

Four absolute water rights within the segment divert up to 153 cfs for irrigation and some municipal use.  An instream flow right associated with WSR designation could limit the ability to change points of diversion on existing water rights.

The Highline Canal diversion (decreed for 145 cfs) is located about one mile downstream of the upper terminus and parallels the San Miguel River for most of the segment.  The canal is senior to most other water rights and is primarily used for crop irrigation downstream in late summer, when irrigation demand is high and snowmelt has diminished.

While there are no existing impoundments within the segment, Trout Lake and Hope Lake impound water upstream on the Lake Fork tributary.  In addition, there are a few off-channel impoundments near the lower terminus associated with Cascabel Ranch.

Estimates from the HydroBase Colorado Decision Support System indicate that there are more than 204,000 acre-feet of conditional water storage rights upstream of the segment, on both the main stem and tributaries.  Much of the water needed to meet future demand is likely to come from conservation practices and development of existing water rights, including conditional rights in the San Miguel Basin.  Most of these rights would be senior to any instream flow created through WSR designation.

Future potential dam sites identified on the San Miguel River and major tributaries are unlikely to be developed given current costs and concerns with environmental impacts (according to a draft BLM instream flow assessment).  This would include the Saltado Reservoir on the San Miguel River downstream of Specie Creek, which has a conditional water right for fill and refill totaling over 140,000 acre-feet.

## LAND OWNERSHIP AND USES

Approximately 17.8% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan.  As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit).  Many of the uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

### Special Designations

WSR designation would be consistent with existing Area of Critical Environmental Concern and Special Recreation Management Area designations.

### ROWs and Withdrawals

Highway 90, Transco and Rocky Mountain Natural Gas pipelines, two Tri-State transmission lines, and one distribution powerline cross the segment.  The Highline Canal, telephone lines, and a county road parallel the segment.  There is a private access road one quarter to one half mile to the west and a water pipeline within one quarter mile to the north.

While portions of the segment are identified as having potential for hydropower development, the federal Power Site classification does not preclude WSR designation.

### Energy and Mineral Leasing

According to a State of Colorado Oil and Gas Commission electronic well records database, there are existing oil and gas leases within the segment, as well as two abandoned oil and gas wells.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

## ADMINISTRATION

A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community for this segment might only be achieved through WSR designation.

River flow needed to support certain recreational boating activities might only be secured through water rights associated with WSR designation.

WSR designation would complement BLM Colorado Public Land Health standards for riparian vegetation, special status species, and wildlife.

This segment supports habitat for native warm water fish, making WSR designation consistent with actions in the Range-wide Conservation Agreement and Strategy for Roundtail Chub *(Gila robusta)*, Bluehead Sucker *(Catostomus discobolus)*, and Flannelmouth Sucker *(Catostomus latipinnis)*. Depletion of flow by the Highline Canal might inhibit the ability to sustain the Fish ORV, as well as the Vegetation ORV.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed. Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the Recreational, Fish, Wildlife, and riparian Vegetation ORVs are estimated to be moderately higher than current funding levels. The segment is managed as an SRMA and an ACEC (for riparian protection), both of which have provided some funding for facilities and maintenance to protect the ORVs.

With easy access to the river corridor provided by a county road running parallel to the river, visitor use could increase if designated and additional funding for facilities would likely be needed. If purchased from willing sellers, private land parcels within the corridor would have added value for ORV protection.

### Alternative Protective Measures Considered

While WSR designation would provide the most comprehensive protection for the ORVs, other existing authorities provide some level of ORV protection, including the ACEC and SRMA designations, which emphasize management for riparian and recreation values. Conservation easements could be pursued for select private portions of the corridor, which would add value toward ORV protection. Appropriation of a state-based instream flow water right through the segment would also help to sustain the ORVs.

WSR SUITABILITY ANALYSIS

## 21 - SAN MIGUEL RIVER, SEGMENT 5

*Preliminary Classification:*  **Recreational**

*ORVs:*  **Recreational, Fish, Historic, Vegetation**

*Key Points:*

- Water yield contributes significantly to the proper hydrologic function of the Lower Dolores River downstream.
- A stream flow regime that mimics the natural seasonal changes necessary for sustaining a healthy riparian vegetation community might only be attainable through WSR designation.
- The Nature Conservancy (TNC) is a principal landowner that has expressed support for WSR designation of the segment.
- The CWCB has declared its intent to appropriate a state instream flow for the lower San Miguel River.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 2.59 | | | 11.41 | 14.00 | 18.5% |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 2,738.1 | | | 1,610.4 | 4,348.5 | 63% |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- Nine comments highlight the significant flow contribution of the San Miguel River in support of downstream river-related values (such as fish and riparian vegetation).
- Two comments support WSR designation and recommend that all mineral development be excluded from the corridor.
- One comment encourages the BLM to coordinate with other agencies to ensure protection of the extended riparian ecosystem.
- One comment expresses support for WSR designation without road closures.
- One comment states that WSR designation would provide recreational opportunities benefitting local economies.
- One comment expresses support for WSR designation in order to protect the outstanding river canyon setting and one of the last undammed rivers in Colorado.
- One comment expresses general support for WSR designation of this segment.

*Opposing Suitability:*

- Montrose County has adopted a resolution opposing WSR designation, as it is thought not to be in the best interest of Montrose County citizens.
- Montrose County expresses the need to maintain public access along portions of the segment, specifically for emergency connections to the Paradox Area. Montrose County also expressed the belief that river management would be better served with a segment break at Tabeguache Creek, because the river has more consistent hydrology and would be less complicated to manage.
- Fifteen comments express concern that WSR designation could limit future mining activities in the corridor.
- Ten comments express the belief that the segment receives adequate protection through existing federal, state, and local regulations.
- Nine comments express concern that WSR designation could impact current and future water use.
- Six comments express concern that WSR designation could negatively impact historic uses of the area.
- Three comments state that WSR designation would fragment and make the area more difficult and costly to manage.
- Two comments state that WSR designation would hamper future economic development in the local area.
- Two comments express general opposition to WSR designation.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of the Lower Dolores River.

There is currently no instream flow protection for the segment.  The BLM and CDOW have recommended and the CWCB has declared its intent to appropriate an instream flow for the lower San Miguel River (from the confluence of Calamity Draw to the confluence with the Dolores River) of 325 cfs (from April 15 to June 14), 170 cfs (from June 15 to July 31), 115 cfs (from August 1 to August 31), 80 cfs (from September 1 to February 28), and 115 cfs (from March 1 to April 14) structured to benefit the propagation of native warm water fishes.  Until an instream flow water right is appropriated, changes or enlargements to existing water rights, or new water rights could occur on private property, further diminishing flow.

While there are no existing impoundments within the segment, there are a few small impoundments upstream (including Trout Lake and Hope Lake on the Lake Fork tributary), and a few off-channel impoundments near lower the terminus associated with Cascabel Ranch.

The segment contains approximately six water diversions, at least two (San Miguel Power Company Canal and Johnson Ditch) of which were owned by Umetco Minerals Corporation and donated to the CWCB for other than decreed uses. Decision on the fate of these water rights is pending, but potential future uses include conveying a portion to Montrose County or local governments within San Miguel Basin, and donating a portion to an instream flow right in the lower San Miguel River. Future use of these rights could result in changes to existing points of diversion.

According to estimates from the HydroBase Colorado Decision Support System, there are over 349,000 acre-feet of conditional storage water rights upstream of the segment, on either the mainstem or tributaries of the San Miguel River.  If developed, these water rights would be senior to any instream flow or federal water right for the segment and could further diminish flow.

Much of the water needed to meet future regional demand would be derived through conservation practices and development of existing water rights, including conditional water rights in the San Miguel Basin. Most of these conditional water rights are senior to both existing instream flow water rights and any instream flow created through WSR designation.

SWSI (2004) identified future potential dam sites on the San Miguel River (downstream of Leopard Creek near the confluence with Beaver Creek and above Horsefly Creek) and major tributaries, including Horsefly Creek and Maverick Draw.  According to a draft BLM San Miguel Instream Flow Assessment, even though dam sites have been identified on the mainstem, they are unlikely to be developed given current costs and concerns with environmental impacts. This would also include the Saltado Reservoir with a fill and refill right totaling over 140,000 acre-feet on the San Miguel River downstream of Specie Creek.

An instream flow or federal water right associated with WSR designation could restrict new water rights or changes to existing water rights.

### Land Ownership and Uses

Approximately 37% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan.  As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit.  Many of the uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

### ROWs and Withdrawals

ROWs within the corridor include Colorado State Highway 141, several county roads, telephone and power lines, an historic irrigation ditch, and a water pipeline.

There is a bat maternity roost withdrawal in an abandoned uranium mine along the river.

While portions of this segment have been identified as having potential for hydropower development, the federal Power Site classification does not preclude WSR designation.

