**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if BLM projects or other non-oil and gas activities are proposed/ implemented.<br><br>For imperiled species, we should err on the side of conservation by beginning with truly protected areas (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec.7 as appropriate. | |
| 348. | 156 | B | Ela (RACSG) | Use TL in managing to specific areas as a compromise with recreationability though I agree expensive in enforcement. We might get CDOW to share in enfocement since they have lots larger staff for this issue. | BLM (BK): We cannot reply – we cannot find the row you refer to (it is not 156). Sorry. |
| 349. | 156 + related | D + E | Ela (RACSG) | I would strong[ly] support for Bill Day's expertise on these comments, | BLM (BK): We are fully considering all of Bill Day's comments. |
| 350. | 156-159 | BCD | Joan May (CA) | Can you specify which actions address the ALT A issues? | EMPSi (KW): Addressed generally (FO-wide) by row 372 in livestock grazing section. |
| 351. | 158 | | CDOW | We are making the assumption that biological core areas will serve as the areas where wildlife are emphasized and forage priority will be to wildlife. | EMPSi (KW): The UFO is trending away from allocating forage one way or another. Land Health Standards and drought management plan will help with forage management. |
| 352. | 160 | All | B. Sharrow[2] | At the end of the action, add "Review every 5 years". | EMPSi (JW): change made to Alternatives B-D. |



BLM_0111382

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| 353. | 160 | all | CDOW | We suggest to help achieve the standards for public land health incorporate additional quantitative monitoring and allocate resources to ensure that the monitoring is completed. | EMPSi (KW): Monitoring will be done during implementation after the Record of Decision for the plan is signed.  Monitoring will be in accordance with the monitoring plan. |
| 354. | 160 | B-D | M. Siders | Should read: "Develop a strategy with the CDOW to achieve desired habitat conditions for priority native species and to achieve …" | BLM (BK): Change made |
| 355. | 160 | D | C. Sharp (USFWS/CA) | We recommend tying a target date commitment to this action—i.e., "standard survey protocol for key species and habitats will be compiled no later than one year following the signing of the ROD, in coordination with CDOW, USFWS, and other partners." | BLM (BK): No change.  The implementation plan will determine the target date. |
| 356. | 167 | B | M. Siders | Should read "Apply CSU/SSR restrictions within 0.25-mile of known breeding grounds and at nest sites of all waterfowl and shorebird species" | BLM (BK): Row deleted – taken care of with row 39. |
| 357. | 167 | D | C. Sharp (USFWS/CA) | An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if BLM projects or other non-oil and gas activities are proposed/ implemented.<br><br>For imperiled species, we should err on the side of conservation by beginning with truly protected areas | BLM (BK): We are keeping this as an SSR.  When considering proposals, the SSR is designed to protect the values. |



BLM_0111383

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**

**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec.7 as appropriate. | |
| 358. | 169 + 183 | B + E | Ela (RACSG) | Since USFS controls 90% of productive habitat for elk, be sure the 10% wag of the dogs tail does well collaboratively with USFS to fit the dog. BLM should compromise to collaborate with USFS since USFS has 90% of elk habitat. | BLM (BK): We try to be consistent with USFS if needed.  We also feel our actions on elk habitat are adequate. |
| 359. | 171 | D | Clements | Seems outside of range of alternatives | EMPSi (KW): Preferred alternative does not fall between Alternatives B and C as it was developed after the other alternatives were developed. This allowed the preferred alternative to be outside of the range. |
| 360. | 171 | D | Clements | Can we insert "native" in front of "riparian/water"? | BLM (BK): Row deleted.  Action is covered by actions in "riparian". |
| 361. | 171 through 177 | B,D | Burch | Suggest:  Combine the language (especially that in D) into one action with the action on line# 171. Suggest to start with the overall statement as it is in 171 add 177: then list the ways to manage for all and delete the rest. (Needs condensed for the reader.) | BLM (BK): Rows deleted – covered by actions in other sections. |
| 362. | 171-176 | D | C. Sharp (USFWS/CA) | Without quantifying, this action is tenuous, and is just a repeat of the stated goals for this resource. We recommend tying a reasonable target to habitat improvement actions. | BLM (BK): Rows deleted.  All actions shows in these rows are covered by actions in other sections (e.g., vegetation, riparian, SSS). |
| 363. | 172 - 176 | Entire Row | B. Krickbaum | Replace rows 172 – 176 with the single row shown in **Attachment C**. *See comments from B. Krickbaum: Z:\Shared\Projects\F-0126 UFO RMP\2_Deliverables\17_P3T7_Alternatives(Ch2)\3.7.D_BLM-CA-RACSC-Cmts\BLM (file name: Ch2_draft_UFO-Comments_062311_Krickbaum.docx)* | BLM (BK): Rows deleted – covered by actions in other sections. |
| 364. | 173 | d | B. Day (RACSG) | D should incorporate "no net loss" from B. Range of alts is good, though. | BLM (BK): Rows deleted – covered by actions in other sections. |
| 365. | 175 | D | B. Sharrow[2] | Note: B. Krickbaum combined rows 172-176 into one.  Delete the last bullet (bullet regarding managing prairie | BLM (BK): Rows deleted.  See the new Wildlife/SSS. |



BLM_0111384

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | dog release areas).<br><br>Reason: UFO is not going to manage release areas. | |
| 366. | 175 | B,D | Burch | Migratory Birds section – "In cooperation with CDOW for developing and managing prairie dog release areas…" does NOT fit well, here. A different action should be used for the different species – just like all the rest of the wildlife section.  The prairie dog release action/analysis should have been a stand- alone. | BLM (BK): Rows deleted – covered by actions in other sections. |
| 367. | 175 | BCD | Clements | Should all be "semidesert shrub habitat" | BLM (BK): Rows deleted – covered by actions in other sections. |
| 368. | 176 | d | B. Day (RACSG) | D should incorporate "no net loss" from B.  Range of alts is good, though. | BLM (BK): Rows deleted – covered by actions in other sections. |
| 369. | 178 | All | B. Krickbaum | Delete row – intent of this LN is covered by the CSU is row 179. | BLM (BK): Rows deleted. |
| 370. | 178 | BD | Clements | Delete "in" 6th line from bottom | BLM (BK): Rows deleted – covered by actions in other sections. |
| 371. | 179 | D | B. Krickbaum | Add:  "This stipulation does not apply to operation and maintenance of production facilities." | EMPSi (KW): This sentence removed from stipulations in chapter 2 as it is covered in Appendix B. Removed from individual stipulations in Appendix B. |
| 372. | 179 | Preferred | T. Stranathan | Migratory bird habitat could possibly be the entire FO. Will there be an exception granted if Survey does not contact any live migratory birds? This would allow most oil and gas operations a 4 month only drilling window when combined with Big Game TL if exceptions were not allowed.  As it appears could happen on over 500,000+ acres if only the potential habitat is recognized by this stip.  There is also a maximum project size tied to the exception criteria, OG may typically disturb slightly larger number of acres. | BLM (BK): TL now says "where nesting birds are present". |
| 373. | 180 | D | Clements | Insert "in"before "net" 6 lines above bottom | BLM (BK): Reference to "No Net Loss' is deleted, per management preference. |
| 374. | 180 | D | B. Krickbaum | Add the word "in" between "result" and "net". So, "Manage activities so they do not result in net loss…" | BLM (BK): Reference to "No Net Loss' is deleted, per management preference. |
| 375. | 180 | D | M. Siders | "lands identified for wilderness characteristics | BLM (BK): Row 180 changed |


BLM_0111385

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | protection," Is this the correct wording at this point? Or should it read "areas identified as lands with wilderness characteristics"? | |
| 376. | 180 | D | C. Sharp (USFWS/CA) | Migratory Bird Breeding Habitat CSU-23/ SSR-22<br><br>We commend the BLM for applying measures to avoid net loss of designated key/ priority habitats for migratory bird species. This is an example of a performance-based SSR aimed at conservation benefit, along with the TL for migratory birds.<br><br>Other SSR stipulations, to the extent possible, should take a similar approach (quantified or qualified, performance-based, conditional, etc.). | BLM (BK): Reference to "No Net Loss' is deleted, per management preference. |
| | | | | **Special Status Species** | |
| | | | | **Special Status Species – General** | |
| 377. | 184 | Chapter 2 Line 184 | Ela (RACSG) | Also uses "sensitive" to add to my confusion there and elsewhere. OR does this come under the cliché which says "consistency is the hobgoblin of a small narrow-mind." | BLM (BK): BLM sensitive species of conservation concern that are identified by the BLM state director.  This is different than federally listed (Threatened and Endangered) species |
| 378. | 184 | C | M. Siders | Should read "Maintain special status terrestrial and aquatic species populations and habitats. Maintain special status plant populations …" | EMPSi (KW): Change made. |
| 379. | 184 | D | C. Sharp (USFWS/CA) | Special Status Species-General Objective<br><br>What about "protection" of these species? This is stated as part of the resource goal, so it makes sense that it would be reflected in the actions too. Include *protection* as part of decision language. | BLM (BK): We are required by law to "protect". Also, "maintain, restore, enhance, preserve" are all a part of protecting. |
| 380. | 185 | A | M. Siders | Only part of this action in Alt A matches the Actions B-D. "Protect, maintain, and enhance the following:<br>• Critical habitats for big game, upland game birds, and waterfowl;<br>Comply with the FLPMA to maintain, enhance, and protect fish habitat on public lands."<br>should be moved to the Wildlife General Section. | BLM (BK): 185 is now part of the objective (184) |



BLM_0111386

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | And<br>"Protect, maintain, and enhance the following:<br>• Crucial habitats for nongame species of special interest or concern to state and other federal agencies (BLM 1985).<br>Comply with the FLPMA to maintain, enhance, and protect fish habitat on public lands."<br>should be left here. | |
| 381. | 185 | B | David Sinton | Please remove "proposed, " | EMPSi (KW): Change made. (Also, now part of objective) |
| 382. | 185 | C, D | C. Sharp (USFWS/CA) | Special Status Species-General<br>Designation of key species<br><br>Generally, in terms of status and obligations under ESA, proposed species are in greater need of protection/ attention than candidates, which have no legal protection or enforcement under ESA. ESA regulations allow for conferencing (similar to consulting) for proposed species, and other non-consultation programs for candidates. Since you designate candidates as a key/ priority species for these alternatives, you should also include proposed species. | BLM (BK): We have deleted reference to "proposed" species.  We disagree that they need greater protection.  Any species can be added to the proposed list upon submission of a proposal by anyone. |
| 383. | 186 | B | C. Sharp (USFWS/CA) | Special Status Species-General<br>Designation of habitat types<br><br>For the preservation alternative (B), I would also expect to see an effort to protect habitat based on special status species occupancy (potential, suitable, occupied, historic habitat). Or is the assumption that these habitat types would be encompassed in the veg types listed? If not, I would recommend adding the habitat types as listed in Alt. D. | BLM (BK): Change made. |
| 384. | 186 | C | C. Sharp (USFWS/CA) | Special Status Species-General<br>Designation of habitat types<br><br>The designated priority/ key habitats do not agree with the designated priority/ key species in line 185. For instance, under Alt. C, clay-loving wild buckwheat | BLM (BK): Change made. |



BLM_0111387

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | would be considered a key species, but not its habitat (salt-desert shrub). Edit to match and check for consistency within other alternatives as well. | |
| 385. | 186 | D | C. Sharp *(USFWS/CA)* | Special Status Species-General Designation of habitat types<br><br>The Service pays close attention to historic habitat for T&E, particularly unaltered historic habitat, or areas that can be remediated to suitable condition. Does the BLM UFO consider "suitable" habitat to also include historic habitat??? Please clarify and include historic habitat in this action.<br><br>Consistent with comment #3 above related to proposed species, add "proposed critical habitat" to list of designated habitats.<br><br>Finally, what do you consider occupied habitat? Populations plus a 200-meter buffer? A minimum convex polygon? Does it vary by species? Please specify here and/or include in the glossary. This has huge implications for how/ where/ etc. the stipulation will be applied. | BLM (BK): We are not including only USFWS designated habitat.<br><br>We no longer refer to Occupied. Now it reads "Recognize USFWS designated critical habitats as key-priority areas" |
| 386. | 187 | all | B. Krickbaum | Move row to after row 189. | BLM (BK): Change made |
| 387. | 187 | C | M. Siders | Should be "No similar action." This action was already stated at line 106. | BLM (BK): Change made |
| 388. | 187 | D | B. Krickbaum | Replace "Pursue opportunities for" with "Allow". Thus, "Allow augmentation…" | BLM (BK): Action changed. |
| 389. | 189 | B | C. Sharp *(USFWS/CA)* | Special Status Species-General Prohibitions under ESA<br><br>"…federally protected species" and proposed critical habitat—do you mean threatened and endangered species only? For Alt. B (preservation), I would expect to see protections for threatened, endangered, proposed, and candidate spp. Please clarify. | BLM (BK): Row deleted. Not needed, since refers to jeopardy, which we cannot cause. |
| 390. | 189 | D | C. Sharp *(USFWS/CA)* | Special Status Species-General Prohibitions under ESA | BLM (BK): We have deleted reference to "proposed" species. We disagree that they need |



BLM_0111388

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | And proposed species. (You included proposed critical habitat…) | greater protection.  Any species can be added to the proposed list upon submission of a proposal by anyone. |
| 391. | 190 | all | B. Sharrow[2] | Change the LN to a CSU Stipulation<br><br>Allowable Use:<br>**STIPULATION** CSU-XX: *Endangered Species Act Section 7 Consultation, and BLM Special Status Species.* The lease area may now, or is known to, contain plants, animals, or their habitats determined to be threatened, endangered, or other special status species. To avoid impacts to endangered, threatened, proposed species, designated critical habitat, or BLM special status species, lessees must contact the UFO prior to any surface activities associated with this lease.  The lessee may be required to conduct additional inventories to insure that there are no protected species present on the proposed disturbance sites. The BLM may recommend or require modifications to, or disapprove, exploration and development proposals to avoid BLM-approved activity that will contribute to a need to list such a species or their habitat. Modification or disapproval may also be required on a proposed activity that is likely to result in jeopardy to the continued existence of a proposed or listed threatened or endangered species or result in the destruction or adverse modification of a designated or proposed critical habitat.  This could include completion of any required conference or consultation with USFWS.  Additionally, project modifications may be required to avoid impacts to BLM sensitive species. (Refer to Appendix B.) | BLM (BK): Change made in new Wildlife/SSS section. |
| 392. | 190 | A-D | C. Sharp (USFWS/CA) | Special Status Species-General<br>LN-CO-34: ESA Sec.7 Requirements<br><br>"The BLM will not approve any ground-disturbing activity that may affect any such species until it completes obligations…under ESA…" | BLM (BK): Row deleted.  Not needed, since refers to jeopardy, which we cannot cause. |



Internal Draft Alternatives for Field Office, Cooperating Agency, and RAC Subgroup Review: June 23, 2011

BLM_0111389

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | ESA does not prejudice by type or severity of activity, regardless of whether that activity would cause ground disturbance. <u>Any</u> activity that "may affect" a listed species directly, indirectly, cumulatively, etc. is subject to Sec.7 of the ESA. Correct as follows: "The BLM will not approve any activity that may affect any such species until it completes obligations…under ESA…" | |
| 393. | 191 | B, C, D | B. Sharrow[2] | Replace B, C, D with the following CSU (B, C, and D will all be the same):<br><br>Allowable Use:<br>**STIPULATION** CSU-XX: *Biological Inventories.* The operator is required to conduct a biological inventory prior to approval of operations in areas of known or suspected habitat of special status species, or habitat of other species of interest such as, but not limited to, raptor nests, sage-grouse leks, or rare plant communities. Surveys shall be conducted by qualified biologist(s) using protocols established for potentially affected species during the appropriate time period(s) for the species.  Survey reports, data, and determinations shall be submitted to the BLM for review and confirmation.  Results from surveys expire three (3) years from the date of survey completion. Operators, the BLM, and the BLM Authorized Officer will use the information gathered to develop an appropriate mitigation plan.  Mitigating measures may include, but are not limited to, relocation of development activities and fencing operations or habitat.  If special status species are encountered during operation, operations will cease immediately, and the BLM Authorized Officer will be notified. (Refer to Appendix B.) | BLM (BK): This will become a BMP.  See the change made in new Wildlife/SSS section. |
| 394. | 191 | D | C. Sharp (USFWS/CA) | Special Status Species-General<br>LN-2: Biological Inventory Requirements | BLM (BK): This will become a BMP (not a Lease Notice).  Thus, the timeframes will not matter.  The BMP would be applied as applicable. |


BLM_0111390

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | "Results from surveys expire three (3) years from the date of survey completion." <br><br> This timeframe/ expiration may be appropriate for most perennial plants; if plants were ephemeral, however, the 3-year expiration would not make sense (1 year may be more appropriate). Clarify/ justify. <br><br> The three year-expiration clause is definitely not appropriate for most (mobile/ migratory/ ephemeral) fauna such as raptors, passerines, amphibians, and fish. To avoid/ minimize impacts, those species would likely require 1-year or seasonal expirations on survey findings to account for interim occupancy (or emergence) by species. | We now have a CSU (combined rows 190 and 201) that specify an inventory may be required. |
| 395. | 191/192 | Preferred | T. Stranathan | These appear to say the same thing. | BLM (BK): This will become a BMP (not a Lease Notice). Thus, the timeframes will not matter. The BMP would be applied as applicable. <br><br> Also, we kept 192 (minus the second paragraph), because this applies to all projects. |
| 396. | 192 | D | C. Sharp (USFWS/CA) | Special Status Species-General <br> Survey Requirements and Protocol <br><br> Reword to address the need for surveys prior to disruptive activities in these zones during sensitive periods. <u>Disruptive activities</u>- human-caused disturbance that induces stress on a population, community, or ecosystem and potential loss of species fitness (survival, reproduction, and recruitment), usually within crucial habitats or other sensitive areas during specific time periods; may or may not entail surface disturbance. <br><br> We recommend tying a target date commitment to this action—i.e., "standard survey protocol for key species and habitats will be compiled no later than one year following the signing of the ROD, in coordination with | BLM (BK): Reworded to ensure surveys are during the appropriate time. <br><br> Target date is not needed for this action (second paragraph has been deleted – covered by previous actions. |



**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | CDOW, USFWS, and other partners. Survey protocol will be revisited on 3-year basis, and updated as necessary." Other BLM field offices have successfully implemented this approach, providing management consistency, certainty for operators and, ultimately, improved conservation for species. | |
| 397. | 193 | D | B. Sharrow[2] | Change the action to (this makes it the same as C): **Action**: Designate occupied habitat of known populations of federally threatened and endangered species as ROW avoidance. | EMPSi (JW): change made |
| 398. | 193 | D | Holsinger | Change "Designate federally listed candidate species' occupied habitats and known populations of Colorado hookless cactus as ROW avoidance." to "Designate federally listed candidate species' occupied habitats and occupied habitat for Colorado hookless cactus as ROW avoidance." Known populations would be avoided/mitigated as per ESA. | BLM (BK): Changed to, "Occupied habitat of known populations of federally threatened and endangered species." Also, other wording has changed. |
| 399. | 193 | D | Pfifer | Need to show acres and a map for this for both excl. and avoid. This exception also needs to be footnoted in the ROW section, perhaps in line 450, Alt D, 2nd bullet, and App B stips because it will not be tracked from here alone. | EMPSi (KW): On row 450, referred back to SSS section. First part of exception is standard for fluid minerals stipulations and is in Appendix B, but this applies only to fluid minerals. |
| 400. | 193 | D | C. Sharp (USFWS/CA) | Special Status Species-General ROW Exclusion  "An exception may be granted by the BLM Authorized Officer if it can be determined that the activity would not cause **adverse** impacts or have **negligible** impacts. In addition, **surface occupancy** may be authorized following Endangered Species Act Section 7 consultation with USFWS (for species listed under the Endangered Species Act) and it is determined that the activity would not impair values associated with the maintenance or recovery of the species. If an exception is granted, special design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet), may be | BLM (BK): We have deleted the exception, and reworded the action substantially.   You will get other opportunities to review the draft RMP. |



Internal Draft Alternatives for Field Office, Cooperating Agency, and RAC Subgroup Review: June 23, 2011

