| | |
|---|---|
| **From:** | WildEarth Guardians on behalf of Marilyn Martin |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | Keep Our Fossil Fuels in the Ground |
| **Date:** | Friday, October 28, 2016 10:47:24 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

I urge you to adopt a plan for the Uncompahgre Field Office that prohibits new leasing of coal, oil, and gas, and that aims to keep fossil fuels in the ground for our climate, for the region's clean air and water, and for the health of our public lands.

It is unconscionable that the Bureau of Land Management would propose to continue allowing more oil, gas, and coal development when all signs point to the need to rein in fossil fuel development and reduce carbon pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office puts the health and sustainability of the region's public lands at great risk.  In doing so, you're also putting the communities that depend on these lands, including communities in the North Fork Valley, at great risk.

Please stop catering to the demands of the fossil fuel industry.  The Uncompahgre Field Office supports vitally important wilderness lands, outstanding rivers, vibrant wildlife, including imperiled species, and unmatched mountains and high desert canyons.  It is a crown jewel of Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute discretion over whether to allow oil, gas, and coal leasing and undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field Office; and

3. Require that existing fossil fuel leases be canceled as expeditiously as possible after production ends.

Thank you for putting our climate, health, and future first.

Sincerely,

Marilyn Martin
6020 Loganwood Dr
Rockville, MD 20852
marilynlmartin@msn.com

BLM_0146983

| | |
|---|---|
| **From:** | WildEarth Guardians on behalf of Michelle Fuller |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | Please Keep Fossil Fuels In the Ground |
| **Date:** | Friday, October 28, 2016 9:42:32 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

I am writing to urge you to adopt a plan for the Uncompahgre Field Office that prohibits new leasing of coal, oil, and gas, and that aims to keep fossil fuels in the ground for our climate, for the region's clean air and water, and for the health of our public lands.

It is unconscionable that the Bureau of Land Management would propose to continue allowing more oil, gas, and coal development when all signs point to the need to rein in fossil fuel development and reduce carbon pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office only stands to put the health and sustainability of the region's public lands at great risk.  In doing so, you're also putting the communities that depend on these lands, including communities in the North Fork Valley, at great risk.

Please, stop catering to the demands of the fossil fuel industry.  The Uncompahgre Field Office supports vitally important wilderness lands, outstanding rivers, vibrant wildlife, including imperiled species, and unmatched mountains and high desert canyons.  It is a crown jewel of Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute discretion over whether to lease oil, gas, and coal leasing and undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field Office; and

3. Require that existing fossil fuel leases be canceled as expeditiously as possible after production ends.

Thank you for putting our climate, our health, and our future first.

Sincerely,

Michelle Fuller
unavailable
Littleton, CO 80120-4220
md_fuller@comcast.net

BLM_0146985

**From:**      WildEarth Guardians on behalf of Susan Shields
**To:**        Bureau of Land Management Uncompahgre Field Office
**Subject:**   Protect Uncompahgre from fossil fuel leasing
**Date:**      Friday, October 28, 2016 10:11:55 AM

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

I urge the Bureau of Land Management to exercise its absolute
discretion over whether to lease oil, gas, and coal rights in the
Uncompahgre and undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field
Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field
Office; and

3. Require that existing fossil fuel leases be canceled as
expeditiously as possible after production ends.

This land is priceless wilderness and must be protected from commercial
exploitation.

Sincerely,

Susan Shields
3033 Calle Rosales
Santa Barbara, CA 93105-2805
shields3033@netscape.net

| | |
|---|---|
| **From:** | WildEarth Guardians on behalf of Barry LeBeau |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | Please Keep Our Fossil Fuels in the Ground |
| **Date:** | Friday, October 28, 2016 10:21:29 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

I'm writing to urge you to adopt a plan for the Uncompahgre Field
Office that prohibits new leasing of coal, oil, and gas, and that aims
to keep fossil fuels in the ground for our climate, for the region's
clean air and water, and for the health of our public lands.

It is unconscionable that the Bureau of Land Management would propose
to continue allowing more oil, gas, and coal development when all signs
point to the need to rein in fossil fuel development and reduce carbon
pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office only
stands to put the health and sustainability of the region's public
lands at great risk.  In doing so, you're also putting the communities
that depend on these lands, including communities in the North Fork
Valley, at great risk.

Please, stop this catering to the demands of the fossil fuel industry.
The Uncompahgre Field Office supports vitally important wilderness
lands, outstanding rivers, vibrant wildlife, including imperiled
species, and unmatched mountains and high desert canyons.  It is a
crown jewel of Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute
discretion over whether to lease oil, gas, and coal leasing and
undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field
Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field
Office; and

3. Require that existing fossil fuel leases be canceled as
expeditiously as possible after production ends.

Thank you for putting our climate, our health, and our future first
because if you don't work for Us; then your not on the side of
protecting Our Public lands which We The People OWN not the Big Fossil
Fuel Corporations!

Sincerely,

Barry LeBeau
97 Phenix Ave Unit 1

BLM_0146987

West Warwick, RI 02893
blebeau123@yahoo.com

BLM_0146988

| | |
|---|---|
| **From:** | WildEarth Guardians on behaif of Tristan Sophia |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | Keep Our Fossil Fuels in the Ground |
| **Date:** | Friday, October 28, 2016 9:40:41 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

I am writing to urge you to adopt a plan for the Uncompahgre Field
Office that prohibits new leasing of coal, oil, and gas, and that aims
to keep fossil fuels in the ground for our climate, for the region's
clean air and water, and for the health of our public lands.

Sincerely,

Tristan Sophia
406 W. Bridger Creek Rd
Reed Point, MT 59069
tristan9593@gmail.com

BLM_0146989

| | |
|---|---|
| **From:** | WildEarth Guardians on behaif of Matthew Venciii |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | Keep Our Fossil Fuels in the Ground |
| **Date:** | Friday, October 28, 2016 10:15:44 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

What is just is just.  What must be done must be done.  What is just must be done.  What is just and undone shall take its toll from those responsible, through action, or through inaction.  So it is.  So it was.  So it always will be.  May it be that you have the wisdom to do what is just.

Sincerely,

Matthew Vencill
3008 Overland St
Round Rock, TX 78681-3834
mvencill@icloud.com

| | |
|---|---|
| **From:** | WildEarth Guardians on behalf of Nicole Weber |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | Please Keep Our Fossil Fuels in the Ground |
| **Date:** | Friday, October 28, 2016 10:10:04 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

I strongly urge you to adopt a plan for the Uncompahgre Field Office
that prohibits new leasing of coal, oil, and gas, and that aims to keep
fossil fuels in the ground for our climate, for the region's clean air
and water, and for the health of our public lands.

It is unconscionable that the Bureau of Land Management would propose
to continue allowing more oil, gas, and coal development when all signs
point to the need to rein in fossil fuel development and reduce carbon
pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office only
stands to put the health and sustainability of the region's public
lands at great risk.  In doing so, you're also putting the communities
that depend on these lands, including communities in the North Fork
Valley, at great risk.

Please, stop catering to the demands of the fossil fuel industry.  The
Uncompahgre Field Office supports vitally important wilderness lands,
outstanding rivers, vibrant wildlife, including imperiled species, and
unmatched mountains and high desert canyons.  It is a crown jewel of
Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute
discretion over whether to lease oil, gas, and coal leasing and
undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field
Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field
Office; and

3. Require that existing fossil fuel leases be canceled as
expeditiously as possible after production ends.

Thank you for putting our climate, our health, and our future first.

Sincerely,

Nicole Weber

MD
nicole4770@yahoo.com

BLM_0146992

| | |
|---|---|
| **From:** | WildEarth Guardians on behalf of Mark Meeks |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | Keep Our Fossil Fuels in the Ground |
| **Date:** | Friday, October 28, 2016 9:40:52 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

I am writing to urge you to adopt a plan for the Uncompahgre Field Office that prohibits new leasing of coal, oil, and gas, and that aims to keep fossil fuels in the ground for our climate, for the region's clean air and water, and for the health of our public lands.

I am convinced that continued fossil fuel development does far more harm to our economy and to our environment than we can bear healthily or sustainably. I've experienced areas, such as West Texas, where such development clearly alter air and landscape and likely water as well. We've got a treasure of landscape that warrants the priority of protection, and I urge that priority.

Sincerely,

Mark Meeks
399 Blackbird Dr.
Bailey, CO 80421
mkenosha@aol.com

BLM_0146993

| From: | WildEarth Guardians on behalf of Ross Lockridge, III |
|---|---|
| To: | Bureau of Land Management Uncompahgre Field Office |
| Subject: | Fossil Fuels must stay in the Ground |
| Date: | Friday, October 28, 2016 9:50:46 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

Please adopt a plan for the Uncompahgre Field Office that prohibits new leasing of coal, oil, and gas, and that aims to keep fossil fuels in the ground for our climate, for the region's clean air and water, and for the health of our public lands.

It is unconscionable that the Bureau of Land Management would propose to continue allowing more oil, gas, and coal development when all signs point to the need to rein in fossil fuel development and reduce carbon pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office only stands to put the health and sustainability of the region's public lands at great risk.  In doing so, you're also putting the communities that depend on these lands, including communities in the North Fork Valley, at great risk.

Please, stop catering to the demands of the fossil fuel industry.  The Uncompahgre Field Office supports vitally important wilderness lands, outstanding rivers, vibrant wildlife, including imperiled species, and unmatched mountains and high desert canyons.  It is a crown jewel of Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute discretion over whether to lease oil, gas, and coal leasing and undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field Office; and

3. Require that existing fossil fuel leases be canceled as expeditiously as possible after production ends.

Thank you for putting our climate, our health, and our future first.

Sincerely,

Ross Lockridge, III
POB 22
Cerrillos, NM 87010
murlock@raintreecounty.com

BLM_0146995

| From: | WildEarth Guardians on behalf of Dini DiNataie |
|---|---|
| To: | Bureau of Land Management Uncompahgre Field Office |
| Subject: | Keep Our Fossil Fuels in the Ground |
| Date: | Friday, October 28, 2016 9:11:09 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

Please, stop catering to the demands of the fossil fuel industry.  The Uncompahgre Field Office supports vitally important wilderness lands, outstanding rivers, vibrant wildlife, including imperiled species, and unmatched mountains and high desert canyons.  It is a crown jewel of Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute discretion over whether to lease oil, gas, and coal leasing and undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field Office; and

3. Require that existing fossil fuel leases be canceled as expeditiously as possible after production ends.

Thank you for putting our climate, our health, and our future first.

Sincerely,

Dini DiNatale
13201 Hatch Rd
Westerville, OH 43082
msreeco81@gmail.com

| From: | WildEarth Guardians on behalf of David Gladstone |
|---|---|
| To: | Bureau of Land Management Uncompahgre Field Office |
| Subject: | Keep Our Fossil Fuels in the Ground |
| Date: | Friday, October 28, 2016 9:13:44 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

My wife and I are writing to urge you to adopt a plan for the
Uncompahgre Field Office that prohibits new leasing of coal, oil, and
gas, and that aims to keep fossil fuels in the ground for our climate,
for the region's clean air and water, and for the health of our public
lands.

It is unconscionable that the Bureau of Land Management would propose
to continue allowing more oil, gas, and coal development when all signs
point to the need to rein in fossil fuel development and reduce carbon
pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office only
stands to put the health and sustainability of the region's public
lands at great risk. In doing so, you're also putting the communities
that depend on these lands, including communities in the North Fork
Valley, at great risk.

Please, stop catering to the demands of the fossil fuel industry. The
Uncompahgre Field Office supports vitally important wilderness lands,
outstanding rivers, vibrant wildlife, including imperiled species, and
unmatched mountains and high desert canyons. It is a crown jewel of
Colorado and the American West.

We urge the Bureau of Land Management to exercise its absolute
discretion over whether to lease oil, gas, and coal leasing and
undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field
Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field
Office; and

3. Require that existing fossil fuel leases be canceled as
expeditiously as possible after production ends.

Thank you for putting our climate, our health, and our future first.

Sincerely,

David Gladstone
PO Box 803
Snohomish, WA 98291
bluecamaslily@aol.com

BLM_0146998

| | |
|---|---|
| **From:** | WildEarth Guardians on behalf of Glen Anderson |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | PROHIBIT new fossil fuel exploitation in your area. |
| **Date:** | Friday, October 28, 2016 9:20:36 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

THE CLIMATE CRISIS IS VERY SERIOUS AND VERY URGENT!!!

WE MUST CHANGE HOW WE DO THINGS!!!

Therefore, I implore you to  adopt a plan for the Uncompahgre Field
Office that STRICTLY PROHIBITS new leasing of coal, oil, and gas, and
that aims to keep fossil fuels in the ground for our climate, for the
region's clean air and water, and for the health of our public lands.

It is unconscionable that the Bureau of Land Management would propose
to continue allowing more oil, gas, and coal development when all signs
point to the need to rein in fossil fuel development and reduce carbon
pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office only
stands to put the health and sustainability of the region's public
lands at great risk.  In doing so, you're also putting the communities
that depend on these lands, including communities in the North Fork
Valley, at great risk.

Please, stop catering to the demands of the fossil fuel industry.  The
Uncompahgre Field Office supports vitally important wilderness lands,
outstanding rivers, vibrant wildlife, including imperiled species, and
unmatched mountains and high desert canyons.  It is a crown jewel of
Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute
discretion over whether to lease oil, gas, and coal leasing and
undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field
Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field
Office; and

3. Require that existing fossil fuel leases be canceled as
expeditiously as possible after production ends.

Thank you for putting our climate, our health, and our future first.

Sincerely,

Glen Anderson

BLM_0146999

5015 15th Ave SE
Lacey, WA 98503
glenanderson@integra.net

BLM_0147000

| From: | WildEarth Guardians on behaif of Karen Martellaro |
|-------|---------------------------------------------------|
| To: | Bureau of Land Management Uncompahgre Field Office |
| Subject: | Keep Our Fossil Fuels in the Ground |
| Date: | Friday, October 28, 2016 8:48:48 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

I write today,to ask you, to adopt a plan for the Uncompahgre Field
Office that prohibits new leasing of coal, oil, and gas, and that aims
to keep fossil fuels in the ground for our climate, for the region's
clean air and water, and for the health of our public lands.

It is unconscionable that the Bureau of Land Management would propose
to continue allowing more oil, gas, and coal development when all signs
point to the need to rein in fossil fuel development and reduce carbon
pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office only
stands to put the health and sustainability of the region's public
lands at great risk.  In doing so, you're also putting the communities
that depend on these lands, including communities in the North Fork
Valley, at great risk.

