

THE SECRETARY OF THE INTERIOR
WASHINGTON

ORDER NO. 3354

Subject: Supporting and Improving the Federal Onshore Oil and Gas Leasing Program and
Federal Solid Mineral Leasing Program

Sec. 1 **Purpose**. This Order is intended to ensure that quarterly lease sales are consistently
held and to identify other ways the Department of the Interior (Department) may promote the
exploration and development of both Federal onshore oil and gas resources and Federal solid
mineral resources.

In administering 700 million acres of the Federal mineral resources, the Bureau of Land
Management (BLM) has a responsibility to make both Federal oil and gas resources and
Federal solid mineral resources available for the benefit of citizens of the United States.
Multiple quarterly Federal onshore oil and gas lease sales have been postponed or cancelled
since 2009. The Mineral Leasing Act of 1920 requires that oil and gas lease sales "be held for
each State where eligible lands are available at least quarterly and more frequently if the
Secretary of the Interior determines such sales are necessary," 30 U.S.C. § 226. In issuing this
Order, I am taking corrective action as a responsible public steward to strengthen American
energy security and create American jobs.

Sec. 2 **Authorities**. This Order is issued under the authority of section 2 of Reorganization Plan
No. 3 of 1950, 64 Stat. 1262, as amended. Other statutory authorities for this Order include, but
are not limited to, the following:

     (a)     Mineral Leasing Act of 1920, 30 U.S.C. §§ 181-287;

     (b)     Mineral Leasing Act for Acquired Lands, 30 U.S.C. §§ 351-359; and

     (c)     Federal Land Policy and Management Act, 43 U.S.C. §§ 1701-1785.

Sec. 3 **Directive**. Consistent with principles of responsible public stewardship entrusted to
this office, with due consideration of the critical importance of American energy security, job
creation, conservation stewardship, and the economies of affected states, the following actions
shall be taken by BLM:

     (a)     support and improve the implementation of the oil and gas quarterly lease sale
provision found in the Mineral Leasing Act;

     (b)     identify options to improve the Federal onshore oil and gas leasing program and
the Federal solid mineral leasing program, as well as identify additional steps to enhance
exploration and development of Federal onshore oil and gas resources and Federal solid
mineral resources; and

(c)     develop an effective strategy to address permitting applications efficiently and effectively as well as develop clear and actionable goals for reducing the permit processing time.

Sec. 4 **Implementation**.

(a)     The Assistant Secretary – Land and Minerals Management (ASLM) and the Director, BLM, shall report to the Counselor to the Secretary for Energy Policy within 45 days of the date of this Order on:

(1)     progress made to support and improve the quarterly lease sales in the Federal onshore oil and gas leasing program and a timeline for doing so, if not already completed;

(2)     options identified to improve the Federal onshore oil and gas leasing program and the Federal solid mineral leasing program to enhance Federal onshore oil and gas and Federal solid mineral exploration and development as required by section 3 above; and

(3)     a strategy to process the large number of currently pending permitting applications and improve the permitting process. (As part of this process, the ASLM and Director, BLM, shall consult with the U.S. Department of Agriculture and U.S. Forest Service.)

(b)     In addition, the other Assistant Secretaries and heads of bureaus/offices within the Department are hereby directed to:

(1)     identify any provisions in their existing policy and guidance documents that would impede BLM's plans to carry out quarterly oil and gas lease sales or its efforts to enhance exploration and development of Federal onshore oil and gas resources and Federal solid mineral resources; and

(2)     provide to the Counselor to the Secretary for Energy Policy within 45 days of the date of this Order a report on progress made to eliminate the identified policy or guidance impediments and a timeline for eliminating them, if not already completed.

Sec. 5 **Effect of the Order**. This Order is intended to improve the internal management of the Department. This Order and any resulting reports or recommendations are not intended to, and do not, create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities or entities, its officers or employees or any other person. To the extent there is any inconsistency between the provisions of this Order and any Federal laws or regulations, the laws or regulations will control.

3

Sec. 6 **Expiration Date**. This Order is effective immediately.  It will remain in effect until it is amended, superseded, or revoked.

Secretary of the Interior

Date:    6 JUL 17

BLM_0160170

## Angie Adams

| | |
|---|---|
| **From:** | Angie Adams |
| **Sent:** | Wednesday, July 19, 2017 9:51 AM |
| **To:** | Loscalzo, Matthew; Zoe Ghali |
| **Cc:** | ufo- ar |
| **Subject:** | RE: Special Recreation Permit Application and Resource Management Plan follow up |

Matt,
We'll include his comments in the decision file but not the public comment analysis or report.

**Angie Adams**
EMPSi  Environmental Management and Planning Solutions, Inc.
3775 Iris Avenue, Suite 1A
Boulder, CO 80301
tel:  303-447-7160    fax:  866-625-0707
www.EMPSi.com    Twitter: EMPSInc    Facebook: EMPSi

*Bringing clarity to the complex ™*

*GSA Contract GS10F-0412S*

Albuquerque    Denver    Portland    Reno    San Francisco    Santa Fe    Washington, DC

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.

**From:** Loscalzo, Matthew [mailto:mloscalzo@blm.gov]
**Sent:** Tuesday, July 18, 2017 5:25 PM
**To:** Angie Adams <angie.adams@empsi.com>; Zoe Ghali <zoe.ghali@empsi.com>
**Subject:** Re: Special Recreation Permit Application and Resource Management Plan follow up

Hey guys,
Jim Aronstein is requesting that his name and comments not be included in the Comment Summary and Response report. So I will read his letter and consider his comments internally. That said, we should still include his letter in the AR.

Thanks.
Matt

On Tue, Jul 18, 2017 at 12:04 PM, Loscalzo, Matthew <mloscalzo@blm.gov> wrote:

Angie and Zoe,
I'm forwarding an email from Jim Aronstein for your records and the AR. Apparently he was not contacted when the DRMP/DEIS was released and wants to submit comments. I told him that the public comment closed on 11/1/16 but we will review and consider his comments.

Thanks.

---------- Forwarded message ----------
From: **Jim Aronstein** <jaronstein@lewisbess.com>
Date: Mon, Jul 17, 2017 at 6:40 PM
Subject: RE: Special Recreation Permit Application and Resource Management Plan follow up

BLM_0160171

To: "Lewis, Robin" <rlewis@blm.gov>
Cc: "Loscalzo, Matthew" <mloscalzo@blm.gov>

Hi Matt,

Robin Lewis and Greg Larson suggested that I contact you regarding the revision of the RMP for our area. High Cimarron LLC ("HC") owns approximately 1,750 acres on the Cimarron Ridge, where Gunnison, Montrose and Ouray Counties converge. We own three parcels of land, two of which border BLM and one of which is totally surrounded by BLM. I have attached a rough map to orient you.

We have planned and permitted a residential and recreational club on our property. There will be 15 members, who will share the use of a lodge and three cabins. Each member will also be deeded a 35-acre lot, on which they may construct their own private cabin, if they so desire. It will be a very nice, upper-end development.

HC's largest parcel, comprised of approximately 1,400 acres, was originally patented under certain homestead acts that reserved coal and other minerals to the United States. I am concerned that a third party, in an effort to extract some payment from HC, might endeavor to locate mining claims on our property or on surrounding BLM lands. Accordingly, I would like to request that, as part of the revision of the RMP, the BLM withdraw the area from mining. Other reasons supporting this request include:

1. The uses of other lands in the area are incompatible with mining. The owner of 1,000 surface acres immediately to the west of our main parcel has deeded a conservation easement covering his land for environmental, wildlife and scenic purposes. The landowner to the east of our main parcel uses his property for cattle grazing, big game hunting and conservation. Our neighbors also include two Christian retreats (YWAM - Cimarron and Sonrise Mountain Lodge), which depend upon a quiet, contemplative atmosphere for their retreats.

2. There are no roads that access the BLM inholdings shown on the attached map, other than HC's private road that crosses our private property. We have granted an easement across our property to the BLM for administrative purposes only. The easement expressly states that the road may not be used for commercial, logging or mining purposes and that the easement is not for use by the public or BLM permit holders. Accordingly, there is no way for miners or claimants to access the area at issue, other than by trespass.

3. There has been no mining activity in the area for decades.

4. While it is regrettable, we are aware that mining claims are often instituted for illegitimate purposes and to extract payments or concessions from landowners. This potential practice can be prevented by withdrawing the area from mining.

5. The area is of primary value for outdoor recreation, retreats, wildlife and conservation, all of which are incompatible with mining.

I would have presented these comments to you sooner, but I did not receive notice of the RMP revision. As Teresa Pfiffer of you office will confirm, I requested some time ago that I be sent notice of the RMP comment period and was assured that I would be.

In any event, would you please consider my comments and let me know if it will be possible to withdraw the area from mining as part of the RMP revision. Would you also please provide me with a copy of the draft RMP?

Thank you for your assistance and consideration.

BLM_0160172

Best regards,
Jim Aronstein, Manager
High Cimarron LLC
(303) 931-7714
jaronstein@denverlaw.com

--
Matt Loscalzo
Planning & Environmental Coordinator
Uncompahgre Field Office
Bureau of Land Management
Office: 970-240-5305
mloscalzo@blm.gov

--
Matt Loscalzo
Planning & Environmental Coordinator
Uncompahgre Field Office
Bureau of Land Management
Office: 970-240-5305
mloscalzo@blm.gov

3

BLM_0160173



THE SECRETARY OF THE INTERIOR

WASHINGTON

ORDER NO. 3355

Subject:  Streamlining National Environmental Policy Act Reviews and Implementation of Executive Order 13807, "Establishing Discipline and Accountability in the Environmental Review and Permitting Process for Infrastructure Projects"

Sec. 1 **Purpose**.  This Order is intended to:  1) immediately implement certain improvements to National Environmental Policy Act (NEPA) reviews conducted by the Department of the Interior (Department); 2) begin assessment of additional such opportunities; and 3) begin implementation of Executive Order 13807 of August 15, 2017, "Establishing Discipline and Accountability in the Environmental Review and Permitting Process for Infrastructure Projects" (E.O. 13807).

Sec. 2 **Authorities**.  This Order is issued under the authority of section 2 of Reorganization Plan No. 3 of 1950 (64 Stat. 1262), as amended.  Other statutory authorities for this Order include, but are not limited to, NEPA, 42 U.S.C. 4321-4347.

Sec. 3 **Background**.  The Department has broad responsibilities to manage Federal lands and resources for the public's benefit.  The NEPA applies to the execution of many of the Department's responsibilities with the goal of ensuring that information regarding environmental impacts is available to decisionmakers and the public before decisions are made.  The NEPA accomplishes this goal by requiring Federal agencies to prepare an Environmental Impact Statement (EIS) for major Federal actions significantly affecting the quality of the human environment.

Both the Department and the Council on Environmental Quality (CEQ) have issued regulations to implement NEPA.  Because the purpose of NEPA's requirements is not the generation of paperwork, but the adoption of sound decisions based on an informed understanding of environmental consequences, the regulations encourage agencies to:  1) focus on issues that truly matter than amassing unnecessary detail; 2) reduce paperwork, including by setting appropriate page limits; 3) discuss briefly issues that are not significant; and 4) prepare analytic (rather than encyclopedic) documents, among other measures.

In recognition of the impediments to efficient development of public and private projects that can be created by needlessly complex NEPA analysis, I am issuing this Order to enhance and modernize the Department's NEPA processes, with immediate focus on bringing even greater discipline to the documentation of the Department's analyses and identifying opportunities to further increase efficiencies.

This NEPA-streamlining effort dovetails with E.O. 13807.  Among other requirements, E.O. 13807 requires CEQ to take actions to enhance and modernize the Federal environmental review process and to form an inter-agency working group to identify agency-specific

BLM_0160174

impediments to efficient and effective reviews for covered infrastructure projects. This Order begins implementation of E.O. 13807 in the context of the Department's overall effort to streamline the NEPA process.

Sec. 4 **Directives**.

    a.    <u>Setting Page and Timing Limitations for Environmental Impact Statements</u>.

    (1)    To implement the longstanding directives in 43 C.F.R. 46.405, and in 40 C.F.R. 1500.4 and 1502.7, all EISs 1) for which a bureau is the lead agency and 2) that have not reached the drafting stage shall not be more than 150 pages or 300 pages for unusually complex projects, excluding appendices. Approval of the Assistant Secretary with responsibility for the matter, in coordination with the Solicitor, is required to produce an EIS exceeding the above stated page limitations. In instances of EISs prepared with bureaus serving as co-leads, each responsible Assistant Secretary shall approve any deviations from this policy. To meet the page limitations, each preparer should focus on various techniques such as tiering or incorporation by reference.

    (2)    To ensure timely completion of EISs, and consistent with the timelines established for major infrastructure projects in E.O. 13807, each bureau shall have a target to complete each Final EIS for which it is the lead agency within 1 year from the issuance of a Notice of Intent (NOI) to prepare an EIS. The initial timeline must be developed by the lead bureau before issuing the NOI in accordance with 43 C.F.R. 46.240, taking into account all relevant timing factors listed therein, including any constraints required by cooperating agencies. An updated timeline should be prepared as needed during the development of the EIS (e.g., at the completion of scoping or if additional time is provided for public comment). Timelines exceeding the target by more than 3 months must be approved by the Assistant Secretary with responsibility for the matter. In instances of EISs prepared with bureaus serving as co-leads, each responsible Assistant Secretary must approve any deviations from this policy.

    b.    <u>Setting Target Page and Timing Limitations for the Preparation of Environmental Assessments</u>. Within 30 days, each bureau head shall provide to the Deputy Secretary through its supervising Assistant Secretary a proposal for target page limitations and time deadlines for the preparation of environmental assessments. Any common impediments to achieving the proposed targets should also be identified. In developing its proposal, each bureau should consider guidance from CEQ on the page length of environmental assessments. (Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations, 46 Fed. Reg. 18,026, 18,037, Question and Answer 36a. (Mar. 23, 1981)).

    c.    <u>Additional NEPA-Streamlining Review</u>.

    (1)    The Deputy Secretary will coordinate a review of the Department's NEPA procedures to identify additional ways to streamline the completion of NEPA responsibilities. The review will include, but is not limited to, the following areas:

(a)     bureau/office NEPA regulations, policies, guidance, and processes to identify:  1) impediments to efficient and effective reviews; 2) best practices and whether they can be implemented more widely; and 3) whether the Department should consider establishing additional categorical exclusions or revising current ones;

(b)     requirements and process improvements under Title 41 of the Fixing America's Surface Transportation (FAST) Act, 42 U.S.C. 4370m-1(c)(1)(D), to determine whether any best practices can be broadly applied, including to projects beyond the terms of the FAST Act;

(c)     requirements and process improvements required by E.O. 13807, to determine whether any best practices can be broadly applied, including to any projects beyond the terms of E.O 13807; and

(d)     CEQ NEPA regulations and guidance to assess whether to recommend changes to facilitate agency processes.

(2)     Within 30 days of the effective date of this Order, each Assistant Secretary, in coordination with bureau heads, should provide recommendations for actions to streamline the NEPA process to include potential regulatory revisions, development of revised or additional categorical exclusions, revised or new guidance or policies, and recommendations on streamlining the surnaming process.

d.     Implementation of E.O. 13807.  The Deputy Secretary will also coordinate implementation of E.O. 13807.

(1)     In order to begin implementation of E.O. 13807, each Assistant Secretary, in coordination with the bureau heads, is hereby directed to identify:

(a)     potential impediments to efficient and effective reviews for infrastructure and develop an action plan to address such impediments as a subset of the review required in Sec. 4c(1)(a) above;

(b)     potential actions that could be taken by CEQ to facilitate a review of major infrastructure projects, as a subset of the review required in Sec. 4c(1)(d) above; and

(c)     pending proposals for major infrastructure projects, as defined in E.O. 13807 and that are not yet the subject of a NOI issued by the Department, that could be candidates for the "One Federal Decision" process.

(2)     Within 30 days of the effective date of this Order, each Assistant Secretary, in coordination with the bureau heads, should provide the information requested in Sec. 4d(1)(a)-(c) above.

Sec. 5  **Implementation**.  The Deputy Secretary is responsible for implementing all aspects of this Order, in coordination with the Solicitor and the Assistant Secretaries.

BLM_0160176

4

Sec. 6  **Effect of the Order**.  This Order is intended to improve the internal management of the Department.  This Order and any resulting report or recommendations are not intended to, and do not, create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities or entities, its officer or employees, or any other person.  To the extent there is any inconsistency between the provisions of this Order and any Federal laws or regulations, the laws or regulations will control.

Sec. 7  **Expiration Date**.  This Order is effective immediately and will remain in effect until it is amended, superseded, or revoked, whichever occurs first.

/s/  David Bernhardt

Deputy Secretary

Date:  August 31, 2017

BLM_0160177



THE SECRETARY OF THE INTERIOR
WASHINGTON

ORDER NO. 3356

Subject:     Hunting, Fishing, Recreational Shooting, and Wildlife Conservation Opportunities and Coordination with States, Tribes, and Territories

Sec. 1 **Purpose**. This Order continues the Department's efforts to enhance conservation stewardship; increase outdoor recreation opportunities for all Americans, including opportunities to hunt and fish; and improve the management of game species and their habitats for this generation and beyond. It directs several components of the Department to assess past and ongoing implementation of the recommendations set forth in Executive Order 13443, "Facilitation of Hunting Heritage and Wildlife Conservation," to inform how best to enhance and expand public access to lands and waters administered by the Department—lands and waters owned by all Americans—for hunting, fishing, recreational shooting, and other forms of outdoor recreation. In addition, this Order gives greater priority to recruiting and retaining sportsmen and women conservationists, with an emphasis on engaging youth, veterans, minorities, and underserved communities that traditionally have low participation in outdoor recreation activities. Finally, this Order directs greater collaboration with state, tribes, and territorial partners.

Sec. 2 **Authorities**. This Order is issued under the authority of section 2 of Reorganization Plan No. 3 of 1950 (64 Stat. 1262), as amended, Executive Order 13443, "Facilitation of Hunting Heritage and Wildlife Conservation"; and the Department's land and resource management authorities, including the following:

     a.     Fish and Wildlife Act of 1956, as amended, 16 U.S.C. 742a, *et seq;*

     b.     National Wildlife Refuge System Improvement Act of 1997, as amended, 16 U.S.C. 668dd *et seq*;

     c.     Federal Land Policy and Management Act of 1976, as amended, 43 U.S.C. 1701, *et seq*; and

     d.     National Park Service Organic Act of 1916, as amended, 54 U.S.C. 100101, *et seq*.

Sec. 3 **Background**. As President Theodore Roosevelt recognized, "in a civilized and cultivated country, wild animals only continue to exist at all when preserved by sportsmen." For generations, countless Americans have hunted and fished across the Nation's natural landscapes and waters, enjoying opportunities steeped in traditions, rich in history, and integral to meeting many subsistence and sustenance needs, while also providing an effective means of managing various populations of wildlife species.

Robust and sustainable wildlife populations contribute greatly to our Nation's well-being. In addition, through the sale of licenses and sporting equipment, and associated excise taxes, sportsmen and women have helped generate billions of dollars in conservation funding each year. Expanding hunting, fishing, and recreational opportunities will provide additional revenue for fish and wildlife conservation, and for many small rural communities across America. In addition, the goal of attaining and sustaining healthy wildlife populations can also be achieved in concert with the varied nature of differing land uses and missions.

The Department has broad responsibilities to manage Federal lands, waters, and resources for the public's benefit, including managing habitat to support fish, wildlife, and other resources, and providing recreational opportunities on Federal lands and waters. On March 2, 2017, Secretary Zinke issued Secretary's Order 3347, "Conservation Stewardship and Outdoor Recreation." Secretary's Order 3347 does the following:

a.       directs the Assistant Secretary for Fish and Wildlife and Parks and the Assistant Secretary for Land and Minerals Management to 1) report to the Secretary within 30 days all actions taken to implement Executive Order 13443 and all actions described in Executive Order 13443 that have not occurred and 2) provide specific recommendations to improve the implementation of Executive Order 13443, particularly regarding efforts to enhance and expand recreational fishing access;

b.       mandates the Department to submit reports, upon the Secretary's approval, to the *Wildlife and Hunting Heritage Conservation Council* and the *Sport Fishing and Boating Partnership Council* for their respective responses and recommendations; and

c.       instructs the Department to identify within 30 days, specific actions concerning recreational hunting and fishing on public lands and waters, habitat improvement, predator management, and access to public lands and waters.

The 30-day due date identified in Secretary's Order 3347 has now elapsed. Following in the footsteps of President Roosevelt's commitment to conservation stewardship, this Order is being issued to enhance and expand upon Secretary's Order 3347 and further implement the recommendations provided to the Secretary.

Sec. 4 **Directive**. The following actions are to be taken consistent with governing laws, regulations, and principles of responsible public stewardship:

a.       With respect to Secretary's Order 3347, the Bureau of Land Management (BLM), U.S. Fish and Wildlife Service (FWS), and National Park Service (NPS) shall:

(1)       implement the specific recommendations provided to the Secretary pursuant to Secretary's Order 3347 to enhance recreational fishing–specifically, those recommendations regarding efforts to enhance and expand recreational fishing access, where practicable; and

(2)     within 120 days of the issuance of this Order, provide a detailed implementation plan for BLM, FWS, and NPS to implement the other recommendations provided to the Secretary pursuant to Secretary's Order 3347.

b.     With respect to Department lands and waters, the responsible bureaus and offices within the Department shall:

(1)     amend National Monument Management Plans to include or expand hunting, recreational shooting, and fishing opportunities to the extent practicable under the law;

(2)     in a manner that respects the rights and privacy of the owners of non-public lands, identify lands and waters where access to Department lands and waters, particularly access for hunting, fishing, recreational shooting, and other forms of outdoor recreation, is currently limited (including areas of Department land and waters that may be impractical or impossible to access via public roads or trails under current conditions, but where there may be an opportunity to gain access through a voluntary easement, right-of-way, or voluntary acquisition), and within 60 days, provide to the Deputy Secretary a report detailing such lands and waters;

(3)     within 365 days, cooperate, coordinate, create, make available, and continuously update online a single "one stop" Department site database of available opportunities for hunting, fishing, and recreational shooting on Department lands and waters;

(4)     consistent with relevant state laws, identify whether hunting, fishing, and/or recreational shooting opportunities on Department lands could be expanded and, within 60 days, provide recommendations to the Deputy Secretary on where such expansions may occur;

(5)     within 30 days, examine and provide recommendations to the Deputy Secretary on how to streamline and improve the permitting process for guides and outfitters on Department lands and waters, including recommendations for the development of a distinct permitting process for non-profit organizations (such as those working with youth, veterans, or underserved communities); and

(6)     incorporate analysis of the impacts of Federal land and water management actions on hunting, fishing, and recreational shooting access in planning and decisionmaking.

c.     With respect to participation in hunting, fishing, and recreational shooting, bureaus and offices shall:

(1)     identify opportunities to help provide voluntary public access to private lands and waters for hunting and fishing;

(2)     within 60 days and in consultation with the relevant states, identify grant and/or cooperative agreement opportunities that may be made available for community programs

for hunting, fishing, and recreational shooting participation, such as recruitment/retention/reactivation; and

   (3) work with veterans and youth programs to provide hunting, fishing, and recreational shooting mentor training programs.

  d. With respect to working harmoniously with our state, tribal, territorial, and local partners, bureaus and offices shall:

   (1) identify full-time employees who are responsible for access to hunting, fishing, recreational shooting, and other outdoor recreational opportunities on Department lands and waters and work in close collaboration with state and local partners on these efforts;

   (2) coordinate with state, tribal, and territorial wildlife management agencies to identify opportunities for increased access to Department lands and waters, including identifying opportunities for access through adjacent private lands;

   (3) collaborate with state, tribal, and territorial fish and wildlife agencies to attain or sustain wildlife population goals during Department land-management planning and implementation, including prioritizing active habitat-management projects and funding that contribute to achieving wildlife population objectives, particularly for wildlife that is hunted or fished, and identifying additional ways to include or delegate to states habitat management work on Federal lands;

   (4) work cooperatively with state, tribal, and territorial wildlife agencies to enhance their access to Department lands for wildlife management actions;

   (5) within 180 days, develop a proposed categorical exclusion for proposed projects that utilize common practices solely intended to enhance or restore habitat for species such as sage-grouse and/or mule deer;

   (6) significantly increase migratory waterfowl populations and hunting opportunities throughout large portions of the country by:

    (a) enhancing and improving the use of voluntary perpetual grassland and wetland conservation easements;

    (b) expanding habitat and water conservation/protection efforts on wintering habitats;

    (c) assessing and utilizing sound science to direct the development of proposed project and/or policy proposals to enhance waterfowl production;

    (d) identifying partnerships and resource opportunities; and

        (e)     utilizing sound scientific evidence in conjunction with landowner/stakeholder input.

