documented as having special qualities.  We asked how 80 percent confidence will be measured and achieved in a non-subjective way.  We hope to get more information about this new assessment, monitoring and evaluation concept from the BLM.

- We indicated that we would verify if Norwood had a Source Water Protection Area designated and help UFO know where any such areas are in San Miguel County.  In 2002, the Town of Norwood did prepare a Sourcewater Assessment and Protection Report.  San Miguel County will scan and send Greg and Matt the documents we have on file.  The San Miguel County Source Water Assessment Reports we have documentation of are Aldasoro Ranch HOA, Ilium Valley WS, Last Dollar PUD, Mountain Village, Norwood Water Commission, Town of Ophir, Town of Telluride, Wilson Mesa, Telluride Regional Airport, Camp Ilium, Skyline Guest Ranch Ski Lodge, Matterhorn Campground, and Sunshine Campground.  Colorado Department of Public Health and Environment (CDPHE) should also be a reference for these reports and boundaries of source water protection areas.

We did not get a chance to discuss a few topics that San Miguel County has flagged as becoming a concern in the draft Table 2-2 and Alternative E.  We'd like to let you know that we have concerns about what appears to be changes in direction with the new draft Alternative E:

- Lesser protective management for hydrology and wetland features, and omission of protective buffering for intermittent and ephemeral streams, and riparian areas.  Rows 77 and 82 are a couple examples of this.  Where many tributaries in our headwaters position are snow-fed and are technically intermittent, managing resources to provide protection of hydrological systems and water quality is extremely important.
- Changes in language between cooperating, collaborating and coordinating with Colorado Parks and Wildlife (CPW) in various rows.
- Less protective management for irreplaceable cultural resources and national/historic trails.
- No longer proposing to manage Dolores (River) Slickrock Canyon ACEC as an ACEC in Alternative E.  The previous agency preferred alternative D would have managed the Dolores River Slickrock Canyon ACEC to protect and prevent damage to the significant "scenic, cultural and paleontological resources, desert bighorn sheep, peregrine falcon, roundtail chub, and plan communities and the BLM sensitive species Kachina daisy and Naturita milkvetch" (See revised draft Table 2-2, Row 534).  We support the collaborative stakeholder process of the Dolores River Dialogue and feel that management of the Dolores River Slickrock Canyon ACEC as provided in the previous agency preferred Alternative D best protects these significant natural, biological, cultural, recreational and scenic resources and values.

We really appreciated the opportunity to spend a couple hours with you both to learn more about the proposed revisions and Alternative F and to discuss our concerns and make suggestions.  We value our close working relationship with the UFO and its dedicated staff.

Sincerely,

Lynn Padgett
Director, Government Affairs/Natural Resources
San Miguel County

BLM_0166937

# SAN MIGUEL COUNTY

## BOARD OF COMMISSIONERS

### ART GOODTIMES          AMY LEVEK          JOAN MAY

October 31, 2016

Joseph Meyer, Southwest District Manager
Dana Wilson, Acting Uncompahgre Field Office Manager
Project Manager, Uncompahgre RMP
Bureau of Land Management
Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, CO 81401
Via Email: uformp@blm.gov

Dear Joe and Dana,

San Miguel County (SMC) is pleased to be offered the opportunity to comment on the Uncompahgre Field Office of the Bureau of Land Management (UFO BLM) Draft UFO Resource Management Plan (RMP) / Environmental Impact Statement (EIS) [hereafter, "*DRMP/EIS*"]

In 2015, the San Miguel County Board of County Commissioners approved Resolution 2015-009[1] (Attachment A), stating that public land under the management of the U.S. Forest Service and BLM constitute more than 60% of the land within San Miguel County and included the following statements:

- federal public lands are essential to the quality of life in San Miguel County, providing public recreational opportunities for wildlife watching, hiking, hunting, fishing, backpacking, horseback riding, skiing, bicycling, sightseeing, and numerous other outdoor recreational activities;
- federal public lands provide essential habitat for wildlife;
- wildlife and scenic landscapes on the public lands attract outdoor recreation and tourism that are the dominant drivers of San Miguel County's economy;
- San Miguel County business owners attract employees in large part because of the iconic landscape and recreational opportunities on federal public lands;
- San Miguel County's agriculture industry includes numerous ranchers and sheepherders who are dependent on grazing on federal public land;
- San Miguel County residents are actively collaborating among diverse interests and with public land managers to improve public land management and public access.

We have attempted to recommend actions that San Miguel County would like to have incorporated into the Final RMP and Record of Decision (ROD) and recommend improvements for what we consider shortcomings in portions of the plan and.  We are not asking for just a single alternative to be implemented.  We have identified places where we do not agree with the agency preferred Alternative D, and might agree in whole or in part with another Alternative, such as Alternative B.  However, we have tried to approach each item that we perceive to be within or directly affecting San Miguel County in such a way as to offer desired actions and stipulations, which may be a customized mix or hybrid of different alternatives.  We have attempted to offer our desires so that they can be practically accomplished when implementation of the Final RMP begins.  We believe incorporating our

---

[1] http://www.sanmiguelcountyco.gov/301/Document-Viewer

BLM_0166938

recommendations will strengthen the document so that it provides clearer guidance and expectations in resource management programs, practices, and protections for the present and for the future.

Our comments are also offered in the spirit of the DRMP/EIS statement, "The BLM's planning regulations require that RMPs be consistent with officially approved or adopted resource-related plans ...so long as they are also consistent with the purposes, policies, and programs of federal laws and regulations applicable to BLM-administered lands." [2]

We also offer our comments in the spirit that the BLM attempted to "explore opportunities to enhance management of resources and resources uses; resolve conflicts among resources and resource uses; meet the purpose and need for the RMP; and are feasible to accomplish."

While San Miguel County philosophically is more supportive of the intent of Alternative B over Alternatives C and D, there are times where our comments realize that a balanced multiple use and human activities and structures are necessary for economic development and recreation, where they can avoid or mitigate impacts to other activities or wildlife needs.

### 2.3.3   Alternative B

Alternative B emphasizes improving, rehabilitating, and restoring resources and sustaining the ecological integrity of habitats for all priority plant, wildlife, and fish species, while allowing appropriate development scenarios for allowable uses (such as mineral leasing, locatable mineral development, recreation, ROWs, and livestock grazing). It particularly targets the habitats needed for the conservation and recovery of federally listed, proposed, or candidate threatened and endangered plant and animal species. Goals and objectives focus on environmental and social outcomes achieved by sustaining relatively unmodified physical landscapes and natural and cultural resource values for current and future generations. This alternative would establish the greatest number of special designation areas such as ACECs and special recreation management areas, with specific measures designed to protect or enhance resource values. Appropriate and allowable uses and restrictions would be contingent on minimizing impacts on natural and cultural resources.

(From Page 2-7 of the DRMP/EIS)

### 2.3.6   Alternative D: Agency Preferred

Alternative D is the agency-preferred alternative, which emphasizes balancing resources and resource use among competing human interests, land uses, and the conservation of natural and cultural resource values, while sustaining and enhancing ecological integrity across the landscape, including plant, wildlife, and fish habitat. This alternative incorporates a balanced level of protection, restoration, enhancement, and use of resources and services to meet ongoing programs and land uses. Goals and objectives focus on environmental, economic, and social outcomes achieved by strategically addressing demands across the landscape. **Section 2.5** (Considerations in Selecting a Preferred Alternative) outlines the selection process for the preferred alternative.

(From Page 2-8 of the DRMP/EIS)

---

[2] http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_1.Par.7326.File.dat/1_UFO-DRMP-2016_508.pdf

BLM_0166939

With the intent that our comments are practical, we are not commenting on Alternative B-1 or designations that are not within or do not have direct impacts on San Miguel County.

We have prepared our comments mostly by special designation or resource use categories, and our comments are generally specific to areas, resources, resource uses, and potential designations within San Miguel County.  In some cases where the RMP decision may affect San Miguel County, we have also commented.  We have attempted to provide clear comments and recommendations, but in reviewing a plan, supporting materials, and spatial data, we realize our comments may not be as clear as we intended.  Please encourage the UFO staff to contact our staff lead, at 970-369-5441 or lynnp@sanmiguelcountyco.gov if there are any questions or clarifications needed.

1. **LANDS WITH WILDERNESS CHARACTERISTICS/WILDERNESS STUDY AREAS (WSAs)**
   Summary:  There are no Lands with Wilderness Characteristics or WSAs mapped within San Miguel County.  San Miguel County appreciates that these lands were inventoried by the BLM and supports comments being submitted by Conservation Colorado and Western Colorado Congress on this subject.

2. **WILD AND SCENIC RIVER (WSR) SUITABILITY.**
   Summary:
   - San Miguel County fully supports the designations of the identified river segments with in the San Miguel Basin as suitable.
   - San Miguel County fully supports the designation as "suitable" of the segments proposed in DRMP/EIS Alternative D, with some differences in the Alternative D stipulations.
   - See Rational/Discussion for specific comments on segment management stipulations.

   Rationale/Discussion:

   **Determination of Suitability**
   By making a determination of "suitable" for inclusion in the National Wild and Scenic Rivers System for the segments contained in Alternative D of the DRMP/EIS, the UFO BLM is honoring the countless hours of work from local stakeholders, citizens, sub-RAC (Resource Advisory Council), RAC members, and state and federal agency specialists, along with all of the public input gathered in-person and via multiple written comment periods.

   The number of segments recommended as "suitable" is a very small subset of the number of segments analyzed and their designation as suitable was found to be the best locally acceptable method to maintaining important native fish or other critical wildlife habitat, recreation and scenic values. Private property rights and water rights were carefully considered during the suitability process led by the stakeholder group and had been appropriately respected in Alternative D of the draft RMP/EIS. [3, 4]

   San Miguel County urges the UFO BLM to support these determinations of suitability within the Dolores and San Miguel Basin and to work with the Colorado Water Conservation Board (CWCB) to obtain flow protections using state processes to support the flow-related Outstandingly Remarkable Values (ORVs) where they do not already exist within these segments.

   In June 2010, the UFO BLM published their findings of eligibility for 174 river segments studied and evaluated in advance of the Uncompahgre Resource Management Plan (RMP). The analysis area included

---

[3]Pages 3-164-167;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_1.Par.96289.File.dat/3_UFO-DRMP-2016_508.pdf
[4]http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_appendix0.Par.2133.File.dat/P_WSR-Suit_UFO-DRMP-2016_508.pdf

3

a portion of the Dominguez-Escalante National Conservation Area (NCA). An additional segment of the Dolores River, identified in the San Juan Public Lands Draft Land Management Plan, was evaluated by the UFO BLM because the northernmost 11.8-mile downstream portion of this segment is within the UFO planning area.

The BLM found after completion of field assessments and data analysis that informed their eligibility determination process, that 34 segments out of the 174 segments scoped were determined to be both free-flowing and to possess one or more outstandingly remarkable values (ORVs) that are necessary for Wild and Scenic River eligibility.  During the eligibility process, reviews of free-flowing character and determinations of ORVs were made by Colorado Parks and Wildlife (formerly Colorado Division of Wildlife; CPW), U.S. Fish and Wildlife Service (USFWS), and Colorado Natural Heritage Program (CNHP). The Draft Eligibility Report had a typical public comment period with comments received by the BLM from diverse interests.

In addition, fish values were assessed by Colorado Parks and Wildlife (CPW) on the San Miguel and Dolores Rivers. A presentation by Dan Kowalski, Aquatic Biologist, CPW, stated that San Miguel River Segments 1 and 2 are very important and highly used fisheries with important recreational fishing values. San Miguel River Segment 2 was identified as exceeding the Gold Medal Biomass standard in some years. Native fish species identified on the San Miguel River are Colorado Pikeminnow (Federally Endangered/State Threatened); Bluehead Sucker (State Threatened); Flannelmouth Sucker (State Threatened); Roundtail chub (State Species of Special Concern; BLM Sensitive Species); Colorado River Cutthroat Trout (State Species of Special Concern); Speckled Dace and Mottled Sculpin.[5]

In February 2013, the UFO BLM published their final Wild and Scenic River Suitability Report, which further analyzed the suitability of 28 river segments, including the 11 .88-mile segment of the Dolores River.[6] (Six river segments, found eligible, were separately analyzed for suitability within the Dominguez-Escalante NCA RMP.)

During the robust suitability process, the BLM weighed protective measures for eligible river segments and the corresponding corridor in relation to current and potential identified uses. Possible environmental and economic consequences of, management issues resulting from, and reasonable alternatives to WSR designation were considered. Preliminary segment boundaries and classifications were reevaluated in response to public input. Geographic information systems data was recalculated, at times resulting in modified segment lengths and land ownership measures. Public participation and comments resulted in refinement of which segments were considered suitable for 10 stakeholder group meetings within the Dolores/San Miguel Basin.  (Separate stakeholder processes were initiated for segments in the Gunnison River Basin and those in the Dolores and San Miguel river basins.) Stakeholder groups held public meetings during late 2010 and early 2011. The Dolores/San Miguel Basin subgroup considered BLM analysis and public input and developed recommendations for each of the Dolores-San Miguel segments. A second public comment period was held to receive even more input prior to suitability recommendations from the stakeholder group. Hundreds of public comments were considered during the formal suitability public comment period.

San Miguel County fully believes that the stakeholder group, co-chaired by John Reams, a construction and mining contractor and rancher based in Norwood and Naturita, and Peter Mueller, a project director for the Nature Conservancy, based in Telluride, represented diverse backgrounds and interests and solicited diverse input from the public that was deeply considered in the final results of the process.

---

[5] http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/wsr_docs.Par.32765.File.dat/San%20Miguel%20Dolores%20Fish%20DOW%20Presentation%20Dan%20Kowalski.pdf
[6] http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_docs_1.Par.70506.File.dat/WSR%20Suitability%20Report_Final_04272012.pdf

BLM_0166941

Stakeholder meetings were held in Norwood, Naturita, and Telluride, whose residents are known to have very different political views on energy, minerals, recreation, agriculture, and forestry.[7] The Dolores/San Miguel Basin subgroup examined 21 different stream segments and public input received was incorporated into their findings.[8] The stakeholder group found 7 segments to be Suitable with modifications, 6 segments to be Suitable, and 8 to be Not Suitable.[9] Their recommendations were then considered by the BLM Southwest Resource Advisory Council (SW RAC) which voted unanimously to recommend that 8 segments in the San Miguel Basin and 5 segments in the Dolores Basin be found suitable. The BLM incorporated these recommendations into its preferred Alternative D of the UFO draft RMP/EIS.

San Miguel County is supportive of NCA legislation on the Dolores River Segments 1 and 2 and the La Sal Creek Segments 2 and 3, which overlap with the Tres Rios and Uncompahgre BLM offices.  If the NCA is successful, we believe that a Suitability determination would no longer be relevant. However, until an NCA is agreed upon, Suitability is a powerful tool to bring stakeholders and governments to the table to agree on NCA terms. Currently, there is no guarantee that an NCA will happen in the near future or that there will be agreement as to how the NCA will protect flows in place of current Suitability. Therefore, until such time as an NCA may be established that protects both flow-related and non-flow dependent ORVs, San Miguel County urges the CWCB to support the Alternative D suitability recommendations for the Dolores River. If an NCA is established that accomplishes full protection of ORVs, we would then support the determination for these 4 segments to be changed to not suitable.

San Miguel County understands that when the CWCB voted to appropriate an Instream Flow right (ISF) on the Dolores River from the San Miguel to Gateway (Lower Dolores Segment), the BLM offered in an unprecedented agreement, not to seek a federal water right on this river segment to protect the ORV flows. This was a very important consideration by the CWCB in voting to appropriate the ISF. We support the CWCB in asking for this language to be carried through on the other Dolores River sections.

While the ISF is important to protect the Lower Dolores segment (25), the ISF alone would not protect the wide array of ORVs, including: recreational and the extraordinary rafting, kayaking and canoeing opportunities; peregrine falcon habitat, including for breeding and nesting; and geologic and scenic, including the historic hanging flume.  The BLM's Report admits that due to the limited unappropriated water, it is unlikely that the high flows needed to sustain recreational activities could be secured. The Suitability determination on the Lower Dolores sections would complement the State's ISF by adding land management protection for this incredibly scenic and remote stretch of river with its historical, cultural and wildlife attributes.

San Miguel County also understands that The Lower Dolores from McPhee Dam to Bedrock already operates with a Suitability designation that was in place when the dam was built. The BLM has made it clear that it can't take away the senior water rights of the Dolores Project or require new reservoir releases through Suitability; rather it must work within the Colorado water rights system. The current Suitability determination on the Dolores has not appeared to affect Drought Contingency Planning or any coordinated management efforts.

     **A.  San Miguel River Segment 1** – ORVs are Scenic, Recreational, Wildlife, Historic, Vegetation, and Paleontology.  Over 19 miles of this segment lies within the existing San Miguel ACEC, and it

---

[7] http://www.telluridenews.com/news/article_d60c6f40-91d2-542e-8dad-e06bb13d4e85.html
[8] http://matchbin-assets.s3.amazonaws.com/public/sites/165/assets/64CW_The_Watch__March_17__2011.pdf
[9] http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/wsr_docs.Par.31074.File.dat/2011-0225%20WSR%20Dolores%20San%20Miguel%20Segment%20Analysis%20RAC%20Recommendation.pdf

BLM_0166942

appears nearly the whole segment lies within the proposed San Miguel Expansion ACEC (GIS files). [10]

The San Miguel River corridor is extremely important for the local economy. Preserving scenic views while allowing for high-quality boating, fishing, and retaining the existing travel management plan uses/limitations is extremely important to San Miguel County.

Due to the scenic and recreational ORVs, the fact that this segment is within the designated San Juan Skyway Scenic Byway and the Unaweep-Tabeguache Scenic and Historic Byway, it is very important to retain no less than a V-2 category for visual resource management. This is consistent with the San Juan Scenic Byway Management Plan[11], the Unaweep-Tabeguache Scenic and Historic Byway Corridor Management Plan[12], and the San Miguel County Comprehensive Development Plan[13]. While the DRMP/EIS states "The BLM would not permit any actions that would adversely affect the free-flowing condition, ORVs, and adequate water quality to support those ORVs or tentative classification of any of the segments, or would result in the reduction of water quality to the extent that it would no longer support the ORVs..."[14], the stipulations provided in Alternative D do not provide the safeguards needed to make this a true statement. If this is indeed a fact, then stronger stipulations are needed to replace those in Alternative D and/or in addition to the Alternative D stipulations. Also, reaches within this segment contain four globally vulnerable (G3) riparian communities.

**B. Saltado Creek** – This segment is proposed for a WSR designation of Wild in Alternative D. The stated ORV for this segment is Vegetation, described as an "A-ranked" superior occurrence of globally vulnerable (G3) narrowleaf cottonwood/blue spruce/thinleaf alder riparian forest, which is a primary reason the existing San Miguel ACEC was created.[15]

**C. Beaver Creek** --
This segment is proposed for a WSR designation of Recreational in Alternative D. The stated ORV for this segment is Vegetation, described as an "A-ranked" superior occurrence of globally vulnerable (G3) narrowleaf cottonwood/blue spruce/thinleaf alder riparian forest, which is a primary reason the existing San Miguel ACEC was created.[16] The designation of Recreational received strong support from a primary private landowner and San Miguel County, and was chosen to provide "reasonable certainty that future water development projects would receive consideration and could move forward with minimal difficulty." [17]

---

[10] http://www.blm.gov/co/st/en/fo/ufo/uncompahgre_rmp/ufo_draft_rmp_shape.html
[11] https://www.codot.gov/travel/scenic-byways/southwest/san-juan-skyway/SanJuanSkywayCorridorManagmentPlan.pdf/at_download/file
[12] https://www.codot.gov/travel/scenic-byways/southwest/unaweep-tabeguache/unaweep-tageguache-byway-corridor-management-plan-sep-2013
[13] http://www.sanmiguelcountyco.gov/DocumentCenter/Home/View/222
[14] Page 4-409; http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_2.Par.12939.File.dat/4_UFO-DRMP-2016_508.pdf
[15] Page 64; http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_docs.Par.16348.File.dat/Final%20WSR%20Eligibility%20Report%20Final%20Web%2007Dec10.pdf
[16] Page 64; http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_docs.Par.16348.File.dat/Final%20WSR%20Eligibility%20Report%20Final%20Web%2007Dec10.pdf
[17] Page 37; http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_docs_1.Par.70506.File.dat/WSR%20Suitability%20Report_Final_04272012.pdf

BLM_0166943

**3. SAN MIGUEL RIVER/SALTADO CREEK/BEAVER CREEK AREA COMMENTS:**

First, the San Miguel River corridor along with tributaries Saltado and Beaver Creeks was analyzed by San Miguel County staff holistically. These areas have several existing and proposed designations within either Alternative A, Alternative B, and/or Alternative D. However, we found that the stipulations provided in the UFO BLM DRMP/EIS GIS files did not match the language within the RMP, and added quite literally, layers of complexity to understand which stipulation (generally the most protective or stringent) would apply to which portion of land within this area.

To aid in this analysis, San Miguel County staff prepared a comparison table (Attachment B) that showed the stated stipulations for each designation category, for the San Miguel River mainstem and surrounding canyon/Area of Critical Environmental Concern (ACEC) lands; the Saltado Creek drainage and surrounding canyon/ACEC lands; and the Beaver Creek drainage and surrounding canyon/ACEC lands.

As one example of the inconsistencies of stipulations in this area, a single place within the San Miguel River proposed Wild and Scenic River (WSR) Segment 1, near the confluence with Specie Creek -- was within:

- the Alternative D WSR segment proposed as Suitable, Recreation;
- the Alternative D San Miguel River Special Recreation Management Area (SRMA);
- the Alternative A and D existing San Miguel River Area of Critical Environmental Concern (ACEC) designated in 1993 to protect the high-quality riparian vegetation resources, habitat for many bird species, and the scenic value of the corridor, within or proximal to a State designated Scenic Byway; (According to the BLM's ACEC Final Report of 2013, the riparian vegetation community exists "mainly due to the undammed San Miguel River and its intact hydrology." The report when on to state, "Such communities are becoming increasingly rare in Colorado." [18]
  The report also states that the Visual Resource Index (VRI) should be V-2 for the existing San Miguel River ACEC.)
- the Alternative D San Miguel Ecological Emphasis Area;
- the Alternative D fluid minerals stipulation: No Surface Occupancy (NSO)
- the Alternative B San Miguel River Expansion ACEC which would expand the ACEC to protect additional lands having high-quality riparian vegetation resources, bird habitats, and scenic values, within or proximal to State designated Scenic Byways; (The BLM's ACEC Final Report states that the VRI should be V-2 for the San Miguel River Expansion ACEC.)
- the Alternative B fluid minerals stipulation: No Lease (NL);
- the Alternative A lands shown as <u>not</u> having Coal potential.

What we found in our comparison table was that the preferred Alternative D, for the above designations and shapefiles, would classify this with a hodge-podge of V-2 within the WSR polygon, but V-3 within the ACEC and SRMA. This makes no sense because these lands are proximal/in/adjacent to two state-designated scenic byways. The Enhanced Ecological Area and WSR would have a Controlled Surface Occupancy (CSO) stipulation, while the overlapping ACEC, SMRA, and fluid minerals layers would have No Surface Occupancy (NSO) for Alternative D. The SMRA, ACEC Expansion, and fluid minerals Alternative B stipulation would be NL.

---

[18]Page 41: http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_docs_1.Par.52182.File.dat/ACEC%20Report%20Final%2001152013.pdf

BLM_0166944

Rather than have so many overlapping layers with varying and conflicting stipulations overlying each other on the ground, a situation that will certainly be more prone to human error in interpretation and implementation, San Miguel County desires that the lands within the San Miguel Expansion ACEC and/or San Miguel SMRA Alternative B boundaries be given protections that will be simplified, allow for appropriate recreation, allow for adequate protection for the ACEC and WSR values, provide co-protection for wildlife, and adequately protect the visual resources.

**The final decision should:**

A.  Include a determination of "suitable" for inclusion in the National Wild and Scenic Rivers System for San Miguel River Segment 1, Beaver Creek and Saltado Creek.

B.  Expand the San Miguel River ACEC to include all of the lands within the existing San Miguel River ACEC and the proposed San Miguel River Expansion ACEC in Alternative B.

C.  Continue the existing San Miguel River SRMA which is included in the agency preferred Alternative D.  There are an additional 76 acres that would be included in the SRMA just southwest of the confluence of Willow Creek and the San Miguel River.  San Miguel County does not want this SRMA changed to become the San Miguel River Corridor Extensive Recreation Management Area (ERMA) that is proposed in Alternative C.  The VRM classification should be changed from VRM-III to VRM-II to be consistent with the ACEC and the two state-designated scenic byways.  The incredible scenic qualities of this area are very important economically to the region and should be maintained and managed at VRM-II.  The SRMA should be expanded to match the San Miguel River Expansion ACEC boundary, such as in Big Bear Creek area.

According to the BLM, any area not identified as an SRMA is automatically managed as an ERMA.  On the BLM UFO Recreation Management Area web page, the BLM states:  "Within ERMAs, recreation is unstructured and does not require intensive management or significant investment in trails or facilities.  This type of custodial or "dispersed" recreation management provides minimal visitor services and few developed recreational facilities."[19]  Because there is a large identified local, regional, national and international market demand for structured recreation, the San Miguel River SRMA is the best management fit.  Within the San Miguel River SRMA, there are developed recreation sites, including campgrounds, staging areas, visitor information, and limited facilities.

D.  With appropriate stipulations for the above, the complex mosaic of Enhanced Ecological Areas as proposed in the San Miguel River Expansion ACEC/SRMA areas should <u>not</u> be needed as wildlife will be getting protection benefits from the management decisions and implementation of the WSRs, SMRA, and expanded ACEC.  The stipulations contained in the Enhanced Ecological Area shapefile for Alternatives B and D are much weaker than those for the other intersecting designations of ACEC, SRMA, and WSR (see Attachment A). [20]

The BLM's stated reason for contemplating an EEA in the San Miguel River is provided in its description in the DRMP/EIS Appendix D[21]:

---

[19] http://www.blm.gov/co/st/en/fo/ufo/recreation.print.html
[20] http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/shape_files_3.Par.60521.File.dat/ecological_emphasis_areas.zip
[21] Page D4;http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_appendix.Par.39615.File.dat/D_EEAs_UFO-DRMP-2016_508.pdf

8

| Ecological Emphasis Area Name | Description | Habitat Type | Primary Benefiting Species |
|---|---|---|---|
| San Miguel | Links the Mount Wilson area on National Forest across the San Miguel Canyon to the Uncompahgre Plateau, and contributes to linkage between Mount Sneffels area and Lizard Head area; includes parts of the existing San Miguel ACEC. Divided into seven zones. | Riverine and riparian, cliff and canyon, mountain shrub, pinyon-juniper, montane forest | Bear, mountain lion, lynx, mule deer, elk, native cold water fish |

San Miguel County desires that within the San Miguel River existing/expansion ACEC - San Miguel River SRMA - San Miguel Segment 1/Beaver Creek/Saltaldo Creek WSRs that the final RMP/ROD does not designate the additional San Miguel Enhanced Ecological Areas.  With the stipulations recommended below, these areas will be well served.  All of the stipulations recommended for Alternative D for creating the San Miguel EEA are included or exceeded in our list of stipulations below.

The BLM defines Ecological Emphasis Areas (EEAs) as areas that are "otherwise unprotected core wildlife and native plant habitat and associated movement, dispersal, and migration corridors," with the objective of having a designated EEA being "manage to preserve the continuity of habitats, vegetation communities, and native wildlife within, while following vegetation mosaic objectives" [22]

E.  San Miguel County believes that the San Miguel River, including the Saltado and Beaver Creek areas, can be served by a single set of stipulations that meet the needs and criteria of all of the overlapping designations recommended by the BLM and/or requested by San Miguel County (San Miguel ACEC Expansion, San Miguel River SRMA, and all 3 WSR segments).  The stipulations for these lands collectively should include:

- "**7**" = Limit camping to 7 days, 6 nights maximum within a 30-day period for dispersed camping.
  - SMC Note: Do not change the current maximum length of stays at the improved BLM campgrounds: Fall Creek (7 days), Caddis Flats (14 days), or Lower Beaver (7 days).
- "**AVOID**" = ROW Avoidance.
  - SMC Note: San Miguel County would support an EXCL = ROW Exclusion for some areas where no ROWs currently exist, however, it is the county's desire to have the ability to scope a bike path or trail from Telluride to Placerville somewhere off of State Highway 135 and near the San Miguel River and/or additional broadband infrastructure on existing ROWs or short segments of new ROW, if there are not significant negative impacts to ACECs, WSR, or recreation.
- "**CAMPFIRE**" = No Campfires for dispersed camping.
  - SMC Note:  San Miguel County is ok with campfires in existing campgrounds - - Fall Creek, Caddis Flats and Lower Beaver if already allowed.
- "**COAL**" = Closed to coal mineral leasing.
  - SMC Note:  BLM data that there is little to no actual coal potential and allowing for coal mineral disposal would negatively impact ORVs with little actual mineral resource benefit.  This entire area is given a classification of no coal potential in Alternative A.

---

[22] Page 2-68; http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_1.Par.31726.File.dat/2_UFO-DRMP-2016_508.pdf

BLM_0166946

- **"CWOD"** = Closed to commercial wood cutting.
- **"DES"** = Limited to designated routes / Limited to existing routes.
- **"DR_Timing"** = Designated routes - Timing Limitations, Limited to designated routes all other times (for wildlife).
- *"**HYDROE**" = Exclusion area for hydropower.
  - o SMC Note: This is consistent with the importance of this segment for fishing and recreational boating.
- **"LOCATE"** = Petition Secretary of Interior to withdrawal for locatable minerals.
- **"NL"** = No lease.
  - o SMC Note: There are low oil and gas potential in the eastern portion of the expanded San Miguel River ACEC. According to Colorado Oil & Gas Commission (COGCC), Well Data downloaded in September 2016, only one well has been drilled within 2 miles of the proposed WSR suitable segments. This well was a wildcat well near Placerville, drilled in 1960 and was "DA: dry and abandoned."
  - o SMC Note: SMC finds that the negative impacts to the San Miguel River, Beaver Creek, and Saltado Creek corridors, scenic byways, traffic, recreation, visual resources, and wildlife in an area without any oil/gas infrastructure, identified oil/gas fields, and history of interest or past production far outweighs any possible benefits from resource exploration or extraction within this area. According to the Fluid Minerals Alt D code in the Fluid Minerals Alt D shapefile[23], the entire San Miguel River Segment 1, Beaver Creek, and Saltado Creek WSRs, and the existing and expanded San Miguel ACEC and San Miguel SRMA is coded as NSO for the preferred alternative. However, this stipulation seems to missing from the WSR Alt D shapefile attribute table[24]. Alternative B gives all these areas the stipulation of "NL" which is preferred by San Miguel County as it conserves valuable staff time and resources from even going through the federal lease process.
- **"RANGE"** = Closed to livestock grazing.
  - o SMC Note: essentially already recommended in Alternatives B and D. This is a high conflict area with many uses constrained in a narrow canyon. Monsoonal rains cause road closures, debris flows, and rockfalls multiple times each summer. Grasses and forbs should not be grazed as they provide protection. Wildlife needs this food source.
- **"RECMINE"** = No recreational mining.
  - o SMC Note: SMC has found recreational mining is disruptive to other quiet uses, wildlife, and has caused conflicts with public access, boating, fishing, hiking, photography and other quiet use activities within the San Miguel River corridor. Non-motorized recreational mining does not have the same level of impact and disruption to the aquatic and riparian ecosystems as motorized recreational mining. San Miguel County believes that to protect the WSR, ACEC, SRMA, and highly scenic and important riparian and aquatic ecosystems, there at should be no motorized recreational mining on the San Miguel River Segment 1, and the Beaver and Saltado Creek segments found suitable for WSR designation.
- **"SALABLE"** = Closed to salable mineral disposal.

