| | |
|---|---|
| **From:** | jam99 tds.net |
| **To:** | UFORMP@blm.gov |
| **Subject:** | PUBLIC COMMENT |
| **Date:** | Thursday, March 18, 2010 4:56:56 PM |

Bruce Krickbaum, RMP Project Manager

Bureau of Land Management, Uncompahgre Field Office

2465 South Townsend Avenue

Montrose, Colorado  81401


Re: Scoping Comments on the Resource Management Plan (RMP) Revision


Dear Mr. Krickbaum,


I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:


- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.


- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.


- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.


- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Justin Hess

1219 2nd St.

Paonia, CO 81428

BLM_0167429

IN

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

FEB 2 6 2010

February 24, 2010

Re: Scoping Comments on the Resource Management Plan (RMP)

Dear Mr. Krickbaum,

1 A-PI NRED

I have been very concerned about the prospect of oil and gas leasing in and about the North Fork Valley. While recognizing that energy production is a mandate given to the BLM, I would like this done with the highest level or responsibility possible and in such a manner that protections to human and wildlife health and habitat are given the highest priority. To that end, I would like the BLM to put in place regulation and enforcement to ensure that no domestic, irrigation, surface, or ground water becomes contaminated as a result of natural gas leasing, permitting, or unitization decisions. I want prohibitions on the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area. I would like to see energy companies required to provide full, complete and readily accessible disclosure of the composition of hydraulic fracturing fluids used in natural gas drilling.

I want assurances that air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions. Further, it is important to me that all natural gas leases and permits are

2 A-PI NRED

to protect wildlife habitat from fragmentation,

In addition, I request a moratorium on all natural gas leasing and permitting until the plan revision is completed. The NEPA was put in place to provide proper and legally mandated environmental reviews in the protection of my interests and I ask the BLM to see to it that they are. I understand well that energy is needed and I have no issue in principle with obtaining it. I merely request that it be done with precautionary principles firmly established in leasing, regulation and enforcement. Ruining public lands in the name of short term private profits is folly. This has gone on for too long and things must change.

3 A-PI NRED

Thank you for considering my comments.

*Marie C. Hinton*

**Marie C. Hinton**
15426 Fire Mountain Rd  Paonia, Colorado 81428  970-527-5741

Received

MAR 1 5 2010

Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Signature_
Signature

Scott D. Horner
Print Name

38556 pitkin rd
Address

PADNIA              CO        81428
City                State     Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Lynn Huey_
Signature

Lynn Huey
Print Name

P.O. Box 1659
Address

Paonia          CO        81428
City                State        Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 2 4 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature: *Paula Hunter*

Print Name: PAULA HUNTER

Address: 41659 Reds Rd.

City: PAONIA   State: CO   Zip Code: 81428

Received

MAR ˉ8 2010

Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Janis K Hurley_
Signature

Janis K Hurley
Print Name

36732 Sunshine Mesa Rd
Address

Hotchkiss          CO          81419
City                State        Zip Code

BLM_0167434

IN

| | |
|---|---|
| **From:** | j i |
| **To:** | uformp@blm.gov |
| **Subject:** | comments on the rmp |
| **Date:** | Sunday, March 28, 2010 9:56:00 PM |

Bruce Krickbaum, RMP Project Manager

Bureau of Land Management, Uncompahgre Field Office

2465 South Townsend Avenue

Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because, at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

* Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

* Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

* Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

* Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

* Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

BLM_0167435

* Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

* Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

* Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas leasing twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

1 A-PI MI

*Recognize that the minerals contained in our public lands belong to all of us and that no one should be allowed to extract them except as a service provided to the public.

2 A-PI MI
3 B-GE (second part of sentence)

*Recognize that mineral resources have a much greater value than the cost of extracting them from our public lands, and that we are all entitled to the royalties that come from their sale.

Thank you for taking my comments into consideration.

Sincerely,

Joseph Inman

42671 Long Gulch Rd
Crawford, CO 81415

Care2 makes it easy for everyone to live a healthy, green lifestyle and impact the causes you care about most. Over 12 Million members! http://www.care2.com

Feed a child by searching the web! Learn how http://www.care2.com/toolbar

BLM_0167436

| | |
|---|---|
| **From:** | Julia Jewels |
| **To:** | uformp@blm.gov |
| **Subject:** | Re: Scoping Comments on the Resource Management Plan (RMP) Revision |
| **Date:** | Friday, March 26, 2010 12:26:16 PM |

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Julia Schloesser
P.O. Box 2034
Hotchkiss, CO 81419

Hotmail: Trusted email with powerful SPAM protection. Sign up now.

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received
MAR 2 4 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Signature_

Martha Justman
_Print Name_

14659 Peony Ln
_Address_

Paonia CO 81428
_City_          _State_          _Zip Code_

BLM_0167439

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract those minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Ann M. Keohane_
Signature

_Ann M. Keohane_
Print Name

_39671 Panorama Rd_
Address

_Paonia CO 81428_
City                    State        Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 2 4 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Cedar Keshet_
Signature

_Cedar Keshet_
Print Name

_40923 Cedar Lane_
Address

_Paonia_            _CO_          _81428_
City                State         Zip Code

February 22, 2010

Received

MAR 1 8 2010

Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

_____

Print Name

_____

Address

_____

City                    State              Zip Code

February 22, 2010



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to
managing publicly owned lands in a way that ensures both the health of the land and the
people who live in and around those lands. I am asking for a moratorium on all natural gas
leasing and permitting until the plan revision is completed because at times in the past, the BLM
has failed to live up to this standard by leasing and permitting natural gas development without
an environmental review and public input as called for under the National Environmental Policy
Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a
  result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids
  into the ground while drilling for natural gas on any federally leased, permitted, or unitized
  area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization
  decisions.

- Protect private property rights by prohibiting oil and gas development on private land within
  a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area,
  and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We
  can consider reopening these areas to oil and gas development twenty years from now in the
  next RMP if, in the ensuing time period, technology has been developed to extract these
  minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Sandra Girl   2-22-2010

Signature

Print Name

SANDRA KIRK

Address

P.O. Box 820 Paonia, CO 81428

City          State          Zip Code

This document will serve as my "community reponse"
That BLM under new Salazar rules must
consider when developing leases of land
That impact communties - This impacts
our health + quality of life here
in Paonia. water + air needs to be
monitored and kept clean!

BLM_0167445

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

*Received*
*MAR 2 3 2010*
*Uncompahgre Field Office*

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

*Rand Koicernot*
Signature

RAND KOICERNOT
Print Name

13868 Runzel Gulch Rd
Address

Hotchkiss Co 81419
City            State        Zip Code

BLM_0167446

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_____
Signature

Joseph  LoGiudice
Print Name

42184  Foothills  Rd.
Address

Paonia  CO                81428
City                    State              Zip Code

IN

Bruce Krickbaum, RMP Project Manager

FEB 23 2010

Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401
Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because, at times in the past, the BLM has failed to live up to this standard by ~~leasing and~~ permitting natural gas development without an environmental review and public input as ~~required~~ under the National Environmental Policy Act. In addition, I believe the revised RMP should:

1 A-PI NRED

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions. This would adversely affect my business as an ORGANIC FARMER, which would set up possible legal action.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas leasing twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

DON LAREAU
Print Name

11466 3725 Rd.
Address

Paonia          CO          81428
City              State        Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management
Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, Co. 81401

Received

MAR 3 0 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan Revision

Dear Mr. Krickbaum,

I attended a day long workshop and discussion last Saturday, March 20, focused around local oil and gas drilling within the Uncompahgre Field area. I appreciated having BLM representatives there to answer questions and give input. The maps that had prepared and brought showing all the current leases, permits, drill sites, etc. were quite enlightening.  I learned that the Uncompahgre Field office is in the process of relooking at the current management plan, and creating a new one. I also learned that the time to give comment on both this revision and oil and gas drilling is early. I am writing to express my deep concerns about continuing to sell permits for oil and gas drilling within the public lands in which you manage.

1 A-PI NRED

2 A-PI SE

3 A-PI NRED

I have been an organic gardener here, in Paonia, for the past 15 years. I moved here because of the clean water and air, the growing season and the close proximity to road less and wilderness lands. My husband and I are avid hikers, backcountry skiers and boaters. My first concern is for the safety of the water within our watershed of the North Fork of the Gunnison River.  If the water within this watershed is contaminated in any way my livelihood will be gone. When I watched presentations by the oil and gas companies last weekend, I was deeply concerned by the issues they failed to address. Even if the depth of drilling is different than the surface water sources, there was no discussion of evaporation ponds, spillage, or transportation of fracturing fluids, to name a few. Given the current record of mistakes around western Colorado by this industry, I ask that protection of water resources as well as air quality be number one on your priority list for resource management. If the air and/or water quality in our area are compromised in any way,  that will greatly affect the management of all other resources!

**I would like you to close to future leasing all areas that are now open to new oil and gas leasing in the current RMP.  I am also asking you to place a moratorium on all natural gas drilling permits on currently leased lands, until the plan revision is completed.**
For all current leases that are permitted at this time:
- Ensure that no domestic, irrigation, surface or ground water will become contaminated as a result of natural gas drilling procedures.
- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.
- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federal leased, permitted, or unitized area.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.
- Protect private property rights by prohibiting oil and gas development on private lands within a unitized area without the written permission of the surface property owner.

4 A-PI CC               otect wildlife habitat around drill sites

I would also ask you, as managers of our public lands, to take into consideration the larger picture of global warming. I quote Amory Lovins from Rocky Mtn. Institute "We have the technology now for solving this issue of global warming." I am wondering why we continue to pursue drilling for fossil fuels, when we clearly need to change our energy sources to renewablse. When, if not now, can this vital issue be addressed? I am asking you to please take this larger issue into consideration during your current resource management plan revision.

Sincerely,

Denise Claire Laverty
42225 Minnesota Cr. Rd.
Paonia, Colorado 81428
(970)527-6505
dclaire@tds.net

| | |
|---|---|
| **From:** | chava p |
| **To:** | UFORMP@blm.gov |
| **Subject:** | concerned! |
| **Date:** | Sunday, March 28, 2010 9:16:48 PM |

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

• Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

• Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

• Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

• Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

• Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

• Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

• Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

• Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,


Carrie Lerner
42671 Long Gulch Rd
Crawford, CO 81415


Care2 makes it easy for everyone to live a healthy, green lifestyleand impact the causes you care about most. Over 12 Million members!http://www.care2.com

Feed a child by searching the web! Learn how http://www.care2.com/toolbar

Care2 makes it easy for everyone to live a healthy, green lifestyle and impact the causes you care about most. Over 12 Million members! http://www.care2.com

Feed a child by searching the web! Learn how http://www.care2.com/toolbar



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Norman Lewark DDS, March._
Signature

NORMAN L. LEWARK D. DS., March.
Print Name

36732 SUNSHINE MESA ROAD
Address

HOTCHKISS    CO    81419
City            State        Zip Code

BLM_0167454

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 1 2 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_____
Signature

Mary Ann Lewis
Print Name

330 w Bridge St #340
Address

Hotchkiss            CO            81419
City            State            Zip Code

BLM_0167455

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

*Received*
*MAR 2 3 2010*
*mpahgre Field Office*

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name    GORDON M LONG

Address    516 BOXELDER

City PAONIA    State Colo    Zip Code

BLM_0167456

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

Received

MAR 2 3 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing
publicly owned lands in a way that ensures both the health of the land and the people who live in and
around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan
revision is completed because at times in the past, the BLM has failed to live up to this standard by
leasing and permitting natural gas development without an environmental review and public input as
called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of
  natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the
  ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a
  unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and
  Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can
  consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in
  the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Steve Lyons_
Signature

Steve Lyons
Print Name

P.O. Box 1291
Address

Paonia  Co  81428
City          State        Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR ¨ 8 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I am not current resident in Delta County though I am planning on becoming one. The only way I would feel comfortable investing in the Delta County region would be to know that there is action against blindly continuing gas drilling on watersheds that feed the North Fork Valley i.e. Bull Mountain. I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because, at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas leasing twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Signature_

Nicholas Mahmood
Print Name

118 ring dr.

Prescott, AZ
86305

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401



RECEIVED

FEB 23 2010

BY:

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_David Marek_
Signature

DAVID MAREK
Print Name

P.O. Box 1387
Address

PAONIA        CO        81428
City                State        Zip Code

BLM_0167459

Received
APR 0 1 2010
Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
*Bureau of* Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name   LYNN   D.   MATTINGLY

Address   21   ALDER   CT

City   PAONIA   State   CO   Zip Code   81428

Although this is a "form" letter, it expresses exactly my personal concerns & directives to the RMP process.

BLM_0167460

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401



Received
MAR 1 8 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Signature_

JOHN H. McFARLAND
Print Name

BOX B57
Address

PAONIA     CO    81428
City            State        Zip Code

BLM_0167461

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401



Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

MICHAEL J. MCKENNY
Print Name

P.O. BOX 351
Address

HOTCHKISS, CO. 81419
City          State          Zip Code

BLM_0167462

FEB 2 6 2010

FEB 2 6 '1

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature: *Mary Jane Metz*

Print Name: MARY JANE METZ

Address: 14911 ROYAL RD

City: PAONIA   State: CO   Zip Code: 81428

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 2 3 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Signature_

Signature

_Clip Mavele_

Print Name

_PO 1049_

Address

_Paonia, CO 81428_

City                    State        Zip Code

BLM_0167464

Received

MAR 1 2 2010

Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Alicia Michelsen
_____
Signature

Alicia Michelsen
_____
Print Name

15529 Black bridge Rd
_____
Address

Paonia                Colorado        81428
_____
City                  State           Zip Code



Received
MAR 1 2 2010
Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_F Michelson_

Signature

Print Name

15529 Black Bridge rd

Address

Paonia          Co          81428

City                    State              Zip Code

BLM_0167466

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received
MAR 1 2 20??
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Quinn

Signature

Quinn michelson

Print Name

15529 Black Bridge rd

Address

Paonia          CO          81428

City          State          Zip Code

## BLM WANTS TO HEAR FROM YOU

The Bureau of Land Management's (BLM) Uncompahgre Field Office is currently undergoing revision of their Resource Management Plan. This Plan will guide the agency in the management of 900,000 acres of publicly-owned land over the next twenty years. Much of this land is in Delta County and the surrounding area. BLM is currently holding a public comment period on the plan revision and is asking for your input. Please write BLM today and let them know you have concerns about natural gas production. Here is some background information:

➢ The BLM has already leased approximately 100,000 acres of federal minerals in the North Fork area for oil and gas drilling.

➢ Tens of thousands of additional acres are available for oil and gas leasing in the Delta County region under the current Resource Management Plan.

➢ Eleven natural gas wells have already been drilled in the Bull Mountain area, just north of the Paonia Reservoir on the west side of Route 133. So far, 150 wells have been proposed for this area.

➢ Construction of a 25-mile pipeline to transport gas from Bull Mountain to a facility on the north side of the Grand Mesa was recently completed. It is estimated that it will take gas from at least 1,300 wells to fill this pipeline.

➢ Natural gas drilling will take place this summer on the proposed 25,000-acre Oak Mesa Unit, which is located entirely in Delta County and sits between Dry Creek on the West, East Roatcap Creek on the East, the Forest Service boundary on the North, and the South Rim of Oak Mesa.

HERE'S HOW YOU CAN HELP!

Compose your own letter to send to BLM or simply sign the accompanying letter and mail it in today. Letters should be mailed to:

> Bruce Krickbaum, RMP Project Manager
> Bureau of Land Management, Uncompahgre Field Office
> 2465 South Townsend Avenue
> Montrose, Colorado 81401

Please make copies of this letter to give to your friends who are interested in natural gas issues.

This information is provided to you by *Citizens For A Healthy Community*, a non-profit organization working to protect people and their environment from irresponsible oil and gas development in the Delta County region.

Board of Directors, *Citizens For A Healthy Community*
Brad Burritt
Danielle Carré
Daniel Feldman
Mitch Gershten
Ashley Krest
Robyn Morrison
Robin Smith

*Citizens For A Health Community, P.O. Box 291, Hotchkiss, Colorado 81419*
*citizenshealthycommunity@gmail.com*



Received
MAR 1 2 2010
Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Raladv

Signature

RAWN MICHELSEN

Print Name

16529 Black Bridge Rd

Address

Paonia          CO          81428

City                State        Zip Code

BLM_0167469

# BLM WANTS TO HEAR FROM YOU

The Bureau of Land Management's (BLM) Uncompaghre Field Office is currently undergoing revision of their Resource Management Plan. This Plan will guide the agency in the management of 900,000 acres of publicly-owned land over the next twenty years. Much of this land is in Delta County and the surrounding area. BLM is currently holding a public comment period on the plan revision and is asking for your input. Please write BLM today and let them know you have concerns about natural gas production. Here is some background information:

➢ The BLM has already leased approximately 100,000 acres of federal minerals in the North Fork area for oil and gas drilling.

➢ Tens of thousands of additional acres are available for oil and gas leasing in the Delta County region under the current Resource Management Plan.

➢ Eleven natural gas wells have already been drilled in the Bull Mountain area, just north of the Paonia Reservoir on the west side of Route 133. So far, 150 wells have been proposed for this area.

➢ Construction of a 25-mile pipeline to transport gas from Bull Mountain to a facility on the north side of the Grand Mesa was recently completed. It is estimated that it will take gas from at least 1,300 wells to fill this pipeline.

➢ Natural gas drilling will take place this summer on the proposed 25,000-acre Oak Mesa Unit, which is located entirely in Delta County and sits between Dry Creek on the West, East Roatcap Creek on the East, the Forest Service boundary on the North, and the South Rim of Oak Mesa.

HERE'S HOW YOU CAN HELP!

Compose your own letter to send to BLM or simply sign the accompanying letter and mail it in today. Letters should be mailed to:

> Bruce Krickbaum, RMP Project Manager
> Bureau of Land Management, Uncompahgre Field Office
> 2465 South Townsend Avenue
> Montrose, Colorado 81401

Please make copies of this letter to give to your friends who are interested in natural gas issues.

This information is provided to you by *Citizens For A Healthy Community*, a non-profit organization working to protect people and their environment from irresponsible oil and gas development in the Delta County region.

Board of Directors, *Citizens For A Healthy Community*
Brad Burritt
Danielle Carré
Daniel Feldman
Mitch Gershten
Ashley Krest
Robyn Morrison
Robin Smith

*Citizens For A Health Community, P.O. Box 291, Hotchkiss, Colorado 81419*
*citizenshealthycommunity@gmail.com*

BLM_0167470

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

Received

MAR 2 3 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Daniel C. Miller
Signature

Daniel C. Miller
Print Name

801 Oak Dr.
Address

Durango, CO 81301-7262
City          State        Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received
MAR 2 3 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

*Robert W. Miller*
Signature

Robert W. Miller
Print Name

1920 Florida Rd Apt 12
Address

Durango          CO     81301
City             State       Zip Code

BLM_0167472

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 2 3 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

• Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

• Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

• Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

• Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

• Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

• Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

• Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

• Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Rebecca Miller
PO Box 1690
Paonia, CO 81428
970-527-7626
acupuncture@tds.net

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 2 3 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Rob Miller
PO Box 1690
Paonia, CO 81428
970-527-7622
oldtime@tds.net

BLM_0167474

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received
MAR 2 3 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name   Timothy Miller

Address   16877 GRANGE

City   Paonia   State   CO   Zip Code   81428

BLM_0167475



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Kathy Monet-Smith
Print Name

P.O. Box 812
Address

Paonia, CO 81428
City          State        Zip Code

BLM_0167476

| | |
|---|---|
| **From:** | Nancy Murphy |
| **To:** | UFORMP@blm.gov |
| **Subject:** | Scoping Comments on the Resource Management Plan (RMP) Revision |
| **Date:** | Monday, March 22, 2010 7:59:20 AM |

Bruce Krickbaum, RMP Project Manager

Bureau of Land Management, Uncompahgre Field Office

2465 South Townsend Avenue

Montrose, Colorado 81401

Dear Mr. Krickbaum,

 I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

• Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

• Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

• Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

• Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

• Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

• Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

• Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

• Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

 Thank you for taking my comments into consideration.

