IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-2484

CITIZENS FOR A HEALTHY COMMUNITY,
*et al.*,

      Petitioners,

v.

UNITED STATES BUREAU OF LAND
MANAGEMENT, *et al.*,

      Federal Respondents.

## PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS

      Plaintiffs Citizens for a Healthy Community, High Country Conservation Advocates, Center for Biological Diversity, Western Watersheds Project, and WildEarth Guardians ("Citizen Groups") and Federal Defendants Bureau of Land Management, *et al.* ("BLM") have conferred with respect to this Petition, the deadline for which falls as the Parties are in the midst of settlement negotiations with respect to fees and costs. Concurrent with the filing of this motion, the parties file a Joint Motion to temporarily Stay Proceedings Related to Plaintiffs' Motion for Attorney Fees, Costs, and Other Expenses Under the Equal Access to Justice Act ("EAJA"), in which they request to stay proceedings on this motion for 60 days, or until November 10, 2022, in order to facilitate a negotiated settlement as to fees and costs. If they are unable to settle this matter, Citizen Groups will file an amended petition under EAJA within 21 days of the expiration of the stay. The BLM opposes Citizen Groups' fee motion, but has agreed to continue settlement talks during the 60-day stay period.

1

If the parties are unable to settle as to fees and costs, Citizen Groups will seek an order granting them their fees, costs, and litigation expenses in this matter pursuant to Local Rule 54 and EAJA. 28 U.S.C. § 2412(d). At this time, Citizen Groups respectfully request that this Court award them $222,259.75 in attorneys' fees and $1,051.15 in costs, for a total of $223,310.90.

This motion is based on the memorandum of points and authorities in support of this motion, the declarations and timesheets attached as exhibits in support of this motion, and all papers and records on file with the Clerk or which may be submitted before or at the time of the hearing, and any further evidence that may be offered.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs, six[1] conservation organizations, filed this lawsuit on August 19, 2020 (ECF No. 1), to challenge BLM's approval of the Uncompahgre Field Office Resource Management Plan. Plaintiffs alleged violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.,* the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et. seq.*, and its implementing regulations, made reviewable pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* Citizen Groups amended their Petition on October 27, 2020, (ECF No. 10), adding the U.S. Fish and Wildlife Service ("FWS") as a Defendant, along with claims challenging the Biological Opinion approved by FWS with respect to Gunnison sage grouse, and alleging additional violations of the Endangered Species Act ("ESA"), the Federal Vacancies Reform Act ("FVRA"), and the U.S. Constitution. Concurrently with the agencies' preparation of the administrative record in the spring of 2021, the parties commenced settlement negotiations. On June 8, 2021, the Court granted the Parties a continuance to discuss issues related to the administrative record and potential settlement of Plaintiffs' claims. Successive stays followed,

---

[1] Plaintiff Sierra Club is not eligible under EAJA and therefore does not join this motion.

the last of which expired on January 6, 2022, when the Parties submitted a revised Proposed Joint Case Management Plan, (ECF No. 114), which the Court adopted. (Dkt. 115). The Parties continued to attempt to reach a negotiated resolution while complying with the deadlines set forth in the revised Scheduling Order, including the filing of a Second Amended Petition for Review on March 31, 2022, (ECF No. 119), adding additional claims under the ESA. ECF No. 119. On July 1, Citizen Groups filed their Opening Brief. ECF No. 137. On August 10, 2022, the Parties entered into a Settlement Agreement to resolve Citizen Groups' claims.

The Settlement Agreement provides, among other terms, that BLM will complete an RMP amendment process for the Uncompahgre Field Office and prepare a new Environmental Impact Statement ("EIS") to inform the RMP amendment process. During the pendency of the RMP Amendment Process, BLM agreed not to issue new oil and gas leases for lands in the Uncompahgre Planning Area, subject to two delineated exceptions. ECF No. 138-1, ¶6. An express term of the Settlement Agreement includes that "[T]he Parties will request that the Court retain jurisdiction solely for the purpose of enforcing the commitments in Paragraphs 3, 6, and 7 and resolving any motion for attorneys' fees and costs filed by Petitioners in accordance with the Equal Access to Justice Act, if necessary." *Id.* ¶8. The Parties filed the Settlement Agreement as an exhibit to the Parties Joint Stipulation of Dismissal. ECF No. 138. The Joint Stipulation for Dismissal contained identical language, requesting that the Court retain jurisdiction for the limited purposes of enforcing the Settlement Agreement and resolving any fees motion. *Id.* On August 12, the Court terminated the case "pursuant to the stipulation to dismiss filed in this case." ECF No. 139.

