IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-02484

CITIZENS FOR A HEALTHY COMMUNITY, *et al.*,

     Petitioners,

v.

U.S. BUREAU OF LAND MGMT, *et al.*,

     Federal Respondents.

---

## DECLARATION OF TALASI BROOKS

---

I, TALASI B. BROOKS, state and declare as follows:

1.     I am a Staff Attorney for Western Watersheds Project and assisted attorneys of record in the litigation of the above-captioned matter on behalf of Plaintiff Western Watersheds Project. I submit this declaration in support of Plaintiffs' Petition for Attorneys' Fees and Costs under the Equal Access to Justice Act ("EAJA").

2.     I am an attorney licensed to practice law in Montana since 2013, Idaho since 2015, the U.S. District Court for the District of Colorado since 2015, and the Ninth Circuit since 2018. I have also been admitted to practice in the U.S. District Courts for the Districts of Montana and Idaho since I was admitted to practice law in those states.

3.     Both during law school and since beginning the practice of law in 2013, I have developed specialized experience in federal environmental litigation and administrative law. In law school, I served as Managing Editor for the Public Lands and Resources Law Review and interned for the U.S. Forest Service, two environmental organizations, and Rebecca K. Smith, a public

interest environmental lawyer in private practice. Through these experiences I gained a foundation in federal environmental and administrative law. I also participated in the National Moot Court team, which gave me a foundation in appellate advocacy. After graduating from law school, I clerked for the Montana Supreme Court for a year, where I became familiar with state environmental and natural resources laws and appellate proceedings. Since finishing my clerkship, I have almost exclusively practiced federal environmental law and litigation, first, briefly, in solo practice, then with the nonprofit environmental law firm Advocates for the West from 2014 to 2018, and now as a staff attorney for Western Watersheds Project from 2019 to the present. I have also served as an At-large Council member for the Idaho State Bar Environment and Natural Resources Section and on the advisory board for the Public Land and Resources Law Review. I volunteer on trail maintenance and construction projects on state and federal lands and have served as a Board member for Wilderness Watch, a national nonprofit conservation organization, since 2014.

4.      I have significant experience litigating issues surrounding sage-grouse and the Gunnison sage-grouse, in particular. In the context of this case, my work was primarily focused on preparation and filing of the successive Notices of Intent ("NOI") underpinning the Plaintiffs' claims with respect to Gunnison sage grouse under both the Endangered Species Act ("ESA") and the National Environmental Policy Act ("NEPA"). I also assisted with drafting these claims in the amended complaints, contributed to the formulation of litigation strategy, and contribution to, reviewed, and edited pleadings.

5.      I worked for Advocates for the West in Boise, Idaho, from 2014 until 2018 as a staff attorney. There, I successfully litigated—or contributed to litigation successes—in cases including the following: *Western Watersheds Project et al. v. USDA APHIS Wildlife Services*, 320 F. Supp. 3d 1137 (D. Idaho 2018), *Western Watersheds Project et al. v. Grimm*, 921 F.3d 1141 (9th Cir. 2019), *Western Watersheds Project v. Zinke*, 336 F. Supp. 3d 1204 (D. Idaho 2018), *In Re Gunnison Sage-Grouse Endangered Species Act Litigation*, No. 1:15-cv-130-

AP (D. Colo. Apr. 25, 2018), and *Western Watersheds Project v. U.S. Forest Serv.*, 1:16-cv-457- BLW (D. Idaho Oct. 12, 2016). *Western Watersheds Project v. Grimm* settled favorably after I successfully briefed and argued an appeal of an adverse standing decision to the Ninth Circuit.