### Energy and Mineral Resources

There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

## Administration

WSR designation would complement the public land health standard for riparian vegetation and special status species.  This segment supports habitat for native warm water fishes, and designation would be consistent with actions in the Range-wide Conservation Agreement and Strategy for Roundtail Chub *(Gila robusta)*, Bluehead Sucker *(Catostomus discobolus)*, and Flannelmouth Sucker *(Catostomus latipinnis)*.

TNC and Umetco Minerals Corporation are the principal landowners within the corridor.  TNC supports WSR designation and working with the BLM to manage the segment ORVs.  The BLM is uncertain regarding the position of Umetco Minerals Corporation on WSR designation.

### Potential Costs Associated with WSR Designation

With a finding of suitability, the stream and corresponding corridor would be managed to protect the ORVs, with little additional funding needed.  Upon formal WSR designation, the segment would require additional funding for signage, public education, ranger patrolling, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the Recreational, Fish, Historic, and riparian Vegetation ORVs would be substantially higher than current funding levels.  The river segment is comprised of fragmented parcels of public lands comprising 63% of the corridor and 19% of the stream channel.  It is likely that the BLM would seek to acquire private land parcels from willing sellers (exclusive of lands owned by TNC) to improve management and protection for the ORVs.

The segment is paralleled by State Highway 141, part of the Unaweep Tabeguache Scenic and Historic Byway.  The highway provides easy access to the river corridor, and if designated, visitor use could be expected to increase slightly, necessitating additional funding for facilities.

### Alternative Protective Measures Considered

While WSR designation would provide the most comprehensive protection for the ORVs, conservation easements on select private portions of the corridor would offer added value toward protecting the ORVs.  If appropriated, a state-based instream flow water right would help to sustain the Fish and Vegetation ORVs.

WSR SUITABILITY ANALYSIS

## 22 - SAN MIGUEL RIVER, SEGMENT 6

*Preliminary Classification:*  **Recreational**

*ORVs:*  **Recreational, Fish, Historic, Vegetation**

*Key Points:*

- A stream flow regime that mimics the natural seasonal changes necessary for sustaining a healthy riparian vegetation community might only be attainable through WSR designation.
- Water yield contributes significantly to the proper hydrologic function of the Lower Dolores River downstream.
- The Nature Conservancy (TNC) is a principal landowner supporting WSR designation.
- The CWCB has declared its intent to appropriate a state instream flow for the lower San Miguel River.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|------|------|-------|---------|--------------|-----------|
| 2.25 |      |       | 0.98    | 3.23         | 69.66%    |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|-------|------|-------|---------|-------------|-----------|
| 808.7 |      |       | 180.7   | 989.4       | 81.7%     |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- Nine comments highlight the significant flow contribution of the San Miguel River in support of downstream river-related values (such as fish and riparian vegetation).
- Two comments note that private land is consolidated at one end of the segment and would not significantly affect implementing essential protective measures.
- Two comments support WSR designation and recommend that all mineral development be excluded from the corridor.
- One comment encourages the BLM to coordinate with other agencies to ensure protection of the extended riparian ecosystem.
- One comment expresses support for WSR designation without road closures.
- One comment states that WSR designation would provide recreational opportunities benefitting local economies.
- One comment expresses support for WSR designation in order to protect the outstanding river canyon setting and one of the last undammed rivers in Colorado.

- One comment expresses general support for designation of this segment.

***Opposing Suitability:***

- Montrose County has adopted a resolution opposing WSR designation, as it is thought not to be in the best interest of Montrose County citizens.
- Fifteen comments express concern that WSR designation could limit future mining activities in the corridor.
- Ten comments express the belief that the segment receives adequate protection through existing federal, state, and local regulations.
- Nine comments express concern that WSR designation could impact current and future water use.
- Six comments express concern that WSR designation could negatively impact historic uses of the area.
- Three comments state that WSR designation would fragment and make the area more difficult and costly to manage.
- Two comments state that WSR designation would hamper future economic development in the local area.
- Two comments express general opposition to WSR designation.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of the Lower Dolores River.

There is currently no instream flow protection for the segment.  The BLM and CDOW have recommended and the CWCB has declared its intent to appropriate an instream flow for the lower San Miguel River (from the confluence of Calamity Draw to the confluence with the Dolores River) of 325 cfs (from April 15 to June 14), 170 cfs (from June 15 to July 31), 115 cfs (from August 1 to August 31), 80 cfs (from September 1 to February 28), and 115 cfs (from March 1 to April 14) structured to benefit the propagation of native warm water fishes.  The CWCB will consider the appropriation recommendation at their January 25-26, 2011 meeting.  Until an instream flow water right is appropriated, changes or enlargements to existing water rights, or new water rights could occur on private property, further diminishing flow.

While there are no existing impoundments within the segment, there are a few small impoundments upstream (including Trout Lake and Hope Lake on the Lake Fork tributary) and a few off-channel impoundments near the lower terminus associated with Cascabel Ranch.

There are a few small impoundments upstream of the segment (including Trout Lake and Hope Lake) located on the Lake Fork tributary.

BLM_0109626

According to estimates from the Colorado Decision Support System (HydroBase), there are more than 349,000 acre-feet of conditional storage water rights upstream of the segment, on either the mainstem or tributaries of the San Miguel River. If developed, these water rights would be senior to any instream flow or federal water right on this segment and could further diminish flow through this reach.

Much of the water needed to meet future demand would come from conservation practices and development of existing water rights, including some of the existing conditional water rights in the San Miguel Basin. Most of these conditional water rights are senior to both existing instream flow water rights and any instream flow created through WSR designation.

SWSI 2004 identified future potential dam sites on the San Miguel River (downstream of Leopard Creek near the confluence with Beaver Creek, and above Horsefly Creek) and major tributaries, including Horsefly Creek and Maverick Draw. According to a draft BLM San Miguel Instream Flow Assessment, although dam sites have been identified on the mainstem, they are unlikely to be developed given current costs and concerns with environmental impacts. This would also include the Saltado Reservoir with a conditional water right on the San Miguel River downstream of Specie Creek with a fill and refill right totaling over 140,000 acre-feet.

An instream flow or federal water right associated with WSR designation could restrict new water rights or changes to existing water rights.

## LAND OWNERSHIP AND USES

Approximately 38.3% of the protective stream corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan. As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit). Many of the uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

### ROW and Withdrawals
ROWs within the corridor include Colorado State Highway 141, several county roads, telephone and powerlines, and an historic irrigation ditch and water pipeline.

While portions of the segment are within an area classified as having hydropower potential, the Power Site classification does not preclude WSR designation.

### Energy and Mineral Resources
There are existing oil and gas leases within the segment. Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

## ADMINISTRATION

WSR designation would complement BLM Colorado Public Land Health standards for riparian vegetation and special status species.

BLM_0109627

This segment supports habitat for native warm water fishes, and designation would be consistent with actions in the Range-wide Conservation Agreement and Strategy for Roundtail Chub *(Gila robusta)*, Bluehead Sucker *(Catostomus discobolus)*, and Flannelmouth Sucker *(Catostomus latipinnis)*.

TNC and Umetco Minerals Corporation are the principal landowners within the corridor.  TNC supports WSR designation and working with the BLM to manage the segment ORVs.  The BLM is uncertain regarding the position of Umetco Minerals Corporation on WSR designation.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the Recreational, Fish, Historic, and riparian Vegetation ORVs would be moderately to significantly higher than current funding levels.  With easy access to the river corridor provided by the paralleling county road, visitor use would be expected to increase if designated.  As a result, additional funding for facilities would likely be needed.

A county road currently infringes on the stream channel and riparian zone along portions of this reach.  With future county plans to possibly widen the road, costly measures would be necessary to avoid additional impacts to the river corridor.  If purchased from willing sellers, private lands in the upper reaches of the segment would add value for ORV protection.

### Alternative Protective Measures Considered

While WSR designation would provide the most comprehensive protection for the ORVs, conservation easements on select private portions of the corridor would offer added value toward protecting the ORVs.  If appropriated, a pending, state-based instream flow water right would help sustain the Fish and Vegetation ORVs.

# 23 - TABEGUACHE CREEK, SEGMENT 1

***Preliminary Classification:*** **Wild**

***ORVs:*** **Vegetation**

***Key Points:***

- Existing designation as a Special Management Area offers significant protection to sustain the Vegetation ORV.
- Limited water development in the upper Tabeguache Basin results in a flow regime that mimics natural conditions.
- A contiguous 3.7-mile upstream portion of Tabeguache Creek managed by the USFS is identified as eligible in the Proposed Land Management Plan for the Grand Mesa, Uncompahgre, and Gunnison National Forests (2007), based upon Scenic and Cultural ORVs.