BLM_0111392

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | required." | |
| | | | | I think I understand the intent, but it should be clarified which species groups you are referring to. For the first part, "an exception may be granted…" I presume you are referring to non-listed species, since any effects/ impacts (neglible or adverse) would require Sec.7 consultation prior to providing an exception. If, however, you are referring to T&E species, it should be stated that Sec.7 would be conducted prior to those activities.<br><br>Because the USFWS's biological opinion for the RMP proposed action will be predicated largely on proposed conservation measures for listed species, for this and all other stipulations related to T&E, the following should be stated: "Prior to providing an exception to this stipulation, the BLM will initiate Section 7 consultation with the USFWS." [The threshold here is *any* effect on listed species, not just surface occupancy.]<br><br>What do you consider occupied habitat? Populations plus a 200-meter buffer? A minimum convex polygon? Does it vary by species? Please specify here and/or include in the glossary. This has huge implications for how/ where/ etc. the stipulation will be applied. | |
| | | | | **Special Status Plants** | |
| 401. | 195 | All | B. Krickbaum | Combine with row 186. | BLM (BK): Change made |
| 402. | 195 | D | Holsinger | Should say "Designate all occupied and suitable habitats for special status plant species as key/priority areas." | BLM (BK): Row 195 combined with the objective. |
| 403. | 195 | D | L Reed | I'm confused what this action is really stating. "designate key/priority plant species as key/priority areas for special status plant species" Isn't there a more straight forward way to express this action than so much govt double speak that few folks will really understand what is being said. | BLM (BK): Changed and combined with the objective. |
| 404. | 195 | D | C. Sharp | Special Status Plants | BLM (BK): Changed and combined with the |



BLM_0111393

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | (USFWS/CA) | Designation of Habitats<br><br>The Service pays particular attention to historic habitat for T&E, particularly unaltered historic habitat. Does the BLM UFO consider "suitable" habitat to include historic habitat??? Clarify and include historic habitat in this action.<br><br>What do you consider occupied habitat? Populations plus a 200-meter buffer? A minimum convex polygon? Does it vary by species? Please specify here and/or include in the glossary. This has huge implications for how/ where/ etc. the designation will be applied. | objective. |
| 405. | 196 | B | M. Siders | Should read "Annually enhance at least 500 acres of special status plant habitat to promote their conservation." | BLM (BK): Row deleted |
| 406. | 196 | C | M. Siders | Should read "Offset direct impacts to special status plant species via species transplants to promote their persistence." | BLM (BK): Row deleted |
| 407. | 196 | D | Holsinger | Change to: Pursue opportunities to enhance, protect, or restore special status plant habitats or populations commensurate with other resource objectives and opportunities. | BLM (BK): Row deleted |
| 408. | 196 | D | B. Krickbaum | Change to: Allow opportunities to enhance, protect, or restore special status plant habitats or populations commensurate with other resource objectives and opportunities. | BLM (BK): Row deleted |
| 409. | 196 | D | M. Siders | Should read "Pursue opportunities to enhance, protect, or restore special status plant habitats or populations commensurate with other resource objectives and opportunities." (From Ken) | BLM (BK): Row deleted |
| 410. | 196 | D | C. Sharp (USFWS/CA) | Special Status Plants<br>Enhancing Habitat<br><br>Without quantifying, this action is tenuous, and is just a repeat of the stated goals for this resource. We recommend adopting Alternative B or similar proactive approach. | BLM (BK): Row deleted |


BLM_0111394

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

**Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)**

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | We would like to point out the relevance of Section 7(a)(1) of the Endangered Species Act and its mandate for "affirmative conservation". Whereas Section 7(a)(2) prohibits federal agencies from doing "bad" things to listed species, Section 7(a)(1) directs agencies to do "good" things for these species, i.e., conservation efforts such as protected area designation. In other words, agencies are legally obligated to not only avoid, mitigate, or compensate for impacts on imperiled species, but to also implement proactive conservation. | |
| 411. | 198 | D | C. Sharp (USFWS/CA) | Special Status Plants Closure to Mineral Material Disposal<br><br>Generally, in terms of status and obligations under ESA, proposed species are in greater need of protection/ attention than candidates, which have no legal protection or enforcement under ESA. ESA regulations allow for conferencing (similar to consulting) for proposed species, but other non-consultation programs for candidates. Since you designate candidates as a key/ priority species for these alternatives, you should also include proposed species.<br><br>What do you consider occupied habitat? Populations plus a 200-meter buffer? A minimum convex polygon? Does it vary by species? Please specify here and/or include in the glossary. This has huge implications for how/ where/ etc. the decision (mineral material disposal) will be applied. | BLM (BK): We have deleted reference to "proposed" species.  We disagree that they need greater protection.  Any species can be added to the proposed list upon submission of a proposal by anyone.<br><br>Occupied will be the plant plus 200 meters. |
| 412. | 199 | ALL | B. Sharrow[2] | B, C and D will be combined (to read almost like A), and move up to the SSS – General section. When moved to SSS-General, leave A as it is.  Replace B, C, D with: "Promote BLM sensitive species conservation and reduce the likelihood and need for species to be listed pursuant to the Endangered Species Act (BLM Manual 6840)." | BLM (BK): Row left in, per combined discussion with District Manager and Wildlife. |



BLM_0111395

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | | |
| 413. | 199 | B&C | Holsinger | The word take is used, since there is technically no take of plants under ESA I would just say " Prohibit any land use activity that would damage, injure, or remove a…"  Sorry I missed this. | EMPSi (KW): Change made. |
| 414. | 199 | D | B. Krickbaum | Change distance to 325-feet (99 meters) | BLM (BK): Change made |
| 415. | 199 | D | B. Krickbaum | Add "inside of and" before "within".  Will read: "Apply CSU/SSR restrictions inside of and within 325-feet (99 meters) of BLM …" | BLM (BK): Changed action slightly. |
| 416. | 199 | D | C. Sharp (USFWS/CA) | Special Status Plants CSU-24/ SSR-23: Sensitive Plant Spp.<br><br>What do you consider occupied habitat? Populations plus a 100-meter buffer? A minimum convex polygon? Does it vary by species? Specify here and/or include in the glossary. This has huge implications for how/ where/ etc. the decision will be applied.<br><br>An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if BLM projects or other non-oil and gas activities are proposed/ implemented. | BLM (BK): Action changed to "..within 100 meters of a BLM sensitive plant species".<br><br>See previous comments regarding SSR. |



BLM_0111396

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | For imperiled species, we should err on the side of conservation by beginning with truly protected areas (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec.7 as appropriate. | |
| 417. | 200 | B | M. Siders | Should read "Federally Listed, Candidate, and Proposed Plant Species' Occupied…" | BLM (BK): We did not include proposed in the final action. |
| 418. | 200 | B and D | B. Krickbaum | B: change distance to: 1000-feet (305 meters) D: change distance to: 650 feet (198-meters) | BLM (BK): Change made. JZ: Updated in appendix B. |
| 419. | 200 | C, D | B. Krickbaum | Make the same type of change as in comment 54 (now 348).  I want to make sure the action includes the habitat, and not just the area within a certain distance from the habitat. | BLM (BK): Not needed – other changes made. |
| 420. | 200 | D | M. Siders | Should read "Federally Listed and Candidate Plant Species' Habitat… within 200-meters (656-foot) of occupied habitat of federally listed and candidate plant species." | BLM (BK): Change not made:  Candidate removed by management direction. |
| 421. | 200 | D | C. Sharp (USFWS/CA) | Special Status Plants NSO-16/ SSR-24: Plant Habitat  Also include an NGD for non-oil and gas activities that would prohibit all surface-disturbing activities within the 200-meter zone and critical habitat for federally listed species. Also include proposed species in your list.  Why prohibit surface occupancy / surface disturbance for just fluid mineral activities— the measure should be science-based, i.e, based on the nature of effects. Surface disturbance is surface disturbance, regardless of the agent. While oil and gas activities have potentially significant impacts on sensitive resources, other non-fluid mineral activities—again, depending on the nature of effects—can result in much greater impacts (habitat loss or degradation, indirect disturbance, etc.) than oil | BLM (BK): We discussed with management, and have decided to leave "D" as an SSR, and also to change the NSO to a CSU.  The stipulation is now a CSU/SSR. It reads" Apply controlled surface use and SSR restrictions within habitat for individuals or populations of federally listed plant species.  Prohibit surface disturbing activities within 200 meters (656 feet) of identified individuals or populations of federally-listed plant species." The CSU and SSR will afford restrictions sufficient to protect the individual or populations of plants. |


BLM_0111397

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | and gas exploration/ development.<br><br>According to the best available science and USFWS policy for T&E plants in this region, any surface disturbance, and potentially disruptive activity, in the 200-meter zone [this would include critical habitat] constitutes a "may affect" (Sec.7) situation for those species.  To permit all non- fluid mineral activities via the SSR within these areas is contradictory to this policy, and to the resource goal ("protect and enhance"). For imperiled species, we should err on the side of conservation by beginning with truly protected areas (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec.7 as appropriate.<br><br>Generally, in terms of status and obligations under ESA, proposed species are in greater need of protection/ attention than candidates, which have no legal protection or enforcement under ESA. ESA regulations allow for conferencing (similar to consulting) for proposed species, but other non-consultation programs for candidates. Since you designate candidates as a key/ priority species for these alternatives, you should also include proposed species.<br><br>Because the USFWS's biological opinion for the RMP proposed action will be predicated largely on proposed conservation measures for listed species, for this and all other stipulations related to T&E, the following should be stated: "Prior to providing an exception to this stipulation, the BLM will initiate Section 7 consultation with the USFWS."  [The threshold here is *any* effect on listed species, not just surface occupancy.]<br><br>Also see recurring SSR comments (i.e., as in Comment | |



BLM_0111398

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | #16). | |
| 422. | 200 | Preferred | T. Stranathan | There is reasonable Exception, Mod, Waiver criteria in Appendix B. | EMPSi (KW): Thank you for your comment. |
| 423. | 201 | All | L. Armstrong[1] B. Sharrow[2] | Delete row: covered by row 190. | EMPSi (JW): change made. LN-UFO-2/LN-6 deleted from Chapter 2 and Appendix B. |
| 424. | 201 | A-D | C. Sharp *(USFWS/CA)* | Special Status Plants LN-UFO-2/ LN-6: Special Status Plants<br><br>"The BLM <u>may</u> recommend modifications to exploration and development proposals to avoid impact to any species listed under the Endangered Species Act, or proposed for listing under the Endangered Species Act, or designated or proposed critical habitat."<br><br>We hope BLM would, in fact, apply measures as necessary to avoid any impacts on these species. This is written from an operator/ applicant perspective and provides little assurance that conservation will be factored into BLM's decisions. Suggest rewording as "BLM reserves the right to modify exploration and development…" | BLM (BK): 201 is deleted, and combined with 190 (CSU).<br><br>Measures to avoid impacts will be identified at the project level and through consultation, if needed, with USFWS. |
| 425. | 201 | all | B. Krickbaum | Delete row – covered by row 190 | BLM (BK): Change made. |
| | | | | **Special Status Fish and Aquatic Wildlife** | |
| 426. | 202-261 | | CDOW | CDOW Commented on Wildlife Stips in Appendix B, please cross reference. | EMPSi (KW): Comments noted and addressed below. |
| 427. | 203 | D | Holsinger | Should read "Pursue opportunities to enhance, protect, or restore special status aquatic habitats, including structural and vegetation improvements, and remove or modify special status fish migration barriers commensurate with other resource objectives and opportunities." | BLM (BK): Changes made, and row is also now combined with rows 113 and 114. |
| 428. | 203 | D | M. Siders | Should read "Pursue opportunities to enhance, protect, or restore special status aquatic habitats, including structural and vegetation improvements, and remove or modify special status fish migration barriers commensurate with other resource objectives and opportunities." | BLM (BK): Changes made, and row is also now combined with rows 113 and 114. |



BLM_0111399

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| 429. | 203 | D | C. Sharp (USFWS/CA) | Special Status Fish and Aquatic Wildlife Enhancing Habitat<br><br>Without quantifying, this action is tenuous, and is just a repeat of the stated goals for this resource. We recommend adopting Alternative B or a similar proactive approach.<br><br>We would like to point out the relevance of Section 7(a)(1) of the Endangered Species Act and its mandate for "affirmative conservation". Whereas Section 7(a)(2) prohibits federal agencies from doing "bad" things to listed species, Section 7(a)(1) directs agencies to do "good" things for these species, i.e., conservation efforts such as protected area designation. In other words, agencies are legally obligated to not only avoid, mitigate, or compensate for impacts on imperiled species, but to also implement proactive conservation. | BLM (BK): Row is also now combined with rows 113 and 114. Changes not made (do not know what change you are requesting). |
| 430. | 205 | All | M. Siders | Redundant with line 120 in Wildlife-Aquatic.  Can we just point to this line in the regular aquatic section like we did with Desert Bighorn?<br>"Refer to the Aquatic Wildlife section" | BLM (BK): Deleted – covered by row 120. |
| 431. | 205 | D | C. Sharp (USFWS/CA) | Special Status Fish and Aquatic Wildlife TL-5: Coldwater and Native Fish Habitat<br><br>What do you consider occupied habitat? Has it been mapped, or will models be used. Please specify here and/or include in the glossary. This has implications for how/ where/ etc. the action would be implemented. | BLM (BK): Occupied refers to streams that have these fish species present. |
| 432. | 206 | D | Clements | Make sure that river and habitat restoration activities are not included in NGD | BLM (BK 10/5/11): Removed "surface disturbing activities" and replaced with "apply SSR restrictions." |
| 433. | 206 | D | B. Krickbaum | Change the NGD to an SSR.<br>Replace "Surface Disturbing Activities" with "apply SSR Restrictions".<br>Change in Appendix B. | BLM (BK): Change made. |
| 434. | 206 | D | B. Krickbaum | Last paragraph -- change to read:<br>"Prohibit surface occupancy and apply SSR restrictions | BLM (BK): Change made. |



BLM_0111400

**BLM – U**NCOMPAHGRE **F**IELD **O**FFICE, **C**OLORADO
**R**ESOURCE **M**ANAGEMENT **P**LAN **R**EVISION AND **E**NVIRONMENTAL **I**MPACT **S**TATEMENT

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | within 300 feet of the edge of the ordinary high-water mark (bank-full stage) of occupied native cutthroat trout habitat. (Refer to Appendix …)" | |
| 435. | 206 | D | C. Sharp (USFWS/CA) | Special Status Fish and Aquatic Wildlife NSO-19/ NGD-12: Occupied Habitat for Federally Listed Fish and Native Cutthroat

Please clarify. Does the first component of the stipulation apply to federally protected fish, and the second (300-ft. buffer) to cutthroat trout? Or is the intent really to protect big river habitat, some of which supports federally listed fish, plus waterways occupied by native cutthroat trout (or greenback cutthroat lineage)?

For Colorado River endangered fish, the stipulation metric should really factor in critical habitat, including the channel and 100-year floodplain. The floodplain and constituent elements of critical habitat have been determined to be essential to the survival and recovery of the species. A fixed buffer may not adequately address this variability, depending on the river system and characteristics. For pikeminnow and razorback critical habitat reaches (Gunnison River), we recommend adopting a two-pronged buffer, similar to NSO-4 but written as: "the 2500-ft. buffer area OR the extent of the 100-year floodplain, whichever is greater." [I'm guessing the .5 mile buffer would encompass the vast majority of the 100-year floodplain; if so, that should be explained in the stipulation. E.g., "Prohibit… activities within .5 miles of the ordinary high water mark [which includes all federally designated critical habitat]…" | BLM (BK): Yes, the first component of the stipulation applies to federally protected fish, and the second (300-ft. buffer) to cutthroat trout.

For an NSO, we should have one number.  We feel 2500 feet approximates the 100-yr floodplain for these species. |
| 436. | 206 | Preferred | T. Stranathan | Why 2500 feet on major rivers when the 300' will do on all other "occupied" cutthroat trout habitat.  There are several suitable well pad locations below pinon on the SM river which would easily have no impact on the river by staying 500' away.  Greater surface impacts | BLM (BK): 2500 feet approximates the 100-yr floodplain for these species.  The native warm water species need a greater buffer than cutthroat because of critical habitat designation. |



BLM_0111401

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
|  |  |  |  | may occur on adjacent areas because the disturbance is pushed into difficult and rugged terrain.  COGCC reg 317B regarding water supplies now require specific protocols be put in to play when operating in zones close to waterbodies which may already include cutthroat trout.  It seems that operators would have to already comply with regs in order to drill a well in such proximity.  There is no Exc. Mod Wav Criteria proposed in Appendix B at the time of this comment. |  |
| 437. | 207 | D | C. Sharp *(USFWS/CA)* | It appears that you are referring to just Colorado River cutthroat trout here, not greenback cutthroat lineage.  Please clarify. [similar questions in comment #21 above] | BLM (BK): Not sure why you think this.  The action is for "Native cutthroat trout", which includes Colorado and greenback. |
| 438. | 207 | Preferred | T. Stranathan | This should probably be an NSO if the populations are easy to locate and delineate?  Although the 200m standard move distance could keep the well bore out of this 300-500' buffer zone. If left as a CSU. | EMPSi (KW): BLM ID Team thought CSU from 300-500 feet would be adequate. |
|  |  |  | **Special Status Terrestrial Wildlife** |  |  |
| 439. | 211 | B & C | M. Siders | Should read "… except for Canda lynx (see Special Status Terrestrial Wildlife – Canada lynx). …" | BLM (BK): Change not made –the reference to the lynx section is not needed. |
| 440. | 211 | D | M. Siders | Should read "… except for Canada lynx (see Special Status Terrestrial Wildlife – Canada lynx) and Mexican spotted owl (see Special Status Terrestrial – Mexican spotted owl). …" | BLM (BK): Change not made –the reference to the MSO section is not needed. |
| 441. | 211 | D | C. Sharp *(USFWS/CA)* | Special Status Terrestrial Wildlife NSO-21/ SSR-29: TEC Occupied Habitat<br><br>Also include an NGD for non-oil and gas activities that would prohibit all surface-disturbing activities within the defined zone and critical habitat for federally listed species. Also include proposed species in your list.<br><br>Why prohibit surface occupancy / surface disturbance for just fluid mineral activities— the measure should be science-based, i.e, based on the nature of effects. Surface disturbance is surface disturbance, regardless of the agent. While oil and gas activities have potentially | BLM (BK): We considered NGD, but feel an SSR offers adequate protection.  We can apply appropriate restrictions at the project stage with an SSR. |


BLM_0111402

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | significant impacts on sensitive resources, other non-fluid mineral activities—again, depending on the nature of effects—can result in much greater impacts (habitat loss or degradation, indirect disturbance, etc.) than oil and gas exploration/ development.<br><br>An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if BLM projects or other non-oil and gas activities are proposed/ implemented.<br><br>What do you consider occupied habitat? Known populations plus a determined buffer? Please specify and/or include in the glossary.<br><br>Because the USFWS's biological opinion for the RMP proposed action will be predicated largely on proposed conservation measures for listed species, for this and all other stipulations related to T&E, the following should be stated: "Prior to providing an exception to this stipulation, the BLM will initiate Section 7 consultation with the USFWS."  [The threshold here is | |


BLM_0111403

**BLM – U**NCOMPAHGRE **F**IELD **O**FFICE, **C**OLORADO
**R**ESOURCE **M**ANAGEMENT **P**LAN **R**EVISION AND **E**NVIRONMENTAL **I**MPACT **S**TATEMENT

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | *any effect on listed species, not just surface occupancy.]* | |
| 442. | 213 | c | B. Day (RACSG) | If the alt c date is extended until at least Aug 5, if not Aug 15, then the range of alts will be wide enough. Cuckoos are probably the last migratory bird to return to the UFO area, and begin breeding very late. | EMPSi (KW): Change made to August 5. |
| 443. | 213 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife CSU-29/ SSR-30 YBCU Habitat

Studies have shown that yellow-billed cuckoos are sensitive to human disturbance/ presence, and may abandon nests when disturbed. Recommend a seasonal restriction period (restricting surface disturbance and disruptive activities) for areas that have been identified as active breeding habitat or in the vicinity of known, active nests (e.g., areas of the North Fork of the Gunnison river, portions of the San Miguel(?), portions of Dolores River(?)). We recommend a TL from May 15 through July 31 to allow for territory establishment and full fledging/ dispersal of young.