Please, stop catering to the demands of the fossil fuel industry.  The
Uncompahgre Field Office supports vitally important wilderness lands,
outstanding rivers, vibrant wildlife, including imperiled species, and
unmatched mountains and high desert canyons.  It is a crown jewel of
Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute
discretion over whether to lease oil, gas, and coal leasing and
undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field
Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field
Office; and

3. Require that existing fossil fuel leases be canceled as
expeditiously as possible after production ends.

Thank you for putting our climate, our health, and our future first.

Sincerely,

Karen Martellaro
8210 Caenen Lake Rd
Lenexa, KS 66215
kar4earth@gmail.com

BLM_0147002

| | |
|---|---|
| **From:** | WildEarth Guardians on behalf of Marti Swanson |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | Keep Our Fossil Fuels in the Ground |
| **Date:** | Friday, October 28, 2016 8:56:05 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

Please adopt a plan for the Uncompahgre Field Office that prohibits new leasing of coal, oil, and gas, and that aims to keep fossil fuels in the ground for our climate, for the region's clean air and water, and for the health of our public lands.

It is unconscionable that the Bureau of Land Management would propose to continue allowing more oil, gas, and coal development when all signs point to the need to rein in fossil fuel development and reduce carbon pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office only stands to put the health and sustainability of the region's public lands at great risk. In doing so, you're also putting the communities that depend on these lands, including communities in the North Fork Valley, at great risk.

Please, stop catering to the demands of the fossil fuel industry. The Uncompahgre Field Office supports vitally important wilderness lands, outstanding rivers, vibrant wildlife, including imperiled species, and unmatched mountains and high desert canyons. It is a crown jewel of Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute discretion over whether to allow oil, gas, and coal leasing and undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field Office; and

3. Require that existing fossil fuel leases be canceled as expeditiously as possible.

Thank you for putting our climate, our health, and our future first.

Sincerely,

Marti Swanson
5615 N Ridgeway Rd
Ringwood, IL 60072
cygnetnest@aol.com

BLM_0147004

| | |
|---|---|
| **From:** | WildEarth Guardians on behaif of Susan Murray |
| **To:** | Bureau of Land Management Uncompahgre Field Office |
| **Subject:** | Keep Our Fossil Fuels in the Ground |
| **Date:** | Friday, October 28, 2016 8:47:31 AM |

Oct 28, 2016

Bureau of Land Management Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401

Dear Uncompahgre Field Office,

I am writing to urge you to prohibit new leasing of coal, oil, and gas. A plan that aims to keep fossil fuels in the ground for our climate, for the region's clean air and water, and for the health of our public lands.

The Bureau of Land Management must rein in fossil fuel development and reduce carbon pollution.

More oil, gas, and coal leasing in the Uncompahgre Field Office only stands to put the health and sustainability of the region's public lands at great risk.

Please, stop catering to the demands of the fossil fuel industry.

The Uncompahgre Field Office supports vitally important wilderness lands, outstanding rivers, vibrant wildlife, including imperiled species, and unmatched mountains and high desert canyons. It is a crown jewel of Colorado and the American West.

I urge the Bureau of Land Management to exercise its absolute discretion over whether to lease oil, gas, and coal leasing and undertake the following actions:

1. Make all publicly owned oil, gas, and coal in the Uncompahgre Field Office unavailable for leasing;

2. Prohibit any and all future leasing of fossil fuels within the Field Office; and

3. Require that existing fossil fuel leases be canceled as expeditiously as possible after production ends.

Thank you for putting our climate, our health, and our future first.

Sincerely,

Susan Murray
5325 Highpointe Dr
Minneapolis, MN 55437
susanmurray816@aol.com

BLM_0147005

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.


Sincerely,

Joseph M. Miller
1218 Old Liberty Terr.
Bedford, VA 24523


Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

ERICH J. NIERMANN

36639 M50 Rd.
HOTCHKISS, Co 81419

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

227-Main Ay
Terry Briggs
Paonia Co 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

George Price   (Price)
6742 Eagle Pl.
Littleton, Co 80130

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Kathryn Griest
226 Poplar Way,
Hotchkiss, CO.
81419

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Susan Friar
POB 1317
Paonia, Co 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely, Marjorie True

Marjorie True
21770 Rocker Rd
Paonia

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan?  Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

ADRIANE PANCIERA
PO BOX 84
PAONIA CO 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Stacy a Taylor

Stacy A Taylor
P O Box 453
Hotchkiss CO 81419

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

David McKennett
3233 Lakeside Dr, #309
Grand Junction, CU 81506

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Mark Andres

213 Oak Ave
Paonia Co.

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Anthony Zimmerman
11.191 3400 Rd.
Paonia Co. 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Karen Jensen
1501 Three Mile Creek Rd
Stevensville, Mt 59870

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Anthony Bean Burger

PO Box 683
Hotchkiss CO 81419

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Kathleen C. Briggs
224 Main/POB 1852
Paonia CO 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Richard Marks
Richard Marks
3991 County Rd. 343
New Castle Col.
81647

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Ryan Grannaman

502 Main Ave.
Paonia, CO 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

K SPETNER
3233 LAKESIDE DR. #309
GRAND JUNCTION, CO 81506

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Mary Jursinovic

MARY JURSINOVIC
11491 3800 RD PAONIA, Co
81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Julia Mace

JULIA MACE
6514 S. BALSAM CT.
LITTLETON CO 80123

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Amanda McCormick
42764 Minnesota Creek Rd
Paonia CO 81428

Sincerely,

Amanda McCormick

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

*Mary Jursinovic*

MARY JURSINOVIC
11491 3800 Rd  PAONIA, Co
81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

BLM_0147027

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Anthony Zimmerman
11491 3400 Rd.
Paonia Co. 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Lisa M. Manzano
Lisa M. Manzano
804 23rd St.
Glenwood Sp Co.
81601

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Susan Friar
POB 1317
Paonia, Co 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Lisa M Niermann
36639 M50 Rd.
Hotchkiss, Co 81419

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

ERICH J. NEERMANN

36639 M50 Rd.
Hotchkiss, Co 81419

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Sarah Rodriguez
PO box 1618
Paonia CO 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

Dana Wilson,

I urge the BLM to issue a moratorium on all oil and gas leasing. At this point in time, it would be irresponsible for the BLM to move forward as the Draft RMP failed to mention pipeline integrity management and pipeline safety. It is very plausible that the integrity of the pipeline could be compromised, not only from faulty construction, but also from flooding, mudslides, earthquakes, and geologic instability. Leaks and spills could occur along the pipeline, which could contaminate the soil and water. Faulty construction or a compromised pipeline from any geological incident could also result in a rupture or explosion. We have already seen instances of this happening within the United States. What makes this problem even more uncertain is that right now rural gas gathering pipelines are not regulated. This is a danger. Rural gas pipelines need to be regulated to prevent leaks, spills, explosions and also to give the public confidence that these pipelines will not endanger campsites, start forest fires, damage the environment, or result in animal or human fatalities.

In addition, the Draft RMP also does not address the volatile organic compounds (VOCs), particulate matter, methane, nitrogen oxide, and hydrogen sulfide that are released, leaked, or spilled as a result of drilling, continuous operations or accidents, and their impact on the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people. The BLM did not analyze or consider that pipeline maintenance, the use of waste ponds for the storage of flow back fluids, and that truck transportation of water, fluids and sand all can result in the release of VOCs, methane and hydrogen sulfide and result in negatively affecting the respiratory, nervous, digestive, immune, reproductive, and cardiovascular systems of people.

How can the BLM have conducted a proper comprehensive environmental risk assessment if it did not consider pipeline safety in its Draft Resource Management Plan? Both the government and the public know of many pipeline failures. That's why there are federal pipeline safety regulations to ensure proper construction of pipelines and reporting of pipeline failures for proper oversight. However, because rural gas gathering lines are exempt from the federal pipeline safety regulations, the moratorium is needed to protect the North Fork Valley until rural pipelines are regulated. At this point, the BLM should not move forward with any options laid out in the Draft RMP.

Sincerely,

Judith L Lafferty
Judith L Lafferty
104 Main St
PO Box 1305
Paonia, Co 81428

Cc: M. Bennet, R. Welch, S. Jewell, J. Hickenlooper, N. Kornze

To the BLM,

The Department of the Interior came out with a study on the impact of climate change on national parks, which referenced at the end of this letter.

It is not just the parks which need to be considered. All public lands need to be included in regard to climate change. As temperatures rise and warmer seasons extend, water becomes even more precious. Most of the domestic water sources in the NFV are surface springs and streams that are either on or near BLM lands affected by the BLM's Draft RMP. Our communities depend on water for farms, ranches and homes. There is no extra water for hydraulic fracturing now, and with increased demands from warmer weather and higher temperatures due to climate change, the North Fork Valley would be in a crisis.

The BLM did not consider the permanent removal of water from the hydrologic cycle and that there are insufficient water supplies necessary to support fracking and other drilling operations, particularly in this period of persistent drought. These concerns were not addressed in the Draft RMP

- Risk of contamination to irrigation water and crops from:
- Fracking chemical contamination of ground and surface waters
- Damage to irrigation canal access and bridges o Airborne volatile organic compounds
- Airborne silicates
- Silting in of rivers and irrigation ditches
- Increases in diesel exhaust from transportation, well and compressor sites § Risk of loss to irrigation shares for multiple irrigation ditches in the North Fork.
- Drinking Water § Risk to drinking water supplies for North Fork communities, potentially affecting 30,000 + people

The additional demands of fracking would overwhelm our already limited water supply. Therefore, I reject all options in the Draft RMP and demand that the BLM issue a moratorium. Anything else would destroy our economy and community.

In Solidarity,

Michael J. Fladmark
600 Winding Shore Drive
Tool, TX 75143

https://www.doi.gov/pressreleases/interior-secretary-jewell-announces-study-showing-spring-starting-earlier-national

cc: R. Welch, N. Kornze, S. Jewell, M. Bennet, J. Hickenlooper

BLM_0147035

To the BLM,

The Department of the Interior came out with a study on the impact of climate change on national parks, which referenced at the end of this letter.

It is not just the parks which need to be considered. All public lands need to be included in regard to climate change. As temperatures rise and warmer seasons extend, water becomes even more precious. Most of the domestic water sources in the NFV are surface springs and streams that are either on or near BLM lands affected by the BLM's Draft RMP. Our communities depend on water for farms, ranches and homes. There is no extra water for hydraulic fracturing now, and with increased demands from warmer weather and higher temperatures due to climate change, the North Fork Valley would be in a crisis.

The BLM did not consider the permanent removal of water from the hydrologic cycle and that there are insufficient water supplies necessary to support fracking and other drilling operations, particularly in this period of persistent drought. These concerns were not addressed in the Draft RMP

- Risk of contamination to irrigation water and crops from:
- Fracking chemical contamination of ground and surface waters
- Damage to irrigation canal access and bridges o Airborne volatile organic compounds
- Airborne silicates
- Silting in of rivers and irrigation ditches
- Increases in diesel exhaust from transportation, well and compressor sites § Risk of loss to irrigation shares for multiple irrigation ditches in the North Fork.
- Drinking Water § Risk to drinking water supplies for North Fork communities, potentially affecting 30,000 + people

The additional demands of fracking would overwhelm our already limited water supply. Therefore, I reject all options in the Draft RMP and demand that the BLM issue a moratorium. Anything else would destroy our economy and community.

In Solidarity,

Chris Jackson
Chris Jac
691 1015 rd
Delta Co 80416

https://www.doi.gov/pressreleases/interior-secretary-jewell-announces-study-showing-spring-starting-earlier-national

cc: R. Welch, N. Kornze, S. Jewell, M. Bennet, J. Hickenlooper

To the BLM,

The Department of the Interior came out with a study on the impact of climate change on national parks, which referenced at the end of this letter.

It is not just the parks which need to be considered. All public lands need to be included in regard to climate change. As temperatures rise and warmer seasons extend, water becomes even more precious. Most of the domestic water sources in the NFV are surface springs and streams that are either on or near BLM lands affected by the BLM's Draft RMP. Our communities depend on water for farms, ranches and homes. There is no extra water for hydraulic fracturing now, and with increased demands from warmer weather and higher temperatures due to climate change, the North Fork Valley would be in a crisis.

The BLM did not consider the permanent removal of water from the hydrologic cycle and that there are insufficient water supplies necessary to support fracking and other drilling operations, particularly in this period of persistent drought. These concerns were not addressed in the Draft RMP

- Risk of contamination to irrigation water and crops from:
- Fracking chemical contamination of ground and surface waters
- Damage to irrigation canal access and bridges o Airborne volatile organic compounds
- Airborne silicates
- Silting in of rivers and irrigation ditches
- Increases in diesel exhaust from transportation, well and compressor sites § Risk of loss to irrigation shares for multiple irrigation ditches in the North Fork.
- Drinking Water § Risk to drinking water supplies for North Fork communities, potentially affecting 30,000 + people

The additional demands of fracking would overwhelm our already limited water supply. Therefore, I reject all options in the Draft RMP and demand that the BLM issue a moratorium. Anything else would destroy our economy and community.

In Solidarity,

Amber Kleinman
47 Pan American Ave
Paonia, CO 81428

https://www.doi.gov/pressreleases/interior-secretary-jewell-announces-study-showing-spring-starting-earlier-national

cc: R. Welch, N. Kornze, S. Jewell, M. Bennet, J. Hickenlooper

To the BLM,

The Department of the Interior came out with a study on the impact of climate change on national parks, which referenced at the end of this letter.

It is not just the parks which need to be considered. All public lands need to be included in regard to climate change. As temperatures rise and warmer seasons extend, water becomes even more precious. Most of the domestic water sources in the NFV are surface springs and streams that are either on or near BLM lands affected by the BLM's Draft RMP. Our communities depend on water for farms, ranches and homes. There is no extra water for hydraulic fracturing now, and with increased demands from warmer weather and higher temperatures due to climate change, the North Fork Valley would be in a crisis.

The BLM did not consider the permanent removal of water from the hydrologic cycle and that there are insufficient water supplies necessary to support fracking and other drilling operations, particularly in this period of persistent drought. These concerns were not addressed in the Draft RMP

- Risk of contamination to irrigation water and crops from:
- Fracking chemical contamination of ground and surface waters
- Damage to irrigation canal access and bridges o Airborne volatile organic compounds
- Airborne silicates
- Silting in of rivers and irrigation ditches
- Increases in diesel exhaust from transportation, well and compressor sites § Risk of loss to irrigation shares for multiple irrigation ditches in the North Fork.
- Drinking Water § Risk to drinking water supplies for North Fork communities, potentially affecting 30,000 + people

The additional demands of fracking would overwhelm our already limited water supply. Therefore, I reject all options in the Draft RMP and demand that the BLM issue a moratorium. Anything else would destroy our economy and community.