        (7)     work cooperatively with state, tribal, and territorial wildlife agencies to ensure that hunting and fishing regulations for Department lands and waters complement the regulations on the surrounding lands and waters to the extent legally practicable; and

        (8)     within 180 days, in close coordination and cooperation with the appropriate state, tribal, or territorial wildlife agency, begin the necessary process to modify regulations in order to advance shared wildlife conservation goals/objectives that align predator-management programs, seasons, and methods of take permitted on all Department-managed lands and waters with corresponding programs, seasons, and methods established by state, tribal, and territorial wildlife management agencies to the extent legally practicable.

      e.     Within 180 days, bureaus and offices shall:

        (1)     create an implementation plan to update all existing regulations, orders, guidance documents, policies, instructions, manuals, directives, notices, implementing actions, new employee training orders, and any other similar actions to be consistent with this Order; and

        (2)     review and use the best available science to inform the development of specific guidelines for Department lands and water related to planning and developing energy, transmission, infrastructure, or other relevant projects to avoid or minimize potential negative impacts on wildlife.

      f.     Heads of bureaus will ensure that appropriate Senior Executive Service employees under his or her purview include a performance standard in their respective current or future performance plan that specifically implements the applicable actions identified in this Order.

Sec. 5 **Implementation**. The Deputy Secretary is responsible for taking all reasonably necessary steps to implement this Order.

Sec. 6 **Effect of Order**. This Order is intended to improve the internal management of the Department. This Order and any resulting reports or recommendations are not intended to, and do not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities or entities, its officers or employees, or any other person. To the extent there is any inconsistency between the provisions of this Order and any Federal laws or regulations, the laws or regulations will control.

6

Sec. 7 **Expiration Date.** This Order is effective immediately. It will remain in effect until its provisions are implemented and completed, or until it is amended, superseded, or revoked.

Secretary of the Interior

Date: SEP 1 5 2017

BLM_0160183

**Angie Adams**

| | |
|---|---|
| **From:** | Loscalzo, Matthew <mloscalzo@blm.gov> |
| **Sent:** | Tuesday, October 31, 2017 3:58 PM |
| **To:** | ufo- ar |
| **Subject:** | Fwd: UFO RMP Email Contact |

---------- Forwarded message ----------
From: **Jeff Rieks** <onlyninetoes@gmail.com>
Date: Mon, Oct 30, 2017 at 5:21 PM
Subject: Re: UFO RMP Email Contact
To: "Loscalzo, Matthew" <mloscalzo@blm.gov>

Hi Matt,  Thanks for your email.  I've been involved with a number of the different planning processes, though unfortunately not in yours based on my own poor timing.  In some cases, it was clear that the ranching and hunting community was not aware that the process was happening.  Back Country Hunters and Anglers (BHA) may be the exception.  So, I've tried to bring others to the table as well, so they can voice their opinions in GPLI, GMUG, Delta County Trails plan.

That is general context, and to answer your question, in a perfect scenario, I would have a meeting with you guys and bring CPW staff, Western Slope Conservation Center, a few of the presidents/members of livestock associations, someone from BHA(me), and an outfitter or 2.

The BLM lands around Paonia will be seeing more and more competition for use of resources.  Currently, it is uncommonly good wildlife habitat and only see's pressure during hunting season and beyond that almost no pressure.  Grazing is well managed and has not adversely impacted it.  In order to ensure that it is well managed in the future I believe there would be broad support for designating it as a Special Management Area for wildlife, hunting and grazing.  In GPLI, and GMUG, Nat Forest land bordering the BLM here has good support for SMA, so it could make sense to extend that into the area I will describe.

The area I have in mind is only a starting point, but others may have additional ideas.  Specifically, I'm talking about the lone cabin area next to Paonia next to mt lamborn, and part of the south facing portion of Jumbo.  The areas are year round habitat for big game, as well as wintering and calving areas for larger populations of elk. Unit 53 is also a trophy buck unit.  It is estimated that $40M comes into Delta county each year for hunting, so we want to protect that.

This time of year is tough to get in touch with outfitters because they are guiding, and the ranchers are gathering and selling cattle, so I don't know how feasible it is on short notice.

Also, I fully appreciate that you are at the end of the process, and this may not be possible.  If that is the case, BHA could send you a letter with more details and the recommendation with an accompanied list of organization and individuals from the community that are in support.  Of course you might want input from others beyond the ones I'm connected with, but perhaps you already have those opinions from earlier in the process.

Given where you are in the process and given your requirements for making the management plan, I don't know if it would be possible to make it an SMA, but at a minimum you would have more information on wildlife, etc. and where the community stands. Through involvement in Delta County Master Trails Plan, National Forest planning, and Gunnison Public Lands Initiative, I've been in contact with a number of individuals and organizations (primarily those listed above),

BLM_0160184

I'm confident in their desire to support the concept. Its been interesting to see in some cases where there is agreement between hunters, ranchers and environmentalists!

There is a lot of input in planning from mechanized and motorized use, and there will be much growth there, but ideally we can get enough input from various stakeholders such that any development that is done can be done in a responsible and balanced manner without wildlife impact. CPW has really been trying to boost the deer population, and finally this year we are seeing increase.

Take care Matt and even if nothing comes of this at least you have some boots on the ground information for future land management!

Thanks,
Jeff

970 209 7546

On Thu, Oct 26, 2017 at 3:20 PM, Loscalzo, Matthew <mloscalzo@blm.gov> wrote:
Hi Jeff,
It was good to speak to you today. Here is my email address for you to submit your comments. As we discussed, the official deadline to submit comments on the UFO Draft RMP and EIS passed on 11/1/2016.

Regarding the meeting you proposed, I would be curious to know who you have in mind for this potential meeting. I say this because we received many comment letters for this project, so perhaps the BLM received a comment letter from one or more of those organizations.

Thanks,
Matt

--
Matt Loscalzo
Planning & Environmental Coordinator
Uncompahgre Field Office
Bureau of Land Management
Office: 970-240-5305
mloscalzo@blm.gov

--
Matt Loscalzo
Planning & Environmental Coordinator
Uncompahgre Field Office
Bureau of Land Management
Office: 970-240-5305

BLM_0160185

mloscalzo@blm.gov

BLM_0160186

**Angie Adams**

| | |
|---|---|
| **From:** | mloscalzo@blm.gov on behalf of UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov> |
| **Sent:** | Monday, February 26, 2018 1:40 PM |
| **To:** | ufo- ar |
| **Subject:** | Fwd: Theodore Roosevelt Conservation Partnership Letter RE: UFO DRMP |
| **Attachments:** | TRCP UFO Draft RMP Letter (11-2017) Final.pdf |

RMP Project Manager
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401

---------- Forwarded message ----------
From: **Nicholas Payne** <npayne@trcp.org>
Date: Thu, Dec 21, 2017 at 5:29 PM
Subject: Theodore Roosevelt Conservation Partnership Letter RE: UFO DRMP
To: Gregory Larson <glarson@blm.gov>, "uformp@blm.gov" <uformp@blm.gov>

Greetings,

Please find the attached letter for your consideration in developing the final RMP. We appreciate the opportunity and look forward to working with the BLM and expanding the breadth of our partners moving forward.

Best,

-----------------------------------------------------------------------------------------------------------------

Nick Payne

Colorado Field Representative

Theodore Roosevelt Conservation Partnership

720.369.5499 (cell)

npayne@trcp.org

trcp.org

1



BLM_0160188

**RE: Bureau of Land Management Uncompahgre Field Office Draft Resource Management Plan**

December 21, 2017

Mr. Greg Larson
Field Manager, Royal Gorge Field Office
Bureau of Land Management
2465 South Townsend Avenue
Montrose, Colorado 81401
(970) 240-5300
uformp@blm.gov

Dear Mr. Larson:

The TRCP and its partners appreciate the opportunity to work with the Bureau of Land Management (BLM) in the Uncompahgre Field Office (UFO) as the Resource Management Plan (RMP) process moves forward. Because our suggestions are being proposed after the public comment period for the draft alternatives/RMP, we've focused attention on changes that could be made within the scope and framework of the current alternatives that would not require additional analysis.

These comments offer what we believe are reasonable suggestions that are supported by science and the prevailing perspective of hunters and anglers. The BLM manages a great abundance of vital habitats for numerous game species that are important for local economies in areas with BLM-managed surface acres within the boundaries of the UFO.

Also of great significance is that the BLM work with Colorado Parks Wildlife (CPW) to parallel the population objectives, goals, management actions, etc. that have been identified by CPW as important for game species. Especially game species identified as threatened (cutthroat trout, Greater sandhill crane, Lesser prairie chicken, Mountain Plover), sensitive (Rocky Mountain bighorn sheep, mule deer, moose, white-tailed ptarmigan), are species of conservation concern for CPW and/or the BLM, or are recreationally and economically important (elk, pronghorn antelope, wild turkey, waterfowl). In general, the current range of alternatives does well in requiring coordination with CPW.

**Ecological Emphasis Areas**

We feel that the Ecological Emphasis Area concept, with some specific adjustments, can serve as a great tool to restore, maintain, and enhance access to hunting and fishing opportunities, lands that provide this opportunity, and the species and their habitats that require these public lands for survival and reproduction. In the following comments, when alternatives differ in areas of importance to our constituency, we note the preferred course of action. Although the EEA concept isn't intended solely for game species, the following analysis provides suggestions on those areas most important for hunting, fishing, and game species. These areas have been identified using CPW data on crucial habitats and hunting participation.

*Proposed Management Prescriptions*

Most of the management prescriptions in the draft RMP for EEAs are consistent with management actions that we feel would ensure that these areas will offer quality hunting and fishing opportunities and/or quality wildlife habitat into the foreseeable future. Listed below are management actions that may differ from those in the draft RMP, or pertain to a specific alternative, that we feel should be incorporated to ensure the continued maintenance, conservation and restoration of these public lands:

- Keeping areas open to hunting, fishing, trapping and other outdoor recreation and ensuring that the Colorado Parks and Wildlife retains management authority over fish and wildlife populations.

- Utilize seasonal closures of roads and trails to ensure maximum habitat effectiveness for limiting habitats such as winter ranges and migration corridors.

- Maintain low densities of motorized routes located within EEA boundaries that are important for public access. The BLM should manage primitive roads and motorized trails within EEA boundaries to maintain their existing character and should not improve routes to a higher transportation standard. The BLM should identify redundant routes and routes of little access value and enact closures for the purposes of resource conservation.

- Restricting the construction of new improved roads, primitive roads and motorized trails within designated areas pursuant to emergencies and valid existing rights and excluding cross-country vehicle travel to conserve unfragmented habitat and hunting and fishing opportunities. Designate EEAs as limited travel management areas.

- Instituting vegetation management projects that improve fish and wildlife habitat, control noxious weeds, restore forests and rangelands and reduce the risk of wildfire. This could include projects that restore sage brush and quaking aspen or control cheat grass.

- Allowing prescribed burning to mimic natural processes, herbicide application to maintain and restore native vegetation and the installation of water developments that benefit wildlife.

- Conserving fish and wildlife habitat by requiring that rights-of-ways and conventional and renewable energy development be excluded from designated areas, except for existing infrastructure and projects pursuant to outstanding rights. This should include non-waivable no surface occupancy leasing stipulations for all oil and gas development.

- Honoring valid existing rights, contracts and permits, and having no impact on rangeland health standards and public lands grazing allotments and maintaining the ability of ranchers to maintain agricultural improvements.

- Allowing the suppression of range and wild land fires utilizing mechanized equipment.

**Specific areas for UFO EEAs**

These areas represent much of the last best remaining areas in the UFO and they should be conserved for the benefit of hunters, anglers and many other users of public lands. All of these lands possess high-

BLM_0160190

quality fish and wildlife habitat and/or provide high-quality non-motorized recreation opportunities and are of sufficient size to allow their conservation.

We feel that some EEAs proposed in the draft alternative should be carried forward as such, with the maximum acreage proposed, in the final RMP/EIS with management direction as discussed herein:

| EEAs | Acres |
|------|-------|
| Terror Creek | 2,230 |
| Jumbo Mtn/McDonald Creek | 17,220 |
| Monitor-Potter-Roubideau | 27,320 |
| Dry Creek | 20,320 |
| Naturita Canyon | 15,620 |
| San Miguel | 25,520 |
| La Sal | 22,350 |
| Tabeguache | 31,540 |
| Spring Canyon | 3,380 |
| Sims Mesa | 19,650 |
| Ridgway | 16,700 |

New EEAs that should be incorporated in the final RMP/EIS as discussed herein:

| EEAs | Acres |
|------|-------|
| Tabeguache North | 41,885 |
| Red Canyon | 12,443 |

**Previous RMPs**

In 2014 the Grand Junction Field Office finalized a full revision of its RMP which included 149,700 acres of Wildlife Emphasis Areas. WEAs were used in an analogous way to EEAs and provided a great opportunity to safeguard some crucial lands for hunting and fishing and fish and wildlife habitat. A coalition of hunters, anglers, businesses, community members, and others worked with the GJFO and the BLM was successful in finding a balanced approach to managing these lands in an analogous manner to what is proposed here. During the White River Field Office oil and gas RMP amendment a similar outcome was exhibited in the final RMPA. As needed, we refer you to these two final RMPs for further information on the incorporation of similar management prescriptions.

**Conclusion**

Because of the exceptional wildlife populations and hunting and fishing opportunities in the field office, the Game Management Units in the UFO are cherished by hunters and anglers across America and justify being a focal point of BLM management planning at all levels. We thank the BLM for their continued work and look forward to working towards a final RMP that finds a good balance in uses of our public lands.

We respectfully request that BLM conserve high-value lands using EEAs in the UFO final RMP.  We are working with sportsmen, recreationists, ranchers, business owners, local, state, national decision-makers and others to build support for the conservation of high value fish and wildlife habitat throughout this RMP process.

Sincerely,

Nicholas Payne, Colorado Field Representative
Theodore Roosevelt Conservation Partnership

The Theodore Roosevelt Conservation Partnership (TRCP) is a 501(c)(3) non-profit organization with roughly 4,500 members in Colorado. Our mission is to guarantee all Americans quality places to hunt and fish.

**Appendix A – Maps (GIS files attached to email)**











BLM_0160193



WESTERN SLOPE
CONSERVATION
CENTER

Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401
Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

Dear Dana Wilson, Greg Larson, Joseph Meyer, and Gregory Shoop,

Please accept this petition supporting the North Fork Alternative in the draft Uncompahgre Field
Office Resource Management Plan on behalf of the staff, board, and members of the Western
Slope Conservation Center (WSCC). The WSCC is a grassroots non-profit with 600 members
who live in the North Fork Valley and Western Slope of Colorado. The WSCC has a 40-year
legacy of conservation environmental resources in the North Fork Valley, and we are dedicated
to the mission of building an active and aware community to protect and enhance the lands, air,
water and wildlife of the Lower Gunnison Watershed.

WSCC understands the magnitude of the challenge that the BLM faces in producing a new
Resource Management Plan (RMP) for the Uncompahgre planning area, and we appreciate the
significant amount of time and energy that has gone into the current draft plan. The WSCC also
recognizes the significance of this RMP in determining the future of the BLM lands that surround
our homes, farms, businesses, and recreational areas for the next 20-30 years.

As stated in our comment letter submitted November 1, 2016, the WSCC has determined that
the Preferred Alternative will not provide adequate management protections for the water, air,
viewshed, wildlife, recreational opportunities, foodshed, or economies of the North Fork Valley
and Western Slope. We would like to thank the BLM for including the North Fork Alternative
within the draft plan as Alternative B1, which provides a minimum degree of protection for these
resources identified by our community members. For all other management actions not
associated with oil and gas leasing in the North Fork planning area, Alternative B provides a
minimum degree of protection for the resources identified above.

The North Fork Alternative is a common sense proposal for managing the vast natural
resources on our public lands. This petition, signed by 171 community members, reflects the
continued local support for the North Fork Alternative in the final Uncompahgre Resource
Management Plan

Regards,

Alex Johnson
Executive Director
Western Slope Conservation Center
director@theconservationcenter.org
970-527-5307x201

BLM_0160194



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Chandra Jones | PO BOX 641 | chandraleejones@gmail.com | 10/18/2017 17:06 |
| Charles Long | 1503 River Rock Drive | cleelong2@gmail.com | 10/18/2017 17:49 |
| Donna Littlefield | 26736 Redlands Mesa Road | donita55555@yahoo.com | 10/18/2017 17:55 |
| MARGIT YATES | PO Box 208 | ymargit@yahoo.com | 10/18/2017 18:11 |
| Eugenie M. McGuire | 16870 Garvin Mesa Road, Paonia, CO 81428 | oogiem@desertweyr.com | 10/18/2017 18:13 |
| JULIA BOWMAN | 2263 SOUTH DOWNING ST. | julialbowman@gmail.com | 10/18/2017 18:14 |
| Linda S Keenan | 41050 Hwy 133 Paonia CO 81428 | joyisinevitable@gmail.com | 10/18/2017 18:18 |
| John & Mary Lou Gregory | 1306 Black Canyon Road | jsjgregory@msn.com | 10/18/2017 18:22 |
| Marley Hodgson | PO Box 286  Crawford CO 891415 | marley@smithforkranch.com | 10/18/2017 18:22 |
| Elaine F. Graves | 1301 Delaware Ave., SW Apt. N-222 Washington, DC  20024 | egraves@hers.com | 10/18/2017 18:29 |

BLM_0160195



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
| --- | --- | --- | --- |
| Bill Tembrock | 11092 3300 Rd. HOTCHKISS, CO 81419 | kbtembrock@tds.com | 10/18/2017 18:42 |
| Samuel Brown | 41342 O Road Paonia Colorado | intisolar@tds.net | 10/18/2017 18:49 |
| Amber Kleinman | 47 Pan American Ave | alchemyamber@gmail.com | 10/18/2017 19:09 |
| jim turner | 41400 Stewart Mesa ROad Paonia | jimturner38@gmail.com | 10/18/2017 19:12 |
| David Noe | P.O. Box 191 | dcnoe@hotmail.com | 10/18/2017 19:29 |
| Andrea Lecos | PO Box 927/41218 Lamborn Mesa Rd | adlecos@gmail.com | 10/18/2017 19:39 |
| Neal Schwieterman | 420 Minnesota Ave | mambomamba61@gmail.com | 10/18/2017 19:48 |
| Mary Jursinovic | 11491 3800 Rd | cbpots@yahoo.com | 10/18/2017 20:58 |
| cynthia ziegler | 17462 farmers mine rd., paonia | cynazie@yahoo.com | 10/18/2017 21:03 |
| scott horner | 40575 o rd paonia, colorado 81428 | scotthorner13@yahoo.com | 10/18/2017 21:05 |
| Viva Kellogg | 218 Minnesota Ave | viva8686@gmail.com | 10/18/2017 21:12 |

BLM_0160196



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Elia Greco | 29672 Stingley Gulch Rd | elisa@paonia.com | 10/18/2017 22:03 |
| Judy Coyle | PO Box 746 Hotchkiss, CO | judycoyle@tds.net | 10/18/2017 22:15 |
| Linda Hodgson | 44856 Needle Rock Road, Crawford, Co 81415 | lindahodgson@me.com | 10/18/2017 22:47 |
| Cynthia Patterson | Atlanta, GA | cynthiapurchase@gmail.com | 10/19/2017 7:03 |
| justman@tds.net | 14659 peony lane | justman@tds.net | 10/19/2017 7:58 |
| Jerry Hillman | 34497 Outlook Rd. Hotchkiss, CO 81419 | eloso7j@netscape.net | 10/19/2017 9:09 |
| Lasca Hix | 40355 D Rd | lascahix@gmail.com | 10/19/2017 9:16 |
| Marilyn Kretsinger | 2318 Eagle's Nest Drive, Lafayette, CO 80026 | mkakudo@comcast.net | 10/19/2017 9:34 |
| Steve Ela | 30753 L Rd, Hotchkiss, CO 81419 | steve@elafamilyfarms.com | 10/19/2017 10:13 |
| Celia Roberts | P.O. Box 5, Paonia, CO 81428 | celia@paonia.com | 10/19/2017 11:56 |
| Teresa Shishim | 40847 O Rd. Paonia, CO 81428 | teresashishim@gmail.com | 10/19/2017 13:01 |

BLM_0160197



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Michael Burkley | 42232 Lamborn Mesa Rd  Paonia, CO 81428 | mburkley6@gmail.com | 10/19/2017 14:44 |
| Tamra Gutshall | po box 303  paonia | tamglee@yahoo.com | 10/19/2017 16:06 |
| Hal Brill | PO Box 747, Paonia CO 81428 | halbrill@gmail.com | 10/19/2017 16:48 |
| James Riggs | Po box 321 | doubljrigz@yahoo.com | 10/19/2017 18:32 |
| Chelsea Bookout | 608 Orchard Ave. Paonia, CO | chelseabookout@gmail.com | 10/19/2017 19:06 |
| Terry Randall | 41367 Lamborn Mesa Rd Paonia, Colorado | tlr1556@gmail.com | 10/19/2017 19:50 |
| ANN C STINSON | 1461 E 5TH ST | stinsonsfive@yahoo.com | 10/19/2017 22:47 |
| Philip Davis | PO Box 327, Hotchkiss, CO  81419 | wink@mesawindsfarm.com | 10/20/2017 6:57 |
| Tara Styck | PO Box 443 Paonia, CO 81428 | tjstyck@gmail.com | 10/20/2017 10:05 |
| Ildikó Ingraham | 118 Meadowbrook Ct. | ildi@ildiingraham.com | 10/20/2017 10:42 |
| Ralph D'Alessandro | 36291 Sunshine Mesa Road, Hotchkiss | rdinca@yahoo.com | 10/20/2017 10:55 |