---

[23] http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/shape_files_1.Par.20291.File.dat/fluid_minerals_alt_d.zip

[24] http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/shape_files_3.Par.28698.File.dat/WSR_ALT_D_FINAL.zip

BLM_0166947

- o SMC Note:  Gravel and dimension stone mining is not consistent with the ORVs and ACEC riparian values.
- **"SEED"** = Area closed to seed collection.
- **"SHEEP"** = Grazing of sheep and goats not permitted
  - o SMC Note: essentially already recommended in Alternatives B and D.  SMC Note:  This is a high conflict area with many uses constrained in a narrow canyon.  Monsoonal rains cause road closures, debris flows, and rockfalls multiple times each summer.  Grasses and forbs should not be grazed as they provide protection.  Wildlife needs this food source.
- *"**SOLARE**" = Exclusion area for solar.
  - o SMC Note: Commercial solar concentrators or PV panels are not compatible with the WSR/SRMA/ACEC/scenic and wildlife values here.  The San Miguel River corridor is determined to have "Very Good" Solar PV potential by the UFO BLM Renewable Energy Potential Report (2010), which doesn't take into account distance from substations.  PV arrays for off-site uses need to be proximal to substations. [25]
- **"SOLID"**= Closed to non-energy solid mineral leasing.
  - o SMC Note:  Ground disturbing activities, such as surface mining, are not consistent with the ORVs, wildlife and ACEC values, nor the important scenic qualities.
- **"SSR"** = Site-Specific Relocation.
- **"TAR"**=Prohibit target shooting.
  - o SMC Note:  Target shooting in the narrow rock-walled canyons results in amplified noise and disturbances to the wildlife, birds and pristine experiences of these areas.
- **"V-2"**=VRM II
  - o SMC Note:  WSR and San Miguel River Existing/Expansion ACEC should have a VRM II, as the DRMP/EIS states "Managing the segments according to VRM Class 1 or II objectives would provide direct protection to segments with a scenic ORV by requiring that the alterations to the landscape be done so as not to dominate the viewshed.  If alterations cannot be mitigated to reach the VRM class objective, they would not be permitted...In turn, this would provide indirect protection to segments with a cultural or historical ORV." [26] As noted elsewhere, the BLM 2013 ACEC Final Report states that the San Miguel existing and expansion ACECs should have VRM II.
  - o SMC Note:  Beaver Creek was not provided any VRM stipulation in the WSR Alt D shapefile.  WSR should have a VRM II.
- *"**WINDE**"=Exclusion area for the wind.
  - o SMC Note:  The San Miguel River corridor is determined to have "Poor" wind potential by the UFO BLM Renewable Energy Potential Report (2010). [27]
- **"WOOD"**=Closed to wood cutting.

---

[25]http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_docs_1.Par.91799.File.dat/UFO_RenewEnergy_05-25-2010_508.pdf
[26]Page 4-412;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_2.Par.12939.File.dat/4_UFO-DRMP-2016_508.pdf
[27]http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_docs_1.Par.91799.File.dat/UFO_RenewEnergy_05-25-2010_508.pdf

BLM_0166948

*All above stipulations apply where there is BLM surface estate, however, HYDROE, SOLARE, AND WINDE are not included as stipulations on the non-BLM surface estate (private, U.S. Forest Service lands).

We obtained definitions of these codes from BLM GIS metadata made available for each BLM UFO DRMP/EIS shapefile, such as the WSR Alt D shapefile metadata.[28]

3. **Special Recreation Management Areas (SRMAs) & Extensive Recreation Management Areas (ERMAs)**
   <u>Summary:</u>  There are two SRMAs discussed in the DRMP/EIS within San Miguel County:  San Miguel River (which includes the San Miguel River Segment 1, Saltado Creek and Beaver Creek segments determined to be suitable for Wild & Scenic River designation in Alternative D; and Burn Canyon.  We commented above that we desire to continue the designation of the San Miguel River SRMA.  The San Miguel River SRMA already exists but the preferred Alternative D would add approximately 76 acres to this SRMA, just southwest of the confluence of Willow Creek and San Miguel River.

   Specific to the Burn Canyon SRMA, we note that it is within the proposed Naturita Canyon EEA.  The Burn Canyon SRMA is recommended in Alternative B, but not in the agency preferred alternative, Alternative D.  Under Alternative B, if designated, the Burn Canyon SRMA would have the following management stipulations:

**SRMA Scenario (Alternative B)**



---

[28]http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/shape_files_3.Par.87378.File.dat/WSR_ALT_D_FINAL.html

BLM_0166949

Figure 3.1 -- showing the Burn Canyon SRMA Alternative B scenario.

It would have travel restricted to mostly designated routes, portions (purple) would be closed to mechanized (bikes) and motorized vehicles, and would not allow competitive events.  It would be closed to coal and solid mineral leasing, the BLM would petition for withdrawal of locatable minerals, and there would be no surface occupancy for oil and gas.  It would have VRM II.

Targeted activities would be hiking and horseback riding and enjoyment of nature in the canyons.  On the mesa tops and slopes, activities would also include mountain biking.

Under the agency preferred ERMA in Alternative D, the ERMA would have VRM III and controlled surface use for oil/gas development only.  The SRMA and ERMA have the same boundary.  However, under the ERMA scenario, the lands would be managed to allow ATVs and motorcycles, mountain biking, and hiking in both the canyons and the mesa top/slopes, while retaining a natural appearing landscape and providing necessary recreation facilities such as trails/trailheads/staging areas/signage to facilitate recreational activities. [29]

_____

[29]Pages J-5-7; J-91;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_appendix0.Par.40130.File.dat/J_Rec_UFO-DRMP-2016_508.pdf

13

BLM_0166950

**ERMA Scenario (Alternative D)**



| alt_d_code |
|---|
| ☐ CSU,V-3 |

Figure 3.2 -- showing the Burn Canyon SRMA Alternative D scenario.

San Miguel County desires that the Burn Canyon SMRA as mapped and stipulated in Alternative B be approved and incorporated into the final RMP.  We believe that the SRMA will complement the proposed Naturita Canyon EEA as mapped and recommended in Alternative B, along with the fluid minerals stipulations from Alternative B in this area.

**4.   Enhanced Ecological Areas (EEAs)**

**A.  San Miguel EEA.**

The BLM UFO DRMP/EIS contemplates two EEAs within San Miguel County:  San Miguel EEA and Naturita Canyon EEA. [30]  The San Miguel River Expanded ACEC preferred by San Miguel County, the existing San Miguel SRMA and the Alternative D recommended WSR segments for San Miguel River Segment 1,

---

[30]Pages D-3 & D-4;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_appendix.Par.39615.File.dat/D_EEAs_UFO-DRMP-2016_508.pdf

BLM_0166951

Beaver Creek and Saltado Creek.  San Miguel County recommended a standardized set of stipulations (pages 7-9 of this document) that would meet the needs of all of these San Miguel County desired designations, and also meet and exceed the stipulations that had been proposed by the BLM for the San Miguel EEA.

**B.  Naturita Canyon EEA.**

The BLM describes the reasons for considering Naturita Canyon EEA on Page D-4 of Appendix D of the DRMP/EIS as:

| Ecological Emphasis Area Name | Description | Habitat Type | Primary Benefiting Species |
|---|---|---|---|
| Naturita Canyon | Adjoins National Forest System lands leading up to Lone Cone area; includes the major Naturita Canyon drainage, which has wildlife/indicator species emphasis on adjoining National Forest. Divided into four zones. | Riparian, cliff and canyon, pinyon-juniper | Bear, mountain lion, mule deer elk, native warm water and cold water fish |

Geographically, there are several parcels mapped as comprising the Naturita Canyon EEA for Alternative B.  The purple and red polygons (see figures below) make up the Naturita Canyon EEA.  It would provide linkages between adjacent State land (blue) and National Forest land (green).  The hatching shows occupied critical Gunnison Sage-grouse habitat as designated by U.S. Fish and Wildlife Service (USFWS).  The DRMP/EIS does not list Gunnison Sage-grouse (GuSG) as a species that the EEA would be managed to benefit.

BLM_0166952



Figure 4b.1 -- Showing the Naturita Canyon EEA Alternative B.

In Alternative D, the agency preferred alternative, only the two red parcels of the Naturita Canyon EEA would actually be designated as an EEA:

BLM_0166953



Figure 4b.2 is showing Naturita Canyon EEA Alternative D and Colorado Oil and Gas Commission (COGCC) wells.

Above, the BLM surface that would not be part of the Naturita Canyon EEA is shown in yellow.  We also show oil and gas wells, with green wells being producing oil or gas wells, and red wells being mostly wildcat wells that are non-producing.  An EEA consisting of just the red polygons, especially with simply controlled surface use (CSU) and ROW avoidance (AVOID),  instead of no surface occupancy (NSO), designated routes- timing limitations (DR_TIMING),  seems this would result in two small token EEA parcels without meaningful habitat protection or connectivity, beyond what is already anticipated by the fluid minerals management in Alternative D.  Most of these two polygons are already anticipated to be

BLM_0166954

NSO.  However, the remainder of the area that is analyzed for Naturita Canyon EEA is CSU under alternative D.

Alternative D, agency preferred, for Naturita Canyon EEA and fluid minerals stipulations:





Figure 4b.3 -- showing the Naturita Canyon EEA Alternative D with fluid minerals Alternative D

BLM_0166955

Alternative B, San Miguel County preferred, for Naturita Canyon EEA and fluid minerals stipulations:



Figure 4b.4 showing Naturita Canyon Alternative B and fluid minerals Alternative B.

San Miguel County believes that since the wildlife values warranted studying the Naturita Canyon area for an EEA, that Alternative B for the EEA boundary and EEA stipulations, as well as Alternative B fluid

19

minerals stipulations, should be applied by the final decision in this area.  We could not locate a discussion in the DRMP/EIS explaining the BLM rationale for how choosing Alternative D over Alternative B with respect to this EEA and the fluid minerals stipulations that overlap, would achieve the stated objectives of preserving the continuity of habitats, vegetation communities, and native wildlife. [31]

<u>San Miguel County recommends that the full Naturita Canyon EEA be designated, as mapped in Alternative B, along with Alternative B fluid minerals stipulations.  This will be complimented by also designating the Burn Canyon SRMA as mapped in Alternative B.</u>

**5.  Areas of Critical Environmental Concern (ACECs)**
The UFO DRMP/EIS contemplates three ACECs within San Miguel County:

**A.  San Miguel River ACEC and San Miguel River Expansion ACEC.**
These ACECs have been discussed in detail in this document above, and San Miguel County strongly supports Alternative B, which would designate the additional lands within the San Miguel River Expansion ACEC.  According to the BLM's Final ACEC report (2013), all of the relevance and importance criteria were met, just as with the existing San Miguel River ACEC. [32]  San Miguel County also strongly supports a cohesive management of the overlapping ACEC lands, SRMA lands, and WSR segments within San Miguel River Segment 1, Beaver Creek and Saltado Creek through one set of stipulations, with a VRM II stipulation.  The agency preferred VRM III stipulation does not adequately protect the exceptional scenic qualities of this area, nor the regional economy, nor the viewshed of the two state-designated Scenic Byways.  Please see this document, Section 3, pages 5-9 above for specific requests for changes and implementation that San Miguel County desires in the final decision.

**B.  San Miguel Gunnison Sage-grouse ACEC.**
This ACEC is comprised of 470 acres in multiple parcels occurring on scattered critical Gunnison Sage-grouse habitat that whose surface estate is managed by the BLM.  San Miguel County was originally one of the proponents of this ACEC.  When the BLM's Final ACEC report was published in 2013, this was prior to the federal decision to list the Gunnison Sage-grouse as Threatened and designate critical habitat in 2014.

On November 12, 2014, the U.S. Fish and Wildlife Service (USFWS) announced that it determined that the Gunnison Sage-grouse, a ground-dwelling bird found only in southwestern Colorado and southeastern Utah, required the protection of the Endangered Species Act (ESA) as a threatened species.  The USFWS originally proposed to list the species as 'endangered' under the ESA in January 2013, but efforts by the two states, tribes, local communities, private landowners and other stakeholders to conserve the species and its habitat were found to have helped reduce the threats to the bird sufficiently to give it the more flexibly protected status of 'threatened.' [33]

The supporting EIS for the Threatened Status designation of the Gunnison Sage-grouse[34] and for the Designation of Critical Habitat for the Gunnison Sage-grouse[35] is dated November 9, 2014.

---

[31] Pages 2-68 & 2-69;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_1.Par.31726.File.dat/2_UFO-DRMP-2016_508.pdf
[32] Pages 41-47;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_docs_1.Par.52182.File.dat/ACEC%20Report%20Final%2001152013.pdf
[33] https://www.fws.gov/mountain-prairie/pressrel/2014/11122014_ServiceProtectsGunnisonSageGrouseAsThreatenedUnderESA.php
[34] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GUSGFinalListingRule_11202014.pdf
[35] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GuSGCriticalHabitat_11202014.pdf

BLM_0166957

The Gunnison Sage-grouse ACEC as proposed in this UFO DRMP/EIS does not contemplate the status of the species or critical habitat as listed in the federal register in 2014, does not contemplate surface disturbance and other disturbances on critical habitat that may be non-BLM surface estate but is BLM-managed federal mineral estate, and does not contemplate guidelines within numerous plans and the latest best management practices for stipulations and buffers from leks.

The UFO DRMP/EIS does not take into consideration that Occupied GuSG Habitat includes specific properties (and split estate) that the USFWS excluded from the critical habitat designation.  The political removal of surface lands coinciding within these specific private properties under conservation easements from listed critical habitat is appropriate, but the removal of subsurface public lands from Occupied Habitat is not appropriate because it excludes the subsurface mineral estate from the management actions contained in the UFO DRMP/EIS.

A.  In summary, San Miguel County does not support the Gunnison Sage-grouse ACEC as proposed in Alternative B of this UFO DRMP/EIS.  The proposed alternatives with regards to Gunnison Sage-grouse and this ACEC are neither adequate, accurate, nor informed by the most recent federal actions and data available.  The UFO DRMP/FEIS also predates the new alternative B analysis within the GuSG DRMPa/DEIS which analyzes an ACEC for all GUSG Occupied and Unoccupied Habitat.  Please see Section 6, Gunnison Sage-grouse.


**6. Gunnison Sage-grouse.**

These designations prompted a process for the BLM to prepare a draft Gunnison Rangewide Plan Amendment that would potentially result in multiple resource plan amendments (GuSG DRMPa) and a companion draft environmental impact statement (GuSG DEIS) which more closely analyzes planning issues, including energy and minerals actions, in order "to analyze the addition of GuSG conservation measures to several existing RMPs", including the BLM UFO DRMP/EIS.  The deadline for comments on the GuSG DRMPa is after the deadline to comment on this UFO DRMP/EIS.  The GuSG DRMPa documents were released as drafts in August 2016.

In the GuSG DRMPa, the BLM states, "The BLM manages approximately 40 percent of GUSG habitat across twelve counties in southwestern Colorado and southeastern Utah...The inadequacy of regulatory mechanisms in land use plans was identified as a major threat in the FWS listing decision." [36]

We realize that since much of the UFO DRMP/EIS work occurred between 2010 and 2013, that the latest work done by the USFWS and BLM for the GuSG DRMPa was not incorporated into this UFO DRMP/EIS.  The San Miguel Gunnison Sage Grouse ACEC analysis was not informed by the latest information, nor the oil and gas stipulations, travel management and several other sections of this UFO DRMP/EIS.

Thus, if the UFO DRMP/EIS moves forward, it should have its Record of Decision signed prior to the BLM RMPa ROD so that the BLM RMPa will amend the relevant portions of this RMP to adequately protect Gunnison Sage-grouse and incorporate the latest science and best management practices.   All leases within the UFO should be deferred until the ROD is signed for the GuSG RMPa so that no lease is allowed a 20-year period with out-of-date stipulations and practices.   While the GuSG DRMPa goes much further than this UFO DRMP/EIS for incorporating protections, conservation measures, and habitat enhancement

---

[36] Page I; https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf

BLM_0166958

and connectivity measures, it still needs additional work, which San Miguel County will comment on separately under that comment process.  The GuSG DRMPa does contemplate that removal of subsurface public lands from Occupied Habitat management actions is inappropriate, which is differently than how these lands are treated in the UFO DRMP/EIS.

It would be remiss to issue leases under any circumstances within the UFO until there is a final decision on the Gunnison Sage-grouse amendments.

The Purpose section of the GuSG DRMPa states, *"This RMP amendment provides a framework for conserving and assisting with the recovery of the GuSG and for conserving and restoring habitat upon which the species depends on BLM-administered public lands across the range of the bird."*  The Need section of this document states, *"The BLM conducted land use plan evaluations in accordance with its planning regulations, which require that RMPs 'shall be revised as necessary based on …, new data, new or revised policy…(43 CFR 1610.5-6).'"* [37]

San Miguel County believes that the listing of the GuSG and designation of critical habitat is a new circumstance that requires modification of the UFO DRMP/EIS, but to be consistent where the San Miguel Basin population has key areas such as Miramonte Reservoir area that are split among the UFO and Tres Rios Field Office (TRFO) there needs to be a consistent set of management guidelines and stipulations across the entire San Miguel Basin population.  There may be different lek buffers and needs between the different subpopulations, such as the Gunnison Basin and the San Miguel Basin populations. Seasonal habitat has not been delineated within the San Miguel Basin population the way it has in the Gunnison population.  The fact that the BLM is conducting the GuSG DRMPa/DEIS process and recommending a preferred alternative that would amend the TRFO RMP seems to point to that need. San Miguel County also does not agree that the range of alternatives analyzed in the 2013 TRFO RMP/FEIS nor this UFO DRMP/EIS is appropriate with respect to the needs of GuSG.

The range of alternatives considered in the GuSG DRMP/DEIS includes having the stipulation of No Surface Occupancy being applied to all BLM lands within 4-miles of a lek.  These documents analyze all BLM lands within occupied, unoccupied or a 4-mile buffer of a lek as the decision area.  Yet, the 2005 Gunnison Sage-grouse Rangewide Conservation Plan [38] and the presence of occupied critical habitat more than 4 miles from leks within the San Miguel Basin show that GuSG is found occupying habitat and using seasonal habitat 6 or more miles away from leks. [39]  For example, the occupied habitat within the Dry Creek Basin area, San Miguel Basin GuSG population, shown on Map 1 that is beyond the 4-mile lek buffer, is between 6- and 6.25-miles from leks.  The BLM should allow for additional review of appropriate protections for Gunnison Sage-Grouse habitat from oil and gas development within at least a 6-mile buffer, preferably a 6.2-mile buffer of leks within the San Miguel Basin.

### Section 7.  Lands Identified For Disposal.

The DRMP/EIS states that in Alternatives B-D, the UFO's objective is to "consider disposal of lands that would consolidate public ownership for greater management efficiency while serving the public interest, including communities and their expanding needs." [40]

---

[37] Page iii; https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf

[38] http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx

[39] Page J-5;
http://cpw.state.co.us/Documents/WildlifeSpecies/SpeciesOfConcern/GunnisonSageGrouse/ConsPlan/AppendixJSGHabitatUse03.pdf

[40] Page 2-319;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_1.Par.31726.File.dat/2_UFO-DRMP-2016_508.pdf

BLM_0166959

The lands identified for disposal were identified on Appendix A, Figure 2-60[41] and legal descriptions were provided in Appendix N.[42] It appears that only the lands recommended for disposal under the agency preferred alternative D are shown in Figure 2-60.

We recommend that it would be very helpful for the reviewing public and agencies if the UFO made more readily available the Land Tenure/Land Disposal GIS files on the UFO RMP GIS web page, and also if the name of the county were provided in Appendix N.  We were able to obtain from UFO GIS staff the land tenure shapefile via email.  While actual reasons for recommending individual parcels for disposal or non-disposal in the four alternatives were not located in the DRMP/EIS, there were some cryptic rationales present within the land tenure shapefile attribute table for a few but not all parcels.

San Miguel County does not desire any parcels to be disposed of that would interfere with existing public roads or trails, existing private driveways or access roads, irrigation ditches or other easements.  Any parcels disposed of should conform with the criteria and standards set forth in the San Miguel County Comprehensive Plan.  Parcels that contain critical habitat for sensitive or listed species or that provide connectivity between other public lands should not be disposed of.  If the BLM doesn't want to manage such parcels, then the adjacent federal or state agency should be given an opportunity for management or ownership.

The metadata from the land tenure shapefile for the 10 parcels analyzed by the DRMP/EIS for disposal within San Miguel County is below:

| SMC Parcel Ref # | RMP | gis_ac res | alt_A | alt_B | alt_C | alt_D | alt_B_c ode | alt_C_c ode | alt_D_c ode | Comment_ |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | San Juan / San Miguel Planning Area RMP 1985 | 35 | Yes | No | Yes | No | | DISPOS AL | | Riparian |
| 2 | San Juan / San Miguel Planning Area RMP 1985 | 35 | Yes | No | Yes | No | | DISPOS AL | | Riparian |
| 3 | San Juan / San Miguel Planning Area RMP 1985 | 214 | Yes | No | Yes | No | | DISPOS AL | | Range, Veg, Riparian |
| 4 | San Juan / San Miguel Planning Area RMP 1985 | 88 | Yes | No | Yes | No | | DISPOS AL | | Range, Veg, Riparian, Recreation |
| 5 | San Juan / San Miguel Planning Area RMP 1985 | 82 | Yes | No | Yes | No | | DISPOS AL | | Range, Veg, Riparian, Recreation |
| 6 | San Juan / San Miguel Planning Area RMP 1985 | 38 | Yes | Yes | Yes | Yes | DISPOS AL | DISPOS AL | DISPOS AL | |
| 7 | San Juan / San Miguel Planning Area RMP 1985 | 40 | Yes | Yes | Yes | No | DISPOS AL | DISPOS AL | | |
| 8 | San Juan / San Miguel Planning Area RMP 1985 | 41 | Yes | Yes | Yes | Yes | DISPOS AL | DISPOS AL | DISPOS AL | |
| 9 | San Juan / San Miguel Planning Area RMP 1985 | 133 | Yes | No | Yes | No | | DISPOS AL | | salinity/selenium, GuSG |
| 10 | 2011 RMP | 40 | No | Yes | No | Yes | DISPOS AL | | DISPOS AL | |

Table 7.1 -- the land tenure GIS shapefile attribute table for parcels within San Miguel County.

### a. Fall Creek Area Parcels.

We attempted to map the legal descriptions of the parcels (SMC Parcel Reference #s 1 & 2 in the table above) within San Miguel County and found that these two of the parcels (in T42N R11W Section 2) were

---

[41]http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_appendix.Par.78374.File.dat /App%20A%20Combined.pdf

[42]http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_appendix0.Par.77552.File.d at/N_Disposal_UFO-DRMP-2016_508.pdf

BLM_0166960

just east of Little Cone, adjacent to Fall Creek Road, County Road 57 P (see pink outlines below).  It appears these two parcels were currently listed for disposal by the existing RMP (Alternative A), and are not recommended for disposal in Alternatives B or D.  They are located within the Fall Creek riparian corridor.  San Miguel County agrees with the Alternative D (no disposal) for these parcels.



Figure 7a.  Fall Creek area parcels in T42N R11W Section 2, not recommended by SMC or agency preferred Alternative D for disposal.

### b. Beaver Creek and Saltado Creek Area Parcels.

We could not quite get the legal descriptions rectified for the parcels in Saltado Creek between Appendix N and the GIS land tenure file provided.  However, the parcel within the Saltado Creek area intersects the Saltado Creek WSR segment, the existing ACEC and the SRMA.  It also is adjacent to critical occupied Gunnison Sage-grouse habitat.  It is within 1 to 2 miles of 3 active leks.  It should not be disposed of.

The Beaver Creek parcel in T43N R12W Sections 9 & 10 is within the Beaver Creek WSR segment, existing ACEC and SRMA.  It also is adjacent to critical occupied Gunnison Sage-grouse habitat.  It is within 0.3 to 0.75 mile of 3 active leks.  It should not be disposed of.

BLM_0166961

Both of these areas appear also to be within the San Miguel River Expansion ACEC (which San Miguel County recommends be designated.  The DRMP/EIS states that in Alternatives B-D, the UFO's objective is to "retain lands in public ownership when it will serve the public interest, protect valuable resources, or achieve management goals."[43]  Alternative B and Alternative D state that the UFO action will be to retain lands that are within ACECs or SRMAs.[44] Lands immediately adjacent to critical Gunnison Sage-grouse habitat should not be disposed of.  The 2005 Gunnison Sage-grouse Rangewide Conservation Plan[45] and the presence of occupied critical habitat more than 6 to 6.25 miles from leks within the San Miguel Basin subpopulation show that GuSG is found occupying habitat and using seasonal habitat 6 or more miles away from leks.[46]

---

[43]Page 2-321;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_1.Par.31726.File.dat/2_UFO-DRMP-2016_508.pdf
[44]Page 2-322;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_1.Par.31726.File.dat/2_UFO-DRMP-2016_508.pdf
[45]http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx
[46]Page J-5;
http://cpw.state.co.us/Documents/WildlifeSpecies/SpeciesOfConcern/GunnisonSageGrouse/ConsPlan/AppendixJSGHabitatUse03.pdf

BLM_0166962



Figure 7b. Showing the Beaver Creek (left) and Saltado Creek (right) area disposal parcels in T43N R12W Sections 9 & 10; not recommended by SMC or agency preferred Alternative D for disposal. If sold for private development, there would be impacts to the scenic and primitive qualities of these areas, as well as the important riparian ecosystem and wildlife. Alternatives B and D do not recommend these parcels for disposal. San Miguel County believes it is best for the public and for the protection of valuable river corridors, ORVs, and Gunnison Sage-grouse if these parcels are not disposed of.

### c. Lone Cone & Gurley Reservoir Area Parcels.

The BLM land tenure shapefile identified 3 parcels in the Lone Cone/Gurley Reservoir area that are recommended for disposal under the agency preferred Alternative D (according to the shapefile attribute table). They are shown with the bright blue highlight around the pink parcel boundaries in Figure 7c below:

BLM_0166963



Figure 7c. Lone Cone Reservoir and Gurley Reservoir Area Parcels identified in GIS metadata within the provided land tenure GIS shapefile as being recommended for disposal in the agency preferred Alternative D.

Appendix N only recommends two parcels for disposal in the agency preferred Alternative D. So we are concerned that there is an error in mapping the southernmost parcel on Figure 7c. It appears to be within T43N R13W S12. However, this does not match a legal description in Appendix N. Appendix N, and the land tenure shapefile should be rectified before the final RMP and ROD. The southernmost parcel is entirely surrounded by Gunnison Sage-grouse occupied habitat and is also mapped on top of (or under?) the Lone Cone Reservoir. This parcel is within 0.5 miles of an active lek and 0.7 miles of a second inactive lek. San Miguel County does not support disposal of this parcel.

The parcel directly west of Gurley Reservoir (just south of Red Cone Rd.) is the parcel with the legal description of T44N R13W Section 35. The parcel directly north of Gurley Reservoir in the northern portion of Figure 7c is the parcel with the legal description of T44N R13W Section 35.

BLM_0166964

The northernmost parcel in Section 24 is 1.5 miles north of occupied Gunnison Sage-grouse habitat but is also surrounded by private land.  It is 3.5 miles from the nearest active lek and 2 miles from the nearest inactive lek.  If a parcel were to be disposed of, this would probably be the only parcel that makes sense.  There are some undesignated BLM routes mapped on the fringes of this parcel.

The parcel in Section 35 is within 0.5 miles of an active lek and is adjacent to occupied Gunnison Sage-grouse critical occupied habitat.  There is an undesignated BLM route mapped on this parcel.  <u>San Miguel County does not recommend disposal of this parcel.</u>

### d. Hastings Mesa Area Parcel
One additional isolated BLM parcel was analyzed for disposal is located on Hastings Mesa near Alder Creek in T44N R10W Section 29 adjacent to the Alder Creek Ranches subdivision.  This parcel is entirely surrounded by private land.  It was recommended for disposal in Alternatives A-C.  However, no reason is given why it is not included for disposal in the agency preferred Alternative D.  It is close to the Alder Creek riparian area.  We would like an opportunity to review this parcel further with the UFO to examine it with respect to our Comprehensive plan, public rights of way, easements and other items, and to understand the UFO rationale for not including it for disposal in Alternative D.  San Miguel County desires that if the BLM disposes of parcels it ensures there are either public ROW or private easements already in place prior to disposal, to ensure ingress/egress for future owners.

BLM_0166965



Figure 7c.  Hastings Mesa/Alder Creek Area Parcel within T44N R10W Section 29.  This parcel is not recommended for disposal in the agency preferred Alternative D.

**e. Big Bear Creek Area Parcels**
These parcels are within T42N R10W Section 4.  Under the agency preferred alternative they are not recommended for disposal.  San Miguel County agrees that they should not be disposed of by the BLM. They are within the Big Bear Creek riparian corridor, and the San Miguel River Expansion ACEC desired to be designated by San Miguel County.  <u>The San Miguel SRMA boundary should be expanded to match the San Miguel River Expansion ACEC boundary in this area.</u>

BLM_0166966



Figure 7e. Showing the Big Bear Creek Area parcels. If sold for private development, there would be impacts to the scenic and primitive qualities of these areas, as well as the important riparian ecosystem and wildlife. Alternatives B and D do not recommend these parcels for disposal. <u>San Miguel County believes it is best for the public and for the protection of valuable river corridors and riparian habitat if these parcels are not disposed of. The San Miguel River Expansion ACEC should be designated, and it would include these parcels. The San Miguel River SRMA boundary should be expanded to include all of these parcels and the expansion ACEC.</u>

### Section 8. Wildlife management.

San Miguel County urges the BLM to further consult and consider the Colorado Parks and Wildlife (CPW), formerly Colorado Department of Wildlife (CDOW), detailed list of Best Management Practices (BMPs) for oil and gas development titled "Actions to Minimize Adverse Impacts to Wildlife Resources." with species-specific BMPs, including recommendations on protective buffers, timing information, and recommendations on surface density caps, referenced in their letter to BLM State Director Helen Hankins dated December 13, 2010.

BLM_0166967

We appreciate the statement in the DRMP/EIS on Page I-11 of Volume 1[47] that says "The BLM will consult with Colorado Parks and Wildlife (CPW).  The RMP will recognize the State's responsibility and authority to manage wildlife."  At the UFO RMP co-operator meeting in Montrose on October 15, 2016, we heard CPW staff say that their information was not incorporated into at least one alternative and that the RMP has not included BMPs, timing limitations or stipulations offered by CPW.