Sincerely,

Nancy Murphy

15422 Fire Mountain Road
Paonia, CO 81428

BLM_0167478

IN



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because, at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

1 A-PI NRED

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas leasing twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

**I am a general contractor and sportsman and the affect I have seen on the movement of the elk herds and the changes in the natural landscape due to the drilling is alarming. I have a concern about the long term affect it will have upon the hunting and herd health in Delta County.**

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name
PO Box 628 Paonia Co 81428



RECEIVED
MAR 1 2010
BY:

2/25/10

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Lee Faye Overton
Signature

LEE SAYRE OVERTON
Print Name

15439 Ainsbury Rd
Address

PAONIA          Co          81428
City                State          Zip Code

BLM_0167480

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 2 6 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Marvin D. Petersen
Print Name

14189 Thompson Rd (PO Box 1426)
Address

PAONIA,     CO     81428
City                 State          Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received
MAR 2 9 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name   Jodi Peterson

Address   PO Box 1093

City   Paonia   State   Co   Zip Code   81428

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management
Uncompahgre Field Office
2465 S. Townsend Ave.
Montrose, Co. 81401

Received
MAR 3 0 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan Revision

Dear Mr. Krickbaum,

1 A-PI NRED

I would like to voice my concerns about the current coal bed methane gas leasing and production on public land. I like to hike and ski in the Colorado back country and am saddened to see so much of the country I love be under lease for gas drilling. I do not believe this land should be leased for drilling until it can be proven absolutely safe.

My first concern is for the safety of the water within our watershed of the North Fork of the Gunnison River. I have been an organic gardener here, in Paonia, for the past 10 years. I moved here because of the clean water and air, the growing season and the close proximity to road less and wilderness lands. If the water within this watershed is contaminated in any way my livelihood will be seriously compromised. When I watched presentations by the oil and gas companies last weekend, I was deeply concerned by the issues they failed to address. Even if the depth of drilling is different than the surface water sources, there was no discussion of evaporation ponds, spillage, or transportation of fracturing fluids, to name a few. Given the current record of mistakes around western Colorado by this industry, I ask that protection of water resources as well as air quality be number one on your priority list for resource management. If the air and water quality in this area of consideration are compromised in any way, that will greatly affect the management of all other resources and the lives of all area residents.

**I would like you to close to future leasing all areas that are now open to new oil and gas leasing in the current RMP. I am also asking you to place a moratorium on all natural gas drilling permits on currently leased lands, until the plan revision is completed.**
For all current leases that are permitted at this time:

- Ensure that no domestic, irrigation, surface or ground water will become contaminated as a result of natural gas drilling procedures.
- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.
- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federal leased, permitted, or unitized area.
- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.
- Protect private property rights by prohibiting oil and gas development on private lands within a unitized area without the written permission of the surface property owner.
- Protect wildlife habitat around drill sites

I am asking you as managers of our public lands to take into consideration the larger picture of global warming. I am wondering why we continue to pursue drilling for fossil fuels, when we clearly need to change our energy sources to renewable. When, if not now, can this vital issue be addressed? I am asking you to please take this larger issue into consideration during your current resource management plan revision.

Sincerely,

Tony Peters

Tony Peters
42225 Minnesota Cr. Rd.
Paonia, Colorado 81428
(970)527-6505
dclaire@tds.net

Bureau of Land Management
2465 South Townsend Avenue
Montrose, Colorado  81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Crystal Petitt_
Signature

Crystal Petitt
Print Name

P.O. Box 264
Address

Paonia                    CO              81428
City                          State            Zip Code

BLM_0167485



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Carol Phelps
Signature

Carol Phelps
Print Name

555 East 5th St.
Address

Delta, CO 81416-2313
City          State          Zip Code

BLM_0167486

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 2 4 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Carol R. Pierce (Carol R. Pierce)
Signature

Carol R. Pierce (Carol R. Pierce)
Print Name

42326 Hwy, 133
Address

Paonia,      CO      81428
City                State              Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

*Received*
*MAR 2 3 2010*
*Uncompahgre Field Office*

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

*[signature]*
Signature

*Marian Pierce*
Print Name

40543 O Road
Address

Pronia                CO          81428
City                     State            Zip Code

BLM_0167488

Received
MAR 2 6 2010
~npahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

*Judith R. Reed*
Signature

Judith R. Reed
Print Name

PO Box 1602
Address

Paonia          CO          81428
City                State                Zip Code

BLM_0167489

Received
MAR 1 9 2010
Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name   JEFF REGAN

Address   P.O.B 382

City   PAONIA.   State   CO.   Zip Code   81428

BLM_0167490

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 1 2 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Micah Ross
Print Name

330 w. Bridge St # 340
Address

Hotchkis Co          81419
City              State          Zip Code

Received

MAR 4 2010

Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because, at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas leasing twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Daniel K. Rubinoff
Signature

Daniel K. Rubinoff
Print Name

40007 Panorama Rd.
Address

Paonia, CO 81428
City                State          Zip Code

BLM_0167492

BLM_0167493

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

*Received*
*MAR 2 4 2010*
*Uncompahgre Field Office*

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name   *Lynn Ruoff*

Address   *90 B. 1607*

City   *Paonia*   State   *CO*   Zip Code   *81428*

BLM_0167494



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by *leasing and permitting natural gas development* without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

*Thank you for taking my comments into consideration.*

Sincerely,

Signature

IVAN SANDOVAL
Print Name

#750 GRAND AVE. 1
Address

DELTA          COLORADO       81416
City            State          Zip Code



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because, at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas leasing twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Peter H. Schaiberger
Print Name

280 Cedar Way
Address

New Castle              CO        81647
City                         State        Zip Code

| | |
|---|---|
| **From:** | James schott |
| **To:** | UFORMP@blm.gov |
| **Subject:** | BLM planning |
| **Date:** | Friday, March 19, 2010 2:04:12 PM |

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study

BLM_0167497

Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,


James Schott
Lamborn Mesa Road
Paonia, CO 81428

970-527-5105

BLM_0167498

IN

Received
FEB 2 5 2010
Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

1 P-I NRED

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

2 A-PI NRED

Thank you for taking my comments into consideration.

Sincerely,

_____
Signature

MARK SHAFFER
Print Name

P.O. Box 220
Address

AUSTIN, Co 81410
City                State              Zip Code

THESE GAS WELLS WILL LIKELY CONTAMINATE THE DOMESTIC SPRINGS AND WELLS IN THE NORTH FORK. WHEN THAT HAPPENS WHAT IS OUR RECOURSE?

PLEASE DON'T ALLOW HYDRAULIC FRACTURING.

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

*Received*

*MAR 24 2010*

*Uncompahgre Field Office*

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name   MARK SHAFFER

Address   37048 CAMPBELL RD

City   Hotchkiss   State   Co   Zip Code   81419



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Sara Sharer
Print Name

P.O. Box 1047
Address

Paonia       Co       81428
City          State     Zip Code

| | |
|---|---|
| **From:** | daveshishim.tds.net |
| **To:** | UFORMP@blm.gov |
| **Subject:** | Comments on RMP |
| **Date:** | Friday, March 19, 2010 2:32:19 PM |
| **Attachments:** | public comment letter on RMP.doc |

March 19, 2010

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

Re: Comments on the Resource Management Plan Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

• Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

• Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

• Require energy companies to fully disclose all the composition of all drilling and hydraulic fracturing fluids.

• Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

• Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

• Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

• Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as areas "suitable" for wilderness.

• Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,


David E. Shishim
40001 Cedar Drive
Paonia, CO 81428
*daveshishim@tds.net*

BLM_0167503

March 19, 2010

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

Re: Comments on the Resource Management Plan Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all the composition of all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as areas "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,


David E. Shishim
40001 Cedar Drive
Paonia, CO 81428
daveshishim@tds.net



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

·   Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

·   Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

·   Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

·   Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

·   Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

·   Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

·   Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

·   Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Adam Silverstein

Adam Silverstein
34830 Powell Mesa Rd.
Hotchkiss, CO 81419



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

*Bernadette M. Stech*
Signature

Bernadette M. Stech
Print Name

39675 Panorama Rd.
Address

Paonia,          CO          81428
City                State              Zip Code

BLM_0167506

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received
FEB 2 4 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing
publicly owned lands in a way that ensures both the health of the land and the people who live in and
around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan
revision is completed because at times in the past, the BLM has failed to live up to this standard by
leasing and permitting natural gas development without an environmental review and public input as
called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of
  natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the
  ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a
  unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and
  Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can
  consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in
  the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name: Dan Stech

Address: 39675 Panorama Rd

City: Paonia   State: Co   Zip Code: 81428

Please
protect our
future.

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received
MAR 2 4 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Joyce Tanner
Print Name

15495 Black Bridge Rd
Address

Paonia, Co      81428
City                    State            Zip Code

BLM_0167508



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Carrie M. Tentori
Print Name

39625 Pitkin Rd.
Address

Paonia, CO  81428
City          State     Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401



RECEIVED
MAR 1 2010
BY:

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Eric Tentori D.O.
Print Name

39625 Pitkin Rd.
Address

Paonia            Co            81428
City              State          Zip Code

BLM_0167510

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

Received

MAR 1 9 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Jacqueline Treinen_
Signature

DAVID KREST    _Jacqueline Treinen_
Print Name

H1391 OMEGA RD
Address

Paonia          CO          81428
City            State       Zip Code

BLM_0167511

BLM_0167512

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

*Received*
*MAR 24 2010*
*Uncompahgre Field Office*

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

*Paul K. Tschoepe*
Signature

*Paul K. Tschoepe*
Print Name

*P.O. Box 974*
Address

*Paonia*          *Colo.*          *81428*
City                    State              Zip Code

BLM_0167513

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 2 3 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

As homeowners in Leroux creek, who will be directly and catastrophically affected by negligence, bushisms, fraud, mistakes, bad management, greed, failure to enforce compliance, and any of the other multitude of real and present dangers, we are extremely averse to the direction that seems to be in progress for the Oak Mesa project we are getting wind of.

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_____
Signature

John-Marc Ventimiglia
Print Name

_____
Signature

Eliane Wissooq
Print Name

14525 3100 rd
_____
Address

Hotchkiss                CO                81419
_____
City                     State             Zip Code

BLM_0167515

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received

MAR 2 3 2010

Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

C. Philip Volckhausen
Print Name

P.O. Box 111    1003 3rd St
Address

Peonia         Co        81428
City           State      Zip Code

BLM_0167518

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado  81401

Received
MAR 2 4 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Signature

Print Name

LUCIA R. VORYS
15521 BLACK BRIDGE RD.
PAONIA, CO  81428

Address

City                    State                    Zip Code

BLM_0167519

ORG

**From:** Gretchen Nicholoff
**To:** UFORMP@blm.gov
**Subject:** Scoping comments on Uncompahgre RMP
**Date:** Monday, March 29, 2010 8:55:17 AM

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401
Subject: Scoping Comments on the Uncompahgre Resource Management Plan (RMP)
Revision
Dear Bruce Krickbaum:
As part of the March 16, 2010, caucus of the Delta County Democratic Party, a resolution
was presented concerning recommendations to the Scoping Comments on the Uncompahgre
Resource Management Plan. Registered voters attending that Delta County Democratic Party
Caucus voted to support this resolution. Therefore, the Delta County Democratic Party
submits the following as Scoping Comments on the Uncompahgre Resource Management
Plan. We recommend that the Bureau of Land Management conduct the necessary planning
and take into account the best available information so as to ensure that:

1 A-PI NRED → Local wells, springs and potable ground water aquifers, currently developed and
available in the future will not be contaminated or adversely affected by natural gas drilling
and development;

2 A-PI NRED → US citizens, local and distant, will not see their water resources, potable and
otherwise, adversely affected by the short-term access to the natural gas resource;

3 A-PI NRED → Drilling pads, access roads and all areas disturbed in order to access the natural gas
resource are planned accordingly to prevent soil erosion and require the best available and
most appropriate reclamation and remediation following natural gas drilling and
development;

4 A-PI
NRED → Compressor- and pump-stations are effectively planned and located so as not pose a
safety threat to local residents, both within and without the federal land boundary, and not
present adverse visual, noise or reasonable land use impacts;

5 A-PI NRED → Access roads are effectively planned so as to prevent and avoid dust and hazard as the
natural gas resource is developed and produced;

Toxic, hazardous, carcinogenic, or other potentially harmful fluids are not injected
into the ground while drilling for natural gas on any federally leased, permitted or otherwise
regulated area.

Energy companies will be required to fully disclose all drilling and hydraulic
fracturing fluids that they will use on all federal lands, these in Colorado and other federal
lands.

6 A-PI NRED → The Bureau through its planning and and resource management role, that the energy
companies through their planning role and the regulatory authority through its permitting and
enforcement role will ensure that air, water and wildlife habitat quality and general natural
resource health and welfare will not be degraded as a result of natural gas leasing, permitting,
or unitization decisions;

7 A-PI NRED → The Bureau will protect private property rights by allowing affected private property
and private surface rights owners, in the case of split estates, be actively involved in the
planning and permitting process;

That the Bureau will do its best within the flexibility of federal, state and local laws
and regulations to prohibit oil and gas development on private land within a unitized area
without the written permission of the surface property owner; and

8 A-PI NRED

BLM_0167520

Through the National Environmental Policy Act planning process and other applicable laws and regulations, ensure that natural gas leases and permits on public domain public lands protect wildlife habitat from fragmentation.

We suggest and recommend that the BLM:

Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as suitable for wilderness; and

Temporarily close to leasing all areas that are open to new oil and gas leasing in the current RMP until that time that the issues raised here are effectively addressed and the multiple resources effectively protected, now, and into the future. When that planning has been conducted, and the resources protected, now and into the future, the BLM can then withdraw the temporary closure.

Thank you for your consideration of these comments.

Sincerely,

Marty Watts

Chair, Delta County Democratic Party

March 19, 2010



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both *the health of the land and the people who live in and around those lands.* I am asking for *a moratorium on all natural gas leasing and permitting until the plan revision is completed* because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- ENSURE that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- PROHIBIT the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- REQUIRE energy companies to *fully disclose all drilling and hydraulic fracturing fluids.*

- ENSURE air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- PROTECT private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- REQUIRE all natural gas leases and permits to protect wildlife habitat from fragmentation.

- DESIGNATE the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- CLOSE TO LEASING all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Callie West
P.O. Box 1532
1118 Third St.
Paonia, CO 81428

BLM_0167522



Received
MAR 2 3 2010
Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Dan Wheeler
Signature

DAN WHEELER
Print Name

PO Box 1667
Address

PAONIA          CO          81428
City              State          Zip Code

BLM_0167523

Received
MAR  8 2010
Uncompahgre Field Office

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Holly Wheeler_
Signature

_Holly Wheeler_
Print Name

_39667 Panorama Rd_
Address

_Paonia          CO          81428_
City                State              Zip Code

BLM_0167525

Mr. Bruce Krickbaum

RMP Project Manager

Bureau of Land Management

2465 S. Townsend Avenue

Montrose, CO  81401

Dear Mr. Krickbaum:

*Received*
*MAR 2 4 2010*
*Uncompahgre Field Office*

Please include my input as the Bureau of Land Management Uncompahgre Field Office revise the Resource Management Plan for the Uncompahgre planning area.

Do not take any action that would adversely affect our ability to pursue placer mining on the San Miguel River.

Mineral development, including pipelines and other infrastructure should be managed responsibly to minimize resource conflicts.  The Mining Law of 1872 provides the legal framework (rights) for mining and prospecting activities on public land.  Small-scale placer miners on the San Miguel River do not present a resource conflict.

Public lands, especially in the Pinion Bridge area of the San Miguel River, should remain open to placer gold prospecting; this activity does not conflict with other land uses.

Special conditions of approval should not be placed on mineral development because existing regulations would make such conditions redundant and unnecessarily cumbersome.

There are visual considerations with respect to public land use.  That is one reason I am a proud member of the Western Colorado Chapter of the Gold Prospectors Association of America.  Our club members adhere to a code of ethics that obligate us to leave the land better than we found it.  Please see www.wescogpaa.org to review this code in detail.

Mineral development provides exceptionally positive social and economic effects and should be facilitated.  Current regulations present more than enough restrictions.  Planning decisions to facilitate the development of mining operations present significant positive opportunity for communities in southwest Colorado.

Please do not restrict us from the right and heritage of placer mining.

Sincerely,

Jerry D. Winkler

| | |
|---|---|
| **From:** | Elsie Winne |
| **To:** | UFORMP@blm.gov |
| **Subject:** | Public Comment |
| **Date:** | Sunday, March 21, 2010 8:52:58 PM |

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.
- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.
- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.
- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.
- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.
- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.
- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.
- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Elsie Winne

BLM_0167527

14414 2900 Road
Hotchkiss, CO 81419

BLM_0167528

Bruce Krickbaum, RMP Project Manager     IN
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401


Received
MAR 8 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

1 A-PI NRED

Dear Mr. Krickbaum,

I am not current resident in Delta County though I am planning on becoming one. The only way I would feel comfortable investing in the Delta County region would be to know that there is action against blindly continuing gas drilling on watersheds that feed the North Fork Valley i.e. Bull Mountain. I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because, at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas leasing twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

_Elizabeth Worcester_
Print Name

542 Dameron dr.
Address

Prescott AZ.          86301
City                State          Zip Code

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Received
MAR - 9 2010
Uncompahgre Field Office

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Cynthia Wutchiett
Larzy M Ranch
40849 M Road
Paonia CO 81428

BLM_0167530



Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

Connie V. Wyatt
Signature

Connie V. Wyatt
Print Name

15430 Ainsbury Rd
Address

Paonia                Co          81428
City                State        Zip Code

BLM_0167531

Bruce Krickbaum, RMP Project Manager
Bureau of Land Management, Uncompahgre Field Office
2465 South Townsend Avenue
Montrose, Colorado 81401

*Received*
*MAR 24 2010*
*Uncompahgre Field Office*

Re: Scoping Comments on the Resource Management Plan (RMP) Revision

Dear Mr. Krickbaum,

I believe the BLM should state unequivocally in the revised RMP that it is fully committed to managing publicly owned lands in a way that ensures both the health of the land and the people who live in and around those lands. I am asking for a moratorium on all natural gas leasing and permitting until the plan revision is completed because at times in the past, the BLM has failed to live up to this standard by leasing and permitting natural gas development without an environmental review and public input as called for under the National Environmental Policy Act. In addition, I believe the revised RMP should:

- Ensure that no domestic, irrigation, surface, or ground water will become contaminated as a result of natural gas leasing, permitting, or unitization decisions.

- Prohibit the injection of toxic, hazardous, carcinogenic, or other potentially harmful fluids into the ground while drilling for natural gas on any federally leased, permitted, or unitized area.

- Require energy companies to fully disclose all drilling and hydraulic fracturing fluids.

- Ensure air quality will not be degraded as a result of natural gas leasing, permitting, or unitization decisions.

- Protect private property rights by prohibiting oil and gas development on private land within a unitized area without the written permission of the surface property owner.

- Require all natural gas leases and permits to protect wildlife habitat from fragmentation.

- Designate the Adobe Badlands Wilderness Study Area, Camel Back Wilderness Study Area, and Tabeguache Area as "suitable" for wilderness.

- Close to leasing all areas that are open to new oil and gas leasing in the current RMP. We can consider reopening these areas to oil and gas development twenty years from now in the next RMP if, in the ensuing time period, technology has been developed to extract these minerals safely.

Thank you for taking my comments into consideration.

Sincerely,

*Angelina Yandell*
Signature

Angelina Yandell
Print Name

1327 Pumpkin Hollow Rd.
Address

Hotchkiss, Co, 8419
City          State          Zip Code

BLM_0167532

BLM_0167533

## I.11   APPROVAL

The decision is hereby made to approve the attached Resource Management Plan. This Record of Decision serves as the final decision for the Resource Management Plan and becomes effective on the date it is signed by the BLM State Director.

### FIELD MANAGER RECOMMENDATION

Having considered a full range of alternatives, associated impacts, and public and agency input, I recommend the adoption and implementation of the Uncompahgre Resource Management Plan.

_____      4/2/2020
Gregory Larson                        Date
Manager, BLM Uncompahgre Field Office

### DISTRICT MANAGER CONCURRENCE

I concur with the adoption and implementation of the Uncompahgre Resource Management Plan.

_____(acting)            4/2/2020
Stephanie Connolly                    Date
Manager, BLM Colorado Southwest District

### STATE DIRECTOR APPROVAL

In consideration of the foregoing, I approve the Uncompahgre Resource Management Plan.