## II. STANDARD

Pursuant to EAJA, a court shall award fees and costs to a prevailing party who is eligible for an EAJA fee award unless the court finds that the position of the United States was

3

substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d).

## III. CITIZEN GROUPS ARE ENTITLED TO FEES AND COSTS PURSUANT TO EAJA.

### A. Citizen Groups Are Eligible Under EAJA.

The Tenth Circuit has noted that "EAJA was enacted to ensure people would not be deterred from seeking review of, or defending against, unreasonable government action because of the expense involved in pursuing their rights." *Pettyjohn v. Shalala*, 23 F.3d 1572, 1575 (10th Cir. 1994). EAJA provides that "a court shall award" fees, costs, and other expenses to a prevailing party who is eligible for an EAJA fee award, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A party is eligible for attorneys' fees, costs, and other expenses pursuant to EAJA if it: (1) is a "prevailing party"; that (2) incurred costs of litigation against the federal government; and (3) meets applicable size, net worth, or other criteria. 28 U.S.C. § 2412(d)(1)(A)-(d)(2)(B).

Citizen Groups satisfy the first criterion for eligibility under EAJA because all are a "prevailing party." Under the EAJA, a "prevailing party" is a party who is benefitted by a court order that causes a "material alteration of the legal relationship of the parties." *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Services*, 532 U.S. 598, 604 (2001) (citation omitted). Such an order must cause a plaintiff to "receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 603 (citation omitted). Settlement agreements may serve as the basis for an award of attorney fees under the EAJA if they cause a "change in the legal relationship between the plaintiff and the defendant." *Id.* at 604 (citation omitted)*; see also Wyo. Wildlife Federation v. United States*, 792 F.2d 981 (10th Cir. 1986) (affirming the district court's award of fees where the plaintiff filed a separate fee application pursuant to the EAJA after the parties reached a settlement); *WildEarth Guardians v. U.S. Forest Serv.*, 778 F. Supp. 2d 1143, 1153 (D.N.M. 2011) (accord).

4

Here, Plaintiffs achieved the result they sought in bringing the case: pursuant to the terms of the Settlement Agreement, BLM must prepare supplemental NEPA analysis addressing the climate change concerns raised by Plaintiffs, must include in that analysis a less-development-intensive alternative for oil and gas production, and may not allow any oil and gas development to proceed until such analysis is completed. ECF No. 138-1.

Citizen Groups also satisfy the second criterion for eligibility: they incurred costs of litigation—including attorneys' fees, costs, and other expenses—in a judicial proceeding against a federal agency.

Finally, Citizen Groups satisfy the third criterion for eligibility related to IRS 501(c)(3) status. *See* 28 U.S.C. § 2412(d)(2)(B) (stating standard).[2]

### B. BLM's Position Was Not Substantially Justified

"Once a party's eligibility has been proven, an award of fees is mandatory pursuant to EAJA unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991) (*citing* 28 U.S.C. § 2412(d)(1)(A)). Here, BLM bears the burden of proving that its position was substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). BLM must make a "strong showing" in order to meet its burden. *Nat. Res. Def. Council v. Envt'l Prot. Agency*, 703 F.2d 700, 712 (3rd Cir. 1983) (citing H.R. Rep. No. 1418 at 16, 18, 96th Cong., 2nd Sess. 8-9, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4953, 4984, 4986-88).

To determine if an agency's position was substantially justified, the court considers the reasonableness of the underlying government action and the position asserted by the agency in

---

[2] As noted *supra*, Plaintiff Sierra Club does not seek recovery under EAJA. Further, its presence as a plaintiff does not defeat the other plaintiffs' entitlement to fees under EAJA. *League for Conservation Prot. v. Kempthorne*, No. C 05-0991-CW, 2006 WL 3797911, at *3 (N.D. Cal. Dec. 22, 2006); *ONRC Fund v. Goodman*, No. 05-cv-3004-PA, 2008 WL 4000442, at *3 & n.3 (D. Or. Aug. 25, 2008).

defending its validity. *Hackett v. Barnhart*, 475 F.3d 1166, 1170-72 (10th Cir. 2007); *Commissioner, INS v. Jean*, 496 U.S. 154, 158 n.7 (1990) (noting that Congress intended to provide for fees when unjustifiable agency action forces litigation, even when agency tries to avoid liability by reasonable behavior during litigation). "[I]t will be only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Thangaraja v. Gonzales*, 428 F.3d 870, 874-75 (9th Cir. 2005) (citation omitted).