6.      While at Advocates for the West, I served as co-counsel on, or supported litigation efforts regarding, several cases aimed at conserving and recovering sage-grouse species. I was co-counsel on *In Re Gunnison Sage-Grouse Endangered Species Act Litigation*, No. 1:15-cv-130-AP (D. Colo. Apr. 25, 2018), in which we secured a favorable settlement

committing the U.S. Fish and Wildlife Service to prepare a recovery plan for the Gunnison sage-grouse within three years. I also served as co-counsel on *Western Watersheds Project et al. v. Schneider et al.*, 1:16-cv-83-BLW (D. Idaho Feb. 25, 2016), which challenged the Bureau of Land Management and U.S Forest Service land use plan amendments intended to avoid the need to list the greater sage-grouse under the Endangered Species Act. I provided support and assistance in developing *Western Watersheds Project v. Zinke*, 336 F. Supp. 3d 1204 (D. Idaho 2018), which resulted in a preliminary injunction—and later vacatur—of numerous oil and gas leases in sage-grouse habitat. My understanding of sage-grouse habitat needs and management requirements from my prior work on these cases was essential to our successful TRO/PI Motion in this case. I also have served as co-counsel on one challenge to grazing authorizations in which my client (Western Watersheds Project) obtained a settlement preventing two grazing allotments in a key watershed important to native salmon and steelhead from being grazed for two seasons, *Western Watersheds Project v. U.S. Forest Serv.*, 1:16-cv-457-BLW (D. Idaho Oct. 12, 2016).

7.      I continued this work—and my track record of success— at Western Watersheds Project, where I helped secure a key victory in *Western Watersheds Project v. Bernhardt*, 428 F. Supp. 3d 327 (D. Or. 2019) by preparing the Complaint, briefs on the Temporary Restraining Order and Preliminary Injunction Motions, and by conducting a site visit and direct examination and cross-examination of witnesses over the course of two days of evidentiary hearings in federal court in Oregon. Our success in obtaining injunctive relief in that case flowed in part from my expertise in sage-grouse. I also favorably settled another case, *Western Watersheds Project, et al. v. USDA APHIS*

*Wildlife Services, et al.*, No. 1:20-cv-213-BLW (D. Idaho 2022), in which I secured a settlement agreement restricting Wildlife Services' activities in Idaho.

8.      I am presently involved in four other cases challenging agency decisions in part based upon sage-grouse issues: *Western Watersheds Project. et al. v. United States Dep't of Interior, et al.*, No. 3:21-cv-103-MMD-CLB (D. Nev.); *Friends of the Inyo, et al. v. U.S. Forest Service*, No. 2:21-cv-1955 (E.D. Cal.); *Western Watersheds Project, et al. v. Secretary of the United States Dep't of the Interior and Bureau of Land Management,* 2:21-cv-297-HL (D. Or.); and *WildEarth Guardians and Western Watersheds Project v. USDA APHIS, et al.,* 3:21-cv-508-LRH-CLB (D. Nev.). Specific to Gunnison sage-grouse, I am counsel on a case challenging the Gunnison Basin Candidate Conservation Agreement Biological Opinion, which is now fully briefed in the District of Colorado. *See Center for Biological Diversity and Western Watersheds Project v. U.S. Department of Interior, et al.*, 1:20-cv-3580-RM (D. Colo.).

9.      In my work at Western Watersheds Project, I have also briefed at least three administrative appeals involving sage-grouse issues before the Department of the Interior's Office of Hearings and Appeals' Hearings Division.   I also developed expertise in the Endangered Species Act by helping to draft a petition to list the gray wolf under the Endangered Species Act that resulted in a positive 90-day finding. I contributed review to a second petition to list the Kings River pyrg, an imperiled springsnail, that was submitted on September 8, 2022.

10.      These cases and other matters I have litigated or been involved with involved claims under the Endangered Species Act ("ESA"), National Environmental Policy Act ("NEPA"), Freedom of Information Act ("FOIA"), National Forest Management Act ("NFMA") and Federal Lands Policy and Management Act ("FLPMA"). I have also submitted public comments and prepared notices of intent to sue under the ESA.

11.      I have significant expertise on environmental law issues, and have presented on panels at the Public Interest Environmental Law Conference in Eugene, Oregon, in 2012 and 2019. I served as an at-large council member of the Idaho State Bar's Environmental and Natural Resources Section for several years, and served as Section Chair from 2020 to 2022. I continue to serve on the Board of Wilderness Watch, where I contribute to leadership for the organization. I

3

also recently joined the advisory board of the University of Montana's Public Land and Resources Law Review.