***River Segment Ownership (in Miles):***

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 3.61 | | | | 3.61 | 100% |

***Land Ownership within One-Half Mile Wide Corridor (in Acres):***

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 1,077.0 | | | 6.3 | 1,083.3 | 99.4% |

## PUBLIC COMMENT SUMMARY

***Supporting Suitability:***

- Three comments encourage the BLM to coordinate with other agencies to ensure protection of the extended riparian ecosystem.
- One comment identifies the need to protect the wild landscape and natural values of the area.
- One comment notes that the predominance of federally managed land would simplify effective management of the segment.
- One comment supports preserving the wilderness values of the segment through a congressional designation in keeping with the status of surrounding lands.

***Opposing Suitability:***

- Montrose County has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- Two comments express concern over the effect that WSR designation would have on private land.

- One comment expresses concern over the effect that WSR designation would have on historic uses of the area.
- One comment expresses concern with the effect that WSR designation would have on water rights.
- One comment states that the segment receives adequate protection through existing federal, state, and local regulations.
- One comment states that WSR designation would fragment the area, making it more difficult and costly to manage.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of lower Tabeguache Creek and the lower San Miguel River downstream. An instream flow water right appropriation has been finalized for the segment. The instream flow would provide some protection to sustain the Vegetation ORV.

An irrigation diversion known as Skees Ditch was decreed for 1.92 cfs in 1939 by the State of Colorado, but no records are available indicating if and when it was constructed. A field assessment conducted by BLM personnel in May 2009 found no physical sign of a diversion or ditch. Although the Skees Ditch has not been developed, it is considered an absolute water right by Colorado and would be senior to both the pending state instream flow and any federal instream flow resulting from WSR designation.

Glencoe Ditch in the Tabeguache headwaters is presently decreed to divert up to 17 cfs, and would have seniority over any instream or federal water right established as part of WSR designation. Changing the diversion point on an existing water right within the segment could be limited in the future by any instream flow right associated with WSR designation.

There are no impoundments or conditional water rights within the segment. Diversions totaling 22.18 cfs are decreed upstream of this segment. Conditional water rights upstream of the segment include 2.0 cfs for diversion and 30 acre-feet for storage.

### LAND OWNERSHIP AND USES

Land ownership adjacent to the segment is almost entirely federal. Approximately 0.6% of the segment at the lower terminus consists of private lands zoned as General Agriculture in the Montrose County Master Plan. As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit. Many of the allowable and special uses are not related to agriculture and have potential to conflict with the intent of the WSR Act.

A contiguous 3.7-mile upstream portion of Tabeguache Creek managed by the USFS is identified as eligible in the Proposed Land Management Plan for the Grand Mesa, Uncompahgre, and Gunnison National Forests (2007), based upon Scenic and Cultural ORVs.

### Special Designations

This segment and the contiguous USFS segment are within the Tabeguache Area, an area withdrawn by Congress and managed to protect wilderness values.  Due to the designation, the only foreseeable actions within the segment are likely to be BLM-proposed projects.  Access is limited to non-mechanized and non-motorized use.

## ADMINISTRATION

The source water area upstream of this segment is primarily managed by the USFS.  Existing authorities provide adequate management capability to protect the stream flow and sustain the ORV.

WSR designation would be consistent with policies and authorities afforded by designation as a Special Management Area and would complement the BLM Colorado Public Land Health standard for riparian vegetation.

Tabeguache Creek contributes significant flow to the Lower San Miguel and Dolores Rivers, supporting habitat for native warm water fish.  WSR designation would be consistent with actions in the Range-wide Conservation Agreement and Strategy for Roundtail Chub *(Gila robusta)*, Bluehead Sucker *(Catostomus discobolus)*, and Flannelmouth Sucker *(Catostomus latipinnis)*.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORV, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the riparian Vegetation ORV would not likely increase much above current funding levels.  The segment is remote, has limited access along undeveloped trails, and the riparian zone is completely under federal management, factors that assist in protecting the ORV.  Additional facilities would not be needed if designated.  A small amount of additional funding would be needed for signage, public education, ranger patrolling, and maintenance.

### Alternative Protective Measures Considered

An existing Special Management Area designation and a state-based instream flow water right provide significant protection to sustain the Vegetation ORV.  In addition, the watershed upstream of this segment is dominated by lands managed by the U.S. Forest Service as a Special Management Area and has a state-based instream flow water right, both of which would aid in future management, administration, and preservation of the area.

## 24 - TABEGUACHE CREEK, SEGMENT 2

*Preliminary Classification:*  Recreational

*ORVs:*  Cultural, Vegetation

*Key Points:*

- Congressional designation of an area upstream of the segment (that includes Tabeguache Creek, Segment 1 and a contiguous USFS segment) to protect its wilderness values ensures reliable flow, while a recently finalized state-based instream flow water right would contribute additional flow to help sustain the Vegetation ORV.
- The upper Tabeguache Basin has experienced limited water development and has few conditional water rights, resulting in a flow regime that mimics natural conditions most of the year, except during late season irrigation.
- The majority of the source water area upstream of the segment is managed by the BLM or USFS.  Existing authorities allow for management actions necessary to protect river flow and sustain the ORV.
- Private property within the corridor consists of three distinct parcels separated by public land.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|------|------|-------|---------|--------------|-----------|
| 7.89 |      |       | 3.68    | 11.57        | 68.2%     |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|--------|------|-------|---------|-------------|-----------|
| 2,487.3 |      |       | 515.4   | 3,002.7     | 82.8%     |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- One comment expresses support for protecting the creek's streamflow contribution to the San Miguel River, and the superior examples of unique stream-dependent riparian vegetation.
- One comment states that, although less than 70% of the land within the segment is federally managed, 100% of the land immediately above the stream's confluence with the San Miguel River is federally owned, facilitating effective implementation of protective management.
- One comment expresses support for WSR designation on federally managed portions of the segment.

*Opposing Suitability:*

- The Montrose Board of County Commissioners has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- Two comments oppose WSR designation due to the potential impact on historic uses of the area.
- One comments states that this segment receives adequate protection without WSR designation through existing federal, state, and local regulations.
- One comment states that WSR designation would fragment the area, making it more difficult and costly to manage.
- One comment opposes WSR designation but recommends strong prescriptions to protect the archaeological and cultural resources in the immediate area.
- One comment expresses general opposition to WSR designation.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of the Lower San Miguel River downstream.  One small impoundment occurs within the segment.  An instream flow water right appropriation has been finalized for this segment.

While the water right would provide additional protection to sustain the Vegetation ORV, the Templeton Ditch restricts flow during the native fish spawning season from April through June.  The Templeton Ditch is decreed for 5.5 cfs and significantly dewaters the channel downstream of the diversion during late summer months.  The water right is senior to the instream flow water right.

Although it has not been in use for several years, the Uravan pipeline diversion and ROW located near the lower terminus of the segment remains an active water right.  Several small stock reservoirs and ditch diversions on tributaries draining into the segment are decreed for a total of 62.3 cfs and 46 acre-feet of storage rights.  Changing points of diversion on existing water rights within the segment could be restricted by any instream flow right associated with WSR designation.

If developed, a conditional water right ditch diversion of 3.5 cfs upstream of the segment could result in additional diminution of flow through the segment.  Conditional water rights are senior to a pending state instream flow and any future instream flow associated with WSR designation.

The majority of the source water area upstream of this segment is managed by the BLM or USFS.  Existing authorities allow for management actions to ensure adequate river flow needed to sustain the ORV.

### LAND OWNERSHIP AND USES

Private property within the corridor consists of three distinct parcels separated by public land.  The scattered land configuration provides opportunities for land uses that could negatively impact public

land within the corridor.  Approximately 17.2% of the corridor consists of private land zoned as General Agriculture in the Montrose County Master Plan.  As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit.  Many of the allowable and special uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

### Special Designations

Cultural resources within the segment are on the National Register of Historic Places.

### Rights-of-Way and Withdrawals

ROWs within the corridor include county roads V19 & U19, telephone and power lines adjacent to and crossing the creek, and an historic ditch adjacent to the creek in the upper part of the segment. Umetco owns a water pipeline and road adjacent to and crossing the creek.

While portions of the segment are identified by the USGS as having coal potential, and portions are in an area classified as a power site, neither classification precludes WSR designation.

### Energy and Mineral Leasing

There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

### ADMINISTRATION

WSR designation would complement the BLM Colorado Public Land Health standard for riparian vegetation.

Management actions in support of the Range-wide Conservation Agreement and Strategy for Roundtail Chub *(Gila robusta)*, Bluehead Sucker *(Catostomus discobolus)*, and Flannelmouth Sucker *(Catostomus latipinnis)* promote preserving the stream flow in Tabeguache Creek, which in turn benefits the Vegetation ORV.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the Cultural and riparian Vegetation ORVs would be moderately higher than current funding levels.  Portions of the segment can be accessed by county roads which would facilitate increased visitor use if designated.