An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if | BLM (MS): There are no known active breeding sites on BLM lands. |


BLM_0111404

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | BLM projects or other non-oil and gas activities are proposed/ implemented. | |
| 444. | 216 | A | Holsinger | "Make habitat abitat in the Camel Back-Roubideau Creek area for" should read I think Make habitat available… | EMPSi (KW): Change made. |
| 445. | 216 | A | M. Siders | Should read "Make habitat in the Camel…" | EMPSi (KW): Change made. |
| 446. | 216 | A | Sondergard | Remove "abitat" | EMPSi (KW): Change made. |
| 447. | 216 | A | Steve Weist (RACSG) | Remove "abitat" from 1st line | EMPSi (KW): Change made. |
| 448. | 219 | B | B. Krickbaum | Delete the word "currently". | BLM (BK): Not needed … row changed. |
| 449. | 219 | D | C. Sharp (USFWS/CA) | This should be labeled as a CSU/ SSR (performance-based). | BLM (BK): We do not agree.  Also, we have deleted several rows, and created a new action: "Follow management actions from the most current Lynx Management Plan approved by USFWS." |
| 450. | 220 | D | M. Siders | Should read: <br>• "… Locate development or production facilities to avoid primary lynx habitat. <br>• Prohibit fluid minerals development activities on BLM- administered surface lands that would contribute disproportionately to management thresholds applied to lynx habitat. i.e.: <br>   ○ no more than 30 percent of mapped habitat within a LAU in unsuitable condition; <br>   ○ less than 15 percent of habitat witin a Lynx Analysis Unit converted to unsuitable condition within a 10-year period; <br>   ○ maintain greater than 10 percent in habitat suitable for denning within a LAU." | BLM (BK): We have deleted the bullets – the CSU wording changed to: <br>"Apply CSU/SSR restrictions within mapped or identified Lynx Linkage Corridors and Canada lynx habitat within Lynx Analysis Units, and to any activities that would negatively alter connectivity between and within Lynx Analysis Units." |
| 451. | 221 | D | C. Sharp (USFWS/CA) | The following point should be labeled as a standard TL: "Prohibit surface use or disrupting activities in Lynx Analysis Unit denning habitat during the denning period, March 15 to July 15." | BLM (BK): We have deleted the row per management direction. We are following "management actions from the most current Lynx Management Plan approved by USFWS." |
| 452. | 222 | Preferred | T. Stranathan | Since this covers only 20 acres on private surface federal minerals.  I suggest going with a NSO on that 20 acre area if it's all connected. | BLM (BK): BLM decided to leave CSU (do not know why you think it is only 20 acres).  Also, this row is now combined with row 220. |
| 453. | 224 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife <br>TL-18 GUSG Winter Habitat | BLM (BK): We will show these dates in Alt B (Oct 1 – Mar 15).  "D" will stay Dec 15 – March 15. |



Internal Draft Alternatives for Field Office, Cooperating Agency, and RAC Subgroup Review: June 23, 2011

BLM_0111405

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | Consistent with the GUSG Rangewide Conservation Plan (RCP), in GUSG <u>winter concentration areas</u>, apply a broader timing restriction, from October 1 through March 15.<br><br>These buffers should also apply to undetermined leks (activity status unknown). Lek status should be determined based on CDOW terms and definitions.<br><br>Modify stipulation to include a restriction for disruptive activities (i.e., shed hunting) in this zone during sensitive periods. *Disruptive activities*- human-caused disturbance that induces stress on a population, community, or ecosystem and potential loss of species fitness (survival, reproduction, and recruitment), usually within crucial habitats or other sensitive areas during specific time periods; may or may not entail surface disturbance.<br><br>Also, for winter habitats, a 4 to 6-mile buffer—as prescribed in Alternative B—should be included in the stipulation for <u>unmapped areas</u> (see RCP), or areas for which mapping needs to be revised. We don't want to wait until areas are mapped, or agreed upon, to apply conservation measures. | This is winter habitat – lek status and distance is not a consideration.<br><br>We have included "disruptive" in row 226.<br><br>We have decided to not include a buffer for unmapped habitats (in D) – currently winter habitats are fairly well mapped by CDOW. |
| 454. | 225 | B | M. Siders | Should read "When existing leases expire, do not re-offer for lease all Gunnison sage-grouse lek habitat plus a 0.60- mile radius." | BLM (BK): Change made. |
| 455. | 225 | D | C. Sharp *(USFWS/CA)* | Special Status Terrestrial Wildlife<br>NSO-24/ SSR-34: GUSG Breeding (Lek) Habitat<br><br>Research has shown the significance of the .6 mile buffer for GUSG survival/ persistence and how crucial it is to protect these areas. Considering the species' overall status and trends, its priority ranking for listing in the future, its rarity in the UFO, and its relatively limited distribution in the UFO, the Service | BLM (BK): "No Leasing" would not accomplish any more than an NSO. With an NSO, a company cannot occupy the surface, which is what you really want.<br><br>We do not know what an "undetermined lek" is. To protect, we need to know where it is, and that it is in fact a lek. |



BLM_0111406

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | recommends that a no-leasing stipulation be applied to the .6-mile buffer zone from active leks ("active" as defined by CDOW). Stipulation should apply to both active and *undetermined* leks (activity status unknown). Also include an NGD for non-oil and gas activities that would prohibit all surface-disturbing activities within the 200-meter zone and critical habitat for federally listed species. Also include proposed species in your list. Why prohibit surface occupancy / surface disturbance for just fluid mineral activities— the measure should be science-based, i.e, based on the nature of effects. Surface disturbance is surface disturbance, regardless of the agent. While oil and gas activities have potentially significant impacts on sensitive resources, other non-fluid mineral activities—again, depending on the nature of effects—can result in much greater impacts (habitat loss or degradation, indirect disturbance, etc.) than oil and gas exploration/ development. We are not convinced this is enough protection for the species to ensure further decline. For imperiled species, we should err on the side of conservation by beginning with truly protected areas (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec.7 as appropriate. | |
| 456. | 226 | | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife TL-21: GUSG Breeding (Non-Lek) Habitat We presume the timing stipulation would also apply to the sage-grouse breeding (lek) habitat (.6 mile-buffer zone), but it's confused by the stipulation title. That | BLM (BK): To clarify, the title is changed to "…(lek and non-lek…" Included disruptive activities. |


BLM_0111407

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | should be clarified in the stip description or by changing the stipulation title or, better yet, by prohibiting *all* surface disturbance in the .6-mile buffer (see notes above for line 225). Modify to include a restriction for disruptive activities (i.e., shed hunting) in this zone during sensitive periods. *Disruptive activities*- human-caused disturbance that induces stress on a population, community, or ecosystem and potential loss of species fitness (survival, reproduction, and recruitment), usually within crucial habitats or other sensitive areas during specific time periods; may or may not entail surface disturbance. | |
| 457. | 226 | A | T. Stranathan | Not sure where this came from.  I reviewed 1991 EIS and could not locate the language.  Maybe it came from the Gorge Plan? | BLM (BK): Changed Alt A to "No similar action in current RMPs". The only TL in the ROD related to sage grouse is a winter TL.  So, the one in the matrix for breeding habitat is not applicable. |
| 458. | 226 | D | Steve Weist *(RACSG)* | 4 miles is excessive, you could have multiple drainages and hills between a lek and a surface activity. The distance for an eagle nest is only 0.5 miles. Why should a sage grouse be so much further? | BLM (BK): Consistent with current state stips; based on best available science, and the distance is consistent with the sage grouse range-wide plan. We have changed to action to "…within suitable habitat that is within 4.00 miles…" |
| 459. | 227 | D | Steve Weist *(RACSG)* | Again 4 miles is excessive, considering the typical height of sage brush, you would have to be almost on top of a lek to even see it or have it visible to the lek. At that height you would have to even prohibit planes from flying over a lek. 0.5 miles is more than sufficient. | BLM (BK): Consistent with current state stips; based on best available science, and the distance is consistent with the sage grouse range-wide plan. We have changed to action to "…within suitable habitat that is within 4.00 miles…" |
| 460. | 227 | D | C. Sharp *(USFWS/CA)* | Special Status Terrestrial Wildlife CSU-34/ SSR-36: GUSG Breeding (Lek) Habitat "… protect GUSG mapped seasonal habitats…"  Since not all habitat functional types (i.e., non-lek breeding, brood-rearing, etc.) are currently mapped, will you apply the stipulation across the entire buffer area, or employ another approach to identify specific area(s) to be protected (i.e., identifying habitat types as done in Alt. C—sagebrush, riparian, wet meadow, etc.). | BLM (BK): We now say "Apply CSU/SSR restrictions within suitable habitat that is within 4 miles…" |



BLM_0111408

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if BLM projects or other non-oil and gas activities are proposed/ implemented.<br><br>For GUSG, regarding the "operating constraints", numbers should be tied to the CSU and SSR to ensure habitat protection/ maintenance over the long term. Fragmentation of sagebrush habitats has been cited as a primary cause of the decline of Gunnison and greater sage-grouse populations. To what degree will you avoid those habitat types? We recommend applying a threshold, making this a conditional CSU (e.g., no more than 1% disturbance of sage grouse habitats, no more than .5 miles of road per sq. mile, no more than 2 major structures per 640 acres---this approach should address both total/ cumulative habitat loss and densities of disturbance). Research indicates that even if reclamation is successful, sage-grouse may not return to those areas, and/or are unlikely recover to pre-disturbance numbers (71 FR 19966). Consequently, a | |



BLM_0111409

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | rolling-reclamation would need to factor this into the decision making process. | |
| 461. | 228 | C and D | B. Sharrow[2] | C and D will be the same. Change the LN to a CSU. Use the same language as currently in D. However, delete the last paragraph. | BLM (BK): Row is deleted, per discussions with district and FO management. Alt A is moved up a row to 227. |
| 462. | 228 | A | M. Siders | Delete "Sharptail grouse nesting habitat is described as mountain shrub communities with a density of shrub plants from 1,700 to 32,000 shrubs per hectare and average shrub height of 30 centimeters. Nests are found primarily in shrub clumps where the shrubs are taller than average. (Nesting occurs within an average distance of 2 kilometers of a lek)."  Not pertinent to this plan. | EMPSi (KW): Change made. |
| 463. | 228 | B, C, D | B. Krickbaum | Apply to B and C also. | BLM (BK): BLM combined rows 227/228, and changed it to a CSU. |
| 464. | 230 | | Clements | Saw-whet owl | EMPSi (KW): Change made. |
| 465. | 230 | All | B. Krickbaum | Regarding Siders comment # 78, the list changes only the middle sentence.  The first sentence "This section includes…" remains.  The last sentence "Non-special status raptors…" remain. | EMPSi (KW): Change made. |
| 466. | 230 | All | M. Siders | Should read: "Special status raptors, including Birds of Conservation Concern, include Mexican spotted owl, peregrine falcon, northern goshawk, ferruginous hawk, burrowing owl, bald eagle, golden eagle, prairie falcon, and flammulated owl." | EMPSi (KW): Change made. |
| 467. | 231 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife TL-23: Raptor Breeding and Nest Sites<br><br>Editorial: Several bullet points don't make sense, need to reword (e.g., "Ferruginous hawk: 0.50-mile of active nest…")<br><br>Since the American kestrel is excluded under this stipulation, how does the BLM intend to avoid or minimize take of this species and ensure compliance with MBTA? (a requirement for compliance with MBTA is that agencies must demonstrate due diligence and effort in the implementation of MBTA) If protected | BLM (BK):<br>1st question: we do not understand the question or comment.<br><br>2nd statement: protected under MBTA, and we need to comply with the law.  They are abundant across the landscape.  Also, other actions require us to survey for nesting birds.<br><br>We added disruptive.<br><br>Active nests do not include alternate nests for the timing limitation.  Protections are provided for |



BLM_0111410

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

**Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)**

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | through other means, that should be described here or in the exceptions/ justification section.<br><br>Expand restriction to include select disruptive activities (e.g., recreation, shed hunting, etc.) in this zone during sensitive periods. *Disruptive activities*- human-caused disturbance that induces stress on a population, community, or ecosystem and potential loss of species fitness (survival, reproduction, and recruitment), usually within crucial habitats or other sensitive areas during specific time periods; may or may not entail surface disturbance.<br><br>We presume "active nests" would include alternate nests (particularly for bald and golden eagles). Please clarify here and/or provide definition in the glossary.<br><br>Provide definitions for active/ inactive/ abandoned nests, since these terms are interpreted widely, and have a bearing on how the stip will be interpreted/ applied. Nest status determinations should factor in breeding behavior. For example, CDOW definitions for BAEA (current?): *Inactive nest*–"A former active nest location in which neither courtship, breeding, or brooding activity has been observed at any time during the last 5 years." And the flip side of that, *active nest*—"A specific location in which a pair of bald eagles have at least attempted to nest within the last five years.  Any nest location that can be directly tied to courtship, breeding, or brooding behavior is considered active. " [the point being that a nest may still be usable, or "active", even if it is not currently occupied or if birds recently abandoned the site due to disturbance]<br><br>For BGEPA compliance (and the disturbance clause), apply the timing limitation to *active nests*, as defined above (rather than just nests that are occupied at a | alternate nests in other actions (NSO and CSU). EMPSi (AA): Added to glossary:<br>**Active nest site** – a raptor nest site that is currently occupied by a pair of breeding raptors.<br>**Alternate nest site (Inactive nest)** – a raptor nest site that has been used in the past by and within the territory of a breeding pair of raptors. The nest site still maintains the characteristics of a nest structure and habitat features of a nest site, but is not currently in use.<br>**Abandoned nest:** a nest that was occupied by breeding birds earlier in the breeding season, but was abandoned at some point during breeding (i.e. failed eggs, death of young, etc.).<br><br>Regarding the commenter's last statement – we now say "…when nests are active, or until fledging and dispersal of young", |



BLM_0111411

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | given point in time). | |
| 468. | 231, 232 | D | Burch | Couldn't these 2 actions be combined to one? | EMPSi (KW): Change made. |
| 469. | 231; Glossary-01 Glossary-03 | B 15 04 | M. Siders | Add to Glossary: **Active nest site** – a raptor nest site that is currently occupied by a pair of breeding raptors. **Alternate nest site** – a raptor nest site that has been used in the past and by within the territory of a breeding pair of raptors. The nest site still maintains the characteristics of a nest structure and habitat features of a nest site, but is not currently in use. | EMPSi (KW): Change made. |
| 470. | 233 | D | B. Sharrow[2] | Delete NGD and replace with SSR and SSR language. | BLM (BK): Change made.  Also, row 233 is combined with rows 235 and 241. |
| 471. | 233 | D | M. Siders | Should read "(except Mexican spotted owl [See Special Status Terrestrial – Mexican spotted owl])" | BLM (BK): Reference not made (no change) |
| 472. | 233 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife NSO-29/ NGD-20: Special Status Raptor Nest Sites (exc. MSO)<br><br>Eagles: Where nests are blown from trees during storms or are otherwise destroyed by the elements, continue to protect the site in the absence of the nest for up to three (3) complete breeding seasons. Many eagles will rebuild the nest and reoccupy the site.<br><br>Provide definitions for active/ inactive/ abandoned nests, since these terms are interpreted widely, and have a bearing on how the stip will be interpreted/ applied. Nest status determinations should factor in breeding behavior. For example, CDOW definitions for BAEA (current): **Inactive nest**–"A former active nest location in which neither courtship, breeding, or brooding activity has been observed at any time during the last 5 years." And the flip side of that, **active nest**—"A specific location in which a pair of bald eagles have at least attempted to nest within the last five years.  Any nest location that can be directly tied to courtship, breeding, or brooding behavior is considered active. [Active nest – Any nest that is | BLM (BK): We do not have the man-power to survey and track for nests that no longer exist. Surveys at the project stage will occur, and if birds are on territory, professional judgment will provide protection for the birds.<br><br>Definitions provided above.<br><br>Applied 100-m to Golden eagle as well (your last statement) |


BLM_0111412

**BLM – U**NCOMPAHGRE **F**IELD **O**FFICE, **C**OLORADO
**R**ESOURCE **M**ANAGEMENT **P**LAN **R**EVISION AND **E**NVIRONMENTAL **I**MPACT **S**TATEMENT

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | frequented or occupied by a raptor during the breeding season, or which has been active in any of the five previous breeding seasons. Many raptors use alternate nests in various years. Thus, a nest may be active even if it is not occupied in a given year.]<br><br>Regarding the 100m-buffer for *abandoned* (as defined in Alt. D) BAEA nests: For compliance with BGEPA, the same restriction, or similar approach, should be applied for GOEA nests. | |
| 473. | 233 and Glossary | D | M. Siders | Add to Glossary:<br>**Abandoned nest:** <mark>a raptor nest site that been unoccupied by at least one raptor for 5 consecutive years, but with all or part of the nest structure remaining.</mark><br>**Inactive nest site** – a raptor nest site that is currently not occupied by a pair of breeding raptors. | BLM (BK): After clarification with M Siders, definition we used is: "**Abandoned nest:** a nest that was occupied by breeding birds earlier in the breeding season, but was deserted at some point during breeding (i.e. failed eggs, death of young, etc.)". |
| 474. | 234 | D | M. Siders | Should read "[except Mexican spotted owl {See Special Status Terrestrial – Mexican spotted owl}]" | EMPSi (KW): Change made. |
| 475. | 234 | D | C. Sharp (USFWS/CA) | Include an SSR restriction for non-fluid mineral activities, with performance-based or conditional criteria. If the area is important enough to protect from oil and gas disturbance, it is important enough to protect from other disturbance agents. | BLM (BK): SSR included. |
| 476. | 238 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife<br>CSU-37/ SSR-37: Bald Eagle Habitat<br><br>To minimize the risk of BAEA take/ disturbance, incorporate applicable conservation measures from the USFWS National Bald Eagle Management Guidelines:<br><br>http://www.fws.gov/midwest/eagle/guidelines/NationalBaldEagleManagementGuidelines.pdf<br><br>Please clarify or reword the following:<br>1. "…involvement of cottonwood stands or…." [Do you mean avoid disturbance of these areas?]<br>2. "…the pre-development potential of affected | BLM (BK): Included your first statement (reference to the eagle guidelines).<br><br>We have deleted bullets – Plan of development would identify needed restrictions.<br><br>CSU now reads:<br>"CSU-37/SSR-37: *Bald Eagle Habitat (Winter Concentration and Communal Roosts)*. Apply CSU/SSR restrictions within bald eagle habitat to protect winter concentration areas and communal roost sites. Incorporate applicable conservation measures from the USFWS National Bald Eagle Management Guidelines." |



**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | floodplains to develop or support…" [Think I know the intent, but it's confusing for the reader.] 3. "…the current/ future utility of…substrate…" [Again, I think I know the intent, but the word choice is confusing.] | |
| 477. | 239 + 281 eg + 285 eg | | Ela (RACSG) | I am confused by the acronyms between SSR and SSS. SSR is used as Alternative C? (or A?? unless SSS is really the perceived issue – as I see it. The title of the section is "Special Status" and not "site specific." | EMPSi (JW): SSR = site-specific reloation. SSS not found in Chapter 2. Perhaps it was a typo which has been revised at this point. |
| 478. | 239 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife TL-25: Bald Eagle Winter Concentration Areas  We recommend changing restriction period to November 15 through April 1, according to CDOW guidelines (overall, this is a shorter timeframe than proposed in Alt D, but likely more appropriate for wintering BAEA in Colorado).  Expand restriction to include disruptive activities (e.g., recreation, shed hunting, etc.) in this zone during sensitive periods. *Disruptive activities*- human-caused disturbance that induces stress on a population, community, or ecosystem and potential loss of species fitness (survival, reproduction, and recruitment), usually within crucial habitats or other sensitive areas during specific time periods; may or may not entail surface disturbance. | BLM (BK): TL change made.  Added disruptive activities. |
| 479. | 241 + 241 | D + E | Ela (RACSG) | I can't see the rationale between listed 50%, 90% or 100%. 90% to me provides adequate flexibility. | BLM (BK): Sorry, we cannot find the row you refer to (it is not 241 or one near there). |
| 480. | 242 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife TL-26: Mexican Spotted Owl Suitable Breeding Habitat  Define suitable breeding habitat here and/or in the glossary. Will this be based on habitat models? This has huge implications for how/ where/ etc. the stipulation will be applied.  This approach—based on suitable habitats—is very | BLM (BK): Added disruptive to text.  EMPSi (AA): Added to glossary: **Mexican spotted owl suitable breeding habitat:** Vegetation characteristics described in the current MSO recovery plan in areas where MSO breeding has been confirmed. |



BLM_0111414

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | different than applying stipulations to known occurrences, nests, crucial habitats, etc. of a species. You would basically assume that MSO are present in an all areas of suitable habitat, to which the TL would apply. Considering the prevalence of "suitable habitat" for MSO in the UFO, is this feasible?