In Solidarity,

Rebecca Ascarrunz
15495 Black Bridge Rd
Paonia, CO 81428

https://www.doi.gov/pressreleases/interior-secretary-jewell-announces-study-showing-spring-starting-earlier-national

cc: R. Welch, N. Kornze, S. Jewell, M. Bennet, J. Hickenlooper

BLM_0147038

To the BLM,

The Department of the Interior came out with a study on the impact of climate change on national parks, which referenced at the end of this letter.

It is not just the parks which need to be considered. All public lands need to be included in regard to climate change. As temperatures rise and warmer seasons extend, water becomes even more precious. Most of the domestic water sources in the NFV are surface springs and streams that are either on or near BLM lands affected by the BLM's Draft RMP. Our communities depend on water for farms, ranches and homes. There is no extra water for hydraulic fracturing now, and with increased demands from warmer weather and higher temperatures due to climate change, the North Fork Valley would be in a crisis.

The BLM did not consider the permanent removal of water from the hydrologic cycle and that there are insufficient water supplies necessary to support fracking and other drilling operations, particularly in this period of persistent drought. These concerns were not addressed in the Draft RMP

- Risk of contamination to irrigation water and crops from:
- Fracking chemical contamination of ground and surface waters
- Damage to irrigation canal access and bridges o Airborne volatile organic compounds
- Airborne silicates
- Silting in of rivers and irrigation ditches
- Increases in diesel exhaust from transportation, well and compressor sites § Risk of loss to irrigation shares for multiple irrigation ditches in the North Fork.
- Drinking Water § Risk to drinking water supplies for North Fork communities, potentially affecting 30,000 + people

The additional demands of fracking would overwhelm our already limited water supply. Therefore, I reject all options in the Draft RMP and demand that the BLM issue a moratorium. Anything else would destroy our economy and community.

In Solidarity,

Jacob Gray
12293 Crawford. Rd.
Paonia, CO 81428

https://www.doi.gov/pressreleases/interior-secretary-jewell-announces-study-showing-spring-starting-earlier-national

cc: R. Welch, N. Kornze, S. Jewell, M. Bennet, J. Hickenlooper

BLM_0147039

To the BLM,

The Department of the Interior came out with a study on the impact of climate change on national parks, which referenced at the end of this letter.

It is not just the parks which need to be considered. All public lands need to be included in regard to climate change. As temperatures rise and warmer seasons extend, water becomes even more precious. Most of the domestic water sources in the NFV are surface springs and streams that are either on or near BLM lands affected by the BLM's Draft RMP. Our communities depend on water for farms, ranches and homes. There is no extra water for hydraulic fracturing now, and with increased demands from warmer weather and higher temperatures due to climate change, the North Fork Valley would be in a crisis.

The BLM did not consider the permanent removal of water from the hydrologic cycle and that there are insufficient water supplies necessary to support fracking and other drilling operations, particularly in this period of persistent drought. These concerns were not addressed in the Draft RMP

- Risk of contamination to irrigation water and crops from:
- Fracking chemical contamination of ground and surface waters
- Damage to irrigation canal access and bridges o Airborne volatile organic compounds
- Airborne silicates
- Silting in of rivers and irrigation ditches
- Increases in diesel exhaust from transportation, well and compressor sites § Risk of loss to irrigation shares for multiple irrigation ditches in the North Fork.
- Drinking Water § Risk to drinking water supplies for North Fork communities, potentially affecting 30,000 + people

The additional demands of fracking would overwhelm our already limited water supply. Therefore, I reject all options in the Draft RMP and demand that the BLM issue a moratorium. Anything else would destroy our economy and community.

In Solidarity,

*Water is Life!*

Jeremiah Garcia
Jeremiah Garcia
38620 Pitkin rd.
Paonia, CO 81428

*Water is Life!*

https://www.doi.gov/pressreleases/interior-secretary-jewell-announces-study-showing-spring-starting-earlier-national

cc: R. Welch, N. Kornze, S. Jewell, M. Bennet, J. Hickenlooper

To the BLM,

The Department of the Interior came out with a study on the impact of climate change on national parks, which referenced at the end of this letter.

It is not just the parks which need to be considered. All public lands need to be included in regard to climate change. As temperatures rise and warmer seasons extend, water becomes even more precious. Most of the domestic water sources in the NFV are surface springs and streams that are either on or near BLM lands affected by the BLM's Draft RMP. Our communities depend on water for farms, ranches and homes. There is no extra water for hydraulic fracturing now, and with increased demands from warmer weather and higher temperatures due to climate change, the North Fork Valley would be in a crisis.

The BLM did not consider the permanent removal of water from the hydrologic cycle and that there are insufficient water supplies necessary to support fracking and other drilling operations, particularly in this period of persistent drought. These concerns were not addressed in the Draft RMP

- Risk of contamination to irrigation water and crops from:
- Fracking chemical contamination of ground and surface waters
- Damage to irrigation canal access and bridges o Airborne volatile organic compounds
- Airborne silicates
- Silting in of rivers and irrigation ditches
- Increases in diesel exhaust from transportation, well and compressor sites § Risk of loss to irrigation shares for multiple irrigation ditches in the North Fork.
- Drinking Water § Risk to drinking water supplies for North Fork communities, potentially affecting 30,000 + people

The additional demands of fracking would overwhelm our already limited water supply. Therefore, I reject all options in the Draft RMP and demand that the BLM issue a moratorium. Anything else would destroy our economy and community.

In Solidarity,

Cynthia Young
1115 4B Ave S #3-B
Edmonds, WA 98020

https://www.doi.gov/pressreleases/interior-secretary-jewell-announces-study-showing-spring-starting-earlier-national

cc: R. Welch, N. Kornze, S. Jewell, M. Bennet, J. Hickenlooper

| | |
|---|---|
| **From:** | Diane Tompkins |
| **To:** | uformp@blm.gov |
| **Cc:** | director@blm.gov; rwelch@blm.gov |
| **Subject:** | Comment on the BLM Uncompahgre draft resource management plan |
| **Date:** | Tuesday, November 1, 2016 3:19:56 PM |

To: Dana Wilson, Acting Uncompahgre Field Manager

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

The RMP currently in effect was approved at least 26 years ago (1989/scoping began in 1983) and it in no way accounts for the socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley. Unfortunately, this draft RMP is no better. It contains only cursory acknowledgement of the existence of this valley within the Uncompahgre Field Office planning area and has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado, the resort towns surrounding the valley (Aspen, Telluride and Crested Butte) and surrounding states. This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.

This valley has been formally identified through multiple means as a truly unique place:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado.

These accolades, awards and designations are presented here to make a point - - this valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation. Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly

BLM_0147042

regarded reputation as an organic agricultural area.

Additionally, this draft RMP has been written using the standard BLM RMP boilerplate/ template language. There is nothing boilerplate about the North Fork Valley. Its presence in the Uncompahgre planning area requires that effects to it from actions occurring in the BLM decision area must be thoroughly considered. This has not been done.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1)      **Chapter 1, Section 1.4 and Table 1.3:** This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley.


The NFAP was submitted in order to provide the BLM with information about the uniqueness and renowned agricultural productivity of the valley and supported the request to remove the BLM land surrounding this valley from any future leasing. However, the section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important and productive area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.


This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."


2)      **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."


3)      **Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment

within the BLM planning area is missing from the fundamental underpinnings of the analysis. This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act, Section 101(b).

4)      **Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:** The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

5)      **Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not. Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6)      **Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

7)      **Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership** (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

The North Fork Valley's traditional and organic farming, fruit and grape growing areas occur less than one mile in many places from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

**8)     Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

**9)     Chapter 4, Section 4.3.3 Water Resources:** The following statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. The only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley. Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP. This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

For many years my family has enjoyed the unparalleled vistas of this unique wine country. Please don't let this wonderful area be spoiled!

Thank you for your consideration,

Diane Walker Tompkins

Cheyenne, Wyoming

307.635.2168

BLM_0147046

| | |
|---|---|
| **From:** | suzannewatson |
| **Subject:** | UFO RMP comment supporting North Fork Alternative |
| **Date:** | Tuesday, November 1, 2016 11:53:50 AM |

Dear BLM,

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

• The current Resource Management Plant currently in effect was approved at least 26 years ago does not account for the many changes that have occurred since that time.

• The socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley have changed in importance and character and was not accounted for in the current draft RMP.

• The draft RMP only contains a brief acknowledgement of the existence of the unique agriculture that occurs in the North Fork Valley.

• The Uncompahgre Field Office planning area in the RMP has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and to the resort towns surrounding the valley (Aspen, Telluride and Crested Butte) and surrounding states.

• This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by **40 CFR 1502.15**.

**This valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation that would harm these endeavors.**

**Evidence for the uniqueness of this valley:**

a) It has been described as "**An American Provence**" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/ This valley was also featured in the book **At Mesa's Edge: Cooking and Ranching in Colorado's North Fork Valley** https://www.amazon.com/At-Mesas-Edge-Ranching-Colorados/dp/0618221263

b) This valley was designated by the state of Colorado as **a Colorado Certified**

**Creative District** in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently **awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade**. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been **designated as an American Viticulture Area** by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado

e) The North Fork Valley has been featured in a number of articles by the New York Times including coverage of previous attempts to pursue drilling http://www.nytimes.com/2013/02/03/us/colorado-communities-take-on-fight-against-energy-land-leases.html?_r=0 and many other articles like this one: http://www.nytimes.com/2014/06/19/garden/he-found-his-corner-of-the-sky.html.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation **40 CFR 1610.4-6**: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1) **Chapter 1, Section 1.4 and Table 1.3:** This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley. The section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at **40 CFR 1501.7(a)(2)** which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

BLM_0147048

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2)      **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

**3)      Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis. This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by **CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6))** or the **National Environmental Policy Act Section 101(b)**.


**4)      Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:**  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

**5)      Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime

irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

**6)      Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates **CEQ regulations at 40 CFR 1502.15**; Affected Environment and **40 CFR 1508.8**; Effects.

**7)      Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership**(emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1.Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2.

The North Fork Valley's organic and traditional farming, fruit growing and viticulture areas occur less than one mile in many places from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

**8)      Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates **40 CFR 1502.15 of the CEQ** regulations.

**9)      Chapter 4, Section 4.3.3 Water Resources:** The following

statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. And the only way to prevent it is to close the entire area within the NFAP area to any newoil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Given the following statement made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations,*" any such threat to the North Fork Valley cannot be allowed to occur. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

The oil and gas industry in Colorado has reported at least 5,188 spills from statewide operations over the last ten years to the Colorado Oil and Gas Conservation Commission). It is not a matter of if a spill will happen, but when will this drilling activity will create long-term devastating effects on soils, surface water and groundwater to the agriculture of the North Fork Valley that sit downslope from this extraction activity.

**Conclusion:**

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley. Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP. This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.
Thank you for your consideration,

Suzanne Watson
903 2nd St
Po Box 905
Paonia, CO 81428
970-527-2329

November 1, 2016

BLM_0147052



**UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov>**

## Comments on UFO RMP
1 message

**Jodi Peterson** <jodipeterson7@gmail.com>                                      Mon, Oct 31, 2016 at 7:01 PM
To: ufomp@blm.gov
Cc: info@theconservationcenter.org, rmpcomments@citizensforahealthycommunity.org, director@blm.gov, rwelch@blm.gov, millie.hamner.house@state.co.us, mroeber@deltacounty.com, bhovde@deltacounty.com, datchley@deltacounty.com

Please find attached my comments on the Uncompaghre Field Office RMP. Thank you for the opportunity to comment and for extending the comment deadline.

Sincerely,
Jodi Peterson

 **UFO RMP.docx**
168K

BLM_0147053

Jodi Peterson
PO Box 1093
Paonia, CO 81428
Oct. 30, 2016

Dear UFO RMP team:

I am writing to provide my input on the Uncompaghre RMP.  Thank you for providing this opportunity to comment. My comments are focused on the North Fork Valley area, where I have lived for the last 12 years, within a mile of Jumbo Mountain, Lone Cabin Road and Elephant Hill.

Several times a week, I recreate on nearby public lands overseen by the BLM, by walking, mountain biking and cross-country skiing. I frequently observe wildlife and signs of wildlife, including mule deer, elk, mountain lion, coyote, black bear, golden eagles, red-tailed hawks, other raptors and many species of migratory songbirds. After sunset, I often walk the roads near my home and look at the night sky, stars and planets. Looking east toward Mt. Lamborn, it's completely dark and very quiet; the noise and lights of drill rigs, trucks and compressors would disrupt that. The natural quiet, dark skies, clean air and healthy habitat I enjoy during my public-land excursions contribute immensely to my quality of life here. They are a large part of the reason that I relocated to Paonia from the Front Range, and they would be seriously impaired by the industrialization of these parcels as proposed in the agency's preferred alternative.

Opening these lands to oil and gas development means opening them to fragmentation from roads and pipelines, the noise of compressors, the potential contamination of groundwater, and air pollution from methane and ozone. It also means greatly increased heavy truck traffic, which would not only put hazardous dust into the air, but also damage Paonia and Delta County roads that were not built to withstand industrial traffic and endanger the safety of residents traveling narrow rural roads and highways.

I strongly support all of the actions contained in Alternative B-1, which was developed with input from community members, town officials, business owners, farmers, ranchers, winery owners and orchardists, and is supported by the Town of Paonia.

For the North Fork Valley, B-1 provides the best balance between extractive industry, recreation and other forms of economic growth such as agritourism. The boundaries covered by Alternative B-1 include the watershed that supplies municipal water, domestic water companies and irrigation water. It also includes the viewshed and the scenic vistas that draw tourists, as well as high-quality wildlife habitat, winter range and migration corridors.

I wish to commend BLM for including the B-1 alternative, indicating its willingness to consider the needs of the local communities. As a long-time observer of the agency, a lifelong resident of Colorado, and a 12-year resident of Paonia, I am heartened by the agency's recent stated commitment to working with communities in a more collaborative, inclusive and transparent manner to better reflect landscape-level priorities, as described in its new "Planning 2.0" process. The BLM's "Connecting with Communities" strategy (http://www.blm.gov/style/medialib/blm/wo/Planning_and_Renewable_Resources/recreation_images.Par.8212.File.dat/2014ConnectingWithCommunities.pdf) is especially encouraging; it states:

*"An important goal of the BLM's overall national strategy is to "Be a Good Neighbor." Toward this end, the BLM recreation program intends to develop closer ties to and accountability with the communities that the agency serves. The BLM will seek out and develop sustained relationships with service providers, engaging productively with representatives, listening well to understand community values and quality of life issues, and helping identify recreation opportunities that not only deliver outstanding recreation experiences to visitors and preserve the distinctive character of public lands recreation settings, but also respond to the specific desires and capacity of service providers (as consistent with federal law and policy)."*

Given the above statement of intent, I trust that the BLM will recognize that its Preferred Alternative, D, which opens most parcels around Paonia to drilling and protects only a small portion of Mt. Jumbo, does not support the agency's stated commitment to "deliver outstanding recreation experiences" and "preserve the distinctive character of public lands recreation settings."