BLM_0160198



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Daniel Larcker | 17348 Farmers Mine Rd | dflarck@gmail.com | 10/20/2017 19:16 |
| Faye | 37640 Bone Mesa rd | faye_coats@yahoo.com | 10/22/2017 8:47 |
| Sally Larcker | 38594 Stucker Mesa Rd, Hotchkiss, CO 81419 | hotsocmom1@aol.com | 10/23/2017 1:05 |
| Cy nthia Patterson | 70 Powers Ferry Road Marietta, GA 30067 | cynthiapurchase@gmail.com | 10/23/2017 9:06 |
| Jim Brett | PO Box 1682, 1899 Hawks Haven, Paonia, CO 81428 | jmbimagery@icloud.com | 10/23/2017 9:54 |
| Michael DeJager | 1312 Washington Ave. Loveland, CO 80537 | mdejager13@gmail.com | 10/23/2017 10:12 |
| Phil Johnson | P.O. Box 683,Paonia, Colorado | pjohnsn3@tds.net | 10/23/2017 10:48 |
| Donna Mann | P.O. Box 1563, Paonia, CO 81428 | mannd289@gmail.com | 10/23/2017 11:34 |
| E. Allen Todd | P.O. Box 1388, Paonia, CO 81428 | toddent@tds.net | 10/23/2017 11:41 |
| Kristian Hill | 32966 J Rd. Hotchkiss Colorado 81419 | kristianahill@gmail.com | 10/23/2017 11:57 |
| Steve Allerton | 1945 N 9th Grand Junction, co 81501 | sballerton@gmail.com | 10/23/2017 15:43 |



WESTERN SLOPE
**CONSERVATION
CENTER**

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401
Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Erin Griffin | 315 Broadway Avenue, Apartment B, Saranac Lake NY 12983 | eringriffin87@gmail.com | 10/23/2017 18:43 |
| Lisa Niermann | 36639 M50 Rd Hotchkiss CO 81419 | lmniermann67@gmail.com | 10/23/2017 23:37 |
| John R. Burritt Jr. | 12317 Burritt Rd., Hotchkiss, CO 81419 | Johnny@Fastmail.US | 10/24/2017 7:22 |
| Ty Johnson | 61978 Jay Jay Rd. Montrose, CO 81401 | tyjohnson373@gmail.com | 10/24/2017 16:11 |
| heidi Reese | 39650 Hadley St. | hnreese@mac.com | 10/24/2017 22:11 |
| Brandy D Logan | 228 Highway 133 | brandydlogan@gmail.com | 10/25/2017 9:44 |
| John Mitchell | 18325 Coyote Run Road, Cedaredge, CO 81413 | johnwillismitchell@gmail.com | 10/26/2017 11:36 |
| charles gilman | 26876 redlands mesa rd | cgilman@sopris.net | 10/27/2017 10:26 |
| Anne Pennington | 293-B Stafford Lane | map1225@hotmail.com | 10/27/2017 10:48 |
| Susan Shoemaker | 135 Oak Ave, Paonia, CO 81428 | ssusan@sisna.com | 10/27/2017 10:51 |
| Bruce Woodside | 12655 Martha Street, Los Angeles, CA 91607 | warnwood@mac.com | 10/27/2017 11:18 |

BLM_0160200



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Holly Williamson | 1122 3rd St Paonia | williamsonhollymarie@gmail.com | 10/27/2017 11:48 |
| jeff kastning | 13429 HWY 65 | jefferykastning@gmail.com | 10/27/2017 12:52 |
| michael Straub | 37441 back river rd. paonia co. 81428 | mainsheetmike@yahoo.com | 10/27/2017 15:17 |
| michael burkley | 42232 Lamborn Mesa Rd  Paonia  CO 81428 | mburkley6@gmail.com | 10/27/2017 19:50 |
| Kristine Crandall | 810 S. Dixie Dr. #2628, St. George, UT  84770 | crandallkristine@yahoo.com | 10/27/2017 21:32 |
| Andrew Kramer | 781 Indigo Court, Ivins, UT 84738 | akramer@infowest.com | 10/27/2017 22:05 |
| Diane Ryczek | 740 Wisteria Way, Ivins, Utah 84738 | bilochun1@yahoo.com | 10/28/2017 22:34 |
| John Zachman | PO Box 1150, Paonia CO. 81428 | zachtown@hotmail.com | 10/29/2017 10:08 |
| Mary Zachman | 214 Lamborn Ave | maria62bonita@gmail.com | 10/30/2017 8:05 |
| Lucy Hunter | 337 Main / PO Box 1809, Paonia, CO 81428 | lucy@odiseanet.com | 10/30/2017 9:48 |
| Anne Wilcox | 108 Meadowbrook Court, Paonia CO 81428 | annew@frii.com | 10/30/2017 20:33 |

BLM_0160201



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Doug Beall | 315 Box Elder Ave, Paonia | cdbeall@att.net | 10/30/2017 23:46 |
| Lawrence Herbert | 324 Rio Grande Ave Paonia CO | LarHerb999@gmail.com | 10/31/2017 4:10 |
| Nicole Sacchitella | 10261 3100 Rd | nicole.sacchitella@gmail.com | 10/31/2017 8:00 |
| Candice orlando | 210 Onarga ave Paonia, CO 81428 | lioness.ck@gmail.com | 10/31/2017 8:10 |
| Elyssa Edgerly | 41621 reds rd paonia , co. 81621 | cloude19@hotmail.com | 10/31/2017 9:18 |
| Antonio Marxuach | 1978 Harding Rd., Paonia, CO 81428 | xc.farmer.antoine@gmall.com | 10/31/2017 9:26 |
| JJ Riggs | 519 3rd St. Paonia co | doubljrigz@yahoo.com | 10/31/2017 9:56 |
| Don de Vries | 1591 Bull Mountain Rd Somerset Colorado 81434 | dondev@juno.com | 10/31/2017 10:42 |
| Sherry Schenk Grand Junction area chapter of Great Old Broads for Wilderness | 379 Ridge View Drive Grand Junction, CO 81507 | sherryleeschenk@gmail.com | 10/31/2017 10:59 |
| Elizabeth Woods-Darby | 38501 Pitkin Road Paonia, CO 80204 | barefootinthefog@gmail.com | 10/31/2017 12:21 |

BLM_0160202



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
| --- | --- | --- | --- |
| Lincoln Vannah | physical - 38962 Pitkin Road, Paonia, CO mailing - PO Box 1588, Paonia, CO 81428 | jeanlinc@hotmail.com | 10/31/2017 13:30 |
| Heidi Hudek | 39 Main Ave, Paonia, CO 81428 | vistaverve@gmail.com | 10/31/2017 13:49 |
| Robert J Trout | 671 7th st Paonia Co 81428 | robert.trout@hotmail.com | 10/31/2017 16:07 |
| Meg O€™Shaughnessy | 41621 Reds Road Paonia CO 81428 | peacespeak@yahoo.com | 11/1/2017 0:42 |
| Chaiah Sullivan | 37640 Bone Mesa rd, Paonia, CO, 81428 | unparalleled.glass@gmail.com | 11/1/2017 8:23 |
| Gretchen King | PO Box 907, Paonia, CO 81428 | gbtking@gmail.com | 11/1/2017 9:00 |
| Margaret Granzella | P.O. Box 1207 Meeker CO 81741 | thevitalawarenessproject@gmail.com | 11/1/2017 16:51 |
| Jay Canode | 223 dorris ave | jaycanode@hotmail.com | 11/1/2017 19:20 |
| James Calvin Williams | 6001 S Yosemite St Denver CO 80111 | james.calvin.williams@gmail.com | 11/1/2017 19:53 |
| Susan Kaldis | 38766 Stucker Mesa Road, Hotchkiss, CO 81419 | susiekaldis@gmail.com | 11/1/2017 22:16 |

BLM_0160203



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Birdie Kuhl | 611 Orchard ave. Paonia, Colorado 81428 | lambornarts@gnail.com | 11/1/2017 22:24 |
| Chris Jackson | 691 1675rd Delta Co | snowandshow@yahoo.com | 11/2/2017 1:10 |
| Carrie Lerner | 42671 Long Gulch, Crawford CO 81415 | lernercarrie@gmail.com | 11/2/2017 8:40 |
| Samuel Brown | 41342 O Road, Paonia CO. 81428 | intisolar@icloud.com | 11/2/2017 14:20 |
| Ryan B Lehman | PO Box 772 | rblehman@gmail.com | 11/2/2017 17:49 |
| Charles Long | 1503 RIVER ROCK DR | cleelong2@gmail.com | 11/2/2017 18:19 |
| Sharon Bailey | 42097 Minnesota Creek Rd | sebailey83@gmail.com | 11/2/2017 20:09 |
| Adriane Panciera | 803 4th street Paonia Colorado 81428 | | 11/2/2017 20:59 |
| Lawrence Ribnick | 38741 Indian Head Lane, Crawford, CO 81415 | larry704@sopris.net | 11/2/2017 21:48 |
| Denise Laverty | 42225 Minnesota Cr. Rd., Paonia, Colo. 81428 | dclaire@tds.net | 11/2/2017 22:40 |
| Janice Thorup | PO Box 631 | janice.thorup@gmail.com | 11/3/2017 7:26 |



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| julie Beall | po box 544 Paonia, Colorado 81428 | julie.mac@att.net | 11/3/2017 10:03 |
| Roger Baril | Delta ave Paonia Colorado 81428 | somaticsmove@yahoo.com | 11/3/2017 13:02 |
| Daniel Larcker | 17348 farmers mine road Paonia, co, 81428 | dflarck@gmail.com | 11/3/2017 13:16 |
| Paul Hamilton | 1625 Village Drive Marble, CO 81623 | phammy0137@gmail.com | 11/3/2017 18:38 |
| MIGUEL A VELEZ | 14173 BURGESS LANE | cloudspassing@hotmail.com | 11/3/2017 20:38 |
| Phyllis Anne Velez | 14173 BURGESS LANE | cloudspassing@hotmail.com | 11/3/2017 20:39 |
| Betsy johnson | 1010 3rd St Paonia CO | willow1154@hotmail.com | 11/4/2017 8:03 |
| Katrina Debs | 39007 L75 Road | katrina.debs@gmail.com | 11/4/2017 15:45 |
| David Noe | P.O. Box 191, Paonia, CO 81428 | dcnoe@hotmail.com | 11/10/2017 15:23 |
| Christine A. Gavan | 40194 M Rd | chris@thegavans.com | 11/13/2017 12:27 |
| Andrea Wang | 39181 L 75 Rd. Paonia, CO 81428 | awangwestslope@gmail.com | 11/13/2017 13:11 |
| Edna Jean Miller | 41342 O Road / Paonia, CO 81418 | tarasam@tds.net | 11/13/2017 14:26 |

BLM_0160205



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| barry pennell | po box 1674 | bpennell2013@gmail.com | 11/13/2017 14:48 |
| Shawn LaBounty | 42588 Hwy 133, Paonia, Co 81428 | shawnlab@tds.net | 11/13/2017 18:15 |
| Heidi Reese | 39650 Hadley St. | hnreese72@icloud.com | 11/13/2017 19:26 |
| Mark Waltermire | 10872 3500 Rd., Hotchkiss, CO 81419 | thistlewhistlefarm@gmail.com | 11/13/2017 19:48 |
| Jack Ferrell | 39667 Panorama Rd | jackferrell@gmail.com | 11/14/2017 7:28 |
| daniel Roman | 238 B W Bridge st Hotchkiss co 81419 | daniel@westernslopesup.com | 11/14/2017 10:13 |
| Robin Nicholoff | 36295 Sunshine Mesa Rd | robgret@tds.net | 11/14/2017 10:19 |
| Anthony Hinkel | 37601 Hwy 133 #944, Paonia CO 81428 | info@aeolianacres.com | 11/14/2017 14:28 |
| Mary Jursinovic | 11491 3800 Rd, Paonia, Co. 81428 | cbpots@yahoo.com | 11/14/2017 19:38 |
| vicki halladay | 461 riverside dr., hotchkiss, co  81419 | pvhalladay@hotmail.com | 11/14/2017 21:09 |
| Jayme Henderson | 14139 Runzel Gulch Road, Hotchkiss, CO 81419 | jaymemarie@mac.com | 11/14/2017 22:14 |



**WESTERN SLOPE**
**CONSERVATION CENTER**

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, glarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Julie Hilton | 21467 Hamilton Rd Cedaredge, CO 81413 | juliehilton2@gmail.com | 11/15/2017 7:33 |
| Michelle Livingston | 12347 3600 Rd, Hotchkiss,CO 81419 | msalivingston@gmail.com | 11/15/2017 7:53 |
| Steve Ela, Ela Family Farms | 30753 L Road, Hotchkiss, CO  81419 | steve@elafamilyfarms.com | 11/15/2017 11:00 |
| Daniel Larcker | 17348 Farmers Mine Road Paonia CO 81428 | dflarck@gmail.com | 11/15/2017 13:31 |
| Jason Trimm | Holy Terror Farm 42485 Highway 133 Paonia, co 81428 | jasonptrimm@yahoo.com | 11/16/2017 5:40 |
| joyce schrieber | 1523 1st Street | joyceschrieber@yahoo.com | 11/16/2017 7:06 |
| John Michael Tealdi | | jmtealdi@yahoo.com | 11/16/2017 8:43 |
| Laurene Hernon Bissell | 337 Rio Grande Ave | laurenejessie@gmail.com | 11/16/2017 11:08 |
| Gail Carey Masia | 39978 Panorama Rd. Paonia, CO  81428 | gail@europacreative.com | 11/16/2017 11:25 |
| charles gilman | 26876 redlands mesa rd | cgilman@sopris.net | 11/16/2017 14:09 |
| Marilee Gilman | 26876 Redlands Mesa Rd, Hotchkiss, CO | marileeg@sopris.net | 11/16/2017 14:35 |



WESTERN SLOPE
CONSERVATION
CENTER

**Delivered to: Bureau of Land Management, 2465 S. Townsend Ave., Montrose, CO 81401**
**Dana Wilson, Associate District Manager, Southwest District Office, dmwilson@blm.gov**
cc - Greg Larson, Field Manager, Uncompahgre Field Office, giarson@blm.gov
cc - Joseph Meyer, District Manager, Southwest District Office, 970-240-5300
cc - Gregory Shoop, Acting State Director, Colorado State Office, gshoop@blm.gov

**To Whom it May Concern:**
Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as
sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective
measures in the final Uncompahgre RMP EIS. The North Fork Alternative is a common sense proposal for
managing the many public natural resources within the North Fork of the Gunnison watershed.

| Name | Address | Email Address | Date |
|------|---------|---------------|------|
| Angela Spotts | PO Box 930 | angelaspotts@me.com | 11/16/2017 18:02 |
| Twila Penland | 1921 77th Street | twilapenland@sbcglobal.net | 11/16/2017 20:30 |
| Megan Randall | PO BOX 1624 | megan.e.randall@gmail.com | 11/18/2017 20:04 |
| Leslie Kaminski | 710 Cedar Dr. Hotchkiss, Colorado 81419 | kaminskileslie@gmail.com | 11/19/2017 11:15 |
| Alyssa Clarida | 615 Gunnison Ave, Grand Junction, CO | alyssaclarida@gmail.com | 11/19/2017 11:47 |
| Andrea Lecos | 41218 Lamborn Mesa Rd, Paonia, CO 81428 | adlecos@gmail.com | 11/19/2017 23:58 |
| Paul Kimpling | 39899 Mathews Ln. Paonia, Colorado 81428 | paul.kimpling@gmail.com | 11/20/2017 0:10 |
| Zachary Hooley-Underwood | 343 N. 7th Street Montrose, CO 81401 | zginkco@gmail.com | 11/20/2017 7:06 |

# WESTERN SLOPE CONSERVATION CENTER

October 12, 2017

Bureau of Land Management
Greg Larson, Field Manager, Uncompahgre Field Office
Joseph Meyer, District Manager, Southwest District Office
Colorado State Office

To Whom it May Concern:

Thank you for including the North Fork Alternative in the draft Uncompahgre Resource Management Plan as sub-alternative B1. I strongly encourage the BLM to include the North Fork Alternative and other protective measures in the final Uncompahgre RMP EIS.

The North Fork Alternative is a common sense proposal for managing the many public natural resources within the North Fork watershed.

| Signature | Name | Address | Email |
|---|---|---|---|
| | Emily Wassell | 40702 German Creek | wassell.emily@gmail.com |
| | Jack Ferrell | 39667 Panorama Rd | jackferrell@gmail.com |
| | Dane Goldberg | 419 Main, Paonia | mudwomyn@hotmail.com |
| | Dana Bradley | 324 Oak Ave Paonia | perennialent@gmail.com |
| | Brittney Escobar | 153 S. 7th St. | bracee@yahoo.com |
| | Mary Marshall | 12999 minorichrd | mary@solarenergy.org |
| | Catherine Begley | 310 Oak Ave, Paonia Co | cobegley@gmail.com |
| | Beata Kamza | 330 N Fork Paonia, Co gaia | beata@solarenergy.org |
| | Frankie Lee Slater | Earth | liveartofliving.com |
| | Deborah Kimball | 13650 Gunnison mtn rd Paonia, CO | debsimkm@gmail.com 81428 |
| | Betsy Johnson | 1010 3rd St Paonia, CO | willowill5400@hotmail.com |
| | Chelsea Bookout | 608 Orchard Ave. Paonia, CO | chelseabookout@gmail.com |
| | Jax C. Bagley | 310 oak Ave 63122 | jaybagley@gmail.com |
| | Nancy Adams | 1005 N. Taylor Ave | nyadams@yahoo |
| | Mark Adams | 1005 N. TAYLOR Ave | RBNTUF@GMAIL.COM |

# WESTERN SLOPE
# CONSERVATION
# CENTER

| NAME | SIGNATURE | ADDRESS | EMAIL |
|------|-----------|---------|-------|
| MICK Johnson | Mick Johnson | 1010 3rd St. PAONIA, CO | MICKJOHNSON1212@GMAIL.CO |
| Chelsea Williams | | 135 Box Elder Ave | C.bassix@gmail.com |
| Judd Kleinman | | 47 PanAmerican Ave | juddkleinman@mac.com |
| David Niemeye | | 114 orchard ave | dave@allgmail.com |
| Chloe peppercorn | | Pobox 922 PAONIA | chloepeppercorn@gmail.co |
| Amber Kleinman | | 47 PanAmerican | alchemyamber@gmail.com |
| Olbus Rainbow | | PO Box 971, Paonia | Rainbow@t2C.07@.com |



THE DEPUTY SECRETARY OF THE INTERIOR
WASHINGTON

ORDER NO. 3360

Subject: Rescinding Authorities Inconsistent with Secretary's Order 3349,
"American Energy Independence"

Sec. 1 **Purpose**. The primary action of this Order continues the direction in Secretary's Order 3349, "American Energy Independence," dated, March 29, 2017 (SO 3349), to review all actions taken pursuant to Secretary's Order 3330, "Improving Mitigation Policies and Practices of the Department of the Interior," dated, October 31, 2013 (SO 3330), for possible reconsideration, modification, or rescission, as appropriate. This Order rescinds specific documents and policies that are inconsistent with goals identified in SO 3349. By doing so, this Order continues to implement Executive Order 13783, "Promoting Energy Independence and Economic Growth," signed by the President on March 28, 2017 (EO 13783).

A secondary action is to establish the groundwork to re-evaluate mitigation policies and guidance throughout the Department of the Interior (Department). The Department seeks to implement statutorily-based, effective and transparent compensatory mitigation principles and standards, across its bureaus and offices that are consistent with explicit direction provided by Congress and that provide a level of certainty to all involved parties.

Sec. 2 **Authorities**. This Order is issued under the authority of Section 2 of Reorganization Plan No. 3 of 1950 (64 Stat. 1262), as amended, and other applicable statutory authorities.

Sec. 3 **Background**. Among other provisions, EO 13783 directs the Department to review all existing regulations, orders, guidance documents, policies, and any other similar actions that potentially burden the development or utilization of domestically produced energy resources. The EO 13783 also:

     a.     Revoked four Presidential actions: (1) Executive Order 13653 of November 1, 2013, "Preparing the United States for the Impacts of Climate Change;" (2) Presidential Memorandum of June 25, 2013, "Power Sector Carbon Pollution Standards;" (3) Presidential Memorandum of November 3, 2015, "Mitigating Impacts on Natural Resources from Development and Encouraging Related Private Investment;" and (4) Presidential Memorandum of September 21, 2016, "Climate Change and National Security;"

     b.     Rescinded two reports: (1) Report of the Executive Office of the President of June 2013, "The President's Climate Action Plan;" and (2) Report of the Executive Office of the President of March 2014, "Climate Action Plan Strategy to Reduce Methane Emissions;" and

     c.     Directed the Council on Environmental Quality to rescind its final guidance entitled "Final Guidance for Federal Departments and Agencies on Consideration of Greenhouse

Gas Emissions and the Effects of Climate Change in National Environmental Policy Act Reviews."

The SO 3349 implements the review of agency actions directed by EO 13783. Among other provisions, SO 3349 revokes SO 3330 and directs that all actions taken pursuant to SO 3330 be reviewed for possible reconsideration, modification, or rescission, as appropriate. The SO 3349 further directs each bureau and office to review all existing regulations, orders, guidance documents, policies, instructions, notices, implementing actions, and any other similar action arising from the Presidential actions described above and, to the extent deemed necessary, initiate a process to suspend, revise, or rescind any such actions. Consistent with the aforementioned mandates, this Order represents the next step in implementing EO 13783 and SO 3349 by rescinding policies and documents that are based on authorities that have now been revoked by the President and the Secretary.

Implemented properly and appropriately, compensatory mitigation can be an appropriate tool used to reduce or off-set impacts from specific actions. Compensatory mitigation can be effectively used to facilitate development of our nation's resources by reducing impacts, but we must be guided by Congressional directives. The Department recognizes the appropriateness of compensatory mitigation in certain instances and the role it serves in the legal use and management of public lands under the jurisdiction of the Department.

Sec. 4 **Policy**.

   a.   To continue implementing EO 13783 and SO 3349, the following documents are inconsistent with EO 13783 and SO 3349 and/or based on other outdated authorities, are hereby rescinded:

      (1)   Departmental Manual Part 523, Chapter 1:  Climate Change Policy, dated, December 20, 2012;

      (2)   Departmental Manual Part 600, Chapter 6:  Landscape-Scale Mitigation Policy, dated, October 23, 2015;

      (3)   Bureau of Land Management, Manual Section 1794 - Mitigation, dated, December 22, 2016; and

      (4)   Bureau of Land Management, Mitigation Handbook H-1794-1, dated, December 22, 2016.

   b.   In addition, I hereby direct the Director, Bureau of Land Management (BLM) to assess whether the BLM Draft Regional Mitigation Strategy for the Northeastern National Petroleum Reserve in Alaska, BLM/AK/PL-16/008+1600+9301, issued September 2016 ("Draft Regional Mitigation Strategy"), and Technical Report Number ANL/EVS-16/5 BLM/AK/PL-16/009+1600+930 ("Technical Report") are consistent with EO 13783, SO 3349, and/or the policies described herein; and begin the process to revise the draft Regional Mitigation Strategy and Technical Report as needed, including seeking public comment where necessary.