San Miguel County supports CPW's desire that at least a "No Surface Occupancy" (NSO) stipulation be applied to all Federal minerals within the boundaries of State Wildlife Areas (SWAs) and State Park boundaries to balance mineral extraction with the protection of surface resources.

San Miguel County has assisted in the protection of thousands of acres of private lands with important wildlife habitat values, including GuSG critical habitat, during the last few decades by participating in the acquisition of conservation easements intended to preserve and protect GuSG habitat.  San Miguel County has contributed between roughly $1.4 and $1.6 million during this period for habitat conservation and improvements through the County's Land Heritage Program, co-funding of the GuSG working group, and other actions to benefit GuSG.

U.S. Fish and Wildlife Service did not include in its final listed critical habitat private lands that were under conservation easement.  However, the BLM states in the GuSG DRMPa on Page ii, in the introductory discussion of occupied habitat for Gunnison Sage-grouse[48] that "Occupied Habitat includes specific properties coinciding with BLM-administered federal minerals that the [US] FWS excluded from critical habitat designation.  While the removal of surface lands with these properties from critical habitat is appropriate, the removal of subsurface public lands from Occupied Habitat is not."  In other words, the BLM in its GuSG DRMPa understands that subsurface mineral estate actions should not be precluded from management actions.  San Miguel County requests that the UFO RMP obtain from San Miguel County our GIS shapefile and database of private land conservation easements, and where split estate managed by the BLM exists, that the BLM implement NSO and other stipulations consistent with the primary conservation easement values on these properties.

San Miguel County supports CPW in their statement in the 2010 letter, "As the surface density of development increases beyond one well pad per section, literature sources strongly suggest that avoidance and minimization measures alone are no longer sufficient to address adverse impacts to some species, and compensatory mitigation is necessary to offset the permanent loss of wildlife resources."  We support the concept that the UFO (and Tres Rios) RMP incorporate ways to obtain compensatory mitigation when surface density exceeds one well pad per section (within habitats identified by CPW).

San Miguel County requests that the UFO examine carefully CPW recommended species-specific stipulations and ensured that the stipulations in the final UFO RMP/ROD meet or exceed the recommended species-specific stipulations.  We also request that standards and guidelines be developed for oil and gas activities in Gunnison Sage-grouse habitat, mule deer winter range, raptor nesting areas, bighorn sheep lambing areas, lynx denning and winter foraging habitat to address impacts from oil and gas operations to the maximum extent possible.  Such standards and guidelines within these habitats should require that operators use the best technically and economically available development technology to meet the intent of guidelines while acting on a right to develop a lease.

---

[47]Page I-11;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_1.Par.7326.File.dat/1_UFO-DRMP-2016_508.pdf
[48]Page ii; https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf

BLM_0166968

San Miguel County requests that the UFO RMP also consider adding winter range to ungulate protection strategies, which we understand has implications across all management activities. CPW has strongly recommended the use of deer and elk winter range as defined in CPW species mapping when applying protection strategies for deer and elk in RMP documents in Colorado[49]. CPW states, "Winter concentration areas and critical winter range are more narrowly defined subsets within the broader winter range category that fail to capture the totality of important wintering areas for ungulates. 'Winter Range' is defined as that part of the overall range where 90% of individuals reside during five winters out of ten. During an 'average' winter, animals residing in 'winter range' are no less sensitive to disturbance than those on severe winter range or winter concentration areas."

San Miguel County requests revisions to the DRMP/EIS and stipulations to acknowledge the increasing body of evidence that Timing Limitation Stipulations on oil and gas development activities are not adequate to protect winter habitats and migratory corridors for big game, and that additional limitations on the density of surface facilities may be necessary to maintain big game populations in developing areas. [50,51,52,53,54]

San Miguel County further requests that a Master Leasing Plan be prepared and implemented as required by BLM IM No. 2010-117.

### Section 9.  Watchable Wildlife Viewing Areas.

Incorporating a watchable wildlife viewing area under the federal Watchable Wildlife Program to foster education and appreciation of wildlife in their habitats would be a positive addition within the UFO. When there are enhanced opportunities for public and educational institutions like local and regional schools to view, enjoy, and learn about wildlife, then there are tangible positive benefits for the local and regional economies and for appreciation of the national treasure that our public lands are. When people know about the needs and impacts of human activities on species, then they are more likely to support resource conservation and the hard choices of altering human activities that lead to climate change.

The San Miguel River is identified as being a very rich terrestrial bird habitat within North America by the BLM, the Audubon Society, and others. [55]  San Miguel County supports the concept of studying the San Miguel River ACEC and San Miguel River Expansion ACEC for creating one or more watchable wildlife viewing areas. We believe this will actually help with future mitigation of threats such as invasive plants, non-native species, feral cats, and other disturbances. The scenic qualities of this area also further enhance the potential high-quality viewing experience.

---

[49]Such as in the CPW San Juan Plan Revision comment letter dated April 11, 2008 titled "San Juan Public Lands Center, Draft Land Management Plan and Draft Environmental Impact Statement, 72 Fed. Reg. 71148 (December 14, 2007)" and addressed to the San Juan Plan Revision, P.O. Box 162909 Sacramento, CA 95816-2909.
[50]http://fwpiis.mt.gov/content/getItem.aspx?id=35572
[51]http://www.wyofile.com/wp-content/uploads/2011/04/Deer.2010annualreport_muledeer.pdf
[52]http://onlinelibrary.wiley.com/doi/10.2193/2008-478/abstract
[53]http://www.blm.gov/style/medialib/blm/wy/information/NEPA/pfodocs/anticline/revdr-comments/eg.Par.10425.File.dat/02Bio-attach1.pdf
[54]https://www.fws.gov/southwest/ES/Documents/Oil-Gas-Fragmentation-Wilbert%20et%20al%202008.pdf
[55]Page 3-171;
http://www.blm.gov/style/medialib/blm/co/field_offices/uncompahgre_field/rmp/rmp_draft_vol_1.Par.96289.File.dat/3_UFO-DRMP-2016_508.pdf

BLM_0166969

We appreciate your consideration of these comments for the Uncompahgre Field Office Draft Resource Management Plan/Environmental Impact Statement.  As we have offered specific requests, we hope the final RMP and ROD will not simply take the recommendations of a single alternative but will create a final hybrid decision that will incorporate our specific requests.

Respectfully,

SAN MIGUEL COUNTY
BOARD OF COUNTY COMMISSIONERS

Joan May, Chair

BLM_0166970

ATTACHMENT A:  RESOLUTION 2015-009
ATTACHMENT B: COMPARISON TABLES

BLM_0166971

**RESOLUTION OF THE BOARD OF COUNTY COMMISSIONERS OF
SAN MIGUEL COUNTY, COLORADO,
PUBLICLY STATING THE VALUE OF PUBLIC LANDS TO THE COUNTY'S ECONOMY,
RECREATION, HERITAGE, AND QUALITY OF LIFE; AND OPPOSING ANY EFFORT TO
CLAIM, TAKE OVER, LITIGATE FOR, OR SELL OFF FEDERAL PUBLIC LANDS WITHIN
SAN MIGUEL COUNTY, COLORADO**

**Resolution #2015 - 9**

**WHEREAS,** San Miguel County includes many beautiful, natural landscapes, including mountains, rivers, forests, lakes, basins and plateaus; and

**WHEREAS,** many of those stunning places are public lands owned by all Americans; and

**WHEREAS,** public land under the management of the U.S. Forest Service and U.S. Bureau of Land Management constitutes more than 60% of the land in San Miguel County; and

**WHEREAS,** these federal public lands are essential to the quality of life in San Miguel County, providing public recreational opportunity for wildlife watching, hiking, hunting, fishing, backpacking, horseback riding, skiing, bicycling, sightseeing, and numerous other outdoor recreational activities; and

**WHEREAS,** these federal public lands provide essential habitat for wildlife; and

**WHEREAS,** wildlife and the scenic landscape on public lands attract outdoor recreation and tourism that are the dominant drivers of San Miguel County's economy; and

**WHEREAS,** the unified, consistent management of Federal land by the Federal Land Agencies across the nation best protects the national value and utility of the public lands for all Americans and the values on which the economy in San Miguel County is dependent; and

**WHEREAS,** San Miguel County business owners attract employees in large part because of the iconic landscape and recreational opportunities on federal public lands; and

**WHEREAS,** San Miguel County's agriculture industry includes numerous ranchers and sheepherders who depend on grazing on federal public land; and

**WHEREAS,** there is a broad consensus in San Miguel County of the need for effective management of our federal public lands and wildlife, and that collaborative approaches in which federal public land management agencies cooperate with Colorado Parks and Wildlife, San Miguel County officials, and our community are more likely to produce effective management than would ownership or management of federal public lands by the state of Colorado; and

**WHEREAS,** San Miguel County residents are actively collaborating among diverse interests and with public land managers to improve public land management and public access; and

**WHEREAS,** federal public land management agencies employ residents of San Miguel County who are passionate and expert at their jobs, despite lack of adequate federal funding, pay taxes, and contribute to our community; and

**WHEREAS,** Americans from throughout the country value these public lands as a part of our national

BLM_0166972

heritage and as our inalienable birthright as Americans; and

**WHEREAS,** San Miguel County's forests are naturally prone to fire, including periodic large-scale fires, as part of the ecosystem in which they have evolved over millennia, although a warming climate has accentuated the process; and

**WHEREAS,** federal money and expertise to suppress wildfires is essential to protecting our communities, infrastructure, and public lands.

**NOW, THEREFORE, BE IT RESOLVED** by the Board of Commissioners of San Miguel County, Colorado, as follows:

That the Board of County Commissioners opposes any effort to claim, take over, litigate for, or sell off federal public lands within San Miguel County except pursuant to legislative processes established by Congress in the Recreation and Public Purposes Act, National Environmental Policy Act, Federal Land Policy and Management Act, and other applicable federal laws, following public participation and site-based analysis of the wildlife, ecological and community implications of the proposed land transfer.

**NOW, THEREFORE, BE IT RESOLVED** by the Board of Commissioners of San Miguel County, Colorado, as follows:

1. The Board of County Commissioners strongly supports federal land management in San Miguel County and the irreplaceable value public lands bring to our county's economy, recreation, heritage, and quality of life.

2. The Board of County Commissioners enthusiastically commends the dedicated federal employees who manage America's public lands in San Miguel County, and the dedicated employees of Colorado Parks and Wildlife who manage wildlife in San Miguel County, in partnership with the federal public land managers.

**DONE AND APPROVED** by the Board of Commissioners of San Miguel County, Colorado, at a duly noticed public meeting held in Telluride, Colorado, on March 25, 2014.

**BOARD OF COUNTY COMMISSIONERS**
**SAN MIGUEL COUNTY, COLROADO**

Joan May, Chair

ATTEST:

John Huebner, Chief Deputy Clerk to the Board

VOTE:

| | | | | |
|---|---|---|---|---|
| Joan May | Aye | Nay | Abstain | Absent |
| Elaine R.C. Fischer | Aye | Nay | Abstain | Absent |
| Art Goodtimes | Aye | Nay | Abstain | Absent |

2

Column groups:
- San Miguel Enhanced Ecological Areas (EEAs) [overlaps some of existing San Miguel River ACEC and some of...]: Alt B, Alt D
- WSR San Miguel River Segment 1 Stipulations: Alt A, Alt B, Alt C, Alt D
- San Miguel SMRA Stipulations San Miguel River Segment (Zone 1) (includes BLM lands within existing San...): Alt B, Alt D
- San Miguel EXISTING ACEC Stipulations: Alt A, Alt C, Alt D
- San Miguel EXPANSION (big) ACEC Stipulations: Alt B
- San Miguel EXPANSION (river parts) ACEC Stipulation: Alt B
- San Miguel EXPANSION (3 sliver parts) ACEC Stipulation: Alt B
- Fluid Minerals: Alt A, Alt B, Alt C, Alt D

| BLM CODES | EEA Alt B | EEA Alt D | WSR Alt A | WSR Alt B | WSR Alt C | WSR Alt D | SMRA Alt B | SMRA Alt D | EXIST ACEC Alt A | EXIST ACEC Alt C | EXIST ACEC Alt D | EXP big Alt B | EXP river Alt B | EXP 3sliver Alt B | Fluid Alt A | Fluid Alt B | Fluid Alt C | Fluid Alt D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | 7 | | | | | | 7 | 7 | 14 | | 7 | 7 | 7 | 7 | | | | |
| AVOID | | AVOID | AVOID | AVOID | AVOID | | AVOID | | | | | | | | | | | |
| BSC | | | | | | | | | | | | | | | | | | |
| CAMPFIRE | | | | | | | | | | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | | | | |
| CAMPSITE | | | | | | | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | | | | |
| COAL | | | | | | COAL | COAL | COAL | | | COAL | COAL | COAL | COAL | | | | |
| COMPETE1 | | | | | | | | | | | | | | | | | | |
| COMPETE2 | | | | | | | COMPETE2 | | | | | | | | | | | |
| COMPETE3 | | | | | | | | COMPETE3 | | | | | | | | | | |
| CSU | | CSU | CSU | CSU | CSU | CSU | | | | CSU | | | | | CSU | | CSU | |
| CWOD | | | | | | | | | | | CWOD | CWOD | CWOD | CWOD | | | | |
| DAY | | | | | | | | | | | | | | | | | | |
| DES | | | | | | | DES | DES | DES | DES | DES | DES | DES | DES | | | | |
| DR_TIMING | DR_TIMING | | | | | | | | | | | | | | | | | |
| EXCL | | | | | | | | | EXCL | | | EXCL | | | | | | |
| FAC | | | | | | | | | | | | | | | | | | |
| FORAGE | | | | | | | | | | FORAGE | | | | | | | | |
| HYDROA | | HYDROA | | | | | | | | HYDROA | | | | | | | | |
| HYDROE | HYDROE | | HYDROE* | HYDROE* | HYDROE* | HYDROE* | | | | | HYDROE | HYDROE | HYDROE | HYDROE | | | | |
| LOCATE | | | | | | | LOCATE | | | | LOCATE | LOCATE | LOCATE | LOCATE | | | | |
| MM | | | | | | | | | | | | | | | | | | |
| MOT | | | | | | | | | | | | | | | | | | |
| NGD | | | | | | | | | | | | | | | | | | |
| NL | | | | | | | NL | | | | | NL | NL | NL | NL | | | |
| NSO | NSO | ** | | | | ** | | NSO | | | NSO | | | | | | | NSO |
| OPEN | | | | | | | | | | | | | | | | | | |
| RANGE | | | | | | | | | | | | RANGE | RANGE | RANGE | | | | |
| RECMINE | | | | | | | | | | | | RECMINE | RECMINE | RECMINE | | | | |
| RIVER | | | | | | | | | | | | | | | | | | |
| ROCK | | | | | | | | | | | | | | | | | | |
| SALABLE | | | | | | SALABLE | SALABLE | | SALABLE | | SALABLE | SALABLE | SALABLE | SALABLE | | | | |
| SEED | | | | | | | | | | | SEED | SEED | SEED | SEED | | | | |
| SHEEP | | | | | | | | | | | | | | | | | | |
| SOLARA | | SOLARA | | | | | | | | SOLARA | | | | | | | | |
| SOLARE | SOLARE | | SOLARE* | SOLARE* | SOLARE* | SOLARE* | | | | | SOLARE | SOLARE | SOLARE | SOLARE | | | | |
| SOLID | | | | | | SOLID | SOLID | SOLID | | | SOLID | SOLID | SOLID | SOLID | | | | |
| SRPs | | | | | | | | | | | | | | | | | | |
| SSR | SSR | SSR | SSR | SSR | SSR | SSR | | | | | | SSR | SSR | SSR | | | | |
| TAR | | | | | | | TAR | TAR | | | TAR | TAR | TAR | TAR | | | | |
| TL | | | | | | | | | | | | | | | | | | |
| V-1 | | | | | | | | | | | | | | | | | | |
| V-2 | | | | | | V-2 | | | V-2 | | | | | | | | | |
| V-3 | | | V-3 | V-3 | V-3 | | V-3 | V-3 | | V-3 | V-3 | V-3 | V-3 | V-3 | | | | |
| V-4 | | | | | | | | | | | | | | | | | | |
| WINDA | | WINDA | | | | | | | | WINDA | | | | | | | | |
| WINDE | WINDE | | WINDE* | WINDE* | WINDE* | WINDE* | | | | | WINDE | WINDE | WINDE | WINDE | | | | |
| WOOD | WOOD | | | | | | WOOD | WOOD | WOOD | | WOOD | WOOD | WOOD | WOOD | | | | |

Fluid Minerals group: Alt A, Alt B, Alt C, Alt D

* occurs for BLM surface but not private/USFS surface
** mapped as NSO in fluid minerals Alt D shapefile

BLM_0166974

| BLM CODES | WSR Beaver Creek Stipulations [BLM surface portion overlaps existing San Miguel River ACEC] | | San Miguel SMRA Stipulations Beaver Creek River Segment (Zone 2) (includes BLM lands within...) | | San Miguel Enhanced Ecological Areas (EEAs) [overlaps some of existing San Miguel River ACEC and some of...] | | San Miguel SMRA Stipulations San Miguel River Segment (Zone 1) (includes BLM lands within existingSan...) | | San Miguel EXISTING ACEC Stipulations | | | ...NSION(big) A... | San Miguel EXPANSION (river parts) ACEC Stipulation | San Miguel EXPANSION (3 sliver parts) ACEC Stipulation | Fluid Minerals | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Alt B | Alt D | Alt B | Alt D | Alt B | Alt D | Alt B | Alt D | Alt A | Alt C | Alt D | Alt B | Alt B | Alt B | Alt A | Alt B | Alt C | Alt D |
| 7 | | | 7 | 7 | | | 7 | 7 | 14 | | 7 | 7 | 7 | 7 | | | | |
| AVOID | AVOID | | AVOID | AVOID | | AVOID | AVOID | | | | | | | | | | | |
| BSC | | | | | | | | | | | | | | | | | | |
| CAMPFIRE | | | | | | | | | | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | | | | |
| CAMPSITE | | | CAMPSITE | CAMPSITE | | | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | | | | |
| COAL | | COAL | COAL | COAL | | | COAL | COAL | | | COAL | COAL | COAL | COAL | | | | |
| COMPETE1 | | | | | | | | | | | | | | | | | | |
| COMPETE2 | | | COMPETE2 | COMPETE2 | | | COMPETE2 | | | | | | | | | | | |
| COMPETE3 | | | | | | | | COMPETE3 | | | | | | | | | | |
| CSU | CSU | CSU | | | | CSU | | | | CSU | | | | | CSU | | CSU | |
| CWOD | | | | | | | | | | CWOD | | CWOD | CWOD | CWOD | | | | |
| DAY | | | | | | | | | | | | | | | | | | |
| DES | | DES | | | | | DES | DES | DES | DES | DES | DES | DES | DES | | | | |
| DR_TIMING | | | | | DR_TIMING | | | | | | | | | | | | | |
| EXCL | | | | | | | | | EXCL | | | EXCL | | | | | | |
| FAC | | | | | | | | | | | | | | | | | | |
| FORAGE | | | | | | | | | | FORAGE | | | | | | | | |
| HYDROA | | | | | | HYDROA | | | | HYDROA | | | | | | | | |
| HYDROE | | HYDROE* | | | HYDROE | | | | | | HYDROE | HYDROE | HYDROE | HYDROE | | | | |
| LOCATE | | | LOCATE | | | | LOCATE | | | | LOCATE | LOCATE | LOCATE | LOCATE | | | | |
| MM | | | MM | | | | | | | | | | | | | | | |
| MOT | | | | | | | | | | | | | | | | | | |
| NGD | | | | | | | | | | | | | | | | | | |
| NL | | | NL | | | | NL | | | | | NL | NL | NL | | NL | | |
| NSO | | ** | | NSO | NSO | | | NSO | | | NSO | | | | | | | NSO |
| OPEN | | | | | | | | | | | | | | | | | | |
| RANGE | | | | | | | | | | | | RANGE | RANGE | RANGE | | | | |
| RECMINE | | | | | | | | | | | RECMINE | RECMINE | RECMINE | RECMINE | | | | |
| RIVER | | | | | | | | | | | | | | | | | | |
| ROCK | | | | | | | | | | | | | | | | | | |
| SALABLE | | SALABLE | SALABLE | SALABLE | | | SALABLE | | SALABLE | | SALABLE | SALABLE | SALABLE | SALABLE | | | | |
| SEED | | | | | | | | | | | SEED | SEED | SEED | SEED | | | | |
| SHEEP | | | | | | | | | | | | | | | | | | |
| SOLARA | | | | | | SOLARA | | | | SOLARA | | | | | | | | |
| SOLARE | | SOLARE* | | | SOLARE | | | | | | SOLARE | SOLARE | SOLARE | SOLARE | | | | |
| SOLID | | | SOLID | | | | SOLID | SOLID | | | SOLID | SOLID | SOLID | SOLID | | | | |
| SRPs | | | | | | | | | | | | | | | | | | |
| SSR | SSR | SSR | | | SSR | SSR | | | | | | SSR | SSR | SSR | | | | |
| TAR | | | TAR | TAR | | | TAR | TAR | | | TAR | TAR | TAR | TAR | | | | |
| TL | | | | | | | | | | | | | | | | | | |
| V-2 | V-2 | *** | V-2 | | | | | | V-2 | | | | | | | | | |
| V-3 | | | | V-3 | | | V-3 | V-3 | | V-3 | V-3 | V-3 | V-3 | V-3 | | | | |
| V-4 | | | | | | | | | | | | | | | | | | |
| WINDA | | | | | | WINDA | | | | WINDA | | | | | | | | |
| WINDE | | WINDE* | | | WINDE | | | | | | WINDE | WINDE | WINDE | WINDE | | | | |
| WOOD | | | WOOD | WOOD | WOOD | | WOOD | WOOD | WOOD | | WOOD | WOOD | WOOD | WOOD | | | | |

* occurs for BLM surface but not private/USFS surface

** mapped as NSO in fluid minerals Alt D shapefile

| BLM CODES | WSR Saltado Creek Stipulations [BLM surface portion overlaps existing San Miguel River ACEC] Alt A | Alt B | Alt C | Alt D | San Miguel SMRA Stipulations Saltado Creek River Segment (Zone 2) (includes BLM lands within existing San Miguel ACEC and Expansion of...) Alt A | Alt B | San Miguel Enhanced Ecological Areas (EEAs) [overlaps some of existing San Miguel River ACEC and some of WSR but not all] Alt B | Alt D | San Miguel EXISTING ACEC Stipulations Alt A | Alt C | Alt D | ...NSION(big) A... Alt B | San Miguel EXPANSION (river parts) ACEC Stipulation Alt B | San Miguel EXPANSION (3 sliver parts) ACEC Stipulation Alt B | Fluid Minerals Alt A | Alt B | Alt C | Alt D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | | | | | 7 | 7 | | | 14 | | 7 | 7 | 7 | 7 | | | | |
| AVOID | | | | | AVOID | AVOID | | AVOID | | | | | | | | | | |
| BSC | | | | | | | | | | | | | | | | | | |
| CAMPFIRE | | | | | | | | | | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | CAMPFIRE | | | | |
| CAMPSITE | | | | | CAMPSITE | CAMPSITE | | | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | CAMPSITE | | | | |
| COAL | COAL | COAL | COAL | COAL | COAL | COAL | | | | | COAL | COAL | COAL | COAL | | | | |
| COMPETE1 | | | | | | | | | | | | | | | | | | |
| COMPETE2 | | | | | COMPETE2 | COMPETE2 | | | | | | | | | | | | |
| COMPETE3 | | | | | | | | | | | | | | | | | | |
| CSU | | | | | | | | CSU | | CSU | | | | | CSU | | CSU | |
| CWOD | | | | | | | | | | | CWOD | CWOD | CWOD | CWOD | | | | |
| DAY | | | | | | | | | | | | | | | | | | |
| DES | | | | | | | | | DES | DES | DES | DES | DES | DES | | | | |
| DR_TIMING | | | | | | | DR_TIMING | | | | | | | | | | | |
| EXCL | EXCEL | EXCEL | EXCEL | EXCEL | | | | | EXCL | | | EXCL | | | | | | |
| FAC | | | | | | | | | | | | | | | | | | |
| FORAGE | | | | | | | | | | FORAGE | | | | | | | | |
| HYDROA | | | | | | | | HYDROA | | HYDROA | | | | | | | | |
| HYDROE | HYDROE* | HYDROE* | HYDROE* | HYDROE* | | | HYDROE | | | | HYDROE | HYDROE | HYDROE | HYDROE | | | | |
| LOCATE | LOCATE | LOCATE | LOCATE | LOCATE* | LOCATE | | | | | | LOCATE | LOCATE | LOCATE | LOCATE | | | | |
| MM | | | | | MM | MM | | | | | | | | | | | | |
| MOT | | | | | | | | | | | | | | | | | | |
| NGD | NGD | NGD | NGD | | | | | | | | | | | | | | | |
| NL | | | | | NL | | | | | | | NL | NL | NL | | NL | | |
| NSO | NSO | NSO | NSO | NSO | | NSO | NSO | | | | NSO | | | | | | | NSO |
| OPEN | | | | | | | | | | | | | | | | | | |
| RANGE | | | | | | | | | | | | RANGE | RANGE | RANGE | | | | |
| RECMINE | | | | | | | | | | | | RECMINE | RECMINE | RECMINE | | | | |
| RIVER | | | | | | | | | | | | | | | | | | |
| ROCK | | | | | | | | | | | | | | | | | | |
| SALABLE | SALABLE | SALABLE | SALABLE | SALABLE | SALABLE | SALABLE | | | SALABLE | | SALABLE | SALABLE | SALABLE | SALABLE | | | | |
| SEED | | | | | | | | | | | SEED | SEED | SEED | SEED | | | | |
| SHEEP | | | | | | | | | | | | | | | | | | |
| SOLARA | | | | | | | | SOLARA | | SOLARA | | | | | | | | |
| SOLARE | SOLARE* | SOLARE* | SOLARE* | SOLARE* | | | SOLARE | | | | SOLARE | SOLARE | SOLARE | SOLARE | | | | |
| SOLID | SOLID | SOLID | SOLID | SOLID | SOLID | SOLID | | | | | SOLID | SOLID | SOLID | SOLID | | | | |
| SRPs | | | | | | | | | | | | | | | | | | |
| SSR | | | SSR | | | | SSR | SSR | | | | SSR | SSR | SSR | | | | |
| TAR | | | | | TAR | TAR | | | | | TAR | TAR | TAR | TAR | | | | |
| TL | | | | | | | | | | | | | | | | | | |
| V-1 | V-1 | V-1 | V-1 | | | | | | | | | | | | | | | |
| V-2 | | | | V-2 | V-2 | | | | V-2 | | | | | | | | | |
| V-3 | | | V-3 | | | | | | | V-3 | V-3 | V-3 | V-3 | V-3 | | | | |
| V-4 | | | | | | | | | | | | | | | | | | |
| WINDA | | | | | | | | WINDA | | WINDA | | | | | | | | |
| WINDE | WINDE* | WINDE* | WINDE* | WINDE* | | | WINDE | | | | WINDE | WINDE | WINDE | WINDE | | | | |
| WOOD | | | | | WOOD | WOOD | WOOD | | WOOD | | WOOD | WOOD | WOOD | WOOD | | | | |

* occurs for BLM surf* occurs for BLM surface but not private surface

** mapped as NSO In fluid minerals Alt D shapefile

BLM_0166976

# SAN MIGUEL COUNTY
## BOARD OF COMMISSIONERS

### ART GOODTIMES          AMY LEVEK          JOAN MAY

January 9, 2017

**VIA EMAIL:  gusg_amend@blm.gov**

Gunnison Sage-grouse EIS
Colorado State Office
BLM
2850 Youngfield St.
Lakewood, CO 80215

**Re: Comments by the San Miguel County, Colorado Board of County Commissioners regarding the Gunnison Sage-Grouse Rangewide Draft Resource Management Amendment/Draft EIS ("GuSG DRMPa"); 81 Fed. Reg. 53503 (August 12, 2016)**

Dear Responsible Officials,

The Board of County Commissioners (hereafter, "BOCC") of San Miguel County, Colorado (hereafter, "SMC") appreciates the opportunity to provide comments on the Gunnison Sage-Grouse Rangewide Draft Resource Management Plan Amendment/Draft EIS ("GuSG DRMPa")[1], which is an important document that could amend 11 existing Resource Management Plans that guide management of lands and minerals by the Bureau of Land Management (BLM) within 10 Colorado counties and 2 Utah counties.

This comment document will utilize the common abbreviations and acronyms contained in the GuSG DRMPa[2] unless otherwise stated in this document.  We have attached this portion of the GuSG DRMPa to this document as Attachment A.

San Miguel County has the responsibility of ensuring health, safety, and welfare, including environmental health within the County.  Watershed health, soil health, and protection of wildlife habitat are very important to San Miguel County.  SMC BOCC has collaborated, cooperated, and coordinated with federal land agencies on federal land planning and projects.  Sixty percent of the land in San Miguel County is federal public land, with another 4% being owned by the State of Colorado.  Only 36% of San Miguel County consists of private land.  70.6 % of San Miguel County is a federal mineral estate.  Public lands administered by the Bureau of Land Management (BLM) in San Miguel County are administered by two different field offices:  Tres Rios Field Office (TRFO) and Uncompahgre Field Office (UFO).

---

[1]https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf
[2]https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf ; pages 31-33

1

In November 2014, the U.S. Fish and Wildlife Service (FWS) published in the Federal Register[3], the final rule of the listing of the Gunnison Sage-grouse (GuSG) as a Threatened species. This final listing rule states that of the 7 Gunnison Sage-grouse populations, the San Miguel Basin and Pinon Mesa are the largest, with approximately 206 birds and 182 birds respectively, counted in 2014. It also states, "The Population estimates from 1996 to 2014 are less than 50 percent of the population target of 450 Gunnison sage-grouse (based on a 10-year average) for the San Miguel Basin, as set forth by the RCP (CPW 2013a, p. 12; GSRSC 2005, p. 296)." Six subpopulations within the San Miguel Basin are described along with their general habitat conditions.