_____      4/2/2020
Jamie E. Connell                      Date
BLM Colorado State Director

BLM_0167534



United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Colorado State Office
2850 Youngfield Street
Lakewood, Colorado 80215-7210
www.co.blm.gov



In Reply Refer To:
1610 (COS050)

Dear Reader:

The Bureau of Land Management (BLM) is pleased to announce that, after many years of
hard work and collaboration, the BLM Uncompahgre Field Office (UFO) Approved
Resource Management Plan (RMP) is complete. The Approved RMP will provide guidance
for managing approximately 675,800 acres of BLM-administered public lands and 971,220
acres of federal mineral estate across Montrose, Gunnison, Ouray, Mesa, Delta, and San
Miguel Counties.

The enclosed Record of Decision (ROD) and Approved RMP were prepared in accordance
with the Federal Land Policy and Management Act of 1976, as amended, and the National
Environmental Policy Act of 1969, as amended. The ROD's approval serves as the final
decision for all land use planning and implementation decisions described in the enclosed
Uncompahgre Approved RMP.

The Proposed RMP/Final Environmental Impact Statement (EIS) was subject to a 30-day
protest period that ended on July 29, 2019. The BLM received 86 protest letters, and the
BLM Director reviewed all protest issues for the proposed planning decisions. The Director
concluded that the BLM Colorado State Director followed the applicable laws, regulations,
and policies, and considered all relevant resource information and public input. The BLM
Director denied the protests, and that decision is the final decision of the US Department of
the Interior.

The 60-day Governor's consistency review for the Proposed RMP/Final EIS, which
promotes consistency with State government plans or policies, concluded on September 9,
2019. The Governor submitted a letter identifying some concerns in response to the
consistency review. They included consistency with recently enacted State legislation and
State wildlife plans. The BLM thoroughly reviewed the Governor's letter and confirmed that
the Proposed RMP is consistent with existing State plans; however, as a result of the
Governor's consistency review, the BLM adopted a new controlled surface use stipulation
for fluid mineral leasing. Its purpose is to ensure the function and suitability of big game
winter range, migration, and production areas. The stipulation requires the development of a
mitigation plan, in coordination with Colorado Parks and Wildlife. The mitigation plan must
demonstrate that the overall function and suitability of big game winter range, migration,

and production areas will not be impaired. Also, the BLM modified stipulations associated with Gunnison sage-grouse habitat to include consultation with Colorado Parks and Wildlife on any proposed exceptions, waivers, and modifications. In addition, the general fish and wildlife objective was revised to include infrastructure so as not to limit consideration of route density to only travel management.

The ROD and Approved RMP are available online at https://go.usa.gov/xnpgD. Limited printed copies or CD copies are available by request from the Montrose Public Lands Center, Uncompahgre Field Office, 2505 South Townsend Avenue, Montrose, Colorado 81401, or by calling (970) 240-5300.

The BLM greatly appreciates all those who contributed to the Uncompahgre RMP planning effort, particularly members of the public, who provided important feedback; our cooperating agencies, which included federal, state, and local governments; the Southwest Colorado Resource Advisory Council; and Native American Tribes. The extensive public interest and involvement in this planning process ensured that the Approved RMP will sustain the health, diversity, and productivity of BLM-administered lands for present and future generations to use and enjoy.

Sincerely,

Jamie E. Connell
Colorado State Director

U.S. Department of the Interior
Bureau of Land Management
Uncompahgre Field Office
Montrose, Colorado

April 2020

# Uncompahgre Field Office
## Record of Decision and Approved Resource Management Plan



Uncompahgre Field Office
Record of Decision and Approved Resource Management Plan

U.S. Department of the Interior
Bureau of Land Management
April 2020



BLM_0167537

BLM MISSION

It is the mission of the Bureau of Land Management to sustain the
health, diversity, and productivity of the public lands for the use
and enjoyment of present and future generations.

BLM/CO/PL-20-009

Cover photo by Lee Dusa

BLM_0167538



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Colorado State Office
2850 Youngfield Street
Lakewood, Colorado 80215-7210
www.co.blm.gov



In Reply Refer To:
1610 (COS050)

Dear Reader:

The Bureau of Land Management (BLM) is pleased to announce that, after many years of hard work and collaboration, the BLM Uncompahgre Field Office (UFO) Approved Resource Management Plan (RMP) is complete. The Approved RMP will provide guidance for managing approximately 675,800 acres of BLM-administered public lands and 971,220 acres of federal mineral estate across Montrose, Gunnison, Ouray, Mesa, Delta, and San Miguel Counties.

The enclosed Record of Decision (ROD) and Approved RMP were prepared in accordance with the Federal Land Policy and Management Act of 1976, as amended, and the National Environmental Policy Act of 1969, as amended. The ROD's approval serves as the final decision for all land use planning and implementation decisions described in the enclosed Uncompahgre Approved RMP.

The Proposed RMP/Final Environmental Impact Statement (EIS) was subject to a 30-day protest period that ended on July 29, 2019. The BLM received 86 protest letters, and the BLM Director reviewed all protest issues for the proposed planning decisions. The Director concluded that the BLM Colorado State Director followed the applicable laws, regulations, and policies, and considered all relevant resource information and public input. The BLM Director denied the protests, and that decision is the final decision of the US Department of the Interior.

The 60-day Governor's consistency review period for the Proposed RMP/Final EIS, which promotes consistency with State government plans or policies, concluded on September 9, 2019. The Governor submitted a letter identifying some concerns in response to the consistency review. They included consistency with recently enacted State legislation and State wildlife plans. The BLM thoroughly reviewed the Governor's letter and confirmed that the Proposed RMP is consistent with existing State plans; however, as a result of the Governor's consistency review, the BLM adopted a new controlled surface use stipulation for fluid mineral leasing. Its purpose is to ensure the function and suitability of big game winter range, migration, and production areas. The stipulation requires the development of a mitigation plan, in coordination with Colorado Parks and Wildlife. The mitigation plan must demonstrate that the overall function and suitability of big game winter range, migration,

and production areas will not be impaired. Also, the BLM modified stipulations associated with Gunnison sage-grouse habitat to include consultation with Colorado Parks and Wildlife on any proposed exceptions, waivers, and modifications. In addition, the general fish and wildlife objective was revised to include infrastructure so as not to limit consideration of route density to only travel management.

The ROD and Approved RMP are available online at https://go.usa.gov/xnpgD. Limited printed copies or CD copies are available by request from the Montrose Public Lands Center, Uncompahgre Field Office, 2505 South Townsend Avenue, Montrose, Colorado 81401, or by calling (970) 240-5300.

The BLM greatly appreciates all those who contributed to the Uncompahgre RMP planning effort, particularly members of the public, who provided important feedback; our cooperating agencies, which included federal, state, and local governments; the Southwest Colorado Resource Advisory Council; and Native American Tribes. The extensive public interest and involvement in this planning process ensured that the Approved RMP will sustain the health, diversity, and productivity of BLM-administered lands for present and future generations to use and enjoy.

Sincerely,

Jamie E. Connell
Colorado State Director

# Uncompahgre Field Office

## Record of Decision and

## Approved Resource Management Plan

**Prepared by US Department of the Interior**
**Bureau of Land Management**
**Uncompahgre Field Office**
**Montrose, Colorado**

### Cooperating Agencies:

US Department of the Interior, Fish and Wildlife Service
US Department of the Interior, Bureau of Reclamation
US Department of Agriculture, Forest Service, Grand Mesa, Uncompahgre, and Gunnison National Forests
Colorado Department of Natural Resources (Division of Parks and Wildlife, Water Conservation
Board, Natural Heritage Program, State Forest Service, Reclamation Division, Mining and Safety)
Delta Soil Conservation District
Delta County
Gunnison County
Montrose County
Ouray County
San Miguel County
City of Montrose
Town of Cedaredge
Town of Norwood
Town of Nucla
Town of Olathe
Town of Orchard City
Town of Paonia
Town of Ridgway

**April 2020**

BLM_0167541

This page intentionally left blank.

BLM_0167542

# TABLE OF CONTENTS

Chapter                                                                                          Page

**I. RECORD OF DECISION** ........................................................................................................ I-1

   I.1      Introduction .......................................................................................... I-3
        I.1.1   Overview ................................................................................. I-3
   I.2      Decision ............................................................................................... I-3
   I.3      Alternatives ......................................................................................... I-3
        I.3.1   Introduction ........................................................................... I-3
        I.3.2   Alternatives Analyzed in Detail ............................................. I-4
        I.3.3   Environmentally Preferable Alternative ................................ I-4
        I.3.4   Implementation Decisions ...................................................... I-5
        I.3.5   Clarifications and Modifications since the Proposed RMP ... I-5
   I.4      Management Considerations and Decision Rationale .......................... I-7
   I.5      Application of the Resource Management Plan to Existing Projects ... I-8
   I.6      Mitigation Measures ............................................................................ I-8
   I.7      Plan Monitoring ................................................................................... I-9
   I.8      Public Involvement .............................................................................. I-9
        I.8.1   Community Assessment Meetings .......................................... I-9
        I.8.2   Public Scoping ........................................................................ I-10
        I.8.3   Socioeconomic Workshops ................................................... I-10
        I.8.4   Wild and Scenic River Stakeholder Meetings ...................... I-11
        I.8.5   Recreation Focus Group Workshops .................................... I-12
        I.8.6   North Fork Advocacy Group ................................................ I-13
        I.8.7   Shooting Sports Roundtable ................................................... I-13
        I.8.8   Public Comment on the Draft RMP/EIS ............................... I-13
        I.8.9   Review and Protest of the Proposed RMP/Final EIS ............ I-14
        I.8.10  Governor's Consistency Review ........................................... I-15
   I.9      Consultation and Coordination ......................................................... I-15
        I.9.1   Cooperating Agencies Collaboration .................................... I-15
        I.9.2   Southwest Resource Advisory Council Collaboration ........... I-16
        I.9.3   Tribal Government-to-Government Consultation .................. I-17
        I.9.4   US Fish and Wildlife Service Section 7 Consultation ............ I-17
        I.9.5   State Historic Preservation Office Section 106 Consultation . I-18
   I.10     Appeal ................................................................................................. I-18
   I.11     Approval .............................................................................................. I-19

**II. APPROVED RESOURCE MANAGEMENT PLAN** ..................................................... II-1

   II.1     Introduction ........................................................................................ II-3
        II.1.1  Purpose of and Need for the Resource Management Plan .... II-3
        II.1.2  Lands in the Uncompahgre Planning Area and Decision Area II-3
        II.1.3  Scoping and Issues ................................................................. II-4
        II.1.4  Planning Criteria and Legislative Constraints ........................ II-7
        II.1.5  Planning Process .................................................................... II-9
        II.1.6  Related Plans ......................................................................... II-10
        II.1.7  Policy ..................................................................................... II-10
   II.2     Management Decisions ....................................................................... II-10
        II.2.1  Links to Approved RMP Decisions ....................................... II-14
   II.3     Public Involvement .............................................................................. II-122

BLM_0167543

II.4      Management Plan Implementation ...................................................................................... II-122
II.5      RMP Evaluation, Amendment, Maintenance, Monitoring, and Adaptive
         Management ........................................................................................................................... II-122
         II.5.1    RMP Evaluation................................................................................................... II-122
         II.5.2    RMP Amendment................................................................................................. II-123
         II.5.3    RMP Maintenance ............................................................................................... II-123
         II.5.4    RMP Monitoring .................................................................................................. II-124
         II.5.5    Adaptive Management ........................................................................................ II-124
II.6      References............................................................................................................................... II-125
II.7      Glossary .................................................................................................................................. II-128
II.8      Appendices ............................................................................................................................. II-165

# TABLES                                                                                              Page

II-1      Planning Issue Statements ..................................................................................................... II-7
II-2      RMP Program Categories and Abbreviations ................................................................... II-10
II-3      RMP Types of Decisions and Abbreviations .................................................................... II-12
II-4      Approved RMP Decisions..................................................................................................... II-21
II-5      Summary of Wild and Scenic River Study Segments....................................................... II-119
II-6      Renewable Energy Exclusion and Avoidance Areas ....................................................... II-120

# FIGURES                                                                                             Page

1         Uncompahgre RMP Planning Area....................................................................................... II-5

BLM_0167544

| ACRONYMS AND ABBREVIATIONS | Full Phrase |
|---|---|
| ACEC | area of critical environmental concern |
| BLM | United States Department of the Interior, Bureau of Land Management |
| BMP | best management practice |
| CFR | Code of Federal Regulations |
| CPW | Colorado Department of Natural Resources, Parks and Wildlife |
| CSU | controlled surface use |
| Decision Area | public lands and federal mineral estate managed by the BLM |
| DOI | Department of the Interior |
| EIS | environmental impact statement |
| ERMA | extensive recreation management area |
| FLPMA | Federal Land Policy and Management Act of 1976 |
| Forest Service | United States Department of Agriculture, Forest Service |
| GIS | geographic information systems |
| NEPA | National Environmental Policy Act |
| NGD | no ground disturbance |
| NSO | no surface occupancy |
| OHV | off-highway vehicle |
| Planning Area | Uncompahgre Field Office boundary, including all lands regardless of ownership, except Gunnison Gorge National Conservation Area Planning Area and Dominguez-Escalante National Conservation Area Planning Area |
| RMP | resource management plan |
| RMZ | recreation management zone |
| ROD | record of decision |
| ROW | right-of-way |
| SRMA | special recreation management area |
| SRP | special use permit |
| SSR | site-specific relocation |
| TL | timing limitation |
| UFO | Uncompahgre Field Office |
| USFWS | United States Department of the Interior, Fish and Wildlife Service |
| VRM | visual resource management |
| WSA | wilderness study area |
| WSR | Wild and Scenic River |

BLM_0167545

This page intentionally left blank.

# I. RECORD OF DECISION

BLM_0167547

This page intentionally left blank.

BLM_0167548

## I.1   INTRODUCTION

### I.1.1   OVERVIEW

The Federal Land Policy and Management Act of 1976 (FLPMA) directs the United States Department of the Interior (DOI), Bureau of Land Management (BLM) to develop and periodically revise or amend its resource management plans (RMPs). These are the plans that guide the management of BLM-administered lands. This record of decision (ROD) approves the attached RMP to manage public lands administered by the BLM Uncompahgre Field Office (UFO) within the Uncompahgre RMP Planning Area (Planning Area; Figure 1 [**Appendix A**]). The background and rationale for approving the proposed decisions, as well as clarifications and modifications made to the Proposed RMP, are described in this ROD.

## I.2   DECISION

The decision is hereby made to approve the attached RMP as the land use plan for the UFO. The BLM prepared this plan under the authority and regulations implementing FLPMA (43 Code of Federal Regulations [CFR] 1600). It includes broad land use plan decisions that provide the overall direction for managing resources and resource uses in the Decision Area (BLM-administered public lands and federal mineral estate). The BLM prepared an environmental impact statement (EIS) for this RMP in compliance with the National Environmental Policy Act of 1969 (NEPA). Land use plan decisions identified in the Approved RMP are final and become effective when this ROD is signed. The decisions in this ROD and Approved RMP supersede all previous BLM land use plans that guided management within the UFO boundaries, with the exception of the Gunnison Gorge National Conservation Area RMP and the Dominguez-Escalante National Conservation Area RMP.

## I.3   ALTERNATIVES

### I.3.1   INTRODUCTION

An RMP provides broad guidance for managing public lands. The FLPMA directs the BLM to develop RMPs as the primary means to identify and allow for appropriate uses of BLM-administered land. RMP decisions establish goals and objectives (desired outcomes) for resource management that guide future implementation decisions. In addition, the RMP also identifies measures necessary for achieving the outcomes, expressed as management actions (proactive management techniques) and allowable uses (lands that are open or closed to certain uses), including any restrictions on uses.

NEPA requires the development and consideration of a reasonable range of alternatives, including a no action alternative, to analyze impacts and guide decision-makers in developing and selecting the Approved RMP. The BLM developed five full alternatives and one sub-alternative and analyzed them in detail in the Proposed RMP/Final EIS.

BLM_0167549

## I.3.2  ALTERNATIVES ANALYZED IN DETAIL

**Alternative A: No Action** meets the requirement that a no action alternative be considered. It would continue current management direction and prevailing conditions derived from existing planning documents. Goals and objectives for resources and resource uses are based on the portions of the San Juan/San Miguel RMP (BLM 1985) that are geographically applicable to the UFO, and the entire Uncompahgre Basin RMP (BLM 1989), along with associated amendments, activity and implementation level plans, and other management decision documents. Laws, regulations, and BLM policies that supersede RMP decisions would apply.

**Alternative B** emphasizes improving, rehabilitating, and restoring resources and sustaining the ecological integrity of habitats for all priority plant, wildlife, and fish species, while allowing appropriate development scenarios for allowable uses, such as mineral leasing, locatable mineral development, recreation, rights-of-way (ROWs), and livestock grazing. Goals and objectives focus on environmental and social outcomes achieved by sustaining relatively unmodified physical landscapes and natural and cultural resource values for current and future generations.

**Sub-Alternative B.1** is a partial alternative specific to oil and gas leasing and development in the North Fork and Smith Fork drainages of the Gunnison River (referred to as the North Fork), primarily in portions of Delta and Gunnison Counties. This partial alternative is treated as a subset of Alternative B because it is most closely related to Alternative B. Alternative B.1 would close certain areas to oil and gas leasing and would also impose development setbacks with strict surface use restrictions in places where leasing may be allowed. Management actions and allowable uses under Alternative B that are not superseded by those in Alternative B.1 would also apply to the North Fork area.

Under **Alternative C**, appropriate and allowable uses and restrictions would emphasize maximizing resource use, while mitigating impacts on land health. Management direction would recognize and expand existing uses and accommodate new uses to the greatest extent possible. The appropriate development scenarios for allowable uses, such as mineral leasing, locatable mineral development, ROWs, renewable energy, and livestock grazing, would emphasize maximizing resource production in an environmentally responsible manner, while maintaining the basic protection needed to sustain resources.

**Alternative D** is the BLM's preferred alternative from the Draft RMP/EIS. It emphasizes balancing resources and resource use among competing human interests, land uses, and natural and cultural resource values conservation, while sustaining and enhancing ecological integrity across the landscape, including plant, wildlife, and fish habitats.

**Alternative E: Agency Proposed** is the BLM's Proposed RMP, which is a reasonable combination of goals, objectives, allowable uses, and management actions from the alternatives presented in the Draft RMP/EIS. The Proposed RMP would provide comprehensive, long-range decisions for the use and management of resources in the Planning Area administered by the UFO, focusing on the principles of multiple use and sustained yield.

## I.3.3  ENVIRONMENTALLY PREFERABLE ALTERNATIVE

When considering the human social and economic environment and natural environment, the BLM has determined that Alternative B is the environmentally preferable alternative. The Department of the Interior defines the environmentally preferable alternative as the one that causes the least damage to the

BLM_0167550

biological and physical environment and best protects, preserves, and enhances historical, cultural, and natural resources.

Section 101 of NEPA, 42 US Code 4331, identifies six broad policy goals for all federal plans, functions, programs, and resources, to allow the nation to:

- Fulfill the responsibilities of each generation as trustee of the environment for succeeding generations
- Ensure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings
- Attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences
- Preserve important historic, cultural, and natural aspects of the national heritage and maintain, wherever possible, an environment that supports diversity and a variety of individual choice
- Achieve a balance between population and resource use that will permit high standards of living and a wide sharing of life's amenities
- Enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources

## I.3.4  IMPLEMENTATION DECISIONS

Implementation decisions are actions that the BLM takes to implement land use plan decisions and are generally appealable to the Interior Board of Land Appeals under 43 CFR 4.410 (see **Section I.10**, Appeal). This decision approves both the RMP (land use plan decisions) and all implementation actions identified in the RMP.

Most implementation decisions will require further NEPA review to determine whether the analysis in the EIS is adequate, or if further analysis is warranted. In some cases, however, implementation decisions have been analyzed in the Final EIS and are made in the ROD and Approved RMP. The BLM will implement management decisions that involve closures or use restrictions, such as camping and shooting restrictions and closed travel areas, through supplemental rules that allow enforcement measures. The Uncompahgre Approved RMP does not contain any implementation decisions subject to appeal.