Here, although BLM denied any violation of law for the issuance of the Uncompahgre RMP, the terms of the Settlement Agreement demonstrate that BLM cannot meet its burden of proving that its actions were substantially justified when it approved the RMP, in particular with reference to its challenged climate analysis under NEPA and its analysis of and response to Gunnison sage grouse impacts under both NEPA and the ESA.[3] ECF No. 138-1, ¶¶1, 2, 6, 7.

### C.  No Special Circumstances Exist that Would Make an Award Unjust

The "special circumstances" exception to eligibility under EAJA is a "'safety valve' [that] … gives the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R. Rep. No. 1418, 96th Cong., 2nd Sess. 5, 11, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4990. "The burden of proving special circumstances … rests with the government." *Love*, 924 F.2d at 1495. There are no special circumstances in this case that would make an award unjust. *Cf. Meinhold v. U.S. Dept. of Defense*, 123 F.3d 1275, 1277 n.1 (9th Cir. 1997) (noting that the court considered a party's "bad faith" in its consideration under EAJA).

## IV.  CITIZEN GROUPS SEEK REASONABLE HOURLY RATES

### A.  Citizen Groups Are Entitled to Enhanced Rates under EAJA

---

[3] It is worth noting that BLM has settled at least one other case challenging the Uncompahgre RMP. *See Colorado v. U.S. Bureau of Land Management*, No. 1:21-cv-129-MSK (D. Colo.), (settlement referenced at ECF No. 138-1).

6

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. EAJA provides that a court shall award "reasonable attorney fees" to prevailing parties. 28 U.S.C. § 2412(d)(2)(A). EAJA sets a base rate of $125 per hour but provides that a court may award higher rates if it "determines that an increase in the cost of living or a special factor … justifies a higher fee." *Id.*

In general, courts defer to the billing judgment of the prevailing party's attorneys. *See, e.g., Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (courts should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."). However, a prevailing party's attorneys must omit non-compensable time. *Hensley*, 461 U.S. at 437. The defending federal agency has the burden of showing that any claimed time is unreasonable. *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984). Once a fee applicant has filed evidence to support its claimed time, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

"Where a plaintiff has obtained excellent results, [its] attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. 435. Recognizing that the EAJA rates might be too low in some instances to enable a litigant to obtain competent legal representation, EAJA provides for fee enhancements where special factors, such as the limited availability of qualified attorneys for the proceedings, are present. In *Pierce v. Underwood*, 487 U.S. 552, 572 (1988), the Supreme Court clarified that reimbursement above the EAJA rate is allowed where an attorney is "'qualified for the proceedings' in some specialized sense." According to the Supreme Court, this "refers to

7

attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Pierce*, 487 U.S. at 572.

The Ninth Circuit has held that "[e]nvironmental litigation is an identifiable practice specialty that requires distinctive knowledge." *Love*, 924 F.2d at 1496. Further, "the combination of substantive legal knowledge and litigation expertise" necessary for litigation in environmental law "is found almost exclusively" in public interest environmental law firms. *Wash. Dep't of Wildlife v. Stubblefield*, 739 F. Supp. 1428, 1432 (W.D. Wash. 1989).

A prevailing party seeking enhanced attorneys' fees under EAJA must satisfy three tests: (1) the attorneys must possess some distinctive knowledge and skills developed through a practice specialty; (2) those distinctive skills must be needed in the litigation; and (3) those skills must not be available elsewhere at the statutory rate. *Love*, 924 F.2d at 1496. As summarized below and detailed in the accompanying declarations, Citizen Groups' attorneys possess distinctive knowledge and skills regarding environmental and administrative law. Citizen Groups' attorneys have extensive experience with federal statutes governing oil and gas development on federal lands, including the Mineral Leasing Act, as well as the federal permitting program for federal minerals. Citizen Groups' attorneys also have expertise with respect to issues of law and procedure under the APA, and the interplay between environmental and administrative law.

1. **Citizen Groups' attorneys possess distinctive knowledge and skills needed in this litigation that are unavailable elsewhere at the statutory rate.**

As detailed in attached declarations, Citizen Groups' attorneys each possess distinctive knowledge and skills that were needed in the litigation and were unavailable elsewhere at the statutory rate. *See Love*, 924 F.2d at 1496 (stating standard); *Pollinator Stewardship Council v. U.S. EPA*, No. 13-72346, 2017 WL 3096105, at \*\*2-7 (9th Cir. June 27, 2017) (applying standard and

8

awarding enhanced fees).