12.     Prior to joining Advocates for the West, I served as law clerk to Justice Michael E Wheat of the Montana Supreme Court from August 2013 to August 2014. In that role I became familiar with civil and criminal matters, including some state environmental matters, brought before Montana's only appellate court.

13.     While I was in law school, and during 2 months as an attorney in solo practice following my clerkship, I also provided research and claim development to support successful litigation by Rebecca K. Smith. My work helped provide a foundation for legal successes in two cases involving claims under NEPA, NFMA, and the ESA: *Alliance for the Wild Rockies v. Savage*, 897 F.3d 1095 (9th Cir. 2018), and *Alliance for the Wild Rockies v. Krueger*, 950 F. Supp. 2d 1172 (D. Mont. 2013).

14.     I earned my J.D. degree from the University of Montana School of Law in 2013, where I was Managing Editor for the Public Lands and Resources Law Review and faculty- selected co-recipient of an award for environmental legal writing. During law school, I interned with the U.S. Forest Service Climate Advisor's office in Washington D.C., and with Wilderness Watch, a nonprofit conservation organization, and completed my required clinic with Western Watersheds Project. I also gained a foundation in appellate advocacy with the National Moot Court team, where I was co-author of my team's award-winning brief. Concurrent with my J.D. degree I earned a Master of Science in Environmental Studies, for which my portfolio concentrated on management challenges under the Wilderness Act.

15.     Before attending law school, my personal and professional experiences also gave me practical knowledge that contributes to my expertise in federal environmental and grazing litigation. I worked for the U.S. Forest Service for three seasons as a seasonal wilderness trail crew employee, where I backpacked extensively through the John Muir and Ansel Adams Wilderness in California and the Selway-Bitterroot Wilderness in Idaho, carrying out trail maintenance projects and educating the public about wilderness regulations. I did similar work for nonprofit conservation organizations,

leading two one-month high school trail crews and working on a rock project on lands managed by the National Park Service in the Delware Water Gap, on the Appalachian Trail in Massachusetts/Connecticut, and in Bandelier National Monument for the Student Conservation Association. I also spent two months working on a technical rock trail construction project involving the use of highline rigging systems for the New York-New Jersey trail conference, and helped teach a technical rock trail construction workshop for the Student Conservation Association in the high Sierras. And, I led crews in trail maintenance and ecological restoration projects for Earthcorps, a Seattle-based conservation organization that brings members of the international community to Seattle to learn about ecological restoration. While completing my undergraduate degree at the University of Connecticut, I lived and worked on an historic sheep farm, where I learned about practical challenges related to animal husbandry. Not only did these experiences give a useful foundation in federal land management requirements—principally NEPA and the Wilderness Act—but they also taught me the basics of ecology and animal husbandry and helped me develop valuable teamwork and communication skills that carry over into my legal practice.

16.     I contemporaneously recorded and compiled the hours I spent on this case. I exercised professional billing judgment in recording my time and eliminated time that I considered to be unnecessarily duplicative or inefficiently spent, or reducing time requested for certain tasks. My recorded time for this case is attached as Appendix A to this declaration.

17.     I seek reimbursement for a total of 53.5 hours at hourly rates of $385 for 2020, $395 for 2021, and $405 for 2022. I am entitled to these rates as reasonable market rates for the Denver, Colorado market because of my expertise and experience in environmental law and litigation, administrative law, appellate practice, Federal Courts practice, and understanding of the environmental issues in this case, and because my distinctive skills and background knowledge were necessary to the success of this litigation and were not available in Colorado at the EAJA statutory rate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of September 2022 in Boise, Idaho.