The corridor does include parcels of private land containing riparian vegetation.  As funding and opportunities arise, the BLM would pursue land acquisition from willing sellers, which would add value for ORV management and protection.

BLM_0109634

*Alternative Protective Measures Considered*

Congressional designation of an area upstream of the segment (that includes Tabeguache Creek, Segment 1 and a contiguous USFS segment) to protect its wilderness values ensures reliable flow through the segment, while a recently finalized state-based instream flow water right would contribute additional flow to help sustain the Vegetation ORV.  Future water right applications on public land within the segment should contain BLM terms and conditions ensuring that the ORVs are sustained.

# 25 - LOWER DOLORES RIVER

***Preliminary Classification:*** **Scenic**

***ORVs:*** **Scenic, Recreational, Geologic, Fish, Wildlife**

***Key Points:***

- The segment contains a wide array of ORVs.
- The upper portion of the segment consists primarily of BLM-administered public land, while the downstream portion has a considerable amount of private land.
- The upstream portion of the segment has experienced little development, while the downstream portion contains mining claims and oil and gas leases.
- A state highway parallels the downstream portion of the river.

***River Segment Ownership (in Miles):***

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|------|------|-------|---------|--------------|-----------|
| 6.93 | | | 3.60 | 10.53 | 65.8% |

***Land Ownership within One-Half Mile Wide Corridor (in Acres):***

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---------|------|-------|---------|-------------|-----------|
| 2,197.5 | | | 922.7 | 3,120.2 | 70.4% |

## PUBLIC COMMENT SUMMARY

***Supporting Suitability:***

- Four comments state that the Dolores River should receive immediate, thorough, and enduring protection, and that previous WSR suitability findings for this river should be reaffirmed in the plan update.
- Four comments recommend that oil and gas leasing should be prohibited in the Dolores River Corridor in order to protect the ORVs.
- Three comments state that this regionally significant river warrants consistent and coordinated status, management, and protection throughout the entire public portion.
- Two comments support suitability in order to protect the wild landscape and natural values of the area.
- One comment generally recommends that at least the federally managed portions of the segment be found suitable.
- One comment states that, even with the significant amount of private land, through cooperative agreements and other actions would help in implementing protective management.

- One comment encourages the BLM to coordinate with other agencies to ensure protection of the extended riparian ecosystem.
- One comment states that the Dolores River and its tributaries are the evocative, awe-inspiring lifeblood for many human and wildlife communities in western Colorado. In the face of accelerating change in the west, the unique geology, outstanding scenery, diverse recreational opportunities, and precious water resources of the Dolores River should be preserved for people, wildlife, and healthy natural systems.
- One comment stresses that the Dolores River is especially important for the protection and enhancement of riparian ecosystems spanning federal land management areas.
- One comment stresses that the Dolores River corridor, including the Paradox Valley and its rich wildlife and cultural resources, should be managed in close cooperation with private land owners and adjacent BLM field offices.
- One comment elaborates on the special natural features of the river, and states that the river basin spans numerous BLM and USFS offices and should be cooperatively managed to ensure that the river's serenity and beauty can continue to be enjoyed and explored.
- One comment states that the river corridor requires coordinated management between federal jurisdictions in order to preserve the ORVs.
- One comment states that, while the UFO portion of public land within the corridor is smaller and the stretch of the Dolores River is shorter than those of adjoining BLM field offices, it forms the core of the river ecosystem, and urges the UFO to consider the portion within its jurisdiction to be an integral part of the larger Dolores River ecosystem when making management decisions regarding the area.

### Opposing Suitability:

- Montrose County has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- Three comments oppose WSR designation due to potential negative impacts on historic uses and water rights in the area.
- Two comments state that there is adequate protection for and ability to manage the area through existing federal, state, and local regulations.
- One comment states that many of the outstanding values in the area are associated with recreational opportunities that may be negatively impacted by WSR designation.
- One comment expresses concern that WSR designation would fragment the area, making it more difficult and costly to manage.
- One comment recommends exploring feasible management alternatives to WSR designation.
- One comment opposes WSR designation due to lack of water in the Dolores River and potential negative impacts to water rights.
- One comment states that this segment receives adequate protective management through existing federal, state, and local regulations.

- One comment recommends that the UFO coordinate with the BLM Grand Junction Field Office, as the lower terminus of the segment forms the boundary between the two field offices. In addition, the comment recommends finding only the southern portion of the segment suitable (Segment 25A), as the northern portion (Segment 25B) contains a patchwork of private land.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of the Lower Dolores River downstream (within the Grand Junction Field Office). There is no instream flow water right protection on the segment. An instream flow right associated with WSR designation could restrict the ability to change points of diversion on existing water rights within the segment.

There are no conditional water rights or impoundments within the segment. Two small diversions along the lower reaches of the segment do not detract from the natural character of the river.

Flow through the segment is significantly diminished by the operation of the McPhee Dam upstream. A large portion of natural water yield entering the reservoir is transferred out of the basin, primarily for agricultural uses. Water rights associated with the McPhee Reservoir are senior to the instream flow water right on the downstream reach.

Most future water demand will be met through conservation practices and development of existing water rights. According to the Statewide Water Supply Initiative (2004), between 400,000 and 500,000 acre-feet of conditional storage water rights upstream throughout the San Miguel and Upper Dolores basins predate any future state or federal instream flow right. As rights are perfected to meet future water demand, flows through the segment could be diminished. Additional water developments for uses such as irrigation are likely to increase along with the growing population.

The Statewide Water Supply Initiative has identified reservoir sites on Beaver Creek and Plateau Creek flowing into the McPhee Reservoir that could be operated to increase flows in the Dolores River below the McPhee Reservoir. Beaver Creek and Plateau Creek reservoir sites are a high priority for the Southwest Basins Roundtable of Colorado Interbasin Compact Committee.

### LAND OWNERSHIP AND USES

Approximately 29.6% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan. As currently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit. Many of the uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

### ROWs and Withdrawals

ROWs within the segment include telephone lines, powerlines, a highway, county roads, private access roads, and a gravel pit.

While public lands adjacent to the river are withdrawn to the Department of Energy as a potential Power Site, the classification does not preclude WSR designation.

### Energy and Mineral Leasing

There are existing oil and gas leases within the segment. Active mining claims occur within the corridor and have prior existing right to mineral deposits.

## ADMINISTRATION

Because of limited unappropriated water, it is unlikely that the high flows needed to sustain recreational activities could be secured through WSR designation.

Managing this segment to sustain native warm water fish is consistent with actions in the Range-wide Conservation Agreement and Strategy for Roundtail Chub *(Gila robusta)*, Bluehead Sucker *(Catostomus discobolus)*, and Flannelmouth Sucker *(Catostomus latipinnis)*.

WSR designation would complement BLM Colorado Public Land Health standards for special status species and wildlife.

The GJFO has made no decision regarding Dolores River segments, pending a basin-wide discussion.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed. Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

The costs for administering and managing this segment for the Scenic, Recreational, Geologic, Fish, and Wildlife ORVs would be substantially higher than current funding levels. The lower portion of this segment is paralleled by State Highway 141, providing diffuse access points to this portion of the river corridor. If designated, the potential increase in visitor use, especially in the lower portion of the corridor, would require additional funding for facilities, public education, signage, additional weed control, and ranger patrolling. Visitor use in the upper portion of the segment would be limited to mostly river-based recreation activities which would require a small amount of additional funding for maintenance and primitive camp and day use site development.

If purchased from willing sellers, private land parcels within the corridor would have added value for ORV protection.

### Alternative Protective Measures Considered

Approximately 41 acres of private land could be eliminated from the segment to alleviate zoning issues.

BLM_0109639

Warm water fish would receive significant protection by acquiring a state-based instream flow water right for this segment.

The Visual Resource Management classification of the segment could be upgraded to protect the Scenic ORV.

The Hanging Flume receives protection through listing on the National Register of Historic Places.

BLM_0109640

WSR SUITABILITY ANALYSIS

# 26 - NORTH FORK MESA CREEK

*Preliminary Classification:* **Scenic**

*ORVs:* **Vegetation**

*Key Points:*

- There is little water development in the headwaters of the North Fork Mesa Creek, which produces a flow regime mimicking natural conditions.
- The majority of the source water area upstream of the segment is managed by the BLM or USFS and existing authorities provide for ample management actions to protect stream flow needed to sustain the Vegetation ORV.
- Several ROWs occur within the corridor.
- There is a significant amount of private land in the lower reach of the segment.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|------|------|-------|---------|--------------|-----------|
| 5.81 |      |       | 2.72    | 8.53         | 68.1%     |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---------|------|-------|---------|-------------|-----------|
| 2,042.4 |      |       | 424.5   | 2,466.9     | 82.8%     |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- One comment cites the necessity of protecting the wild landscape and natural values in the area.
- One comment states that the predominance of federally managed land along the upper portion of the segment could simplify the implementation of effective management.
- One comment expresses general support of WSR designation for the segment.