Expand restriction to include disruptive activities (e.g., recreation, shed hunting, etc.) in this zone during sensitive periods. *Disruptive activities*- human-caused disturbance that induces stress on a population, community, or ecosystem and potential loss of species fitness (survival, reproduction, and recruitment), usually within crucial habitats or other sensitive areas during specific time periods; may or may not entail surface disturbance.

Because the USFWS's biological opinion for the RMP proposed action will be predicated largely on proposed conservation measures for listed species, for this and all other stipulations related to T&E, the following should be stated: "Prior to providing an exception to this stipulation, the BLM will initiate Section 7 consultation with the USFWS." [The threshold here is *any* effect on listed species, not just surface occupancy.] | |
| 481. | 243 | D | C. Sharp *(USFWS/CA)* | Special Status Terrestrial Wildlife NSO-34/ NGD-24: Mexican Spotted Owl PACs

Define PAC here and/or in the glossary.

Expand restriction to include disruptive activities (e.g., recreation, shed hunting, etc.) in this zone during sensitive periods. *Disruptive activities*- human-caused disturbance that induces stress on a population, community, or ecosystem and potential loss of species fitness (survival, reproduction, and recruitment), usually within crucial habitats or other sensitive areas during specific time periods; may or may not entail surface | BLM (BK): PCA (Protected Activity Center) is defined by the MSO Recovery Plan.

Disruptive activities has been added to the TL (TL-26).

We do not need to state section 7 consultation – that is a given if needed. |



BLM_0111415

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | disturbance.<br><br>Because the USFWS's biological opinion for the RMP proposed action will be predicated largely on proposed conservation measures for listed species, for this and all other stipulations related to T&E, the following should be stated: "Prior to providing an exception to this stipulation, the BLM will initiate Section 7 consultation with the USFWS." [The threshold here is any effect on listed species, not just surface occupancy.] | |
| 482. | 244 | D | M. Siders | Should read "Constituent elements for forest dwelling Mexican spotted owl breeding habitat include: … . For canyon habitat dwelling Mexican spotted owls, the primary constituent elements… ." | BLM (BK): Bullets have been deleted, and we have added "manage in accordance with the current MSO recovery plan" to the text. |
| 483. | 244 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife<br>CSU-38/ SSR-38: MSO Suitable Breeding Habitat<br><br>The use of the term "constituent elements" implies that you are referring to federally designated critical habitat. Would this stipulation apply to all suitable breeding habitats for MSO, or just critical habitat, if designated in your resource area? Please clarify.<br><br>An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which | BLM (BK): The bullets, which include the term "constituent elements", have been deleted. The items in the bullets are not needed for a LUP decision. The new action does include: "Manage in accordance with the current MSO recovery plan. Field Manager may require the proponent/applicant to submit a plan of development that demonstrates that impacts to Mexican spotted owl habitat have been avoided to the extent practicable. |



BLM_0111416

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if BLM projects or other non-oil and gas activities are proposed/ implemented.<br><br>For imperiled species, we should err on the side of conservation by beginning with truly protected areas (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec.7 as appropriate. | |
| 484. | 247 | D | B. Sharrow[2] | Delete the last three bullets (only the 1st remains). Change the language at the end of the intro paragraph, since there is only one bullet remaining. | BLM (BK): Changes made. |
| 485. | 247 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife CSU-39/ SSR-39: Gunnison and White-tailed prairie dog towns<br><br>An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if | BLM (BK): We are keeping this as an SSR. The SSR is designed to protect the values when considering proposals.<br><br>We don't feel an NSO is necessary. The CSU would apply to a colony of any size. The NSO in alt C you refer to only applies to activities greater than one acre in size that are within a colony that is less than ten acres in size; greater than 10 acres, and the NSO/NGD would not apply. |



BLM_0111417

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

**Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)**

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | BLM projects or other non-oil and gas activities are proposed/ implemented.<br><br>For imperiled species, we should err on the side of conservation by beginning with truly protected areas (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec.7 as appropriate.<br><br>In addition to the CSU, we recommend an NSO/ NGD approach similar to Alternative C. This prescription takes into account the scale of impact, the variable nature of prairie dog occupancy, and places reasonable site-specific limits on project activities. Larger prairie dog towns (i.e., larger than 10 acres, as suggested) are likely more capable of sustaining disturbance, whereas smaller colonies cannot.<br><br>Management decisions for prairie dog have far-reaching effects for the salt desert ecosystem as a whole. As a keystone species, prairie dog abundance influences the welfare of multiple species—kit fox, burrowing owl, raptors, etc. | |
| 486. | 248 | B and D | B. Sharrow[2] | Change the title to: *Gunnison and White Tail Prairie Dog Pups.* Also, add "Gunnison and White Tail" before "prairie dog" later in the paragraph. | EMPSi (JW): change made. |
| 487. | 250 | any cell | B. Sharrow[2] | Let's try to insert a small map that shows what part of the planning area the kit fox are in. | BLM (BK): A figure will be inserted if possible. David will attempt a figure, and determine if a small figure depicts anything meaningful. |
| 488. | 250 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife CSU-41/ SSR-41 and TL-30: Kit Fox Active Dens<br><br>An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public | BLM (BK): We are keeping this as an SSR. The SSR is designed to protect the values when considering proposals.<br><br>Considering the small area a den occupies, even a cluster, it would be unreasonable to apply a NSO restriction. A CSU will protect these areas |


BLM_0111418

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if BLM projects or other non-oil and gas activities are proposed/ implemented.<br><br>For imperiled species, we should err on the side of conservation by beginning with truly protected areas (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec.7 as appropriate.<br><br>Considering the species' overall status and trends (at current rates, predicted extirpation in the near future), its rarity in the UFO, and its relatively small distribution in the UFO, the Service recommends that an NSO/ NGD be applied to protect den clusters (historic and active). Kit fox dens, and natal dens in particular, are used repeatedly over multiple generations and should be protected/ retained. This would entail a nominal buffer, such as 100 feet, to protect the den sites themselves.<br><br>Regarding TL-30: Expand restriction to include disruptive activities (e.g., recreation, shed hunting, etc.) | sufficiently.  Also, an NSO would need to be identified at the time of leasing.  What if a kit fox or den appears within the lease?  We would not be able to apply the NSO is that case.  The CSU could be applied at any time. |



BLM_0111419

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | in this zone during sensitive periods. *Disruptive activities*-human-caused disturbance that induces stress on a population, community, or ecosystem and potential loss of species fitness (survival, reproduction, and recruitment), usually within crucial habitats or other sensitive areas during specific time periods; may or may not entail surface disturbance. | |
| 489. | 251 & 507 | | M. Siders | What happened to Petitioning the Secretary for withdrawal of additional bat roosts? Had under Alt B "Same as Alternative A plus petition the Secretary of the Interior for withdrawal from locatable mineral entry for sensitive bat species' significant maternity roost or hibernaculum." | BLM (BK): Added back to Alternative B. |
| 490. | 252 | All | B. Krickbaum | XX acres | EMPSi (KW): Change made. |
| 491. | 252 | All | M. Siders | Cory Lode mine withdrawal = 17.8 acres per FR Public Land Order No. 7735 Withdrawal (CO-923-1430-ET; COC-70704) | EMPSi (KW): Change made. |
| 492. | 253 | D | M. Siders | Should read "Prohibit surface occupancy and apply SSR restrictions within 0.25-mile of Federally listed and BLM sensitive bat species'…" | EMPSi (KW): Change made. |
| 493. | 253 | D | C. Sharp (USFWS/CA) | Special Status Terrestrial Wildlife Bat Roost Sites and Winter Hibernacula NSO-38/ SSR-44 CSU-43/ SSR-43 TL-31

An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, | BLM (BK): We are keeping this as an SSR.  The SSR is designed to protect the values when considering proposals. We don't feel that an NGD is appropriate.  An SSR for .25 miles will afford the protections needed. |



BLM_0111420

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if BLM projects or other non-oil and gas activities are proposed/ implemented.<br><br>For imperiled species, we should err on the side of conservation by beginning with truly protected areas (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec.7 as appropriate. | |
| 494. | 256 | D | Clements | There is a statewide stip for frog habitat-should it be used here for Alt D? | BLM (BK):  Row deleted per management direction; did not see a reason to leave in, since we would generally not be able to identify reptile breeding sites during the oil/gas leasing phase. |
| 495. | 256 | D | C. Sharp (USFWS/CA) | We recommend adopting Alternative C, at a minimum. You propose an NSO stipulation for midget faded rattlesnake… why this species but not others? (leopard frog, canyon tree frog, etc.) | BLM (BK): Rows (256, 257) deleted per management direction; did not see a reason to leave in, since we would generally not be able to identify reptile breeding sites during the oil/gas leasing phase.<br>Other actions have the requirement for SSS surveys in general at the project stage and also the requirement to not harm species, which will be sufficient for protection. |
| 496. | 259 | All | M. Siders | Redundant with line 167 in Terrestrial Wildlife – Waterfowl and Shorebirds.  Suggest changing line 259 to say "Refer to the Terrestrial Wildlife – Waterfowl and Shorebirds section" | BLM (BK): Deleted row 167. |
| 497. | 259 | D | C. Sharp (USFWS/CA) | Apply NGD wherever you apply NSO. The measure should be science-based, i.e, based on the nature of effects. Surface disturbance is surface disturbance, regardless of the agent. | BLM (BK): UFO made the decision to not apply NGD every time we apply NSO.  We chose SSR almost every time.  NGD means that nothing can occur on the ground – no signs, no trail, etc.  NGD in many cases, while well-intentioned, is also short- |


BLM_0111421

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | | sighted and overly restrictive. |
| 498. | 261 | D | C. Sharp (USFWS/CA) | We presume based on the language that these areas would be identified in the near future. We suggest a target completion date.

On a sidenote, why the verbiage "Authorized Officer" to identify areas, and for this particular decision? The decision should be science-based, as determined by biologists in coordination with CDOW, although the Authorized Officer inevitably influences/ endorses/ or denies decisions regardless of the species or circumstances. No other decision, that I've seen, reads like this. | BLM (BK): We have deleted the row.  We feel that the several other restrictions on major rivers, streams, and waterfowl/shorebird habitat will protect the Sandhill crane breeding areas.

Regarding the sidenote, we frequently say "designated by the BLM Authorized Officer", "authorized by the BLM Authorized Officer", and such, because it is the BLM Authorized Officer (e.g. Field Manager) who makes the ultimate decision.  It is not some other biologist, CDOW or other agency.  They can make recommendations, but, because the authorized officer is responsible for management of the land, it is their call and decision. |
| | | | | **Wild Horses** | |
| | New | | Barb | Add a "Wild Horse" section.  Rows are below after this table. *EMPSi: Rows are in file saved on Egnyte here: Z:\Shared\Projects\F-0126 UFO RMP\2_Deliverables\17_P3T7_Alternatives(Ch2)\3.7.E _RvsdDraftCh2_SO- Review\CommentResponse\FromBLM (File Name: Ch2_draft_UFO- Comments_091911_Miscellaneaous.docx)* | EMPSi (JW): Change made. |
| | | | | **Wildlife Fire Ecology and Management** | |
| 499. | 265 | A, B, C, D | A. Schroeder (CA) | Add BOR and federal lands and agencies besides BLM, NPS, and USFS

Dan: is BOR part of interagency fire management unit? *Sent to Dan 8/11/11* Dan's response (8/17/11):  No…BOR is not part of MIFMU.  Line 265 is accurate as written. | EMPSi (KW): No change. Per Dan Huisjen (8/17/11), BOR is not part of MIFMU. Line 265 is accurate as written. |
| 500. | 266 | | A. Schroeder (CA) | I recommend that the word "natural" in the phrase "high-value natural resources" at the end of the sentence be deleted.

Rationale: Deletion of that word will yield a broader | EMPSi (KW): Change made. |


BLM_0111422

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | coverage that includes both high value manmade and natural resources. | |
| 501. | 275 | | Clements | Insert "and vegetation mosaic" after "resource" | EMPSi (KW): Change made. |
| 502. | 277 | B and D | B. Krickbaum | D: Move "soils, watersheds" to before ACECs. Will read: "…not degraded particularly relative to soils, watersheds, ACECs, WSAs, …"  B: Delete "Wilderness". Make the same change (soils, watersheds) as in D. | EMPSi (KW): Change made. |
| 503. | 278 | B, C, D | A. Schroeder (CA) | Define "climax vegetative community" in the Glossary. | EMPSi (KW/AA): Added the following definition: The final vegetation community and highest ecological development of a plant community that emerges after a series of successive vegetational stages. The climax community perpetuates itself indefinitely unless disturbed by outside forces. (BLM range Web site) |
| 504. | 278 | D | B. Krickbaum | Add: "or manage". Will read: "Revegetate or manage lands…" | EMPSi (KW): Change made. |
| 505. | 279 | | Clements | Make consistent with vegetation section by adding", vegetation and habitat objectives" before "or where human life" | BLM (BK 10/5/11): Changed B and D, end of sentence after last parenthesis, changed to: ", vegetation and habitat objectives, or where human life or property are at risk from post-fire impacts." |
| | | | | **Cultural Resources** | |
| 506. | 283 | All | B. Krickbaum | I don't think we need the reference to the LUP Handbook. | EMPSi (KW): Change made. |
| 507. | 296 | D | Steve Weist (RACSG) | 100 meters is 128 ft. further away than the more restrictive Alt B which is 200 ft., it should be at most 200 ft. or 60 meters. | EMPSi (KW): Preferred alternative does not fall between Alternatives B and C as it was developed after the other alternatives were developed. This allowed the preferred alternative to be outside of the range. The BLM Management team has decided to go with 100 meters to be consistent with pending state-wide stipulations. |
| 508. | 299 | D | B. Sharrow[2] | Reword D to read: **Action**: Nominate individual sites to the National or State Register of Historic Places.  Individual sites with the | EMPSi (JW): change made. BLM (BK) Note: The two different names in Alt B and Alt D are correct (Paradox Valley Rock Art district and complex), and the names do not need |



BLM_0111423

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | potential for nomination include sites identified in the:<br>• Ute Wickiup project;<br>• Uravan Uranium Mining district;<br>• Squint Moore complex;<br>• Harris site on the Uncompahgre Pleateau;<br>• Paradox Valley Rock Art complex.<br>Also nominate other sites that meet the National Register of Historic Places criteria. | to match. It is the same place, but we should use the two different names. Alt B says to nominate National Register districts and that "Potential National Register Districts include…" The list of names are all potential districts, so that is why they have "district" attached.<br><br>Since Alt D nominates sites to "National or State Register of Historic Places" we will leave "complex" attached to the name.  It is now referred to as a complex.  But under Alt B, it would become a district once nominated. |
| 509. | 301 | B, C, D | B. Sharrow[2] | Remove "Lease Notice" and title.  Replace with "Action".  Begin the action with "Attach the following…"  Remainder of the text will be the same:<br><br>**Action:**<br>Attach the following standard stipulations to any BLM-issued permit in which there may be ground-disturbing activities or the potential for the inadvertent discovery or effects to any National Register of Historic Places- or otherwise eligible historic or archaeological cultural property:<br>• If historic or archaeological materials are uncovered during permitted activities, the operator is to immediately stop activities in the immediate area of the find that might further disturb such materials, and immediately contact the BLM Authorized Officer. Within five working days, the BLM Authorized Officer will inform the operator as to:<br>  o whether the materials appear eligible for the National Register of Historic Places; and<br>  o the mitigation measures the operator will likely have to undertake before the construction may proceed.<br>• Pursuant to 43 CFR 10.4(g), the holder of the authorization must notify the BLM Authorized Officer, by telephone, with written confirmation, | EMPSi (KW): Change made. (deleted from Appendix B) |



BLM_0111424

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**

**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | immediately upon the discovery of human remains, funerary items, sacred objects, or objects of cultural patrimony. Further, pursuant to 43 CFR 10.4(c) and (d), you must stop activities in the vicinity of the discovery and protect it for 30 days or until notified to proceed by the BLM Authorized Officer. | |
| | | | | **Paleontological Resources** | |
| 510. | 306 | B | B. Krickbaum | Change the sentence to read: "…site-management plan for known localities, including;" | EMPSi (KW): Change made. |
| 511. | 309 | B, C, D | B. Sharrow[2] | Same as above.  Remove "Lease Notice" and title. Make it an action, beginning with "Require a permitted…". Remove "(Refer to Appendix B)" | EMPSi (KW): Change made. (deleted from Appendix B) |
| | | | | **Visual Resources** | |
| 512. | 310-316, Fig 2-7 | D | S. Bear (RACSG) | Since the Adobe ACEC is a ROW avoidance area, potential for ROW exists. Therefore, provide an area between private lands and Adobe VRM Class I by providing a 200 meter VRM Class 3 corridor at the edge of the Adobe ACEC. | EMPSi (KW): The ACEC is within the Adobe Badlands WSA, which is VRM Class I per BLM guidance. The area outside of the WSA is VRM Class IV which would allow for ROW development. If the WSA were to go away, the ACEC area would be managed as VRM Class II and ROW development would have to be mitigated to meet that standard. |
| 513. | 313 | B, C, and D | J. Jackson | Undesignated acres - These numbers should not vary if they are acres managed by other agencies; and if they need to have a VRM Class assigned then they should be assigned the VRI Class until further direction is given | EMPSi (KW): GIS acreages updated. |
| 514. | 314 | D | Hawke (RACSG) | Add "Paradox Valley Zone 4" | EMPSi (KW): Paradox Valley SRMA is not in Alternative D; however it would be managed as VRM Class I under Alternative B. |
| 515. | 314 & 316 | D | S. Bear (RACSG) | Correct VRM acreages, providing for the 200 meter buffer along the ACEC boundary. | EMPSi (KW): The ACEC is within the Adobe Badlands WSA, which is VRM Class I per BLM guidance. The area outside of the WSA is VRM Class IV which would allow for ROW development. If the WSA were to go away, the ACEC area would be managed as VRM Class II and ROW development would have to be mitigated to meet that standard. |
| 516. | 315 | B, C, and D | J. Jackson | See Bruce's comment on additional language needed about all other areas not mentioned or areas outside | EMPSi (KW): Changed to read, " Manage xx acres as VRM Class II including, but not limited to, the |



BLM_0111425

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | of the areas already listed. | following" |
| 517. | 315 | D | L Reed | A VRM II classification on 99,920 acres seems like it will be very difficult for resource uses such as ROWs and minerals/O&G to process applications.  We've gone from Alt A which is the San Miguel River ACEC to over 99,000 acres of VRM II lands in the new plan? Doesn't this seem restrictive for a Multi Use agency? Basically 1/6 of the FO will have some pretty stringent siting restrictions [and this doesn't include the 46,580 acres that are VRM I]<br><br>Also note the lands east and south of Montrose:  the BLM lands are typically VRM IV while the private lands are VRM II?   Also we have the entire N Fork area as VRM II -  both public and private lands?   Shouldn't there just be a buffer along the highway instead of classifying so many acres of private lands as VRM II?<br><br>I think the VRM II areas in Alt D need to be reconsidered. | BLM (BK): There will be some change to the VRM map.  The area east and south of Montrose will change to III. The North Fork area (except for ½ mile along the highway) will be a class III. |
| 518. | 315 | D | Joan May (CA) | Add San Miguel River ACEC excepting existing utility corridors and other stream segments in B located in San Miguel County to D | EMPSi (KW): The ACEC is VRM Class III. |
| 519. | 315 | D | J. Jackson | Under SRMA's should read:<br>• Dolores River Canyon Zone 1 and 2<br>• Roubideau Zone 1<br>• San Miguel River Zone 3<br>• Spring Creek Zone 2<br>Adjust the overall acres.<br><br>Note to BLM: Direction under Appendix K says to Change Dolores River Canyon RMZ 1 to VRM III. Please advise.<br><br>BLM Response (BK 10/5/11): Current matrix is correct: Dolores River RMZ1 is managed as a VRM Class II. Appendix K is incorrect, and need to change to class II. | EMPSi (JW): Change made. |
| 520. | 316 | B, C, and D | J. Jackson | See Bruce's comment on additional language needed about all other areas not mentioned or areas outside | EMPSi (KW): Changed to read, " Manage xx acres as VRM Class III including, but not limited to, the |