The agency's Preferred Alternative would seriously hamper local efforts to develop sources of economic growth that are not based on the boom/bust of extractive industry. With the closing of our local coal mines, due to market shifts, we have lost at least 300 jobs and need a sustainable, long-term replacement for that employment. Oil and gas does not provide that steady source of income – examples are legion of towns that built economies on fossil fuel extraction, only to see their revenues crumble and jobs disappear when the inevitable bust comes (Parachute, CO; Williston, ND; Pavillion, WY; Waynesburg, PA). North Fork residents are working very hard to move beyond that kind of damaging cycle to long-term, steady sources of income. One important source of that income is telecommuters in high-tech and Internet-based jobs, who could live anywhere but choose to move here for the high quality of life and access to unspoiled public lands. Industrializing the valley's public lands with energy development would discourage them from coming here; local realtors have already been fielding inquiries from potential buyers who are not interested in moving to an area that is facing potential oil and gas development.

The public lands around the North Fork are a crucial component of the area's economic vitality. The access to plentiful habitat draws hunters, fishermen and

campers. In other BLM lands that have been developed for oil and gas, such as in the Piceance Basin and around Pinedale, Wyoming, mule deer herds have declined precipitously as a result, and with them hunters.  But the North Fork Valley still supports healthy populations of mule deer and elk, key to the hunting industry. Hundreds of hunters come to this area each fall to hunt BLM and Forest Service land, including the parcels that BLM proposes to open to oil and gas leasing. And they spend many thousands of dollars on food, lodging and services.

Paonia is also home to Jumbo Mountain, an area that has been developed over the past decade into a major mountain biking/hiking/ATV hub for the Western Slope and beyond.  A North Fork Trail Advocacy Group (https://www.facebook.com/groups/245443542515429/) was recently formed to support trail development for all users, including hikers, mountain bikers, horseback riders, dirt bikers and ATVers. Paonia is also working on forming a local chapter of COPMOBA, the Colorado Plateau Mountain Bike Trail Association, to further promote local riding. The trails on Jumbo attract riders from all over the state and even out of state; these riders spend money in the North Fork Valley for lodging, food and services.  Recreation on all BLM lands in the state brought in $543 million last year; people who recreate do not choose to do it in lands fragmented by roads and well pads, where the sound of compressors fills the air and heavy trucks rumble through.

Alternative D proposes to designate 1,360 acres of Jumbo Mountain as a Special Recreation Management Area, which is a good start – but the broader 5,020 acre SRMA proposed in Alternative B-1 provides much stronger protection for the entire recreation experience on Jumbo. That alternative also provides landscape-level protections for nearby recreation and wildlife areas like Elephant Hill, C Hill and Lone Cabin, enhancing the area's ability to draw hunters, hikers, mountain bikers, ATVers and other recreational visitors. The BLM should work with the North Fork Trail Advocacy Group to develop a travel management plan for Jumbo and surrounding areas, closing some trails and allowing others to remain open, and providing for separation of motorized and non-motorized uses for safety.


The North Fork Valley, with more than a century of agricultural tradition, has the largest concentration of organic farms in the states and to many wineries – it's been officially designated as **the West Elks American Viticultural Area**, a designation that draws wine- and food-focused tourists from all over the country. *An American Provence*, a 2011 book published by the University of Colorado Press, written by noted geographer Thomas Huber, (http://upcolorado.com/university-press-of-colorado/item/1933-an-american-provence) compared the North Fork Valley region to the Coulon River Valley in Provence, France, in terms of its scenic beauty, good food and drink, and pastoral farmland setting. That bucolic description, of course, would no longer apply to an industrialized valley where well pads and new roads punctuate public lands.

BLM_0147056

The North Fork Valley is also home to the **Valley Organic Growers Association**, which has dozens of member farmers and ranchers who produce high-value agricultural products like organic potatoes, carrots, greens, tomatoes, peaches, pears, apples, berries, cherries, grass-fed lamb, poultry and beef, cheese, baked goods and decorative flowers.

These products sell at a premium to tourists, local residents and at farmers markets in resort areas like Crested Butte, Telluride and Aspen, because buyers appreciate the high quality and purity and are willing to spend more money to get it. Developing surrounding lands with oil and gas would seriously jeopardize the public reputation of Paonia farms as providing clean, healthy food and wine, and would be very damaging to all of those businesses. The mere perception that Paonia's clean waters and air have become polluted by industrialization would be enough to drive away customers. There are many other non-organic farms and ranches in the valley as well, which also are key to our local food security and also could be harmed by industrial development.

In addition, the North Fork Valley has been officially designated as one of 18 **Colorado Certified Creative Districts** (http://northforkcreative.org/). This designation, as described by the state, is meant to bring innovation to communities, create hubs of economic activity, revitalize and beautify communities, attract visitors, and enhance the area as an appealing place to live. Because of that designation, the area has attracted artists, performers, and other creative types, who like the quality of life here. The proclamation also says the following:

*The North Fork Valley, along with the State of Colorado, recognizes that diversification of our industries is essential to a healthy economy, particularly in small towns.  Also, we recognize that a community that is rich in arts, culture, and heritage is a thriving community where the quality of life is satisfying and the spirit of the people attracts visitors seeking a respite from their busy, chaotic day-to-day routines.*

*Being a Certified Creative District will draw attention to our local artists and the traditions that permeate our crafts and value-added agricultural products.*

The goals and intentions of the Creative District designation are directly contradicted by the BLM's preferred alternative because of the heavy development it allows. Filling our surrounding public lands with roads, trucks, drill rigs and well pads is incompatible with the idea of "revitalizing and enhancing the area as an appealing place to live" and will put an end to the influx of new residents who seek quiet, unspoiled natural beauty and a peaceful agrarian atmosphere.

Having an influx of temporary oil and gas workers will also be damaging to those goals; people interested in art, culture and heritage do not want to live in places with a high population of transient workers, nor are such workers generally supportive of or interested in the kinds of businesses that a Creative District supports.

The idea of a Creative District with a vibrant, vital community with a mix of businesses, stands in stark contrast to the fate of other small towns that have been overtaken by oil and gas development. As CNBC reported about North Dakota (http://www.cnbc.com/2016/03/10/north-dakota-wakes-up-to-hangover-as-oil-swoons.html):

*"There is perhaps no place where the transformation is so stark as North Dakota. The state's oil production grew tenfold over the past decade as it built a thriving industry virtually from scratch, driving unemployment to a national low and filling government coffers with surging tax revenue. ... But the collapse in crude prices has turned the tide. Oil and gas exploration activity has plummeted, out-of-state workers have decamped, and the budget has swung from surplus to deficit. North Dakota is faced with adversity from a position of strength after years of boom times."*

This is exactly the kind of future we don't want in the North Fork Valley. The towns here, Paonia, Hotchkiss and Crawford, are small and do not have the services, infrastructure, temporary housing, etc. to service an influx of oil and gas workers. When small towns such as Williston, ND are faced with a sudden surge in energy workers, they build quickly to accommodate them – and then when the inevitable bust comes, they are left with suddenly-empty motels, suddenly deserted restaurants, and a massive drop in revenues (http://www.cnbc.com/2016/03/11/as-bakken-shale-boom-eases-williston-north-dakota-looks-for-a-second-act.html). As E&E News reported, "In North Dakota, a handful of small towns took on hundreds of millions in debt to pay for schools, parks and other projects. A prolonged oil bust could send those communities into a downward spiral in which a dwindling population is forced to pay for boom-time debts with a shrinking tax base." (http://www.eenews.net/energywire/2016/10/31/stories/1060045010)  This is not the sort of economic future that residents envision for the North Fork Valley.

In closing, I'd like to refer again to the "Connecting with Communities" strategy, which articulates this vision: "By increasing and improving collaboration with community networks of service providers, the BLM will help communities produce greater well-being and socioeconomic health and will deliver outstanding recreation experiences to visitors while sustaining the distinctive character of public lands recreation settings."  In support of that vision, I request that the BLM adopt all of the actions of Alternative B-1, and the resource protections of Alternative B. In particular, the agency's final plan for the North Fork region should do the following:

- Exclude all oil and gas activities within a half-mile of all surface and ground domestic water sources, including municipal suppliers, that could be impacted by surface spills and well failure
- - Protect local agriculture by excluding oil and gas activities within a quarter mile of all irrigation water sources, including ditches, irrigation intakes or canals.

- Protect streams and surface water quality, protecting ecological resources, aquatic habitat, recreational attractions, water storage, and flood control by closing areas within a half mile of lakes, ponds, wetlands, and reservoirs to oil and gas activities.
- Protect airshed health, including the Class 1 airsheds of nearby wilderness areas. The North Fork Valley is affected by daily up and down-valley winds and any oil and gas activities occurring in higher elevations could have direct impact on air quality at lower elevations, including from dust, methane, VOCs, ozone, and other particulates and gases hazardous to public health.
- Protect river and trail recreation by preventing oil and gas development along streams and river corridors, trailhead areas, the flanks of the West Elk Mountains, and the Jumbo Mountain area.
- Protect the idyllic rural character and scenic beauty of the North Fork Valley, essential to drawing tourists and new residents seeking a rural, non-industrial, and agricultural lifestyle.
- - Adequately mitigate the traffic impacts of oil and gas activity within the entire North Fork of the Gunnison Watershed.
- Promote recreation by setting aside the entire Jumbo Mountain unit as a special recreation management area, and designate all other lands with high recreation value as extensive recreation management areas (Stevens Gulch, the North Fork of the Gunnison River corridor, Smith Fork river corridor, McDonald Creek, Elephant Hill, Lone Cabin, Adobe Butte, and Robideau Canyon.)
- Include Ecological Emphasis Areas on Jumbo and for all critical winter habitat within the North Fork Valley to protect mule deer and elk. Prohibit surface activities in all critical wildlife habitat.
- - Protect all lands with wilderness characteristics, including areas up Stevens Gulch and the Adobe Badlands that provides important connectivity to pristine roadless lands in the Grand Mesa National Forest.

In conclusion, I request the UFO field office to honor and conform to the agency's guidance that requires greater collaboration and cooperation with local communities. The North Fork Alternative, B-1, is supported by most local residents in Crawford, Hotchkiss, and Paonia. It's the surest way to protect the entire Gunnison Watershed -- supporting farmers and ranchers, protecting public health, protecting wildlife, and preserving the high quality of life that supports our bridge to a sustainable economic future.

Thank you for your consideration of these comments.

Sincerely,
Jodi Peterson
970-399-7613

| | |
|---|---|
| **From:** | Cory Obert |
| **To:** | uformp@blm.gov |
| **Cc:** | director@blm.gov; rwelch@blm.gov; rmpcomments@citizensforahealthycommunity.org |
| **Subject:** | RMP Comment Letter |
| **Date:** | Monday, October 31, 2016 1:44:00 PM |
| **Attachments:** | Comments on the BLM Uncompahgre draft RMP-1.doc |

Hello, please find my attached comments on the RMP for Oil & Gas development in the North Fork Valley, Delta county, CO.

Please send a confirmation of receipt, thank you.

Cory Obert

BLM_0147060

BLM
Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

- The current Resource Management Plan currently in effect was approved at least 26 years ago and did not account for the many changes that have occurred since that time.

- The socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley have changed in importance and character and unfortunately have not been accounted for in the current draft RMP either.

- The draft RMP only contains a brief acknowledgement of the existence of the unique agriculture that occurs in the North Fork Valle and has not adequately or appropriately described what makes the North Fork Valley of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and surrounding states.

- This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by **40 CFR 1502.15**.

**This valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation that would harm these endeavors.**

**Evidence for the uniqueness of this valley:**

a) It has been described as "**An American Provence**" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/ This valley was also featured in the book **At Mesa's Edge: Cooking and Ranching in Colorado's North Fork Valley** https://www.amazon.com/At-Mesas-Edge-Ranching-Colorados/dp/0618221263

b) This valley was designated by the state of Colorado as **a Colorado Certified Creative District** in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently **awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade**. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

BLM_0147061

d) The North Fork Valley has also been **designated as an American Viticulture Area** by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado

e) The North Fork Valley has been featured in a number of articles by the New York Times including coverage of previous attempts to pursue drilling http://www.nytimes.com/2013/02/03/us/colorado-communities-take-on-fight-against-energy-land-leases.html?_r=0 and many other articles like this one: http://www.nytimes.com/2014/06/19/garden/he-found-his-corner-of-the-sky.html.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation **40 CFR 1610.4-6**: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1) **Chapter 1, Section 1.4 and Table 1.3:** This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley. The section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at **40 CFR 1501.7(a)(2)** which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2) **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3) **Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis. This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by **CEQ regulations (40 CFR 1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6))** or the **National Environmental Policy Act, Section 101(b)**.

2

4)   **Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:** The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

5)   **Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6)   **Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates **CEQ regulations at 40 CFR 1502.15**; Affected Environment and **40 CFR 1508.8**; Effects.

7)   **Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership** (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

The North Fork Valley's organic and traditional farming, fruit growing and viticulture areas occur less than one mile, in many places, from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

3

BLM_0147063

8) **Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates **40 CFR 1502.15 of the CEQ** regulations.

9) **Chapter 4, Section 4.3.3 Water Resources:** The following statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. And the only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

The oil and gas industry in Colorado has reported at least 5,188 spills from statewide operations over the last ten years to the Colorado Oil and Gas Conservation Commission. It is not a matter of if a spill will happen, but when a spill associated with drilling activity occurring up valley and upstream from the North Fork Valley will create long-term devastating effects on the soils, surface water and groundwater supporting this agricultural area.

**Conclusion:**

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley. Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP. This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

Thank you for your consideration,

Cory Obert
41218 Lamborn Mesa Rd / PO Box 927
970-527-5766
coryobert@tds.net

4

10/31/2016                DEPARTMENT OF THE INTERIOR Mail - North Fork Valley-Draft Resource Management Plan



**UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov>**

---

## North Fork Valley-Draft Resource Management Plan

1 message

---

**Dena** <hikerrus@yahoo.com>                                     Mon, Oct 31, 2016 at 10:22 AM
Reply-To: Dena <hikerrus@yahoo.com>
To: "uformp@blm.gov" <uformp@blm.gov>
Cc: "director@blm.gov" <director@blm.gov>, "rwelch@blm.gov" <rwelch@blm.gov>

To Whom It Concerns:

I would like to comment on the draft Resource Management Plan (RMP) for the North Fork Valley. Attached are my comments noting some inadequacies in the draft RMP.