3

     c.     Finally, I hereby direct BLM to revise and reissue Instruction Memorandum (IM) No. 2008-204, issued September 30, 2008, within 30 days following the date of this Order. (The IM 2008-204 outlines policy for the use of offsite mitigation for authorizations issued by the BLM.) Upon completion of the revision, BLM shall immediately effectuate the revised IM.

Sec. 5 **Implementation**.  The Assistant Secretary – Policy, Management and Budget; Assistant Secretary – Land and Minerals Management; Assistant Secretary – Water and Science; and Assistant Secretary for Fish and Wildlife and Parks are hereby directed to take immediate steps to effectuate the rescission of the policies and documents listed above, and other actions herein, that are within their purview.

Sec. 6 **Effect of the Order**.  This Order is intended to improve the internal management of the Department.  This Order and any resulting reports or recommendations are not intended to, and do not, create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities, or entities, its officers or employees, or any other person.  To the extent there is any inconsistency between the provisions of this Order and any Federal laws or regulations, the laws or regulations will control.

Sec.7 **Expiration Date**.  This Order is effective immediately.  It will remain in effect until it is amended, suspended, or revoked.

Deputy Secretary of the Interior

Date:    DEC 2 2 2017

## Angie Adams

| | |
|---|---|
| **From:** | mloscalzo@blm.gov on behalf of UFO_RMP, BLM_CO <blm_co_ufo_rmp@blm.gov> |
| **Sent:** | Tuesday, February 6, 2018 4:51 PM |
| **To:** | ufo- ar |
| **Subject:** | Fwd: Theodore Roosevelt Conservation Partnership Letter RE: UFO DRMP |

RMP Project Manager
BLM Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, CO  81401

---------- Forwarded message ----------
From: **Larson, Gregory** <glarson@blm.gov>
Date: Wed, Jan 3, 2018 at 10:36 AM
Subject: Re: Theodore Roosevelt Conservation Partnership Letter RE: UFO DRMP
To: Nicholas Payne <npayne@trcp.org>
Cc: "uformp@blm.gov" <uformp@blm.gov>, "Loscalzo, Matthew" <mloscalzo@blm.gov>

Nick,

I've received your letter. Thanks for your interest in the UFO RMP. Best,

Greg

On Thu, Dec 21, 2017 at 5:29 PM, Nicholas Payne <npayne@trcp.org> wrote:

Greetings,

Please find the attached letter for your consideration in developing the final RMP. We appreciate the opportunity and look forward to working with the BLM and expanding the breadth of our partners moving forward.

Best,

--------------------------------------------------------------------------------------------------------------

Nick Payne

Colorado Field Representative

Theodore Roosevelt Conservation Partnership

720.369.5499 (cell)

BLM_0160214

npayne@trcp.org

trcp.org



--
Greg Larson
Field Manager
Uncompahgre Field Office
Bureau of Land Management
970.240.5338
970.596.1515 (c)

BLM_0160215





## Planning Area Land Ownership - 3,096,780 Total Acres

Map 1

- ☐ Uncompahgre RMP Planning Area
- ▨ National Conservation Area
- ■ BLM (675,800 acres, 22%)
- ■ NPS (27,130 acres, 1%)
- ☐ Private (1,125,350 acres, 36%)
- ■ State (20,110 acres, 1%)
- ■ US Forest Service (1,248,390 acres, 40%)
- ■ Federal Mineral Estate (971,260 acres, 31%)

BLM_0160216



## Special Designations - Alternative A

- **Uncompahgre RMP Planning Area**
- **ACEC - 30,000 ac.** (red)
- **Wilderness Study Area (WSA) - 36,160 ac.** (hatched)
- **Wilderness Area- 8,060 ac.** (orange)

Eligible Wild and Scenic Rivers (WSR) - 64,580 ac.

- **Recreational (23,190 ac.)** (blue)
- **Scenic (23,310 ac.)** (green)
- **Wild (18,080 ac.)** (brown)

Map 2

BLM_0160217



## Special Designations - Alternative D



Uncompahgre RMP Planning Area

ACEC - 51,320 ac.

Wilderness Study Area (WSA) - 36,160 ac.

Wilderness Area- 8,060 ac.

Suitable Wild and Scenic Rivers (WSR) - 35,090 ac.

Recreational (19,930 ac.)

Scenic (630 ac.)

Wild (14,530 ac.)

Map 3

BLM_0160218



## Special Designations - Proposed RMP



☐ Uncompahgre RMP Planning Area

🟥 ACEC - 31,310 ac.

▨ Wilderness Study Area (WSA) - 36,160 ac.

🟧 Wilderness Area- 8,060 ac.

Suitable Wild and Scenic Rivers (WSR) - 35,090 ac.

🟦 Recreational (19,930 ac.)

🟩 Scenic (630 ac.)

🟫 Wild (14,530 ac.)

Map 4

BLM_0160219



**Uncompahgre Field Office**

0    10    20 Miles

N

Junction

Delta

Paonia

Montrose

Norwood

Ouray

Colorado

Uncompahgre
Field Office



## Other Conservation Resources - Alternative A

☐ Uncompahgre RMP Planning Area          ▨ Ecological Emphasis Areas - 0 ac.

Lands Managed for Wilderness Characteristics

🟩 Managed to Preserve Wilderness Characteristics - 0 ac.

🟥 Managed to Minimize Impacts to Wilderness Characteristics
While Managing for Other Uses - 0 ac.

Map 5

BLM_0160220



# Other Conservation Resources - Alternative D

⬛ Uncompahgre RMP Planning Area ▨ Ecological Emphasis Areas - 177,700 ac.

Lands Managed for Wilderness Characteristics

🟩 Managed to Preserve Wilderness Characteristics - 18,320 ac.

🟥 Managed to Minimize Impacts to Wilderness Characteristics While Managing for Other Uses - 0 ac.

Map 6

BLM_0160221





**Other Conservation Resources - Proposed RMP**

☐ Uncompahgre RMP Planning Area

▨ Ecological Emphasis Areas - 90,050 ac.

Lands Managed for Wilderness Characteristics

■ Managed to Preserve Wilderness Characteristics - 4,340 ac.

■ Managed to Minimize Impacts to Wilderness Characteristics While Managing for Other Uses - 36,670 ac.

Map 7





**Fluid Leasable Minerals (Oil & Gas and Geothermal) - Alternative A**

Uncompahgre RMP Planning Area

Timing Limitations - 501,100 ac.

Closed - 44,220 ac.

Standard Leasing Terms and Conditions - 726,340 ac.

Controlled Surface Use - 119,860 ac.

No Surface Occupancy - 25,610 ac.

Map 8

BLM_0160223



## Fluid Leasable Minerals (Oil & Gas and Geothermal) - Alternative D



| | |
|---|---|
| ⬜ Uncompahgre RMP Planning Area | 🟩 Standard Leasing Terms and Conditions - 288,450 ac. |
| ▨ Timing Limitations - 865,970 ac. | 🟨 Controlled Surface Use - 339,420 ac. |
| 🟥 Closed - 50,060 ac. | 🟧 No Surface Occupancy - 238,140 ac. |

Map 9

BLM_0160224



## Fluid Leasable Minerals (Oil & Gas and Geothermal) - Proposed RMP



- Uncompahgre RMP Planning Area
- Timing Limitations - 871,810 ac.
- Closed - 44,220 ac.
- Standard Leasing Terms and Conditions - 276,380 ac.
- Controlled Surface Use - 323,090 ac.
- No Surface Occupancy - 247,750 ac.

Map 10

BLM_0160225



# Fluid Mineral Potential

⬛ Uncompahgre RMP Planning Area

▨ Fluid Mineral Estate

▨ Wilderness and WSAs - Potential Not Reported

⬜ Conventional Oil & Gas Potential

Map 11

BLM_0160226



# Uranium and Other Locatable Minerals - Alternative A

☐ Uncompahgre RMP Planning Area

🟥 Withdrawn from Locatable Mineral Entry - 28,060

🟦 Recommend for Withdrawal from Locatable Mineral Entry - 27,690 ac.

⬛ Open to Uranium and Other Locatable Minerals - 840,440 ac.

Map 12

BLM_0160227





## Uranium and Other Locatable Minerals - Alternative D

☐ Uncompahgre RMP Planning Area

🟥 Withdrawn from Locatable Mineral Entry - 28,060

🟦 Recommend for Withdrawal from Locatable Mineral Entry - 55,880 ac.

⬛ Open to Uranium and Other Locatable Minerals - 812,250 ac.

Map 13

BLM_0160228



## Uranium and Other Locatable Minerals - Proposed RMP



⬜ Uncompahgre RMP Planning Area

🟥 Withdrawn from Locatable Mineral Entry - 28,060 ac.

🟦 Recommend for Withdrawal from Locatable Mineral Entry - 22,410 ac.

⬛ Open to Uranium and Other Locatable Minerals - 854,000 ac.

Map 14

BLM_0160229



## Recreation Designations - Alternative A



☐ Uncompahgre RMP Planning Area

🟥 Special Recreation Management Area (SRMA) - 49,320 ac.

🟦 Extensive Recreation Managment Area (ERMA) - 0 ac.

▨ Open OHV Area - 8,560 ac.

Map 15

BLM_0160230





## Recreation Designations - Alternative D

▢ Uncompahgre RMP Planning Area

■ Special Recreation Management Area (SRMA) - 124,400 ac.

■ Extensive Recreation Managment Area (ERMA) - 73,310 ac.

▨ Open OHV Area - 0 ac.

Map 16

BLM_0160231



## Recreation Designations - Proposed RMP

☐ Uncompahgre RMP Planning Area

🟥 Special Recreation Management Area (SRMA) - 128,610 ac.

🟦 Extensive Recreation Managment Area (ERMA) - 64,790 ac.

▨ Open OHV Area - 3,950 ac.

Map 17

BLM_0160232



## Uncompahgre Field Office

Junction
Paonia
Delta
Montrose
Norwood
Ouray

Colorado
Uncompahgre
Field Office

## Coal - Alternative A

- ☐ Uncompahgre RMP Planning Area
- 🟥 Congressionally Closed to Coal Leasing - 580 ac.
- 🟦 Unsuitable for surface mining and surface mining operations - 490 ac.
- ▨ Unacceptable for Coal Leasing Consideration - 0 ac.
- ⬛ Acceptable for Coal Leasing - 144,790 ac.

Map 18

BLM_0160233



## Coal - Alternative D and Proposed RMP

☐ Uncompahgre RMP Planning Area

🟥 Congressionally Closed to Coal Leasing - 1,910 ac.

🟦 Unsuitable for surface mining and surface mining operations 2,500 ac.

▨ Unacceptable for Coal Leasing - 45,690 ac.

⬛ Acceptable for Coal Leasing - 371,400 ac.

Map 19

BLM_0160234



## Lands and Realty - Alternative A



☐ Uncompahgre RMP Planning Area

▨ Utility Corridors - 297,930 ac.

■ Right of Way Exclusion Areas - 85,080 ac.

■ Right of Way Avoidance Areas - <22,780 ac.

Map 20

BLM_0160235



## Lands and Realty - Alternative D



Uncompahgre RMP Planning Area

Utility Corridors - 64,180 ac.

Right of Way Exclusion Areas - 53,700 ac.

Right of Way Avoidance Areas - 276,500

Map 21

BLM_0160236



## Lands and Realty - PRMP



☐ Uncompahgre RMP Planning Area

Utility Corridors - 64,180 ac.

Right of Way Exclusion Areas - 51,700 ac.

Right of Way Avoidance Areas - 265,110 ac.

Map 22

BLM_0160237



**U.S. Department of the Interior**
**Bureau of Land Management**

# Uncompahgre Field Office PRMP

Washington Office Briefing, BLM Proposed Resource Management Plan, January 2018



## Planning Area

**Total Surface Acres:** 3,096,780

### SURFACE ADMINISTRATION

➢ **USFS (40%) -** 1,248,390 acres
➢ **Private (36%) -** 1,125,350 acres
➢ **BLM (22%) - 675,800 acres**
➢ **NPS (1%) -** 27,130 acres
➢ **State (1%) -** 20,110 acres

Portions of two NCAs within the Uncompahgre Field Office are managed under separate RMPs.

### BLM DECISION AREA

➢ 971,260 acres of BLM Subsurface
➢ 675,800 acres of BLM Surface

### COUNTY OVERLAP

➢ **Montrose County (66%)**
➢ **Delta County (18%)**
➢ **San Miguel County (8%)**
➢ **Ouray County (4%)**
➢ **Gunnison County (2%)**
➢ **Mesa County (2%)**

Refer to Map 1

1

**U.S. Department of the Interior**
**Bureau of Land Management**

**UNCOMPAHGRE FIELD OFFICE**
**Proposed RMP**

# Summary of Decision

- The Uncompahgre Field Office (UFO) Proposed Resource Management Plan (PRMP) will replace the 1985 San Juan/San Miguel RMP and the 1989 Uncompahgre Basin RMP.

- Based on comprehensive analysis, the BLM UFO has chosen a PRMP that would best reflect the Administration's priorities by balancing resource uses, promoting economic growth, and ensuring cooperative resource protection.

- Issues with a high level of interest that affect energy resources addressed in the RMP include:

| |
|---|
| Fluid and Coal Mineral Leasing |
| Uranium and Other Locatable Minerals |
| Recreation Designations |
| Livestock Grazing and Fish and Wildlife |
| Rights of Way and Utility Corridors |
| Special Designations:<br>• Areas of Critical Environmental Concern<br>• Wilderness Study Areas<br>• Lands Managed as Wilderness<br>• Wild and Scenic Rivers |
| Other Conservation Resources:<br>• Lands Managed for Wilderness Characteristics<br>• Ecological Emphasis Areas |

2

BLM_0160239



U.S. Department of the Interior
Bureau of Land Management

**UNCOMPAHGRE FIELD OFFICE**
**Proposed RMP**

# Jobs

BLM Colorado anticipates that the Proposed RMP will enable the UFO to continue enhancing employment opportunities locally, regionally, and nationally. Activities associated with UFO-administered lands and mineral estate include:

- Exploration, development, and production of minerals and mineral materials, including oil and gas, solid leasable minerals (such as coal), and locatable minerals including Uranium
- Rights-of-Way and Designated Communication Sites
- Livestock production
- Recreational and Motorized/Nonmotorized Uses
- Forest Woodland Products

3

BLM_0160240



**U.S. Department of the Interior**
**Bureau of Land Management**

**UNCOMPAHGRE FIELD OFFICE**
**Proposed RMP**

# Stakeholders

| Cooperating Agencies | Primary Comments/Concerns | Addressed in PRMP |
|---|---|---|
| USFWS | Not enough protection from surface disturbing activities for T&E species. | PRMP applies a NSO stipulation in some T&E species habitat. |
| Colorado Parks and Wildlife | Stipulations concerning wildlife are not measureable | PRMP revised some wildlife objectives to be consistent with AIM protocol. |
| | Inadequate land protection, resource allocation, and stipulations to protect and enhance Gunnison Sage Grouse | Brought forward comprehensive management for Gunnison Sage Grouse habitat. Includes NSO stipulation for occupied critical habitat. |
| | Does not reflect the policy guidance on managing Domestic Sheep and Goats to Sustain Wild Sheep | PRMP updated to reflect MS-1730 policy related to Bighorn Sheep. |
| Delta County | Requested the North Delta OHV Area remain Open for economic reasons. | The PRMP includes the North Delta OHV area as open to cross country motorized uses. |
| Montrose County | Camelback, Dry Creek and Roc Creek areas should not be managed to preserve wilderness characteristics. | Only Roc Creek (4,340 acres) managed for wilderness characteristics. |
| | Roubideau SRMA should not be managed to preserve wilderness characteristics and mechanized travel should be allowed. | Roubideau SRMA provides protections for wilderness characteristics while still allowing motorized and mechanized uses in specific zones. |
| | Kinikin Hills SRMA should allow for mechanized travel which would provide for mountain biking opportunities | Under the PRMP, the Kinikin Hills area would be managed as an ERMA that would permit mechanized travel. |
| Ouray County | Supported CPW specified buffers, timing limitations, BMPs. | Revised stipulations to better match CPW policy and BLM CO Statewide Stipulations. |
| | Supported special designations and other management policies to protect sensitive species and habitat. | Ecological emphasis areas in Ouray county carried forward. |
| San Miguel County | Maintain San Miguel River Corridor SRMA to support large local demand for these types of services. | The PRMP includes the 36,020-acre San Miguel SRMA to preserve recreation opportunities. |
| | Supported expansion of the existing San Miguel River ACEC and its withdrawal from mineral entry. | San Miguel River ACEC carried forward in current size; not recommended for withdrawal from mineral entry. |

4

BLM_0160241

**U.S. Department of the Interior
Bureau of Land Management**

**UNCOMPAHGRE FIELD OFFICE
Proposed RMP**

# Changes to Resource Uses – Summary

| Resource | Preferred Alternative to Proposed Plan |
|---|---|
| Fluid Minerals | Increased fluid minerals available for leasing by 5,840 acres, with 4,410 acres in areas of high or moderate mineral potential. |
| Locatable minerals, including uranium | Reduced acres recommended for withdrawal by 33,470 acres (60%). |
| Recreation | Brought forward the North Delta Open OHV Area; designated it as a SRMA. |
| Threatened & Endangered/ Special Status Species | Revised PRMP to make decisions for management of the Gunnison Sage Grouse's habitat and newly designated critical habitat. The UFO RMP is now likely to publish prior to the multi-area Gunnison Sage Grouse Plan Amendment |
| Special Designations | Did not bring forward two large ACECs in the PRMP. Reduced ACECs by 20,010 acres (39%) |

5

BLM_0160242

## Fluid Mineral Leasing – Fluid Mineral Estate

| | No Action | Alternative D BLM Preferred | BLM Proposed | Change from Alt. Preferred to Proposed |
|---|---|---|---|---|
| Land Status | Acres (Percent) | Acres (Percent) | Acres (Percent) | |
| | Decision Area for Fluid Minerals – 916,030 acres | | | |
| Available for Leasing | 871,810 (95%) | 865,970 (95%) | 871,810 (95%) | +5,840 |
| Open – TL | 501,100 (55%) | 865,970 (95%) | 871,810 (95%) | +5,840 |
| Closed – NL | 44,220 (5%) | 50,060 (5%) | 44,220 (5%) | -5,840 |
| Open – Standard Leasing Terms & Conditions | 726,340 (79%) | 288,450 (31%) | 276,380 (30%) | -12,070 |
| Open – CSU | 119,860 (13%) | 339,420 (37%) | 323,090 (35%) | -24,640 |
| Open – NSO | 25,610 (3%) | 238,140 (26%) | 247,750 (27%) | +9,610 |

**Proposed Changes from Draft to Final:**
- Decrease lands closed to fluid mineral leasing by 12 percent.
- Limit No Leasing to Wilderness Areas and WSAs.
- Define NSO and CSU using BLM CO Statewide Stipulations developed by our fluid minerals program
- Increase NSO and CSU slightly to include newly designated critical habitat for the Gunnison Sage Grouse, and discovery of additional threatened plant populations

Refer to Map 2

6

**U.S. Department of the Interior**
**Bureau of Land Management**

**UNCOMPAHGRE FIELD OFFICE**
**Proposed RMP**

# Coal Mineral Leasing

|  | No Action | BLM Draft Preferred Alternative | BLM Proposed | Change from Preferred to Proposed |
|---|---|---|---|---|
| Resource Status | Acres (percent) | Acres (percent) | Acres (percent) | Acre Change |
| Coal Resource Development Potential Area | 145,860 | 421,500 | 421,500 | 0 |
| Congressionally Closed | 580 (<1%) | 1,910 (<1%) | 1,910 (<1%) | 0 |
| Unsuitable | 490 (<1%) | 2,500 (1%) | 2,500 (1%) | 0 |
| Unacceptable | 0 (0%) | 45,690 (11%) | 45,690 (11%) | 0 |
| Acceptable | 144,790 (99%) | 371,400 (88%) | 371,400 (88%) | 0 |

**Proposed Changes from Draft to Final**:
- None.
- Moderate to high coal mineral potential in the UFO is limited. The Proposed RMP keeps these limited areas open to leasing to support American energy independence and jobs in the local communities.

Refer to Map 3

7

BLM_0160244

**U.S. Department of the Interior**
**Bureau of Land Management**

# Uranium and Other Locatable Minerals

| | No Action | BLM Draft Preferred Alternative | BLM Proposed | Change from Preferred to Proposed |
|---|---|---|---|---|
| Resource Status | Acres (percent) | Acres (percent) | Acres (percent) | Acre Change |
| Currently withdrawn | 28,060 (3%) | 28,060 (3%) | 28,060 (3%) | 0 |
| Recommended for Withdrawal | 27,690 (3%) | 55,880 (6%) | 22,410 (3%) | -33,470 |
| Open for Location | 840,440 (94%) | 812,250 (91%) | 854,000 (94%) | +41,750 |

**Proposed Changes from Draft to Final:**

- Increased lands open for locatable minerals such as Uranium and precious metals by reducing the lands recommended to the Secretary for withdrawal by 60 percent.

- This increase supports the Administration's priorities for energy independence and job creation.

Refer to Map 4

8

BLM_0160245

**U.S. Department of the Interior**
**Bureau of Land Management**

**UNCOMPAHGRE FIELD OFFICE**
**Proposed RMP**

# Recreation Designations

| | No Action | BLM Draft Preferred Alternative | BLM Proposed | Change from Preferred to Proposed |
|---|---|---|---|---|
| Land Status | Acres (percent) | Acres (percent) | Acres (percent) | Acre Change |
| SRMA | 49,320 (7%) | 124,400 (18%) | 128,610 (19%) | +4,210 |
| ERMA | 0 (0%) | 73,310 (11%) | 64,790 (10%) | -8,520 |
| Total | 49,320 | 197,710 | 193,410 | -4,300 |
| OHV Open Area | 8,560 | 0 | 3,950 | +3,950 |

**Proposed Changes from Draft to Final:**
- NSO stipulation changed to CSU in several SRMAs to support the Administration's energy independence priority.
- Opened to locatable mineral entry some SRMAs and ERMAs proposed for withdrawal under Alternative D.
- Included the OHV Open Area in North Delta to address public comments and Delta and Montrose county support for keeping area open to OHV use; benefits local economies and supports the Administration's Getting America Back to Work initiative through job creation, as well as the Shared Conservation Stewardship priority.
  - Reduced size of OHV Open Area by 54% to accommodate USFWS and CPW concerns regarding existing populations of ESA-listed Hookless Cactus in this area.
  - Changed proposed management of the North Delta ERMA to an SRMA to better address desire of local communities for managed recreation opportunities in this area.