Federal Register / Vol. 79, No. 224 / Thursday, November 20, 2014 / Rules and Regulations      69195

TABLE 1—PERCENT SURFACE OWNERSHIP OF GUNNISON SAGE-GROUSE OCCUPIED [a] HABITAT

[GSRSC [b] 2005, pp. D–3–D–6; CDOW [c] 2009a, p. 1; CPW 2013e, spatial data]

| Population | Hectares | Acres | Gunnison sage-grouse occupied habitat management and ownership | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | BLM [d] | NPS [e] | USFS [f] | CPW | CO SLB [g] | State of UT | Private |
| | | | % | % | % | % | % | % | % |
| Gunnison Basin | 239,641 | 592,168 | 51 | 2 | 14 | 2 | <1 | 0 | [i]30 |
| San Miguel Basin | 41,177 | 101,750 | 9 35 | 0 | 1 | 11 | 9 3 | 0 | h 49 |
| Monticello-Dove Creek (Combined) | 45,544 | 112,543 | 7 | 0 | 0 | 3 | 0 | <1 | 90 |
| Dove Creek | 16,949 | 41,881 | 13 | 0 | 0 | 6 | 0 | 0 | 82 |
| Monticello | 28,595 | 70,661 | 5 | 0 | 0 | 0 | 0 | 1 | 94 |
| Pinon Mesa | 18,080 | 44,678 | 28 | 0 | 2 | 0 | 0 | 0 | 70 |
| Cerro Summit-Cimarron-Sims Mesa | 15,039 | 37,161 | 13 | <1 | 0 | 11 | 0 | 0 | 76 |
| Crawford | 14,170 | 35,015 | 63 | 12 | 0 | 0 | 0 | 0 | 24 |
| Poncha Pass | 11,229 | 27,747 | 48 | 0 | 20 | 0 | 4 | 0 | 28 |
| Rangewide | 384,880 | 951,061 | 42 | 2 | 10 | 3 | <1 | <1 | 43 |

[a] Occupied Gunnison sage-grouse habitat is defined as areas of suitable habitat known to be used by Gunnison sage-grouse within the last 10 years from the date of mapping, and areas of suitable habitat contiguous with areas of known use, which have no barriers to grouse movement from known use areas (GSRSC 2005, p. 54; CPW 2013e, spatial data).
[b] Gunnison Sage-grouse Rangewide Steering Committee.
[c] Colorado Parks and Wildlife.
[d] Bureau of Land Management.
[e] National Park Service.
[f] United States Forest Service.
[g] State Land Board.
[h] Estimates reported in San Miguel Basin Gunnison Sage-grouse Conservation Plan (San Miguel Basin Gunnison Sage-grouse Working Group (SMBGSWG) 2009, p. 28) vary by 2 percent in these categories from those reported here. We consider these differences insignificant.
[i] Includes approximately 12,000 ac of land on Pinecrest Ranch, west of Gunnison, Colorado. This is restricted fee status land held in private ownership by the Ute Mountain Ute Tribe.

Figure 1: USFWS listing rule table, above, published in the Federal Register[4], showing that 35% of the San Miguel Basin population occupied habitat is within surface estate managed by the BLM, 1% by the USFS, 11% by Colorado Parks and Wildlife (CPW), 3% by Colorado State Land Board (SLB) and 49% is private surface estate. Color added.

In comparison, the GuSG DRMPa states that the 2015 San Miguel Basin population was estimated at 289 birds. [5]

Approximately 92% of all of the occupied habitat for the San Miguel Basin population is within San Miguel County, along with all of the San Miguel Basin population leks. San Miguel County contains

[3] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GUSGFinalListingRule_11202014.pdf
[4] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GUSGFinalListingRule_11202014.pdf
[5] https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf ; page 3-29

BLM_0166978

approximately 1,250 acres of occupied habitat and 51,400 acres of unoccupied habitat for the Monticello-Dove Creek population and 94,000 acres of occupied habitat and 22,000 acres of unoccupied habitat for the San Miguel Basin population.

San Miguel County Land Heritage Program has helped procure conservation easements on over 12,000 acres of private land in San Miguel County, as referenced within the Gunnison Sage-grouse Permanent Conservation Easements on Private Lands report, attached to this document as Attachment B (pages 21-26). Over 6,900 of these conserved acres are in occupied GuSG habitat, which is approximately 25% of the GuSG occupied habitat occurring on private land within the San Miguel Basin. Nearly 1,500 acres of these conservation easements are on unoccupied habitat, which is approximately 7% of the private land having unoccupied habitat within the San Miguel Basin.

The BLM manages approximately 68 acres of occupied and 24,500 acres of the unoccupied habitat of the Monticello-Dove Creek population within San Miguel County. The BLM manages about 28,570 acres of occupied habitat and no unoccupied habitat of the San Miguel Basin population in San Miguel County. Of the occupied and unoccupied habitat for the Monticello-Dove Creek population within San Miguel County, 79% of the occupied habitat and 62% of the unoccupied habitat has federal mineral estate administered by the BLM. Of the occupied habitat and unoccupied habitat for the San Miguel Basin population within San Miguel County, 63% of the occupied habitat and 76% of the unoccupied habit has federal mineral estate managed by the BLM.

The amount of critical habitat, which includes occupied habitat, unoccupied habitat, and lands providing lek-buffers, under BLM surface and/or subsurface management, illustrates that the BLM GuSG DRMPa is vital to achieving appropriate habitat protection. Improvements to habitat quality and connectivity by BLM and other partners is critical to the conservation and protection of this species within the San Miguel Basin subpopulation. While it may not be vital to amend all existing RMPs (perhaps, such as the Gunnison RMP which follows the Candidate Conservation Agreement (CCA)), San Miguel County strongly believes that the two RMPs that guide the management of the San Miguel Basin population and the northern portion of the Dove Creek-Monticello population habitat that extends into southwestern San Miguel County should be aligned. This is complicated by the fact that the Uncompahgre Field Office (UFO) draft Resource Management Plan may not be finalized prior to this GuSG DRMPa and thus would not be amended by the final version of this document. The BLM should ensure consistent goals, objectives, and actions affecting GuSG habitat and within San Miguel County regardless of the dates of RMP decisions.

San Miguel County is very concerned about the future health and protection of the Gunnison Sage-grouse and its habitat. San Miguel County has assisted in the protection of thousands of acres of private lands with important wildlife habitat values, especially Gunnison Sage-grouse (GuSG) critical habitat, during the last few decades by participating in the acquisition of conservation easements intended to preserve and protect GuSG habitat. San Miguel County has financially contributed between $1.4 and $1.6 million during this period for GuSG habitat conservation and improvements through the County's Land Heritage Program, co-funding of the San Miguel Basin Gunnison Sage-grouse Working Group and funding of other actions intended to provide direct benefits to GuSG recovery and resilience. SMC continues to actively participate with the stakeholder group that developed the Gunnison Sage-grouse Rangewide Conservation Plan.

San Miguel County commissioned "A Natural Heritage Assessment San Miguel and Western Montrose Counties, Colorado," prepared by the Colorado Natural Heritage Program in 2000, which

BLM_0166979

identified several areas having high biodiversity as Potential Conservation Areas (PCAs). [6] Citizens of San Miguel County have long recognized the need to plan for the conservation of plants and animals that are native to the San Miguel And Dolores River Basins and have demonstrated their desire to protect their significant natural heritage and natural resources by organizing the San Miguel Watershed Coalition, San Miguel Conservation Foundation, San Miguel County Open Space Commission, San Miguel County Land Heritage Program, and providing co-funding of collaborative groups such as prior mentioned Gunnison Sage-grouse Working Group, as well as Public Lands Partnership.

In addition, San Miguel County elected officials, staff, and liaisons regularly and vigorously participates in public lands planning processes, including the Spruce Beetle Epidemic and Aspen Decline Management Response (SBEADMR) project; BLM Gunnison Sage-grouse Resource Management Plan Amendment process; Uncompahgre Collaborative Forest Restoration project; Alpine Ranger coalition; and others.

San Miguel County also participated in the Tres Rios Field Office (TRFO) Resource Management Plan process, including the ACEC nominating process, and is awaiting the correction of the Tres Rios RMP oversight that failed to analyze 15 areas that met both relevance and importance criteria for designation as ACECs. [7,8] Similar to the Gunnison Sage-grouse Resource Management Plan Amendment process, the decision process on these potential ACECs within the Tres Rios Field Office area is on-going. San Miguel County has vigorously participated in the ongoing Uncompahgre Field Office (UFO) planning process.

On November 12, 2014, the U.S. Fish and Wildlife Service (USFWS) announced that it determined that the Gunnison Sage-grouse, a ground-dwelling bird found only in southwestern Colorado and southeastern Utah, required the protection of the Endangered Species Act (ESA) as a threatened species. The USFWS originally proposed to list the species as 'endangered' under the ESA in January 2013, but efforts by the two states, tribes, local communities, private landowners and other stakeholders to conserve the species and its habitat were found to have helped reduce the threats to the bird sufficiently to give it the more flexibly protected status of 'threatened.' [9]

The supporting EIS for the Threatened Status designation of the Gunnison Sage-grouse[10] and for the Designation of Critical Habitat for the Gunnison Sage-grouse[11] is dated November 9, 2014.

These designations prompted a process for the BLM to prepare a draft Gunnison Rangewide Plan Amendment that would potentially result in multiple resource plan amendments (GuSG DRMPa) and a companion draft environmental impact statement (GuSG DEIS) which more closely analyzes planning issues, including energy and minerals actions, in order "to analyze the addition of GuSG conservation measures to several existing RMPs", including the Tres Rios RMP and existing RMPs guiding the UFO. Because of the timing of the draft Uncompahgre RMP, it is unclear if this GuSG DRMPa would amend the much older RMPs that guide the UFO or the newer one. Both the UFO

---

[6] http://www.cnhp.colostate.edu/download/documents/2000/San_Miguel_and_Western_Montrose.pdf
[7] Pages U-3 & U-4;
https://www.blm.gov/style/medialib/blm/co/field_offices/san_juan_public_lands/land_use_planning/approved_lrmp.Par.83225.File.dat/App_U_ACEC.pdf
[8] https://www.blm.gov/co/st/en/BLM_Information/nepa/TRFO_NEPA/acecs.html
[9] https://www.fws.gov/mountain-prairie/pressrel/2014/11122014_ServiceProtectsGunnisonSageGrouseAsThreatenedUnderESA.php
[10] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GUSGFinalListingRule_11202014.pdf
[11] https://www.fws.gov/mountain-prairie/species/birds/gunnisonsagegrouse/GuSGCriticalHabitat_11202014.pdf

BLM_0166980

DRMP and the GuSG DRMPa were released as drafts in August 2016.  The BLM states, "The BLM manages approximately 40 percent of GUSG habitat across twelve counties in southwestern Colorado and southeastern Utah…The inadequacy of regulatory mechanisms in land use plans was identified as a major threat in the FWS listing decision." [12]

San Miguel County believes that amendments are needed for all of the existing and draft Resource Management Plans guiding the TRFO and UFO with respect to the San Miguel Basin subpopulations of Gunnison Sage-grouse to provide consistency in the management goals, objectives, actions and outcomes throughout San Miguel Basin. For example, the Dry Creek Basin subpopulation is within the territory of the TRFO while Hamilton Mesa and Miramonte Reservoir subpopulations are within the territory of the UFO.

Currently, the philosophy, data, vintage, and actions are very different between the TRFO and UFO existing and proposed RMPs.  Actions and stipulations should be specific to the climate, topography, habitat conditions, threat management, and connectivity needs for each basin subpopulation, and where multiple RMPs affect a single basin population or subpopulation, they should be consistent. For example, if there is a No Surface Occupancy buffer around leks for the San Miguel Basin populations, they should be consistent for the lands within this basin population and subpopulations, with no difference whether they are managed by the TRFO or the UFO.  While an RMP amendment may not be necessary for the successful Gunnison Basin population, we believe that RMP amendments are needed for the existing TRFO RMP and UFO RMPs, and the proposed UFO DRMP.

The Purpose section of the GuSG DRMPa states, *"This RMP amendment provides a framework for conserving and assisting with the recovery of the GuSG and for conserving and restoring habitat upon which the species depends on BLM-administered public lands across the range of the bird."* The Need section of this document states, *"The BLM conducted land use plan evaluations in accordance with its planning regulations, which require that RMPs 'shall be revised as necessary based on …, new data, new or revised policy…(43 CFR 1610.5-6).'"* [13]

San Miguel County finds that the NEPA documents used for existing RMPs and the draft UFO RMP that intersect San Miguel County are of a vintage that pre-dates the listing and most recent information regarding the Gunnison Sage-grouse.  Even the UFO DRMP/DEIS[14] was developed using information primarily dated from 2006 to 2013.  We find that these *existing analyses are not adequate in because of the new information or circumstances of the 2014 endangered species listing and that the BLM cannot reasonably conclude that new information and new circumstances would not substantially change the analysis of the new proposed actions.*

In other words, San Miguel County believes that the listing of the GuSG and designation of critical habitat is a new circumstance that requires modification of the TRFO RMP/FEIS and the UFO DRMP/EIS, as well as the older RMPs the UFO is currently guided by.  The fact that the BLM is conducting the GuSG DRMPa/DEIS process and recommending a preferred alternative that would amend existing RMPs seems to point to that need.

---

[12] Page I; https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf
[13] Page iii; https://eplanning.blm.gov/epl-front-office/projects/lup/39681/78597/89605/2016-0811_GUSG_Draft_RMP_Amendment_ePlanning.pdf
[14] https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=86004

BLM_0166981

The range of alternatives considered in the GuSG DRMP/DEIS includes having the stipulation of No Surface Occupancy being applied to all BLM lands within 4-miles of a lek, which was not considered in the existing TRFO and UFO RMPs or proposed UFO RMPs.  The GuSG DRMPa analyzes all BLM lands within occupied habitat, unoccupied habitat or a 4-mile buffer of a lek as its Decision Area, which is different from the TRFO RMP and the existing and draft UFO RMPs.

**General Comments:**

**San Miguel County's comments are intended to be specific to the San Miguel Basin population and its 6 subpopulations, as they are concentrated within San Miguel County.  They are also intended to be specific to the unoccupied and occupied Monticello-Dove Creek population habitat that occurs within western San Miguel County.  Our comments are not intended to global and applicable to habitat or populations that do not occur within San Miguel County (SMC).  SMC desires a hybrid alternative that is tailored to the conditions and needs of the San Miguel Basin Gunnison Sage-grouse population so that are viable opportunities to conserve and restore habitat and allow for increases in the satellite populations so that eventually targets contained in the 2005 Gunnison Sage-grouse Rangewide Conservation Plan (RCP)[15] are met.**

1.  San Miguel County finds that overall, the preferred alternative for satellite (non-Gunnison Basin) populations, Alternative D2, would not protect GuSG at the same level as the Greater Sage-grouse (GrSG), which was not listed by the U.S. Fish and Wildlife Service (USFWS) as threatened or endangered.  The final alternative should offer the San Miguel Basin population the same or greater protection as is provided for in the Bi-State Nevada-California Greater Sage-Grouse Distinct Population Segment Land Use Plan Amendment[16], which adds goals, objectives, action, and best management practices specifically designed to conserve, enhance, and/or restore habitats to support BSSG population management objectives and to provide for the long -term viability of the Greater Sage Grouse Bi-State Distinct Population Segment (BSSG).  As one example, this decision includes a 4-mile lek buffer for tall structures.

2.  The final alternative for the San Miguel Basin populations absolutely should adhere to the BLM's IM 2014-100[17], *Gunnison Sage-grouse Habitat Management Policy on BLM-Administered Lands in Colorado and Utah*, which states that "The BLM's policy is to manage GuSG seasonal habitats and maintain habitat connectivity to support sustainable GuSG populations and/or GuSG population objectives as determined in coordination with the FWS and State fish and wildlife agencies."

IM 2014-100[18] further states "Habitat protection is crucial for the conservation and protection of this species.  The BLM will focus any type of development in non-habitat areas.  A disturbance will be focused outside of a 4-mile buffer around leks.  The BLM intends that little or no disturbance occurs within the 4-mile buffer, except for valid existing rights, and except where benefits to the GuSG are greater compared to other available alternatives."  SMC does not find

---

[15] http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx
[16] https://eplanning.blm.gov/epl-front-office/projects/lup/60909/74562/82120/BSSG_ROD_Final.05272016.Final.pdf
[17] https://www.blm.gov/wo/st/en/info/regulations/Instruction_Memos_and_Bulletins/national_instruction/2014/IM_2014-100.html
[18] https://www.blm.gov/wo/st/en/info/regulations/Instruction_Memos_and_Bulletins/national_instruction/2014/IM_2014-100.html

BLM_0166982

that any alternative proposed in the GuSG DRMPa provides "little or no disturbance" within the 4-mile lek buffer.

3.   San Miguel County finds that occupied habitat extends more than 4-miles from leks and a 6.25-mile lek buffer should be accommodated for the San Miguel Basin, especially in the Nelson Creek and Miramonte leks area.  The 2005 Gunnison Sage-grouse Rangewide Conservation Plan (RCP)[19] and the presence of occupied critical habitat more than 4 miles from leks within the San Miguel Basin show that GuSG is found occupying habitat and using seasonal habitat 6 or more miles away from leks.[20]  Appendix J of the RCP contains GuSG habitat use data for the San Miguel Basin.

The GuSG DRMPa should allow for additional review of appropriate protections for Gunnison Sage-grouse habitat **within the San Miguel Basin,** from oil and gas development, tall structures, and other human disturbances shown to be harmful to GuSG within at least a 6.25-mile buffer of leks within the San Miguel Basin and San Miguel County.  Appropriate protections include buffers around leks where disturbances on non-habitat can cause impacts to lekking.

For example, in the Northwest Colorado Greater Sage-Grouse Approved Resource Management Plan Amendment (2015), there are lek buffers for linear features, energy infrastructure, tall structures, low structures, surface disturbance, and noise and disruptive activities that appear to exceed such buffers in this GuSG RMPa where they are contemplated. Protections for the San Miguel Basin GuSG should be similar or exceed those for the GrSG, which was not listed as Threatened.

*Note: San Miguel County is not suggesting that this is appropriate for all basin populations, just the San Miguel Basin populations.*  Alternatively, implementing the 6.25-mile buffer around the Nelson Creek and Miramonte leks, while retaining the 4-mile buffer around the other San Miguel Basin leks for limiting surface disturbance and disruptive activities per IM 2014-100 (see below) would increase the options for habitat improvements and connectivity between the Hamilton Mesa, Dry Creek Basin and Miramonte subpopulations.  The Decision Area for the San Miguel Basin population should be increased to a 6.25-mile buffer in order to appropriately manage all potential habitat being used by the San Miguel Basin population.

4.   **The terminology "non-habitat" used in the GuSG DRMPa for the land within 4-miles of a lek that is not designated as occupied or unoccupied is misleading and should be altered.**  They could simply be referred to lek-buffer areas.  As described in the RCP, these areas do include non-lek breeding habitat and summer-fall habitat and non-habitat.  Most importantly, human-caused disturbances within 4 to 6 miles of a lek have been shown to increase abandonment and have other negative consequences on Greater Sage-grouse.

According to the GuSG DRMPa introduction, the Planning Area consists of "2.1 million acres of federal, state, city, county, and private lands in Colorado and Utah (including just over 740,000

---

[19] http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx
[20] Page J-5;
http://cpw.state.co.us/Documents/WildlifeSpecies/SpeciesOfConcern/GunnisonSageGrouse/ConsPlan/AppendixJSGHabitatUse03.pdf

7

BLM_0166983

acres of BLM-administered lands), along with an estimated 1.3 million acres of BLM-administered federal mineral estate."

The Decision Area described on pages ii and iii of the GuSG DRMPa, contains "approximately 620,000 acres of BLM-administered public land, as well as approximately 1,000,000 acres of subsurface federal mineral estate."  On page ii, this document states, "The decision area is defined as BLM-administered lands and federal mineral estate <u>within 3 categories of GuSG habitat</u>:" (underline emphasis added).

The GuSG DRMPa goes on to describe the 3 categories of habitat as Occupied Habitat, Unoccupied Habitat, and "Non-Habitat Areas within 4 Miles of a Lek".  This terminology is contradictory.  In the USGS 2013 report, "Summary of Science, Activities, Programs, and Policies That Influence the Rangewide Conservation of Greater Sage-Grouse (*Centrocercus urophasianus*)" by Manier et al.[21] Tables A-1 and A-4 describe areas (buffers) of direct and indirect influences on GrSG and leks, some of which are solely distance based where the disturbance source can be in non-habitat but if close enough to a lek, has a measurable negative effect.  There is no evidence these influences are different for GuSG.

5.  San Miguel County appreciates that Occupied Habitat for the GuSG DRMPa included both the "Occupied critical habitat, as designated by the FWS under the ESA," plus supplemental Occupied Habitat including "…specific properties coinciding with BLM-administered federal minerals that the FWS excluded from the critical habitat designation."  For example, FWS excluded certain private land encumbered by perpetual conservation easements within San Miguel County.  These lands should absolutely be treated as occupied habitat for the purpose of fluid mineral leasing where they have split estate and federal minerals managed by the BLM.  Private land conserved with the primary conservation easement value of GuSG habitat should have a No Surface Occupancy (NSO) stipulation for fluid minerals leasing and should be treated as GuSG occupied habitat with respect to other human disturbance activities.

6.  IM 2014-100 instructs the BLM field offices to incorporate conservation measures as part of the GuSG DRMPa process:

*"Land Use Planning*

*The BLM proposes to incorporate objectives and conservation measures for the protection of GUSG and its habitat into approved Resource Management Plans (RMP) through a GUSG range-wide plan amendment process.*

*As part of this GUSG range-wide planning process, the BLM will consider alternative(s) that:*

- *Close fluid mineral (oil and gas or geothermal) leasing, and consider land allocations following expiration of oil and gas and geothermal leases with a full range of alternatives, including a scenario where the lands will not be re-offered for lease in occupied GUSG areas;*
- *Exclude new energy development and rights-of-way (ROW);*

---

[21]https://pubs.usgs.gov/of/2013/1098/OF13-1098.pdf

BLM_0166984

- *Reduce or make lands unavailable to livestock grazing (consistent with WO-IM-2012-169) in GUSG occupied habitat;*
- *Include consideration of regional mitigation strategies and appropriate mitigation measures (avoid, minimize, and/or compensate) to reduce or eliminate impacts to GUSG populations;*
- *Address other factors that may pose a threat to GUSG populations, including recreation management, vegetation treatments, and invasive plant management; and*
- *Consider citizen-based alternatives, as appropriate.*

> *Through this range-wide plan amendment process, BLM Colorado and Utah FOs should consider and evaluate GUSG habitat conservation measures related to timing restrictions, buffer distances, percentages of allowable surface-disturbing activities, noise and desired density levels or other development constraints consistent with the GUSG RCP (including subsequent updates), current peer reviewed sage-grouse research, conservation summaries based on research or as developed in conjunction with State fish and wildlife agencies and the FWS to meet local population objectives. At a minimum, FOs will analyze and implement conservation measures that prohibit or limit energy and discretionary mineral development within four miles of active leks, and minimize surface disturbance and disruptive activities in all occupied habitat, where appropriate. "*

IM 2014-100 also states that the BLM field offices will:

*"BLM FOs will:*

- *Work within multiple programs including recreation, hazardous fuels, fire management, Public Domain forestry, range management, and wildlife to accomplish GUSG habitat conservation. When permitting or authorizing activities, FOs will consider, analyze and incorporate appropriate GUSG management strategies, best management practices (BMPs), and mitigation actions (avoid, minimize, and compensate) through NEPA analysis or other regulatory processes. FOs will continue to implement appropriate BMPs through the permitting process in all program areas. BMPs could include those identified at the local, state or national level for oil and gas development in GUSG habitat (see also RCP (Appendix L), fire (WO-IM 2013-128), and grazing guidelines (RCP 2005)).*

- *Continue coordination with the FWS and State fish and wildlife agencies on appropriate site-specific habitat or population-level management strategies (RCP 2005). This will include but is not limited to, considering, prioritizing and implementing management prescriptions and strategies outlined in the RCP and local GUSG conservation plans, as well as all subsequent updates as appropriate. The BLM will work with FWS and State fish and wildlife agencies to determine the best available science for implementation of this IM and, if appropriate, will revise the IM accordingly.*

BLM_0166985

- *Implement a 0.6-mile no surface disturbance/no surface occupancy buffer radius (RCP 2005) around all active leks for project-level implementation such as fences or sagebrush habitat treatments. Any sagebrush removal or treatment should be prohibited within this buffer unless implemented to maintain or enhance the lek (RCP, Appendix I).*

- *Per the RCP (Appendix I), the BLM should manage all sagebrush habitat within a 4-mile radius of an active lek as GUSG breeding habitat (lekking, nesting, early brood rearing). To complement protections within the 0.6-mile buffer (described above), breeding habitat should be managed to minimize disturbance to GUSG during critical seasonal time periods and minimize the footprint of any project, habitat fragmentation across the landscape, and cumulative effects on the associated population (see RCP, Appendix L). The following specific disturbance guidelines (see RCP, Appendix I) should be analyzed and applied to all ongoing program authorizations where appropriate:*

  - *Prohibit surface disturbing activities and disruptive activities within four miles of active leks from March 1 through June 30 (RCP 2005), subject to valid existing rights and emergency repairs of ROWs.*
  - *Avoid surface disturbance within mapped winter habitat for GUSG (if not mapped, within four miles of active leks); if surface disturbance cannot be avoided, prohibit said activity from December 1 through March 15 (RCP 2005).*

- *Include requirements to new Special Recreation Permits (SRP) to avoid disturbing leks during the breeding season. SRPs for hunting (other wildlife species), bird watching, and other activities should include appropriate timing restrictions to minimize disturbance to GUSG during critical seasonal periods such as the breeding, late brood-rearing and winter-use periods.*

- *Evaluate the need, and implement where appropriate, seasonal or permanent road or trail closures in occupied habitat through travel management planning and associated NEPA analysis for BLM authorized routes. Avoid construction of new roads or ROWs within four miles of active leks."*

- *Analyze the impacts to GUSG when renewable energy (e.g., wind, solar, biomass) development and associated infrastructure (e.g., transmission lines) is proposed in or adjacent to sagebrush habitat, and avoid occupied habitat where warranted. Manage areas within four miles of active leks as ROW avoidance areas.*

- *Avoid routing above-ground transmission or distribution lines within the occupied habitat.*

- *In response to a Plan of Operations, evaluate the impacts of non-discretionary activities managed under 43 CFR 3809 (those actions authorized under the 1872 mining law) on local GUSG populations, and clearly describe those effects that cannot be mitigated through the regulatory process. Through the NEPA process, analyze potential impacts of discretionary mining activities and mitigation*

10

BLM_0166986

*approved under 43 CFR 3400 (such as coal management), 43 CFR 3500 (non-energy leasable materials), and exploration or extraction of other solid minerals wherever possible.*

- *Incorporate adequate reclamation standards designed to re-establish suitable GUSG seasonal habitats (RCP 2005, Appendix H) for all surface-disturbing activities within occupied GUSG habitat.  Incorporate native seed mixtures in restoration efforts.  Wherever possible, native seed mixtures should include a minimum of three native grasses, two native forbs, and one native sagebrush species.  Use desired non-persistent, non-native vegetation in rehabilitation only where other options have been proven unsuccessful.*

- *Monitor all restoration activities for success in meeting short- and long-term vegetation objectives and reclamation standards, including potential weed infestations following the principles outlined in the BLM Assessment, Inventory, and Monitoring Strategy.  Conduct follow-up treatments to eliminate weeds as identified through monitoring.  If vegetation objectives are not being met, adjust restoration actions accordingly to improve the success of achieving desired GUSG habitat objectives.*

**SMC recommends final San Miguel Basin-specific alternative be developed and incorporated into the ROD, that accommodates the topography, climate, conditions, threats, and population goals of the San Miguel Basin subpopulations, and the Best Management Practices (BMPs) described in the GuSG DRMPa Appendix I.**

7.  SMC recommends that there be an additional buffer for all occupied habitat within the San Miguel Basin, where planning decisions apply the same as if it were occupied habitat.  Based on our recent experience with the TRFO February 2017 Oil and Gas Lease Sale, where lands intersecting occupied habitat were proposed for sale, if there were an approximately 0.3-mile buffer around all Occupied GuSG habitat, this would ensure that future sales are not actually offering Occupied Habitat.  The issue may be based on the map scale at which screening of potential sale parcels occurs within the various BLM offices.  Encroaching right up to the edge and cutting into Occupied Habitat is against the spirit and intent of this RMPa and IM 2014-100.  Buffering Occupied Habitat so that an NSO that applies to Occupied Habitat is extended out to a 0.3-mile buffer of Occupied Habitat would remedy a human error that results in performing actions on the margins of Occupied Habitat, which would then cause additional habitat degradation and loss.

8.  The GuSG DRMPa does not have a mechanism to limit cumulative habitat loss or surface disturbance to an acceptable level at a landscape scale.  There is no net habitat loss standard or cumulative disturbance cap.  The BLM RMPa for GrSG includes such cumulative surface disturbance caps.  For example, there are stipulations that apply to a limit of 1 facility per 640 acres, and a cap of cumulative habitat loss of 3%.

9.  Lek buffers for activities should be based on the class or type of activity and the level of disturbance, for example, the buffer for tall structures would be greater than for low structures.

BLM_0166987

See Manier et al.[22] Tables A-1 and A-4, and the Bi-State RMP[23] as finalized after protest resolution.

10.  Lek buffers and corresponding planning decisions being applied to lek buffers should be applied to active and inactive leks in the San Miguel Basin populations, so that there remains an opportunity for reactivation or re-colonization of the lek in the future, as other actions have intended positive effects on GuSG subpopulations and habitat quality and quantity increases.

11.  Timing limitations for the San Miguel Basin population should be consistent, and match recommendations from CPW, data for GrSG, and the Range-wide Conservation Plan incorporating best management practices and the best available information.

12.  The GuSG DRMPa seems to have omitted land disposals from consideration and analysis in all of the alternatives.  BLM lands having occupied, unoccupied, or land within 4 to 6.25-miles of San Miguel Basin leks should be retained by the BLM and not disposed of unless it can be proven that disposal is going to have direct positive benefits on GrSG population and habitat.  On page 6-199 of the GuSG DRMPa, Chapter 6, Appendix I, GuSG Best Management Practices, lists "Do not approve withdrawal proposals not associated with mineral activity unless that land management is consistent with GUSG conservation measures."  SMC cautions that there needs to be a perpetual guarantee that a land withdrawal or disposal would improve habitat conditions for GuSG in order to occur.  In general, disposal further complicates land management as it increases the complexity of land ownership and potential for habitat fragmentation.

13.  Travel Management Plans (TMPs) should be completed by BLM Field Offices as soon as possible after the GuSG ROD is signed.  TRFO is in progress with its TMP and ACEC RMPa.  UFO is in progress with its RMP.  With overlapping planning processes, BLM should ensure that no matter which documents affecting the San Miguel Basin population area are finalized first, that all incorporate the GuSG actions of this final GuSG DRMPa.

14.  BLM should incorporate certain stipulations and restrictions that were incorporated in the Northwest Colorado (NWCO) GrSG RMPa[24] (Appendix G) for fluid and non-fluid leasable minerals within the San Miguel Basin population area.  It does not make scientific sense that where the satellite populations may not have reached their population RCP population goals, and the Gunnison Basin population has, that there is a 1-mile lek buffer proposed for the Gunnison Basin population and a smaller 0.6-mile no surface disturbance buffer for the satellite populations.