## I.3.5  CLARIFICATIONS AND MODIFICATIONS SINCE THE PROPOSED RMP

As a result of ongoing internal review and cooperating agency consultation, the BLM clarified or modified language between the Proposed RMP/Final EIS and the Approved RMP, where appropriate. Minor grammatical and editorial corrections are not identified, but other changes since the Proposed RMP/Final EIS are the following. All changes, including new and modified stipulations, are within the range of alternatives considered in the EIS.

- Policies considered during RMP development included, among those discussed in the Draft RMP/EIS and Proposed RMP/Final EIS, BLM Instruction Memorandum 2012-169, Resource Management Plan Alternative Development for Livestock Grazing (BLM 2012a).
- In this Approved RMP, there are gaps in numbering for each type of stipulation, such as no surface occupancy (NSO), controlled surface use (CSU), and timing limitation (TL). The

BLM_0167551

stipulation numbers were retained from the Proposed RMP/Final EIS for simplicity of future tiering to the Proposed RMP/Final EIS. Some stipulations considered in the Proposed RMP/Final EIS applied to alternatives other than the Proposed RMP, namely Alternatives A, B, C, or D, and only the Proposed RMP (Alternative E) stipulations were carried forward into this Approved RMP. This resulted in gaps in the stipulation numbering in this Approved RMP, which aligns with the Proposed RMP/Final EIS.

- NSO-9/SSR-11, Hydrology River, is included in the Approved RMP. This stipulation was considered in Proposed RMP/Final EIS Alternative D.

- CSU-10/SSR-10, Hydrology River, was omitted from the Approved RMP because its area is covered by NSO-9/SSR-11.

- NSO-11/SSR-13, Hydrology Features, is included in the Approved RMP. This stipulation was considered in Proposed RMP/Final EIS Alternative D.

- CSU-12/SSR-13, Hydrology Features, was omitted from the Approved RMP because its area is covered by NSO-11/SSR-13.

- As a result of the Governor's consistency review, the exception, modification, and waiver criteria in NSO-31, Gunnison Sage-Grouse Breeding Habitat and Critical Habitat, were modified to include consultation with Colorado Department of Natural Resources, Parks and Wildlife (CPW) on any proposed exceptions, waivers, and modifications.

- As a result of the Governor's consistency review, the following was added to the end of CSU-29/SSR-34, Gunnison Sage-Grouse Potential Habitat: "Sound levels at leks, due to new project noise individually or cumulatively from anthropogenic sources, should not exceed 10 decibels above baseline sound levels at the perimeter of a lek during the breeding season (March 1 to May 15), 6 PM to 8 AM. Baseline sound levels should be determined prior to project initiation. Sound level measurement and monitoring protocols will be coordinated with CPW."

- As a result of the Governor's consistency review, CSU-62, Wildlife Big Game Winter Migration and Production Area, is included in the Approved RMP.

- As a result of the Governor's consistency review, the general fish and wildlife objective (F&W-OBJ-01) includes infrastructure and does not limit consideration of route density to only travel management.

- The following was added to the end of NSO-69: "If public water providers develop source water protection plans, apply this NSO to cover the appropriate designated area in the protection plan (typically Zone 2) and apply these protection measures to all public water supplies that use a groundwater well or groundwater under the direct influence of surface water."

- The following was added to the end of CSU-59, Domestic Water Wells: "Also within 305 meters (1,000 feet) of all domestic water wells: Extend surface casing through the freshwater aquifer. Require freshwater mud for drilling the surface casing."

- The following was added to the planning criteria: "The Conservation Agreement or Strategy for Colorado River Cutthroat Trout (*Oncorhynchus clarki pleuriticus*) will be incorporated."

- The Final Wild and Scenic River Suitability Report for the Uncompahgre Planning Area (Appendix P to the Proposed RMP/Final EIS) was modified to reflect the water court's issuance of a decree for an instream flow water right on the Dolores River. The revised Final Wild and

BLM_0167552

Scenic River Suitability Report for the Uncompahgre Planning Area is available on the project website, https://go.usa.gov/xnpgD.

## I.4    MANAGEMENT CONSIDERATIONS AND DECISION RATIONALE

The Approved RMP reflects statutory, regulatory, and national policy considerations. The decision is also based on review and substantive comments from federal, tribal, state, and local governments and agencies, the public, industry, and the 18 cooperating agencies that participated in the planning process.

The Approved RMP provides the best combination of management decisions to meet the purpose of and need for the RMP in consideration of the planning issues and management concerns identified through the planning process. It fulfills the purpose by providing goals and objectives for public lands management and by resolving multiple-use conflicts or issues associated with those requirements that drive the preparation of the RMP. It fulfills the need by addressing current resource conditions, changes in circumstances, such as evolving demands on resources, and new or revised national-level policies (43 CFR 1610.5-6) since preparation of the 1985 San Juan/San Miguel RMP (BLM 1985), 1989 Uncompahgre Basin RMP (BLM 1989), and subsequent amendments.

The Approved RMP provides the most comprehensive framework for addressing the diverse management needs of BLM-administered lands in the Decision Area.

The Approved RMP includes stipulations for fluid mineral leasing, which apply as identified to other surface-disturbing activities. Stipulations are designed to provide resource-specific protections. NSO stipulations restrict fluid mineral activities by requiring surface-disturbing activities to be located outside of the boundary of the NSO area. No ground disturbance (NGD) applies to non-fluid mineral activities. CSU allows fluid mineral leasing but can require imposing special operational constraints or moving the activity more than 200 meters (565 feet) to protect identified values. Areas identified for TLs are closed to fluid mineral exploration and development, surface-disturbing activities, and intensive human activity during identified time frames that may exceed 60 days. The BLM may modify the operations of surface and other disturbance activities caused by the presence of humans and require additional specific or specialized mitigation. These stipulations, as well as other restrictions and management actions, such as ROW exclusion, are designed to sustain water and other resource conditions.

The BLM interdisciplinary team reviewed BLM-administered lands in the Planning Area to determine whether new areas should be considered for designation as ACECs and whether existing ACECs should continue to be managed as ACECs to protect the identified values. The BLM determined that management actions and restrictions as applied under the Proposed RMP, Alternative E, are adequate to protect the relevant and important values of the potential ACECs that were not carried forward for designation.

BLM_0167553

## I.5    APPLICATION OF THE RESOURCE MANAGEMENT PLAN TO EXISTING PROJECTS

Numerous rights and privileges have been established on BLM-administered lands under law, regulation, or planning decisions. The decisions included in this ROD and Approved RMP supersede the 1985 San Juan/San Miguel RMP (BLM 1985), the 1989 Uncompahgre Basin RMP (BLM 1989), and their subsequent amendments. Beyond the revised decisions in the Approved RMP, all BLM-administered lands and federal mineral estate in the UFO remain subject to valid existing rights and to the stipulations and conditions of approval associated with the given right at the time it was granted. This includes the right of reasonable access to surface and subsurface parcels leased for the development of the mineral interest. Oil and gas lease stipulations and lease notices in the Approved RMP will apply to all new leases and terminated leases that are reinstated. On existing leases, the BLM would seek voluntary compliance or would develop conditions of approval for applications for permits to drill or other authorizations, consistent with valid existing rights, to achieve resource objectives of lease stipulations contained in this RMP.

Any activity-level or project-specific authorization or management action must conform with the Approved RMP (i.e., be specifically provided for in the RMP or consistent with the terms, conditions, and decisions in the Approved RMP; 43 CFR 1601.0-5(b)). A land use plan amendment may be necessary to consider monitoring and evaluation findings; substantive new data; new or revised policy; changes in circumstances; or a proposed action that may result in a change in the scope of resource uses or a change in the terms, conditions, and decisions of the Approved RMP.

Projects that require a decision to extend an existing authorization or permit may require modification to conform to the RMP before approval, such as ROW grant and grazing permit renewals. Projects for which site-specific decisions have not yet been signed, but for which preparation of NEPA documents began before the ROD's effective date, may also require modification to conform to the RMP.

## I.6    MITIGATION MEASURES

Commensurate with a landscape level of planning, practicable means to avoid, minimize, reduce, or rectify environmental harm have been provided in the Approved RMP and appendices. In developing the alternatives, the BLM used a variety of management methods and tools, including identifying allowable uses; temporal, spatial, and methodological restrictions on uses; areas where specific uses would be prohibited or restricted; and specific actions needed to achieve RMP goals and objectives. Restrictions on uses include seasonal closures, surface disturbance limitations, and best management practice (BMP) application. The BLM included appropriate mitigation measures in the design of each of the alternatives. Approved RMP **Appendix B** provides the specifics of each stipulation. Other mitigation is identified in the Approved RMP, such as ROW avoidance and exclusion areas.

Approved RMP **Appendix C** lists the BMPs applicable to land use activities authorized on BLM-administered lands in the Decision Area. BMPs are state-of-the-art mitigation measures applied on a site-specific basis to avoid, minimize, reduce, or rectify adverse environmental or social impacts of land use activities. The BMPs in the Approved RMP are not intended to be a complete list, but rather to provide examples of commonly used practices that the UFO may require to reduce impacts of surface-

BLM_0167554

disturbing activities, use, or occupancy. More specific BMPs based on local conditions and resource-specific concerns could be developed once a specific proposal is evaluated through the environmental analysis process. Additional BMPs can be recommended by proponents of proposed activities on BLM-administered lands.

## I.7   PLAN MONITORING

Land use plan decision monitoring is a continuous process occurring over the life of the RMP. The aim is to maintain a dynamic RMP. Monitoring data are collected, examined, and used to draw conclusions about the following:

- Whether planned actions have been implemented in the manner prescribed by the RMP (implementation monitoring)
- Whether RMP allowable use and management action decisions and the resultant implementation actions are effective in achieving program-specific objectives or desired outcomes (effectiveness monitoring)

The BLM uses conclusions drawn from monitoring to make recommendations on whether to continue current management or identify changes that need to be made to implementation practices to better achieve RMP goals. Indicators, methods, locations, units of measure, frequency, and action triggers can be established by national policy guidance, in RMPs, or by technical specialists in order to address specific issues. If implementation of land use plans does not achieve anticipated desired outcomes, adaptive management may be necessary. RMP monitoring and adaptive management are further addressed in Approved RMP Sections II.5.4 and II.5.5, respectively.

Based on staffing and funding levels, monitoring is annually prioritized to be consistent with the goals and objectives of the RMP. The BLM may work in cooperation with local, state, and other federal agencies, or it may use data collected by other agencies and sources when appropriate and available.

## I.8   PUBLIC INVOLVEMENT

### I.8.1   COMMUNITY ASSESSMENT MEETINGS

In 2008, as part of the planning process for the RMP revision, the BLM conducted a community assessment to gather input from counties, cities, towns, and local governments and organizations in the Planning Area. The purposes of the community assessment process were to start a dialogue between the BLM and local communities and to begin identifying issues of importance to these communities before starting the RMP revision process. The BLM, assisted by a community facilitator and contractor staff, held 22 community assessment meetings from late October to mid-December 2008. Targeted participants were county, city, and town governmental staff representatives; elected officials; planning or commission members; local chamber of commerce representatives; members of the BLM Southwest Resource Advisory Council; organizations engaged with the UFO; and individuals active in BLM management concerns.

BLM_0167555

A total of 166 individuals from these groups participated in the meetings. The community assessment yielded the important insight that, while these communities are different and unique and have their own individual values, issues, and concerns, many of them have common concerns. Based on the degree of similarity of identified values and issues, certain geographical areas in the RMP Planning Area could be grouped together for similar or common management approaches. These proposed socioeconomic management units were used as a starting point in the RMP revision process. Results are provided in the Community Assessment of the Uncompahgre Planning Area (BLM 2009a).

## 1.8.2  PUBLIC SCOPING

On December 24, 2009, the BLM mailed a newsletter to more than 390 individuals, announcing the start of the scoping period for the Uncompahgre RMP/EIS. The newsletter provided the dates and venues for the original six scoping open houses, in Hotchkiss, Delta, Montrose, Ridgway, Norwood, and Naturita, Colorado, scheduled in January 2010.

Seven open houses were held in January and February 2010 to provide the public with opportunities to become involved, to learn about the project and the planning process, to meet the Uncompahgre RMP team members, and to offer comments. The BLM added a seventh open house in Telluride, Colorado, in response to a special request from the San Miguel County Commissioners. The scoping meetings were attended by 369 individuals.

In addition to the newsletter, the BLM in a press release, dated January 5, 2010, provided information about the scoping period, the original six scoping open houses, and how to submit scoping comments; it posted the press release on the project website. The BLM also publicized the information with display advertisements in six local newspapers in December 2009 and January 2010 and posted a flyer in various public locations throughout the Planning Area.

Although public scoping meetings began in January 2010, the formal scoping period began with publication of the Notice of Intent in the *Federal Register* on February 25, 2010 (75 Federal Register 8739-8740, February 25, 2010). The Notice of Intent notified the public of the BLM's intent to develop an RMP for the UFO. The scoping period for receipt of public comments ended March 29, 2010.

During the scoping period, the BLM received 214 unique written submissions and 13 different form letters, containing a total of 2,496 unique comments. The largest proportion of public comments during scoping centered around three issues: special designation areas (30.5 percent), notably wilderness, wilderness study areas, and Wild and Scenic Rivers (WSRs); recreation and travel management (25 percent); and nonrenewable energy development (10.3 percent). Detailed information about the comments received and the public outreach process can be found in the Uncompahgre RMP Revision Scoping Summary Report (BLM 2010a).

## 1.8.3  SOCIOECONOMIC WORKSHOPS

In 2010, the UFO hosted six economic strategy workshops in Montrose, Delta, Hotchkiss, Ridgway, Norwood, and Naturita, Colorado. In total, 90 citizens, local government representatives, and local interest group representatives attended. These workshops provided an opportunity for stakeholders from local communities to participate in the planning process. The attendees discussed economic trends in the region, viewed current and historical socioeconomic data, and developed visions for the economic

BLM_0167556

future of their communities. The attendees also discussed how BLM management of public lands is tied to the economy of local communities and of the region as a whole.

Workshop participants identified important current land uses of public lands as they relate to the local economy. Key uses identified were recreation, big game hunting, livestock grazing, mining, and quality of life. The Socioeconomic Baseline Assessment Report provides more information, including the social values of affected groups and individuals (BLM 2010b).

## I.8.4   WILD AND SCENIC RIVER STAKEHOLDER MEETINGS

As required by the Wild and Scenic Rivers Act of 1968, the BLM reviewed rivers and tributary streams in the Planning Area for potential inclusion in the National Wild and Scenic Rivers System. BLM Manual 6400, Wild and Scenic Rivers, Policy and Program Direction for Identification, Evaluation, Planning, and Management (BLM 2012b) identifies 13 criteria for use in the study and designation of watercourses under the Wild and Scenic Rivers Act. This manual guides the BLM in evaluating rivers and streams, using a three-step public process: eligibility, suitability, and congressional action. BLM staff identified 174 river segments within 7 hydrologic units for review. After evaluating these segments, it determined 22 rivers and tributary streams, separated into 29 segments, to be free-flowing and possessed one or more outstandingly remarkable values necessary for eligibility for inclusion in the National Wild and Scenic Rivers System. The Wild and Scenic River Eligibility Report (BLM 2010c) was available for public review and comment as part of the scoping phase of the Uncompahgre RMP revision, from December 2009 to March 2010.

Eligible segments were subject to a suitability evaluation during development of the Draft RMP/Draft EIS, based on the revised BLM Manual 6400. During the suitability process, the BLM and stakeholder groups weighed protective measures for eligible river segments and the corresponding corridor in relation to current and potential identified uses. The group also considered possible environmental and economic consequences of, management issues resulting from, and reasonable alternatives to inclusion in the National Wild and Scenic Rivers System. Preliminary segment boundaries and classifications were reevaluated, in response to public input on the Wild and Scenic River Eligibility Report (BLM 2010c).

Stakeholder group input was critical in evaluating each segment's suitability. Separate stakeholder processes were initiated for segments in the Gunnison River Basin and those in the Dolores and San Miguel River Basins.

Overall, the BLM identified 16 of the 29 segments in the UFO Planning Area as suitable for National Wild and Scenic Rivers System consideration. The BLM published the findings in the 2012 Wild and Scenic River Suitability Report and used the findings to develop the preferred alternative for the Uncompahgre Draft RMP. The preferred alternative was carried forward without change into the Proposed RMP. This ROD/Approved RMP will be used to make National Wild and Scenic Rivers System recommendations to Congress.

### I.8.4.1   Gunnison River Basin Stakeholders

The Colorado River District sponsored the Gunnison River Basin stakeholder group, which held nine public meetings pertaining to Gunnison Basin segments outside of the Dominguez-Escalante National Conservation Area. The Gunnison Basin stakeholder group was unable to reach a consensus on suitability recommendations; however, it did reach consensus that management of the Monitor Creek,

BLM_0167557

Potter Creek, and Roubideau Creek segments recommended as suitable in the Uncompahgre Draft RMP/EIS agency-preferred alternative should maintain certain attributes.

Because the group could not reach consensus, and based on local interdisciplinary team input, the BLM identified three segments in the Gunnison River Basin as suitable (out of seven eligible segments) in the 2012 Wild and Scenic River Suitability Report. That report was then used to develop the agency-preferred alternative for the Uncompahgre Draft RMP.

### I.8.4.2   Dolores and San Miguel River Basin Stakeholders

The Dolores-San Miguel stakeholder group focused on the San Miguel and Dolores Rivers and their tributaries. In the 11 public meetings that it held, the stakeholder group made suitability recommendations and reached consensus. Based on those recommendations, the BLM identified 13 segments in the Dolores and San Miguel River Basin as suitable (out of 21 eligible segments) in the 2012 Wild and Scenic River Suitability Report. That report was then used to develop the agency-preferred alternative for the Uncompahgre Draft RMP.

### I.8.4.3   County Input

All of the stream segments that were preliminarily proposed as suitable in the Gunnison River Basin are in Montrose County. During the Uncompahgre Draft RMP/EIS public comment period, Montrose County's comments on WSRs requested that activities next to WSR segments be restricted only "when such segments have received a WSR designation through Congress;" however, in order to provide Congress with the opportunity to designate a segment, the BLM is required under the Wild and Scenic Rivers Act to manage suitable segments to maintain their outstandingly remarkable values. Representatives of the adjacent Delta County commented that they do "not support any recommendation of these waterways as suitable."

Gunnison County supports all suitability determinations in the agency-preferred alternative (Alternative D) in the Draft RMP/EIS, in the Proposed RMP (Alternative E) in the Proposed RMP/Final EIS, and in the Approved RMP. San Miguel County supports the suitability determinations in the Dolores and San Miguel Basin to preserve fisheries habitat and recreational fishing, as presented in the agency-preferred alternative (Alternative D) in the Draft RMP/EIS, in the Proposed RMP (Alternative E) in the Proposed RMP/Final EIS, and in the Approved RMP.

## I.8.5   RECREATION FOCUS GROUP WORKSHOPS

The BLM gathered data from members of the public on their preferences for recreation management of BLM-administered lands in the UFO. There were six focus group meetings at locations across the UFO, with over 130 participants attending at least one of the meetings. Participants responded in discussions and in writing to a variety of questions regarding special places and outstanding recreation opportunities on BLM-administered lands. Some also asked about the San Miguel River Basin Special Recreation Management Area, BLM management activities that enhance or diminish the quality of the identified special places, sources of information about BLM-administered lands, and partnership opportunities to keep the public involved in the management process. The BLM received a total of 123 written responses and developed them into a database for analysis.

Participants identified 161 different special places and 114 outstanding recreation areas. A total of 78 unique activities were associated with special places, and 73 activities were associated with outstanding

BLM_0167558

recreational opportunity locations. Although participants identified many locations in their written comments, fewer than 10 locations received the largest share of responses. Similarly, a wide variety of activities were identified in both the special places and outstanding recreation opportunities; however, there was remarkable consistency in the most frequently mentioned activities: hiking, off-highway vehicle riding, fishing, hunting, camping, and mountain biking.

Participants offered a wide variety of place-specific suggestions for BLM management activities to enhance or diminish these places. They also offered a rich set of possibilities for public/private partnerships to help manage the land. The BLM UFO Recreation Focus Group Report provides detailed results of the extensive focus group data collection, both the written responses and group discussions with public land users concerning recreation on BLM-administered lands in the UFO (Mesa State College 2010).