  **a.** **Kyle Tisdel**

Kyle Tisdel has practiced exclusively state and federal environmental, land use, and property law for 16 years. Exhibit 1, Declaration of Kyle Tisdel. Mr. Tisdel is a 2002 graduate of Michigan State University and a 2005 graduate of Vermont Law School, where he was Editor-in-Chief of the Vermont Journal of Environmental Law. Mr. Tisdel practiced law with a private law firm in the state of Washington, and as a solo practitioner, before joining the Western Environmental Law Center in 2011 as a staff attorney. Mr. Tisdel's practice focuses on federal and state court environmental litigation, and he also serves as Director of the Climate & Energy Program at the Western Environmental Law Center. Mr. Tisdel routinely presents at continuing legal education seminars on environmental law, in particular on topics relating to public lands, oil and gas leasing and development, tribal and cultural interests, as well as greenhouse gas emissions and climate change. Mr. Tisdel has prosecuted many successful environmental cases as lead counsel in state and federal courts throughout the West.

  **b.** **Melissa Hornbein**

Melissa Hornbein is a senior attorney at the Western Environmental Law Center, where her practice is almost exclusively comprised of federal environmental litigation, with a focus on the federal oil, gas, and coal leasing programs. Exhibit 2, Declaration of Melissa Hornbein. Her practice also includes climate-related state court litigation and federal and state policy and administrative engagement. She graduated from the University of California Hastings College of Law in 2008 and obtained a M.S. in environmental studies from the University of Montana in 2009, with the goal of practicing environmental law. From 2009 to 2010, Ms. Hornbein clerked at the Montana Supreme Court for then Justice Brian M. Morris. From 2010 to 2015, she worked as an attorney at the Montana Department of Natural Resources and Conservation on multiple

natural-resource issues, including litigation under NEPA and other federal and state environmental statutes, federal and tribal water rights issues, and state land and natural resource issues generally. From 2015 to 2019, Ms. Hornbein was an Assistant U.S. Attorney in the Civil Division of the U.S. Department of Justice, where she worked in part on federal environmental cases, including challenges to federal actions under NEPA and other environmental statutes. Ms. Hornbein has distinctive knowledge and skills related to environmental litigation and a practice specialty in environmental law and has regularly presented at continuing education seminars on issues of environmental and natural resources law.

**b.      Diana Dascalu-Joffe**

Diana Dascalu-Joffe has exclusively litigated public interest cases for over 15 years, including environmental, public lands and energy cases at the local, state and federal level. Declaration of Ted Zukoski.[4] She received her undergraduate degree from Slippery Rock University of Pennsylvania in 2000 and her law degree from Vermont Law School in 2003. After receiving her law degree, she focused her career on environmental non-profit work and began as a staff attorney for the Natural Resources Defense Council in Washington, D.C. She primarily litigated Clean Water Act cases to promote restoration of the Anacostia River. She then shifted her career to work on climate change and clean energy issues with a regional organization called the Chesapeake Climate Action Network in Takoma Park, Maryland. She was its Senior General Counsel for nine years, working on a host of litigation projects including Clean Air Act citizen enforcement lawsuits against fossil fuel energy facilities in the mid-Atlantic region. In 2014, she moved to Colorado and became barred therein. She was, for the majority of this case, a Senior

---

[4] Ms. Dascalu-Joffe left the Center for Biological Diversity in April of 2022. Mr. Zukoski has attested in his Declaration (attached hereto as Exhibit 3) to the Center's timekeeping requirements and as to Ms. Dascalu-Joffe's professional background and years of experience, for which the Center has records.

Attorney at the Center for Biological Diversity (which position she held from 2016 to April of 2022) where she primarily engaged in federal litigation and administrative review of oil and gas development and leasing on federal public lands.

### c. Edward B. Zukoski

Edward B. Zukoski has practiced exclusively environmental law for thirty years. Exhibit 3, Declaration of Ted Zukoski. Following his graduation from Yale Law School in 1992, Mr. Zukoski worked as an associate attorney for the Sierra Club Legal Defense Fund from 1992 to 1994 on cases involving management of National Park Service and National Wildlife Refuge system lands, as well as cases brought under NEPA, the Clean Air Act, the APA, and other environmental statutes. From 1995 through 2002, Mr. Zukoski worked for the Land and Water Conservation Fund of the Rockies in Boulder, Colorado, where he represented clients in administrative proceedings as well as federal district and appellate court in challenges under various environmental statutes. From 2003 through 2018, Mr. Zukoski worked in the Denver Office of Earthjustice, representing clients in public lands related litigation in numerous federal courts including the U.S. Supreme Court. Most recently, Mr. Zukoski has served as a Senior Attorney for the Center for Biological Diversity since 2019. His work at the Center involves litigation and administrative engagement on issues under the National Environmental Policy Act, National Forest Management Act, the Endangered Species Act, and the APA, among others.