Talasi B. Brooks
*Staff Attorney for Plaintiff Western Watersheds Project*

# Appendix A - Recorded Time for Talasi Brooks

| Date | Attorney | Task | Rate | Time | Omit | Amount |
|------|----------|------|------|------|------|--------|
| 2/6/20 | Brooks | Query whether we are in coalition challenging Uncompahgre RMP; email w J Ratner re: same; send J Ratner comments and protest to M Saul. | 385.00 | 0.20 | 0.20 | - |
| 4/27/20 | Brooks | Conf w K Fuller re UFO RMP | 385.00 | 0.40 | 0.40 | - |
| 5/1/20 | Brooks | Conf re: UFO RMP litigation. | 385.00 | 1.50 | 1.50 | - |
| 5/1/20 | Brooks | Conf w K Fuller re: UFO RMP call | 385.00 | 0.50 | 0.50 | - |
| 5/1/20 | Brooks | Conf w E Molvar re: UFO RMP call | 385.00 | 0.50 | 0.50 | - |
| 5/22/20 | Brooks | Email M Saul re: UFO RMP.  Review UFO RMP BiOp notes.  Begin reading UFO RMP ROD. | 385.00 | 1.00 | | 385.00 |
| 6/1/20 | Brooks | Work on UFO RMP BiOp NOI; review notes, FOIA records. | 385.00 | 1.40 | | 539.00 |
| 6/1/20 | Brooks | Work on UFO RMP BiOp NOI; review notes, FOIA records. | 385.00 | 0.60 | | 231.00 |
| 6/2/20 | Brooks | Work on building outline for NOI; reviewing relevant records. | 385.00 | 1.50 | | 577.50 |
| 6/2/20 | Brooks | Work on UFO RMP BiOp NOI; build outline, begin drafting. | 385.00 | 1.20 | | 462.00 |
| 6/3/20 | Brooks | Work on BiOp NOI; draft, build outline, review RMP ROD, take notes | 385.00 | 3.90 | | 1,501.50 |
| 6/4/20 | Brooks | Work on BiOp NOI; draft, build outline, review RMP ROD, take notes | 385.00 | 1.10 | | 423.50 |
| 6/5/20 | Brooks | Work on BiOp NOI; draft. | 385.00 | 3.00 | | 1,155.00 |
| 6/8/20 | Brooks | Work on BiOp NOI; draft first Violation section. | 385.00 | 4.00 | | 1,540.00 |
| 6/9/20 | Brooks | Conf w M Saul re: UFO RMP BiOp NOI. | 385.00 | 0.50 | | 192.50 |
| 6/9/20 | Brooks | Work on UFO RMP BiOp NOI; fill in additional sections and fact check against BiOp; send to T Mckinnon, M Saul, M Cain. | 385.00 | 4.30 | | 1,655.50 |
| 6/10/20 | Brooks | Re-review BiOp NOI and conduct addl research. | 385.00 | 1.10 | | 423.50 |
| 6/12/20 | Brooks | Research ESA legal standards for NOI. | 385.00 | 1.00 | | 385.00 |
| 6/16/20 | Brooks | Work on BiOp NOI; research jeopardy/recovery obligations. | 385.00 | 2.00 | | 770.00 |
| 6/16/20 | Brooks | Fix facts and send updated draft NOI to M Saul, T McKinnon w memo. | 385.00 | 0.50 | | 192.50 |
| 6/17/20 | Brooks | Participate in litigation call w WELC, others. | 385.00 | 1.20 | 0.20 | 385.00 |
| 6/19/20 | Brooks | ESA research re: remedies. | 385.00 | 1.50 | | 577.50 |
| 6/19/20 | Brooks | ESA research re: remedies, etc. | 385.00 | 3.50 | | 1,347.50 |
| 7/14/20 | Brooks | Conf w E Molvar re: UFO RMP litigation approval and send approval to WELC. | 385.00 | 0.30 | | 115.50 |
| 8/6/20 | Brooks | Resp to M Hornbeim email. | 385.00 | 0.10 | | 38.50 |
| 8/10/20 | Brooks | Conf w coalition re: UFO RMP litigation. | 385.00 | 0.20 | | 77.00 |
| 8/17/20 | Brooks | Review M Saul edits to BiOp NOI. | 385.00 | 0.50 | | 192.50 |
| 8/17/20 | Brooks | Circulate BiOp NOI to others. | 385.00 | 0.10 | | 38.50 |
| 8/17/20 | Brooks | Review and edit draft Compl. | 385.00 | 0.20 | | 77.00 |