*Opposing Suitability:*

- Montrose County has adopted a resolution opposing WSR designation, as it is thought not to be in the best interest of Montrose County citizens.
- Two comments state that this segment has adequate protection through existing federal, state, and local regulations.
- One comment states that WSR designation would fragment the area, making it more difficult and costly to manage.
- One comment opposes WSR designation due to the short segment length with non-contiguous ownership of land parcels, which would make effective management of the segment difficult.

- One comment asserts the need to retain access for mining activities if designated.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

The North Fork of Mesa Creek contributes flow to Mesa Creek and the Lower Dolores River, providing habitat for native warm water fish. WSR designation would be consistent with actions in the Range-wide Conservation Agreement and Strategy for the Roundtail Chub *(Gila robusta)*, Bluehead Sucker *(Catostomus discobolus)*, and Flannelmouth Sucker *(Catostomus latipinnis)*.

The CWCB holds instream flow water rights along the entire segment structured to protect the natural environment to a reasonable extent. The instream flow provides some protection to sustain the Vegetation ORV. From the lower terminus and 3.90 miles upstream to Cedar Tree Ditch Diversion, seasonal instream flow is 2.1 cfs for the period from April 1 to May 31. From Cedar Tree Ditch to the upper terminus, instream flow appropriation varies throughout the year. Between April 1 and May 31, appropriated instream flow is 2.75 cfs. It drops to 0.5 cfs between June 1 and February 29, and rises to 1.9 cfs between March 1 and March 31.

There are three water diversions in the lower reach, but only the Patterson Ditch has a decreed flow (of 14.12 cfs). The Patterson ditch diversion is located on public land. This water right is senior to the existing instream flow water right and any federal water right associated with WSR designation. An instream flow right associated with WSR designation could restrict the ability to change points of diversion for existing water rights within the segment.

A number of stock watering facilities in headwater tributaries constitute the only water use above the upper terminus.

There are no conditional water rights within or upstream of the segment.

Any additional water right filings or changes to existing diversions would be junior to the instream flow water right.

### LAND OWNERSHIP AND USES

Approximately 17.2% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan. As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit. Many of the allowable and special uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

#### ROWs and Withdrawals

ROWs include telephone and power lines. A county road runs along the creek, dominating the setting for much of the segment. Unsurfaced roads cross the stream in a couple of locations.

There is a bat maternity roost withdrawal along the creek.

BLM_0109642

While portions of the segment are within an area identified as a potential Power Site, the federal classification does not preclude WSR designation.

### Energy and Mineral Leasing

There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

## ADMINISTRATION

WSR designation complements the BLM Colorado Public Land Health standard for riparian vegetation.

Private land at the lower portion of the corridor could create challenges for managing the area.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

### Alternative Protective Measures Considered

Because the BLM and USFS manage the headwaters of the North Fork of Mesa Creek, authorities exist to preserve a flow regime that mimics the natural variability needed to sustain the Vegetation ORV.

# 27 - DOLORES RIVER, SEGMENT 2

*Preliminary Classification:* **Recreational**

*ORVs:* **Scenic, Recreational, Geologic, Fish, Wildlife, Vegetation**

*Key Points:*

- A series of alluvial water wells adjacent to the river are managed by the BOR as part of the Paradox Valley Unit, Salinity Control Project.
- The segment contains a wide array of ORVs.
- The upstream portion of the segment is dominated by private land, while the downstream portion is comprised primarily of public land and has experienced little development.
- A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community for this segment might only be achieved through WSR designation.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|------|------|-------|---------|--------------|-----------|
| 5.42 |      |       | 6.08    | 11.50        | 47.1%     |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|--------|------|-------|---------|-------------|-----------|
| 1,820.7 |      |       | 1,423.8 | 3,244.5     | 56.1%     |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- Four comments state that the Dolores River should receive immediate, thorough, and enduring protection, and that previous findings of WSR suitability should be reaffirmed in the plan update.
- Four comments recommend that oil and gas leasing be prohibited within the Dolores River corridor in order to protect the ORVs.
- Three comments state that this regionally significant river warrants consistent and coordinated management and protection throughout the entire public portion.
- One comment states that, in the face of accelerating change in the west, the Dolores River Basin's unique geology, profoundly moving scenery, diverse recreational opportunities, and precious water resources must be preserved for people, wildlife, and healthy natural systems.
- One comment stresses that the Dolores River corridor, including the Paradox Valley and its rich wildlife and cultural resources, should be managed in close cooperation with adjacent BLM field offices and private land owners.

- One comment elaborates on the many special, natural features of the Dolores River, and states that the entire river basin spans numerous BLM and USFS offices and should be cooperatively managed to ensure that the river's serenity and beauty can continue to be enjoyed and explored.
- One comment states that preserving the ORVs in the Dolores River corridor requires coordinated management between various federal jurisdictions.
- One comment states that, while the UFO portion of public land within the corridor is smaller and the stretch of the Dolores River is shorter than those of adjoining BLM field offices, it forms the core of the river ecosystem, and urges the UFO to consider the portion within its jurisdiction to be an integral part of the larger Dolores River ecosystem when making management decisions regarding the area.
- One comment states that the BLM should continue its dialogue with stakeholders concerning management of the river, and that the BLM's main responsibility is to protect riparian habitat within the segment.
- One comment stresses that the Dolores River has a critical role in the protection and enhancement of riparian ecosystems spanning federally-managed land.
- One comment notes that the large portion of federally managed land in the segment should facilitate the implementation of effective protective measures.
- One comment expresses the need for protecting the wild landscape and natural values in the area and recommends a decisive finding of suitable.
- One comment recommends that the full length of the segment be found suitable.

*Opposing Suitability:*

- Montrose County Board of Commissioners has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- One comment recommends exploring feasible management alternatives to WSR designation.
- One comment opposes WSR designation due to insufficient water in the Dolores River and potential negative impacts to water rights.
- One comment expresses concern that WSR designation could fragment the area, making it more difficult and costly to manage.
- One comment states that this segment receives adequate protection through existing federal, state, and local regulations.
- One comment expresses opposition to WSR designation due to potential negative impacts to historic uses and water rights in the area.
- One comment expresses concern that WSR designation could curtail future mining on mesa edges outside of the corridor but within view of the river.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of the Lower Dolores River downstream. The CWCB holds a year-round 78 cfs instream flow water right along the entire segment, structured to protect the natural environment to a reasonable degree, which also provides some protection to sustain the ORVs.

There are no conditional water rights within the segment. The only withdrawals are a series of alluvial wells along the corridor that are operated as part of Paradox Valley Unity, Deep Well Injection Salinity Control Project.

Flow is significantly diminished by the operation of the McPhee Dam upstream.  A large portion of natural water yield entering the reservoir is transferred out of the basin, primarily for agricultural uses.  Water rights associated with McPhee are senior to the instream flow water right.

The Statewide Water Supply Initiative (2004) has identified potential dam sites on Beaver Creek and Plateau Creek that flow into McPhee Reservoir and could be operated to increase flows below McPhee Reservoir.  The Beaver Creek and Plateau Creek sites are a high priority for the Southwest Basins Roundtable of the Colorado Interbasin Compact Committee.

Most future water demand would come from conservation practices and development of existing water rights, including some 141,000 acre feet of conditional water rights in the basin (SWSI 2004). Many conditional rights are senior to both existing instream flow water rights and any instream flow resulting from WSR designation.

### LAND OWNERSHIP AND USES

#### ROWs and Withdrawals

BLM ROWs within the corridor include a Montrose County road, telephone and powerlines, and the Bureau of Reclamation Paradox Valley Salinity Control Project, including an evaporative salt disposal pond.

While portions of the segment are within an area identified as a potential Power Site, the federal classification does not preclude WSR designation.

#### Energy and Mineral Resources

There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

### ADMINISTRATION

A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community for this segment might only be achieved through WSR designation.

A Montrose County road located within the corridor may need to be upgraded and enlarged in the future.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed. Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the Scenic, Recreation, Geologic, Fish, Wildlife, and riparian Vegetation ORVs would be moderately to significantly higher than current funding levels. With easy access to the river corridor provided by the paralleling county road, visitor use would be expected to increase if designated. Additional funding would likely be needed for facilities and increased weed control.

A county road currently infringes on the stream channel and riparian zone along portions of this reach. With future county plans to possibly widen the road, costly measures would need to be employed to avoid additional impacts to the river corridor. Private land acquisition would not be pursued, as more than 43% of the stream segment is privately owned and contiguous, making it difficult for the BLM to acquire enough land to benefit management of the ORV.