BLM_0111426

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | of the areas already listed. | following" |
| 521. | 316 | D | B. Krickbaum | Insert the word "including" after "Class III". | EMPSi (JW): Change made. |
| 522. | 316 | D | B. Krickbaum | Change the bullet regarding West Elk Scenic Byway (3rd from the bottom bullet) to:  Bullet "Portion of the West Elk Scenic Byway west of Gunnison County Road 12." | EMPSi (JW): Change made. |
| 523. | 316 | D | B. Krickbaum | Do we need to describe other areas shown on the map, but not in the list of areas?  Or, will the map typically suffice? | EMPSi (KW): Changed to read, " Manage xx acres as VRM Class III including, but not limited to, the following" |
| 524. | 316 | D | J. Jackson | Under SRMA's should read:<br>• Dry Creek<br>• Jumbo Mountain<br>• Roubideau Zones 2, 3, and 4<br>• San Miguel River Zones 1, 2, and 4<br>• Spring Creek Zones 1 and 3<br>Adjust the overall acres | EMPSi (JW): Change made. |
| 525. | 317 | D | B. Sharrow[2] | Add a bullet:<br>All areas not identified as VRM Class I, II or III. | EMPSi (KW): Added to Alternatives B and C. Alt D is Same as B plus. |
| 526. | 318 | D | Hawke (RACSG) | Change to read like Alt B<br>**Explanation & Notes:**<br>Visual resources are the foundation of many other values important to manage for in the UFO, including recreation and tourism appeal. Given the rural western character that remains in significant portions of the UFO, particularly the West End, management to retain these highly valuable and rapidly vanishing visual resources merits the NSO stipulation. | EMPSi (KW): No.  BLM team decided that the management objectives for the different VRM classes would dictate land use. |
| 527. | 318 & 319 | C&D | Holsinger | Should that say same as Alternative B for C&D? | EMPSi (KW): No. BLM team decided that the management objectives for the different VRM classes would dictate land use. |
| 528. | 319 | D | Hawke (RACSG) | Change to read like Alt B<br>**Explanation & Notes:**<br>Visual resources are the foundation of many other values important to manage for in the UFO, including recreation and tourism appeal. Given the rural western character that remains in significant portions of the UFO, particularly the West End, management to retain | EMPSi (KW): BLM team decided that the management objectives for the different VRM classes would dictate land use. |



BLM_0111427

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | these highly valuable and rapidly vanishing visual resources merits the CSU/SSR stipulation. | |
| 529. | 320 | B,C,D | Steve Weist (RACSG) | Remove" Naturally dark (i.e.," and just have the following:" Maintain dark night sky conditions in areas that are generally unaffected by man-made light sources)". | BLM (BK 10/5/11): Objective changed to, "Maintain dark night sky conditions in areas that are generally unaffected by man-made light sources." |
| 530. | 322 | B and D | B. Sharrow[2] | Change the action to:<br>**Action:**<br>Require that permanent and temporary artificial outdoor lighting be shielded and downward-facing ("full cut-off" fixtures) to minimize impacts to naturally dark night skies. An exception, with mitigation, may be granted for temporary lighting if the requirement will create a hazard. | EMPSi (KW): Change made.<br><br>A question arose: Even with permanent lighting, operators would be required to meet OSHA standards so it's possible that operators might not be able to meet this. Do we need an exception for temporary lighting if they're going to comply with OSHA standards?<br><br>BLM (BK) Reply: Leave it as it is. Permanent lighting can be installed that won't violate OSHA. I don't see any problem with the requirement. The potential hazard could be with temporary lighting -- e.g while drilling a well. I want to leave it as is to let companies know that we really do want shielded lighting, but that if there is a problem, we can work it out. |
| | | | | **Lands with Wilderness Characteristics** | |
| 531. | 325 | NAP | Hawke (RACSG) | The Goal should be updated to more fully reflect the recently issued guidance on LWCs in Land Use Planning (IM 2011-154-att2), that also includes the consideration of "benefits that may accrue to other resource values and uses as a result of protecting wilderness characteristics." To more closely track the current guidance, the goal might read approximately "Manage, protect and preserve non-WSA lands with wilderness characteristics while considering other resource values and uses that might be affected, and considering manageability."<br>**Explanation & Notes:**<br>This is an important additional consideration now explicitly reflected in the guidance, and is especially | BLM (BK): Changed to, "Manage, protect and preserve non-WSA lands with wilderness characteristics while considering manageability and resource values and uses that might be affected." |



BLM_0111428

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | important to consider where preservation of LWCs may also benefit other resources important in the UFO, including but not limited to resource examples reflected in the new guidance: recreational opportunities, protection of watersheds, wildlife habitat, natural plant communities, cultural resources, scenic quality, and similar natural values." | |
| 532. | 327 | | | Replace matrix row 327 with the row shown below. GIS has the new maps. *EMPSi: Replacement row found in matrix saved on Egnyte here:* Z:\Shared\Projects\F-0126 UFO RMP\2_Deliverables\17_P3T7_Alternatives(Ch2)\3.7.E _RvsdDraftCh2_SO-Review\CommentResponse\FromBLM *(File Name:* Ch2_draft_UFO-Comments_092211_krickbaum.docx) | EMPSi (JW): Change made. |
| 533. | 327 | | Hawke (RACSG) | See below. *(EMPSi Note: refers to comment requesting Norwood Canyon be added to list of lands identified for wilderness characteristics protection, as well as entire Roc Creek/Carpenter Ridge CWP area)* **Explanation & Notes:** Alternatives B and D provide a very good start at preserving the important areas that possess wilderness characteristics in the UFO. However, some areas that may possess wilderness characteristics under the recently issued guidance for inventory and incorporation into land use planning are missing from the alternatives. To reflect a full range of alternatives, these missing areas should be included, as the areas reasonably may be interpreted as possessing wilderness characteristics under recent guidance (IM2011-154_att 1 & 2) | BLM (BK 10/5/11): Shavano Creek and Dolores River Canyon have been added to alternative B. EMPSi (KW): While the CWP did a good job of excluding inventory roads (meeting the definition in our manual 6301), there were some areas around the edges of the unit that have routes, ways and other disturbances that prevent those edge areas from possessing the "naturalness" criteria. The CWP boundary was adjusted to exclude those areas during evaluation. The biggest issue, however, is with size. BLM Manual 6301 requires that to possess wilderness characteristics, an area must meet certain size criteria. While the CWP includes enough USFS adjacent land to meet the size requirement, those USFS lands are not WSAs nor Recommended Wilderness; therefore, we may only look at the BLM lands. Since there are two pieces that meet at a corner, and that do not share a common boundary, and neither meets the size criteria, the areas do not possess wilderness characteristics. |
| 534. | 327 | B & D | Hawke (RACSG) | Add "Norwood Canyon" **Explanation & Notes:** | EMPSi (KW): While the CWP did a good job of excluding inventory roads (meeting the definition in |



BLM_0111429

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | There are several reasons under IM2011-154 att 1 why Norwood Canyon, a citizen-proposed wildernss area, should continue to be considered as LWC in the range of alternatives: The area can be demonstrated as "of sufficient size as to make practicable its preservation and use in an unimpaired condition." The area is bound by rugged canyon topography, few roads, and adjacent Forest Service land; thus the area is fairly inaccessible and can reasonably be managed as a separate unit . The area is also recommended for management under the Wild classification for Wild and Scenic River Suitability, and included in the San Miguel ACEC; these proposed special designations reflect that the area can be managed in a wild and natural state. In addition, forest service planning is currently very out of date, and the status of adjacent FS land in current plans should not be relied upon as definitive for this analysis. The BLM and FS should consult jointly to consider managing this area for wilderness character. | our manual 6301), there were some areas around the edges of the unit that have routes, ways and other disturbances that prevent those edge areas from possessing the "naturalness" criteria.  The CWP boundary was adjusted to exclude those areas during evaluation. The biggest issue, however, is with size. BLM Manual 6301 requires that to possess wilderness characteristics, an area must meet certain size criteria. While the CWP includes enough USFS adjacent land to meet the size requirement, those USFS lands are not WSAs nor Recommended Wilderness; therefore, we may only look at the BLM lands.  Since there are two pieces that meet at a corner, and that do not share a common boundary, and neither meets the size criteria, the areas do not possess wilderness characteristics. |
| 535. | 327 | B & D | Hawke (RACSG) | Include in the area and acreage for "Roc Creek/Carpenter Ridge" all of the citizen-proposed wilderness area that lies within UFO; this may be more than the 4310 acres described | BLM (EF 10/5/11): Much of the CWP in the Roc Creek area does not possess the "natural" characteristic, and has been excluded from the unit. In particular, the lands in upper Beehive Canyon and Carpenter Flats in the southeast part of the CWP are laced with a network of vehicle routes. |
| 536. | 327 | B, D | E. Franz | Acreage is likely to change in Upper Dry Creek Basin and Roc Creek units.  Two new units may be added: Shavano Creek and Dolores River Canyon – Wild Steer Addition.  As a result, Alts B and D are likely to diverge. | EMPSi (JW): Made changes to row 327 (added Shavano Creek and Dolores River Canyon Addition to Alternative B; Alternative same as OLD Alternative B). Added to Table 2-1. |
| 537. | 327 | c | B. Day (RACSG) | No action / no protection is too wide range of alts. | EMPSi (KW): Managing to protect wilderness characteristics under Alternative C does not fit the theme of the alternative. Line 328 also adds to the range of alternatives. |
| 538. | 327 | D | Rogers | We need to be able to partner with USFS. They have several treatments planned for the Potter basin area and we don't need any more straight lines between the | EMPSi (KW): Management decided to leave action as-is; no good justification thus far for making it smaller. |



BLM_0111430

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | two agencies. Also need two drift fences in Potter Cyn for livestock management onto and off of USFS lands. So need to provide exceptions!! | |
| 539. | 328 | B | D. Dyer | The preferred alternative D has allowable use: close to coal, therefore it should also appear in alternative B. | EMPSi (JW): Change made. |
| 540. | 328 | B | B. Krickbaum | Add: "Allowable Use:  Close to coal leasing" | EMPSi (JW): Change made. |
| 541. | 328 | B & D | Hawke (RACSG) | Add "manage to maintain natural soundscapes" | EMPSi (KW): The term natural soundscapes is not defined. Other management actions would result in what we perceive to be natural soundscapes. In addition, the wilderness characteristic of solitude includes the visitor's opportunity to avoid sounds of other people in the area. As such, managing the area to protect wilderness characteristics would protect soundscapes to that extent. |
| 542. | 328 | B, D | B. Krickbaum | Change "Prohibit wood cutting" to "Closed to wood product sales or harvest" | EMPSi (JW): Change made. |
| 543. | 328 | B, D | A. Schroeder (CA) | Replace "salable mineral" with "mineral materials."<br><br>Rationale: Consistent use of terms (salable minerals vs mineral materials). Mineral materials may be disposed of through various methods, including sale, free use permits, etc.. | EMPSi (JW): Change made. |
| 544. | 328 | D | Tucker | Allow maintenance of existing range improvement facilities<br>**ADD-**  "in a manner consistent with the long-term preservation of wilderness characteristics;"<br><br>Note:  Maintenance should be consistent with protection of wilderness characteristics. | EMPSi (JW): Change made. |
| 545. | 328 | D | Hawke (RACSG) | Change "limit motorized and mechanized travel to designated routes" to "close to motorized use, and close to  mechanized use or at minimum, limit mechanized use to designated routes"<br>**Explanation & Notes:**<br>Wilderness characteristics are being lost as we use and develop our public lands, yet wilderness preserves some of the richest heritage of the natural and human American West. Motorized use impairs wilderness | BLM (BK): BLM considered the change, but decided to leave as it is. Motorized use can impair the solitude and primitive opportunities to a degree, but does not detract from the unit overall.  The Roubideau unit does not have routes.  The Roc creek unit does have a route that a single track or ATV could use.  This will be dealt with again during travel management planning for that area.  The Dry Creek unit has some designated routes now (as a |



**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | character. Any use patterns that may impair wilderness character should be prevented. This decision is clearly provided for in IM2011-154_att2 (see D.5. on page 4) | result of travel management planning). If we determine motorized or mechanized (e.g. single-track) is incompatible with LWWC, then we may need to consider dropping Dry Creek from consideration. |
| 546. | 328 | D | Hawke (RACSG) | Add "prohibit target shooting" | EMPSi (KW): Management has decided not to add. They feel there won't be much, if any, target shooting in the area and target shooting isn't inconsistent with managing these areas. |
| 547. | 328 | D | Hawke (RACSG) | Change "ROW avoidance" to "ROW exclusion" **Explanation & Notes:** This decision would best preserve wilderness characteristics and is clearly provided for in IM2011-154_att2 (see D.3. on page 4) | BLM (BK): Management decided to leave it as avoidance. Any ROW authorizations would have to include measures to maintain the wilderness characteristics. Underground ROW would not detract from values once the project is completed and healed. Above-ground projects, with proper mitigation, would also not impair values. The key, regarding potential projects, is to maintain the wilderness characteristics. |
| 548. | 328 | D | Hawke (RACSG) | Add "Petition the Secretary of the Interior for withdrawal from mineral entry" **Explanation & Notes:** Mining, while important to western Colorado, holds significant potential for impacts to the landscape in a manner that may impair the wilderness character and be infeasible to reverse. This decision would best preserve wilderness characteristics and is clearly provided for in IM2011-154_att2 (see D.1. on page 4) | EMPSi (KW): Although the BLM recognizes that some of these lands are in the uranium belt, it is not policy to withdraw them and the management team has decided to leave the action as-is. |
| 549. | 328 | D | Hawke (RACSG) | Add "Issue no SRPs for competitive events" **Explanation & Notes:** Wilderness character is vulnerable to impacts from intensified human use, and user patterns should be prevented that would not sustain the wilderness character | EMPSi (KW): Management has decided to leave the way it is. Some events may be compatible and any event would have to meet the SRP permit criteria in Appendix J, Special Recreation Permit Evaluation Criteria. |
| 550. | 328 | D | Hawke (RACSG) | Change "Permit new range improvement projects … consistent with the long-term preservation of wilderness characteristics" to "Permit new range improvement projects … consistent with the long-term preservation of wilderness characteristics, and avoiding | EMPSi (KW): Management does not feel allowing short-term impacts to wilderness characteristics in order to maintain characteristics in the long-term is inconstant with IM IM2011-154. |



BLM_0111432

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | short-term diminishment of wilderness characteristics" **Explanation & Notes:** The original language incorporates some worthy approaches, but might leave open the potential for short-term diminishment of wilderness characteristics, and this also needs to be avoided. | |
| 551. | 328 and following | B & D | Hawke (RACSG) | **Explanation & Notes:** As indicated in IM2011-154_att2, "an alternative that protects lands with wilderness characteristics must contain management actions to achieve protection." and then lists sample decisions could protect lands with wilderness characteristics. | EMPSi (KW): See response to individual comments on this section. |
| 552. | 329 | D | Hawke (RACSG) | Change NSO provision to read like NL provision in alternative B **Explanation & Notes:** This decision is provided for in IM2011-154_att2, and would best preserve wilderness character, particulalry by avoiding potential impacts to groundwater | EMPSi (KW): Management believes NSO reasonably protects the wilderness characteristics, as accessing the resource below-ground would not impact the characteristics above ground. NSO would require directional drilling from outside of the area with wilderness characteristics. |
| 553. | 329 | D | C. Sharp (USFWS/CA) | An SSR stipulation really means that the BLM will plan, where practical, to minimize impacts on the identified species, habitat, or resource of interest. Shouldn't this be the minimum requirement for all projects on public lands, particularly in sensitive areas, regardless of how an area is labeled? Without specifying, quantifying, or qualifying your SSR stipulation, we are not convinced that this provides any conservation benefit. For instance, if you applied a specific SSR for Gunnison sage-grouse nesting areas (4-mile buffer) to avoid all surface disturbance, or no more than 1% disturbance, in all suitable nesting habitat within the defined buffer, that would be an effective SSR stipulation. As proposed, the majority of your biological stipulations prescribe an SSR combined with CSU or NSO, which essentially means that some conservation will be attained if fluid mineral activities are involved; but that there are no assurances of conservation/ protection if BLM projects or other non-oil and gas activities are proposed/ implemented. | EMPSi (KW): We considered NGD, but feel an SSR offers adequate protection. We can apply appropriate restrictions at the project stage with an SSR. Projects proposed in these areas would need to protect the identified resource or else the project could be moved or modified. |


BLM_0111433

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | For special areas and sensitive resources, we should err on the side of conservation by beginning with truly protected areas (e.g., by prohibiting surface disturbance and surface occupancy for all activities). Where appropriate, the BLM could then provide exceptions for certain activities that meet specific criteria, subject to Sec. 7 as appropriate. | |
| 554. | 330 | Header | B. Krickbaum | Delete row, unless there is a reason for the header "Resource Uses". | EMPSi (KW): Moved to before Forest and Woodland Products heading. |
| | | | | **Forestry** | |
| 555. | 339 | | Clements | "where consistent with Land Health and vegetation mosaic objectives" after "same as Alternative B" | EMPSi (JW): Change made. |
| 556. | 340 | | Clements | Add ", pristine or ancient" after rare | EMPSi (JW): Changed to, "exemplary, ancient, and rare." |
| 557. | 340 | B | B. Krickbaum | Not all ACEC are closed to wood product sales.  Show the following ACEC: Fairview South ACEC/RNA; Needle Rock ACEC/RNA/ISA; San Miguel River ACEC; Dolores Slickrock Canyon ACEC; Roubideau/Potter/Monitor ACEC | EMPSi (JW): Change made. Also updated the ACEC section. Revised the management action to match the wording in the forestry section. Revised "Close to forest product harvest" **to** "Close to wood product sales and/or harvest". |
| 558. | 340 | B | B. Krickbaum | Add SRMAs: -Dolores River Canyon Zones 1, 2 -Dry Creek Zones 1, 2, 4 -Jumbo Mountain Zone 1 -Kinikin Hills Zones 1, 2 -North Delta Zones 1, 2 -Paradox Valley Zones 1, 2 -Ridgway Trails Zone 1 -Roubideau Zones 1, 2, 3 -San Miguel River Zones 1, 2, 3, 4 -Spring Creek Zones 1, 2, 3 | EMPSi (JW): Change made to forestry section. Also added Roubideau RMZ 4 per Appendix K and discussion with BK (10/5/11). |
| 559. | 340 | B & D | M. Siders | See comment #58 above re "wilderness characteristics protection" | EMPSi (KW): Terminology is correct. |
| 560. | 340 | B and D | B. Krickbaum | In the introduction paragraph, after "harvest" add: "(unless there is an exception shown below)" | EMPSi (JW): Change made. |



Page 121 of 297                    Internal Draft Alternatives for Field Office, Cooperating Agency, and RAC Subgroup Review: June 23, 2011

BLM_0111434

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| 561. | 340 | B and D | B. Krickbaum | Some areas allow personal wood collecting or permitted wood harvest (such as firewood).<br><br>Add the following in parenthesis after ACECs, and SRMAs (Refer to the ACEC [*or SRMA*] for specific restrictions and allowed wood product use or harvest).<br><br>After biological core areas add: (Prohibit commercial sales and harvest only). | EMPSi (KW): Change made. |
| 562. | 340 | B, C, D | B. Krickbaum | Figures need changed.  Figure for alternative:<br>B is 2-76;<br>C is 2-77;<br>D is 2-78. | EMPSi (JW): Change made. |
| 563. | 340 | B, D | B. Krickbaum | Add a bullet for:<br>Ancient woodlands and forest. | EMPSi (JW): Change made. |
| 564. | 340 | C | B. Krickbaum | Add ACEC: Fairview South | EMPSi (JW): Change made to Forestry and ACEC sections. |
| 565. | 340 | D | B. Krickbaum | Not all ACEC are closed to wood product sales.  Show the following ACEC:<br>Fairview South ACEC/RNA;<br>Needle Rock ACEC/RNA/ISA;<br>San Miguel River ACEC;<br>Dolores River Slickrock Canyon ACEC;<br>Roubideau Corridors ACEC | EMPSi (JW): Change made to Forestry and ACEC sections. |
| 566. | 340 | D | B. Krickbaum | Delete Burn Canyon Zone 1 from the list.<br>Add Zones 1, 2, 3, 4 to San Miguel<br><br>Add to the SRMA list:<br>-Dolores River Canyon Zones 1, 2<br>-Dry Creek Zones 1, 2, 4<br>-Roubideau Zones 1, 2, 3, 4 | EMPSi (JW): Change made to Forestry section. Also added Jumbo Mountain RMZ 2 per Appendix K and conversation with BK (10/5/11). |
| 567. | 340 | D | C. Sharp (*USFWS/CA*) | Also close to wood product sales and/or harvest all NSO/ NGD- stipulated areas (e.g., raptor nests). These areas could be excepted, depending on circumstances, on a case-by-case basis (i.e., for habitat improvement not detrimental to target species).<br><br>On a sidenote, we would consider most wood cutting | EMPSi: added bullet for NGD areas (except for private firewood permits). |