Best Regards,
Dena Egenhoff

---

📄 **Comments regarding the Uncompahgre Field Office draft  RMP-DE.pdf**
151K

BLM_0147065

October 31, 2016

To: Dana Wilson, Acting Uncompahgre Field Manager

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

The RMP currently in effect was approved at least 26 years ago (1989/scoping began in 1983) and it in no way accounts for the socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley.  Unfortunately, this draft RMP is no better. It contains only cursory acknowledgement of the existence of this valley within the Uncompahgre Field Office planning area and has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and surrounding states. This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.

This valley has been formally identified through multiple means as a truly unique place:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c)  Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion.  http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado.

These accolades, awards and designations are presented here to make a point - - this valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation. Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

BLM_0147066

Additionally, this draft RMP has been written using the standard BLM RMP boilerplate/ template language. There is nothing boilerplate about the North Fork Valley. Its presence in the Uncompahgre planning area requires that effects to it from actions occurring in the BLM decision area must be thoroughly considered. This has not been done.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1)      **Chapter 1, Section 1.4 and Table 1.3:** This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley.

The NFAP was submitted in order to provide the BLM with information about the uniqueness and renowned agricultural productivity of the valley and supported the request to remove the BLM land surrounding this valley from any future leasing. However, the section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important and productive area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2)      **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3)      **Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis.  This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act, Section 101(b).

4)      **Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:**  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated*

2

*movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

5) **Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6) **Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

7) **Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership** (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

The North Fork Valley's traditional and organic farming, fruit and grape growing areas occur less than one mile, in many places, from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

8) **Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these

BLM_0147068

agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

**9)** **Chapter 4, Section 4.3.3 Water Resources:** The following statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. The only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley. Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP. This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Thank you for your consideration,

*Dena Egenhoff*

Dena Egenhoff
1308 Yount St.
Fort Collins, CO 80524
970-402-2906
hikerrus@yahoo.com

BLM_0147069

| | |
|---|---|
| **From:** | Kathryn Hmielowski |
| **To:** | uformp@blm.gov |
| **Subject:** | director@blm.gov, rwelch@blm.gov, rmpcomments@citizensforahealthycommunity.org |
| **Date:** | Friday, October 28, 2016 11:26:57 AM |

To: Dana Wilson, Acting Uncompahgre Field Manager

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

The RMP currently in effect was approved at least 26 years ago (1989/scoping began in 1983) and it in no way accounts for the socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley. Unfortunately, this draft RMP is no better. It contains only cursory acknowledgement of the existence of this valley within the Uncompahgre Field Office planning area and has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado, the resort towns surrounding the valley (Aspen, Telluride and Crested Butte) and surrounding states. This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.

This valley has been formally identified through multiple means as a truly unique place:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado.

These accolades, awards and designations are presented here to make a point - - this valley is recognized for its unique agriculture (it contains the highest concentration of

BLM_0147070

organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation. Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

Additionally, this draft RMP has been written using the standard BLM RMP boilerplate/template language. There is nothing boilerplate about the North Fork Valley. Its presence in the Uncompahgre planning area requires that effects to it from actions occurring in the BLM decision area must be thoroughly considered. This has not been done.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1)      **Chapter 1, Section 1.4 and Table 1.3:**  This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley.

The NFAP was submitted in order to provide the BLM with information about the uniqueness and renowned agricultural productivity of the valley and supported the request to remove the BLM land surrounding this valley from any future leasing. However, the section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important and productive area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2)      **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3)      **Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment

BLM_0147071

within the BLM planning area is missing from the fundamental underpinnings of the analysis. This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act, Section 101(b).

4)   **Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:**  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

5)   **Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not. Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6)   **Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

7)   **Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership** (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

The North Fork Valley's traditional and organic farming, fruit and grape growing areas occur less than one mile in many places from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

**8)     Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

**9)     Chapter 4, Section 4.3.3 Water Resources:** The following statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. And the only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley. Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP.

BLM_0147073

This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Thank you for your consideration,

Katie Hmielowski

719 E Hopkins Ave 103

617.697.4779

kathryn.hmielowski@gmail.com



**UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov>**

## Comments regarding the Uncompagre lease proposal
1 message

**Bruce Brunsdon** <brunz1@aol.com>                                     Thu, Oct 27, 2016 at 8:30 PM
To: uformp@blm.gov
Cc: director@blm.gov, rwelch@blm.gov, rmpcomments@citizensforahealthycommunity.org

---

 **Comments regarding the Uncompahgre Field Office draft RMP.pdf**
209K

BLM_0147075

To: Dana Wilson, Acting Uncompahgre Field Manager

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

The RMP currently in effect was approved at least 26 years ago (1989/scoping began in 1983) and it in no way accounts for the socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley. Unfortunately, this draft RMP is no better. It contains only cursory acknowledgement of the existence of this valley within the Uncompahgre Field Office planning area and has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and surrounding states. This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.

This valley has been formally identified through multiple means as a truly unique place:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France.
http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at
http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR
https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado.

These accolades, awards and designations are presented here to make a point - - this valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation. Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

Additionally, this draft RMP has been written using the standard BLM RMP boilerplate/template language. There is nothing boilerplate about the North Fork Valley. Its presence in the Uncompahgre planning area requires that effects to it from actions occurring in the BLM decision area must be thoroughly considered. This has not been done.

BLM_0147076

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1)      **Chapter 1, Section 1.4 and Table 1.3:** This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley.

The NFAP was submitted in order to provide the BLM with information about the uniqueness and renowned agricultural productivity of the valley and supported the request to remove the BLM land surrounding this valley from any future leasing. However, the section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important and productive area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2)      **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3)      **Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis.   This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act, Section 101(b).

4)      **Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:**  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

BLM_0147077

5)      **Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not. Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6)      **Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

7)      **Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership** (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

The North Fork Valley's traditional and organic farming, fruit and grape growing areas occur less than one mile, in many places, from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

8)      **Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

3

BLM_0147078

9)      **Chapter 4, Section 4.3.3 Water Resources:** The following statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. The only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley. Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP. This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Thank you for your consideration,

Elizabeth and Bruce Brunsdon
17 Yank Way, Lakewood, CO, 80228
720-271-1019
303-985-5817
Brunz1@aol.com

BLM_0147079

| From: | Dave Shishim |
|---|---|
| To: | uformp@blm.gov; director@blm.gov; rwelch@blm.gov |
| Cc: | rmpcomments@citizensforahealthycommunity.org |
| Subject: | Draft RMP |
| Date: | Wednesday, October 26, 2016 6:54:50 PM |

Dear BLM,

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

• The current Resource Management Plant currently in effect that was approved at least 26 years ago does not account for the many changes that have occurred since that time.
• The socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley have changed in importance and character and was not accounted for in the    current draft RMP.
• The draft RMP only contains a brief acknowledgement of the existence of the unique agriculture that occurs in the North Fork Valley.
• The Uncompahgre Field Office planning area in the RMP has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and to the resort towns surrounding the valley (Aspen, Telluride and Crested Butte) and surrounding states.
• This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.
This valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation that would harm these endeavors.

Evidence for the uniqueness of this valley:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/ This valley was also featured in the book At Mesa's Edge: Cooking and Ranching in Colorado's North Fork Valley https://www.amazon.com/At-Mesas-Edge-Ranching-Colorados/dp/0618221263

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado

e) The North Fork Valley has been featured in a number of articles by the New York Times including coverage of previous attempts to pursue drilling http://www.nytimes.com/2013/02/03/us/colorado-communities-take-on-fight-against-energy-land-leases.html?_r=0 and many other articles like this one: http://www.nytimes.com/2014/06/19/garden/he-found-his-corner-of-the-sky.html.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1) Chapter 1, Section 1.4 and Table 1.3:  This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley. The section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2) Chapter 1, Table 1-2, Step 7: By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3) Chapter 2, Section 2.2.3: The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis.  This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act Section 101(b).

4) Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

5) Chapter 3, Section 3.1.3 Geology and Soils: The following statement is included in this section; "There are no farmlands of national or statewide importance on BLM-administered lands within the planning area (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6) Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation: Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4,

Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

7) Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet: This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, regardless of land ownership (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2.

The North Fork Valley's organic and traditional farming, fruit growing and viticulture areas occur less than one mile in many places from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

8) Chapter 4, Section 4.3.2 Soils and Geology: Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

9) Chapter 4, Section 4.3.3 Water Resources: The following statement is made on page 4-84, "The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations." This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. And the only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Given the following statement made on page 4-84, "The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations," any such threat to the North Fork Valley cannot be allowed to occur. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

The oil and gas industry in Colorado has reported at least 5,188 spills from statewide operations over the last ten years to the Colorado Oil and Gas Conservation Commission. It is not a matter of if a spill will happen, but when this drilling activity will create long-term devastating effects on soils, surface water and groundwater to the agriculture of the North Fork Valley that sit downslope from this extraction activity.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley.  Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for

the revised RMP.  This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

Thank you for your consideration,

Dave Shishim
40001 Cedar Drive
Paonia, CO 81428
daveshishim@tds.net
970-527-3009

BLM_0147083

| | |
|---|---|
| **From:** | meerdog@tds.net |
| **To:** | uformp@blm.gov |
| **Cc:** | director@blm.gov; rwelch@blm.gov; rmpcomments@citizensforahealthycommunity.org |
| **Subject:** | Draft RMP |
| **Date:** | Wednesday, October 26, 2016 6:49:31 PM |

Dear BLM,

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

• The current Resource Management Plant currently in effect that was approved at least 26 years ago does not account for the many changes that have occurred since that time.
• The socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley have changed in importance and character and was not accounted for in the    current draft RMP.
• The draft RMP only contains a brief acknowledgement of the existence of the unique agriculture that occurs in the North Fork Valley.
• The Uncompahgre Field Office planning area in the RMP has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and to the resort towns surrounding the valley (Aspen, Telluride and Crested Butte) and surrounding states.
• This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.
This valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation that would harm these endeavors.

Evidence for the uniqueness of this valley:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/ This valley was also featured in the book At Mesa's Edge: Cooking and Ranching in Colorado's North Fork Valley https://www.amazon.com/At-Mesas-Edge-Ranching-Colorados/dp/0618221263

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion.  http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado

e) The North Fork Valley has been featured in a number of articles by the New York Times including coverage of previous attempts to pursue drilling http://www.nytimes.com/2013/02/03/us/colorado-communities-take-on-fight-against-energy-land-leases.html?_r=0 and many other articles like this one: http://www.nytimes.com/2014/06/19/garden/he-found-his-corner-of-the-sky.html.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1) Chapter 1, Section 1.4 and Table 1.3:  This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley. The section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2) Chapter 1, Table 1-2, Step 7: By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3) Chapter 2, Section 2.2.3: The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis.  This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act Section 101(b).

4) Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

5) Chapter 3, Section 3.1.3 Geology and Soils: The following statement is included in this section; "There are no farmlands of national or statewide importance on BLM-administered lands within the planning area (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6) Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation: Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4,

Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment
and 40 CFR 1508.8; Effects.

7) Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet: This bullet asserts that "Direct and
indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously
flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands
underlain by federal fluid mineral estate have the potential to seriously impact the people (and their
livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, regardless of
land ownership (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-
Escalante NCA" and is depicted on Figure 1-1. Whereas "decision area lands" are limited to public lands
and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral
estate managed by the BLM is depicted on Figure 1-2.

The North Fork Valley's organic and traditional farming, fruit growing and viticulture areas occur less
than one mile in many places from the BLM decision area boundary (but within the Uncompahgre
planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia,
Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's
preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly
impacted by gas activity occurring on the adjacent or contiguous decision area land.

8) Chapter 4, Section 4.3.2 Soils and Geology: Because Chapter 3, Section 3.1.3 dismisses the need for
identifying and describing irrigated and prime irrigated lands occurring within the planning area, this
Section is completely silent on the environmental consequences of federal actions on these agriculturally
significant lands. This is a serious omission which only further reinforces the fact that the BLM did not
take the environment actually in existence in the planning area into consideration which violates 40 CFR
1502.15 of the CEQ regulations.

9) Chapter 4, Section 4.3.3 Water Resources: The following statement is made on page 4-84, "The
organic farming industry relies on clean water for agricultural production. Contamination of irrigation
waters could affect the ability of local organic farms to maintain their designations." This is the only
mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley
cannot be allowed to ever occur. And the only way to prevent it is to close the entire area within the
NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the
existing land uses currently occurring in this valley.

Given the following statement made on page 4-84, "The organic farming industry relies on clean water
for agricultural production. Contamination of irrigation waters could affect the ability of local organic
farms to maintain their designations," any such threat to the North Fork Valley cannot be allowed to
occur. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in
this valley.

The oil and gas industry in Colorado has reported at least 5,188 spills from statewide operations over
the last ten years to the Colorado Oil and Gas Conservation Commission. It is not a matter of if a spill
will happen, but when this drilling activity will create long-term devastating effects on soils, surface
water and groundwater to the agriculture of the North Fork Valley that sit downslope from this
extraction activity.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity
could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit
some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas
resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of
producing natural gas would result in unacceptable and irreversible impacts on the environment in the
North Fork Valley.  Therefore, the leasing of any federal fluid minerals within the borders of the NFAP
should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for

the revised RMP.  This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

Thank you for your consideration,

Margaret L. Shishim
40001 Cedar Drive
Paonia, CO 81428
meerdog@tds.net
970-527-3009

BLM_0147087

| | |
|---|---|
| **From:** | Britnee Taylor Starnes |
| **To:** | uformp@blm.gov |
| **Cc:** | director@blm.gov; rwelch@blm.gov; rmpcomments@citizensforahealthycommunity.org |
| **Subject:** | Comments regarding the Uncompahgre Field Office draft RMP |
| **Date:** | Wednesday, October 26, 2016 12:41:22 PM |
| **Attachments:** | Comments regarding the Uncompahgre Field Office draft RMP.doc |

10/27/2016                    DEPARTMENT OF THE INTERIOR Mail - Comments regarding the Uncompahge Field Office RMP



**UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov>**

## Comments regarding the Uncompahge Field Office RMP
1 message

**Erin Young** <eyoung@aspenclub.com>                              Wed, Oct 26, 2016 at 11:09 AM
To: uformp@blm.gov
Cc: director@blm.gov, rwelch@blm.gov, rmpcomments@citizensforahealthycommunity.org

Please see attached letter for my comments.
Best,
Erin

--

**Erin Young, ATC**
**The Aspen Club**
*Executive Coordinator*
Tel: (970) 925.8900
www.aspenclub.com



📄 **Comments regarding the Uncompahgre Field Office .doc**
    46K

BLM_0147089

To: Dana Wilson, Acting Uncompahgre Field Manager

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

The RMP currently in effect was approved at least 26 years ago (1989/scoping began in 1983) and it in no way accounts for the socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley. Unfortunately, this draft RMP is no better. It contains only cursory acknowledgement of the existence of this valley within the Uncompahgre Field Office planning area and has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado, the resort towns surrounding the valley (Aspen, Telluride and Crested Butte) and surrounding states. This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.