Refer to Map 5

9

BLM_0160246

**U.S. Department of the Interior**
**Bureau of Land Management**

# Livestock Grazing

| | No Action | BLM Draft Preferred Alternative | BLM Proposed | Change from Preferred to Proposed |
|---|---|---|---|---|
| Land Status | Acres (percent) | Acres (percent) | Acres (percent) | Acre Change |
| Available for Grazing | 619,500 (92%) | 616,830 (91%) | 607,330 (90%) | -9,500 |
| Unavailable for Grazing | 56,300 (8%) | 58,970 (9%) | 68,470 (10%) | +9,500 |
| AUMS | 35,519 | 35,528 | 35,114 | -414 |

**Proposed Changes from Draft to Final:**

- UFO reevaluated all grazing allotments and corrected some minor clerical errors, including allotment AUMs and BLM surface allotment acres.

- Corrected allotment overlap with Gunnison Gorge NCA and Dominquez-Escalante NCA.

- Corrections support the Administration's priority to serve the American family by improving allotment accuracy, traditional land uses, and associated jobs.

10

BLM_0160247

**U.S. Department of the Interior
Bureau of Land Management**

**UNCOMPAHGRE FIELD OFFICE
Proposed RMP**

## Rights of Way (ROW) and Utility Corridors

| | No Action | BLM Draft Preferred Alternative | BLM Proposed | Change from Preferred to Proposed |
|---|---|---|---|---|
| Status | Acres (percent) | Acres (percent) | Acres (percent) | Acre Change |
| Utility Corridors | 297,930 (4%) | 64,180 (9%) | 64,180 (9%) | 0 |
| ROW Exclusion | 85,080 (12%) | 53,700 (8%) | 51,700 (7%) | -2,000 |
| ROW Avoidance | <22,780 (3%) | 276,500 (41%) | 265,110 (39%) | -11,390 |

**Proposed Changes from Draft to Final:**

- ROW exclusion and avoidance lands decreased primarily in SRMAs, ACECs, and lands managed for wilderness characteristics to maximize potential utility corridors in the UFO.

- Supports the Administration's energy independence, conservation stewardship, and jobs priorities.

- Exceptions to ROW exclusion areas include the West-wide Energy Corridor, 100-foot from county roads and highways, private in-holdings for reasonable access, and valid existing rights.

Refer to Map 6

11

BLM_0160248

**U.S. Department of the Interior
Bureau of Land Management**

**UNCOMPAHGRE FIELD OFFICE
Proposed RMP**

# Special Designations

| | No Action | BLM Draft Preferred Alternative | BLM Proposed | Change from Preferred to Proposed |
|---|---|---|---|---|
| Special Designation | Acres (percent) | Acres (percent) | Acres (percent) | Acre Change |
| ACEC | 30,000 (4%) | 51,320 (8%) | 31,310 (5%) | -20,010 |
| Wilderness Study Areas | 36,160 (5%) | 36,160 (5%) | 36,160 (5%) | 0 |
| Lands Managed as Wilderness | 8,060 (1%) | 8,060 (1%) | 8,060 (1%) | 0 |
| Wild & Scenic Rivers | 29 Eligible Segments (154 miles) | | | |
| | 0 | 16 Suitable Segments (105 miles) | | |
| | 64,580 (9%) | 35,090 (5%) | 35,090 (5%) | 0 |

**Proposed Changes from Draft to Final:**

- Two large multi-resource landscape-scale ACECs not supported by Montrose County were not brought forward.
- 289,960 acres found to have Relevant and Important Values – 31,310 acres brought forward to Proposed:
  - **Adobe Badlands** (6,370 acres) – Existing ACEC within a WSA and important hookless cactus refuge to promote its delisting and allow for North Delta OHV Open Area
  - **Biological Soil Crust** (390 acres) - Extremely unique assemblage with limited resource development conflicts; reduced from 1,900 acres (79% decrease)
  - **Fairview South** (610 acres) - Existing ACEC managed to protect endangered plant habitat
  - **Needle Rock** (80 acres) - Existing ACEC managed to protect a unique volcanic formation with high-value scientific, scenic, and interpretive characteristics
  - **Paradox Rock Art** (1,080 acres) - Regionally important to consulting Tribes
  - **San Miguel River** (22,780 acres) - Existing ACEC supported by San Miguel County; important to tourism economy

Refer to Map 7

12

BLM_0160249

**U.S. Department of the Interior
Bureau of Land Management**

**UNCOMPAHGRE FIELD OFFICE
Proposed RMP**

# Other Conservation Resources

| | No Action | BLM Draft Preferred Alternative | BLM Proposed | Change from Preferred to Proposed |
|---|---|---|---|---|
| Land Status | Acres (percent) | Acres (percent) | Acres (percent) | Acre Change |
| Lands Managed for Wilderness Characteristics | 0 (0%) | 18,320 (3%) | 4,340 (1%) | -13,980 |
| Ecological Emphasis Areas | 0 (0%) | 177,700 (26%) | 90,050 (13%) | -87,650 |

**Proposed changes to lands managed for wilderness characteristics:**
- One of seven inventory areas carried forward for management to preserve wilderness characteristics.
- Other inventory areas managed to minimize impacts to wilderness characteristics while managing for other uses.

**Proposed changes to ecological emphasis areas:**
- Areas are managed to emphasize wildlife and habitat. About half of the areas of concern to Delta, Montrose, and Mesa counties are not carried forward.
- Areas carried forward are most important for big game herds and the hunting economy, and promote shared conservation stewardship with USFWS, CPW, San Miguel, and Ouray and Gunnison counties.

Refer to Map 8

13

BLM_0160250



U.S. Department of the Interior
Bureau of Land Management

**UNCOMPAHGRE FIELD OFFICE**
**Proposed RMP**

# Schedule

| Milestone | Target Date |
|---|---|
| CO State Office Briefing on PRMP | January 17, 2018 |
| Prepare Impacts Analysis for Proposed RMP | March 9, 2018 |
| Cooperating Agency Review of PRMP/FEIS | April 27, 2018 |
| SO Review of PRMP/FEIS | July 3, 2018 |
| WO and Solicitor Review of PRMP/FEIS | August 18, 2018 |
| Incorporate Comments and Get Approval on the PRMP | September 19, 2018 |
| Publish NOA in the Federal Register | November 9, 2018 |
| 30-Day Public Protest Period/60-Day Governor's Consistency Review | November 9, 2018 |
| Sign ROD/Approved RMP | February 28, 2019 |
| Publish NOA in the Federal Register | March 22, 2019 |

**Matt Loscalzo, RMP Lead**
**mloscalzo@blm.gov**
**(970)244-5305**

14

BLM_0160251



THE SECRETARY OF THE INTERIOR
WASHINGTON

ORDER NO. 3362

Subject: Improving Habitat Quality in Western Big-Game Winter Range and Migration
Corridors

Sec. 1 **Purpose**. This Order directs appropriate bureaus within the Department of the Interior
(Department) to work in close partnership with the states of Arizona, California, Colorado,
Idaho, Montana, Nevada, New Mexico, Oregon, Utah, Washington, and Wyoming to enhance
and improve the quality of big-game winter range and migration corridor habitat on Federal
lands under the management jurisdiction of this Department in a way that recognizes state
authority to conserve and manage big-game species and respects private property rights.
Through scientific endeavors and land management actions, wildlife such as Rocky Mountain
Elk (elk), Mule Deer (deer), Pronghorn Antelope (pronghorn), and a host of other species will
benefit. Additionally, this Order seeks to expand opportunities for big-game hunting by
improving priority habitats to assist states in their efforts to increase and maintain sustainable big
game populations across western states.

Sec. 2 **Authorities**. This Order is issued under the authority of section 2 of Reorganization Plan
No. 3 of 1950 (64 Stat. 1262), as amended, as well as the Department's land and resource
management authorities, including the following:

      a.     Federal Land Policy and Management Act of 1976, as amended, 43 U.S.C. 1701,
*et seq.*;

      b.     U.S. Geological Survey Organic Act, as amended, 43 U.S.C. 31, *et seq.*;

      c.     National Wildlife Refuge System Improvement Act of 1997, as amended,
16 U.S.C. 668dd *et seq.*; and

      d.     National Park Service Organic Act of 1916, as amended, 54 U.S.C. 100101, *et seq.*

Sec. 3 **Background**. The West was officially "settled" long ago, but land use changes continue
to occur throughout the western landscape today. Human populations grow at increasing rates
with population movements from east and west coast states into the interior West. In many
areas, development to accommodate the expanding population has occurred in important winter
habitat and migration corridors for elk, deer, and pronghorn. Additionally, changes have
occurred across large swaths of land not impacted by residential development. The habitat
quality and value of these areas crucial to western big-game populations are often degraded or
declining.

BLM_0160252

The Bureau of Land Management (BLM) is the largest land manager in the United States (U.S.) with more than 245 million acres of public land under its purview, much of which is found in Western States. The U.S. Fish and Wildlife Service (FWS) and National Park Service (NPS) also manage a considerable amount of public land on behalf of the American people in the West. Beyond land management responsibilities, the Department has strong scientific capabilities in the U.S. Geological Survey (USGS) that can be deployed to assist State wildlife agencies and Federal land managers. Collectively, the appropriate bureaus within the Department have an opportunity to serve in a leadership role and take the initiative to work closely with Western States on their priorities and objectives as they relate to big-game winter range and migration corridors on lands managed by the Department.

Consistent with the American conservation ethic, ultimately it is crucial that the Department take action to harmonize State fish and game management and Federal land management of big-game winter range and corridors. On lands within these important areas, if landowners are interested and willing, conservation may occur through voluntary agreements.

Robust and sustainable elk, deer, and pronghorn populations contribute greatly to the economy and well-being of communities across the West. In fact, hunters and tourists travel to Western States from across our Nation and beyond to pursue and enjoy this wildlife. In doing so, they spend billions of dollars at large and small businesses that are crucial to State and local economies. We have a responsibility as a Department with large landholdings to be a collaborative neighbor and steward of the resources held in trust.

Accordingly, the Department will work with our State partners and others to conserve and/or improve priority western big-game winter range and migration corridors in sagebrush ecosystems and in other ecotypes as necessary. This Order focuses on the Western States of: Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, Utah, Washington, and Wyoming. These States generally have expansive public lands with established sagebrush landscapes along with robust big-game herds that are highly valued by hunters and tourists throughout the Nation.

The Department has broad responsibilities to manage Federal lands, waters, and resources for public benefit, including managing habitat to support fish, wildlife, and other resources. Secretary's Order 3356, "Hunting, Fishing, Recreational Shooting, and Wildlife Conservation Opportunities and Coordination with States, Tribes, and Territories," (SO 3356) was issued on September 15, 2017. SO 3356 primarily focused on physical access to lands for recreational activities, particularly hunting and fishing. This Order is focused on providing access to big game animals by providing direction regarding land management actions to improve habitat quality for big-game populations that could help ensure robust big-game populations continue to exist. Further, SO 3356 includes a number of directives related to working with States and using the best available science to inform development of guidelines, including directing relevant bureaus to:

      a.     Collaborate with State, tribal, and territorial fish and wildlife agencies to attain or sustain State, tribal, and territorial wildlife population goals during the Department's land management planning and implementation, including prioritizing active habitat management

BLM_0160253

3

projects and funding that contributes to achieving wildlife population objectives, particularly for wildlife that is hunted or fished, and identifying additional ways to include or delegate to States habitat management work on Federal lands;

     b.    Work cooperatively with State, tribal, and territorial wildlife agencies to enhance State, tribe, and territorial access to the Department's lands for wildlife management actions;

     c.    Within 180 days, develop a proposed categorical exclusion for proposed projects that utilize common practices solely intended to enhance or restore habitat for species such as sage grouse and/or mule deer; and

     d.    Review and use the best available science to inform development of specific guidelines for the Department's lands and waters related to planning and developing energy, transmission, or other relevant projects to avoid or minimize potential negative impacts on wildlife.

This Order follows the intent and purpose of SO 3356 and expands and enhances the specific directives therein.

Sec. 4  **Implementation**.  Consistent with governing laws, regulations, and principles of responsible public stewardship, I direct the following actions:

     a.    <u>With respect to activities at the national level</u>, I hereby direct the BLM, FWS, and NPS to:

     (1)    Within 30 days, identify an individual to serve as the "Coordinator" for the Department.  The Coordinator will work closely with appropriate States, Federal agencies, nongovernmental organizations, and/or associations to identify active programs focused on big-game winter range and/or migration corridors.  The programs are to be organized and cataloged by region and other geographic features (such as watersheds and principles of wildlife management) as determined by the Deputy Secretary, including those principles identified in the Department's reorganization plan.

     (2)    Within 45 days, provide the Coordinator information regarding:

     (i)    Past and current bureau conservation/restoration efforts on winter range and migration corridors;

     (ii)    Whether consideration of winter range and corridors is included in appropriate bureau land (or site) management plans;

     (iii)    Bureau management actions used to accomplish habitat objectives in these areas;

     (iv)    The location of areas that have been identified as a priority for conservation and habitat treatments; and

4

    (v)  Funding sources previously used and/or currently available to the bureau for winter range and migration corridor conservation/restoration efforts.

    (3)  Within 60 days, if sufficient land use plans are already established that are consistent with this Order, work with the Coordinator and each regional Liaison (see section 4b) to discuss implementation of the plans. If land use plans are not already established, work with the Coordinator and each regional Liaison to develop an Action Plan that summarizes information collected in section 4 (a) (1) and (2), establishes a clear direction forward with each State, and includes:

      (i)  Habitat management goals and associated actions as they are associated with big game winter range and migration corridors;

      (ii)  Measurable outcomes; and

      (iii)  Budgets necessary to complete respective action(s).

  b.  <u>With respect to activities at the State level</u>, I hereby direct the BLM, FWS, and NPS to:

    (1)  Within 60 days, identify one person in each appropriate unified region (see section 4a) to serve as the Liaison for the Department for that unified region. The Liaison will coordinate at the State level with each State in their region, as well as with the Liaison for any other regions within the State. The Liaison will schedule a meeting with the respective State fish and wildlife agency to assess where and how the Department can work in close partnership with the State on priority winter range and migration corridor conservation.

    (2)  Within 60 days, if this focus is not already included in respective land management plans, evaluate how land under each bureau's management responsibility can contribute to State or other efforts to improve the quality and condition of priority big-game winter and migration corridor habitat.

    (3)  Provide a report on October 1, 2018, and at the end of each fiscal year thereafter, that details how respective bureau field offices, refuges, or parks cooperated and collaborated with the appropriate State wildlife agencies to further winter range and migration corridor habitat conservation.

    (4)  Assess State wildlife agency data regarding wildlife migrations early in the planning process for land use plans and significant project-level actions that bureaus develop; and

    (5)  Evaluate and appropriately apply site-specific management activities, as identified in State land use plans, site-specific plans, or the Action Plan (described above), that conserve or restore habitat necessary to sustain local and regional big-game populations through measures that may include one or more of the following:

BLM_0160255

    (i) restoring degraded winter range and migration corridors by removing encroaching trees from sagebrush ecosystems, rehabilitating areas damaged by fire, or treating exotic/invasive vegetation to improve the quality and value of these areas to big game and other wildlife;

    (ii) revising wild horse and burro-appropriate management levels (AML) or removing horses and burros exceeding established AML from winter range or migration corridors if habitat is degraded as a result of their presence;

    (iii) working cooperatively with private landowners and State highway departments to achieve permissive fencing measures, including potentially modifying (via smooth wire), removing (if no longer necessary), or seasonally adapting (seasonal lay down) fencing if proven to impede movement of big game through migration corridors;

    (iv) avoiding development in the most crucial winter range or migration corridors during sensitive seasons;

    (v) minimizing development that would fragment winter range and primary migration corridors;

    (vi) limiting disturbance of big game on winter range; and

    (vii) utilizing other proven actions necessary to conserve and/or restore the vital big-game winter range and migration corridors across the West.

  c. <u>With respect to science</u>, I hereby direct the USGS to:

    (1) Proceed in close cooperation with the States, in particular the Western Association of Fish and Wildlife Agencies and its program manager for the Crucial Habitat Assessment Tool, prior to developing maps or mapping tools related to elk, deer, or pronghorn movement or land use; and

    (2) Prioritize evaluations of the effectiveness of habitat treatments in sagebrush communities, as requested by States or land management bureaus, and identified needs related to developing a greater understanding of locations used as winter range or migration corridors.

  d. <u>I further hereby direct the responsible bureaus and offices within the Department to:</u>

    (1) Within 180 days, to update all existing regulations, orders, guidance documents, policies, instructions, manuals, directives, notices, implementing actions, and any other similar actions to be consistent with the requirements in this Order;

    (2) Within 30 days, provide direction at the state or other appropriate level to revise existing Federal-State memorandums of agreement to incorporate consultation with State agencies on the location and conservation needs of winter range and migration routes; and

BLM_0160256

6

   (3) Consult with State wildlife agencies and bureaus to ensure land use plans are consistent and complementary to one another along the entire wildlife corridor in common instances where winter range or migration corridors span jurisdictional boundaries.

   e. <u>Heads of relevant bureaus</u> will ensure that appropriate members of the Senior Executive Service under their purview include a performance standard in their respective current or future performance plan that specifically implements the applicable actions identified in this Order.

Sec. 5 **Management**. I hereby direct the Deputy Secretary to take is responsible for taking all reasonably necessary steps to implement this Order.

Sec. 6 **Effect of Order**. This Order is intended to improve the internal management of the Department. This Order and any resulting reports or recommendations are not intended to, and do not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities or entities, its officers or employees, or any other person. To the extent there is any inconsistency between the provision of this Order and any Federal laws or regulations, the laws or regulations will control.

Sec. 7 **Expiration Date**. This Order is effective immediately. It will remain in effect until its provisions are implemented and completed, or until it is amended, superseded, or revoked.

Secretary of the Interior

Date: FEB 0 9 2018

BLM_0160257

**Angie Adams**

| | |
|---|---|
| **From:** | Loscalzo, Matthew <mloscalzo@blm.gov> |
| **Sent:** | Thursday, February 15, 2018 10:13 AM |
| **To:** | ufo- ar |
| **Subject:** | Fwd: Suitability Report Edits - Supporting Documents |

---------- Forwarded message ----------
From: **Smith, Roy** <r20smith@blm.gov>
Date: Thu, Feb 15, 2018 at 9:33 AM
Subject: Suitability Report Edits - Supporting Documents
To: Matthew Loscalzo <mloscalzo@blm.gov>
Cc: Jedd Sondergard <jsondergard@blm.gov>, "Sherman (Edd) Franz" <efranz@blm.gov>

📄 **American Whitewater - Assessing Instream Flows ...**

📄 **Draft-Dolores-Project-Drought-Contingency-Plan-...**

📄 **DWCD Water Management Plan 03092015 Final.pdf**

📄 **Gunnison Basin Implementation Plan.pdf**

📄 **Southwest Basin Implementation Plan - Table of ...**

📄 **Southwest Basin Implementation Plan.pdf**

📄 **SWSI2010.pdf**

--
Roy E. Smith
Water Rights, Instream Flows, Wild and Scenic Rivers
Bureau of Land Management
2850 Youngfield St.
Lakewood, CO  80215
phone: 303-239-3940
e-mail:  r20smith@blm.gov

BLM_0160258

--
Matt Loscalzo
Planning & Environmental Coordinator
Uncompahgre Field Office
Bureau of Land Management
Office: 970-240-5305
mloscalzo@blm.gov

BLM_0160259



<u>Assessing Instream Flows that Support Whitewater Recreation in the</u>
<u>San Miguel River Basin.</u>

**Aggregating Defined Recreational Flow-Needs and Hydrologic Data to Quantify**
**Existing Whitewater Recreation Opportunities, and Predict a Change to Boatable Days**
**Attributed to Water Rights Development in Montrose County, Colorado.**

**Nathan Fey**
**Evan Stafford**
American Whitewater

Prepared for:
Deere & Ault Consultants, Inc.
600 South Airport Rd, Suite A-205
Longmont, Colorado 80503

**Abstract**

Streamflow, or the amount of water in a river, affects the quality, quantity, and timing of river-related recreation, such as whitewater boating. In August 2016, American Whitewater was retained by Deere & Ault Consultants to assist in describing the relationship between streamflows and whitewater recreation for the San Miguel River in Southwest Colorado. The goals of the 2016 study are to 1) define the full range of streamflows that support recreational opportunities on the lower San Miguel River, and 2) assist with the assessment of impacts to flow-related whitewater recreation on the San Miguel, attributed to consolidated water rights applications in Montrose County, Colorado. Additionally, this report adds to the dataset used both to a) define recreational attributes and values in the Southwest Basin Implementation Plan and b) supplement the dataset informing the US Bureau of Reclamation's Colorado River Basin Water Supply and Demand Management efforts. This report summarizes the collection and evaluation of data defining whitewater recreation flow-needs on the San Miguel River, and evaluates the predictive change in Boatable Days attributed to potential development of conditional direct flow rights in the Lower San Miguel River.