- Where NWCO GrSG RMPa applies NSO to PHMA, this should apply to Occupied Habitat and a 0.3-mile buffer of Occupied Habitat in the San Miguel Basin population.  There should be no leasing within 1 mile of a lek.  The language that prohibits waivers or modifications to the NSO stipulation should also be incorporated into the GuSG DRMPa for San Miguel Basin.
- NWCO GrSG RMPa applies NSO within 2 miles of active leks in GHMA.  Grand Junction RMP applies an NSO stipulation within 4-miles of a lek.  There should be at least as much protection as occurs within the <u>Grand Junction RMP</u> for

[22] https://pubs.usgs.gov/of/2013/1098/OF13-1098.pdf
[23] https://eplanning.blm.gov/epl-front-office/projects/lup/60909/74562/82120/BSSG_ROD_Final.05272016.Final.pdf
[24] https://eplanning.blm.gov/epl-front-office/projects/lup/36511/63221/68470/Northwest_Colorado_ARMPA_508.pdf

BLM_0166988

providing an NSO for active and inactive leks within the San Miguel Basin. SMC believes a 6.25-mile buffer is justified in the Dry Creek Basin/Miramonte subpopulation areas.

- NWCO GrSG RMPa limits or caps surface disturbance to a certain percentage of habitat and also caps density of infrastructure to 1 per 640 acres. This should be done for the San Miguel Basin, at least for Occupied Habitat.
- NWCO GrSG RMPa uses the timing limitation of March 1 to July 15, for disallowing activity associated with construction, drilling, or completions within 4-miles of leks during lekking, nesting and early brood-rearing. Timing limitations of March 1 to July 15 should be applied within the San Miguel Basin.
- Incorporate NWCO GrSG RMPa Management Action #47, Condition of Approval into the final alternative for San Miguel Basin population.
- Manage Occupied and Unoccupied habitat as avoidance areas for ROWs.
- NWCO GrSG RMPa allows for evaluation of the proposed lease activities in relation to site-specific terrain and habitat features. This appears to allow for some site specificity where local topographical features like ridges or ravines that act as shields can be evaluated.

15. There should be adaptive considerations built into the RMPa for the San Miguel Basin population to adapt to changing landscapes, best management practices, habitat prioritization, and mapping, etc. If Colorado Parks and Wildlife (CPW) agrees, the adaptive management content of Appendix H of the NWCO GrSG RMPa should be incorporated into the GuSG DRMPa.

16. Hunting of GuSG should not be allowed on public lands managed by the BLM within the San Miguel Basin population. It appears that the GuSG DRMPa prohibits this.

17. Lek information obtained by SMC counts 10 active leks and 1 inactive lek within SMC, all within the San Miguel Basin population. The GuSG DRMPa states that there are 13 leks for the San Miguel Basin population with only 6 of these being active. The GuSG DRMPa appears to be using out of date lek data for the San Miguel Basin. According to the CPW (personal communication), the number of leks for 2015 and 2016 in the San Miguel Basin is 14 leks (7 active, 5 inactive, and 2 historical). Lek buffers should be applied to all leks, regardless of their status, to facilitate increasing distribution and abundance of the San Miguel Basin population. SMC is aware that there are historic/inactive GrSG leks that are now becoming reactivated after more than a decade of inactivity.

18. In Chapter 3, the Affected Environment description for the San Miguel Basin population (pages 3-29 to 3-30) notes that the Dry Creek Basin subpopulation has the majority of the GuSG San Miguel Basin population habitat (64%). It has the highest percentage of BLM land -- 57% of the Dry Creek Basin subpopulation habitat is on BLM land. However, this area and subpopulation has the smallest individual numbers and has been characterized as having some of the poorest habitat conditions. Other subpopulations having better habitat conditions, such as Hamilton Mesa and Miramonte are mostly private land. Page 3-163 states that there are currently 25 gas wells within San Miguel Basin Occupied Habitat consisting of 4,994 acres of leases under production, with an additional 18 active wells "immediately adjacent to Occupied Habitat." "All of these wells are near the Dry Creek subpopulation."

13

San Miguel County is currently protesting the lease sale of additional oil/gas parcels in the Dry Creek Basin area. The leases intersected and were immediately adjacent to Dry Creek Basin occupied habitat, the 4-mile lek buffer, and private lands conserved for GuSG habitat. Many of the leases were within or adjacent to the Decision Area of this GuSG DRMPa. The GuSG DRMPa Alternative $D_2$ often offers less protection for GuSG than alternative $D_1$, where the Gunnison Basin population is stable to increasing and well above target population size. The San Miguel Basin population, including the Dry Creek Basin subpopulation, should have the strongest protections and conservation measures, exceeding those of the Gunnison Basin.

19. Socioeconomic description of San Miguel County within Area 3: SMC wishes to express that much of the GuSG habitat area is reliant on agriculture, with some oil/gas and mineral development as well as outdoor recreational opportunities.

On page 3-220, the GuSG DRMPa reports that San Miguel County has had a 15% population growth, but later on, page 3-222 says that "Telluride is physically separate from the decision area and will not be affected by the proposed habitat conservation measures." While it is true that the Telluride, Mountain Village and down valley areas might be physically separate, they are not separate when it comes to outdoor recreational opportunities or guiding/outfitting. The population analysis should be broken out to reflect the population centers of Telluride/Mountain Village and the San Miguel River corridor vs. the unincorporated portion of the county where GuSG habitat and lek buffers occur. There has been little significant residential development near GuSG habitat, except for possibly where the 2005 RCP indicated that there was development in the vicinity of the Gurley Reservoir and Iron Springs Mesa areas at that time.

20. On page 4-19, the GuSG DRMPa states that the TRFO identifies all "winter concentration areas" as NSO. CPW in 2016 updated GIS files and has published them online. [25] CPW maps "severe winter range" and "winter range" for GuSG. All winter range should be NSO.

21. Non-motorized Recreation: Outdoor recreation is very important to the county's economy and resident's quality of life. SMC does not want to outright prohibit recreational opportunities and desires that they continue unless there is demonstrable evidence that the activity is detrimental to GuSG. Therefore, Alternative A should be implemented where recreation uses and activities are generally not adverse to GuSG or GuSG habitat.

22. Fluid minerals should only be open to leasing where there is Occupied or Unoccupied habitat, or within 6.25 miles of a lek, where there is a "high" mineral potential.

23. Motorized Recreation: San Miguel County requests that the final GuSG RMP incorporate a hybrid of alternatives from this document and GrSG RMPs –
- Complete activity level Travel Management Plans (TMPs) as soon as possible, subject to funding. Where appropriate, designate routes with current administrative/agency purpose or need to administrative access only. L
- Limit route construction to routes that will not adversely affect GuSG populations due to habitat loss or disruptive activities.
- In the Decision Area, evaluate for potential reductions in route density where they are demonstrated to improve habitat conditions or outcomes for GuSG.

---

[25] http://www.arcgis.com/home/item.html?id=1bab23cd9f274742ae1e38afa6e6c44f

BLM_0166990

- Areas in Occupied and Unoccupied Habitat designated as closed to motorized travel will remain so and not be changed by the GuSG DRMPa.
- Designate GuSG habitat as OHV Limited Area, prohibiting new surface disturbance unless authorized through a separate implementation-level decision.
- Allow for upgrades to existing routes after documenting that the action would not adversely affect GuSG through disruptive activities or habitat degradation/loss.
- Require mitigation as provided for in GuSG DRMPa Appendix J.
- Adhere to an overall habitat disturbance cap, such as 3%, unless there is an immediate health and safety need or to support valid existing rights which cannot be avoided. Evaluate and implement additional, effective mitigation necessary to offset the resulting loss of the GuSG habitat.

24.  Fuels Treatments:  Some fuels treatments have the potential to benefit GuSG and/or habitat or create habitat.  Fuels treatments and fire should occur when they are shown to be beneficial to GuSG.

25.  The GuSG DRMPa statement on page 4-25, contending that extending management actions beyond Occupied and Unoccupied Habitat is contradictory to this document, the GrSG RMPs, and an overwhelming number of citations contained in this RMPa.  The statement on page 4-44 that 96% of all surface disturbances are on private land is completely unsubstantiated.  This is an impossible statement, as each basin population and subpopulation has different conditions.  It should be deleted.

26.  SRPs should be allowed where no adverse impacts or potential adverse impacts to GuSG exists.

27. Grazing allotments should not be automatically closed within the GuSG Decision Area or habitat.  SMC does not agree that the provisions in the current GuSG DRMPa Alternative B are in the best interest of the GuSG.  For example, outright prohibiting new water developments (row 46, Table 2.7) might disallow improvements that would actually benefit GuSG brood rearing.

Within the Occupied and Unoccupied Habitat, as new and renewed grazing permits are implemented, include best management practices, and address potential disruptive activities such as structures, fences, roads, etc.  Terms and conditions of permits and leases could specify requirements for residual forage cover, and should also take into consideration that wildlife may reduce such cover through no fault of the permittee.  As necessary, permits could specify:

- Season/timing of use
- Livestock numbers
- Livestock distribution
- Use intensity
- Livestock species
- Livestock class
- Location of routes, bed grounds, etc.
- Structure limitations

BLM_0166991

Incorporating the objective of maintaining the cover of herbaceous vegetation to reduce predation during the breeding/nesting season from March 1 to July 15 would also be beneficial, in collaboration with other state and federal agencies.

Alternative B would have a negative effect on the San Miguel County economy, without ensuring any positive benefits for GuSG.

28.  Appendix J of the GuSG DRMPa, which is the Mitigation Strategy section, simply states that there will be a strategy developed and is inadequate for providing specific comments other than elements from the Northwest Colorado Greater Sage-Grouse Approved Resource Management Plan Amendment (NWCO GrSG FRMP) should be incorporated into this GuSG RMPa include Appendices F, G, and H of the NWCO GrSG FRMP, which include a robust Mitigation Strategy (Appendix F), Stipulations Applicable to Fluid Mineral Leasing and Land Use Authorizations (Appendix G), and Guidelines for Implementation and Adaptive Management (Appendix H).

Where the NWCO GrSG FRMP defines buffers, NSO, CSU, and TL stipulations for Priority Habitat (PHMA) or General Habitat (GHMA), these same buffers, NSO, CSU, and TL stipulations should be given to the San Miguel Basin area at a minimum where Occupied Habitat could correspond to PHMA and Unoccupied Habitat to GHMA considerations.

The NWCO active lekking, nesting and early brood-rearing TL is from March 1-July 15, and no activity is allowed with 4-miles of leks during this period.  This should be the TL for the San Miguel Basin.

There should be no waivers allowed for NSO, CSU, and TL stipulations.  Any exemptions should require authorization not just from the FO but also from the State Director.

29.  The GuSG RMPa considers an ACEC for all occupied and unoccupied GuSG habitat in either or both the Gunnison Basin population and satellite populations in Alternative B.  No details of what the stipulations or management would be if this were to be approved as part of the final decision seem to have been provided.  SMC desires for the TRFO ACEC RMP amendment process (DOI-BLM-CO-S010-2016-0018-EA) to be completed and fully consider the Northdale and Dry Creek Basin ACECs.  This document does not give an adequate explanation as to why BLM feels that the possible ACECs for occupied and unoccupied habitat do not meet ACEC relevance and importance criteria, but yet the proposed Dry Creek Basin and Northdale ACECs do for GuSG conservation.

30.  It appears that the BLM is trying to minimize the importance of its planning and management decisions on the GuSG.  Tables 1.1, 1.2, 3.13, 3.14, and 3.64 should include both totals and percentages of occupied habitat, unoccupied habitat, and acreages within the decision area that intersect BLM surface or BLM-managed mineral estate.

San Miguel County appreciates the opportunity to comment on this important document and is committed to working collaboratively with the BLM, and our other state, federal and local partners to ensure that the Gunnison Sage-grouse within San Miguel County can be conserved and to increase viable habitat for recovery efforts to be effective.  The GuSG will not be successful within the San Miguel Basin and San Miguel County without appropriate planning decisions from the BLM.

BLM_0166992

Sincerely,

SAN MIGUEL COUNTY, COLORADO
BOARD OF COUNTY COMMISSIONERS


Joan May, Chair

BLM_0166993

## ABBREVIATIONS AND ACRONYMS

The following abbreviations and acronyms are used throughout this document.

| COMMON ABBREVIATIONS/ ACRONYMS | COMPLETE PHRASE |
|---|---|
| ACEC | Area of Critical Environmental Concern |
| AMP | Allotment Management Plan |
| APD | Application for Permit to Drill |
| ATV | all-terrain vehicle |
| AUM | animal unit month |
| BA | Biological Assessment |
| BLM | Bureau of Land Management |
| BMP | best management practice |
| BO | Biological Opinion |
| BOR | Bureau of Reclamation |
| BRCW | Black Ridge Canyons Wilderness (designated Wilderness within McInnis Canyons NCA) |
| CCA | Candidate Conservation Agreement |
| CCAA | Candidate Conservation Agreement with Assurances |
| CCNCA | Colorado Canyons NCA (former title for McInnis Canyons NCA) |
| CCR | Colorado Code of Regulations |
| CEQ | Council on Environmental Quality |
| CFR | Code of Federal Regulations |
| COA | Conditions of Approval |
| CPW | Colorado Parks and Wildlife (previously Colorado Division of Wildlife) |
| CSU | Controlled Surface Use |
| dBA | A-Weighted Decibel |
| DEIS | Draft Environmental Impact Statement |
| DOE | U.S. Department of Energy |
| DOI | U.S. Department of the Interior |
| DRMP Amendment | Draft Resource Management Plan Amendment |

BLM_0166994

ABBREVIATIONS AND ACRONYMS

| COMMON ABBREVIATIONS/ ACRONYMS | COMPLETE PHRASE |
| --- | --- |
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| EPA | U.S. Environmental Protection Agency |
| ERMA | Extensive Recreation Management Area |
| ESA | Endangered Species Act of 1973 |
| FAR | Functional at Risk |
| FLPMA | Federal Land Policy and Management Act of 1976 |
| FO | Field Office |
| FRCC | Fire Regime Condition Class |
| FRN | Federal Register Notice |
| FWS | U.S. Fish and Wildlife Service |
| GIS | Geographic Information Systems |
| GUSG | Gunnison Sage-Grouse |
| IM | Instruction Memorandum |
| LN | Lease Notice |
| LUP | land use plan |
| MOU | Memorandum of Understanding |
| MS | BLM Manual Section |
| NCA | National Conservation Area |
| NEPA | National Environmental Policy Act of 1969 |
| NF | Non Functional |
| NM | National Monument |
| NPS | U.S. National Park Service |
| NRCS | National Resources Conservation Service |
| NSO | No Surface Occupancy |
| OHV | Off-Highway Vehicle |
| PCE | Primary Constituent Element |
| PFC | proper functioning condition |
| RAC | Resource Advisory Council |
| RCP | Rangewide Conservation Plan |

BLM_0166995

ABBREVIATIONS AND ACRONYMS

| COMMON ABBREVIATIONS/ ACRONYMS | COMPLETE PHRASE |
| --- | --- |
| RMP | Resource Management Plan |
| RMP Amendment | Resource Management Plan Amendment |
| ROD | Record of Decision |
| ROW | right-of-way |
| SRMA | Special Recreation Management Area |
| SRP | Special Recreation Permit |
| SSR | Site-Specific Relocation |
| SSS | Special Status Species |
| TL | timing limitation |
| TMP | travel management plan |
| UDWR | Utah Division of Wildlife Resources |
| U.S. | United States |
| USC | United States Code |
| USFS | U.S. Forest Service |
| VCC | vegetation condition class |
| WEM | waiver, exception, or modification |
| WO | Washington Office |
| WSA | Wilderness Study Area |
| WSR | Wild and Scenic Rivers |

BLM_0166996

ATTACHMENT B



Gunnison Sage-grouse:
Permanent Conservation Easements
on Private Lands

*-by Susan Lohr and Nomi Gray*

28 August 2013

*Gunnison Ranchland Conservation Legacy*

*and*

*Conservation Assistance Program*

BLM_0166997

Gunnison Sage-grouse:
Permanent Conservation Easements on Private Lands

-by Susan Lohr and Nomi Gray
31 August 2013

*Executive Summary*

Evaluation of the protection status of the Gunnison Sage-grouse (GUSG) by the United States Fish and Wildlife Service (USFWS) is not possible without accurate information about the percentage of private land within critical habitat that is permanently protected by conservation easements.  This report provides charts and maps of conservation easements within the USFWS designated critical habitat areas.  Previous USFWS statements have underestimated the extent of permanently conserved private lands.  Private lands with permanent conservation easements cannot ever be fragmented or subdivided, and are not available for future population growth.

The authors have been assisting landowners to place conservation easements for more than 20 years.  The conservation easements listed in this report are public documents, available at the records office of the appropriate county.  Charts in this report cite the recorded document numbers and county parcel numbers.  Maps depict the general location of easement parcels and are intended to give an overall visual impression of the extent of habitat protection on private lands.

Please use this information freely and distribute it widely.

*This effort was funded jointly by the Gunnison Ranchland Conservation Legacy and the Conservation Assistance Program of the North Fork Valley.  Contact Susan Lohr (970/ 314-7280, susan@paonia.com) for more information, or for pdf files of the recorded conservation easement documents.*

================================================================================

**Contents:**

| | |
|---|---|
| Conservation Easements:  A Summary | 2 |
| Overall GUSG Habitat Map from USFWS | 3 |
| Conservation Easements in Unit 1:  Monticello-Dove Creek | 4 |
| Conservation Easements in Unit 2:  Piñon Mesa | 10 |
| Conservation Easements in Unit 3:  San Miguel Basin | 21 |
| Conservation Easements in Unit 4:  Cerro Summit-Cimarron-Sims Mesa | 27 |
| Conservation Easements in Unit 5:  Crawford | 34 |
| Conservation Easements in Unit 6:  Gunnison Basin | 42 |
| Conservation Easements in Unit 7:  Poncha Pass | 57 |

1

BLM_0166998

## Conservation Easements:  A Summary

A **"conservation easement"** is a voluntary legal agreement between a landowner and a land trust or government agency that permanently limits uses of the land in order to protect its conservation purposes.

**"Conservation purposes"** are defined by federal statute.  Pursuant to I.R.C. § 170(h)(4)(A) and Treasury Regulation § 1.170A-14(d), the conservation purposes of a qualified conservation contribution must include one or more of the following: (1) to preserve land for outdoor recreation by or education of the general public; (2) to protect relatively natural habitat of fish, wildlife or plants; (3) to preserve open space; and (4) to preserve historically important land or structures.

**Colorado statutes support conservation easements**:
- Colorado C.R.S. § 38-30.5-102 provides for the creation of conservation easements to maintain land "in a natural, scenic, or open condition, or for wildlife habitat, or for agricultural, horticultural, wetlands, recreational, forest or other use or condition consistent with the protection of open land . . ."
- C.R.S. § 33-1-101, provides in relevant part that "it is the policy of the state of Colorado that the wildlife and their environment are to be protected, preserved, enhanced, and managed for the use, benefit, and enjoyment of the people of this state and its visitors."
- C.R.S. § 35-3.5-101 states in part "it is the declared policy of the state of Colorado to conserve, protect, and encourage the development and improvement of its agricultural land for the production of food and other agricultural products."

**Conservation easements are recorded in the public records** of the county of the conserved property.  They are attached in perpetuity to that land.  Each conservation easement cites the conservation purposes (also called **"conservation values"**) for that particular property.

**Conservation easements place permanent restrictions on division of land** in order to perpetuate the conservation values.  This means the land covered by the easement will forever be a single parcel, with very few exceptions.  If the conservation easement includes more than one legal parcel of land, those parcels must be owned and conveyed as a single unit in perpetuity.   Easements define specific areas for residential or agricultural structures.  Roads and driveways are restricted.

**Conservation easements contain language that defines acceptable land management practices** for sustaining the conservation values in perpetuity.  Although landowners donate many conservation easements, some are funded by state or federal agencies for specific purposes.  These funded easements usually contain additional management goals or restrictions.

**Conservation easements have been in use for more than 100 years**, but the past 50 years have seen exponential growth in this form of voluntary private land preservation.  Many court cases have upheld the validity of conservation easements and the restrictions they place on landowners in perpetuity.

**The preservation of intact landscapes** that results from conservation easements provides significant and wide-ranging benefits, among which are:

- wildlife habitat is protected from fragmentation and degradation,
- water rights as historically used are attached to the land,
- agricultural lands are available in perpetuity for producing the nation's food supply, and
- local governments have certainty regarding the location of population growth and the need to deliver public services.

BLM_0166999

Map of Overall Critical Habitat for Gunnison Sage-grouse



Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules   2563

(6) Unit 1: Monticello—Dove Creek: San Juan County, Utah, and Montrose, San Miguel, and Dolores Counties, Colorado.

(i) *General Description:* 140,973 ha (348,353 ac); 20.4 percent of all critical habitat.

(ii) Map of Unit 1, Monticello—Dove Creek: San Juan County, Utah, and Montrose, San Miguel, and Dolores Counties, Colorado, follows:

3

**Unit 1:
Monticello -
Dove Creek**



4

BLM_0167001

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 1:  Monticello - Dove Creek

| Current Owner | Total CE Acres | Acres in Occupied Habitat | Acres in Unocc. Habitat | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity (HQ = headquarters) |
|---|---|---|---|---|---|---|---|---|---|---|
| Adams | 642 | 642 | 0 | San Juan, UT | 11/9/01 | #064951 | UDWR | 33S25E030000 | 1, 2, 3 | One 642-ac parcel with no building areas. |
| Adams | 1602 | 1602 | 0 | San Juan, UT | 11/9/01 | #064953 | UDWR | 32S25E335400 32S25E345400 32S25E355400 33S25E040000 | 1, 2, 3 | This 1620-ac parcel may be divided into five parcels of at least 300 acres each. No building areas.  No residences. |
| Dicken | 320 | 320 | 0 | Dolores | 12/20/01 9/1/04 | #144346 #158384 | LPC MLC | 5063-194-00-050 5063-301-00-072 | 1, 3 | One 320-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Fernandez | 1180 | 1180 | 0 | Dolores | 12/14/12 | #162504 | MLC | 4805-173-00-047 4805-174-00-048 4805-202-00-258 4803-134-00-055 | 1, 2, 3 | This 1180-ac property may be divided once into two parcels.  One building area includes two residences and ag structures. |
| Pehrson | 320 | 320 | 0 | San Juan, UT | 11/18/03 | #070766 | BLM | 32S24E346600 32S24E355400 | 1, 2, 3 | One 320-ac parcel with no building areas.  No residences.  Ag structures only. |
| Reed | 240 | 240 | 0 | Dolores | 12/28/01 7/20/10 | #144345 #159766 | LPC MLC | 5063-191-00-124 | 1, 3 | One 240-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| RM & ML, LLC | 733 | 733 | 0 | Dolores | 1/16/13 | #162626 | MLC and CPW | 4807-054-00-008 4807-054-00-009 4807-043-00-010 4807-033-00-026 4807-033-00-027 4807-091-00-049 4807-094-00-053 4807-094-00-054 | 1, 2, 3 | Four parcels of 176, 71, 245 and 121 acres, each with a 1.5-ac building area that includes one residence and accessory structures. |

BLM_0167002

| | | | | | | | | 4807-091-00-055 4807-091-00-056 4807-091-00-057 4807-163-00-067 4807-164-00-068 4807-164-00-069 4807-213-00-070 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| The Nature Conservancy | 1080 | *1080* | *0* | San Juan, UT | 10/12/12 | #116959 | TNC | 33S24E222400 33S24E162400 33S24E153600 33S24E154200 33S24E156600 33S24E151200 | 1, 2, 3 | One 1080-ac parcel owned by TNC and managed solely for habitat improvement for Gunnison Sage-grouse. Not a conservation easement but protected by TNC exclusively for grouse. |
| **Total CE Acres:** | **6117** | *6117* | *0* | | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | *100,702* | *200,318* | | | | | | | |
| **CE Percent:** | | *5%* | *0%* | | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements: The conservation values must be sustained in perpetuity. Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover. Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property. Surface mining is prohibited. Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted. Noxious weeds and invasive plant species must be controlled. Water rights are permanently attached to the property. Surface disturbance is prohibited. Industrial uses are prohibited. Commercial uses must be consistent with the conservation values. Trash accumulation is prohibited. Motor vehicle use is restricted. Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies. A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

BLM_0167003

Holders of Conservation Easements:

| | | |
|---|---|---|
| BLM | = | U.S. Department of the Interior, Bureau of Land Management |
| CPW | = | State of Colorado, Department of Natural Resources, Division of Parks and Wildlife |
| LPC | = | La Plata Open Space Conservancy |
| MLC | = | Montezuma Land Conservancy |
| UDWR | = | Utah Department of Natural Resources, Division of Wildlife Resources |
| TNC | = | The Nature Conservancy |

BLM_0167004

Conservation Easements on Private Land in the Dove Creek Area



BLM_0167005

Critical Habitat in Unit 1, Monticello-Dove Creek



(7) Unit 2: Piñon Mesa: Grand County, Utah, and Mesa County, Colorado.

(i) *General Description*: 99,220 ha (245,179 ac); 14.4 percent of all critical habitat.

(ii) Map of Unit 2, Piñon Mesa: Grand County, Utah, and Mesa County, Colorado, follows:

**Unit 2:**
**Piñon Mesa**



BLM_0167007

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 2: Piñon Mesa

| Current Owner | Total CE Acres | Acres in Occupied Habitat | Acres in Unocc. Habitat | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity (HQ = headquarters) |
|---|---|---|---|---|---|---|---|---|---|---|
| Bagg | 829 | 0 | 829 | Mesa | 12/24/96 12/30/03 6/28/04 | #1783031 #2169931 #2199262 | MLT MLT MLT | 2959-173-00-152 | 1 | One 829-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Bagg | 226 | 0 | 226 | Mesa | 12/24/96 12/30/03 6/28/04 | #1783031 #2169931 #2199262 | MLT MLT MLT | 2959-083-00-273 | 1 | One 226-ac parcel with no building areas. |
| Beach | 184 | 184 | 0 | Mesa | 8/20/12 | #2622282 | MLT | 3221-182-00-099 3221-182-00-096 3221-181-00-094 3221-181-00-095 3221-182-00-097 | 1, 2, 3 | One 184-ac parcel with one 5-ac building area that includes one residence and ag structures. |
| Bear Run | 408 | 0 | 408 | Mesa | 12/31/01 | #2033408 | MLT | 3209-164-00-105 3209-162-00-140 3209-162-00-139 | 1, 2 | One 408-ac parcel with three 5-ac building areas that each include one residence and ag structures. |
| Bedford | 1280 | 1280 | 0 | Mesa | 12/30/11 | #2595859 | CDOW | 3221-192-00-056 3219-243-00-062 | 1, 2, 3 | One 1280-ac parcel with a building area for ag structures. No residences. |
| Branham | 80 | 0 | 80 | Mesa | 12/6/07 | #2415104 | MLT | 2957-332-00-069 | 1 | One 80-ac parcel with a 5-ac building area that includes one residence and ag structures. |
| Carns | 334 | 0 | 334 | Mesa | 12/18/09 | #2516935 | MLT | 3215-023-00-043 3215-112-00-055 3215-112-00-056 3215-113-00-025 3215-114-00-022 | 1 | One 334-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Carns, Reigles | 200 | 200 | 0 | Mesa | 12/22/10 | #2557738 | MLT | 3211-193-00-009 3213-251-00-027 | 1 | One 200-ac parcel with a 20-ac building area that |

BLM_0167008

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | includes one residence and ag structures. One cabin may be built elsewhere on the parcel. |
| Chesnick | 1185 | *0* | *1185* | Mesa | 12/19/97 12/23/03 | #1825980 #2169932 | MLT MLT | 2959-194-00-151 | 1 | This 1185-ac parcel may be divided into three parcels, each not less than 200 acres. Two may have a 5-ac building area that includes one residence and ag structures. |
| Gleason | 920 | *920* | *0* | Mesa | 12/29/10 10/28/11 12/19/12 | #2557819 #2589643 #2637627 | CCALT CCALT CCALT | 3221-292-00-078 3221-281-00-009 | 1 | This 920-ac parcel may be divided into two parcels, each larger than 280 acres. One may have a 5-ac building area for ag structures only. Each parcel may have one cabin for seasonal use. No residences. |
| Gleason | 1500 | *750* | *750* | Mesa | 12/31/09 7/31/12 | #2517722 #2619883 | CCALT CCALT | 3213-131-00-139 3213-224-00-036 | 1, 3 | One 1500-ac parcel with two 10-ac building areas that include ag structures only. Two cabins for seasonal use are allowed on the property. No residences. |
| Gore | 4443 | *3000* | *1443* | Mesa | 4/18/05 | #2249429 | CDOW | 3211-171-00-172 | 1, 2, 3 | One 4443-ac parcel with no building areas. No residences. |
| Gore | 1600 | *0* | *1600* | Mesa | 12/20/07 12/20/07 12/30/10 2/7/11 7/7/11 7/7/11 | #2417044 #2417045 #2557901 #2562327 #2577742 #2577743 | MLT MLT MLT MLT MLT MLT | 3211-233-00-033 3211-223-00-012 | 1, 3 | One 900-ac parcel and one 700-ac parcel, each with a 5-ac building area that includes one residence and ag structures. |
| Gore | 1213 | *0* | *1213* | Mesa | 12/24/96 12/30/03 | #1783031 #2169931 | MLT MLT | 2959-181-00-537 | 1 | One 1213-ac parcel that may be divided into two |

BLM_0167009

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 6/28/04 | #2199262 | MLT | | | parcels of no less than 35 acres, each with a 5-ac building area that includes one residence and ag structures. |
| Granite Springs | 1630 | *0* | *1630* | Mesa | 6/28/02 | #2064135 | MLT | 3213-173-00-023 3213-173-00-026 3213-161-00-019 3213-211-00-025 3213-083-00-021 3213-084-00-018 3213-084-00-016 | 1, 2, 3 | This 1630-ac parcel may be divided once by separating a parcel of from five to 40 acres. Each resulting parcel may have a 2-ac HQ area that includes one residence and ag structures. |
| Harris | 320 | *0* | *320* | Mesa | 12/28/06 12/29/09 | #2356207 #2517407 | MLT MLT | 2961-304-00-024 2961-301-00-021 | 1 | This 320-ac parcel may be divided once into two parcels of 160 acres, each with a 5-ac building area that includes one residence and ag structures.  An additional 5-ac farm operations center may be located on one of the parcels. |
| JDT | 219 | *0* | *219* | Mesa | 4/22/99 | #1899190 | MLT | 2957-272-00-071 | 1, 2 | One 353-ac parcel with a 12-ac HQ area that includes one residence and ag structures. |