## I.8.6   NORTH FORK ADVOCACY GROUP

On February 26, 2013, the BLM received a letter from an advocacy group with preliminary documents depicting the North Fork Alternative Plan for Oil and Gas Leasing/Development. The group provided the BLM with a more refined concept on April 2, 2013, and provided a final concept in December 2013. The BLM analyzed the concept, which is called Alternative B.1 in the Uncompahgre Proposed RMP/Final EIS.

## I.8.7   SHOOTING SPORTS ROUNDTABLE

The BLM UFO contacted the 40 private organizations participating in the Federal Lands Hunting, Fishing, and Shooting Sports Roundtable Memorandum of Understanding (BLM Instruction Memorandum 2007-041; BLM 2007). The agency notified them of the availability of the draft RMP/EIS and the comment opportunity. Staff from the BLM UFO met with representatives of the local Rod and Gun Club and other interested firearm shooters on March 13 and April 10, 2013. The purpose of the meeting was to discuss potential management alternatives in the RMP, including areas with limits on or closures to target shooting.

## I.8.8   PUBLIC COMMENT ON THE DRAFT RMP/EIS

A notice of availability announcing the release of the Uncompahgre Draft RMP/EIS was published in the *Federal Register* on June 3, 2016, initiating the formal 90-day public comment period. In response to public requests, the comment period was extended for an additional 60 days, to November 1, 2016. The extension of the comment period was announced via a press release on July 21, 2016.

All contacts on the mailing list at the time of the Draft RMP/EIS received a newsletter announcing its availability. The newsletter also notified the public of upcoming Draft RMP/EIS meetings and announced the public review period. The Draft RMP/EIS was made available through the RMP project website and at the BLM State Office (Denver/Lakewood) and the BLM UFO (Montrose). Notification of the Draft RMP/EIS was also provided to cooperating agencies and tribal representatives. The BLM provided a paper or compact disc copy of the Draft RMP/EIS to tribal and local governments and agencies. All documents were available via the project website, https://go.usa.gov/xnpgD.

Six public open houses were held across the Planning Area during a 2-week period during the public comment period on the Draft RMP/EIS. These public meetings were structured in an open house

BLM_0167559

format. The BLM provided attendees with a brief overview of the plan, tips on how to navigate the Draft RMP/EIS, and helpful information about making effective comments. A total of 294 people attended the open houses.

During the Uncompahgre Draft RMP/EIS comment period, the BLM received 783 unique written submissions, 565 of which were received via email, as well as 51,300 copies of form letters submitted on 90 different forms. In total, 2,566 unique substantive comments were contained within all types of submission. In the Proposed RMP/Final EIS, the BLM responded to all substantive comments on the Draft RMP/EIS that it received during the 150-day comment period.

## I.8.9   REVIEW AND PROTEST OF THE PROPOSED RMP/FINAL EIS

Pursuant to the BLM's planning regulations (43 CFR 1610.5-2), any person who participated in the Uncompahgre RMP planning process and had an interest that might be adversely affected by the planning decisions could protest approval of the proposed plan. The protest period was within 30 days from the date the US Environmental Protection Agency published the Notice of Availability in the *Federal Register*, from June 28 to July 29, 2019.

The BLM received 86 protest letters during the protest period. The agency dismissed 69 protest letters because they were comments and not protests. The BLM dismissed four protest letters because the parties did not have standing.

The BLM received 13 protest letters from parties with standing during the 30-day protest period. Issues raised by protestors included those associated with the following:

- ACECs
- Consistency with other plans
- Unnecessary or undue degradation
- Purpose of and need for the RMP
- Range of alternatives
- Best available information
- Cooperating agencies
- Impact analysis for air quality, carbon/greenhouse gas emissions, climate change, bighorn sheep, fish, Gunnison sage-grouse (*Centrocercus minimus*), fluid minerals, uranium mining, selenium, water quality, wilderness characteristics, human health, renewable energy, socioeconomics, and mitigation

The BLM Director and staff at the BLM Washington Office reviewed all of the protest issues. After review, the protests were denied by the BLM Director, whose decision is the final decision for the US DOI. The BLM Director concluded that the BLM Colorado State Director followed the applicable laws, regulations, and policies and considered all relevant resource information and public input in developing the Proposed RMP. The BLM Director also concluded that the Proposed RMP did not require changes. The Director's resolution report is available on the BLM's Protest Resolution website, at https://www.blm.gov/programs/planning-and-nepa/public-participation/protest-resolution-reports.

BLM_0167560

## 1.8.10 GOVERNOR'S CONSISTENCY REVIEW

In a letter dated July 10, 2019, and as required by its regulations (43 CFR 1610.3-2(e)) to promote consistency with state government plans or policies, the BLM initiated the Colorado Governor's Consistency Review for the Uncompahgre Proposed RMP/Final EIS. The consistency review period concluded on September 9, 2019.

The Governor submitted a letter identifying some concerns in response to the consistency review. These concerns included consistency with recently enacted State legislation and State wildlife plans. The BLM thoroughly reviewed the Governor's response letter and determined that the Proposed RMP is consistent with existing State plans; however, as a result of the Governor's consistency review, the BLM adopted a new CSU stipulation for fluid mineral leasing. Its purpose is to ensure the function and suitability of big game winter range, migration, and production areas. The stipulation will require the development of a mitigation plan in coordination with CPW, or the BLM Authorized Officer's determination, after coordination with CPW, that a mitigation plan is unnecessary. The mitigation plan must demonstrate that the overall function and suitability of big game winter ranges, migration, and production areas will not be impaired. Also, the BLM modified stipulations associated with Gunnison sage-grouse habitat to include consultation with CPW on any proposed exceptions, waivers, and modifications. In addition, the general fish and wildlife objective (F&W-OBJ-01) was modified to include infrastructure and does not limit consideration of route density to only travel management. The Governor's letter and the BLM's response are on the project website at https://go.usa.gov/xnpgD.

## 1.9   CONSULTATION AND COORDINATION

BLM land use planning regulations (43 CFR 1610.3), FLPMA (43 US Code 1712), and regulations for implementing NEPA (40 CFR 1501.5 and 1501.6) guide the BLM in coordinating and cooperating with other federal and state agencies, local governments, and Native American tribes during the land use planning process. This collective guidance instructs the BLM as follows:

- Stay informed of federal, state, local, and tribal plans
- Ensure that it considers these plans in its own planning
- Seek ways to resolve inconsistencies between such plans and BLM planning
- Cooperate with other agencies and tribal governments in developing RMPs and NEPA analyses

### 1.9.1   COOPERATING AGENCIES COLLABORATION

The BLM invites agency cooperation early in the RMP process using the process outlined in 43 CFR 1501.6. A cooperating agency is any federal, state, or local government agency or Indian tribe that enters into a formal agreement with the lead federal agency to help develop an environmental analysis. More specifically, cooperating agencies "work with the BLM, sharing knowledge and resources, to achieve desired outcomes for public lands and communities within statutory and regulatory frameworks" (BLM Land Use Planning Handbook H-1601-1; BLM 2005). The primary role of cooperating agencies during the planning process is to provide input on issues for which they have a special expertise or jurisdiction.

On January 23, 2009, the BLM invited 39 local, state, federal, and tribal representatives to participate as cooperating agencies for the Uncompahgre RMP revision; it invited one additional agency in March 2013.

BLM_0167561

The following 18 agencies participated in the RMP as designated cooperating agencies, all of which signed memoranda of understanding with the UFO:

- US DOI, Fish and Wildlife Service (USFWS)
- US DOI, Bureau of Reclamation
- US Department of Agriculture, Forest Service (Forest Service), Grand Mesa, Uncompahgre, and Gunnison National Forests
- Colorado Department of Natural Resources (CPW, Water Conservation Board, Natural Heritage Program, State Forest Service, Reclamation Division, Mining and Safety)
- Delta Soil Conservation District
- Delta County
- Gunnison County
- Montrose County
- Ouray County
- San Miguel County
- City of Montrose
- Town of Cedaredge
- Town of Norwood
- Town of Nucla
- Town of Olathe
- Town of Orchard City
- Town of Paonia
- Town of Ridgway

From May 2010 to March 2018, the BLM conducted 12 meetings with cooperating agencies that signed memoranda of understanding with the BLM. These agencies were engaged throughout the planning process, including during alternatives development.

## 1.9.2   SOUTHWEST RESOURCE ADVISORY COUNCIL COLLABORATION

A resource advisory council is a committee established by the Secretary of the Interior to provide advice to or recommendations on BLM management (BLM Land Use Planning Handbook H-1601-1; BLM 2005). The Colorado Southwest Resource Advisory Council is composed of 15 members of the public, representing different areas of expertise appointed to provide input on issues related to the management of BLM-administered lands. The council's recommendations are based on consensus building and collaboration.

The Colorado Southwest Resource Advisory Council was involved in developing the preliminary planning issues for the Uncompahgre RMP. In addition, a resource advisory council subgroup participated in the planning process and in particular to assist the BLM with creating a range of reasonable alternatives for the EIS. Eleven meetings of the resource advisory council subgroup were held for the Uncompahgre RMP. On June 22, 2012, the subgroup approved the range of alternatives. The subgroup's recommendations were formally presented for discussion at the October 26, 2012, public

BLM_0167562

meeting of the full Southwest Resource Advisory Council. On October 26, 2013, the council passed a resolution approving the range of alternatives. Minutes from subgroup meetings are available on the project website, https://go.usa.gov/xnpgD.

In addition to these meetings, the subgroup facilitated nine public meetings in Norwood, Naturita, Placerville, and Telluride, Colorado, in November 2010, December 2010, and January 2011. The purpose of the meetings was to discuss WSR suitability for rivers and streams in the Dolores River Basin. The meetings were designed to increase public understanding of and to seek public input on the WSR process and eligibility. The meetings also were meant to solicit comments on segments in the Dolores and San Miguel River watersheds.

### 1.9.3   TRIBAL GOVERNMENT-TO-GOVERNMENT CONSULTATION

Consultation with American Indian tribes is part of the BLM's planning process. Tribal consultation for cultural resources for the Uncompahgre RMP began through the Ute Ethnohistory Project. It involved three BLM field offices—Uncompahgre, Grand Junction, and Colorado River Valley—that were preparing RMPs at that time. Cultural representatives from the Ute Indian Tribe of the Uintah and Ouray Reservation (Ute Indian Tribe) and Ute Mountain Ute Tribe attended a general planning meeting in November 2007. Representatives from the Southern Ute Indian Tribe were invited but were unable to attend. Subsequent consultation meetings at which RMP issues were discussed occurred in March, April, and August 2008, in July and November 2009, and in April 2010.

The BLM consulted with the Navajo Nation, Ute Indian Tribe of the Uinta and Ouray Reservation, Southern Ute Indian Tribe, and Ute Mountain Ute Tribe regarding the Uncompahgre RMP. It received no written comments from any Native American tribes or tribal agencies during the scoping period or the Draft RMP/EIS public comment period. Tribes typically presented their concerns or issues orally. Government-to-government consultation continued throughout the RMP process to ensure that the concerns of tribal groups were considered in developing the RMP.

### 1.9.4   US FISH AND WILDLIFE SERVICE SECTION 7 CONSULTATION

The BLM coordinated with the USFWS early in the planning process as a cooperating agency. The USFWS provided input on planning issues, data collection and review, and alternatives development. To comply with Section 7(c) of the Endangered Species Act of 1973, the BLM initiated consultation with the USFWS for the RMP and prepared a biological assessment after public comments were received on the Draft RMP/EIS. The two agencies consulted while the BLM developed the biological assessment. The BLM submitted the biological assessment to the USFWS in August 2018.

On December 17, 2018, the USFWS issued the biological opinion for the UFO RMP that concurred with the following conclusions on the implementation of the UFO RMP:

- It may affect, but is not likely to adversely affect, the greenback cutthroat trout (*Oncorhynchus clarki stomias*), Mexican spotted owl (*Strix occidentalis*), western yellow-billed cuckoo (*Coccyzus americanus*), Colorado pikeminnow (*Ptychocheilus lucius*), razorback sucker (*Xyrauchen texanus*), bonytail chub (*Gila elegans*), and humpback chub (*Gila cypha*).

BLM_0167563

- It may affect, and is likely to adversely affect, Colorado hookless cactus (*Sclerocactus glaucus*), clay-loving wild buckwheat (*Eriogonum pelinophilum*), including designated critical habitat, and Gunnison sage-grouse, including designated critical habitat.

The biological opinion also included measures to avoid adverse modifications to critical habitat.

On September 20, 2019, the BLM notified the USFWS of changes that it had made to the Proposed RMP (Alternative E) after USFWS concurrence on December 17, 2018. The BLM UFO biological staff determined that these changes would not affect species or habitat that the agency consulted the USFWS about in 2018. These conclusions are applicable to a revised proposed RMP drafted after the USFWS issued the biological opinions because changes were not made to management actions relevant to threatened and endangered species. The biological opinion is available on the RMP project website: https://go.usa.gov/xnpgD.

## 1.9.5   STATE HISTORIC PRESERVATION OFFICE SECTION 106 CONSULTATION

The BLM consulted with the State Historic Preservation Officer in 2006. This resulted in the Colorado Protocol, Section IV, which requires State Historic Preservation Officer involvement in BLM planning processes. It describes the opportunities for the State Historic Preservation Officer to participate in BLM planning processes and review development-stage projects.

On December 24, 2009, the UFO sent an interested party letter to the State Historic Preservation Officer regarding the Uncompahgre RMP revision, but the Officer did not respond. The BLM provided the Draft RMP/EIS to the State Historic Preservation Officer concurrently with its release to the public. It will continue to work with the State Historic Preservation Officer on site-specific projects in the UFO.

The BLM communicated with the State Historic Preservation Officer on March 5, 2018, about the cultural resource inventory of the proposed North Delta Off Highway Vehicle Open Area (Report #18UN-02), an Open area included in the Approved RMP. In a concurrence letter to the BLM, dated March 16, 2018, the State Historic Preservation Officer cited no objections to the inventory. In this letter, the Officer referenced a historic property in the area of potential effect and requested further consultation on this property. The BLM responded to the Officer on May 17, 2018, addressing these concerns. On May 25, 2018, the BLM received a concurrence letter from the State Historic Preservation Officer citing no objections.

## 1.10   APPEAL

Implementation decisions may be appealed to the Interior Board of Land Appeals, Office of the Secretary, in accordance with the regulations contained in 43 CFR 4. The Uncompahgre Approved RMP does not contain any implementation decisions subject to appeal.

BLM_0167564

## I.11   APPROVAL

The decision is hereby made to approve the attached Resource Management Plan. This Record of Decision serves as the final decision for the Resource Management Plan and becomes effective on the date it is signed by the BLM State Director.

### FIELD MANAGER RECOMMENDATION

Having considered a full range of alternatives, associated impacts, and public and agency input, I recommend the adoption and implementation of the Uncompahgre Resource Management Plan.

Gregory Larson                                                     4/2/2020
Manager, BLM Uncompahgre Field Office              Date

### DISTRICT MANAGER CONCURRENCE

I concur with the adoption and implementation of the Uncompahgre Resource Management Plan.

Stephanie Connolly (acting)                               4/2/2020
Manager, BLM Colorado Southwest District         Date

### STATE DIRECTOR APPROVAL

In consideration of the foregoing, I approve the Uncompahgre Resource Management Plan.

Jamie E. Connell                                                   4/2/2020
BLM Colorado State Director                             Date

BLM_0167565

This page intentionally left blank.

BLM_0167566

# II. APPROVED RESOURCE MANAGEMENT PLAN

BLM_0167567

This page intentionally left blank.

BLM_0167568

## II.1   INTRODUCTION

The US Department of the Interior (DOI), Bureau of Land Management (BLM), Uncompahgre Field Office (UFO) prepared the Uncompahgre Resource Management Plan (RMP). The intent is to provide comprehensive current and future management of BLM-administered lands in the UFO. This is the Approved Resource Management Plan for the public lands administered by the BLM UFO.

The BLM prepared the RMP in compliance with its planning regulations, Title 43, Code of Federal Regulations (CFR), 1600, under the authority of the Federal Land Policy and Management Act of 1976 (FLPMA). This document also meets the requirements of the National Environmental Policy Act of 1969 (NEPA), the Council on Environmental Quality Regulations for Implementing the NEPA (40 CFR 1500-1508), the BLM's NEPA regulations (43 CFR 46), and requirements of the BLM's NEPA Handbook, 1790-1 (BLM 2008a).

### II.1.1   PURPOSE OF AND NEED FOR THE RESOURCE MANAGEMENT PLAN

The resource management planning process is a key tool that the BLM uses, in collaboration with interested public parties, to ensure a coordinated and consistent approach to managing BLM-administered lands. An RMP is a set of comprehensive long-range decisions concerning the use and management of resources administered by BLM. In general, the purpose of an RMP is twofold: first, it provides an overview of goals, objectives, and needs associated with public lands management; second, it resolves multiple-use conflicts or issues associated with those requirements that drive the preparation of the RMP.

BLM regulations require that existing land use plans be revised when necessary to address current resource conditions, changes in circumstances, such as evolving demands on resources, and new or revised policy on the national level (43 CFR 1610.5-6). Management direction for lands in the Uncompahgre Planning Area was contained in the 1985 San Juan/San Miguel RMP (BLM 1985) and the 1989 Uncompahgre Basin RMP (BLM 1989). Although the 1985 and 1989 RMPs have been subsequently amended, they do not satisfactorily address new and emerging issues. Laws, regulations, policies, and issues regarding management of BLM-administered lands have changed during the life of the plans. The BLM needs to revise the 1985 and 1989 RMPs to ensure compliance with current laws and policies and to address issues that have arisen since their preparation.

### II.1.2   LANDS IN THE UNCOMPAHGRE PLANNING AREA AND DECISION AREA

#### II.1.2.1   Planning Area

The Planning Area includes public lands administered by the BLM, the US Department of Agriculture Forest Service (Forest Service), and the US DOI, National Park Service. It also includes State of Colorado and privately owned lands. It totals approximately 3.1 million acres in Delta, Gunnison, Mesa, Montrose, Ouray, and San Miguel Counties in southwestern Colorado (**Figure 1**, below). The Planning Area also includes 2,234,670 acres of federal mineral estate (Figure 2 [**Appendix A**]).

The UFO administrative boundary includes lands within the Gunnison Gorge National Conservation Area and Dominguez-Escalante National Conservation Area. However, this RMP does not make any decisions for the Gunnison Gorge National Conservation Area or the Dominguez-Escalante National

BLM_0167569

Conservation Area, which are managed under separate RMPs. Although it is within UFO boundaries (until legislatively changed), the Curecanti National Recreation Area is withdrawn to the US DOI Bureau of Reclamation and managed by the US DOI, National Park Service, under a memorandum of understanding between the agencies. Locatable minerals are not withdrawn and are managed by the BLM.

### II.1.2.2   Decision Area

Management direction and actions in this RMP apply only to BLM-administered lands and federal mineral estate under BLM jurisdiction; this is known as the Decision Area. The Uncompahgre RMP Decision Area consists of 675,800 acres of BLM-administered lands, including withdrawn lands. There are over 2.2 million acres of federal mineral estate in the Planning Area, 971,220 acres of which are in the Decision Area. Federal mineral estate in the Decision Area includes mineral estate underlying BLM-administered lands, privately owned lands, city lands, and state-owned lands. Although minerals beneath National Forest System lands are part of the federal mineral estate, they are not part of the RMP Decision Area. The BLM typically adopts the leasing recommendations of the federal surface-managing agency when leasing federal mineral estate in the Planning Area. To lease minerals beneath National Forest System lands, the BLM must receive consent to lease from the Forest Service and incorporate any accompanying stipulations required by forest land use plans or forest-wide programmatic leasing analyses.

## II.1.3  SCOPING AND ISSUES

As stated in the Record of Decision (ROD), the formal scoping period began with publication of the Notice of Intent in the *Federal Register* on February 25, 2010 (75 Federal Register 8739-8740, February 25, 2010). The scoping period ended March 29, 2010.

### II.1.3.1   Issues Addressed

A planning issue is a major controversy or dispute regarding management of resources or uses on BLM-administered lands; it can be addressed in a variety of ways.