### d. Talasi Brooks

Talasi Brooks has practiced almost exclusively environmental law since 2013. Exhibit 4, Declaration of Talasi Brooks. In law school, Ms. Brooks served as the Managing Editor for the Public Lands and Resources Law Review at the University of Montana School of Law and completed internships with resource management agencies, environmental organizations, and a solo practitioner of environmental litigation. During her legal career, Ms. Brooks has practiced

11

environmental law, first as a solo practitioner in 2013, then as a staff attorney for the nonprofit environmental law firm Advocates for the West from 2014 to 2018, and most recently as a staff attorney for Western Watersheds Project from 2019 to the present. She has also served as an At-large Council member for the Idaho State Bar Environment and Natural Resources Section and has presented at continuing education seminars on issues of environmental law.

### 2. Citizen Groups Seek Reasonable Hourly Rates

Citizen Groups' counsel are entitled to market rates in the forum of Denver, Colorado for their time spent prosecuting this case. To ensure that they seek market rates in Denver, Citizen Groups consulted with attorneys who regularly practice federal environmental and administrative law in that forum, and reviewed fee award decisions from the District of Colorado. *See, e.g., Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1080 (D. Colo. 2015) ("A 'reasonable rate' is defined as the prevailing market rate in the relevant community for an attorney of similar experience.") (citing *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir. 1996)). In particular, Citizen Groups base their calculation of reasonable rates on cases from this circuit examining various "sources of evidence as to reasonable rates in the District of Colorado area." *See, e.g., Barnett v. Bd. of Cnty. Comm'rs of Montrose*, 2015 U.S. Dist. LEXIS 173770, at *13 (D. Colo. Dec. 14, 2015). Particularly applicable here, *Center for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 703 F. Supp. 2d 1243, 1249-50 (D. Colo. 2010), was a "case focusing on environmental issues" that confirmed an hourly rate of $400 was appropriate in 2010 for "an experienced environmental litigator with over 17 years of experience." *Id., accord Wilderness Society v. Wisely*, 524 F. Supp. 2d 1285 (D. Colo. 2007) (awarding the same attorney $400/hr based on the lodestar analysis).

More recent opinions and the Fitzpatrick matrix (attached as Exhibit 6) have provided additional evidence as to the reasonableness of the hourly rates for similar litigation that have

12

increased into the $700/hr range in 2022 for counsel with 26 years' experience, which approaches that of Mr. Zukoski. The U.S. Attorney's Office for the District of Columbia, Civil Division developed the Fitzpatrick matrix to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]," as the United States Court of Appeals for the District of Columbia Circuit urged. See Ex. 1 at 2. The hourly rates in the Fitzpatrick matrix are generally consistent with reliable rate surveys and rates awarded in the Denver District. *See, e.g., First Mercury Ins. Co. v. Wonderland Homes*, No. 119-CV-00915-JLK-SKC, 2021 WL 3089155, at *5 (D. Colo. July 22, 2021) (observing "reasonable" rates ranging from $375 for associates to $650 for senior partners in 2019, and affirming reasonableness of rates of $775 per hour for equity partners in large firms in 2021.)

Citizen Groups determined that the following rates represent market rates in the Denver area for attorneys with a practice specialty in federal environmental and administrative law, based on years of experience:

- Kyle Tisdel is entitled to an hourly rate of $465 for 2020; $475 for 2021; and $485 for 2022.
- Melissa Hornbein is entitled to an hourly rate of $425 for 2020; $435 for 2021; and $445 for 2022.
- Diana Dascalu-Joffe is entitled to an hourly rate of $465 for 2020; $475 for 2021; and $485 for 2022.
- Edward Zukoski is entitled to an hourly rate of $700 for 2022.
- Talasi Brooks is entitled to an hourly rate of $385 for 2020; $395 for 2021; and $405 for 2022.