| 8/18/20 | Brooks | Email w M Hornbeim re: filing. | 385.00 | 0.20 | | 77.00 |
| 8/18/20 | Brooks | Finalize BiOp Noi | 385.00 | 1.10 | | 423.50 |
| 8/18/20 | Brooks | Resp to G Anderson and E Molvar queries re: press, send Q re: PR to coalition. | 385.00 | 0.30 | 0.30 | - |
| 9/28/20 | Brooks | Review Pendley BLM decision. | 385.00 | 0.80 | | 308.00 |
| 9/28/20 | Brooks | Email w M Hornbeim et al. re: Pendley decision. | 385.00 | 0.30 | | 115.50 |
| 10/26/20 | Brooks | Call re: UFO RMP Complaint Amendment strategy. | 385.00 | 0.50 | | 192.50 |
| 10/26/20 | Brooks | Circulate short letter to FWS and BLM re: NOI resp. to client groups w/ memo. | 385.00 | 0.30 | | 115.50 |
| 10/26/20 | Brooks | Conf w G Anderson re: UFO RMP and FVRA developments. | 385.00 | 0.20 | 0.20 | - |
| 10/26/20 | Brooks | Finalize and send Noi reply letter. | 385.00 | 0.20 | | 77.00 |
| 10/27/20 | Brooks | Circulate PR. | 385.00 | 0.20 | 0.20 | - |
| 10/28/20 | Brooks | Review amended Complaint. | 385.00 | 0.10 | | 38.50 |
| 10/28/20 | Brooks | Email M Hornbein re: whether M Saul and I are counsel of record. | 385.00 | 0.10 | 0.10 | - |
| 1/10/21 | Brooks | Conf re scheduling and NOI. | 395.00 | 0.70 | | 276.50 |
| 1/14/21 | Brooks | Call w Colorado re: settlement. | 395.00 | 0.40 | | 158.00 |
| 10/20/21 | Brooks | Review settlement offer letter and send to E Molvar. | 395.00 | 0.20 | | 79.00 |
| 11/4/21 | Brooks | Conf w G Anderson re: UFO RMP settlement. | 395.00 | 0.60 | | 237.00 |
| 11/30/21 | Brooks | Resp to email re: UFO RMP. | 395.00 | 0.20 | | 79.00 |
| 12/16/21 | Brooks | UFO settlement call. | 395.00 | 1.50 | | 592.50 |
| 12/17/21 | Brooks | Draft language re: GUSG and send to E Molvar, M Saul. | 395.00 | 0.50 | | 197.50 |
| 12/20/21 | Brooks | Check in w E Molvar re: GUSG language. | 395.00 | 0.10 | | 39.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/20/21 | Brooks | Update M Saul on UFO settlement. | 395.00 | 0.20 | | 79.00 |
| 12/21/21 | Brooks | Review UFO RMP settlement offer and email M Hornbein re: same. | 395.00 | 0.20 | | 79.00 |
| 12/21/21 | Brooks | Conf w E Molvar re: settlement offer. | 395.00 | 0.20 | | 79.00 |
| 1/24/22 | Brooks | Begin reviewing BiOps. | 405.00 | 0.60 | | 243.00 |
| 1/24/22 | Brooks | Continue reviewing BiOps and ESA 60-day NOI. | 405.00 | 1.80 | | 729.00 |
| 1/24/22 | Brooks | Review BiOps and begin revising NOI. | 405.00 | 3.00 | | 1,215.00 |
| 1/26/22 | Brooks | Work on NOI. | 405.00 | 2.00 | | 810.00 |
| 1/27/22 | Brooks | Finish NOI and send to colleagues for review. | 405.00 | 2.40 | | 972.00 |
| 1/28/22 | Brooks | Print and mail NOI. | 405.00 | 0.70 | 0.70 | - |
| 3/8/22 | Brooks | Email w M Hornbein re: status of UFO RMP litigation. | 405.00 | 0.10 | | 40.50 |
| 3/22/22 | Brooks | Review amended Complaint and update references to GuSG data; send to M Hornbein w comments. | 405.00 | 0.80 | | 324.00 |
| | | Total | | **58.30** | **4.80** | **20,859.50** |

| | |
|---|---|
| **Total Hours** | 58.30 |
| **Total Hours Omitted** | 4.80 |
| **Total Hours after Omisions** | 53.50 |

| | |
|---|---|
| **Total Attorneys' Fees** | **$ 20,859.50** |

2