### Alternative Protective Measures Considered

The Dolores River Working Group is proposing that the area be designated a National Conservation Area.

The area is being proposed as a Special Recreation Management Area and portions of the corridor are being proposed as an Area of Critical Environmental Concern.

WSR SUITABILITY ANALYSIS

# 28 - ICE LAKE CREEK, SEGMENT 2

***Preliminary Classification:*** **Scenic**

***ORVs:*** **Scenic**

***Key Points:***

- Landowners in the lower reach of the segment oppose WSR designation.
- The segment length is short and there are access issues involving private land within the segment.
- The BLM manages the source water areas that produce baseflow for the creek, providing protection for flow-dependent values.

***River Segment Ownership (in Miles):***

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 0.31 | | | 0.27 | 0.58 | 53.4% |

***Land Ownership within One-Half Mile Wide Corridor (in Acres):***

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 104.8 | | | 75.8 | 180.6 | 58% |

## PUBLIC COMMENT SUMMARY

***Supporting Suitability:***

- One comment submitted by fourteen individuals expresses general support for all eligible tributaries of the Dolores River to receive immediate, thorough, and enduring protection.

***Opposing Suitability:***

- Montrose County Board of County Commissioners has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- Four comments oppose WSR designation due to potential negative impacts on private property.
- One comment states that the scenic aspect is impacted by mines on the cliffs easily visible across La Sal Creek to the south and that the Scenic Classification on this segment is inconsistent with similar segments (#30 and #34).
- One comment expresses concern that designating the segment as a wild and scenic river could inadvertently attract destructive and inconsistent uses.

BLM_0109648

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of La Sal Creek downstream.  There is no instream flow water right protection on the segment.

One absolute water right near the lower terminus would be senior to any water right associated with WSR designation.

A federal water right associated with WSR designation could restrict changing the points of diversion for existing water rights within the segment.

There are no conditional water rights or impoundments within or upstream of the segment.

In the lower reaches, La Sal Creek is protected by an instream flow water right that could restrict future diversions from Ice Lake Creek.

Flow through the segment could be further reduced if diversion amounts are enlarged or diversion points are changed prior to securing an instream flow water right.

### LAND OWNERSHIP AND USES

Approximately 42% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan.  As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit.  Many of the uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.  The private property in question is a contiguous parcel located just upstream of the lower terminus.  The potential for impacts to the ORV due to lack of zoning controls would be limited on public land.

### ROWs
A BLM road traverses the canyon just east of the creek.

### Energy and Mineral Resources
There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

### ADMINISTRATION

Ice lake Creek contributes flow to La Sal Creek, providing spring spawning habitat for native warm water fish consistent with the Range-wide Conservation Agreement and Strategy for Roundtail Chub *(Gila robusta)*, Bluehead Sucker *(Catostomus discobolus)*, and Flannelmouth Sucker *(Catostomus latipinnis)*.

A large amount of private land hinders access to public land within the segment and a number of private landowners have expressed opposition to WSR designation.

*Potential Costs Associated with WSR Designation*

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed. Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the Scenic ORV would increase moderately above current funding levels. The public land portion of this segment is remote and has no developed access, both factors that would assist in the protection of the ORV. The lower reach of this segment is private land within which the Ice Lake Creek Corridor is bisected by Colorado State Highway 90.

Private land currently limits access to the public land portion of the corridor from the highway. Acquiring portions of private land from willing sellers would add value for managing and providing public access to this segment if designated. If designated, additional facilities would not likely be needed.

*Alternative Protective Measures Considered*

The following options were identified as alternatives to WSR designation:

- o Upgrade the Visual Resource Management classification in order to protect scenic values.
- o Apply a No Surface Occupancy (NSO) stipulation to protect the corridor.
- o Include conditions in the Uncompahgre RMP to protect the baseflow source water area at the upper terminus.

The Scenic ORV could be protected through existing authorities by requiring BLM conditions on all future applications and actions to ensure compatibility with the scenic classification.

# 29 - LA SAL CREEK, SEGMENT 1

*Preliminary Classification:* **Recreational**

*ORVs:* **Fish, Vegetation**

*Key Points:*

- Lack of adequate land use zoning controls on private parcels within the corridor.
- Significant opposition to WSR designation from private landowners.
- Significant portion of private land within the corridor.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 0.62 | | | 4.20 | 4.82 | 12.9% |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 718.1 | | | 630.8 | 1,348.9 | 53% |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- Fourteen replicated comments were received expressing general support for all eligible segments of the Dolores River and its tributaries to receive immediate, thorough, and enduring protection.
- One comment notes that, because La Sal Creek is in a remote location seemingly abandoned by the BLM, they support recognizing the area for something other than uranium leasing.
- One comment notes that they are not aware of any land use controls along La Sal Creek and would be happy to see this area respected as the unique Colorado natural area that it is.
- One comment notes that BLM protection could promote values that suffer due to the stigma associated with uranium mining.

*Opposing Suitability:*

- Montrose County has adopted a resolution opposing WSR designation, as it is thought not to be in the best interest of Montrose County citizens.
- Four comments oppose WSR designation due to the amount of private property and trespass issues within the segment.
- Two comments state that landowners work closely with county and state government entities to ensure protection and proper management of the canyon corridor, and large tracts of private land and sparse population ensure conservation of the area.

BLM_0109651

- One comment believes that the significant amount of development, private land, and water rights precludes the segment from WSR designation.
- One comment expresses concern over loss of water rights if the segment is designated.
- One comment notes that landowners seem to be in solidarity on preventing WSR designation for the segment.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community in this segment might only be achieved through WSR designation. The upstream terminus is along the Colorado-Utah state line and a significant portion of the headwaters are in Utah.

There is no instream flow water right protection on the segment. Water yield through the segment contributes significantly to the proper hydrologic function of the lower reaches of La Sal Creek, which is protected by an instream flow water right, possibly restricting additional water development within the segment.

Four absolute water right diversions totaling 8.9 cfs within private portions of the reach are senior to any instream flow water right. A water right associated with WSR designation could restrict changing the points of diversion on existing water rights within the segment.

No conditional water rights or impoundments occur within the segment.

### LAND OWNERSHIP AND USES

Approximately 47% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan. As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit. Many of the allowable and special uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

#### ROWs and Withdrawals
ROWs within the segment include a CDOT highway and county roads. Telephone and power lines cross and run adjacent to La Sal Creek.

#### Energy and Mineral Leasing
There are existing oil and gas leases within the segment. Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

### ADMINISTRATION

The headwaters of La Sal Creek are in the State of Utah. A state-based instream flow water right would provide sufficient flow to sustain the Fish ORV, but would be inadequate for sustaining the

Vegetation ORV.  WSR designation would complement BLM Colorado Public Land Health standards for riparian vegetation and special status species.

A large amount and configuration of private land with non-restrictive zoning occurs within the segment.  Large portions of private land have been converted to agricultural crops, making it difficult to manage for native riparian vegetation.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the Fish and riparian Vegetation ORV would be substantially higher than current funding levels.  Some management actions to sustain the target fish species would continue with or without designation per the Range-Wide Conservation Agreement and strategy for Roundtail Chub, Bluehead Sucker, and Flannelmouth Sucker.

Private land acquisition would not be pursued, as more than 87% of the stream segment is privately owned, making it difficult for the BLM to acquire enough land to benefit management of the ORV. Some stream channel modification projects may be needed to facilitate fish propagation.

### Alternative Protective Measures Considered

Any future private water right or ROW application on public land within the segment should include BLM terms and conditions to protect the ORVs.

# 30 - LA SAL CREEK, SEGMENT 2

*Preliminary Classification:* **Scenic**

*ORVs:* **Fish, Vegetation**

*Key Points:*

- A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community might only be achieved through WSR designation.
- Both the river segment and corridor consist primarily of public lands.

*River Segment Ownership (in Miles):*

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|------|------|-------|---------|--------------|-----------|
| 3.82 |      |       | 0.70    | 4.52         | 84.5%     |

*Land Ownership within One-Half Mile Wide Corridor (in Acres):*

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|--------|------|-------|---------|-------------|-----------|
| 1,032.9 |      |       | 138.8   | 1,171.7     | 88.2%     |

## PUBLIC COMMENT SUMMARY

*Supporting Suitability:*

- Fourteen identical comments express general support for all eligible tributaries of the Dolores River to receive immediate, thorough, and enduring protection.
- One comment notes that the distinctive canyon corridor affords a stunning backdrop to outstanding recreational opportunities and that the stream provides important flow to the Dolores River, as well as an essential healthy riparian environment in an otherwise arid area, justifying the strongest possible protective measures.
- One comment notes that the predominance of federally-managed land within the segment would facilitate implementation of protective management.
- One comment expresses general support for WSR designation.