BLM_0111435

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

**Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)**

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | activities to be *surface-disturbing*—human-caused disturbance resulting in direct and pronounced alteration, damage, removal, displacement, or mortality of vegetation, soil, or substrates; usually entail motorized or mechanized vehicles or tools; typically can also be described as disruptive activities | |
| 568. | 342 | D | B. Krickbaum | Add "Make byproducts from forest management activities available for biomass utilization or for insect and disease control."<br><br>So the **action will read**:<br>"In appropriate forest cover types, allow biomass production where compatible with vegetation mosaics and other resource uses.<br>Make byproducts from forest management activities available for biomass utilization or for insect and disease control." | EMPSi (JW): Change made. |
| 569. | 342 | D | B. Krickbaum | Add "and utilization" after "production".<br>Will read: "…biomass production and utilization where compatible…" | EMPSi (JW): Change made. |
| 570. | 349 | B, C, D | A. Schroeder *(CA)* | There was no action identified for these alternatives. | EMPSi (JW): Change made. |
| 571. | 349 | B,C,D | B. Krickbaum | Add "No similar action" | EMPSi (JW): Change made. |
| 572. | 353 | | B. Sharrow[2] | We don't want to be required to appraise and sell the woodland product in every instance. For example, the wood quantity may be so small (2 or three trees) that is would not be worth our time to carry this out. | EMPSi (KW): Added the following sentence to the end of the action: The BLM may waive this requirement if the quantity of woodland product is of a small enough quantity to make the requirement unfeasible. |
| | | | | **Livestock Grazing** | |
| 573. | 359 | all | CDOW | The objective for the preferred alternative fails to connect grazing to land health and adjust management accordingly. Currently LHA's are to be conducted every 10 years. Therefore to suggest that long term studies should be conducted **after** determination through the LHA process that the habitat is not meeting standards, is indicating that BLM will not take steps to correct problems they have identified on the land until years, even decades after discovery of such | EMPSi (KW): The long-term studies referred to in the objective does not just include LHAs, but also allotment-specific monitoring. These and other studies allow the BLM to respond to problems when identified.<br>Predetermined and definite steps are part of implementation and not a land use plan decision. |



BLM_0111436

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | problems.  Instead we suggest that a there should be a commitment to the public that if livestock grazing is determined to be having negative effects on habitat, that certain predetermined and definite steps will be taken to rectify the problems. | |
| 574. | 360 | | Clements | As this is written, it sounds like changing available AUMs would require RMP revision, also appears to conflict with Action 372. Suggest wording indicating this number is flexible. | EMPSi (KW): End of action 360 includes language to change AUMs (change grazing preference based on monitoring). The change could be an increase or a decrease in AUMs or a change in livestock class. This does not conflict with Action 372. |
| 575. | 360 | all | CDOW | This AUM value is not a commensurate decrease in stocking rate based on Colorado public health standards in Line 359. The AUM are not tied to the LHA if they were, one would expect more than 2% decrease based on current evaluations of LHA that attribute livestock grazing as the primary cause to not meeting the standards. | BLM (LR 10/5/11): LHA results do not target livestock grazing as the major attribute in most areas not meeting LHS. From the no action alternative there is an actual 5% decrease in AUMs for alternative D. Grazing guidelines to not suggest reducing AUMs off the top without first changing management action to address areas where livestock grazing is contributing to a decline in LHS. |
| 576. | 360 | B,C,D | Burch | In third sentence: "Change grazing preference based on long term (global) monitoring…" Delete the word: "(global)"  because it does not fit with our intent. (Range did not enter this word) | EMPSi (KW): Change made. |
| 577. | 360 | B,C,D | Burch | Following the statement of '…Colorado Public Land Health Standards (BLM 1997) (Appendix E).' Enter this sentence: "Areas available to livestock grazing implies the allotment is open to any class of livestock unless otherwise designated." | EMPSi (KW): Changing grazing preference includes class of livestock. Added "(e.g., AUMs, periods of use, class of livestock)" EMPSi: Update glossary definition of "grazing preference." Per Bruce/BLM: **Grazing Preference**: Grazing preference or preference means the total number of animal unit months on public lands apportioned and attached to base property owned or controlled by a permittee, lessee, or an applicant for a permit or lease. Grazing preference includes active use and use held in suspension. Grazing preference holders have a superior or priority position against others for the purpose of receiving a grazing permit or lease. (43 CFR 4100.0-5). |
| 578. | 360 | D | CDOW | Alternative D is approximately 2.5% decrease from the current acres available for livestock grazing. Grazing is | BLM (LR 10/5/11): LHA indicate 13% was not meeting LHS. However this was not totally due to |


BLM_0111437

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | the most pervasive use across the planning area. In the Analysis of the Current Management Situation (June 2010) 93% of the UFO is open to grazing. Land Health Assessments indicate that 13% was not meeting the standards and 38% was meeting the standards with problems (pg 74-75). Approximately 51% of the UFO that is in poor range health and/or has enough problems to be of concern to BLM staff. Approximately 17% (35/203) of allotments have identified grazing as the direct cause for not meeting the standards (Pg.151). | livestock grazing. Other uses occur on the landscape and these acres also include noxious weed infestations. 51% of the UFO that is stated to be in poor land health is also due to noxious weed infestations, fire rehab failures, historic and not current grazing, recreation, and O&G activities. |
| 579. | 360 | D | C. Sharp (USFWS/CA) | This does not constitute a reasonable range of alternatives. | BLM (LR 10/5/11): The alternatives range from zero to almost 8% reduction in acreage and AUMs. Acreage and AUM decreases should be considered only when other management options have been implemented to correct a problem and have not succeeded in this correction. We cannot arbitrarily make AUM and acreage cuts just to randomly create a range of alternatives. |
| 580. | 361 | B, C, D | B. Krickbaum | Replace the word "areas" (on the third line) with "unalloted land". This action is awkward to read, so maybe should be reworded. Would this work: Make XX acres unavailable for livestock grazing, which includes allotments, portions of allotments, and unalloted land. The purpose includes protection of threatened and endangered species, protection of a classified surface water supply, or avoidance of sensitive resources such as those described in the *Areas of Critical Environmental Concern* section. Refer to Appendix I, Livestock Grazing Allotments. | EMPSi (KW): Change made. |
| 581. | 361 | D | C. Sharp (USFWS/CA) | The USFWS commends this decision, but would like to see the rationale/ details of those decisions (i.e., species benefits). | BLM (BK): The rationale for making portions of allotments unavailable for livestock grazing will be part of the Administrative Record. |
| 582. | 362 | d | CDOW | This area is a riparian desert canyon that is highly | BLM (BK): We have changed Alternative D from |


BLM_0111438

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | sensitive. It is within the WSA. There is no impact or injury to an existing permitee. It is an important area wildlife including wintering elk, deer, and desert bighorn sheep. This area should remain closed to grazing. | making the Camelback pasture available for livestock grazing to trailing only, which would be "limited by time, and managed within the riparian objective". |
| 583. | 363 | B&D | CDOW | The bullets points are important components to monitoring of land health. CDOW understands that grazing leases are reviewed on a 10 year basis and that LHA are evaluated on a 10 year basis. CDOW suggests defining what periodically means. In addition we suggest including at a minimum including a midterm grazing evaluation (at year 5) at a minimum. Otherwise factors that are contributing to a downward trend may be exasperated the longer the monitoring period. | BLM (BK 10/5/11): Permits are reviewed and renewed every 10 years At this point allotments are evaluated on a landscape scale and problems, if any, are addressed through management changes. Periodically means every 10 years or less. Allotments are evaluated through utilization and cover transects several times within a 10 year period and if problems arise management actions are taken to address the problems that are directly attributed to livestock grazing. |
| 584. | 363 | D | C. Sharp (USFWS/CA) | Define "major impact"; would those be insignificant, adverse, or jeopardizing impacts (under ESA regulations)? | EMPSi (KW): This definition and threshold could change depending upon the species, but in the case of listed species, ESA regulations would help determine the impact. |
| 585. | 364 | | M. Siders | For the range of alternatives, shouldn't there be one alternative where AUMs will not increase for domestic livestock use (B?). | EMPSi (KW): Line 364 discusses a change in AUMs, increase or decrease. However line 372 specifically states that additional forage will not be allocated to livestock, so under Alternative B, AUMs can only decrease or stay the same. |
| 586. | 366 | C | M. Siders | Suggested wording: "… place greater emphasis on increasing available forage (AUMs) for domestic livestock…" | EMPSi (KW): Change made. |
| 587. | 368 | D | B. Krickbaum | Delete the second "to provide for increased management options" (beginning on the 5th line). | EMPSi (KW): Change made. |
| 588. | 368 | D | K. Kubik | In line 5 and 6 please delete "...to provide for increased management options..." This is a redundant statement. | EMPSi (KW): Change made. |
| 589. | 372 + line 228 | D + F? (or E?) | Ela (RACSG) | The hold from Sec. Salazar; seems to me to control the areas of "wildlands" which changes responses and comments on the whole of "terrestrial status," "wildlife" and "plants"; to leave open till Washington has spoken further. | EMPSi (KW): This comment appears to refer to a previous version of the alternatives. However the concept of lands with wilderness characteristics is separate from management of plants and wildlife. |
| 590. | 372 | All | B. Krickbaum | Move to row so it is immediately after row 366. | EMPSi (KW): Change made. |



BLM_0111439

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| 591. | 372 | D | M. Siders | Suggested wording: "Through an interdisciplinary process, allocate increases in forage (AUMs) where applicable and feasible to livestock, wildlife, land health, or a combination of these." | EMPSi (KW): Change not made. An increase would be analyzed in an EA, and the EA should be carried out in an interdisciplinary process. |
| 592. | 372 | d | CDOW | We are concerned that this could be in conflict with Item 360, which limits the total AUMs on the UFO. In addition, in many cases increase of AUMs may have negative effects on wildlife resources.<br><br>Allocation of resources may sound fair and equitable on the surface, however, if a certain amount of plant biomass is allocated to wildlife, but wildlife are left with less nutritious plant parts (seconds), then they are not meeting their nutritional requirements even though they were allocated a certain %. On winter ranges in the UFO, studies indicate that mule deer especially, are lacking in nutrition which is contributing population declines. | EMPSi (KW): End of action 360 includes language to change AUMs (change grazing preference based on monitoring). The change could be an increase or a decrease in AUMs or a change in livestock class. This does not conflict with Action 372. |
| 593. | 378 | | Clements | Change "permit" to "do not allow" and insert "except in areas that have been identified and previously approved by the BLM." After "in areas…" | EMPSi (KW): Change made per BK's comment below. Changed to: "Limit livestock trailing use to established roads and trails to the extent possible. Permit trailing livestock to overnight or bed in riparian zones in areas identified by and only with prior approval from the BLM." |
| 594. | 378 | B,C,D | Burch | Add at the beginning of this Action: "Permit domestic livestock trailing with prior approval from the BLM." | EMPSi (KW): Change made to Alternative D per BK's comment below. Also see response above. |
| 595. | 378 | D | B. Krickbaum | Add the word "only" after "and".<br>Will read: "…identified by and only with prior approval…" | EMPSi (KW): Change made. |
| 596. | 378 | D | M. Siders | Add "Prohibit trailing livestock from overnighting or bedding in occupied federally listed plant habitat." | EMPSi (KW): Livestock trailing requires a permit and this stipulation can be added to the permit, if necessary. |
| 597. | 378 | D | CDOW | Alt B should be the preferred. Sensitive areas including fragile desert riparian areas, should be protected to the greatest extent possible.<br><br>Livestock trailing should be confined to established roads and trials to the extent possible. | EMPSi (KW): Management decided to leave as-is. Concerns over other sensitive areas, such as T&E habitat, would be reviewed at the time a permit for trailing is issued, and stipulations to protect the sensitive areas may be added to the permit if necessary. |



BLM_0111440

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| 598. | 378 | D | C. Sharp (USFWS/CA) | In general, we disagree with this practice. However, if the BLM is proposing to do so, we suggest rewording as follows: "<u>Subject to approval from the BLM</u>, permit trailing livestock to overnight or bed in riparian zones in areas identified by the Land Health Assessment team (or ID Team)." | EMPSi (KW): Changed action to, "Limit livestock trailing use to established roads and trails to the extent possible. Permit trailing livestock to overnight or bed in riparian zones in areas identified by and only with prior approval from the BLM." |
| 599. | 378 and 379 | All | B. Krickbaum | Move rows 378 and 379 to follow row 362. | EMPSi (KW): Change made. |
| 600. | 379 | | Clements | Insert "comply with" before "BLM Colorado" | EMPSi (KW): Change made. |
| 601. | 379 | C and D | Stindt | Sentence is not complete – add "comply with" BLM Colorado Standards …. | EMPSi (KW): Change made. |
| 602. | 379 | C,D | B. Krickbaum | Add the word "achieve" between "to" and "BLM". Will read: "…extent needed to achieve BLM …" | EMPSi (KW): Change made per Clements' comment above. |
| 603. | 379 | C/D | K. Kubik | (Inadequate grammar affecting clarity and meaning). In line 1 replace the words "a fire event" with "fire events". In line 3 insert the word "meet" so it will say…."extent needed to <u>meet</u> BLM Colorado Standards".... | EMPSi (KW): Change made for fire events. Other change made per Clements' comment above. |
| 604. | 379 | D | CDOW | CDOW is concerned that without a minimum standard for rest from livestock grazing onto disturbed areas (including habitat treatments) grazing could jeopardize reclamation or restoration efforts. It is widely recognized by natural resource managers that a minimum of three years is the standard to defer grazing. See discussion in Monsen et al. (2004) in Restoring Western Ranges and Wildlands, Particularly instructive are Tables 1 and 2 on page 195, which provide recommendations for minimum years rest from grazing following re-vegetation for different vegetative types and landuse. | EMPSi (KW): Management decided not to assign years as it could be that certain treatments wouldn't require 3-years rest. Rest would be determined based on conditions; could be more or less. |
| 605. | 379 | D | C. Sharp (USFWS/CA) | Rest period should be based on site potential and recovery. We would begin with the minimum rest period of 3 years, then adjust from there, either relaxing or extending the restriction, based on site conditions/ recovery. | EMPSi (KW): Management decided not to assign years as it could be that certain treatments wouldn't require 3-years rest. Rest would be determined based on conditions; could be more or less. |
| 606. | 380 | All | B. Krickbaum | Move row to after 366 (and after the old 372). | EMPSi (KW): Change made. |
| NEW | 383 - | | B. Krickbaum | Replace rows 383 – 386 with rows in the section after | EMPSi (JW): Change made. |



Internal Draft Alternatives for Field Office, Cooperating Agency, and RAC Subgroup Review: June 23, 2011

BLM_0111441

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | 386 | | Lynae | this table. *EMPSi: Rows are in file saved on Egnyte here: Z:\Shared\Projects\F-0126 UFO RMP\2_Deliverables\17_P3T7_Alternatives(Ch2)\3.7.E_Rvs dDraftCh2_SO-Review\CommentResponse\FromBLM (File Name: Ch2_draft_UFO-Comments_091911_Miscellaneous.docx)* | |
| 607. | 384 Figure 2-12 | B and D | Stindt | The intent of the action in the Livestock Grazing matrix was to identify allotments with occupied and suitable wild sheep habitat and close them to domestic sheep grazing. Figure 2-12 identifies "wild sheep summer range" (I am unsure of how occupied and suitable habitat relates to summer range) AND adds a 5 mile buffer to depict allotments closed to domestic sheep grazing. This is not consistent with the intent of the action. I propose modifying Figure 2-12 to eliminate the 5 mile buffer from mapped summer range. This will significantly reduce the number of allotments closed to domestic sheep grazing.<br><br>Also – it does not seem to be consistent w/ alternative themes to have fewer allotments closed to sheep grazing in Alt. B than in Alt. D | EMPSi (JW): Row replaced with new text from BLM (9/22/11). |
| 608. | 384 | B, C, & D | David Sinton | Please specify **Desert Bighorn Sheep** or **Desert and Rocky Mountain Bighorn Sheep** | EMPSi (KW): The action will be for both; will specify. BLM (BK) to Kate/Jen: Regarding the sheep action I sent on the comments called "Ch2_draft_UFO-Comments_091911_Miscellaneous", **please insert** "Desert and Rocky Mountain" before Bighorn Sheep. EMPSi (JW): Change made. Added "desert and Rocky Mountain" in front of every instance of bighorn sheep. |
| 609. | 384 | C,D | Burch | In the bullet statement: "Prohibit changing cattle allotments to sheep allotments in occupied and suitable bighorn habitat…" Delete the words "and suitable". | BLM (BK): Action has been revised. |
| 610. | 384 | D | B. Krickbaum | 2nd bullet, change to: "Prohibit trailing domestic sheep and goats or changing | BLM (BK): Action has been revised. |



BLM_0111442

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | cattle allotments to sheep/goat allotments in occupied and suitable bighorn habitat;"<br><br>Note:  The first bullet (I don't know what it means) and maybe the entire action will change.  Lynae and Missy (with GIS help) are working on a redo of the action.   Stay tuned. | |
| 611. | 384 | D | M. Siders | Manage domestic sheep grazing to adhere to Western Association of Fish and Wildlife Agencies' Recommendations for Domestic Sheep and Goat Management In Wild Sheep Habitat and the Interagency Memorandum of Understanding for Wild Sheep Management;<br><br>Exclude domestic goat, but permit domestic sheep grazing or trailing in suitable and occupied bighorn sheep habitat on a case-by-case basis following a risk assessment to determine height of risk (See attached at bottom; Put in Appendix).<br><br>Manage domestic sheep with the following restrictions: Low Risk Allotments:<br>• Prohibit the changing of cattle use to sheep use in occupied and suitable bighorn sheep habitat.<br>• No domestic rams will be permitted in occupied and suitable habitat.<br>• All ewes must be bred before turn out onto BLM.<br>• Mandatory use of at least 2 guard dogs per band to deter co-mingling.<br>• Only healthy domestic sheep may be turned out onto BLM.<br>• No lambing or domestic sheep will occur on BLM.<br>• Sweep allotments within 24 hours of moving off to capture any strays.<br>• Use marker sheep within bands at least 1 per 100 head.<br>• Remove sick, physically disabled or dead domestic | BLM (BK): Action has been changed, and appendix added to address comment. |



BLM_0111443

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**
## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | sheep from the band or BLM lands within 24 hours of discovery.<br>• Use only highly gregarious breeds of domestic sheep.<br>• No yearling ewes during the breeding season (Sept-March).<br>• Maintain a band size of no greater than 1500 head.<br><br>Medium Risk Allotments (all items in Low risk, plus):<br>• Buffer may be required depending on available topographic/natural barriers<br>• Maintain a band size of under 1200 head<br>• Mandatory use of at least 3 guard dogs per band to deter co-mingling<br>• During spring use, limit band size to 900 ewes with lambs<br>• Require a Counting Report with the Actual Use Report to report number of sheep at least every 2 weeks.<br>• Require submission of Dead Report with Actual Use Report<br><br>High Risk Allotments (all items in Low risk, plus):<br>• Maintain a buffer of 2-5 miles from bighorn occupied habitat (depending on available topographic/natural barriers)<br>• Consider swap allotments with cattle<br>• Maintain a band size under 900 head<br>• If domestic sheep enter bugger zone, they must be retrieved within 24 hours<br>• Mandatory use of at least 3 guard dogs per band to deter co-mingling<br>• During spring use, limit band size to 700 ewes with lambs<br>• Require a Counting Report with the Actual Use Report to report number of sheep at least once a week.<br>• Require submission of Dead Report with Actual Use | |