This valley has been formally identified through multiple means as a truly unique place:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado.

These accolades, awards and designations are presented here to make a point - - this valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation. Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

Additionally, this draft RMP has been written using the standard BLM RMP boilerplate/template language. There is nothing boilerplate about the North Fork Valley. Its presence in the Uncompahgre planning area requires that effects to it from actions occurring in the BLM decision area must be thoroughly considered. This has not been done.

1

BLM_0147090

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1)   **Chapter 1, Section 1.4 and Table 1.3:** This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley.

The NFAP was submitted in order to provide the BLM with information about the uniqueness and renowned agricultural productivity of the valley and supported the request to remove the BLM land surrounding this valley from any future leasing. However, the section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important and productive area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2)   **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3)   **Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis.  This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act, Section 101(b).

4)   **Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:**  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

2

5)      **Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not. Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6)      **Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

7)      **Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership** (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

The North Fork Valley's traditional and organic farming, fruit and grape growing areas occur less than one mile in many places from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

8)      **Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

BLM_0147092

9)      **Chapter 4, Section 4.3.3 Water Resources:** The following statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. And the only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley.  Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP.  This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Thank you for your consideration,

Erin Young
PO Box 8735 Aspen, CO 81611
530.574.2501
ecyoung211@gmail.com

BLM_0147093

| | |
|---|---|
| **From:** | Teresa Shishim |
| **To:** | uformrmp@blm.gov |
| **Cc:** | director@blm.gov; rwelch@blm.gov |
| **Subject:** | Comments for the Uncompahgre Field Office Draft RMP |
| **Date:** | Wednesday, October 26, 2016 4:18:53 AM |

October 25, 2016

BUREAU OF LAND MANAGEMENT

Uncompahgre Field Office

2465 South Townsend Avenue

Montrose, Colorado 81401

To Whom It May Concern:

Thank you for the opportunity to comment on the Draft Resource Management Plan from the Uncompahgre Field Office (draft RMP). I am so fortunate to live in the North Fork Valley and as our economy shifts from a coal producing region to an agri-tourism destination, I am extremely concerned with how the public lands surrounding my home are managed. I see an incredible opportunity for the growth of tourism in the valley, but in order for this to happen, our water sources should remain protected, our landscape unmarred, and our roads free from heavy truck traffic.

I support the protections outlined in Alternative B1 as those that provide the strongest protection (of any alternative in the draft RMP/EIS) for the important features of the North Fork Valley that dovetail with management on the adjacent and proximate public lands. ***Only B1 provides the level and type of protections that the resources and public land values of the North Fork warrant.***

The North Fork Valley contains the highest concentration of organic farms, vineyards and orchards in Colorado and as recreation, art and agribusiness opportunities burgeon, we need protection from gas leasing that would threaten these industries.

The North Fork Valley has recognized resources:

a) It has been described as "**An American Provence**" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/ This valley was also featured in the book **At Mesa's Edge: Cooking and**

**Ranching in Colorado's North Fork Valley** https://www.amazon.com/At-Mesas-Edge-Ranching-Colorados/dp/0618221263

b) This valley was designated by the state of Colorado as **a Colorado Certified Creative District** in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

d) It has also been **designated as an American Viticulture Area** by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado

e) It has been featured in a number of articles by the New York Times including coverage of previous attempts to pursue drilling http://www.nytimes.com/2013/02/03/us/colorado-communities-take-on-fight-against-energy-land-leases.html?_r=0 and many other articles like this one: http://www.nytimes.com/2014/06/19/garden/he-found-his-corner-of-the-sky.html.

I just had the pleasure of working to complete a water quality report from volunteer sampling efforts in the region. Water quality samples collected indicate that the *North Fork Gunnison River has excellent to good water quality* in the upper watershed and *excellent to moderate water quality in the lower watershed* (the Volunteer Water Quality Monitoring Network April 2001 – April 2014 Data Report is to be released in 2016). I am concerned that leasing our land for energy development will negatively affect our water quality.

The oil and gas industry in Colorado has reported *at least 5,188 spills from statewide operations over the last ten years to the Colorado Oil and Gas Conservation Commission.* **Spills happen**, creating long-term devastating effects on soils, surface water and groundwater. Please don't let this happen to the agriculture of the North Fork Valley downslope from this potential extraction activity.

Given the following statement made in Chapter 4, Section 4.3.3 Water Resources on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations,*" we should protect our resources as much as possible and Alternative B1 is the only proposed alternative that comes close. Oil and gas drilling is just incompatible with the existing land uses currently occurring in this valley.

In addition to these important water considerations, I am worried that leasing lands for drilling would negatively impact recreational opportunities for our region. My

BLM_0147095

husband owns and operates Shish Kabikes, the local bicycle repair shop. ***Recreation in the North Fork significantly contributes to our family's lively-hood***. It is obvious from the amount of customers he had this year versus last year that mountain biking, road biking, and touring are increasing and *the North Fork Valley is rapidly becoming a recreation destination*.

Jumbo Mountain deserves designation as a Special Recreation Management Area (SRMA). Management should prioritize dispersed, trail-based activity, day-use opportunities, outdoor education, and maintaining the area's natural appearance. Jumbo Mountain sits prominently within the valley, and the visual resources of the BLM parcels on Jumbo are significant to the quality of life in the entire valley.

Jumbo Mountain is not the only area on North Fork BLM lands likely to need special attention to better direct recreation activity, especially during the life of the RMP. BLM should anticipate this eventuality, and consider Extensive Recreation Management Areas (ERMAs) for places such as Elephant Hill, Lone Cabin, McDonald Mesa/Creek, and C Hill—all of which are seeing increasing, but undirected use.

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

There is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. The land use activity of producing natural gas would result in irreversible impacts on the environment in the North Fork Valley. Please minimize these impacts by implementing Alternative B1. This, aside from not leasing at all, is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Gas exploration and development is not compatible with the economic culture of this valley and its presence threatens our valley's highly regarded reputation as an organic agricultural area. Only Alternative B1 meets the needs of our valley.

Thank you for your consideration,

Teresa Shishim

BLM_0147096

40847 O Road

Paonia, CO 81248

(970) 317-1868

teresashishim@gmail.com

BLM_0147097

Parsed

| | |
|---|---|
| **From:** | Jonathan B Ratner |
| **To:** | uformp@blm.gov |
| **Subject:** | DEIS Comments |
| **Date:** | Tuesday, October 25, 2016 2:16:10 AM |
| **Attachments:** | Exerpt from Winnemucca RMP protest RE bighorn sheep .docx |
| | BLM - CO - Uncompahgre RMP Comments.pdf |
| | RMBS North Delta Final EA and FONSI Protest 071516 Final.pdf |
| | 2 - Exhibit A - Pages from BLM RMP Pianning Handbook.pdf |
| | 6 - Exhibit E - BLM Manual 7200 Water Resource Managment.pdf |
| | 3 - Exhibit B - DOI Manual 520 DM 1 Wetlands and Floodplain.pdf |
| | 4 - Exhibit C - BLM Manual 1737 Riparian - Wetland Management.pdf |
| | 5 - Exhibit D - BLM 6720 Aquatic Resource Management.pdf |
| | 45d - Prineville BLM - Grazing Matrix Table.pdf |
| | 45a - Prineville BLM - Alternatives Grazing Comparison Chart.pdf |
| | 45b - Prineville BLM - Grazing Guidelines - Allotment Evaluations.pdf |
| | 45c - Prineville BLM - Grazing Matrix Memo.doc |
| | 82 - Carter WyomingBLMRangeRecommendations.pdf |
| | 92 - A Science-Based Tool for Assessing Grazing Capacity Catlin et al.pdf |

Jonathan B Ratner
WWP – Wyoming Office
PO Box 1160
Pinedale, WY 82941
Tel: 877-746-3628
Fax: 208-4754702

BLM_0147098



**UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov>**

---

## Preserve Paonia CO
1 message

---

**Patti Duke** <pattidukerealtor@msn.com>                                    Mon, Oct 24, 2016 at 6:01 PM
To: "uformp@blm.gov" <uformp@blm.gov>
Cc: "uformp@blm.gov" <uformp@blm.gov>, "director@blm.gov" <director@blm.gov>, "rwelch@blm.gov" <rwelch@blm.gov>,
"rmpcomments@citizensforahealthycommunity.org" <rmpcomments@citizensforahealthycommunity.org>

---

Thank you for reading.


Patti Duke

Associate Broker

Idaho Mountain Real Estate

---

📄 **Paonia.docx**
24K

BLM_0147099

To: Dana Wilson, Acting Uncompahgre Field Manager

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP). This Valley is very unique and deserves to keep its designations and preserve its integrity.

The RMP currently in effect was approved at least 26 years ago (1989/scoping began in 1983) and it in no way accounts for the socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley. Unfortunately, this draft RMP is no better. It contains only cursory acknowledgement of the existence of this valley within the Uncompahgre Field Office planning area and has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and surrounding states. This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.

This valley has been formally identified through multiple means as a truly unique place:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France.
http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at
http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR
https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado.

These accolades, awards and designations are presented here to make a point - - this valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation. Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

Additionally, this draft RMP has been written using the standard BLM RMP boilerplate/ template language. There is nothing boilerplate about the North Fork Valley. Its presence in the

BLM_0147100

Uncompahgre planning area requires that effects to it from actions occurring in the BLM decision area must be thoroughly considered. This has not been done.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1)      **Chapter 1, Section 1.4 and Table 1.3:**  This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley.

The NFAP was submitted in order to provide the BLM with information about the uniqueness and renowned agricultural productivity of the valley and supported the request to remove the BLM land surrounding this valley from any future leasing. However, the section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important and productive area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2)      **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3)      **Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis.  This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act, Section 101(b).

4)      **Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:**  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors –* does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant

2

BLM_0147101

geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

5)      **Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncomphagre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

         Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncomphagre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6)      **Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

7)      **Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

         "Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership** (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

         The North Fork Valley's traditional and organic farming, fruit and grape growing areas occur less than one mile, in many places, from the BLM decision area boundary (but within the Uncomphagre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

8)      **Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the

BLM did not take the environment actually in existence in the planning area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

**9)**      **Chapter 4, Section 4.3.3 Water Resources:** The following statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. The only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Conclusion:

        The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

        Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley.  Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP.  This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Thank you for your consideration,

Patti Duke
2035 Briarwood Dr. Hailey ID 83333 and visitor to Paonia and hopeful retiree to the area.

BLM_0147103



**UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov>**

---

## Comments on the Uncompahgre Field Office draft RMP

1 message

---

**paige** <paige@greenhousegarden.com>                          Mon, Oct 24, 2016 at 1:22 PM
To: uformp@blm.gov, director@blm.gov, rwelch@blm.gov, rmpcomments@citizensforahealthycommunity.org

Please enter the attached comments into the public record.

Thank you,

Paige Smith

---

📄 **Paige Smith comments on the BLM Uncompahgre draft RMP.docx**
33K

BLM_0147104

To: Project Manager, Uncompahgre RMP

I have reviewed the BLM's draft Resource Management Plan (draft RMP) for the Uncompahgre Field Office and must again reiterate the comment I made in my letter dated February 6, 2012, to your office regarding the BLM's proposal to lease 22 parcels for oil and gas development surrounding the North Fork Valley. In that letter, I noted that the RMP in effect in 2012 (and still in effect) had been approved 23 years earlier and it in no way accounted for the socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley.

Unfortunately, this current draft is no better. It contains only cursory acknowledgement of the existence of this valley within the Uncompahgre Field Office planning area and has not adequately or appropriately described what makes it of such unique agricultural importance to all of Colorado and surrounding states. This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.

This valley has been formally identified through multiple means as a truly unique place:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion.  http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado.

The North Fork Valley contains the highest concentration of organic farms, orchards and vineyards in Colorado and provides wine, fruit, fruit juices, produce, meat and dairy products to consumers throughout Colorado and surrounding states.

I describe all of these accolades, awards and designations to make a point - - this valley is recognized for its unique agriculture, local business, art, agribusiness, agritourism, recreation and tourism industries and deserves protection from any threat of environmental degradation. Gas

BLM_0147105

exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten the highly regarded reputation as an organic agricultural area.

This draft RMP has been written using the standard BLM RMP boilerplate/template language. There is nothing boilerplate about the North Fork Valley and its presence in the Uncompahgre planning area requires that effects to it from actions occurring in the BLM decision area must be considered. The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

An example of how this draft RMP has completely omitted any meaningful discussion about the "affected environment" is demonstrated by the fact that there is absolutely no reference to "organic farm" or "organic agriculture" in Chapters 1 or 3. A reference to "organic farm" is found on Pages 2-31 and 2-199 in Chapter 2, but both references are specifically limited to a reiteration of some of the provision of the North Fork Alternative Plan (NFAP)/Alternative B.1. Chapter 4 only contains two references to "organic farm." The first is found on page 4-69 and again is only presented to reiterate a provision in Alternative B.1. The second reference to "organic farming" is the only meaningful reference in the entire RMP. This is found on page 4-84 where the threat to an organic operation's designation as "organic" could be in jeopardy if water being used to irrigate the crops on that operation are contaminated by a gas field spill; a serious potential consequence that should never be allowed to occur.

In the following comments, I would like to point out where the analysis in this draft RMP has not adequately addressed truly significant issues.

A. Chapter 1, Introduction

1. Section 1.4 and Table 1.3:

This section fails to appropriately and adequately acknowledge and discuss the NFAP presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley. This Alternative was submitted in order to provide the BLM with information about the uniqueness and renowned agricultural productivity of the valley and supported the request to remove much of the BLM land surrounding this valley from any future leasing. However, the section summarizing the scoping comments received does not include this important scoping submittal.

The subject of addressing potential impacts to an area with the highest concentration of irrigated organic and traditional farms, orchards and vineyards in Colorado has not been included and certainly isn't represented by BLM boiler plate subjects and broad terms such as, "soil, air, and water resources, special management areas, vegetation (including riparian and wetland areas and noxious weeds), fish and wildlife, special status species, drought management and climate change."

2

Any meaningful reference to this agriculturally important and productive area is missing throughout the remainder of the draft RMP.  This absence of acknowledgment of the North Fork Valley's unique qualities is in direct conflict with Section 1500.1(b) of the Council on Environmental Quality (CEQ) regulations which states that "NEPA documents must concentrate on the **issues that are truly significant to the action in question**, rather than amassing needless detail."