BLM_0160260

**Contents**

**I. Background: Whitewater Boating and Instream Flows**

**II. Introduction**

**III. Recreational Flow Assessment**
- **Figure 1** San Miguel Sub-basin: Whitewater Boating Study Reaches
*Methods and Locations*
- **Figure 2** Respondent by Craft Type
- **Figure 3** Respondents by Skill Level
*Structural norm approach*
- **Figure 4** Example Flow-Curve, 7-Point Impact Acceptability
*Norm crystallization and Potential for Conflict Index*
- **Figure 5** Example impact acceptability curve with Potential for Conflict Index
*Results and Discussion*
- **Figure 6** Impact acceptability curve with Potential for Conflict Index (*PCI₂)* for example
  segment San Miguel River, Naturita to Confluence at USGS San Miguel River at Uravan, CO
- **Table 1** Example segment San Miguel River Naturita to Confluence Mean Acceptability
  Scores and PCI2 (Flows represented are flow levels at USGS San Miguel River at Uravan, CO
  gage)
- **Table 2** Minimum, Optimal and Range of Acceptable Flows for San Miguel River, by
  Segment

**IV.      Boatable Days Analysis**
*Quantifying Whitewater Boating Opportunities*
- **Table 3** Period of Record sorted by year type - USGS San Miguel River at Uravan, CO gage
- **Figure 7** Hydrology - San Miguel River Naturita to Confluence
  (1995-2010) year types (wet, wet typical, dry typical, and dry ranked by yearly volume in
  years 1975-2010), at USGS San Miguel River at Uravan, CO gage.
- **Table 4** Annual Average Boatable Days, or annual average days when flows are above
  minimum acceptable flows, by year type* for San Miguel River Segments
*Quantifying a Change in Whitewater Boating Opportunities*
- **Table 5** Average Annual Depletions, by Alternative
- **Table 6** Current, Predicted Alternatives Change*, and 5% and 10% Reduction in Annual
  Boatable Days, by year type for San Miguel River Segments
- **Table 7** Current, Predicted Alternative Change*, and 5% and 10% Reduction Yearly Boatable
  Days for low, optimal and high recreation conditions, by year type, for example segment San
  Miguel River, Naturita to the Confluence with the Dolores River.
- **Table 8** Current, Predicted Alternative Change*, and 5% and 10% Reduction Yearly Boatable
  Days for low, optimal and high recreation conditions, by year type, for example segment San
  Miguel River, Pinion to Naturita
- **Table 9** Current, Predicted Alternative Change*, and 5% and 10% Reduction Yearly Boatable
  Days for low, optimal and high recreation conditions, by year type, for example segment San
  Miguel River, Beaver Creek to Pinion

BLM_0160261

**V. Opinions and Conclusion**

**VI. Literature Cited**

**Appendix A.** Online Flow Evaluation Survey

**Appendix B.**
**USGS San Miguel River Study Segments, at Brooks Bridge near Nucla, CO gage**
  - **Figure B1(a)** San Miguel River (1995-2010) year types, with flow thresholds for low, optimal and high, at USGS San Miguel River at Brooks Bridge near Nucla, CO gage.
   *Pinon to Naturita*
  - **Figure B1(b)** Impact Acceptability curve with Potential for Conflict Index ($PCI_2$) for San Miguel River, Pinion to Naturita at USGS San Miguel River at Brooks Bridge near Nucla, CO gage.
  - **Table B1** San Miguel River, Pinon to Naturita Mean Acceptability Scores and $PCI_2$
  *Beaver Creek to Pinon*
  - **Figure B2** Impact Acceptability curve with Potential for Conflict Index ($PCI_2$) for San Miguel River, Beaver to Pinon at USGS San Miguel River at Brooks Bridge near Nucla, CO gage.
  - **Table B2** San Miguel River, Beaver to Pinon Mean Acceptability Scores and $PCI_2$

**USGS San Miguel River Study Segments, near Placerville, CO gage**
  - **Figure B3(a)** San Miguel River (1995-2010) year types, with flow thresholds for low, optimal and high, at USGS San Miguel River near Placerville, CO gage.
  *Specie Creek to Beaver Creek*
  - **Figure B3(b)** Impact Acceptability curve with Potential for Conflict Index ($PCI_2$) for San Miguel River, Specie Creek to Beaver Creek at USGS San Miguel River at Brooks Bridge near Nucla, CO gage.
  - **Table B3** San Miguel River, Specie Creek to Beaver Creek Mean Acceptability Scores and $PCI_2$
  *Down Valley Park to Specie Creek*
  - **Figure B4** Impact Acceptability curve with Potential for Conflict Index ($PCI_2$) for San Miguel River, Down Valley Park to Specie Creek at USGS San Miguel River at Brooks Bridge near Nucla, CO gage.
  - **Table B4** San Miguel River, Down Valley Park to Specie Creek Mean Acceptability Scores and $PCI_2$
  *Bilk Creek to Down Valley Park*
  - **Figure B5** Impact Acceptability curve with Potential for Conflict Index ($PCI_2$) for San Miguel River, Bilk Creek to Down Valley Park at USGS San Miguel River at Brooks Bridge near Nucla, CO gage.
  - **Table B5** San Miguel River, Bilk Creek to Down Valley Park Mean Acceptability Scores and $PCI_2$

BLM_0160262

## I.      Background: Whitewater Boating and Instream Flows

Whitewater boating is a flow dependent recreational use of rivers, and considerable work evaluating flow-recreation relationships has occurred over the last several decades (Brown et al., 1991; Shelby, Brown, & Taylor, 1992; Whittaker and Shelby, 2002). Many flow-recreation studies focus on whitewater boating, such as rafting, kayaking, and canoeing, as flow often determines whether people have opportunities to take a trip and what level of challenge or social value is provided (Whittaker & Shelby, 2000). Different flow levels provide for varied whitewater boating opportunities. As flows increase from zero, different paddling opportunities and challenges exist within ranges of flows on a spectrum: too low, minimal acceptable, technical, optimal, high challenge, and too high. Standard methodologies are used to define these flow ranges based on individual and group flow- evaluations. The various opportunities provided by different flow ranges are described as occurring in "niches" (Shelby et al., 1997).

Changes in streamflow can have direct effects on the quality of whitewater boating. Direct effects may change quickly as flows change, such as safety in running rapids, number of boat groundings, travel times, quality of rapids, and beach and camp access (Brown, Taylor, & Shelby, 1991; Whittaker et al., 1993; Whittaker & Shelby, 2002). Indirectly, flow effects wildlife viewing, scenery, fish habitat, and riparian vegetation over the long term as a result of changes in flow regime (Bovey, 1996; Richter et al., 1997; Jackson & Beschta, 1992; Hill et al., 1991).

Streamflow is often manipulated through releases from dams and reservoirs, pipelines, and diversions. Additional scenarios, such as climate change, drought, and new water rights development can all impact flows and recreation quality. Decision-makers within land and resource management and regulatory agencies, and state and local governments are increasingly interested in the extent that flow regimes can be managed to provide desirable recreational resource conditions. In these decision-making settings, specific evaluative information on how flow affects recreation quality is critical, particularly where social values are often central to decision-making (Kennedy and Thomas 1995). American Whitewater is recognized for using best practices and science-based methodologies to define recreation flow needs and has done so in Colorado and across the country – including basin-wide assessments in the Yampa-White, Gunnison, and Colorado River basins, as well as most National Park Units in the Southwest.

## II.      Introduction

In January of 2010, The Colorado Water Conservation Board (CWCB) announced its intent to appropriate a new instream flow water right for the lower San Miguel River.  At the request of the Montrose County Commissioners, San Miguel County Commissioners, and Southwest Water Conservation District, the CWCB delayed its application one year, until 2011, to allow the parties making the request to assess the impact of the proposed CWCB instream flow right on their ability to provide for their future water needs, and to provide the parties time to prepare their own water rights applications for future uses within western Montrose County.

In May of 2010, Deere & Ault Consultants was retained by Montrose County to investigate the potential future water needs in western Montrose County, and to assist in preparing water rights applications to support future development and growth in the area. In December 2010, Montrose County filed six Water Court applications with the District Court Water Division No. 4.  In 2012, Montrose County received a consolidated decree for four of the water rights filings made in 2010. The "Consolidated Decree" adjudicated water rights claims made pursuant to Case Nos. 10CW164, 10CW165, 10CW166, and 10CW169.   At the request of the CWCB, Montrose County approached American Whitewater for help in understanding the recreational opportunities

BLM_0160263

or impacts presented by the proposed water projects. American Whitewater was subcontracted by Deere & Ault Consultants in August of 2016, to assist in the investigation of three project scenarios contemplated under the Consolidated Decree, filed by Montrose County in 2010. These scenarios, which estimate stream depletions resulting from the entire 2060 demand (over and above 2010 demands) being met in western Montrose County, include:

- Scenario One (Alt1), which includes Big Bucktail Reservoir, 5,000 acre-feet
- Scenario Two (Alt2), which includes Maverick Draw Reservoir No. 1, 8,400 acre-feet, and
- Scenario Three (Alt3), which includes Maverick Draw Reservoir No. 2, 9,100 acre-feet.

In addition to assisting in the investigation of water rights development for Montrose County, American Whitewater's study presents information that may be considered by the Southwest Basin Roundtable (SWBRT), established under Colorado's Water for the 21st Century Act. The SWBRT identified and mapped the location of environmental and recreational values defined by the Roundtable – including, whitewater recreation on the San Miguel River. The Roundtable adopted a Basin Implementation Plan (BIP, 2015) to address the need to define resource conditions that support these attributes and values, and commits to collaborative efforts to protect these water resources:

*'With respect to the Southwest Basin's Environmental and Recreational values and water needs... the Roundtable has identified two methods that it hopes can help address and bridge the need for additional information and tools. These are:*

1. *"Evaluation of environmental and or recreation gaps is planned to be conducted for improvement of non-consumptive resources and/or in collaborative efforts with development of consumptive IPPs. The evaluations may be conducted by a subgroup of the Roundtable or by individuals, groups, or organizations with input from the Roundtable. The evaluation may utilize methodologies such as the southwest attribute map, flow evaluation tool, R2 Cross, and any other tools that may be available".*

2. *Where environmental and/or recreational gaps are identified, a collaborative effort will be initiated to develop innovative tools to protect water identified as necessary to address these gaps."*

The results of American Whitewater's San Miguel Flow Study, move implementation of the statewide Colorado Water Plan[1] forward. The State of Colorado's Basin Implementation Plan draft guidance recommends quantification of recreational (boating) values. Section 2.1 of the Guidance[2] calls for the evaluation of nonconsumptive needs in terms if 'measurable outcomes', data, and assessment using methods described in CWCB's Nonconsumptive Toolbox (CWCB, 2013). The toolbox identifies the flow-evaluation methodology developed and used by American Whitewater as an example of 'measurable outcomes' and 'recreation tools' in appendices D and C of the Guidance, respectively.

Through this study, American Whitewater's aim is to 1) address gaps in data and understanding regarding flow conditions necessary to sustain recreational values along the San Miguel river, 2) establish a current baseline of boatable days to quantify recreational opportunities for the San Miguel River, and 3) work with the Basin Roundtable to improve understanding of water needs necessary to sustain river-related recreational boating along the San Miguel river and to develop tools to address gaps in protecting boating values attributed to proposed water rights development.

---

[1] https://www.colorado.gov/pacific/cowaterplan/plan

[2] http://cwcbweblink.state.co.us/WebLink/0/doc/172522/Electronic.aspx?searchid=da8f2c6c-3efa-48d6-a43e-892b5c2bd750

BLM_0160264

### III.     Recreational Flow Assessment

A primary component of American Whitewater's 2016 San Miguel Flow Study involved collecting paddler feedback though a Flow-Evaluation Survey (Survey). American Whitewater employed a normative approach using survey-based techniques to collect and organize evaluative information from study participants. This approach is useful for developing thresholds, or standards, that define low, acceptable, and optimal resource conditions for whitewater boating. Thresholds are crucial elements in any effective management or decision-making process (Shelby et al. 1992). The approach examines individual's evaluations of a range of resource conditions (personal norms). Social Norms, developed by aggregating personal norms, describe the group's collective evaluation of resource conditions. This approach has been used to understand streamflows for whitewater boating on the Grand Canyon of the Colorado (Shelby et al. 1992), as well as other high-value recreational river segments in the Colorado River system (Vandas et al. 1990, Shelby & Whitaker 1995, Fey & Stafford 2015).

**Figure 1**. San Miguel Sub-basin: Whitewater Boating Study Reaches



(Image: Seth Mason, Lotic Hydrological, LLC)

6

*Methods and Locations*

Using a web-based survey tool[3], two sets of Survey questions were presented to respondents for which each participant evaluated flows for each study segment, relative to specific US Geological Survey streamflow gages. One set of questions collected information that was used to develop overall flow-evaluation curves (impact acceptability curves), and another set of questions helped identify and explain various points on those same curves.

Overall Flow Evaluations

Overall flow evaluation questions asked respondents to evaluate recreation quality for specific measured flows on each study segment, using a five-point "acceptability" scale (unacceptable -2, slightly unacceptable -1, Marginal 0, Slightly Acceptable 1, Acceptable 2). Aggregate responses are plotted for each flow level, to create a curve. This graphic representation of flows, in most cases, show a bell-shape curve where low flows and high flows provide lower recreational conditions, while medium flows provide more optimal conditions.

Single Flow Judgements

To further explore and characterize the relationship between flows and recreational opportunities described by Flow-curves, American Whitewater presented study participants with a second series of questions for each study segment, each requiring an open-response. Participants reported a single flow-value that provides a distinct class, or "niche" paddling experience along a spectrum: lowest navigable, lowest acceptable, technical, standard, high challenge, and highest safe flow. By aggregating responses to each "niche", median flow values are calculated and then applied to the flow-evaluation curves - refining points along the curve identified as providing distinct whitewater recreation opportunities in relation to the full range of streamflows studied.

A copy of the online Flow-Evaluation Survey, including both sets of questions, is attached (Appendix A). When compiled, the results from these study approaches describe how flows affect recreation quality and identify the range of streamflows that provide whitewater recreation opportunities for each study segment.

An announcement of the survey was emailed to American Whitewater's members within a 40-mile radius of the San Miguel River – including the municipalities of Montrose, Durango, Telluride, Norwood, and Cortez. The announcement was also distributed via American Whitewater's online newsletter. Respondent numbers for the 2016 San Miguel River Flow Survey reflect a valid number of participants for a generally remote or sparsely populated region of western Colorado. For the survey n = 72, where 81% of respondents identified themselves as advanced or expert paddlers, and 93% paddle at least 5-20+ days per season. A wide range of craft types were surveyed with oar frame rafts (45%), kayaks (32%), catarafts (8%), canoes (4%), paddle rafts (8%) and stand-up paddle boards (3%) all represented.

---

[3] www.surveymonkey.com/

BLM_0160266

**Figure 2**. Respondent by Craft Type



| Answer Choices | Responses | |
|---|---|---|
| Oar frame raft | 44.44% | 32 |
| Cataraft | 8.33% | 6 |
| Paddle Raft | 8.33% | 6 |
| Canoe | 4.17% | 3 |
| Kayak | 31.94% | 23 |
| Stand-Up Board | 2.78% | 2 |
| Total | | 72 |

**Figure 3**. Respondent Skill Level



| Answer Choices | Responses | |
|---|---|---|
| Novice | 0.00% | 0 |
| Intermediate | 20.83% | 15 |
| Advanced | 45.83% | 33 |
| Expert | 34.72% | 25 |
| Total Respondents: 72 | | |

8

BLM_0160267

### Structural norm approach

The structural norm model describes norms (evaluative standards) by means of a graphic device referred to as an impact acceptability curve (refer to Vaske et al., 1986 and Shelby et al., 1996 for a complete discussion). The curves describe social norms in terms of averages of individual evaluations. Impacts are displayed on a horizontal axis, with impact increasing from left to right (Figure 4). Evaluation is displayed on the vertical axis, with positive evaluations on the top, negative evaluations on the bottom, and a neutral category in between. The curve can be analyzed for various normative characteristics, including optimum conditions, the range of acceptable conditions, the intensity or strength of the norm, and the crystallization or level of agreement about the norm (Vaske et al., 1986; Shelby et al., 1996).

**Figure 4**: Example Flow-Curve, 7-Point Impact Acceptability



The high point of the curve corresponds with the optimum or best resource conditions (in this case, steamflow) or the conditions receiving the most positive impact evaluation (+3). Normative evaluations that lie above the neutral line (0), define the range of acceptable resource conditions (see Figure 1; 900-2100 cfs). The relative distance of the curve above or below the neutral line describes norms of higher or lower intensity. Finally, the variation among evaluations at each impact level shows the amount of agreement or crystallization

The approach has been applied extensively to natural resource issues, often with respect to instream flows for recreation (Shelby and Whittaker, 1995; Shelby et al., 1992a; Vandas et al., 1990; Whittaker and Shelby, 2002b). Other applications have extended this approach to different indicators and impacts such as encounter norms that describe how many people are considered to be too many in a given setting (refer to Donnelly et al., 2000; Manning, 2011; Shelby et al., 1996; Vaske & Donnelly, 2002; Vaske et al., 1986, for reviews), campsite impacts or site sharing (Heberlein and Dunwiddie, 1979; Shelby, 1981), fishing site competition (Martinson and Shelby, 1992; Whittaker and Shelby, 1993), discourteous behavior (Whittaker and Shelby, 1988, 1993; Whittaker et al., 2000), and resource indicators such as litter and campsite impacts (Shelby et al., 1988; Vaske et al., 2002).

BLM_0160268

*Norm crystallization and Potential for Conflict Index*

Defining management standards is often more efficient if there is a high degree of norm crystallization, or consensus, regarding acceptable and unacceptable resource conditions such as streamflow. Traditional measures of norm crystallization have included the standard deviation, coefficient of variation, and interquartile range (Krymkowski et al., 2009; Manning, 2011; Shelby and Vaske, 1991). All of these measures, however, have limitations, and the Potential for Conflict Index$_2$ (PCI$_2$) was developed to help address these concerns and facilitate understanding and applicability of human dimension findings to managerial concerns.

Although specifics of the PCI$_2$ are beyond the scope of this report, a detailed description of this statistic is reported in Vaske et al. (2010). In general, the PCI$_2$ ranges from 0 to 1. The least amount of consensus (PCI$_2$ = 1) occurs when responses are equally divided between two extreme values on a response scale (e.g. 50% extremely unacceptable, 50% extremely acceptable). A distribution with 100% at any one point on the response scale yields a PCI$_2$ of 0 and suggests unanimous consensus among respondents (see Table 2, row 1).

The PCI$_2$ results can be displayed using graphs similar to impact acceptability curves (Figure 4). Degree of consensus is illustrated as bubbles where the size of bubble depicts the magnitude of PCI$_2$ and indicates the extent of crystallization/consensus regarding acceptance of a particular issue (i.e. degree of dispersion). A small bubble represents high crystallization, and a larger bubble represents low crystallization. The center of the bubble represents the mean evaluative response as plotted on the vertical axis, and these points can be joined to form a curve similar to an impact acceptability curve (i.e. central tendency). The bubble's location relative to the neutral point illustrates whether the distribution of acceptance of an impact value (flow) is skewed (Vaske et al., 2010). This method combines the structural norm approach with the PCI$_2$ to better describe flow-level evaluations.

**Figure 5**. Example impact acceptability curve with Potential for Conflict Index (PCI$_2$)



BLM_0160269

*Results and Discussion*

By collecting and organizing survey responses, American Whitewater determined the range of both acceptable and optimal flows on each San Miguel study segment.  Acceptable flows are reported to provide a range of resource conditions that directly influence the degree of difficulty, quality of rapids, challenge and enjoyment, from lowest flow to highest flow. Optimal Flows are reported to provide the most desirable conditions for the greatest number of users. The minimum acceptable flow is defined as "the lowest flow you would return to paddle in your preferred craft", not the minimum flow that allows you to navigate the section. At flow levels outside the range of acceptable flows (too low or too high), a percentage of respondents reported they would not make the trip to the river to boat.  Conversely, for flows that exist within the optimal range, a significant percentage of respondents indicated they would invest time to return to the river to paddle at those flows.

Potential for Conflict Index data reflect extremely high levels of agreement for optimal flows while some level of disagreement among respondents is apparent at low and high flow values. Figure 5 below, graphically represents the Flow Curve and $PCI_2$ for the Naturita to Dolores River Confluence Study Segment. While optimal flows are clearly defined, there is disagreement over minimum and higher flows (shown here by $PCI_2$ bubbles), attributed in past studies to variations in flow preferences for individuals "niche" paddling experiences, and preferences between craft-types, such as kayaks and larger rafts.

**Figure 6**. Impact acceptability curve with Potential for Conflict Index ($PCI_2$)
San Miguel River, Naturita to Confluence at USGS San Miguel River at Uravan, CO gage



11

BLM_0160270

**Table 1**. San Miguel River Naturita to Confluence Mean Acceptability Scores and $PCI_2$
(Flows represented are flow levels at USGS San Miguel River at Uravan, CO gage)

| Specific Flow CFS | Mean Acceptability | $PCI_2$ |
|---|---|---|
| 100 | -1.92 | 0 |
| 200 | -1.81 | 0.07 |
| 300 | -1.58 | 0.09 |
| 400 | -0.97 | 0.28 |
| 500 | -0.25 | 0.27 |
| 600 | 0.17 | 0.33 |
| 700 | 0.7 | 0.2 |
| 800 | 1.08 | 0.13 |
| 900 | 1.49 | 0 |
| 1000 | 1.8 | 0 |
| 1100 | 1.81 | 0 |
| 1200 | 1.83 | 0 |
| 1300 | 1.83 | 0 |
| 1400 | 1.86 | 0 |
| 1500 | 1.74 | 0.07 |
| 1600 | 1.71 | 0.14 |
| 1700 | 1.68 | 0.14 |
| 1800 | 1.67 | 0.14 |
| 1900 | 1.56 | 0.16 |
| 2000 | 1.56 | 0.16 |
| 2500 | 1.44 | 0.22 |
| 3000 | 1.26 | 0.28 |
| 4000 | 1.06 | 0.47 |
| 5000 | 1.03 | 0.5 |

Acceptable and optimal flows are currently enjoyed for at least part of the recreation season, during all year types, on all San Miguel River segments analyzed.  Minimum acceptable flows for the segments highest in the drainage, Bilk Creek to Down Valley Park, Down Valley to Specie Creek, and Specie Creek to Beaver Creek were found to be 500cfs, while for segments further downstream, Beaver Creek to Pinon Bridge, Pinon Bridge to Naturita and Naturita to the Dolores Confluence, a slightly higher minimum acceptable flow of 600 cfs was found. *Optimal* flow preferences range between 800 – 2,000cfs, while the full range of acceptable flows ranges from 500 - 5,000+ cfs for all segments analyzed (Table 2).  Mean acceptability for high flows never crossed below the neutral line, even up to 5,000 cfs, suggesting that flows in the San Miguel never exceed levels that are too high to meet preferred experiences for most recreational users and study participants.

BLM_0160271

**Table 2.** Minimum, Optimal and Range of Acceptable Flows
for San Miguel River, by Segment

| USGS Gage | San Miguel River Segment | Minimum Flow (CFS) | Optimal Flows (CFS) | Range of Acceptable Flow (CFS) |
|---|---|---|---|---|
| Placerville | Bilk to Down Valley | 500 | 800 – 2,000 | 500 – 5,000 |
| Placerville | Down Valley to Specie | 500 | 800 – 2,000 | 500 – 5,000 |
| Placerville | Specie to Beaver | 500 | 800 – 2,000 | 500 – 5,000 |
| Brooks Bridge | Beaver to Pinon | 600 | 900 – 2,000 | 600 – 5,000 |
| Brooks Bridge | Pinon to Naturita | 600 | 1,000 – 2,000 | 600 – 5,000 |
| Uravan | Naturita to Confluence | 600 | 900 – 2,000 | 600 – 5,000 |

### IV.    Boatable Days Analysis

#### Quantifying Whitewater Boating Opportunities

Boatable Days is the dominant metric most relevant to managing for flow-dependent recreation opportunities. Evaluations of defined whitewater recreation flows within hydrologic year types describe the number of recreation opportunities, or 'boatable days' within acceptable and optimal flow ranges. Boatable Days have been used to protect, mitigate, or enhance paddling opportunities, where a quantitative metric can be applied (Fey and Stafford, 2009; Shelby and Whittaker, 1995; Whittaker et al., 1993).

American Whitewater's Boatable Days approach, evaluates the frequency of defined acceptable and optimal flows against the hydrologic record for a specific data point. The Boatable Days analysis generates the number of days when resource conditions (streamflow) meet whitewater recreation needs based on flow criteria (determined though survey responses of river users). The resulting metric improves comparability across water rights development scenarios, or other decision-settings where whitewater recreation may conflict with other demands for water resources.