BLM_0167010

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| JDT | 1841 | *1841* | *0* | Mesa | 8/1/06 | #2331034 | MLT | 3215-333-00-032<br>3215-342-00-031<br>3215-043-00-053<br>3215-092-00-054<br>3215-092-00-066<br>3215-093-00-067<br>3215-051-00-060<br>3215-051-00-057<br>3215-052-00-058<br>3215-052-00-059<br>3215-064-00-153<br>3215-082-00-070<br>3215-071-00-151<br>3215-082-00-070 | 1, 2, 3 | This 1841-ac parcel may be divided into five parcels of 740 acres, 560 acres, 160 acres, 238 acres and 143 acres, each with a 5-ac HQ area with one residence and ag structures. |
| Lawson | 320 | *320* | *0* | Mesa | 12/18/09 | #2516530 | MLT | 3219-051-00-008 | 1, 3 | One 320-ac parcel with a 5-ac HQ area that includes a seasonal cabin and ag structures.  No residences. |
| Lawson | 337 | *0* | *337* | Mesa | 12/28/10 | #2557900 | MLT | 2957-323-00-009<br>3213-052-00-001<br>3213-052-00-046<br>3213-052-01-001<br>3213-061-00-138<br>3213-064-00-125 | 1 | One 337-ac parcel with a 10-ac HQ area that includes five residences and ag structures. |
| Lawson | 160 | *0* | *160* | Mesa | 12/22/05 | #2293572 | MLT | 3213-113-00-121 | 1 | One 160-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Mayo | 138 | *0* | *138* | Mesa | 8/15/12 | #2621964 | MLT | 3211-182-00-171 | 1 | One 138-ac parcel with a 3-ac building area that includes one residence and a 2-ac building area that includes ag structures only. |
| Miller | 308 | *0* | *308* | Mesa | 12/20/07<br>4/7/08<br>12/23/08 | #2417046<br>#2439282<br>#2469714 | MLT<br>MLT<br>MLT | 3223-141-00-185 | 1 | One 308-ac parcel with one residence and ag structures. |
| Monument | 160 | *0* | *160* | Mesa | 10/29/0 | #2222492 | MLT | 3209-171-00-252 | 1 | One 280-ac parcel with |

14

BLM_0167011

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Springs | | | | | 12/1/05 | #2290301 | MLT | 3209-171-00-253<br>3209-172-00-312 | | one 5-ac HQ area that includes one residence and ag structures. |
| Mountain Island | 9792 | *6500* | *0* | Mesa | 12/29/78<br>12/31/79<br>12/24/80<br>7/31/86<br>10/17/86<br>10/17/86<br>12/31/02<br>11/21/08 | #1180100<br>#1211941<br>#1244390<br>#1430331<br>#1434948<br>#1434949<br>#2096065<br>#2466160 | TPL<br>COLF<br>TPL<br>TPL<br>CDOW<br>CDOW<br>MLT<br>CDOW | 3215-354-00-035<br>3217-013-00-007<br>3217-014-00-008<br>3217-131-00-009<br>3217-133-00-010<br>3219-171-00-053 | 1 | One 9792-ac parcel with one 5-ac building area that includes one residence and ag structures. |
| Mountain Island | 1660 | *1000* | *0* | Mesa | 12/31/81<br>2/24/82<br>10/17/86<br>10/17/86<br>12/31/02<br>4/25/11 | #1279008<br>#1283706<br>#1434948<br>#1434949<br>#2096064<br>#2570156 | TPL<br>TPL<br>CDOW<br>CDOW<br>MLT<br>MLT | 3219-171-00-053 | 1 | One 1660-ac parcel with a 5-ac building area that includes one residence and ag structures. |
| Mountain Island | 1130 | *0* | *1130* | Mesa | 12/23/99<br>6/3/02<br>12/30/03 | #1933576<br>#2062444<br>#2169930 | MLT<br>MLT<br>MLT | 2957-282-00-078 | 1 | This 1130-ac parcel may be divided into two parcels, one with a 5-ac building area that includes one residence and ag structures. |
| Mountain Island | 574 | *0* | *574* | Mesa | 12/28/99<br>1/15/13 | #1933575<br>#2662786 | MLT<br>MLT | 2957-072-00-037<br>2957-072-00-002 | 1 | One 585-ac parcel with a two building areas that each include one residence and ag structures. |
| Mountain Island | 2061 | *2061* | *0* | Mesa | 12/26/95 | #1741026 | TNC | 3219-054-00-039<br>3219-061-00-006<br>3219-052-00-007<br>3219-063-00-009<br>3213-313-00-033<br>3219-062-00-038<br>3213-314-00-034<br>3213-311-00-031<br>3213-311-00-032<br>3215-364-00-034<br>3217-011-00-006 | 1, 2 | One 2061-ac parcel with one residence and ag structures. |

15

BLM_0167012

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 3219-071-00-040 | | |
| Mountain Island | 1775 | *0* | *1775* | Mesa | 12/26/95 | #1741026 | TNC | 3215-241-00-028 3215-243-00-029 3215-252-00-030 3213-183-00-029 3213-184-00-024 3213-183-00-013 | 1, 2 | One 1775-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Mountain Island | 790 | *0* | *790* | Mesa | 12/24/96 12/30/03 6/28/04 | #1783031 #2169931 #2199262 | MLT MLT MLT | 2957-243-00-081 | 1 | One 790-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Mountain Island | 888 | *200* | *688* | Mesa | 12/23/99 | #1933574 | MLT | 2955-173-00-003 2955-152-00-002 | 1 | One 888-ac parcel with no building areas.  One airstrip and adjacent hanger allowed. |
| Mountain Island | 361 | *0* | *361* | Mesa | 12/6/07 | #2415104 | MLT | 2957-321-00-070 2957-321-00-033 2957-324-00-026 | 1 | One 223-ac and one 58-ac parcel, each with a 5-ac building area that includes one residence and ag structures. |
| Mountain Island | 314 | *0* | *150* | Grand, UT | 12/11/98 | #446562 | MLT | T20S R26E SLM, S32: Lots 2, 3, SW4NW4, N2SW4, NW4SE4, SE4NW4,SW4NE4 | 1 | One 314-ac parcel with two 3-ac building areas that each include two residences and ag structures. |
| Mountain Island | 848 | *0* | *848* | Grand, UT | 12/11/98 | #446568 | MLT | T21S, R26E, SLM, S17: E2SW4, SW4SE4; S20: NE4NW4, W2NE4, S2SE4, Lots 3,4; S29: NW4NE4, NE4NW4, NW4SW4, Lot 1; S30:E2SE4, SW4SE4 | 1 | One 848-ac parcel with a 5-ac HQ area that includes one residence and ag structures; one cabin allowed elsewhere on the property. |
| Smith | 560 | *200* | *360* | Mesa | 12/19/97 | #1825979 | MLT | 3215-053-00-012 | 1 | This 560-ac parcel may be divided into a 200-ac |

16

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | parcel and a 360-ac parcel, each with a 5-ac HQ area with one residence and ag structures.  An airstrip is allowed. |
| Snyder Hole | 300 | *0* | *300* | Mesa | 12/23/08 | #2469716 | MLT | 3223-151-00-207 3223-152-00-208 | 1 | One 200-ac parcel and one 100-ac parcel.  No building areas. |
| Tipping, Power, Patterson | 680 | *0* | *680* | Mesa | 12/7/10 | #2555647 | CDOW | 3225-172-00-003 | 1, 2, 3 | One 675-ac parcel with no building areas and one 5-ac parcel with one residence and ag structures. |
| Tipping, Power, Patterson | 1620 | *1620* | *0* | Mesa | 10/15/08 | #2461806 | CDOW | 3219-241-00-024 3219-134-00-056 3219-133-00-021 3219-132-00-055 3219-132-00-019 3219-131-00-057 3219-123-00-016 3219-114-00-058 3219-154-00-061 3221-191-00-089 3221-183-00-052 | 1, 2, 3 | This 1620-ac parcel may be divided into three parcels, none smaller than 320 acres.  No building areas. |
| Van Loan | 109 | *0* | *109* | Mesa | 4/22/99 | #1899190 | MLT | 2957-233-00-062 | 1, 2 | One 109-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Wise, Treece | 381 | *0* | *381* | Mesa | 9/10/99 12/15/00 8/16/05 12/15/06 | #1919841 #1977028 #2292694 #2354334 | MLT MLT MLT MLT | 2957-273-00-079 | 1 | One 381-ac parcel with a 12-ac HQ area that includes one residence and ag structures. |
| Wise & Treece Petroleum | 760 | *0* | *760* | Mesa | 12/18/01 8/16/05 | #2033406 #2292694 | MLT MLT | 2957-341-00-080 | 1 | One 760-ac parcel with a 5-ac building area that includes one residence and ag structures.  An 80-ac parcel may be divided from this parcel and |

BLM_0167014

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | added to the adjacent north property. The easement would remain in place. |
| **Total CE Acres:** | 44,438 | *20,076* | *20,246* | | | | | | | |
| **Total Private Land Acres** (*per* USFWS): | | *27,283* | *64,275* | | | | | | | |
| **CE Percent:** | | *74%* | *31%* | | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements: The conservation values must be sustained in perpetuity. Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover. Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property. Surface mining is prohibited. Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted. Noxious weeds and invasive plant species must be controlled. Water rights are permanently attached to the property. Surface disturbance is prohibited. Industrial uses are prohibited. Commercial uses must be consistent with the conservation values. Trash accumulation is prohibited. Motor vehicle use is restricted. Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies. A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:

| | | |
|---|---|---|
| CCALT | = | Colorado Cattlemen's Agricultural Land Trust |
| CDOW | = | State of Colorado, Department of Natural Resources, *formerly* Colorado Division of Wildlife, *now* Colorado Parks and Wildlife |
| COLF | = | Colorado Open Land Foundation |
| MLT | = | Mesa County Land Conservancy *dba* Mesa Land Trust |
| TNC | = | The Nature Conservancy |
| TPL | = | Trust for Public Lands |

BLM_0167015

Conservation Easements on Private Land in the Piñon Mesa Area



BLM_0167016

Critical Habitat in Unit 2, Piñon Mesa

Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules    2565



(8) Unit 3: San Miguel Basin: Montrose, San Miguel, and Ouray Counties, Colorado.

(i) *General Description*: 67,084 ha (165,769 ac); 9.7 percent of all critical habitat.

(ii) Map of Unit 3, San Miguel Basin: Montrose, San Miguel, and Ouray Counties, Colorado, follows:



**Unit 3:**
**San Miguel Basin**

BLM_0167018

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 3:  San Miguel Basin

| Current Owner | Total CE Acres | *Acres in Occupied Habitat* | *Acres in Unocc. Habitat* | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity *(HQ = headquarters)* |
|---|---|---|---|---|---|---|---|---|---|---|
| ALC | 459 | *421* | *0* | San Miguel | 6/10/11 | #418468 | CDOW | 4557-071-00-070 4557-073-00-001 | 1, 2, 3 | One 459-ac parcel with a 1-ac building area that includes one residence and ag structures. |
| Barrett | 1200 | *619* | *0* | San Miguel | 9/11/03 5/18/05 | #360135 #374901 | CCALT CCALT | 4555-101-00-005 4555-112-00-006 | 1, 2, 3 | One 1200-ac parcel with two 5-ac building areas that each include one residence and ag structures. |
| Bray | 1928 | *862* | *0* | San Miguel | 11/20/06 11/29/06 11/26/07 12/24/08 12/31/09 | #388559 #388660 #399059 #405178 #410566 | CCALT CCALT CCALT CCALT CCALT | 4555-212-00-014 4555-212-00-015 4555-212-00-016 4555-152-00-017 | 1, 2, 3 | One 1928-ac parcel with ag structures and one hunting cabin.  No residences. |
| Cabrera | 321 | *280* | *0* | | 5/26/00 | #334479 | SMCF | 4523-024-06-001 | 1, 3 | One 321-ac parcel with a 5-ac building area that includes one residence and ag structures. |
| CD Conservation | 1249 | *1167* | *0* | | 12/31/03 12/30/05 12/28/06 12/21/07 12/21/07 | #363144 #380645 #389248 #398986 #398987 | TLR and CDOW | 4523-221-07-002 4523-154-07-001 4523-153-00-080 4523-152-06-001 | 1, 2, 3 | One 760-ac parcel and one 486-ac parcel.  No building areas.  No residences. |
| Dallas Divide | 520 | *0* | *520* | San Miguel Ouray | 10/10/06 10/10/06 | #387558 #193134 | TNC TNC | San Miguel: 4303-311-00-007 Ouray: 4303-321-00-148 4303-291-00-149 | 1, 3 | One 520-ac parcel with a 6-ac HQ area and a 3-ac building area that each include one residence and ag structures. |
| Dallas Divide | 549 | *0* | *549* | San Miguel Ouray | 12/20/07 12/20/07 | #398969 #196793 | TNC TNC | San Miguel: 4303-312-04-004 Ouray: 4303-303-16-001 | 1, 3 | One 549-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |

BLM_0167019

| Dallas Divide | 409 | 0 | 300 | San Miguel Ouray | 12/21/07 12/21/07 | #398968 #196794 | TNC TNC | San Miguel: 4519-062-00-006 Ouray: 4303-323-00-001 | 1, 3 | This 409-ac parcel may be divided into two parcels of at least 35 acres. Each may have a 5-ac building area that includes one residence and ag structures. |
| Double E Bar | 35 | 0 | 35 | San Miguel | 12/21/07 | #398968 | TNC | 4519-062-00-007 | 1, 3 | One 35-ac parcel with a 5-ac building area that includes one residence. |
| Herndon | 1240 | 369 | 0 | San Miguel | 12/28/00 12/28/00 | #338869 #338871 | SMCF SMCF | 4559-302-00-021 | 1, 2, 3 | One 1240-ac parcel with a 10-ac HQ area that includes one residence and ag structures. |
| Hughes, Beaver Mesa | 2082 | 2060 | 0 | San Miguel | 12/27/07 12/4/08 8/14/09 11/17/11 | #399060 #404920 #408346 #420621 | CCALT CCALT CCALT CCALT | 4559-233-00-152 4559-144-00-054 4559-224-00-055 4559-141-01-007 | 1, 3 | This 2082-ac parcel may be divided into two parcels of at least 500 acres. Four building areas each include one residence and ag structures. |
| Kelly | 1034 | 940 | 0 | San Miguel | 12/19/06 12/20/06 11/25/08 12/10/08 | #389097 #389116 #404810 #404998 | SMCF SMCF SMCF SMCF | 4529-311-00-017 4529-311-00-018 | 1, 2, 3 | One 1034-ac parcel with a 5-ac building area that includes one residence and ag structures. |
| O2B29 | 770 | 220 | 0 | San Miguel | 6/25/01 6/27/03 7/29/04 | #342219 #358323 #368117 | CCALT CCALT CCALT | 4555-262-00-018 | 1, 2, 3 | One 770-ac parcel from which a 35 acre parcel may be divided that includes one residence. |
| PEMF | 82 | 0 | 82 | | 5/26/00 | #334479 | SMCF | 4523-012-06-006 | 1, 3 | One 82-ac parcel that includes one residence and ag structures. |
| Young* | 365 | 0 | 0 | San Miguel | 6/23/03 7/12/01 7/12/01 | #358375 #342692 #342693 | CCALT CCALT CCALT | 4525-183-00-091 | 1, 2, 3 | One 365-ac parcel with no building areas. No residences. |
| **Total CE Acres:** | **12,243** | **6,938** | **1,486** | | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | **28,218** | **20,117** | | | | | | | |
| **CE Percent:** | | **25%** | **7%** | | | | | | | |

BLM_0167020

*Young:  Not within USFWS mapped habitat, but the conservation easement states that Gunnison sage-grouse are on the property.

Management Requirements:

1.  Standard management requirements for conservation easements:  The conservation values must be sustained in perpetuity.  Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover.  Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property.  Surface mining is prohibited.  Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted.  Noxious weeds and invasive plant species must be controlled.  Water rights are permanently attached to the property.  Surface disturbance is prohibited.  Industrial uses are prohibited.  Commercial uses must be consistent with the conservation values.  Trash accumulation is prohibited.  Motor vehicle use is restricted.  Roads and driveways are restricted and cannot be paved.
2.  This easement received funding from (or was donated to) one or more state or federal agencies.  A five-year management plan is required by either the State of Colorado or the NRCS.
3.  Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:

| | | |
|---|---|---|
| CCALT | = | Colorado Cattlemen's Agricultural Land Trust |
| CDOW | = | State of Colorado, Department of Natural Resources, *formerly* Colorado Division of Wildlife, *now* Colorado Parks and Wildlife |
| COL | = | Colorado Open Lands |
| SMCF | = | San Miguel Conservation Foundation |
| TLR | = | Trust for Land Restoration |

BLM_0167021

Conservation Easements on Private Land in the San Miguel Basin



BLM_0167022

Critical Habitat in Unit 3, San Miguel Basin

**2566**   Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules



(9) Unit 4: Cerro Summit-Cimarron-Sims Mesa: Montrose, Ouray, and Gunnison Counties, Colorado.

(i) *General Description:* 25,377 ha (62,708 ac); 3.7 percent of all critical habitat.

(ii) Map of Unit 4, Cerro Summit-Cimarron-Sims Mesa: Montrose, Ouray, and Gunnison Counties, Colorado, follows:

**Unit 4:**
**Cerro Summit -**
**Cimarron - Sims Mesa**



BLM_0167024

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 4:  Cerro Summit-Cimarron-Sims Mesa

| Current Owner | Total CE Acres | Acres in Occupied Habitat | Acres in Unocc. Habitat | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity (HQ = headquarters) |
|---|---|---|---|---|---|---|---|---|---|---|
| Allison | 80 | 0 | 80 | Montrose | 12/31/02 | #682438 | BCRLT | 3771-074-00-012 | 1 | One 80-ac parcel with no building areas.  No structures. |
| Collins | 324 | 0 | 325 | Gunnison | 9/12/07 | #578716 | BCRLT | 3987-000-00-006 | 1 | One 324-ac parcel with a 3-ac HQ area that includes three residences and ag structures. |
| Collins | 155 | 155 | 0 | Gunnison | 12/21/06 | #571843 | BCRLT | 3987-000-00-018 | 1, 3 | One 155-ac parcel with a 3-ac building area that includes two residences and ag structures, and a 5-ac building area that includes one residence. |
| Deming Kinikin | 140 | 0 | 140 | Montrose | 12/13/04 | #729991 | BCRLT | 3991-123-00-001 | 1 | One 70-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Denham Kinikin | 149 | 0 | 149 | Montrose | 12/13/07 | #784420 | BCRLT | 3991-104-00-023 | 1 | One 149-ac parcel with two 3-ac building areas that each include one residence and ag structures. |
| EGR | 1394 | 1394 | 0 | Montrose | 12/26/03 | #714148 | RMEF | 3987-071-00-003 | 1 | One 1394-ac parcel with ag structures only.  No residences. |
| Farnsworth | 41 | 41 | 0 | Montrose | 9/13/06 | #761261 | BCRLT | 3987-262-00-003 | 1 | One 41-ac parcel with a 3-ac HQ area that includes one residence and ag |

28

BLM_0167025

| | | | | | | | | | | structures, and one 0.5-ac historic homestead area that includes a seasonal use only residence. |
|---|---|---|---|---|---|---|---|---|---|---|
| Hale | 110 | *0* | *110* | Montrose | 11/28/05 12/29/06 | #747350 #765676 | BCRLT BCRLT | 3771-292-00-042 | 1 | One 110-ac parcel with a 3-ac building area that includes one residence and ag structures. |
| Hale | 170 | *0* | *170* | Montrose | 10/14/10 | #818545 | BCRLT | 3769-244-00-064 | 1 | One 170-ac parcel with no building areas.  No structures. |
| Howell | 1164 | *1164* | *0* | Montrose | 6/11/99 | #652864 | BCRLT | 3989-111-00-020 3989-111-00-023 | 1 | One 1124-ac parcel with two 5-ac building areas that each include one residence. One area may include ag structures.  Also one 40-ac parcel with a 5-ac building area that includes on residence. |
| Mazzia | 333 | *0* | *333* | Montrose | 12/30/96 | #624155 | BCRLT | 3771-204-00-017 3771-291-00-039 | 1 | One 333-ac parcel that may be divided into two parcels, each with a 4-ac building area that includes one residence and ag structures. |
| Mazzia | 200 | *0* | *200* | Montrose | 7/2/01 | #675709 | BCRLT | 3771-201-00-011 | 1 | One 200-ac parcel with a 2-ac building area that includes one residence and ag structures. |
| Muhr | 75 | *0* | *75* | Montrose | 8/23/99 9/16/99 8/15/00 12/4/01 | #655357 #656119 #665785 #681562 | TCF to NPS to NPS NPS | 3771-092-00-009 3771-093-00-012 | 1, 2 | One 37-ac parcel and one 38-ac parcel, each with a building area that includes one |

BLM_0167026

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 9/15/06<br>6/21/07<br>12/13/11 | #763494<br>#776025<br>#830514 | TCF<br>TCF<br>TCF | | | residence. |
| Perrin | 120 | *120* | *0* | Montrose | 12/26/07 | #784949 | BCRLT | 3987-224-00-025 | 1 | One 120-ac parcel with a 3-ac building area that includes two residences and ag structures, and a 1-ac building area that includes one residence. |
| Sanburg | 46 | *0* | *46* | Montrose | 12/4/01 | #681562 | NPS | 3719-294-00-001 | 1 | One 46-ac parcel with no building areas.  No structures. |
| Sanburg | 2146 | *0* | *2146* | Montrose | 8/23/99<br>9/16/99<br>8/15/00<br>12/4/01<br>9/15/06<br>6/21/07<br>12/13/11 | #655357<br>#656119<br>#665785<br>#681562<br>#763494<br>#776025<br>#830514 | TCF<br>to NPS<br>to NPS<br>NPS<br>TCF<br>TCF<br>TCF | 3771-081-00-008<br>3719-251-00-006<br>3719-264-00-001 | 1, 2 | One 2119-ac parcel with no building areas, no structures and one gravel pit. Also one 27-ac parcel with a building area that includes one residence and ag structures. |
| Simmons | 400 | *400* | *0* | Gunnison | 12/16/02<br>11/17/03 | #526476<br>#536743 | CCALT<br>CCALT | 3987-000-00-023<br>3985-000-00-042 | 1 | One 400-ac parcel with a HQ area that includes residences and ag structures. |
| Sitts, King, Woodland | 39 | *39* | *0* | Montrose | 11/15/04 | #728470 | BCRLT | 3993-181-00-025<br>3993-181-00-026<br>3993-181-00-027 | 1 | Three parcels of 16, 11 and 11 acres, separately owned, each with a 1-ac building area that includes one residence and ag structures. |
| Stoney Point | 680 | *682* | *0* | Montrose | 12/24/03 | #714198 | BCRLT | 3989-084-00-011<br>3989-053-00-007 | 1, 3 | One 680-ac parcel with two 3-ac building areas that each include one residence |

30

BLM_0167027

| | | | | | | | | | and ag structures. |
|---|---|---|---|---|---|---|---|---|---|
| **Total CE Acres:** | 7766 | *3995* | *3774* | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | *28,218* | *20,117* | | | | | | |
| **CE Percent:** | | *14%* | *19%* | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements: The conservation values must be sustained in perpetuity. Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover. Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property. Surface mining is prohibited. Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted. Noxious weeds and invasive plant species must be controlled. Water rights are permanently attached to the property. Surface disturbance is prohibited. Industrial uses are prohibited. Commercial uses must be consistent with the conservation values. Trash accumulation is prohibited. Motor vehicle use is restricted. Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies. A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:
    BCRLT  =  Valley Land Conservancy *dba* Black Canyon Regional Land Trust
    CCALT  =  Colorado Cattlemen's Agricultural Land Trust
    NPS    =  National Park Service
    RMEF   =  Rocky Mountain Elk Foundation
    TCF    =  The Conservation Fund

BLM_0167028

Conservation Easements on Private Land in the Cerro Summit-Cimarron-Sims Mesa Area



BLM_0167029

Critical Habitat in Unit 4, Cerro Summit-Cimarron-Sims Mesa



Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules   2567

(10) Unit 5: Crawford: Delta, Montrose, and Gunnison Counties, Colorado.

(i) *General Description*: 39,304 ha (97,123 ac); 5.7 percent of all critical habitat.

(ii) Map of Unit 5, Crawford: Delta, Montrose, and Gunnison Counties, Colorado, follows:

33

**Unit 5:**
**Crawford**



BLM_0167031

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 5:  Crawford

| Current Owner | Total CE Acres | Acres in Occupied Habitat | Acres in Unocc. Habitat | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity (HQ = headquarters) |
|---|---|---|---|---|---|---|---|---|---|---|
| Adam | 313 | 0 | 313 | Delta | 9/20/05<br>12/28/06<br>12/17/07 | #595715<br>#610883<br>#621565 | BCRLT<br>BCRLT<br>BCRLT | 3501-173-00-006<br>3501-173-00-006<br>3501-173-00-006 | 1 | One 313-ac parcel with a 3-ac HQ area that includes two residences and ag structures. |
| Ayer | 525 | 0 | 525 | Montrose | 12/24/08 | #797911 | COL | 3717-013-00-012 | 1, 3 | One 525-ac parcel with no building areas.  Three hunting cabins allowed. |
| Ayer | 640 | 640 | 0 | Montrose | 12/27/10 | #820821 | COL | 3717-132-00-005 | 1, 3 | One 640-ac parcel with two 7-ac building areas that each include one residence and ag structures. |
| Bendele | 65 | 0 | 65 | Montrose | 11/10/04 | #728496 | BCRLT | 3503-302-00-012 | 1 | One 65-ac parcel with a 2-ac HQ area that includes two residences and ag structures. |
| Burke | 50 | 0 | 50 | Delta | 7/25/08 | #627555 | COL | 3503-202-01-001<br>3503-202-01-003<br>3503-202-01-002<br>3503-201-00-010 | 1 | One 50-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Canyon Ranch | 694 | 0 | 694 | Delta | 12/31/96 | #501409 | BCRLT | 3451-253-00-004<br>3451-252-00-003<br>3451-252-00-002<br>3449-303-00-004<br>3449-301-00-008<br>3449-311-00-008 | 1 | One 659-ac parcel with a 10-ac HQ area that includes two residences and ag structures, and one 35-ac parcel that includes one residence. |
| Canyon Ranch | 1032 | 0 | 1032 | Delta | 12/28/01 | #550675 | COL | 3451-261-00-002<br>3451-202-00-003<br>3451-201-00-001 | 1 | One 1032-ac parcel with a HQ area and a second building area that each include one residence and ag structures. |
| Clagett | 155 | 0 | 155 | Delta | 8/16/04<br>11/17/06 | #582665<br>#609837 | BCRLT<br>BCRLT | 3501-154-00-020<br>3501-154-00029 | 1 | One 115-ac parcel and one 40-ac parcel, each |

35

BLM_0167032

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 3501-154-00-028<br>3501-154-00-006 | | with a 2-ac HQ area that includes one residence and ag structures. |
| Gallob | 142 | 0 | 142 | Delta | 12/16/05 | #598756 | BCRLT | 3503-201-01-003<br>3503-201-01-002<br>3503-212-01-006<br>3503-212-01-007 | 1 | Four 35-ac parcels, each with a 2-ac HQ area that includes one residence and ag structures. |
| Gates Camp | 324 | 0 | 324 | Montrose | 10/19/10 | #818657 | BCRLT | 3715-353-00-019<br>3773-022-00-003 | 1 | One 324-ac parcel with a 3-ac HQ area that includes two seasonal residences and ag structures. |
| Groome | 100 | 0 | 100 | Delta | 12/20/05 | #598878 | BCRLT | 3501-174-00-004 | 1 | This 100-ac parcel may be split into two parcels. Each parcel may have a 3-ac HQ area that includes one residence and ag structures. |
| Groome | 159 | 0 | 159 | Delta | 12/21/06<br>12/20/07 | #610721<br>#621605 | BCRLT<br>BCRLT | 3501-171-00-001 | 1 | One 159-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Hart | 1912 | 0 | 1912 | Montrose | 12/17/07<br>12/19/08<br>12/09/09<br>4/7/10<br>3/2/11<br>6/11/12 | #784506<br>#797807<br>#809144<br>#812702<br>#822640<br>#835906 | CCALT<br>CCALT<br>CCALT<br>CCALT<br>CCALT<br>CCALT | 3503-301-00-031 | 1 | One 1912-ac parcel with a 1-ac area and a 3.5-ac area for ag structures only.  No residences. |
| Hart | 66 | 66 | 0 | Montrose | 11/24/04<br>12/2/04 | #729250<br>#729550 | BCRLT<br>BCRLT | 3715-332-00-010<br>3715-283-00-019 | 1 | One 66-ac parcel with a 2-ac HQ area that includes one residence and ag structures. |
| Jackson | 109 | 0 | 109 | Montrose | 12/30/09 | #809786 | BCRLT | 3501-291-00-033 | 1 | One 109-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Klaseen | 400 | 0 | 400 | Delta | 12/3/09<br>10/15/10 | #639460<br>#646084 | COL<br>COL | 3449-314-00-011<br>3499-124-00-002<br>3499-122-00-001 | 1 | One 400-ac parcel with a 3-ac HQ area and a 3-ac building area that each |

BLM_0167033

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | include one residence and ag structures. |
| Klaseen | 970 | *430* | *540* | Montrose | 12/30/09 12/27/10 6/6/11 | #809822 #820797 #825405 | COL COL COL | 3717-023-00-002 | 1, 3 | One 970-ac parcel with a 10-ac HQ area that includes one residence and ag structures. |
| LeValley | 420 | *420* | *0* | Montrose | 3/21/13 | #844656 | BCRLT | 3717-221-01-005 | 1, 3 | One 420-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| LeValley | 310 | *310* | *0* | Montrose | 9/29/06 | #762028 | CDOW | 3717-221-01-005 | 1, 2, 3 | One 310-ac parcel with no building areas. |
| LeValley | 583 | *583* | *0* | Montrose | 5/11/04 | #719731 | CDOW | 3717-073-00-002 | 1, 2, 3 | One 583-ac parcel with no building areas. |
| McLaughlin | 180 | *0* | *180* | Montrose Gunnison | 3/28/12 | #833685 #612071 | CCALT CCALT | 3715-000-00-012 3715-351-10-002 | 1 | One 180-ac parcel with a 5-ac HQ area that includes two residences and ag structures, and a 2-ac building area that includes one residence. |
| McLaughlin | 80 | *0* | *80* | Montrose | 12/31/07 | #784948 | BCRLT | 3773-021-00-010 3715-354-00-001 | 1 | One 80-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Mesa Ranch | 739 | *739* | *0* | Delta | 12/31/96 | #501406 #630079 | BCRLT BCRLT | 3451-362-00-003 3499-101-00-001 | 1 | One 739-ac parcel with existing ag structures. Residences not specified. |
| Mugford | 123 | *0* | *123* | Delta | 11/16/04 9/30/05 | #585498 #596117 | BCRLT BCRLT | 3501-143-00-019 3501-232-00-015 | 1 | One 123-ac parcel with two 2-ac areas that each include one residence and ag structures. |
| Murray | 67 | *0* | *67* | Montrose | 12/26/06 | #765541 | BCRLT | 3501-223-00-031 | 1 | One 67-ac parcel with a 2-ac HQ area that includes two residences and ag structures. |
| Nelson | 130 | *0* | *130* | Delta Montrose | Fall 2013 | Pending | COL | 3503-203-00-006 | 1 | One 130-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |

BLM_0167034

| Pipher | 81 | 0 | 81 | Montrose | 12/27/05 | #748704 | BCRLT | 3715-211-01-002 | 1 | One 81-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
|---|---|---|---|---|---|---|---|---|---|---|
| Pipher | 142 | 0 | 142 | Montrose | 12/18/06 12/18/06 9/21/04 | #765299 #765298 #583599 | BCRLT BCRLT BCRLT | 3773-043-00-012 3773-081-00-015 | 1 | One 142-ac parcel with a 5-ac HQ area that includes one residence, two seasonal cabins and ag structures, and a 3-ac building area that includes one residence and ag structures. |
| Pipher | 133 | 0 | 133 | Montrose | 12/27/07 | #784836 | BCRLT | 3715-201-00-028 | 1 | One 133-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Ritschard | 85 | 0 | 85 | Montrose | 12/27/07 | #784835 | BCRLT | 3773-042-00-014 | 1 | One 85-ac parcel with a 1-ac HQ area that includes one residence and ag structures. |
| Smith | 85 | 0 | 85 | Montrose | 12/27/06 | #765548 | COL | 3501-282-00-030 | 1 | One 85-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Smith Fork | 159 | 0 | 159 | Delta | 12/29/08 | #631062 | BCRLT | 3447-313-00-003 | 1 | One 159-ac parcel with a 5-ac HQ area that includes one residence and ag structures and a 3-ac area that includes two residences. |
| Stahl | 41 | 0 | 41 | Delta | 11/17/06 | #609836 | BCRLT | 3501-153-00-005 | 1 | One 40-ac parcel with a 2-ac HQ area that includes one residence and ag structures. |
| Tabuteau | 232 | 0 | 232 | Montrose | 12/19/07 | #784625 | COL | 3501-272-00-002 | 1 | One 232-ac parcel with a 5-ac HQ area and a 3-ac area that each include one residence and ag structures. |

BLM_0167035

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Todd | 809 | 282 | 527 | Delta<br>Montrose<br>Delta<br>Montrose<br>Delta | 12/23/08<br>12/29/08<br>12/30/09<br>12/30/09<br>12/29/10 | #630996<br>#797977<br>#639994<br>#809814<br>#647861 | COL<br>COL<br>COL<br>COL<br>COL | 3499-244-00-005<br>3501-193-00-011<br>3501-193-00-010<br>3501-192-00-005<br>3499-244-00-008<br>3499-241-00-007<br>3501-182-00-014 | 1 | One 809-ac parcel with a 7-ac HQ area that includes two residences and ag structures. This parcel may be divided into two parcels no smaller than 150 acres. |
| Zeldenthuis | 80 | 0 | 80 | Delta | 12/29/05 | #599098 | BCRLT | 3501-202-00-010 | 1 | One 80-ac parcel with no building areas and no structures. |
| **Total CE Acres:** | **12,135** | **3,470** | **8,665** | | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | **8,481** | **44,552** | | | | | | | |
| **CE Percent:** | | **41%** | **20%** | | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements: The conservation values must be sustained in perpetuity. Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover. Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property. Surface mining is prohibited. Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted. Noxious weeds and invasive plant species must be controlled. Water rights are permanently attached to the property. Surface disturbance is prohibited. Industrial uses are prohibited. Commercial uses must be consistent with the conservation values. Trash accumulation is prohibited. Motor vehicle use is restricted. Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies. A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:

| | | |
|---|---|---|
| BCRLT | = | Valley Land Conservancy *dba* Black Canyon Regional Land Trust |
| CCALT | = | Colorado Cattlemen's Agricultural Land Trust |
| CDOW | = | State of Colorado, Department of Natural Resources, *formerly* Colorado Division of Wildlife, *now* Colorado Parks and Wildlife |
| COL | = | Colorado Open Lands |

BLM_0167036

Conservation Easements on Private Land in the Crawford Area



BLM_0167037

## Critical Habitat in Unit 5, Crawford



Gunnison Sage-grouse Critical Habitat
Unit 5: Crawford
Delta, Montrose, and Gunnison Counties, Colorado

(11) Unit 6: Gunnison Basin: Gunnison, Saguache, Montrose, and Hinsdale Counties, Colorado.