In September 2008, the BLM completed a preparation plan for the RMP revisions/environmental impact statement (EIS). The BLM interdisciplinary team used this plan to initiate the planning process to highlight anticipated planning issues that the team developed internally. Based on the lands and resources managed in the Planning Area, preliminary issues fell into six categories. The UFO analyzed comments received during the public scoping process and finalized a scoping summary report in July 2010 (BLM 2010a). Issues raised during scoping were consistent with the planning issues developed during the internal planning phase.

The BLM developed a planning issue statement for each of the six planning issue categories. Each planning issue statement summarizes the issues and concerns heard for each category during scoping. The six planning issue statements are presented in **Table II-1**, below.

BLM_0167570



Figure I - Uncompahgre RMP Planning Area

BLM_0167571

This page intentionally left blank.

BLM_0167572

**Table II-1**
**Planning Issue Statements**

| Issue | Resource Category | Planning Issue Statement |
|-------|-------------------|--------------------------|
| 1. | • Soil, air, and water resources<br>• Special management areas<br>• Vegetation (including riparian and wetland areas and noxious weeds)<br>• Fish and wildlife<br>• Special status species<br>• Drought management and climate change | How will vegetation resources, terrestrial and aquatic habitat, water resources, and special management areas be managed, while maintaining biological diversity and native species populations? |
| 2. | • Nonrenewable energy development<br>• Renewable energy development<br>• Minerals and mining | How will energy and mineral resources be managed? |
| 3. | • Recreation<br>• Travel management<br>• Livestock grazing<br>• Visual resources<br>• Noise<br>• Forestry<br>• Wildland fire management | How will human activities and uses be managed? |
| 4. | • Lands and realty | How will land tenure, withdrawals, and utility and energy corridors be managed or adjusted? |
| 5. | • Cultural resources<br>• Paleontological resources<br>• Native American religious concerns | How will cultural, historical, and paleontological resources and Native American Religious Concerns be managed and protected? |
| 6. | • Socioeconomic and environmental justice concerns<br>• Public health and safety | How do population growth and an expanding urban interface affect the management of BLM-administered lands and resources, including authorized permitted land uses, while considering community values and needs? |

## II.1.3.2  Issues Considered but Not Further Analyzed

During scoping, participants raised several concerns regarding issues that would not be addressed in the RMP, including administrative, policy, and implementation issues; issues outside the scope of the RMP; and issues that have already been addressed through other BLM activities. The Uncompahgre RMP Scoping Summary Report (BLM 2010a) provides a comprehensive list of issues outside the scope of the RMP.

## II.1.4  PLANNING CRITERIA AND LEGISLATIVE CONSTRAINTS

FLPMA is the primary authority for the BLM's management of public lands. This law provides the policy by which BLM-administered lands will be managed and establishes provisions for land use planning, land

BLM_0167573

acquisition and disposition, administration, range management, rights-of-way (ROWs), designated management areas, and the repeal of certain statutes.

NEPA provides the basic national charter for environmental responsibility. It requires the consideration and public availability of information regarding the environmental impacts of major federal actions significantly affecting the quality of the human environment. In concert, FLPMA and NEPA provide the overarching guidance for administrating all BLM activities.

Planning criteria are the standards, rules, and guidelines that help to guide data collection and alternative formulation and selection in the RMP development process. In conjunction with the planning issues, planning criteria ensure that the planning process is focused. The criteria also help guide the final plan selection and provide a basis for judging the responsiveness of the planning options.

The planning criteria are as follows:

- The proposed RMP will comply with FLPMA and all other applicable laws, regulations, and policies.
- Impacts from the management alternatives considered in the revised RMP will be analyzed in an EIS developed in accordance with regulations at 43 CFR 1610 and 40 CFR 1500.
- Lands covered in the RMP will be public land and split-estates managed by the BLM. No decisions will be made relative to non-BLM-administered lands, except when decisions involve federal mineral estate.
- For program-specific guidance of land use planning level decisions, the process will follow the Land Use Planning Manual 1601 (BLM 2000) and Handbook H-1601-1, Appendix C (BLM 2005), as amended.
- Broad-based public participation will be an integral part of the planning and EIS processes.
- The planning team will cooperate with the State of Colorado, tribal governments, county and municipal governments, other federal agencies, the BLM Colorado Southwest Resource Advisory Council, cooperating agencies, and all other interested groups, agencies, and individuals.
- Decisions in the RMP will strive to be compatible with the existing plans and policies of local, state, and federal agencies in the Planning Area, to the extent that the decisions are consistent with the purposes, policies, and programs of federal law and regulations applicable to public lands.
- The BLM will consult with Colorado Parks and Wildlife (CPW) and will recognize in the RMP the State's responsibility and authority to manage wildlife.
- The BLM will recognize the Office of Surface Mining's responsibility and authority to regulate coal activities.
- The BLM will recognize the State's responsibility for permitting oil and gas activities and for regulating air quality impacts.
- The BLM will recognize the State's responsibility for permitting uranium, coal, and sand and gravel activities and for regulating water quality impacts.
- The BLM National Sage-Grouse Habitat Conservation Strategy (BLM 2004) requires that impacts on sagebrush habitat and sagebrush-dependent wildlife species be analyzed and

BLM_0167574

considered in BLM land use planning efforts for public lands with sagebrush habitat in the Planning Area.

- In the RMP, the BLM will recognize valid existing rights.
- The planning process will incorporate BLM Colorado Standards for Public Land Health and Guidelines for Livestock Grazing Management (BLM 1997).
- The BLM will follow guidance in Instruction Memorandum 2012-169, Resource Management Plan Alternative Development for Livestock Grazing (BLM 2012a), when developing a range of alternatives for livestock grazing.
- The BLM will continue to manage wilderness study areas (WSAs) according to BLM Manual 6330, Management of Wilderness Study Areas (BLM 2012c). This will continue until Congress either designates all or portions of the WSAs as wilderness or releases the lands from further wilderness consideration. It is no longer BLM policy to designate additional WSAs through the RMP process or to manage any lands other than existing WSAs in accordance with BLM Manual 6330 (BLM 2012c).
- The planning process will involve American Indian tribal governments and will provide strategies for protecting recognized traditional uses.
- Any location-specific information pertaining to cultural resources—maps, descriptions, or photos—is confidential BLM information. Such information will not become the property of any contractors working on the EIS nor be attached to any paper or electronic document. The Archaeological Resources Protection Act restricts the release of such information under the Freedom of Information Act.
- The RMP will include adaptive management criteria and protocol to deal with future issues.
- A reasonably foreseeable development scenario for fluid minerals, mineral potential reports for coal and other minerals, and a renewable energy potential report will be developed. For this, the BLM will use the analyses of past activities, productions, and other sources, which will aid in developing alternatives and in the environmental consequences analysis.
- The BLM will consider data in the Colorado Plateau Rapid Ecological Assessment, as appropriate.
- The BLM will incorporate in the RMP the Conservation Agreement and Strategy for Colorado River Cutthroat Trout (*Oncorhynchus clarki pleuriticus*).

All management direction and actions developed as part of the BLM planning process are subject to valid existing rights and must meet the objectives of the BLM's multiple-use management mandate and responsibilities (FLPMA Section 202[c] and [e]). Valid existing rights include all valid leases, permits, ROWs, or other land use rights or authorizations in effect on the date that this RMP is approved. Although the courts may adjudicate Revised Statute 2477 ROWs as valid existing rights, current BLM policy does not allow the BLM to consider unadjudicated Revised Statute 2477 claims. Claims under Revised Statute 2477 are therefore legal issues beyond the scope of this planning effort.

## II.1.5  PLANNING PROCESS

The BLM uses a multistep planning process when developing RMPs, as required by 43 CFR 1600 and illustrated in the BLM's Land Use Planning Handbook, H-1601-1 (BLM 2005). The planning process is designed to help the BLM identify the uses desired by the public of BLM-administered lands. During this

BLM_0167575

process, the BLM considers these uses to the extent they are consistent with the laws established by Congress and the policies of the executive branch of the federal government. The planning process is issue driven. The BLM used the public scoping process to identify planning issues (noted above) to direct the development of the Uncompahgre RMP. It used the scoping process to introduce the public to planning criteria.

Title II, Section 202, of FLPMA directs the BLM to coordinate planning efforts with Native American tribes, other federal departments, and agencies of the state and local governments as part of its land use planning process. The BLM is also directed to integrate NEPA requirements with other environmental review and consultation requirements, to reduce paperwork and delays (40 CFR 1500.4-5). The BLM coordinated with Native American tribes and other agencies through ongoing communications, meetings, and collaboration with an interdisciplinary team of BLM specialists and federal, state, and local agencies.

## II.1.6 RELATED PLANS

The BLM considered federal, state, local, and tribal plans that are germane to the development of the RMP/EIS. The BLM worked closely with federal, state, local, and tribal governments during preparation of the RMP/EIS. A list of all plans BLM considered can be found in Section 1.7 of the Proposed RMP/Final EIS. Chapter 5 of the Proposed RMP/Final EIS describes coordination that has occurred throughout the development of the RMP.

## II.1.7 POLICY

This RMP is consistent with and incorporates requirements identified in various laws, regulations, and policies. These include executive orders, legislative designations, and court settlements and rulings. The policies and decisions that existed before this RMP are outside its scope; however, they have influenced the decisions and constrained the alternatives and are needed to understand management of the Decision Area.

## II.2 MANAGEMENT DECISIONS

This section of the Approved RMP presents the goals, objectives, actions, allowable uses, and stipulations established for BLM-administered lands in the Decision Area. Most of the desired future conditions are long range and are assumed to require a period of time to achieve. These management decisions are presented by program area under four category headings: resources, resource uses, special designations, and social and economic (see **Table II-2**, below). Not all types of decisions were identified for each program. Types of management decisions are presented in **Table II-3**, and management decisions are presented in **Table II-4**.

### Table II-2
### RMP Program Categories and Abbreviations

| RMP Program Category | Abbreviation |
|---|---|
| General management | GM |
| **Resources** | |
| Air quality | AIR |
| Climate | CLIM |

BLM_0167576

| RMP Program Category | Abbreviation |
|---|---|
| Land health | LH |
| Soils and geology | SOIL |
| Water resources | WTR |
| Vegetation, general | VEG |
| Vegetation – Uplands | VEG–UPL |
| Vegetation – Riparian | VEG–RPN |
| Vegetation – Weeds | VEG–WDS |
| Fish and wildlife, general | F&W |
| Fish and wildlife – Fish and Aquatic | F&W–FIS |
| Fish and wildlife – Terrestrial | F&W–TER |
| Fish and Wildlife – Terrestrial – Big game species (mule deer, elk, pronghorn, bighorn sheep, moose, black bear, mountain lion) | F&W–BGS |
| Fish and wildlife – Terrestrial – Upland game birds (wild turkey) | F&W–UGB |
| Fish and Wildlife – Terrestrial – Migratory birds | F&W–MIG |
| Special status species, general | SSS |
| Special Status Species – Plants | SSS–PLN |
| Special Status Species – Fish and aquatic | SSS–FIS |
| Special Status Species – Terrestrial | SSS–TER |
| Special Status Species – Terrestrial – Yellow-billed cuckoo | SSS–YBC |
| Special Status Species – Terrestrial – Canada lynx | SSS–LNX |
| Special Status Species – Terrestrial – Gunnison sage-grouse | SSS–GSG |
| Special Status Species – Terrestrial – Raptors (also includes non-special status raptors) | SSS–RPT |
| Special Status Species – Terrestrial – Gunnison's and white-tailed prairie dog | SSS–DOG |
| Special Status Species – Terrestrial – Kit Fox | SSS–FOX |
| Special Status Species – Terrestrial – Bats | SSS–BAT |
| Special Status Species – Terrestrial – Waterfowl and shorebirds | SSS–WSB |
| Wild horses | WHS |
| Wildland fire ecology and management | FIR |
| Cultural resources | CUL |
| Paleontological resources | PAL |
| Visual resources | VIS |
| Protected lands with wilderness characteristics | LWC |
| **Resource Uses** | |
| Forestry and woodland products | FOR |
| Livestock grazing | GRZ |
| Solid leasable minerals (coal) | COA |
| Fluid leasable minerals (oil and gas and geothermal resources) | FLD |
| Locatable minerals, mineral materials, and nonenergy solid leasable materials | |
| Locatable Minerals | LOC |
| Mineral materials (salable minerals) | SAL |
| Nonenergy solid leasable minerals | NEL |

| RMP Program Category | Abbreviation |
|---|---|
| Recreation and visitor services | REC |
|    Special recreation management areas | REC–SRMA |
|    Extensive recreation management areas | REC–ERMA |
| Comprehensive travel and transportation management | TRV |
| Lands and realty, land tenure adjustments | L&R |
|    Lands and Realty – Land tenure adjustments – Disposal | L&R–DIS |
|    Lands and Realty – Land Tenure Adjustments – Retention | L&R–RET |
|    Lands and Realty – Land Tenure Adjustments – Acquisition | L&R–ACQ |
|    Lands and Realty – Withdrawals | L&R–WTH |
| **Special Designations** | |
| Areas of critical environmental concern (ACECs) | ACEC |
| Wilderness and WSAs | WIL |
| Wild and Scenic Rivers | WSR |
| National Trails | NTR |
|    National and BLM Byways | BYW |
| Watchable Wildlife Viewing Sites | WWV |
| **Social and Economic** | |
| Native American tribal interests | TRB |
| Public health and safety | PHS |

Decisions are presented in **Table II-4**, and each is numbered, for ease of identification. The numbering sequences for the decisions are by program, each of which has an identified abbreviation (**Table II-2**), and each decision in that program is numbered in coordination with the program abbreviation (**Table II-2**), type of decision (**Table II-3**), and decision number.

**Table II-3**
**RMP Types of Decisions and Abbreviations**

| Type of Decision | Abbreviation |
|---|---|
| Goal | GOAL |
| Objective | OBJ |
| Management action | MA |
| Allowable use (stipulation) | AU |
| Lease notice | LN |

An example is as follows:

- AIR-GOAL-01: First air program goal
  - AIR-OBJ-01: First air program objective
    - AIR-MA-01: First air program management action decision
    - AIR-MA-02: Second air program management action decision

All acreages and maps presented in the Approved RMP are estimations, based on current data. Calculations depend on the quality and availability of data, and most calculations in this RMP are rounded

BLM_0167578

to the nearest 10 acres or 0.1 mile. Given the scale of the analysis, the compatibility constraints between datasets and lack of data for some resources, all calculations are approximate; they are for comparison and analytic purposes only. Likewise, the figures in **Appendix A** are provided for illustrative purposes and subject to the limitations discussed above. Updating these data is considered plan maintenance, which will occur over time as the Approved RMP is implemented, additional surveys are completed, and information is revised.

**Table II-4** lists supporting information for the decisions contained in the Approved RMP. Maps depicting resource information and stipulations applicable to surface-disturbing activities in the Approved RMP are provided in **Appendix A**. **Appendices B** through **J** contain supporting information for decisions outlined in the Approved RMP. Supporting appendices are as follows:

| | |
|---|---|
| Appendix A | Figures |
| Appendix B | Restrictions Applicable to Fluid Minerals Leasing and Other Surface-disturbing Activities |
| Appendix C | Best Management Practices and Standard Operating Procedures |
| Appendix D | Uncompahgre Field Office Drought Management Detection and Monitoring Plan |
| Appendix E | Description of Recreation Management Areas |
| Appendix F | Livestock Grazing Allotments and Allotment Levels |
| Appendix G | Bighorn/Domestic Sheep Risk of Association Modeling |
| Appendix H | Coal Screening Criteria for the Uncompahgre Planning Area |
| Appendix I | Travel Management |
| Appendix J | Legal Descriptions for Lands Identified for Disposal |

BLM_0167579

## II.2.1  LINKS TO APPROVED RMP DECISIONS

Air Quality
Areas of Critical Environmental Concern
Climate
Comprehensive Travel and Transportation
   Management
Cultural Resources
Fish and Wildlife
Wildlife – General
   Fish and Aquatic
   Wildlife – Terrestrial
   Big Game
   Raptors
   Upland Game Birds
   Migratory Birds
Fluid Leasable Minerals (Oil and Gas and
   Geothermal Resources)
Forestry and Woodland Products
General Management
Land Health
Lands with Wilderness Characteristics

Lands and Realty
   Communication Sites
   Utility Corridors
   Land Tenure Adjustments
      Disposal
      Retention
      Acquisition
   Withdrawals
   Renewable Energy
Livestock Grazing
Locatable Minerals, Mineral Materials, and
   Nonenergy Leasable Minerals
   Locatable Minerals
   Mineral Materials
   Nonenergy Solid Leasable Minerals
National Trails and Byways
Native American Tribal Interests
Paleontological Resources
Public Health and Safety
Recreation and Visitor Services
   Special Recreation Management Areas
   Extensive Recreation Management
   Areas

Soils and Geology
Solid Leasable Minerals (Coal)
Special Status Species
   General
   Plants
   Fish and Aquatic
   Terrestrial
   Gunnison Sage-Grouse
Vegetation
   General
   Riparian
   Weeds
Visual Resources
Watchable Wildlife Viewing Sites
Water Resources
Wild and Scenic Rivers
Wild Horses
Wilderness and Wilderness Study Areas
Wildland Fire Ecology and Management

*Uncompahgre Field Office Approved Resource Management Plan*

BLM_0167580

**Table II-4**
**Approved RMP Decisions**

| GENERAL MANAGEMENT | |
|---|---|
| GM-MA-01 | Comply with state and federal laws, regulations, policies, and standards, including FLPMA multiple use mandates. |
| GM-MA-02 | Implement actions originating from laws, regulations, and policies and conform to day-to-day management, monitoring, and administrative functions not specifically addressed. |
| GM-MA-03 | Preserve valid existing rights, which include any leases, claims, or other use authorizations established before a new or modified authorization, change in land designation, or new or modified regulation is approved. Existing fluid mineral leases are managed through conditions of approval outlined in the RMP. |
| GM-MA-04 | Apply conditions of approval, BMPs, standard operating procedures (shown in Appendix C), other site-specific mitigation, and/or off-site mitigation measures to all resource uses to promote rapid reclamation, maximize resource protection, and minimize soil erosion. |
| GM-MA-05 | Seek to enhance collaborative opportunities, partnerships, and communications with other agencies and interested parties to implement the RMP, including education and outreach and project-specific activities (such as monitoring and trail development). |

| RESOURCES | |
|---|---|
| **AIR QUALITY** | |
| AIR-GOAL-01 | **GOAL:** Protect air resources and related values, including visibility, from significant adverse impacts associated with BLM-authorized/ permitted actions in accordance with the methodology and provisions outlined in the Colorado BLM Comprehensive Air Resource Protection Protocol (Proposed RMP/Final EIS Appendix H; BLM 2015). |
| AIR-OBJ-01 | **Objective:** Limit air quality and related values degradation from authorized activities on BLM-administered lands (or related to BLM subsurface mineral development) through appropriate analyses of impacts on air quality, with reference to applicable Colorado and National Ambient Air Quality Standards, applicable federal, state, and local air quality laws, rules, regulations, and implementation plans, and applicable guidance documents (e.g., Federal Land Managers' Air Quality Related Values Work Group Phase I Report—Revised [2010] [Forest Service et al. 2010]). |
| AIR-MA-01 | **Action:** Participate in, conduct, or require air modeling analyses as described in the Colorado BLM Comprehensive Air Resource Protection Protocol (Proposed RMP/Final EIS Appendix H; BLM 2015) as part of a comprehensive strategy to minimize the potential for BLM-permitted activities to cause or contribute to conditions that exceed ambient air quality standards or cause significant adverse impacts on air quality-related values. |
| AIR-LN-02 | **LEASE NOTICE.** Attach Lease Notice CO-56 to new oil and gas leasing agreements to provide notice to operators of air quality analysis and mitigation that may be required on a case-by-case basis at the permitting/development stage. |