### V. CITIZEN GROUPS SEEK REASONABLE TIME

Citizen Groups seek a reasonable amount of time spent by their attorneys in prosecuting

this litigation. They attach their attorneys' timesheets as appendices to their declarations. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The Ninth Circuit has held that "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Citizen Groups' attorneys have carefully reviewed their timesheets and applied billing judgment to omit time that is arguably non-compensable. Additionally, at this juncture, Citizen Groups' attorneys have not included their time preparing a fee settlement letter and this motion, and pursuing settlement of Citizen Groups' claimed attorneys' fees. If they are unable to settle, however, those amounts of time will be included in an amended motion. *Sorenson v. Concannon*, 161 F. Supp. 2d 1164, 1169 (D. Or. 2001) (time spent attempting to settle fees is compensable).

The following table applies the hourly rates requested above to the time for which compensation is sought:

| Melissa Hornbein | Time   | Rate     | Total        |
|------------------|--------|----------|--------------|
| 2020             | 138.05 | $425.00  | $58,671.25   |
| 2021             | 90.9   | $435.00  | $39,541.50   |
| 2022             | 70.1   | $445.00  | $31,194.50   |
| **TOTAL**        | **299.05** |      | **$129,407.25** |

| Kyle Tisdel | Time  | Rate | Total       |
|-------------|-------|------|-------------|
| 2020        | 57.1  | $465 | $26,551.50  |
| 2021        | 33.8  | $475 | $16,055.00  |
| 2022        | 35.2  | $485 | $17,072.00  |
| **TOTAL**   | **126.1** |  | **$59,678.50** |

| Diana Dascalu-Joffe | Time | Rate | Total      |
|---------------------|------|------|------------|
| 2020                | 12.3 | $465 | $5,719.50  |
| 2021                | 5.8  | $475 | $2,755.00  |
| 2022                | 2    | $485 | $970.00    |
| **TOTAL**           | **20.1** |  | **$9,444.50** |

14

| Edward Zukoski | Time | Rate | Total |
|---|---|---|---|
| 2022 | 4.1 | $700 | $2,870.00 |
| **TOTAL** | **4.1** | | **$2,870.00** |

| Talasi Brooks | Time | Rate | Total |
|---|---|---|---|
| 2020 | 38 | $385 | $14,630.00 |
| 2021 | 4.8 | $395 | $1896.00 |
| 2022 | 10.7 | $405 | $4,333.50 |
| **TOTAL** | **53.5** | | **$20,859.50** |

**TOTAL ATTORNEYS' FEES: $222,259.75.**

## VI. CITIZEN GROUPS ARE ENTITLED TO RECOVER THEIR COSTS AND EXPENSES

EAJA authorizes a court to award "costs" as enumerated at 28 U.S.C. § 1920, as well as "other expenses," 28 U.S.C. § 2412(a)(1)-(d)(1)(A). "[T]he [other] expenses enumerated in [subsection (d)] are set forth as examples rather than as an exclusive list" and "routine" expenses "billed to the client in the normal course of business and [] allowed under other fees statutes" are compensable; a contrary reading of EAJA "would contravene the purpose of EAJA to make competent legal representation available to the parties in litigation against the government." *Nat'l Labor Relations Bd. v. Pueblo of San Juan*, 305 F. Supp. 2d 1229, 1233 (D. N.M. 2003); *accord Int'l Woodworkers of America v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986) (ruling that "other expenses" under EAJA include "expenses normally billed to a client," such as telephone calls, postage, and attorney travel expenses).

Here, Citizen Groups seek **$1,051.15** in combined costs and expenses, including filing fees, copying, and postage, as detailed in Exhibit 5.

## VII. CONCLUSION.

Citizen Groups respectfully request that this Court award them $222,259.75 in attorneys' fees and $1,051.15 in costs, for a total of $223,310.90.

15

Respectfully submitted this 11th day of September, 2022.

                                       */s/ Melissa A. Hornbein*
                                       Melissa A. Hornbein
                                       ENVIRONMENTAL LAW CENTER
                                       103 Reeder's Alley
                                       Helena, MT
                                       (p) 406.708.3058
                                       hornbein@westernlaw.org

                                       Kyle J. Tisdel (CO Bar No. 42098)
                                       WESTERN ENVIRONMENTAL LAW CENTER
                                       208 Paseo del Pueblo Sur, Suite 602
                                       Taos, New Mexico 87571
                                       (p) 575.613.8050
                                       tisdel@westernlaw.org

                                       Edward B. Zukoski
                                       CENTER FOR BIOLOGICAL DIVERSITY
                                       1536 Wynkoop St., Ste. 421

                                       *Counsel for Petitioners*