*Opposing Suitability:*

- Montrose County has adopted a resolution opposing WSR designation for this segment, as it is thought not to be in the best interest of Montrose County citizens.
- Two comments express concern over access to mining and water rights as a result of WSR designation.

BLM_0109654

# BLM ASSESSMENT

## WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of Lower La Sal Creek downstream.

The CWCB holds an instream flow water right along the entire segment decreed for 3 cfs (from December 15 to March 14), 5.1 cfs (from March 15 to June 14), and 1.2 cfs (from June 15 to December 14) and structured to protect the natural environment to a reasonable degree.  The flow would also provide some protection to sustain ORVs by limiting future water right actions within and upstream of the segment.

No absolute or conditional water rights occur within the segment.  No impoundments occur within or upstream of the segment to the Colorado-Utah state line.  Four ditch diversions are located upstream of the segment within La Sal Creek, Segment 1.

## LAND OWNERSHIP AND USES

The corridor consists primarily of public land.  Approximately 11.8% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan.  As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit.  Many of the uses are related to agriculture and have potential to conflict with the intent of the WSR Act.

### ROWs
Numerous BLM ROW authorizations cross or run adjacent to the creek, including transmission powerlines, telephone lines, a CDOT highway, and a Montrose County road.

### Energy and Mineral Resource
There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

## ADMINISTRATION

WSR designation would complement BLM Colorado Public Land Health standards for riparian vegetation and special status species.

A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community might only be achieved through WSR designation.

### Potential Costs Associated with WSR Designation
Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the Recreation, Fish, and riparian Vegetation ORVs would be moderately higher than current funding levels.  With easy access to the river corridor provided by the paralleling county road, visitor use would be expected to increase if designated.  Thus, additional funding would be needed for facilities, public education, signage, ranger patrolling, and maintenance.

If purchased from willing sellers, the privately owned portion of the corridor (approximately 12%) would contribute value toward ORV protection.

### Alternative Protective Measures Considered

An area encompassing the segment is being considered for ACEC designation during development of the Uncompahgre RMP.

# 31 - LA SAL CREEK, SEGMENT 3

***Preliminary Classification:*** **Wild**

***ORVs:*** **Scenic, Recreational, Fish, Cultural, Vegetation**

***Key Points:***

- A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community might only be accomplished through federal designation.
- The entire segment is comprised of public land, facilitating effective management.
- The segment contains a wide array of ORVs.

***River Segment Ownership (in Miles):***

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|------|------|-------|---------|--------------|-----------|
| 3.37 |      |       |         | 3.37         | 100%      |

***Land Ownership within One-Half Mile Wide Corridor (in Acres):***

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|-------|------|-------|---------|-------------|-----------|
| 907.7 |      |       | 7.9     | 915.6       | 99.1%     |

## PUBLIC COMMENT SUMMARY

***Supporting Suitability:***

- Fourteen duplicate comments express general support for all eligible tributaries of the Dolores River to receive immediate, thorough, and enduring protection.
- One comment supports WSR designation, noting that the segment lies wholly within the Dolores River Canyon Wilderness Study Area and supports regionally rare riparian and scenic vibrancy, and that habitat health is reflected in the presence of healthy populations of regionally imperiled native fish.
- One comment supports WSR designation in order to protect the numerous significant ORVs within the segment, including exemplary populations of flannelmouth suckers, bluehead suckers, and roundtail chubs.
- One comment notes that federally-managed land along the stream is 100%, requiring the strongest possible protective management.
- One comment expresses general support for finding the entire segment suitable.

***Opposing Suitability:***

- Montrose County Board of Commissioners has adopted a resolution opposing WSR designation, as it is thought not to be in the best interest of Montrose County citizens.

BLM_0109657

# BLM ASSESSMENT

## WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of the Dolores River downstream.

The CWCB holds an instream flow water right along the entire segment, structured to protect the natural environment to a reasonable extent. The water right is decreed for 3 cfs (from December 15 to March 14), 5.1 cfs (from March 15 to June 14), and 1.2 cfs (from June 15 to December 14), providing some protection to sustain the ORVs by limiting future water right actions within and upstream of the segment.

No absolute or conditional water rights occur in the segment. No impoundments occur within or upstream of the segment to the Colorado-Utah state line.

Four ditch diversions occur upstream of the segment within La Sal Creek, Segment 1.

## LAND OWNERSHIP AND USES

All surrounding federal lands are within the Dolores River Canyon WSA.

Approximately 0.9% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan. As presently defined in the Montrose County Zoning Resolution, the General Agriculture Zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit. Many of the uses are not related to agriculture and have the potential to conflict with the intent of the WSR Act.

WSR designation would complement BLM Colorado Public Land Health standards for riparian vegetation and special status species.

### Special Designations
The entire segment is located within the Dolores River Canyon WSA. While the WSA affords interim protection for the ORVs, the designation is transitory and should not be relied upon for enduring protection.

### ROWs and Withdrawals
There are no known ROWs within the segment.

While portions of the segment are within an area identified as a Power Site, the federal classification does not preclude WSR designation.

### Energy and Mineral Resources
Because of the WSA designation, BLM-proposed projects are likely to constitute the only foreseeable development within the segment. Although lands under wilderness review continue to be subject to location under federal mining laws, location methods and subsequent assessment work are restricted to operations determined as meeting BLM nonimpairment criteria.

## ADMINISTRATION

A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community might only be accomplished through WSR designation.

### Alternative Protective Measures Considered

The existing state-based instream flow water right provides significant is sufficient to sustain the warm water fishery, but may not be adequate for long-term sustainability of the Vegetation ORV.

The entire segment is located within the Dolores River Canyon WSA.  The WSA designation affords some protection for the ORVs in accordance with the Interim Management Policy for Lands under Wilderness Review (H-8550-1).

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the Scenic, Recreational, Fish, Cultural, and riparian Vegetation ORVs would be similar to slightly higher than current funding levels.  The stream corridor is totally within the Dolores River Canyon WSA, is very remote and accessible only by an unmaintained non-motorized, non-mechanized trail, factors that assist in protection of the ORVs.  The BLM presently incurs some costs in this area to implement the Interim Management Policy for Lands under Wilderness Review.  However, additional visitor use associated with WSR designation could generate the need for funding to develop staging facilities to support primitive recreation opportunities, signage, public education, ranger patrolling, and maintenance.

BLM_0109659

WSR SUITABILITY ANALYSIS

# 32 - LION CREEK, SEGMENT 2

**Preliminary Classification:** **Scenic**

**ORVs:** **Vegetation**

**Key Points:**

- There is a significant amount of private land and landowner opposition to WSR designation in the lower reaches.
- Because the BLM manages the source water areas that produce baseflow for the creek, flow-dependent values could be protected through existing authorities.
- The Vegetation ORV could be protected through existing authorities by requiring that all applications and actions be compatible with sustaining the riparian vegetation.

**River Segment Ownership (in Miles):**

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 1.26 | | | 0.31 | 1.57 | 80.3% |

**Land Ownership within One-Half Mile Wide Corridor (in Acres):**

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 401.5 | | | 84.7 | 486.2 | 82.6% |

## PUBLIC COMMENT SUMMARY

**Supporting Suitability:**

- One comment submitted by fourteen individuals expresses support for all the eligible Dolores River tributaries to receive immediate, thorough, and enduring protection.

**Opposing Suitability:**

- Montrose Board of County Commissioners has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- Four comments state that the creek does not require special designation to be protected.
- One comment opposes WSR designation because of the impacts to historic uses in the area.
- One comment notes that, while the length, location, and percentage of federally managed land might not warrant a finding of suitable, the segment should be protected in other manners to ensure its continuing contribution to the health of the watershed.

# BLM ASSESSMENT

## WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of La Sal Creek downstream, which is protected by an instream flow water right in the lower reaches that might also limit additional water development in Lion Creek.  There is no instream flow water right protection for Lion Creek.

The Manning Ditch is an absolute water right (of 0.6 cfs) near the lower terminus that would be senior to any instream flow associated with WSR designation.  There are no conditional water rights or impoundments within or upstream of the segment.

Changing points of diversion on existing water rights within the segment could be limited in the future by water rights associated with WSR designation.  Enlarging the diversion amount or changing the diversion point of an existing water right within the segment would further reduce flow within the longer reach of the segment if the changes are decreed prior to securing water rights associated with WSR designation.

## LAND OWNERSHIP AND USES

Approximately 17.4% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan.  As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit.  The property is a contiguous parcel located just upstream of the lower terminus, limiting the potential for impacts to the ORV.

### Energy and Mineral Resources

There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

## ADMINISTRATION

WSR designation would complement the BLM Colorado Public Land Health standard for riparian vegetation.

There is a significant amount of private land and landowner opposition to WSR designation in the lower reaches.