BLM_0111444

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | Report Note:  Joe is writing up the methodology for the Risk Assessment. | |
| 612. | 384 | D | K. Kubik | In the second bullet statement please delete "…and suitable…"  This statement conflicts with the action below (# 385 Alt B) which restricts sheep/goat grazing in only "occupied" bighorn sheep habitat. | BLM (BK): Action has been revised. |
| 613. | 385 | | Clements | Mostly redundant with #384 these 2 need to be merged | BLM (BK): Action has been revised. |
| 614. | 385 | All | B. Krickbaum | Delete – covered by row 384.  (We need to make sure the new action(s) for row 384 still include this). | BLM (BK): Action has been revised. |
| 615. | 385 | D | M. Siders | "No similar action; addressed in previous action." | BLM (BK): Action has been revised. |
| 616. | 386 | B & D | M. Siders | Redundant with line 154 in Wildlife.  Delete line 386 and keep wording in line 154 for Alt D (i.e. "In suitable, historic wild sheep habitat not currently stocked with domestic sheep and goats, pursue options for restoring wild sheep populations.")  Use wording in line 386 for Alt B (i.e. "In suitable and historic wild sheep habitat not currently stocked with domestic sheep and goats, restore wild sheep populations in response to partner requests or proposals.") | BLM (BK): Row deleted.<br><br>BLM (BK) to Kate/Jen: regarding the sheep rows I sent with comments ("Ch2_draft_UFO-Comments_091911_Miscellaneous"), please delete the last row.  It is redundant with wildlife, and I like the row we wrote in Wildlife much better.<br><br>EMPSi (JW): Change made. |
| 617. | 386 | B,D | Burch | Within the sentence … "with domestic sheep and goats, restore wild sheep…"  Suggest: remove the word "restore" and re-word the message to "allow restoration where compatible with other resources".<br>Because the word <u>restore</u> as used, here, says BLM is actively/physically going to do this; when in reality – BLM would allow another agency to actively/physically do the action. | EMPSi (KW): No change. Restore means to allow restoration and only if it's compatible with the rest of the RMP. This action is moved to wildlife section. |
| | | | | **Recreation and Visitor Services** | |
| 618. | 392 | D | L. Armstrong[i] | Add back "at a single location".  (B. Krickbaum's comments you delete this.) | EMPSi (KW): Kept "at a single location." |
| 619. | 392 | 04 | W. Blackburn (RACSG) | <u>Change the numbers</u> more than 24 people in all other areas gathering at a single location for more than 2 hours to read….30 people & 8 hours<u>. **(This is important to the OHV community because we**</u> | EMPSi (KW): Action has been updated to 16 people. |



BLM_0111445

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | would have to have a permit every time we have a club ride or outing. Generally the club rides are no longer than 5-6 hours.) | |
| 620. | 392 | B-D | Tucker | Suggested text change:  Unless otherwise restricted or allowed ...... | EMPSi (KW): Change made. |
| 621. | 392 | D | B. Krickbaum | Delete "at a single location" | EMPSi (KW): No change per comment from L. Armstrong. |
| 622. | 392 | D | J. Jackson | Change "12 people" to "16 people" to stay consistent with Dolores River WSA and change 24 people to 25 people to stay consistent with evaluating factors<br><br>Add or change bold writing "**16 people in a WSA/Wilderness/Tabeguache Area** or more...."<br><br>Delete wording "at a single location"  and add or change bold writing so reads "...**25** people in all other areas gathering for more than 2 hours contact the BLM **6 months** prior to their **trip** to determine....." | EMPSi (KW): Change made (except for removing "at a single location"). Action now reads: Unless otherwise restricted or allowed through other RMP actions, require that organized groups of more than 16 people in a WSA, Wilderness, or Tabeguache Area or more than 25 people in all other areas gathering at a single location for more than 2 hours contact the BLM 6 months prior to their event to determine if a SRP is required. Refer to Appendix J, Special Recreation Permit Evaluation Criteria. Additional restrictions for SRMAs are: Dolores River: no more than 16 people, including guides. |
| 623. | 393 | | Clements | Shouldn't wilderness or areas (Tabeguache) also be included under 12 people limie? | EMPSi (KW): Change made. |
| 624. | 394 | | Clements | General question it looks strange to have big game and mountain lion outfitting permits identified specifically and not address other types of SRPs at same level of detail eg mtn bike tours, motorcycle events, etc | EMPSi (KW): Other SRPs for organized events are covered on line 392 and there's also an appendix (Appendix J). Lines 393 and 394 are for SRPs for outfitters and guides. |
| 625. | 396 | All | Hawke (RACSG) | The inclusion of the BLM CO Public Land Health Standards in the objective is an important measure in balancing uses with land "carrying capacity" and sustainability of natural resources and ecological systems, so that inclusion is commended.<br>**Explanation & Notes:** | EMPSi (KW): Thank you for your comment. |
| 626. | 396 | B, C, and D | J. Jackson | Replace Objective with:<br>Resource-protection. Increase awareness, understanding, and a sense of stewardship in recreational activity participants so their conduct safeguards cultural and natural resources as defined by Colorado Standards for Public Land Health and area-specific (e.g., ACEC, Wild and Scenic Rivers) | EMPSi (KW): Change made. |



**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | objectives.<br><br>Visitor Health and Safety. Ensure that visitors are not exposed to unhealthy or unsafe human-created conditions (defined by a repeat incident in the same year, of the same type, in the same location, due to the same cause).<br><br>Use/User Conflict. Achieve a minimum level of conflict between recreation participants to: 1) allow other resources/programs to achieve their RMP objectives; 2) curb illegal trespass and property damage; and 3) maintain a diversity of recreation activity participation.<br><br>Community Growth Area. Increase collaboration with community partners to maintain appropriate activity-based recreation opportunities in community growth areas (BLM lands adjacent to, between, and surrounding communities; also referred to as wildland urban interface areas). | |
| 627. | 397 | D | B. Sharrow[2] | Delete the bullet "300 feet from riparian areas" | EMPSi (KW): Change made. |
| 628. | 397 | | Clements | Suggest we delete 300' buffer from riparian areas-this was not identified as an action in the riparian section | EMPSi (JW): Change made. |
| 629. | 397 | 04 | W. Blackburn (RACSG) | Change to read…Same as Alternative B | EMPSi (KW): Management has determined that this list is adequate and manageable. |
| 630. | 397 | All | Hawke (RACSG) | Add "Where dispersed camping is allowed, manage motorized access to prevent motorized travel (cross-country or creating new routes) to dispersed sites. Provide a well-planned system of camping sites, spurs and parking areas that minimize negative impacts to land health and natural systems toward which to guide camping use." | EMPSi (KW): See Comprehensive Trails and Travel Management, old Row 438, Alternative D, bullet reads, "Unless otherwise restricted…" this limits travel to immediately adjacent to the road. The remainder of comment is implementation and will be considered during travel management planning. |
| 631. | 397 | B | B. Krickbaum | Add to list:<br>Dolores Slickrock ACEC<br>East Paradox ACEC<br>La Sal Creek ACEC<br>Paradox Rock Art ACEC<br>West Paradox ACEC | EMPSi (JW): Change made. |



BLM_0111447

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| 632. | 397 | B | J. Jackson | Replace "Zone 4 of Spring Creek SRMA" with "Zones 2 and 3 of Spring Creek SRMA"; there is not a Zone 4 in Spring Creek SRMA And add "Zone 3 of Kinikin SRMA" | EMPSi (JW): Change made (also made to Appendix K). Update to Kinikin Hills SRMA and ERMA globally. |
| 633. | 397 | D | B. Krickbaum | Add to list: Delete "Complex" – should be "Paradox Rock Art ACEC" | EMPSi (JW): Change made. |
| 634. | 397 | D | B. Krickbaum | In response to your question, use 300 feet. | EMPSi (JW): After discussion with District Office, reference to 300-feet was deleted. |
| 635. | 397 | D | Tucker | Response to EMSI note- I'd suggest using the COSO state stipulation 325 ft to be consistent statewide. | EMPSi (JW): After discussion with District Office, reference to 300-feet was deleted. |
| 636. | 397 | D | Durnan (RACSG) | Reference page where a map for Dry Creek SRMA zones can be found | EMPSi (KW): Added reference to SRMA figures on old row 423. |
| 637. | 397 | D | J. Jackson | Delete Burn Canyon SRMA (it is an ERMA in D and to my knowledge is not closed to dispersed camping)<br><br>Delete Southeast portion of Zone 4 of Spring Creek SRMA - there is not a Zone 4 in Spring Creek SRMA<br><br>Delete the word Complex for Paradox Rock Art ACEC bullet<br><br>Add the following:<br>• Zone 3 of Spring Creek SRMA<br>• Zone 4 of Roubideau SRMA<br>• Ridgway ERMA<br>• San Miguel ACEC<br>• And any additional ACECs that BK commented on | EMPSi (JW): Made the following changes:<br>• Deleted Burn Canyon SRMA<br>• Deleted SE portion of Zone 4<br>• Deleted "complex"<br>• Added Spring Creek RMZ 3<br>• Added Roubideau RMZ 4<br>• Added Ridgway Trails SRMA to line 398 (day-use areas)<br>• Added San Miguel ACEC<br>• Did not add "any additional ACECs that BK commented on" (no comments from BK) |
| 638. | 398 | | Clements | Not sure we would want to close all of Adobe Badlands ACEC to overnight use since it is also a WSA and forms a connection nearly all the way up to USFS | BLM (BK): Per field manager, leave the ACEC closed to camping. Allowing camping would be disturbing to the saline soil. Camping is a disturbing activity. |
| 639. | 398 | B | J. Jackson | Replace Kinikin Hills bullet with "Kinikin Hills Zones 1 and 2"<br><br>Add a bullet stating: "All developed recreation sites along San Miguel River" | EMPSi (JW): Change made. |



BLM_0111448

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | *BLM: Appendix K for San Miguel River SRMA, Alt B, says all rec sites are day-use sites except for Lower Beaver and Caddis Flats. Should those two be day-use only also?*<br><br>*BLM Response (10/5/11): Row 398, Alt B, bullet should read "All developed recreation sites along the San Miguel River with the exception of Lower Beaver and Caddis Flats"* | |
| 640. | 398 | D | J. Jackson | Add a bullet stating:<br>• "San Miguel Recreation Sites: Beaver, Deep Creek, Placerville, and Specie Creek" | EMPSi (JW): Change made. |
| 641. | 399 2-178 | C | Jackson and Sharrow | Delete "Tabeguache Area" | EMPSi (KW): Change made. |
| 642. | 399 | C (and D) | B. Sharrow[2] | Delete "Tabeguache Area" | EMPSi (KW): Change made. |
| 643. | 399 2-178 | D | Jackson and Sharrow | Add following bullet:<br>Across designated (and existing until designated) roads and trails | EMPSi (KW): Change made. |
| 644. | 399 | 04 | W. Blackburn (RACSG) | Change to read…Same as Alternative C. | BLM (BK): No change.  The SRMAs are areas that have a lot of recreation use.  The North Delta OHV area also has a lot of recreation use.  Closing to target shooting will improve safety.   Also, Ridgway Trails has been changed to an SRMA (from an ERMA), and will be closed to target shooting. Note: "Tabeguache Area" has been removed from C, and thus D.<br>BLM (BK) to Kate/Jen, please add Ridgway Trails to the SRMA list in this action. Also, per Sharrow comment, delete Tabeguache Area from C (and D). EMPSi (JW): Change made. |
| 645. | 399 | D | Durnan (RACSG) | Include Ridgway Trails area in list closed to target shooting. Between the sand pit operation and visitor use by people and dogs there is no safe place for target shooting.  Also include across designated routes in this alternative. | BLM (BK): Ridgway trails area is now an SRMA.  We will close the SRMA to target shooting. Also, Alternative D now has a restriction for: "Toward or in the direction of any road or designated route. |
| 646. | 399 | D | J. Jackson | "Within 0.25 mile of communication sites" is not shown on map (Figure 2-82)<br><br>Add Ridgway ERMA (including the Uncompahgre | EMPSi (KW): Added Ridgway Trails SRMA (not ERMA). |



BLM_0111449

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | Riverway Site) | |
| 647. | 400 2-179 | D | Jackson and Sharrow | Need to check with Missy on this but Barb wants it either deleted or only state that - want to protect warm water sensitive and T&E species with a different. | BLM (BK): Changed to "native fish" only. The dates remain the same. |
| 648. | 400 | D | Hawke (RACSG) | Add ACECs, LWCs, WSAs, and some SRMAs | EMPSi (KW): BLM looked at each area individually and the only one that BLM felt warranted this specific protection was San Miguel River ACEC. |
| 649. | 402 | B, C, and D | Hawke (RACSG) | Add to the text something to the effect of "Implement additional active management actions when necessary to prevent degradation of land health, or in response to increased intensity of recreational use or user conflicts." **Explanation & Notes:** Recreation use patterns, recreational equipment technology, and the resilience of natural systems may change significantly over the life of the plan. The FO needs flexibility to more actively manage recreation outside SRMAs and ERMAs when necessary to maintain land health and continue to achieve other land management goals of the RMP. | EMPSi (KW): This action is for BLM lands not designated as SRMAs or EMRAs where the emphasis is not on recreation. This is covered by other actions including Land Health and vegetation management. |
| 650. | 403 and following | All | Hawke (RACSG) | In general, see comments on SRMAs. Where sensitive natural resources or undisturbed natural settings exist, the most reliable and effective recreation category and management framework should be used to protect those resources while providing high quality recreation opportunities. If an SRMA is not used in such circumstances, an ERMA with strong management prescriptions should be used. | BLM (BK): Field Office and District management has reviewed the SRMAs and ERMAs again. Ridgway Trails was changed from an ERMA to an SRMA. The other ERMAs remain as ERMAs. Management controls are in place that will protect the recreational activity, but not necessarily the setting. The ERMAs have been added to Appendix K, so all management for an ERMA will be in one place. |
| 651. | 405 to 417 | all | L. Armstrong[i] | Replace rows 405 through 417 with the row after this table (**item B**). | EMPSi (KW): Change made. Removed Ridgway Trails from ERMA in Alt D. |
| 652. | 405 | A | B. Krickbaum | Delete first two bullets. Adobe Badlands and North Delta OHV are not identified as ERMAs. UFO has a single ERMA: Uncompahgre. The acres for Uncompahgre need to be verified. | EMPSi (JW): Change made. |
| 653. | 405 | A | J. Jackson | All the acres should be shown under the Uncompahgre ERMA since everything was and ERMA that wasn't an SRMA or we show the acres for each one listed since | EMPSi (JW): Change made. |



BLM_0111450

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | they are all ERMA's and the remaining acres under the Uncompahgre ERMA (not sure which way is less confusing for the public) - The Adobe Badlands ACEC/ONA and North Delta OHV are not specifically mentioned as a stand-alone decision for ERMAs. | |
| 654. | 405 | C and D | J. Jackson | Ridgway Trails acres need to include the Uncompahgre Riverway Site along the Uncompahgre River and add to map (Figure 2-16) | EMPSi (KW): Change made. |
| 655. | 406 | A | B. Krickbaum | Delete action and enter "No similar action" | EMPSi (JW): After discussion with District Office, the row has been deleted and replaced with new text. |
| 656. | 406 | A | J. Jackson | Change to "No Similar Action" | EMPSi (JW): After discussion with District Office, the row has been deleted and replaced with new text. |
| 657. | 409 | | Ela (RACSG) | I'm not competent to comment on grazing and specificity on stream bank water quality in grazing permits. | EMPSi (JW): Thank you for your comment. |
| 658. | 411 2-183 | D | Jackson and Sharrow | Barb would like to see any actions that deal with other parts of the matrix (i.e. VRM designations) be placed in the right matrix and not in other parts.<br><br>Delete "Limit motorized and mechanized travel to designated routes and Manage as VRM Class III" and make sure they are correct in the Travel and VRM sections. | BLM (BK): Regarding the first comment, we left actions as they are. Many times it is OK to have something show up twice. For instance, a list under VRM II for "one-stop shopping" for all VRM II areas. But, if someone wants to know how to manage a particular ACEC, that person would want to find the management in one place, not scatterd in many sections such as VRM, NSO, etc.<br><br>Regarding the second paragraph, these items were left in (for now) because it tells how we will manage the ERMA.  We will reconsider in light of including ERMAs in Appendix K. |
| 659. | 411 | C & D | M. Siders | Should read "Manage the Kinikin area as an ERMA to protect and provide for …" | EMPSi (JW): After discussion with District Office, the row has been deleted and replaced with new text. |
| 660. | 411 | C&D | Holsinger | Should read "Manage the Kinikin area as an ERMA to provide and protect a diversity of dispersed multiple use recreational travel opportunities."  I think? | EMPSi (JW): After discussion with District Office, the row has been deleted and replaced with new text. |
| 661. | 411 | C,D | B. Krickbaum | Delete the first "to provide".<br>Will read "…ERMA to protect and provide for a …" | EMPSi (JW): After discussion with District Office, the row has been deleted and replaced with new |



BLM_0111451

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | | text. |
| 662. | 411 & 412 | D | M. Siders | Could we include the following: "Designated routes will be designed to avoid Federally listed plant occurrences." SSR-23 SSR-24 (North Delta & Kinikin ERMAs) | EMPSi (KW): This is part of NEPA at the travel management phase. It will also come up during consultation. No change. |
| 663. | 412 2-183 | D | Jackson and Sharrow | Barb would like to see any actions that deal with other parts of the matrix (i.e. VRM designations) be placed in the right matrix and not in other parts.

Delete "Limit motorized and mechanized travel to designated routes and Manage as VRM Class IV" and make sure they are correct in the Travel and VRM sections. | BLM (BK): We left actions as they are. Many times it is OK to have something show up twice. For instance, a list under VRM II for "one-stop shopping" for all VRM II areas.  But, if someone wants to know how to manage a particular ACEC, that person would want to find the management in one place, not scattered in many sections such as VRM, NSO, etc. |
| 664. | 412 | 04 | W. Blackburn (RACSG) | Delete bullet point.."Limit motorized and mechanized travel to designated routes. Add…Designate 5,260 acres (Open OHV area) as open to cross country motorized and nonmotorized use to vehicles with tire width 50 inches or less weighing no more than1200 Lbs. | EMPSi (KW): Management team has determined that this area should be limited to designated routes due to resource concerns including T&E plants and saline soils. All of the existing routes will be designated pending future travel management planning in the area. |
| 665. | 412 | A | B. Krickbaum | Since North Delta is not an ERMA, I think we should do the following:

Delete action and move bullets to row 434.