The numerous local governmental entities, private citizens and business leaders in the North Fork Valley that supported the NFAP is unprecedented nationally and to neglect to include this in the scoping section ignores the most basic of NEPA policy and has created a situation where this area has not be adequately identified or described as a part of the human environment. Therefore, the NEPA process has not been appropriately used to identify and assess the reasonable alternatives to proposed actions to **avoid** or minimize adverse effects of these actions upon the quality of the human environment," as required by CEQ regulation 1500.2(e)). In addition, by not appropriately describing the North Fork Valley and potential negative environmental effects to it as a "planning issue," this RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues," (Table 1-2, Step 7).

B. Chapter 2 Alternatives

1.  Section 2.2.3:

The reference to the "six planning issues" (Section 1.4 and Table 1.3) of the draft RMP which provided guidance for the development of the four action alternatives has created a situation where the significance of potential impact to the human and natural environment within the BLM planning area has not been adequately addressed in the fundamental underpinnings of the analysis.

This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act Section 101(b).  In addition, by not appropriately describing the North Fork Valley and potential negative environmental effects to it as a "planning issue," this RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues," (Table 1-2, Step 7).

The Uncompahgre BLM Office has created this draft RMP as if management decisions and the preferred alternative are not potentially impacting an incredibly unique part of Colorado and the Intermountain West. Consequently, the use of the standard BLM 'template' for creating RMPs as the basis for this document, including the identification of the affected environment and consequences to the affected environment, are wholly inadequate with respect to the North Fork Valley.

2. Table 2-1 and Appendix D, Ecologic Emphasis Areas:

BLM_0147107

The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

3. Table 2-2, page 2-28 Soils and Water Resources:

The water goal under this section presents generic references to streams, water quality, watershed function and public uses. This description should include the use of water for irrigation purposes and that public use is not limited to the standard uses of human (public and private water supply) and livestock consumption, fishing and recreation and should acknowledge and describe the water's use for agricultural production. This omission results in the comparison of alternatives on this topic to completely ignore the effects of each alternative on the existing land uses within the North Fork Valley that would be variably impacted/protected by the provisions in each alternative. A token reference on page 2-31 to *Agricultural operations* as identified in the NFAP does not constitute the "hard look" required by NEPA.

4. Table 2-2, page 2-49 Vegetation – General and Uplands:

The Field Office Planning area clearly encompasses portions of the North Fork Valley that are planted in non-native, agricultural crops. However, this Table does not mention non-native vegetation within any alternative. This omission in identifying and analyzing the effects on this portion of the affected environment must be corrected.

5. Table 2-6, page 2- 429, Socioeconomics:

This entry in Table 2-6 should include a discussion within Alternatives A, C and D as to the effect on the economic contributions and quality of life associated with local agricultural operations (North Fork Valley) that would be attributable to each of these three alternatives.

In addition, the following statement is made on the last page of this Chapter (page 2-430); "Additionally, as discussed in Chapter 4, Section 4.6.3, Socioeconomics, *Nature and Type of Effects*, agriculture is of local economic importance for farms and agritourism; therefore, maintaining water quality would protect these economic sectors from potential development impacts." This is another token reference to agriculture and surprisingly isn't included and compared in the Soils and Water Resource section of this table, or any other appropriate section.

C. Chapter 3 Affected Environment

1. Section 3.1.3 Geology and Soils:

On page 3-22 of this Section, the BLM has included a discussion titled - *Prime or Unique Farmlands and Residential Development*. This subsection states that "Four categories of farmlands are federally regulated by the USDA under the Farmland Protection Policy Act: (1) Prime farmlands,

4

BLM_0147108

(2) Unique farmlands, (3) Farmlands of statewide importance, and (4) Farmlands of local importance. Impacts from federal actions on BLM-administered lands to farmlands identified as prime or unique are required to be analyzed and disclosed to the public during development of an RMP/EIS."

The last sentence shown directly above indicates that if federal actions occurring on BLM-administered lands impact farmlands identified as prime or unique, these impacts must be analyzed and disclosed to the public during the development of this very document under review.

However, the next paragraph in this section states that "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area**. However, according to a report by the Soil Conservation Service, irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins (Soil Conservation Service1980)." The sentence regarding the requirement to analyze and disclose impacts to farmland identified as prime or unique does not limit this analysis to those prime or unique farmlands that exist **on** BLM-administered lands. Instead, it is indicated that this analysis is required for impacts to prime or unique farmlands resulting from federal actions taking place on BLM-administered lands. Therefore, the impacts to identified irrigated and prime irrigated lands occurring in the drainage basins listed in the next sentence (occurring within the Uncompahgre Field Office planning area) of Section 3.1.3 must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands.

In addition, discussion regarding "residential development" which is included in the title of this subsection is not included and the *Soil Conservation Service 1980* document cited in this section is not included in the "References" appendix. Please include.

2. Section 3.1.5, Vegetation and Chapter 4, Section 4.3.4 Vegetation

Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

3. Section 3.4.2 Public Health and Safety.

This section fails to mention the potential threat from pipeline and compressor explosions or explosions that can occur at a well site.

Chapter 4, Environmental Consequences

1. Section 4.1.1 Analytical Assumption, fourth bullet:

This discussion of reasonable foreseeable development and the number of wells that could be developed should be revised to indicate whether this analysis is assuming that these natural gas wells

5

BLM_0147109

will be developed using directional drilling, hydraulic fracturing completion methodologies and multiple wells per pad. In addition, this section should include an estimate of how many well pads, miles of pipeline and amount of compression that is estimated to be required in order to support this level of drilling. Each of these factors can have a much higher environmental impact to air quality, water quality and water quantity as compared to conventional vertical drilling using a single well per pad.

2. Section 4.1.1 Analytical Assumption, fifth bullet,

"Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption in that many of the direct and indirect impacts of implementing the RMP have the potential to seriously impact the people and their livelihoods living in the North Fork Valley encompassed by the Uncompahgre BLM Field Office planning area. "Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, regardless of land ownership, except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA, whereas "decision area lands" are limited to public lands and federal mineral estate managed by the United States Department of the Interior, Bureau of Land Management. This is an important distinction that must be clearly identified throughout this Chapter, but is not.

The North Fork Valley's unique economy and community is in large part the result of the vast extent of organic and traditional farming, fruit growing and viticulture occurring less than one mile, in many places, from the BLM decision area boundary. This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing if the BLM adopts any alternative other than B1. The assumption provided in the fifth bullet should be eliminated and this Chapter re-written to acknowledge the environmental consequences on this geographic area and the people living in it located within the planning area.

3. Air Quality

A previously published BLM final EIS for the Bull Mountain Unit indicated that there will be an increase in formaldehyde that will be emitted from 3 newly proposed 3,185 horsepower, diesel powered compressor engines. It was also noted that the addition of 3 large compressor engines was not brought to the BLM's attention by SG Interests in time for this increase to be modeled for this area and reported in the Final Bull Mountain EIS. However, previous modeling without considering the three new compressor engines had modeled an exceedance of the allowable level of formaldehyde in the Bull Mountain area. As stated on page 4-48 of the Bull Mountain EIS, maximum modeled formaldehyde concentration from compression emissions which is at 81.6 µg/m is above the short-term REL threshold of 55 µg/m. This is troubling since the modeling did not include the large increase in formaldehyde (a known cancer causing compound) emissions which will be emitted by the new compressor engines.

The air modeling reported in this draft RMP has indicated an exceedance of the 70ppb ozone threshold in the Uncompahgre planning for every oil and gas scenario being contemplated.

6

BLM_0147110

The predicted presence of elevated formaldehyde and ozone is of concern because the North Fork Valley is a geographic area well known to experience inversions during the winter months. The state of Wyoming experienced unprecedented occurrences of wintertime ozone exceedances in the Upper Green River Basin; an area with heavy gas development which is also prone to wintertime inversions as well. The Green River Basin was declared to be in nonattainment because of these ozone exceedances.

These potential threats to public health (and in the absence of any air monitoring in-place to be used to alert the public to hazardous air conditions) for people living in the North Fork Valley makes it imperative that there is no further leasing in the entire region encompassed by the NFAP.

4. Section 4.3.2 Soils and Geology.

Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the perspective that the BLM did not take the environment actually in existence in the Planning Area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

4. Section 4.3.3 Water Resources, page 4-83

The following information is provided explaining the risks associated with fluid mineral leasing and development:

*Lands that are open for fluid minerals leasing have the potential for future health and safety risks related to oil, gas, and geothermal exploration, development, operation, and decommissioning. The number of acres open for leasing is proportional to the potential for long-term direct health and safety impacts. Use, storage, and transportation of fluids, such as produced water, hydraulic fracturing fluids, and condensate, have the possibility of spills that could migrate to surface or groundwater, causing human health impacts.*

*The US Environmental Protection Agency (EPA) is studying the potential for hydraulic fracturing to contaminate shallow groundwater sources, but no scientific consensus has been reached to date (EPA 2012c). Hydraulic fracturing occurs in the gas-producing formations at depths greater than 5,000 feet. Water, sand, and chemical additives are pumped into the formation at extremely high pressure to create fractures that allow gas to flow into the well. Theoretically, improperly completed wells or perforations into zones of geological weakness (i.e., faults or fractures) could create conduits that allow hydrofracturing fluids, produced water, and methane to migrate to groundwater resources. If a groundwater source is contaminated, there are few cost-effective ways to reclaim that water; thus, the long-term impacts of groundwater contamination are considerable.*

Each of these potential consequences are well known, often observed (i.e., the oil and gas industry in CO has reported at least 5,188 spills from statewide operations over the last ten years to

7

the Colorado Oil and Gas Conservation Commission) and can have long-term devastating effects on soils, surface water and groundwater.

Given the following statement made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations,*" such threats to the North Fork Valley cannot be allowed to occur. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impacts on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley. Therefore, in this situation, the BLM should prohibit the leasing of any further federal fluid minerals within the borders of the NFAP and incorporate this prohibition on further leasing into the alternative chosen for the revised RMP. This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Thank you for your consideration,

Paige Smith
215 Delta Ave.
Paonia, CO 81428
307-631-4544
paige@greenhousegarden.com

BLM_0147112

11/1/2016                           DEPARTMENT OF THE INTERIOR Mail - Uncompahgre Field Office's draft Resource Management Plan



**UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov>**

## Uncompahgre Field Office's draft Resource Management Plan
1 message

**Marion Yoder** <myoder@windowslive.com>                            Mon, Oct 24, 2016 at 12:06 PM
To: "uformp@blm.gov" <uformp@blm.gov>
Cc: "rwelch@blm.gov" <rwelch@blm.gov>, "director@blm.gov" <director@blm.gov>

Please consider my comments to the above draft Plan, attached.


Sincerely,


Marion Yoder

317 West 5th Avenue

Cheyenne, WY  82001

---

📄 **Comments regarding the Uncompahgre Field Office draft RMP.docx**
24K

BLM_0147113

To: Dana Wilson, Acting Uncompahgre Field Manager

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

The RMP currently in effect was approved at least 26 years ago (1989/scoping began in 1983) and it in no way accounts for the socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley. Unfortunately, this draft RMP is no better. It contains only cursory acknowledgement of the existence of this valley within the Uncompahgre Field Office planning area and has not adequately or appropriately described what makes it of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and surrounding states. This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by 40 CFR 1502.15.

This valley has been formally identified through multiple means as a truly unique place:

a) It has been described as "An American Provence" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/

b) This valley was designated by the state of Colorado as a Colorado Certified Creative District in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

d) The North Fork Valley has also been designated as an American Viticulture Area by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado.

These accolades, awards and designations are presented here to make a point - - this valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation. Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

Additionally, this draft RMP has been written using the standard BLM RMP boilerplate/ template language. There is nothing boilerplate about the North Fork Valley. Its presence in the Uncompahgre planning area requires that effects to it from actions occurring in the BLM decision area must be thoroughly considered. This has not been done.

1

BLM_0147114

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1)      **Chapter 1, Section 1.4 and Table 1.3:**  This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley.

The NFAP was submitted in order to provide the BLM with information about the uniqueness and renowned agricultural productivity of the valley and supported the request to remove the BLM land surrounding this valley from any future leasing. However, the section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important and productive area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2)      **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3)      **Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis.  This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act, Section 101(b).

4)      **Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:**  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

BLM_0147115

5)      **Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6)      **Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

7)      **Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership** (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

The North Fork Valley's traditional and organic farming, fruit and grape growing areas occur less than one mile, in many places, from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

8)      **Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

BLM_0147116

**9)     Chapter 4, Section 4.3.3 Water Resources:** The following statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. The only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley.  Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP.  This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Thank you for your consideration,


Marion Yoder
317 West 5th Avenue
Cheyenne, WY 82001
307 514-3455
myoder@windowslive.com

4



**UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov>**

---

# RMP Comments - North Fork Valley
1 message

---

**Andrea Lecos** <adlecos@gmail.com>                    Mon, Oct 24, 2016 at 10:19 AM
To: uformp@blm.gov
Cc: rwelch@blm.gov, rmpcomments@citizensforahealthycommunity.org

Hello,

**Attached** are my comments regarding the RMP for Oil & Gas in the North Fork Valley BLM region. **Please send me a delivery receipt or notification for this letter.**

Sincerely,
**Andrea Lecos**

---

 **Comments on the BLM Uncomphagre draft RMP.doc**
45K

BLM_0147118

BLM
Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

- The current Resource Management Plan currently in effect was approved at least 26 years ago and did not account for the many changes that have occurred since that time.

- The socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley have changed in importance and character and unfortunately have not been accounted for in the current draft RMP either.

- The draft RMP only contains a brief acknowledgement of the existence of the unique agriculture that occurs in the North Fork Valle and has not adequately or appropriately described what makes the North Fork Valley of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and surrounding states.

- This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by **40 CFR 1502.15**.

**This valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation that would harm these endeavors.**

**Evidence for the uniqueness of this valley:**

a) It has been described as "**An American Provence**" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/ This valley was also featured in the book **At Mesa's Edge: Cooking and Ranching in Colorado's North Fork Valley** https://www.amazon.com/At-Mesas-Edge-Ranching-Colorados/dp/0618221263

b) This valley was designated by the state of Colorado as **a Colorado Certified Creative District** in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently **awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade**. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

1

d) The North Fork Valley has also been **designated as an American Viticulture Area** by the U.S. government. This designation was officially adopted in 2001 and codified at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing region having distinguishing features as established in Federal regulation and a name and delineated boundary. This is only one of two such designated areas in Colorado

e) The North Fork Valley has been featured in a number of articles by the New York Times including coverage of previous attempts to pursue drilling http://www.nytimes.com/2013/02/03/us/colorado-communities-take-on-fight-against-energy-land-leases.html?_r=0 and many other articles like this one: http://www.nytimes.com/2014/06/19/garden/he-found-his-corner-of-the-sky.html.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation **40 CFR 1610.4-6**: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1)    **Chapter 1, Section 1.4 and Table 1.3:** This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley. The section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at **40 CFR 1501.7(a)(2)** which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2)    **Chapter 1, Table 1-2, Step 7:** By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3)    **Chapter 2, Section 2.2.3:** The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis. This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by **CEQ regulations (40 CFR 1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6))** or the **National Environmental Policy Act, Section 101(b)**.