American Whitewater used a 16-year study period from 1995 through 2010, based on similar stream gaging data used by Deere & Ault Consulting in its investigation of unappropriated water availability in western Montrose County associated with each water rights alternative. For this Boatable Days analysis, two gage sites were used as data points - the USGS San Miguel River at Brooks Bridge near Nucla, CO and San Miguel River at Uravan, CO.

Given the variability of historic and future hydrologic conditions in the San Miguel basin, American Whitewater evaluated Boatable Days by hydrologic year type - dry, dry-typical, wet-typical, and wet years classified as <25th, 25-50th, 50-75th, and >75th percentiles respectively. Hydrologic year types for the study period are defined by ranking the total annual volumetric flow (in acre-ft) at the Uravan gage (1954-PRESENT) for the years 1975-2010 and then sorting the total annual flow volumes into quartiles. The period of record utilized in this study, 1995-2010, was then sorted into year types that correspond to the Total Annual volume measured at the Uravan gage for the 1975 – 2010 period of record. By categorizing the 16-year period of record into year types in this way, we end up with an uneven number of years representing each year type, however this approach is

13

BLM_0160272

more representative of historical hydrologic conditions in the San Miguel basin, as described by a longer representative study period.

**Table 3**. Period of Record, sorted by year type - USGS San Miguel River at Uravan, CO gage

| Dry | Dry Typical | Wet Typical | Wet |
|-----|-------------|-------------|-----|
| 2001 | 1995 | 1996 | 1997 |
| 2002 | 2000 | 1998 | |
| 2003 | 2006 | 1999 | |
| 2004 | 2009 | 2005 | |
| | 2010 | 2007 | |

The hydrograph in Figure 6 illustrates four hydrologic year-types for the San Miguel River Naturita to Confluence study segment (USGS San Miguel River at Uravan, CO gage). After organizing hydrologic data from 1995-2010 by year type, daily streamflows are compared against preferred flow ranges defined by user surveys described earlier. A Boatable Day is recorded when streamflow measurements fall within the preferred flow range for a particular experience class (e.g. the range of optimal flows) on a particular day. The same analysis was completed for every day of the study period in all year types and for the range of preferred flows for every flow class (low acceptable, optimal, and high acceptable levels). The Boatable Days in each flow class were then aggregated by year, for comparison.

**Figure 7.**  Hydrology – San Miguel River Naturita to Confluence (1995-2010) year types (wet, wet typical, dry typical, and dry) ranked by annual volume at USGS San Miguel River at Uravan, CO gage



The San Miguel currently provides a great number of Boatable Days (days with at least minimum acceptable flows to support whitewater recreation), especially in wet year types, with all six

14

BLM_0160273

segments studied boasting at least 110 Boatable Days in very wet years. In typical wet years four of the segments have at least 77 Boatable Days, though the lower San Miguel has significantly greater days within wet-typical conditions (86). In very dry years there are significantly less Boatable Days, however on four of the segments there are still at least 31 days where flows are on average above minimum acceptable levels. In typical dry years, there are fewer Boatable Days than in typical wet years, but four of the six segments still have at least 63 Boatable Days. (see Table 4)

**Table 4**. Average Annual Boatable Days, or annual days when flows meet or exceed minimum acceptable flows, by year type* for San Miguel River Segments

| USGS Gage | San Miguel River Segment | Average Boatable Days by Year Type* | | | |
|---|---|---|---|---|---|
| | | Dry | Dry Typical | Wet Typical | Wet |
| Placerville | Bilk to Down Valley | 31 | 63 | 77 | 125 |
| Placerville | Down Valley to Specie | 31 | 63 | 77 | 125 |
| Placerville | Specie to Beaver | 31 | 63 | 77 | 125 |
| Brooks Bridge | Beaver to Pinon | 20 | 50 | 62 | 110 |
| Brooks Bridge | Pinon to Naturita | 20 | 50 | 62 | 110 |
| Uravan | Naturita to Confluence | 33 | 64 | 86 | 116 |

*Year types are classified by hydrologic years 1975-2010 at the USGS Uravan Gage, divided into quartiles by yearly volume in cfs (data analyzed is from 1995-2010).*

### Quantifying a Change in Boatable Days

The Boatable Days analysis allows for assessing the affect that future reductions in flow, attributed to new projects, will have on boatable days available for whitewater users on the San Miguel. This method allows for a simple sensitivity analysis using historic flow data – in this study 1995-2010 data – using a percent reduction/increase, or specific reduction(cfs) to historic flows, as provided by Deere & Ault Consulting in this study. A percent reduction sensitivity analysis reduces streamflow data within any period of record by a given percentage or flow rate, and recalculates the number of days when boatable flows are available for any given study reach, as the change from current conditions.

The conditional water rights Montrose County adjudicated in the Consolidated Decree contemplate diversion and storage of tributary sources of water that enter the lower San Miguel River. In the case of Big Bucktail Reservoir, additional water from direct diversion from the San Miguel River at the Colorado Cooperative Company's Highline Canal is proposed. In this analysis of Montrose County's conditional water rights, we look at only three project scenarios prepared by Deere & Ault Consulting for Montrose County:

1. *Big Bucktail Reservoir: 6,100 acre-feet, conditional; together with a right to successive refills in the cumulative amount of 12,200 acre-feet, conditional, with a rate of filling the reservoir from the San Miguel River of 135 cfs. The sources of water include Big Bucktail Creek and San Miguel River through the Highline Canal.*

2. *Maverick Draw Reservoir No. 1: 6,700 acre-feet, conditional; together with a right to successive refills in the cumulative amount of 6,700 acre-feet, conditional. The source*

BLM_0160274

> *of water for the conditional storage right is Maverick Draw, a tributary of Naturita Creek which is a tributary of the San Miguel River.*
>
> 3. *Maverick Draw Reservoir No. 2: 5,600 acre-feet, conditional; together with a right to successive refills in cumulative amount of 5,600 acre-feet, conditional. The source of water for the conditional storage right is Maverick Draw, a tributary of Naturita Creek which is a tributary of the San Miguel River.*

Deere & Ault developed the "Montrose County Operations Model" (Operations Model) to simulate the ability of the conditional water rights to meet water demands of the west end of Montrose County. D&A utilized the Operations Model to investigate different reservoir project scenarios (alternatives) to meet increased water demands of 3,200 acre-feet per year (plus reservoir evaporation) between 2010 and 2060.

D&A has prepared a separate report for Montrose County, that provides detailed investigations and elements of proof for the water rights application, including Operations Model calculations of daily direct flow diversions and diversions into storage. The sums of these diversions, minus return flows to the San Miguel River, represents depletions to the San Miguel River used in American Whitewater's analysis of Boatable Days.

American Whitewater evaluated the change to current Boatable Days (1995-2010) from depletions, at two locations along the San Miguel River:

> 1)   Depletion that occurs above the Brooks Bridge gage. The depletion is a result of diversions at the CC Ditch headgate for filling Big Bucktail Reservoir or direct-flow diversions for meeting demand at the Mustang Water Authority plant (i.e., Nucla and Naturita municipal demand) and,
>
> 2)   Net depletion that occurs at the Uravan gage. This depletion represents the total depletion that is a result of the diversions at the CC Ditch, Nucla Power Plant, Paradox Valley pipeline, etc. The net value has been adjusted for the return flows that accrue at Naturita as a result of the municipal return flows (i.e., effluent, irrigation return flows, etc.).

American Whitewater compared the percent change in flow, and simulated daily depletions (cfs) for the water years 1995-2010, at both the USGS San Miguel River at Brooks Bridge near Nucla, CO and San Miguel River at Uravan, CO gages, to actual 1995-2010 data for the three distinct whitewater recreation segments of the San Miguel that would potentially be effected by Montrose County's conditional water rights (Beaver Creek to Pinon Bridge, Pinon Bridge to Naturita and Naturita to Dolores Confluence). For this analysis, we additionally calculate 5% and 10% flow reduction, as additional reference thresholds.

**Table 5.** Average annual depletions modeled by D&A, by Alternative.

| Scenario | Reservoir | Average Depletion (cfs) | Average Annual Change in Flow (%) |
|---|---|---|---|
| Alternative 1 | Big Bucktail | -3.31cfs | -0.97% |
| Alternative 2 | Maverick Draw No. 1 | -3.72cfs | -1.09% |
| Alternative 3 | Maverick Draw No. 2 | -4.01cfs | -1.17% |

16

BLM_0160275

Analysis of Scenario One (Alt1), Big Bucktail Reservoir, Scenario Two (Alt2), Maverick Draw Reservoir No. 1, and Scenario Three (Alt3), Maverick Draw Reservoir No. 2, using simulated daily depletion files (1995-2010), result in little or no effect on whitewater recreation opportunities across all three segments and across all four year-types analyzed. In dry year types a 1-day *increase* in Boatable Days is predicted for the Naturita to Dolores confluence segment (Table 6).

**Table 6.** Current, Predicted Alternatives Reduction*, and 5% and 10% Reduction in Annual Boatable Days, by year type for San Miguel River Segments

| Year Type | Alternative | USGS Gage and San Miguel Boatable Days by River Segment | | |
|---|---|---|---|---|
| | | Brooks Bridge Gage | | Uravan Gage |
| | | Beaver to Pinon | Pinon to Naturita | Naturita to Confluence |
| Dry | 1995-2010 | 20 | 20 | 33 |
| | Alt1 | 20 | 20 | 34 |
| | Alt2 | 20 | 20 | 34 |
| | Alt3 | 20 | 20 | 34 |
| | .95 | 18 | 18 | 28 |
| | .90 | 16 | 16 | 24 |
| Dry Typical | 1995-2010 | 50 | 50 | 64 |
| | Alt1 | 50 | 50 | 64 |
| | Alt2 | 50 | 50 | 64 |
| | Alt3 | 50 | 50 | 64 |
| | .95 | 47 | 47 | 60 |
| | .90 | 43 | 43 | 57 |
| Wet Typical | 1995-2010 | 62 | 62 | 86 |
| | Alt1 | 62 | 62 | 86 |
| | Alt2 | 62 | 62 | 86 |
| | Alt3 | 62 | 62 | 86 |
| | .95 | 55 | 55 | 80 |
| | .90 | 50 | 50 | 76 |
| Wet | 1995-2010 | 110 | 110 | 116 |
| | Alt1 | 110 | 110 | 116 |
| | Alt2 | 110 | 110 | 116 |
| | Alt3 | 110 | 110 | 116 |
| | .95 | 109 | 109 | 114 |
| | .90 | 107 | 107 | 113 |

*Predicted alternative reductions (Alt1- Alt3) are based on the Montrose County depletions analysis workbook's daily depletions files, prepared by Deere and Ault.*

The effect that modeled daily reductions to streamflow may have on yearly Boatable Days can be assessed for each "niche" opportunity – defined as low, optimal and high streamflow conditions. This analysis is detailed by year type for each San Miguel River segment potentially impacted by depletion that occurs at the Uravan gage, and depletions that occur above the Brooks Bridge gage. For each study segment, all three Alternatives are shown to have little to no change in annual Boatable Days. In dry-typical years, a 1-day *increase* in low flow Boatable Days is predicted for the San Miguel, Naturita to Dolores Confluence segment (Table 7). For the San Miguel Pinion to Naturita segment, a 1-day *increase* in low flow Boatable Days occurs in wet-typical years (Table 8). Above the CCC Ditch and Highline Canal; San Miguel River Beaver Creek to Pinion, no change to Boatable Days was predicted (Table 9).

BLM_0160276

**Table 7**. Current, Predicted Alternative Change*, and 5% and 10% Reduction
in Annual Boatable Days for low, optimal and high recreation conditions, by year type.
San Miguel River, Naturita to Confluence with the Dolores River.

| Year Type | Scenario | San Miguel Boatable Days for Naturita to Confluence | | | |
|---|---|---|---|---|---|
| | | USGS Gage Uravan | | | |
| | | Low | Optimal | High | Non-Boatable Days |
| Dry | 1995-2010 | 25 | 9 | 0 | 331 |
| | Alt1 | 25 | 9 | 0 | 331 |
| | Alt2 | 25 | 9 | 0 | 331 |
| | Alt3 | 25 | 9 | 0 | 331 |
| | .95 | 22 | 6 | 0 | 337 |
| | .90 | 21 | 3 | 0 | 341 |
| Dry Typical | 1995-2010 | 22 | 36 | 6 | 268 |
| | Alt1 | 23 | 36 | 6 | 267 |
| | Alt2 | 23 | 36 | 6 | 267 |
| | Alt3 | 23 | 36 | 6 | 267 |
| | .95 | 21 | 35 | 4 | 305 |
| | .90 | 21 | 34 | 2 | 308 |
| Wet Typical | 1995-2010 | 41 | 42 | 3 | 279 |
| | Alt1 | 41 | 42 | 3 | 279 |
| | Alt2 | 41 | 42 | 3 | 279 |
| | Alt3 | 41 | 42 | 3 | 279 |
| | .95 | 41 | 36 | 3 | 285 |
| | .90 | 42 | 32 | 2 | 289 |
| Wet | 1995-2010 | 18 | 76 | 22 | 249 |
| | Alt1 | 18 | 76 | 22 | 249 |
| | Alt2 | 18 | 76 | 22 | 249 |
| | Alt3 | 18 | 76 | 22 | 249 |
| | .95 | 17 | 83 | 14 | 251 |
| | .90 | 26 | 80 | 7 | 252 |

**Table 8.** Current, Predicted Alternative Reduction*, and 5 and 10% Reduction
Yearly Boatable Days for low, optimal and high recreation conditions, by year type.
San Miguel River Segment Pinon to Naturita.

| Year Type | Alternative | San Miguel Boatable Days for Pinon to Naturita | | | |
|---|---|---|---|---|---|
| | | USGS Gage Brooks Bridge | | | |
| | | Low | Optimal | High | Non-Boatable Days |
| Dry | 1995-2010 | 19 | 1 | 0 | 345 |
| | Alt1 | 19 | 1 | 0 | 345 |
| | Alt2 | 19 | 1 | 0 | 345 |
| | Alt3 | 19 | 1 | 0 | 345 |
| | .95 | 18 | 1 | 0 | 346 |
| | .90 | 16 | 0 | 0 | 349 |
| Dry Typical | 1995-2010 | 24 | 25 | 1 | 315 |
| | Alt1 | 24 | 25 | 1 | 315 |
| | Alt2 | 24 | 25 | 1 | 315 |
| | Alt3 | 24 | 25 | 1 | 315 |
| | .95 | 23 | 23 | 1 | 318 |
| | .90 | 22 | 20 | 1 | 322 |
| Wet Typical | 1995-2010 | 46 | 15 | 0 | 304 |
| | Alt1 | 47 | 15 | 0 | 303 |
| | Alt2 | 47 | 15 | 0 | 303 |
| | Alt3 | 47 | 15 | 0 | 303 |
| | .95 | 42 | 12 | 0 | 311 |
| | .90 | 40 | 10 | 0 | 315 |
| Wet | 1995-2010 | 38 | 70 | 2 | 255 |
| | Alt1 | 38 | 70 | 2 | 255 |
| | Alt2 | 38 | 70 | 2 | 255 |
| | Alt3 | 38 | 70 | 2 | 255 |
| | .95 | 42 | 67 | 0 | 256 |
| | .90 | 42 | 65 | 0 | 258 |

BLM_0160277

**Table 9**. Current, Predicted Alternative Reduction*, and 5 and 10% Reduction
Yearly Boatable Days for low, optimal and high recreation conditions, by year type.
San Miguel River, Beaver to Pinon.

| Year Type | Alternative | San Miguel Boatable Days for Beaver to Pinon | | | |
| --- | --- | --- | --- | --- | --- |
| | | USGS Gage Brooks Bridge | | | |
| | | Low | Optimal | High | Non-Boatable Days |
| Dry | 1995-2010 | 18 | 2 | 0 | 345 |
| | Alt1 | 18 | 2 | 0 | 345 |
| | Alt2 | 18 | 2 | 0 | 345 |
| | Alt3 | 18 | 2 | 0 | 345 |
| | .95 | 17 | 2 | 0 | 346 |
| | .90 | 15 | 1 | 0 | 349 |
| Dry Typical | 1995-2010 | 19 | 30 | 1 | 315 |
| | Alt1 | 19 | 30 | 1 | 315 |
| | Alt2 | 19 | 30 | 1 | 315 |
| | Alt3 | 19 | 30 | 1 | 315 |
| | .95 | 18 | 28 | 1 | 318 |
| | .90 | 17 | 26 | 1 | 321 |
| Wet Typical | 1995-2010 | 38 | 23 | 0 | 304 |
| | Alt1 | 38 | 23 | 0 | 304 |
| | Alt2 | 38 | 23 | 0 | 304 |
| | Alt3 | 38 | 23 | 0 | 304 |
| | .95 | 35 | 20 | 0 | 310 |
| | .90 | 35 | 15 | 0 | 315 |
| Wet | 1995-2010 | 32 | 76 | 2 | 255 |
| | Alt1 | 32 | 76 | 2 | 255 |
| | Alt2 | 32 | 76 | 2 | 255 |
| | Alt3 | 32 | 76 | 2 | 255 |
| | .95 | 35 | 74 | 0 | 256 |
| | .90 | 35 | 72 | 0 | 258 |

## V.    Opinions and Conclusion

This report summarizes the analyses conducted by American Whitewater to assist Deere & Ault Consulting in their assessment of impacts to whitewater recreation in the Lower San Miguel River, attributed to consolidated water rights applications filed by Montrose County, Colorado in 2010.

**Section 1** of the report describes the conceptual framework for assessing flows for recreation developed by American Whitewater, Confluence Research and Consulting, and Oregon State University. **Section 2** of the report summarizes American Whitewater's 2016 San Miguel River study in the context of the Colorado Water Conservation Board's application for instream flow rights in the Lower San Miguel River, and subsequent conditional water rights filed by Montrose County in 2010. Section 2 also contextualized the study approach and application of the resulting data into implementation of the Colorado Water Plan and the Southwest Basin Roundtable's Basin Implementation Plan.

**Section 3** of the report discusses study locations, and methods used to collect and analyze paddler feedback through a Flow-Evaluation survey. The Study follows the State of Colorado's Basin Implementation Plan recommended guidance for quantifying non-consumptive recreational needs, and combines personal evaluations of recreation quality and the structural norm approach; a technique used to graphically represent group evaluations of resource conditions. Flow-Evaluation or Impact Acceptability Curves, describe optimal flows, the range of acceptable flows, norm intensity and level of norm agreement among survey respondents, for five segments of the San Miguel River.

19

BLM_0160278

**Section 4** applies American Whitewater's Boatable Day metric to identify the quantity and timing of whitewater boating opportunities in the San Miguel River. The metric is used in this study to evaluate the impact to current recreation opportunities (described as Boatable Days) under three water supply project alternatives proposed by Montrose County. Using data provided by Deere & Ault Consulting, the predicted reductions in flow conditions attributable to Montrose County's 2010 Water Rights.

Developing the Boatable Days metric provides the best quantification of river-related recreation opportunities in the San Miguel Basin and enables decision-makers to assess and address the impacts to whitewater boating attributes attributable to future water rights development and water demand scenarios. There are strong economic reasons why integration of this data is defensible and advisable.  Whitewater boating in the San Miguel sub-basin, state of Colorado and seven-state Colorado River basin delivers substantial economic benefits to local and regional economies. In the San Miguel sub-basin, commercial rafting alone generated $1.7M in economic impact in 2015 (Greiner, 2015). Commercial rafting in the state of Colorado generated $161,505,808 in economic impact, and supports 2,600 jobs (Loomis, 2008). At the Colorado River basin scale, river-related recreation supports 25,000 jobs and produces $26 billion in economic output (Southwick, 2012).

American Whitewater opinions are stated throughout the report; however, the primary opinions of the researchers are set forth below:

1) Respondent numbers for the 2016 San Miguel River Flow Survey reflect a valid number of participants for a generally remote or sparsely populated region of western Colorado.

2) The range of both acceptable and optimal flows are defined for each segment of the San Miguel addressed in this study. Minimum acceptable flows for the segments highest in the drainage, Bilk Creek to Down Valley Park, Down Valley to Specie Creek, and Specie Creek to Beaver Creek were found to be 500cfs, while for segments further downstream, Beaver Creek to Pinon Bridge, Pinon Bridge to Naturita and Naturita to the Dolores Confluence, a slightly higher minimum acceptable flow of 600 cfs was found. *Optimal* flow preferences range between 800 – 2,000cfs, while the full range of acceptable flows ranges from 500 - 5,000+ cfs for all segments analyzed. At no point in the period of record used in the study, have flows in the San Miguel exceeded levels that provide whitewater recreation opportunities.

3) The San Miguel currently provides a great number of Boatable Days, especially in wet year types, with all study segments providing at least 110 Boatable Days in very wet years. In wet-typical years, four of the segments have at least 77 Boatable Days, though the lower San Miguel has significantly greater days under wet-typical hydrology (86). In very dry years there are significantly less Boatable Days, however on four of the segments there are still at least 31 days where flows are above minimum acceptable levels, on average.

4) The storage and direct diversion scenarios associated with Montrose County's water right applications, are found to have little to no effect on whitewater recreation opportunities on the lower San Miguel River. The predicted change in Boatable Days in relation to current flow conditions, is predicted to cause no impact to the quantity of whitewater recreation opportunities that are available in the San Miguel Basin under current conditions (1995-2010).

BLM_0160279

**Additional Discussion**

As a follow-up to the Boatable Days calculation based on year type classifications, researchers also calculated Boatable Days by a monthly volume classification. This new methodology is still in development but we applied these results to cross check the conclusions regarding the effect of flow reductions on whitewater recreation opportunities on the lower San Miguel River. This monthly classification approach, calculates the average monthly flow and then sorts each month by hydrologic condition (i.e. the 25th percentile of all January flows at that the Uravan gage) across the same years in the yearly classification study (1995-2010). The results of the monthly classification were used to calculate the average number of boatable days per month (for each threshold: low/optimal/high) for each hydrological classification (i.e. dry, dry typical, wet typical and wet) and yielded the same conclusion of little to no effect on whitewater recreation opportunities on the lower San Miguel River.



Whitewater Paddling the Lower San Miguel River, Colorado.
Photo, Ben Saheb

BLM_0160280

## VI.   Literature Cited

Bovee, K.D. (editor). (1996) The Complete IFIM: A Coursebook for IF250. Fort Collins, CO: U.S. Geological Survey.

Brown, T.C., Taylor, J.G., & Shelby, B. (1991). Assessing the direct effects of Stream flow on recreation: A literature review. Water Resources Bulletin, 27(6), 979-989.

Colorado Water Conservation Board, 2013. Nonconsumptive Needs Toolbox, Retrieved from: http://cwcbweblink.state.co.us/weblink/0/doc/172701/Electronic.aspx?searchid=b764b205-1125-4f18-b3e8-998e5e025e10

Fey, N. & Stafford, E. (2009) Flow-Recreation Evaluations for the Upper Colorado River basin. Report prepared for Upper Colorado River Wild and Scenic Stakeholders Group & U.S. Bureau of Land Management.

Greiner, J. and Warner. (2012) Commercial River Use in the State of Colorado 2008- 2011. Colorado River Outfitters Association.