(i) *General Description:* 298,173 ha (736,802 ac); 43.2 percent of all critical habitat.

(ii) Map of Unit 6, Gunnison Basin: Gunnison, Saguache, Montrose, and Hinsdale Counties, Colorado, follows:

41

BLM_0167038



**Unit 6:**
**Gunnison Basin**

BLM_0167039

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 6:  Gunnison Basin

| Current Owner | Total CE Acres | Acres in Occupied Habitat | Acres in Unocc. Habitat | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity (HQ = headquarters) |
|---|---|---|---|---|---|---|---|---|---|---|
| Alexander | 590 | 590 | 0 | Gunnison | 12/19/03<br>12/30/09<br>12/30/09 | #537905<br>#596113<br>#596114 | RMEF<br>RMEF<br>RMEF | 3983-000-00-086 | 1 | One 590-ac parcel with no building areas. |
| Allen | 1190 | 1190 | 0 | Gunnison | 11/14/03<br>11/14/03<br>11/14/03 | #536700<br>#536701<br>#546702 | COL<br>COL<br>COL | 3515-000-00-040<br>3517-000-00-016<br>3517-000-00-018<br>3701-000-00-202<br>3699-000-00-123 | 1, 2, 3 | One 1070-ac parcel, one 40-ac parcel, one 40-ac parcel added to an adjacent parcel, and one 80-ac parcel added to another adjacent parcel. No building areas.  No residences. |
| Altman | 36 | 0 | 36 | Gunnison | 12/29/06 | #571973 | BCRLT | 3779-000-01-003 | 1 | One 36-ac parcel with no building areas. |
| Anders | 874 | 874 | 0 | Gunnison | 10/24/00 | #507021 | CBLT | 3435-000-00-027 | 1 | One 874-ac parcel with a HQ area that includes two residences and ag structures. |
| Ballantyne | 560 | 560 | 0 | Gunnison | 6/30/06 | #566574 | CDOW | 3789-000-00-035<br>3973-000-00-004 | 1, 2, 3 | One 560-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Bear Ranch | 910 | 910 | 0 | Gunnison | 12/21/07<br>12/21/07<br>12/21/07<br>12/21/07<br>12/21/07 | #581193<br>#581194<br>#581195<br>#581196<br>#581197 | TNC<br>TNC<br>TNC<br>TNC<br>TNC | 3781-000-00-022 | 1, 3 | Five 182-ac parcels, each with a 5-ac HQ area that includes one residence and ag structures. |
| Black Mesa Land | 1687 | 0 | 1687 | Montrose<br><br><br><br><br><br>Gunnison | 11/11/03<br>8/11/04<br>11/9/05<br>12/14/07<br>12/31/08<br>12/13/10<br>11/9/05<br>11/22/06<br>12/14/07 | #712528<br>#725499<br>#746491<br>#784493<br>#798038<br>#820354<br>#560557<br>#571155<br>#581049 | BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT<br>BCRLT | 3773-351-00-025<br><br><br><br><br><br>3777-000-00-008 | 1 | One 1687-ac parcel with no building areas. |

43

BLM_0167040

| | | | | | 12/30/08 | #588351 | BCRLT | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 12/14/09 | #595993 | BCRLT | | | |
| | | | | | 12/14/10 | #602553 | BCRLT | | | |
| | | | | | 11/4/11 | #609307 | BCRLT | | | |
| Callihan | 254 | *254* | *0* | Saguache | 4/8/11 | #369176 | CCALT | 3969-201-00-040 | 1, 2, 3 | One 254-ac parcel with a 10-ac HQ area that includes one residence and ag structures. |
| Cochetopa Creek | 1100 | *1100* | *0* | Saguache | 12/14/07 | #360693 | CCALT | 4325-153-00-009 | 1 | One 1100-ac parcel with a 20-ac HQ area that includes up to five residences, four cabins and ag structures, and a 15-ac HQ that includes three residences and ag structures.  This parcel may be divided into either a 940-ac parcel and a 160-ac parcel, or two parcels of at least 500 acres. |
| | | | | | 12/27/10 | #368381 | CCALT | | | |
| Cole | 307 | *307* | *0* | Gunnison | 12/21/99 | #498780 | CCALT | 3969-000-00-022 | 1, 2, 3 | One 307-ac parcel with a HQ area that includes one residence and ag structures. |
| | | | | Saguache | 12/21/99 | #328878 | CCALT | 3969-161-00-016 | | |
| Cross Bar | 643 | *0* | *643* | Saguache | 12/20/10 | #368328 | COL | 3963-154-00-008 | 1, 2 | One 643-ac parcel with a 2-ac area and a 5-ac area, each with one residence and ag structures. |
| | | | | | | | | 3963-224-00-018 | | |
| Curecanti | 8884 | *0* | *8884* | Gunnison | 3/10/98 | #482312 | RMEF | 3779-000-00-026 | 1 | One 8884-ac parcel with a HQ area that includes one residence and ag structures, a 10-ac area with one residence and ag structures, and a defined development area for up to four residences or three residences and a lodge. Also one remote |
| | | | | | 12/14/00 | #507686 | RMEF | | | |

BLM_0167041

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | seasonal cabin. |
| Double Heart | 872 | *872* | *0* | Gunnison | 6/23/98 | #484625 | TNC | 3969-000-00-009<br>3793-000-00-028<br>3793-000-00-042 | 1, 2, 3 | One 872-ac parcel with a HQ area that includes one residence and ag structures. |
| Double Heart | 360 | *360* | *0* | Gunnison<br>Saguache | 12/18/03<br>12/18/03 | #537679<br>#343697 | RMEF<br>RMEF | 3967-000-00-011<br>3967-171-00-006 | 1 | One 360-ac parcel with a 5-ac HQ area that includes three residences and ag structures. |
| Eagle Ridge | 4351 | *4351* | *0* | Gunnison | 3/16/94<br>1/27/00<br>1/27/00 | #450091<br>#499356<br>#499359 | (none) | 3513-000-00-002<br>3515-000-00-024<br>3515-000-02-001<br>3515-000-03-001<br>3515-000-01-001 | 1 | One 4351-ac parcel with two residences, two cabins and ag structures. Although not a traditional CE, the recorded "Conservation Covenants" restrict subdivision and development in perpetuity. |
| Elze | 184 | *184* | *0* | Gunnison | 11/14/03 | #536700 | COL | 3515-000-00-034 | 1, 2, 3 | One 184-ac parcel with a 5-ac HQ area that includes one residence and ag structures, and a 6-ac area for ag structures only. The 5-ac area may be separated. |
| Elze | 113 | *113* | *0* | Gunnison | 11/14/03 | #536700 | COL | 3701-000-00-162 | 1, 2, 3 | One 113-ac parcel with a 10-ac HQ area and a 5-building area that each include one residence and ag structures. The 5-ac area may separated. |
| Field | 594 | *594* | *0* | Gunnison | 10/20/98 | #489010 | CCALT | 3791-000-00-049 | 1, 2, 3 | One 594-ac parcel with a HQ area that includes two residences and ag structures. |
| Field | 160 | *160* | *0* | Gunnison | 3/28/00 | #500587 | CCALT | 3791-000-00-006 | 1, 2, 3 | One 160-ac parcel with a HQ area that includes one residence and ag structures. |

BLM_0167042

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Flying W | 2433 | 2433 | 0 | Gunnison | 12/20/02 | #526681 | TNC | 4053-000-00-109 | 1, 3 | One 2433-ac parcel with a 10-ac HQ area and two 5-ac building areas, each including one residence and ag structures. |
| Fulton | 397 | 0 | 397 | Gunnison | 5/15/07 8/21/08 | #575310 #585961 | CCALT CCALT | 3781-000-00-015 3781-000-00-012 | 1, 2 | One 397-ac parcel with a HQ area that includes one residence, ag structures and one small seasonal cabin. |
| Fuyu Farms | 97 | 97 | 0 | Gunnison | 12/22/00 | #489010 | CCALT | 3791-000-00-006 | 1 | Two parcels of 36 ac and 61 ac, each with a building area that includes one residence and ag structures. |
| Fuyu Farms | 759 | 759 | 0 | Gunnison | 12/29/97 | #480732 | CCALT | 3791-000-00-055 | 1 | One 759-ac parcel with a HQ area that includes one residence and ag structures; up to three residences elsewhere. |
| Gateview | 265 | 0 | 265 | Gunnison | 12/17/97 | #480577 | BLM | 4245-000-00-037 4245-000-00-033 4245-000-00-011 | 1, 2 | One 265-ac parcel with a HQ area that includes three residences and ag structures. |
| Graham | 184 | 184 | 0 | Gunnison | 12/4/12 | #617208 | CBLT | 3787-000-00-104 | 1, 3 | One 184-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Guerrieri | 160 | 160 | 0 | Gunnison | 10/25/99 | #497480 | CCALT | 3439-000-00-012 | 1, 2 | One 160-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Guerrieri Land and Cattle | 115 | 115 | 0 | Gunnison | 12/13/05 | #559345 | COL | 3701-000-00-149 | 1, 2 | One 115-ac parcel with a HQ area that includes ag structures. No residences. |
| Guerrieri Land and Cattle | 112 | 112 | 0 | Gunnison | 11/14/03 | #536700 | COL | 3701-000-00-193 | 1, 2, 3 | One 112-ac parcel with two areas for ag structures only. No residences. |
| Guerrieri | 320 | 320 | 0 | Gunnison | 11/14/03 | #536700 | COL | 3701-000-00-012 | 1, 2, 3 | One 320-ac parcel with |

46

| Ranches | | | | | 11/13/03 | #536707 | COL | | | no building areas. |
|---|---|---|---|---|---|---|---|---|---|---|
| Guerrieri Ranches | 293 | 293 | 0 | Gunnison | 11/14/03 11/14/03 | #536700 #536708 | COL COL | 3701-000-00-041 3701-000-00-192 | 1, 2, 3 | One 293-ac parcel that includes a 27-ac HQ area that includes two residences and ag structures. |
| Gunnison Riverbanks | 384 | 384 | 0 | Gunnison | 12/22/03 3/26/04 | #537873 #540185 | CBLT CBLT | 3699-040-01-001 | 1 | One 384-ac parcel with no building areas. |
| Gunnison Valley | 160 | 160 | 0 | Gunnison | 6/10/13 | #620623 | CPW | 3699-000-00-127 | 1, 2, 3 | One 160-ac parcel with no building areas. |
| Hinkle | 300 | 300 | 0 | Gunnison | 11/14/03 11/14/03 | #536705 #536706 | COL COL | 3437-000-00-017 | 1 | One 300-ac parcel with no building areas. |
| Hollenbeck | 282 | 282 | 0 | Gunnison | 4/23/04 | #541247 | CCALT | 3789-000-00-026 | 1, 2 | One 282-ac parcel with no building areas. |
| Howell | 623 | 623 | 0 | Gunnison | 6/11/99 | #493735 | BCRLT | 4047-000-00-009 | 1 | One 623-ac parcel with three 5-ac building areas that each include one residence and ag structures. |
| Irby | 197 | 197 | 0 | Gunnison | 12/10/03 | #537437 | COL | 3969-000-00-045 | 1, 2 | One 197-ac parcel with a 7-ac HQ area that includes one residence and ag structures. |
| Irby | 456 | 456 | 0 | Gunnison | 6/14/04 9/14/06 | #543071 #569021 | COL COL | 3967-000-00-012 | 1, 2 | One 456-ac parcel with an 8-ac HQ area that includes one residence and ag structures, and a 7-ac area for ag structures only. |
| Irby | 321 | 321 | 0 | Saguache | 6/16/09 | #364476 | COL | 3967-232-00-016 | 1, 2 | One 321-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Kaichen | 243 | 243 | 0 | Gunnison | 5/13/05 9/5/06 | #561376 #569518 | CDOW CDOW | 3979-000-00-003 | 1, 3 | This 243-ac parcel may be divided into two parcels, each with a building area that includes one residence; one also includes four cabins. |
| Knott | 420 | 0 | 420 | Gunnison | 10/29/03 7/21/04 | #536206 #544288 | BCRLT BCRLT | 3777-000-00-004 3779-000-00-009 | 1 | One 420-ac parcel with a 2-ac HQ area that |

47

BLM_0167044

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 8/18/05 10/10/06 | #557054 #570291 | BCRLT BCRLT | | | includes one residence and ag structures. |
| Knott | 120 | *0* | *120* | Gunnison | 10/23/09 | #594746 | BCRLT | 3779-000-00-009 | 1 | One 120-ac parcel with a 1-ac HQ area that includes one seasonal cabin and ag structures. |
| Kruthaupt | 470 | *470* | *0* | Gunnison | 9/19/99 | #496498 | CCALT | 3793-000-00-025 3793-000-00-068 3969-000-00-012 | 1, 2, 3 | One 470-ac parcel with a 5-ac HQ area that includes two residences and ag structures. |
| Lone Oak, 5 Lazy K | 358 | *358* | *0* | Gunnison | 9/15/00 | #505162 | CCALT | 3789-000-00-069 3789-000-00-068 | 1, 2, 3 | One 200-ac and one 158-ac parcel, each with a HQ area that includes a residence and ag structures. |
| Lypps | 1584 | *1584* | *0* | Gunnison | 6/30/06 | #566576 | CDOW | 3789-000-00-043 3973-000-00-002 | 1, 2, 3 | This 1584-ac parcel may be divided into one 1374-ac parcel and six 35-ac parcels. Each 35-ac parcel may have one 5-ac building area with one residence and ag structures; one of these building areas may be 12 acres. |
| Maldarella | 199 | *199* | *0* | Gunnison | 9/29/98 4/14/06 | #487412 #564389 | TNC TNC | 3791-230-00-010 | 1, 2, 3 | One 199-ac parcel with a 5-ac HQ area that includes one residence and ag structures; this 5-ac area may be owned separately. |
| Mathews | 53 | *0* | *53* | Gunnison | 12/26/06 | #571971 | BCRLT | 3779-000-00-012 | 1 | One 53-ac parcel with a 3-ac HQ area that includes one residence and ag structures. |
| Mesa Creek | 400 | *0* | *400* | Montrose | 12/8/10 | #820254 | BCRLT | 3773-331-00-020 | 1 | One 400-ac parcel with no building areas. |
| Mesa Valley | 470 | *470* | *0* | Gunnison | 12/7/99 | #498583 | TNC | 3981-000-00-058 3981-000-00-060 | 1, 3 | One 470-ac parcel with a 2-ac HQ area that includes one residence and ag structures. |

BLM_0167045

| Mill Creek | 320 | *320* | *0* | Gunnison | 11/14/03<br>11/14/03 | #536710<br>#536711 | COL<br>COL | 3437-000-00-088 | 1, 2, 3 | One 320-ac parcel with a 5-ac HQ area that includes one residence and ag structures. This parcel may be divided into two 160-ac parcels, as long as one is adjacent to other ranchland under the same ownership. |
|---|---|---|---|---|---|---|---|---|---|---|
| Miller | 280 | *280* | *0* | Gunnison | 11/14/03 | #536700 | COL | 3515-000-00-046 | 1, 2, 3 | One 280-ac parcel with a 35-ac HQ area that includes two residences and ag structures. |
| Nelson | 150 | *150* | *0* | Gunnison | 3/21/00 | #500432 | CCALT | 3969-000-00-031<br>3967-000-00-014<br>3969-000-00-036 | 1, 2, 3 | One 150-ac parcel with a HQ area that includes two residences and ag structures. |
| Pesnell | 465 | *465* | *0* | Gunnison | 9/26/02<br>4/24/08 | #524120<br>#583502 | COL<br>COL | 3969-000-00-043 | 1, 2, 3 | One 465-ac parcel with a HQ area that includes two cabins and ag structures, and a second area that includes one residence. |
| Peterson | 520 | *520* | *0* | Gunnison | 1/6/99 | #490030 | CCALT | 3791-000-00-028<br>3793-000-00-020<br>3793-000-00-044<br>3793-000-00-019<br>3791-000-00-025 | 1, 2 | One 520-ac parcel with a HQ area that includes ag structures. No residences. |
| Phelps | 248 | *248* | *0* | Gunnison | 9/18/00<br>10/29/07 | #505161<br>#579926 | CCALT<br>CCALT | 3791-000-00-065<br>3791-000-00-067 | 1, 2, 3 | One 147-ac parcel with no building areas, and one 101-ac parcel with a 9-ac HQ area that includes one residence and ag structures. |
| Pinnacles | 705 | *705* | *0* | Gunnison | 12/12/00<br>12/11/03<br>12/12/03<br>11/22/04<br>5/19/11<br>5/19/11 | #507594<br>#537449<br>#537765<br>#548599<br>#605689<br>#605694 | TNC<br>TNC<br>TNC<br>TNC<br>TNC<br>TNC | 3981-000-01-001<br>3981-000-01-002<br>3981-000-01-003<br>3981-000-01-004<br>3981-000-01-005<br>3981-000-01-006<br>3981-000-01-009 | 1, 3 | One 705-ac wildlife habitat parcel aggregated from 20 separate ownerships. Eleven 2-ac building envelopes are clustered within a small area. |

49

| | | | | | | | | 3981-000-01-010<br>3981-000-01-011<br>3981-000-01-012<br>3981-000-01-013<br>3981-000-01-014<br>3981-000-01-015<br>3981-000-01-016<br>3981-000-01-017<br>3981-000-01-018<br>3981-000-01-020<br>3981-000-01-021<br>3981-000-02-001<br>3981-000-02-002<br>3981-000-02-003 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Ranch Properties | 3590 | *3590* | *0* | Gunnison | 12/28/09 | #596062 | TNC | 3437-000-00-089 | 1, 3 | One 3590-ac parcel with a 15-ac HQ area that includes two residences and ag structures, a shooting-structures area for target sports, and two 1-ac areas that include one cabin each. |
| Razor Creek | 117 | *117* | *0* | Gunnison | 12/11/98<br>12/11/98 | #489414<br>#489591 | CCALT<br>CCALT | 3793-000-00-022 | 1, 2, 3 | One 117-ac parcel with a HQ area that includes one residence. |
| Razor Creek | 680 | *680* | *0* | Gunnison | 2/16/89<br>12/6/89<br>10/30/90 | #412579<br>#417641<br>#423522 | CDOW<br>CDOW<br>CDOW | 3969-000-00-039 | 1, 2, 3 | One 680-ac parcel with no building areas. |
| Razor Creek | 150 | *150* | *0* | Saguache | 1/9/01 | #333650 | CCALT | 3969-163-00-012<br>3969-171-00-007 | 1, 2 | One 150-ac parcel with no building areas. |
| Razor Creek | 300 | *300* | *0* | Gunnison | 11/10/05 | #560509 | COL | 3969-000-00-049 | 1, 2, 3 | One 300-ac parcel with a HQ area that includes ag structures only.  No residences. |
| Razor Creek | 430 | *430* | *0* | Gunnison<br>Saguache | 6/13/06<br>6/13/06 | #565966<br>#355484 | COL<br>COL | 3969-000-00-049 | 1, 2, 3 | One 430-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Razor Creek | 760 | *760* | *0* | Saguache<br>Gunnison<br>Saguache | 12/16/08<br>1/24/12<br>1/24/12 | #363293<br>#610907<br>#370969 | COL<br>COL<br>COL | 3969-201-00-040<br>3969-000-00-049<br>3969-201-00-040 | 1, 2, 3 | One 600-ac parcel with a 5-ac and a 7-ac area for ag structures only; no |

BLM_0167047

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | residences. Also one 160-ac parcel with a 10-ac HQ area that includes two residences and ag structures. |
| Redden | 1273 | *1273* | *0* | Gunnison | 7/21/98 11/14/03 11/14/03 11/14/03 1/23/07 1/1/07 | #485799 #536700 #536703 #536704 #572457 #572691 | CCALT COL COL COL COL COL | 3515-000-00-008 3515-000-00-039 | 1, 2, 3 | One 1273-ac parcel with a HQ area that includes two residences and ag structures, two 5-ac areas each with one residence, and a 20-ac area that includes only ag structures. |
| Reserve on the East River | 643 | *643* | *0* | Gunnison | 12/29/06 | #571977 | CBLT | 3435-000-00-068 3435-000-00-050 | 1 | One 640-ac parcel with a 2-ac HQ area that includes ag structures only. No residences. |
| Rivergate, Gorsuch | 1170 | *0* | *1170* | Gunnison | 12/23/97 | #480780 | CF to CCALT | 4051-000-00-079 4051-000-02-004 4051-000-02-011 4051-000-02-012 4051-000-02-013 4051-000-02-014 4051-000-02-015 4051-000-02-016 4245-000-00-036 4245-000-01-001 4245-000-01-002 4245-000-01-003 4245-000-01-004 | 1, 2 | This 1170-ac parcel may be divided into four parcels, each with a building area: a 7-ac area with four residences, two cabins and ag structures; a 7-ac area with 3 residences and ag structures; and two 5-ac areas, each with two residences and ag structures. Also 40 acres may be separated from the larger parcel to be acquired by the adjoining landowner. The CE would still apply. |
| Robbins | 500 | *500* | *0* | Gunnison | 3/31/05 | #552252 | COL | 3785-000-00-004 | 1, 2, 3 | One 500-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Robbins | 487 | *487* | *0* | Gunnison | 11/8/06 | #570730 | COL | 3785-000-00-004 | 1, 2, 3 | One 487-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |

51

BLM_0167048

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Smith | 105 | *0* | *105* | Gunnison | 12/26/06 | #571970 | BCRLT | 3779-000-00-025 | 1 | One 105-ac parcel with two 2-ac areas that each include one residence and ag structures. |
| Snyder | 6698 | *6698* | *0* | Saguache | 12/19/08 | #363242 | CDOW | 4235-116-10-015 | 1, 2, 3 | One 6698-ac parcel with no building areas. |
| Soap Creek | 800 | *0* | *800* | Gunnison | 12/29/98 3/1/00 3/1/00 12/31/08 | #489932 #499974 #499975 #588365 | COL COL COL COL | 3781-000-00-026 3781-000-01-001 3781-000-01-002 3781-000-02-001 3781-000-03-001 | 1 | One 640-ac parcel and four 40-ac parcels, each with a HQ area that includes one residence and ag structures. |
| Taramarcaz | 650 | *650* | *0* | Gunnison | 3/30/00 | #500970 | CCALT | 3793-000-00-049 | 1, 2 | One 650-ac parcel with no building areas. This parcel may be divided into thirds within the immediate family. This right retires with the passing of the senior owner. |
| TEM | 339 | *339* | *0* | Gunnison | 9/24/02 7/17/09 7/17/09 | #524119 #592257 #592258 | COL COL COL | 3969-000-00-054 | 1, 2 | One 339-ac parcel with a HQ area that includes one residence and ag structures. |
| Templeton | 99 | *99* | *0* | Saguache | 9/19/05 | #352214 | COL | 3963-193-00-024 | 1, 2 | One 99-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Tomichi Creek Wetlands | 80 | *0* | *80* | Gunnison | 12/18/03 | #537841 | NRCS | 3787-110-01-005 | 1, 2 | One 80-ac parcel with no building areas. |
| Trampe | 978 | *978* | *0* | Gunnison | 12/19/03 | #537704 | COL | 3517-000-00-037 3435-000-00-041 3435-000-00-058 | 1 | One 978-ac parcel with a 6-ac HQ area that includes one residence and ag structures. |
| Vader | 299 | *299* | *0* | Gunnison | 12/15/03 | #537593 | COL | 3793-000-00-054 | 1, 2, 3 | One 299-ac parcel with an 8-ac HQ area that includes two residences and ag structures. |
| Van Dyke | 88 | *0* | *88* | Gunnison | 12/27/02 | #526804 | CNLT | 4053-000-00-118 | 1 | One 88-ac parcel. No specified building area. Existing residences may be enlarged. Ag |

BLM_0167049

| | | | | | | | | | | structures allowed. |
|---|---|---|---|---|---|---|---|---|---|---|
| Whinnery, Helen | 280 | *280* | *0* | Gunnison | 12/16/02 | #516561 | COL | 3981-000-00-050 | 1, 3 | One 280-ac parcel with no building areas. |
| Whinnery, Helen | 200 | *200* | *0* | Gunnison | 12/28/04 | #549647 | COL | 4049-000-00-146 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Helen | 150 | *150* | *0* | Gunnison | 12/23/05 | #561721 | COL | 3983-000-00-091 | 1, 3 | One 150-ac parcel with no building areas. |
| Whinnery, Helen | 120 | *120* | *0* | Gunnison | 12/28/06 2/27/07 | #571990 #573230 | COL COL | 4051-000-00-088 | 1, 3 | One 120-ac parcel with no building areas. |
| Whinnery, Helen | 160 | *0* | *160* | Gunnison | 4/10/13 | #619481 | COL | 4313-000-00-005 | 1 | One 160-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Whinnery, Helen | 680 | *0* | *680* | Gunnison | 12/27/07 12/23/08 | #581261 #588265 | COL COL | 4245-000-00-025 4245-000-00-025 | 1 | One 680-ac parcel with no building areas and minor ag structures. |
| Whinnery, Helen | 160 | *0* | *160* | Gunnison | 6/27/12 | #613807 | COL | 4313-000-00-003 | 1 | One 160-ac parcel with a 5-ac HQ area that includes one residence and ag structures. |
| Whinnery, Stanley | 200 | *200* | *0* | Gunnison | 12/22/03 | #535805 | COL | 3983-000-00-089 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Stanley | 200 | *200* | *0* | Gunnison | 12/27/04 | #549630 | COL | 3983-000-00-095 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Stanley | 150 | *150* | *0* | Gunnison | 12/23/05 | #561722 | COL | 4051-000-00-084 | 1, 3 | One 150-ac parcel with no building areas. |
| Whinnery, Stanley | 101 | *101* | *0* | Gunnison | 12/28/06 2/27/07 | #571989 #573231 | COL COL | 4051-000-00-089 | 1, 3 | One 101-ac parcel with no building areas. |
| Whinnery, Steven | 200 | *200* | *0* | Gunnison | 12/22/03 | #537748 | COL | 3983-000-00-090 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Steven | 200 | *200* | *0* | Gunnison | 12/27/04 | #549629 | COL | 3983-000-00-096 4049-000-00-156 | 1, 3 | One 200-ac parcel with no building areas. |
| Whinnery, Steven | 154 | *154* | *0* | Gunnison | 12/23/05 | #561723 | COL | 4049-000-00-156 | 1, 3 | One 154-ac parcel with no building areas. |
| Whinnery, Steven | 149 | *149* | *0* | Gunnison | 12/28/06 2/27/07 | #571988 #573232 | COL COL | 4049-000-00-156 | 1, 3 | One 149-ac parcel with no building areas. |
| Whinnery, Steven | 88 | *88* | *0* | Gunnison | 12/27/07 | #581259 | COL | 4051-000-00-087 | 1, 3 | One 88-ac parcel with no building areas. |
| Whinnery, Steven | 200 | *0* | *200* | Gunnison | Fall 2013 | pending | COL | 4245-000-00-044 | 1, 3 | One 200-ac parcel with no building areas. |
| Wilderson | 560 | *560* | *0* | Gunnison | 6/26/02 | #521506 | CDOW | 3979-000-00-042 | 1, 2, 3 | One 560-ac parcel with |

BLM_0167050

| | | | | | 10/14/03 | #535719 | CDOW | 4053-000-00-006 | two 18-ac building areas that each include one residence and ag structures. Two 35-ac parcels may be divided from the larger parcel, each with one of the building areas. |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 1/22/13 | #618078 | CDOW | | |
| **Total CE Acres:** | 62,720 | *46,372* | *16,348* | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | *178,531* | *56,614* | | | | | | |
| **CE Percent:** | | *26%* | *29%* | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements:  The conservation values must be sustained in perpetuity.  Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover.  Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property.  Surface mining is prohibited.  Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted.  Noxious weeds and invasive plant species must be controlled.  Water rights are permanently attached to the property.  Surface disturbance is prohibited.  Industrial uses are prohibited.  Commercial uses must be consistent with the conservation values.  Trash accumulation is prohibited.  Motor vehicle use is restricted.  Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies.  A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:

BCRLT  =  Valley Land Conservancy *dba* Black Canyon Regional Land Trust
BLM  =  U.S. Dept. of the Interior, Bureau of Land Management
CBLT  =  Crested Butte Land Trust
CCALT  =  Colorado Cattlemen's Agricultural Land Trust
CDOW  =  State of Colorado, Department of Natural Resources, *formerly* Colorado Division of Wildlife, *now* Colorado Parks and Wildlife
CF  =  Conservation Fund
CNLT  =  Colorado Natural Land Trust
COL  =  Colorado Open Lands
NRCS  =  U.S. Dept. of Agriculture, Natural Resources Conservation Service
RMEF  =  Rocky Mountain Elk Foundation
TNC  =  The Nature Conservancy

BLM_0167051

Conservation Easements on Private Land in the Gunnison Basin



BLM_0167052

Critical Habitat in Unit 6, Gunnison Basin



Federal Register / Vol. 78, No. 8 / Friday, January 11, 2013 / Proposed Rules          2569

[12] Unit 7: Poncha Pass: Saguache and Chaffee Counties, Colorado.