BLM_0167581

| | AIR QUALITY |
|---|---|
| AIR-MA-02 | **Action:**<br>Develop Conditions of Approval for project-specific surface-disturbing activities to minimize the potential for BLM-permitted activities to cause or contribute to conditions that exceed ambient standards or cause significant adverse impacts on air quality-related values (on both a project level and contemporaneous cumulative basis). Conditions of Approval will be developed using information from the BLM Air Resources Annual Report. |
| AIR-MA-03 | **Action:**<br>Work cooperatively with local, state, federal, and tribal agencies to enhance air-monitoring efforts in order to provide a broader measure of spatially distributed air pollutant concentrations for the purposes of evaluating atmospheric conditions with respect to ambient air quality standards and air quality-related values. Conduct air quality and meteorological monitoring siting analyses to determine locations needed to support future air quality assessments and regional modeling analysis. |
| AIR-MA-04 | **Action:**<br>Implement the adaptive management strategy for protecting air resources as described in the Colorado BLM Comprehensive Air Resource Protection Protocol (Proposed RMP/Final EIS Appendix H; BLM 2015). Provide an annual activity summary report of BLM-authorized actions (track project-specific emissions) for comparison against the most recent regional air quality model results to provide cumulative context for any analyzed contemporaneous development period. Produce the annual report as required in the Colorado BLM Comprehensive Air Resource Protection Protocol (Proposed RMP/Final EIS Appendix H; BLM 2015) to track progress toward meeting the defined goal and objectives. Include mitigation requirements in project approval decisions if determined to be appropriate, based on updated analysis, using information in the BLM Colorado Air Resources Annual Report or other air quality and related values impacts analysis tools. |
| AIR-MA-05 | **Action:**<br>Conduct greenhouse gas and climate change analyses (e.g., quantify greenhouse gas emissions and assess potential impacts on climate for proposed actions) consistent with current policy/guidance, while following the overall BLM Colorado Air Resources adaptive management approach for protecting air resources and related values utilizing the most current data/information, trends, and climate modeling studies. |

BLM_0167582

| | CLIMATE |
|---|---|
| CLIM-GOAL-01 | **GOAL:** Manage native vegetation and wildlife species, soil and water resources, and wildlife habitats to maintain productivity, viability, and natural processes in response to stresses induced by climate change. |
| CLIM-OBJ-01 | **Objective:** Reduce impacts from climate change on soil and water resources, native vegetation and wildlife species and communities, and wildlife habitats. |
| CLIM-MA-01 | **Action:** Address climate change effects on soil and water resources, vegetation, and habitats and apply appropriate management to protect these resource values. Where feasible, coordinate with local or regional scientists and organizations in addressing climate change. |
| CLIM-MA-02 | **Action:** Plant 1- to 2-year-old seedlings or seed local native species into new habitats where needed to improve restoration and revegetation success and to improve long-term survival of plant populations. Emphasize providing habitat for pollinators and butterflies, especially monarchs. |

| | LAND HEALTH |
|---|---|
| LH-GOAL-01 | **GOAL:** Manage soils, riparian-wetland areas, native plant and animal communities, special status species, and water quality to meet land health standards. |
| LH-OBJ-01 | **Objective:** Manage ACECs, WSAs, lands managed to minimize impacts on wilderness characteristics, and wild and scenic river (WSR) segments to achieve BLM Colorado Public Land Health Standards (BLM 1997) on greater than 80 percent of upland and riparian vegetation communities with 80 percent confidence. On the remaining BLM-administered lands, manage to achieve BLM Colorado Public Land Health Standards on greater than 70 percent of upland and riparian vegetation communities with 80 percent confidence. Measure BLM Colorado Public Land Health Standards on uplands using foliar cover, species composition, canopy gap, soil stability, and other appropriate indicators, and use best available science to determine benchmarks for achieving standards. For aquatic and riparian systems, measure bank stability, floodplain connectivity, aquatic health, water quality, and other appropriate indicators, and use best available science to determine benchmarks for achieving standards. |
| LH-MA-01 | **Action:** Apply land and stream health improvement projects in areas likely to be stabilized or improved to a higher health condition, regardless of land health status. This would apply to ACECs, WSAs, lands managed to minimize impacts on wilderness characteristics, and WSR segments with a vegetation outstandingly remarkable value. For remaining lands, streams, and wetlands, apply land and stream health improvement projects in areas rated as *not meeting* BLM Colorado Public Land Health Standards (BLM 1997). |

BLM_0167583

| LAND HEALTH | |
|---|---|
| LH-MA-02 | **Action:**<br>Limit, modify, or manage the cause, where an activity has been demonstrated to be causing land health problems, to improve land health of lands, streams, and wetlands rated as *not meeting* the BLM Colorado Public Land Health Standards (BLM 1997). Activities could include the following:<br>• Grazing<br>• Plant material and wood collection<br>• Noncommercial mineral material collection (e.g., moss rock collection and decorative stone collection)<br>• Travel<br>• Camping and other recreational activities |
| LH-MA-03 | **Action:**<br>Require that new projects and land use authorizations identify BMPs or conditions of approval that minimize conflicts with health-improvement measures for lands, streams, and wetlands rated as *not meeting* the BLM Colorado Public Land Health Standards (BLM 1997). |

| SOILS AND GEOLOGY | |
|---|---|
| SOIL-GOAL-01 | **GOAL:**<br>Manage for soil stability and productivity to maintain overall watershed health. Manage erosion to minimize downstream impacts from soil-related issues (e.g., sediment runoff, selenium, and salinity). |
| SOIL-OBJ-01 | **Objective:**<br>Manage activities in the Colorado River Basin to minimize the yield of sediment, salt, and selenium contributions from BLM-administered lands to water resources. |
| SOIL-MA-01 | **Action:**<br>Improve water quality and overall watershed health by managing the soil for adequate watershed cover and a healthy soil surface on soils high in salinity/selenium. This could include the following:<br>• Modifying livestock grazing practices to reduce sediment yield<br>• Managing recreational uses<br>• Planning and implementing comprehensive travel management |
| SOIL-MA-02 | **Action:**<br>When feasible, inventory and assess stock ponds, check dams, and contour furrows and rehabilitate, repair, or remove those structures with severe/active erosion. Combine efforts with other projects (e.g., range water projects, road maintenance, and recreation projects) where feasible to increase efficiency. |

BLM_0167584

| SOILS AND GEOLOGY | |
|---|---|
| SOIL-AU-01 | Allowable Use:<br>**STIPULATION** Controlled Surface Use (CSU)-3/Site-Specific Relocation (SSR)-3: *Geology Soil: Saline/Selenium Soils.* Surface occupancy or use may be restricted and SSR restrictions applied on lands within mapped soils with the following special characteristics: saline/selenium soils. Special design, construction, and implementation measures, including relocation of operation by more than 200 meters (656 feet), may be required. Prior to authorizing activities in this area, the operator may be required to submit an engineering/ reclamation plan to avoid and minimize potential effects on soil productivity. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| SOIL-MA-03 | **Action:**<br>Manage 390 acres of rare biological soil crust (*Lecanora gypsicola* and *Gypsoplaca macrophylla*) in the Biological Soil Crust ACEC as a ROW avoidance area. |
| SOIL-AU-02 | Allowable Use:<br>**STIPULATION** CSU-6/SSR-6: *Geology Soil; Potential Biological Soil Crust.* Surface occupancy or use may be restricted and SSR restrictions applied on lands within mapped soils with the following special characteristics: biological soil crust only when high levels of crust development are found. Determine the level of crust development using best available techniques. Special design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet), may be required. Prior to authorizing activities in this area, the operator may be required to submit an engineering/ reclamation plan to mitigate potential effects on soil productivity. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| SOIL-AU-03 | Allowable Use:<br>**STIPULATION** CSU-8/SSR-7: *Geology: Slope Greater than 40 Percent* and CSU-9/SSR-9: *Geology: Slopes of 30 to 39 Percent.* Surface occupancy may be restricted and SSR restrictions applied on steep slopes equal to or above 30 percent. Special design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet), may be required. Prior to authorizing activities in this area, the operator may be required to submit an engineering/ reclamation plan to mitigate potential effects on slope stability. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |

| WATER RESOURCES | |
|---|---|
| WTR-GOAL-01 | **GOAL:**<br>Protect, restore, and enhance watershed function in the capture, retention, and release of water in quantity, quality, and timing, thereby ensuring aquatic and terrestrial ecosystem health and public uses. Maintain and restore the physical, chemical and biological integrity of the aquatic system, including stream banks and bottom configurations; maintain and restore the sediment regime under which aquatic ecosystems evolved; maintain and restore the timing, variability, and duration of floodplain inundation and water table elevation in wetlands, seeps and springs. |

BLM_0167585

| | WATER RESOURCES |
|---|---|
| WTR-OBJ-01 | **Objective:**<br>Maintain and improve water quality by ensuring streams are in compliance with the Clean Water Act for greater than 80 percent of stream segments in ACECs, WSAs, suitable WSR segments, and lands managed to minimize impacts on wilderness characteristics, and greater than 70 percent of stream segments on the remaining BLM-administered lands, with 80 percent confidence. Where not meeting these water quality goals, work toward meeting them in accordance with Land Health Standards. |
| WTR-MA-01 | **Action:**<br>Manage lands to improve water quality and promote the delisting of state impaired water bodies (303[d]-listed water bodies only) in areas where BLM management actions are contributing to impaired water quality. Develop a water and aquatic monitoring plan using the BLM aquatic AIM protocol, if necessary, to determine areas where adaptive management is needed. |
| WTR-AU-01 | Allowable Use:<br>**STIPULATION** No Surface Occupancy (NSO)-9/SSR-11: *Hydrology River.* Prohibit surface occupancy and use and apply SSR restrictions within 400 meters (1,312 feet) of the ordinary high-water mark (bank-full stage) or within 100 meters (328 feet) of the 100-year floodplain (whichever area is greatest) on the following major rivers:<br>• Gunnison<br>• North Fork Gunnison<br>• San Miguel<br>• Uncompahgre<br>• Dolores Rivers<br>(Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| WTR-MA-02 | **Action:**<br>Designate as ROW avoidance areas a 400-foot buffer along the Gunnison, North Fork Gunnison, San Miguel, Uncompahgre, and Dolores River corridors. |
| WTR-MA-03 | **Action:**<br>Manage a 50-foot buffer along perennial streams as ROW avoidance areas. |
| WTR-AU-02 | Allowable Use:<br>**STIPULATION** NSO-11/SSR-13: *Hydrology Features.* Prohibit surface occupancy and use and apply SSR restrictions within 100 meters (328 feet) from the mapped extent of perennial and intermittent streams; riparian areas, fens, and/or wetlands; and water impoundments. For streams, measure the buffer from ordinary high-water mark (bank-full stage); for wetland features, measure the buffer from the edge of the mapped extent. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| WTR-OBJ-02 | **Objective:**<br>Manage lands within municipal watersheds and public water supply areas to provide clean drinking water to local communities. |

BLM_0167586

| | WATER RESOURCES |
|---|---|
| WTR-MA-04 | **Action:**<br>Manage as ROW avoidance areas those lands within 1,000 feet of either side of a classified surface water supply-stream segment (as measured from the average high-water mark of a water body) for a distance of 5 miles upstream of a public water supply intake. |
| WTR-AU-03 | **Action:**<br>Apply the restrictions or closures specified below on the following lands:<br>• Within 1,000 feet on either side of a classified surface water-supply stream segment (as measured from the average high-water mark) for a distance of 5 miles upstream of a public water supply intake classified by the State as a "water supply."<br>• Within a 2,640-foot (0.50-mile) buffer of all public water supplies that use a groundwater well and groundwater under the direct influence of surface water.<br><br>Apply the following restrictions or closures on these lands:<br>• Close to mineral materials disposal (e.g., sand and gravel).<br>• Close to nonenergy solid mineral leasing (e.g., potash, sodium, and phosphate).<br>• Minimize impacts from livestock grazing on these lands.<br>• Require a mine plan for locatable mineral development.<br>• Allowable Use: **STIPULATION** NSO-69: *Public Water Supplies.* Prohibit surface occupancy and use within 305 meters (1,000 feet) on either side of a classified surface water-supply stream segment (as measured from the average high-water mark) for a distance of 5 miles upstream of a public water supply intake classified by the State of Colorado as a "water supply," and within a 2,640-foot (0.50-mile) buffer of all public water supplies that use a groundwater well or groundwater under the direct influence of surface water. Also prohibit directional drilling within 457 vertical meters (1,500 vertical feet) below a surface Public Water Supply or 457 vertical meters (1,500 vertical feet) below the depth of a Public Water Supply that use a groundwater well or groundwater under the direct influence of surface water. If public water providers develop source water protection plans, apply this NSO to cover the appropriate designated area in the protection plan (typically Zone 2) and apply these protection measures to all public water supplies that use a groundwater well or groundwater under the direct influence of surface water. (Refer to Appendix B; Figure 2-7, Appendix A.)<br>• Allowable Use: **STIPULATION** CSU-13: *Hydrology Source.* Surface occupancy or use may be restricted on lands located greater than 305 meters (1,000 feet) but less than 805 meters (2,640 feet) (0.50-mile) of a classified surface water supply stream segment (as measured from the average high-water mark) for a distance of 8.05 kilometers (5 miles) miles upstream of a public water supply intake classified by the State as a "water supply," and all public water supplies that use a groundwater well or spring. Special design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet), may be required. Prior to authorizing activities in this area, the operator may be required to submit a coordinated water resources monitoring plan to mitigate potential effects on the source water protection areas of public water supply. (Refer to Appendix B; Figure 7, Appendix A.) |

BLM_0167587

| | **WATER RESOURCES** |
|---|---|
| WTR-OBJ-03 | **Objective:**<br>Provide sufficient water quantity on BLM-administered lands for multiple use management and functioning, healthy riparian, and aquatic ecosystems. |
| WTR-MA-05 | **Action:**<br>Make recommendations to the Colorado Water Conservation Board for protection or enlargements of instream flows on appropriate stream segments. Assist the Conservation Board in instream flow assessments and monitoring of current BLM instream flow stream reaches for compliance. |
| WTR-MA-06 | **Action:**<br>Maintain current water rights to benefit wildlife and livestock. Object to proposals that could jeopardize existing rights. File for new surface water rights on perennial and seasonal streams and new water rights for groundwater sources (i.e., springs/seeps, wells, reservoirs, streams) in adequate quantities to protect Planning Area resource needs and sustainability. |
| WTR-OBJ-04 | **Objective:**<br>Protect groundwater resources and recharge areas to maintain functioning condition of all parameters within the hydrologic cycle, including groundwater quantity and quality. |
| WTR-AU-04 | Allowable Use:<br>**STIPULATION** CSU-59: *Domestic Water Wells.* Surface occupancy or use may be restricted on lands located within 305 meters (1,000 feet) of all domestic water wells. Special engineering design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet), may be required. Also within 305 meters (1,000 feet) of all domestic water wells:<br>• Extend surface casing through the freshwater aquifer.<br>• Require freshwater mud for drilling the surface casing.<br>Also prohibit directional drilling within 457 vertical meters (1,500 vertical feet) below the depth of a domestic water well. (Refer to Appendix B; Figure 7, Appendix A.) |
| WTR-OBJ-05 | **Objective:**<br>Protect soil, water, and vegetation resources during periods of drought. |
| WTR-MA-07 | **Action:**<br>Implement drought management guidelines, outlined in Appendix D, Uncompahgre Field Office Drought Management Detection and Monitoring Plan, during drought to maintain or achieve long-term resource productivity. |

| | **VEGETATION** |
|---|---|
| | *VEGETATION – GENERAL* |
| VEG-GOAL-01 | **GOAL:**<br>Manage vegetation for a mix of productive and resilient plant and biological soil crust communities that sustain native plant and animal species, including pollinators and butterflies, especially monarchs, at viable population levels. Manage shrub and woodland communities within the Historic Range of Natural Variability, maintaining successional processes and sustaining all |

BLM_0167588

| | VEGETATION |
|---|---|
| | structural stages across the landscape. Manage riparian and wetland systems to function properly, have the ability to recover from disturbance, and sustain native species at viable population levels. |
| VEG-OBJ-01 | **Objective:** Maximize native vegetation and natural processes by ensuring upland vegetation communities are within the range of natural variability, with an appropriate mix of plant functional groups, cover, and diversity, according to best available science on greater than 80 percent of vegetation communities in ACECs, WSAs, suitable WSR segments, and lands managed to minimize impacts on wilderness characteristics and on greater than 70 percent of vegetation communities on the remaining BLM-administered lands, over 10 years with 80 percent confidence. |
| VEG-MA-01 | **Action:** Use locally derived native species for revegetation. If locally derived native species are not available, are cost prohibitive, or are not likely to succeed, allow use of native species from outside the area or nonnative species that are not invasive when all other native revegetation options have been determined to be ineffective. |
| VEG-MA-02 | **Action:** On ACECs, WSAs, and lands managed to minimize impacts on wilderness characteristics, restore areas of degraded vegetation, including burned areas, where there is a high probability of success. Use test plots first for more difficult areas. On other lands, revegetate areas that are impacted by wildfire or resource use and development to basic levels of ecologic functionality as on-site or off-site mitigation. |
| VEG-OBJ-02 | **Objective:** Provide the public with commonly available and renewable native plant materials through the sale of native seed collecting permits, commercial and institutional seed-collecting permits, and permits for the collection of other plant products, while protecting other resources. |
| VEG-MA-03 | **Action:** Make 631,060 acres available for permits for seed collection, wildings, and other plant materials.<br><br>Except for research and revegetation purposes, close the following areas to permits:<br>• WSAs<br>• Occupied threatened and endangered plant habitat; collection of Endangered Species Act-listed taxa will not be permitted<br>• Occupied special status plant species habitat |

BLM_0167589

| | VEGETATION |
|---|---|
| | *VEGETATION – UPLANDS* |
| VEG–UPL-OBJ-01 | **Objective:** <br> On ACECs, WSAs, and lands managed to minimize impacts on wilderness characteristics manage vegetation structure to emphasize naturalness of vegetation age class distribution across the landscape and to support sensitive species habitat, with resource production, big game habitat, and fuels reduction as secondary outcomes. <br><br> On the remaining areas, manage vegetation structure to emphasize resource production and fuels reduction and to support big game species habitat, with naturalness and sensitive species habitat as secondary outcomes. |
| VEG–UPL-MA-01 | **Action:** <br> Update the vegetation mosaic objectives in the Fire Management Plan to meet RMP objectives for upland vegetation. Vegetation treatments must be consistent with these mosaic objectives and must meet multiple interdisciplinary objectives. |
| | *VEGETATION – RIPARIAN* |
| VEG–RPN-OBJ-01 | **Objective:** <br> Manage naturally occurring riparian and wetland areas to maintain or improve stream banks and floodplains to a stable and Proper Functioning Condition, similar to reference condition or expected condition for greater than 80 percent of stream segments in ACECs, WSAs, suitable WSR segments, and lands managed to minimize impacts on wilderness characteristics and greater than 70 percent of stream segments on remaining BLM-administered lands, over 10 years with 80 percent confidence where not meeting these vegetation community goals, work toward meeting them in accordance with Land Health Standards. |
| VEG–RPN-MA-01 | **Action:** <br> Manage naturally occurring riparian and wetland areas, seeps, and springs, as well as a 50-foot buffer from their edge, as ROW avoidance areas unless it can be determined that a project would maintain Proper Functioning Condition. |
| VEG–RPN-MA-02 | **Action:** <br> Allow vegetation treatments in riparian areas that are compatible with and promote natural riparian/wetland function and improvement. |
| VEG–RPN-MA-03 | **Action:** <br> Pursue opportunities to enhance and restore wetland and riparian areas impacted by historic land use and flow regime modification. |
| VEG–RPN-AU-01 | Allowable Use: <br> **STIPULATION** NSO-11/SSR-13: *Hydrology Features.* Prohibit surface occupancy and use and apply SSR restrictions within 100 meters (328 feet) from the mapped extent of perennial and intermittent streams; riparian areas, fens, and/or wetlands; and water impoundments. For streams, measure the buffer from ordinary high-water mark (bank-full stage); for wetland features, measure the buffer from the edge of the mapped extent. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |

*Uncompahgre Field Office Approved Resource Management Plan*

BLM_0167590

| | VEGETATION |
|---|---|
| | *VEGETATION – WEEDS* |
| VEG–WDS-GOAL-01 | **GOAL:** Through Integrated Weed Management, suppress and eradicate, where possible, noxious and invasive species to support healthy native plant communities. |
| VEG–WDS-OBJ-01 | **Objective:** Manage lands under Integrated Weed Management strategies to support BLM Colorado Public Land Health Standards (BLM 1997). |
| VEG–WDS-MA-01 | **Action:** Implement Integrated Weed Management using the UFO Weed Management Strategy, including Strategy by Species (BLM 2010d). Apply appropriate integrated noxious weed control methods (e.g., targeted grazing, physical, mechanical, educational, biological, herbicide, and fire) to noxious/invasive weed infestations. |
| VEG–WDS-MA-02 | **Action:** Prioritize for weed treatment ACECs; WSAs; lands managed to minimize impacts on wilderness characteristics; WSR segments with a vegetation outstandingly remarkable value; and high-use areas with recreational, livestock, or mineral developments and maintained routes. |
| VEG–WDS-MA-03 | **Action:** Maintain all quarry pits weed-free of all state-listed A, B, and C noxious weed species. |
| VEG–WDS-MA-04 | **Action:** Require that all seed used on BLM-administered lands meet the Colorado Noxious Weed Seed requirements of prohibited and restricted seed. In addition to BLM policy of weed-free seed use, seed lots shall contain less than 250 seeds per pound of cheatgrass (*Bromus tectorum*) and/or Japanese brome (*Bromus japonicus*) (in combination). Other species determined to be noxious or invasive may be added to this list. All seed must be of certified quality or source identified. |
| VEG–WDS-MA-05 | **Action:** Require all hay, straw, or mulch that is used or stored on BLM-administered lands be certified as weed free. |

| | FISH AND WILDLIFE |
|---|---|
| | *WILDLIFE – GENERAL* |
| F&W-GOAL-01 | **GOAL:** Manage terrestrial and aquatic habitats and species to promote ecosystem diversity, productivity, viability, and natural processes. |
| F&W-OBJ-01 | **Objective:** (See also *Vegetation* and *Water Quality* Objectives.) Restore, enhance, conserve, and promote aquatic and terrestrial species conservation and ecosystem integrity and values. Emphasis is on native species (mammals, reptiles, amphibians, birds, fish, invertebrates, and plants) management, including |

BLM_0167591

| | FISH AND WILDLIFE |
|---|---|
| | objectives and improvements for ensuring habitat diversity, productivity, viability, and natural processes throughout the ecosystem, and striving for stable, sustainable wildlife populations. |
| | Provide for effective wildlife and fish habitat throughout the Decision Area with abundance and distribution commensurate with the capability of the land to sustain wildlife and fish populations. Habitat continuity and travel corridors exist and persist to facilitate species movement and establishment into newly suitable areas as a result of changing habitats. Consider route and infrastructure densities to support CPW wildlife population objectives. |
| | Utilize current conservation plans, agreements, and strategies, including state habitat and species management and action plans, to direct management. |
| | Protect endangered species and migratory birds to the extent required by the Endangered Species Act and the Migratory Bird Treaty Act of 1918. |
| | Protect breeding habitats of migratory birds by managing for ecosystem diversity, productivity, viability and natural processes through use of the vegetation mosaic objectives (refer to the *Vegetation* section). |
| F&W-MA-01 | **Action:**<br>Allow augmentation and reintroduction to expand the current range of aquatic and terrestrial species or to expand population numbers to improve genetic viability of native terrestrial and aquatic species, in coordination with CPW. |
| | *WILDLIFE – FISH and AQUATIC* |
| F&W–FIS-MA-01 | **Action:**<br>Pursue opportunities to enhance, protect, or restore native aquatic species habitat, in consultation with CPW, including modification or removal of special status fish migration barriers and structural and vegetation improvements commensurate with other resource objectives.<br><br>Quantity and quality of aquatic habitats are maintained or enhanced to provide for the long-term sustainability of biological diversity and population viability of all native and/or desired nonnative vertebrate species. |
| F&W–FIS-MA-02 | **Action:**<br>Maintain or improve fisheries habitat where consistent with maintaining native species populations. Prioritize systems based on CPW conservation and management objectives. |
| F&W–FIS-AU-01 | Allowable Use:<br>**STIPULATION** Timing Limitation (TL)-5: *Wildlife Native and Sport Fish.* Prohibit in-stream channel work within occupied fisheries as mapped in the RMP, BLM's geographic information systems (GIS) database, or other data provided by local, state, federal, or tribal agencies that are analyzed and accepted by the BLM, during the following period: |

BLM_0167592

| | FISH AND WILDLIFE |
|---|---|
| | • Spring spawning period: April 1 to July 15 — native cutthroat trout [*Oncorhynchus clarkia*], rainbow trout [*Oncorhynchus mykiss*], and native warm water fish (flannelmouth sucker [*Catostomas latipinnis*], bluehead sucker [*Catostomus discobolus*], and roundtail chub [*Gila robusta*])<br>(Refer to Appendix B; Figure 8, Appendix A.) |
| | *WILDLIFE – TERRESTRIAL* |
| F&W–TER–MA-01 | **Action:**<br>Key habitats include big game winter range, winter raptor concentration areas, bighorn sheep, pronghorn, and aquatic/riparian habitats. Maintain and improve vegetation conditions.<br><br>Protect, maintain, and enhance the following:<br>• Critical habitats for big game, upland game birds, and waterfowl<br>• Crucial habitats for nongame species of special interest or concern to state and other federal agencies (BLM 1985)<br><br>Comply with the FLPMA to maintain, enhance, and protect fish habitat on BLM-administered lands.<br><br>Manage 2,500 acres in Camel Back Ridge and Upper Roubideau Creek drainages along the southeastern portion of the Camel Back WSA to maintain the area's capability to support wintering deer, elk (*Cervus canadensis*), and bighorn sheep. |
| F&W–TER–MA-02 | **Action:**<br>Restore, enhance, conserve, and promote aquatic and terrestrial species conservation and ecosystem integrity and values in coordination with CPW. Emphasize the management of native species (mammals, reptiles, amphibians, birds, fish, invertebrates, and plants), including objectives and improvements for ensuring habitat diversity, productivity, viability, and natural processes throughout the ecosystem, and striving for stable, sustainable wildlife populations.<br><br>Design land treatment projects and other facilities to improve the quality and quantity of wildlife habitats. |
| F&W–TER–MA-03 | **Action:**<br>Coordinate with CPW during implementation to achieve desired habitat conditions for native species and to achieve BLM Colorado Public Land Health Standards (BLM 1997). Review this strategy every 5 years. |
| | *Terrestrial Wildlife – Big Game (Mule Deer [Odocoileus hemionus], Elk, Pronghorn [Antilocapra americana], Bighorn Sheep, Moose [Alces alces], Black Bear [Ursus americanus], Mountain Lion [Puma concolor])*<br>*Note: Bighorn sheep include both Rocky Mountain and desert subspecies, unless otherwise designated as one or the other.* |
| F&W–BGS–AU-01 | Allowable Use:<br>**STIPULATION** CSU-62: *Wildlife Big Game Winter Migration and Production Area.* Surface occupancy or use may be restricted in big game winter, migration, and production areas, as mapped in the RMP, BLM's GIS database, or other maps constituting the best available information as provided by local, state, federal, or tribal agencies that are accepted by the BLM. |

BLM_0167593

| | FISH AND WILDLIFE |
|---|---|
| | **<SPECIES>**<br><br>Prior to surface disturbance within big game severe winter range/winter concentration areas, migration, and production areas, the BLM will require the applicant to develop a mitigation plan in coordination with BLM and CPW, in conformance with applicable state requirements, rules, and regulations, as a component of the Application for Permit to Drill–Surface Use Plan of Operations. The operator shall not initiate surface-disturbing activities unless the BLM Authorized Officer has approved the mitigation plan (with conditions, as appropriate) or has determined, after coordination with CPW, that a mitigation plan is unnecessary. The mitigation plan must demonstrate, to the Authorized Officer's satisfaction, that the overall function and suitability of big game winter ranges, migration, and production areas will not be impaired. This may include special design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet). Measures included in the Surface Use Plan of Operations may include, but are not limited to, limitations to surface disturbance density through efficient planning of facilities, roads, and well locations; minimization of routine truck traffic associated with well/facility visits through use of remote sensing/control and pipelines to transport liquids; avoidance of visits during certain hours during the winter season; and limitations on noise.<br><br>On the following lands:<br><br>**<LEGAL_DESCRIPTION>**<br><br>(Refer to Appendix B; Figure 7 and 9, Appendix A.) |
| F&W–BGS-AU-02 | Allowable Use:<br>**STIPULATION** TL-8: *Wildlife Big Game Winter.* Prohibit surface use and surface-disturbing and disruptive activities during the following time period(s) in big game crucial winter habitat as mapped in the RMP, BLM's GIS database, or other data provided by local, state, federal, or tribal agencies that are analyzed and accepted by the BLM: crucial winter range, severe winter range, and winter concentration areas.<br>• Elk, mule deer, and moose: December 1 to April 15<br>• Pronghorn: January 1 to March 31<br>• Rocky Mountain bighorn sheep (*Ovis canadensis*) and desert bighorn sheep (*Ovis canadensis nelsoni*): November 1 to April 15<br>(Refer to Appendix B; Figure 8, Appendix A.) |
| F&W–BGS-AU-03 | Allowable Use:<br>**STIPULATION** TL-11: *Wildlife Big Game Production.* Prohibit surface use and surface-disturbing and disruptive activities during the following time period(s) in big game production areas as mapped in the RMP, BLM's GIS database, or other maps provided by local, state, federal, or tribal agencies that are analyzed and accepted by the BLM:<br>• Elk and moose: May 15 to June 30<br>• Desert bighorn sheep: February 1 to May 1<br>• Rocky Mountain bighorn sheep: April 15 to June 30<br>(Refer to Appendix B; Figure 8, Appendix A.) |

BLM_0167594

| | **FISH AND WILDLIFE** |
|---|---|
| F&W–BGS-MA-01 | **Action:**<br>To protect elk calving areas, prohibit motorized and mechanized travel from May 15 to June 30 in elk production/calving areas.<br><br>Add other areas as appropriate through future site-specific travel management analyses.<br><br>Where needed, extend seasonal closures to include pedestrian or equestrian traffic.<br><br>The Field Manager may modify the size and timeframes upon consultation with CPW if monitoring information indicates that plant seasonal cycles or animal use patterns are inconsistent with dates established. |
| F&W–BGS-MA-02 | **Action:**<br>Allow for restoring wild sheep populations 1) in areas where the domestic/bighorn sheep risk of contact model or currently accepted model indicates that existing sheep allotments are not at high or moderate risk for disease transmission and 2) in suitable and historic wild sheep habitat not currently stocked with domestic sheep and goats. |
| F&W–BGS-AU-04 | Allowable Use:<br>**STIPULATION** CSU-18/SSR-19: *Desert and Rocky Mountain Bighorn Sheep Summer Range.* Surface occupancy or use may be restricted or prohibited and SSR restrictions applied to reduce impacts of surface-disturbing activities and operations on bighorn sheep summer range. (Refer to Appendix B; Figures 7 and 9, Appendix A.)<br><br>Special design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet) from bighorn sheep habitat, crucial bighorn sheep habitat, or specific habitat features may be required. Specific habitat features may include, but are not limited to, water areas, mineral licks, and lambing areas. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| | *Terrestrial Wildlife – Upland Game Birds (Wild Turkey)* |
| F&W–UGB-AU-01 | Allowable Use:<br>**STIPULATION** TL-12: *Wildlife Turkey.* Prohibit surface use and surface-disturbing and disruptive activities within wild turkey (*Meleagris gallopavo*) habitat (as mapped in the RMP, BLM's GIS database, or other data provided by local, state, federal, or tribal agencies that are analyzed and accepted by the BLM) during the following time period:<br>• Wild turkey winter habitat from December 1 to April 1.<br>(Refer to Appendix B; Figure 8, Appendix A.) |
| | *Terrestrial Wildlife – Migratory Birds* |
| F&W–MIG-MA-01 | **Action:**<br>Use adaptive management to conserve and avoid impacts on populations of Birds of Conservation Concern, Partners-in-Flight priority species, and other species of concern. |

BLM_0167595

| | FISH AND WILDLIFE |
|---|---|
| F&W–MIG-LN-01 | **LEASE NOTICE** LN-UFO-1: *Migratory Birds*. The lessee is hereby notified that prior to and during all lease operations, including development and utilization of oil and gas resources, the lessee must comply year-round with applicable provisions of the Migratory Bird Treaty Act of 1918, 16 US Code 703–712, and other state and local statutes, rules, and regulations, now in existence or as may be modified in the future, consistent with lease rights. Migratory birds nest throughout the UFO, and seasonal timing restrictions for ground-disturbing activities may occur within the April 1 to July 15 period when migratory birds may be nesting in the area. |
| F&W–MIG-MA-02 | **Action:** Using best available science, apply appropriate restrictions and mitigation to minimize impacts on migratory birds. Focus protection efforts on US DOI, Fish and Wildlife Service (USFWS) Birds of Conservation Concern, Partners-in-Flight species, and habitat for other conservation priority bird species. This is to protect breeding and nesting migratory bird species and to comply with the Migratory Bird Treaty Act of 1918. |

| | SPECIAL STATUS SPECIES |
|---|---|
| | *SPECIAL STATUS SPECIES – GENERAL* |
| SSS-GOAL-01 | **GOAL:** Protect and enhance special status species and habitats to promote their conservation, recovery, and persistence. |
| SSS-OBJ-01 | **Objective:** (See also *Vegetation* and *Water Quality* Objectives.) Restore, enhance, preserve, and promote special status species (aquatic and terrestrial) conservation and ecosystem integrity and values. Emphasis is on special status species habitat and population (mammals, reptiles, amphibians, birds, fish, invertebrates and plants) management, including objectives and improvements for ensuring population and habitat diversity, productivity, viability, and natural processes throughout the ecosystem, and striving for stable, sustainable wildlife populations. <br><br> Manage all federally threatened, endangered, candidate, and BLM sensitive species as key/priority species. <br><br> Provide for effective special status species habitat throughout the Planning Area with abundance and distribution commensurate with the capability of the land to sustain special status species populations. Habitat continuity and travel corridors exist and persist to facilitate species movement and establishment into newly suitable areas as a result of changing habitats. <br><br> Utilize current conservation (recovery) plans, agreements, and strategies, including state habitat and species management and action plans to direct management. (See Proposed RMP/Final EIS Section 1.7, Related Plans and Authorities, bullet 1.7.4 for examples of other plans.) |

BLM_0167596

| | **SPECIAL STATUS SPECIES** |
|---|---|
| SSS–PLN-AU-01 | Allowable Use:<br>**STIPULATION** CSU-19/SSR-20: *BLM Sensitive Plant Species.* Surface occupancy or use may be restricted and SSR restrictions applied within 100 meters (328 feet) of BLM-sensitive plant species. Special design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet), may be required. Prior to authorizing activities in this area, the operator may be required to submit a plan of development that would demonstrate that habitat would be preserved to maintain sensitive plant species. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| SSS–PLN-AU-02 | Allowable Use:<br>**STIPULATION** NSO-22/SSR-21: *Plant Endangered Species Act-Listed Species.* Prohibit surface occupancy and use and apply SSR restrictions within a 200-meter (656-foot) buffer of the edge of habitat of federally listed, proposed, or candidate threatened or endangered plant species as mapped in the RMP, BLM's GIS database, or other data provided by local, state, federal, or tribal agencies that are analyzed and accepted by the BLM. (Refer to Appendix B; Figures 7 and 9, Appendix A; see Glossary for definitions of clay-loving wild buckwheat and Colorado hookless cactus habitats.) |
| | *SPECIAL STATUS FISH AND AQUATIC WILDLIFE*<br>*(see also WILDLIFE – FISH AND AQUATIC)* |
| SSS–FIS-MA-01 | **Action:**<br>Partner with CPW, Forest Service, USFWS, and others to remove nonnative trout and other fishes from occupied native cutthroat trout habitat. |
| SSS–FIS-AU-01 | Allowable Use:<br>**STIPULATION** NSO-24/SSR-22: *Wildlife Endangered Species Act -Listed Species (Occupied Federally Listed Fish Habitat).* Prohibit surface occupancy and use and apply SSR restrictions within 2,500 feet of the ordinary high-water mark of the Lower Gunnison River, below the confluence with the Uncompahgre River, along occupied federally listed fish habitat. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| SSS–FIS-AU-02 | Allowable Use:<br>**STIPULATION** NSO-26/SSR-25: *Occupied Native Cutthroat Trout Habitat.* Prohibit surface occupancy and use and apply SSR restrictions within 325 feet of the edge of the ordinary high-water mark (bank-full stage) of occupied habitat for conservation populations (90 percent Lineage Greenback Cutthroat Trout) of native cutthroat trout. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| | *SPECIAL STATUS TERRESTRIAL WILDLIFE* |
| SSS–TER-AU-01 | Allowable Use:<br>**STIPULATION** NSO-29/SSR-28: *Federally Wildlife Endangered Species Act-Listed Species (Wildlife and Bird Species' Occupied Habitat).* Prohibit surface occupancy and use and apply SSR restrictions within habitat for federally listed, proposed, or candidate threatened or endangered species. (Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| | *Special Status Terrestrial Wildlife – Yellow Billed Cuckoo* |
| SSS–YBC-AU-01 | **STIPULATION** CSU-25/SSR-29: *Wildlife Endangered Species Act-Listed Species (Yellow-Billed Cuckoo Habitat).* Surface occupancy or use may be restricted or prohibited and SSR restrictions applied within habitat for the following federally listed, |

BLM_0167598

| | SPECIAL STATUS SPECIES |
|---|---|
| | proposed, or candidate threatened or endangered wildlife species, as mapped in the RMP, BLM's GIS database, or other maps provided by local, state, federal, or tribal agencies that are analyzed and accepted by the BLM: within yellow-billed cuckoo habitat. Special design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet), may be required.<br><br>The lease area may now or hereafter contain habitat for wildlife listed as threatened or endangered or identified as candidates for listing under the Endangered Species Act. An inventory of habitat may be required before drilling and construction may commence. The operator may be required to submit a plan of development that demonstrates how the proposed activities will avoid or minimize disruption of threatened and endangered species by siting or prioritizing vegetation clearing, facility construction, and concentrated operational activities (e.g., drilling, completion, and utility installation). The BLM may require modifications to or disapprove proposed activity that is likely to result in jeopardy to the continued existence of a proposed or listed threatened or endangered species, result in the destruction or adverse modification of designated or proposed critical habitat, or contribute to a need to list a proposed or candidate threatened and endangered species. The BLM will not approve any ground-disturbing activity that may affect any such species or critical habitat until it completes its obligations under applicable requirements of the Endangered Species Act, including completion of any required procedure for conference or consultation.<br><br>(Refer to Appendix B; Figures 7 and 9, Appendix A.) |
| | *Special Status Terrestrial Wildlife – Canada Lynx* |
| SSS–LNX–MA-01 | **Action:**<br>Follow management actions from the 2013 Lynx Conservation Assessment and Strategy or most recent guidance. |
| SSS–LNX–AU-01 | Allowable Use:<br>**STIPULATION**: CSU-27/ SSR-31: *Wildlife Endangered Species Act-Listed Species (Canada Lynx Habitat)*.<br>Surface occupancy or use may be restricted or prohibited and SSR restrictions applied within habitat for the following federally listed, proposed, or candidate threatened or endangered wildlife species, as mapped in the RMP, BLM's GIS database, or other data provided by local, state, federal, or tribal agencies that are analyzed and accepted by the BLM: in mapped or identified Lynx Linkage Corridors and Canada lynx (*Lynx canadensis*) habitat within Lynx Analysis Units and to any activities that would negatively alter connectivity between and within Lynx Analysis Units. Special design, construction, and implementation measures, including relocation of operations by more than 200 meters (656 feet), may be required. An inventory of habitat may be required before drilling and construction may commence. The operator may be required to submit a plan of development that demonstrates how the proposed activities will avoid or minimize disruption of threatened and endangered species by siting or prioritizing vegetation clearing, facility construction, and concentrated operational activities (e.g., drilling, completion, and utility installation). The BLM may require modifications to or disapprove proposed activity that is likely to result in jeopardy to the continued existence of a proposed or listed threatened or endangered species, result in the destruction or adverse modification of designated or proposed critical habitat, or contribute to a need to list a proposed or candidate threatened and endangered species. The BLM will not approve any ground-disturbing activity |

BLM_0167599