### Potential Costs Associated with WSR Designation

Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the riparian Vegetation ORV would increase moderately above current funding levels.  The public land portion of this segment is remote and has

no developed access, both factors that would assist in the protection of the ORV.  The lower reach of this segment is private land within which the Lion Creek Corridor is bisected by Colorado State Highway 90.

The private land presently limits access to the public land portion of the corridor from the highway. Thus, acquiring portions of the private land from willing sellers would be value added for managing and providing public access to this segment if designated.  A small amount of additional funding would be needed for signage, public education, ranger patrolling, and maintenance. Additional facilities would not be needed if designated.  No detailed cost analysis or estimate was prepared as part of this study.

### Alternative Protective Measures Considered

The Vegetation ORV could be protected through existing authorities by requiring BLM terms and conditions on all future water right and ROW applications and actions to ensure compatibility with sustaining the riparian vegetation.

# 33 - SPRING CREEK

***Preliminary Classification:*** **Recreational**

***ORVs:*** **Vegetation**

***Key Points:***

- The segment is short and non-contiguous, with private land parcels near the lower terminus and along much of the middle portion.
- The BLM manages the source water areas that produce baseflow for Spring Creek, allowing for protection of flow-dependent values through existing authorities.
- The Vegetation ORV in the segment could be protected through existing authorities by ensuring that all future applications and actions contain BLM terms and conditions.

***River Segment Ownership (in Miles):***

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 1.49 | | | 1.16 | 2.65 | 56.2% |

***Land Ownership within One-Half Mile Wide Corridor (in Acres):***

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 633.0 | | | 201.4 | 834.4 | 75.9% |

## PUBLIC COMMENT SUMMARY

***Supporting Suitability:***

- One comment submitted by fourteen individuals expresses general support for all eligible tributaries of the Dolores River to receive immediate, thorough, and enduring protection.

***Opposing Suitability:***

- Montrose Board of County Commissioners has adopted a resolution opposing WSR designation, as it is thought not to be in the best interest of Montrose County citizens.
- Two comments express concern for the potential impacts of WSR designation on historic uses and water rights in the area.
- Two comments express opposition to WSR designation for Spring Creek because the large amount of private land could make the segment difficult to manage.
- One comment notes that historic and current agricultural zoning and uses have been adequate to protect the Vegetation OVR on non-federal lands.
- One comment notes that, while the length, location, and percentage of federally managed land might not warrant a finding of suitability, the segment should be protected by other means that ensure the continuing contribution of Spring Creek to the health of the watershed.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Although Spring Creek has no instream flow water right protection, water yield from the creek contributes flow to La Sal Creek, which is protected by an instream flow in the lower reaches that could restrict additional water development within the segment.

An absolute ditch diversion water right within the segment is senior to any water right associated with WSR designation.  There are no conditional water rights or impoundments within or upstream of the segment.

Enlarging or changing diversion points on existing water rights within the segment prior to obtaining a federal reserved water right associated with WSR designation could further reduce flow within the reach.  If the points of diversion are on public land, the water right could contain BLM terms and conditions limiting impacts to the Vegetation ORV.

### LAND OWNERSHIP AND USES

Approximately 24.1% of the corridor consists of private lands zoned as General Agriculture in the Montrose County Master Plan.  As presently defined in the Montrose County Zoning Resolution, the zone is relatively non-restrictive regarding allowable uses-by-right and uses requiring a special use permit.  Many of the uses are not related to agriculture.  Private parcels cover much of the middle portion and lower terminus of the segment.

#### ROWs
ROWs within the segment include Highway 90, a county road, a powerline, and a telephone line that parallels a portion of the creek.

#### Energy and Mineral Resources
There are existing oil and gas leases within the segment.  Active mining claims occur within the corridor and have a prior existing right to mineral deposits.

### ADMINISTRATION

WSR designation would complement the BLM Colorado Public Land Health standard for riparian vegetation.

#### Potential Costs Associated with WSR Designation
Upon finding a segment suitable, the stream and corridor would be managed to protect the ORVs, with little additional funding needed.  Following formal WSR designation, additional funding would be required for signage, public education, ranger patrols, and maintenance, the amount of which would vary, depending upon projected increases in visitor use, as well as the segment's size, location, and other attributes.

Costs for administering and managing this segment for the riparian Vegetation ORV would increase slightly above current funding levels.  The headwater, public land portion of this segment is remote and has no developed access, both factors that would assist in the protection of the ORV.

BLM_0109664

**33 - SPRING CREEK**
**WSR SUITABILITY ANALYSIS**

The middle and lower portions of this segment contain private land within which the Spring Creek corridor is bisected by Colorado State Highway 90.  The private land currently limits highway access to public land portions of the segment.  Thus, acquiring portions of private land from willing sellers would add value to managing and providing public access to this segment if designated.  A small amount of additional funding would be necessary for signage, public education, ranger patrolling, and maintenance.  Additional facilities would not be needed if designated.

### Alternative Protective Measures Considered

The Vegetation ORV would receive significant protection by placing BLM terms and conditions on all future actions and activities within the segment.

# 34 - DOLORES RIVER, SEGMENT 1

**NOTE:** The eligibility determination for this segment was made by the BLM Dolores Field Office.

***Preliminary Classification:*** **Recreational**

***ORVs:*** **Recreation, Scenery, Fish, Wildlife, Geology, Ecology, Archeology**

***Key Points:***

- A wide array of ORVs occur within the segment.
- A stream flow regime that mimics natural seasonal changes necessary for sustaining a healthy riparian vegetation community for the segment might only be secured through WSR designation.
- The segment is within the Dolores River Canyon Wilderness Study Area (WSA).

***River Segment Ownership (in Miles):***

| BLM | USFS | State | Private | TOTAL LENGTH | % FEDERAL |
|---|---|---|---|---|---|
| 9.56 | | | 2.32 | 11.88 | 80.5% |

***Land Ownership within One-Half Mile Wide Corridor (in Acres):***

| BLM | USFS | State | Private | TOTAL ACRES | % FEDERAL |
|---|---|---|---|---|---|
| 2,790 | | | 557 | 3,347 | 83.4% |

## PUBLIC COMMENT SUMMARY

***Supporting Suitability:***

- Four comments recommend that the Dolores River receive immediate, thorough, and enduring protection, including reaffirming previous WSR suitability findings for this segment in the RMP revision.
- Four comments recommend prohibiting oil and gas leasing in the Dolores River Corridor to protect the ORVs.
- Three comments assert that this regionally significant river warrants consistent and coordinated management and protection throughout the entire public land portion.
- One comment notes that the segment was identified as eligible in the San Juan Public Lands Draft RMP, and is essentially a component of Dolores River, Segment 2. As such, its extensive and diverse ORVs and value-related flows warrant the highest possible protection.
- One comment identifies the Dolores River and its tributaries as the lifeblood for many human and wildlife communities in western Colorado and states that, in the face of accelerated change in the west, the unique geology, profoundly moving scenery, diverse recreational opportunities, and precious water resources of the river basin must be preserved.

- One comment stresses that the Dolores River is critical for the protection and enhancement of riparian ecosystems spanning the federal land management areas.
- One comment stresses that the Dolores River Corridor, including the Paradox Valley and its rich wildlife and cultural resources, should be managed in close cooperation with adjacent BLM field offices and private landowners.
- One comment elaborates on the special natural features of the river, noting that the river basin spans numerous BLM and USFS offices and should be cooperatively managed to ensure that the river's serenity and beauty can continue to be enjoyed and explored.
- One comment states that the Dolores River corridor requires coordinated management between various federal jurisdictions in order to preserve the ORVs for the future.
- One comment states that, while the UFO manages a smaller portion of public land and a shorter stretch of the river than two adjoining BLM field offices, the segment constitutes the core of the river ecosystem and urges the UFO to consider the greater ecological significance when making management decisions.
- One comment encourages the BLM to continue its dialogue with stakeholders concerning management of the river, and identifies the protection of riparian habitat as the BLM's main responsibility within the segment.
- One comment recommends that the full length of the segment be found suitable.
- One comment expresses the necessity of protecting the wild landscape and natural values in the area and recommends a decisive finding of suitable.

*Opposing Suitability:*
- Montrose Board of County Commissioners has adopted a resolution opposing WSR designation as it is thought not to be in the best interest of Montrose County citizens.
- One comment recommends exploring feasible management alternatives to WSR designation.
- One comment opposes WSR designation due to the lack of sufficient water in the Dolores River and potential negative impacts to water rights.
- One comment expresses concern that WSR designation would fragment the area, making it more difficult and costly to manage.
- One comment states that the segment receives adequate protection through existing federal, state, and local regulations.
- One comment opposes WSR designation due to potential negative impacts on historic uses and water rights in the area.

## BLM ASSESSMENT

### WATER RIGHTS AND USES

Water yield through the segment contributes significantly to the proper hydrologic function of the Lower Dolores River downstream. The CWCB holds a year-round 78 cfs instream flow water