Replace action with "No similar action.  Refer to Comprehensive Trails and travel management" | EMPSi (JW): After discussion with District Office, the row has been deleted and replaced with new text. |
| 666. | 412 | A | J. Jackson | Change to "No Similar Action" | EMPSi (JW): After discussion with District Office, the row has been deleted and replaced with new text. |
| 667. | 412 | D | C. Sharp (USFWS/CA) | As discussed, this action would require a rigorous assessment (field surveys, clearances, and possible route closures) and consultation under Sec.7 of the ESA to avoid/ minimize impacts on Colorado hookless cactus. | EMPSi (KW): Until travel management planning for the area, all existing routes will be designated. Rigorous assessment (route-by-route designation) will occur during travel management planning. |
| 668. | 413 | D | J. Jackson | Change to same as Alternative C which states: "Manage the Paradox Valley as an ERMA to protect and provide a network of designated recreational travel routes and rock climbing and bouldering activities." | EMPSi (JW): After discussion with District Office, the row has been deleted and replaced with new text. |



Internal Draft Alternatives for Field Office, Cooperating Agency, and RAC Subgroup Review: June 23, 2011

BLM_0111452

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| 669. | 415 | C,d | Durnan (RACSG) | Include: Investments iinclude facilities, interpretation, environmental education, enhanced visitor services, and resource protection (more in line with goals of an SRMA objective A in line 423) | BLM (BK 10/5/11): It is assumed that this comment references line 414 regarding Ridgway Trails. We changed the Ridgway ERMA to an SRMA and the actions have been changed which will address concerns. |
| 670. | 418 2-185 | C and D | Jackson and Sharrow | Reword to "In ERMAs, protect the identified recreational activity(ies)." | BLM (BK): Changed this row to: "Protect the identified recreational activity(ies) being managed for in the ERMA, while allowing for activities (including fire) that would benefit the biological values." |
| 671. | 418 | C, D | CDOW | Although, not put forward as the preferred alternative, CDOW is concerned that this doesn't leave any flexibility for biological resources that could be impacted by recreation.  Ridgeway trails, Paradox, Kinikin and Burn Canyon are extremely important winter range for deer and elk. For example, recreational activities during winter months can have adverse effects on wildlife populations; We suggest modifying the language to include some provisions for wildlife. | BLM (BK): Line changed to: "Protect the identified recreational activity(ies) being managed for in the ERMA, while allowing for activities (including fire) that would benefit the biological values." |
| 672. | 418 | C and D | J. Jackson | Add wording:  "Prohibit **or mitigate** any action…." | EMPSi (KW): In response to DOW comment, this line has been deleted. Action is very broad. |
| 673. | 419 2-185 | A, B, C, D | Jackson and Sharrow | Delete the row | EMPSi (KW): Change made. |
| 674. | 421/576 | Preferred | T. Stranathan | CSUs in ERMAs for Oil and Gas.  All OG activities are already subject to federal requirements that they not jeopardize public health or safety.  There does not appear to be major conflicts between O&G and ERMA on a level which would require additional restrictions on OG development.  Especially since NSOs, COAs, TL and LN for other resources in this RMP effectively rule out nearly every overlap OG development might have with other disciplines except for grazing, lands/realty and mining. The WSR and Recreation Designation seem to also overlap with an NSO or CSU where these designations are within ERMAs and SRMAs.  It would be nice that when an OG lease is issued, we are not saying the | BLM (BK): No change. This was discussed with Field Office and District management.   A CSU is not overly restrictive. |



BLM_0111453

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | same thing using 4 similar but slightly different lease stipulations, We should try to achieve the same result with fewer. | |
| 675. | 423 | A, B, C, and D | J. Jackson | Move current language in Objective cells to an Action below and place the following language in for an objective: "Manage administratively designated areas for their existing or proposed recreational opportunities and unique value, importance and/or distinctiveness recreation setting characteristics which provide for targeted recreation for personal, community, environmental, and economic benefits." | EMPSi (KW): Change made. |
| 676. | 423 | all | B. Krickbaum | Need to make this an action. Julie will provide an objective that is consistent with the type of objective in ERMA. | EMPSi (KW): Change made. |
| 677. | 423 | D | Joan May (CA) | Include Burn Canyon in alt D | BLM (BK 10/5/11): No Change; management felt an ERMA is more appropriate than an SRMA. Due to multiple use activities, it was felt that BLM could not manage for the setting required by an SRMA. |
| 678. | 423 | D | Durnan (RACSG) | Could the Ridgway Trails Area be considered for SRMA with the exclusion of the San Pit Ache rage? | EMPSi (KW): Ridgway Trails has been added to Alternative D, excluding the gravel pit. |
| 679. | 423 | D | Hawke (RACSG) | Add "Paradox Valley"<br>**Explanation & Notes:**<br>The Paradox Valley region has multiple significant values that are rare, unique, or of exceptional quality; and that consequently need careful and attentive management. The juxtaposition of exceptional ecological, scenic, recreational , geologic, and cultural values in this area both provides an uncommon opportunity to feature these values for potential users, and a strong need for careful management to preserve sensitive resources. UFO needs to adopt the combination of recreation category, special designations (like ACECs) and management frameworks that will preserve rare and sensitive values in the area,while providing for a broad spectrum of recreational, tourism, and educational uses. An SRMA appears to be the recreation category that will provide | BLM (BK 10/5/11): Management reviewed Paradox Valley and determined that it is not feasible to manage it as a SRMA. The area is large and the SRMA would prohibit much of the multiple use activity BLM is mandated to manage for. |



BLM_0111454

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | for this level of detailed planning and management prescriptions allocated by zone. | |
| 680. | 423 | D | Hawke (RACSG) | Add "Burn Canyon" **Explanation & Notes:** This area hosts mulitple values for quiet and other recreation, while providing very important habitat for mule deer and elk. Carefully managing recreation in the area could allow sustainable use of the area while supporting wildlife. The area is important for management attention as it is seeing increasing use. | BLM (BK 10/5/11): No Change; management felt that an ERMA is more appropriate than an SRMA. Due to multiple use activities, it was felt that BLM could not manage for the setting required by an SRMA. |
| 681. | 424 | | Clements | These SRMAs overlap with proposed ACECs, core areas, etc. will this action prohibit activities that would benefit the biological values—eg a fire for resource benefit? Suggest rewording to provide for flexibility. Why not handle as an SSR for the SRMAs? | BLM (BK) to Kate/Jen: change the action to: "Protect the setting, benefits, experiences, and opportunities being managed for in the SRMA, while allowing for activities (including fire) that would benefit the biological values." EMPSi (JW): Change made. BLM (BK) to Kate/Jen:  don't pair the NSO on line 427 with an SSR (not an NGD, either) – good the way it is. |
| 682. | 424 | B and D | J. Jackson | Add wording "Prohibit **or mitigate** any action…" | EMPSi (JW): Change made.  Now reads, "Protect the setting, benefits, experiences, and opportunities being managed for in the SRMA, while allowing for activities (including fire) that would benefit the biological values." |
| 683. | 424 | B,d | CDOW | CDOW is concerned that this language may not allow for seasonal closures for wildlife resources or allow for temporary closure of an area for habitat improvement projects. CDOW recommends that some exception criteria be developed to address wildlife concerns. | EMPSi (JW): Change made.  Now reads, "Protect the setting, benefits, experiences, and opportunities being managed for in the SRMA, while allowing for activities (including fire) that would benefit the biological values." |
| 684. | 425 | B | B. Krickbaum | Delete the word "for". | EMPSi (JW): Change made. |
| 685. | 426 | D | Durnan (RACSG) | Protect the SRMA's with maximum protection as listed in Alternative B by making Alternative D "same as B" | EMPSi (KW): It was determined that NSO would protect the resources on the ground by requiring directional drilling from outside of the area. |
| 686. | 426 | D | Hawke (RACSG) | Change to read like Alt B **Explanation & Notes:** The Recreation Planning guidance, IM2011-004, clearly | EMPSi (KW): It was determined that NSO would protect the resources on the ground by requiring directional drilling from outside of the area. |



BLM_0111455

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | contemplates restriction of mineral activities in SRMAs, in order to achieve Recreation goals (see ii on page 2 of attachment 1). To maintain a quality recreation user experience, and to preserve the natural setting upon which the experience depends, stronger limitations on fluid mineral leasing and geophysical exploration are necessary. Such restrictions can be accomplished within special designation areas within the UFO, while still allowing for mineral exploration and development in other areas. Finally, recreation values are becoming increasingly important in areas such as the UFO, contributing substantially to both quality of life and economies across the western slope. | |
| 687. | 427 | D | Durnan (RACSG) | Include the Ridgway Trails Area exclusive of the existign Sand Pit acherage in the Alternative D listing. Surface occupancy on the RTA would be a large negative impact on this area so close to the town of Ridgway and the Ridgway state Park. Visual Impact, traffic and increased traffic would cause a loss of recreational quality as well as increase danger to users of this area. | EMPSi (KW): Ridgway Trails has been added to Alternative D, excluding the gravel pit. |
| 688. | 427 | D | Hawke (RACSG) | Change to read like Alt B **Explanation & Notes:** The Recreation Planning guidance, IM2011-004, clearly contemplates restriction of mineral activities in SRMAs, in order to achieve Recreation goals (see ii on page 2 of attachment 1). To maintain a quality recreation user experience, and to preserve the natural setting upon which the experience depends, stronger limitations on fluid mineral leasing and geophysical exploration are necessary. Such restrictions can be accomplished within special designation areas within the UFO, while still allowing for mineral exploration and development in other areas. Finally, recreation values are becoming increasingly important in areas such as the UFO, contributing substantially to both quality of life and economies across the western slope. | EMPSi (KW): Alternative D is similar to Alternative B. Not all areas are SRMAs under Alternative D which is why the list is slightly smaller. It was also determined that not all areas required NSO. If this comment references line 426, It was determined that NSO would protect the resources on the ground by requiring directional drilling from outside of the area. |
| 689. | 427,429, | D | Burch | Reference is made to "Zones" without description or | EMPSi (KW): These reference recreation |



BLM_0111456

**BLM – U**NCOMPAHGRE **F**IELD **O**FFICE, **C**OLORADO
**R**ESOURCE **M**ANAGEMENT **P**LAN **R**EVISION AND **E**NVIRONMENTAL **I**MPACT **S**TATEMENT

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | 435, 436 | | | location. Are they the same as Wild and Scenic River zones? Or, the special vegetation zones? | management zones (RMZs) in each SRMA. There will be maps in Appendix K of these zones. |
| | | | | **Comprehensive Trails and Travel Management** | |
| 690. | 433 2-189 | B, C, D | Jackson and Sharrow | Delete "Limited yearlong to existing routes for motorized use: 0 acres" | EMPSi (KW): Change made. |
| 691. | 433 | | W. Blackburn *(RACSG)* | Eliminate 4th Bullet Point.."Limited yearlong to existing routes for motorized use: 0 acres. **(This does not make sense to me ????)** | EMPSi (KW): Bullet has been removed. |
| 692. | 433 | A, B, C, and D | J. Jackson | Add in acres for seasonal closures | EMPSi (KW): Acres will be added. |
| 693. | 433 | A,B,C,D | Burch | In reference to Appendix A – Figures 2 –17 to 2-20 The bronze/rust colors on the map to show closed areas for "motorized and mechanized and the one for designated only for mechanized" is really hard to discern which is which. Colors are too similar. | EMPSi (KW): Colors will be modified for clarity. |
| 694. | 433 | B and D | D. Dyer | The two colors in the Figures 2-18 and 2-20 representing "Areas Closed to Motorized And Mechanized Vehicles" and "No Motorized Vehicles (Mechanized Vehicles Limited To Designated Routes) are too similar and need to be more distinguished from each other. | EMPSi (KW): Colors will be modified for clarity. |
| 695. | 433 | B,C, D | B. Krickbaum | Delete the bullet "Limited yearlong to existing routes for motorized use: 0 acres"<br><br>This bullet adds to confusion. | EMPSi (JW): Change made. |
| 696. | 433 | D | Burch | Seasonal Closures as shown in Appendix A – Figure 2-20: will need to allow for all administrative motorized use. Also, some areas as seasonal closures are shown in Alt. D but were not shown on any other alternative map. Were they analyzed? (spec: Southwest of Adobe Badlands) | EMPSi (KW): Where there are closures, there is always administrative access. Added "except for administrative and permitted vehicular access" to applicable rows below. Added to Section 2.4.2. |
| 697. | 433 Figure 2-20 | D | Stindt | Please remove the Tabeguache, Burn Canyon, and Barkelew Draw from the list of areas seasonally closed to travel. Travel closure in these areas was not discussed with the Bio staff and will be very controversial and difficult to enforce. | EMPSi (KW): Seasonal closures revised; see specific edits to row 443. |
| 698. | 433 | D | Hawke *(RACSG)* | The acreage closed to motorized use needs to be increased to encompass a greater extent of primitive | EMPSi (KW): Closed to motorized includes WSAs, Tabeaguache area, and SRMAs and ACECs that |



BLM_0111457

### BLM – Uncompahgre Field Office, Colorado
### Resource Management Plan Revision and Environmental Impact Statement

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | recreation areas, biological core areas, ACECs, and additional lands with particular land health issue such as highly erodible soils and/or steep slopes. The total acreage closed to motorized, and motorized and mechanized, use in Alternative B is very reasonable - Alt B would leave over 85% of UFO acres open to motorized use. To provide a balanced portfolio of land uses and values across the UFO, much greater emphasis is needed on providing for quiet, non-motorized recreation, and preservation of sensitive ecological and soil resources. | would be threatened by such use. Biological Core areas have a seasonal restriction to protect big game during critical periods. |
| 699. | 433 | D | Hawke (RACSG) | Change to read like B | EMPSi (KW): Closed to motorized includes WSAs, Tabeaguache area, and SRMAs and ACECs that would be threatened by such use. Biological Core areas have a seasonal restriction to protect big game during critical periods. |
| 700. | 434 | 04 | W. Blackburn (RACSG) | Eliminate "Same as Alternative B." Insert…Manage 5,260 acres (Open OHV area) open to cross country motorized vehicles with tire width 50 inches or less weighing no more than 1200 Lbs. | EMPSi (KW): Management team has determined that this area should be limited to designated routes due to resource concerns including T&E plants and saline soils. All of the existing routes will be designated pending future travel management planning in the area. |
| 701. | 434 | B | J. Jackson | Delete "(The North Delta OHV area would be Limited to Designated Routes; until a future route-designation process is completed, the preliminary route network would include all existing routes.)" This is already stated below. | EMPSi (KW): No change. This will stay here so that people immediately know what the decision is on this area. |
| 702. | 435 | A | J. Jackson | Need to update acres. 0 acres is incorrect. | EMPSi (KW): Acres have been updated. |
| 703. | 435 | A | J. Jackson | Delete WSA's: appropriately listed in row 436. Move "Dolores River Canyon SRMA" to row 436 in Alternative A Potter Creek is closed to motorized use | EMPSi (KW): Change made. |
| 704. | 435 | B | J. Jackson | Move the following SRMA's: Burn Canyon Zone 1, Paradox Valley Zone 4, and Roubideau Zones 1 and 2 to row 436 Alternative B | EMPSi (KW): Change made. |



BLM_0111458

**BLM – Uncompahgre Field Office, Colorado**
**Resource Management Plan Revision and Environmental Impact Statement**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | Move over the bullet for Spring Creek Zones 1 and 2 under the SRMA heading | |
| 705. | 435 Figure 2-20 | D | L Reed | The wording in the matrix does not match Figure 2-20 ie  map does not show Roubideau zones 1 & 2 or San Miguel River Zone 2.  Which is correct:  the figure or the matrix? | EMPSi (KW): GIS updated. |
| 706. | 435 Figure 2-20 | D | L Reed | Some of the designated areas are not showing up on the figure  ie  Roubideau zones and San Miguel zone are not visible, and Jumbo Mtn zone is barely visible

Also we need a better definition/explanation of "permitted vehicular access"        Does this include access to existing ROWs/authorizations?   and access for private landowners? | EMPSi (KW): GIS updated.

Permitted vehicular access is administrative access. This would include access for ROW authorizations. EMPSi: Add to glossary and send to Julie for review. Bruce/BLM: Suggest the following definitions; please review with Julie and provide direction. Administrative access. Administrative access pertains to travel on routes that are limited to authorized users (typically motorized access). These are existing routes that lead to developments that have an administrative purpose, where the BLM or a permitted user must have access for regular maintenance or operation. Permitted access. See "administrative access" definition. |
| 707. | 435 | D | Durnan (RACSG) | Include the Ridgway Trails Area in the Alternative D SRMA list. This action would provide greater quality of experience consistent with the current and future primary non motorized use user groups in addition to being more consistent with adjoining State Park land regulations. | EMPSi (KW): Ridgway Trails has been added to Alternative D, excluding the gravel pit. |
| 708. | 435 | D | Hawke (RACSG) | Change to read like B | EMPSi (KW): Alternative D is similar to Alternative B. Not all areas are SRMAs under Alternative D which is why the list is slightly smaller. It was also determined that it would not be appropriate for all SRMAs to be closed to motorized use. |
| 709. | 435 | D | J. Jackson | Move Roubideau SRMA Zones 1 and 2 to row 436 Alternative B

Delete San Miguel River Zone 2 | EMPSi (JW): Deleted San Miguel River Zone 2 from Alternative D. Moved Roubdeau RMZ 2 to row 436 in Alternative D; kept RMZ 1 on row 435. |



BLM_0111459

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | Move over the bullet for Spring Creek Zones 1 and 2 under the SRMA heading | |
| 710. | 436 | D | Joan May (CA) | Add San Miguel zone 2 to alt D | EMPSi (KW): Added Saltado Canyon portion of San Miguel SRMA Zone 2. |
| 711. | 436 | D | Hawke (RACSG) | Change to read like B | EMPSi (KW): Alternative D is similar to Alternative B. Not all areas are SRMAs under Alternative D which is why the list is slightly smaller. |
| 712. | 436 | D | J. Jackson | Add under SRMA heading: "Portion of San Miguel SRMA Zone 2 (Saltado Canyon)" | EMPSi (KW): Added Saltado Canyon portion of San Miguel SRMA Zone 2. |
| 713. | 436 | Preferred | T. Stranathan | Are OG and ROW activities considered "permitted" activities for an access route through these areas? | EMPSi (KW): If they are currently authorized then they are permitted. If not, they will go through the NEPA process. Permitted access specifics would be part of the ROW authorization. |
| 714. | 436, Figure 2-20 | A, D | L Reed | Figure does not match text ie  Fairview S ACEC not on map; Roubideau/Camelback area on map is much larger than just the WSA;    Isn't San Miguel area showing more than just zone 3 on map (see line 436). Note Saltado Creek is on map but not in text<br><br>We need a better definition/explanation of "permitted vehicular access"        Does this include access to existing ROWs/authorizations?   and access for private landowners?<br><br>Fairview South is included in Alt A, yet the new ACEC is an expanded version of the existing ACEC.   So Alt A was 210 acres, while Alt D is 640 acres;  and neither area is shown on figure 20 | EMPSi (JW): Copied list from Alt A instead of saying "Same as Alternative A"<br><br>Permitted vehicular access is administrative access. This would include access for ROW authorizations. EMPSi: Add to glossary and send to Julie for review. Bruce/BLM: Suggest the following definitions; please review with Julie and provide direction. Administrative access. Administrative access pertains to travel on routes that are limited to authorized users (typically motorized access). These are existing routes that lead to developments that have an administrative purpose, where the BLM or a permitted user must have access for regular maintenance or operation. Permitted access. See "administrative access" definition. |
| 715. | 437 | A, B, C, and D | J. Jackson | Add wording: "…as Limited to Designated Routes for motorized **and mechanized** use." | EMPSi (KW): Change made. |
| 716. | 437 | B, C, D | B. Krickbaum | Add "mechanized".<br>Will read: "for motorized and mechanized use." | EMPSi (KW): Change made to all alternatives. |
| 717. | 437 | D | Pfifer | New administrative and permitted access needs to be allowed. | EMPSi (KW): Changed all action alternatives to be read, "Manage the remaining portion of the planning area (xx acres) as Limited to Designated Routes for motorized and mechanized use, except for |



Internal Draft Alternatives for Field Office, Cooperating Agency, and RAC Subgroup Review: June 23, 2011

BLM_0111460

**BLM – UNCOMPAHGRE FIELD OFFICE, COLORADO**
**RESOURCE MANAGEMENT PLAN REVISION AND ENVIRONMENTAL IMPACT STATEMENT**

## Comments on Internal Draft Chapter 2 for Field Office, Cooperating Agency, and RAC Subgroup Review (June 23, 2011)

| Cmt # | Row #/ Page # | Alternative/ Line #/ Figure # | BLM Commentor | Comment | Response (To be completed by EMPSi) |
|---|---|---|---|---|---|
| | | | | | administrative and permitted vehicular access." |
| 718. | 437 | Preferred | T. Stranathan | What about permitted activities such as OG? Road widening/surfacing can be necessary for safety, new access routes to well pads will inevitably be constructed to access well pads that are not located directly on designated routes. | EMPSi (KW): If new routes are needed or if routes need to be widened, that would be analyzed during NEPA for that authorization. |
| 719. | 438 | 04 | W. Blackburn (RACSG) | Last Bullet Point....Change the 150 feet wide on either side of the centerline of existing routes to read.... 250 feet wide on either side of the centerline of existing routes. (This is needed for resource protection re-routes. Most re-routes of motorized trails need 250 feet to successfully complete a physical sustainable trail.) | BLM (BK): We have not made a decision on this suggestion yet. |
| 720. | 438 | A through C | Hawke (RACSG) | The aerial map is not adequate for identifying the existing system; it must be ground-truthed and the terminus of existing routes identified, so they are not extended. With respect to rare plants like the federally threatened Colorado hookless cactus, installation of physical closures should be required if off-road use damages the plants. | BLM (BK): No change. The aerial photography was utilized while initially identifying routes. Questionable routes were ground trothed. Public meetings were held to further determine additional routes. We feel there is a good inventory of routes. The field office-wide travel management plan was presented to USFWS for consultation. Mitigation for the cactus resulted from consultation. |
| 721. | 438 | A through C | Hawke (RACSG) | To bullet nine, add wetlands, riparian areas, rare plant communities and plant species and other important resources; and also require route closures at any time, not just in the event of extreme winters or wet conditions. | EMPSi (KW): Added resources. However The BLM cannot close routes at any time. They can implement emergency closures to curb resource damage or… |
| 722. | 438 | D | B. Krickbaum | Bullet regarding game carts, delete "in limited areas". Last bullet: delete "Pending applicable environmental clearances," | EMPSi (KW): Change made. |
| 723. | 438 | D | Hawke (RACSG) | Many good interim management provisions listed in Alt D. | EMPSi (KW): Thank you for your comment. |
| 724. | 438 | D | Hawke (RACSG) | Identify specific activities that have a high potential for adding user-created routes to the system (for example, dispersed camping, mineral development, shed antlering, and others) and address how those activities will be addressed in the interim. | EMPSi (KW): The RMP would make all travel limited to existing/designated routes. See bullet 3 under Alts A-C for not allowing changes to existing routes. |
| 725. | 438 | D | Hawke | Add "antler gathering" to the prohibition of cross- | EMPSi (KW): This bullet is specifically for allowing |



BLM_0111461