2

BLM_0147120

4)   **Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:**  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - *unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors* – does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

5)   **Chapter 3, Section 3.1.3 Geology and Soils:** The following statement is included in this section; "There are no farmlands of national or statewide importance **on BLM-administered lands within the planning area** (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6)   **Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation:** Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates **CEQ regulations at 40 CFR 1502.15**; Affected Environment and **40 CFR 1508.8**; Effects.

7)   **Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet:** This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, **regardless of land ownership** (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

The North Fork Valley's organic and traditional farming, fruit growing and viticulture areas occur less than one mile, in many places, from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

BLM_0147121

8)   **Chapter 4, Section 4.3.2 Soils and Geology:** Because Chapter 3, Section 3.1.3 dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates **40 CFR 1502.15 of the CEQ** regulations.

9)   **Chapter 4, Section 4.3.3 Water Resources:** The following statement is made on page 4-84, "*The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations.*" This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. And the only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

The oil and gas industry in Colorado has reported at least 5,188 spills from statewide operations over the last ten years to the Colorado Oil and Gas Conservation Commission. It is not a matter of if a spill will happen, but when a spill associated with drilling activity occurring up valley and upstream from the North Fork Valley will create long-term devastating effects on the soils, surface water and groundwater supporting this agricultural area.

**Conclusion:**

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley. Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP. This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Gas exploration and development is not compatible with the economic culture of this valley and in fact, its very presence would threaten its highly regarded reputation as an organic agricultural area.

Thank you for your consideration,

Andrea Lecos
PO Box 927 / 41218 Lamborn Mesa Rd.
970-527-5766
adlecos@gmail.com

BLM_0147122

| | |
|---|---|
| **From:** | Megan Kiatta |
| **To:** | uformp@blm.gov |
| **Subject:** | director@blm.gov; rwelch@blm.gov; rmpcomments@citizensforahealthycommunity.org |
| **Date:** | Monday, October 24, 2016 10:00:15 AM |
| **Attachments:** | Comments regarding the Uncompahgre Field Office draft RMP.docx |

To: Dana Wilson, Acting Uncompahgre Field Manager

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft
Resource Management Plan (draft RMP).
The RMP currently in effect was approved at least 26 years ago (1989/scoping began
in 1983) and it in no way accounts for the socioeconomic benefits being derived
from the agricultural operations that now exist in the North Fork Valley.
Unfortunately, this draft RMP is no better. It contains only cursory acknowledgement
of the existence of this valley within the Uncompahgre Field Office planning area and
has not adequately or appropriately described what makes it of such unique
agricultural, artistic and entrepreneurial importance to all of Colorado, the resort
towns surrounding the valley (Aspen, Telluride and Crested Butte) and surrounding
states. This omission of fully describing this valley does not constitute meeting the
requirement of "succinctly describing the environment of the area(s) to be affected
by the alternatives under consideration" as required by 40 CFR 1502.15.
This valley has been formally identified through multiple means as a truly unique
place:
a) It has been described as "An American Provence" in the book by the same name
written by University of Colorado professor, Thomas Huber. He compares the North
Fork Valley with its vineyards to the famous wine growing region of southern France.
http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-
provence/
b) This valley was designated by the state of Colorado as a Colorado Certified
Creative District in 2013. Information on the significance of this designation can be
viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-
districts
c)  Delta County was recently awarded three Blueprint 2.0 Initiatives by the Colorado
Office of Economic Development and International Trade. The Initiatives include
Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism
Promotion.  http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-
blueprint-2-0-initiative-recipients/
d) The North Fork Valley has also been designated as an American Viticulture Area
by the U.S. government. This designation was officially adopted in 2001 and codified
at 27 CFR https://www.gpo.gov/fdsys/pkg/CFR-2016-title27-vol1/pdf/CFR-2016-
title27-vol1-sec9-172.pdf An American Viticulture Area is a delineated grape-growing
region having distinguishing features as established in Federal regulation and a
name and delineated boundary. This is only one of two such designated areas in
Colorado.
These accolades, awards and designations are presented here to make a point - -
this valley is recognized for its unique agriculture (it contains the highest
concentration of organic farms, orchards and vineyards in Colorado), local business,
art, agribusiness, agritourism, and recreation industries and deserves protection from
any threat of environmental degradation. Gas exploration and development is not
compatible with the economic culture of this valley and in fact, its very presence
would threaten its highly regarded reputation as an organic agricultural area.
Additionally, this draft RMP has been written using the standard BLM RMP
boilerplate/ template language. There is nothing boilerplate about the North Fork

Valley. Its presence in the Uncompahgre planning area requires that effects to it from actions occurring in the BLM decision area must be thoroughly considered. This has not been done.

The potential environmental consequences presented in this draft RMP do not in any way address the depth and breadth of potential effects to the valley from fluid mineral exploration and production. This is in direct conflict with BLM regulation 40 CFR 1610.4-6: Estimation of effects of alternatives, which requires that the Field Manager "will estimate and display the physical, biological, economic, and social effects of implementing each alternative considered in detail." Without acknowledging and describing the North Fork Valley in detail, this requirement cannot and has not been achieved.

The inadequacy of the draft RMP is further exemplified by the following:

1) Chapter 1, Section 1.4 and Table 1.3:  This section and table fail to appropriately and adequately acknowledge and discuss the North Fork Alternative Plan (NFAP) presented to the BLM during scoping by citizens and governmental entities in the North Fork Valley.

The NFAP was submitted in order to provide the BLM with information about the uniqueness and renowned agricultural productivity of the valley and supported the request to remove the BLM land surrounding this valley from any future leasing. However, the section summarizing the scoping comments received does not include this important scoping submittal and has consequently resulted in the lack of any meaningful reference to this agriculturally important and productive area throughout the remainder of the draft RMP. This violates the Council on Environmental Quality (CEQ) regulation at 40 CFR 1501.7(a)(2) which requires the lead agency to determine the significant issues to be analyzed in depth in an Environmental Impact Statement.

This absence of acknowledgment of the North Fork Valley's unique qualities is also in direct conflict with Section 1500.1(b) of the CEQ regulations which states that "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."

2) Chapter 1, Table 1-2, Step 7: By not appropriately including the North Fork Valley and the potential negative environmental effects to it by the various proposed alternatives as a "planning issue," this draft RMP does not adequately meet the requirement that the preferred alternative be the "alternative that best resolves planning issues."

3) Chapter 2, Section 2.2.3: The lack of adequate discussion and acknowledgement of the North Fork Valley in Chapter 1 (as discussed above) has created a situation where the significance of each alternative to potentially impact the human and natural environment within the BLM planning area is missing from the fundamental underpinnings of the analysis.  This absence of appropriate consideration is evident throughout the remainder of the document and in taking this approach, this document does not meet the level of analysis required by CEQ regulations (1502.1; 1502.2; 1508.8; 1508.14 and 1508.27(a), (b)(3), (b)(4) and (b)(6)) or the National Environmental Policy Act, Section 101(b).

4) Chapter 2, Table 2-1 and Appendix D, Ecologic Emphasis Areas:  The North Fork Valley should have been included in this portion of the analysis. Although it does not fit the BLM's routine (boilerplate) areas of analysis - unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors –

does not make this ecologically unique area any less worthy of consideration. In fact, minimizing impacts to this culturally and agriculturally significant geographic area should be the core value addressed throughout the draft RMP and presented under each of the Alternatives in Tables 2-1 through 2-6.

5) Chapter 3, Section 3.1.3 Geology and Soils: The following statement is included in this section; "There are no farmlands of national or statewide importance on BLM-administered lands within the planning area (emphasis added). However, according to a report by the Soil Conservation Service, "irrigated and prime irrigated lands of statewide importance, most of which are situated at low elevations on valley floors, occur in the Uncompahgre, North Fork, Surface Creek, and Smith Fork drainage basins" (Soil Conservation Service 1980).

Analysis of potential impacts to irrigated and prime irrigated lands existing within the Uncompahgre planning area (North Fork Valley) resulting from federal actions taking place on BLM-administered lands must be analyzed and disclosed in Chapter 4 and they are not.  Chapter 4 is completely silent on the impacts to irrigated and prime irrigated lands occurring within the valley floors in the planning area which violates 40 CFR 1508.14.

6) Chapter 3, Section 3.1.5, Vegetation & Chapter 4, Section 4.3.4 Vegetation: Section 3.1.5 fails to acknowledge or discuss any of the agricultural crops existing in the North Fork Valley which is part of the Uncompahgre Field Office planning area. Omission of these existing and important resources in Chapter 3 has resulted in the complete omission of possible effects to these resources in Chapter 4, Environmental Consequences. This violates CEQ regulations at 40 CFR 1502.15; Affected Environment and 40 CFR 1508.8; Effects.

7) Chapter 4, Section 4.1.1 Analytical Assumption, fifth bullet: This bullet asserts that "Direct and indirect impacts of implementing the RMP primarily occur on the decision area lands:" This is a seriously flawed assumption because many of the direct and indirect impacts of implementing the RMP on lands underlain by federal fluid mineral estate have the potential to seriously impact the people (and their livelihoods) living in the North Fork Valley.

"Planning area" is defined as the Uncompahgre Field Office boundary, including all lands, regardless of land ownership (emphasis added), except the Gunnison Gorge NCA Planning Area and the Dominguez-Escalante NCA" and is depicted on Figure 1-1 provided in the draft RMP. Whereas "decision area lands" are limited to public lands and federal mineral estate managed by the USDOI, Bureau of Land Management. The federal mineral estate managed by the BLM is depicted on Figure 1-2, also provided in the draft RMP.

The North Fork Valley's traditional and organic farming, fruit and grape growing areas occur less than one mile in many places from the BLM decision area boundary (but within the Uncompahgre planning area). This proximity is especially true for the thousands of acres of land surrounding Paonia, Hotchkiss and Crawford that would be made available for fluid minerals leasing according to the BLM's preferred alternative. Obviously, these agricultural lands are at risk of being either directly or indirectly impacted by gas activity occurring on the adjacent or contiguous decision area land.

8) Chapter 4, Section 4.3.2 Soils and Geology: Because Chapter 3, Section 3.1.3

dismisses the need for identifying and describing irrigated and prime irrigated lands occurring within the planning area, this Section is completely silent on the environmental consequences of federal actions on these agriculturally significant lands. This is a serious omission which only further reinforces the fact that the BLM did not take the environment actually in existence in the planning area into consideration which violates 40 CFR 1502.15 of the CEQ regulations.

9) Chapter 4, Section 4.3.3 Water Resources: The following statement is made on page 4-84, "The organic farming industry relies on clean water for agricultural production. Contamination of irrigation waters could affect the ability of local organic farms to maintain their designations." This is the only mention of organic farming in the entire draft RMP. Such a serious threat to the North Fork Valley cannot be allowed to ever occur. The only way to prevent it is to close the entire area within the NFAP area to any new oil and gas leasing. Oil and gas drilling is absolutely incompatible with the existing land uses currently occurring in this valley.

Conclusion:

The draft RMP states that "When there are conflicts among resource uses or when a land use activity could result in unacceptable or irreversible impact on the environment, the BLM may restrict or prohibit some land uses in specific areas."

Based on the comments presented above, there is definitely a conflict between the extraction of the gas resource and the prevailing land use in the North Fork Valley. Additionally, the land use activity of producing natural gas would result in unacceptable and irreversible impacts on the environment in the North Fork Valley. Therefore, the leasing of any federal fluid minerals within the borders of the NFAP should be prohibited and this prohibition on further leasing incorporated into the alternative chosen for the revised RMP.  This is the only way to preserve and protect the integrity of this unique and renowned part of Colorado.

Thank you for your consideration,

Megan Kiatta
222 Logan St  #307 Denver, CO 80203
713-822-2880
megan.kiatta@gmail.com

| | |
|---|---|
| **From:** | Shane Smith |
| **To:** | uformp@blm.gov |
| **Cc:** | director@blm.gov; rwelch@blm.gov |
| **Subject:** | Response to Draft RMP |
| **Date:** | Monday, October 24, 2016 8:49:33 AM |
| **Attachments:** | ShaneSm.png |
| | RMP Shane Smith.pdf |

To: Uncompahgre Field Office

2465 South Townsend Avenue

Montrose, Colorado 81401

## Please see my attached letter in response to your draft RMP.



**Shane Smith**

**215 Delta Ave.**
**Paonia, CO 81428**
**307-631-3883**
**shane@shanesmith.com**

BLM_0147127

October 24, 2016

BLM
Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Thank you for the opportunity to comment on the Uncompahgre Field Office's draft Resource Management Plan (draft RMP).

- The current Resource Management Plan currently in effect was approved at least 26 years ago and did not account for the many changes that have occurred since that time.

- The socioeconomic benefits being derived from the agricultural operations that now exist in the North Fork Valley have changed in importance and character and unfortunately have not been accounted for in the current draft RMP either.

- The draft RMP only contains a brief acknowledgement of the existence of the unique agriculture that occurs in the North Fork Valle and has not adequately or appropriately described what makes the North Fork Valley of such unique agricultural, artistic and entrepreneurial importance to all of Colorado and surrounding states.

- This omission of fully describing this valley does not constitute meeting the requirement of "succinctly describing the environment of the area(s) to be affected by the alternatives under consideration" as required by **40 CFR 1502.15**.

**This valley is recognized for its unique agriculture (it contains the highest concentration of organic farms, orchards and vineyards in Colorado), local business, art, agribusiness, agritourism, and recreation industries and deserves protection from any threat of environmental degradation that would harm these endeavors.**

**Evidence for the uniqueness of this valley:**

a) It has been described as "**An American Provence**" in the book by the same name written by University of Colorado professor, Thomas Huber. He compares the North Fork Valley with its vineyards to the famous wine growing region of southern France. http://www.merchantherald.com/geographer-says-the-north-fork-is-an-american-provence/ This valley was also featured in the book **At Mesa's Edge: Cooking and Ranching in Colorado's North Fork Valley** https://www.amazon.com/At-Mesas-Edge-Ranching-Colorados/dp/0618221263

b) This valley was designated by the state of Colorado as **a Colorado Certified Creative District** in 2013. Information on the significance of this designation can be viewed at http://www.coloradocreativeindustries.org/showcase/colorado-creative-districts

c) Delta County was recently **awarded three Blueprint 2.0 Initiatives by the Colorado Office of Economic Development and International Trade**. The Initiatives include Strengthening Local Business Brand, Adaptive Reuse Workshop and Tourism Promotion. http://choosecolorado.com/lt-gov-donna-lynne-announces-colorado-blueprint-2-0-initiative-recipients/

1