Hill, M.T., Platts, W.S., and Beschta, R.L. (1991) Ecological and geomorphological concepts for instream and out-of-channel flow requirements. Rivers 2(3):198-210

Loomis, J. 2008. The economic contribution of instream flows in Colorado: how angling and rafting use increase with instream flows. January 2008 Economic Development Report, No. 2 (EDR: 08-02). Department of Agriculture and Resource Economics.

Jackson, W.L. & Beschta, R.L. (1992) Instream flows for rivers: Maintaining stream form and function as a basis for protecting dependant uses. In M.E. Jones and A. Laenen (editors), Interdisciplinary Approaches in Hydrology and Hydrogeology. St. Paul, MN: American Institute of Hydrology.

Kennedy, J.J. & Thomas, J.W. (1995) Managing natural resources as social value. Pages 311-322 in R.L. Knight and S.F. Bates (editors), A New Century for Natural Resources Management. Island Press, Washington D.C.

Richter, B.D., Baumgartner, J.V., Wigington, R., and Braun, D.P. (1997) How much water does a river need? Freshwater Biology 37:231-249

Sanderson, J.S., B.P. Bledsoe, N. L. Poff, T. Wilding, and N. Fey (2012). Yampa-White Basin Roundtable Watershed Flow Evaluation Tool (WFET) Study. Prepared by CDM Smith for The Nature Conservancy, June 2012

Shelby, B., Brown, T. C., & Taylor, J. G. (1992). Streamflow and Recreation. Ft. Collins, CO: USDA Forest Service, Rocky Mountain Forest and Range Experiment Station (General Technical Report RM-209).

Shelby, B., Brown, T.C., and Baumgartner, R. (1992) Effects of streamflows on river trips on the Colorado River in Grand Canyon, Arizona. Rivers 3(3): 191-201

Shelby, B., Stankey, G., and Schindler, B. (1992) Introduction: the role of standards in wilderness management. Pages 1-4 in B. Shelby, G. Stankey, and B. Shindler (editors). Defining wilderness quality: The role of standards in wilderness management. Portland, OR: U.S. Forest Service, Pacific Northwest Research Station (General Technical Report PNW-GTR-305).

BLM_0160281

Shelby, B., Vaske, J.J., & Donnely, M.P. (1996). Norms, standards and natural resources. Leisure Sciences, 18, 103-123

Shelby, B., Whittaker, D. & Hansen, W. (1997). Streamflow effects on hiking in Zion National Park, Utah. Rivers, 6(2), 80-93

Southwick Associates, 2012. Economic Contributions of Outdoor Recreation on the Colorado River & Its Tributaries. Retrieved from: http://protectflows.com/wp- content/uploads/2012/05/Colorado-River-Recreational-Economic-Impacts- Southwick-Associates-5-3-12_2.pdf

Stafford, E., Fey, N., and Vaske, J. J. (2016) Quantifying Whitewater Recreation Opportunities in Cataract Canyon of the Colorado River, Utah: Aggregating Acceptable Flows and Hydrologic Data to Identify Boatable Days. River Res. Applic., doi: 10.1002/rra.3049.

Vandas, S., Whittaker, D., Murphy, D., Prichard, D., and others. (1990) Dolores River Instream Flow Assessment. Denver, Co: U.S. Bureau of Land Management (BLM/YA/PR-90-003).

Whittaker, D., Shelby, B., Jackson, W., & Beschta, R. (1993). Instream Flows for recreation: A handbook on concepts and research methods. Anchorage, AK: Us National Park Service, Rivers, Trails.

Whittaker, D. and B. Shelby. (2002) Evaluating instream flows for recreation: a handbook on concepts and research methods. U.S. Department of Interior, National Park Service, Anchorage, AK

BLM_0160282

**Appendix A: Online Flow Evaluation Survey**

As an example of the web-based Flow Evaluation Survey utilized by American Whitewater to collect paddler feedback of flows and recreation quality, both sets of study questions are provided here for the Naturita to Dolores confluence study segment.

## Overall Flow Evaluation Questions

4. Comparing Whitewater Flows for Naturita to the Dolores River Confluence (Uravan Section)

For the questions on this page please rate the quality of the run in your particular craft, at each identified flow. Please pay particular attention to the gage referred to and **respond with acceptable flows for that gage only.**

**17. Please report the quality of the following flows for Naturita to the Dolores River Confluence (Uravan Section) of the San Miguel River for your craft and skill level. Please consider all the flow-dependent characteristics that contribute to a high quality trip (e.g., boatability, whitewater challenge, safety, availability of surfing or other play areas, aesthetics, and length of run). For more information on this stretch of river visit:** http://americanwhitewater.org/content/River/detail/id/10895/
**Flows represented are for the USGS 09177000 SAN MIGUEL RIVER AT URAVAN, CO gage**

|  | Unacceptable | Slightly Unacceptable | Marginal | Slightly Acceptable | Acceptable |
|---|---|---|---|---|---|
| 100 | ○ | ○ | ○ | ○ | ○ |
| 200 | ○ | ○ | ○ | ○ | ○ |
| 300 | ○ | ○ | ○ | ○ | ○ |
| 400 | ○ | ○ | ○ | ○ | ○ |
| 500 | ○ | ○ | ○ | ○ | ○ |
| 600 | ○ | ○ | ○ | ○ | ○ |
| 700 | ○ | ○ | ○ | ○ | ○ |
| 800 | ○ | ○ | ○ | ○ | ○ |
| 900 | ○ | ○ | ○ | ○ | ○ |
| 1000 | ○ | ○ | ○ | ○ | ○ |
| 1100 | ○ | ○ | ○ | ○ | ○ |
| 1200 | ○ | ○ | ○ | ○ | ○ |
| 1300 | ○ | ○ | ○ | ○ | ○ |
| 1400 | ○ | ○ | ○ | ○ | ○ |
| 1500 | ○ | ○ | ○ | ○ | ○ |
| 1600 | ○ | ○ | ○ | ○ | ○ |
| 1700 | ○ | ○ | ○ | ○ | ○ |
| 1800 | ○ | ○ | ○ | ○ | ○ |
| 1900 | ○ | ○ | ○ | ○ | ○ |
| 2000 | ○ | ○ | ○ | ○ | ○ |
| 2500 | ○ | ○ | ○ | ○ | ○ |
| 3000 | ○ | ○ | ○ | ○ | ○ |
| 4000 | ○ | ○ | ○ | ○ | ○ |
| 5000 | ○ | ○ | ○ | ○ | ○ |

BLM_0160283

**Appendix A, continued:**

## Single Flow Judgements

**18. From a recreational perspective what is the lowest flow required to navigate this stretch? (please specify in cfs)**

**19. From a recreational perspective what is the lowest flow that provides an acceptable experience on this run? The lowest acceptable is the lowest flow you would return to boat in your preferred craft, not the minimum flow that allows you to navigate. (please specify in cfs)**

**20. Some people are interested in taking trips at lower flows for a technical trip. Think of this "technical trip" in your craft. What is the best or optimal flow for a technical trip? (please specify in cfs)**

**21. Many people are interested in a "standard" whitewater trip at medium flows. Think of this "standard trip" in your craft. What is the best or optimal flow for a standard trip? (please specify in cfs)**

**22. Some people are interested in taking trips at higher flows for increased whitewater challenge. Think of this "high challenge trip" in your craft. What is the best or optimal flow for a high challenge trip? (please specify in cfs)**

**23. What is the highest safe flow for your craft and skill level? (please specify in cfs)**

**24. What is your preferred craft for running Naturita to the Dolores River Confluence (Uravan Section) of the San Miguel River? (Choose one)**

☐ Hard shell kayak/canoe   ☐ Raft/Shredder   ☐ Inflatable kayak/canoe   ☐ Open canoe   ☐ SUP
☐ Other (please specify)

**25. Do you have any general comments on flows that you feel have not been addressed in the questions we've asked? Specifically if you do not have a good record of flows or dates from when you have run the river please include any qualitative observations on flows needs.**

25

BLM_0160284

**Appendix B:**

**USGS San Miguel River at Brooks Bridge near Nucla, CO Gage Segments**

**Figure B1(a)** San Miguel River (1995-2010) year types (wet, wet typical, dry typical, and dry ranked by yearly volume in years 1975-2010), with flow thresholds for low, optimal and high, at USGS San Miguel River at Brooks Bridge near Nucla, CO gage.



BLM_0160285

*Pinon to Naturita*

**Figure B1(b)** Impact acceptability curve with Potential for Conflict Index (*PCI₂*) for San Miguel River, Pinon to Naturita at USGS San Miguel River at Brooks Bridge near Nucla, CO gage.



**Table B1** San Miguel River Pinon to Naturita Mean Acceptability Scores and PCI₂  (Flows represented are flow levels at USGS San Miguel River at Brooks Bridge near Nucla, CO gage).

| Specific Flow CFS | Mean Acceptability | $PCI_2$ |
|---|---|---|
| 100 | 100 | -2 |
| 200 | 200 | -1.93 |
| 300 | 300 | -1.53 |
| 400 | 400 | -1.11 |
| 500 | 500 | -0.28 |
| 600 | 600 | 0.11 |
| 700 | 700 | 0.67 |
| 800 | 800 | 1.06 |
| 900 | 900 | 1.35 |
| 1000 | 1000 | 1.65 |
| 1100 | 1100 | 1.76 |
| 1200 | 1200 | 1.88 |
| 1300 | 1300 | 1.88 |
| 1400 | 1400 | 1.88 |
| 1500 | 1500 | 1.87 |
| 1600 | 1600 | 1.8 |
| 1700 | 1700 | 1.8 |
| 1800 | 1800 | 1.73 |
| 1900 | 1900 | 1.67 |
| 2000 | 2000 | 1.6 |
| 2500 | 2500 | 1.29 |
| 3000 | 3000 | 0.86 |
| 4000 | 4000 | 0.71 |
| 5000 | 5000 | 0.57 |

27

BLM_0160286

***Beaver Creek to Pinon***

**Figure B2** Impact acceptability curve with Potential for Conflict Index (*PCI₂*) for San Miguel River, Beaver to Pinon at USGS San Miguel River at Brooks Bridge near Nucla, CO gage.



Level of Flow (CFS)

**Table B2** San Miguel River Beaver to Pinon Mean Acceptability Scores and PCI₂ (Flows represented are flow levels at USGS San Miguel River at Brooks Bridge near Nucla, CO gage).

| Specific Flow CFS | Mean Acceptability | $PCI_2$ |
|---|---|---|
| 100 | -1.97 | 0 |
| 200 | -1.97 | 0 |
| 300 | -1.68 | 0 |
| 400 | -0.98 | 0.05 |
| 500 | -0.1 | 0.21 |
| 600 | 0.52 | 0.25 |
| 700 | 1.05 | 0.24 |
| 800 | 1.44 | 0.18 |
| 900 | 1.56 | 0.1 |
| 1000 | 1.8 | 0.06 |
| 1100 | 1.88 | 0 |
| 1200 | 1.93 | 0 |
| 1300 | 1.95 | 0 |
| 1400 | 1.95 | 0 |
| 1500 | 1.92 | 0 |
| 1600 | 1.9 | 0 |
| 1700 | 1.87 | 0 |
| 1800 | 1.85 | 0 |
| 1900 | 1.79 | 0.06 |
| 2000 | 1.74 | 0.12 |
| 2500 | 1.58 | 0.24 |
| 3000 | 1.29 | 0.4 |
| 4000 | 1.22 | 0.41 |
| 5000 | 1.19 | 0.47 |

28

BLM_0160287

**USGS San Miguel River near Placerville, CO Gage Segments**

**Figure B3(a)** San Miguel River (1995-2010) year types (wet, wet typical, dry typical, and dry ranked by yearly volume in years 1975-2010), with flow thresholds for low, optimal and high.



29

BLM_0160288

*Specie Creek to Beaver Creek*

**Figure B3(b)** Impact acceptability curve with Potential for Conflict Index ($PCI_2$)
San Miguel River, Specie to Beaver at USGS San Miguel River near Placerville, CO gage.



**Table B3** San Miguel River Specie to Beaver Mean Acceptability Scores and $PCI_2$
(Flows represented are flow levels at USGS San Miguel River near Placerville, CO Gage).

| Specific Flow CFS | Mean Acceptability | $PCI_2$ |
|---|---|---|
| 100 | -2 | 0 |
| 200 | -1.78 | 0 |
| 300 | -1.21 | 0.12 |
| 400 | -0.39 | 0.29 |
| 500 | 0.38 | 0.24 |
| 600 | 1.03 | 0.2 |
| 700 | 1.45 | 0.16 |
| 800 | 1.68 | 0 |
| 900 | 1.78 | 0 |
| 1000 | 1.89 | 0 |
| 1100 | 1.94 | 0 |
| 1200 | 1.92 | 0 |
| 1300 | 1.94 | 0 |
| 1400 | 1.94 | 0 |
| 1500 | 1.94 | 0 |
| 1600 | 1.91 | 0 |
| 1700 | 1.89 | 0.07 |
| 1800 | 1.77 | 0.11 |
| 1900 | 1.71 | 0.1 |
| 2000 | 1.66 | 0.1 |
| 2500 | 1.44 | 0.22 |
| 3000 | 1.3 | 0.37 |
| 4000 | 1.15 | 0.4 |
| 5000 | 1.09 | 0.48 |

30

BLM_0160289

*Down Valley Park to Specie Creek*

**Figure B4** Impact acceptability curve with Potential for Conflict Index (*PCI₂*) for San Miguel River, Down Valley to Specie at USGS San Miguel River near Placerville, CO Gage.



**Table B4** San Miguel River Down Valley to Specie Mean Acceptability Scores and PCI₂ (Flows represented are flow levels at USGS San Miguel River near Placerville, CO Gage).

| Specific Flow CFS | Mean Acceptability | $PCI_2$ |
|---|---|---|
| 100 | -2 | 0 |
| 200 | -1.83 | 0 |
| 300 | -1.28 | 0.1 |
| 400 | -0.44 | 0.22 |
| 500 | 0.53 | 0.3 |
| 600 | 1.14 | 0.3 |
| 700 | 1.47 | 0.12 |
| 800 | 1.71 | 0 |
| 900 | 1.79 | 0 |
| 1000 | 1.88 | 0 |
| 1100 | 1.94 | 0 |
| 1200 | 1.94 | 0 |
| 1300 | 1.94 | 0 |
| 1400 | 1.94 | 0 |
| 1500 | 1.91 | 0 |
| 1600 | 1.88 | 0 |
| 1700 | 1.77 | 0 |
| 1800 | 1.68 | 0 |
| 1900 | 1.57 | 0.07 |
| 2000 | 1.53 | 0.14 |
| 2500 | 1.38 | 0.25 |
| 3000 | 1.29 | 0.36 |
| 4000 | 1.11 | 0.47 |
| 5000 | 1.04 | 0.54 |

31

BLM_0160290

*Bilk Creek to Down Valley Park*

**Figure B5** Impact acceptability curve with Potential for Conflict Index (*PCI₂*) for San Miguel River, Bilk to Down Valley at USGS San Miguel River near Placerville, CO gage.



**Table B5** San Miguel River Bilk to Down Valley Acceptability Scores and $PCI_2$ (Flows represented are flow levels at USGS San Miguel River near Placerville, CO gage).

| Specific Flow CFS | Mean Acceptability | $PCI_2$ |
|---|---|---|
| 100 | -2 | 0 |
| 200 | -1.86 | 0 |
| 300 | -1.25 | 0.08 |
| 400 | -0.39 | 0.17 |
| 500 | 0.5 | 0.33 |
| 600 | 1.19 | 0.19 |
| 700 | 1.44 | 0.12 |
| 800 | 1.74 | 0 |
| 900 | 1.85 | 0 |
| 1000 | 1.91 | 0 |
| 1100 | 1.97 | 0 |
| 1200 | 1.97 | 0 |
| 1300 | 1.97 | 0 |
| 1400 | 1.94 | 0 |
| 1500 | 1.91 | 0 |
| 1600 | 1.81 | 0 |
| 1700 | 1.66 | 0.07 |
| 1800 | 1.61 | 0.07 |
| 1900 | 1.48 | 0.1 |
| 2000 | 1.45 | 0.1 |
| 2500 | 1.23 | 0.35 |
| 3000 | 1 | 0.46 |
| 4000 | 0.9 | 0.54 |
| 5000 | 0.93 | 0.58 |

32

BLM_0160291

33

BLM_0160292

# DOLORES PROJECT DROUGHT CONTINGENCY PLAN

*A plan to reduce the impacts of drought for users of the Dolores Project by implementing mitigation and response actions to decreases theses impacts*

~~November~~ *January* ~~2017~~*2018*

DOLORES WATER CONSERVANCY DISTRICT

BLM_0160293

# Table of Contents

TABLES AND FIGURES ................................................................................................ 3

APPENDICES .............................................................................................................. 4

ABBREVIATIONS AND DEFINITIONS ............................................................................ 5

EXECUTIVE SUMMARY ............................................................................................... 6

DISTRICT BOARD RESOLUTION TO ADOPT PLAN ...................................................... 10

ACKNOWLEDGEMENTS ............................................................................................. 11

1    Introduction ....................................................................................................... 12

   1.1    Purpose of the Drought Contingency Plan ................................................... 12

   1.2    Planning Area ............................................................................................. 12

   1.3    History of Dolores Project ........................................................................... 20

   1.4    Dolores Project Drought Background ........................................................... 27

2    Funding and Public Stakeholder Involvement ...................................................... 34

   2.1    Planning Task Force .................................................................................... 34

   2.2    Task Force Involvement .............................................................................. 34

   2.3    Public Stakeholders .................................................................................... 34

   2.4    Public Stakeholder Involvement and Comments .......................................... 34

3    Drought Monitoring ............................................................................................ 36

   3.1    Methodology for Monitoring, Accounting, and Determining Drought ............. 37~~36~~

   3.2    Description of Past Dolores Project Droughts ............................................... 40~~39~~

   3.3    Current Drought Monitoring and Potential Future Improvements ................... 41~~40~~

4    Vulnerability Assessment .................................................................................... 44~~42~~

   4.1    Impact of Past Dolores Project Droughts on Water Users .............................. 44~~42~~

   4.2    Summary of Past and Future Risk of Economic Losses .................................. 61~~57~~

   4.3    Summary of Past and Future Risk of Social and Environmental Losses ........... 61~~57~~

   4.4    Assessment of Climate Change on Future Risk ............................................. 63~~59~~

5    Mitigation Actions Prior to a Drought .................................................................. 66~~61~~

   5.1    Structural Mitigation Actions ...................................................................... 67~~62~~

   5.2    Non-Structural Mitigation Actions .............................................................. 97~~92~~

6    Response Actions to a Drought ........................................................................... 108~~102~~

BLM_0160294

6.1    Active Communication Structure ........................................................... 110~~102~~

6.2    Improve Water Supply Projections and Timing .................................... 111~~103~~

6.3    Use of DWCD Water Portfolio for Other Project Uses During a Drought ........... 114~~106~~

6.4    Narraguinnep Reservoir Re-Operations ............................................. 115~~107~~

6.5    Municipal Water Conservation ........................................................ 115~~107~~

7     Operation and Administrative Framework ............................................ 116~~108~~

7.1    Roles ................................................................................. 117~~108~~

7.2    Responsibilities & Procedures ......................................................... 117~~108~~

8     Plan Update Process ..................................................................... 119~~110~~

8.1    Plan Evaluation Process ............................................................... 119~~110~~

8.2    Measuring the Effectiveness of the Plan ............................................. 119~~110~~

8.3    Timing of Updates to the Plan ....................................................... 120~~111~~

9     Summary of Drought Plan Actions ................................................... 121~~112~~

9.1    Table of Potential Mitigation and Response Actions .............................. 121~~112~~

9.2    Potential Response Actions ........................................................... 124~~115~~

BLM_0160295

# TABLES AND FIGURES

Table 1. Dolores Project Allocations ............................................................................................ 36
Table 2. FRE Drought Water Supply and Income ........................................................................ 45
Table 3. Full Service Irrigation Drought Water Supply and Income* .......................................... 46
Table 4. Full Service Irrigation Crop Census Summary ............................................................... 48
Table 5. Dolores County Drought Crop Yield Per Acre ............................................................... 49
Table 6. Montezuma County Drought Crop Yield Per Acre ......................................................... 49
Table 7. Total MVIC Project and Non-Project Water Supply* ..................................................... 50
Table 8. Downstream Fishery Project Water Supply* .................................................................. 52
Table 9. Installation Cost Estimate ......................................................................................... 6866
Table 10. Connection of Irrigated Lands to Rocky Ford Cost Estimate .................................. 7068
Table 11. Lower Arickaree Canal Cost Estimate .................................................................... 7674
Table 12. Piping of Existing Goodland Canal Cost Estimate ................................................. 7977
Table 13. Piping of Goodland Canal Tailwaters to THC Cost Estimate .................................. 8078
Table 14. Moonlight Canal Cost Estimate ............................................................................. 8381
Table 15. Potential Structural Mitigation Actions ............................................................. 108106
Table 16 . Potential Non-Structural Mitigation Actions ..................................................... 109107
Table 17. Potential Response Actions ................................................................................ 116114
Table 18. Structural Mitigation Actions Priorities ............................................................. 122120
Table 19. Structural Mitigation Actions Continued… ........................................................ 123121
Table 20. Potential Response Actions Priorities ................................................................ 124122

Figure 1. Location Map ............................................................................................................... 16
Figure 2. Yearly Streamflow of the Dolores River at the Town of Dolores (1896-2016) ........... 17
Figure 3. Precipitation at Great Cut (Water Year 1986-2016) ..................................................... 18
Figure 4. Average Cumulative Snow Pack on May 1 for Lone Cone, El Diente Peak, Lizard Head Pass, and Scotch Creek SNOTEL sites ........................................................................................................ 19
Figure 5. McPhee Maximum Active Capacities ........................................................................... 30
Figure 6. Total McPhee Reservoir Inflow .................................................................................... 31
Figure 7. McPhee Ending Active Capacity and Yearly Spill ........................................................ 32
Figure 8. Percentage of Full Allocation Available ....................................................................... 33
Figure 9. Monthly Streamflow of McElmo Creek at the CO/UT Stateline ............................. 5955
Figure 10. Yearly Streamflow of McElmo Creek at the CO/UT Stateline .............................. 6056
Figure 11. General Location of Valves ................................................................................... 6964
Figure 12. General Location of Pipeline Improvements .......................................................... 7166
Figure 13. Lower Arickaree General Location of Pipeline Improvements .............................. 7772
Figure 14. Goodland General Location of Pipeline Improvements ......................................... 8176
Figure 15. Moonlight General Location of Pipeline Improvements ........................................ 8479
Figure 16. Location Map of Reservoir and Project ................................................................. 9186
Figure 17. Totten Reservoir and Potential Inflows ................................................................ 9489
Figure 18. City of Cortez Annual Municipal Use ................................................................ 10196
Figure 19. November 1 vs. April 1 McPhee Active Capacity ............................................... 113105

BLM_0160296