(i) *General Description:* 19,543 ha [48,292 ac]; 2.8 percent of all critical habitat.

(ii) Map of Unit 7, Poncha Pass: Saguache and Chaffee Counties, Colorado, follows:

BLM_0167053



**Unit 7:**
**Poncha Pass**

BLM_0167054

Gunnison Sage-grouse USFWS Critical Habitat
Conservation Easements in Unit 7:  Poncha Pass

| Current Owner | Total CE Acres | *Acres in Occupied Habitat* | *Acres in Unocc. Habitat* | County | CE Date | Reception Number | Holds the CE | Parcel Number | Mgmt. Codes | Easement Terms in Perpetuity *(HQ = headquarters)* |
|---|---|---|---|---|---|---|---|---|---|---|
| Dragos | 521 | *0* | *521* | Saguache | 12/23/00 12/11/01 | #332238 #336197 | COL RiGHT | 4221-171-00-108 | 1 | One 654-ac parcel with a 15-ac building area that includes two residences and ag structures, and a 5-ac building area that includes one residence and ag structures.  May be divided in half. |
| **Total CE Acres:** | **521** | *0* | *521* | | | | | | | |
| **Total Private Land Acres (*per* USFWS):** | | *4,792* | *11,128* | | | | | | | |
| **CE Percent:** | | *0%* | *5%* | | | | | | | |

Management Requirements:

1. Standard management requirements for conservation easements:  The conservation values must be sustained in perpetuity.  Agriculture must be conducted using stewardship and management methods that preserve soil productivity, maintain natural stream channels, prevent soil erosion, minimize invasive species, avoid unsustainable livestock grazing practices, and minimize loss of vegetative cover.  Trees may be cut to control insects and disease, to maintain the character and nature of wildlife habitat, to control invasive species, to prevent personal injury and property damage, and for domestic uses on the property.  Surface mining is prohibited.  Low-impact recreational uses such as wildlife watching, hiking, cross-country skiing, hunting and fishing are permitted.  Noxious weeds and invasive plant species must be controlled.  Water rights are permanently attached to the property.  Surface disturbance is prohibited.  Industrial uses are prohibited.  Commercial uses must be consistent with the conservation values.  Trash accumulation is prohibited.  Motor vehicle use is restricted.  Roads and driveways are restricted and cannot be paved.
2. This easement received funding from (or was donated to) one or more state or federal agencies.  A five-year management plan is required by either the State of Colorado or the NRCS.
3. Habitat for Gunnison Sage-grouse is specifically mentioned in the easement as one of the conservation values that must be sustained in perpetuity.

Holders of Conservation Easements:
    COL     =       Colorado Open Lands
    RiGHT   =       Rio Grande Headwaters Trust

BLM_0167055

Conservation Easements on Private Land in the Poncha Pass Area



BLM_0167056

Critical Habitat in Unit 7, Poncha Pass



BLM_0167057



# BOARD OF COMMISSIONERS

### KRIS HOLSTROM        HILARY COOPER        JOAN MAY

February 28, 2018

Tim Spisak, Acting Assistant Director
Energy, Minerals, and Realty Management
Bureau of Land Management (BLM)

Reggie Woodruff, Energy Program Manager
Washington Office Lands & Realty Management
U.S. Forest Service (USFS)

Georgeann Smale, WO-301 Realty Specialist
Bureau of Land Management (BLM)

Jeremy Bluma
National Project Manager
Section 368 West-Wide Energy Corridors Regional Review Project
Bureau of Land Management (BLM)

Brian Mills, Senior Planning Advisor
U.S. Department of Energy (DOE)

Via upload to http://corridoreis.anl.gov/involve/stakeholder-input/ and email to
blm_wo_368corridors@blm.gov

RE: Section 368 West-Wide Energy Corridors Region 2 Review

Dear Mr. Spisak, Mr. Woodruff, Ms. Smale, Mr. Bluma, and Mr. Mills,

Thank you for the opportunity to comment on the energy corridor abstract for Region 2, Corridor 130-274/130-274(E) of the Section 368 West-wide Energy Corridors (WWEC).  San Miguel County has been engaged in the Section 368 Corridor process as co-plaintiffs in the 2012 Settlement Agreement[1].

San Miguel County has the responsibility of ensuring the health, safety, and welfare within the County.  Our responsibility extends to environmental health, which includes watershed health, soil health, and protection of wildlife habitat.  Environmental quality is very important to San Miguel County.  San Miguel County through its Board of County Commissioners and designated officials collaborates, cooperates, and coordinates with federal land agencies on federal land planning and projects.  Sixty percent of the land in San Miguel County is federal public land,

---

[1] http://corridoreis.anl.gov/documents/docs/Settlement_Agreement_Package.pdf

P.O. BOX 1170 • Telluride, Colorado 81435 • (970) 728-3844 • FAX (970) 728-3718

BLM_0167058

with another 4% being owned by the State of Colorado; 70.6 % of San Miguel County is a federal mineral estate.  Only 36% of San Miguel County consists of private land.

San Miguel County has assisted in the protection of thousands of acres of private lands with important wildlife habitat values, especially Gunnison Sage-grouse (GuSG) critical habitat, during the last few decades by participating in the acquisition of conservation easements intended to preserve and protect GuSG habitat.  San Miguel County has financially contributed over $2.25 million of local taxpayer dollars during this period for GuSG habitat conservation and improvements through the County's Land Heritage Program, co-funding of the Gunnison Sage-grouse Working Group and funding of other actions intended to provide direct benefits to GuSG recovery and resilience.  SMC continues to actively participate with the stakeholder group that developed the Gunnison Sage-grouse Rangewide Conservation Plan. [2]  San Miguel County is a Cooperating Agency for the ongoing BLM Gunnison Sage-Grouse (GuSG) Rangewide Resource Management Plan (RMP) Amendments and Environmental Impact Statement (EIS). [3]

San Miguel County appreciates the coordination and efforts of the Bureau of Land Management (BLM), Department of Energy (DOE) and United States Forest Service (USFS), hereafter, "*Agencies*", on working toward meeting the terms of the 2012 Settlement Agreement with co-plaintiffs through reevaluation of energy corridor designations and recommendations and undertaking periodic reviews of these corridors.  San Miguel County supports the comments submitted by The Wilderness Society, et al., on February 23, 2018.  We are also in support of the comments submitted by Defenders of Wildlife, the Center for Biological Diversity, and the National Audubon Society on February 23, 2018, and comments submitted by National Trust *for* Historic Preservation on February 24, 2018.  We strongly support comments provided by Colorado Parks and Wildlife (CPW) on February 23, 2018.

---

[2] http://cpw.state.co.us/learn/Pages/GunnisonSagegrouseConservationPlan.aspx
[3] https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=39681

BLM_0167059

**Summary of San Miguel County Requests and Findings from a review of the portion of Corridor 130-274/130-274(E) and Abstracts intersecting San Miguel County.**

San Miguel County (hereafter, "*SMC*") reviewed the portion of Corridor 130-274/130-274(E) that intersects SMC, shown in Figure 1 below.  We referred to the Section 368 Energy Corridor Mapping Tool[4], January 2018 Corridor 130-274/130-274 (E) Abstract[5]  and West-Wide Energy Corridor (WWEC) Conflict Assessment Table[6] during our review, as well as our in-house GIS reference layers.  We are happy to provide the non-proprietary layers to the Agencies upon request.



Figure 1:  Screen-capture of the Section 368 Energy Corridor Mapping Tool showing the portion of Corridor 130-274/130-274(E) intersecting San Miguel County, Colorado, (within the red oval) which is the focus of our analysis and comments.

1.   Agreement with CPW on treating GuSG Critical Habitat in the San Miguel Basin satellite population of GuSG and treating private lands encumbered with conservation easements as Exclusion Areas.

With respect to the February 23, 2018, CPW comments that are specific to Corridor 130-274, SMC believes they should be applied to both 130-274/130-274(E). We strongly agree that these corridors should be rerouted to avoid GuSG Critical Habitat.  We agree that GuSG Critical Habitat should be designated a ROW Exclusion Area.  Any impacts to GuSG Critical Habitat should require compensatory mitigation.  We agree that the corridors should avoid CPW-owned land and private lands encumbered by conservation easements.

---

[4]https://bogi.evs.anl.gov/section368/portal/ (Accessed February 2018)
[5]https://bogi.evs.anl.gov/section368/abstracts/corridor-130-274.pdf
[6]http://corridoreis.anl.gov/documents/docs/conflict_assessment_table.pdf

BLM_0167060

SAN MIGUEL COUNTY

**Our SMC Section 368 Corridor 130-274/130-274(E) Screen Tool (Attachment A)** shows where private land conservation easements have been achieved through the assistance of our County Land Heritage Program.  The Regional Review team should obtain current data on the locations, extents, and primary conservation values of conserved lands within San Miguel County.

We agree with CPW that existing overhead transmission lines having impacts to GuSG Critical Habitat should not have their ROW expanded and should be buried with compensatory mitigation required.

Furthermore, transmission lines intersecting areas with scenic qualities/visual resources important to San Miguel County should be buried and sited to ensure retention of Wilderness/Roadless/wildland characteristics.   If a corridor to accommodate overhead transmission lines is needed, preference should be given to locating it within the footprint of an existing ROW having overhead transmission lines, such as the Tri-State Nucla-Cahone expansion which has just completed an EIS process.

2. **Achieve primary objectives and Agency Guidance provided by the Settlement Agreement.**

It is our understanding that the primary objectives of the Settlement Agreement[7] include ensuring that future revisions, deletions, or additions to the Section 368 energy corridors comply with the Federal Land Policy and Management Act (FLPMA), the National Environmental Policy Act (NEPA), and Section 368 of the Energy Policy Act of 2005 (EPAct) and consider the following:

1. Location of corridors in favorable landscapes;
2. Facilitation of renewable energy projects where feasible;
3. Avoidance of environmentally sensitive areas to the maximum extent practicable;
4. Diminution of the proliferation of dispersed rights-of-way ("ROWs") crossing the landscape; and
5. Improvement of the long-term benefits of reliable and safe energy transmission.

We expect that the Agency Guidance will adhere to the principles within the Settlement Agreement and will address the need for site-specific NEPA analysis for individual projects and that as stated on the Settlement Overview web page[8] Agency Guidance will include:

- *Encourage project proponents to locate projects within designated corridors or adjacent to existing ROWs, notify project proponents of any Section 368 energy corridor segments that are corridors of concern, and consider alternative locations if a proposed project would be located within a Section 368 energy corridor of concern segment.*
- *Corridors of concern are corridors that would have environmental impacts, extensive mitigation measures or would require preparation of EIS, alternative corridor considerations or LUP amendments. Corridors of concern are identified in Exhibit A of the Settlement Agreement.*
- *Site-specific projects will require individual NEPA analysis. To reduce redundant studies, encourage individual projects to 'incorporate by reference' data and studies in the Final PEIS. Tiering is not a substitute for site-specific analyses.*

---

[7] http://corridoreis.anl.gov/documents/docs/Settlement_Agreement_Package.pdf
[8] http://corridoreis.anl.gov/regional-reviews/settlement/

4

BLM_0167061

- *Procedures for periodic review and update of IOPs; use of IOPs outside designated corridors on federal land; and adoption of IOPs approved by the agencies.*
- *Revisions, deletions, and additions to corridors must meet the requirements specified in Section 368 of the EPAct and must consider the siting principles.*

We appreciate the Section 368 Corridor Study prepared by Argonne National Laboratory, dated May 2016[9] with the stated goal of evaluating "whether the Section 368 corridors are achieving their purpose to promote environmentally responsible corridor-siting decisions and to reduce the proliferation of dispersed ROWs crossing Federal lands." [10]  It also establishes a "baseline of current conditions and identifies considerations and areas which should be explored in more detail during future Regional Periodic Reviews of energy corridors conducted in the future by BLM and [US]FS." [11]

### 3.   New conditions require updated analysis and rerouting of Corridors 130-274/130-274(E).

SMC notes that the Corridor Study evaluated information during the period from January 2009 and October 2014.[12]  As will be discussed in more detail below, there are a number of new conditions that have developed that increase the significance of the impacts that the proposed Corridor 130-274/130-274(E) will have in environmentally sensitive areas in San Miguel County in order to access the federal lands where it is currently sited.

This period is prior to the listing of the Gunnison Sage-grouse as a threatened species protected by the Endangered Species Act (ESA) and prior to designation of critical habitat and several other important new conditions.  It is also prior to the initiation and/or decision of several major federal land agency planning processes that are currently in-progress:  BLM Tres Rios Resource Management Plan (RMP) – Areas of Critical Environmental Concern (ACEC) Amendment[13] contemplating designation or modification to numerous ACECs within western San Miguel County for Gunnison Sage-grouse, rare plants, and other sensitive ecosystems; BLM Gunnison Sage-Grouse (GuSG) Rangewide Resource Management Plan (RMP) Amendments and Environmental Impact Statement (EIS) [14] which has a decision area comprised of critical habitat and areas within 4-miles of GuSG leks and which could amend both the Tres Rios RMP and Uncompahgre RMP; Uncompahgre Field Office Resource Management Plan[15] which includes nominated Wild and Scenic River segments and nominated ACECs; and the Grand Mesa, Uncompahgre, and Gunnison National Forests (GMUG) Forest Plan revision[16] which is analyzing designation of Wilderness and other special lands.

---

[9]http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf
[10]http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf Page ES-1.
[11]http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf Page ES-2.
[12]http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf Page ES-2.
[13]https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=63796
[14]https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=39681
[15]https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=86003
[16]https://www.fs.usda.gov/main/gmug/landmanagement/planning

BLM_0167062

The BLM has issued Instructional Memorandum (IM) 2014-100,[17] which is in effect until rescinded and presents some of the best available interim guidance until the GuSG RMPa is finalized.  The GMUG National Forest LRMP ROD was signed in 2013, prior to the listing of the GuSG and designation of critical habitat. The Agency Review and Analysis should recognize BLM IM 2014-100 and adhere to the guidance requiring focusing any type of development in non-habitat areas.  This is a new condition, and SMC believes the Agencies should consider a revision to corridors such as 130-274/130-274(E) to adhere to this guidance.

BLM IM 2014-100[18], provides, *"The BLM will focus any type of development in non-habitat areas.  Disturbance will be focused outside of a 4-mile buffer around leks.  The BLM intends that little, or no disturbance occurs within the 4-mile buffer, except for valid existing rights, and except where benefits to the GUSG are greater compared to other available alternatives.  This guidance:*

- *Recognizes the FWS Proposed Listing of the GUSG as endangered (78 FR 2486) under the Endangered Species Act (ESA) (January 11, 2013) posted at http://www.fws.gov/policy/library/2013/2012-31667.pdf.*
- *Provides updated direction regarding management and ongoing planning actions in GUSG occupied habitat.*
- *Recognizes that the BLM proposes to incorporate objectives and conservation measures for the protection of GUSG and its habitat into relevant Resource Management Plans (RMP) through a GUSG range-wide plan amendment process.*
- *Ensures continued coordination with the FWS, State fish and wildlife agencies, and other partners regarding implementation, updates and project prioritization for GUSG conservation and strategies identified in the Range-wide GUSG Conservation Plan (RCP) and local GUSG population conservation plans.*
- *Does not preclude developing or using additional conservation measures or strategies deemed necessary to maintain or enhance local GUSG habitat and populations."*

SMC believes the provisions of the MOU and Settlement Agreement require consideration of "avoidance of environmentally sensitive areas to the maximum extent possible" and "minimum impact on the environment."  Therefore, the Agencies have an obligation in this review process to make "recommendations for revisions, deletions, and additions to the section 368 corridor network" and have an obligation to re-evaluate the corridor routes to determine whether avoidance of environmentally sensitive areas is practicable and whether alternative routes could provide similar utility with less environmental impact.

An additional new condition since October 2014 is the revised agreement between Colorado Department of Public Health and Environment, U.S. Environmental Protection Agency, WildEarth Guardians and the National Parks Conservation Association as part of revisions to the Colorado regional haze State Implementation Plan (SIP) in December 2016.[19]  This agreement causes the retirement of multiple coal-fired electrical generation plants in western Colorado:  the 427-MW Unit, 1 at Craig Station, will be retired by Dec. 31, 2025, and the Tri-State 100-MW Nucla coal-fired generation plant will be retired by 2020 and decommissioned by 2022.

---

[17] https://www.blm.gov/POLICY/IM-2014-100.
[18] https://www.blm.gov/POLICY/IM-2014-100.
[19] https://www.colorado.gov/pacific/cdphe/regional-haze-plan

BLM_0167063

SMC believes that the Agencies should incorporate an updated evaluation of the purpose and need of the Section 368 Corridor with respect to coal to demonstrate need and adequacy of the existing Programmatic Environmental Impact Statement (PEIS) in light of new information and circumstances that have developed over the last ten years .  For example, the updated evaluation should factor in the plant retirements and the fact that Tri-State is currently replacing its existing 115-kV transmission line which is described by Tri-State as "a major conduit for electric power from Tri-State's Nucla Generating Station and is a backbone of the transmission grid on the western slope of Colorado," with a 230-kV upgrade over the 80-mile long Montrose-Nucla-Cahone overhead Transmission Line following the existing ROW.[20] It is our understanding that Corridor 130-274/130-274(E) has been cited in part due to proximity and benefit to coal-fired generation stations.

In 2008, SMC indicated it was reluctantly supportive at the time and in the absence of better alternatives of a proposal by Teresa Pfifer of the BLM Uncompahgre Field Office (UFO) to move the 130-274 Corridor slightly west to follow San Miguel County Road 39N for multimodal use and to use 130-274(E) for underground use only.  This position, taken in February – June 2008 was ten years ago.

Based on recent developments such as the listing of the Gunnison Sage-grouse and designation of critical habitat in November 2014, the implementation of the Tri-State Nucla-Cahone upgraded overhead transmission line in 2018 and 2019, the retirement of the Nucla coal-fired generation plant in 2020, and our review of the Corridor Map and Abstract, we have revised our previous tentative indication of support for Corridors 130-274/130-274(E).  SMC now believes both of these corridors must be rerouted to avoid repeated disturbances to GuSG Critical Habitat, State lands managed for wildlife including GuSG, and private lands encumbered with conservation easements between MPs 7-17/4.6-17.  New infrastructure and ROWs should be excluded from Critical Habitat and avoided within 4-miles of leks and the BLM Gunnison Sage-grouse Resource Management Plan Amendment/EIS Decision Area.

4. **Request for one of the Regional public meetings to be held in Norwood, Colorado and for Agencies to meet with SMC officials in person.**

It is our understanding that regional meetings are anticipated to occur in May or June 2018 potentially.  San Miguel County strongly encourages the Agencies and the Regional Review team to meet with SMC officials and stakeholders, including Colorado Parks and Wildlife, U.S. Fish and Wildlife, and hold a public meeting in Norwood, Colorado.  We strongly encourage the Agencies to visit Corridor 130-274/130-274(E) in person at the same time.

Agencies should meet in person with SMC officials and stakeholders such as Colorado Parks and Wildlife (CPW) and U.S. Fish and Wildlife Service (USFWS).  The goal of meeting together will be to identify if there is possibly a suitable alternative corridor siting that would have less impact to environmentally sensitive areas and have less impact on non-federal lands.  With more time and a robust discussion with stakeholders, we may be able to identify an alternative corridor sited for underground infrastructure located within 100-feet of an existing County Road.

---

[20]First Amended Complaint for Declaratory and Injunctive Relief filed by the Wilderness Society in *The Wilderness Society, et al. v. United States Department of the Interior, et al., No. 3:09-cv-03048-JW (N.D. Cal)*. Especially paragraphs 21-25 on Pages 14-17.

BLM_0167064

The need for an additional corridor for overhead transmission lines should be carefully studied, especially with the planned retirement and decommissioning of multiple coal-fired power plants in western Colorado in the next two to seven years and the Tri-State upgrade to the existing line.  If a corridor to accommodate overhead transmission lines is still warranted, it should examine the potential to be located within the footprint of an existing ROW having overhead transmission lines, such as the Tri-State Nucla-Cahone expansion which has just completed an EIS process and seventeen years of study.

SMC believes by providing adequate time and having direct consultation with stakeholders such as San Miguel County government, CPW, USFWS, private landowners, and federal land managers together, there is potential for identifying a different corridor alignment that could lead to a greater extent of avoidance of environmentally sensitive areas on both federal and non-federal lands.

5.  **Deficiencies present in the review process.**

While the Corridor Abstract and Section 368 Energy Corridor Mapping Tool are helpful and appreciated, this process does not fully appear to remedy the original concerns of SMC outlined in our letters to Argonne National Laboratory dated February 14, 2008, and June 11, 2008, as well as in the original and First Amended Complaint for Declaratory and Injunctive Relief filed by the Wilderness Society in *The Wilderness Society, et al. v. United States Department of the Interior, et al., No. 3:09-cv-03048-JW (N.D. Cal)* [21].

In 2008 some of our most significant concerns were potential impacts to Naturita Canyon, interruption of critical occupied Gunnison Sage-grouse habitat, and large segments of the Corridor passing through private lands that were not analyzed by the PEIS.  SMC remains concerned with public and private lands located within the County being negatively impacted by the Corridor's location on federal land, including degradation of scenic character and property values.  The impacted non-federal public and private lands have exceptional habitat for Gunnison Sage-grouse, (now listed and protected by the ESA as a threatened species since November 2014); conservation easements acquired with county taxpayer dollars having the primary conservation values of Gunnison Sage-grouse habitat and scenic character; scenic qualities; and recreation qualities.  SMC remains concerned that there has been an inadequate consultation of local and state government agencies, interested parties, and the public.  The County remains concerned that there is an inadequate NEPA process which requires analysis and disclosure of environmental impacts and development of environmentally-superior alternatives.

In 2008, SMC communicated that it was disappointed that the rapid timeframe of the process prevented a thorough evaluation of lands to identify an energy corridor in the western portion of the county.  Commissioner Art Goodtimes eloquently pointed out that the "fatal flaw" in the PEIS is that "it is limited to identifying corridors on public lands without working with local governments on how best to 'connect the dots' through private lands." [22]  This has not been remedied with the current conflict assessment, mapping tool, or Corridor abstract.

---

[21] https://eplanning.blm.gov/epl-front-office/projects/nepa/66455/81165/94671/Tri-State_MNC_Draft_POD.pdf
Page 1.
[22] Letter to Subcommittee on National Parks, Forests and Public Lands Subcommittee on Energy and Mineral Resources Joint Oversight Hearing, April 15, 2008 "The West-Wide Energy Corridor Process: State and Community Majority Questions for the Record Art Goodtimes, County Commissioner, San Miguel County, Colorado; "My Response to Questions Asked", May 6, 2008.  Page 2, Question 2.

BLM_0167065

During our review and preparation of these comments, SMC finds that there are still several deficiencies in the review process which will guide the Agencies in recommending corridors for designation.  These issues include:

- Inadequate NEPA and range of alternatives available given new information and circumstances that exist with respect to the listing of the Gunnison Sage-grouse as threatened[23] and designation of critical habitat in November 2014[24];
- Changes needed to consider certain areas as "high potential conflict areas" vs. "medium potential conflict areas" (see discussion below);
- Out of date land status layers that do not account for State lands around Miramonte Reservoir;
- Land status layers do not consider conserved private lands that would be intersected by a ROWs to reach the federal lands included in Corridor 130-274/130-274(E);
- Inadequate time and lack of direct consultation with stakeholders including San Miguel County government, Colorado Parks and Wildlife, U.S. Fish and Wildlife, private landowners, and federal land managers, to identify if a different alignment would lead to a greater extent of avoidance of environmentally sensitive areas on both federal and non-federal lands;
- On-the-ground field inspections and verifications were not conducted but yet are strongly recommended to be conducted as part of the Regional Reviews in the Corridor Study. [25]
- Possible out of date lek layer for GuSG used for conflict analysis – it appears at least one lek near Miramonte Reservoir may not be accounted for in certain layers of the Section 368 Energy Corridor Mapping Tool.

6. **Specific Comments on Abstract and Corridor 130-274/130-274(E).**
   a. **Corridor 130-274/130-274 (E) Abstract, January 2018**[26]
      - <u>Figure 2a</u> – does not show all State lands around Miramonte Reservoir, generally located near MP 10-14.
      - <u>Corridor Rationale and Existing Infrastructure</u> – please provide a reference for a determination that MPs other than 0 to MP 8.5 are a "locally designated corridor." MPs 0-17 are located in San Miguel County, and we are unsure if you are specifically stating that MPs 9.5 to 17 are already a locally designated corridor. We have no evidence that they are and believe the abstract is incorrect.  It would be helpful if the abstract could be more specific and cite references.

         The Section 368 Energy Corridor Mapping Tool did not show any ROW when we turned on the "ROW Corridors – Locally Designated" Area or Line layers. The Trans Colorado gas pipeline, within the Infrastructure-Pipeline, Pipelines Natura Gas – Operation layer provided in the Section 368 Energy Corridor Mapping Tool, is located 1.2 miles east of the MP points provided. There is no existing infrastructure under MPs 0-17 of Corridor 130-274 within San Miguel County. The existing Trans Colorado pipeline is located under MPs 0-4.6 of Corridor 130-

---

[23] https://www.fws.gov/mountain-prairie/es/species/birds/gunnisonsagegrouse/GUSGFinalListingRule_11202014.pdf
[24] https://www.fws.gov/mountain-prairie/es/species/birds/gunnisonsagegrouse/GuSGCriticalHabitat_11202014.pdf
[25] http://corridoreis.anl.gov/documents/docs/Section_368_Corridor_Study.pdf Page ES-2, Footnote 1.
[26] https://bogi.evs.anl.gov/section368/abstracts/corridor-130-274.pdf

BLM_0167066

SAN MIGUEL COUNTY

274(E).  However, the cumulative impacts to Gunnison Sage-grouse habitat and leks are unacceptable to access 130-274(E).



*Corridor 130-274/130-274 (E)*          *Section 368 Energy Corridor Regional Reviews - Region 2*          *January 2018*

Figure 2a. Corridor 130-274/130-274(E), Including Existing Energy Infrastructure

Corridor 130-274/130-274 (E) Abstract, January 2018, Figure 2a—red shapes highlight areas that are missing lands owned by the State of Colorado.  The purple line in the figure matches the Trans Colorado gas pipeline, within the Infrastructure-Pipeline, Pipelines Natural Gas – Operation layer provided in the Section 368 Energy Corridor Mapping Tool.

- Potential for Future Development: The statement provided, "It is possible that the corridor will be affected by the Gunnison Sage-grouse Range-wide Draft RMP Amendment/Draft EIS" [27] is appreciated but is out of date for January 2018. The GuSG RMPa/EIS was released in August of 2016[28].  This statement is not current for January 2018.  MPs 4.5/6/5 to MP 16.25 is entirely within the GuSG RMPa Decision Area (see Attachment A), which is comprised of critical habitat and a 4-mile buffer of leks.  Only the most southern 1,200 feet of the Trans Colorado gas pipeline is out of the GuSG RMPa Decision Area.  The Decision Area GIS layer[29] is publicly available from the BLM and additional GIS files

---

[27] https://bogi.evs.anl.gov/section368/abstracts/corridor-130-274.pdf Page 5
[28] https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=53486
[29] https://eplanning.blm.gov/epl-front-office/eplanning/mapset_view.do?projectId=39681&currentPageId=53493&documentId=81491

BLM_0167067

should be incorporated into the Corridor Abstract figures, conflict analysis, and Section 368 Energy Corridor Mapping Tool.

- Conflict Map Analysis: The Conflict Map Analysis relies on the criteria contained in the West-Wide Energy Corridor (WWEC) Conflict Assessment Table.[30] SMC recommends changes to the assessment classifications to recognize environmentally sensitive areas better:

  o ACECs designated to protect rare plants, soils, and scenic resources may have varying degrees incompatibility with ROWs. Above-ground structures vs. underground infrastructure development may have different impacts. ACECs designated or nominated to protect ESA listed species and/or critical habitat should be automatically classified as "high potential conflict areas" and avoided. ACECs designated or nominated to protect S1 or S2 species should also be automatically classified as "high potential conflict areas" and avoided. There are ten nominated ACECs that intersect SMC and that are being evaluated as part of the ongoing TRFO ACEC RMP amendment.[31] These should all be classified as "high potential conflict areas." Areas that are nominated for ACEC designation under one or more alternatives of the GuSG RMPa/EIS should also be classified as "high potential conflict areas."[32]

  o Lands Inventoried and Managed for Wilderness Character should be all classified as "high potential conflict areas," as any impact from man-made infrastructure will forever change the wilderness character and potential for wilderness designation in the future.

  o Similar to river segments deemed suitable for Wild and Scenic River status, lands pending legislative designation as Wilderness or other special designations should be considered "high potential conflict areas" and avoided so as not to pre-judge and void any potential designation.

  o Lands acquired with federal funds for conservation purposes should be designated as "high potential conflict areas" if their purpose is to protect or conserve ESA listed species and/or critical habitat or to conserve significant viewsheds and lands with wilderness characteristics. This should be a provided GIS layer in the Section 368 Energy Corridor Mapping Tool.

  o Lands acquired with taxpayer funds for conservation purposes should also be designated as "high potential conflict areas." As noted above San Miguel County has financially contributed over $2.25 million of local taxpayer dollars during this period for GuSG habitat conservation and improvements through the County's Land Heritage Program. This program has helped protect over 25% of the occupied GuSG habitat on private land within San Miguel County through conservation easements. Over 14,000 acres of habitat has been conserved at the cost of $6.8 million and a donation value of over $11.7 million. These investments toward protection and recovery of GuSG must not be jeopardized or diminished by direct or cumulative indirect impacts of a

---

[30] http://corridoreis.anl.gov/documents/docs/conflict_assessment_table.pdf
[31] https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=renderDefaultPlanOrProjectSite&projectId=63796
[32] https://eplanning.blm.gov/epl-front-office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&currentPageId=53486

BLM_0167068